# UNITED STATES BANKRUPTCY COURT DISTRICT OF CONNECTICUT BRIDGEPORT DIVISION

## EXHIBIT LIST FOR CHAPTER 11 TRUSTEE LUC A. DESPINS

| | |
|---|---|
| IN RE:<br><br>HO WAN KWOK,<br>    DEBTOR. | CHAPTER 11<br><br>CASE No.: 22-50073 (JAM)<br><br><br>ECF No. 1858 Motion, Pursuant to Bankruptcy Code Sections 105 and 363, Bankruptcy Rules 2002, 6004(c), and 9014, and Local Rules 6004-1 and 6004 2, Seeking Entry of Order: (I) Authorizing and Approving Sale of the Lady May Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing and Approving Purchase and Sale Agreement, and (III) Granting Related Relief Filed by Luc A. Despins on behalf of Luc A. Despins, Chapter 11 Trustee<br><br>HEARING DATE(S): June 27, 2023 |

**EXHIBITS SUBMITTED BY: Chapter 11 Trustee Luc A. Despins**

**ATTORNEY:** Nicholas Bassett

| EXHIBIT # | DESCRIPTION | ID/FULL | SUBMIT DATE | WITNESS |
|---|---|---|---|---|
| 1 | Yatco.com Listing for Lady May | Full | 6/27/2023 | |
| 2 | Yachtworld.com Listing for Lady May | Full | 6/27/2023 | |
| 3 | Edmiston Website on Lady May | Full | 6/27/2023 | |
| 4 | Edmiston Email Marketing: Lady May – New CA for sale (April 28, 2023) | Full | 6/27/2023 | |
| 5 | Edmiston Email Marketing: Lady May – Now in Newport, RI (May 18, 2023) | Full | 6/27/2023 | |
| 6 | Edmiston Email Marketing: Lady May – Now enrolled in the FTZ in Newport, RI, including May 30, 2023 bid deadline (May 24, 2023) | Full | 6/27/2023 | |
| 7 | Edmiston Market Overview – Monthly Mailer | Full | 6/27/2023 | |

APPEAL FILED ON _____ ;
CHECKED EXHIBITS HAVE BEEN SUBMITTED TO DISTRICT COURT ON _____ .COPIES OF THE EXHIBITS HAVE BEEN RETAINED BY THE BANKRUPTCY COURT

| EXHIBIT # | DESCRIPTION | ID/FULL | SUBMIT DATE | WITNESS |
|-----------|-------------|---------|-------------|---------|
| 8 | PR & Editorial – Boat International Online (May 4, 2023) | Full | 6/27/2023 | |
| 9 | Online Advertising – Boatinternational.com | Full | 6/27/2023 | |
| 10 | Online Advertising – Superyachttimes.com | Full | 6/27/2023 | |
| 11 | Social Media – Instagram | Full | 6/27/2023 | |
| 12 | Social Media – LinkedIn | Full | 6/27/2023 | |
| 13 | Sample Email to Initial Bidders and other interested parties (May 24 and 25, 2023) | Full | 6/27/2023 | |
| 14 | Edmiston Marketing Report on Lady May | Full | 6/27/2023 | |
| 15 | Bidder A – Letter of Intent (received May 19, 2023) | Full | 6/27/2023 | |
| 16 | Bidder A – Bid (received May 30, 2023) | Full | 6/27/2023 | |
| 17 | Bidder B – Letter of Intent (received May 19, 2023) | Full | 6/27/2023 | |
| 18 | Bidder B – Bid (received May 30, 2023) | Full | 6/27/2023 | |
| 19 | Bidder C – Letter of Intent (received May 20, 2023) | Full | 6/27/2023 | |
| 20 | Bidder C – Bid (received Ma 30, 2023) | Full | 6/27/2023 | |
| 21 | Bidder D – Letter of Intent (received May 9, 2023) | Full | 6/27/2023 | |
| 22 | Bidder D – Email re Increased Offer (received May 22, 2023) | Full | 6/27/2023 | |
| 23 | Bidder E – Purchase Agreement (received May 17, 2023) | Full | 6/27/2023 | |
| 24 | Bidder F – Bid (received May 30, 2023) | Full | 6/27/2023 | |
| 25 | Bidder G – Bid (received May 30, 2023) | Full | 6/27/2023 | |
| 26 | Declaration of Dirk Johnson in Support of Lady May Sale Motion, Exhibit C to Lady May Sale Motion [Docket No. 1858] | Full | 6/27/2023 | |
| 27 | Purchase and Sale Agreement (including Addendum), dated as of May 30, 2023, Exhibit B to Lady May Sale Motion [Docket No. 1858] | Full | 6/27/2023 | |
| 28 | Second Addendum to Purchase and Sale Agreement, dated as of June 19, 2023, Exhibit A to Supplement [Docket No. 1913] | Full | 6/27/2023 | |

APPEAL FILED ON _____ .
CHECKED EXHIBITS HAVE BEEN SUBMITTED TO DISTRICT COURT ON _____ .COPIES OF THE EXHIBITS
HAVE BEEN RETAINED BY THE BANKRUPTCY COURT

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

**WITNESS LIST FOR CHAPTER 11**
**TRUSTEE LUC A. DESPINS**

IN RE:

CHAPTER 11

HO WAN KWOK,
    DEBTOR.

CASE No.: 22-50073 (JAM)

ECF No. 1858

HEARING DATE(S): June 27, 2023

**Witness(s) for Chapter 11 Trustee Luc A. Despins**

| Witness Name and Address | Direct | Cross | Redirect |
|---|---|---|---|
| **Luc A. Despins**<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY 10166 | **Nicholas A. Bassett** | n/a | n/a |

APPEAL FILED ON _____ .
CHECKED EXHIBITS HAVE BEEN SUBMITTED TO DISTRICT COURT ON _____ .COPIES OF THE EXHIBITS
HAVE BEEN RETAINED BY THE BANKRUPTCY COURT

**Exhibit 1**

CASE NO. _____22-50073_____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____1_____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY R. Senteio

Deputy Clerk

AO 386



< Back to search

| 2014 | 151' 8" (46.22m) |
|------|------------------|
| Year | Length |



## LADY MAY 2014 151' 8" FEADSHIP Motor Yacht

Newport United States $26,500,000 USD

The 2014 151' 8" FEADSHIP Motor Yacht LADY MAY is a yacht for sale located in Newport, Rhode Island, United States.



She is a stunning example of the finest Feadship quality on a sporty 46m Dubois aluminum hull with an immaculate RWD interior.

In light of multiple offers received to date, the bankruptcy court appointed trustee (who owns the Lady May) has determined to invite any and all interested parties to present their final and best offers by Tuesday May 30th at 5:00 p.m. (ET). Offers must comply with certain conditions, including a minimum purchase price of $20 million.

All offers are subject to bankruptcy court approval.

Please contact Dirk Johnson for further details, including offer conditions.

LADY MAY is one of the most outstanding yachts of her size ever built. Built by Feadship with naval architecture by Dubois and interior styling by RWD, LADY MAY is a true leader in her class. The combination of this impressive team resulted in the yacht winning a

+ Read more

---

**GET MORE INFORMATION ON THIS LISTING**

First Name*

Last Name*

Email Address*

Phone Number

Message*

**MESSAGE BROKER**

**Dirk Johnson**

Edmiston & Company Newport

| CALL | EMAIL |
|------|-------|

---

LENGTH
151' 8" (46.22m)

BUILDER
FEADSHIP

ASKING PRICE
$26,500,000 USD

BUILT
2014

BEAM
29' 7" (9m)

DRAFT
7' 3" (2.2m)

MAX SPEED
19 Knots

CRUISING SPEED
15 Knots



DISPLACEMENT
776027.16 Lbs

LOCATION
Newport, Rhode Island, USA



**VIEW ALL PHOTOS**

## Full Specifications



DETAILED DESCRIPTION     +

REQUEST BROCHURE



**Listing Marketed by**

Dirk Johnson
Edmiston & Company Newport
2 Marina Plaza, Goat Island Newport, Rhode Island, 02840 USA

EDMISTON

**I'm interested in LADY MAY**

First Name*

Last Name*

Email*

Phone Number

I'm interested in Listing Name...



## Broker's Other Yachts for Sale



**NEW LISTING**

**2017 METALSHIPS & DOCKS 193' 7"**
MAYBE

Barcelona,   Catalonia,   Spain
**$27,388,689**

Contact

⊕ YATCO



**2002 PALMER JOHNSON 167' 9"**
HELIOS 2

Fort Lauderdale,   Florida,   United States

$15,900,000

Contact



**2014 FEADSHIP 151' 8"**
LADY MAY

Newport,   Rhode Island,   United States

$26,500,000



**2009 BURGER 151' 3"**
NADAN

The Bahamas
**$22,500,000**

Contact



**1991 FEADSHIP 119' 8"**
LADY VICTORIA




**Exhibit 2**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____ 2 _____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY _____ R. Senteio _____
                    Deputy Clerk

AO 386



**1 / 9**

2014 Feadship LADY MAY | 46m

$26,500,000 (£20,812,145)

Price Drop: £4,138,202 (31 May)

United States

## — BASICS

| | |
|---|---|
| Year: | 2014 |
| Make: | Feadship |
| Class: | Motor Yacht |
| Length: | 46.22m |
| Fuel Type: | Diesel |
| Hull Material: | Aluminium |
| Offered By: | Edmiston Monaco |

## — DESCRIPTION

2014 Feadship

In light of multiple offers received to date, the bankruptcy court appointed trustee (who owns the Lady May) has determined to invite any and all interested parties to present their final and best offers by Tuesday May 30th at 5:00 pm (ET). Offers must comply with certain conditions, including a minimum purchase price of $20 million.

Delivered by the renowned Feadship de Vries yard in 2014, LADY MAY shines on the water thanks to her dazzling silver paintwork and unprecedented use of glass, with her tall vertical bow and daring whaleback sheer adding to her presence.

## — CONTACT INFORMATION

Please contact Jamie Edmiston at +377 (0)93 30 54 44

## + OTHER DETAILS

### Disclaimer

The Company offers the details of this vessel in good faith but cannot guarantee or warrant the accuracy of this information nor warrant the condition of the vessel. A buyer should instruct his agents, or his surveyors, to investigate such details as the buyer desires validated. This vessel is offered subject to prior sale, price change, or withdrawal without notice.

## + FEATURES

#### Electrical Equipment

| | |
|---|---|
| Generator: | ✓ |

#### Electronics

| | |
|---|---|
| Radar: | ✓ |
| Wind Speed and Direction: | ✓ |
| Computer: | ✓ |
| TV Set: | ✓ |
| Navigation Centre: | ✓ |
| DVD Player: | ✓ |
| Autopilot: | ✓ |
| Radio: | ✓ |
| Compas: | ✓ |
| GPS: | ✓ |
| VHF: | ✓ |

#### Inside Equipment

| | |
|---|---|
| Stern Thruster: | ✓ |
| Dishwasher: | ✓ |
| Bow Thruster: | ✓ |
| Washing Machine: | ✓ |
| Oven: | ✓ |

| Microwave Oven: | ✓ |
|---|---|
| Air Conditioning: | ✓ |
| Heating: | ✓ |
| Hot Water: | ✓ |
| Refrigerator: | ✓ |
| Fresh Water Maker: | ✓ |
| Deep Freezer: | ✓ |

## + PROPULSION

### Engine 1

| Engine Make: | CAT |
|---|---|
| Engine Model: | C32 ACERT |
| Total Power: | 1900.23hp |
| Fuel Type: | Diesel |

### Engine 2

| Engine Make: | CAT |
|---|---|
| Engine Model: | C32 ACERT |
| Total Power: | 1900.23hp |
| Fuel Type: | Diesel |

## + SPECIFICATIONS

### Speed & Distance

| Cruising Speed: | 15kn |
|---|---|
| Max Speed: | 19kn |
| Range: | 3000nm |

### Dimensions

| Length Overall: | 46.22m |
|---|---|
| Max Draft: | 2.2m |
| Beam: | 9m |

### Tanks

Fresh Water Tank:
Fuel Tank:
Holding Tank:

### Accommodations

| | |
|---|---|
| Cabins: | 5 |
| Heads: | 10 |

**Exhibit 3**

CASE NO. _____ 22-50073

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____ 3 _____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY _R. Senteio_

Deputy Clerk

AO 386

EDMISTON



... YACHTS FOR SALE    LADY MAY

46.22M 152 FT    |    FEADSHIP    |    2014 / 2019    |    10 GUESTS    |    5 CABINS    |    8 CREW

OVERVIEW    PHOTOS    SPECIFICATION    TENDERS & TOYS    PDF    BROCHURE    PRICE    ENQUIRE    SAVE YACHT    COMPARE

Overview

# Lady May yacht for sale

A sleek and innovative yacht from Feadship, with naval architecture by Dubois and interior styling from Redman Whiteley Dixon, LADY MAY is a class apart from any other yacht her size.

Featuring a modern, near-vertical bow and whaleback sheer, this 46m luxury yacht was a winner at the 2015 World Superyacht Awards, in the categories of exterior design, naval architecture and interior design.

In 2019, LADY MAY underwent a comprehensive refit that included a full repaint and successful completion of her 5-year Lloyd's survey.

LADY MAY boasts an unprecedented use of glass, with sliding doors and windows on the flybridge and main deck facilitating a wide range of outdoor/indoor scenarios. A radically different main design, a rotating floor in the main lounge and an exceptionally large refrigeration capacity all add to her allure.

Within, white marble, stainless steel trim, Macassar ebony cabinets and bleached oak joinery create a modern, sophisticated and calming interior. Natural light is maximised throughout the interior

READ MORE

AT A GLANCE

Feadship pedigree

Award winning design by Dubois and RWD

Extensive use of glass for panoramic views throughout the vessel

Magnificent bar extending from main salon onto aft deck

Expansive views in owner's suite on main deck

Partially enclosed and air conditioned sundeck

Committed seller



Photos

# Photo Gallery

Latest photos of Lady May

  

2 / 19

Specification

## 10
Guests

## 5
Cabins

## 8
Crew

| | |
|---|---|
| LENGTH | 46.22M  /  152 FT |
| BEAM | 9M  /  30 FT |
| DRAFT | 2.20M  /  7 FT |

| | |
|---|---|
| GROSS TONNAGE | 406 |
| GUESTS | 10 |
| CABINS | 5 |
| CONFIGURATION | 1 OWNER,  2 TWIN |
| | 2 DOUBLE |
| CREW | 8 |
| BUILDER | FEADSHIP |
| EXTERIOR DESIGNER | DUBOIS NAVAL ARCHITECTS |
| INTERIOR DESIGNER | REDMAN WHITELEY DIXON |
| YEAR | 2014 | 2019 REFITTED |
| CONSTRUCTION | ALUMINIUM |
| ENGINES | 2 X CATERPILLAR (1,900HP) |
| CRUISING SPEED | 15 KNOTS |

Brochure Request

Make Enquiry

Tenders & Toys

# Tenders & Toys

Willams diesel jet 625 260hp

Price

# Price

$26,500,000 usd

**NOT FOR SALE TO US RESIDENTS IN US WATERS**

Advertising of the above vessel in either printed publications on the internet or in any other medium is not permitted without prior permission from the Owner via the Central Agent.
All particulars are given in good faith and are believed to be correct but cannot be guaranteed.

Enquire

# Interested in this yacht?

CONTACT:

DIRK JOHNSON

Yacht Broker

+1 401 965 9189

BROKER INFO >

NEWPORT OFFICE >

First Name*:

Last Name*:

Email Address*:

▼    Telephone*:

Your message*:

Send Enquiry

| | | |
|---|---|---|
| MONTE CARLO | LONDON | NEW YORK |
| +377 93 30 54 44 | +44 20 7495 5151 | +1 212 792 5370 |
| MEXICO CITY | NEWPORT | VIEW ALL |
| +52 555 280 9574 | +1 401 619 2200 | OUR OFFICES > |

PRESS AND MEDIA  /  LEGAL  /  PRIVACY  /  SITEMAP  /  RSS  /  EN
© 2018 EDMISTON  /  ALL RIGHTS RESERVED

**Exhibit 4**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____ 4 _____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY __R. Senteio__

Deputy Clerk

AO 386



# Lady May – New CA for sale

Lady May | 2014/2019 | 46m | Feadship | 10 guests | 8 crew | 5 cabins | 15 knots cruising

*East Coast, USA – Asking $ 26 500 000*

Download brochure



*A sleek and innovative yacht from Feadship, Lady May is a class apart from any other yacht her size, and is offered for sale with Edmiston serving as her court appointed Central Agent*

LADY MAY boasts an unprecedented use of glass, with sliding doors and windows on the flybridge and main deck facilitating a wide range of outdoor/indoor scenarios. A radically different mast design, a rotating floor in the main lounge and an exceptionally large refrigeration capacity all add to her allure.

Within, white marble, stainless steel trim, Macassar ebony cabinets and bleached oak joinery create a modern, sophisticated and calming interior. Natural light is maximised throughout the interior of the vessel, culminating in the stunning views from the owner's

suite.

Perfect for entertaining thanks to her vast one-level, fully air-conditioned upper bridge, LADY MAY will offer her new owner an unmatched on-water experience, whether on deck or inside.Her Bahamas-friendly shallow draft means there are few waters she cannot access.

In 2019, LADY MAY underwent a comprehensive refit that included a full repaint and successful completion of her 5-year Lloyd's survey.

Lady May is offered under court order and any transaction is subject to court approval.

---

## Key features

- Feadship pedigree
- Award winning design by Dubois and RWD
- Extensive use of glass for panoramic views throughout the vessel
- Magnificent bar extending from main salon onto aft deck
- Expansive views in owner's suite on main deck
- Partially enclosed and air conditioned sundeck
- Committed seller

*Not for sale to US residents whilst in US waters.

Also please note - Lady May II, a Windy 52 blackbird, is also available as a separate listing.

View web page

---



**Broker**
Dirk Johnson

**Office**
Newport

**Telephone**
+1 401 965 9189

**Email**
daj@edmiston.com

---

Charter     Buy     Sell     Build     Manage



EDMISTON

Click here to unsubscribe.

**Exhibit 5**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's **EXHIBIT** _____ 5 _____

DATE _____ IDEN.

DATE June 27, 2023 admitted in full EVID.

BY R. Senteio _____

Deputy Clerk

AO 386



---

# Lady May – Now in Newport, RI

Lady May | 2014/2019 | 46m | Feadship | 10 guests | 8 crew | 5 cabins | 15 knots cruising

*Newport, RI, USA – Asking $ 26 500 000*

Download brochure

*46m Lady May is a state-of-the-art yacht that blends design and performance seamlessly, perfect for entertaining or relaxing. Now located in Newport, Rhode Island, she has entered into the FTZ for sale under court order.*

LADY MAY boasts an unprecedented use of glass, with sliding doors and windows on the flybridge and main deck facilitating a wide range of outdoor/indoor scenarios. A radically different mast design, a rotating floor in the main lounge and an exceptionally large refrigeration capacity all add to her allure.

Within, white marble, stainless steel trim, Macassar ebony cabinets and bleached oak

joinery create a modern, sophisticated and calming interior. Natural light is maximised throughout the interior of the vessel, culminating in the stunning views from the owner's suite.

Perfect for entertaining thanks to her vast one-level, fully air-conditioned upper bridge, LADY MAY will offer her new owner an unmatched on-water experience, whether on deck or inside.Her Bahamas-friendly shallow draft means there are few waters she cannot access.

In 2019, LADY MAY underwent a comprehensive refit that included a full repaint and successful completion of her 5-year Lloyd's survey.

Lady May is offered under court order and any transaction is subject to court approval.

---

## Key features

- *Feadship pedigree*
- *Award winning design by Dubois and RWD*
- *Extensive use of glass for panoramic views throughout the vessel*
- *Magnificent bar extending from main salon onto aft deck*
- *Expansive views in owner's suite on main deck*
- *Partially enclosed and air conditioned sundeck*
- *Committed seller*

Also please note - Lady May II, a Windy 52 blackbird, is also available as a separate listing.

View web page

---



**Broker**
Dirk Johnson

**Office**
Newport

**Telephone**
+1 401 965 9189

**Email**
daj@edmiston.com

---

Charter     Buy     Sell     Build     Manage



EDMISTON

Click here to unsubscribe.

**Exhibit 6**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's EXHIBIT _____ 6 _____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY _R. Senteio_

Deputy Clerk

AO 386



# Lady May – Now enrolled in the FTZ in Newport, RI

Lady May | 2014/2019 | 46m | Feadship | 10 guests | 8 crew | 5 cabins | 15 knots cruising

*Newport, RI, USA – Asking $ 26 500 000*

Download brochure



*46m Lady May is now in Newport RI enrolled in the FTZ and is available for inspection on short notice.*

She is a stunning example of the finest Feadship quality on a sporty 46m Dubois aluminium hull with an immaculate RWD interior.

**In light of multiple offers received to date, the bankruptcy court appointed trustee (who owns the Lady May) has determined to invite any and all interested parties to present their final and best offers by <u>Tuesday May 30th at 5:00 pm (ET)</u>.** Offers must comply with certain conditions, including a minimum purchase price of $20 million

comply with certain conditions, including a minimum purchase price of $20 million.

All offers are subject to bankruptcy court approval.

Please contact Dirk Johnson for further details, including offer conditions.

---

## Key features

- *Feadship pedigree*
- *Award winning design by Dubois and RWD*
- *Extensive use of glass for panoramic views throughout the vessel*
- *Magnificent bar extending from main salon onto aft deck*
- *Expansive views in owner's suite on main deck*
- *Partially enclosed and air conditioned sundeck*
- *Committed seller*

Also please note - Lady May II, a Windy 52 blackbird, is also available as a separate listing.

View web page

---



**Broker**
Dirk Johnson

**Office**
Newport

**Telephone**
+1 401 965 9189

**Email**
daj@edmiston.com

---

Charter     Buy     Sell     Build     Manage



EDMISTON

Click here to unsubscribe.

**Exhibit 7**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____ 7 _____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY _R. Senteio_____

Deputy Clerk

AO 386

Click **here** if you are having trouble viewing this message.



## EDMISTON

*Sales Yachts*      *Charter Yachts*      *News*      *Contact Us*

# Market Overview

*Edmiston brokers' give their expert opinions on the market right now*

| Sales | Charter |
|-------|---------|
| SAMADHI 61m – New to the Edmiston fleet | PHOENIX 2 90m – 1930s-style opulence |
| LADY A 55m – Iconic Bannenberg design | DAR 90m – Next-level luxury and privacy |
| SEA FALCON II 47m – New to the Edmiston fleet | SUNRAYS 85m – Incredible amenities |
| KISS 47m - €2M price reduction confirmed | M'BRACE 74m – Head-turning yacht |
| LADY MAY 46m – Award-winning design | ANDREA 74m – Private Master terrace |
| SOSA 38m – New to the Edmiston fleet | RESILIENCE 65m – Pool & Jacuzzi |

# Sales yachts: new and noteworthy opportunities



Samadhi | 61m | Feadship | 2006/2023
€42,500,000



Lady A | 55m | Nishii Zosen-Sterling | 1986/2023
€11,500,000 EU VAT paid

Meticulously maintained and having completed a major refit in May 2023, this pedigree Feadship is pristine. Her timeless Remi Tessier interiors will appeal to most tastes and broker Robert Shepherd says "her impressive list of amenities includes an elevator connecting all decks, an enclosed sun deck gym, and a 2022 Vanquish VQ45 chase boat."

This iconic Jon Bannenberg design was rebuilt in 2018 at a cost of €12m and boasts a redesigned and refitted interior. With masses of volume, an intelligent layout, recently overhauled engines, and huge exterior decks, broker Simon Goldsworthy says "she's one of the most distinctive yachts on the water". EU VAT fully paid in Malta.





Sea Falcon II | 47m | Puglia | 1993/2022
€7,900,000
*Having had her engine room overhauled in 2017 and her five-year class survey completed in 2022, this full displacement yacht with steel hull and aluminium superstructure has been well maintained throughout her ownership. Broker James Lloyd says says "she will be a great purchase for her new owner" and she has a range of 5,000nm.*

Kiss | 47m | Feadship, De Vries | 2015/2022
€27,500,000 EU VAT paid
*Offered in immaculate condition, broker Alex Busher describes KISS as "efficiently engineered, with distinguished good looks and luxurious accommodation, which is well suited to families." Her amenities include a rooftop-style sun deck and a generous beach platform, while her second €2m price reduction this year makes her one of the best deals to be made in 2023.*





Lady May | 46m | Feadship | 2014/2019
$26,500,000
*With award-winning design by Dubois and RWD that includes extensive use of glass offering panoramic views throughout, a partially enclosed air-conditioned sun deck, and a magnificent bar extending from the main salon to the aft deck, broker Dirk Johnson says that "LADY MAY is one of the most outstanding yachts of her size ever built".*

Sosa | 38m | Sanlorenzo | 2018/2023
€13,500,000 EU VAT paid
*Having completed her five-year special surveys, and with extended warranty on the engines until 2025, broker Hans Van Doornmalen says SOSA is "fully loaded" with extras such as an outdoor cinema and fold-down balcony. Her contemporary interiors are easy to personalise, and she is MCA compliant and suitable for use in the USA. Easy to inspect in the south of France.*

*View the full sales fleet*

# +60m charter yachts with summer availability in the Mediterranean





Phoenix 2 | 90m | Lürssen | 2010/2019
€1,150,000 per week
*Available from 14 August in the East Med or 16 August in the West Med, "this Art Deco-inspired yacht is the height of on-the-water opulence" says broker Matthew Gant. It comes with every conceivable amenity, including both indoor and outdoor cinemas, three pools, a wellness centre, and an eye-watering array of toys.*

Dar | 90m | Oceanco | 2018
€1,200,000 per week
*Available from 13 August in the West Med, this luxury yacht with a dedicated Master deck with ocean views, a spa, and sea-view gym is perfect for charter guests looking for the utmost discretion. Broker Anne Lebernicheux says "her specially designed glazing ensures guests can enjoy their holiday away from prying eyes."*





Sunrays | 86m | Oceanco | 2010/2018
€1,150,000 per week
*Available from 4 to 12 August in Naples, SUNRAYS has the kind of features other yachts can only dream about, including an outstanding Master suite, a sun deck with semi-enclosed bar, three Jacuzzis, plus a pool. In addition, broker Charlotte Hanlon says "the lavish spa and lounge can convert into a home cinema."*

M'Brace | 74m | Abeking & Rasmussen | 2018
POA
*Available for charter in the West Med this August, "M'BRACE is one of the most head-turning yachts afloat today" according to broker Robert Shepherd. She's won many awards for her design and comes with unimpeachable Northern European credentials, flexible accommodation, a jaw-dropping pool and a split-level sun deck.*





Andrea | 74m | CRN | 2017
from €890,000 per week

Resilience | 65m | ISA | 2021
from €600,000 per week

*Available from 18 August in the South of France, ANDREA's amenities include a private terrace, indoor and outdoor cinema, sun deck Jacuzzi, glass-bottomed pool, and an enormous fold-out beach club, which all give her huge charter appeal. In fact, she ticks so many boxes, broker Charles Carveles says "she really has everything."*

*Available from 23 August to 7 September, this exquisite yacht was new to charter last season and comes with a raft of amenities. Broker Hannah Wolstenholme says "her pool, Jacuzzi, vast beach club and cinema under the stars, plus Master suite with fold-down balconies, will keep even the most demanding of guests satisfied."*

*View the full charter fleet*

---

# Company news



Edmiston and Gulfstream at EBACE
*Early May, Edmiston was appointed the UK and Channel Islands sales representative for US aircraft designer and developer Gulfstream, which shares our commitment to sustainability and is one of the biggest names in the aerospace world. This week, Edmiston is with Gulfstream at EBACE in Geneva, followed by the Monaco Grand Prix. To find out more, please contact us.*

---





Sales     Charter     Management     New Build

Click **here** if you don't wish to receive these messages in the future.

**Exhibit 8**

CASE NO. _____22-50073_____

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's EXHIBIT _____8_____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY _R. Senteio_____

Deputy Clerk

AO 386





4 images >

# 46m Feadship motor yacht Lady May for sale with Edmiston

4 May 2023 • Written by Nick Jeffery

The 46.2-metre motor yacht *Lady May* is now listed for sale by Dirk Johnson of Edmiston after a change of central agency.

Built of aluminium by Feadship in the Netherlands in 2014, *Lady May* was refitted in 2019, which included a full repaint. Her elegant exterior is by the late Ed Dubois, sporting a near-vertical bow and gently-sweeping sheer, while her contemporary, clean interior is from RWD (formerly Redman Whiteley Dixon).



