UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                        *   Case No. 22-50073 (JAM)
                             *
HO WAN KWOK and GENEVER      *   Bridgeport, Connecticut
 HOLDINGS CORPORATION,       *   June 29, 2023
                             *
          Debtor.            *
                             *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


#1831    INTERIM APPLICATION FOR COMPENSATION FOR PAUL
         HASTINGS LLP, TRUSTEE'S ATTORNEY FEE:$12,326,802.
         EXPENSES $348,813.54
#1851    INTERIM APPLICATION FOR COMPENSATION FOR NEUBERT,
         PEPE & MONTEITH, P.C., TRUSTEE'S ATTORNEY FEE:
         $561,718.50; EXPENSES $0
#1870    APPLICATION PURSUANT TO BANKRUPTCY CODE SECTIONS
         327(e), 328(a) and 3,(a), BANKRUPTCY RULES 2014
         and 2016 and LOCAL BANKRUPTCY RULES 2014-1 and
         2016-1, AUTHORIZING AND APPROVING RETENTION AND
         EMPLOYMENT OF SAXE DOERNBERGER & VITA, P.C. AS
         SPECIAL INSURANCE COVERAGE COUNSEL


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES:


Chapter 11 Trustee:            LUC A. DESPINS, ESQ.
                               Paul Hastings
                               200 Park Avenue
                               New York, NY  10166

For the Chapter 11 Trustee:    G. ALEXANDER BONGARTZ, ESQ.
                               Paul Hastings LLP
                               200 Park Avenue
                               New York, NY  10166

                               PATRICK R. LINSEY, ESQ.
                               Neubert Pepe & Monteith, PC
                               195 Church Street
                               New Haven, CT  06510

For the U.S. Trustee:          HOLLEY L. CLAIBORN, ESQ.
                               Office of the U.S. Trustee
                               150 Court Street
                               New Haven, CT  06510

For the Creditors Committee:   IRVE J. GOLDMAN, ESQ.
                               Pullman & Comley
                               850 Main Street
                               Bridgeport, CT  06601
```

1      (Proceedings commenced at 10:05 a.m.)

2           THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3      Kwok and Genever Holdings, LLC.

4           THE COURT:  Good morning.  If we could have

5      appearance for the record starting with the Chapter 11

6      Trustee please.

7           MR. DESPINS:  Good morning, Your Honor.  Luc

8      Despins, Chapter 11 Trustee.

9           THE COURT:  Good morning.

10           MR. BONGARTZ:  Good morning, Your Honor.  Alex

11      Bongartz, of Paul Hastings, for the Chapter 11 Trustee.

12           THE COURT:  Good morning.

13           MR. LINSEY:  Good morning, Your Honor.  Patrick

14      Linsey of Neubert Pepe & Monteith, Connecticut counsel for

15      the Trustee.

16           THE COURT:  Good morning.

17           MS. CLAIBORN:  Good morning.  Holley Claiborn for

18      the U.S. Trustee.

19           THE COURT:  Good morning.

20           MR. GOLDMAN:  Good morning, Your Honor.  Irve

21      Goldman, Pullman & Comley, for the Creditors Committee.

22           THE COURT:  Good morning.

23           All right.  So there are three matters on the

24      calendar this morning, two are fee applications and one is

25      an application to employ counsel.

1          How would you like to proceed, Trustee Despins?

2          MR. DESPINS:  I can start with the application to

3    retain the counsel, if that's okay.

4          THE COURT:  Go right ahead.  Yes.  Thank you.

5          MR. DESPINS:  Thank you, Your Honor.  And good

6    morning again.  Luc Despins, Chapter 11 Trustee.

7          And this is the application to retain the firm of

8    Saxe Doernberger & Vita.  They're based in Connecticut.  And

9    the fee application is at docket 1870.

10         And they are -- they were retained to handle

11   insurance coverage disputes relating to AIG, as Your Honor

12   is familiar because you've interacted with them already.

13         And we filed the application.  And we received no

14   objections.  And, therefore, subject to any changes you may

15   have to the order we would ask the Court to enter the order.

16         THE COURT:  The only question I have with regard

17   to the engagement of this counsel is, and I apologize, I

18   don't have it in front of me so I don't recall, is are they

19   being paid on an hourly basis?

20         MR. DESPINS:  Yes.

21         THE COURT:  Okay.

22         MR. DESPINS:  Yes, they are, Your Honor.

23         THE COURT:  All right.  And they're -- and they'll

24   be submitting fee applications?

25         MR. DESPINS:  Correct, Your Honor.

1      THE COURT:  Okay.  The only reason I asked is

2  sometimes I miss if there's some other form of compensation

3  requested under 328 at the beginning --

4      MR. DESPINS:  Yeah.

5      THE COURT:  -- of a -- of a retention of

6  professional, but I didn't think that was true in this case.

