**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------------x
                                                            :
In re:                                                      :   Chapter 11
                                                            :
HO WAN KWOK, *et al.*,[1]                                   :   Case No. 22-50073 (JAM)
                                                            :
                           Debtors.                         :   (Jointly Administered)
                                                            :
------------------------------------------------------------x
                                                            :
LUC A. DESPINS, CHAPTER 11                                  :
TRUSTEE,                                                    :
                                                            :   Adv. Proceeding No. 23-05013 (JAM)
                           Plaintiff,                       :
v.                                                          :
                                                            :
                                                            :
HCHK TECHNOLOGIES, INC.,                                    :
HCHK PROPERTY MANAGEMENT, INC.,                             :
LEXINGTON PROPERTY AND STAFFING, INC.,                      :
HOLY CITY HONG KONG VENTURES, LTD.,                         :
ANTHONY DIBATTISTA, YVETTE WANG,                            :
and BRIAN HOFMEISTER (in his capacity                       :
as assignee),                                               :
                                                            :
                           Defendants.                      :
------------------------------------------------------------x

**OMNIBUS REPLY OF CHAPTER 11 TRUSTEE (I) IN SUPPORT OF MOTION,**
**PURSUANT TO BANKRUPTCY RULE 9019, REGARDING SETTLEMENT WITH**
**ASSIGNEE OF HCHK ENTITIES UNDER NEW YORK COURT ASSIGNMENT**
**PROCEEDINGS, AND (II) IN RESPONSE TO OBJECTIONS**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor" or "Kwok"), plaintiff in

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
      Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
      Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The
      mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul
      Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho
      Wan Kwok (solely for purposes of notices and communications).

the above-captioned adversary proceeding, hereby submits this omnibus reply (the "Reply") (a) in support of the Trustee's Bankruptcy Rule 9019 motion [Adv. Proc. Docket No. 25] (the "Motion")[2] and (b) in response to (i) the objection filed by Shin Hsin Yu ("Mr. Yu"), 1332156 B.C. LTD ("1332156 B.C."), GWGOPNZ Limited ("GWGOPNZ") and Japan Himalaya League, Inc. ("Japan Himalaya" and, collectively with Mr. Yu, 1332156 B.C., and GWGOPNZ, the "Himalaya Parties") [Adv. Proc. Docket No. 40] (the "Himalaya Objection"); (ii) the notice filed by G-Club Operations, LLC ("G-Club") [Main Case Docket No. 1977] (the "G-Club Notice"); (iii) the limited objection filed by the United States Trustee (the "UST") [Main Case Docket No. 1978] (the "UST Limited Objection"); (iv) the limited objection filed by G-News Operations, LLC ("G-News") [Adv. Proc. Docket No. 37] (the "G-News Limited Objection"); and (v) the objection letter filed by Joshua Sherman [Adv. Proc. Docket No. 41] (the "Sherman Letter," and, together with the Himalaya Objection, the G-Club Notice, the UST Limited Objection, and the G-News Limited Objection, the "Objections").  In support of the Reply, the Trustee respectfully states as follows:

## REPLY

### I.    Himalaya Objection Should Be Overruled

1.    The Himalaya Objection essentially boils down to this: the Himalaya Parties thought that the HCHK Entities filing for administration in the New York Court would be advantageous to them,[3] but now that the independent Assignee has determined that the Settlement Agreement is in the best interests of the HCHK Entities' creditors (for whom he is a fiduciary), the Himalaya Parties want to strip him of his authority and do anything they can to

---

[2]    Capitalized terms used but not defined herein have the meanings set forth in the Motion.
[3]    Given that both the HCHK Entities and the Himalaya Parties seem to be controlled by and affiliated with the Debtor, one must question whether this was a coordinated decision.

avoid this Court and the oversight of the Trustee.  Moreover, they oppose the Trustee's alter-ego action and contest it now, despite that issue not being the subject of this Motion.  There is no legal or equitable basis for any of what they now demand.

2.      The Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness,"[4] guided by the factors set forth in the Second Circuit's *Iridium* decision.[5]  The record is clear that the Settlement Agreement is beneficial to the estate given that it resolves disputes between the Trustee and Assignee, including by obviating the need for a contested preliminary injunction hearing, and places over $35 million into the Trustee Accounts, while preserving the ability for HCHK's creditors to be afforded due process before this Court.

3.      The Assignee is the legally authorized party charged with making decisions on behalf of the HCHK Entities for the benefit of all their creditors.  The Himalaya Parties did not oppose his appointment, and cannot now attempt to strip him of his authority to enter into this agreement for the benefit of the HCHK Entities' estates simply because they hoped he would act more in line with their personal objectives. The Himalaya Objectors offer no coherent argument why avoiding the costs of a contested TRO Motion hearing is not to the benefit of the HCHK Entities' creditors, nor can they claim that this Court cannot afford such creditors proper due process.[6]  Each creditor of the HCHK Entities does not have an independent right to make decisions on behalf of the HCHK Entities – that is the exclusive role of the Assignee.[7]

---

[4]     *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).

[5]     *See* Motion ¶ 26 (citing *Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 462 (2d Cir. 2007)).

[6]     Notably, in footnote 4 of their objection, the Himalaya Parties explicitly note that they have reserved the right to intervene in the Adversary Proceeding and otherwise oppose the Trustee.

[7]     The Second Circuit has ruled that when a fiduciary for creditors or equity holders makes an agreement with a bankruptcy estate, his constituents have no standing to object to the settlement motion.  *See In re Refco Inc.*, 505 F.3d 109, 119 (2d Cir. 2007) ("*Refco*") ("[A] bankruptcy court's obligation is to determine whether a

4.      Moreover, the Proposed Order preserves the Himalaya Parties' rights to contest the alter ego and equitable ownership claims raised in the Trustee's complaint.  Entry of the Proposed Order "shall be without prejudice to the rights of any party (other than the Assignee) to file pleadings and take positions in connection with the Adversary Proceeding, including by opposing a Dispositive Motion."  Proposed Order ¶ 8.  While this language in the Proposed Order is subject to standing requirements and preserves the Trustee's right to challenge a party's standing, the Trustee always had the ability to challenge any intervening party's standing in the Adversary Proceeding irrespective of the Proposed Order.

5.      As to the Himalaya Parties' demands that this proceeding be immediately returned to the New York Court because they had a right to be heard there and must be "compensated" for that lost right—that is simply baseless.  The decision to commence an assignment proceeding in the New York Court was not theirs, but rather the decision of the HCHK Entities, just as the Assignee's decision to now agree to the settlement is his to make, not that of any individual creditor.  The Himalaya Parties had no inalienable right to an assignment proceeding over a bankruptcy case, and they cannot point to any harm from having these issues decided before this Court.[8]  Nor are the Himalaya Parties' claims on behalf of the authority of the New York Court any more appropriate or correct.

6.      The Himalaya Parties accuse the Trustee of seeking to turn the New York Court into his "puppet" and claim that it is the State Court that should decide the Trustee's alter ego

---

settlement is in the best interests of the estate, not to ensure that the creditors' representatives are honoring their fiduciary duties.").  The Trustee does not oppose the standing of the Himalaya Parties to object to the Motion with respect to the Channeling Injunction and Exculpation Provision, which relate to claims such parties may have against the Assignee.  The Trustee believes that the Channeling Injunction and Exculpation provision are the only aspect of the Settlement Agreement with respect to which the Himalaya Parties' views should be considered.

