## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | |
|---|---|
| In re:<br><br>HO WAN KWOK,<br><br>               Debtor. | Chapter 11<br><br>Case No: 22-50073 (JAM) |

### DECLARATION OF AARON A. ROMNEY REGARDING MOTION TO WITHDRAW AS COUNSEL FOR HUDSON DIAMOND NY, LLC

I, AARON A. ROMNEY, hereby declare:

1. I am a partner and shareholder of the law firm of Zeisler & Zeisler, P.C., counsel in the above-captioned bankruptcy case (the "Bankruptcy Case") for Mei Guo ( "Ms. Guo") and certain entities that Ms. Guo controls.

2. I submit this Declaration in response to the request made by the office of the United States Trustee for Region 2.

3. I make this Declaration based upon my personal knowledge of the facts asserted herein under penalty of perjury.

4. On May 18, 2023, the Trustee filed his Second Omnibus Motion to Compel and for Contempt (the "Motion for Contempt"). Doc. No. 1805. Paragraph twenty of the Motion for Contempt states: "Hudson Diamond Holding is a Delaware limited liability company purportedly owned by Mei Guo. Hudson Diamond NY is a subsidiary of Hudson Diamond Holding. Both entities list 162 East 64th Street, New York, New York as a corporate mailing address. Both Yvette Wang and Max Krasner, acting as employees and/or agents of the Debtor, served as officers and/or authorized signatories of both Hudson Diamond NY and Hudson Diamond Holding."

5.     I first read the Motion for Contempt on May 23, 2023. In addition to the statements in the Motion for Contempt associating Hudson Diamond Holding, LLC ("Holding") and Hudson Diamond NY, LLC ("New York") with Ms. Guo, I had received and read an operating agreement for Holding that identified Ms. Guo as its sole member. I also received and reviewed articles of organization for New York that did not identify any members of New York but did identify Hodgson Russ LLP ("Hodgson Russ") as the party that filed New York's articles of organization with the New York Department of State.

6.     On May 30, 2023, Attorney Lee Vartan and I conducted a telephone conference with Ms. Guo to discuss the Motion for Contempt and the subpoenas directed to Holding and New York that were attached thereto (the "Subpoenas"). As a result of that call, Ms. Guo directed me and Attorney Vartan to attempt to negotiate a brief extension of time for Holding and New York to respond to the Subpoenas.

7.     Attorney Vartan spoke with the Trustee's counsel, Avi Luft, on June 1, 2023, and the two of them agreed to a brief adjournment of the hearing on the Motion for Contempt with respect to Holding and New York in exchange for Holding's and New York's agreement to comply with the Subpoenas on or before June 15, 2023. Based on what I understood to be the terms of that agreement, I filed appearances on behalf of Holding and New York and a Motion to Adjourn the hearing on the Motion for Contempt with respect to Holding and New York.

8.     After June 1, 2023, I engaged in numerous discussions with Ms. Guo with respect to Holding's and New York's responses to the Subpoenas. Ms. Guo identified Yvette Wang and Max Krasner as the individuals who would have handled any business or affairs on Holding's and New York's behalf. Ms. Wang is currently incarcerated. Further, Ms. Guo indicated to me

that she attempted to contact Mr. Krasner in connection with the Subpoenas but he did not answer or return her calls.

9. During our conversations in connection with the Subpoenas, Ms. Guo advised me that she believed that either Holding or New York previously had a bank account at Capital One, but the account was closed. Attorney Vartan and I requested that Ms. Guo go to Capital One to request all statements concerning that account. Ms. Guo advised Attorney Vartan and me that she made numerous trips to a Capital One branch to request statements for any/all accounts in the name of Holding or New York. Ms. Guo further advised me and Attorney Vartan that Capital One confirmed to her that New York previously had an account at Capital One, but the account was closed and Capital One could not provide account statements to Ms. Guo because her name was not on the account.

10. On June 8, 2023, Attorney Vartan contacted Mark Harmon, an attorney at Hodgson Russ who appears to have done work for New York. Via email, Attorney Harmon declined to speak with Attorney Vartan and instead referred us to Hodgson Russ's general counsel, Kevin Kearney. Attorney Kearney indicated to Attorney Vartan and me that he was out of the office until the following Monday, June 12, 2023, but he would be happy to speak to us when he returned.

