UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                          *   Case No. 22-50073 (JAM)
                               *
HO WAN KWOK and GENEVER        *
 HOLDINGS CORPORATION,         *
                               *
            Debtor.            *

LUC A. DESPINS,                *   Adv. Proc No. 23-05013
                               *
                               *
            Plaintiff,         *   Bridgeport, Connecticut
      v.                       *   June 27, 2023
                               *
HCHK TECHNOLOGIES, et al.,     *
                               *
            Defendants.        *
                               *
* * * * * * * * * * * * * * *  *

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

Chapter 11 Trustee:           LUC DESPINS, ESQ.
                              Paul Hastings
                              200 Park Avenue
                              New York, NY 10166


For Luc A. Despins,           PATRICK LINSEY, ESQ.
   Chapter 11 Trustee:        Neubert Pepe & Montieth, PC
                              195 Church Street
                              New Haven, CT  06510

                              NICK BASSETT, ESQ.
                              Paul Hastings
                              200 Park Avenue
                              New York, NY  10166


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

```
APPEARANCES:  (Cont'd.)

For the Assignee,          RYAN JARKECK, ESQ.
 Hoffmeister:             Cole Schotz
                          1335 Avenue of the Americas
                          19th Floor
                          New York, NY  10019


For G-News Operations, LLC:  GREGORY F. ARCARO, ESQ.
                          Grafstein & Arcaro, LCC
                          114 W. Main Street, Suite 105
                          New Britain, CT 06051


For 1332156 B.C. Ltd:     JOSEPH M. PASTORE, ESQ.
                          Pastore LLC
                          4 High Ridge Park
                          Stamford, CT  06905
```

1          (Proceedings commenced at 4:08 p.m.)

2               THE CLERK:  23-05013.  Despins v. HCHK Technology,

3     Incorporated, et al.

4               THE COURT:  Good afternoon.  If we could have

5     appearances for the record, starting with the Chapter 11

6     Trustee, please.

7               MR. DESPINS:  Good afternoon, Your Honor.  Luc

8     Despins, Chapter 11 Trustee.

9               MR. BASSETT:  Good afternoon, Your Honor.  Nick

10    Bassett, from Paul Hastings, on behalf of the Chapter 11

11    Trustee.

12              MR. LINSEY:  Good afternoon again, Your Honor.

13    Patrick Linsey.  Connecticut counsel for the trustee.

14              MR. JARECK:  Good afternoon, Your Honor.  Ryan

15    Jareck from Cole Schotz, on behalf of Mr. Hoffmeister, the

16    assignee in the New York State Court assignment proceedings.

17              THE COURT:  Good afternoon.

18              MR. JARECK:  Good afternoon.

19              MR. ARCARO:  And, Your Honor.  Good afternoon.

20    Gregory Arcaro.  I just filed my appearance on behalf of

21    G-News Operations, LLC.  It's not a party, but the subject

22    of some outstanding discovery.

23              THE COURT:  Okay.  Thank you.

24              I just -- I just need a moment.  I don't have a

25    screen, so you'll have to bear with me for a moment.

1      (Pause)

2           THE COURT:  Okay, Trustee Despins, this is your

3      request for a status conference?

4           MR. DESPINS:  It is, Your Honor.

5           THE COURT:  And it's a continued status conference

6      that was started yesterday and continued to this afternoon.

7      So, please, proceed.

8           MR. DESPINS:  Thank you, Your Honor.  For the

9      record, Luc Despins, Chapter 11 Trustee.

10          Your Honor, I thought it was important to give

11     Your Honor a bit of background.  I know you have a lot of

12     background already because you reviewed the complaint and

13     you entered an order and you're generally familiar with

14     what's going on, but I wanted to talk about what we filed,

15     which is the motion to approve the settlement.  Just to be

16     clear, today, we're not asking the Court to do anything, so

17     it's just by way of background.

18          And so we filed this motion last Friday to approve

19     a settlement with the assignee, Mr. Hoffmeister, and the

20     structure of that settlement is really in three -- three

21     phases.

22          So the first one, which was important to us, was

23     that of course none of this happens until the Court enters

24     an order approving the settlement, but the first -- the

25     first step is for the trust -- the assignee to transfer the

1    trustee the funds that it holds -- that he holds, and that's

2    about $38 million and change.

3            The second part of the first phase is to -- for

4    the assignee to transfer to us, non-privileged document of

5    this entity, HCHK.

6            And the next step is that a trustee has agreed not

7    to take a position with respect to the underlying

8    complaints.  So that always -- can't forget there's an

9    underlying complaint where we're alleging that HCHK is the

10   alter ego of the debtor, or that the debtor equitably owns

11   HCHK or its assets.  So --

12           THE COURT:  I think you just said -- I think you

13   may have misspoke, or I misheard you.  You mean the assignee

14   won't take a position.

15           MR. DESPINS:  Correct.  The assignee.

16           THE COURT:  I think you said the trustee.

17           MR. DESPINS:  No, I'm sorry.  The assignee will

18   not take -- I apologize.

