B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Luc A. Despins, Chapter 11 Trustee | DEFENDANTS<br><br>Golden Spring (New York) Ltd. and China Golden Spring Group (Hong Kong) Limited |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Paul Hastings LLP, 200 Park Avenue<br>New York, NY 10166, (212) 318-6000<br>Attn: Douglass Barron | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor       ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor       ☒ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) Declaratory Judgment that Golden Spring is the Debtor's alter ego and ordering turnover of Golden Spring's assets to Trustee; Declaratory Judgment that Debtor is equitable owner of Golden Spring and/or its assets and ordering turnover of ownership of Golden Spring and/or its assets to Trustee; Avoidance of actual fraudulent transfer asserted in the alternative to first and second claims. Including sections 541, 542, 544, 550, and New York Debtor and Creditor Law section 276.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought
Declaratory Judgment and Injunctive Relieve as set forth above.

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Ho Wan Kwok | BANKRUPTCY CASE NO.<br>22-50073 (JAM) | |
| DISTRICT IN WHICH CASE IS PENDING<br>  Connecticut | DIVISION OFFICE<br>  Bridgeport Division | NAME OF JUDGE<br>  Julie A. Manning |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>  July 25, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>  Douglass Barron | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------------x
                                 :

| | |
|---|---|
| In re: | :    Chapter 11 |
| | : |
| HO WAN KWOK, *et al.*,[1] | :    Case No. 22-50073 (JAM) |
| | : |
|            Debtors. | :    (Jointly Administered) |
| | : |

---------------------------------------------------------------x
                                 :

| | |
|---|---|
| LUC A. DESPINS, CHAPTER 11 | : |
| TRUSTEE, | : |
| | :    Adv. Proceeding No. [_____] |
|           Plaintiff, | : |
| v. | : |
| | :    July 25, 2023 |
| | : |
| GOLDEN SPRING (NEW YORK) LTD | : |
| and CHINA GOLDEN SPRING GROUP | : |
| (HONG KONG) LIMITED, | : |
| | : |
|           Defendants. | : |

---------------------------------------------------------------x

**COMPLAINT OF CHAPTER 11 TRUSTEE FOR ESTATE OF**
**HO WAN KWOK PURSUANT TO SECTIONS 541, 542, AND 544 OF**
**BANKRUPTCY CODE SEEKING (I) DECLARATORY JUDGMENT THAT**
**GOLDEN SPRING (NEW YORK) LTD. IS ALTER EGO OF DEBTOR, AND**
**(II) RELATED RELIEF**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor" or "Kwok"), files this

adversary complaint (the "Complaint") against defendants: (a) Golden Spring (New York) Ltd.

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

("Golden Spring") and (b) China Golden Spring Group (Hong Kong) Limited ("China Golden Spring," together with Golden Spring, the "Defendants").  In support of this Complaint, the Trustee states as follows:

## NATURE OF ACTION

1.     The Trustee brings this Complaint to remedy one of the Debtor's most obvious "shell games": the Debtor's use of Golden Spring, a "family office" under his control, to fund the Debtor's extravagant lifestyle and keep valuable assets out of the reach of creditors.

2.     As further discussed below, Golden Spring is the alter ego of the Debtor and the Debtor is the equitable owner of Golden Spring and/or its assets.  Golden Spring's assets (including claims it holds) or the value of such assets should be brought into the Debtor's chapter 11 estate.  Among other things, the Debtor formed Golden Spring with the assistance of his counsel at Williams & Connolly LLP and funded Golden Spring through other companies under his control.  Although the Debtor made the decision not to sign any corporate documents on behalf of Golden Spring, advisors (such as the Debtor's counsel in 2015, Williams & Connolly LLP, and the Debtor's subsequent counsel during 2018-2020, Hodgson Russ LLP) and employees of Golden Spring all understood the Debtor to be the person exercising control over the entity.  In fact, Golden Spring has been managed and staffed by the Debtor's employees, most notably Yvette Wang and Max Krasner.  Ms. Wang, Golden Spring's president, even testified that in her role as president of Golden Spring her job was to look after the Debtor's interests.  Moreover, not only did the Debtor use Golden Spring's address at 162 E. 64th Street in New York City as his personal address, a myriad of the Debtor's shell companies also share Golden Spring's address.  In essence, the core purpose for the existence of Golden Spring is to hold assets for the Debtor and pay his expenses, rendering the company a key part of the

2

Debtor's arrangement for living a life of luxury while at the same time asserting to this Court that he was effectively judgment proof.

3.      Based on these facts, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code declaring that (i) Golden Spring is an alter ego of the Debtor, and that (ii) Golden Spring and/or its assets are equitably owned by the Debtor.

4.      Finally, in the alternative, assuming Golden Spring is neither an alter ego of nor equitably owned by the Debtor, the Trustee asserts an actual fraudulent transfer claim against Golden Spring, pursuant to Section 276 of the New York Debtor and Creditor Law and sections 544 and 550 of the Bankruptcy Code, in connection with the transfer of ▬▬▬▬▬ of the Debtor's funds to Golden Spring in 2015, as discussed in greater detail below.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b).

6.      This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. §157(a).  Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7.      The Trustee is the chapter 11 trustee in the Chapter 11 Case pursuant to the Court's order entered on July 8, 2022 [Main Case Docket No. 523].

