UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 22-50073 (JAM) |
| | * | |
| HO WAN KWOK and GENEVER | * | |
| HOLDINGS CORPORATION, | * | |
| | * | |
| Debtor. | * | |

| | | |
|---|---|---|
| GENEVER HOLDINGS, LLC, | * | Adv. Proc No. 23-05002 |
| et al., | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| KWOK, et al., | * | |
| | * | |
| Defendants. | * | |

| | | |
|---|---|---|
| LUC A. DESPINS, et al., | * | Adv. Proc No. 23-05013 |
| Chapter 11 Trustee, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| HCHK TECHNOLOGIES, INC., | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |

| | | |
|---|---|---|
| HK INTERNATIONAL FUNDS | * | Adv. Proc No. 22-05003 |
| INVESTMENTS (USA) LIMITED, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| DESPINS, | * | Bridgeport, Connecticut |
| | * | August 15, 2023 |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * *

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
#1362      MOTION TO COMPEL COMPLIANCE WITH BK.RULE 2004
           SUBPOENA BY UBS
#2025      JOINT RETENTION & INTERIM FEE APPLICATION
           PRETRIAL CONFERENCE #1; COMPLAINT
# 253      CONTINUE PRETRIAL CONFERENCE
#2002      MOTION FOR ORDER ESTABLISHING PROCEDURES
           INTERIM COMPENSATION AND REIMBURSEMENT OF
           EXPENSES FOR RETAINED PROFESSIONALS
#2065      MOTION FOR ORDER AUTHORIZING TRUSTEE'S AND
           GENEVER DEBTORS' COUNSEL TO FILE SECOND INTERIM
           FEE APPLICATIONS LESS THAN 120 DAYS AFTER
           FILING FIRST INTERIM FEE APPLICATIONS
```

3

APPEARANCES:


| | |
|---|---|
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| For the Chapter 11 Trustee: | AVRAM EMMANUEL LUFT, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| | DOUGLAS S. SKALKA, ESQ.<br>Neubert Pepe and Monteith<br>195 Church Street,13th Floor<br>New Haven, CT  06510 |
| For Creditors Committee: | KRISTIN B. MAYHEW, ESQ.<br>Pullman & Comley LLC<br>850 Main Street, 8th Floor<br>P.O. Box 7006<br>Bridgeport, CT  06601 |
| For U.S. Trustee: | STEVEN E. MACKEY, ESQ.<br>Office of U.S. Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 |
| For HCHK Creditors: | JOSEPH PASTORE, ESQ.<br>Pastore, LLC<br>4 High Ridge Park, Third Floor<br>Stamford, CT  06905 |
| For HK International Funds<br> Investments, LLC and<br> Mei Guo: | JAMES MORIARTY, ESQ.<br>Zeisler & Zeisler, P.C.<br>10 Middle Street, 15th Floor<br>Bridgeport, CT  06604 |

1      (Proceedings commenced at 12:06 p.m.)

2          THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3    Kwok.

4          THE COURT:  Good afternoon.  If we could have

5    appearances for the record, please, starting with the

6    Chapter 11 trustee.

7          MR. DESPINS:  Luc Despins, Chapter 11 trustee.

8          THE COURT:  Good afternoon.

9          MR. LUFT:  Avi Luft, of Paul Hastings, on behalf

10   of the Chapter 11 trustee.

11         THE COURT:  Good afternoon.

12         MR. SKALKA:  Good afternoon, Your Honor.  Douglas

13   Skalka, Neubert, Pepe and Monteith, also on behalf of the

14   Chapter 11 trustee.

15         THE COURT:  Good afternoon.

16         MS. MAYHEW:  Good afternoon, Your Honor.  Kristin

17   Mayhew, Pullman and Comley, on behalf of the creditors

18   committee.

19         THE COURT:  Good afternoon.

20         MR. MACKEY:  Steven Mackey for the U.S. Trustee.

21         THE COURT:  Good afternoon.  Has everyone noticed

22   -- noted their appearances that would like to appear in the

23   matters at noon?

24         MR. PASTORE:  Good afternoon, Your Honor.  Joseph

25   Pastore, representing the HCHK Creditors.  It's an open

1    question in my mind whether we have standing to speak in the

2    status conference.  We did a motion to intervene, but that

3    motion has obviously not been ruled on yet.  So I'm happy to

4    participate, but I wanted to do it deferentially and not

5    just assume that I was participating.

6              THE COURT:  Thank you.  I think what we'll do

7    first, counsel, is probably take up the matters that are not

8    the status conference first, and then we'll see where we go

9    from there.

10             MR. PASTORE:  Okay.

11             THE COURT:  Okay.  Thank you.

12             MR. PASTORE:  Thank you, Your Honor.

13             THE COURT:  All right.  So on the calendar today,

14   there are a few matters, but the first is -- the first

15   matter on the calendar is the joint retention and interim

16   fee application filed by Attorney Skalka.  Are we proceeding

17   with that matter first?

18             MR. DESPINS:  This is for the retention of the

19   maritime counsel?

20             THE COURT:  I believe so.

21             MR. DESPINS:  Yeah.  Yes, we are.  We can proceed,

22   Your Honor.

23             THE COURT:  Okay.  Go right ahead.

24             MR. DESPINS:  Thank you, Your Honor.  For the

25   record, Luc Despins, Chapter 11 trustee.

1          So this is a combined retention application and

2    final fee application for the law firm of Bohonnon, which

3    was special maritime counsel.

4          So just to give the Court a bit of background, as

5    you know, we had to proceed with the sale of the Lady May.

6    We knew enough to know that we don't know -- at Paul

7    Hastings, we don't have  maritime law expertise, so we did

8    the bulk of the work, but there were issues involving the

9    closing.  You know, it has to be close -- the yacht has to

10   be outside of the U.S. territorial waters.  There's a whole

11   process to do that.

12         We were not competent to do that, so we retained

13   this Connecticut firm based in Hartford to provide those

14   services, and they were -- they did it in a very cost

15   effective way.  Their fees are only $3,381 and change.

16         And I know that the U.S. trustee filed a no

17   objection statement and, therefore, unless the Court has

18   concerns or comments, we would like the Court to approve

19   both the retention and the final fee application for that

20   firm.

21         THE COURT:  I have no questions or concerns and I

22   agree that the amount sought is extremely reasonable under

23   the circumstances.  I think it's less than $4,000 total for

24   services that needed to be provided in connection with the

25   sale of the Lady May.

1    So I have no questions or concerns.  And I note

2    that I have not seen any party file any objection to the

3    application and no one is participating in this hearing

4    today that I'm aware of that's objecting to the application.

5            So, Mr. Mackey, did you wish to be heard?

6            MR. MACKEY:  Only to the extent of putting it on

7    the record that the U.S. Trustee's statement of no objection

8    was filed by Attorney Claiborn and it's Document 2040.

9            THE COURT:  Thank you.  So for those reasons,

10   Trustee Despins, the application to employ and to compensate

11   special counsel is granted and the proposed order -- I'm

12   looking at the proposed order right now.

13           The only thing we'll add at some point to the

14   order, the courtroom deputy can add that we can just say

15   that there was a hearing held today on it, and then,

16   otherwise, the proposed order can enter.

17           MR. DESPINS:  Thank you, Your Honor.

18           THE COURT:  Thank you.

19           MR. DESPINS:  So we -- if we skip over the

20   pretrial conference, if that's okay with Your Honor --

21           THE COURT:  Yes.

22           MR. DESPINS:  -- we could move to the next matter,

23   which is a motion of the trustee and the Genever debtors to

24   -- for an order establishing procedures for interim

25   compensation.  We had mentioned -- it's at Docket No. 2002.

1          We had mentioned that this was coming at the, I

2    guess, at the hearing on the first -- or I guess second fee

3    application of Paul Hastings and the Neubert Pepe firm.

4          And basically, we've had discussions with the

5    committee and with the U.S. trustee to establish these

6    procedures, which have been approved in many other cases.

7          And we filed a motion in -- and after the motion

8    was filed we had discussions with Attorney Claiborne from

9    the U.S. Trustee's Office to modify the order to reflect

10   some of her comments and we filed a notice of amended

11   revised proposed order at Docket No. 2047.

12         And essentially the changes requested by the

13   trustees were that she -- well, all parties in interest that

14   are -- that have the right to object would have a 21-day

15   period to object.

16         And in addition to that, she was concerned about

17   the fact that if we do -- prepare fee applications on a

18   monthly basis, there's a -- her view was that in her

19   experience, that increases the cost to the estate and,

20   therefore, we've agreed and the committee also agreed -- or

21   committee counsel agreed to limit the amount of hours that

22   could be charged for the preparation of these monthly fee

23   statements to five hours.

24         And that's in the new Section Q on page five of

25   the revised order at Docket No. 2047.  That reflects that

1    agreement to limit the number of hours that can be spent on

2    these monthly statements.

3            The other change I mentioned to give -- to move

4    from 14 to 21 days is reflected on page three, paragraph D,

5    as in David, of the revised proposed order.  Again at 2047.

6            Other than these two changes, I believe that we --

7    we've -- obviously the committee was involved through

8    committee counsel.  We received no other comments or

9    questions and, therefore, I'm happy to entertain any

10   question the Court may have, but otherwise we would ask the

11   Court to enter the order.

12           THE COURT:  I looked at this revised order not

13   today.  I'm looking at it again now.  I did before, so I've

14   forgotten some of it, but I'm looking at it again right at

15   the moment to see if I have any questions.

16           I apologize.  I don't remember, what happens if

17   there's a dispute?

18           MR. DESPINS:  If there's a dispute, the -- the

19   dispute is -- is heard at the next interim fee application,

20   so that you don't have to deal with this on a monthly basis.

21   So it's kicked to -- in this case, the first fee application

22   would probably be in November, subject to Your Honor's

23   calendar.

24           Would probably be in November, so if there's an

25   objection to the monthly statements filed in September, they

1    would be heard at the first interim application after that

2    and so on and so forth after that for the subsequent --

3            THE COURT:  So this process commences with the

4    period ending August 31st?  Does that mean you can file --

5    you're not going to file something -- let me say it -- let

6    me try to make that make sense, what I was trying to say.

7            The first application that you file that to which

8    this process would apply would include time through and

9    including August 31st?  Is that correct?

10           MR. DESPINS:  Correct.  But as we will see from

11   the next motion, Your Honor may probably knows this, but we

12   did file both the Neubert and Paul Hastings filed a fee

13   application that we're asking -- well, the Court has already

14   scheduled a hearing for mid-September on it.  So that's not

15   filed pursuant to --

16           THE COURT:  Right.

17           MR. DESPINS:  -- this process, although we've

18   applied the same 20 percent hold back --

19           THE COURT:  Okay.

20           MR. DESPINS:  -- because that was part of the

21   agreement with U.S. Trustee and with the committee.

22           THE COURT:  Okay.  I did note that when I reviewed

23   this previous to today's hearing that the fee applications

24   that are scheduled for hearing, this process does not apply

25   to those fee applications.

1          MR. DESPINS:  Correct.

2          THE COURT:  Okay.  And I just note, and I have no

3     problem with it, but the hearing on this -- this process,

4     which is the motion for order 202, was scheduled for

5     1:00 p.m. and it's 12:15, so we're a little early.

6          MR. DESPINS:  Huh.

7          THE COURT:  I don't think anyone is going to show

8     that's not already here, and if they do, I'll -- I'll deal

9     with that, but I don't think that is an issue from the

10    Court's perspective.

11         Does the committee or the U.S. Trustee wish to be

12    heard on these issues?

13         MR. MACKEY:  Your Honor, Steven Mackey for the

14    U.S. Trustee.

15         As to the procedures, this, again, was negotiated

16    with the U.S. Trustee and the committee and trustee's

17    counsel.  And a statement of no objection was -- was filed,

18    by again, Attorney Claiborn, who is on vacation this week.

19    And it is Docket No. 2067.

20         So there's no objection from the U.S. trustee in

21    setting up these procedures.  It will save money and I think

22    shortcut the amount of the work of all the parties, too.

23         THE COURT:  Thank you.

24         MS. MAYHEW:  Kristin Mayhew on behalf of the

25    committee.  I would like to just note the committee support

1   for the motion.  We were certainly consulted and involved in

2   the drafting of the procedure's motion and we agree that

3   it's fair and reasonable and makes sense in terms of keeping

4   costs down.  Thank you.

