## EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------ X
                                                                   :
JUNWU GONG,                                                        :
                                                                   :
                        Plaintiff,                                 :
                                                                   :
                                                                   :
        -v-                                                        :
                                                                   :
STUART M. SARNOFF, O'MELVENY & MYERS                               :
LLP, CARL M. STANTON, CITY OF NEW YORK,                            :
OFFICER JOHN DOE 1, OFFICER JOHN DOE 2,                            :
OFFICER JOHN DOE 3, OFFICER LAUREN A.                              :
DUFFY,                                                             :
                                                                   :
                        Defendants.                                :
                                                                   :
------------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/17/2023

23-cv-00343 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendants O'Melveny & Myers LLP and Stuart Sarnoff (together, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the amended complaint filed by plaintiff Junwu Gong ("Plaintiff") for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Dkt. No. 47.

For the following reasons, the motion to dismiss is granted.

## BACKGROUND

The Court accepts the well-pleaded allegations of the amended complaint as true for purposes of this motion. Dkt. No. 43 ("Amended Complaint" or "Am. Compl.").

Plaintiff is a foreign born, ethnic Chinese U.S. Permanent Resident who has, on numerous occasions, joined with other ethnic Chinese individuals to lawfully and peacefully protest against the Chinese Communist Party ("CCP"). *Id.* ¶¶ 46–47. He alleges that he has been subjected to an ongoing campaign of harassment by agents of the CCP. *Id.* ¶ 70.

Defendant O'Melveny & Myers LLP ("O'Melveny") is a Delaware registered limited liability partnership, which conducts business as a law firm and regularly transacts business in the State of New York. *Id.* ¶ 63. Defendant Sarnoff is a partner at O'Melveny, *id.* ¶ 53, and is a resident of the State of New York, *id.* ¶ 62. Defendant Carl M. Stanton is a resident of the City and State of New York. *Id.* ¶ 64. The Amended Complaint also names as Defendants the City of New York, New York City Police Officer Lauren A. Duffy, and three John Doe police officers. *Id.* ¶¶ 65–69.[1]

As of January 2023, O'Melveny, has, upon information and belief, at least three offices in the People's Republic of China ("China" or the "PRC") with approximately forty-five lawyers. *Id.* ¶ 53. Plaintiff alleges that O'Melveny's work in the PRC is "extremely lucrative," *id.* ¶ 56, and that O'Melveny's offices in China would not be permitted to continue to exist unless Defendants O'Melveny and Sarnoff were willing to serve the CCP on demand, *id.* ¶ 54. O'Melveny and Sarnoff have also handled numerous matters in the United States defending the interests, allies, or agents of the CCP. *Id.* ¶ 55(c). Citing a blog post written by a former O'Melveny attorney, Plaintiff alleges that "O'Melveny has, on several occasions yet discovered by Plaintiff, represented entities from China (in [United States c]ourts) that have tortured Chinese individuals or have 'aided and abetted and/or ratified these acts of torture.'" *Id.* ¶ 34 (quoting Dkt. No. 43-6). Plaintiff further alleges that O'Melveny "defended the torturers [in] *Jun Zhao v. BYD America Corporation et al*[.], 2:2020-cv-01254 in the [United States] District Court for the Central District of California," *id.* ¶ 35, and that O'Melveny "represented BGI (formerly 'Beijing Genomics Institute'), a China based genomic research and sequencing

---

[1] Defendants the City of New York, Duffy, and the John Doe police officers have not been served. *See* Dkt. No. 18 (Affidavit of Service).

company," *id*. ¶ 36.  On July 20, 2020, two BGI entities, Xianjiang Silk Road BGI and Beijing

Liuhe BGI, were added to the Entity List of the Department of Commerce's Bureau of Industry

and Security for "conducting genetic analyses used to further the repression of Uyghurs and

other Muslim minorities in the Xianjiang Uyghur Autonomous Region."  *Id.* ¶ 38.  Plaintiff also

alleges that O'Melveny and Sarnoff "have, with other counsel, been part of the CCP team

charged with destroying the life of Ho Wan Kwok (aka Miles Guo) and [with] us[ing] whatever

means necessary to have him returned to China for either additional jail and torture or

execution."  *Id.* ¶ 55(f).

The claims in the Amended Complaint arise from events that occurred during Plaintiff's

participation in what he claims were peaceful protests at the offices of O'Melveny, *id.* ¶ 81, and

at a location believed to be in proximity to the home of Sarnoff, *id.* ¶ 82.  On November 22,

2022, Plaintiff participated in peaceful protests at the office of Defendant O'Melveny because of

O'Melveny's relationship with the CCP.  *Id.* ¶¶ 79, 81.  Beginning on December 2, 2022,

Plaintiff participated in regular peaceful protests at a location believed to be near Sarnoff's home

in New York City.  *Id.* ¶¶ 82, 85.  Plaintiff again joined protests at a location believed to be near

Sarnoff's home on the morning of December 20, 2022.  *Id.* ¶ 85.

