**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------x
:
In re:                                                       : Chapter 11
                                                             :
HO WAN KWOK, *et al*.,                                       : Case No. 22-50073 (JAM)
                                                             :
        Debtors.[1]                                     : Jointly Administered
                                                             :
-------------------------------------------------------------x

### CHAPTER 11 TRUSTEE'S NOTICE OF DEBTOR'S MOTION IN CRIMINAL CASE  FOR AN ORDER STAYING THESE CHAPTER  11 CASES AND ASSOCIATED ADVERSARY PROCEEDINGS

Luc A. Despins, as chapter 11 trustee (the "Trustee") for Ho Wan Kwok (the "Debtor"),

hereby provides notice that earlier today the Debtor filed a motion in the criminal case pending

against him in the United States District Court for the Southern District of New York [case no.

1:23-cr-00118-AT] (the "Criminal Case") seeking to stay the above-captioned chapter 11 cases

and all related adversary proceedings.  The Debtor's *Notice of Motion for an Order and Writ*

*Staying Bankruptcy Cases or in the Alternative for Other Relief* [Criminal Case ECF No. 129] (the

"Motion") is appended hereto as **Exhibit A**.  The Debtor's *Memorandum of Law* in support of his

Motion is appended hereto as **Exhibit B** [Criminal Case ECF No. 131].[2]  The *Declaration of*

*Sidharda Kamaraju Accompanying Defendant's Motion for an Order and Writ Staying*

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    The Debtor filed this memorandum partially under seal.  The Trustee has not been provided with an unsealed copy of the Motion.

*Bankruptcy Cases* [Criminal Case ECF No. 130] is filed herewith as **Exhibit C**.  The Trustee is

reviewing the Motion and will respond as appropriate.

Dated: August 30, 2023          LUC A. DESPINS, CHAPTER 11 TRUSTEE,
      New Haven, Connecticut

By:    */s/ Patrick R. Linsey*
      Douglas S. Skalka (ct00616)
      Patrick R. Linsey (ct29437)
      NEUBERT, PEPE & MONTEITH, P.C.
      195 Church Street, 13th Floor
      New Haven, Connecticut 06510
      (203) 821-2000
      dskalka@npmlaw.com
      plinsey@npmlaw.com

        *and*

      Nicholas A. Bassett (admitted *pro hac vice*)
      PAUL HASTINGS LLP
      2050 M Street NW
      Washington, D.C., 20036
      (202) 551-1902
      nicholasbassett@paulhastings.com

        *and*

      Avram E. Luft (admitted *pro hac vice*)
      G. Alexander Bongartz (admitted *pro hac vice*)
      PAUL HASTINGS LLP
      200 Park Avenue
      New York, New York 10166
      (212) 318-6079
      aviluft@paulhastings.com
      alexbongartz@paulhastings.com

      *Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
|  | : |  |
| In re: | : | Chapter 11 |
|  | : |  |
| HO WAN KWOK, *et al.*,[1] | : | Case No. 22-50073 (JAM) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
-------------------------------------------------------x

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 30, 2023, the foregoing, and all exhibits and attachments thereto, was electronically filed. Notice of this filing will be sent by e-mail to all parties to the above-captioned chapter 11 case by operation of the Court's electronic filing ("<u>CM/ECF</u>") system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.[2] Parties may access this filing through the Court's CM/ECF system.

Dated: August 30, 2023          LUC A. DESPINS, CHAPTER 11 TRUSTEE,
     New Haven, Connecticut

By:   */s/ Patrick R. Linsey*
     Patrick R. Linsey (ct29437)
     NEUBERT, PEPE & MONTEITH, P.C.
     195 Church Street, 13th Floor
     New Haven, Connecticut 06510
     (203) 821-2000
     plinsey@npmlaw.com

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]   To the extent that the foregoing was filed outside regular business hours, service by mail on recipients unable or not qualified to accept electronic notice was made on the next business day.

**<u>EXHIBIT A</u>**
**(Debtor's Notice of Motion for an Order and Writ Staying Bankruptcy Cases or in the
Alternative for Other Relief)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-CR-118-1 (AT) |
| *Plaintiff,* | |
| | **NOTICE OF MOTION FOR AN ORDER AND WRIT STAYING BANKRUPTCY CASES OR IN THE ALTERNATIVE FOR OTHER RELIEF** |
| v. | |
| HO WAN KWOK, | |
| *Defendant.* | **ORAL ARGUMENT REQUESTED** |

Defendant Ho Wan Kwok, through counsel, respectfully moves the Court to issue an order and writ staying the bankruptcy cases captioned *In re Ho Wan Kwok, et al.*, Case No. 22-50073(JAM) (Bank. D. Conn.) (Jointly Administered), including the jointly administered proceedings captioned *In re Genever Holdings Corp.*, Case No. 22-50542(JAM) (Bank. D. Conn.), and *In re Genever Holdings LLC*, Case No. 22-50592(JAM) (Bank. D. Conn.), and all related adversary proceedings, pursuant to the All Writs Act, 28 U.S.C. § 1651, and the Court's inherent supervisory authority.

Defendant moves upon the Declaration of Sidhardha Kamarju, the exhibits annexed thereto, and the accompanying Memorandum of Law.

Defendant respectfully requests oral argument on this motion.

Dated:  August 30, 2023
          New York, New York

                                  Respectfully submitted,

                                  Sidhardha Kamaraju
                                  Matthew S. Barkan
                                  Daniel J. Pohlman
                                  Clare P. Tilton
                                  PRYOR CASHMAN LLP
                                  7 Times Square
                                  New York, NY 10036
                                  (212) 421-4100
                                  skamaraju@pryorcashman.com
                                  mbarkan@pryorcashman.com
                                  dpohlman@pryorcashman.com
                                  ctilton@pryorcashman.com

                                  *Attorneys for Defendant Ho Wan Kwok*

**<u>EXHIBIT B</u>**
**(Debtor's Memorandum of Law)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

                *Plaintiff,*

    v.

HO WAN KWOK,

                *Defendant.*

---

**FILED PARTIALLY UNDER SEAL**

Case No. 1:23-CR-118-1 (AT)

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION FOR AN ORDER AND WRIT STAYING BANKRUPTCY CASES**

Sidhardha Kamaraju
Matthew S. Barkan
Daniel J. Pohlman
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
ctilton@pryorcashman.com

*Attorneys for Defendant Ho Wan Kwok*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 2

RELEVANT BACKGROUND ................................................................................. 5

    I.  The Bankruptcy Filing and the Indictment ................................................ 5

    II.  The Contempt Order Invades Mr. Kwok's Fifth Amendment Rights .......... 7

    III. The Settlement Agreement Between the Trustee
        and the Government Concerning the Mahwah Facility ................................ 9

    IV. The August 2023 Subpoenas Invade Mr. Kwok's Attorney-Client Privilege ............ 12

ARGUMENT ........................................................................................................ 14

    I.  Applicable Law ......................................................................................... 14

    II. Discussion ................................................................................................ 17

        A.  The Court Should Stay the Bankruptcy Cases to Protect
            Mr. Kwok's Rights and the Integrity of these Proceedings ................... 17

            i.      The Contempt Order Threatens
                  Mr. Kwok's Fifth Amendment Rights ...................................... 18

            ii.     The Mahwah Proceeding
                  Threatens Mr. Kwok's *Brady* Rights ........................................ 20

            iii.    Erosion of Mr. Kwok's Attorney-Client Privilege ................... 23

            iv.    The Government Has Previously Sought
                  a Similar Stay of a Parallel Proceeding ..................................... 25

        B.  In the Alternative, the Court Should Enter an
            Order that Minimizes the Harm to Mr. Kwok's Rights. ........................ 28

CONCLUSION ..................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Baldwin-United Corp.*,
   770 F.2d 328 (2d Cir. 1985) ................................................................................................15

*Brady v. Maryland*,
   373 U.S. 83 (1963) ....................................................................................................3, 18, 20, 29

*Caleb and Brown Pty. Ltd. v. Thompson*,
   No. 20-cv-8612(LAP), 2020 WL 6887680 (S.D.N.Y. Nov. 24, 2020) ..................................16

*Eisenberg v. Feiner (In re Ahead By A Length, Inc.)*,
   78 B.R. 708 (Bankr. E.D.N.Y. 1987) ...................................................................................17

*Giglio v. U.S.*,
   405 U.S. 150 (1972) ..............................................................................................................20

