```
            UNITED STATES BANKRUPTCY COURT
                DISTRICT OF CONNECTICUT
                  BRIDGEPORT DIVISION

In Re                        *    Case No. 22-50073 (JAM)
                             *
HO WAN KWOK and GENEVER      *
 HOLDINGS CORPORATION,       *
                             *
              Debtor.        *

LUC A. DESPINS,              *    Adv. Proc. No. 23-05017
                             *
                             *    Bridgeport, Connecticut
              Plaintiff,     *    August 22, 2023
                             *
      v.                     *
                             *
TAURUS FUND, LLC, et al.,    *
                             *
              Defendants.    *
                             *
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

            TRANSCRIPT OF ORDER TO SHOW CAUSE
              WHY HUDSON DIAMOND HOLDING LLC
          SHOULD NOT BE HELD IN CONTEMPT OF COURT
           BEFORE THE HONORABLE JULIE A. MANNING
               UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:


Chapter 11 Trustee:            LUC A. DESPINS, ESQ.
                               Paul Hastings LLP
                               200 Park Avenue
                               New York, NY  10166

For the Chapter 11 Trustee:    AVRAM EMMANUEL LUFT, ESQ.
                               LUYI SONG, ESQ.
                               Paul Hastings LLP
                               200 Park Avenue
                               New York, NY  10166

                               PATRICK R. LINSEY, ESQ.
                               Neubert Pepe and Monteith
                               195 Church Street,13th Floor
                               New Haven, CT  06510


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

APPEARANCES:

| | |
|---|---|
| For U.S. Trustee: | HOLLEY L. CLAIBORN, ESQ.<br>Office of U.S. Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 |
| For the Plaintiff,<br> HK International Funds and<br>Mei Guo: | LEE VARTAN, ESQ.<br>MELISSA F. WERNICK, ESQ.<br>Chiesa Shahinian &<br> Giantomasi, PC<br>105 Eisenhauer Pkwy<br>Roseland, NJ  07068 |
| | AARON A. ROMNEY, ESQ.<br>Zeisler & Zeisler, P.C.<br>10 Middle Street, 15th FL<br>Bridgeport, CT  06604 |
| For Ms. Guo, individually:<br>(Criminal defense atty) | STANLEY A. TWARDY, JR., ESQ.<br>Day Pitney<br>One Stamford Plaza<br>263 Tresser Blvd.<br>Stamford, CT  06901 |

1          (Proceedings commenced at 2:01 p.m.)

2                THE COURTROOM DEPUTY:  22-50073, Ho Wan Kwok and

3    Genever Holding, LLC.

4                THE COURT:  Good afternoon.  If we could have

5    appearances for the record, starting with the Chapter 11

6    Trustee, please.

7                MR. DESPINS:  Good afternoon, Your Honor.  Luc

8    Despins, Chapter 11 Trustee.

9                MR. LUFT:  Good afternoon, Your Honor.  Avi Luft

10   of Paul Hastings in behalf of the Chapter 11 Trustee.

11               MR. LINSEY:  Good afternoon, Your Honor.  Patrick

12   Linsey of Neubert, Pepe & Monteith, Connecticut counsel for

13   the trustee.

14               MS. SONG:  Good afternoon, Your Honor.  Luyi Song

15   from Paul Hastings on behalf of the trustee.

16               MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

17   Claiborn for the U.S. Trustee.

18               MR. VARTAN:  Good afternoon, Your Honor.  Lee

19   Vartan on behalf of Hudson Diamond Holding, LLC.

20               MR. ROMNEY:  Good afternoon, Your Honor.  Aaron

21   Romney, Zeisler & Zeisler, on behalf of Hudson Diamond

22   Holdings, LLC.

23               MS. WERNICK:  And good afternoon, Your Honor.

24   Melissa Wernick of CSG Law on behalf of Hudson Diamond

25   Holding, LLC as well.

1          THE COURT:  Good afternoon.  Are there any other

2     appearances we need to take for the record?

3          MR. TWARDY:  Your Honor, if I might?  My name is

4     Stanley A. Twardy, Jr. with the law firm of Day Pitney.  I'm

5     here representing Ms. Guo in her individual capacity.  I'm

6     her criminal defense lawyer.

7          THE COURT:  Good afternoon.

8          MR. TWARDY:  Good afternoon, Your Honor.

9          THE COURTROOM DEPUTY:  I'm sorry.  I didn't hear

10    your last name.

11         MR. TWARDY:  If I might approach, I'll give you my

12    card.  Would that be helpful?

13         THE COURT:  That'd be helpful, Attorney Twardy.

14    Thank you.

15         All right.  The matter on the calendar today is an

16    order to show -- to appear and show cause why Hudson Diamond

17    Holdings, LLC should not be held in contempt and requiring

18    Ms. Guo to appear and testify.  The order to show cause did

19    provide the opportunity for Ms. Guo to file a -- an

20    affidavit, which she did.  Or she filed a declaration,

21    actually, in response to the order to appear and show cause.

22    And I appreciate that that affidavit was filed, that

23    declaration was filed, because that -- that's complying with

24    the Court's order.

25         But now we need to move on to the actual

1  testimony, which I assume is going forward.  Is that

2  correct, Trustee Despins and -- I don't know, Attorney

3  Vartan or Attorney -- who is going to be appearing on behalf

4  of Hudson Diamond Holding, LLC?  Because Ms. Guo is only

5  testifying in her capacity as the member of Hudson Diamond

6  Holding, LLC.

7         MS. WERNICK:  Your Honor, Mr. Vartan and myself,

8  we filed motion earlier today for pro hac vice admission on

9  behalf of the Hudson Diamond Holding, LLC.  But with Your

10  Honor's permission, you know, happy to proceed in presenting

11  for the entity.

12         THE COURT:  That's fine.  And I know you're

13  admitted pro hac in the adversary proceeding, so I'm sure if

14  the paperwork is all in order, it will be fine.

15         MS. WERNICK:  Okay.  Correct.  Thank you, Your

16  Honor.

17         THE COURT:  Okay.  Thank you.  So then,

18  Ms. Wernick, you're -- you may proceed.  I think it's your

19  burden at this point to put your -- the -- Ms. Guo on as the

20  representative of Hudson Diamond Holding, LLC.  Or did you

21  all have a discussion where you're just going to start

22  cross-examination?  I don't know how you're going to

23  proceed.

24         MS. WERNICK:  So it was our intent to submit her

25  declaration as her affirmative testimony.

1           THE COURT:  Okay.  So then it's the Chapter 11

2     Trustee.  Are you calling witness to cross-examine the

3     witness?

4           MR. LUFT:  Yes.  If they're done with their

5     presentation, then I'll move to cross-examine the witness.

6           THE COURT:  Ms. Wernick, are you done?

7           MS. WERNICK:  Yeah.  We would so move.  Yes.

8     Thank you.

9           THE COURT:  Yes.  Okay.

10          MR. LUFT:  And to be clear, Your Honor, I assume

11    they're done with their presentation, that we're not

12    changing the order, that there's no evidence they're putting

13    on.

14          MS. WERNICK:  Yeah.  Subject to our right to

15    rebut.  This is our affirmative presentation.

16          THE COURT:  Okay.  Thank you.

17          Go right ahead, Mr. Luft.

18          MR. LUFT:  Your Honor, well, can we call the

19    witness up to the stand to be sworn in?

20          THE COURT:  Yes.

21          MR. TWARDY:  Your Honor, if I might?

22          Yeah.  I think you might go over there.

23          THE COURT:  We just need to be by the microphone,

24    Attorney Twardy.

25          MR. TWARDY:  Yeah.

1            THE COURT:  I'm sorry.  We --

2            MR. TWARDY:  No.  I just wanted to know where you

3    wanted me, Your Honor.

4            THE COURT:  Yeah.  Because we -- the -- our record

5    is kept by audio only.  So if we don't pick up your voice on

6    a microphone, we won't be able to record anything you say.

7    Okay?

8            MR. TWARDY:  Thank you, Your Honor.

9            THE COURT:  Thank you.

10                    (Counsel confer)

11            THE COURT:  All right.  The courtroom deputy is

12   going to swear in the interpreter first and then the

13   witness.  Okay?

14            THE INTERPRETER:  Thank you, Your Honor.

15            THE COURT:  All right.  Thank you.

16            THE COURTROOM DEPUTY:  Please raise your right

17   hand.

18                    (The interpreter is sworn)

19            THE COURT:  Do you need a chair, or are you okay

20   standing?

21            THE INTERPRETER:  I'm good, Your Honor.

22            THE COURT:  Okay.

23            THE INTERPRETER:  Thank you.

24            THE COURTROOM DEPUTY:  If the witness may raise

25   her right hand?

1          MEI GUO, WITNESS, SWORN

2          THE COURT:  She can be seated.  Thank you.

3          THE WITNESS:  (Via the interpreter throughout).

4     Okay, Your Honor.

5          MR. DESPINS:  Your Honor, can we ask the

6     interpreter to use the interpreter, because our colleague

7     may not -- cannot hear her.

8          THE COURT:  Okay.  Yeah.  And that's not your --

9     it -- unfortunately, our court only has audio.  So we have

10    to talk into the microphones as best as possible.

11    Otherwise, if there's a transcript of this hearing that is

12    requested, it won't pick up what people say.  And the

13    transcriber isn't even a person that's in the courtroom.  So

14    we have to be very particular.

15          So if I stop you at any point, it's only because

16    I'm trying to make the record as clear as possible.  And

17    other people too.  I mean, you may say I didn't hear, right?

18    So don't hesitate to say that.  Okay?

19          THE INTERPRETER:  Thank you, Your Honor.

20          THE COURT:  Because we want to make sure the

21    record is accurate.

22          THE INTERPRETER:  Thanks.  Thanks for

23    clarification.

24          THE COURT:  Thank you.

25          Okay, Attorney Luft.  You may proceed with

1    cross-examination.

2           MR. LUFT:  Thank you, Your Honor.

3                  CROSS-EXAMINATION

4    BY MR. LUFT:

5    Q    Good afternoon, Ms. Guo.  How are you?

6    A    (Via interpreter throughout)  I'm very good.  Thank

7    you.

8    Q    Ms. Guo, you're the sole member of Hudson Diamond

9    Holdings, LLC, right?

10   A    Yes.

11   Q    And you've received the subpoena that the trustee

12   issued in its Rule 2004 investigation to Hudson Diamond

13   Holdings, LLC?

14          THE INTERPRETER:  Can I have the date again?

15   2004?

16          MR. LUFT:  It's Rule 2004.  It's not a date.

17          THE INTERPRETER:  Oh, Rule 2004.  Okay.

18          THE WITNESS:  My attorney receive it.

19   BY MR. LUFT:

20   Q    And he's provided it to you?

21   A    Yes.

22   Q    And you've reviewed it?

23   A    I did.

24   Q    And you understood it?

25   A    I understood.

1    Q    When did he provide it to you?

2    A    I couldn't recall.

3    Q    Try your best.  What's your best recollection of when

4    you received it?

5    A    A couple of months back.

6    Q    So does May of 2023 sound right?

7    A    I really cannot specifically remember.

8    Q    And did you read all the requests in the subpoena?

9    A    I did.

10    Q    And if there was anything that was unclear in the

11    subpoena, did you ask your counsel for clarification?

12    A    I did.

13    Q    And are you the sole person at Hudson Diamond Holdings

14    who responded to the subpoena other than your counsel?

15    A    Correct.

16    Q    Okay.  What is the business of Hudson Diamond Holdings?

17         MR. TWARDY:  Your Honor, I would object and

18    instruct my client not to answer.  It goes beyond the scope

19    of the declaration.

20         THE COURT:  Hold on.  Oh, I'm sorry.

21         MR. TWARDY:  I'm sorry.

22         THE COURT:  No, no.  That's all right.

23         Madam Interpreter, just give me one second.  Okay?

24         THE INTERPRETER:  Sure.

25         THE COURT:  But you're right.  You do need to say

1    so Ms. Guo understands what her counsel just said.

2                    THE INTERPRETER:  Yes, ma'am.

3                    THE COURT:  Okay?  So go right ahead.

4                    THE INTERPRETER:  Thank you.

5                    THE COURT:  Okay.  So the objection is that it

6    goes beyond the scope of the --

7                    MR. TWARDY:  Declaration.

8                    THE COURT:  -- of the declaration?

9                    MR. TWARDY:  Declaration.

10                   THE COURT:  But the declaration -- she's making

11   the declaration as a -- not in her individual capacity but

12   in her capacity as the member of Hudson Diamond Holdings,

13   LLC.  And that's what the order to show cause required.

14   She's not testifying in her individual capacity at all.

15                   MR. TWARDY:  Your Honor, if I might?

16                   THE COURT:  Yes.

17                   MR. TWARDY:  Your order dated July 28th states at

18   the last two sentences: "During the continued hearing,

19   Hudson Diamond Holding may seek to submit Ms. Guo's

20   declaration as her direct testimony.  Nevertheless, she must

21   appear at the continued hearing and be available for

22   cross-examination."

23                   My point is that the question that's being asked

24   is beyond the scope of the declaration, which is what it

25   was -- put in direct testimony.

1    MR. LUFT:  Your Honor, may I respond?

2    THE COURT:  Yes, you may.

3    MR. LUFT:  This is ludicrous.  I asked her what

4    the business of the company is.  Now, that is not any fair

5    reading.  They are here for contempt.  They were ordered to

6    produce Ms. Guo for testimony today.  Under the attorney's

7    logic, he could have written one sentence that said my name

8    is Ms. Guo and then turned around and said, well, that's --

9    anything else is beyond the scope of the testimony.

10    Your Honor, the scope of this hearing is about

11    their compliance with the subpoenas and whether they are in

12    contempt.  That's the scope of this hearing.  And any

13    argument to say that I can't ask anything other than what

14    they hand selected to put on a piece of paper is silly.  And

15    even then, I would think the fact that she says she's the

16    sole member of Hudson Diamond is well within the scope to

17    just ask what the business is.

18    But I do intend to ask her about the company.  I

19    intend to ask her about what it purports -- what documents

20    it has.  I mean, that's what we're here for.  So I don't

21    think it's -- I don't want to have any false pretense that

22    I'm going to literally only ask about the exact words she

23    put on the piece of paper.  That's not the scope of

24    cross-examination.

25    MR. TWARDY:  Your Honor, with all due respect, I

1    disagree.  If Ms. Guo had just simply said I'm Ms. Guo and

2    that was all that the defendant had put in, then they would

3    not have met the burden of your order, you know, to show

4    cause why contempt should not have been ordered.

5         THE COURT:  Okay.  I am overruling your objection.

6    This hearing is with regard to the Rule 2004 subpoena that

7    was issued months ago which was issued to Hudson Diamond

8    Holdings, LLC and for which Ms. Guo says she is -- and the

9    documents attached to the declarations establish, and

10   there's been no controversy raised in any pleadings, that

11   she is the managing member of Hudson Diamond Holding, LLC.

12        The entire subpoena is directed to the production

13   of documents and other communications of Hudson Diamond

14   Holdings, LLC, which is a broad scope subpoena as Rule 2004

15   of the bankruptcy rules allow.  This is part of an

16   investigation into the trustee's efforts to determine what

17   assets might be available in the bankruptcy estates to

18   satisfy the creditors of the three bankruptcy estates that

19   have been jointly consolidated -- administered, not

20   consolidated, excuse me -- administered under the Chapter 11

21   case of Mr. Ho Wan Kwok.  And Hudson Diamond Holdings, LLC

22   is a recipient of that subpoena.  There's been, again, no

23   controversy over that.  It's been admitted, quite frankly,

24   in pleadings.

25        And so your objection is overruled but noted for

1    the record.

2              MR. TWARDY:  Your Honor, thank you.  I respect

3    your ruling.  As you know, I'm not counsel for Hudson

4    Holding.  I'm here as her criminal counsel.  Her father has

5    been indicated.  She has been told that her -- through the

6    U.S. Attorney's Office in the Southern District of New York,

7    we learned that she's a subject of that same investigation.

8    And as such, I'm going to instruct her not -- to invoke the

9    fifth amendment and not answer the question.

10             THE COURT:  Okay.  I understand, counsel.  Thank

11   you.

12             MR. LUFT:  Okay.  I'll ask the same question.  If

13   she wants to invoke her fifth, she can.

14             THE COURT:  Well, Mr. Twardy, how do you want -- I

15   mean, he's going to have to create his record, regardless.

16   So I think she's going to -- if she's going to assert her

17   right against self-incrimination, I think she's going to

18   have to do it for every question he asks.  Because he's

19   going to -- he has the right to establish that record.

20             MR. TWARDY:  Understood, Your Honor.  And that's

21   fine.  But I --

22             THE COURT:  Okay.

23             MR. TWARDY:   -- am going to instruct her --

24             THE COURT:  I understand.

25             MR. TWARDY:  Thank you.

1          THE COURT:  I understand.  So I don't know if your

2     client understands that yet, though.  So the interpreter --

3     you'll -- if you could explain -- if you could please state

4     for the record what Mr. Twardy just stated.

5          THE INTERPRETER:  Your Honor, I already did a

6     simultaneous interpretation to her --

7          THE COURT:  Okay.

8          THE INTERPRETER:  -- just now during the

9     conversation.  Probably we can ask a question whether she

10    understood what has transpired.

11         THE COURT:  Okay.  So what Attorney Twardy is

12    saying is that -- well, I think you're going to say -- and

13    I'm going to ask you, unfortunately, again, because our

14    record is audio, that if a question is asked and you're

15    asking -- and you're instructing your client to assert her

16    right against fifth amendment -- her fifth amendment

17    privilege, then just if you would note that, and then the

18    interpreter can tell her that, and then she can respond.

19    Okay?

20         THE WITNESS:  So yes, Your Honor, but do I need

21    answer anything?

22         MR. TWARDY:  Yes.  If I might?  Yes, she should

23    answer.  She should say I invoke my fifth amendment right.

24         THE WITNESS:  Thank you.  I invoke my fifth

25    amendment right.

1      THE COURT:  Okay.  Thank you.

2      Go ahead, Attorney Luft.

3      MR. LUFT:  Okay.  Should I ask that question again

4   or has she invoked it --

5      THE COURT:  I think that question's been asked and

6   answered, so I think you can move --

7      MR. LUFT:  Okay.

8      THE COURT:  -- on to the next question.

9      MR. LUFT:  And move on to the next one.  Okay.

10  BY MR. LUFT:

11  Q    What are the assets of Hudson Diamond Holdings?

12     THE COURT:  Oh, go ahead.  I'm sorry.  We'll have

13  the interpreter interpret the question, and then we'll take

14  the answer.

15     MR. TWARDY:  I would instruct my client to invoke

16  her fifth amendment right.

17     THE WITNESS:  I will invoke my fifth amendment

18  right.

19     THE COURT:  Thank you.

20     MR. LUFT:  Your Honor, if I may?  I'd like to mark

21  and introduce into evidence a copy of the subpoena we served

22  to Hudson Diamond Holdings, LLC.  It has previously been

23  marked in this case as Docket Number 1116-2 Exhibit C-37.

24  And I'd -- if I could hand a copy to the witness.

25     THE COURT:  Well, make sure client --

1          MR. LUFT:  I will.

2          THE COURT:  -- counsel has no opposition to the

3    introduction of the subpoena.  I'm not sure why you would

4    have any opposition, quite frankly, but in any event --

5          MR. LUFT:  We have copies.  They're welcome to

6    look at --

7          MS. WERNICK:  Yeah.  No objection, Your Honor.

8          THE COURT:  Okay.  Thank you.  Okay.  Then I think

9    we'll mark that exhibit as -- because it's part of the

10   record for today's hearing.  So how do you want to mark

11   that.  Trustee's 1?

12         MR. LUFT:  Trustee 1 is fine, Your Honor.

13         THE COURT:  Okay.  Trustee's 1.  We'll mark that

14   exhibit as a full exhibit.

15              (Trustee's Exhibit 1 admitted)

16         MR. LUFT:  Okay.  Your Honor, if I may hand this

17   to the witness?

