## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

-------------------------------------------------------x
:
In re: : Chapter 11
:
HO WAN KWOK, *et al.*,[1] : Case No. 22-50073 (JAM)
:
Debtors. : (Jointly Administered)
:
-------------------------------------------------------x

### SUPPLEMENT IN FURTHER SUPPORT OF GENEVER HOLDINGS LLC'S MOTION, PURSUANT TO BANKRUPTCY CODE SECTION 363(b), FOR ENTRY OF ORDER AUTHORIZING GENEVER HOLDINGS LLC TO OBTAIN SERVICES NECESSARY TO REMEDIATE AREAS OF SHERRY NETHERLAND APARTMENT AFFECTED BY MARCH 15, 2023 FIRE

Genever Holdings LLC (the "Debtor" or "Genever US"), by and through its undersigned

counsel, hereby files this supplement (the "Supplement") in further support of *Genever Holdings*

*LLC's Motion, Pursuant to Bankruptcy Code Section 363(b), for Entry of Order Authorizing*

*Genever Holdings LLC to obtain Services Necessary to Remediate Areas of Sherry Netherland*

*Apartment Affected by March 15, 2023 Fire*, dated August 23, 2023 [Docket No. 2113] (the

"Motion").[2]

### SUPPLEMENTAL STATEMENT

1. As noted in the Motion, Gallagher Bassett Services, Inc., Technical Services

Division ("GBTS") has conducted a survey of the area of the Sherry Netherland Apartment

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] Capitalized terms used but not otherwise defined in this Supplement have the meanings set forth in the Motion.

affected by the March 15 Fire (*i.e.*, the Affected Area).  That survey has revealed asbestos in certain of the pipe insulation, the heat shield behind the radiators, and the perimeter waterproofing tar on the walls.  Based on these results, ABF Environmental, Inc. ("<u>ABF</u>"), *i.e.*, Genever US's proposed contractor to remove the asbestos in the Affected Area, has prepared a work proposal setting forth the services to be provided, for a total cost of $48,900.[3]  As previewed in the Motion, Genever US hereby files a copy of this work proposal, which is attached hereto as **<u>Exhibit 1</u>** (the "<u>ABF Proposal</u>").

2.      In connection with the asbestos removal project, Genever US will also require certain related services, including air monitoring, removing radiators from the walls, and providing electric and water connection during the abatement work.  These services are not included as part of the ABF Proposal.  Accordingly, Genever US also seeks to engage:

  i.    GBTS to provide air monitoring and related services, including final clearance testing as well as preparing variance drawings[4] to be filed with the New York City building department, for an estimated total cost of $15,900;

  ii.    George Breslaw Plumbing, LLC ("<u>Breslaw</u>") to connect a temporary shower for the asbestos removal work as well as disconnect and, upon completion of the asbestos removal project reconnect radiators, for an estimated total cost of $7,350; and

---

[3]    Genever US is currently analyzing to what extent some of these costs (for example, the asbestos in the walls) is the responsibility of the Sherry Netherland and/or its insurer.  To the extent it is their responsibility, Genever US will seek payment from them for such costs.

[4]    A variance filing is necessary because, as noted, asbestos will need to be removed from the walls, which necessarily means that the plastic enclosure must include openings to allow for ABF to access the walls during the removal project.  Genever US understands that obtaining such approval from the New York City may take 4 to 6 weeks and that only after such approval has been obtained may the asbestos removal begin.  In order to minimize delays, Genever US has requested that GBTS begin the process of preparing the variance filing.

      iii.  GEM Contracting Management LLC ("<u>GEM</u>") to provide related electrical services, such as installing temporary electrical feeders to the various equipment required for the asbestos removal project, for an estimated total cost of $2,200.

Copies of the work proposals submitted by GBTS, Breslaw, and GEM are attached hereto as **<u>Exhibit 2</u>**, **<u>Exhibit 3</u>**, and, **<u>Exhibit 4</u>**, respectively.  Each of GBTS, Breslaw, and GEM have substantial experience working in the Sherry Netherland building and come recommended by Acheson Doyle, *i.e.*, Genever US's proposed architect for the Remediation Project.  In addition, GBTS is ideally situated to provide air monitoring services as well as prepare the necessary variance filing, given that they have already conducted the asbestos survey in the Affected Area.

      3.      To be clear, the Proposed Order already provides that Genever US would be able to engage contractors as may be necessary to remediate the Affected Area (including as it relates to the removal of asbestos).  That said, for the avoidance of doubt, Genever US has revised the Proposed Order to clarify that, if granted, it is authorized to obtain the aforementioned third-party services in connection with the asbestos removal project, as well as pay these service providers in the ordinary course of the Remediation Project, without further Court approval.  A copy of the revised Proposed Order is attached hereto as **<u>Exhibit 5</u>**.  A redline of the revised Proposed Order marked to show the changes to the proposed Order included with the Motion is attached hereto as **<u>Exhibit 6</u>**.

      4.      Finally, Genever US notes that, at the request of the United States Trustee, it has also clarified the revised Proposed Order to provide that nothing therein authorizes the retention or compensation of any attorneys.

[<i>Remainder of page intentionally left blank.</i>]

3

WHEREFORE, for the foregoing reasons, Genever US respectfully requests that the

Court enter the revised Proposed Order attached hereto as **Exhibit 5** granting the relief requested

in the Motion (as clarified by this Supplement).


Dated: September 8, 2023
      New York, New York


By: */s/ G. Alexander Bongartz*
Luc A. Despins (admitted *pro hac vice*)
G. Alexander Bongartz (admitted *pro hac vice*)
Douglass Barron (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
lucdespins@paulhastings.com
alexbongartz@paulhastings.com
douglassbarron@paulhastings.com

    *and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

    *and*

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for Genever Holdings LLC*

4

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
HO WAN KWOK, *et al*.,[1]                              :    Case No. 22-50073 (JAM)
                                                       :
                    Debtors.                           :    (Jointly Administered)
                                                       :
-------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 8, 2023, the foregoing Supplement

was electronically filed.  Notice of this filing was sent by e-mail to all parties to the above-

captioned chapter 11 case by operation of the Court's electronic filing ("CM/ECF") system or

by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic

Filing.  Parties may access this filing through the Court's CM/ECF system.

Dated:    September 8, 2023            By: */s/ G. Alexander Bongartz*
          New York, New York              G. Alexander Bongartz (admitted *pro hac vice*)
                                          PAUL HASTINGS LLP
                                          200 Park Avenue
                                          New York, New York 10166
                                          (212) 318-6079
                                          alexbongartz@paulhastings.com

                                          *Counsel for Genever Holdings LLC*

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
       Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
       Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The
       mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul
       Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho
       Wan Kwok (solely for purposes of notices and communications).

