**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
HO WAN KWOK, et al.,[1]                                :    Case No. 22-50073 (JAM)
                                                       :
              Debtors.                                 :    (Jointly Administered)
                                                       :
-------------------------------------------------------x
```

### NOTICE OF FILING OF REVISED PROPOSED FINAL DIP ORDER

**PLEASE TAKE NOTICE** that, on August 23, 2023, Genever Holdings LLC ("Genever US"), Genever Holdings Corporation ("Genever BVI") and Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee" and together, with Genever US and Genever BVI, the "Movants") of Ho Wan Kwok (the "Individual Debtor"), debtors in these above-captioned jointly administered cases (the "Chapter 11 Cases"), filed the *Joint Motion of Chapter 11 Trustee and Debtors Genever US and Genever BVI for Entry of Final Order (I) Authorizing Chapter 11 Trustee to Extend Financing Pursuant to Bankruptcy Code Section 363, (II) Authorizing Genever US and Genever BVI to Obtain Post-Petition Financing Pursuant to Bankruptcy Code Section 364, (III) Granting Non-Priming Liens and Providing Superpriority Administrative Expense Claim, (IV) Modifying Automatic Stay, and (V) Granting Related Relief* [Docket No. 2110] (the "Motion").[2]

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]   Capitalized terms used but not otherwise defined herein shall the meaning given to such terms in the Motion.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of order was attached to the Motion as Exhibit A (the "Proposed Final DIP Order").

**PLEASE TAKE FURTHER NOTICE** that, since filing the Motion, the Movants have received informal comments from Sherry Netherland, Inc. and the United States Trustee.

**PLEASE TAKE FURTHER NOTICE** that, since the filing of the Motion, the Movants have made revisions to the Proposed Final DIP Order to address the informal comments received from Sherry Netherland, Inc. and the United States Trustee.

**PLEASE TAKE FURTHER NOTICE** that, attached hereto as **Exhibit A** is a revised proposed form of order (the "Revised Proposed Final DIP Order").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit B** is a redline showing changes made to the proposed form of order.

*[Remainder of page intentionally left blank.]*

Dated:  September 11, 2023
       New York, New York

By: */s/ Douglass Barron*          
    Luc A. Despins (admitted *pro hac vice*)
    G. Alexander Bongartz (admitted *pro hac vice*)
    Douglass Barron (admitted *pro hac vice*)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    lucdespins@paulhastings.com
    alexbongartz@paulhastings.com
    douglassbarron@paulhastings.com

      *and*

    Nicholas A. Bassett (admitted *pro hac vice*)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

      *and*

    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    dskalka@npmlaw.com
    plinsey@npmlaw.com

    *Counsel for the Movants*

## Exhibit A

**Revised Proposed Final DIP Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| HO WAN KWOK, *et al.*,[1] | : | Case No. 22-50073 (JAM) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

-------------------------------------------------------x   **RE: Docket No. 2110**

**ORDER (I) AUTHORIZING CHAPTER 11 TRUSTEE TO EXTEND FINANCING
PURSUANT TO BANKRUPTCY CODE SECTION 363, (II) AUTHORIZING GENEVER
US AND GENEVER BVI TO OBTAIN POST-PETITION FINANCING PURSUANT TO
BANKRUPTCY CODE SECTION 364, (III) GRANTING NON-PRIMING LIENS AND
PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM, (IV)
MODIFYING AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"[2]) of Genever Holdings LLC ("Genever US"), Genever

Holdings Corporation ("Genever BVI") and Luc A. Despins, in his capacity as the chapter 11

trustee (the "Trustee") of Ho Wan Kwok (the "Individual Debtor"), debtors in these above-

captioned jointly administered cases (the "Chapter 11 Cases"), seeking a final order (the "DIP

Order") pursuant to sections 105(a), 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United

States Code, (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-3 of the Local Rules of

the United States Bankruptcy Court for the District of Connecticut (the "Local Rules"), among

other things (i) authorizing Genever US and Genever BVI (the "DIP Borrowers") to obtain secured

---

[1]  The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

postpetition financing from Kwok's chapter 11 estate (the "<u>DIP Lender</u>" and, together with the DIP Borrowers, the "<u>Movants</u>") consisting of non-priming secured debtor-in-possession credit facility in an aggregate principal amount of up to $2,000,000 and in the form of the DIP financing credit agreement attached as Exhibit 1 hereto (such agreement, the "<u>DIP Credit Agreement</u>"); (ii) granting related liens and superpriority claims in favor of the DIP Lender as more fully described herein; (iii) modifying the automatic stay to the extent necessary; and (iv) authorizing the Trustee, as representative of the DIP Lender, to enter into the DIP Credit Agreement, all on the terms and conditions set forth in this DIP Order.

The Court having reviewed the Motion and arguments made at the hearing held on [•] (the "<u>DIP Hearing</u>") to consider entry of this DIP Order, and due and sufficient notice of the DIP Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and all applicable Local Rules; and the DIP Hearing having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and that such relief is fair and reasonable and in the best interests of the Movants, their estates, their creditors and all parties in interest, and is essential for the preservation of the value of the DIP Borrowers' estates; and it appearing that the Movants' entry into the DIP Credit Agreement is a sound and prudent exercise of the DIP Borrowers' and the Trustee's business judgment; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

2

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.      *Petition Dates and Appointment of Trustee.*  Genever US filed its voluntary chapter 11 petition in the New York Bankruptcy Court on October 12, 2020.  On February 15, 2022, the Individual Debtor filed with a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.  By order dated July 8, 2022, the Court approved the selection of the Trustee.  On October 11, 2022, Genever BVI filed its voluntary chapter 11 petition in this Court.  Shortly thereafter, by order dated November 3, 2022, the New York Bankruptcy Court granted the Trustee and Genever US's joint motion to transfer venue of Genever US's chapter 11 case to this Court.  By order dated November 21, 2022, the Court approved the joint administration of the chapter 11 cases of Genever US, Genever BVI, and the Individual Debtor.

B.      *Jurisdiction and Venue.*  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested in this Motion are sections 105(a), 361, 362, 363, 364, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Rule 4001-3 of the Local Rules.

C.      *Committee Formation.*  On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Individual Debtor's chapter 11 case.  No examiner has been appointed in the Chapter 11 Cases.

