```
              UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF CONNECTICUT
                   BRIDGEPORT DIVISION

In Re                        *   Case No. 22-50073 (JAM)
                             *
HO WAN KWOK and GENEVER      *
 HOLDINGS CORPORATION,       *
                             *
              Debtor.        *


LUC A. DESPINS, et al.,      *   Adv. Proc. No. 23-05017
                             *
                             *   Bridgeport, Connecticut
              Plaintiffs,    *   September 12, 2023
                             *
     v.                      *
                             *
TAURUS FUND, LLC, et al.,    *
                             *
              Defendants.    *
                             *
     *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JULIE A. MANNING
                 UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:


Chapter 11 Trustee:              LUC A. DESPINS, ESQ.
                                 Paul Hastings LLP
                                 200 Park Avenue
                                 New York, NY  10166

For the Chapter 11 Trustee:      G. ALEXANDER BONGARTZ, ESQ.
                                 Paul Hastings LLP
                                 200 Park Avenue
                                 New York, NY  10166




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, CT 06484 (203)929-9992**

APPEARANCES:  (Cont'd)

For the Chapter 11 Trustee:     PATRICK R. LINSEY, ESQ.
                                Neubert Pepe and Monteith
                                195 Church Street,13th Floor
                                New Haven, CT  06510


For the U.S. Trustee:           HOLLEY L. CLAIBORN, ESQ.
                                Office of U.S. Trustee
                                The Giaimo Federal Building
                                150 Court Street, Room 302
                                New Haven, CT  06510


For the Creditors Committee:    KRISTEN B. MAYHEW, ESQ.
                                Pullman & Comley
                                850 Main Street
                                Bridgeport, CT  06601


For The Sherry-Netherland,      SHERRY J. MILLMAN, ESQ.
 Creditor:                      Stroock & Stroock & Lavan
                                180 Maiden Lane
                                New York, NY  10038

                                TARUNA GARG, ESQ.
                                Murtha Cullina, LLP
                                107 Elm Street, Suite 1101
                                Stamford, CT  06902

For the Pacific Alliance        ANNECCA H. SMITH, ESQ.
 Asia Opportunity Fund, LP:     Robinson & Cole, LLP
                                280 Trumbull Street
                                Hartford, CT  06103

```
#2051      INTERIM APPLICATION FOR COMPENSATION FOR PAUL
           HASTINGS LLP, TRUSTEE'S ATTORNEY,
           FEE: $8,251.634.83, EXPENSES: $213,914.83
#2053      INTERIM APPLICATION FOR COMPENSATION (SECOND
           INTERIM) FOR NEUBERT, PEPE & MONTEITH, P.C.,
           TRUSTEE'S ATTORNEY, FEE: $357,587.50,
           EXPENSES: $10,402.59
#2110      JOINT MOTION OF CHAPTER 11 TRUSTEE AN DEBTORS
           GENEVER US AND GENEVER BVI FOR ENTRY OF FINAL
           ORDER (I) AUTHORIZING CHAPTER 11 TRUSTEE TO EXTEND
           FINANCING PURSUANT TO BANKRUPTCY CODE SECTION 363,
           (II) AUTHORIZING GENEVER US AND GENEVER BVI TO
           OBTAIN POST-PETITION FINANCING PURSUANT TO
           BANKRUPTCY CODE SECTION 364, (III) GRANTING NON-
           PRIMING LIENS AND PROVIDING SUPERPRIORITY
           ADMINISTRATIVE EXPENSE CLAIM, (IV) MODIFYING
           AUTOMATIC STAY AND (V) GRANTING RELATED RELIEF
```

1          (Proceedings commenced at 2:04 p.m.)

2                THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3     Kwok.

4                THE COURT:  Good afternoon.  If we could have

5     appearances for the record starting with the Chapter 11

6     Trustee, please.  Do you think no one can hear us?  I think

7     no one can hear us.

8                THE COURTROOM DEPUTY:  Well, that's strange

9     because we're recording.  I don't see anything wrong.

10               THE COURT:  I'm not on mute.

11               THE COURTROOM DEPUTY:  I'm not on mute either.

12               THE COURT:  Can anyone hear us?

13               MR. DESPINS:  Yes, now.

14               THE COURT:  Oh, now he can.  Okay.

15          So we're going to have the courtroom deputy call

16     the case again, please.

17               THE COURTROOM DEPUTY:  Okay.  Case No. 22-50073,

18     Ho Wan Kwok.

19               THE COURT:  Good afternoon.  If we could have

20     appearances for the record starting with the Chapter 11

21     Trustee, please.

22               MR. DESPINS:  Good afternoon, Your Honor.  Luc

23     Despins, Chapter 11 Trustee.

24               THE COURT:  Good afternoon.

25               MR. BONGARTZ:  Good afternoon, Your Honor.  Alex

1    Bongartz of Paul Hastings for the Chapter 11 Trustee.

2            THE COURT:  Good afternoon.

3            MR. LINSEY:  Good afternoon, Your Honor.  Patrick

4    Linsey of Neubert, Pepe and Monteith, counsel for the

5    Trustee and other debtors, and also for the fee application

6    of (indiscernible).

