UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

```
In Re                        *   Case No. 22-50073 (JAM)
                             *
HO WAN KWOK and GENEVER      *   Bridgeport, Connecticut
 HOLDINGS CORPORATION,       *   September 19, 2023
                             *
             Debtors.        *
                             *
* * * * * * * * * * * * * * * *
```

TRANSCRIPT MOTION FOR ENTRY OF ORDER AUTHORIZING
GENEVER HOLDINGS LLC TO OBTAIN SERVICES NECESSARY TO
REMEDIATE AREAS OF SHERRY NETHERLAND APARTMENT
AFFECTED BY MARCH 15, 2023 FIRE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:


Chapter 11 Trustee:              LUC A. DESPINS, ESQ.
                                 Paul Hastings LLP
                                 200 Park Avenue
                                 New York, NY  10166

For the Chapter 11 Trustee:      PATRICK R. LINSEY, ESQ.
                                 Neubert Pepe and Monteith
                                 195 Church Street,13th Floor
                                 New Haven, CT  06510


For the U.S. Trustee:            HOLLEY L. CLAIBORN, ESQ.
                                 Office of U.S. Trustee
                                 The Giaimo Federal Building
                                 150 Court Street, Room 302
                                 New Haven, CT  06510
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, CT 06484 (203)929-9992**

APPEARANCES:   (Cont'd)


For the Creditors Committee:   KRISTEN B. MAYHEW, ESQ.
                               Pullman & Comley
                               850 Main Street
                               Bridgeport, CT  06601

1        (Proceedings commenced at 2:16 p.m.)

2              THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3    Kwok.

4              THE COURT:  Good afternoon.

5              MR. DESPINS:  Good afternoon, Your Honor.

6              THE COURT:  The Courtroom Deputy has already

7    called the case, so if we could please have appearances for

8    the record, starting with the Chapter 11 Trustee, please.

9              MR. DESPINS:  Good afternoon, Your Honor.  Luc

10   Despins, Chapter 11 Trustee.

11             THE COURT:  Good afternoon.

12             MR. LINSEY:  Good afternoon.  Patrick Linsey for

13   the trustee.

14             THE COURT:  Good afternoon.

15             MS. CLAIBORN:  Good afternoon.  Holley Claiborn

16   for the U.S. Trustee.

17             THE COURT:  Good afternoon.

18             MS. MAYHEW:  Good afternoon, Your Honor.  Kristin

19   Mayhew on behalf of the creditors' committee.

20             THE COURT:  Good afternoon.

21             All right.  On the calendar today in the -- this

22   Chapter 11 case is the motion for an order by -- for the

23   debtor, Genever Holdings, LLC, to obtain an order regarding

24   necessary services to remediate areas of The Sherry

25   Netherland apartment.  So I have not seen any written

1    opposition to your motion, Trustee Despins.  Am I correct on

2    that?

3                MR. DESPINS:  You're correct.  We're not aware of

4    any.

5                THE COURT:  Okay.  All right.  So how would you

6    like to proceed this afternoon?

7                MR. DESPINS:  With a short presentation.

8                THE COURT:  Yes.  Thank you.  Go right ahead.

9                MR. DESPINS:  May I approach?

10               THE COURT:  Yes.  Thank you.

11               MR. DESPINS:  Good afternoon, Your Honor.  Luc

12   Despins, Chapter 11 Trustee.  So this is the remediation

13   motion that I forecasted last week at the DIP hearing,

14   because a lot of the funds for the DIP financing will be

15   used for this process.  And we filed this at Docket Number

16   2113, Your Honor.

17               And, you know, as I described it last week, this

18   is really a complex process to bring back the apartment to a

19   condition that is not the same condition that it was in on

20   March 14th but it is in -- that it would be in a condition

21   that it could be sold.  They call that white boxing.  And

22   with white box, the 28 percent of the apartment that was

23   affected by the fire -- but it sounds very simple to say

24   white boxing, but it's more than that.

25               There are a lot of structural items that were

1    destroyed, electrical, plumbing, et cetera.  And so I will

2    describe that as briefly as possible as the motion really

3    goes through that.  And the supplement we filed on the 8th

4    of September at Docket 2183 also discusses this.

5              But, essentially, there are a few work streams

6    that need to happen.  The first one is asbestos related.

7    Apparently, there is a -- the fire exposed the fact that

8    there's asbestos in -- with -- in three different places

9    involving the pipes, the plumbing, near the heaters and also

10   where the asbestos sprayed on the wall as a fire retardant

11   of some kind.

