IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-50073 (JAM)<br><br>(Jointly Administered)<br><br>September 29, 2023 |

**G CLUB OPERATIONS LLC'S RESPONSE TO TRUSTEE'S MEMORANDUM CHALLENGING G CLUB'S PRIVILEGE ASSERTIONS IN DOCUMENTS IN HCHK'S POSSESSION AND OPPOSITION TO THE TRUSTEE'S RELATED PROPOSED ORDER**

G Club Operations LLC ("**G Club**") objects to the Chapter 11 Trustee's *Memorandum of Law in Support of Chapter 11 Trustee's Argument that G-Club Operations LLC has Waived any Privilege and has no Right to Object to Responsiveness as to G-Club Documents Turned Over from the Assignee of HCHK Technologies, Inc. to the Trustee Pursuant to Bankruptcy Rule 9019 Settlement Agreement* (Adv. Proc. 23-05013, ECF No. 86)[2] (the "Memorandum" or "Mem."). For the reasons set forth below, the Court properly considered the arguments and properly issued an order that protects G Club's due process rights and does not prejudice the Trustee.

**PRELIMINARY STATEMENT**

1. In its July 28, 2023 Order Approving Pursuant to Bankruptcy Rule 9019 the Chapter 11 Trustee's Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings (ECF No. 2038, the "**Order**"), the Court ordered the Assignee to "make available to G-Club all corporate records (including in electronic form) and other documents" that

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (last four digits of tax identification number: 9595) (the "Debtor"), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] G Club refers to Adv. Proc. 23-05013 as the "Adversary Proceeding" or "Adv. Proc." herein.

"were at any point the property of G Club." (Order ¶ 6(a)). G Club was to "review such corporate records and other documents for privilege and responsiveness to the Trustee's Rule 2004 subpoena of G-Club and produce a privilege log and responsiveness log." *Id*. The Court's Order thus strikes a balance between G Club's rights and the Chapter 11 Trustee's demands. The procedure set out by the Order is sufficient, and only stands to prevent the Chapter 11 Trustee (the "**Trustee**") from reviewing documents that are either privileged or non-responsive – documents to which the Trustee is not entitled to review in the first instance.

2.      Nevertheless, the Trustee accuses G Club of "gamesmanship," claiming its "goal" is "to demand the return of [its] documents" from its vendor, HCHK Technologies ("**HCHK**") so that "there will be no documents left." (Mem. ¶ 21). To date, G Club has produced 124,876 documents to the Trustee and G Club is in the process of finishing its review ahead of a production of an additional 10,000 documents, as well as a privilege log. Thus, the facts contradict the Trustee's assertion that G Club's goal was to prevent the Trustee from reviewing G Club's documents. Instead, the Trustee's efforts to obtain G Club's property through a settlement agreement with a different entity, HCHK, are an attempt to deny G Club its right to determine which documents are responsive and non-privileged and circumvent the proper and orderly process by which document review and production is conducted.

3.      Contrary to the Trustee's assertions, which lack basis in both fact and law, G Club has not waived any rights. G Club contracted with HCHK for the administration of a cloud-based storage and email system for its communications (among other services). That system, Microsoft 365, is a cloud-based enterprise system which is routinely utilized by corporations and law firms. That HCHK was the system's administrator is not relevant to G Club's assertion of privilege; the documents were maintained in "the cloud," and the Trustee has made no assertions (nor can he)

that a single individual other than G Club employees ever reviewed documents maintained on the cloud that hosted G Club domain names. Privileged documents stored in a cloud system administered by a third party simply do not lose their protected status.

4. The Trustee also erroneously claims that *HCHK* must produce G Club documents that are not responsive to the Trustee's subpoena (the "**Subpoena**") (Mem. ¶2), but the Trustee cannot avoid the limits of his own Subpoena. G Club is entitled to perform its review of its own documents in due course like any other party. The Trustee does not get access to any and all documents in existence, to then determine, for himself, what documents are responsive to his own Subpoena or constitute a privileged communication between G Club and its counsel.

