```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT


                                    .
                                    .   Case No. 22-50073
IN RE:                              .   Chapter 11
                                    .
HO WAN KWOK and GENEVER             .   915 Lafayette Boulevard
HOLDINGS, LLC,                      .   Bridgeport, CT 06604
                                    .
                 Debtors.           .   Wednesday, September 27, 2023
                                    .   2:01 p.m.
. . . . . . . . . . . . . . . . .   .
```

    TRANSCRIPT OF FINAL APPLICATION FOR COMPENSATION FOR SAXE
        DOERNBERGER & VITA, P.C., OTHER PROFESSIONAL, FEE:
           $230,840.00, EXPENSES: $5,612.00. FILED BY
                SAXE DOERNBERGER & VITA, P.C. [2156];
     APPLICATION TO EMPLOY KROLL, LLC AS FORENSIC INVESTIGATORS
        FILED BY PATRICK R. LINSEY ON BEHALF OF LUC A. DESPINS,
                    CHAPTER 11 TRUSTEE [2162]
              BEFORE THE HONORABLE JULIE A. MANNING
                UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

Chapter 11 Trustee:         Paul Hastings LLP
                            By:  LUC A. DESPINS, ESQ.
                            200 Park Avenue
                            New York, NY 10166
                            (212) 318-6001

For the Chapter 11          Neubert Pepe & Monteith, P.C.
Trustee:                    By:  PATRICK R. LINSEY, ESQ.
                            195 Church Street, 13th Floor
                            New Haven, CT 06510
                            (203) 821-2000

APPEARANCES CONTINUED.

Audio Operator:             Courtroom ECRO Personnel

Transcription Company:      Access Transcripts, LLC
                            10110 Youngwood Lane
                            Fishers, IN 46048
                            (855) 873-2223
                            www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

| | |
|---|---|
| For the Chapter 11 Trustee: | Saxe Doernberger & Vita, P.C.<br>By:  BRIAN J. CLIFFORD, ESQ.<br>35 Nutmeg Drive, Suite 140<br>Trumbull, CT  06611<br>(203) 287-2100 |
| For Pacific Alliance Asia Opportunity Fund L.P.: | Robinson & Cole, LLP<br>By:  ANNECCA H. SMITH, ESQ.<br>280 Trumbull Street<br>Hartford, CT  06103<br>(860) 275-8325 |
| For the U.S. Trustee | Office of the United States Trustee<br>By:  STEVEN E. MACKEY, ESQ.<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510<br>(203) 773-2210 |

```
 1        (Proceedings commence at 2:01 p.m.)

 2             THE CLERK:  22-50073, Ho Wan Kwok and Genever

 3  Holdings LLC.

 4             THE COURT:  Okay.  Good afternoon.  If we could have

 5  appearances for the record, please, starting with the Chapter

 6  11 Trustee.

 7             MR. DESPINS:  Good afternoon, Your Honor.  Luc

 8  Despins for the Chapter 11 Trustee.

 9             MR. LINSEY:  Good afternoon, Your Honor.  Patrick

10  Linsey for the Trustee.

11             MR. CLIFFORD:  Good afternoon, Your Honor.

12  Brian Clifford for the Trustee.

13             MS. SMITH:  Good afternoon, Your Honor.  Annecca

14  Smith, Robinson & Cole on behalf of PACS.

15             MR. MACKEY:  Steven Mackey for the U.S. Trustee.

16             THE COURT:  Good afternoon to everyone.  Oh, I think

17  -- wait a minute.  I think there's somebody else maybe coming

18  in?  Who is iPhone 21, please?

19             MR. DESPINS:  That's Mr. Pfeiffer, who is the

20  business representative from Kroll, Your Honor.  He's just

21  there in case the case -- the Court has questions regarding the

22  Kroll retention.

23             THE COURT:  Okay.  Let's change -- we'll change his

24  name to Mr. Pfeiffer, please.

25             Okay.  There are two matters on the calendar this
```

1   afternoon.  The -- in the Kwok cases, the final application for

2   compensation of counsel -- special counsel to the debtor, Saxe

3   Doernberger & Vita, and then the application to employ Kroll.

4            Trustee Despins, how would you like to proceed?

5            MR. DESPINS:  I think we could start with the Saxe

6   final application.  I see Mr. Clifford is there.  I don't think

7   there are any objections but to the extent the Court has

8   questions or other parties have questions, Mr. Clifford is

9   there to answer them.

