UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 22-50073 (JAM) |
| | * | |
| HO WAN KWOK and GENEVER | * | |
| HOLDINGS CORPORATION, | * | |
| | * | |
| Debtors. | * | |
| * * * * * * * * * * * * * * | * | |
| GENEVER HOLDINGS LLC, | * | Adv. Proc. No. 23-05007 |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| AIG PROPERTY CASUALTY COMPANY, | * | |
| | * | |
| Defendant. | * | |
| * * * * * * * * * * * * * * | * | |
| LUC A. DESPINS, et al., | * | Adv. Proc. No. 23-05017 |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| TAURUS FUND LLC, et al., | * | |
| | * | |
| Defendants. | * | |
| * * * * * * * * * * * * * * | * | |
| LUC A. DESPINS, et al., | * | Adv. Proc. No. 23-05018 |
| | * | |
| Plaintiffs, | * | Bridgeport, Connecticut |
| | * | October 17, 2023 |
| v. | * | |
| | * | |
| GOLDEN SPRING (NEW YORK) LTD, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |
| * * * * * * * * * * * * * * | * | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, CT 06484 (203)929-9992**

```
#1362      MOTION TO COMPEL COMPLIANCE WITH BK.RULE 2004
           SUBPOENA
#  56      ORDER REGARDING PRETRIAL CONFERENCE
#  68      ORDER REGARDING PRETRIAL CONFERENCE
#  19      ORDER REGARDING PRETRIAL CONFERENCE
```

3

APPEARANCES:

| | |
|---|---|
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| For the Chapter 11 Trustee: | AVRAM EMMANUEL LUFT, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| | PATRICK R. LINSEY, ESQ.<br>ANNECCA H. SMITH, ESQ.<br>Neubert Pepe and Monteith<br>195 Church Street,13th Floor<br>New Haven, CT  06510 |
| For the Creditors Committee: | KRISTEN B. MAYHEW, ESQ.<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT  06601 |
| For the Creditor, Pacific<br> Alliance Asia Opportunity<br> Fund L.P.: | STUART M. SARNOFF, ESQ.<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036 |
| For Taurus Fund, LLC: | MICHAEL T. CONWAY, ESQ.<br>Lazare Potter Giacovas &<br> Moyle, LLP<br>747 Third Avenue<br>New York, NY  10017 |
| For AIG Property Casualty: | JOHN FREDERICK O'CONNOR,JR., ESQ.<br>Steptoe & Johnson  LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC  20036 |
| | MICHAEL P. THOMPSON, ESQ.<br>Gordon & Rees LLP<br>Gorden Rees Scully Mansukhani<br>95 Glastonbury Blvd.<br>Suite 206<br>Glastonbury, CT  06033 |

4

APPEARANCES:  (Cont'd.)

For Genever Holdings LLC:     MICHAEL T. McCORMACK, ESQ.
                              O'Sullivan McCormack Jensen &
                               Bliss PC
                              180 Glastonbury Blvd.
                              Suite 206
                              Glastonbury, CT  06033

For UBS AG:                   LISA FRIED, ESQ.
                              Herbert Smith Freehills
                               New York, LLP
                              450 Lexington Avenue, 14th Floor
                              New York, NY  11017

1    (Proceedings commenced at 2:05 p.m.)

2         THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3    Kwok and Genever Holding; 23-05007, Genever Holdings, LLC

4    and AIG Property Casualty Company; 23-05017, Despins, et al.

5    versus Taurus Fund, LLC, et al; 23-05018, Luc A. Despins,

6    Chapter 11 Trustee versus Golden Spring (New York) Ltd., et

7    al.

8         THE COURT:  Okay.  Good afternoon, everyone.  If

9    we could have appearances for the record, please, starting

10   with the Chapter 11 Trustee.

11        MR. DESPINS:  Good afternoon, Your Honor.  Luc

12   Despins, Chapter 11 Trustee.  I'm here with my counsel, Avi

13   Luft.

14        MR. LUFT:  Good morning, Your Honor.

15        THE COURT:  Good afternoon.

16        MR. LINSEY:  Good afternoon, Your Honor.  Patrick

17   Linsey, Connecticut counsel for the Trustee.

18        THE COURT:  Good afternoon.

19        MR. SARNOFF:  Good afternoon, Your Honor.  Stuart

20   Sarnoff on behalf of Creditor PAX.

21        THE COURT:  Good afternoon.

22        MS. SMITH:  Good afternoon, Your Honor.  Annecca

23   Smith of Robinson & Cole, also on behalf of Creditor PAX.

24        MS. MAYHEW:  Good afternoon, Your Honor.  Kristen

25   Mayhew, Pullman & Comley, on behalf of the creditors

1      committee.

2               MS. FRIED:  Good afternoon, Your Honor.  Lisa

3      Fried, from Herbert Smith Freehills, on behalf of UBS AG.

4               THE COURT:  Good afternoon.

5               MR. McCORMACK:  Good afternoon, Your Honor.

6      Michael McCormack, from O'Sullivan McCormack Jensen & Bliss,

7      as special insurance counsel for Genever Holdings, LLC.

8               THE COURT:  Good afternoon.

9               And everyone knows Mr. McCormack --

10              MR. O'CONNOR:  Good afternoon, Your Honor.

11              THE COURT:  -- has stated in his disclosure that I

12     happen to know Mr. McCormack personally.  We lived in the

13     same neighborhood for years.  So if anyone has a problem

14     with that, I would ask that you note that now.  But I just

15     want to make sure everyone is clear that I do know Mr.

16     McCormack personally.

17         (No response)

18              THE COURT:  Okay.  Thank you.

19              Go right ahead, whoever's next.

20              MR. O'CONNOR:  Good afternoon, Your Honor.  John

21     O'Connor for AIG.

22              THE COURT:  Good afternoon.

23              MR. THOMPSON:  Good afternoon, Your Honor.

24     Michael Thompson for AIG as well.

25              THE COURT:  Good afternoon.

1          MR. DESPINS:  Mr. O'Connor, I don't know -- I'm

2     sorry, Judge, to interrupt, but it was hard to hear.  I

3     don't know if it was only us, but maybe -- it's very faint,

4     but I just wanted to make sure you knew that.

5          THE COURT:  You mean, Attorney O'Connor, Trustee

6     Despins?

7          MR. DESPINS:  Yes, Mr. O'Connor.  Yes.

8          THE COURT:  I heard him fine.

9          Did you?

10          MR. DESPINS:  Okay.  Well, then --

11          THE COURT:  I'm turning to the courtroom deputy to

12     make sure.

13          MR. DESPINS:  -- that's what's important.

14          THE COURT:  Yeah.  We heard you fine, Attorney

15     O'Connor.

16          MR. DESPINS:  Okay.

17          THE COURT:  It must have been Trustee Despins'

18     connection.

19          MR. DESPINS:  Apologies.

20          THE COURT:  That's okay.

21          MR. DESPINS:  Okay.

22          UNIDENTIFIED:  Thank you, Your Honor.  I heard it

23     fine too.

24          THE COURT:  Okay.  Thank you.

25          Is there anyone else?

1          Attorney Conway, we took your appearance, correct?

2          MR. CONWAY:  Not yet, Your Honor.  I think I'm the

3     last one.

4          THE COURT:  Okay.  Then please, go ahead.

5          MR. CONWAY:  This is Michael Conway, Lazare Potter

6     Giacovas & Moyle.  I'm appear for Taurus Fund, LLC, Taurus

7     Fund Management, LLC, and Scott Barnett.

8          THE COURT:  Good afternoon.  And thank you.

9          All right.  The first matter on the calendar today

10    is the motion to compel compliance with a Rule 2004 subpoena

11    issued by the Trustee to UBS.

12          And I see Attorney Fried is here as well.

13          And I recall in prior hearings other parties had

14    been moving toward compliance on a consensual basis.  I

15    haven't seen any other documents filed in connection with

16    the motion to compel, so I'm not sure where things stand as

17    of this afternoon, but I'm happy to hear from the Trustee's

18    counsel and/or Attorney Fried with regard to the status of

19    this motion, please.

