B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS LAMP CAPITAL LLC, INFINITY TREASURY |
|---|---|
| LUC A. DESPINS, CHAPTER 11 TRUSTEE | MANAGEMENT INC., HUDSON DIAMOND NY LLC, HUDSON DIAMOND HOLDING LLC, LEADING SHINE NY LTD., MEI GUO, AND YANPING, A/K/A "YVETTE", WANG, |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 Tel: 318-6000, Attn: Douglass Barron | See Schedule 1 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor        ☐ Other ☒ Trustee | ☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor        ☒ Other ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Declaratory Judgment and Turnover of Lamp Capital's Assets to Trustee. Declaratory Judgment and Turnover of Ownership of Lamp Capital and/ or Its Assets to Trustee. Declaratory Judgment and Turnover of Hudson Diamond NY's Assets to Trustee. Declaratory Judgment and Turnover of Ownership of Hudson Diamond NY and/or Its Assets to Trustee. Declaratory Judgment and Turnover of Leading Shine NY's Assets to Trustee. Declaratory Judgment and Turnover of Ownership of Leading Shine NY and/or Its Assets to Trustee.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br><br>Ho Wan Kwok | BANKRUPTCY CASE NO.<br><br>22-50073 | |
| DISTRICT IN WHICH CASE IS PENDING<br><br>Connecticut | DIVISION OFFICE<br><br>Bridgeport | NAME OF JUDGE<br><br>Julie A. Manning |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Douglass Barron | | |
| DATE<br><br>10/26/2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Douglass Barron | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

SCHEDULE 1

Attorney for Hudson Diamond Entities and Mei Guo
c/o Aaron A. Romney
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Tel: 203-368-4234

Attorney for Yvette Wang
c/o Alex Lipman
Lipman Law PLLC
147 W. 25th St.
12th Fl
New York, New York 10001
Tel: 212-401-0070

c/o Emil Bove
Blanche Law PLLC
99 Wall Street
Suite 4460
New York, NY 10005
Tel: 212-716-1250

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-----------------------------------------------------------------x
                                              :
In re:                                        :    Chapter 11
                                              :
HO WAN KWOK, *et al.*,[1]                     :    Case No. 22-50073 (JAM)
                                              :
                         Debtors.             :    (Jointly Administered)
                                              :
-----------------------------------------------------------------x
                                              :
LUC A. DESPINS, CHAPTER 11                    :
TRUSTEE,                                      :
                                              :    Adv. Proceeding No. [_____]
                         Plaintiff,           :
v.                                            :
                                              :
                                              :
LAMP CAPITAL LLC, INFINITY TREASURY           :
MANAGEMENT INC., HUDSON DIAMOND NY            :
LLC, HUDSON DIAMOND HOLDING LLC,              :
LEADING SHINE NY LTD., MEI GUO, AND           :
YANPING, A/K/A "YVETTE", WANG,                :
                                              :
                         Defendants.          :
-----------------------------------------------------------------x

**COMPLAINT OF CHAPTER 11 TRUSTEE FOR ESTATE OF HO WAN KWOK
PURSUANT TO SECTIONS 541, 542, AND 544 OF BANKRUPTCY CODE SEEKING
(I) DECLARATORY JUDGMENT THAT EACH OF LAMP CAPITAL LLC, HUDSON
DIAMOND NY LLC, AND LEADING SHINE NY LTD. IS ALTER EGO OF DEBTOR,
AND (II) RELATED RELIEF**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor" or "Kwok"), files this

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The
mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul
Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho
Wan Kwok (solely for purposes of notices and communications).

adversary complaint (the "Complaint") against defendants: (a) Lamp Capital LLC ("Lamp Capital"), (b) Infinity Treasury Management Inc. ("Infinity Treasury Management"), (c) Hudson Diamond NY LLC ("Hudson Diamond NY"), (d) Hudson Diamond Holding LLC ("Hudson Diamond Holding"), (e) Leading Shine NY Ltd. ("Leading Shine NY"), (f) Mei Guo, and (g) Yvette Wang (together with Lamp Capital, Infinity Treasury Management, Hudson Diamond NY, Hudson Diamond Holding, Leading Shine NY, and Mei Guo, the "Defendants").  In support of this Complaint, the Trustee states as follows:

## NATURE OF ACTION

1.      The Debtor's pervasive use of shell companies to conceal his business dealings and hide his valuable assets from his creditors has been well-chronicled in these chapter 11 cases.  This Complaint relates to the Debtor's use of three entities—Lamp Capital, Hudson Diamond NY, and Leading Shine NY (together, the "Alter Ego Defendants")—as his personal slush funds to move millions between various shell companies and to pay his personal expenses, including his legal fees.  The Trustee seeks a ruling that the Alter Ego Defendants are the Debtor's alter egos and that the Debtor equitably owns the Alter Ego Defendants and their assets.

2.      Despite the Debtor's efforts to distance himself from the Alter Ego Defendants on paper, the Debtor dominated and controlled the Alter Ego Defendants and their assets at all relevant times.  Among other things, the Alter Ego Defendants were managed by the Debtor through his agents (including Yvette Wang, Max Krasner, and/or Daniel Podhaskie), were funded by other entities controlled by the Debtor, and were used to funnel money to other Debtor shell companies and family members and to pay a variety of the Debtor's personal expenses.  In addition, one of the Alter Ego Defendants, Hudson Diamond NY, helped fund the purchase of

the Debtor's real property that he owned through Greenwich Land LLC.  This entity also, upon information and belief, owned at least one of the Debtor's luxury vehicles.

3.      The Debtor has not denied these allegations.  Rather, when asked about his ownership and control over the Alter Ego Defendants, the Debtor asserted the Fifth Amendment, refusing to answer the Trustee's questions.  The Court can and should draw a negative inference against the Defendants from this testimony.

4.      Based on these and the other facts set forth below, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code declaring that (i) each of Lamp Capital, Hudson Diamond NY, and Leading Shine NY is an alter ego of the Debtor, and (ii) each of Lamp Capital, Hudson Diamond NY, and Leading Shine NY and/or their assets are equitably owned by the Debtor.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b).

6.      This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. §157(a).  Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7.      The Trustee is the chapter 11 trustee in the Chapter 11 Case pursuant to the Court's order entered on July 8, 2022 [Main Case Docket No. 523].

8.      Lamp Capital is a Delaware limited liability company.

9.      Infinity Treasury Management Inc. is a Delaware corporation that is the purported sole member of Lamp Capital.

10.      Hudson Diamond NY is a New York limited liability company.

3

11.     Hudson Diamond Holding is a Delaware limited liability company that is the purported sole member of Hudson Diamond NY.[2]

12.     Leading Shine NY is a Delaware corporation.

13.     Mei Guo is the Debtor's daughter.  She has asserted that she is the beneficial owner of Leading Shine NY.  She is also the purported sole member of Hudson Diamond Holding.

14.     Yvette Wang is the Debtor's close associate and alleged co-conspirator in the criminal action pending against the Debtor and Ms. Wang in New York federal court.  Ms. Wang has asserted that she is the beneficial owner of Leading Shine NY.

## FACTS

### I.     Background: Debtor's Prolific Use of Shell Companies

15.     As the Court is by now well aware, the Debtor is a prolific user of shell companies, purportedly owned by family members or business subordinates, to shield his assets and activities from creditors.  The Debtor's "shell game" has allowed him to continue to deny ownership of assets, refuse to pay debts, and—until his recent arrest by the FBI—live a life of luxury.  Indeed, in addition to the Alter Ego Defendants, the Court is already familiar with numerous of these entities, including:

     a.   **HK International Funds Investments (USA) Limited, LLC ("HK USA")**, purportedly owned by the Debtor's daughter, Mei Guo and used by the Debtor to hold title to the *Lady May* yacht, which this Court and Justice Ostrager ruled was

---

[2]   In June 2023, Hudson Diamond NY's counsel Aaron Romney of Zeisler & Zeisler P.C. filed a motion to withdraw as counsel to Hudson Diamond NY, claiming to be unsure who the ultimate beneficial owner of the company was, despite corporate documents showing that Hudson Diamond NY's purported sole member was Hudson Diamond Holding and that Hudson Diamond Holding's purported sole member was Mei Guo, which motion was denied [Main Case Docket No. 2220].  In the court's decision denying withdrawal, the Court noted, among other things, that the exhibits presented by the Trustee "seem to confirm that Ms. Guo had authority to retain [Attorney Romney] and Attorney Vartan because HD Holding is the sole member of HD NY."  *Id.* at 5.

beneficially owned by the Debtor.[3]  The Court also ruled HK USA to be the Debtor's alter ego.[4]

b. **Greenwich Land, LLC ("<u>Greenwich Land</u>")**, purportedly owned by the Debtor's wife, and used by the Debtor to hold title to the Debtor's mansion in Greenwich, Connecticut.[5]

c. **Whitecroft Shore Limited and Anton Development Limited**, entities purportedly owned by Mei Guo and used by the Debtor to hold title to the Debtor's Bombardier Global XRS private jet.[6]

d. **HCHK Technologies, Inc., HCHK Property Management, Inc., and Lexington Property, Inc. (collectively, the "<u>HCHK Entities</u>")**, each of which is purportedly owned (a) 99.9999% by a British Virgin Islands ("<u>BVI</u>") company purportedly owned by the Debtor's personal assistant, Yvette Wang and (b) 0.0001% by a long-time employee of the Debtor, Anthony DiBattista.[7]  The HCHK Entities were used by the Debtor to, among other things, run his media operations and hold title to significant assets, including over $38 million in cash.

e. **Taurus Fund, LLC**, purportedly managed by the Debtor's bodyguard and chauffer, Scott Barnett, and used by the Debtor to hold title to his mansion in Mahwah, New Jersey.[8]

---

[3]   *Supplemental Memorandum of Decision in Support of Oral Ruling Granting Motion for Partial Summary Judgment*, at 31 (Adv. Proc. No. 22-05003, Mar. 30, 2023) [Docket No. 177] ("the issue of the Individual Debtor's beneficial ownership and control of the Lady May is decisive as to the First Counterclaim and the identical issue was necessarily decided by Justice Ostrager in the Final Contempt Decision, which found by clear and convincing evidence that the Individual Debtor beneficially owned and controlled the Lady May").

