## **Exhibit 45**

```
 1

 2           UNITED STATES BANKRUPTCY COURT

 3                DISTRICT OF CONNECTICUT

 4
     In re:                      )Chapter 11
 5                               )Case No. 22-50073
                                 )(JAM)
 6   HO WAN KWOK, et al.,        )
                                 )
 7           Debtors.            )(Jointly
                                 )Administered)
 8   ----------------------------
     LUC A. DESPINS,             )
 9   CHAPTER 11 TRUSTEE FOR      )Adv. P. No.
                                 )23-05005 (JAM)
10   THE ESTATE OF HO WAN KWOK   )
                                 )
11           Plaintiff,          )Re:
                                 )ECF No. 1
12           vs.                 )
                                 )
13   GREENWICH LAND, LLC and     )
     HING CHI NGOK,              )
14                               )
             Defendants.         )
15   ----------------------------)

16           ***  CONFIDENTIAL  ***
          REMOTE DEPOSITION OF MARGARET CONBOY
17
             Tuesday, September 12, 2023
18

19

20

21   Reported by:
     LISA M. MURACO
22   JOB NO. J10236393

23

24

25
```



1

2                    Tuesday, September 12, 2023

3                    10:00 a.m.

4

5

6          REMOTE Deposition of MARGARET

7    CONBOY, held VIA ZOOM, before LISA M.

8    MURACO, a Notary Public of the State of New

9    York, Florida, and Massachusetts.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1

 2   A P P E A R A N C E S:

 3   (REMOTE)

 4

 5       PAUL HASTINGS

 6       Attorneys for Movant and Cross-Respondent

 7       Mr. Luc A. Despins, Chapter 11 Trustee for

 8       the Estate of Mr. Ho Wan Kwok

 9            200 Park Avenue

10            New York NY 10166

11       BY:   NICHOLAS BASSETT, ESQ.

12            Nicholasbassett@paulhastings.com

13            AVRAM LUFT, ESQ.

14            Aviluft@paulhastings.com

15            EZRA SUTTON, ESQ.

16            Ezrasutton@paulhastings.com

17            DOUGLASS BARRON, ESQ.

18            Douglassbarron@paulhastings.com

19            LUYI SONG, ESQ.

20            Luyisong@paulhastings.com

21

22

23

24

25
```



MARGARET CONBOY  Confidential                    September 12, 2023
KWOK V. GREENWICH LAND ET AL.                                    4

```
 1
 2   A P P E A R A N C E S :
 3   (REMOTE)
 4
 5       MEISTER SEELIG & FEIN
 6       Attorneys for Defendants Greenwich LLC and
 7       Hing Chi Ngok
 8            125 Park Avenue
 9            7th Floor
10            New York, NY 10017
11       BY:   CHRISTOPHER MAJOR, ESQ.
12            Cjm@msf-law.com
13            AUSTIN KIM, ESQ.
14            Adk@msf-law.com
15
16
17       WHITMAN BREED ABBOTT & MORGAN
18       Attorneys for the Witness
19            500 West Putnam Avenue
20            Greenwich CT 06830
21       BY:   MICHAEL THOMASON, ESQ.
22            Mthomason@wbamct.com
23
24
25
```



1

2          IT IS HEREBY STIPULATED AND AGREED

3    by and between the attorneys for the

4    respective parties herein, that filing and

5    sealing be and the same are hereby waived.

6          IT IS FURTHER STIPULATED AND AGREED

7    that all objections, except as to the form

8    of the question, shall be reserved to the

9    time of the trial.

10          IT IS FURTHER STIPULATED AND AGREED

11   that the within deposition may be sworn to

12   and signed before any officer authorized

13   to administer an oath, with the same

14   force and effect as if signed and sworn

15   to before the Court.

16

17

18

19

20                    - oOo -

21

22

23

24

25



                          M. CONBOY

1  M A R G A R E T   C O N B O Y, called as a

2  witness, having been duly sworn by a Notary

3  Public, was examined and testified as follows:

4  EXAMINATION BY

5  MR. BASSETT:

6        Q.    Thank you very much.

7             MR. MAJOR:  Nick, just before we get

8        started, can we agree that we will do the

9        usual stipulations, including that          10:05

10       objections, except as to the form of the

11       question, are reserved.

12            MR. THOMASON:  That's the

13       Connecticut usual stipulations.

14            MR. BASSETT:  I'm not agreeing to      10:05

15       the usual stipulations because I don't know

16       what they are.

17            MR. MAJOR:  Let's just set them up.

18       I think the most important one, just for

19       the administration of the deposition and to  10:05

20       make sure we can get through it, is that

21       objections, except as to the form of the

22       question, are reserved.  So, you know, I'll

23       just object if I have any objections to the

24       form of the question, and leave it at that.  10:06



1                         M. CONBOY

2  M A R G A R E T   C O N B O Y, called as a

3  witness, having been duly sworn by a Notary

4  Public, was examined and testified as follows:

5  EXAMINATION BY

6  MR. BASSETT:

7        Q.    Thank you very much.

8             MR. MAJOR:  Nick, just before we get

9        started, can we agree that we will do the

10       usual stipulations, including that          10:05

11       objections, except as to the form of the

12       question, are reserved.

13            MR. THOMASON:  That's the

14       Connecticut usual stipulations.

15            MR. BASSETT:  I'm not agreeing to      10:05

16       the usual stipulations because I don't know

17       what they are.

18            MR. MAJOR:  Let's just set them up.

19       I think the most important one, just for

20       the administration of the deposition and to  10:05

21       make sure we can get through it, is that

22       objections, except as to the form of the

23       question, are reserved.  So, you know, I'll

24       just object if I have any objections to the

25       form of the question, and leave it at that.  10:06



```
 1                    M. CONBOY
 2   So that we're not dealing with all -- you
 3   know, a whole slew of objections like
 4   hearsay and all of that kind of stuff.
 5   Those can be dealt with later.                    10:06
 6        MR. BASSETT:  I'm fine with that.  I
 7   think that's what the rule would provide.
 8        MR. MAJOR:  Yup.
 9        MR. BASSETT:  I mean, I don't want
10   to -- I'm not agreeing to quote, unquote,         10:06
11   usual stipulations with which I am not
12   familiar.  But if we're all agreeing that
13   the Federal Rules of Civil Procedure and
14   the Federal Rules of Evidence apply to this
15   case, I have no problem with that.                10:06
16        MR. MAJOR:  The objections are
17   reserved, so we don't have to make them
18   now.
19        MR. BASSETT:  Again, I think --
20   Chris, I think the rules provide for that,        10:06
21   but...
22        MR. MAJOR:  Yeah, and then I just
23   want to make a statement on behalf of our
24   client Greenwich Land that we are the
25   maintaining the attorney-client privilege,       10:07
```



```
 1                    M. CONBOY

 2   and therefore communications that the

 3   witness or her firm had with officers of

 4   Greenwich Land LLC are privileged, as well

 5   as mental impressions and speculation and        10:07

 6   anything based on those communications are

 7   privileged, including, without limitation,

 8   any disclosures that have already been made

 9   to the trustee, either in a 2004 exam or in

10   separate communications.  Those were not         10:07

11   authorized disclosures of attorney-client

12   privileged communications, and therefore we

13   are asking the witness and her counsel that

14   she not testify to any communications she

15   had with Greenwich Land LLC officers or any      10:07

16   mental impressions or speculation the

17   witness may have derived or come to as a

18   result of communications with officers of

19   Greenwich Land LLC.

20        MR. BASSETT:  Well, Chris you've            10:08

21   seen the 2004 deposition transcript in this

22   case, correct?

23        MR. MAJOR:  When you say "in this

24   case," I don't know if you are -- assume

25   you are referring to Ms. Conboy's                10:08
```



1              M. CONBOY

2    deposition transcript?

3         MR. BASSETT:  Yes.

4         MR. MAJOR:  Yes, it's an exhibit to

5    the complaint.                                    10:08

6         MR. BASSETT:  Right.  And if what

7    you are saying is that now for the first

8    time you are going to raise privilege over,

9    for example, all the questions that we

10   asked Ms. Conboy about documents involving   10:08

11   her communications with Max Krasner and the

12   like, and we are not going to be able to

13   ask about those, then we have a serious

14   problem, and you should have told us about

15   that before the deposition today.              10:08

16        MR. MAJOR:  Well, we weren't invited

17   to the 2004 exam.  This is our first

18   appearance with this witness.  And we are

19   asserting the attorney-client privilege to

20   the extent she's going to testify about        10:09

21   communications she had with officers.  And

22   I don't know --

23        (Multiple speakers.)

24        MR. BASSETT:  Well -- Chris, you

25   have -- suffice it to say you have long ago    10:09



1                    M. CONBOY

2    waived any argument that information

3    contained in our complaint and attached in

4    the deposition transcript filed publicly is

5    privileged information.  If you felt that          10:09

6    way, you should have said something months

7    ago.  So I'm not going to -- I'm not even

8    going to entertain that argument.  But why

9    don't we -- why don't we start and we will

10   see where we go.  If we get to a point            10:09

11   where you're not letting me conduct this

12   deposition in the way I need to conduct it,

13   we're going to have a take a break and

14   we're going to have figure this out.

15       MR. MAJOR:  Okay.  It's not an               10:09

16   argument for you to entertain.  It's

17   Greenwich Land owns the privilege.

18       MR. BASSETT:  And you've waived it,

19   Chris.

20       MR. MAJOR:  No.  No.  We have not            10:10

21   participated in that.

22       MR. BASSETT:  All right.  Let's

23   just -- all right, let's -- let's just go

24   and see how it goes.

25       MR. MAJOR:  And I don't know what            10:10



```
 1                    M. CONBOY

 2        you or other representatives of the trustee

 3        said to Whitman Breed to induce those

 4        communications, but, you know, the

 5        privilege is owned by Greenwich Land LLC.        10:10

 6        It's not the trustee's call.  And it's not

 7        something for you to entertain.

