**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

```
-------------------------------------------------x
                                          :
In re:                                    :    Chapter 11
                                          :
HO WAN KWOK, et al.,1                     :    Case No. 22-50073 (JAM)
                                          :
              Debtors.                    :    (Jointly Administered)
                                          :
-------------------------------------------------x
```

**GENEVER HOLDINGS LLC'S MOTION, PURSUANT TO BANKRUPTCY CODE
SECTION 363(b), FOR ENTRY OF ORDER AUTHORIZING GENEVER HOLDINGS
LLC TO ENTER INTO, AND PERFORM UNDER, ALTERATION AGREEMENT
WITH SHERRY NETHERLAND, INC. TO REMEDIATE AREAS OF SHERRY
NETHERLAND APARTMENT AFFECTED BY MARCH 15, 2023 FIRE**

Genever Holdings LLC (the "Debtor" or "Genever US"), by and through its undersigned

counsel, hereby files this motion (the "Motion") seeking entry of an order, substantially in the

form attached hereto as **Exhibit 1** (the "Proposed Order"), pursuant to section 363(b) of title 11

of the United States Code (the "Bankruptcy Code"), authorizing Genever US to enter into, and

perform under, the alteration agreement (together with all exhibits and riders thereto, including

the addendum, the "Alteration Agreement") with The Sherry-Netherland, Inc. ("Sherry

Netherland"), substantially in the form attached hereto as **Exhibit 2**.  In support of this Motion,

Genever US respectfully states as follows:

---

1  The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
   Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
   Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The
   mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings
   LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok
   (solely for purposes of notices and communications).

## PRELIMINARY STATEMENT[2]

1.      Genever US's primary goal in its chapter 11 case is to rent and/or sell the Sherry

Netherland Apartment in a value-maximizing transaction.  As this Court is aware, that goal has

been delayed due to a March 15, 2023 fire (the "March 15 Fire") that occurred at the Sherry

Netherland Apartment, resulting in significant damage to a portion of the apartment and leaving

the apartment essentially unmarketable.  In order to restore the Sherry Netherland Apartment to a

marketable condition, the Court authorized, by order dated on September 19, 2023 [Docket No.

2213] (the "Remediation Order"), Genever US to remediate the area of the Sherry Netherland

Apartment affected by the March 15 Fire.

2.      To proceed with the Remediation Project, Genever US must comply with Sherry

Netherland's rules for renovating apartments located in the building.  The Sherry Netherland

building is a landmark building that functions as a co-operative apartment house and a luxury

hotel, and is subject to a high level of regulation from various federal, state and local agencies.

For this reason, Sherry Netherland has put in place a number policies and procedures that ***all***

shareholders of the co-operative must follow when making alterations, so as to comply with

applicable regulations while protecting the safety, comfort, and privacy of all of its occupants.

This requires that all shareholders seeking to alter their apartment, including remediation or

renovation projects, enter into a standard form of alteration agreement with Sherry Netherland.

If Genever US does not enter into the Alteration Agreement, it cannot remediate the damage

from the March 15 Fire, with the practical effect that it would not be able to sell/rent the Sherry

Netherland Apartment for the benefit of the estate.  Thus, as previewed in the Remediation

---

[2]     Capitalized terms not defined in the Preliminary Statement shall have the meaning ascribed to them later in the Motion.

Motion, Genever US must enter into the Alteration Agreement with Sherry Netherland before it can commence the Remediation Project.

3.      To be clear, the Alteration Agreement is the ***standard*** agreement that Sherry Netherland requires all shareholders to sign before they can renovate their apartments, and the Sherry Netherland will not allow any modifications.  As detailed below, the Alteration Agreement implements various procedures that will apply to the Remediation Project, including, among other things, that: (a) prior to commencing work, Genever US submit to Sherry Netherland necessary documentation, including but not limited to a description and specification of the work to be done, detailed plans, proof of licensing, proof of insurance, and the execution of specific riders addressing certain specific circumstances (such as asbestos removal and lead-based paint hazards); (b) Sherry Netherland may designate an architect to review plans and inspect alterations to the extent necessary to determine that the work is proceeding in conformity with their policies; (c) prior to commencing work, all appropriate permits and approvals have been obtained from the agencies having jurisdiction over the project; and (d) the Remediation Project comply with regulations regarding manner and materials for the work, including days and hours of work, the protection of hallways and heating, electrical and plumbing systems, and quality of materials.  Genever US submits that the procedures in the Alteration Agreement are necessary and reasonable under the circumstances such as these where Sherry Netherland must comply with strict regulations and protect the residents in the building.

4.      In addition, the Alteration Agreement requires Genever US to pay a refundable $50,000 security deposit (which represents a reduction of $50,000 from the standard $100,000 security deposit).[3]  This security deposit will be returned upon completion of the Remediation

---

[3]      The Alteration Agreement would also require an additional security deposit of $15,000 if the proposed work requires an amended Certificate of Occupancy.  However, no such amended Certificate of Occupancy will be

Project so long as Genever US complies with all of the provisions in the Alteration Agreement. In addition, the Alteration Agreement requires a management processing fee in the amount of $1,500 to cover the increase in administrative costs during the work. Upon completion of the Remediation Project, if Genever US fails to submit the necessary close-out documents, it would additionally have to pay a fee of $2,000 for each calendar month or portion thereof that such close-out documents have not been submitted. To be clear, Genever US intends to comply with all its obligations under the Alteration Agreement.

5.     Genever US also wishes to highlight that, as detailed in the Addendum to Apartment Alteration Agreement (the "Addendum"), Sherry Netherland has agreed to waive certain of the fees that would otherwise be required under its standard form of alteration agreement. In particular, the Sherry Netherland has agreed to waive:

   a.   The architect fee (in the amount of approximately $1,500 to $3,500);[4]

   b.   Any fees related to an extension of the Completion Date (in the amount of $500 or $1,000 per day);[5] and

   c.   The monthly use-of-facilities fees (in the amount of $2,212.50 per month).[6]

---

required in connection with the Remediation Project, and therefore Genever US will not be required to make this additional deposit.

[4]   Under Section 3 of the standard form of alteration agreement, the Sherry Netherland would be entitled to charge an architect fee, typically in the range of $1,500 to $3,500, depending on the scope of the alterations. Given that the architect retained by Genever US is the architect usually engaged by the Sherry Netherland in such cases, no such fee will be required here.

[5]   Section 14(a) of the standard form alteration agreement would require the shareholder to pay, in the event the Completion Date is extended, a $500 fee per day for each of the first 15 additional working days and a $1,000 fee per day for the 16th working day and each day thereafter that the Completion Date is extended.

[6]   Section 14(b) of the standard form of alteration agreement would require the shareholder to pay a use-of-facilities fee equal to $.75 multiplied by the number of shares allotted to Sherry Netherland Apartment for each calendar month, or portion thereof. In the case of Genever US (which owns 2,950 shares in the apartment), the waiver of this fee translates into a monthly savings of $2,212.50, or approximately $13,000 (assuming the Remediation Project will take six (6) month to complete).

6.      In addition, the Alteration Agreement requires Genever US to indemnify Sherry Netherland and its personnel under certain circumstances specified in the Alteration Agreement related to the Remediation Project, except nothing in the Alteration Agreement shall indemnify Sherry Netherland against legal liability it may otherwise have for damage arising out of bodily injury to persons or damage to property contributed to or caused by or resulting from the negligence of Sherry Netherland and personnel.  In any case, in accordance with the Proposed Order, all requests for indemnification during the pendency of Genever US's chapter 11 case will be brought before this Court and will be subject to the approval of this Court.  In this regard, Genever US notes that the Proposed Order contains the same provisions as this Court had previously approved in connection with the retention of Epiq Corporate Restructuring, LLC and Kroll, LLC.

7.      Genever US submits that, for these reasons and the reasons explained below, the Court should approve Genever US's entry into, and performance under, the Alteration Agreement.

## JURISDICTION, VENUE, AND STATUTORY BASIS

8.      The United States Bankruptcy Court for the District of Connecticut (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

9.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.      The statutory base for the relief requested in this Motion is section 363 of the Bankruptcy Code.

## BACKGROUND

### I.    Chapter 11 Cases

11.      On October 12, 2020, Genever US filed its chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York (the "SDNY Bankruptcy Court") thereby commencing case number 20-12411 (JLG) (the "SDNY Bankruptcy Case").  The 18th floor apartment and auxiliary units (collectively, the "Sherry Netherland Apartment") in the Sherry Netherland Hotel located at 781 Fifth Avenue, New York, New York 10022 (the "Sherry Netherland Hotel"), are Genever US's principal assets (in addition to the related security deposit).  Sherry Netherland is a New York corporation that owns the Sherry Netherland Hotel.

12.      On February 15, 2022, Ho Wan Kwok (the "Individual Debtor") filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Court.

13.      On March 21, 2022, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in the Individual Debtor's chapter 11 case.  No examiner has been appointed in the Individual Debtor's chapter 11 case.

14.      On June 15, 2022, the Court entered a memorandum of decision and order [Docket No. 465] (the "Trustee Order") directing the United States Trustee to appoint a chapter 11 trustee in the Individual Debtor's chapter 11 case.  Pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins (the "Trustee") as the trustee.  On July 8, 2022, the Court entered an order [Docket No. 523] granting the appointment of the Trustee as the chapter 11 trustee in the Individual Debtor's chapter 11 case.  On August 10, 2022, the Court entered an order [Docket No. 717] finding that the Trustee holds all of the Individual Debtor's economic and governance rights with respect to Genever Holdings Corporation ("Genever BVI"), which, in turn wholly owns Genever US.

15.    On September 30, 2022, the Trustee and Genever US filed a joint motion [Docket No. 211 in Case No. 22-50592] seeking an order from the SDNY Bankruptcy Court transferring the SDNY Bankruptcy Case to the Court.  On November 3, 2022, the SDNY Bankruptcy Court entered an order [Docket No. 225 in Case No. 22-50592] granting the motion and the SDNY Bankruptcy Case was transferred to this Court.

16.    On October 11, 2022, Genever BVI filed its voluntary chapter 11 petition in this Court.

17.    By order dated November 21, 2022 [Docket No. 1141], the Court approved the joint administration of the chapter 11 cases of Genever US, Genever BVI, and the Individual Debtor.

## II.    Sherry Netherland Apartment Remediation Project in Preparation for Sale

18.    On March 6, 2015, Genever US executed a proprietary lease (the "Proprietary Lease") with Sherry Netherland, a co-operative housing corporation through which Genever US owns a certain number of shares that are assigned to the Sherry Netherland Apartment leased by Genever US.  Pursuant to Section 3.16 of the Proprietary Lease, Genever US acknowledged Sherry Netherland's consent was required to make alterations to the Sherry Netherland Apartment.[7]

19.    Prior to the transfer of the SDNY Bankruptcy Case to the Court, the SDNY Bankruptcy Court (a) approved a settlement agreement establishing the framework for the sale of

---

[7]    Genever US has obviously considered the fact that this obligation is imposed under a prepetition lease, and, accordingly, Genever US would argue that it does not have to comply with such obligations under a prepetition agreement.  However, given the importance of the Remediation Project, given Sherry Netherland's cooperative posture to date, and given that Sherry Netherland would likely oppose and litigate any attempt by Genever US not to comply with the terms of the Proprietary Lease, Genever US has decided, for purposes of this Motion, not to press such argument.  However, this should not be construed as an acknowledgement that Genever US must comply with the provisions of the Proprietary Lease or any other prepetition contract or lease.  Genever US reserves all rights in this regard.

the Sherry Netherland Apartment [Docket No. 141 in Case No. 22-50592], (b) approved Genever US's hiring of Melanie Cyganowski as sales offer [Docket No. 142 in Case No. 22-50592], and (c) approved the retention of Sotheby's International Realty ("Sotheby") as the real estate broker for the Sherry Netherland Apartment. [Docket No. 168 in Case No. 22-50592].

20.    On December 12, 2023, following the transfer of the SDNY Bankruptcy Case, the Court, upon motion of the Trustee, Genever US, and Genever BVI, the Court entered an order [Docket No. 1425] extending the sale process for the Sherry Netherland Apartment and the retention of Sotheby as broker.  By consent of the parties, the sale process has been extended through April 30, 2024.

21.    On March 15, 2023, the Individual Debtor was arrested by federal law enforcement in the Sherry Netherland Apartment.  Later that same day, the March 15 Fire broke out in the Sherry Netherland Apartment and caused significant damage to an area of approximately 2,000 square feet of the apartment (the "Affected Area") and the property therein.

22.    On August 23, 2023, Genever US filed a motion [Docket No. 2113] (the "Remediation Motion") seeking authorization to obtain services necessary to remediate the damage to the Affected Area of the Sherry Netherland Apartment (the "Remediation Project"). The Remediation Motion sought authorization for Genever US to (a) enter into the Architect Agreement (as defined in the Remediation Motion) pursuant to which Acheson Doyle Partners Architects, P.C. ("Acheson Doyle") would provide critical services (the "Architectural Services") for the remediation of the Sherry Netherland Apartment; (b) select and hire contractors, engineers, consultants, and other third-party service providers in the ordinary course of the Remediation Project, including to hire (i) Gallagher Bassett Services, Inc., Technical Services Division ("GBTS") to conduct an asbestos survey in the Affected Area to assess the

extent of the asbestos exposure and (ii) ABF Environmental ("ABF") to handle the asbestos

removal; and (c) pay such contractors, engineers, consultants, and other third-party service

providers in the ordinary course of the Remediation Project (including as it relates to the removal

of asbestos).

23.     On September 8, 2023, Genever US filed a supplement [Docket No. 2183] (the

"Supplement") to the Remediation Motion additionally seeking authorization for (a) GBTS to

provide air monitoring and related services; (b) George Breslaw Plumbing, LLC ("Breslaw") to

connect a temporary shower for the asbestos removal work as well as disconnect and, upon

completion of the asbestos removal project reconnect radiators; and (c) GEM Contracting

Management LLC ("GEM") to provide related electrical services.

24.     On September 19, 2023, the Court entered the Remediation Order, granting the

Remediation Motion (as supplemented) and authorizing Genever US to commence the

Remediation Project.

25.     In accordance with the Remediation Order, on November 2, 2023, Genever US

filed its first monthly status report [Docket No. 2303] (the "First Monthly Status Report").  As

detailed in the report, the Remediation Projected (including the asbestos removal) has not yet

commenced, as Genever US is awaiting approval of its permit application to conduct the

asbestos abatement in the Affected Area.  Moreover, also as detailed in the First Monthly Status

Report, bids by general contractors to conduct the Remediation Project are due on November 17,

2023.

**III.    Alteration Agreement**

26.     Subject to approval of this Court, Genever US intends to enter into the Alteration

Agreement with Sherry Netherland.  Sherry Netherland has specific policies and procedures that

all shareholders must follow when making major and minor alterations to the apartments in the

building.  Thus, Genever US, as a shareholder, must enter into the Alteration Agreement with Sherry Netherland before moving forward with the Remediation Project.

27.     The chart below sets forth the material terms of the Alteration Agreement[8] between Genever US and Sherry Netherland:

| Provision | Summary Description |
|---|---|
| Initial Submissions (Alteration Agreement § 1) | Genever US agrees, before the Work begins, to provide certain items and documents and pay the nonrefundable fees and deposits detailed in the Initial Submissions Checklist, attached Exhibit A to the Alteration Agreement, which includes, among other things, a description and specifications of the Work to be done, detailed plans, proof of licensing of workers, proof of insurance, and execution of riders addressing certain specific circumstances to be included in the Alteration Agreement such as asbestos removal and lead-based paint hazards. |
| Release of Claims (Alteration Agreement § 2) | Genever US agrees to exculpate and not to make any claim against or seek to recover from Sherry Netherland, its directors, officers, or shareholders or Sherry Netherland's shareholders servants, agents, partners, guests, licensees, invitees, tenants or employees for any damage to persons or property by the perils within the scope of the insurance policies required in paragraph 1 of the Alteration Agreement, unless the loss is due solely to the negligence of such named parties, provided however that nothing in this paragraph, nor in the Alteration Agreement, shall indemnify or hold harmless Sherry Netherland against legal liability it might otherwise have for damage arising out of bodily injury to persons or damage to property contributed to or caused by or resulting from the negligence of Sherry Netherland, its agents, servants or employees, whether such negligence be in whole or in part. |
| Designation of Architect/Engineer; Retention of Professionals; Inspections and Storing of DOB and LPC Filings (Alteration Agreement § 3; Addendum § 2) | Pursuant to Section 2 of the Addendum, Sherry Netherland waives any architect fee that may otherwise be due under Section 3 of the Alteration Agreement.<br><br>If Sherry Netherland is required, or deems it wise, to seek legal, engineering, electrical, architectural or other advice relating to the Work or this Alteration Agreement, at any time and from time to time prior to or after granting permission for the Work to be performed, Genever US agrees to reimburse on demand all fees and disbursements incurred by Sherry Netherland with respect to the same, whether or not Sherry Netherland grants permission for performance of the Work. |
| Acceptance of Responsibility (Alteration Agreement § 4) | Genever US releases Sherry Netherland, its directors, officers, agents and employees from any liability for damage to the portions of the Sherry |

---

[8]     The terms of the Alteration Agreement are summarized herein for the convenience of the Court and parties in interest. To the extent that there are any discrepancies, the terms of the Alteration Agreement shall govern. Capitalized terms used in this summary that are not defined herein shall have the meanings ascribed to them in the Alteration Agreement.

| | Netherland Apartment affected by the Work which may occur in the performance of Building maintenance repairs. |
| --- | --- |
| | Genever US accepts sole responsibility for the Work and costs in connection with the maintenance, repair, restoration or replacement of the Work and any portions of the Sherry Netherland Apartment and the Building affected by the Work. |
| | Should Sherry Netherland at any time require the removal of any of the Work in order to gain access to a Building system or part of the Building to perform a repair or improvement, Genever US shall provide such access and will be responsible for the cost of providing the access and of restoring the Work after Sherry Netherland performs its Work. Genever US acknowledges and agrees that such responsibility shall pass to Genever US's successor-in-interest in the Sherry Netherland Apartment |
| Notice of Commencement/Letter to Neighbor (Alteration Agreement § 5) | Genever US shall give not less than ten (10) days written notice, setting forth the date Genever US plans to commence the Work and the duration of the Work to the Executive Office and Sherry Netherland and provide to the Executive Office an executed letter in the form of Exhibit "C" attached to the Alteration Agreement addressed to each of the shareholders or occupants in the apartments that are adjacent to and immediately above and below the Sherry Netherland Apartment (the "Adjacent Premises"). |
| | If the Work is not commenced within sixty (60) days of the execution of the Alteration Agreement, the consent granted therein shall become null and void. Genever US may request a reinstatement of such consent, in writing, and approval thereto may be granted or denied in Sherry Netherland's sole discretion |
| Damage to Building (Alteration Agreement § 6) | Any damage to any Adjacent Premises or other apartments or the common elements of the Building resulting directly or indirectly from the performance or existence of the Work shall be insured by Genever US's insurance coverage required hereunder or that of the Contractors. However, the existence of such insurance shall not relieve Genever US of liability hereunder. |
| | If Sherry Netherland advises of any damage which, in its opinion, was caused by the Work, Genever US shall either immediately cause the damage to be repaired or, at the option of the damaged party, submit any claim based on such damage immediately to the Genever US's insurance carrier and the insurance carrier of the Contractors without contest to the extent permitted by the insurance policies. |
| | In the event that the Contractors causes damage to any area of the Building, Sherry Netherland shall temporarily suspend the Work until the Contractor submits prompt payment to Sherry Netherland, in an amount reasonably estimated by Sherry Netherland, for any and all expenses incurred by Sherry Netherland due to such damage. |
| Costs Incurred (Alteration Agreement § 7) | All costs for labor, equipment and materials incurred by Sherry Netherland in connection with the Work, in Sherry Netherland's sole discretion, shall be charged to and paid for by Genever US as Additional Rent, including overtime rates, if utilized. Any such charges shall be billed monthly and paid within ten (10) days of billing. |

| | |
|---|---|
| Assumption of Risk (Alteration Agreement § 8) | Genever US assumes all risk of damage to the Building and its mechanical, electrical, plumbing, ventilation (shafts and components), and fire protection systems, and to persons and property in the Building which may result from or be attributable to the performance or existence of the Work and all responsibility for the maintenance, repair and replacement of any alterations and installations during and after completion of the Work.<br><br>Sherry Netherland is not responsible for any failure of performance of Building services to the Sherry Netherland Apartment as a result of the Work. If the operations of the Building, or any of the foregoing equipment, is adversely affected by the Work, Genever US shall promptly correct the cause of the problem. If, in Sherry Netherland's sole discretion, Genever US does not promptly correct the problem, Sherry Netherland may have the problem corrected and Genever US shall be liable for all costs and expenses incurred therein, including any legal fees or other professional fees incurred by Sherry Netherland. |
| Days and Hours of Work (Alteration Agreement § 9) | The Work may be performed Monday through Friday only between the hours of 8:00 a.m. and 4:30 p.m. and shall not be performed on the weekends, legal holidays or between December 24 and January 2. |
| Conduct of Work; Status Report (Alteration Agreement § 10) | All Work shall be confined to the Sherry Netherland Apartment and done in a competent and workmen-like manner and in such a manner and at such times so as to minimize disturbance to other occupants of the Building or the operation of the Building's services. The Work shall be discontinued immediately should Sherry Netherland deem that it is creating a disturbance to other occupants of the Building.<br><br>The Sherry Netherland may direct Genever US or Contractors to take any action or cease any action based on the Alteration Agreement or as necessary.<br><br>Genever US shall prepare a monthly detailed written report describing the status of the Work and shall submit same to the Executive Office.<br><br>In the event that Sherry Netherland determines, in its sole discretion, that Genever US and/or the Contractors are not providing adequate supervision for the Work, Sherry Netherland may provide such supervision at Genever US's sole cost and expense. |
| Completion of Work; Fees (Alteration Agreement § 14; Addendum § 2) | Completion of Work: Genever US shall use best efforts to ensure that the proposed Work is completed expeditiously, but in any event all Work shall be completed within an aggregate of 170 business days from the date of commencement of the Work, or such other period as Sherry Netherland, in writing, designates (the "Completion Date").<br><br>If Genever US desires additional time to complete the Work, it shall at least five (5) working days before the expiration of the Completion Date, advise Sherry Netherland of the number of consecutive additional days being requested to complete the Work following the Completion Date and, if Sherry Netherland, in its sole discretion consents to an extension of the Completion Date, Genever US shall pay to Sherry Netherland the sum of $500 per day as consideration for each of the first fifteen (15) of such additional working days that the Completion Date is extended and $1,000 per day for the 16th working day and each day thereafter that the Completion |

| | |
|---|---|
| | Date is so extended provided, unless Sherry Netherland's Executive Office and architect determine otherwise.<br><br>Pursuant to Section 2.b of the Addendum, Sherry Netherland waives the fees under Section 14(a) of the Alteration Agreement.<br><br>Use of Facilities Fees: Pursuant to Section 2.c of the Addendum, Sherry Netherland waives the use-of-facilities fee under Section 14(b) of the Alteration Agreement.<br><br>Close-out Fee: Forty (40) days after the Work has been completed, as determined by Sherry Netherland, if Genever US has not submitted the required close-out documents as provided for in paragraph 32 of the Alteration Agreement, Genever US shall pay to Sherry Netherland a fee of $2,000 for each calendar month or portion thereof that such close-out documents have not been submitted to the Executive Office. |
| No Interference with Building Systems (Alteration Agreement § 15) | Genever US will not interfere or permit interference with the Building's intercommunication, gas, heating, electric systems or any other Building system or service.<br><br>The Work will not alter or relocate the main plumbing and heating lines without Sherry Netherland's prior written consent. No gas lines outside the Sherry Netherland Apartment may be moved or shut down. |
| Indemnification and Legal Fees (Alteration Agreement § 22; Addendum § 4) | Indemnification: Genever US agrees to defend, indemnify and hold harmless Sherry Netherland, its directors, officers, shareholders, consultants and Sherry Netherland's shareholders' agents, partners, servants, employees, tenants, guests, licensees, invitees, and all other occupants of the Building (each, an "Indemnified Party" and collectively, the "Indemnified Parties") from and against any and all claims, damages, expenses (including reasonable attorneys' fees and expenses) -- whether made by Genever US, Sherry Netherland or a third party -- suffered by persons or property as a result of or in any way related to: (i) the Work to the Sherry Netherland Apartment or its adverse impact on the comfortable occupancy of other apartments in the Building; (ii) Genever US's failure to comply with its obligations hereunder (including without limitation the obligation to repair and maintain the Work); (iii) Genever US's failure to perform the Work in accordance with the approved plans and specifications and the terms and conditions contained herein, unless caused solely by the negligence of the Indemnified Parties, and/or (iv) Genever US's filing of required forms, and for any and all liabilities arising therefrom or incurred in connection therewith.<br><br>Nothing in the Alteration Agreement, shall indemnify or hold harmless Sherry Netherland against legal liability it may otherwise have for damage arising out of bodily injury to persons or damage to property contributed to or caused by or resulting from the negligence of Sherry Netherland, its agents, servants or employees whether such negligence be in whole or in part. This indemnification shall survive the completion of the Work.<br><br>Legal Fees: Genever US shall indemnify the Indemnified Parties for all legal and other professional fees and disbursements incurred by them (i) due wholly or in part to this Alteration Agreement and/or the Work to be performed under the Alteration Agreement, including but not limited to, Genever US's breach or alleged breach of this Alteration Agreement or (ii) |

