```
             UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF CONNECTICUT
                   BRIDGEPORT DIVISION

In Re                       *   Case No. 22-50073 (JAM)
                            *
HO WAN KWOK and GENEVER      *   Bridgeport, Connecticut
 HOLDINGS CORPORATION,       *   November 7, 2023
                            *
              Debtors.       *
                            *
* * * * * * * * * * * * * * * *


     TRANSCRIPT OF MOTION TO APPROVE SETTLEMENT AGREEMENT
        WITH THE CASPER FIRM, LLC PURSUANT TO FRBP 9019
         BEFORE THE HONORABLE JULIE A. MANNING
               UNITED STATES BANKRUPTCY JUDGE



APPEARANCES:


Chapter 11 Trustee:          LUC A. DESPINS, ESQ.
                             Paul Hastings LLP
                             200 Park Avenue
                             New York, NY  10166

For the Chapter 11 Trustee:  PATRICK R. LINSEY, ESQ.
                             Neubert Pepe and Monteith
                             195 Church Street,13th Floor
                             New Haven, CT  06510


For the U.S. Trustee:        HOLLEY L. CLAIBORN, ESQ.
                             Office of U.S. Trustee
                             The Giaimo Federal Building
                             150 Court Street, Room 302
                             New Haven, CT  06510



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

**Fiore Reporting and Transcription Service, Inc.**
**Shelton, CT 06484**
**(203)732-6461**

APPEARANCES:   (Cont'd)


For the Creditor, Pacific          ANNECCA H. SMITH, ESQ.
 Alliance Asia Opportunity         Robinson & Cole
 Fund L.P.:                        28 Trumbull Street
                                   Hartford, CT  06103

1          (Proceedings commenced at 12:06 p.m.)

2                THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3     Kwok and Genever Holdings, LLC.

4                THE COURT:  Okay.  Good afternoon.  If we could

5     have appearances for the record starting with the Chapter 11

6     Trustee, please.

7                MR. DESPINS:  Good afternoon, Your Honor.  Luc

8     Despins, Chapter 11 Trustee.

9                THE COURT:  Good afternoon.

10               MR. LINSEY:  Good afternoon, Your Honor.  Patrick

11    Linsey of Neubert, Pepe & Monteith for the Trustee.

12               THE COURT:  Good afternoon.

13               MS. SMITH:  Good afternoon, Your Honor.  Annecca

14    Smith of Robinson & Cole on behalf of Creditor PAX.

15               THE COURT:  Good afternoon.

16               MS. CLAIBORN:  And good afternoon, Your Honor.

17    Holley Claiborn for the U.S. Trustee.

18               THE COURT:  Good afternoon.

19               All right.  On the calendar today is a motion to

20    approve a settlement agreement with The Casper Firm.

21               Trustee Despins, are you going to proceed or

22    Attorney Linsey going to proceed?

23               MR. DESPINS:  Mr. Linsey will cover this, Your

24    Honor.  Thank you.

25               THE COURT:  Okay.  Thank you.

1        MR. LINSEY:  Good afternoon, Your Honor.

2        Starting in 2019, The Casper Firm began providing

3    legal services for the debtor in connection with a lawsuit

4    over the debtor's claims against Clark Hill which had been

5    the debtor's immigration counsel.  Those claims were

6    resolved, the Clark Hill claims, by a previously approved

7    9019 motion.  They were settled for about a half a million

8    dollars.

9        In connection with The Casper Firms's

10   representation of the debtor, the firm was provided with a

11   retainer in the amount of a hundred thousand dollars.  Both

12   the Trustee and The Casper Firm have claimed an interest in

13   the retainer.

14       Over the last several months, Trustee's counsel

15   and The Casper Firm's counsel have engaged in good-faith

16   negotiations about an appropriate disposition of the

17   retainer.  Those discussions have led to a settlement

18   agreement which provides for the following in broad strokes.

19       The Casper Firm will pay the estate $48,750 from

20   their retainer and may draw down the remaining $51,250 as

21   sole payment for any services it provided.

22       The Trustee releases the Casper Firm in a release

23   that's limited to the subject matter of the retainer, the

24   Clark Hill lawsuit, and the settlement payment.

25       And The Casper Firm grants the Trustee and the

1    estate a general release.

