**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

## G CLUB OPERATIONS LLC'S MOTION TO STAY PENDING APPEAL PURSUANT TO BANKRUPTCY RULE 8007

Pursuant to Federal Rules of Bankruptcy Procedure 8007(a)(1)(A), G Club Operations LLC ("G Club Operations") requests a stay of the Court's Order, dated November 13, 2023, granting the Chapter 11 Trustee's *Motion that G-Club Operations LLC Has Waived any Privilege and Has No Right to Object to Responsiveness. Despins et al v. HCHK Technologies, Inc. et al*, No. 23-05013 (Bankr. D. Conn. Jun. 8, 2023) (Dkt No. 179) (the "Order"). That final appealable Order requires that G Club Operations and the Assignee of HCHK Technologies turn over to the Trustee privileged communications of G Club Operations, among other documents, by November 17, 2023 (less than the 14 days a party has to appeal an Order) because HCHK Technologies acted as an internet administrator to G Club Operations, as well as other customers. This Order is erroneous and creates a dangerous precedent that essentially holds that when a business or individual outsources its IT services to a provider which may also provide additional services, then that business or individual loses all rights to and in its documents, including the right to protect from disclosure attorney-client and work-product privileged communications. Respectfully, the Court erred in issuing this Order and G Club Operations has filed a Notice of Appeal to the District Court challenging the Order.

As explained herein, G Club Operations satisfies the requisite elements for a stay pending

appeal because (1) failure to grant the stay and forcing G Club Operations to turn privileged communications over to the Trustee before an appeal is heard will effectively deprive G Club Operations of the right to appeal by rendering the appeal moot and irrevocably impacting its due process rights; (2) there is no harm to the Trustee as the Trustee has already received more than 140,000 documents from G Club Operations in connection with the Rule 2004 process, in addition to having issued far in excess of 200 Rule 2004 subpoenas; (3) the ruling is against public policy as it implicates the privacy and constitutionally protected rights of millions of customers; and (4) G Club Operations is likely to succeed on the merits because the Court's reasoning is incorrect. Accordingly, a stay <u>pending appeal</u> should be granted so protected documents are not turned over before the issues on appeal are finally resolved.

Because the Order requires compliance by November 17, 2023, exigent circumstances exist to address this motion on an emergency motion. Further, G Club Operations respectfully requests that, to the extent practical, the Court rule on this motion no later than Thursday, November 16, 2023, so that G Club Operations may have the opportunity to seek further appropriate relief from the District Court if necessary. In the absence of a ruling, G Club Operations intends to file a motion to stay in the District Court on Friday, November 15, 2023.

### **RELEVANT PROCEDURAL BACKGROUND**[1]

1.     On June 23, 2023, the Trustee filed a Motion, Pursuant to Bankruptcy Rule 9019, Regarding Settlement with Assignee of HCHK Entities Under New York Court Assignment

---

[1] The Order arises from a Rule 9019 Motion relating to HCHK Technologies, Inc. ("HCHK Technologies"), HCHK Property Management, Inc. ("HCHK Property") and Lexington Property and Staffing, Inc. ("HCHK Lexington") (collectively, "HCHK Entities") via the alleged authority of an Assignee, with the subject matter of the Order resolving a final discrete issue – G Club's objection on due process grounds. The Order is a final order for purposes of appeal because it "definitively dispose of [a] discrete disputes within the overarching bankruptcy case." *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citation omitted). The Court has approved the Rule 9019 Motion.

Proceedings (No. 22-50073, Dkt No. 1936) (the "9019 Motion").  The 9019 Motion included a Proposed Order that HCHK Technologies turn over to the Trustee all documents to which it may have had access. (*Id.*, Dkt. No. 2004) (the "Revised Proposed Order").  Specifically, Paragraph 6 of the Revised Proposed Order stated:

> **"Corporate Records.** The Assignee shall immediately make available to the Trustee all non-privileged corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee. All such corporate records and other documents shall be considered documents designated as "confidential" and subject to the protective order entered in this Chapter 11 Case on October 6, 2022 [Main Case Docket No. 923]."

