**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

**NOTICE RE: G CLUB OPERATIONS LLC'S *EMERGENCY* MOTION TO
STAY PENDING APPEAL PURSUANT TO BANKRUPTCY RULE 8007
<u>FILED WITH THE DISTRICT COURT</u>**

PLEASE TAKE NOTICE that G Club Operations LLC has filed an *Emergency Motion to Stay Pending Appeal Pursuant to Bankruptcy Rule 8007* on November 16, 2023 in the United States District Court for the District of Connecticut pursuant to Fed. R . Civ. P. 8007(b) requests a stay of the Bankruptcy Court's Order, dated November 13, 2023, granting the Chapter 11 Trustee's *Motion that G-Club Operations LLC Has Waived any Privilege and Has No Right to Object to Responsiveness. Despins et al v. HCHK Technologies, Inc. et al*, No. 23-05013 (Bankr. D. Conn. Jun. 8, 2023) (Dkt No. 179).  A copy of all documents filed in the District Court are attached hereto.

{00340676.1 }

Dated:  November 16, 2023

By:   _/s/ Jeffrey M. Sklarz_
GREEN & SKLARZ LLC
Jeffrey M. Sklarz
Kellianne Baranowsky
One Audubon St, 3rd Floor
New Haven, CT 06511
Tel: 203-285-8545
jsklarz@gs-lawfirm.com
kbaranowsky@gs-lawfirm.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
Carolina A. Fornos (*pro hac vice*)
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1558
carolina.fornos@pillsburylaw.com

*Attorneys for G Club Operations LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, a copy of the foregoing was served via

CM/ECF.  Parties may access this filing through the Court's CM/ECF system.


Date:   November 16, 2023

 */s/ Jeffrey M. Sklarz*
Jeffrey M. Sklarz

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,<br><br>      Debtors. | Chapter 11<br><br>Case No. 22-50073 (JAM)<br><br>(Jointly Administered) |

## G CLUB OPERATIONS LLC'S *EMERGENCY* MOTION TO STAY PENDING APPEAL PURSUANT TO BANKRUPTCY RULE 8007

Pursuant to Federal Rules of Bankruptcy Procedure 8007(b) G Club Operations LLC ("G Club Operations") requests a stay (the "Motion to Stay") of the Bankruptcy Court's Order, dated November 13, 2023, granting the Chapter 11 Trustee's *Motion that G-Club Operations LLC Has Waived any Privilege and Has No Right to Object to Responsiveness. Despins et al v. HCHK Technologies, Inc. et al*, No. 23-05013 (Bankr. D. Conn. Jun. 8, 2023) (Dkt No. 179) (the "Order").

Pursuant to Fed. R. Bankr. P. 8007(b)(2) and Local Rule 7(a), good cause exists for the United States District Court (the "District Court") to hear this Motion to Stay on an emergency basis because: (1) although G Club Operations has moved for a stay in the United States Bankruptcy Court (the "Bankruptcy Court"), the Bankruptcy Court has not yet ruled on the Motion to Stay; (2) the Bankruptcy Court's Order afforded G Club Operations only *four days* from entry of the Order to comply with the Order, despite Fed. R. Bankr. P. 8002(a)(1) providing a fourteen day appeal period, and (3) given the time frame to address this matter, as set forth herein, District Court intervention is necessary to protect G Club Operations rights of appeal and access to due process. Emergency relief is required so that performance under the Order does not result in the effective loss of significant rights to protect privileged communications from disclosure by G Club

Operations.  Further, as fully briefed in the memorandum of law filed concurrently herewith, without a stay, G Club Operations' appeal will likely be mooted.  Accordingly, G Club Operations requests that the District Court enter a stay of the Order until such time as the appeal is fully heard.

Dated:  November 16, 2023

By:     /s/ Jeffrey M. Sklarz
GREEN & SKLARZ LLC
Jeffrey M. Sklarz
Kellianne Baranowsky
One Audubon St, 3rd Floor
New Haven, CT 06511
Tel: 203-285-8545
jsklarz@gs-lawfirm.com
kbaranowsky@gs-lawfirm.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
Carolina A. Fornos (*pro hac vice*)
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1558
carolina.fornos@pillsburylaw.com

*Attorneys for G Club Operations LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, a copy of the foregoing was served via CM/ECF. Parties may access this filing through the Court's CM/ECF system.

Additionally, a copy of the foregoing has been filed on the docket of the Bankruptcy Court as well as emailed as follows:

Counsel for the Trustee
Avi Luft          aviluft@paulhastings.com
Patrick Linsey plinsey@npmlaw.com


Counsel for the Assignee, Brien W. Hofmeister
Bonnie Mangan          bonnie.mangan@manganlaw.com

Counsel for HCHK Technologies, Inc; Holy City Hong Kong Ventures, LTD; Lexington Property and Staffing, Inc.
John T. Shaban          john@levinelevinelaw.com


Counsel for HCHK Property Management, Inc.
John T. Shaban          john@levinelevinelaw.com
Bonnie Mangan          bonnie.mangan@manganlaw.com


Counsel for Holy City Hong Kong Ventures, LTD.
John T. Shaban          john@levinelevinelaw.com


Date:   November 16, 2023

 /s/ Jeffrey M. Sklarz
Jeffrey M. Sklarz

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

G Club Operations, LLC - Appellant/Movant

**(b)** County of Residence of First Listed Plaintiff   San Juan, PR
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Jeffrey M. Sklarz, Green & Sklarz LLC, 1 Audubon Street, 3rd Fl., New Haven, CT 06511 (203) 285-8545

## DEFENDANTS

Luc A. Despins, Chapter 11 Trustee - Appellee/Respondent

County of Residence of First Listed Defendant   New York, NY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Patrick R. Linsey, Neubert Pepe & Monteith PC, 195 Church St, New Haven, CT 06510, (203) 821-2000

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability | |    28 USC 157 |    3729(a)) |
| ☐ 140 Negotiable Instrument |    Liability   ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|    & Enforcement of Judgment |    Slander    Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |    Liability   ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|    Student Loans | ☐ 340 Marine    Injury Product | |    New Drug Application | ☐ 470 Racketeer Influenced and |
|    (Excludes Veterans) | ☐ 345 Marine Product    Liability | | ☐ 840 Trademark |    Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |    Liability   **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards |    Act of 2016 |    (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending |    Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract |    Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** |    Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Property Damage |    Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |    Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury -    Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) |    Exchange |
| |    Medical Malpractice |    Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee |    Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff |    Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence | |    or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability |    Accommodations   ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** |    26 USC 7609 |    Act/Review or Appeal of |
| |    Employment   **Other:** | ☐ 462 Naturalization Application | |    Agency Decision |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| |    Other   ☐ 550 Civil Rights |    Actions | |    State Statutes |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| |   ☐ 560 Civil Detainee - | | | |
| |    Conditions of | | | |
| |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 158 - Bankruptcy Appeal; Fed. R. Bankr. P. 8007(b) - Motion to Stay order of US Bankruptcy Court

Brief description of cause:
Emergency Motion to Stay Order of US Bankruptcy Court (Manning, USBJ)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**   NA

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Nov 16, 2023 | /s/ Jeffrey M. Sklarz (ct20938) |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# Exhibit A

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors.[1] | (Jointly Administered) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | Adv. P. No. 23-05013 (JAM) |
| Plaintiff, | Re: ECF No. 86 |
| v. |  |
| HCHK TECHNOLOGIES, INC., HCHK PROPERTY MANAGEMENT, INC., LEXINGTON PROPERTY AND STAFFING, INC., HOLY CITY HONG KONG VENTURES, LTD., ANTHONY DIBATTISTA, YVETTE WANG, and BRIAN W. HOFMEISTER, ASSIGNEE FOR THE BENEFIT OF CREDITORS, |  |
| Defendants. |  |

## ORDER GRANTING
## MOTION FOR ORDER REQUIRING PRODUCTION OF G-CLUB DOCUMENTS

## I. INTRODUCTION

Before the Court is the Memorandum of Law in Support of Chapter 11 Trustee's

Argument that G-Club Operations LLC Has Waived any Privilege and Has No Right to Object to

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Responsiveness (the "Motion") (ECF No. 86)[2] filed by Mr. Luc A. Despins, in his capacity as

Chapter 11 trustee (the "Trustee") for the estate of Mr. Ho Wan Kwok, pursuant to decretal

paragraph 6(b) of the Order Approving Chapter 11 Trustee's Settlement with Assignee of HCHK

Entities (the "Order Approving Settlement") (ECF No. 70).  For the reasons stated below, the

relief requested in Motion is granted and an order requiring G-Club Operations LLC ("G-Club")

and/or Mr. Brian Hofmeister, in his capacity as assignee for the benefit of creditors (the

"Assignee") of HCHK Technologies, Inc. ("HCHK Tech"), HCHK Property Management, Inc.,

and Lexington Property and Staffing, Inc. (collectively, the "HCHK Entities") to produce

documents possessed, previously as the case may be, by the Assignee, which documents were

provided to G-Club by the Assignee pursuant to the Order Approving Settlement.

## II.  BACKGROUND

On July 11, 2023 and July 18, 2023, hearings were held on, respectively, the Motion

Regarding Settlement with Assignee of HCHK Entities under New York Court Assignment

Proceedings (the "Settlement Motion") (Main Case ECF No. 1936; ECF No. 25) and a revised

proposed order (the "Revised Proposed Order") regarding the Settlement Motion (Main Case

ECF No. 2004; ECF No. 55), both filed by the Trustee.  G-Club filed objections to the

Settlement Motion and the Revised Proposed Order.  (Main Case ECF Nos. 1977, 2007.)  On

July 28, 2023, the Court entered the Order Approving Settlement, which granted the Settlement

Motion and approved the settlement between the Trustee and the Assignee.  (Main Case ECF

No. 2038; ECF No. 70.)

---

[2]  References to the docket in this adversary proceeding will be styled "ECF."  References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case ECF."

Paragraph 6 of the Order Approving Settlement addressed to G-Club's only remaining objection to the Settlement Motion (*see* Main Case ECF No. 2030, at 128:5–48:8) by setting a briefing schedule whereby the Trustee and G-Club would contest whether G-Club had the right to review G-Club documents in the possession of the Assignee for responsiveness to the Rule 2004 subpoena served on G-Club and for privilege prior to the documents being produced to the Trustee. (Main Case ECF No. 2038 ¶ 6; ECF No. 70 ¶ 6.) On August 11, 2023, the Trustee timely filed the Motion arguing that G-Club did not have any right to review the documents for either responsiveness or privilege. (ECF No. 87.) On September 29, 2023, after certain developments (*see* Main Case ECF No. 2237), G-Club filed a response to the Trustee's memorandum (Main Case ECF No. 2244), arguing that G-Club had rights to review the documents for both responsiveness and privilege.

On October 24, 2023, a hearing was held on the arguments raised by the Trustee in the Motion. The Trustee and G-Club both appeared and argued their respective positions. At the conclusion of the hearing, the Court took the matter under advisement.

The dispute between the Trustee and G-Club is ripe for decision.

## III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. The instant adversary proceeding in which the instant discovery dispute arises is a statutorily core proceeding. 28 U.S.C. § 157(b)(2)(A), (E), (O).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**IV. DISCUSSION[3]**

At the outset, the Trustee and G-Club dispute the terms of the Order Approving
Settlement and whether the Motion seeks relief from that order. The Trustee argues that the
Order Approving Settlement provided for the parties to litigate the issues raised by the Motion.
G-Club argues that it determined the issues in G-Club's favor. The Trustee is clearly correct.
While decretal paragraph 6(a) of the Order Approving Settlement provides that the Assignee was
to provide G-Club access to G-Club's documents in his possession and G-Club was afforded the
opportunity to check for responsiveness to the Rule 2004 subpoena served on G-Club and
privilege before producing the documents to the Trustee, decretal paragraph 6(b) provides that
the Trustee and G-Club were to brief whether or not G-Club had any right to check the
documents for responsiveness and/or privilege before G-Club and/or the Assignee produced
them to the Trustee. Essentially, the Order Approving Settlement reserved the issues while
providing a mechanism for discovery to continue pending a determination of the issues presently
before the Court.

The Court did not previously decide the issues in G-Club's favor and will consider the
parties' arguments regarding responsiveness and privilege below.

### A. Responsiveness

The Trustee argues that G-Club cannot object to the Assignee's production of the HCHK
Entities' documents pursuant to the Order Approving Settlement on the basis that such
documents are not responsive to the Rule 2004 subpoena served on G-Club in Mr. Kwok's
Chapter 11 case. Rather than relating to the G-Club subpoena, the Trustee contends, the

---

[3] The following constitutes the findings of fact and conclusions of law of the Court pursuant to
Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable by Rule 7001 in
adversary proceedings.

settlement reached with the Assignee relates to the discovery the Trustee would have otherwise

pursued in this adversary proceeding and the Rule 2004 subpoena served on HCHK Tech in Mr.

Kwok's Chapter 11 case.

G-Club responds that the Trustee cannot obtain G-Club's property through discovery

from HCHK Tech.  Therefore, G-Club argues, the Trustee may only obtain documents from G-

Club pursuant to the Rule 2004 subpoena served on it, subject to a responsiveness review by G-

Club.

The Court agrees with the Trustee.  First, the instant dispute is separate and distinct from

the dispute over G-Club's compliance with the Rule 2004 subpoena served on it.  The HCHK

Entities provided the Assignee with the authority to settle with the Trustee in the deeds of

assignment.  (*See, e.g.*, Complaint Ex. 13, Affidavit and Petition of Brian Hofmeister Ex. B, § 4.)

The Assignee did so: the Order Approving Settlement approved a settlement between the Trustee

and the Assignee regarding this adversary proceeding and, in pertinent part, discovery therein –

not a settlement between the Trustee and G-Club regarding discovery in Mr. Kwok's Chapter 11

case.

In this adversary proceeding, the Trustee alleges that the HCHK Entities are the *alter*

*egos* of Mr. Kwok and/or Mr. Kwok beneficially owns the HCHK Entities and/or their assets.

The Trustee additionally alleges that Mr. Kwok operates a tangled network of entities, relatives,

and loyal followers to hide assets from his creditors.  G-Club is allegedly one of those entities.

But for the settlement with the Assignee, the Trustee would have pursued discovery from the

HCHK Entities relating to their connection to G-Club.  Indeed, the Trustee sought such

discovery pre-litigation through the service of Rule 2004 subpoenas.  The settlement between the

Assignee and the Trustee seeks to resolve discovery issues between the Trustee and the HCHK

Entities. The Rule 2004 subpoena served on G-Club is a separate issue and does not provide a basis for G-Club to object to the Assignee producing G-Club documents to the Trustee pursuant to the settlement.

Second, the Assignee, with the powers and rights assigned to him by HCHK Tech, may disclose G-Club documents. (Complaint Ex. 13, Affidavit and Petition of Brian Hofmeister Ex. B, §§ 1, 4.) Under the terms of the Master Services Agreement (the "MSA") between HCHK Tech and G-Club, the Assignee may disclose G-Club's documents to a third party as required by law. (Mot. Ex. A, § 6.2.)

Before such disclosure, however, the Assignee must inform G-Club to provide an opportunity for G-Club to seek a protective order or other appropriate relief. The Assignee has complied with his obligations under the MSA. G-Club was provided notice of the Settlement Motion, which was filed in Mr. Kwok's Chapter 11 case pursuant to D. Conn. L. Bankr. R. 9019-1(a)(2) – in which G-Club receives notice through electronic notice and service upon appearing counsel – as well as in this adversary proceeding. Indeed, G-Club initially objected on confidentiality grounds – in line with the provisions of the MSA – as well as on responsiveness and privilege grounds. At the final hearing, however, G-Club abandoned its confidentiality objection because under the Revised Proposed Order, the Assignee would designate produced documents as "confidential" under the protective order entered in Mr. Kwok's Chapter 11 case (Main Case ECF No. 923). (Main Case ECF No. 2030, Hr'g Tr. at 128:5–48:8.) As the abandonment of this objection demonstrates, the settlement protects G-Club as envisioned by the MSA.

For all these reasons, the Court concludes that the Assignee may produce G-Club's documents without such documents being subject to G-Club's review for responsiveness to the

Rule 2004 subpoena served on G-Club in Mr. Kwok's Chapter 11 case.  G-Club must, therefore, turn over to the Trustee the documents the Assignee produced to them pursuant to decretal paragraph 6a of the Order Approving Settlement without regard to whether any documents are responsive to the Rule 2004 subpoena served on it.

### B. Privilege

The Trustee argues that G-Club has waived any privilege in the documents in the custody, control, and/or possession of the Assignee at the time of his settlement with the Trustee. G-Club, the Trustee asserts, waived any and all privilege in the documents when, first, G-Club entered into the MSA with HCHK Tech, wherein the Trustee contends HCHK Tech agreed to provide services beyond mere hosting of G-Club's documents and was provided access to those documents; second, G-club failed to object to the assignment of, allegedly, substantially all HCHK Tech's property to the Assignee, including G-Club's documents; and, third, G-Club failed to object to the Assignee's motion to sell HCHK Tech's assets to G-News Operations, LLC ("G-News").

G-Club responds that the present facts and circumstances do not support the conclusion that G-Club has waived any privilege.  Namely, G-Club argues that, notwithstanding the terms of the MSA, HCHK Tech merely hosted G-Club documents and did not access them; and G-Club's time to object to the assignment of HCHK Tech's assets to the Assignee and the proposed sale to G-News had not elapsed at the time the Court entered the temporary restraining order regarding the prosecution of the assignment proceedings.  G-Club analogizes HCHK Tech's services to G-Club to Microsoft Corporation's ("Microsoft") provision of cloud storage and cloud-based office software to myriad individuals and entities and warns that an adverse ruling would have far-reaching implications contrary to established law.

