**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re | **Chapter 11** |
| **HO WAN KWOK**<br>**a/k/a WENGUI GUO**<br>**a/k/a MILES GUO,[1]** | **Case No. 22-50073 (JAM)** |
| | **Jointly Administered** |
| Debtor. | **Re: ECF 2282** |

## UNITED STATES TRUSTEE'S OBJECTION TO CHAPTER 11 TRUSTEE'S APPLICATION TO EMPLOY EISNER ADVISORY GROUP LLC

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), hereby objects to the application of Chapter 11 Trustee Luc A. Despins ("Trustee") to employ Eisner Advisory Group LLC ("EA Group") as tax advisor for the three chapter 11 debtors effective as of October 23, 2023 (ECF 2282) ("Application"). The United States Trustee opposes the retention of EA Group because of its connections to the Former REM Clients.[2]  The United States Trustee also opposes approval of certain provisions contained in Section 7(a) and 7(b) of Eisner Advisory Group LLC Standard Terms and Conditions of Engagement filed as part of the Application ("Limitations Provisions"). In support of his objection, the United States Trustee states as follows:

## CONTENTS OF APPLICATION

On October 24, 2023, the Trustee filed the Application seeking to employ EA Group as tax advisors to all three of these chapter 11 estates ("Estates"). ECF 2282. Paragraph 26 of the Application discloses that EA Group has connections to the chapter 11 estates of Ho Wan Kwok

---

[1]  The jointly administered debtors are Ho Wan Kwok (22-50073), Genever Holdings, LLC (22-50592), and Genever Holdings Corporation (22-50542).

[2]  Term defined in paragraph 26 of the Application and in paragraph 7 of the Declaration of Anthony R. Calascibetta, a partner at EA Group.

("Individual Debtor") and Genever Holdings Corporation ("Debtor Genever BVI"). The connections stem from EA Group's acquisition of certain assets of the financial services firm of Raiche Ende Malter Co., LLP ("REM") in July 2022, the absorption into EA Group of certain former REM personnel, as well as the Former REM Clients. *See* Application at ¶ 26. According to REM's website, REM is now part of EA Group ("Raich Ende Malter & Company has Joined Eisner Advisory Group LLC"). *See* https://www.rem-co.com/.

The Former REM Clients are a group of seven clients of REM and includes both individuals and companies. Five are central figures of this chapter 11 case: (a) two are debtors - the Individual Debtor and Debtor Genever BVI, (b) Qiang Guo, the son of the Individual Debtor, (c) Golden Spring (New York) Ltd. ("Golden Spring"), the Individual Debtor's "family office" and alleged primary source of financial support for the Individual Debtor both pre-petition and post-petition, and (d) Rui Ma, a member of the Official Committee of Unsecured Creditors ("Committee") (ECF 108). *See* Application at ¶ 26. Other individuals who are Former REM Clients are Chunguang Han,[3] Yong Yu,[4] and Zhiewi Zhang, but the Application does not provide any information about the connections of these individuals to these chapter 11 cases. *Id.*

According to the Application and the supporting declaration of Anthony R. Calascibetta ("Declaration"), REM provided services to the Former REM Clients in connection with "certain tax returns and tax extensions for 2015 and 2016." *See* Application at ¶ 26; Declaration at ¶ 7. It is undisclosed when REM's client relationships with the Former REM Clients started or concluded. When EA Group joined with REM, it also absorbed some employees of REM who

---

[3] This individual is referenced in Adv. Proc. 23-5008 and is alleged to be an employee of the Individual Debtor and the owner of Anton Development, Ltd.

[4] ECF 1083 contains an affidavit of Yong Yu that was filed under seal. Yong Yu is also alleged to be an employee of the Individual Debtor in Adv. Proc. 23-5008.

worked on matters involving the Former REM Clients. *See* Application at ¶ 26; Declaration at ¶ 7. The identities of these EA Group personnel who are former REM employees are not disclosed in the Application, nor is the nature of the services provided to the Former REM Clients disclosed beyond stating it was "certain tax returns and tax extensions for 2015 and 2016." *See* Application at ¶ 26; Declaration at ¶ 7. The Application states that none of the EA Group personnel who are former REM employees will work on matters for the Estates and they will not have access to information related to Estates. *See* Application at ¶ 27; Declaration at ¶ 10.

The Trustee, through his counsel, served REM with a Rule 2004 subpoena in December 2022 ("Trustee Subpoena"). *See* Application at ¶ 26; Declaration at ¶ 9. While the Application does not address it, the Trustee presumably received information and documentation about REM and certain of its clients in connection with the Trustee Subpoena. Now, by seeking to employ EA Group the Trustee is seeking to hire, albeit indirectly, a target of his investigation and the Trustee has specifically reserved rights against REM. *See* fn. 4 on page 9 of the Application. More importantly, EA Group, by joining with REM and former REM personnel who now work at EA Group, inherited a connection to these cases that makes EA Group adverse to the Estates and thus unable to meet the requirements of Section 327. Additionally, there is a concern that the Trustee may potentially need to be adverse to REM and/or to former REM personnel that are now at EA Group which renders the employment of EA Group inappropriate.

