## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

-------------------------------------------------------x
                                  :

In re:                          :    Chapter 11

                                  :

HO WAN KWOK, *et al.*,[1]        :    Case No. 22-50073 (JAM)

                                  :

        Debtors.           :    (Jointly Administered)

                                  :

-------------------------------------------------------x

## MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER COMPELLING DBS BANK LTD TO COMPLY WITH RULE 2004 SUBPOENA

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the Ho Wan Kwok's (the "Debtor") chapter 11 case (the "Chapter 11 Case"), hereby files this motion (the "Motion to Compel") for entry of an order, substantially in the form appended hereto (the "Proposed Order"), pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure (the "Federal Rules"), and Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") compelling DBS Bank Ltd ("DBS") to comply with this Court's *Order Granting Fourth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Additional Legal and Financial Advisors to the Debtor, Entities and Individuals Affiliated with the Debtor, and Relevant Banks* dated April 10, 2023(ECF No.1646, the "Rule 2004 Order") and with the Trustee's November 9, 2023 Subpoena and Request for Production of Documents issued to DBS

---

[1]  The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

pursuant to such order, attached hereto as **Exhibit A** (the "DBS Subpoena").  In support of the

Motion to Compel, the Trustee respectfully states as follows:

## FACTUAL BACKGROUND

1.       On March 24, 2023, the Trustee filed his Fourth Supplemental Omnibus Motion of

Chapter 11 Trustee for Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1

Authorizing Discovery with Respect to Additional Legal and Financial Advisors to the Debtor,

Entities and Individuals Affiliated with the Debtor, and Relevant Banks (the "Fourth Omnibus

2004 Motion") seeking discovery with respect to various legal and financial advisors to the Debtor,

persons affiliated with the Debtor, and, as relevant here, banks at which the Debtor and persons

and entities related to the Debtor are believed to have deposited funds or conducted financial

transactions.

2.       In particular, the Debtor, and individuals and entities controlled by or allied with

him, held substantial assets at DBS, borrowed from, and otherwise did business with and through

DBS.  This is shown by, among other things, documents and information obtained by the Trustee

reflecting accounts at DBS in the name of Anton Development Limited ("Anton Development")

and Hong Kong International Funds Investment Limited ("HK International").  Both Anton

Development and HK International are shell companies that the Debtor beneficially owned or

controlled, and which the Trustee's investigation suggests received, held, and transferred cash and

other personal property worth millions of dollars on the Debtor's behalf.[2]

---

[2] According to the Hong Kong police, HK International was effectively controlled by the Debtor, used by the Debtor
to funnel money to a number of other Debtor-controlled entities in investment projects related to the Hong Kong stock
exchange, and received all its funds from other Debtor-controlled companies.  *See* Trustee's *Amended Adversary
Complaint* [Adv. Proc. No. 22-05027 ECF No. 40] at pp. 5-6 (discussing HK International in further detail).  Anton
Development was a shell company that formerly owned the Debtor's Bombardier Global XRS business jet, which
aircraft and its proceeds are the subject of yet another adversary proceeding, *i.e.*, *Luc A. Despins, Chapter 11 Trustee
v. Mei Guo*, Adv. Proc. No. 23-05008-JAM.

3.      Indeed, DBS's involvement with the Debtor is established by transactions between the Debtor's personal account with JPMorgan Chase Bank (the "JPMorgan Account") and accounts maintained by DBS in Hong Kong.[3] The Trustee has evidence of two wire transfers from the Debtor's JPMorgan Account to an account held by Anton Development at DBS in Hong Kong: (i) an April 27, 2016 transfer in the amount of $2.8 million; and (ii) a December 29, 2016 transfer in the amount of $3 million. The Trustee also has evidence of a wire transfer from Anton Development's account with DBS in Hong Kong to the Debtor's JPMorgan Account dated November 8, 2016 in the amount of $399,973. In addition, the Trustee has evidence of a wire transfer from the Debtor's JPMorgan Account in the amount of $208,049 to an account held by HK International at DBS in Hong Kong.

4.      For these reasons, among others, the Trustee included DBS in his Fourth Rule 2004 Motion. DBS did not object to the Fourth Rule 2004 Motion, which the Court granted by its Rule 2004 Order on April 10, 2023.

5.      Pursuant to the Rule 2004 Order, the Trustee issued a Subpoena to DBS, which was served on DBS at its Los Angeles, California Branch on April 18, 2023.[4] The Trustee issued an amended Subpoena—referred to herein as the DBS Subpoena (*see* **Exhibit A**)—on November 9, 2023, which was served on DBS at its Los Angeles, California Branch on November 13, 2023.[5]

6.      Following service of the DBS Subpoena, DBS's counsel reported to Trustee's counsel that he had performed a search of documents of the "DBS Bank Ltd, Los Angeles Representative Office" and found no responsive documents. *See* the November 13, 2023 email

---

[3] These transactions appear on bank statements issued to the Debtor by JPMorgan Chase Bank. The statements are attached as **Exhibit B** hereto.
[4] DBS's only branch in the United States is its Los Angeles Branch.
[5] The amended subpoena supplemented the list of entities identified as "2004 Discovery Targets" in the appended document request to include, among others, Anton Development.

from Robert Ward of DBS to Trustee's counsel.[6]  DBS's counsel described DBS's search for responsive documents as follows: "As the subpoena for production of records was served at the Los Angeles Representative Office, I performed a diligent and detailed search of the records *for this office* and provided a response in a timely manner." *See* November 14 Email from Robert Ward of DBS to Trustee's Counsel (emphasis added), **Exhibit C**. He stated further:

> Due to privacy laws governing customer accounts and records, we would be unable to search any location other than the Los Angeles Representative Office even if we had customer account numbers, names, and details for each entity, which as you know is not in our possession.
>
> \* \* \* \*
>
> DBS Bank Ltd is a global financial institution with branch offices in 17 different jurisdictions around the world. Each location has its own set of local laws, policies and statutes which govern their respective operations. The DBS Los Angeles Representative Office has no authority or control over any DBS location outside the United States. Each jurisdiction is regulated by a banking regulator and licensing entity which regularly examines and audits the operations of each location for strict compliance.

*See* November 15 Email from Robert Ward to Trustee's Counsel, **Exhibit C**.

7.    Trustee's counsel responded that the Subpoena was issued to DBS and was not limited to documents in the custody of DBS's Los Angeles branch. *See* email correspondence from Trustee's counsel to Robert Ward of DBS dated November 14, 2023, **Exhibit C**.

8.    After receiving DBS's statement that it would not search for or produce any records from DBS in offices or locations other than its Los Angeles branch, Trustee's counsel requested a telephone call to confer about DBS's position. In response to Trustee's counsel's request to meet and confer, DBS simply restated its position, showing an unwillingness to consider the Trustee's position or compromise its position in any way. *See* Email Correspondence between Trustee's counsel and Robert Ward dated November 14-15, 2023, **Exhibit C**.

---

[6] The email correspondence between DBS and Trustee's Counsel between November 13, 2023 and November 15, 2023 is attached hereto as **Exhibit C**.

9.      Ultimately, notwithstanding DBS's significant business operations in the United States, and DBS's participation in the transactions to and from the Debtor's JPMorgan Account, DBS has refused to comply with the DBS Subpoena to the extent it calls for production of documents from its locations outside the United States.  Hence this Motion to Compel.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in accordance with 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to, *inter alia*, 28 U.S.C. § 157(b)(2) (A), (E), and (O).

## RELIEF REQUESTED

11.     The Trustee seeks entry of the Proposed Order compelling DBS to comply with the DBS Subpoena within fourteen days.

## BASIS FOR RELIEF

**The Court Has Charged the Trustee to Investigate the Debtor's Financial Condition and Has Authorized the Trustee's Use of Bankruptcy Rule 2004 Discovery**

12.     DBS must comply with the DBS Subpoena and provide documents and information that are of key importance to the Trustee's investigation of the Debtor's financial condition and affairs.  The Trustee is tasked with investigating the Debtor's assets and affairs for the benefit of the Debtor's creditors.  "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Transmar Commodity Grp. Ltd.*, Case No. 16-13625-JLG, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018) (internal quotation and citation omitted).

