**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                              :

| | |
|---|---|
| In re: | :    Chapter 11 |
| | : |
| HO WAN KWOK *et al.*, | :    Case No. 22-50073 (JAM) |
| | : |
| Debtors.[1] | :    Jointly Administered |
| | : |

-------------------------------------------------------x

**NOTICE OF CHAPTER 11 TRUSTEE AND GENEVER DEBTORS REGARDING**
**DEBTOR'S RENEWED MOTION IN CRIMINAL CASE FOR AN ORDER STAYING**
**THESE CHAPTER 11 CASES AND RELATED ADVERSARY PROCEEDINGS**

By notice dated August 30, 2023 [Docket No. 2158], Luc A. Despins, as chapter 11

trustee (the "Trustee") for Ho Wan Kwok (the "Debtor"), informed this Court and parties in

interest that the Debtor had filed a motion (the "Stay Motion") in the criminal case [Case No.

1:23-cr-00118-AT] (the "Criminal Case") pending against him in the United States District Court

for the Southern District of New York (the "SDNY District Court") seeking to stay the above-

captioned chapter 11 cases and all related adversary proceedings.

By notice dated September 27, 2023, the Trustee, Genever Holdings LLC ("Genever

BVI"), and Genever Holdings Corporation ("Genever US" and, together with Genever BVI, the

"Genever Debtors") provided an update to the Court and parties in interest, attaching the

responses to Stay Motion filed by (i) the United States Department of Justice, (ii) the Chapter 11

Trustee and the Genever Debtors, and (iii) The Sherry-Netherland, Inc., as well as the joinder of

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

the official committee of unsecured creditors in the response filed by the Trustee and the Genever Debtors.

By notice dated December 21, 2023, the Trustee and the Genever Debtors provided a further update to the Court and parties in interest, attaching the order of the SDNY District Court denying the Stay Motion.

The Trustee and the Genever Debtors wish to provide a further update that, on January 4, 2024, the Debtor filed a renewed motion to stay these chapter 11 cases [Criminal Case ECF No. 218] (the "Renewed Stay Motion"). A copy of the Renewed Stay Motion (including the related memorandum of law and supporting declaration) is attached hereto as **Exhibit 1**.

The relief sought by the Debtor in the Renewed Motion is based, in part, on the Trustee's motion [ECF No. 2420] (the "Privileges Motion") for an order authorizing the Trustee to (a) use potentially privileged documents in the Trustee's adversary proceeding pending against Mei Guo [Adv. Proc. No. 23-5008] (the "Bombardier Adversary Proceeding") without waiving privilege or, alternatively, (b) to waive the Trustee's privilege on matters related to the Bombardier Global XRS aircraft and its sale proceeds.

As the Court knows, since the filing of the Privileges Motion, the Trustee has filed a motion for summary judgment in the Bombardier Adversary Proceeding [ECF No. 88 in Bombardier Adversary Proceeding] (the "Summary Judgment Motion"), which motion did **not** use or seek to use any privileged information. The Trustee expects that the Court will not rule on the Privileges Motion until after a ruling on the Summary Judgment Motion, and then only if the Court denies such motion. If the Summary Judgment Motion is granted, no trial will be necessary in the Bombardier Adversary Proceeding, thereby mooting the Privileges Motion. If the Summary Judgment Motion is not granted, then the Trustee will later decide as he prepares

2

for trial whether and to what extent he needs to use the potentially privileged documents that are the subject of the Privileges Motion.

The District Court entered an order on January 5, 2024 [Criminal Case ECF No. 221], providing that the United States and the Trustee have until January 19, 2024 to file their opposition to the Renewed Stay Motion, and the Trustee will avail himself of this opportunity to object to such motion.

Dated:     January 8, 2024
           New York, New York

By: */s/ G. Alexander Bongartz*
Avram E. Luft (admitted *pro hac vice*)
G. Alexander Bongartz (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
aviluft@paulhastings.com
alexbongartz@paulhastings.com

    *and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

    *and*

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for the Chapter 11 Trustee, Genever
Holdings LLC, and Genever Holdings
Corporation*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
:
In re:                                      :    Chapter 11
:
HO WAN KWOK, *et al.*,[1]                    :    Case No. 22-50073 (JAM)
:
                    Debtors.                 :    (Jointly Administered)
:
-------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 8, 2024, the foregoing Notice was

electronically filed.  Notice of this filing was sent by e-mail to all parties to the above-captioned

chapter 11 case by operation of the Court's electronic filing ("CM/ECF") system or by mail to

anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties

may access this filing through the Court's CM/ECF system.

Dated:    January 8, 2024
          New York, New York

                              By: */s/ G. Alexander Bongartz*
                              G. Alexander Bongartz (admitted pro hac vice)
                              PAUL HASTINGS LLP
                              200 Park Avenue
                              New York, New York 10166
                              (212) 318-6079
                              alexbongartz@paulhastings.com

                              *Counsel for the Chapter 11 Trustee, Genever*
                              *Holdings LLC, and Genever Holdings*
                              *Corporation*

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The
mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul
Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho
Wan Kwok (solely for purposes of notices and communications).

**Exhibit 1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

HO WAN KWOK,

*Defendant.*

Case No. 1:23-CR-118-1 (AT)

**NOTICE OF RENEWED**
**MOTION TO STAY**
**BANKRUPTCY CASES AND**
<u>**MOTION FOR RECONSIDERATION**</u>

<u>**ORAL ARGUMENT REQUESTED**</u>

Defendant Ho Wan Kwok, through counsel, respectfully (i) submits a renewed motion for an order and writ staying the bankruptcy cases captioned *In re Ho Wan Kwok, et al.*, Case No. 22-50073(JAM) (Bankr. D. Conn.) (Jointly Administered), and all related cases (the "Bankruptcy Cases"), and (ii) moves the Court, pursuant to Local Criminal Rule 49.1, for reconsideration of the Court's order (Dkt. No. 204) denying Mr. Kwok's prior motion to stay the Bankruptcy Cases (Dkt. No. 131).

Defendant moves upon the Declaration of Matthew S. Barkan, Esq., the exhibits annexed thereto, the accompanying Memorandum of Law, and all prior papers and proceedings had herein.

Defendant respectfully requests oral argument on this motion.

Dated: January 4, 2023
   New York, New York

Respectfully submitted,

Sidhardha Kamaraju
E. Scott Schirick
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

skamaraju@pryorcashman.com
sschirick@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490

*Attorneys for Defendant Ho Wan Kwok*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                *Plaintiff,*

      v.

HO WAN KWOK,

                *Defendant.*

**FILED PARTIALLY UNDER SEAL**

Case No. 1:23-CR-118-1 (AT)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S RENEWED MOTION FOR A STAY**
**AND MOTION FOR RECONSIDERATION**

Sidhardha Kamaraju
E. Scott Schirick
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
sschirick@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490

*Attorneys for Defendant Ho Wan Kwok*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

RELEVANT BACKGROUND ...........................................................................................3

    I.  The Trustee's Attempts to Secure Victim Funds ...........................................................4

    II.  The Himalaya Exchange Funds Overlap and Dispute ...................................................5

    III. The Trustee's Active Efforts To Erode Mr. Kwok's Attorney-Client Privilege ...........7

    IV. The Court's Decision and Order Denying the Stay Motion .........................................8

    V.  The January 3, 2024 Superseding Indictment ...............................................................8

ARGUMENT .....................................................................................................................10

    I.  Applicable Law ..........................................................................................................10

    II.  Discussion ................................................................................................................10

        A.  New Evidence Undermines The Court's Finding That There Was Only Limited Overlap Between the Cases ...................................................................................10

           (1) The Overlap Of Determinations Regarding Customer Assets ........................11

           (2) The Overlap as to Mr. Kwok's Attorney-Client Privilege..............................16

CONCLUSION ..................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Corines v. Am. Physicians Ins. Tr.*,
    769 F. Supp. 2d 584 (S.D.N.Y. 2011)......................................................................10

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d. Cir. 2012).............................................................................8, 11

*Schoolcraft v. City of New York*,
    298 F.R.D. 134 (S.D.N.Y. 2014) ..........................................................................10

*Trustees of Plumbers & Pipefitters Nat. Pension Fund. v. Transworld Mech., Inc.*,
    886 F. Supp. 1134 (S.D.N.Y. 1995).......................................................................16

*United States v. Lisi*,
    No. 15-cr-457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ....................................10

*United States v. Yalincak*,
    853 F.3d 629 (2d Cir. 2017)................................................................................14

**Statutes and Rules**

Fed. R. Crim. P. 16(b)............................................................................................16

Fed. R. Crim. P. 41(g)..............................................................................................5

Local Criminal Rule 49.1....................................................................................1, 10

Defendant Ho Wan Kwok respectfully submits this memorandum of law in support of (i) his renewed motion to stay the bankruptcy proceedings captioned *In re Ho Wan Kwok, et al.*, Case No. 22-50073 (JAM) (Bankr. D. Conn.) (Jointly Administered), and its related cases (collectively, the "Bankruptcy Cases"), and (ii) his motion, pursuant to Local Criminal Rule 49.1, for reconsideration of this Court's order (Dkt. No. 204, the "Order") denying his prior motion to stay the Bankruptcy Cases (Dkt No. 131, the "Stay Motion").

