**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                             :

In re:                      :    Chapter 11
                            :

HO WAN KWOK, *et al.*,[1]    :    Case No. 22-50073 (JAM)
                            :

        Debtors.        :    (Jointly Administered)
                            :
-------------------------------------------------------x

## MOTION FOR ENTRY OF ORDER EXTENDING DEADLINE FOR TRUSTEE TO FILE AVOIDANCE ACTIONS UNDER BANKRUPTCY CODE SECTIONS 108, 546(a), AND 549

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel, hereby files this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order, substantially in the form of the proposed order attached as **Exhibit 1** hereto (the "Proposed Order"), extending the deadlines set forth in sections 108, 546(a), and 549 of the Bankruptcy Code for the Trustee to commence certain causes of action. In support of the Motion, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

1.    Since his appointment in July 2022, the Trustee has been diligently pursuing a wide-ranging investigation into the Debtor's complex financial affairs and, where, appropriate

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

has pursued litigation to, among other things, recover assets of the estate and avoid fraudulent transfers. The Trustee has made significant progress in his investigation and, in addition to the actions he has already commenced, will be filing numerous complaints prior to the current deadline. However, for various reasons described herein, the Trustee has not yet finished identifying all potential causes of action (and the potential defendants to such causes of action) to obtain value for the Debtor's creditors, including potential additional defendants and potential additional claims against defendants that the Trustee has already identified and against whom the Trustee will be bringing claims prior to the current deadline. By this Motion, the Trustee seeks an order equitably tolling the statute of limitations as to such causes of action so that the Trustee may pursue them after the February 15, 2024 deadline for doing so.

2. The Court may equitably toll a statute of limitations where the movant shows (i) extraordinary circumstances and (ii) that he exercised reasonable diligence to commence litigation before the expiration of the limitations period. The factual record of this Chapter 11 Case easily satisfies these standards and unequivocally justifies an extension of the limitations periods.[2] Further, pursuant to Bankruptcy Rule 9006(b), the Bankruptcy Court may extend a time period—including statutes of limitations—for "cause shown."

3. Bankruptcy courts frequently deal with the aftermath of large-scale fraud and other illegal conduct. Such cases, on their own, create enormous logistical and investigative difficulties, and this case is no different. However, the difficulties in this case go beyond the significant challenge of wading through the aftermath of such conduct. This case presents the additional extraordinary circumstance of ongoing and repeated efforts to impede, obstruct, and delay the Trustee's investigation. These efforts started with the very filing of the Debtor's

---

[2]    As discussed below, equitable tolling and Bankruptcy Rule 9006(b) each, on their own, provide legal support for the relief requested herein.

petition and supporting papers, led to the appointment of the Trustee, and have continued

unabated since then—even in the face of multiple Court orders, sanctions, and contempt rulings.

4.    Furthermore, the Trustee has diligently continued his investigation,

notwithstanding the obstacles placed in his way at every turn.  In fact, as detailed below, the

Trustee has succeeded at nearly every turn.  But those successes take time in the normal course,

and have taken even longer because of the obstacles the Trustee has been forced to deal with.

5.    Moreover, because of the convoluted "shell game" the Debtor put in place, and

continues to employ, each of the Trustee's successes does not bring his investigation to a close.

Just the opposite, each success reveals more stones for the Trustee to turn over, and more assets

hidden and/or transferred.  This is not hyperbole: so far, the Trustee and his professionals have,

through this process, identified more than 339 Kwok-related bank accounts, approximately

83,820 transactions in and out of these accounts, and over $3.2 billion transiting through these

accounts.  In short, and as explained below, the diligence prong requires the Trustee demonstrate

that he has not "slept on his rights."  This prong is, also, easily satisfied by any clear-eyed

evaluation of the record.

6.    Because the facts so strongly and obviously favor granting the requested relief,

the real issue for the Court is to ensure that it has the authority to grant that relief.  As indicated

above, the Trustee brings this Motion under both bankruptcy law (specifically, Bankruptcy Rule

9006(b) and section 105(a) of the Bankruptcy Code) and non-bankruptcy law (specifically, the

doctrine of equitable tolling).  Both supply the required authority.

7.    Equitable Tolling.  Bankruptcy courts in multiple jurisdictions have relied on

equitable tolling to extend limitations periods even before the period has run.  The Trustee

submits that the Court should follow the guidance of these courts.  While the Trustee recognizes

that other courts have declined to do so on notice and/or procedural grounds, these courts are concerned that potential defendants should have their day in court and an opportunity to challenge the application of equitable tolling to them. But those concerns are not applicable here, as the Trustee has already filed a motion proposing a large-scale, multi-prong, notice program to address these concerns (the "Notice Motion").[3]

8.    Bankruptcy law. Bankruptcy Rule 9006(b) is clear: bankruptcy courts can enlarge a "specified period" for "cause shown." The Trustee recognizes that some courts have held this does not apply to the limitations period to bring claims under chapter 5 of the Bankruptcy Code. But, as addressed in detail below, multiple courts in multiple jurisdictions have disagreed, holding that Rule 9006(b) **does** supply the required authority.

9.    The relief requested in this Motion is vital. Absent an extension, the Trustee will be forced to litigate the limitations period on a one-off basis in a free-standing adversary proceeding with any potential defendant who raises the issue. This is not just difficult; it is likely impossible—the Trustee has already identified over 83,000 transfers. Moreover, the cost, both in time and dollars, would be astronomical, and would directly harm creditors. Finally, the uncertainty would put the Trustee—who has to defend all of his actions and has already had to defend a motion seeking his removal as well as other scurrilous accusations—in an untenable position moving forward.

10.    The Trustee's proposal solves these problems. At the same time, and especially in conjunction with the Notice Motion, it preserves the rights of all potential defendants. It simply channels everything into one forum.

---

[3]    *See* ECF No. 2494.

## BACKGROUND

11.     On June 15, 2022, the Bankruptcy Court entered a memorandum of decision and order [ECF No. 465] directing the United States Trustee to appoint a chapter 11 trustee.  On July 8, 2022, the Bankruptcy Court entered an order [ECF No. 523] appointing the Trustee.