*Lady May* is asking $26,500,000.

Accommodation is for a party of 10 in five cabins, with "expansive views" from the owner's main deck cabin, thanks in part to an area of glass in the bulwarks. Two twin and two double cabins are found on the lower deck. The broker described *Lady May* as "a class apart from any other yacht of her size", with a "radically different mast design" that enhances her sporty look.



The broker also pointed out the rotating saloon sole as one of *Lady May's* standout features, and that the vessel has "exceptionally large refrigeration capacity". A bar extends from the main saloon out onto the aft deck. White marble, stainless steel trim, Macassar ebony cabinets and bleached oak create a modern, "calming" interior.



Twin 1,900hp Caterpillar diesel engines give the 406GT [yacht for sale](#) a cruising speed of 15 knots.



Boatpro is the world's
leading superyacht market
intelligence platform

*Lady May* is asking $26,500,000. She is offered "under court order" and any transaction is subject to court approval.

**MORE ABOUT THIS YACHT**



**LADY MAY**
Feadship
46.22 m · 2014

POWERED BY **BOAT**

Feadship Motor Yacht Lady May for Sale



Lady May: Inside the 46m Feadship superyacht



Gallery: Inside the Feadship superyacht for sale Lady May



Top brokers react to the Fort Lauderdale International Boat Show 2017



January 2014 superyacht market report

**SIMILAR YACHTS FOR SALE**

**DRIZZLE**
Feadship ·
68.77 m · 12 guests ·
€69,000,000



**SAMADHI**
Feadship ·
60.96 m · 10 guests ·
€42,500,000

SUBSCRIBE TO NEWSLETTERS

84m Feadship Project 710 spotted en route to sea trials

$600k price drop on 33m Benetti yacht Cool Breeze

46m Lürssen motor yacht Lucy III sold

$1M price drop on Ocean Alexander motor yacht Fourth Down

€300K price drop on Wally sailing yacht Inti Cube

Further €500K price drop on 36m Admiral Cinquanta-50

## Most popular



93m Mayan Queen IV rescues at least 100 migrants after boat sinks in Greece

Stewardess dies after fall on board superyacht in Nice

90m Lürssen yacht Norn arrives in London

Akula: Rossinavi launches 59m explorer yacht

## From our partners

Loading image...

New details revealed: Heesen's brand-new XV67 crossover explorer

Loading image...

5 questions with Giovanna Vitelli: Azimut I Benetti chair on its highly-customisable superyacht range

Loading image...

Designer insight: Team reveal the key decisions behind the revolutionary ISA GT70

Loading image...

Co-own a brand new 40m Benetti this summer

Loading image...

Why the 24m wallywhy150 is out of this world

Loading image...

Simpson Marine: How the heritage firm is at the forefront of yachting in the Asia-Pacific

## Sponsored listings

### CHECKMATE

Benetti · 44.2 m · 12 guests ·
$16,500,000

### KAHALANI

Feadship · 55.05 m · 11 guests ·
€42,500,000

### TASIA

Westport · 40 m · 11 guests ·
$12,900,000

### KHALILAH

Palmer Johnson · 49.5 m · 11 guests ·
€24,900,000

### ACACIA

Sunseeker · 39.93 m · 10 guests ·
$12,995,000

### WIDER 210

Wider · 64.01 m · 14 guests ·
€62,400,000



Boatpro is the world's leading superyacht market intelligence platform

# BOAT
International

**More from BOAT International**

About Us

Advertising & Media Kit

Contact Us

Careers

Terms of Use

Cookie Policy

Privacy Policy

Site Map

Yachts

Market Intel

Yachts For Sale

Charter

Destinations

Boat Life

Virtual Boat Show

Boat Presents

Events

Boat Business

Boat Pro

Shop

Follow us on

Subscribe

Sign up to our newsletters

Sign up to BOAT International email newsletters to get the latest superyacht news, business analysis, exclusive event invitations, and more.

SIGN UP

⌃ BACK TO TOP

Boat International Media Ltd © 2008 - 2022.

Content presented under the "BOAT Presents" logo is an advertising feature and Boat International Limited has been paid to include this content.

**Exhibit 9**

CASE NO. _____22-50073_____

IN RE: Ho Wan Kwok

VS. _____

Trustee's **EXHIBIT** _____9_____

**DATE** _____ **IDEN.**

**DATE** __June 27, 2023 admitted in full__ **EVID.**

**BY** R. Senteio

Deputy Clerk

AO 386



**BOAT**
International



8 images

# LADY MAY

Built by Feadship

| LENGTH | TOP SPEED | GT | CREW | DELIVERED | BEAM | GUESTS |
|---|---|---|---|---|---|---|
| 46.22 m | 19 kn | 406 | 8 | 2014 | 9 m | 10 |

LADY MAY is a 46.22 m Motor Yacht, built in Netherlands by Feadship and delivered in 2014.

Her top speed is 19.0 kn, her cruising speed is 15.0 kn, and she boasts a maximum cruising range of 2000.0 nm at 16.5 kn, with power coming from two Caterpillar diesel engines. She can accommodate up to 10 guests in 5 staterooms, with 8 crew members waiting on their every need. She has a gross tonnage of 406.0 GT and a 9.0 m beam.

She was designed by Dubois Naval Architects, who also completed the naval architecture. Dubois Naval Architects has designed 77 yachts and created the naval architecture for 72 yachts.

Her interior was designed by RWD, who has 60 other superyacht interiors designed in the BOAT Pro database - she is built with a Teak deck, a Aluminium hull, and Aluminium superstructure.

LADY MAY is in the top 30% by LOA in the world. She is one of 44 motor yachts in the 45-50m size range, and, compared to similarly sized motor yachts, her top speed is 0.19 kn above the average.

LADY MAY is currently sailing under the Cayman Islands flag, the 2nd most popular flag state for superyachts with a total of 1300 yachts registered. She is currently located at the superyacht marina Safe Harbor Newport Shipyard, in United States of America, where she has been located for 6 days. For more information regarding LADY MAY's movements, find out more about BOAT Pro AIS.

---

### SPECIFICATIONS

| | |
|---|---|
| Name: | Previous Names: |
| LADY MAY | COMO |
| Yacht Type: | Yacht Subtype: |
| Motor Yacht | Semi-displacement |
| Builder: | Naval Architect: |
| Feadship | Dubois Naval Architects |
| Exterior Designer: | Interior Designer: |
| Dubois Naval Architects | RWD |

---

The data for LADY MAY is taken from BOATPro, the world's leading market intelligence platform, which delivers real-time, accurate and reliable superyacht data. To access our pioneering fleet tracker, brokerage market insight, reports and much more get in touch with the BOATPro team.

FIND OUT MORE

REQUEST A DEMO

POWERED BY **BOAT**


OUT NOW...

THE SUPERYACHTS
VOLUME 36

YACHT FEATURED IN

46m Feadship motor yacht Lady May for sale with Edmiston



Lady May: Inside the 46m Feadship superyacht

Gallery: Inside the Feadship superyacht for sale Lady May

Feadship Motor Yacht Lady May for Sale

Top brokers react to the Fort Lauderdale International Boat Show 2017

Como yacht video

January 2014 superyacht market report

## Yachts like this

OBSIDIAN
Feadship · 84.2 m · 2023

NEVER ENOUGH
Feadship · 42.67 m · 1992

DOJO
Feadship · 45.85 m · 1981

FEADSHIP 823
Feadship · 67.4 m · 2023

PROJECT SAKURA
Feadship · 71.76 m · 2025

DIAMARE
Feadship · 46.7 m · 1997

## Sponsored listings

WIDER 210

ACACIA

KHALILAH

Wider · €62,400,000 · 64.01 m · 14 guests

Sunseeker · $12,775,000 · 39.93 m · 10 guests

Palmer Johnson · €24,900,000 · 49.5 m · 11 guests



**More from BOAT International**

About Us

Advertising & Media Kit

Contact Us

Careers

Terms of Use

Cookie Policy

Privacy Policy

Site Map

Yachts

Market Intel

Yachts For Sale

Charter

Destinations

Boat Life

Virtual Boat Show

Boat Presents

Events

Boat Business

Boat Pro

Shop

**Follow us on**

**Sign up to our newsletters**

Sign up to BOAT International email newsletters to get the latest superyacht news, business analysis, exclusive event invitations, and more.

SIGN UP

Subscribe

∧  BACK TO TOP

Boat International Media Ltd © 2008 - 2022.

Content presented under the "BOAT Presents" logo is an advertising feature and Boat International Limited has been paid to include this content.

**Exhibit 10**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's EXHIBIT _____ 10 _____

DATE _____ IDEN.

DATE _ June 27, 2023 admitted in full _ EVID.

BY R. Senteio _____

Deputy Clerk

AO 386


M/Y FOR SALE
127FT (37.8M)
INSPIRED
by Crescent Custom Yachts

# SUPERYACHT TIMES

Log In     Create Account

News     Yachts ⌄     Yachts for Sale ⌄     Business ⌄     Market ⌄     Design & Interior ⌄     How to Build It ⌄     Events ⌄   |   YachtEye     SYT iQ   |







+26

## Lady May Yacht   FOR SALE   ★ PREMIUM

Ex: Como

46.22 m (151'6" )  |  406 GT  |  Feadship  |  2014  |  **$26,500,000** (€24,187,610)

**Request Brochure**     **Request Full Specs**     **Request Deck Plans**

Overview     Photos     News & Events     Sales Info

## Lady May Yacht Overview

### About Lady May Yacht

Lady May is a motor yacht with an overall length of 46.22 m. The yacht's builder is Feadship from The Netherlands, who launched Lady May in 2014. The superyacht has a beam of 9 m, a draught of 2.2 m and a volume of 406 GT.

Lady May features exterior design by Dubois Naval Architects Ltd. and interior design by RWD. Up to 10 guests can be accommodated on board the superyacht, Lady May, and she also has accommodation for 8 crew members, including the ship's captain. Lady May has an aluminium hull and an aluminium superstructure. She is powered by 2 Caterpillar Inc engines, which give her a top speed of 19 kn. The yacht carries 51,000 litres of fuel on board.

In the world rankings for largest yachts, the superyacht, Lady May, is listed at number 1359. She is the 131st-largest yacht built by Feadship. Lady May's owner is

shown in SYT iQ and is exclusively available to subscribers. On SuperYacht Times, we have 31 photos of the yacht, Lady May, and she is featured in 25 yacht news articles.

Lady May is for sale at an asking price of $26,500,000 , and can be purchased via Edmiston. There are currently 1,741 yachts for sale in the world. It is not yet known whether or not Lady May has a superyacht infotainment system by YachtEye.

---

### Lady May Yacht is for sale

## $26,500,000
€24,187,610



Edmiston

**Contact Broker**

Lady May yacht owner, broker or captain, use the Update Sales Info link to report any changes in the sales information. Update sales info

---

ADVERTISEMENT



---

### Lady May Yacht Exterior

**All Exterior Photos** ›

Lady May is a 46.22 m motor yacht with a volume of 406 GT. The exterior architecture was designed by Dubois Naval Architects Ltd..

**EXTERIOR DESIGNER**
Dubois Naval Architects Ltd.



---

## Lady May Yacht Interior

**All Interior Photos** ›

Lady May is a 46.22 m motor yacht with a volume of 406 GT. The interior architecture was designed by RWD.

**INTERIOR DESIGNER**
RWD



---

## Lady May Yacht Specifications

**DIMENSIONS**

| | |
|---|---|
| OVERALL LENGTH | 46.22 m |
| BEAM | 9.0 m |
| DRAUGHT MAX. | 2.2 m |
| GROSS TONNAGE | 406 |

**BUILD**

| | |
|---|---|
| BUILDER | |

Feadship

| | |
|---|---|
| **PORT** | Aalsmeer |
| **COUNTRY** | Netherlands |
| **YEAR** | 2014 |

**MATERIAL**

| | |
|---|---|
| **HULL** | Aluminium |
| **SUPERSTRUCTURE** | Aluminium |

**DESIGN**

| | |
|---|---|
| **NAVAL** | Dubois Naval Architects Ltd. |
| **EXTERIOR** | Dubois Naval Architects Ltd. |
| **INTERIOR** | RWD |

**VESSEL DETAILS**

| | |
|---|---|
| **PREVIOUS NAMES** | Como |
| **TYPE** | Motor |
| **SUBTYPES** | Flybridge |
| **CLASS** | Lloyd's Register |
| **HULL TYPE** | Mono Hull |
| **HULL CONFIGURATION** | Semi-displacement |
| **NUMBER OF DECKS** | N/A |

**ACCOMMODATION**

| | |
|---|---|
| **NUMBER OF GUESTS** | 10 |
| **NUMBER OF CREW** | 8 |
| **CREW CABINS** | 4 |

**PERFORMANCE & CAPABILITIES**

| | |
|---|---|
| **MAX. SPEED** | 19.0 kn |
| **CRUISE SPEED** | 15.0 kn |
| **SPEED/RANGE** | 14.0/3000 n/M |
| **FUEL CAPACITY** | 51,000 L |
| **WATER CAPACITY** | 16,000 L |

**PROPULSION**

| | |
|---|---|
| **TYPE** | Propellers |
| **COUNT** | 2 |

**ENGINES**

| | |
|---|---|
| **MANUFACTURER** | Caterpillar Inc |
| **MODEL** | C32 |
| **TYPE** | Diesel |
| **POWER** | 1,417 kW | 1,900 HP |
| **COUNT** | 2 |
| **TOTAL POWER OUTPUT** | 1,417 kW | 1,900 HP |



**Request Full Specs**

---

## Contact Broker

**ASKING PRICE**

# $26,500,000
€24,187,610

Lady May yacht owner, broker or captain, use the Update Sales Info link to report any changes in the sales information. **Update sales info**

**LISTED BY**



**Edmiston**

📞 Call Broker



### Send enquiry

**RECIPIENT**

Edmiston

**FULL NAME**

E.g. Jane Doe

**WORK EMAIL**

e.g. jane.doe@domain.com

**ENQUIRY**

E.g. Hello, could you please send me more information about the yacht Carinthia VII?

**Send enquiry**



Loading...



SUPERYACHT TIMES

Newsletter

email@superyachttimes.com

Subscribe

Follow Us

Shop

Visit the SuperYacht Times online shop to view and order the latest market reports and newspaper issues.

Go to SYT shop

Yachts   See All >

Sailing Yachts
Motor Yachts

By Shipyard
Feadship
Benetti
Azimut
Lürssen
Sanlorenzo
Westport
Heesen
SilverYachts

By Type
Explorer
Sport Fishermen
Flybridge
Trawler
Sport

For Sale   See All >

Sailing Yachts
Motor Yachts

By Shipyard
Feadship
Benetti
Azimut
Lürssen
Sanlorenzo
Westport
Heesen
SilverYachts

By Type
Explorer
Sport Fishermen
Flybridge
Trawler
Sport

SYT Products

YachtEye
SYT 3D
SYT iQ
Market Reports

About | Team | Careers | Contact | Disclaimer | Terms & Conditions | Privacy Policy

© SuperYacht Times B.V. // All rights reserved.

**Exhibit 11**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's EXHIBIT _____ 11 _____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY __ R. Senteio _____

Deputy Clerk

AO 386

Instagram

Search

Log In    Sign Up



edmistonyachts · Follow

edmistonyachts We are delighted to welcome previous World Superyacht Award winner, Lady May, to our sales fleet.

This 46m @feadship is a class apart from any other yacht her size, with naval architecture by Dubois and interior styling from Redman Whiteley Dixon. She is newly for sale through Edmiston.

Get in touch to speak with one of our

246 likes
APRIL 29

Log in to like or comment.

More posts from edmistonyachts



See more posts

Log into Instagram

Log in to see photos and videos from friends and discover other accounts you'll love.

Log in

Sign Up

**Exhibit 12**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____ 12 _____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY R. Senteio

Deputy Clerk

AO 386

       

Home · My Network 4 · Jobs · Messaging 1 · Notifications 23 · Me ▾ · For Business ▾

**Edmiston**
12,911 followers

+ Follow

View full page

**Edmiston**
12,911 followers
1mo • Edited • 🌐

+ Follow   •••

We are delighted to welcome previous World Superyacht Award winner, Lady May, to our sales fleet.

This 46m Feadship is a class apart from any other yacht her size, with naval architecture by Dubois and interior styling from Redman Whiteley Dixon. She is newly for sale through Edmiston.

Get in touch to speak with one of our brokers.

https://lnkd.in/e7XuhNDq

#edmiston #yachtsales #yachtlife #superyacht #superyachtindustry





+1

😊❤️ 68                                                1 repost

**Reactions**

 +60

Congrats...   I think this is...   I'd be happy to...   Great to hear...   ›



👍 Like   💬 Comment   🔁 Repost   ➤ Send

Add a comment...

Promoted ···

Attorney Needed ASAP

We need attorneys to help our legal clients. Free trial to view cases.

Master's in Asset Mgmt

Launch your career in asset management by spending a year at Yale.

Learn more    Learn more

Similar pages

**Fraser Yachts**
Leisure, Travel & Tourism
51-200 employees
+ Follow

**Burgess**
Leisure, Travel & Tourism
51-200 employees
+ Follow

**Camper & Nicholsons**
Leisure, Travel & Tourism
201-500 employees
+ Follow

Show more ⌄

**Exhibit 13**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok

VS. _____

Trustee's **EXHIBIT** _____ 13 _____

**DATE** _____ **IDEN.**

**DATE** _June 27, 2023 admitted in full_ **EVID.**

BY R. Senteio

Deputy Clerk

AO 386

## Bongartz, Alex

| | |
|---|---|
| **From:** | Bongartz, Alex |
| **Sent:** | Thursday, May 25, 2023 5:07 PM |
| **To:** | 'Dirk Johnson'; ███████████ |
| **Cc:** | Despins, Luc A. |
| **Subject:** | RE: Lady May |
| **Attachments:** | IYBA_Purchase_and_Sale (Lady May).pdf; Lady May -- Addendum to Purchase and Sale Agreement for Brokerage Vessel(170684284_5).DOCX; Redline - PSA -- Conformed Copy of PSA.pdf; PSA -- Conformed Copy of PSA.docx |

Dear ████ :

Further to Dirks' email below, please see attached:

(1) The standard-form of purchase and sale agreement (the "PSA"), with the boxes on top of page 1 and Section 15 filled in (but otherwise not reflecting any modifications);
(2) The addendum to the PSA (the "Addendum"), which sets forth our modifications to the PSA; and
(3) A clean and redline of a conformed copy of the PSA, showing the modifications we made to the body of the PSA.

We created the redline of the conformed PSA to illustrate our modifications, and it is probably the most useful document to review.  However, the operative documents would be standard-form PSA together with the Addendum.

As Dirk mentioned in his email below, to the extent you intend to modify the form of PSA, please include a mark-up of the agreement as part of your bid (such modifications, if any, will be evaluated in determining the highest and/or best offer).

Please contact me if you have any questions.

Best regards,

Alex



**G. Alexander Bongartz** | **Of Counsel** | **Financial Restructuring Group**
Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 | Direct: +1.212.318.6472 | M
+1.212.318.6000 | Fax: +1.212.303.7072 | alexbongartz@paulhastings.com |
www.paulhastings.com

**From:** Dirk Johnson <DAJ@Edmiston.com>
**Sent:** Wednesday, May 24, 2023 10:27 AM
**To:** ███████████████████████
**Cc:** Despins, Luc A. <lucdespins@paulhastings.com>; Bongartz, Alex <alexbongartz@paulhastings.com>
**Subject:** [EXT] Lady May



**--- External Email ---**

Dear ███ ,

On behalf of trustee representing the Lady May in the chapter 11 cases currently pending in the District of Connecticut, we appreciate your previous offer and interest in the 46m 2014 Feadship Lady May. Due to the fact that the Lady May has received offers from several potential buyers, we are inviting all interested parties to present their best and final offer prior to **Tuesday, May 30th at 5:00 p.m. (EST)**. Such offers should be addressed to the trustee at lucdespins@paulhastings.com. In order to expedite the process, the terms of such offers should include the following:

- Only offers with a purchase price in excess of $20,000,000 will be considered by the trustee;
- Offers must be based on the trustee's form of purchase agreement (we will provide you with the form of agreement by end of day tomorrow, Thursday, May 25);
  - To the extent you intend to modify such form of purchase agreement, please include a mark-up of the agreement as part of your bid (such modifications, if any, will be evaluated in determining the highest and/or best offer);
- The winning bid must provide for a 20% deposit, which deposit must be received within 48 hours after such bid has been selected as the winning bid;
  - The 20% deposit will be forfeited if winning bidder fails to close on purchase of Lady May in accordance with terms of purchase agreement (to be clear, the purchase agreement will allow buyer to terminate the agreement if the survey reveals a defect affecting the operational integrity of the Lady May or her machinery or her systems or renders the Lady May unseaworthy);
- The purchase agreement must be executed by June 9th;
- Acceptance/rejection (based on results of survey) to occur by June 28th;
  - In the event the winning bidder does not close on the purchase at the price set forth in the purchase agreement, the chapter 11 trustee may, at his option, purchase the survey from the buyer, at cost;
- Closing to take place as soon as practical on or before July 20th; and
- All offers are subject to bankruptcy court review and approval.

Thank you for your interest in Lady May. Please do hesitate to call me for questions.

Kind regards,
Dirk Johnson
Edmiston



**Dirk Johnson**

Sales Broker

T +1 401 619 2200     Edmiston

M +1 401 965 9189     Two Marina Plaza

Goat Island

Newport

Rhode Island, 02840, USA

SALES | CHARTER | NEW CONSTRUCTION | MANAGEMENT



**CYBER FRAUD WARNING** – PLEASE DO NOT ACCEPT ANY NOTICE OF A CHANGE OF ACCOUNT DETAILS BY EMAIL WITHOUT FIRST CONFIRMING WITH US IN PERSON. EDMISTON WILL NOT ACCEPT RESPONSIBILITY FOR FUNDS TRANSFERRED TO THE INCORRECT ACCOUNT.

Legal Notice

The information in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is unauthorised. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it is prohibited and may be unlawful. If you receive this email unintentionally please delete it and contact the sender immediately.



# PURCHASE AND SALE AGREEMENT
# FOR BROKERAGE VESSEL

| BUYER: | | SELLER: | Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok |
|---|---|---|---|
| Address: | | Address: | |
| | | | |
| Nationality: | | Nationality: | |
| VESSEL NAME: | | MANUFACTURER: | |
| Model: | | Length Overall: | |
| Year: | | ☐ Doc or ☐ Reg No.: | Flag: |
| Hull No.: | | Engine Description: | |
| Selling Broker: | | Listing Broker: | |
| **IMPORTANT DATES** | | **PURCHASE PRICE** | |
| Offer Date: | | Purchase Price: | |
| Offer Expiration Date: | | Less Deposit: | |
| Accept/Reject Date: | | Less Trade Allowance (see Addendum): | |
| Closing Date: | | Balance: | |

**Delivery Location:**
*NOTE:* If Vessel is to be moved to the Delivery Location, such location must *be specified with precision. The mere listing of a port or city is insufficient.*

**ADDITIONAL REGISTERED VESSELS INCLUDED ___ Yes ___ No**

1. **Agreement**. Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which is has been signed by both parties. "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel.  Listing Broker and Selling Broker shall be referred to herein as the "Brokers."  If there is a Trade Allowance, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2. **Deposit**. Within _____ business days (3 business days if left blank) following Seller's signature of this PSA, Buyer shall pay the Deposit to the Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held subject to the terms of this PSA.  Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Selling Broker's escrow account.

3. **Survey Option; Acceptance of Vessel; Conditions of Survey**.  Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected.  If inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) *Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable*, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay *all* costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date.  *Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have rejected the Vessel if it fails to give timely written notice of its acceptance.*  Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location.  If Buyer

Buyer's Initials: _____                                                                                    Seller's Initials: _____

                ©2020 International Yacht Brokers Association.  All rights reserved.                Rev.3.10.20

*This form was prepared for the exclusive use and benefit of the members of the IYBA.  The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use.  The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

rejects or is deemed to reject the Vessel, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4. **Closing**. The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable title to Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and/or to the Selling Broker for onward transfer to Seller by wire transfer. Any funds Seller owes to (i) the Brokers for the commission, storage, insurance, repairs and/or other items or (ii) the holder of any other Encumbrance, will be deducted from the amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.

5. Brokers. The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability; provided, however, that in such instance the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6. **Seller's Representations; Requirements for Closing**. Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing), (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6, and (e) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any governing authority. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents,(iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7. Risk of Loss; *Force Majeure.* Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a) Seller must repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, (b) Buyer must pay the Balance and take delivery of the Vessel as repaired, and (c) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable control ("*Force Majeure* Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, or other natural disasters. If a *Force Majeure* Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the *Force Majeure* Event delays the Closing Date for a period of at more than 30 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8. **Default**. *Notwithstanding anything herein to the contrary, if the Deposit is not paid when due* or Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the

Buyer's Initials: _____                                                                                   Seller's Initials: _____

©2020 International Yacht Brokers Association. All rights reserved.                      Rev. 3.10.20

purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA. Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.

9. **Sales and Use Taxes**. Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling Broker at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10. **REPRESENTATIONS AND WARRANTIES**. SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ON THE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS **"AS IS"** CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, *ALL OF WHICH ARE DISCLAIMED.*

11. **Financing**. Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12. **Counterparts**. The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13. **Binding Effect; Contemporaneous Contracts; Future Sales**. This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14. **Escrowed Funds**. The parties acknowledge that (a) the Selling Broker will not be responsible for the Deposit until the funds have cleared into the Selling Broker's account, (b) the Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Selling Broker may retain the commission due the Brokers prior to disbursement of the Deposit or Balance to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment, to have engaged in willful misconduct or acted with gross negligence.

15. **Additional Terms**. _____

_____

16. **Miscellaneous**. This PSA, including its exhibits and schedules, is the ***entire agreement*** between the parties pertaining to the subject matter hereof and ***supersedes*** all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall be entitled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable. There are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, except in writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, email, or other electronic means, and shall be effective upon delivery with proof of delivery retained. Buyer may assign this PSA to

Buyer's Initials: _____                                                                                     Seller's Initials: _____

 ©2020 International Yacht Brokers Association. All rights reserved. Rev. 3.10.20

any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, neither party may assign this PSA without the other party's consent, which consent shall not be unreasonably withheld.  No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given.  Paragraph headings are informational and included only for convenience.

**17.** **Governing Law and Dispute Resolution**. **Check (a), (b) or (c). If none checked, (a) will apply.**  Any dispute involving this Agreement will be resolved: **(a)** [___] in the courts located in the State of _____ (Florida, if left blank), **(b)** [___] by binding arbitration in the State of _____ (Florida, if left blank), **(c)** [___] by binding arbitration in London, England.  *If (a) or (b) is selected*: (i) this Agreement will be governed by and interpreted according to the law of the State of _____ (Florida, if left blank) regardless of its principles of conflicts-of-laws and (ii) the proceedings will be conducted in the county of the main office of the Selling Broker, or if the Selling Broker has no office in Florida, in _____ (Fort Lauderdale, Florida, if no other city indicated). *If (b) is selected*, the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in force when the arbitration is commenced will apply unless the following rules apply: _____. If the amount in controversy including counterclaims is not more than USD $1,000,000.00, the parties shall jointly select a single arbitrator from the list of arbitrators maintained by the International Yacht Brokers Association ("IYBA") within twenty (20) days of the giving of notice of arbitration. If the parties are unable to agree upon the arbitrator, the IYBA shall have the power to make the appointment of the single arbitrator.  If the amount in controversy is greater, the parties shall each appoint one arbitrator and the two arbitrators will jointly appoint a third arbitrator. If they cannot agree on the third arbitrator within 14 days, either party may request that the IYBA appoint the third arbitrator from the list of arbitrators maintained by the IYBA.  The decision of the single arbitrator, or if a three abitrator panel, any two of them will be final and binding on the parties.  An action may be brought in any court of competent jurisdiction to enforce any arbitral award or compel arbitration.  If (c) is selected: (i) this Agreement will be governed by and interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii)  the parties irrevocably agree that any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) the arbitration shall be conducted in accordance with the rules of London Maritime Arbitrators Association ("LMAA") current when the arbitration is commenced,  (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while if greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. Whatever option is selected, the parties irrevocably submit to the exclusive jurisdiction of such court or arbitral forum, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the proceeding will be decided only in such court or arbitral forum and, further, not to bring any claim relating to this Agreement in any other court or arbitral forum.  The parties, having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this Agreement, whether against each other or any Broker.