7  But I didn't recall.

8      MR. DESPINS:  It's hourly rates, Your Honor.

9      THE COURT:  Okay.  Thank you.

10     I don't -- I do not have any questions.

11     I understand why you would like to retain special

12  counsel and the documents that I've seen certainly support

13  the application.

14     I'm looking at the proposed order.  And the only

15  reason I asked the question was because of the reference to

16  328.  But it's 328(a) which is the Trustee's ability to

17  retain counsel.  So I don't have a problem with it.

18     But does anyone else wish to be heard on the

19  application to employ special insurance counsel?

20     MS. CLAIBORN:  Just briefly, Your Honor.

21     The U.S. Trustee filed a statement of no objection

22  to the application.  That's at ECF 1941.

23     THE COURT:  Okay.  Thank you.

24     MS. CLAIBORN:  And just to be clear the reference

25  to 328 in the application in no way interferes with the

1    ability of the Court or the U.S. Trustee or creditors to

2    opine on the reasonableness of the fees when they're sought.

3            THE COURT:  Yeah.  Often, and I saw that when I

4    looked back at the retention of Paul Hastings and Neubert

5    and Pepe as well, often 328 isn't mentioned.  It's just 327.

6            So I just -- I like to make sure when 328 is

7    mentioned that no one is, and no one is in this case, but

8    insisting that there's some kind of compensation that's set

9    from the beginning.

10           Because as you all know there's a lot of case law

11   that says, you know, you can't touch that once that's done

12   or it's very limited ability.  So that's fine.

13           The only thing that I don't see, and maybe I

14   missed it, so let's just -- let me -- oh, it is there --

15   it's there, I just -- effective May 11.  That's what I'm

16   asking.  What was the date that they retained as of and it's

17   May 11th.  I see it now in paragraph 2 of the ordered

18   paragraphs.

19           So does anyone else wish to be heard?

20           MR. GOLDMAN:  Just the committee has no objection,

21   Your Honor.

22           THE COURT:  Okay.  Thank you.

23           As I stated already, I've reviewed the

24   application.  I understand why the Trustee is seeking to

25   retain special counsel.  Certainly understand under the

1    specific facts and circumstances of the cases in the

2    adversary proceeding involving the insurance the need for

3    special counsel to deal with or help the Trustee deal with

4    the insurance issues.

5           No one has filed any written objection to the

6    application to employ.  There is no one participating in

7    this hearing today that is objecting to the application to

8    employ.  The United States Trustee's Office has filed a

9    statement of no objection with regard to the application to

10   employ, which is ECF No. 1941.

11          For all those reasons the application is granted

12   and the proposed that was submitted with the application can

13   enter.

14          MR. DESPINS:  Thank you, Your Honor.

15          I would just point out that they are not only

16   insurance coverage counsel, but also local Connecticut

17   counsel --

18          THE COURT:  Sure.

19          MR. DESPINS:  -- because Mr. Linsey's firm --

20   actually, we can say that it's Mr. Linsey's firm because

21   he's now a partner at his firm -- that has a conflict and

22   that was my way of mentioning that he made partner.

23          THE COURT:  That he did or did not?

24          MR. DESPINS:  He did.  He did.  Just did.

25          THE COURT:  Oh, well, congratulations, Mr. Linsey.

1          MR. LINSEY:  Thank you, Your Honor.

2          MR. DESPINS:  So they're also local counsel so

3     that, you know, that covers that.

4          Thank you, Your Honor.

5          THE COURT:  Okay.  Thank you.

6          MR. DESPINS:  So the next matter I would move on

7     to would be the interim application for -- to retain -- to

8     pay Paul Hastings.

9          And, Your Honor, so that I'm not going to take a

10    lot of time on this, but I would -- there are two aspects I

11    want to cover.

12         One is I want to describe and reflect the

13    settlements that were agreed to with the U.S. Trustee and

14    the committee.

15         And then I'll have very short, very short

16    editorially comments about some aspects of the fees here.

17         But first, on the settlements, as you can imagine,

18    in the background there are a lot of discussions that were

19    taking place with both the U.S. Trustee and the committee.

20    One of the issues that was being discussed was the issue of

21    holdbacks.

22         And our initial position was that there should be

23    no holdbacks during the case because there's a contingent

24    fee deal and we haven't gotten paid.  And on top of that

25    there was a built-in holdback because this application only

1    covers through February.  So there's March, April, May,

2    June, plenty of money to cover a holdback.

3            But the counter from their point was, which was a

4    good one, which is, well, what stops you from filing an

5    application on Friday that brings all that up and there will

6    be no holdbacks at all?

7            And so we agreed as part of this back and forth

8    that any future application would be subject to a 20 percent

9    holdback provided that we -- that we're getting paid -- and

10   this applies to all professionals in the case -- on a more

11   regular basis which we defined at no more than 60 days.