[8]   The only argument the Himalaya Parties raise is that if the Trustee's alter ego claims are successful, they would stand on equal footing with respect to the Debtor's other creditors.  That result would be appropriate.

and equitable ownership claims.[9]  There is no legal basis for this demand.  Plainly the Trustee and Assignee's agreement that having this Court hear the Adversary Proceeding, and determine any issues related to injunctive relief, is not only reasonable, but likely necessary in light of the automatic stay.  What the Himalaya Objection really is attempting is an improper collateral attack this Court's jurisdiction.  This Court has already exercised its jurisdiction over the HCHK Entities by issuing its TRO Order, where the Court ruled explicitly that it had jurisdiction pursuant to 28 U.S.C. U.S.C. § 1334(b).  The Trustee had a dispute with the Assignee that the Trustee and Assignee are attempting to resolve by means of the Settlement Agreement.  The Motion clearly falls within this Court's jurisdiction.

7.    With respect to the Channeling Injunction and Exculpation, the Assignee has addressed these issues in a separate pleading, and the Trustee has agreed to and supports these protections for the Assignee.  That said, the Trustee will note that with regard to the objection to that the $550,000 settlement payment to the Assignee constitutes "blatant self-dealing,"[10] the payment is significantly less than the payment the Assignee would have likely received pursuant to the Deeds of Assignment (that were not objected to by the Himalaya Parties), which provided the Assignee with a commission of up to five percent of the HCHK Entities' administered assets (over $1.5 million).[11]

8.    Finally, any discussion of the Himalaya Objection is incomplete without a frank disclosure of who is bringing it.  This Court is no stranger to the entities and organizations

---

[9]    Himalaya Objection ¶ 77.
[10]   Himalaya Objection ¶ 73.
[11]   *See* Ex. 13 to Complaint, HCHK Technologies Aff., Ex. B, Deed of Assignment for the Benefit of Creditors ¶ 9; Ex. 17 to Complaint, Lexington Property Aff., Ex. B, Deed of Assignment for the Benefit of Creditors ¶ 9; Ex. 18 to Complaint, HCHK Property Aff., Ex. B, Deed of Assignment for the Benefit of Creditors ¶ 9 (providing that the Assignee's compensation shall be "an amount to be determined by the court up to 5% of the amount administered. . . .").

known as "Himalaya."  The Court has already found, among other things, that the Debtor is the

leader of the Himalaya Global Alliance, Himalaya Exchange, and Himalaya Farms,[12] that these

entities and organizations "serve as business vehicles for the Debtor"[13] and that, "their members

are personally loyal to the Debtor."[14] The Himalaya Parties are, by all indicia, associates of or

controlled by associates of the Debtor and acting on the Debtor's behalf:

    a.  **Himalaya Japan** is, upon information and belief, controlled by the Debtor through individuals who are members of the Debtor's Himalaya Farm organization branch based in Japan (the "Japan Farm").  The authorized signatory of Himalaya Japan on the purported loan agreement between Himalaya Japan and HCHK Property, attached as Exhibit D to the Himalaya Objection, is an individual named Shuai Guo.  **As of February 2023, Shuai Guo was Chief Executive Officer of the Rule of Law Society IV, Inc., a purported non-profit entity controlled by the Debtor.**[15]  In addition, upon information and belief, Shuai Guo is a member of the Japan Farm and was a prominent participant in the Debtor's protest campaign against Paul Hastings' office in Tokyo, Japan in late 2022 and early 2023.[16]

    b.  **GWGOPNZ** is, upon information and belief, controlled by the Debtor through individuals who are members of the Debtor's Himalaya Farm organization branch based in New Zealand. [17]  According to public documentation obtained from the New Zealand Companies Office, the Director of GWGOPNZ is Xuebing Wang,[18] an individual who, upon information and belief, is a close associate of the Debtor.  **In January 2023, Xuebing Wang visited protestors in front of the Trustee's home, where he praised the protestors for their efforts, awarded them prizes, and expressed thanks on behalf of the "Himalaya Alliance."**[19]

    c.  **1332156 B.C.** is, upon information and belief, controlled by the Debtor through individuals who are members of the Debtor's Himalaya Farm organization branch based in British Columbia, Canada (the "British Columbia Farm").  The authorized signatory of 1332156 B.C. on the loan agreement between 1332156 B.C., as lender,

---

[12]  *See Corrected Mem. of Decision Granting in Part Mot. for Prelim. Inj.* ¶ 7, Adv. Proc. No. 22-05032 [Docket No. 133] (the "PI Decision").  *See also id.* ¶ 4.

[13]  PI Decision ¶ 7.

[14]  *Id.*

[15]  *See* Engagement Letter between Rule of Law Society IV, Inc. and Marcum LLP, attached hereto as **Exhibit A.**

[16]  *See, e.g.*, 重建 (@ZaiChongjian), TWITTER (February 14, 2023), https://twitter.com/ZaiChongjian/status/1625388115325079552 (last visited July 7, 2023) (video and pictures of protests in front of Paul Hastings' Tokyo office).

[17]  It is likely, though the Trustee cannot at this time verify, that the name "GWGOPNZ" is an acronym for "Guo Wen Gui Operation New Zealand."

[18]  *See* documentation attached hereto as **Exhibit B.**

[19]  *See* Himalaya Alliance Committee Chairman Xuebing Wang visited protestors, YouTube, February 1, 2023, https://www.youtube.com/watch?v=QmIUHPZcU-g.

and HCHK Property and HCHK Technologies, as borrowers, attached as Exhibit B to the Himalaya Objection, is an individual named Yanchun Liu.  Upon information and belief, Yanchun Liu is a member of the British Columbia Farm and an associate of the Debtor who, among other things, participated in one or more of the Debtor's NFSC events.  Yanchun Liu has also, upon information and belief, directed millions of dollars to the Debtor's investment and/or cryptocurrency ventures (which are the subject of the Government's criminal case against the Debtor).[20]

d. **Mr. Yu** is, upon information and belief, a member of the Debtor's Himalaya Farm organization, having paid $1.5 million to an account belonging to Himalaya International Clearing Transactions, a Kwok-controlled entity purportedly owned by William Je (known to Mei Guo as "Uncle William"), which account was seized by the United States Government in connection with the Debtor's criminal case.[21]  It is not clear from the Himalaya Objection how Mr. Yu is a creditor of the HCHK Entities, given that the documentation supposedly evidencing transfers of funds from Mr. Yu, attached as Exhibit A to the Himalaya Objection, in fact exhibits the transfer of funds from an entity called Kalixun Trading Limited.

## II.    G-Club Proposal Should Be Rejected

9.      The G-Club Notice, while conceding that G-Club does not object to the Motion,[22] continues the trend of G-Club seeking to prevent the Trustee from gaining access to information related to it.  The G-Club Notice, without actually attaching any supporting documentation or citing any supporting language, makes the claim that a Master Service Agreement exists between it and HCHK Technologies, pursuant to which G-Club alleges HCHK Technologies "administered and managed G-Club's emails and other applications" and that pursuant to that same agreement allegedly "owes funds to G Club that should be returned to" it.[23]  Based on these naked allegations, G-Club demands that the Proposed Order be modified such that the Trustee be allowed to see documents relating only to HCHK, and that documents HCHK (and then the

---

[20]    Among other things, Yanchun Liu transferred approximately $2.85 million to Maywind Trading LLC, an entity believed to be controlled by the Debtor that was recently held in contempt by this Court based on its failure to comply with the Trustee's Rule 2004 subpoena.  *See Order Granting in Part Motion for Entry of Order Holding Non-Responding Parties in Civil Contempt of Court* [Main Case Docket No. 1892].

[21]    *See* Ex. 24 to Complaint, Criminal Indictment of Ho Wan Kwok and Kin Ming Je, ¶ 54(m) *United States v. Kwok et al.*, 23 Cr. 118, filed Mar. 6, 2023 [ECF No. 2].

[22]    G-Club Notice ¶ 1.

[23]    *Id.* ¶ 8.