11. Attorney Vartan and I called Attorney Kearney in the early afternoon on June 12, 2023. During that call, Attorney Kearney advised us that he did not believe Hodgson Russ performed any work for Holding or had any information concerning Holding. Attorney Kearney further stated that Hodgson Russ's records indicated that the Debtor's son, Mileson Guo, not Ms. Guo or Holding, was the sole member of New York.

12. Given that my direction to appear and act on behalf of New York was from Ms. Guo, not Mileson Guo, and because I have no relationship with and have never spoken to Mileson Guo, immediately after Attorney Kearney informed me of his belief that Mileson Guo was the sole member of New York I first sought the advice of Zeisler & Zeisler, P.C's general counsel and then I contacted the Trustee's counsel, Avi Luft, to inform him of my belief that I mistakenly believed Ms. Guo controlled New York when I appeared and entered into a consensual order adjourning the hearing on the Motion for Contempt on New York's behalf. I further stated my intention to move to withdraw my appearance on New York's behalf, based on my belief that I had mistakenly appeared on New York's behalf at the direction of an individual who lacked the authority to direct me to do so.

13. On Sunday June 25, 2023, the Chapter 11 Trustee's counsel, Avi Luft, sent an email to Attorney Vartan and me inquiring whether we were aware of a document, which had been attached as Exhibit T ("Exhibit T") to his declaration in support of the Motion for Contempt (Doc. No. 1805-46). Exhibit T is a document that appears to be signed by Ms. Guo as Holding's sole member, which, according to the document, is New York's sole member. Ms. Guo has informed me that the signature on Exhibit T appears to be hers and she believes the document is authentic, but she is not 100% sure because it is a very simple document and executing it is not something that would stand in her memory years later. In addition, Ms. Guo's execution of Exhibit T is consistent with her original understanding and representations to me that she controls New York.

14. On Wednesday, June 28, 2023, Attorney Vartan emailed Exhibit T to Attorney Kearney and asked him if he would be willing to discuss it with me and Attorney Vartan.

In response, also on June 28, 2023, Attorney Kearney stated: "Lee, all I can tell you is that it was produced, and it looks like a document that we prepared. I have reached out to the lawyer who most likely would know something about the document but have not heard back. If I do I will give you a call."

15. On July 5, 2023, I sent an email to Attorney Kearney stating as follows:

Kevin: I hope you had a nice holiday. Have you spoken with the attorney who you believe is the person most likely to know something about the attached document? It is important that we ascertain as much information about this as possible.

When Lee and I spoke with you on or about June 12, you told us that the only operating agreement in your files for Hudson Diamond NY indicated that Mr. Kwok's son was the sole member of Hudson Diamond NY. Last week you indicated that you believe your firm prepared the attached, which indicates that Hudson Diamond Holdings, LLC was the sole member of Hudson Diamond NY, and that Mei Guo is the sole member of Hudson Diamond Holdings, LLC. It is important that I confirm whether your office, in fact, prepared the attached, and, if so, why it did so, in light of the fact that you believed that Mr. Kwok's son was the sole member of Hudson Diamond NY.

I would also like copies of all documents that your firm has concerning Hudson Diamond Holdings and Hudson Diamond NY, including, but not necessarily limited to, all documents that your firm produced to the Chapter 11 Trustee concerning these entities.

16. On July 6, 2023, Attorney Kearney responded to my July 5, 2023, email as follows:

Aaron, it is unclear to me how much information I can provide to you, given the constraints of RPC 1.6. I am comfortable telling you that the document you attached was prepared at the request of Max Krasner.

I confess I do not have any notes of our earlier conversations, but I question whether I ever told you that Mr. Kwok's son was the sole member of Hudson Diamond NY LLC. He did sign the operating agreement as an officer of Hudson Diamond Holdings Inc., and as the President of Hudson Diamond NY LLC. The documents indicate that Holdings was the member, not Qiang Guo. But I do not know if he was the sole member of Holdings, an entity we did not represent, and I have no information as to how or when Mei Guo became the sole member of that Entity, as reflected in the document you sent me.. As I advised earlier, our engagement letter concerning the formation of Hudson Diamond NY LLC was addressed to Yvette Wang.