19           THE COURT:  That's okay.  I might have heard you

20   wrong, but I just --

21           MR. DESPINS:  No, no, I am sure you did.  So the

22   assignee won't take a position on the underlying litigation.

23           And the next point is that -- and that's what the

24   assignee negotiated for, that the settlement is without

25   prejudice to people that claim an interest in the assets

1    being transferred to us to say, wait a minute, Judge

2    Manning, this is my asset, or I have a special right into

3    that asset.  Or somehow, you know, this transaction should

4    not happen.

5             I think the issue though will be that the

6    assignee, under the assignment agreement, under this

7    assignment for the benefit of the creditor, was assigned all

8    the rights and interest of these companies.

9             So I don't know who would have standing to come in

10   and say, Judge Manning, I have a special right to those

11   assets.  We'll see that later.  But clearly, under this

12   assignment for the benefit of a creditor, there was a

13   document signed by these companies with the assignee saying,

14   we're transferring to you all the rights of the companies.

15            So from a standing point of view, we'll have to

16   see how that plays out in terms standing of other parties to

17   come in and complain.

18            But he negotiated for that and it was important to

19   them that their rights are not being prejudiced to come into

20   this court to say I have a special interest into those

21   assets.  I -- personally as the trustee, I don't see that,

22   but they're not precluded, at this stage, from doing that,

23   and that's very important.  So that's still in the -- in the

24   first stage of the settlement.

25            And Stage 2, which also is not going to happen

1    until the Court enters an order approving the settlement, is

2    that various things need to happen in New York, both from a

3    practical point of view in a sense that there are assets for

4    apparently expensive furniture, but also video equipment

5    that is worth a lot of money, apparently, that is all in a

6    -- located -- an office that's located in New York, and

7    those assets need to be dealt with, meaning, one, protected.

8    Two, moved out of there because the rent must be -- it's

9    fairly high because it's New York City.  Moved in -- moved

10   to a location that would be cheaper, such as a warehouse

11   somewhere and eventually sold.

12        But the assignee, you know, needs to deal with

13   these immediate issues.  For example, closing down the shop.

14   To be honest with you, I'm not equipped to do that short

15   term.  I could, but it would not be cost efficient for the

16   trustee to deal with that.

17        So there are issues that need to be dealt with

18   short term with this equipment, protecting it, eventually

19   selling it, and we've agreed that the assignee could proceed

20   with some of that.  Not selling it, but certainly protecting

21   it, warehousing it and all that, with the trustee's approval

22   and supervision.  Meaning, they will not -- they are not

23   authorized -- again, nobody's authorized to do anything at

24   this point until you enter a settlement order, but they

25   would not be authorized to do anything without the trustee

1    consenting to it.  So I will be involved in supervising what

2    they are planning to do, where they're going to move the

3    equipment, et cetera, et cetera, and the furniture.

4            And then if and when these assets become property

5    of the estate, as we hope they will under the underlying

6    litigation, then Your Honor will be presented with a motion

7    to sell those assets, or to dispose of them, and it will be

8    under your -- the Court's jurisdiction.

9            But there are mechanical issues that need to be

10   dealt with to protect these assets, to move these assets, et

11   cetera, et cetera.  So under the settlement agreement, it

12   will be contemplated that these would take place after the

13   Court approves the first stage of the settlement.

14           And then the assignee needs to appear in front of

15   the New York Court to be recognized as an assignee, to have

16   all sorts of procedural matters dealt with.  For example,

17   the consolidation of the three or four cases.  I forget if

18   it was three or four.  I think it's four cases, et cetera.

19   But it's very clear in the settlement agreement.  It's

20   solely for the purpose of implementing this settlement that

21   the Court would eventually approve.

22           So these things need to approve -- need to proceed

23   as well.  And it's very clear that the New York court, any

24   relief granted there to the assignee is not binding on Your

25   Honor.  The assignee has agreed to that.

1          The injunction, the TRO would not be modified

2     other than to allow it strictly approved under the

3     settlement agreement that also needs to be approved by me on

4     an individual basis.  So therefore, the estate is protected,

5     your jurisdiction is protected.

6          And then the last stage is, as I said, there's an

7     underlying complaint for alter ego or equitable ownership,

8     and we believe that that complaint -- I don't want to be

9     cavalier about this, but we believe the complaint should be

10    granted.  I think there's tons of evidence.

11         Of all the satellite Kwok entities we've come

12    across, this is probably the most compelling one in terms of

13    all the transfers that were made by this entity to the

14    debtor's bodyguard, to the lawyers, to Mr. Aaron Mitchell,

15    to pay for an airplane for the son.  At least the plane is

16    in the UK.  To pay for maintenance of all sorts -- so the

17    evidence, we believe on the alter ego and equitable

18    ownership, is overwhelm -- over a mountain -- of course,

19    Your Honor will decide that, where we're right or not, what

20    we believe is compelling.

21         So the last stage is we would come back to Your

22    Honor and file a dispositive motion, which may be a default

23    motion in a sense that if the trustee does not oppose, as he

24    is bound to do, I don't see who is going to answer that

25    complaint that has standing to do so because, again, he was

1    assigned the rights of these companies.