8.      Golden Spring is a Delaware corporation.

9.      China Golden Spring is a Hong Kong corporation that is the purported sole shareholder of Golden Spring.

## FACTS

**I.**   **Background: Debtor's Prolific Use of Shell Companies**

10.     As the Court is by now well aware, the Debtor is a prolific user of shell companies, purportedly owned by family members or business subordinates, to shield his assets and activities from creditors.  The Debtor's "shell game" has allowed him to continue to deny ownership of assets, refuse to pay debts, and—until his recent arrest by the FBI—live a life of luxury.  Indeed, in addition to Golden Spring, the Court is already familiar with numerous of these entities, including:

    a. **HK International Funds Investments (USA) Limited, LLC ("HK USA")**, purportedly owned by the Debtor's daughter, Mei Guo (the "Debtor's Daughter"), and used by the Debtor to hold title to the *Lady May* yacht, which this Court and Justice Ostrager ruled was beneficially owned by the Debtor.[2]  The Court also recently ruled HK USA to be the Debtor's alter ego.[3]

    b. **Greenwich Land, LLC ("Greenwich Land")**, purportedly owned by the Debtor's wife, and used by the Debtor to hold title to the Debtor's mansion in Greenwich, Connecticut.[4]

    c. **Whitecroft Shore Limited and Anton Development Limited**, entities purportedly owned by the Debtor's Daughter and used by the Debtor to hold title to the Debtor's Bombardier Global XRS private jet.[5]

---

[2]  *Supplemental Memorandum of Decision in Support of Oral Ruling Granting Motion for Partial Summary Judgment*, at 31 (Adv. Proc. No. 22005003, Mar. 30, 2023) [Docket No. 177] ("the issue of Individual Debtor's beneficial ownership and control of the Lady is decisive as to the First Counterclaim and the identical issue was necessarily decided by Justice Ostrager in the Final Contempt Decision, which found by clear and convincing evidence that the Individual Debtor beneficially owned and controlled the Lady May").

[3]  *Memorandum of Decision and Order Granting Motion for Partial Summary Judgment on Second Counterclaim*, at 35 (Adv. Proc. No. 22-05003, May 18, 2023) [Docket No. 221] ("HK USA is the alter ego of the Individual Debtor.").

[4]  The Trustee has sought an alter ego judgment against this entity in adversary proceeding 23-05005, in connection with which the Court entered a prejudgment remedy and temporary restraining order against Greenwich Land LLC and the Debtor's wife.  *See Order Granting in Part Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction* (Adv. Proc. No. 23-05005, Mar. 28, 2023) [Docket No. 14]; *Order Granting Chapter 11 Trustee's Amended Application for Ex Parte Prejudgment Remedy* (Adv. Proc. No. 23-05005, Mar. 28, 2023) [Docket No. 15].

[5]  These two companies, along with eight other companies purportedly owned by the Debtor's Daughter, are the subject of adversary proceeding 23-05008.  *See Complaint of Chapter 11 Trustee for Estate of Ho Wan Kwok For (I) Declaratory Judgment, Pursuant To Sections 541, 542, And 544 Of The Bankruptcy Code And Bankruptcy Rule 7001, That Property Held By Mei Guo Is Property Of Estate And (Ii) Related Relief* (Adv. Proc. No. 23-05008, May 16, 2023) [Docket No. 1].

4

    d. **HCHK Technologies, Inc., HCHK Property Management, Inc., and Lexington Property, Inc. (collectively, the "HCHK Entities")**, each of which is purportedly owned (a) 99.9999% by a British Virgin Islands ("BVI") company purportedly owned by the Debtor's personal assistant, Yvette Wang and (b) 0.0001% by a long-time employee of the Debtor, Anthony DiBattista.[6] The HCHK Entities were used by the Debtor to, among other things, run his media operations and hold title to significant assets, including over $38 million in cash.

    e. **Taurus Fund, LLC**, purportedly managed by the Debtor's bodyguard and chauffer, Scott Barnett, and used by the Debtor to hold title to his mansion in Mahwah, New Jersey.

    f. **Ace Decade Limited ("Ace Decade")**, which this Court found was beneficially owned by the Debtor.[7] The Court also found that the Debtor controlled and employed Ace Decade's nominee owner, Yvette Wang.[8] The Trustee has since learned that Yvette Wang, while the Ace Decade proceedings were ongoing (but after the Court found, on November 17, 2022, that the Debtor exclusively beneficially owned and controlled Ace Decade as of the February 15, 2022 petition date[9]), transferred the stock of Ace Decade that she nominally owned to an individual located in Switzerland (who, upon information and belief, is another associate of the Debtor).

    g. **Gettr, GFashion, GMusic, GClubs, GNews, and GEdu (the "G-Series Entities"), New Federal State of China ("NFSC"), and Rule of Law Foundation ("ROLF")**, as well as other purportedly independent entities and organizations, which this Court found were controlled by the Debtor,[10] led by the Debtor,[11] and/or served "the purposes of . . . and as business vehicles of" the Debtor.[12] The Court also found that the members of these entities and organizations were "personally loyal to the Debtor."[13]

---

[6] The Trustee has sought an alter ego judgment against these entities in adversary proceeding 23-05013, in connection with which the Court entered a temporary restraining order on June 12, 2023. *See Order Granting in Part Emergency* Ex Parte *Motion for Temporary Restraining Order and Preliminary Injunction* (Adv. Proc. No. 23-05013, June 12, 2023) [Docket No. 18].

[7] *Order Granting Motion to Hold Debtor in Contempt of Corporate Governance Order* ¶ 1 (Jan. 24, 2023) [Main Case Docket No. 1372] (the "Corp. Governance Contempt Order").

[8] Corp. Governance Contempt ¶ 4.

[9] *See* Order Regarding Partial Resolution of Trustee's Contempt Motion ¶ 1 (Nov. 17, 2022) [Main Case Docket No. 1110].

[10] PI Decision ¶ 3 ("The Debtor also controls Saraca Media Group and a related entity 'GTV'").

[11] *Id.* ¶ 7 ("The Debtor is the leader of The Whistleblower Movement, NFSC, ROLF, and Himalaya.").

[12] *Id.* ("The Whistleblower Movement, NFSC, ROLF, GSeries, and Himalaya serve the purposes of the Debtor, serve as business vehicles for the Debtor, and their members are personally loyal to the Debtor.").

[13] Id.