5          THE COURT:  Thank you.  All right.  I'm looking at

6   the red lined version of the order.  The revised proposed

7   order.  That is -- that was filed at ECF No. 2047.  I'm just

8   taking a moment, Trustee Despins, just to review it again,

9   if you don't mind.

10         (Pause.)

11         MR. DESPINS:  I may have misspoken, Your Honor.

12  You asked me when does this apply.  I think that July --

13  July fees -- if Your Honor enters the order today, the July

14  fees would be subject to this order.

15         THE COURT:  I think -- I think that's what I

16  anticipated.

17         MR. DESPINS:  And I said August before.

18         THE COURT:  What I meant was you wouldn't -- it

19  seemed to me anyway that the first fee application you would

20  file that to which this process would apply would have time

21  through August 31st.

22         MR. DESPINS:  The first monthly statement, yeah.

23         THE COURT:  Right.

24         MR. DESPINS:  Yes.

25         THE COURT:  That's fine.  I understand it.  I

1    mean --

2              MR. DESPINS:  Okay.

3              THE COURT:  -- I think it's fine.

4              Obviously, as we all know, the -- the ability to

5    do this in this case is because there's now funds -- there

6    are now funds available to do this.

7              If it wasn't a -- if there was a situation where

8    there were not funds in the estate or, you know, it may be

9    not warranted, but in the circumstances that exist now in

10   this case, I think it's fine to proceed in this manner.

11             That obviously, you know, could change at some

12   point in the future, but hopefully not, because obviously

13   the hope is that there will be, you know, that you will be

14   able to recover whatever it is you can recover for creditors

15   of the estate, and so then if that's the situation -- but as

16   I've said to people in the past, these types of processes

17   make sense in certain conditions and the conditions exist in

18   this case right now.  So I think it's fine.

19             So the proposed order that is at ECF No. 2047 can

20   enter.  The only change that I would note to the courtroom

21   deputy is on the first page of the order.  They're just a

22   blank for today's hearing date.  So we'll just have to add

23   today's date, please.

24             THE COURTROOM DEPUTY:  Okay.

25             THE COURT:  And otherwise, under the specific

1    facts and circumstances of the case, including the

2    developments that have happened over the last many months in

3    this case, the process is warranted, and will continue

4    unless and until it's not.  And, you know, it may never --

5    it may always continue.

6              So for this -- for this motion, the motion is

7    granted for the reasons stated on the record, and the

8    proposed order with that minor change of the addition of

9    today's hearing date will enter.

10             MR. DESPINS:  Thank you, Your Honor.

11             THE COURT:  Okay.  Thank you.

12             MR. DESPINS:  We have this 1 o'clock issue for the

13   next matter, too, which is the motion to authorize the

14   trustee and the general debtor's counsel to file the fee

15   applications that have been filed just --

16             THE COURT:  I think we can take that up as well.

17             MR. DESPINS:  Okay.  So -- so Your Honor this is

18   at Docket No. 2065.

19             It's a hyper technical issue, but, you know,

20   Section 331 of the code provides that fee applications may

21   not be heard on less than 120 day intervals and it says

22   unless the Court orders otherwise, we and local counsel have

23   filed our second fee application, which has been scheduled

24   for a hearing in mid-September.  I want to say the 15th, but

25   I'm not 100 percent sure of that, but it's in the vicinity.

1           And we just wanted to have a ruling that the --

2    that the Court authorizes that process, not approving the

3    actual applications themselves, but just the hearing on such

4    applications despite Section 331 that the Court enters an

5    order allowing for that.

6           And I believe that we've received no objections or

7    comments to that motion as well.

8           THE COURT:  Does anyone wish to be heard on the

9    trustee's motion for order authorizing filing of fee

10   applications for less than 120 days?

11          MR. MACKEY:  Your Honor, again, Steven Mackey for

12   the U.S. trustee.  It has been reviewed by the U.S. trustee.

13   We have not filed a statement to it, but we have no

14   objection to it.  It would clear up all the fee matters that

15   will have taken place and accrued prior to the new interim

16   payment scheme of which Your Honor has just approved.

17          THE COURT:  Right.  Anyone else wish to be heard?

18   I'm just looking at the proposed order again, Trustee

19   Despins.

20       (Pause.)

21          THE COURT:  The only thing I would add to this

22   order is the -- courtroom deputy we can do that as after a

23   hearing held on.

24          THE COURTROOM DEPUTY:  Okay.

25          THE COURT:  Okay.  Because I note for the record

1    that I see no objections filed with regard to the motion.

2    There is no one participating in this hearing that is

3    objecting to the motion.  The United States Trustee's Office

4    has stated they have no objection to the motion.

5           For all those reasons, the motion is granted and

6    the proposed order with the minor change noted on the record

7    will enter.

8           MR. DESPINS:  So at this point -- thank you, Your

9    Honor.  At this point, I would cede the podium to Mr. Luft,

10   who will handle the pretrial conference of the HCHK matter.

11          THE COURT:  And before that, we continued -- there

12   was a continuance of one of the pretrial conferences today.

13   That continuance was filed last night with regard to the --

14          MR. DESPINS:  Sherry Netherland.

15          THE COURT:  Sherry Netherland, correct?

16          MR. DESPINS:  Yes.

17          THE COURT:  Okay.  And I think that's already been

18   given a new date.  I'm not sure about that, if it's been

19   processed yet.  Sometime in September.

20          But you anticipate at some point either going

21   forward with that pretrial conference or having some form of

22   a resolution.  Is that what I read or am I wrong about that?

23   I could be wrong, because I could be confusing it with one

24   of the other many things in these cases.

25          MR. DESPINS:  Yes.  Yes, so this is not Bravo

1   Luck.  This is the issue --

2            THE COURT:  No.  I know it's not Bravo Luck.

3   Right.

4            MR. DESPINS:  -- so unclear, Your Honor.  There's

5   no real urgency, because unfortunately nobody can live in

6   that apartment at this point.

7            So I think that if Your Honor was so inclined, I

8   would kick that further down the road, but because I don't

9   think there will be any activity in that adversary

10  proceeding short term.

11           THE COURT:  Do you think -- I don't know if the

12  new date has been assigned, but you're saying you would like

13  it to go beyond September?  I think the request was for 30

14  days.

15           MR. DESPINS:  That's true.

16           THE COURT:  That's what I recall.

17           MR. DESPINS:  That's true.  So we have consent

18  from the other parties to 30 days --

19           THE COURT:  Maybe if you have --

20           MR. DESPINS:  -- so I should not ask for --

21           THE COURT:  -- consent again, why don't you file

22  it in advance --

23           MR. DESPINS:  Yes.

24           THE COURT:  -- and it will get continued --

25           MR. DESPINS:  Yes.

1          THE COURT:  -- again.

2          MR. DESPINS:  Yes.  Yes, Your Honor.

3          THE COURT:  Okay.

4          MR. DESPINS:  Thank you.

5          THE COURT:  Thank you.

6          MR. LUFT:  Your Honor, may I approach?

7          THE COURT:  Yes, please.

8          MR. LUFT:  And, Your Honor, I know Mr. Pastore

9    asked earlier whether he could participate.  I certainly

10   have no objection to him being heard on this.

11         THE COURT:  I have no objection to him being heard

12   either, understanding that you -- there is no ruling on the

13   motion to intervene at this point.

14         I know the parties -- I don't remember what the

15   dates are, but I know there's dates that you've agreed to or

16   maybe the Court has ordered.  I don't remember at the moment

17   with regard to response of pleadings, and issues related to

18   the discovery.  Right?  There's still --

19         MR. LUFT:  Correct, Your Honor.

20         THE COURT:  -- discovery.  Okay.  All right.  So,

21   Mr. Pastore, would you just note your appearance for the

22   record, please?

23         MR. PASTORE:  Sure.  Good afternoon, Your Honor.

24   Joseph Pastore, the law firm of Pastore, LLC.  I represent

25   the HCHK creditors as we defined in this case.  With me

1    today is my colleague, Paul Fenaroli, whose appearance has

2    been put on file.

3                THE COURT:  Thank you.

4                MR. PASTORE:  My colleague, Melissa McClammy, who

5    has appeared before you is on vacation this week.

6                THE COURT:  Okay.  Thank you.  And I'm sorry, I

7    mispronounced your name.  I said Pastori.  It's Pastore.  So

8    --

9                MR. PASTORE:  It's been happening since second

10   grade, Your Honor.  No problem.

11               THE COURT:  Unfortunately, I'm sure that's true.

12   Okay.  Go right ahead, Attorney Luft.

13               MR. LUFT:  Thank you, Your Honor.  Avi Luft of

14   Paul Hastings on behalf of the Chapter 11 trustee.

15               So, Your Honor, in some ways, the issues that you

16   just teed up about these dates are really what's before us.

17   As Your Honor knows, we have the 9019 settlement, has been

18   put through.  As part of that, the assignee does not intend

19   to oppose the action we have filed with regard to alter ego

20   and equitable ownership of HCHK.

21               Obviously, if that -- if there is no other

22   interveners and that is the situation and we move forward,

23   we'll move very quickly to summary judgment and try to wrap

24   that up quickly in terms of schedule.

25               But we do have proposed interveners in the case.

1   They have put in their papers, and I believe if it's

2   helpful, I'll do it off the top of my head, but I believe

3   the -- we are supposed to conclude discovery by September

4   8th and I believe we're supposed to file our opposition by

5   September 15th.

6            THE COURT:  That sounds right.

7            MR. LUFT:  And since we were last in front of you,

8   Your Honor, when we had the video, the Zoom conference, and

9   we talked about the discovery, it was agreed that they would

10  send -- I say them, the proposed interveners would serve us

11  with new objections and responses given that their last one

12  were not specific to the claims.  We've received those and

13  then if we had issues with it, our motion to compel would be

14  due today.

15           So I want -- I say that as background, because I

16  think this is where we are right now, Your Honor.  We got

17  the objections and responses and what they said is they have

18  blanket objected to all depositions and they have objected

19  to the vast majority of our document requests.  And in

20  particular, all those going to anything related to the

21  interveners relationship and connection with the debtor and

22  his agents, plus some other things, including documents that

23  would identify who was involved with these alleged loans.

24           I have no intention of arguing that here today,

25  but I say that in the context of most of those objections

1    are centered around the fact as I see them, argument of

2    burden on the grounds that they are still technically non-

3    parties.

4         I had understood Your Honor's order seeking

5    discovery to be basically putting that squarely at what's

6    issued, saying well, that's what we're going to get

7    discovery about.

8         We're going to find out -- we'll get this

9    information and we'll figure out that, because it will go to

10   intervention.  But the objections we've got in back to my

11   mind were one step forward and two steps backwards in that

12   they're now objecting on the same grounds that because

13   they're not technically in the case, we won't get the

14   discovery we need.

15        So I've been thinking about this and I haven't had

16   a chance to talk to Mr. Pastore about it beforehand, but I'm

17   trying to -- what I really care about, Your Honor, is I just

18   want to know who these people are.

19        I want to know if they have valid claims and I

20   want to know if they're being pushed by the debtor.  If

21   they're being controlled by him.  You know, to my mind, that

22   all kind of goes to issues of standing.

23        If what's -- I don't want to go through a whole

24   process and back up our schedule to just fight over whether

25   they're technically in there and then we have an issue on

1    appeal as to whether or not technically they were in or they

2    were not.  So one thought I had, and I'm happy to discuss

3    it, is I want to find a way to make sure that this discovery

4    happens.

5           I think we all agreed on the phone call the other

6    day that both is relevant to intervention and relevant to

7    their request to amend the TRO.

8           Look, I don't -- I want to be practical minded.

9    If, in fact, saying that they can intervene means that they

10   now feel that they are technically in the case and we can

11   then agree that we will immediately do -- take the discovery

12   we're going to do and call it standing discovery, and that

13   issue will be resolved after we have that, that issue will

14   be resolved through what would then I guess be called a

15   motion for summary judgment with regard to their standing or

16   some form of that before we get to the merits, if that

17   resolves these objections and we can actually get the

18   discovery, that's okay with me.

19          Alternatively, if we just can move ahead, I'll

20   file my motion to compel and we can go ahead with that.  You

21   know, I don't want to burden the Court with an unnecessary

22   motion.  It's literally as simple as what we're calling it

23   and making sure that we can do that.