Plaintiff alleges that before and on December 20, 2022, he and other protestors were

harassed by Stanton.  *Id.* ¶ 83; *see also id.* ¶¶ 84, 87–96.  During these protests, Stanton stalked

the protestors, including in a Mercedes Benz GL 550 with a New Jersey license plate, refusing to

identify himself.  Stanton took video and/or photographs of the protestors on a daily basis, tried

to intimidate the protestors by lingering close to them, made verbal threats directed at various

protestors including Plaintiff that he would arrest them or have them arrested, misrepresented

himself as a police officer, and struck the Plaintiff from behind.  *Id.* ¶ 84.

The Amended Complaint focuses on Plaintiff's interactions with Stanton while Plaintiff was protesting in the vicinity of Sarnoff's home on December 20, 2022. On that day, as he had done previously, Stanton took photographs and/or video of Plaintiff and other protestors. *Id.* ¶ 93. Plaintiff and the other protestors tried to engage Stanton to ask who he was and what he was doing and to ask him to stop stalking the protestors, but Stanton became "aggressive and threatening" and stated, "I do what I do, you do what you do." *Id.* ¶ 94. He also indicated that he worked with or had a connection to the New York City Police Department ("NYPD") and suggested that he had some kind of "license" and was "with" the police. *Id.* ¶¶ 94–95.[2] When Stanton did not "stop," Plaintiff called 911 twice, at "approximately" 10:50 a.m. and 10:56 a.m. *Id*. ¶¶ 99, 101. Before Plaintiff made the calls, Stanton jumped out of his car and said, "I will have you arrested"; while Plaintiff was making the calls, Stanton returned to his vehicle but stayed in very close proximity to Plaintiff. *Id.* ¶¶ 98, 100.

After the police arrived, Stanton moved his car forward and "made contact with Plaintiff's back—causing [ ] Plaintiff to fall to the ground." *Id.* ¶ 110. Plaintiff was "pushed . . . down the roadway by Defendant Stanton's car, and Defendant Stanton did not stop until other protesters screamed at Defendant to stop." *Id*. ¶ 111. Plaintiff was "shocked" by the course of events, and he remains traumatized by it. *Id*. ¶ 112. At "around 11:45 AM" of the same day of the protest, Plaintiff went to a nearby restaurant with some protesters, where he "started to feel dizzy, short of breath, and he went into shock." *Id*. ¶¶ 125–26. He alleges that "[t]he shock was a direct result of the events at the protest." *Id*. ¶ 127. One of the protesters called 911 to request an ambulance. *Id*. ¶ 128.

---

[2] Plaintiff alleges, upon information and belief, that Stanton is not an officer with the NYPD. *Id.* ¶ 96.

Plaintiff alleges that the NYPD failed to assist him during the course of these events. Three police cars appeared on the scene after Plaintiff called 911 during the protest. *Id.* ¶ 102. The officers in the first police car "refused to assist Plaintiff . . . and continued on their way." *Id.* ¶ 105. After he was hit by Stanton's car, Plaintiff called out to officers in a second NYPD car for aid, but the officers failed to respond in any way and waited for a long time before exiting the vehicle. *Id.* ¶ 113. When the officers left the vehicle, they "did not talk to Defendant Stanton but directly accused Plaintiff of blocking the traffic, even though Plaintiff was the one who called 911 and reported the wrongdoing of Defendant." *Id.* ¶ 114. Shortly thereafter, a third NYPD vehicle arrived on the scene. *Id.* ¶ 115. Plaintiff reported to the officers in that vehicle that he had called 911, that Stanton had just struck him with his car, and that Stanton had been harassing, filming, and following the protesters for thirty days and was endangering "kids in our group." *Id.* ¶¶ 118–20. However, the officers only "spoke briefly with Defendant Stanton, and then let him go," left the scene, and did not file a police report. *Id*. ¶¶ 121–25.

After the protestors had called an ambulance to aid Plaintiff at the restaurant, the third NYPD vehicle arrived again. *Id.* ¶¶ 128–29. An officer "asked Plaintiff to present ID information." *Id*. Plaintiff alleges that defendant Lauren A. Duffy, a police officer, told the medical personnel in the ambulance that "Plaintiff's 'jumping on the car' was wrong even though she was not at the scene when the incident happened [and] . . . Plaintiff never jumped on Defendant Stanton's car." *Id*. ¶¶ 129, 133. Officer Duffy "indicated that the ambulance would not leave for the hospital until a supervisor came." *Id*. ¶ 130. Another officer obstructed Plaintiff's efforts to get medical attention and prevented the ambulance from leaving for several minutes. *Id.* ¶¶ 131–32.