*In re Grand Jury Subpoena Dated Feb. 2, 2012*,
   741 F.3d 339 (2d Cir. 2013) ...................................................................................................19

*Harris v. Nelson*,
   394 U.S. 286 (1969) ..............................................................................................................14

*Hoffman v. United States*,
   341 U.S. 479 (1951) ..............................................................................................................18

*Landis v. North Am. Co.*,
   299 U.S. 248 (1936) ..............................................................................................................15

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012) ...............................................................................................15, 16

*In re Marceca*,
   131 B.R. 774 (Bankr. S.D.N.Y. 1991) ..............................................................................17, 18

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*,
   754 F. Supp. 2d 616 (S.D.N.Y. 2010) ..................................................................................26

*S.E.C. v. Credit Bancorp, Ltd.*,
   93 F. Supp. 2d 475 (S.D.N.Y. 2000) ....................................................................................14

*In re Schick*,
   215 B.R. 4 (Bankr. S.D.N.Y. 1997) .....................................................................................18

*SEC v. Millan*,
  20 Civ. 06575 (CM), 2020 WL 5898769 (S.D.N.Y. Oct. 5, 2020) ........................................27

*SEC v. Oakford Corp.*,
  181 F.R.D. 269 (S.D.N.Y. 1998) ...........................................................18

*State Farm Mut. Auto. Ins. Co. v. Parisien*,
  352 F. Supp. 3d 215 (E.D.N.Y. 2018) ...................................................15

*Sterling Nat. Bank v A-1 Hotels Int'l Inc.*,
  175 F. Supp. 2d 573 (SDNY 2001) ........................................................26

*In re Three Grand Jury Subpoenas Duces Tecum Dated Jan. 29, 1999*,
  191 F.3d 173 (2d Cir. 1999) ...................................................................18

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
  60 F.3d 27 (2d Cir. 1995) ......................................................................26

*Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*,
  886 F. Supp. 1134 (S.D.N.Y. 1995) ..................................................16, 17

*In re Two Grand Jury Subpoenas Duces Tecum Dated Aug. 21, 1985*,
  793 F.2d 69 (2d Cir. 1986) ....................................................................19

*In re Two Subpoenas to Testify Before Grand Jury Dated Dec. 1, 2016*,
  252 F. Supp. 3d 170 (E.D.N.Y. 2017) ..................................................19

*United States v. Amrep Corp.*,
  405 F. Supp. 1053 (S.D.N.Y. 1976) ...................................................15, 16

*United States v. FINRA*,
  607 F.Supp.2d 391 (E.D.N.Y. 2009) .....................................................16

*United States v. Gerace*,
  No. 21-2419, 2023 WL 3243477 (2d Cir. May 4, 2023) ....................15, 16

*United States v. Hamilton*,
  730 F. Supp. 1272 (S.D.N.Y. 1990) ...................................................21, 22

*United States v. HSBC Bank USA, N.A.*,
  No. 12 Cr. 763, 2013 WL 3306161 (E.D.N.Y. July 1, 2013) .................15

*United States v. Leal-Del Carmen*,
  697 F.3d 964 (9th Cir. 2012) ................................................................22

*United States v. Ming He*,
  94 F.3d 782 (2d Cir. 1996) ...................................................................15

*United States v. Nebraska Beef, Ltd.*,
194 F. Supp. 2d 949 (D. Neb. 2002) .................................................................22

*United States v. Simon*,
373 F.2d 649 (2d Cir. 1967) .............................................................................15

*United States v. Soriano*,
401 F.Supp.3d 396 (E.D.N.Y. 2019) ................................................................22

*United States v. Valenzuela–Bernal*,
458 U.S. 858 (1982) ..........................................................................................21

*United States v. Yalincak*,
853 F.3d 629 (2d Cir. 2017) .............................................................................21

**Statutes**

11 U.S.C. § 521(a)(3) ................................................................................................8

11 USC § 521(a)(4) .................................................................................................19

28 U.S.C. § 1651(a) ..........................................................................................14, 16

**Other Authorities**

Fed. R Bankr. P. 2004 .................................................................................... *passim*

Fed. R. Crim. P. 16 .................................................................................................17

iv

Defendant Ho Wan Kwok, through his undersigned attorneys, hereby respectfully moves the Court, pursuant to the All Writs Act, 28 U.S.C. § 1651, and pursuant to the Court's inherent supervisory authority, for an order staying the bankruptcy cases captioned *In re Ho Wan Kwok*, *et al.*, Case No. 22-50073(JAM) (Bankr. D. Conn) (Jointly Administered), including each of its related adversary proceedings[1] (the Kwok Chapter 11 Case (as defined below), the Genever US Chapter 11 Case (as defined below), the Genever BVI Chapter 11 Case (as defined below), and all related adversary proceedings (collectively the "Bankruptcy Cases") or, in the alternative, for an order (i) modifying the protective order entered in this case (the "Protective Order") to allow production of the discovery in this case to Luc Despins, Esq. (the "Trustee"), the Chapter 11 trustee in the Bankruptcy Cases, pursuant to a contempt order (the "Contempt Order") entered against Mr. Kwok by the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court") on or about July 26, 2023; (ii) directing that Mr. Kwok's defense team continue to be permitted access to the property located at 675 Ramapo Valley Road, Mahwah, New Jersey 07430 (the "Mahwah Facility") through the pendency of this case and any resulting appeals; (iii) precluding the government from facilitating the sale of the Mahwah Facility in the Bankruptcy Cases through the pendency of this case and any resulting appeals; and (iv) ordering that the government not solicit or receive from the Trustee any information or records that are subject to any privileges belonging to Mr. Kwok, including, but not limited to, his attorney-client or Fifth Amendment privileges, and identifying any such materials already provided by the Trustee.

---

[1] A list of the docket numbers of the related adversary proceedings are contained in the Proposed Order and Writ attached as Exhibit 1 to the Declaration of Sidhardha Kamaraju dated August 30, 2023 ("Kamaraju Decl.").

## PRELIMINARY STATEMENT

It is a bedrock principle of the Constitution that when the government charges a defendant with violations of criminal laws, the defendant is afforded significant rights, including the right against self-incrimination and the right to access exculpatory evidence. This Court is principally tasked with safeguarding those rights, which are fundamental to the fairness and integrity of a criminal proceeding, and to which Mr. Kwok is entitled. Mr. Kwok's rights are under increasing threat, however, because, at the same time Mr. Kwok is being prosecuted by the government, he is also the debtor in a parallel Chapter 11 bankruptcy proceeding where, in the name of marshalling Mr. Kwok's assets, the Trustee, with the government's cooperation, is litigating the very issues that go to the heart of this prosecution. In doing so, the Trustee is interfering with Mr. Kwok's rights as a criminal defendant and the sanctity of these proceedings.

*First*, the Trustee is forcing Mr. Kwok to participate in the violation of his own constitutional right against self-incrimination. Casting aside Mr. Kwok's invocation of his Fifth Amendment rights, the Trustee has sought to compel Mr. Kwok and his counsel to produce to the Trustee (and thus effectively authenticate) the discovery produced by the government in this matter, and has even procured the Contempt Order from the Bankruptcy Court based on Mr. Kwok's failure to produce documents that he plainly should not have to produce in light of the pending criminal prosecution. The Trustee's discovery demands call upon Mr. Kwok, for example, to produce documents showing his purported relationship with GTV, which, as the Court knows, is a central issue in this proceeding. In response to these overreaching requests, Mr. Kwok properly asserted his Fifth Amendment rights under the act of production doctrine.

Despite acknowledging that Mr. Kwok's right against self-incrimination was implicated, the Bankruptcy Court nevertheless sided with the Trustee and ordered Mr. Kwok to produce the

documents based on a tortured reading of an exception to the act of production doctrine. Although Mr. Kwok has sought leave to appeal that ruling to the United States District Court for the District of Connecticut, the Contempt Order places Mr. Kwok in an untenable position—he is constrained to move this Court to modify the Protective Order to permit production to the Trustee, even though doing so would violate his constitutional rights. Even the government opposes modification of the Protective Order for this purpose.

*Second*, the Trustee commenced an adversary proceeding against the owner of the Mahwah Facility and procured a preliminary injunction requiring it to turn the facility over to the Trustee for disposition. Surprisingly, rather than seeking to prevent the disposal of a piece of real property that sits at the heart of the superseding indictment (the "Indictment") in this matter, the government has instead entered into a settlement agreement with the Trustee (the "Settlement Agreement") to facilitate that sale and has provided the Trustee with evidence from *this* case, in apparent violation of the protective order in this action, in support of the Trustee's efforts to seize the Mahwah Facility.