18         THE COURT:  You may.  And I don't have it in front

19   of me, but it looks like it has an exhibit cover from --

20   that doesn't say Trustee's 1 on it right now.  But that is

21   Exhibit Trustee's 1.  Okay?  All right.  Thank you.

22         THE WITNESS:  Okay.

23   BY MR. LUFT:

24   Q    Ms. Guo, feel free to take a minute to familiarize

25   yourself with the document.

1    A    Yes, I'm done.

2    Q    Ms. Guo, is this a copy of the subpoena that you told

3    me you reviewed earlier to Hudson Diamond Holdings?

4    A    I cannot clearly remember, but I believe it is.

5    Q    Okay.  Have you ever seen any other subpoena to Hudson

6    Diamond Holdings?

7    A    I don't remember.

8    Q    Okay.  I'll represent to you that this is a true and

9    accurate copy of the subpoena that was served on Hudson

10   Diamond Holdings.  Okay?

11   A    Thank you.

12   Q    Ms. Guo, if you could turn to page 7 under the category

13   Definitions.  Do you see the first definitions of the word

14   "you, your, and yourself"?  And it says, "Means and refers

15   to Hudson Diamond Holdings, Inc. together with all its

16   affiliates, divisions," and then goes on?

17            MR. TWARDY:  Your Honor, if I might?  I believe

18   that counsel referred to Hudson Diamond Holding, Inc. as

19   opposed to LLC, but I heard the translator refer to LLC.  I

20   just want to make sure we had the right entity that was

21   being referred to.

22            MR. LUFT:  If I said Inc., I misspoke, Your Honor.

23            THE COURT:  Okay.  So you were referring to LLC?

24            MR. LUFT:  LLC.

25            THE COURT:  Okay.  Thank you.

1    MR. LUFT:  I will not refer to Inc. today on

2    purpose.

3          THE COURT:  Okay.

4          THE WITNESS:  Okay.

5    BY MR. LUFT:

6    Q    So my question was, do you see that definition?

7    A    Yes, I see it.

8    Q    And you read that when you reviewed the subpoena,

9    correct?

10   A    Yes.

11   Q    Okay.  If I could ask you to turn to page 15.  Do you

12   see request 14 required Hudson Diamond Holdings to produce

13   documents sufficient to show all its assets and sources of

14   income or funding?

15   A    I see it.

16   Q    And you understood that was your obligation to produce

17   documents responsive to that request, correct?

18   A    Correct.

19          MR. TWARDY:  Your Honor, just if I might, when you

20   said your counsel, you meant Hudson Diamond Holdings, not

21   her personal --

22          MR. LUFT:  Your Honor, I'm lost at this point.

23          MR. TWARDY:  Just the question that was asked

24   referred to her as opposed to --

25          MR. LUFT:  Your Honor --

1          MR. TWARDY:  -- as opposed to the company.

2          MR. LUFT:  She's here in her corporate capacity.

3    She's the sole member of the entity.  I don't understand

4    this -- and she was ordered personally to appear on behalf

5    of Hudson Diamond Holdings.  I don't understand the -- does

6    he want me to refer to her as Hudson Diamond Holdings?

7          MR. TWARDY:  Yes, please.

8          MR. LUFT:  I mean, this is insane, Your Honor.

9          THE COURT:  Well, I think we'll -- let's just --

10          MR. LUFT:  A person is the sole member.

11          THE COURT:  Let's just proceed, and we'll -- we

12    will clarify for the record.  You should try -- and I'm sure

13    that you may not do it every time, but try to refer to

14    Hudson Diamond Holdings, LLC.

15          I understand, Attorney Twardy, your concern.  But

16    Attorney Luft did ask the question about the definition

17    before he asked the -- the more specific question about

18    documents that were to be produced.  And the -- I don't have

19    the definition right in front of me, but I heard the

20    question and I heard what Attorney Luft said the definition

21    of you, yours, and yourself is, and it referred to Hudson

22    Diamond Holdings, LLC, and its affiliates or related

23    affiliates.  I don't know if the word "related" was in

24    there.

25          MR. LUFT:  Nope.  It just says its affiliates,

1    divisions, agencies, instrumentalities, departments,

2    officers, partners, officers again -- that's a typo --

3    directors, agents, attorneys, representatives, employees, or

4    anyone acting on its behalf is the definition.

5              THE COURT:  So I -- while I understand and

6    appreciate your concern, I do think that he has established

7    through testimony that any question he's asking is in the --

8    is Ms. Guo in her corporate capacity as the managing member.

9    And that's certainly the way the Court is viewing it.  I

10   don't know if that's helpful to you.

11             MR. TWARDY:  Your Honor, it is.  I was just about

12   to say I'm not trying to be difficult.  I just need to

13   protect Ms. Guo's --

14             THE COURT:  I understand.

15             MR. TWARDY:  -- individual rights.  So as long as

16   we all understand that if Mr. Luft uses the word "your,"

17   it's referring to the definition of your that's contained in

18   the subpoena, with that --

19             THE COURT:  That's correct.

20             MR. TWARDY:  -- then I will not have to --

21             THE COURT:  That's correct.

22             MR. TWARDY:  -- be jumping up and down.

23             THE COURT:  And I believe that's why he asked the

24   question about the definition on page 7.  I don't know

25   that --

1          MR. TWARDY:  Yeah.

2          THE COURT:  -- but I -- I'm making a presumption

3    based upon the fact that when this matter came before the

4    Court with regard to the production, it was always addressed

5    to the LLC.  And, obviously, the LLC can only operate

6    through its managing member or people that are authorized

7    to.

8          So in any event, I understand your point, and I

9    think we've clarified that for the record.  And we can

10   continue.

11         MR. TWARDY:  Thank you, Your Honor.

12         THE COURT:  Thank you.

13         MR. LUFT:  Okay.

14   BY MR. LUFT:

15   Q   Ms. Guo, if you look at number -- request 15, you

16   understood you had to produce all documents showing all

17   assets that would -- identified in number 14 having a value

18   of more than $50,000 and documents related to your

19   acquisition of such assets and communications with the

20   debtor and the debtor's family regarding such assets,

21   correct?

22   A   I see it.

23   Q   And you understood from number 16 that you were

24   required to produce copies of your tax returns, correct?

25   A   Yes, I see it.

1    Q    And you understood you were supposed to produce copies

2    of the tax returns that would be applicable to Hudson

3    Diamond Holdings, LLC, correct?

4    A    I do.

5    Q    Okay.  And from 17, you understood you're supposed to

6    produce documents sufficient to show all bank accounts and

7    investment accounts within Hudson Diamond Holdings'

8    possession or control, including the balance and transfers

9    to and from each such account, correct?

10   A    I see it.

11   Q    And you understood you were supposed to produce those

12   documents, correct?

13   A    Yes.

14   Q    And you understood already that for all these requests,

15   any request to Hudson Diamond Holdings included any

16   affiliates of Hudson Diamond Holdings, correct?

17   A    I understand.

18   Q    Okay.  Ms. Guo, you did not produce a single document

19   responsive to any of the requests I just mentioned, correct?

20   A    Correct.

21   Q    And with regard to the 21 requests total, you only

22   produced two documents, correct?

23   A    Correct.

24   Q    Okay.  Ms. Guo, why was Hudson Diamond Holdings

25   created?

1      MR. TWARDY:  I'm going to instruct my client to

2  invoke her fifth amendment right.

3      THE WITNESS:  I invoke my fifth amendment right.

4  BY MR. LUFT:

5  Q    Ms. Guo, how did you become the sole member of Hudson

6  Diamond Holdings?

7      MR. TWARDY:  I am going to instruct my client to

8  invoke her fifth amendment right.

9  BY MR. LUFT:

10  Q    Your father, the debtor --

11  A    I will invoke my fifth amendment right.

12  Q    Okay.  Sorry.

13      THE INTERPRETER:  Thank you, sir.

14  BY MR. LUFT:

15  Q    Your father, the debtor, installed you as the nominal

16  named sole member of Hudson Diamond Holdings, correct?

17      MR. TWARDY:  Your Honor, I'm going to instruct my

18  client to invoke her fifth amendment right.

19      THE WITNESS:  I will invoke my fifth amendment

20  right.

21  BY MR. LUFT:

22  Q    In fact, Hudson Diamond Holdings was created at your

23  father's direction, wasn't it?

24      MR. TWARDY:  Your Honor, I'm going to instruct my

25  client to invoke her fifth amendment right.

1          THE WITNESS:  I'll invoke my fifth amendment

2     right.

3     BY MR. LUFT:

4     Q    And at all times, your father has controlled Hudson

5     Diamond Holdings, correct?

6          MR. TWARDY:  Your Honor, I'm going to instruct my

7     client to invoke her fifth amendment right.

8          THE WITNESS:  I will invoke my fifth amendment

9     right.

10    BY MR. LUFT:

11    Q    And your father at all times has also controlled Hudson

12    Diamond New York, correct?

13         MR. TWARDY:  Your Honor, I'm going to instruct my

14    client to invoke her fifth amendment right.

15         THE WITNESS:  I will invoke my fifth amendment

16    right.

17    BY MR. LUFT:

18    Q    And all assets that were in Hudson Diamond New York

19    were also the assets of your father, correct?

20         MR. TWARDY:  Your Honor, I'm going to invoke --

21    I'm going to request that my client invoke her fifth

22    amendment right.

23         THE WITNESS:  I invoke my fifth amendment right.

24    BY MR. LUFT:

25    Q    And all bank all accounts in the name of Hudson Diamond

1  Holdings are actually accounts that are controlled by your

2  father, correct?

3          MR. TWARDY:  Your Honor, I'm going to instruct my

4  client to invoke her fifth amendment right.

5          THE WITNESS:  I will invoke my fifth amendment

6  right.

7  BY MR. LUFT:

8  Q    And all bank accounts of Hudson Diamond New York are,

9  in fact, bank accounts controlled by your father, the

10  debtor, correct?

11          MR. TWARDY:  Your Honor, I'm going to instruct my

12  client to invoke her fifth amendment right.

13          MS. WERNICK:  We'd also like to just interpose an

14  objection to the extent that questions regarding Hudson

15  Diamond New York are beyond the scope of the direct

16  presentation and understanding of what the show cause order

17  is here for today.

18          THE COURT:  I overrule our objection.  Go ahead.

19          MR. DESPINS:  Avi?

20          Your Honor, can I have two seconds with my

21  colleague?

22          THE COURT:  Yes.

23                  (Counsel confer)

24          MR. LUFT:  Your Honor, I'm prepared to resume.

25          THE COURT:  Go right ahead.

Ho Wan Kwok - August 22, 2023                    27

1   BY MR. LUFT:

2   Q    In fact, Hudson Diamond Holdings solely owns Hudson

3   Diamond New York, correct?

4            MR. TWARDY:  I'm going to instruct -- Your Honor,

5   with all due respect, I'm going to instruct my client invoke

6   her fifth amendment right.

7            THE WITNESS:  I will invoke my fifth amendment

8   right.

9                      (Counsel confer)

10  BY MR. LUFT:

11  Q    Okay, Ms. Guo.  You are the sole member of Hudson

12  Diamond Holdings, LLC, correct?

13  A    Correct.

14           UNIDENTIFIED SPEAKER:  Quick question.

15           UNIDENTIFIED SPEAKER:  Your Honor, if I might?

16  Yep.

17           UNIDENTIFIED SPEAKER:  Oh, sorry.  Go ahead.

18           UNIDENTIFIED SPEAKER:  No, no.  You.

19           UNIDENTIFIED SPEAKER:  So --

20           THE COURT:  Wait a minute.  Excuse me, sir.

21           UNIDENTIFIED SPEAKER:  I'm the Czech interpreter.

22  Sorry.  I think the --

23           THE COURT:  Wait a minute.  You're the what?

24           UNIDENTIFIED SPEAKER:  I'm the Czech interpreter.

25           UNIDENTIFIED SPEAKER:  Czech interpreter.

1      THE COURT:  We haven't sworn you in or anything.

2   I didn't know there was a Czech interpreter, number one.

3      UNIDENTIFIED SPEAKER:  Okay.

4      THE COURT:  Number two, you can't just stand up in

5   the middle of a proceeding and start talking.  Okay?  That's

6   not how it works.  I'm not saying we can't work this out,

7   but as you saw, we had to swear in the interpreter.  If

8   you're going to be a Czech interpreter, you need to be sworn

9   in.  You cannot just be here to do that.

10      So I don't know who you are.  I don't know what

11   your name is.  I don't know anything about you.  And this --

12   we have to create a record.

13      So has -- I have no idea.  Has this been disclosed

14   to the Chapter 11 Trustee that there'd be a Czech

15   interpreter?

16      UNIDENTIFIED SPEAKER:  It was, Your Honor.  We let

17   the Chapter 11 Trustee know yesterday.

18      UNIDENTIFIED SPEAKER:  You told me you were going

19   to bring an interpreter.  I told you we already had one.

20   That is not the same.  Look, Your Honor --

21      THE COURT:  We've done this before.  Okay?  This

22   isn't the first time.  So I don't know why this is a

23   problem.  We've done this before.  We've had two

24   interpreters at hearings in this case.  And I'm not going to

25   disrupt the proceedings when -- if you're not going to --

1           MR. LUFT:  Your Honor?

2           THE COURT:  So -- no.  Hold on a second, Attorney

3    Luft.

4           So, Mr. Romney --

5           MR. ROMNEY:  Yes, Your Honor.

6           THE COURT:  -- and possibly Ms. Wernick and

7    Mr. Vartan -- I don't remember, but I think you have been

8    here before when we've had two interpreters, haven't you?

9           MR. ROMNEY:  I have not, Your Honor.

10          THE COURT:  Okay.  Well, someone from your office

11   has.

12          MR. ROMNEY:  I --

13          THE COURT:  Okay?  And we're -- this doesn't make

14   any sense to me that we're now in the middle of a proceeding

15   where there's a question being asked and someone is standing

16   up who's not a lawyer, hasn't filed an appearance, and

17   hasn't been sworn in, is now disrupting this proceeding.

18          MR. ROMNEY:  Yes, Your Honor.  I don't disagree

19   with anything Your Honor just said.  In my understanding was

20   that if the Czech interpreter has an issue that he would

21   advise counsel and have -- counsel would interpose, do

22   investigation.

23          THE COURT:  Well, how about somebody advising the

24   Court.  Wouldn't that be appropriate?

25          MR. ROMNEY:  Well --

1        THE COURT:  That would be appropriate, wouldn't

2    it, that the Court would understand what is going on?

3    Because the Court is the person who has to make the

4    decisions, not the lawyers, right?

5        MR. ROMNEY:  I understood.  And what I'm

6    explaining, Your Honor, is that I -- my understanding of how

7    this procedure would transpire, and it's obviously on me for

8    not conversing with our Czech interpreter, was that if he

9    has an issue, he would advise counsel.  Counsel would

10   interpose an objection, and it would proceed from there.

11   And that error is on me.

12       THE COURT:  Okay.  Well, that -- I -- all right.

13       MR. ROMNEY:  And I apologize.

14       THE COURT:  I understand what you're saying.  That

15   didn't happen, though.

16       MR. ROMNEY:  That did not happen, and I take

17   responsibility for it.

18       THE COURT:  Okay.  So how are we proceeding then?

19   In the manner that you just laid out that some -- that one

20   of the three of you is going to jump up and object?

21       MR. ROMNEY:  No.  I think -- Your Honor, if I may?

22   Certainly we defer to the Court.  But it would seem to me

23   that the best way to proceed would be to have the Czech

24   interpreter speak to Mr. Twardy, who is the one interposing

25   objections, and Mr. Twardy would relay any issue to the

1   Court.

2          THE COURT:  Well, Mr. Twardy is only imposing

3   objections as it relates to the witness's individual --

4          MR. ROMNEY:  Understood.

5          THE COURT:  -- status.

6          MR. ROMNEY:  Understood.

7          THE COURT:  Not with regard to the corporate

8   entity.  Okay?  So I -- Mr. Twardy is here to represent his

9   client in the manner in which he described, which is that he

10  has been informed -- I believe, Mr. Twardy, you said, but

11  please correct me if I'm wrong -- that your client is a

12  possible target of an -- of the investigation going on in

13  the Southern District of New York.  Is that what you said?

14         MR. TWARDY:  I said she's a subject, Your Honor,

15  which is a little bit different --

16         THE COURT:  Okay.  Sorry.

17         MR. TWARDY:  -- in the nuance, but still, Your

18  Honor, yes --

19         THE COURT:  So she's -- so you --

20         MR. TWARDY:  -- she's at -- she is at risk.

21         THE COURT:  She's at risk.  And so he's here to

22  protect her individual exposure.  You're all here to protect

23  the exposure of Hudson Diamond, LLC.  That's who you

24  represent.  So that's how this is going to work.  So

25  Mr. Twardy is not going to get to interpose objections that

1    relate to Hudson Diamond, LLC.

2            MR. ROMNEY:  Well --

3            THE COURT:  He's going to get to interpose

4    objections that he believes impacts his -- the client's

5    individual rights in connection with the proceeding in the

6    Southern District of New York.

7            MR. ROMNEY:  Understood, Your Honor.  However, to

8    the extent that the objection is based upon the fact that

9    the question was translated incorrectly to the witness who

10   is the person from whom the LLC is acting, I don't believe

11   it's possible to make -- to draw that distinction.  Because

12   the objection is to the translation of the question that is

13   being presented to both the individual as well as the

14   entity.

15           From a practical perspective -- and my view and

16   understanding was that the least intrusive thing to do would

17   have only counsel assert objections, have the -- have

18   interpreter advise us, and for one of us to stand up and

19   assert that objection.  And I apologize for not being clear

20   with our interpreter on that.

21           I actually, as we walked in, said if there are any

22   issues -- I used the words "please don't be shy."  And I --

23   that was inartful of me.  What I meant was -- what I meant

24   by those words -- and those are my exact words -- were to

25   tell me, and I will do something about it.  And what

1    happened in court is on me for that reason.

2             However, you know, however the Court would like --

3    to echo Attorney Vartan's statements, whether it's Attorney

4    Wernick, Attorney Twardy, or myself --

5             THE COURT:  Well, there's not going to be three

6    different people --

7             MR. ROMNEY:  No, no.  And I --

8             THE COURT:  -- interposing objections --

9             MR. ROMNEY:  I understand that.

10            THE COURT:  -- on behalf of the entity.  That's

11   not going to happen.  So you all three have to choose.

12            MR. ROMNEY:  No.

13            THE COURT:  And Attorney Wernick started by saying

14   she was going to make the presentation today.  So she should

15   be interposing the objections --

16            MR. ROMNEY:  And --

17            THE COURT:  -- on behalf of the LLC.  Okay?

18            MR. ROMNEY:  And I echo Attorney --

19            THE COURT:  And then Attorney Twardy --

20            MR. ROMNEY:  Yes.

21            THE COURT:  -- if he interposes objections, he

22   will interpose it on behalf of his client's individual

23   rights, to which Attorney Luft can say -- he can object as

24   well.  And then I'll have to rule.  Okay?  But that's how

25   it's -- that's how we're going forward.  All right?  We're

1   not having someone talk on the record who's not a lawyer,

2   who hasn't been sworn in, and who doesn't have an appearance

3   and isn't bound by Rule 11.  Okay?

4          MR. ROMNEY:  Understood.  And I reiterate my

5   apology for that, because that is on me.

6          THE COURT:  Okay.  Then that's how we're going to

7   proceed.  Attorney Wernick's going to interpose objections

8   on behalf of the LLC.  Attorney Twardy is going to interpose

9   objections on behalf of his client in her individual

10  capacity.  If there's a overlap, then I'm sure Attorney Luft

11  will raise an objection, and then I'll have to make some

12  form of a ruling.  Okay?

13         MR. ROMNEY:  Thank you, Your Honor.

14         THE COURT:  All right.  Thank you.

15         MR. TWARDY:  Your Honor, might we just consult for

16  one brief moment?

17         THE COURT:  Yes, you may.

18         MR. TWARDY:  I think it will help expedite things.

19              (Counsel confer)

20         THE COURT:  Do either of you need water?  There's

21  water at the table.