# EXHIBIT 1

## ABF Proposal



Tel: 973-777-0203

Fax: 973-777-8939

18 Hathaway St.
Wallington, NJ 07057

mbielawski@abfenv.com

August 28, 2023

Genever Holdings LLC
c/o Luc A. Despins, as Chapter 11 Trustee for the Estate of Ho Wan Kwok
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

**Re: The Sherry – Netherland, 781 Fifth Avenue**

Attn: G. Alexander Bongartz

ABF is pleased to submit our proposal to provide asbestos abatement work at the referenced premises.  Our quote includes union labor, material, paying NYCDEP, NYSDOL filing fee and NYCDEP variance fee, insurance and disposal of asbestos waste at an approved landfill.

**SCOPE OF WORK**

ABF will demolish 10 columns to obtain access to the pipes and remove 150 LF ACM insulation from the pipes, 100 SF ACM heat shields behind the radiators and 2000 SF ACM mastic from the walls located in suite 1801 of the referenced premises.

This asbestos abatement will be performed for the sum of Forty Five Thousand Seven Hundred Dollars ($45,700).

In addition ABF will reinsulate all pipes removed of asbestos for the sum of Three Thousand Two Hundred Dollars ($3,200).

**TOTAL PRICE for asbestos abatement and insulation – Forty Eight Thousand Nine Hundred Dollars ($48, 900).**

The Owner is required to provide air monitoring service, remove radiators from the walls, provide electric and water connection during the abatement work at no cost to ABF Environmental, Inc.
Pricing does not included sales tax (Client to provide Certificate of Capital Improvement or Tax Exempt Certificate).

If you have any questions, please contact me.

Sincerely,

Martin Bielawski
Operations Manager

AGREED BY

**<u>EXHIBIT 2</u>**

**GBTS Proposal**



September 7, 2023

**Genever Holdings LLC**
**c/o Luc A. Despins, as Chapter 11 Trustee for the Estate of Ho Wan Kwok**
**Paul Hastings LLP**
200 Park Avenue
New York, NY 10166
Attn: G. Alexander Bongartz, Paul Hastings LLP (via email: _alexbongartz@paulhastings.com_)

Re:      Environmental Consulting Services
         781 Fifth Avenue, Suite 1801
         New York, NY 10022
         GBTS Proposal No. 23005-0251-P2

Dear Mr. Bongartz:

Gallagher Bassett Services, Inc., Technical Services Division (GBTS) is pleased to submit this proposal to **Genever Holdings LLC c/o Luc A. Despins, as Chapter 11 Trustee for the Estate of Ho Wan Kwok (Genever Holdings)** to provide environmental consulting services in relation to the asbestos abatement work being conducted within Suite 1801 at 781 Fifth Avenue, New York, NY 10022 (Subject Property).

SCOPE OF WORK

**Task 1 – ATRU and Variance Drawings and Final Inspection for Filing**

**Task 2 – Third Party Air Monitoring**

Inspections of the abatement process
A properly certified/licensed project monitor/air sampling professional shall provide daily oversight of abatement activities for compliance with project specifications (if applicable) and local, state and federal requirements. Activities shall include:

1. The proper placement and collection of air samples as required;
2. The completion of daily construction logs which document contractor activities;
3. The recording of notes regarding non-conforming activities;
4. The verification that all engineering controls are in place; and
5. The review of daily air sampling results with the Senior Project Manager/Account Executive, client, and contractor.

Project Management
A Project Manager shall be assigned to each project and shall provide daily management support to the field technician(s) as well as daily interface with the contractor and client. Responsibilities of the Project Management team might include any of the following:

G. Alexander Bongartz
September 7, 2023
Page 2

1. Review contractor notifications and pre-construction (pre-abatement) submittals;
2. Review and establish the necessary insurance requirements;
3. Review contractor submitted Health and Safety Plans;
4. Review submittals during the abatement project;
5. Prepare contracts for asbestos abatement;
6. Prepare and review contractor schedule of values, review contractor applications for payment against pre-established schedules and recommend approval or modifications to same;
7. Mediate weekly on site meetings to discuss activities on site and prepare weekly meeting minutes for distribution to all parties;
8. Interface (including site inspections and correspondence) as required with all regulatory agencies;
9. Assist with the site management of site workers;
10. Assign certified/licensed asbestos professionals as required to adequately monitor the contractors abatement activities;
11. Assist in the verification of certifications for all workers on site;
12. Manage the air monitoring effort including daily review and distribution of the air sampling results;
13. Obtain copies of daily construction logs for review on a daily basis;
14. Coordinate all final work area inspections and acceptance;
15. Secure and issue "clearance letters" for each work area which has been cleared for re-occupancy;
16. Review and address accident reports if applicable;
17. Review all contractor Change Orders, if appropriate; and
18. Compile all of the site documentation to prepare a final close-out report.

**Air Monitoring**

Local, state and federal agencies have differing requirements as relates to air monitoring prior to, during and following abatement. When required, GBTS provides for this sampling using personnel certified/licensed by the states in which the work is executed. The sampling programs are designed in accordance with local, state, and federal requirements and normally involve air sample collection and analysis via Phase Contrast Microscopy (PCM), NIOSH Method 7400, Issue 3: 29 April 2019 or the latest edition. Phase Contrast Microscopy samples shall be analyzed by a laboratory proficient in the American Industrial Hygiene Association Proficiency Analytical Testing (AIHA PAT) Program or by an analyst who is a successful participant in the AIHA Asbestos Analyst Registry (AAR). For sample analysis via Transmission Electron Microscopy (TEM), laboratories shall be accredited under the National Voluntary Laboratory Accreditation Program (NVLAP) and shall certify that the analysis they performed was according to the protocol listed in Appendix A to Subpart E of 40 CFR 763. The maximum turnaround times for sample analysis and the reporting of results vary based on federal, state, and local requirements.

All sampling equipment shall be calibrated traceable to a primary standard. Pumps shall be recalibrated with a minimum of a secondary standard before and after each sample is collected. Records shall be kept of all calibrations and shall be part of the daily log.

<u>Pre-abatement Air Sampling (If Required)</u>
If required by local, state, and/or federal requirements, prior to commencement of work, air samples shall be collected for analysis by PCM and/or TEM. The sampling and analysis methodologies shall be governed as described above and consistent with state and local requirements. These samples shall be collected prior to the commencement of any abatement related activities in areas inside and outside of

G. Alexander Bongartz
September 7, 2023
Page 3

the proposed containment(s). Timing of the background sampling shall be consistent with the applicable regulations.