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D.    *Notice*.  The DIP Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Proper, timely, adequate, and sufficient notice of the Motion and the DIP Hearing has been provided in accordance with Local Rule 4001-3(g)(7), and no other or further notice of the Motion or the entry of this DIP Order shall be required.

E.    *Findings Regarding the DIP Financing.*

(a)    <u>Cause Exists</u>.  Good and sufficient cause has been shown for the entry of this DIP Order and for authorization of the DIP Borrowers to enter into and borrow under the DIP Credit Agreement.

(b)    <u>Need for DIP Financing</u>.  The DIP Borrowers have an immediate and critical need to incur the DIP Financing in order to permit, among other things, the funding of expenses of administering their chapter 11 cases and other necessary expenses, such as essential remediation repairs to the Apartment, U.S. Trustee Fees, and professional fees.  The DIP Borrowers' access to sufficient liquidity through the incurrence of indebtedness under the DIP Facility provided under the DIP Credit Agreement is necessary and vital for the preservation and maximization of the value of the DIP Borrowers' chapter 11 estates.

(c)    <u>No Credit Available on More Favorable Terms</u>.  The DIP Facility is the best source of debtor-in-possession financing reasonably available to the DIP Borrowers at this time. The DIP Borrowers have determined that the DIP Borrowers are unable to obtain adequate credit on more favorable terms than those provided under the DIP Facility.

(d)    <u>Business Judgment and Entire Fairness</u>.  Based on the record established in the Motion and at the DIP Hearing, the terms of the DIP Financing pursuant to the DIP Credit Agreement (i) are in each case fair and reasonable, reflect the DIP Borrowers' and the Trustee's exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably

4

equivalent value and fair consideration, and represent the best financing available and (ii) to the extent applicable, satisfy the entire fairness standard.

(e)  <u>Good-Faith Lender</u>.  The DIP Financing is the result of (i) the DIP Borrowers' reasonable and informed determination that the DIP Lender offered the most favorable terms on which to obtain critical postpetition financing and (ii) good-faith considerations by the DIP Borrowers and the Trustee acting as the representative of the Individual Debtor's estate.  The terms and conditions of the DIP Facility are reasonable and appropriate under the circumstances. Further, no consideration is being provided to any party to the DIP Facility other than as described in the Motion.  The DIP Loans and any obligations of the DIP Borrowers owing to the DIP Lender, in accordance with the terms of the DIP Credit Agreement, have been extended by the DIP Lender in good faith, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.  The DIP Lender (and any successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)  <u>Use of Proceeds of the DIP Facility</u>.  The DIP Borrowers will use the proceeds of the DIP Facility consistent with this Order and as provided in the DIP Credit Agreement and only for purposes that are permissible under the Bankruptcy Code.

(g)  <u>Section 506(c) of the Bankruptcy Code</u>.  The DIP Lender is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code as provided herein.

(h)  <u>Corporate Authority</u>.  The DIP Borrowers and the Trustee (acting as the representative of the DIP Lender) each have all requisite power and authority to execute and deliver the DIP Credit Agreement to which it is a party and to perform its obligations thereunder,

including without limitation, the incurrence of the DIP Loans and the pledge of applicable DIP Collateral.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Disposition.*  The relief requested in the Motion is granted on a final basis as set forth herein.  Any objections to the Motion with respect to the entry of this DIP Order that have not been withdrawn, waived or settled are hereby denied and overruled on the merits.  This DIP Order shall become effective immediately upon its entry.

2.      *Authorization of the DIP Financing and the DIP Credit Agreement.*

(a)      The DIP Facility is hereby approved on a final basis as set forth herein.  The Movants, by this DIP Order, are authorized to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Credit Agreement and such other acts as may be necessary, appropriate or desirable in connection therewith.  The DIP Borrowers are hereby authorized to borrow money pursuant to the DIP Credit Agreement, subject to any limitations therein, which shall be used for all purposes permitted by this DIP Order and under the DIP Credit Agreement and subject to the terms and conditions set forth herein and therein.  The DIP Lender (acting through the Trustee) is authorized to make the advances described in the DIP Credit Agreement directly to a payee or obligee of the DIP Borrowers, and any such advances will be considered advances under the Credit Agreement.

(b)      In furtherance of the foregoing and without further approval of this Court, the DIP Borrowers and the Trustee, acting as representative of the DIP Lender, are each authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates,

agreements, charges, deeds, and documents, and to pay the principal, interest, and other amounts described in the DIP Credit Agreement as such amounts become due and payable in accordance with the terms and conditions of the DIP Credit Agreement, and to take any other related actions that may be necessary, desirable or appropriate, all to the extent provided in this DIP Order or the DIP Credit Agreement.

3.     *Carve-Out.*  Carve-Out means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (ii) all reasonable and documented fees and expenses up to $40,000 incurred by a trustee under section 726(b) of the Bankruptcy Code and allowed by the Court; and (iii) to the extent allowed by this Court at any time, whether by interim or final order, all accrued and unpaid claims for fees, costs, and expenses of the kind specified in sections 327, 328, 330 and 331 of the Bankruptcy Code incurred by persons or firms retained by the DIP Borrowers after the Venue Transfer Date (the "Carve-Out Professional Fees").  The Carve-Out Professional Fees shall not exceed $350,000.  For the avoidance of doubt, the Carve-Out Professional Fees shall exclude any fees required to be paid to any real estate broker. At no time may the total amount owed by the DIP Borrowers exceed the DIP Lender's Commitment less $350,000.

4.     *DIP Claim.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Lender shall be granted an allowed senior secured superpriority administrative expense claim against each of the DIP Borrowers, on a sole and several basis, with priority over any and all other claims against the DIP Borrowers, now existing or hereafter arising, of any kind whatsoever, other than the Allowed SN Senior Debt Claim (as defined herein) and other SN Senior Debt to the extent allowed, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims

7

arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed senior secured superpriority administrative expense claim (the "DIP Claim") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Claim shall be payable from and have first recourse to (i) the DIP Collateral and all proceeds thereof, subject only to payment of the Carve-Out and the Allowed SN Senior Debt Claim and other SN Senior Debt to the extent allowed and (ii) any other asset of the DIP Borrowers, *provided, however*, that the DIP Claim will not have first recourse to proceeds of any actions under sections 502(d), 544, 545, 547, 548, 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code.  For the avoidance of doubt, except for the Carve-Out and the Allowed SN Senior Debt Claim and other SN Senior Debt to the extent allowed, the DIP Claim shall not be made subject to or *pari passu* with any claim heretofore granted or hereinafter granted or created in the chapter 11 cases or any successor case or cases under the Bankruptcy Code (including, without limitation, any case under chapter 7 of the Bankruptcy Code), and such DIP Claim shall maintain its priority as provided herein until all obligations hereunder and under the DIP Credit Agreement have been paid in full.  The DIP Claim shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

5.    *DIP Collateral*.  DIP Collateral shall mean and include the following property and the proceeds of such property: (a) Genever US's interest in (i) the proprietary lease dated March 6, 2015 by and between the Sherry Netherland, Inc., and Genever Holdings LLC for that certain apartment known as Apartment 1801 and the shares appurtenant to such lease; (ii) Genever US's

interest in the proprietary lease dated March 6, 2015 by and between the Sherry Netherland, Inc., and Genever Holdings LLC for that certain apartment known as Maid's Room 2219 and the shares appurtenant to such lease, (iii) Genever US's interest in the proprietary lease dated March 6, 2015 by and between the Sherry Netherland, Inc., and Genever Holdings LLC for that certain apartment known as Maid's Room 719 and the shares appurtenant to such lease (such leases and such shares, collectively, the "Coop Interest"); (b) the proceeds of litigation commenced or to be commenced by Genever BVI or Genever US (the "Borrowers' Litigation Claims"), including, without limitation, the adversary proceeding brought in the Bankruptcy Court by Genever US against AIG Property Casualty Company and stylized as *Complaint Under Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 7001 of Genever Holdings LLC Against AIG Property Casualty Company Under Various Insurance Policies for Breach of Contract and Declaratory Judgment*, and docketed as Docket No. 1 in Adv. Proc. No. 23-05007 (the "AIG Litigation"); (c) any and all funds held in deposit accounts in the name of the DIP Borrowers, including, without limitation, the Cash Deposit; and (d) Genever BVI's ownership interest in Genever US.  For the avoidance of doubt, DIP Collateral shall not include any avoidance actions under sections 502(d), 544, 545, 547, 548, 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code, or the proceeds of such avoidance actions.

6. *DIP Liens*.  As security for the DIP Loans, and subject only to the Carve-Out, effective and automatically and properly perfected upon the date of the entry of this DIP Order, and without the necessity of the execution, recordation, perfection, filings by the DIP Lender, or the possession or control by the DIP Agent of, or over, any DIP Collateral, the following valid, binding, continuing, enforceable and non-avoidable security interests and liens are hereby granted to the DIP Lender (all such liens and security interests the "DIP Liens").

(a)    <u>Senior Liens</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, enforceable, fully-perfected first priority security interest in and lien upon the DIP Collateral that, on or as of the Petition Date, is not otherwise subject to a lien.  For the avoidance of doubt:

1.  The Sherry Netherland First Lien and the Sherry Netherland's security interest in and first lien on the Cash Deposit (the "<u>Sherry Netherland Cash Deposit Lien</u>" and, together with the Sherry Netherland First Lien, the "<u>Sherry Netherland Senior Liens</u>") are valid and duly perfected and are senior to and have priority in all respects, including payment, to the security interests and liens granted to the DIP Lender with respect to DIP Collateral and the proceeds thereof.

2.  Subject to the Carveout, the DIP Lender shall have a first priority security interest in all DIP Collateral (other than the Coop Interest and the Cash Deposit) including, without limitation, the Borrowers' Litigation Claims (including the AIG Litigation) and Genever BVI's ownership interest in Genever US.  Notwithstanding the foregoing, the Sherry Netherland shall have the right to assert solely an equitable lien in and over any proceeds of the AIG Litigation (but not any other Borrowers' Litigation Claim).  If such equitable lien is asserted, the validity, enforceability, and priority of such asserted equitable lien will be determined by a court of competent jurisdiction (with the Movants believing that the Bankruptcy Court

10

would have sole and exclusive jurisdiction and the Sherry Netherland reserving all rights) under applicable bankruptcy and non-bankruptcy law, and all parties' rights with respect thereto are preserved.

(b)     <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, enforceable, fully-perfected junior security interest in and lien upon the DIP Collateral that (i) on or as of the Petition Date is subject to valid, perfected and unavoidable senior liens in existence immediately prior to the Petition Date or (ii) becomes subject to perfected liens as permitted by section 546(b) of the Bankruptcy Code.  For the avoidance of doubt, the DIP Liens shall be junior to the Sherry Netherland Senior Liens.

(c)     <u>No Cross-Collateralization</u>.  The DIP Liens granted in the property of each DIP Borrower will secure only the obligations of that borrower.

(d)     <u>No Default Under Proprietary Lease</u>.  The Sherry Netherland shall not raise any argument, in connection with the Motion or otherwise, that Genever US defaulted under the Proprietary Lease by granting the security interests and liens described herein.

7.   The DIP Liens shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that any of the DIP Orders or any provision thereof is vacated, reversed or modified, on appeal or otherwise.

8.   *Protection of Rights under the DIP Facility.*  The automatic stay is hereby modified to the extent necessary to permit the DIP Borrowers and the Trustee, as representative of the DIP Lender, as applicable, to take any or all of the following actions, at the same or different time, in each case without further order or application of the Court: (i) file any financing statements, security agreements, notices of liens, and other similar instruments and documents in order to

validate and perfect the liens and security interests granted herein; (ii) grant the DIP Liens and incur all liabilities and obligations set forth herein; and (iii) following a default, exercise all rights and remedies of the DIP Lender in accordance with the DIP Credit Agreement. For the avoidance of doubt and as set forth in the DIP Credit Agreement, the DIP Lender will not take any enforcement action whether by demand foreclosure or other enforcement action, to collect on any obligations arising under the DIP Credit Agreement by realizing upon the whole or part of the Coop Interest or Cash Deposit unless and until there is full payment of the Allowed SN Senior Debt Claim and other SN Senior Debt to the extent allowed.