7            THE COURT:  Okay.  Hold on just a minute because

8    your audio is coming through the computers and not through

9    the speakers.  Do you both hear that that issue?  Do you?

10           THE COURTROOM DEPUTY:  I hear that they're lower.

11           THE COURT:  Yeah.  They're not coming through the

12   speakers.  They're coming through the computer.

13           THE COURTROOM DEPUTY:  I don't see anything that's

14   wrong though.  I don't see what could be wrong.  Wait a

15   minute.  Let me just ask Will.

16       (Pause)

17           THE COURT:  All right.  Hold on, everybody, just a

18   moment, please, which is one of the reasons we hold hearings

19   in person.  But it didn't work that way today, so hold on,

20   please.

21       (Pause)

22           THE COURT:  It's going to take just a couple of

23   minutes to fix this problem.  So if everyone can just hold

24   on, please.  Thank you.

25       (Pause)

1      THE COURT:  Okay.  So can everyone hear me now?

2  All right.  Somebody speak and let's see if we make sure it

3  goes through the right speakers, please.

4      Mr. Despins, would you say something, please.

5      MR. DESPINS:  Testing 123, testing.

6      THE COURT:  Is that right?  That's right.  Okay.

7  Good.  Now we can pick up the record appropriately.  Sorry.

8      All right.  So we had taken Mr. Despins'

9  appearance and Mr. Linsey's appearance, so please continue.

10  Mr. Bongartz, you want to go next?

11      MR. BONGARTZ:  Sure.  This is Alex Bongartz again

12  from Paul Hastings on behalf of the Chapter 11 Trustee.

13  Thank you.

14      THE COURT:  Good afternoon.

15      MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

16  Claiborn for the U.S. Trustee.

17      THE COURT:  Good afternoon.

18      MS. MAYHEW:  Good afternoon, Your Honor.  Kristen

19  Mayhew, Pullman & Comley, on behalf of the Official

20  Committee of Unsecured Creditors.

21      THE COURT:  Good afternoon.

22      MS. MILLMAN:  Good afternoon, Your Honor.  Sherry

23  Millman with Stroock & Stroock & Lavan on behalf of the

24  Sherry-Netherland.

25      THE COURT:  Attorney Millman, when you speak

1    again, if you do, if you can just get closer to your mike

2    because it was just very muffled.  Okay?  And as you know,

3    just because we have audio, if it's muffled, the reporter

4    can't pick it up.  So you don't have to say it again, but if

5    you do say anything else, if you just get closer to your

6    microphone I'd appreciate that.

7              Go ahead, Attorney Garg.  Sorry.

8              MS. GARG:  Good afternoon, Your Honor.  It's okay,

9    Your Honor.  Good afternoon.  Taruna Garg on behalf of the

10   Sherry-Netherland.

11             THE COURT:  Good afternoon.

12             MS. SMITH:  Good afternoon, Your Honor.  Annecca

13   Smith, Connecticut counsel for PAX.

14             THE COURT:  Good afternoon.

15             Okay.  Thank you all for being here.

16             When we were looking at the calendar yesterday, we

17   did notice that the matters on the calendar had objection

18   deadlines and no objections were filed.

19             And as Trustee Despins has pointed out in the

20   past, there are certain times when a remote hearing might be

21   possible in order, for many reasons, but one of which is in

22   order to save time and money for the estate.

23             And since none of the matters on the calendar

24   today were objected to, under that specific circumstance, I

25   decided that we would hold these hearings remotely today.

1          Now, I think the first two, the applications for

2     compensation, are fairly straightforward.  I think the DIP

3     motion is fairly straightforward, although it may need more

4     of an explanation for the record.

5          So Trustee Despins, do you want to commence with

6     the compensation applications first?

7          MR. DESPINS:  It's up to you, Your Honor.  I was

8     going to start with the DIP, but I -- but wherever you want

9     to do.

10          THE COURT:  You go ahead then.  Start with the DIP

11     first then --

12          MR. DESPINS:  Okay.

13          THE COURT:  -- which is --

14          MR. DESPINS:  Okay.  Your Honor, this is the DIP

15     motion filed by the Kwok's estate and the two Genever

16     debtors, and it's really a rescue loan from the Kwok estate

17     to the Genever estates, and it is to provide, you know, case

18     financing to the Genever debtors, mostly frankly Genever US,

19     in the amount of up to $2 million.  And I'd like to provide

20     some background on that.

21          As Your Honor knows from prior hearings, Genever

22     US has at this point probably around 20, $25,000 left in the

23     bank.  And Genever BVI has no cash.

24          And because the insurance company has not agreed

25     to pay for the repairs caused by the fire, of course there's

1    litigation on that and that's pending and it's going to go

2    forward, but that's going to take time and, you know, there

3    are things that need to happen immediately to bring this

4    apartment back to a level that is sufficient to sell it or

5    to rent it, although the primary goal is to sell it, and

6    that needs to happen now.

7              And in a sense this motion should really have been

8    heard, and it's on me for not having sequenced it at the

9    same time as the renovation project motion, but they're

10   related in a sense that most of the funding would go to the

11   renovation project at the apartment.