12             So all of this needs to be, one, investigated.

13   And a permit needs to be obtained from the city building

14   department.  Highly regulated.

15             So we had to hire a company that's a asbestos

16   surveyor, to be distinguished from the asbestos removal

17   company.  A lot of that process has already taken place.

18   The surveyor went to take some samples.  They prepared a

19   report.  And they're on the verge of being able to file a

20   application for a permit with the New York City Department

21   of Buildings, that -- the division that deals with asbestos.

22             But because we're seeking a variance -- I'll

23   explain why in a second -- it's going to take four to five

24   weeks before the permit can be obtained.  In the meantime,

25   no other work can be done.

1           So why are we seeking a variance?  Because this

2     will not be done in a completely sealed environment, because

3     the -- some asbestos must be removed from the walls.  There

4     has to be like the equivalent of shower curtain all around,

5     but there has to be access to the wall to remove that area.

6     And that requires a variance.  It requires air monitoring

7     during that process by the surveyor, et cetera, et cetera.

8           So that process is going to take several weeks to

9     get the permit and to actually do the work.  The total price

10    approximately of this surveying, removal process which

11    involves plumbing and electrical, because some items need to

12    be disconnected and reconnected after the asbestos removal

13    has been done, total cost is about $75,000.  It's a lot of

14    money.

15          And after that but also during that time, the

16    architect, which is Acheson, they have been working on a

17    report, a conditions report.  And, basically, the conditions

18    report is really a status report saying you have the

19    following 23 items that need to be fixed.  We just received

20    it on Friday.  It's more than a hundred pages.

21          And, basically, that's the blueprint for the

22    contractors to submit a bid, because now they'll know

23    exactly what needs to be fixed.  And, also, it's a blueprint

24    for the architect himself to prepare the plans to deal with

25    these various issues.  That report and the plans are

1    necessary to obtain bids.  As we describe in here, we commit

2    to obtain or to seek at least three bids from different

3    companies so that it's a competitive bidding process.

4            And I'll be candid, Your Honor.  In the motion,

5    we're asking the Court for some leeway, because, you know,

6    there's a -- there could be a hyper technical view of this,

7    which is we should come back for the plumber, for the

8    electrician, for the surveyor, for the asbestos removal, and

9    for the bids.  The problem with that is that we -- it would

10   delay us tremendously to do that.

11           So we're asking for the Court to bless a process

12   that will involve, by the way, the U.S. Trustee and PAX and

13   the creditors' committee.  They'll be consulting parties.

14   So we're not going to go on our own doing any of this

15   without reviewing the bids and the process with these

16   parties.  But we're asking the court to approve this without

17   having to come back for the various pieces of this, because

18   otherwise it would take months.  It's already going to take

19   months.  This will not be completed, Your Honor, until at

20   least March.

21           And I want to say that the relationship with The

22   Sherry Netherland has been excellent.  They've been very

23   supportive.  There are issues between us that we need to

24   resolve.  They're allocation issues.  Because, as you know,

25   in a co-op, they own the walls, the outside structure.  Some

1    of that is damaged.  That's their responsibility.  We own

2    the inside pieces.

3         But it's really more intricate than that in the

4    sense that -- I'll give you an example.  If windows in the

5    apartment were the original windows, that's the

6    responsibility of The Sherry Netherland.  If they were

7    replaced, that's the responsibility of the owner.  It so

8    happens that they were replaced, so it's our responsibility

9    to deal with things like that.

10        So there are a lot of moving pieces, but we're

11   working -- I'd say knock on wood -- very well with The

12   Sherry Netherland thus far in terms of making sure that the

13   allocation is appropriate, that this is not a ride on

14   Genever, if you will, or on the trustee, because the

15   trustee's funding this.  And so that process is going very

16   well.

17        But, you know, I've always learned in this

18   business to -- you know, to under promise and over deliver.

19   Here, I would be shocked if this were completed by March,

20   meaning it would be -- everything would have to fit into

21   place very, very nicely.

22        This is a union building, so also some rules that

23   apply.  And so this is not a -- like building a house in

24   a -- on a lot in Greenwich, Connecticut.  It's very, very

25   different.

1          So we've explained in the motion and in the

2     supplement -- I should take about the supplement, because

3     we've added a lot more details regarding additional items.

4     And there's a marked show change order which is at pages --

5     starting at page 32 of 36 of Docket Number 2183 which shows

6     the various changes.