5. Recognizing his argument's weaknesses, the Trustee pivots and now argues that G Club documents in HCHK's possession may actually be responsive to the Trustee's subpoena of *HCHK*, complaining that HCHK has turned over fewer than 150 documents. (Mem. ¶¶14, 16). Conspicuously, while the Memorandum mentions the size of HCHK's production to date three times (Mem. ¶¶ 2, 7, 16), it does not mention the size of G Club's production once, because G Club has complied and continues to comply with its discovery obligations.

6. If the Trustee has an issue with HCHK's document production, that dispute is between the Trustee and HCHK; G Club's documents should not be dragged into that dispute. There is no basis for the Trustee to demand HCHK supplement its own production with any documents, much less privileged and non-responsive documents, that belong to G Club.

## **RELEVANT PROCEDURAL HISTORY**

7. In its Order, the Court properly protected G Club's due process rights in connection with the Rule 9019 Settlement by allowing G Club to access its documents. Specifically, the Order stated:

the Assignee shall make available to G-Club all corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee, which were at any point the property of G-Club. Upon receipt, G-Club shall immediately review such corporate records and other documents for privilege and responsiveness to the Trustee's Rule 2004 subpoena of G-Club and produce a privilege log and responsiveness log. G-Club may designate materials it will produce to the Trustee as "confidential" or "highly confidential" in accordance with the Protective Order. (Order ¶ 6(a)).

8. This procedure, as set out by the Court, ensures that G Club can access its information and perform the review that any party undertakes before producing documents. The Order followed the Court's consideration of G Club's submissions and arguments relating the Rule 9019 Motion, including G Club's Notice of Position Regarding 9019 Motion and Proposed Order (ECF No. 1977, the "Notice") and G Club's Supplemental Notice to Modify the Revised Proposed Order Relating to Motion, Pursuant to Rule 9019, Re: Settlement with Assignee of HCHK Entities (ECF No. 2007, the "Supplemental Notice"). G Club incorporates both Notices herein.

9. The Order also provided an August 11, 2023 deadline for the Trustee to "file a brief in support of the Trustee's argument that G-Club has waived any privilege and has no right to object to responsiveness." (Order ¶ 6(b)). On August 11, 2023, the Trustee filed the Memorandum in an Adversary Proceeding to which G Club is not a party, and he failed to file the Memorandum in the main case or otherwise serve G Club. (*See* G Club's Opposition to Trustee's Proposed Supplemental Order Regarding G Club Documents Pursuant to Order Approving Chapter 11 Trustee's Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings, ECF No. 2233 at 2).

10. When the August 11, 2023 deadline passed without (to G Club's knowledge) a filing from the Trustee on this issue, G Club assumed that the Trustee recognized that the procedure ordered by the Court would allow it to review any and all non-privileged, responsive documents belonging to G Club in due course and declined to litigate the issue further in the interest of judicial

4

efficiency and the preservation of the Chapter 11 estate's resources. (*See* Mem. ¶ 3 ("A key aspect of the Rule 9019 Settlement Agreement was to preserve the Chapter 11 estate's resources, including those that would be expended on contested discovery.")).

11. On September 19, 2023, the Court "inquired about this issue during a hearing." (*See* ECF No. 2237). The Trustee's counsel "represented it was his belief that the Trustee's counsel was trying to reach out to G-Club to determine the status of this issue." *Id*.

12. Without having reached out or connected with G Club's counsel about these documents or his Memorandum before or after September 19, 2023, on September 26, 2023, the Trustee's counsel filed (in the same Adversary Proceeding only) a Proposed Supplemental Order compelling G Club to produce to the Trustee all documents produced to G Club by the Assignee. (Adv. Proc. ECF No. 130, Ex. A). This time, however, counsel for the Trustee emailed one of the three attorneys listed as counsel of record for G Club. The Trustee's September 26, 2023 email was the first, and to date, only, communication G Club has received from the Trustee since the Court's Order.

13. That same day, G Club filed an objection to the Trustee's Proposed Supplemental Order, requesting seven days to respond to the Memorandum. (ECF. No. 2233) On September 28, 2023, the Court sustained the objection in part, giving G Club until 5:00 p.m. on September 29, 2023, to respond to the Memorandum.³ (ECF No. 2237).