10           THE COURT:  And this will be the final fee

11  application for Kroll.  I'm sorry -- I said that -- I'm looking

12  at the word Kroll as I'm talking.  For Saxe Doernberger & Vita,

13  correct?

14           MR. DESPINS:  That's correct, Your Honor.

15           THE COURT:  Okay.

16           MR. CLIFFORD:  Correct, Your Honor.

17           THE COURT:  All right.  Mr. Mackey, the United States

18  Trustee's Office has reviewed this application and filed a

19  statement of no objection.  Is that correct?

20           MR. MACKEY:  We have, Your Honor.  As for the

21  employment application, our statement of no objection is 2231.

22           THE COURT:  Not the employment application, the

23  application for compensation.

24           MR. MACKEY:  For our -- for compensation, Your Honor,

25  it's 2206 is the statement of no objection.

1          THE COURT:  Okay.  Thank you.  All right.  The fee

2   application -- the final fee application, I've reviewed it.

3          No one has filed any written objections to the fee

4   application.  There is no one participating in the hearing

5   today that is objecting to the fee application.  The United

6   States Trustee's Office has filed a statement of no objection

7   with regard to the fee application -- the application for

8   compensation, which as Attorney Mackey stated, is ECF Number

9   2206.  Is there anything -- is there anyone wish to be heard

10  with regard to the final application for compensation of Saxe,

11  Doernberger & Vita?

12          I noticed there's a couple of typos in the order.

13  We're going to fix the order so that it says it's a final

14  application and note today's hearing date.  I think Paragraphs

15  4, 5, and 6 of the proposed order are not necessary and they're

16  duplicative of the things that are in the first three ordered

17  paragraphs, so I'm not going to include those provisions in the

18  order unless someone has a problem with that.  I'd like them to

19  address that now, if you do.  Otherwise, that's how the

20  proposed order will be revised before it is docketed and the

21  application -- the final application is granted.

22          Okay.  Hearing nothing, then the final application of

23  Saxe, Doernberger & and Vita for compensation of special

24  insurance coverage counsel is granted.  And the proposed order

25  will be revised as noted on the record and we'll enter.

1            MR. CLIFFORD:  Thank you, Your Honor.

2            THE COURT:  Thank you.

3            MR. DESPINS:  Thank you.  And Your Honor, on the

4    Kroll retention, Mr. Linsey is going to handle that.

5            THE COURT:  Okay.  Go right ahead, Attorney Linsey.

6            MR. LINSEY:  Thank you, Your Honor.  I just have a

7    brief presentation on the application to employ Kroll as

8    forensic investigators.  The Trustee requires this type of

9    professional assistance both to uncover and analyze information

10   that's necessary to understand the debtor's finances and to

11   assist the Trustee with forensic analysis in connection with

12   the Trustee's prosecution of adversary proceedings that have

13   been and will be securing property of the estate.

14           As we've discussed in a number of contexts, the

15   debtor's finances, and particularly the manner in which assets

16   have flowed throughout entities and individuals associated with

17   the debtor is convoluted.  The Trustee believes that Kroll can

18   help untangle the web of the debtor's business and financial

19   interests.  Kroll has assisted in a number of complex

20   bankruptcy cases, providing exactly that sort of expertise,

21   including in Lehman Brothers Holding and the Madoff case, for

22   two examples, from the Southern District of New York.

23           The Trustee -- I want to emphasize this -- has

24   negotiated discounts to Kroll's typical hourly rates.  Those

25   discounts go on a sliding scale for a minimum of 10 percent to

1    the Kroll professionals with lower rates to a maximum of 25

2    percent discount to the Kroll professionals with their higher

3    billing rates.  The Trustee believes that these discounts will

4    generate substantial savings for the estate.  And more

5    generally, we believe that the investment in Kroll's services

6    will return substantial value to the estate by ensuring that

7    the debtor's financial interests are understood and that estate

8    assets are recovered for the benefit of creditors.

9            In fact, Kroll is already at work analyzing many of

10    the business and financial records that the Trustee has

11    obtained and accumulated in the course of Rule 2004 and other

12    discovery in the year that we've been involved in the case --

13    the year-plus.  For that reason, we've asked that the

14    engagement be retroactive to August 2nd, which is within that

15    30-day safe harbor look-back window from the filing of their

16    retention application.