20          MR. LINSEY:  There have not been filings in

21    advance of this hearing.  The Trustee thought it would be

22    helpful to provide the Court an update and we want to do

23    that.  But there has -- there has been further work that's

24    been done.

25          So this is a (indiscernible) for a motion to

1    compel that was filed earlier this year, which was then most

2    recently adjourned through a series of stipulated and

3    consent orders while the Trustee and UBS have sought to

4    negotiate in terms of compliance with the Trustee's Rule

5    2004 subpoena.

6         Most recently, on August 13th, the parties

7    submitted a stipulated order to the Court providing for

8    production of certain documents by UBS according to a

9    schedule.  The Court approved that order.

10        The parties have some differences of opinion about

11   performance under the stipulation, but I don't want to argue

12   today over matters that, well, we're not disagreeing

13   (indiscernible) any result, but the Trustee understands that

14   at this point the substantial majority of the production

15   that the Trustee and UBS have been dealing with have now

16   been provided.

17        As I understand it, and counsel for UBS can

18   correct me if I'm wrong, there is an additional traunch of

19   documents that were found that were related to certain other

20   documents, that because they were found later still require

21   review, UBS has --

22        There's also the issue outstanding of UBS's

23   privilege log, which the Trustee is requesting, so counsel

24   for the Trustee and UBS have discussed those matters.

25        UBS has committed to provide the non-privileged

1   documents based on those additional documents that were

2   found following its review by October 23rd and will provide

3   a privilege log by October 31st.

4          The Trustee would request, and I think UBS is

5   onboard with, adjourning this hearing another month.

6   Hopefully, at that point, we can put this project behind us

7   and have some more, you know, some kind of a longer term

8   resolution.

9          But where we are now, again, I don't want to get

10  into (indiscernible) that are ultimately academic and the

11  parties are just going to reserve their rights.

12         I'm happy to answer any questions the Court has

13  and otherwise to allow counsel for UBS to add anything or

14  clarify anything that they think is appropriate.

15         THE COURT:  Okay.  Thank you, Attorney Linsey.

16         Attorney Fried, did you wish to be heard?

17         MS. FRIED:  Thank you, Your Honor.  I can be quite

18  brief because we agree to everything that Mr. Linsey just

19  indicated.

20         We agree to -- I share with you that there's no

21  value into getting into any ongoing disagreements at this

22  point.

23         The only additional color I can add which might be

24  helpful is that the additional documents that we expect to

25  be producing next week we do not believe any of them are in

1    themselves responsive to the subpoena.

2          Instead, we believe they simply were what in sort

3    of e-discovery terms I think are referred to as family

4    members of responsive documents that have been produced that

5    we also should, you know, produce just for the sake of good

6    order.

7          So we'll be getting those out, as Mr. Linsey

8    indicated, no later than Monday.  And then we'll be

9    producing our privilege log no later than October 31st.

10          And we agree with his characterization of where

11    things stand.  And both parties desire to adjourn the motion

12    for another month in the hopes that we can wrap things up by

13    then.

14          THE COURT:  Thank you.  All right.  I just need to

15    take a look at the calendar for a moment if you would just

16    be patient for a second.

17          (Pause)

18          THE COURT:  Toward the end of November, the 21st

19    or the 28th, are both available dates.  And what I would do

20    is I would schedule those for -- this for 2:00 p.m. on one

21    of those two dates and then see where things stand.

22          If the parties have some form of agreement where

23    the motion to compel does not need to be prosecuted, then

24    obviously something could be filed on the docket with regard

25    to that issue and then there would be no need for the

1  parties to appear at a hearing, a continued hearing, on the

2  motion.  But if there isn't, then we'll have the continued

3  hearing.

4          So the two dates that are available right now are

5  November 21st and November 28th.  So which would you prefer?

6          MR. LINSEY:  Either is fine for the Trustee.

7          MS. FRIED:  Either is fine for UBS, Your Honor.

8          THE COURT:  Okay.  Thank you.

9          Why don't we say November 28th then at 2:00 p.m.

10          And then, as I noted, if there is a reason why we

11  should not conduct that hearing because there's a resolution

12  of the issues, then you will -- I would ask you to file

13  something on the docket indicating that and we will act

14  accordingly.

15          But as it stands right now, the matter is

16  continued to November 28th at 2:00 p.m.  Thank you both.

17          MR. LINSEY:  Thank you, Your Honor.

18          THE COURT:  Thank you, both.

19          MS. FRIED:  Thank you, Your Honor.

20          THE COURT:  Thank you, both.

21          All right.  That takes care of the first matter on

22  the calendar.

23          Attorney Fried, you obviously, it's completely up

24  to you, you're welcome to stay, but you do not need to stay

25  as part of these hearings unless you would like to.  Okay?

1          MR. FRIED:  Thank you, Your Honor.  I think I'll

2     excuse myself, but thank you very much.

3          THE COURT:  Thank you.

4          All right.  The next -- now, the next matters are

5     all involving adversary proceedings.

6          I don't know, Trustee Despins, if there's a

7     certain way in which you'd like to proceed this afternoon.

8          MR. DESPINS:  Well, on the agenda I have, it may

9     have been prepared in-house, so I don't know if that's your

10     agenda, but the next matter was the AIG litigation.  So if

11     that's agreeable to Your Honor, I think we might as well --

12          THE COURT:  That's fine.

13          MR. DESPINS:  -- go in that direction.

14          THE COURT:  That's fine.  Go right ahead.

15          MR. DESPINS:  So Mr. McCormack is handling that.

16     Thank you.

17          MR. McCORMACK:  Yes.  Good afternoon, Your Honor.

18          With respect to the status of the AIG matter, the

19     plaintiff has served discovery.  The parties have exchanged

20     written discovery.

21          Attorney O'Connor and I have met for purposes of

22     preparing a Rule 26 report and we are working on finalizing

23     that.  We have proposed dates for the completion of

24     discovery and the filing of dispositive motions.  I would

25     expect that we would be in a position to file that by next

1   week at the latest.

2             And as the Court may be aware, we did file a

3   motion for summary judgment on behalf of Genever Holdings, a

4   motion for partial summary judgment, on one of the coverage

5   issues on October 6th.  And we have agreed with Attorney

6   O'Connor that AIG may have an additional two weeks to

7   respond to that motion beyond the 21-day time period if

8   necessary.

9             So that's the first point on the AIG case.

10            THE COURT:  Okay.  With regard to the Rule 26

11  report, you're anticipating -- you both are anticipating

12  filing that on or before October 27, which would be next

13  Friday, is that what you're looking to as far as dates?

14            MR. McCORMACK:  Yes, Your Honor.  If that's

15  acceptable with Attorney O'Connor.

16            MR. O'CONNOR:  I think that's (indiscernible).

17            THE COURT:  That works, Attorney O'Connor?

18            MR. O'CONNOR:  Yes.

19            THE COURT:  Now, that time, I didn't hear you, so.

20  I don't know why, but in that time I didn't hear you.

21            MR. O'CONNOR:  I have a little frog in my throat.

22  That works, Your Honor.  I think the date's are all agreed

23  to, so it's the other stuff.  But next week will be plenty

24  of time.

25            THE COURT:  Okay.  And then, yes, somewhere,

1    either in your Rule 26 report, or I've said the 27th because

2    that's the date next week, or even in connection with -- you

3    could make this agreement on the record, I don't want you to

4    have to file more pleadings than necessary.

5              But I would like to know the date by which you

6    both have agreed that Attorney O'Connor is to file a

7    response to the motion, the partial motion for summary

8    judgment, or motion for partial -- I haven't seen -- I knew

9    it was filed, but I have not looked at it yet, so I -- and I

10   usually don't look at the motions until the reply is filed,

11   the response and then the reply.

12             So if you could just either tell me on the record

13   today what your dates are or just submit a very brief

14   stipulation as to your dates, that would be helpful, because

15   the clerk's office is going to monitor the motion for when

16   the Court should be taking a look at it.