[4]   *Memorandum of Decision and Order Granting Motion for Partial Summary Judgment on Second Counterclaim*, at 35 (Adv. Proc. No. 22-05003, May 18, 2023) [Docket No. 221] ("HK USA is the alter ego of the Individual Debtor.").

[5]   The Trustee has sought an alter ego judgment against this entity in adversary proceeding 23-05005, in connection with which the Court entered a prejudgment remedy and temporary restraining order against Greenwich Land LLC and the Debtor's wife.  *See Order Granting in Part Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction* (Adv. Proc. No. 23-05005, Mar. 28, 2023) [Docket No. 14]; *Order Granting Chapter 11 Trustee's Amended Application for Ex Parte Prejudgment Remedy* (Adv. Proc. No. 23-05005, Mar. 28, 2023) [Docket No. 15].

[6]   These two companies, along with other companies purportedly owned by Mei Guo, are subjects of adversary proceeding 23-05008.  *See Complaint of Chapter 11 Trustee for Estate of Ho Wan Kwok for (I) Declaratory Judgment, Pursuant to Sections 541, 542, and 544 of the Bankruptcy Code and Bankruptcy Rule 7001, that Property Held by Mei Guo Is Property of Estate and (II) Related Relief* (Adv. Proc. No. 23-05008, May 16, 2023) [Docket No. 1].

[7]   The Trustee has sought an alter ego judgment against these entities in adversary proceeding 23-05013, in connection with which the Court entered a temporary restraining order on June 12, 2023.  *See Order Granting in Part Emergency* Ex Parte *Motion for Temporary Restraining Order and Preliminary Injunction* (Adv. Proc. No. 23-05013, June 12, 2023) [Docket No. 18].

[8]   The Trustee has sought an alter ego judgment against Taurus Fund LLC in adversary proceeding 23-05017, in connection with which the Court entered a preliminary injunction order on August 24, 2023. *See Memorandum of Decision and Order Granting in Part Motion for Preliminary Injunction* (Adv. Proc. No. 23-05017, August 24, 2023) [Docket No. 47].

f. **Ace Decade Limited ("<u>Ace Decade</u>")**, which this Court found was beneficially owned by the Debtor.[9] The Court also found that the Debtor controlled and employed Ace Decade's nominee owner, Yvette Wang.[10] The Trustee has since learned that Yvette Wang, while the Ace Decade proceedings were ongoing (but after the Court found, on November 17, 2022, that the Debtor exclusively beneficially owned and controlled Ace Decade as of the February 15, 2022 petition date[11]), transferred the stock of Ace Decade that she nominally owned to an individual located in Switzerland (who, upon information and belief, is another associate of the Debtor).

g. **Golden Spring (New York) Ltd. ("<u>Golden Spring</u>")**, which is the Debtor's family office purportedly owned by the Debtor's son. Golden Spring was, among other things, funded by the Debtor, used by the Debtor to hold his assets and pay his expenses, and managed and staffed by the Debtor's employees.[12]

h. **Gettr, GFashion, GMusic, GClubs, GNews, and GEdu (the "<u>G-Series Entities</u>"), New Federal State of China ("<u>NFSC</u>"), and Rule of Law Foundation ("<u>ROLF</u>")**, as well as other purportedly independent entities and organizations, which this Court found were controlled by the Debtor,[13] led by the Debtor,[14] and/or served "the purposes of . . . and as business vehicles of" the Debtor.[15] The Court also found that the members of these entities and organizations were "personally loyal to the Debtor."[16]

16. These entities are the tip of the iceberg. According to the United States

Government, the Debtor and his co-defendants William Je and Yvette Wang "utilized more than

---

[9] *Order Granting Motion to Hold Debtor in Contempt of Corporate Governance Order* ¶ 1 (Jan. 24, 2023) [Main Case Docket No. 1372] (the "<u>Corp. Governance Contempt Order</u>").

[10] Corp. Governance Contempt Order ¶ 4.

[11] *See Order Regarding Partial Resolution of Trustee's Contempt Motion* ¶ 1 (Nov. 17, 2022) [Main Case Docket No. 1110].

[12] The Trustee has sought an alter ego judgment against Golden Spring in adversary proceeding 23-05018, in connection with which the clerk of the court has entered defaults against Golden Spring, *see Entry of Default* (Adv. Proc. No. 23-05018, Sept. 20, 2023) [Docket No. 17], and against its purported parent company China Golden Spring Group (Hong Kong) Limited. *See Entry of Default* (Adv. Proc. No. 23-05018, Oct. 17, 2023) [Docket No. 20].

[13] *Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction* ¶ 3 (Adv. Proc. No. 22-05032, Jan. 13, 2023 ("The Debtor also controls Saraca Media Group and a related entity 'GTV'").

[14] *Id.* ¶ 7 ("The Debtor is the leader of The Whistleblower Movement, NFSC, ROLF, and Himalaya.").

[15] *Id.* ("The Whistleblower Movement, NFSC, ROLF, GSeries, and Himalaya serve the purposes of the Debtor, serve as business vehicles for the Debtor, and their members are personally loyal to the Debtor.").

[16] *Id.*

6

approximately 500 accounts held in the names of *at least 80 different entities or individuals* to launder more than $1 billion in fraud proceeds."[17]

17.    In sum, while this Complaint focuses on Lamp Capital, Hudson Diamond NY, and Leading Shine NY, the context regarding the Debtor's wide-ranging strategy of using shell companies to shield assets from creditors is highly relevant. The Trustee reserves his rights to pursue additional actions against other entities at the appropriate time.

## II.   Lamp Capital Is Alter Ego of and Equitably Owned by Debtor

### A.  Lamp Capital Formed by Debtor Through His Counsel

18.    Lamp Capital was formed in Delaware on September 4, 2020,[18] and registered to do business in New York on September 14, of 2020.[19] Lamp Capital's sole member is Infinity Treasury Management, of which Qiang Guo, the Debtor's son, is the purported sole shareholder.[20]

19.    The Debtor's counsel who assisted the Debtor in forming Lamp Capital was Hodgson Russ LLP ("Hodgson Russ"). Valerie Stevens, a partner at Hodgson Russ, signed Lamp Capital's certificate of formation as "Organizer."[21] Hodgson Russ also handled corporate filings related to Lamp Capital's authorization to do business in New York state.[22]

---

[17] *See Memorandum of Law of the United States of America in Opposition to Defendant Yanping Wang's Motion for Pretrial Release* (the "USAO Memorandum"), at 29, attached as Exhibit B in the Reply of Chapter 11 Trustee to G Club Operations LLC's Supplemental Objection to Trustee's Motion to Compel and Request for Related Relief (the "G-Club Reply") (June 23, 2023) [Main Case Docket No. 1934].

[18] Ex. 1, Certificate of Formation of Lamp Capital LLC, attached as Ex. B to the Affidavit of Bernardo Enriquez in Support of Non-Party Lamp Capital's Motion to Quash or Modify, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok et al.*, Index No. 652077/2017, NYSCEF Doc. No. 936, Nov 5, 2021 (the "Enriquez Affidavit").

[19] Ex. 2, Application for Authority of Lamp Capital LLC, dated Sept. 11, 2020, filed with the State of New York, attached as Ex. C to Enríquez Affidavit.

[20] Ex. 3, Limited Liability Company Agreement of Lamp Capital LLC, attached as Ex. D to Enriquez Affidavit.

[21] Ex. 1, Certificate of Formation of Lamp Capital LLC.

[22] Ex. 2, Application for Authority of Lamp Capital LLC.