 8             MR. BASSETT:  All right.  Well, I'm

 9        not agreeing with any of that, but, like I

10        said, let's continue.                           10:10

11   BY MR. BASSETT:

12        Q.    All right.  Ms. Conboy, sorry for

13   that detour.

14        A.    No.

15        Q.    You and I have not had the pleasure      10:10

16   of meeting before but, again, I'm Nick Bassett

17   with Paul Hastings.  We are counsel to the

18   Chapter 11 trustee in Ho Wan Kwok's bankruptcy

19   case.

20        A.    Nice to meet you.                         10:11

21        Q.    Ms. Conboy, I note, A, you're a

22   lawyer; and B, you've been deposed before, so I

23   won't -- I won't bother going over kind of the

24   rules of the road here.

25             The one thing I'll mention at the          10:11
```



MARGARET CONBOY  Confidential                                    September 12, 2023
KWOK V. GREENWICH LAND ET AL.                                                12

```
 1                         M. CONBOY
 2    outset is that I know you do have other
 3    obligations this afternoon.  We committed to
 4    get you out of here, I think, in no more than
 5    four hours, and I'm confident we will be able    10:11
 6    to do that, and to help be as expeditious as
 7    possible, I do not plan to take a lunch break,
 8    but, obviously, if you need a break, if you
 9    want a lunch break, if you want -- you know,
10    break at any time, feel free to let me know.     10:11
11    And as long as you answer any pending question,
12    I'll be happy to accommodate.
13              Is that okay?
14        A.    That's fine.  Thank you.
15        Q.    All right.  You are welcome.           10:11
16              Ms. Conboy, where are you located at
17    the moment?  Is that your law office in the
18    Connecticut?
19        A.    Yes, Greenwich, Connecticut.
20        Q.    And that's your counsel, a colleague   10:11
21    of yours at the firm who's with you,
22    Mr. Thomason?
23        A.    Yes.
24        Q.    Okay.
25              Ms. Conboy, without revealing the      10:11
```



1                       M. CONBOY

2    substance of any communications with your

3    counsel, can you just describe for me what you

4    did to prepare for today's deposition?

5         A.    I just reviewed the -- my prior          10:12

6    transcript and that affidavit, and that was it.

7         Q.    When you say "that affidavit" what

8    are you referring to?

9         A.    The affidavit that was -- the

10   affidavit that was drafted, I think, by your       10:12

11   office or Chris Major's office.

12        Q.    Did you review any other documents?

13        A.    No.

14        Q.    Okay.

15              And where do you currently reside?      10:12

16   Ms. Conboy, are you a resident of Connecticut?

17        A.    In Greenwich, yes.

18        Q.    And you are employed at Whitman

19   Breed Abbott & Morgan LLC, that's the full

20   name?                                              10:12

21        A.    Yes.

22        Q.    What is your title?

23        A.    I'm a real estate attorney.  I'm a

24   partner --

25        Q.    Okay.                                    10:12



```
 1                      M. CONBOY

 2       A.    -- at the firm.

 3       Q.    And you said you practice real

 4  estate law.

 5             Is that a accurate description?          10:13

 6       A.    Yes.

 7       Q.    How long have you been practicing

 8  real estate law?

 9       A.    About 30 years.

10       Q.    How long at Whitman Breed?              10:13

11       A.    30 years.

12       Q.    Congratulations.

13       A.    Thanks.

14       Q.    And how long as a partner there?

15       A.    I don't know, 15, 20 years,            10:13

16  somewhere around there.

17       Q.    Okay.

18             So you already mentioned it, but you

19  recall being deposed previously by my colleague

20  Mr. Luft in February of this year, right?          10:13

21       A.    Yes.

22       Q.    So I'm going to have my colleague

23  introduce that deposition transcript as an

24  exhibit.

25             MR. BASSETT:  I think that's our        10:13
```



```
 1                          M. CONBOY

 2          Tab 1, Ezra.

 3                  MR. SUTTON:  I just shared it in the

 4          chat.  I'll share my screen shortly.

 5                  MR. BASSETT:  I would like the court      10:14

 6          reporter to please mark this as Conboy

 7          Exhibit 1.

 8                  (Conboy Exhibit 1, Conboy Deposition

 9          Transcript from February 21, 2023, marked

10          for identification.)                             10:14

11   BY MR. BASSETT:

12          Q.    Ms. Conboy, I see this on my screen.

13   I trust you can see it on yours as well?

14          A.    Yes.

15          Q.    And then we also put it in the chat,       10:14

16   which will allow you to download the document

17   yourself so that you can feel free to navigate

18   to any page of it that you would like.

19          A.    Okay.

20          Q.    Once you're comfortable, my question       10:14

21   is just whether you can confirm that this is,

22   in fact, as far as you can tell, a copy of the

23   transcript of your February deposition in this

24   matter?

25          A.    It looks like a copy, yup, yes.            10:14
```



```
 1                      M. CONBOY

 2       Q.    Okay.

 3             I just wanted to mark that.  We'll

 4  come back to it later.

 5             Ms. Conboy, are you familiar,          10:14

 6  generally, with Ho Wan Kwok, an individual by

 7  that name?

 8       A.    Not -- no.

 9             MR. MAJOR:  Objection to form.

10  BY MR. BASSETT:                                   10:15

11       Q.    You've heard of an individual named

12  Ho Wan Kwok, correct?

13       A.    Yes.

14       Q.    And what names?  Do you know him by

15  any other names, based on your past             10:15

16  professional experience?

17       A.    I've never met him and I've never

18  talked to him.  So the only name I heard was

19  Miles Kwok.

20       Q.    Okay.                                 10:15

21             And you understand that Miles Kwok

22  is the same person as Ho Wan Kwok, who is a

23  debtor in this case?

24       A.    I have no personal knowledge of

25  that, but...                                     10:15
```



1                         M. CONBOY

2        Q.    Okay.

3              But you don't have any reason to

4    believe that the Miles Kwok you know from your

5    professional experience is not the same Miles          10:15

6    Kwok that is the debtor in this case?

7              MR. MAJOR:   Objection to form.

8    BY MR. BASSETT:

9        Q.    You can answer the question.

10       A.    Can you say that again?  I didn't --          10:15

11       Q.    Do you have any reason to believe

12   that the Miles Kwok who you know from your

13   professional experience is not the same

14   personal as Ho Wan Kwok who is the debtor in

15   this Chapter 11 case?                                   10:16

16       A.    No.

17             MR. MAJOR:   Objection.  Form.

18       A.    No, I don't.

19       Q.    Okay.

20             So if I refer to -- I'll try to use           10:16

21   Mr. Kwok today to refer to Miles Kwok.

22             Is that okay with you?

23       A.    Yup, yes.

24       Q.    Okay.

25             MR. MAJOR:   I would like the first           10:16



```
 1                    M. CONBOY

 2        exhibit to be marked highly confidential.

 3        Contrary to counsel's statement it was not

 4        publicly filed.  It was filed under seal,

 5        and we maintain that it contains              10:16

 6        disclosures of privileged information.  I

 7        would like it marked highly confidential.

 8             MR. BASSETT:  Okay.  I thought it

 9        was publicly available, but I will have to

10        confirm.  If you are telling me it wasn't,    10:16

11        then I'll check that.

12   BY MR. BASSETT:

13        Q.   Ms. Conboy, are you familiar with an

14   entity called Greenwich Land LLC?

15        A.   Yes.                                      10:17

16        Q.   Is this entity -- was this entity a

17   client of Whitman Breed's?

18        A.   Yes.

19        Q.   Were you involved in that

20   representation?                                     10:17

21        A.   Yes.

22        Q.   What was your role?

23        A.   I was the real estate attorney for

24   that LLC.

25        Q.   Okay.                                     10:17
```



1          M. CONBOY

2          All right.





19      Q.    And did you also represent an entity

20  called Hudson Diamond New York LLC?  When I say

21  you, I mean your law firm.

22      A.    Yes.

23            MR. MAJOR:  Objection to form.

24  BY MR. BASSETT:

25      Q.    I would like my colleague to put



```
 1                    M. CONBOY
 2    Tab 2 on the screen, please.
 3              (Conboy Exhibit 2, ███████████
      █████████████████████████   marked for
 5         identification.)
 6              MR. BASSETT:  And I would like the
 7         court reporter to please mark this document
 8         as Exhibit 2, Conboy Exhibit 2.
 9    BY MR. BASSETT:
10         Q.   Ms. Conboy, do you recognize this
11    document?
12         A.   ████████████████████████████
      ██████████████████████████
14         Q.   Okay.
15              ███████████████████████████████
      ███████████████████████████████
      ████████████
18         A.   Yes.
19         Q.   Okay.
20              ███████████████████████████████
      ████████████████████████████
      ███████████████████████████████
      █████████████████████████████
      ████████████████████
25              Do you see that?
```



```
 1                      M. CONBOY
 2        A.    Mh-hm.
 3        Q.    ████████████████████████████

   ████████████████████████████████████████

   ███████████████████████████████████████

   ████████████████████████

 7        A.    Yes.  Yes.
 8        Q.    Okay.
 9              ████████████████████████████

   ████████████████████████████████████████

   ████████████████████████████████████████

   ███████████████████████

13        A.    Yes.
14        Q.    Who was your main point of contact
15   on the client's side for your firm's
16   representation of these entities?
17        A.    It was Max Krasner.
18        Q.    Okay.
19              In the course of this -- of these
20   engagements of these entities, did you ever
21   speak at any time to Mr. Kwok's wife?
22        A.    No.
23        Q.    At the time of your earlier
24   deposition in February in this case, did you
25   know Mr. Kwok's wife's name?
```