| | |
|---|---|
| | in any action or proceeding between Genever US and such Indemnified Party which relates to this Alteration Agreement and/or the Work to be performed under the Alteration Agreement. This indemnification shall survive the completion of the Work.<br><br>The foregoing provisions are subject to the protections set forth in paragraphs 3, 4, and 5 of the Proposed Order. |
| Payment of Fines (Alteration Agreement § 26) | Genever US authorizes Sherry Netherland to pay from the deposit held by Sherry Netherland pursuant to paragraph 28 of the Alteration Agreement any sanitation or other fines which may be assessed against Sherry Netherland by any government instrumentality by reason of Genever US's materials or rubbish, or for any other reason. |
| Security Deposit (Alteration Agreement § 28; Addendum § 2) | Genever US shall deliver to Sherry Netherland a check in an amount equal to $50,000, as a condition for its approval, the proceeds of which may be deposited by Sherry Netherland upon its acceptance of the Alteration Agreement.<br><br>If the deposit is diminished by one-half of the original amount, Genever US shall replenish it to the full amount within three (3) days after Sherry Netherland's demand. Genever US agrees that Sherry Netherland may use, apply or retain the whole or any part of the security so deposited to the extent required or permitted hereunder.<br><br>If Genever US complies with all of the terms and conditions of the Alteration Agreement, the security deposit or remaining balance thereof shall be promptly returned to Genever US. |
| Required Work (Alteration Agreement § 30) | Genever US shall, at its own sole cost and expense, perform the following as part of the Work: (a) to install acoustical attenuation and sound proofing materials in and under new or suspended ceilings and within new floors and/or walls in the Sherry Netherland Apartment, as specified and directed by Sherry Netherland's reviewing architect in his sole and absolute discretion; and (b) the Work involves disturbance or replacement of interior finishes at exterior walls, to expose the back-up masonry and existing damp-proofing and/or waterproofing materials and, prior to restoration or replacement of such interior finishes, restore or provide such new materials as are necessary to achieve a sound damp-proof and water-proof condition. |
| Apartment Transfers (Alteration Agreement § 30) | If, after making any alterations or installing any equipment pursuant to the Work, Genever US shall seek to transfer Sherry Netherland's shares allocated to the Sherry Netherland Apartment and the proprietary lease appurtenant thereto, as a condition prior thereto, Genever US shall provide Sherry Netherland with an agreement by Genever US's transferee in the form of Exhibit D annexed to the Alteration Agreement pursuant to which such transferee agrees to assume all of Genever US's obligations hereunder, including Genever US's continuing obligations and understandings expressed in the Alteration Agreement. |
| Payment of Expenses; Discharge of Mechanics' Liens (Alteration Agreement § 31) | Genever US will bear the entire cost of alterations and installations and pay all bills incurred in connection therewith, not later than thirty (30) days after completion of the Work.<br><br>If any mechanic's liens are filed for Work claimed to have been done or materials alleged to have been supplied, Genever US shall cause such liens |

| | |
|---|---|
| | to be discharged of record within ten (10) days after such filing. If Genever US fails to do so, Sherry Netherland may exercise any and all of its rights and remedies under the Lease or the Alteration Agreement.<br><br>If Genever US fails to timely make such payment, such sums shall be deemed to be and paid as Additional Rent under the Lease. Sherry Netherland may also exercise all of its rights and remedies under the Lease. |
| Close-Out of Work Permit; Amendment to Certificate of Occupancy (Alteration Agreement § 32) | Within forty (40) business days after the completion of the Work, Genever US will deliver to Sherry Netherland an amended certificate of occupancy and a certificate of the Board of Fire Underwriters, if either be required, and such other proof as may be necessary to demonstrate that all Work has been done in accordance with all applicable laws, ordinances and government regulations. If an amended certificate of occupancy or certificate of the Board of Fire Underwriters or sign off or close-out documentation from the New York City Bureau of Electrical Control is not required, Genever US's architect must submit a statement to that effect. |
| No Opinion; No Reliance (Alteration Agreement § 33) | Sherry Netherland does not profess to express any opinion as to the design, feasibility, cost or efficiency of the Work. In no event shall any approval or consent granted hereunder be construed to relieve Genever US from any responsibility or obligation contained herein or impose any liability on Sherry Netherland with respect to the Work or Genever US's LPC or DOB filings.<br><br>No reliance may be placed by Genever US on Sherry Netherland's architect designated pursuant to paragraph 3 of the Alteration Agreement with regard to the design, cost, feasibility, compliance with applicable laws or Building codes, efficiency of the Work or Genever US's obligations. |
| Failure to Comply (Alteration Agreement § 34) | Genever US's failure to comply with any of the provisions hereof or the directions or requirements issued by Sherry Netherland's consulting Architect or any other designee shall be deemed a breach of the provisions of the Lease, pursuant to which Sherry Netherland's consent to the Work has been granted, and, in addition to all other rights, Sherry Netherland may suspend all Work. In such event, Sherry Netherland may also revoke its permission for Genever US to undertake the alteration Work. |
| Correction of Work (Alteration Agreement § 35) | Genever US shall promptly correct all Work rejected by Sherry Netherland as (a) defective, (b) failing to conform to the Alteration Agreement or the approved Work, Genever US's LPC and/or DOB filings authorized by Sherry Netherland, or (c) creating any violation of any policy of any insurance carrier, whether or not such Work is fabricated, installed or completed.<br><br>Genever US shall bear all costs of correcting such rejected Work, including compensation for the additional services of any architect, engineer, lawyer or other consultant engaged by Sherry Netherland pursuant to the terms hereof or made reasonable and necessary thereby, which shall be treated as Additional Rent under the Lease. |
| Release and Waiver of Claims (Alteration Agreement § 36) | Genever US releases Sherry Netherlad, its directors, officers, agents, employees and shareholders, from any and all liability for loss or damage to any of Genever US's property which may result from or be in any way connected with the Work, provided however that nothing in this paragraph, nor in the Alteration Agreement, shall indemnify or hold harmless Sherry |

| | Netherland against legal liability it might otherwise have for damage arising out of bodily injury to persons or damage to property contributed to or caused by or resulting from the negligence of Sherry Netherland, its agents, servants or employees, whether such negligence be in whole or in part.<br><br>Genever US waives any claims which it may now or hereafter have against Sherry Netherland and its respective former, current and future directors, officers, employees, agents and shareholders based upon the interruption or suspension of the Work by the Sherry Netherland regardless of the reason for such interruption or suspension. |
|---|---|
| Additional Rent (Alteration Agreement § 37) | All amounts, fees, penalties and expenses incurred by Sherry Netherland and/or required to be paid by Genever US pursuant to the Alteration Agreement shall be considered Additional Rent pursuant to the Lease. |
| Payment of Fees and Consideration (Alteration Agreement § 50) | Upon commencement of the Work, Genever US releases Sherry Netherland from any claims for or in any way related to Genever US's payment of fees, deposits or other monies paid or payable hereunder. |
| No Other Fees or Gratuities (Alteration Agreement § 51) | Except as provided for herein, no other fees (and no gratuities and/or other payments) are required or expected to be paid to Sherry Netherland its employees or agents in connection with the performance or approval of the Work. |
| Proprietary Lease (Alteration Agreement § 54) | The terms and conditions of the Alteration Agreement shall not relieve Genever US of any obligation under the Lease for the Sherry Netherland Apartment or Sherry Netherland's By-Laws and House Rules. |
| No Personal Liability of the Corporation's Officers, Directors or Agents (Alteration Agreement § 55) | Sherry Netherland's current, past and future officers, directors or agents, in their capacity as such, shall have no personal liability to Genever US for damages for any alleged breach of duty to Genever US in connection with or in any way related to the Work or the Alteration Agreement. |

28.     In connection with the indemnification obligations, the Proposed Order will incorporate a procedural safeguard requiring that any request for indemnification during the pendency of Genever US's chapter 11 case will be brought before this Court and will be subject to the approval of this Court.  Moreover, in no event will any Indemnified Party be indemnified in the case of gross negligence or willful misconduct.

29.     The Proposed Order contains the same indemnification provisions as this Court has previously approved in connection with the retention of Epiq Corporate Restructuring, LLC and Kroll, LLC.  *See* Docket Nos. 1449, 2241.

30.     Finally, as detailed in the Addendum, Sherry Netherland and Genever US have agreed that this Court has exclusive jurisdiction over any action or proceeding arising out of or in any way connected with the Addendum and the Alteration Agreement.

## RELIEF REQUESTED

31.     By this Motion, Genever US seeks entry of the Proposed Order, approving and authorizing Genever US to enter into, and perform under, the Alteration Agreement with Sherry Netherland.

## BASIS FOR RELIEF

32.     Section 363(b)(1) of the Bankruptcy Code provides in pertinent part, that a debtor in possession, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

33.     Genever US's primary objective is to rent and/or sell the Sherry Netherland Apartment in a value-maximizing transaction.  As the Court is aware, Sherry Netherland Apartment is effectively unmarketable in its present condition due to the damage caused therein by the March 15 Fire.  For this reason, the Court approved and authorized the Remediation Project to remediate the damage to the Affected Area and restore the Sherry Netherland Apartment to marketable condition.  An integral component of the Remediation Project is

compliance with Sherry Netherland's rules regarding alteration of the Sherry Netherland Apartment. Sherry Netherland, which functions as a cooperative apartment complex and luxury hotel, is a landmark building subject to numerous federal, state and local regulations. Sherry Netherland thus requires all shareholders follow certain procedures in altering their apartment to comply with these regulations while also protecting its occupants. Genever US acknowledged in Section 3.16 of the Proprietary Lease that Sherry Netherland's consent was required before making alterations to the Sherry Netherland Apartment.[9] Thus, as previewed in the Remediation Motion, Genever US has little choice but to enter into the Alteration Agreement with Sherry Netherland to proceed with the Remediation Project.

34.     Sherry Netherland has informed Genever US that it cannot commence the Remediation Project or otherwise alter the Sherry Netherland Apartment in any manner if Genever US does not enter into the Alteration Agreement. The Alteration Agreement is the standard agreement Sherry Netherland requires shareholders execute and Sherry Netherland will not accept any modifications. If Genever US does not enter into the Alteration Agreement, that means it will be unable to remediate the damage from the March 15 Fire and ultimately cannot sell/rent the Sherry Netherland Apartment to create value for its creditors. Thus, it is critical Genever US enter into the Alteration Agreement with Sherry Netherland.

35.     As detailed above and in the Alteration Agreement, Genever US and Sherry Netherland have agreed to certain procedures and allocation of responsibility as it relates to the Remediation Project. Under the terms of the Alteration Agreement, Genever US has also agreed to indemnify, defend, and hold harmless Sherry Netherland and its directors, officers,

---

[9]     As noted, the fact that Genever is not pressing the argument that it need not comply with its obligations under a prepetition lease shall not be construed as an acknowledgement that Genever US must comply with the provisions of the Proprietary Lease or any other prepetition contract or lease. Genever US reserves all rights in this regard.

shareholders, consultants and its shareholders' agents, partners, servants, employees, tenants,

guests, licensees, invitees, and all other occupants of the apartment complex, and against any and

all claims, damages, expenses (including reasonable attorneys' fees and expenses) under certain

circumstances specified in the Alteration Agreement.    However, nothing in the Alteration

Agreement, shall indemnify Sherry Netherland against legal liability it may otherwise have for

damage arising out of bodily injury to persons or damage to property contributed to or caused by

or resulting from the negligence of Sherry Netherland, its agents, servants or employees whether

such negligence be in whole or in part.  Importantly, the Proposed Order will require that any

request for indemnification during the pendency of Genever US's chapter 11 case be brought

before this Court and will be subject to the approval of this Court.  Moreover, in no event will

the Indemnified Parties be indemnified in the case of gross negligence or willful misconduct.

36.    Finally, as noted, the Sherry Netherland has agreed to reduce the security deposit

from $100,000 to $50,000, as well as waive certain of the fees that would otherwise be required

under its standard form of alteration agreement.  In particular, the Sherry Netherland has agreed

to waive:

    a.  The architect fee (in the amount of approximately $1,500 to
$3,500);[10]

    b.  Any fees related to an extension of the Completion Date (in the
amount of $500 or $1,000 per day);[11] and

    c.  The monthly use-of-facilities fees (in the amount of $2,212.50
per month).[12]

---

[10]   *See* Addendum § 2.a.

[11]   *See id.* § 2.b.

[12]   *See id.* § 2.c.

37.    For all these reasons, Genever US has determined in its business judgment that entry into the Alteration Agreement is necessary for Genever US to commence the Remediation Project and ultimately sell the Sherry Netherland Apartment in a value-maximizing transaction.

### WAIVER OF BANKRUPTCY RULE 6004(h)

38.    Genever US requests a waiver of the fourteen-day stay requirements under Bankruptcy Rule 6004(h), such that the Proposed Order be effective immediately upon entry thereof.  For all the reasons set forth above, it is critical to begin remediating the Sherry Netherland Apartment as soon as possible to facilitate a value-maximizing transaction for the benefit of Genever US's estate, which is conditioned on Genever US's entry into the Alteration Agreement.

[*Remainder of page intentionally left blank.*]

WHEREFORE, for the foregoing reasons, Genever US respectfully requests that the

Court enter the Proposed Order granting the relief requested herein.

Dated: November 8, 2023
      New York, New York

GENEVER HOLDINGS LLC

By: */s/ Luc A. Despins*
Luc A. Despins (admitted *pro hac vice*)
G. Alexander Bongartz (admitted *pro hac vice*)
Douglass Barron (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
lucdespins@paulhastings.com
alexbongartz@paulhastings.com
douglassbarron@paulhastings.com

    *and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

    *and*

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for Genever Holdings LLC*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                    :

In re:                          :    Chapter 11
                                      :

HO WAN KWOK, *et al.*,[1]      :    Case No. 22-50073 (JAM)
                                      :

         Debtors.         :    (Jointly Administered)
                                      :
-------------------------------------------------------x

## <u>NOTICE OF CONTESTED MATTER RESPONSE DATE</u>

Genever Holdings LLC (the "<u>Debtor</u>" or "<u>Genever US</u>") has filed its *Motion, Pursuant to Bankruptcy Code Section 363(b), for Entry of Order Authorizing Genever Holdings LLC to Enter Into, and Perform Under, Alteration Agreement with Sherry Netherland, Inc. to Remediate Areas of the Sherry Netherland Apartment Affected by March 15, 2023 Fire* (the "<u>Contested Matter</u>") with the United States Bankruptcy Court for the District of Connecticut.  Notice is hereby given that any response to the Contested Matter must be filed with the Court no later than **November 29, 2023**, in accordance with Federal Rules of Bankruptcy Procedure 2002(a) and 9014.[2]  In the absence of a timely filed response, the proposed order in the Contested Matter may enter without further notice and hearing.  *See* 11 U.S.C. § 102(1).

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three days are added after the response date set in this notice.

Dated: November 8, 2023
      New York, New York

GENEVER HOLDINGS LLC

By: */s/ Luc A. Despins*
Luc A. Despins (admitted *pro hac vice*)
G. Alexander Bongartz (admitted *pro hac vice*)
Douglass Barron (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
lucdespins@paulhastings.com
alexbongartz@paulhastings.com
douglassbarron@paulhastings.com

    *and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

    *and*

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for Genever Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

--------------------------------------------------------x
                                         :

In re:                                :    Chapter 11
                                           :
HO WAN KWOK, *et al.*,[1]         :    Case No. 22-50073 (JAM)
                                           :
             Debtors.          :    (Jointly Administered)
                                           :
--------------------------------------------------------x

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 8, 2023, the foregoing Motion was electronically filed. Notice of this filing was sent by e-mail to all parties to the above-captioned chapter 11 case by operation of the Court's electronic filing ("CM/ECF") system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Dated:     November 8, 2023              By: */s/ G. Alexander Bongartz*
           New York, New York             G. Alexander Bongartz (admitted *pro hac vice*)
                                        PAUL HASTINGS LLP
                                         200 Park Avenue
                                         New York, New York 10166
                                         (212) 318-6079
                                         alexbongartz@paulhastings.com

                                         *Counsel for Genever Holdings LLC*

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## **EXHIBIT 1**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                       :

In re:                     :     Chapter 11
                       :

HO WAN KWOK, *et al.*,[1]    :     Case No. 22-50073 (JAM)
                       :

         Debtors.       :     (Jointly Administered)
                       :
-------------------------------------------------------x

**ORDER, PURSUANT TO BANKRUPTCY CODE SECTION 363(b), AUTHORIZING**
**GENEVER HOLDINGS LLC TO ENTER INTO, AND PERFORM UNDER,**
**ALTERATION AGREEMENT WITH SHERRY NETHERLAND, INC.**

Upon the motion (the "Motion")[2] of debtor Genever Holdings LLC ("Genever US"), for

an order (this "Order") authorizing Genever US to enter into the Alteration Agreement with

Sherry Netherland as further detailed in the Motion; and the Court having reviewed the Motion

and having considered the statements of counsel before the Court at a hearing held on _____,

2023 (the "Hearing"); and the Court having found that (a) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b); (c) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) good and

sufficient notice of the Motion having been given; and no other or further notice being required;

and the Court having found that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and it appearing that the relief requested

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

by the Motion, as modified by the terms of this Order is in the best interest of Genever US's

estate and creditors; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      Genever US is authorized to enter into, and perform under, the Alteration

Agreement with Sherry Netherland including payment of fees and expense.

3.      The Indemnified Parties shall be entitled to indemnification to the extent required

under the terms of the Alteration Agreement, as modified pursuant to this Order; *provided* that

any request for indemnification by the Indemnified Parties shall be subject to review by the

Court as set forth herein to ensure that payment of such indemnity conforms to the terms of the

Alteration Agreement, as modified pursuant to this Order, and is reasonable under the

circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*,

that in no event shall the Indemnified Parties be indemnified in the case of gross negligence or

willful misconduct.

4.      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in

these chapter 11 cases (that order having become a final order no longer subject to appeal), or (ii)

the entry of an order closing these chapter 11 cases, any Indemnified Party believes that it is

entitled to the payment of any amounts by Genever US on account of its indemnification

obligations under the Alteration Agreement, as modified pursuant to this Order, the Indemnified

Party must file an application therefor in the Court, and Genever US may not pay any such

amounts to the Indemnified Parties before the entry of an order by this Court approving the

payment.  With respect to any amounts sought by any Indemnified Party as reimbursement for

attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Alteration Agreement, as modified by this Order, the invoices and supporting time records for the attorneys' fees and expenses shall be included in the Indemnified Party's application to the Court and these invoices and time records shall be subject to the Amended Guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the obligation to indemnify the Indemnified Parties.  All parties in interest shall retain the right to object to any demand by the Indemnified Parties for indemnification, contribution, or reimbursement.

5.      The Indemnified Parties shall not be entitled to reimbursement by Genever US for any fees, disbursements and other charges of the Indemnified Parties' counsel other than those incurred in connection with a request of the Indemnified Parties for payment of indemnity approved by the Court.

6.      Notwithstanding the provisions of Bankruptcy Rule 6004(h) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply.

7.      Genever US is authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

3

8.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## EXHIBIT 2

**Alteration Agreement**

**THE SHERRY-NETHERLAND, INC.**
**781 FIFTH AVENUE**
**NEW YORK, NEW YORK 10022**

TO:          Shareholders

FROM:     The Board of Directors

### IMPORTANT NOTICE REGARDING APARTMENT ALTERATIONS

The Board of Directors has adopted new policies and procedures to be followed by shareholders when making major and minor alterations in apartments.

In formulating these policies and procedures, the goal of the Board of Directors has been to enable shareholders to exercise their individual tastes within their apartments while, at the same time, minimizing the disruption to building services and facilities and protecting the safety, comfort and privacy of fellow residents.

The Sherry-Netherland, as a "landmark" building, a co-operative apartment house and a luxury hotel, is a unique building. In addition to the normal New York City Buildings Department ("DOB") oversight, we are subject to a high level of regulation and scrutiny from various federal, state and local agencies.  Contractual obligations require us to be sensitive to labor and union issues.  In order to preserve our unique status, it is essential that our policies and procedures be followed.

We have worked closely with the Corporation's counsel and architect, as well as management, to develop a set of policies and procedures that reflects our special environment and shareholder concerns from past experiences in the building.

Among other things, we require shareholders to ensure that, before commencing alterations, all appropriate permits and approvals have been obtained from the agencies having jurisdiction, including the New York City Department of Buildings and Landmarks Preservation Commission ("LPC").  We also require that architects be engaged to plan and review the Work. To comply with the Corporation's  collective bargaining agreement, Contractors must utilize only union laborers.

To minimize inconvenience to other shareholders, we have provided that Work may only be done during specific hours and days.  We have also included regulations regarding demolition work; the use of freight elevators, the protection of hallways and the removal of debris.  The agreement also contains provisions which are designed to prevent interference with the building's heating, electrical and plumbing systems.

We have also developed Riders addressing certain specific circumstances to be included in the Alteration Agreement when the Corporation determines it to be necessary.  These deal with such issues as asbestos removal, lead-based paint hazards, and alterations impacting on the building's façade, systems and certificate of occupancy.  Based upon the scope of the Work

1

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

shown in the Alteration Application, the Corporation will determine which Riders to the Alteration Agreement are appropriate.  An Apartment Alteration Agreement, including all designated riders, must be signed by the Shareholder and the President or Executive Vice President of the Corporation and the Shareholder must deliver to the Executive Office the required security deposit, documents and non-refundable fees detailed in Rider 1 to the Apartment Alteration Agreement before any alteration Work is commenced.

The Corporation's architect will review plans and inspect alterations to the extent necessary to determine that the Work is proceeding in conformity with our policies, approved plans and authorized DOB Work Permits.  The architect's fees will be charged at the architect's regular hourly rate to a shareholder for these services, which amount will typically range from $1,500 to $3,500, depending on the scope of the alterations.  The Corporation expects Shareholders who are performing alterations to understand that for the benefit of the general shareholder community as well as the Shareholder performing alterations, the Corporation's architect is Corporation's designated representative and the final arbiter with regard to the manner in which apartment alterations are to be performed.  Also, the Corporation will charge the Shareholder a management processing fee in the amount of $1,500 to cover the increase in administrative costs during the Work

Whenever a shareholder proposes to make alterations, an Alteration Application, including complete plans, specifications and architect's Working drawings and a "layman's" description of the Work to be performed, must be submitted to the Corporation.  Probes in the ceiling, walls or floors of an apartment prior to submission of an Alteration Application and Agreement by a Shareholder will not be permitted without the express written consent of the Board of Directors of the Corporation and review by an architect or engineer on behalf of the Corporation, all at the Shareholder's expense.  The Corporation does not consider the installation of wall-to-wall carpeting, wall-papering, painting, minor repairs and redecorating to be alteration Work, but all shareholders will be required to enter into a separate Minor Alteration Agreement prior to undertaking Work of this nature.  A reasonable security deposit will be required, the amount of which will depend on the scope of the project.

An Alteration Application for consent to a proposed alteration must be submitted to the Executive Office and will be processed in the order received.  No construction contract should be signed, alteration Work scheduled nor a NYC Department of Buildings ("DOB") application for a Work Permit submitted to the DOB or filings made with the Landmarks Preservation Commission ("LPC"), until the formal written approval of the Corporation with respect to the proposed Work and authorization for the Shareholder to file for a DOB Work Permit have been received.  The amount of time a Shareholder will be granted to perform the alteration will depend upon the scope of the alteration to be performed.  Authorization for alterations and LPC, DOB and LPC filings may be granted only by the Board of Directors of the Sherry-Netherland; no employee of or consultant to the Corporation has the power or authority to do so.

The Corporation's reviewing architect will determine whether to meet with a Shareholder planning an alteration prior to the review of plans in order to discuss the scope of Work and

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

procedures to be followed.  A further meeting may be required once plans have been submitted. If appropriate, the Shareholder's architect, engineer, and/or contractors should attend these planning meetings.  Any questions concerning a proposed alteration should be submitted to the Executive Office, in writing.

The Shareholder must strictly adhere to the terms and conditions of the Apartment Alteration Agreement or Decorating Agreement, as the case may be.  Any present or prospective Shareholder who is contemplating an alteration should obtain a copy of the Apartment Alteration Application, the Apartment Alteration Agreement from the Executive Office.

**Shareholders are strongly encouraged to give a copy of the Agreement to their architect for consideration before the architect begins preparation of plans, specifications, and drawings.**

September, 2013

3

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

**APARTMENT THE SHERRY-NETHERLAND, INC.**
**ALTERATION APPLICATION**
**781 FIFTH AVENUE**
**NEW YORK, NEW YORK  10022**

*** *SUBMIT IN TRIPLICATE TO  THE SHERRY-NETHERLAND, INC., Attention Executive Office, 781 Fifth Avenue, New York, New York 10022* ***

Name:  _____

Apartment Number: _____    Fax Number:  _____

Present Residence (if Shareholder(s) are not occupying the apartment):_____
_____

Home Phone: _____    Work Phone: _____    Email Address: _____

Requested Commencement Date for Work: _____

Apartment Numbers and Names of Four (4) Neighbors (immediately above, below and adjacent to Shareholder's Apartment)._____

Plans and Specifications of _____ pages attached.  This request cannot be processed unless plans and specifications are attached (include all architect's drawings).

Room-by-room description of proposed
alteration Work: _____
_____
_____

(Attach additional pages if necessary)

NO ALTERATION WORK CAN BE COMMENCED UNLESS AND UNTIL AN APARTMENT ALTERATION AGREEMENT SATISFACTORY TO THE CORPORATION HAS BEEN EXECUTED BY THE SHAREHOLDER AND BY THE PRESIDENT OR EXECUTIVE VICE PRESIDENT OF THE CORPORATION, THE SHAREHOLDER HAS FULLY COMPLIED WITH ALL THE TERMS OF SUCH APARTMENT ALTERATION AGREEMENT REQUIRED TO BE COMPLIED WITH BEFORE COMMENCEMENT OF THE WORK, AND THE SHAREHOLDER HAS MADE ALL REQUIRED FILINGS FOR WORK PERMITS WITH THE DOB AND LPC AS ARE AUTHORIZED IN WRITING BY THE CORPORATION AND SAME HAVE BEEN ISSUED.