2         By negotiating this resolution, the Trustee has

3    reached what we feel is an appropriate compromise without

4    expending resources on litigation over what is, in the

5    context of this case, a limited sum of money.

6         A certificate of service was filed which is at ECF

7    2252.  And to the Trustee's knowledge, no objections have

8    been filed.

9         I'm happy to answer questions if any, otherwise,

10   the Trustee requests that the order granting the motion

11   enter.

12         THE COURT:  Okay.  Thank you very much.  I do not

13   have any questions at this time.

14         Does anyone else wish to be heard?

15         Attorney Claiborn, does the U.S. Trustee wish to

16   be heard?

17         MS. CLAIBORN:  No, Your Honor.

18         THE COURT:  Okay.  Thank you.

19         Attorney Smith, does PAX wish to be heard?

20         MS. SMITH:  No, Your Honor.  Thank you.

21         THE COURT:  Okay.  Thank you.

22         All right.  I have reviewed the motion to approve

23   the settlement agreement with The Casper Firm that seeks an

24   order under Federal Rule of Bankruptcy Procedure 9019 to

25   approve the compromise and settlement agreement with The

1   Casper Firm.  Everything does appear to be in order.  And

2   under the standard of Rule 9019, the settlement does appear

3   to be reasonable under the specific circumstances of this --

4   of these Chapter 11 cases and related adversary proceedings.

5        No one has filed a written objection.  Although I

6   do see that parties were served, no one is participating in

7   this hearing today that is objecting to the settlement

8   agreement.

9        I've reviewed the settlement agreement, and I

10  understand that the estate is providing a limited release to

11  The Casper Firm, and The Casper Firm is providing a general

12  release to the estate and the Trustee in connection with the

13  settlement.

14       I've reviewed the proposed order and it looks fine

15  to me.  I don't see any need for any changes in the proposed

16  order.

17       So for all of those reasons, the motion to approve

18  the settlement agreement is granted and the proposed order

19  can enter.

20       MR. LINSEY:  Thank you, Your Honor.

21       THE COURT:  Thank you.

22       Is there any other matter we need to address today

23  in this case?  I know that we have a trial coming up at the

24  end of the month and we have a hearing next week, is there

25  anything else we need to address?

1          MR. DESPINS:  Yes, Your Honor, if I could have

2    just a few minutes of your time to address two issues.

3          The first one is I want to make the Court aware of

4    what we refer to internally as the February 14th projects.

5    You might say February 14th?  That's the day before the

6    second-year anniversary.  And basically that, what that is

7    all about, is preparing complaints to recover avoidable, you

8    know, avoidance actions basically.

9          And that is a huge project that I have delegated

10   or I've put Mr. Linsey and his firm in charge of in order to

11   try to minimize costs.

12         I know Your Honor is holding these hearings

13   remotely, even though you're not a fan of that, probably to

14   reduce costs, and so in the same vein I wanted to make sure

15   the Court knew about this.

16         And you might say well why are you telling me

17   about this, I'll see your complaint on February 14th?  There

18   will be a lot of action and activity around that goal of

19   filing these complaints before February -- on or before

20   February 14th, and I wanted to make sure the Court was aware

21   of that and you didn't see these motions in a vacuum.

22         And I know the last time we talked about the two-

23   year statute you had mentioned that -- whether the Trustee

24   to file a motion to extend that time, and I wanted to make

25   sure Your Honor knew about there's a ruling by Judge

1    Tancredi in the *Walnut Hill* case.

2            By the way, I would love to be able to get an

3    order from the Court extending the statute of limitations

4    for all potential defendants, even known or unknown, but,

5    you know, basically that case says that even as to known

6    defendants you cannot -- the Court doesn't have the power

7    other than to equitable tolling, which requires a bunch of

8    showing as to (indiscernible) defendants that the Court, you

9    know, cannot use 9006 to extend the two-year statute, so

10   that's why there's such a focus on this.  We're dealing --

11           THE COURT:  I was actually talking about if you

12   had consent of parties, but I understand your point.  And I

13   understand --

14           MR. DESPINS:  Yeah.

15           THE COURT:  -- Judge Tancredi's ruling.

16           MR. DESPINS:  Okay.

17           THE COURT:  And I understand Rule 9006.

18           MR. DESPINS:  Yes.  Yes.  We would never get the

19   consent of defendants on time.