*Id.* at 3, ¶.[2]

2.      On July 5, 2023, and again on July 14, 2023 (*id.*, Dkt. Nos. 1977 and 2007 respectively), G Club Operations objected to Paragraph 6 of the Proposed Order and requested an orderly process by which to preclude a wholesale turnover of confidential and privileged materials to the Trustee simply because it outsourced IT services.

3.      On July 28, 2023, the Court ruled on the 9019 Motion, granting the 9019 Motion but modifying Paragraph 6 of the Proposed Order to provide:

> **Corporate Records:**  (a) The Assignee shall immediately secure and safeguard all corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee. Within ten (10) days from the date of the entry of this Order, the Assignee shall make available to the Trustee all non-privileged corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee, *except those that were at any point the property of G-Club Operation LLC ("G-Club")*. All such corporate records and other documents shall be considered documents designated as "confidential" and subject to the protective order entered in this Chapter 11 Case on October 6, 2022 [Main Case Docket No. 923] (the "Protective Order"). Also within ten (10) days from the date of the entry of this Order, the Assignee shall make available to G-Club all corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee, *which were at any point the property of G-Club. Upon receipt, G-Club shall immediately review such corporate records and other*

---

[2] The Rule 9019 was entered into between the Assignee of the HCHK Entities and the Trustee.  Various issues related to that Rule 9019 Order are the subject of an appeal.  *See* No. 23-05013, Dkt. Nos. 70, 80, and 98.

*documents for privilege and responsiveness to the Trustee's Rule 2004 subpoena of G-Club and produce a privilege log and responsiveness log.* G-Club may designate materials it will produce to the Trustee as "confidential" or "highly confidential" in accordance with the Protective Order.

*Id.*, Dkt. No. 2038 at 4, ¶ 6(a)) (emphasis added).

4.    The Court also provided that "[o]n or before August 11, 2023, the Trustee shall file a brief in support of the Trustee's argument that G-Club has waived any privilege and has no right to object to responsiveness.  On or before August 18, 2023, G-Club shall file any response to the Trustee's brief." *Id.* at 5, ¶ 6(b).

5.    On August 11, 2023, the Trustee filed a *Memorandum of Law in Support of Chapter 11 Trustee's Argument that G-Club Operations LLC has Waived any Privilege and has no Right to Object to Responsiveness as to G-Club Documents Turned Over from the Assignee of HCHK Technologies, Inc. to the Trustee Pursuant to Bankruptcy Rule 9019 Settlement Agreement* (the "Waiver Motion"), which the Trustee filed in Adversary Proceeding No. 23-05013, ECF No. 86 (and not in No. 22-50073, as all other filings had previously been made).

6.    G Club Operations opposed the Waiver Motion on September 29, 2023, filing its *Response to Trustee's Memorandum Challenging G Club's Privilege Assertions In Documents In HCHK's Possession and Opposition To The Trustee's Related Proposed Order*.  (No. 22-50073, Dkt. No. 2244).[3]

7.    On November 13, 2023, the Court issued the Order granting the Trustee's Waiver Motion and ordering production by G Club Operations and the Assignee of HCHK Technologies by November 17, 2023, which is less than the time afforded G Club Operations to appeal the Order pursuant to Bankruptcy Rule 8002.   This Order is final.

---

[3] G Club filed on a different date for the reasons set forth in its *Opposition To Trustee's Proposed Supplemental Order Regarding G-Club Documents Pursuant To Order Approving Chapter 11 Trustee's Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings* (No. 22-50073, Dkt. No. 2233).