The Court agrees with the Trustee.

"[A]s with all privileges, the person claiming the attorney client privilege has the burden of establishing all essential elements." *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) (citing *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir. 1961)). "The party asserting the privilege . . . bears the burden of establishing" that the communications to be protected are "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011); *see Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519 (S.D.N.Y. 2001) (citing *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). "A party seeking the protections of the attorney-client privilege must affirmatively act to protect her communications." *Niceforo v. UBS Glob. Asset Agmt. Ams., Inc.*, 20 F. Supp. 3d 428, 437 (S.D.N.Y. 2014). Undertaking actions that "'will predictably lead to the disclosure' of privileged communications" results in waiver of the attorney-client privilege, *Niceforo*, 20 F. Supp. 3d at 437; *see Horowitz*, 482 F.2d at 82, "unless such disclosure was 'necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit'", *Strougo*, 199 F.R.D. at 522 (citing case quoting *Kovel*, 296 F.2d at 922). Nevertheless, "this extension [under *Kovel*] has always been a cabined one, and '[t]o that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client.'" *Mejia*, 655 F.3d at 132 (citing *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)); *see Horowitz*, 482 F.2d at 80–82 (distinguishing *Kovel*).

The "'common interest' doctrine" presents an exception to waiver where multiple parties are represented by the same counsel and "working together . . . towards a common goal" or are

8

represented by different counsel engaged in "a common legal enterprise" such that "the nature of the [shared] interest be identical, not similar, and be legal, not solely commercial." *Strougo*, 199 F.R.D. at 520 (internal citations omitted).  Nevertheless, the attorney-client privilege "ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Horowitz*, 482 F.2d at 81; *see Mejia*, 655 F.3d at 132.

In this case, the Affidavit and Petition of Brain Hofmeister similarly states that HCHK Tech provided "a la carte consulting services across Technology, Product Development, Engineering, Human Resources, Recruitment, Legal, Finance, and R&D." (Complaint Ex. 13, Affidavit and Petition of Brian Hofmeister ¶ 4.)  G-Club was a consumer of these wide-ranging services pursuant to the terms of the MSA.  (*Id.* Ex. 13, Affidavit and Petition of Brian Hofmeister ¶ 5.)  HCHK Tech provided those services as an independent contractor.  (Mot. Ex. A, § 10.1.)  Section 1.1 of the MSA states that the services HCHK Tech will provide to G-Club are listed on an exhibit to the MSA.  (*Id.* Ex. A, § 1.1.)  Exhibit A to the MSA lists five categories of service in addition to information technology support services, the sole category of service acknowledged by G-Club in its arguments.  (*Id.* Ex. A, Ex. A.)  Additional categories of service include, among other things, legal services, human resources services, financial services, and engineering/development services.  (*Id.* Ex. A, Ex. A.)  Section 6.2 of the MSA makes clear that HCHK Tech may use G-Club's documents in the course of providing the services listed on exhibit A to the agreement.  (*Id.* Ex. A, § 6.2.)  Despite G-Club's assertions to the contrary, HCHK Tech's relationship to G-Club is disanalogous to the relationships Microsoft has with the average consumer of its cloud services and cloud-based office software.

For that reason, *Metro Storage International v. Harron*, 275 A.2d 810, 868–72 (Del. Ch. 2022), cited by G-Club, is not persuasive on the instant facts.  In that case, in pertinent part, the

9

employee defendant argued that the corporate plaintiffs' argument that he had breached
confidentiality provisions in the plaintiffs' operating agreements through, *inter alia*, arguing that
the plaintiffs had waived confidentiality by sharing their documents with a non-party
corporation. *Harron*, 275 A.2d at 822–24, 868, 870–71. In *Harron*, the non-party corporation
provided property management and related services as well as information technology services
and stored all of the plaintiffs' electronic documents on its servers. *Id.* at 870–71. The Delaware
Court of Chancery equated these technical services to those of, *e.g.*, g-mail or Microsoft 365, *Id.*
at 871 n. 35, and held that the non-party was the plaintiffs' agent bound to maintain the
confidentiality of the documents and, hence, in sharing the documents with the non-party did not
constitute a waiver of confidentiality, *Id.* at 871.

As discussed above, however, unlike in *Harron*, in this case, HCHK Tech provided "a la
carte" services over a variety of fields under the MSA, including fields that would require it to
access the contents of the documents. (Mot. Ex. A, Ex. A.) Notwithstanding the terms of the
MSA, G-Club argues that HCHK Tech was only the information technology manager for G-
Club's domain name and did not have access to the documents. (ECF 168, Hr'g Tr. at 34:10–
37:13.) G-Club provides no evidence supporting this assertion and contradicting the MSA. G-
Club additionally contends the Trustee has not proven that HCHK Tech accessed G-Club's
documents. (*Id.*) In making these arguments, G-Club attempts to shirk its burden. *Mejia*, 655
F.3d at 132; *Horowitz*, 482 F.2d at 82; *Kovel*, 296 F.2d at 923; *Strougo*, 199 F.R.D. at 519. The
Court declines to follow G-Club into error.

The burden is not on the Trustee to prove that HCHK accessed documents. Indeed, the
Second Circuit held in *Horowitz* that a party waived the attorney-client privilege where he
"treated the communications between himself and counsel on the same basis as all other records,

10

with Horowitz, who was an independent contractor and not a servant, having a free run to look at

what he pleased," 482 F.2d at 82, despite noting that "[t]he record concerning Horowitz' use of

the files containing communications between the Kassers and lawyers is meagre," *id.* at 80, and

acknowledging Horowitz's contradictory testimony. The former was the basis of the holding in

*Horowitz*, not the latter. *Id.* at 82.

G-Club has not sought to fit its disclosure of privileged documents to HCHK Tech within

an exception to waiver. G-Club makes no argument that disclosure to HCHK Tech was either

necessary or highly useful in its consultation with its counsel. Similarly, G-Club makes no

argument that HCHK Tech and G-Club share a common legal interest, either in shared

representation or as part of a shared legal enterprise.

Therefore, the Court concludes that through disclosure of its communications with

HCHK Tech, G-Club waived the attorney-client privilege. Moreover, while it is true that G-

Club's time to object to the assignment proceedings and/or the proposed sale of, *inter alia*,

HCHK Tech to G-News through said assignment proceedings had not passed before the issuance

of the temporary restraining order in this adversary proceeding, the Trustee is correct that G-

Club has not established that it had any intent to oppose either the assignment or the sale. This

further establishes that G-Club has treated its communications in ways that "'predictably lead to

the disclosure' of privileged communications." *Niceforo*, 20 F. Supp. 3d at 437; *see Horowitz*,

482 F.2d at 82.

For all these reasons, the Court concludes that G-Club has not met its burden to establish

that the attorney-client privilege applies. The Assignee may produce G-Club's documents

without such documents being subject to G-Club's review for privilege. G-Club must, therefore,

turn over to the Trustee the documents the Assignee produced to them pursuant to decretal

11

paragraph 6a of the Order Approving Settlement without regard to whether any documents are privileged.

## V. CONCLUSION AND ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED:** The relief requested in the Motion is **GRANTED**. On or before November 17, 2023, G-Club shall make available to the Trustee all documents provided to G-Club by the Assignee in accordance with paragraph 6(a) of the Order Approving Settlement; and it is further

**ORDERED:** On or before November 17, 2023, the Assignee shall make available to the Trustee all copies retained by the Assignee of documents provided to G-Club by the Assignee in accordance with paragraph 6(a) of the Order Approving Settlement; and it is further

**ORDERED:** All documents produced to the Trustee pursuant to this order shall be considered documents designated as "confidential" and subject to the protective order entered as ECF No. 923 in the jointly administered cases captioned *In re Kwok*, Case 22-50073 (JAM); and it is further

**ORDERED:** On or before November 14, 2023, the Trustee shall serve this Order on G-Club and the Assignee. On or before November, 15, 2023, the Trustee shall file a certificate of service evidencing compliance with this Order.

Dated at Bridgeport, Connecticut this 13th day of November, 2023.

Julie A. Manning
United States Bankruptcy Judge
District of Connecticut

# Exhibit B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

### G CLUB OPERATIONS LLC'S MOTION TO STAY PENDING APPEAL PURSUANT TO BANKRUPTCY RULE 8007

Pursuant to Federal Rules of Bankruptcy Procedure 8007(a)(1)(A), G Club Operations LLC ("G Club Operations") requests a stay of the Court's Order, dated November 13, 2023, granting the Chapter 11 Trustee's *Motion that G-Club Operations LLC Has Waived any Privilege and Has No Right to Object to Responsiveness. Despins et al v. HCHK Technologies, Inc. et al*, No. 23-05013 (Bankr. D. Conn. Jun. 8, 2023) (Dkt No. 179) (the "Order"). That final appealable Order requires that G Club Operations and the Assignee of HCHK Technologies turn over to the Trustee privileged communications of G Club Operations, among other documents, by November 17, 2023 (less than the 14 days a party has to appeal an Order) because HCHK Technologies acted as an internet administrator to G Club Operations, as well as other customers. This Order is erroneous and creates a dangerous precedent that essentially holds that when a business or individual outsources its IT services to a provider which may also provide additional services, then that business or individual loses all rights to and in its documents, including the right to protect from disclosure attorney-client and work-product privileged communications. Respectfully, the Court erred in issuing this Order and G Club Operations has filed a Notice of Appeal to the District Court challenging the Order.

As explained herein, G Club Operations satisfies the requisite elements for a stay pending

appeal because (1) failure to grant the stay and forcing G Club Operations to turn privileged communications over to the Trustee before an appeal is heard will effectively deprive G Club Operations of the right to appeal by rendering the appeal moot and irrevocably impacting its due process rights; (2) there is no harm to the Trustee as the Trustee has already received more than 140,000 documents from G Club Operations in connection with the Rule 2004 process, in addition to having issued far in excess of 200 Rule 2004 subpoenas; (3) the ruling is against public policy as it implicates the privacy and constitutionally protected rights of millions of customers; and (4) G Club Operations is likely to succeed on the merits because the Court's reasoning is incorrect. Accordingly, a stay <u>pending appeal</u> should be granted so protected documents are not turned over before the issues on appeal are finally resolved.

Because the Order requires compliance by November 17, 2023, exigent circumstances exist to address this motion on an emergency motion. Further, G Club Operations respectfully requests that, to the extent practical, the Court rule on this motion no later than Thursday, November 16, 2023, so that G Club Operations may have the opportunity to seek further appropriate relief from the District Court if necessary. In the absence of a ruling, G Club Operations intends to file a motion to stay in the District Court on Friday, November 15, 2023.

## <u>RELEVANT PROCEDURAL BACKGROUND</u>[1]

1.      On June 23, 2023, the Trustee filed a Motion, Pursuant to Bankruptcy Rule 9019, Regarding Settlement with Assignee of HCHK Entities Under New York Court Assignment

---

[1] The Order arises from a Rule 9019 Motion relating to HCHK Technologies, Inc. ("HCHK Technologies"), HCHK Property Management, Inc. ("HCHK Property") and Lexington Property and Staffing, Inc. ("HCHK Lexington") (collectively, "HCHK Entities") via the alleged authority of an Assignee, with the subject matter of the Order resolving a final discrete issue – G Club's objection on due process grounds. The Order is a final order for purposes of appeal because it "definitively dispose of [a] discrete disputes within the overarching bankruptcy case." *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citation omitted). The Court has approved the Rule 9019 Motion.

Proceedings (No. 22-50073, Dkt No. 1936) (the "9019 Motion"). The 9019 Motion included a Proposed Order that HCHK Technologies turn over to the Trustee all documents to which it may have had access. (*Id.*, Dkt. No. 2004) (the "Revised Proposed Order"). Specifically, Paragraph 6 of the Revised Proposed Order stated:

> **"Corporate Records.** The Assignee shall immediately make available to the Trustee all non-privileged corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee. All such corporate records and other documents shall be considered documents designated as "confidential" and subject to the protective order entered in this Chapter 11 Case on October 6, 2022 [Main Case Docket No. 923]."

*Id.* at 3, ¶.[2]

2.      On July 5, 2023, and again on July 14, 2023 (*id.*, Dkt. Nos. 1977 and 2007 respectively), G Club Operations objected to Paragraph 6 of the Proposed Order and requested an orderly process by which to preclude a wholesale turnover of confidential and privileged materials to the Trustee simply because it outsourced IT services.

3.      On July 28, 2023, the Court ruled on the 9019 Motion, granting the 9019 Motion but modifying Paragraph 6 of the Proposed Order to provide:

> **Corporate Records:** (a) The Assignee shall immediately secure and safeguard all corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee. Within ten (10) days from the date of the entry of this Order, the Assignee shall make available to the Trustee all non-privileged corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee, *except those that were at any point the property of G-Club Operation LLC ("G-Club")*. All such corporate records and other documents shall be considered documents designated as "confidential" and subject to the protective order entered in this Chapter 11 Case on October 6, 2022 [Main Case Docket No. 923] (the "Protective Order"). Also within ten (10) days from the date of the entry of this Order, the Assignee shall make available to G-Club all corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee, *which were at any point the property of G-Club. Upon receipt, G-Club shall immediately review such corporate records and other*

---

[2] The Rule 9019 was entered into between the Assignee of the HCHK Entities and the Trustee. Various issues related to that Rule 9019 Order are the subject of an appeal. *See* No. 23-05013, Dkt. Nos. 70, 80, and 98.

> *documents for privilege and responsiveness to the Trustee's Rule 2004 subpoena of G-Club and produce a privilege log and responsiveness log.* G-Club may designate materials it will produce to the Trustee as "confidential" or "highly confidential" in accordance with the Protective Order.

*Id.*, Dkt. No. 2038 at 4, ¶ 6(a)) (emphasis added).

4.      The Court also provided that "[o]n or before August 11, 2023, the Trustee shall file a brief in support of the Trustee's argument that G-Club has waived any privilege and has no right to object to responsiveness.  On or before August 18, 2023, G-Club shall file any response to the Trustee's brief." *Id.* at 5, ¶ 6(b).

5.      On August 11, 2023, the Trustee filed a *Memorandum of Law in Support of Chapter 11 Trustee's Argument that G-Club Operations LLC has Waived any Privilege and has no Right to Object to Responsiveness as to G-Club Documents Turned Over from the Assignee of HCHK Technologies, Inc. to the Trustee Pursuant to Bankruptcy Rule 9019 Settlement Agreement* (the "Waiver Motion"), which the Trustee filed in Adversary Proceeding No. 23-05013, ECF No. 86 (and not in No. 22-50073, as all other filings had previously been made).

6.      G Club Operations opposed the Waiver Motion on September 29, 2023, filing its *Response to Trustee's Memorandum Challenging G Club's Privilege Assertions In Documents In HCHK's Possession and Opposition To The Trustee's Related Proposed Order*.  (No. 22-50073, Dkt. No. 2244).[3]

7.      On November 13, 2023, the Court issued the Order granting the Trustee's Waiver Motion and ordering production by G Club Operations and the Assignee of HCHK Technologies by November 17, 2023, which is less than the time afforded G Club Operations to appeal the Order pursuant to Bankruptcy Rule 8002.   This Order is final.

---

[3]  G Club filed on a different date for the reasons set forth in its *Opposition To Trustee's Proposed Supplemental Order Regarding G-Club Documents Pursuant To Order Approving Chapter 11 Trustee's Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings* (No. 22-50073, Dkt. No. 2233).

## A STAY OF THE ORDER PENDING APPEAL IS PROPER

8.    The United States Court of Appeals for the Second Circuit has established the

following four-part test for determining whether to grant a motion for stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed
> on the merits; (2) whether the applicant will be irreparably injured absent a stay;
> (3) whether issuance of the stay will substantially injure the other parties interested
> in the proceeding; and (4) where the public interest lies.

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (citations omitted).

Each factor favors a stay in this case.  A stay is "'an exercise of judicial discretion,' and '[t]he

party requesting a stay bears the burden of showing that the circumstances justify an exercise of

that discretion.'" *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020)

(quoting *Nken v. Holder*, 129 S. Ct. 1749, 1760 (2009)).

### A.    Absent a Stay, G Club Operations Will Be Irreparably Harmed by Deprivation of Appeal Rights and a Waiver of Privilege

9.    Absent a stay, G Club Operations will suffer irreparable injury because one cannot

effectively undo the wholesale turnover of privileged communications to the Trustee and, as a

result, that turnover may render the appeal moot.  Courts have found that irreparable injury exists

when the denial of a stay creates the potential for a complete loss of a right for the moving party.

*In re St. Johnsbury Trucking Co., Inc.*, 185 B.R. 687, 690 n.1 (S.D.N.Y. 1995) (finding that if the

government's appeal here is mooted, it will lose the ability to enforce some provisions of CERCLA

and the Internal Revenue Code; it is that threatened loss rather than the loss of the right to appeal

*vel non* that gives rise to the Court's irreparable injury finding).  "[W]here the denial of a stay

pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm

requirement is satisfied."   *In re BGI, Inc.*, 504 B.R. 754, 763 (S.D.N.Y. 2014) (internal quotation

marks and citations omitted, alterations added).