Some of the proposed terms of the retention of EA Group are also improper. The terms of the EA Group retention include Limitations Provisions, contained in Section 7(a) and 7(b) of Eisner Advisory Group LLC Standard Terms and Conditions of Engagement filed as part of the

Application, which restrict and limit the liability of EA Group. The limitations are as follows:

(a) Section 7(a) limits the liability of EA Group to the chapter 11 estates to the amount of fees paid for the "service or work product giving rise to liability." ECF 2282 at page 29. The limitation of liability does not apply to damages judicially determined to be the result of gross negligence or willful misconduct. *Id.*

(b) Section 7(b) protects EA Group by excluding the following types of damages as recoverable: consequential, incidental, indirect punitive or special. *Id.*

## ARGUMENT

### I.    Requirements of Section 327(a) and Rule 2014(a)

The legal standards governing retention of a professional are generally contained in 11 U.S.C. § 327(a). Pursuant to Section 327(a), there are two basic requirements for retention of a professional to provide services to the debtor's estate: (1) the professional must not "hold or represent an interest adverse to the estate," and (2) the professional must be a "disinterested person." 11 U.S.C. § 327(a); *Vouzianas v. Ready & Pontisakos (In re Vouzianas)*, 259 F.3d 103, 107 (2d Cir. 2001). Accountants must satisfy the requirements of Section 327(a). *In re Andover Togs, Inc.*, 2001 WL 262605 (S.D.N.Y. March 15, 2001) (reversing bankruptcy court's approval of employment of accountant who was a creditor; finding Section 327(e) not applicable to accountants and that accountants are governed by Section 327(a)); *In re Tribeca Market, LLC*, 516 B.R. 254, 277-280 (S.D.N.Y. 2014) (accountant required to meet both Section 327 and disclosure obligations of Rule 2014).

The Second Circuit defines "adverse interest" as follows:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to

4

> possess a predisposition under circumstances that render such a bias
> against the estate.

*In re Arochem Corp.*, 176 F.3d 610, 621 (2d Cir. 1999). The "determination of an adverse interest is objective and concerned with the appearance of impropriety." *In re Angelika Films 57th Inc.*, 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998). "The disqualifying adverse interest addressed in § 327. . . is either an actual or a reasonably probable conflict of interest." *In re AroChem*, 181 B.R. 693, 700 (Bankr. D.Conn. 1995) (Shiff, J.), *aff'd, In re AroChem Corp.*, 176 F.3d 610 (2nd Cir. 1999). "Whether an adverse interest exists is best determined on a case-by-case basis." *In re Arochem Corp.*, 176 F.3d at 623 (*citations omitted*). The standards in section 327(a) are "phrased in the present tense, permitting representation by professionals 'that do not *hold* or *represent* an interest adverse to the estate.'" *Id.* (emphasis in original).

The Bankruptcy Code defines a "disinterested person" as one who is "not a creditor, equity security holder, or an insider", and who "does not have an interest materially adverse to the interest of the estate or any class of creditors … by reason of any indirect or direct relationship to, connection with, or interest in, the debtor …" 11 U.S.C. § 101(14)(A) and (E). "The 'materially adverse' standard incorporated in the disinterestedness test and the 'interest adverse to the estate' language in section 327(a) overlap. To this extent, the two prongs of section 327(a) are duplicative and form a single test to judge conflicts of interest." *In re Granite Partners, L.P.,* 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998); *see also JMK Construction Group, Ltd.,* 441 B.R. 222, 229 (Bankr. S.D.NY. 2010).

Bankruptcy Rule 2014(a) requires affirmative disclosure in a retention application of, "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants." Fed. R. Bankr. P. 2014(a). "It is abundantly clear that Fed. R. Bankr. P. 2014(a) requires a significant level of

disclosure of the proposed professional's 'connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants' … ." *In re Matco Electronics Group, Inc.,* 383 B.R. 848, 852-853 (Bankr. N.D.N.Y. 2008). These obligations apply to accountants. *In re Tribeca Market, LLC*, 516 B.R. at 277-280. Furthermore,

> It is equally clear that the level of disclosure outlined in the Rule is mandatory, whether or not that disclosure would unearth a conflict of interest.   It is also apparent that the obligation to disclose is not a subjective one, whereby the professional discloses only those "connections" that he/she/it concludes are relevant …
>
> As indicated, the existence of a conflict of interest is not the quid pro quo for whether or not the disclosure must be made. Sanctions are imposed for the failure to disclose, regardless of the consequences of the non-disclosure … '[I]n the Second Circuit a violation of the disclosure rule alone is sufficient to deny compensation regardless of whether the undisclosed connection was materially adverse to the estate.'