13.     This includes revealing the nature and extent of the estate and in discovering assets of the debtor that may have been intentionally or unintentionally concealed. *In re Bennett Funding*

*Grp., Inc.*, 203 B.R. 24, 27-28 (Bankr. N.D.N.Y. 1996); *see also In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred.") (internal quotation and citation omitted)); *id.* (noting that "[u]nlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a fishing expedition and an inquisition") (internal citations and punctuation omitted); Fed. R. Bankr. P. 2004(b) (authorizing scope of 2004 examinations "relat[ing] . . . to . . . property . . . and financial condition of the debtor, or to ***any matter*** which may affect the administration of the debtor's estate") (emphasis added).

14.    As set forth above, it is virtually certain that DBS has documents and information responsive to the DBS Subpoena.  Following discussions between the Trustee and DBS, the Trustee understands that DBS's sole basis for refusing to comply with the DBS Subpoena is that the records sought by the Trustee are purportedly maintained outside the United States and are potentially subject to foreign privacy laws.  DBS's reliance on foreign law to avoid its obligations to comply with the DBS Subpoena is misplaced.

## DBS Must Comply with the Subpoena, Including for Accounts It Alleges Are Overseas

15.    The Second Circuit has repeatedly compelled foreign entities to produce documents "notwithstanding competing foreign legal obligations." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 114-116 (2d Cir. 2013); *see also United States v. Davis*, 767 F.2d 1025, 1033-35 (2d Cir. 1985); *United States v. First Nat'l City Bank*, 396 F.2d 897 (2d Cir. 1968).  As have the district courts within this circuit. *See, e.g., Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 364 (S.D.N.Y 2018); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 456 (E.D.N.Y. 2008); *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 57-58 (E.D.N.Y. 2007).

16.     Foreign "bank secrecy laws are not a 'get out of jail free' card." *Nike, Inc. v. Wu*, 349 F. Supp. 3d at 364.

> The Supreme Court long ago recognized the difficulties faced by parties for whom compliance with a U.S. discovery order would violate foreign law. Operation of foreign law do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that [law]. Ultimately, the District Court possesses wide discretion to proceed in whatever manner it deems most effective.

*Id.* (internal citations and quotation marks omitted) (*citing Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-211, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958)); *see also Linde*, 706 F.3d at 109.

17.     In *Linde v. Arab Bank, PLC*, the Second Circuit adopted from the Restatements a balancing test governing the Court's "discretion to enter a discovery order that may violate foreign law." *Nike, Inc. v. Wu*, 349 F. Supp. 3d at 364.

> Section 442 [of the Restatement (Third) of Foreign Relations Law of the United States] provides that, in determining whether to issue a production order for information located abroad, courts should consider [1] "the importance to the investigation or litigation of the documents or other information requested; [2] the degree of specificity of the request; [3] whether the information originated in the United States; [4] the availability of alternative means of securing the information; and [5] the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." Restatement § 442(1)(c). Cases from our Circuit counsel that, when deciding whether to impose sanctions, a district court should also examine the [6] hardship of the party facing conflicting legal obligations and [7] whether that party has demonstrated good faith in addressing its discovery obligations.

*Linde*, 706 F.3d at 109-10; *see also Laydon v. Mizuho Bank, Ltd*, 183 F.Supp.3d 409, 420 (S.D.N.Y. 2016) (numbering factors).

18.     The balancing test under *Linde* tilts strongly in the Trustee's favor.

19.     <u>Importance to the Investigation.</u>  The documents and information sought by the Trustee are of paramount importance to his investigation.  DBS was the source or recipient of

7

millions of dollars that cycled between one of the Debtor's private accounts and accounts held by Debtor-controlled shell companies. The Trustee must uncover where these funds came from and what happened to them. Further, the Trustee's experience with other financial institutions that handled the Debtor's assets suggests that the Debtor, or individuals or entities controlled by or allied with him, may have held other assets at DBS. This information is likewise needed to understand the Debtor's financial condition. Accordingly, the first factor favors the Trustee.

20.     <u>Specificity of Requests.</u> The document requests set forth in the DBS Subpoena are specific to the Debtor and certain persons and entities that are directly related to or associated with him. This factor thus likewise supports compelling production.

21.     <u>Location of the Information.</u> DBS is a global financial services firm headquartered in Singapore with significant business operations in the United States and with branches throughout the world. DBS was involved in transactions using relevant accounts through its Hong Kong Branch. To the extent that DBS has additional documents and information located overseas, it has the ability to transmit these to the United States. It may not refuse to do so now in defiance of the DBS Subpoena. This factor supports the Trustee.

22.     <u>Availability of Alternative Means to Obtain Information.</u> DBS's refusal to look beyond the confines of its Los Angeles Branch implicitly suggests that the Trustee pursue evidence abroad by obtaining counsel in overseas jurisdictions, commencing recognition proceedings, and seeking document production in numerous foreign jurisdictions. Alternatively, the Trustee could pursue evidence via the Hague Evidence Convention – again, throughout the world. Neither suggestion presents a viable alternative, because either would cause delay and expense that these bankruptcy estates cannot afford. Rather, the Federal Rules and the Bankruptcy Rules provide a simpler, cheaper, faster mechanism for the Trustee to obtain production. "The discovery

procedures provided by the Hague Convention ... are neither the exclusive nor even, necessarily, the first means for obtaining discovery from a foreign entity, as compared with the Federal Rules of Civil Procedure." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 182 (S.D.N.Y. 2006); *see also Valois of Am., Inc. v. Risdon Corp.*, 183 F.R.D. 344, 349 (D. Conn. 1997) (noting that "it is generally recognized that procedures under the Hague Convention are far more cumbersome than under the Federal Rules of Civil Procedures"). Because DBS will not even confirm where it alleges the Trustee would need to seek such documents, to ensure complete compliance the Trustee would be required to undertake Hague Convention discovery or institute recognition proceedings in dozens of countries throughout the world. These are not realistic alternatives.

23.      As the Court recently found, delay and expense are both immensely prejudicial to the Trustee's investigation and, thus, to these bankruptcy estates. *See* Injunction Decision at pp. 32-33 ("The delay is particularly harmful because there may not be an adequate remedy at law to compensate for the delay. The Chapter 11 Trustee cannot hire professionals to assist with the investigation without Estate assets and Estate assets may be placed outside the reach of creditors while the investigation continues to be delayed."). The absence of viable alternatives supports compelling DBS to comply by producing all responsive documents from all of it locations, inside and outside of the United States.

24.      <u>Noncompliance Undermines Important U.S. Interests.</u> The United States has a crucial interest in ensuring that the Trustee is permitted to diligently investigate the Debtor's financial affairs. The Court has repeatedly recognized the importance of the Trustee's investigation for these bankruptcy estates. *See, e.g.,* Injunction Decision at pp. 38, 39, 41. The

Trustee's investigation is essential to ensure that creditors may eventually recover from property that rightfully belongs to these estates under federal bankruptcy law.

25.    The Trustee's investigation is important not only for the benefit of these estates and their creditors, but also to ensure the integrity of the bankruptcy process. The Court recognized this in appointing the Trustee and continues to recognize this interest. *See id.* at pp. 54-55 (noting that the Trustee is an "officer of the Court" and discussing the integrity of the bankruptcy process). Other courts have likewise recognized the importance of this interest. *See, e.g., In re RnD Eng'g, LLC*, 556 B.R. 303, 313 (E.D. Mich. 2016 ("the integrity of the bankruptcy process is an important consideration to the Court"). This factor then also supports compelling production.

26.    <u>Hardship and Good Faith.</u>    To assert hardship as a defense to compliance, DBS must "show that the possibility of civil and/or criminal punishment is more than speculative." *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, 2013 U.S. Dist. LEXIS 85650, *41-42 (S.D.N.Y. June 11, 2013). DBS has provided no such showing; nor can it, given, among other things, its operations in the United States, and its participation in relevant transactions. In contrast, any prejudice claimed by DBS may be mitigated by a Court order directing its compliance with the DBS Subpoena and by the *Protective Order* previously entered in the Chapter 11 Case [ECF No. 923].