## PRELIMINARY STATEMENT

In its Order, the Court found that there was insufficient overlap between the Bankruptcy Cases and this case to support a stay. Since Mr. Kwok filed his original Stay Motion, however, significant developments in this case and the Bankruptcy Cases warrant the Court's revisiting of its Order and granting Mr. Kwok's request to stay the Bankruptcy Cases.

*First*, just yesterday, over nine months after first charging Mr. Kwok and just three months before trial, the government filed a new superseding Indictment (the "Indictment") that transforms this purported "fraud case," to borrow the government's tired mantra, into a purported racketeering case. Even setting aside the government's strained reading of the RICO statute, the fact is that the Indictment reveals that there is not a shred of daylight between the subject matter of this case and the Bankruptcy Cases. Indeed, the Indictment now alleges that Mr. Kwok's filing for bankruptcy protection itself was an act in furtherance of the government's purported schemes. Moreover, the alleged "enterprise" upon which the government relies is a constellation of corporate entities that include twelve entities against which the Trustee has commenced adversary proceedings to date, and numerous other entities which the Trustee has contended are Mr. Kwok's alter egos. While the overlap was clear before, the government has now removed any possible doubt about it.

*Second*, just two days before the Court issued its Order, the Trustee took the extraordinary position before this Court that the Trustee should administer the hundreds of millions of dollars seized by the government in connection with the Himalaya Exchange (the "Exchange"), rather than allow the funds to be returned to customers of the Exchange who seek their return. The Trustee's request marks his latest attempt to siphon assets from this proceeding—which should go back to any alleged victims of the schemes charged in the Indictment in the event of a conviction—into a bankruptcy proceeding that, based on its history, may largely fund his millions of dollars in fees and promises to put the funds of those alleged victims into the pocket of purported creditors who have no entitlement to those funds. With the government's imprimatur, the Trustee has sought control of millions of dollars that the government alleges to be the proceeds of fraud, including a $37 million loan from the Exchange to an entity controlled by one of Mr. Kwok's relatives (which is a basis of the count in the Indictment related to the Exchange); $38 million controlled by a company called HCHK (which is a basis of the counts in the Indictment related to the Farm Loans program); the Mahwah Facility (which is the basis of the counts in the Indictment related to G|CLUBS); and hundreds of millions of dollars in the Exchange's bank accounts (which is a basis of the count in the Indictment related to the Exchange).

While the Trustee asserts (incorrectly) that he is entitled to control these assets, even if he were correct that these entities were Mr. Kwok's alter egos (which they decidedly are not), the Trustee would still not be entitled to take these funds because, as the government has reiterated, these funds came from *the alleged victims of the charged offenses, not from Mr. Kwok*. The Trustee's overreach demonstrates clearly the near total subject matter overlap between the Bankruptcy Cases and this proceeding—the Trustee claims as the very same money that Mr. Kwok is alleged to have stolen through the expansive scheme alleged in the Indictment, based on the

Trustee's unfounded allegations that Mr. Kwok controls these entities, which tracks the government's theory in the Indictment.

*Third*, the Court determined that Mr. Kwok's concerns about the Trustee's control over his privilege were theoretical and premature. Whether or not that was the case when Mr. Kwok originally filed his motion, the Trustee has now taken actions that make those concerns real and crystal clear. In particular, just recently, the Trustee took the position in the Bankruptcy Court that he can waive privilege over certain of Mr. Kwok's attorney-client communications in connection with an adversary proceeding he intends to pursue, thereby exposing those communications to public view, including by the government. Of course, the government has not explained its full case to Mr. Kwok or the Court, but given the substantial overlap between this proceeding and the Bankruptcy Cases, there is a significant risk that the government will thus gain access to privileged information that it would not otherwise be able to access. While the Court is correct that the Fifth Amendment does not prohibit parallel civil and criminal proceedings, the Trustee's control over Mr. Kwok's privilege creates a distinct Sixth Amendment issue that threatens the integrity of these proceedings.

For these reasons, Mr. Kwok respectfully moves for a stay of the Bankruptcy Cases and reconsideration of the Order.

## RELEVANT BACKGROUND

The Court is familiar with the relevant factual background described in Mr. Kwok's Stay Motion, which Mr. Kwok incorporates by reference. In addition, Mr. Kwok highlights the following material developments which occurred subsequent to his filing of the Motion.

## I.     The Trustee's Attempts to Secure Victim Funds

As a prelude to the facts discussed below, prior to the filing of the Motion, the Trustee took repeated actions in the Bankruptcy Cases to secure various assets he contended were rightly property of the bankruptcy estate.

Prior to the commencement of this criminal proceeding, one of Mr. Kwok's creditors, Pacific Alliance Asia Opportunities Fund ("PAX") and the Trustee jointly sought, and received, a preliminary injunction barring Mr. Kwok and numerous entities from specified activities. In the Bankruptcy Court's Memorandum of Decision granting that injunction, the Bankruptcy Court made sweeping findings (now repeatedly parroted by the Trustee) that Mr. Kwok is "associated, affiliated, and/or connected to" the Himalaya Farms, and the "GSeries" entities, which it concluded include the Himalaya Exchange, G|CLUBS, GFashion, Gettr, and GNews, among others. (Adv. Proc. No. 22-05032, Jan. 13, 2023, Dkt. No. 133 ¶ 3). The Bankruptcy Court further found that Mr. Kwok controls Saraca Media Group and its related entity, GTV. (*Id.*)

Following the entry of this preliminary injunction, the Trustee commenced numerous actions to recover assets he (falsely) contended were held by alter egos of Mr. Kwok, including: HK International Funds Investments (USA) Limited (Case No. 22-ap-05003 (summary judgment granted, Dkt No. 221)), the entity that owned the *Lady May* yacht, and which received a $37 million loan in connection with the *Lady May*, HCHK Technologies, Inc. and HCHK Property Management, Inc., which the Trustee asserted were "affiliates of . . . GTV, GClubs, GFashion, and GMusic" (Bankr. Dkt 1897, ¶ 4), and which held $38 million in cash; Taurus Fund LLC (Case No. 23-ap-05017), the entity that owns the property located at 675 Ramapo Valley Road, Mahwah, New Jersey 07430 (Bankr. Dkt. 1994); and against Mr. Kwok's family members, including his

daughter (through which he seeks, among other items, ownership of the proceeds of the sale of the Bombardier Global XRS private jet (*see* Bankr. Dkt. 2421).

As a result of these proceedings, the Trustee seized $37 million from HK International Funds Investments (USA) Limited (*See* Case No. 22-ap-05003 (Bankr. D. Conn., Dkt. No. 35, ¶¶ 79-81 (discussing $37 loan made in connection with the yacht), and also discussed in Indictment ¶ 19(g)), and $38 million from HCHK Property Management, Inc. and HCHK Technologies, Inc. (*See* Case No. 23-ap-05013, Dkt No. 1, ¶ 2; Dkt. No. 25 ¶ 5 (describing transfer of $38 million of funds to the Trustee).)

## II.     The Himalaya Exchange Funds Overlap and Dispute

On December 6, 2023, more than 3,000 customers of the Himalaya Exchange—a cryptocurrency exchange that features heavily in the Indictment—filed a motion pursuant to Federal Rule of Criminal Procedure 41(g) (the "Customer Motion," Dkt No. 186) seeking the return of hundreds of millions of dollars in funds held in the Exchange's bank accounts (the "Exchange Funds") that were seized by the government in connection with this Indictment.

The next day, the government filed an opposition to the Customer Motion, in which it stated that "the Government seized more than $600 million in proceeds of the charged crimes—including the Exchange Funds in question—to preserve those funds for later disbursement and restitution to victims." (Dkt. No. 188 at 3.) The Trustee subsequently sought leave to file a response to the Customer Motion on December 8, 2023, alleging that by seeking assets held by the Exchange, that somehow implicated "property of the Chapter 11 estate" in Mr. Kwok's bankruptcy

proceedings.  (Dkt. No. 189 at 1.)  The Court granted the Trustee leave to respond, and on December 19, 2023, the Trustee filed a response (the "Trustee's Response").  (Dkt. No. 202.)[1]

In his response to the Customer Motion, the Trustee contended that because he obtained a determination in the bankruptcy proceedings that the Exchange was purportedly under the sway of Mr. Kwok (a determination that is wrong) the Court should not grant the Customer Motion, and should instead allow the Trustee to obtain an order from the Bankruptcy Court permitting the Trustee to seize the Exchange Funds for the Chapter 11 estate.  (*Id.* at 4-5.)

In support of his position that these assets be administered through the Bankruptcy Court, rather than this Court, the Trustee stresses that he "owes duties to *all* of Mr. Kwok's legitimate creditors, not to any one creditor or group of creditors."  (*Id.* at 4.)  Further, the Trustee argues that "property of a Chapter 11 estate consists of all legal or equitable interests of the debtor in property as of the commencement of the case *wherever located and by whomever held*," including, implicitly, property held by this Court.  (*Id.* at 5 (cleaned up).)[2]

---

[1] Upon reviewing the Trustee's response, Mr. Kwok's counsel began to draft a letter to the Court to bring the relevant issues with the Trustee's filing to the Court's attention.  Just two days after the Trustee filed his response however, as Mr. Kwok's counsel was finalizing their letter, the Court issued its decision denying Mr. Kwok's Stay Motion.