12.     The Debtor's bankruptcy schedules, filed in March 2022, claimed only $3,850 in assets compared to hundreds of millions of dollars of liabilities.[4]  The Debtor asserted in the Bankruptcy Court that he was essentially penniless, and that his luxurious homes, the Lady May yacht, and his other publicly flaunted trappings of wealth did not belong to him, but to companies purportedly owned by his family members.[5]  As several courts have now observed, the Debtor was able to maintain his opulent lifestyle while professing to own virtually no assets by constructing a vast maze of shell companies in which he hid his wealth in the names of family members and close associates.

13.     Since his appointment, the Trustee has been working diligently to identify and recover for the benefit of the estate the assets the Debtor has hidden.  To that end, in accordance with the Bankruptcy Court's directive, the Trustee has launched a complex and thorough investigation and litigation process, focusing on the Debtor's "shell game"—*i.e.*, his use of alter ego companies to hide his assets from creditors.  Broadly speaking, the process has included (a) discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (b) litigation to establish that certain entities are alter egos of the Debtor and/or recover specific property and assets.  The Trustee has filed thirteen Rule 2004 motions, issued Rule 2004 subpoenas to over 250 parties, and reviewed hundreds of thousands of documents produced in discovery, and continues to take all reasonable steps to obtain additional records.

---

4     *See* Schedules of Assets & Liabilities, at 1 [ECF No. 78].
5     *See Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions* [ECF No. 107].

14.     As the Court is well aware, the Debtor, his family members, and his associates have sought to obstruct the Trustee's efforts at every turn.  Among other things:

15.     Flouting his statutory obligation to turn over his books and records,[6] the Debtor claimed, essentially, that he had no business records, producing only forty-six documents in response to Rule 2004 discovery.  The Debtor refused to produce documents related to assets he contended belonged to his family members or other persons and entities, (ii) collect and produce documents in the possession of his counsel and advisors, or (iii) sufficiently describe the efforts by which he searched for responsive documents.  The Debtor's refusal to cooperate led the Trustee to seek and obtain (over the Debtor's objection) an order compelling production of documents responsive to the Trustee's requests and an explanation of the Debtor's efforts to search for such documents. [ECF No. 1353].  Instead of complying with the order to compel production, the Debtor asserted that he had no obligation to do so under the Fifth Amendment and "act of production doctrine," requiring the Trustee to seek and obtain (again, over the Debtor's fierce opposition), and order holding the Debtor in contempt.  [ECF No. 2035].

16.     Shortly after the Trustee's appointment, the Debtor sought to vacate the order appointing the Trustee, which motion the Bankruptcy Court denied on August 2, 2022 [ECF No. 667].  Later, in December 2022, the Debtor renewed his attempt to remove the Trustee, but this motion was withdrawn following vigorous opposition from various parties in interest.  [ECF Nos. 1274, 1635].

17.     The Debtor unsuccessfully opposed the Trustee's motion to confirm that, upon his appointment, the Trustee holds all economic and corporate governance rights with respect to

---

[6]   *See* 11 U.S.C § 521(a)(4) (the debtor "shall," where there is a trustee, "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate").

entities owned and/or controlled by the Debtor, including Genever Holdings Corporation and Genever US LLC [ECF No. 643].

18.     Despite the Debtor's statutory obligation to cooperate with the Trustee and surrender to the Trustee all property of the estate and any information relating to property of the estate, the Debtor and numerous of his family members, business associates, and affiliated companies have refused, at every turn, to cooperate with the Trustee's discovery efforts and surrender property of the estate to the Trustee, resulting in no less than seven (7) orders holding them in contempt of court [ECF Nos. 1372, 1537, 1709, 1892, 2009, 2035, and 2093].

19.     The Defendant's tactics have not been limited to the courtroom.  From the outset of the Trustee's appointment, the Defendant has attempted to discredit the Trustee and his counsel (Paul Hastings LLP), with all means available to him.  Perhaps most egregiously, beginning in mid-November 2022, the Defendant instigated an extensive social media intimidation campaign directed at the Trustee, his family, and his counsel, as well as one of the largest unsecured creditor in the chapter 11 cases (namely, Pacific Alliance Asia Opportunity Fund L.P. ("PAX")), the chief executive of PAX's parent company, his family, and PAX's counsel, including by disclosing home address information online and issuing threats against them personally.  As a result, starting on November 20, 2022, a group of individuals aligned with the Defendant began picketing at the residence of the Trustee as well as the residencies of members of the Trustee's family, including his former spouse, and subsequently at the offices of counsel to the Trustee and counsel to PAX (O'Melveny & Myers LLP).  Following several days of evidentiary hearings on these matters, the Bankruptcy Court issued a preliminary injunction to curtail this improper interference with the administration of the Bankruptcy Cases.

20.     Other efforts to harass the Trustee and his counsel included a lawsuit filed in the United States District Court for the Southern District of New York by various individuals affiliated with various of the Defendants' organizations, alleging that the Trustee and his counsel violated the Foreign Agents Registration Act ("FARA") by failing to register as agents of the People's Republic of China or the Chinese Communist Party.  In the District Court, Judge Caproni dismissed this lawsuit and imposed Rule 11 sanctions on the plaintiffs and their counsel because this meritless lawsuit was filed in bad faith and to harass the Trustee and his counsel.