**BUYER:**                                                          **SELLER:**

_____                    _____
Print: _____            Print: _____
Title: _____            Title: _____
Date: _____            Date: _____

**SELLING BROKER  DEPOSIT CONFIRMATION (Subject to clearance of funds)**

Print: _____            Amount: _____
Title: _____            Date: _____

*This form was prepared for the exclusive use and benefit of the members of the IYBA.  The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

**Addendum to Purchase and Sale Agreement for Brokerage Vessel, executed on [-----], 2023, Between (i) Luc A. Despins, as the Chapter 11 Trustee for the Estate of Ho Wan Kwok and (ii) [------------] (the "Addendum")**

Capitalized terms used but not defined herein have the meanings set forth in the Purchase and Sale Agreement for Brokerage Vessel, executed on [-------], 2023, with respect to the Lady May (the "PSA"). For the avoidance of doubt, any reference to the PSA (whether in this PSA or the Addendum) shall be to the PSA as modified by this Addendum.

1. Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2. The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "Chapter 11 Case"), is pending.

3. Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court. For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4. Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

5. The fourth and fifth sentences in Section 1 of the PSA are hereby modified as follows:

   "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this **PSA. There will be no Exclusions List.**Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. **For the avoidance of doubt, the Lady May II is not included as part of the sale of the Vessel pursuant to this PSA.**

6. The eighth sentence in Section 1 of the PSA is hereby modified as follows:

1

**There shall be no** If there is a Trade Allowance **in connection with the sale of the Vessel pursuant to this PSA**, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum.

7.  Section 2 of the PSA is hereby modified as follows:

Within _____ business days (3 business days if left blank)) following Seller's signature of this PSA, **On [-----], 2023,** Buyer **paid**shall pay the Deposit to the **Seller's**Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held **in escrow** subject to the terms of this PSA.  Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspection of the Vessel until the Deposit has cleared into the **Seller's**Selling Broker's escrow account.

8.  Section 3 of the PSA is hereby modified as follows:

Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected**; provided, however, that Buyer may only reject the Vessel if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality to and value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy. For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds.** If **the Buyer decides to have a survey conducted**inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable**, such that the survey is completed prior to the Accept/Reject Date**, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date.  Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have **accepted**rejected the Vessel if it fails to give timely written notice of its **rejection**acceptance **in accordance with this PSA**.  Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in

2

Paragraph 4) except to move the Vessel to the Delivery Location.  If Buyer rejects or is deemed to reject the Vessel **in accordance with this PSA and is not otherwise in breach of this PSA**, ~~after all expenses incurred on Buyer's behalf have been paid,~~ (i) the **Seller** ~~Selling Broker~~ shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder.  The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

9.  The sixth sentence in Section 4 of the PSA is hereby modified as follows:

At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) **and the Deposit shall be released to Seller, subject to the deduction in the immediately following sentence** ~~and/or to the Selling Broker for onward transfer to Seller by wire transfer~~.  Any funds Seller owes to ~~(i)~~ the Brokers for the commission, storage, insurance, repairs and/or other items **(which are subject to approval of the Bankruptcy Court)** ~~or (ii) the holder of any other Encumbrance,~~ will be deducted from the ~~amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof~~ **Deposit and paid to the Brokers prior to the release of the Deposit to Seller.  For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.**

10. The second sentence of Section 5 of the PSA is hereby modified as follows:

If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller ~~, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability~~; provided, however, that in such instance **(a)** the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price **and (b) the Broker have no duties to the Buyer in connection with the sale of the Vessel** ~~or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price~~.

11. The second sentence of Section 6 of the PSA is hereby modified as follows:

No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing)**, which proof may be the order entered by the**

3

**Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances)**, ~~(c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6,~~ and (**c**~~e~~) copies of any other documents necessary for transfer of good and marketable title to Buyer.

12. The second and third sentences of Section 7 of the PSA are hereby modified as follows:

If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then**, at the Seller's option,** ~~(a)~~ Seller **may**~~must~~ repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, **in which case (a**~~b~~**)** Buyer **shall**~~must~~ pay the Balance and take delivery of the Vessel as repaired~~,~~ and (**b**~~c~~) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance **or Seller does not exercise the option in the foregoing sentence**, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

13. Section 8 of the PSA is hereby modified as follows:

Notwithstanding anything herein to the contrary, if ~~the Deposit is not paid when due or~~ Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by ~~(or if the Deposit was not paid, Buyer shall pay a like amount to)~~ Seller ~~and the Brokers~~ as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA**, provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer**. ~~Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same~~

4

~~proportions as the commission would have been divided had a sale been consummated.~~ If the Closing is not consummated due to Seller's non-performance **(which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA)**, the Deposit, and any other money paid or deposited by Buyer~~,~~ pursuant to this PSA**,** will be returned to Buyer upon demand ~~or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy.~~ **If Closing is not consummated due to Seller's non-performance**~~On Seller's default~~, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed**; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel in accordance with this PSA. Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.**

14. The first sentence of Section 9 of the PSA are hereby modified as follows:

> Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the **Trustee**~~Selling Broker~~ at Closing.

15. The following sentence is hereby added after the first sentence of Section 11 of the PSA:

> **Buyer represents and warrants that it has sufficient cash and/or financing to fund the Purchase Price at Closing.  Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok.**

16. Section 14 of the PSA are hereby modified as follows:

> The parties acknowledge that (a) the **Seller**~~Selling Broker~~ will not be responsible for the Deposit until the funds have cleared into the **Seller's**~~Selling Broker's~~ account, (b) the **Seller**~~Selling Broker~~ shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that

5

party, (c) the **Seller**~~Selling Broker~~ **shall pay, in accordance with this PSA,**~~may retain~~ the commission due the Brokers prior to **the release**~~disbursement~~ of the Deposit ~~or Balance~~ to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment **of the Bankruptcy Court**, to have engaged in willful misconduct or acted with gross negligence.

17. The second and third sentences of Section 16 of the PSA are hereby modified as follows:

If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA**, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings**, unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**.

18. The ninth and tenth sentences of Section 16 of the PSA are hereby modified as follows:

~~Buyer may assign this PSA to any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, n~~**N**either party may assign this PSA without the other party's consent~~, which consent shall not be unreasonably withheld~~.

**Seller**

By: _____

Name: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok

Date: _____

**Buyer**

By: _____

6

Name: _____

Title: _____

Date: _____

**Standalone Provisions from Addendum:**

1.  Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2.  The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "Chapter 11 Case"), is pending.

3.  Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court.  For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4.  Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

\*\*\*\*\*

**Conformed Version of PSA**

1.  **Agreement**. Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which is has been signed by both parties.  "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this PSA.  There will be no Exclusions List.  For the avoidance of doubt, the Lady May II is not included as part of the sale of the Vessel pursuant to this PSA. Listing Broker and Selling Broker shall be referred to herein as the "Brokers." There shall be no Trade Allowance in connection with the sale of the Vessel pursuant to this PSA. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2.  **Deposit**. On [____], 2023, Buyer paid the Deposit to the Seller's account, as acknowledged below, as a deposit toward the Purchase Price to be held in escrow subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Seller's escrow account.

1

3.      **Survey Option; Acceptance of Vessel; Conditions of Survey**. Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected; provided, however, that Buyer may only reject the Vessel if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality to and value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy.  For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds. If the Buyer decides to have a survey conducted: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable, such that the survey is completed prior to the Accept/Reject Date, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have accepted the Vessel if it fails to give timely written notice of its rejection in accordance with this PSA. Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer rejects or is deemed to reject the Vessel in accordance with this PSA and is not otherwise in breach of this PSA, (i) the Seller shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4.      **Closing**. The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable title to Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and the Deposit shall be released to Seller, subject to the deduction in the immediately following sentence.  Any funds Seller owes to the Brokers for the commission, storage, insurance, repairs and/or other items (which are subject to approval of the Bankruptcy Court) will be deducted from the Deposit and paid to the Brokers prior to the release of the Deposit to Seller. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the

2

Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.

5.    **Brokers**. The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller; provided, however, that in such instance (a) the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price and (b) the Broker shall have no duties to the Buyer in connection with the sale of the Vessel.  If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6.    **Seller's Representations; Requirements for Closing**. Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing), which proof may be the order entered by the Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances), and (c) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any governing authority. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents, (iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7.    **Risk of Loss; Force Majeure**. Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then, at the Seller's option, Seller may repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, in which case, (a) Buyer shall pay the Balance and take delivery of the Vessel as repaired and (b) the Closing Date will be extended by the length of

3

the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance or Seller does not exercise the option in the foregoing sentence, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable control ("Force Majeure Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, or other natural disasters. If a Force Majeure Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the Force Majeure Event delays the Closing Date for a period of at more than 30 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8.      **Default**. Notwithstanding anything herein to the contrary, if Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by Seller as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA; provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer. If the Closing is not consummated due to Seller's non-performance (which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA), the Deposit, and any other money paid or deposited by Buyer pursuant to this PSA, will be returned to Buyer upon demand. If Closing is not consummated due to Seller's non-performance, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel.  Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.

9.      **Sales and Use Taxes**. Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Trustee at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10.     **REPRESENTATIONS AND WARRANTIES**. SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ONTHE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO

4

NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS "AS IS" CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, ALL OF WHICH ARE DISCLAIMED.

11.    **Financing**. Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer represents and warrants that it has sufficient cash and/or financing available to fund the Purchase Price at Closing. Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12.    **Counterparts**. The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13.    **Binding Effect; Contemporaneous Contracts; Future Sales**. This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14.    **Escrowed Funds**. The parties acknowledge that (a) the Seller will not be responsible for the Deposit until the funds have cleared into the Seller's account, (b) the Seller shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Seller shall pay, in accordance with this PSA, the commission due the Brokers prior to the release of the Deposit to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence.

15.    **Additional Terms**. See Addendum attached hereto.

5

16.     **Miscellaneous**. This PSA, including its exhibits and schedules, is the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court to have engaged in willful misconduct or acted with gross negligence. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings, unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable.  There are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, except in writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, email, or other electronic means, and shall be effective upon delivery with proof of delivery retained. Neither party may assign this PSA without the other party's consent. No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given. Paragraph headings are informational and included only for convenience.

17.     **Governing Law and Dispute Resolution**. The parties, having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this PSA, whether against each other or any Broker.

6

**Standalone Provisions from Addendum:**

1. Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2. The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "Chapter 11 Case"), is pending.

3. Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court.  For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4. Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

**\*\*\*\*\***

**Conformed Version of PSA**

1.      **Agreement**. Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which is has been signed by both parties.  "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this ~~Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are~~PSA.  There will be no Exclusions List.  For the avoidance of doubt, the Lady May II is not included ~~in~~as part of the sale. ~~Buyer will be deemed to have accepted the Exclusion List if it accepts~~ of the Vessel pursuant to this PSA. Listing Broker and Selling Broker shall be referred to herein as the "Brokers." ~~If there is a~~There shall be no Trade Allowance~~, the conditions of the trade-in shall be governed by the attached Trade-In Vessel Addendum~~ in connection with the sale of the Vessel pursuant to this PSA. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

1

2.      **Deposit**. ~~Within _____ business days (3 business days if left blank) following Seller's signature of this PSA~~On [_____], 2023, Buyer ~~shall pay~~paid the Deposit to the ~~Selling Broker's~~Seller's account, as acknowledged below, as a deposit toward the Purchase Price to be held in escrow subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the ~~Selling Broker's~~Seller's escrow account.

3.      **Survey Option; Acceptance of Vessel; Conditions of Survey**. Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction~~, in Buyer's sole discretion,~~ with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected~~. If inspected~~; provided, however, that Buyer may only reject the Vessel if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality to and value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy.  For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds. If the Buyer decides to have a survey conducted: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable, such that the survey is completed prior to the Accept/Reject Date, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have ~~rejected~~accepted the Vessel if it fails to give timely written notice of its ~~acceptance~~rejection in accordance with this PSA. Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer rejects or is deemed to reject the Vessel~~, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker~~ in accordance with this PSA and is not otherwise in breach of this PSA, (i) the Seller shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4.      **Closing**. The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable title to Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to

2

transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and ~~/or to the Selling Broker for onward transfer~~ the Deposit shall be released to Seller ~~by wire transfer~~, subject to the deduction in the immediately following sentence. Any funds Seller owes to ~~(i)~~ the Brokers for the commission, storage, insurance, repairs and/or other items ~~or (ii) the holder of any other Encumbrance,~~ which are subject to approval of the Bankruptcy Court) will be deducted from the ~~amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.~~ Deposit and paid to the Brokers prior to the release of the Deposit to Seller. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.

5.      **Brokers**. The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller ~~, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability~~; provided, however, that in such instance (a) the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price ~~or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price~~ and (b) the Broker shall have no duties to the Buyer in connection with the sale of the Vessel. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6.      **Seller's Representations; Requirements for Closing**. Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing), ~~(c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6~~ which proof may be the order entered by the Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances), and (~~e~~c) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any

governing authority. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents, (iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7.     **Risk of Loss; Force Majeure**. Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a), at the Seller's option, Seller mustmay repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, in which case, (ba) Buyer mustshall pay the Balance and take delivery of the Vessel as repaired, and (eb) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance or Seller does not exercise the option in the foregoing sentence, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable control ("Force Majeure Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, or other natural disasters. If a Force Majeure Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the Force Majeure Event delays the Closing Date for a period of at more than 30 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8.     **Default**. Notwithstanding anything herein to the contrary, if the Deposit is not paid when due or Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA. Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been; provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer. If the Closing is not consummated due to Seller's non-performance (which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA),

the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA, will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. On Seller's default. If Closing is not consummated due to Seller's non-performance, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel. Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.

9.    **Sales and Use Taxes**. Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling BrokerTrustee at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10.    **REPRESENTATIONS AND WARRANTIES**. SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ONTHE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACYOF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITHTHIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS "AS IS" CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TOTHE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, ALL OF WHICH ARE DISCLAIMED.

11.    **Financing**. Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer represents and warrants that it has sufficient cash and/or financing available to fund the Purchase Price at Closing. Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12.     **Counterparts**. The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13.     **Binding Effect; Contemporaneous Contracts; Future Sales**. This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14.     **Escrowed Funds**. The parties acknowledge that (a) the ~~Selling Broker~~Seller will not be responsible for the Deposit until the funds have cleared into the ~~Selling Broker's~~Seller's account, (b) the ~~Selling Broker~~Seller shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the ~~Selling Broker may retain~~Seller shall pay, in accordance with this PSA, the commission due the Brokers prior to ~~disbursement~~the release of the Deposit ~~or Balance~~ to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence.

15.     **Additional Terms**. ~~———————————————~~ See Addendum attached hereto.

16.     **Miscellaneous**. This PSA, including its exhibits and schedules, is the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court to have engaged in willful misconduct or acted with gross negligence. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings., unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable.  There are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, except in writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as effective as if

6

given by to or that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, email, or other electronic means, and shall be effective upon delivery with proof of delivery retained. ~~Buyer may assign this PSA to any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family.  Otherwise, neither~~ Neither party may assign this PSA without the other party's consent~~, which consent shall not be unreasonably withheld~~. No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given. Paragraph headings are informational and included only for convenience.

17.    **Governing Law and Dispute Resolution**. ~~Check (a), (b) or (c). If none checked, (a) will apply. Any dispute involving this Agreement will be resolved: (a) [___] in the courts located in the State of _____ (Florida, if left blank), (b) [___] by binding arbitration in the State of _____ (Florida, if left blank), (c) [___] by binding arbitration in London, England. If (a) or (b) is selected: (i) this Agreement will be governed by and interpreted according to the law of the State of _____ (Florida, if left blank) regardless of its principles of conflicts-of-laws and (ii) the proceedings will be conducted in the county of the main office of the Selling Broker, or if the Selling Broker has no office in Florida, in _____ (Fort Lauderdale, Florida, if no other city indicated). If (b) is selected, the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in force when the arbitration is commenced will apply unless the following rules apply: _____ . If the amount in controversy including counterclaims is not more than USD$1,000,000.00, the parties shall jointly select a single arbitrator from the list of arbitrators maintained by the International Yacht Brokers Association ("IYBA") within twenty (20) days of the giving of notice of arbitration. If the parties are unable to agree upon the arbitrator, the IYBA shall have the power to make the appointment of the single arbitrator. If the amount in controversy is greater, the parties shall each appoint one arbitrator and the two arbitrators will jointly appoint a third arbitrator. If they cannot agree on the third arbitrator within 14 days, either party may request that the IYBA appoint the third arbitrator from the list of arbitrators maintained by the IYBA. The decision of the single arbitrator, or if a three arbitrator panel, any two of them will be final and binding on the parties. An action may be brought in any court of competent jurisdiction to enforce any arbitral award or compel arbitration. If (c) is selected: (i) this Agreement will be governed by and interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii) the parties irrevocably agree that any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) the arbitration shall be conducted in accordance with the rules of London Maritime Arbitrators Association ("LMAA") current when the arbitration is commenced, (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while if greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. Whatever option is selected, the parties irrevocably submit to the exclusive jurisdiction of such court or arbitral forum, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the proceeding will be decided only in such court or arbitral forum and, further, not to bring any claim relating to this Agreement in any other court or arbitral forum.~~ The parties,

7

having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this ~~Agreement~~PSA, whether against each other or any Broker.

**Exhibit 14**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's EXHIBIT _____ 14 _____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY _R. Senteio_____

Deputy Clerk

AO 386

# EDMISTON

# Lady May

### MARKETING REPORT 2023

JUNE 2023





# Contents

*1. Introduction* ................................................................................*1*

*2. Lady May Marketing Activity 2023* ................................ *2*

THIS DOCUMENT IS STRICTLY PRIVATE, CONFIDENTIAL AND PERSONAL TO ITS
RECIPIENTS AND SHOULD NOT BE COPIED, DISTRIBUTED OR REPRODUCED IN
WHOLE OR IN PART, NOR PASSED TO ANY THIRD PARTY.



# 1. Introduction

This report provides you with a summary of the marketing activities undertaken to promote Lady May since launch with Edmiston in 2023.

After two unprecedented years for the yacht industry, the sales market in 2023 has shown signs that the boom in sales of 2021 into 2022 has begun to cool. Whilst demand is still strong for high value pedigree yachts, we see similarities in sales between Q1 of 2023 with those of 2018 and 2019. A strong indicator of the brokerage market rebalancing.

Whilst the sales market has been buoyant, the brokerage sector is subject to peaks and troughs, influenced by a diverse range of factors from economic to geo-political. Ultimately, the key drivers of sales are price, condition, and location coupled with clever marketing.

We continue the sales marketing campaign of Lady May and actively canvas the market for potential buyers, both within our own network as well as through our colleague brokers in the industry and will keep you fully updated.

Kind Regards

Dirk Johnson

# 2. Lady May Marketing Activity 2023

# Digital Marketing
*Direct Client Email Marketing*



## Market Overview

*Lady May featured in the Market Overview monthly mailer once so far in 2023. This is distributed to 10,000 clients and prospects. This includes a small selection of brokerage CA's that have a special deal, last minute availability, new itinerary or similar.*





### Edmiston Brokers' Market Overview, May 2023
*25/05/2023*

**19,178**  Listed Recipients

**44.40%**  **Interacted**
3,431  Interactions

### Interacted

**43.70%**  **Open Rate**
3,377  Unique Opens
6,382  Total Opens



# Digital Advertising

*Direct Client & Business-to-Business Marketing*

*Edmiston.com ranks highly on search engines amongst our competition and is an effective tool in promoting Lady May, with monthly website traffic averaging 30,000 per month.*

## Webpage

*Lady May has a dedicated webpage on the Edmiston.com domain, complete with large format images, editorial multi-media options and features.*
*Total page views for 2023: 399*







# Digital Marketing
*Business-to-Business Email Marketing*

---

*In order to connect Lady May with our network of industry brokers, we do the following:*

## Edmiston Email Marketing

### Single & Multi Yacht Mailers
These are sent on an ad-hoc basis for New Central Agency Yachts, sales updates, location updates, price reductions and yachting events.

LADY MAY has been featured in the following mailers since her launch in April 2023. Examples below:

- Lady May - New CA for sale (28/04/2023)

- Lady May - Now in Newport, RI (18/05/2023)

- Lady May - Now enrolled in the FTZ in Newport, RI (24/05/2023)

### Monthly Updates
Circulated monthly, this digital mailer features our full fleet of yachts for sale and includes relevant updates for that month.

LADY MAY has featured in one Monthly Updates since her launch in April 2023, the most recent can be found here.

## Yacht World & Yatco
LADY MAY is included on Yatco and Yacht World, which are online B2B search facilities that centralise brokerage yacht information for the yacht industry.

## Lady May - New CA for sale
*28/04/2023*





**1,846**  Listed Recipients

**48.54%**  **Interacted**
464  Interactions

### Interacted



**5.65%**  **Click Rate**
72  Unique clicks
131  Total Clicks

**48.54%**  **Open Rate**
464  Unique Opens
1,857  Total Opens

---

# Digital Marketing
*Business-to-Business Email Marketing*



## Lady May - Now in Newport, RI
*18/05/2023*



**1,853**  Listed Recipients

**44.38%**  **Interacted**
426  Interactions

### Interacted

**1.67%**  **Click Rate**
26  Unique clicks
49  Total Clicks

**44.06%**  **Open Rate**
426  Unique Opens
1,017  Total Opens

## Lady May - Now enrolled in the FTZ in Newport, RI
*24/05/2023*



**1,857**  Listed Recipients

**45.44%**  **Interacted**
438  Interactions

### Interacted

**1.35%**  **Click Rate**
25  Unique clicks
34  Total Clicks

**45.33%**  **Open Rate**
437  Unique Opens
1,038  Total Opens



# Social Media Marketing

*As part of our social media strategy, Lady May is covered across our multi-channel social network. Each platform provides a different service with specific content created for each.*

*Instagram – 81.7K followers*

*Facebook – 8.7K followers*

*LinkedIn – 11.2K subscribers*

*YouTube –1.3K followers*

We are delighted to welcome previous World Superyacht
Award winner, Lady May, to our sales fleet
*29/04/2023*



*Instagram | Carousel*

Reach **4,837**

Impressions **5,931**

Engagements **260**

We are delighted to welcome previous World Superyacht
Award winner, Lady May, to our sales fleet
*29/04/2023*



*LinkedIn | Post*

Impressions **3,042**

Engagements **638**

Engagement Rate **21%**

# Advertising

## Online Advertising

### Boatinternational.com & Superyachttimes.com online listings

*As part of Edmiston's commitment to Lady May, she has featured on the brokerage listing page of Boat International and Superyacht Times, extending the reach to potential buyers.*



## Luxury Lifestyle & Yacht Publications

*Lady May featured in the following digital and print publications:*

### Boat International US

June Issue - Half page

July Issue - Half page





# Advertising

### Heliport
As title sponsors of the London Heliport, we use this platform to strategically advertise throughout. LADY MAY features in branded collateral that is deployed throughout.

### FBO Terminal
LADY MAY features in branded collateral that is deployed across East Hamptons and Cabo St Lucas private aviation terminals throughout the year.

### Farnborough Airport
Edmiston has teamed up with Europe's leading private jet airport, Farnborough, to provide a fully immersive experience for guests travelling through the airport.

We use this platform to strategically advertise throughout with selected marketing material. LADY MAY features in branded collateral that is deployed throughout.

EDMISTON



# Edmiston Publications

### *Bespoke Yacht Literature*

As part of our marketing campaign for LADY MAY, we create branded and white-labelled electronic collateral, with the option to print if required, to promote the yacht to potential buyers.

# PR & Editorial



## 46m Feadship motor yacht Lady May for sale with Edmiston

*Boat International Online*
*04/05/2023*



*Please click on the URL to view the view feature

## Lady May 2014 151' 8" Feadship Motor Yacht

*Yatco.com*
*03/05/2023*





# Statistics Explained

## Sector Benchmarking

*To give you an understanding of how the digital activities for your yacht are performing, we have benchmarked the most comparable sector averages for 2022.*

## Email Marketing

| Sector Benchmark | CTR | Open Rates |
|---|---|---|
| Advertising and Marketing | 2.04% | 17.38% |
| Retail | 2.25% | 18.39% |
| Media | 4.62% | 22.15% |
| Real Estate & Design | 1.77% | 19.17% |
| Travel | 2.25% | 20.44% |
| Average (all services) | 2.58% | 19.51% |

## Social Media Marketing

| Sector Benchmark | Average Engagement Rate |
|---|---|
| Influencer / Public Figure | 5.77% |
| Media | 5.55% |
| Travel | 4.94% |
| Consumer Brands | 4.39% |
| Food & Beverage | 4.13% |
| Shopping & Retail | 2.80% |

### Click-through rate (CTR)
Click-through rate is the ratio of users who click on a specific link to the number of total users who view a page, email, or advertisement.

### Open rate
This number shows what percentage of your audience opens the emails you send them.

*Email marketing statistics provided by Mail Chimp, updated on 17/06/2022
**Social media statistics provided by Sprout Social, updated 17/06/2022



**EDMISTON**

**LONDON**
*Lombard Wharf,*
*12 Lombard Road, London,*
*SW11 3GN, UK*

**MONTE CARLO**
*27 Boulevard Albert 1er,*
*Monaco,*
*MC 98000*

**NEW YORK**
*1325 Avenue of the Americas,*
*27th Floor, New York,*
*NY 10019, USA*

**MIAMI**
*Suite 500, 1111 Lincoln Rd,*
*Miami Beach,*
*FL 33139, USA.*

**NEWPORT**
*Two Marina Plaza,*
*Goat Island, Newport,*
*Rhode Island 02840, USA*

**MEXICO CITY**
*Ahumada Villalon 36, Lomas Virreyes,*
*Miguel Hidalgo 11000,*
*CDMX, México*

**SAN JOSE DEL CABO**
*Villa Valentina, Kilómetro 31.5,*
*México 1, Zona Hotelera,*
*23405 San José del Cabo, B.C.S.*

EDMISTON.COM

**Exhibit 15**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's EXHIBIT _____ 15 _____

DATE _____ IDEN.

DATE _ June 27, 2023 admitted in full _ EVID.

BY  R. Senteio _____
                    Deputy Clerk

AO 386

**LETTER OF INTENT**

Friday 19th May 2023

Luc A Despins,
As chapter 11 trustee for the estate of Ho Wan Kwok.
c/o Paul Hastings LLP
200 Park Avenue
New York, New York
10166

Dear Sirs,

**Purchase of 46.22m Feadship LADY MAY**

On behalf of our client, ████████████████████████ hereafter "the buyer", we are instructed to make the following offer for the purchase of the 46.22m Feadship LADY MAY. This offer is subject to the following conditions:

1)    Purchase Price USD 19,000,000 (nineteen million United States Dollars)

2)    Subject to mutually agreed formal MoA to be executed by both buyer and seller no later than Wednesday, May 31st 2023.

3)    Subject to standard MYBA terms

4)    Subject to a satisfactory sea trial and condition survey acceptable to the buyer. Sea trial and condition survey to be completed within 21 days following execution of the mutually agreed formal MoA.

5)    Subject to mutually agreed inventory of all onboard and ashore items belonging to the yacht excluding the personal effects of the owner and crew.

6)    Subject to the yacht being delivered at closing free of all debts, maritime liens and encumbrances.

7)    Closing to take place within 7 days following buyer's acceptance of required condition survey, sea trial and inventory.

8)    Upon execution of this LOI, the Seller warrants the exclusivity of this yacht to the Buyer until Wednesday, May 31st 2023, and agrees to exclusively work with the Buyer towards a formal MoA until such date.

9)    Upon execution of this LOI, the Buyer shall transfer a 10% deposit to the stakeholder account of its appointed maritime lawyer or its broker, ████████████████████ at its discretion.

10)   This letter of intent and the mutually acceptable formal contract are to be subject to a confidentiality clause to be agreed between the Buyer and Seller.

11) This letter of intent shall automatically expire on Tuesday, May 23rd 2023, 18h00 EST.

12) This letter of intent shall be governed by and construed with in accordance with the laws of England and Wales and any dispute or claim arising out of, relating to, or in connection with this Agreement shall be submitted to the jurisdiction of the Courts of England.

I confirm that our client is well known to us and passes all KYC and other associated compliance rules.

We would be grateful of your prompt response to this offer.

Yours sincerely,



Signed by the Buyer.