12           So, for example, we're not going to file an

13   application tomorrow, but if we did, and it is heard and

14   paid, subject to Your Honor's decision to allow or not

15   allow, within 60 days, then there would be 20 percent held

16   back for the rest of the case for that application.

17           And the concept there is if now we're getting --

18   we have money, we're getting into a more regular mode where

19   -- where fee applications can be heard and can be dealt

20   with.

21           And so that was the agreement that was reached,

22   which is that there will be a 20 percent holdback going

23   forward for all future fee applications provided that we are

24   operating in this normal mode which is defined as, you know,

25   no more than 60 days or so.

1      So that's -- so that's the first part on

2   holdbacks.  I wanted to mention that discussion with the

3   U.S. Trustee and with the committee on that.

4      The second part is the U.S. Trustee raised a

5   number of issues with some of the time entries.  And to give

6   you some examples, too many lawyers at a hearing or vague

7   entries.

8      And so to be candid with you counsel for the U.S.

9   Trustee was correct on some of the issues regarding too many

10  lawyers at a hearing, although frankly sometimes I was alone

11  at a hearing, but I guess that doesn't -- that doesn't

12  counter that argument, but she was right on that issue.

13     And on a vague entry we -- it's all subject to

14  disagreement.

15     We didn't agree with the bulk of her comments, but

16  at the end of the day we agreed to a $550,000 reduction,

17  Your Honor, which we think is substantial to address all

18  these issues.

19     And we've -- I would say we took on some comments

20  that the U.S. Trustee had in terms of making it easier for

21  the U.S. Trustee and for parties in interest and for the

22  Court to ascertain the value provided with respect to

23  adversary proceedings.

24     So from no on the next applications that are filed

25  will have every adversary proceeding billed separately so

1    that we can look at the adversary proceeding and say, wow,

2    you know, it cost us more than we recovered, which would not

3    be good, or hopefully it will be, no, we recovered more than

4    we spent.  But I think that it was a very good suggestion.

5         We're going to implement that going forward so all

6    future fee applications will have separate categories for

7    each adversary proceeding so that the Court can see that.

8         I would say on the reduction I don't think -- I

9    don't want this to be precedent setting in a sense that we

10   now know what issues were raised, we're not going to

11   hopefully repeat these issues, so that -- so that we won't

12   be in the same position, but clearly in order to get this

13   resolved with the U.S. Trustee we agreed to the $550,000

14   reduction.  And as I said we think it's a material

15   reduction.

16        So before I move on to what I call my short

17   editorial comments, maybe the committee or the U.S. Trustee

18   wants to address this aspect of -- or later -- it's up --

19        MR. GOLDMAN:  Well, I did want to mention it

20   wasn't my understanding that the future 20 percent holdbacks

21   would be subject to any shortening of the time for filing

22   fee applications under Section 331.

23        We have no objection to the Court doing that 60

24   days or even a shorter period, but it wasn't my

25   understanding that this agreement with the committee was

1   conditioned on the Court doing that.

2           THE COURT:  You can have a conversation.  Go

3   ahead.

4       (Pause)

5           MR. DESPINS:  We want the Court to reduce the time

6   to hear and decide fee applications to a 30-60 day period.

7           But counsel is right that I'm taking the risk that

8   the Court would refuse to do that and would only hear fee

9   applications on a four-month interval which is in the

10  statute.  I'm sorry.  He's correct.

11          THE COURT:  Okay.

12          MR. DESPINS:  And there's no relief pending before

13  the Court on that.

14          THE COURT:  Right.

15          MR. DESPINS:  We hope that Your Honor will do

16  that, but I'm taking a risk that the Court will refuse to do

17  that.  So that covers the committee.

18          MR. GOLDMAN:  Yes.

19          MS. CLAIBORN:  Your Honor, with respect to the

20  U.S. Trustee's points on the reductions requested, we did

21  reach a consensual number which is memorialized in the

22  statement that I filed on the docket at ECF 1949.

23          If the Court has any questions about that, I'm

24  happy to answer them.

25          THE COURT:  I'm not sure I have questions per se.

1          I think that I can understand the discussions that

2     have -- were had and Trustee Despins said about certain

3     entries being vague or having many -- too many lawyers at a

4     hearing or things like that.

5          I will say that I agree with Trustee Despins that

6     this is not some kind of precedent set in this case if and

7     when further fee applications are filed.  I think every fee

8     application has to be reviewed separately from any fee

9     application that's been filed previously.

10          I think that in connection with this case and what

11    I have observed in this case that the -- there has been --

12    this has been a heavily litigated case to put it mildly.

13          And I think that the Trustee has attempted to keep

14    costs and fees in a range that is reasonable under the very

15    specific and detailed circumstances of this -- these cases

16    and the numerous adversary proceedings.

17          And so I completely understand the discussions.  I

18    think the discussions are healthy.  I think they should

19    happen.  I've no issue with that.  But I don't think it

20    should be something that everyone expects on a going-forward

21    basis.