Assignee) had full access to should be returned to HCHK and kept from the Trustee. This notice is simply G-Club's latest salvo to avoid producing relevant information.

10.     G-Club's new citation to a Master Services Agreement between it and HCHK Technologies is telling. The Court will recall that G-Club refused to comply with the Rule 2004 subpoena served upon it initially because it claimed that it was overbroad since G-Club was only tangentially related to the Debtor and his activities (claiming he was simply an unpaid spokesperson), only to then claim that it could not produce documents following the Debtor's indictment because relevant management needed to produce the documents had fled. Now, after the Court has ordered G-Club to produce its documents regardless of its excuses, G-Club is changing its position 180 degrees. The G-Club Notice claims that its affiliation to the Debtor is so tight that G-Club was operated under a Master Services Agreement by HCHK Technologies, an entity the Trustee asserts is the Debtor's alter-ego, and whose employees are alleged by the U.S Government to have aided the Debtor and Yvette Wang in their fraudulent activities, even after their incarceration. Furthermore, if G-Club's relevant documents had in fact been in the possession of a third party, HCHK Technologies, the flight of G-Club's senior management would presumably not have prevented production of the documents.

11.     We raise this, not because we doubt that G-Club is deeply intertwined with the Debtor, or that G-Club could have produced its emails months ago, but rather because G-Club's past behavior is of a piece with its current attempts to keep information from the Trustee. The Assignor had already obtained access to G-Club's documents and in fact, had sought the New York Court's permission to sell HCHK as a going concern (presumably along with all of G-Club's documents) to another entity (G-News). There is no evidence G-Club ever objected to either the assignment or the proposed sale, or that it ever demanded its documents back. Rather,

its concern for its proprietary interest in these documents only seems to arise when it is the Trustee is poised to attain them.

12.     G-Club has no basis to demand that the Trustee only review documents that solely concern the HCHK Entities (notably excluding G-Club and all the other Debtor affiliated entities deeply embroiled with HCHK).  None of those entities had an issue with the Assignee having access to the documents—nothing should be different with regard to the Trustee.  In addition, given its track record, G-Club is in no position to seek special dispensation to have its documents pulled back.  The documents cannot be privileged (nor does G-Club claim that they are) and G-Club has not taken steps to prevent the Assignee or presumably G-News from reviewing them, evidencing they are not so sensitive that no one other than G-Club can possess or review them.

13.     Finally, G-Club's one line statement that "Pursuant to that Master Services Agreement, HCHK also owes funds to G Club that should be returned to G Club" is neither supported, nor reasonable.  Whether addressed through the claims process if the Trustee's alter-ego action prevails, or administered by the Assignee, there is no scenario where G-Club simply has the right to demand funds be returned to it, particularly when it fails to articulate what funds and on what basis it even seeks to make this claim.

### III.    UST Limited Objection Should Be Overruled

14.     The UST Limited Objection focuses on two issues.  One is the payment of expenses by the Assignee upon approval by the Trustee, which the UST proposes should take place only on three days' notice with respect to payments over $25,000.  The Trustee does not oppose this concept, but believes that a $50,000 cap is more appropriate so as to avoid unduly restricting the Assignee's ability to make quick payments as may be necessary, and the Trustee has reached out to the UST regarding a potential agreement on this point.  The second issue

9

raised by the UST is the Channeling Injunction and Exculpation provisions of the Proposed

Order, which is addressed by the Assignee in a separate pleading filed concurrently herewith,

and the Trustee has agreed to and supports these protections for the Assignee.

**IV.   G-News Limited Objection and Sherman Letter Should Be Overruled**

15.    Both G-News and Mr. Sherman, employed as general counsel of HCHK

Technology, raise similar issues.  They allege that they are creditors with claims against the

HCHK Entities and do not want to be prejudiced by the Proposed Order.  As an initial matter,

this 9019 Motion is not the appropriate forum for what is essentially just an assertion of a claim.

The Proposed Order does not prejudice the rights of G-News or Mr. Sherman against the HCHK

Entities.  Assuming the Proposed Order is entered and that G-News and Mr. Sherman hold valid

claims, those claims may be addressed in several ways.  They may potentially be paid as

expenses under the rubric of the Authorized Assignee Actions, pursuant to the terms of the

Proposed Order and subject to the approval of the Trustee.  If the Proposed Order is entered and

a Dispositive Ruling is entered in favor of the Trustee in the Adversary Proceeding, G-News and

Mr. Sherman may, potentially, assert their claims in the Debtor's chapter 11 case.  If the Trustee

is unsuccessful in pursuing his Adversary Proceeding claims, which we do not believe will be the

case, the HCHK Entities' cash will be returned to the Assignee and the situation will return to the

status quo, with the claims of G-News and Mr. Sherman to be addressed, presumably, by the

Assignee in the Assignment Proceedings.  Given the above, the G-News Limited Objection and

Sherman Letter should be overruled.


*[Remainder of page intentionally left blank.]*

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of the

Proposed Order granting the relief requested in the Motion and such other relief as is just and

proper.


Dated:    July 7, 2023                    LUC A. DESPINS,
          New Haven, Connecticut          CHAPTER 11 TRUSTEE

                                          By: */s/ Patrick R. Linsey*
                                               Patrick R. Linsey (ct29437)
                                               NEUBERT, PEPE & MONTEITH, P.C.
                                               195 Church Street, 13th Floor
                                               New Haven, Connecticut 06510
                                               (203) 781-2847
                                               plinsey@npmlaw.com

                                                    *and*

                                               Nicholas A. Bassett (*pro hac vice* pending)
                                               PAUL HASTINGS LLP
                                               2050 M Street NW
                                               Washington, D.C., 20036
                                               (202) 551-1902
                                               nicholasbassett@paulhastings.com

                                                    *and*

                                               Avram E. Luft (*pro hac vice* pending)
                                               Douglass Barron (*pro hac vice* pending)
                                               PAUL HASTINGS LLP
                                               200 Park Avenue
                                               New York, New York 10166
                                               (212) 318-6079
                                               aviluft@paulhastings.com

                                               *Counsel for the Chapter 11 Trustee*

**Exhibit A**

DocuSign Envelope ID: 6EFA89BC-78BA-4228-B93B-462E8BC0F489



November 9, 2022

Yumei Hao, Audit Committee Chair
Shuai Guo, Chief Executive Officer
Rule of Law Society IV, Inc.
57 West 57th Street, Suite 400
New York, NY 10019

Re:    Tax Compliance for the Year Ending December 31, 2022

Dear Yumei and Shuai:

Thank you for choosing Marcum LLP ("Marcum," "we," "us" or "our") to provide tax compliance services for Rule of Law Society IV, Inc. ("Client," "Company," "Organization," "you" or "your").

The purpose of this engagement letter, including **Attachments A and B** (collectively, the "Agreement"), is to document the understanding between Marcum and Client related to the tax compliance services for Client for the year ending December 31, 2022.

## Services

Our services ("Services") are performed in accordance with the American Institute of Certified Public Accountants' ("AICPA") Statements on Standards for Tax Services and include the following:

- Preparation of the Federal and State tax returns for the year ending December 31, 2022, as outlined in **Attachment B**.

Unless separately engaged, the tax filing requirements set forth in **Attachment B** are the only tax returns for which Marcum has responsibility.  Our Services under this Agreement will also cover responses to routine questions and preliminary research, which may be billed separately.  It is understood that our responsibility for such Services will encompass only periods covered under this Agreement and will not extend to any subsequent periods for which we are not engaged.

While we are not engaged to do so, we may identify other tax return and filing obligations.  In such case, we will discuss the additional services and fees for those additional tax return and filing obligations; however, we will not be responsible for such additional tax return and filing obligations unless agreed to in writing.