I will continue to research and consider if either of your clients can appropriately authorize us to provide confidential information to you on matters relating to Hudson Diamond NY LLC.

17. Less than thirty minutes later, I responded to Attorney Kearney as follows:

Kevin: You very clearly told Lee and I that Qiang Guo was the sole member of Hudson Diamond NY. I don't know what Hudson Diamond Holdings, Inc. is, but I do know that Mei Guo is the sole member of Hudson Diamond Holdings, LLC, see attached, and had I been told that Hudson Diamond Inc. was I would have taken measures to ascertain who owns/controls Hudson Diamond, Inc. Instead, after our call, I filed a motion to withdraw my appearance on behalf of New York based on your statement that Qiang Guo, not Mei Guo or Hudson Diamond Holdings, LLC, was the sole member of New York.

Before we spoke, I believed that Mei Guo, either directly or through Holdings, was the sole member of New York. As of when we spoke, you did not know who Qiang Guo was. I informed you that was the Debtor's son, who I did not represent, and that since you were telling me that Qiang Guo was the sole member of New York, we had nothing further to discuss because Mei Guo and I are not entitled to files that belong to Qiang Guo. I asked you to confirm whether Hodgson Russ had a file for Hudson Diamond Holdings, LLC, and the following day you confirmed that Hodgson Russ did not have a file for Hudson Diamond Holdings, LLC (or Hudson Diamond Holdings, Inc.).

18. A copy of the email chain between me, Attorney Vartan and Attorney Kearney is attached hereto as Exhibit A.

19. To date, Hodgson Russ/Attorney Kearney have not provided any explanation to me for why i) Hodgson Russ prepared an operating agreement for New York that Attorney Kearney originally claimed was signed by Mileson Guo as New York's sole member, ii) Attorney Kearney now claims that same agreement was signed by Mileson Guo as the president of a BVI entity known as Hudson Diamond Holding, Inc. (as the sole member of New York), rather than in his individual capacity, or iii) Hodgson Russ prepared a subsequent resolution on behalf of New York that appears to be signed by Ms. Guo as the sole member of Holding (as the sole member of New York).

20. I represent Ms. Guo. Ms. Guo has authorized me to represent any/all entities that she controls. Ms. Guo, Attorney Vartan and I have done everything within our control to locate and produce information concerning Holding and New York and to ascertain whether Ms. Guo controls New York. We have produced the few documents we were able to locate concerning those entities. Max Krasner will not communicate with Ms. Guo and Capital One and Hodgson Russ will not provide us with information concerning Holding or New York other than the information I have stated herein.

21. I do not have any reason to believe that New York or Holding have any assets or the ability to produce additional information.

22. I moved to withdraw my appearance on behalf of New York (but not Holding) because the general counsel of a reputable law firm told me that Ms. Guo was not the direct or indirect member of New York. If that is correct, I do not have authority from New York to represent it. If Hodgson Russ is incorrect and Ms. Guo does control New York through Holding, then I am authorized to represent New York and I would withdraw my motion to withdraw my appearance on behalf of New York.

23. Unfortunately, despite an extraordinarily diligent investigation, I am unable to ascertain which of these two scenarios are correct. That being the case, I do not believe I can continue to represent New York.

24. The United States Trustee's office has also inquired why Attorney Vartan has not filed an appearance on behalf of Holding or New York. The answer, putting aside the issues described herein concerning New York that arose after my appearance, is because Attorney Vartan is not admitted in the District of Connecticut and it was our understanding that to file an appearance on behalf of Holding and New York would require an additional *pro hac vice*

7

motion, which did not strike us as prudent or efficient given that Holding and New York are third-parties that have a very limited roll in this bankruptcy case.

25. Pursuant to 28 U.S.C. § 1746, I declare, certify, verify and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 7th day of July, 2023

Aaron A. Romney (ct28114)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th floor
Bridgeport, Connecticut 06604
(203) 368-4234
aromney@zeislaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2023, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Aaron A. Romney*
Aaron A. Romney