2            So that will be the last stage of the -- of the

3    settlement process.  There are some payments, okay, so I

4    want to be very up front with Your Honor, that are

5    contemplated to be made as part of that final stage for

6    professionals and for the assignee.

7            Under New York law, an assignee can receive

8    compensation of up to 5 percent of the amount distributed.

9    Here, the amount that -- and negotiated with him was much,

10   much less than that.  It's $550,000.  And there are payment

11   of professional fees as well that would be contemplated.

12           But, Your Honor, you're not approving any of that

13   now.  That would be done when the settlement agreement is

14   approved, and we would take you through why this is

15   reasonable.

16           To be clear, I have not yet obtained the

17   underlying documentation that supports all these fee

18   requests.  My job is to review that and report to Your Honor

19   when we're before Your Honor on that settlement motion, and

20   I intend to do that.  And so they will provide me with all

21   that documentation and we will review that and provide that

22   to the Court and provide our recommendations on that.

23           But I would say that that was an element of the

24   deal, and to be perfectly blunt and practical about this,

25   you know -- I guess you'll -- we'll talk about this maybe on

1    Thursday -- how expensive it is to litigate, to have a trial

2    or a mini trial on these issues.

3          If we can avoid that, we're saving the estate a

4    lot of money.  So I don't want to be too crude about that,

5    but from my point of view, there is a huge benefit to the

6    estate in cutting a deal here and making these payments.

7    But again, we're not asking you to approve that today, but I

8    wanted to flag that for Your Honor.

9          And there's a -- we would also modify the bar

10   date.  Again, if Your Honor grants the ultimate relief,

11   which is that this is the alter ego or -- of the debtor, or

12   the debtor equitably owns these assets or the companies, we

13   would modify the bar date to allow creditors of these

14   entities to file claims because they were not part of our

15   process yet.  That's also covered.

16         And then there are two other provisions I want to

17   mention briefly, because I -- again, I want to make sure

18   that I'm very open with the Court on what this entails.

19         And again, we're not seeking approval of that

20   today, but the assignee raised a very basic question which

21   is, okay, I transfer all the funds to you guys, and that's

22   all good, but what if I get sued for doing this?  Should I

23   be entitled to indemnification?  Oh, no, I got -- don't want

24   to do an indemnification.  That's too potentially expensive,

25   et cetera.

1          So the best way we had of dealing with that was to

2    provide for exculpation in channeling injunctions, and we

3    will -- again, Your Honor, I'm not asking you to approve any

4    of this now, but we will take Your Honor through why that

5    makes sense and why this is a good thing to do.  But it

6    avoids satellite litigation all over the place, which would

7    not be to the benefit of the estate.

8          And -- because, when you think about it, if we're

9    correct that these assets are the assets of the debtor, or

10   the debtor equitably owns them, all of this is all related

11   to the administration of the case.

12         Yes, it is unusual.  I'll be very candid with you.

13   I -- first of all, first admission is I've rarely dealt with

14   what we call an ABC, an Assignment for the Benefit of the

15   Creditors, and how that -- the interplay between a

16   bankruptcy case and that.  But we believe that that relief

17   is appropriate, and we will ask the Court at that point to

18   consider that.

19         And last point I want to make is that, they said,

20   well, what if you lose?  What if Judge Manning determines

21   that, no, HCHK is not the alter ego of the debtor, or is not

22   -- the assets or the equity are not equitably owned by the

23   debtor?  You're going to have to return the money.  And we

24   said, okay, if there is a final order that provides for

25   that, meaning final and non-appealable order, then we will

1    return the funds and this will have been all for naught.

2          Again, I don't want to be cavalier about this, but

3    I believe that here, this is probably our strongest case for

4    a satellite Kwok company to be determined to be the alter

5    ego of the debtor, or equitably owned by the debtor, but you

6    will be the ultimate decision maker on that, Your Honor.

7          We also filed a motion to shorten notice and to

8    limit the scope of notice, and I wanted to talk about this,

9    Your Honor, because I know that there was some back and

10   forth between the Court and us in terms of the affidavits or

11   the certificate of service that were not all as they should

12   have been.  And so we -- I think we've corrected that.

13         But first, on the issue of shortening notice,

14   because the settlement does not approve the ultimate relief,

15   if you approve -- if you enter the settlement order, you're

16   not declaring that this is all property of the estate.

17   You're simply directing the assignee, and he's agreeing to

18   that, to transfer the cash to the trustee, and the other

19   interim steps I describe.  You're not doing more than that.

20         And because of that, and because it's not the

21   ultimate relief, meaning the final relief we're seeking, we

22   thought that it would make sense to shorten notice.  I'll

23   give you some reasons for that, but again, we're not arguing

24   this.  It's before Your Honor.

25         We would ask you to consider entering it as soon

1    as you can, but there's a lease there in the name of this --

2    one of these entities.  Well, the only way to reject that,

3    to use the rejection powers, is to have this company be, you

4    know, essentially part of the Kwok estate or -- you know, to

5    be -- to avail itself of 365.

6              So can't do that now.  We need to get moving to --

7    because otherwise rent may be accruing, so these are

8    examples of things, or for example, selling these assets.