11.     Two other entities relevant to the allegations contained herein are HK
International Funds Investments Limited ("HK International") and Eastern Profit Corporation
("Eastern Profit"), both of which were controlled by the Debtor at all relevant times as his alter
egos.

    a.  **HK International** is a Hong Kong entity, purportedly owned by the Debtor's
Daughter, that formerly held title to the *Lady May* prior to transferring it for no
consideration to HK USA in April of 2020.

        i.  As discussed in more detail in the Trustee's counterclaims against HK
USA, the Debtor transferred HK International to his assistant, Natasha Qu
(Qu Guo Jiao), in October 2014 for no consideration, subject to a trust
agreement which provided that Ms. Qu was to operate the company for the
Debtor's benefit and according to his instructions.  Thus, after October
2014, the Debtor beneficially owned and controlled HK International
despite Ms. Qu's nominal ownership.

        ii.  According to the Hong Kong police, HK International was effectively
controlled by the Debtor, used by the Debtor to funnel money to a number
of other Debtor-controlled entities in investment projects related to the
Hong Kong stock exchange, and received all its funds from other Debtor-
controlled companies.[14]

        iii.  A court order issued in Hong Kong on October 18, 2018, titled the
Restraint Order Prohibiting Disposal of Assets In Hong Kong and
Elsewhere (the "Hong Kong Restraint Order") identified HK International
as the purported holder of a bank account that was "subject to the effective
control" of the Debtor.[15]

    b.  **Eastern Profit** is another Hong Kong entity, purportedly owned by the Debtor's
Daughter,[16] that Judge Liman of the U.S. District Court of the Southern District of
New York, in his 2021 decision in the case of *Eastern Profit Corp. v. Strategic
Vision US LLC* (the "Liman Decision"), found to be, "in essence, a shell
corporation" for the Debtor.[17]

        i.  As discussed in the Liman Decision, Eastern Profit was, prior to 2017,
owned by Han Chunguang[18] (upon information and belief, the Debtor's

---

[14]  Ex. 1, Wing Affirm. ¶¶ 48, 51, 57, 62, 158.  The two Kwok-controlled entities that were the sources of funding
for HK USA were Alfonso Global Limited and Alfa Global Ventures Limited.

[15]  Ex. 2, Hong Kong Restraint Order ¶ 3, Respondent 16.

[16]  *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL), 2021 WL 2554631 at *1
(Debtor's Daughter "is now the owner and sole director of Eastern.").

[17]  *Id.* at *1.

[18]  Upon information and belief, Han Chunguang's name is also spelled "Han Changuang."

driver, bodyguard, and cook),[19] who transferred purported ownership of Eastern Profit to the Debtor's Daughter for no apparent consideration in 2017.[20]

ii. Judge Liman observed that, analogously to HK USA and other shell companies, Eastern Profit's location "was in the offices of [the Debtor's] family company in Hong Kong and its sole director was [the Debtor's] daughter."[21]

iii. According to testimony elicited at the hearing held in connection with the Liman Decision, the Debtor introduced Mr. Han Chunguang (the purported owner of Eastern Profit) as his cook, referring to him as "Little Han."[22]

iv. According to Hong Kong police, Eastern Profit received all its funds from other Debtor-controlled companies.[23]

v. The Hong Kong Restraint Order identified Eastern Profit as the purported holder of a bank account that was "subject to the effective control" of the Debtor.[24]

12. The entities discussed above comprise the tip of the iceberg. According to the United States Government, the Debtor and his co-defendants William Je and Yvette Wang "utilized more than approximately 500 accounts held in the names of *at least 80 different*

---

[19] Han Chunguang's name was spelled (incorrectly, upon information and belief) "Han Changhui" in Judge Liman's published decision. Han Chunguang is listed on the Hong Kong Restraint Order as an individual whose bank accounts were subject to the Debtor's control. *See* Ex. 1, Hong Kong Restraint Order ¶ 3, Respondent 25.

[20] Liman Decision at *7 ("Although . . . Han was the ostensible owner of Eastern, it has now been transferred to [the Debtor's Daughter] but Han could not testify that he received anything in exchange. Eastern is a shell for [the Debtor] and his family.") (internal citations omitted). *Id.* at *1 ("Prior to 2017, the owner and sole director of Eastern was an individual named Han [Chunguang] ('Han'). In 2017, Han transferred ownership and control to [the Debtor's Daughter] who was a friend of Han's and who is now the owner and sole director of Eastern.").

[21] *Id.* at *7.

[22] *See* Ex. 3, Trial Tr. at 768:4-12, *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL) (S.D.N.Y) ECF No. 368 (April 22, 2021). *See also* Ex. 4, Trial Tr. at 142:12-19, *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL) (S.D.N.Y) ECF No. 362 (April 19, 2021) (Debtor introduced Yan Ping Wang as his servant and assistant: "Q. Did he introduce [Ms. Wang] in any way -- let me ask you this. What did he introduce her as? A. Well, originally as his assistant. Q. Did he say anything else about what she did for him? A. He said that she did, you know, what personal assistants do and -- but he sent her from the room."); Ex. 61, Trial Tr. at 248-249, *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL) (S.D.N.Y) ECF No. 364 (April 20, 2021) ("Q. Did [the Debtor] come to introduce [Ms. Wang] at a particular meeting at some point? A. At the first meeting, he just referred to her as like a servant. In the second meeting, he introduced her as his assistant.").

[23] Ex. 1 Wing Affirm. ¶ 158. The Debtor-controlled entities that were the sources of funding for Eastern were Alfonso Global Limited and Alfa Global Ventures Limited.

[24] Ex. 2, Hong Kong Restraint Order ¶ 3, Respondent 16.

7

*entities* or individuals to launder more than $1 billion in fraud proceeds."[25]  In sum, while this Complaint focuses on Golden Spring, the Trustee believes that context regarding the Debtor's wide-ranging strategy of using shell companies to shield assets from creditors will assist the Court in understanding the Trustee's position.  The Trustee expressly reserves his rights to pursue actions asserting claims against other entities at the appropriate time.

## II.   Golden Spring is Alter Ego of and Equitably Owned by Debtor

### A.  Golden Spring Formed at Debtor's Direction for Debtor's Purposes

13.    Golden Spring was incorporated in Delaware and registered to do business in New York in March of 2015,[26] coinciding with the Debtor's relocation to New York in January 2015.[27]

14.    The Debtor's counsel who assisted the Debtor in forming Golden Spring was Williams & Connolly LLP ("W&C") ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

25   *See Memorandum of Law of the United States of America in Opposition to Defendant Yanping Wang's Motion for Pretrial Release* (the "USAO Memorandum"), at 29, attached as Exhibit B in the Reply of Chapter 11 Trustee to G Club Operations LLC's Supplemental Objection to Trustee's Motion to Compel and Request for Related Relief (the "G-Club Reply") (June 23, 2023) [Main Case Docket No. 1934].