24          If that resolves the burden objections, because

25   now they are not technically non-parties, but parties that

1    can work.  But in terms of a status, so that's kind of where

2    I see it.  Thank you.

3              Mr. Despins corrects me.  It would be a

4    provisional grant to intervene pending --

5              THE COURT:  Well, I don't think --

6              MR. LUFT:  -- something.

7              THE COURT:  -- you can let them intervene and then

8    say they don't have standing.  I mean --

9              MR. LUFT:  Well, I guess that's the question --

10             THE COURT:  Right.

11             MR. LUFT:  -- Your Honor.  That --

12             THE COURT:  But I agree and we'll have -- well,

13   maybe Mr. Pastore, we'll all have to talk, but you filed a

14   motion to intervene to which the trustee objected and said

15   they needed discovery to determine whether or not you're a

16   party who could intervene, and I said, I believe, but I

17   could be wrong, so you all can correct me, that at a

18   conference we had on the two related -- what I see as

19   related motions, although I think your motion to clarify the

20   TRO, that issue has been resolved in some respects by the

21   assignee saying they're not going to take any action in New

22   York until and after this Court resolves this issue.

23             That the discovery was to go to the issue of who

24   you are, your creditors are, and why they would have

25   standing.  So I understand what I -- I think I understand

1    what I just heard, which is that your clients have objected

2    to every -- to all discovery at this point --

3              MR. LUFT:  No.

4              THE COURT:  No?

5              MR. LUFT:  That's not right.

6              THE COURT:  Then let's clarify that.

7              MR. LUFT:  They've objected to all depositions.

8              THE COURT:  Okay.

9              MR. LUFT:  They've reject -- objected to the

10   majority of the document requests, including all those going

11   to any connection with the debtor and his affiliates and

12   they have objected to a document request asking them to

13   identify who was involved, sufficient to show individual

14   involved with the loan.  They have agreed to produce --

15             THE COURT:  Okay.

16             MR. LUFT:  -- documents that would go to what they

17   say are the loans that they made.  So --

18             THE COURT:  And when -- and that's going to be

19   produced on or before September 8th?

20             MR. PASTORE:  That's correct, Your Honor.  May

21   I -- may I speak for a --

22             THE COURT:  Yes, please.

23             MR. PASTORE:  -- because I respectfully disagree

24   with Mr. Luft a bit.  And just so we can get on the same

25   page.

1          We served our objection as we said we should after

2     the last conference, and then we had an hour or two hour

3     meet and confer on the objection, where we further agreed to

4     produce more.

5          And what we agreed to produce initially were all

6     documents related to the loans.  All --

7          THE COURT:  May I -- may I ask you a question

8     about that?

9          MR. PASTORE:  Sure.

10         THE COURT:  So when I -- when you say the loans,

11    my recollection and -- so, again, you please correct me.  In

12    the motion to intervene, I think you attached, or in some

13    pleading you attached a loan, a note, right?  Three

14    different notes, isn't that what it was?

15         MR. PASTORE:  Yeah.  And one wire transfer.

16         THE COURT:  Okay.  So when you talk about the loan

17    documents, you're going to produce the entire loan document

18    file that your client has with regard to that transaction?

19         MR. PASTORE:  Correct.  Any documents we have

20    related to the loans we've agreed to produce, and we did

21    that in our objections.  We did state objections, but those

22    were -- that was a category we did agree to produce.

23         And at the meet and confer, we also agreed to

24    produce any document showing the source of the funds for the

25    loans, which we think is extraordinary and not really

1    relevant or necessary, but we did that in good faith to try

2    to limit the dispute, because if you're a creditor and you

3    have right, title, and interest in the money, it really

4    doesn't matter where you got it from to determine whether

5    you're a creditor or not, but we said we would take the

6    extra step and try to demonstrate the source of the funds

7    the creditors had to eliminate any possible discovery

8    disputes.

9            We did serve general objections as to the inter-

10   relationship between the creditors and the debtor and I'm

11   respectful of the fact, I said this before, we are here in

12   act five of a play.  We missed the first four acts.

13           But we just don't see the legal standing of a

14   creditor, doesn't matter who their friends are or

15   relationships are.  It's did they have right, title, and

16   interest to the funds and did they enter into a creditor

17   type agreement and loan the money such that they're a

18   creditor or not.

19           And whether they have a political view consistent

20   with the debtor, have coffee with the debtor, drive around

21   in the debtor's cars is not really relevant legally to

22   whether they're a creditor or not, and that was something we

23   suggested to the trustee.

24           We did say we've got to give you the documents

25   that show they're a creditor and we'll even take the extra

1    step and give you documents to show where they got the funds

2    from to become a creditor.  We think that's reasonable.

3            So I think Mr. Luft suggesting that we're blanket

4    objecting is not really fair at all.  We did agree to

5    produce all these documents by September 8th and we've --

6    we've begun the process of gathering these documents.

7            THE COURT:  But you're not agreeing to any

8    depositions?

9            MR. PASTORE:  At this point -- so, we couldn't

10   find a single case, and if we brief the motion to compel,

11   we're prepared to argue this, that says interveners have to

12   produce any discovery to be interveners.  Judge Breyer has a

13   decision, I'm doing this off the top of my head, that says

14   they just have to show a cognizable claim.

15           And so we think forcing parties who are not in the

16   United States to sit for depositions when they're not even

17   parties to the case yet is beyond the scope of the case law

18   and law that governs intervention, and that's why we oppose

19   the depositions, because we couldn't reach an agreement on

20   the depositions as to how they would be conducted, and we

21   didn't think it was fair these people had to come to the

22   United States to give a deposition when they're not even

23   parties to the case yet.

24           MR. LUFT:  That's not fair.

25           THE COURT:  All right.  Hold on a second.  Hold on

1    a second.  I'm just listening to what you've just said.

2              So the problem is that the party who had the

3    rights to these claims, right, the assignee has resolved the

4    issues as far as the assignment is concerned with the

5    trustee.

6              And your clients want to -- want to intervene to

7    say that the -- I think that the assignee acted outside the

8    scope of his authority.  I think that's one of the claims

9    that you have, isn't it?

10             MR. PASTORE:  Well, I think it's also they want to

11   intervene to block the alter ego finding.  They're going to

12   support the concept that --

13             THE COURT:  Okay.  But let's just -- let's go -- i

14   understand that you're right.

15             MR. PASTORE:  Yeah.

16             THE COURT:  That's a good point.

17             MR. PASTORE:  Right.

18             THE COURT:  But let's go back through the process

19   of the settlement, at least as I recall it and, again, I'm

20   sure everyone will correct me if I'm wrong.  The settlement

21   says that nothing will happen with regard to the assignment

22   other than the funds coming to the -- this estate to be

23   invested unless and until the trustee proves the alter ego

24   claim.  I think that's accurate.

25             MR. PASTORE:  I think that's fair.

1          THE COURT:  And if that happens, then he proves

2     the alter ego claim, then it doesn't matter whether your

3     clients -- you see, I guess what I'm -- what I'm struggling

4     with and I'm having some trouble with as far as next steps

5     is if -- if the trustee prevails, everything would be

6     collapsed anyway, because your creditors -- your creditors

7     would all be creditors of Mr. Kwok.

8          MR. PASTORE:  Understood.  But if we're right and

9     these companies were not alter egos of the debtor and our

10    intention is to intervene in the case and help counsel and

11    the companies if one appears, or we'll do it ourselves,

12    fight the concept of alter ego and if the Court agrees with

13    us and they're not alter egos, then the money is not

14    property of the estate and we're creditors of those

15    companies entitled to the --

16         THE COURT:  Right.

17         MR. PASTORE:  -- $27 million back.

18         THE COURT:  Right.  So there's no -- there's no

19    harm essentially insofar as if the trustee is not

20    successful, the way the settlement works is the money all

21    goes back to New York and you're -- you're -- I don't know

22    what the status of the creditor body is as far as the

23    assignment is concerned, but apparently your clients would

24    be in control essentially.  You'd have the largest claims.

25         MR. PASTORE:  I honestly don't know.  I know I

1    represent four creditors who have claims.

2         THE COURT:  Okay.

3         MR. PASTORE:  And it seems like they have -- of

4    the 38 million, 39, whatever it is, they have 27.  So

5    they've got a big chunk of it.

6         THE COURT:  Right.

7         MR. PASTORE:  But I don't know about the other

8    creditors.  I have no relationship there.

9         THE COURT:  So -- all right.  I understand what

10   you're saying.  But the discovery, the reason that the

11   discovery was allowed was to provide the trustee the

12   opportunity to make a determination or an argument, whatever

13   the trustee is going to do, to say, yeah, they're -- they

14   are creditors, or they're not, and they shouldn't be allowed

15   to intervene, right?  That's the whole --

16        MR. PASTORE:  Completely agree.

17        THE COURT:  Okay.

18        MR. PASTORE:  Completely agree.  And so the

19   discovery we've proposed again goes to whether we're

20   creditors or not and even goes a step further and says you

21   can even see where we got the money from.

22        I don't know why they need anything else to

23   determine if we're creditors or not.  If we're friends with

24   the debtor and maybe we are.  I don't have a close personal

25   relationship with people, that's not really relevant.

1    THE COURT:  Now, unfortunately, in this case, it

2    might be.  As you said, you missed the first four acts.

3              MR. PASTORE:  No.  I understand that.

4              THE COURT:  So it might be relevant.  I'm not

5    saying -- I'm not ruling on anything.  Okay.  This is a

6    pretrial conference, but it might be relevant.

7              There's a -- there's a bigger problem here that --

8    and what I have to do is I have to look at all the issues as

9    a whole.  I understand completely you represent your clients

10   and you have to worry about your client's concerns without

11   question, but I have to worry about more than your client's

12   concerns.

13             MR. PASTORE:  No, no.  I understand.

14             THE COURT:  And so -- no, I know you do.  All I'm

15   saying is when you say it's not relevant about whether

16   they're friends, or that was one of the examples you gave,

17   that might be true in many, many cases, but in a case like

18   this, it might not be true.

19             And that's part of the problem we have here is

20   that there are so many things that have gone on and what

21   apparently will continue to go on with regard to different

22   entities and different allegations and assertions that I

23   have -- I have knowledge of and/or have ruled on or has been

24   brought -- you know, we haven't necessarily ruled on every

25   motion, but allegations have been made.

1              There's pending -- there are -- I don't know how

2       many adversary proceedings pending, but there are a lot.  I

3       think there's more than 12 or probably even closer to 20.

4       I'm not sure, that have all kinds of issues raised with

5       regard to this debtor and, you know, the allegation from the

6       largest creditor when this case was filed was -- that

7       supported the appointment of a trustee was that this debtor

8       uses different entities to conduct business.  And whether

9       that's proven or not is not the -- that's the allegation,

10      right?

11              And so when the trustee was appointed, the trustee

12      was appointed because even the debtor consented to the fact

13      that cause existed for the Court to do something under the

14      Chapter 1 -- you know, Section 1112 of the code that says

15      you either dismiss, convert, or appoint a trustee.

16              So the debtor didn't even contest that.  They

17      didn't even contest cause.  They didn't think cause existed.

18      Now, they wanted the case dismissed, but they con -- they

19      consented that cause existed.  Okay.

20              So then Trustee Despins gets appointed and all

21      these things happen, including this assignment proceeding in

22      New York where somebody from these entities assigned all of

23      their assets to, you know, to this assignee in New York of

24      assets that the trustee claims are actually assets of the

25      debtor's estates.

1        So while I understand what you're saying, I'm not

2    sure I agree -- can agree right now -- and I'm -- as I said,

3    I'm not ruling anything.  This is pretrial conference.

4    We're having a conversation.

5        MR. PASTORE:  Right.

6        THE COURT:  But that is irrelevant.  It very well

7    may be relevant.  And see that's the problem, because if

8    it's relevant, then the discovery that saw it might be -- it

9    may be appropriate.

10        And so -- but let's keep talking, but I just want

11    you to understand that while I -- your general statement --

12    or not your general statement, your statement may be

13    generally true about it doesn't matter if you went to lunch

14    with the debtor.  That actually may be relevant in this

15    case.

16        MR. PASTORE:  I understand and very respectful and

17    have some -- I've read a lot of the decisions -- some sense

18    of the history of the case and, you know, from our

19    perspective we're -- we're trying to present this in the

20    purest way we can, which is these are creditors from our

21    perspective who loan money to companies.  Those companies

22    are not alter egos.  Those creditors are entitled to be

23    repaid.