Plaintiff was then brought to Mount Sinai Hospital where he received treatment and remained for the afternoon. *Id.* ¶¶ 134–35. He alleges that he remains under medical care for the trauma he suffered. *Id.* ¶ 136. He also alleges that he "is now living in a state of constant fear and apprehension because he does not feel safe enough [to] exercise his rights under [the] United States Constitution without suffering further and more aggressive attacks." *Id*. ¶ 138. He further alleges that he is likely to continue to require a doctor's care for the trauma he suffered on December 20, 2022. *Id.* ¶ 139.

Plaintiff claims that the police "were part and parcel of the effort to thwart the free exercise of the Constitutional rights of [ ] Plaintiff" and that the "effort against [ ] Plaintiff was undertaken at the behest of Defendants O'Melveny, Sarnoff and Stanton." *Id.* ¶¶ 103–04. However, he makes only two factual allegations to tie O'Melveny and Sarnoff to Stanton or to the events on December 20, 2022. First, Plaintiff alleges that the December 20 protest took place at a location that was believed to be the residence of Sarnoff. *Id.* ¶ 86. Second, during earlier protests outside O'Melveny's offices at Times Square in New York, Stanton was observed "on several instances" taking pictures of the protestors from inside the property where the protestors and members of the general public were not permitted and was observed entering the security entrance with a swipe card. *Id.* ¶¶ 90–91. Plaintiff also alleges that Stanton, O'Melveny, and Sarnoff are all "now believed" to be "unregistered agents" of the CCP. *Id*. ¶¶ 77, 78.

Plaintiff brings six claims against the defendants.[3] As relevant here, Plaintiff claims that all of the defendants deprived him of his rights under the First, Fourth, and Fourteenth Amendments in violation of 42 U.S.C. § 1983 and that "all Defendants, public and private, are"

---

[3] The Amended Complaint's final cause of action is labelled "Count VII." Dkt. No. 43 at ECF pp. 27–28. However, there is no Count IV. *See id.* at ECF pp. 20–28.

responsible for these actions because they are "willful participants in depriving [ ] Plaintiff of his rights, and as such the Defendants have a symbiotic relationship for purposes of 42 U.S.C. § 1983" ("Count I"). *Id*. ¶¶ 140–47. Plaintiff also claims that "[t]he Defendants have engaged in a conspiracy to deprive [ ] Plaintiff, and indeed any of his fellow Chinese dissident protestors, of his Constitutional rights" in violation of 42 U.S.C. § 1985(3) ("Count II"). *Id*. ¶¶ 148–59. Plaintiff further claims that Defendants "(a) retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, and (b) imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights" in violation of 42 U.S.C. § 1983, because "Plaintiff had previously protested against the Defendants" ("Count III"). *Id*. ¶¶ 160–80. Finally, Plaintiff claims that O'Melveny and Sarnoff "'act[ed] as an agent, representative, employee, or servant, or . . . in any other capacity at the order, request, or under the direction or control' of a foreign principal," and therefore are "required to register under [the Foreign Agents Registration Act]" ("Count VII"). *See id*. ¶¶ 187–93 (quoting 22 U.S.C. § 611(c)(1)).

Among others forms of relief, Plaintiff seeks monetary damages "of not less than $10,000,000" and a declaratory judgment that O'Melveny and Sarnoff must register pursuant to the Foreign Agents Registration Act ("FARA"). Am. Compl. at ECF pp. 28–29.

## PROCEDRUAL HISTORY

Plaintiff initiated this action through filing a complaint on January 18, 2023.[4] Dkt. No. 2. On March 23, 2023, Defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and submitted a supporting memorandum of law and declaration. Dkt. No. 19–21. On March 28, 2023, Defendants submitted a motion for sanctions,

---

[4] The complaint was initially filed on January 13, 2023 but was rejected for a filing error. *See* Dkt. No. 1.

along with a supporting memorandum of law and declaration.  Dkt. Nos. 26–28.  Defendants

withdrew the motion on March 29, 2023, because they had not complied "with the requirements

of Federal Rule of Civil Procedure 11(c)(2)," Dkt. No. 29, and resubmitted the Rule 11 motion

for sanctions, memorandum of law, and declaration, along with a declaration attesting to their

compliance with Rule 11(c)(2), on April 20, 2023.  Dkt. No. 36–39.  On April 21, 2023, Plaintiff

filed a memorandum in opposition to Defendants motion to dismiss.  Dkt. No. 40.

On April 26, 2023, Plaintiff filed his Amended Complaint.  Dkt. No. 43.  On May 8,

2023, Defendants again moved to dismiss the four claims that are brought against them:

Defendants moved to dismiss Counts I and III for violations of 42 U.S.C. § 1983 and Count III

for a violation of 42 U.S.C. § 1985 under Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim for relief and Count VII for a violation of FARA under Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil

Procedure 12(b)(6).  Dkt. Nos. 46–48.  On May 23, 2023, Defendants filed a notice of non-

opposition, stating that "Plaintiff did not file opposition papers on or before May 22, 2023" and

requesting that the Court dismiss the Amended Complaint for that reason, but retain jurisdiction

to hear the Rule 11 motion.  Dkt. No. 53 at 1.