The government's selective cooperation with the Trustee is telling. The Mahwah Facility plays a central role in this case—indeed, in the Indictment, the government repeatedly (and erroneously) alleges that the Mahwah Facility was improperly purchased using investor funds for Mr. Kwok's benefit. Mr. Kwok vigorously disputes this contention and intends to show at trial that the purchase of the Mahwah Facility was entirely consistent with GTV's business and the representations made to investors. Mr. Kwok intends to do so by, among other ways, demonstrating the intended use of the facility. Accordingly, preserving the status quo at the Mahwah Facility is critical. If, however, the Trustee, as he did already with Mr. Kwok's actual residence at the Sherry Netherland Hotel (the "Sherry Netherland Residence"), takes control of the Mahwah Facility, then Mr. Kwok will lose access to the facility and the *Brady* evidence that it

contains. This Court should not permit the Trustee in the Bankruptcy Cases to control and potentially alter an alleged crime scene of critical importance to this proceeding.

*Third*, the Trustee has demonstrated his willingness to use discovery in the Bankruptcy Cases to effect an end-run around Mr. Kwok's attorney-client privilege in a way that threatens his Fifth Amendment rights. In particular, prior to Mr. Kwok's arrest, he entered into a consensual order in the Kwok Chapter 11 Case to resolve a dispute with the Trustee over control of Mr. Kwok's privileged communications (the "Privilege Order"). The Privilege Order provides that the Trustee holds Mr. Kwok's attorney-client privilege and claims of work-product protection, but cannot waive those privileges absent Mr. Kwok's consent or further order of the Bankruptcy Court. Mr. Kwok has no intention of waiving any privileges. Given, however, the Trustee's intention to litigate the same issues in the Bankruptcy Cases that are at issue before this Court, it is clear that the Trustee will seek to use Mr. Kwok's privileged communications about issues that are also material to his defense to the criminal charges here. Mr. Kwok's concerns are compounded by the fact that the government and the Trustee have been readily sharing information behind the scenes, including (i) the Trustee providing his purported "analysis" about the ownership of the Mahwah Facility to the government and (ii) the government providing the Trustee with photographs taken during the execution of a search warrant at the Mahwah Facility for the Trustee's use in seizing that property. This type of coordination imperils Mr. Kwok's ability to defend himself fairly in both this case and the Bankruptcy Cases.

Taken in isolation, any one of these issues may be redressable in the Bankruptcy Court. But taken together, these and related issues present grave consequences to Mr. Kwok's defense against the government's charges here, and, as the Trustee's counsel has stated, these issues will only repeat themselves for as long as the Bankruptcy Cases persist. Mr. Kwok acknowledges the

4

importance of the Bankruptcy Cases and the Trustee's efforts to recover assets for the estate, but Mr. Kwok's rights as a criminal defendant present weightier concerns. The integrity of this proceeding must take primacy. Accordingly, Mr. Kwok respectfully requests that this Court enter an order staying the Bankruptcy Cases during the pendency of the criminal proceedings.

**RELEVANT BACKGROUND**

**I.      The Bankruptcy Filing and the Indictment**

Mr. Kwok filed for Chapter 11 bankruptcy on February 15, 2022 (the "Kwok Chapter 11 Case") in the Bankruptcy Court in Connecticut. Approximately five months later, on or about July 8, 2022, the Bankruptcy Court approved the appointment of Despins as Trustee in the Kwok Chapter 11 Case. The Kwok filing was followed by Genever Holdings Corporation ("Genever BVI") initiating bankruptcy (the "Genever BVI Chapter 11 Case") on October 11, 2020, and Genever Holdings LLC ("Genever US") initiating bankruptcy (the "Genever US Chapter 11 Case") in this Court on October 12, 2020. The three cases have been consolidated, and the Trustee controls Genever US and Genever BVI. The interests of creditors in the Kwok Chapter 11 Case have been represented through an Official Committee of Unsecured Creditors (the "Creditors' Committee"), as well as an entity holding an unsatisfied civil judgment against Mr. Kwok, Pacific Alliance Asia Opportunity Fund L.P. ("PAX").

Beginning in July 2022, Mr. Kwok, through his counsel, attempted to resolve the Bankruptcy Cases through a potential global settlement, offering a payment of many millions of dollars from his family to his creditors. (*See* Kwok Bankruptcy Case Dkt. No. 1274 ¶ 12.) Mr. Kwok negotiated first with PAX, which had a large claim against his estate. By September 2022, Mr. Kwok and PAX had entered into a term sheet. (*Id.* ¶ 12.) After reaching agreement in principle

5

with PAX, Mr. Kwok, again through his counsel, negotiated with the Creditors Committee and reached an agreement in principle by the end of October 2022. (*Id.* ¶ 13.)

On October 26, 2022, Mr. Kwok's bankruptcy counsel informed the Trustee that Mr. Kwok had reached an agreement in principle on all material items with both PAX and the Creditors' Committee. (*Id.* ¶ 14.) However, it is apparent that the Trustee soon derailed these efforts. On November 17, 2022, the Trustee met with Mr. Kwok, along with his attorneys Stephen Kindseth and Aaron Mitchell. (*Id.* ¶ 19; Kamaraju Decl. Ex. 8 (Dec. 12, 2022 H'ring Tr.) at 848:25-849:1.).) The Trustee made various thinly veiled threats at the November 17 meeting, including asking Mr. Kwok if he knew who Al Capone was, telling Mr. Kwok that Al Capone went to jail for tax evasion, and stating that he hoped that the support that Mr. Kwok was receiving was being reported as income in the United States. (Kamaraju Decl. Ex. 8 at 862:18-19.) The Trustee then told Mr. Kwok that he spoke to the Internal Revenue Service and the Securities and Exchange Commission (the "SEC") on a weekly basis, and that he should settle before it was "too late." (*Id.* 862:24-863:12.) The Trustee then made a settlement demand of $250 million, which was considerably more than what Mr. Kwok had negotiated with PAX and the Creditors' Committee. (*Id.* 863:16-18.) The Trustee also threatened to lock Mr. Kwok out of the Sherry Netherland Residence, and stated that Mr. Kwok would pay $250 million when he was about to go to jail. (*Id.* 866:24-867:24.)

On or about March 6, 2023, a grand jury sitting in this District returned a sealed indictment against Mr. Kwok and others, alleging, among other offenses, securities fraud, wire fraud, and money laundering. The Federal Bureau of Investigation (the "FBI") arrested Mr. Kwok on March 15, 2023, and searched the Mahwah Facility and the Sherry Netherland Residence that same day. The FBI seized voluminous records, not only from the Mahwah Facility and the Sherry Netherland

Residence,[2] but also from the home of one of Mr. Kwok's co-defendants, Yanping Wang. The government has (presumably) produced materials collected from these searches to the defendants in this matter, subject to the Protective Order entered by the Court on or about May 4, 2023.

## II.     The Contempt Order Invades Mr. Kwok's Fifth Amendment Rights

As noted above, on July 26, 2023, the Bankruptcy Court issued a Memorandum of Decision and Order Holding Individual Debtor [Mr. Kwok] in Contempt of Court and Denying Motion for Stay of Order Compelling Production. (*See* Kamaraju Decl. Ex. 2 (the "Contempt Order").) The Contempt Order held Mr. Kwok in contempt for asserting his Fifth Amendment rights in the face of the Trustee's demands that Mr. Kwok produce voluminous documents (including those produced by the government in this case). (*Id.* at 35-36.) The Bankruptcy Court's erroneous contempt order stemmed from the Trustee's Motion for a Rule 2004 Subpoena. (Kamarju Decl. Ex. 3 (the "2022 Rule 2004 Motion").) Through the 2022 Rule 2004 Motion, the Trustee sought both to compel Mr. Kwok to testify in a deposition, and also for Mr. Kwok to produce broad categories of documents, including but not limited to communications between Mr. Kwok and his family, "[a]ll documents related to 'any investments or trading' by Mr. Kwok and various entities (including all entities mentioned in the Indictment in this action), and all documents "related to any obligation, claim, liability or debt associated with any legal dispute involving" Mr. Kwok. (*Id.* at 14-15.)