22         THE WITNESS:  I'm fine.

23         THE COURT:  Okay.

24         THE WITNESS:  Thank you, Your Honor.

25         THE COURT:  Okay.  Do you need one?  You might

1    need one, right?

2                    THE INTERPRETER:  I have mine.

3                    THE COURT:  Okay.  You have some?  Okay.

4                    THE INTERPRETER:  This is my dictionary --

5                    THE COURT:  Yeah.  That's fine.  If there -- yeah.

6    I understand you're using that for your dictionary.  That's

7    fine.  Thank you.

8                    MS. WERNICK:  Your Honor, the objection on behalf

9    of the entity, it's just a matter of translation, is that

10   it's my understanding where Mr. Luft is using the word

11   "holder," it's being translated as the word "owner," and we

12   would just like the translation to reflect the question

13   being posed.

14                    THE COURT:  Okay.  I have to say, I don't even

15   recall the question at this point, so what was the question?

16   I mean, you're saying --

17                    MR. LUFT:  (Indiscernible), Your Honor.

18                    THE COURT:  You're using the word "owner."  Is

19   that what you said?

20                    MR. LUFT:  I don't -- honestly don't know

21   (indiscernible) --

22                    THE COURT:  Oh.

23                    THE INTERPRETER:  Sole owner.

24                    MR. LUFT:  Yeah.

25                    THE COURT:  Well, why don't we just ask the

1    question again and see where we end up.  How's that?

2                    MR. LUFT:  Fine.

3    BY MR. LUFT:

4    Q    Ms. Guo, you are the sole member of Hudson Diamond

5    Holdings, LLC, correct?

6    A    Yes.

7    Q    And Hudson Diamond Holdings, LLC is the sole member of

8    Hudson Diamond New York, right?

9                    MR. TWARDY:  Your Honor, I'm going to -- oh, I'm

10   sorry.

11                   THE COURT:  Just hold on one second.

12                   MR. TWARDY:  I --

13                   THE COURT:  Is there any objection with regard to

14   the use of the word again or the translation?

15                   MS. WERNICK:  So correct, Your Honor.  And so, you

16   know, this is beyond me certainly.  But I understand that

17   the word "member" that Mr. Luft used has been translated as

18   holder, and that's the distinction that the translator would

19   like to make.

20                   THE COURT:  Okay.  Hold on just one second then.

21                   UNIDENTIFIED SPEAKER:  Sole member is a holder --

22                   THE COURT:  Let's see if we can accomplish

23   something.

24                   THE INTERPRETER:  It's a holding.  Yeah.

25                        (Counsel confer)

1          THE COURT:  All right.  The interpreter is saying

2     the word is the same in Mandarin Chinese, a holder and

3     member are the same.

4                    (Counsel confer)

5          MS. WERNICK:  Okay.  Again, you know, this is far

6     beyond my knowledge, but I understand that there's a word

7     for member in Mandarin Chinese that could be used.

8          UNIDENTIFIED SPEAKER:  Which is what?

9          UNIDENTIFIED SPEAKER:  (Indiscernible).

10          THE COURT:  Well, I will just say if we're going

11     to go further with regard to interpretation issues, then

12     we're going to have to swear in your interpreter.  I need

13     all of the interpreter's name, address, qualifications,

14     everything.  It's that -- I mean, we're going to do that if

15     that's going to continue.

16          But what's your suggestion, Attorney Luft?

17          MR. LUFT:  My suggestion, Your Honor, is I -- she

18     signed a sworn declaration in which she multiple times

19     refers to herself as the sole member.  I didn't -- whatever

20     is -- I think she probably did it in English, because I know

21     she speaks English.  But if it was in Chinese, then whatever

22     was the word in Chinese I'm happy to use.  But she -- this

23     is her word, so I'm not making it up.

24          THE INTERPRETER:  Your Honor, the --

25          THE COURT:  No one suggested you were making it

1    up.

2              MR. LUFT:  Right.  I'm just saying we should know

3    what the word is.  So maybe we start with whether she read

4    this in English and understood it.  And if she did, I don't

5    understand why we're --

6              THE COURT:  Well, why don't you ask that question.

7              THE INTERPRETER:  Your Honor, can the interpreter

8    re-render her interpretation?

9              THE COURT:  Sure.

10             THE WITNESS:  Yes.

11             MR. LUFT:  Okay.  Why don't we just do this

12   anyway, so we resolve this.  Can I have tab 11?

13             Your Honor, I'd like to show the witness a copy of

14   her declaration.

15             THE COURT:  Go right ahead.

16             MR. LUFT:  And may I approach?

17             THE COURT:  Yes, you may.

18             THE WITNESS:  Thank you.

19   BY MR. LUFT:

20   Q    Ms. Guo, do you recognize this document?

21   A    Yes, I can.

22   Q    What is it?

23   A    It's my declaration.

24   Q    Who wrote it?

25   A    It's a declaration.

1    Q    Who wrote it?

2    A    My attorney drafted it with my speech.

3    Q    So you dictated to your attorney what you wanted in

4    here?

5              MS. WERNICK:  And, Your Honor, I just object to

6    the extent it implicates any attorney/client communication.

7              THE COURT:  Overruled.

8    BY MR. LUFT:

9    Q    I need an answer.

10   A    Do I have to answer?

11   Q    Yes, unless your counsel is going to instruct you to

12   take the fifth.

13             MR. TWARDY:  Go ahead.

14             THE COURT:  Attorney Twardy said go ahead and

15   answer.

16             THE WITNESS:  Can you repeat the question, sir?

17   BY MR. LUFT:

18   Q    Sure.  I'm just trying to understand.  So you dictated

19   what you wanted in here to your attorney, and they wrote it

20   down?

21   A    Yes.

22   Q    And which attorney did you do this with?

23             MS. WERNICK:  Again, Your Honor, I would object to

24   the extent it implicates attorney/client communications.

25             THE COURT:  Overruled.

1    BY MR. LUFT:

2    Q    You can answer.

3    A    Two of my attorneys, Louisa and Lee.  Melissa and Lee.

4    Q    Melissa and Lee.  Do you know if Ms. Wernick and

5    Mr. Vartan speak Mandarin?

6    A    They don't.

7    Q    What language do you speak to them in?

8    A    English.

9    Q    And when you signed your declaration, you reviewed

10   it -- this document in English?

11   A    Correct.

12        MR. LUFT:  Okay.  Your Honor, I'd like to mark

13   this as Trustee Exhibit 2.  And I forgot to move Exhibit 1

14   into evidence.  I'll ask that 1 and 2 --

15        THE COURT:  I actually -- you did move Exhibit 1

16   into evidence, and I admitted it in full, because Attorney

17   Wernick said she had no objection to its admission.

18        Do you have any objection, Attorney Wernick, with

19   regard to the admission of the declaration as Trustee's

20   Exhibit 2?

21        MS. WERNICK:  No, Your Honor.  And I think, you

22   know, we've admitted that as our direct, so.  Right.

23        THE COURT:  Thank you.  You didn't actually admit

24   it, but it's fine.  Now it's -- it's now Trustee's 2.  Okay?

25   Thank you.

1          (Trustee's Exhibit 2 admitted)

2    BY MR. LUFT:

3    Q    So I will try to ask my question again.  I'm going to

4    use the word "sole member" the way it was -- in it's English

5    term and how it's used in the declaration.  Okay?  Ms. Guo,

6    Hudson Diamond Holdings, LLC is the sole member of Hudson

7    Diamond New York, correct?

8          MR. TWARDY:  I am going to instruct, Your Honor,

9    my client to invoke her fifth amendment right.

10          THE WITNESS:  I invoke my fifth amendment right.

11   BY MR. LUFT:

12   Q    Okay.  Ms. Guo, you have signed corporate documents on

13   behalf of Hudson Diamond New York, correct?

14          MR. TWARDY:  I am going to instruct my client to

15   invoke her fifth amendment right.

16          MS. WERNICK:  And, Your Honor, on behalf of the

17   entity, I would just repeat the objection along the line of

18   questioning relating to Hudson Diamond New York.

19          THE COURT:  Meaning you think it's beyond the

20   scope?

21          MS. WERNICK:  Yeah.  Beyond the scope of this

22   motion.

23          THE COURT:  Overruled.

24          THE WITNESS:  I invoke my fifth amendment right.

25          MR. LUFT:  Your Honor, I'd like to show the

1    witness a document which I'll -- which is at Docket 1805-46.

2    It was Exhibit T to my declaration, and it's a copy of a

3    Hudson Diamond New York, LLC consent of sole member without

4    a meeting.  May I show it to the witness?

5              THE COURT:  Yes, you may.

6    BY MR. LUFT:

7    Q    Ms. Guo, do you recognize this document?

8              MR. TWARDY:  I'm going to -- Your Honor, I'm going

9    to instruct my client to invoke the fifth amendment right.

10             THE WITNESS:  I invoke my fifth amendment right.

11             MR. LUFT:  Your Honor, I'm going to have to raise

12   an objection to this.  Mr. Romney filed a declaration in

13   this case where he spoke about talking to the witness about

14   this exact document and then offered testimony based on what

15   she represented to him.  I don't think you can talk about

16   issues when you want to and invoke your fifth when you want

17   to.  I'm happy to pull up his -- Attorney Romney's

18   declaration if we want to look at it, but I know this is

19   there.  I know is what they discussed.

20             THE COURT:  What declaration?  Attorney Twardy may

21   not have seen it.  But that -- I'm --

22             MR. LUFT:  It's the July --

23             THE COURT:  I just want to know what you're

24   referring to.

25             MR. LUFT:  Correct, Your Honor.  It's at Docket

1   1988 filed on July 7, 2023.  It was declaration of Aaron

2   Romney regarding motion for withdrawal of counsel for Hudson

3   Diamond New York, LLC.

4            THE COURT:  Attorney Twardy, would you like us to

5   pull up that declaration for you to look?  We can pull it

6   right up so you can see it.

7            MR. LUFT:  And specifically paragraph 13 is the

8   one I was referencing.

9            MR. TWARDY:  I will look over counsel's shoulder.

10           THE COURT:  What is it again, Attorney Luft?

11   What's the ECF number?

12           MR. LUFT:  It is 1988, Your Honor.

13           THE COURT:  1988?  And you're looking at what

14   paragraph?

15           MR. LUFT:  13, Your Honor, is the one I believe

16   discusses this exhibit.

17           MR. TWARDY:  Your Honor, here -- I am here, as

18   Your Honor has indicated, as counsel for Ms. Guo.  What

19   Mr. Romney did in some document is up to Mr. Luft to deal

20   with Mr. Romney.  I'm instructing my client not to -- to

21   invoke the fifth amendment rights.

22           MR. LUFT:  Your Honor, Mr. Romney, I believe, was

23   not acting in his -- was acting because he was seeking to

24   withdraw as counsel for Hudson Diamond New York in a matter

25   where he was retained by Hudson Diamond New York and Hudson

1    Diamond, LLC.  I believe -- I'm assuming he's acting as an

2    attorney and as his agent.

3          To say that that's Mr. Romney's problem for me to

4    take up with him I don't think is appropriate.  Mr. Romney

5    put information to the Court about what Ms. Guo would say in

6    his declaration.  That's how they chose to submit it.  I

7    don't think they can hide behind Mr. Romney now.

8          MR. TWARDY:  Your Honor, we're not hiding behind

9    anybody.  I'm just instructing her to invoke her fifth

10   amendment right.

11         MR. LUFT:  I don't think it can be selectively

12   invoked that way, Your Honor.

13         THE COURT:  Well, that -- whether you can or

14   cannot is not something the Court is going to rule on today.

15         MR. LUFT:  Fair enough, Your Honor.

16         THE COURT:  Okay?  He's instructing his client to

17   invoke the fifth amendment privilege against

18   self-incrimination.  You'll just create your record.

19         MR. LUFT:  Fair enough.

20         THE COURT:  I think that's what you have to do.

21         MR. LUFT:  Okay, Your Honor.  Then I will note my

22   objection to the extent they are trying -- attempting to

23   invoke their fifth amendment rights on areas in which

24   they've already waived and disclosed the information.

25         THE COURT:  I understand your objection.

1           MR. LUFT:  Thank you, Your Honor.

2           THE COURT:  And I'm not ruling on that objection

3    today.  Mr. Twardy has instructed his client not to answer

4    the question.

5           MR. LUFT:  I understand.

6           MR. TWARDY:  Your Honor, just for completeness,

7    what they -- and Mr. Luft referred to they.  That's counsel

8    for Hudson Valley Holdings.  I'm counsel for her, and I'm

9    instructing her as herself to invoke the fifth amendment.

10   What they did I don't care about, with all due respect.

11          THE COURT:  I understand that.  But,

12   unfortunately, it does impact what goes on in this case as a

13   whole, Attorney Twardy.

14          MR. TWARDY:  Understood.

15          THE COURT:  So I understand your -- I understand

16   your statement, but there -- it may have different

17   ramifications for the case as a whole.

18          MR. TWARDY:  Understood, Your Honor.  Thank you.

19          MR. LUFT:  Your Honor, may I move what I'd like to

20   mark as Trustee Exhibit 3 into evidence?

21          THE COURT:  Which is the --

22          MR. LUFT:  Which is the document before -- the

23   Hudson Diamond New York, LLC --

24          THE COURT:  Which was attached to Attorney

25   Romney's declaration.

1          MR. LUFT:  No.  It was attached to my declaration,

2     Your Honor, originally as Exhibit T at Docket 1805-46.

3          THE COURT:  Was it also attached to Attorney

4     Romney's declaration?  Is it the same document?

5          MR. LUFT:  No.  He just referenced -- he

6     references --

7          THE COURT:  He references.

8          MR. LUFT:  -- the document.

9          THE COURT:  Okay.  But he did attach one document

10    to his declaration.

11         MR. LUFT:  Correct, Your Honor.  An email chain.

12         THE COURT:  Okay.

13         MS. WERNICK:  And, Your Honor, we would just

14    interpose the same objection to that to the extent that that

15    document relates to Hudson Diamond New York and not Hudson

16    Diamond Holdings, LLC, for which we're here for today.

17         THE COURT:  And I am going to overrule your

18    objection again.  The scope of the subpoena, as I've stated

19    to Attorney Twardy, is extremely broad, and the definitions

20    that your client, well, as Hudson Holdings representative

21    has testified include Hudson Diamond Holdings, LLC and its

22    affiliates.  So your objection is overruled.

23         MS. WERNICK:  Respectfully, Your Honor -- and I

24    understand your ruling.  But I don't know that there's been

25    any showing that they are affiliated entities.

1    THE COURT:  Mr. Romney's affidavit for -- in

2    support of his motion to withdraw supports that they're

3    related.

4         MS. WERNICK:  Oh, I think, actually, the

5    submission by Mr. Romney supports the fact that they are not

6    affiliated entities.

7         THE COURT:  No.  His declaration says he didn't --

8    he thought he was retained, but he wasn't.  It doesn't say

9    that they're not affiliated.  It says that --

10        MS. WERNICK:  Well, I think --

11        THE COURT:  It says that he believed he was

12   retained by someone of authority who had the authority to

13   retain him who didn't.  That's what your affidavit says.

14   Isn't your motion to withdraw completely based on that,

15   Mr. Romney, that you believed that you were retained to act

16   on behalf of the New York entity, and then you found out

17   later that you didn't have -- that the person who retained

18   you didn't have authority to retain you on behalf of New

19   York -- the New York entity?  Isn't that what it says?

20        MR. ROMNEY:  That I was informed by the general

21   counsel of Hodgson Russ that based on their records, the

22   individual who had retained me on behalf of Hudson Diamond

23   New York, who I previously testified was Ms. Guo, did not

24   have the authority to retain me.  And on that basis, I was

25   going -- I was moving to withdraw.

1          I would just like to state for the record, so that

2      my silence is not perceived as acquiescence, since I'm

3      sitting in the room, is that this declaration was signed

4      under penalty by -- under penalty of perjury by me in

5      response to an order to show cause based on my motion to

6      withdraw.  And it was based upon further -- following the

7      issuance of the order to show cause on my motion to

8      withdraw, there were a series of questions interposed to me

9      by Ms. Claiborn on behalf of the U.S. Trust (sic) Attorney's

10     Office, and this was my --

11          THE COURT:  U.S. Trustee's Office.

12          MR. ROMNEY:  I apologize.

13          THE COURT:  That's okay.

14          MR. ROMNEY:  U.S. Trustee's Office.  Thank you,

15     Your Honor.  And this declaration was Aaron Romney's

16     statement under penalty of perjury designed to --

17          THE COURT:  No, I understand.  I --

18          MR. ROMNEY:  -- address -- so that I -- just to

19     make -- so there's no -- I was filing this declaration on

20     behalf of Aaron Romney.

21          THE COURT:  I understand.

22          MR. ROMNEY:  Thank you, Your Honor.

23          THE COURT:  Go ahead, Attorney Luft.

24          MR. LUFT:  Thank you, Your Honor.  I sought to

25     move Trustee Exhibit 3 into evidence.

1          THE COURT:  Any opposition to the admission of

2     Exhibit 3 into evidence?

3          MS. WERNICK:  The objection that was previously

4     made on the record, again, that the exhibit relates to the

5     entity that's not the subject of this proceeding, and

6     there's been no demonstration it's related to the Hudson

7     Diamond Holdings entity.

8          THE COURT:  There's been no demonstration in the

9     record of this case that those entities are related even

10    though there's documents that say that Hudson Diamond New

11    York, LLC owns Hudson Diamond Holdings, LLC?  Or maybe it's

12    the other way around.  But there's documents in the record

13    of this case, counsel.

14         MS. WERNICK:  There's --

15         THE COURT:  You're saying to me that there's no

16    documents, there's no evidence that's been in this case that

17    establishes that there's a relationship between those two

18    parties, including documents filed with -- official

19    documents filed with secretary of states offices?  That's

20    your argument?

21         MS. WERNICK:  Respectfully, Your Honor, I'm

22    referring to the communications reference in Mr. Romney's

23    declaration from Hodgson Russ indicating that there's not a

24    relationship between --

25         THE COURT:  The declaration isn't before the Court

1    today.  What's before the Court today is whether or not

2    there should be a contempt finding based upon the failure of

3    the party who was served with the subpoena to produce

4    documents.  That's what's before the Court today.  And the

5    documents that have been produced in this case establish

6    that there's a relationship between the two entities.  It's

7    on the secretary of state's records.

8         So you -- you're going to make that argument that

9    it's beyond the scope of this subpoena?  Okay.  Overruled.

10        (Trustee's Exhibit 3 admitted)

11        MS. WERNICK:  Okay.

12        THE COURT:  Go ahead, Mr. Luft.

13   BY MR. LUFT:

14   Q    Ms. Guo, if you could look at Trustee Exhibit 3.  Do

15   you see on the top it says, "Hudson Diamond New York, LLC

16   consent of sole member without a meeting"?  And then on the

17   second page it says, "In witness whereof, this consent of

18   sole member without a meeting was executed on December 4,

19   2020."  And it says, "Hudson Diamond Holding, LLC by Mei Guo

20   as sole member."  Do you see that?

21   A    Yes.

22   Q    And that's your signature there, correct?

23   A    Correct.

24   Q    Okay.  And Ms. Guo, you retained Mr. Romney and

25   Mr. Vartan to act as counsel for Hudson Diamond New York,

1    correct?

2            THE INTERPRETER:  Can I have the name of the

3    counsel again?  Sorry.

4            MR. LUFT:  Mr. Romney and Mr. Vartan.

5            MR. TWARDY:  And, Your Honor, I'm going to

6    instruct my client to invoke her fifth amendment right.

7            MR. LUFT:  Your Honor, I'm going to renew my

8    objection.  We've had extensive discovery in this case and

9    testimony regarding whether or not Ms. Guo retained

10   Mr. Vartan and Mr. Romney.  They made motions based on it.

11   I understand he's -- but I'm just -- for my record.

12           THE COURT:  You're making your record.  Go ahead.

13           MR. TWARDY:  I'm instructing to invoke your fifth

14   amendment right.