<u>Abatement Air Monitoring</u>
1. Samples shall be collected at locations in accordance with applicable regulations, including (if required):
   a. Outside the work area at critical barriers;
   b. In the clean room of the worker and waste decontamination units;
   c. On floors above and below the work area;
   d. At locations where negative air filtration devices (AFDs)/negative air machines (NAM) exhaust into tenant or occupied areas;
   e. At locations where AFDs exhaust to the ambient environment;
   f. Outside the building (ambient air samples); and
   g. For abatement personnel, if local or state regulations require.
2. Sample collection shall be in strict accordance with local, state, and federal requirements regarding sample locations, rate of flow, and required volumes to achieve the necessary analytical sensitivity.
3. Sample analysis turnaround times (TAT) shall be consistent with the appropriate regulatory authority.

<u>Final Clearance Testing</u>
Following a successful final inspection performed by the certified/licensed asbestos professional and given the appropriate waiting periods between the final cleaning and visual inspection, aggressive clearance air sampling shall be performed. Final air clearance sampling shall not be performed until the work area has passed the final visual inspection.

1. Number and placement of samplers shall be consistent with local, state, and federal requirements.
2. Final air clearance sampling analytical methods shall comply with the appropriate standards, whether PCM or TEM.
   a. For PCM analysis, the project shall be considered complete when the results of samples collected in the affected work area show that the concentration of fibers for each of the samples is less than or equal to 0.01 fibers per cubic centimeter (f/cc).
   b. For TEM analysis, the clearance standard has been established as a fiber density of less than 70 structures per millimeter squared (s/mm$^2$) for the average concentration of all samples collected inside the work area.
3. Failure to achieve these clearance standards will obligate the contractor to re-clean the work area and have the work area retested.
4. Final clearance results shall be conveyed to the client and the contractor once available.

**Final Visual Inspection Process**

Final air clearance sampling shall not be performed until the work area has passed a final visual inspection performed by a properly qualified (certified/licensed) individual. This individual is normally independent of the contractor and retained by the owner to verify the remedy.

The visual inspection process is used to evaluate all four aspects of an asbestos abatement project as follows:
1. The extent of ACM removal within the scope of work;
2. The project work performance/contractor execution;

G. Alexander Bongartz
September 7, 2023
Page 4

3. The completeness of abatement; and
4. The completeness of the clean-up.

GBTS's process includes the following:

1. The certified/licensed asbestos professional shall have a complete understanding of the scope of the abatement program;
2. Work area inspections are performed by both the GBTS asbestos professional and the Project Manager or Supervisor for the abatement firm;
3. The inspection confirms that all containerized waste has been removed from the work area and unremoved materials have been addressed;
4. All equipment, with the exception of negative air filtration devices, has been removed from the work area;
5. The inspection verifies the complete removal of all visible ACM debris or residue on or about all abated surfaces. The presence of residue, visible without the use of magnifying devices, on surfaces and components from which asbestos has been removed indicates that additional cleaning of these surfaces is required. It is important to note that the visible debris is not limited to suspect ACM. The work area should be free of all debris and dust;
6. An entry shall be made into the asbestos abatement contractor supervisor's daily log by both the supervisor and the GBTS representative detailing the findings of the visual inspection; and
7. An acceptable visual inspection for completeness of abatement and clean-up improves the chances, but does not guarantee, that the area will pass final air testing for clearance.

GBTS's final visual inspections shall follow federal, state and local regulations as well as recognized standards (guidelines) which might include:

1. ASTM Standard E1368 "Standard Practice for Visual Inspection of Asbestos Abatement Projects;" and/or
2. Asbestos-Containing Materials in Schools Rule (40 CFR Part 763, Subpart E).

At the completion of the work, a formal report shall be prepared which documents the oversight services provided, and will include air monitoring results, construction logs, and floor plans (if applicable).

## COST

GBTS proposes to perform the services outlined above according to the following fee schedule:

**Task 1 – ATRU and Variance Drawings and Final Inspection for Filing........................................... $6,750**

**Task 2 – Third Party Air Monitoring and Project Management**
Estimated eight shifts @ $850 per shift.............................................................................................. $6,800
Project Management – 10 hours at $160/hour .................................................................................... $1,600
Final Report – Lump Sum ...................................................................................................................... $750
Total Estimated Cost for Task 2 ......................................................................................................... $9,150

### ASSUMPTIONS AND CLARIFICATIONS

Tasks that are based on time and materials/hourly rates are to be considered estimates and are based on an estimated not to exceed value without client authorization. Actual site conditions may affect the final cost. Tasks based on a lump sum value are specific to the scope of work described above.

G. Alexander Bongartz
September 7, 2023
Page 5

Additional work requested and approved by the Client shall be on an hourly rate basis. All work shall be performed in accordance with the attached Fee Schedule and Terms and Conditions.

In the event that we do not receive a Tax Exemption Notice or Certificate of Capital Improvement, invoices shall include the applicable NY Sales Tax. Payments are due 30 days from receipt of invoice. Payment is the sole responsibility of **Genever Holdings LLC c/o Luc A. Despins, as Chapter 11 Trustee for the Estate of Ho Wan Kwok** and is not contingent upon third party funding, transactional closing, or insurance recovery.

### SCHEDULE

GBTS shall complete the field work within one working day, with verbal results within two business days, and a full report within 10 business days following receipt of the laboratory reports.

### AUTHORIZATION

We trust that this proposal will meet your expectations. These services shall be provided in accordance with the Gallagher Bassett Services, Inc. Standard Terms and Conditions, version 3/22/2023, attached hereto and made a part hereof. If the foregoing scope is in accordance with your understanding, please sign below to confirm your acceptance and agreement and return the original that will thereupon constitute the agreement between us. The Proposal and the Gallagher Bassett Services, Inc. Standard Terms and Conditions shall be deemed effective upon the earlier of (i) the effective date of this Proposal if expressly defined therein; or (ii) the date the Client executes the Proposal.

If you have any questions or comments, or require clarification on any item, please do not hesitate to contact me at 310.261.9727.

Respectfully submitted,
Gallagher Bassett Services, Inc.