9.    *Preservation of Rights Granted Under the DIP Orders.*

(a)    Other than the Carve-Out and as permitted in the DIP Credit Agreement, no claim or lien having a priority superior to or *pari passu* with the DIP Claim or the DIP Lien shall be permitted while any of the DIP Loans remain outstanding and, except as otherwise expressly provided in this DIP Order, the DIP Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the DIP Borrowers' estates under section 551 of the Bankruptcy Code; or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    As used in this DIP Order, the term "Event of Default" shall mean the existence of (i) any Event of Default (as defined and under the DIP Credit Agreement) or (ii) any material breach of any of the terms of this DIP Order by the DIP Borrowers. Notwithstanding any order entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise: (i) the DIP Claims and the DIP Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities until all DIP Loans shall have been paid in full (and that such DIP Claim and DIP Liens, shall, notwithstanding such dismissal,

12

remain binding); (ii) the other rights granted by the DIP Order, including with respect to the Carve-Out, shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this DIP Order.

(c)     If any or all of the provisions of this DIP Order are hereafter reversed, modified, vacated or stayed, the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, the DIP Order, and the DIP Credit Agreement with respect to the DIP Loans.

(d)     Except as expressly provided in this DIP Order or in the DIP Credit Agreement, the DIP Liens and the DIP Claim and all other rights and remedies of the DIP Lender granted by the provisions of DIP Credit Agreement shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of the Chapter 11 Cases or by any other act or omission; (ii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the DIP Borrowers waive any discharge as to any remaining DIP Loans.  The terms and provisions of the DIP Credit Agreement shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens and the DIP Claim and all other rights and remedies of the DIP Lender, granted by the provisions of the DIP Credit Agreement shall continue in full force and effect until the DIP Loans are paid in full, as set forth herein and in the DIP Credit Agreement.

10. *Loss or Damage to DIP Collateral.*  Nothing in this DIP Order, the DIP Credit Agreement, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the Trustee of any liability for any claims arising from the prepetition or postpetition activities of the DIP Lender or the DIP Borrowers in connection with their restructuring efforts.

11. *Allowed SN Senior Debt Claim.*  The Sherry Netherland's pre-petition claim for unpaid arrearages owed to the Sherry Netherland under the Proprietary Lease and other corporate documents is hereby allowed as a pre-petition secured claim in the amount of $1,096,186.54, which amount is not subject to challenge or objection by the Movants or amendment or supplementation by the Sherry Netherland (the "Allowed SN Senior Debt Claim").

12.  *Authority to Pay Certain Post-Petition Fees.*  Genever US is authorized to agree to pay, and the DIP Lender, acting through and at the discretion of the Trustee is authorized to advance funds for the payment of, (i) reasonable post-petition fees of the Sherry Netherland's counsel and (ii) Genever US's professionals that have provided, or continue to provide, services to Genever US after the Venue Transfer Date.  Prior to making payments under this paragraph, Genever US shall file a notice with the Court attaching the applicable invoices.  Parties in interest will then have fourteen (14) days to object to such invoices.  If no timely objections are filed with the Court, Genever US is authorized to pay such invoices without further Court order.  If any timely objections are filed, (i) Genever US and the affected professional(s) may file a response to such objection(s) within seven (7) days thereafter and (ii) Genever US shall pay the portion of the

fees and expenses that are not subject to such objection(s).  To the extent that an objection cannot be consensually resolved among the parties, the Court will rule on the matter.

13. Nothing herein or in the Motion constitutes, or shall be construed as, a finding or waiver regarding the allowance or priority of any asserted post-petition amounts that have arisen, or may arise, under the Proprietary Lease and other corporate documents, including, without limitation, claims as a result of the fire in the Apartment, and all parties' rights with respect to such post-petition claims are fully preserved.

14. *DIP Order Governs*.  In the event of any inconsistency between the provisions of this DIP Order, on the one hand, and the DIP Credit Agreement or any other order entered by this Court, the provisions of this DIP Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to and any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this DIP Order and the DIP Credit Agreement.

15. *Binding Effect; Successors and Assigns*.  The DIP Credit Agreement and the provisions of this DIP Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Borrowers, the Trustee, the DIP Lender, the Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and their respective successors and assigns.

16. *No Waiver.*  No delay or failure of the DIP Lender in the exercise of its rights and remedies under the DIP Credit Agreement or this DIP Order, as applicable, shall constitute a waiver, in whole or in part, of any of the DIP Lender's rights hereunder or otherwise.

17. *Effectiveness*.  This DIP Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof.  Notwithstanding

Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this DIP Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this DIP Order.

18. *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this DIP Order.

19. *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

20. *No Third Party Rights*.  Except as explicitly provided for herein, this DIP Order does not create any rights for the benefit of any third party, creditor, or any direct, indirect or incidental beneficiary.

21. *Necessary Action*.  The DIP Borrowers, the Trustee and the DIP Lender are authorized to take all actions as are necessary or appropriate to implement the terms of this DIP Order.

22. *Notice.* Within three (3) business days after entry of this DIP Order, the DIP Borrowers shall serve copies of this DIP Order on the parties having been given notice of the DIP Hearing, to any party that has filed a request for notices with this Court, and to counsel for the Committee.

## **Exhibit 1**

DIP Credit Agreement

# **Exhibit B**

## **Redline**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
------------------------  x
                           :
In re:                     :    Chapter 11
                           :
HO WAN KWOK, et al.,¹       :    Case No. 22-50073 (JAM) :
                           :    (Jointly Administered) :
          Debtors.
                           :
------------------------------------------x    RE: Docket No. [•]2110
```