12             And the cost there of doing what they call a white

13   boxing of the apartment, that means to clean up all the

14   damage caused by the fire in that 20 percent area or so of

15   the apartment, and white box that, not bring it back to the

16   way it was, but really put, you know, put white sheetrock

17   and reestablish all the connections of the piping, the

18   plumbing, the electricity, et cetera.

19             It sounds like it's pretty simple, but it's not in

20   the sense that do you need an architect to do that?  Do you

21   need an architect to supervise the various processes that

22   needs to occur?  There's asbestos that was discovered that

23   needs to be remediated.

24             And of course that motion is not before the Court,

25   but I wanted you to understand the magnitude of the project

1    and why we're contemplating a loan of $2 million just

2    essentially to finance that aspect of that case.

3           And there's more to that in the sense that, yes,

4    there will be professional fees for the counsel hired by

5    Genever to pursue the AIG litigation and things like that,

6    but most of the $2 million loan will be going towards the

7    renovation project.

8           And the reason why it can't wait is because this

9    is like the Russian dolls.  You know, basically you need to

10   start with the smallest one and then put more and more and

11   more.

12          So we need to start immediately with the basic

13   work that needs to be done obtaining the permits, et cetera,

14   et cetera, otherwise a year will go by and we'll have done

15   nothing.  And of course we can't do that.  So that's why we

16   need the money now to finance this renovation project.

17          And to be clear, as we said in the motion, the

18   Kwok estate has no obligation to do this.  The Kwok estate

19   is doing this because it wants to preserve the ability to

20   see proceeds from this apartment coming to it.

21          And of course if it didn't lend the money, then

22   this would end up being a total liquidation where no money

23   may be going up to the Kwok estate level.  And, therefore,

24   the Kwok estate, you know, from that point of view, it makes

25   sense to make that loan to preserve that ability.

1           But this is not a risk-free loan.  There are

2    circumstances under which, Your Honor, this loan may not be

3    repaid.  I think that those circumstances will not happen,

4    but that's certainly a possibility.  And I've explained why,

5    Your Honor.  This loan, and I'll be very candid, Your Honor,

6    is one-sided.  You know, there are provisions there that you

7    would never have with a commercial lender.

8           For example, it says that the -- the lender is

9    funding at its discretion, well, that means at my discretion

10   as the Trustee, so that's not an arm's length, you know,

11   loan, but that's because it's done in the spirit of -- for

12   which it is intended.  This is not to shore the recoveries

13   of the Genever US creditors.  This is to preserve the equity

14   value potentially and, therefore, it is a one sided

15   document.

16          So the first part is that loans are made at my

17   discretion.  The payments may be made directly to the

18   vendors.  So for example, I don't have to send money to the

19   Genever US account to pay for the architect.

20          It can pay the architect directly and that will

21   become a loan even though Genever US will not have actually

22   touched the money.  There are provisions like that, Your

23   Honor.  But as I said, this is not a risk-free loan and

24   that's why we need to have these provisions.

25          In addition to that, Your Honor, we've had

1   extensive negotiations with the Sherry-Netherland regarding

2   this loan and their rights, because the Sherry-Netherland --

3   obviously we are -- the apartment is in the Sherry-

4   Netherland, but the Sherry-Netherland is a secured creditor.

5   They have a pledge of the shares and the rights under the

6   lease, and we've agreed that they're senior to our loan.

7   And we've agreed to other accommodations to them.

8          But I would say that generally the Sherry-

9   Netherland, their relationship to date has been extremely

10  constructive, which is counter-intuitive a little bit in the

11  sense that I'm sure a lot of people there are very upset

12  about what happened, but they have been very, very helpful.

13         As you can imagine, if we did not have their

14  cooperation, this would be extremely difficult to do the

15  renovation project and all that because there are so many

16  hoops you have to jump through in New York.  This is a union

17  building, et cetera, et cetera.

18         So the point is the Sherry-Netherland has been

19  extremely supportive to date and I hope that this will

20  continue.  But as part of the DIP loan, we have reached some

21  accomodation agreements with them that are reflected in the

22  DIP order and I wanted to mention that to Your Honor.

23         And Your Honor, we filed a proposed amended,

24  revised amended order for the final DIP, which is at docket

25  no. 2185.  We filed that I believe yesterday.  And the

1   changes, let me just go to the mark to show changes version,

2   the changes are fairly minimal and they were mostly at the

3   request of the U.S. Trustee.

4          And there was a provision.  I mentioned before

5   that there were some accommodations or agreements reached

6   with the Sherry-Netherland, and this would be on page 39 of

7   45 of docket 2185, so that's the marked changes version, but

8   you'll see that paragraph 12 provides that we have the

9   authority to pay the post-petition fees of the Sherry-

10  Netherland, that means counsel for the Sherry-Netherland.

11         And the U.S. Trustee requested, and we agreed, and

12  the Sherry-Netherland also agreed, that prior to making

13  these payments, Genever US will file a notice with the Court

14  attaching the relevant invoices.  There will be a time

15  period for people to object.  And if objections are filed,

16  there will be a hearing.  But that way there's a process for

17  people to be heard if they disagree with the payments that

18  would be made.