7          What we've done, really, is to be more specific.

8     Because before in the motion we said the Court is approving

9     all the work that needs to be done.  Now we're saying you're

10    approving the third-party services, including GBTS.  That's

11    the surveyor.  GEM.  That's the electrician.  Breslaw is the

12    plumber.  And ABF is the asbestos removal company.

13         So there's more precision, but the concept is the

14    same.  And I -- as I said, in terms of selecting the

15    contractors and all that, we intend to work closely with

16    PAX, the U.S. Trustee, and the committee to make sure that

17    they're satisfied everything is going, you know, okay and

18    that everything is appropriate.

19         As I said before, we received no objection to

20    this.  The only point, though, Your Honor, is that I am not

21    sure that Your Honor entered an order limiting notice.  I

22    know we filed the motion, but I was checking before coming

23    to the hearing, but I am not sure that Your Honor entered

24    the proposed order limiting notice.

25         THE COURT:  With regard to the hearing on this

1    motion?

2           MR. DESPINS:  Correct.  We could be wrong and

3    happy to be wrong on that.  But I -- so we did serve it

4    according to what the limiting -- limitation on notice we

5    were seeking from Your Honor.  But my colleagues were under

6    the impression that that order had not been entered.  So if

7    Your Honor were inclined to grant the relief we're seeking,

8    that order, unless you've already entered it, should be

9    entered as well.

10           THE COURT:  I see the notice of hearing on

11   August 30.  Let me go back and see if there's -- I

12   understand.  I don't see one either, so we'll take a look

13   back at that.

14           MR. DESPINS:  Okay.

15           THE COURT:  Because the -- it would have been an

16   order granting -- well, let me see.  I see -- no, that's the

17   different order.  So you're right.  I'm not sure if I do see

18   anything there.  Well, we'll take a look at it.  I

19   understand your point.

20           MR. DESPINS:  Okay.  And on the order that's

21   modified --

22           THE COURT:  Because the motion was -- the motion

23   to limit notice was 2114.

24           MR. DESPINS:  Correct.

25           THE COURT:  And I'm not sure I see an order that

1      relates to that, but we'll take a look at that.

2              MR. DESPINS:  Okay.  And in the order, again,

3      that's attached to the supplement filed at Docket 2183, the

4      marked-to-show-changes version, we've added a provision at

5      the request of the U.S. Trustee saying nothing in this order

6      shall approve the retention and/or compensation of any

7      attorneys.  That's understood.  And we -- then the other

8      changes we made is just to mention the name of these

9      entities so we can show that to them to say you see the

10     Court approved the -- your retention --

11             THE COURT:  Uh-huh.

12             MR. DESPINS:  -- so they feel comfortable with

13     that.  And also we need to put the date of the order today,

14     again if Your Honor were inclined to grant the relief

15     sought.

16             THE COURT:  Yeah.  And I think what happened with

17     2114 is that we had a status conference on 2113 and 2114,

18     because it originally was -- the motion that is on today's

19     calendar, 2113, was filed under the contested matter --

20             MR. DESPINS:  Right.

21             THE COURT:  -- procedure.  But it appeared that it

22     needed attention in a much more expedited manner.  And so we

23     set for status conference 2113 and 2114, which is the motion

24     to limit notice.

25             MR. DESPINS:  I should have raised 2114 at that --

1          THE COURT:  Yeah.  And --

2          MR. DESPINS:  -- at that status conference

3     (indiscernible) --

4          THE COURT:  Right.  Well, I think we talked about

5     it a little bit, but I don't know -- I don't remember what

6     we said.  So I can't tell you anything about that until --

7     unless I listen to what we said or have a -- I don't have to

8     listen.  I think someone's already ordered a transcript.

9          But in any event, I understand your point.  It

10    does appear from a review of the docket sitting here that

11    there is not an order limiting notice, granting that motion

12    to limit.  But I was inclined to do that, so I would be

13    surprised if there would not be an order entered granting

14    that.  I think it was just that we talked about it during

15    the status conference and then didn't have an order enter

16    afterwards, unfortunately.

17         But, I mean, it's not a problem, actually, because

18    we can just do that.  And I do see -- you know, the status

19    conference was held, so -- and a transcript was requested.