## ARGUMENT

14. As G Club first stated in its Notice, shortly after the filing of the Rule 9019 Motion, "[n]othing in the proposed settlement between the Trustee and HCHK Technologies, or in any

---

³ The Trustee's tactics with respect to the Memorandum, filing it in an Adversary Proceeding to which G Club is not a party and never providing an unredacted copy of the Memorandum to G Club, and the Proposed Supplemental Order, filing it in the same Adversary Proceeding but sending just one of three G Club counsel of record a copy of it by email, give the impression that the Trustee is engaging in, to use the Trustee's word, "gamesmanship."

5

proposed order, should waive G Club's rights." (ECF No. 1977 at 1). The Trustee's arguments are unavailing for two simple reasons: First, G Club has not waived any privilege through the use of IT services. Indeed, the Trustee's misguided conception of waiver would implicate any business, including any law firm, that employs cloud-based solutions using a third-party for document management. Second, the Trustee's claim that he is entitled to non-responsive documents or documents from *HCHK* ignores that it is in receipt of nearly 125,000 responsive documents which G Club produced, with more to be produced shortly, along with a privilege log.

### I.    G Club Has Not Waived Any Privilege

15.    The Trustee's assertion that "G-Club has waived any privilege to its documents" provided to HCHK is based on a false premise and misstatement of the law. (Mem. ¶ 26). The Trustee states that G Club has "voluntarily disclosed the contents of those documents to three third-parties," but nowhere in the Memorandum does the Trustee identify any document that was "disclosed" and any individual who actually saw the "contents" of a document. *Id*. That is because G Club did not disclose privileged documents to HCHK; HCHK was simply the administrator of a cloud-based enterprise system which is routinely utilized by corporations and law firms. G Club did not "share its purportedly privileged information with" HCHK; it simply contracted for the operation of a document management system with a third-party. *Id*. ¶ 27. It cannot be that any person or entity who employs a similar system has waived the attorney-client privilege.

16.    Recently, the Court of Chancery of Delaware held that having a third party "provide hosting services did not result in a waiver." *Metro Storage Int'l LLC v. Herron*, 275 A.3d 810, 871 (Del. Ch. 2022). There, the court found that email storage by a third-party resulted in an "obligation to keep the informational confidential," and that "[t]he situation is no different than when a lawyer contracts with a services provider to provide email services or to maintain

6

confidential documents in the cloud." *Id*. In a footnote, the Court cited a journal article and an American Bar Association publication, both of which approved of cloud storage; the former even cited Microsoft 365, the cloud-based solution at issue here, as one example that "does not necessarily lead to privilege waiver." *Id*. at 871 n.35.

17. In seeking G Club's privileged documents, the Trustee performs some sleight of hand, characterizing G Club as giving HCHK "access to its documents," but then cites several cases that have nothing to do with *access*. The Trustee fails to point to a single case in which a third-party that provided a cloud-based solution broke privilege. They each involve a third-party who actually learned the substance of the privileged material and several of the Trustee's cases predate cloud-based technology. *See Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519 (S.D.N.Y. 2001) (finding that the presence of nine non-directors and non-attorneys at in-person board meeting waived the potential privilege of board minutes); *Niceforo v. UBS Glob. Asset Mgmt. Americas, Inc.*, 20 F. Supp. 3d 428, 437 (S.D.N.Y. 2014) (finding that a physical notebook maintained by an employee at her employer's office, which her employer reviewed, was not privileged because she did not demonstrate the notebook contained attorney-client communications and she did not make "a reasonable attempt to keep these statements confidential"); *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (finding privilege did not cover a phone call made from prison to a family member where the defendant was aware that it was recorded by prison staff); *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir.1999) (finding that oral communications between a party's lawyer and a third-party investment advisor regarding financial transaction were not covered by the party's privilege where the conversations were to improve the lawyer's understanding of the transaction); *Ampa Ltd. v. Kentfield Capital LLC*, No. 00 Civ. 0508 NRB AJP, 2000 WL 1156860, *1 (S.D.N.Y. Aug. 16, 2000) (finding board minutes

were not privileged where an outside accountant was present at the board meeting and not involved in the legal issue discussed); *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) (finding privilege was waived where potentially privileged physical documents were comingled with non-privileged documents in file cabinets to which a third party had ready access and actively reviewed).

18. The Trustee does not provide any support for the notion that use of a cloud-based solution for document management can waive privilege because there is none.