17            The Trustee has filed a certificate of service, which

18    is at ECF 2179.  The U.S. Trustee has filed a statement of no

19    objection, which is at 2231.  Mr. -- the Trustee introduced

20    Allen Pfeiffer, who is the lead professional on the engagement.

21    He is here in the hearing today if the Court has any questions.

22    But if not, we would ask that the Court enter the order

23    approving Kroll's engagement.

24            THE COURT:  Okay.  Thank you.  Does anyone wish to be

25    heard on the application to employ Kroll as the estate's

1    investigator, specifically forensic investigator?

2         Attorney Mackey, your office has reviewed this

3    application.  Is that correct?

4         MR. MACKEY:  That is correct.  It was Attorney

5    Claiborn, of course, who spent most of the time with this case.

6    She reviewed it and it was she who filed the statement of no

7    objection, Your Honor.

8         THE COURT:  Okay.  Thank you.  I do have a question

9    or two about the application and the proposed order.  I don't

10   know why the estate is indemnifying Kroll in connection with

11   this retention.  I don't see any reason why that should occur.

12        MR. DESPINS:  Yeah, let me address --

13        MR. LINSEY:  Your Honor -- oh, go ahead.

14        MR. DESPINS:  And I -- many judges have had this

15   reaction to these requests for indemnification, Your Honor.

16   They have, for better or for worse, become standard, and I know

17   that's not a complete answer to Your Honor.  But they are now

18   standard in all retention orders in a sense that no financial

19   advisor is going to be retained without that language because

20   all the others are getting that same language.  But remember

21   that there's an – exculpate doesn't mean exclusion if they're

22   in bad faith or grossly negligent.

23        THE COURT:  Well, isn't that true regardless of an

24   indemnification?  I mean, if the forensic professionals act in

25   a -- in gross negligence or malfeasance, or -- then they're

1   liable anyway.  So what's the need for an indemnification?

2          MR. DESPINS:  Yes.

3          THE COURT:  I don't understand.  I don't -- I

4   understand anybody can ask for what they want, but why are we

5   putting the estate out as -- with another liability, potential

6   liability that it doesn't have?  I'm, you know, this isn't GM

7   or Chrysler or LTL or any of those other cases where, or

8   Madoff, or the other cases that have been cited to.  And just

9   because somebody asked for it and they got it, doesn't mean

10  that it's appropriate.  And I'm not sure why it's appropriate

11  in this case.

12         MR. DESPINS:  It's because, Your Honor, particularly

13  in this case when you're dealing with somebody as litigious as

14  the debtor or his associates who could bring claims against

15  anyone, that's why it's, you know, I think there's not one firm

16  that wouldn't ask for that and insist on that because of the

17  risk of getting involved and ending up on the wrong end of a

18  lawsuit with the debtor or his associates.

19         THE COURT:  Well, they'd have to sue you because

20  you're the one that retained them.  You're -- they're your

21  professionals.  They're an arm of you.  They're not acting

22  independently.  They're retained by this estate to act as your

23  professional.

24         I understand your point.  I understand your argument

25  that there could be a lawsuit, but that could be true in any

1  case:  Chapter 7, Chapter 11, Chapter 13.  But you are the

2  estate representative who is retaining this professional as an

3  arm of you to carry out the duties that you believe you need to

4  carry out.  And I -- don't get me wrong.  I understand the

5  reason for the request, but, you know, just because you ask for

6  it doesn't mean you're entitled to it.  And why are we putting

7  this liability out there?  I mean, it's, I just don't -- I

8  don't understand it.  If Kroll and I – obviously, they are

9  completely able to carry out these duties and responsibilities

10  as they've done in all these other Chapter 11 cases.

11         So I don't understand what their risk is.  What's the

12  risk?  What's the risk?  What's the need for an

13  indemnification?

14         I don't want to have -- I don't want to sit -- I'm

15  not going to have litigation over indemnification of a

16  professional retained by the Trustee.  So then, because then

17  the dispute's going to be between the Trustee and the

18  professional, and the estate and the professional.  We've got

19  better things to do than to worry about that.