17             And under our rules and the district court rules,

18   we don't necessarily have oral argument on the motion, so if

19   you're requesting that, I'd like to know.

20             And obviously the Rule 56, the district court Rule

21   56(a)(1) and (a)(2) statements, need to be filed before the

22   Court would address any issues on summary judgment as well.

23             MR. McCORMACK:  Understood --

24             MR. O'CONNOR:  Your Honor -- go ahead.

25             MR. McCORMACK:  Go ahead, John.

1        MR. O'CONNOR:  Your Honor, this is John O'Connor.

2        I know (indiscernible) date for a response

3   (indiscernible) --

4        THE COURT:  November 8th?

5        MR. O'CONNOR:  November 10th, Your Honor.

6        THE COURT:  Now, I'm sorry, Attorney O'Connor.  I

7   am having trouble hearing you.  I apologize.

8        MR. O'CONNOR:  November 10, Your Honor.

9        THE COURT:  20, 2-0?

10       MR. McCORMACK:  1-0.

11       THE COURT:  1-0.  Okay.  Hands.  There you go.  I

12  don't know why your audio is not right now coming through,

13  but that's helpful.  All right.  Response date is November

14  10th.  Okay.

15       MR. McCORMACK:  And Your Honor, with respect to

16  the summary judgment, the plaintiff has filed its Rule 56(a)

17  statement, so that's complied with.  We will obviously

18  reserve the right to file a reply to any opposition.  And we

19  would request a hearing on the summary judgment if the Court

20  is willing to entertain oral argument.

21       THE COURT:  Okay.  Thank you.  I will take that

22  under -- into consideration when I review the motion, the --

23  the response, and then the reply.

24       MR. McCORMACK:  Thank you, Your Honor.

25       THE COURT:  Thank you.  All right.

1          MR. McCORMACK:  And Your Honor, if I may, the only

2     other issue I believe on the AIG insurance case that I

3     raised with Attorney O'Connor this morning is it relates to

4     your July 14th ruling on the motion for preliminary

5     injunction.

6          And it's our understanding from that ruling that

7     you had ordered AIG to issue reinstatement notices for all

8     insurance policies that it was intending to cancel with the

9     exception of one policy, which was a policy that covered

10     jewelry and fine art.

11          And I know that before that ruling was issued

12     Genever filed or indicated that it was not pursuing a motion

13     for preliminary injunction on the excess liability policy on

14     the issue of -- that the lease required that policy to be in

15     place.

16          But you issued your ruling after Genever filed its

17     submission indicating that it wasn't proceeding on that

18     basis.

19          And my understanding from the ruling is that you

20     ordered that all AIG policies had to be reinstated but for

21     that jewelry policy that I mentioned.  And AIG has issued

22     reinstatements for various policies.

23          But it recently came to my attention that there

24     has not been a reinstatement issued for an excess liability

25     policy that was reportedly cancelled.

1      We learned that recently through communications

2  indicating that a premium was not collected for that.  So I

3  think that issue has to be addressed at some point in time.

4  I will indicate -- I don't know if Attorney O'Connor is up

5  to speed on that, but we do need to address that issue.

6      THE COURT:  I don't recall as I sit here right now

7  what -- I recall the fact that the jewelry policy was not --

8  was carved out, for lack of a better term, but I don't

9  recall as I sit here right now if I was more specific other

10 than -- I just don't know.

11     Attorney O'Connor, what's your recollection?

12     MR. O'CONNOR:  Your Honor, this is what happened.

13 And I understand Mr. McCormack was not counsel at the time.

14 As the hearing concluded, one of our main arguments was the

15 arguments that Genever made for a preliminary injunction did

16 not apply to the fine arts policy or to the excess liability

17 policy.  The argument's really only applied to the

18 homeowner's policy.

19     And so as the hearing ended, Mr. Clifford said,

20 this is at page 167 of the transcript, "We're going to

21 concede on the jewelry policy, considering the cancellation

22 of that," but then he went on to say, "As far as the excess

23 goes, subject to some diligence and some further inquiries

24 into our part concerning what effect that's going to have,

25 we're likely to concede on that too, but they may ask for

1    some time to figure that out."

2           The next day, at 12:16 in the afternoon, Genever

3    filed its -- a supplemental memorandum.  And it said in the

4    supplemental memorandum as an initial matter, as represented

5    during the hearing, Genever withdraws its motion seeking a

6    preliminary injunction as to the cancellation of listed

7    policy number -- the private collection policy.  That's the

8    jewelry policy.  Jewelry, fine arts, and so forth.

9           But then the next sentence is Genever also

10   withdraws its motion seeking a preliminary injunction as to

11   cancellation of policy number PCG-0017034504, the personal

12   excess liability policy.

13          And then -- and then nine hours later Your Honor

14   granted Genever's preliminary injunction motion.

15          But at the time Your Honor granted it, they had

16   withdrawn, you know, at the hearing, the fine arts request,

17   and had withdrawn earlier in the day the excess policy.  And

18   Your Honor's order referenced the withdrawal of the fine

19   arts, said nothing about the excess, but the -- the order

20   defines policy as policies covering the property.

21          So the excess policy, unlike all these other

22   policies, doesn't cover the property.  It's strictly a

23   liability policy.

24          So, you know, the request for an injunction

25   relating to the excess policy was withdrawn.  And it was --

Ho Wan Kwok - October 17, 2023                    20

1   it was -- and by the time it (indiscernible) through,

2   Genever was no longer pursuing it.

3           And, you know, we think that the if Court had

4   intended to get Genever something that it specifically

5   disclaimed an interest in having, the Court probably would

6   have said that in the order.  But the Court granted the

7   relief that they were still seeking, but they weren't

8   seeking an injunction on the (indiscernible) policy.

9           If the Court wants briefing on this, we're happy

10  to brief it, but those are the facts.

11          THE COURT:  Well, again, sitting here I don't

12  recall.  I understand what you both just said, but I don't

13  recall what the -- the specifics other than what you both

14  just said, so I'd have to go back and look at it.

15          So are you suggesting that there has to be some

16  additional or supplemental ruling on the preliminary

17  injunction based upon this issue?

18          MR. McCORMACK:  On behalf of the plaintiff, we do,

19  Your Honor.

20          THE COURT:  Okay.

21          MR. O'CONNOR:  We think the Court's ruled.  But to

22  the extent Genever believes that clarification is needed,

23  then we should brief that and do it.  I mean, clarity is

24  everybody's friend here.

25          THE COURT:  All right.  Why don't I take a look

1    back at the issue after today's hearing.

2              And then I'll give you both an opportunity to

3    submit a short pleading with regard to your position and

4    then I'll figure out what to do.  I think that's probably

5    the best way to proceed unless you have some other thought.

6              MR. O'CONNOR:  I agree with that entirely, Your

7    Honor.

8              MR. McCORMACK:  We do as well, Your Honor.  Thank

9    you.

10             THE COURT:  Okay.  Thank you.

11             Alright.  Is there anything else then we need to

12   address in the Genever AIG adversary proceeding?

13             MR. McCORMACK:  I do not believe so, Your Honor.

14             MR. O'CONNOR:  No, Your Honor.

15             THE COURT:  Okay.  All right.  Thank you, both.

16             And I will take a look back specifically with

17   regard to this last issue, the preliminary injunction issue,

18   and will issue some form of an order in the next few days

19   that will allow the parties to submit a pleading with regard

20   to your respective positions.  And we will go from there.

21   Okay?

22             MR. O'CONNOR:  Thank you, Your Honor.

23             MR. McCORMACK:  Thank you.

24             THE COURT:  All right.  Thank you, both.

25             Then the next, Trustee Despins, the next matter on

1   the Court's calendar is the adversary proceeding versus the

2   Taurus Fund.  Did you want to address that matter next?

3           MR. DESPINS:  That's correct.  But Mr. Luft will

4   be handling that for the Trustee, Your Honor.

5           THE COURT:  Okay.  Thank you.

6           MR. LUFT:  Good afternoon, Your Honor.  How are

7   you?