20.     In addition to its work with respect to Lamp Capital, Hodgson Russ was counsel to the Debtor, his family members, his close associates, and his shell companies in connection with numerous matters, including, among others:[23]



### B. Lamp Capital Managed by Debtor Through Debtor's Agents

21.     Prior to June 10, 2021, Daniel Podhaskie served as sole director, president, and treasurer of Infinity Treasury Management, the sole member of Lamp Capital.[24]  Mr. Podhaskie was also an authorized signatory for Lamp Capital who, among other things, opened bank accounts on Lamp Capital's behalf.[25]

22.     Mr. Podhaskie was, at all relevant times, an agent of the Debtor.  Mr. Podhaskie acted on the Debtor's behalf.  He served as the Debtor's personal attorney and as general counsel of Golden Spring, another one of the Debtor's shell companies.  He also served as a corporate representative of Genever Holdings LLC and Genever Holdings Corporation, entities owned by

---

[23]   Ex. 4, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[24]   Ex. 5, Unanimous Written Consent in Lieu of Special Meeting of Sole Shareholder of Infinity Treasury Management, Inc., attached as Ex. F to Enriquez Affidavit.
[25]   Ex. 6, Account Agreement for Lamp Capital LLC with The Bank of Princeton for the account ending 0389, dated Sept. 10, 2020; Ex. 7, Account Agreements for Lamp Capital LLC with The Bank of Princeton for the accounts ending 0306, 0322, and 0314 dated Sept. 15, 2020.

the Debtor. Mr. Podhaskie served the Debtor in numerous other roles as well, including as officer and/or authorized signatory for Greenwich Land, Hudson Diamond Holding, and Hudson Diamond NY.[26] When the Debtor was asked at his deposition whether Mr. Podhaskie was his employee and agent, the Debtor asserted his Fifth Amendment rights.[27]

23.     On June 10, 2021, Max Krasner replaced Mr. Podhaskie as sole director and president of Infinity Treasury Management. Like Mr. Podhaskie, Mr. Krasner was an agent of the Debtor. Mr. Krasner acted on the Debtor's behalf and worked for the Debtor as a subordinate to Yvette Wang. Mr. Krasner was a Golden Spring employee who also served in roles at numerous other Debtor shell companies, including serving as an employee, officer and/or authorized signatory of Greenwich Land, Hudson Diamond Holding, Hudson Diamond NY, Rule of Law Foundation, and one or more of the HCHK Entities.[28] When asked at his deposition whether Mr. Krasner was his employee and agent, the Debtor asserted his Fifth Amendment rights.[29]

24.     With respect to Yvette Wang, this Court has already ruled that "[t]he Debtor has control over Ms. Wang" and that he "has employed Yvette Wang for several years, and has directed her to take actions on his behalf, including directing her to act on his behalf to purchase

---

[26] *See, e.g.,* ████████████████████████ Ex. 9, Hudson Diamond Holding LLC, Consent of Sole Member Without a Meeting, dated December 4, 2020; Ex. 10, Daniel Podhaskie resignation as President of Hudson Diamond Holding LLC, dated January 4, 2021; Ex. 11, Hudson Diamond NY LLC, Consent of Sole Member Without a Meeting; Ex. 12, Daniel Podhaskie resignation as President of Hudson Diamond NY LLC, dated January 4, 2021.

[27] Ex. 13, Ho Wan Kwok Dep. Tr., dated March 2, 2023, at 86:14-18.

[28] Ex. 14, ████████████████████████ Ex. 15, Hudson Diamond Holding LLC, Consent of Sole Member Without a Meeting, dated July 17, 2019 (reflecting Mr. Krasner as the vice president); Ex. 16, Hudson Diamond NY LLC, Consent of Sole Member Without a Meeting, dated July 17, 2019; Ex. 18, Limited Liability Company Agreement of Lamp Capital, LLC, dated September 8, 2020; Ex. 19, CHAR 500 Form of Rule of Law Foundation (Form 990, Page 7, listing Max Krasner as "President, Treasurer, Director"); Ex. 20, Email by and among Max Krasner, Anthony DiBattista and attorneys from Marcum on the HCHK 2022 Bank Statements in January 2023.

[29] Ex. 13, Kwok Dep. Tr. at 34:6-20.

properties such as the Sherry-Netherland apartment."[30]   Apart from her role at Hudson Diamond

NY, Ms. Wang has also served the Debtor in numerous other roles, including as an officer and/or

authorized signatory of Golden Spring, Greenwich Land, Leading Shine NY, Saraca, GTV

Media Group, Inc., Ace Decade Limited, and Genever Holdings LLC.[31]  Ms. Wang was widely

known to be the Debtor's personal assistant.  When asked at his deposition whether Ms. Wang

was his employee, the Debtor asserted his Fifth Amendment rights.[32]

25.      On March 15, 2023, Ms. Wang was arrested in connection with charges that she

had, among other things, conspired with the Debtor in connection with his alleged criminal fraud

and money-laundering activities.  According to the U.S. Government, Ms. Wang played an

"instrumental role" in the Debtor's fraud scheme as his "trusted chief of staff who is tasked with

managing operations at even those entities with which she has no formal affiliation."[33]

### C.  Lamp Capital Funded by Debtor

26.      Upon information and belief, at all relevant times, Lamp Capital has been funded

entirely by the Debtor through entities he controls and would have had no capitalization absent

such funding.

---

[30]    Corp. Governance Contempt Order ¶ 4.
[31]    Ex. 21, Affidavit of Yan Ping Wang ¶ 1, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. May 15, 2018) [Docket No. 182] ("I am the President of Golden Spring (New York) Ltd., and in that capacity serve as an administrator for the interests of [the Debtor] and his family."); Ex. 15, Hudson Diamond Holding LLC, Consent of Sole Member Without a Meeting, dated July 17, 2019 (rendering Ms. Wang signatory);  Ex. 22, ████████████████████████████  Ex. 23, Himalaya Coin Certificate of Assumed Name, dated March 14, 2020; Ex. 24, Himalaya Dollar Certificate of Assumed Name, dated March 14, 2020; Ex. 25, Complaint ¶ 9a, *United States v. Wang*, No. 1:23-mj-02007-UA (S.D.N.Y. Mar. 10, 2023) [Docket No. 1] ("Wang was an Executive Director of GTV"); Ex. 84, Particular of Claims, *Kwok Ho Wan & Ors. v. UBS*, Cl-2020-000345, at 38, High Court of Justice of England and Wales Queen's Bench Division Commercial Court, dated September 23, 2020 ("UK Complaint") (signed by Yvette Wang on behalf of Ace Decade); *Debtor's Declaration Pursuant to Local Bankruptcy Rule 1007-2* ¶ 1, (Case No. 22-50592, Oct. 12, 2020) [Docket No. 1]; Ex. 14, Greenwich Land, LLC, Consent of Sole Member Without a Meeting, dated January 19, 2021.
[32]    Ex. 13, Kwok Dep. Tr., at 33:11-13.
[33]    Ex. 26, United States Letter in Opposition to Yvette Wang's Motion for Bond, at 18, *U.S. v. Yanping Wang, a/k/a "Yvette,"* (Mar. 29, 2023) [Case No. 1:23-cr-00118-AT, Docket No. 10].

27.    Lamp Capital has received funding from numerous other Debtor-controlled entities.  Among other things, Lamp Capital received transfers of at least ██████████ ██████████[34] at least $9 million from Greenwich Land,[35] at least $9 million from ACA Capital,[36] and at least $5 million from Savio Law LLC.[37]  Upon information and belief, Lamp Capital received no funding other than from other Debtor-controlled entities.

### D.  Lamp Capital Used Same Address as Other Debtor Shell Companies

28.    Lamp Capital used 162 East 64th Street, New York, New York, as its address.[38] 162 East 64th Street has been used as an address by the Debtor himself,[39] his counsel Aaron Mitchell,[40] and a number of the Debtor's shell companies, including Golden Spring,[41] HK

---

[34]   Ex. 59,



and Ex. 62, Lamp Capital Dime Bank statement for December 2021 (showing another transfer from Hudson Diamond NY of approximately $500,000 on December 21, 2021).

[35]   Ex. 63, Lamp Capital November 2020 account statement at The Bank of Princeton (showing a transfer of $9 million from an account ending 0199 to Lamp Capital's account ending 0389).  *See also* Ex. 64, Greenwich Land, LLC November 2020 account statement at The Bank of Princeton (showing a transfer of $9 million from its account ending 0199 to an account ending 0389).

[36]   Ex. 65, Lamp Capital Dime Bank statement for November 2021 (showing an approximately $2 million transfer from ACA Capital on November 17, 2021); Ex, 62 (showing a transfer of approximately $2 million from ACA Capital on December 6, 2021); Ex. 66, Lamp Capital Dime Bank statement for January 2022 (showing an approximately $2 million transfer from ACA Capital on January 26, 2022); and Ex. 67, Lamp Capital Dime Bank statement for February 2022 (showing a $3 million transfer from ACA Capital on February 16, 2022).  As the Court may recall from the Trustee's counterclaims filed in his litigation with HK USA, ACA Capital is a Hong Kong entity that has numerous links to the Debtor and is purportedly owned by the Debtor's criminal co-defendant, William Je. *See Chapter 11 Trustee's Answer and Counterclaims*, Adv. Proc. No. 22-05003, Dkt. No. 36 at ¶ 86(d).  When asked at his March 2, 2023 deposition whether he had beneficial ownership or exclusive control of ACA Capital, the Debtor asserted the Fifth Amendment. See Ex. 13, Kwok Depo Tr., at 73:23-74:11.  *See also* Ex. 33, Debtor's Sworn Declaration, ¶ 62 (asserting Fifth Amendment regarding control over ACA Capital).