```
 1                        M. CONBOY
 2        A.    No.
 3        Q.    Have you ever spoken to Mr. Kwok's
 4   son?
 5        A.    No.
 6        Q.    Have you ever spoken to Mr. Kwok's
 7   daughter?
 8        A.    No.
 9        Q.    Ms. Conboy, did you represent
10   Greenwich Land and Golden Spring in connection
11   with the purchase of residential property
12   located at 33 Ferncliff Road in Connecticut?
13             MR. MAJOR:   Objection.
14        A.    Yes.
15             MR. BASSETT:   I would like my
16        colleague to put Tab 3 to the chat, please.
17             (Conboy Exhibit 3, ████████████
     ████████████████████████████████████████████████
19        WBAM_000035, marked for identification.)
20             MR. BASSETT:   I would like the court
21        reporter to please mark this as Conboy
22        Exhibit 3.
23   BY MR. BASSETT:
24        Q.    Ms. Conboy, do you recognize this
25   document?
```



1                     M. CONBOY

2        A.    Yes, I do.

3        Q.    And I should have done this before.

4   I'll do it now, but just for the record, ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7             And at the bottom right-hand corner,

8   I believe it starts with the Bates Label

9   WBAM_000035.

10            ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13       A.    ▮▮▮▮

14       Q.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20            MR. MAJOR:   Objection to form.

21       A.    ▮▮▮▮

22       Q.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



1                          M. CONBOY

2    ████████████████████████████████████████████

     ████████████████████

4         A.    Yes, I did.

5         Q.    Okay.

6               And do you recall approximately the

7    date of the -- of the initial purchase of the

8    property and then -- well, I'll start with

9    that.

10              Do you recall the date of the

11   initial purchase of the property,

12   approximately?

13        A.    I don't remember.  Maybe 2020,

14   somewhere around there.  I don't remember the

15   dates.

16        Q.    Okay.

17              We can look at documents later.

18              And do you recall, off the top of

19   your head, the approximate date of the sale?

20        A.    Probably 2022.

21        Q.    Okay.

22        A.    But again, I'm not positive.

23        Q.    No problem.  We can look at

24   documents there as well.

25              So other than -- setting the



                        M. CONBOY

1

2    Ferncliff property to one side, which we just

3    established there was a purchase of that

4    property and then a sale of it, did you also

5    represent the same entities that we've been          10:25

6    talking about, Greenwich Land, Golden Spring,

7    and Hudson Diamond, in connection with

8    potential real property purchases that did not

9    close?

10        A.    Yes.                                        10:25

11        Q.    Do you recall which properties there

12   were that you looked at on their behalf?

13        A.    There was --

14             MR. MAJOR:  Objection.  Form.

15        A.    There was a Clapboard Ridge.  There       10:25

16   was one in Stamford, Chateau Ridge I believe in

17   Greenwich.  Those are pretty much about three

18   or four -- maybe four that we did.

19        Q.    Okay.

20             So -- that's fine.  110 Clapboard          10:25

21   Ridge Road, does that sound right as one of the

22   properties?

23        A.    Yes.

24        Q.    And then how about 32 Chateau Ridge

25   Road in Greenwich?                                   10:26



```
1                      M. CONBOY
2        A.    Yes.
3        Q.    On that one, if you could please
4   turn to your deposition transcript which is at
5   Tab 1, and I want to take you to page 35 of
6   that.
7             MR. MAJOR:  I just want to note for
8        the record that, as we've insisted, that
9        the Exhibit 1 be marked highly
10       confidential.  Any portions of the
11       transcript referring to that document
12       should also be marked highly confidential.
13            MR. BASSETT:  Okay.  Well,
14       obviously, that's fine under the protective
15       order, and we will reserve all of the
16       rights that we have under the protective
17       order in that regard, but that's fine.
```





19    Q.    Do you recall 140 Wallacks Drive in

20  Stamford as another property about which there

21  was -- there were discussions of a potential

22  purchase?

23    A.    Yes.

24    Q.    How about 66 Sherwood Road in

25  Greenwich?





```
 1                    M. CONBOY

 2        A.    Yes.
```

```
22        Q.    Thank you.

23              Back to other properties.  Do you

24   recall another property with respect to which

25   you provided advice to the entities we've been
```



```
1                    M. CONBOY
2   discussing as 11 Hurlingham Drive in Greenwich?
3        A.    I don't really remember as much.   I
4   don't remember it.
5        Q.    Okay.
6              I think we might see a document
7   later that references that property.
8              How about 602 Indian Field Road in
9   Greenwich?
10       A.    Yes.
11       Q.    So do you -- we talked about
12  properties with respect to which you provided
13  advice under the engagement that we've been
14  talking about.
15             Do you also recall a transaction
16  involving a property at 373 Taconic Road where
17  you did not represent Greenwich Land, Golden
18  Spring, or Hudson Diamond?
19       A.    Yes.
20       Q.    What was your involvement in that
21  transaction?
22       A.    I was representing the seller.
23       Q.    Okay.
```



ESQUIRE
DEPOSITION SOLUTIONS



██████████████████████

████████

██████████████

████████████████████████

```
 5            MR. BASSETT:  I would like my
 6       colleague to, please, put Tab 4 into the
 7       chat.
 8            (Conboy Exhibit 4, October 3rd,
 9       2019, E-mail Bates labeled WBAM_010076,
10       marked for identification.)
11            MR. BASSETT:  And this document will
12       be marked as -- I would like it to be
13       marked as Conboy Exhibit 4.  And for the
14       record, this is an October 3rd, 2019,
15       e-mail with the Bates label in the bottom
16       right-hand corner WBAM_010076.
17  BY MR. BASSETT:
18       Q.   Ms. Conboy, these documents that
19  we've been seeing that have a Bates label
20  beginning with WBAM in the lower right-hand
21  corner, do you understand that these are
22  documents Whitman Breed produced from its files
23  to the trustee?
24       A.   Yes.
25       Q.   And these documents that were
```



```
 1                    M. CONBOY

 2   produced, are these documents that the firm

 3   kept in its ordinary course of business?

 4        A.    Yes.

 5        Q.    Do you recall -- well, strike that.       10:32

 6              Did you write the e-mail that

 7   appears here in Conboy Exhibit 4?

 8        A.    Yes.

 9        Q.    Who is Kevin Walsh?

10        A.    He's our managing partner.  He's a       10:32

11   partner of mine.

12        Q.    And you say -- in the first sentence

13   of the e-mail -- Kevin, my client, the Chinese

14   billionaire, may purchase 602 Indian Field

15   which is the 11-acre vacant parcel at the end      10:33

16   of Meade's Point.

17              Do you see that?

18        A.    Yes.

19        Q.    Who is the Chinese billionaire to

20   whom you are referring to in this e-mail?          10:33

21              MR. MAJOR:  Objection to form.

22        A.    That was how Miles Kwok was referred

23   to in -- when you do a Google search.

24        Q.    Okay.

25              So when you wrote this e-mail and       10:33
```



```
 1                    M. CONBOY
 2   you used the words "the Chinese billionaire,"
 3   that was a reference to Miles Kwok?
 4       A.    Yes.  Through Google.
 5            MR. THOMASON:  Yes-or-no question.        10:33
 6   BY MR. BASSETT:
 7       Q.    And then you say the -- at the end
 8   of that sentence you say:  The seller accepted
 9   his offer of $35 million.
10            Do you see that?                          10:34
11       A.    Yes.
12       Q.    And the word "his" there again is a
13   reference to the Chinese billionaire, Miles
14   Kwok?
15            MR. MAJOR:  Objection to form.            10:34
16       A.    Yes.
17       Q.    In the next sentence you say -- of
18   this e-mail, you say:  I do not know if this
19   will really go through.  He is meeting with
20   architects, engineers, et cetera.                 10:34
21            I want to focus on the word "he"
22   there.  He is meeting with architects,
23   engineers, et cetera.  The "he," again, is a
24   reference to the Chinese billionaire, Mr. Kwok,
25   right?                                             10:34
```



```
 1                        M. CONBOY

 2              MR. MAJOR:  Objection to form.

 3         A.    Yes.

 4         Q.    And then in the last sentence of

 5    this e-mail it says:  Apparently, the current    10:34

 6    owner has approval to build two house.  I'm not

 7    sure if my client will just build one house or

 8    two.  My client has had me hold off on ordering

 9    searchs until he has an idea of what is

10    involved in building on the parcel.             10:35

11              Again, consistent with the rest of

12    this e-mail, the references to "my client" when

13    you wrote this e-mail were to the Chinese

14    billionaire Miles Kwok, right?