_____
Shareholder

_____         Date: _____
Shareholder

4

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

# INDEX

**Paragraph**                                                                                                          **Page**

1.   Initial Submissions ................................................................................................1
2.   Release of Claims .................................................................................................7
3.   Designation of Architect/Engineer; Retention of Professionals; Inspections and
     Monitoring of DOB and LPC Shareholder Filings ..............................................7
4.   Acceptance of Responsibility .................................................................................9
5.   Notice of Commencement/Letter to Neighbor .......................................................9
6.   Damage to Building ...............................................................................................9
7.   Costs Incurred ......................................................................................................10
8.   Assumption of Risk ..............................................................................................10
9.   Days and Hours of Work ......................................................................................10
10.  Conduct of Work; Status Report ..........................................................................11
11.  Floor Surfaces; Dust Infiltration and Containment; Cleaning of Areas ............11
12.  Access to Apartment ............................................................................................12
13.  Location of Risers and Lines ...............................................................................12
14.  Completion of Work; Fees ...................................................................................12
15.  No Interference With Building Systems ...............................................................14
16.  Use of Power Tools ..............................................................................................15
17.  No Deviation from Approved Plans and Shareholder's Authorized DOB and LPC
     Filings .................................................................................................................15
18.  Quality of Work and Materials Used ...................................................................15
19.  Safety:  Installation of Smoke and Carbon Monoxide Detectors; Window Guards ..........15
20.  Access to Fire Exit ...............................................................................................15
21.  No Violation of Law; Insurance Policies .............................................................16
22.  Indemnification and Legal Fees ...........................................................................16
23.  Shutdowns of Building Systems ...........................................................................17
24.  Removal of Rubbish; Deliveries ..........................................................................17
25.  Storage of Materials .............................................................................................18
26.  Payment of Fines ..................................................................................................18
27.  Use of Service Elevators ......................................................................................18
28.  Security Deposit ...................................................................................................18
29.  Required Work ......................................................................................................20
30.  Apartment Transfers .............................................................................................20
31.  Payment of Expenses; Discharge of Mechanics' Liens ......................................20
32.  Close-Out of Work Permit; Amendment to Certificate of Occupancy ...............21
33.  No Opinion; No Reliance ......................................................................................21
34.  Failure to Comply ................................................................................................22
35.  Correction of Work ..............................................................................................22
36.  Release and Waiver of Claims .............................................................................22
37.  Additional Rent ....................................................................................................23
38.  Security Procedures ..............................................................................................23

5

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

39. Conduct of Workers.................................................................................................23
40. No Amendment; No Assignment.............................................................................23
41. Agreement Not Binding...........................................................................................23
42. No Waiver.................................................................................................................24
43. New York Law.........................................................................................................24
44. Entire Agreement.....................................................................................................24
45. Severability..............................................................................................................24
46. Completed Alteration...............................................................................................24
47. Notices ....................................................................................................................24
48. Headings ..................................................................................................................25
49. Contractor Licensing...............................................................................................25
50. Payment of Fees and Consideration........................................................................25
51. No Other Fees or Gratuities ....................................................................................25
52. No Third-Party Beneficiaries ..................................................................................25
53. Waiver of Jury Trial.................................................................................................25
54. Proprietary Lease.....................................................................................................25
55. No Personal Liability of the Corporation's Officers, Directors or Agents .......................25

6

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

## INDEX OF EXHIBITS

**EXHIBIT A:   Checklist of Initial and Continuing Shareholder Submissions**
  -Documents and fees to be submitted (or paid) before the Work can commence, and thereafter.

**EXHIBIT B:   Contractor Indemnification and Representation Letter**
  -Letter from Contractor indemnifying Corporation, Corporation's employees, shareholders and guests

**EXHIBIT C:   Letter to Neighboring Shareholders**
  -Letter from shareholder performing alteration to neighboring shareholders informing them of alteration and indemnifying them for damage

**EXHIBIT D:   Assumption of Responsibility for Alterations and Alteration Agreement**
  -Agreement from shareholder's transferee to assume all of the shareholders obligations under the Alteration Agreement

**EXHIBIT E:   Contractor Insurance Endorsement**
  -Form of insurance endorsement to be obtained from all Contractors and Subcontractors

**EXHIBIT F:   Shareholder Indemnification and Representation Letter – NYC DOB Requirements, Including Forms PWI and PW3; LPC Filings**
  -Agreement from Shareholder to make all required filings and submissions to NYC DOB, as owner/applicant of the Apartment, and to LPC, with the Corporation as owner of the Building, and to indemnify the Corporation, its directors, officers, agents and employees in connection with same

## INDEX OF RIDERS

**RIDER 1:   Initial Architectural Submissions**
  -Required architectural drawings

**RIDER 2:   Condition of Adjacent Premises**
  -Use for any major alteration, especially those involving demolition or extensive Work on "party" walls

**RIDER 3:   Asbestos**
  -Use for any major alteration, especially those involving demolition, removal, relocation or alteration of walls, ceilings, floors or electrical, heating, ventilation, plumbing or air conditioning systems

**RIDER 4:   Lead Based Paint/Dust and Debris Containment – Use of EPA Certified Contractors and Workers**

7

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

-Use with any alteration which would disturb or in any way affect the paint on the walls, ceilings, doors, windows, trim and jambs, and/or wood work in the apartment.

**RIDER 5:        Demolition**
-Use for any alteration involving demolition

**RIDER 6:        Location of Rooms/Construction of Interior Walls/Flooring/Ceilings**
-Use when the alteration involves changes in uses of rooms, replacement of flooring and/or construction of new interior walls and/or ceilings

**RIDER 7:        Amended Certificate of Occupancy**
-Use when the number of rooms in an apartment will be changed or apartments will be combined or divided, except as exempted under Department of Buildings TPPN #3 of 1997

**RIDER 8:        Alterations Visible from Exterior/Replacement of Windows/Air Conditioning Systems**
-Use when through-the-wall air conditioning units or new windows are to be installed

**RIDER 9:        Plumbing/Heating/Gas**
-Use for alterations involving plumbing Work, especially kitchen and bathroom renovations

**RIDER 10:      Installation of Appliances**
-Use when the alteration involves installation of any type of appliances

**RIDER 11:      Electric**
-Use with major electrical modifications or rewiring or new wiring for air conditioners

**RIDER 12:      Landscaping of Terraces and Roofs – Furniture and Other Installations**
-Use when plantings or structures are to be placed or erected on roofs or terraces

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

APARTMENT ALTERATION AGREEMENT

Date:

The Sherry-Netherland, Inc.
781 Fifth Avenue
New York, New York   10022

     Re:   Apartment #_____
           781 Fifth Avenue
           New York, New York  10022

Dear Sir/Madame:

     Pursuant to Paragraph 3.16 of the proprietary lease ( the "Lease") for the captioned apartment (collectively, with all terraces appurtenant thereto, the "Apartment"), the undersigned shareholder(s) (the "Shareholder") hereby requests permission to install the equipment and/or make the alterations described in the accompanying plans and specifications (individually and collectively, the "Work") in the Apartment, and the Shareholder agrees to the following terms and conditions:

     1.   <u>Initial Submissions</u>.  The Shareholder agrees, before any Work is begun: to provide the items and documents and pay the non-refundable fees and the deposits detailed in the Initial Submissions Checklist (Exhibit A to this Apartment Alteration Agreement), including:

     (a)   To provide designated representatives of The Sherry-Netherland, Inc. (the "Corporation") with a narrative describing the Work in layman's terms.

     (b)   To provide the Corporation with complete and detailed plans and specifications of the Work, including the specifications detailed in Rider 1 hereto, prepared by an architect or engineer licensed and in good-standing in New York State, if the nature of the alteration requires such person.  Such plans shall also include a floor plan of the existing conditions.  All fixtures and appliances proposed to be installed will be labeled on such plans and specifications.  **The Corporation's designated reviewing architect shall not commence review of the proposed Work until complete plans and specifications have been submitted.**

     (c)   To obtain the Corporation's written approval of all Contractors, subcontractors (hereinafter collectively referred to as "Contractors"), to be hired by the Shareholder in connection with the Work.  The Contractor shall submit subcontractor's union affiliations and a copy of all plumbers' and electricians' master licenses prior to authorization of Work by the Corporation.  If any Contractors are hired by the Shareholder after Work has begun, the Shareholder must obtain the Corporation's written approval of such Contractors prior to such Contractors' commencement of Work. Shareholder is responsible for selecting suitable Contractors.  If, in the Corporation's sole determination, the Contractor selected by the Shareholder is not suitable for performing

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

Work in the Building, including but not limited to violations of this Agreement by the Contractors, the Corporation may, in its absolute discretion, stop the Work, until such time as a different Contractor is engaged by the Shareholder.

(d)    The Shareholder agrees that all Contractors must be duly licensed, insured and employ only union-affiliated workers qualified in their respective trades in accordance with the collective bargaining agreement between The Sherry-Netherland, Inc. and the Hotel/Motel Trades Council.  Workers should at all times during the Work have in their possession a current, valid union membership card for the trade/Work that they are scheduled to perform, which shall be displayed upon request made by the Corporation and/or its agents or representatives.  Such union membership card shall be presented to the building's security desk on each day that the worker arrives at the Building.  Workers who do not present such union membership cards will not be permitted to enter the building.

(e)    The Shareholder further agrees that all Contractors must be EPA certified with regard to lead-based paint remediation and safe work practices, unless, as detailed in Rider 4 of this Agreement, the Shareholder provides to the Corporation:  (i) test results and a report that an EPA certified inspector or risk assessor has determined that lead-based paint conditions are not present in any part of the Apartment where the Work is to be performed, and (i) obtains an exemption granted by New York City under the HPD rules and provides a copy of such exemption certificate to the Corporation's Executive Office.

(f)    To provide the Corporation with a complete and conformed copy of every agreement made with Contractors and suppliers together with a signed statement from each Contractor that the portion of the Work that Contractor will be performing complies and will be performed in accordance with applicable laws, rules, orders or governmental regulation.

(g)    To cause the Shareholder's architect or Contractor to prepare and submit to the Corporation a schedule of all Work to be performed by each Contractor, setting forth the number of weeks and days of the various trades and affirming that the Work can be completed within the time allotted under Paragraph 14 hereof.

(h)    To cause the Shareholder's contractor to retain a qualified on-site and full-time supervisor for the Work, who shall be solely dedicated to and have exclusive responsibility for supervising and managing the Work and the workers.  If the Shareholder's contractor is performing work on another alteration project in the building, **each** project must have a separate full-time, dedicated and qualified on-site supervisor with exclusive responsibility for supervising and managing each such project.  Such supervisor may not perform any Work and his/her role shall be limited solely to the supervision and management of the Work.  The on-site supervisor's qualifications must include:  no less than five (5) years of experience as an on-site project supervisor; satisfactory completion of a New York City Department of Buildings approved Site

2

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

Safety Manager Orientation Course; and satisfactory completion of a 10-hour OSHA course.

(i)     The Shareholder agrees that neither the Shareholder nor any employee of or consultant to the Shareholder (including, but not limited to, designers, decorators and the like) shall cause or permit workers to perform any portion of the Work who do not meet the same criteria and requirements set forth in subparagraph (d) of this paragraph 1 of this Agreement, as well as paragraph 38 of this Agreement (Security Procedures).

(j)     The Corporation shall also have the right in its sole discretion to require the Shareholder to have a construction manager (Manager) who would work independently of the Contractors or persons employed by the Shareholder.  All expenses of said Manager would be paid by the Shareholder.  The Manager would be on the premises at all times when any Work is being performed, and be responsible for the ingress and egress of any workers who are on the premises.  The Manager would also make a final check of the premises after all workmen have left the premises.  The Shareholder will provide access to the Manager to observe the Work at any time, to discuss the matter with the Shareholder's architect, Contractors, or any persons employed by the Shareholder in connection with the Work.  If the Corporation is not satisfied with the performance of the Manager whom the Shareholder employs, the Corporation shall have the right in its sole discretion to select a Manager, whose expenses would be paid by the Shareholder, who would work independently of the Shareholder or any of the Contractors or persons employed by the Shareholder and who would perform the services set forth above.

(k)     If required by laws, rules orders or governmental regulations, to file, at the Shareholder's sole cost and expense, plans, forms or applications (including without limitation any asbestos or lead-based paint abatement-related forms filed in support of any applications) with and procure approvals and permits from any governmental agencies, including but not limited to The Landmarks Preservation Commission, The New York City Buildings Department ("DOB"), the Department of Environmental Protection and the Board of Fire Underwriters, if required, having jurisdiction over the Work, provided that as to DOB Form PW 1, the Shareholder shall execute same as owner/applicant and that all such filings shall have been previously reviewed and authorized for filing by the Corporation, its architect or engineer.  Not more than five (5) business days after receipt of such approval, Shareholder shall deliver to the Corporation every permit or certificate issued.  If there is any doubt as to the need for such approval, the Corporation shall be the sole arbiter in resolving the doubt.  No plans may be filed with the New York City Buildings Department under "Professional Certification" or "Self Certification".  All Work must comply with the requirements of The New York City Building Code for a Class 1 fireproof building.

(l)     To cause the Shareholder's Contractors to prepare and submit to the Executive Office, for review by the Corporation's consulting architect or engineer or any

3

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

other consultant designated by the Corporation, a Noise Management and Mitigation Plan in compliance with the provisions of the New York City Noise Control Code, which Plan shall be posted in the Apartment at all times during the Work.

(m)    To cause the Shareholder's Contractors and architect to participate in a walk-through of the Apartment, and the Building's service elevator, basement and stairwell with the Corporation's Architect to establish the Existing Conditions of these spaces.

(n)    To have the Shareholder's Contractor provide insurance of the types and in not less than the limits set forth below with a company or companies satisfactory to the Corporation, licensed to do business in the State of New York, and with an A.M. Best Financial Strength Rating of not less than A.  All such policies shall, by specific endorsement, name the Corporation, its directors, officers, the Shareholder and the Corporation's reviewing architect, as additional named insureds (collectively, the "Additional Insureds").  No diminution of limits of insurance will be permitted without the written consent of the Board and the Corporation's reviewing Architect or Engineer.

(i)    WORKER'S COMPENSATION as required by all applicable Federal, State, or other laws including Employers Liability in accordance with the statutory requirements of the State of New York, together with Disability Benefits Insurance required by the State of New York, in an amount not less than $500,000.

(ii)    COMMERCIAL GENERAL LIABILITY with a minimum amount of $2,000,000 per occurrence and $3,000,000 aggregate, which insurance shall cover: premises and operations: liability, products/completed operations, broad form property damage, broad form Contractor's contractual liability (oral or written), personal injury coverage and independent contractors liability, which shall include mental anguish as well as standard conditions, all without any exclusion relating to Explosion, Collapse, bacteria, silica or silica-related dust, pollution, medical payments and Underground Property Damage.[*]

The policy will contain the "Broad Form Comprehensive General Liability" endorsement in Paragraph 1 of such form; the exclusion pertaining to liability assumed by the Contractor under any contract or agreement (Section II paragraph B(1)) is to be deleted.  The completed operations coverage is to extend for a period of two (2) years following termination of the Work and contractual indemnity coverage is also to extend for two (2) years following termination of the Work.  The policy is also to include (a) Owners Protective Liability Coverage, (b) Knowledge of Occurrence and Notice of Occurrence endorsements and (c) Unintentional Errors and Omissions clause.  The policy shall also include coverage with respect to asbestos

---

[*]    Amounts of insurance required may be higher for major renovations or lower, depending on the scope of the Work, as determined by the Board of Directors in its sole discretion.

4

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

exposure in an amount acceptable to the Corporation and as provided for in Rider 2 hereof, if the Work involves any asbestos-containing material, and shall not include a sunset clause without the Corporation's consent.

       (iii)    COMPREHENSIVE AUTOMOBILE LIABILITY, including non-ownership and hired car coverage, as well as owned vehicles, with a minimum limit of $1,000,000

       (iv)    $5,000,000 UMBRELLA LIABILITY, BODILY INJURY, PERSONAL INJURY AND PROPERTY DAMAGE COMBINED*

If Umbrellas are written by more than one company any layers above the first one shall follow the form of the Primary Umbrella.

Contractor shall, by specific endorsement to its primary liability policy, cause the coverage afforded to the Additional Insureds to be primary to and not concurrent with other valid and collectible insurance available to the Additional Insureds. Contractor shall, by specific endorsement to its umbrella/excess liability policy cause the coverage afforded to the Additional Insureds thereunder to be first tier umbrella/excess coverage above the primary coverage afforded the Additional Insureds and not concurrent with or excess to other valid and collectible insurance available to the Additional Insureds.

Prior to the commencement of any Work hereunder, copies of the policies together with detailed certificates of insurance and copies of all endorsements shall be furnished to the Corporation showing that such insurance is in full force and the premiums due thereunder have been paid. Such certificates shall provide that the said insurance may not be canceled, terminated or modified without thirty (30) days written advance notice thereof to the Corporation. The Contractor shall promptly furnish the Corporation with copies of any endorsements subsequently issued amending insurance coverage or limits.

In the event of the failure of the Contractor to furnish and maintain such insurance, the Corporation shall have the right, at its option, at any time, (a) to revoke permission to perform the Work and to deny entry into the Building of all workers, except that if such workers are escorted by a member of the Building's staff, they shall be permitted to remove their tools and supplies, or (b) to take out and maintain the said insurance for and in the name(s) of the Additional Insureds, the Corporation's name, the Shareholder's name and the name of the Contractor and the Shareholder agrees to pay the cost thereof and to furnish all necessary information and consents to permit the Corporation to take out and maintain such insurance for the account of the Additional Insureds, The Corporation, the Shareholder's account and the account of Contractor. Compliance with the foregoing requirements to carry insurance and furnish certificates shall not relieve the Shareholder or the Contractor from liability assumed under any provisions of this Contract.

The Contractor's insurance policy shall in addition to containing in substance the endorsement set forth in Exhibit E hereto, also contain in substance the following endorsements:

5

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

"This insurance shall not be invalidated should the insured waive, in writing, prior to a loss, any or all right of recovery against any party for the loss occurring to the property described herein."

"The Contractor hereby waives subrogation against The Sherry Netherland, Inc., its officers, directors and any of its agents and employees."

## CONTRACTOR'S PROPERTY INSURANCE

The Contractor shall maintain insurance (the "Contractor's Property Insurance") on the Contractor's property and equipment at the Project for All Risks, including, without limitation, Fire and Extended coverage. The Contractor's Property Insurance policy or policies shall contain, in substance, the following endorsement:

"This insurance shall not be invalidated should the insured waive, in writing, prior to a loss, any or all right of recovery against any part for the loss occurring to the property described herein."

The Contractor shall not make any claim against or seek to recover from the Shareholder or the Additional Insureds for any loss or damage to the Contractor's property or equipment located at the Building, by the perils within the scope of the Contractor's Property Insurance, whether or not the loss or damage is due to its negligence or that of its servants, agents or employees. Nothing in this paragraph, nor in this Agreement, shall Exempt the Corporation from liability it may otherwise have for damages or injuries to persons or property caused by or resulting from the negligence of the Corporation, its agents, servants or employees.

Nothing in this paragraph 1(n) shall constitute a waiver of or limitation of any other rights or remedies the Corporation may have for consequential damages or otherwise.

(o)    To deliver to the Corporation a written indemnification agreement and agreement to perform the Work in accordance with the terms of this Agreement in the form of Exhibit B hereto, executed by each Contractor.

(p)    To deliver to the Corporation a certificate evidencing Shareholder's homeowners liability insurance, in amounts acceptable to the Corporation.

(q)    To deliver to the Corporation a written indemnification agreement and agreement to perform the Work in accordance with the terms of this Agreement in the form of Exhibit F hereto executed by the Shareholder.

(r)    To deliver to the Corporation a written indemnification agreement and an agreement to perform the Work in accordance with the terms of this Agreement, in the form of Exhibit B hereto, executed by each Contractor.

(s)    To deliver to the Corporation Rider 4 to this Agreement, executed by the Shareholder and the Contractor.

6

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

2.      _Release of Claims_.  The Shareholder agrees to exculpate and not to make any claim against or seek to recover from the Corporation, its directors, officers or shareholders or the Corporation's shareholders servants, agents, partners, guests, licensees, invitees, tenants or employees for any damage to persons or property by the perils within the scope of the insurance policies required in paragraph 1 hereof, unless the loss is due solely to the negligence of such named parties provided however that nothing in this paragraph, nor in this Agreement, shall indemnify or hold harmless the Corporation against legal liability it might otherwise have for damage arising out of bodily injury to persons or damage to property contributed to or caused by or resulting from the negligence of the Corporation, its agents, servants or employees, whether such negligence be in whole or in part.

3.      _Designation of Architect/Engineer; Retention of Professionals; Inspections and Monitoring of DOB and LPC Shareholder Filings_.  The Shareholder acknowledges that the Corporation may designate an architect, who shall, at the Shareholder's expense based upon the architect's hourly rate, with an estimated range of $1,500-$3,500, depending on the scope of the Work, (a) review plans and specifications for the alterations in regard to how the intended Work may affect the common areas of the Building or other apartments and the use, security, safety, enjoyment of their apartments by other shareholders in the Building, (b) from time to time observe the Work to insure that all Work conforms to plans and specifications previously approved and is otherwise in conformity with the requirements of this Agreement, and that no conditions have been created by the Work which create a hazard or environment which is harmful to the health of individuals working or residing in the Building or to the structural integrity of the Building's other apartments or the systems therein or is in violation of laws, rules, orders or regulations of any governmental agency having jurisdiction and (c) monitor the Shareholder's filings with the DOB and LPC to ensure that no filings or submissions are made that have not been authorized in advance and in writing, by the Corporation and its architect.

If the Corporation is required, or deems it wise, to seek legal, engineering, electrical, architectural or other advice relating to the Work or this Apartment Alteration Agreement, at any time and from time to time prior to or after granting permission for the Work to be performed, the Shareholder hereby agrees to reimburse on demand all fees and disbursements incurred by the Corporation with respect to the same, whether or not the Corporation grants permission for performance of the Work.  The Shareholder agrees to reimburse the Corporation for all such expenses promptly upon receipt of the Corporation's bill for the same at the respective professional's hourly rate and for disbursements incurred, and if permission is granted, then all fees incurred prior to commencement of the Work shall be reimbursed to the Corporation prior to such commencement.  Any such charges shall be treated as Additional Rent under the Lease, billed monthly and paid within ten (10) days of billing.

Further, if the Shareholder files or submits forms or documents to the LPC and/or DOB that have not been reviewed and authorized for filing in advance and in writing by the Corporation and its architect or engineer, the Corporation may stop the Work, in its sole and absolute discretion, advise the DOB and LPC and request that the DOB permits issued for the Work be revoked and the entire job will be stopped by the Corporation.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

The Shareholder agrees to provide access to the Corporation's reviewing architect or engineer as well as its designated agents (including, without limitation, the President or Executive Vice President of the Corporation and the Chief Engineer of the Building) to observe the Work from time to time, the frequency of which shall be in the sole and absolute discretion of the Corporation, and undertake to make all corrections specified by the Corporation as a result of nonconformance of the Work with the Shareholder's plans and specifications or as the result of a condition described in the preceding paragraph.  Upon the herebyrequired notice from the Shareholder to the Corporation's architect, such observation visits will be scheduled on the following occasions:

(a)    Prior to commencement of the Work.  Any structural defects which are considered by the Shareholder to be the Corporation's responsibility must be brought to the attention of the Corporation or its designated representatives prior to commencement of the Work; otherwise, the Shareholder assumes full responsibility for the condition of the Apartment, including any alleged structural defects.

(b)    Prior to any demolition Work and at least daily during the demolition phase of the Work.

(c)    Prior to inspections, testing or approvals as required by any public authority having jurisdiction over any portion of the Work.

(d)    Prior to the enclosure of any floor, wall or ceiling where acoustical attenuation or sound proofing is required to be installed by the Shareholder at the direction of the Corporation's architect or where pipes are exposed in the course of the Work.

(e)    Prior to the enclosure or obstruction of any concealed or inaccessible portions of the Work.

(f)    Prior to any other stage of progress of the Work, which has been designated for observation by the Corporation's architect or been designated for observation by the Corporation in its review of the Shareholder's Work plans and specifications.

(g)    Prior to final completion of the Work.  The Contractor shall broom-clean the Apartment at the conclusion of the project prior to the Corporation's architect submitting a final inspection report stating whether the Work is complete and that the Contractors and subcontractors have removed all necessary materials, tools, equipment and debris from the Apartment.

(h)    Within a reasonable time after completion of the Work.

The architect shall make reasonable efforts to observe the Work as soon as possible, but in any event, within three (3) working days after receiving a request for an observation visit.  The

8

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

Shareholder shall not proceed until Work has been observed and approved by the Corporation, which approval shall subsequently be confirmed promptly in writing by the Corporation. If any portion of the Work should be covered contrary to the request of the Corporation's architect, or before the required inspections specifically set forth in this Agreement, the Shareholder shall cause the enclosure to be uncovered at the Shareholder's expense for observation by the Corporation's architect and thereafter replaced at the Shareholder's expense.

If any Work other than as described herein, is performed or Shareholder DOB filings are made without being authorized in advance and in writing by the Corporation and its architect the Corporation may stop the Work, in its sole and absolute discretion, advise the DOB and request that the DOB permits issued for the Work be revoked.