20           THE COURT:  Well, not all of them --

21           MR. DESPINS:  Yeah.  Some defendants.

22           THE COURT:  -- but there was a point in time where

23   I thought there might be some agreements.

24           MR. DESPINS:  Yes.

25           THE COURT:  But I understand what you're saying.

1    MR. DESPINS:  Yes.  So there's a huge focus on

2    that.

3        And, you know, there's than 200 bank accounts that

4    were in this universe of Kwok-related entities, and there's

5    millions and millions of dollars transiting through these

6    200-plus bank accounts, so there's a lot of wood to chop

7    there.

8        And, you know, again, to try to minimize costs, I

9    asked Mr. Linsey to take the lead on that front.

10       So that's the first part I wanted to mention.  But

11   there could be a lot of activity around that February 14th

12   project around that time.  And I hope that it will not be

13   the usual last-minute thing, but there could be a lot of

14   activity, and I just wanted to make sure Your Honor was

15   aware of the big picture.

16       The second issue I wanted to raise with the Court

17   is much more narrow.  It involves the Lady May II.

18       As I told you, the bids we received were very

19   disappointing.  But we just received a bid last Friday,

20   which is, you know -- and I don't mind saying it in court --

21   it's $350,000.  It's not anything to write home about, but

22   again it's much higher than the other bids received.

23       And, you know, the issue we have here is the cost

24   of maintaining this ship, which needs its own part-time

25   captain, we need to pay mooring costs, winterization costs

1   and all that, so we are actively considering accepting that

2   bid.

3          And you might say, well, why are you telling me

4   about this?  I'm telling you about this because winter is

5   coming and we may need to proceed on a really expedited

6   basis to get this approved.

7          And I know this is not the right way to proceed,

8   but I'm trying to get a sense from the Court, given the size

9   of this asset, what is achievable in terms of shortening the

10  notice of the sale.  Because if it's -- if it has to be the

11  usual notice period, we need to take the boat out, and we

12  need to -- there has to be all sorts of things happening to

13  empty the boat so that it doesn't, you know, there's no

14  fluids are freezing.  It's, you know, a lot of money that's

15  wasted.

16         So that's really the question, Your Honor, which

17  is what -- you know, how flexible could the Court be in

18  terms of entertaining a shortened process to get this

19  approved?

20         Yet, there's been, I want to make sure that Your

21  Honor knows, there's been extensive marketing.  We tried the

22  same dance that we did with the Lady May.  As I told you,

23  the bids we received were not attractive at all.  This

24  (indiscernible) would be as-is, where-is, so meaning no

25  survey.  So obviously that's attractive as well from our

1    point.

2              So that's a long introduction just to see what is

3    under the realm of possible (indiscernible) in terms of

4    shortening notice?

5              THE COURT:  Well, it's always possible, number

6    one.  Number two, where is the boat?  Is it out of the --

7    the last time I knew, I believe it was in a storage facility

8    in New York.

9              MR. DESPINS:  No.  No.  It was -- it was brought

10   to Newport to market it there so people could actually go

11   and ride the --

12             THE COURT:  Oh, it's in Newport right now?

13             MR. DESPINS:  Correct.  In the water right now.

14             THE COURT:  Okay.

15             MR. DESPINS:  And that's the -- if it were back in

16   Mamaroneck at the warehouse, it wouldn't be a problem,

17   because in that condition the boat was not subject to freeze

18   damage.

19             But now, the water, you know, it does not have the

20   ice, but, you know, if there's a freeze at night, then we

21   take the risk that --

22             THE COURT:  Well --

23             MR. DESPINS:  -- and that's why we're kind of

24   anxious.

25             THE COURT:  Understood.  Understood.

1          I think the issue -- it certainly could happen on

2     a shortened notice, but I think that if you're moving ahead

3     with a shortened-notice period, I sensed -- and I understood

4     with the original yacht, that's a very unique I would say

5     yacht , I'd say this boat is not as unique, although it's

6     different, but isn't it -- how long is it?  How big is it?