## A STAY OF THE ORDER PENDING APPEAL IS PROPER

8. The United States Court of Appeals for the Second Circuit has established the following four-part test for determining whether to grant a motion for stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (citations omitted). Each factor favors a stay in this case. A stay is "'an exercise of judicial discretion,' and '[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (quoting *Nken v. Holder*, 129 S. Ct. 1749, 1760 (2009)).

### A. Absent a Stay, G Club Operations Will Be Irreparably Harmed by Deprivation of Appeal Rights and a Waiver of Privilege

9. Absent a stay, G Club Operations will suffer irreparable injury because one cannot effectively undo the wholesale turnover of privileged communications to the Trustee and, as a result, that turnover may render the appeal moot. Courts have found that irreparable injury exists when the denial of a stay creates the potential for a complete loss of a right for the moving party. *In re St. Johnsbury Trucking Co., Inc.*, 185 B.R. 687, 690 n.1 (S.D.N.Y. 1995) (finding that if the government's appeal here is mooted, it will lose the ability to enforce some provisions of CERCLA and the Internal Revenue Code; it is that threatened loss rather than the loss of the right to appeal *vel non* that gives rise to the Court's irreparable injury finding). "[W]here the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied." *In re BGI, Inc.*, 504 B.R. 754, 763 (S.D.N.Y. 2014) (internal quotation marks and citations omitted, alterations added).

10.     That is precisely the issue here; G Club Operations' rights absent a stay will forever be lost as production of privileged information likely would moot any meaningful remedy if the Order is overturned on appeal.  The production deadline in the Order requires compliance by November 17, 2023. This production includes privileged communications between G Club Operations and its counsel.  If G Club Operations, or HCHK, is forced to comply with the Order, G Club Operations will effectively forever lose its right to protect confidential communications with its attorneys.  Once obtained, the Trustee and his advisors cannot unlearn the privileged communications they will see and review.

**B.     A Stay Will Not Prejudice the Trustee**

11.     Unlike any other party in this bankruptcy matter, the Trustee has availed itself of the broad discovery afforded under Rule 2004.  Indeed, the Trustee has already sought leave to file 255 Rule 2004 subpoenas.[4]  With respect to G Club Operations specifically, the Trustee has served G Club Operations with a Rule 2004 Subpoena and G Club Operations has produced in excess of 140,000 documents.  In addition, and in accordance with the Court's Order on the Rule 9019 Motion, G Club Operations also produced a privilege log to the Trustee.

12.     Accordingly, the Trustee will not suffer any "substantial injury" by allowing G

---

[4]  Specifically: (i) the Trustee's First Supplemental Omnibus Motion (Dkt. No. 839) seeking twenty-five (25) subpoenas; (ii) the Trustee's Second Supplemental Omnibus Motion (Dkt. No. 1116) seeking fifty-three (53) subpoenas; (iii) the Trustee's Third Supplemental Omnibus Motion (Dkt. No. 1259) seeking nineteen (19) subpoenas; (iv) the Trustee's Fourth Supplemental Omnibus Motion (Dkt. No. 1592) seeking fifty-seven (57) subpoenas; (v) the Trustee's Fifth Supplemental Omnibus Motion (Dkt. No. 1789) seeking eight (8) subpoenas; (vi) the Trustee's Sixth Supplemental Omnibus Motion (Dkt. No. 2079) seeking twenty (20) subpoenas; (vii) the Trustee's Seventh Supplemental Omnibus Motion (Dkt. No. 2249) seeking six (6) subpoenas; (viii) the Trustee's Eighth Supplemental Omnibus Motion (Dkt. No. 2304) seeking eight (8) subpoenas; and (ix) the Trustee's Ninth Supplemental Omnibus Motion (Dkt. No. 2308) seeking twenty-nine (29) subpoenas.  The latter two are presently subject to objections.  *See, e.g., Objection of Shin Hsin Yu and Jie Zhang to Eighth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt. No. 2319); *G Club Operation LLC's Limited Objection to Eighth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt No. 2320); *Objection of Shin Hsin Yu, 1332156 B.C. LTD, GWGOPNZ Limited, and Jie Zhang to Ninth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt No. 2326); *G Club Operations LLC's Objection to Ninth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt. No. 2331).