10.    That is precisely the issue here; G Club Operations' rights absent a stay will forever be lost as production of privileged information likely would moot any meaningful remedy if the Order is overturned on appeal.  The production deadline in the Order requires compliance by November 17, 2023. This production includes privileged communications between G Club Operations and its counsel.  If G Club Operations, or HCHK, is forced to comply with the Order, G Club Operations will effectively forever lose its right to protect confidential communications with its attorneys.  Once obtained, the Trustee and his advisors cannot unlearn the privileged communications they will see and review.

**B.    A Stay Will Not Prejudice the Trustee**

11.    Unlike any other party in this bankruptcy matter, the Trustee has availed itself of the broad discovery afforded under Rule 2004.  Indeed, the Trustee has already sought leave to file 255 Rule 2004 subpoenas.[4]  With respect to G Club Operations specifically, the Trustee has served G Club Operations with a Rule 2004 Subpoena and G Club Operations has produced in excess of 140,000 documents.  In addition, and in accordance with the Court's Order on the Rule 9019 Motion, G Club Operations also produced a privilege log to the Trustee.

12.    Accordingly, the Trustee will not suffer any "substantial injury" by allowing G

---

[4]  Specifically: (i) the Trustee's First Supplemental Omnibus Motion (Dkt. No. 839) seeking twenty-five (25) subpoenas; (ii) the Trustee's Second Supplemental Omnibus Motion (Dkt. No. 1116) seeking fifty-three (53) subpoenas; (iii) the Trustee's Third Supplemental Omnibus Motion (Dkt. No. 1259) seeking nineteen (19) subpoenas; (iv) the Trustee's Fourth Supplemental Omnibus Motion (Dkt. No. 1592) seeking fifty-seven (57) subpoenas; (v) the Trustee's Fifth Supplemental Omnibus Motion (Dkt. No. 1789) seeking eight (8) subpoenas; (vi) the Trustee's Sixth Supplemental Omnibus Motion (Dkt. No. 2079) seeking twenty (20) subpoenas; (vii) the Trustee's Seventh Supplemental Omnibus Motion (Dkt. No. 2249) seeking six (6) subpoenas; (viii) the Trustee's Eighth Supplemental Omnibus Motion (Dkt. No. 2304) seeking eight (8) subpoenas; and (ix) the Trustee's Ninth Supplemental Omnibus Motion (Dkt. No. 2308) seeking twenty-nine (29) subpoenas.  The latter two are presently subject to objections.  *See, e.g., Objection of Shin Hsin Yu and Jie Zhang to Eighth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt. No. 2319); *G Club Operation LLC's Limited Objection to Eighth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt No. 2320); *Objection of Shin Hsin Yu, 1332156 B.C. LTD, GWGOPNZ Limited, and Jie Zhang to Ninth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt No. 2326); *G Club Operations LLC's Objection to Ninth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt. No. 2331).

Club Operations to appeal the Order which, once complied with, will render any appeal moot and will forever infringe G Club Operations' due process rights.

**C.     The Order Is Against Public Policy**

13.     The Order poses an immediate threat to the privacy and constitutionally-protected interests of customers who outsource their IT services.  The Order is contrary to authority holding that utilization of "hosting services did not result in a waiver."  *See Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 871 (Del. Ch. 2022) (alterations added).  There is no legal support for the proposition that simply using an outsourced, cloud-based data hosting service results in a waiver of privilege or otherwise transfers the information maintained on the cloud to the administrator.

**D.     G Club Operations Has A Substantial Possibility of Success on Appeal Because the Order Is Erroneous**

14.     As a preliminary matter, "[t]he requisite showing of "substantial possibility" of success is "inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay." *In re BGI, Inc.*, 504 B.R. at 764 (second alteration in original, citations omitted).  As noted above, the harm to G Club Operations of an unstayed order forcing the turnover of its privileged documents is a change in circumstances that cannot be undone.  As such, G Club Operations "need not always show a "probability of success' on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.* (citation omitted).  As explained below, however, the Order reaches an erroneous legal conclusion, assuming waiver and improperly shifting the burden to G Club Operations to establish an exception when no waiver took place, which makes it likely G Club Operations will prevail on appeal.

- **The Order Conflates Documents "Disclosed" to HCHK *with* G Club Operations Documents on the Cloud for which HCHK Acted as IT Administrator**

15.  In addressing the issue of responsiveness and privilege, the Order conflates documents G Club Operations *disclosed* to HCHK that became property of HCHK *versus* G Club Operations emails maintained on the cloud for which HCHK acted as IT manager and administrator and which belong only to G Club Operations, with a *gclub.com* domain name, and never became HCHK's property. This extends to any other customer that HCHK has as a customer. As a result, the Order improperly relies on the Master Services Agreement between HCHK and G Club Operations as a basis to transfer gigabytes of cloud data to the Trustee that was never *disclosed* to HCHK.

16.  Illustrating this mistake is the Order's improper characterization of G Club Operations' position in No. 22-50073, Dkt. No. 2244, as a review process. The Order states "that G-Club had rights to review the documents for both responsiveness and privilege." Order at 3. In other words, the Court improperly framed the issue as G Club Operations' demand to review documents that HCHK was intending to produce to the Trustee as if G Club Operations had *disclosed* the documents on the cloud to HCHK in the first instance.

17.  That was not the issue raised by the Waiver Motion and challenged by G Club Operations. As G Club Operations argued in its filings:

> "G Club contracted with HCHK for the administration of a cloud-based storage and email system for its communications (among other services). That system, Microsoft 365, is a cloud-based enterprise system which is routinely utilized by corporations and law firms. That HCHK was the system's administrator is not relevant to G Club's assertion of privilege; the documents were maintained in "the cloud," and the Trustee has made no assertions (nor can he) that a single individual other than G Club employees ever reviewed documents maintained on the cloud that hosted G Club domain names. Privileged documents stored in a cloud system administered by a third party simply do not lose their protected status."

No. 22-50073, Dkt. No. 2244, at 2-3, ¶ 3.

18.    Thus, the issue is whether privileged documents lose their protected status merely as a result of outsourcing IT services when there is no factual contention that the IT service provider ever had access to the privileged material.

19.    Underscoring this confusion is the Order's improper reliance on the Master Services Agreement ("MSA") between HCHK and G Club Operations.  In quoting the MSA, the Court erroneously stated: "Under the terms of the Master Services Agreement (the "MSA") between HCHK Tech and G-Club, the Assignee may disclose G-Club's documents to a third party as required by law.  (Mot. Ex. A, § 6.2.)" Order at 6.

20.    Section 6.2, however, cannot be read without Section 6.1, which provides: "Confidential Information" means any information *disclosed* under this Agreement by either party ("*Disclosing* Party") to the other party ("*Receiving* Party")."  MSA § 6.1 (emphasis added).  G Club Operations documents that are maintained "in the cloud" are not documents *disclosed* to HCHK.

21.    Indeed, there is a clear distinction between documents *sent* to HCHK or *shared* with HCHK (which should not be turned over to the Trustee without a review by G Club Operations of responsiveness and privilege) *versus* the gigabytes of data on the cloud which were not disclosed to HCHK and belong to G Club Operations and G Club Operations only.

22.    As such, the MSA's provisions – which describes the parties in terms of "Receiving Party" and "Disclosing Party" – do not inform the Court's analysis of whether privileged material maintained "in the cloud" thereby lose their protected status.

- **The Order Improperly Assumed Waiver and Erroneously Shifted the Burden to G Club Operations to Establish an Exception to Waiver**

23.    With respect to privilege, the Order improperly assumed waiver based solely on the Trustee's conclusory assertion "that G-Club has waived any privilege in the documents in the

custody, control, and/or possession of the Assignee at the time of his settlement with the Trustee." Order at 7. "Documents" is not precisely defined, failing to account for the distinction explained above. And thereafter, the Order improperly concludes that there must have been a waiver because HCHK provided "a la carte consulting services" and "Section 6.2 of the MSA makes clear that HCHK Tech may use G-Club's documents in the course of providing the services listed on exhibit A to the agreement. (*Id.* Ex. A, § 6.2.)"   Order at 9. However, documents "in the cloud" are not documents to which HCHK had access or otherwise reviewed. In effect, the Court assumed access and review and waiver, and then improperly shifted the burden to G Club to establish an exception to waiver when there was no waiver in the first instance.

24.     As stated, the Court based its effective burden shifting on the concept that G Club Operations' privilege had been waived merely as a result of HCHK's provision of data hosting in the cloud together with other services under the MSA. But, there is no legal support for the proposition that the mere provision of "a la carte consulting services" separate and apart from data hosting (particularly where there are no facts that could show that the host actually accessed privileged material) results in waiver of privilege – unless, of course, documents are actually exchanged, shared, disclosed, or otherwise reviewed by a party. Once again, the Order improperly conflates documents that would have been exchanged in the course of providing services (like communications between G Club Operations and HCHK) *versus* an outsourced IT service for cloud administration.   The Order erroneously *assumes* waiver, and thus improperly shifted the burden to G Club Operation to demonstrate an exception to waiver under "common interest" or *Kovel*. Order at 9-11.

## CONCLUSION

25.     Under these circumstances, a stay pending appeal is proper to preserve the status

quo and prevent the irreparable harm to G Club Operations of effectively losing its due process and privilege rights.

**RELIEF REQUESTED**

26.     G Club Operations respectfully requests that the Court enter a stay pending appeal of the Order.

  Dated:  November 15, 2023

<div style="margin-left:40%">

By:   _/s/ Jeffrey M. Sklarz_
GREEN & SKLARZ LLC
Jeffrey M. Sklarz
Kellianne Baranowsky
One Audobon St, 3rd Floor
New Haven, CT 06511
Tel: 203-285-8545
jsklarz@gs-lawfirm.com
kbaranowsky@gs-lawfirm.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
Carolina A. Fornos (*pro hac vice*)
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1558
carolina.fornos@pillsburylaw.com

*Attorneys for G Club Operations LLC*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, a copy of the foregoing was served via

CM/ECF.  Parties may access this filing through the Court's CM/ECF system.

Date:  November 15, 2023.

 /s/ Jeffrey M. Sklarz
Jeffrey M. Sklarz

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

*EX-PARTE* **MOTION TO EXPEDITE HEARING AND LIMIT**
**NOTICE RE: MOTION TO STAY PENDING APPEAL,**
**FILED BY G. CLUB OPERATIONS, LLC**

Pursuant to Fed. R. Bankr. P. 9006(c)(1) and Fed. R. Bankr. P. 8007, G Club Operations,

LLC ("**G Club Operations**"), respectfully moves that the Court expedite the hearing on *G Club*

*Operations, LLC Emergency Motion to Stay Pending Appeal* (the "**Motion to Stay**"), filed

concurrently herewith. G Club Operations seeks a hearing on <u>**Thursday, November 16, 2023**</u>

(at any time, either in person or via Zoom.gov) as the Court has set Friday, November 17, 2023

(a date 4 days after entry of the November 13, 2023 *Order Granting Motion for Order Requiring*

*Production of G-Club Documents* (Filed only in the Adv. Proc. 23-5013, the "**Ruling**"),[1] as the

deadline for compliance with the Ruling.

    1.    The background of this matter is well known to the Court and summarized in the

Motion to Stay.

    2.    Fed. R. Bankr. P. 9006(c)(1) provides that the Court may reduce the notice period

for a motion upon cause shown.

---

[1] G Club Operations is not a party to, was never served in, and no counsel has an appearance in Adv. Proc. 23-5013
(the "**HCHK AP**"). The Ruling relates to G Club's opposition to certain elements of an order entered under Fed. R.
Civ. P. 9019 (Main Case ECF No. 2038), approving certain aspects of a settlement of the HCHK AP between the
Trustee and HCHK. *See* Main Case ECF Nos. 2270, 2242, 2237, 2233, 2077, 2038, 1977). A Notice of Appeal has
been filed in both the Main Case and HCHK AP.

{00340431.1 }

3.      The Motion to Stay requires immediate consideration as the compliance date set by the Court is November 17, 2023, 4 days after the Court issued its Ruling.

4.      As detailed in the Motion to Stay, G Club Operations satisfies the requisite elements for a stay pending appeal because (1) failure to grant the stay and forcing G Club Operations to turn privileged communications over to the Trustee before an appeal is heard will effectively deprive G Club Operations of the right to appeal by rendering the appeal moot and irrevocably impacting its due process rights; (2) there is no harm to the Trustee as the Trustee has already received more than 140,000 documents from G Club Operations in connection with the Rule 2004 process, in addition to having issued far in excess of 200  Rule 2004 subpoenas; (3) the ruling is against public policy as it implicates the privacy and constitutionally protected rights of millions of customers; and (4) G Club Operations is likely to succeed on the merits because the Court's reasoning is mistaken in fact and law.  Accordingly, a stay _pending appeal_ should be granted so protected documents are not turned over before the issues on appeal are finally resolved.

5.      Because the Order requires compliance by November 17, 2023, exigent circumstances exist to address this motion on an emergency motion. ***Further, G Club Operations respectfully requests that, to the extent practical, the Court rule on this motion no later than Thursday, November 16, 2023, so that G Club Operations may have the opportunity to seek further appropriate relief from the District Court if necessary.***   In the absence of a ruling, G Club Operations intends to file a motion to stay in the District Court on Friday, November 15, 2023.

6.      Thus, cause exists for the Court to grant this Motion to Expedite and to schedule an expedited hearing on the Motion to Stay.

**WHEREFORE**, G Club Operations respectfully requests that the Court expedite the

hearing on the Motion to Stay to **Thursday, November 16, 2023**, and for such other and further

relief as the Court deems just, proper, and necessary.

Dated: November 15, 2023      G CLUB OPERATIONS, LLC


By:   _/s/ Jeffrey M. Sklarz_
     GREEN & SKLARZ LLC
     Jeffrey M. Sklarz
     Kellianne Baranowsky
     One Audobon St, 3rd Floor
     New Haven, CT 06511
     Tel: 203-285-8545
     jsklarz@gs-lawfirm.com
     kbaranowsky@gs-lawfirm.com


     PILLSBURY WINTHROP SHAW PITTMAN LLP
     Carolina A. Fornos (_pro hac vice_)
     31 West 52nd Street
     New York, NY 10019
     Tel: 212-858-1558
     carolina.fornos@pillsburylaw.com

     _Attorneys for G Club Operations LLC_

{00340431.1 }            3

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, a copy of the foregoing was served via

CM/ECF.  Parties may access this filing through the Court's CM/ECF system.

Date:   November 15, 2023.

Jeffrey M. Sklarz
*/s/ Jeffrey M. Sklarz*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

### ORDER GRANTING EX-PARTE MOTION TO EXPEDITE HEARING AND LIMIT NOTICE RE: MOTION TO STAY PENDING APPEAL, FILED BY G. CLUB OPERATIONS, LLC

Pursuant to Fed. R. Bankr. P. 9006(c)(1) and Fed. R. Bankr. P. 8007, G Club Operations, LLC ("**G Club Operations**"), moved the Court to expedite the hearing on *G Club Operations, LLC's Emergency Motion to Stay Pending Appeal* (the "**Motion to Stay**"), it appears that the relief in the motion to expedite should be granted, it is hereby:

**ORDERED**, that a hearing on the Motion to Stay will be held on **November 16, 2023** at __:__ a.m./p.m., via zoom platform / in person at the United States Bankruptcy Court, Bridgeport, Connecticut.

**ORDERED**, that service of this Order and the motion to expedite must be made on all parties entitled to notice on or before __:__ a.m./p.m., on November __, 2023; and it is further

**ORDERED**, that a certificate of service demonstrating that the provisions of the Order Granting the motion to expedite have been complied with must be filed on or before __:__ a.m./p.m., on November ____, 2023.

{00340505.1 }

# Exhibit C

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors.[1] | (Jointly Administered) |
| | November 15, 2023 |

## <u>NOTICE OF APPEAL</u>

PLEASE TAKE NOTICE that pursuant to Fed. R. Bankr. P. 8001 *et seq.*, G Club

Operations, LLC ("**G Club Operations**"), hereby files notice of its appeal from the Bankruptcy

Court's November 13, 2023 *Order Granting Motion for Order Requiring Production of G-Club*

*Documents* (Filed only in the Adv. Proc. 23-5013, the "**Ruling**"),[2] granting the Trustee, Luc A.

Despins, Chapter 11 Trustee (the "**Trustee**") access to all G Club Operations documents stored

electronically with HCHK Technologies, Inc. ("**HCHK**") further to the *Trustee's Memorandum*

*of Law in Support of Chapter 11 Trustee's Argument that G-Club Operations LLC Has Waived*

*any Privilege and Has No Right to Object to Responsiveness* (the "**Motion**") (filed only in Adv.

Proc. 23-5013, ECF No. 86). A copy of the Ruling is attached hereto as <u>Exhibit A</u>

---

[1]  The Debtors in these chapter 11 cases are Ho Wan Kwok (last four digits of tax identification number: 9595) (the "Debtor"), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]  G Club Operations is not a party to, was never served in, and no counsel has an appearance in Adv. Proc. 23-5013 (the "**HCHK AP**").  The Ruling relates to G Club's opposition to certain elements of an order entered under Fed. R. Civ. P. 9019 (Main Case ECF No. 2038), approving certain aspects of a settlement of the HCHK AP between the Trustee and HCHK.  *See* Main Case ECF Nos. 2270, 2242, 2237, 2233, 2077, 2038, 1977).  The Ruling appealed from, however, was entered only in the Adversary Proceeding, and thus this Notice is also filed in the Adversary Proceeding.