*Id.* (*internal citations omitted*); *see also In re Peterson*, 163 B.R. 665, 670 (Bankr. D. Conn. 1994) (citing *Futuronics Corp. v. Arutt, Nachamie & Benjamin (Matter of Futuronics Corp.)*, 655 F.2d 463, 469 (2d Cir. 1981) ("As a general rule, the consequences of failure to make a full disclosure under Section 327(a) and Rule 2014(a) is the denial of all compensation for post-petition services.")). "Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees … disclosures must be direct and comprehensive; that is, the [professional] …must make a full, candid and complete disclosure." *In re Chin Kim*, 2012 WL 3907490 at *4 (Bankr. E.D.N.Y. 2012) (*internal citations omitted*).

## II.   Issues with Application

As discussed below, the Application presents an issue that warrants denial of the Application, namely EA Group's connections to REM and the Former REM Clients. Should the

Court not deny the Application, the Limitations Provisions should be removed from the terms of employment of EA Group.

### (i) REM and the Former REM Clients

EA Group is connected to these chapter 11 cases in a way that makes their employment inappropriate. By acquiring REM and certain personnel of REM in 2022, EA Group inherited the connections of REM to the Former REM Clients. Two of the former REM Clients are two of the debtors - the Individual Debtor and Debtor Genever BVI. Two of the Former REM Clients are targets of claims and litigation by the Trustee - Qiang Guo and Golden Spring.[5] One of the Former REM Clients is a member of the Committee - Rui Ma. ECF 108. Other Former REM Clients are connected to the Estates, but the Application does not provide any details.

As a result of the foregoing, EA Group is unable to satisfy the requirements of Section 327(a) because of its connection to REM and the Former REM Clients. The Individual Debtor, in his individual capacity, is directly adverse to the Trustee and the Estates.[6] Quiang Guo and Golden Spring are directly adverse to the Trustee and the Estates. Some of the employees of REM who worked on matters involving the Former REM Clients now work at EA Group. EA Group's connections to adverse parties, through REM, REM personnel, and their work on behalf of adverse parties, makes EA Group ineligible under Section 327(a).

Further, when considering the Application, the Court should also take into consideration the fact that REM was a target of investigation by the Trustee and the Trustee is reserving all rights as to REM. *See* Application at fn. 4 on page 9. REM has joined with EA Group and it appears imprudent to hire a professional firm when that firm, as a successor to REM and the

---

[5] *See* adversary proceedings at Case Nos. 22-5027, 23-5018.
[6] *See* adversary proceedings at Case Nos. 22-5032, 22-5034.

employer of personnel who provided services to the Former REM Clients, may be the subject of further investigation or potentially face claims against it by the Trustee.

*(ii)* *Limitations Provisions*

The Limitations provisions are improper. EA Group, if authorized by the Court to serve as tax advisors to the Trustee and the Estates, will become a fiduciary to the Estates. *In re Jackson*, 643 B.R. 644, 703 (Bankr. D. Conn. 2022) (accountant hired by chapter 11 debtor owes fiduciary duty to the debtor and the estate). Limiting liability in advance does not comport with being a fiduciary.

If EA Group makes a serious mistake, it could cause significant loss to the Estates and their creditors. *See, e.g., In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327, 330-31, 333 (Bankr. D. Md. 2000) (accounting firm, retained in chapter 11 case to provide services to the debtor as a "turnaround specialist" settles negligence, malpractice, fraud and fraudulent concealment suit brought by the estate for $185 million); *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir. 1994) (professional accused of malpractice for failing to perform a number of duties). Under the Limitation Provisions that the Trustee has bestowed upon EA Group, the Estates - and therefore their creditors - will bear the loss for those mistakes and lose their ability to hold EA Group fully accountable for its mistakes.

The burden of proof to establish that the terms and conditions of employment are reasonable is on the applicant. *Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915, 921 (6th Cir. 2004); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 262 (3d Cir. 1995); *In re Metricom, Inc*., 275 B.R. 364, 371 (Bankr. N.D. Ca. 2002). To meet its burden, the applicant must provide specific evidence to establish that "the terms and conditions are in the best interest of the estate." *In re Gillett Holdings, Inc.,* 137 B.R. 452, 455 (Bankr. D. Colo.

1991). The burden has not been met by the Trustee.

## **CONCLUSION**

**WHEREFORE**, for all of the foregoing reasons, the United States Trustee respectfully requests that the Court deny the Application. Should the Court determine that it is appropriate to employ EA Group, the Limitation Provisions should be struck from the terms of employment.

Dated:   November 21, 2023
New Haven, Connecticut

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE FOR REGION 2

By:      /s/ Holley L. Claiborn
Holley L. Claiborn
Trial Attorney
Office of the United States Trustee
Giaimo Federal Building, Room 302
150 Court Street, New Haven, CT 06510
Holley.L.Claiborn@usdoj.gov
Federal Bar No.: ct17216 (Connecticut)
(203) 773-2210

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was served on all appearing parties via the Court's CM/ECF filing system on November 21, 2023.


By:    /s/ Holley L. Claiborn
        Holley L. Claiborn