27.    Because all relevant factors support enforcing the DBS Subpoena, the Court should compel compliance by DBS.

28.    In addition to the factors identified in the Second Circuit's decision in *Linde, supra*, the Court should also consider that DBS's refusal to search for or produce responsive documents outside of those within the control of its Los Angeles Branch does not protect any vails privacy interests.

29.     As for the Debtor, the Trustee stands in his shoes and is entitled to his records. As for HK International and Anton Development, both entities have been identified as alter egos of or beneficially owned by the Debtor, and both are targets of discovery in these proceedings. Either entity could have opposed the First Omnibus 2004 Motion or moved to quash the DBS Subpoena had they wished to do so.

30.     In any event, DBS will be fully protected by a court order directing it to produce documents and information responsive to the DBS Subpoena. The Court should enter such an order without further delay and prejudice to these bankruptcy estates.

## NO PRIOR REQUEST

31.     The Trustee has not previously sought the relief requested herein from this or any other court.

## CERTIFICATION OF COUNSEL

32.     As set forth above, and in the Declaration of Patrick R. Linsey filed herewith, counsel for the Trustee conferred with counsel for DBS in good faith in an effort to resolve this dispute without success.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of the Proposed Order granting the relief requested in this Motion to Compel and such other relief as is just and proper.

Dated:    November 29, 2023           LUC A. DESPINS,
         New Haven, Connecticut      CHAPTER 11 TRUSTEE

                               By: */s/ Patrick R. Linsey*
                                  Patrick R. Linsey (ct29437)
                                  NEUBERT, PEPE & MONTEITH, P.C.
                                  195 Church Street, 13th Floor
                                  New Haven, Connecticut 06510
                                  (203) 781-2847
                                  plinsey@npmlaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

----------------------------------------------------------x
                                   :

In re:                        :     Chapter 11

                           :

HO WAN KWOK, *et al.*,[7]     :     Case No. 22-50073 (JAM)

                           :

        Debtors.       :     (Jointly Administered)

                           :

----------------------------------------------------------x

**DECLARATION OF PATRICK R. LINSEY IN SUPPORT OF**
**MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER COMPELLING**
**DBS BANK LTD TO COMPLY WITH RULE 2004 SUBPOENA**

I, Patrick R. Linsey, declare:

       1.     I am an attorney admitted to practice law in the State of Connecticut and an partner

at the law firm of Neubert, Pepe & Monteith, P.C., and counsel for Luc A. Despins as Chapter 11

Trustee (the "Trustee"). I respectfully submit this declaration in support of the *Motion of Chapter*

*11 Trustee for Entry of Order Compelling DBS Bank Ltd to Comply with Rule 2004 Subpoenas*

(the "Motion").

       2.     I have conferred with counsel for DBS Bank Ltd ("DBS") on several occasions by

email and requested to confer with DBS's counsel by telephone, which request DBS's counsel

---

[7] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

declined.    *See* Motion at **Exhibit C**.  The Trustee and DBS were thus unable to resolve their dispute.

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information, and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated:        November 29, 2023

New Haven, Connecticut            Respectfully submitted,

By: */s/ Patrick R. Linsey*_____
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
plinsey@npmlaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                           :

In re:                        :    Chapter 11
                           :

HO WAN KWOK, *et al.*,[1]     :    Case No. 22-50073 (JAM)
                           :

Debtors.               :    (Jointly Administered)
                           :

-------------------------------------------------------x

**[PROPOSED] ORDER COMPELLING DBS BANK LTD TO COMPLY**
**WITH RULE 2004 SUBPOENA AND AWARDING SANCTIONS**

Upon consideration of the Motion seeking an order compelling DBS Bank Ltd. ("DBS") to comply with the Court's *Order Granting Fourth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Additional Legal and Financial Advisors to the Debtor, Entities and Individuals Affiliated with the Debtor, and Relevant Banks* dated April 10, 2023 (ECF No. 1646, the "Rule 2004 Order") and with the subpoena (the "DBS Subpoena") the Trustee issued to DBS pursuant to the Rule 2004 Order, after notice and a hearing, *see* 11 U.S.C. § 102(1), it appearing that cause exists to grant the requested relief as conditioned hereafter; it is hereby

**ORDERED**: The Motion is granted as set forth below.

**ORDERED**: DBS shall search for and produce all documents responsive to the DBS Subpoena within fourteen (14) days of the entry of this Order.

Dated: _____, 2023

                                _____
                                  Julie A. Manning,
                                  United States Bankruptcy Judge

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

# EXHIBIT A

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

### UNITED STATES BANKRUPTCY COURT
### District of Connecticut

| | |
|---|---|
| In re   HO WAN KWOK, *et al.*,[1] | Case No.   22-50073 (JAM) |
| Debtor | Chapter   11 |
| | (Jointly Administered) |

## SUBPOENA FOR RULE 2004 EXAMINATION

To:   **DBS Bank Ltd.**
_____
*(Name of person to whom the subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Neubert, Pepe & Monteith, P.C.<br>195 Church Street, Floor 13<br>New Haven, Connecticut 06510 | **November 27, 2023** |

The examination will be recorded by this method:   **Court reporter/stenographer**

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**See Requests for Production of Documents, attached hereto.**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   **November 9, 2023**

CLERK OF COURT

OR

| | |
|---|---|
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, email address, and telephone number of the attorney representing Luc A. Despins, Chapter 11 Trustee, who issues or requests this subpoena, are:
**Patrick R. Linsey, Esq.; Neubert, Pepe & Monteith, P.C.; 195 Church Street, 13ᵗʰ Floor, New Haven, Connecticut 06510**
**plinsey@npmlaw.com; (203) 781-2847**

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

---

1 The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for (*name of individual and title, if any*): _____
on (*date*) _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

...

**(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed.R.Civ.P.45(a) Committee Note (2013)

<u>**Request for Production of Documents**</u>

## I.   <u>INSTRUCTIONS</u>

1.     Unless otherwise indicated, the requests for documents set forth below, (the "<u>Requests</u>," and each, a "<u>Request</u>"), must be responded to separately and specifically.  Each Request shall be answered fully unless it is in good faith objected to, in which event the reason for Your objection shall be stated in detail, as set forth below.  If an objection pertains only to a portion of a Request, or a word, phrase or clause contained within it, You are required to state Your objection to that portion only and to respond to the remainder of the Requests.

2.     Electronically stored information must be produced in accordance with the following instructions:

   a.   <u>Images.</u>  Black and white images must be 300 DPI Group IV single-page TIFF files. Color images must be produced in JPEG format.  File names cannot contain embedded spaces or special characters (including the comma). Folder names cannot contain embedded spaces or special characters (including the comma). All TIFF image files must have a unique file name, i.e. Bates number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image. The number of TIFF files per folder should not exceed 1000 files. Excel spreadsheets should have a placeholder image named by the Bates number of the file.

   b.   <u>Image Load File</u>

      a.   Concordance® Data File. The data file (.DAT) contains all of the fielded information that will be loaded into the Concordance® database. The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance® default delimiters: Comma ASCII character (020) Quote þ ASCII character (254). Date fields should be provided in the format: mm/dd/yyyy.  Date and time fields must be two separate fields. If documents includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file. For Documents with native files, a LINK field must be included to provide the file path and

1

name of the native file. The native file must be named after the FIRSTBATES.

b. Concordance Image® OR Opticon Cross-Reference File. The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,Box Break,PageCoun.

c. Document Text. Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. It is recommended document level ANSI text files, named per the FIRSTBATES/Image Key. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). Text files must be provided on a document level.

d. Native Production for Certain File Types. File types that reasonably require viewing in their native format for a full understanding of their content and meaning must be produced in native format. These include, but are not limited to, spreadsheets, spreadsheet-like files (Microsoft Excel, comma separated values, tab separated values, etc.), Microsoft PowerPoint or other special presentation files, database files, and audio/visual files. Provide an image of a Bates numbered slip sheet indicating the presence of a native file, and include the path to the native as a field in the .dat file. Name the produced native file with the Bates number corresponding to the slip sheet for the file. Group native files within incrementally named "NATIVE" directories, separate from images directories.

e. De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For email messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For email attachments and standalone electronic files, consolidate duplicates based on MD5 hash of the entire file.

f. Metadata. Produce extracted metadata for each document in the form of a Concordance compliant load file (.dat). The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance default delimiters: Comma , ASCII character (020) Quote þ ASCII character (254)
Date fields should be provided in the format: mm/dd/yyyy. Date and time fields must be two separate fields. Required metadata listed below:

2

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent Native: (empty) |
| TIME_SENT/ TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |

| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| --- | --- | --- |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$759770050$cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

3.      Each Request operates and should be construed independently and, unless otherwise indicated, no Request limits the scope of any other Request.