[2] Although not the subject of this Motion, the Trustee additionally spills considerable ink in his Response smearing Mr. Kwok with the spurious, irrelevant, and derogatory allegation that the Customer Motion is some machination of Mr. Kwok.  The claim is categorically false—Mr. Kwok had nothing to do with the Customer Action, and is not directing anything with respect to it.  As with the government's previous attempt to impugn members of the New Federal State of China (the "NFSC") who were using the Mahwah Facility for movement business (which was its intended purpose) (*see* Dkt. No. 148, at 2-4), the Trustee asserts this spurious claim without a shred of evidence.  *First*, the Trustee claims summarily that Mr. Kwok has directed others to impede the bankruptcy proceedings.  *Second*, the Trustee contends that one of Mr. Kwok's fellow movement members who was involved in recruiting customers to participate in the Customer Action once dined with Mr. Kwok, sailed on a yacht with him, and participated in a protest.  Notwithstanding the Trustee's vociferous bluster, the Trustee utterly fails to provide any evidence in support of his claim showing that Mr. Kwok—who is detained in Brooklyn—somehow orchestrated the Customer Action.  Instead, the Trustee merely shows that individuals who share Mr. Kwok's fervent belief in the NFSC and its pro-democracy mission have taken steps that they believe further

III.     **The Trustee's Active Efforts To Erode Mr. Kwok's Attorney-Client Privilege**

As outlined in the Stay Motion, one form of serious harm posed by the ongoing bankruptcy cases is the invasion of Mr. Kwok's attorney-client privilege, and the risk that the government will have access to information that it would not otherwise be able to view.  (*See* Dkt No. 131 at 23-24.)  In opposing the Stay Motion, the Trustee previously portrayed Mr. Kwok's concerns as "nonexistent issues" (Dkt. No. 145 ¶ 3), claimed that Mr. Kwok's "assertion that the Trustee has somehow infringed upon [Mr. Kwok]'s attorney-client privilege is completely unsupported" (*id.* ¶ 50), and stated that "'disputes' over the Trustee's ability to waive the privilege [are] meaningless" (*id.* ¶ 55).

Unfortunately, the risk Mr. Kwok highlighted in the Stay Motion is now at hand.  On December 5, 2023, the Trustee filed of a motion seeking either (a) authority to use certain privileged materials, or (b) in the alternative, for the Bankruptcy Court to issue an order waiving such privilege (the "Waiver Motion," Bankr. Dkt. No. 2421).  The purpose of this filing was so that the Trustee could use these communications in connection with an adversary proceeding he had filed, including in support of a summary judgment motion the Trustee wished to file.[3]  Thus, the communications would have been available to the public, including to the government.[4]

_____

their goals, namely, in this case, challenging the government's improper seizure of the Exchange Funds.  Despite both the government's and the Trustee's attempts to malign these innocent bystanders, there is nothing improper about these customers seeking to recover funds that they believe were wrongfully taken from them.

[3] As of the date of this Motion, the Waiver Motion remains under consideration, and the Trustee has moved for summary judgment without using any privileged documents.  But, even if the Waiver Motion were denied, it demonstrates the Trustee's active attempts to invade Mr. Kwok's attorney-client privilege.

[4] The Trustee filed the Waiver Motion under seal, and thus Mr. Kwok's criminal counsel cannot access the filing, and cannot submit it to the Court with this Motion.  Mr. Kwok, however, objected to the Waiver Motion publicly before the Bankruptcy Court and is submitting a copy of his Motion as Exhibit A to the Declaration of Matthew S. Barkan, dated January 4, 2024.

## IV.    The Court's Decision and Order Denying the Stay Motion

On August 30, 2023, Mr. Kwok filed the Stay Motion.  Various parties responded to the Stay Motion on September 21, 2023, and the Stay Motion was fully submitted on October 5, 2023.

On December 21, 2023, this Court entered its order denying Mr. Kwok's Stay Motion.  In its analysis of Mr. Kwok's Motion, the Court articulated the six-factor test set forth in *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97-98 (2d Cir. 2012), applied in determining whether to stay a parallel civil litigation, which factors include "the extent to which the issues in the criminal case overlap with those presented in the civil case."  (Order at 5.)  The Court additionally noted that Cases substantially overlap when they "arise from the same facts and involve nearly identical issues."  (*Id.* at 7.)

The Court also found, however, that the "Superseding Indictment . . . concerns alleged conduct by Kwok that is not at issue in the bankruptcy proceedings" and that "Kwok's intent and the materiality of his conduct, in addition to other key legal issues, are unique to the criminal proceeding."  (*Id.* at 8.)  As set forth below, the Court erred when it found that there was "limited overlap" between the bankruptcy and criminal proceedings (*id.* at 9), and when it held that "determinations in the Bankruptcy Court" would not be dispositive as to key issues pending in this criminal proceeding.  (*Id.* at 8.)

## V.    The January 3, 2024 Superseding Indictment

On January 3, 2024, the government filed the Indictment, charging Mr. Kwok with, among other offenses, a violation of the RICO Act.  Significantly, the Indictment alleges that Mr. Kwok's bankruptcy filing "was based on years-long efforts to obscure the funds used and controlled by [Mr. Kwok], which was a means and method" of the alleged fraudulent enterprise.  (*Id.* ¶ 20.)

Thus, in other words, far from being distinct from the charged offenses, the Indictment now claims (falsely of course) that the Bankruptcy Cases themselves are part of the criminal conduct.

Moreover, the Indictment newly alleges that a number of corporate entities comprised the purported RICO "enterprise" because they were, among other things, supposedly controlled by Mr. Kwok and used to perpetuate the alleged frauds, including through "regularly mov[ing]" funds between these entities and "disguising the money movements as 'loans' or investments.'" (Indictment ¶ 20.)  Those entities include the entities for which the government alleges specific conduct, such as GTV Media Group, Inc., G Club Operations LLC, G Club International Limited, the Himalaya Exchange, and the Himalaya Alliance, and  also includes twelve entities that are parties to adversary proceedings filed in the Bankruptcy Cases, including Taurus Fund LLC and Taurus Management, LLC (*Despins v. Taurus Fund, LLC, Taurus Management, LLC, et al.* Adv. Pro. No. 23-05017 (Bankr. D. Conn.)), HCHK Technologies, Inc., HCHK Property Management Inc., Lexington Property and Staffing, Inc., and Holy City Hong Kong Ventures Ltd., (*Despins v. HCHK Technologies, Inc. et al.* Adv. Pro. No. 23-05013 (Bankr. D. Conn.), Lamp Capital LLC, Infinity Treasury Management, Inc., Hudson Diamond NY LLC, Leading Shine NY Ltd. (*Despins v. Lamp Capital LLC, et al.* (Adv. Pro. No. 23-05023 (Bankr. D. Conn.)), Golden Spring (New York) LTD (*Despins v. Golden Spring (New York) Linted*, *et al.*, Adv. Pro. No. 23-05018 (Bankr. D. Conn.)), and Greenwich Land (*Despins v. Greenwich Land*, Adv. Pro. No. 23-05005 (Bankr. D. Conn.))  (Indictment ¶ 3(a).) and includes many others which the Trustee alleges are alter egos of Mr. Kwok, and whose assets thus properly belong to the Chapter 11 estate.

## ARGUMENT

## I. Applicable Law

With respect to Mr. Kwok's renewed motion for a stay, Mr. Kwok incorporates by reference the relevant legal standards set forth in the Stay Motion, (*see* Dkt. No. 131 at 14-17) and renews his motion based upon the material changes in circumstances discussed herein.

As for Mr. Kwok's motion for reconsideration, although not present in the Federal Rules of Criminal Procedure, Local Criminal Rule 49.1(d) permits a moving part to file a motion for reconsideration within fourteen days after the Court's determination of the original motion. A court should reconsider its conclusion where doing so is necessary due to an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Schoolcraft v. City of New York,* 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (cleaned up).[5] "[T]he decision to grant . . . a motion for reconsideration is within the sound discretion of the district court." *Corines v. Am. Physicians Ins. Tr.*, 769 F. Supp. 2d 584, 594 (S.D.N.Y. 2011).

## II. Discussion

### A. New Evidence Undermines The Court's Finding That There Was Only Limited Overlap Between the Cases

In the analysis supporting its Order denying Mr. Kwok's Stay Motion, this Court recognized, under controlling case law, that the "most important" inquiry is whether there is an overlap of issues, (Order at 7), but found that there is only "limited" overlap between this criminal proceeding and the Bankruptcy Cases, (*id.* at 9). Contrary to this Court's finding, there is a near

---

[5] The standards for reconsideration among the civil and criminal rules are largely the same, and courts in this District frequently cite to cases decided under both civil and criminal rules when considering motions for reconsideration. *See, e.g.*, *United States v. Lisi*, No. 15-cr-457 (KPF), 2020 WL 1331955, at *2 n.1 (S.D.N.Y. Mar. 23, 2020).

perfect identity of factual issues between the Bankruptcy Cases and this proceeding. Further, and more pressing, as illustrated through the new Indictment and recent filings, decisions in the Bankruptcy Cases run the risk of irrevocable prejudice to Mr. Kwok. The Bankruptcy Cases should be stayed as a result.