21.     On March 15, 2023, the Debtor was arrested in connection with multiple charges of securities fraud, wire fraud, and money laundering.[7]  The related criminal indictment filed by the Unites States Attorney against the Debtor alleged that the Debtor was "the leader of, and directed"[8] a scheme in which, among other things, the Debtor and his co-defendant William Je transferred money "into and through more than approximately 500 accounts held in the names of at least 80 different entities or individuals."[9]  Also on March 15, 2023, the Securities and Exchange Commission initiated a lawsuit against the Debtor by filing a complaint alleging multiple securities law violations against the Debtor based on similar conduct as that described in the criminal indictment, which lawsuit was stayed.  More recently, on January 3, 2024, the United States Attorney filed a superseding indictment against the Debtor alleging multiple criminal RICO allegations.  The superseding indictment alleged, among other things, that the Debtor directed the "Kwok Enterprise," made up of "dozens of interrelated entities," as part of a

---

[7]     *See* Crim. Indictment, *United States v. Kwok*, No. 1:23-cr-00118-AT (S.D.N.Y. Mar. 6, 2023).  (A related criminal complaint was also filed separately against the Debtor's employee, Yvette Wang, based on her participation in the Debtor's criminal scheme. Wang has been charged with wire fraud, securities fraud, conspiracy to commit wire fraud and securities fraud, and the making of an unlawful transaction.)
[8]     Crim. Indictment ¶ 6.
[9]     *Id.* ¶ 3.

criminal scheme that was continually adapted to "evade the enforcement of investor-protection, anti-money laundering, and bankruptcy laws in the United States."[10]

22.     Notably, in its April 20, 2023 order denying the Debtor's request for release on bail, the District Court for the Southern District of New York (the "Criminal Court") highlighted the Debtor's "history of obstructive behavior in prior cases,"[11] identifying conduct related to these chapter 11 cases such as, among other things, the Debtor misstating his assets[12]; posting false and harassing material on social media; encouraging others via social media to protest the bankruptcy trustee, his family, and his counsel and also file claims in his bankruptcy to drive up the trustee's attorney's fees[13]; and publicly publishing confidential settlement documents on the internet.[14]  The Debtor in a more recent renewed motion for release on bail filed represented to the Criminal Court that he "apologizes for his past behavior and the upset he caused others."[15]

23.     The Debtor has attempted to use the Criminal Court as a forum in which to further seek to delay and obstruct the Trustee's efforts in these chapter 11 cases.  On August 30, 2023, the Debtor filed a motion (joined by Yvette Wang) in his criminal case seeking to stay these chapter 11 cases, pending resolution of his criminal trial, which motion was denied on December 21, 2023 [Crim. Ct. ECF No. 204].  Subsequently, on January 4, 2024, the Debtor filed yet another motion in his criminal case reiterating his request that these chapter 11 cases be stayed [Crim. Ct. ECF No. 218].

24.     Despite all of the efforts of the Debtor and his associates to obstruct and delay the Trustee, the Trustee has succeeded in recovering tens of millions of dollars for the estate through

---

[10]   *See* Jan. 3, 2024 Superseding Indictment ¶¶ 1, 6, *United States v. Kwok*, No. 1:23-cr-00118-AT (S.D.N.Y.) [Crim. Ct. ECF No. 215].
[11]   Order, at 11 [Crim. Ct. ECF No. 51].
[12]   *Id.* at 8 and 10.
[13]   *Id.* at 9.
[14]   *Id.*
[15]   Mem. in Supp. of Renewed Mot. for Pretrial Release of Ho Wan Kwok, at 10 [Crim. Ct. ECF 178].

adversary proceedings with respect to identified assets such as the Lady May yacht,[16] the Sherry Netherland apartment,[17] and identified bank accounts such as the accounts of the HCHK entities[18] and the U.S. Bank escrow account.[19]  The Trustee has also initiated actions to recover, among other things, the Debtor's $26.5 million mansion in Mahwah, New Jersey.[20]  The Debtor's family members and acolytes have fiercely opposed the Trustee's efforts in these adversary proceedings.  To give just one example, certain of the Debtor's followers, claiming to be creditors of the HCHK entities, sought to intervene to oppose the Trustee's alter ego claims against those entities.  Though the intervention motion was denied by the Court in its recent decision issued on January 5, 2024, the intervention motion caused months of delay and necessitated an evidentiary hearing at which, among other things, one of the Debtor's followers "brazenly and repeatedly refused to answer questions on cross examination despite the Court ordering her to do so," while another "admit[ted] he forged a document to advance th[e] litigation."[21]

25.    Given the lack of funding to hire a forensic accountant until the sale of the Lady May, the Trustee and his counsel (which could until then only look to future-recovered assets for compensation) focused their initial asset recovery efforts on identified assets.  As such, the necessary step of conducting a forensic accounting of the hundreds of accounts used by Kwok-

---

[16]    Recovered by the Trustee in connection with adversary proceeding 22-05003, *HK International Funds Investments (USA) Limited v. Despins*, and sold pursuant to the Court's order of June 27, 2023. [ECF No. 1953].

[17]    Recovered by the Trustee in connection with adversary proceeding 22-05027, *Despins v. Bravo Luck Limited*.

[18]    These entities, HCHK Technologies, Inc., HCHK Property Management, Inc., and Lexington Property, Inc., are the subject of adversary proceeding 23-05013, *Despins v. HCHK Technologies, Inc., et al.*, in which the Trustee has sought an alter ego judgment.  While the Trustee's adversary proceeding seeking the funds of the HCHK entities is not yet complete, those funds are in the Trustee's possession and safe from dissipation pending a final ruling, which the Trustee believes will be in his favor.

[19]    Recovered by the Trustee in connection with adversary proceeding 22-05003, *HK International Funds Investments (USA) Limited v. Despins*, and adversary proceeding 23-05012, *U.S Bank National Association v. HK International Funds Investments (USA) Limited, et al.*

[20]    The Mahwah mansion is the subject of adversary proceeding 23-05017, *Despins v. Taurus Fund LLC, et al.*.

[21]    Mem. of Decision & Order, at 28 [Adv. Proc. No. 23-05013, ECF No. 239].

related entities did not commence in earnest until the Trustee retained Kroll, LLC ("Kroll") as

the Trustee's forensic investigator in August 2023, pursuant to the Court's order entered on

September 29, 2023 [ECF No. 2241].

26.    Since its retention, Kroll has been hard at work assisting the Trustee to lay the

foundation for, among other things, the prosecution of avoidance actions arising out of the

thousands of transfers made, effectively by the Debtor, using numerous Kwok-related entities.

Thus far, Kroll has identified more than 339 Kwok-related bank accounts, approximately 83,820

transactions in and out of these accounts, and over $3.2 billion transiting through these accounts.

These numbers grow literally every day as Kroll's analysis progresses.

## RELIEF SOUGHT

27.    The Trustee requests entry of the Proposed Order extending the statute of

limitations in sections 108, 546, and 549 of the Bankruptcy Code, which will allow the Trustee

to continue his investigation and bring additional actions under chapter 5 of the Bankruptcy

Code.