Accepted By Seller:



Name:

Name:

Date:

Date:

**Exhibit 16**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____ 16 _____

DATE _____ IDEN.

DATE _ June 27, 2023 admitted in full _ EVID.

BY _____ R. Senteio _____

Deputy Clerk

AO 386

## Bongartz, Alex

| | |
|---|---|
| **From:** | ███████████████████████ |
| **Sent:** | Tuesday, May 30, 2023 3:43 PM |
| **To:** | Despins, Luc A.; daj@edmiston.com; Bongartz, Alex |
| **Cc:** | ███████████████████████ |
| **Subject:** | [EXT] M/Y "LADY MAY" – OFFICIAL BID SUBMISSION |
| **Attachments:** | IYBA_Purchase_and_Sale (Lady May).pdf; Lady May - Addendum to PSA - ██ amendments 30.05.2023.docx; Lady May - Addendum to the PSA - ██Compare 30.05.23.pdf |
| | |
| **Importance:** | High |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

## --- External Email ---

You don't often get email from ███████████████. Learn why this is important

Dear Mr Despins and Mr Bongartz

Definitions

**"Buyer"** – ███████████████████████, or any other entity appointed for this role by the Buyer or the UBO provided such entity remains beneficially owned by the UBO.

**"UBO"** – a Monaco resident who is the ultimate beneficial owner of the Buyer

**"Yacht"** – the 2014 44.25 meter Feadship Motor Yacht "LADY MAY" (registered number 745195).

**"You"** – Luc A. Despins as chapter 11 trustee for the estate of Ho Wan Kwok, c/o Paul Hastings LLP, 200 Park Avenue, New York, New York 10166.

Proposal to Purchase

We understand You are the party authorised as trustee pursuant to chapter 11 of the United States Bankruptcy Code to receive offers for the purchase of the Yacht and write to relay the terms of the Buyer's Proposal to purchase the Yacht.

We note that on 25 May 2023, You circulated a purchase and sale agreement and an addendum one thereto, forming the proposed terms of sale of the Yacht (the "**Documents**"). This Proposal is also otherwise expressly subject to the following terms and conditions:

1. The Buyer is offering $23,250,000 (Twenty-Three million Two Hundred and Fifty Thousand U.S. Dollars) inclusive of any and all applicable tax or customs duties of any description, save for purchase and use taxes ordinarily to be paid for by the Buyer;

2. Full title warranty and guarantee to be provided by You confirming your power of sale, with good, clean title to the Yacht to be conveyed to the Buyer free and clear of any and all claims, debts or encumbrances of any nature;

3. This offer is subject to and further conditioned upon compliance with all applicable laws and regulations, including but not limited to sanctions laws administered by the U.S. Department of Treasury, Office of Foreign Assets Control and any other sanctions authority;

4. Following acceptance of this Proposal, the Documents to be negotiated between Buyer and You in good faith to agree on mutually acceptable terms; and

5. It is proposed that the closing of the purchase and sale of the Yacht to take place by 30 June 2023.

We would like to provide you with the assurance that the UBO possesses the necessary financial resources to consummate this transaction. We further wish to confirm that the funds for this transaction will be sourced from the UBO's personal wealth, and we are prepared to provide documentation as to the source of the purchasing entity's funds, when appropriate and as necessary.

For the avoidance of doubt, this offer is subject in all respects to the terms and conditions set forth above, including without limitation, execution of the Documents (or such revised form of the Documents as agreed between You and the Buyer) and compliance with regulatory requirements, and shall be deemed to expire at 17:00 local E.S.T. time on 5 June, 2023 unless a written acceptance of this Proposal has been received by us prior to that time.

Please kindly confirm receipt of this correspondence by return e-mail and also provide us with such information as you can as to the intended sale process.

Yours faithfully



# PURCHASE AND SALE AGREEMENT
## FOR BROKERAGE VESSEL

| BUYER: | | SELLER: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok |
|---|---|---|
| Address: | | Address: c/o Paul Hastings LLP, 200 Park Avenue |
| | | New York, New York 10166 |
| Nationality: | | Nationality: U.S. |
| VESSEL NAME: Lady May | | MANUFACTURER: Feadship |
| Model: Semi displacement motor yacht | | Length Overall: 44.25m |
| Year: 2014 | | ☐ Doc or ☑ Reg No.: 745195        Flag: Cayman Is. |
| Hull No.: 688 | | Engine Description: Diesel (Caterpillar) |
| Selling Broker: | | Listing Broker: Edmiston & Company Limited |

| IMPORTANT DATES | | PURCHASE PRICE | |
|---|---|---|---|
| Offer Date: | | Purchase Price: | |
| Offer Expiration Date: June 9, 2023 | | Less Deposit: [20% of Purchase Price] | |
| Accept/Reject Date: June 28, 2023 | | Less Trade Allowance (see Addendum): Not applicable | |
| Closing Date: on or before June 30, 2023 | | Balance: | |

**Delivery Location:** International waters, off the coast of Rhode Island
*NOTE:* **If Vessel is to be moved to the Delivery Location, such location must** *be specified with precision. The mere listing of a port or city is insufficient.*

**ADDITIONAL REGISTERED VESSELS INCLUDED** ☑ Yes ☐ No

1. **Agreement**. Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which is has been signed by both parties. "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel.  Listing Broker and Selling Broker shall be referred to herein as the "Brokers."  If there is a Trade Allowance, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2. **Deposit**. Within _____ business days (3 business days if left blank) following Seller's signature of this PSA, Buyer shall pay the Deposit to the Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held subject to the terms of this PSA.  Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Selling Broker's escrow account.

3. **Survey Option; Acceptance of Vessel; Conditions of Survey**.  Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected.  If inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) *Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable*, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay *all* costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date.  *Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have rejected the Vessel if it fails to give timely written notice of its acceptance.*  **Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location**. If Buyer

Buyer's [ ]n[ ]ta[ ]s:                                                                                                Se[ ]er's [ ]n[ ]t[ ]a[ ]s:

©2020 [ ]nternat[ ]ona[ ] Yacht Brokers Assoc[ ]at[ ]on  A[ ][ ]r[ ]ghts reserved                    Rev 3.10.20

*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

rejects or is deemed to reject the Vessel, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4. **Closing**. The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable title to Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and/or to the Selling Broker for onward transfer to Seller by wire transfer. Any funds Seller owes to (i) the Brokers for the commission, storage, insurance, repairs and/or other items or (ii) the holder of any other Encumbrance, will be deducted from the amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.

5. Brokers. The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability; provided, however, that in such instance the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6. **Seller's Representations; Requirements for Closing**. Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing), (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6, and (e) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any governing authority. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents, (iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7. **Risk of Loss; *Force Majeure*.** Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a) Seller must repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, (b) Buyer must pay the Balance and take delivery of the Vessel as repaired, and (c) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable control ("*Force Majeure* Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, or other natural disasters. If a *Force Majeure* Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the *Force Majeure* Event delays the Closing Date for a period of at more than 30 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8. **Default**. ***Notwithstanding anything herein to the contrary, if the Deposit is not paid when due*** or Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the

Buyer's nitials:                                                                    Seller's nitials:

          ©2020 nternational Yacht Brokers Association A r ghts reserved          Rev 3.10.20

purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA.  Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated.  If the Closing is not consummated due to Seller's non-performance, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA will be returned to Buyer upon demand or Buyer will have the right of specific performance.  Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy.  On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.

9.  **Sales and Use Taxes**.  Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling Broker at Closing.  Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10.  **REPRESENTATIONS AND WARRANTIES**.  SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ON THE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION.  BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS.  UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS *"AS IS"* CONDITION.  SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, *ALL OF WHICH ARE DISCLAIMED.*

11.  **Financing**.  Buyer's obligations are not contingent upon Buyer's obtaining financing.  Buyer represents that it will arrange financing, if necessary.  Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12.  **Counterparts**.  The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13.  **Binding Effect; Contemporaneous Contracts; Future Sales**.  This PSA is binding on all parties, their heirs, personal representatives and/or assigns.  Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect.  If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14.  **Escrowed Funds**.  The parties acknowledge that (a) the Selling Broker will not be responsible for the Deposit until the funds have cleared into the Selling Broker's account, (b) the Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Selling Broker may retain the commission due the Brokers prior to disbursement of the Deposit or Balance to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment, to have engaged in willful misconduct or acted with gross negligence.

15.  **Additional Terms**.  See Addendum. _____
_____

16.  **Miscellaneous**.  This PSA, including its exhibits and schedules, is the *entire agreement* between the parties pertaining to the subject matter hereof and *supersedes* all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise.  If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA.  In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall be entitled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided.  In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable. There are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein.  This PSA may not be amended or modified, except in writing, signed by Buyer and Seller.  Notice and delivery given by or to the attorney or Broker representing any party shall be as effective as if given by or to that party.  All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, email, or other electronic means, and shall be effective upon delivery with proof of delivery retained.  Buyer may assign this PSA to

Buyer's Initials: _____                                                                                      Seller's Initials: _____

      ©2020 International Yacht Brokers Association, All rights reserved      Rev 3.10.20

any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, neither party may assign this PSA without the other party's consent, which consent shall not be unreasonably withheld.  No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given.  Paragraph headings are informational and included only for convenience.

**17.**  **Governing Law and Dispute Resolution**.  **Check (a), (b) or (c). If none checked, (a) will apply.**  Any dispute involving this Agreement will be resolved: **(a)** ☐ in the courts located in the State of _____ (Florida, if left blank), **(b)** ☐] by binding arbitration in the State of _____ (Florida, if left blank), **(c)** ☐] by binding arbitration in London, England.  *If (a) or (b) is selected*: (i) this Agreement will be governed by and interpreted according to the law of the State of _____ (Florida, if left blank) regardless of its principles of conflicts-of-laws and (ii) the proceedings will be conducted in the county of the main office of the Selling Broker, or if the Selling Broker has no office in Florida, in _____ (Fort Lauderdale, Florida, if no other city indicated). *If (b) is selected*, the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in force when the arbitration is commenced will apply unless the following rules apply: _____. If the amount in controversy including counterclaims is not more than USD $1,000,000.00, the parties shall jointly select a single arbitrator from the list of arbitrators maintained by the International Yacht Brokers Association ("IYBA") within twenty (20) days of the giving of notice of arbitration. If the parties are unable to agree upon the arbitrator, the IYBA shall have the power to make the appointment of the single arbitrator.  If the amount in controversy is greater, the parties shall each appoint one arbitrator and the two arbitrators will jointly appoint a third arbitrator. If they cannot agree on the third arbitrator within 14 days, either party may request that the IYBA appoint the third arbitrator from the list of arbitrators maintained by the IYBA.  The decision of the single arbitrator, or if a three abitrator panel, any two of them will be final and binding on the parties.  An action may be brought in any court of competent jurisdiction to enforce any arbitral award or compel arbitration.  If (c) is selected: (i) this Agreement will be governed by and interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii)  the parties irrevocably agree that any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) the arbitration shall be conducted in accordance with the rules of London Maritime Arbitrators Association ("LMAA") current when the arbitration is commenced,  (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while if greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. Whatever option is selected, the parties irrevocably submit to the exclusive jurisdiction of such court or arbitral forum, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the proceeding will be decided only in such court or arbitral forum and, further, not to bring any claim relating to this Agreement in any other court or arbitral forum.  The parties, having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this Agreement, whether against each other or any Broker.

**BUYER:**                                                    **SELLER:**

_____          _____

Print: _____          Print: _____

Title: _____          Title: _____

Date: _____          Date: _____

**SELLING BROKER  DEPOSIT CONFIRMATION (Subject to clearance of funds)**

Print: _____          Amount: _____

Title: _____          Date: _____

*This form was prepared for the exclusive use and benefit of the members of the IYBA.  The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

**Addendum to Purchase and Sale Agreement for Brokerage Vessel, executed on [-----], 2023, Between (i) Luc A. Despins, as the Chapter 11 Trustee for the Estate of Ho Wan Kwok and (ii) [            ] (the "Addendum")**

Capitalized terms used but not defined herein have the meanings set forth in the Purchase and Sale Agreement for Brokerage Vessel, executed on [-------], 2023, with respect to the Lady May (the "PSA"). For the avoidance of doubt, any reference to the PSA (whether in this PSA or the Addendum) shall be to the PSA as modified by this Addendum.

1. Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2. The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "Chapter 11 Case"), is pending.

3. Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court. For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4. Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

5. The Seller shall deliver, as a condition to Closing, each of the documents listed in the attached "Exhibit A".

~~5.~~6. The fourth and fifth sentences in Section 1 of the PSA are hereby modified as follows:

"Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this **PSA. There will be no Exclusions List.** ~~Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel.~~ **For the avoidance of doubt, the**

1

**Lady May II is not included as part of the sale of the Vessel pursuant to this PSA.**

~~6.~~7. The eighth sentence in Section 1 of the PSA is hereby modified as follows:

> **There shall be no** ~~If there is a~~ Trade Allowance **in connection with the sale of the Vessel pursuant to this PSA**~~, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum~~.

~~7.~~8. Section 2 of the PSA is hereby modified as follows:

> ~~Within _____ business days (3 business days if left blank)) following Seller's signature of this PSA,~~**On [-----], 2023,** Buyer **paid**~~shall pay~~ the Deposit to the **Seller's**~~Selling Broker's~~ account, as acknowledged below, as a deposit toward the Purchase Price to be held **in escrow** subject to the terms of this PSA.  Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspection of the Vessel until the Deposit has cleared into the **Seller's**~~Selling Broker's~~ escrow account.

~~8.~~9. Section 3 of the PSA is hereby modified as follows:

> 3.1      Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction~~, in Buyer's sole discretion,~~ with a trial run and survey of the Vessel (though Buyer may elect not to have the Vessel inspected)**;** **provided, however, that Buyer may only reject the Vessel either: (i) for any reason whatsoever and in the Buyer's sole discretion, provided written notice of such decision to reject is served on the Seller by the Buyer within 24 hours of the completion of the trial run; or (ii)  if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality to and value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy.**

> ~~For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds.~~ 3.2     If **the Buyer decides to have** a **trial run and** a **survey conducted**~~inspected~~: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run ~~and survey as soon as practicable~~**, such that the survey is completed prior to the Accept/Reject Date**, on 11 June 2023 and the survey by no later than 17 June 2023  (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial

run, and Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) ~~Save as required by Section 3.1(i),~~ Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have **accepted**~~rejected~~ the Vessel if it fails to give timely written notice of its **rejection**~~acceptance~~ **in accordance with this PSA**. Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer rejects or is deemed to reject the Vessel **in accordance with this PSA and is not otherwise in breach of this PSA**, ~~after all expenses incurred on Buyer's behalf have been paid,~~ (i) the **Seller**~~Selling Broker~~ shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

~~9.~~10.      The sixth sentence in Section 4 of the PSA is hereby modified as follows:

At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) **and the Deposit shall be released to Seller, subject to the deduction in the immediately following sentence**~~and/or to the Selling Broker for onward transfer to Seller by wire transfer~~. Any funds Seller owes to ~~(i)~~ the Brokers for the commission, storage, insurance, repairs and/or other items **(which are subject to approval of the Bankruptcy Court)**~~or (ii) the holder of any other Encumbrance,~~ will be deducted from the ~~amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof~~**Deposit and paid to the Brokers prior to the release of the Deposit to Seller. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.**

~~10.~~11.      The second sentence of Section 5 of the PSA is hereby modified as follows:

If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller~~, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability~~; provided, however, that in such instance **(a)** the

3

Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price **and (b) the Broker have no duties to the Buyer in connection with the sale of the Vessel**~~or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price~~.

~~11.~~12.  The second sentence of Section 6 of the PSA is hereby modified as follows:

No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing)**, which proof may be the order entered by the Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances)**, ~~(c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6,~~ and (**c**~~e~~) copies of any other documents necessary for transfer of good and marketable title to Buyer.

~~12.~~13.  The second and third sentences of Section 7 of the PSA are hereby modified as follows:

If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then**, at the Seller's option,** ~~(a)~~ Seller **may**~~must~~ repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, **in which case (a**~~b~~**)** Buyer **shall**~~must~~ pay the Balance and take delivery of the Vessel as repaired~~,~~ and (**b**~~e~~) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance **or Seller does not exercise the option in the foregoing sentence**, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

~~13.~~14.  Section 8 of the PSA is hereby modified as follows:

Notwithstanding anything herein to the contrary, if ~~the Deposit is not paid when due or~~ Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by ~~(or if the Deposit was not paid, Buyer shall pay a like amount to)~~ Seller ~~and the Brokers~~ as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling

Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA**, provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer.** ~~Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated.~~ If the Closing is not consummated due to Seller's non-performance **(which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA)**, the Deposit, and any other money paid or deposited by Buyer~~,~~ pursuant to this PSA**,** will be returned to Buyer upon demand ~~or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy.~~ **If Closing is not consummated due to Seller's non-performance**~~On Seller's default~~, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed**; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel in accordance with this PSA. Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.**

~~14.~~15.    The first sentence of Section 9 of the PSA are hereby modified as follows:

Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the **Trustee**~~Selling Broker~~ at Closing.

~~15.~~16.    The following sentence is hereby added after the first sentence of Section 11 of the PSA:

**Buyer represents and warrants that it has sufficient cash and/or financing to fund the Purchase Price at Closing.  Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok.**

16.17.    Section 14 of the PSA are hereby modified as follows:

The parties acknowledge that (a) the **Seller**~~Selling Broker~~ will not be responsible for the Deposit until the funds have cleared into the **Seller's**~~Selling Broker's~~ account, (b) the **Seller**~~Selling Broker~~ shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the **Seller**~~Selling Broker~~ **shall pay, in accordance with this PSA,**~~may retain~~ the commission due the Brokers prior to **the release**~~disbursement~~ of the Deposit ~~or Balance~~ to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment **of the Bankruptcy Court**, to have engaged in willful misconduct or acted with gross negligence.

17.18.    The second and third sentences of Section 16 of the PSA are hereby modified as follows:

If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA**, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings**, unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**.

18.19.    The eighth, ninth and tenth sentences of Section 16 of the PSA are hereby modified as follows:

All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, **email to the email addresses included in Section 18 of this PSA and as otherwise provided by the parties hereto from time to time**, or other means, and shall be effective upon

6

delivery with proof of delivery retained. ~~Buyer may assign this PSA to any member(s) of Buyer's immediate family or~~ any entity owned or controlled by Buyer and/or any member(s) of his immediate family~~.~~ ~~Otherwise, n~~**N**either party may assign this PSA without the other party's consent~~, which consent shall not be unreasonably withheld~~.

20. Insertion of a new Section 18 into the PSA as follows:

**18. Notices by Email**

For the purposes of one party to this PSA serving any other party to this PSA by email, such email notice may be provided to the email addresses specified below:

**Buyer:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Seller:** lucdespins@paulhastings.com

**Broker:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Seller**

By: _____

Name: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok

Date: _____

**Buyer**

By: _____

Name: _____

Title: _____

Date: _____

## "EXHIBIT A"

### List of Documents

The following documents must be tendered by the Seller to the Buyer as a condition precedent to Closing.  Unless otherwise stated, all documents must be tendered at closing and must be in original form.  Copies defaced as necessary or drafts of the documents must be submitted to Buyer's counsel for the Buyer's approval no later than seven (7) days prior to the Closing Date.

Documents 1 to 15 (inclusive) must evidence completion of all requisite surveys and/or audits (with up-to-date endorsements) as applicable, and must be valid, full-term and free from restrictions, conditions, remarks and/or recommendations and (as applicable) shall be provided with any available supplements, records, annexes and/or technical files.

Documents 16 to 22 (inclusive) must be in a form suitable for the Buyer to register the Vessel on the flag of its choice.

1)      Certificate of Registry
2)      Certificate of Survey
3)      International Tonnage Certificate
4)      Panama and Suez Special Tonnage Certificates
5)      International Oil Pollution Prevention Certificate (IOPP)
6)      International Sewage Pollution Prevention Certificate (ISPP)
7)      International Air Pollution Prevention Certificate
8)      International Energy Efficiency Certificate
9)      Engine International Air Pollution Prevention certificates
10)     Classification Certificate
11)     Anti-Fouling System Certificate of Compliance
12)     Radio Licence
13)     Shipboard Oil Pollution Emergency Plan (SOPEP) (stamped as approved by Class or Flag)
14)     Wreck Removal Certificate
15)     International Certificate of Inventory of Hazardous Materials

16)     Bill of Sale (in two (2) originals) in favour of the Buyer stating the Vessel to be free from all debts, claims, liens and encumbrances, duly executed by the Seller and notarially attested and apostilled or legalised to confirm the identity and due authority of the signatory.

17)     Transcript of Register issued by the Vessel's registration authority showing that the Vessel is free from registered encumbrances and is solely owned by the Seller, dated not earlier than three (3) business days prior to the date of completion of the sale.

18)     A class confirmation certificate issued by the Classification Society stating that the Vessel is classed, free from all conditions or recommendations, dated not earlier than three (3) business days prior to the date of completion of the sale.

8

19)     Letter of No objection from the Seller's Cayman Islands local representative engaged in connection with the Vessel.

20)     Evidence of the Vessel's tax status in the USA satisfactory to the Buyer.

21)     Evidence that the Seller (or their trustee or legal representatives on their behalf) has the right in law to sell the Vessel in accordance with the terms hereunder.

22)     Evidence that all necessary corporate, shareholder and other action has been taken by the Seller to authorise the execution, delivery and performance of this Agreement, duly notarially attested.


At the time of delivery and acceptance of the Vessel, the Seller and the Buyer shall sign a protocol of delivery and acceptance (in two originals) evidencing the place, date and time of delivery of the Vessel.

<u>**Addendum to Purchase and Sale Agreement for Brokerage Vessel, executed on [-----], 2023, Between (i) Luc A. Despins, as the Chapter 11 Trustee for the Estate of Ho Wan Kwok and (ii)** ▮▮▮▮▮▮ **[              ] (the "Addendum")**</u>

> **Formatted:** Font: (Default) Times New Roman, 12 pt, Bold, Underline

Capitalized terms used but not defined herein have the meanings set forth in the Purchase and Sale Agreement for Brokerage Vessel, executed on [-------], 2023, with respect to the Lady May (the "<u>PSA</u>").  For the avoidance of doubt, any reference to the PSA (whether in this PSA or the Addendum) shall be to the PSA as modified by this Addendum.

1.  Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2.  The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the <u>District of Connecticut</u> (the "<u>Bankruptcy Court</u>"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "<u>Chapter 11 Case</u>"), is pending.

3.  Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court.  For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4.  Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

5.  The Seller shall deliver, as a condition to Closing, each of the documents listed in the attached "Exhibit A".

5. 6. The fourth and fifth sentences in Section 1 of the PSA are hereby modified as follows:

> "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this **PSA.  There will be no Exclusions List.**Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale.  Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel.  **For the avoidance of doubt, the**

1

**Lady May II is not included as part of the sale of the Vessel pursuant to this PSA.**

6.7. The eighth sentence in Section 1 of the PSA is hereby modified as follows:

> **There shall be no** ~~If there is a~~ Trade Allowance **in connection with the sale of the Vessel pursuant to this PSA,** ~~the conditions of the trade in will be governed by the attached Trade-In Vessel Addendum~~.

7.8. Section 2 of the PSA is hereby modified as follows:

> ~~Within _____ business days (3 business days if left blank)) following Seller's signature of this PSA,~~ **On [----], 2023,** Buyer **paid**~~shall pay~~ the Deposit to the **Seller's**~~Selling Broker's~~ account, as acknowledged below, as a deposit toward the Purchase Price to be held **in escrow** subject to the terms of this PSA.  Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspection of the Vessel until the Deposit has cleared into the **Seller's**~~Selling Broker's~~ escrow account.

8.9. Section 3 of the PSA is hereby modified as follows:

> 3.1      Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction~~, in Buyer's sole discretion,~~ with a trial run and survey of the Vessel (though Buyer may elect not to have the Vessel inspected)**;** **provided, however, that Buyer may only reject the Vessel either: (i) for any reason whatsoever and in the Buyer's sole discretion, provided written notice of such decision to reject is served on the Seller by the Buyer within 24 hours of the completion of the trial run; or (ii)** ~~only reject the Vessel~~ **if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality and to value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy.** ~~For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds.~~

> **3.2**      If **the Buyer decides to have a** **trial run and a survey conducted**~~inspected~~: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run **on 11 June 2023**  and **the** survey **by no later than 17 June 2023** ~~as soon as practicable, such that the survey is completed prior to the Accept/Reject Date~~. (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and

2

Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) ~~Save as required by Section 3.1(i),~~ Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date.  Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have **accepted**~~rejected~~ the Vessel if it fails to give timely written notice of its **rejection**~~acceptance~~ **in accordance with this PSA**.  Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location.  If Buyer rejects or is deemed to reject the Vessel **in accordance with this PSA and is not otherwise in breach of this PSA**, ~~after all expenses incurred on Buyer's behalf have been paid,~~ (i) the **Seller**~~Selling Broker~~ shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder.  The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

~~9.~~10.     The sixth sentence in Section 4 of the PSA is hereby modified as follows:

At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) **and the Deposit shall be released to Seller, subject to the deduction in the immediately following sentence**~~and/or to the Selling Broker for onward transfer to Seller by wire transfer~~.  Any funds Seller owes to ~~(i)~~ the Brokers for the commission, storage, insurance, repairs and/or other items **(which are subject to approval of the Bankruptcy Court)**~~or (ii) the holder of any other Encumbrance,~~ will be deducted from the ~~amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof~~**Deposit and paid to the Brokers prior to the release of the Deposit to Seller.  For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.**

~~10.~~11.     The second sentence of Section 5 of the PSA is hereby modified as follows:

If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller~~, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability~~; provided, however, that in such instance **(a)** the

3

Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price **and (b) the Broker have no duties to the Buyer in connection with the sale of the Vessel**or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price.

~~11.~~12.    The second sentence of Section 6 of the PSA is hereby modified as follows:

No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing)**, which proof may be the order entered by the Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances)**, ~~(c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6,~~ and (~~c~~**c**) copies of any other documents necessary for transfer of good and marketable title to Buyer.

~~12.~~13.    The second and third sentences of Section 7 of the PSA are hereby modified as follows:

If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, the**n, at the Seller's option,** (a) Seller **may**~~must~~ repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, **in which case (a**~~b~~**)** Buyer **shall**~~must~~ pay the Balance and take delivery of the Vessel as repaired, and (**b**~~c~~) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance **or Seller does not exercise the option in the foregoing sentence**, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

~~13.~~14.    Section 8 of the PSA is hereby modified as follows:

Notwithstanding anything herein to the contrary, if ~~the Deposit is not paid when due or~~ Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by (~~or if the Deposit was not paid, Buyer shall pay a like amount to)~~ Seller ~~and the Brokers~~ as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling

4

Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA**, provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer**. ~~Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated.~~ If the Closing is not consummated due to Seller's non-performance **(which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA)**, the Deposit, and any other money paid or deposited by Buyer~~,~~ pursuant to this PSA**,** will be returned to Buyer upon demand ~~or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy~~. **If Closing is not consummated due to Seller's non-performance** ~~On Seller's default~~, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed~~;~~**; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel in accordance with this PSA. Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.**

~~14.~~**15.**　　The first sentence of Section 9 of the PSA are hereby modified as follows:

Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the **Trustee**~~Selling Broker~~ at Closing.

~~15.~~**16.**　　The following sentence is hereby added after the first sentence of Section 11 of the PSA:

5

**Buyer represents and warrants that it has sufficient cash and/or financing to fund the Purchase Price at Closing. Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok.**

~~16~~17.    Section 14 of the PSA are hereby modified as follows:

The parties acknowledge that (a) the **Seller**~~Selling Broker~~ will not be responsible for the Deposit until the funds have cleared into the **Seller's**~~Selling Broker's~~ account, (b) the **Seller**~~Selling Broker~~ shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the **Seller**~~Selling Broker~~ **shall pay, in accordance with this PSA,**~~may retain~~ the commission due the Brokers prior to **the released**~~disbursement~~ of the Deposit ~~or Balance~~ to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment **of the Bankruptcy Court**, to have engaged in willful misconduct or acted with gross negligence.

~~17~~18.    The second and third sentences of Section 16 of the PSA are hereby modified as follows:

If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA**, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings**, unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**.