22          The Court, as you know, has an independent

23    obligation to review the fees as well.  Otherwise why am I

24    here, right?  I mean, there's really no point.

25          So there are -- I mean, I think anyone could go

1   through any fee application of any magnitude, whether it's a

2   thousand dollars or $12 million, and make a determination or

3   suggestion that time should be reduced.

4          But I don't -- I want to be clear that I don't --

5   I will not -- someone will not be successful in arguing

6   before me, well, that was done last time so you should do it

7   again.  That will not be a successful argument.

8          This is a very -- I mean, I don't have to tell

9   anybody in this room this is a very unusual case that has

10  been heavily, heavily litigated at every step.  I can't

11  think of -- I guess today maybe is the only day we haven't

12  had an objection which is fascinating in and of itself.

13         But, you know, every single time something has

14  been filed there's an objection, there's the discovery

15  disputes, often for whatever reason we all come ready to

16  think that there's going to be a controversy and then

17  there's some resolution, but the Trustee had to prepare for

18  that and be ready for that.

19         And so all I want to say is, again, of course you

20  should have these conversations.  They're very -- they can

21  be very productive and they should happen.

22         But I just want to be very clear that that does

23  not mean that I expect that every fee application that's

24  filed should have a voluntary reduction, number one.

25         Number two, even if it doesn't have a voluntary

1    reduction, the Court may reduce it.  The Court may look at

2    something and say, you know, I don't think that is

3    reasonable under the circumstances of the case.

4          I do think the suggestion of billing separately or

5    accounting separately for the time in the adversary

6    proceedings at this point is a good suggestion given where

7    things stand now and how they've developed.  But as we all

8    know things change in this case every day.  One minute we're

9    going down one road and the next minute we're going down

10   another.

11         And this is not a case that fits in my opinion

12   into the mold of where you could draft a litigation plan of

13   how you're going to handle this case.

14         And so for those reasons I just wanted to be clear

15   that this does not set any precedent in this case with

16   regard to an expectation that any professional must reduce

17   their fees, with the comment that doesn't mean they won't be

18   reduced.  Okay?

19         But there's no -- I'm not -- this case is -- you

20   know -- as you know, I've looked by the way at the fee

21   applications and the time entries that are, you know, what,

22   four or five inches thick and the work appears very

23   reasonable to me under the circumstances of this case.

24         Now, someone could say that's a lot of money, and

25   that's true, but the Trustee did -- from my perspective with

1    regard to this fee application and the time frame that is

2    covered by this fee application, the Trustee and Connecticut

3    counsel for the Trustee have not -- I see no evidence in the

4    fee application entries which I looked at --

5            Now, did I study every single entry, of course

6    not, I can't.

7            But I looked at the time entries.  I looked at

8    them.  I looked at the categories.  I looked at the

9    breakdown of the amounts by category.

10           But I don't -- I did not see an entry that

11   concerned me, that made me think why did they do that?  Or

12   that seems unnecessary.  Or I didn't see an entry that, you

13   know, which happens some times, where it was mistakenly put

14   in from another case.  I mean, that's happened before.  You

15   know, somebody makes a mistake.  You know, that happens.

16   It's not a -- nobody did it on purpose.

17           I didn't see anything that raised any concern from

18   the Court's perspective.  And I think that this is a case

19   that required the staffing that occurred up to this point.

20   Up to the point, you know.

21           What's going to happen from this point forward,

22   who knows, right?  Things we don't know.  That's the --

23   that's what happens in this case.  We don't know from day to

24   day how it's going to be.  So I just -- I just want to be

25   clear about that.  I think I have been.  I've probably said

1     it three times now.

2              But I just think that the dollar amount, while

3     high, appears to me to be reasonable under the very specific

4     circumstances of this case.

5              And the expenses as well.  I mean, you know, we

6     all know what it costs to do these things especially if

7     you're met every step of the way with opposition.

8              And I have no idea, but I would -- if the Court --

9     if it was known what was spent by counsel opposing all these

10    things, I think we'd find that would be a high number as

11    well.

12             So I have no problem with the agreement that

13    you've reached.  And I think I need a new order though,

14    don't I?

15             MS. CLAIBORN:  You do.

16             MR. DESPINS:  Yes.  And I believe Mr. Bongartz

17    sent a draft to the courtroom deputy this morning.

18             THE COURT:  Okay.  I haven't seen it yet.  But

19    that's not your -- I mean, you know, we've been working so

20    we probably just didn't know that it was there yet.

21             But I would assume that when I look at the

22    original proposed order the differences would say that

23    you've agreed to a reduction.

24             MR. DESPINS:  Yes.

25             THE COURT:  That is has the dollar amounts in it.

1    That you say that there was a hearing held today that -- I

2    don't know if you said it in the -- if you need to have said

3    it, but we can put in today's date.  If that's all we need

4    to put in, we can put it in.