Your returns may be selected for review by the applicable taxing authorities.  Any proposed adjustments by the examining agent are subject to certain rights of appeal.  In the event of such government tax examination, we will be available upon request to represent you which is outside the scope of this Engagement.



Rule of Law Society IV, Inc.
November 9, 2022
Page 2

## Additional Tax Services

Our Services under this Agreement will not include the following:

- The preparation of any returns not listed in **Attachment B**, including, but not limited to amended returns, sales and use tax returns, local property tax returns, payroll or other trust tax returns and information returns for employee benefit plans.

- Tax research or consultation with respect to nonrecurring items and other matters of tax significance that may arise in the course of tax preparation or during the course of the year. Such items would include, but not be limited to, assistance with Federal and State tax audits or notices, payroll tax issues, and consultation and research related to state and local tax matters.

- Assistance with year-end accounting services required to prepare adequate financial statements necessary to complete an accurate tax return.

If there are additional returns, filings, or other services that you wish us to provide for the tax year ending December 31, 2022, please contact us as soon as possible and we will amend **Attachment B** to include such additional services that we shall provide subject to the terms of this Agreement. The parties shall agree to the additional services by mutually agreeing to the additional services in writing, including by email. The fees for any additional services will be based on the services to be provided, the timeliness and completeness of the information and documentation provided to us, firm technology, firm processes, and time required of personnel.

## Electronic Return Filing and Payment

Federal and state laws require the electronic filing of certain tax returns, requests for extensions or tax payments (i.e., quarterly estimates or other tax deposits). In some cases, a taxpayer may elect to file a tax return or make a payment in paper format and in other cases a taxpayer may not be permitted to opt out of electronic filing or payment. If Client would like to opt out of electronic filing or payment and file returns or pay in paper format, Client must contact us immediately so that we can determine if opting out is legally permissible and provide Client with any required documentation.

We will use our best efforts to electronically file Client's tax returns. We will provide Client with the information to be included on the return for your review and approval prior to filing. We are legally required to obtain Client's written authorization prior to electronically filing your tax return so it is critical that you appropriately sign and return the authorization form to permit electronic filing of your return by the return's due date. If you do not return your written authorization to electronically file your tax return to us within one week prior to the return's due date, your return may not be timely filed. We are not responsible for any interest or penalties arising from any such late filing.

DocuSign Envelope ID: 6EFA89BC-78BA-4228-B93B-462E8BC0F489

Rule of Law Society IV, Inc.
November 9, 2022
Page 3

For returns of Client not being electronically filed, we will provide your returns to you for filing in paper format.  If any return or payment is provided to Client in paper format, it is critical that you sign, date and mail the return by its due date.

Client is responsible for remittance of all required tax payments.  You will be responsible for any penalties and interest assessed by tax authorities for the late filing of returns or deposit of tax.  You have the final responsibility for all tax returns.  You should check all returns carefully before signing each return.

## Timing

We will send you a timeline that lists activities and information that we will need to complete the services.

You acknowledge that we must have adequate time to conduct our engagement.  We will require your assistance to provide us with information on a timely basis in order to complete our engagement in an efficient and timely manner.   We may provide you with an organizer, questionnaire and/or other requests for information and you must respond to these requests completely and accurately.  Should we not receive such information and assistance from you with sufficient time to complete the Services, then you acknowledge that we can give no assurances that our Services will be completed prior to the time required by law.

Unless specified herein as our responsibility to provide, you shall have obtained for us, on a timely basis, any internal and third-party permissions, licenses or approvals that are required for Marcum to perform the Services contemplated hereunder (including use of any necessary software or data).  You shall also provide us, on a timely basis, with such information, approvals and assistance as may be necessary to our work or as may reasonably be requested, and personnel assigned to any work hereunder shall not be assumed or deemed to have knowledge of information provided to others, whether external to or within Marcum.

## Fees and Payment Terms

Our fee will be based on the services to be provided hereunder, the timeliness and completeness of the information and documentation provided to us, firm technology, firm processes, and time required of personnel.  Based on information known to us at this time, we anticipate the fees will be $6,500.  Consulting and planning related to changes in laws, situations or new guidance will be billed at standard hourly rates.  You will also be billed for travel and other direct out-of-pocket costs as incurred, as well as indirect out-of-pocket expenses of 4% of our professional fees as an allocation of overhead expenses that are not billed as direct reimbursable expenses.

DocuSign Envelope ID: 6FEA89B2-78BA-4228-B93B-462E8BCCF489

Rule of Law Society IV, Inc.
November 9, 2022
Page 4

## Payment Terms

Our fees for the services will be billed as follows and due on receipt of invoices:

Upon commencement of audit fieldwork$6,500

In the event that you dispute any of the fees or expenses on a specific invoice, you agree to notify us within twenty (20) days of receipt of the invoice of such dispute. If you fail to notify us within the twenty (20) day period, your right to dispute such invoice will be waived. Prior to the commencement of the services described above, any past due balances are required to be paid in full. In accordance with our Firm policies, should any invoice remain unpaid for more than thirty (30) days, we reserve the right to defer providing any additional services until all outstanding invoices are paid in full. Amounts past due sixty (60) days from the invoice date will incur a finance charge of 1% per month. Nothing herein shall be construed as extending the due date of payments required under this agreement, and you agree that we are not responsible for the impact on the Organization of any delay that results from such non-payment by you.

If Marcum pursues collection of any outstanding unpaid balance, then you shall be responsible for our attorneys' fees, collection fees, and court costs actually incurred. Reasonable attorneys' fees will not exceed one-third (1/3) of any outstanding balance due.

## Other Matters

As you know, we will be pleased to respond to your request for our tax services in areas beyond the scope of this Agreement. Except where a separate engagement letter is used, the terms of this Agreement, including the attached Engagement Terms (**Attachment A**) will also apply to any amendments to this Agreement.

## Agreement

This Agreement, including its Attachments, comprises the complete and exclusive statement of the agreement between the parties, superseding all proposals oral or written and all other communications between the parties. The letter may be executed in two or more actual, scanned, emailed, or electronically copied counterparts, each and all of which together are one and the same instrument. The agreements of the parties contained in the engagement letter will survive the completion or termination of this engagement. If any provision of this Agreement is determined to be unenforceable, all other provisions shall remain in force. The undersigned represents and warrants that it has the requisite authority and consents to enter into and perform this Agreement and the obligations herein for and on behalf of Rule of Law Society IV, Inc.

By executing this letter, you confirm, represent and warrant that you are not a (i) Russian citizen(s), Russian national(s), persons physically located in Russia and you do not own, directly or indirectly, 5% or more of any type of stock or other ownership interest in an entity(s) incorporated or organized under the laws of Russia and Marcum's Services are not performed for the benefit or use of or reliance on by any of the foregoing.

DocuSign Envelope ID: 6EFA89BC-78BA-4228-B93B-462E9BC0F489

Rule of Law Society IV, Inc.
November 9, 2022
Page 5

You agree that if at any time while Marcum is providing services to you**,** the foregoing representations are no longer true, you will immediately notify Marcum.

If you agree with the terms of our engagement, as described in this letter, and you have consented to the accompanying Electronic Record and Signature Disclosure, please affix your e-signature and return the letter to us via DocuSign and we will return a fully executed letter to you.

We appreciate the opportunity to serve you and believe this Agreement accurately summarizes the significant terms of our engagement.  If you have any questions, please let us know.

Very truly yours,

Marcum LLP

*Frank H. Smith*
083A513B29A4404...
Frank H. Smith, CPA

FHS/db

**AGREED AND ACCEPTED:**

This Agreement correctly sets forth the agreement by Rule of Law Society IV, Inc.