9              I told the assignee I don't think that our judge

10   would feel comfortable with these assets being sold without

11   this Court approving that sale.

12             And of course that means that we need to get to be

13   in a position to do that, and so that the point here is,

14   given the limited relief that will be granted during the

15   interim phase.

16             We would ask Your Honor to consider expediting --

17   although we filed it last Friday, so we were already a week

18   into it, you know, sometime in early July would be

19   appreciated, but you know, obviously this is your call.

20             And in terms of limiting notice, we -- the

21   assignee has prepared, as part of his job, and with his

22   counsel, has prepared an extensive list of people that they

23   believe are creditors of those entities.

24             So we would use that list to give notice to -- so

25   that's part of the notice we would give, but we would give

1     the notice, of course, to the U. S. Trustee, to the

2     assignee, to the debtor, to the official committee, the

3     defendants in the adversary proceeding and all parties that

4     are on the ECF system.

5              And also, all the parties that have been

6     identified by the assignee in the assignment proceeding as

7     having a claim against the HCHK parties and there's a lot of

8     them.

9              So they're investors, or -- it's unclear what

10    their status is, but they've been identified by the

11    assignee's counsel as an investor or creditor, so we would

12    use that list to send them a notice of the motion.  So the

13    motion to approve the settlement.

14             So we would ask the Court to consider that relief.

15    Again, I said -- and I would end with this.  I'm not asking

16    the Court to approve anything today, but the first immediate

17    step would be to consider the motion to expedite and too

18    limit notice, Your Honor, and we would appreciate the Court

19    considering that and, you know, in short order.

20             That's all I had in terms of my presentation.  I

21    would say it's an unusual structure, but I believe that it

22    works, given what we're able to accomplish here.  But of

23    course, I'll be happy to entertain any questions the Court

24    may have about what -- my presentation.

25             THE COURT:  Well, the -- there -- I have a couple

1   of questions or comments.  The issue about service was not

2   because service wasn't necessarily made properly.  It was

3   because there was no evidence on the docket yet that service

4   --

5            MR. DESPINS:  Correct.

6            THE COURT:  -- was made.  So we needed to know

7   that because there was this issue about parties consenting

8   to the extension of the TRO and parties not consenting to

9   the extension of the TRO, and consenting to the continuance

10  of the preliminary injunction hearing.

11           So before we get into your presentation, which I

12  understand, are you asking today for the Court to set a new

13  preliminary injunction hearing date, or are you going to

14  address that after the Court addresses what you described as

15  the first step in the process with the assignee turning over

16  -- if the -- having a hearing --

17           MR. DESPINS:  Yeah.

18           THE COURT:  -- on a motion to approve that

19  compromise of turning the funds over to you?

20           MR. DESPINS:  We would wait until that motion is

21  considered by the Court.

22           THE COURT:  Okay.  So you don't want a schedule --

23  the preliminary injunction hearing scheduled at this point

24  -- rescheduled at this point.  And that's fine.  As noted,

25  the --

1          MR. DESPINS:  I should say -- I apologize for

2     interrupting, but the motion to expedite leaves a -- if I

3     remember correctly, leaves a blank or -- as to what date you

4     would feel comfortable, if I remember correctly -- let me

5     just verify this, but I -- so it -- it may have been in

6     there already.  Let me just look at the order.  No, I'm

7     sorry, it's not in this -- no, sorry.  I misspoke.  It's not

8     in this motion.

9          THE COURT:  That's fine.  I am aware of the motion

10    to expedite.

11         MR. DESPINS:  Okay.

12         THE COURT:  So I will -- we will look at that and

13    I don't see a possibility of it being scheduled this week

14    with other hearings in another trial we have this week.

15         So the earliest day that we could schedule the

16    hearing on the motion to expedite, assuming it's granted,

17    would be July 5th, because the Court is closed July 3rd and

18    4th.

19         MR. DESPINS:  Actually, I was thinking that it

20    would be the week of the -- we have a hearing on the 12th, I

21    believe, or --

22         THE COURT:  Well, you'd like to go into the

23    following week?  That's fine.  You have a --

24         MR. DESPINS:  We have a trial on the 11th, so a PI

25    trial, I believe, on the AIG.

1      THE COURT:  Yeah, I -- yes.  I'm sorry.  My screen

2  is frozen again.

3      MR. DESPINS:  One of the reasons I'm mentioning

4  the 12th is because we've heard from some parties that they

5  want more time to deal with this, so it's our --

6      THE COURT:  So you want it on the 12th as well?

7  Is that what you're saying?

8      MR. DESPINS:  Yes, if we could.

9      THE COURT:  Then you'd have to start -- you'd have

10  -- I would assume, but I shouldn't I suppose -- that you'd

11  want to address this adversary proceeding, HCHK, before

12  starting evidence on a motion for preliminary injunction in

13  the AIG matter, or --

14      MR. DESPINS:  No, I thought AIG was on the 11th.

15  No?

16      UNIDENTIFIED SPEAKER:  AIG is on the 12th.  We

17  have other matters on the 11th.