26   *See* Ex. 5, Affidavit of Kwok Ho Wan in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint ¶ 33, *Ace Decade Holdings, Ltd. v. UBS AG*, Index No. 623315/2015 (Feb. 5, 2016) [NYSCEF Doc. No. 27] ("Kwok UBS Affidavit")

27   *Id.* ¶ 30.

28   ██████████████████████████████████ 21.

29   ██████████████

30   ███████████

31   ███████████



### B. Golden Spring Funded by the Debtor

17.    At all relevant times, Golden Spring has had no independent source of funding; it has been funded by the Debtor through entities he controls, and would have had no capitalization absent such funding.



### i.  Debtor's Initial Funding of Golden Spring in 2015

18.    The Debtor admitted that he provided the initial funding for Golden Spring by injecting funds into Golden Spring from an account he controlled at UBS.  According to the Debtor's affidavit filed with the New York state court in connection with his 2015 lawsuit against UBS, in April 2015 the Debtor's bankers at UBS "assisted [the Debtor] with setting up Golden Spring New York by transferring funds from one of [the Debtor's] accounts at UBS to Golden Spring New York's JPMorgan Chase bank account in New York."[35]

19.



---

[35]  Ex. 5, Kwok UBS Affidavit ¶ 36.

[36]

[37]

[38]



### ii. Debtor's Funding of Golden Spring Subsequent to 2015

20.

Upon information and belief, Golden Spring receives no funding other than from other Kwok-controlled entities.

### C. Advisors and Employees Identified Debtor as Person Exercising Control Over Golden Spring

21.    No one familiar with the Debtor and Golden Spring doubted that the Debtor was the person who exercised control over Golden Spring (despite the Debtor's son's purported ownership of Golden Spring's ostensible parent company, China Golden Spring).

22.



Moreover, upon information and belief, the Debtor was the decision-maker with respect to matters such as

---



11

the hiring and firing of Golden Spring employees.  This state of affairs represents a complete lack of corporate formalities given that the individuals in positions of formal corporate management at Golden Spring, such as Yvette Wang, were subordinate to the Debtor who acted as ultimate decision-maker.



### D. Golden Spring's Function to Hold Debtor's Assets and Pay Expenses

25.    The record demonstrates that Golden Spring's function as the Debtor's "family office" was to hold his assets and pay his expenses.  Golden Spring was thus a critical part of the



Debtor's arrangement for living a life of luxury while at the same time asserting that he was effectively judgment proof, as exemplified by the Schedules of Assets and Liabilities filed in this Chapter 11 Case, where the Debtor claimed to hold assets of $3,850.00.[50]  The examples of Golden Spring functioning in this way are legion.  Among others:

   a.  Golden Spring has been paying the Debtor's personal living expenses since 2015.[51]  These expenses include security/bodyguards, transportation, clothing, and other items.[52]  For example, the Debtor testified that if he desired to buy a pair of shoes, he would arrange for Golden Spring to pay for it.[53]

   b.  The Debtor travelled in a Maybach automobile purportedly owned by Golden Spring.[54]  Indeed, insurance documents in the possession of the Trustee indicate that Golden Spring has purportedly owned multiple luxury vehicles for use by the Debtor.[55]

   c.  Golden Spring paid numerous of the Debtor's legal fees, including through litigation funding agreements ███████████████████████████████

   d.  Golden Spring paid the expenses associated with the Debtor's yacht, the *Lady May*,[57] as well as the maintenance fees associated with the Sherry Netherland Apartment.[58]

   e.  The Debtor intended to use Golden Spring as lender in connection with an $8 million DIP loan proposed in the Debtor's motion filed on March 22, 2022 [Main Case Docket No. 117].  A large portion of this loan was slated to be used for

---

[50]  *See* Official Form 106, at 5 (Mar. 9, 2022) [Main Case Docket No. 78].

[51]  *See* Ex. 29, Tr. of 341 Meeting of Creditors, Apr. 6, 2022, *In re Kwok*, Case 22-50073, at 85:17-19, 86:9-12.

[52]  *Id.* 30:18-23.  These expenses were reflected in the Monthly Operating Reports filed by the Debtor for February 2022 [Main Case Docket No. 120], March 2022 [Main Case Docket No. 242], and April 2022 [Main Case Docket No. 423], which report an aggregate amount of $351,081 paid by a "third party for the benefit of the estate."

[53]  Ex. 29, Tr. of 341 Meeting of Creditors, at 52-53.

[54]  *Id.*, at 56:7-20.

[55]  *See* Ex. 30, Golden Spring's Policy Notice by AIG, at 2.

[56]  ████████████████████████████████████████████████████████████████████ These funding agreements were patently designed to ensure that valuable litigation recoveries would never be legally held by the Debtor and thereby exposed to his creditors.

[57]  *See* Complaint for Declaratory Relief ¶ 24 (Apr. 11, 2022) [Adv. Proc. No. 22-05003, Docket No. 1].

[58]  *See* Ex. 35, Tr. of 341 Meeting of Creditors, Dec. 18, 2020, *In re Genever Holdings, LLC*, Case No. 20-12411-JLG, at 21–22, 31–32.

paying the Debtor's then-bankruptcy counsel at Brown Rudnick and numerous of the Debtor's proposed "ordinary course" professionals.