24        If somehow the estate is entitled, then, to take

25    the money from the creditors, that's a different issue, but

1    as an operation of law, if they're legitimate creditors,

2    they should be able to intervene and they should be able to

3    be repaid if the companies are not alter egos, and their

4    personal relationships, or personal conduct doesn't change

5    the legal analysis of creditor.

6              THE COURT:  I think it only does with regard to

7    whether they're legitimate creditors.  That's the point.

8              I'm not saying I agree or disagree with anybody at

9    this point, because I don't know.  I haven't seen anything.

10   I don't know what -- well, I have an idea, of course, of the

11   discovery and I have an idea of your responses, and I don't

12   need to see them or want to see them unless and until this

13   is really something that the Court has to rule one, right?

14   And we're -- that may be what's -- where we're headed.

15             But the point still is it may be appropriate

16   discovery under the circumstances of this case, and you may

17   be completely correct that you can't find a case on this

18   issue, and that may be because there isn't a case that has

19   these specific facts and circumstances that someone wrote a

20   decision on that you can rely on.

21             So I understand your point.  I truly do.  I just -

22   - I'm not -- I'm not certain that -- we may just have to

23   have some form of rulings with regard to discovery if there

24   isn't -- if there's still a dispute between the -- among the

25   parties.

1              It does sound like you've made progress and I

2      appreciate that.  Okay.  There's no question that a Court

3      appreciates when parties are addressing discovery that

4      they're working cooperatively and meeting their obligations

5      to do so, which are obviously both sides are attempting to

6      do.

7              So I have no concerns that that isn't happening.

8      However, there may be a point where I have to rule on

9      whether the discovery sought is appropriate under the

10     circumstances.

11             So I understand you already had a meet and confer.

12     I understand you are going to be producing documents by

13     September 8th and then I think I built in some time frame or

14     something I have a recollection of that if there is a

15     dispute, somebody has got to file something by a certain

16     date, and then the Court is going to have to rule, right,

17     because isn't there -- actually, I'm not certain if there is

18     a hearing actually set on the intervention motion yet.

19             MR. PASTORE:  I don't believe there is, Your

20     Honor.

21             THE COURT:  Yeah.  I don't think there is

22     actually --

23             MR. PASTORE:  But --

24             THE COURT:  -- because we had to get through this

25     discovery issue first.

1           MR. PASTORE:  Right.

2           MR. LUFT:  And there is a date.  It is today that

3    we were supposed to file a motion to -- you know, a motion

4    to compel if we have one.

5           THE COURT:  That's today?

6           MR. LUFT:  It is today.  Let me -- I'll cut to the

7    end or the middle, which is, look, I'm happy to talk to Mr.

8    Pastore more and if we can -- if that -- if it's helpful to

9    push out that date by a day or so or to allow us to talk

10   more --

11          THE COURT:  Well, if you both consent to that, I

12   have no problem with that.

13          MR. PASTORE:  Oh, no problem.  We -- I think we

14   have three days to reply.

15          THE COURT:  Okay.

16          MR. PASTORE:  I just want to make sure we keep

17   those three days.  Yeah.

18          MR. LUFT:  Yeah.

19          THE COURT:  Yes.  I mean, we would push everything

20   out --

21          MR. LUFT:  Yeah.

22          THE COURT:  -- if everybody is in agreement.

23          MR. PASTORE:  Of course.

24          MR. LUFT:  That's fine with me, Your Honor.  I

25   will say, and look, I'm not going to get into the back and

1    forth of the characterization.  I think it is all fair.

2              I guess the one thing I'll say is, and at least

3    with my understanding, was that part of what -- and my

4    comments before was part of my understanding of what was

5    fueling the objections was the notion that because they had

6    not yet intervened, they had objections to discovery that

7    were unique, then if they had worked, technically had

8    intervened, but there was still a question of standing.

9              Meaning, if I had just brought a complaint against

10   them and there was -- you know, there was a motion to

11   dismiss no standing, you would go through that, you know --

12             THE COURT:  I understand.

13             MR. LUFT:  -- as it would -- so and that's what I

14   was really trying to get at, which was, look, I don't want

15   to -- I think we need this discovery.  I think we have to

16   have it.  We can disagree as to the scope.  I think that

17   what we're talking about is necessary, but I don't think

18   it's very fruitful to effectively be in a position where

19   that discovery is inherently always going to be hampered

20   because of the posture of where it is.

21             There's always an argument that it's not

22   appropriate discovery at this point, nor do I want to create

23   an appellate issue about that if we can all just agree on a

24   procedure where we can do that type of standing discovery

25   with the understanding that it is important for us to know

1      if they are valid creditors in terms of if they made loans.

2              We have real questions based on what we're seeing

3      on that.  It is important for us to know what is going on

4      with the debtor.  And while I understand that this may have

5      been a lighthearted have coffee, get in the car, we know in

6      this case, we're not talking about our political beliefs.

7      We're not asking if they're both Republicans or Democrats

8      here, Your Honor.

9              We're asking about, quite frankly, if the debtor

10     is controlling or directing these entities.  These are for

11     the most part Himalayan Farms which this Court has already

12     found to be operative -- you know, do the business interest

13     and largely under the control of the debtor.

14             We have very significant reasons to have questions

15     about whether the debtor is directing this.  Based on that,

16     based on what we talked about yesterday that the evidence is

17     coming in that even from jail, Mr. Kwok is having Ms. Wang

18     direct these entities to still do that.

19             I think all that is very pertinent and if what's

20     going to hold up getting that discovery or allow it is

21     figuring out this procedural mechanism, then I'm happy to

22     talk to Mr. Pastore, but I really do think we should try to

23     find a way that allows us to do this once and get it right.

24             THE COURT:  Well, I mean, I haven't seen

25     obviously, and I -- as I said, I don't think I should see

1    until I have to rule any objections to the discovery, but I

2    don't think you -- well, let me say it a little differently.

3    It was certainly not the intention to have discovery met

4    with a response that I don't have to provide this yet

5    because I'm not an inter -- I haven't intervened.  That I

6    think -- that doesn't make any sense.

7            I wouldn't have allowed the discovery.  I would

8    have just denied your motion to intervene.  I mean, I think

9    that's -- so we have to be -- you know, I think there is

10   utility in being practical under the circumstances, and

11   without question, have allowed you to participate in the

12   hearings, be heard, and assert positions on behalf of your

13   client, but you haven't -- the motion to intervene hasn't

14   been granted yet, so you're not an intervener yet.

15           However, under the circumstances, I allowed you to

16   be heard. I thought that it was clear, and I apologize if it

17   was not, that the discovery has to go to the issue of

18   whether or not you're entitled to intervene.  Not -- I don't

19   think you can interpose an objection based upon an assertion

20   that because you're not inter -- you're not an intervener

21   yet, you're not bound by the same Rules of Civil Procedure

22   regarding discovery.

23           And I'm not sure that you've said that.  I'm

24   not -- I don't even want to -- I'm not trying to get into a

25   whole disagreement.  All I'm saying is the purpose of the

1    discovery from the Court's perspective was to allow the

2    trustee, because I think it's a valid request, to determine

3    whether or not your clients should be allowed to intervene,

4    and I think that's valid.

5            And, again, it's because of so many other things

6    outside of the four corners of this complaint, and within

7    the four corners.  It's both.  But as I said, you know, I

8    have to think about, as does the trustee as the fiduciary

9    and representative of all these estates, right, everybody,

10   not just specific people.

11           So I don't know how you want to handle this.  I

12   mean, if you want to take -- if you want to take a recess

13   and talk or what you -- what you want the court to do.

14           But it sounds like you both agree that you can

15   extend out for a couple of days this time frame to file a

16   motion, which would require the Court to make some rulings

17   on discovery issues.  Is that correct?

18           MR. LUFT:  It's agreeable to me.

19           MR. PASTORE:  Absolutely agreeable to us.

20           THE COURT:  Okay.  And then the reply deadline

21   would be extended out as well.

22           MR. LUFT:  Of course.

23           THE COURT:  So how do you want to handle this?  Do

24   you want to take a short recess?  Do you want to report back

25   later?  What -- what do you -- what would you like to do?

1          MR. LUFT:  We can report back later, maybe,

2    because I know that you have other things on the docket and

3    we have people here, Your Honor.

4          THE COURT:  There's only one other thing on the

5    docket, I think, right?  Unless I've missed something.  But,

6    yes, we can report back later.  That's fine.  Why don't --

7          MR. LUFT:  Okay.  Does that work for you?

8          THE COURT:  -- we do that?  Why don't you talk and

9    then --

10         MR. LUFT:  Great.

11         THE COURT:  -- we can go from there.

12         MR. LUFT:  Okay.  Your Honor.

13         THE COURT:  Okay.

14         MR. PASTORE:  May I just say one thing for the

15   record?  I don't -- yes, we may have interposed objections

16   based on our standing as interveners, et cetera, but our

17   fundamental -- I think to divide these documents,

18   fundamental issue is we saw our obligation to produce

19   documents that demonstrated -- demonstrated we were

20   creditors and demonstrated, as I said, a step further where

21   we got the money from.

22         We did draw a line to say that our relationship to

23   the debtor, we didn't think was relevant to whether or not

24   we're legally valid creditors, because that's a legal

25   analysis of our loan documents and the tendering of credit.

1          I don't think we've taken the position that we

2    don't have to demonstrate that we're valid creditors in the

3    case.  We wouldn't do that and we haven't done that.

4          THE COURT:  Okay.  Thank you.

5          MR. PASTORE:  Yeah.

6          THE COURT:  All right.  So then why don't we --

7    I'll let -- I'll take up another matter on the calendar and

8    you both can talk and see if you have anything that you'd

9    like to report back, but I understand, even in the absence

10   of a report, that I'm not going to hold you to the dates

11   right now other than the September 8th date, that -- with

12   regard to filing a motion and/or replying to that motion on

13   a discovery dispute at the moment.  Okay.

14         MR. LUFT:  Thank you, Your Honor.

15         THE COURT:  Okay.

16         MR. PASTORE:  Thank you, Your Honor.

17         THE COURT:  All right.  Thank you both.  Then the

18   only -- am I incorrect -- or if it's just -- I think the

19   only other matter on is another -- is the --

20         MR. LUFT:  I believe it's the HK USA.

21         THE COURT:  Yes.  The 22-5003 HK USA pretrial

22   conference, correct?

23         MR. DESPINS:  Correct, Your Honor.

24         THE COURT:  I think Attorney Moriarty is coming

25   forward for that.

1          Okay.  With regard to HK Funds, USA Adversary

2     Proceeding 22-5003, if we could just note appearances for

3     the record, please.

4          MR. DESPINS:  Luc Despins, Chapter 11 trustee.

5          MR. LUFT:  Avi Luft of Paul Hastings on behalf of

6     the Chapter 11 trustee, Your Honor.

7          MR. SKALKA:  Douglas Skalka, Neubert, Pepe, and

8     Monteith, also on behalf of the Chapter 11 trustee.

9          MR. MORIARTY:  Good afternoon, Your Honor.  James

10    Moriarty, of Zeisler and Zeisler, for HK International Funds

11    Investments, USA Limited, LLC and Mei Guo.

12         THE COURT:  Good afternoon.  All right.  So this

13    pretrial conference, we held a pretrial conference on July

14    18th and then we continued the pretrial conference to today.

15         So have the parties had any further discussions as

16    to the status of this adversary proceeding and what you're

17    looking for the Court to do?

18         MR. LUFT:  We have had discussions, Your Honor.  I

19    can't say that we're in agreement, but I'm happy to brief

20    the Court on where we are.

21         THE COURT:  Please.  Go right ahead.

22         MR. LUFT:  May I approach?

23         THE COURT:  Yes, please.

24         MR. LUFT:  Thank you, Your Honor, for the record.

25    Avi Luft, of Paul Hastings, on behalf of the Chapter 11

1    trustee.

2              So we have had the chance to talk with opposing

3    counsel, and the issues that I think were before us is the

4    fact that what I'll refer to as claims three, four and five

5    in the action.  Three being the equitable ownership, four

6    being the fraudulent transfer, and five being the tort claim

7    were still outstanding.

8              There is a preliminary injunction that which

9    remains in effect in the case and there is also what I think

10   is relevant, I'll explain why, our summary judgment motion

11   for interpleader which is sub judice.