## LEGAL STANDARD

A court properly dismisses a claim under Rule 12(b)(1) when it "lacks the statutory or

constitutional power to adjudicate it."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms.,

S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  Standing is a proper ground upon which to

challenge a court's subject matter jurisdiction: "If plaintiffs lack Article III standing, a court has

no subject matter jurisdiction to hear their claim."  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62

(2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco

Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).  To survive a Rule 12(b)(1) motion to

dismiss for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest

that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir.

2011). Where the defendant challenges the legal sufficiency of a complaint's allegations, the

court must treat all factual allegations as true and draw reasonable inferences in favor of the

complaining party. *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001).

"Determining the existence of subject matter jurisdiction is a threshold inquiry." *Clarex Ltd. v.

Natixis Sec. Am. LLC*, 2012 WL 4849146, at *3 (S.D.N.Y. Oct. 12, 2012). "When a defendant

moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to

dismiss on other grounds, the Court must consider the Rule 12(b)(1) motion first." *Reliability

Inc. v. Doki*, 2021 WL 3408589, at *6 (S.D.N.Y. Aug. 4, 2021) (quoting *Almazon v. JPMorgan

Chase Bank, Nat'l Ass'n*, 2020 WL 1151313, at *6 (S.D.N.Y. Mar. 9, 2020)).

　　　　To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a

complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and

conclusions," "a formulaic recitation of the elements of a cause of action," or "naked

assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*,

550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,]

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another

way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that

discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Plaintiff's failure to oppose Defendant's motion does not alone justify dismissal for failure to state a claim for relief. *See McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000) (holding that dismissal based on the plaintiff's failure to respond to a Rule 12(b)(6) motion alone "was error"); *see also Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983) ("Nothing in the Federal Rules of Civil Procedure or the Civil Rules of the Southern District requires a court to grant a motion by default simply because the nonmoving party fails to respond."). "In deciding an unopposed motion to dismiss, a court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency . . . . Thus, although a party is of course to be given reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Haas v. Com. Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall*, 232 F.3d 321, 322 (2d Cir. 2000)); *see also Strachn v. City of New York*, 2020 WL 6291428, at *1 (S.D.N.Y. Oct. 27, 2020); *Blanc v. Cap. One Bank*, 2015 WL 3919409, at *3 (S.D.N.Y June 24, 2015); *Vargas v. Person*, 2014 WL 1054021, at *2 (S.D.N.Y. Mar. 17, 2014); *O'Garro v. Comm'r of Soc. Sec.*, 2013 WL 5798537, at *2 (S.D.N.Y. Oct. 24, 2013).

## DISCUSSION

The Court first turns to Defendants' motion to dismiss Plaintiff's 42 U.S.C. § 1983 claims (Count I and Count III) and their motion to dismiss Plaintiff's 42 U.S.C. § 1985 claim (Count II) under Rule 12(b)(6). It then addresses Defendants' motions to dismiss Plaintiff's FARA claim (Count VII).

I.      **Motion to Dismiss Counts I, II, and III Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

   A.      **Counts I and III: 42 U.S.C. § 1983**

Plaintiff brings claims against Defendants under 42 U.S.C. § 1983 for violating his First, Fourth, and Fourteenth Amendment rights and for First Amendment retaliation.  Plaintiff argues that "by coopting the City of New York, the New York Police Department, and certain members of the New York Police Department . . . Defendants . . . Sarnoff and O'Melveny—have conspired to violate, and have violated, the Plaintiff's rights under the Constitution of the United States of America."  Am. Compl. ¶ 76.  Plaintiff alleges that Stanton "indicated that he worked with or had some kind of connection to the NYPD," *id*. ¶ 94, and that "upon information and belief, this effort [of the police to thwart the free exercise of his constitutional rights to protest] . . . was undertaken at the behest of Defendants O'Melveny, Sarnoff and Stanton."  *Id*. ¶ 104.  In support of his Section 1983 claims, Plaintiff alleges that there was "[a]n explicit agreement among the Defendants to take steps against [ ] Plaintiff as one of the Chinese protestors against the CCP."  *Id*. ¶ 144(a).

In their motion to dismiss, Defendants argue that Plaintiff makes only conclusory, unsupported allegations that O'Melveny and Sarnoff, as private actors, acted under color of law, as required by Section 1983.  Dkt. No. 47 at 13.  Defendants also argue that Plaintiff fails to state a Section 1983 conspiracy claim because Plaintiff makes only conclusory allegations that O'Melveny and Sarnoff collaborated or conspired with a state actor to deprive Plaintiff of his constitutional rights, because Plaintiff fails to sufficiently plead a meeting of the minds and because Plaintiff does not sufficiently plead that Defendants took an overt act in furtherance of any alleged conspiracy.  *Id*. at 15–17.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 316–17 (E.D.N.Y. 2014) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "While [Section 1983] claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of *Bell Atlantic Corp. v. Twombly* . . . and *Ashcroft v. Iqbal*." *Guzman v. United States*, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . will no more suffice in a [§ 1983] claim than in any other" claim. *Id.*

"To prevail on a claim under § 1983, a plaintiff must prove that the conduct at issue was [(1)] 'committed by a person acting under color of state law' and [(2)] 'deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Kanciper v. Lato*, 718 F. App'x 24, 27 (2d Cir. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)). "For the purposes of § 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir.