In response, Mr. Kwok invoked his "rights under the 5th Amendment to the United States Constitution, including under the act of production doctrine … including [to] all requests for

---

[2] During the search of the Sherry Netherlands Residence and while Mr. Kwok was detained, a fire broke out, badly damaging parts of the apartment. Other than an FBI report describing the start of the fire, the government has not produced any discovery to the defense explaining why the fire broke out during the FBI's search.

documents and information." (Kamaraju Decl. Ex. 2 at 4; *see also* Kwok Bankruptcy Case Dkt. No. 1444, Ex. A.) The Bankruptcy Court held multiple hearings regarding the interplay between Mr. Kwok's Fifth Amendment rights and the Trustee's right to certain records pursuant to the bankruptcy code. (*Id*. at 5-7). During oral argument in these hearings, the Trustee stated explicitly that the discovery that he was seeking from Mr. Kwok was the discovery produced by the government in this action and that the Trustee knew that if he requested the discovery directly from the government, that request would be rejected. (Kamaraju Decl. Ex. 9 (May 2, 2023 H'ring Tr.) at 14:3-9, Despins: "Your Honor should enter an order saying that [Mr. Kwok] is directed to seek a modification of any . . . protective order in the criminal case to allow the Chapter 11 Trustee access to the document produced by the Government to [Mr. Kwok];" *id.* at 15:20-21, Despins: "The DOJ is never going to produce anything to us. We don't exist in their court.")

On July 26, 2023, the Bankruptcy Court issued the Contempt Order. In relevant part, the court held that production of materials pursuant to the 2022 Rule 2004 Motion "would be testimonial and incriminating both with regards to the documents in the possession of the prosecution and the documents that have not been seized by the prosecution." (Kamaraju Decl. Ex. 2 at 20.) Despite recognizing that Mr. Kwok properly invoked his Fifth Amendment right against self-incrimination and that any production would be testimonial, the Bankruptcy Court held that an exception to the act of production doctrine applied, namely the "required records" doctrine. (*Id*. at 22, 33.) The Bankruptcy Court held that the required records exception applied because (i) Mr. Kwok had statutory duties to provide information to the Trustee under 11 U.S.C. § 521(a)(3) and 521(a)(4), (ii) the records were allegedly of the kind that Mr. Kwok "customarily kept," and (iii) the records had assumed "public aspects" by virtue of their connection to the proceeding. (*See id.* at 20-33.) As a result, the Bankruptcy Court held that "(i) it is not impossible

8

for [Mr. Kwok] to comply with the Order Compelling Production and (ii) under the required records exception, the Individual Debtor may not properly invoke his Fifth Amendment right against self-incrimination in response to the Order Compelling Production." (*Id*. at 33.)

The Bankruptcy Court erroneously rejected Mr. Kwok's arguments that the Contempt Order should be stayed given the risk that it could interfere with this Court's proceedings. The Bankruptcy Court found that "this Order does not substantially interfere with the Criminal Court's interest in the orderly administration of the Criminal Action." (*Id*. at 39.) The Bankruptcy Court ordered Mr. Kwok "to petition the Criminal Court to allow production to the Trustee." (*Id*. at 11.) On August 9, 2023, Mr. Kwok sought leave from the United States District Court for the District of Connecticut to appeal the Bankruptcy Court's Contempt Order, which the Trustee opposed. As of the filing of this motion, the District Court had not ruled on Mr. Kwok's request.

### III.     The Settlement Agreement Between the Trustee and the Government Concerning the Mahwah Facility

The Trustee has also moved swiftly to dispose of key properties critical to this proceeding, and—contrary to the Trustee's prior representation to the Bankruptcy Court that he does not "exist" in the eyes of the government—is now enlisting the assistance of the prosecution team in those efforts. Prior to his detention in this proceeding, Mr. Kwok resided at the Sherry Netherland Residence. The Trustee, who now controls the Sherry Netherland Residence (Kwok Bankruptcy Case Dkt. No. 2110 ¶ 24), has disposed of property that was located in the Sherry Netherland Residence, (*see* Kwok Bankruptcy Case Dkt. No. 1809 (docket order regarding Trustee motion to abandon property located in Sherry Netherland Residence).) The Trustee is currently seeking financing to facilitate a sale of the Sherry Netherland Residence. (*See* Kwok Bankruptcy Case Dkt. No. 2110.) Mr. Kwok made an application to this Court for an order allowing access to the Sherry Netherland Residence before its sale, which was granted. (Dkt. Nos. 72, 79.)

The Trustee has now turned his sights to another property that is key to the charges in the Indictment: the Mahwah Facility. Soon after Mr. Kwok's arrest, on or about June 28, 2023, the Trustee apparently "advised the Government that he had concluded, after extensive analysis, that, among other things, the [Mahwah Facility] is equitably owned by [Mr. Kwok] and, therefore, is property of [Mr. Kwok's] chapter 11 estate." (Kwok Bankruptcy Case Dkt. No. 2083 ¶ 12.)[3] On or about July 11, 2023, the Trustee commenced the adversary proceeding *Despins v. Taurus Fund LLC et al.*, Adv. Proc. No. 23-05017 (JAM) (Bankr. D. Conn.) (the "Mahwah Proceeding"), in which, among other things, the Trustee alleged that the Mahwah Facility was owned by a corporate entity that is a purported alter ego of Mr. Kwok's.

The Trustee attached to the Mahwah Proceeding complaint several photographs taken by the FBI during its search of the Mahwah Facility. (*See* Kamaraju Decl. Ex. 4 (photographs of the Mahwah Facility).)[4] The Trustee confirmed that these photographs were provided to the Trustee by a member of the prosecution team, despite the Protective Order in this case. (Kamaraju Decl. Ex. 10 (Aug. 14, 2023 H'ring Tr.) at 85:2-25.) It does not appear that the government has ever publicly disclosed these photographs.

Together with the Mahwah complaint, on July 11, 2023, the Trustee also filed a request for

---

[3] As noted above, this was not the first time that the Trustee had provided information to the government. Mr. Kwok has requested from the government production of all communications with the Trustee or his representatives, but the government has not produced any such communications. In the event the government refuses to produce those communications, Mr. Kwok will move to compel production of that information, which is relevant, particularly in light of the apparent coordination between the Trustee and the government.

[4] Given that these photographs contain personal information about not only Mr. Kwok and his family, but also presumably FBI agents involved in the search, and are presumably subject to the Protective Order, we are submitting these photographs under seal. The Trustee has informed Mr. Kwok's bankruptcy counsel that these records were inadvertently filed on the public docket and that he is "contemplating" filing a motion to seal the records.

a temporary restraining order and preliminary injunction (the "Mahwah TRO"), in which he
requested that the owner of the property vacate the Mahwah Facility, turn over all means of
accessing the Mahwah Facility to the Trustee, and limit access to the Mahwah Facility to (i) the
Trustee and his team, (ii) the U.S. Department of Justice, (iii) the FBI, (iv) other law enforcement
agencies and (v) any other persons authorized by the Trustee. (Mahwah Proceeding Dkt. No. 4)
The Trustee additionally requested that the court order the U.S. Marshals Service to implement the
order, including through "the use of reasonable force if necessary to gain access to the Mahwah
Mansion or as otherwise necessary to ensure compliance." (Mahwah Proceeding Dkt. No. 4-1 at
3-4.) On August 1, 2023, the Bankruptcy Court granted the Trustee's request for a temporary
restraining order, but declined to direct the Marshals to assist the Trustee in implementing the
order. (Mahwah Proceeding Dkt. No. 17.)

The true extent of the government's cooperation with the Trustee to dispose of the Mahwah
Facility was revealed on August 14, 2023, when the Trustee filed with the Bankruptcy Court a
motion for approval of a Settlement Agreement between the Trustee and the government (signed
by the prosecution team) that purported to adjudicate certain rights between the Trustee and the
government with respect to the Mahwah Facility. According to the motion and accompanying
Settlement Agreement (which was not filed with this Court):

- There have been discussions between the government and the trustee regarding
  "potentially complex issues raised both in [the Mahwah] Proceeding and in the
  government's ongoing criminal case." (Kamaraju Decl. Ex. 5, Motion ¶ 1.).

- "The Trustee and the government are aligned both on the need to obtain control of
  and liquidate the Debtor's assets as quickly and efficiently as possible." (*Id.* ¶ 6.).