15           THE WITNESS:  I invoke my fifth amendment right.

16   BY MR. LUFT:

17   Q    Ms. Guo, did you ever tell Mr. Vartan and Mr. Romney

18   that you were not the person -- that Hudson Diamond

19   Holdings, LLC, was not the sole member of Hudson Diamond New

20   York?

21           MS. WERNICK:  Objection, Your Honor.  He's

22   directly asking for attorney/client communications.

23           MR. LUFT:  Your Honor, they made motions to

24   withdraw --

25           THE COURT:  It's not a privileged communication.

1    I am overrule -- overrule your objection.

2              THE INTERPRETER:  Can I have the question again,

3    sir?

4              MR. LUFT:  Sure.

5    BY MR. LUFT:

6    Q    Ms. Guo, did you ever tell Mr. Romney and Mr. Vartan

7    that Hudson Diamond Holdings, LLC was not the sole member of

8    Hudson Diamond New York?

9              MR. TWARDY:  Your Honor, I'm going to instruct my

10   client to invoke her fifth amendment right.

11             THE WITNESS:  Fifth amendment.

12   BY MR. LUFT:

13   Q    Okay.  Ms. Guo, you authorized bank accounts to be

14   opened for Hudson Diamond New York, correct?

15             MR. TWARDY:  Your Honor, I'm going to instruct my

16   client to invoke her fifth amendment right.

17             THE WITNESS:  Fifth amendment.

18   BY MR. LUFT:

19   Q    In fact, you opened those bank accounts at Capital One,

20   correct?

21             MR. TWARDY:  Your Honor, I'm going to instruct my

22   client to invoke her fifth amendment right.

23             THE WITNESS:  Fifth amendment.

24             MR. LUFT:  Okay.  Your Honor, I'd like to, at this

25   point, show the witness a bank statement from Capital One

1    bank dated for the period of July 1, 2019, through July 31,

2    2019.  There is a Bates stamp of Cap1Kwok0000049.  It has

3    been marked confidential.  So I don't know -- so for the

4    record, we should mark it that -- note that.  But

5    otherwise --

6              THE COURT:  Okay.  I haven't seen whatever you're

7    looking at, so that's fine.

8              MR. LUFT:  I understand, Your Honor.

9              THE COURT:  That's fine.  It's a confidential

10   document that's been produced during the discovery process

11   in these Chapter 11 cases to which the protective order

12   applies?

13             MR. LUFT:  Yes, Your Honor.

14             THE COURT:  Okay.  So then the protective order

15   allows certain attorneys and parties to look at confidential

16   documents, correct?

17             MR. LUFT:  Correct, Your Honor.

18             THE COURT:  Has Attorney -- have Attorney Wernick

19   and Romney and Vartan seen this document before?

20             MR. LUFT:  I'm about to show it to them now.

21             THE COURT:  They've never seen this document?

22             MR. LUFT:  I don't know if they've seen it

23   otherwise.

24             THE COURT:  Well --

25             MR. LUFT:  It's from their client's records.

54

1          THE COURT:  -- not through the production process?

2          MR. LUFT:  No, I have not shown it to them

3     beforehand.

4          THE COURT:  Okay.  Has Attorney Twardy seen this

5     document through the production process?

6          MR. LUFT:  I've never met Mr. Twardy before today.

7          THE COURT:  Okay.  Then he -- then you probably

8     haven't given it to him.

9          MR. LUFT:  Correct.

10          THE COURT:  Let me think for a second now.  It's

11     confidential.  So we have to determine how -- but you have

12     to be able to show the lawyers the document and maintain its

13     confidentiality.

14          MR. LUFT:  Right.

15          THE COURT:  So how are we going to do that?

16          MR. LUFT:  So, Your Honor, I don't know if

17     Mr. Twardy has ever signed a protective order.  I know

18     Mr. Vartan and Mr. Romney and Ms. Wernick have.  So they can

19     see it.

20          Again, Mr. Twardy, have you ever signed the

21     protective order?

22          MR. TWARDY:  I have not.

23          MR. LUFT:  We could give him a copy.  He can

24     review it.

25          THE COURT:  One of the ways we could proceed with

1    regard to this document is that -- and this and any other

2    document that might be confidential that you are planning on

3    examining the witness about, it may be that I have to have

4    an in-camera review of the document and the protective

5    order.  Because there are strict provisions, Attorney

6    Twardy -- and I know you haven't been part of this -- about

7    the protective -- in the protective order with regard to

8    confidential documents.

9            And at this point, any party who has become a

10   party to the protective order is entitled to see

11   confidential documents.  You obviously haven't become that,

12   because you haven't been involved yet until today,

13   essentially.  So I have to figure -- I want to figure out

14   the best way to proceed so that this does not become an

15   issue in the future.  That's the whole reason of having a

16   protective order.

17           How many other documents do you have that might

18   fall -- fit into this category that you are planning on

19   questioning the witness about?

20           MR. LUFT:  Let me check, Your Honor.  I don't

21   think it's -- it's the bank statements.  They've kind of

22   uniformly handed them to us with a confidential mark.

23           THE COURT:  Who's they?

24           MR. LUFT:  Capital One bank, Your Honor.

25           THE COURT:  Okay.

1        MR. LUFT:  Let me check if there are -- that may

2    be the bulk of them, Your Honor.  I can do a double check,

3    but I think so.  There are some emails that they don't

4    appear to have.

5        THE COURT:  Is there any -- are there questions

6    that  you can ask and we can address that -- these documents

7    at the end?  Or if not, that's fine.  Then I would like to

8    take a short recess and consider how to -- I haven't looked

9    at the protective order recently.  I'd have to go back and

10   read the protective order, right?

11       MR. LUFT:  That's totally fine, Your Honor.  I can

12   move this to the end, but I would like to ask the witness

13   about the documents.

14       THE COURT:  That's fine.  Then let's move on, and

15   we'll come back to this area.

16       MR. LUFT:  Okay.

17       THE COURT:  Any documents that are subject to the

18   protective order.

19       MR. TWARDY:  Your Honor, if it helps the Court in

20   her -- your deliberations, I will instruct -- I'm going to

21   instruct Ms. Guo to invoke her fifth as with regard to these

22   documents.

23       THE COURT:  I understand.

24       MR. TWARDY:  Okay.

25       THE COURT:  Unfortunately, Attorney Twardy, he's

1    got to make that record.  He's going to ask every question

2    he wants to ask.  And if she is -- invokes her fifth

3    amendment, that's absolutely -- you know, she's entitled to

4    do that.  But he's also entitled to establish that record.

5               MR. TWARDY:  Yes, Your Honor.

6               MR. LUFT:  Okay, Attorney Luft.  Please proceed.

7               MR. LUFT:  Okay.

8    BY MR. LUFT:

9    Q    Let me see what I can do without the documents then.

10   One moment.  In fact, Ms. Guo, you signed -- you were one of

11   the signatories for the Hudson Diamond New York bank account

12   at Capital One, correct?

13              MR. TWARDY:  Your Honor, I'm going to instruct my

14   client to invoke her fifth amendment rights.

15              THE WITNESS:  Fifth amendment.

16              MR. LUFT:  Give me one second.

17   BY MR. LUFT:

18   Q    Ms. Guo, did you tell Mr. Romney that your name was not

19   on that Hudson Diamond New York account at Capital One?

20              MS. WERNICK:  And, Your Honor, I'm going to object

21   based on attorney/client privilege.

22              THE COURT:  And I'm going to overrule your

23   objection again and note for the record that there were no

24   formal objections filed by you with regard to any of the

25   issues in the subpoena.  So if you keep objecting, you can

1    go ahead and object, but there was no objection raised

2    that -- with regard to the subpoena there's no protective

3    order, no motion to quash, no nothing.  With regard to the

4    issues and the evidence that was sought through that

5    subpoena.  So I would like to note that for the record.

6              MS. WERNICK:  Okay.

7              MR. ROMNEY:  Your Honor, for the record, just --

8    and I know it's been a while, but the stipulation that was

9    entered into verbally in court between Attorney Luft and I

10   on behalf of our respective clients and then submitted in

11   writing and so ordered by the Court did specifically

12   preserve the right of the Hudson Diamond entities to assert

13   privilege.

14             THE COURT:  Yeah.  To assert privilege.  But you

15   didn't object to any specific document requests that said it

16   went beyond the attorney/client privilege.  You didn't do

17   that.

18             MR. ROMNEY:  No.  Correct.

19             THE COURT:  You didn't do that.

20             MR. ROMNEY:  The objection was to a question

21   phrased, not a document request.

22             MS. WERNICK:  Correct.

23             MR. ROMNEY:  That's --

24             THE COURT:  That's fine.  I'm still overruling it.

25             MR. TWARDY:  Your Honor, I'm going to instruct my

1   client to invoke her fifth amendment rights.

2          THE WITNESS:  Fifth amendment.

3   BY MR. LUFT:

4   Q    Ms. Guo, I'm going to reference Mr. Romney's July 7th

5   declaration at paragraph 9.  He writes -- I'll represent to

6   you this is what it says: "Ms. Guo further advised me and

7   Attorney Vartan that Capital One confirmed to her that New

8   York previously had an account at Capital One but the

9   account was closed and Capital One could not provide account

10  statements to Ms. Guo, because her name was not on the

11  account?

12         THE INTERPRETER:  Counsel, can I have the

13  document?  Oh, sorry.

14         MR. LUFT:  Sure.

15         THE INTERPRETER:  It's all right.

16                (Counsel confer)

17         THE INTERPRETER:  Thank you.

18         MR. TWARDY:  Your Honor, I'm going to instruct my

19  client to invoke her fifth amendment right.

20         MR. LUFT:  I haven't even asked my question yet,

21  Your Honor.

22         MR. TWARDY:  It sounded like one to me.  I'm

23  sorry.

24         MR. LUFT:  Well, I read the predicate.  I didn't

25  then -- I was -- I didn't get a chance to ask my question.

1    THE COURT:  Go ahead and ask your question.

2    BY MR. LUFT:

3    Q    Ms. Guo, is it true that you advised Mr. Vartan and

4    Mr. Romney that you could not get the Capital One account

5    because your name was not on that account?

6    MR. TWARDY:  Your Honor, I'm going to instruct my

7    client to invoke her fifth amendment rights.

8    MR. LUFT:  Your Honor --

9    THE WITNESS:  Fifth amendment.

10   MR. LUFT:  And for the record, I'll make my

11   objection that clearly they've opened the door on this by

12   making assertions based on that communication.

13   THE COURT:  Understood.

14   MR. LUFT:  Okay.

15   BY MR. LUFT:

16   Q    Ms. Guo, sitting here today, is -- do you have any

17   basis to assert that Hudson Diamond Holdings, LLC is not the

18   sole member of Hudson Diamond New York?

19   MR. TWARDY:  Your Honor, I'm going to instruct

20   her -- my client to invoke her fifth amendment right.

21   THE WITNESS:  Fifth amendment.

22   BY MR. LUFT:

23   Q    Ms. Guo, did Mr. Romney or Mr. Vartan ever tell you

24   that Kevin Kearney of Hodgson Russ told him -- told them

25   that the documents indicate that Holdings was the member,

1    not your brother?

2              MS. WERNICK:  Your Honor, continuing objection

3    based on attorney/client communications.

4              THE COURT:  Overruled.

5              MR. TWARDY:  Your Honor, I'm going to instruct my

6    client to invoke her fifth amendment right.

7              MR. LUFT:  For the record, we'll make our

8    objection.

9              You have to translate her answer.

10             THE WITNESS:  Fifth amendment.

11             MR. TWARDY:  Thank you.

12   BY MR. LUFT:

13   Q    Okay.  Ms. Guo, to respond to the subpoenas to Hudson

14   Diamond New York and Hudson Diamond Holdings and the Court's

15   order regarding you to appear for this, your brother never

16   told you that he -- he's the member of Hudson Diamond New

17   York, correct?

18             MR. TWARDY:  Your Honor, I'm going to instruct my

19   client to invoke her fifth amendment right.

20             THE WITNESS:  Fifth amendment.

21   BY MR. LUFT:

22   Q    Ms. Guo, you never asked your brother which of you was

23   the holder -- who was the member of Hudson Diamond New York,

24   correct?

25             MR. TWARDY:  Your Honor, I'm going to instruct my

1    client to invoke her fifth amendment right.

2              THE WITNESS:  Fifth amendment.

3    BY MR. LUFT:

4    Q    You've never inquired of your father as to who is the

5    member of Hudson Diamond New York, correct?

6              MR. TWARDY:  Your Honor, I'm going to tell my

7    client to invoke her fifth amendment right.

8              THE WITNESS:  Fifth amendment.

9    BY MR. LUFT:

10   Q    And you never sought to speak to Yvette Wang as to who

11   was the member of Hudson Diamond New York, correct?

12             THE INTERPRETER:  Can I have the name again?

13   Wang?

14             MR. LUFT:  Yvette Wang.

15             THE INTERPRETER:  Yvette Wang.  Okay.

16             MR. TWARDY:  Your Honor, I'm going to instruct my

17   client to invoke her fifth amendment right.

18             THE WITNESS:  Fifth amendment.

19   BY MR. LUFT:

20   Q    Ms. Guo, you never directed your counsel at Zeisler &

21   Zeisler, who's also your father's counsel, to inquire of

22   your father as to how the member of Hudson Diamond New York

23   is, correct?

24             MR. TWARDY:  Your Honor, I'm going to instruct my

25   client to invoke her fifth amendment rights.

1          THE WITNESS:  Fifth amendment.

2    BY MR. LUFT:

3    Q    Ms. Guo, you had conversations with Attorney Romney

4    regarding a Rolls Royce held -- owned by Hudson Diamond New

5    York, correct?

6          MS. WERNICK:  Objection, Your Honor.  Again, this

7    is attorney/client communications.

8          THE COURT:  Oh, go ahead.  And then I'm going to

9    respond to Attorney Wernick when you're done.  Okay.

10         With regard to your objection, you have -- you

11   continue to assert attorney/client privilege objections.

12   And I'm looking at Ms. Guo's declaration that you put in as

13   direct testimony.  And in that direct testimony she talks

14   about specifically talking with you, Attorney Romney, and

15   Attorney Vartan about several things, including Capital One,

16   including you being with her when she made a phone call to

17   try to get Mr. Krasner.  There's nothing in her declaration

18   about trying to attempt to contact Ms. Wang.

19         So your client's already waived the

20   attorney/client privilege with regard to the issues that are

21   in her declaration, because she's already stated that she's

22   had these conversations with you and with Mr. Romney and

23   with Mr. Vartan.  So I overrule your objection.

24         MS. WERNICK:  All right.  And just respectfully,

25   Your Honor, I would just note that the direct question posed

1    to Ms. Guo is not addressed in her declaration, and I would

2    maintain --

3              THE COURT:  Well, but it is.  You've already

4    opened up the whole -- you've opened up the whole line of

5    inquiry by having a declaration submitted where she

6    testifies that she had conversations with you about all of

7    these things.  And so -- and with response to the subpoena.

8    So I overrule your objection.

9              Go ahead, Attorney Luft.

10             MR. TWARDY:  Your Honor, I think it's my turn to

11   tell my client to invoke the fifth amendment.

12             THE COURT:  Go right ahead.

13             THE WITNESS:  Fifth amendment.

14   BY MR. LUFT:

15   Q    And at the July 11, 2023, hearing, Mr. Romney told the

16   Court: "I did inquire about the Rolls-Royce with Ms. Guo."

17   Did that happen?

18             MR. TWARDY:  Your Honor, I'm going to instruct my

19   client to invoke her fifth amendment right.

20             THE WITNESS:  Fifth amendment.

21             MR. LUFT:  And,  Your Honor, I'll renew my

22   objection to the assertion of the fifth in this context

23   given the fact that they've already addressed this.

24   BY MR. LUFT:

25   Q    Where is that Rolls-Royce now?

1      MR. TWARDY:  Your Honor, I'm going to instruct my

2   client to invoke her fifth amendment right.

3      THE WITNESS:  Fifth amendment.

4   BY MR. LUFT:

5   Q   In fact, that Rolls-Royce is an asset of your father's

6   correct?

7      MR. TWARDY:  Your Honor, I'm going to instruct my

8   client to invoke her fifth amendment right.

9      THE WITNESS:  Fifth amendment.

10   BY MR. LUFT:

11   Q   Hudson Diamond has also been involved in attempting to

12   purchase real estate, correct?  Sorry.  Hudson Diamond New

13   York.  I apologize.

14      MR. TWARDY:  Your Honor, I'm going to instruct my

15   client to invoke her fifth amendment right.

16      THE WITNESS:  Fifth amendment.

17   BY MR. LUFT:

18   Q   In fact, Hudson Diamond New York was created at the

19   direction of your father to be a real property entity

20   intended to acquire real property, correct?

21      MR. TWARDY:  Your Honor, I'm going to instruct my

22   client to invoke her fifth amendment right.

23      THE WITNESS:  Fifth amendment.

24   BY MR. LUFT:

25   Q   Hudson Diamond has sought to purchase multiple

1    properties over the past few years, correct?

2              THE INTERPRETER:  Hudson Diamond New York, right,

3    sir?

4              MR. LUFT:  Hudson Diamond New York.  We can --

5    we'll ask both of them.

6    BY MR. LUFT:

7    Q    Hudson Diamond New York?

8              MR. TWARDY:  Your Honor, I'm going to instruct my

9    client to invoke the fifth amendment right.

10             THE WITNESS:  Fifth amendment.

11             MR. LUFT:  Your Honor, I'd like to provisionally

12   mark as Trustee Exhibit 4 a document with the Bates stamp

13   GREE002323.  It is a Caldwell Banker exclusive right to

14   represent the buyer form.  May I show it to the witness?

15   And, Your Honor, may I approach and give one to the Court?

16             THE COURT:  Attorney Wernick, do you have any

17   objection to this document being admitted in full as

18   Trustee's Exhibit 4?

19             MS. WERNICK:  Your Honor, I don't believe we've

20   had an opportunity to view this document before, so we'll

21   take a look at it.  But I -- again, I don't know what this

22   relates to.  And as I said, we haven't seen it before.

23             THE COURT:  Well, didn't you just say -- just

24   tell -- what -- it's a listing agreement between Caldwell

25   Banker and whom?

1          MR. LUFT:  It's a real estate agreement between

2    Hudson Diamond saying that Caldwell Banker --

3          THE COURT:  Hudson Diamond who?

4          MR. LUFT:  It just says Hudson Diamond, Your

5    Honor.

6          THE COURT:  Okay.  And Caldwell Banker?

7          MR. LUFT:  Correct, Your Honor.

8          THE COURT:  Okay.

9          MS. WERNICK:  And so, again, Your Honor, looking

10   at this document for the first time here, there's certain

11   handwritten entries made in the document where we don't know

12   where they're coming from.  And, again, there's no specific

13   entity name listed on the document.  So we would object on

14   this basis.

15         THE COURT:  I'll let you ask a few questions, and

16   then I'll see whether or not it'll be admitted.  Okay?

17         MR. LUFT:  Sure, Your Honor.

18         THE COURT:  Go right ahead.

19         MR. LUFT:  May I approach the witness and the

20   bench?

21         THE COURT:  Yes, you may.

22         THE INTERPRETER:  Thank you.

23   BY MR. LUFT:

24   Q    Ms. Guo, in your declaration you state that Ms. Wang

25   handled the business and operations for Hudson Diamond

1    Holdings?

2            MR. TWARDY:  Your Honor, if I might have a moment?

3    Could you say which -- in which paragraph?

4            MR. LUFT:  Sure.

5            MR. TWARDY:  Thank you.

6            MR. LUFT:  I'm referring to paragraph 5 of her

7    declaration where she says, "Yvette Wang and Max Krasner

8    handled the business and affairs of Holding."

9            MR. TWARDY:  Does she have a -- if I might inquire

10   of the Court?  Does she have a copy?

11           THE WITNESS:  Yes, I do.

12           MR. TWARDY:  You may answer.

13           THE INTERPRETER:  Sorry?

14   BY MR. LUFT:

15   Q    You can answer.

16   A    Can you please repeat your question, because I don't

17   remember the question now.