Prepared by:                                          Reviewed by:

Greg Chomenko                                     Eric M. Telemaque
Senior Consultant                                  Managing Director, Environmental Consulting

c. Files
Enclosures
**Accepted by the Authorized Representative of:**
**Genever Holdings LLC**
**c/o Luc A. Despins, as Chapter 11 Trustee for the Estate of Ho Wan Kwok**

_____

_____          _____
Print Name and Title                                            Date



**GBTS TERMS AND CONDITIONS AND PROFESSIONAL RATE SHEETS**



GALLAGHER BASSETT | TECHNICAL SERVICES

**STANDARD CLIENT TERMS AND CONDITIONS**

## 1.    SCOPE AND PERFORMANCE OF THE WORK

As used herein, "Agreement" means the GBTS Proposal and these Standard Client Terms and Conditions. As used herein, the term "Client" refers to the party signing the GBTS Proposal. Client hereby retains Gallagher Bassett Services, Inc., Technical Services Division ("GBTS") to perform the services described in GBTS's Proposal ("Services"), attached hereto, and GBTS agrees to provide said Services. Any additional terms and conditions proposed by Client are objected to and will not be binding upon GBTS unless specifically assented to in writing by GBTS's authorized representative. The Services provided are not of a legal nature, and GBTS shall in no event give, or be required to give, any legal advice or legal representation to Client. This Agreement shall not create any rights or benefits to parties other than Client or GBTS. GBTS will have no authority over decisions or actions affecting project production, scheduling, quality, workmanship, or the correction of hazardous conditions and practices. Such responsibility, including the correction of hazardous conditions and practices will remain with the Client project superintendent, project manager and the appropriate contractor or subcontractor personnel. GBTS shall only have the authority to observe, advise and make recommendations.

## 2.    PAYMENT TERMS

Client recognizes that timely payment of GBTS's invoices is a material part of the consideration GBTS requires to perform the Services. For the performance of Services described in the GBTS Proposal and Section 1 herein, Client agrees to pay GBTS in accordance with these Terms and Conditions and the fees, rates, charges and reimbursement terms as set forth in GBTS's Proposal and/or COST AND FEE SCHEDULE, either of which is attached hereto. Each Proposal and/or Cost & Fee Schedule shall be effective for the period stated therein. Any additional services or work required by Client shall be performed on a time-and-materials ("T&M") basis, in accordance with the cost and fee schedule effective at the time of performance of such services or work.

GBTS may revise its pricing from time to time to the extent required by alterations in the services or changes in regulations and applicable law. The revised COST AND FEE SCHEDULE shall apply only to Services performed after the effective date. invoices will be submitted by GBTS on a monthly basis and shall be due and payable within thirty (30) calendar days of invoice date.

If Client objects to any portion of an invoice, Client shall notify GBTS within fourteen (14) calendar days from the date of the invoice, identify the cause of the objection, and pay when due the undisputed portion of the invoice. Payment of invoices is in no case subject to unilateral discounting or set-offs by Client. Payment shall not be conditioned on reimbursement or other recovery of funds from any third party, including insurance carriers.

GBTS shall provide the Services as an independent contractor. Nothing in this Agreement shall be deemed to be construed as creating an agency, partnership or joint venture relationship between GBTS and the Client**.**

## 3.    CHANGE ORDERS

Client and/or GBTS shall have the right to modify the scope of Services, specifications and time requirements set forth in the Proposal, along with an equitable adjustment of the cost and fees for such Services, as deemed appropriate and agreed to by the Parties hereto. Such modification of Services shall be in writing, attached hereto and incorporated by reference ("Change Order"). Any requests by Client for deviations from the Services specified in the Proposal involving increased time, costs or expenses to GBTS shall be performed only upon execution of a Change Order. Client will pay GBTS for all satisfactorily rendered Services set forth in GBTS's Proposal.

## 4.    STANDARD OF CARE/WARRANTY

While performing the Services under this Agreement, GBTS shall exercise that degree of care and skill ordinarily exercised under similar circumstances by members of the safety, environmental, construction, claims and risk management consulting profession performing the kind of services to be performed hereunder and practicing in the same or similar locality at the same period of time. GBTS will provide its best professional judgement, if required under the Proposal, concerning safety and risk management best practices. Reasonable people may disagree on matters involving professional judgment and, accordingly, a difference of opinion on a question of professional judgment shall not excuse Client from paying for services rendered or result in liability to GBTS. Except for the express promise set forth above, GBTS neither makes, nor offers, nor warrants to Client any express or implied warranties or guarantees with respect to GBTS's Services. Without limiting the foregoing and by way of example only, GBTS expressly makes no representation, guarantee, promise or other warranty that Client will not be issued any violations, citations, stop work orders or other governmental citations, fines or penalties. Client and



Client's contractors shall promptly notify GBTS of any actual or suspected defects in GBTS's Services to help GBTS take corrective measures to cure such defects and/or help minimize the consequences of any such defect. GBTS shall not be liable to Client for any damages without being given a reasonable opportunity to correct the Services.

## 5.   CLIENT RESPONSIBILITIES

In addition to other responsibilities described herein, the Client shall: (i) provide all information and criteria as to the Client's requirements, objectives, and expectations for the project, including all numerical criteria that are to be met and all standards of development, design, or construction and all other information reasonably necessary for completion of the Services, prior to the commencement of the Services; (ii) provide prompt, complete disclosure of known or potential hazardous conditions or health and safety risks; (iii) provide to GBTS all previous studies, plans, or other documents pertaining to the project and all new data decisions pertaining thereto within a reasonable time so as not to delay the Services; (iv) furnish approvals, consents and permits from governmental authorities, third parties including but not limited to the owner, lender, etc. and notice to GBTS whenever the Client becomes aware of any development that affects said approvals and consents from other parties as may be necessary for completion of GBTS's Services; (v) give prompt written notice to GBTS whenever the Client becomes aware of any development that affects the scope and timing of GBTS's Services or any defect or noncompliance in any aspect of the project; and (vi) bear all costs incident to the responsibilities of the Client. The Client agrees that to the extent GBTS is required to perform intrusive and invasive activities as part of the Services, including but not limited to, intrusive soil & groundwater tests, dig test pits and clearing pathways of trees, etc., the Client takes responsibility for all such intrusive and invasive activities, and has made all disclosures and obtained all necessary permits, approvals and consents from all interested third parties, including but not limited to, the owner, lender or any financing party, government authority, etc. for GBTS's performance of such intrusive and invasive activities. GBTS will have the right to reasonably rely upon the accuracy and completeness of all disclosures made and information and approvals obtained by the Client.

Client shall provide all studies, reports, data and other information in its control which may be relevant to performance of the Services. GBTS shall be entitled to use and rely upon all such information. Client accepts sole responsibility for errors in Services resulting from information supplied to GBTS.

## 6.   SAFETY

Client shall be obligated to inform GBTS of any applicable site safety procedures and regulations known to Client as well as any special safety concerns or dangerous conditions at the site. GBTS and its employees and/or subcontractors will be obligated to adhere to such procedures and regulations once notice has been given.