**ORDER (I) AUTHORIZING CHAPTER 11 TRUSTEE TO EXTEND FINANCING
PURSUANT TO BANKRUPTCY CODE SECTION 363, (II) AUTHORIZING GENEVER
US AND GENEVER BVI TO OBTAIN POST-PETITION FINANCING PURSUANT TO
BANKRUPTCY CODE SECTION 364, (III) GRANTING NON-PRIMING LIENS AND
PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM, (IV)
MODIFYING AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"²) of Genever Holdings LLC ("Genever US"), Genever

Holdings Corporation ("Genever BVI") and Luc A. Despins, in his capacity as the chapter 11

trustee (the "Trustee") of Ho Wan Kwok (the "Individual Debtor"), debtors in these above-

captioned jointly administered cases (the "Chapter 11 Cases"), seeking a final order (the "DIP

Order") pursuant to sections 105(a), 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United

States Code, (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-3 of the Local Rules of

the United States Bankruptcy Court for the District of Connecticut (the "Local Rules"), among

other things (i) authorizing Genever US and Genever BVI (the "DIP Borrowers") to obtain secured

---

¹ The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The
mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul
Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho
Wan Kwok (solely for purposes of notices and communications).

² Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

postpetition financing from Kwok's chapter 11 estate (the "<u>DIP Lender</u>" and, together with the DIP Borrowers, the "<u>Movants</u>") consisting of non-priming secured debtor-in-possession credit facility in an aggregate principal amount of up to $2,000,000 and in the form of the DIP financing credit agreement attached as Exhibit 1 hereto (such agreement, the "<u>DIP Credit Agreement</u>"); (ii) granting related liens and superpriority claims in favor of the DIP Lender as more fully described herein; (iii) modifying the automatic stay to the extent necessary; and (iv) authorizing the Trustee, as representative of the DIP Lender, to enter into the DIP Credit Agreement, all on the terms and conditions set forth in this DIP Order.

The Court having reviewed the Motion and arguments made at the hearing held on [•] (the "<u>DIP Hearing</u>") to consider entry of this DIP Order, and due and sufficient notice of the DIP Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and all applicable Local Rules; and the DIP Hearing having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and that such relief is fair and reasonable and in the best interests of the Movants, their estates, their creditors and all parties in interest, and is essential for the preservation of the value of the DIP Borrowers' estates; and it appearing that the Movants' entry into the DIP Credit Agreement is a sound and prudent exercise of the DIP Borrowers' and the Trustee's business judgment; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.      *Petition Dates and Appointment of Trustee*. Genever US filed its voluntary chapter 11 petition in the New York Bankruptcy Court on October 12, 2020. On February 15, 2022, the Individual Debtor filed with a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. By order dated July 8, 2022, the Court approved the selection of the Trustee. On October 11, 2022, Genever BVI filed its voluntary chapter 11 petition in this Court. Shortly thereafter, by order dated November 3, 2022, the New York Bankruptcy Court granted the Trustee and Genever US's joint motion to transfer venue of Genever US's chapter 11 case to this Court. By order dated November 21, 2022, the Court approved the joint administration of the chapter 11 cases of Genever US, Genever BVI, and the Individual Debtor.

B.      *Jurisdiction and Venue*. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested in this Motion are sections 105(a), 361, 362, 363, 364, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Rule 4001-3 of the Local Rules.

C.      *Committee Formation*. On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Individual Debtor's chapter 11 case. No examiner has been appointed in the Chapter 11 Cases.

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D.    *Notice*. The DIP Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). Proper, timely, adequate, and sufficient notice of the Motion and the DIP Hearing has been provided in accordance with Local Rule 4001-3(g)(7), and no other or further notice of the Motion or the entry of this DIP Order shall be required.

E.    *Findings Regarding the DIP Financing.*

(a)    <u>Cause Exists</u>. Good and sufficient cause has been shown for the entry of this DIP Order and for authorization of the DIP Borrowers to enter into and borrow under the DIP Credit Agreement.

(b)    <u>Need for DIP Financing</u>. The DIP Borrowers have an immediate and critical need to incur the DIP Financing in order to permit, among other things, the funding of expenses of administering their chapter 11 cases and other ~~critically needed~~<u>necessary</u> expenses, such as essential remediation repairs to the Apartment, U.S. Trustee Fees, and professional fees. The DIP Borrowers' access to sufficient liquidity through the incurrence of indebtedness under the DIP Facility provided under the DIP Credit Agreement is necessary and vital for the preservation and maximization of the value of the DIP Borrowers' chapter 11 estates.