19         By the way, this only gives us the authority.  It

20  does not direct us or obligate us to make these payments.

21  But nevertheless there's a built-in provision now to allow

22  people to object to that proposed payment, which is really

23  the change that was reflected from the prior version of the

24  order, which is now -- and then the order that revises this

25  is document 2185, Your Honor.

1          THE COURT:  And at paragraph 12 of the ordered

2     paragraphs, that's what you're talking about right now?

3          MR. DESPINS:  Correct.

4          THE COURT:  Okay.

5          MR. DESPINS:  And on the marked version, it's page

6     39 of 45, paragraph 12, authority to pay certain postage and

7     fees.

8          THE COURT:  Yes, I see it.

9          MR. DESPINS:  So that, Your Honor, unless you have

10    questions, I think that would complete the initial

11    presentation.

12         THE COURT:  I have a few I think minor questions.

13         So I think I heard you say, and I believe this is

14    how I read it, but you can please correct me if I'm wrong,

15    the money is being loaned to Genever USA -- US, but

16    essentially you're going to pay it out of the Kwok estate

17    all these expenses?

18         MR. DESPINS:  Yes.

19         THE COURT:  Okay.  And Genever USA only has

20    $20,000 in its operating account at this time, or somewhere

21    -- I shouldn't say that -- an amount close to $20,000, it

22    might be a little bit more than that?

23         MR. DESPINS:  Correct.

24         THE COURT:  But it doesn't have funds available in

25    order to obtain this kind of financing out in the market?

1        MR. DESPINS:  It would be impossible for Genever

2   US to pay this financing.  Because, one, you would have to

3   be junior to the Sherry-Netherland, which we are, but risk

4   of non-repayment would be very high under certain scenarios.

5   So that the 9 percent interest rate charge here is really a

6   bargain in a sense that there is no way that anyone would

7   lend money on that basis given the risks involved.  And the

8   risks are, to be perfectly blunt, how much of the apartment,

9   you know, white boxed, would sell for?  And two, is there

10  insurance coverage?

11       And we believe there should be insurance coverage,

12  but, you know, insurance litigation, there's always the

13  risk.

14       THE COURT:  Are you talking about the AIG

15  insurance issue or?

16       MR. DESPINS:  Correct.  Correct.

17       THE COURT:  Okay.

18       MR. DESPINS:  That's what I'm talking about.

19       THE COURT:  Okay.

20       MR. DESPINS:  So anybody coming from the outside

21  would have to take that -- those risks that I just

22  described, and I'm not sure anyone would do that.

23       THE COURT:  So you anticipate that the funds will

24  be used to essentially clean up the fire damage, remediate

25  asbestos, but nothing really more, so that the property

1    could be sold, excuse me, shown for sale and hopefully sold?

2    That's the point of this loan?

3              MR. DESPINS:  That's correct, Your Honor.

4              I mean, I know it's hard to believe, and we'll get

5    to that next week I guess when we go through the renovation

6    project, but the costs in New York City to do work on the

7    apartment is crazy, but that's just the nature of the beast.

8              Like architect work, which to my mind should be

9    very simple, but of course I'm not an architect, you know,

10   costs could cost $250,000.  And why?  Because you need to

11   obtain all these permits from the various city departments.

12   You need to -- you need to coordinate because this is a co-

13   op.

14             So for example, the walls are owned by the Sherry-

15   Netherland, so the Sherry-Netherland is going to do some

16   work jointly with us on this, but the coordination of that

17   is huge, which is what the architect is going to do, and et

18   cetera.  So that's why the loan is $2 million.  It's not

19   only -- it's really not mostly to pay professional fees, but

20   it's mostly to pay for this renovation project.

21             THE COURT:  Okay.  I'm just looking to see if I

22   have any more questions.  If you just please give me one

23   moment.

24             Oh, I guess I did have one other question, which

25   isn't, you know, I just didn't understand.  The Sherry-

1    Netherland's first lien, and the security interest, and

2    first lien on the cash deposit, those already exist, don't

3    they?  Those liens?

4              MR. DESPINS:  You mean the Sherry-Netherland

5    liens?

6              THE COURT:  Yes.

7              MR. DESPINS:  Yes, they do exist.  As part of any

8    purchase of a co-op, apparently the co-op has a security

9    interest in the shares.  Those already exist.  They've

10   existed since the apartment was purchased.

11             THE COURT:  Right.  So they're not getting any new

12   liens under this DIP order?  They're just acknowledging the

13   existence of the liens and acknowledging that they're senior

14   to this borrowing?

15             MR. DESPINS:  Correct, Your Honor.

16             THE COURT:  Okay.

17             MR. DESPINS:  And one point.  You just pointed out

18   one of the concessions we made, or one of the agreements we

19   made, to get the Sherry-Netherland on board with this.