20    So I'll be able to figure that out.

21         MR. DESPINS:  Thank you, Your Honor.  So that --

22    in terms of our presentation, that would complete that, Your

23    Honor, unless you have --

24         THE COURT:  No.  So --

25         MR. DESPINS:  -- additional questions.

1          THE COURT:  So my questions are -- they're not

2    substantial.  But I understand and I agree that you should

3    be able to -- you as the trustee of the estate -- or you as

4    the debtor in possession of Genever should be able to go

5    forward and try to remediate the problems in the apartment

6    and the get the apartment in a condition to sell.  I mean,

7    that's what you're trying to do, obviously.

8          And I agree that you shouldn't have to come back

9    for every entity that you need to use to accomplish that

10   goal.  You have to use your professional judgment.  You're

11   bound by that.  And you're doing that.

12         And in this situation, you've asked for specific

13   people to be -- and I looked -- I, you know, pulled up your

14   supplement -- to be noted in the order, and I think that's

15   fine.  I don't think that's a problem.  But I also agree

16   that it doesn't limit you to those parties, that you have to

17   do what you have to do in order to have the apartment be in

18   a better condition than it's in now.

19         And I understand the timing that you've said that

20   you think it will take to accomplish the goal of getting the

21   apartment into a position that will never be the --

22   necessarily the same that it was but in a position for you

23   to be able to address it as an asset of the estate in some

24   way, shape, or form.  So I think that's fine.  I don't have

25   any questions.

1          Except for this.  You said the PAX, Sherry

2     Netherland, the U.S. Trustee, and the committee are all

3     going to be --

4          MR. DESPINS:  Consulting parties.

5          THE COURT:  -- consulting parties, right?  Right.

6     Those are all the parties.  I didn't miss anyone, did I?

7          MR. DESPINS:  The only one is -- I'm not sure that

8     The Sherry Netherland is.  But they -- if they're not, they

9     practically are, meaning I need to look at the --

10          THE COURT:  Yeah.  They may not be defined as a

11     consent party, but you're still --

12          MR. DESPINS:  But -- yeah.

13          THE COURT:  -- you still have to work with them.

14          MR. DESPINS:  They're consulting parties --

15          THE COURT:  Right.

16          MR. DESPINS:  -- not consent parties.  But I -- in

17     any event, they are practically consulting parties, because

18     we don't -- we can't do anything in there without their

19     involvement.  And they're involved at every stage, so it's

20     whatever the -- and I'm trying to find the --

21          THE COURT:  The consultation parties are --

22          MR. DESPINS:  PAX, the committee, the U.S. --

23          THE COURT:  -- PAX, the committee, the U.S.

24     Trustee, and The Sherry Netherland.

25          MR. DESPINS:  Then -- good.

1          THE COURT:  Yeah.

2          MR. DESPINS:  Exactly.  Okay.

3          THE COURT:  Okay.  So I don't have any problem

4     with proceeding in the way that you're proceeding.  In some

5     respects, you know, people could say that -- people -- you

6     could make an argument, but I -- I'm not sure I would, but I

7     think you could make an argument that you could do this

8     without court order.

9          But you now have put everybody on notice, and they

10    have been served, although we -- the limiting of the service

11    is -- under the circumstances of this case, we have been

12    limiting service -- notice and service on certain parties

13    that either electronically file, have consented to

14    electronic notice and service, have filed appearances, are

15    parties involved, or parties listed on a list.  So I have no

16    problem with that.

17         Everyone is on notice of what's happening,

18    including the individual debtor.  And I've seen no

19    objection, no written objections, and there's no one

20    participating in this hearing today that is objecting as far

21    as I know.  I will ask if anyone else wishes to be heard.

22         But I think that it's correct that Genever U.S.

23    should be authorized and empowered to take the actions

24    necessary to effectuate the relief that you seek in the

25    motion and in the supplement.

1        So does anyone else wish to be heard in connection

2   with the motion to obtain services necessary to remediate

3   areas of The Sherry Netherland Apartment?

4        MS. MAYHEW:  Yes, Your Honor.  Kristin Mayhew for

5   the creditors' committee.  Just for the record, we wanted to

6   note that we do support the motion.  The Chapter 11 trustee

7   was gracious enough to share with us a draft of the motion

8   in advance, and we had an opportunity to review that.  We

9   did have some concerns regarding payments to subcontractors

10  and the sharing of costs between the estate and The Sherry

11  Netherland.  But they have been satisfactorily addressed and

12  in the supplement.

13       So we do support the motion and just wanted to

14  note that for the record.

15       THE COURT:  Thank you very much.

16       MS. MAYHEW:  Thank you.

17       THE COURT:  Attorney Claiborn?

18       MS. CLAIBORN:  The U.S. Trustee has no objection,

19  Your Honor.

20       THE COURT:  Okay.  Thank you.

21       I'm just looking at this order that was a little

22  bit -- was revised a little bit from the original order.