19. With HCHK merely hosting G Club's data, HCHK could not have shared any of the contents with the Assignee. Indeed, pursuant to the Master Services Agreement, HCHK was obligated to maintain confidentiality. The Assignee certainly had no right or authority to access email domain accounts belonging to G Club and there are no allegations that any member of the Assignee's team did so.[4] Thus, there is no reason to assert any waiver that would have involved the Assignee.

20. The Trustee also mistakenly argues that G Club failed to object to the assignee process by which the assets owned or controlled by HCHK would be sold to G News. (Mem ¶¶ 31, 32). As the Trustee well knows, he filed the Supplemental Emergency *Ex Parte* Motion of Chapter 11 Trustee for Temporary Restraining Order and Preliminary Injunction ("TRO Motion") on June 9, 2023, halting any action in the HCHK assignment proceedings. (Adv. Proc. ECF No. 14.) The Court granted the TRO Motion (Adv. Proc. ECF No. 18), prior to the June 12, 2023 deadline for parties to file objections and the June 13, 2023 hearing date set by the New York Supreme Court regarding the sale of HCHK's assets to G News. Therefore, G Club did not have a meaningful opportunity to object to either the assignment of HCHK's assets to the Assignee, nor

---

[4] And, even if members of the Assignee's team had accessed these accounts, the Assignee was not authorized by G Club to do so. To the contrary, G Club made sure that Assignee and the Trustee were aware the documents were not the Assignee's to access or review, in writing on July 5, 2023.

8

to the proposed sale of the same assets to G News. Regardless, such sale never occurred so the Trustee's argument of waiver triggered by a proposed sale is simply meritless.

## II. The Trustee Has No Right to Review Non-Responsive Documents

21. Just as the Trustee is not entitled to review G Club's privileged documents, he is not entitled to review G Club documents that are not responsive to the Subpoena. In response to the Subpoena, G Club has produced almost 125,000 documents, and is planning on producing more soon, along with a privilege log. G Club anticipates finishing all its document review and a privilege log by mid-October 2023. To the extent that the Trustee wishes it had subpoenaed other documents, it may not use HCHK as a tool to obtain those documents; it must request them from G Club.

22. The Trustee further improperly attempts to use the Subpoena served on *HCHK – and not* G Club, to obtain G Club's property, stating that HCHK's productions "have been woefully deficient." (Mem. ¶ 16). That, however, is irrelevant. The Trustee may not use HCHK's purported failure to produce a meaningful number of documents to force HCHK to produce documents that do not belong to HCHK. The Trustee theorizes that HCHK "was a pass through for monies he was attaining through his 'business' activities that he used in part to fund his opulent lifestyle," and that the Trustee needs "documents related to the services provided" from HCHK. (Mem. ¶ 20). G Club does not object to HCHK's production of HCHK documents responsive to the Trustee's subpoena, nor could it. But G Club documents do not belong to HCHK. If the Trustee has issues with HCHK's alleged non-compliance, that is not G Club's issue, nor does it bear any relevance to the Trustee's requested modification of the Order.

23. Accordingly, the Trustee's smear that "entities like G Club" are engaging in "gamesmanship" so that the Trustee will not have the "ability to review" documents is baseless.

(Mem. ¶ 21). G Club has complied with its discovery obligations and will continue to comply. The Trustee should similarly comply with due process rights, including service obligations.

**WHEREFORE**, for the reasons set forth above, G Club requests that the Court (i) deny the Trustee's demand for HCHK's production of G Club's privileged and non-responsive documents and request to modify the Order and (ii) grant G Club such other relief as is just.

**G CLUB OPERATIONS LLC**

By: */s/ Kellianne Baranowsky*

GREEN & SKLARZ LLC
Jeffrey M. Sklarz (ct20938)
Kellianne Baranowsky (ct26684)
One Audobon St, 3rd Floor
New Haven, CT 06511
Tel: 203-285-8545
jsklarz@gs-lawfirm.com
kbaranowsky@gs-lawfirm.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
Carolina A. Fornos (*pro hac vice*)
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1558
carolina.fornos@pillsburylaw.com

*Attorneys for G Club Operations LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the date set forth below, a copy of the foregoing was served by CM/ECF and/or mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

Date: September 29, 2023                   /s/ Kellianne Baranowsky