20         MR. DESPINS:  I understand your reaction, Your Honor.

21  But in this case, given the fact that, for example, I've been

22  sued in all, you know, in many other courts, and we got rid of

23  those claims.  But, you know, it is -- it's a different case in

24  that regard, Your Honor.  You've remarked many times that this

25  case is different in certain respects.  This is another

1  instance where it is different because the debtor's associates

2  have no compunction about suing anyone in any other court and

3  your -- I understand your point is that I -- because they're my

4  agent, I would come to their defense under the Barton doctrine

5  or something like that to try to bring it back to Your Honor,

6  et cetera.

7           But in this case, I have to tell you -- I want to be

8  very candid, Your Honor.  We interviewed a number of firms that

9  actually withdrew from the process because of the fear of being

10  on the wrong end of the debtor or his associates.  And to their

11  credit, Kroll stepped up to the plate with the normal standard

12  language.  I understand this is not General Motors.  It's not

13  you know, it's not FTX.  I get all that, but, Your Honor, I

14  would urge the Court to adopt a -- an exception to the general

15  rule that you have, which is there should be no

16  indemnification, because of the external circumstances here.

17           THE COURT:  Well, what's the indemnification

18  protecting against?  Just so that Kroll doesn't have to have a

19  fight in this Court with you?  And you're going to have to

20  pay --

21           MR. DESPINS:  No, no.

22           THE COURT:  And how are we going to see what it is

23  they're entitled to be in -- who's going to determine what

24  they're entitled to under the indemnification provision?

25           MR. DESPINS:  Well, if that's not clear, it should be

1  this Court that determines that.

2          THE COURT:  Right.  So that's my point.

3          MR. DESPINS:  And the first thing that we would do

4  is --

5          THE COURT:  So now that's my point.  So now I'm going

6  to have to have a fight over whether -- what and if and to what

7  extent they should be indemnified.

8          MR. DESPINS:  Well, yes and no.  It depends.  If

9  they're clearly sued for wrong reasons, there's no doubt that I

10 should, because they're my agent, defend them in your court,

11 Your Honor, under the Barton doctrine to say that nobody can

12 sue them without your prior authorization.  I don't expect that

13 there'll be disputes between the Trustee and Kroll over the

14 scope of the indemnification.

15         But your point is well taken that only Your Honor

16 should determine the scope of the --.  And I think that's the

17 way we resolve the agent -- the claims agent as well.  That we

18 resolved that by making sure that Your Honor, as between the

19 Trustee and the equivalent of Kroll was the claims agent in

20 that case, that Your Honor had exclusive jurisdiction over

21 these issues to make these determinations.  And I think that's

22 how Your Honor ultimately got comfortable with that, the

23 language in the engagement letter for the claims agent.

24         So there's no doubt -- I haven't spoken to

25 Mr. Pfeiffer about this, but there's no doubt that this Court

1  should have the final say-so on the issue of indemnification

2  and also claims asserted against Kroll, because we would move

3  all these cases to Your Honor, in any event.  Hopefully

4  that's --

5          THE COURT:  Well, one of the provisions –

6          MR. DESPINS:  -- goes a long way.

7          THE COURT:  -- of the order says, in the event Kroll

8  seeks reimbursement for the debtors' -- for attorneys' fees and

9  expenses.  Why would they need attorneys?  I don't understand

10  that.  They're your professional.

11          MR. DESPINS:  Well, I -- my intention is to defend

12  them, meaning against wrongfully brought claims.  But that is

13  typical in these documents.

14          THE COURT:  I understand.  Believe me, I understand.

15  I understand what the agreements say.  I understand that

16  there's provision -- there's a lot of provisions in a lot of

17  agreements that people just put in.  That doesn't mean

18  they're --

19          MR. DESPINS:  Yes.

20          THE COURT:  -- that they are appropriate.  So,

21  Mr. Pfeiffer, is Kroll not going to proceed if there isn't

22  indemnification language in this agreement with the Trustee?

23          MR. PFEIFFER:  My experience is that we typically do

24  not proceed unless we have these provisions in order.  I have

25  not asked our general counsel specifically with regard to this

1   case, about what we would do, but I am doubtful.

2          THE COURT:  And why is that?  So that I can be

3   educated.

4          MR. PFEIFFER:  Well, as you just discussed, it's

5   become a risk that a firm like ours is not willing to take.