8           THE COURT:  Good afternoon.

9           MR. LUFT:  So I wanted to report we have -- myself

10  and Mr. Conway, have been speaking.  We had our 26(f)

11  conference on October 13th.  The parties have exchanged

12  initial disclosures yesterday.

13          And we have been exchanging drafts of a proposed

14  pretrial order in the hopes of submitting it to the Court.

15  With regard to that, I would say, the substance of it, I

16  think we are pretty much in agreement.

17          Where there is a disconnect, Your Honor, is with

18  regard to the dates for the proposed schedule.

19          In short, the defendants are seeking about six

20  weeks longer than the Trustee has proposed and in particular

21  the notion that a month more fact discovery should be needed

22  to take discovery of what had been referred to as third

23  parties that are ostensibly the owners/investors of the

24  Taurus Fund, LLC and (indiscernible) in the case.  And then

25  there's another two weeks that have also been built in.

1    I could go through the dates, Your Honor, if it's

2    helpful, but that's really where the disconnect is.

3    I can tell you, from the Trustee's perspective,

4    the reason we are focused on this and this delay, first and

5    foremost, is the fact that it creates greater exposure.

6    There is currently no insurance on the house or

7    its contents.  As such, any time that goes by, we face

8    exposure, as we believe ultimately we'll prevail and this

9    estate will recover that property and the additional six

10   weeks creates six weeks move of exposure.

11   Now, beyond that, Your Honor, I also don't believe

12   there is a need for an extra six weeks to deal with this.

13   Based on the initial disclosures we received yesterday,

14   all of the people who they cite here appear to either be

15   agents of the defendants, notably Aaron Mitchell, who is,

16   Your Honor is well aware of, the lawyer for the Taurus Fund,

17   LLC, and then what appears to be a local lawyer and title

18   company who handled the closing.

19   I assume that those are agents and can just be

20   handled not as third parties, but as parties.  There is no -

21   - there was no mention of who the real estate agent was with

22   regard to the transaction, although I think they would be

23   treated the same way once we find their name.

24   Beyond that, the other people mentioned are

25   Hamilton Opportunity Fund, which purports to own Hamilton

1   Taurus Fund, FP, which G Club International, Limited they

2   told us has a subscription in.  And G Club International

3   owns G Club Operations, which Your Honor is well familiar

4   with.  That's the entity that we had to chase through

5   discovery and default for months, and so Your Honor is

6   familiar with them.  And there's this Hamilton Taurus Fund,

7   FP, which is the owner of Hamilton Fund, LLC.

8        And four of those entities, the Hamilton Funds,

9   which Your Honor is familiar with because they are the

10   entities we believe to be controlled by William Je, who we

11   believe works for the debtor, and the G Club, which we know

12   has long ties to the debtor, it seems to us, given that all

13   these are purported ownership -- owners of the Taurus Fund,

14   LLC, who are claiming that they are the rightful owners, all

15   of this should just be handled as party discovery.

16   Effectively Taurus Fund, LLC is a party.  They want to say

17   that it's not them who own it but, in fact, the parent of

18   people who own the interest that's the business.

19        But I would hope that Mr. Conway would just accept

20   discovery on their behalf so we don't end up in the

21   discovery quagmire where entities are coming before the

22   court seeking to assert control over assets and rights, but

23   at the same time hiding behind saying that they are third

24   parties for discovery, in particular, given that most of

25   these entities, as I can tell through initial exposure, are

1    in the Cayman Islands, which would create unnecessary delay.

2         There is one other -- I note, Your Honor, one

3    other point with this, which is these entities are not new

4    to this case in the way that you think of a traditional

5    third party.

6         We talked about the Hamilton Funds, which we know

7    Mr. Je has been tied to.  G-Club, the same.  And then the

8    one person who's been identified for the Opportunity Fund

9    and the Hamilton Taurus Fund is a man by the name of

10   (indiscernible) Mohammed Sayed, who is listed as a director

11   for those entities.  He also happens to be a director of an

12   entity called Macron, Limited, which has paid the debtor's

13   legal fees, so the Zeisler firm in this case, as well as --

14   and I think the next thing I need to tell you is highly

15   confidential because it was marked that way.  I don't -- I

16   think everyone is on there, but --

17        THE COURT:  Well, wait a minute.  Don't talk of

18   anything highly confidential if not everybody --

19        Is there anybody else on this call other than --

20   I'm looking at the courtroom deputy.  There's no one other

21   on the -- there's no one else on this call other than the

22   people that are -- that we can clearly see who have all

23   announced their appearances?

24       (No audible response)

25        THE COURT:  All right.  So Attorney Luft, you have

1    to make sure.  And I'm going to rely on you that if you say

2    something, it's all the -- all the people that are --

3        First of all, if you're going to say something

4    confidential, we'd have to note that it's confidential,

5    because if someone wants a transcript, right, it can't be

6    transcribed, so that's number one.

7        MR. LUFT:  Correct, Your Honor.

8        THE COURT:  Number two, I need you to state for

9    the record that you believe everyone on this -- that is

10   participating in this hearing remotely is bound by a

11   confidentiality agreement -- the confidentiality agreement,

12   and/or protective order, that's in place in this case.

13       MR. McCORMACK:  Your Honor, I'm sorry.

14       THE COURT:  When I say this case --

15       MR. McCORMACK:  This is Michael McCormack.

16       THE COURT:  -- and I didn't -- that was really,

17   that's not even accurate -- in place in the main Chapter 11

18   cases, right?  There isn't any confidentiality order or

19   protective order in this adversary proceeding, is there?

20       MR. LUFT:  No, Your Honor.  I believe it's just

21   the one in the main case --

22       THE COURT:  Right.

23       MR. LUFT:  -- which has been applied to these --

24       THE COURT:  Okay.

25       MR. LUFT:  -- adversaries.

1    THE COURT:  So if you're going to -- you need to

2    do two things then.

3         If you want to disclose some kind of confidential

4    information, you have to tell me that.  Because then the

5    courtroom deputy has to note that it's confidential and

6    sealed for purposes of whatever transcript might be created

7    by this hearing, which, as you know, is only audio at this

8    point.  It's only recorded through audio.  We don't have a

9    transcriber.  We're not allowed to have a transcriber.  So

10   that would --

11        The courtroom deputy would have to make those

12   notations because the transcription of the hearing is

13   provided to a third-party transcriber who then creates the

14   transcript.

15        So before -- so there's two things you have to do.

16   Tell me everybody that's on this -- that's participating in

17   this hearing is bound by that confidentiality order so that

18   if they hear anything and they breach that confidentiality

19   order, then there's a cause of action against them.

20        And two, if you're actually going to say something

21   that I need to have it noted for the record, from the

22   beginning to the end of your comments, so it's clear that if

23   this hearing is transcribed, that that portion of the

24   transcription would be under seal in accordance with the

25   confidentiality order and protective orders in place in the

1    jointly administered Chapter 11 cases of Mr. Kwok and the

2    related corporate entities.

3            MR. McCORMACK:  Your Honor, this is Michael

4    McCormack.  I'm sorry to interrupt.  Since I'm not part of

5    this proceeding, may I be excused?

6            THE COURT:  Yes, you may.  Thank you very much.

7            MR. McCORMACK:  Thank you.

8            THE COURT:  I should have said that before.

9            And I think Mr. O'Connor actually left.  And so I

10   apologize.  Thank you.

11           MR. McCORMACK:  No problem.  Thank you, Your

12   Honor.

13           MR. LUFT:  Your Honor, everyone that I can see on

14   my screen is -- has signed the confidentiality order and is

15   entitled to share the information.

16           THE COURT:  Okay.  So let's just -- let's just

17   note everyone on the screen right at the moment at 2:37 p.m.

18   is Attorney Luft, Trustee Despins, Attorney Sarnoff,

19   Attorney Conway, Attorney Linsey, Attorney Smith, and

20   Attorney Mayhew.  And then of course I am here.  And then --

21   and the courtroom deputy and the law clerks are here.