[37]   Ex. 68, Lamp Capital account statement at The Bank of Princeton for October 2020 (showing a transfer of $5 million from Savio Law LLC on October 15, 2020).  Savio Law LLC is the law firm of attorney Nicholas Savio (now employed at the firm of the Debtor's attorney Aaron Mitchell, Lawall & Mitchell, LLC). *See* LinkedIn profile of Nicholas Savio, at https://www.linkedin.com/in/nicholas-savio-a7390b95/, and profile of Nick Savio, of counsel at Lawall & Mitchell, at https://lmesq.com/attorneys/nick-savio/.

[38]   *See e.g.*, Ex. 69, Lamp Capital's Certificate of Beneficial Owner(s) at Dime Bank (identifying the physical business address of Lamp Capital to be at 162 E 64th Street, New York).

[39]   *See* Debtor's Bankruptcy Petition [Main Case Docket No. 1].

[40]   Ex. 27, Consent to Change Attorney, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 338.

[41]   Debtor's Bankruptcy Petition [Main Case Docket No. 1].

USA,[42] GTV Media Group, Inc.,[43] Saraca,[44] Hudson Diamond Holding,[45] Hudson Diamond NY

LLC,[46] and Rule of Law Foundation.[47]

### E. Debtor Used Lamp Capital to Pay His Expenses

29.     The Debtor used Lamp Capital to pay his expenses.  In fact, Lamp Capital was a

critical part of the Debtor's arrangement for living a life of luxury while at the same time

asserting that he was effectively judgment proof, as exemplified by the Schedules of Assets and

Liabilities filed in this Chapter 11 Case, where the Debtor claimed to hold assets of $3,850.00.[48]

The examples of Lamp Capital functioning in this way are legion.  Among others:

    a.  Lamp Capital paid the $1 million retainer of the Debtor's initial bankruptcy counsel, Brown Rudnick LLP ("<u>Brown Rudnick</u>").[49]

    b.  Lamp Capital paid numerous of the Debtor's legal fees and expenses associated with litigation involving the Debtor, including to the Debtor's law firms such as Lawall & Mitchell, LLC, The Casper Firm, The Francis Firm PLLC, Baker Hostetler LLP, Hodgson Russ, Schulman Bhattacharya LLC, and Ganfer Shore Leeds & Zauderer LLP, and Clayman & Rosenberg LLP.[50]  Lamp Capital has

---

[42]  Ex. 28, Limited Liability Company Agreement of HK International Funds Investments (USA) Limited, LLC, dated April 1, 2019.

[43]  Ex. 29, OpenGovNY New York State corporate registry search results registration search results for GTV Media Group Inc.

[44]  Ex. 30, Saraca Media Group Inc. OpenGovNY New York State corporate registry search results.

[45]  Ex. 31, Hudson Diamond NY LLC fact sheet from Hodgson Russ (showing 162 E 64th St. as LLC address).

[46]  *Id.* (showing 162 E 64th St. as Hudson Diamond Holding address).

[47]  Ex. 32, CHAR 500 Form of Rule of Law Society IV, Inc.

[48]  *See* Official Form 106, at 5 (Mar. 9, 2022) [Main Case Docket No. 78].

[49]  This payment was made using the proceeds of a purported $1 million loan from Lamp Capital to the Debtor that were remitted directly from Lamp Capital to Brown Rudnick. *See Application of the Debtor for Entry of an Order Authorizing the Employment and Retention of Brown Rudnick LLP as Counsel for the Debtor* ¶ 17, [Main Case Docket No. 86];  Ex. 46, Tr. of Telephonic 341 Meeting of Creditors, dated April 6, 2022 at 49: 22-24.  At his April 6, 2022 Section 341 meeting, the Debtor testified that this loan was not in writing and that he did not know the terms of the loan, why the money had been lent, or what the source of the money was. *Id.* at 49-51.

[50]  See e.g., Ex. 56, check from Lamp Capital to U.S. Legal Support, Inc. on January 12, 2022; Ex. 94, check from Lamp Capital to The Francis Firm PLLC on January 11 2022; Ex. 95, check from Lamp Capital to Schuman Bhattacharya, LLC on November 17, 2021; Ex. 96, check from Lamp Capital to The Casper Firm on January 26, 2022; Ex. 97, check from Lamp Capital to Ganfer Shore Leeds & Zauderer LLP on October 13, 2021; Ex. 98, check from Lamp Capital to Roy D. Simmon on October 28, 2021; Ex. 99, check from Lamp Capital to Veritext on October 13, 2021; Ex 100, check from Lamp Capital to Baker Hostetler LLP on December 27, 2021; Ex. 101, check from Lamp Capital to Lawall & Mitchell on November 17, 2021; Ex. 102, check from Lamp Capital to Clayman & Rosenberg LLP on January 11, 2022; Ex. 103, check from Lamp Capital to Hodgson Russ on November 12, 2021; Ex. 104, check from Lamp Capital to William Bradley Wendel on November 10, 2021.

also made numerous payments of the Debtor's fees owed to other providers of legal or expert witness services such as Veritext, US Legal Support Inc., Roy D. Simon, and William Bradley Wendel.[51]

c.   Lamp Capital paid expenses associated with the Debtor's yacht, the *Lady May*,[52] as well as the maintenance fees associated with the Sherry Netherland Apartment.[53]  Lamp Capital has also made numerous payments to ACASS Canada Ltd., Wings Insurance Agency Inc., and SAAM Verspieren Group,[54] in connection with the operation and maintenance of the Debtor's private jet, the Bombardier Global XRS (which is subject to another adversary proceeding filed by the Trustee against Mei Guo).

d.   Lamp Capital made multiple transfers to the Bento for Business accounts of Debtor-controlled companies,[55] from which pre-paid Bento debit cards were issued to the Debtor's family members and associates and used on spending to support the Debtor's luxurious lifestyle.[56]

e.   Lamp Capital has paid the Mar-a-Lago Club on behalf of the Debtor in connection with the membership there held in his name.[57]

### F.   Lamp Capital Had No Business Other Than to Hold Debtor's Property and/or Pay His Expenses

30.     As discussed further herein, Lamp Capital's only documented activities consisted

of holding the Debtor's assets and paying his expenses.  Lamp Capital did nothing other than

---

[51]   *Id*.  Upon information and belief, Lamp Capital paid certain of these legal fees pursuant to purported litigation funding agreements under which no proceeds of successful litigation by the Debtor would have ever become the Debtor's property, but would instead be paid directly to Golden Spring.

[52]   Ex. 65 (showing a transfer of approximately $290,000 to Yachtzoo Yacht Management LLC on November 18, 2021); Ex. 66 (showing an approximately $245,000 transfer to Yachtzoo on January 26, 2022); Ex. 70, Lamp Capital Dime Bank account statement for February 2022 (showing a transfer of approximately $460,000 to Yachtzoo on February 23, 2022); and Ex. 68 (showing a transfer of $272, 525 to Moran Yacht Management Inc. on October 29, 2020).

[53]   *See e.g.*, Ex. 75, a check from Lamp Capital's account at Dime Bank to the Sherry-Netherland Inc. on March 3, 2022 for $2,020.71.

[54]   *See e.g.*, Ex. 71, Lamp Capital Dime Bank March 2022 statement (showing a transfer of approximately $18,000 to Wings Insurance Agency on March 3, 2022, and $46,880 to SAAM Verspieren Group on March 10, 2020). Ex., 72, Lamp Capital Dime Bank account statement for account ending 6250 for January 2022 (showing a transfer of $117,428.82 to ACASS Canada Ltd.); Ex. 73, Lamp Capital Dime Bank account statement for account ending 6250 for November 2021 (showing two transfers of approximately $615,000 to ACASS Canada Ltd.)

[55]   *See e.g.*, Ex. 72 (showing three transfers to Bento for a total of $150,000); Ex. 73 (showing two transfers of a total of $10,000 transfer to Bento)

[56]   *See Memorandum of Law in Support of Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Summary Judgment with Respect to Alter Ego and Equitable Ownership Claims* ¶¶ 7-12, in the adversary proceeding against Greenwich Land and Hing Chi Ngok [Adv. Proc. No. 23-05005, Doc No. 78].