15              MR. MAJOR:  Objection to form.        10:35

16         A.    Yes.

17         Q.    The work that you were performing

18    with respect to this potential property

19    purchase, this is all work under the umbrella

20    of the engagements that we talked about         10:35

21    previously, right, the Greenwich Land, Hudson

22    Diamond, and Golden Spring engagement?

23              MR. MAJOR:  Objection to form.

24         A.    Yes.

25         Q.    Okay.                                10:35
```



```
 1                      M. CONBOY
 2              MR. BASSETT:  Can my colleague,
 3         please, put Tab 5 into the chat.
 4                  (Conboy Exhibit 5, January 22, 2019,
 5         E-mail Bates labeled WBAM_0002663, marked    10:35
 6         for identification.)
 7              MR. BASSETT:  And this one will be
 8         marked as Conboy Exhibit 5; is that
 9         correct?  Thanks.  Sorry.
10  BY MR. BASSETT:                                     10:36
11         Q.   So for the record the document being
12  mark as Conboy Exhibit 5, is a January 22,
13  2019, e-mail with the Bates label at the bottom
14  right-hand corner of the first page
15  WBAM_0002663.                                        10:36
16              Ms. Conboy, if you look at the
17  e-mail nearest the bottom of this page at
18  2:58 p.m., begins:  Hi Kristi.
19              Is that an e-mail that you wrote?
20         A.   Yes.                                     10:37
21         Q.   You say:  Hi Kristi, can you order a
22  full title and municipal search for 140
23  Wallacks Drive, Caritas Island, Stamford?
24              Do you see that?
25         A.   Yes.                                     10:37
```



```
 1                        M. CONBOY
 2              MR. THOMASON:  Can you zoom in just
 3        a little bit.
 4              THE WITNESS:  Yes, it needs to be.
 5              MR. BASSETT:  Sure.                    10:37
 6              MR. THOMASON:  Perfect.
 7    BY MR. BASSETT:
 8        Q.   So you were asking a colleague here
 9    to perform a title and municipal search; is
10    that right, for a potential property to be     10:37
11    acquired?
12        A.   Yes.
13        Q.   If you go up to the top e-mail in
14    the chain, you say:  Hi Bob.
15              Who is Bob?                            10:37
16        A.   Our title searcher.
17        Q.   Okay.
18              You said:  Hi Bob, I would like you
19    to do the searches because this is a high-end
20    property on the water.  The Chinese billionaire 10:37
21    has accepted an offer.  Thanks.
22              Do you see that?
23        A.   Yes.
24        Q.   And to whom is the Chinese
25    billionaire a reference?                        10:38
```



```
 1                    M. CONBOY

 2       A.    Mr. Kwok.

 3             MR. BASSETT:  Can my colleague,

 4       please, put Tab 6 on the screen.

 5             (Conboy Exhibit 6, January 6, 2019,        10:38

 6       E-mail, Bates Stamped WBAM_002803, marked

 7       for identification.)

 8             MR. BASSETT:  For the record, Conboy

 9       Exhibit 6 is an e-mail chain, the top

10       e-mail dated January 6, 2019, Bates stamped    10:38

11       at the bottom right-hand corner of the

12       first page WBAM_002803.

13  BY MR. BASSETT:

14       Q.    If we turn to page Bates labeled

15  2806.                                               10:39

16             What you'll see here is an e-mail

17  from an Emile deNeree to a Barbara Vogt.

18             Do you know who those individuals

19  are?

20       A.    I have -- I know Barbara Vogt, but       10:39

21  the others I don't know.

22       Q.    Well, do you understand that Emile

23  deNeree was acting as a broker for Mr. Kwok?

24             MR. MAJOR:  Objection to form.

25       A.    I don't remember.  I don't remember      10:39
```



1                    M. CONBOY

2    Emile.  I don't remember him.

3        Q.    In his e-mail to Barbara Vogt he

4    says:  Could you please ask your clients to

5    agree to these terms because Miles is ready to        10:40

6    sign the contract this afternoon as long as his

7    attorney receives the acceptable terms for due

8    diligence.

9            Do you see that?

10       A.    Yes.                                         10:40

11       Q.    And then after that it says:  Miles

12   does not want the extension.  His lawyer is

13   just protecting him.

14       A.    Yes.

15       Q.    All right.  Now, if you scroll up to        10:40

16   the first page, you were eventually copied on

17   this e-mail.

18           Do you see that?

19       A.    No, I don't see.

20       Q.    Go to the top.                              10:40

21       A.    Oh, yup.  I see up top.

22       Q.    You having been copied on this

23   e-mail and you having represented Golden

24   Spring, Hudson Diamond, and Greenwich Land, can

25   you tell me what's your recollection of why you      10:41



| 1 | M. CONBOY |
| 2 | would have been copied on this e-mail? |
| 3 | MR. MAJOR:  Objection to form. |
| 4 | (Multiple speakers.) |
| 5 | MR. MAJOR:  Calls for speculation. |
| 6 | BY MR. BASSETT: |
| 7 | Q.    I'm sorry? |
| 8 | A.    I didn't write this -- I don't know. |
| 9 | I don't know why I'm copied on it. |
| 10 | Q.    Okay. |
| 11 | Well, if you scroll back down to the |
| 12 | e-mail we looked at before from Mr. deNeree, to |
| 13 | the other individual who you said you |
| 14 | understood was a broker? |
| 15 | A.    Mh-hm. |
| 16 | Q.    Mr. deNeree is saying to Ms. Vogt: |
| 17 | Could you please ask your clients to agree to |
| 18 | these terms because Miles is ready to sign the |
| 19 | contract this afternoon as long as his attorney |
| 20 | receives acceptable terms for due diligence. |
| 21 | Do you see that? |
| 22 | A.    Yes. |
| 23 | Q.    Okay. |
| 24 | Does it stand to reason that if |
| 25 | Ms. Vogt was representing the seller in this |

10:41 (lines 5, 10, 15, 20, 25)



```
 1                    M. CONBOY

 2   potential transaction, that Mr. deNeree was

 3   acting as the broker for Mr. Kwok?

 4              MR. MAJOR:  Objection to form.

 5        Calls for speculation.                        10:42

 6        A.   I don't remember Frank -- or

 7   whatever -- I'm sorry.  Emile, I don't remember

 8   him.

 9        Q.   Do you recall working on this

10   potential transaction?                             10:42

11        A.   Yes.

12        Q.   And who did you represent in this

13   potential transaction?

14        A.   Is this the -- are we still on the

15   Wallacks -- which transaction is this.             10:42

16        Q.   Yes.  I mean, if we -- we can scroll

17   through the whole thing.  I believe there is

18   references to Wallacks Road?

19        A.   Okay.

20              (Document review.)                      10:42

21        A.   Okay.  So what was the question

22   again?

23        Q.   I asked if you remember working on

24   this transaction?

25        A.   I remember working on Wallacks Road,     10:43
```



```
 1                      M. CONBOY
 2    that -- if this is Wallacks Road, then I
 3    remember working on it.
 4         Q.    Okay.
 5              If you go back to the e-mail from      10:43
 6    Mr. deNeree, if you were representing the buyer
 7    in this potential transaction, then the
 8    reference to the buyer's attorney would be you;
 9    would it not?
10              MR. MAJOR:  Objection to form.          10:43
11         A.    Yes, yes.  The buyer's --
12         Q.    And when it says:  Miles does not
13    want the extension.  His lawyer is just
14    protecting him.
15              His lawyer would be a reference to      10:43
16    you; would it not?
17              MR. MAJOR:  Objection to form.
18         A.    I didn't write the e-mail, so -- but
19    it sounds like it would -- I don't, you know, I
20    didn't -- I don't know what was in the -- in     10:44
21    his -- what he was thinking, but...
22         Q.    Are you aware of -- are you aware of
23    Mr. Kwok having had another lawyer represent
24    him in connection with Wallacks Road?
25         A.    I don't know.  I don't know.           10:44
```



```
 1                      M. CONBOY
 2        Q.    You don't -- you are not aware,
 3   correct?
 4        A.    I'm not aware, no, no.
 5              MR. BASSETT:  If I could, please,      10:44
 6        have my colleague put Tab 7 on the screen.
 7              (Conboy Exhibit 7, July 12, 2019,
 8        E-mail Chain Bates Labeled WBAM_003873,
 9        marked for identification.)
10              MR. BASSETT:  This document, which I   10:44
11        will ask to be marked as Conboy Exhibit 7,
12        is an e-mail chain beginning with the
13        e-mail, the first page dated July 12, 2019,
14        and the Bates label in the bottom
15        right-hand corner WBAM_00387.               10:45
16        Do you see that?
17        A.    Yes.
18              MR. THOMASON:  3873.
19              MR. BASSETT:  3873.  Correct.
20   BY MR. BASSETT:                                  10:45
21        Q.    And then if you would, please, go to
22   the first e-mail of the chain on 3875.
23              MR. BASSETT:  There's a lot of
24        background noise.  I'm not sure where
25        that's coming from.  I think it was         10:45
```



```
 1                    M. CONBOY

 2       Chris's.

 3   BY MR. BASSETT:

 4       Q.    If you look at that e-mail, there

 5   are two individuals, an e-mail from a Louise      10:46

 6   Camuto to a Mary Muffin E. Dowdle.

 7              Do you see that?

 8       A.    Yes.

 9       Q.    Do you understand Ms. Dowdle and

10   Ms. Camuto to be real estate brokers?            10:46

11       A.    Ms. Dowdle was a real estate broker.

12   I don't know who Ms. Camuto is.  So I don't

13   know about her.

14       Q.    Do you understand Ms. Dowdle was a

15   broker working for Mr. Kwok?                      10:46

16       A.    Yes.  Or -- yes.

17       Q.    And this is about a property on chat

18   toe ridge property we had mentioned earlier?

19       A.    Yes.

20       Q.    This e-mail we are looking by          10:46

21   Ms. Camuto is actually addressed to Mr. Kwok

22   and in the first paragraph it says:  Dear

23   Miles, thank you for getting back to me.  I

24   look forward to concluding and having you move

25   into this amazing place which we love so much     10:47
```



```
 1                    M. CONBOY

 2   and you seem to love it as much as we do.

 3            Do you see that?

 4        A.    Yes.

 5        Q.    In the second paragraph it says:        10:47

 6   You have asked that I leave the urns on stands

 7   in the living room, the great room.  Knowing

 8   how much you love them and in the spirit of

 9   cooperation, I would like you to have these.

10   And then it says:  In return, if you would       10:47

11   allow me to keep the set of blue chairs, which

12   have always been mine so I can keep the set of

13   four together.

14            Do you see that?

15        A.    Yes.                                    10:47

16        Q.    Okay.

17            And then in the next paragraph which

18   I will just paraphrase it talks about she's

19   saying to Miles that he has asked for two

20   cabinets or armoires.  And then in the           10:47

21   paragraph after that -- in the final paragraph

22   it talks about two men who work on the estate,

23   mentions their salaries.  And then it concludes

24   by saying:  Please let me know if you are

25   interested in assuming these salaries to your    10:48
```



```
 1                        M. CONBOY

 2   payroll as well.