      4.    <u>Acceptance of Responsibility</u>. The Shareholder releases the Corporation, its directors, officers agents and employees from any liability for damage to the portions of the Apartment affected by the Work which may occur in the performance of Building maintenance repairs. The Shareholder accepts sole responsibility for the Work and costs in connection with the maintenance, repair, restoration or replacement of the Work and any portions of the Apartment and the Building affected by the Work. Should the Corporation at any time require the removal of any of the Work in order to gain access to a Building system or part of the Building to perform a repair or improvement, Shareholder shall provide such access and will be responsible for the cost of providing the access and of restoring the Work after the Corporation performs its work. Shareholder acknowledges and agrees that such responsibility shall pass to the Shareholder's successor-in-interest in the Apartment.

      5.    <u>Notice of Commencement/Letter to Neighbor</u>. After obtaining approval of the proposed alteration Work, the Shareholder agrees to give not less than ten (10) days written notice, setting forth the date the Shareholder plans to commence the Work and the duration of the Work to the Executive Office and the Corporation and provide to the Executive Office an executed letter in the form of Exhibit "C" hereto addressed to each of the shareholders or occupants in the apartments that are adjacent to and immediately above and below the Apartment (the "Adjacent Premises"). If the Work is not commenced within sixty (60) days of the execution of this Agreement, the consent granted hereunder shall become null and void. The Shareholder may request a reinstatement of such consent, in writing, and approval thereto may be granted or denied in the Corporation's sole discretion.

      6.    <u>Damage to Building</u>. Any damage to any Adjacent Premises or other apartments or the common elements of the Building, including but not limited to the common structure, infrastructure, equipment, elevators, doors and finishes of the Building, resulting directly or indirectly from the performance or existence of the Work shall be insured by the Shareholder's insurance coverage required hereunder or that of the Contractors. However, the existence of such insurance shall not relieve the Shareholder of liability hereunder. If the Corporation advises of any damage which, in its opinion, was caused by the Work, the Shareholder shall either immediately cause the damage to be repaired or, at the option of the damaged party, submit any claim based on such damage immediately to the Shareholder's insurance carrier and the

9

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

insurance carrier of the Contractors without contest to the extent permitted by the insurance policies.  The Shareholder agrees to use all reasonable efforts, and to cause the Contractors likewise to use all reasonable efforts, to cause any insurance carrier insuring the Shareholder or the Contractors, as the case may be, to expeditiously settle and pay any amounts for claimed damage for which the Shareholder or the Contractors are responsible hereunder to the Corporation or any impacted shareholder or occupant of the Building.  In the event that the Contractors causes damage to any area of the Building, the Corporation shall temporarily suspend the Work until the Contractor submits prompt payment to the Corporation, in an amount reasonably estimated by the Corporation, for any and all expenses incurred by the Corporation due to such damage.

7.    Costs Incurred.  The Shareholder understands and agrees that all costs for labor, equipment and materials incurred by the Corporation in connection with the Work, in the Corporation's sole discretion, for professional consultations, maintenance and supervision, elevator service, rubbish removal or protection services, including uniformed security guards, shall be charged to and paid for by the Shareholder as Additional Rent, including overtime rates, if utilized.  Any such charges shall be billed monthly and paid within ten (10) days of billing.

8.    Assumption of Risk.  The Shareholder assumes all risk of damage to the Building and its mechanical, electrical, plumbing, ventilation (shafts and components), and fire protection systems, and to persons and property in the Building which may result from or be attributable to the performance or existence of the Work and all responsibility for the maintenance, repair and replacement of any alterations and installations during and after completion of the Work.  This responsibility covers all Work, whether or not structural, weathertightness of windows, exterior walls or roofs, waterproofing of every part of the Building directly or indirectly affected by the Work, and maintenance of all heating, plumbing, ventilation, air conditioning, mechanical, electrical and fire protection systems and other equipment installed or altered pursuant hereto. The Corporation is not responsible for any failure of performance of Building services to the Apartment as a result of the Work.  If the operations of the Building, or any of the foregoing equipment, is adversely affected by the Work, the Shareholder shall promptly correct the cause of the problem.  If, in the Corporation's sole discretion, the Shareholder does not promptly correct the problem, the Corporation may have the problem corrected and the Shareholder shall be liable for all costs and expenses incurred therein, including any legal fees or other professional fees incurred by the Corporation.

9.    Days and Hours of Work.  The Work may be performed Monday through Friday only between the hours of 8:00 a.m. and 4:30 p.m., provided, however, that hammering or any other noisy Work which may disturb other occupants shall not be performed prior to 9:30 a.m. nor later than 4:00 p.m., Monday through Friday inclusive.  The Corporation shall be the sole arbiter as to what constitutes noisy Work.  Under no circumstances shall any Work whatsoever be performed on Saturdays, Sundays, legal holidays, between December 24 and January 2, and such other days as the Executive Office shall designate, in its sole discretion.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

10.    <u>Conduct of Work; Status Report</u>.  All Work shall be confined to the Apartment and done in a competent and workmen-like manner and in such a manner and at such times so as to minimize disturbance to other occupants of the Building or the operation of the Building's services.  The Shareholder shall cause its Contractors to take all precautions to prevent noisy or disturbing conditions.  The Work shall be discontinued immediately should the Corporation deem that it is creating a disturbance to other occupants of the Building, including without limitation, by creating excessive noise, or causing any interruption of the normal operation of the Building.  In no event may any cabinetry be fabricated in the Apartment.  Shareholder shall not permit the use of the Building's electric service by Contractors, including electrical risers and feeders.  If during the course of the Work, the Corporation's architect or the Building's Chief Engineer directs the Shareholder or Contractors to take any action or cease any action based upon this Agreement or as necessary, in their judgment, for the safety, security or reasonable operation of the Building, Shareholder and Contractors shall immediately comply with such directives.

The Shareholder shall prepare a monthly detailed written report describing the status of the Work and shall submit same to the Executive Office.

In the event that the Corporation determines, in its sole discretion, that the Shareholder and/or the Contractors are not providing adequate supervision for the Work, the Corporation may provide such supervision by either retaining an independent supervisor or assigning a member of the Corporation's staff to provide such supervision, at the Shareholder's sole cost and expense.

11.    <u>Floor Surfaces; Dust Infiltration and Containment; Cleaning of Areas</u>.  The Shareholder is solely responsible to prevent dust from escaping from the Apartment into other apartments or the Building's common areas.  Prior to commencement of any Work in the Apartment, the entire floor surface area throughout the Apartment and any areas needed for access thereto, including all service hallways, are to be covered with sound-deadening masonite board of not less than one-quarter inch in thickness or such other protections as the Building's Chief Engineer, the Corporation's architect or other designated employee or agent shall specify.  The Chief Engineer or other designated employee or agent reserves the right to inspect the protections to determine their adequacy and may require such additional protections as they, in their sole discretion, determine to be necessary or appropriate.  Each section of masonite is to be joined together to form a complete stable floor covering throughout the entire Apartment and access areas.  This cover is to remain in place until all Work which might in any way create noise is completed. The front door from the Apartment into the Building hallways shall be sufficiently sealed inside the Apartment to prevent the flow of dust into Building hallways but shall remain unlocked during the Work; the Building's Chief Engineer shall be provided with a set of keys to the Apartment.  The back door of the Apartment shall be sealed with a zippered enclosure, which door shall be the only one used by Contractors to enter and exit the Apartment.  The carpet and floor in the common hallways shall be protected with construction paper prior to commencement of construction.  The paper shall be vacuumed using a HEPA filter and damp mop daily.  **The Shareholder shall install an exhaust fan with a HEPA filter or a negative air fan, which must develop not less than 0.125" static pressure, and which shall be operated in the**

11

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

**Apartment during all Work operations regardless of the size or scope of the Work.**  In transporting waste out of the Apartment and the Building, the elevator, hallways and basement corridors must be protected so as to minimize dust, including but not limited to securely covering the dumpster or other transportation vehicle with a heavy-duty grade of plastic, so that no dust is released into the Building's common areas during such transporting.  In the event the Building staff is required to perform additional cleaning as a result of the Work, the Shareholder will be responsible for any costs incurred and the same shall be charged to the Shareholder as Additional Rent under the Lease.

**Shareholder and its Contractors shall comply with the "Lead-Based Paint/Dust and Debris Containment - Use of EPA Certified Contractors and Workers" and "Demolition" procedures set forth in attached Riders 4 and 5 to this Agreement.**

12.    <u>Access to Apartment</u>.  All access to and from the Apartment for labor, materials and rubbish removal shall be solely from the service entrance to the Building and the service elevator and via the service door to the Apartment.

13.    <u>Location of Risers and Lines</u>.  Prior to the commencement of any demolition in the Apartment, all risers and lines, including electric risers and feeders, all plumbing and heating risers, drain lines, vent lines, branch lines, valves and other system components within the Apartment and the adjacent common areas and control valves which regulate supply to the Apartment, must be located and listed in an addendum to the construction plans, as well as how the proposed new lines will be routed to them.  Such addendum must be posted in a conspicuous place within the Apartment during the entire alteration Work period.

14.    <u>Completion of Work; Fees</u>.

(a)    The Shareholder shall use the Shareholder's best efforts to ensure that the proposed Work is completed expeditiously, but in any event all Work shall be completed within an aggregate of 170 business days from the date of commencement of the Work, or such other period as the Corporation, in writing, designates (the "Completion Date"). The Completion Date will be strictly enforced.  The Corporation expresses no opinion regarding the feasibility of completion of the Work within this time period.  No Work other than decorative Work, such as painting, wallpapering or carpeting, such as is included in the Work, may be continued beyond the Completion Date without the Corporation's specific written consent.  If the Shareholder desires additional time to complete the Work, the Shareholder shall at least five (5) working days before the expiration of the Completion Date, advise the Corporation of the number of consecutive additional days being requested to complete the Work following the Completion Date and, if the Corporation, in its sole discretion consents to an extension of the Completion Date, the Shareholder shall pay to the Corporation the sum of $500 per day as consideration for each of the first fifteen (15) of such additional Working days that the Completion Date is extended and $1,000 per day for the 16th working day and each day thereafter that the Completion Date is so extended provided, however, that if the Corporation's Executive Office and architect determine, in their sole discretion, that

12

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

either: (i) unforeseeable existing conditions in the Apartment or the Building; or (ii) necessary Building work will delay completion of the Shareholder's (the "Extenuating Circumstances") and warrant an enlargement of the Completion Date, the Shareholder shall be afforded such additional number of Working days to complete the Work as the Corporation's Executive Office and architect determine in light of the Extenuating Circumstances without payment of the foregoing fees. The fees may not be withdrawn from the security deposit provided pursuant to paragraph 28 of this Apartment Alteration Agreement. The Shareholder acknowledges these amounts to be non-refundable fees to be paid in consideration for amending the Corporation's consent so as to permit the Work to continue past the established, agreed upon Completion Date upon which the Corporation's consent to the proposed Work was given.

The Shareholder acknowledges and agrees that lengthy apartment alterations cause injury to the Corporation, other shareholders and tenants because of the disruption, dust, noise and other consequences of construction attendant to such alterations, as well as the diversion of Building and management resources, and that the Corporation, other shareholders and tenants cannot be fairly or adequately compensated for damages caused by alterations which continue beyond the Completion Date or any extended completion date. Thus, the Corporation shall have the right, in addition to any other rights that the Corporation may have, to seek entry of an injunction, enjoining construction of the Work. Moreover, recognizing and acknowledging the irreparable nature of the injuries caused by Work extending past the Completion Date or any extended completion date, the Shareholder consents to entry of such an injunction and further agrees to bear any attorneys' fees or other costs incurred by the Corporation in obtaining or enforcing said injunction, which amounts shall be deemed Additional Rent under the Corporation's proprietary lease.

Immediately following the Completion Date, or the extension thereof as provided above, the Board of Directors, in its sole and absolute discretion, has both the right and the intention to stop Work on the project. At that time, the Work will be shut down completely and the Shareholder will be required, if the Shareholder desires to complete the project, to submit a proposed scope of Work, detailing among other things, a schedule for each trade showing the new proposed completion date for such trade and for project completion, and, if the Corporation consents to the same, to execute an amendment of this Apartment Alteration Agreement. The Board, in its sole and absolute discretion, may or may not enter into and/or approve an amendment and permit any further Work to be undertaken thereafter. Once stopped, Work will only be allowed to begin again at the discretion of the Board and in compliance with the provisions of this paragraph 14, including the payment of all fees required and the costs incurred by the Corporation for reviewing the new proposed scope of Work which the Corporation shall be entitled to apply from the security deposit provided pursuant to paragraph 28 of this Apartment Alteration Agreement.

Notwithstanding any other provision of this paragraph, if the Corporation elects to apply to the Shareholder's non-refundable fee for extension of the Completion Date or the use-of-facilities fee the security deposit or any portion thereof that the Shareholder has provided

13

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

pursuant to paragraph 28 of this Agreement, same shall be without prejudice and in addition to any remedies the Corporation may have, including the right to stop all Work.  If the security deposit provided pursuant to paragraph 28 is diminished by one-half of the original amount, Shareholder shall replenish it to the full amount within three (3) days after the Corporation's demand.  No Work shall be permitted to continue until the security deposit is replenished.

The determination of whether the Work is completed shall be made by the Corporation, and the Corporation's determination shall be conclusive.  The Shareholder agrees that any consent to performance of Work after the Completion Date granted by the Corporation may be revoked by the Corporation immediately if the Shareholder fails to comply with any requirement of this Apartment Alteration Agreement or the amendment providing for an extended completion date.  The Shareholder is aware of, and fully understands the consequences of breaching this agreement by failing to complete Work by the Completion Date, or any extended completion date which may include, but not be limited to, the termination of the Shareholder's right to perform Work before the Work is completed.

All time limitations set forth in this paragraph shall be subject to extension for delays, subject to approval by the Corporation, caused by or attributable to acts of God, unusual weather conditions or strikes not attributable to the Shareholder's or the Contractors' or other Shareholder's agents' bad faith, or delays due to Building work by the Corporation.

(b)    Use of Facilities Fee.  In addition to all other amounts charged hereunder, the Shareholder shall pay to the Corporation, prior to the commencement of any Work, a non-refundable use-of-facilities fee in an amount equal to $.75 multiplied by the number of shares allotted to the Apartment for each calendar month, or portion thereof, that the Work continues.  This is to allow the Corporation to address the demands on building staff and management and prevent interruption to normal Building service, as well as the extraordinary wear and tear on the Building's physical plant, including service elevators.  The Shareholder's obligation to pay such use-of-facilities fee shall terminate if and when the Corporation's reviewing architect certifies to the Corporation that the Work is complete.

(c)    Close-out Fee.  Forty (40) days after the Work has been completed, as determined by the Corporation, if the Shareholder has not submitted the required close-out documents as provided for in paragraph 32 of this Agreement, the Shareholder shall pay to the Corporation a fee of $2,000 for each calendar month or portion thereof that such close-out documents have not been submitted to the Executive Office.

15.    No Interference With Building Systems.  The Shareholder will not interfere or permit interference with the Building's intercommunication, gas, heating, electric systems or any other Building system or service.  The Shareholder agrees that the Work will not alter or relocate the main plumbing and heating lines without the Corporation's prior written consent.  No gas lines outside the Apartment may be moved or shut down.  Intercommunication lines shall be modified only by agents of the Corporation, at the Shareholder's cost and expense.

14

©2013 Stroock & Stroock & Lavan LLP<br>All Rights Reserved

16.    <u>Use of Power Tools</u>.  The use of power tools such as electric hammers, automatic jack hammers, portable electric saws, and/or other pneumatic tools or sledge hammers which may disturb other occupants of the Building or cause cracks in the walls of other apartments and/or Building pipes, will not be permitted without the Corporation's prior written approval.  A list of the power tools proposed to be used must be included in the plans and specifications for the Work.  If the Corporation's written approval to use such tools is given, at least ten (10) days prior written notice of any noise producing Work must be given by the Shareholder to the residents of Adjacent Apartments.  Heavy duty industrial type power tools are prohibited.  The Corporation reserves the right, in its sole and absolute discretion, to stop any Work in the event of excessive noise and/or vibrations, if workers are using prohibited or unauthorized power tools or if such tools and/or their manner of use do not comply with the New York City Noise Control Code, as amended.

17.    <u>No Deviation from Approved Plans and Shareholder's Authorized DOB and LPC Filings</u>.  All Work will be performed strictly in accordance with the approved plans and specifications and in accordance with the Shareholder's LPC and DOB filings authorized by the Corporation and its architect.  The Shareholder agrees that no amendments to the approved plans and specifications or any changes of any kind in the scope of the proposed alteration Work shall be made without the written approval of the President or Executive Vice President of the Corporation.  If any Work, other than as described herein is performed, or Shareholder DOB and LPC filings are made without being authorized in advance and in writing by the Corporation and its architect, the Corporation may stop the Work, in its sole and absolute discretion, advise the DOB and request that the DOB permits issued for the Work be revoked.

18.    <u>Quality of Work and Materials Used</u>.  The alterations and materials used shall be of a quality and acoustical standards in keeping with the luxury class character of the Building.  Should there be any doubt concerning the quality or style of the Work, the materials used or the acoustical standards to be met, the Corporation shall be the sole arbiter in resolving the doubt.  **All materials used must be mold resistant.**

19.    <u>Safety:  Installation of Smoke and Carbon Monoxide Detectors; Window Guards</u>.  The Shareholder agrees that two (2) functioning ABC fire extinguishers are to be kept in the Apartment during the Work, with locations clearly labeled, and to install functioning smoke alarms, and carbon monoxide detectors, and such other precautions as the Board directs, in its sole discretion, which shall be maintained in the Apartment during the Work, and one of each such devices shall be installed for every 1,500 square feet within the Apartment.  Temporary lighting shall be installed in the Apartment and one light will be lit at all times as necessary.  In the event one or more children ten (10) years old or younger occupy the Apartment during the alteration Work, window guards must be installed by the Shareholder on all windows, as required by law.

20.    <u>Access to Fire Exit</u>.  The Shareholder agrees that the Work shall not block access to any fire exits in the Building and to maintain unobstructed all fire exits to and from the Apartment.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

21.    <u>No Violation of Law; Insurance Policies</u>.  The Shareholder will not do or permit any act or thing to be done contrary to law, including OSHA Safety requirements and precautions, or which will invalidate or be in conflict with or cause an increase in the premiums payable by the Corporation for liability, multi-peril casualty or other insurance policies carried by the Corporation or for the Corporation's benefit.

22.    <u>Indemnification and Legal Fees</u>.

<u>Indemnification</u>.  The Shareholder agrees to defend, indemnify and hold harmless the Corporation, the Corporation's directors, officers, shareholders, consultants and the Corporation's shareholders' agents, partners, servants, employees, tenants, guests, licensees, invitees, and all other occupants of the Building (each, an "Indemnified Party" and collectively, the "Indemnified Parties") from and against any and all claims, damages, expenses (including reasonable attorneys' fees and expenses) -- whether made by the Shareholder, the Corporation or a third party -- suffered by persons or property as a result of or in any way related to: (i) the Work to the Shareholder's Apartment or its adverse impact on the comfortable occupancy of other apartments in the Building; (ii) the Shareholder's failure to comply with the Shareholder's obligations hereunder (including without limitation the obligation to repair and maintain the Work); (iii) the Shareholder's failure to perform the Work in accordance with the approved plans and specifications and the terms and conditions contained herein, unless caused solely by the negligence of the Indemnified Parties, and/or (iv) the Shareholder's filing of required forms (including DOB Form PW1 and submissions for a DOB work permit and the statements made therein whether such filing(s) were authorized by the Corporation or not, and for any and all liabilities arising therefrom or incurred in connection therewith, including, without limitation, any liability incurred in connection with the removal, encapsulation, enclosure or other abatement of asbestos containing material or the transportation and disposal of the same or any liability incurred in connection with the disturbance, sealing, containment, cleaning or removal of any lead based paint existing on any window, wall, floor board, trim, molding or other surface located in the Shareholder's Apartment or in an area contiguous with or adjacent to the Shareholder's Apartment of which the Shareholder is entitled to limited access or exclusive use thereof, and to defend, indemnify and hold harmless such Indemnified Parties against any claims by others for damages to persons or property resulting from the Work being undertaken, and to reimburse such parties for any costs and expenses, including, without limitation, attorneys' fees and disbursements, incurred as a result of the Work, including, without limitation, asbestos and lead-based paint abatement Work.  Nothing in this paragraph, nor in this Agreement, shall indemnify or hold harmless the Corporation against legal liability it may otherwise have for damage arising out of bodily injury to persons or damage to property contributed to or caused by or resulting from the negligence of the Corporation, its agents, servants or employees whether such negligence be in whole or in part.  This indemnification shall survive the completion of the Work.

<u>Legal Fees</u>.  In addition to the foregoing, the Shareholder hereby expressly indemnifies the Indemnified Parties for all legal and other professional fees and disbursements incurred by them (i) due wholly or in part to this Apartment Alteration Agreement and/or the

16

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

Work to be performed hereunder, including but not limited to, Shareholder's breach or alleged breach of this Agreement or (ii) in any action or proceeding between the Shareholder and such Indemnified Party which relates to this Apartment Alteration Agreement and/or the Work to be performed hereunder.  This indemnification shall survive the completion of the Work.

       23.    <u>Shutdowns of Building Systems</u>.  All Work that requires a temporary shutdown of the water, heating, ventilation or electrical system affecting areas in the Building outside the Apartment must be scheduled with the Building's Chief Engineer after approval of the Executive Office has been granted in writing.  At least three (3) business days prior written notice of such shutdown shall be given by the Shareholder to the occupants of all affected apartments.  The Shareholder acknowledges and agrees that the shutdown of such systems causes disruption and injury to other shareholders and occupants and that multiple shutdowns are therefore not warranted.  Accordingly, if more than one shutdown of the aforementioned systems is requested by the Shareholder, approval of same shall be in the Corporation's sole and absolute discretion.  Further, if approval of a temporary shutdown of any of the aforementioned systems is granted, the Shareholder shall pay to the Corporation $500 per day for the first day or portion thereof and $1,000 a day for each subsequent day or portion thereof.  Shutdowns may not exceed three (3) hours in duration or take place on more than two (2) consecutive days.  No Work that requires shutdown of the heating system will be permitted during the heating season.  No work that requires a shutdown of the cooling system will be permitted during the cooling season.  In no event will any shutdown of gas services affecting areas outside the Apartment be permitted.

       24.    <u>Removal of Rubbish; Deliveries</u>.  It is the Shareholder's responsibility to have all rubbish, discarded equipment, empty packing cartons and other materials removed from the Building and its environs by way of the service elevator at the Shareholder's own expense in containers approved by the Corporation, taking all due care to minimize dust in the Building's common hallways, elevator and basement.  All materials and rubbish will be placed in barrels sprayed down with water or bags before being taken out of the Apartment. In no event shall any materials or bags of rubbish be placed, maintained or stored in the common areas of the Building or outside the Building or in its environs, nor shall any "street containers" or "dumpsters" for the storage of rubbish be placed, maintained or stored outside the Building or in its environs without the Corporation's prior written consent on such terms and conditions as the Corporation may prescribe.  All carts, dumpsters and the like shall be kept inside the Apartment until removal arrangements are made and implemented.  Removal of rubbish shall be allowed only as instructed by the Building's Chief Engineer and shall be allowed only between the hours of 9:30 a.m. and 4:00 p.m., Mondays through Fridays, and must be made at the end of every working day and shall be supervised by the Contractor.  If, in the Corporation's discretion, the Shareholder has failed to remove the rubbish to the Corporation's satisfaction, the Corporation may have it removed and the Shareholder will be responsible to the Corporation for any and all costs and expenses incurred, which amounts shall be due from the Shareholder as Additional Rent under the Lease.

       All deliveries will be coordinated with the Building's Chief Engineer.  Deliveries may be made only on days and at times when Work is permitted, and only as directed by the

17

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

Building's Chief Engineer.  No more than one truck providing supplies or services to the Shareholder shall be parked within 50 feet of the front entrance of the Building.

The Shareholder acknowledges that leaving the service or street entrance to the Building open and unattended for any period of time constitutes a security hazard to the Building.  Prior to any activity which may interfere with the security of the Building, the Shareholder will obtain approval from the Executive Office at least 48 hours in advance of such activity.  The Shareholder agrees to reimburse the Corporation for any wages or related expenses incurred in connection with the Building's right to maintain security by posting a Building employee or a professional security person at Building locations during such activity, as Additional Rent under the Lease.

25.     Storage of Materials.  No materials, including tools, may be stored overnight in the common areas of the Building without the prior written consent of the Executive Office and at Contractor's risk.  Materials and tools may be left in the Apartment at the Contractor's risk.

26.     Payment of Fines.  The Shareholder hereby authorizes the Corporation to pay from the deposit held by the Corporation pursuant to paragraph 28 hereof any sanitation or other fines which may be assessed against the Corporation by any government instrumentality by reason of the Shareholder's materials or rubbish, or for any other reason.

27.     Use of Service Elevators.  The Shareholder recognizes that only the service elevator or such other elevator designated by the Corporation may be used (a) by the Contractors, (b) to transport any materials or equipment to or from the Apartment, and (c) to remove rubbish from the Apartment.  No material will be taken on top of any elevator cabs.  No materials may be hoisted without the written consent of the Corporation.  The service or other such elevator designated by the Corporation shall be available for such purposes only at such times as the Corporation may direct and may be limited, depending on other Building activities or alterations. If the convenience of other tenant-shareholders requires that the service elevator or other such elevator designated by the Corporation requires a designated operator or be operated on all overtime basis, the Shareholder will promptly reimburse the Corporation for any wages or related expenses incurred in connection therewith upon demand, and shall be treated as Additional Rent under the Corporation's proprietary lease.

28.     Security Deposit.  As security for the faithful performance and observance by the Shareholder of the terms and conditions of this Apartment Alteration Agreement, the Shareholder is concurrently herewith delivering to the Corporation the Shareholder's check payable to the order of The Sherry-Netherland, Inc. in an amount equal to $100,000 or such other amount (but not less than $25,000) as the Board of Directors shall determine in its sole discretion, as a condition for its approval,[*] the proceeds of which may be deposited by the Corporation upon the Corporation's acceptance of this Apartment Alteration Agreement. An additional security deposit payable by the Shareholder to the Corporation shall be required in the

---

[*] This amount may be varied by the Board as a condition for its approval depending on the scope of the Work.