7          MR. DESPINS:  It's 45 feet or 50 feet, Your Honor.

8          THE COURT:  Right.  So that in the Newport world

9     is not that unusual.

10         So my thought was -- is, and I'm talking out loud

11    obviously during a hearing, but has there been any thought

12    given to trying to do a very quick auction of that boat and

13    get -- see if you can outbid the bidder?  I mean, $350,000

14    for a 50-foot boat is --

15         MR. DESPINS:  It's not a -- it's not a great

16    result so I --

17         THE COURT:  It's probably -- right.  It's low.

18         MR. DESPINS:   But it would be --

19         THE COURT:  But you might be able to get somebody

20    to outbid --

21         MR. DESPINS:  But, Your Honor, it would be --

22         THE COURT:  -- somebody to outbid you and outbids

23    the bidder --

24         MR. DESPINS:  Yeah.  But --

25         THE COURT:  -- or the bidder comes back and bids

1    more.

2            MR. DESPINS:  No.  No.  This would be subject to

3    higher and better offer at the hearing.  And we would give

4    notice to everyone that actually went on the boat and all

5    that.  And even the ones who gave us, you know, really bad

6    bids, we would give them notice of this, and they would give

7    -- they would have an opportunity to outbid.

8            But I -- but I think it's dangerous to just do

9    what we call a naked auction where I don't have a contract

10   with the bidder.

11           THE COURT:  Oh, no.  I'm not suggesting --

12           MR. DESPINS:  Okay.

13           THE COURT:  I'm not suggesting a naked auction.

14   I'm suggesting an auction that already has an opening bid,

15   right?  And then if -- and then if anybody else wants to

16   bid, you could have an auction.  Or you could have a process

17   before the actual sale hearing where you give everyone a

18   time frame, a few days before the hearing, that they have to

19   make their highest and best offer.  You know, whatever.

20           I don't -- I'm just trying to figure out a way --

21           MR. DESPINS:  Yeah.

22           THE COURT:  -- or suggest a way, I should say, to

23   maximize, as I know you are as well, the value of the asset

24   for the estate.  Right?

25           And that boat that -- I mean, I don't have any

1    information in front of me.  I don't even think I've seen a

2    picture of that, which is not true of the main yacht.  I'm

3    not sure if I've seen a picture of the Lady May II.

4         But in any event, that yacht, in that location for

5    that amount of money, could produce more money, right?  It

6    could.  Especially if, you know, people think -- well, in

7    any event, that's --

8         But to answer your first question, could we do it

9    on a shortened basis?  Yes.

10        Are there days when I know that there's no

11   availability in the next few weeks?  Yes.

12        So what is the -- what time frame are you

13   anticipating, if any, at this point?  And then I can tell

14   you whether or not that's a problem from the Court's

15   perspective.

16        MR. DESPINS:  It would be ideally in the ten,

17   tenish-day range, Your Honor.

18        But to be clear, I want to make sure you know, we

19   did a highest and best final.  We've been through that

20   process and we only received one unacceptable bid.

21        And there's a balance here in the sense if I tell

22   the bidder that is in Europe come to a hearing or come to --

23   or if by phone he can bid, there's no guarantee that he

24   would stay at 350.  So in order to lock him in, I do -- we

25   say in the thing that it's -- in the agreement and in the

1   motion, that it's subject to higher and better offer.

2          But to actually say that there will be an open

3   auction, meaning it could get the bidder to say, well, then

4   I'm not going to do this because I'm not sure I want to --

5   or if I want -- if you want to do this, I'll participate,

6   but I'm not at 350 anymore.  I'll start wherever I need to

7   start.  So I --

8          THE COURT:  Well, how will you test the highest

9   and best offer then?  What's the process that you'd

10  undertake?

11         MR. DESPINS:  The process -- the process is that

12  we go back to everyone that has bid on the boat, everyone

13  that submitted a bid, everyone that was noticed before, that

14  there will be a hearing before Your Honor on X date and

15  that's the last time to submit higher and better bids, as-

16  is, where it is, so we can't play the game of there's a

17  survey and then they reduce the price.