Club Operations to appeal the Order which, once complied with, will render any appeal moot and will forever infringe G Club Operations' due process rights.

**C.    The Order Is Against Public Policy**

13.    The Order poses an immediate threat to the privacy and constitutionally-protected interests of customers who outsource their IT services.  The Order is contrary to authority holding that utilization of "hosting services did not result in a waiver."  *See Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 871 (Del. Ch. 2022) (alterations added).  There is no legal support for the proposition that simply using an outsourced, cloud-based data hosting service results in a waiver of privilege or otherwise transfers the information maintained on the cloud to the administrator.

**D.    G Club Operations Has A Substantial Possibility of Success on Appeal Because the Order Is Erroneous**

14.    As a preliminary matter, "[t]he requisite showing of "substantial possibility" of success is "inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay."  *In re BGI, Inc.*, 504 B.R. at 764 (second alteration in original, citations omitted).  As noted above, the harm to G Club Operations of an unstayed order forcing the turnover of its privileged documents is a change in circumstances that cannot be undone.  As such, G Club Operations "need not always show a "probability of success' on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay."  *Id.* (citation omitted).  As explained below, however, the Order reaches an erroneous legal conclusion, assuming waiver and improperly shifting the burden to G Club Operations to establish an exception when no waiver took place, which makes it likely G Club Operations will prevail on appeal.

- **The Order Conflates Documents "Disclosed" to HCHK *with* G Club Operations Documents on the Cloud for which HCHK Acted as IT Administrator**

15.     In addressing the issue of responsiveness and privilege, the Order conflates documents G Club Operations *disclosed* to HCHK that became property of HCHK *versus* G Club Operations emails maintained on the cloud for which HCHK acted as IT manager and administrator and which belong only to G Club Operations, with a *gclub.com* domain name, and never became HCHK's property.  This extends to any other customer that HCHK has as a customer.  As a result, the Order improperly relies on the Master Services Agreement between HCHK and G Club Operations as a basis to transfer gigabytes of cloud data to the Trustee that was never *disclosed* to HCHK.

16.     Illustrating this mistake is the Order's improper characterization of G Club Operations' position in No. 22-50073, Dkt. No. 2244, as a review process.  The Order states "that G-Club had rights to review the documents for both responsiveness and privilege."  Order at 3.  In other words, the Court improperly framed the issue as G Club Operations' demand to review documents that HCHK was intending to produce to the Trustee as if G Club Operations had *disclosed* the documents on the cloud to HCHK in the first instance.

17.     That was not the issue raised by the Waiver Motion and challenged by G Club Operations.  As G Club Operations argued in its filings:

> "G Club contracted with HCHK for the administration of a cloud-based storage and email system for its communications (among other services). That system, Microsoft 365, is a cloud-based enterprise system which is routinely utilized by corporations and law firms. That HCHK was the system's administrator is not relevant to G Club's assertion of privilege; the documents were maintained in "the cloud," and the Trustee has made no assertions (nor can he) that a single individual other than G Club employees ever reviewed documents maintained on the cloud that hosted G Club domain names. Privileged documents stored in a cloud system administered by a third party simply do not lose their protected status."

No. 22-50073, Dkt. No. 2244, at 2-3, ¶ 3.

18.     Thus, the issue is whether privileged documents lose their protected status merely as a result of outsourcing IT services when there is no factual contention that the IT service provider ever had access to the privileged material.

19.     Underscoring this confusion is the Order's improper reliance on the Master Services Agreement ("MSA") between HCHK and G Club Operations.  In quoting the MSA, the Court erroneously stated: "Under the terms of the Master Services Agreement (the "MSA") between HCHK Tech and G-Club, the Assignee may disclose G-Club's documents to a third party as required by law.  (Mot. Ex. A, § 6.2.)" Order at 6.