{00340394.2 }

The names of all parties to the Court's order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

**Jeffrey M. Sklarz**
**Kellianne T. Baranowsky**
Green & Sklarz LLC
One Audubon Street, 3rd Floor
New Haven, CT 06511
(203) 285-8545
Fax: (203) 823-4546
jsklarz@gs-lawfirm.com
kbaranowsky@gs-lawfirm.com

and

Carolina A. Fornos (*pro hac vice*)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1558
carolina.fornos@pillsburylaw.com

*Representing*

**G Club Operations LLC**
53 Calle Palmeras, Suite 1401
Puerta De Tierra
San Juan, Puerto Rico 00901

*Party-in-Interest and Appellant*

*****************************

Douglas S. Skalka (ct00616) Patrick R.
Linsey (ct29437) NEUBERT, PEPE &
MONTEITH, P.C.
195 Church Street, 13th Floor New
Haven, Connecticut 06510 (203) 781-
2847 dskalka@npmlaw.com
plinsey@npmlaw.com and

and

Nicholas A. Bassett (pro hac vice)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

and

*Representing*

**Luc A. Despins, Chapter 11 Trustee**
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166

*Chapter 11 Trustee and Appellee*

{00340394.2 }

Avram E. Luft (pro hac vice)
Douglass Barron (pro hac vice)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
aviluft@paulhastings.com

Counsel for the Chapter 11 Trustee


THE PARTY-IN-INTEREST
G CLUB OPERATIONS LLC


By:     /s/Jeffrey M. Sklarz
        Jeffrey M. Sklarz (ct20938)
        Green & Sklarz LLC
        700 State St, Suite 100
        New Haven, CT 06511
        (203) 285-8545
        Fax: (203) 823-4546
        jsklarz@gs-lawfirm.com

{00340394.2 }

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below a copy of the foregoing was served by

CMECF and/or mail on anyone unable to accept electronic filing.  Notice of this filing will be

sent by email to all parties by operation of the Court's electronic filing system or by mail to

anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties

may access this filing through the Court's CM/ECF System.


Date:   November 15, 2017                      /s/ Jeffrey M. Sklarz _____

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors.[1] | (Jointly Administered) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | Adv. P. No. 23-05013 (JAM) |
| Plaintiff, | Re: ECF No. 86 |
| v. | |
| HCHK TECHNOLOGIES, INC., HCHK PROPERTY MANAGEMENT, INC., LEXINGTON PROPERTY AND STAFFING, INC., HOLY CITY HONG KONG VENTURES, LTD., ANTHONY DIBATTISTA, YVETTE WANG, and BRIAN W. HOFMEISTER, ASSIGNEE FOR THE BENEFIT OF CREDITORS, | |
| Defendants. | |

## ORDER GRANTING
## MOTION FOR ORDER REQUIRING PRODUCTION OF G-CLUB DOCUMENTS

## I. INTRODUCTION

Before the Court is the Memorandum of Law in Support of Chapter 11 Trustee's

Argument that G-Club Operations LLC Has Waived any Privilege and Has No Right to Object to

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Responsiveness (the "Motion") (ECF No. 86)[2] filed by Mr. Luc A. Despins, in his capacity as

Chapter 11 trustee (the "Trustee") for the estate of Mr. Ho Wan Kwok, pursuant to decretal

paragraph 6(b) of the Order Approving Chapter 11 Trustee's Settlement with Assignee of HCHK

Entities (the "Order Approving Settlement") (ECF No. 70). For the reasons stated below, the

relief requested in Motion is granted and an order requiring G-Club Operations LLC ("G-Club")

and/or Mr. Brian Hofmeister, in his capacity as assignee for the benefit of creditors (the

"Assignee") of HCHK Technologies, Inc. ("HCHK Tech"), HCHK Property Management, Inc.,

and Lexington Property and Staffing, Inc. (collectively, the "HCHK Entities") to produce

documents possessed, previously as the case may be, by the Assignee, which documents were

provided to G-Club by the Assignee pursuant to the Order Approving Settlement.

## II. BACKGROUND

On July 11, 2023 and July 18, 2023, hearings were held on, respectively, the Motion

Regarding Settlement with Assignee of HCHK Entities under New York Court Assignment

Proceedings (the "Settlement Motion") (Main Case ECF No. 1936; ECF No. 25) and a revised

proposed order (the "Revised Proposed Order") regarding the Settlement Motion (Main Case

ECF No. 2004; ECF No. 55), both filed by the Trustee. G-Club filed objections to the

Settlement Motion and the Revised Proposed Order. (Main Case ECF Nos. 1977, 2007.) On

July 28, 2023, the Court entered the Order Approving Settlement, which granted the Settlement

Motion and approved the settlement between the Trustee and the Assignee. (Main Case ECF

No. 2038; ECF No. 70.)

---

[2] References to the docket in this adversary proceeding will be styled "ECF." References to the
docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case
ECF."

2

Paragraph 6 of the Order Approving Settlement addressed to G-Club's only remaining objection to the Settlement Motion (*see* Main Case ECF No. 2030, at 128:5–48:8) by setting a briefing schedule whereby the Trustee and G-Club would contest whether G-Club had the right to review G-Club documents in the possession of the Assignee for responsiveness to the Rule 2004 subpoena served on G-Club and for privilege prior to the documents being produced to the Trustee. (Main Case ECF No. 2038 ¶ 6; ECF No. 70 ¶ 6.) On August 11, 2023, the Trustee timely filed the Motion arguing that G-Club did not have any right to review the documents for either responsiveness or privilege. (ECF No. 87.) On September 29, 2023, after certain developments (*see* Main Case ECF No. 2237), G-Club filed a response to the Trustee's memorandum (Main Case ECF No. 2244), arguing that G-Club had rights to review the documents for both responsiveness and privilege.

On October 24, 2023, a hearing was held on the arguments raised by the Trustee in the Motion. The Trustee and G-Club both appeared and argued their respective positions. At the conclusion of the hearing, the Court took the matter under advisement.

The dispute between the Trustee and G-Club is ripe for decision.

## III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. The instant adversary proceeding in which the instant discovery dispute arises is a statutorily core proceeding. 28 U.S.C. § 157(b)(2)(A), (E), (O).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

# IV. DISCUSSION[3]

At the outset, the Trustee and G-Club dispute the terms of the Order Approving Settlement and whether the Motion seeks relief from that order. The Trustee argues that the Order Approving Settlement provided for the parties to litigate the issues raised by the Motion. G-Club argues that it determined the issues in G-Club's favor. The Trustee is clearly correct. While decretal paragraph 6(a) of the Order Approving Settlement provides that the Assignee was to provide G-Club access to G-Club's documents in his possession and G-Club was afforded the opportunity to check for responsiveness to the Rule 2004 subpoena served on G-Club and privilege before producing the documents to the Trustee, decretal paragraph 6(b) provides that the Trustee and G-Club were to brief whether or not G-Club had any right to check the documents for responsiveness and/or privilege before G-Club and/or the Assignee produced them to the Trustee. Essentially, the Order Approving Settlement reserved the issues while providing a mechanism for discovery to continue pending a determination of the issues presently before the Court.

The Court did not previously decide the issues in G-Club's favor and will consider the parties' arguments regarding responsiveness and privilege below.

## A. Responsiveness

The Trustee argues that G-Club cannot object to the Assignee's production of the HCHK Entities' documents pursuant to the Order Approving Settlement on the basis that such documents are not responsive to the Rule 2004 subpoena served on G-Club in Mr. Kwok's Chapter 11 case. Rather than relating to the G-Club subpoena, the Trustee contends, the

---

[3] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable by Rule 7001 in adversary proceedings.

4

settlement reached with the Assignee relates to the discovery the Trustee would have otherwise

pursued in this adversary proceeding and the Rule 2004 subpoena served on HCHK Tech in Mr.

Kwok's Chapter 11 case.

G-Club responds that the Trustee cannot obtain G-Club's property through discovery

from HCHK Tech. Therefore, G-Club argues, the Trustee may only obtain documents from G-

Club pursuant to the Rule 2004 subpoena served on it, subject to a responsiveness review by G-

Club.

The Court agrees with the Trustee. First, the instant dispute is separate and distinct from

the dispute over G-Club's compliance with the Rule 2004 subpoena served on it. The HCHK

Entities provided the Assignee with the authority to settle with the Trustee in the deeds of

assignment. (*See, e.g.*, Complaint Ex. 13, Affidavit and Petition of Brian Hofmeister Ex. B, § 4.)

The Assignee did so: the Order Approving Settlement approved a settlement between the Trustee

and the Assignee regarding this adversary proceeding and, in pertinent part, discovery therein –

not a settlement between the Trustee and G-Club regarding discovery in Mr. Kwok's Chapter 11

case.

In this adversary proceeding, the Trustee alleges that the HCHK Entities are the *alter*

*egos* of Mr. Kwok and/or Mr. Kwok beneficially owns the HCHK Entities and/or their assets.

The Trustee additionally alleges that Mr. Kwok operates a tangled network of entities, relatives,

and loyal followers to hide assets from his creditors. G-Club is allegedly one of those entities.

But for the settlement with the Assignee, the Trustee would have pursued discovery from the

HCHK Entities relating to their connection to G-Club. Indeed, the Trustee sought such

discovery pre-litigation through the service of Rule 2004 subpoenas. The settlement between the

Assignee and the Trustee seeks to resolve discovery issues between the Trustee and the HCHK

Entities.  The Rule 2004 subpoena served on G-Club is a separate issue and does not provide a basis for G-Club to object to the Assignee producing G-Club documents to the Trustee pursuant to the settlement.

Second, the Assignee, with the powers and rights assigned to him by HCHK Tech, may disclose G-Club documents.  (Complaint Ex. 13, Affidavit and Petition of Brian Hofmeister Ex. B, §§ 1, 4.)  Under the terms of the Master Services Agreement (the "MSA") between HCHK Tech and G-Club, the Assignee may disclose G-Club's documents to a third party as required by law.  (Mot. Ex. A, § 6.2.)

Before such disclosure, however, the Assignee must inform G-Club to provide an opportunity for G-Club to seek a protective order or other appropriate relief.  The Assignee has complied with his obligations under the MSA.  G-Club was provided notice of the Settlement Motion, which was filed in Mr. Kwok's Chapter 11 case pursuant to D. Conn. L. Bankr. R. 9019-1(a)(2) – in which G-Club receives notice through electronic notice and service upon appearing counsel – as well as in this adversary proceeding.  Indeed, G-Club initially objected on confidentiality grounds – in line with the provisions of the MSA – as well as on responsiveness and privilege grounds.  At the final hearing, however, G-Club abandoned its confidentiality objection because under the Revised Proposed Order, the Assignee would designate produced documents as "confidential" under the protective order entered in Mr. Kwok's Chapter 11 case (Main Case ECF No. 923).  (Main Case ECF No. 2030, Hr'g Tr. at 128:5–48:8.)  As the abandonment of this objection demonstrates, the settlement protects G-Club as envisioned by the MSA.

For all these reasons, the Court concludes that the Assignee may produce G-Club's documents without such documents being subject to G-Club's review for responsiveness to the

Rule 2004 subpoena served on G-Club in Mr. Kwok's Chapter 11 case. G-Club must, therefore, turn over to the Trustee the documents the Assignee produced to them pursuant to decretal paragraph 6a of the Order Approving Settlement without regard to whether any documents are responsive to the Rule 2004 subpoena served on it.

## B. Privilege

The Trustee argues that G-Club has waived any privilege in the documents in the custody, control, and/or possession of the Assignee at the time of his settlement with the Trustee. G-Club, the Trustee asserts, waived any and all privilege in the documents when, first, G-Club entered into the MSA with HCHK Tech, wherein the Trustee contends HCHK Tech agreed to provide services beyond mere hosting of G-Club's documents and was provided access to those documents; second, G-club failed to object to the assignment of, allegedly, substantially all HCHK Tech's property to the Assignee, including G-Club's documents; and, third, G-Club failed to object to the Assignee's motion to sell HCHK Tech's assets to G-News Operations, LLC ("G-News").

G-Club responds that the present facts and circumstances do not support the conclusion that G-Club has waived any privilege. Namely, G-Club argues that, notwithstanding the terms of the MSA, HCHK Tech merely hosted G-Club documents and did not access them; and G-Club's time to object to the assignment of HCHK Tech's assets to the Assignee and the proposed sale to G-News had not elapsed at the time the Court entered the temporary restraining order regarding the prosecution of the assignment proceedings. G-Club analogizes HCHK Tech's services to G-Club to Microsoft Corporation's ("Microsoft") provision of cloud storage and cloud-based office software to myriad individuals and entities and warns that an adverse ruling would have far-reaching implications contrary to established law.

7

The Court agrees with the Trustee.

"[A]s with all privileges, the person claiming the attorney client privilege has the burden of establishing all essential elements." *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) (citing *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir. 1961)). "The party asserting the privilege . . . bears the burden of establishing" that the communications to be protected are "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011); *see Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519 (S.D.N.Y. 2001) (citing *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). "A party seeking the protections of the attorney-client privilege must affirmatively act to protect her communications." *Niceforo v. UBS Glob. Asset Agmt. Ams., Inc.*, 20 F. Supp. 3d 428, 437 (S.D.N.Y. 2014). Undertaking actions that "'will predictably lead to the disclosure' of privileged communications" results in waiver of the attorney-client privilege, *Niceforo*, 20 F. Supp. 3d at 437; *see Horowitz*, 482 F.2d at 82, "unless such disclosure was 'necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit'", *Strougo*, 199 F.R.D. at 522 (citing case quoting *Kovel*, 296 F.2d at 922). Nevertheless, "this extension [under *Kovel*] has always been a cabined one, and '[t]o that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client.'" *Mejia*, 655 F.3d at 132 (citing *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)); *see Horowitz*, 482 F.2d at 80–82 (distinguishing *Kovel*).

The "'common interest' doctrine" presents an exception to waiver where multiple parties are represented by the same counsel and "working together . . . towards a common goal" or are

8

represented by different counsel engaged in "a common legal enterprise" such that "the nature of the [shared] interest be identical, not similar, and be legal, not solely commercial." *Strougo*, 199 F.R.D. at 520 (internal citations omitted).  Nevertheless, the attorney-client privilege "ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Horowitz*, 482 F.2d at 81; *see Mejia*, 655 F.3d at 132.

In this case, the Affidavit and Petition of Brain Hofmeister similarly states that HCHK Tech provided "a la carte consulting services across Technology, Product Development, Engineering, Human Resources, Recruitment, Legal, Finance, and R&D."  (Complaint Ex. 13, Affidavit and Petition of Brian Hofmeister ¶ 4.)  G-Club was a consumer of these wide-ranging services pursuant to the terms of the MSA.  (*Id.* Ex. 13, Affidavit and Petition of Brian Hofmeister ¶ 5.)  HCHK Tech provided those services as an independent contractor.  (Mot. Ex. A, § 10.1.)  Section 1.1 of the MSA states that the services HCHK Tech will provide to G-Club are listed on an exhibit to the MSA.  (*Id.* Ex. A, § 1.1.)  Exhibit A to the MSA lists five categories of service in addition to information technology support services, the sole category of service acknowledged by G-Club in its arguments.  (*Id.* Ex. A, Ex. A.)  Additional categories of service include, among other things, legal services, human resources services, financial services, and engineering/development services.  (*Id.* Ex. A, Ex. A.)  Section 6.2 of the MSA makes clear that HCHK Tech may use G-Club's documents in the course of providing the services listed on exhibit A to the agreement.  (*Id.* Ex. A, § 6.2.)  Despite G-Club's assertions to the contrary, HCHK Tech's relationship to G-Club is disanalogous to the relationships Microsoft has with the average consumer of its cloud services and cloud-based office software.

For that reason, *Metro Storage International v. Harron*, 275 A.2d 810, 868–72 (Del. Ch. 2022), cited by G-Club, is not persuasive on the instant facts.  In that case, in pertinent part, the

employee defendant argued that the corporate plaintiffs' argument that he had breached confidentiality provisions in the plaintiffs' operating agreements through, *inter alia*, arguing that the plaintiffs had waived confidentiality by sharing their documents with a non-party corporation. *Harron*, 275 A.2d at 822–24, 868, 870–71. In *Harron*, the non-party corporation provided property management and related services as well as information technology services and stored all of the plaintiffs' electronic documents on its servers. *Id.* at 870–71. The Delaware Court of Chancery equated these technical services to those of, *e.g.*, g-mail or Microsoft 365, *Id.* at 871 n. 35, and held that the non-party was the plaintiffs' agent bound to maintain the confidentiality of the documents and, hence, in sharing the documents with the non-party did not constitute a waiver of confidentiality, *Id.* at 871.

As discussed above, however, unlike in *Harron*, in this case, HCHK Tech provided "a la carte" services over a variety of fields under the MSA, including fields that would require it to access the contents of the documents. (Mot. Ex. A, Ex. A.) Notwithstanding the terms of the MSA, G-Club argues that HCHK Tech was only the information technology manager for G-Club's domain name and did not have access to the documents. (ECF 168, Hr'g Tr. at 34:10–37:13.) G-Club provides no evidence supporting this assertion and contradicting the MSA. G-Club additionally contends the Trustee has not proven that HCHK Tech accessed G-Club's documents. (*Id.*) In making these arguments, G-Club attempts to shirk its burden. *Mejia*, 655 F.3d at 132; *Horowitz*, 482 F.2d at 82; *Kovel*, 296 F.2d at 923; *Strougo*, 199 F.R.D. at 519. The Court declines to follow G-Club into error.