4.      All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in these Requests.

5.      Each Request contained herein extends to all Documents: (a) in Your possession, custody, or control; or (b) in the possession, custody, or control of anyone acting on Your behalf,

including Your counsel or other representatives and advisors. Each Document shall be produced in its entirety.

6.      If You are requested to produce a Document that is no longer in Your possession, custody, or control, then Your response must (a) describe in detail the nature of the document and its contents; (b) identify the person(s) who prepared or authored the Document (and, if applicable, the Person(s) to whom the Document was sent); (c) identify the date on which the document was prepared or created; (d) state whether such Document (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) was otherwise disposed of; (e) state the reason for, and the facts and circumstances surrounding, such disposition; (f) identify the Persons who authorized such disposition; (g) identify the date or approximate date of such disposition; (h) state when the Document was most recently in Your possession, custody or control; and (i) identify the Person, if any, presently in possession, custody, or control of such Document.

7.      If You are requested to produce a Document that has been destroyed, then Your response must state, in addition to the information required by the preceding Instruction: (a) the reason for the Document's destruction; (b) the identity of the Person who destroyed the Document; and (c) the identity of the Person who directed that the Document be destroyed.

8.      If You claim that a requested Document is privileged or attorney work-product, then Your response must: (a) state (i) a description of the Document adequate to support Your contention that the Document is privileged, (ii) the title of the Document, (iii) the date of the Document, (iv) the author of the Document, (v) the addressee of the Document, (vi) the identity of each Person who received or saw the original or any draft, copy, or reproduction of the Document, (vii) whether the Document itself, or any information contained or referred to in the Document is in the possession, custody, or control of any other Persons, and if so, the identity of

such Persons, as well as a statement addressing how the information came into their possession,
(viii) the claim of privilege under which the Document is withheld, and (ix) all of the circumstances
upon which You will rely to support such claim of privilege; and (b) produce a privilege log
containing all of the information requested in Part (a) of this Instruction for each Document
withheld on the basis of a claim of privilege in accordance with D. Conn. L. Civ. R. 26(e). For any
part of a Document Request as to which a claim of privilege or work product is not made,
responsive documents should be provided in full.

9.      If a portion of an otherwise responsive Document contains information subject to a
claim of privilege, only that portion of the Document subject to the claim of privilege shall be
deleted or redacted from the Document following the instructions above, and the rest shall be
produced.

10.      The Requests are continuing in nature. You are hereby instructed to (a) supplement
or correct any responses later learned to be incomplete or incorrect immediately upon learning that
a prior response was incomplete or incorrect; and (b) produce any additional Documents that are
called for under the

11.      If a Document is in a language other than English, You should provide that
Document.  If a Document is in a language other than English, and an English translation exists,
You should provide both Documents.

12.      All references to Entities includes all affiliates thereof.

13.      All references to individual names include all alternative names, aliased, or
nicknames.

14.     Unless otherwise expressly indicated, the period of time covered by the Document Requests is the period from February 5, 2012 to the date responses to the Document Requests are due.

## II.     RULES OF CONSTRUCTION

15.     The use of (a) any singular noun shall be construed to include the plural, and vice versa, and (b) a verb in any tense shall be construed as the use of the verb in all other tenses.

16.     The terms (a) "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of any request all responses that might otherwise be construed to be outside of its scope, and (b) "each" and "any" shall be deemed to include and encompass the words "every" and "all."

## III.     DEFINITIONS

The definitions supplied by D. Conn. L. Civ. R. 26(c) and the rules of construction supplied by D. Conn. L. Civ. R. 26(d), as incorporated by D. Conn. Bankr. L.R. 2004-1(a), shall apply to the Document Requests. In addition, the following terms used in these Document Requests shall have the following meanings:

1.     "You" or "Your" or "Yourself" means and refers, to DBS Bank Ltd., together with all of its affiliates.

2.     "Debtor" means Ho Wan Kwok (a/k/a Miles Kwok, Miles Guo, Guo Wengui, Guo Haoyun, 郭文贵, or any other alias), together with his employees, agents, counsel, advisors, or anyone acting on his behalf.

3.    "Debtor's Son" means Qiang Guo (a/k/a Mileson Kwok, 郭强, or any other alias), together with his employees, agents, counsel, advisors, or anyone acting on his behalf.

4.    "Debtor's Daughter" means Mei Guo (a/k/a Mei Gui, 郭美, or any other alias), together with her employees, agents, counsel, advisors, or anyone acting on her behalf.

5.    "Debtor's Purported Wife" means Hing Chi Ngok (a/k/a Hing Chi Ng, Yue Qingzhi, 岳庆芝, or any other alias), together with her employees, agents, counsel, advisors, or anyone acting on her behalf.

6.    "Debtor's Family" means, individually and collectively, the Debtor, the Debtor's Son, the Debtor's Daughter, and the Debtor's Purported Wife, and any other familial relation to the Debtor.

7.    "2004 Discovery Targets" means, individually and collectively, the Debtor, the Debtor's Family, ACA Capital Group Limited, Himalaya International Financial Group Ltd., Himalaya International Clearing Ltd., Himalaya International Payments Ltd., Himalaya International Reserves Ltd., Jesse Brown, William Je, William Je, Eastern Profit Corporation Limited, HK International Funds Investments (USA) Limited LLC, Bravo Luck Limited, Golden Spring (New York) Ltd., Lamp Capital LLC, Greenwich Land LLC, Qu Guo Jiao, Daniel Thomas Podhaskie, Yvette Wang (a/k/a Yanping Wang, a/k/a Yan Ping Wang), Ace Decade Holdings Limited, Dawn State Limited, Rule of Law Society IV Inc., Rule of Law Foundation III, Inc., Rule of Law Foundation IV, Inc., Rule of Law Fund, Rule of Law Society, GTV Media Group, Inc., Voice of Guo Media, Inc., Saraca Media Group Inc., Genever Holdings Corporation, Genever Holdings LLC, Gnews Media Group Inc., G Fashion LLC, Gmusic LLC, Gnews LLC, Geducation, GFNY, Inc., G-Club Investments Limited, G Club Operations LLC, G Club US Operations Inc., G Club US Operations LLC, G Live, LLC, Gbroadcast, LLC, Gposts LLC, HCHK Property

8

Management, Inc., HCHK Technologies, Inc., FMV Ltd./Freedom Media Venture Ltd., Roscalitar 2, Himalaya New World Inc., US Himalaya Capital Inc., Hudson Diamond Holding, Inc., Hudson Diamond Holding LLC, Hudson Diamond NY LLC, Infinity Treasury Management Inc., Lexington Property and Staffing, Inc., AI Group Holdings Inc., Hamilton Capital Holdings Inc., Booming Sail New York LLC, Himalaya Ventures LLC, Himalaya Ventures LLC, Himalaya Investment LLC, New York MOS Himalaya LLC, MOS Himalaya LLC, Crane Advisory Group, Maywind Trading LLC, Gettr USA, Inc., Han Chunguang, Bingshang Jiao, Karin Maistrello, Mary Jiang, Jiaming Liu, Wencong Wang, Anton Development Limited, and Hong Kong International Funds Investment Limited.