### (1) The Overlap Of Determinations Regarding Customer Assets

As an initial matter, the Court's decision suggests that the Court believed that it was relevant to its analysis that the Bankruptcy Cases had different burdens of proof and available remedies than this proceeding. (Order at 7-8 (noting that "[b]ankruptcy is an equitable remedy" and stating that determinations in the Bankruptcy Court "are not dispositive in Kwok's criminal case, which requires a higher burden of proof.").) Respectfully, if that interpretation of the Order is accurate, then that is an incorrect application of the law that would upset the foundation of the Court's decision—the law only requires an overlap in subject matter. *See Louis Vuitton*., 676 F.3d at 101. In fact, if it were the case that differing remedies and burdens negated a finding of overlap, then there could never be sufficient overlap between an SEC proceeding (which involves a preponderance standard and civil remedies) and a related criminal proceeding (which involves a beyond a reasonable doubt standard and criminal penalties). But as the Court is aware, stays of SEC proceedings in favor parallel criminal proceedings are routine in this Circuit—indeed, in this very case, the government successfully sought a stay of a parallel SEC case even though the SEC case involved a different burden of proof, fewer parties, and different remedies. (Motion at 25-28.) Thus, to the extent the Court's decision was based on that legal conclusion, Mr. Kwok respectfully submits that that would be clear error warranting reconsideration.

But even when considering the overlap in factual issues only, the expanded scope of the new Indictment, coupled with the Trustee's attempts to claw the seized Exchange funds into the

Bankruptcy Cases demonstrate the nearly perfect overlap (and conflict) between the Bankruptcy Cases and this proceeding.

*First*, the new Indictment confirms that the very same factual issues that are at play in this case are also a critical part of the Bankruptcy Cases. In various filings, the Trustee has repeatedly litigated the issue of Mr. Kwok's purported control over entities at the heart of this case, including GTV, Saraca, G|CLUBS, and the Himalaya Exchange. *See supra* at 5-6, 9-10. That same issue forms the basis of the government's theory in this case—the Indictment repeatedly alleges that Mr. Kwok exercised control over these entities to cause them to inappropriately expend funds for his benefit. (Indictment ¶¶ 3, 5.) But in the new Indictment, the government has gone one step further, and has (ludicrously) alleged that Mr. Kwok's bankruptcy filing itself was a part of the racketeering activity giving rise to the RICO count. (*Id.* ¶ 20.) And the entities that comprised the RICO "enterprise," according to the government, are some of the very same entities that the Trustee claims should be part of Mr. Kwok's estate because they are his alter egos. *See supra* at 9-10. Neither the Trustee or the government can run from the overlap when it is so transparent from the Indictment.

*Second*, the Trustee's extraordinary attempt to lay claim to the customer funds in the Himalaya Exchange bank accounts further demonstrates the unresolvable conflict between this case and the Bankruptcy Cases. In particular, as the government has repeatedly asserted, the Exchange funds that are at issue in the Customer Action are funds that come from the customers (or users) of the Exchange— ███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ (*See* USAO_107396 ¶¶ 48-52, attached as Exhibit B to the Declaration of Matthew S. Barkan, submitted herewith). Moreover, the government noted that it

"seized more than $600 million in proceeds of the charged crimes—including the Exchange Funds in question—to preserve those funds for later disbursement and restitution to victims" (Dkt. No. 188 at 3). Thus, a fact that the government, Mr. Kwok, and even the customers who filed the Customer Action can all agree on is that the funds seized by the government over which the Trustee now seeks control originated with the customers of the Exchange and not Mr. Kwok.[6]

The Trustee's response to the Customer Action, however, shows that these distinctions—such as to whom the money actually belongs—matter little to a Trustee who is determined to rapaciously gobble up assets into the Chapter 11 estate, where they can be used to fund the legal fees caused by his repeated overreach.[7] While extraordinary, the Trustee's position is fairly straightforward (and utterly baseless)—specifically, because he convinced the Bankruptcy Court to conclude (wrongly) that the Exchange was an alter ego of Mr. Kwok, the Trustee argues that the Exchange's assets belong to the Chapter 11 estate. (Trustee Response at 3.) The Trustee's position shows the overlap between these two cases. As discussed above, the issue of Mr. Kwok's control over the Exchange and its assets is central both to the Trustee's efforts and the government's allegations in this prosecution. (*Compare* Dkt. 202 at 3 (wherein the Trustee contends that the Himalaya Exchange was a "business vehicle" for Mr. Kwok) with Indictment ¶¶ 5(c) (listing six bank accounts associated with the Exchange as subject to forfeiture).) But moreover, the assets that the Trustee seeks to claim for distribution to, among others, parties that

---

[6] Mr. Kwok, of course, vehemently denies that he engaged in any fraud connected with the Exchange.

[7] The Trustee's claim that he is marshalling assets for the "legitimate creditors," of Mr. Kwok, coupled with his repeated use of scare quotes around the word "customers" when referring to the end-users of the Himalaya Exchange raises the serious specter that the Trustee may seek to disallow the Himalaya Exchanges customers' claims in bankruptcy. If that occurs, the purported victims (the users of the Himalaya Exchange) would receive nothing, and the Exchange Funds would flow exclusively to PAX and other creditors whom the Trustee deems "legitimate," in addition to the Trustee himself in the form of his fees.

were not customers of the Exchange and payment of his legal fees are the very same assets that the government claims should be distributed to the alleged victims of the Himalaya Exchange criminal counts as restitution.

This is not a distinction without a difference for Mr. Kwok. Under the government's theory, as shown through the new Indictment, all of Mr. Kwok's commercial activities were part of a greater criminal enterprise, the purpose of which was to obtain money and property of victims and to conceal and launder the proceeds of the alleged fraud. (Indictment ¶ 7.) Under that theory, *all* proceeds from *all* of the alleged entities should be subject to forfeiture in this Court. But, under the Trustee's theory, these same assets should be funneled to the Bankruptcy Cases. The U.S. Attorney's Office has previously noted that such a scenario "would risk detracting recovery to victims because funds otherwise available to return to victims by way of forfeiture would unnecessarily be used to pay the fees of a bankruptcy trustee." (Dkt. No. 50 at 1, *SEC v. Madoff, et al.*, No. 08 Civ. 10791 (S.D.N.Y. Apr. 10, 2009).) And permitting the Trustee to divert these funds in this manner would affirmatively prejudice Mr. Kwok in the event of a conviction because it would increase his restitution obligations—any amounts paid to the Trustee's fees or to non-victim creditors (like PAX) would not be credited as restitution in this proceeding. *See United States v. Yalincak*, 853 F.3d 629, 635 (2d Cir. 2017) ("Amounts recovered by a bankruptcy trustee for the benefit of the bankruptcy estate, and consumed in the administration of the estate or distributed to non-victim creditors, plainly are not recovered by the victims of a crime; only amounts actually distributed to the victim creditors fit that description.") (cleaned up).

*Third*, while the Court pointed to the SEC action as an example of a case with sufficient overlap to warrant a stay (Order at 9), the fact is that the Trustee's actions show that the Bankruptcy Cases have significantly more overlap with this case than the SEC action. In particular, the SEC

action focuses on the GTV Private Placement, *see SEC v. Kwok,* No. 23 Civ. 2200 (PGG) (S.D.N.Y.), Dkt. No. 1, ¶¶ 40-56, which is just one of the purported schemes alleged in the Indictment. But the Trustee's pursuits range into essentially every scheme alleged in the Indictment—while the Trustee trumpets that he has recovered "more than $100 million in assets" on behalf of the Chapter 11 estate, the overwhelming majority of what he has recovered and seeks to recover are funds belonging to alleged victims in this case. (Trustee Response at 2.) In particular, of that of that $100 million, (i) $38 million comes from the seizure of funds in the name of a company called HCHK, which, according to the government's theory, constitutes proceeds from the purported Farm Loans scheme, and (ii) $37 million comes from the seizure of a loan from the Himalaya Exchange that was used as a bond in connection with the Yacht, *see supra* at 4-5,[8] which the government alleges comes from the purported Himalaya Exchange scheme. (*See* Dkt. No. 19, at 9-11 (discussing the Farm Loan Program), at 18 (discussing transfer of $37 million).[9] Moreover, as the Court is aware, the Trustee is also seeking control over the Mahwah Facility, which is at heart of the alleged fraud involving G|CLUBS. Thus, in other words, the Trustee is

---

[8] The Trustee falsely claims in his Response that Mr. Kwok admitted that the Yacht belonged to him in his recent renewed bail motion. Mr. Kwok, of course, did no such thing, as the very language that the Trustee cites demonstrates. Mr. Kwok merely stated is that he no longer has access to the Yacht that the government relied on in opposing Mr. Kwok's previous bail request. Plainly, having access to something and owning it are not the same thing.