## BASIS FOR RELIEF

### I.    Court Has Authority to Grant Requested Relief

28.    Bankruptcy courts frequently grant the relief requested herein under non-

bankruptcy law (specifically, the doctrine of equitable tolling) and/or bankruptcy law

(specifically, Rule 9006).

    A.    Equitable Tolling Applies to Bankruptcy Code Statutes of Limitations and Can be Applied Prospectively

29.    Courts have confirmed that the non-bankruptcy law doctrine of equitable tolling

authorizes the extension of a statute of limitations, including the time period set forth in section

546(a) of the Bankruptcy Code.  *See Fam. Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's*

11

*Island Fam. Golf Ctrs., Inc.)*, 288 B.R. 701, 706 (Bankr. S.D.N.Y. 2003) ("It is well-settled that equitable tolling may be applied, in appropriate circumstances, to toll the statute of limitations imposed under 11 U.S.C. § 546(a)."); *Fogel v. Shabat (In re Draiman)*, 714 F.3d 462, 466 (7th Cir. 2013) ("Furthermore, the statute of limitations in 11 U.S.C. § 546(a) is subject to equitable tolling.").  Any inconsistency in the caselaw, instead, arises when equitable tolling is requested prior to the expiration of the limitations period.

30.     As an initial matter, many courts have granted this relief prospectively.  *See, e.g.*, *In re Farwest Pump Co.*, No. 4:17-BK-11112-BMW, 2020 WL 257784, at *3 (Bankr. D. Ariz. Jan. 15, 2020) (granting motion to equitably toll statute of limitations that was filed prior to expiration); *Marsh v. Levy (In re Martin Levy of Berlin D.M.D., P.C.*), 416 B.R. 1, 8 (Bankr. D. Mass. 2009) (order that granted motion to extend section 546(a) before it expired was proper); *In re Dwek,* No. 07- 11757 (KCF) (Bankr. D.N.J. Feb. 2, 2009) [ECF No. 3790] (prospectively granting motion to extend limitations periods); *In re Rockport Dev., Inc*., No. 20-11339-SC (Bankr. C.D. Cal. Apr. 12, 2022) [ECF No. 822] (same); *In re Visiting Nurse Ass'n of Inland Counties*, No. 18-16908-MH (Bankr C.D. Cal. July 30, 2020) [ECF No. 683] (same); *In re Builders Holding Co.*, No. 16-06643-EAG7 (Bankr. D.P.R. April 25, 2019) [ECF No. 501] (same).[22]

31.     Other courts, however, have held that courts should not grant requests for prospective equitable tolling.  For example, the court in *Walnut Hill* held that it was "wholly premature" to grant an equitable tolling motion where the limitations period had not yet expired. *In re Walnut Hill, Inc.*, No. 16–20960 (JJT), 2018 WL 2672242, at * 2 (Bankr. D. Conn. June 1, 2018).  And *In re Randolph Hospital, Inc.* denied, without prejudice, a motion to equitably toll

---

[22]   Copies of the orders entered in *In re Dwek, In re Rockport Dev*., *In re Visiting Nurse Assoc. of Inland Counties*, and *In re Builders Holding Co. Corp.* are attached as **Exhibits 2-5** hereto.

the limitations period, to be renewed after the trustee "initiates actions against identifiable and ***properly noticed defendants***." *In re Randolph Hosp., Inc.*, No. 20-10247, 2022 WL 19298765, at *1 (Bankr. M.D.N.C. Apr. 25, 2022) (emphasis added). For the reasons discussed below, this concern should not prevent the Court from granting the instant Motion under the circumstances present here.

32. Courts that have declined to rely on equitable tolling to prospectively toll a statute of limitations make clear that the primary concern with prospective equitable tolling is notice: parties who may ultimately be defendants should have an opportunity to argue that equitable tolling is not appropriate under a given set of circumstances, and a court should not preemptively take away that opportunity.

33. The flip side of this focus on notice is that courts have held that, where notice ***is*** received, it is incumbent on the potential defendant to object. *See In re Martin Levy of Berlin*, 416 B.R. at 8 ("Defendants can not avoid trustees who seek information, ignore a trustee request to extend the statute of limitations, wait for the limitations period to pass and then, months later after a complaint is filed, claim that the trustee is out of luck. Given the circumstances, the Trustee showed more than sufficient cause for the Court to extend the deadline, even had the defendants objected. Their failure to respond provides that much more justification for the extension. Accordingly, this Court finds and rules that because the defendants waived their rights by their inaction, the § 546(a) deadline was properly extended, and the Trustee timely filed the Complaint.").

34. This is precisely why this Motion, under these circumstances, could, and should, be granted. The Trustee has identified hundreds of parties that may ultimately be sued. The Trustee will, with great effort and at significant expense, serve those parties with notice of the

instant Tolling Motion, all in accordance with the Notice Motion (which itself was served on as many potential defendants as possible). And if the Court grants the Notice Motion, the Court will have determined that this notice was sufficient. In short, the parties impacted by this tolling request *will* get notice—actual, constructive, or both.

B.      Bankruptcy Rule 9006(b) Also Supplies Authority to Extend Limitations Period

35.      As one court has explained, "Rule 9006(b) of the Federal Rules of Bankruptcy Procedure gives the Court authority 'for cause' ... 'at any time in its discretion' to order the time within which an act is specified to take place enlarged. This includes the period of time for commencing avoidance actions under 11 U.S.C. § 546(a)." *Frentz v. Stites & Harbison (In re ThermoView Indus., Inc.)*, 381 B.R. 225, 227 (Bankr. W.D. Ky. 2008) (internal references omitted). Multiple other courts, in multiple jurisdictions, agree.[23] *See, e.g.*, *In re Campbellton-Graceville Hosp. Corp.*, 616 B.R. 177, 182 (Bankr. N.D. Fla. 2019) ("Bankruptcy Courts have authority to enlarge the two-year statute of limitations period under Section 546 for cause, pursuant to Rule 9006(b)."); *see also In re D & L Energy, Inc.*, No. 13-40813 (Bankr. N.D. Ohio Mar. 25, 2015) [ECF No. 1377] (finding court has authority under Rule 9006(b) to extend limitations period in section 546); *In re Network Services Sols., LLC*, No. 17-50309-gwz (Bankr. D. Nev. Mar. 6, 2019) [ECF No. 503] (granting motion to enlarge time to commence actions under sections 108 and 546 of the Bankruptcy Code pursuant to Rule 9006); *In re Farm-Rite, Inc.*, No. 20-19379-JNP (Bankr. D.N.J. Aug. 3, 2022) [ECF No. 551] (granting motion to extend deadline in section 546 of the Bankruptcy Code under Rule 9006(b)); *In re Anton & Chia, LLP*,