~~18~~19.    The _eighth,_ ninth and tenth sentences of Section 16 of the PSA are hereby modified as follows:

All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, **email to the email addresses included in Section 18 of this PSA and as otherwise provided by the parties hereto from time to time**, or other means, and shall be effective upon

Formatted: Font: Bold, Underline

delivery with proof of delivery retained. ~~Buyer may assign this PSA to any member(s) of Buyer's immediate family or~~ any entity owned or controlled by Buyer and/or any member(s) of his immediate family. ~~Otherwise, n~~Neither party may assign this PSA without the other party's consent~~, which consent shall not be unreasonably withheld~~.

~~19.~~20.    Insertion of a new Section 18 into the PSA as follows:

**18. Notices by Email**

For the purposes of one party to this PSA serving any other party to this PSA by email, such email notice may be provided to the email addresses specified below:

**Buyer:**    ████████████████████████████

**Seller:**    lucdespins@paulhastings.com

**Broker:**    ████████████████████

**Seller**

By: _____

Name: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok

Date: _____

**Buyer**

By: _____

Name: _____

Title: _____

Date: _____

7

**"EXHIBIT A"**

**List of Documents**

The following documents must be tendered by the Seller to the Buyer as a condition precedent to Closing.  Unless otherwise stated, all documents must be tendered at closing and must be in original form.  Copies defaced as necessary or drafts of the documents must be submitted to Buyer's counsel for the Buyer's approval no later than seven (7) days prior to the Closing Date.

Documents 1 to 15 (inclusive) must evidence completion of all requisite surveys and/or audits (with up-to-date endorsements) as applicable, and must be valid, full-term and free from restrictions, conditions, remarks and/or recommendations and (as applicable) shall be provided with any available supplements, records, annexes and/or technical files.

Documents 16 to 22 (inclusive) must be in a form suitable for the Buyer to register the Vessel on the flag of its choice.

1)      Certificate of Registry
2)      Certificate of Survey
3)      International Tonnage Certificate
4)      Panama and Suez Special Tonnage Certificates
5)      International Oil Pollution Prevention Certificate (IOPP)
6)      International Sewage Pollution Prevention Certificate (ISPP)
7)      International Air Pollution Prevention Certificate
8)      International Energy Efficiency Certificate
9)      Engine International Air Pollution Prevention certificates
10)     Classification Certificate
11)     Anti-Fouling System Certificate of Compliance
12)     Radio Licence
13)     Shipboard Oil Pollution Emergency Plan (SOPEP) (stamped as approved by Class or Flag)
14)     Wreck Removal Certificate
15)     International Certificate of Inventory of Hazardous Materials

16)     Bill of Sale (in two (2) originals) in favour of the Buyer stating the Vessel to be free from all debts, claims, liens and encumbrances, duly executed by the Seller and notarially attested and apostilled or legalised to confirm the identity and due authority of the signatory.

17)     Transcript of Register issued by the Vessel's registration authority showing that the Vessel is free from registered encumbrances and is solely owned by the Seller, dated not earlier than three (3) business days prior to the date of completion of the sale.

18)     A class confirmation certificate issued by the Classification Society stating that the Vessel is classed, free from all conditions or recommendations, dated not earlier than three (3) business days prior to the date of completion of the sale.

8

19)     Letter of No objection from the Seller's Cayman Islands local representative engaged in connection with the Vessel.

20)     Evidence of the Vessel's tax status in the USA satisfactory to the Buyer.

21)     Evidence that the Seller (or their trustee or legal representatives on their behalf) has the right in law to sell the Vessel in accordance with the terms hereunder.

22)     Evidence that all necessary corporate, shareholder and other action has been taken by the Seller to authorise the execution, delivery and performance of this Agreement, duly notarially attested.


At the time of delivery and acceptance of the Vessel, the Seller and the Buyer shall sign a protocol of delivery and acceptance (in two originals) evidencing the place, date and time of delivery of the Vessel.

9

**Exhibit 17**

CASE NO. _____ 22-50073

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____ 17

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY _R. Senteio_

Deputy Clerk

AO 386

# LETTER OF INTENT

Date: May 19, 2023

**RE: M/Y Lady May COBR # 745195**

To whom it may concern:

As per my inspection of Lady May, I ████████████ hereby make the following offer for purchase of Lady May subject to the following conditions:

1)     Purchase Price Twenty Million Dollars ($20,000,000)

2.     If accepted, a deposit of 10% of the agreed price will be wired within 3 business days to the escrow account of Edmiston and Company (details to be provided)

3)     Offer acceptance is subject to approval of the Court.

4)     Subject to mutually agreed formal contract to be executed by both Buyer and Seller no later than May 31, 2023.

5)     Subject to satisfactory sea trial and condition survey acceptable to the buyer. Sea trial and condition survey to be completed within 14 days of execution of mutually agreed formal contract as per Clause 4. Acceptance/rejection within 7 days of survey completion.

6)     Subject to mutually agreed inventory of all onboard and ashore items belonging to the yacht excluding the personal effects of the owner and crew.

7)     Closing to take place no later than June 30, 2023.

8)     Subject to yacht being delivered at closing free of all debts, maritime liens and encumbrances.

9)     This letter of intent and the mutually acceptable formal contract are to be the subject of a confidentiality clause to be agreed between the Buyer and Seller.

END OF OFFER.

Accepted By Seller

**Exhibit 18**

CASE NO. ___22-50073___

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's EXHIBIT _____18_____

DATE _____ IDEN.

DATE __June 27, 2023_____ EVID.

BY __R. Senteio_____
                    Deputy Clerk

AO 386

## Bongartz, Alex

| | |
|---|---|
| **From:** |  |
| **Sent:** | Tuesday, May 30, 2023 4:46 PM |
| **To:** | Despins, Luc A. |
| **Cc:** | Bongartz, Alex |
| **Subject:** | [EXT] |
| **Attachments:** | 20230530164308437.pdf; 05-30-2023 Signed Addendum to PSA Lady May.pdf |

## --- External Email ---

You don't often get email from ███████. Learn why this is important

Dear Luc:

As per the instructions in Dirk Johnson's May 24th email, attached is the PSA and Addendum in your form from ███ ████████ for ██ offer to purchase "Lady May".

The offer is $23,000,000 with an acceptance or rejection date of the survey of June 28, 2023 and a closing no later than July 20, 2023.

I look forward to hearing from you at your earliest convenience.

Best regards,



 INTERNATIONAL YACHT
BROKERS ASSOCIATION

# PURCHASE AND SALE AGREEMENT
# FOR BROKERAGE VESSEL

| **BUYER:** | **SELLER:** Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok |
|---|---|
| Address: | Address: c/o Paul Hastings LLP, 200 Park Avenue |
| | New York, New York 10166 |
| Nationality: | Nationality: U.S. |
| **VESSEL NAME:** Lady May | **MANUFACTURER:** Feadship |
| Model: Semi displacement motor yacht | Length Overall: 44.25m |
| Year: 2014 | ☐ Doc or ☑ Reg No.: 745195        Flag: Cayman Is. |
| Hull No.: 688 | Engine Description: Diesel (Caterpillar) |
| Selling Broker: | Listing Broker: Edmiston & Company Limited |
| **IMPORTANT DATES** | **PURCHASE PRICE** |
| Offer Date: May 30, 2023 | Purchase Price: 23,000,000 |
| Offer Expiration Date: June 9, 2023 | Less Deposit: [20% of Purchase Price]  $4,600,000 |
| Accept/Reject Date: June 28, 2023 | Less Trade Allowance (see Addendum): Not applicable |
| Closing Date: on or before July 20, 2023 | Balance: $18,400,000 |

| **Delivery Location:** International waters, off the coast of Rhode Island |
|---|
| *NOTE:* If Vessel is to be moved to the Delivery Location, such location must be *specified with precision. The mere listing of a port or city is insufficient.* |

| ADDITIONAL REGISTERED VESSELS INCLUDED ☑ Yes ☐ No |
|---|

1. **Agreement**. Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which is has been signed by both parties. "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. Listing Broker and Selling Broker shall be referred to herein as the "Brokers." If there is a Trade Allowance, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2. **Deposit**. Within _____ business days (3 business days if left blank) following Seller's signature of this PSA, Buyer shall pay the Deposit to the Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Selling Broker's escrow account.

3. **Survey Option; Acceptance of Vessel; Conditions of Survey**. Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected. If inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) *Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable*, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay *all* costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. *Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have rejected the Vessel if it fails to give timely written notice of its acceptance*. Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer

Buyer's Initial                                                                                     Seller's Initials: _____

Page 1 of 4                    ©2020 International Yacht Brokers Association. All rights reserved.                    Rev.3.10.20

*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

rejects or is deemed to reject the Vessel, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4. **Closing.** The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable title to Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and/or to the Selling Broker for onward transfer to Seller by wire transfer. Any funds Seller owes to (i) the Brokers for the commission, storage, insurance, repairs and/or other items or (ii) the holder of any other Encumbrance, will be deducted from the amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.

5. **Brokers.** The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability; provided, however, that in such instance the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6. **Seller's Representations; Requirements for Closing.** Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing), (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6, and (e) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any governing authority. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents, (iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7. **Risk of Loss; *Force Majeure.*** Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a) Seller must repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, (b) Buyer must pay the Balance and take delivery of the Vessel as repaired, and (c) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable control ("*Force Majeure* Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, or other natural disasters. If a *Force Majeure* Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the *Force Majeure* Event delays the Closing Date for a period of at more than 30 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8. **Default.** *Notwithstanding anything herein to the contrary, if the Deposit is not paid when due* or Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the

Buyer's Initials ▊                                                                                                        Seller's Initials: _____

                    ©2020 International Yacht Brokers Association. All rights reserved.                    Rev. 3.10.20

any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, neither party may assign this PSA without the other party's consent, which consent shall not be unreasonably withheld. No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given. Paragraph headings are informational and included only for convenience.

**17.** **Governing Law and Dispute Resolution.** Check (a), (b) or (c). If none checked, (a) will apply. Any dispute involving this Agreement will be resolved: **(a)** ☐ in the courts located in the State of _____ (Florida, if left blank), **(b)** ☐ by binding arbitration in the State of _____ (Florida, if left blank), **(c)** ☐ by binding arbitration in London, England. *If (a) or (b) is selected:* (i) this Agreement will be governed by and interpreted according to the law of the State of _____ (Florida, if left blank) regardless of its principles of conflicts-of-laws and (ii) the proceedings will be conducted in the county of the main office of the Selling Broker, or if the Selling Broker has no office in Florida, in _____ (Fort Lauderdale, Florida, if no other city indicated). *If (b) is selected*, the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in force when the arbitration is commenced will apply unless the following rules apply: _____. If the amount in controversy including counterclaims is not more than USD $1,000,000.00, the parties shall jointly select a single arbitrator from the list of arbitrators maintained by the International Yacht Brokers Association ("IYBA") within twenty (20) days of the giving of notice of arbitration. If the parties are unable to agree upon the arbitrator, the IYBA shall have the power to make the appointment of the single arbitrator. If the amount in controversy is greater, the parties shall each appoint one arbitrator and the two arbitrators will jointly appoint a third arbitrator. If they cannot agree on the third arbitrator within 14 days, either party may request that the IYBA appoint the third arbitrator from the list of arbitrators maintained by the IYBA. The decision of the single arbitrator, or if a three arbitrator panel, any two of them will be final and binding on the parties. An action may be brought in any court of competent jurisdiction to enforce any arbitral award or compel arbitration. If (c) is selected: (i) this Agreement will be governed by and interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii) the parties irrevocably agree that any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) the arbitration shall be conducted in accordance with the rules of London Maritime Arbitrators Association ("LMAA") current when the arbitration is commenced, (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while if greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. Whatever option is selected, the parties irrevocably submit to the exclusive jurisdiction of such court or arbitral forum, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the proceeding will be decided only in such court or arbitral forum and, further, not to bring any claim relating to this Agreement in any other court or arbitral forum. The parties, having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this Agreement, whether against each other or any Broker.

**SELLER:**

Print:                                Print: _____
Title:                                Title: _____
Date:                                 Date: _____

**SELLING BROKER  DEPOSIT CONFIRMATION (Subject to clearance of funds)**

Print: _____        Amount: _____
Title: _____        Date: _____

Buyer's Initials: _____                                                    Seller's Initials: _____

©2020 International Yacht Brokers Association. All rights reserved.          Rev. 3.10.20

*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA. Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.

9. **Sales and Use Taxes**. Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling Broker at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10. **REPRESENTATIONS AND WARRANTIES**. SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ON THE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS **"AS IS"** CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, **ALL OF WHICH ARE DISCLAIMED.**

11. **Financing**. Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12. **Counterparts**. The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13. **Binding Effect; Contemporaneous Contracts; Future Sales**. This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14. **Escrowed Funds**. The parties acknowledge that (a) the Selling Broker will not be responsible for the Deposit until the funds have cleared into the Selling Broker's account, (b) the Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Selling Broker may retain the commission due the Brokers prior to disbursement of the Deposit or Balance to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment, to have engaged in willful misconduct or acted with gross negligence.

15. **Additional Terms**. See Addendum.

16. **Miscellaneous**. This PSA, including its exhibits and schedules, is the *entire agreement* between the parties pertaining to the subject matter hereof and *supersedes* all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall be entitled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable. There are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, except in writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, email, or other electronic means, and shall be effective upon delivery with proof of delivery retained. Buyer may assign this PSA to

Buyer's Initial [redacted]                                                                 Seller's Initials: _____

   ©2020 International Yacht Brokers Association. All rights reserved.   Rev. 3.10.20

**Addendum to Purchase and Sale Agreement for Brokerage Vessel, executed on [-----], 2023, Between (i) Luc A. Despins, as the Chapter 11 Trustee for the Estate of Ho Wan Kwok and (ii) [------------] (the "Addendum")**

Capitalized terms used but not defined herein have the meanings set forth in the Purchase and Sale Agreement for Brokerage Vessel, executed on [-------], 2023, with respect to the Lady May (the "PSA"). For the avoidance of doubt, any reference to the PSA (whether in this PSA or the Addendum) shall be to the PSA as modified by this Addendum.

1. Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2. The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "Chapter 11 Case"), is pending.

3. Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court. For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4. Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

5. The fourth and fifth sentences in Section 1 of the PSA are hereby modified as follows:

   "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this **PSA. There will be no Exclusions List.**Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. **For the avoidance of doubt, the Lady May II is not included as part of the sale of the Vessel pursuant to this PSA.**

6. The eighth sentence in Section 1 of the PSA is hereby modified as follows:

**There shall be no** ~~If there is a~~ Trade Allowance **in connection with the sale of the Vessel pursuant to this PSA**~~, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum~~.

7. Section 2 of the PSA is hereby modified as follows:

~~Within ———— business days (3 business days if left blank)) following Seller's signature of this PSA.~~**On [-----], 2023,** Buyer **paid**~~shall pay~~ the Deposit to the **Seller's**~~Selling Broker's~~ account, as acknowledged below, as a deposit toward the Purchase Price to be held **in escrow** subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspection of the Vessel until the Deposit has cleared into the **Seller's**~~Selling Broker's~~ escrow account.

8. Section 3 of the PSA is hereby modified as follows:

Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction~~, in Buyer's sole discretion,~~ with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected**; provided, however, that Buyer may only reject the Vessel if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality to and value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy. For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds. If the Buyer decides to have a survey conducted**~~inspected~~: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable**, such that the survey is completed prior to the Accept/Reject Date**, (d) Seller shall pay all running expenses for, and assume all the risks associated with, the trial run, and Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have **accepted**~~rejected~~ the Vessel if it fails to give timely written notice of its **rejection**~~acceptance~~ **in accordance with this PSA.** Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in

2

Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer rejects or is deemed to reject the Vessel **in accordance with this PSA and is not otherwise in breach of this PSA**, ~~after all expenses incurred on Buyer's behalf have been paid,~~ (i) the **Seller**~~Selling Broker~~ shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

9. The sixth sentence in Section 4 of the PSA is hereby modified as follows:

At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) **and the Deposit shall be released to Seller, subject to the deduction in the immediately following sentence**~~and/or to the Selling Broker for onward transfer to Seller by wire transfer~~. Any funds Seller owes to ~~(i)~~ the Brokers for the commission, storage, insurance, repairs and/or other items **(which are subject to approval of the Bankruptcy Court)**~~or (ii) the holder of any other Encumbrance,~~ will be deducted from the ~~amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof~~**Deposit and paid to the Brokers prior to the release of the Deposit to Seller. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.**

10. The second sentence of Section 5 of the PSA is hereby modified as follows:

If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller~~, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability~~; provided, however, that in such instance **(a)** the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price **and (b) the Broker have no duties to the Buyer in connection with the sale of the Vessel**~~or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price~~.

11. The second sentence of Section 6 of the PSA is hereby modified as follows:

No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing)**, which proof may be the order entered by the**

**Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances),** ~~(c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6; (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6,~~ and (**c**~~e~~) copies of any other documents necessary for transfer of good and marketable title to Buyer.

12. The second and third sentences of Section 7 of the PSA are hereby modified as follows:

If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then**, at the Seller's option,** ~~(a)~~ Seller **may**~~must~~ repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, **in which case (a**~~b~~) Buyer **shall**~~must~~ pay the Balance and take delivery of the Vessel as repaired~~,~~ and (**b**~~c~~) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance **or Seller does not exercise the option in the foregoing sentence,** either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

13. Section 8 of the PSA is hereby modified as follows:

Notwithstanding anything herein to the contrary, if ~~the Deposit is not paid when due or~~ Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by ~~(or if the Deposit was not paid, Buyer shall pay a like amount to)~~ Seller ~~and the Brokers~~ as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA**, provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer.** ~~Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same~~

~~proportions as the commission would have been divided had a sale been consummated.~~ If the Closing is not consummated due to Seller's non-performance **(which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA)**, the Deposit, and any other money paid or deposited by Buyer~~,~~ pursuant to this PSA**,** will be returned to Buyer upon demand ~~or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy~~. **If Closing is not consummated due to Seller's non-performance**~~On Seller's default~~, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed**; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel in accordance with this PSA. Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.**

14. The first sentence of Section 9 of the PSA are hereby modified as follows:

    Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the **Trustee**~~Selling Broker~~ at Closing.

15. The following sentence is hereby added after the first sentence of Section 11 of the PSA:

    **Buyer represents and warrants that it has sufficient cash and/or financing to fund the Purchase Price at Closing.  Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok.**

16. Section 14 of the PSA are hereby modified as follows:

    The parties acknowledge that (a) the **Seller**~~Selling Broker~~ will not be responsible for the Deposit until the funds have cleared into the **Seller's**~~Selling Broker's~~ account, (b) the **Seller**~~Selling Broker~~ shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that

party, (c) the **Seller** ~~Selling Broker~~ **shall pay, in accordance with this PSA,** ~~may retain~~ the commission due the Brokers prior to **the release** ~~disbursement~~ of the Deposit ~~or Balance~~ to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment **of the Bankruptcy Court**, to have engaged in willful misconduct or acted with gross negligence.

17. The second and third sentences of Section 16 of the PSA are hereby modified as follows:

    If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA**, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings**, unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**.

18. The ninth and tenth sentences of Section 16 of the PSA are hereby modified as follows:

    ~~Buyer may assign this PSA to any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise,~~ n**N**either party may assign this PSA without the other party's consent~~, which consent shall not be unreasonably withheld~~.

19. In the signature block on page 4 of the PSA, the phrase "Selling Broker Deposit Confirmation (Subject to clearance of funds)" is hereby modified to read: "Seller Deposit Confirmation (Subject to clearance of funds)".

    **Seller**

    By: _____

    Name: Luc A. Despins, as chapter 11 trustee
    for the estate of Ho Wan Kwok

    Date: _____

6

**Buyer**

By:

Name:

Title:

Date:

**Exhibit 19**

CASE NO. _____22-50073_____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____19_____

DATE _____ IDEN.

DATE __June 27, 2023 admitted in full__ EVID.

BY __R. Senteio__

Deputy Clerk

AO 386

# LETTER OF INTENT

Date: May 12, 2023

███████████████

**RE: M/Y Lady May COBR # 745195**

To Luc A Despins
As Chapter 11 Trustee for the Estate of Ho Wan Kwok:

As per my inspection of Lady May, I ████████ hereby make the following offer for purchase of Lady May subject to the following conditions:

1) Purchase Price Twenty Million Dollars ($20,000,000)

2.  If accepted, a deposit of 10% of the agreed price will be wired within 3 business days to the escrow account of Edmiston and Company (details to be provided)

3)  Offer acceptance is subject to approval of the Court.

4)  Subject to mutually agreed formal contract to be executed by both Buyer and Seller no later than May 31, 2023.

5)  Subject to satisfactory sea trial and condition survey acceptable to the buyer. Sea trial and condition survey to be completed within 14 days of execution of mutually agreed formal contract as per Clause 4. Acceptance/rejection within 7 days of survey completion.

6)  Subject to mutually agreed inventory of all onboard and ashore items belonging to the yacht excluding the personal effects of the owner and crew.

7)  Closing to take place no later than June 30, 2023.

8)  Subject to yacht being delivered at closing free of all debts, maritime liens and encumbrances.

9)  This letter of intent and the mutually acceptable formal contract are to be the subject of a confidentiality clause to be agreed between the Buyer and Seller.

END OF OFFER.

████████████████████

Accepted By Seller:

_____

**Exhibit 20**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____ 20 _____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY R. Senteio

Deputy Clerk

AO 386

## Bongartz, Alex

| | |
|---|---|
| **From:** | ████████████████████ |
| **Sent:** | Tuesday, May 30, 2023 3:46 PM |
| **To:** | Despins, Luc A. |
| **Cc:** | Bongartz, Alex |
| **Subject:** | [EXT] Lady May |
| **Attachments:** | 20230530151310044.pdf |

## --- External Email ---

You don't often get email from ████████████. Learn why this is important

Dear Mr. Despins:

As per the instructions from Dirk Johnson's email of May 24, 2023, attached please find the signed offer in the form of the PSA and Addendum (as written by yourselves) to purchase LADY MAY from ████████████████████.

The offer is **$21,500,000** with a survey acceptance/rejection date of June 20, 2023 and a closing on or before June 30, 2023.

In addition, ████████████ understands that there might be a storage container in Florida that has some loose chairs, a bar and some miscellaneous small equipment that at one point in the past were on board the boat – if this is a fact, he would like to be able to access this container as part of the boat's inventory. If this is not a fact, then it's not an issue.

Lasty, in order to keep to the timeline of June 20 for acceptance/rejection of the survey and a closing on June 30th, knowing if this offer is accepted as soon as possible is critical so a surveyor can be lined up.

As he has proven over the years having owned numerous vessels of Lady May's caliber and stature - ████████████ is ready, willing and able to complete this transaction,  and I look forward to hearing from you at your earliest opportunity,

Sincerely,





**INTERNATIONAL YACHT BROKERS ASSOCIATION**

## PURCHASE AND SALE AGREEMENT
## FOR BROKERAGE VESSEL

| BUYER: | SELLER: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok |
|---|---|
| Address: | Address: c/o Paul Hastings LLP, 200 Park Avenue |
| | New York, New York 10166 |
| Nationality: | Nationality: U.S. |
| VESSEL NAME: Lady May | MANUFACTURER: Feadship |
| Model: Semi displacement motor yacht | Length Overall: 44.26m |
| Year: 2014 | ☐ Doc or ☑ Reg No.: 745195        Flag: Cayman Is. |
| Hull No.: 688 | Engine Description: Diesel (Caterpillar) |
| Selling Broker: | Listing Broker: Edmiston & Company Limited |

| IMPORTANT DATES | PURCHASE PRICE |
|---|---|
| Offer Date: May 30, 2023 | Purchase Price: $21,500,000 |
| Offer Expiration Date: June 9, 2023 | Less Deposit: (20% of Purchase Price) $4,300,000 |
| Accept/Reject Date: June 20, 2023 | Less Trade Allowance (see Addendum): Not applicable |
| Closing Date: on or before June 30, 2023 | Balance: $17,200,000 |

**Delivery Location:** International waters, off the coast of Rhode Island

*NOTE: If Vessel is to be moved to the Delivery Location, such location must be specified with precision. The mere listing of a port or city is insufficient.*

**ADDITIONAL REGISTERED VESSELS INCLUDED** ☑ Yes ☐ No

1. **Agreement**. Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which is has been signed by both parties. "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. Listing Broker and Selling Broker shall be referred to herein as the "Brokers." If there is a Trade Allowance, the conditions of the trade-in will be governed by the attached Trade-In Value Addendum. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2. **Deposit**. Within _____ business days (3 business days if left blank) following Seller's signature of this PSA, Buyer shall pay the Deposit to the Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Selling Broker's escrow account.

3. **Survey Option; Acceptance of Vessel; Conditions of Survey**. Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected. If inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) *Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable*, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay *all* costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. *Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have rejected the Vessel if it fails to give timely written notice of its acceptance.* Upon Buyer's acceptance of the Vessel, Seller will not m_____ ___ e Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer

Buyer's Initials: _____                                                                                   Seller's Initials: _____

*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

rejects or is deemed to reject the Vessel, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4. **Closing.** The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable titleto Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and/or to the Selling Broker for onward transfer to Seller by wire transfer. Any funds Seller owes to (i) the Brokers for the commission, storage, insurance, repairs and/or other items or (ii) the holder of any other Encumbrance, will be deducted from the amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.

5. **Brokers.** The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability; provided, however, that in such instance the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6. **Seller's Representations; Requirements for Closing.** Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing), (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6, and (e) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any governing authority. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents,(iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7. **Risk of Loss; Force Majeure.** Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a) Seller must repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, (b) Buyer must pay the Balance and take delivery of the Vessel as repaired, and (c) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable control ("*Force Majeure* Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, or other natural disasters. If a *Force Majeure* Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the *Force Majeure* Event delays the Closing Date for a period of at more than 30 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8. **Default.** *Notwithstanding anything herein to the contrary, if the Deposit is not paid when due* or Closing is not consummated due to Buyer's non-▮▮▮▮▮, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the

Buyer's Initials: ▮▮▮▮▮                                                                                    Seller's Initials: _____

       ©2020 International Yacht Brokers Association. All rights reserved.       Rev. 3.10.20

purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA. Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.

9. **Sales and Use Taxes.** Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling Broker at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10. **REPRESENTATIONS AND WARRANTIES.** SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ON THE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS **"AS IS"** CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, **ALL OF WHICH ARE DISCLAIMED.**

11. **Financing.** Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12. **Counterparts.** The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13. **Binding Effect; Contemporaneous Contracts; Future Sales.** This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14. **Escrowed Funds.** The parties acknowledge that (a) the Selling Broker will not be responsible for the Deposit until the funds have cleared into the Selling Broker's account, (b) the Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Selling Broker may retain the commission due the Brokers prior to disbursement of the Deposit or Balance to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment, to have engaged in willful misconduct or acted with gross negligence.

15. **Additional Terms.** See Addendum.

16. **Miscellaneous.** This PSA, including its exhibits and schedules, is the **entire agreement** between the parties pertaining to the subject matter hereof and **supersedes** all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall be entitled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable. There are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, except in writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, █████████ electronic means, and shall be effective upon delivery with proof of delivery retained. Buyer may assign this PSA to

Buyer's Initials █████                                                                                                    Seller's initials: _____

©2020 International Yacht Brokers Association. All rights reserved.                    Rev. 3.10.20

any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, neither party may assign this PSA without the other party's consent, which consent shall not be unreasonably withheld. No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given. Paragraph headings are informational and included only for convenience.