5         MR. DESPINS:  But there were other changes, Your

6    Honor, I should point out to Your Honor.

7         They're not material but Mr. Kindseth asked that

8    we incorporate by reference the DIP order.  Remember about

9    disgorgement and all that?  And we've agreed to do that.

10   That's in the revised order that you have.

11        THE COURT:  I was going to say not the DIP order.

12        MR. DESPINS:  No, the sale.

13        THE COURT:  There is no DIP.  That was withdrawn.

14        MS. CLAIBORN:  The sale.

15        MR. DESPINS:  Okay.

16        THE COURT:  Yeah.

17        MR. DESPINS:  I'm talking about another case now.

18        THE COURT:  That's okay.  That's okay.

19        MR. DESPINS:  Yeah.  The sale order.

20        THE COURT:  So what's the reference that he wants

21   in there?

22        MR. DESPINS:  Remember that there was a -- the

23   provision that you correctly pointed out that Ms. Guo should

24   not be a party to -- it's that provision that says that if

25   they win in the Supreme Court that they own it --

1        THE COURT:  Oh, that the monies, they could get

2    monies back from the estate?

3        MR. DESPINS:  From the estate.  And if there's no

4    money in the estate, from the professionals that got the

5    money.  So that's us.

6        THE COURT:  Okay.  Okay.  I understand.

7        MR. DESPINS:  So we've added that.

8        We also added other requests of counsel for the

9    U.S. Trustee, some language that -- because Your Honor

10   ordered a number of parties to pay 78 or $73,000 in fees.

11   We haven't collected on that yet so there's a provision --

12       THE COURT:  In connection with the sanctions

13   orders?

14       MR. DESPINS:  Exactly.

15       THE COURT:  Yes.

16       MR. DESPINS:  That if we ever collect that we need

17   to give a credit in the next fee app, so we added that

18   language.

19       THE COURT:  Okay.

20       MR. DESPINS:  And I believe that's all that was

21   added.

22       THE COURT:  Okay.  That's fine.  That's fine.

23       And I'm looking at what was the original proposed

24   order and --

25       MR. DESPINS:  And we had put the local rule --

1          THE COURT:  Right.

2          MR. DESPINS:  -- provision --

3          THE COURT:  Right.

4          MR. DESPINS:  -- regarding disgorgement.

5          THE COURT:  Yeah.  And it does say -- and no

6     objection to the application having been filed, and that is

7     accurate.

8          You know what?  I might change -- it says and no

9     objection to the application having been filed by the Office

10    of the United States Trustee.  And in the absence of any

11    other objection to the application.  Well, that's right.  So

12    that's fine.

13         I just want to make it clear that no one's filed

14    an objection, which I think it is.  Okay.

15         So I -- you know, for the reasons that I've just

16    stated, and for what the Court's obligations are with regard

17    to a fee application, with regard Paul Hastings and the fees

18    and expenses incurred from the period of July 8th, 2022

19    through February 28th, 2023, I find that the fees and

20    expenses sought are reasonable and that they were necessary

21    under the circumstances of the case.

22         Now, we could argue that it's -- they were

23    unfortunately necessary, but they were necessary.  And it

24    wasn't through -- there's been no demonstration in the fee

25    application that I've seen that there were any tasks or time

1    incurred that were inappropriate under the -- under what was

2    the charge given to the Trustee to investigate the affairs

3    of the debtor in connection with the appointment of the

4    Chapter 11 Trustee.

5              And I appreciate the conversations between the

6    U.S. Trustee and the Trustee.

7              And I appreciate the statement filed by the

8    Trustee, United States Trustee, regarding that they had no

9    objection to the fee application in connection with an

10   agreement to reduce the fees and no one else having filed

11   any objection to the fees.

12             Does anybody else wish to be heard before I rule?

13             MR. GOLDMAN:  Your Honor, just briefly.

14             I didn't want the Court to think the committee was

15   just rolling over on this.  We did scrutinize the

16   application, came to pretty much the same conclusion Your

17   Honor came to after getting over the initial sticker shock

18   of the number.

19             But I think from our perspective on calmer

20   reflection it was more of a function of the hourly rates,

21   which were disclosed at the outset, so we really couldn't

22   take issue with that.

23             And recognizing as Your Honor has said the

24   difficult issues that were confronted in this case, the

25   progress that's been achieved thus far, which the committee

1    is pleased with, and given all of the litigation activity,

2    relatively expeditious time period in which things have

3    flowed in the case, and recognizing really the substantial

4    resources that Paul Hastings brought to bear on this case

5    which started out with no assets and now it's quite a

6    different story, so that's how we came out on it, Your

7    Honor.

8            THE COURT:  Thank you.

9            MR. GOLDMAN:  Thank you.

10           THE COURT:  Does anyone else wish to be heard?

11        (No response)

12           THE COURT:  All right.  I am looking at the

13    proposed order now that you did submit this morning.  The

14    courtroom deputy sent this to me.  And just give me a

15    moment, but it looks fine from what I've seen so far.  I'm

16    just not -- I just need to finish it.