Signature: *Yumei Hao* _____
78E97E98EC664CE...
Yumei Hao
Audit Committee Chair

Date: 2/13/2023 _____

Signature: *Shuai Guo* _____
B623979A9196428...
Shuai Guo
Chief Executive Officer

Date: 2/4/2023 _____

Attachment A

| **MARCUM LLP ENGAGEMENT TERMS** |
|---|

This Attachment A governs the engagement letter referencing or attaching it (collectively, the "Agreement") (and supersedes any inconsistent terms) and also governs any additional services Client may request that Marcum perform unless a separate agreement for such additional services is executed by the parties. In the event of a conflict or inconsistency between the engagement letter and this Attachment A, this Attachment A shall control and prevail. Capitalized terms used but not defined in this Attachment shall have the meaning provided in the engagement letter.

1. <u>Client Responsibilities</u>.  Client represents and warrants that it has the requisite authority and consents to enter into and perform the Agreement and the obligations herein for and on behalf of the Company and Client has the requisite right, consent and permission to use and disclose all information, materials, software, or hardware (including those of third parties) provided by or on behalf of Client in connection with this Agreement.  Client shall be solely responsible for making all management decisions, performing all management functions and assuming all management responsibilities including, without limitation, for monitoring ongoing activities, the proper recording of transactions in the books of accounts, the safeguarding of assets, and the substantial accuracy of the financial records.  Marcum shall rely on the timeliness, accuracy, completeness, and reliability of all information, decisions and approvals provided by or on behalf of Client (including Client's advisors, auditors, consultants, legal counsel, agents etc.) and Marcum will perform the Services on that basis.  Client's management is solely responsible for applying independent business judgment with respect to Marcum's Services and deliverables (including decisions on implementation or other further course(s) of action) and is solely and exclusively responsible for such decisions.  Client will designate a qualified and competent member of management to oversee the Services and be responsible for all management functions and decisions relating to the engagement (including evaluating the adequacy of the scope of the Services in addressing Client's needs and results of the Services performed) who possesses the suitable skills, knowledge, and/or experience to assume all management responsibility and oversee the Services.  Client is responsible for establishing and maintaining its internal controls.  Client has the final responsibility for the income tax returns, estimated tax payments, if applicable, and positions therein; therefore, Client should review returns carefully before they are signed and filed.  Client must retain records supporting the filed return(s).

Client acknowledges that in order to complete the tax returns at the agreed upon fee, Client will need to provide certain information.  If Client does not complete an organizer, questionnaire or information request that Marcum provides, or if Client does not respond to any other request from Marcum for information, Marcum may use alternative procedures to obtain information necessary for Marcum to prepare and sign Client's tax returns in accordance with applicable law and professional standards.  If Marcum uses these alternative procedures due to Client's failure to respond to a request, Marcum will not be responsible for any error or omission that would have been avoided had Client timely and completely responded to Marcum's request for information.  If any organizer, questionnaire or information request is received in an incomplete format, Marcum may return the items to Client for completion or correction.  The cost of Marcum's tax return preparation may increase as additional time is incurred to calculate or obtain the missing information.  If Client fails to provide all the information necessary to complete the tax returns or work within three (3) weeks from the due

DocuSign Envelope ID: 6EEA88B2-78BA-4228-B93B-462E8DCQF489

date of such tax returns or the agreed-upon completion date of such work, Marcum will not be responsible or liable for the completeness and/or timeliness of such tax returns or work.

2.  <u>Use and Reliance</u>.  Marcum's workpapers and documentation of Services constitute Marcum's confidential and proprietary information.  Marcum's retains information and documentation consistent with its document retention policies.  Client's use of Marcum's Services, deliverables or other deliverables (except for copies of filed tax returns) shall be limited to the item's stated purpose and is for Client's sole internal benefit, use and purposes only.  Marcum's Services, deliverables or other deliverables shall not be relied upon by any third parties in any manner or for any purpose.  Marcum's Services, agreement or relationship hereunder do not create any privity between Marcum and any third party and Marcum expressly disclaims any responsibility, duty or liability to any third parties.  The conclusions expressed in Marcum's Services or deliverables are based upon information and facts presented by or on behalf of Client and may be impacted or inapplicable if the actual facts differ from those presented in any respect.

3.  <u>Express Authorization to Disclose</u>.  Marcum acknowledges that Marcum has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Agreement.  Nothing in this Agreement shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the relevant transaction that is the subject of Marcum's Services as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or IRC sections 6011 and 6111 and related IRS guidance.  Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Agreement.

4.  <u>Disclosure of Transactions and Other Financial Information</u>.  The Internal Revenue Code of 1986, as amended ("IRC") and certain state laws require that Client disclose on or with Client's tax returns certain transactions or other financial information.  For example, Treasury Regulations commonly known as the "Tax Shelter Regulations" require taxpayers to disclose certain types of transactions on a Form 8886 attached to their tax returns and filed with the IRS office of Tax Shelter Analysis.  Failure to disclose could result in substantial penalties, even if the transaction's tax benefits are appropriate and even if there is no understatement of tax.  As Client's professional tax return preparer, Marcum will make every effort to inform Client of its specific disclosure responsibilities.  However, Marcum's tax return preparation services do not include any separate investigation to determine whether there are any transactions or other matters that must be disclosed on Client's tax returns, though Marcum will advise Client if Marcum concludes that any such disclosure is required.  If Client would like Marcum to review any transaction or matter to determine if it must be reported, please contact Marcum to discuss expanding the scope of Marcum's Services.

Unless Client advises Marcum otherwise or specific disclosure information is furnished to Marcum, Marcum will assume that none of the transactions that will be reflected on Client's return were: (1) entered into subject to an agreement that requires Client to keep the transaction confidential, (2) entered into subject to an agreement that the fee Client paid would be contingent upon it receiving the transaction's intended tax benefits, (3) identified in Treasury Regulations as loss transactions that must be disclosed, including loss transactions that pass-through to Client from S Corporations, partnerships and trusts, if applicable, or (4) the same

as or substantially similar to a transaction identified by the IRS as a tax avoidance transaction. The following IRS web address provides an up-to-date list of transactions the IRS has identified as tax avoidance transactions: http://www.irs.gov/Businesses/Corporations/Listed-Transactions or, go to the IRS' home page at www.irs.gov and search for "tax shelters." Marcum may, for a separate fee, assist Client in determining if it has entered into one of these transactions. It is important to note the IRS can identify transactions as tax avoidance transactions subsequent to Client entering into them; in this event Client may be retroactively required to disclose its participation in the transaction.

The other categories of transactions that have to be disclosed would ordinarily be reflected in the information Client provides Marcum to prepare Client's tax return. However, determining whether Client should disclose these transactions may require analysis of information over and above that otherwise necessary to prepare Client's return(s) and could result in additional fees.

5. <u>Foreign Asset Reporting</u>. If Client has a direct or indirect financial interest in, or signature authority over, any foreign financial account, including a bank account, brokerage account, mutual fund, unit trust or other account, Client may be required to prepare and file Form FinCEN 114 (FBAR) if the aggregate value of all foreign financial accounts exceeds $10,000 at any time during the calendar year. Client's signature on the Agreement acknowledges that Client agrees to comply with these reporting requirements. If Client needs assistance with any portion of the foreign financial account reporting requirements, please contact Marcum to ensure the timely filing of these reports. Such services may be subject to additional fees. Account holders who do not comply with these reporting requirements may be subject to civil penalties, criminal penalties or both.

6. <u>Cryptocurrency Accounts</u>. If Client has a direct or indirect financial interest in or signature authority over any cryptocurrency financial accounts, Client may be required to report these transactions on Client's income tax returns. If Client has cryptocurrency accounts, the information needed to complete income tax return(s) will include the name of the account and details of all purposes and sales that occurred during the year. Client's acceptance of the Agreement acknowledges that Client agrees to comply with these reporting requirements.