18      MR. DESPINS:  I'm sorry, I'm -- I was sure it was

19  on the -- well, but I -- my mistake.

20      THE COURT:  It's on the 12th.  You had -- there's

21  other matters on --

22      MR. DESPINS:  It is on the 11th.

23      THE COURT:  -- the 11th.

24      MR. DESPINS:  So perhaps we could deal with that

25  on the 11th.

1          THE COURT:  That's possible.

2          MR. DESPINS:  The motion to approve the

3     settlement.

4          THE COURT:  Yeah, that's possible, yes.  It is

5     possible.  There are matters scheduled at 12:30 on the 11th.

6     So we could -- I have to look at the motion again but --

7          MR. DESPINS:  Okay.

8          THE COURT:  -- I understand what you're saying.

9     You're looking for the 11th, so I understand that.  Okay?

10    And I understand what you said about, if the motion to

11    expedite is granted, you would serve it on all parties who

12    have filed an appearance in the main case, not just the

13    adversary proceeding.  Is that what you're saying?  Or are

14    you serving -- and you're serving it on a list.

15         MR. DESPINS:  Well, the main case through ECF.

16         THE COURT:  Yes.

17         MR. DESPINS:  Correct.  Yes.  Yes.  Yes, Your

18    Honor.

19         THE COURT:  And through parties that -- on a list

20    that the assignee has created?

21         MR. DESPINS:  Correct.

22         THE COURT:  Okay.  All right.  That's fine.  I

23    mean, I understand what you're asking, and I think we can --

24    we will absolutely, you know, review and most likely rule on

25    the motion to expedite tomorrow with the understanding that

1    you're looking for a hearing on July 11th if possible.

2              MR. DESPINS:  Thank you.

3              THE COURT:  Okay.  I had one other question,

4    though.

5              MR. DESPINS:  Yes.

6              THE COURT:  Now, I don't remember what it was.

7    All right.

8              So you don't want a preliminary injunction

9    hearing.

10             Oh, and so the -- there's only, right now, there's

11   only a virtual order extending the temporary restraining

12   order, but it refers back to the original restraining order.

13             And obviously, with regard to Ms. Wang and Holy

14   City, the restraining order has expired, and you filed

15   something where you acknowledge that, and if you -- you

16   reserve the right to seek injunctive relief against them.

17   That's fine.  I mean, that's fine.  That was -- part of the

18   reason was -- about the service was to make it clear, if we

19   needed to enter another order before the expiration of the

20   temporary restraining order.

21             MR. DESPINS:  And we need -- to do that, we need

22   to introduce evidence, et cetera, et cetera.

23             THE COURT:  Right.

24             MR. DESPINS:  Yeah.

25             THE COURT:  But we're not -- you're not doing

1    that.

2                    MR. DESPINS:  Correct.

3                    THE COURT:  So that's fine.  You're not seeking an

4    extension of the temporary -- well, it's too late anyway.

5                    MR. DESPINS:  For those two parties.

6                    THE COURT:  It expired yesterday --

7                    MR. DESPINS:  Yeah.

8                    THE COURT:  -- as to those two parties.

9                    MR. DESPINS:  Yes.

10                   THE COURT:  That's right.  Okay.  Then I just want

11   to make sure I didn't have any other questions.  No, I don't

12   have any other questions, but I do want to hear from counsel

13   for the assignee or assignee.  And I actually, counsel, I

14   apologize.  I don't recall your name because I don't see

15   that you filed a notice of appearance yet.

16                   MR. JARECK:  Your Honor, my name is Ryan Jareck,

17   from the law firm of Cole Schotz.

18                   THE COURT:  Did you file an appearance?

19                   MR. JARECK:  We did not file an appearance yet,

20   but we did file pro hoc pleadings this morning --

21                   THE COURT:  Oh, okay.

22                   MR. JARECK:  -- for local counsel.

23                   THE COURT:  Okay.  Okay.

24                   MR. JARECK:  Got them in.

25                   THE COURT:  All right.  So we just haven't --

1          MR. JARECK:  I apologize if it's delayed on that.

2          THE COURT:  -- no, we had -- no, we had hearings

3     today so we wouldn't have seen it, probably, anyway.  That's

4     fine.  That's not a problem.  I just wanted to make sure,

5     because I want to make sure that you are appearing properly

6     in the matter, which you apparently are.  I just haven't

7     seen that yet.

8          MR. JARECK:  Okay.  Understood.  Thank you, Your

9     Honor.

10         THE COURT:  All right.  Go right ahead.

11         MR. JARECK:  Your Honor, this is my first time

12    appearing before this Court, so if you have any questions

13    that you want me to address from the outset, maybe with your

14    permission we could do that, or --

15         THE COURT:  I mean, the -- I've reviewed -- I

16    wouldn't say I've studied it, but I've reviewed what is --

17    what occurred, or what was about to occur I suppose, in the

18    New York State court --

19         MR. JARECK:  Uh-huh.

20         THE COURT:  -- because Trustee Despins sought a

21    temporary -- an ex parte temporary restraining order to stop

22    the assignment of benefit of creditors, or at least to

23    maintain the status quo to not have that go forward until

24    there was some issues in this court to talk about.