26.     Notably, though Golden Spring as proposed DIP lender was represented in this Chapter 11 Case by counsel, Golden Spring essentially disappeared after the appointment of the Trustee, failing to respond to the Trustee's Bankruptcy Rule 2004 subpoena and eventually being held in contempt by this Court.[59]

### E.  Golden Spring Managed and Staffed by Debtor's Employees

27.     Golden Spring's initial directors when the company was established in March 2015 were Qu Guo Jiao (i.e., Natasha Qu) and Yan Feng Sun,[60] who also served as the initial president/treasurer and secretary of the company, respectively (the Debtor's son, Qiang Guo, was initially Executive Vice President).[61] Natasha Qu was the Debtor's executive assistant and was placed by him as nominal owner of numerous entities, including perhaps most notably HK International, the entity that once owned the *Lady May*, which company she transferred to the Debtor's Daughter for no consideration in June 2017.  Yan Feng Sun was another employee of the Debtor who, upon information and belief, the Debtor placed (also in March 2015) as nominal equity holder of his shell company Globalist International Limited.[62] ███████████████

████████████████████████████████████████████████████████

██████████████████████████████████

28.     Golden Spring's president in more recent years, including at the time the Debtor filed his chapter 11 petition, was Yvette Wang, who also served as one of the company's

---

[59] Given Golden Spring's non-compliance with its discovery obligations, the Trustee is unable at this time to determine with precision the value of Golden Spring's assets, and the Trustee's investigation remains ongoing.

[60]

[61] ███████████████████████████████████████████████████████

[62] Globalist International Limited is one of the entities that the Trustee has asserted to be property of the estate in connection with adversary proceeding number 23-05008.

[63] ███████████████████████████████████████████████████████

directors (along with the Debtor's son).  This Court has already ruled that "[t]he Debtor has control over Ms. Wang" and that he "has employed Yvette Wang for several years, and has directed her to take actions on his behalf, including directing her to act on his behalf to purchase properties such as the Sherry-Netherland apartment."[64]  Ms. Wang has served the Debtor in numerous other roles, including as an officer and/or authorized signatory of Hudson Diamond Holding LLC, Hudson Diamond NY LLC, Leading Shine NY Limited, Saraca Media Group, Inc., GTV Media Group, Inc., Greenwich Land, LLC, and Genever Holdings LLC.[65]  The Trustee in his investigation has learned that Ms. Wang was widely known to be the Debtor's personal assistant.  When asked at his deposition whether Ms. Wang was his employee, the Debtor asserted his Fifth Amendment right against self-incrimination.[66]

29.    On March 15, 2023, Ms. Wang was arrested in connection with charges that she had, among other things, conspired with the Debtor in connection with his criminal fraud and money-laundering activities.  According to the U.S. Government, Ms. Wang played an "instrumental role" in the Debtor's fraud scheme as his "trusted chief of staff who is tasked with managing operations at even those entities with which she has no formal affiliation."[67]

30.    In addition, employees of Golden Spring have included, among others:

---

[64]  Corp. Governance Contempt Order ¶ 4.

[65]  Ex. 38, Affidavit of Yan Ping Wang ¶ 1, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. May 15, 2018) [Docket No. 182] ("I am the President of Golden Spring (New York) Ltd., and in that capacity serve as an administrator for the interests of [the Debtor] and his family."); Ex. 39, Hudson Diamond Holding LLC, Consent of Sole Member Without a Meeting, dated July 17, 2019 (rendering Ms. Wang signatory); Ex. 40, Hudson Diamond Holding LLC, Consent of Sole Member Without a Meeting, dated August 31, 2020; Ex. 41, Hudson Diamond NY LLC, Consent of Sole Member Without a Meeting, dated December 4, 2020; Ex. 42, ▬▬▬▬▬▬▬▬▬▬▬; Ex. 43, Himalaya Coin Certificate of Assumed Name, dated March 14, 2020; Ex. 44, Himalaya Dollar Certificate of Assumed Name, dated March 14, 2020; Ex. 45, Complaint ¶ 9a, *United States v. Wang*, No. 1:23-mj-02007-UA (S.D.N.Y. Mar. 10, 2023) [Docket No. 1] ("Wang was an Executive Director of GTV"); *Debtor's Declaration Pursuant to Local Bankruptcy Rule 1007-2* ¶ 1, (Case No. 22-50592, Oct. 12, 2020) [Docket No. 1]; Ex. 46, Greenwich Land, LLC, Consent of Sole Member Without a Meeting, dated January 19, 2021.

[66]  Ex. 47, Ho Wan Kwok Dep. Tr., dated March 2, 2023, at 33:11-13.

[67]  Ex. 48, United States Letter in Opposition to Yvette Wang's Motion for Bond, at 18, *U.S. v. Yanping Wang, a/k/a "Yvette,"* (Mar. 29, 2023) [Case No. 1:23-cr-00118-AT, Docket No. 10].

a. Max Krasner, who, in addition to his work as a Golden Spring employee, has also served the Debtor in numerous other roles, including as employee, officer and/or authorized signatory of Greenwich Land, Hudson Diamond Holdings LLC, Hudson Diamond NY LLC, Infinity Treasury Management Inc. (parent company of Lamp Capital LLC), Rule of Law Foundation, and the HCHK Entities.[68] When the Debtor was asked at his deposition whether Mr. Krasner was his employee and agent, the Debtor asserted his Fifth Amendment right against self-incrimination.[69]

b. Daniel Podhaskie, who, in addition to his work as a Golden Spring employee (general counsel), also served as the Debtor's personal attorney and corporate representative of Genever Holdings LLC and Genever Holdings Corporation. In addition, Mr. Podhaskie served the Debtor in numerous other roles, including as officer and/or authorized signatory for Greenwich Land, Lamp Capital LLC, Infinity Treasury Management Inc. (parent company of Lamp Capital LLC), Hudson Diamond Holdings LLC, and Hudson Diamond NY LLC.[70] When the Debtor was asked at his deposition whether Mr. Podhaskie was his employee and agent, the Debtor asserted his Fifth Amendment right against self-incrimination.[71]

c. Anthony DiBattista, who, in addition to his work as a Golden Spring employee, also served the Debtor as a corporate officer of GTV, GFashion, G-Club, and the HCHK Entities. When the Debtor was asked at his deposition whether Mr. DiBattista was his employee, the Debtor asserted his Fifth Amendment right against self-incrimination.[72]

---

[68] ██████████████████████████████████████████████████; Ex. 39, Hudson Diamond Holding LLC, Consent of Sole Member Without a Meeting, dated July 17, 2019 (reflecting Mr. Krasner as the vice president); Ex. 49, Hudson Diamond NY LLC, Consent of Sole Member Without a Meeting, dated July 17, 2019; ██████████████████████████; Ex. 51, Limited Liability Company Agreement of Lamp Capital, LLC, dated September 8, 2020; Ex. 52, CHAR 500 Form of Rule of Law Foundation (Form 990, Page 7, listing Max Krasner as "President, Treasurer, Director"); Ex. 53, Email by and among Max Krasner, Anthony DiBattista and attorneys from Marcum on the HCHK 2022 Bank Statements in January 2023.