12             The Court has asked what are we -- what are we to

13   do with these?  What's with the remainder and -- by way of

14   background, I think it's first important to look at claim

15   three, which is equitable ownership.

16             Last time it was suggested that that was a claim

17   pled in the alternative to claims one and two.  That's not

18   the case and I think we've worked that out and I think

19   they'll agree that that's clear.  Claim three was not an

20   alternative claim.  It was another basis.  Another claim.

21   But not something in contrast to one and two.

22             Now, it still remains live.  Counts four and five,

23   Your Honor, I think should not be dismissed, because there

24   are appeals pending, but it is true that if we prevail on

25   Counts 1 and 2, and it potentially in addition to three,

1    Counts 4 and 5 would not be operable, because, in fact, we

2    would be the alter -- it would be the alter ego.  Finding

3    would be held up and equitable ownership would be there and,

4    thus, there would not be a question of fraudulent transfer

5    or the tort.

6         Now, in the interpleader action, the defendants

7    have taken the position that the trustees -- the Court's

8    decision on alter ego, granting it all property and rights

9    and that is not sufficient and that they can still somehow

10   stop the interpleader and, thus, prevent the transfer.

11        We don't agree with that.  We don't believe that's

12   what -- that we believe the Court's decision is very clear

13   as to claim two which transfers all property, which would

14   include all contractual rights.

15        It also directed them to take all steps to comply,

16   which would include their right to simply call the

17   interpleader agent and tell them to release the funds.  But

18   they have focused on the fact that claim three is equitable

19   ownership and they say that absent getting those rights, we

20   don't have enough.

21        So why do I say all that?  It's because it really

22   puts us to a question of what do we do with claim three?  I

23   believe to the extent the sum -- the Court agrees with us on

24   our summary judgment motion for interpleader, then the

25   monies will be released to us, at which point I don't know

1    if there is a reason to proceed with claim three.

2              However, pending that decision or if that summary

3    judgment is not granted, then, of course, we will have to

4    proceed with claim three, because under -- that's the crux

5    that the defendants are using to argue is the sort of last

6    piece of straw we don't have to force their hand to release

7    it.

8              So in that instance, Your Honor, we're in a

9    position where I'd say I think we need to wait on the

10   decision for the interpleader.  I don't think it makes much

11   sense to decide before that.

12             Obviously, if the Court agrees with us, then those

13   monies will be released and at least to our knowledge that

14   will be the assets of HK USA to what we -- that we know of,

15   and all those will be released to us and I don't know if

16   there's a need to proceed with claim three.

17             Alternatively, if that -- if you do not agree with

18   us or that we go in a different order, we need to proceed

19   with claim three.

20             Now, where that leaves the other question I think

21   you asked us, which is there were questions about whether

22   claims one and two are final, I believe that was something

23   that other side has raised, trying to say that they should

24   be treated as final and not interlocutory.

25             I don't think that's right.  I think claims one

1     and two and three are inextricably intertwined with each

2     other in terms of the facts.  I don't think it makes any

3     sense to do an appeal of claims one and two while three may

4     be out there.

5              So to the extent there's an issue that we're going

6     to have to proceed with claim three, I think it makes sense

7     to treat -- continue to treat claims one and two as

8     interlocutory pending the decision as to claim three if we

9     need to go ahead with it.

10             So that's where I think we are, Your Honor.  We

11    have not unfortunately been able to reach an agreement with

12    regard to the interpleader funds and, thus, we still remain

13    having to rely on the Court's decisions to move us ahead

14    there.

15             But as I said, until we know what's going on with

16    that, given the position that they've taken that we

17    effectively need rights bestowed by claim three despite the

18    fact that we don't think we do, we think what you granted in

19    claim -- in your decision with regard to the alter ego was

20    more than sufficient.

21             But given their position, we're not in a position

22    to say that claim three is no longer necessary to be heard.

23    I think it's just going to need to have to wait until that

24    interpleader decision is decided.

25             THE COURT:  Okay.  Thank you.  I understand your

1    position.  So I will hear from Attorney Moriarty, please.

2    Thank you.

3              MR. LUFT:  Thank you, Your Honor.

4              MR. MORIARTY:  Good afternoon, Your Honor.  Once

5    again, James Moriarty for HK USA and Mei Guo.

6              My client's primary concern is having the appeal

7    of the two pending judgments heard as expeditiously as

8    possible.

9              And the concern is if we put Count 3 off to the

10   side -- four and five are pled in the alternative and

11   admittedly when our summary judgment papers were drafted, we

12   viewed two and three as being in the alternative, which is

13   why we made the argument that the trustee would get all of

14   the relief he was seeking.

15             And if you go back and you look at that argument,

16   it starts with the premises that two and three are in the

17   alternative, and admittedly they're not.  I went back, I

18   looked at the counterclaim several times.  Count 3 is not in

19   the alternative to Count 2.  It relies on the same facts as

20   Count 2, but four and five are pled in the alternative with

21   four as one, two, or three, and I believe with five, it's

22   one or two.  So those four and five are in the alternative.

23             Those can go off to the side.  I don't think that

24   they would impact the appeal at all.  Three is the count

25   that could impact the appeal and if we want to wait until

1    the Court rules on the interpleader summary judgment motion

2    and then determine what we're going to do with Count 3 and

3    then the trustee through his counsel says, no, we have to

4    pick up Count 3, because the Court denied summary judgment

5    on the interpleader, we're taking up a lot of time.

6             And I understand Attorney Luft's point, which is

7    Count 3 maybe it gets us to the interpleader funds if we

8    don't get there through the summary judgment motion in the

9    interpleader on the escrow agreement.  The other way you get

10   there and the argument that my clients have made is you need

11   a final non-appealable order.

12            So we don't contend that Count 2 doesn't give the

13   trustee the escrow funds.  It does and the trustee is

14   holding them right now.  The question is timing and when

15   they can be released.

16            And if the appeal is heard on Count 2 and that

17   becomes a final order.  Now granted, subject -- my clients

18   may decide they want to go to the Second Circuit.  I don't

19   know that, but that is another way that you get to that

20   final non-appealable order that you need under that escrow

21   agreement.

22            Now, granted, Your Honor, can grant them summary

23   judgment in the interpleader action and then apparently this

24   all goes away.

25            So from my client's perspective, if this Court

1    were to enter an order under Federal Bankruptcy Procedure

2    754, Federal Rule of Procedure 70 -- or 54B -- excuse me --

3    that there is no just reason for delay for the appeal of the

4    judgments on Counts 1 and 2, which I believe totals about

5    $57 million in assets that have been transferred to the

6    trustee,  I believe, assuming that their fee applications

7    that have just been filed are approved in September, the

8    entity of the Lady May proceeds will have been expended and

9    then we'll start to get into, assuming they can be released,

10   the escrow funds.

11           So we're going to be spending those down while my

12   clients' appeals are pending, maybe the trustee brings in

13   more assets.  Maybe he doesn't.  Who knows what the Sherry

14   Netherland's apartment will be worth.

15           My point is is that there is no just reason for

16   delay as to those two claims, and we get to the final

17   judgment through the appeal maybe quicker than we do, even

18   if the trustee were to move for summary judgment on Count 3,

19   I'm not in position to tell you what rights that would give

20   the trustee under Second Circuit law.  Maybe the trustee can

21   then waive the provision in the escrow agreement.  Maybe he

22   can't.  Maybe my clients would appeal that.  I don't know.

23           My point is -- and maybe it's a long-winded way to

24   make my point -- that it seems like the most expeditious way

25   to get to a final judgment on Count 2, and get the escrow

1    funds to the trustee, assuming he's successful on appeal, is

2    through the appeal process, and Count 3 can be put in the

3    corner with four and five.  We'll agree that those three

4    counts are stayed and we pursue the appeals, and whatever

5    happens with the appeals happens.

6            THE COURT:  Well, isn't it up to the district

7    court as to whether or not you have a right to appeal at

8    this point?  Isn't -- doesn't the district court make that

9    determination?  Because I think you filed a motion -- you

10   filed a notice of appeal, but a motion for leave to appeal

11   on both Counts 1 and Counts 2, didn't you?

12           MR. MORIARTY:  So there's -- I will answer that by

13   saying no and yes.  So initially we filed notices of appeal.

14   We filed on behalf of HK and Ms. Guo the appellate brief I

15   believe two weeks ago.  And in the appellate brief, we asked

16   the district court if you find that these judgments are not

17   final, then you should grant us, us being the clients,

18   interlocutory appeal.

19           So yes, we did do that.  More recently, and this

20   may be what Your Honor has in mind, the debtor filed a

21   notice of appeal and a motion for interlocutory appeal.

22           THE COURT:  Oh, maybe that's what it is.  Yes.

23           MR. MORIARTY:  Related to --

24           THE COURT:  I could --

25           MR. MORIARTY:  -- the Fifth Amendment issue.

1          THE COURT:  Oh, no.  I was talking about this

2     case.  I wasn't talking about the Fifth Amendment issue.  I

3     thought that when you appealed these summary judgment

4     rulings that you had filed -- and so I'm just wrong.  If you

5     didn't file a motion for leave to appeal, I thought you did.

6     Whatever.

7          My point is is if this is before the district

8     court now --

9          MR. MORIARTY:  Well, it --

10          THE COURT:  -- so what jurisdiction do I have to

11     do anything under Rule 54 at this point in time?  You filed

12     -- which is absolutely your clients' right.  You filed a

13     notice of appeal, right?  So that -- of the rulings on the

14     summary judgment.  I don't -- I have no idea what the status

15     is of the appeals before the district court, but it's in the

16     district court's hands at this point.

17          MR. MORIARTY:  So the appeals of the judgements on

18     the first and second count are pending before the district

19     court.  That is correct.  The appellants, my clients, have

20     filed their opening brief.  The trustee has not responded to

21     that yet.

22          As of right now, because there has been no order

23     entered under Rule 54(b) by Your Honor finding that there is

24     no just reason for delay, those orders are technically --

25          THE COURT:  I wouldn't even think you could enter

1     that order while there's an appeal pending, can you?  I

2     mean, I'm not sure you can.

3             MR. MORIARTY:  I have not looked at that issue,

4     Your Honor.

5             THE COURT:  I mean, there's -- you can't get a

6     Rule 60 motion granted or a 59 motion granted when there's

7     an appeal pending without leave of the district court I

8     think.  So I don't know if -- I don't know the answer to the

9     question honestly, but I know that under Rule 60 and 59 you

10    can't do anything when there's an appeal pending.

11            MR. MORIARTY:  So I agree with that, Your Honor,

12    because as a general matter an appeal divests jurisdiction

13    from say the district court, the Second Circuit.

14            In this particular case to the extent that there

15    is an issue of final and appealability with respect to those

16    judgments, this Court should be able to, and I'm not going

17    to say could, because admittedly I haven't researched the

18    issue, certify under 54(b) that there is no just reason for

19    delay making those judgments final to the extent they are

20    not already.

21            And I'm happy to submit a short brief on that if

22    that would be helpful.

23            THE COURT:  I don't know yet.  Hold on a second.

24    I was just reading something.

25            (Pause.)

1      THE COURT:  Well, it says that under 54(b) I'd

2   have to expressly determine that there is no just reason for

3   delay, otherwise any order or other decision, however

4   designated, that adjudicates fewer than all of the claims or

5   the rights and liabilities of fewer than all the parties

6   does not end the action as to any of the claims or parties

7   and may be revised at any time before the entry of judgment

8   adjudicating all the claims and all the parties' rights and

9   liabilities.

10      So it doesn't have the same language as Rules 59

11   and 60, because they're -- because right now, the district

12   court -- I don't actually know how you teed it up other than

13   what you've said in your brief.  I don't even know if the

14   district court is determined that you have the right to

15   appeal those summary judgment rulings right now.

16      And you're saying that you want me to find that --

17   you want that -- you want to take that issue off the table

18   by having me enter an order under 54(b) with regard to

19   Counts 1 and 2 of the complaint?

20      MR. MORIARTY:  Correct, Your Honor.  Then we

21   remove forward with the appeal, which as I said, my clients

22   have already submitted their opening brief.  We would agree

23   to stay Counts 3, 4, and 5.  Nothing --

24      THE COURT:  So what's the -- what's the just

25   reason?  What's the -- what is the reason that I would

1    expressly determine that there's no just reason for delay?