2008) (alterations in original) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)).

Plaintiff fails to allege facts to support any of these theories under which O'Melveny or Sarnoff could be held liable under Section 1983 for any of the injuries he alleges he suffered. Plaintiff alleges that "[t]here is an inextricable nexus between the various Defendants, and as such all Defendants, public and private, are willful participants in depriving the Plaintiff of his rights, and as such the Defendants have a symbiotic relationship for purposes of 42 U.S.C. § 1983." Am. Compl. ¶ 142. Plaintiff further alleges that "Defendant O'Melveny [has a] practice of 'monetizing government positions' by maintaining a revolving door between the firm and government positions as a way to facilitate clients['] objectives using inside connections." *Id*. ¶ 55(d). The only relevant allegation that Plaintiff makes about the relationship between Defendants O'Melveny and Sarnoff and the NYPD or New York City government is the conclusory allegation that "Defendants O'Melveny and Sarnoff, using whatever resource to do so, have conscripted elements of the NYPD to oppose the protestors . . . [or] have called upon contacts in the City with connections to the . . . office of the NY City Mayor." *Id*. ¶¶ 74–75. Plaintiff makes no factual allegation that Defendants were involved in the events on December 20, 2022.

First, Plaintiff's allegations against O'Melveny and Sarnoff fail the compulsion test. "Courts in the Second Circuit have held that in order to satisfy this test, plaintiff must allege 'actual coercion' by a state actor that impacts upon the private actor's decision-making." *O'Brien v. Carrier Coach, Inc*., 2006 WL 692409, at *3 (W.D.N.Y. Mar. 6, 2006) (collecting cases) (rejecting a Section 1983 claim even though the plaintiff alleged that the defendant's business "depend[s] upon a certain amount of governmental aid," and is "conducted according to

policies which 'are greatly influenced and/or shaped by state and/or federal statutes and regulations'" (citations omitted)).

Plaintiff suggests that Defendants "have conscripted elements of the NYPD," Am. Compl. ¶ 74, and he also suggests that Stanton "indicated that he worked with or had some kind of connection to the NYPD," *id*. ¶ 94. However, he fails to allege that O'Melveny and Sarnoff have a relationship with Stanton, much less that Defendants are subject to state coercion with regard to the "specific activities that caused the injury giving rise to the action." *Sybalski*, 546 F.3d at 257–58. The only allegations related to Stanton's relationship with Sarnoff and O'Melveny are that Stanton had access on previous occasions to the office where O'Melveny is located, that he observed the protests against O'Melveny and Sarnoff, and that he was present when the protest occurred outside a building in New York City believed to be the location of Sarnoff's residence. Am. Compl. ¶¶ 91, 93–94. Plaintiff then draws from those allegations the inference that Defendants were somehow involved in Stanton's action in touching Plaintiff's back with his car. *Id*. ¶¶ 104, 142–44. And, he then draws from the fact that Stanton—falsely according to Plaintiff—stated he had a relationship with the NYPD that Stanton was exercising state power when Stanton hit him and that each of Stanton and Defendants also bear liability under Section 1983 for the conduct of the police in obstructing Plaintiff's medical care. *Id*. ¶ 142. Plaintiff's allegations fail every link in the causal chain. There is no well-pleaded allegation, only speculation, that Defendants had a relationship with Stanton or that Stanton had a relationship with the NYPD. And, more important, there is no well-pleaded allegation that Defendants had any role with respect either to Stanton's actions in "touching" Plaintiff with his car or the actions of the NYPD in responding to that incident. Stated otherwise, Plaintiff's allegations fail the compulsion test, because he does not allege what the NYPD (or even Stanton)

required or encouraged Defendants to do in violation of Plaintiff's constitutional rights. *See Mejía v. Robinson*, 2018 WL 3821625, at *5 (S.D.N.Y. Aug. 10, 2018) (holding that even if there is an exchange between a state actor and a private defendant, mere "permissive language of the [state actor]" does not suffice to plead state action under the compulsion test); *see also Caballero v. Shayna*, 2019 WL 2491717, at *4 (E.D.N.Y. June 14, 2019) (dismissing a Section 1983 compulsion claim because there were no specific facts from which to infer that the defendant acted "as a result of demands or orders from . . . officers").