- The Trustee and the government agreed to negotiate how to apportion the proceeds
  from any sale of the Mahwah Facility, except that certain administrative costs—
  *including the Trustee's counsel's attorney's fees*—would be paid first out of those
  proceeds. (*Id.*, Settlement Agreement ¶¶ 6, 14(b).)

11

- The government agreed to "execute promptly any documents which may be required to convey clear title" for the Trustee's sale of the Facility. (*Id.* at 23.)

Although the defense first learned of the Settlement Agreement when it was filed publicly, the Trustee and the government executed it more than a month earlier, on or about July 13, 2023.

On August 14, 2023, the Bankruptcy Court held a hearing on the Trustee's motion for a preliminary injunction. In advance of the hearing, Mr. Kwok's bankruptcy counsel filed a letter with the court indicating that Mr. Kwok considers the Mahwah Facility and its contents to be important evidence in this proceeding, and that he intended to file a motion in this Court to ensure continued access to the Mahwah Facility and to prevent any changes to it or its contents pending resolution of this proceeding. (Kamaraju Decl. Ex. 11). On August 24, 2023, the Bankruptcy Court entered a preliminary injunction with respect to the Mahwah Facility. (Mahwah Proceeding Dkt. No. 47.)

**IV.    The August 2023 Subpoenas Invade Mr. Kwok's Attorney-Client Privilege**

On August 22, 2022, the Trustee filed a motion seeking an order "confirming" that he controlled certain legal privileges formerly held by Mr. Kwok, and directing that Mr. Kwok and others not withhold information on the basis of "any such privileges "or attempt to assert any such privileges." (Kwok Bankruptcy Case Dkt. No. 777 at 1.) That motion followed on the heels of the Trustee's prior receipt of authority from the Bankruptcy Court to serve subpoenas on "the Debtor and numerous law firms and other professional advisors who represented him" pursuant to Fed. R. Bankr. P. 2004 ("Rule 2004"). (*Id.* ¶ 1.) In response, Mr. Kwok invoked attorney-client privilege, work product protection, and other privileges and protections. (*Id.* ¶ 2.)

On September 14, 2022, the Bankruptcy Court issued the Privilege Order (attached hereto as Kamaraju Decl. Ex. 12), on consent, providing that the Trustee had "exclusive control" of "any attorney-client privilege or work product protection" concerning (among other things) any assets

that are or were held by Mr. Kwok or any other individual or entity that the Trustee was investigating.  (*Id.* at 1.)  The Privilege Order appeared to acknowledge that Mr. Kwok retained any privilege relating to unrelated issues, "such as unrelated criminal allegations" or Mr. Kwok's asylum application.  (*Id.* at 3.)  To the extent that Mr. Kwok's counsel believed that "particular documents or information … could result in personal harm to [Mr. Kwok] if disclosed to the Trustee," Mr. Kwok was required to log such documents on a privilege log and Mr. Kwok and the Trustee were both empowered to file motions clarifying who controls the privilege over any disputed communications.  (*Id.* at 4.)

The Privilege Order's acknowledgement of Mr. Kwok's inviolable privilege with respect to criminal matters was not, however, followed in practice.  Numerous individuals who were served with subpoenas by the Trustee—including former counsel for Mr. Kwok—did not provide Mr. Kwok's bankruptcy counsel any opportunity to review productions for privilege or self-incrimination issues.  Other subpoena recipients have produced materials to the Trustee and Mr. Kwok's bankruptcy counsel simultaneously.

Moreover, the Trustee himself has pushed back against Mr. Kwok's assertion of his privilege.  For example, in an August 17, 2023 email, the Trustee's counsel conveyed to Mr. Kwok's bankruptcy counsel that the Trustee did "not believe there is a reasonable basis for [Mr. Kwok] to withhold his consent to waiver of the privilege" as to certain of the documents it considered as "material to the adversary proceeding."  (Kamaraju Decl. Ex. 6.)  These documents included lawyers-only communications directly discussing ████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ The Trustee

has indicated that he may seek an order from the Bankruptcy Court permitting him to waive privilege as to these communications.

Further disputes as to the ability of the Trustee to waive Mr. Kwok's privilege are expected. On August 11, 2023, the Trustee filed a motion seeking authority under Rule 2004 to serve additional subpoenas (his sixth such motion), including on a long-standing counsel for Mr. Kwok, Victor Cerda, as well as his law firm. At a hearing on August 29, 2023, the Bankruptcy Court reserved decision on this motion and on August 30, 2023, issued a docket update indicating that the motion had been taken under advisement. (Kwok Bankruptcy Case, Aug. 30, 2023 Docket Text.) The Bankruptcy Court has permitted subpoenas to Mr. Kwok's lawyers, including lawyers involved in responding to regulatory inquiries, in the past. (*E.g.*, Kwok Bankruptcy Case Dkt. Nos. 839 (motion seeking discovery from, *inter alia*, law firms representing Mr. Kwok), 866 (granting Dkt. No. 839).)

## ARGUMENT

### I.    Applicable Law

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The purpose and function of the All Writs Act is to supply the courts with the instruments needed to perform their duty, as prescribed by the Congress and the Constitution . . . ." *Harris v. Nelson*, 394 U.S. 286, 300 (1969). Thus, the Act provides federal district courts with substantial authority to preserve their jurisdiction, including, but not limited to, enjoining related parallel proceedings. "Pursuant to this inherent power, a federal court may enjoin actions in other jurisdictions that would undermine its ability to reach and resolve the merits of the dispute before it." *S.E.C. v. Credit Bancorp, Ltd.*, 93

14

F. Supp. 2d 475, 476 (S.D.N.Y. 2000) (internal quotations and citations omitted); *see also, e.g., In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985) ("An important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction."); *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 224 (E.D.N.Y. 2018) (enjoining state court proceedings).

Similarly, every court has the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "One of the primary purposes of the supervisory power is to protect the integrity of judicial proceedings." *United States v. HSBC Bank USA, N.A.*, No. 12 Cr. 763, 2013 WL 3306161, at *4 (E.D.N.Y. July 1, 2013). A court's supervisory authority extends "over members of the bar of this Court," *United States v. Ming He*, 94 F.3d 782, 792 (2d Cir. 1996), and includes federal courts' obligation to ensure that defendants in criminal cases receive "fair standards of procedure," in which their rights are protected. *Id.*

Both the All Writs Act and the Court's supervisory authority provide the Court with the power to stay a parallel proceeding that interferes with the Court's jurisdiction. *See United States v. Gerace*, No. 21-2419, 2023 WL 3243477, at *1 (2d Cir. May 4, 2023) (recognizing district court's authority to enjoin parallel state proceeding which imperiled pending criminal case); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) (exercising its discretion, a district court "may stay civil proceedings when related criminal proceedings are imminent or pending, and it will sometimes be prudential to do so"); *United States v. Simon*, 373 F.2d 649, 651-52 (2d Cir. 1967) (assuming without deciding that district court had authority under both All Writs Act and supervisory authority to enjoin parallel civil proceeding); *United States v. Amrep Corp.*,

15

405 F. Supp. 1053, 1055 (S.D.N.Y. 1976) (stating that it is "perfectly clear that the court does have jurisdiction to prevent interference with the trial of the pending indictment or with the preparation by defendants for such trial" through staying related Federal Trade Commission ("FTC") proceedings); *United States v. FINRA*, 607 F.Supp.2d 391, 393 (E.D.N.Y. 2009) ("A district court unquestionably has the authority under the All Writs Act, 28 U.S.C. § 1651(a), to enjoin proceedings that threaten to interfere with its jurisdiction over a pending criminal case."); *Caleb and Brown Pty. Ltd. v. Thompson*, No. 20-cv-8612(LAP), 2020 WL 6887680 (S.D.N.Y. Nov. 24, 2020) (staying civil proceeding pending final judgment in criminal case).

Although some courts in this Circuit evaluate the propriety of a stay using a series of factors listed by the court in *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995), the Second Circuit in *Louis Vuitton* declined to be bound by what it described as a "mechanical device" that does "little more than serve as something of a check list of factors we ought to consider." 676 F.3d at 99. Rather, the "decision ultimately requires and must rest upon 'a particularized inquiry into the circumstances of, and the competing interests in, the case.'" *Id.* (quoting *Banks v. Yokemick*, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001)). In *Gerace*, the Second Circuit recently held that, in granting the government's request to enjoin a parallel state court defamation action brought by the defendant against potential witnesses in the criminal proceeding, the district court properly balanced the prejudice to the government from denying the injunction and to the defendant (the plaintiff in the parallel state court proceeding) from granting the injunction. 2023 WL 3243477 at *2; *see also FINRA*, 607 F. Supp. 2d at 393 (balancing the prejudice to the party requesting the stay and the party opposing the stay); *Amrep*, 405 F. Supp. at 1056 (finding the central question was degree to which parallel FTC proceeding would interfere with preparation for and conduct of defendant's criminal trial).