18   Q    Sure.  In your sworn declaration, you stated that

19   Yvette Wang handled the business and affairs of Holding,

20   correct?

21   A    Yvette Wang and Max Krasner.

22   Q    They both did?

23   A    Correct.

24   Q    Okay.  If you could look at the document I

25   provisionally marked as Trustee 4 that I handed you.  Do you

1    see under buyer it says Hudson Diamond on the front page?

2    A    Yes.

3    Q    Do you see on the back page under the signature it says

4    print name, Hudson Diamond?

5    A    I see it.

6    Q    And that's the -- above it, it's the signature of

7    Ms. Yvette Wang, correct?

8              MR. TWARDY:  Your Honor, I'm going to instruct my

9    client to not -- invoke her fifth amendment right.

10             THE WITNESS:  Fifth amendment.

11             MR. LUFT:  We'll renew our objection, Your Honor,

12   for the same grounds.

13             THE COURT:  You just need to -- I just barely

14   heard you, Attorney Luft.  That's not your fault, but just

15   say that again so it's clear that it's on the record,

16   please.

17             MR. LUFT:  Of course, Your Honor.  We will object

18   on the same -- to the assertion of the fifth amendment on

19   the same grounds given that we believe they've opened the

20   door by asserting Ms. Wang's role with regard to Hudson

21   Diamond Holdings.

22             MR. TWARDY:  Your Honor, if I might just for the

23   record?  They, Hudson Diamond, cannot waive Ms. Guo's

24   personal fifth amendment right.  So I don't know -- care

25   what they did, but she is not waiving her rights.

1              THE COURT:  Understood.

2    BY MR. LUFT:

3    Q    Ms. Guo --

4              MR. LUFT:  Well, why don't -- Your Honor, I'd ask

5    to move to -- for admission of Trustee Exhibit 4.

6              MS. WERNICK:  And we have an ongoing objection.

7              THE COURT:  And what's your ongoing objection?

8              MS. WERNICK:  That there is no authentication of

9    this record.

10             THE COURT:  Well, that's not an ongoing objection.

11   You haven't made an objection about authentication yet, so

12   that's not an ongoing objection.  So then state your

13   objection, and I will listen to it.

14             MS. WERNICK:  All right.  So the document contains

15   handwriting.  Ms. Guo -- there's been no -- nothing to

16   establish that Ms. Guo had anything to do with this

17   document, has ever seen this document before.  There's

18   handwriting who we can't attribute it to, who the document

19   is coming from.  And, otherwise, there's no one with

20   knowledge admitting this document.

21             MR. LUFT:  Your Honor?

22             THE COURT:  Would you like to respond, Attorney

23   Luft?

24             MR. LUFT:  Sure, Your Honor.  There is testimony

25   that Ms. Wang acted on behalf of Hudson Diamond Holdings.

1   We have testimony that Hudson Diamond Holdings is owned by

2   Ms. Guo.  And I specifically asked if the signature was

3   Ms. Wang's, if she knew the signature was Ms. Wang's, and

4   they have asserted the fifth.  To the extent they want to

5   assert the fifth, then they -- that's their right.  But then

6   there -- they can't make an objection and say that I

7   can't -- I don't have evidence that she knows where the

8   signature comes from.  There should be an adverse inference

9   at that point, Your Honor, that it is what it says it is.

10       MS. WERNICK:  Your Honor, the document relates

11  to -- I can't even tell what entity it relates to.  I don't

12  think there's anyone purporting or offering any -- there's

13  nothing that's been offered by Ms. (sic) Luft as to what

14  entity the document relates to or anything else regarding

15  its nature, how it came to be created, or who may have

16  signed the document.

17       MR. LUFT:  Your Honor, it says in two places

18  Hudson Diamond.  Of course it says who it relates to.

19       MS. WERNICK:  I don't -- I'm --

20       MR. LUFT:  It says it on the front and the back.

21       THE COURT:  Hold on a minute, Attorney Wernick.

22       Go ahead, Mr. Luft.

23       MR. LUFT:  It says under buyer, Hudson Diamond,

24  and under the signature name it's written Hudson Diamond.

25  So an argument that this -- we don't know what entity this

1  relates to, it relates to Hudson Diamond, Your Honor.

2         THE COURT:  Anything --

3         MS. WERNICK:  As --

4         THE COURT:  Anything further, counsel?

5         MS. WERNICK:  Yes, Your Honor.  As far as I know,

6  there's no entity -- certainly no entity subject to this

7  specific proceeding -- that's known just simply Hudson

8  Diamond.

9         THE COURT:  I'm going to overrule your objection.

10 I'm going to admit it as Trustee's Exhibit 4.  And I'll give

11 it whatever weight I think is appropriate.

12         (Trustee's Exhibit 4 admitted)

13         MR. LUFT:  Thank you, Your Honor.

14 BY MR. LUFT:

15 Q    If you could look at Trustee 2, which is your

16 declaration.  Actually, you could put that aside for now.

17 Hudson Diamond New York sought to purchase multiple

18 properties over the past few years, correct?

19         MR. TWARDY:  Your Honor, I'm going to instruct my

20 client to invoke her fifth amendment right.

21         THE WITNESS:  Fifth amendment.

22 BY MR. LUFT:

23 Q    Ms. Guo, where are the documents in connection with all

24 those real estate transactions?

25         MR. TWARDY:  Your Honor, I'm going to instruct my

1    client to invoke her fifth amendment right.

2              THE WITNESS:  Fifth amendment.

3    BY MR. LUFT:

4    Q    And, Ms. Guo, all funding for Hudson Diamond's real

5    estate transactions came from your father, correct, the

6    debtor?

7              MR. TWARDY:  Your Honor, I'm going to instruct my

8    client to invoke her fifth amendment right.

9              THE WITNESS:  Fifth amendment.

10   BY MR. LUFT:

11   Q    Ms. Guo, in fact, Hudson Diamond Holdings and Hudson

12   Diamond New York have no source of assets or funds other

13   than those under the -- coming from or under the control of

14   your father, the debtor, correct?

15             MS. WERNICK:  I just object.  It's a compound

16   question.

17             MR. TWARDY:  Your Honor, I'm -- well --

18             THE COURT:  Go ahead.

19             MR. TWARDY:  I'm sorry.  I'm just going to

20   instruct her to invoke her fifth amendment right, but I

21   don't want to preempt Your Honor.

22             THE COURT:  I wasn't going to say anything, so you

23   go right ahead.

24             MR. TWARDY:  Okay.  Your Honor, then I will

25   instruct her to invoke the fifth amendment.

1    THE WITNESS:  It's fifth amendment.

2    BY MR. LUFT:

3    Q   Okay. Ms. Guo, if you could now take Trustee Exhibit 2,

4    which is a copy of your declaration.  You state that you are

5    the records custodian for Hudson Diamond Holdings, LLC,

6    correct?

7         MR. TWARDY:  If I might just help her.  If you

8    would locate it, please.

9         MR. LUFT:  This is her declaration.  It's the

10   first line.

11        MR. TWARDY:  Okay.

12        MR. LUFT:  I assume some familiarity with the

13   document.

14        THE INTERPRETER:  Counsel, can I have the question

15   again?

16        MR. LUFT:  Sure.

17   BY MR. LUFT:

18   Q   Ms. Guo, I'm looking at your introduction and

19   paragraph 1 where you state that you are the records

20   custodian for Hudson Diamond Holdings, LLC.  Do you see

21   that?

22   A   I see it.

23   Q   Is that true?

24   A   Yes.

25   Q   Okay.  What does the position of records custodian for

1    Hudson Diamond Holdings, LLC entail?

2    A    I do not understand this question.

3    Q    Okay.  You stated that you are the records custodian

4    for Hudson Diamond Holdings (audio skip) as the record

5    custodian?

6            MR. TWARDY:  Your Honor, I'm going to instruct my

7    client to invoke her fifth amendment right.

8            MR. LUFT:  Your Honor --

9            THE WITNESS:  Fifth amendment.

10           MR. LUFT:  Your Honor, we will make the same

11   objection that we've made previously that it is improper to

12   invoke the fifth amendment right when clearly she has put

13   the -- already put testimony on the record on this issue.

14   Okay?

15   BY MR. LUFT:

16   Q    What actions have you taken as the record custodian for

17   Hudson Diamond Holdings, LLC?

18           MS. WERNICK:  I would just object and ask if you

19   could ask a more specific question.

20           THE COURT:  Overruled.  The -- overruled.  The

21   question was fine.  Either she can answer it or she can't.

22   That's not a basis for an objection, you'd like the question

23   to be asked a different way.  That's a new one.

24           MS. WERNICK:  Respectfully, Your Honor, I was just

25   objecting that it was vague and ambiguous.

1      THE COURT:  Your -- that's your interpretation of

2  it, counsel.  And you didn't say vague and -- you didn't say

3  that.  So I don't -- your objection is overruled.

4      MR. TWARDY:  Your Honor, might I ask the question

5  be re-asked, as I've now lost what it was.

6      MR. LUFT:  If you'd like me to, Your Honor, I'll

7  ask it again.

8      THE COURT:  Mr. Luft, yes.  I wouldn't like you

9  to, but I'm going to ask you to.

10      MR. LUFT:  Fair enough, Your Honor.

11  BY MR. LUFT:

12  Q   Ms. Guo, what actions have you taken as the record

13  custodian for Hudson Diamonds, LLC?

14      MR. TWARDY:  You can answer, because it's in your

15  declaration.

16      THE WITNESS:  I do not quite understand this

17  question.  Are you asking specifically what do I do to these

18  documents?

19  BY MR. LUFT:

20  Q   No.  I'm asking you what, if any, actions have you

21  taken as the record custodian for Hudson Diamond, LLC.

22      MS. WERNICK:  Apologies, Your Honor.  Could we

23  just put time parameters on the question?

24      THE COURT:  No.  Go ahead.  She can answer that

25  question.

1       THE WITNESS:  I just went to my computer and my

2    mailbox -- my email box to search relevant documents.

3    BY MR. LUFT:

4    Q    Have you ever taken any other actions as the record

5    custodian for Hudson Diamond, LLC?

6       MR. TWARDY:  Your Honor, I'm going to -- I would

7    instruct my client to invoke her fifth amendment rights with

8    regard to that if counsel is asking for what she did beyond

9    what's set forth in her declaration.

10       THE WITNESS:  Fifth amendment.

11       MR. LUFT:  Your Honor, we'll renew our objection

12    on the same grounds.

13    BY MR. LUFT:

14    Q    What computer did you search?

15       MR. TWARDY:  Your Honor, I'm going to instruct my

16    client to invoke her fifth amendment rights.

17       THE WITNESS:  Fifth amendment.

18       MR. LUFT:  Your Honor, I'll renew it.  The witness

19    literally just offered that testimony.  I'm just asking a

20    follow-up question.

21    BY MR. LUFT:

22    Q    What accounts did you search?

23    A    Email account.

24    Q    Which email account?

25       MR. TWARDY:  Your Honor, I'm going to instruct my

1   client to invoke her fifth amendment rights.

2              THE WITNESS:  Fifth amendment.

3              MR. LUFT:  Your Honor, I'll make the same

4   objection.  This is clearly just sword and shield at this

5   point.

6   BY MR. LUFT:

7   Q    Where is the -- where is that -- are those email

8   accounts kept?

9              MR. TWARDY:  Your Honor, I'm going to instruct my

10  client to invoke her fifth amendment rights.

11             THE WITNESS:  Fifth amendment.

12  BY MR. LUFT:

13  Q    Ms. Guo, is this a Hudson Diamond Holdings email --

14  specific email account?

15             MR. TWARDY:  Your Honor, I'm going to instruct my

16  client to invoke her fifth amendment rights.

17             THE WITNESS:  Fifth amendment.

18  BY MR. LUFT:

19  Q    Ms. Guo, is it a Hudson Diamond New York specific

20  account?

21             MR. TWARDY:  Your Honor, I'm going to instruct my

22  client to invoke her fifth amendment rights.

23             THE WITNESS:  Fifth amendment.

24             MR. LUFT:  Your Honor, I'm just going to ask for a

25  standing objection at this point with -- on this topic with

1    regard to -- at least to this email account.  Or I can

2    renew -- do it each time.

3             THE COURT:  I think we need to do it each time,

4    counsel.

5             MR. LUFT:  Fair enough, Your Honor.  To this

6    question and as to the last, I impose an objection as to

7    improper assertion of the fifth amendment given that the

8    witness is openly testifying on this topic when she thinks

9    it's to her advantage.

10            THE COURT:  Well, I assume you're going to file

11   some document after today that's going to point out all of

12   these assertions, and then you can site to the law which

13   talks about the improper -- which would -- law -- and there

14   is case law in the bankruptcy court that talks about

15   improper assertions of fifth amendment when specific

16   questions are asked that have already been made the subject

17   of testimony by the person who is invoking that privilege.

18   And the Court will entertain that when and if it's filed.

19            MR. LUFT:  Thank you, Your Honor.  I'll keep

20   moving on then.

21   BY MR. LUFT:

22   Q    When did you search your email account?

23            MR. TWARDY:  Your Honor, I'm going to instruct my

24   client to invoke her fifth amendment rights.

25            THE WITNESS:  Fifth amendment.

1          MR. LUFT:  Your Honor, I'll object on the same

2     grounds I have been on this issue.

3     BY MR. LUFT:

4     Q    Ms. Guo, upon Hudson Diamond Holdings, LLC being served

5     with the Rule 2004 subpoena in December of 2020, what did

6     you do as the custodian of records to preserve Hudson

7     Diamond Holdings' documents?

8          MR. TWARDY:  Your Honor, I'm going to instruct my

9     client to invoke her fifth amendment rights.

10          THE WITNESS:  Fifth amendment.

11          MR. LUFT:  Your Honor, same objection.

12     BY MR. LUFT:

13     Q    In fact, Ms. Guo, you've never done anything to

14     preserve Hudson Diamond Holdings documents in response to

15     the Rule 2004 subpoena you've received from the trustee,

16     correct?

17          MR. TWARDY:  Your Honor, I'm going to instruct my

18     client to invoke her fifth amendment rights.

19          THE WITNESS:  Fifth amendment.

20          MR. LUFT:  Same objection, Your Honor.

21     BY MR. LUFT:

22     Q    Ms. Guo, you've never gathered any documents from

23     Ms. Wang in connection with her work with regard to Hudson

24     Diamond Holdings and Hudson Diamond New York, correct?

25          MR. TWARDY:  Your Honor, I'm going to instruct my

1    client to invoke her fifth amendment rights.

2         THE WITNESS:  Fifth amendment.

3         MR. LUFT:  Same objection.

4    BY MR. LUFT:

5    Q    Ms. Guo, you've never done anything to make sure to

6    gather the documents of Mr. Krasner in connection with his

7    work for Hudson Diamond Holdings and Hudson Diamond New

8    York, correct?

9         THE INTERPRETER:  Counsel, can I have the name?

10   Mr. Krasner?

11        MR. LUFT:  Krasner correct.

12        THE INTERPRETER:  Krasner.  Okay.

13        MR. TWARDY:  Your Honor, I'm going to instruct my

14   client to invoke her fifth amendment rights.

15        THE WITNESS:  Fifth amendment.

16   BY MR. LUFT:

17   Q    Ms. Guo, as a custodian of records for Hudson Diamond

18   Holdings, LLC, you've never done anything to make sure that

19   there was no spoliation of its or its affiliates' documents,

20   correct?

21        MR. TWARDY:  Your Honor, I'm going to instruct my

22   client to invoke her fifth amendment rights.

23        THE WITNESS:  Fifth amendment.

24        MR. LUFT:  Same objection, Your Honor.

25   BY MR. LUFT:

Ho Wan Kwok - August 22, 2023                                    82

1    Q    Okay.  Ms. Guo, in your declaration, you state that you

2    reviewed the trustee's Rule 2004 subpoena directed to Hudson

3    Diamond Holdings.  Did you also review the trustee's Rule

4    2004 subpoena directed to Hudson Diamond New York when you

5    retained Mr. Vartan and Mr. Romney to act as counsel for

6    both entities?

7          MS. WERNICK:  And I would just object to the

8    extent that the order that the Court entered directing the

9    submission of a declaration was specific as to Hudson

10   Diamond Holding, not Hudson Diamond New York.

11         THE COURT:  Objection overruled.

12         MR. TWARDY:  Your Honor, I'm going to instruct my

13   client to invoke her fifth amendment.

14         THE WITNESS:  Fifth amendment.

15         MR. LUFT:  Okay.  We'll move on.

16   BY MR. LUFT:

17   Q    Ms. Guo, you say that you -- in paragraph 3 that you've

18   reviewed Mr. Romney's July 7, 2023, declaration, correct?

19   A    Correct.

20   Q    Okay.  And you believe everything in there is true and

21   accurate?

22   A    Correct.

23   Q    Mr. Romney stated that it's not your -- that you told

24   him that your name was not on the Capital One bank account.

25   Was that true and accurate?

1          MS. WERNICK:  Objection.  Attorney/client

2     communication.

3          THE COURT:  That's overruled, counsel.  Your

4     client's declaration talks about Attorney Romney's

5     declaration and that she reviewed it.  So your objection is

6     overruled.

7          MS. WERNICK:  And, Your Honor, I would just add

8     that it also mischaracterizes the substance of Mr. Romney's

9     declaration.

10          THE COURT:  What mischaracterizes?

11          MS. WERNICK:  The way that the question is framed

12     to Ms. Guo.

13          THE COURT:  Overruled.

14          MR. TWARDY:  Your Honor, for that reason, I'm

15     going to invoke the fifth -- ask my client to invoke the

16     fifth amendment privilege.

17          MR. LUFT:  Sorry.

18          THE WITNESS:  Fifth amendment.

19          MR. LUFT:  Sorry.  For what reason?

20          MR. TWARDY:  For the mischaracterization of the

21     Romney affidavit.

22          MR. LUFT:  Okay.  I don't want to be accused of

23     mischaracterizing, so why don't we mark as Trustee Exhibit 5

24     a document that's previously been entered in the record.

25     It's Document 1988.  It's a copy of Mr. Romney's declaration

1  regarding motion to withdraw as counsel for Hudson Diamond

2  New York, LLC.

3          Your Honor, may I approach the witness?

4          THE COURT:  Yes, you may.

5          MS. WERNICK:  Thank you.

6  BY MR. LUFT:

7  Q    Ms. Guo, have you ever seen this document before?

8  A    I have seen it before.

9  Q    Turn to paragraph 9.  Do you see it says, last

10 sentence, "Ms. Guo further advised me and Attorney Vartan

11 that Capital One confirmed to her that New York previously

12 had an account at Capital One but the account was closed,

13 and Capital One could not provide account statements to

14 Ms. Guo, because her name was not on the account."  Do you

15 see that?

16 A    I see it.

17 Q    And, Ms. Guo, is that truthful and accurate?

18 A    Correct.

19 Q    So it's your sworn testimony that it's truthful and

20 accurate that Capital One told you that your name was not on

21 the bank account for Hudson Diamond New York?

22         MR. TWARDY:  Your Honor, I'm going to instruct my

23 client to invoke the fifth amendment.

24         THE WITNESS:  Fifth amendment.

25         MR. LUFT:  I'm going to renew my objection, Your

1    Honor, on this issue.  I can move on to something else, but

2    this will once again -- I would like to revisit this when we

3    go back to the bank records.

4              THE COURT:  I understand.

5              MR. LUFT:  Thank you, Your Honor.

6    BY MR. LUFT:

7    Q    Okay.  Ms. Guo, you tried to contact Mr. Krasner in

8    connection with the subpoena?

9    A    I did.

10   Q    How did you do that?

11   A    Mobile phone.

12   Q    What phone number did you use?

13   A    I don't remember.

14   Q    How did you get the phone number?

15   A    Phone number of whom?

16   Q    Max Krasner.

17   A    I don't remember.

18   Q    You don't know how you got the phone number to call

19   Mr. Krasner?

20   A    I don't remember.

21   Q    Is it a phone number you've had for a long time?

22   A    I don't remember.

23   Q    Approximately when did you get Mr. Krasner's phone

24   number?