Unless specifically provided in the Proposal, GBTS shall not have any responsibility for overall job safety for others at the work site. Work site safety and authority to take corrective action and address dangerous work site conditions and dangerous worker practices shall remain the responsibility of the Client, the construction permit holder, and the trade contractors and subcontractors. If in GBTS's opinion, its field personnel are unable to access required locations or perform required Services in conformance with applicable safety standards, GBTS may immediately suspend performance, without any breach or liability hereunder, until such safety standards can be attained. If, within a reasonable time, site operations or conditions are not brought into compliance with such safety standards, GBTS may in its discretion terminate its performance in accordance with the termination provision found herein, in which event Client shall pay for Services and termination expenses as provided herein.

Unless specifically provided in the Proposal, GBTS has no authority to direct, supervise or control any of the trade contractors and trade contractor workers, including the means and methods employed by such trade contractors and trade contractor workers.

## 7.   INSURANCE

If an owner-controlled insurance program ("OCIP") and/or contractor-controlled insurance program ("CCIP") is implemented on the project, GBTS shall be enrolled and afforded the coverages provided thereunder without any additional cost or expense to GBTS, and without giving credits for the cost of associated insurance program coverages.

GBTS shall procure and maintain, at its own expense, during the term of its engagement with Client, insurance of the following types and amounts or as legally required: commercial general liability, contractors' pollution liability, professional liability (Errors & Omissions) at limits of $1,000,000 per occurrence/$2,000,000 in the aggregate; automotive liability insurance with a combined single limit

GALLAGHER BASSETT | TECHNICAL SERVICES

of $1,000,000; workers' compensation and employer's liability insurance as required by state law (all 50 states). GBTS shall furnish Certificates of Insurance of such coverage to Client upon request. Additional coverages may be obtained on a project-by-project basis upon request by Client and at the sole cost and expense of Client.

## 8.  INDEMNIFICATION

GBTS shall defend (but only to the extent covered by GBTS's insurance), indemnify and hold harmless Client and its officers, directors, employees, agents, representatives, affiliates and successors from any and all third-party claims, demands, suits, causes of action, proceedings, judgments and liabilities for property damage and/or personal injury, damages, losses and expenses, including, but not limited to reasonable legal expenses and attorneys' fees connected therewith (collectively, "Claims"), sustained by Client, its officers, directors, employees, affiliates and successors resulting from or arising out of GBTS's negligent acts, errors or omissions in the performance of Services under this Agreement.

Client shall indemnify, defend and hold harmless GBTS and its officers, directors, employees, affiliates and successors from any and all Claims sustained by GBTS, its officers, directors, employees, affiliates and successors, resulting from or arising out of Client's direction or instruction, breach of the Terms and Conditions, and negligent acts, errors or omissions.

To the extent the Services include performance by GBTS of intrusive ground work, Client shall indemnify GBTS from and against any and all Claims, damages, losses and expenses (including reasonable legal expenses and attorneys' fees) resulting from or arising out of damages to subsurface or underground utilities or structures, including but not limited to, gas, telephone, electric, water or sewer utilities whose locations were not designated or identified to GBTS prior to performance of the Services.

## 9.  LIMITATION OF LIABILITY

In no event shall Client and GBTS and their respective officers, directors, employees, agents, representatives, affiliates and successors be liable to the other or any third party for any special, incidental, consequential, indirect or punitive damages including, without limitation, lost, delayed and/or diminished profits or revenue, loss of data, or interruption of business, whether arising under theory of contract, tort or other theory of liability, including negligence, and the Parties hereby mutually release and

waive any and all such claims against the other. The indemnification obligations and mutual waiver and release herein shall survive termination or completion of this Agreement.

Under no circumstances will GBTS be liable to Client for any amount in excess of the total amount of fees paid by Client to GBTS for Services performed under this Agreement, or $100,000, whichever is greater. This limitation shall apply to any and all injuries, damages, claims, losses, expenses, or claim expenses (including attorney's fees and expert witness' fees) arising from or related to Services performed under this Agreement from any cause or causes. Such causes include, but are not limited to, GBTS's negligence, errors, omissions, strict liability, statutory liability, breach of contract, breach of warranty, negligent misrepresentation, or other acts giving rise to liability based on all types of legal theories, including but not limited to contract, tort, professional liability, product liability, warranty or otherwise.

Client agrees that any claim for damages filed against GBTS, by Client or by any contractor or subcontractor hired directly or indirectly by Client, will be filed solely against GBTS or its successors or assigns, and that no individual shall be held personally liable for damages, in whole or in part.

## 10.  DISPUTE RESOLUTION

If any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall occur, Client and GBTS shall endeavor to reach resolution through good faith direct discussions between representatives of the parties with authority to resolve the matter. If direct discussions do not result in resolution of the matter, the parties shall endeavor in good faith to resolve the matter via mediation. If the parties choose mediation, either party may terminate the mediation at any time after the first session by written notice to the other party and mediator. The cost of the mediation shall be shared equally by the parties. The parties agree that the sole proper venue for the determination of any litigation arising under this Agreement shall be in a court of competent jurisdiction which is located in Cook County, Illinois. Each party shall bear its own litigation costs and fees, including expert and attorneys' fees.

## 11.  NOTICE AND PURSUIT OF CLAIMS

Any claims of Client, whether based upon contract, tort, breach of warranty, or otherwise, shall be deemed waived

GALLAGHER BASSETT | TECHNICAL SERVICES

unless written notice of such claim is received in writing by GBTS within one (1) year after Client knew or reasonably should have known of its existence.

## 12. COLLECTION

Should the Client's account, after payment default hereunder, be referred by GBTS to an attorney or collection agency for collection, then Client shall pay all of GBTS's expenses incurred in such collection efforts including, but not limited to, collection agency fees, court costs and reasonable attorneys' fees. Notwithstanding the above or any other terms provided herein, GBTS may institute proceedings to collect payment in any court of competent jurisdiction in the United States.

## 13. USE OF REPORTS/NO THIRD-PARTY RELIANCE

Any documents provided by GBTS as part of the Services provided herein are provided for the use and reliance of Client. Any third-party use of or reliance on the documents is subject to the terms and conditions of this Agreement and GBTS's report. Client's payment of GBTS invoices, as provided for herein, shall not be made contingent upon GBTS's agreement to permit third-party reliance contrary to the terms and conditions agreed to herein.