(c)    <u>No Credit Available on More Favorable Terms</u>. The DIP Facility is the best source of debtor-in-possession financing reasonably available to the DIP Borrowers at this time. The DIP Borrowers have determined that the DIP Borrowers are unable to obtain adequate credit on more favorable terms than those provided under the DIP Facility.

(d)    <u>Business Judgment and Entire Fairness</u>. Based on the record established in the Motion and at the DIP Hearing, the terms of the DIP Financing pursuant to the DIP Credit Agreement (i) are in each case fair and reasonable, reflect the DIP Borrowers' and the Trustee's exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably

equivalent value and fair consideration, and represent the best financing available and (ii) to the extent applicable, satisfy the entire fairness standard.

(e)    Good-Faith Lender. The DIP Financing is the result of (i) the DIP Borrowers' reasonable and informed determination that the DIP Lender offered the most favorable terms on which to obtain critical postpetition financing and (ii) good-faith considerations by the DIP Borrowers and the Trustee acting as the representative of the Individual Debtor's estate. The terms and conditions of the DIP Facility are reasonable and appropriate under the circumstances. Further, no consideration is being provided to any party to the DIP Facility other than as described in the Motion. The DIP Loans and any obligations of the DIP Borrowers owing to the DIP Lender, in accordance with the terms of the DIP Credit Agreement, have been extended by the DIP Lender in good faith, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Lender (and any successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)    Use of Proceeds of the DIP Facility. The DIP Borrowers will use the proceeds of the DIP Facility consistent with this Order and as provided in the DIP Credit Agreement and only for purposes that are permissible under the Bankruptcy Code.

(g)    Section 506(c) of the Bankruptcy Code. The DIP Lender is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code as provided herein.

(h)    Corporate Authority. The DIP Borrowers and the Trustee (acting as the representative of the DIP Lender) each have all requisite power and authority to execute and deliver the DIP Credit Agreement to which it is a party and to perform its obligations thereunder,

including without limitation, the incurrence of the DIP Loans and the pledge of applicable DIP Collateral.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.    *Disposition.* The relief requested in the Motion is granted on a final basis as set forth herein. Any objections to the Motion with respect to the entry of this DIP Order that have not been withdrawn, waived or settled are hereby denied and overruled on the merits. This DIP Order shall become effective immediately upon its entry.

2.    *Authorization of the DIP Financing and the DIP Credit Agreement.*
   (a)    The DIP Facility is hereby approved on a final basis as set forth herein. The Movants, by this DIP Order, are authorized to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Credit Agreement and such other acts as may be necessary, appropriate or desirable in connection therewith. The DIP Borrowers are hereby authorized to borrow money pursuant to the DIP Credit Agreement, subject to any limitations therein, which shall be used for all purposes permitted by this DIP Order and under the DIP Credit Agreement and subject to the terms and conditions set forth herein and therein. The DIP Lender (acting through the Trustee) is authorized to make the advances described in the DIP Credit Agreement directly to a payee or obligee of the DIP Borrowers, and any such advances will be considered advances under the Credit Agreement.

   (b)    In furtherance of the foregoing and without further approval of this Court, the DIP Borrowers and the Trustee, acting as representative of the DIP Lender, are each authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates,

agreements, charges, deeds, and documents, and to pay the principal, interest, and other amounts described in the DIP Credit Agreement as such amounts become due and payable in accordance with the terms and conditions of the DIP Credit Agreement, and to take any other related actions that may be necessary, desirable or appropriate, all to the extent provided in this DIP Order or the DIP Credit Agreement.

3.     *Carve-Out.* Carve-Out means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (ii) all reasonable and documented fees and expenses up to $40,000 incurred by a trustee under section 726(b) of the Bankruptcy Code and allowed by the Court; and (iii) to the extent allowed by this Court at any time, whether by interim or final order, all accrued and unpaid claims for fees, costs, and expenses of the kind specified in sections 327, 328, 330 and 331 of the Bankruptcy Code incurred by persons or firms retained by the DIP Borrowers after the Venue Transfer Date (the "Carve-Out Professional Fees"). The Carve-Out Professional Fees shall not exceed $350,000. For the avoidance of doubt, the Carve-Out Professional Fees shall exclude any fees required to be paid to any real estate broker. At no time may the total amount owed by the DIP Borrowers exceed the DIP Lender's Commitment less $350,000.

4.     *DIP Claim.* Pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Lender shall be granted an allowed senior secured superpriority administrative expense claim against each of the DIP Borrowers, on a sole and several basis, with priority over any and all other claims against the DIP Borrowers, now existing or hereafter arising, of any kind whatsoever, other than the Allowed SN Senior Debt Claim (as defined herein) and other SN Senior Debt to the extent allowed, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims

arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed senior secured superpriority administrative expense claim (the "DIP Claim") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Claim shall be payable from and have first recourse to (i) the DIP Collateral and all proceeds thereof, subject only to payment of the Carve-Out and the Allowed SN Senior Debt Claim and other SN Senior Debt to the extent allowed and (ii) any other asset of the DIP Borrowers, *provided, however*, that the DIP Claim will not have first recourse to proceeds of any actions under sections 502(d), 544, 545, 547, 548, 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code. For the avoidance of doubt, except for the Carve-Out and the Allowed SN Senior Debt Claim and other SN Senior Debt to the extent allowed, the DIP Claim shall not be made subject to or *pari passu* with any claim heretofore granted or hereinafter granted or created in the chapter 11 cases or any successor case or cases under the Bankruptcy Code (including, without limitation, any case under chapter 7 of the Bankruptcy Code), and such DIP Claim shall maintain its priority as provided herein until all obligations hereunder and under the DIP Credit Agreement have been paid in full. The DIP Claim shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