20             As Your Honor may know, under the lease with the

21   Sherry-Netherland, there's a prohibition on giving security

22   interest to anyone on the shares.  And of course we are

23   getting security interest on the shares.  And of course we

24   needed to have the Sherry-Netherland's non-objection to that

25   as part of this agreement, so this was part of the give and

1    take that we entered (indiscernible).

2              THE COURT:  Understood.

3              The Sherry-Netherland still has, Attorney Millman,

4    you still, your client still has essentially, and I forget

5    what the terminology is, I apologize, but what essentially

6    is still a security deposit that you -- that was in place,

7    at least we talked about some time ago, is that still --

8    there was about $3 million in an account.  What is the

9    status of that account?

10             MS. MILLMAN:  Your Honor, I just want to make sure

11   first that you can hear me clearly now?

12             THE COURT:  Yes, I can.  Thank you.  I can.  Thank

13   you very much.

14             MS. MILLMAN:  Okay.  Good.  So there's

15   approximately one million in the account at this point.

16             As Your Honor knows, pursuant to an order of Judge

17   Garrity, the Sherry-Netherland is allowed to apply the

18   security deposit toward post-petition maintenance and

19   regular assessments.

20             Right now that usage was paused for that for now

21   positionally on the basis that the apartment is arguably

22   uninhabitable now.  And so for the last few months, really

23   since March, but for a few costs that are not a part of the

24   maintenance, there are other less-significant costs, but

25   they're monthly costs, other than that, we've paused

1    applying the deposit or charging for post-petition

2    maintenance, you know, until we hear from our insurance

3    company.

4              THE COURT:  I see.

5              MS. MILLMAN:  It's about a million dollars.

6              THE COURT:  Okay.  Thank you.  That's helpful to

7    know.

8              All right.  Does anyone else wish to be heard with

9    regard to the DIP financing motion?

10        (No response)

11             THE COURT:  Okay.  Trustee Despins, I'm looking at

12   this order that was submitted yesterday, and I, you know, we

13   found just one or two minor typos that we can correct.

14             On the notice paragraph on what is, I don't know

15   what page, I'm looking at the clean version, which is page 7

16   of 45 of the document that was filed yesterday, I'm looking

17   specifically at page 3, oh, I actually should look at page

18   2, we have to add the hearing date on page 2 so that's ECF

19   No. 2185, page 6 of 45.  At the second paragraph, there's an

20   asterisk and a bracket, that's where we'll need to add the

21   hearing date.

22             And I can see the courtroom deputy nodding her

23   head so she sees where I am.

24             Okay.  On the next page, conclusions of law,

25   paragraph A, third line, it says the individual debtor filed

1  with a voluntary petition, I think it was just filed a

2  voluntary petition.  I think with is an added word.

3            MR. DESPINS:  Yes.  Yes.

4            THE COURT:  On page 8 of 45, lettered paragraph D,

5  where it says notice, I would change that title to notice

6  and service.  And then on the second line of that paragraph

7  D, proper, timely, adequate and sufficient notice and

8  service of the motion and the DIP hearing.

9            I'm looking to the courtroom deputy, if she's

10  following what I'm saying.

11            THE COURTROOM DEPUTY:  I think I missed that last

12  --

13            THE COURT:  Paragraph D.

14            THE COURTROOM DEPUTY:  Yes.

15            THE COURT:  Second line where it's --

16            THE COURTROOM DEPUTY:  Oh.

17            THE COURT:  -- the sentence starts proper, timely,

18  adequate and sufficient notice and service.

19            THE COURTROOM DEPUTY:  Yes.  Okay.

20            THE COURT:  And then in the next line toward the

21  end of the third line, and no other -- no other or further

22  notice or service.

23            THE COURTROOM DEPUTY:  Okay.

24            THE COURT:  Okay?

25            THE COURTROOM DEPUTY:  Yes.

1        THE COURT:  Then if we go to page 10 of 45, which

2    -- in paragraph 1, where it says disposition, the relief

3    requested in the motion is granted on a final basis as set

4    forth herein.  I know the language in the next sentence is

5    standard, but I want it to be clear that no objections were

6    filed, Trustee Despins, so I just would rather it read no

7    objections to the motion have been filed, period.

8        MR. DESPINS:  Of course.

9        THE COURT:  Okay?

10       MR. DESPINS:  Yeah.

11       THE COURT:  And then I don't -- I do not have any

12   further changes to the order.

13       Attorney Claiborn, did you review the order?

14       MS. CLAIBORN:  Yes, Your Honor.

15       THE COURT:  And you, the U.S. Trustee's --

16       MS. CLAIBORN:  I have no other changes.

17       THE COURT:  The U.S. Trustee's Office has no

18   further changes or objections to anything in the order?

19       MS. CLAIBORN:  That's correct, Your Honor.

20       THE COURT:  Okay.  Thank you.

21       Does anyone else wish to be heard with regard to

22   the proposed order?