23  Nothing -- there's no -- there is -- there are no provisions

24  in the order that concern me.

25       The only thing we'd have to do, turning to the

1  courtroom deputy, is add the hearing date on page 2 of the

2  proposed order.  There's just a blank for today's hearing

3  date.

4           THE COURTROOM DEPUTY:  Okay.

5           THE COURT:  So for all those reasons, Trustee

6  Despins, your motion is granted, and the proposed order that

7  has been revised that's in Docket Number 2183 can enter.

8  Okay?

9           MR. DESPINS:  Thank you, Your Honor.

10          THE COURT:  All right.  Good luck with that,

11  obviously.

12          Are there any other matters we need to address

13  this afternoon?

14          MR. DESPINS:  Actually, Your Honor, I should have

15  started -- just I was looking at my notes -- should have

16  started with this.  In this case, you know, it shouldn't be

17  a surprise, but I did receive a call from The Sherry

18  Netherland on Tuesday of last week saying that there was a

19  big storm in New York on Monday, not this Monday, the Monday

20  a week ago, and there was water that was on the terrace at

21  the 18th floor.  The drains were clogged somehow.  Water,

22  because it overflowed, went down below.

23          So the first apartment is the one that was

24  destroyed because of the fire, of the -- so apparently the

25  damages there are -- I don't want to qualify them, but

1  they're not huge.  But it went down below further.  And

2  there, apparently some artwork was affected by this.  So

3  there is another claim at The Sherry Netherland, so I --

4          THE COURT:  Okay.

5          MR. DESPINS:  -- should have mentioned that at the

6  outset.  I forgot.

7          THE COURT:  So how do you anticipate that's going

8  to be handled?

9          MR. DESPINS:  Well, I made a claim with AIG,

10  and --

11          THE COURT:  Okay.

12          MR. DESPINS:  -- we'll see how that plays out.

13          THE COURT:  All right.  That's fine.  That's what

14  I thought you were saying, but I just wanted to be clear

15  with that.

16          I'm trying to think.  I feel like there were some

17  other things that -- yeah, that I wanted to address.  And

18  there's -- yeah, there's some outstanding -- there was an

19  outstanding motion in the -- one of the adversaries to

20  compel compliance with the preliminary injunction.  You had

21  filed that some time ago.  And it's just -- there's a few

22  outstanding things that I think that are really either moot

23  or have been withdrawn.

24          MR. DESPINS:  Which adversary proceeding was that,

25  Your Honor?

1      THE COURT:  32, 5032.

2      MR. LINSEY:  The demonstration one.

3      THE COURT:  Yeah.

4      MR. DESPINS:  Oh.

5      THE COURT:  The demonstration --

6      MR. LINSEY:  The PAX demonstration one.

7      MR. DESPINS:  Frankly --

8      THE COURT:  Well, just -- I think that --

9      MR. DESPINS:  -- that's off my radar screen --

10     THE COURT:  I think it's almost moot, quite

11  frankly, but --

12     MR. DESPINS:  Because it's on appeal now.

13     THE COURT:  Yes.  Well, not only that.  I just

14  don't think it -- I think it's moot.

15     MR. DESPINS:  Okay.

16     THE COURT:  Okay?  And then but we need to -- if

17  there's some issue, you'll have to raise that.

18     MR. DESPINS:  Yeah.  We'll go back to the office

19  and look at that, Your Honor.

20     THE COURT:  And then on 23-5013, give me a moment.

21  I want to look at that one, because there was something in

22  particular about that.  I just need to look at the docket.

23     So that's involving G Club?

24     MR. DESPINS:  This discovery?  Yes.

25     MR. LINSEY:  Yes.

1      MR. DESPINS:  Yes, Your Honor.

2      MR. LINSEY:  Is this regarding the G Club

3   confidentiality?  Yeah.  We are looking into that as well,

4   Your Honor.  We have had questions.  My understanding was

5   that it was G Club's responsibility to file a response.  So

6   I think -- so there are inquiries that are being --

7      THE COURT:  But I don't think they did.

8      MR. LINSEY:  That's correct.  So my -- the last

9   that I heard --

10      THE COURT:  Well, let me put it the other way.

11   Let me put it in the affirmative.  They did not file a

12   response on the deadline that they were supposed to file a

13   response.  And we had counsel here on several occasions

14   talking about those confidentiality issues.  And they were

15   required -- my recollection is, in that adversary they were

16   required to file a response.  And the date went by, and they

17   didn't file anything.