6          THE COURT:  What -- what's your risk though?  That's

7   what I'm trying to understand.

8          MR. PFEIFFER:  We obviously have a firm of --

9          THE COURT:  I'm trying to understand what's your

10  risk.

11         MR. PFEIFFER:  A risk that we get sued.  If we get

12  sued in a case where, you know, just for whatever wrongful

13  action that was -- is not really a suit that we've done

14  anything terrible, but we still have to defend it.  It costs us

15  a lot of money and a lot of legal fees.

16         THE COURT:  Well, isn't that a risk of your business

17  every day?  Every engagement you enter into?  Isn't there

18  always a risk that you'll be sued?

19         MR. PFEIFFER:  Sure.  The risk of being sued by

20  certain -- you know, we take a -- we have a fee.

21         THE COURT:  Right.

22         MR. PFEIFFER:  And we don't want to take a -- and

23  defending the case, which, you know, where we --

24         THE COURT:  Well, in this --

25         MR. PFEIFFER:  -- it becomes economically unfeasible

1    for us.

2              THE COURT:  In this case, the trust -- you're being

3    --- you're not being -- you're not in an engagement with a

4    party.  You're in an engagement with a court officer who is

5    retaining you to carry out certain duties so you're not going

6    to be sued, or if you are sued, the Trustee's going to have to

7    address that issue.

8              MR. PFEIFFER:  Right.

9              THE COURT:  I don't understand why Kroll would be

10   entitled to be paid additional fees and expenses above their --

11   or hourly rates that have already been negotiated in connection

12   -- because there's two possibilities, right?  You get sued

13   because there is gross mismanagement, or you get sued because

14   it's a frivolous suit, or maybe not frivolous -- it's not a

15   sustainable suit.

16             If it's not a sustainable suit, the Trustee's going

17   to deal with that, as the Trustee should.  He's employing you

18   as an officer of this estate.  If it's for gross mismanagement,

19   then you're going to be sued regardless.  And you're going to

20   have to deal with that, and there is no indemnification for

21   that.

22             MR. PFEIFFER:  Okay.

23             THE COURT:  So I'm a little puzzled.  Other than, oh,

24   everybody gets this, so we want it.  And I understand that.

25   But this, you know, this estate already has substantial

1  administrative expenses under -- justified under the

2  circumstances of this case.  I am not inclined to expose the

3  estate to another potential administrative expense when it's

4  not necessary.  Or no one's convinced me yet.

5          MR. LINSEY:  Your Honor, can I just mention one --

6          THE COURT:  No one's convinced me yet why it's

7  necessary other than this is what we want in the documents and

8  if we don't want -- if we don't get it, we're not going to do

9  the work.

10          MR. LINSEY:  Your Honor, can I just add one thing?  I

11  do want to -- and I probably should have mentioned this

12  initially.  The engagement letter that's attached as the

13  exhibit to the retention application was extensively negotiated

14  between the Trustee and Kroll.  We did not just take Kroll's

15  form engagement letter and agree to it.  There are numerous

16  provisions, including the scope of the indemnification

17  provision, including the provision in the engagement letter,

18  that provides this Court sole authority over any claims and

19  controversies, which Your Honor's obviously aware, of during

20  the pendency of this bankruptcy.

21          And other facets of the agreement were negotiated

22  during these -- during an extensive back and forth, including

23  the discounts that Kroll agreed to apply to its hourly rates.

24  That we feel is, under the circumstances, not only a fair, but

25  a competitive package for their engagement.  And that's why we

1  feel that we have, you know, are happy to put it in front of

2  Your Honor and have not seen objections to date.  But I say

3  that, understanding Your Honor's concerns.  I just wanted to

4  make sure that Your Honor had that context.

5          THE COURT:  Thank you.  So Trustee Despins, you seem

6  to be suggesting that you'd go back and talk about this

7  indemnification issue and try to change the provisions of the

8  order and possibly the engagement letter to be more along the

9  lines of the indemnification issues that we've already

10  addressed with regard to a claims agent.  Is that where you're

11  headed?