22           So those are the only people right now that are

23   listening to what is actually being said, other than if

24   there's court IT staff and back-up staff just making sure

25   that the audio is properly recording the voices.  Okay?

1          So are you ready to talk, Mr. Luft?  Because if

2    you are, if you are ready, I need to just have the courtroom

3    deputy seal this part of the record.

4          MR. LUFT:  I am, Your Honor.

5          THE COURT:  Okay.  Give us one second, please.  It

6    won't take --

7          (Audio recording sealed from  2:38 p.m. through 2:41

8    p.m.)

9          THE COURT:  Just one moment, Attorney Luft, and

10   then we'll be back.

11         MR. LUFT:  Of course, Your Honor.

12         THE COURT:  Okay.  We're all set.  Go right ahead.

13         MR. LUFT:  Thank you, Your Honor.

14         So, in short, the entities we're talking about,

15   for which my understanding is there is a need for additional

16   time, are not new to this case.  They're not truly separate.

17         And I, as I said, I would truly hope and expect

18   that particularly for the entities that are either agents

19   and/or the entities that purport to be the owners/investors

20   of the defendants here that we would not be proceeding with

21   this as though there was third-party discovery but, in fact,

22   they'd be -- Mr. Conway would accept discovery and discovery

23   requests from them as parties given as that their interests

24   were being advocated.

25         I think if we do that, Your Honor, we've set out a

1   schedule which would allow for fact discovery to be closed

2   by December 18th; for expert reports, to the extent

3   necessary, to be served by December 20th; for rebuttal

4   reports to be done by January 10th; expert depositions to be

5   done by January 16th; and summary judgment briefs, to the

6   extent they'll be filed, filed no later than January 26th.

7          And then allowing for a pretrial order to be

8   filed, if there is no summary judgment briefing done by

9   February 16th, or if there is summary judgment briefing to

10   be done, three weeks after Your Honor has ruled.

11          As I said, I know the defendants have a view that

12   they need additional time of an additional six weeks

13   (indiscernible).  We'd like to hold to the schedule we've

14   proposed.  And we could, once it's worked out, we're happy -

15   - we are ready to submit an order to the Court once those

16   date issues have been resolved.

17          If Your Honor has any questions, I'm happy to

18   answer it, but otherwise that's what I had to say on this.

19          THE COURT:  Okay.  Attorney Conway, you do not

20   agree with those dates, is that correct?

21          MR. CONWAY:  That is correct, Your Honor.

22          There are a number of names that counsel used that

23   were incorrect, but I don't think it's really relevant to

24   what we're talking about.  The real issue was timing.

25          And counsel proposed a discovery schedule, which

1    essentially is 60 days, during a -- as I pointed out to him,

2    November and December are not just holiday months, but I'm

3    out of the country fore most of November.  When I get back,

4    I have mediations.  I get back the day before Thanksgiving.

5    I have mediations in Tennessee the Monday and Tuesday after

6    Thanksgiving.

7            So I said to him that's one of the reasons why I

8    wanted to expand this to a 90-day discovery period, not a

9    60-day discovery period.

10           The six weeks that counsel is talking about is

11   really -- I added an additional about -- approximate week

12   and a half to your summary judgment deadline and that's the

13   only one that's not -- it's simply adding 30 days to it.

14           That one I added a little extra time because it

15   would fall directly in a period where I'm in trial in

16   California in February.

17           So, you know, aside from that, everything is -- it

18   would be completed within 90 days by my schedule versus 60

19   days under counsel's schedule.

20           In terms of fact discovery and motion practice,

21   it's an extra week and a half only because of my trial in

22   California.  It's nothing unreasonable, Your Honor.  We've

23   got the holidays here.  We're talking about finishing all

24   fact discovery by mid January instead of mid December.

25           The issue of third parties, you know, the names

1    that were being rattled off were names that were listed as

2    people that might have information relating to the case as

3    is required by Rule 26.

4         The parties that are third parties are the ones

5    relating to G Club's -- G Club Operations and G-Club

6    International, I guess, who have to do their own essentially

7    in order -- let me back up, Your Honor.

8         I believe that it's the Trustee's burden here.

9    I'm not taking on the Trustee's burden to prove what's going

10   on here.  But the problem is that the Trustee says that the

11   debtor owns the house.  I shouldn't have to put on evidence.

12   He should put on the evidence.

13        However, in an abundance of caution, I want to

14   have the names and investment of every person who put money

15   into the fund that bought the house, so that that's all

16   transparent.  And in order to do that, I have to go through

17   these third parties and get their information.

18        For the first time -- I'm new to the case, unlike

19   Your Honor and several folks on this call -- I just heard

20   for the first time that they're having trouble getting this

21   information from the G Club entities, so that only compounds

22   the problem that I'm going to have in getting things done

23   while I'm out of the country; but two, in 60 days.

24        You know, talking about doing it in 90 days versus

25   60 days is really a non-issue, especially during the

1    holidays.  I'm not sure why we're having this discussion.

2    It should be a really simple matter, just having discovery

3    end mid-January.

4              THE COURT:  Okay.

5              MR. LUFT:  Your Honor?

6              THE COURT:  Yes.

7              MR. LUFT:  I'm happy to respond.  I'll take the

8    easiest one first.

9              I am aware of the holidays, that's why we tried to

10   -- under our schedule we concluded we would complete fact

11   discovery on December 18th.  That was intentional.  Right

12   now, under the schedule they have proposed, they would, in

13   fact, push all the fact discovery, or much of the fact

14   discovery as I expect, as these depositions tend to get back

15   loaded, right over the holidays, and we want to avoid that.

16             With regard -- I do want to comment on what was

17   just said though, that what Mr. Conway wants to know is the

18   names and the money -- or who put money into the Taurus, LLC

19   fund.

20             Your Honor, that to me is not third party.  The

21   Taurus, LLC fund is the defendant here.  They're the ones

22   who are claiming to own the house.  I don't understand how

23   they can say that they don't know who invested the money in

24   there or that they have to go to third parties to get it.

25             And you couple that with the fact that we know who G

1    Club is.  They're here.  We did move, but they are now --

2    they have now responded, Your Honor, because they were

3    forced to.

4          The idea that that's going to be the issue quite

5    frankly worries me.  And that's why I think if there's

6    someone who is claiming to own this house, they should have

7    to come forward and participate in discovery.  It's

8    straightforward.

9          I don't think that's a reason for delay,

10   particularly when we face the issue that there is no

11   insurance on this house.  Every day that's delayed, it's one

12   more day where there is not a protective steward of this

13   property  and that's a risk.

14         Finally, Your Honor, I understand that Mr. Conway

15   has other obligations.  I would hope, and I would expect

16   with my own colleagues, that some of his colleagues would

17   chip in and be there for if there's a discovery date or

18   something else so that we can keep this moving forward.

19         THE COURT:  Okay.  Thank you, Attorney Luft.

20         Attorney Conway, would you like to respond?

21         MR. CONWAY:  Yeah.  The insurance issue I would

22   address that because I'm sure Your Honor is interested in

23   knowing what's going on with that.

24         Yeah.  The insurance carrier has agreed to insure

25   the property except for one problem.  Right now the property

1    is vacant.  And we said, you know, it's not vacant, we've

2    got security personnel there.  But for the insurance

3    company's purposes, they say it's vacant.

4           So the plan was to come back to you for an

5    amendment of the injunction order so that we can put the

6    Taurus office in the property, with a dedicated manager who

7    just takes care of the house, which we believe will be the

8    piece that the insurance carrier needs.

9           They just don't want to insure property that

10   doesn't have somebody that's there as a live-in person.  So

11   that's the update on that.

12          Again, the idea that we're going to -- and it may

13   be just me, but I've never had a case in an adversary

14   proceeding where we didn't have 90-day discoveries.  So the

15   idea that we're delaying by doing what's pretty standard.  I

16   mean, I know the other judges in Connecticut also do 90-day

17   discovery adversary scheduling pretty routinely.