[57]   *See e.g.*, Ex. 74, a check from Lamp Capital's account at Dime Bank to the Mar-a-lago Club on December 6, 2021 for $300 on behalf of the Debtor (memo of the check identifies the Debtor with a member ID).

receive funding from other Debtor-controlled companies, hold cash in bank accounts, and pay for the Debtor's expenses.[58]

### G. Debtor Asserted Fifth Amendment Regarding Control Over Lamp Capital

31.     The Debtor has asserted the Fifth Amendment on multiple occasions when questioned regarding his control over Lamp Capital.  At his March 2, 2023 deposition, the Debtor invoked the Fifth Amendment when asked:

      a.   whether he was the equitable owner of Lamp Capital;

      b.   whether he was the beneficial owner of Lamp Capital;

      c.   whether he had exclusive control over Lamp Capital; and

      d.   whether he had exclusive control over the assets of Lamp Capital.[59]

32.     In the Debtor's sworn declaration dated May 11, 2023, the Debtor again invoked the Fifth Amendment when asked whether he controlled Lamp Capital. [60]

33.     Similarly, the Debtor asserted the Fifth Amendment regarding his control over the parent company of Lamp Capital, Infinity Treasury Management.[61]

### III.     Hudson Diamond NY Is Alter Ego of and Equitably Owned by Debtor

#### A.  Hudson Diamond NY Formed by Debtor Through Debtor's Counsel

34.     ████████████████████████████████████████ [62] ██████



---

58   Lamp Capital failed to produce any documents in connection with Rule 2004 discovery and, on April 26, 2023, this Court found Lamp Capital to be in civil contempt of Court for failing to comply with or respond to the Trustee's Rule 2004 discovery subpoenas [Main Case Docket No. 1709].  Given Lamp Capital's non-compliance with its discovery obligations, the Trustee is unable at this time to determine with precision the value of Lamp Capital's assets, and the Trustee's investigation remains ongoing.

59   *See* Ex. 13, Kwok Dep. Tr., at 27:22-28:3, 28:10-29:20.

60   *See* Ex. 33, Debtor's Sworn Declaration Regarding Responses to Particular Questions, ¶ 154.

61   Ex. 13, Kwok Depo. Tr., at 54:4-13,

62   *See* Ex. 34, ██████████████████████

███████████████████████████.[63] During her deposition, Mei Guo asserted her rights under the Fifth Amendment with respect to whether the Debtor installed her as the nominal sole member of Hudson Diamond Holding.[64]

35.    ██████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████.[65]

36.    Hudson Diamond NY was another entity created on behalf of the Debtor for the purpose of acquiring real property.  References to the "principal" in correspondence related to Hudson Diamond and produced to the Trustee by the Debtor's counsel, Hodgson Russ, were references to the Debtor.

### B.  Hudson Diamond Managed by Debtor Through Debtor's Agents

37.    Yvette Wang,[66] Max Krasner,[67] and Daniel Podhaskie[68] were officers and/or authorized signatories of Hudson Diamond NY, as well as its purported sole member Hudson Diamond Holding.[69]

38.    ████████████████████████████████████████████.[70]

Yvette Wang also signed an "Exclusive Right to Represent Buyer Agreement" on behalf of

---

[63]  Ex. 35, ██████████████████████
[64]  Ex. 36, Mei Guo Depo. Tr., Sep 13, 2023, at 26:4-7.
[65]  Ex. 34, ████████
[66]  Ex. 37, Hudson Diamond Holding LLC, Consent of Sole Member Without a Meeting, dated August 31, 2020; Ex. 9, Hudson Diamond NY LLC, Consent of Sole Member Without a Meeting, dated December 4, 2020;
[67]  *Id.*; *see also* Ex. 16, Hudson Diamond NY LLC, Consent of Sole Member Without a Meeting, dated July 17, 2019.
[68]  *See* Ex. 16, Hudson Diamond NY LLC, Consent of Sole Member Without a Meeting, dated July 17, 2019.
[69]  *See, e.g., id.*
[70]  *See e.g.*, Ex. 91, ████████████████████████████████; Ex 92, ████████████████████████████████████  Ex. 93, ███████████████████████████████████████

Hudson Diamond with Emile de Neree, the real estate broker who assisted the Debtor in the purchase of the Taconic Property.[71]

39.    As discussed above, each of Yvette Wang, Max Krasner, and Daniel Podhaskie were at all relevant times agents of the Debtor.

### C. Hudson Diamond NY Funded by the Debtor

40.    Upon information and belief, at all relevant times Hudson Diamond NY has been funded entirely by the Debtor through entities he controls, and would have had no capitalization absent such funding.

41.    Hudson Diamond NY has received funding from numerous other Debtor-controlled entities, including, among others, ███████████████████████[72] and ███████ ███████████████████.[73]  Upon information and belief, Hudson Diamond NY receives no funding other than from other Debtor-controlled entities.

### H. Hudson Diamond NY Used Same Address as Other Debtor Shell Companies

42.    ███████████████████████████████████████████ ██████.[74]  162 East 64th Street has been used as an address by the Debtor himself,[75] his counsel Aaron Mitchell,[76] and a number of the Debtor's shell companies, including: Golden Spring,[77] HK

---

[71]  Ex. 38, Exclusive Right to Represent Buyer Agreement (containing the Debtor's name, "Miles Guo" on the bottom right corner of every page of the document near the line for inserting the buyer's initials). *See also* Ex. 39, Emile de Neree August 24, 2023 Depo. Tr.

[72]  Ex. 40, ████████████████████████████████████████████

[73]  Ex. 76, ████████████████████████████████████████

[74]  Ex. 41, ████████████████████████████████████████

[75]  Debtor's Bankruptcy Petition [Docket No. 1].

[76]  Ex. 27, Consent to Change Attorney, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 338.

[77]  Debtor's Bankruptcy Petition [Docket No. 1].

USA,[78] GTV Media Group, Inc.,[79] Saraca,[80] Hudson Diamond Holding,[81] Lamp Capital,[82] and Rule of Law Foundation.[83]

### D. Debtor Used Hudson Diamond NY for His Real Estate Transactions

43.     Hudson Diamond NY was created by the Debtor to acquire real property.  To that end, the law firm of Whitman, Breed, Abbott & Morgan LLC ("Whitman Breed") was engaged by Hodgson Russ to represent Hudson Diamond NY, as well as Greenwich Land LLC, in connection with the Debtor's purchase or contemplated purchase of real estate in Connecticut.[84]

44.     Whitman Breed partner Margaret Conboy has testified, among other things, that as part of her representation of Hudson Diamond NY and Greenwich Land, she referred to the Debtor as her client,[85] received instructions from Max Krasner,[86] and was advised on multiple occasions that the Debtor was making decisions,[87] including as to the acceptance of offers,[88] the selection of furniture,[89] and whether to move forward on any potential property purchase.[90]

45.     The Debtor has used Hudson Diamond NY to fund real estate purchases under the name of his shell company, Greenwich Land, purportedly held in the name of the Debtor's wife,

---

[78]   Ex. 28, Limited Liability Company Agreement of HK International Funds Investments (USA) Limited, LLC, dated April 1, 2019.

[79]   Ex. 29, OpenGovNY New York State corporate registry search results registration search results for GTV Media Group Inc.

[80]   Ex. 30, Saraca Media Group Inc. OpenGovNY New York State corporate registry search results.

[81]   Ex. 42, █████████

[82]   *See e.g.*, Ex. 69, Lamp Capital's Certificate of Beneficial Owner(s) at Dime Bank (identifying the physical business address of Lamp Capital to be at 162 E 64th Street, New York).

[83]   Ex. 32, CHAR 500 Form of Rule of Law Society IV, Inc.

[84]   Ex. 43, █████████

[85]   Ex. 45, Margaret Conboy Sept. 12, 2023 Depo. Tr. at 33:12-23, 33:25-34:4, and 37:13-38:1.  *See also* Ex. 46, and Ex. 77, email between Margaret Conboy and Kevin Walsh on Oct. 3, 2019.

[86]   *Id.* at 51:16-25, 66:22-25.

[87]   *Id.*, at 51:16-25, 52:19-53:22.

[88]   *See e.g.*, Ex. 46, Email between Margaret Conboy and Robert Mowbray on January 22, 2019.

[89]   *See e.g.,* Ex. 47, Email between Louise Camuto and Yvette Wang, copying Max Krasner, Karin Maistrello, on July 12, 2019.

[90]   *See, e.g.*, Ex. 45, Margaret Conboy Sept. 12, 2023 Depo. Tr. at 52:2-10 ("Q. What he's saying specifically to you is: I just spoke with Miles, and he advised the team he will not move forward on this property. Do you see that? A. Yes. Q. And you understood that Miles is reference to Miles Kwok? A. Yes.").

Hing Chi Ngok.



c.

46.     During her deposition, Mei Guo, purported sole member of Hudson Diamond

Holding, the purported sole member of Hudson Diamond NY, asserted her rights under the Fifth

Amendment when asked whether her father, the Debtor,



.[96]

---

[91]  This payment was made using the proceeds of a purported $1 million loan from Lamp Capital to the Debtor that were remitted directly from Lamp Capital to Brown Rudnick. *See* Application of the Debtor for Entry of an Order Authorizing the Employment and Retention of Brown Rudnick LLP as Counsel for the Debtor, Docket No. 86, at ¶ 17;  Ex. 48, Tr. of Telephonic 341 Meeting of Creditors, dated April 6, 2022 at 49: 22-24.  At his April 6, 2022 Section 341 meeting, the Debtor testified that this loan was not in writing and that he did not know the terms of the loan, why the money had been lent, or what the source of the money was. *Id.* at 49-51.

[92]  Ex. 49.