 3             Do you see that?

 4        A.    Yes.

 5        Q.    And then if we go up to the next        10:48

 6   e-mail above this, Max Krasner whom you said

 7   was your point of contact on the engagement,

 8   forwards this to a Yvette Wang and a Karin

 9   Maistrello.

10             And then if you go up, this is          10:48

11   Yvette Wang writing back to the initial author

12   of the first e-mail.  And it says:  Dear

13   Louise, thank you for getting back to Miles.

14   Kindly forgive him as he does better with oral

15   English than written.                             10:49

16             Do you see that?

17        A.    Yes.

18        Q.    And then it also says:  Miles said

19   he exactly shares the same love as you to this

20   fabulous home.  He would even hope you could     10:49

21   come back in the future, share the beautiful

22   stories about this place with him.  I believe

23   there are a lot.

24             Do you see that?

25        A.    Yes.                                   10:49
```



```
 1                     M. CONBOY

 2       Q.     And then it says:  Miles said he

 3   appreciates you agree to leave the urns.  He

 4   does love them very much.  In the same spirit

 5   of cooperation he would like you to keep the       10:49

 6   set of four blue chairs, plus he even prefers

 7   you to choose the cabinet which you like most.

 8            Do you see that?

 9       A.     Yes.

10       Q.     And then the next paragraph starts      10:49

11   with:  Golden Spring New York Limited, as a

12   family office based in Manhattan, we take care

13   of Miles and his family's businesses, projects,

14   and assets and in the U.S.  GSNY directly will

15   directly employ/contract Peter and James with     10:50

16   the salary as you advised.

17            And then it goes on.

18            Do you see that?

19       A.     Yes.

20       Q.     And then, finally, on the last          10:50

21   paragraph it says:  On behalf of Miles, thank

22   you again for having this beautiful home to

23   him.  All the best.

24            Do you see that?

25       A.     Yes.                                     10:50
```



1                          M. CONBOY

2        Q.    And if you go to the e-mail above

3    that, this is another e-mail back to Yvette

4    Wang.

5              MR. BASSETT:  My colleague can          10:50

6        scroll up.

7    BY MR. BASSETT:

8        Q.    And, again, this is from Louise

9    Camuto to Yvette Wang, copying Max Krasner and

10   Karin Maistrello.                                 10:50

11             If you scroll down, it says, among

12   other things:  I'm so glad Miles will enjoy the

13   fabulous urns that are, as you know, quite rare

14   and valuable.  They make the room.

15             Do you see that?                        10:50

16       A.    Yes.

17       Q.    And then in the last paragraph it

18   says:  Thank you and Miles, and please keep the

19   communication flowing.  I'll be happy to come

20   visit him one day when he's all settled in.       10:51

21             Do you see that?

22       A.    Yes.

23       Q.    Now, this e-mail, as we already

24   established, contains the Bates stamp from your

25   law firm on it.  So this means it came from       10:51



```
 1                        M. CONBOY

 2    your files, right?

 3         A.    Yes.

 4         Q.    Now, in the course of your -- of the

 5    work that you perform on behalf of a buyer in a      10:51

 6    real estate transaction, for what purpose would

 7    you typically receive an e-mail like this that

 8    contains details of what a buyer might want to

 9    purchase in a home?

10              MR. MAJOR:   Objection to form.            10:51

11         A.    It would be -- we would have it so

12    that we could put the terms, the different

13    terms that they speak about, in the contract.

14         Q.    So you would have used this

15    information to put into a contract for the          10:51

16    potential purchase by Mr. Kwok of Chateau

17    Ridge, correct?

18         A.    Correct.

19              MR. MAJOR:   Objection to form.

20    BY MR. BASSETT:                                      10:52

21         Q.    Again, all of this, the work that

22    you did with respect to the Chateau Ridge

23    property, like all of the work we've been

24    discussing, this was done under the sort of

25    umbrella of the Greenwich Land, Golden Spring,       10:52
```



MARGARET CONBOY  Confidential                    September 12, 2023
KWOK V. GREENWICH LAND ET AL.                                50

```
 1                    M. CONBOY

 2   and Hudson Diamond engagement that we talked

 3   about?

 4        A.    Yes.

 5             MR. MAJOR:  Objection to form.         10:52

 6             MR. BASSETT:  If I can to -- or have

 7        my colleague, please, put up the e-mail

 8        that's -- sorry -- the document that's

 9        Tab 8.

10             (Conboy Exhibit 8, December 15,       10:52

11        2020, E-mail Bates Stamped WBAM_0038336,

12        marked for identification.)

13             MR. BASSETT:  I will have this

14        document marked as Conboy Exhibit 8.

15   BY MR. BASSETT:                                 10:52

16        Q.    And for the record, it's another

17   e-mail chain, top e-mail in the chain, dated

18   December 15, 2020, Bates stamped at the lower

19   right-hand corner of the first page

20   WBAM_0038336.                                   10:53

21             Ms. Conboy, take your time to look

22   at this as necessary, but do you -- as you can

23   see, you're copied on the first e-mail in this

24   chain as well as the second e-mail and, I

25   think, others, if you scroll down.              10:53
```



```
 1                      M. CONBOY

 2            Do you recall what property or

 3    properties this was in reference to?  The

 4    subject line is:  MK properties to Hudson

 5    Diamond New York LLC?                              10:53

 6       A.    I don't know which property that is.

 7            MR. BASSETT:  Go to the next page,

 8       please.  Next page, please.  Okay.

 9    BY MR. BASSETT:

10       Q.    The -- the e-mail chain does not        10:54

11    appear to list the name of the property, but

12    this is an e-mail exchange between you and Max

13    Krasner, at least, at the top; is that correct,

14    Ms. Conboy?

15       A.    Yes.                                     10:54

16       Q.    And so, therefore, to the best of

17    your recollection, would this be one of the

18    properties that we mentioned on which you

19    provided advice under the Greenwich Land,

20    Golden Spring, and Hudson Diamond engagement     10:54

21    using Max Krasner as your point of contact?

22            MR. MAJOR:  Objection to form.

23       A.    It's from Max to me.  And he's

24    telling us to hold off the -- it had to be

25    workup of properties.                            10:55
```



```
 1                      M. CONBOY
 2        Q.    What he's saying specifically to you
 3   is:  I just spoke with Miles, and he advised
 4   the team he will not move forward on this
 5   property.
 6             Do you see that?
 7        A.    Yes.
 8        Q.    And you understood that Miles is
 9   reference to Miles Kwok?
10        A.    Yes.
11             MR. MAJOR:  Objection to form.
12   BY MR. BASSETT:
13        Q.    And the "he advised" "he" there,
14   that would also be a reference to Miles Kwok?
15             MR. MAJOR:  Objection to form.
16        A.    That's what he wrote -- that's what
17   Max Krasner wrote, so.
18        Q.    Okay.
19             So we've -- Ms. Conboy, we've seen
20   quite a few e-mails today, five or six or so.
21             Do you recall seeing these same
22   e-mails in your February deposition?
23        A.    Yes.
```













| 24 | MR. BASSETT:  I would like my |
| 25 | colleague to, please, put our Tab 10, which |



```
1                     M. CONBOY
2      is going to be Exhibit 9 into the chat.
3              (Conboy Exhibit 9, ███████████
  ███████████████████████ Bates Labeled WBAM_00002,
5      marked for identification.)
6              MR. BASSETT:  This one is a little
7      smaller.  We might need to scroll in a
8      little bit more, and then we can just
9      direct ourselves to particular lines.
10      That's good.  Maybe one out.
11                     ████████████████████
  ███████████████████████████████
  ███████████████████████████████
  ██████████████████████████████████████
  ██████████████
  ████████████████████████████████████
  ██████████████████████████████
  ████████████████████
19   BY MR. BASSETT:
20        Q.    Ms. Conboy, do you recognize this
21   document?
22        A.    Yes.
23        Q.    Okay.
24        A.    Yes.
25        Q.    Could you tell me what it is,
```





1                    M. CONBOY

2   please?

3        A.   ████████████████

████████████████████████████

███████████████████████████

████████████████████████

████████████████████████████

████████████████████

9        Q.   Okay.

10            ████████████████████

██████████████████████████

████████████

████████████████████████

14            MR. MAJOR:   Objection to form --

15       A.   ████████████████

██████████████████████

████████████████████████████████

███████████████████████████████

██████████████████████████████

████████████████████████

████████████████

22       A.   Yes.

23       Q.   Okay.

24            ████████████████████████

████████████████████████████



M. CONBOY

```
1                       M. CONBOY
2          A.        ███
███████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████████
██████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████
█████████████████████████████
████████████████████
████████████████████████████████████████████
███████████████████████████
███████████████████████████
16                MR. THOMASON:  You know, I have this
17         in hard copy.  Can I show it to her?
18         A.    Yes.
19                MR. BASSETT:  Yeah, of course.
20                (Document review.)
21                MR. BASSETT:    ████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████
```





```
1                    M. CONBOY

2            Do you see that.

3      A.    Yup, okay so -- yeah.

4      Q.    ████████████████████
████████████████████████████████
████████████████████████████████
███████████████████████████████
█████████████████████████████

9            Do you see that?

10     A.    Yes.

11     Q.    ████████████████████████
█████████████████████████████████
██████████████

██████████████████████

15     A.    Yup.

16     Q.    ████████████████████████
████████████████████████████
████████████████████
████████████████████████████
██████████████████████████████
███████████████████████████████
██████████████████████████████
█████████████████████████████
███████████████████████████████
██████████████████████████████
```

ESQUIRE
DEPOSITION SOLUTIONS