18

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

amount of $15,000 if the proposed Work requires an amended Certificate of Occupancy as determined by the Corporation's reviewing architect, so that in the event the Shareholder fails to timely obtain an amended Certificate of Occupancy, the Corporation may, in its discretion, do so. However, nothing herein shall relieve or excuse the Shareholder from the obligation to obtain such amended Certificate of Occupancy and deliver same to the Corporation. In the event that the Shareholder or persons engaged by the Shareholder to perform the Work cause loss, cost or expense to the Corporation or the Corporation's property, including without limitation any loss, costs or expense arising from or relating to (a) the fees of any architect, engineer or other professional or consultant engaged by the Corporation to review the plans and specifications or to review from time to time the progress of the Work, (b) the fees of the Corporation's attorneys engaged in the event of the Shareholder's breach or alleged breach of the provisions of this Apartment Alteration Agreement, or otherwise in connection with the Work, (c) damage to the Building, including carpeting, paint or wallpaper in the Building's hallways or to other common areas (including, without limitation, the cost of cleaning, shampooing, repairing or repainting the same if soiled or otherwise damaged), (d) damage to any other apartment in the Building, (e) Work extended beyond the Completion Date as provided for in paragraph 14 herein, (f) the use of facilities fee and/or close-out fee, as provided for in paragraph 14 hereof, or (g) any other expenses incurred by the Corporation in connection with any complaints or violations of this Apartment Alteration Agreement, the Corporation may deduct an appropriate sum from the deposit. The Corporation shall be the sole arbiter in the determination of the charges to be deducted from the deposit.

If the deposit is diminished by one-half of the original amount, the Shareholder shall replenish it to the full amount within three (3) days after the Corporation's demand. The Shareholder agrees that the Corporation may use, apply or retain the whole or any part of the security so deposited to the extent required or permitted hereunder.

If the Shareholder shall comply with all of the terms and conditions of this Apartment Alteration Agreement, the Shareholder understands that the security deposit or remaining balance thereof shall be promptly returned to the Shareholder after: completion of the Work; a statement, in a form acceptable to the Corporation, from the Shareholder's architect who signed the Shareholder's original plans that the Work has been completed in accordance with the approved plans and specifications and complies with all applicable laws; inspection of the Apartment by the Building's Chief Engineer and the Corporation's reviewing architect; delivery to the Corporation of two (2) sets of as-built plans showing all Building risers; copies of all Work permit close-out documentation filed with The New York City Department of Buildings; release of liens from all Contractors; a completed EPA Sample Renovation and Record-Keeping Checklist (Rider 4); receipt of an amended Certificate of Occupancy, if required; and receipt of a final sign off and close out with the Bureau of Electrical Control, if required.

**No housekeeping services will be restored to the Apartment until the Shareholder has complied with the foregoing conditions for return of the Security Deposit, provided however that with regard to the Work permit close-out letter from the DOB, the amended Certificate of Occupancy and final sign-off and close-out documentation from the**

19

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

**Bureau of Electrical Control, housekeeping services will be restored even in the absence of the delivery to the Corporation of these documents, upon a showing by the Shareholder to the satisfaction of the Corporation's architect, that the Shareholder is diligently pursuing the issuance of such documents.**

29.   <u>Required Work</u>.  The Shareholder agrees that the Shareholder shall, at the Shareholder's sole cost and expense, perform the following as part of the Work:

(a)   <u>Acoustical Attenuation and Sound Proofing</u>.  To install acoustical attenuation and sound proofing materials in and under new or suspended ceilings and within new floors and/or walls in the Apartment, as specified and directed by the Corporation's reviewing architect in his sole and absolute discretion.  Such soundproofing shall include but not be limited to the Shareholder's obligation to finish ceiling and soffit construction in plaster, mold-resistant gypsum board, or other acoustic ceiling material, fastened with NYC code-compliant hung black-iron system or furred with resilient sound isolating channels, installed to achieve a minimum Noise Isolation Class Rating (NIC) of 55 NIC between vertically adjacent apartments and spaces.

(b)   <u>Damp-Proofing and Waterproofing</u>.  When the Work involves disturbance or replacement of interior finishes at exterior walls, to expose the back-up masonry and existing damp-proofing and/or waterproofing materials and, prior to restoration or replacement of such interior finishes, restore or provide such new materials as are necessary to achieve a sound damp-proof and water-proof condition.  Shareholder shall submit the clear extent of such work as well as the proposed materials and construction detailing for such damp-proofing and water-proofing Work for review and approval by the Corporation's consulting architect.

30.   <u>Apartment Transfers</u>.  If, after making any alterations or installing any equipment pursuant to the Work, the Shareholder shall seek to transfer the Corporation's shares allocated to the Apartment and the proprietary lease appurtenant thereto, as a condition prior thereto, the Shareholder shall provide the Corporation with an agreement by the Shareholder's transferee in the form of Exhibit D annexed hereto pursuant to which such transferee agrees to assume all of the Shareholder's obligations hereunder, including the Shareholder's continuing obligations and understandings expressed herein.

31.   <u>Payment of Expenses; Discharge of Mechanics' Liens</u>.  The Shareholder will bear the entire cost of alterations and installations and pay all bills incurred in connection therewith, not later than thirty (30) days after completion of the Work.  If any mechanic's liens are filed for Work claimed to have been done or materials alleged to have been supplied, the Shareholder shall cause such liens to be discharged of record within ten (10) days after such filing.  If the Shareholder fails to do so, the Corporation may exercise any and all of the Corporation's rights and remedies under the Lease or this Agreement including, in its sole discretion, pay such lien, bond such lien or take any other action to discharge such lien.  In such event, within ten (10) days of a written demand by the Corporation, the Shareholder shall pay to the Corporation all amounts, plus interest from the date of payment by the Corporation at the highest New York

20

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

State statutory rate for interest on judgments, paid or incurred by the Corporation, including but not limited to attorneys fees and disbursements and bond premiums. If the Shareholder fails to timely make such payment, such sums shall be deemed to be and paid as Additional Rent under the Lease. The Corporation may also exercise all of its rights and remedies under the Lease.

32. <u>Close-Out of Work Permit; Amendment to Certificate of Occupancy</u>. Within forty (40) business days after the completion of the Work, the Shareholder will deliver to the Corporation an amended certificate of occupancy and a certificate of the Board of Fire Underwriters, if either be required, and such other proof as may be necessary to demonstrate that all Work has been done in accordance with all applicable laws, ordinances and government regulations, (including, without limitation, a New York City Department of Buildings (i) Letter of Completion, (ii) Certificate of Plumbing Inspection and (iii) Bureau of Electrical Control Certificate of Inspection), together with a statement from the architect or engineer who signed the Shareholder's original plans, in a form acceptable to the Corporation, that the Work has been executed in accordance with those plans and complies with all applicable laws, which statement shall be accompanied by two (2) sets of "as built" plans showing all Building risers and valves; copies of all Work permit close-out documentation filed with the New York City Department of Buildings; a completed EPA Sample Renovation and Record-Keeping checklist (Rider 4); a written statement from the Building's Chief Engineer that the Work has created no damage in Adjacent Premises or common areas of the Building which has not been repaired to the satisfaction of the injured party; and release of lien(s) from all Contractors. No appointments for a final DOB inspection to "sign-off" on the Work shall be made prior to the Corporation conducting an inspection to confirm that the Work complies with the approved plans and specifications and the Corporation shall have a reasonable time (not less than ten (10) business days) before the DOB inspection within which to make its inspection. If an amended certificate of occupancy or certificate of the Board of Fire Underwriters or sign off or close-out documentation from the New York City Bureau of Electrical Control is not required, the Shareholder's architect must submit a statement to that effect. If there is any doubt as to whether an amended Certificate of Occupancy is required at the completion of the Work, the Corporation's designated architect shall be the sole arbiter in resolving the doubt.

33. <u>No Opinion; No Reliance</u>. The Shareholder recognizes that, by granting consent to the Work and authorizing Shareholder's LPC and/or DOB filings, the Corporation does not profess to express any opinion as to the design, feasibility, cost or efficiency of the Work. In no event shall any approval or consent granted hereunder be construed to relieve the Shareholder from any responsibility or obligation contained herein or impose any liability on the Corporation with respect to the Work or Shareholder's LPC or DOB filings. The Shareholder acknowledges and agrees that no reliance may be placed by the Shareholder on the Corporation's architect designated pursuant to paragraph 3 with regard to the design, cost, feasibility, compliance with applicable laws or Building codes, efficiency of the Work or Shareholder's obligations hereunder. Notwithstanding anything to the contrary contained herein, neither this Agreement nor the Corporation's consent to the making of alterations or the Work shall in any way be construed as giving the Shareholder any right to either: (i) perform any work or enter into an agreement for the performance of any work in; or (ii) obtain the right of access to any other

21

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

apartment or any terrace, balcony or any common area in the Building, in connection with the performance of the alteration or approved Work contemplated under this Apartment Alteration Agreement. The Shareholder must obtain the consent of other shareholders if entry and/or access to their apartment, balcony or terrace is desired to complete the authorized Work and the consent of the Corporation if access to Building common areas is desired to complete the authorized Work.

34.    Failure to Comply. The Shareholder's failure to comply with any of the provisions hereof or the directions or requirements issued by the Corporation's consulting Architect or any other designee of the Corporation, shall be deemed a breach of the provisions of the Lease, pursuant to which the Corporation's consent to the Work has been granted, and, in addition to all other rights, the Corporation may suspend all Work and prevent workmen from entering the Building and/or the Apartment for any purpose, except that if they are accompanied by a member of the Building's staff they may remove their tools or equipment. In such event, the Corporation may also revoke the Corporation's permission for the Shareholder to undertake the alteration Work.

35.    Correction of Work. The Shareholder shall promptly correct all Work rejected by the Corporation as (a) defective, (b) failing to conform to this Alteration Agreement or the approved Work, the Shareholder's LPC and/or DOB filings authorized by the Corporation, performed pursuant to a DOB filing or Work permit issued that was not authorized in advance and in writing by the Corporation, or the laws, rules, orders or regulations of any governmental authority having jurisdiction over the Building or (c) creating any violation of any policy of any insurance carrier, whether or not such Work is fabricated, installed or completed. The Shareholder shall bear all costs of correcting such rejected Work, including compensation for the additional services of any architect, engineer, lawyer or other consultant engaged by the Corporation pursuant to the terms hereof or made reasonable and necessary thereby, which shall be treated as Additional Rent under the Lease.

36.    Release and Waiver of Claims. Shareholder releases the Corporation, its directors, officers, agents, employees and shareholders, from any and all liability for loss or damage to any of Shareholder's property which may result from or be in any way connected with the Work, provided however that nothing in this paragraph, nor in this Agreement, shall indemnify or hold harmless the Corporation against legal liability it might otherwise have for damage arising out of bodily injury to persons or damage to property contributed to or caused by or resulting from the negligence of the Corporation, its agents, servants or employees, whether such negligence be in whole or in part.

Shareholder hereby waives any claims which Shareholder may now or hereafter have against the Corporation and its respective former, current and future directors, officers, employees, agents and shareholders based upon the interruption or suspension of the Work by the Corporation regardless of the reason for such interruption or suspension.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

37.    Additional Rent.  The Shareholder agrees that all amounts, fees, penalties and expenses incurred by the Corporation and/or required to be paid by the Shareholder pursuant to this Agreement shall be considered Additional pursuant to the Lease.

38.    Security Procedures.  The Shareholder acknowledges that the Shareholder has been advised that no workers will be permitted in the Building without the express, prior authorization of an authorized representative of the Corporation.  The Shareholder must provide the Executive Office with a list of the workers expected to be admitted to the Building by name and type of work they are to perform.  Workers will not perform on any day any Work other than that identified by them on the daily log for that day.  All workers must have and display a proper photo identification, a current and valid union membership card for the trade/Work that they are to perform, and must otherwise comply with Building security procedures.  It is the Contractor's responsibility to ensure that an exclusively dedicated and qualified English-speaking foreman or supervisor with appropriate communication skills to communicate with the workers is at all times on site.  The Shareholder further acknowledges and agrees that Contractor and Shareholder shall ensure that prior to entering and upon exiting the Building each day, the Shareholder's workers, including the Contractor and all subcontractors, will be required to sign the daily log to be maintained by the Corporation at the service entrance to the Building, and receive a daily pass.  The Contractor shall employ a full-time project superintendent at the building, as detailed in paragraph 1(h) of this Agreement, and all Work shall be performed in the presence of the project superintendent.  If required by the Corporation, the Shareholder will engage a person provided by the Corporation at the Shareholder's sole cost and expense to provide additional security for the Building and its occupants and to coordinate the Work in the Apartment with other activities in the Building while the Work is proceeding.

39.    Conduct of Workers.  At no time during performance of the Work will a radio, tape player, compact disc player, television or similar sound-producing device be used in the Apartment or common areas of the Building.  No workers may lounge or smoke in the Apartment or any part of the Building's common areas, nor on the sidewalks directly adjacent to the Building.  Shareholder must provide bathroom facilities as well as a working slop sink for use by workers within the Apartment.  Workers may not use bathroom facilities or sinks in any other part of the Building.  Workers may not "borrow" tools or equipment owned by the Corporation.

40.    No Amendment; No Assignment.  This Agreement may not be changed orally. This Agreement shall be binding on the Corporation and its successors, and the Shareholder and his, her or its successors, personal representatives and authorized assigns.  No party may assign this Agreement or any of its rights or obligations hereunder without the prior written approval of the other party.

41.    Agreement Not Binding.  This Agreement shall have no force or effect until (a) this Agreement has been executed by the President or a Vice-President of the Corporation or a member of the Board of Directors designated by the President, (b) the Shareholder's filings with the LPC and/or the DOB are authorized by the Corporation and its reviewing architect, and

23

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

(c) the Corporation has received all documents, non-refundable fees and deposits pertaining to the Work required to be delivered by this Agreement.  The Shareholder acknowledges that no employee of the Corporation has any authority to execute or approve this Agreement or to waive any provisions thereof.  Any deviation from the Work approved in this Agreement or the authorized LPC and DOB filings made by the Shareholder shall void in its entirety the Corporation's permission to perform the Work granted hereby.

42.    No Waiver.  No waiver or delay in the enforcement of any provision, condition and/or covenant of this Alteration Agreement by the Corporation or Shareholder shall be deemed to imply and/or constitute a further waiver of the same or any other provision, condition and/or covenant of this Agreement.

43.    New York Law.  This Apartment Alteration Agreement shall be construed in accordance with the laws of New York and any action or proceeding arising out of or in any way connected with this Agreement may only be brought in a New York State court, venued in the County of New York.

44.    Entire Agreement.  This Agreement supersedes any and all prior and/or concurrent representations, promises, understandings and agreements, oral and/or written, between the Shareholder and the Corporation, its shareholders, officers, directors, agents, employees, independent contractors and professionals and constitutes the entire Agreement between the Shareholder and the Corporation and shall not be modified, amended and/or changed in any way except by written agreement signed by the Corporation and the Shareholder.

45.    Severability.  If any provision of this Apartment Alteration Agreement be adjudged void, voidable and/or illegal, such adjudication shall not affect the enforceability of the remaining provisions thereof.

46.    Completed Alteration.  The Shareholder agrees to take all precautions to prevent the completed apartment alteration from creating a "noisy" or disturbing condition to any other shareholder. The Shareholder further agrees that, if despite preventative measures to avoid "noisy" and disturbing conditions to other shareholders, including but not limited to the installation of acoustical attenuation and sound-proofing materials, as directed by the Corporation's reviewing architect or engineer pursuant to paragraph 29 hereof, the Corporation determines in its reasonable discretion, based upon shareholder complaints, that the Apartment alteration has created a "noisy" or disturbing condition, the Shareholder shall take all steps, at its sole cost and expense, to repair or remove (if necessary) the alteration to alleviate the disturbing condition.

47.    Notices.  Except as otherwise expressly provided for herein, all notices hereunder shall be in writing and sent by registered or certified mail, return receipt requested, addressed to the Shareholder at the Building and addressed to the Corporation at the Building with a duplicate notice addressed to the Corporation in care of the Executive Office.  Notices hereunder shall be deemed given on the date when mailed.

24

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

48.   Headings.  The captions and titles in this Agreement are for convenience only and shall not be construed as part of this Agreement.

49.   Contractor Licensing.  A law concerning home improvement contracts went into effect in New York State on March 1, 1998.  The provisions of this law apply to all home improvement contracts for more than $500.00 and address the issues of required licensing, contracts and the conduct of the contractor's business operations.  The Attorney General is responsible for enforcement of this law.  Information may be obtained by contacting the Attorney General's Office at:  New York Department of Law, Bureau of Consumer Frauds and Protection, 120 Broadway, 3rd Floor, New York, New York 10271, Tel: (212) 341-2000 or (212) 341-2314.

50.   Payment of Fees and Consideration.  Shareholder acknowledges and agrees that it has entered into this Agreement freely and independently, having consulted with such counsel and advisors as Shareholder deems advisable.  Shareholder further acknowledges and agrees that upon commencement  by Shareholder of the Work, Shareholder thereby releases the Corporation from any claims for or in any way related to Shareholder's payment of fees, deposits or other monies paid or payable hereunder.

51.   No Other Fees or Gratuities.  Except as provided for herein, no other fees (and no gratuities and/or other payments) are required or expected to be paid to the Corporation, its employees or agents in connection with the performance or approval of the Work.  If any such payments are solicited, the Shareholder should report same to an officer of the Corporation.

52.   No Third-Party Beneficiaries.  No person or entity not a party to this Agreement, including any other shareholder in the Corporation shall be deemed a third-party beneficiary hereunder nor, in pursuing any claims against the Shareholder or the Corporation that are parties to this Apartment Alteration Agreement, shall this Agreement form the basis for any claim by any person or entity not a party to this Agreement.

53.   Waiver of Jury Trial.  In any dispute regarding, arising out of or in any way connected with this Agreement or the Work, the parties mutually waive any right to a trial by jury.

54.   Proprietary Lease.  The terms and conditions of this Agreement Alteration Agreement shall not relieve the Shareholder of any obligation under the Lease for the Apartment or the Corporation's By-Laws and House Rules.

55.   No Personal Liability of the Corporation's Officers, Directors or Agents.  The Corporation's current, past and future officers, directors or agents, in their capacity as such, shall have no personal liability to the Shareholder for damages for any alleged breach of duty to the Shareholder in connection with or in any way related to the Work or this Apartment Alteration Agreement.

25

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

EXHIBITS A-F AND RIDERS 1-12 ARE ATTACHED
HERETO AND MADE A PART HEREOF

Very truly yours,

_____
Shareholder

_____
Shareholder

PERMISSION GRANTED AND RECEIPT
OF CHECK FOR SECURITY DEPOSIT IN
THE SUM OF $_____
ACKNOWLEDGED

**THE SHERRY-NETHERLAND, INC.**

By: _____
   Name:
   Title:

26

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

# EXHIBIT A

## CHECKLIST OF INITIAL AND CONTINUING SHAREHOLDER SUBMISSIONS

The following information, fees and deposits must be provided to The Sherry-Netherland, Inc., in triplicate, in order for the alteration to proceed.  Failure to provide the same may result in a delay in processing of the alteration application or the commencement or continuation of the Work.

| | **Initial Submissions (before Work may commence)** | **Date Submitted** |
|---|---|---|
| 1. | Alteration Application (3 copies) | _____ |
| 2. | Executed Alteration Agreement (3 copies) | _____ |
| 3. | Stamped Architect's drawings with Detailed Specifications and a Room-by-Room List of All Work (3 copies) | _____ |
| 4. | Scope of Work/Narrative Description in Layman's Terms (3 copies) | _____ |
| 5. | Indemnification and Representation Letters from Contractors | _____ |
| 6. | List of Contractors and Subcontractors, License Information and copies of Master License for Plumber and Electrician and copies of current and valid union membership cards for all Workers | _____ |
| 7. | Name and required Qualifications of Dedicated On-Site Supervisor for Work | _____ |
| 8. | Contracts with Contractors and Subcontractors | _____ |
| 9. | Contractors' and Subcontractors' Certificates of Insurance for Additional Named Insureds | _____ |
| 10. | Evidence of Shareholder's Homeowners' Liability Insurance and Premium Payment | _____ |
| 11. | Copies of Insurance Policies and all Endorsements and Evidence of Premium Payment | _____ |
| 12. | Evidence of Contractors' and Subcontractors' Lead-Based Paint Remediation Certification | _____ |
| 13. | HPD Lead-Based Paint Exemption Certificate | _____ |
| 14. | Evidence of Contractor's EPA Lead-Based Paint Remediation Certification, if required | _____ |
| 15. | Lead-Based Paint Test Results and Report from EPA Certified Inspector or Risk Assessor | _____ |
| 16. | Schedule for Work | _____ |

27

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

| | | |
|---|---|---|
| 17. | Contractor's Noise and Vibration Management/Mitigation Plan | _____ |
| 18. | Contractor's Certification of Compliance with Dust Mitigation Procedures Detailed in Rider 5 to this Agreement | _____ |
| 19. | Schedule of deliveries | _____ |
| | $1,500 payable to The Sherry-Netherland, Inc., (processing fee) | _____ |
| | $100,000 payable to The Sherry-Netherland, Inc., or such other amount as is determined by the Corporation (security deposit) $\_\_\_ payable to The Sherry-Netherland, Inc., (use of facilities fees) | _____ _____ |
| | $\_\_\_ payable to The Sherry-Netherland, Inc., (architectural, legal and other fees incurred prior to commencement of Work) | _____ |
| 20. | Completed DOB Form PW1, signed by Shareholder as owner/applicant | _____ |
| 21. | Copy of DOB Form PW1, as filed by Shareholder with DOB | _____ |
| 22. | Completed LPC Application Form | _____ |
| 23. | Copy of LPC Application Form, as filed by Shareholder with LPC | _____ |
| 24. | Indemnification and Representation Letter from Shareholder | _____ |
| 25. | Rider 4 to this Agreement, executed by the Shareholder and Contractor | _____ |
| 26. | Work Permits Issued Pursuant to Authorized Shareholder DOB Filing | _____ |
| 27. | Letter to Neighboring Shareholders (4 copies) | _____ |
| | **Continuing Shareholder Submissions and Fees.** | _____ |
| 28. | Proposed Revisions to Plans | _____ |
| 29. | Proposed Amendments or Supplements to DOB forms, signed by the Shareholder LPC and as owner/applicant | _____ |
| 30. | Copies of Amendments or Supplements to DOB forms, as filed by Shareholder with DOB as owner/applicant | _____ |
| 31. | Amended/Supplemental Work Permits Issued Pursuant to Authorized Shareholder LPC and DOB Filings | _____ |
| 32. | Monthly Reports on Status of Work | _____ |
| 33. | Amendments to Contracts | _____ |
| 34. | $\_\_\_ payable to The Sherry Netherland, Inc., (consideration for extension of Work Completion Date) | _____ |

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

| | | |
|---|---|---|
| 35. | Revisions to Schedule of Work; if Required | _____ |
| 36. | Revisions to Schedule of Deliveries | _____ |
| 37. | Amended Certificate of Occupancy, if Required, Unless Exempted Under Department of Buildings TPPN #3 of 1997 | _____ |
| 38. | Certificate of Board of Fire Underwriters, if Required | _____ |
| 39. | Architect's Statement of Compliance with Plans and 2 sets of "as-built" plans (including all building risers) | _____ |
| 40. | Department of Building Close-Out Documentation | _____ |
| 41. | Completed EPA Sample Renovation Record Keeping Checklist (Rider 4) | _____ |
| 42. | Contractors' Release of Lien(s) | _____ |
| 43. | Lead-Based Paint Exemption Certificate | _____ |
| 44. | $___ payable to The Sherry-Netherland, Inc., if Required, for Shareholder Addition of Electrical Service | _____ |
| 45. | Bureau of Electrical Control Final Sign-Off and Closeout Documentation, if Required, for Shareholder's Addition of Electrical Service | _____ |
| 46. | Bureau of Electrical Control Final Sign-Off and Closeout Documentation, if Required | _____ |

29

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

**EXHIBIT B**

**CONTRACTOR INDEMNIFICATION AND REPRESENTATION LETTER
(ON CONTRACTOR'S LETTERHEAD)**

Date:

The Sherry-Netherland, Inc.
781 Fifth Avenue
New York, New York 10022

       Re:      Apartment #_____ (the "Apartment")
                     781 Fifth Avenue
                     New York, New York 10022
                     Shareholder:_____ (the "Shareholder")

Dear Sir/Madame:

This letter will confirm that the undersigned has (i) reviewed and fully understands the terms and provisions of an Apartment Alteration Agreement dated _____, 2012 (the "Agreement") between The Sherry-Netherland, Inc. (the "Corporation") and the Shareholder and (ii) agrees to abide by the terms of the Agreement and the rules and regulations of the Corporation from time to time in effect.

The undersigned hereby represents that all insurance that Contractor is required to provide under this Agreement is in full force and effect, the policy limits shown on the insurance certificates provided to the Corporation are available and have not been and will not be reduced by prior or later claims and that the policies comply with the requirements of paragraph 1 of this Agreement.

The undersigned further agrees that it will not make any claim against, or seek to recover from (a) the Corporation, its directors and officers or (b) the Corporation's shareholders' servants, agents, directors, officers, partners, guests, licensees, invitees, tenants or employees (each, an "Indemnified Party" and collectively, the "Indemnified Parties") for any damage to persons or property by the perils within the scope of the policies described in the Agreement, unless the loss or damage is due solely to the negligence of that Indemnified Party.