18         And these people generally, they don't need a lot

19  of time to -- if they want a boat, they can come on ten-

20  day's notice.  Meaning, they've known about the boat.  It's

21  been marketed all summer long.  And so people know about the

22  boat.

23         So that's the way we would like to proceed.  To

24  sign a contract with the person at 350, but explain to him

25  that it's subject to higher and better offers at the

1      hearing.

2            Personally, and I would be -- I hope I'm wrong, I

3      don't think anybody's going to show up.  Not at this time of

4      the year and not after this extensive marketing.  But I hope

5      I'm wrong.  I hope that somebody shows up and says I'll bid

6      400.

7            THE COURT:  So are you talking ten days from

8      today?

9            MR. DESPINS:  No.  Ten days from the date that we

10     sign the contract and file the motion.

11           THE COURT:  Okay.  So what's your time frame on --

12           MR. DESPINS:  If we get -- if we had like --

13           THE COURT:  -- signing the contract and the

14     motion?

15           MR. DESPINS:  -- 36 hours to file -- 36 hours to

16     file the motion, 24 --

17           THE COURT:  Well, where -- the Court is -- the

18     Court is closed on Friday the 10th in observation of

19     Veteran's Day, so if you're going to file anything this

20     week, it would have to be filed before the 10th -- I mean to

21     have any action on it.  Otherwise, there won't be any action

22     taken until the 13th.  And if you --

23           MR. DESPINS:  Understood.

24           THE COURT:  -- if you file something on the 10th

25     or the 13th, and you're trying to get -- you already have a

1    number of hearings on the 28th, and no -- and I think

2    honestly -- well, let me step back a little bit.

3         You are correct that I have been allowing hearings

4    to be held remotely in certain situations, such as today,

5    because there have been no objections filed and that they

6    are matters that appear to be able to be handled without any

7    kind of extensive hearing.

8         You are also correct that I do prefer in-person

9    hearings.  Certainly when there's anything of substance,

10   that would have to occur.

11        So a motion to sell this boat, this 50 -- 45-50-

12   foot boat, I would want that hearing to be in person because

13   I do want to see if anyone --

14        And you could set up a process.  I don't know how

15   you would do it, but you could set up a process where you

16   could take -- I don't know what you're going to do, but I

17   want to encourage bidding, not discourage bidding obviously,

18   right?  Or a higher and better offer if not traditional

19   bidding.

20        So you already have a number of matters scheduled

21   to be heard at 2 p.m. on the 28th, some of which I think you

22   would need to be here in person.  Not all of which.  Some of

23   which, you know, we might be able to address in the manner

24   that we've been addressing other matters to try to keep

25   costs down.  There's no question that I have to balance that

1     factor in these cases.

2              So is November 28th too late for what you're

3     looking for?  I mean, that's three weeks from today.

4              MR. DESPINS:  Yeah.  Again, I'm not an expert on

5     this.  I need to understand what's a risk of freezing

6     between now and the 28th.

7              But it could be -- I mean, we would -- to be

8     clear, we would file -- if we go to file this motion and we

9     have an agreement this person that's not completely wrapped

10    up yet, we can do it by November 9th, which is Thursday of

11    this week.  And then if we could have a hearing in the week

12    of the 20th that would be ideal.

13             THE COURT:  Well, we --

14             MR. DESPINS:  And you might say how do you know

15    that it might not freeze on the 20th?  I don't know.  I know

16    that (indiscernible) the better.

17             THE COURT:  Well, I suppose we could do something

18    in the afternoon of the 21st, which would be --

19             MR. DESPINS:  Okay.

20             THE COURT:  You know, I -- we have something else

21    scheduled at 1 p.m., but we could do it at 1:30 or 2 p.m. on

22    the 21st.

23             MR. DESPINS:  And, Your Honor, we could have best

24    and final bid due on the 20th.  And those could be done

25    remotely so to -- according to, you know, basically your

1    point about facilitating bidding.  But if there's a winning

2    bidder out there, they need to show up at the hearing on the

3    21st in person or through counsel.