20.     Section 6.2, however, cannot be read without Section 6.1, which provides: "Confidential Information" means any information *disclosed* under this Agreement by either party ("*Disclosing* Party") to the other party ("*Receiving* Party")."  MSA § 6.1 (emphasis added).  G Club Operations documents that are maintained "in the cloud" are not documents *disclosed* to HCHK.

21.     Indeed, there is a clear distinction between documents *sent* to HCHK or *shared* with HCHK (which should not be turned over to the Trustee without a review by G Club Operations of responsiveness and privilege) *versus* the gigabytes of data on the cloud which were not disclosed to HCHK and belong to G Club Operations and G Club Operations only.

22.     As such, the MSA's provisions – which describes the parties in terms of "Receiving Party" and "Disclosing Party" – do not inform the Court's analysis of whether privileged material maintained "in the cloud" thereby lose their protected status.

- **The Order Improperly Assumed Waiver and Erroneously Shifted the Burden to G Club Operations to Establish an Exception to Waiver**

23.     With respect to privilege, the Order improperly assumed waiver based solely on the Trustee's conclusory assertion "that G-Club has waived any privilege in the documents in the

custody, control, and/or possession of the Assignee at the time of his settlement with the Trustee." Order at 7. "Documents" is not precisely defined, failing to account for the distinction explained above. And thereafter, the Order improperly concludes that there must have been a waiver because HCHK provided "a la carte consulting services" and "Section 6.2 of the MSA makes clear that HCHK Tech may use G-Club's documents in the course of providing the services listed on exhibit A to the agreement. (*Id.* Ex. A, § 6.2.)" Order at 9. However, documents "in the cloud" are not documents to which HCHK had access or otherwise reviewed. In effect, the Court assumed access and review and waiver, and then improperly shifted the burden to G Club to establish an exception to waiver when there was no waiver in the first instance.

24.     As stated, the Court based its effective burden shifting on the concept that G Club Operations' privilege had been waived merely as a result of HCHK's provision of data hosting in the cloud together with other services under the MSA. But, there is no legal support for the proposition that the mere provision of "a la carte consulting services" separate and apart from data hosting (particularly where there are no facts that could show that the host actually accessed privileged material) results in waiver of privilege – unless, of course, documents are actually exchanged, shared, disclosed, or otherwise reviewed by a party. Once again, the Order improperly conflates documents that would have been exchanged in the course of providing services (like communications between G Club Operations and HCHK) *versus* an outsourced IT service for cloud administration. The Order erroneously *assumes* waiver, and thus improperly shifted the burden to G Club Operation to demonstrate an exception to waiver under "common interest" or *Kovel*. Order at 9-11.

## CONCLUSION

25.     Under these circumstances, a stay pending appeal is proper to preserve the status

quo and prevent the irreparable harm to G Club Operations of effectively losing its due process and privilege rights.

## RELIEF REQUESTED

26.     G Club Operations respectfully requests that the Court enter a stay pending appeal of the Order.

Dated:  November 15, 2023

By:   _/s/ Jeffrey M. Sklarz_
GREEN & SKLARZ LLC
Jeffrey M. Sklarz
Kellianne Baranowsky
One Audobon St, 3rd Floor
New Haven, CT 06511
Tel: 203-285-8545
jsklarz@gs-lawfirm.com
kbaranowsky@gs-lawfirm.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
Carolina A. Fornos (*pro hac vice*)
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1558
carolina.fornos@pillsburylaw.com

*Attorneys for G Club Operations LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the date set forth below, a copy of the foregoing was served via

CM/ECF.  Parties may access this filing through the Court's CM/ECF system.

Date:   November 15, 2023.

*/s/ Jeffrey M. Sklarz*
Jeffrey M. Sklarz