The burden is not on the Trustee to prove that HCHK accessed documents. Indeed, the Second Circuit held in *Horowitz* that a party waived the attorney-client privilege where he "treated the communications between himself and counsel on the same basis as all other records,

10

with Horowitz, who was an independent contractor and not a servant, having a free run to look at

what he pleased," 482 F.2d at 82, despite noting that "[t]he record concerning Horowitz' use of

the files containing communications between the Kassers and lawyers is meagre," *id.* at 80, and

acknowledging Horowitz's contradictory testimony.  The former was the basis of the holding in

*Horowitz*, not the latter.  *Id.* at 82.

G-Club has not sought to fit its disclosure of privileged documents to HCHK Tech within

an exception to waiver.  G-Club makes no argument that disclosure to HCHK Tech was either

necessary or highly useful in its consultation with its counsel.  Similarly, G-Club makes no

argument that HCHK Tech and G-Club share a common legal interest, either in shared

representation or as part of a shared legal enterprise.

Therefore, the Court concludes that through disclosure of its communications with

HCHK Tech, G-Club waived the attorney-client privilege.  Moreover, while it is true that G-

Club's time to object to the assignment proceedings and/or the proposed sale of, *inter alia*,

HCHK Tech to G-News through said assignment proceedings had not passed before the issuance

of the temporary restraining order in this adversary proceeding, the Trustee is correct that G-

Club has not established that it had any intent to oppose either the assignment or the sale.  This

further establishes that G-Club has treated its communications in ways that "'predictably lead to

the disclosure' of privileged communications."  *Niceforo*, 20 F. Supp. 3d at 437; *see Horowitz*,

482 F.2d at 82.

For all these reasons, the Court concludes that G-Club has not met its burden to establish

that the attorney-client privilege applies.  The Assignee may produce G-Club's documents

without such documents being subject to G-Club's review for privilege.  G-Club must, therefore,

turn over to the Trustee the documents the Assignee produced to them pursuant to decretal

paragraph 6a of the Order Approving Settlement without regard to whether any documents are privileged.

## V. CONCLUSION AND ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED:** The relief requested in the Motion is **GRANTED**. On or before November 17, 2023, G-Club shall make available to the Trustee all documents provided to G-Club by the Assignee in accordance with paragraph 6(a) of the Order Approving Settlement; and it is further

**ORDERED:** On or before November 17, 2023, the Assignee shall make available to the Trustee all copies retained by the Assignee of documents provided to G-Club by the Assignee in accordance with paragraph 6(a) of the Order Approving Settlement; and it is further

**ORDERED:** All documents produced to the Trustee pursuant to this order shall be considered documents designated as "confidential" and subject to the protective order entered as ECF No. 923 in the jointly administered cases captioned *In re Kwok*, Case 22-50073 (JAM); and it is further

**ORDERED:** On or before November 14, 2023, the Trustee shall serve this Order on G-Club and the Assignee. On or before November, 15, 2023, the Trustee shall file a certificate of service evidencing compliance with this Order.

Dated at Bridgeport, Connecticut this 13th day of November, 2023.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut

# Exhibit D

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

------------------------------------------------------------x

In re:                                      :   Chapter 11
                                            :
HO WAN KWOK, *et al.*,[1]                   :   Case No. 22-50073 (JAM)
                                            :
                        Debtors.            :   (Jointly Administered)
                                            :
------------------------------------------------------------x
                                            :
LUC A. DESPINS, CHAPTER 11                  :
TRUSTEE,                                    :
                                            :
                        Plaintiff,          :   Adv. Proceeding No. 23-05013 (JAM)
                                            :
v.                                          :
                                            :
                                            :
HCHK TECHNOLOGIES, INC.,                    :
HCHK PROPERTY MANAGEMENT, INC.,             :
LEXINGTON PROPERTY AND STAFFING, INC.,:
HOLY CITY HONG KONG VENTURES, LTD.,         :
ANTHONY DIBATTISTA, YVETTE WANG,            :
and BRIAN HOFMEISTER (in his capacity       :
as assignee),                               :
                                            :
                        Defendants.         :
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 11 TRUSTEE'S ARGUMENT THAT G-CLUB OPERATIONS LLC HAS WAIVED ANY PRIVILEGE AND HAS NO RIGHT TO OBJECT TO RESPONSIVENESS AS TO G-CLUB DOCUMENTS TURNED OVER FROM THE ASSIGNEE OF HCHK TECHNOLOGIES, INC. TO THE TRUSTEE PURSUANT TO BANKRUPTCY RULE 9019 SETTLEMENT AGREEMENT**

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor" or "Kwok"), files this Memorandum of Law (the "Memorandum") in support of the Trustee's argument that G-Club Operations LLC ("G-Club") should not be permitted to prevent the turnover of HCHK Technologies, Inc.'s ("HCHK Technologies") corporate records from the Assignee of the HCHK Entities[2] to the Trustee as part of the Trustee's Rule 9019 Settlement Agreement, based on G-Club's assertion that documents it asserts are G-Club property are either privileged or non-responsive to the Rule 2004 Subpoena served upon G-Club. In support of this Memorandum, the Trustee states as follows:

## PRELIMINARY STATEMENT

1.      G-Club seeks to prevent the turnover of portions of HCHK Technologies' corporate documents under the Rule 9019 Settlement Agreement on grounds that such documents are non-responsive to the Rule 2004 Subpoena served upon G-Club, and that G-Club maintains a privilege over a subset of the documents. Neither argument has merit.

2.      First, regardless of whether the documents at issue are responsive to the Rule 2004 Subpoena the Trustee served on G-Club, there is no question they are responsive to the Rule 2004 Subpoena the Trustee served **upon HCHK Technologies**. The Rule 2004 requests to HCHK Technologies specifically sought documents related to Kwok-affiliated entities, the Debtor, his family, his agents (including Yvette Wang, the 99.999% owner of HCHK Technologies), and any assets, funds or business transactions related to such entities and individuals. These requests plainly encompass documents related to G-Club, which the Trustee has alleged to be a Debtor-controlled entity. Despite this—and the fact that it is now known that HCHK Technologies had

---

[2]      Capitalized terms not yet defined take the meaning assigned to them below.

tens of thousands of responsive documents—its former counsel produced less than 150 documents total and only a single document related to G-Club. All additional documents of HCHK Technologies related to G-Club must be produced.

3.      Requiring HCHK Technologies to produce these documents also promotes judicial efficiency. A key aspect of the Rule 9019 Settlement Agreement was to preserve the Chapter 11 estate's resources, including those that would be expended on contested discovery. If the Trustee is not able obtain HCHK Technologies' documents under the settlement agreement, he would need to pursue burdensome and costly formal discovery against HCHK Technologies in connection with the litigation of his alter-ego and equitable ownership claims, including to obtain documents related to the Debtor's movement of funds through entities he owns and controls. Such documents squarely would have included documents related to G-Club: an entity this Court has found to be controlled by the Debtor and which the Government alleges in the criminal indictment of the Debtor (and his co-conspirators Yvette Wang and William Je) was a pillar of his fraudulent movement of funds. Given the need for the production of these documents without the attendant costs of discovery, the parties agreed that it was most efficient to simply allow the Trustee access to HCHK Technologies' corporate records.

4.      For these reasons, G-Club cannot prevent the disclosure of HCHK Technologies' documents to the Trustee on the basis that the documents may not be responsive to the Rule 2004 Subpoena served upon G-Club.

5.      Second, no privilege prevents disclosure of the documents. Any privilege that G-Club may have had over the documents in HCHK Technologies' possession was waived, first, when they were freely shared with HCHK Technologies for the myriad of services G-Club outsourced to HCHK Technologies, and, again, when those documents were provided to the

Assignee and then G-News.  Having freely shared its allegedly privileged documents with three third-parties, G-Club cannot now claim the documents are privileged to keep them from the Trustee.

## **FACTUAL BACKGROUND**

6.        The Court is quite familiar with the underlying facts relating to the HCHK Entities'[3] assignment proceedings initiated in New York state court by Brian Hofmeister (the "Assignee"), the Assignee's submission of a verified petition (the "Application") seeking entry of an order authorizing and approving his entry into an Interim Management Agreement ("IMA") with G-News Operations, LLC ("G-News"), the Trustee's adversary proceeding brought against the HCHK Entities and the Assignee (the "Adversary Proceeding") [Adv. Proc. 23-05013, Docket No. 1], and the Assignee's subsequent settlement agreement with the Trustee (the "Rule 9019 Settlement Agreement"), G-Club's objections, and the resulting hearings.  Accordingly, in the interest of judicial economy, the Trustee will only highlight here those facts directly pertinent to the issue in this Memorandum.

7.        On December 7, 2022, the Trustee served a Rule 2004 Subpoena on HCHK Technologies.[4]  Pursuant to that Subpoena, the Trustee received a document production from HCHK Technologies on or around March 10, 2023, containing a total of 148 total documents. Only one of those documents, an Excel spreadsheet, mentions G-Club in passing.

8.        In the wake of the Trustee's action in response to the assignment proceedings, and following the Court's Order granting a temporary restraining order, the Trustee and the Assignee

---

[3]      "HCHK Entities" is defined as HCHK Technologies, HCHK Property Management, Inc. ("HCHK Property"), and Lexington Property and Staffing, Inc. ("Lexington Property").

[4]      The Affidavit of Service is attached hereto as **Exhibit C**.  The Subpoena and document requests served on HCHK Technologies is attached hereto as **Exhibit D**.

engaged in good faith discussions resulting in the Rule 9019 Settlement Agreement, which was designed to (1) transfer, on an interim basis and pending the outcome of the Adversary Proceeding, over $38 million of the HCHK Entities' cash, currently held in accounts controlled by the Assignee, into accounts controlled by the Trustee and (2) provide for the resolution of other open issues related to the Adversary Proceeding, including providing for the turnover by the Assignee of all non-privileged corporate records and other documents pertaining to the HCHK Entities to the Trustee. This provision was of upmost importance to the Rule 9019 Settlement Agreement because it allowed both sides to avoid the costs associated with the Trustee's need for discovery from the HCHK Entities, while also ensuring the Trustee had access to all of the documents in the possession of the HCHK Entities that are relevant to the Trustee's claims that the HCHK Entities are alter egos of, and equitably owned by, the Debtor.

9. On July 5, 2023, G-Club filed *G-Club Operations LLC's Notice RE: Motion, Pursuant to Bankruptcy Rule 9019, Regarding Settlement with Assignee of HCHK Entities Under New York Court Assignment Proceedings* [Main Case Docket No. 1977] (the "G-Club Notice"). The G-Club Notice informed the Court that HCHK Technologies is in possession of G-Club confidential information and documents as a result of HCHK Technologies "administer[ing] and manag[ing] G Club's emails and other applications" pursuant to a Master Services Agreement[5] between G-Club and HCHK Technologies.[6] The G-Club Notice also requested that HCHK Technologies return to G-Club all of G-Club's confidential information and documents prior to

---

[5] A copy of the Master Services Agreement between G-Club and HCHK Technologies is attached hereto as **Exhibit A.** ████████████████████████████████████████████████████████████████████████████████████████████████

[6] *See* G-Club Notice at ¶ 4.

turnover to the Trustee Pursuant to the Rule 9019 Settlement Agreement to enable G-Club to review and provide responsive information to the Trustee pursuant to the Trustee's Rule 2004 Subpoena served on G-Club.[7]

10.     On July 7, 2023, the Trustee filed an *Omnibus Reply of Chapter 11 Trustee (I) in Support of Motion, Pursuant to Bankruptcy Rule 9019, Regarding Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings, And (II) In Response to Objections* [Adv. Proc. 23-05013, Docket No. 45].

11.     Hearings were held regarding the G-Club Notice and the Rule 9019 Settlement Agreement on July 11, 2023 and July 18, 2023. During the July 18, 2023 hearing,[8] counsel for G-Club argued that G-Club was primarily concerned with privileged information, as opposed to confidential information, which would presumably be subject to the Protective Order entered in the main case [Main Case Docket No. 923].[9]

12.     On July 28, 2023, the Court entered an *Order Approving, Pursuant to Bankruptcy Rule 9019, Chapter 11 Trustee's Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings* [Adv. Proc. 23-05013, Docket No. 70] (the "Rule 9019 Settlement Order"). Among other things, the Rule 9019 Settlement Order provided the following:

> Within ten (10) days from the date of the entry of this Order, the Assignee shall make available to the Trustee all non-privileged corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the

---

[7]     *See id.* at ¶ 5.  The Trustee served a Rule 2004 subpoena on G-Club (the "G-Club Subpoena") on December 9, 2022. On May 18, 2023, the Trustee filed an omnibus motion seeking to compel G-Club, among others, to comply with the G-Club Subpoena (the "Motion to Compel") [Main Case Docket No. 1805].  On June 26, 2023, the Court entered an order granting the Motion to Compel as to G-Club [Main Case Docket No. 1960].

[8]     A copy of the transcript from the July 18, 2023 hearing is attached hereto as **Exhibit B**.

[9]     *See* **Ex. B** at 130:10-18 (Attorney Sklarz on behalf of G-Club said, "The confidentiality stuff I'm sure we can, you know, I'm sure Attorney Fortis who's been working with Attorney [Luft] to resolve the discovery disputes, I think they're all essentially resolved. We can certainly, you know, we can confer on the issue, but it's really the access and the privilege[d] information that we're most concerned about.").

possession of the Assignee, except those that were at any point the property of [G-Club]. . . . Also within ten (10) days from the date of the entry of this Order, the Assignee shall make available to G-Club all corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee, which were at any point the property of G-Club. Upon receipt, G-Club shall immediately review such corporate records and other documents for privilege and responsiveness to the Trustee's Rule 2004 subpoena of G-Club and produce a privilege log and responsiveness log. G-Club may designate materials it will produce to the Trustee as 'confidential' or 'highly confidential' in accordance with the Protective Order.[10]

13.     The Rule 9019 Settlement Order also ordered the Trustee to file a Memorandum of Law on or before August 11, 2023 in support of his argument that G-Club waived any privilege and has no right to object to responsiveness to the Assignee's turnover of HCHK Technologies' documents related to G-Club pursuant to the 9019 Settlement Order.[11]

## BASIS FOR RELIEF

### I.     G-Club has no right to object to responsiveness as to documents in possession of HCHK Technologies

14.     G-Club argues it can prevent the production of documents in HCHK Technologies' files to the Trustee on grounds that such documents may be non-responsive to the Rule 2004 Subpoena served upon G-Club.[12]  This argument fails because the issue of the Trustee's right to review HCHK Technologies' documents is not dependent on what is responsive to G-Club's Subpoena.  Rather, the question is whether the documents possessed and controlled by HCHK Technologies, including those deriving from G Club, are responsive to the Trustee's Rule 2004 Subpoena to HCHK Technologies or are related to the Trustee's Adversary Proceeding against

---

[10]    Rule 9019 Settlement Order at ¶ 6.

[11]    *See id.*

[12]    The Rule 9019 Settlement Order required the Assignee to return to G-Club all documents that are, or were at any point the property of G-Club.  To be sure, independent work product from HCHK Technologies that happens to mention G-Club, without more, is not the property of G-Club.

HCHK Technologies. G-Club cannot use its own Rule 2004 Subpoena to prevent the Trustee from obtaining valid Rule 2004 discovery from other parties or from seeking additional discovery in this Adversary Proceeding.[13]

### a. *HCHK Technologies' documents, including any in its possession from G-Club, are relevant and responsive to HCHK Technologies' own Rule 2004 subpoena*

15.     As mentioned above, the Trustee, as part of his Rule 2004 investigation, served HCHK Technologies with its own Rule 2004 Subpoena. The document requests attached to that Subpoena list G-Club within the Trustee's definition of "Associated Entities,"[14] and numerous individual requests ask for documents concerning "Associated Entities."[15]

16.     Despite this, HCHK Technologies' productions to the Trustee have been woefully deficient. The Trustee has only received 148 documents, which do not include the documents related to G-Club despite those documents plainly being responsive to HCHK Technologies' Subpoena.

17.     Just as G-Club cannot demand that its documents be deleted from HCHK Technologies in the midst of HCHK Technologies fully complying with a valid subpoena, G-Club should not now be able to prevent HCHK Technologies from turning over responsive documents in its possession in response to its own Rule 2004 Subpoena, even if they originated from G-Club.

### b. *Turnover of HCHK Technologies' documents in lieu of discovery, including any in its possession from G-Club, was key aspect of Rule 9019 Settlement Agreement*

---

[13]   To the extent the Trustee has misunderstood G-Club's motivations, and it merely seeks to review for responsiveness to its Rule 2004 Subpoena documents in the possession of HCHK Technologies that it claims are its property *without* preventing the Trustee from reviewing all of HCHK Technologies' corporate records as they are responsive to this Adversary Proceeding and HCHK Technologies' Rule 2004 Subpoena, while finding it redundant, he would not object.

[14]   *See* **Ex. D** at pg. 9

[15]   *See* **Ex. D** at RFPs 1, 3, 5, 6, 10, 11, and 18.

18.     The agreement to turn over HCHK Technologies' corporate records to the Trustee was intended to avoid undue and unnecessary discovery costs to both parties. It in no way meant that documents otherwise relevant to the Adversary Proceeding and discoverable from HCHK Technologies no longer needed to be produced. Given the Trustee's Adversary Proceeding against HCHK Technologies, if no settlement agreement had been reached, the Trustee would have sought discovery relevant to its claims in the Adversary Proceeding, including the documents concerning G-Club, which are clearly pertinent to linking HCHK Technologies to the Debtor.