8.      "Including" or any variant thereof means "including without limitation."

9.      "And" and "or" mean "and/or," and shall be construed both conjunctively as well as disjunctively in order to maximize their scope.

10.     "Any" and "all" and "each" mean "each and every."

11.     "Each" and "every" mean "each and every."

12.     "Third Party" means a Person or Entity other than Yourself.

13.     "Transfer" shall have the meaning given to it by section 101(54) of the Bankruptcy Code.

14.     "Document" means any information or thing within the scope of Fed. R. Civ. P. 34, and includes, without limitation, each and every written, recorded, or graphic matter of any kind, type, nature, or description that is or has been in Your Possession, Custody or Control, including all printed and electronic copies of electronic mail, computer files maintained in electronic form, correspondence, memoranda, tapes, stenographic or handwritten notes, written forms of any kind,

9

charts, blueprints, drawings, sketches, graphs, plans, articles, specifications, diaries, letters, telegrams, photographs, minutes, contracts, agreements, surveys, computer printouts, data compilations of any kind, telexes, facsimiles, emails, text messages, instant messages, voice messages, invoices, order forms, checks, drafts, statements, credit memos, reports, position reports, summaries, indices, books, ledgers, notebooks, schedules, transparencies, recordings, catalogs, advertisements, promotional materials, films, video tapes, audio tapes, CDs, computer disks, brochures, pamphlets, punch-cards, time-slips, Tweets, social media posts, or any written or recorded materials of any other kind, and all meta-data thereof, however stored (whether in tangible or electronic form), recorded, produced, or reproduced, and also including but not limited to, drafts or copies of any of the foregoing that contain any notes, comments, or markings of any kind not found on the original documents or that are otherwise not identical to the original documents.

15.     "Person(s)" means an individual, corporation, proprietorship, partnership, association, or any other Entity. "Person" also includes any agent, representatives, or expert, including but not limiting to, attorneys or financial advisors.

16.     "Entity" means any natural Person, corporation, partnership, subsidiary, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic Person, as well as any affiliate, agent, parent including but not limited to counsel, financial advisors, or any other representative.

17.     "Regarding" means concerning, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to,

10

connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

18.    "Relating to," "relate(s) to" or "related to," when referring to any given subject matter, means, without limitation, any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

19.    "Communication(s)" means, in the broadest possible sense, and without limitation, any transmittal of information or knowledge (in the form of facts, ideas, inquiries, or otherwise). Communication(s) further refers to all conversations, agreements, inquiries, or replies, whether in person, by telephone, in writing, or by means of electronic transmittal devices, and includes, but is not limited to, all correspondence, emails, recordings, transmittal slips, memoranda, telephone communications, voice messages, telegrams, telefaxes, telecopies, telexes, instant messages, chats, text messages, postings to a message board or group chat, social media posts, tweets, videos uploaded to any video platform, telephonic notes, or notes transmitted internally or with third parties.

20.    "Asset(s)" means any item of economic value that is subject to Possession, Custody, or Control. Asset includes all real and personal property, including but limited to, real estate, land, houses, apartments, condominiums, automobiles, yachts, boats, planes, jets, helicopters, cash, bank accounts, cryptocurrencies, securities, accounts receivables, inventory, and other tangible and intangible property.

## IV.    DOCUMENTS TO BE PRODUCED

1.    All Documents related to any account held by, controlled by, on behalf of, or otherwise related to any of the 2004 Discovery Targets, including any and all account statements,

11

authorizations, power of attorney, trusts, instructions or forms, copies of cancelled checks, correspondence, and wire transfers and related correspondence and instructions.

2.      All Documents related to any funds, securities, property, or assets belonging to, held by, controlled by, on behalf of, or otherwise related to any of the 2004 Discovery Targets, including any and all account statements, authorizations, powers of attorney, trusts, instructions or forms, copies of cancelled checks, correspondence, and wire transfers and related correspondence and instructions.

3.      All Documents related to any business, commerce or financial transactions, including but not limited to any loan, line of credit, bailment, deposit, swap, securities transactions, mortgage, or ISDA, with any of the 2004 Discovery Targets, including any and all account statements, authorizations, powers of attorney, trusts, instructions or forms, copies of cancelled checks, correspondence, and wire transfers and related correspondence and instructions.

4.      All Documents relating to any wire transfer activity relating to the 2004 Discovery Targets, regardless of the existence of any accounts, including but not limited to all wire transfer receipts, account numbers, balances, authorizations, identification information related to the parties to the transfer, correspondence, instructions, or other records.

5.      All Documents related to any correspondence and communications between you and the 2004 Discovery Targets.

6.      All Documents related to any account with any 2004 Discovery Target relating to opening of the account, authorized users of the account and maintenance of the account.

7.      All Documents related to any anti-money laundering, know-your-customer, or other compliance activity relating to any of the 2004 Discovery Targets, including but not limited to any information provided by any of the 2004 Discovery Targets, or learned by You.

12

8.     All Documents relating to any communications with any regulator from any country, including but not limited to the Bank of England, the United States Federal Reserve, the S.E.C., the CFTC, FINRA, China Securities Regulatory Commission, People's Bank of China, Hong Kong Securities and Futures Commission, and the Hong Kong Monetary Authority relating to any of the 2004 Discovery Targets.

# EXHIBIT B

**CHASE PRIVATE CLIENT**
JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

April 01, 2016 through April 29, 2016

Primary Account: █████████████

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-888-994-5626 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |

00012900 DRE 602 141 12116 NNNNNNNNNNY T 1 000000000 61 0000
HO W KWOK
781 5TH AVE APT 1801
NEW YORK NY 10022-5520



**Please review your statements; ATM fees charged by other ATM owners may not automatically be refunded**

When you use non-Chase ATMs to access your account(s) ending in 6631, 1698 we refund the fees charged by other ATM owners up to five times each monthly statement period. Sometimes ATM owners do not identify their fee to us, so we aren't able to automatically refund it.

For example, if you withdraw $100 from a non-Chase ATM and there is a $3 charge from the ATM owner, you should see $103 subtracted from your account, followed by $3 added back by Chase. If you don't see a refund for up to five non-Chase ATM transactions each statement period, please contact us so we can adjust your account.

████████████████████████████████████████

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Private Client Checking | ████████ | $421,080.71 | $7,333.75 |
| Chase Private Client Savings | ████████ | 2,602,525.50 | 2,668.00 |
| Total | | $3,023,606.21 | $10,001.75 |

| | | | |
|---|---|---|---|
| **TOTAL ASSETS** | | $3,023,606.21 | $10,001.75 |

All Summary Balances shown are as of April 29, 2016 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

SB1369247-F2

490

**CHASE PRIVATE CLIENT**

April 01, 2016 through April 29, 2016
Primary Account:

HO W KWOK                                                    Account Number:

## CHECKING SUMMARY

|  | AMOUNT |
|---|---|
| Beginning Balance | $421,080.71 |
| Deposits and Additions | 2,600,002.57 |
| Checks Paid | - 213,749.53 |
| Electronic Withdrawals | - 2,800,000.00 |
| Ending Balance | $7,333.75 |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $2.57 |
| Interest Paid Year-to-Date | $4.96 |

## CHECKS PAID

| CHECK NUMBER | DATE PAID | AMOUNT |
|---|---|---|
| 1124 ^ | 04/08 | $2,591.07 |
| 1125 ^ | 04/08 | 1,252.27 |
| 1126 ^ | 04/01 | 58,957.50 |
| 1128 * ^ | 04/04 | 100,000.00 |
| 1129 ^ | 04/05 | 335.00 |
| 1130 ^ | 04/08 | 3,081.92 |
| 1131 ^ | 04/08 | 655.77 |
| 1132 ^ | 04/25 | 42,180.00 |
| 1134 * ^ | 04/29 | 3,965.00 |
| 1135 ^ | 04/25 | 731.00 |
| **Total Checks Paid** | | **$213,749.53** |