[9] In other words, approximately 75% of the funds that the Trustee claims he has recovered for the Chapter 11 estate constitute monies that the government alleges properly belong to victims of the alleged schemes at issue, and should be distributed to alleged victims as criminal restitution in this proceeding. The Trustee has expended nearly $25 million in fees in marshalling the assets of the Chapter 11 estate, meaning that (less purported victim monies) his efforts have yielded no tangible benefit for creditors. Thus, even the Court's conclusion that the creditors will be harmed if the stay is granted is largely only true if the Trustee is permitted to continue to peel off victim assets from this case to fund his potential recovery. And, to the extent the Court is concerned that Mr. Kwok's associates may have an opportunity to move assets, the fact is that the overwhelming bulk of the assets that the Trustee is targeting have already been seized by either him or the government, and thus cannot be dissipated.

seeking and has sought to litigate the issue of Mr. Kwok's control and the ownership of victim funds associated with the alleged fraud schemes related to GTV, the Farm Loans, G|CLUBS, and the Himalaya Exchange, *i.e.*, all of the fraud schemes alleged in the Indictment. That is precisely the type of harm that a stay was intended to avoid. *See Trustees of Plumbers & Pipefitters Nat. Pension Fund. v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1138-39 (S.D.N.Y. 1995) (stay can avoid parallel litigation that may "impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case"). The new Indictment, coupled with Trustee's response to the Customer Action, and his absurd position therein, demonstrate the degree of overlap between the Bankruptcy Cases and this proceeding, and warrant staying the Bankruptcy Cases.

### (2) The Overlap as to Mr. Kwok's Attorney-Client Privilege

In his Stay Motion, Mr. Kwok argued that the Trustee's control over his privilege in the Bankruptcy Cases posed a significant threat to Mr. Kwok's ability to defend himself not only because the Trustee may directly give privileged information to the government, but also because the Trustee could waive privilege over protected communications and then use them in a public lawsuit to which the government would have access. In denying the motion, the Court concluded that Mr. Kwok's concerns were premature, that there was no evidence that the Trustee was engaged in such activity, and that the Privileges Order's carve-out for "unrelated criminal conduct" protected Mr. Kwok. (Order at 11.).

Unfortunately, the Trustee's most recent Waiver Motion—which occurred after Mr. Kwok's stay motion was fully briefed, *see supra* at 7-8—belies the Court's conclusion. Through his filing of the Waiver Motion, the Trustee has taken affirmative steps to vitiate Mr. Kwok's

16

attorney-client privilege in the Bankruptcy Cases.  Specifically, the Trustee seeks authority to use, materials that are subject to Mr. Kwok's privilege in a public adversary proceeding.  Thus, in other words, if the Trustee is successful, then those communications would become public and accessible to the government.  And, given that the adversary proceeding that the Trustee is pursuing concerns the same private jet mentioned in the Indictment (¶ 17(f)(i)) that underscores that the Trustee's interpretation of the Privileges Order affords Mr. Kwok no protection under the "unrelated criminal conduct" carve-out. [10]

The fact is that this cycle will continue for as long as the Bankruptcy Cases continue.  The Trustee has served subpoenas on more than twenty-five lawyers and law firms, meaning the Trustee will have access to a massive volume of privileged communications.  And given the Trustee's position that every entity relevant to the Indictment is under Mr. Kwok's control, it is likely that the Trustee will wish to use—as the Waiver Motion evidences—at least some of those privileged communications as the basis of public actions, thus giving the government access to otherwise protected information that pertains to the very subject matter of the government's charges (*i.e.*, Mr. Kwok's purported ability to control, for example, G|CLUBS or the Himalaya Exchange).  The Trustee's Waiver Motion thus undercuts the conclusion that Mr. Kwok's concerns about the Trustee's control over his privilege are theoretical or not ripe. [11]

---

[10] Further, contrary to the Court's reasoning, in practice the "unrelated criminal conduct" carve-out has proved ineffective law-firms and lawyers have produced materials to the Trustee without any opportunity for Mr. Kwok to assert privilege, and as a result, the Trustee (i) has had direct access to such materials and (ii) can seek relief from the Bankruptcy Court to use those materials in adversary proceedings.  Moreover, in light of the January 3, 2024 Superseding Indictment and the RICO Act charge, it is unclear what conduct, if any, could be considered "unrelated."

[11] While this Court shared its belief that the Bankruptcy Court would be able to protect Mr. Kwok from an invasion of the privilege, the Bankruptcy Court has left the Waiver Motion pending and avoided addressing the Trustee's use of such materials, meaning that this is still a live issue that the Trustee can exploit in the future.

## **CONCLUSION**

For the foregoing reasons, the Court should reconsider its prior Order and grant Mr. Kwok's request to stay the Bankruptcy Cases.

Dated: New York, New York
January 4, 2024

PRYOR CASHMAN LLP

By: _____
Sidhardha Kamaraju
E. Scott Schirick
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton

7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
sschirick@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490

*Attorneys for Defendant Ho Wan Kwok*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

               *Plaintiff,*

      v.

HO WAN KWOK,

               *Defendant.*

<u>**FILED PARTIALLY UNDER SEAL**</u>

Case No. 1:23-CR-118-1 (AT)

**DECLARATION OF MATTHEW S. BARKAN ACCOMPANYING DEFENDANT'S RENEWED MOTION TO STAY BANKRUPTCY CASES AND MOTION FOR <u>RECONSIDERATION</u>**

I, MATTHEW S. BARKAN, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am a partner at the law firm Pryor Cashman LLP and counsel for Defendant Ho Wan Kwok in the above-captioned matter.

2.     I submit this declaration in support of Defendant's Renewed Motion to Stay Bankruptcy Cases and Motion for Reconsideration and to transmit to the Court true and correct copies of the following documents.

3.     A true and correct copy of the Individual Debtor's Objection to Motion for Order Authorizing (a) Chapter 11 Trustee to Use Potentially Privileged Documents in Bombardier Adversary Proceeding on a Sealed Basis Without Waiver of Privilege or, Alternatively, (b) Limited Waiver of Trustee Privilege as to Subject Matter of Bombardier and Bombardier Proceeds submitted by Mr. Kwok in the bankruptcy proceedings captioned *In re Ho Wan Kwok, et al.*, Case No. 22-50073 (JAM) (Bankr. D. Conn.) (Jointly Administered), on December 13, 2023 is attached hereto as <u>**Exhibit A**</u>.

4. A true and correct copy of an Affidavit in Support of Seizure Warrant produced by the government at USAO_00107385 is attached hereto as **Exhibit B**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 4, 2024.

                                      _____
                                      Matthew S. Barkan
                                      *Counsel for Defendant*
                                      *Ho Wan Kwok*

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtor. | : | |
| | : | |

**THE INDIVIDUAL DEBTOR'S OBJECTION TO MOTION FOR ORDER
AUTHORIZING (A) CHAPTER 11 TRUSTEE TO USE POTENTIALLY PRIVILEGED
DOCUMENTS IN BOMBARDIER ADVERSARY PROCEEDING ON A
SEALED BASIS WITHOUT WAIVER OF PRIVILEGE OR,
ALTERNATIVELY, (B) LIMITED WAIVER OF TRUSTEE PRIVILEGE AS
TO SUBJECT MATTER OF BOMBARDIER AND BOMBARDIER PROCEEDS**

The individual debtor, Ho Wan Kwok (the "Individual Debtor"), by and through his

undersigned counsel, Zeisler & Zeisler, P.C., respectfully submits his Objection to the Chapter 11

Trustee's (the "Trustee") Motion for Order Authorizing, (A) Chapter 11 Trustee to Use Potentially

Privileged Documents in Bombardier Adversary Proceeding on a Sealed Basis Without Waiver of

Privilege or, Alternatively, (B) Limited Waiver of Trustee Privilege as to Subject Matter of

Bombardier and Bombardier Proceeds (the "Privilege Waiver Motion"), and in support thereof

respectfully states:

## I.       PRELIMINARY STATEMENT

1.       The Individual Debtor opposes the Privilege Waiver Motion to protect his rights in

the criminal action pending against him in the United States District Court for the Southern District

of New York captioned *USA v. Kwok*, 1:23CR118 (the "Criminal Action"), and more particularly

to prevent the United States Attorney's Office from obtaining and using against him attorney-client

privileged communications that it would not be able to obtain absent the privilege waiver sought

by the Trustee.

2.      The Trustee is fully aware that the Individual Debtor opposes the Trustee's waiver of privilege because the Individual Debtor is gravely concerned about the effects such a waiver would have in the pending Criminal Action. Indeed, the Trustee's counsel was told as much on multiple occasions while counsel engaged in discussions to try to arrive at a resolution of the present dispute, and the potential for the Trustee to waive attorney-client privilege is a primary focus of the Individual Debtor's Motion for an Order and Writ Staying Bankruptcy Cases which is pending in the Criminal Action. (*See* Criminal Action Doc. No. 131, at 23-25, filed in this case by the Trustee at Doc. No. 2158). Despite this knowledge, the Trustee still goes to great lengths to disparage the Individual Debtor and his motives for refusing to consent to a privilege waiver while he is incarcerated and fighting to regain his liberty.