---

[23] To be clear, these two approaches—extension based on Rule 9006 and extension based on equitable tolling—are not exclusive. They can exist in the same case, and basis to extend the limitations period can exist under either, or both. For example, in *International Administrative Services*, the court held that Rule 9006(b) granted authority to extend the deadline, but also decided to "reach the question of whether the trustee demonstrated an equitable basis for extending the limitations period." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 700 (11th Cir. 2005).

No. 18-12565-TA (Bankr. C.D. Cal. Aug. 13, 2020) [ECF No. 136] (same); *In re Uplift RX, LLC*, No. 17-32186 (Bankr. S.D. Tex. Mar. 28, 2019) [ECF No. 1005] (same).[24]

36.     The Trustee recognizes that, notwithstanding the caselaw cited above, some courts have held that Rule 9006(b) does not authorize the extension of statutory limitations period.  *See, e.g.*, *In re Walnut Hill, Inc.*, 2018 WL 2672242, at *2.

37.     The Trustee submits, however, that the Court should adopt the analysis endorsed by the Eleventh Circuit Court of Appeals.  In *International Administrative Services*, the defendants pointed "to Bankruptcy Rule 9006(b) which does not specifically provide for enlargement of time period created by statute."  *In re Int'l Admin. Servs., Inc.*, 408 F.3d at 699. The court, though, found "no merit in this argument."  *Id*.  The court pointed out that the definition and commencement of an adversary proceeding are also governed by Bankruptcy Rules 7001 and 7003, respectively, and held that Rule 9006 does grant bankruptcy courts discretion to enlarge statutory time periods, ***even though*** the rule does not "explicitly encompass statutory timeframes."  *Id*.

38.     Furthermore, the position advanced by the *Walnut Hill* court suffers from a logical deficiency.  In *Walnut Hill*, the court framed the issue as a "yes or no" inquiry: Can a rule override a statute?  Yet even that court acknowledged that Rule 9006(a) does apply to statutes— because that specific subsection of Rule 9006 says that it applies to "any statute."[25]  Admittedly, this "any statute" language is missing from Rule 9006(b).  But this exercise demonstrates that the correct question is not whether Rule 9006(b) ***can*** be used to extend a statutory timeframe, as

---

[24]  Copies of the orders entered in *In re D & L Energy*, *In re Network Services Solutions, LLC*, *In re Farm-Rite, Inc*., *In re Anton & Chia, LLP*, and *In re Uplift RX, LLC* are attached as **Exhibits 6-10** hereto.

[25]  The relevant language, in full, of subsection (a) of Rule 9006 provides that "[t]he following rules apply in computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order, or in any statute that does not specify a method of computing time."  Fed. R. Bankr. P. 9006(a).

*Walnut Hill* suggests.  In other words, *Walnut Hill* got the wrong answer because it asked the wrong question.

39.    Instead, the correct inquiry is whether Rule 9006(b) ***does*** grant the Bankruptcy Court such authority.  This converts the question from an absolute "yes or no" inquiry to a question of interpretation: what is the best way to read, understand, and apply Rule 9006(b), and whether Rule 9006(b) should extend to section 546(a) (and, equally, other limitations periods governing avoidance actions).  And, in this regard, the Trustee submits that the better answer is the one given by the Eleventh Circuit and numerous other bankruptcy courts across multiple jurisdictions:  even though it "does not explicitly encompass statutory timeframes," to hold that Rule 9006(b) does not apply to the 546(a) deadline would lead to "absurd results."  *In re Int'l Admin. Servs., Inc.*, 408 F.3d at 699.[26]

40.    Indeed, no case better illustrates the "absurdity" the Eleventh Circuit was concerned about than the present case.  The Court is well aware of the complex nature of these chapter 11 cases, and the unending efforts of the Debtor and his associates to hinder the Trustee's investigation.  The Debtor should not be able to simply "run out the clock" for only two years and, in doing so, escape liability and effectively put an end to his bankruptcy case, thwarting not just his creditors and the Trustee, but Congress' intent.  Nor is it a practical solution to address this on an *ex post facto* basis after the limitations period has run.  The complexity of this case, and the sheer volume of information and parties is such that this would border on the impossible—and would, certainly, impose such a burden and expense on the

---

[26]    The *Walnut Hill* court also observed (correctly) that the Bankruptcy Rules cannot "abridge, enlarge, or modify any substantive right."  2018 WL 2672242, at *2.  But the limitations period in section 546(a) is a statute of limitations not a "substantive right."  *See Collins v. J & N Rest. Assocs., Inc. (In re Mendolia)*, No. 12-60219, 2015 WL 475966, at *8 (Bankr. N.D.N.Y. Feb. 3, 2015) ("The statute of limitations, however, by its very nature is procedural and does not confer or enlarge a substantive right."); *Moglia v. Inland Plywood Co. (In re Outboard Marine Corp.)*, 299 B.R. 488, 500 (Bankr. N.D. Ill. 2003) (finding section 546(a) is a statute of limitations); *Pryor v. Barbara (In re Rodriguez)*, 283 B.R. 112 (Bankr. E.D.N.Y. 2001) (same).