**17.** **Governing Law and Dispute Resolution.** Check (a), (b) or (c). If none checked, (a) will apply.  Any dispute involving this Agreement will be resolved: (a) ☐ in the courts located in the State of _____ (Florida, if left blank), (b) ☐ by binding arbitration in the State of _____ (Florida, if left blank), (c) ☐ by binding arbitration in London, England.  *If (a) or (b) is selected*: (i) this Agreement will be governed by and interpreted according to the law of the State of _____ (Florida, if left blank) regardless of its principles of conflicts-of-laws and (ii) the proceedings will be conducted in the county of the main office of the Selling Broker, or if the Selling Broker has no office in Florida, in _____ (Fort Lauderdale, Florida, if no other city indicated). *If (b) is selected*, the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in force when the arbitration is commenced will apply unless the following rules apply: _____. If the amount in controversy including counterclaims is not more than USD $1,000,000.00, the parties shall jointly select a single arbitrator from the list of arbitrators maintained by the International Yacht Brokers Association ("IYBA") within twenty (20) days of the giving of notice of arbitration. If the parties are unable to agree upon the arbitrator, the IYBA shall have the power to make the appointment of the single arbitrator.  If the amount in controversy is greater, the parties shall each appoint one arbitrator and the two arbitrators will jointly appoint a third arbitrator. If they cannot agree on the third arbitrator within 14 days, either party may request that the IYBA appoint the third arbitrator from the list of arbitrators maintained by the IYBA. The decision of the single arbitrator, or if a three abitrator panel, any two of them will be final and binding on the parties. An action may be brought in any court of competent jurisdiction to enforce any arbitral award or compel arbitration.  If (c) is selected: (i) this Agreement will be governed by and interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii)  the parties irrevocably agree that any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) the arbitration shall be conducted in accordance with the rules of London Maritime Arbitrators Association ("LMAA") current when the arbitration is commenced, (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while if greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. Whatever option is selected, the parties irrevocably submit to the exclusive jurisdiction of such court or arbitral forum, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the proceeding will be decided only in such court or arbitral forum and, further, not to bring any claim relating to this Agreement in any other court or arbitral forum.  The parties, having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this Agreement, whether against each other or any Broker.

| **BUYE** | | **SELLER:** |
|---|---|---|
| Print: | | Print: _____ |
| Title: | | Title: _____ |
| Date: | | Date: _____ |

**SELLING BROKER  DEPOSIT CONFIRMATION (Subject to clearance of funds)**

Print: _____                    Amount: _____

Title: _____                    Date: _____

*This form was prepared for the exclusive use and benefit of the members of the IYBA.  The parties and brokers hereby release the IYBA from any liability for damages resulting from or related to its use.  The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

**Addendum to Purchase and Sale Agreement for Brokerage Vessel, executed on [-----], 2023, Between (i) Luc A. Despins, as the Chapter 11 Trustee for the Estate of Ho Wan Kwok and (ii) [-----------] (the "Addendum")**

Capitalized terms used but not defined herein have the meanings set forth in the Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, with respect to the Lady May (the "PSA"). For the avoidance of doubt, any reference to the PSA (whether in this PSA or the Addendum) shall be to the PSA as modified by this Addendum.

1. Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2. The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "Chapter 11 Case"), is pending.

3. Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court. For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4. Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

5. The fourth and fifth sentences in Section 1 of the PSA are hereby modified as follows:

   "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this **PSA. There will be no Exclusions List.**Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. **For the avoidance of doubt, the Lady May II is not included as part of the sale of the Vessel pursuant to this PSA.**

6. The eighth sentence in Section 1 of the PSA is hereby modified as follows:

1

There shall be no ~~If there is a~~ Trade Allowance __in connection with the sale of the Vessel pursuant to this PSA__, ~~the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum.~~

7.  Section 2 of the PSA is hereby modified as follows:

~~Within___business days (3 business days if left blank)) following Seller's signature of this PSA,__On [-----], 2023,__ Buyer __paid~~shall pay__ the Deposit to the __Seller's~~Selling Broker's__ account, as acknowledged below, as a deposit toward the Purchase Price to be held __in escrow__ subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspection of the Vessel until the Deposit has cleared into the __Seller's~~Selling Broker's__ escrow account.

8.  Section 3 of the PSA is hereby modified as follows:

Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, ~~in Buyer's sole discretion,__ with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected__; provided, however, that Buyer may only reject the Vessel if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality to and value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy. For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds. If the__ Buyer __decides to have a survey conducted~~inspected__: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable, __such that the survey is completed prior to the Accept/Reject Date,__ (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have __accepted~~rejected__ the Vessel if it fails to give timely written notice of its __rejection~~acceptance in accordance with this PSA.__ Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in

2

Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer rejects or is deemed to reject the Vessel **in accordance with this PSA and is not otherwise in breach of this PSA,** ~~after all expenses incurred on Buyer's behalf have been paid,~~ (i) the **Seller** ~~Selling Broker~~ shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

9. The sixth sentence in Section 4 of the PSA is hereby modified as follows:

At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) **and the Deposit shall be released to Seller, subject to the deduction in the immediately following sentence** ~~and/or to the Selling Broker for onward transfer to Seller by wire transfer~~. Any funds Seller owes to ~~(i)~~ the Brokers for the commission, storage, insurance, repairs and/or other items **(which are subject to approval of the Bankruptcy Court)** ~~or (ii) the holder of any other Encumbrance,~~ will be deducted from the ~~amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof~~ **Deposit and paid to the Brokers prior to the release of the Deposit to Seller. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.**

10. The second sentence of Section 5 of the PSA is hereby modified as follows:

If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller~~, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability~~; provided, however, that in such instance **(a)** the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price **and (b) the Broker have no duties to the Buyer in connection with the sale of the Vessel** ~~or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price~~.

11. The second sentence of Section 6 of the PSA is hereby modified as follows:

No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing)**, which proof may be the order entered by the**

3

Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances), ~~(c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6,~~ and (c~~e~~) copies of any other documents necessary for transfer of good and marketable title to Buyer.

12. The second and third sentences of Section 7 of the PSA are hereby modified as follows:

If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then, at the Seller's option, ~~(a)~~ Seller may~~must~~ repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, in which case (a~~b~~) Buyer shall~~must~~ pay the Balance and take delivery of the Vessel as repaired, and (b~~e~~) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance or Seller does not exercise the option in the foregoing sentence, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

13. Section 8 of the PSA is hereby modified as follows:

Notwithstanding anything herein to the contrary, if ~~the Deposit is not paid when due or~~ Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by ~~(or if the Deposit was not paid, Buyer shall pay a like amount to)~~ Seller ~~and the Brokers~~ as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA, provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer. ~~Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same~~

4

proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance (which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA), the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA, will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. If Closing is not consummated due to Seller's non-performanceOn Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel in accordance with this PSA. Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.

14. The first sentence of Section 9 of the PSA are hereby modified as follows:

Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the TrusteeSelling Broker at Closing.

15. The following sentence is hereby added after the first sentence of Section 11 of the PSA:

Buyer represents and warrants that it has sufficient cash and/or financing to fund the Purchase Price at Closing. Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok.

16. Section 14 of the PSA are hereby modified as follows:

The parties acknowledge that (a) the SellerSelling Broker will not be responsible for the Deposit until the funds have cleared into the Seller'sSelling Broker's account, (b) the SellerSelling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that

5

party, (c) the ~~Seller~~ ~~Selling Broker~~ **shall pay, in accordance with this PSA,** ~~may retain~~ the commission due the Brokers prior to **the release** ~~disbursement~~ of the Deposit ~~or Balance~~ to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment **of the Bankruptcy Court**, to have engaged in willful misconduct or acted with gross negligence.

17. The second and third sentences of Section 16 of the PSA are hereby modified as follows:

If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA**, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings**, unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**.

18. The ninth and tenth sentences of Section 16 of the PSA are hereby modified as follows:

~~Buyer may assign this PSA to any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, n~~**N**either party may assign this PSA without the other party's consent~~, which consent shall not be unreasonably withheld~~.

19. In the signature block on page 4 of the PSA, the phrase "Selling Broker Deposit Confirmation (Subject to clearance of funds)" is hereby modified to read: "Seller Deposit Confirmation (Subject to clearance of funds)".

**Seller**

By: _____

Name: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok

Date: _____

6

Buyer

By: _____

Name: _____

Title: _____

Date: _____

7

**Exhibit 21**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's EXHIBIT _____ 21 _____

DATE _____ IDEN.

DATE _ June 27, 2023 admitted in full _ EVID.

BY _____ R. Senteio _____
                    Deputy Clerk

AO 386

# LETTER OF INTENT

Luc A. Despins, as the Chapter 11 Trustee for the estate of Ho Wan Kwok (the "Seller"), and ███████████████████████ (the "Buyer"), hereby confirm their intent to enter into a Vessel Purchase Agreement for the Buyer's purchase of "Lady May" a 2014/2019 44.25m "Feadship" motor yacht bearing British Official Number 745195 and her tenders and inventory (the "Vessel") at a price of $18,000,000.00 (Eighteen Million Dollars). With the execution by the Seller and Buyer of this Letter of Intent the Buyer will send an earnest money deposit of $1,800,000.00 (One Million Eight Hundred Thousand Dollars) (the "Deposit"), to the Law Offices of ████████████████████████████████████ (the "Escrow Agent") within three business days.

This offer is subject to the conclusion of a Vessel Purchase Agreement acceptable to both parties. The parties agree, in good faith, to use their best endeavors to come to an agreement on the contract terms and sign a Vessel Purchase Agreement by May 12, 2023 (the "Contract Date"). For the avoidance of doubt, the parties agree that the terms shall include without limitation, that the Buyer will complete its due diligence withing three weeks of signing the Vessel Purchase Agreement, and the Buyer will receive a court order noting that the Vessel is conveyed free and clear of any claims. If the parties fail to enter into a Vessel Purchase Agreement by the Contract Date, or the Buyer's earnest money deposit is not received by the Escrow Agent by May 12, 2023, 5:00 p.m. EST the Seller may discontinue negotiations and put the Vessel back on the market for sale to other individuals or entities.

If the parties proceed to a Vessel Purchase Agreement, the Escrow Agent will apply the Deposit as part of the contract price. If the parties cannot come to contract terms, the Escrow Agent will return the Deposit to the Buyer, in full, immediately upon the Buyer's written request.

Signatures may be transmitted via emailed pdf copies, with the Seller and Buyer agreeing that emailed signatures shall serve the same as originals.

This Letter of Intent shall be governed by and construed and enforced in accordance with the laws of the State of Florida. The venue of any action arising from this Agreement shall lie exclusively in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, and both parties shall submit to the jurisdiction of such court.

Agreed:

Buyer: ███████████████            Luc A. Despins, as the Chapter 11 Trustee for the
                                    estate of Ho Wan Kwok

By: ___████████████████___         By: _____

                                    Its: _____

Dated: May___9___, 2023            Dated: May_____, 2023

**Exhibit 22**

CASE NO. _____22-50073_____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____22_____

DATE _____ IDEN.

DATE __June 27, 2023 admitted in full__ EVID.

BY __R. Senteio__

Deputy Clerk

AO 386

**Bongartz, Alex**

| | |
|---|---|
| **From:** | Dirk Johnson <DAJ@Edmiston.com> |
| **Sent:** | Monday, May 22, 2023 6:01 PM |
| **To:** | Despins, Luc A.; Bongartz, Alex |
| **Subject:** | [EXT] Offer 1 increased $20M |

**--- External Email ---**

Dear Luc,

█████████ has increased his offer to $20,000,000. His terms are in line with all the other offers and until we settle on a price there is no reason to fine tunes dates. He is prepared to move quickly and I will send him our proposed term sheet as soon as it is approved by the Judge.

Dirk



**Exhibit 23**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's  EXHIBIT _____ 23 _____

DATE _____ IDEN.

DATE _ June 27, 2023 admitted in full _ EVID.

BY _ R. Senteio _____

Deputy Clerk

AO 386

# International Yacht Brokers Association, Inc.

## PURCHASE AND SALE AGREEMENT FOR BROKERAGE VESSEL

| BUYER: | SELLER: LUC A. DESPINS, AS CH11 TRSTEE OBO HO WAN KWOK |
|---|---|
| Address | Address: C/O PAUL HASTINGS LLP |
| | 200 PARK AVENUE, NEW YORK, NY 10166 |
| Nationality: | Nationality: |
| VESSEL NAME: LADY MAY | MANUFACTURER: FEADSHIP |
| Model: CUSTOM | Length Overall: 46.2 M |
| Year: 2014 | ☐ Doc or ☑ Reg No.: 745195          Flag: CAYMAN |
| Hull No.: 688 | Engine Description: |
| Selling Broker: | Listing Broker: DIRK JOHNSON  - EDMISTON |

| IMPORTANT DATES | PURCHASE PRICE |
|---|---|
| Offer Date: MAY 17, 2023 | Purchase Price: $18,500,000 |
| Offer Expiration Date: MAY 29, 2023 | Less Deposit: $3,700,000 |
| Accept/Reject Date: June 6, 2023 | Less Trade Allowance (see Addendum): |
| Closing Date: JUNE 21, 2023 | Balance: $14,800,000 |

**Delivery Location:** BERMUDA OR AS MUTUALLY AGREED BETWEEN THE PARTIES
*Note: If Vessel is to be moved to the Delivery Location, such location must be specified with precision.*

ADDITIONAL REGISTERED VESSELS INCLUDED ☑ Yes ☐ No

1. **Agreement**.  Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA").  Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which it has been signed by both parties. "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five (5) days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel.  Listing Broker and Selling Broker shall be referred to herein as the "Brokers."  If there is a Trade Allowance, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2. **Deposit**. Within ___3___ business days (or 3 business days if left blank) following Seller's signature of this PSA, Buyer shall pay the Deposit to the Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held subject to the terms of this PSA.  Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Selling Broker's escrow account.

3. **Survey Option; Acceptance of Vessel; Conditions of Survey**.  Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected. If inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the <u>sole</u> party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) *Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable*, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay *all* costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for assessing the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. *An acceptance subject to any conditions will be deemed a proposal to amend this PSA and will not preclude Buyer from accepting the Vessel unconditionally on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have rejected the Vessel if it fails to give timely written notice of its acceptance.*  Upon Buyer's acceptance of the Vessel, Seller will

Buyer's Initials:                                    ©2022 International Yacht Brokers Association. All rights reserved.          Seller's Initials: _____/_____
Page 1 of 4                                                                                                                                      Rev. 2.1.22
*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

**not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location**. If Buyer rejects or is deemed to reject the Vessel, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4. **Closing**.  The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable title to Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means.  Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location.  On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer.  At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and/or to the Selling Broker for onward transfer to Seller by wire transfer.  Any funds Seller owes to (i) the Brokers for the commission, storage, insurance, repairs and/or other items or (ii) the holder of any other Encumbrance, will be deducted from the amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.

5. **Brokers**.  The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller, and the Broker may disclose to both parties facts materially affecting the Vessel's value or desirability; provided, however, that in such instance the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6. **Seller's Representations; Requirements for Closing**.  Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances").  No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those Encumbrances that will be paid in full at Closing), (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6 incorporating the litigation costs, attorney's fees, governing law and dispute resolution provisions in this PSA, and (e) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any governing authority.  Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents, (iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7. **Risk of Loss; *Force Majeure***.  Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a) Seller must repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, (b) Buyer must pay the Balance and take delivery of the Vessel as repaired, and (c) the Closing Date will be extended by the length of the repair period.  If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable control (*"Force Majeure"* Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, plagues, pandemics, epidemics, infectious disease outbreaks, or other natural disasters of any type (without limitation), quarantines, travel restrictions, whether declared by a governmental authorities or a non-governmental organization, interruptions of

©2022 International Yacht Brokers Association. All rights reserved.

regular transportation, civil disobedience, piracy, and hostilities of any type (without limitation), affecting the timely performance by either party of its obligations herein. If a *Force Majeure* Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the *Force Majeure Event* delays the Closing Date for a period of at more than 60 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8. **Default**. *Notwithstanding anything herein to the contrary, if the Deposit is not paid when due* or Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA. Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.

9. **Sales and Use Taxes**. Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling Broker at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10. **REPRESENTATIONS AND WARRANTIES**. SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ON THE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS **"AS IS"** CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, *ALL OF WHICH ARE DISCLAIMED*.

11. **Financing**. Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12. **Counterparts**. The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13. **Binding Effect; Contemporaneous Contracts; Future Sales**. This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14. **Escrowed Funds**. The parties acknowledge that (a) the Selling Broker will not be responsible for the Deposit until the funds have cleared into the Selling Broker's account, (b) the Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Selling Broker may retain the commission due the Brokers prior to disbursement of the Deposit or Balance to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment, to have engaged in willful misconduct or acted with gross negligence.

15. **Additional Terms**. ADDENDUM ONE FORMS AN INTEGRAL PART OF THIS AGREEMENT.





Buyer's Initials:

Page 3 of 4

©2022 International Yacht Brokers Association. All rights reserved.

Seller's Initials: _____/_____

Rev. 2.1.22

**16.** **Miscellaneous**. This PSA, including its exhibits and schedules, is the ***entire agreement*** between the parties pertaining to the subject matter hereof and ***supersedes*** all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall be entitled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable. There are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, except in writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, email, or other electronic means, and shall be effective upon delivery with proof of delivery retained. Buyer may assign this PSA to any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, neither party may assign this PSA without the other party's consent, which consent shall not be unreasonably withheld. No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given. Paragraph headings are informational and included only for convenience.

**17.** **Governing Law and Dispute Resolution**. *Check (a) or (b). If none checked, (a) will apply.* The parties shall resolve any dispute arising from this PSA by: (a) ☑ binding arbitration pursuant to the rules of the International Yacht Arbitration Council ("IYAC") in force when the arbitration is commenced in Fort Lauderdale ☐, London ☐, or Monaco ☐ (if none checked, Fort Lauderdale); or (b) ☐ binding arbitration in London, England under the rules of the London Maritime Arbitrators Association ("LMAA"). *If (a) is selected*: this PSA will be governed by and interpreted according to Florida law ☑ or English law ____ (if none checked, Florida) regardless of the principles of conflicts-of-laws adopted by such jurisdiction. *If (b) is selected*: (i) this PSA will be governed by and interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii) the parties irrevocably agree that any dispute arising out of or in connection with this PSA shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) the arbitration shall be conducted in accordance with the rules of the LMAA current when the arbitration is commenced, (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while if greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. ***Whatever option is selected***: the parties irrevocably submit to the exclusive jurisdiction of such arbitral forum, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the proceeding will be decided only in such arbitral forum and, further, not to bring any claim relating to this PSA in any other court or arbitral forum. Any claims by the Buyer against any of the Brokers, shall be resolved pursuant to the terms of this PSA. Judgment on the award rendered by the arbitrator may be entered as final judgment in any court having jurisdiction thereof. ***The parties, having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this PSA.***

**BUYER:**                                          **SELLER:**

Print: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮          Print: _____
Title: _____          Title: _____
Date: _____          Date: _____

**BUYER:**                                          **SELLER:**

Print: _____          Print: _____
Title: _____          Title: _____
Date: _____          Date: _____

**SELLING BROKER  DEPOSIT CONFIRMATION (Subject to clearance of funds)**

Print Name/Title: ▮▮▮▮▮▮▮▮▮▮▮▮          Amount: _____
Date: _____



©2022 International Yacht Brokers Association. All rights reserved.          Rev. 2.1.22
*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

## Addendum

This Addendum is made to the Purchase and Sale Agreement for Brokerage Vessel dated May 5, 2023 (the "**Agreement**"), between ████████████ and/or assigns ("**Buyer**"), and Luc A. Despins, as Chapter 11 Bankruptcy Trustee for the Estate of Ho Wan Kwok ("**Seller**").

The parties supplement and amend the Agreement as follows:

1. **Interpretation of This Addendum.** Capitalized terms in this Addendum have the same meanings as in the Agreement unless separately defined herein.

2. **Escrow Agent.** ████████████████████ (the "**Escrow Agent**"), shall hold and disburse the Deposit, and any other money and documents deposited by Buyer and Seller, in accordance with the Agreement. Every reference in the Agreement to the Selling Broker as the holder of the Deposit, and any other money and documents, will be interpreted to refer to the Escrow Agent. The Seller and the Buyer acknowledge that the Escrow Agent is the law firm representing the Buyer and agree that the Escrow Agent may continue to represent the Buyer in this transaction and in any dispute arising between the parties.

3. **Closing Documents.** At or before Closing, Buyer and Seller shall deliver to each other the documents listed in the attached Exhibit 1.

4. **Due Diligence.** Buyer, Seller, and Brokers each shall, upon request, provide any information or documents reasonably required by the requesting party's bank to establish the identity, residency, and source of funds of its beneficial owner or owners.

5. **Inconsistency.** This Addendum governs over any inconsistent terms in the Agreement, which, as amended hereby, is declared to be in full force and effect.

6. **Signing of This Addendum.** An electronic signature of this Addendum will have the same effect as a handwritten signature. This Addendum may be signed in counterparts, which, together, will constitute a single instrument. A signed copy of this Addendum sent by email, facsimile, or other electronic means will be deemed an original for all purposes.

**Signatures appear on following page.**

Buyer's Initials:   1  Seller's Initials: _____

**Buyer:**

**Seller:**

Estate of Ho Wan Kwok

_____

By: Luc A. Despins

Its: Trustee

**Escrow Agent:**

    The Escrow Agent shall hold and disburse the Deposit, and any other money and documents deposited with the Escrow Agent, in accordance with this Agreement.

_____

By: ▮▮▮▮▮

Title: ▮▮▮▮

## Exhibit 1: Document List

At or before Closing, Seller shall deliver the following documents to Buyer:

**Registration Documents**

1.  Certificate of British Registry for the Vessel;

2.  transcript of title for the Vessel, showing title to the Vessel in Seller, free and clear of any recorded liens, claims, or encumbrances, dated no more than three business days before Closing;

3.  three original bills of sale for the Vessel warranting that the Vessel is transferred to Buyer free and clear of any lien, claim, or encumbrance, in a form recordable in the registry designated by Buyer;

4.  two original bills of sale for each of the Vessel's tenders and toys warranting that each is transferred to Buyer free and clear of any lien, claim, or encumbrance, in a form recordable in the registry designated by Buyer;

5.  original endorsed titles, registrations, manufacturers' statements of origin, and statements of non-registry, as applicable, for the Vessel's tenders and toys, in a form recordable in the registry designated by Buyer;

**Technical Documents and Certificates**

6.  Classification Certificate, if issued and in Seller's possession or control, or if expired, the last expired version;

7.  Confirmation of Class Certificate, if applicable, dated no more than seven business days before Closing;

8.  Any class and flag state certificates confirming the Vessel's commercial compliance, if issued and in Seller's possession or control, or if expired, the last expired version;

9.  the Vessel's logbooks and all plans, blueprints, handbooks, manuals, warranties, and technical data in Seller's possession relating to the Vessel and her machinery and equipment (which will be delivered on board the Vessel), or if issued and in Seller's possession or control, or if expired, the last expired version;

**Corporate Authorization**

10. an order entered by the bankruptcy court in accordance with bankruptcy code section 363, free and clear of all liens, encumbrances, and interests;

    At or before Closing, Buyer shall deliver the following documents to Seller:

11. assignment of contract;

Buyer's Initials: __ ███████        3        Seller's Initials: _____

12. certificate of status for Buyer from the appropriate authority in Buyer's jurisdiction, dated no more than five business days before Closing;

13. copies of the certificate of formation, articles of organization, and operating agreement, or equivalent organizational documents, for Buyer, certified by a manager of Buyer to be true copies

14. certificate of incumbency for Buyer, stating the members, managers, and officers, or equivalents, of Buyer; and

15. written consent of the managers of Buyer authorizing the purchase of the Vessel from Seller and confirming the authority of any person signing documents on Buyer's behalf, together with the original of any power of attorney referred to in this consent.

**Exhibit 24**

CASE NO. _____22-50073_____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____24_____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY _R. Senteio_

Deputy Clerk

AO 386

## Bongartz, Alex

| | |
|---|---|
| **From:** | ██████████████ |
| **Sent:** | Tuesday, May 30, 2023 4:40 PM |
| **To:** | Bongartz, Alex |
| **Cc:** | daj@edmiston.com; Despins, Luc A. |
| **Subject:** | [EXT] RE: Lady May - Addendum to PSA |
| **Attachments:** | PSA and Addendum Lady May ██████.pdf; mg_info.txt |

> You don't often get email from ████████. Learn why this is important

Good Afternoon,

Please find attached the signed PSA and addendum for the purchase of M/Y Lady May.

The terms of PSA and addendum were not altered from what was provided.

The client is ready to send the deposit immediately and proceed with the survey.

Best Regards,



---

**From:** Bongartz, Alex <alexbongartz@paulhastings.com>
**Sent:** Tuesday, May 30, 2023 2:15 PM
**To:** ██████████████
**Cc:** daj@edmiston.com; Despins, Luc A. <lucdespins@paulhastings.com>
**Subject:** RE: Lady May - Addendum to PSA

Yes, you have attached the correct version of the Addendum.

Alex

---

**From:** ██████████████
**Sent:** Tuesday, May 30, 2023 1:07 PM
**To:** Bongartz, Alex <alexbongartz@paulhastings.com>
**Cc:** daj@edmiston.com; Despins, Luc A. <lucdespins@paulhastings.com>
**Subject:** [EXT] Lady May - Addendum to PSA

> You don't often get email from ████████. Learn why this is important

Good Afternoon Alex and Dirk,

Please confirm that the attached addendum is what you would like executed and submitted with the PSA. If it is not, please send me the appropriate version to execute. Thank you.

Best Regards,



**IYBA**
INTERNATIONAL YACHT
BROKERS ASSOCIATION

**PURCHASE AND SALE AGREEMENT
FOR BROKERAGE VESSEL**

| BUYER: | SELLER: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok |
|---|---|
| Address: | Address: c/o Paul Hastings LLP, 200 Park Avenue |
| | New York, New York 10166 |
| Nationality: | Nationality: U.S. |
| VESSEL NAME: Lady May | MANUFACTURER: Feadship |
| Model: Semi displacement motor yacht | Length Overall: 44.25m |
| Year: 2014 | ☐ Doc or ☑ Reg No.: 745195          Flag: Cayman Is. |
| Hull No.: 688 | Engine Description: Diesel (Caterpillar) |
| Selling Broker: | Listing Broker: Edmiston & Company Limited |
| **IMPORTANT DATES** | **PURCHASE PRICE** |
| Offer Date: May 30, 2023 | Purchase Price: $16,400,000.00 |
| Offer Expiration Date: June 9, 2023 | Less Deposit: $3,280,000.00 |
| Accept/Reject Date: June 28, 2023 | Less Trade Allowance (see Addendum): Not applicable |
| Closing Date: on or before July 20, 2023 | Balance: $13,120,000.00 |

**Delivery Location:** International waters, off the coast of Rhode Island
*NOTE:* **If Vessel is to be moved to the Delivery Location, such location must** *be specified with precision. The mere listing of a port or city is insufficient.*

**ADDITIONAL REGISTERED VESSELS INCLUDED ☑ Yes ☐ No**

1. **Agreement**. Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which it has been signed by both parties. "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. Listing Broker and Selling Broker shall be referred to herein as the "Brokers." If there is a Trade Allowance, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2. **Deposit**. Within _____ business days (3 business days if left blank) following Seller's signature of this PSA, Buyer shall pay the Deposit to the Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Selling Broker's escrow account.

3. **Survey Option; Acceptance of Vessel; Conditions of Survey**. Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected. If inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) *Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable,* (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay *all* costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. *Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have rejected the Vessel if it fails to give timely written notice of its acceptance.* **Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location.** If Buyer

Buyer's Initials:                                                                                    Seller's Initials: _____

Page 1 of 4                         ©2020 International Yacht Brokers Association. All rights reserved.              Rev.3.10.20

*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

rejects or is deemed to reject the Vessel, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4. **Closing**. The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable title to Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and/or to the Selling Broker for onward transfer to Seller by wire transfer. Any funds Seller owes to (i) the Brokers for the commission, storage, insurance, repairs and/or other items or (ii) the holder of any other Encumbrance, will be deducted from the amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.

5. Brokers. The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability; provided, however, that in such instance the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6. **Seller's Representations; Requirements for Closing**. Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing), (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6, and (e) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any governing authority. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents,(iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7. **Risk of Loss; Force Majeure.** Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a) Seller must repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, (b) Buyer must pay the Balance and take delivery of the Vessel as repaired, and (c) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable control ("Force Majeure Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, or other natural disasters. If a Force Majeure Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the Force Majeure Event delays the Closing Date for a period of at more than 30 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8. **Default**. *Notwithstanding anything herein to the contrary, if the Deposit is not paid when due* or Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the

Buyer's Initials:                                                                                                                    Seller's Initials: _____

Page 2 of 4                                   ©2020 International Yacht Brokers Association. All rights reserved.          Rev. 3.10.20

purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA. Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.

9. **Sales and Use Taxes**. Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling Broker at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10. **REPRESENTATIONS and WARRANTIES**. SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ON THE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS *"AS IS"* CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, *ALL OF WHICH ARE DISCLAIMED.*

11. **Financing**. Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12. **Counterparts**. The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13. **Binding Effect; Contemporaneous Contracts; Future Sales**. This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14. **Escrowed Funds**. The parties acknowledge that (a) the Selling Broker will not be responsible for the Deposit until the funds have cleared into the Selling Broker's account, (b) the Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Selling Broker may retain the commission due the Brokers prior to disbursement of the Deposit or Balance to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment, to have engaged in willful misconduct or acted with gross negligence.

15. **Additional Terms**.   See Addendum.