17           Oh, you know what we could do with the order?

18    Just in the second sentence of the order we'd just say after

19    notice and a hearing held on June 29, 2023, okay?

20           THE COURTROOM DEPUTY:  Yeah.

21        (Pause)

22           THE COURT:  I'm looking at that additional

23    paragraph regarding the sanctions at the moment.

24           The only thing I might add to that, although I

25    don't remember if the order says this so I'm looking at both

1    of you, I can look, it won't take me long, but aren't they

2    jointly and severally liable on those?

3                 MR. DESPINS:  They are.

4                 MR. GOLDMAN:  Yes.

5                 MR. BONGARTZ:  They are.

6                 THE COURT:  Okay.  I don't know that it says that.

7    I wouldn't mind if it did.  It says -- I think we can just

8    say -- no, we can do it -- I mean, it can say are jointly

9    and severally obligated to pay.

10                MR. DESPINS:  Okay.

11                MS. CLAIBORN:  That's fine.

12                MR. DESPINS:  Your Honor, we'll do that change.

13                THE COURT:  Yeah.  We'll do that change.

14                I'd like -- you know, who knows if this is going

15   to be appealed, right?

16                So I'd like the district court to understand as

17   clearly as possible what's happened so that they don't have

18   to do the work if there's an appeal.  Okay?

19                So I'm looking -- I'm turning to the courtroom

20   deputy, do you see where I am in paragraph 4?

21                THE COURTROOM DEPUTY:  Yes.  After the parentheses

22   of HK?

23                THE COURT:  Right.  So it will say are jointly and

24   severally obligated.  Okay?  You can have me look at it,

25   whatever, you know, after, but I think that's -- I know the

1    order says that, but I'd like it to say -- I would like that

2    same language to be in this order.

3            MR. DESPINS:  I would just say, Your Honor, you

4    mentioned the district court, there's a lot of activity in

5    the district court at this point, meaning appeals, state --

6            THE COURT:  I've heard.

7            MR. DESPINS:  You know, that was part of my

8    speech, so I'm not going to go through that, but over 36-37

9    years I thought I'd seen it all, but I've never seen a

10   double stay pending appeal.  What I mean is that both courts

11   being asked to stay at the same time.  Never seen that.

12   Never seen a mandamus which they filed.

13           I mean, I was telling Ms. Claiborn that I've often

14   dreamt about filing a mandamus before a judge that ruled

15   against me, but I've never seen, ever seen that.

16           So there's a lot of activity in the district court

17   at this point.

18           THE COURT:  I understand both of those things that

19   you just said and I guess we'll see what happens.

20           I mean, it's in the district court's hands

21   obviously.  Whatever the district court's going to do, the

22   district court is going to do.

23           I do know -- I did appreciate knowing that Judge

24   Dooley did deny the motion for stay pending appeal because

25   then I don't have to rule on that.  That helps.

1           And I know I understand that there's a writ of

2     mandamus out there in which the docket indicates that I'm a

3     defendant.  Although I think that's not accurate.  I think

4     that's just the way the clerk's office has to -- I don't

5     know that though -- but I think it's the way the clerk's

6     office to note it.

7           And then I think it's completely up to the

8     district court to determine what if anything will happen

9     with that writ of mandamus, including whether or not the

10    district court may ask some party in this case to file

11    pleadings.  So I have no idea.

12          No, I hadn't seen one of those either actually.

13          MR. DESPINS:  As I said, I've dreamt a lot about

14    that in other cases, but I've never actually seen it.

15          THE COURT:  Well, I've seen it in a context of a

16    motion where there was other relief sought before the other

17    court, but not in the commencement of an action.  I hadn't

18    seen that.

19          But, you know, we should all go back and read

20    *Marbury vs. Madison* so maybe we'll --

21          MR. DESPINS:  Exactly.

22          THE COURT:  -- understand what that -- once we

23    read that again.  But that wasn't involving a judge, so

24    we'll see.

25          In any event, I'm looking at the proposed order

1    that was submitted this morning.  And with the changes that

2    I noted on the record and that are agreeable to the parties

3    that are here today, the application for compensation of

4    Paul Hastings, LLP for the period of July 8th, 2022 through

5    February 28th, 2023 is granted and the proposed order with

6    the minor changes noted on the record will enter.