7. <u>Taxpayer Privileges: Use of Counsel</u>. The parties acknowledge that certain documents and other communications involving and/or disclosed to or by Marcum may be subject to one or more claims of privilege by or on behalf of Client (e.g., the IRC §7525 tax advisory privilege, etc.). Although Client is solely responsible for managing the recognition, establishment and maintenance (e.g., possible waiver) of these possible protections (and for involving legal counsel as it deems necessary), Client will notify Marcum if Client wishes to invoke the confidentiality privilege and Marcum will cooperate with Client's reasonable written instructions regarding same. Client should be aware that should circumstances arise where Client wishes to divulge or have Marcum divulge privileged information to other parties, such disclosure may result in a waiver of the confidentiality privilege. If Client wishes Marcum to divulge privileged information, Client must provide Marcum with advance written authority to make such disclosure. In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. Federal income tax, Client should be aware that the confidentiality privilege under IRC §7525 will not apply to the communications between Marcum and Client.

DocuSign Envelope ID: 6EFEA89B-C78BA-4228-B93B-462E8BCGF489

If Marcum receives a request from a third-party (including, the IRS, a subpoena, summons, discovery demand in litigation) calling for production of privileged information, Marcum will notify Client and follow Client's reasonable instructions regarding any such requests before Marcum discloses such privileged information as may be required under applicable laws or rules. Client agrees to hold Marcum harmless from, and be responsible and liable for Marcum's fees and expenses incurred (including attorneys' fees, court costs, costs of outside advisors and any other costs imposed, whether by way of penalty or otherwise) as a result of Client's assertion of the confidentiality privilege or Client's direction to Marcum to assert the privilege on Client's behalf or if Marcum determines that it is required by applicable law or rules to assert the privilege without having received Client's direction.

8. <u>Scope of Services; Engagement Limitations</u>. Marcum shall be obligated only for Services or deliverables specified in the Agreement, and only for changes in such scope that the parties agree upon in writing. To the extent all specific details of the engagement are not so documented, the parties shall work diligently and in good faith to document them at the request of either party. Unless expressly provided for, Marcum's Services do not include giving testimony or appearing or participating in discovery proceedings, in administrative hearings, in court, or in other legal or regulatory inquiries or proceedings. The Services do not constitute legal or investment advice or a fairness opinion. The Services do not constitute an audit conducted in accordance with auditing standards generally accepted in the United States of America or any other form of assurance and Marcum will not express an opinion or provide any other form of assurance on any financial statements, financial information, including any forecasts or projections, or other forward-looking information. Marcum's Services cannot be relied upon to disclose errors, irregularities or illegal acts, including fraud or defalcations that may exist. Marcum will inform you of any material errors, irregularities or illegal acts that come to our attention, unless they are clearly inconsequential. Marcum recommends that Client retain competent legal counsel and investment and other advisors.

If Marcum is required or requested to provide information or documents to Client or a third-party in connection with a legal or administrative proceeding (including a grand jury investigation) in which Marcum is not a party as a result of Marcum's prior or future services to Client, Marcum shall be entitled to compensation for its time and reimbursement for reasonable out-of-pocket expenditures (including legal fees) in complying with such request or demand. This is not intended, however, to relieve Marcum from its confidentiality obligations under the Agreement or professional standards.

9. <u>Limitation on Oral and Email Communication; Written Advice</u>. Marcum may discuss its views regarding the tax treatment of certain items. Marcum may also provide Client with tax information in the body of an email. Any advice or information provided orally or in the body of an email (as opposed to a memorandum attached to an email) will be based on limited tax research and a limited discussion and analysis of underlying facts. Additional research or a more complete review of the facts could affect our analysis and conclusions. Therefore, it may not be appropriate to proceed with any transaction or tax return reporting solely on the basis of oral or email communications. Client accepts all responsibility for any loss, costs or expenses resulting from Client's decision (i) not to have Marcum perform the research and analysis necessary to reach a more definitive conclusion and (ii) to rely on oral or email communication. This section does not apply to any written tax advice that is delivered to Client as an attachment to an email and which contains the legend described below.

DocuSign Envelope ID: 6EFA88B2-78BA-4228-B82B-462E8BC6F489

Any written tax or professional advice Marcum provides will contain the following legend: "Tax or professional advice contained in or accompanying this document, unless otherwise specifically stated, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to another party any transaction or matter that is contained in or accompanying this document. In addition, unless otherwise specifically stated, any advice provided shall not be deemed a formal tax opinion upon which the addressee can rely." This legend can be removed from the advice; however, detailed, exhaustive analysis may be required under the IRS's rules which could involve significant time and expense. At Client's request, Marcum would be happy to discuss this aspect should it become necessary.

10. <u>Data Access</u>. If Client requests that Marcum access files, documents or other information in a cloud-based or web-accessed hosting service or other third-party system accessed via the internet, including, without limitation iCloud, Dropbox, Google Docs, Google Drive, a data room hosted by a third-party, or a similar service or website (collectively, "Cloud Storage"), Client will confirm with any third-parties assisting with or hosting Cloud Storage that either such third-party or Client (and not Marcum) is responsible for ensuring the confidentiality of all information while utilizing Cloud Storage, complying with all applicable laws relating to Cloud Storage and any information contained in Cloud Storage, providing Marcum access to the information in Cloud Storage, and protecting the information in Cloud Storage from any unauthorized access to the information, including without limitation unauthorized access to the information when in transit to or from Cloud Storage. Client warrants that it has the authority to provide Marcum with access to information in Cloud Storage and that providing Marcum with access to information in Cloud Storage complies with all applicable laws, regulations, or duties owed to third parties. Client will hold Marcum harmless from and against any matters arising from or relating to use of Cloud Storage. In addition, while Marcum has established procedures intended to protect the confidentiality of Client's information, Client acknowledges and agrees that the confidentiality of any communication or material transmitted over the Internet through an unencrypted method cannot be guaranteed and that any breach of confidentiality that occurs thereby shall not be deemed to be a breach of Marcum's confidentiality obligations hereunder.

Client agrees that Confidential Information may be transmitted to Marcum through an information portal or delivery system established by Marcum or on its behalf. Client shall notify Marcum in writing of its employees, representatives, or other agents to be provided access to such portal or system; upon the termination of such status, Client shall immediately notify Marcum in writing. Client is responsible for the acts or omissions of its current and former employees, representatives, or other agents in connection with the transmission of its information.

11. <u>Legal and Regulatory Changes</u>. Marcum may periodically communicate changes in laws, rules or regulations to Client. However, Client has not engaged Marcum, and Marcum does not undertake any obligation, to advise Client of changes in laws, rules, regulations, industry or market conditions, Client's own business practices or other circumstances, except to the extent required by professional standards. The conclusions expressed in Marcum's Services or deliverables are based upon the tax laws as of the date of the relevant Service or deliverable, which are subject to change, and Marcum's conclusions are limited solely to the matters for

which Marcum is engaged.  Marcum will not update its conclusions should the law change unless specifically engaged to do so.

12. <u>External Factors: Standards of Performance</u>.  Marcum performs consulting Services pursuant to the Statements on Standards for Consulting Services promulgated by the American Institute of Certified Public Accountants ("AICPA") and tax Services pursuant to the AICPA Statement on Standards for Tax Services.  Client acknowledges that the Services may involve analysis, judgment and other performance-related matters from time to time in a context where the participation of Client or others is necessary, where answers often are not certain or verifiable in advance and where facts and available information change with time.  Accordingly, evaluation of Marcum's performance of its obligations shall be based solely on its substantial conformance with any standards or specifications expressly set forth in the Agreement and all applicable professional standards, any such nonconformance (and applicability) to be clearly and convincingly shown.  Unless Client and Marcum agree otherwise in writing, Marcum is not responsible for updating any Services or deliverables after completion or the Term.