25         And apparently, you have agreed that the temporary

1    restraining order can continue, and that there is this

2    agreement that you're going to -- and I haven't studied it,

3    okay, but my initial review is that as the assignee of the

4    -- of all of the -- well, I don't know if it's all the

5    property, but property of HCHK Technologies, and other

6    related entities, you're going to turn over a substantial

7    amount of funds to the trustee, correct?

8            MR. JARECK:  Yes, that's correct, Your Honor.

9            THE COURT:  Okay.  And then -- and -- and I think

10   Trustee Despins -- you know, I mentioned, I -- he had said

11   originally the trustee, but he meant you as counsel to the

12   assignee --

13           MR. JARECK:  Uh-huh.

14           THE COURT:  -- are not going to contest anything

15   that Trustee Despins is trying to accomplish in this

16   adversary proceeding.

17           But -- and I did see that there are certain things

18   you need to do in the New York State Court in order to be in

19   compliance with that proceeding, but ultimately once that's

20   done, assuming the settlement that is described in this

21   motion that hasn't been set for a hearing yet, then that

22   assignment for the benefit of creditors will be closed,

23   correct?

24           MR. JARECK:  That's also correct.

25           THE COURT:  Okay.

1        MR. JARECK:  There's just some clean-up items that

2   the assignee has to do.  The deeds were filed in the end of

3   April, so the case is, although we were actually  not heard

4   on our first stay relief, they were pending.  Right now,

5   they're suspended as a result of the TRO.

6        THE COURT:  Okay.

7        MR. JARECK:  The settlement agreement has been

8   reached.  We just need it papered, which we had before Your

9   Honor.  And then once we get a 9019 order from Your Honor,

10  assuming that you grant the relief, we'll transfer the

11  funds, and then we start the whole process that's laid out

12  in the settlement agreement.

13       THE COURT:  Okay.  So -- I mean, other than, you

14  know, curiosity, really, I don't really have any questions

15  about the assignment of benefit of creditors under New York

16  law.  Apparently, you know, you're appointed -- but you're

17  not appointed by the Court.  You're initially appointed --

18       MR. JARECK:  No, the --

19       THE COURT:  -- and then you come in.  The company

20  appointed it.

21       MR. JARECK:  It's the state law equivalent of a

22  Chapter 7.

23       THE COURT:  Right.

24       MR. JARECK:  Right?  And you have a company,

25  whether it's an officer or a director or board, with similar

1    authority to filing a Chapter 11 or a 7, except it's

2    actually done in the form of a deed and it's recorded with

3    the clerk.  And then once that is recorded, it gets

4    transferred to New York State Supreme Court, and that's what

5    initiates the case.

6            THE COURT:  And someone from HCHK Technologies or

7    the board directed your appointment?

8            MR. JARECK:  Yes.

9            THE COURT:  Okay.  Was it the board, or was it an

10   individual?

11           MR. JARECK:  It was an individual.

12           THE COURT:  And you've discussed that with the

13   trustee?

14           MR. JARECK:  Yes.

15           THE COURT:  Okay.

16           MR. JARECK:  And the deeds are public record.

17           THE COURT:  Okay.

18           MR. JARECK:  They were signed and have schedules

19   attached to them, so --

20           THE COURT:  Okay.  All right.  Well, I don't have

21   any other questions other than, you know, there -- we are

22   going to set a hearing on the trustee's motion.  As you just

23   heard, the trustee is looking for July 11th.  It would be in

24   the afternoon.

25           The likelihood of that happening is high.  Service

1   will have to be made so that parties can have an opportunity

2   to object, and I understand from Trustee Despins's comments

3   that you, or your firm, or whomever, somebody's prepared a

4   list of people that you think are creditors of the HCHK

5   Technology entities, and that those people will be served.

6            MR. JARECK:  Correct, Your Honor.

7            THE COURT:  Do you anticipate, from what you know,

8   and maybe you don't know anything, that anybody is going to

9   object to this occurring?  That the transfer of the --

10  assuming the motion is granted?

11           MR. JARECK:  I don't want to speculate, Your

12  Honor.  There is a lot of folks on the master server's list.

13           THE COURT:  So the --

14           MR. JARECK:  But we'll make sure that notice is --

15           THE COURT:  -- but how did you get control of the

16  funds?  Through the deed?

17           MR. JARECK:  Through the deed.

18           THE COURT:  Okay.

19           MR. JARECK:  The deed is a transfer of the assets,

20  and Mr. Hoffmeister closed down all of the companies'

21  existing bank accounts and opened up new accounts that

22  connect --

23           THE COURT:  Oh, they opened up new accounts.

24           MR. JARECK:  -- new custodial --

25           THE COURT:  All right.  So --

1          MR. JARECK:  -- accounts under his control.

2          THE COURT:  All the accounts of the funds that

3   would be turned over to the trustee are no longer in the

4   name of HCHK.  They're in the name of --

5          MR. JARECK:  Mr. Hoffmeister as assignee --

6          THE COURT:  -- as -- as -- okay.  Okay.

7          MR. JARECK:  -- for the benefit of the creditors.

8   Correct.  He's the sole signatory, and he's the one who

9   controls the accounts.