[69] Ex. 47, Kwok Dep. Tr. at 34:6-20.

[70] *See, e.g.* ███████████████████████████████; Ex. 55, Application for Authority of Lamp Capital LLC, dated Sept. 11, 2020 filed with the State of New York (signed by Podhaskie); Ex. 51, Limited Liability Company Agreement of Lamp Capital, LLC, dated September 8, 2020; Ex. 56, Hudson Diamond Holdings LLC, Consent of Sole Member Without a Meeting, dated December 4, 2020; Ex. 57, Daniel Podhaskie resignation as President of Hudson Diamond Holding LLC, dated January 4, 2021; Ex. 41, Hudson Diamond NY LLC, Consent of Sole Member Without a Meeting; Ex. 58, Daniel Podhaskie resignation as President of Hudson Diamond NY LLC, dated January 4, 2021.

[71] Ex. 47, Kwok Dep. Tr. at 34:6-20.

[72] Ex. 47, Kwok Dep. Tr. at 86:13-18.

31.     Furthermore, upon information and belief, other individuals employed officially or unofficially at Golden Spring have included, among others, Han ("Hank") Chunguang,[73] Joe Wang,[74] Bernardo Enriquez,[75] and Alex Hadjicharalambous,[76] each of which have had roles at different entities controlled by the Debtor.

32.     Golden Spring, like the Debtor, his children, and many other entities controlled by the Debtor such as GTV and Saraca, was also represented by Aaron A. Mitchell.[77]  And Golden Spring's general counsel during the early stages of the Chapter 11 Case, Melissa Francis, also represented the Debtor individually.[78]

### F.  Golden Spring's Identity of Interests With Debtor

33.     The degree to which Golden Spring shared an identity of interests with the Debtor was such that it was at all relevant times essentially an extension of his person, as has been revealed by the Debtor and his associates.  For example, Yvette Wang testified on multiple instances that in her capacity as president of Golden Spring she "serve[d] as an administrator for *the interests of [the Debtor]* and his family."[79]  And in correspondence with the seller of a Connecticut mansion the Debtor viewed (but did not ultimately purchase), Ms. Wang wrote that

---

[73]   Mr. Han is a long-standing bodyguard and/or chauffeur of the Debtor who has served the Debtor as, among numerous other roles, as nominal owner of Debtor-controlled entities including Eastern Profit Corporation, Anton Development Limited, and Rosy Acme Ventures Limited, and director and officer of Saraca Media Group Inc.

[74]   Mr. Wang has also served as VP of Technology of HCHK Technologies.

[75]   Mr. Enriquez has also worked at the HCHK Entities and served as Treasurer of Lamp Capital LLC.

[76]   Mr. Hadjicharalambous has also worked at the HCHK Entities, G-Club, and Freedom Media Ventures Ltd.

[77]   Despite being represented by Aaron Mitchell as counsel, Golden Spring was held in contempt by this Court (along with Lamp Capital LLC), based on its failure to comply with Rule 2004 subpoenas.  *See Order Holding Golden Spring and Lamp Capital in Contempt of Court* (Apr. 26, 2023) [Main Case Docket No. 1709].

[78]   *See Motion of Debtor for Entry of an Order Authorization (I) Employment and Payment of Professionals Utilized in the Ordinary Course, (II) Payment of Prepetition Claims, and (III) Granting Related Relief* (Mar. 22, 2022) [Main Case Docket No. 119].

[79]   *See* Ex. 59, Yvette Wang Oct. 11, 2018 Dep. Tr. at 46:20-23 ("Q: I'm asking you whether or not you serve as an administrator for Mr. Kwok's interests? A: Yes.") (emphasis added).  *See also* Ex. 38, May 15, 2018 Affidavit of Yan Ping Wang in *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.) (ECF 182) at ¶ 1. ("I am the President of Golden Spring (New York) Ltd., and in that capacity serve as an administrator for the interests of [the Debtor] and his family.").

Golden Spring was "a family office based in Manhattan" and that "we take care of Miles and his family's business, projects and assets in the US." Ms. Wang concluded by writing: "On behalf of Miles, thank you again for having this beautiful home to him, all the best."[80]

34.    It is also worth noting that the Debtor has used Golden Spring's address at 162 E. 64th Street, shared with a plethora of other of his controlled entities, as his own personal address. A recent case in point is from his chapter 11 petition, wherein, when asked "where you live," the Debtor wrote the name and address of Golden Spring at 162 E. 64th Street.[81]

### G. Parent Company China Golden Spring Controlled By Debtor

35.    China Golden Spring, the Hong Kong entity ostensibly owned by the Debtor's son that is Golden Spring's corporate parent, is yet another company controlled at all relevant times by the Debtor. Upon information and belief, at the time Golden Spring was established, the Debtor ran China Golden Spring through his employee Natasha Qu. The Hong Kong Restraint Order identified China Golden Spring as one of a number of entities whose bank accounts were "subject to the effective control of the Debtor."[82] Other entities so identified in the Hong Kong Restraint Order include HK International (which formerly held title to the *Lady May*), Anton Development Limited (which formerly held title to the Debtor's Bombardier jet), and Eastern Profit, among others.

### H. Debtor Asserted Fifth Amendment Regarding Control Over Golden Spring

36.    The Debtor has asserted the Fifth Amendment on multiple occasions when questioned regarding his control over Golden Spring. At his March 2, 2023 deposition, the Debtor testified as follows:

---

[80]    *See* Ex. 60, Yvette Wang's Email to Louise Camuto on Jul. 11, 2019.
[81]    *See* Ho Wan Kwok's Official Form 101 Voluntary Petition for Individuals Filing for Bankruptcy, at 2 (Feb. 15, 2022) [Main Case Docket No. 1].
[82]    Ex. 2, Hong Kong Restraint Order ¶ 3, Respondent 22.