2          MR. MORIARTY:  The only other count under which

3    the trustee can obtain relief, my understanding based on

4    where we are now, obviously things can change, would be

5    Count 3 and that would be the trustee obtaining the equity

6    of the entity and control over the entity.

7          And Attorney Luft just I believe told the Court

8    that if Your Honor enters summary judgment in the trustee's

9    favor on the interpleader action, then they probably don't

10   have to do that, because really what they're focused on is

11   the provision in the escrow agreement that says there has to

12   be a final non-appealable order.  And if Your Honor grants

13   them summary judgment on the interpleader issue, then

14   presumably that goes away and they're not --

15         THE COURT:  Well, it doesn't go away if your

16   client appeals it.

17         MR. MORIARTY:  Maybe there's a stay.  Maybe

18   there's not, Your Honor.  You're right.  It doesn't go away

19   if my client appeals it, assuming my client is successful on

20   appeal.  If there's no stay, obviously the order becomes

21   effective.

22         There's 57-ish million dollars in assets when you

23   take into account the escrow funds plus the Lady May and how

24   much that was sold for.  The trustee is spending that money.

25   It's his right to do it, at least with respect to the Lady

1    May funds.

2              But that is really what the core of this dispute

3    is.  It's the assets of HK and those assets are being

4    dissipated by the trustee.  Maybe dissipated is too strong

5    of a word.  They're being spent, and again it's his right to

6    do it.  The Court has blessed him doing that.

7              But that's really the issue.  The issue is the

8    assets and the Court has determined, based on Counts 1 and

9    2, that the assets are assets of the estate.  My clients

10   obviously disagree with that, which is why they're

11   appealing, but that's why there's no just reason for delay.

12             In addition to the fact that if Your Honor grants

13   summary judgment on the interpleader, and even if you don't,

14   the Lady May assets, the funds that were received from the

15   sale of Lady May are going to be completely gone with these

16   next fee applications.

17             And then assuming that Your Honor grants summary

18   judgment on the interpleader action and the trustee has the

19   ability to spend down the escrow funds, my understanding

20   from just sitting in the courtroom today is that the trustee

21   is going to start submitting fee applications on a monthly

22   basis, and if those are granted, we're going to be spending

23   down those escrow funds.

24             Maybe not as quickly as we are with the present

25   fee applications, which are based on many months, but that's

1    why there's not just reason for delay, Your Honor, is we get

2    at least closer to finality with respect to those assets,

3    which as I said total about $57 million.

4         THE COURT:  Well, I mean, there's more than one

5    way you could get there.  You know, your clients have

6    decided -- your clients brought this adversary proceeding.

7    They started the adversary proceeding in April of last year

8    to determine -- for a declaratory judgment that they were

9    the owners of the Lady May.  You know, I found otherwise in

10   connection with Counts 1 and Count 2.  Your clients have

11   appealed those orders, whether they're final or not.

12        So the issue is with regard to the remaining

13   counts of the complaint, and there are three of them, and

14   your clients argued that three was an important cause of

15   action, but I think I hear you changing that position, and

16   that's fine.  I just want to be clear.  Are you changing

17   that position?  Because I think it was Ms. -- I'm so sorry.

18   I can't think of her name.

19        MR. MORIARTY:  Warnick.

20        THE COURT:  What's her name?

21        MR. MORIARTY:  Warnick.  Melissa Warnick.

22        THE COURT:  Ms. Warnick who argued that, that

23   Count 3 was essential, so --

24        MR. MORIARTY:  Ms. Warnick's argument, and this is

25   just me going on memory from sitting in the courtroom that

1    day, was the trustee was trying to bypass a step in the

2    alter ego analysis, which was there was no allegation that

3    the trustee and no evidence that the trustee owned any

4    interest in HK and the argument was the trustee first had to

5    prove that the debtor had an ownership interest, some type

6    of an equity interest in the entity in order to be able to

7    get to the alter ego.

8              In other words, if you're not an owner, whether

9    directly or indirectly, under Delaware law, there is no

10   alter ego.

11             Your Honor, disagreed with that.  You disagreed

12   with that in your decision.  We respect that.  That's part

13   of our appeal, but that's what Your Honor's decision was.

14             As it relates to Count 3, in Your Honor's

15   decision, you specifically distinguish the relief that the

16   trustee could obtain under Count 2 and under Count 3.

17             Under Count --

18             THE COURT:  Because the counts specifically

19   distinguish that.

20             MR. MORIARTY:  Well, I get that, Your Honor.  So

21   it's not that we're changing our position.  What we're

22   saying is this is what Your Honor found.  Regardless of what

23   the argument may have been, this is what the Court found,

24   and the Court found that under Count 2, you get the assets.

25   Under Count 3, you get the control.

1          And that's what we've been pointing to in arguing

2     in the interpleader action that the order is not final and

3     that the trustee needs a final non-appealable order.

4          THE COURT:  Well, you're also assuming that

5     whatever the district court does is say it's a final order.

6     What if they say it's not?  What if the district court says

7     this is an interlocutory appeal or what if the district

8     court says, you know what?  The bankruptcy court was wrong

9     and you need to go back and do something different.

10         I mean, you're making an assumption that if

11    there's a certification from this Court that these two

12    rulings are final, that that means that everything is going

13    to move forward for your clients, and that's not necessarily

14    true.

15         The district court could -- could rule -- you

16    know, say reverse and remand or ask for a clarification or

17    they could do -- district court could do many things.  I

18    don't -- you know, that's the district court's prerogative

19    and purview.

20         So I'm not sure that -- you know, my thought is

21    you've already said that Count 3 is a separate and distinct

22    count and it -- and the argument was that it was integral to

23    Count 2.  And so now, you're saying so find one and two as

24    final so we can get on with our appeals.

25         Well, your appeals are pending and whatever the

1    district court is going to do, the district court is going

2    to do.  I don't know what that is.  The district court could

3    find that I -- that this ruling was correct in some ways.

4    Incorrect in other ways.  They could find that it's all

5    incorrect.  They could remand for further -- I mean, who

6    knows?

7          MR. MORIARTY:  I agree with -- I agree with you,

8    Your Honor, that the issue that we're talking about here

9    right now is the issue of jurisdiction now.

10          So the district court could conceivably say these

11    orders aren't final, but I'm granting interlocutory -- I'm

12    granting you leave to proceed on interlocutory basis as to

13    one and two.

14          The district court could say these orders aren't

15    final and I'm denying your motion for an interlocutory

16    appeal.  Then we no longer have an appeal pending, and I

17    assume then we have to move forward with Counts 3, 4, and 5,

18    because that's the only way we ever get through the entire

19    case, and that's my point.

20          My point is is that the trustee is saying, we

21    really don't want to proceed with Count 3 right now, because

22    we want the summary judgment ruling in the interpleader

23    action, and then maybe we'll have to proceed with Count 3,

24    but don't certify under Rule 54, and we're basically at a

25    standstill.

1        If we get to 54(b) certification, the district

2   court could say it's not good enough and reject it.  I get

3   that.  I don't think that -- I would hope that that wouldn't

4   happen, but in that particular case, we're moving forward

5   with those two appeals.  A district court is going to decide

6   the appeals however.  She's -- Judge Dooley's going to

7   decide them, but at least we're moving forward.

8        I guess the other alternative is --

9        THE COURT:  Well, then, if you're moving forward,

10  what do you need me to do anything for?

11       MR. MORIARTY:  Because we don't -- at this point

12  in time, Your Honor, Judge Dooley can say she doesn't have

13  jurisdiction over the appeals.

14       THE COURT:  That's right.

15       MR. MORIARTY:  If we get --

16       THE COURT:  She can say that.

17       MR. MORIARTY:  -- if we get the certification from

18  you under 54(b) that these judgments are final and that

19  there's no just reason for delay and she accepts that, then

20  there is jurisdiction and there's no question about it.  And

21  as Your Honor said before, we're trying to take that issue

22  off the table.  That's really the whole focus.

23       THE COURT:  But I don't know if you can do it the

24  way you want to do it.  That's the point, right?  I

25  understand what you're saying, but I don't know if you can

1    just come in and say, you know what?  We want to move this

2    along differently, so, you know, certify that these are

3    final judgments.

4            I don't know if that's -- if that's really --

5    meets the standard --

6            MR. MORIARTY:  Well, the --

7            THE COURT:  -- under Rule 54.

8            MR. MORIARTY:  So the Second Circuit requires

9    something more than just a statement --

10           THE COURT:  Right.

11           MR. MORIARTY:  -- that there's no just reason for

12   delay, but I articulated before that the $57 million that's

13   being spent down and those two judgements are really the

14   core of the case.  If the trustee --

15           THE COURT:  The core of what case?

16           MR. MORIARTY:  This adversary proceeding,

17   because --

18           THE COURT:  Okay.

19           MR. MORIARTY:  -- if the trustee gets access to

20   the escrow funds, if the Court says, I'm granting you, Mr.

21   Trustee, summary judgment in the interpleader action and

22   that's not stayed, then the trustee can spend the escrow

23   funds, and that's really what the focus is.

24           The focus is about the timing of when can the

25   trustee access these funds to pay estate expenses, including

1    his attorney's fees and --

2              THE COURT:  Oh, it's not just to pay estate

3    expenses, Mr. Moriarty.  I mean, it's to pay creditors.

4    Remember, Mr. Kwok voluntarily filed his Chapter 11 case.

5    So that's what happens.

6              MR. MORIARTY:  I don't disagree with you, Your

7    Honor.  That is the whole purpose of the bankruptcy case, as

8    I understand it, is to pay creditors at the end, but I think

9    we're pretty far away from that right now.  I know that

10   there's a number of claims that have been filed, and as far

11   as I know, there hasn't been any process to, you know, weed

12   out claims, object to claims, whatever the trustee is going

13   to do.

14             But, again, that goes --

15             THE COURT:  In what Chapter 11 case do you think

16   at this point after a year that that would be happening?

17             You know, all I'm saying is the arguments that

18   you're making are just -- they're just not -- with regard to

19   that issue, you keep trying to -- or at least it seems as

20   though you're trying to argue that this is all about so the

21   trustee can get paid.  I don't think that's fair.

22             MR. MORIARTY:  And I -- and that's not the point

23   of the argument, Your Honor.  It's not so the trustee can

24   pay himself.  It's so that the trustee has access to these

25   funds.  That's what it's about.  It's about the timing.

1    THE COURT:  That's why the trustee brought the

2    cause of action, because he --

3         MR. MORIARTY:  Right.  But he doesn't want to

4    pursue it.

5         THE COURT:  -- wanted access to the funds to pay

6    creditors.

7         MR. MORIARTY:  But he doesn't want to pursue Count

8    3.

9         THE COURT:  It's not that -- we don't know that he

10   doesn't want to pursue Count 3.  I didn't hear that he

11   didn't want to pursue Count 3.

12        MR. MORIARTY:  Okay.  So, Your Honor, you ordered

13   the trustee to file a response to the argument in the

14   summary judgment brief of HK and Mr. Guo that the Court

15   should certify these judgments as final under Rule 54.

16        THE COURT:  Right.

17        MR. MORIARTY:  The trustee did not.  And in that

18   filing, he said if the Court denies summary judgment on the

19   interpleader action, we may pursue Count 3.  They don't want

20   to pursue Count 3 at this point in time.  They want to wait

21   to see what happens in the interpleader action, and then if

22   they're not successful there, maybe then they want to pick

23   up Count 3, but at the same time, the appeals are sitting

24   there.  We don't know what Judge Dooley is going to do.

25        THE COURT:  That's her prerogative.

1          MR. MORIARTY:  But my point, Your Honor, is that

2     there's a -- it is much more certain that there would be

3     jurisdiction if there was a certification from this Court

4     under 54(b) that those two judgments are final.  And if Your

5     Honor is not going to do that, then I think we need to --

6          THE COURT:  I didn't say I wasn't going to do

7     that.  I'm trying to understand your argument that -- what's

8     the just cause, and from our perspective the just cause is

9     you don't want to have to argue whether or not these appeals

10    are interlocutory.  So you want me to certify them under

11    54(b) so you don't have to make that argument.