To the extent that Plaintiff alleges that O'Melveny's "offices in China would not be permitted to continue to exist unless Defendants O'Melveny and Sarnoff are willing to serve" foreign entities, Am. Compl. ¶ 54, Plaintiff does not allege that the offending conduct that caused his injury was directed by these foreign entities. And even if there were sufficient allegations, "acts by a foreign government and its officials 'cannot constitute conduct under color of state law' under Section 1983." *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 956 (N.D. Cal. 2020) (citation omitted).

Second, Plaintiff does not allege that Defendants were delegated a public function. The only public functions that appear in Plaintiff's allegations were functions performed by the police. Plaintiff does allege that, upon information and belief, the actions taken by the police against Plaintiff were done "at the behest of Defendants" Am. Compl. ¶ 104. But that allegation is a mere conclusion. The Amended Complaint is bereft of any facts that the conduct of the NYPD was taken at the instigation or behest of O'Melveny and Sarnoff. And without such facts, Plaintiff cannot maintain its Section 1983 claim under the delegation theory. *See Adebiyi v. City of N.Y.*, 2014 WL 4922888, at *4 (E.D.N.Y. Sep. 30, 2014) ("A private party supplying

information or seeking police assistance does not become a state actor . . . unless the police officers were improperly influenced or controlled by the private party.").

Third, Plaintiff's conclusory allegations that Defendants conducted joint action with government actors do not come close to being sufficient under Rule 8(a)(2). "It is not enough . . . for a plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action." *Sybalski*, 546 F.3d at 257–58 (emphasis in original) (quoting *Schlein v. Milford Hospital, Inc*., 561 F.2d 427, 428 (2d Cir. 1977))). "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the police." *Forbes v. City of New York*, 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir.1999)). "Under the 'joint action' doctrine, . . . 'a plaintiff must show that the private citizen and the state official shared a common unlawful goal.'" *Caballero*, 2019 WL 2491717, at *3 (quoting *Hollman v. Cty. of Suffolk*, 2011 WL 280927, at *8 (E.D.N.Y. Jan. 27, 2011)).

Plaintiff alleges that the police "were part and parcel of the effort to thwart the free exercise of the Constitutional rights of the Plaintiff" "undertaken at the behest of Defendants O'Melveny, Sarnoff and Stanton." Am. Compl. ¶¶ 103–04. Plaintiff argues that Stanton "indicated that he worked with or had some kind of connection to the NYPD." *Id*. ¶ 94. And Plaintiff claims that "Defendants O'Melveny and Sarnoff, using whatever resource to do so, have conscripted elements of the NYPD to oppose the protestors . . . [or] have called upon contacts in the City with connections to the . . . office of the NY City Mayor." *Id*. ¶¶ 74–75. However, these conclusory allegations are insufficient to state a claim under Section 1983. Plaintiff pleads

no facts that would establish a common goal between O'Melveny and/or Sarnoff and the NYPD,
through Stanton or otherwise, or a plan to deprive Plaintiff of his constitutional rights. *See
Hannan v. Rose*, 2020 WL 1903282, at *12 (S.D.N.Y. Apr. 17, 2020) ("[C]onclusory statement
of a 'joint effort,' without any factual support, does not demonstrate state action.").

Finally, Plaintiff alleges that "by coopting the City of New York, the New York Police,
Department, and certain members of the New York Police Department, together with agents of
the CCP—Defendants Stanton, Sarnoff and O'Melveny—have conspired to violate, and have
violated, the Plaintiff's rights under the Constitution of the United States of America." Am.
Compl. ¶ 76. Plaintiff's allegations could be understood as suggesting that Defendants and
Stanton conspired to deprive him of his constitutional rights in violation of Section 1983.
Defendants, however, argue that the Amended Complaint fails to plead a meeting of the minds or
any overt act in furtherance of a conspiracy and thus this claim must fail. Dkt. No. 47 at 15–18.
The Court agrees.

"[T]o state a claim against a private entity on a § 1983 conspiracy theory, the complaint
must allege facts demonstrating that the private entity acted in concert with the state actor to
commit an unconstitutional act." *Spear v. W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992).
Although "[a] § 1983 conspiracy claim is distinct from one of joint action," *Betts v. Shearman*,
751 F.3d 78, 84 n.1 (2d Cir. 2014), "[t]he concepts of acting 'jointly' or in 'conspiracy with'
state actors are intertwined," *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445
(E.D.N.Y. 2012). "Even if considered as conceptually separate theories, both require the
pleading of facts sufficient to show something more than conclusory allegations." *Id*. "To prove
a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or
between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional

injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

In *De'Bey v. City of N.Y.*, for example, the plaintiff alleged that the defendants "'conspired the unconstitutional break in' by threatening to involve the police, that [the plaintiff] was 'charged as part of a conspiracy to limit the defendant's personal and municipal liability . . . and that [the d]efendants conspired 'to retaliate against him for filing a Notice of Clam against the [City] for damages.'" 2021 WL 8013765, at *14 (S.D.N.Y. Oct. 26, 2021) (citations omitted). There, the court held that the plaintiff "fail[ed] to allege any objective factual basis from which the Court can properly infer a meeting of the minds among the individuals who were involved in the alleged constitutional violations, and as a result, [plaintiff's] conspiracy claims [under § 1983] 'must be dismissed.'" *Id.* (citation omitted).