16

Post-indictment, bankruptcy cases can provide an acute harm, because "[t]he prejudice to the debtor's [F]ifth [A]mendment rights is more acute in the bankruptcy context because of the liberality of discovery procedures in civil litigation as contrasted with the limited discovery allowable under the Federal Rules of Criminal Procedure." *In re Marceca*, 131 B.R. 774, 778 (Bankr. S.D.N.Y. 1991) (granting stay of bankruptcy discharge litigation against debtor pending decision by government to indict or decline to prosecute the debtor; parties instructed to return for further consideration of the stay if indictment issued); *Eisenberg v. Feiner (In re Ahead By A Length, Inc.)*, 78 B.R. 708, 713 (Bankr. E.D.N.Y. 1987) (bankruptcy case stayed for six months pending further action in the criminal proceedings, without prejudice to further extension).

## II.    Discussion

### A. The Court Should Stay the Bankruptcy Cases to Protect Mr. Kwok's Rights and the Integrity of These Proceedings

It is rare for a trustee to be appointed in the Chapter 11 case of an individual debtor.  It is particularly complicated when such a debtor, as in this case, is then subsequently indicted on criminal charges that overlap in many ways with the issues in the Bankruptcy Cases.  The circumstances here thus present a unique threat—already occurring—that Mr. Kwok's rights are being abrogated for a bankruptcy proceeding that appears to predominantly benefit a sizeable hedge fund (at the apparent expense of individual investors) and the Trustee's law firm (at which the Trustee is a partner).  The risk to Mr. Kwok's guaranteed rights as a criminal defendant is untenable, and courts have recognized that parallel proceedings may "impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." *Transworld*, 886 F. Supp. at 1138-39 (S.D.N.Y. 1995) (citations omitted) (staying civil case pending resolution of parallel criminal

17

proceeding); *see also SEC v. Oakford Corp.*, 181 F.R.D. 269, 270 (S.D.N.Y. 1998) ("[T]he effect of . . . parallel proceedings is to place the defendant in the jaws of a pincers . . . .").

Continuation of the Bankruptcy Cases threatens more than Mr. Kwok's Fifth Amendment rights. Rather, as set forth below, the Bankruptcy Cases threaten a host of harms to Mr. Kwok's other rights as a criminal defendant, including his rights to *Brady* material and to his attorney-client privilege. Accordingly, the Bankruptcy Cases should be stayed. *See*, *e.g.*, *In re Marceca*, 131 B.R. at 778 (staying bankruptcy proceeding during pre-indictment criminal investigation, with instruction to further consider duration of stay should debtor be indicted).

**(i)      The Contempt Order Threatens Mr. Kwok's Fifth Amendment Rights**

*First*, the risk posed by compliance with the Contempt Order is particularly significant because the act of production doctrine applies to any production made by Mr. Kwok. Through producing any documents to the Trustee, Mr. Kwok faces the risk that such production will implicitly authenticate the documents produced, and such production could be "a link in the chain of evidence" used to prosecute him, including in this criminal action. *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951); *see also In re Schick*, 215 B.R. 4, 9 (Bankr. S.D.N.Y. 1997). This risk is amplified given that the Bankruptcy Court has already taken the position that any production by Mr. Kwok will constitute a "tacit averment" of the authenticity of materials. (Kamaraju Decl. 2 p. 16.) Of course, "it is now settled that an individual may claim an act of production privilege [under the Fifth Amendment] to decline to produce documents, the contents of which are not privileged, where the act of production is, itself, (1) compelled, (2) testimonial, and (3) incriminating." *In re Three Grand Jury Subpoenas Duces Tecum Dated Jan. 29, 1999*, 191 F.3d 173, 178 (2d Cir. 1999).

18

The Bankruptcy Court erroneously held that the required records exception overcame Mr. Kwok's Fifth Amendment rights. The provisions of the bankruptcy code purporting to provide the Trustee with authority to seek potentially incriminatory information from Mr. Kwok, 11 USC §§ 521(a)(3) and 521(a)(4), require individuals to cooperate with bankruptcy trustees, and to surrender to the trustee all property of the estate. The Second Circuit, however, has made clear that the required records exception is circumscribed, and only applies where there is a "nexus between the . . . production request" and the existing record-keeping, which must be "required by statute or rule" and where, as a result, the "record-holder 'admits' little in the way of control or authentication" by producing the records at issue. *In re Two Grand Jury Subpoenas Duces Tecum Dated Aug. 21, 1985*, 793 F.2d 69, 73 (2d Cir. 1986).

In this case, as the Bankruptcy Court itself has found, production of the records called for by the Contempt Order would constitute a "tacit averment" by Mr. Kwok as to the authenticity of the records produced. (Kamaraju Decl. Ex. 2 at 16.) Moreover, the Second Circuit has made clear that the required records exception is a narrow exception that only applies to records that the producing party was under a statutory or regulatory duty to preserve, such as records required by FINCEN regulations, *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d 339, 348 (2d Cir. 2013); New York state tax laws related to the purchase of alcohol for commercial purposes, *In re Two Subpoenas to Testify Before Grand Jury Dated Dec. 1, 2016*, 252 F. Supp. 3d 170, 176-177 (E.D.N.Y. 2017); and rules governing an attorney's representation of a client, *In re Two Grand Jury Subpoenas Duces Tecum*, 793 F.2d at 73. Contrary to the Second Circuit's dictate, the Bankruptcy Court applied the exception to *all documents* concerning an individual debtor's financial affairs, at the same time the debtor is also facing criminal charges on related matters. The

19

Bankruptcy Court's misapplication of this narrow exception risks swallowing Mr. Kwok's Fifth Amendment rights.

Mr. Kwok previously sought a more limited stay of the discovery at issue in the Contempt Order to ameliorate these issues. (Kwok Bankruptcy Case Dkt. No. 1649.) The Bankruptcy Court declined to grant that request. (*Id.* Dkt. No. 1740.) As a result, Mr. Kwok is forced to turn to this Court to guard his Fifth Amendment rights through the instant motion.

**(ii)**      **The Mahwah Proceeding Threatens Mr. Kwok's *Brady* Rights**

*Second*, the Mahwah Proceeding and the related Settlement Agreement threaten Mr. Kwok's rights under *Brady*. As the Court is aware, the Mahwah Facility features heavily in the government's Indictment, which alleges that Mr. Kwok purchased the property through the use of multiple entities (Ind. ¶16(b)) for use by himself and his family (¶ 4), and that he inappropriately used proceeds of crime to pay for "extravagant renovations" to this same property (¶16(c).) The Indictment makes direct reference to the "various furniture and decorative items" at the Mahwah Facility. (*Id.*). The defense intends to prove that the Mahwah Facility was not—as the government alleges—a private home for Mr. Kwok and his family, but rather a covert headquarters for use by Mr. Kwok's fellow dissidents and members of the anti-Chinese Communist Party (the "CCP") movement and in furtherance of the business of GTV, which was founded to be a platform for anti-CCP activity. Thus, aspects of the Mahwah Facility that demonstrate its purpose for the movement are exculpatory.

Given that the current status of the property will bear directly on these issues, and the nature and use of the property could provide evidence that is material and favorable to the defense, defense counsel's access to, and general preservation of, the Mahwah Facility must be maintained. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. U.S.*, 405 U.S. 150, 154 (1972); *see also*

*United States v. Hamilton*, 730 F. Supp. 1272, 1276 (S.D.N.Y. 1990) ("compulsory process and due process rights are both implicated where actions of the government prevent a defendant from obtaining material and favorable evidence."). Absent this Court's intervention to preserve the Mahwah Facility and defense counsel's access to it, the "fundamental fairness essential to the very concept of justice" is put at risk. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872 (1982) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)).