25   A    I don't remember.

1    Q    Was it in the last six months?

2    A    More than six months.

3    Q    More than a year?

4    A    More than a year.

5    Q    So for more than a year, you've had Mr. Krasner's phone

6    number?

7    A    Correct.

8    Q    Ms. Guo, do you remember I took your deposition

9    previously?

10   A    I do.

11   Q    Do you remember you were under oath?

12   A    Yes.

13   Q    And do you remember you swore to tell the truth, the

14   whole truth, and nothing but the truth?

15   A    I remember.

16        MR. LUFT:  Counsel, here's a copy of the

17   deposition transcript.  If Your Honor would like, I'd --

18   happy to hand one up to the Court.

19        THE COURT:  Well, you're going to have to

20   introduce -- you'll have to file all the documents anyway,

21   so it's fine.

22        MS. WERNICK:  And, Your Honor, we would just

23   object to this as being beyond the scope of this proceeding.

24        MR. LUFT:  Your Honor, this is impeachment.

25        THE COURT:  Objection overruled.

1          MR. LUFT:  May I approach the witness?

2          THE COURT:  Yes.

3          THE INTERPRETER:  Thank you.

4   BY MR. LUFT:

5   Q    Ms. Guo, can you turn to page 146 of your deposition

6   transcript?  And, Ms. Guo, I took your deposition on

7   January 20, 2023, correct?

8   A    I don't remember the specific dates.

9   Q    Okay.  If you want to look on the front page, this --

10  do you see it says Friday, January 20, 2023?  Does that

11  refresh your recollection that's when I took your

12  deposition?

13  A    Okay.  I see it.

14  Q    Okay.  I'm going to ask you to look at line 7 and line

15  8.  Question: "Do you have Max Krasner's phone number?"

16       Answer: "No."

17  Q    Did I read that correctly?

18          MR. TWARDY:  Your Honor, I'm going to instruct her

19  to invoke the fifth amendment.

20          THE WITNESS:  Fifth amendment.

21          MR. LUFT:  Your Honor, I'm going to object.

22  That's improper instruction on the fifth.

23          THE COURT:  I understand.

24  BY MR. LUFT:

25  Q    Ms. Guo, did you ever attempt to email Mr. Krasner?

1          MS. WERNICK:  Objection.  Vague and ambiguous.

2          THE COURT:  Overruled.

3          MR. TWARDY:  Your Honor, I'm going to instruct my

4     client to invoke the fifth amendment.

5          THE WITNESS:  Fifth amendment.

6          MR. LUFT:  Same objection.

7     BY MR. LUFT:

8     Q    Did you attempt to contact Mr. Krasner in any other way

9     other than the telephone?

10         MR. TWARDY:  Your Honor, I'm going to instruct my

11    client to invoke the fifth amendment.

12         THE WITNESS:  Fifth amendment.

13         MR. LUFT:  Same objection.

14    BY MR. LUFT:

15    Q    Ms. Guo, have you done anything to try to

16    communicate -- contact Ms. Wang in connection with Hudson

17    Diamond Holdings and Hudson Diamond New York, responding to

18    the subpoenas that were served upon them by the rule -- by

19    the trustee?

20         MR. TWARDY:  Your Honor, I'm going to instruct my

21    client not to -- or to invoke her fifth amendment rights

22    with regard to Hudson Diamond New York.

23         THE INTERPRETER:  Can I have that again,

24    counselor?

25         MR. TWARDY:  Yes.  I'm instructing her to not

1    answer the question with regard to Hudson Diamonds New York.

2    She can answer the question as regard to her attempts with

3    Ms. Wang for Hudson Diamond Holding.

4              THE COURT:  Well, hold on a second.

5              I'm sorry.  Go ahead.

6              So, Mr. Twardy, your objection is going to her

7    position as a corporate -- a person, not with regard to her

8    individual rights.  You don't care -- you've told me you

9    don't care about the entities.  But now you tell me you do

10   care about the entities.

11             MR. TWARDY:  Your Honor --

12             THE COURT:  So I think that that's not

13   appropriate.  If you want to instruct her to answer not --

14   because you're concerned about her individual prosecution,

15   that's a different situation.  But you're now taking over

16   the role that Attorney Wernick said she was going to take,

17   which was you've now made a line in the sand about corporate

18   entities which you've told the Court and everyone on several

19   occasions you don't care about.  But now you do care about

20   it.

21             MR. TWARDY:  I do care about --

22             THE COURT:  So --

23             MR. TWARDY:  I do care about it, Your Honor, with

24   regard to Ms. Guo.  And this one asked a question about what

25   she did with regard -- on behalf of Hudson Holdings as well.

1          THE COURT:  That's right.  And that's what the --

2     that's what this whole hearing is about.

3          MR. TWARDY:  Understood.  And that's something I

4     would let her answer.  It's the question about what she did

5     on behalf of Hudson New York I'm instructing her to invoke

6     the fifth.

7          THE INTERPRETER:  Okay.

8          MR. TWARDY:  Does that --

9          THE COURT:  I still think that you are -- you are

10    now taking a position that's inconsistent with the position

11    you've taken throughout this hearing, which is that you

12    don't care about the entities.  Ms. Wernick has been

13    invoking -- has been objecting on the basis that it goes

14    beyond the scope.  And I've overruled all those objections.

15         So now that I continue to overrule those

16    objections, you're now making a different objection than

17    you've made previously.  Because now, I've been clear that

18    I -- that the scope of this subpoena and the issues related

19    to showing cause relate to the subpoena as a whole and the

20    Hudson Diamond Holdings, LLC.  And we went through this at

21    the beginning of the hearing where Mr. Luft asked your

22    client a question about the definition, and your client

23    answered it and said she understood it.  And that included

24    you, yours -- I can write -- I can look at my notes.

25         MR. TWARDY:  Yeah.

1          THE COURT:  But the --

2          MR. TWARDY:  Your Honor, if I --

3          THE COURT:  But the point is, counsel, you can't

4    take over their objections when their objections are being

5    overruled, and they don't like the fact that they're being

6    overruled by then asserting that she -- your client should

7    take -- should be able to invoke her fifth amendment

8    privilege, because -- as it relates to one of the corporate

9    entities.

10         MR. TWARDY:  Your Honor, I -- she has invoked her

11   fifth amendment privilege with regard to any question

12   concerning her role with Hudson Valley -- Hudson Diamond New

13   York, because -- it's been consistent with that.  I've

14   allowed --

15         THE COURT:  Well, you've also invoked her fifth

16   amendment privilege with regard to anything that has to do

17   with Hudson Diamond Holdings, LLC.  So now we're --

18         MR. TWARDY:  What's --

19         THE COURT:  Now we're getting into the position

20   that I --

21         MR. TWARDY:  Okay.

22         THE COURT:  -- I described at the beginning of

23   this hearing that was problematic, which is so now the

24   witness has a lawyer not only representing her in her

25   capacity as a corporate member but in her individual

1    capacity who then gets to assert the privilege with regard

2    to corporate issues.  That doesn't make any sense to me,

3    Attorney Twardy.

4              MR. TWARDY:  Your Honor, I will then instruct my

5    client to invoke the fifth amendment rights to the question

6    as a whole.

7              THE INTERPRETER:  Sorry?

8              MR. LUFT:  He instructed her to take the fifth.

9    You have to give her the instruction.  She knows, but -- and

10   then she will --

11             THE WITNESS:  Fifth amendment.

12             MR. LUFT:  We'll make the same objection, Your

13   Honor.

14   BY MR. LUFT:

15   Q    Okay.  What, if any, actions have you taken to try to

16   communicate with Ms. Wang in connection with the subpoena

17   Hudson Diamond Holdings received?

18   A    I cannot reach out to Ms. Wang, because she is in

19   detention center.

20   Q    You communicate with people in detention currently,

21   don't you?

22             MR. TWARDY:  Your Honor?

23             THE WITNESS:  Who are you referring to?

24             MR. TWARDY:  Your Honor?  Your Honor, I will

25   instruct her to invoke her fifth amendment.

1          THE WITNESS:  I answered your question.

2     BY MR. LUFT:

3     Q    So, okay.  I'll proceed then.  You communicate with

4     your father who's currently in prison, correct?

5          MR. TWARDY:  Your Honor, I'm going to instruct my

6     client to invoke her fifth amendment.

7          THE WITNESS:  Fifth amendment.

8     BY MR. LUFT:

9     Q    In fact, you post on social media most -- on social

10    media repeatedly that you communicate with your father while

11    he's in detention, correct?

12         MR. TWARDY:  Your Honor, I'm going to instruct my

13    client to invoke her fifth amendment.

14         THE WITNESS:  Yes.  And thank you for your

15    concern.

16    BY MR. LUFT:

17    Q    Do you -- what steps have you taken to communicate with

18    Ms. Wang with regard to Hudson Diamond Holdings' compliance

19    with the subpoena that was served?

20         MR. TWARDY:  I'm going to instruct my client to

21    invoke her fifth amendment.

22         THE WITNESS:  Fifth amendment.

23    BY MR. LUFT:

24    Q    Ms. Guo, in fact, you've never taken any steps to try

25    to get information from Ms. Wang with regard to Hudson

1    Diamond Holdings' compliance with the trustee's subpoena

2    despite the fact that you list her and Mr. Krasner as the

3    people who operated the business, correct?

4              MR. TWARDY:  Your Honor, I'm going to instruct my

5    client to invoke her fifth amendment rights.

6              THE WITNESS:  Fifth amendment.

7    BY MR. LUFT:

8    Q    And that's because you know that Ms. Wang only takes

9    instructions from your father, correct?

10             MR. TWARDY:  Your Honor, I'm going to instruct my

11   client to invoke her fifth amendment rights.

12             THE WITNESS:  Fifth amendment.

13   BY MR. LUFT:

14   Q    And you know that Mr. Krasner, in fact, only will take

15   instruction from your father, correct?

16             MR. TWARDY:  Your Honor, I'm going to instruct my

17   client to invoke her fifth amendment rights.

18             THE WITNESS:  Fifth amendment.

19   BY MR. LUFT:

20   Q    And that's because Ms. Wang and Mr. Krasner are your

21   father, the debtor's, agents, correct?

22             MR. TWARDY:  Your Honor, I'm going to instruct my

23   client to invoke her fifth amendment rights.

24             THE WITNESS:  Fifth amendment.

25   BY MR. LUFT:

1    Q    If we go back to Trustee Exhibit 2, which is your

2    declaration, if I look at paragraph 7 you said, "I also

3    reached out to my accountant."  Who is your accountant?

4    A    Mindy.

5    Q    Mindy?  What is Mindy's whole name?

6    A    I don't remember.

7    Q    You don't know your accountant's whole name?

8    A    I don't remember.

9    Q    What's the name of her accounting firm?

10   A    It started with J and something, but I don't remember

11   the whole name.

12   Q    All you recall is that it literally starts with the

13   letter J?

14   A    J-A and something.  Janover?

15   Q    Is it Janover?

16   A    I don't remember.

17   Q    Is it Janik?

18   A    I do not remember.

19   Q    It could be an accountant or a paint store.  We don't

20   know.

21           MR. LUFT:  I'll withdraw that.

22   BY MR. LUFT:

23   Q    How do you contact Mindy?

24   A    I send her emails and call her by phone.

25   Q    Okay.  When you reached out to her as referenced in

1    your declaration, how did you contact Mindy?

2    A    I have called her.  I have also sent her emails.

3    Q    What's her phone number?

4    A    I don't remember.

5    Q    Where do you keep her phone number?

6    A    In my mobile phone.

7    Q    Do you have your mobile phone here?

8    A    No.

9    Q    What type of phone is it?

10   A    iPhone.

11   Q    Smart phone?

12   A    iPhone is a smart phone.

13   Q    When did you start using an iPhone?

14   A    In year 2008.

15   Q    And you've used one consistently since then?

16   A    No.

17   Q    Okay.  When did you start using this smart phone?

18        MR. TWARDY:  Your Honor, I'm going to instruct my

19   client to invoke her fifth amendment rights.

20        THE WITNESS:  Fifth amendment.

21        MR. LUFT:  Your Honor, the fifth amendment is not

22   supposed to be a blanket objection to anything they don't

23   want to answer.  When did she start using her phone?

24        THE WITNESS:  I have answered that question.  My

25   answer is I don't remember.

1          MR. TWARDY:  And, Your Honor, just if I might for

2     the record?  There are issues that arise for the act of

3     production that can be implicated here which is why I'm

4     instructing her to invoke her fifth amendment.

5          MR. LUFT:  There's no act of production issue

6     right now, Your Honor.

7          MR. TWARDY:  There could well be, and that's what

8     I'm looking -- steps down the road.

9          MR. LUFT:  Well, you got to wait until we get

10    there.

11         MR. TWARDY:  Well, that's why she's invoking it

12    now.

13         MR. LUFT:  Your Honor, that's improper.  So he's

14    now saying that she wants to invoke her fifth amendment in

15    case we ever get to an issue that involves --

16         MR. TWARDY:  I don't --

17         MR. LUFT:  -- a fifth amendment issue.

18         MR. TWARDY:  I don't care about you.  I care about

19    the U.S. Attorney's Office, with all due respect,

20    Mr. Duff -- Luft.

21         MR. LUFT:  I don't care how you feel about me, but

22    I'm trying to do an examination.

23         THE COURT:  I'm going to just stop --

24         MR. LUFT:  Thank you, Your Honor.

25         THE COURT:  -- you both right there.  Okay?

1    You're going to continue to make your record.  And you're

2    going to -- and you're going to do whatever you think is

3    appropriate with regard to this record.

4              MR. LUFT:  Okay.

5              THE COURT:  I will say that there are questions

6    that have been asked that relate directly to the direct

7    testimony of the witness in the declaration to which the

8    fifth amendment has been asserted when you've asked the

9    question.

10             MR. TWARDY:  Your Honor, might we take a quick

11   break?  Ms. Guo has been up there for two-and-a-half hours

12   almost at this point.

13             THE COURT:  I don't know how much longer Attorney

14   Luft has.  Do you want to take a break, or did you want to

15   continue?

16             MR. LUFT:  No, Your Honor.  I'd like to finish up.

17   I don't have much more.  I mean, if we want to take a break

18   before the -- when we get to the bank documents to give the

19   Court a chance to look at them, that would be fine.

20             THE COURT:  I'd like to take a break before the

21   bank documents.  So why don't you finish up what you can do

22   without the bank documents, and then we'll talk about the

23   bank documents.

24   BY MR. LUFT:

25   Q    Ms. Guo, you said that you use an iPhone, correct?

1    A    Correct.

2    Q    Have you been using an iPhone for the past two years?

3              MR. TWARDY:  Your Honor, I'm going to instruct my

4    client to invoke the fifth amendment for the reasons

5    previously stated.

6              THE WITNESS:  Fifth amendment.

7              MR. LUFT:  Your Honor, I'm going to object.

8              Can I have tab 30?

9              Your Honor, I'd like to show the witness a copy of

10   the declaration of Lee Vartan in opposition to trustee's

11   order to show cause regarding compliance with Rule 2004

12   subpoenas and January 2023 order.  It's at Docket 1512.

13             THE COURT:  Okay.

14             MR. LUFT:  May I approach the witness?

15             THE COURT:  Yes, you may.

16             THE INTERPRETER:  Thank you.

17             MR. TWARDY:  Thanks.

18   BY MR. LUFT:

19   Q    Ms. Guo, this is a copy of the declaration of your

20   counsel, Mr. Vartan, in opposition to the trustee's order to

21   show cause regarding compliance with the Rule 2004 subpoena

22   that was directed towards yourself and HK USA.

23   Specifically, I want to direct you to paragraph 25.

24             MS. WERNICK:  And I would object.  Mr. Luft has

25   now shown the witness a document that relates to other

1   entities outside of the Hudson Diamond entities that we're

2   here for today.

3           THE COURT:  Objection overruled.

4   BY MR. LUFT:

5   Q    Ms. Guo, do you see on paragraph 25 it cites --

6   Mr. Vartan writes, "After Ms. Guo was released from

7   detention in early 2017, her relationship with technology

8   was further changed.  She stopped using a smart phone and

9   communicated only by using a flip phone for fear of being

10  tracked by the CCP."  Do you see that?

11          MR. TWARDY:  Your Honor, I'm going to instruct my

12  client to invoke the fifth amendment.

13          MR. LUFT:  Your Honor, I -- Your Honor, my

14  question is literally does she see that.  This is an

15  improper invocation of the fifth.

16          MR. TWARDY:  That she can answer.  I'm sorry.  I

17  thought I heard something else, Mr. Luft.

18  BY MR. LUFT:

19  Q    Ms. Guo, is it a true -- was Mr. Vartan truthful when

20  he stated that you stopped using a smart phone and

21  communicated only with a -- from a -- with a flip phone

22  starting in early 2017 until the time of his declaration in

23  January of 2023?

24          MR. TWARDY:  Now, Your Honor, I'm going to

25  instruct my client to invoke the fifth amendment.

1          THE WITNESS:  Fifth amendment.

2          MR. LUFT:  Same objection, Your Honor.

3     BY MR. LUFT:

4     Q    If I could ask you to look at paragraph 9 of Trustee

5     Exhibit 2, which is a copy of your declaration.  You write,

6     "I reviewed my hard copy and electronic records."  Which

7     records are you referring to?

8     A    That refers to my emails.

9     Q    Anything else?

10    A    It was just the emails and also whatever documentations

11    that I have at hand.

12    Q    Where do you keep -- well, when you say you -- whatever

13    documentations you have at hand, what are you referring to?

14    A    It refers to any printed paper document that I have on

15    my table.

16    Q    Which table?

17    A    My table.

18    Q    I don't want to be flip about this, but are you -- is

19    it literally just any documents that happen to be at the

20    table you're at, or do you have some type of file or system

21    where you keep hard copy documents related to whatever

22    business you're in?

23    A    It's the table that I kept documents.

24    Q    Okay.  Where is the table that you keep documents

25    located?

1    MR. TWARDY:  Your Honor, I don't want to intrude

2    here, but I heard her answer "kept documents," as in the

3    past tense, which is consistent with what's in the

4    affidavit.  Mr. Luft's question was keep.  And I don't --

5    I -- you know, I just wish -- could you clarify your

6    question?  Is it current or past tense?

7                    MR. LUFT:  Sure.

8    BY MR. LUFT:

9    Q    Ms. Guo, did you destroy the documents you reference in

10   paragraph 9 when you say you reviewed your hard copy

11   documents?

12                   MR. TWARDY:  Your Honor, I'm going to instruct her

13   to invoke the fifth amendment.

14                   THE WITNESS:  Fifth amendment.

15                   MR. LUFT:  Same objection, Your Honor.

16   BY MR. LUFT:

17   Q    How did you destroy the documents -- hard copy

18   documents that you kept that would have been responsive to

19   the subpoena?

20                   MS. WERNICK:  Objection.  It's argumentative.

21                   MR. LUFT:  Well, I want to know how we -- she did

22   it.  It's not argumentative.

23                   THE COURT:  Overruled.

24                   MR. TWARDY:  Your Honor, I'm going to instruct my

25   client to invoke the fifth amendment.

1        THE WITNESS:  Fifth amendment.

2   BY MR. LUFT:

3   Q    In fact, Ms. Guo, you destroyed those documents at the

4   direction of your father, the debtor, correct?

5        MR. TWARDY:  Your Honor, I'm going to instruct my

6   client to invoke her fifth amendment rights.

7        THE WITNESS:  Fifth amendment.

8        MR. LUFT:  Your Honor, if you want to take a

9   break, this might be the time where I can figure out if

10  there's anything else other than the bank documents.  And

11  then we can -- I can share those with the Court.

12       THE COURT:  I'm not in need of a break, but if you

13  want to break so that you can determine how you want to

14  proceed with the documents that are subject to the

15  protective order, that's fine.