## 14. CONFIDENTIALITY

In connection with this Agreement, the parties acknowledge that it may be necessary for each of them to provide to the other information that is confidential to the disclosing party ("Confidential Information"). As used herein the term "Confidential Information" shall mean all business, technical or scientific data and information, in any form, not previously known to or generated by the receiving party that is of a confidential or competitively-sensitive nature, or information that is marked "Confidential" by the disclosing party. Without limitation, and by way of example only, Confidential Information shall include software, systems, processes, designs, plans, engineering files, price information, business plans, business methods, financial data, and any other competitively-sensitive information or data belonging to the disclosing party. Each party shall secure and maintain the Confidential Information of the other party in strictest confidence and shall not disclose or make available to others the Confidential Information of the other party without the express written consent, in advance, of that party. Confidential Information shall not include information which: (a) is or becomes a part of the public domain through no act or omission of the receiving party; (b) was in the receiving party's lawful possession prior to the disclosure and had not been obtained by the receiving party either directly or indirectly from the disclosing party; (c) is lawfully disclosed to the receiving party by a third party without restriction on disclosure; (d) is independently developed by the receiving party; or (e) is disclosed by operation of law. This provision shall not be interpreted in any way to restrict a party from complying with a legally enforceable order to provide such information or data, provided that notice of such obligation is promptly given, in advance, to the other party. Client agrees that GBTS may use and publish Client's name and a general description of services rendered under the Agreement for purposes of describing GBTS's experience and qualifications to others.

## 15. NON-SOLICITATION

To the extent permitted under applicable law, without the prior written consent of GBTS, the Client agrees that it shall not solicit or hire employees of GBTS during the term of this Agreement or for a period of 6 months after termination of the Agreement. General solicitations of employment by means of recruiters, the internet, newspaper, periodical or trade publication advertisements not directed at employees of GBTS and its affiliates shall not be deemed to constitute "solicitation" for purposes of this provision. Further, nothing in this Agreement shall prohibit Client from hiring any person, including an employee of GBTS, who contacts Client on his or her own initiative without any direct or indirect solicitation by, or encouragement from, Client.

## 16. DELAYS

If GBTS's Services are interrupted by circumstances beyond GBTS's control, Client shall compensate GBTS for the labor, equipment, and other costs GBTS incurs in order to maintain continuity of GBTS's project team for Client's benefit during the interruption. Alternatively, and at Client's option, Client shall compensate GBTS for the various costs GBTS incurs for demobilization and subsequent remobilization. GBTS's compensation shall be based upon GBTS's current prevailing COST AND FEE SCHEDULE. Except for the foregoing provision, neither party shall hold the other responsible for damages or performance delays caused by circumstances beyond the control of the other party, and which could not reasonably have been anticipated or prevented. For purposes of this Agreement, such circumstances include, but are not limited to: unusual weather; floods; epidemics; wars; riots;



strikes; lockouts or other industrial disturbances; protest demonstrations; unanticipated site conditions; inability (despite reasonable diligence) to supply personnel, equipment, or material to the project; or the action or inaction of government. Should such circumstances transpire, Client and GBTS shall exert a best effort to overcome the resulting difficulties and resume performance of the Services as soon as reasonably possible. Delays within the scope of this provision that cumulatively exceed forty-five (45) calendar days shall, at the option of either party, make this Agreement subject to renegotiation or termination.

**17.    TERMINATION**

This Agreement shall become effective on the date of Client's acceptance of GBTS's Proposal. Client may terminate this Agreement for convenience without penalty, by providing written notice to GBTS. Client or GBTS may terminate the Agreement for cause. The party initiating termination shall so notify the other party, and termination shall become effective fourteen (14) calendar days after receipt of the termination notice.  Irrespective of which Party effects termination or the  cause thereof, Client shall, within thirty (30) calendar days from receipt of GBTS's termination invoice, pay  GBTS's fees for Services satisfactorily rendered and  costs incurred, in accordance with the COST AND FEE SCHEDULE. Client shall pay GBTS for costs reasonably  stemming from termination and post-termination activities including, but not limited to, demobilization, equipment decontamination and/or disposal, and disposal and replacement of contaminated consumables.

**18.    NOTICE**

All notices, requests and other communications concerning termination or indemnification ("Formal Notice") under this Agreement shall be in writing and delivered: (i) personally; (ii) by certified mail, return receipt requested; or (iii) by nationally recognized express courier service. Notices will be deemed given as of the earlier of (i) the date of actual receipt when notice is given by personal delivery, (ii) three (3) days after mailing in the case of certified U.S. mail or (iii) the next business day when notice is sent via express courier. Any Formal Notice shall be addressed as follows:

**If to GB**
Legal Department
Gallagher Bassett Services, Inc.
2850 Golf Road
Rolling Meadows, IL 60008

With a copy to:
Carolyn Bailey
VP Administrative Operations
Gallagher Bassett Services, Inc., Technical Services Division
14361 Commerce Way, Suite 206, Miami Lakes, FL 33016

**If to Client:**

_____

_____

_____

_____

**19.    SURVIVAL**

Obligations arising before the expiration or termination of this Agreement, and all provisions of this Agreement allocating responsibility or liability between Client and GBTS, shall survive the  completion of Services described herein and termination of this Agreement.

**20.    GOVERNING LAW**

Unless otherwise provided, the substantive law of the state in which the Services take place will govern the validity of this Agreement, its interpretation and performance, and remedies for contract breach or other claims  related to this Agreement.

Any litigation between Client and GBTS arising out of or relating to the Services, this Agreement or the breach thereof, shall be conducted via a bench trial, WITH THE PARTIES EXPRESSLY WAIVING ANY RIGHT THEY MAY HAVE TO A JURY TRIAL.

**21.    ELECTRONIC SIGNATURES**

Each Party agrees that the electronic signatures of the parties, whether digital or encrypted, are intended to authenticate this writing and have the same force and effect as manual signatures. Electronic signature means any electronic symbol or process attached to or logically associated with a record and executed and adopted by a party with the intent to sign such record, including, without limitation, Adobe e-signature, DocuSign, E-sign, facsimile, or e-mail electronic signatures**.**

GALLAGHER BASSETT | TECHNICAL SERVICES

**22.      ENTIRE AGREEMENT**

This Agreement shall serve as a continuing service agreement which shall apply to all services and work rendered to Client that fall within the general scope of Services described herein. This Agreement and all exhibits, appendices, and attachments, as well as all terms and conditions incorporated by reference, constitute the entire Agreement between Client and GBTS, by which all prior understandings and negotiations are superseded and replaced. This Agreement and all exhibits, appendices, and attachments may be amended, supplemented, modified or canceled only by a duly executed written instrument by the Parties. Terms and conditions, on the Client's internet site or included with a Purchase Order or other such document issued by Client, shall be null and void and of no legal effect on GBTS unless agreed upon in writing by both Parties.

Notwithstanding anything to the contrary tin the GBTS Terms and Conditions and Professional Rate Sheets, the United States Bankruptcy Court for the District of Connecticut (in which court the chapter 11 case of Genever Holdings LLC is pending [Case No. 22-50592]), shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of this Agreement.