5. *DIP Collateral*. DIP Collateral shall mean and include the following property and the proceeds of such property: (a) Genever US's interest in (i) the proprietary lease dated March 6, 2015 by and between the Sherry Netherland, Inc., and Genever Holdings LLC for that certain apartment known as Apartment 1801 and the shares appurtenant to such lease; (ii) Genever US's

interest in the proprietary lease dated March 6, 2015 by and between the Sherry Netherland, Inc., and Genever Holdings LLC for that certain apartment known as Maid's Room 2219 and the shares appurtenant to such lease, (iii) Genever US's interest in the proprietary lease dated March 6, 2015 by and between the Sherry Netherland, Inc., and Genever Holdings LLC for that certain apartment known as Maid's Room 719 and the shares appurtenant to such lease (such leases and such shares, collectively, the "Coop Interest"); (b) the proceeds of litigation commenced or to be commenced by Genever BVI or Genever US (the "Borrowers' Litigation Claims"), including, without limitation, the adversary proceeding brought in the Bankruptcy Court by Genever US against AIG Property Casualty Company and stylized as *Complaint Under Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 7001 of Genever Holdings LLC Against AIG Property Casualty Company Under Various Insurance Policies for Breach of Contract and Declaratory Judgment*, and docketed as Docket No. 1 in Adv. Proc. No. 23-05007 (the "AIG Litigation"); (c) any and all funds held in deposit accounts in the name of the DIP Borrowers, including, without limitation, the Cash Deposit; and (d) Genever BVI's ownership interest in Genever US. For the avoidance of doubt, DIP Collateral shall not include any avoidance actions under sections 502(d), 544, 545, 547, 548, 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code, or the proceeds of such avoidance actions.

6. *DIP Liens*. As security for the DIP Loans, and subject only to the Carve-Out, effective and automatically and properly perfected upon the date of the entry of this DIP Order, and without the necessity of the execution, recordation, perfection, filings by the DIP Lender, or the possession or control by the DIP Agent of, or over, any DIP Collateral, the following valid, binding, continuing, enforceable and non-avoidable security interests and liens are hereby granted to the DIP Lender (all such liens and security interests the "DIP Liens").

(a)            Senior Liens. Pursuant to section 364(c)(2) of the Bankruptcy
Code, a valid,

binding, enforceable, fully-perfected first priority security interest in and lien upon the DIP

Collateral that, on or as of the Petition Date, is not otherwise subject to a lien. For the avoidance

of doubt:

1. The Sherry Netherland First Lien and the Sherry Netherland's
security interest in and first lien on the Cash Deposit (the "Sherry
Netherland Cash Deposit Lien" and, together with the Sherry
Netherland First Lien, the "Sherry Netherland Senior Liens") are
valid and duly perfected and are senior to and have priority in all
respects, including payment, to the security interests and liens
granted to the DIP Lender with respect to DIP Collateral and the
proceeds thereof.

2. ~~The~~ Subject to the Carveout, the DIP Lender shall have a first priority
security interest in all DIP Collateral (other than the Coop Interest
and the Cash Deposit) including, without limitation, the Borrowers'
Litigation Claims (including the AIG Litigation) and Genever BVI's
ownership interest in Genever US. Notwithstanding the foregoing,
the Sherry Netherland shall have the right to assert solely an
equitable lien in and over any proceeds of the AIG Litigation (but
not any other Borrowers' Litigation Claim). If such equitable lien is
asserted, the validity, enforceability, and priority of such asserted
equitable lien will be determined by a court of competent jurisdiction
(with the Movants believing that the Bankruptcy Court ~~would have~~
~~sole and~~

_would have sole and_ exclusive jurisdiction and the Sherry Netherland reserving all rights) under applicable bankruptcy and non-bankruptcy law, and all parties' rights with respect thereto are preserved.

(b)    <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, enforceable, fully-perfected junior security interest in and lien upon the DIP Collateral that (i) on or as of the Petition Date is subject to valid, perfected and unavoidable senior liens in existence immediately prior to the Petition Date or (ii) becomes subject to perfected liens as permitted by section 546(b) of the Bankruptcy Code. For the avoidance of doubt, the DIP Liens shall be junior to the Sherry Netherland Senior Liens.

(c)    <u>No Cross-Collateralization</u>. The DIP Liens granted in the property of each DIP Borrower will secure only the obligations of that borrower.

(d)    <u>No Default Under Proprietary Lease</u>. The Sherry Netherland shall not raise any argument, in connection with the Motion or otherwise, that Genever US defaulted under the Proprietary Lease by granting the security interests and liens described herein.

7. The DIP Liens shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that any of the DIP Orders or any provision thereof is vacated, reversed or modified, on appeal or otherwise.

8. *Protection of Rights under the DIP Facility.* The automatic stay is hereby modified to the extent necessary to permit the DIP Borrowers and the Trustee, as representative of the DIP Lender, as applicable, to take any or all of the following actions, at the same or different time, in each case without further order or application of the Court: (i) file any financing statements, security agreements, notices of liens, and other similar instruments and documents in order to

validate and perfect the liens and security interests granted herein; (ii) grant the DIP

Liens and

incur all liabilities and obligations set forth herein; and (iii) following a default, exercise all rights and remedies of the DIP Lender in accordance with the DIP Credit Agreement. For the avoidance of doubt and as set forth in the DIP Credit Agreement, the DIP Lender will not take any enforcement action whether by demand foreclosure or other enforcement action, to collect on any obligations arising under the DIP Credit Agreement by realizing upon the whole or part of the Coop Interest or Cash Deposit unless and until there is full payment of the Allowed SN Senior Debt Claim and other SN Senior Debt to the extent allowed.