23    (No response)

24       THE COURT:  Okay.  Then for the reasons stated on

25   the record, and due to the specific circumstances, facts and

1    circumstances of these Chapter 11 cases, the motion for a

2    final debtor-in-possession order is granted, and the

3    proposed order that appears at pages 5 through 21, but then

4    we have to attach the DIP credit agreement as Exhibit 1, can

5    enter with the minor changes noted on the record.

6              Okay?  Thank you.

7              Now we can move on to the applications for

8    compensation.

9              MR. DESPINS:  Thank you, Your Honor.

10             THE COURT:  Thank you.

11             MR. DESPINS:  So the first one I guess I can deal

12   with is the Paul Hastings application, and that's for the

13   period from March 1st, 2023 to June 30th, 2023.

14             We filed an extensive application with details,

15   Your Honor.  And yesterday we filed a revised -- there were

16   no objections that were filed -- we filed a revised proposed

17   order to reflect the reduction that was agreed to with the

18   U.S. Trustee.  And actually, that's just, you know, just to

19   reflect that reduction.

20             And on that point, Your Honor, I will note that I

21   heard you loud and clear, because you probably said four

22   times in the case, that we do -- that you do not expect, you

23   know, these reductions to be ordinary course or something

24   like that, but nevertheless we had extensive discussions

25   with the U.S. Trustee and decided that it would be better

1    for the case generally, and to save Your Honor time, and to

2    minimize fees, because we're talking about fees, to agree to

3    that fee reduction.

4         And I wanted you to understand that we are -- we

5    had heard you loud and clear about this, but nevertheless

6    it's that we decided that it was in the best interest of the

7    case to agree to those fee reductions.  So I believe that

8    that is reflected in the order.

9         Also, we were asked by counsel for Mr. --

10   actually, in this case, it's counsel for the debtor's

11   daughter to provide that the carve out that's contained in

12   the Lady May order, which is at ECF No. 1953, be

13   incorporated in the order the way it was incorporated the

14   last time around, and we did that, Your Honor.

15        Obviously, I'm happy to entertain any questions

16   you may have, but given the lack of objections, unless Your

17   Honor has questions, I don't think I should, you know, go

18   on.

19        THE COURT:  The only question I had is about the

20   Lady May, is what you just described.  I'm not sure I'm -- I

21   don't recall what it is in that prior order that --

22        MR. DESPINS:  Yes.

23        THE COURT:  -- that they're focusing on.

24        MR. DESPINS:  Yeah.  This is paragraph 9 of the

25   Lady May order that provides that if it turns out that they

1    actually own the Lady May, and of course there's an issue

2    about, meaning that if Your Honor does a reversal on appeal

3    not only of the Lady May ownership, but of the alter ego,

4    then they would be entitled to seek disgorgement from the

5    professionals, which is consistent with the practice in this

6    district, which is to provide that there's a sentence that

7    says subject to final adjustment and disgorgement in the

8    event all admin claims are not paid in full.  So that's the

9    -- that's the paragraph.

10          And you may remember, Your Honor, you spent a lot

11   of time on that paragraph when we were going through it.

12   And basically this allows them to seek disgorgement from the

13   professionals to the extent it's finally determined that

14   they own the Lady May.  But, you know, that's --

15          THE COURT:  Okay.

16          MR. DESPINS:  -- really the provision of the Lady

17   May order.

18          THE COURT:  So you're saying that the added

19   language as provided in the order approving the sale of the

20   Lady May preserves their right to seek disgorgement if

21   somehow -- if, it could obviously happen, if on appeal the

22   order approving the sale is overturned is what you're

23   saying?

24          MR. DESPINS:  Correct.

25          THE COURT:  Okay.

1          MR. DESPINS:  Final order.  It has to be by final

2     order.

3          THE COURT:  Okay.  Okay.

4          All right.  Attorney Claiborn, do you wish to be

5     heard on the second interim fee application of Paul

6     Hastings?

7          MS. CLAIBORN:  Thank you, Your Honor.

8          I just want to confirm the understanding and the

9     agreement to the reduction that's been memorialized in the

10    U.S. Trustee's statement that's filed on the document at

11    2170.  And that number matches the number in the revised

12    order submitted by Trustee Despins.

13         THE COURT:  Okay.  Thank you.

14         I'm just looking at the revised order again.

15         So Trustee Despins, am I correct that this will be

16    the last, at least unless something changes, this is going

17    to be the last fee application filed because we're going to

18    be proceeding under the process of the procedures that were

19    set up in the last month or so?

20         MR. DESPINS:  Well, there will be quarterly fee

21    applications filed, but --

22         THE COURT:  Right.  I'm sorry.  That didn't --

23         MR. DESPINS:  -- under that --

24         THE COURT:  I didn't ask the question well.  I

25    apologize.  You're right.  There will be quarterly fee --

1          MR. DESPINS:  No.  But you're absolutely correct.

2     This is the last of these types of applications unless

3     something changes.

4          THE COURT:  Right.  Okay.  Good.  I just want to

5     make sure I'm understanding, and I believe I am.  So you've

6     just confirmed that, so that's fine.

7          Does anyone else wish to be heard on the second

8     interim fee application of Paul Hastings?