18      MR. LINSEY:  That's my understanding, Your -- as

19   well, Your Honor.  And I believe that someone was going to

20   reach out to them was the last that I had heard a couple

21   days ago on this.  But there were people on our team who

22   were asking questions about that as well, and we had the

23   same understanding.

24      The only thing I will say, Your Honor, is -- and I

25   just -- this is in the interest of full disclosure.  I don't

1   believe they're a party to the adversary proceeding.  So

2   that was the only reason that we were going to reach out to

3   them and give -- you know, that was the -- rather than

4   filing something in the form of a default --

5          THE COURT:  Well, there was an issue about --

6   remember, you were arguing that they had waived their

7   right --

8          MR. DESPINS:  That's correct.

9          THE COURT:  -- to any privilege and that no right

10  or -- to object or responsiveness as to the G Club documents

11  turned over could be asserted by them.

12         MR. LINSEY:  Correct, Your Honor.

13         THE COURT:  So I don't know where that stands.  I

14  don't know if you need an order that says that.  I don't

15  know.

16         But all I know is that there was a deadline.

17  Counsel asked for a deadline.  She was here.  I recall it.

18  She asked for a deadline.  And it was set.  And nothing was

19  filed.

20         MR. LINSEY:  I think it should have been --

21         THE COURT:  I think we --

22         MR. LINSEY:  Yeah.

23         THE COURT:  I think we, you know, issued rulings

24  with regard to everybody but G Club in that context.  So all

25  I'm saying is if there's something that needs to be done,

1   you have to let us know.

2          MR. DESPINS:  We'll verify and file some kind of

3   report of trustee with respect to, you know, this matter.

4          MR. LINSEY:  And I'm not excusing the missed

5   deadline.  I just wanted to make sure the Court had all

6   information --

7          THE COURT:  No.  I'm not excusing the missed

8   deadline either.

9          MR. LINSEY:  Yeah.

10          THE COURT:  I am just stating that there were

11   already orders entered, and they were carved out of that

12   order, essentially, because they asked to be and because we

13   were going to provide them -- and we did provide a timeline.

14   And they didn't file anything by that timeline.

15          It wasn't a timeline.  It was a deadline.  It was

16   a so-ordered deadline.  They didn't do anything.

17          So whether you need anything or not, I have no

18   idea.  But if you do, you'll have to file something in that

19   adversary proceeding.  Okay?

20          MR. LINSEY:  We'll do that, Your Honor.

21          THE COURT:  I mean, I'm not studying it to the

22   extent to know whether or not you actually need anything at

23   this moment.  I just know it's an outstanding issue as far

24   as prior rulings and essentially carving out that entity in

25   connection with those issues in that adversary proceeding.

1    Okay?

2              MR. DESPINS:  Thank you.

3              THE COURT:  All right.  Is there anything further

4    this afternoon?

5              MR. LINSEY:  There was just one other item which

6    is -- I've gotten some internal nudges about and I believe

7    is under the Court's consideration, which is the sixth 2004

8    exam motion --

9              THE COURT:  Yes, it is --

10             MR. LINSEY:  -- number 279 --

11             THE COURT:  -- under the Court's consideration.

12             MR. LINSEY:  Thank you, Your Honor.

13             THE COURT:  And it -- I would bet that there will

14   be some -- something issued in the next day or so.

15             MR. LINSEY:  Thank you, Your Honor.  Appreciate

16   that.

17             THE COURT:  Okay.  All right.  Thank you.

18             Anything further this afternoon?

19             MR. DESPINS:  No, Your Honor.

20             THE COURT:  Okay.  Then that concludes today's --

21   all the matters on today's calendar, so Court is adjourned.

22   Thank you, all.

23             MR. DESPINS:  Thank you.

24             UNIDENTIFIED:  Thank you, Your Honor.

25             THE COURTROOM DEPUTY:  All rise.  Court is

1    adjourned.

2         (Proceedings concluded at 2:44 p.m.)

3

4

5         I, CHRISTINE FIORE, Certified Electronic Court

6    Reporter and Transcriber, certify that the foregoing is a

7    correct transcript from the official electronic sound

8    recording of the proceedings in the above-entitled matter.

9

10

11

12    _____        September 26, 2023

13        Christine Fiore, CERT

14

15

16

17

18

19

20

21

22

23

24

25