12          MR. DESPINS:  Well, I was just suggesting that it was

13  just for the purpose of making sure, if it's not already there,

14  that this Court has exclusive jurisdiction to determine the

15  scope of the indemnification, meaning whether they're entitled

16  to it or not.  That is my recollection of what we have – had

17  been agreed to with the claims agent and that is what I would

18  propose here.  It may already be there.  I apologize.  I should

19  know that offhand, but if it's not there, I would go back to

20  Kroll and ask them to agree to that, because I think that's --

21  if it's not there, that it should be there.

22          But I would not ask them to drop their

23  indemnification claim, Your Honor.  I don't think that, based

24  on practical experience in this case of trying to retain a

25  financial advisor, and based on the fact that the debtor and

1   his associates have, in fact, asserted claims against people

2   that are completely frivolous and have been sanctioned by other

3   courts.  I think that I understand fully why Kroll would not

4   proceed without that language.  But clearly Your Honor should

5   be the sole arbiter of whether they're entitled to

6   indemnification or not.  And I believe that's a compromise that

7   was reached with the claims agent.

8           THE COURT:  Okay.  With regard to the claims agent

9   too, I don't understand why they're still incurring fees, by

10  the way.  So I think you need to take a look at that, because

11  they -- I have no understanding why they would be still

12  incurring fees.

13          But in any event, I don't think the order says what

14  you just said, Trustee Despins, number one.  Number two,

15  it's -- it has a lot of other provisions in it that I think are

16  unnecessary.  Number -- the third ordered paragraph is

17  duplicative of the second.  It's unnecessary.  The sex -- the

18  sixth paragraph is not necessary.  Or you can -- if you're

19  saying you shall indemnify Kroll to the extent, well, you're

20  only going to indemnify Kroll if this Court finds that an

21  indemnification -- I don't agree that it's necessary.  But if

22  you're telling me that that's the only way this is going to

23  proceed, then I'll turn my head and let it happen, although I

24  don't understand what the risk is.  The risk -- I don't

25  understand what additional risk there is than the risk that

1  already exists every day with any professional out in the

2  world, because that's the way it works.

3          So in any event, I -- the indemnification is not

4  going to -- whether or not there's any indemnification of

5  anything, would have to be brought before this Court.  And

6  unless and until it is, there is no indemnification.  I don't

7  understand what Paragraph 9 -- why Paragraph 9 is necessary in

8  the order.  Paragraph 10, your increases in rates, you can

9  notify people about increases in rates, but that doesn't mean

10  that they're determined to be allowed by this Court, because

11  that doesn't happen without the Court approving that increase

12  in rate, meaning you can ask for it at the time -- approval at

13  the time you increase the rate, or you can ask for it when you

14  file your fee application.  But just because you increase the

15  rate doesn't mean it's approved.

16          I don't see why Paragraphs 11, 12, 14 and 15 - well,

17  14 are necessary.  With regard to 13, it says, to the extent

18  the application, the engagement letter, and the Pfeiffer

19  declaration are inconsistent with this order, the terms of the

20  order shall govern.  Well, that's all the more reason why this

21  order needs to be fixed, because if it was written the way I

22  think it would be written, there wouldn't be an indemnification

23  provision in it so you'll have to fix that.

24          And I'm not saying -- I'm sure Kroll will do an

25  excellent job.  But I -- and it's -- Mr. Pfeiffer, you're new

1  to the case.  You don't know everything that has happened over

2  the past however many, you know, I guess 18 or more months.

3  But I don't want to have a fight about indemnification.  I

4  think it's unnecessary, and I don't understand your risk yet.

5  I haven't -- it hasn't been persuaded -- I'm not persuaded that

6  the risk that you say that you're trying to protect against --

7  I think it exists today regardless of this case, anybody can

8  sue you at any time.  You're being retained as a professional

9  by the estate.  But I understand that you get it in all your

10 other agreements.  I understand that.

11            But, you know, in any event, I think I've said

12 enough.  I think you need to talk.  You need -- you both need

13 to look at the order and revise it.  I'll allow for the

14 indemnification insofar as you can seek it through this Court

15 and the Court will either approve it or deny it.  But I'm not

16 saying that there's an automatic indemnification that you can

17 just say to the Trustee, we spent this, and you have to pay us

18 that.  That's not going to happen.

19            The fees in this case -- at some point, there's got

20 to be a distribution to creditors.  That's what this case is

21 about, the creditors.  And I appreciate the negotiations that

22 the parties have had prior to today, and I appreciate

23 everything you've said.  But the Court has to look at the big

24 picture and make sure it's not exposing the estate to

25 additional potential administrative expenses that are

1  unnecessary because every administrative expense dollar is one

2  less dollar that goes to creditors.