18          I know that, you know, counsel has plenty of folks

19   on the team that they can rely on to step in for them, but

20   I'm me and I'm it for my clients.

21          So, you know, it's -- you know, it is going to be

22   challenging for me.  And I'm not trying to say that I want a

23   delay, Your Honor.  I want what's normal, what's standard,

24   which is three months to do discovery in an adversary

25   proceeding.  And those three months are really two months as

1      far as I'm concerned.

2              And then, like I said, Your Honor, at the back

3      end, the fact that I'm on trial in California means I'm

4      asking for a little bit of extra time so summary judgment

5      isn't done while I'm in trial.  It's not unreasonable.  I'm

6      not asking for anything out of the ordinary.

7              And I'm not sure that -- well, let's put it this

8      way, I would never take the positions that counsel is taking

9      when somebody else asks for this courtesy.  But there we go.

10             THE COURT:  Well, let me ask you a question,

11     Attorney Conway.

12             Who at the Taurus Fund is dealing with the

13     insurance company to insure the company?  And what insurance

14     company are you -- is the Taurus Fund seeking to enter into

15     a policy with?

16             MR. CONWAY:  My understanding is Chubb is willing

17     to write the policy.  And the issue with Chubb, like I said,

18     is that we've got an order from Your Honor that nobody can

19     be, you know, in the premises other than the security guards

20     and --

21             THE COURT:  Well, that's not what it says.

22             MR. CONWAY:  -- they want somebody there.  So I --

23             THE COURT:  That's actually not -- that's actually

24     not what the order says at all.  It doesn't say that no one

25     can be in the property other than the security people.  It

1    doesn't say that at all.

2           It says there can be a certain amount of people at

3    a certain amount of time and there has to be a log and

4    things of that nature.  I think it said up to 20 people can

5    be there at a time is my recollection of the order.

6           But what I'm asking you is --

7           MR. CONWAY:  But, Your Honor, that was

8    (indiscernible) --

9           THE COURT:  You know, I see insurance companies.

10   And just -- I don't know what that means by vacant.  It's

11   not vacant.  It's full of, at least as far as what I've been

12   shown, whether that's still true or not, I don't know, but

13   it's full of furniture, fixtures and all kinds of things.

14       And so I don't know why -- that's why I asked who at

15   the Taurus Fund is discussing this issue with Chubb.

16   Because if they don't understand the issues, then they need

17   to understand them and get the insurance in place.

18          You want -- you're looking for 90-days discovery

19   -- and by the way, that's not necessarily standard in

20   Connecticut, but I understand your point -- then it would

21   seem to me that one of the things that is a problem in this

22   case, and has been from the start, is that the property

23   isn't insured.

24          It's an amazing thing that there could be a

25   property worth -- I don't know what it's worth, but the

1     allegations are that it's worth, you know, multiple millions

2     of dollars, that there's no insurance on the property.  It's

3     just I don't know how that happens.  I truly don't.

4              So in any event, you still haven't answered the

5     question as to who at the Taurus Fund is negotiating with

6     Chubb?

7              MR. CONWAY:  You know, I'm the point person on

8     negotiating the insurance policy, Your Honor.  The issue --

9              THE COURT:  Well, don't you have -- you need

10    authority from your client.  Who's providing you with the

11    authority to enter into an insurance -- you're not the

12    Taurus Fund.

13             MR. CONWAY:  No.  But, Your Honor, the Taurus Fund

14    is not -- the Taurus Fund is sitting in the BVI.  The BVI

15    obviously is not a -- it's full of people who deal with

16    Americans, American problems.  They hire the lawyers here in

17    the U.S. to deal with these things.  It's not unusual.

18             THE COURT:  I didn't say it was unusual.  I said

19    who is the person?  It's a question you don't want to answer

20    apparently.  Because the question is who is instructing you

21    to do this?  You need to be --

22             MR. CONWAY:  You're asking two different

23    questions.

24             THE COURT:  You're not sticking your neck out --

25             MR. CONWAY:  Who am I going back to Taurus Fund

1    talking to or after I talk to the insurance company?

2              THE COURT:  No.  Who is providing you --

3              MR. CONWAY:  Or are you asking me --

4              THE COURT:  -- with the authority to act on behalf

5    of the Taurus Fund?  You just said you're negotiating it.

6    Unless I heard you incorrectly, which maybe I did, you said

7    you were negotiating the policy with Chubb.  Isn't that what

8    you just said?

9              MR. CONWAY:  I did, Your Honor.  And I said I was

10   talking to attorneys at various law firms that are also

11   trying to help me to -- because we didn't just go to Chubb.

12   I've gone to every person that we can find that has a

13   contact with insurance companies.  We finally got Chubb, and

14   Chubb's response, it just came, it just came back, was --

15             Look, the new order -- Your Honor gave two orders.

16   You issued two orders.  The first one said 20 people can be

17   there.  But there's an amended order, which I have to come

18   back to you and say, Your Honor, we need to amend the

19   amended order, because right now it said nobody's allowed on

20   the property at all but the security force.

21             If the order is amended to allow Taurus Fund to

22   simply have a person there -- not all these people that

23   counsel was concerned about being there. I guess they -- you

24   know, had been there in the past because there's this issue

25   with political movements -- but simply Taurus Fund having a

1    person there, a dedicated person there.  And that's Kee

2    Young (ph).  There's no -- if you're curious as to who the

3    manager is.  You know, that's all we would need to get the

4    insurance policy written.

5            But right now the -- you know, Chubb wants to have

6    evidence of a -- of somebody being there so it's not

7    considered, and they consider it, vacant right now.

8            MR. DESPINS:  Your Honor, this is Trustee Despins.

9    If I may for two seconds?

10           THE COURT:  Yes.  Go right ahead.

11           MR. DESPINS:  The alleged owner here is not a BVI

12   entity.  It's a Nevada LLC.  And Mr. Conway, at the first

13   hearing said -- you asked him the same question, who is

14   instructing you?  He said David Salins.  I don't know what

15   happened to Mr. Salins, if he's still in touch with him or

16   not, but he said that's the person that hired him.  And now

17   we have a new person that we've never heard of.

18           I mean, there was no insurance.  To be clear, we

19   didn't create the situation of having no insurance because

20   you ordered that no one should be there because there's no

21   insurance.  There was no insurance to start with.  All the

22   time that they owned the property, there was no insurance.

23           And, Your Honor, you, at our request, entered an

24   order saying no one other than security can be there because

25   of the no insurance situation.  So it's like flipping this

1   on its head to say that you or we caused this inability to

2   get insurance.  They never had insurance to start with.

3            MR. CONWAY:  Nobody has pointed fingers from my

4   side.

5            MR. DESPINS:  Well, okay.

6            MR. CONWAY:  Let's get that straight.

7            MR. DESPINS:  So we certainly need to understand

8   where is Mr. Salins who was instructing Mr. Conway from the

9   beginning?  There's no mention of him being involved

10  anymore.  I just, I find that really remarkable.

11           And also, it's not a BVI entity.  So if these BVI

12  people were giving him instructions, I don't know what we're

13  talking about here.

14           THE COURT:  The point --

15           MR. CONWAY:  Well, if Your Honor --

16           THE COURT:  Yeah.  Go ahead.  Go ahead, Attorney

17  Conway.

18           MR. CONWAY:  I don't know how many times we've

19  been through this, but the Taurus Fund, LLC is a Nevada

20  entity created for the special purpose of buying a house.

21           The Taurus Fund, SP, a BVI entity, was the entity

22  that provided the cash to buy the house it owned, and

23  they're the owner of the Taurus Fund, LLC.  This is not

24  rocket science, Your Honor.  This is fairly simple.

25           Now, we have a manager that I deal with who's in

1    charge of managing the property.  We have an insurance

2    company who is looking to write the policy.

3         I'm not trying to say that Mr. Despins is the

4    reason why we don't have insurance.  I never said that.  I

5    said, Your Honor, that we will have to -- based on what I've

6    just been told, we have to come back to you getting an

7    amended order allowing for the Taurus Fund to have an office

8    there with a dedicated person to take care of the house --

9         THE COURT:  Well, where in --

10        MR. CONWAY:  -- so to that that satisfies the

11   insurance company.