[93]  *See* Ex. 50, at GREE000195.

[94]  Ex. 49.

[95]  *See* Ex. 50.

[96]  Ex. 36, Mei Guo Depo. Tr. at 65:12-21, 67:6-25, and 69:24-70:5.



48.     During her deposition, Mei Guo, purported sole member of Hudson Diamond

Holding, the purported sole member of Hudson Diamond NY, asserted her rights under the Fifth

Amendment when asked whether her father, the Debtor, ████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████ [102]

49.     The Debtor has used the Taconic Property as his residence,[103] ██████████

████████████████████████████████████████████████████████. [104]

---

[97]  Ex. 51 ██████████████████████████████████████████; Ex. 85, ████████████████████
       ████████████████████████████████████████

[98]  Ex. 51.
[99]  *See* Ex. 52, at GREE000330.
[100] Ex. 51.
[101] Ex. 51.
[102] Ex. 36, Mei Guo Depo. Tr. at 65:12-21, 67:6-25, and 69:24-70:5.
[103] Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions ¶ 6 [Docket No. 107].
[104] Ex. 53, at 80:23-81:13; *see also Id.*, at 75:21-24, 76:5-15.

### E.  Debtor Used Hudson Diamond NY to Transfer Money to Other Debtor-Controlled Shell Companies and Family Members

50.  Bank records show that, apart from funding real estate transactions, the Debtor also used Hudson Diamond NY to transfer millions of dollars to other shell companies, including, for example, ███████████,[105] ███████████,[106] and ███████████,[107] as well as to transfer funds to his daughter, Mei Guo, and his wife, Hing Chi Ngok.

51.  In addition, upon information and belief, Hudson Diamond NY owned one of the Debtor's Rolls Royce luxury automobiles.[108]

### I.  Hudson Diamond NY Had No Business Other Than to Hold Debtor's Property and/or Pay His Expenses

52.  As discussed further herein, Hudson Diamond NY's only documented activities consisted of holding the Debtor's assets and paying his expenses.  Hudson Diamond NY did nothing other than receive funding from other Debtor-controlled companies, hold cash in bank accounts (in addition to holding the Debtor's Rolls Royce and potentially other assets), and pay for the Debtor's expenses.[109]

### F.  Debtor and Mei Guo Asserted Fifth Amendment Regarding Control Over Hudson Diamond NY and Its Sole Member Hudson Diamond Holding

53.  The Debtor has asserted the Fifth Amendment when questioned regarding his control over Hudson Diamond NY and its sole member Hudson Diamond Holding.  At his

---



[105]  Ex. 59 ███████████

[106]  Ex. 78. ███████████ Ex. 79, ███████████

[107]  Ex. 79 ███████████

[108]  Ex. 54, AIG Automobile Declarations Page for Hudson Diamond NY.

[109]  Hudson Diamond NY was found to be in civil contempt of Court for failing to comply with or respond to the Trustee's Rule 2004 discovery subpoenas [Main Case Docket No. 2009]. Given Hudson Diamond NY's non-compliance with its discovery obligations, the Trustee is unable at this time to determine with precision the value of Hudson Diamond's assets, and the Trustee's investigation remains ongoing.

March 2, 2023 deposition, the Debtor invoked the Fifth Amendment right when asked whether

he owns and controls all assets of Hudson Diamond Holding and Hudson Diamond NY.[110]

54.    Similarly, during her deposition, Mei Guo, purported sole member of Hudson

Diamond Holding, the purported sole member of Hudson Diamond NY, asserted her rights under

the Fifth Amendment with respect to whether the Debtor owned and controlled Hudson Diamond

NY and directed transfers of its money.[111]

55.    In addition, Mei Guo invoked the Fifth Amendment in testimony before this

Court when asked, among other things, whether Hudson Diamond NY was created at the

Debtor's direction to acquire real property[112] and whether the Debtor at all times has controlled

Hudson Diamond NY and its assets.[113]

## IV.    **Leading Shine NY Is Alter Ego of and Equitably Owned by Debtor**

### A. **Leading Shine NY Managed by Debtor Through Debtor's Agents**

56.    Leading Shine NY was formed in Delaware on January 3, 2019,[114] and registered

to do business in New York in January 2019.[115]



---

110    *See* Ex. 13, Kwok Dep. Tr., at 49:15-50:22.
111    Ex. 36, Mei Guo Depo. Tr. at 40:17-44:17, 68:13-21, 74:15-75:20.
112    Ex. 55, August 22, 2023 Hearing Tr. in *In re Ho Wan Kwok* at 65:18-23.
113    *Id.* at 25:10-24.
114    Ex. 80, Certificate of Incorporation of Leading Shine NY.
115    Ex. 81, Application for Authority of Leading Shine NY.
116    Ex. 56 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
117    *Compare* Ex. 56, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *with* Ex. 82, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

58.    

██ Mr. Han has served as, among other things, the purported equity holder of Debtor shell companies Eastern Profit Corporation Limited and Anton Development Limited.[119]

### B. Leading Shine NY Funded by Debtor

59.    At all relevant times, Leading Shine NY has been funded entirely by the Debtor through entities he controls, and would have had no capitalization absent such funding.

60.    Leading Shine NY has received funding from numerous other Debtor-controlled entities, including, among others, ███████,[120] ████████████,[121] ████████,[122] and ██████.[123] Upon information and belief, Leading Shine NY receives no funding other than from other Kwok-controlled entities.

### C. Leading Shine NY Used Same Address as Other Debtor Shell Companies

61.    Leading Shine NY used 162 East 64th Street, New York, New York, as its address.[124] 162 East 64th Street has been used as an address by the Debtor himself,[125] his counsel



---

[118] *See* Ex. 56, ████████████████████████

[119] *See Complaint of Chapter 11 Trustee for Estate of Ho Wan Kwok for (I) Declaratory Judgment, Pursuant to Sections 541, 542, and 544 of the Bankruptcy Code and Bankruptcy Rule 7001, That Property Held by Mei Guo is Property of Estate and (II) Related Relief*, ¶¶ 21-25 [Adv. Proc. No. 23-05008, Doc No. 1].

[120] Ex. 89. ██████████████

[121] *See e.g.,* Ex. 79, ██████████

[122] Ex. 86. ████████████

[123] Ex. 83. ██████████

[124] *See e.g.,* Ex. 69, Lamp Capital's Certificate of Beneficial Owner(s) at Dime Bank (identifying the physical business address of Lamp Capital to be at 162 E 64th Street, New York).

[125] Debtor's Bankruptcy Petition [Docket No. 1].

Aaron Mitchell,[126] and a number of the Debtor's shell companies, including: Lamp Capital,[127]

Golden Spring,[128] HK USA,[129] GTV Media Group, Inc.,[130] Saraca,[131] Hudson Diamond

Holding,[132] Hudson Diamond NY,[133] and Rule of Law Foundation.[134]

### D. Debtor Used Leading Shine NY to Transfer Money to Other Debtor-Controlled Shell Companies

62.    Leading Shine NY was actively involved in the movement of money to other shell

companies controlled by the Debtor.  For example, Leading Shine NY has transferred funds to

Golden Spring,[135] ▮▮▮▮▮▮▮▮[136] and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮[137] an

entity purportedly owned by Mei Guo that received $875,000 from the postpetition sale of the

Ferncliff Property.[138]

### E. Debtor Used Leading Shine NY to Pay His Expenses

63.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[126]  Ex. 27, Consent to Change Attorney, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 338.

[127]  *See e.g.*, Ex. 69, Lamp Capital's Certificate of Beneficial Owner(s) at Dime Bank (identifying the physical business address of Lamp Capital to be at 162 E 64th Street, New York).

[128]  Debtor's Bankruptcy Petition [Docket No. 1].

[129]  Ex. 28, Limited Liability Company Agreement of HK International Funds Investments (USA) Limited, LLC, dated April 1, 2019.

[130]  Ex. 29, OpenGovNY New York State corporate registry search results registration search results for GTV Media Group Inc.

[131]  Ex. 30, Saraca Media Group Inc. OpenGovNY New York State corporate registry search results.

[132]  Ex. 31, Hudson Diamond NY LLC fact sheet from Hodgson Russ (showing 162 E 64th St. as LLC address).

[133]  *Id.* (showing 162 E 64th St. as Hudson Diamond Holding address).

[134]  Ex. 32, CHAR 500 Form of Rule of Law Society IV, Inc.

[135]  Ex. 105, Golden Spring's account statement at Santander for July – September 2020 (showing over $2 million in transfers from Leading Shine).

[136]  Ex. 85, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮ Ex. 44, ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[137]  *See, e.g.* Ex. 87, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[138]  *See Local Rule 56(a)1 Statement of Undisputed Material Facts in Support of Trustee's Motion for Summary Judgment* ¶ 18 [Adv. Proc. 23-05005, Doc No. 79].



64.

As the Court will recall, a Berkeley Rowe attorney even attempted to provide testimony in support of HK USA at the March 15, 2023 hearing in the adversary proceeding with respect to HK USA, which request the Court denied.[141]  Berkeley Rowe also appears to have assisted the Debtor's son, Qiang Guo, in connection with the submission of his proof of claim in the Genever Holdings LLC chapter 11 case, given that Qiang Guo used Berkeley Rowe as his personal address on his proof of claim form.[142]

65.