```
 1                    M. CONBOY
 2   ████████████████████████████████████████
     ██████████████████████
     ████████████████████████████████████████████
     █████████████████████████████
     █████████████████████████████████
     █████████████████████████████████████████████
     █████████████████████████████████████████████
     ████████████████████████████████
10            MR. MAJOR:  Objection to form.
11      A.    Yes.
12      Q.    ██████████████████████████████████
        █████████████████████████████████████
        ██████████████
15            Do you see that?
16      A.    Yes.
17      Q.    ██████████████████████████████████
        ████████████████████████████████████
19      A.    Yes, yes.
20      Q.    Okay.
21            ████████████████████████████████
        █████████████████████████████████████████
        ████████████████████████████████████
        ██████████████████████████████████████████
        ██████████████
```

```
1                      M. CONBOY
2       A.    Mm-hm.
3       Q.    ███████████████████████████
   ████████████████████████████████████
   ███████████████████████
6       A.    Yes.
7             MR. MAJOR:   Objection to form.
8  BY MR. BASSETT:
9       Q.    Okay.
10            And now I want to go to the next
11 page of this document.
12            By the way, Ms. Conboy, does -- what
13 we just looked at, does that refresh your
14 recollection that the initial purchase of the
15 33 Ferncliff Road property was in August of
16 2019?
17      A.    Yes.
18            MR. MAJOR:   Objection to form.
19      A.    No, actually it was -- let me
20 see the dates.
21            (Document review.)
22      A.    No.   The closing was -- it wasn't
23 August 19th.   Oh, August 2019, yes.
24      Q.    Thank you.
25            ████████████████████████████████
```



```
 1                    M. CONBOY
 2    ███████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████
██████████████████████████████████████
█████████████████████████████████████
████████████████████████████
11            Do you see that?
12       A.   Where is that?  Oh, I see, yup.
13   Okay.
14       Q.   Okay.
15   █████████████████████████████████████
██████████████████████████████████████
████████████████████████████████
18       A.   Yup.
19       Q.   ████████████████████████████
███████████████████████
21            Do you see that?
22       A.   Yes.
23       Q.   ████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
```



ESQUIRE
DEPOSITION SOLUTIONS



```
 1                    M. CONBOY
 2     ███████████████

███████████████████████████████████████
███████████████████████████████████
████████████████████████████████████████████
███████████████████████

 7          Q.     Okay.
 8                 ████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
███████████

12          A.     Yes.
13          Q.     █████████████████████████████
████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████
██████████

20          A.     Yes.
21          Q.     All right.
22                 ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████████
```

ESQUIRE
DEPOSITION SOLUTIONS

1                    M. CONBOY

2    ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

5            Do you see that?

6    A.    Yes.

7    Q.    ████████████████████████

███████████████████████████████████████████████

██████████████████████████████

████████████████████

█████████████████████████████████

███████████████████████████████████████████

█████████

████████████████████

███████████████████████████████████████████

██████████████████████

17            Do you see that?

18    A.    Yes.

19    Q.    ███████████████████████████████

██████████████

21    A.    I have no idea.

22    Q.    █████████████████████████████████████

████████████████████████

███████████████████████████████████████████

██████████████████



ESQUIRE
DEPOSITION SOLUTIONS

```
1                          M. CONBOY
2          Q.     Okay.
3               ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████████
████████████████████
9               MR. MAJOR:   Objection to form.
10   BY MR. BASSETT:
11          Q.     I didn't hear your answer.   I'm
12   sorry.
13          A.     I don't know.
14          Q.     How about did the debtor's son, to
15   your knowledge, have any involvement with that
16   transaction?
17               MR. MAJOR:   Objection to form.
18          A.     I don't -- I don't know.
19          Q.     You said, again, Mr. Krasner was
20   your point of contact, right?
21          A.     Correct.
22          Q.     Did Mr. Krasner ever tell you that
23   he needed to get approval from Mr. Kwok's wife
24   prior to making any decisions with respect to
25   properties?
```



                         M. CONBOY

 1

 2        MR. MAJOR:  Objection to form.  And

 3   instruct the witness not to answer on the

 4   grounds of privilege, to the extent it

 5   concerned an instruction during the time          11:12

 6   that the witness was representing Greenwich

 7   Land LLC.

 8        MR. BASSETT:  Chris, I'm going to

 9   tell you again, you've waived any

10   privilege.  I don't agree that you have the       11:12

11   privilege.

12        And this question in any event, is

13   not -- on its face, not calling for any

14   attorney-client privileged communications.

15   It's a yes-or-no question.                        11:12

16        MR. MAJOR:  Mr. Krasner was an

17   officer of Greenwich Land LLC.  You've just

18   asked a question about a conversation he

19   had with a lawyer representing Greenwich

20   Land LLC.  It's a privileged communication,       11:12

21   and we're instructing the witness not to

22   answer on those grounds.  Your argument for

23   waiver is wrong.

24        We have never waived the privilege.

25   In fact, we've asserted the privilege.  We        11:12



1               M. CONBOY

2    were not at the prior deposition.  We were

3    not given notice or an invitation to the

4    prior deposition.

5         And Greenwich Land LLC has never          11:13

6    authorized the Whitman Breed firm to waive

7    the privilege.  It's the client's

8    privilege.  It's not the lawyer's

9    privilege.  And it certainly isn't your

10   privilege as the questioning lawyer.  And     11:13

11   it doesn't matter if there was a prior

12   disclosure that was done without the

13   knowledge and consent of the client.

14        MR. BASSETT:  All right.  I disagree

15   with everything you just said.  You have       11:13

16   had months of opportunity to raise any

17   issue with respect to the allegations in

18   our complaint which referred to Ms.

19   Conboy's testimony, and with respect to the

20   testimony itself.                              11:13

21        I also do not -- did -- the fact

22   that I am asking about her conversations

23   with an officer of the company does not

24   render the answer at all privileged.  I'm

25   not asking for her to reveal any advice        11:14



```
 1                       M. CONBOY
 2         that she gave or any advice that was sought
 3         from her.
 4             That's the definition of what it
 5         requires for a communication to be cloaked     11:14
 6         in the attorney-client privilege.
 7             The question that I asked, which I
 8         can have the court reporter read back,
 9         absolutely did not call for her to divulge
10         any privileged communication.                  11:14
11    BY MR. BASSETT:
12         Q.   Ms. Conboy, did Mr. Krasner -- I'm
13    not asking for advice you gave to Mr. Krasner
14    or for anything Mr. Krasner asked you in terms
15    of legal advice.  All I'm asking is if           11:14
16    Mr. Krasner told you, from a business
17    perspective, that he needed to get approval
18    from Mr. Kwok's wife prior to making decisions
19    with respect to properties?
20             MR. MAJOR:  Objection to form.  And,     11:15
21         again, instruct the witness not to answer.
22         The --
23             MR. BASSETT:  How is that
24         privileged?
25             MR. MAJOR:  Because you are asking     11:15
```



```
 1                        M. CONBOY

 2        about the --

 3             MR. BASSETT:  Where's the request

 4        for legal advice, Chris?

 5             MR. MAJOR:  Let's have the question      11:15

 6        read back, please, or if you want to re-ask

 7        it, whatever is faster.

 8   BY MR. BASSETT:

 9        Q.    Did Mr. Krasner ever tell you, from

10   a business perspective, that he needed to get       11:15

11   approval from Mr. Kwok's wife prior to making

12   any decisions with respect to properties?

13             MR. MAJOR:  Let me just have a quick

14        minute to think this over.  I'll be back in

15        a minute.  Hold on.                            11:15

16             MR. BASSETT:  Okay.

17             MR. THOMASON:  We're going to take a

18        break.  That okay, Nick?

19             MR. BASSETT:  Sure.

20             (Recess is taken.)                        11:15

21             MR. MAJOR:  Thank you very much

22        everyone for allowing that break.  I want

23        to make sure we're being as judicious as

24        possible with this today, so that's why I

25        wanted to just take a minute to consider it    11:29
```



```
 1                    M. CONBOY
 2    and confer with a colleague.
 3         And I do think that the question
 4    calls for privileged communication.  I
 5    think the privilege is broader than          11:29
 6    Mr. Bassett has outlined.  It's for
 7    communications between lawyer and client
 8    relating to the provision of legal advice
 9    or the provision of legal services.
10         I think in the context of a real        11:29
11    estate transaction, the role that
12    Ms. Conboy played is uniquely legal in
13    nature.  The, you know, strictly business
14    discussions, those are happening with the
15    broker.  A real estate lawyer involved in a  11:29
16    closing on a residential loan like this --
17    residential sale like this is brought in at
18    the time that legal services are needed,
19    for example, preparation or a contract and
20    so forth.                                     11:30
21         And so I think that the
22    conversations that Ms. Conboy had with
23    the -- an officer of Greenwich Land LLC is
24    privileged, and therefore we're going to
25    assert the privilege to this question.       11:30
```



1              M. CONBOY

2         MR. BASSETT:  So thanks for that,

3    Chris.  I don't think that is an accurate

4    articulation of the law or a correct

5    application of it.  The question that I          11:30

6    asked was simply a question about who at

7    the client would approve transactions or

8    decisions in connection with transactions.

9    That is not privileged.

10        Moreover throughout the entire             11:30

11   deposition today, I have been asking

12   Ms. Conboy about her communications with

13   Mr. Krasner, including showing those

14   communications.  Some of those

15   communications have indicated where           11:31

16   Mr. Krasner was telling her that Mr. Kwok

17   was deciding not to purchase a property,

18   for example.

19        That is absolutely no different than

20   what I'm now asking.  There are already --      11:31

21   there's already testimony in the record

22   about Mr. Kwok making decisions on behalf

23   of the client.  All I'm asking is if she

24   ever was told that, instead of Mr. Kwok,

25   his wife needed to make decisions.  So          11:31



```
 1              M. CONBOY

 2    that's fair game.  And it's -- the door has

 3    been opened.  Any privilege you may have

 4    had has been waived throughout the day

 5    today.                                          11:31

 6        If you are going to stand on that

 7    objection, we'll reserve our rights, take

 8    it up with the Court, if necessary.