The undersigned further agrees to defend, indemnify and hold harmless the Indemnified Parties and all other occupants of the Building, against any and all liability, including legal costs and expenses on account of loss of life or injury to any person or damage to property, happening in or arising out of or in any way relating to the performance of the Work. This agreement to indemnify specifically contemplates full indemnity in the event of liability imposed against the Indemnified Parties, or any of them, without negligence and solely by reason of statute, operation of law or otherwise, and partial indemnity in the event of any actual negligence on the part of an Indemnified Party either causing or contributing to the underlying claim. In that event, indemnification will be limited to any liability imposed over and above that percentage

30

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

attributable to actual fault, whether by statute, by operation of law, or otherwise, except as limited herein, provided however that nothing in this paragraph, letter or Agreement, shall indemnify or hold harmless the Corporation against legal liability it may otherwise have for damage arising out of bodily injury to persons or damage to property contributed to or caused by or resulting from the negligence of the Corporation, its agents, servants or employees, whether such negligence be in whole or in part.

The undersigned further agrees that it will perform the Work in compliance with all applicable laws, rules, orders and governmental regulations, including, but not limited to, the New York City Noise Control Code, as amended, and the Law, regulations and procedures defined and detailed in Riders 4 and 5 of this Agreement.

Sincerely,

[Name of Contractor]

By: _____
    Name:
    Title:
    Address:
    Telephone Number:
    Fax Number:
    Email Address:
    Cell Phone Number:

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

**EXHIBIT C**

TO:     [Addressed to the shareholders or occupants of the apartments adjacent to, and immediately above and below, the Shareholder's apartment]

Dear _____:

In accordance with the Apartment Alteration Agreement between me and The Sherry-Netherland, Inc. (the "Corporation") covering the alterations to be performed in Apartment ___, you are advised as follows:

1.     Alterations will be performed in Apartment ___ commencing on or about _____. The Apartment Alteration Agreement with the Corporation permits me an aggregate of ___ days to complete the alterations. Please be advised that while we will endeavor to minimize noise, some noise will occur sporadically throughout the Work period. We hope that you will understand and bear with us.

2.     I hereby agree to indemnify you for any damage whatsoever to your apartment caused by the alterations performed in my apartment as determined by the Corporation's reviewing architect. I agree to pay the reasonable cost of repair of such damage. At your option, such repair may be performed, at my expense, by contractors of your choice or by my contractors.

3.     In order to take advantage of the foregoing indemnification, you must permit my and the Corporation's designated representatives to inspect and document the condition of your apartment, at your convenience, prior to the commencement of my alterations. Please call me at _____ to arrange the inspection. You may have your own architect or other representative present at the inspection to take photographs and record the condition of your apartment. You must also permit the Corporation's representative to document the condition of your apartment, which documentation shall be retained by the Corporation. You must also permit my designated representative to inspect any damage you claim my alterations have caused.

4.     If you elect not to take advantage of the foregoing indemnification, I remain responsible for any damage to your apartment under the indemnification contained in paragraph 22 of the Apartment Alteration Agreement executed by me and the Corporation.

Very truly yours,

_____
Shareholder

Apartment No.:_____

Date:_____

32

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

## EXHIBIT D

## ASSUMPTION OF RESPONSIBILITY FOR APARTMENT ALTERATIONS AND ALTERATION AGREEMENT

WHEREAS, by a certain Assignment of Proprietary Lease, dated _____ ("Assignee") will acquire all of the right, title, and interest of _____ ("Assignor") in and to a certain lease (the "Lease") dated _____, between The Sherry-Netherland, Inc. (the "Corporation"), as Lessor, and Assignor, or [her][his] predecessor in interest (collectively, the "Predecessor Tenants"), as lessee, for apartment ___, including terrace(s) and balconies appurtenant thereto ("Apartment") in premises known as 781 Fifth Avenue, New York, New York; and

WHEREAS, by instrument dated _____ ("Assumption of Lease") Assignee will assume all of the obligations of Assignor as lessee under the Lease, and is about to become the lessee of the Apartment by virtue of said instrument or the execution of a new lease.

WHEREAS, the interior, windows and terrace(s) of the Apartment, among other things, may have been altered by Predecessor Tenants (the "Alterations");

NOW THEREFORE, in consideration of the premises and the consent of the Corporation or its directors to the assignment of the Lease to Assignee and to the transfer to Assignee of the shares of Lessor Corporation which accompany the Lease, Assignee hereby ASSUMES AND AGREES TO PERFORM the obligation to maintain and repair, at Assignee's sole expense, the portions or elements of the interior and exterior of the Apartment altered in any way by the Alterations including any structures, additions, fixtures, appliances, or other items installed or built in connection with such Alterations; indemnifies the Corporation, its officers, directors, agents and shareholders from any damage, loss or claim in any way related to the existence of the Alterations; and agrees that if Assignee shall seek to transfer the Lease and shares appurtenant to the Apartment, Assignee shall, as a condition precedent to any such transfer, cause his or her assignor to assume all of Assignees foregoing obligations.

Assignee hereby further ASSUMES AND AGREES TO PERFORM AND COMPLY with all the terms, covenants and conditions of that certain Alteration Agreement between Assignor and the Corporation dated _____ (copy attached hereto), including, without limitation, the obligation to maintain and repair, at Assignee's expense, the alteration Work which was the subject of the Apartment Alteration Agreement and any structures, fixtures, appliances, or other items installed or built in connection with such alteration Work.

Any breach of this Assumption Agreement or the obligations assumed hereby shall be a breach of the Lease.

This Assumption Agreement and all of its provisions shall be binding on Assignee and [her][his] estate, heirs, executors, administrators, personal representatives, successors and assigns.

New York, N.Y.

Date: _____.

_____, Assignee

33

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

State of New York   }

         } ss.:

County of New York  }

   On this _____ day of _____, _____, before me personally came _____, to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that [she][he] executed the same.


            _____

                Notary Public

34

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

**EXHIBIT E**

**CONTRACTOR INSURANCE ENDORSEMENT**

ADDITIONAL INSURED – CONTRACTORS

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Name of Person or Organization:

The Sherry-Netherland, Inc.,<br>
its directors and officers<br>
<br>
[Name of Shareholder]

WHO IS AN INSURED (Section II) is amended to included as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your Work" for that insured by or for you.

It is further agreed that such insurance as is afforded by this policy for the benefit of the Additional Insured shown shall be primary insurance, and any other insurance maintained by the Additional Insured shall be excess and non-contributory, but only as respects any claim, loss or liability arising out of the operations of the Named Insured, and only if such claim, loss or liability is determined to be solely the negligence or responsibility of the Named Insured.

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Form

The following changes are made to Section IV – Commercial General Liability Conditions:

The following is added to Condition 4.  Other Insurance as subparagraph d. Additional Insured:

d.    Additional Insured
Where you have entered into a written contract or agreement to name a person or organization as an insured under this coverage part and that written contract or agreement requires this insurance to be primary and noncontributory, we will not seek contribution from any other insurance unless the "Amendment of Other Insurance Condition" CG 00 55 03 97 endorsement applies.

35

©2013 Stroock & Stroock & Lavan LLP<br>
All Rights Reserved

NY 71722590v13

**EXHIBIT F**

**SHAREHOLDER INDEMNIFICATION AND REPRESENTATION
LETTER – NYC DOB REQUIREMENTS, INCLUDING FORMS
PW1 AND PW3; LPC FILINGS**

The Sherry-Netherland, Inc.
781 Fifth Avenue
New York, NY 10022

Re:    Apartment # \_\_\_\_
781 Fifth Avenue
New York, NY 10022

Dear Sir/Madam:

      This letter will confirm that the Shareholder has (i) reviewed and fully understands the terms and provisions of an Apartment Alteration Agreement dated _____, 2012 (the "Agreement") between The Sherry-Netherland, Inc. (the "Corporation") and the Shareholder and (ii) agrees to abide by the terms of the Agreement and the rules and regulations of the Corporation from time to time in effect.

      The undersigned further agrees and confirms that it is solely responsible for filing DOB Forms PW1, PW3 and TR-1 and any amendments or supplemental filings related thereto or required by the DOB as owner/applicant of the Apartment, and all LPC filings for permits, provided however that the undersigned shall not file nor cause such forms to be filed without, in each instance, prior written authorization from the Corporation and its architect.  The undersigned shall provide to the Corporation and its architect a copy of all DOB and LPC filings made by the Shareholder, within five (5) business days of filing.  The undersigned further agrees and confirms that it is solely responsible for the accuracy of the contents of DOB Forms PW1, PW3, all LPC filings, and any supplements or amendments thereto.  The undersigned hereby agrees that Form PW1 shall be completed as shown on the sample form attached hereto and that it will not make any claim against, or seek to recover from (a) the Corporation, its directors and officers and agents or (b) the Corporation's shareholders or such shareholders' servants, directors, officers, partners, guests, licensees, invitees, tenants or employees (each an "Indemnified Party and collectively, the "Indemnified Parties") and to fully defend, indemnify, release and hold harmless the Indemnified Parties and all other occupants of the Building against any and all liability, including legal costs and expenses on account of loss of life or injury to any person or damage to property, happening or arising out of or in any way relating to the performance of the Work or the Shareholder's LPC and/or DOB filings, provided however that nothing in this paragraph, letter or Agreement shall indemnify or hold harmless the Corporation against legal liability it may otherwise have for damage arising out of bodily injury to persons or damage to property contributed to or caused by or resulting from the negligence of the Corporation, its agents, servants or employees, whether such negligence be in whole or in part.

36

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

The undersigned further agrees that it will perform the Work in compliance with all applicable laws, rules, orders and governmental regulations, including, but not limited to, the New York City Noise Control Code, as amended, the Law, regulations and procedures detailed in Riders 4 and 5 of this Agreement and the terms of the Agreement.

Sincerely,

_____

Shareholder

_____

Shareholder

Date:_____

37

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

**PW1**

PAGE 5

| 26 | Property Owner's Statements and Signatures |
|---|---|

Falsification of any statement is a misdemeanor and is punishable by a fine or imprisonment, or both. It is unlawful to give to a city employee, or for a city employee to accept, any benefit, monetary or otherwise, either as a gratuity for properly performing the job or in exchange for special consideration. Violation is punishable by imprisonment or fine or both. I understand that if I am found after hearing to have knowingly or negligently made a false statement or to have knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application, report or certification of the correction of a violation required under the provisions of this code or of a rule of any agency, I may be barred from filing further applications or documents with the Department. Furthermore, I understand that I am responsible for insuring that a final inspection be performed when the permitted work is complete, and that a satisfactory report of final inspection be submitted, along with all required submittal documents, so that the NYC Department of Buildings may issue a letter of completion or certificate of occupancy within the time prescribed by law.

I have authorized the applicant to file this application for the work specified herein and all future amendments. I will not knowingly authorize any work that is not in compliance with the New York City Energy Conservation Code (NYCECC).

**Owner type:** ☒ Individual  ☐ DCAS  ☐ HHC  ☐ NYCHA  ☐ Partnership  ☐ DOE  ☐ HPD  ☐ NYS  ☐ Corporation *26A*  ☐ Other Government  ☐ Condo Unit Owner or Co-Op Tenant-shareholder *26A*

Is the owner a non-profit organization? ☐ Yes  ☐ No

Name (please print): _____

Relationship to Owner: SHAREHOLDER

Business Name/Agency: OR UNIT OWNER

Street Address: FILL OUT AND SIGN

City: HERE  State:  Zip:

Telephone Number:  Fax:

E-Mail Address:

Signature and Date ▶ _____   [SIGN HERE]

**Yes  No**

☐ ☐ **Fee Deferred Request Statement**
I hereby request a fee deferral for the work proposed on this application and understand that **all fees must be paid before issuance of any Certificate of Occupancy or job sign off.**

☐ ☐ **Fee Exemption Request Statement**
In accordance with §28-112.1 of the NYC Administrative Code I hereby state that the proposed work involves a building or property owned or used exclusively for the purposes indicated in such section.

☐ ☐ **Owner's Certifications Regarding Occupied Housing**
The site of the building to be altered or demolished, or the site of the new building to be constructed, contains one or more occupied dwelling units that will remain occupied during construction. These occupied dwelling units have been clearly indentified on the submitted construction documents.

☐ ☐ The site of the building to be altered or demolished, or the site of the new building to be constructed, contains occupied housing accommodations subject to rent control or rent stabilization under Chapters 3 and 4 of Title 26 of the New York City Administrative Code. **If yes, select one of the following:**

☐ The owner is not required to notify the Division of Housing and Community Renewal (DHCR) of the owner's intention to file because the nature and scope of the work proposed, pursuant to DHCR regulations, does not require notification.

☐ The owner has notified the Division of Housing and Community Renewal (DHCR) of its intention to file such construction documents/apply for such permit and has complied with all requirements imposed by the regulations of such agency as preconditions for such [filing/application].
*Provide date DHCR notified:*

☐ ☐ **Owner's Certification for Adult Establishments**
I authorize and intend to create, enlarge, or extend an establishment with adult activity and/or adult material as defined in ZR §12-10 "adult establishment" or related sign at the subject premises.

☐ ☐ **Owner's Certification for Directive 14 Applications (if applicable)**
I have read and am fully aware of the applicant's statement that the construction documents submitted and all construction documents related to this application will not require a new or amended Certificate of Occupancy as there is no change in use, exits, or occupancy. Furthermore, I understand that I am responsible for retaining a qualified design professional to perform a final inspection when the permitted work is complete and this professional must submit a satisfactory final inspection report to the NYC Department of Buildings within the time following inspection prescribed by Department rule.

| 26A | Condo/Co-Op Board or Corporation Second Officer |
|---|---|

Name (please print): _____

Title: BOARD OFFICER

Street Address: FILL OUT AND

City: SIGN HERE  State:  Zip:

Telephone Number:  Fax:

E-Mail Address:

Signature and Date* ▶ _____   [SIGN HERE]

*Signature required for authorized representative of Condo or Co-Op board. Second officer signature not required for corporations.*

| 26B | Lessee Responsible for Annual Sign or Marquee Permit |
|---|---|

Name (please print): _____

Relationship to Owner: _____

Business Name/Agency: _____

Street Address: _____

City:  State:  Zip:

Telephone Number:  Fax:

E-Mail Address:

| **Internal Use Only** |
|---|

Pre-Filer Name:

Pre-Filer Signature:  Date:

Cost Estimate: $

Amount Due: $  Verified by ▼  Date ▼

Initial Amount Paid: $

Balance Due: $

Stamps, Certifications and Notes:

01/11

38

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

**RIDER 1**

**INITIAL ARCHITECTURAL SUBMISSIONS**

The Shareholder agrees to deliver, with this executed Alteration Agreement, as many copies of the following as are requested by the Corporation:

      a.      Architectural Drawings

            1.      Plot Plan.
            2.      Key Plan to locate apartment with respect to building, elevator, egress stairs, street.
            3.      Demolition Plans.
            4.      Floor Plans.
            5.      Reflected Ceiling Plans.
            6.      Wall Elevations.
            7.      Partition Schedule.
            8.      Finish Schedule.
            9.      Door Schedule.
            10.     Details of construction including all new ceiling and soffit details.
            11.     Tenant Safety Notes.
            12.     Egress Notes as required.
            13.     Fireproofing Notes as required.

      b.      Electrical Drawings, including Riser Diagrams, as required, and Electrical Load Letter showing existing and proposed loads for Lighting, Power and Air Conditioning, respectively.

      c.      Plumbing Drawings, including Riser Diagrams, as required.

      d.      Mechanical Drawings, as required.

      e.      Appliance Fixture and Fittings Specifications, as required.

      f.      Project Specifications, as required

      g.      Acoustical STC Ratings for Floor Assemblies, Ceiling Assemblies, and Demising Wall Assemblies

39

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

RIDER 2

**CONDITION OF ADJACENT PREMISES**

The Shareholder shall not commence any Work until the Chief Engineer and/or the Corporation's architect and, if requested, the representatives of the Shareholder or resident of the Adjacent Premises, has made an inspection of the Adjacent Premises and the Corporation's designee has recorded its condition, with photographs or video recording, if deemed necessary, and created a report and documentation to be retained by the Corporation.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

RIDER 3

## ASBESTOS

1.    The Shareholder hereby agrees to do the following prior to the commencement of the Work:

(a)    At the Shareholder's expense, retain an asbestos investigator, selected from a list of approved investigators supplied by the Corporation to either

(a) review the building's construction and renovation records as well as any prior inspection reports to determine the existence and possible disturbance of any asbestos-containing material ("ACM"); or

(b) inspect the areas to be renovated to  determine the existence and possible disturbance of any ACM.

(b)    If the results of the review or investigation reveal the presence of ACM in a friable condition, but said friable ACM is less than ten (10) square feet or twenty-five (25) linear feet, the Shareholder will present the Corporation with proof of the investigator's filing of FORM ACP5 ("Not an Asbestos Project" form).  If the results of the review or investigation determine that more than ten (10) square feet or twenty-five (25) linear feet of ACM is in a friable condition, the Shareholder will present the Corporation with proof of the investigator's filing of FORM ACP7 ("Asbestos Inspection Report" form).

(c)    If, in the Corporation's sole opinion, based upon the results of the review or investigation, no abatement Work is required, the Shareholder will be entitled to commence the Shareholder's alteration Work, subject to the requirements of this Alteration Agreement.

(d)    If, in the Corporation's sole opinion, the review or investigation reveals that abatement Work is required, the Shareholder will proceed as follows:

(c) Prior to the performance of any asbestos abatement Work, the Shareholder will submit to the Corporation the name(s) and qualifications (including any licenses, liability insurance policies, and resume) of any asbestos consultant(s) and Contractor(s) the Shareholder intends to use for asbestos abatement Work, along with the name and qualifications (including licenses and insurance policies) of the Contractor's hauler(s) and the licenses of all asbestos supervisors and handlers who are to perform the abatement Work.

(d) Upon receipt of the Corporation's approval of the consultant(s) and Contractor(s), the Shareholder will retain such consultant(s) and Contractor(s) to encapsulate, enclose, treat or otherwise abate, as appropriate, all friable ACM.  Said abatement, as well as the removal, hauling and disposal of the ACM shall be performed in conformance with all federal, state, and local laws and regulations.

41

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

(e)  In connection with such abatement Work, the Shareholder will furnish the Corporation with copies of all reports and tests that are required by applicable laws and regulations, and with a copy of the final report which is to be provided by the Shareholder's asbestos consultant.

(f)  In connection with asbestos removal and disposal, the Shareholder will cause the asbestos hauler to furnish the Corporation with lists of all dump locations to be used, and a certification that the dump sites are EPA approved, and thereafter furnish to the Corporation all dump tickets and disposal manifests.

2.      The Shareholder and the consultants(s) and Contractor(s) retained by the Shareholder shall comply with all Federal, State and local laws, rules and regulations pertaining to asbestos control, as the same have been or may be promulgated, supplemented or amended from time to time prior to and during the Work, including, without limitation New York City Local Law 76 of 1985.  In addition, the Shareholder agrees to indemnify the Corporation for any loss, cost, expense (including without limitation attorneys' fees and disbursements), damages, liabilities or fines arising (i) from any failure by the Shareholder or any consultant or Contractor retained by the Shareholder to fully conform to all of the foregoing or (ii) in the defense of any suit, action, claim or violation in connection with the abatement Work.

3.      The Shareholder's Contractors shall obtain, in addition the insurance required under Paragraph 1(h) of this Agreement, hazardous material transportation liability insurance with limits not less than $2,000,000 for bodily injury and property damage.  The Shareholder's Contractors shall obtain such a policy or arrange for the Corporation, its directors, officers and agents to be named as additional insureds on the policy of the Contractors' waste transporter. Such policy shall specifically cover all claims and groups of people who might bring claims relating to asbestos.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

RIDER 4

## LEAD-BASED PAINT/DUST AND DEBRIS CONTAINMENT–
## USE OF EPA CERTIFIED CONTRACTORS AND WORKERS

A. **Prior to Commencement of the Work**

Prior to commencement of the Work, the Shareholder shall have the Apartment tested for lead-based paint conditions by an Environmental Protection Agency ("EPA") certified inspector or risk assessor, using an EPA recognized test kit and following the manufacturer's instructions, and an independent New York State licensed laboratory, and submit the results of same to the Corporation.  If lead-based paint conditions are found to be present in the Apartment, or if Shareholder fails to provide the results of such tests to the Corporation, the Shareholder shall comply with all provisions of this Rider 4 detailed below.

Shareholder shall also apply for the exemption from presumption of lead based paint, as provided in Sec. 11-08 of the HPD Rules and furnish the Corporation with a copy of Shareholder's application and exemption granted by the City of New York.

If the Shareholder: (a) provides to the Corporation test results and a report that a determination has been made by an EPA certified inspector or risk assessor that lead-based paint conditions are not found to be present in any part of the Apartment where Work is to be done, or paint or other surface coating in those components of the Apartment affected by the Work do not contain lead equal to or in excess of 1.0 milligrams/per square centimeter or 0.5% by weight, and (b) applies for and obtains an exemption under Section 11-08 of the HPD Rules and furnishes the Corporation with a copy of such exemption certificate granted by the City of New York, the Shareholder shall be exempt from complying with any further obligations under the EPA Regulations and Rules which became effective in 2010.

In any event, the Shareholder shall cause its Contractors to comply with the Dust Mitigation Procedures set forth in Rider 5 (Demolition) of this Agreement.

B. **Work Requirements**

If not exempt hereunder, the Shareholder shall cause the Shareholder's contractors to use only workers who are trained and certified by the EPA in the use of safe work practices and take precautions to prevent the spread of dust and debris which may contain lead.  The Shareholder and the Corporation shall receive from the Contractors and each worker copies of their respective photo identification certification cards approved by the EPA and assurances that they have knowledge of lead-based paint hazards, are certified in lead safe practices and they will perform the Work and clean-up the Work in a manner which will avoid creating lead-based paint hazards.

The federal Task Force on Lead-Based Paint Hazard Reduction has recommended certain maintenance practices during the Work, including:  (1) limiting access to the Work area to only workers, (2) covering the Work area with six mil polyethylene plastic or equivalent, (3) protecting the workers, (4) protecting the Shareholder's belongings by covering or removing them from the Work area, (5) wetting the painted surfaces before disturbing the paint and (6)

43

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

wetting the debris before sweeping. The Shareholder shall cause the Shareholder's contractor or workers not to use unsafe paint removal practices, including (1) open flame burning, (2) power sanding or sandblasting (unless a special vacuum attachment is used to contain dust), and (3) dry scraping more than a de minimis surface area (de minimis means an area of less than one square foot per room). The Shareholder shall cause the Shareholder's Contractors and/or workers to perform their Work consistently with the recommendations of the Task Force and the requirements detailed on the last page of this Rider 4 and shall upon completion of the Work perform specialized cleaning of the Work area using methods designed to safely remove dust and debris which may contain lead. The Shareholder shall also cause the Shareholder's Contractor and/or workers to comply with the Dust Mitigation Procedure as set forth in Rider 5 (Demolition) of this Apartment Alteration Agreement and to perform clearance testing, as required on the Checklist on the last page of this Rider 4.

Shareholder and its contractor and subcontractor(s) shall comply as applicable with all federal, state and local laws and implementing regulations, regarding lead-based paint hazards, including without limitation, the New York City Childhood Lead Poisoning Prevention Act of 2003 (New York City Local Law 1 of 2004), Chapter 11 Title 28 of the Rules of the City of New York (the "HPD Rules"), and United States Department of Housing and Urban Development Regulations, 40 Code of Federal Regulations 745 and all EPA requirements (collectively, the "Law"). The Law concern precautions in preventing spreading dust and debris, disclosure, Work rules (including but not limited to the use of only EPA certified Contractors and Workers, if required), testing, notification to other residents, and retention of records by the owner of the Apartment, copies of which must be provided to the Corporation's Executive Office. This Rider is intended to and hereby does allocate complete responsibility of owner for compliance with the HPD Rules and the Law and all requirements thereunder as regards the Apartment to the Shareholder. Shareholder hereby releases and agrees to defend, indemnify, and hold harmless the Corporation, its officers, directors and Executive Office, and all Building residents from any claims or costs arising from their violation of the HPD Rules, the Law, and all other applicable rules and laws regarding lead-based paint hazards with regard to the Apartment, provided, however, that nothing in this paragraph, letter or Agreement shall indemnify or hold harmless the Corporation against legal liability it may otherwise have for damage arising out of bodily injury to persons or damage to property contributed to or caused by or resulting from the negligence of the Corporation, its agents, servants or employees, whether such negligence be in whole or in part.

## C. <u>Additional Documentation Requirements</u>

No more than sixty (60) days prior to beginning renovation activities in the Apartment, the contractor shall provide the Shareholder with the Environmental Protection Agency (EPA) pamphlet entitled, Protecting Your Family from Lead in the Home, (the "Pamphlet"). If the Apartment is occupied by other than the Shareholder, the contractor shall provide the occupant with the Pamphlet. The contractor shall be responsible for obtaining the Shareholder's or the occupant's written acknowledgment of receipt of the Pamphlet or a certificate of mailing evidencing same. The Shareholder hereby acknowledges that the Corporation has no liability or obligation in connection with this notification requirement of the EPA.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

**When the final invoice for the Work is delivered to the Shareholder, or within 30 days of completion of the Work (whichever is earlier), Shareholder shall cause the Contractor to complete and provide the attached completed form, "EPA SAMPLE RENOVATION RECORDKEEPING CHECKLIST," to the Executive Office.**

_____        _____
Shareholder                                                                    Contractor

45

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

## EPA SAMPLE RENOVATION RECORDKEEPING CHECKLIST

Name of Firm: _____

Date and Location of Renovation: _____

Brief Description of Renovation: _____

_____

Name of Assigned Renovator: _____

Name(s) of Trained Workers, if used: _____

_____

Name of Dust Sampling Technician, Inspector, or Risk Assessor: _____

_____

☐ Copies of renovator and dust sampling technician qualifications (training certificates, certifications) on file.