4              THE COURT:  Yes.  Somebody who has authority to

5    close the deal, right?

6              MR. DESPINS:  Yes.  Yes.  So those dates would be

7    perfect, Your Honor.

8              THE COURT:  Yeah.  Because if it's not the 21st, I

9    couldn't do anything until the 27th or 28th.  So that's, you

10   know --

11             MR. DESPINS:  Understood.  Understood.

12             THE COURT:  -- because of scheduling conflicts.

13             MR. DESPINS:  Okay.

14             THE COURT:  And because of Thanksgiving.  I

15   believe we're closed on Thanksgiving Day and the day after

16   Thanksgiving, so in any event --

17             MR. DESPINS:  Understood.

18             THE COURT:  And your broker, who's been marketing

19   the boat, is marketing -- I don't recall, and I'm sorry, but

20   they're just doing things -- they're not in Newport actually

21   marketing the boat, are they?  Or are they in Newport?

22             MR. DESPINS:  Yeah.  They are in Newport.

23             THE COURT:  Well, there's a lot of people to talk

24   to between now --

25             MR. DESPINS:  It's the same broker.  Mr. Johnson,

1        Dirk Johnson, that appeared briefly at the hearing on the

2        Lady May.

3                    THE COURT:  Okay.

4                    MR. DESPINS:  It's the same person.

5                    THE COURT:  Well, there's certainly a lot of boat

6        people to talk to in Newport between now and the 21st.  So,

7        you know, a lot of them, and you never know.  There's plenty

8        of people still there.  It hasn't frozen.  The Atlantic

9        Ocean hasn't frozen that I'm aware of at this point.

10                    MR. DESPINS:  No.

11                    THE COURT:  But in any event --

12                    MR. DESPINS:  Okay.

13                    THE COURT:  -- I can do that if you get it filed

14        by the -- if you get your documents and your pleadings filed

15        by the 9th.  But you're going to have to then, most likely,

16        make service by the 10th even if we're closed.  It doesn't

17        matter if we're closed.  You have to make service by the

18        10th --

19                    MR. DESPINS:  Correct.

20                    THE COURT:  -- because you have to --

21                    MR. DESPINS:  Yes, Your Honor.

22                    THE COURT:  -- we have to give -- we have to show

23        -- I understand all the marketing that was done, but still

24        we want to -- again, I want to make sure that there couldn't

25        be some higher and better offer.  That's all.

1        MR. DESPINS:  All in favor of that obviously.

2        So that you very much, Your Honor.  It was very

3   helpful.  Again, I hope we're able to sign something and

4   file something by the 9th.  And we'll endeavor to do that.

5        And of course I understand that the Court has not

6   ruled on a shortening notice at this time, but you will do

7   that when you receive papers only.  Understood.

8        THE COURT:  Right.  And I would suggest that

9   because we're closed on the 10th, and I know you all have

10  many things to do, but, you know, the 9th at 8 o'clock

11  probably isn't going to get any kind of action.  So if you

12  could do the 9th by midday or early afternoon, that would be

13  helpful to the staff because they're going to go home --

14       MR. DESPINS:  Understood.

15       THE COURT:  -- and they're not working on Friday.

16  Okay?

17       MR. DESPINS:  Understood, Your Honor.  Thank you

18  very much.

19       THE COURT:  All right.  Is there anything else

20  that we can address this afternoon?

21       MR. DESPINS:  That's all I have, Your Honor.

22  Thank you.

23       THE COURT:  All right.  Anyone else have anything

24  they'd like to discuss this afternoon?

25       (No response)

1          THE COURT:  All right.  Then that is the last

2     matter on today's calendar, so court is adjourned.  Thank

3     you.

4          (Proceedings concluded at 12:32 p.m.)

5       I, CHRISTINE FIORE, court-approved transcriber and

6     certified electronic reporter and transcriber, certify that

7     the foregoing is a correct transcript from the official

8     electronic sound recording of the proceedings in the above-

9     entitled matter.

10

11     *Christine Fiore*

12     _____        November 14, 2023

13        Christine Fiore, CERT

14

15

16

17

18

19

20

21

22

23

24

25