19.     This Court, in its *Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction* (the "Preliminary Injunction Decision") [Adv. P. No 22-05032, ECF No. 133], found that the Debtor is the leader of G-Series, which was defined to include G-Club.[16] Similarly, the United States Attorney's Office in its criminal indictment of the Debtor, alleges that G-Club was one of the entities used in the four pillars of the Debtor's massive fraud scheme to enrich himself (at the expense of his creditors and victims).[17] Accordingly, documents at HCHK Technologies relating to G-Club, are responsive and powerful discovery in this action.

20.     HCHK Technologies' whole business purports to be the provision of business services to companies the Trustee believes are all strongly linked to the Debtor. The Trustee believes that HCHK Technologies' documents will show that in fact, not only was it an operating hub for the Debtor's businesses, but it was a pass through for monies he was attaining through his "business" activities that he used in part to fund his opulent lifestyle, including throughout the period of this bankruptcy proceeding. Getting documents related to the services provided, and to

---

[16]   *See* Preliminary Injunction Decision at pgs. 10-11.

[17]   *See USA v. Ho Wan Kwok and Kin Ming Je, Sealed Indictment*, United States District Court Southern District of New York, 1:23-cr-00118-AT (March 6, 2023) at ¶¶ 2; 14-15.

which entities those services were provided, including for G-Club, is at the center of the Trustee's Adversary Proceeding against HCHK Technologies. G-Club cannot prevent the turnover of these documents based on whether they are also responsive to G-Club's Subpoena.

21. Finally, it is likely not coincidental that the Trustee just received a letter from counsel for Gettr, which, like G-Club, the Trustee contends is another Debtor-controlled entity, demanding that HCHK Technologies return all of its documents before the Trustee can review them. It appears the new strategy for entities like G-Club and Gettr is to demand the return of their documents, with the goal being that if all "clients" of HCHK Technologies demand the return of their documents prior to the Trustee's ability to review them, there will be no documents left. The Court should see through this gamesmanship and order that all the documents be produced.

## II. G-Club has waived any privilege as to its documents in possession of HCHK Technologies[18]

22. "A party asserting the attorney-client privilege bears the burden of showing: '(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice.'" *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519 (S.D.N.Y. 2001) (citations omitted). "The privilege 'exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable the lawyer to give sound and informed advice.'" *Id.* (citation omitted). The attorney-client privilege applies to both individuals and corporate entities. *See id.*

23. The common interest doctrine protects some communications that would otherwise waive the attorney-client privilege, and "typically applies where multiple persons are represented

---

[18] The Trustee reserves all rights to challenge G-Club's assertion of privilege as to specific documents if the Court finds that no waiver occurred.

by the same party[.]" *Id.* at 520. The common interest doctrine can also apply where parties are represented by separate counsel that engage in a common legal enterprise. *See id.*

> The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial. The fact that there may be an overlap of a commercial and legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest.

*North River Ins. Co. v. Columbia Cas. Co.,* 1995 WL 5792, at *3 (S.D.N.Y. Jan. 5, 1995) (internal quotation omitted). "What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal." *Id.* at *4.

24. "A party seeking the protections of the attorney-client privilege must affirmatively act to protect her communications." *Niceforo v. UBS Glob. Asset Mgmt. Americas, Inc.*, 20 F. Supp. 3d 428, 437 (S.D.N.Y. 2014) (citation omitted) (even if the contents of employee's notebook, which was kept in employee's desk, were privileged, employee waived any claim of privilege by delaying her attempts to seek the return of the notebook for more than 15 months after her termination, despite having several opportunities to do so).

25. "[V]oluntarily disclosing the information contained in the documents to nonparties waives the attorney-client privilege, unless such disclosure was 'necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit.'" *Strougo*, 199 F.R.D. at 522 (citation omitted). *See also United States v. Kovel*, 296 F.2d 918 (2d Cir.1961) (disclosure to outside accountant whose advice was necessary to litigation preparation did not waive privilege). However, the *Kovel* doctrine "has always been a cabined one, and 'to that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client.'" *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citation omitted). *See also United States*

*v. Ackert*, 169 F.3d 136, 139 (2d Cir.1999) (third party involvement must be necessary "to improve the comprehension of the communication between attorney and client."); *Ampa Ltd. v. Kentfield Capital LLC, No. 00 Civ. 0508 NRB AJP*, 2000 WL 1156860, *1 (S.D.N.Y. Aug. 16, 2000) (board minutes not privileged where outside accountant was present and not involved in legal issue discussed).

26. Here, G-Club has waived any privilege as to its documents in possession of HCHK Technologies because G-Club voluntarily disclosed the contents of those documents to three third-parties. G-Club should not now be able to assert privilege to prevent the Trustee from receiving its documents when it has both waived the privilege and shown absolutely no regard for preserving it previously.

### a. *G-Club waived any privilege to its documents provided to HCHK Technologies*

27. G-Club waived privilege to the documents in question when it voluntarily gave HCHK Technologies, a third-party, access to its allegedly privileged documents. Having chosen to share its purportedly privileged information with HCHK Technologies, thus waiving any attorney-client privilege, it cannot now seek to have those documents treated as privileged again with the hope of now preventing their disclosure to the Trustee.

28. G-Club told the Court that HCHK Technologies provided mere "IT services including cloud computing services, data hosting and email hosting"[19] and "administered and managed G Club's emails and other applications."[20] ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[19]  **Ex. B** at 128:10-11.

[20]  G-Club Notice at ¶ 4.



29.     G-Club cannot give HCHK Technologies access to its documents and still retain privilege over them. *See Ackert*, 169 F.3d at 139 (2d Cir.1999) (third party involvement must be necessary "to improve the comprehension of the communication between attorney and client."); *Ampa ltd.*, 2000 WL at *1 (board minutes not privileged where outside accountant was present and not involved in legal issue discussed). *See also In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) (privilege waived where documents were indiscriminately mingled with other routine documents and no special protections were made as to the potentially privileged records, and accountant, an independent contractor, was given free rein to examine all records).

**b.**  *Appointment of Assignee resulted in waiver of any remaining privilege*

30.     To the extent G-Club asserts (wrongly) that the privilege had not already been waived, the privilege was waived when HCHK Technologies assigned all of its assets (including

---

21



22

23

G-Club's documents) to the Assignee, another third-party who had free rein over all G-Club documents.

31.     G-Club did not object to its documents being assigned to the Assignee, and the Assignee's possession and free rein over G-Club's documents supports an independent finding of waiver. To the extent G-Club asserts that HCHK Technologies is not a true third-party to effectuate waiver because G-Club shares a common interest with HCHK Technologies, due to both entities' relationship to the Debtor, any common interest would cease to exist when the independent Assignee assumed control of the HCHK Entities.[24]

**c.** ***G-Club failed to object to asset sale of HCHK Technologies to G-News***

32.     Under the Application and IM Agreement, G-News, yet another third-party, intended to acquire substantially all of HCHK Technologies' assets (including G-Club's corporate records) and gain operational control of HCHK Technologies.  As part of that agreement, G-News was granted operational control of HCHK Technologies for an interim period, exposing all G-Club documents to G-News.  G-Club did not secure and claw back its documents prior to this, which it would have done had it truly been concerned about protecting its allegedly privileged documents from third-parties.  G-Club should not be permitted to selectively assert its alleged privileged.  *See Niceforo*, 20 F. Supp. at 437 ("A party seeking the protections of the attorney-client privilege must affirmatively act to protect her communications.").

[*Remainder of Page Intentionally Left Blank*]

---

[24]     The Trustee notes that such an argument also fails because this is not a common interest over a legal issue, as is required to assert the common interest privilege.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of an order holding that G-Club Operations LLC has waived any privilege and has no right to object to responsiveness as to G-Club documents turned over from the Assignee of HCHK Technologies, Inc. to the Trustee pursuant to a Bankruptcy Rule 9019 Settlement Agreement and such other relief as is just and proper.

Dated:    August 11, 2023               LUC A. DESPINS,
          New Haven, Connecticut       CHAPTER 11 TRUSTEE

                                   By: */s/ Avram E. Luft*        
                                     Avram E. Luft (admitted *pro hac vice*)
                                     Douglass Barron (admitted *pro hac vice*)
                                     PAUL HASTINGS LLP
                                     200 Park Avenue
                                     New York, New York 10166
                                     (212) 318-6079
                                     aviluft@paulhastings.com
                                     douglassbarron@paulhastings.com

                                      *and*

                                     Nicholas A. Bassett (admitted *pro hac vice*)
                                     PAUL HASTINGS LLP
                                     2050 M Street NW
                                     Washington, D.C., 20036
                                     (202) 551-1902
                                     nicholasbassett@paulhastings.com

                                      *and*

                                     Patrick R. Linsey (ct29437)
                                     NEUBERT, PEPE & MONTEITH, P.C.
                                     195 Church Street, 13th Floor
                                     New Haven, Connecticut 06510
                                     (203) 781-2847
                                     plinsey@npmlaw.com

                                     *Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

----------------------------------------------------------------x
                                                                :
In re:                                                          :   Chapter 11
                                                                :
HO WAN KWOK, *et al.*,[1]                                        :   Case No. 22-50073 (JAM)
                                                                :
                                        Debtors.                :   (Jointly Administered)
                                                                :
----------------------------------------------------------------x
                                                                :
LUC A. DESPINS, CHAPTER 11                                       :
TRUSTEE,                                                         :
                                                                :   Adv. Proceeding No. 23-05013 (JAM)
                                        Plaintiff,              :
v.                                                              :
                                                                :
                                                                :
HCHK TECHNOLOGIES, INC.,                                         :
HCHK PROPERTY MANAGEMENT, INC.,                                 :
LEXINGTON PROPERTY AND STAFFING, INC.,                          :
HOLY CITY HONG KONG VENTURES, LTD.,                             :
ANTHONY DIBATTISTA, YVETTE WANG,                               :
and BRIAN HOFMEISTER (in his capacity                          :
as assignee),                                                   :
                                                                :
                                        Defendants.             :
----------------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 11, 2023, the foregoing *Memorandum of*

*Law in Support of Chapter 11 Trustee's Argument that G-Club Operations LLC has Waived Any*

*Privilege and has No Right to Object to Responsiveness as to G-Club Documents Turned Over*

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

16

*From the Assignee of HCHK Technologies, Inc. to the Trustee Pursuant to Bankruptcy Rule 9019 Settlement Agreement* was electronically filed. Notice of this filing was sent by e-mail to all parties to the above-captioned chapter 11 case by operation of the Court's electronic filing ("CM/ECF") system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.[2] Parties may access this filing through the Court's CM/ECF system.

Dated:    August 11, 2023               LUC A. DESPINS,
             New Haven, Connecticut      CHAPTER 11 TRUSTEE

                                      By: */s/ Avram E. Luft*
                                         Avram E. Luft (admitted *pro hac vice*)
                                         Douglass Barron (admitted *pro hac vice*)
                                         PAUL HASTINGS LLP
                                         200 Park Avenue
                                         New York, New York 10166
                                         (212) 318-6079
                                         aviluft@paulhastings.com
                                         douglassbarron@paulhastings.com

                                             *and*

                                         Nicholas A. Bassett (admitted *pro hac vice*)
                                         PAUL HASTINGS LLP
                                         2050 M Street NW
                                         Washington, D.C., 20036
                                         (202) 551-1902
                                         nicholasbassett@paulhastings.com

                                             *and*

                                         Patrick R. Linsey (ct29437)
                                         NEUBERT, PEPE & MONTEITH, P.C.
                                         195 Church Street, 13th Floor
                                         New Haven, Connecticut 06510
                                         (203) 781-2847
                                         plinsey@npmlaw.com

---

[2]    To the extent that the foregoing was filed outside regular business hours, service by mail on recipients unable or not qualified to accept electronic notice was made on the next business day.

*Counsel for the Chapter 11 Trustee*

# Exhibit E

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors.[1] | (Jointly Administered) |
| | September 29, 2023 |

## G CLUB OPERATIONS LLC'S RESPONSE TO TRUSTEE'S MEMORANDUM CHALLENGING G CLUB'S PRIVILEGE ASSERTIONS IN DOCUMENTS IN HCHK'S POSSESSION AND OPPOSITION TO THE TRUSTEE'S RELATED PROPOSED ORDER

G Club Operations LLC ("**G Club**") objects to the Chapter 11 Trustee's *Memorandum of Law in Support of Chapter 11 Trustee's Argument that G-Club Operations LLC has Waived any Privilege and has no Right to Object to Responsiveness as to G-Club Documents Turned Over from the Assignee of HCHK Technologies, Inc. to the Trustee Pursuant to Bankruptcy Rule 9019 Settlement Agreement* (Adv. Proc. 23-05013, ECF No. 86)[2] (the "Memorandum" or "Mem."). For the reasons set forth below, the Court properly considered the arguments and properly issued an order that protects G Club's due process rights and does not prejudice the Trustee.

## PRELIMINARY STATEMENT

1.      In its July 28, 2023 Order Approving Pursuant to Bankruptcy Rule 9019 the Chapter 11 Trustee's Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings (ECF No. 2038, the "**Order**"), the Court ordered the Assignee to "make available to G-Club all corporate records (including in electronic form) and other documents" that

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (last four digits of tax identification number: 9595) (the "Debtor"), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] G Club refers to Adv. Proc. 23-05013 as the "Adversary Proceeding" or "Adv. Proc." herein.

Case 22-50073   Doc 2244   Filed 09/29/23   Entered 09/29/23 14:29:03   Page 2 of 11

"were at any point the property of G Club."  (Order ¶ 6(a)).  G Club was to "review such corporate records and other documents for privilege and responsiveness to the Trustee's Rule 2004 subpoena of G-Club and produce a privilege log and responsiveness log."  *Id.*  The Court's Order thus strikes a balance between G Club's rights and the Chapter 11 Trustee's demands.  The procedure set out by the Order is sufficient, and only stands to prevent the Chapter 11 Trustee (the "**Trustee**") from reviewing documents that are either privileged or non-responsive – documents to which the Trustee is not entitled to review in the first instance.

2.      Nevertheless, the Trustee accuses G Club of "gamesmanship," claiming its "goal" is "to demand the return of [its] documents" from its vendor, HCHK Technologies ("**HCHK**") so that "there will be no documents left."  (Mem. ¶ 21).  To date, G Club has produced 124,876 documents to the Trustee and G Club is in the process of finishing its review ahead of a production of an additional 10,000 documents, as well as a privilege log.  Thus, the facts contradict the Trustee's assertion that G Club's goal was to prevent the Trustee from reviewing G Club's documents.  Instead, the Trustee's efforts to obtain G Club's property through a settlement agreement with a different entity, HCHK, are an attempt to deny G Club its right to determine which documents are responsive and non-privileged and circumvent the proper and orderly process by which document review and production is conducted.

3.      Contrary to the Trustee's assertions, which lack basis in both fact and law, G Club has not waived any rights.  G Club contracted with HCHK for the administration of a cloud-based storage and email system for its communications (among other services).  That system, Microsoft 365, is a cloud-based enterprise system which is routinely utilized by corporations and law firms. That HCHK was the system's administrator is not relevant to G Club's assertion of privilege; the documents were maintained in "the cloud," and the Trustee has made no assertions (nor can he)

2

that a single individual other than G Club employees ever reviewed documents maintained on the cloud that hosted G Club domain names. Privileged documents stored in a cloud system administered by a third party simply do not lose their protected status.

4.      The Trustee also erroneously claims that *HCHK* must produce G Club documents that are not responsive to the Trustee's subpoena (the "**Subpoena**") (Mem. ¶2), but the Trustee cannot avoid the limits of his own Subpoena. G Club is entitled to perform its review of its own documents in due course like any other party. The Trustee does not get access to any and all documents in existence, to then determine, for himself, what documents are responsive to his own Subpoena or constitute a privileged communication between G Club and its counsel.

5.      Recognizing his argument's weaknesses, the Trustee pivots and now argues that G Club documents in HCHK's possession may actually be responsive to the Trustee's subpoena of *HCHK*, complaining that HCHK has turned over fewer than 150 documents. (Mem. ¶¶14, 16). Conspicuously, while the Memorandum mentions the size of HCHK's production to date three times (Mem. ¶¶ 2, 7, 16), it does not mention the size of G Club's production once, because G Club has complied and continues to comply with its discovery obligations.

6.      If the Trustee has an issue with HCHK's document production, that dispute is between the Trustee and HCHK; G Club's documents should not be dragged into that dispute. There is no basis for the Trustee to demand HCHK supplement its own production with any documents, much less privileged and non-responsive documents, that belong to G Club.

## RELEVANT PROCEDURAL HISTORY

7.      In its Order, the Court properly protected G Club's due process rights in connection with the Rule 9019 Settlement by allowing G Club to access its documents. Specifically, the Order stated:

the Assignee shall make available to G-Club all corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee, which were at any point the property of G-Club. Upon receipt, G-Club shall immediately review such corporate records and other documents for privilege and responsiveness to the Trustee's Rule 2004 subpoena of G-Club and produce a privilege log and responsiveness log. G-Club may designate materials it will produce to the Trustee as "confidential" or "highly confidential" in accordance with the Protective Order. (Order ¶ 6(a)).