If you see a check description in the Transaction Detail section, it means your check has already been converted for electronic payment. Because of this, we're not able to return the check to you or show you an image on Chase.com.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | | AMOUNT | BALANCE |
|---|---|---|---|---|
| | Beginning Balance | | | $421,080.71 |
| 04/01 | Check | # 1126 | - 58,957.50 | 362,123.21 |
| 04/04 | Check | # 1128 | - 100,000.00 | 262,123.21 |
| 04/05 | Check | # 1129 | - 335.00 | 261,788.21 |
| 04/08 | Check | # 1130 | - 3,081.92 | 258,706.29 |
| 04/08 | Check | # 1124 | - 2,591.07 | 256,115.22 |
| 04/08 | Check | # 1125 | - 1,252.27 | 254,862.95 |
| 04/08 | Check | # 1131 | - 655.77 | 254,207.18 |
| 04/25 | Check | # 1132 | - 42,180.00 | 212,027.18 |

Page 2 of 4

SB1369247-F2

491



**CHASE PRIVATE CLIENT**

April 01, 2016 through April 29, 2016

Primary Account: ███████

## TRANSACTION DETAIL *(continued)*



| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 04/25 | Check     # 1135 | - 731.00 | 211,296.18 |
| 04/26 | Transfer From Sav Xxxxxx1698 | 2,000,000.00 | 2,211,296.18 |
| 04/26 | Transfer From Sav Xxxxxx1698 | 600,000.00 | 2,811,296.18 |
| 04/27 | 04/27 International Wire Debit A/C: Dbs Bank Hong Kong Ltd Hong Kong Hong Kong Ref:/Cct/Inhxhlm200Hf Trn: 4973600117Es | - 2,800,000.00 | 11,296.18 |
| 04/29 | Check     # 1134 | - 3,965.00 | 7,331.18 |
| 04/29 | Interest Payment | 2.57 | 7,333.75 |
| | **Ending Balance** | | **$7,333.75** |

### CHASE PRIVATE CLIENT SAVINGS

HO W KWOK

Account Number: ███████

## SAVINGS SUMMARY

| | AMOUNT |
|--|--|
| Beginning Balance | $2,602,525.50 |
| Deposits and Additions | 142.50 |
| Electronic Withdrawals | - 2,600,000.00 |
| Ending Balance | $2,668.00 |
| | |
| Annual Percentage Yield Earned This Period | 0.08% |
| Interest Paid This Period | $142.50 |
| Interest Paid Year-to-Date | $745.39 |

The monthly service fee for this account was waived as an added feature of Chase Private Client Checking account.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| | Beginning Balance | | $2,602,525.50 |
| 04/26 | 04/26 Transfer To Chk Xxxxx6631 | - 2,000,000.00 | 602,525.50 |
| 04/26 | 04/26 Transfer To Chk Xxxxx6631 | - 600,000.00 | 2,525.50 |
| 04/29 | Interest Payment | 142.50 | 2,668.00 |
| | **Ending Balance** | | **$2,668.00** |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

*Page 3 of 4*

**SB1369247-F2**

492



**CHASE PRIVATE CLIENT**

April 01, 2016 through April 29, 2016

Primary Account 

---

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

JPMorgan Chase Bank, N.A. Member FDIC

---

Page 4 of 4



**CHASE PRIVATE CLIENT**
JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

November 01, 2016 through November 30, 2016
Primary Account: ███████████████

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-888-994-5626 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |

00015425 DRE 802 141 33618 NNNNNNNNNNN T 1 000000000 61 0000
HO W KWOK
781 5TH AVE APT 1801
NEW YORK NY 10022-5520



### We've updated your deposit agreement regarding transactions in a foreign currency

Effective November 13, 2016, we've updated the Deposit Account Agreement to clarify how we determine the exchange rate for transactions in a foreign currency. See the foreign transaction sections of the General Terms and Electronic Funds Transfer Service Terms for details. You can get the latest Deposit Account Agreement online at chase.com, at a branch or by request when you call us.

If you have any questions, please visit any Chase branch.

███████████████████████████████

## ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Private Client Checking | | $55,200.81 | $55,175.34 |
| Chase Private Client Savings | ███████████ | 2,668.41 | 402,679.91 |
| **Total** | | **$57,869.22** | **$457,855.25** |

| | | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| **TOTAL ASSETS** | | **$57,869.22** | **$457,855.25** |

All Summary Balances shown are as of November 30, 2016 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

Page 1 of 4



CHASE PRIVATE CLIENT

November 01, 2016 through November 30, 2016

Primary Account ███████

HO W KWOK                                                    Account Number: ███████

## CHECKING SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $55,200.81 |
| Deposits and Additions | 399,974.53 |
| Other Withdrawals | -400,000.00 |
| Ending Balance | $55,175.34 |

| | |
|---|---|
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $1.53 |
| Interest Paid Year-to-Date | $10.22 |

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $55,200.81 |
| 11/08 | Book Transfer Credit B/O: Dbs Bank Hong Kong Ltd Hong Kong Hong Kong Org:/4714921830 Anton Development Limited Ref:/Chgs/USD27.00/Acc/Chase 3SE 72ND Street, New York, NY 10021 Chasus33 United State S Trn: 7168593313Je | 399,973.00 | 455,173.81 |
| 11/18 | 11/18 Transfer To Sav Xxxxxx1698 | - 400,000.00 | 55,173.81 |
| 11/30 | Interest Payment | 1.53 | 55,175.34 |
| | Ending Balance | | $55,175.34 |

HO W KWOK                                                    Account Numbe ███████

## SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $2,668.41 |
| Deposits and Additions | 400,011.50 |
| Ending Balance | $402,679.91 |

| | |
|---|---|
| Annual Percentage Yield Earned This Period | 0.08% |
| Interest Paid This Period | $11.50 |
| Interest Paid Year-to-Date | $757.30 |

The monthly service fee for this account was waived as an added feature of Chase Private Client Checking account.

Page 2 of 4

SB1369247-F2

530

**CHASE PRIVATE CLIENT**

November 01, 2016 through November 30, 2016

Primary Account: ▮▮▮▮▮▮▮

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| | Beginning Balance | | $2,668.41 |
| 11/18 | Transfer From Chk Xxxxx6631 | 400,000.00 | 402,668.41 |
| 11/30 | Interest Payment | 11.50 | 402,679.91 |
| | Ending Balance | | $402,679.91 |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

---

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 JPMorgan Chase Bank, N.A. Member FDIC

---

Page 3 of 4



CHASE PRIVATE CLIENT

November 01, 2016 through November 30, 2016
Primary Account: █████████████

This Page Intentionally Left Blank

Page 4 of 4

**CHASE PRIVATE CLIENT**
JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

December 01, 2016 through December 30, 2016
Primary Account: ███

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-888-994-5626 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |

00029070 DRE #02 141 00117 NNNNNNNNNN T 1 000000000 61 0000
HO W KWOK
781 5TH AVE APT 1801
NEW YORK NY 10022-5520



### CONSOLIDATED BALANCE SUMMARY

**ASSETS**

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Private Client Checking | | $55,175.34 | $205,360.75 |
| Chase Private Client Savings | | 402,679.91 | 2,686.13 |
| Total | | $457,855.25 | $208,046.88 |

| TOTAL ASSETS | | $457,855.25 | $208,046.88 |
|---|---|---|---|

All Summary Balances shown are as of December 30, 2016 unless otherwise stated.  For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

### CHASE PRIVATE CLIENT CHECKING

HO W KWOK                                                                    Account Number: ███

### CHECKING SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $55,175.34 |
| Deposits and Additions | 3,200,185.41 |
| Electronic Withdrawals | -3,000,000.00 |
| Other Withdrawals | -50,000.00 |
| Ending Balance | $205,360.75 |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $13.19 |
| Interest Paid Year-to-Date | $23.41 |