3.      During the discussions between counsel regarding the Trustee's requested privilege waiver, the Individual Debtor's counsel invited the Trustee's counsel to provide authority permitting this Court to enter an enforceable order that would allow the Trustee, as the holder of the attorney-client privilege, to provide the documents at issue in this motion to the defendant's counsel in *Despins v. Guo*, Adv. Pro. No. 23-05008 (JAM) (the "Whitecroft Adversary"), as he would be required to do in order to affirmatively use them, and then affirmatively use those same documents to prove his claims in the Whitecroft Adversary, all without waiving any applicable privilege as to the documents.

4.      The Individual Debtor's counsel only asked the Trustee's counsel to provide such authority because the Trustee's counsel had suggested that a consensual order of the type now sought via the Privilege Waiver Motion could allow for the Trustee's affirmative use of attorney-client privileged communications while preserving privilege, and the Individual Debtor's counsel wanted to satisfy themselves that what the Trustee's counsel was suggesting was possible. The

Trustee's counsel never provided the requested authority, and the Individual Debtor's counsel has likewise been unable to locate any such authority because the voluntary disclosure of privileged information, which is what the Trustee as the privilege holder seeks to do, constitutes a privilege waiver.

5.      In the alternative, and again completely ignoring the Individual Debtor's stated legitimate concerns about the impact of a privilege waiver in the Criminal Case, the Trustee asks this Court to waive the attorney-client privilege, but fails to undertake the necessary analysis balancing the Trustee's needs for the documents at issue against the harm to the Individual Debtor of a waiver of the attorney-client privilege.

6.      The Trustee fails to conduct the requisite balancing test because he knows that the scales tip decidedly in favor of the Individual Debtor and the denial of the requested privilege waiver.

7.      The Trustee misleadingly identifies and attaches to the Privilege Waiver Motion a much broader set of documents then are truly at issue because some of the documents are duplicative of one another, and with others the Individual Debtor does not even contend there is any attorney-client or other privilege to protect. The Trustee also fails to articulate why the handful of documents at issue are vital to proving his claims in the Whitecroft Adversary and why he cannot do so without them in light of the information he has obtained in the Whitecroft Adversary from third-parties, and through the more than 220 2004 Examinations this Court has authorized, many of which have presumably been conducted. Indeed, the information for which the Trustee seeks to waive the attorney-client privilege via the Privilege Waiver Motion was obtained via Rule 2004 Examinations, not as part of the discovery process in the Whitecroft Adversary. Surely the Trustee has obtained nonprivileged information as part of his investigation that could be used to

3

support his claims in lieu of the documents at issue. The fact that the Truste may want to waive privilege rather than utilize other evidence should not be a sufficient reason to waive privilege. Indeed, under the present circumstance a privilege waiver should be permitted only as a last resort, not for convenience.

8. Lastly, the Trustee's half-hearted and indirect argument that because the Individual Debtor and Ms. Guo are represented by the same counsel the Individual Debtor's attorney-client privilege has somehow been waived as to Ms. Guo is unsupported, unsupportable, and must be rejected.

## II. **BACKGROUND**

### A. **The Privileges Order**

9. On February 15, 2022 the Individual Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and on July 8, 2022, this Court entered its Order Granting Appointment Of Chapter 11 Trustee (Doc. No. 523), granting the appointment of the Trustee as Chapter 11 trustee in this case.

10. On July 28, 2022, within weeks of his appointment, the Trustee filed the first three of what would become numerous motions to conduct Rule 2004 examinations. The first three motions included the motion to conduct a Rule 2004 examination of the Individual Debtor (Doc. No. 636) and motion to conduct Rule 2004 examinations of "various legal and financial advisors to the [Individual] Debtor" (the "Professionals 2004 Motion") (Doc. No. 637). The Professionals 2004 Motion sought leave to obtain documents and testimony from twelve different law firms or attorneys who had potentially provided legal services to the Individual Debtor (Doc. No. 637, at Exhibit B).

11. On August 22, 2022, the Trustee filed his Motion . . . For Entry of Order (A)

4

Providing That Control of Any Attorney-Client Privilege, Work Product Protection, and Other Privileges Related to Rule 2004 Subpoenaed Documents Passed to the Trustee Upon Appointment, [and] (B) Directing that [the Individual] Debtor and Other Examinees not Withhold Documents on Account of Such Privileges, . . . (the "2004 Exam Privileges Motion" (Doc. No. 777)). The Individual Debtor opposed the 2004 Exam Privileges Motion. The dispute was resolved on September 14, 2022 via the entry of a Consent Order Regarding Control of Attorney-Client Privilege and Work Product Protection Related to Rule 2004 Subpoenaed Documents and Information (the "Privileges Order" (Doc. No. 856)).

12.     The Privileges Order provides that the Trustee controls the Individual Debtor's attorney-client privilege and/or work-product protection with respect to specifically enumerated topics defined in the Privileges Order as the Investigation Topics, and further provides that with respect to the Investigation Topics:

> Neither the Debtor nor his counsel (based on instructions from the Debtor or any person acting on behalf of the Debtor), nor any other examinee, is entitled to withhold any of the documents and information requested in the attachments to the Rule 2004 subpoenas on the basis of any Trustee Privileges concerning the Investigation Topics.

(Privileges Order, at ¶¶2-3). Thus, the intent of the Privileges Order was to allow the Trustee to conduct his investigation, and in particular via the use of Rule 2004, without concern that documents or information would be withheld on the basis of the Individual Debtor's attorney-client privilege and/or on the basis of attorney work product.

13.     The Privileges Order reserves to the Individual Debtor the right to assert privilege over "legal matters unrelated to the Investigation Topics, such as unrelated criminal allegations or the Debtor's asylum application . . .". (Privileges Order, at ¶4).

14.     The Privileges Order does not permit the Trustee to waive the attorney-client privilege or work product protection:

. . . provided, however, the Trustee shall not be entitled to waive any Trustee Privilege (for example, by disclosing privileged documents or information in open court or on any public docket or by sharing such documents or information with a third party) absent the Debtor's written consent or further order of the Court, . . .

(Privileges Order, at ¶5).

15.     On the morning of March 15, 2023, a twelve count indictment was unsealed in the United States District Court for the Southern District of New York charging the Individual Debtor with various federal crimes. The Individual Debtor was arrested by federal law enforcement authorities on March 15, 2023. On March 29, 2023, a superseding indictment was filed in the Criminal Case. (Criminal Case, Doc. No. 19). The Individual Debtor remains in custody awaiting trial which is currently scheduled for April 2024. Thus, from the Individual Debtor's perspective, the world in which the Privileges Order entered bears no resemblance to the world today, and it is the state of the world today that drives the Individual Debtor's position vis-à-vis the Trustee's effort to waive attorney-client privilege.

###     B.     The Whitecroft Adversary

16.     The Trustee Commenced the Whitecroft Adversary on May 16, 2023, seeking to recover, *inter alia*, the proceeds of a purported post-petition sale of alleged estate property, a Bombardier aircraft.[1] Mei Guo ("Ms. Guo") is the only named defendant in the Whitecroft Adversary.

17.     On or about July 31, 2023, the Trustee served written discovery requests, interrogatories, requests for admission, and requests for the production of documents, on Ms. Guo in the Whitecroft Adversary (the "Trustee Discovery). Ms. Guo responded to the Trustee Discovery on or about August 30, 2023, and invoked her Fifth Amendment rights against self-

---

[1] The Trustee seeks other relief in the Whitecroft Adversary but the documents at issue relate only to the Bombardier aircraft.

incrimination in response to each request in the Trustee Discovery. The Trustee did not move to compel or otherwise seek leave of Court related to Ms. Guo's invocation of her Fifth Amendment Rights in response to the Trustee Discovery.

18.     Ms. Guo was deposed in the Whitecroft Adversary on November 1, 2023, and invoked her Fifth Amendment rights against self-incrimination in response to a number of the questions posed. The Trustee did not move to compel or otherwise seek leave of Court related to Ms. Guo's invocation of her Fifth Amendment Rights in response to questions posed to her during her deposition.

19.     Ms. Guo served discovery on the Trustee in the Whitecroft Adversary, including requests for the production of documents.

20.     To date and based on the Bates stamps applied to documents by the Trustee, the Trustee has produced 8896 pages of documents to Ms. Guo in response to her requests for production, a subset of the more than 49,000 documents the Trustee's counsel represented that search terms run against document productions obtained by the Trustee pursuant to Rule 2004 had captured for further review by the Trustee's counsel in connection with Ms. Guo's discovery requests. (*See* October 9-12, 2023, email chain between, among others, the Trustee's counsel and the Individual Debtor's counsel, at October 9, 2023, 9:49 pm email. A copy of the email chain is attached hereto as Exhibit A).

21.     In connection with his search for documents responsive to Ms. Guo's requests for production the Trustee identified potentially privileged responsive documents and asked the Individual Debtor's counsel to consent to the production of those documents to Ms. Guo without undertaking any review. (*See generally id*).