Trustee as to directly impact creditors ultimate recovery.  *See In re ThermoView Indus., Inc.*, 381 B.R. at 227 (granting extension motion under Rule 9006(b) in "an exceedingly complex case in which the Trustee has pursued and filed nearly 400 adversary proceedings").  As noted above, the correct inquiry is not if Rule 9006 can give the Court the necessary authority, but rather whether it does.  It cannot be the case that Congress intended bankruptcy courts to be without recourse in cases such as this—and any other reading of Rule 9006(b) would lead to perverse and inequitable outcomes. *See In re Fundamental Long Term Care, Inc.*, 501 B.R. 784, 791 (Bankr. M.D. Fla. 2013) ("If the Court does not enlarge the period for bringing avoidance actions, it will, in effect, be rewarding the targets' opposition (even if justified) during the discovery process. And it would create a perverse incentive for targets of avoidance actions (in this case and others) to oppose discovery.").[27]

41.     Moreover, there is statutory authority to extend the limitations period set out in the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code (which is, of course, a statute), grants bankruptcy courts the authority to "issue any order, process, or judgment that is necessary to carry out the provisions of this title."  And courts have specifically relied on section 105(a) to extend limitations periods set out in the Bankruptcy Code.  *See Morgan v. United States (In re Morgan)*, 182 F.3d 775, 779 (11th Cir. 1999) (section 105(a) may be used to toll three-year period in section 507(a)(8)(A)(i)); *United States v. Richards (In re Richards)*, 994 F.2d 763, 765 (10th Cir. 1993) ("11 U.S.C. § 105(a) is broad enough to permit the Bankruptcy Court's order to suspend the 240–day assessment period in 11 U.S.C. § 507(a)(7)(A)(ii) for the time Richards was in his first bankruptcy.").

---

[27]   If this result would be inequitable even where the discovery opposition may have been "justified," that concern is exponentially heightened here, where there is no such justification.

42.     While the Trustee recognizes section 105(a) cannot be used to take an action the Bankruptcy Code prohibits, *see Law v. Siegel*, 571 U.S. 415, 421 (2014), extending the limitations period pursuant to section 105(a) would not violate this principle.  Tolling the statute of limitations in sections 108, 546 and 549 is not prohibited by these sections or any other section of the Bankruptcy Code.  In fact, equitable tolling is a remedy read ***into*** every federal statute of limitations, including sections 108, 546, and 549.  *See Young v. United States*, 535 U.S. 43, 50 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling . . . Congress must be presumed to draft limitations periods in light of this background principle. *That is doubly true when it is enacting limitations periods to be applied by bankruptcy courts, which are courts of equity and apply the principles and rules of equity jurisprudence*.") (emphasis added) (internal quotation marks and references omitted) .

43.     Accordingly, and especially when taken together, section 105(a) and Bankruptcy Rule 9006(b) are best understood as granting the authority to extend the limitations period in 546(a).

## II.   Court Should Grant Requested Relief

44.     Having established that the Court has authority to grant the requested relief, application of the applicable standards demonstrates that such relief is proper and necessary here.

### A.     Equitable Tolling Standard

45.     A trustee may equitably toll the statute of limitations "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Donely ex rel. Valdez v. United States*, 518 F.3d 173, 182 (2d Cir. 2008).  Equitable tolling must be decided on a case-by-case basis and is not limited to a particular set of facts.  *See Young*, 535 U.S. at 48-50.

46.     While fraudulent concealment is certainly a basis for equitable tolling, "equitable tolling is often confused with fraudulent concealment," *Valdez*, 518 F.3d at 182-83, and

18

"equitable tolling is not limited to situations involving . . . the adversary's misconduct." *In re Randall's Island Fam. Golf Cts.*, 288 B.R. at 705-06 (internal references omitted). In other words, equitable tolling does not require any particular misconduct by the defendant. *See Heyman v. Dec (In re Dec)*, 272 B.R. 218, 225 (Bankr. N.D. Ill. 2001) ("The statute of limitations under Code § 546(a) may also be tolled where the fraud goes undiscovered even though the defendant does nothing to conceal it.").

47.     "To obtain the benefit of the doctrine, the Trustee bears the burden of establishing that []he (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *In re Anderson*, 623 B.R. 199, 217 (Bankr. D. Conn. 2020); *see also Castilloex rel. A.Q.C.  v. United States*, 656 F.3d 135, 144 (2d Cir. 2011).

B.     <u>Equitable Tolling Is Warranted In This Case</u>[28]

48.     The entirety of the factual record easily demonstrates that (i) extraordinary circumstances prevented the Trustee from bringing the Avoidance Actions and (ii) the Trustee acted diligently in pursuing his rights.

a.     *Extraordinary Circumstances*

49.     "An extraordinary circumstance … derives from some external obstacle to timely filing beyond the plaintiff's control, not from self-inflicted delay." *Schmidt v. Twosons Corp. (In re Black Elk Energy Offshore Operations, LLC)*, No. 15-34287, 2022 WL 1589190, at *11 (Bankr. S.D. Tex. May 19, 2022) (as modified) (internal quotation marks and references omitted). This has particular application to bankruptcy cases, where the debtor's conduct can

---

[28]     To the extent the Court agrees that Rule 9006(b) and/or section 105(a) provide authority for the relief requested herein, the Trustee submits that the same reasons that justify equitable tolling also constitute "cause" under Rule 9006(b).

justify tolling against non-debtors. *Kearns Motor Co. v. Cimino (In re Dreiling)*, 233 B.R. 848, 878 (Bankr. D. Colo. 1999) ("a debtor's fraudulent concealment may be imputed to other defendants for purposes of equitable tolling"); *In re Dec*, 272 B.R. at 227 ("A bankruptcy case presents a rather different slant on equitable tolling.  In the typical situation, it is the debtor's conduct rather than the defendant's conduct which invokes equitable tolling."); *Olsen v. Zerbetz (In re Olsen)*, 36 F.3d 71, 73 (9th Cir. 1994) (finding debtor's sale of estate property to family without notifying the court or parties in interest was basis for equitable tolling of fraudulent transfer because "because the trustee remained in the dark without any fault or want of diligence or care on his part") (internal quotation marks and references omitted).

50.    Accordingly, courts consistently find extraordinary circumstances when a plaintiff is unable to make progress on discovery, especially in light of the debtor's obstruction:

- *In re Int'l Admin. Servs. Inc.*, 408 F.3d 689, 702 (11th Cir. 2005) (tolling statute of limitations based, in part, on debtor and defendant's attempts to interfere with trustee's investigation into asset diversion plan by hiding their activities and violating discovery requests).