16. **Miscellaneous**. This PSA, including its exhibits and schedules, is the *entire agreement* between the parties pertaining to the subject matter hereof and *supersedes* all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall be entitled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable. There are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, except in writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, email, or other electronic means, and shall be effective upon delivery with proof of delivery retained. Buyer may assign this PSA to

Buyer's Initials:

Seller's Initials: _____

Page 3 of 4

©2020 International Yacht Brokers Association. All rights reserved.

Rev. 3.10.20

y member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, neither party may assign this PSA without the other party's consent, which consent shall not be unreasonably withheld. No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given. Paragraph headings are informational and included only for convenience.

**17. Governing Law and Dispute Resolution. Check (a), (b) or (c). If none checked, (a) will apply.** Any dispute involving this Agreement will be resolved: **(a)** ☐ in the courts located in the State of _____ (Florida, if left blank), **(b)** ☐ by binding arbitration in the State of _____ (Florida, if left blank), **(c)** ☐ by binding arbitration in London, England. *If (a) or (b) is selected*: (i) this Agreement will be governed by and interpreted according to the law of the State of _____ (Florida, if left blank) regardless of its principles of conflicts-of-laws and (ii) the proceedings will be conducted in the county of the main office of the Selling Broker, or if the Selling Broker has no office in Florida, in _____ (Fort Lauderdale, Florida, if no other city indicated). *If (b) is selected*, the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in force when the arbitration is commenced will apply unless the following rules apply: _____. If the amount in controversy including counterclaims is not more than USD $1,000,000.00, the parties shall jointly select a single arbitrator from the list of arbitrators maintained by the International Yacht Brokers Association ("IYBA") within twenty (20) days of the giving of notice of arbitration. If the parties are unable to agree upon the arbitrator, the IYBA shall have the power to make the appointment of the single arbitrator. If the amount in controversy is greater, the parties shall each appoint one arbitrator and the two arbitrators will jointly appoint a third arbitrator. If they cannot agree on the third arbitrator within 14 days, either party may request that the IYBA appoint the third arbitrator from the list of arbitrators maintained by the IYBA. The decision of the single arbitrator, or if a three abitrator panel, any two of them will be final and binding on the parties. An action may be brought in any court of competent jurisdiction to enforce any arbitral award or compel arbitration. If (c) is selected: (i) this Agreement will be governed by and interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii) the parties irrevocably agree that any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) the arbitration shall be conducted in accordance with the rules of London Maritime Arbitrators Association ("LMAA") current when the arbitration is commenced, (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while if greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. Whatever option is selected, the parties irrevocably submit to the exclusive jurisdiction of such court or arbitral forum, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the proceeding will be decided only in such court or arbitral forum and, further, not to bring any claim relating to this Agreement in any other court or arbitral forum. The parties, having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this Agreement, whether against each other or any Broker.

| **BUYER:** | | **SELLER:** |
|---|---|---|
| | | |
| Print: _____ | | Print: _____ |
| Title: _____ | | Title: _____ |
| Date: _____ | | Date: _____ |

**SELLING BROKER  DEPOSIT CONFIRMATION (Subject to clearance of funds)**

Print: _____    Amount: _____

Title: _____    Date: _____

Buyer's Initials: ▮▮▮▮

Seller's Initials: _____

Page 4 of 4

©2020 International Yacht Brokers Association. All rights reserved.

Rev. 3.10.20

*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

**Addendum to Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, Between (i) Luc A. Despins, as the Chapter 11 Trustee for the Estate of Ho Wan Kwok and (ii)** ▮▮▮▮▮▮▮▮▮▮▮▮ **(the "Addendum")**

Capitalized terms used but not defined herein have the meanings set forth in the Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, with respect to the Lady May (the "PSA"). For the avoidance of doubt, any reference to the PSA (whether in this PSA or the Addendum) shall be to the PSA as modified by this Addendum.

1. Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2. The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "Chapter 11 Case"), is pending.

3. Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court. For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4. Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

5. The fourth and fifth sentences in Section 1 of the PSA are hereby modified as follows:

   "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this **PSA. There will be no Exclusions List.**Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. **For the avoidance of doubt, the Lady May II is not included as part of the sale of the Vessel pursuant to this PSA.**

6. The eighth sentence in Section 1 of the PSA is hereby modified as follows:

1

**There shall be no** ~~If there is a~~ Trade Allowance **in connection with the sale of the Vessel pursuant to this PSA,** ~~the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum.~~

7.  Section 2 of the PSA is hereby modified as follows:

    Within _____ business days ~~(3 business days if left blank)) following Seller's signature of this PSA,~~ **On , 2023,** Buyer **paid** ~~shall pay~~ the Deposit to the **Seller's** ~~Selling Broker's~~ account, as acknowledged below, as a deposit toward the Purchase Price to be held **in escrow** subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspection of the Vessel until the Deposit has cleared into the **Seller's** ~~Selling Broker's~~ escrow account.

8.  Section 3 of the PSA is hereby modified as follows:

    Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, ~~in Buyer's sole discretion,~~ with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected**; provided, however, that Buyer may only reject the Vessel if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality to and value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy. For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds. If the Buyer decides to have a survey conducted** ~~inspected~~: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable**, such that the survey is completed prior to the Accept/Reject Date**, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have **accepted** ~~rejected~~ the Vessel if it fails to give timely written notice of its **rejection** ~~acceptance~~ **in accordance with this PSA**. Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in



2

Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer rejects or is deemed to reject the Vessel **in accordance with this PSA and is not otherwise in breach of this PSA,** ~~after all expenses incurred on Buyer's behalf have been paid,~~ (i) the **Seller**~~Selling Broker~~ shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

9. The sixth sentence in Section 4 of the PSA is hereby modified as follows:

At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) **and the Deposit shall be released to Seller, subject to the deduction in the immediately following sentence**~~and/or to the Selling Broker for onward transfer to Seller by wire transfer~~. Any funds Seller owes to ~~(i)~~ the Brokers for the commission, storage, insurance, repairs and/or other items **(which are subject to approval of the Bankruptcy Court)**~~or (ii) the holder of any other Encumbrance,~~ will be deducted from the ~~amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof~~**Deposit and paid to the Brokers prior to the release of the Deposit to Seller. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.**

10. The second sentence of Section 5 of the PSA is hereby modified as follows:

If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller~~, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability~~; provided, however, that in such instance **(a)** the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price **and (b) the Broker have no duties to the Buyer in connection with the sale of the Vessel**~~or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price~~.

11. The second sentence of Section 6 of the PSA is hereby modified as follows:

No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing)**, which proof may be the order entered by the**



3

**Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances)**, (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6, and (**ce**) copies of any other documents necessary for transfer of good and marketable title to Buyer.

12. The second and third sentences of Section 7 of the PSA are hereby modified as follows:

If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then, **at the Seller's option,** (a) Seller may~~must~~ repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, **in which case (a**b**)** Buyer **shall**~~must~~ pay the Balance and take delivery of the Vessel as repaired, and (**b**c**)** the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance **or Seller does not exercise the option in the foregoing sentence**, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

13. Section 8 of the PSA is hereby modified as follows:

Notwithstanding anything herein to the contrary, if ~~the Deposit is not paid when due or~~ Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by ~~(or if the Deposit was not paid, Buyer shall pay a like amount to)~~ Seller ~~and the Brokers~~ as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA**, provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer**. ~~Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same~~



4

proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance **(which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA)**, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA**,** will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. **If Closing is not consummated due to Seller's non-performance**On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed**; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel in accordance with this PSA. Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.**

14. The first sentence of Section 9 of the PSA are hereby modified as follows:

> Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the **Trustee**Selling Broker at Closing.

15. The following sentence is hereby added after the first sentence of Section 11 of the PSA:

> **Buyer represents and warrants that it has sufficient cash and/or financing to fund the Purchase Price at Closing. Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok.**

16. Section 14 of the PSA are hereby modified as follows:

> The parties acknowledge that (a) the **Seller**Selling Broker will not be responsible for the Deposit until the funds have cleared into the **Seller's**Selling Broker's account, (b) the **Seller**Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that



5

party, (c) the ~~Seller~~Selling Broker **shall pay, in accordance with this PSA,**~~may retain~~ the commission due the Brokers prior to **the release**disbursement of the Deposit ~~or Balance~~ to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment **of the Bankruptcy Court**, to have engaged in willful misconduct or acted with gross negligence.

17. The second and third sentences of Section 16 of the PSA are hereby modified as follows:

If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA**, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings**, unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**.

18. The ninth and tenth sentences of Section 16 of the PSA are hereby modified as follows:

~~Buyer may assign this PSA to any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise,~~ n**N**either party may assign this PSA without the other party's consent~~, which consent shall not be unreasonably withheld~~.

19. In the signature block on page 4 of the PSA, the phrase "Selling Broker Deposit Confirmation (Subject to clearance of funds)" is hereby modified to read: "Seller Deposit Confirmation (Subject to clearance of funds)".

**Seller**

By: _____

Name: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok

Date: _____

6

**Buyer**

By: _____

Name: _____

Title: _____

Date: _____

**Exhibit 25**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok

VS. _____

Trustee's  EXHIBIT _____ 25 _____

DATE _____ IDEN.

DATE _ June 27, 2023 admitted in full _ EVID.

BY _ R. Senteio _

Deputy Clerk

AO 386

## Bongartz, Alex

| | |
|---|---|
| **From:** | ███████ |
| **Sent:** | Tuesday, May 30, 2023 3:12 PM |
| **To:** | ███████; DAJ@edmiston.com |
| **Cc:** | Despins, Luc A.; Bongartz, Alex |
| **Subject:** | [EXT] Re: Lady May Terms |
| **Attachments:** | ███████ Offer LADY MAY - May 30 2023.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

### --- External Email ---

> You don't often get email from ███████. Learn why this is important

Dear Dirk,

On behalf of my client, please find attached an offer for LADY MAY. I understand that the offer is below threshold that the trustees were looking for, however I have a duty to my client to present it.

From previous transactions, the client moves very quickly, and I think he would close well before the July 20th date.

RE the addendum, apologies as we did not receive a clean copy – the signed version is the redline version.

Thank you in advance for your consideration and please do not hesitate to reach out with any questions. I wish you the best of luck with the sale.

Regards,



Begin forwarded message:

> **From:** "Bongartz, Alex" <alexbongartz@paulhastings.com>
> **Date:** May 26, 2023 at 10:56:41 AM EDT
> **To:** Dirk Johnson <DAJ@edmiston.com> ███████
> **Cc:** "Despins, Luc A." <lucdespins@paulhastings.com>
> **Subject: RE: Lady May Terms**
>
> Dear ████:
>
> Further to my email below, please see attached an updated draft of the Addendum (clean and redline marked to show changes against the version I had sent you yesterday afternoon).

The only change to the Addendum is the addition of Section 19, which clarifies that the Seller (not the Selling Broker) would confirm receipt of the Deposit (consistent with our other modifications to the PSA, providing that the Deposit is sent to the Seller's account).

Best regards,

Alex

---

**From:** Bongartz, Alex
**Sent:** Thursday, May 25, 2023 5:07 PM
**To:** 'Dirk Johnson' <DAJ@Edmiston.com>; ████████████████
**Cc:** Despins, Luc A. <lucdespins@paulhastings.com>
**Subject:** RE: Lady May Terms

Dear ████ :

Further to Dirks' email below, please see attached:

1. The standard-form of purchase and sale agreement (the "PSA"), with the boxes on top of page 1 and Section 15 filled in (but otherwise not reflecting any modifications);
2. The addendum to the PSA (the "Addendum"), which sets forth our modifications to the PSA; and
3. A clean and redline of a conformed copy of the PSA, showing the modifications we made to the body of the PSA.

We created the redline of the conformed PSA to illustrate our modifications, and it is probably the most useful document to review.  However, the operative documents would be standard-form PSA together with the Addendum.

As Dirk mentioned in his email below, to the extent you intend to modify the form of PSA, please include a mark-up of the agreement as part of your bid (such modifications, if any, will be evaluated in determining the highest and/or best offer).

Please contact me if you have any questions.

Best regards,

Alex

---

**G. Alexander Bongartz** | **Of Counsel** | **Financial Restructuring Group**
Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 | Direct: +1.212.318.6472 |
Main: +1.212.318.6000 | Fax: +1.212.303.7072 | alexbongartz@paulhastings.com |
www.paulhastings.com

**From:** Dirk Johnson <DAJ@Edmiston.com>
**Sent:** Wednesday, May 24, 2023 1:06 PM
**To:** ▮▮▮▮▮▮
**Cc:** Despins, Luc A. <lucdespins@paulhastings.com>; Bongartz, Alex <alexbongartz@paulhastings.com>
**Subject:** [EXT] Lady May Terms


## --- External Email ---


Dear ▮▮▮▮ ,

On behalf of trustee representing the Lady May in the chapter 11 cases currently pending in the District of Connecticut, we appreciate your previous offer and interest in the 46m 2014 Feadship Lady May.  Due to the fact that the Lady May has received offers from several potential buyers, we are inviting all interested parties to present their best and final offer prior to **Tuesday, May 30th at 5:00 p.m. (EST)**.  Such offers should be addressed to the trustee at lucdespins@paulhastings.com.  In order to expedite the process, the terms of such offers should include the following:

- Only offers with a purchase price in excess of $20,000,000 will be considered by the trustee;
- Offers must be based on the trustee's form of purchase agreement (we will provide you with the form of agreement by end of day tomorrow, Thursday, May 25);
  - To the extent you intend to modify such form of purchase agreement, please include a mark-up of the agreement as part of your bid (such modifications, if any, will be evaluated in determining the highest and/or best offer);
- The winning bid must provide for a 20% deposit, which deposit must be received within 48 hours after such bid has been selected as the winning bid;
  - The 20% deposit will be forfeited if winning bidder fails to close on purchase of Lady May in accordance with terms of purchase agreement (to be clear, the purchase agreement will allow buyer to terminate the agreement if the survey reveals a defect affecting the operational integrity of the Lady May or her machinery or her systems or renders the Lady May unseaworthy);
- The purchase agreement must be executed by June 9th;
- Acceptance/rejection (based on results of survey) to occur by June 28th;
  - In the event the winning bidder does not close on the purchase at the price set forth in the purchase agreement, the chapter 11 trustee may, at his option, purchase the survey from the buyer, at cost;
- Closing to take place as soon as practical on or before July 20th; and
- All offers are subject to bankruptcy court review and approval.

Thank you for your interest in Lady May.  Please do hesitate to call me for questions.

Kind regards,
Dirk Johnson
Edmiston

## Dirk Johnson

Sales Broker

T +1 401 619 2200

M +1 401 965 9189

Edmiston

Two Marina Plaza

Goat Island

Newport

Rhode Island, 02840, USA

SALES | CHARTER | NEW CONSTRUCTION | MANAGEMENT

CYBER FRAUD WARNING – PLEASE DO NOT ACCEPT ANY NOTICE OF A CHANGE OF ACCOUNT DETAILS BY EMAIL WITHOUT FIRST CONFIRMING WITH US IN PERSON. EDMISTON WILL NOT ACCEPT RESPONSIBILITY FOR FUNDS TRANSFERRED TO THE INCORRECT ACCOUNT.

Legal Notice

The information in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is unauthorised. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be

taken in reliance on it is prohibited and may be unlawful. If you receive this email unintentionally please delete it and contact the sender immediately.

*****************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

**IYBA** INTERNATIONAL YACHT BROKERS ASSOCIATION

# PURCHASE AND SALE AGREEMENT
# FOR BROKERAGE VESSEL

| | |
|---|---|
| **BUYER:** | **SELLER:** Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok |
| **Address** | Address: c/o Paul Hastings LLP, 200 Park Avenue |
| | New York, New York 10166 |
| **Nationality:** | Nationality: U.S. |
| **VESSEL NAME:** Lady May | **MANUFACTURER:** Feadship |
| Model: Semi displacement motor yacht | Length Overall: 44.25m |
| Year: 2014 | ☐ Doc or ☑ Reg No.: 745195    Flag: Cayman Is. |
| Hull No.: 688 | Engine Description: Diesel (Caterpillar) |
| Selling Broker: | Listing Broker: Edmiston & Company Limited |
| **IMPORTANT DATES** | **PURCHASE PRICE** |
| Offer Date: May 30, 2023 | Purchase Price: $16,100,000.00 |
| Offer Expiration Date: June 9, 2023 | Less Deposit: $3,220,000.00 [20% of Purchase Price] |
| Accept/Reject Date: June 28, 2023 | Less Trade Allowance (see Addendum): Not applicable |
| Closing Date: on or before July 20, 2023 | Balance: $12,880,000.00 |

**Delivery Location:** International waters, off the coast of Rhode Island

*NOTE:* **If Vessel is to be moved to the Delivery Location, such location must** *be specified with precision. The mere listing of a port or city is insufficient.*

**ADDITIONAL REGISTERED VESSELS INCLUDED** ☑ Yes ☐ No

1. **Agreement**. Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which is has been signed by both parties. "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. Listing Broker and Selling Broker shall be referred to herein as the "Brokers." If there is a Trade Allowance, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2. **Deposit**. Within _____ business days (3 business days if left blank) following Seller's signature of this PSA, Buyer shall pay the Deposit to the Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Selling Broker's escrow account.

3. **Survey Option; Acceptance of Vessel; Conditions of Survey**. Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected. If inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) *Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable*, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay *all* costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Sel    ting Broker on or before the Accept/Reject Date. *Whether or not Buyer has inspected the Vessel, Buyer will be deemed to h    the Vessel if it fails to give timely written notice of its acceptance.* Upon Buyer's acceptance of the Vessel, Seller will not mak    the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer

Buyer's Initials: _____

Seller's Initials: _____

Page 1 of 4

©2020 International Yacht Brokers Association. All rights reserved.

Rev.3.10.20

*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

rejects or is deemed to reject the Vessel, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4. **Closing**. The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable titleto Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and/or to the Selling Broker for onward transfer to Seller by wire transfer. Any funds Seller owes to (i) the Brokers for the commission, storage, insurance, repairs and/or other items or (ii) the holder of any other Encumbrance, will be deducted from the amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.

5. **Brokers**. The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability; provided, however, that in such instance the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6. **Seller's Representations; Requirements for Closing**. Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing), (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6, and (e) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any governing authority. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents,(iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7. **Risk of Loss; *Force Majeure*.** Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a) Seller must repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, (b) Buyer must pay the Balance and take delivery of the Vessel as repaired, and (c) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable contro ("*Force Majeure* Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, or other natural disasters. If a *Force Majeure* Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the *Force Majeure* Event delays the Closing Date for a period of at more than 30 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8. **Default**.                     ***tanding anything herein to the contrary, if the Deposit is not paid when due*** or Closing is not consummated due to
Buyer's non                    nce, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the

Buyer's Initials:                                                                                                         Seller's Initials: _____

©2020 International Yacht Brokers Association. All rights reserved.          Rev. 3.10.20

purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA. Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.

9. **Sales and Use Taxes**. Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling Broker at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10. **REPRESENTATIONS AND WARRANTIES**. SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ON THE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS *"AS IS"* CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, *ALL OF WHICH ARE DISCLAIMED.*

11. **Financing**. Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12. **Counterparts**. The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13. **Binding Effect; Contemporaneous Contracts; Future Sales.** This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14. **Escrowed Funds**. The parties acknowledge that (a) the Selling Broker will not be responsible for the Deposit until the funds have cleared into the Selling Broker's account, (b) the Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Selling Broker may retain the commission due the Brokers prior to disbursement of the Deposit or Balance to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment, to have engaged in willful misconduct or acted with gross negligence.

15. **Additional Terms**. See Addendum.
_____

16. **Miscellaneous**. This PSA, including its exhibits and schedules, is the *entire agreement* between the parties pertaining to the subject matter hereof and *supersedes* all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall be entitled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable. There are no ▓▓▓▓▓ ties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, ▓▓▓▓▓ writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as e▓▓▓▓ s if given by or to that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, em▓▓▓ her electronic means, and shall be effective upon delivery with proof of delivery retained. Buyer may assign this PSA to

Buyer's Initials: _____                                                                                        Seller's Initials: _____

 ©2020 International Yacht Brokers Association. All rights reserved. Rev. 3.10.20

any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, neither party may assign this PSA without the other party's consent, which consent shall not be unreasonably withheld. No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given. Paragraph headings are informational and included only for convenience.

**17. Governing Law and Dispute Resolution**. Check (a), (b) or (c). If none checked, (a) will apply. Any dispute involving this Agreement will be resolved: **(a)** ☐ in the courts located in the State of _____ (Florida, if left blank), **(b)** ☐ by binding arbitration in the State of _____ (Florida, if left blank), **(c)** ☐ by binding arbitration in London, England. *If (a) or (b) is selected*: (i) this Agreement will be governed by and interpreted according to the law of the State of _____ (Florida, if left blank) regardless of its principles of conflicts-of laws and (ii) the proceedings will be conducted in the county of the main office of the Selling Broker, or if the Selling Broker has no office in Florida, in _____ (Fort Lauderdale, Florida, if no other city indicated). *If (b) is selected*, the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in force when the arbitration is commenced will apply unless the following rules apply: _____. If the amount in controvery including counterclaims is not more than USD $1,000,000.00, the parties shall jointly select a single arbitrator from the list of arbitrators maintained by the International Yacht Brokers Association ("IYBA") within twenty (20) days of the giving of notice of arbitration. If the parties are unable to agree upon the arbitrator, the IYBA shall have the power to make the appointment of the single arbitrator. If the amount in controversy is greater, the parties shall each appoint one arbitrator and the two arbitrators will jointly appoint a third arbitrator. If they cannot agree on the third arbitrator within 14 days either party may request that the IYBA appoint the third arbitrator from the list of arbitrators maintained by the IYBA. The decision of the single arbitrator, or if a three abitrator panel, any two of them will be final and binding on the parties. An action may be brought in any court of competent jurisdiction to enforce any arbitral award or compel arbitration. If (c) is selected: (i) this Agreement will be governed by and interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii) the parties irrevocably agree that any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) the arbitration shall be conducted in accordance with the rules of London Maritime Arbitrators Association ("LMAA") current when the arbitration is commenced, (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while if greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. Whatever option is selected the parties irrevocably submit to the exclusive jurisdiction of such court or arbitral forum, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the proceeding will be decided only in such court or arbitral forum and further, not to bring any claim relating to this Agreement in any other court or arbitral forum. The parties, having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this Agreement, whether against each other or any Broker.

**BUYER:** | **SELLER:**

Print: _____ | Print: _____
Title: _____ | Title: _____
Date: _____ | Date: _____

**SELLING BROKER  DEPOSIT CONFIRMATION (Subject to clearance of funds)**

Print: _____ | Amount: _____
Title: _____ | Date: _____

Buyer's Initials: _____

Seller's Initials: _____

©2020 International Yacht Brokers Association. All rights reserved.

Rev. 3.10.20

*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

**Addendum to Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, Between (i) Luc A. Despins, as the Chapter 11 Trustee for the Estate of Ho Wan Kwok and (ii)** ▅▅▅▅▅▅ **(the "Addendum")**

Capitalized terms used but not defined herein have the meanings set forth in the Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, with respect to the Lady May (the "PSA"). For the avoidance of doubt, any reference to the PSA (whether in this PSA or the Addendum) shall be to the PSA as modified by this Addendum.

1. Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2. The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "Chapter 11 Case"), is pending.

3. Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court. For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4. Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

5. The fourth and fifth sentences in Section 1 of the PSA are hereby modified as follows:

   "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this **PSA. There will be no Exclusions List.**Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. **For the avoidance of doubt, the Lady May II is not included as part of the sale of the Vessel pursuant to this PSA.**

6. The eighth sentence in Section 1 of the PSA is hereby modified as follows:

1

> **There shall be no** If there is a Trade Allowance **in connection with the sale of the Vessel pursuant to this PSA**, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum.

7. Section 2 of the PSA is hereby modified as follows:

> Within _____ business days (3 business days if left blank)) following Seller's signature of this PSA, **On [-----], 2023,** Buyer paidshall pay the Deposit to the **Seller's**Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held **in escrow** subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspection of the Vessel until the Deposit has cleared into the **Seller's**Selling Broker's escrow account.

8. Section 3 of the PSA is hereby modified as follows:

> Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected**; provided, however, that Buyer may only reject the Vessel if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality to and value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy. For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds.** If **the Buyer decides to have a survey conducted**inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable**, such that the survey is completed prior to the Accept/Reject Date**, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have **accepted**rejected the Vessel if it fails to give timely written notice of its **rejection**acceptance **in accordance with this PSA**. Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in

2

Paragraph 4) except to move the Vessel to the Delivery Location.  If Buyer rejects or is deemed to reject the Vessel **in accordance with this PSA and is not otherwise in breach of this PSA**, ~~after all expenses incurred on Buyer's behalf have been paid,~~ (i) the **Seller**~~Selling Broker~~ shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder.  The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

9.  The sixth sentence in Section 4 of the PSA is hereby modified as follows:

At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) **and the Deposit shall be released to Seller, subject to the deduction in the immediately following sentence**~~and/or to the Selling Broker for onward transfer to Seller by wire transfer~~.  Any funds Seller owes to ~~(i)~~ the Brokers for the commission, storage, insurance, repairs and/or other items **(which are subject to approval of the Bankruptcy Court)**~~or (ii) the holder of any other Encumbrance,~~ will be deducted from the ~~amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof~~**Deposit and paid to the Brokers prior to the release of the Deposit to Seller.  For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.**

10. The second sentence of Section 5 of the PSA is hereby modified as follows:

If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller~~, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability~~; provided, however, that in such instance **(a)** the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price **and (b) the Broker have no duties to the Buyer in connection with the sale of the Vessel**~~, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price~~.

11. The second sentence of Section 6 of the PSA is hereby modified as follows:

No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing)**, which proof may be the order entered by the**

3

**Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances)**, ~~(c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6,~~ and (**c**~~e~~) copies of any other documents necessary for transfer of good and marketable title to Buyer.

12. The second and third sentences of Section 7 of the PSA are hereby modified as follows:

If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then**, at the Seller's option,** ~~(a)~~ Seller **may**~~must~~ repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, **in which case (a**~~b~~) Buyer **shall**~~must~~ pay the Balance and take delivery of the Vessel as repaired~~,~~ and (**b**~~c~~) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance **or Seller does not exercise the option in the foregoing sentence**, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

13. Section 8 of the PSA is hereby modified as follows:

Notwithstanding anything herein to the contrary, if ~~the Deposit is not paid when due or~~ Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by ~~(or if the Deposit was not paid, Buyer shall pay a like amount to)~~ Seller ~~and the Brokers~~ as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA**, provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer**. ~~Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same~~

4

~~proportions as the commission would have been divided had a sale been consummated.~~ If the Closing is not consummated due to Seller's non-performance **(which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA)**, the Deposit, and any other money paid or deposited by Buyer~~,~~ pursuant to this PSA**,** will be returned to Buyer upon demand ~~or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy~~. **If Closing is not consummated due to Seller's non-performance**~~On Seller's default~~, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed**; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel in accordance with this PSA. Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.**

14. The first sentence of Section 9 of the PSA are hereby modified as follows:

   Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the **Trustee**~~Selling Broker~~ at Closing.

15. The following sentence is hereby added after the first sentence of Section 11 of the PSA:

   **Buyer represents and warrants that it has sufficient cash and/or financing to fund the Purchase Price at Closing. Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok.**

16. Section 14 of the PSA are hereby modified as follows:

   The parties acknowledge that (a) the **Seller**~~Selling Broker~~ will not be responsible for the Deposit until the funds have cleared into the **Seller's**~~Selling Broker's~~ account, (b) the **Seller**~~Selling Broker~~ shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that

5

party, (c) the **Seller**~~Selling Broker~~ **shall pay, in accordance with this PSA,**~~may retain~~ the commission due the Brokers prior to **the release**~~disbursement~~ of the Deposit ~~or Balance~~ to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment **of the Bankruptcy Court**, to have engaged in willful misconduct or acted with gross negligence.

17. The second and third sentences of Section 16 of the PSA are hereby modified as follows:

If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA**, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings**, unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**.

18. The ninth and tenth sentences of Section 16 of the PSA are hereby modified as follows:

~~Buyer may assign this PSA to any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise,~~ **N**either party may assign this PSA without the other party's consent~~, which consent shall not be unreasonably withheld~~.

19. In the signature block on page 4 of the PSA, the phrase "Selling Broker Deposit Confirmation (Subject to clearance of funds)" is hereby modified to read: "Seller Deposit Confirmation (Subject to clearance of funds)".