7              MR. DESPINS:  Thank you, Your Honor.

8              THE COURT:  Thank you.

9              MR. LINSEY:  Good morning, Your Honor.

10             THE COURT:  Good morning.

11             MR. LINSEY:  Patrick Linsey, Connecticut counsel

12   for the Trustee and conflicts counsel here for my firm

13   Neubert, Pepe & Monteith.  I won't take up a lot of time.

14             I was involved on behalf of my firm in the

15   conversations that the Trustee discussed with the U.S.

16   Trustee and with the committee regarding holdbacks and fee

17   applications going forward and I understand the parameters

18   that we're operating under.

19             I could -- I could talk about what led to the

20   filing of this fee application, but I feel like everyone on

21   this courtroom has pretty much lived it together at this

22   point.

23             There is one thing that I'll briefly touch on,

24   which is I think not always the shiniest and most exciting

25   part of the case, it's sort of the ducks' feet under the

1    water if you will, but it's also sort of an apt analogy

2    because it's in some ways what powers the case, which is the

3    investigation that's been going on while we've been doing

4    all this litigation.

5         I think there have been five omnibus 2004 motions

6    that have been granted, that's on top of three initial 2004

7    motions that have been granted, all of which refer -- all of

8    which dealt with numerous examinees, dozens and dozens, into

9    the hundreds I believe at this point, of examinees,

10   something that my office and I have been very much involved

11   in.

12        And that hasn't necessarily been court work, but

13   particularly in this case where the Trustee has not had

14   financial advisors, forensic accountant professionals, where

15   we've really had to have attorneys doing that work to move

16   this investigation forward, it's taken a lot of time.  It's

17   taken a lot of resources.

18        But I think that the results are evident when

19   there are adversary proceedings that are filed with initial

20   requests for injunctive relief that are supported by

21   voluminous evidence, discreet facts showing why that relief

22   is appropriate.  Those facts weren't handed to us on a

23   platter.  Those facts were really from the sweat of many

24   brows in the form of that investigation.

25        So particularly, I suppose for me, in addition to

1    the work you've seen here in court because of the role as

2    conflicts counsel, obviously with a large firm like Paul

3    Hastings there are a number of examinees where we've had to

4    do, you know, grab the oar with respect to some of the

5    investigating, that's been a large part of the case.

6            And I think -- I think there have been positive

7    developments for the estate and I'm optimistic there will be

8    more positive developments for the estate.

9            So with that having been said my firm did have a

10   conversation with Attorney Claiborn for the United States

11   Trustee.  Ms. Claiborn raised certain issues.  We didn't

12   agree on all the issues, but we did agree that a $10,000

13   reduction to the fee application was appropriate.  That's

14   been agreed to.  Otherwise I'm not aware of any objections

15   to the fee application.

16           So we would ask that the Court enter the order

17   granting the fee application.

18           To the extent the Court would be willing to do

19   that, I would suggest one of two things.

20           One, the only change to our proposed order that

21   I'm aware of is entering the date of the hearing and --

22           THE COURT:  We can take care of that.

23           MR. LINSEY:  -- and reducing the number in

24   paragraphs 1 and 2 from 561,718.50 to 551,718.50.  So if the

25   Court can --

1        THE COURT:  It's 10,000 even?

2        MR. LINSEY:  Correct.  Ten thousand even, Your

3   Honor.

4        But beyond that I'm not aware of any other changes

5   that are necessary unless the U.S. Trustee and the committee

6   have any comments with respect to our application.

7        THE COURT:  The only thing I am --

8        I'm sorry.

9        MS. CLAIBORN:  Yeah.

10       THE COURT:  Why don't I hear from you first,

11  Attorney Claiborn.

12       MS. CLAIBORN:  I was just going to state the

13  obvious which is the U.S. Trustee is on board with the

14  $10,000 reduction as evidenced by the statement that I filed

15  on the docket at ECF 1950.

16       And I concur with Attorney Linsey that there are

17  no other changes that need to be made to the order other

18  than to adjust the math.

19       THE COURT:  Okay.  Thank you.

20       Just so -- so the record is clear, what I -- what

21  I've commented on the record about the application of Paul

22  Hastings, I agree with the application, those comments are

23  applicable to the application of Neubert, Pepe & Monteith as

24  well.

25       I did review the time entries.  As I said did I

1    review every single time entry?  No.  But I reviewed a good

2    amount of them.  And I reviewed the categories of tasks

3    performed, the amounts, the dollar amounts associated with

4    those categories.

5         It was easy for me in both situations to see where

6    the most fees were incurred, and they were incurred in

7    categories where I would think the most fees should have

8    been incurred.

9         So I, again, think the fees and expenses are

10   reasonable and absolutely necessary under the circumstances

11   of the very specific circumstances of these jointly

12   administered Chapter 11 cases, and the numerous adversary

13   proceedings, and the injunctive relief that's been sought,

14   and the issues with regard to appeals, and all the things

15   we've already talked about.

16        So I have -- again, there was nothing that stood

17   out to me as any area of concern.