13. <u>Affiliates</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their permitted successors and assigns, and, except as expressly provided herein, nothing in this Agreement shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.  If Marcum's Services relate to, benefit or otherwise impact Client's parent, affiliates, subsidiaries, or family members or related trusts, partnerships, partners, companies, estates or foundations or other third parties (e.g., advisors and contractors), Client shall be responsible and liable for such third parties and shall ensure their compliance with the Agreement.  If requested by Marcum (including subsequent to completion of the Services), Client shall obtain such parties' written agreement to this Agreement.  Client agrees that Marcum may authorize the Subcontractors to benefit from or share in Marcum's rights hereunder and Client provides Marcum with express consents or commitments as necessary.  Client will also ensure that no Client parent, subsidiary or affiliate or other person or entity which is not a party to the Agreement brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Agreement against Marcum or a Subcontractor.

14. <u>Marcum Personnel</u>.  Marcum strives to maintain a staff of quality, trained professionals.  In recognition of the investment Marcum has made to recruit and develop its personnel, Client agrees to the following.  If any of Marcum's personnel accept a position of employment with Client, its related parties, subsidiaries or affiliates at any time while Marcum performs services for Client or within one (1) year thereafter, irrespective of whether they have worked on Client's account or not, Client agrees to pay Marcum a placement fee equal to the employee's annual compensation in effect on the date such employment was contracted.  Such fee is payable when the employee accepts such a position.  If Client needs a permanent employee and would like assistance in locating this type of individual, Marcum may provide personnel search assistance for a fee to help Client locate and hire a qualified individual subject to applicable professional standards, independence, applicable law and Marcum's policies and procedures.

15. <u>Confidentiality</u>.    "Confidential  Information"  means  non-public  information  marked "confidential" or "proprietary" or information that otherwise should be understood by a

DocuSign Envelope ID: 6EFA88BC-78BA-4228-B93B-462E89CDF489

reasonable person to be confidential in nature, provided by a party or on its behalf. All terms of this Agreement, including but not limited to fee and expense structure, are considered Confidential Information. Confidential Information does not include any information that (i) is rightfully known to the recipient prior to its disclosure; (ii) is released to any other person or entity (including governmental agencies) without restriction; (iii) is independently developed by the recipient without use of or reliance on Confidential Information; or (iv) is or later becomes publicly available without violation of this agreement or may be lawfully obtained by a party from a non-party. The recipient will protect Confidential Information using reasonable measures commensurate with those that the recipient uses to protect its own confidential information. The recipient may use, disclose or maintain Confidential Information to perform the Services, or as permitted in this Agreement, or as requested or directed by the disclosing party, or as required by applicable law, statute, rule, regulation or professional standard. The recipient will not otherwise disclose Confidential Information to third parties without the disclosing party's prior consent. If disclosure is required by law, statute, rule, or regulation (including any subpoena or other similar form of process), or by professional standards, the party to which the request for disclosure is made shall (other than in connection with government audits, investigations, professional reviews or supervisory examinations by regulatory authorities with jurisdiction and without breaching any legal or regulatory requirement) provide the other party with prior written notice (to the extent permissible by law) thereof and, if practicable under the circumstances, allow the other party to seek a restraining order or other appropriate relief. Client acknowledges and agrees that Marcum may consider, use and disclose Confidential Information that comes to Marcum's attention during this Agreement in the context of performing or responding to its professional obligations as Client's independent accountants. Solely to the extent that information obtained from Client is protected health information pursuant to the Health Insurance Portability and Accountability Act, as amended from time to time ("HIPAA"), the Agreement shall be deemed to incorporate all terms that HIPAA requires to be included in a business associate contract relating to such information.

16. <u>Third-Party Service Providers</u>. Marcum may use, draw on the resources of or subcontract the Services to its affiliates, subsidiaries and Marcum-related parties and/or third parties, including contractors, subcontractors, and cloud-based service providers, in each case within or outside of the United States (the "Subcontractors") in connection with the provision of Services and/or for internal, administrative and/or regulatory compliance purposes. Client agrees that Marcum may provide confidential and other information Marcum receives in connection with the Agreement to Subcontractors for such purposes. Marcum maintains internal policies, procedures and safeguards to protect the confidentiality of Client's Confidential Information and Marcum will remain responsible to Client for the protection of such information and Services performed by such Subcontractors as provided herein. Notwithstanding anything to the contrary in the Agreement, Client agrees that Marcum may disclose Client's current and/or prior years' tax return information to Subcontractors within or outside the United States as described herein or in the Agreement. Client authorizes Marcum to participate in discussions with and to disclose Client's information, including tax return information, to Client's agents, representatives, administrators or professional advisors (including accountants, attorneys, financial and other professional advisors), their respective officers, directors or employees, and other parties as Client may direct.

17. <u>Consents to Disclose and Use Client Information.</u> Notwithstanding any other provision of this Agreement, Marcum and the Subcontractors may use Confidential Information received

DocuSign Envelope ID: 6EFA83BC-78BA-4228-B93B-462E8BC0F489

hereunder, including tax return information, to develop, enhance, modify and improve technologies, tools, methodologies, services and offerings, and/or for development or performance of data analysis or other insight generation. Information developed in connection with these purposes may be used or disclosed to Client or current or prospective clients to provide them services or offerings. Marcum and the Subcontractors will not use or disclose Confidential Information in a way that would permit Client to be identified by third parties without Client's consent. With respect to tax return information, Client may request in writing a more limited use and disclosure than the foregoing. The foregoing consents are valid until further notice by Client.

18. <u>Background Checks</u>. Marcum may perform background checks on Client which may require out-of-pocket costs and expenses. The Agreement and Marcum's performance of Services are expressly contingent upon the satisfactory completion of Marcum's investigatory procedures and Marcum may decline to accept or withdraw from any engagement or the Client relationship if Marcum becomes aware of adverse information. The results of such background checks and other investigatory procedures are submitted to, reviewed by and subject to, Marcum's Client Acceptance Committee.

19. <u>Business Risk Allocations</u>. Client agrees that Marcum's entire liability, whether as a result of breach of contract, tort (including negligence) or otherwise, regardless of the theory of liability asserted, arising from or relating to the Agreement, Marcum's Services, deliverables or other work product, shall in no event exceed the total fees paid to Marcum for the particular Service giving rise to liability. In no event shall Marcum be liable for any special, indirect, consequential, incidental, punitive or exemplary damages or loss (or any lost profits, taxes, interest, tax penalties, savings or business opportunity). Also, Marcum shall have no liability arising from or relating to any third party hardware, software, information or materials selected or supplied by Client. This shall be Client's exclusive remedy.

Because of the importance of the information that Client provides with respect to Marcum's ability to perform the Services, Client releases Marcum, its partners, principals, personnel and Subcontractors from any Losses (defined below) arising from or relating to the Services which are attributable to information provided to Marcum in connection with the Services that is not complete, accurate or current.

Client agrees to indemnify and hold harmless Marcum, its partners, principals, personnel and Subcontractors from and against all third party claims, losses, liabilities, damages, judgments, demands, actions (including court, defense and other costs, expenses, attorneys' and advisors' fees or other costs incurred by penalty or otherwise) (collectively, "Losses") arising from or relating to this Agreement, Marcum's Services, deliverables or engagement. Client also agrees to indemnify and hold harmless Marcum, its partners, principals, personnel and Subcontractors from and against any Losses arising from or relating to Client's misrepresentations, or false, inaccurate or incomplete information provided to Marcum in connection with the Services, or a third party's access to, use of or reliance on Marcum's Services or deliverables. This Section 19 shall survive termination, completion or expiration of the Agreement or Marcum's Services.