10          THE COURT:  And as part of your -- Mr.

11   Hoffmeister, I should say -- role, does he have to do any

12   other -- does he have to undertake any other efforts to try

13   to locate anything other than the monies in these accounts

14   as assets for these estates, or he just gets told that these

15   are the assets?

16          MR. JARECK:  So attached to the deed is -- similar

17   to like a schedule of assets and liabilities --

18          THE COURT:  Uh-huh.

19          MR. JARECK:  -- which is prepared by the company

20   and the assignor's counsel, and he's charged with

21   administering those assets.

22          Obviously, we get all of the books and records, we

23   talk to the accountant.  We had our own financial advisor,

24   and so we had an understanding of the records and the assets

25   that are out there, and obviously that will be turned over

1    to the trustee.

2              THE COURT:  Okay.  Then, I don't have any

3    questions for you.  I appreciate you being here.  Other

4    questions.  Do you have any questions about this process or

5    this adversary?

6              MR. JARECK:  No, Your Honor, I don't at this time,

7    and obviously this is more so on for scheduling.  I'll be

8    back here on the 11th, and we can address any questions, and

9    I'll obviously be prepared with a full presentation.

10             THE COURT:  Thank you.  And I'm sure your motion

11   for pro hoc will -- if it's in order, will be granted, you

12   know, in the next day or so.

13             MR. JARECK:  Appreciate that.

14             THE COURT:  We have -- I didn't look, but you

15   know, we have -- I'm sure it's true in where you practice

16   too, but we have a requirements for certificates of good

17   standing to be filed with the motions, and they're supposed

18   to be filed with the motion.  If they're not filed with the

19   motion, you just need to -- who's your local counsel?

20             MR. JARECK:  The Law Offices of Bonnie Mangan.

21             THE COURT:  Oh, okay.

22             MR. JARECK:  Yeah.

23             THE COURT:  She's a Chapter 7 Trustee, so --

24             MR. JARECK:  Okay.

25             THE COURT:  -- and she's also a practicing lawyer,

1  so she knows all that.  So she -- you can work with her on

2  those issues.  Okay.

3          MR. JARECK:  Will do, Your Honor.

4          THE COURT:  All right.

5          MR. JARECK:  Thank you.  Thank you for allowing me

6  to appear.

7          THE COURT:  I appreciate that, and we'll look at

8  your -- we get the pro hoc vice motions usually done very

9  quickly.  But you said it was just filed today, right?

10          MR. JARECK:  This morning, Your Honor.  Yes.

11          THE COURT:  All right.  Well, we've been in court

12  all day, so --

13          MR. JARECK:  Okay.

14          THE COURT:  -- that makes sense.

15          MR. JARECK:  Thank you.

16          THE COURT:  Okay.  Thank you.

17          Attorney Arcaro, did you wish to be heard?

18          MR. ARCARO:  Just very briefly, Your Honor.

19          My client may be one of the -- among the parties

20  that has an objection to the settlement based on a very

21  small, what I would consider to be administrative claim.  My

22  client paid rent to the assignee, pre-paid rent on the

23  Columbus Circle property, and then was evicted, so to speak,

24  halfway through that month.  So may have a very small

25  administrative claim.  Well, small in the context of this

1    case, 40 or $50,000.  So that may be something that we want

2    to have addressed, but that's -- I'm awaiting for

3    instructions from my client on that.

4               But the other thing that's --

5               THE COURT:  I don't know if I can address that

6    unless and until I find that they're assets of the estate,

7    right?

8               MR. ARCARO:  Understood.  Understood.

9               THE COURT:  So --

10              MR. ARCARO:  And we'll open up a line of

11   communication with the -- with the trustee's counsel.  But

12   in the other -- and the other issue is just, there is some

13   outstanding discovery.  My client was served with discovery

14   request on the 15th with compliance due on the 19th --

15              THE COURT:  In the main case?

16              MR. ARCARO:  In the adversary proceeding.

17              THE COURT:  In this adversary proceeding?

18              MR. ARCARO:  Correct.

19              THE COURT:  Okay.

20              MR. ARCARO:  So I wanted to bring that to Your

21   Honor's attention and ultimately we'll be seeking --

22              THE COURT:  With discovery due on July 19th?  Is

23   that what you're telling me?  Or it's already passed?

24              MR. ARCARO:  It's already passed.  It was served

25   on June 15th and due on June 19th.

1        MR. DESPINS:  That's when there was going to be a

2    preliminary injunction hearing.  But that's not --

3        THE COURT:  Oh, yeah.  So --

4        MR. DESPINS:  -- no longer --

5        THE COURT:  -- so then you can -- it doesn't sound

6    like --

7        MR. ARCARO:  Yeah.

8        THE COURT:  -- they're going to be pressing that

9    discovery, so --

10        MR. ARCARO:  I just wanted to bring that to Your

11    Honor's attention.

12        THE COURT:  Okay.

13        MR. ARCARO:  And, yeah, if the plaintiff still

14    wants the discovery, we can work with them on that, but I

15    don't know if it will be necessary.  That's all I wanted to

16    say, Judge.