BY MR. LUFT:
Q. Mr. Kwok, all assets owned by Golden·Spring belong to you, correct?
MR. ROMNEY:  Object to the form.
A. The Fifth.
BY MR. LUFT:
Q. Mr. Kwok, you control Golden Springs Limited, correct?
A. The Fifth.
Q. Mr. Kwok, you have control of all assets·of Golden Spring, correct?
A. The Fifth. [83]

37.   Subsequently, in the Debtor's sworn declaration dated May 11, 2023, the Debtor

was asked to "State that you have control over Golden Spring (New York) Ltd.," and responded:

"I assert my Fifth Amendment rights under the United States Constitution and decline to

answer." [84]

38.   Similarly, the Debtor also asserted the Fifth Amendment when questioned

regarding his control over China Golden Spring.[85]

**FIRST CLAIM**

**(Declaratory Judgment that Golden Spring is the Debtor's Alter Ego and Ordering
Turnover of Golden Spring's Assets to Trustee)**

39.   The Trustee repeats and realleges the allegations contained in paragraphs 1-38.

40.   Delaware law applies to the alter ego claim because Golden Spring is a Delaware

entity.[86]

41.   Under Delaware's two-pronged test for piercing the corporate veil, a court

applying Delaware's alter ego analysis to the Debtor's relationship with Golden Spring will

focus on (1) whether the Debtor and Golden Spring operated as a single economic unit and (2)

---

[83]   *See* Ex. 47, Kwok Dep. Tr., at 26:19-24.
[84]   *Debtor's Sworn Declaration Regarding Responses to Particular Questions*, ¶ 124, Ex. 1 of the HCHK
        Complaint [Adv. Proc. No. 23-05013, Docket No .1], filed June 8, 2023 ("Kwok Declaration").
[85]   Kwok Declaration ¶ 92.
[86]   *See, e.g.*, *Universitas Education, LLC v. Benistar*, No. 3:20-cv-00738 (JAM), 2021 WL 965794, at *7 (D. Conn.
        Mar. 15, 2021) ("[B]ecause [defendant] is incorporated in Delaware, I must apply Delaware law to decide if it
        may be subject to an alter ego claim for reverse veil piercing liability.").

whether there was an overall element of injustice or unfairness.  In determining whether the Debtor and Golden Spring operated as a single economic unit, a court applying Delaware law would consider a number of factors, including, among others, whether Golden Spring was adequately capitalized, observed corporate formalities, and was a facade for the Debtor.[87]  This "list of factors is not exhaustive and no single factor is dispositive."[88]

42.    The Debtor exercised control and dominion over Golden Spring such that Golden Spring had no independent existence from the Debtor and the Debtor used the corporate form to perpetrate a fraud and injustice.  Golden Spring is an alter ego of the Debtor, because, among other reasons:

    a.  Golden Spring was formed at the Debtor's direction for the Debtor's purposes;

    b.  Golden Spring was funded by the Debtor and had no independent source of funds or capitalization;

    c.  Golden Spring's advisors and employees identified the Debtor as the person exercising control over Golden Spring;

    d.  Golden Spring's function has been to hold the Debtor's assets and pay his expenses;

    e.  Golden Spring was managed and staffed by the Debtor's employees;

    f.  Golden Spring shared complete identity of interests with Debtor;

    g.  Golden Spring's parent company, China Golden Spring, was at all relevant times controlled by the Debtor; and

    h.  The Debtor asserted the Fifth Amendment regarding his control over Golden Spring.

---

[87] *Blair v. Infineon Tech., AG*, 720 F. Supp.2d 462, 470-71 (D. Del. 2010) (Noting the factors that the Third Circuit considers in determining whether a corporation operated as a single economic entity, which notably would not include whether the relevant individual is a shareholder of the entity, but would include "gross undercapitalization; failure to observe corporate formalities . . . [and] whether the corporation is merely a facade.").

[88] *Id.* at 471.

43.     At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

44.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Golden Spring was an alter ego of the Debtor; (b) any and all of the assets held by Golden Spring at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Golden Spring at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Golden Spring to the Trustee.

## SECOND CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of Golden Spring and/or Its Assets and Ordering Turnover of Ownership of Golden Spring and/or Its Assets to Trustee)**

45.     The Trustee repeats and realleges the allegations contained in paragraphs 1-38.

46.     The same facts, discussed above, establishing that Golden Spring is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of Golden Spring and/or its assets.[89]

47.     At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

---

[89]     *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1051 (2d Cir. 1997) (defendant that "exercised considerable authority over [the corporation] . . . to the point of completely disregarding the corporate form and ***acting as though [its] assets were his alone to manage.***") (emphasis added).

21

48.     Because Golden Spring was equitably owned by the Debtor, the ownership and corporate control rights over Golden Spring, and/or the assets of Golden Spring, were, following the Petition Date, property of the Estate.

49.     Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Golden Spring purportedly held by China Golden Spring, and/or the assets of Golden Spring, are property of the Debtor's chapter 11 estate; and (2) ordering the surrender of ownership interests and related rights of corporate control in Golden Spring, and/or the assets of Golden Spring, to the Trustee.

## THIRD CLAIM

**(Avoidance of Actual Fraudulent Transfer)**
**(Asserted in the Alternative to First and Second Claims)**

50.     The Trustee repeats and realleges the allegations contained in paragraphs 1-38.

51.     In the alternative, in the event that Golden Spring is ruled to not be the alter ego of or equitably owned by the Debtor, the Trustee asserts actual fraudulent transfer claim against Golden Spring pursuant to Section 276 of the New York Debtor and Creditor Law,[90] made applicable by section 544 of the Bankruptcy Code, in connection with the 2015 Transfer ███ ███ to Golden Spring.