12         MR. MORIARTY:  That's not at all what I'm saying,

13    Your Honor.

14         THE COURT:  Okay.  Then what are you saying?

15         MR. MORIARTY:  The just cause is that my client,

16    HK, had the Lady May, the Lady May 2, and $37 million in an

17    escrow account.  Those are the assets.

18         The Lady May has been sold.  $21 million plus was

19    realized.  The trustee is holding the escrow funds and the

20    trustee is holding the Lady May 2.  It's an asset of the

21    estate.

22         As far as I know, that's all that the estate has.

23    There was the 490 -- or $499,000 --

24         THE COURT:  Well, there's the Lady May 2

25    somewhere.

1            MR. MORIARTY:  And I said that.

2            THE COURT:  Okay.

3            MR. MORIARTY:  $499,000 settlement with Clark

4       Hill, I believe is the name of the law firm, but the bulk of

5       the assets that the estate has, the overwhelming majority

6       come from my client, and those are being spent down.

7            Now, maybe the trustee brings in more assets, and

8       if my client is successful on appeal, my client can claw

9       back everything that's been distributed from the estate

10      through additional assets that are being brought in.

11           I don't know that that's going to happen.  I

12      understand that there's a settlement with Bravo Luck.

13      There's a 9019 motion that's been filed.  I also understand

14      that there's an adversary proceeding related to insurance

15      proceeds from the fire.  The insurance company doesn't want

16      to pay.

17           There's a whole bunch of moving parts here.

18      There's other assets that the trustee may bring in, but the

19      point is we don't know that.  So, yes, these funds are being

20      used.  They're being used for whatever the purposes they're

21      being used for, but the no just reason for delay is that my

22      client's assets are being spent.  And again, I don't mean

23      that in a derogatory manner.  It's all being done with the

24      blessing of the Court, but we don't know that there's going

25      to be additional assets that come in.

1          So if my client is successful on appeal, what

2     relief do they get?  That's the point.

3          THE COURT:  Okay.  Anything further?

4          MR. MORIARTY:  No.  That's it, Your Honor.  Thank

5     you.

6          THE COURT:  Thank you.

7          MR. LUFT:  Your Honor --

8          THE COURT:  Attorney Luft.  Yes.

9          MR. LUFT:  Thank you, Your Honor.  I'll try to be

10    brief.

11         What you just heard is that Mr. Moriarty wanted a

12    stay pending appeal.  He didn't get one.  And now he's doing

13    self help.  They refuse to give the -- he stated, we agree,

14    Count 2 gives them the escrow funds.  We agree we have the

15    property.  This is why we had to file this whole summary

16    judgment for interlocutory appeal.

17         And you heard why they're holding it up, because

18    they're afraid that if they win their appeals, there won't

19    be money.  That's what a stay pending appeal is about.  They

20    -- one wasn't granted, and I agree it shouldn't have been

21    granted.

22         But now so they've just done it themselves.  What

23    you will not -- did not hear at all, what they haven't done

24    is they keep talking about how they have -- well, there's a

25    contractual -- they have the right right now to call up the

1    person who is holding up the funds, the trustee, and say,

2    release them.  We have a court order that tells us to do

3    everything to assist that.

4         They can do that now at which point those funds

5    would be released and we could make a judgment today about

6    whether or not we need to pursue Count 3.

7         Now, these arguments that you heard about why

8    aren't we pursuing Count 3 right now?  Well, because quite

9    frankly we are stewards of the creditor's funds.  Yes, I

10   would like to know if there is an actual amount of money

11   that is going to be worth pursuing another push in Count 3

12   today.

13        I think it is worthwhile for the trustee and this

14   Court to think about their resources and decide whether or

15   not it is -- there is an amount.

16        If that money is released from escrow, we can make

17   a decision as to whether or not these equitable rights to

18   control the equity will provide enough benefit to the estate

19   that it is worth pursuing at that time.

20        Obviously, the want to have their cake and eat it,

21   too.  They are arguing to you that without the rights in

22   Count 3, that we can't make them release the funds, and,

23   thus, it is integral.  It's a $37 million.

24        I promise you at that amount of money it will

25   absolutely worth pursuing Count 3 and that makes sense.  But

1    instead what they say to you is, well, we don't want to do

2    what we could do, which is voluntarily call and say, hey, we

3    have a court order telling us to do everything to assist,

4    and release the funds.

5            They don't want to move it along that way.

6    Instead, they just want you to say, make this final.  Let us

7    have -- let us have a final appeal, despite that the fact we

8    know Count 3, which we say is very important, is completely

9    interconnected to one and two.  It's clearly not meeting the

10   54(b) standard.

11           So they effectively are creating the Zeisler Rules

12   of Civil Procedure.  They'd like when they want to appeal.

13   They'd like to have it final to say that.  Despite not

14   getting a stay pending appeal, they want to be able to say,

15   well, I'm still going to hold back the funds, because quite

16   frankly, I'm really worried about, you know, you -- those

17   funds being spent.

18           That's not their choice anymore, Your Honor.  Mr.

19   Moriarty is honest and straightforward and when he says to

20   you the Court blessed this.  We didn't have that right.

21   They don't.  But this is just self help at this point, Your

22   Honor.

23           I honest -- and so we're here for a status

24   conference.  The issue of interlocutory appeal will be --

25   the issue of the -- excuse me -- interpleader is before you.

1    But in terms of how we should proceed in this case, what's

2    efficient, what makes sense, I think it's what I said.  I

3    think we should see what happens with the interpleader so

4    that we know what happened.  So that we know if there is a

5    $37 million at issue.

6            At that point, the trustee who fully believes they

7    -- that Mr. Kwok is the equitable owner of HK USA can make a

8    determination based on the cost benefit for both the Court's

9    resources and the estate's, whether it makes sense to pursue

10   that if the $37 million is not at issue.

11           But to sit there and say that we should do that

12   blind, or that we should just certify these, because they'd

13   really like to move ahead, and they're afraid they're going

14   to lose their interlocutory appeal so they'd like you to

15   effectively make them not have to argue that to Judge

16   Dooley, isn't appropriate and it's not efficient.  I don't

17   think that makes sense to move forward with the case in that

18   way.

19           If Your Honor has any questions, I'm happy to

20   answer them.

21           THE COURT:  I do not have any questions.  Thank

22   you.

23           MR. LUFT:  Thank you, Your Honor.

24           THE COURT:  Mr. Moriarty, would you like to

25   respond?

1          MR. MORIARTY:  Yes, please, Your Honor.  So the

2     Zeisler Rules of Professional Conduct -- I mean,

3     professional conduct, the Zeisler Rules --

4          THE COURT:  I think he said procedure.

5          MR. MORIARTY:  -- professional -- yeah, he did.

6     Civil Procedure, and I don't know why I had that in my head,

7     but that's okay.

8          So really, the only thing I want to comment on,

9     Your Honor, is we're not seeking a stay pending appeal.  The

10    summary judgment motion on the interpleader is pending

11    before Your Honor.  Your Honor knows the argument.  There's

12    a provision in there that says that the funds can't be

13    released until there's a final non-appealable order at the

14    bankruptcy court.

15         That doesn't exist at this point in time.  Your

16    Honor will decide that or not decide that, but basically

17    what Attorney Luft is saying to you is we want everything to

18    be put on hold.

19         We want to freeze everything until Your Honor

20    enters an order on the interpleader summary judgment motion,

21    and then we'll decide maybe we'll pursue Count 3, and maybe

22    we won't.  In the meantime, maybe Judge Dooley grants

23    interlocutory appeal.  Maybe she doesn't.

24         But effectively nothing happens, and then they

25    say, but in the alternative, they could give up their

1    summary judgment argument.  They could give up their right

2    under the contract, HK could, and just agree that they have

3    the money.  And then maybe we'll think about, maybe then

4    we'll say, well, we don't need to pursue Count 3.  So

5    basically we're going to hold this hostage until you give

6    up.  And my client is not going to give up.

7              So if Your Honor is -- and I understand.  I hear

8    what Your Honor said.  You're not deciding this right now,

9    but if Your Honor is not going to certify these judgments as

10   final under 54(b), then the trustee should move forward with

11   Count 3, because that's the only way that the case

12   progresses.

13             Thank you, Your Honor.

14             THE COURT:  Thank you.  All right.  Anything

15   further in the HK adversary proceeding?

16             MR. LUFT:  No, Your Honor.

17             THE COURT:  Okay.

18             MR. PASTORE:  No.  Thank you, Your Honor. .

19             THE COURT:  Thank you.  All right.  I'm not going

20   to schedule any further pretrial conferences in this

21   adversary proceeding at this time.

22             I understand the statements of counsel and I'll

23   take those into consideration and we'll look at pending

24   issues, and I'll move ahead in the manner I think is

25   appropriate.  Okay.

1          All right.  Thank you.

2          MR. PASTORE:  Thank you, Your Honor.

3          MR. LUFT:  Thank you.

4          MR. MORIARTY:  Thank you, Your Honor.

5          THE COURT:  Thank you.  Now, that was the last

6    matter on the calendar, other than the HCHK adversary.  Did

7    you want to take time to talk and report back, or how do you

8    want to handle that, you and Attorney Pastore.

9          MR. LUFT:  Why don't we take a couple minutes,

10   Your Honor, to see if this -- I don't want the Court sitting

11   around.  So if this is a longer conversation, and that's

12   what we think, then my suggestion is that we'll tell the

13   Court and then we'll report back later.

14         If we think that we can -- we can hammer this out

15   very quickly, could we maybe take a short recess so that we

16   could let the Court know?  But I really don't want you --

17         THE COURT:  Yes.  Why don't we take --

18         MR. LUFT:  -- guys sitting.

19         THE COURT:  -- the staff hasn't had a break, so

20   why don't we take a recess until 2:00 p.m.

21         MR. LUFT:  Okay.

22         MR. DESPINS: Thank you.

23         THE COURT:  Thank you.

24         MR. PASTORE:  Thank you, Your Honor.

25         THE COURT:  Court is in recess.

1    (Court recessed at 1:37 p.m. to 2:11 p.m.)

2          THE COURT:  Okay.  In adversary proceeding 23-

3    05013, Despins versus HCHK Technologies, et al.  We have --

4    we have been having a pretrial conference and there were

5    some issues raised with regard to discovery and the parties

6    took some time to talk.  And so Attorney Luft, Attorney

7    Pastore, is there something you would like to report to the

8    Court?

9          MR. LUFT:  Yes, Your Honor.  May I approach?

10         THE COURT:  Yes, please.  Thank you.

11         MR. LUFT:  Thank you, Your Honor.  For the record,

12   Avi Luft, of Paul Hastings, on behalf of the Chapter 11

13   trustee.

14         Your Honor, I think we used the time wisely and it

15   was productive, and hopefully that will mean that we don't

16   have to burden the Court with disputes.

17         THE COURT:  Great.

18         MR. LUFT:  So where we are is we have agreed that

19   we will go ahead with the depositions.  They will be limited

20   to the issue of standing, but to be clear, that will include

21   the relationship with the debtor and his agents.  If the

22   individuals are in the United States, they will be in person

23   depositions.

24         If the people are abroad, then we will agree to do

25   them by WebEx or some other non-Zoom mobile way to do it.

1            With regard to the document requests, I think we

2    have an understanding that we will need to get documents

3    related to the debtor and his relationship -- the entities'

4    relationships with the debtor and his agents.

5            We still have a little bit of discussion and work

6    to do as to what the scope of those requests will be, but we

7    will work over the next couple of days to try to agree upon

8    that.

9            It is -- I think the outliers are sufficient to

10   show it's not enough and the argument that all may be too --

11   is too many.  So we're trying -- going to try to find

12   something that works, but we think it's appropriate.

13           Moreover, the parties agree that this is -- this

14   discovery is consensual and that accordingly there will be

15   no objections to the discovery made based on the fact that

16   the proposed interveners are not yet interveners in the

17   case.

18           And similarly, with regard to appeal, there will

19   be no argument made later that to the extent the proposed

20   interveners are not allowed to intervene, that they're

21   appealing based on the fact that -- there was too much

22   information or that information was found out through this

23   consensual discovery.  To be clear, to the extent that they

24   believe that the bar was set to high and any motion to

25   intervene that they lose, they will, of course, still

1      reserve the right to appeal, based on that.

2              But that is what we have agreed to.  I believe Mr.

3      Pastore can correct me if I got anything wrong with regard

4      to how to proceed with discovery and I think what that does

5      is allows us to move ahead on the schedule the Court has

6      already set up with regard to discovery.