Here, similarly, Plaintiff alleges that there was "[a]n explicit agreement among the Defendants to take steps against the Plaintiff," Am. Compl. ¶ 144(a), and that "Defendants acted under color of state law—individually, in concert, and through a conspiracy—to deprive Plaintiff of [constitutional rights]," *id.* ¶ 163. However, there are no facts pleaded from which the Court could infer any agreement among the Defendants; rather, *Plaintiff* called the police. *Id.* ¶¶ 99– 101. There are no factual allegations that Defendants did or agreed to anything with the police either before the protest or during the protest. Therefore, "those allegations are too conclusory to establish a conspiracy." *Ahmad v. White Plains City Sch. Dist.*, 2019 WL 3202747, at *15 (S.D.N.Y. July 15, 2019); *see also Guttilla v. City of N.Y.*, 2015 WL 437405, at *6 (S.D.N.Y. Feb. 3, 2015) (same).

Indeed, to hold that Plaintiff's conspiracy allegations state a claim upon which relief can be granted would be to disregard the very lesson of *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544.  Plaintiff "points to conduct that, without more, does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id*. at 557.  Thus, Plaintiff's Section 1983 claims against Defendants must be dismissed.

### B.  Count II: 42 U.S.C. § 1985(3)

Plaintiff alleges that all of the defendants conspired to deprive Plaintiff of his constitutional rights under 42 U.S.C. § 1985(3).  Plaintiff claims that "the [d]efendants have engaged in a conspiracy to deprive [ ] Plaintiff, and indeed any of his fellow Chinese dissident protestors, of his Constitutional rights."  Am. Compl. ¶ 149.  To substantiate his claim, he alleges that there is an "[a]greement on the part of Defendants O'Melveny and Sarnoff to . . . [silence the] Chinese dissident protest in the" United States.  *Id*. ¶ 151(a).  Plaintiff also alleges that "Defendants O'Melveny, Sarnoff and Stanton colluded with the other Defendants" to do so.  *Id*. ¶ 153.  Defendants argue that Plaintiff has failed to state a Section 1985(3) claim because the "conspiracy allegations are utterly conclusory" and the Amended Complaint fails to allege facts showing that similarly situated individuals were treated differently and thus has failed to plead discrimination against Plaintiff.  Dkt. No. 47 at 19.  The Court agrees for substantially the reasons set forth above.

"While a plaintiff is not required to allege that the defendants acted under color of state law to make out a claim under 42 U.S.C. § 1985(3)," *LeVine v. N.Y. State Police*, 2022 WL 4465588, at *4 (N.D.N.Y. Sep. 26, 2022), the plaintiff must adequately allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.  Furthermore, the conspiracy must also be

motivated by 'some racial or . . . [other] discriminatory animus.'" *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087–88 (2d Cir. 1993) (per curiam) (citations omitted); *see also Thomas v. DeCastro*, 2019 WL 1428365, at *7 (S.D.N.Y. Mar. 29, 2019) ("Under [Section 1985], [a p]laintiff must make 'a showing of class-based invidiously discriminatory animus' on the part of the conspiring parties, as well as provide 'some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" (citations omitted)).

Plaintiff's allegations fail. Plaintiff has not pleaded any facts to support a conspiracy claim. Plaintiff has only alleged in a conclusory manner the most fundamental aspect of a conspiracy: an agreement. *See* Am. Compl. ¶ 149. Plaintiff asserts that "Defendants O'Melveny and Sarnoff, using whatever resource to do so, have conscripted elements of the NYPD to oppose the protestors" and "have called upon contacts in the City with connections to the . . . office of the NY City Mayor." *Id*. ¶¶ 74–75. But these allegations state conclusions—there are no facts alleged to support that an agreement was formed between Defendants and the government actors, including "how or when" the conspiracy was formed. *See Walsh v. City of N.Y.*, 2021 WL 1226585, at *8 (S.D.N.Y. Mar. 31, 2021) (dismissing a conspiracy claim under section 1985 because the "complaint does not describe how or when the Defendant Officers entered into the agreement"); *see also Ragland v. Coulter*, 2021 WL 4430271, at *5 (E.D.N.Y. June 25, 2021) (holding that "alleging in conclusory fashion that [the defendant's] unspecified actions in connection with undescribed events are fairly attributable to the state" was insufficient). Nor does Plaintiff allege specific facts regarding "the roles of each of the defendants who allegedly participated in [the] conspiracy." *Laverpool v. New York City Transit Auth.*, 760 F. Supp. 1046, 1056 (E.D.N.Y. 1991). Plaintiff's "conspiracy allegation is [thus]

vague and implausible." *Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 611 (S.D.N.Y. 2015); *see also Morales v. City of New York*, 752 F.3d 234, 237 (2d Cir. 2014) ("[E]ven specific allegations of conspiracy, if conclusory, [are] not . . . sufficient to state a claim for conspiratorial violation of [a plaintiff's] rights.").