In this case, while it is the Trustee who has filed the Mahwah Proceeding, the government is facilitating the Trustee's efforts to dispose of the Mahwah Facility. For one, the government already apparently aided the Trustee's obtaining of a temporary restraining order and preliminary injunction concerning the Mahwah Facility by providing the Trustee with law enforcement photographs (which presumably are subject to the Protective Order) that the Trustee then used as evidence. Moreover, the government, by entering into the Settlement Agreement, has further agreed to aid in the sale of the Mahwah Facility by, for example, executing any document necessary to consummate the sale, or splitting the proceeds in a manner that ensures payments of the Trustee's legal fees. (*See* Kamaraju Decl. Ex. 5, Settlement Agreement at 5, 7.) Indeed, the government's cooperation with the Trustee with respect to the Mahwah Facility is particularly curious, given that the government has included the Mahwah Facility in its forfeiture allegations, meaning that, in the event of a conviction and successful forfeiture proceeding, the government would itself be able to sell the Mahwah Facility and distribute those proceeds to the alleged victims. Thus, government cooperation is enabling the Trustee to do what the government could not do without a conviction, and to do so in a way that ensures that the Trustee's law firm will get paid before the purported victims in the criminal case and to their detriment. *Cf. United States v. Yalincak*, 853 F.3d 629, 635 (2d Cir. 2017) ("[a]mounts recovered by a bankruptcy trustee for the

benefit of the bankruptcy estate, and consumed in the administration of the estate or distributed to non-victim creditors, plainly are not "recovered … by the victim[s]" of a crime; only amounts actually distributed to the victim creditors fit that description").

Courts have frequently encountered this issue in the context of witness availability, and have routinely found that government action causing a material witness's unavailability is violative of a defendant's constitutional rights. *See, e.g.*, *Hamilton*, 730 F. Supp. at 1276 (dismissing indictment following deportation of material witness); *see also United States v. Leal-Del Carmen*, 697 F.3d 964, 975 (9th Cir. 2012) ("The government's wrongful deportation of a witness with exculpatory evidence, coupled with the district court's evidentiary errors, deprived Leal–Del Carmen of a fair trial and of his constitutional right to present a defense."); *United States v. Nebraska Beef, Ltd.*, 194 F. Supp. 2d 949, 960 (D. Neb. 2002) (dismissing indictment due to government's bad faith deportation of aliens with material testimony).

The government and the Trustee's joint conduct here with respect to the Mahwah Facility is analogous to these cases. The Court has already entered an order in this case directing the government to collect and produce exculpatory material to the defense "promptly." (Dkt. No. 29.) Rather than ensuring Mr. Kwok's prompt access to exculpatory material, however, the Trustee and the government are working together to place exculpatory evidence—the Mahwah Facility—beyond Mr. Kwok's reach. The Trustee and the government should not be permitted to do so. The Court should respectfully step in and protect Mr. Kwok's rights by staying the Bankruptcy Cases. *See*, *e.g.*, *United States v. Soriano*, 401 F.Supp.3d 396, 405 (E.D.N.Y. 2019) (dismissing indictment where agents intentionally destroyed evidence that was favorable to the defendant).

(iii)    **Erosion of Mr. Kwok's Attorney-Client Privilege**

*Third*, pursuant to the Privilege Order, Mr. Kwok's attorney-client and other privileges can now effectively be used as a sword against him, rather than the shield they were intended to be. As a result, the government will have access to information that it would not otherwise be able to view.  Through the Privilege Order, the Trustee now controls Mr. Kwok's privilege and can seek to waive it.   While that may be appropriate purely under bankruptcy law, the Trustee's control threatens Mr. Kwok's constitutional rights as a criminal defendant in *this* case because the Trustee is seeking to litigate the very conduct that the government alleges in this proceeding.  For example, in the Mahwah Proceeding, the Trustee's (misguided) theory is that Taurus (the Mahwah Facility's corporate owner), is Mr. Kwok's alter ego.   The Trustee's theory dovetails directly with the government's claim in the Indictment that the Mahwah Facility was bought on Mr. Kwok's behalf. (*Compare* Mahwah Proceeding Dkt. No. 1 ¶ 4 (alleging that, despite Taurus holding legal title, Mr. Kwok owned the Mahwah Facility and used it as his residence) *with* Indictment ¶ 4 (alleging that Mr. Kwok purchased the Mahwah Facility for himself and his family).)  Similarly, the Trustee has asserted claims with respect to a property in Greenwich, Connecticut (the "Greenwich Property") that the government claims was purchased by an entity that received proceeds of fraud.  (*Compare Despins v. Greenwich Land, LLC, et al.*, Adv. Proc. No. 23-05005 (JAM) (Bankr. D. Conn.) Dkt. No. 1 ¶ 3 (alleging that Greenwich Land, LLC, the owner of the Greenwich Property, is the alter ego of Mr. Kwok) *with* Government's Opposition to Mr. Kwok's Motion for Pretrial Release, Dkt. No. 26 at 5 (alleging that Greenwich Land, LLC purchased the Greenwich Property with proceeds of Mr. Kwok's alleged fraud).)

As a result, given the Privilege Order, the Trustee can now scour through Mr. Kwok's privileged communications for ammunition in his quest to prove Mr. Kwok's connection to these

properties, and then use them publicly to litigate its adversary proceedings, thus giving the government access to those same communications. Moreover, as was made clear both by the Trustee's threats during the settlement negotiations in the Bankruptcy Cases and in the Settlement Agreement, the Trustee has no qualms about reporting such information directly to law enforcement, including the prosecutor's office handling this matter, and there would be nothing to stop him from sharing Mr. Kwok's privileged communications with the government here once he is authorized to waive Mr. Kwok's privilege. Indeed, the Settlement Agreement acutely demonstrates that the Trustee is already cooperating with the government behind the scenes with respect to the Mahwah Facility.

The threat to Mr. Kwok's attorney client privilege is not limited to disclosure of documents. The Trustee has previously subpoenaed Mr. Kwok's attorneys, (*see* Kwok Bankruptcy Case Dkt. No. 839), and is now seeking additional subpoenas to other attorneys who are representing Mr. Kwok for testimony about the very allegations that are at issue in this proceeding, including Mr. Kwok's longtime attorney, Mr. Cerda (and his firm) who is heavily involved in Mr. Kwok's defense. Under the Privilege Order, these attorneys may be unable to assert Mr. Kwok's privilege in response to deposition questions about the transactions that are at issue in this proceeding. Yet given the overlap between the issues in this case and the bankruptcy proceeding, their responses to such questioning could reveal confidences that could be used against Mr. Kwok at his criminal trial. Indeed, that appears to be the Trustee's aim in questioning these attorneys, given that he is pursuing a theory that the corporate owners of the Mahwah Facility are alter egos of Mr. Kwok.

The Trustee has no reason to exercise Mr. Kwok's privilege in a manner that protects his rights in this case. To the contrary, the Trustee is incentivized to use privileged information that he believes shows Mr. Kwok's control over the Mahwah Facility. And given his previous threats

24

and representations, it is also clear that the Trustee has no compunction about approaching the government with information directly where he believes it serves his purpose. This Court can and should intervene to preserve Mr. Kwok's rights as a criminal defendant.

**(iv)     The Government Has Previously Sought a Similar Stay of a Parallel Proceeding**

The government will be hard-pressed to contest a stay of the Bankruptcy Cases given that the government also sought to stay a parallel proceeding brought by the SEC involving the same conduct, which is captioned *SEC v. Kwok*, No. 23 Civ. 2200 (PGG) (S.D.N.Y.).  (*See* Kamaraju Decl. Ex. 7 (government's motion to stay SEC proceeding).)   The factors set out in the government's submission there fully support the stay Mr. Kwok seeks here:

*First*, there can be no dispute about the overlap between the Bankruptcy Cases and this proceeding—both cases involve allegations that certain property and entities belong to, and are controlled by, Mr. Kwok.  That overlap is a "significant factor" supporting a stay.  (*Id.* at 4 (quoting *SEC v. Shkreli*, No. 15 Civ. 7175, 2006 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016)).)

*Second*, the status of the criminal case supports a stay, given that Mr. Kwok has been indicted.  As the government notes, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when a criminal investigation has ripened into an indictment."  (*See id*. (quoting *In re Par Pharm., Inc. Secs. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990)).)  Indeed, as the government further remarks, "[a] stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."  (*Id*. (quoting *Transworld*, 886 F. Supp. at 1139).)