16       MR. LUFT:  That's what I want to figure out, Your

17  Honor.

18       THE COURT:  Okay.  How much time do you need?

19  Fifteen minutes?  Twenty minutes?

20       MR. LUFT:  Well, I know Your Honor had indicated

21  that you wanted a chance to review them as well, so --

22       THE COURT:  Well, I believe I'm going to have to

23  review them at some point depending upon what occurs.  So

24  I'd like the parties to have a discussion about this issue

25  for the next 20 minutes.  And we'll come back at 4:50, and

1    we'll see how we're going to proceed.  Okay?

2              MR. LUFT:  That works, Your Honor.

3              THE COURT:  All right.

4              MR. TWARDY:  Your Honor?

5              THE COURT:  Court is in recess until 4:50.

6              MR. DESPINS:  Your Honor, may we have the general

7    admonition that you give to witnesses?

8              THE COURT:  Yes.  I have to speak to the

9    interpreter.

10             Would you please remind the witness that she is

11   under oath and she remains under oath during this time that

12   we're on break.  Okay?

13             THE WITNESS:  Thank you, Your Honor.

14             MR. LUFT:  Thank you, Your Honor.

15             THE COURTROOM DEPUTY:  All rise.  Court is in

16   recess until 4:50.

17             (Court recessed from 4:30 p.m. to 4:58 p.m.)

18             THE COURT:  All right.  Mr. Luft, we took a

19   recess, and I asked you to -- and the parties to speak about

20   the portion of your examination where you had indicated

21   you're going to ask some questions about documents that have

22   been marked confidential.

23             MR. LUFT:  Yes, Your Honor.

24             THE COURT:  So is there anything you have to

25   report about those discussions?

1        MR. LUFT:  Yes, Your Honor.  My understanding is

2   that Ms. Guo's criminal counsel has reviewed the protective

3   order, has agreed to be bound by it, and he's going to make

4   a statement on the record reflecting that we don't have a

5   hard copy here right now.  But I'm -- that's more than

6   adequate to me that if he makes a statement on the record

7   that he's willing to be bound by it.  At which point I have

8   shared the documents I'm considering using with counsel for

9   Hudson Diamond Holdings.  Once he makes that statement on

10   the record, they will share it with him as well.

11        MR. LUFT:  Okay.

12        MR. LUFT:  And then I think --

13        THE COURT:  That's fine.  Thank you.

14        MR. LUFT:  -- Your Honor, we can move ahead.

15        MR. TWARDY:  And, Your Honor, yes, I will be bound

16   by the confidentiality order that's been entered here.

17        THE COURT:  Thank you, Attorney Twardy.  Just so

18   you know, it's called a protective order.

19        MR. TWARDY:  Protective order.  I'm sorry.  I --

20        THE COURT:  That's all right.  And it's -- it --

21   the document number is 923.  And it was entered in this case

22   on -- in these Chapter 11 cases on October 6, 2022.  Okay?

23        MR. TWARDY:  Yes.  Attorney Linsey sent me --

24   emailed me a copy of it, and I had a chance to look at it,

25   Your Honor, during the break.

1          THE COURT:  Okay.  Thank you.

2          MR. TWARDY:  Yeah.

3          Thank you, Attorney Linsey.

4          THE COURT:  All right.  And you've showed the

5    documents that you're going to ask questions about to

6    Ms. Wernick and Attorney Romney and Attorney Vartan, and now

7    they're going to share them with Attorney Twardy.  Is that

8    how you anticipate this will proceed?

9          MR. LUFT:  Yes, Your Honor.  They have copies of

10   the three documents I intend to reference --

11         THE COURT:  Okay.

12         MR. LUFT:  -- at this point.

13         THE COURT:  Then please proceed.

14         MR. LUFT:  Thank you, Your Honor.

15         MR. ROMNEY:  One moment, Your --

16                   (Counsel confer)

17         MR. ROMNEY:  Your Honor, if I may?  I believe,

18   given that we have a public going on, if we're going to be

19   discussing documents subject to the privilege -- subject --

20         THE COURT:  I can't hear you at all, Attorney

21   Romney.  You have to speak into the microphone.

22         MR. ROMNEY:  Very sorry, Your Honor.

23         THE COURT:  That's okay.

24         MR. ROMNEY:  What I was attempting to say is,

25   given that we're about to be going over documents covered by

1   the protective order, presumably these documents will be

2   submitted under seal, I would ask that we clear the

3   courtroom to the extent there are people here that are not

4   parties to the protective order.

5          THE COURT:  We're going to be asking questions

6   specifically about the confidential nature of the documents?

7          MR. LUFT:  I don't believe so, Your Honor, but

8   I -- they -- look, many parties in this case have, as a de

9   facto thing, stamped confidential on everything they send to

10  us.  I don't think that there's anything more confidential

11  about what we're looking at than anything else we've been

12  talking about today, Your Honor, but that's where we are.

13         MR. ROMNEY:  For the record, these are not

14  documents that Hudson Diamond Holdings has -- or New York

15  has stamped confidential.  We've never seen these documents

16  before today.  My, I guess, sort of just point was, given

17  that we were not permitted to share them with Attorney

18  Twardy until he put on the record that he was being subject

19  to it, presumably that should operate for everyone else in

20  the courtroom to the extent that we're getting into the

21  substance of the documents.

22         I have no idea what Attorney Luft is going to be

23  asking, so to the extent he's not getting into the substance

24  of the documents, I suppose that's not necessary.  But I was

25  just trying to protect the process, Your Honor.  That's --

1          THE COURT:  Understood.

2          Attorney Luft, what are you planning on doing?

3          MR. LUFT:  Your Honor, I do plan to ask about the

4    contents of the documents.  I believe they are of a piece

5    with other questions I have been asking for the past few

6    hours.  They are, you know, bank documents.

7          I assume to the extent that there is -- they

8    asserted confidentiality it is because -- you know what?  I

9    don't even want to make an assumption.  I would guess it was

10   for their client as a matter of course.  But I'm not in

11   their head, Your Honor.

12         I will ask about the contents.  I don't know if

13   that information is confidential.  As I said, I've been

14   asking questions about Hudson Diamond Holdings' bank

15   accounts for a while.  And, quite frankly, the answer to --

16   has been an assertion of the fifth amendment to --

17   invariably.  And I will not be surprised if that's the way

18   we continue.  But that's what I plan to do, Your Honor.  I

19   don't have an opinion as to whether the Court needs to be

20   cleared.

21         THE COURT:  All right.  Thank you.  I'm just

22   taking a look at this for a moment.

23                      (Pause)

24         THE COURT:  So I'm looking at paragraphs -- well,

25   I'm looking at a number of paragraphs, but the paragraph I'm

1    looking at at the moment in the protective order is

2    paragraph 14, use of discovery materials in open court.  It

3    says, "The limitations on disclosure in this order shall not

4    apply to any discovery materials offered or otherwise used

5    by any party at a trial or any hearing held in open court

6    except as provided in this paragraph.  Whenever practicable,

7    as part of any pretrial conference or any meet and confer

8    regarding the use of exhibits in any evidentiary hearing or,

9    if not practicable, prior to the use of any designated

10   material at trial or any hearing to be held in open court,

11   counsel for any party who desires to offer or use such

12   designated material at trial, at hearing to be held in open

13   court shall meet and confer in good faith with the producing

14   party" -- so I don't know who produced this document to you,

15   but anyway -- "to discuss ways to redact the designated

16   material so that the material may be offered or otherwise

17   used by any party in accordance with the provisions of the

18   Bankruptcy Code and Bankruptcy Rules.  If the parties aren't

19   able to resolve a dispute related to such designated

20   material, the producing party shall bear the burden of

21   requesting appropriate relief from the court.  Until the

22   court rules on such an issue, the designated materials shall

23   continue to be treated according to its designation and in

24   accordance with the terms of this order."

25            So is there any ability to redact this document?

1          MR. LUFT:  Your Honor, quite frankly, and this is

2     on me, I don't know if -- I mean, I could redact what I

3     don't care about, but I don't know if that would address the

4     confidentiality issue.  I don't -- I guess Capital One is

5     the entity that produced the documents, right?  Again, they

6     did it on behalf of -- presumably on behalf of Hudson

7     Diamond New York.

8          We have this circle here where no one is willing

9     to say that they are Hudson Diamond New York.  So if counsel

10    here is willing to speak on behalf of Hudson Diamond New

11    York, we can figure out how to redact the document.

12    Otherwise, Your Honor, I can't tell you how it's supposed to

13    be redacted no behalf of Hudson Diamond New York or Capital

14    One.

15         So and I didn't have a chance to speak with

16    Capital One bank about this.  I apologize for that.

17                    (Counsel confer)

18         MR. LUFT:  Your Honor, I don't mean to disturb

19    you, but Trustee Despins had a suggestion which I'm happy to

20    share with the Court.

21         THE COURT:  Go right ahead.

22         MR. LUFT:  I'm not a fortune teller, but my guess

23    is that I would not be shocked if I heard an assertion of

24    the fifth amendment to the questions I'm going to ask given

25    the way the rest of the day has gone.  I can try -- I am

1    not -- I think there's a realistic possibility that we may

2    never have to confront that issue.  And I can try to -- I

3    have to make some reference to the document to direct the

4    witness in my questions, but the idea of redacting, I can

5    try to be -- you know, not be overt about the contents if

6    possible.

7         I mean, again, I can't guess as to what they're

8    going to do, but --

9         MR. TWARDY:  No, you guessed right.  Your Honor,

10   again, I've just seen these literally within the last five

11   minutes.  But I will be instructing my client to invoke the

12   fifth amendment.  Is there a way this can be done so the

13   documents are filed under seal and just a -- you know,

14   marked into evidence and, you know, then just verify what's

15   on there, do it that way?

16        MR. LUFT:  I have to ask your client questions

17   about it, but --

18        THE COURT:  Well, to answer your question,

19   Attorney Twardy, yes, these documents can be filed under

20   seal.  That's the -- that's easy.  I mean, insofar as the

21   protective order already anticipates that in some respect.

22   And these documents are -- been marked as highly

23   confidential.

24        So then the issue becomes what questions are you

25   going to ask.  And I'm not asking you to tell me, right?

1    That's not what I'm doing.

2         MR. LUFT:  Sure, Your Honor.

3         THE COURT:  I'm talking about the issue.  Okay?

4    What questions are you asking, and what questions are -- and

5    what information will be revealed in those questions.

6         If you're asking questions about the existence or

7    recognition of a document, that's one thing, I think.

8    Because the documents will be filed under seal.  But if

9    you're asking questions specifically about what's contained

10   in the documents, then we might have to figure -- you know,

11   we're going to have to figure out how to deal with that.

12        MR. LUFT:  That's fair, Your Honor.  I am going to

13   ask more than just recognition of the documents.  Like I

14   said, I can try to be discrete in terms of referring to

15   entity on this line, do you see the amount of money

16   referenced here, something like that as opposed to stating

17   what the amount of money is.

18        THE COURT:  Well, I think you'd have to do that at

19   the very least, right?  Otherwise, you get into --

20        MR. LUFT:  That's what I'm trying to --

21        THE COURT:  -- an issue of disclosing the

22   confidential information.

23        MR. LUFT:  Right.  So if that would work, Your

24   Honor --

25        THE COURT:  Well, let me ask Attorney Twardy.  Are

1    you -- let's just make an assumption here that I would grant

2    a motion to seal these documents.  Are you opposing that

3    these -- that these documents be introduced in any way,

4    shape, or form as part of a motion to seal?

5            MR. TWARDY:  Not at all, Your Honor.

6            THE COURT:  Okay.

7            MR. TWARDY:  This is all part of their case.

8            THE COURT:  Okay.

9            MR. TWARDY:  And they can do what they want.  I

10   don't know about counsel for Hudson, but I don't have a

11   problem with it.

12           THE COURT:  Well, we're talking about -- okay.

13   That's fair.  So, so far we have an agreement with Ms. Guo's

14   criminal counsel that he's not going to oppose a motion to

15   seal, right, so that these documents would be under seal.

16           Attorney Wernick, you have an opposition to these

17   documents being filed under seal?

18           MS. WERNICK:  Not being filed under seal.

19           THE COURT:  So you have no opposition, correct?

20           MR. LUFT:  To the documents being filed under

21   seal, correct.

22           THE COURT:  Okay.  So that takes care of one

23   problem, which is this, the documents will be filed under

24   seal unless and until they're no longer sealed because of

25   the protective order provisions.  And those provisions have

1    been in place since October of 2022.  So that, I think,

2    makes it a little simpler.

3          Now we get to what are your questions.  And if

4    your questions do anything to -- if you want to -- if you

5    would like to ask questions about specific information that

6    is not just being read or acknowledged, then I think we have

7    an issue.  I understand that Attorney Twardy has already

8    said he's going to ask -- instruct his client to invoke the

9    fifth amendment, which is absolutely fine.  But you also

10   have the right to ask those questions to have her invoke the

11   fifth amendment.  So that's not a problem either.

12         So I think you have to decide -- and if you want

13   to take a few minutes, you know, I don't have a problem with

14   that -- how you want to ask -- or formulate those questions

15   in order to avoid any issues.  I'm happy to have you do

16   that.  But I also can have you proceed based -- however you

17   want to proceed at this point.

18         MR. LUFT:  Thank you, Your Honor.  Look, I'm happy

19   to push ahead at this point.  I want to ask -- I think I

20   need to ask the questions that I need to ask.

21         THE COURT:  All right.  Before you ask -- I'm

22   sorry.  When you're done, I just want to say something

23   before you start asking any questions.  Okay?

24         MR. LUFT:  Of course, Your Honor.  And I -- just

25   so we're all level set, I have a couple questions before we

1    get to these last couple --

2             THE COURT:  Okay.

3             MR. LUFT:  -- that involve this.  Look, I want to

4    make sure this is done right.  I'm not a big fan of sealing

5    the courtroom, but if that's the right thing to do at this

6    point, Your Honor, to make sure that we can get a clear

7    record and everyone can -- especially with the language

8    barrier, that everyone can follow my questions, then we

9    should just do that.

10            Otherwise, I know how to ask questions to leave

11   out specifics.  But if that's going to just lead to a

12   confusing record, then I think the better part of valor is

13   to just move ahead and let us ask the questions with the

14   room sealed.  I don't believe it'll be more than five

15   minutes' worth of questioning on that.

16            THE COURT:  So you're saying you would agree --

17   you would like everyone else to leave the room who's not --

18   to leave the courtroom who's not subject to the protective

19   order.  Is that what you're saying?

20            MR. LUFT:  I think so, Your Honor, if it means

21   that we can get a clear record and have a --

22            THE COURT:  All right.  Well, we're not there yet.

23            MR. LUFT:  Okay.

24            THE COURT:  But you're going to have to tell me

25   when we're there.  So before you start --

1          MR. LUFT:  Okay.

2          THE COURT:  -- asking any other questions --

3          MR. LUFT:  I will -- yes.

4          THE COURT:  -- I -- you've made an oral motion to

5    seal apparently three documents?

6          MR. LUFT:  Yes, Your Honor.

7          THE COURT:  Okay.  I don't know what they are,

8    obviously.  There's no opposition from corporate counsel or

9    from individual counsel to that motion to seal.  And

10   under -- after looking again at the protective order, which

11   I did when we were on -- when we took a recess, I think

12   that's the appropriate way to proceed with regard to these

13   documents.

14          So the motion to seal is going to be granted.  You

15   obviously have to -- you've made an oral motion.  I'll enter

16   an order with regard to that.  But those documents are going

17   to have to be filed under seal.

18          You understand that.  I understand you understand

19   that.  But I'm just making the record.  You're going to --

20          MR. LUFT:  Thank you, Your Honor.

21          THE COURT:  After the conclusion of today's

22   hearing, you're going to file those documents under seal.

23          MR. LUFT:  Yes, Your Honor.

24          THE COURT:  Okay?  Then when we get to the point

25   where you're going to ask questions about the documents,

1    even if the witness is instructed to assert the fifth

2    amendment privilege, we will have to close the courtroom and

3    seal that part of the hearing, which will remain under seal

4    until further order of the Court in order to protect the

5    integrity of the protective order and the process that's

6    been in place in this case for quite some time.  Okay?

7              MR. LUFT:  Thank you, Your Honor.

8              THE COURT:  Does anybody -- Attorney Wernick, do

9    you have any questions about what I just said?

10             MS. WERNICK:  No.  We understand --

11             THE COURT:  Okay.

12             MS. WERNICK:  -- the procedure, Your Honor.

13             THE COURT:  Say that again.

14             MS. WERNICK:  We understand the procedure, Your

15   Honor.

16             THE COURT:  Okay.  Thank you.

17             Attorney Twardy?

18             MR. TWARDY:  Yes, Your Honor.

19             THE COURT:  That's fine with you?

20             MR. TWARDY:  Yes, Your Honor.

21             THE COURT:  Okay.  Fine.

22             All right.  Then you please proceed, Attorney

23   Luft.

24             MR. LUFT:  Thank you, Your Honor.

25                  CROSS-EXAMINATION CONTINUED

1    BY MR. LUFT:

2    Q    Ms. Guo, I wanted to clarify.  Earlier I had asked you

3    if you had your iPhone on you.  Do you recall that?

4    A    I remember.

5    Q    Did you bring your iPhone with you to the courthouse

6    today?

7    A    No.

8    Q    Is anyone who is working for you holding your iPhone

9    today?

10   A    No.

11   Q    Okay.  Ms. Guo, has Hudson Diamond Holdings, LLC

12   transferred money to HK USA?

13          MR. TWARDY:  Your Honor, I'm going to instruct my

14   client to invoke the fifth amendment.

15          THE WITNESS:  Fifth amendment.

16          MR. LUFT:  Same objection, Your Honor.

17   BY MR. LUFT:

18   Q    Did --

19          THE COURT:  Just state that -- I'm so sorry to

20   make you do it, but remember --

21          MR. LUFT:  Of course.

22          THE COURT:  -- we only have audio.

23          MR. LUFT:  No, that's fair, Your Honor.

24          THE COURT:  And I don't want to hear some

25   transcript -- because you know what's going to happen.

1   We're going to have a transcript, and there's going to be

2   holes in it.  So --

3          MR. LUFT:  Absolutely.

4          THE COURT:  So I'm -- I know that I understand

5   you're making that same objection, but the transcriber is

6   not going to.

7          MR. LUFT:  Your Honor, my objection is to the

8   assertion of the fifth amendment to the extent I believe

9   that the witness has opened up these issues both in her

10  declaration as well as statements that her counsel has made

11  to this court in connection with this ongoing contempt

12  proceeding and the motion to compel that came before it.

13         THE COURT:  Thank you.

14         MR. LUFT:  Okay.

15  BY MR. LUFT:

16  Q   Ms. Guo, did Hudson Diamond New York transfer money to

17  HK USA?

18         MR. TWARDY:  Your Honor, I'm going to instruct my

19  client to invoke the fifth amendment.

20         THE WITNESS:  Fifth amendment.

21  BY MR. LUFT:

22  Q   And did Hudson Diamond pay for the expenses of the Lady

23  May?

24         MR. TWARDY:  Your Honor, I'm going to ask my

25  client to invoke the fifth amendment, please.

1        THE WITNESS:  Fifth amendment.

2   BY MR. LUFT:

3   Q    And did -- was Hudson Diamond paying the expenses for

4   the Lady May in 2023?

5        MR. TWARDY:  Your Honor, I'm going to request my

6   client to invoke her fifth amendment rights.

7        THE WITNESS:  Fifth amendment.

8   BY MR. LUFT:

9   Q    And has Hudson Diamond New York been paying the

10  expenses for the Lady May?

11       MS. WERNICK:  And, Your Honor, I'm going to object

12  ono the basis of relevance.

13       THE COURT:  Overruled.

14       MR. TWARDY:  Your Honor, I'm going to request my

15  client to invoke her fifth amendment rights.

16       THE WITNESS:  Fifth amendment.

17  BY MR. LUFT:

18  Q    And has Hudson Diamond New York's payment of expenses

19  for the Lady May been done at the direction of your father,

20  the debtor?