## EXHIBIT 3

**[Breslaw] Proposal**

# GEORGE BRESLAW PLUMBING, LLC.
## Plumbing Contractor Since 1929

**OFFICE 212 265 4023**
MICHAEL J. BRESLAW
LICENSED PLUMBER #2307

**559 WEST 45TH STREET, NEW YORK, N.Y. 10036**
GEORGE BRESLAW
1900-1990

**Fax:  212 265 4242**
RICHARD B. BRESLAW
1945-2012

WWW.BRESLAWPLUMBING.COM
"THE PLUMBER PROTECTS THE HEALTH OF THE WORLD"

**Date:** September 8, 2023

**To:** Sherry Netherlands

781 5th Avenue

**Attn:** Mr. Bongartz

**Re**: Apt. 1801 - Temp shower hook up / radiator work

As per site visit and discussion we will provide labor and material to connect temporary shower  for abatement work as requested.

All work regular hours for the sum of **- $3,800.00 plus tax if applicable**

We will provide labor and miscellaneous material to disconnect and cap (3) radiators and reconnect at a later date as requested.

All work regular hours for the sum of **- $3,550.00 plus tax if applicable**

No overtime

No storage of radiators

No new valves or traps

No access doors

No painting patching or protection

No opening or closing of floors walls or ceilings

## EXHIBIT 4

**GEM Proposal**

**GEM Contracting Management LLC**

1 Newbury Court
Jackson, NJ 08527
www.GemContractingNJ.com
Lic# 13VH07951900
Tel# 732-298-2438

# Estimate

| Date | Estimate # |
|---|---|
| 9/5/2023 | 2500 |

*Managing your construction needs through innovation and technology*

| Bill To |
|---|
| The Sherry-Netherland Hotel<br>781 5th Ave New York, NY 10022<br>917-318-9381 |

| Project |
|---|
|  |

| Description | Qty | Rate | Total |
|---|---|---|---|
| Apt 1801:<br>Provide all labor and material to install temporary electrical feeders as per asbestos abatement request to support equipment and air monitoring equipment. |  | 2,200.00 | 2,200.00 |
| Applicable tax: |  | 0.00 | 0.00 |

Please contact us with any questions or concerns.

Please make all checks payable to: GEM Contracting Management LLC.

| **Total** | $2,200.00 |
|---|---|

signature                         date

## **EXHIBIT 5**

**Revised Proposed Order (clean)**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

```
-------------------------------------------------------x
                                                       :
In re:                                                 :   Chapter 11
                                                       :
HO WAN KWOK, et al.,¹                                  :   Case No. 22-50073 (JAM)
                                                       :
                         Debtors.                      :   (Jointly Administered)
                                                       :
-------------------------------------------------------x
```

**ORDER GRANTING GENEVER HOLDINGS LLC'S MOTION,  PURSUANT
TO BANKRUPTCY CODE SECTION 363(b), FOR ENTRY OF ORDER
AUTHORIZING GENEVER HOLDINGS LLC TO OBTAIN SERVICES
NECESSARY TO REMEDIATE AREAS OF SHERRY NETHERLAND
APARTMENT AFFECTED BY MARCH 15, 2023 FIRE**

Upon the motion (as supplemented on September 8, 2023, the "Motion")[2] of debtor

Genever Holdings LLC ("Genever US"), for an order (this "Order") authorizing Genever US to

obtain the services necessary to remediate the portion of the Sherry Netherland Apartment

affected by the March 15, 2023 fire (the "Affected Area"), including authorization for Genever

US to (a) enter into the Architect Agreement with Acheson Doyle, effective as of July 27, 2023,

(b) select and hire contractors, engineers, consultants, and other third-party service providers in

the ordinary course of the Remediation Project (including as it relates to the removal of

asbestos), as may be necessary to remediate the Affected Area, subject to certain procedures, and

(c) pay such contractors, engineers, consultants, and other third-party service providers in the

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The
mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul
Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho
Wan Kwok (solely for purposes of notices and communications).

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

ordinary course of the Remediation Project (including as it relates to the removal of asbestos), all

as further detailed in the Motion; and the Court having reviewed the Motion and having

considered the statements of counsel before the Court at a hearing held on _____, 2023 (the

"Hearing"); and the Court having found that (a) the Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. §

157(b); (c) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) good and sufficient

notice of the Motion having been given; and no other or further notice being required; and the

Court having found and determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and it appearing that the relief requested by the

Motion, as modified by the terms of this Order is in the best interest of Genever US's estate and

creditors; and upon all of the proceedings had before the Court and after due deliberation and

sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      Genever US is authorized to enter into, and perform under, the Architect

Agreement with Acheson Doyle, effective as of July 27, 2023.

3.      As it relates to the payment of Acheson Doyle's fees and expenses, Genever US

shall file a notice with the Court attaching Acheson Doyle's invoices for the Architectural

Services.  Parties in interest will then have fourteen (14) days to object to such invoices.  If no

timely objections are filed with the Court, Genever US is authorized to pay such invoices without

further Court order.  If any timely objections are filed, (i) Genever US may file a response to

such objection(s) within seven (7) days thereafter and (ii) pay the portion of the fees and

expenses that are not subject to such objection.  To the extent that an objection cannot be consensually resolved among the parties, the Court will rule on the matter.

4.  Genever US is authorized to enter into, and perform under, the GBTS Agreement, including payment of GBTS's fees and expenses in the ordinary course of the Remediation Project, without further Court approval.

5.  Genever is authorized to select and hire contractors, engineers, consultants, and other third-party service providers in the ordinary course of the Remediation Project (including as it relates to the removal of asbestos), as may be necessary to remediate the Affected Area, subject to the procedures set forth in paragraphs 6 and 7 of this Order.  For the avoidance of doubt, Genever US is also authorized to (a) enter into, and perform under, an agreement with ABF to remove asbestos from the Affected Area as well as related third party services (including GBTS, GEM, and Breslaw), all as detailed in the Motion, and (b) pay the fees and expenses of ABF and related service providers (including GBTS, GEM, and Breslaw) in the ordinary course of the Remediation Project, without further Court approval.

6.  Genever US shall provide copies of the bids received from the general contractor (including as to the estimated costs of the Remediation Project) to Sales Officer, PAX, the Committee, the U.S. Trustee, and the Sherry Netherland (the "Consultation Parties") and will consult with the Consultation Parties regarding the selection of the general contractor.  In addition, Genever US will provide the Consultation Parties with copies of all invoices received from the general contractor and any related subcontractors, engineers, or consultants in an amount greater than $25,000 before paying such invoices.