9. *Preservation of Rights Granted Under the DIP Orders.*

(a) Other than the Carve-Out and as permitted in the DIP Credit Agreement, no claim or lien having a priority superior to or *pari passu* with the DIP Claim or the DIP Lien shall be permitted while any of the DIP Loans remain outstanding and, except as otherwise expressly provided in this DIP Order, the DIP Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the DIP Borrowers' estates under section 551 of the Bankruptcy Code; or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b) As used in this DIP Order, the term "Event of Default" shall mean the existence of (i) any Event of Default (as defined and under the DIP Credit Agreement) or (ii) any material breach of any of the terms of this DIP Order by the DIP Borrowers. Notwithstanding any order entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise: (i) the DIP Claims and the DIP Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities until all DIP Loans shall have been paid in full (and that such DIP Claim and DIP Liens, shall, notwithstanding such dismissal,

remain binding); (ii) the other rights granted by the DIP Order, including with

respect to the ~~Carve~~

<u>Carve-Out</u>

~~Out~~, shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this DIP Order.

(c)    If any or all of the provisions of this DIP Order are hereafter reversed, modified, vacated or stayed, the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, the DIP Order, and the DIP Credit Agreement with respect to the DIP Loans.

(d)    Except as expressly provided in this DIP Order or in the DIP Credit Agreement, the DIP Liens and the DIP Claim and all other rights and remedies of the DIP Lender granted by the provisions of DIP Credit Agreement shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of the Chapter 11 Cases or by any other act or omission; (ii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the DIP Borrowers waive any discharge as to any remaining DIP Loans. The terms and provisions of the DIP Credit Agreement shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens and the DIP Claim and all other rights and remedies of the DIP Lender, granted by the provisions of the DIP Credit Agreement shall continue in full force and effect until the DIP Loans are paid in full, as set forth herein and in the DIP Credit Agreement.

10. *Loss or Damage to DIP Collateral*. Nothing in this DIP Order, the DIP Credit

Agreement, or any other documents related to these transactions shall in any way be construed or

interpreted to impose or allow the imposition upon the Trustee of any liability for any claims arising from the prepetition or postpetition activities of the DIP Lender or the DIP Borrowers in connection with their restructuring efforts.

11. *Allowed SN Senior Debt Claim*. The Sherry Netherland's pre-petition claim for unpaid arrearages owed to the Sherry Netherland under the Proprietary Lease and other corporate documents is hereby allowed as a pre-petition secured claim in the amount of $1,096,186.54, which amount is not subject to challenge or objection by the Movants or amendment or supplementation by the Sherry Netherland (the "Allowed SN Senior Debt Claim").

12. *Authority to Pay Certain Post-Petition Fees.* Genever US is authorized to agree to pay, and the DIP Lender, acting through and at the discretion of the Trustee is authorized to advance funds for the payment of, (i) reasonable post-petition fees of the Sherry Netherland's counsel and (ii) Genever US's professionals that have provided, or continue to provide, services to Genever US after the Venue Transfer Date. Prior to making payments under this paragraph, Genever US shall file a notice with the Court attaching the applicable invoices. Parties in interest will then have fourteen (14) days to object to such invoices. If no timely objections are filed with the Court, Genever US is authorized to pay such invoices without further Court order. If any timely objections are filed, (i) Genever US and the affected professional(s) may file a response to such objection(s) within seven (7) days thereafter and (ii) Genever US shall pay the portion of the

fees and expenses that are not subject to such objection(s). To the extent that an objection cannot be consensually resolved among the parties, the Court will rule on the matter.

~~12~~13. Nothing herein or in the Motion constitutes, or shall be construed as, a finding or waiver regarding the allowance or priority of any asserted post-petition amounts that have arisen, or may arise, under the Proprietary Lease and other corporate documents, including, without limitation, claims as a result of the fire in the Apartment, and all parties' rights with respect to such post-petition claims are fully preserved.

~~13~~14. *DIP Order Governs*. In the event of any inconsistency between the provisions of this DIP Order, on the one hand, and the DIP Credit Agreement or any other order entered by this Court, the provisions of this DIP Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to and any authorization

contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this DIP Order and the DIP Credit Agreement.

1415. *Binding Effect; Successors and Assigns*. The DIP Credit Agreement and the provisions of this DIP Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Borrowers, the Trustee, the DIP Lender, the Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and their respective successors and assigns.

1516. *No Waiver.* No delay or failure of the DIP Lender in the exercise of its rights and remedies under the DIP Credit Agreement or this DIP Order, as applicable, shall constitute a waiver, in whole or in part, of any of the DIP Lender's rights hereunder or otherwise.

1617. *Effectiveness*. This DIP Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding

Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy

Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this DIP Order

shall be

immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this DIP Order.

~~17~~18. *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this DIP Order.

~~18~~19. *Bankruptcy Rules*. The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

~~19~~20. *No Third Party Rights*. Except as explicitly provided for herein, this DIP Order does not create any rights for the benefit of any third party, creditor, or any direct, indirect or incidental beneficiary.

~~20~~21. *Necessary Action*. The DIP Borrowers, the Trustee and the DIP Lender are authorized to take all actions as are necessary or appropriate to implement the terms of this DIP Order.

~~21~~22. *Notice.* Within three (3) business days after entry of this DIP Order, the DIP Borrowers shall serve copies of this DIP Order on the parties having been given notice of the DIP Hearing, to any party that has filed a request for notices with this Court, and to counsel for the Committee.

## **Exhibit 1**

DIP Credit Agreement