9          (No response)

10         THE COURT:  Okay.  Hearing no further comments,

11    and I will state again for the record, no objections have

12    been filed to the second interim fee application of Paul

13    Hastings, which seeks an order approving compensation and

14    reimbursement of expenses for the period of March 1st, 2023

15    through June 30, 2023, I've looked at the revised proposed

16    order, which appears on pages 5 through 7 of ECF 2184, and

17    Attorney Claiborn has confirmed that the dollar amounts in

18    -- on page -- on the first page of the order, which is on

19    page 5 of 2184, is the dollar amount that the United States

20    Trustee's Office and Paul Hastings has agreed to as far as

21    the fees to be awarded to the applicant, the only thing I'm

22    going to do, ask the courtroom deputy to do, Trustee

23    Despins, is in the first paragraph of the order it just says

24    after notice and a hearing, just have the courtroom deputy,

25    she already knows, notice and a hearing held on September

1    12, 2023, just because you never know, sometimes that's very

2    helpful believe it or not to people in the future to know

3    that there was actually a hearing held, and with the many

4    docket entries in this case, I think it is helpful, so

5    otherwise, I have no other changes to the proposed order,

6    and the interim application, the second interim application

7    is granted and the proposed with the minor changes noted on

8    the record will enter.

9         MR. DESPINS:  Thank you, Your Honor.

10        THE COURT:  Thank you.

11        And now we have the final fee application?

12        MR. DESPINS:  Mr. Linsey.

13        MR. LINSEY:  Yes, Your Honor.  That is the

14   application of my firm, Neubert, Pepe and Monteith, as

15   Connecticut counsel and conflict counsel for the Trustee,

16   and as counsel, Connecticut counsel for the Genever debtors.

17        The application seeks allowance of $357,587.50 in

18   fees, $10,402.59 in expenses.  There's a certificate of

19   service, which was filed at 2077 on the docket.  There are

20   no objections.  The United States Trustee has filed a

21   certificate of no objection, which is at 2169.

22        The application itself speaks in considerable

23   detail about the manners in which my firm has been involved

24   in these proceedings.  And I'm happy to answer any questions

25   Your Honor has.

1          Absent that, I would just note that we filed a

2     revised order in the same order that Paul Hastings did which

3     is at 2186.

4          THE COURT:  2186.  Yeah.

5          MR. LINSEY:  Yes, 2186.  And that adds the -- that

6     adds the same language that Trustee Despins referred to

7     referring to the Lady May sale order.  And with that, we

8     would ask that the application be granted.

9          THE COURT:  Okay.  Thank you.

10         Does anyone else wish to be heard on the second

11    interim allowance of compensation and reimbursement of

12    expenses of Neubert, Pepe and Monteith?

13       (No response)

14         THE COURT:  Attorney Claiborn, as Attorney Linsey

15    noted, you filed a statement of no -- the U. S. Trustee's

16    Office filed a statement of no objection, correct?

17         MS. CLAIBORN:  That's correct, Your Honor.  It's

18    document no. 2169.  And I don't have anything to add beyond

19    that.

20         THE COURT:  Thank you.

21         And I see, Attorney Linsey, the language you're

22    referring to in the -- regarding the order approving the

23    sale of the Lady May, adding that to your -- to this order

24    to preserve the rights that were requested in connection

25    with the Paul Hastings order in case there is a final order

1      overturning the sale of the Lady May.

2              The only change we'd need to make is just to add

3      the hearing date in the first paragraph of the proposed

4      order that appears on pages 5 and 6 of ECF 2186.

5              So for all those reasons, the second interim

6      application for compensation of Neubert, Pepe and Monteith

7      is granted, and the proposed order will enter with the

8      minor, with the very minor changes noted on the record.

9              MR. LINSEY:  Thank you, Your Honor.

10             THE COURT:  Thank you.

11             All right.  That concludes all the matters on

12     today's calendar, unless someone has something they have a

13     question about.

14             MR. DESPINS:  Yes, Your Honor.  If I may?

15             THE COURT:  Yes.  Go ahead.

16             MR. DESPINS:  I'm really duty bound to inquire

17     about the status of the criminal stay in our motion to stop

18     that the -- Kwok and Yvette Wang from pursuing that criminal

19     stay matter because we have a deadline coming up of

20     September 21st in that case.  And obviously we would want to

21     avoid that.  So I'm sorry.  I wanted to bring that up.

22             THE COURT:  Well, there was an objection filed to

23     your motion in this, in this court.

24             At the same time, my understanding is that, and

25     you can correct me if I'm wrong, that the district court in

1    the Southern District of New York criminal proceeding is

2    allowing you, as the Trustee of the estates, to file some

3    sort of repsonse, is that correct, to the motion --

4              MR. DESPINS:  That's correct, Your Honor.

5              THE COURT:  -- to the motion to stay filed by Mr.

6    Kwok's criminal counsel in the criminal proceedings,

7    correct?

8              MR. DESPINS:  That's correct.

9              THE COURT:  Okay.  So to -- so I'm going to wait

10   to see what the district court does.