3          Whether -- I mean, I know you know that, and you may

4  not -- that may not be your concern, but it has to be the

5  Court's concern.  So, does anyone else wish to be heard, or

6  Mr. Pfeiffer, is there anything else you'd like to say?  You've

7  come in and out a little bit on this hearing, so I haven't

8  necessarily heard everything you've said because I think the

9  connection is a little poor, but I'm happy to listen to

10  anything you would like to add to the record.

11          MR. PFEIFFER:  I apologize for the connection.  I

12  understand your concern.  The administrative costs of the

13  estate are also a concern to us.  We will be careful to be

14  efficient and maximize - help -- work with the Trustee to

15  maximize the payoff to creditors, and we appreciate your time

16  here today and look forward to adding a lot of value to the

17  Trustee and to the Court.

18          THE COURT:  Thank you.  Trustee Despins, is there

19  anything else --

20          MR. DESPINS:  Your Honor, we will --

21          THE COURT:  Go ahead.

22          MR. DESPINS:  Well, we, you know, we heard what you

23  said, loud and clear.  We'll talk to Kroll and with Mr. Linsey

24  and come back to Your Honor with a revised proposed order on

25  this.

1          THE COURT:  Yes.  And to be clear, I'm not saying

2   there can't be an indemnification provision, but it's not

3   automatic.  It's subject to Court review and granting or

4   denying that.  And I do understand the position that you're

5   taking, but I -- I'm having - well.  So yes, if you would

6   please do that, if you would submit a revised proposed order.

7          How much time?  I mean, I think, first of all, I

8   agree with Attorney Linsey that this application was filed

9   within the time frame under our local rules, so the effective

10  date of the retention of Kroll would be August 2nd.  So there

11  is -- I don't have an issue with that at all.

12         How much time do you need to talk about and submit a

13  revised order?  I mean, do you think you can do it by the end

14  of the week, or would you like more time than that?

15         MR. DESPINS:  Yes, Your Honor.  Yeah.  I think we can

16  do it by the end of the week, Your Honor.

17         THE COURT:  Well, today's already Wednesday, so if

18  you need more time, then let the courtroom deputy know that

19  you're still working on the revised proposed order, please, and

20  then we won't worry about it.

21         MR. DESPINS:  We'll do, Your Honor.

22         THE COURT:  We'll know that you'll get there.

23  Assuming you both can be satisfied with the language in the

24  proposed order, then the application is granted.  And Kroll

25  will be employed effective as of August 2nd, 2023, and the

1   revised proposed order will be submitted by the parties.  I'm

2   not going to give you a date because today is already Wednesday

3   and the hearing was supposed to be yesterday, obviously.  But

4   if you don't -- if you believe you are not in a position to

5   have a revised proposed order by, you know, the afternoon on

6   Friday, please send an email to the courtroom deputy email box,

7   saying that you're still working on the terms and conditions of

8   the order.  Okay?

9          MR. DESPINS:  Will do, Your Honor.  And, Your Honor,

10   if I may, I just want to cover two points that should not be

11   controversial at all.  Very quickly, just in the nature of

12   updates, if Your Honor -- if I may.

13          THE COURT:  Yes, go right ahead.

14          MR. DESPINS:  Okay.  So the first thing is this

15   morning around ten o'clock or so, we filed a document, a notice

16   to update the Court and parties in the case.  Document Number

17   2234, which attaches a number of pleadings or letters that were

18   filed in the criminal case.  I wanted to make sure the Court

19   has that.  Of course, you haven't seen it yet, but that you

20   know about that.  And I would particularly draw your attention

21   to the first document, which is the Department of Justice

22   submission to the criminal court.

23          In terms of the model of property, I think that Your

24   Honor will find that interesting, but I wanted to also mention

25   something in our submission to the criminal court.  You will

1   see in there that the Trustee has said that to the criminal

2   court that at this time, we will not seek to enforce Your

3   Honor's contempt order of the debtor.  And obviously before

4   agreeing to that, you know, I thought long and hard about it.