12        THE COURT:  Where in the insurance policy does it

13   say there has to be a dedicated office in the place in order

14   to insure?  I don't think I've seen many insurance policies

15   that say that.

16        MR. CONWAY:  I don't know that they'll ever see --

17   write something like that on a piece of paper, Your Honor.

18   What they said was we don't want the house to be vacant --

19        THE COURT:  But it's not vacant.

20        MR. CONWAY:  -- if we're going to insure it.

21        THE COURT:  It's not vacant.

22        MR. CONWAY:  And so what I --

23        THE COURT:  There's security people.

24        MR. CONWAY:  -- proposed --

25        THE COURT:  There's security people there.  It's

1    not vacant.  And there's all kinds of furniture --

2            MR. CONWAY:  But that's what I said, Your Honor.

3            THE COURT:  -- and fixtures in the -- in the --

4    it's not a house.  It's a mansion, right?  Isn't it?  More

5    than 20,000 square feet or something?

6            MR. CONWAY:  It's a --

7            THE COURT:  I mean, it's -- this isn't a house

8    where someone's -- there's security there.  So if the water

9    leaks, they're going to know.  If the alarm goes off,

10   they're going to know.  If the heat fails, they're going to

11   know.

12           So it doesn't seem persuasive to me that Chubb

13   needs to have somebody from the Taurus Fund be there.  The

14   security -- the people that are there, I believe are -- you

15   both agreed to the people that are at the -- that are

16   providing security at the mansion, didn't you?

17           MR. CONWAY:  The Trustee and I agreed on who's

18   going to be there.

19           THE COURT:  Right.

20           MR. CONWAY:  And the agreement was signed by Mr.

21   Young.  The Trustee knows who he is.  He's been dealing with

22   us for quite a while.

23           The arguments that Your Honor just made, if you

24   want to call them arguments, are exactly what I said to

25   Chubb.  So it's not like I don't -- that I disagree with

1    you.  Chubb's response is security is not a resident.

2              And, you know, I can't -- I can't argue for them

3    because they're being unreasonable in my mind.  I'm just

4    trying to solve the problem, Your Honor.  And so my proposal

5    is, well, how about if Taurus Fund just simply puts somebody

6    in there, will that satisfy it?  And I've got --

7              THE COURT:  Well, what does that mean?  I don't

8    know what that means, put somebody in there.

9              MR. CONWAY:  Well, an office, Your Honor, where

10   Mr. Young would work -- apparently live there full time as

11   opposed to living outside the premises.

12             THE COURT:  Well, that's a whole different ball

13   game.  Nobody's lived in that -- nobody from any place.

14   There's been no evidence that's submitted to this court that

15   anyone other than Mr. Kwok and/or his family members have

16   lived in that mansion prior to this adversary proceeding or

17   his arrest.  If you have evidence of that, that may be

18   something different, but that's not what's before the Court.

19             What's before the Court is that this is Mr. --

20   whether it's right what -- the evidence, the only evidence,

21   is that Mr. Kwok and I believe his son and daughter were the

22   people, and maybe his spouse, I don't know about that, the

23   only people that slept there.

24             So why am I going to change the status quo, which

25   is exactly what I wasn't going to do in the preliminary

1    injunction, to allow someone from the Taurus Fund to come in

2    and live there?  And do what?  I don't know what they're

3    going to do.

4            And what, are we going to have a security guard

5    sleeping in the same room with the Taurus Fund person?  I'm

6    not -- that's not going to happen.

7            MR. CONWAY:  Well, Your Honor, first things first.

8    It is a Taurus Fund house.  They can stay.  They should be

9    able to stay there if they want.  But that's not the point.

10            THE COURT:  When they get insurance, they can.

11            MR. CONWAY:  The point --

12            THE COURT:  When they get insurance --

13            MR. CONWAY:  -- the point is we're trying to get

14    insurance.

15            THE COURT:  When they get insurance, they can.

16            MR. CONWAY:  We're not trying to enjoy the house.

17            THE COURT:  When they get insurance, they can, but

18    they haven't done that.

19            MR. CONWAY:  Okay.  So Your Honor, I --

20            THE COURT:  We've been talking about this since

21    the middle of August.

22            MR. CONWAY:  -- my goal is to try and solve the

23    problem.  I do my best to try and solve the problem.  The

24    Trustee says, oh, Conway's not solving the problem,

25    therefore, we don't want to give him an extra 30 days of

1   discovery.

2            You know.  All I'm trying to do, Your Honor, is

3   tell you that we can probably solve this problem if we have

4   a person living on premises.

5            If that's not sufficient, if that's not

6   acceptable, for whatever reason, we're still asking for an

7   extra 30 days to finish discovery.

8            If they -- I mean, it seems to me that I get -- I

9   get punished somehow because I'm not putting somebody in the

10  house so that the insurance company will insure it.

11           I guess what I'm saying, Your Honor, is I don't

12  understand how any of this is even relevant.  We're trying

13  to finish a discovery schedule.  It should be a simple

14  process.  I've never gone through something like this

15  before.  I've been doing this for 30-something years.

16           THE COURT:  Well, unfortunately --

17           MR. CONWAY:  I've never had this problem before.

18           THE COURT:  I understand your points but,

19  unfortunately, this isn't the usual circumstance, right?

20  This isn't -- it's not -- as you said at the beginning of

21  your comments, I think you said, and I apologize if I'm

22  wrong, but I think you said you haven't been here as long as

23  we've all been here.  Well, it's not that kind of a case.

24       This isn't a plaintiff and a defendant with a cause of

25  action where you're going to go to your regular discovery

1     and you're going to -- you're going to see whether

2     dispositive motions are going to be filed and then you're

3     going to have a trial. You know that.  You've known that

4     from the start.

5              And that doesn't mean that you're not entitled to

6     the discovery time you're seeking.  I haven't made that

7     determination yet.

8              What I was asking about was the insurance.  Okay?

9     And the insurance is a serious concern.  It's a serious

10    concern.  I can't look the other way when there's no

11    insurance on a property.

12             And again, I apologize, I don't have it committed

13    to memory, but I think this property's more than 20,000

14    square feet, maybe it's more than that.  I don't even

15    remember.  And it's got 800 --

16             MR. DESPINS:  Your Honor, it's 52,000 square feet.

17             THE COURT:  Oh, 52,000 square feet.  Wow, that's

18    pretty big.  And you know, it's -- it's worth millions and

19    millions of dollars.

20             A bankruptcy court, no court, would look the other

21    way on an issue of that.  You can't -- you have to worry

22    about the risk.

23             And I'm not saying you're not worried about the

24    risk, but to hear me for -- to tell me, well, you know what,

25    I want you to amend your preliminary injunction order

1    because Chubb said they won't insure without somebody from

2    the Taurus Fund living there and working there.

3              Okay.  Well, if that's Chubb's position, then they

4    need to bring it before the Court and I'll have to rule on

5    it.  But I'm not going to, you know, make a determination of

6    changing a preliminary injunction order based upon that

7    statement.  Sorry, I'm not.

8              MR. CONWAY:  And nobody would ask you to, Your

9    Honor.

10             THE COURT:  There'll be an insurance company out

11   there that will insure it as long as there's money to pay

12   the premium.

13             MR. CONWAY:  Yes.  Yes.  A million dollar premium.

14   It's a pretty extortionate, but that's what we're dealing

15   with right now.

16             But Your Honor --

17             THE COURT:  Well, I don't know.

18             MR. CONWAY:  -- you may not remember all the

19   details.

20             THE COURT:  Let me -- let me stop you right there,

21   Attorney Conway.  I think extortion is a strong term that

22   you may want to be very careful about when your clients

23   supposedly -- well apparently, are the record owner of a

24   52,000 square foot property that doesn't have any insurance

25   on it.

1          So I think you need to -- I would be careful about

2     that if I were you.