---

[139]   *See e.g.*, Ex. 57

[140]   *Id.* (transfer of $39,527.55).

[141]   *See Order Granting in Part and Denying in Part Motion for Leave to Supplement HK International Funds Investments (USA) Limited, and Mei Guo's Witness and Exhibit List* (Adv. Proc. 22-05003) [Docket No. 136].

[142]   *See* Proof of Claim 3-1, *In re Genever Holdings LLC*, Case No. 22-50592.

[143]   *See* Ex. 87,

[144]   *See* Ex. 88, *Motion for Relief from Order Denying Pre-Trial Releases*, at 20, *United States v. Kwok*, No. 23-6421 (2d Cir. May 5, 2023) [Docket No. 6.1].

### J. Leading Shine NY Had No Business Other Than to Hold Debtor's Property and/or Pay His Expenses

66.     As discussed further herein, Leading Shine NY's only documented activities consisted of holding the Debtor's assets and paying his expenses.  Leading Shine NY did nothing other than receive funding from other Debtor-controlled companies, hold cash in bank accounts, and pay for the Debtor's expenses.[145]

### F. Debtor Asserted Fifth Amendment Regarding Control Over Leading Shine NY.

67.     The Debtor has asserted the Fifth Amendment on multiple occasions when questioned regarding his control over Leading Shine NY.  During his March 2, 2023 deposition, when asked whether he controlled and owned Leading Shine NY, the Debtor invoked the Fifth Amendment.[146]

68.     In the Debtor's sworn declaration dated May 11, 2023, the Debtor again invoked the Fifth Amendment when asked whether he controlled Leading Shine NY.[147]

### FIRST CLAIM

### (Declaratory Judgment that Lamp Capital is the Debtor's Alter Ego and Ordering Turnover of Lamp Capital's Assets to Trustee)[148]

69.     The Trustee repeats and realleges the allegations contained in paragraphs 1-68.

---

[145]   Leading Shine NY failed to respond to or produce any documents in connection with Trustee's Rule 2004 discovery subpoenas.  Given Leading Shine NY's non-compliance with its discovery obligations, the Trustee is unable at this time to determine with precision the value of Leading Shine NY's assets and the Trustee's investigation remains ongoing.

[146]   *See* Ex. 13, Kwok Dep. Tr., at 49:15-50:22.

[147]   Ex. 33, Debtor's Sworn Declaration Regarding Responses to Particular Questions, ¶ 158.

[148]   This claim seeks relief only with respect to defendants Lamp Capital and/or its purported sole member, Infinity Treasury Management, as applicable.

25

70.    Delaware law applies to this alter ego claim because Lamp Capital is a Delaware entity.[149]

71.    Under Delaware's two-pronged test for piercing the corporate veil, a court applying Delaware's alter ego analysis to the Debtor's relationship with Lamp Capital will focus on (1) whether the Debtor and Lamp Capital operated as a single economic unit and (2) whether there was an overall element of injustice or unfairness.  In determining whether the Debtor and Lamp Capital operated as a single economic unit, a court applying Delaware law would consider a number of factors, including, among others, whether Lamp Capital was adequately capitalized, observed corporate formalities, and was a facade for the Debtor.[150]  This "list of factors is not exhaustive and no single factor is dispositive."[151]

72.    The Debtor exercised control and dominion over Lamp Capital such that Lamp Capital had no independent existence from the Debtor and the Debtor used the corporate form to perpetrate a fraud and injustice.  Lamp Capital is an alter ego of the Debtor, because, among other reasons:

  a.    Lamp Capital was formed by the Debtor through his counsel.

  b.    Lamp Capital was managed by the Debtor through his agents.

  c.    Lamp Capital was funded by the Debtor.

  d.    Lamp Capital used same address as other Debtor shell companies.

  e.    The Debtor used Lamp Capital to pay his expenses.

---

[149]    *See, e.g.*, *Universitas Education, LLC v. Benistar*, No. 3:20-cv-00738 (JAM), 2021 WL 965794, at *7 (D. Conn. Mar. 15, 2021) ("[B]ecause [defendant] is incorporated in Delaware, I must apply Delaware law to decide if it may be subject to an alter ego claim for reverse veil piercing liability.").

[150]    *Blair v. Infineon Tech., AG*, 720 F. Supp.2d 462, 470-71 (D. Del. 2010) (Noting the factors that the Third Circuit considers in determining whether a corporation operated as a single economic entity, which notably would not include whether the relevant individual is a shareholder of the entity, but would include "gross undercapitalization; failure to observe corporate formalities . . . [and] whether the corporation is merely a facade.").

[151]    *Id.* at 471.

    f.   Lamp Capital had no business other than to hold the Debtor's property and/or pay his expenses.

    g.   The Debtor asserted the Fifth Amendment regarding his control over Lamp Capital.

73.    At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

74.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Lamp Capital was an alter ego of the Debtor; (b) any and all of the assets held by Lamp Capital at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Lamp Capital at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Lamp Capital to the Trustee.

## SECOND CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of Lamp Capital and/or Its Assets and Ordering Turnover of Ownership of Lamp Capital and/or Its Assets to Trustee)**[152]

75.    The Trustee repeats and realleges the allegations contained in paragraphs 1-68.

76.    The same facts, discussed above, establishing that Lamp Capital is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of Lamp Capital and/or its assets.[153]

---

[152]  This claim seeks relief only with respect to defendants Lamp Capital and/or its purported sole member, Infinity Treasury Management, as applicable.

[153]  *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1051 (2d Cir. 1997) (defendant that "exercised considerable authority over [the corporation] . . . to the point of completely disregarding the corporate form and ***acting as though [its] assets were his alone to manage.***") (emphasis added).

77.     At all relevant times, the Debtor was indebted to one or more creditors.  Such

creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors'

rights.

78.     Because Lamp Capital was equitably owned by the Debtor, the ownership and

corporate control rights over Lamp Capital, and/or the assets of Lamp Capital, were, following

the Petition Date, property of the Estate.

79.     Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and 544 of

the Bankruptcy Code, (1) declaring that the ownership interests in Lamp Capital purportedly held

by Infinity Treasury Management, and/or the assets of Lamp Capital, are property of the

Debtor's chapter 11 estate; and (2) ordering the surrender of ownership interests and related

rights of corporate control in Lamp Capital, and/or the assets of Lamp Capital, to the Trustee.

## **THIRD CLAIM**

**(Declaratory Judgment that Hudson Diamond NY is the Debtor's Alter Ego and Ordering
Turnover of Hudson Diamond NY's Assets to Trustee)**[154]

80.     The Trustee repeats and realleges the allegations contained in paragraphs 1-68.

81.     New York law applies to this alter ego claim because Hudson Diamond NY is a

New York entity.[155]

82.     Under New York law, a party seeking an alter ego ruling must show "(1) the

alleged alter ego 'exercised complete domination over the corporation with respect to the

transaction at issue; and (2) such domination was used to commit a fraud or wrong that injured

the party seeking to pierce the corporate veil.'" *Sentry Ins. v. Brand Mgmt. Inc.,* 120 F. Supp. 3d

---

[154]   This claim seeks relief only with respect to defendants Hudson Diamond NY and/or its purported sole member, Hudson Diamond Holding, as applicable.

[155]   *See, e.g.*, *Universitas Education, LLC v. Benistar*, No. 3:20-cv-00738 (JAM), 2021 WL 965794, at *7 (D. Conn. Mar. 15, 2021) ("[B]ecause [defendant] is incorporated in Delaware, I must apply Delaware law to decide if it may be subject to an alter ego claim for reverse veil piercing liability.").

277, 286 (E.D.N.Y. 2015), *aff'd sub nom. Sentry Ins. a Mut. Co. v. Weber,* 720 F. App'x 639 (2d

Cir. 2017) (quoting *Liberty Synergistics, Inc. v. Microflo Ltd.,* 50 F.Supp.3d 267, 296

(E.D.N.Y.2014)). The domination referenced in the first prong is determined based on

considering ten equitable factors.

> (1) the absence of formalities and paraphernalia that are part and parcel of the
> corporate existence, i.e., issuance of stock, election of directors, keeping of
> corporate records and the like, (2) inadequate capitalization, (3) whether funds are
> put in and taken out of the corporation for personal rather than corporate
> purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common
> office space, address and telephone numbers of corporate entities, (6) the amount
> of business discretion displayed by the allegedly dominated corporation, (7)
> whether the related corporations deal with the dominated corporation at arm['s]
> length, (8) whether the corporations are treated as independent profit centers, (9)
> the payment or guarantee of debts of the dominated corporation by other
> corporations in the group, and (10) whether the corporation in question had
> property that was used by other of the corporations as if it were its own.