 9        MR. MAJOR:  We are going to stand on

10    the objection.  And just to be clear, you       11:31

11    know, it's a disingenuous argument to try

12    to claim that there's been --

13        MR. BASSETT:  Hey Avi, put your

14    phone on mute.  Sorry.

15        MR. MAJOR:  -- that there's been a          11:32

16    waiver today at the deposition because we

17    didn't object to you asking questions about

18    Mr. Kwok.  We do not represent Mr. Kwok.

19    Greenwich Land did not own or transact for

20    the properties that you are asking            11:32

21    questions about.  Here, you are talking

22    about a property that Greenwich Land LLC

23    was the owner of.  Max Krasner, as you

24    know, is an officer of Greenwich Land, and

25    he was having communications with Greenwich   11:32
```



```
 1                    M. CONBOY

 2   Land's lawyer about a transaction involving

 3   a property owned by Greenwich Land, and

 4   that's why we appropriately objected.

 5        MR. BASSETT:  All right.  I'm not          11:32

 6   asking about any particular transaction, to

 7   be clear.  The question was:  In the course

 8   of the engagement did Mr. Krasner ever tell

 9   you, from a business perspective, he needed

10   to get approval from Mr. Kwok's wife prior     11:33

11   to making any decisions with respect to

12   properties?  I wasn't asking about a

13   particular transaction or property.

14        MR. MAJOR:  Yeah, so look, if the

15   witness and her firm are comfortable that      11:33

16   they can delineate the representations, and

17   you want to limit your question to a

18   nonGreenwich Land LLC representation, then

19   I don't think we would have an objection.

20   Because we only represent Greenwich Land       11:33

21   and Ms. Guo, who is named in the complaint

22   as Hing Chi Ngok, and I don't represent

23   anybody else.  So I can only assert

24   privilege on behalf of those two.

25        And so again, though, the way you've       11:33
```



```
 1                    M. CONBOY
 2    asked questions, trying to lump the
 3    entities together, I've been objecting to
 4    the form of the question because it's
 5    improper.  But you are trying to make it          11:34
 6    sound like, you know, Greenwich Land was no
 7    different than the other entities in your
 8    questions.
 9          I don't know, since the witness, you
10    know, was previously deposed without our         11:34
11    involvement, I don't know if the witness is
12    able to delineate between the
13    representations that you've been grouping
14    together -- together.  I don't agree that
15    they are grouped together at all, but           11:34
16    that's the way you've decided to ask your
17    questions.  Which I think makes it a little
18    thornier when you go to ask a general
19    question like this, which is why we're also
20    objecting to the form of the question.  But     11:34
21    that's -- you know, that's just for
22    purposes of the record so we can deal with,
23    you know, what will be confusing testimony
24    later on.
25          But as to Greenwich Land, any             11:34
```



```
 1                      M. CONBOY

 2       communications that Ms. Conboy had with an

 3       officer of Greenwich Land about the

 4       execution of a real estate transaction

 5       concerning property owned by Greenwich        11:35

 6       Land, we are going to stand on our

 7       objection.

 8   BY MR. BASSETT:

 9       Q.   Ms. Conboy, you testified before

10   that you represented Greenwich Land, Golden       11:35

11   Spring, and Hudson Diamond New York as part of

12   the same engagement.

13            Do you recall that?

14            MR. MAJOR:  Objection to form.

15       A.   I -- can you say the question again,     11:35

16   please.

17            MR. BASSETT:  Could the court

18       reporter read it back, please?

19            (Question was read back as follows:

20            "QUESTION:  Ms. Conboy, you              11:35

21       testified before that you represented

22       Greenwich Land, Golden Spring, and Hudson

23       Diamond New York as part of the same

24       engagement.

25            Do you recall that?")               11:35
```



```
 1                        M. CONBOY

 2        A.    Yes.

 3        Q.    Ms. Conboy, in your communications

 4   with Mr. Krasner, were you ever delineating

 5   between Greenwich Land, Golden Spring, and        11:36

 6   Hudson Diamond in the course of those

 7   communications?

 8              MR. MAJOR:  Objection to form.  And

 9         I just caution the witness that she not

10         reveal attorney-client privileged           11:36

11         communications relating to Greenwich Land,

12         but I think the question can be answered

13         without stepping over that line.

14              MR. THOMASON:  It sounds like a

15         yes-or-no question, correct?                 11:36

16              MR. BASSETT:  It is a yes-or-no.

17              MR. THOMASON:  I think an answer to

18         that to -- either in the affirmative or the

19         negative wouldn't reveal privileged

20         information; is that right, Chris?           11:36

21              MR. MAJOR:  Yes, that was my point.

22              MR. THOMASON:  So if you can answer

23         that question in the affirmative or the

24         negative, you can do that.  If you can't --

25         you require -- it feels, you know, more --   11:37
```



```
 1                     M. CONBOY

 2              THE WITNESS:  Then -- okay.

 3         A.    So the question is if I delineated

 4    between --

 5              MR. THOMASON:  The different            11:37

 6         entities.

 7         A.    -- the different entities.  And

 8    I'm -- I don't -- I'm not understanding what

 9    that even means, if I delineated between the

10    different entities.  I don't understand the     11:37

11    question.

12         Q.    Well, when you took intersection

13    from Mr. Krasner and you had conversations with

14    Mr. Krasner, were you ever -- were you always

15    communicating with him as a representative on    11:37

16    behalf of all three entities or were you at

17    times drawing distinctions between which entity

18    he was communicating on behalf of?

19              MR. MAJOR:  Objection to form.

20         A.    I'll -- yes, all three entities.     11:37

21    Yes.

22         Q.    So when you had communications with

23    him he was, in your mind, communicating on

24    behalf of all three entities?

25         A.    Yes.                                  11:38
```



```
1                   M. CONBOY
2            MR. MAJOR:  Objection to form.  And
3        also I'd caution the witness not to reveal
4        attorney-client privileged communications.
5            MR. BASSETT:  All right.  I don't
6        think there's any confusion at this point.
7    BY MR. BASSETT:
```



24      MR. THOMASON:  Is that all for the

25  witness?



```
 1                    M. CONBOY
 2            MR. MAJOR:  I'm going to have some
 3        questions for the witness.
 4            MR. THOMASON:  That's fine.
 5   EXAMINATION BY                                  11:40
 6   MR. MAJOR:
 7        Q.   Good morning, Ms. Conboy.  My name
 8   is Chris Major.  My partner Austin Kim is also
 9   on.  We're representing Greenwich Land LLC and
10   Ms. Guo, who is named in the complaint in this  11:40
11   adversary proceeding as a Hing Chi Ngok.
12            And have you had a chance to review
13   the complaint in this adversary proceeding?
14        A.   No.
15        Q.   When was the first time that you     11:41
16   were contacted by the Chapter 11 trustee in
17   this in re Kwok bankruptcy matter?
18        A.    It was at least -- I want to say at
19   least six months ago.  Maybe more.
20        Q.   Do you know the name of the          11:41
21   Chapter 11 trustee in this bankruptcy case?
22        A.    I don't remember.
23        Q.   Do you recall who contacted you on
24   behalf of the trustee?
25        A.    Well, first a client called me.  And 11:41
```



MARGARET CONBOY  Confidential                     September 12, 2023
KWOK V. GREENWICH LAND ET AL.                                    83

```
 1                    M. CONBOY
 2   then the -- I guess it was the trustee himself,
 3   the partner.
 4        Q.    Was it Luc Despins?
 5        A.    Yes.                                    11:42
 6        Q.    And he contacted you by phone?
 7        A.    I think maybe first by e-mail and
 8   then -- I did talk to him by phone.
 9        Q.    Did anyone from your firm join you
10   when you spoke with Mr. Despins by phone?          11:42
11        A.    I don't remember.
12        Q.    And what did Mr. Despins say to you
13   during that phone call?
14        A.    Initially, he was asking if it's --
15   about sending the binder for -- for 373           11:42
16   Taconic.  It was initially regarding the
17   Taconic -- and I represented the seller, so we
18   had to get waivers and that was the initial
19   discussion.
20        Q.    Okay.                                   11:42
21             And did you deliver the file for 373
22   Taconic to Mr. Despins?
23        A.    I believe what happened was my
24   client, who was the seller, was friends with
25   the attorney, the trustee.  And he sent them      11:43
```



```
 1                    M. CONBOY
 2   the documents.  I didn't send them.
 3        Q.    Do you recall the name of your
 4   client on that transaction?
 5        A.    Augustine, Mr. Augustine.          11:43
 6        Q.    Did you deliver any documents to
 7   Mr. Despins or any of his colleagues at Paul
 8   Hastings?
 9        A.    I don't remember.  I don't know.
10   Then our litigators took over.  Or Jim Riley,  11:43
11   Michael, they took over.  So I didn't have --
12   after that -- after Mr. Augustine sending the
13   documents, then I had no other contact with
14   them.
15        Q.    Okay.                              11:44
16             Did you have any further
17   conversations with Mr. Despins after that
18   initial phone call?
19        A.    I don't remember.
20        Q.    Do you still have the e-mail that  11:44
21   you received from Mr. Despins?
22        A.    I don't know.
23        Q.    Did you have further e-mail
24   communications with Mr. Despins after the
25   initial phone call that you had?             11:44
```



```
 1                      M. CONBOY

 2        A.    I don't remember.

 3        Q.    Did you have communications with any

 4   other lawyers at Paul Hastings in connection

 5   with this bankruptcy, other than Mr. Despins?        11:44

 6        A.    I don't remember.

 7        Q.    Have you ever spoken with

 8   Mr. Bassett before today?

 9        A.    No.

10        Q.    Other than your deposition in --        11:44

11   under Rule 2004, which has been -- some of the

12   pages have been shown today, have you had any

13   conversations with Avi Luft of Paul Hastings?