☐ Certified renovator provided training to workers on (check all that apply):

☐ Posting warning signs  ☐ Setting up plastic containment barriers

☐ Maintaining containment                              ☐ Avoiding spread of dust to adjac

☐ Waste handling  ☐ Post-renovation cleaning

☐ Test kits used by certified renovator to determine whether lead was present on components affected by renovation (identify kits used and describe sampling locations and results):

_____

☐ Warning signs posted at entrance to work area.

☐ Work area contained to prevent spread of dust and debris

☐ All objects in the work area removed or covered (interiors)

☐ HVAC ducts in the work area closed and covered (interiors)

☐ Windows in the work area closed (interiors)

☐ Windows in and within 20 feet of the work area closed (exteriors)

☐ Doors in the work area closed and sealed (interiors)

☐ Doors in and within 20 feet of the work area closed and sealed (exteriors)

☐ Doors that must be used in the work area covered to allow passage but prevent spread of dust

☐ Floors in the work area covered with taped-down plastic (interiors)

☐ Ground covered by plastic extending 10 feet from work area—plastic anchored to building and weighted down by heavy objects (exteriors)

☐ If necessary, vertical containment installed to prevent migration of dust and debris to adjacent property (exteriors)

☐ Waste contained on-site and while being transported off-site

☐ Work site properly cleaned after renovation

☐ All chips and debris picked up, protective sheeting misted, folded dirty side inward, and taped for removal

☐ Work area surfaces and objects cleaned using HEPA vacuum and/or wet cloths or mops (interiors)

☐ Certified renovator performed post-renovation cleaning verification (describe results, including the number of wet and dry cloths used):

_____

☐ If dust clearance testing was performed instead, attach a copy of report.

☐ I certify under penalty of law that the above information is true and complete.

_____        _____

Name and Title                                    Date

46

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

RIDER 5

**DEMOLITION**

The Shareholder agrees to give the Corporation, the Executive Office and the owners or occupants of Adjacent Premises telephone notice at least three (3) Working days prior to the date any demolition is scheduled to commence.  The Shareholder acknowledges that any and all demolition Work will be done only between the hours of 10:00 a.m. and 4:00 p.m., Monday through Friday only, and must be completed within ten (10) consecutive Working days from its commencement unless otherwise approved in writing by the Corporation.  The Shareholder further agrees to cause its Contractors and/or workers to comply in all respects with the requirements set forth in Rider 4 (Lead-Based Paint/Dust and Debris Containment - Use of EPA Certified Contractors and Workers) including but not limited to Shareholder's obligations to comply with all federal, state and local laws, and implementing regulations, regarding lead-based paint hazards and to indemnify the Corporation, its directors, officers and agents for any violations thereof, as set forth in Rider 4.  The Shareholder understands that such demolition Work or any Work may be halted at any time if, in the Corporation's sole discretion, the Corporation shall determine that such Work is excessively noisy or creates undue hardship for any other shareholder(s) or occupants; however, the Shareholder may recommence the Work if the Shareholder ameliorates such situation.

**DUST MITIGATION PROCEDURES**

In connection with any demolition, the Shareholder shall comply, and cause its Contractors/workers to comply with the methods and technologies developed and directed by the Corporation, so as to minimize vibrations and excessive noise, especially as regards removal of ceilings and floors and including but not limited to the use of water to reduce the dust when walls and/or ceilings are removed, and to cause its Contractors/workers to comply with the following procedures:

I.      Equipment (unless otherwise is specified by the Corporation's reviewing architect or the Building's Chief Engineer):

        A.      Polyethylene sheeting:  Provide 6.0 mils thick minimum flame-resistant polyethylene sheeting that conforms to requirements set by the National Fire Protection Association Standard 701, Small Scale Fire Test for Flame-Resistant Textiles and Films. Provide largest size possible to minimize seams.

        B.      Reinforced Polyethylene Sheeting: Provide 10 mils thick minimum translucent, nylon reinforced or woven polyethylene, laminated flame resistant, polyethylene film that conforms to requirements set forth by the National Fire Protection Association Standard 701, Small Scale Fire Test for Flame-Resistant Textiles and Films.  Provide largest size possible to minimize seams.

        C.      Duct Tape:  Provide duct tape in 2" of 3" width as indicated, with an adhesion which is formulated to stick aggressively to sheet polyethylene.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

      D.      Rebond Carpet Padding.

      E.      Masonite board, 1/8" thick.

      F.      Heavy duty zippered closure similar to American Dust Control Zip Wall.

II.    Construction of Dust Control Work Areas:  Completely isolate Work areas from other parts of the Building so as to prevent dust or debris from passing beyond the isolated area:

In Public Areas:

      A.      Cover carpeted public halls with one layer of reinforced polyethylene sheeting 6-mils in thickness.  Place continuously taped Masonite sheets on top of the sheeting.

      B.      During delivery and removal of material, the walls must be protected up to 4 feet in height with Masonite in all public areas.

      C.      Provide protection of Ground Floor delivery path, as per direction of the Building's Chief Engineer.

Within the Work Area:

      A.      Provide a heavy duty zippered closure on the outside (Public Hall side).  Just inside the door, place a damp cloth.

      B.      Individually seal all ventilation openings (supply and exhaust), thermostatic control valves, doorways, windows, convectors, door grills, and other openings inside the Work area including fan coil heating and cooling units, and duct registers in Adjacent Apartments, with duct tape alone or with polyethylene sheeting at least 6 mil in thickness, taped securely in place with duct tape.  Maintain seal until all Work is completed.  Take care in sealing of convector to avoid melting or burning of sheeting.

      **C.      Install exhaust fans, as directed and specified by the Corporation, which must develop not less than 0.125° static pressure, which shall be operated until midnight during the drying of highly volatile paint or staining procedures.  Such exhaust fans must be HEPA filtered exhaust units for negative air for those phases of the Work which generate dust and/or chemical odors.  Such negative air must be generated in all portions of the Work area, so that any air movement egresses the Building via HEPA fans and not into any part of the Building.  Such fans shall be operated during all phases of the Work regardless of the size or scope of the Work.**

      D.      Cover floors and any carpeting in public hall with one (1) layer of reinforced polyethylene sheeting at least 10 mils in thickness.  Place corrugated cardboard or "masonite" sheets on top of the polyethylene sheeting.

      E.      Cover floors that are not carpeted with one (1) layer of reinforced polyethylene sheeting at least 10-mils in thickness.  Place corrugated cardboard or "masonite" sheets on top of the polyethylene sheeting.  Duct tape all seams in floor covering.  Install Rebond carpet at 90°

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

angle to the poly sheet and continuously duct tape.  Cover with Masonite at 90° angle to the padding and continuously duct tape.

F.      Sheet Plastic:  Protect surfaces of the Work area with one (1) layer of plastic sheeting on floor and walls.

G.      Cover floor of the Work area with one (1) layer of polyethylene sheeting, each at least 6 mils in thickness, turned up walls at least 12 inches.  Form a sharp right angle bend at junction of floor and wall so that there is no radius which could be stepped on causing the wall attachment to be pulled loose.  Duct tape all seams in floor covering.  Locate seam in top layer six feet from, or a right angle to, seam in bottom layer.  Install sheeting so that top layer can be removed independently of bottom layer.

H.      Cover all perimeter walls in Work area with one layer of polyethylene sheeting, at least 6-mil in thickness, mechanically supported and sealed with duct tape (overlap sheets 4" – 6") in the same manner.  Tape all joints including the joining with the floor covering with duct tape.

I.      Generally, prevent fumes and odors from escaping the Apartment and entering other apartments or the common areas of the Building.

J.      In extreme dust situations, at the discretion of the Building's Chief Engineer or architect, a dust control enclosure vestibule shall be constructed at the entrance to the Work area.  The dust control enclosure shall have a flap opening (of at least 5' high x 3' wide) in one vertical side of the enclosure by sealing an extra layer of polyethylene sheeting with duct tape to the top side of the enclosure.  All openings in floors, walls and ceilings must be sealed.  A negative air machine must be utilized with proper filters.

K.      At the discretion of the Executive Office and/or the Corporation's consulting architect, foam sealant or similar product may be required to be used in pipe chases or other slab penetrations so as to minimize traveling dust or debris.

L.      Shareholder and Contractors shall comply with any additional or different dust control and/or sound-proofing measures, as directed by the Corporation's reviewing architect or the Building's Chief Engineer, including, but not limited to, air quality monitoring by an independent professional monitor and testing by a New York State certified laboratory.

M.      Materials and workers must enter and exit through the service pathway unless another path is approved.

N.      Any infringement of egress is prohibited.

O.      Demolition shall be managed to coincide with the amount of debris that can be properly removed in that day.  All debris is to be properly spray wetted, sealed in bags or wetted down in removal containers that will not permit dust to leave the vestibule or enter the public halls.  Building requirements for site protection are to be indicated on the Shareholder's drawings.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

P.      Excessive dust or noise infiltration and/or excessive vibrations will permit the Corporation to stop the Work.

Q.      Repair, patch and paint to match existing any and all damage at hallways, landings and stairs.

R.      Removal of original concrete fill slabs in the Apartment shall be performed by prior saw cutting with a diamond blade, cut in a 1" diamond pattern, removing individual squares with an electric hammer and/or hammer and chisel.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

RIDER 6

## LOCATION OF ROOMS/CONSTRUCTION OF INTERIOR WALLS/FLOORING/CEILINGS

1.      The Shareholder agrees that in the event granite, ceramic tile, marble or similar hard-surfaced flooring is installed in any area other than the kitchen, bath and entry foyer, the ongoing maintenance and repair of such flooring will be the responsibility of the Shareholder. No removals of floor slab materials will take place in those locations.  Locations where there is no topping slab or finished floor system may not be disturbed for the purpose of depressing the level of the slab to accommodate new finish floors.  In all cases, the Corporation will require installation of a sound retardant underlayment beneath such flooring, the details of such underlayment to be approved by the Corporation.  No threshold saddle between the Apartment and the Building's public hall may be raised above its existing height.

2.      When ceilings or floors are demolished, all exposed ceiling and floor slabs shall be inspected for holes, penetrations, voids or cracks and, if any such conditions are found, they shall be fire-safed and smoke-safed, at Shareholder's sole cost and expense.  Shareholder also agrees, at its sole cost and expense, to install acoustical attenuation and sound-proofing material in such ceilings, walls and/or floors, as required by Code and/or as same shall be specified and directed by the Corporation's reviewing architect or engineer, in his or her sole and absolute discretion.

3.      Shareholder is required to finish ceiling and soffit construction in plaster, mold-resistant gypsum board, or other acoustic ceiling material fastened with NYC code-compliant hung black-iron system or furred with resilient sound isolating channels, installed to achieve a minimum Noise Isolation Class Rating (NIC) of 55 NIC between vertically adjacent apartments and spaces.

4.      No structural slabs, demising walls, floor slabs or exterior walls may be channeled or cut.

5.      All new interior walls shall be constructed of block and plaster or plaster on wire lath, metal studs, metal or gypsum lath and plaster, or metal studs with a double layer of Quiet Rock Fiberock Cement Board, other base material acceptable to the Corporation's consulting architect. **Only mold resistant materials may be used.**

6.      The Shareholder agrees that no Work shall be done that will change the "footprints of the building" i.e., no noisy room such as a kitchen may be relocated above a quiet room such as a bedroom, except in the Corporation's sole and absolute discretion and upon submission and review of all structural details required by the Corporation's consulting architect.

7.      The walls separating the Apartment from an Adjacent Apartment in the Building must be left intact and sound proofing must be installed by Shareholder in such walls.  At the Corporation's sole discretion and direction, the Shareholder may be required to add acoustic improvements to these walls.  Cutting into or penetrating such walls is prohibited, unless the Corporation and the Shareholder owning the affected apartment consents to same, in writing and

51

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

in advance.  Work performed adjacent to such walls must be done in a manner that does not disturb the fire ratings and sound transmission coefficient ratings of such walls and Shareholder shall use best efforts to not disturb either the occupants or the contents of the Adjoining Premises.

8.     The Shareholder agrees to take all precautions to prevent any completed alteration from creating a "noisy" or disturbing condition to any other shareholder.  The Shareholder further agrees that, if despite preventive measure to avoid "noisy" and disturbing conditions to other shareholders, the Corporation determines in its reasonable discretion, based upon shareholder complaints and expert technical adviser, that the alteration has created a "noisy" or disturbing condition, the Shareholder shall take all steps, at its sole cost and expense, to repair or remove (if necessary) the alteration Work to alleviate the disturbing condition.

9.     Procedures for Installation of Hard Floor Surfaces

A     New Finished Wood Flooring

(a)     Existing finished flooring and sub flooring shall be removed to the slab level, however, new finished wood flooring may be installed on existing wood subflooring, provided that the latter is in suitable condition.

(b)     Where the wood subflooring is also to be removed, it shall be replaced on existing wood sleepers with one layer of 3/4" plywood prior to wood finish floor installation.  The new floor construction must include a properly detailed installation of "Kinetics SR Floorboard" or "Akzo Enkasonic Mat" or similarly acoustically effective material, subject to review and approval by the Corporation and its architect.

(c)     Tape or tack-glue perimeter isolation of 3/8" thick fiberglass board to isolate the floor and break the sound transmission path between floor and walls.  Perimeter isolation to be full height of underlayment and plywood layers.

B     Stone or Tile Flooring

(a)     In dry areas:

(i)     Upon removal of existing flooring and the wood subflooring and partial removal of the slag fill, level concrete or cement – mortar setting slab with reinforcing wire shall be installed over the existing slag fill, upon curing.

(ii)     A resilient membrane (Strataflex, Kinetics or AKZO Enkasonic Mat or Laticrete 170, or approved equal) shall be applied on the concrete surface.

52

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

        (iii)    Finish stone or tile flooring using Laticrete #125 thin set or mud set method shall be installed.

C      In wet areas.

    Same as in (i) thru (iii) above, except a continuous waterproofing membrane (Laticrete or approved equal) shall be applied on the concrete setting slab extending on a two stage drain and up onto the surrounding walls or curbs.  Finish stone or tile flooring using Laticrete #125 thin set or mud set method shall be installed.

10.    All required/proposed waterproofing installation details shall be submitted to the Corporation's reviewing architect and the Board for prior review and approval.

53

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

RIDER 7

**AMENDED CERTIFICATE OF OCCUPANCY**

If the Work requires an amended Certificate of Occupancy for the Building:

(a)     The Shareholder shall have, at the Shareholder's expense, an application in the form of an "Alteration" describing the proposed Work on file with the New York City Buildings Department within thirty (30) days after the Corporation's written approval of the Shareholder's alteration request.  This application, if required, shall note that an amended Certificate of Occupancy will be sought.  A copy of any such application shall be simultaneously submitted to the Corporation.  The Shareholder will file, at the Shareholder's expense, an application for an amended Certificate of Occupancy within thirty (30) days after completion of the Work.  The Shareholder shall diligently pursue obtaining an amended Certificate of Occupancy and shall keep the Corporation informed of the status of this process on a regular basis.  No appointments for final Building Department inspection to "sign-off" on the Work shall be made prior to the Corporation or the Corporation's representatives conducting an inspection to confirm compliance with the approved plans and specifications, and the Corporation will have reasonable time to make such inspection.  The Shareholder shall furnish a copy of the amended Certificate of Occupancy to the Corporation promptly after receipt.

(b)     Prior to the commencement of any Work requiring an amended Certificate of Occupancy for the Building, the Shareholder shall deliver to the Corporation an additional security deposit in the amount of $15,000, in addition to the deposit provided for in paragraph 28 of this Apartment Alteration Agreement to secure the Shareholder's obligations regarding obtaining such amended Certificate of Occupancy, and the Shareholder agrees that the Corporation may use such funds to obtain an amended Certificate of Occupancy if Shareholder fails to perform said obligations in a timely manner.  This security shall be in addition to any other security the Shareholder may be required to deliver in connection with the Work.  The Shareholder shall be entitled to receive a refund of such security, or any balance thereof, after: completion of the Work; inspection of the Apartment by the Building's Chief Engineer and the Corporation's reviewing architect or engineer; a statement from the architect or engineer who signed the Shareholder's original plans, in a form acceptable to the Corporation, that the Work has been executed in accordance with such plans and complies with all applicable laws; delivery to the Corporation of two (2) sets of as-built plans showing all Building risers and valves; copies of all Work permit close-out documentation filed with The New York City Department of Buildings; receipt of a release of lien(s) from the Contractors, and delivery to the Corporation of an amended Certificate of Occupancy.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

RIDER 8

**ALTERATIONS VISIBLE FROM EXTERIOR/REPLACEMENT OF WINDOWS/AIR CONDITIONING SYSTEMS/THROUGH THE WALL AND CENTRAL SYSTEMS**

1.      No window shall be replaced except in compliance with the following:

(a)      Prior to the installation of replacement windows, the Shareholder shall cause the Shareholder's contractor to provide a sample of the proposed replacement windows, as well as installation details including plans, sections and elevations of window extensions, profiles and waterproofing details, to the Corporation for the Corporation's review and approval to assure that such replacement windows conform in color, style and dimensions to existing windows in the Building and that such windows meet the requirements of any federal, state, or city department or agency having jurisdiction over the replacement of windows in the Building, including the New York City Landmarks Commission.  No replacement window will be installed without the approval of the Corporation.

(b)      If a consent, permit or approval is required from any federal, state, or city department or agency to lawfully perform such window installation, the Shareholder shall first obtain such consent, permit or approval and provide a copy of such consent to the Corporation before proceeding with such installation.  **Window installation and replacement and exterior HVAC grille installation and replacement must conform with the Building's Master Plans filed with the New York City Landmarks Commission.**

2.      The installation of windows must comply with the following specifications:

(a)      Windows must be installed to fit the openings in accordance with the submitted specifications.  The windows shall have a finish coat to match the Building's exterior windows in color.

(b)      New frames must be installed in masonry openings set true and plumb and anchored to masonry.

(c)      Exterior perimeter must be caulked between new frames and masonry with butyl type compound applied to hand pressure gun and trowelled off neatly.

(d)      Any broken plaster around windows must be repaired and trowelled to a hard smooth finish.

3.      It is understood that the windows Shareholder installs will become the responsibility of the Shareholder, and thereafter any defects or malfunctioning of these windows will be repaired at the expense of the Shareholder.  Any exterior leaks resulting from this installation are also the responsibility of the Shareholder.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

4.      New windows must meet an HC-40 Performance class or better as defined by ANSI/AAMA/WWDA 101/I.S.2-97 and an AAMA Certification label is required.

5.      The contractor is to maintain site safety and is fully responsible for complying with all applicable city regulations regulating site safety.

6.      Windows may not be closed off without Board approval.  Previously closed off windows must be made accessible and vented.

7.      Exterior brick walls shall not be penetrated for any purpose other than installation of through-the-wall air conditioning systems, which shall only be permitted upon the Corporation's approval of plans and specifications for same in its sole discretion.  All openings shall be made through brickwork and not granite, ledges or decorative stonework. All such openings shall be centered under the window(s) of the room(s) where the units are to be installed.

8.      Exterior limestone and masonry walls and appurtenances shall not be penetrated or modified for any purpose whatsoever.

9.      No air-conditioning system shall be installed or replaced except in compliance with the following:

10.      Prior to the installation of any air conditioning unit, the Shareholder shall cause the Shareholder's Contractor to supply to the Corporation, for its review and approval, architectural and engineering details of the unit and its installation, including plans, sections, elevations showing waterproofing, sleeve and support details as well as the unit specifications.

All exterior grilles of air-conditioning equipment shall conform to Building requirements, and must be centered (wherever possible) beneath a window or pair of windows and shall be mounted flush with the Building's façade and shall be maintained by the Shareholder and shall be replaced when they deteriorate.  The exterior grilles, bolts and screws shall be of non-corrosive material so as to prevent staining of the Building by corrosion.  The Corporation shall have the right to paint the exterior grilles a uniform color at the expense of the Shareholder.  No unit may project beyond the Building's facade.  All exterior grilles will be flush with the brickwork.  Each unit must be installed in line with other units in the Building.  The Shareholder shall install temporary weather panel and waterproof enclosure at louver area during the period between sleeve installation and unit/louver installation.

11.      Any HVAC units installed or replaced must be units of similar operation to the Building's standard, approved by the Corporation's reviewing architect or engineer and must be fully waterproofed to prevent water or steam infiltration to other apartments in the Building.  All HVAC and AHU units must be equipped with drip pans, water sensor, automatic shutoffs and alarms.

12.      The installation of any air-conditioning unit will be made secure, weather tight and water tight and in such manner as to create no disturbance, nuisance or damage due to noise,

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

vibration, air or water leakage or other cause and shall be insulated on the exterior and interior of the Building to prevent heat loss.

13.     Any permission granted to install or replace an air-conditioning unit shall not to be deemed a license or easement and is revocable by the Corporation at any time on written notice in the event of a violation by the Shareholder of any of the provisions of this Apartment Alteration Agreement or if required by any State, Federal, City department or agency having jurisdiction thereof.

14.     The Shareholder recognizes that there will be no change in the operation of the Building's heating system or air conditioning system to facilitate the functioning of any heating or air conditioning units the Shareholder may install.

15.     All required consents, approvals and permits from all federal, state and local agencies having jurisdiction, including the New York City Landmarks Commission, shall be obtained and provided to the Executive Office before any through-the-wall air conditioning system is installed.

16.     Any installation of central air conditioning shall be accompanied by a report from an acoustical engineer acceptable to the Corporation demonstrating that no excessive noise will be made by such equipment.  The Shareholder agrees to take all precautions to prevent any "noisy" or disturbing condition to other shareholders.  The Shareholder further agrees that if the Corporation determines in its reasonable discretion, based upon shareholder complaints, that the equipment has created a "noisy" or disturbing condition, the Shareholder shall take all steps, at its sole cost and expense, to repair or remove (if necessary) the equipment to alleviate the disturbing condition.  No part of any central air conditioning unit may be mounted on the exterior of Building walls or terraces without express board approval.  All requests for central air conditioning units must be filed with the Department of Buildings and an Equipment Use Permit obtained.  Copies of annual Equipment Use Permits or renewals thereof must be filed with the Superintendent as and when renewable.

17.     The installation of any through-the-wall air-conditioning system shall use non-staining and rust-resistant material and shall include a waterproofing membrane at floor level for each existing or new air-conditioning unit, constructed as per Building standard detail.  Such required waterproofing detail shall be set forth in the scope of renovation Work and shown on the relevant alteration documents.  The waterproofing membrane must be tested and shown to be effective prior to final Board approval.  The installation of any air-handling, air conditioning or condensing unit shall, in addition to the foregoing, include a waterproofing pan with an electrical sensor that will automatically shut off such unit if the unit is leaking and the drain is not working.

18.     All operating portion's of the Building's heating system including steam pipe expansion joints, steam valves and steam traps, shall be accessible by access doors properly sized for maintenance and replacement of the operating parts.

19.     All through-the-wall air conditioning units must have back up electric heat to accommodate the shut off of the boiler.  In the event the installation of any through-the-wall air

57

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

conditioning units require the removal of the radiator, the branch steam piping must be removed and capped at the riser.

20.    Where Work is being performed that affects the exterior of the Building, the sidewalk below shall be protected by the Shareholder at all times.

21.    Shareholder and his/her successors shall be responsible for maintenance and repair of windows and air conditioners installed by Shareholder

22.    Where air conditioning systems are removed, the masonry and/or stonework must be restored to match the pre-existing facade conditions

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

## RIDER 9

## **PLUMBING**

      1.      All Work on plumbing piping and components must be performed by a New York City or State licensed master plumber; must conform to New York City Building Code requirements; and must conform to and be compatible with existing Building plumbing systems.

      2.      All new copper piping shall be properly separated from piping of dissimilar material to prevent galvanic corrosion. Only threaded brass or type "K" copper piping may be used where plumbing is concealed. No hot or cold piping is permitted below the floor.

      3.      Where new plumbing fixtures or gas pipe systems are installed and where any part of any existing plumbing fixture or gas pipe system is altered, all new roughing and conveniently located shut-off valves and check valves will be easily accessible. The Shareholder shall be responsible for locating and testing all plumbing shut-off valves, and all branch plumbing from the riser to the new fixtures including hot and cold shut-off valves must be replaced by the Shareholder, at the Shareholder's sole expense. All steam traps must be located, inspected and approved by the Building's architect and replaced by the Shareholder at the expense of Shareholder. The Shareholder will not, without the Corporation's prior approval, enclose or obstruct access to the existing heat or water pipes, valves or other equipment not presently enclosed. No plumbing or heating risers may be relocated without the Corporation's specific written consent. In any event, whether or not approval is granted, the Corporation shall have the right to remove any impediments to access to such heat or water pipes, valves and equipment for the purpose of repair or any other purpose, and the Shareholder shall pay any expenses the Corporation may incur in removing these impediments, and shall assume all costs of restoring the same. Access doors must be provided at all plumbing valves, and at all operating parts of all plumbing and mechanical systems, including steam piping expansion joints and valves.

      4.      The Shareholder agrees that the Shareholder and the Shareholder's successor-in-interest shall assume full responsibility for the future repair and maintenance of the plumbing lines located in the Apartment and any equipment installed as part of the Work. The Shareholder further agrees that the Shareholder and the Shareholder's successor-in-interest shall bear any and all costs for any plumbing leaks or other conditions which cause damage to the Adjacent Premises or other apartments in the Building, if such leakage or damage results from the Work or the equipment installed as part of the Work.

      5.      The details of all plumbing installations, including materials and methods of installation, shall be noted on the plans and specifications for the Work and subject to the Corporation's approval and shall be designed to allow access to radiators and valves. Any such radiator enclosure must be easily removed.