8. This procedure, as set out by the Court, ensures that G Club can access its information and perform the review that any party undertakes before producing documents. The Order followed the Court's consideration of G Club's submissions and arguments relating the Rule 9019 Motion, including G Club's Notice of Position Regarding 9019 Motion and Proposed Order (ECF No. 1977, the "Notice") and G Club's Supplemental Notice to Modify the Revised Proposed Order Relating to Motion, Pursuant to Rule 9019, Re: Settlement with Assignee of HCHK Entities (ECF No. 2007, the "Supplemental Notice"). G Club incorporates both Notices herein.

9. The Order also provided an August 11, 2023 deadline for the Trustee to "file a brief in support of the Trustee's argument that G-Club has waived any privilege and has no right to object to responsiveness." (Order ¶ 6(b)). On August 11, 2023, the Trustee filed the Memorandum in an Adversary Proceeding to which G Club is not a party, and he failed to file the Memorandum in the main case or otherwise serve G Club. (*See* G Club's Opposition to Trustee's Proposed Supplemental Order Regarding G Club Documents Pursuant to Order Approving Chapter 11 Trustee's Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings, ECF No. 2233 at 2).

10. When the August 11, 2023 deadline passed without (to G Club's knowledge) a filing from the Trustee on this issue, G Club assumed that the Trustee recognized that the procedure ordered by the Court would allow it to review any and all non-privileged, responsive documents belonging to G Club in due course and declined to litigate the issue further in the interest of judicial

efficiency and the preservation of the Chapter 11 estate's resources. (*See* Mem. ¶ 3 ("A key aspect of the Rule 9019 Settlement Agreement was to preserve the Chapter 11 estate's resources, including those that would be expended on contested discovery.")).

11.     On September 19, 2023, the Court "inquired about this issue during a hearing." (*See* ECF No. 2237).  The Trustee's counsel "represented it was his belief that the Trustee's counsel was trying to reach out to G-Club to determine the status of this issue." *Id.*

12.     Without having reached out or connected with G Club's counsel about these documents or his Memorandum before or after September 19, 2023, on September 26, 2023, the Trustee's counsel filed (in the same Adversary Proceeding only) a Proposed Supplemental Order compelling G Club to produce to the Trustee all documents produced to G Club by the Assignee. (Adv. Proc. ECF No. 130, Ex. A).  This time, however, counsel for the Trustee emailed one of the three attorneys listed as counsel of record for G Club.   The Trustee's September 26, 2023 email was the first, and to date, only, communication G Club has received from the Trustee since the Court's Order.

13.     That same day, G Club filed an objection to the Trustee's Proposed Supplemental Order, requesting seven days to respond to the Memorandum.  (ECF. No. 2233)  On September 28, 2023, the Court sustained the objection in part, giving G Club until 5:00 p.m. on September 29, 2023, to respond to the Memorandum.[3]  (ECF No. 2237).

## ARGUMENT

14.     As G Club first stated in its Notice, shortly after the filing of the Rule 9019 Motion, "[n]othing in the proposed settlement between the Trustee and HCHK Technologies, or in any

---

[3]  The Trustee's tactics with respect to the Memorandum, filing it in an Adversary Proceeding to which G Club is not a party and never providing an unredacted copy of the Memorandum to G Club, and the Proposed Supplemental Order, filing it in the same Adversary Proceeding but sending just one of three G Club counsel of record a copy of it by email, give the impression that the Trustee is engaging in, to use the Trustee's word, "gamesmanship."

5

proposed order, should waive G Club's rights." (ECF No. 1977 at 1). The Trustee's arguments are unavailing for two simple reasons: First, G Club has not waived any privilege through the use of IT services. Indeed, the Trustee's misguided conception of waiver would implicate any business, including any law firm, that employs cloud-based solutions using a third-party for document management. Second, the Trustee's claim that he is entitled to non-responsive documents or documents from *HCHK* ignores that it is in receipt of nearly 125,000 responsive documents which G Club produced, with more to be produced shortly, along with a privilege log.

## I. G Club Has Not Waived Any Privilege

15. The Trustee's assertion that "G-Club has waived any privilege to its documents" provided to HCHK is based on a false premise and misstatement of the law. (Mem. ¶ 26). The Trustee states that G Club has "voluntarily disclosed the contents of those documents to three third-parties," but nowhere in the Memorandum does the Trustee identify any document that was "disclosed" and any individual who actually saw the "contents" of a document. *Id.* That is because G Club did not disclose privileged documents to HCHK; HCHK was simply the administrator of a cloud-based enterprise system which is routinely utilized by corporations and law firms. G Club did not "share its purportedly privileged information with" HCHK; it simply contracted for the operation of a document management system with a third-party. *Id.* ¶ 27. It cannot be that any person or entity who employs a similar system has waived the attorney-client privilege.

16. Recently, the Court of Chancery of Delaware held that having a third party "provide hosting services did not result in a waiver." *Metro Storage Int'l LLC v. Herron*, 275 A.3d 810, 871 (Del. Ch. 2022). There, the court found that email storage by a third-party resulted in an "obligation to keep the informational confidential," and that "[t]he situation is no different than when a lawyer contracts with a services provider to provide email services or to maintain

confidential documents in the cloud." *Id.* In a footnote, the Court cited a journal article and an American Bar Association publication, both of which approved of cloud storage; the former even cited Microsoft 365, the cloud-based solution at issue here, as one example that "does not necessarily lead to privilege waiver." *Id.* at 871 n.35.

17.     In seeking G Club's privileged documents, the Trustee performs some sleight of hand, characterizing G Club as giving HCHK "access to its documents," but then cites several cases that have nothing to do with *access*. The Trustee fails to point to a single case in which a third-party that provided a cloud-based solution broke privilege. They each involve a third-party who actually learned the substance of the privileged material and several of the Trustee's cases predate cloud-based technology. *See Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519 (S.D.N.Y. 2001) (finding that the presence of nine non-directors and non-attorneys at in-person board meeting waived the potential privilege of board minutes); *Niceforo v. UBS Glob. Asset Mgmt. Americas, Inc.*, 20 F. Supp. 3d 428, 437 (S.D.N.Y. 2014) (finding that a physical notebook maintained by an employee at her employer's office, which her employer reviewed, was not privileged because she did not demonstrate the notebook contained attorney-client communications and she did not make "a reasonable attempt to keep these statements confidential"); *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (finding privilege did not cover a phone call made from prison to a family member where the defendant was aware that it was recorded by prison staff); *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir.1999) (finding that oral communications between a party's lawyer and a third-party investment advisor regarding financial transaction were not covered by the party's privilege where the conversations were to improve the lawyer's understanding of the transaction); *Ampa Ltd. v. Kentfield Capital LLC*, No. 00 Civ. 0508 NRB AJP, 2000 WL 1156860, *1 (S.D.N.Y. Aug. 16, 2000) (finding board minutes

7

were not privileged where an outside accountant was present at the board meeting and not involved in the legal issue discussed); *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) (finding privilege was waived where potentially privileged physical documents were comingled with non-privileged documents in file cabinets to which a third party had ready access and actively reviewed).

18.     The Trustee does not provide any support for the notion that use of a cloud-based solution for document management can waive privilege because there is none.

19.     With HCHK merely hosting G Club's data, HCHK could not have shared any of the contents with the Assignee.  Indeed, pursuant to the Master Services Agreement, HCHK was obligated to maintain confidentiality.  The Assignee certainly had no right or authority to access email domain accounts belonging to G Club and there are no allegations that any member of the Assignee's team did so.[4]  Thus, there is no reason to assert any waiver that would have involved the Assignee.

20.     The Trustee also mistakenly argues that G Club failed to object to the assignee process by which the assets owned or controlled by HCHK would be sold to G News.  (Mem ¶¶ 31, 32).  As the Trustee well knows, he filed the Supplemental Emergency *Ex Parte* Motion of Chapter 11 Trustee for Temporary Restraining Order and Preliminary Injunction ("TRO Motion") on June 9, 2023, halting any action in the HCHK assignment proceedings.  (Adv. Proc. ECF No. 14.)  The Court granted the TRO Motion (Adv. Proc. ECF No. 18), prior to the June 12, 2023 deadline for parties to file objections and the June 13, 2023 hearing date set by the New York Supreme Court regarding the sale of HCHK's assets to G News.  Therefore, G Club did not have a meaningful opportunity to object to either the assignment of HCHK's assets to the Assignee, nor

---

[4] And, even if members of the Assignee's team had accessed these accounts, the Assignee was not authorized by G Club to do so.  To the contrary, G Club made sure that Assignee and the Trustee were aware the documents were not the Assignee's to access or review, in writing on July 5, 2023.

to the proposed sale of the same assets to G News.  Regardless, such sale never occurred so the Trustee's argument of waiver triggered by a proposed sale is simply meritless.

## II.      The Trustee Has No Right to Review Non-Responsive Documents

21.     Just as the Trustee is not entitled to review G Club's privileged documents, he is not entitled to review G Club documents that are not responsive to the Subpoena.  In response to the Subpoena, G Club has produced almost 125,000 documents, and is planning on producing more soon, along with a privilege log.  G Club anticipates finishing all its document review and a privilege log by mid-October 2023.  To the extent that the Trustee wishes it had subpoenaed other documents, it may not use HCHK as a tool to obtain those documents; it must request them from G Club.

22.     The Trustee further improperly attempts to use the Subpoena served on *HCHK – and not* G Club, to obtain G Club's property, stating that HCHK's productions "have been woefully deficient." (Mem. ¶ 16).  That, however, is irrelevant.  The Trustee may not use HCHK's purported failure to produce a meaningful number of documents to force HCHK to produce documents that do not belong to HCHK.  The Trustee theorizes that HCHK "was a pass through for monies he was attaining through his 'business' activities that he used in part to fund his opulent lifestyle," and that the Trustee needs "documents related to the services provided" from HCHK. (Mem. ¶ 20).  G Club does not object to HCHK's production of HCHK documents responsive to the Trustee's subpoena, nor could it.  But G Club documents do not belong to HCHK.  If the Trustee has issues with HCHK's alleged non-compliance, that is not G Club's issue, nor does it bear any relevance to the Trustee's requested modification of the Order.

23.     Accordingly, the Trustee's smear that "entities like G Club" are engaging in "gamesmanship" so that the Trustee will not have the "ability to review" documents is baseless.

(Mem. ¶ 21).   G Club has complied with its discovery obligations and will continue to comply. The Trustee should similarly comply with due process rights, including service obligations.

**WHEREFORE**, for the reasons set forth above, G Club requests that the Court (i) deny the Trustee's demand for HCHK's production of G Club's privileged and non-responsive documents and request to modify the Order and (ii) grant G Club such other relief as is just.

<div align="center">

**G CLUB OPERATIONS LLC**

</div>

By: */s/ Kellianne Baranowsky*

GREEN & SKLARZ LLC
Jeffrey M. Sklarz (ct20938)
Kellianne Baranowsky (ct26684)
One Audobon St, 3rd Floor
New Haven, CT 06511
Tel: 203-285-8545
jsklarz@gs-lawfirm.com
kbaranowsky@gs-lawfirm.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
Carolina A. Fornos (*pro hac vice*)
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1558
carolina.fornos@pillsburylaw.com

*Attorneys for G Club Operations LLC*

<div align="center">

10

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, a copy of the foregoing was served by CM/ECF and/or mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

Date:   September 29, 2023                                           /s/ Kellianne Baranowsky

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

## G CLUB OPERATIONS LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY MOTION TO STAY PENDING APPEAL PURSUANT TO BANKRUPTCY RULE 8007

Pursuant to Federal Rule of Bankruptcy Procedure 8007(b), G Club Operations LLC ("G Club Operations") requests a stay (the "Motion to Stay") of the Bankruptcy Court's Order, dated November 13, 2023, granting the Chapter 11 Trustee's *Motion that G-Club Operations LLC Has Waived any Privilege and Has No Right to Object to Responsiveness. Despins et al v. HCHK Technologies, Inc. et al*, No. 23-05013 (Bankr. D. Conn. Jun. 8, 2023) (Dkt No. 179) (the "Order"). A copy of the Order is attached hereto as Exhibit A.

Pursuant to Fed. R. Bankr. P. 8007(b)(2), good cause exists for the United States District Court (the "District Court") to hear this Motion to Stay on an emergency basis and enter the requested stay because: (1) although G Club Operations has moved for a stay in the United States Bankruptcy Court (the "Bankruptcy Court"), the Bankruptcy Court has not yet ruled on the Motion to Stay,[1] (2) the Bankruptcy Court's Order afforded G Club Operations only *four days* from entry of the Order to comply with the Order, despite Fed. R. Bankr. P. 8002(a)(1) providing a fourteen day appeal period, and (3) given the short time frame to address this matter, as set forth herein,

---

[1] A copy of the docketed Motion to Stay filed in the Bankruptcy Court and Motion to Expedite hearing are attached hereto as Exhibit B and are incorporated here by reference to the extent necessary to provide context to this request.

District Court intervention is necessary to protect G Club Operations rights of appeal and access to due process.

Accordingly, G Club Operations requests that the District Court stay the Order until such time as the parties hereto can properly brief, and the District Court can properly consider, this matter. As set forth herein, without a stay G Club Operations' appeal will likely be mooted and its ability to protect privileged communications from disclosure effectively will be lost.

## **INTRODUCTION**

The Order requires that G Club Operations and the Assignee of HCHK Technologies turn over to the Trustee privileged communications of G Club Operations, among other documents, by November 17, 2023 (less than the 14 days a party has to appeal an Order pursuant to Fed. R. Bankr. P. 8002(a)(1)) because HCHK Technologies acted as an internet administrator to G Club Operations, as well as other customers. Stated differently, according to the Order, retaining and utilizing a cloud computing vendor obliterates attorney client and work product privilege and allows the Trustee to access any document it wants, *even communications between G Club Operations and the undersigned counsel.*

In addition to its impact on G Club Operations, the effect of this ruling on clients and their legal counsel, indeed on anyone who exchanges legally confidential or protected communications utilizing cloud-based services administered by a third party, could be catastrophic, rendering it impossible to electronically store any protected documents or communications on the cloud without losing the key protection of privilege for such communications. The Order incorrectly applies the law to reach this result, and it creates a dangerous precedent that essentially holds that whenever a business or individual outsources its IT services to a provider which may also provide additional services, then that business or individual loses all rights to and in its documents,

including the right to protect from disclosure attorney-client and work-product privileged communications. Respectfully, the Bankruptcy Court erred, and G Club Operations has filed a Notice of Appeal to the District Court challenging the Order. <u>Exhibit C</u>.

As explained herein, G Club Operations satisfies the requisite elements for a stay pending appeal because (1) failure to grant the stay and forcing G Club Operations to turn privileged communications, or HCHK to turn over G Club Operations' privileged communications, over to the Trustee before an appeal is heard will effectively deprive G Club Operations of the right to an effective appeal and irrevocably impacting its due process rights because once the privileged documents are produced, it is virtually impossible to un-ring that bell; (2) there is no harm to the Trustee as the Trustee has already received more than 140,000 documents from G Club Operations in connection with the Rule 2004 process, in addition to having issued far in excess of 200 Rule 2004 subpoenas; (3) the Order is against public policy as it implicates the privacy and constitutionally protected rights of every business and individual and every law firm that stores protected communications in the cloud; and (4) G Club Operations is likely to succeed on the merits because the Bankruptcy Court's reasoning is incorrect and, candidly, would impact how every law firm would transact business. Accordingly, a stay pending appeal should be granted so protected documents are not turned over before the issues on appeal are finally resolved.

Because the Order requires compliance by November 17, 2023, exigent circumstances exist to address this motion on an emergency basis. Further, G Club Operations respectfully requests that, to the extent practical, the District Court rule on this motion no later than Friday, November 17, 2023 at 2 PM, so that G Club Operations may have the opportunity to seek further appropriate relief if necessary, given the truncated time frame imposed by the Bankruptcy Court.

## RELEVANT PROCEDURAL BACKGROUND[2]

1.      On June 23, 2023, the Trustee filed a Motion, Pursuant to Fed. R. Bankr. P. 9019, Regarding Settlement with Assignee of HCHK Entities, Under New York Court Assignment Proceedings (Bankr. D. Conn. Adv. Proc. No. 22-50073, Dkt No. 1936) (the "9019 Motion"). The 9019 Motion included a Proposed Order that HCHK Technologies turn over to the Trustee all documents to which it may have had access. (*Id.*, Dkt. No. 2004) (the "Revised Proposed Order"). Specifically, Paragraph 6 of the Revised Proposed Order stated:

> **"Corporate Records.** The Assignee shall immediately make available to the Trustee all non-privileged corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee. All such corporate records and other documents shall be considered documents designated as "confidential" and subject to the protective order entered in this Chapter 11 Case on October 6, 2022 [Main Case Docket No. 923]."

*Id.* at 3, ¶.[3]

2.      On July 5, 2023, and again on July 14, 2023 (*id.*, Dkt. Nos. 1977 and 2007 respectively), G Club Operations objected to Paragraph 6 of the Proposed Order and requested an orderly process by which to preclude a wholesale turnover of confidential and privileged materials to the Trustee simply because it outsourced IT services.