Page 1 of 4



**CHASE PRIVATE CLIENT**

December 01, 2016 through December 30, 2016
Primary Account: ███████

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $55,175.34 |
| 12/07 | 12/07 Transfer To Chk Xxxxxx3011 | - 50,000.00 | 5,175.34 |
| 12/14 | Foreign Remittance Credit B/O: Fx USD Outgoingfedchipsdda Newark DE 19713- Org: Ordering Bank Chasdefxxxxx Christodoulos G Vassiliades And CO Ogb: Chase IN Account (Incoming) 270 Park Avenue Ref: Return of Funds Jpv161213-000299 Jpv161213-000299 Jpv161213-000299/Ocm T/USD3200172.22/Bnf/Eur3017607/Prod Uct/Fx Trn: 0755190349Fx | 3,200,172.22 | 3,205,347.56 |
| 12/29 | 12/29 International Wire Debit A/C: Dbs Bank Hong Kong Ltd Hong Kong Hong Kong Ref:/Ccf/Ixaq7Hj00MO/Bnf/Bank Code 016 Branch Code 494 Trn: 4931600364Es | - 3,000,000.00 | 205,347.55 |
| 12/30 | Interest Payment | 13.19 | 205,360.75 |
| | Ending Balance | | $205,360.75 |

HO W KWOK

Account Number ███████

## SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| Beginning Balance | $402,679.91 |
| Deposits and Additions | 6.22 |
| Electronic Withdrawals | -400,000.00 |
| Ending Balance | $2,686.13 |
| | |
| Annual Percentage Yield Earned This Period | 0.08% |
| Interest Paid This Period | S6.22 |
| Interest Paid Year-to-Date | S763.52 |

The monthly service fee for this account was waived as an added feature of Chase Private Client Checking account.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $402,679.91 |
| 12/08 | 12/08 Wire Transfer A/C: Genever Holdings LLC New York, NY 101530023 Trn: 4805900343Es | - 400,000.00 | 2,679.91 |
| 12/30 | Interest Payment | 6.22 | 2,686.13 |
| | Ending Balance | | $2,686.13 |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

Page 2 of 4



**CHASE PRIVATE CLIENT**

December 01, 2016 through December 30, 2016
Primary Account ██████████



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

JPMorgan Chase Bank, N.A. Member FDIC

Page 3 of 4

SB1369247-F2

535

**CHASE PRIVATE CLIENT**

December 01, 2016 through December 30, 2016
Primary Account ████████████

This Page Intentionally Left Blank

Page 4 of 4

SB1369247-F2

CHASE PRIVATE CLIENT
JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

February 01, 2017 through February 28, 2017
Account Number:

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-888-994-5626 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |

00013467 DRE 802 141 06917 NNNNNNNNNNN T 1 000000000 61 0000
HO W KWOK
781 5TH AVE APT 1801
NEW YORK NY 10022-5520



## CHECKING SUMMARY | Chase Private Client Checking

| | AMOUNT |
|---|---|
| Beginning Balance | $205,362.52 |
| Deposits and Additions | 2,686.95 |
| Electronic Withdrawals | -208,048.75 |
| Ending Balance | $0.72 |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.72 |
| Interest Paid Year-to-Date | $2.49 |

Interest paid in 2016 for account ▓▓▓▓▓▓ was $23.41.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $205,362.52 |
| 02/14 | Transfer From Sav Xxxxxx1698 | 2,686.23 | 208,048.75 |
| 02/14 | 02/14 International Wire Debit A/C: Dba Bank Hong Kong Ltd Hong Kong Hong Kong Ref./Cct/Iz5Yg6Yg00J4 Jp/Bnf/Recipient Name: Hong Kong International Funds Investment Limite D Trn: 4895300045Es | -208,048.75 | 0.00 |
| 02/28 | Interest Payment | 0.72 | 0.72 |
| | Ending Balance | | $0.72 |

Page 1 of 2



**CHASE PRIVATE CLIENT**

February 01, 2017 through February 28, 2017

Account Number: ███████████

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

JPMorgan Chase Bank, N.A. Member FDIC

Page 2 of 2

SB1369247-F2

542

# EXHIBIT C



**From:** Robert E WARD <roberteward@dbs.com>
**Date:** November 15, 2023 at 8:15:10 PM EST
**To:** Patrick Linsey <plinsey@npmlaw.com>
**Cc:** Kari Mitchell <kmitchell@npmlaw.com>
**Subject: RE: Subpoena For Rule 2004 Examination:  Request for Production of Documents (Ho Wan Kwok, et. al. ) Case No. 22-50073 (JAM) Chapter 11**

**Caution:** External Email. Verify you know the sender before clicking a Link.

Dear Mr. Linsey and Ms. Mitchell:

Our response to the Subpoena has been diligent, professional and prompt. The cooperation on this issue has been clear. We received the Subpoena, acknowledged its receipt, engaged in a detailed search of the records in our possession, and promptly provided the results of our investigation.

Due to privacy laws governing customer account and records, we would be unable to search any location other than the Los Angeles Representative Office even if we had customer account numbers, names, and details for each entity, which as you know is not in our possession.

DBS Bank Ltd is a global financial institutions with branch offices in 17 different jurisdictions around the world.  Each location has it own set of local laws, policies, and statutes which govern their respective operations. The DBS Bank Los Angeles Representative Office has no authority or control over any DBS Bank location outside the United States. Each jurisdiction is regulated by a banking regulator and licensing entity which regularly examines and audits the operations of each location for strict compliance.

We can certify the results of the examination of the records located in the DBS Bank Ltd, Los Angeles Representative Office and my prior responses regarding the Subpoena served on us have done so.

Sincerely,

Robert E Ward
General Counsel
DBS Bank Ltd, Los Angeles Representative Office
Los Angeles, CA 90071

**From:** Patrick Linsey <plinsey@npmlaw.com>
**Sent:** Tuesday, November 14, 2023 12:40 PM
**To:** Robert E WARD <roberteward@dbs.com>
**Cc:** Kari Mitchell <kmitchell@npmlaw.com>
**Subject:** [External] Re: Subpoena For Rule 2004 Examination: Request for Production of Documents (Ho
Wan Kwok, et. al. ) Case No. 22-50073 (JAM) Chapter 11

> This mail originated from an **external** party outside DBS - plinsey@npmlaw.com.
> Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Thanks for your response. The Trustee disagrees that DBS is not responsible to search beyond accounts
it associates with its Los Angeles representative office. To be clear, the Trustee has requested to meet
and confer — which it is the Trustee's obligation to seek to do under our local rules prior to filing a
motion to compel. My takeaway from your response is that DBS declines to meet and confer regarding
this matter. Please correct me if I'm wrong. Otherwise we will address the issue with the Court. Thank
you.

Sincerely,

Patrick Linsey

On Nov 14, 2023, at 12:33 PM, Robert E WARD <roberteward@dbs.com> wrote:

**Caution:** External Email. Verify you know the sender before clicking a Link.

Dear Mr. Linsey

I am General Counsel of DBS Bank Ltd, Los Angeles Representative Branch. I performed
a diligent search of our records (as required by the subpoena).

As the subpoena for the production of records was served at the Los Angeles
Representative Office, I performed a diligent and detailed search of the records for this
office and provided a response to you in a timely manner.

DBS Bank Ltd is a global financial institution with locations across the globe. As you can
imagined, it is impossible for me to provide any form of response other than one related
to this office. Legally, I am custodian only for the records in this office and have fulfilled
my obligations as custodian of such records and provided a prompt reply.

If the Bankruptcy Trustee seeks to obtain banking records outside the United States, I
am sure counsel to the Trustee will be able to pursue ways to engage in that process. I
have no way of knowing if there are accounts for the subject at any of DBS Bank Ltd

2

global locations. I am only able to provide a response for the DBS Bank Ltd, Los Angeles Representative Office and a search of records at this location (where the subpoena was served) has been conducted and results of the investigation disclosed to you.