22.     The Individual Debtor's counsel informed the Trustee's counsel that the Individual

Debtor had not agreed to waive privilege and stated that the same process used to review privileged documents prior to production in *Despins v. Greenwich Land, LLC, et al*. Adv. Pro. No. 5:23ap05005, should be used in the Whitecroft Adversary so that an informed decision regarding privilege could be made and any disputes could be limited. (*Id.*, at October 10, 2023, 4:40 pm email and responses thereto).[2]

23.     The Trustee thereafter agreed to proceed in the same manner utilized in the Greenwich Land adversary proceeding and provided to the Individual Debtor's counsel 246 documents to review to determine the scope and substance of the waiver the Trustee was seeking, and to determine whether the Individual Debtor viewed each of the provided documents as privileged.[3]

24.     Of the 246 documents provided for review, the Individual Debtor's counsel identified a total of 131 that the Individual Debtor viewed as privileged and objected to being produced, disclosed, or used for any purpose. The Individual Debtor further identified five (5) documents that included privileged information and his counsel returned to the Trustee redacted versions of those documents identifying those areas deemed to contain privileged information.[4]

---

[2] In the Greenwich Land adversary proceeding the Trustee's counsel requested the Individual Debtor's consent to produce potentially privileged documents to the defendants. The Individual Debtor's counsel requested to review the documents before providing the Individual Debtor's position on the request for consent. The documents were provided to the Individual Debtor's counsel, reviewed, and the Individual Debtor identified the documents which he did not believe were subject to privilege, which could be immediately produced, and those that were subject to privilege and for which the Individual Debtor would not consent to production. The process utilized in the Greenwich Land adversary appeared to work well and did not result in any dispute presented to the Court. Thus, the Individual Debtor's counsel requested that the same process be used in the Whitecroft Adversary.

[3] It appears that the Trustee is treating every document obtained from a law firm or lawyer that may have previously represented the Individual Debtor as privileged. Thus, part of the Individual Debtor's Counsel's review included analyzing whether a document was even subject to attorney-client privilege.

[4] One of the documents the Individual Debtor's counsel returned to the Trustee in redacted form is included as an Exhibit to the Privilege Waiver Motion, Exhibit J, without the redaction which

25.     The individual Debtor did not consider the other 101 documents privileged and did not object to their production, disclosure, or use. To the best of counsel's knowledge as of the filing of this Objection the Trustee's counsel has neither produced the documents identified as non-privileged to Ms. Guo's counsel nor provided a privilege log of the documents that the Individual Debtor identified as privileged but which the Trustee does not seek to affirmatively use and are therefore not at issue in the Privilege Waiver Motion.

26.     Of the 136 documents that the Individual Debtor identified as privileged and to which he would not consent to a waiver only six (6) appear to be at issue as the remining 10, the Privilege Waiver Motion attaches 16 exhibits, do not appear to have been provide to the Individual Debtor's counsel for review based on the lack of the Bates stamp prefix "MGAP" which was affixed to the documents provided for review

C.     **The Documents at Issue**

27.     The Privilege Waiver Motion includes as Exhibits A-P the documents for which the Trustee seeks to waive privilege. The Individual Debtor does not contend that the following documents are subject to attorney-client privilege: Exhibits C, G, O, and P (Exhibit G, O, and P do not include the MGAP Bates prefix, and the Individual Debtor has not located Exhibit C in the documents provided by the Trustee's counsel for review).

28.     The Individual Debtor does not contend that the following portions of Exhibits attached to the Privilege Waiver Motion are privileged:

- Exhibit F, all pages save for pages 137-140 (the Individual Debtor does contend that pages 137-140 contain privileged information);

---

gives the impression that the Individual Debtor is asserting that communications between non-lawyers are privileged, he is not.

- Exhibit J, all pages save for the first email in the chain at Bates stamp MGAP06178 from Ms. Wong to Mr. Shulman, and others, the email at Bates Stamp MGAP06198 from Mr. Shulman to Ms. Wong and others, and the email at Bates stamped pages MGAP06201-6203 between Ms. Wong and Messrs. Shulman and Barnett.

- Exhibit M, the email at Bates stamp WC-KWOK-BANKR 0004783 is claimed as privileged, while the email at Bates stamp WC-KWOK-BANKR 0004784-85 is not claimed as privileged.

29.     Certain of the documents attached as Exhibits to the Privilege Waiver Motion are duplicative of one another. Exhibit B consists of an email chain containing three emails, Exhibit D is one of the emails contained in the Exhibit B chain and Exhibit E consists of two of the emails contained in the Exhibit B chain. Thus, Exhibits B, D and E are effectively one document. Likewise, Exhibit I is an email chain consisting of four emails, three of which are included within the documents that constitute Exhibit H.[5]

30.     Based on the foregoing there is a very limited set of unique documents at issue on the Privilege Waiver Motion: Exhibits A, B (which includes D and E), F (pages 137-140 of the transcript only), H, I (only the first email in the chain is unique), J (only pages Bates stamped MGAP06178, MGAP06198, and MGAP 6201-6203 are at issue), K, L, M (only the email at WC-KWOK-BANKR 0004783 is at issue), and Exhibit N.

### III.    ARGUMENT

**A.  The Trustee Provides No Authority That the Order He Seeks
Will be Enforceable and not Simply Result in a Privilege Waiver**

31.     The Trustee asks this Court to enter an order permitting the Trustee, as the privilege

---

[5] Exhibit H is a composite exhibit that appears to be the entire contents of a law firm's file on a particular subject.

holder, to affirmatively utilize the documents at issue in the Privilege Waiver Motion to prove his claims in the Whitecroft Adversary, and to disclose them to Ms. Guo, the defendant in that adversary proceeding as he would have to do to utilize them, all without waiving privilege as to those documents.

32.     The Trustee cites no authority that such an order would be enforceable and would preclude a third-party from obtaining the documents at issue because no such authority appears to exist. Indeed, the Trustee's affirmative use of the documents would constitute a privilege waiver regardless of the entry of the requested order.

33.     The Trustee requested that the Individual Debtor agree to such an order and he refused to do so absent authority that the order would be enforceable against third-parties; the Trustee has not provided any such authority, either to the Individual Debtor or the Court in the Privilege Waiver Motion, and the Individual Debtor has not located any such authority.

34.     The authority located by the Individual Debtor is to the contrary: the affirmative use of privileged information by the privilege holder, in this case the Trustee, constitutes a privilege waiver, and not just in the particular action in which the privileged materials are utilized. *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 445-46 (S.D.N.Y., 2011) ("Where a party voluntarily discloses privileged documents to an adversary in one proceeding, it cannot withhold the same documents on the basis of privilege in a subsequent proceeding, even if the subsequent proceeding involves a different adversary.") (citing cases).  *See also In re Parmalat Sec. Litig.*, No. 04 MD 1653 (LAK) (HBP), 2006 U.S. Dist. LEXIS 88629, *28 (S.D.N.Y., Dec. 1, 2006) (noting that "voluntary or even inadvertent disclosure [of privileged communications] may result [in] a waiver of privilege" whereas compelled disclosure does not result in a waiver) (citations omitted); *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015) ("with some exceptions,

the attorney-client privilege is automatically waived when a privileged communication is disclosed to a third party or litigation adversary.") (citing cases); *Speedfit LLC v. Woodway USA Inc.*, Case No. CV 17-768, 2019 U.S. Dist. LEXIS 56559, *13 (E.D.N.Y., March 28, 2019) (noting that the attorney-client privilege is not absolute and may be waived).

35.     The intentional waiver of the attorney-client privilege by the Trustee of a handful of documents on a particular subject also creates the risk of a broader subject matter waiver. *Speedfit LLC*, 2019 U.S. Dist. LEXIS 56559, at *13 ("Subject matter waiver is a type of implied waiver 'which allows the attacking party to reach all privileged conversations regarding a particular subject once one privileged conversation on that topic disclosed,' and is grounded in 'fairness considerations at work in the context of litigations.'") (*quoting Falise v. Am. Tobacco Co.* 193 F.R.D. 73, 84 (E.D.N.Y. 2000). *See also*, Fed. R. Evid. 502(a) ("When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.").

36.     Because the Individual Debtor has grave concerns about the enforceability of the Order requested by the Trustee, and the concomitant ability of prosecutors to obtain at least the documents used by the Trustee that are otherwise privileged, and potentially much more if there is subsequently deemed to be a subject matter waiver, the Individual Debtor Objects to the entry of the Order requested by the Trustee.

### B.  **The Trustee Should not be Permitted to Waive Privilege**

37.     In the alternative to the requested Order permitting him to affirmatively use

12

documents without waiving privilege, the Trustee asks the Court to enter an order permitting him to waive privilege as to the handful of documents at issue.

38.     The Trustee cites several cases where a bankruptcy trustee was permitted to waive a debtor's attorney-client privilege, but the Trustee performs no analysis under the prevailing balancing test. That analysis leads to the inescapable conclusion that privilege should not be waived.