- *Bender v. Mann (In re Bender)*, No. 02-00773-RTB, 2010 WL 6467681, at *9-10 (B.A.P. 9th Cir. Nov. 15, 2010), aff'd, 480 F. App'x 445 (9th Cir. 2012) (affirming lower court decision for equitable tolling where the debtor's obstruction "stood in the way" of the trustee's filing of an avoidance action and noting the "case law is replete with examples where courts have allowed equitable tolling in response to obstructive behavior by a party").

- *Freeland v. CPA Warehouse (In re Livemercial Aviation Holding, LLC)*, 508 B.R. 58, 71(Bankr. N.D. Ind. 2014) ("The Trustee's inability, despite due diligence, to obtain information/documentation highly material to the core of this case—for whatever reason caused Mathis' inability or failure to promptly produce or provide it—amply supports the application of the doctrine of equitable tolling to this case in order to extend the limitation period of 11 U.S.C. § 546(a)(1)(A)").

- *Ochs Charitable Remainder Trust v. Ochs (In re Ochs)*, 608 B.R. 252, 261–62 (Bankr. D. Colo. 2019) (finding that the extraordinary circumstances include, among others, the "[Defendant's] obstruction of legitimate discovery, requiring the Court to intervene twice in the bankruptcy discovery disputes and rule against the Defendant both times; . . . his failure to provide a complete document production, requiring the Plaintiffs to direct

discovery to several third-party financial institutions to obtain documents in 2019; and . . . when finally deposed after multiple delays, his vague and indefinite answers to questions under oath.").

- *In re Farwest Pump Co.*, No. 4:17-BK-11112-BMW, 2020 WL 257784, at *3 (Bankr. D. Ariz. Jan. 15, 2020) ("It is also clear that the Committee is faced with extraordinary circumstances in this case, which circumstances were caused and have been perpetuated by the Vaughts, one and/or both of whom own and manage the Debtor [and related entities]. . . [including because] [t]he Vaughts have refused to disclose financial documents about their entities.").

51.    Moreover, the Trustee need not prove that any (let alone all) potential defendant engaged or participated in blocking the Trustee's discovery. That "some targets may not be responsible for impeding or delaying the Trustee's investigation is not a basis, by itself, for refusing to enlarge the two-year limitations period for bringing avoidance actions." *In re Fundamental Long Term Care, Inc.*, 501 B.R. 784, 791 (Bankr. M.D. Fla. Nov. 13, 2013). "If the Trustee has been impeded from discovering potential avoidance actions, then the deadline ought to be enlarged as to all claims—not on a party-by-party basis." *Id.*

52.    Here, it has been amply demonstrated that the Debtor and his associates have, and continue to, actively interfered with the Trustee's discovery efforts, including from the very commencement of the case. *See In re Bender,* 2010 WL 6467681, at *8 ("There is nothing in the case law that would prevent the bankruptcy court from concluding that [debtor's] misconduct, as it found, in 'going to great lengths to conceal real property in Hawaii from his Arizona chapter 7 trustee' does not constitute an extraordinary circumstance that "stood in the way" and delayed timely compliance with the statute of limitations by Trustee.").

i.    Pending Criminal Case Is Also an Extraordinary Circumstance

53.    Extraordinary circumstances are also found in external events, such as "the pendency of other legal proceedings which prevent enforcement of the subject claim." *Collins v. Decker (In re Decker)*, No. 06-60886, 2011 WL 2174349, at *5 n. 5 (Bankr. N.D.N.Y. June 1,

2011) (citation omitted); *Jobin v. Boryla (In re M & L Bus. Machine Co.)*, 75 F.3d 586, 591

(10th Cir.1996) (stating trustee's allegation that extraordinary circumstances were present where

she was unable to obtain key records which had been seized by the Justice Department in

connection with criminal charges filed against debtor's principals may be basis for equitable

tolling); Hr'g Tr. at 9:10-17, *In re Dwek,* No. 07- 11757 (KCF) (Bankr. D.N.J. Feb. 2, 2009)

[ECF No. 3916] ("[E]quitable tolling of the Statute of Limitations is appropriate here given the

recent activities by the U.S. Attorney and the FBI in conducting their investigations.  That has

involved a lengthy delay of continued 2004 deposition of the Debtor, and that's beyond the

control of the Trustee.").[29]

54.      As the Court is well aware, the Debtor is a defendant in a wide-ranging criminal

case brought after the petition date.  The pendency of this criminal case has required the Trustee

to navigate a number of issues that have complicated his investigation.  For example, as the

Court is aware, the Trustee originally sought discovery of the documents produced to the debtor

by the government in the criminal case, which request was opposed by the Debtor and ultimately

led or contributed to motion practice in both this Court and the court overseeing the criminal

case, including a motion by the Debtor to stay this chapter 11 case in its entirety.  As a result of

this motion practice, the Trustee eventually agreed to not pursue at this time his request to obtain

from the Debtor documents produced by the government to the Debtor in the criminal case. The

Trustee now expects he will gain access to at least some of these documents to the extent they

are disclosed in open court as part of the trial in the criminal case, which is presently scheduled

to begin in May 2024.  The impending criminal trial has also led to complications in the

Trustee's ability to obtain critical deposition testimony from certain individuals who are likely to

---

[29]    *In re Dwek*, No. 07- 11757 (KCF) (Bankr. D.N.J. Feb. 2, 2009) [ECF No. 3916], attached hereto as **Exhibit 11**.

be witnesses or otherwise involved in the criminal case.  Thus, the criminal case presents an

extraordinary circumstance that has delayed the Trustee's investigation in ways beyond his

control.

b.    <u>Trustee Acted Diligently</u>

55.    The Supreme Court has cautioned that "[t]he diligence required for equitable

tolling purposes is ***reasonable diligence***, not maximum feasible diligence."  *Holland v. Florida*,

560 U.S. 631, 653 (2010) (as modified) (internal quotation marks and references omitted)

(emphasis added).  Consistent with this, and especially relevant to the bankruptcy context, courts

have explained that "what constitutes due diligence is limited by the circumstances of the case,

and specifically by economic exigencies."  *In re Dreiling*, 233 B.R. at 878.