**Seller**

By: _____

Name: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok

Date: _____

6

**Buyer**

By: _____

Name: _____

Title: _____

Date: _____

**Exhibit 26**

CASE NO. _____22-50073_____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____26_____

DATE _____ IDEN.

DATE _June 27, 2023 admitted in full_ EVID.

BY R. Senteio
_____
Deputy Clerk

AO 386

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

--------------------------------------------------------x
                                      :
In re:                                :    Chapter 11
                                      :
HO WAN KWOK, *et al.*,[1]              :    Case No. 22-50073 (JAM)
                                      :
                Debtors.              :    (Jointly Administered)
                                      :
--------------------------------------------------------x

### DECLARATION OF DIRK JOHNSON IN SUPPORT OF TRUSTEE'S MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363, BANKRUPTCY RULES 2002, 6004(c), AND 9014, AND LOCAL RULES 6004-1 AND 6004-2, SEEKING ENTRY OF ORDER: (I) AUTHORIZING AND APPROVING SALE OF THE LADY MAY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT, AND (III) GRANTING RELATED RELIEF

I, Dirk Johnson, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as

follows:

1.    I am a Yacht Broker at Edmiston and Company Limited ("Edmiston"),

maintaining offices at (a) 2 Marina Plaza, Newport, Rhode Island, 02840, and (b) Burleigh

Manor, Peel Road, Douglas, Isle of Man, IM1 5EP.

2.    I am duly authorized to make this declaration (this "Declaration") on behalf of

Edmiston and submit this Declaration in support of the *Trustee's Motion, Pursuant to*

*Bankruptcy Code Sections 105 and 363, Bankruptcy Rules 2002, 6004(c), and 9014, and Local*

*Rules 6004-1 and 6004-2, Seeking Entry of Order (I) Authorizing and Approving Sale of the*

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

*Lady May Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing and Approving the Purchase and Sale Agreement, and (III) Granting Related Relief* (the "Motion")[2] in the chapter 11 case of Ho Wan Kwok (the "Debtor"), seeking an order approving and authorizing the sale of the Lady May to Herb Chambers Yachting, LLC (the "Buyer").

3.        I am a Yacht Broker based in Newport, Rhode Island, since 1991, and have been employed by Edmiston for 2.5 years. I have approximately 15 years of experience in the superyacht brokerage industry. Edmiston is a luxury superyacht broker specializing in the sale of yachts. Edmiston currently is the broker for numerous yachts in the United States and worldwide. In addition, in the past 24 months, approximately, Edmiston has sold more than 70 yachts over 30 meters in length more than double the industry average of deals per broker. Edmiston also holds the industry record for the sale of the highest number of Feadships (which is the builder of the Lady May).

4.        On April 18, 2023, Edmiston was retained by the Trustee to market and sell the Lady May, which retention was approved by order of the Court, dated April 27, 2023.[3] As set forth in the retention agreement, the agreed-upon list price for the Lady May is $26,500,000.

5.        Unless otherwise indicated below, I have personal knowledge of the matters set forth below, and if called to testify, I could and would testify competently thereto.

## Marketing of Lady May

6.        Since its retention, Edmiston has engaged in an extensive marketing campaign to sell the Lady May to the highest bidder. Consistent with best industry practices for marketing a luxury superyacht such as the Lady May, Edmiston has actively canvassed the yacht market for

---

[2]    Capitalized terms used but otherwise not defined herein shall have the meaning ascribed to them in the Motion.

[3]    Edmiston is also marketing the Lady May II, which is not included in the Sale.

potential buyers, both within its own network of potential buyers as well as through numerous

other yacht brokers in the industry, as well as advertised the Lady May both online and in print.

These marketing efforts were initially focused on residents outside of the United States and,

following the Lady May's transfer to the foreign trade zone in Rhode Island (the "FTZ"),

Edmiston expanded its efforts to also include U.S. residents.

7.   Among other things, as part of its marketing efforts:

a.   Edmiston created an electronic brochure of the Lady May, including
photographs and listing its specifications, which brochure was included
in industry-wide announcements to other yacht brokers as well as posted
on Edmiston's website and social media;

b.   Edmiston engaged in a direct client email marketing campaign,[4] which
featured the Lady May in its monthly mailer update (distributed to
approximately 10,000 clients and other potentially interested parties);

c.   Edmiston used extensive digital advertising to market the Lady May on
its website and social media accounts, including Instagram, Facebook,
LinkedIn and YouTube;[5]

d.   Shortly after the Lady May was moved into the FTZ in Newport, Rhode
Island, Edmiston issued further announcements regarding the Lady May
on its website and social media.

8.   In order to connect the Lady May with Edmiston's network of industry brokers,

Edmiston emailed single and multi-yacht mailers for new yacht listings, sales updates, location

updates, price reductions and yachting events.  In addition, the Lady May has been featured in

three business email distributions since Edmiston's retention, each of which was sent to

approximately 1,850 brokers in the yacht industry.  Furthermore, on May 3, 2023, the Lady May

was also listed on Yatco.com and Yachtworld.com, which are online business-to-business (B2B)

search facilities that centralize brokerage information for the yacht industry—similar to MLS

---

[4]   The monthly mailer included a photo of the Lady May alongside a detailed description and the listing price.

[5]   Edmiston.com ranks highly on search engines compared to its competition and is an effective tool in promoting
the Lady May, with monthly website traffic averaging 30,000 per month.

(multiple listing service) for real estate sales. In addition, the Lady May has been featured on the brokerage listing page of Boatinternational.com and Superyachttimes.com, as well as in two print publication in Boat International US.

9.     Edmiston is also the title sponsor of the London Heliport and used this platform to advertise the Lady May by featuring it in Edmiston's brand collateral (*i.e.*, Edmiston's branded marketing materials) that is deployed throughout the London Heliport. Similarly, the Lady May was featured in Edmiston's brand collateral deployed across private aviation terminals in the East Hamptons and Cabo St. Lucas. Edmiston has also teamed up with Europe's leading private jet airport, Farnborough, to provide a fully immersive experience for guests traveling through the airport and Edmiston utilized this platform to further advertise the Lady May.

10.     In addition to all of the foregoing, I reached out, and received calls from, numerous other yacht brokers as well as prospective buyers about the Lady May.

**Bidding Process**

11.     From the outset of the marketing process, there has been significant interest in the Lady May, but not at prices that the Trustee deemed acceptable. A handful of potential buyers requested to be shown (and were shown) the Lady May, while several brokers visited the Lady May on behalf of prospective buyers. By May 20, 2023, five prospective buyers (the "Initial Bidders") had provided Edmiston with formal offers for the Lady May with proposed purchase prices ranging from $18 million to $20 million. In response to each of these offers, the Edmiston advised the Initial Bidders that the Trustee determined to counter at $23 million. In response to the Trustee's counteroffer, one of the Initial Bidders increased its bid to $20 million, while the other Initial Bidders did not increase their offer.

4

12. After receipt of these initial bids and the bidders' refusal to further respond to the Trustee's counteroffer, I advised the Trustee that (in light of the offers in hand) a prolonged marketing process could cause some of the bidders to lose interest, and, therefore, the Trustee should set a deadline of Tuesday, May 30, 2023, at 5:00 p.m. (ET), for interested parties to submit their best and final bids.

13. On May 24, 2023, Edmiston emailed each of the five Initial Bidders as well as other parties that had expressed an interest in the Lady May to advise them that the deadline to submit their best and final bids was set for **Tuesday, May 30, 2023, at 5:00 p.m. (ET)**. This deadline was designed to maintain maximum momentum with the Initial Bidders and other interested parties. In that email, interested bidders were also advised that (a) due to the fact that the Trustee had received offers for the Lady May from several potential buyers, Edmiston was inviting all interested parties to present their best and final offer prior to the May 30, 2023 bid deadline and (b) any such bid would have to comply with the following requirements:

- Only bids with a purchase price in excess of $20,000,000 would be considered by the Trustee;

- Offers must be based on the Trustee's form of purchase agreement (which was provided to interested parties on Thursday, May 25);

- To the extent the prospective buyer intended to modify the form of purchase agreement, mark-up of the agreement should be included as part of the bid (and advising the parties that such modifications, if any, would be evaluated in determining the highest and/or best offer);

- The winning bid must provide for a 20% deposit of the purchase price, which deposit must be received within 48 hours after such bid has been selected as the winning bid;

- The 20% deposit would be forfeited if the winning bidder fails to close on purchase of Lady May in accordance with terms of purchase agreement (subject to the right to reject the Lady May if the survey reveals a defect affecting the operational integrity of the Lady May or her machinery or her systems or renders the Lady May unseaworthy);

5

- The purchase agreement must be executed by June 9, 2023;

- The Lady May must be accepted or rejected (based on results of survey) by June 28, 2023;

- In the event the winning bidder does not close on the purchase at the price set forth in the purchase agreement, the Trustee may, at his option, purchase the survey from the buyer, at cost;

- Closing would take place as soon as practical on or before July 20, 2023;

- All bids would be subject to bankruptcy court review and approval; and

- All bids had to be sent directly to the Trustee.

14.     In addition, also on May 24, 2023, Edmiston circulated emails to more than 1,857 other yacht brokers advising them of the deadline to submit best and final bids and that such bids would be subject to certain conditions, including a minimum bid of $20 million.[6] As with the email to the Initial Bidders, the email distribution advised the brokers that the Trustee was setting May 30, 2023 deadline to submit best and final bids due to multiple offers received to date. Furthermore, on May 27, 2023, Edmiston updated the Yatco.com listing for the Lady May to advise interested parties of the bid deadline and the minimum bid requirement

15.     As of 5:00 p.m. (ET) on May 30, 2023, five formal bids (in addition to the initial bids) were received from prospective buyers (the "Second Round Bidders"), including from both U.S. residents and non-U.S. residents. Three bids exceeded the $20 million minimum, while two bids were below the minimum. During this second round, two bidders that were not Initial Bidders submitted bids. But not all bidders that participated in the initial round submitted a further bid by the May 30, 2023 deadline. For example, one of the Initial Bidders who had

---

[6]   This email distribution did not list all of the conditions, but advised the recipients to contact me for further details, including offer conditions.

previously offered $20 million did not submit any bid in connection with the May 20, 2023 bidding deadline because the bidder did not want to participate in a competitive bidding process.

16.     Following receipt of these bids, the Trustee engaged in further discussions with each of the three bidders that had satisfied the minimum bid requirement.  Because the bidder that submitted the highest bid (which was substantially below $24 million) had modified the form of purchase agreement to add provisions that were not acceptable to the Trustee (including giving the buyer an absolute right to terminate the purchase process based on the results of a sea trial that would not take place for more than 10 days), the Trustee requested that the bidder remove these modification and/or further increase its bid.  Concurrently, the Trustee, through Edmiston, also reached out to the second and third highest bidders to explore whether they would be willing to increase their bid.  Ultimately, one of these two bidders increased its proposed purchase price to $24 million, thereby becoming the highest bidder.  Because that increased bid (which was the one submitted by the Buyer) did not include any modifications to the Trustee's form of purchase agreement (other than to move up the closing date to a date on or before June 30, 2023), the Trustee selected the Buyer as the winning bidder.  To be clear, neither of the other two bidders further increased their bids, even though they were invited to do so.

17.     I believe that the Buyer's bid (a) is the highest and best bid (including because the Buyer does not require any modifications to the form of purchase agreement proposed by the Trustee (other than that closing of the Sale occurs by June 30, 2023)), (b) satisfies the Trustee's bid conditions, and (c) is the product of an arms' length bidding and negotiation process.  In addition, based on my interactions with the Buyer, I believe that the Buyer has proceeded in good faith during the entirety of the bidding and negotiation process.

18.     Finally, I believe that the purchase price offered by the Buyer pursuant to the PSA is the best available price for the Lady May and that implementing formal bidding procedures and running a public auction process would not increase the purchase price, but rather would risk losing the Buyer, while undermining the momentum of the marketing and sale process to date. Accordingly, I believe that proceeding with the Sale under the PSA is in the best interest of the Debtor's estate.

## **Auction Process Would Not Have Been Beneficial**

19.     I believe that there would have been no incremental benefit to first seeking approval of formal bidding procedures and running a public auction, in light of the nature of the property to be sold (*i.e.*, a luxury superyacht) and the small pool of potential buyers (*i.e.*, high net-worth individuals).  To the contrary, conducting an auction would likely have discouraged potential buyers from bidding and/or making their best offer.  Potential buyers would likely not have participated in a process that would have exposed them to the risk of overpaying (if selected as the winning bidder in an auction), and, to the extent they would have participated in such a process, they would likely have discounted their bids to reflect that risk.  In fact, two of the Initial Bidders withdrew from the process because of their dissatisfaction with the competitive process the Trustee was considering.

20.     Moreover, because an auction process would have required more time (including to seek Court approval of the auction procedures), many of the Initial Bidders would not have remained in the process, and otherwise motivated buyers would likely have been discouraged from participating out of a concern that they would have wasted a lot of time if they are ultimately not selected as the successful bidder.  This is especially so given that other luxury superyachts can be purchased through brokers without having to go through an auction process.

8

Furthermore, given the fairly small pool of potential buyers, it is unlikely that an auction process would have attracted any additional interest beyond the parties that Edmiston (through its extensive network of clients and connections to other brokers) was able to attract.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct.

Dated: June 2, 2023

Dirk Johnson
Broker
Edmiston and Company Limited

**Exhibit 27**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok

VS. _____

Trustee's EXHIBIT _____ 27 _____

DATE _____ IDEN.

DATE __June 27, 2023 admitted in full__ EVID.

BY ___R. Senteio_____

Deputy Clerk

AO 386



**PURCHASE AND SALE AGREEMENT
FOR BROKERAGE VESSEL**

| | |
|---|---|
| **BUYER:** Herb Chambers Yachting, LLC or assigns | **SELLER:** Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok |
| Address: 259 McGrath Hwy | Address: c/o Paul Hastings LLP, 200 Park Avenue |
| Somerville, MA 02143 | New York, New York 10166 |
| Nationality: | Nationality: U.S. |
| **VESSEL NAME:** Lady May | **MANUFACTURER:** Feadship |
| Model: Semi displacement motor yacht | Length Overall: 44.25m |
| Year: 2014 | ☐ Doc or ☑ Reg No.: 745195 — Flag: Cayman Is. |
| Hull No.: 688 | Engine Description: Diesel (Caterpillar) |
| Selling Broker: Bruce Brakenhoff/Edmiston | Listing Broker: Edmiston & Company Limited |
| **IMPORTANT DATES** | **PURCHASE PRICE** |
| Offer Date: May 30, 2023 | Purchase Price: $24,000,000 |
| Offer Expiration Date: June 9, 2023 | Less Deposit: [20% of Purchase Price] $4,800,000 |
| Accept/Reject Date: June 20, 2023 | Less Trade Allowance (see Addendum): Not applicable |
| Closing Date: on or before June 30, 2023 | Balance: $19,200,000 |

| |
|---|
| Delivery Location: International waters, off the coast of Rhode Island |
| *NOTE: If Vessel is to be moved to the Delivery Location, such location must be specified with precision. The mere listing of a port or city is insufficient.* |

| |
|---|
| ADDITIONAL REGISTERED VESSELS INCLUDED ☑ Yes ☐ No |

1. **Agreement.** Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which is has been signed by both parties. "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. Listing Broker and Selling Broker are referred to herein as the "Brokers." If there is a Trade Allowance, the conditions of the trade-in will be governed by the attached Trade-in Vessel Addendum. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2. **Deposit.** Within _____ business days (3 business days if left blank) following Seller's signature of this PSA, Buyer shall pay the Deposit to the Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Selling Broker's escrow account.

3. **Survey Option; Acceptance of Vessel; Conditions of Survey.** Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected. If inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) *Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable,* (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay *all* costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. *Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have rejected the Vessel if it fails to give timely written notice of its acceptance.* Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer

Buyer's Initials: _____    Seller's Initials: _____

*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

rejects or is deemed to reject the Vessel, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4. **Closing.** The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable title to Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and/or to the Selling Broker for onward transfer to Seller by wire transfer. Any funds Seller owes to (i) the Brokers for the commission, storage, insurance, repairs and/or other items or (ii) the holder of any other Encumbrance, will be deducted from the amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.

5. **Brokers.** The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability; provided, however, that in such instance the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6. **Seller's Representations; Requirements for Closing.** Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing), (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6, and (e) copies of any other documents necessary for transfer of good and marketable title to Buyer. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents,(iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7. **Risk of Loss; Force Majeure.** Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a) Seller must repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, (b) Buyer must pay the Balance and take delivery of the Vessel as repaired, and (c) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable control ("*Force Majeure* Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, or other natural disasters. If a *Force Majeure* Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the *Force Majeure* Event delays the Closing Date for a period of at more than 30 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8. **Default.** *Notwithstanding anything herein to the contrary, if the Deposit is not paid when due or Closing is not consummated due to Buyer's non-performance,* including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the

Buyer's Initials: _____                                      Seller's Initials: _____

   ©2020 International Yacht Brokers Association. All rights reserved.   Rev. 9.10.20

purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA. Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.

9. **Sales and Use Taxes.** Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling Broker at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10. **REPRESENTATIONS AND WARRANTIES.** SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ON THE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS *"AS IS"* CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, *ALL OF WHICH ARE DISCLAIMED.*

11. **Financing.** Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12. **Counterparts.** The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13. **Binding Effect; Contemporaneous Contracts; Future Sales.** This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14. **Escrowed Funds.** The parties acknowledge that (a) the Selling Broker will not be responsible for the Deposit until the funds have cleared into the Selling Broker's account, (b) the Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Selling Broker may retain the commission due the Brokers prior to disbursement of the Deposit or Balance to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment, to have engaged in willful misconduct or acted with gross negligence.

15. **Additional Terms.** See Addendum.
_____

16. **Miscellaneous.** This PSA, including its exhibits and schedules, is the *entire agreement* between the parties pertaining to the subject matter hereof and *supersedes* all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall be entitled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable. There are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, except in writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, email, or other electronic means, and shall be effective upon delivery with proof of delivery retained. Buyer may assign this PSA to

Buyer's Initials: _____    Seller's Initials: _____

    ©2020 International Yacht Brokers Association. All rights reserved.    Rev. 3.10.20

any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, neither party may assign this PSA without the other party's consent, which consent shall not be unreasonably withheld. No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given. Paragraph headings are informational and included only for convenience.

17. **Governing Law and Dispute Resolution.** Check (a), (b) or (c). If none checked, (a) will apply. Any dispute involving this Agreement will be resolved: (a) ☐ in the courts located in the State of _____ (Florida, if left blank), (b) ☐ by binding arbitration in the State of _____ (Florida, if left blank), (c) ☐ by binding arbitration in London, England. *If (a) or (b) is selected:* (i) this Agreement will be governed by and interpreted according to the law of the State of _____ (Florida, if left blank) regardless of its principles of conflicts-of-laws and (ii) the proceedings will be conducted in the county of the main office of the Selling Broker, or if the Selling Broker has no office in Florida, in _____ (Fort Lauderdale, Florida, if no other city indicated). *If (b) is selected,* the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in force when the arbitration is commenced will apply unless the following rules apply: _____. If the amount in controversy including counterclaims is not more than USD $1,000,000.00, the parties shall jointly select a single arbitrator from the list of arbitrators maintained by the International Yacht Brokers Association ("IYBA") within twenty (20) days of the giving of notice of arbitration. If the parties are unable to agree upon the arbitrator, the IYBA shall have the power to make the appointment of the single arbitrator. If the amount in controversy is greater, the parties shall each appoint one arbitrator and the two arbitrators will jointly appoint a third arbitrator. If they cannot agree on the third arbitrator within 14 days, either party may request that the IYBA appoint the third arbitrator from the list of arbitrators maintained by the IYBA. The decision of the single arbitrator, or if a three arbitrator panel, any two of them will be final and binding on the parties. An action may be brought in any court of competent jurisdiction to enforce any arbitral award or compel arbitration. If (c) is selected: (i) this Agreement will be governed by and interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii) the parties irrevocably agree that any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) the arbitration shall be conducted in accordance with the rules of London Maritime Arbitrators Association ("LMAA") current when the arbitration is commenced, (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while if greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. Whatever option is selected, the parties irrevocably submit to the exclusive jurisdiction of such court or arbitral forum, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the proceeding will be decided only in such court or arbitral forum and, further, not to bring any claim relating to this Agreement in any other court or arbitral forum. The parties, having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this Agreement, whether against each other or any Broker.

**BUYER:** _(signature)_

Print: Herbert Chambers
Title: Member
Date: May 30, 2023

**SELLER:** _(signature)_

Print: Luc Despins as trustee
Title: _____
Date: May 30, 2023

**SELLING BROKER DEPOSIT CONFIRMATION (Subject to clearance of funds)**

Print: Luc A. Despins, as the
Title: chapter 11 trustee for
the estate of Ho Wan Kwok

Amount: $4,800,000
Date: May 31, 2023

_(signature)_ Luc Despins,
as Trustee

Buyer's Initials: _(initials)_

Seller's Initials: _(initials)_

©2020 International Yacht Brokers Association. All rights reserved.
Rev. 3.10.20

This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.

**Addendum to Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, Between (i) Luc A. Despins, as the Chapter 11 Trustee for the Estate of Ho Wan Kwok and (ii) Herb Chambers Yachting, LLC or assignee (the "Addendum")**

Capitalized terms used but not defined herein have the meanings set forth in the Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, with respect to the Lady May (the "PSA"). For the avoidance of doubt, any reference to the PSA (whether in this PSA or the Addendum) shall be to the PSA as modified by this Addendum.

1. Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2. The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "Chapter 11 Case"), is pending.

3. Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court. For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4. Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

5. The fourth and fifth sentences in Section 1 of the PSA are hereby modified as follows:

   > "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this **PSA. There will be no Exclusions List.** ~~Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel.~~ **For the avoidance of doubt, the Lady May II is not included as part of the sale of the Vessel pursuant to this PSA.**

6. The eighth sentence in Section 1 of the PSA is hereby modified as follows:

1

~~There shall be no~~ **If there is a** Trade Allowance **in connection with the sale of the Vessel pursuant to this PSA,** ~~the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum.~~

7. Section 2 of the PSA is hereby modified as follows:

~~Within~~ ~~business days (3 business days if left blank)) following Seller's signature of this PSA,~~ **On [May 31, 2023,** Buyer ~~paid~~**shall pay** the Deposit to the **Seller's**~~Selling Broker's~~ account, as acknowledged below, as a deposit toward the Purchase Price to be held **in escrow** subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspection of the Vessel until the Deposit has cleared into the **Seller's**~~Selling Broker's~~ escrow account.

8. Section 3 of the PSA is hereby modified as follows:

Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction~~, in Buyer's sole discretion,~~ with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected**; provided, however, that Buyer may only reject the Vessel if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality to and value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy. For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds.** If **the Buyer decides to have a survey conducted**~~inspected~~: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable**, such that the survey is completed prior to the Accept/Reject Date,** (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have **accepted**~~rejected~~ the Vessel if it fails to give timely written notice of its **rejection**~~acceptance~~ **in accordance with this PSA.** Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in

2





Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer rejects or is deemed to reject the Vessel **in accordance with this PSA and is not otherwise in breach of this PSA**, ~~after all expenses incurred on Buyer's behalf have been paid~~, (i) the Seller~~Selling Broker~~ shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

9.  The sixth sentence in Section 4 of the PSA is hereby modified as follows:

    At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) **and the Deposit shall be released to Seller, subject to the deduction in the immediately following sentence**~~and/or to the Selling Broker for onward transfer to Seller by wire transfer~~. Any funds Seller owes to ~~(i)~~ the Brokers for the commission, storage, insurance, repairs and/or other items **(which are subject to approval of the Bankruptcy Court)**~~or (ii) the holder of any other Encumbrance,~~ will be deducted from the ~~amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof~~**Deposit and paid to the Brokers prior to the release of the Deposit to Seller. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.**

10. The second sentence of Section 5 of the PSA is hereby modified as follows:

    If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller~~, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability~~; provided, however, that in such instance **(a)** the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price **and (b) the Broker have no duties to the Buyer in connection with the sale of the Vessel**~~or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price~~.

11. The second sentence of Section 6 of the PSA is hereby modified as follows:

    No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing)**, which proof may be the order entered by the**

3



**Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances),** ~~(c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6,~~ and (~~c~~c) copies of any other documents necessary for transfer of good and marketable title to Buyer.

12. The second and third sentences of Section 7 of the PSA are hereby modified as follows:

   If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then**, at the Seller's option,** (~~a~~) Seller **may**~~must~~ repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, **in which case (**a**b) Buyer shall**~~must~~ pay the Balance and take delivery of the Vessel as repaired~~,~~ and (~~b~~c) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance **or Seller does not exercise the option in the foregoing sentence**, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

13. Section 8 of the PSA is hereby modified as follows:

   Notwithstanding anything herein to the contrary, if ~~the Deposit is not paid when due or~~ Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by ~~(or if the Deposit was not paid, Buyer shall pay a like amount to)~~ Seller ~~and the Brokers~~ as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA**, provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer**. ~~Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same~~

4





~~proportions as the commission would have been divided had a sale been consummated.~~ If the Closing is not consummated due to Seller's non-performance **(which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA)**, the Deposit, and any other money paid or deposited by Buyer~~,~~ pursuant to this PSA**,** will be returned to Buyer upon demand ~~or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy.~~ **If Closing is not consummated due to Seller's non-performance** ~~On Seller's default~~, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed**; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel in accordance with this PSA. Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.**

14. The first sentence of Section 9 of the PSA are hereby modified as follows:

Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the **Trustee** ~~Selling Broker~~ at Closing.

15. The following sentence is hereby added after the first sentence of Section 11 of the PSA:

**Buyer represents and warrants that it has sufficient cash and/or financing to fund the Purchase Price at Closing. Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok.**

16. Section 14 of the PSA are hereby modified as follows:

The parties acknowledge that (a) the **Seller** ~~Selling Broker~~ will not be responsible for the Deposit until the funds have cleared into the **Seller's** ~~Selling Broker's~~ account, (b) the **Seller** ~~Selling Broker~~ shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that

5

party, (c) the ~~Seller~~Selling Broker **shall pay, in accordance with this PSA,**~~may retain~~ the commission due the Brokers prior to **the release**~~disbursement~~ of the Deposit ~~or Balance~~ to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment **of the Bankruptcy Court,** to have engaged in willful misconduct or acted with gross negligence.

17. The second and third sentences of Section 16 of the PSA are hereby modified as follows:

If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA**, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings**, unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**.

18. The ninth and tenth sentences of Section 16 of the PSA are hereby modified as follows:

~~Buyer may assign this PSA to any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, n~~Neither party may assign this PSA without the other party's consent~~, which consent shall not be unreasonably withheld~~.

19. In the signature block on page 4 of the PSA, the phrase "Selling Broker Deposit Confirmation (Subject to clearance of funds)" is hereby modified to read: "Seller Deposit Confirmation (Subject to clearance of funds)".

Seller

By: _____

Name: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok

Date: 5/30/2023

6

Buyer

By: _____

Name: Herb Chambers Yachting, LLC or
assignee

Title: Member

Date: 5/38 /2023

7

**Exhibit 28**

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

Trustee's EXHIBIT _____ 28 _____

DATE _____ IDEN.

DATE __ June 27, 2023 admitted in full __ EVID.

BY ___ R. Senteio _____
                    Deputy Clerk

AO 386

**Second Addendum to Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, Between (i) Luc A. Despins, as the Chapter 11 Trustee for the Estate of Ho Wan Kwok and (ii) Herb Chambers Yachting, LLC (the "Second Addendum")**

Capitalized terms used but not defined herein have the meanings set forth in the Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, with respect to the Lady May (together with the first addendum thereto, dated as of the same date, the "PSA").

1. The PSA is hereby modified by replacing the amount of the Purchase Price, *i.e.*, $24,000,000, with the amount of $23,150,000. For the avoidance of doubt, the balance of the Purchase Price (less the Deposit of $4,800,000) is $18,350,000.

2. The Buyer hereby accepts the Vessel in accordance with Section 3 of the PSA.

3. Except as set forth in this Second Addendum, the terms of the PSA (including as modified by the first addendum, dated as of May 30, 2023) shall remain unaltered.

Seller

By: _____

Name: Luc A. Despins, as chapter 11 trustee
for the estate of Ho Wan Kwok

Date: 6/19/2023

Buyer

By: _____

Name: Herb Chambers Yachting, LLC

Title: Member

Date: 6·19·2023