18        With regard to the voluntary reduction, again, as

19   I've already said, I think those conversations are very good

20   to have.  And I think that, you know, you've come to an

21   agreement.  And that's fine.

22        But, again, I don't want there to be a belief that

23   that has to happen every time, with the understanding that I

24   could be the one that decides that there is a need for a

25   reduction.  Okay?  But I might not.  You never know.  You

1    just don't know.  It depends upon the facts and the

2    circumstances of the case.

3            With regard to your proposed order, the only other

4    change I'm going to make, and the courtroom deputy and I can

5    do this, is I just want to cite to the statutes at the

6    beginning of the order, like the Paul Hastings' order does,

7    you know, pursuant to Sections 328, 330 and 331.

8            MR. LINSEY:  I'm sorry.

9            THE COURT:  That's okay.

10           MR. LINSEY:  I wasn't aware that Mr. Kindseth's

11   ask applied to my firm, but I suppose it's fair.  We're fine

12   doing that too.

13           THE COURT:  You mean the same language that --

14           MR. LINSEY:  The same language.  Would you like us

15   to --

16           THE COURT:  That same paragraph 4, essentially?

17           MR. LINSEY:  Yeah.  Okay.  It's fine.

18           Would you like us to submit an order?  Your Honor,

19   could -- the Court could copy and paste that language from

20   the --

21           THE COURT:  We can copy and paste it.

22           MR. LINSEY:  Okay.

23           THE COURT:  We'll keep the fees down for today as

24   much as we can.  Okay?

25           MR. LINSEY:  Thank you, Your Honor.

1          THE COURT:  But I -- you know, as I said, nothing

2     stood out or gave me pause in connection with these

3     applications because of the facts and circumstances that

4     we've all encountered in these cases.  Okay?

5          So did the committee wish to be heard?

6          MR. GOLDMAN:  Your Honor, no objection from the

7     committee for largely the same reasons articulated for Paul

8     Hastings except for the hourly rates.  But we have -- we saw

9     it as Your Honor saw it.

10         THE COURT:  Well, that's a reality of geography I

11    suppose.  Right?  As we all know.

12         But in any event we can take care of those

13    changes.

14         The Court finds that, as I said, the fees and

15    expenses are reasonable and necessary.  No one has filed any

16    written objection.  There's no one participating in this

17    hearing today that's objecting to the fee application.  The

18    United States Trustee's Office has filed a statement of no

19    objection in connection with the agreement, further

20    reduction of the fees by $10,000.

21         For all those reasons the application is granted

22    and the proposed order will enter.

23         MR. LINSEY:  Thank you, Your Honor.

24         THE COURT:  Okay.  Thank you.

25         We'll make those minor changes, Attorney Linsey,

1    that we talked about.  We can do that.

2              MR. LINSEY:  Thank you, Your Honor.

3              THE COURT:  So, you know, again, I do think that

4    all that has occurred as far as the fees and expenses have

5    -- are reasonable and necessary and have produced results

6    for this estate which is in a very different place than it

7    was a year ago today.  And that was --

8              You know, the appointment of the Trustee was

9    designed to see if that could happen and to see if -- that

10   was the whole point.

11             All the -- the creditors had come in and said

12   there needs, you know, there needs to be an investigation,

13   there's all kinds of things going on.  That was why a

14   trustee was appointed.  The investigation has yielded

15   results in a -- in a very -- in less than a year, under very

16   difficult circumstances.  So I -- that's very much

17   appreciated by the Court.  And we'll have to see where

18   things go from here.

19             I think obviously the point of this is for the

20   benefit of creditors.

21             And so there have to be -- attorneys have to be

22   paid in order to try to reach a result that is for the

23   benefit of creditors.

24             And while the amounts may seem high I -- from July

25   8th, 2022 to February 28th, 2023, I think they're

1    reasonable.

2             So I don't know if anyone wishes to discuss any

3    other matters today, otherwise I think -- I think we are --

4    we do not have any further hearings in these cases until

5    July 11th, is that correct?

6             MR. DESPINS:  That's my understanding, Your Honor.

7             THE COURT:  Okay.  All right.  Well, have a nice

8    4th of July.  And thank you all very much.

9             MR. DESPINS:  You as well.

10            ALL COUNSEL:  Thank you, Your Honor.

11            THE COURT:  We do not have another matter on the

12   calendar until 12 p.m., so court is in recess until 12 p.m.

13        (Proceedings concluded at 10:51 a.m.)

14            I, CHRISTINE FIORE, court-approved transcriber and

15   certified electronic reporter and transcriber, certify that

16   the foregoing is a correct transcript from the official

17   electronic sound recording of the proceedings in the above-

18   entitled matter.

19

20            *Christine Fiore*

21   _____    July 7, 2023

22        Christine Fiore, CERT

23

24

25