20. **<u>Waiver of Jury Trial; Jurisdiction and Venue; Governing Law</u>. AS A MATERIAL INDUCEMENT FOR MARCUM TO ACCEPT THIS AGREEMENT AND/OR PERFORM SERVICES TO CLIENT IN ACCORDANCE WITH THIS AGREEMENT:**

**Marcum and Client knowingly, voluntarily and intentionally waive any right either may have to a trial by jury with respect to any litigation based hereon, or arising out of, under or in connection with the Agreement, the Services or deliverables, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of either party. Marcum and Client each expressly agree and acknowledge that the Supreme Court of the State of New York, County of New York, Commercial Division, and the United States District Court for the Southern District of New York, Manhattan Courthouse, shall each have exclusive and sole jurisdiction and venue for any respective state or federal actions arising from, relating to or in connection with the Agreement, or any course of conduct, course of dealing, statement or actions of either party. If and only if the action does not satisfy the damage prerequisite for jurisdiction in the County of New York Commercial Division, then any such state court action shall be brought in the County of Suffolk, Commercial Division. No action or claim, regardless of form, arising from or relating to the Agreement or Services may be brought by Client more than one (1) year after the earlier of the Term Date or the date that the conduct, Service or deliverables giving rise to the liability or claim under the Agreement was provided.**

**The Agreement, any course of conduct, course of dealing or action of Marcum or Client and the parties' relationship shall be governed by, construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any choice or conflict of law principles, provisions or rules relating to conflicts of laws that would require the laws of another jurisdiction to apply. In any litigation brought by either Marcum or Client, the prevailing party shall be entitled to an award of its reasonable attorneys' fees and costs incurred, including through all appeals.**

21. <u>Term; Termination.</u>  Marcum's engagement ends on the earlier of termination (including without limitation, Marcum's resignation or declining to issue a deliverable) or Marcum's delivery of the last deliverable required hereunder ("Term Date"). Either party may terminate the Agreement upon prior written notice to the other party. Marcum may terminate the Agreement at any time (including instances where in Marcum's judgment: Marcum's independence has been or may be impaired; Marcum can no longer rely on the integrity of management; or there is or may be a violation of applicable law, regulations or standards, a conflict of interest, or damage to Marcum's reputation), subject in any case to Marcum's right to payment for all fees, direct and indirect charges including costs or expenses incurred through the date of termination or resignation or thereafter as circumstances and the Agreement may require, plus applicable interest, costs, fees and attorney's fees. If Marcum performed any Services prior to the parties executing the Agreement, the Agreement shall be effective as of the date Marcum began performing those Services.

22. <u>General.</u>  Each party is an independent contractor with respect to the other and Marcum is not a fiduciary, agent, trustee or joint venture of Client. Marcum shall not perform any obligation of Client, whether regulatory or contractual, nor shall Marcum negotiate on Client's behalf. Marcum shall not be responsible or liable for any delay or failure in performance due to circumstances beyond its reasonable control. The Services are for the sole internal use and benefit of Client and no other person or entity may benefit from, rely on or enforce this Agreement. There are no third-party beneficiaries under the Agreement. Except to the extent required by applicable law, Client shall not make any public announcements in respect of the

DocuSign Envelope ID: 6EEAB9BC-78BA-4228-B93B-462E9CCF489

Agreement (including its terms) or Marcum's Services without Marcum's prior written consent.  Marcum is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs.  Depending on the nature of the services Marcum provides, non-CPA owners may be involved in performing the Services.  Client agrees Marcum may refer to Client's name and logo in experience citations for marketing purposes with other clients and prospective clients and in recruitment materials.  Client may not assign or transfer the Agreement, or any rights, licenses, obligations, claims or proceeds from claims arising out of or in any way relating to this Agreement, any Services provided hereunder, or any fees for Services to anyone, by operation of law or otherwise without Marcum's prior written consent and any assignment without consent shall be void and invalid.  Marcum may assign this Agreement, including all the rights and benefits hereunder, to any affiliate or to an acquirer of or successor to its business, or purchaser of all or substantially all of its assets, stock or interests, or in the event of a reorganization or restructuring, and by Client's signature hereto, Client consents to such assignment and the transfer of Client's files and information.  If any provision (or any part thereof) of this Agreement is found to be unenforceable or invalid, the remainder of such provision (or any part thereof) shall remain enforceable to the maximum extent permitted by law.

DocuSign Envelope ID: 6EEA98B9-78BA-4228-B93B-462E99C0F489

**Attachment B**

| |
|---|
| **LIST OF TAX RETURNS INCLUDED IN THIS ENGAGEMENT** |

**Rule of Law Society IV, Inc.**
Federal Form 990
New York Form CHAR500

## **Exhibit B**

# GWGOPNZ LIMITED *(8112518) Registered*

*Last updated on 02 Aug 2022*

*To maintain this company* *log on here*

Company Summary

| | |
|---|---|
| Company number: | 8112518 |
| NZBN: | 9429048606028 |
| Incorporation Date: | 03 Sep 2020 |
| Company Status: | Registered |
| Entity type: | NZ Limited Company |
| Constitution filed: | No |
| AR filing month: | August , last filed on 02 Aug 2022 |
| Ultimate holding company | No |
| Company addresses: | **Registered Office** |
| | 154a Long Drive, St Heliers, |
| | Auckland, 1071 , New Zealand |
| | **Address for service** |
| | 154a Long Drive, St Heliers, |
| | Auckland, 1071 , New Zealand |
| | View all addresses |
| Directors | Showing 1 of 1 directors |
| | Xuebing WANG |
| | 154a Long Drive,st Heliers, |
| | Auckland, 1071 , New Zealand |
| Company record link: | https://app.companiesoffice.govt.nz/co/8112518 |

Additional NZBN Information

Trading
Name(s):

Phone
Number(s):

Email
Address(es):

Website(s):

Industry            K624050 Investment
Classification(s)  company operation

View all NZBN details

Directors (1)

Full legal name:              Xuebing WANG

Residential Address:          154a Long Drive,st Heliers, Auckland, 1071 , New
Zealand

Appointment Date:             03 Sep 2020

Consent:                      View Consent Form

Shareholdings (1)

Total Number of Shares:            100000

Extensive Shareholding:            No

Shareholders in Allocation:

Allocation 1:      100000 shares (100.00%)

                   GWGNZ LIMITED

                   154a Long Drive, St Heliers, Auckland,
                   1071 , New Zealand

Addresses

| | |
|---|---|
| Registered office address: | 154a Long Drive, St Heliers, Auckland, 1071 , New Zealand |
| Address for service: | 154a Long Drive, St Heliers, Auckland, 1071 , New Zealand |

There are no Other Addresses

Historic data for addresses                                        Show History

PPSR Search

A search can be conducted for GWGOPNZ LIMITED on the Personal Property Securities Register by selecting this link.

NZBN

GST Number(s):

Australian Business Number (ABN):

Contact Details

Phone Number(s):

Email Address(es):

Office Address:

Delivery Address:

Postal Address:

Invoice Address:

Trading Details

Trading Name(s):

Website(s):

Trading Area(s):

Industry Classification(s):          K624050 Investment company operation

Documents (5)

| Date | Document Type | Size |
|------|---------------|------|
| 02 Aug 2022 09:41 | Annual Return Filed | |
| 03 Aug 2021 14:55 | Annual Return Filed | |
| 03 Sep 2020 10:32 | New Company Incorporation | |
| 03 Sep 2020 10:32 | Director Consent Form | |
| | Director Consent Form | 418kb |
| 03 Sep 2020 10:32 | Shareholder Consent Form | |
| | Shareholder Consent Form | 299kb |

*Generated on Friday, 07 July 2023 13:32:17 NZST*