17        THE COURT:  Okay.  Thank you.

18        MR. ARCARO:  Yep.

19        MR. PASTORE:  Your Honor, may I ask a question?

20        THE COURT:  Certainly.  Could you come forward --

21        MR. PASTORE:  Sure.

22        THE COURT:  -- and state your name for the record,

23    please?

24        MR. PASTORE:  Good afternoon, Your Honor.  My name

25    is Joseph Pastore from Pastore  LLC.  I've been admitted in

1    this district for about 30 years.

2              Last night and into early morning, I was asked by

3    a creditor to take a -- a creditor of the HC companies, to

4    take a look at the settlement.  Obviously, I have not had

5    time to fully come up to speed, but I anticipate we may

6    object on the 11th.

7              As an outside creditor --

8              THE COURT:  Well, it will be before the 11th.

9              MR. PASTORE:  Before the 11th.  I apologize.

10             THE COURT:  Yeah.  You'll see -- what I would --

11   that's very helpful to know, and you just make sure you get

12   your information -- your contact information to the trustee

13   so they'll serve you.

14             MR. PASTORE:  We've emailed the trustee today.

15             THE COURT:  Okay, good, because the -- what -- if

16   the motion expedite is granted, there will be an objection

17   deadline prior to the hearing.

18             MR. PASTORE:  Understood.  My question is, as a

19   creditor, would we have to move to intervene in this

20   proceeding, or would we have standing to object?  And maybe

21   I have to answer that myself, but that's really --

22             THE COURT:  I think you might have to answer that

23   yourself.

24             MR. PASTORE:  Right.

25             THE COURT:  But with regard to the -- you know --

1       MR. PASTORE:  And I just wanted to tell the Court

2    so --

3            THE COURT:  If everybody --

4            MR. PASTORE:  -- you weren't sandbagged by it.

5            THE COURT:  -- if everybody is served, they have

6    an opportunity to object, right, or respond, reply.

7            MR. PASTORE:  Right.

8            THE COURT:  Whether or not someone would argue

9    that you'd have to intervene, I think on an expedited

10   hearing basis may not be persuasive at -- for that in that

11   circumstance, but I don't know.  I guess I would have to

12   wait and see what the basis would be as to why you'd have to

13   intervene if you're being served with a settlement motion,

14   which provides an opportunity to file a response.

15           MR. PASTORE:  Understood.  And I also just wanted

16   the Court to be aware so the Court wasn't surprised if we

17   did file an objection.  I honestly haven't looked at it

18   close enough to know if I will, but I wanted to inform the

19   Court.

20           THE COURT:  I appreciate that.

21           MR. PASTORE:  Thank you.

22           THE COURT:  Thank you.

23           MR. DeLANEY:  Your Honor, I don't think we've

24   heard the -- who counsel represents, which --

25           MR. PASTORE:  Oh, so it's an individual out of

1    Taiwan.  She Sin Yo (ph).

2              MR. DeLANEY:  Thank you.

3              THE COURT:  And you've -- someone at the trustee's

4    firm, you've emailed with that information?

5              MR. PASTORE:  My colleague, Tyler Rutherford, this

6    morning sent an email to the trustee's --

7              THE COURT:  Okay.

8              MR. PASTORE:  -- firm of Paul Hastings and to

9    Connecticut counsel.

10             THE COURT:  Okay.  So, then good.  That's helpful.

11   You can have some discussions and see where things go from

12   there.

13             MR. PASTORE:  Thank you, Your Honor.

14             THE COURT:  Okay?  All right.  Thank you.

15             So is there anything further, Trustee Despins, we

16   need to address this afternoon?  I will be looking at the

17   motion to expedite.  I anticipate that there will be a

18   ruling on it tomorrow.

19             Given the fact that the assignee and the trustee

20   are working cooperatively with regard to the transfer of

21   funds, the likelihood is that the hearing will -- the motion

22   will be granted and the hearing will be set for July 11th.

23             But it will have an objection deadline for parties

24   to file an objection, the order -- it granting -- assuming

25   it's granted.  And it will require the trustee to make

1    service on the parties that the trustee has identified.

2    Plus no, counsel in the courtroom that has come forward,

3    need to be served, and the parties that the assignee has --

4    that are on a list created by counsel.

5         So I think you'll see something, you know, tomorrow on

6    that issue.  So nothing else that we need to address this

7    afternoon?

8              MR. DESPINS:  No, Your Honor.  Thank you.

9              THE COURT:  Okay.  All right.  Thank you.  Well,

10   that concludes the status conference in the adversary -- in

11   Adversary 23-5013, and that is the last matter on today's

12   calendar, so court is adjourned.

13             THE CLERK:  Court is adjourned.

14   (Proceedings concluded at 4:47 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1          I, CHRISTINE FIORE, court-approved transcriber and

2     certified electronic reporter and transcriber, certify that

3     the foregoing is a correct transcript from the official

4     electronic sound recording of the proceedings in the above-

5     entitled matter.

6

7     *Christine Fiore*

8     _____          July 19, 2023

9          Christine Fiore, CERT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24