52.     The analysis of a debtor's intent to hinder, delay, or defraud under New York law is identical to the analysis under section 548 of the Bankruptcy Code.[91]  A claim of actual intent to defraud under section 548(a)(1)(A) of the Bankruptcy Code requires allegations that the

---

[90]    This was the New York statute effective on the date of the transfer.
[91]    *In re Combes*, 382 B.R. 186, 193-94 (Bankr. E.D.N.Y. 2008) ("The analysis of the debtor's intent to hinder, delay, or defraud under [section] 548 of the Bankruptcy Code and under New York law is identical.").  The debtor-transferor's intent is at issue in such claims, not the transferee's.  *In re LXEng LLC*, 607 B.R. 67, 91 (Bankr. D. Conn. 2019).

debtor-transferor made a transfer or incurred an obligation with "actual intent" to "hinder, delay or defraud" a past or future creditor.[92]

53.    "Because of the difficulty in proving actual intent to hinder, delay, or defraud in making its case, a party can rely on the 'badges of fraud,' which are 'circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.'"[93]

> Examples of 'badges of fraud' include, *inter alia*: (1) concealing facts and false pretenses; (2) an unconscionable discrepancy in consideration received in exchange for the value of the property transferred; (3) creating a closely-held corporation for property receipt; (4) closeness in relationship between the parties; (5) retaining the property in question for benefit or use; (6) the financial condition of the transferor and transferee both before and after the transfer(s); (7) repeated patterns or cumulative effect of courses of conduct post-insolvency or financial troubles; and (8) the timeline of events. . . The transfer of property to a spouse is a 'classic' badge of fraud. . . . Asset shifting to different corporate entities wholly owned or 'so closely assimilated' by the debtor is an additional badge of fraud.[94]

54.    The facts discussed in this this Complaint establish the following sequence of events.



---

[92]    *In re Integrity Graphics, Inc.*, 623 B.R. 21, 29-30 (Bankr. D. Conn. 2020).
[93]    *In re Jie Xiao*, 608 B.R. 126, 157 (Bankr. D. Conn. 2019); *see also In re Andersen*, 166 B.R. 516, 529 (Bankr. D. Conn. 1994) ("In recognition of that reality, courts have held that fraudulent intent may be inferred from the circumstances surrounding the transfer.  Indirect evidence of fraud may consist of the circumstances of the transfer and the conduct and action of the parties to the alleged fraudulent transfer with respect to the possession, management and control of the premises.") (emphasis added).
[94]    *In re Jie Xiao*, 608 B.R. at 157.

55.     Under this fact pattern, ███████████████████████████████ for no consideration.

56.     Moreover, the facts discussed in this Complaint demonstrate numerous of the badges of fraud commonly associated with fraudulent transfers.  These include, among others:

   d)     "Concealing facts."  The Debtor has denied his funding of Golden Spring. For example, when asked at his Section 341 meeting of creditors whether he had "ever funded Golden Spring New York in any way," he responded "no."[95]

   e)     "An unconscionable discrepancy in consideration received in exchange for the value of the property transferred."  The 2015 Transfer resulted in the Debtor transferring ████████████ without receiving any consideration in return.

   f)     "Creating a closely-held corporation for property receipt" and "closeness in relationship between the parties."  Golden Spring, the recipient of the ████████████ was controlled by the Debtor.

   g)     "Retaining the property in question for benefit or use."  Upon information and belief, the Debtor used the ████████ transferred to Golden Spring for himself given that, as discussed herein, the purpose of Golden Spring was to hold the Debtor's assets and pay for his expenses.

57.     The Debtor's fraudulent conduct in this instance is consistent with his *modus operandi* of using shell companies to hold assets out of the reach of creditors.

58.     At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought in this Complaint by the Trustee in exercise of such creditors' rights.

59.     At all relevant times, the Debtor's creditors would have had no reason to suspect that the 2015 Transfer had occurred.

60.     Accordingly, assuming that the relief requested in the First Claim is not granted, the Trustee seeks a ruling, pursuant to the Section 276 of the New York Debtor and Creditor

---

[95]     Ex. 29, Tr. of 341 Meeting of Creditors, at 35:25-36:2.

Law, sections 544 and 550 of the Bankruptcy Code, (1) avoiding the 2015 Transfer, and (2) ordering Golden Spring to pay ███████ to the Trustee.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that judgment be entered as follows:

1.      On the First Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Golden Spring was an alter ego of the Debtor; (b) any and all of the assets held by Golden Spring any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Golden Spring at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Golden Spring to the Trustee;

2.      On the Second Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Golden Spring purportedly held by China Golden Spring, and/or the assets of Golden Spring, are property of the Debtor's chapter 11 estate; and (2) ordering the surrender of ownership interests and related rights of corporate control in Golden Spring, and/or the assets of Golden Spring, to the Trustee;

3.      On the Third Claim, an order, pursuant to the Section 276 of the New York Debtor and Creditor Law, sections 544 and 550 of the Bankruptcy Code, (1) avoiding the 2015 Transfer, and (2) ordering Golden Spring to pay ███████ to the Trustee, which order shall constitute a money judgment against Golden Spring;

25

4.      Reasonable attorneys' fees, costs, and expenses incurred in this action; and

5.      Such other and further relief as the Court may deem just, proper, or equitable

under the circumstances.

[*Remainder of Page Intentionally Left Blank*]

Dated:  July 25, 2023                    LUC A. DESPINS,
        New Haven, Connecticut           CHAPTER 11 TRUSTEE

                                  By: */s/ Douglass Barron*
                                     Avram E. Luft *(pro hac vice* pending)
                                     Douglass Barron (*pro hac vice* pending)
                                     PAUL HASTINGS LLP
                                     200 Park Avenue
                                     New York, New York 10166
                                     (212) 318-6079
                                     aviluft@paulhastings.com
                                     douglassbarron@paulhastings.com

                                          *and*

                                     Nicholas A. Bassett *(pro hac vice* pending)
                                     PAUL HASTINGS LLP
                                     2050 M Street NW
                                     Washington, D.C., 20036
                                     (202) 551-1902
                                     nicholasbassett@paulhastings.com

                                          *and*

                                     Patrick R. Linsey (ct29437)
                                     NEUBERT, PEPE & MONTEITH, P.C.
                                     195 Church Street, 13th Floor
                                     New Haven, Connecticut 06510
                                     (203) 781-2847
                                     plinsey@npmlaw.com

                                     *Counsel for the Chapter 11 Trustee*