7              To the extent we cannot reach agreement with

8      regard to the scope of those remaining document requests, we

9      will make a motion to compel, but I am hopeful that won't be

10     necessary.

11             There is one other issue I wanted to raise, Your

12     Honor.  I think we got -- you know, we kind of talked

13     before.  This was supposed to be the HCHK status conference

14     and, you know --

15             THE COURT:  It was actually supposed to be the

16     pretrial --

17             MR. PASTORE:  Pretrial.

18             THE COURT:  -- conference.

19             MR. LUFT:  Oh, pretrial.  Excuse me.

20             THE COURT:  In accordance with the -- you know,

21     what the initial pretrial conference that gets set when a

22     summons is issued.

23             MR. LUFT:  Yes, Your Honor.  That's correct and I

24     apologize for misspeaking.

25             THE COURT:  That's okay.

1          MR. LUFT:  So consistent with that, there was one

2     other thing I wanted to raise with the Court.  I believe the

3     proposed interveners have claims of approximately $27

4     million.  I believe there is about $38 million at the HCHK

5     entities.  There are no other proposed interveners and as

6     we've talked about, the assignee does not intend to contest

7     the trustee's claims in the adversary the trustee has

8     brought.

9          Accordingly, there is a balance of approximately

10    $11 million, which is effectively not at issue in terms of

11    if we make our case, that 11 -- no one is objecting that

12    they have a claim to that $11 million.

13         Accordingly, for that amount of money, the trustee

14    would like to proceed with trying to seek a final

15    determination with regard to whether or not those monies are

16    -- with regard to its claims, that HCHK is the alter ego and

17    that the debtor -- of the debtor and the debtor is the

18    equitable ownership, and to the extent that that is the

19    case, those $11 million will be turned over.

20         The $27 million we would not do, because we are --

21    until we have determined whether or not the proposed

22    interveners and their claims should be allowed into the

23    case.

24         THE COURT:  So --

25         MR. LUFT:  So that --

1          THE COURT:  -- does Mr. Pastore have an objection

2     to what you just stated?

3          MR. LUFT:  I'll let Mr. Pastore tell -- say what

4     he says.  I asked him to it.  I think Mr. Pastore's view is

5     that the -- his clients have $27 million.  He understands

6     that he doesn't represent anyone else.  But whether or not

7     he has a problem with regard to the other $11 million, I'm

8     not sure on what basis he --

9          THE COURT:  So how would you proceed?  Assuming --

10    I have no idea yet.  Assuming he has no objection.  So what

11    would you do to be in control of that money?  Is that what

12    you're saying?

13         MR. LUFT:  Yes, Your Honor.  Effectively, I would

14    move for default as to the remaining $11 million because

15    there would be no --

16         THE COURT:  As to all the other defendants.

17         MR. LUFT:  Right.  Because there is no objection.

18    And then as to the balance that is at issue, we would waive

19    intervention to the extent the Court grants their motion to

20    intervene.  Then we would proceed with the case.

21         As to that $27 million, to the extent the Court

22    determines that they are not proper interveners, then we

23    would know -- then there would be effectively no objectors

24    and we would then move for default with regard to that $27

25    million.

1          THE COURT:  I understand your position.

2          MR. LUFT:  Thanks, Your Honor.

3          THE COURT:  I'll see where things go.

4          MR. LUFT:  Okay, Your Honor.  Thank you.

5          THE COURT:  Okay.  Thank you.  But thank you and

6    Mr. Pastore for working on the discovery issues and I -- Mr.

7    Pastore, I do want to hear from you, make sure that you

8    agree with what Attorney Luft said, and then maybe you'll --

9    and I'd like you to address the last point, if you would,

10   about the $11 million.

11         MR. PASTORE:  Can I take the last point --

12         THE COURT:  Certainly.

13         MR. PASTORE:  -- first.  So my clients have claims

14   I understand it -- I think discovery will flush out more to

15   approximately $27 million.  I don't represent anyone other

16   than those four creditors.

17         I think it would be intellectually inconsistent

18   for me to say I have no objection, because I think it's

19   binary.  The entities are either alter egos or they're not.

20         But I don't think I really have a voice as to the

21   11 million other than saying our position is we're going to

22   win.  We're going to try to win.  Do our best efforts to

23   win, and if we win, all that money is coming back, including

24   11 million, but I don't really have standing to fight over

25   the 11 million.

1          I think the U.S. Attorney -- I'm sorry -- the U.S.

2    trustee may have a vote in this, too, as I think they took

3    some positions to protect the creditorship of the New York

4    action generally, and when we negotiated, the settlement was

5    in controversy.  So I certainly this issue would need to be

6    put past them as well.

7          And so I can't say I have no objection.  I can

8    just say my client's claim is for approximately 27 million.

9    I am concerned under the settlement agreement that some of

10   this money does get spent, and so I hate to see money not

11   there if we do recover the 27 million, because 11 million

12   has been already gone.  So that would reduce the amount

13   available of the 27 million if it's taken from that pile.

14         Long and short, I think it would be intellectually

15   inconsistent for me to say no objection, but I'm not sure I

16   have a right to object as to the 11 million.

17              THE COURT:  Understood.

18              MR. PASTORE:  Yeah.

19              THE COURT:  Okay.  Thank you.

20              MR. PASTORE:  Yeah.  As to discovery, just

21   briefly, I do think we've reached an agreement.  I think a

22   few minor points to make the record clear.

23         We've also in discussion to the meeting, first

24   said that to the extent you're entitled to discovery, we're

25   entitled to discovery.  You may recall in this case the

1     assignee had documents related to the companies.  We believe

2     the documents in the trustee's possession related to the

3     companies that go to our standing as creditors.  Loan

4     agreements, discussions, emails, that sort of thing, we're

5     entitled to, and they've agreed that they'll provide those

6     to us as well.

7          With respect to the depositions, we agreed to

8     seven hours because of translation issues.  I've interacted

9     with these clients and it does take a little extra time,

10    because everything -- a lot of things do need to be

11    translated, and that's why I agreed.

12         I think it's unduly long period were it not a

13    translation issue for a standing deposition, but I'm

14    recognizing that and we've reserved the right to object to

15    the extent they get into the merits of the case, the alter

16    ego issues, and stuff like that.  They should be limited to

17    the standing as creditors, the loans.  Of course, they can

18    certainly ask, well, why did you make the loan?  That's fair

19    game.

20         The issue of standing goes to whether or not

21    they're a creditor and what was the purpose of the loan,

22    that sort of thing.  But if it gets far afield into the

23    merits of corporate board meetings regarding the HCHK

24    entities unrelated to the loans, I think that's too far.

25         And finally, with respect to the appeal, we agree,

1    and I think it's intellectually consistent to say, if the

2    Court denies our right to intervene because it had

3    additional information, we can't object to that.  That seems

4    silly to me.

5            But we're preserving our right to object to the

6    extent we're denied the right to intervene, because we

7    disagree over the legal standard, as to the right to

8    intervene.  We're not waiving that -- that appellate right

9    to the extent we'll need it or not.

10           THE COURT:  Okay.  Thank you.

11           MR. PASTORE:  Any questions on that?

12           THE COURT:  No, no.  Thank you.

13           MR. PASTORE:  Okay.

14           THE COURT:  As I said, I appreciate you working

15   together to resolve the discovery issues.  I -- I will wait

16   to see what -- where things stand.  I think we need to -- my

17   recollection is that once the discovery is completed and

18   then the trustee files a response to the motion to

19   intervene, then I'll determine whether or not we'll actually

20   have a hearing.  I think it's likely we'll have a hearing,

21   and then we'll go from there.

22           I don't -- I think there is not anything else I

23   can do at the moment other than I -- you have a pending

24   motion for a stay pending appeal, I think.  You filed the

25   notice of appeal.

1          MR. PASTORE:  We did.

2          THE COURT:  You have a stay pending appeal motion.

3    Are you anticipating or suggesting that I should hold off on

4    that while this discovery is -- and I'm not saying I'll even

5    have time.  I'm just asking you.  What are your -- what is

6    your position with regard to your motion for stay pending

7    appeal?

8          MR. PASTORE:  Yeah.  I mean, I don't want to waive

9    our rights, but I think Your Honor's ruling the other day

10   and agreements we reached with regard to the activity in New

11   York makes the stay pending appeal less critical.

12         Our biggest concern is that the assignee would

13   start taking actions in the New York court that would make

14   unwinding the settlement untenable.  And so I don't want to

15   waive the right, but I can say to the Court that I think the

16   rulings the other day limit the need for the stay.

17         THE COURT:  You could argue that they limit

18   irreparable harm, right?

19         MR. PASTORE:  I think that --

20         THE COURT:  In that the trust -- the assignee has

21   stated through counsel and individually that they will not

22   take any actions in the New York State action until further

23   order of this Court.

24         MR. PASTORE:  Right.  And I don't know that

25   there's been an order, so maybe it comprises if the stay is

1    not granted, there's a formal order that says, but the

2    assignees agreed that they will hold off until such time as

3    there's a ruling.

4              THE COURT:  I can't remember if there's an order

5    or not, but I know that they're not to take any action.  And

6    I specifically asked -- and I apologize -- is it Mr.

7    Hofmeister (ph)?

8              MR. PASTORE:  You did, yeah.

9              THE COURT:  Yes.  Mr. --

10             MR. LUFT:  I believe it was Attorney Jarrett who

11   was on --

12             THE COURT:  And Mr. Hofmeister, too.

13             MR. PASTORE:  Mr. Hofmeister is on the screen,

14   too.

15             THE COURT:  I specifically turned to him first, I

16   believe.

17             MR. LUFT:  Yes.

18             THE COURT:  And he's, you know, said that he would

19   be bound by that.  So I can't recall.

20             But that -- the only reason I ask is I happen to

21   think, given the developments and what you just acknowledge

22   on the record, that ruling on the stay pending appeal at

23   this time is not necessary.  So unless you say that it is,

24   then I'm -- I will probably put that motion aside for now.

25             MR. PASTORE:  The only thing I'd like to do is

1     just go back and look at the order that came out of the Fri

2     -- I think it was a Friday Zoom conference.  I know you gave

3     that instruction on the record, so that should be good

4     enough.  But --

5                THE COURT:  It should be.  But I understand.

6     That's fine.

7                MR. PASTORE:  So I may --

8                THE COURT:  And you can let me know if you think

9     otherwise.  How's that?

10               MR. PASTORE:  That's fair.

11               THE COURT:  Okay.

12               MR. PASTORE:  Okay.

13               THE COURT:  All right.  Thank you.

14               MR. PASTORE:  Thank you, Your Honor.

15               THE COURT:  All right.  I believe, then, that

16    concludes everything we need to address in this adversary

17    proceeding today; is that correct?

18               MR. LUFT:  Yes, Your Honor.

19               THE COURT:  Okay.  Then, again, I definitely

20    appreciate the efforts of the parties here today.  I will

21    see where things stand once the objection -- response to the

22    motion to intervene is filed.  And I -- I see no reason to

23    schedule any further pretrial conferences at this time,

24    unless someone disagrees with me.

25               And, again, this was -- this pretrial conference

1    was originally scheduled in the summons issued by the

2    Clerk's Office when the complaint was filed, and it was

3    continued once, and that's absolutely fine.  But I see no

4    reason to schedule any further pretrial conferences at this

5    time.

6              Does anyone disagree?

7              MR. LUFT:  No, Your Honor.

8              THE COURT:  Okay.  Thank you.

9              MR. PASTORE:  No, Your Honor.

10             THE COURT:  Okay.  Thank you all, then.  All

11   right.  This -- that concludes all of the matters on today's

12   calendar, so court is adjourned.  Thank you.

13             MR. LUFT:  Thank you, Your Honor.

14             MR. PASTORE:  Thank you.

15        (Proceedings concluded at 2:26 p.m.)

16

17

18

19

20

21

22

23

24

1     I, CHRISTINE FIORE, court-approved transcriber and certified

2     electronic reporter and transcriber, certify that the

3     foregoing is a correct transcript from the official

4     electronic sound recording of the proceedings in the above-

5     entitled matter.

6

7     *Christine Fiore*

8     _____        August 23, 2023

9          Christine Fiore, CERT

10            Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24