Accordingly, Plaintiff has failed to sufficiently allege a claim against Defendants under 42 U.S.C. § 1985(3).[5]

## II. Motion to Dismiss Count VII Pursuant to Federal Rules of Civil Procedure 12(b)(1)

Plaintiff alleges that it "would appear that Defendant O'Melveny is beholden to the CCP, and as such performs whatever acts are requested by the CCP." Am. Compl. ¶ 60. Plaintiff thus requests that the Court award "a declaratory judgment to compel registration [of O'Melveny and Sarnoff] as foreign agents" under FARA. *Id.* at ECF p. 27. Plaintiff argues that the Court is not "obliged to disregard Plaintiff's claims due to an absence of an explicit 'private right of action' provision in the FARA statute." *Id.* ¶ 192. Defendants argue that the FARA claim should be dismissed because Plaintiff does not have standing to pursue the claim, FARA does not provide a private right of action, and Plaintiff's allegations are deficient. Dkt. No. 47 at 20–24. Because the Court finds that Plaintiff does not have standing to bring the FARA claim, it does not address Defendants' arguments that are properly brought under Rule 12(b)(6).

"For a plaintiff to have Article III standing, he must establish three things: (1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022). "An injury-in-fact is 'an invasion of a legally protected interest that is concrete and particularized and actual or imminent,

---

[5] Because Plaintiff does not sufficiently allege a conspiracy, the Court does not address the other elements of a Section 1985(3) claim.

not conjectural or hypothetical.'" *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 464
(S.D.N.Y. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "Regarding
statutory harms, it is not enough to allege a defendant violated the statute; '[o]nly those plaintiffs
who have been concretely harmed by a defendant's statutory violation' will have standing." *Id.*
(quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021)).

Here, Plaintiff does not allege any harm associated with his allegation of Defendants'
violation of the statute; rather, he alleges that "[FARA] creates transparency." Am. Compl.
¶ 190. It is true that FARA was passed because "government officials and the public generally
should be able to identify those who act on behalf of a foreign principal." *United States v.
McGoff*, 831 F.2d 1071, 1074 (D.C. Cir. 1987). Plaintiff, however, does not sufficiently allege
informational standing, because informational standing requires that a plaintiff be "deprived of
information that, on its interpretation, a statute requires the government or a third party to
disclose to it and . . . [that he] suffers, by being denied access to that information, the type of
harm Congress sought to prevent by requiring disclosure." *NRDC v. DOI*, 410 F. Supp. 3d 582,
597 (S.D.N.Y. 2019) (quoting *Elec. Privacy Info. Ctr. V. Presidential Advisory Comm'n on
Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017)). Plaintiff has failed to include any
allegations in his Amended Complaint that suggest that he suffered because O'Melveny and
Sarnoff did not register under FARA, if they were required to do so. Additionally, to the extent
that Plaintiff claims he suffered harm in the form of unwanted physical contact and emotional
trauma, Am. Compl. ¶ 112, he fails to allege how there were traceable to Defendants' failure to
register under FARA or how a declaratory judgment compelling registration would redress his
alleged injury.

Therefore, the Amended Complaint does not adequately plead standing to bring a FARA claim and must be dismissed under Rule 12(b)(1).  Because the Court concludes that Plaintiff does not have standing to bring a FARA claim, it does not address whether Plaintiff has adequately alleged a claim under FARA in the Amended Complaint.  *See Cornwell v. Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385–86 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *see also United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1155– 56 (2d Cir. 1993) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, 'the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" (quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1350 (1969)).

**CONCLUSION**

The motion to dismiss Counts I, II, III, and VII against Defendants O'Melveny and Sarnoff is GRANTED with prejudice.[6]  The Court will retain jurisdiction to address Defendants' motion under Federal Rule of Civil Procedure 11 to the degree that the motion is properly before this Court.[7]

The Clerk of Court is respectfully directed to close Dkt. No. 46.


SO ORDERED.


Dated: July 17, 2023
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[6] Plaintiff does not request leave to replead and does not "identify [any] additional facts or legal theories that [he] might assert if given the opportunity to replead.  For this reason and because the Court concludes that any amendment would be futile," Counts I, II, III, and VII of the Amended Complaint against Defendants O'Melveny and Sarnoff are dismissed with prejudice. *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 401 (S.D.N.Y. 2022), *amended*, 2022 WL 2479110 (S.D.N.Y. July 6, 2022).

[7] Defendants have also suggested that the Court consider imposing sanctions *sua sponte*.  Dkt. No. 56 at 3.  The Court takes that request under advisement.