*Third,* while Mr. Kwok does not dispute the importance of the Bankruptcy Cases and compensating creditors to the extent possible, the ultimate resolution of those claims ultimately comes down to issues of who gets paid what and when. Even if the Bankruptcy Cases were delayed pending the criminal trial in April 2024 and related appeals, the estate would not ultimately suffer any prejudice because the bankruptcy estate is under the Trustee's or government's control at this time. *Cf. Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (citation and quotation omitted) ("Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation."); *see also Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010) (Monetary loss is insufficient" to establish irreparable harm.) And, as addressed above, in the event of a criminal conviction, the government will, itself, be in a position to sell the Mahwah Facility and compensate any alleged victims, and to work with the Trustee to ensure that the estate will have access to whatever portion of the proceeds of a sale of the Mahwah Facility is appropriate.

*Fourth*, as the government recognized in its stay application and as set forth above, a stay of the Bankruptcy Cases is unquestionably in Mr. Kwok's interests, as it will prevent the Trustee's unwarranted incursions on Mr. Kwok's constitutional rights in this matter. *See supra* at 17-22. "When a defendant has been indicted, his situation is particularly dangerous, and takes a certain priority, for the risk of his liberty, the importance of safeguarding his constitutional rights, and even the strain on his resources and attention that makes defending satellite civil litigation particularly difficult, all weigh in favor of his interest." *Sterling Nat. Bank v A-1 Hotels Int'l Inc.*, 175 F. Supp. 2d 573, 577 (SDNY 2001).

*Fifth*, it is in the Court's interest to grant a stay of the Bankruptcy Cases to protect its jurisdiction over this matter. As the background of this motion demonstrates, there are substantial

and significant points of conflict between this proceeding and the Bankruptcy Cases, which require the Court's intervention to protect Mr. Kwok's rights. Those conflicts will not subside—the Trustee is litigating multiple adversary proceedings (and may file more) that will continue to invade Mr. Kwok's rights. Unless the Bankruptcy Cases are stayed, they will continually interfere with this Court's administration of a significant criminal case and Mr. Kwok's right to a proper defense.

*Sixth*, staying the Bankruptcy Cases will "serve the public interest by ensuring that [the criminal case] proceeds fairly against [Mr. Kwok] by not forcing him to either effectively waive his Fifth Amendment protection in the [criminal matter] or face an adverse inference herein that undermines [his] ability to defend this matter." *SEC v. Millan*, 20 Civ. 06575 (CM), 2020 WL 5898769, at \*4 (S.D.N.Y. Oct. 5, 2020). Moreover, the government has already taken the position that the public is served by preventing criminal discovery from being disclosed in a parallel civil proceeding. (*See* Kamaraju Decl. Ex. 7 at 5.) The Trustee is explicitly seeking—with the blessing of the Bankruptcy Court—the discovery produced by the government in this case, presumably with the intention of using it in the Bankruptcy Cases. Indeed, given that the government has apparently already produced information to the Trustee (*e.g.*, the photographs from the FBI's search of the Mahwah Facility), and in light of the ongoing adversary proceedings, it is possible that additional discovery from this case will be revealed to have been produced by the government to the Trustee.

It is strange, frankly, that the government sought to stay the SEC action but has not only declined to seek to stay the Bankruptcy Cases that present the same concerns, but rather, is helping the Bankruptcy Cases along. Thus, it appears that the government will not act to protect Mr. Kwok's constitutional rights during the Bankruptcy Cases, even though the government explicitly

predicated its request to stay the SEC proceedings on, among other things, the threatened harm to Mr. Kwok's Fifth Amendment rights. (*See id.* at 4.) Nor does the Bankruptcy Court appear inclined to protect Mr. Kwok's constitutional rights, given that that court has now declined to stay either the 2022 Rule 2004 Motion or its Contempt Order—in the face of Mr. Kwok's invocation of his constitutional rights—and has pressed on with discovery of Mr. Kwok's attorneys and the disposition of the Mahwah Facility.

Bankruptcy proceedings cannot come at the expense of Mr. Kwok's constitutional right to mount an effective defense to what the government alleges is a billion dollar fraud scheme. To date, the Trustee has demonstrated that, in pursuing the Bankruptcy Cases, he has no qualms about trampling Mr. Kwok's rights in this matter, and the Bankruptcy Court has declined to check the Trustee in his pursuit. Further, the government has demonstrated a willingness to support the Trustee's adversarial actions against Mr. Kwok. As a result, Mr. Kwok is left with no choice but to ask this Court to intervene and protect both Mr. Kwok's rights and the integrity of this proceeding.

### B. In the Alternative, the Court Should Enter an Order that Minimizes the Harm to Mr. Kwok's Rights

If the Court is not inclined to stay the Bankruptcy Cases, then Mr. Kwok respectfully requests in the alternative that, in order to minimize the looming threats to key elements of Mr. Kwok's criminal defense, the Court enter the following relief:

*First*, the Court should grant Mr. Kwok's motion for a modification of the Protective Order to produce discovery in this case to the Trustee (which relief Mr. Kwok understands the government opposes), so that Mr. Kwok avoids any sanction for asserting his Fifth Amendment rights in the Bankruptcy Cases. To be clear, Mr. Kwok seeks such relief only on pain of being sanctioned as a result of the Contempt Order, and continues to believe that he should not be

required to turn over documents produced by the government in this case to the Trustee. Mr. Kwok recognizes that the legal standard for his request to modify the Protective Order is that there is good cause to request that modification. The undersigned cannot, consistent with their ethical obligations as officers of the Court, represent that they believe that there is good cause for the modification, because we believe that the Contempt Order was wrongly decided and Mr. Kwok has appealed it. The Trustee and Bankruptcy Court, however, appear to believe that such good cause exists. Accordingly, so that the Court can consider those arguments, Mr. Kwok has attached the Contempt Order to the accompanying Declaration of Sidhardha Kamaraju as Exhibit 2, as well as the Trustee's brief in support of his 2022 Rule 2004 Motion as Exhibit 3.

*Second*, to ensure that Mr. Kwok has appropriate access to *Brady* material, Mr. Kwok requests that, in the alternative to a stay of the Bankruptcy Cases, the Court enter an order preserving the status quo of the Mahwah Facility and its contents, and guaranteeing access to the property by Mr. Kwok's legal team (without chaperoning by the Trustee) so as to preserve and review any evidence contained therein, which includes maintaining all personal property contained in the Mahwah Facility as-is, and expressly disallowing the Trustee from moving, altering, or modifying the Mahwah Facility or its contents in any way whatsoever. We understand that the Trustee has already removed chattels from another property alleged in the Indictment to be a crime scene, the Sherry Netherland Residence. Mr. Kwok's access to that property has been limited to an isolated visit chaperoned by agents of the same Trustee who is, according to his own words, feeding information to the government.

*Third*, to prevent the continued flow of privileged information from the Trustee to the government, Mr. Kwok respectfully requests that, in the alternative to staying the Bankruptcy Cases, this Court issue an order preventing further communication, coordination, or other similar

action between the government and the Trustee, and requiring the government to identify all such information already provided to it by the Trustee. As it stands, the Trustee possesses vast amounts of communications, including attorney-client communications, over which the Trustee asserts he has exclusive control. The Trustee's view seemingly is that he can also waive Mr. Kwok's privilege ███████████████████████████████████████████████. That fact, coupled with the Trustee's repeated statements that he has provided information to the government and advised the government on the results of his investigations, vitiates Mr. Kwok's Fifth Amendment rights and upends criminal procedure.

## CONCLUSION

For the foregoing reasons, Mr. Kwok respectfully requests that the Court stay the Bankruptcy Cases, or, in the alternative, (i) modify the Protective Order to allow production of the discovery in this case to the Trustee; (ii) direct that Mr. Kwok's defense team continue to be permitted access to the Mahwah Facility through the pendency of this case and any resulting appeals; (iii) preclude the government from facilitating the sale of the Mahwah Facility in the Bankruptcy Cases through the pendency of this case and any resulting appeals; (iv) order that the government not solicit or receive from the Trustee any information or records that are subject to any privileges belonging to Mr. Kwok and identify any such materials already provided by the Trustee; and (v) grant Mr. Kwok such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 30, 2023

                       PRYOR CASHMAN LLP

                       By: _____
                            Sidhardha Kamaraju
                            Matthew S. Barkan
                            Daniel J. Pohlman
                            Clare P. Tilton

                            7 Times Square
                            New York, NY 10036
                            (212) 421-4100
                            skamaraju@pryorcashman.com
                            mbarkan@pryorcashman.com
                            dpohlman@pryorcashman.com
                            ctilton@pryorcashman.com

                            *Attorneys for Defendant Ho Wan Kwok*