21       MR. TWARDY:  Your Honor, I'm going to instruct my

22  client to invoke her fifth amendment rights.

23       THE WITNESS:  Fifth amendment.

24  BY MR. LUFT:

25  Q    And, Ms. Guo, who was the owner of the Lady May on

1    March 1, 2023?

2              MS. WERNICK:  Your Honor, objection again to the

3    extent that this is far beyond the scope of the direct

4    testimony and the nature of the proceeding today.

5              THE COURT:  Overruled.

6              MR. TWARDY:  Your Honor, I'm going to request my

7    client to invoke her fifth amendment rights.

8              THE WITNESS:  Fifth amendment.

9    BY MR. LUFT:

10   Q    Okay.  Ms. Guo, does Hudson Diamond Holdings, LLC pay

11   for the expenses in connection with the Bombardier jet that

12   is the subject of the adversary proceeding against you?

13             MS. WERNICK:  Your Honor, same objection as to

14   relevance.

15             THE COURT:  Overruled.

16             MR. TWARDY:  Your Honor, I'm going to request my

17   client to invoke her fifth amendment rights as --

18             THE WITNESS:  Fifth amendment.

19   BY MR. LUFT:

20   Q    And the actual owner of that Bombardier jet is, in

21   fact, your father, the debtor, correct?

22             MR. TWARDY:  Your Honor, I'm going to request my

23   client to invoke her fifth amendment rights.

24             THE WITNESS:  Fifth amendment.

25   BY MR. LUFT:

1    Q    Ms. Guo, does Hudson Diamond Holdings, LLC send money

2    to Whitecroft?

3              MR. TWARDY:  Your Honor, I'm going to request my

4    client to invoke her fifth amendment rights.

5              THE WITNESS:  Fifth amendment.

6    BY MR. LUFT:

7    Q    And Hudson Diamond New York sends money to Whitecroft,

8    correct?

9              MS. WERNICK:  Your Honor, same objection.

10   Continue objection as to relevance.

11             THE COURT:  Overruled.

12             MR. TWARDY:  Your Honor, I'm going to request my

13   client to invoke her fifth amendment rights.

14             THE WITNESS:  Fifth amendment.

15   BY MR. LUFT:

16   Q    Ms. Guo, where are the documents related to the funds

17   Hudson Diamond has transferred to entities associated with

18   your father and your family?

19             MS. WERNICK:  Objection.  Assumes facts not in

20   evidence.

21             THE COURT:  Overruled.

22             MR. TWARDY:  Your Honor, I would request my client

23   to invoke her fifth amendment rights.

24             THE WITNESS:  Fifth amendment.

25   BY MR. LUFT:

1   Q    And who controls Whitecroft, you or your father?

2          MS. WERNICK:  Objection, Your Honor.  There's a

3   separate adversary proceeding relating to Whitecroft.  This

4   is really getting very far beyond the scope of the order to

5   show cause and the -- Ms. Guo's direct testimony today.

6          THE COURT:  How is it beyond her direct testimony

7   when she testified in her declaration that she's the sole

8   managing member and -- of Hudson Diamond Holdings, LLC and

9   that she operates that business?  How is that beyond the

10  scope?  You --

11         MS. WERNICK:  So the question --

12         THE COURT:  It may be that she doesn't know the

13  answer, but that doesn't mean it's beyond the scope.

14         MS. WERNICK:  Well, I -- I'm -- the question as I

15  heard it related solely to the entity Whitecroft.

16         THE COURT:  I heard it too.  I don't see how

17  that's beyond the scope of a Rule 2004 examination and the

18  subpoena that requested certain information.  So I just -- I

19  overrule your objection.

20         MR. TWARDY:  I would request my client to invoke

21  her fifth amendment rights.

22         THE WITNESS:  Fifth amendment.

23         MR. LUFT:  Okay.  Your Honor, I think we may be at

24  that point where we need to seal the courtroom.

25         THE COURT:  All right.  Before we do that, I have

1  to talk to the translator in a sec.

2          Go ahead.  You have to understand something that

3  you might not understand at this point, which is the only

4  people that can stay in this courtroom are the lawyers --

5  right now for certain questioning -- the lawyers who are

6  bound by the protective order and then the court staff.  And

7  you have to be bound by that confidentiality.  And you have

8  to acknowledge that you'll be bound by that confidentiality.

9          So could you just do that for me, please?  Because

10  it's important.  We have a -- an order in place that

11  requires this -- until there's an order otherwise that this

12  information would be -- would remain confidential.  So I

13  need you to just acknowledge on the record that you will --

14  any information or questioning that is occurring when this

15  hearing is sealed that you will be bound by that

16  confidentially --

17          THE INTERPRETER:  Yes.

18          THE COURT:  -- confidentiality.

19          THE INTERPRETER:  Yes, I do, Your Honor.  And,

20  also, the interpreter abide by the general confidentiality

21  rules for the court.

22          THE COURT:  Thank you.

23          THE INTERPRETER:  Thank you.

24          THE COURT:  I appreciate that.

25          Now, what we're going to have to do, everyone

1    who's in the courtroom who's not a lawyer that's bound by

2    the protective order or a party bound by the protective

3    order, is you're going to have to leave the courtroom.

4    We're going to have a sealed hearing.

5            Which, Mr. Luft, I think you've said you think --

6    well, I -- we don't know, but we think this isn't going to

7    take substantial amount of time.

8            MR. LUFT:  No.

9            THE COURT:  And we also think that Mr. Twardy is

10    going to instruct his client to invoke the fifth amendment

11    privilege at certain points as well.

12           Once the hearing is -- once the sealed portion of

13    the hearing is over, then someone's going to have to go out

14    to the people -- I'm going to -- well, I guess I'll ask

15    staff or someone to go out to the people that they can come

16    back in.  There will be a continued public hearing at that

17    point.  Okay?  Does everyone understand that?  Okay.

18           MR. LUFT:  Yes, Your Honor.

19           THE COURT:  Okay.  Thank you.  I'm looking in the

20    courtroom, and it appears to me that everyone who's in this

21    courtroom is bound by the protective order.  If someone

22    thinks otherwise, I need you to state that for the record

23    immediately, please, so that it's clear.

24           MS. CLAIBORN:  Your Honor, Holley Claiborn for the

25    U.S. Trustee.  To be technical, the U.S. Trustee is not a

1    party to the confidentiality order.  We have not signed the

2    confidentiality order.  But pursuant to Section 107 of the

3    Bankruptcy Code, the U.S. Trustee's presence is permitted

4    during a sealed hearing.

5           THE COURT:  I think that was hard to hear, but I

6    know what you said, so I'm going to say it again for

7    everyone.  Okay?  Which is Section 107 of the Bankruptcy

8    Code allows the Office of the United States Trustee to

9    participate in any proceeding, even if a proceeding is a

10   matter of confidentiality, without having to be bound by an

11   order, because they are an arm of the Department of Justice,

12   and they are governed by the Department of Justice.  They're

13   an agency of the Department of Justice.

14          So that it's clear, I agree with you, Attorney

15   Claiborn, that you are allowed to remain in this courtroom

16   even though we -- we're going to seal the record.

17          And the courtroom deputy will -- what we will do,

18   and we can do, is as soon as I stop talking, which will be

19   soon, believe me, then you're going to seal the recording.

20   Okay?  And we'll start, and then there'll be a point when we

21   say, okay, now you can stop sealing the record, and then

22   we'll reopen the record for the public when they can come

23   back in.  Because I'm sure people are going to make closing

24   arguments or whatever they're going to do.  Okay?

25          So but I agree with -- that the U.S. Trustee's

1    Office -- that Bankruptcy Code Section 107 allows the

2    bankruptcy -- allows the United States Trustee to

3    participate -- it's actually 107(b)(3) -- United States

4    Trustee, bankruptcy administrator, trustee, and any other

5    servicer under this shall have full access to all

6    information and shall not disclose information specifically

7    protected by the court under this title.  And it's

8    specifically protected by the Court under this title in

9    connection with the protective order.

10           All right.  Does anybody else want to say anything

11    before I instruct the courtroom deputy to seal the record?

12    Okay.

13           I would ask you to seal -- begin the recording as

14    sealed, please, at this point in time, and keep it sealed

15    until further instructions that we can go back on a public

16    record.  Okay?  Thank you.

17           (Record sealed at 5:31 p.m. to 5:54 p.m.)

18           THE COURT:  All right.  So are the parties -- did

19    the parties want to make closing statements?  Plaintiff?

20    Not the plaintiff.  This was an order to appear and show

21    cause regarding Hudson Diamond Holding, LLC, and Ms. Guo.

22    So you can proceed, Ms. Wernick, first, if you'd like to

23    make a closing statement.

24           MS. WERNICK:  Thank you, Your Honor.  Very

25    briefly.  As set forth in Ms. Guo's declaration, Ms. Guo and

1    Hudson Diamond Holding took reasonable steps to comply with

2    the subpoena, many of which I participated with Ms. Guo in

3    terms of searching through email, searching through mobile

4    applications, searching through phone numbers, going to

5    Capital One bank and making requests for the record

6    specifically sought for by the subpoena.  We --

7         MR. LUFT:  Objection, Your Honor.  She's

8    testifying now.

9         THE COURT:  Yes, she is.  So it's okay.  Go right

10   ahead.  Go ahead.

11        MS. WERNICK:  I'm -- just in closing statements

12   and repeating the information that was previously submitted

13   in Ms. Guo's declaration.  Reasonable steps were taken to

14   comply with the subpoena.  Documents that were found

15   responsive to the subpoena were produced to the trustee.

16   There is no basis for contempt under the record that's

17   before the Court.

18        And we'd otherwise submit on the papers with an

19   understanding that the trustee may look to submit further

20   applications in writing which we reserve the right to

21   respond to.

22        THE COURT:  Okay.  Thank you.

23        Mr. Luft?

24        MR. LUFT:  Thank you, Your Honor.  May I approach?

25        THE COURT:  Yes, you may.

1          MR. LUFT:  Your Honor, I'll be brief, because this

2     has been a long day.  I find it -- the idea that they took

3     reasonable steps when they filed a declaration that almost

4     invariably Ms. Guo was instructed to assert the fifth as to

5     the basis for almost every question I asked her about it is

6     completely unsupported, if not -- if only because she

7     asserted the fifth amendment when I tried to probe on most

8     of those questions.

9          I think it's very clear from the record that

10    Hudson Diamond Holdings -- every document we see indicates

11    that it wholly owns Hudson Diamond New York.  Ms. Guo took

12    actions for years on behalf of Hudson Diamond New York,

13    including withdrawing money, signing bank accounts, signing

14    corporate documents.  And now they are refusing to produce

15    documents about Hudson Diamond New York for a claim that

16    Ms. Guo was not able to substantiate in any way today that

17    somehow Hudson Diamond Holdings isn't the owner of Hudson

18    Diamond New York despite having all evidence to the

19    contrary.

20         I think that it is quite clear that they have not

21    taken reasonable steps to try to comply with the subpoena.

22    They have cost the estate an astonishing amount of money in

23    terms of how long we've had to pursue their compliance.

24    This is a subpoena that I believe was served in December.

25    We are here in August.

1      We have had multiple hearings, including two extra

2   just relating to the confusion with regard to whether or not

3   they even hired counsel.  The trustee has been diligent.

4      And at the end of the day, we get here, which is

5   you heard Ms. Guo tell you, to the extent she was allowed to

6   say anything, that she has produced two documents.  We have

7   no documents from Hudson Diamond New York.  Clearly, there

8   are significant assets that are moving through Hudson

9   Diamond New York such that documents had to have been

10  created, whether they are for ownership of a car, real

11  estate transactions, multi-million dollars going through the

12  account.  And we are getting none of it.

13     So they -- look, they seem content to allow

14  contempt rulings.  And if -- and I think the idea is that

15  there'll be no one that we can try to enforce it upon.  But

16  we know who we should be enforcing it on.

17     Ms. Guo clearly controls Hudson Diamond Holdings.

18  Hudson Diamond Holdings clearly controls Hudson Diamond New

19  York.  So I believe contempt should be found.

20     But I'm also going to ask, because I do not

21  believe they have made any effort to do this yet, that they

22  should be forced to go find Hudson Diamond New York's

23  documents and turn them over to the trustee.  And that

24  should include the bank accounts.  This testimony or lines

25  that somehow Ms. Guo's name is not on that Capital One bank

1   account is clearly false.  We saw the document.

2          So, Your Honor, I'll rest there.  But I believe a

3   contempt is proper, and I really -- and we really need the

4   documents.  I'd ask that they be forced to produce the

5   documents for Hudson Diamond New York.  Thank you, Your

6   Honor.

7          THE COURT:  Thank you.

8          MS. WERNICK:  Your Honor, a brief rebuttal?

9          THE COURT:  Brief.

10          MS. WERNICK:  All right.  What we heard from

11   Mr. Luft's presentation just now was almost nothing at all

12   about Hudson Diamond Holdings, LLC, which was the entity we

13   were compelled to appear for here today.  It was almost

14   entirely with regards to Hudson Diamond New York, an entity

15   which I believe has already been held in contempt with

16   respect to the separate subpoena that was served on that

17   entity.

18          That's not the subject of this proceeding.  Your

19   Honor already made a determination with respect to the New

20   York entity.  Which, again, none of us here today represent

21   the New York --

22          THE COURT:  Well, Mr. Romney still does unless and

23   until his motion to withdraw is granted.  So that's not

24   accurate.

25          MS. WERNICK:  All right.  My apologies, Your

1    Honor.  I certainly don't represent Hudson Diamond --

2         THE COURT:  I understand.

3         MS. WERNICK:  -- New York.  And when Mr. Luft

4    refers to some sort of extraordinary amount of evidence

5    connecting New York with Holdings, all that I've seen in the

6    proceeding today is a single document that was apparently

7    produced by the same law firm that told Mr. Vartan and

8    Mr. Romney that there was not a connection between the two.

9         And so, certainly, when Your Honor is considering

10   what this motion appears to really be about, to try to bring

11   back in New York, which I don't represent, which Hodgson

12   Russ is saying Ms. Guo wasn't the member of, we can sort of

13   short-circuit their burden of proof by just saying there's

14   an abundance of evidence connecting the two when there's one

15   document where the law firm that prepared the document says

16   the entities are not related.

17        So I'd rest with that.

18        THE COURT:  Thank you.

19        MR. LUFT:  Your Honor, I'll be brief.  If I may

20   approach?

21        THE COURT:  Yes.

22        MR. LUFT:  First of all, Ms. Wernick says she

23   doesn't represent Hudson Diamond New York.  If you read

24   Mr. Romney's declaration, he makes it very clear that

25   Ms. Guo hired both Attorney Vartan and Mr. Romney.  I don't

1    know if Ms. Wernick is being very specific that not her --

2    that her firm wasn't hired but only Mr. Vartan.  But

3    certainly Mr. Vartan was hired from her law firm.  So the

4    idea that they don't represent them is not true.

5        They say there was a single document.  I don't

6    know which one of the multiple documents we showed is the

7    single document, but we saw Mei Guo signing for a document.

8    We saw her signing a bank account on behalf of Holdings --

9    on behalf of New York.  We signed (sic) her signing as the

10   sole member of Holdings for New York.  And we've heard

11   countless testimonies in which Mr. -- Ms. Guo invoked the

12   fifth.

13       And I should have said this before, Your Honor.  I

14   absolutely think an adverse inference should be drawn from

15   all those fifth amendment assertions.  We came here today to

16   try to get information.  That was the point of Ms. Guo

17   coming here, to understand something.  Instead, we were

18   stonewalled with the fifth amendment.

19       Finally, as to the argument that I only spoke

20   about Hudson Diamond New York, I believe Your Honor has

21   ruled on this maybe 19 times when Ms. Wernick made the same

22   objection before.  As Your Honor has pointed out to them and

23   as I've showed, the definition for Hudson Diamond Holdings'

24   subpoena clearly included all affiliates and all the other

25   various terms we used which clearly included Hudson Diamond

1    New York.

2         Hudson Diamond Holdings is the parent company.  It

3    has an obligation to produce -- make sure its subsidiary is

4    in compliance.  They are clearly an affiliate.  They should

5    have produced the documents.  So my objection is not

6    improper, and it's -- and my asking for contempt as to

7    Holdings based on the fact that we've received nothing from

8    New York is completely on point for the subpoena we served.

9         Thank you, Your Honor.

10        THE COURT:  Thank you.

11        All right.  The matter before the Court, the order

12   to appear and show cause, we've -- I've heard argument

13   today.  And there's been an invocation of the fifth

14   amendment as it relates to Ms. Guo individually.  I

15   indicated during the hearing that if the trustee wants to

16   file documents with regard to whether or not that invocation

17   of the fifth amendment is proper, you're entitled to do so.

18   And you can do so.  I'm not going to set any deadline,

19   because you'd have to order a transcript and determine what

20   you want to do.

21        With regard to whether or not Hudson Diamond

22   Holdings, LLC will be held in contempt of court, the Court

23   will take that matter under advisement.

24        There is no further business of the Court today.

25   I'm not going to -- yeah.  I'm not going to address any

1    other issues today.

2              There are some issues that are outstanding on the

3    trustee's side of the equation that have nothing to do with

4    this matter, including a motion that I -- and you'll just --

5    there'll be a virtual order entered, and you'll take

6    whatever action you need to take.  You're looking for

7    some -- an order on a subpoena that I -- the subpoena

8    already had a specific period of time in it to serve out

9    foreign defendants.

10             But there was a request for an order.  I don't

11   know if you need that request.  So we're going to issue some

12   order that you can then respond to whether or not you

13   actually need an order or if you can just rely on the

14   subpoena yourself -- theirselves (sic).

15             MR. LINSEY:  I believe that there was a motion

16   filed requesting an answer deadline with respect to the

17   Golden Spring entity.

18             THE COURT:  And the subpoena has that time frame

19   in it.

20             MR. LINSEY:  The subpoena -- this was an -- the

21   answer for the Golden Spring adversary complaint was what

22   I --

23             THE COURT:  And I think the answer -- the subpoena

24   has that time frame --

25             MR. LINSEY:  Oh, you mean the summons has that?

1          THE COURT:  Did I say subpoena?  Sorry.

2          MR. LINSEY:  You did.  That's why I was confused.

3          THE COURT:  We've been talking about a subpoena

4     all day.  I apologize.  I apologize.  My mistake.

5          MR. LINSEY:  Understood.

6          THE COURT:  The summons.

7          MR. LINSEY:  We'll look to that, Your Honor.

8          THE COURT:  Okay.

9          MR. LINSEY:  Thank you.

10          THE COURT:  The summons.  I apologize.

11          MR. LINSEY:  Thank you.

12          THE COURT:  We've been talking about --

13          MR. LINSEY:  Yeah.  Understood.

14          THE COURT:  -- a subpoena all day.  I apologize.

15          Okay.  There's no further business for the Court

16     today then.  Thank you, all.  Court is adjourned.

17          MR. LUFT:  Thank you, Your Honor.

18          THE COURTROOM DEPUTY:  All rise.  Court is

19     adjourned.

20          (Proceedings concluded at 6:04 p.m.)

21

22

23

24

25

1

2          I, CHRISTINE FIORE, court-approved transcriber and

3     certified electronic reporter and transcriber, certify that

4     the foregoing is a correct transcript from the official

5     electronic sound recording of the proceedings in the

6     above-entitled matter.

7

8

9     _____          September 5, 2023

10        Christine Fiore, CERT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              INDEX

2        WITNESS

3        FOR THE

4        TRUSTEE:              Direct    Cross    Redirect   Recross

5        Mei Guo               --        9

6

7        TRUSTEE'S

8        EXHIBITS:                                    ID      Received

9        1     Subpoena                               16      17

10       2     Mei Guo Declaration                    40      41

11       3     Hudson Diamond New York Consent        45      50

12             Of Sole Member

13       4     Caldwell Banker Real Estate Agreement  70      72

14

15

16

17

18

19

20

21

22

23

24

25