7.  Genever US shall file monthly status reports to update the Court and parties in interest as to the progress of the Remediation Project (including as it relates to the selection of

the general contractor, the estimated cost of the Remediation Project to be undertaken by the

general contractor, and a summary of Genever US's expenditures with respect to the

Remediation Project).

8.      Genever US is authorized to pay contractors, engineers, consultants, and other

third-party service providers utilized in the Remediation Project (including as it relates to the

removal of asbestos) in the ordinary course of the Remediation Project.  Nothing in this Order

shall approve the retention and/or compensation of any attorneys.

9.      The Trustee, including as a holder of a proxy for Genever US, shall supervise and

monitor the Remediation Project, including so as to ensure that Genever US only pays for

remediation that is, in fact, the responsibility of Genever US, as opposed to the Sherry

Netherland.  For the avoidance of doubt, this Order does not approve any "alteration agreement"

as between Genever US and the Sherry Netherland related to relative responsibilities of the

parties with respect to the remediation of the Sherry Netherland Apartment.  Genever US shall

request separate Court approval of any such agreement by separate motion at the appropriate

time.  To the extent the parties are unable to reach agreement as to the allocation of costs,

Genever US will bring the matter to the Court for resolution.

10.     Notwithstanding the provisions of Bankruptcy Rule 6004(h) or any applicable

provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be

effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy

Rule 6004(h) is hereby expressly waived and shall not apply.

11.     Genever US is authorized and empowered to take all actions necessary to

effectuate the relief granted in this Order.

4

12.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **EXHIBIT 6**

**Revised Proposed Order (redline)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                       :

In re:                                :       Chapter 11
                                         :

HO WAN KWOK, *et al.*,[1]       :       Case No. 22-50073 (JAM)
                                         :

             Debtors.          :       (Jointly Administered)
                                         :
-------------------------------------------------------x

**ORDER GRANTING GENEVER HOLDINGS LLC'S MOTION,  PURSUANT**
**TO BANKRUPTCY CODE SECTION 363(b), FOR ENTRY OF ORDER**
**AUTHORIZING GENEVER HOLDINGS LLC TO OBTAIN SERVICES**
**NECESSARY TO REMEDIATE AREAS OF SHERRY NETHERLAND**
**APARTMENT AFFECTED BY MARCH 15, 2023 FIRE**

Upon the motion (as supplemented on September 8, 2023, the "Motion")[2] of debtor

Genever Holdings LLC ("Genever US"), for an order (this "Order") authorizing Genever US to

obtain the services necessary to remediate the portion of the Sherry Netherland Apartment

affected by the March 15, 2023 fire (the "Affected Area"), including authorization for Genever

US to (a) enter into the Architect Agreement with Acheson Doyle, effective as of July 27, 2023,

(b) select and hire contractors, engineers, consultants, and other third-party service providers in

the ordinary course of the Remediation Project (including as it relates to the removal of

asbestos), as may be necessary to remediate the Affected Area, subject to certain procedures, and

(c) pay such contractors, engineers, consultants, and other third-party service providers in the

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

ordinary course of the Remediation Project (including as it relates to the removal of asbestos), all as further detailed in the Motion; and the Court having reviewed the Motion and having considered the statements of counsel before the Court at a hearing held on _____, 2023 (the "Hearing"); and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) good and sufficient notice of the Motion having been given; and no other or further notice being required; and the Court having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested by the Motion, as modified by the terms of this Order is in the best interest of Genever US's estate and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      Genever US is authorized to enter into, and perform under, the Architect Agreement with Acheson Doyle, effective as of July 27, 2023.

3.      As it relates to the payment of Acheson Doyle's fees and expenses, Genever US shall file a notice with the Court attaching Acheson Doyle's invoices for the Architectural Services.  Parties in interest will then have fourteen (14) days to object to such invoices.  If no timely objections are filed with the Court, Genever US is authorized to pay such invoices without further Court order.  If any timely objections are filed, (i) Genever US may file a response to such objection(s) within seven (7) days thereafter and (ii) pay the portion of the fees

and expenses that are not subject to such objection.  To the extent that an objection cannot be consensually resolved among the parties, the Court will rule on the matter.

4.    Genever US is authorized to enter into, and perform under, the GBTS Agreement, including payment of GBTS's fees and expenses in the ordinary course of the Remediation Project, without further Court approval.

5.    Genever is authorized to select and hire contractors, engineers, consultants, and other third-party service providers in the ordinary course of the Remediation Project (including as it relates to the removal of asbestos), as may be necessary to remediate the Affected Area, subject to the procedures set forth in paragraphs 6 and 7 of this Order.  For the avoidance of doubt, Genever US is also authorized to (a) enter into, and perform under, an agreement with ABF to remove asbestos from the Affected Area, as well as related third party services (including GBTS, GEM, and Breslaw), all as detailed in the Motion, and (b) pay ABF'sthe fees and expenses of ABF and related service providers (including GBTS, GEM, and Breslaw) in the ordinary course of the Remediation Project, without further Court approval.

6.    Genever US shall provide copies of the bids received from the general contractor (including as to the estimated costs of the Remediation Project) to Sales Officer, PAX, the Committee, the U.S. Trustee, and the Sherry Netherland (the "Consultation Parties") and will consult with the Consultation Parties regarding the selection of the general contractor.  In addition, Genever US will provide the Consultation Parties with copies of all invoices received from the general contractor and any related subcontractors, engineers, or consultants in an amount greater than $25,000 before paying such invoices.

7.    Genever US shall file monthly status reports to update the Court and parties in interest as to the progress of the Remediation Project (including as it relates to the selection of

the general contractor, the estimated cost of the Remediation Project to be undertaken by the general contractor, and a summary of Genever US's expenditures with respect to the Remediation Project).

8.      Genever US is authorized to pay contractors, engineers, consultants, and other third-party service providers utilized in the Remediation Project (including as it relates to the removal of asbestos) in the ordinary course of the Remediation Project.  Nothing in this Order shall approve the retention and/or compensation of any attorneys.

9.      The Trustee, including as a holder of a proxy for Genever US, shall supervise and monitor the Remediation Project, including so as to ensure that Genever US only pays for remediation that is, in fact, the responsibility of Genever US, as opposed to the Sherry Netherland.  For the avoidance of doubt, this Order does not approve any "alteration agreement" as between Genever US and the Sherry Netherland related to relative responsibilities of the parties with respect to the remediation of the Sherry Netherland Apartment.  Genever US shall request separate Court approval of any such agreement by separate motion at the appropriate time.  To the extent the parties are unable to reach agreement as to the allocation of costs, Genever US will bring the matter to the Court for resolution.

10.     Notwithstanding the provisions of Bankruptcy Rule 6004(h) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply.

11.     Genever US is authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

4

12.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.