11             This is -- this is not -- I don't know that the

12   bankruptcy court has any authority, and I haven't been able

13   to find any, that would allow a bankruptcy court to tell a

14   party in a criminal proceeding that they can't seek some

15   form of relief from the court in that criminal proceeding.

16   I haven't seen any authority that would provide this court

17   with the authority to do that.

18             MR. DESPINS:  Well, I -- I don't know if you've

19   had a chance to look at the joinder filed by --

20             THE COURT:  I did.  I did.

21             MR. DESPINS:  -- the committee in PAX because I

22   thought they cited a number of cases where --

23             THE COURT:  They cited -- they cited one case

24   which was helpful.  I think the committee cited one case

25   which held that the district court in the criminal

1    proceedings ruled on that motion, not the bankruptcy court.

2    If I'm, Attorney Mayhew, if I'm saying something

3    incorrect, please correct me, but my recollection of the

4    review of the joinder was -- I understand the committee

5    joins and they cited a case which was helpful, because I

6    don't think there were any cases cited before that, but I

7    think what that case said, well, my recollection of what

8    that case said, is that the district court made that, in the

9    criminal action made that determination, not the bankruptcy

10   court, and I think that is an important distinction with a

11   difference.

12   I'm not sure that the bankruptcy court has

13   authority, any authority, to enjoin anyone from doing

14   anything in a criminal proceeding that is not part of the

15   bankruptcy -- I don't know how a criminal proceeding could

16   be part of the bankruptcy case.

17   So I understand you may be frustrated.  And I

18   understand that, you know, you may feel that you would

19   rather this court address the issue, and maybe I'll still

20   have to address the issue after the district court rules,

21   but I don't see -- I am not convinced or persuaded that

22   there's any authority that exists that would authorize a

23   bankruptcy court to stay a debtor who is no longer in

24   possession, who is not only the subject of a criminal

25   proceeding, but, in fact, incarcerated, from seeking relief

1    in that criminal proceeding.  It doesn't mean he's going to

2    obtain that relief, but I don't -- I don't see how the

3    bankruptcy court has the authority to do that, any

4    bankruptcy court.

5          MR. DESPINS:  Your Honor, it's because this is an

6    attempt to control property of the estate.  I mean, if this

7    Chapter 11 case is stayed, the effect on property of the

8    estate would be huge.  You know.  It's just I can't even

9    conceive of it.

10         We had a deadline, for example, the two-year

11   statute of limitations is coming up in February.  If this

12   case is stayed, what's going to happen to all these

13   important questions?

14         THE COURT:  Well, you're going to have to move to

15   extend that statute of limitations, number one.  Number two,

16   the Mahwah mansion is not property of the estate at this

17   time.  That determination hasn't been made.

18         MR. DESPINS:  I know.  No.  But I want to be

19   clear, they're seeking a stay of the entire Chapter 11 case.

20         THE COURT:  No.  I understand.

21         MR. DESPINS:  Not only --

22         THE COURT:  I read it.  I understand.

23         MR. DESPINS:  Okay.

24         THE COURT:  I understand what they're seeking.

25         MR. DESPINS:  Okay.

1       THE COURT:  But the case that the committee cited,

2   the district court did not grant that relief.

3       MR. DESPINS:  Understood.

4       But I don't think there's any precedent.  Your

5   point is that there's no precedent where a bankruptcy court

6   has enjoined such a proceeding.

7       THE COURT:  Correct.

8       MR. DESPINS:  I hear that.  But I don't think

9   there's any case where the relief was sought, except for

10  that Boston District Court case, which sought in the

11  district court, usually sought in the court where the case

12  is pending.

13      But I understand your -- understand your views and

14  I appreciate the feedback, Your Honor.

15      THE COURT:  It may -- I have no idea what's going

16  to occur, but I understand your request.  And it doesn't

17  mean that your request might not be addressed in some way,

18  shape or form at some point, but I don't see any authority

19  to have a bankruptcy court enjoin a criminal defendant from

20  seeking relief in a criminal case.

21      MR. DESPINS:  Understood.

22      THE COURT:  Thank you.

23      MR. DESPINS:  Thank you, Your Honor.

24      THE COURT:  Is there anything further anyone would

25  like to add to the record this afternoon?

1          (No response)

2               THE COURT:  Okay.  That conclude the hearings in

3     the Kwok and Genever-related Chapter 11 cases this

4     afternoon.  Those are the last matters on the calendar, so

5     court is adjourned.  Thank you, all.

6               ALL COUNSEL:  Thank you, Your Honor.

7          (Proceedings concluded at 2:54 p.m.)

8               I, CHRISTINE FIORE, court-approved transcriber and

9     certified electronic reporter and transcriber, certify that

10    the foregoing is a correct transcript from the official

11    electronic sound recording of the proceedings in the above-

12    entitled matter.

13

14    *Christine Fiore*

15    _____          September 14, 2023

16       Christine Fiore, CERT

17

18

19

20

21

22

23

24

25