5   It was a very difficult decision because, in particular,

6   because I'm sure Your Honor spent hours and hours drafting that

7   opinion, which, again, there's no problem with the opinion at

8   all.  We agree with it 100 percent, but as I said to Your Honor

9   before in the case, to the extent we can avoid direct conflict

10  with the Department of Justice, we will do that, and this was

11  one of these instances.  So we didn't do this because Kwok

12  requested it, but because the Department of Justice requested

13  it, and I wanted Your Honor to know that, that that's the

14  reason why we did that.  And I apologize.

15        I wish, you know, Your Honor did not have to write

16  that very lengthy, very, very thorough decision.  I'm sure

17  there was a lot of pain and suffering involved in that, but

18  anyway, it came after the fact.  And we basically had to agree

19  to that, to avoid direct conflict with the DOJ, so I want to

20  make sure Your Honor knew that.

21        The second thing I want to mention, which is not

22  related at all to this 2234 docket filing, is the fact that we

23  have not given you any news about the *Lady May II* for a long,

24  for a while now.  And so, you may be wondering what's happening

25  with that.  It's been marketed, and there was actually a boat

1   show in Newport about 10 days ago.  We were told by the broker

2   we should wait for that so the boat could be exposed to

3   numerous buyers.  Now we have several -- over, I think, four or

4   five, buyers that are interested, but not at a price that is

5   satisfactory to us at this point.

6          So we're going to do the same process we did with the

7   *Lady May*, which is we told them that they need to submit their

8   highest and best offer by Wednesday of next week.  This is not

9   done pursuant to any court order.  It's the same process we

10  followed with the *Lady May*.  And depending on what transpires

11  on Wednesday of next week, in terms of bids being acceptable or

12  not, we will file a motion submitting for Court approval, the

13  winning bid -- again, subject to higher and better offers in

14  the bankruptcy process.  We've consulted with the Committee,

15  with PACS on this, and the U.S. Trustee, so they're aware of

16  this, and I wanted Your Honor to know about it at all -- as

17  well.

18         We're not asking the Court for any relief.  We're

19  just really telling the Court that this is going on in the

20  background.  The idea here is that, you know, the sale price is

21  not going to be $20 million.  Obviously, it's much less than

22  that.  So therefore, the cost of winterizing, which, I'm not

23  sure that's a verb, but winterizing the boat and maintaining

24  the boat and all that, you know, are large compared to the

25  value of the boat, so we need to sell this boat as quickly as

1  we can, and that's why we're engaging in that process.  I

2  wanted to make sure Your Honor knew about that as well.  But

3  again, we're not asking the Court to take any action on this at

4  this time.  And that would complete my update, Your Honor.

5          THE COURT:  Okay.  Thank you.  I will -- I do know

6  that you filed something today.  And I understand the update on

7  the *Lady May II*.  So thank you.

8          Is there anyone else that wishes to be heard on any

9  matter this afternoon in these cases?  Okay.  Thank you, all

10 then.  I'm not sure when our next hearings are scheduled, but

11 I'm sure there are some hearings.  Oh, there are some hearings

12 coming up on the 17th of October, and maybe there'll be some

13 before, who knows?  But that's -- I think our next scheduled

14 hearings in these cases, unless there's some adversaries that

15 have hearings scheduled, which could be next week or the

16 following week, which is fine.  But in any event, we will go

17 from there.

18         I think we have an adversary next week and then the

19 17th is the next day.  Okay?  All right.  Thank you, all.

20         MR. LINSEY:  Thank you, Your Honor.

21         MR. DESPINS:  Thank you, Your Honor.

22         MR. CLIFFORD:  Thank you, Your Honor.

23         MR. MACKEY:  Thank you, Your Honor.

24         MR. PFEIFFER:  Thank you.

25         THE COURT:  That concludes the hearings this

1  afternoon.  That was the last matter on the calendar.  So court

2  is adjourned.

3          THE CLERK:  Court is adjourned.

4      (Proceedings concluded at 2:41 p.m.)

5                              *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16              C E R T I F I C A T I O N

17

18          I, Teresa Saint-Amour, do hereby certify that the

19  foregoing is a correct transcript from the electronic sound

20  recording provided for transcription and prepared to the best

21  of my professional skills and ability.

22

23

24  TERESA SAINT-AMOUR, AAERT NO. 2020   Dated:  October 3, 2023

25  ACCESS TRANSCRIPTS, LLC