3          MR. CONWAY:  Your Honor may not recall every

4     aspect of the order because you've got a big calendar, but

5     the way it was written was not I will never change this

6     order under any circumstances.

7          Basically, the invitation was when you get

8     insurance, you know, we can modify this order and go back to

9     the original preliminary injunction.

10          THE COURT:  But I'm not going to --

11          MR. CONWAY:  And so --

12          THE COURT:  I'm not going to modify the

13     preliminary injunction based upon a claim that you had a

14     discussion with Chubb who says -- if Chubb wants to, they

15     can come testify as to why they need that.

16          MR. CONWAY:  I'm not -- I haven't made the motion

17     yet, Your Honor.  I haven't made the motion.

18          THE COURT:  Okay.  But I'm just telling you I'm

19     not doing it without something from Chubb.  I'm not doing

20     it.  It doesn't matter to me what Chubb says.  It only

21     matters if they testify --

22          MR. CONWAY:  I get that.  I wasn't going to ask

23     you to grant it on this call.

24          THE COURT:  Well --

25          MR. CONWAY:  I would make a motion with evidence.

1          THE COURT:  Okay.  All right.  Well, then, you go

2     right ahead and do that.

3          But the problem still is that this piece of

4     property, which is the subject of more than just this case,

5     as you very well know, has no insurance.  That's just an

6     amazing thing.  I think that's amazing.

7          MR. CONWAY:  It's difficult -- it's difficult for

8     everybody, Your Honor.

9          You know, my client put up all the money to buy

10    the house, put up all the money to buy the property that's

11    in the house --

12         THE COURT:  Well, that's what your allegation is,

13    but that's never --

14         MR. CONWAY:  -- so they want insurance as well.

15    They want insurance as well.

16         THE COURT:  That's what the allegation is, but

17    that hasn't been proven at this point, Counsel.

18         MR. CONWAY:  Okay.  Well, I wish --

19         THE COURT:  There's been no proof as to who

20    purchased the house.  All that's -- all that is --

21         MR. CONWAY:  There's been no allegation proven at

22    this point.

23         THE COURT:  The only --

24         MR. CONWAY:  None of any kind.

25         THE COURT:  Well, the only proof is that the title

1      holder is your client.  That's it.

2             MR. CONWAY:  Yes.  There is -- there's no dispute

3      about that I think.

4             THE COURT:  So this is what I'm going to have you

5      both do.

6             MR. CONWAY:  But that said, Your Honor --

7             THE COURT:  This is what I'm going to have you

8      both do.  You're going to submit your proposed dates for

9      your discovery schedule to the Court by next Friday, the

10     27th of October, and I'm going to enter the dates, because

11     obviously you're not agreeing, which is fine, and then I'll

12     just enter the order.

13            MR. DESPINS:  Thank you, Your Honor.

14            THE COURT:  All right.  So I think that there

15     probably isn't anything else that we can do in the Taurus

16     Fund adversary, is that correct?

17            MR. LUFT:  That's correct, Your Honor.

18            MR. DESPINS:  That's correct.

19            MR. CONWAY:  As far as I know, Your Honor, that's

20     correct.

21            THE COURT:  Okay.  Thank you.  And I'll look.  I

22     want them filed by noon on October 27th.

23            MR. LUFT:  Yes, Your Honor.

24            THE COURT:  Thank you.

25            MR. CONWAY:  I'm sure that's the last on your

1    calendar, Your Honor, but if not, may I be excused?

2              THE COURT:  Yes, you may.  Thank you very much.

3              MR. CONWAY:  All right.  Take care.

4              MR. DESPINS:  There is another matter and so --

5              THE COURT:  Yeah.  But not with Attorney Conway,

6    right?  He doesn't need to --

7              MR. DESPINS:  That's correct.  That's correct.

8              THE COURT:  Okay.  Go right ahead to the last

9    matter.

10             MR. DESPINS:  Which is Golden Spring.  And Mr.

11   Luft will address that as well.

12             THE COURT:  Go ahead, Attorney Luft.

13             MR. LUFT:  Thank you, Your Honor.  Avi Luft of

14   Paul Hastings on behalf of the Chapter 11 Trustee.

15             Your Honor, I believe as of this morning we now

16   have default judgments have been entered which relate to

17   Golden Spring (New York) and with regard to Golden Spring

18   (China).

19             THE COURT:  Not judgments, just defaults?  You

20   said default judgments, but --

21             MR. LUFT:  Correct.  Just defaults.

22             THE COURT:  -- just defaults at this point.

23             MR. LUFT:  Sorry, Your Honor.

24             THE COURT:  That's okay.

25             MR. LUFT:  I misspoke in getting ahead to my next

1    sentence, which is we do plan to file a motion for default

2    judgments with regard to both.  It is our expectation and

3    our intention to try to get those on file with you this

4    week.  And that's where things stand with regard to the

5    Golden Spring adversaries.

6             THE COURT:  Okay.  You know, obviously, we'll have

7    to take a look at your motion for default judgment.  We

8    normally schedule motions for default judgment for hearing,

9    but we'll take at look at what yours has included with it

10   and we'll make a determination accordingly.

11            Does that make sense?

12            MR. LUFT:  Thank you, Your Honor.  It does, Your

13   Honor.

14            THE COURT:  Okay.

15            MR. DESPINS:  And Your Honor, there's something

16   not on the calendar, but I wanted to update you with respect

17   to the Lady May II.

18            You will recall that I asked you to reserve a

19   date.  I forget now when that was.  But we will not need

20   that date.

21            Unfortunately, the bids we received were really

22   not satisfactory and we need to -- we're going to winterize

23   the Lady May II.

24            Hopefully, we'll try to market it and try to sell

25   it, but we need to take it out of the water for the winter.

1    And then we'll have to figure out what's the best way to

2    deal with that because the bids were not acceptable.

3              THE COURT:  Okay.  I'm sorry to hear that.  But I

4    -- that does happen from time to time.

5              And I think we were talking about November 9th in

6    the afternoon, was my recollection, but I don't know if that

7    is correct.

8              MR. DESPINS:  Yes.  I think you're right, Your

9    Honor, because you have a good memory.  But I think it was

10   in the afternoon of the 9th at 2 o'clock or 3 o'clock,

11   something like that.

12             THE COURT:  Yes.  Because we had --

13             MR. DESPINS:  So we will not need that date.

14             THE COURT:  Because we had -- we have Chapter 13

15   calendar in the morning.

16             THE COURT:  All right.

17             THE COURT:  And that's why we're -- that's the

18   only reason I think I'm recalling that.  But in any event, I

19   understand, and I appreciate you letting us know that that

20   is not a date and time that you think that you will need

21   court time.  And we'll have to see where things go from

22   there.

23             MR. DESPINS:  Yes, Your Honor.

24             THE COURT:  All right.  So is there anything else

25   that you would like to address this afternoon?

1          MR. DESPINS:  Not at this time, Your Honor.  Thank

2     you.

3          THE COURT:  Does anyone else wish to address any

4     issues this afternoon?

5          UNIDENTIFIED:  No, Your Honor.

6          THE COURT:  Okay.  All right.  Well, thank you,

7     all.  And we will handle the matters that are before us in

8     the ordinary course and we'll see you when we have the next

9     hearing or status conference.

10         UNIDENTIFIED:  Thank you, Your Honor.

11         THE COURT:  Okay.

12         UNIDENTIFIED:  Thank you, Your Honor.  Appreciate

13     it.

14         THE COURT:  All right.  Thank you, all.

15         That concludes today's calendar, so court is

16     adjourned.

17     (Proceedings concluded at 3:14 p.m.)

18

19

20

21

22

23

24

25

1    I, CHRISTINE FIORE, court-approved transcriber and certified

2    electronic reporter and transcriber, certify that the

3    foregoing is a correct transcript from the official

4    electronic sound recording of the proceedings in the above-

5    entitled matter.

6

7    *Christine Fiore*

8    _____          October 24, 2023

9       Christine Fiore, CERT

10          Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25