83.    *Id.* (quoting *Liberty Synergistics, Inc. v. Microflo Ltd.,* 50 F.Supp.3d 267, 296

(E.D.N.Y.2014)). Assuming domination can be established, to recover, a plaintiff must then

show "(1) 'the existence of a wrongful or unjust act toward that party,' and (2) that 'the act

caused the party's harm.'" *Id.* (quoting *Liberty Synergistics, Inc. v. Microflo Ltd.,* 50 F.Supp.3d

267, 297 (E.D.N.Y.2014)).

84.    Here, the facts demonstrate that Hudson Diamond NY was the Debtor's alter ego

under New York law, among other things:

> a.   Hudson Diamond NY was formed by the Debtor through his counsel.
>
> b.   Hudson Diamond NY was managed by the Debtor through his agents.
>
> c.   Hudson Diamond NY was funded by the Debtor.
>
> d.   Hudson Diamond NY used same address as other Debtor shell companies.
>
> e.   The Debtor used Hudson Diamond NY to transfer money to other Debtor
>      shell companies and family members.

f.  Hudson Diamond NY had no business other than to hold the Debtor's property and/or pay his expenses.

g.  The Debtor and Mei Guo asserted the Fifth Amendment regarding control over Hudson Diamond NY.

85.    At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

86.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Hudson Diamond NY was an alter ego of the Debtor; (b) any and all of the assets held by Hudson Diamond NY at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Hudson Diamond NY at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Hudson Diamond NY to the Trustee.

## **FOURTH CLAIM**

**(Declaratory Judgment that Debtor Is Equitable Owner of Hudson Diamond NY and/or Its Assets and Ordering Turnover of Ownership of Hudson Diamond NY and/or Its Assets to Trustee)**[156]

87.    The Trustee repeats and realleges the allegations contained in paragraphs 1-68.

---

[156]  This claim seeks relief only with respect to defendants Hudson Diamond NY and/or its purported sole member, Hudson Diamond Holding, as applicable.

88.     The same facts, discussed above, establishing that Hudson Diamond NY is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of Hudson Diamond NY and/or its assets.[157]

89.     At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

90.     Because Hudson Diamond NY was equitably owned by the Debtor, the ownership and corporate control rights over Hudson Diamond NY, and/or the assets of Hudson Diamond NY, were, following the Petition Date, property of the Estate.

91.     Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Hudson Diamond NY purportedly held by Hudson Diamond Holding, and/or the assets of Hudson Diamond NY, are property of the Debtor's chapter 11 estate; and (2) ordering the surrender of ownership interests and related rights of corporate control in Hudson Diamond NY, and/or the assets of Hudson Diamond NY, to the Trustee.

## **FIFTH CLAIM**

### **(Declaratory Judgment that Leading Shine NY is the Debtor's Alter Ego and Ordering Turnover of Leading Shine NY's Assets to Trustee)[158]**

92.     The Trustee repeats and realleges the allegations contained in paragraphs 1-68.

---

[157] *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1051 (2d Cir. 1997) (defendant that "exercised considerable authority over [the corporation] . . . to the point of completely disregarding the corporate form and ***acting as though [its] assets were his alone to manage.***") (emphasis added).

[158] This claim seeks relief only with respect to defendants Leading Shine NY and/or its purported sole member, Mei Guo or Yvette Wang, as applicable.

93.    Delaware law applies to this alter ego claim because Leading Shine NY is a Delaware entity.[159]

94.    Under Delaware's two-pronged test for piercing the corporate veil, a court applying Delaware's alter ego analysis to the Debtor's relationship with Leading Shine NY will focus on (1) whether the Debtor and Leading Shine NY operated as a single economic unit and (2) whether there was an overall element of injustice or unfairness.  In determining whether the Debtor and Leading Shine NY operated as a single economic unit, a court applying Delaware law would consider a number of factors, including, among others, whether Leading Shine NY was adequately capitalized, observed corporate formalities, and was a facade for the Debtor.[160] This "list of factors is not exhaustive and no single factor is dispositive."[161]

95.    The Debtor exercised control and dominion over Leading Shine NY such that Leading Shine NY had no independent existence from the Debtor and the Debtor used the corporate form to perpetrate a fraud and injustice.  Leading Shine NY is an alter ego of the Debtor, because, among other reasons:

a.    Leading Shine NY was managed by the Debtor through his agents.

b.    Leading Shine NY was funded by the Debtor.

c.    Leading Shine NY used same address as other Debtor shell companies.

d.    Debtor used Leading Shine NY to transfer money to other Debtor shell companies.

e.    The Debtor used Leading Shine NY to pay his expenses.

---

[159]    *See, e.g.*, *Universitas Education, LLC v. Benistar*, No. 3:20-cv-00738 (JAM), 2021 WL 965794, at *7 (D. Conn. Mar. 15, 2021) ("[B]ecause [defendant] is incorporated in Delaware, I must apply Delaware law to decide if it may be subject to an alter ego claim for reverse veil piercing liability.").

[160]    *Blair v. Infineon Tech., AG*, 720 F. Supp.2d 462, 470-71 (D. Del. 2010) (Noting the factors that the Third Circuit considers in determining whether a corporation operated as a single economic entity, which notably would not include whether the relevant individual is a shareholder of the entity, but would include "gross undercapitalization; failure to observe corporate formalities . . . [and] whether the corporation is merely a facade.").

[161]    *Id.* at 471.

     f.   Leading Shine NY had no business other than to hold the Debtor's property and/or pay his expenses.

     g.   The Debtor asserted the Fifth Amendment regarding his control over Leading Shine NY.

96.     At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

97.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Leading Shine NY was an alter ego of the Debtor; (b) any and all of the assets held by Leading Shine NY at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Leading Shine NY at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Leading Shine NY to the Trustee.

## SIXTH CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of Leading Shine NY and/or Its Assets and Ordering Turnover of Ownership of Leading Shine NY and/or Its Assets to Trustee)[162]**

98.     The Trustee repeats and realleges the allegations contained in paragraphs 1-68.

---

[162]   This claim seeks relief only with respect to defendants Leading Shine NY and/or its purported sole member, Mei Guo or Yvette Wang, as applicable.

99.     The same facts, discussed above, establishing that Leading Shine NY is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of Leading Shine NY and/or its assets.[163]

100.     At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

101.     Because Leading Shine NY was equitably owned by the Debtor, the ownership and corporate control rights over Leading Shine NY, and/or the assets of Leading Shine NY, were, following the Petition Date, property of the estate.

102.     Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Leading Shine NY purportedly held by Mei Guo or Yvette Wang, and/or the assets of Leading Shine NY, are property of the Debtor's chapter 11 estate; and (2) ordering the surrender of ownership interests and related rights of corporate control in Leading Shine NY, and/or the assets of Leading Shine NY, to the Trustee.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that judgment be entered as follows:

1.     On the First Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Lamp Capital was an alter ego of the Debtor; (b) any and all of the assets held by Lamp Capital any time prior to the Debtor's

---

[163]     *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1051 (2d Cir. 1997) (defendant that "exercised considerable authority over [the corporation] . . . to the point of completely disregarding the corporate form and ***acting as though [its] assets were his alone to manage.***") (emphasis added).

petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Lamp Capital at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Lamp Capital to the Trustee;

2.      On the Second Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Lamp Capital purportedly held by Infinity Treasury Management and/or the assets of Lamp Capital, are property of the Debtor's chapter 11 estate; and (2) ordering the surrender of ownership interests and related rights of corporate control in Lamp Capital, and/or the assets of Lamp Capital, to the Trustee;

3.      On the Third Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Hudson Diamond NY was an alter ego of the Debtor; (b) any and all of the assets held by Hudson Diamond NY any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Hudson Diamond NY at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Hudson Diamond NY to the Trustee;

4.      On the Fourth Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Hudson Diamond NY purportedly held by Hudson Diamond Holding, and/or the assets of Hudson Diamond NY, are property of the Debtor's chapter 11 estate; and (2) ordering the surrender of

35

ownership interests and related rights of corporate control in Hudson Diamond NY, and/or the assets of Hudson Diamond NY, to the Trustee;

5. On the Fifth Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Leading Shine NY was an alter ego of the Debtor; (b) any and all of the assets held by Leading Shine NY any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Leading Shine NY at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Leading Shine NY to the Trustee;

6. On the Sixth Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Leading Shine NY purportedly held by Mei Guo or Yvette Wang, and/or the assets of Leading Shine NY, are property of the Debtor's chapter 11 estate; and (2) ordering the surrender of ownership interests and related rights of corporate control in Leading Shine NY, and/or the assets of Leading Shine NY, to the Trustee;

7. Reasonable attorneys' fees, costs, and expenses incurred in this action; and

8. Such other and further relief as the Court may deem just, proper, or equitable under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

Dated:    October 26, 2023           LUC A. DESPINS,
            New Haven, Connecticut     CHAPTER 11 TRUSTEE

By: */s/ Douglass Barron*
    Avram E. Luft *(pro hac vice* pending)
    Douglass Barron (*pro hac vice* pending)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    aviluft@paulhastings.com
    douglassbarron@paulhastings.com

       *and*

    Nicholas A. Bassett *(pro hac vice* pending)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

       *and*

    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    plinsey@npmlaw.com

    *Counsel for the Chapter 11 Trustee*