14        A.    No, not since that deposition.  I

15   only had the deposition.                           11:45

16        Q.    What did you tell Mr. Despins on the

17   phone call when he asked for the closing file?

18             MR. BASSETT:  Objection to form.

19        A.    That I had to check with my client

20   and see if he was agreeable, if -- I would have    11:45

21   to get his consent.

22        Q.    And going back to the Ferncliff Road

23   property, do you know whether your firm

24   provided any documents relating to that

25   property to the trustee or any of the lawyers      11:45
```



| | | |
|---|---|---|
| 1 | M. CONBOY | |
| 2 | representing the trustee at -- whether it would | |
| 3 | be at his law firm or a law firm in Connecticut | |
| 4 | called Neubert, Pepe & Monteith? | |
| 5 | A.    I don't know. | 11:46 |
| 6 | Q.    Did you -- withdrawn. | |
| 7 | Have you ever spoken to the person | |
| 8 | who Mr. Bassett was referring to as Mr. Kwok? | |
| 9 | A.    No. | |
| 10 | Q.    Have you ever met him? | 11:46 |
| 11 | A.    No. | |
| 12 | Q.    In connection with the 373 Taconic | |
| 13 | Road property transaction, did you do any | |
| 14 | diligence as to the source of funds that were | |
| 15 | used to purchase in that instance your client's | 11:47 |
| 16 | former -- now former home at 373 Taconic Road? | |
| 17 | A.    No. | |
| 18 | MR. BASSETT:  Objection. | |
| 19 | BY MR. MAJOR: | |
| 20 | Q.    Do you know who the member of | 11:47 |
| 21 | Greenwich Land LLC is, or members? | |
| 22 | A.    No. | |
| 23 | Q.    Do you know the source of funds that | |
| 24 | were used to purchase your client's now former | |
| 25 | home at 373 Taconic Road? | 11:48 |



1                        M. CONBOY

2              MR. BASSETT:   Object to form.

3        A.    No.

4        Q.    Do you know who lives in the house

5   at 373 Taconic Road in Greenwich, Connecticut?    11:48

6        A.    No.

7        Q.    I'm limiting this question to 373

8   Taconic Road in Greenwich, Connecticut, where

9   you represented the seller.

10             Were you ever a witness to any          11:49

11  deliberations by the purchaser about acquiring

12  that property?

13             MR. BASSETT:   Objection to form.

14       A.    No.

15       Q.    Do you recall the name of the buyer     11:49

16  of the property at 373 Taconic Road?

17       A.    I don't remember.  I don't remember.

18       Q.    Do you remember the purchase price?

19       A.    I don't remember.

20       Q.    You said that your client was           11:49

21  friends with Mr. Despins.

22             How did you learn that?

23       A.    My client e-mailed me and -- my

24  client e-mailed me and said that he had --

25  Mr. Despins had called my client, and my client   11:50



```
 1                        M. CONBOY
 2     said they were good friends.
 3                MR. MAJOR:  Why don't we go off the
 4          record for a couple minutes.  I just want
 5          to confer with a colleague and check some        11:50
 6          notes and then hopefully we can come back,
 7          and I'll have a few more questions and then
 8          I'll wrap up.
 9                MR. BASSETT:  Okay.
10                (Recess is taken.)                          11:50
11                MR. MAJOR:  Thank you, Ms. Conboy,
12          and Counsel for giving me a few minutes.  I
13          just have a very few questions left.
14     BY MR. MAJOR:
15          Q.   Mr. Bassett and his colleague              12:05
16     post -- published over this Zoom an e-mail
17     which referred to a Chinese billionaire.
18                Did you ever meet or speak with the
19     Chinese billionaire?
20          A.   No.                                         12:05
21          Q.   Did that Chinese billionaire ever
22     sign an engagement letter with your firm?
23          A.   No.
24          Q.   Did Mr. Kwok ever sign an engagement
25     letter with your firm?                                12:06
```



```
 1                    M. CONBOY

 2           MR. BASSETT:  Objection.  Form.

 3      A.    The entities -- I have my engagement

 4  letters are with the entities.

 5      Q.    My question is just whether Mr. Kwok       12:06

 6  was ever a signatory on an engagement letter

 7  with your firm?

 8      A.    No.

 9           MR. MAJOR:  We have no further

10       questions at this time.                        12:06

11           MR. BASSETT:  And I have no

12       follow-up.

13           THE COURT REPORTER:  Anything else?

14           MR. THOMASON:  No.

15           THE COURT REPORTER:  Thank you.

16           Chris, do you need a rough draft of

17       the transcript and/or a copy?

18           MR. MAJOR:  I'd like a copy, but we

19       don't need a rough draft.  And if we could

20       have a mini as well.

21           MR. THOMASON:  Are you going to have

22       her read and sign?  I was thinking.  Do you

23       feel like you need the opportunity to

24       review the transcript to check for

25       everything or do you feel confident?          12:07
```

1                    M. CONBOY

2          THE WITNESS:  No.

3          MR. THOMASON:  So no, I would

4    appreciate a courtesy copy that I don't

5    have to pay for.  If that's not possible        12:07

6    then, you know, I don't need a copy.

7          MR. BASSETT:  I believe -- so, I'm

8    just trying to think of -- what's standard

9    delivery, again?

10         THE COURT REPORTER:  It is eight          12:08

11   business days, but if you need it sooner,

12   I'm happy to do that for you.  And you

13   never said if you wanted a rough draft or

14   not.

15         MR. BASSETT:  I don't think we need       12:08

16   it.  If we -- if somebody on my team tells

17   me that I made the wrong decision, I will

18   e-mail you.

19         (Continued on the following page to

20   include jurat.)

21

22

23

24

25



```
 1                        M. CONBOY

 2             THE COURT REPORTER:  Okay.  Thank

 3       you.

 4             MR. BASSETT:  Thank you very much,

 5       Ms. Conboy.  I appreciate it.                      12:08

 6             THE WITNESS:  Thank you.

 7             (Time Noted:  12:08 p.m.)

 8

 9

10                        ---------------------

11                        MARGARET CONBOY

12

13     Subscribed and sworn to before me

14     this        day of              2023.

15

16     ---------------------------------------

17

18

19

20

21

22

23

24

25
```



```
1

2                    C E R T I F I C A T E

3    STATE OF NEW YORK    )

4                         ) ss.:

5    COUNTY OF NEW YORK     )

6

7           I, LISA M. MURACO, a Notary Public

8      within and for the State of New York,

9      Florida, and Massachusetts, do hereby

10     certify:

11          That MARGARET CONBOY, the witness

12     whose deposition is hereinbefore set forth,

13     was duly sworn by me and that such

14     deposition is a true record of the

15     testimony given by such witness.

16          I further certify that I am not

17     related to any of the parties to this

18     action by blood or marriage; and that I am

19     in no way interested in the outcome of this

20     matter.

21          IN WITNESS WHEREOF, I have hereunto

22     set my hand this 13th day of September,

23     2023.

24     ----------------------------

25                    LISA M. MURACO
```



I N D E X

WITNESS                                          PAGE
MARGARET CONBOY
MR. BASSETT                                      6
MR. MAJOR                                        82

E X H I B I T S

DESCRIPTION                                      PAGE
Conboy Exhibit 1, Conboy Deposition             15
Transcript from February 21, 2023


Conboy Exhibit 2, ███████████████          ██


Conboy Exhibit 3, ████████████████          ██
████████████████████████████████
██████████████


Conboy Exhibit 4, October 3rd, 2019,            32
E-mail Bates labeled WBAM_010076


Conboy Exhibit 5, January 22, 2019,             36
E-mail Bates labeled WBAM_0002663


Conboy Exhibit 6, January 6, 2019,              38
E-mail, Bates Stamped WBAM_002803



```
 1
 2     I N D E X   O F   E X H I B I T S(Cont'd.)
 3   DESCRIPTION                              PAGE
 4   Conboy Exhibit 7, July 12, 2019, E-mail        43
     Chain Bates Labeled WBAM_003873
 5
 6
     Conboy Exhibit 8, December 15, 2020,           50
 7   E-mail Bates Stamped WBAM_0038336
 8
 9   Conboy Exhibit 9, Whitman Breed Trustee        57
     Ledger, Bates Labeled WBAM_00002
10
11
12          QUESTIONS INSTRUCTED NOT TO ANSWER
13                    Page      Line
14                    68        2
                      68        21
15                    70        20
                      80        25
16
17
18
19
20
21
22
23
24
25
```



800.211.DEPO (3376)
EsquireSolutions.com

```
1

2            ERRATA SHEET FOR THE TRANSCRIPT OF:

3   Case Name:      KWOK v GREENWICH LAND, et al.

    Dep. Date:      TUESDAY, SEPTEMBER 12, 2023

4   Deponent:       MARGARET CONBOY

5                    CORRECTIONS:

6   Pg. Ln.   Now Reads          Should Read       Reason

7   ___ ___  _____    _____    _____

8   ___ ___  _____    _____    _____

9   ___ ___  _____    _____    _____

10  ___ ___  _____    _____    _____

11  ___ ___  _____    _____    _____

12  ___ ___  _____    _____    _____

13  ___ ___  _____    _____    _____

14  ___ ___  _____    _____    _____

15  ___ ___  _____    _____    _____

16  ___ ___  _____    _____    _____

17  ___ ___  _____    _____    _____

18

19                           _____

20                           Signature of Deponent

21  SUBSCRIBED AND SWORN BEFORE ME

22  THIS____DAY OF_____, 2023.

23

24  _____

25  (Notary Public)  MY COMMISSION EXPIRES:_____
```