      6.      The details of all radiator enclosures and method of installation shall be set forth on the Shareholder's plans and specifications and shall be designed to allow access to radiators and valves. Any such radiator enclosure must be easily removed.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

7.      Hammer arrestors shall comply with the New York City Building code and be of a sealed cylinder type; air, columns shall not be permitted.  All hammer arrestor installations must be inspected by the Corporation or its consulting architect prior to the wall being enclosed.

8.      Only legal gravity fed toilets shall be permitted to be installed in the Building.  Only 1.6 gallon models or any others specified by the U.S. Department of Environmental Protection may be installed.

9.      In the event the Work involves exposing and/or moving plumbing pipes, the Corporation shall inspect the exposed pipes and make a determination as to whether they are required to be replaced.  If the Corporation determines, in its sole discretion, that such pipes are required to be replaced, the Shareholder shall do so at the Shareholder's sole cost and expense, whether the exposed pipes serve the Apartment or an adjacent apartment.  The Corporation shall have the right to install new risers at the Corporation's expense, where plumbing is in the Building's original configuration.  In any event, Shareholder must replace all branch piping and lines at the Shareholder's sole cost and expense, as detailed below and as may be further directed by the Corporation.

10.      All new bathrooms must comply with Local Law 86 of 1996 with respect to the installation of Anti-Scald Valves on all tubs and showers.

11.      All tubing to refrigerator for icemaker or cold water service shall be configured in a loop back to a valve and then drain so that this low volume feed may be flushed out from time to time as necessary.  Installation of same must be observed by the Building's Chief Engineer.

12.      All water supply lines will fed through walls and not floors unless approved by the Board.  Cutting or channeling into structural floor or ceiling slabs is prohibited.

1.   The Corporation reserves the right to request smoke testing of concealed duct Work.

2.      All domestic hot and cold water branch line pipes and mixing valves shall have check valves to prevent backflow and cross connect and all hot and cold water piping shall be insulated.

3.      All branch piping (hot water, cold water, waste, and vent piping) must be replaced with accessible branch valves for the hot and cold water branches where:

     (a)      Bathroom tile is replaced.

     (b)      Kitchen cabinets are replaced.

     (c)      Fixtures are relocated.

     (d)      In all areas of the Apartment where all finishes and fixtures are being replaced or reconfigured.

4.      Branch pipe sections shall be removed as close to the risers as possible, so that the abandoned stubs or pipe sections remain in contact with the Building's potable water network.

60

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

5.      Moving of risers and stacks including gas, steam, water and waste is not permitted.

6.      Replacement of branch piping is to include new branch shut-off and soft-seated, spring loaded check valves to be located just beyond the shut off valves.  All hot water connections to the Riser "T" must incorporate a minimum of three (3) elbow swings using threaded brass, to allow for expansion.

**7.**      Where branch piping is being replaced, galvanized branch domestic water piping which feeds fixtures within the Apartment must be removed and replaced with copper or other piping material approved by the Corporation's consulting architect.  **The branch pipe sections shall be removed as close to the risers as possible, so that no abandoned stubs or pipe sections remain in contact with the Building's potable water network.**

8.      An air chamber is required at all hot and cold branch lines that feed sinks, lavatories, water closets and washing machines; or, provide one air chamber per fixture.

9.      If any alteration to the heating system fails to supply adequate heat, the Shareholder will be responsible for supplemental heating.

10.      When radiators are replaced or relocated, branch steam piping shall be replaced to the risers and returns.  Steam supply piping in walls and floors shall be insulated.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

RIDER 10

**INSTALLATION OF APPLIANCES**

1.      The Shareholder agrees not to cause or permit without the Corporation's specific prior written approval,  (a) the installation of a jacuzzi/whirlpool tub, sauna, steamroom, steam showers or the like (collectively, "Whirlpool") or (b) the enlargement of existing bathrooms or the installation of additional bathing facilities which would cause a "wet" area to be located over a "dry" area in the apartment below.  In no event shall the Shareholder install a kiln or similar oven not for cooking purposes, or perform any alterations which would entail cutting into the floor or ceiling slab of the Apartment for electrical or plumbing Work or for any other purpose. The Shareholder understands and acknowledges that any approval of the Shareholder's installation and operation of a Whirlpool is a conditional approval.  The Shareholder agrees that if, at any time, any shareholder of any apartment in the building is determined by the Corporation, in the Corporation's reasonable judgment, to have suffered any damage, disturbance or inconvenience caused by the Whirlpool, including without limitation, the effects of noise or seepage from the installation or operation of the Whirlpool, the Corporation may, in the Corporation's sole discretion, require the Shareholder (i) to immediately cease the operation and use of the Whirlpool and/or (ii) to disconnect the Whirlpool mechanism within thirty (30) days.  If the Shareholder fails to cease the operation or fail to disconnect the Whirlpool mechanism as set forth in the immediately preceding sentence, the Corporation may enter the Apartment (upon telephone notice) and cause such cessation and/or disconnect of the Whirlpool mechanism at the Shareholder's cost and expense.

2.      In no event shall an existing bathroom be enlarged or reconfigured or any additional bathing facilities be installed which would cause a "wet" area to be located over a "dry" area in the apartment below, without the Corporation's express written consent.

3.      The Shareholder further expressly agrees not to cause or permit the installation of any other appliance or fixture whatsoever unless the same shall have been labeled on the plans and specifications submitted to the Corporation herewith and approved by the Corporation in writing, provided, however, that appliances and fixtures may be installed in the place of appliances and fixtures set forth in the plans and specifications approved by the Corporation if such substitute appliances and fixtures are of like kind, function and basic specifications as the appliances and fixtures set forth in the plans and specifications approved by the Corporation. The Executive Office shall be notified in advance of such substitute installations.  The Corporation strongly encourages the installation of appliances with the highest Efficiency Star rating.

4.      The design and scope of electrical appliances must conform with the existing electrical capacity of the building.

5.      Existing gas-service range appliances, if replaced, shall be replaced with gas-service range appliances.

6.      No portable dishwasher or clothes washer shall be installed in the Apartment.  All appliances must be installed directly into the Building's plumbing systems and installation must

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

be approved by the Corporation's consulting architect.  All appliances shall be properly vented. Venting details shall appear on the Shareholder's plans.  Should new or additional vents be approved by the Corporation's consulting architect, such vents must be located in the non-street facades of the Building and must correspond exactly to the location of existing vents in that line. All vents must be keyed into the brick work, and properly waterproofed and hooded to prevent water infiltration and masonry deterioration. Kitchen exhaust fans may not be connected to existing kitchen exhaust shafts.  Range hoods with a capacity greater than 900 CFM are prohibited.

7.      In the event that there is a complaint concerning noise, vibration or exhaust heat from any appliance or other equipment installed, the Shareholder agrees to take immediate steps to eliminate the cause for the complaint and, in the event the situation is not resolved to the satisfaction of the Board of Directors, to remove such appliance or equipment.

8.      **In no event shall any Shareholder be permitted to install a garbage disposal unit in the Apartment.**

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

RIDER 11

**ELECTRIC**

1.       No alteration Work which will affect the electric service or relocation of any electric riser to the Apartment shall be permitted unless and until a proposed electrical plan is submitted to and approved by the Corporation's architect and/or a consulting engineer of the architect's choice.  The proposed electrical plan must be detailed, must show branch circuit design, must include complete load capacity analysis of pre-existing and proposed conditions, and shall be submitted for lighting and power systems and air conditioning systems, respectively. The Shareholder shall also furnish a letter from a licensed electrician, engineer or architect who shall certify that the electrical loads required as a result of the Work will not be in excess of the present electrical capacity of the Apartment and will not adversely affect the Building's electric service.  Electrical plans, riser diagrams and engineering calculations shall be accompanied by catalog cut sheets for proposed appliances and mechanical equipment.  If the Shareholder's proposed electrical load and requirements are in excess of the present electrical capacity of the Apartment, no additional electric service will be brought into the Apartment without the Corporation's approval.

2.       All electrical Work must conform to NYC Electrical Code.  A separate letter documenting the proposed modifications and electrical loads being added shall be prepared by Shareholder's engineer and submitted to the utility company (Consolidated Edison) prior to final approval by the Corporation, a copy of which will be submitted to the Corporation's consulting architect and/or a consulting electrical engineer of the architect's choice.

3.       If, in the Corporation's sole discretion, the Corporation approves  additional electric service to be brought into the Building at the Shareholder's sole cost and expense, the Shareholder agrees to pay to the Corporation a one-time fee of $300 per single phase amp for such additional electric service, in addition to the professional fees as detailed in paragraph 6 of this Rider.

4.       Any major electrical modifications or rewiring must be accompanied by a separate electrical riser and separate metering approved by the Corporation.  If a new riser is installed, all existing wiring replaced by such riser must be removed from the basement level to the Apartment, and the Shareholder must repair all damage caused by such removal, including but not limited to, all plastering and painting at the Shareholder's expense.

5.       Actual hookup of any electric service to the Building's main service must be handled by the Building's electrician at the Shareholder's expense.

6.       Any proposed electrical upgrade will be reviewed by the Corporation's reviewing architect or engineer or an electrical engineer retained by the Corporation with regard to available service, points of connection, and real estate issues for new conduit runs.  The Shareholder agrees to bear all professional fees associated with any review, correction or amendment to the Shareholder's proposed electrical plan prepared by the Corporation's architect or engineer and/or a consulting engineer of the architect's or engineer's choice.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

7.      The Corporation requires conduits or risers to major power sources to be placed outside the Building in the rear.  (Positioning of lines in the Building's basement to outside conduits or risers will be determined by the Building's architect.)  Note: If it is necessary to have a rigger's license to install new wires or conduits, the Shareholder will be so advised by the Executive Office and the Shareholder will be responsible for such charges, as Additional Rent under the Lease.

8.      Upon completion of the project, the Shareholder shall  provide to the Executive Office final sign-off and close out documentation with the New York City Bureau of Electrical Control.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

RIDER 12

## LANDSCAPING OF TERRACES, ROOFS OR BALCONIES/FURNITURE AND OTHER INSTALLATIONS

The following regulations and guidelines shall be adhered to by all Shareholders owning apartments with adjoining terrace areas or roofs.

1.      No surfaces of the floor, walls, railings, or doors may be painted, coated and/or decorated in any fashion, unless approval has been requested in writing, and granted, in writing, by the Board of Directors.

2.      No irrigation, watering or lighting system shall be placed onto the terrace decks unless approval has been granted, in writing, by the Board of Directors.  Maintenance of such systems, including but not limited to weatherproofing, trip-hazard protection, shall be the exclusive responsibility of the Shareholder.  No irrigation or watering system may spill water on the parapet walls.

3.      All planters placed onto the terrace decks, shall conform with all the requirements as set forth by the New York City Department of Buildings, and the New York City Building Code, as well as all Memoranda issued by the Housing Preservation and Development Agency, Department of Code Enforcement, as well as the Guidelines set forth below.

4.  Nothing shall be attached to the Building's exterior, including, but not limited to the Building's parapets and chimney.

## TERRACE PLANTER GUIDELINES

This document is provided as a guideline for the construction, placement and support of earth-filled planting containers located on terrace surfaces. In all cases such containers shall be subject to review and approval by the Board of Directors of this Corporation.

### Submission Requirements

A DRAWING AT THE SCALE OF 1/4" = 1'- 0" INDICATING THE LAYOUT OF PLANTERS AND THE DIMENSION AND CALCULATED WEIGHT OF EACH PLANTER SHALL BE SUBMITTED FOR EACH TERRACE PRIOR TO CONSTRUCTION OR INSTALLATION OF PLANTERS. THE BOARD OF DIRECTORS WILL APPROVE OR PROVIDE THEIR COMMENTS IN DISAPPROVING EACH PLAN IN WRITING. COSTS OF PREPARATION AND REVIEW OF SUCH PLANS ARE TO BE BORNE BY THE SHAREHOLDER.

APPROVED TERRACE PLANS WILL BECOME PART OF THE CORPORATION'S FILES, AND ANY CONSTRUCTION NOT APPROVED BY THE BOARD WILL BE REMOVED AT SHAREHOLDER'S EXPENSE FOLLOWING TWO WEEK ADVANCE NOTICE TO THE SHAREHOLDER BY THE BUILDING MANAGEMENT.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

## Weight of Planters

The total calculated weight of all planters on any terrace surface shall not exceed five (5) pounds per square foot on the total terrace area (i.e., a 300 square foot terrace may have no more than 1500 pounds of planters).

The maximum calculated weight of any planters without soil and dunnage, shall be 25 pounds, so that each such planter shall be light enough to be moved, by hand, by two people. Planters of construction exceeding 25 pounds shall have their soil capacity reduced accordingly.

The maximum weight of saturated soil within any planter shall be 350 pounds.

The maximum volume of any planter shall not exceed 7.7 cubic feet. Any combination of internal dimensions may be used to achieve this volume (e.g., 18"h x 20.5"w x 36"1)

The maximum height of any planting shall be eight (8) feet with a maximum spread of four (4) feet.  The tops of all plants, shrubs and trees shall not extend more than 72" above the balcony or terrace deck surface.  All plants, shrubs and trees must be pruned as often as is necessary to stay within the maximum allowable size (72" above the balcony or terrace deck surface and the Building line.)

## Placement of Planters

Planters shall be spaced so as not to create weight in excess of 30 pounds per square foot over any contiguous area of 30 square feet or more.

Planters shall not be placed closer than 2" to any wall or parapet, nor within 10" of any drain or pitch box.

Planters shall not block access or egress from or to any area of roof or terrace and may not block any legal means of egress.

Planters shall not be placed on any parapet or railing structure.

No climbing plants shall be allowed to adhere directly to any surface of the Building.

No planter shall be placed on any area of the roof not containing a paving system approved by the Building Architect.

No planter shall be placed directly on gravel ballast or directly on roofing membranes.

Planters shall not be placed on or hung from any raised structure, penthouse wall or roof, or attached in any way to the Building exterior.

67

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

Planters shall not cover more than 10% of the deck surface area.

### Support of Planters

No planter shall rest directly on a roof or deck surface.

Bearing blocks of stone or concrete measuring 6" x 6" x 2" shall be placed under each planter; one block shall be provided for each two (2) square feet of base area. Such dunnage shall be arranged in a manner to allow free flow of surface run-off water draining from all areas of the balcony or terrace deck to the drain.

### Planter Construction

Planters shall be constructed so as to be self-supporting.

Planters shall be constructed of rot-resistant wood species, plastic or other durable lightweight materials. Non-ferrous fasteners shall be used.

Planters must have an adequate number of drainage holes at the bottom of the container or not higher than 2-1/2" from the bottom.

### Soil

Planters shall be filled with a mix of Perlite and topsoil. The weight of the mixture shall not exceed 65 pounds per cubic foot when saturated. A combination of 1/3 Perlite and 2/3 topsoil will normally weigh less than 65 pounds per cubic foot, when saturated with water.

### Anchorage

Large plants and shrubs shall be anchored to their planters with guy wires to prevent their being uprooted in high winds. Perlite and soil mixture is not as dense as natural soil and provides less root support.

### Maintenance

Shareholders shall be entirely responsible for the maintenance of all plant materials and containers, and shall maintain all decks, roof drains and drain covers clear of debris and leaves and all other debris which may clog drains or drain lines.

Wind driven soil and/or debris shall not be allowed to accumulate on the deck surface and act as a medium for the germination of seeds.

The responsibility for, and the cost of, moving any Shareholder installed planting to permit the Building to do normal and/or emergency repairs or maintenance shall be borne by the Shareholder.

Automatic watering systems are not permitted, unless specifically approved by the Board of Directors. If such approval is given, Shareholder must enter into a maintenance

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved
NY 71722590v13

agreement with a landscape company insuring that water is properly drained during the winter season.  Agreements must be updated and submitted to management.

Outdoor carpeting, wood decks, or other terrace surface covers are prohibited.

### **General Notes**

When roof loading is at or near the loads specified herein, an engineer designated by the Corporation shall be consulted at Shareholder's expense, to review plan and, if he/she so determines, to require modifications to same.

These specifications do not take into account extraordinary loads imposed by unmovable furniture, sculpture, fountains, gazebos or other structures. All such installations shall be subject to review and approval by the Board of Directors.

©2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

## FURNITURE AND OTHER INSTALLATIONS

1.      Every effort shall be made to distribute the weight of terrace installations over the greatest possible surface area to avoid the compression or movement of underlying waterproofing membranes which may result in leakage. Concentration of weight may also cause bending in Building structure, masonry displacement and damage to interior plaster.

2.      Any furniture erected as a permanent fixture to the roof or terrace, shall have plans submitted to, and approved, by the New York City Department of Buildings, and the Board of Directors.

3.      Placement of furniture must not block any legal means of egress.

4.      Shareholders of apartments with direct access to terraces or roof areas are responsible for the maintenance of the deck surface and drains.  All drain covers and deck surfaces must be kept free of leaves, plant debris and all other debris which may clog the drain covers or drain lines.

5.      Wind driven soil and/or debris shall not be allowed to accumulate on the deck surface and act as a medium for the germination of the wind driven seeds.

6.      No objects may rest on top of a terrace or roof parapet wall and/or be supported from railings or soffited areas.

7.      Terrace or roof areas are not to be used for storage of bicycles, carts, snow tires, furniture, firewood, etc.

8.      All installations placed on deck surfaces shall be constructed of materials that will not rust, to prevent staining of the exterior envelope of the Building.

9.      All installations shall be of sufficient weight, or secured to the terrace, to prevent them from being blown over the surface, and possibly over the side of the terrace or roof.

10.     Sun umbrellas shall not be placed onto the terraces or roofs.

11.     The installation of awnings is not permitted, without prior Board approval.

12.     Wood fencing and sheds shall not be erected on terraces or roofs.  Fencing or dividers on a roof or terrace shall comply with all pertinent building code and government regulations, subject to the Board's approval and:

(e)     shall be constructed from non-combustible materials;

(f)     shall be of such height and design and be appropriately anchored so as not to impair the structural integrity of either the Terrace, roof or parapet wall;

70

Initials _____

© 2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

(g)      shall be attached to the building in a manner that does not impair the waterproofing integrity thereof nor the guarantee, if any, of the Lessor's contractors regarding waterproofing;

(h)      shall be attached in a manner structurally satisfactory to the Lessor; and

(i)      shall not cause excessive vibrations.

13.      In order to comply with Local Fire Codes and prevent fires, neither gas nor charcoal grills are permitted on the terraces or roof and no cooking or grilling is permitted.

14.      All electrical fixtures and wiring on the terraces must conform with the NYC Building Codes and must be approved for outdoor use.  All electrical installations must be performed by a licensed electrician and approved by the Board of Directors.

15.      No roof areas may be enclosed.

16.      It is the responsibility of the Shareholder to move all installations and structures as necessary for Building maintenance needs at the Shareholder's sole expense.  If the Shareholder fails or refuses to remove same, the Corporation retains the right to remove or relocate such structure(s), which will be performed at the sole expense of the Shareholder and charged to Shareholder as Additional Rent under the Lease.

17.      Shareholder is solely responsible for the cost of repairs resulting from damage caused by its actions, its failure to properly maintain the terrace or roof area, and/or for any damage which may be caused, directly or indirectly, by the presence of planters, objects or installations placed on the terrace or roof.

18.      Wood decking shall not be placed on the terraces.  The decking on terraces shall not impede water drainage, and/or cause the railing and/or parapet heights to be less than 3'-6" above the finished deck surface.

19.      The Corporation reserves the right to withdraw permission to have any planters or objects on the terraces or roof areas by written notice to the Shareholder(s) and Shareholder(s) shall comply with the provisions of the Lease and any House Rules from time to time in effect regarding terraces or roofs, as the case may be.

20.      The Executive Office and/or the Corporation's consulting architect are required and shall be permitted by the Shareholder to regularly monitor all plantings and/or other installations for their compliance with these guidelines.  The Corporation may also enlist the services of a professional engineer to determine the appropriateness of same and the Corporation's determination will be final.  Any costs related to such an evaluation shall be the sole responsibility of the Shareholder.

21.      The Corporation retains the right, in its sole discretion, to modify these guidelines as circumstances warrant.

71

Initials _____

© 2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

22.     The installation of awnings is not permitted.

23.     Installation of planting and watering systems will require a maintenance agreement with a landscape company insuring that water is properly drained during the winter season.  Agreements must be updated and submitted to management.

24.     Exterior lighting may not be installed on terraces or roofs, without prior Board approval.

25.     No audio systems, stereo speakers or loud music will be permitted on any roof or terrace.

72

Initials _____

© 2013 Stroock & Stroock & Lavan LLP
All Rights Reserved

NY 71722590v13

## ADDENDUM TO APARTMENT ALTERATION AGREEMENT

This addendum (the "Addendum") is to be made part of, and incorporated into the Apartment Alteration Agreement, dated as of _____, 2023 (the "Apartment Alteration Agreement"), between The Sherry-Netherland, Inc. (the "Corporation") and Genever Holdings LLC (the "Shareholder") for Apartment 1801 at 781 Fifth Avenue, New York, New York 10022. In the event of a conflict between any terms of the Addendum and terms of the Apartment Alteration Agreement, the terms of the Addendum shall govern.

1.      Jurisdiction.  Notwithstanding anything to the contrary in the Apartment Alteration Agreement, any action or proceeding arising out of or in any way connected with this Addendum and the Apartment Alteration Agreement may only be brought in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court").

2.      Fees and Security Deposits.  Notwithstanding anything to the contrary in the Apartment Alteration Agreement:

   a.   The Corporation waives the architect fee under Section 3 of the Apartment Alteration Agreement;

   b.   The Corporation waives all fees related to the completion of work under Section 14(a) of the Apartment Alteration Agreement;

   c.   The Corporation waives the use-of-facilities fee under Section 14(b) of the Apartment Alteration Agreement;

   d.   The amount of the refundable security deposit in Section 28 of the Apartment Alteration Agreement shall be $50,000; and

   e.   No additional $15,000 security deposit will be required under Section 28 of the Apartment Alteration Agreement because the proposed Work does not require an amended Certificate of Occupancy.

3.      Bankruptcy Court Approval.  The obligations of the Shareholder under this Addendum and the Apartment Alteration Agreement are subject to approval of the Bankruptcy Court.

4.      Terms of Order.  This Addendum and the Apartment Alteration Agreement are subject to the terms of the order of the Bankruptcy Court approving the Addendum and Apartment Alteration Agreement, substantially in the proposed form attached hereto as **Schedule 1**.

**THE SHERRY-NETHERLAND, INC.**


By: _____
  Name:
  Title:


**GENEVER HOLDINGS LLC**


By: _____
  Name:
  Title:

**<u>Schedule 1</u>**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------x
                                                      :
In re:                                                :    Chapter 11
                                                      :
HO WAN KWOK, *et al.*,[1]                             :    Case No. 22-50073 (JAM)
                                                      :
                          Debtors.                    :    (Jointly Administered)
                                                      :
------------------------------------------------------x

**ORDER, PURSUANT TO BANKRUPTCY CODE SECTION 363(b), AUTHORIZING**
**GENEVER HOLDINGS LLC TO ENTER INTO, AND PERFORM UNDER,**
<u>**ALTERATION AGREEMENT WITH SHERRY NETHERLAND, INC.**</u>

Upon the motion (the "<u>Motion</u>")[2] of debtor Genever Holdings LLC ("<u>Genever US</u>"), for

an order (this "<u>Order</u>") authorizing Genever US to enter into the Alteration Agreement with

Sherry Netherland as further detailed in the Motion; and the Court having reviewed the Motion

and having considered the statements of counsel before the Court at a hearing held on _____,

2023 (the "<u>Hearing</u>"); and the Court having found that (a) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b); (c) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) good and

sufficient notice of the Motion having been given; and no other or further notice being required;

and the Court having found and determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and it appearing that the relief requested

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

1

by the Motion, as modified by the terms of this Order is in the best interest of Genever US's

estate and creditors; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. Genever US is authorized to enter into, and perform under, the Alteration

Agreement with Sherry Netherland including payment of fees and expense.

3. The Indemnified Parties shall be entitled to indemnification to the extent required

under the terms of the Alteration Agreement, as modified pursuant to this Order; *provided* that

any request for indemnification by the Indemnified Parties shall be subject to review by the

Court as set forth herein to ensure that payment of such indemnity conforms to the terms of the

Alteration Agreement, as modified pursuant to this Order, and is reasonable under the

circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*,

that in no event shall the Indemnified Parties be indemnified in the case of gross negligence or

willful misconduct.

4. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in

these chapter 11 cases (that order having become a final order no longer subject to appeal), or (ii)

the entry of an order closing these chapter 11 cases, any Indemnified Party believes that it is

entitled to the payment of any amounts by Genever US on account of its indemnification

obligations under the Alteration Agreement, as modified pursuant to this Order, the Indemnified

Party must file an application therefor in the Court, and Genever US may not pay any such

amounts to the Indemnified Parties before the entry of an order by this Court approving the

payment.  With respect to any amounts sought by any Indemnified Party as reimbursement for

attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to

the Alteration Agreement, as modified by this Order, the invoices and supporting time records for the attorneys' fees and expenses shall be included in the Indemnified Party's application to the Court and these invoices and time records shall be subject to the Amended Guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the obligation to indemnify the Indemnified Parties.  All parties in interest shall retain the right to object to any demand by the Indemnified Parties for indemnification, contribution, or reimbursement.

5.      The Indemnified Parties shall not be entitled to reimbursement by Genever US for any fees, disbursements and other charges of the Indemnified Parties' counsel other than those incurred in connection with a request of the Indemnified Parties for payment of indemnity approved by the Court.

6.      Notwithstanding the provisions of Bankruptcy Rule 6004(h) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply.

7.      Genever US is authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

3

8.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.