3.      On July 28, 2023, the Bankruptcy Court ruled on the 9019 Motion, granting the 9019 Motion but modifying Paragraph 6 of the Proposed Order to provide:

> **Corporate Records:** (a) The Assignee shall immediately secure and safeguard all corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee. Within ten (10) days from

---

[2] The Order arises from a Rule 9019 Motion relating to HCHK Technologies, Inc. ("HCHK Technologies"), HCHK Property Management, Inc. ("HCHK Property") and Lexington Property and Staffing, Inc. ("HCHK Lexington") (collectively, "HCHK Entities") via the alleged authority of an Assignee, with the subject matter of the Order resolving a final discrete issue – G Club's objection on due process grounds. The Order is a final order for purposes of appeal because it "definitively dispose of [a] discrete disputes within the overarching bankruptcy case." *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citation omitted). The Court has approved the Rule 9019 Motion.

[3] The Rule 9019 was entered into between the Assignee of the HCHK Entities and the Trustee. Various issues related to that Rule 9019 Order are the subject of an appeal. *See* No. 23-05013, Dkt. Nos. 70, 80, and 98.

the date of the entry of this Order, the Assignee shall make available to the Trustee all non-privileged corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee, *except those that were at any point the property of G-Club Operation LLC ("G-Club")*. All such corporate records and other documents shall be considered documents designated as "confidential" and subject to the protective order entered in this Chapter 11 Case on October 6, 2022 [Main Case Docket No. 923] (the "Protective Order"). Also within ten (10) days from the date of the entry of this Order, the Assignee shall make available to G-Club all corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee, *which were at any point the property of G-Club. Upon receipt, G-Club shall immediately review such corporate records and other documents for privilege and responsiveness to the Trustee's Rule 2004 subpoena of G-Club and produce a privilege log and responsiveness log*. G-Club may designate materials it will produce to the Trustee as "confidential" or "highly confidential" in accordance with the Protective Order.

*Id.*, Dkt. No. 2038 at 4, ¶ 6(a)) (emphasis added).

4.     The Bankruptcy Court also provided that "[o]n or before August 11, 2023, the Trustee shall file a brief in support of the Trustee's argument that G-Club has waived any privilege and has no right to object to responsiveness.  On or before August 18, 2023, G-Club shall file any response to the Trustee's brief."  *Id.* at 5, ¶ 6(b).

5.     On August 11, 2023, the Trustee filed a *Memorandum of Law in Support of Chapter 11 Trustee's Argument that G-Club Operations LLC has Waived any Privilege and has no Right to Object to Responsiveness as to G-Club Documents Turned Over from the Assignee of HCHK Technologies, Inc. to the Trustee Pursuant to Bankruptcy Rule 9019 Settlement Agreement* (the "Waiver Motion"), which the Trustee filed in Adversary Proceeding No. 23-05013, ECF No. 86 (and not in No. 22-50073, as all other filings had previously been made).  A copy of the Trustee's Waiver Motion is attached hereto as Exhibit D.

6.     G Club Operations opposed the Waiver Motion on September 29, 2023, filing its *Response to Trustee's Memorandum Challenging G Club's Privilege Assertions In Documents In HCHK's Possession and Opposition To The Trustee's Related Proposed Order*.  (Bankr. D. Conn.

{00340617.1 }                                         5                                      4862-7419-1761.v1

Case No. 22-50073, Dkt. No. 2244) (the "Response").[4]   A copy of G Club Operations' Response is attached hereto as Exhibit E.

7.      On November 13, 2023, the Bankruptcy Court issued the Order granting the Trustee's Waiver Motion and ordering production by G Club Operations and the Assignee of HCHK Technologies by November 17, 2023, which is less than the time afforded G Club Operations to appeal the Order pursuant to Fed. R. Bankr. P. 8002.   This Order is a final order of the Bankruptcy Court.

## A STAY OF THE ORDER PENDING APPEAL IS PROPER

8.      The United States Court of Appeals for the Second Circuit has established the following four-part test for determining whether to grant a motion for stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (citations omitted). Each factor favors a stay in this case.  A stay is "'an exercise of judicial discretion,' and '[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (quoting *Nken v. Holder*, 129 S. Ct. 1749, 1760 (2009)).

## A.      Absent a Stay, G Club Operations Will Be Irreparably Harmed by Deprivation of Appeal Rights and a Waiver of Privilege

9.      Absent a stay, G Club Operations will suffer irreparable injury because one cannot effectively undo the wholesale turnover of privileged communications to the Trustee and, as a

---

[4] G Club filed on a different date for the reasons set forth in its *Opposition To Trustee's Proposed Supplemental Order Regarding G-Club Documents Pursuant To Order Approving Chapter 11 Trustee's Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings* (No. 22-50073, Dkt. No. 2233).

4862-7419-1761.v1

result, that turnover may render the appeal moot. Courts have found that irreparable injury exists when the denial of a stay creates the potential for a complete loss of a right for the moving party. *In re St. Johnsbury Trucking Co., Inc.*, 185 B.R. 687, 690 n.1 (S.D.N.Y. 1995) (finding that if the government's appeal here is mooted, it will lose the ability to enforce some provisions of CERCLA and the Internal Revenue Code; it is that threatened loss rather than the loss of the right to appeal *vel non* that gives rise to the Court's irreparable injury finding). "[W]here the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied." *In re BGI, Inc.*, 504 B.R. 754, 763 (S.D.N.Y. 2014) (internal quotation marks and citations omitted, alterations added).

10.     That is precisely the issue here: G Club Operations' rights absent a stay will forever be lost as production of privileged information likely would moot any meaningful remedy if the Order is overturned on appeal. The production deadline in the Order requires compliance by November 17, 2023. This production includes privileged communications between G Club Operations and its counsel. If G Club Operations, or HCHK, is forced to comply with the Order, G Club Operations will effectively forever lose its right to protect confidential communications with its attorneys. Once obtained, the Trustee and his advisors cannot unlearn the privileged communications they will see and review.

11.     To be clear, the Trustee would likely seek and obtain access to *every single email*, draft document, and other attorney-client communication between G Club Operations and its lawyers.

## B.     A Stay Will Not Prejudice the Trustee

12.     Unlike any other party in this bankruptcy matter, the Trustee has availed itself of the broad discovery afforded under Rule 2004. Indeed, the Trustee has already sought leave to file

255 Rule 2004 subpoenas.[5,6] With respect to G Club Operations specifically, the Trustee has served G Club Operations with a Rule 2004 Subpoena and G Club Operations has produced in excess of 140,000 documents. In addition, and in accordance with the Bankruptcy Court's Order on the Rule 9019 Motion, G Club Operations also produced a privilege log to the Trustee.

13.     Accordingly, the Trustee will not suffer any "substantial injury" by staying the Order to permit the appeal to proceed. Indeed, without a stay, compliance with the Order may render its appeal moot and will forever infringe G Club Operations' due process rights because once privileged communications are disclosed it is effectively impossible to return to the *status quo ante*.

**C.     The Order Is Against Public Policy**

14.     The Order poses an immediate threat to the privacy and constitutionally-protected interests of customers who outsource their IT services. The Order is contrary to authority holding that utilization of "hosting services did not result in a waiver." *See Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 871 (Del. Ch. 2022) (alterations added). There is no legal support for the proposition that simply using an outsourced, cloud-based data hosting service results in a waiver

---

[5] Unless stated otherwise references to "Dkt. No. ___" refer to docket entries in the so-called "main chapter 11 case," Case No. 22-50073.

[6] Specifically: (i) the Trustee's First Supplemental Omnibus Motion (Dkt. No. 839) seeking twenty-five (25) subpoenas; (ii) the Trustee's Second Supplemental Omnibus Motion (Dkt. No. 1116) seeking fifty-three (53) subpoenas; (iii) the Trustee's Third Supplemental Omnibus Motion (Dkt. No. 1259) seeking nineteen (19) subpoenas; (iv) the Trustee's Fourth Supplemental Omnibus Motion (Dkt. No. 1592) seeking fifty-seven (57) subpoenas; (v) the Trustee's Fifth Supplemental Omnibus Motion (Dkt. No. 1789) seeking eight (8) subpoenas; (vi) the Trustee's Sixth Supplemental Omnibus Motion (Dkt. No. 2079) seeking twenty (20) subpoenas; (vii) the Trustee's Seventh Supplemental Omnibus Motion (Dkt. No. 2249) seeking six (6) subpoenas; (viii) the Trustee's Eighth Supplemental Omnibus Motion (Dkt. No. 2304) seeking eight (8) subpoenas; and (ix) the Trustee's Ninth Supplemental Omnibus Motion (Dkt. No. 2308) seeking twenty-nine (29) subpoenas. The latter two are presently subject to objections. *See, e.g., Objection of Shin Hsin Yu and Jie Zhang to Eighth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt. No. 2319); *G Club Operation LLC's Limited Objection to Eighth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt. No. 2320); *Objection of Shin Hsin Yu, 1332156 B.C. LTD, GWGOPNZ Limited, and Jie Zhang to Ninth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt No. 2326); *G Club Operations LLC's Objection to Ninth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Rule 2004* (Dkt. No. 2331).

of privilege or otherwise transfers the information maintained on the cloud to the administrator.

15.     Indeed, if entities that use cloud communications, which is virtually every individual and business in the world, have no attorney-client privilege, the attorney-client privilege will become a meaningless protection.

**D.      G Club Operations Has A Substantial Possibility of Success on Appeal Because the Order Is Erroneous**

16.     As a preliminary matter, "[t]he requisite showing of "substantial possibility" of success is "inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay." *In re BGI, Inc.*, 504 B.R. at 764 (second alteration in original, citations omitted).  As noted above, the harm to G Club Operations of an unstayed order forcing the turnover of its privileged documents is a change in circumstances that cannot be undone.  As such, G Club Operations "need not always show a "probability of success' on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.* (citation omitted).  As explained below, however, the Order reaches an erroneous legal conclusion, assuming waiver and improperly shifting the burden to G Club Operations to establish an exception when no waiver took place, which makes it likely G Club Operations will prevail on appeal.

- **The Order Conflates Documents "Disclosed" to HCHK *with* G Club Operations Documents on the Cloud for which HCHK Acted as IT Administrator**

17.     In addressing the issue of responsiveness and privilege, the Order conflates documents G Club Operations *disclosed* to HCHK that became property of HCHK *versus* G Club Operations' emails with a *gclub.com* domain name maintained on the cloud for which HCHK acted as IT manager and administrator and which belong only to G Club Operations,  and never became

HCHK's property. This extends to any other customer that HCHK has as a customer. As a result, the Order improperly relies on the Master Services Agreement between HCHK and G Club Operations as a basis to transfer gigabytes of cloud data to the Trustee that was never *disclosed* to HCHK.

18.     Illustrating this mistake is the Order's improper characterization of G Club Operations' position in No. 22-50073, Dkt. No. 2244, as a review process. The Order states "that G-Club had rights to review the documents for both responsiveness and privilege." Order at 3. In other words, the Bankruptcy Court improperly framed the issue as G Club Operations' demand to review documents that HCHK was intending to produce to the Trustee as if G Club Operations had *disclosed* the documents on the cloud to HCHK in the first instance.

19.     That was not the issue raised by the Waiver Motion and challenged by G Club Operations. As G Club Operations argued in its filings:

> "G Club contracted with HCHK for the administration of a cloud-based storage and email system for its communications (among other services). That system, Microsoft 365, is a cloud-based enterprise system which is routinely utilized by corporations and law firms. That HCHK was the system's administrator is not relevant to G Club's assertion of privilege; the documents were maintained in "the cloud," and the Trustee has made no assertions (nor can he) that a single individual other than G Club employees ever reviewed documents maintained on the cloud that hosted G Club domain names. Privileged documents stored in a cloud system administered by a third party simply do not lose their protected status."

No. 22-50073, Dkt. No. 2244, at 2-3, ¶ 3.

20.     Thus, the issue is whether privileged documents lose their protected status merely as a result of outsourcing IT services when there is no factual contention that the IT service provider was given access to the privileged material.

21.     Underscoring this confusion is the Order's improper reliance on the Master Services Agreement ("MSA") between HCHK and G Club Operations. In quoting the MSA, the Bankruptcy Court erroneously stated: "Under the terms of the Master Services Agreement (the

"MSA") between HCHK Tech and G-Club, the Assignee may disclose G-Club's documents to a third party as required by law. (Mot. Ex. A, § 6.2.)" Order at 6.

22.    Section 6.2, however, cannot be read without Section 6.1, which provides: "Confidential Information" means any information *disclosed* under this Agreement by either party ("*Disclosing* Party") to the other party ("*Receiving* Party")." MSA § 6.1 (emphasis added). G Club Operations documents that are maintained "in the cloud" are not documents *disclosed* to HCHK.

23.    Indeed, there is a clear distinction between documents *sent* to HCHK or *shared* with HCHK (which should not be turned over to the Trustee without a review by G Club Operations for responsiveness and privilege) *versus* the gigabytes of data on the cloud that were not disclosed to HCHK and belong to G Club Operations and G Club Operations only and retain their privilege protections.

24.    As such, the MSA's provisions – which describe the parties in terms of "Receiving Party" and "Disclosing Party" – do not inform the Bankruptcy Court's analysis of whether privileged material maintained "in the cloud" thereby lose their protected status.

- **The Order Improperly Assumed Waiver and Erroneously Shifted the Burden to G Club Operations to Establish an Exception to Waiver**

25.    With respect to privilege, the Order improperly assumed waiver based solely on the Trustee's conclusory assertion "that G-Club has waived any privilege in the documents in the custody, control, and/or possession of the Assignee at the time of his settlement with the Trustee." Order at 7. "Documents" is not precisely defined, failing to account for the distinction explained above. And, thereafter, the Order improperly concludes that there must have been a waiver because HCHK provided "a la carte consulting services" and "Section 6.2 of the MSA makes clear that HCHK Tech may use G-Club's documents in the course of providing the services listed on

exhibit A to the agreement. (*Id.* Ex. A, § 6.2.)"  Order at 9.  However, documents "in the cloud" are not documents to which HCHK had access or otherwise reviewed.  In effect, the Bankruptcy Court assumed access and review and thus waiver, and then improperly shifted the burden to G Club to establish an exception to waiver when there was no waiver in the first instance because HCHK was not given access and the right to review G Club Operations' emails.

26.     As stated, the Bankruptcy Court based its burden shifting on the concept that G Club Operations' privilege had been waived merely as a result of HCHK's provision of data hosting in the cloud together with other services under the MSA.  But, there is no legal support for the proposition that the mere provision of "a la carte consulting services" separate and apart from data hosting (particularly where there are no facts that could show that the host was authorized to review and access privileged material) results in waiver of privilege – unless, of course, documents are actually exchanged, shared, disclosed, or otherwise reviewed by a party.  Once again, the Order improperly conflates documents that would have been exchanged in the course of providing services (like communications between G Club Operations and HCHK) *versus* an outsourced IT storage service for cloud administration.  The Order erroneously *assumes* waiver, and thus improperly shifted the burden to G Club Operation to demonstrate an exception to waiver under "common interest" or *Kovel*.[7]  Order at 9-11.

## CONCLUSION

27.     Under these circumstances, a stay pending appeal is proper to preserve the status

---

[7] The Bankruptcy Court's reference to *United States* v. *Kovel*, 296 F.2d 918 (2d Cir. 1961) is unclear as *Kovel* stands for the proposition that in litigation a lawyer may hire an outside consultant who *works for the lawyer* and is subject to attorney-client privilege.  Thus, for example, a lawyer may hire a CPA to assist with a tax case (as in *Kovel*) without harm to turnover their communications in discovery.  *Kovel* has no application outside the litigation context and there would be no way to "*Kovel*" an IT company generally.  Here, HCHK was hired as an ordinary course IT provider, there was no law firm involved with retaining HCHK as there was no legal proceeding going on when G Club Operations hired them.

quo and prevent the irreparable harm to G Club Operations of effectively losing its due process and privilege rights.

**RELIEF REQUESTED**

28.     G Club Operations respectfully requests that the District Court enter a stay pending appeal of the Order.

Dated: November 16, 2023

By:   _/s/ Jeffrey M. Sklarz_
         GREEN & SKLARZ LLC
         Jeffrey M. Sklarz
         Kellianne Baranowsky
         One Audobon St, 3rd Floor
         New Haven, CT 06511
         Tel: 203-285-8545
         jsklarz@gs-lawfirm.com
         kbaranowsky@gs-lawfirm.com

         PILLSBURY WINTHROP SHAW PITTMAN LLP
         Carolina A. Fornos (_pro hac vice_)
         31 West 52nd Street
         New York, NY 10019
         Tel: 212-858-1558
         carolina.fornos@pillsburylaw.com

         _Attorneys for G Club Operations LLC_

{00340617.1 }

4862-7419-1761.v1

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, a copy of the foregoing was served via CM/ECF. Parties may access this filing through the Court's CM/ECF system.

Additionally, a copy of the foregoing has been filed on the docket of the Bankruptcy Court as well as emailed as follows:

Counsel for the Trustee
Avi Luft          aviluft@paulhastings.com
Patrick Linsey  plinsey@npmlaw.com

Counsel for the Assignee, Brien W. Hofmeister
Bonnie Mangan          bonnie.mangan@manganlaw.com

Counsel for HCHK Technologies, Inc; Holy City Hong Kong Ventures, LTD; Lexington Property and Staffing, Inc.
John T. Shaban          john@levinelevinelaw.com

Counsel for HCHK Property Management, Inc.
John T. Shaban          john@levinelevinelaw.com
Bonnie Mangan          bonnie.mangan@manganlaw.com

Counsel for Holy City Hong Kong Ventures, LTD.
John T. Shaban          john@levinelevinelaw.com

Date:   November 16, 2023.

　/s/ Jeffrey M. Sklarz
Jeffrey M. Sklarz