Regards,

Robert E Ward
General Counsel
DBS Bank Ltd, Los Angeles Representative Office
300 South Grand Avenue
Suite 3075
Los Angeles, CA 90071

**From:** Patrick Linsey <plinsey@npmlaw.com>
**Sent:** Tuesday, November 14, 2023 5:23 AM
**To:** Robert E WARD <roberteward@dbs.com>
**Cc:** Kari Mitchell <kmitchell@npmlaw.com>
**Subject:** [External] Re: Subpoena For Rule 2004 Examination: Request for Production of Documents (Ho Wan Kwok, et. al. ) Case No. 22-50073 (JAM) Chapter 11

This mail originated from an external party outside DBS - plinsey@npmlaw.com.
Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Dear Mr. Ward —

I suggest that we should meet and confer regarding this matter. If the issue is that there are accounts at DBS Bank Ltd. (as the Trustee understands there are from his forensic accountants), but DBS declines to provide responsive documents because it views the accounts as not specifically associated with the Los Angeles branch (or declines to search its records beyond those it considers associated with the Los Angeles branch), the Trustee would like to be clear on that. To be clear, the Trustee's subpoena is intended to cover any accounts maintained at DBS Bank Ltd. regardless of what DBS considers to be the associated branch. I would also like to discuss the basis for the Trustee's understanding that there are responsive accounts maintained at DBS.

Please let us know your availability to meet and confer regarding the foregoing later this week. Thank you.

Best,

Pat

On Nov 13, 2023, at 3:46 PM, Robert E WARD <roberteward@dbs.com> wrote:

**Caution:** External Email. Verify you know the sender before clicking a Link.

Dear Mr. Linsey:

I am the General Counsel of DBS Bank Ltd, Los Angeles Representative Office located at 300 South Grand Avenue, Suite 3075 , Los Angeles, CA 90071, and I am writing to acknowledge the receipt of the Subpoena for Rule 2004 Examinations for the United States Bankruptcy Court, District of Connecticut in the matter entitled "In re Ho Wan Kwok, et. al" in connection with a Chapter 11 Bankruptcy case titled Case No. 22-500073 (JAM), and the "Requests for Production of Documents" attached to the Subpoena.

We acknowledge receipt of the Subpoena served at the offices of DBS Bank Ltd on November 13, 2023.

As custodian of the official records for DBS Bank Ltd, Los Angeles Representative Office, I have carefully examined the Instructions for the Request for Production of Documents and in particular Part III (Definitions), Section 7 ("2004 Discovery Targets") and the (individual and collective) list of the "2004 Discovery Targets" including the Debtor and the Debtor's Family. I have paid close attention to Section IV "Documents to be Produced" subsections 1 through 8, which provides a list of documents to be produced pursuant to the Subpoena and in connection with the Debtor, Debtor's Family, and the 2004 Discovery Targets.

I have carefully examined the official records and files of the DBS Bank Ltd, Los Angeles Representative Office with regard to the referenced matter. The results of my examination revealed no files, records, or documents (of any kind) under the name of the Debtor or any of the "2004 Discovery Targets". As stated hereinabove, I used the "Request for Production of Documents" as my guide and included all definitions listed in Section III ("Definitions") of the Request for Production of Documents as a reference point throughout my examination.

Based on the foregoing, I can confirm that after a thorough examination of our files and records, no documents, records, or files have been found in connection with this matter. Should you desire some other form of reply other than an electronic response, please advise. The Subpoena documents did not contain a form of affidavit to verify the results of our examination, therefore I am sending this electronic response as promptly as time permits.

Given the foregoing, I ask that you withdraw your request for DBS Bank Ltd to appear at your offices at Neubert, Pepe & Monteith, P. C. in New Haven, CT on November 27, 2023 to provide testimony in connection with this matter.

Sincerely,

Robert E Ward

General Counsel
DBS Bank Ltd, Los Angeles Representative Office
300 South Grand Avenue
Suite 3075
Los Angeles, CA 90071
(213) 627-0222
roberteward@dbs.com

**CONFIDENTIAL NOTE:**

The information contained in this email is intended only for the use of
the individual or entity named above and may contain information that
is privileged, confidential and exempt from disclosure under applicable
law. If the reader of this message is not the intended recipient, you are
hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this message
in error, please immediately notify the sender and delete the mail.
Thank you.


**CONFIDENTIAL NOTE:**

The information contained in this email is intended only for the use of the individual or
entity named above and may contain information that is privileged, confidential and
exempt from disclosure under applicable law. If the reader of this message is not the
intended recipient, you are hereby notified that any dissemination, distribution or
copying of this communication is strictly prohibited. If you have received this message in
error, please immediately notify the sender and delete the mail. Thank you.


**CONFIDENTIAL NOTE:**

The information contained in this email is intended only for the use of the individual or entity named
above and may contain information that is privileged, confidential and exempt from disclosure under
applicable law. If the reader of this message is not the intended recipient, you are hereby notified that
any dissemination, distribution or copying of this communication is strictly prohibited. If you have
received this message in error, please immediately notify the sender and delete the mail. Thank you.



**From:** Lauren T. Astone <lastone@npmlaw.com>
**Sent:** Tuesday, September 19, 2023 3:20 PM
**To:** Patrick Linsey <plinsey@npmlaw.com>; Dennis Carnelli <dcarnelli@npmlaw.com>
**Subject:** Fwd: Subpoena for Rule 2004 Examination in RE to HO Wan Kwok

Pat and Dennis,

Please see below email chain regarding DBS Bank.

Thanks,
Lauren

---

**From:** Doug Skalka <DSkalka@npmlaw.com>
**Sent:** Tuesday, September 19, 2023 3:15 PM
**To:** Lauren T. Astone <lastone@npmlaw.com>
**Subject:** FW: Subpoena for Rule 2004 Examination in RE to HO Wan Kwok

fyi

Douglas S. Skalka
tel 203.781.2845 | fax 203.821.2009
195 Church Street, 13th Floor, New Haven, CT 06510
Hartford | Fairfield | White Plains | npmlaw.com



**From:** Robert E WARD <roberteward@dbs.com>
**Sent:** Tuesday, September 19, 2023 3:02 PM

1

**To:** laspone@npmlaw.com
**Cc:** Doug Skalka <DSkalka@npmlaw.com>
**Subject:** Subpoena for Rule 2004 Examination in RE to HO Wan Kwok

**Caution:** External Email. Verify you know the sender before clicking a Link.

**From:** Silvia RAMIREZ <silviaramirez@dbs.com>
**Sent:** Tuesday, April 18, 2023 2:54 PM
**To:** Robert E WARD <roberteward@dbs.com>
**Cc:** Aik Lim KOK <aiklim@dbs.com>; Joseph BOURASSA <josephbourassa@dbs.com>; Sunanta CHUATRAKUL <sunantactk@dbs.com>
**Subject:** Served Documents: Subpoena for Rule 2004 Examination in RE to HO Wan Kwok

Dear Attorney Lauren Aspone:

I am following up on our phone call from earlier this month regarding a subpoena for Ho Wan Kwok, US Bankruptcy Court case no. 22-50073, Chapter 11.

My apologies for the delay in this response. After researching our files, we are able to confirm that the attached subpoena was received in our office and our files underwent a diligent search in connection with the documents requested under Section 4, parts 1-8, from the date of February 5, 2012 to the present. Our research did not produce any communication or documents for the entities listed in the subpoena.

As I discussed on the phone with you in late August, DBS Bank Ltd is licensed by the State of California as a representative office for DBS Bank Ltd, and as such we maintain no customer bank accounts, bank loans, deposits, or retail banking activity from the Los Angeles Representative Office. While we hold no accounts for customers or corporate entities, we still undertake a search of our files with our Operations Department upon receipt of a request via a subpoena and confirm the results of our search.

In this case, it appears that there may have been a failed attempt to send a reply via e mail to Mr. Skalka at your firm. Our IT Department is looking into that for us now for confirmation and a report of what happened.

While this response is delayed, I wanted to follow up with you to confirm that we received the subpoena and searched our files as requested but found no evidence of any communication or documents requested under the subpoena.

Best Regards,

**Robert E Ward**
General Counsel
Legal & Compliance Department
DBS Bank Los Angeles Representative Office
Office 213 627 0222 xt 0 | Mobile 213 500-5863 | Fax 213 627 0228
roberteward@dbs.com
**DBS. Live more, Bank less**



**CONFIDENTIAL NOTE:**

The information contained in this email is intended only for the use of the individual or entity named above and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete the mail. Thank you.