39.     The majority of courts that have addressed the issue of a bankruptcy trustee's authority to waive a debtor's pre-petition attorney-client privilege have utilized a balancing test. *See Moore v. Eason (In re Bazemore)*, 216 B.R. 1020, 1023-24 (Bankr. S.D. Ga. 1998) ("The filing of bankruptcy by an individual debtor requires a determination as to whether anyone else controls the privilege. The inquiry requires balancing the interests of a full and frank discussion in the attorney-client relationship and the harm to the debtor upon a disclosure with the trustee's duty to maximize the value of the debtor's estate and represent the interests of the estate"). *See also*, *Ramette v. Bame (In re Bame)* 251 B.R. 367, 377 (D. Minn. 2000) (finding, based on the weight of authority, the balancing approach to be the applicable test in determining whether a bankruptcy trustee may waive a debtor's prepetition privilege); *Whatley v. Meyer Wilson Co., LPA (In re Chandar)*, Case No. 11-37360-B-7, Adv. No. 17-2057, 2017 Bankr. LEXIS 3903, at *2-3 (Bankr. E.D. Cal. Nov. 13, 2017) (collecting cases); *In re Still*, 444 B.R. 520, 522 (Bankr. E.D. Pa. 2010) ("The trend of the cases is toward a balancing approach.").

40.     In applying the balancing test courts determine whether "on balance the trustee's duties to maximize the value of the estate outweigh the policies underlying the attorney-client privilege and the harm to the debtor of disclosure." *Ramette (In re Bame)* 215 B.R. 367, at 377 (citations omitted). *See also*, *Degirolamo v. Daily & Haskins (In re Wittmer)*, Case No. 08-61618,

2011 Bankr. LEXIS 4727, at *7 (Bankr. N.D. Ohio, Nov. 30, 2011) ("This [balancing] approach blends the argument that a trustee cannot waive the attorney-client privilege because of the potential for personal harm to the debtor and impediment of the attorney-client communication with the argument that a trustee can waive the attorney-client privilege if there is no adverse effect on the debtor.") (*citing In re Miller* 247 B.R. 704, 710 (Bankr. N.D. Ohio 2000)).

41.     In this case the adverse effect of a privilege waiver to the Individual Debtor is substantial because he has been charged in a superseding indictment with multiple violations of federal criminal law, and the allegations of the superseding indictment mirror certain of the allegations of the Whitecroft Adversary complaint. (Compare Whitecroft Adversary complaint, at ¶¶13-19 accusing the Individual Debtor of using numerous shell companies to keep assets from creditors, with superseding indictment at ¶¶1-3, including at ¶3 ("To conceal the illegal source of the funds [the Individual Debtor and his alleged co-defendants] transferred, and directed the transfer of, money into and through more than approximately 500 accounts held in the names of at least 80 different entities or individuals, . . ."). Certain of the documents for which the Trustee seeks to waive privilege, Exhibits A, B (and D and E as subsets of B), and F, relate to purported contemplated asset transfers during the time period at issue within the superseding indictment, *i.e.*, "[f]rom at least in or about 2018 through at least in or about March 2023". (Superseding indictment, at ¶1).

42.     Based on a review of the docket of the Criminal Case the prosecutors in that case have not sought leave to obtain any of the Individual Debtor's privileged communications. Of course, if the Trustee waives the privilege the prosecutor's would be entitled to obtain all of the documents to which the waiver applies, including any subsequent subject matter waiver that the Court may find. The potential for criminal liability is a factor that courts look to when conducting

14

the balancing test to determine whether privilege should be waived, and the potential for prosecutors to obtain access to documents that they would not otherwise be able to access should weigh even more heavily in refusing to permit waiver. *See Ramette (In re Bame)* 215 B.R. 367, at 377 ("As to other questions, however, especially those going to activities giving rise to potential criminal prosecution, the balance would probably tip in favor of sustaining assertion of the privilege, in which case the trustee would have the opportunity to raise the crime-fraud exception to the privilege.").

43.     On the other side of the scale, the Trustee has not identified any harm that would befall the estate if the Court refuses to permit the requested privilege waiver. Indeed, the only stated reason for seeking the privilege waiver is to use a handful of documents affirmatively in the Whitecroft Adversary, but as the Trustee states in the Privilege Waiver Motion he likely does not even need these few documents to prevail because Ms. Guo has not defended against the Trustee's allegations. (Privilege Waiver Motion, at ¶48 ("Thus, Ms. Guo has failed to substantiate any basis to oppose the Trustee's claims in the Bombardier Adversary Proceeding").

44.     The Privilege Waiver Motion also ignores the non-privileged information that the Trustee relies upon in support of his complaint, all as referenced therein and attached as exhibits thereto[6], as well as the substantive deposition testimony of Ms. Guo secured in January 2023, which was reaffirmed during her November 1, 2023 deposition in the Whitecroft Adversary, the substantial non-privileged information that the Trustee has obtained in connection with his sweeping investigation, and publicly available information such as that referenced at paragraph 20

---

[6] The Trustee attached one or more of the documents at issue in the Privilege Waiver Motion as an exhibit to the Whitecroft Adversary complaint without asking the Individual Debtor's counsel for consent or seeking leave of Court. Obviously, the Trustee's unilateral use of documents in violation of the Privileges Order does not constitute a waiver of the Individual Debtor's right to demand compliance with that order.

of the Privilege Waiver Motion.

45.     As previously noted, in response to Ms. Guo's requests for production in the Whitecroft Adversary, many of which requests sought information concerning the Trustee's allegations regarding ownership of the Bombardier aircraft, the Trustee produced nearly 9,000 pages of documents. Moreover, the Trustee continues to seek information in support of his claims, having received documents in response to a subpoena from JetLaw, LLC within the last week, and thereafter issuing two additional subpoenas for documents and depositions. In addition, the Trustee will certainly seek adverse inferences against Ms. Guo based on her invocation of her Fifth Amendment rights and the Individual Debtor's invocation of his Fifth Amendment rights during a March 2, 2023 deposition at which he was questioned regarding matters at issue in the Whitecroft Adversary even though it had yet to be filed and the deposition related to the claim and counterclaims asserted in *HK International Funds Investments (USA) Ltd. v. Despins*, Adv. Pro. No. 22-05003. (*See* Whitecroft Complaint, at ¶¶26, 29, 42, 44(a)-(f), 49, 64, and 72).

46.     Based on the (i) massive volume of non-privileged information the Trustee has accrued, (ii) lack of any showing that the inability to use the handful of documents the Trustee seeks to use via the Privilege Waiver Motion will negate his ability to successfully prove his claims, and (iii) harm that will befall the Individual Debtor if privilege is waived, the Privilege Waiver Motion should be denied.

### C.     Ms. Guo's Counsel's Knowledge of Certain Facts Does not Constitute a Privilege Waiver

47.     The fact that Ms. Guo and the Individual Debtor are represented by the same counsel does not work a waiver of the Individual Debtor's attorney-client privilege or vice-versa simply because counsel has knowledge of privileged information and the Trustee cites no authority for his implied position that it does—the fact that the Trustee does not come right out and say that

he is arguing that Zeisler & Zeisler's representation of the Individual Debtor in the main bankruptcy case and Ms. Guo in the Whitecroft Adversary results in a waiver of the Individual Debtor's attorney-client privilege speaks volumes about the Trustee's own view of his argument.

48. The cases cited by the Trustee do not support his implied waiver argument, and are utterly inapposite. *Helmedach v. Comm'r of Corr.,* 329 Conn. 726, 737 (2018) addresses the issue of notifying a criminal defendant client of a plea offer and whether the failure to do so in a timely manner constitutes ineffective assistance of counsel. *Uchechukwu Egbujo v. Jackson Lewis, P.C.*, 2022 U.S. Dist LEXIS 177041, 2022 WL 4585688, *7 (D. Conn., Sept. 29, 2022) involves a defamation claim and whether a law firm's publication to its own client of the findings of its investigation conducted on behalf of the client constitutes publication to a third-party for purposes of satisfying the publication element of a defamation claim, it does not. Lastly, *Rai v. WB Imico Lexington Fee, LLC*, 802 F.3d 353 (2015) involves an interpretation of the Interstate Land Sales Full Disclosure Act, and whether providing a required document to counsel satisfies the act's disclosure provisions, it does.

49. The Trustee also contends that the Individual Debtor and Ms. Guo are seeking to use the attorney-client privilege as a sword and a shield. The sword and shield problem arises where one party seeks to use its privileged communications affirmatively without disclosing them. *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.") (citations omitted). As between the Trustee, the Individual Debtor, and Ms. Guo the only party that is seeking to affirmatively use privileged information is the Trustee. Thus, the only one who could even potentially have a sword and shield problem is the Trustee (the Individual Debtor is

not a party to the Whitecroft Adversary and is not seeking to use privileged communications for any purpose, he is simply seeking to have privileged communications remain privileged; Ms. Guo is not seeking to use privileged communications for any purpose and could not because she has no right or ability to use them).

WHEREFORE, for all of the foregoing reasons the Privilege Waiver Motion should be denied.

Dated at Bridgeport, Connecticut on this 13th day of December, 2023.

THE DEBTOR,
HO WAN KWOK

*/s/ James M. Moriarty*
Eric Henzy (ct12849)
James M. Moriarty
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com
          Jmoriarty@zeislaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtor. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2023, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ James M. Moriarty*
James M. Moriarty (ct21876)

# Exhibit B

# Filed Under Seal