56.    A trustee has been sufficiently diligent where he "work[s] long and hard to

discover all the intricacies" of a debtor's assets and financial affairs.  *In re Int'l Admin. Servs.,*

*Inc.*, 408 F.3d at 708; *see also In re Couchell*, No. 19 B 7328, 2020 WL 6438511, at *3 (Bankr.

N.D. Ill. Mar. 31, 2020) (diligence requirement satisfied where movant "attended [debtor's] §

341 meeting, filed a proof of claim, issued 2004 subpoenas, conducted examinations and

compelled production of documents"); *In re Farwest Pump Co.*, No. 4:17-BK-11112-BMW,

2020 WL 257784, at *3 (Bankr. D. Ariz. Jan. 15, 2020) ("In this case it is clear that the

Committee has diligently pursued its rights by, among other things, filing the Motion for

Standing, requesting an expedited hearing on the Motion for Standing . . . and applying for Rule

2004 examinations with respect to Reliant, Vaught Equipment, and the Vaughts."); *Tese-Milner*

*v. Kim (In re Level 8 Apparel, LLC)*, No. 16-13164 (JLG), 2021 WL 1977161, at *7 (Bankr.

S.D.N.Y. May 17, 2021) (finding trustee demonstrated diligence when she sought information

related to the debtor's accounts by obtaining documents from debtor and serving Rule 2004

discovery requests).

23

57.     "To act diligently is to demonstrate to the Court that one has not slept on his rights."  *In re Ramsoomair*, No. 21-11215 (DSJ), 2022 WL 828307, at *6 (Bankr. S.D.N.Y. Mar. 18, 2022) (internal quotation marks and references omitted).  For all the reasons detailed above, there can be no dispute that the Trustee has acted diligently and has not slept on his rights.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court enter the Proposed Order granting the relief requested herein and grant any other relief as the Court considers proper.

Dated:    January 18, 2024              LUC A. DESPINS,
          New Haven, Connecticut        CHAPTER 11 TRUSTEE

                                        By: */s/ Douglass Barron*
                                            Avram E. Luft (admitted *pro hac vice*)
                                            Douglass Barron (admitted *pro hac vice*)
                                            PAUL HASTINGS LLP
                                            200 Park Avenue
                                            New York, New York 10166
                                            (212) 318-6079
                                            aviluft@paulhastings.com
                                            douglassbarron@paulhastings.com

                                                *and*

                                            Nicholas A. Bassett (admitted *pro hac vice*)
                                            PAUL HASTINGS LLP
                                            2050 M Street NW
                                            Washington, D.C., 20036
                                            (202) 551-1902
                                            nicholasbassett@paulhastings.com

                                                *and*

                                            Patrick R. Linsey (ct29437)
                                            NEUBERT, PEPE & MONTEITH, P.C.
                                            195 Church Street, 13th Floor
                                            New Haven, Connecticut 06510
                                            (203) 781-2847
                                            plinsey@npmlaw.com

                                            *Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                          :
In re:                                    :    Chapter 11
                                          :
HO WAN KWOK, et al.,¹                     :    Case No. 22-50073 (JAM)
                                          :
            Debtors.                      :    (Jointly Administered)
                                          :
-------------------------------------------------------x
```

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 18, 2024, the foregoing Motion, and all declarations, exhibits and attachments thereto, was electronically filed. Notice of this filing was sent by e-mail to all parties to the above-captioned chapter 11 case by operation of the Court's electronic filing ("CM/ECF") system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Dated:    January 18, 2024
          New Haven, Connecticut

                                    By: */s/ Douglass Barron*
                                        Douglass Barron (admitted *pro hac vice*)
                                        PAUL HASTINGS LLP
                                        200 Park Avenue
                                        New York, New York 10166
                                        (212) 318-6000
                                        douglassbarron@paulhastings.com

                                        *Counsel for the Chapter 11 Trustee*

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## Exhibit 1

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                            :
In re:                                      :    Chapter 11
                                            :
HO WAN KWOK, et al.,30                      :    Case No. 22-50073 (JAM)
                                            :
                Debtors.                    :    (Jointly Administered)
                                            :
-------------------------------------------------------x
```

**[PROPOSED] ORDER GRANTING MOTION FOR ENTRY OF ORDER**
**EXTENDING DEADLINE FOR TRUSTEE TO FILE AVOIDANCE ACTIONS**
**UNDER BANKRUPTCY CODE SECTIONS 108, 546(a), AND 549**

UPON CONSIDERATION OF the Chapter 11 Trustee's *Motion for Entry of Order*

*Extending Deadline for Trustee to File Avoidance Actions Under Bankruptcy Code Sections 108,*

*546(a), and 549* (the "Motion"), and good cause having been shown, and the Court having

considered any and all objections and other responses to the Motion, and the Court finding that

(i) there is good cause for the relief requested, (ii) there are extraordinary circumstances

justifying the relief requested, (iii) the Trustee has acted diligently, and (iv) the Motion has been

served in accordance with the Court's prior Order granting the Notice Motion, and such notice is

proper and sufficient under the circumstances and no other notice is required, and the relief

provided herein being narrowly tailored to serve the foregoing purposes, it is by the Court,

hereby

ORDERED, that the Motion is granted as set forth herein; and it is further

---

[30] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

ORDERED, that the time limitations set forth in 11 U.S.C. 108, 546, and 549 for the Trustee to commence avoidance actions and other actions on behalf of the estate, as well as for amending any pending complaints, are extended through and including August 15, 2024, which date may be further extended; and it is further

ORDERED, that any party that has received notice, whether actual or constructive, of the Motion and did not object to the Motion has waived its right to assert a limitations period defense if ultimately named in an action that is timely brought under the terms of this Order; and it is further

ORDERED, that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED, that the Trustee is authorized to take all actions necessary to effectuate the relief granted herein; and it is further

ORDERED, that the Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.


Dated: _____, 2024


_____
Julie A. Manning,
United States Bankruptcy Judge

2