**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------x
                            :

In re:                          :     Chapter 11
                            :

HO WAN KWOK *et al.*,        :     Case No. 22-50073 (JAM)
                            :

         Debtors.[1]           :     Jointly Administered
                            :

---------------------------------------------------x

**NOTICE OF CHAPTER 11 TRUSTEE AND GENEVER DEBTORS**
**REGARDING UPDATE WITH RESPECT TO DEBTOR'S RENEWED MOTION**
**IN CRIMINAL CASE FOR AN ORDER STAYING THESE CHAPTER 11 CASES**
**AND RELATED ADVERSARY PROCEEDINGS**

By notice dated January 8, 2024 [Docket No. 2492], Luc A. Despins, as chapter 11

trustee (the "Trustee") for Ho Wan Kwok (the "Debtor"), Genever Holdings LLC ("Genever

BVI"), and Genever Holdings Corporation ("Genever US" and, together with Genever BVI, the

"Genever Debtors") informed this Court and parties in interest that the Debtor had filed a

renewed motion (the "Renewed Stay Motion") in the criminal case [Case No. 1:23-cr-00118-AT]

(the "Criminal Case") pending against him in the United States District Court for the Southern

District of New York (the "SDNY District Court") seeking to stay the above-captioned chapter

11 cases and all related adversary proceedings.

The Trustee and the Genever Debtors wish to provide an update to the Court and parties

in interest with respect to the Renewed Stay Motion.  In particular, attached hereto as **Exhibit 1**

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

is a copy of the *Response of Chapter 11 Trustee and Genever Debtors in Opposition to Defendant Ho Wan Kwok's Renewed Motion to Stay Bankruptcy Cases and Motion for Reconsideration*, dated January 19, 2024 [Criminal Case ECF No. 234].

Dated:    January 26, 2024
          New York, New York

By: */s/ G. Alexander Bongartz*

Avram E. Luft (admitted *pro hac vice*)
G. Alexander Bongartz (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
aviluft@paulhastings.com
alexbongartz@paulhastings.com

    *and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

    *and*

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for the Chapter 11 Trustee, Genever Holdings LLC, and Genever Holdings Corporation*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
HO WAN KWOK, *et al.*,[1]                              :    Case No. 22-50073 (JAM)
                                                       :
                    Debtors.                           :    (Jointly Administered)
                                                       :
-------------------------------------------------------x

## <u>CERTIFICATE OF SERVICE</u>

        The undersigned hereby certifies that on January 26, 2024, the foregoing Notice was

electronically filed.  Notice of this filing was sent by e-mail to all parties to the above-captioned

chapter 11 case by operation of the Court's electronic filing ("<u>CM/ECF</u>") system or by mail to

anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties

may access this filing through the Court's CM/ECF system.

Dated:      January 26, 2024
            New York, New York

                                        By: */s/ G. Alexander Bongartz*
                                        G. Alexander Bongartz (admitted pro hac vice)
                                        PAUL HASTINGS LLP
                                        200 Park Avenue
                                        New York, New York 10166
                                        (212) 318-6079
                                        alexbongartz@paulhastings.com

                                        *Counsel for the Chapter 11 Trustee, Genever*
                                        *Holdings LLC, and Genever Holdings*
                                        *Corporation*

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
        Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
        Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The
        mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings
        LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok
        (solely for purposes of notices and communications).

**Exhibit 1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

           -against-

HO WAN KWOK,

              Defendant.

Case No. 1:23-CR-118-1 (AT)


**RESPONSE OF CHAPTER 11 TRUSTEE AND GENEVER DEBTORS IN**
**OPPOSITION TO DEFENDANT HO WAN KWOK'S RENEWED MOTION TO STAY**
**BANKRUPTCY CASES AND MOTION FOR RECONSIDERATION**

Luc A. Despins
Adam J. Fee
G. Alexander Bongartz
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6000
lucdespins@paulhastings.com
adamfee@paulhastings.com
alexbongartz@paulhastings.com

    *and*

Nicholas A. Bassett
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

*Counsel for Luc A. Despins, as Chapter 11*
*Trustee, Genever Holdings Corporation, and*
*Genever Holdings LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

JURISDICTION ................................................................................................................ 4

ARGUMENT .................................................................................................................... 5

    I.      Himalaya Exchange Motion Is At Best Irrelevant To Second Stay Motion .......... 6

    II.     Superseding Indictment Provides No Basis For Reconsideration ........................ 7

    III.   Privilege Waiver Motion Provides No Basis For Reconsideration ...................... 9

    IV.   Trustee Would Suffer Immense Prejudice If Stay Granted ................................ 10

CONCLUSION.................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 99 (2d Cir. 2012)....................................................................................5, 8

**Statutes**

11 U.S.C.
    § 108(a) .............................................................................................................11
    § 546(a) .............................................................................................................11

Luc A. Despins, in his capacity as the chapter 11 trustee (the "<u>Trustee</u>") appointed in the chapter 11 case of Ho Wan Kwok (the "<u>Debtor</u>" or "<u>Mr. Kwok</u>"), and Genever Holdings Corporation ("<u>Genever BVI</u>") and Genever Holdings LLC ("<u>Genever US</u>" and, together with Genever BVI, the "<u>Genever Debtors</u>," and, collectively with the Trustee, the "<u>Respondents</u>")[1] hereby file this response (the "<u>Response</u>") in opposition to (i) the Debtor's *Renewed Motion to Stay Bankruptcy Cases and Motion for Reconsideration* [ECF No. 218] (the "<u>Second Stay Motion</u>") and the related memorandum of law [ECF No. 219] (the "<u>Memorandum of Law</u>"). In support of this Response, the Respondents respectfully state as follows:

## **PRELIMINARY STATEMENT**

1. The Second Stay Motion is yet another maneuver in the Debtor's unrelenting effort to prevent the Trustee from completing his court-ordered investigation in the Debtor's Chapter 11 Case[2] to identify and recover valuable assets for creditors from the shell companies, relatives, and business associates with whom the Debtor has hidden his vast wealth. While couched as a motion for reconsideration—or a "renewed" stay motion purportedly based on new facts—the Second Stay Motion in reality simply rehashes the same failed arguments the Debtor made previously and which this Court rightfully rejected. To the extent the Court considers the Debtor's arguments anew (notwithstanding that they are appropriately addressed by the Bankruptcy Court, which the Debtor is desperate to avoid given his lack of success there), they should be rejected once more.

2. The Debtor complains (again) of the Trustee's attempts to waive the privilege over certain documents the Trustee obtained in discovery, and he insists (again) that the criminal

---

[1]  The Debtor, Genever BVI, and Genever US are referred to, collectively, as the "<u>Debtors</u>".

[2]  Capitalized terms used but not defined in this Preliminary Statement have the meanings set forth in the remainder of the Response. Capitalized terms used but not defined in this Response have the meanings set forth in the Second Stay Motion.

prosecution and the Chapter 11 Case involve identical issues based on the charges in the Superseding Indictment [ECF No. 215]. But none of these arguments is really new, and no developments warrant their reconsideration. In short, the Debtor utterly fails, as he did before, to show how he could be prejudiced by the ongoing Chapter 11 Case.

3.      The Trustee's only goal in the Chapter 11 Case, consistent with his statutory duties as a chapter 11 trustee, is to recover assets for the Debtor's creditors and then ensure that those assets are distributed fairly in accordance with the Bankruptcy Code. The Debtor should be supportive of—or, at the very least, agnostic to—the Trustee's efforts in this regard because the Debtor should want **more** assets in his estate, not less. The fact that the Debtor **opposes** the Trustee's efforts makes plain his desire to keep his assets hidden to benefit his associates.

4.      The timing of the Second Stay Motion is telling given that it comes on the eve of the two-year anniversary of the Debtor's chapter 11 filing. Pursuant to the Bankruptcy Code, this anniversary, which falls on February 15, 2024, marks the deadline for the Trustee to bring avoidance actions and certain other causes of action to recover additional assets for the estate. The Debtor is no-doubt desperate to stay the Bankruptcy Case to prevent the Trustee from meeting that deadline, thereby causing the estate to lose these valuable causes of action, which would allow the Debtor's assets to remain hidden in his shell companies throughout the world. Indeed, among the primary targets of such actions will be the Debtor's family members.

5.      The Debtor's ulterior motives are also exposed by his perplexing focus on—and apparent staunch defense of—the Himalaya Exchange Motion [ECF No. 186]. How and why the Debtor has an interest in the success of a motion by certain alleged customers of the Himalaya Exchange to recover their customer funds is a mystery—that is, of course, unless he is (despite his claims to the contrary) working in concert with such purported creditors and their counsel.

6.      To be clear, the Trustee's only goal in response to the Himalaya Exchange Motion is to prevent the alleged customer funds from being forever lost before the Trustee has the opportunity to seek appropriate relief in the Bankruptcy Court.  The Trustee is not, as the Debtor claims, seeking to misappropriate the funds to pay his own fees or make distributions to select creditors.  The fundamental purpose of bankruptcy law is to provide an orderly and fair process for gathering and distributing assets to a debtor's creditors.  The Trustee is simply seeking to ensure the Bankruptcy Court has the opportunity to oversee this process, including with respect to the funds at issue in the Himalaya Exchange Motion, should they be found to be estate property.

7.      The Debtor's remaining arguments merely repackage his prior failed arguments, which he apparently believes deserve another shot based on intervening developments.  They do not.  The Debtor's recycled argument regarding the Trustee's attempt to obtain a privilege waiver is both meritless and premature.  It is meritless because the Trustee seeks, if necessary, a very limited waiver of the attorney-client privilege he now controls over a small number of documents that may be relevant to the Trustee's prosecution of a claim to recover the sale proceeds of a jet purportedly owned by the Debtor's daughter.  The argument is also premature because the motion to waive the privilege is not being prosecuted at this time and will only become relevant in the future if the Bankruptcy Court denies the Trustee's pending motion for summary judgment and the litigation heads to trial.

8.      The Debtor's arguments regarding the alleged overlap between the criminal and bankruptcy cases fail for the same reasons they did previously, including, as this Court noted, because the claims at issue in the Chapter 11 Case, and the standards of proof applicable to those claims, are different from the Government's criminal charges and their related burden of proof.  More importantly, even if the underlying facts and issues were identical (they are not), the Debtor

3

has not articulated how he would be prejudiced by the Trustee continuing to prosecute his litigation in the Bankruptcy Court.  Indeed, the Trustee's claims are not asserted against the Debtor but rather against other individuals and entities; the Debtor is not a party to the litigations at all.

9.      In any event, the Debtor's stated concerns regarding the alleged overlap in the two cases will soon be rendered moot.  Given that the criminal trial is set to proceed in only a few short months, the Trustee has decided it would be most efficient for the chapter 11 estate to adjourn his pending adversary proceeding related to the Mahwah Mansion until after the criminal trial concludes.  Similarly, the Trustee intends to ask the Bankruptcy Court to immediately stay the other complaints the Trustee intends to file by the above-mentioned February 15, 2024 deadline, which complaints may include civil RICO claims and other alter ego claims, until after the conclusion of the criminal trial.  Because these claims will not be prosecuted, the Debtor's concerns about their overlap with the criminal trial simply no longer exist.[3]

10.      For all of these reasons, those set forth in the Trustee's First Stay Motion Response, and those set forth below, the Second Stay Motion should be denied.

## JURISDICTION

11.      The Trustee continues to dispute that this Court has jurisdiction to consider the relief sought in the First and Second Stay Motions.[4]  This Court expressly declined to decide the jurisdictional issue in its prior decision given that the Debtor had failed to satisfy his burden on the merits.  The Court correctly noted, however, that:

---

[3]      To be clear, the Trustee will not be seeking, and is not consenting to, a stay of the entire Chapter 11 Case, which is unprecedented, unwarranted, and would be severely prejudicial to the chapter 11 estate for all the reasons articulated in the Trustee's response [ECF No. 145] (the "First Stay Motion Response") to the Debtor's *Motion for an Order and Writ Staying Bankruptcy Cases or in the Alternative for Other Relief* [ECF No. 129] (the "First Stay Motion").  Although the Trustee intends to stay certain litigations until after the criminal trial for efficiency purposes, the Chapter 11 Case must remain active for the Trustee and the Bankruptcy Court to continue to oversee and protect the chapter 11 process and for the Trustee to otherwise continue his investigation as appropriate.

[4]      *See* First Stay Motion Response at 11-15.

> Because the power to stay proceedings arises from a court's authority to control its own docket, an application to stay a proceeding is more appropriately presented to the court presiding over the proceeding—here, the Bankruptcy Court. Indeed, in each of Kwok's cited cases, the initial application was made in the court where the stay was sought.

*Order* [ECF No. 204] at 6 n. 6 (the "Stay Denial Order").  The Court ultimately concluded that, "[e]ven if the Court has jurisdiction, it is doubtful that the Court should exercise it absent an extraordinary showing by Kwok." *Id.* (citing *United States v. LaRouche Campaign*, 682 F. Supp. 627, 628–29 (D. Mass. 1987)).

12.   The Trustee respectfully submits that only the Bankruptcy Court has jurisdiction over the Second Stay Motion, and, therefore, the Court should decline to consider it.  In any event, even if this Court does have jurisdiction over the Second Stay Motion, the Debtor has certainly not made the "extraordinary showing" necessary for this Court to exercise that jurisdiction.

## ARGUMENT

13.   As the Court previously recognized, staying a civil case pending the conclusion of a related criminal proceeding is an "extraordinary remedy" for which a defendant bears the burden of demonstrating "undue prejudice" or "interference with his constitutional rights." Stay Denial Order at 5 (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97–98 (2d Cir. 2012) (internal quotation marks and citation omitted)).  The Court correctly identified several factors courts in the Second Circuit will consider in ruling on a stay request, including the extent the issues in the two cases overlap and the extent of prejudice to parties in the civil case. *Id*.  These enumerated factors, however, are only a "rough guide" for what is ultimately a fact-based analysis focused on whether the requested stay "would work a hardship, inequity, or injustice to a party, the public or the court." *Id*. at 6 (quoting *Louis Vuitton*, 676 F.3d at 99).

14.     The Court appropriately determined in response to the First Stay Motion that the Debtor failed to carry his high burden of demonstrating that the continuation of the Chapter 11 Case would somehow unduly prejudice the Debtor or interfere with his constitutional rights.  The Debtor has provided no basis for the Court to reconsider that decision.

**I.      Himalaya Exchange Motion Is At Best Irrelevant To Second Stay Motion**

15.     The first of the Debtor's arguments centers around the *Motion for Return of Property* [ECF No. 186] (the "Himalaya Exchange Motion") filed by certain purported customers of the Himalaya Exchange and the Trustee's response thereto [ECF No. 202].  Candidly, the Trustee struggles to even understand this argument.  If anything, the circumstances surrounding the Himalaya Exchange Motion support the Trustee's position, not the Debtor's.

16.     The Himalaya Exchange Motion involves a request by the purported investors in the Himalaya Exchange to immediately recover certain funds that have been seized by the Government in this case.  The Debtor insists he does not control and has no interest in the Himalaya Exchange.  Oddly, however, he makes the Himalaya Exchange Motion a focal point of the Second Stay Motion, contending that the Trustee's response thereto is an "overreach" and "utterly baseless" because "the funds seized by the government over which the Trustee now seeks control originated with the customers of the Exchange and not Mr. Kwok."  Second Stay Mot. at 13.  Of course, the Debtor does not explain why he has any legitimate interest—economic or otherwise—in supporting the Himalaya Exchange Motion and seeing that the alleged customers receive their funds.  What the Debtor's support for the Himalaya Exchange Motion really shows is that his goal is not to avoid prejudice to his criminal rights but rather to protect his own interests and those of his associates, his followers, and the entities he controls.  So far, the Debtor has been resoundingly unsuccessful in achieving this goal in the Bankruptcy Court, so now he is coming to this Court.

6

17. The Debtor suggests that the Government's seizure of the Himalaya Exchange funds and the Trustee's claim to those same funds is an example of overlap between the two cases that somehow supports his stay request. But the Debtor tellingly identifies no prejudice whatsoever from this alleged overlap. To the extent the Debtor complains about the effect that the Trustee's eventual recovery of the funds may have on his restitution obligations, that argument is premature because (i) the Debtor's restitution obligations will only arise following a conviction, if any, and thus they have no bearing on his right to a fair trial, and (ii) in any event, the Trustee is not asking for the funds to be turned over to the estate at this time but rather only seeking to preserve his rights by ensuring that the funds are not released to the alleged customers

18. Moreover, by pointing to his restitution obligations, the Debtor is tellingly ignoring that he purportedly has no assets other than those he identified in his Chapter 11 Case (a mere $3500 to his name) and is again showing his hand. If the Debtor is convicted, he should be agnostic about whether the Himalaya Exchange funds are used to pay either his creditors or the victims of his fraud because he will have obligations to both groups. That he is advocating for one outcome over another—i.e., trying to keep the funds from creditors who already hold claims vs. victims who will only be entitled to restitution if he is convicted—exposes his true motivation: to keep his assets hidden and to protect his family members and close associates.

II. **Superseding Indictment Provides No Basis for Reconsideration**

19. As the Court recognized in its Stay Denial Order, the "focus" of the Chapter 11 Case, unlike this criminal case, "is to identify properties to compensate Kwok's creditors—not questions of criminal liability." Stay Denial Order at 7. Accordingly, the Trustee is focused on gathering assets, including companies that are the Debtor's alter egos, and ensuring a ratable distribution to creditors. *Id.* These objectives are as true today as they were when the Court issued

the Stay Denial Order, and they continue to show a critical distinction between the Chapter 11
Case and this case. In other words, nothing has changed, so reconsideration is inappropriate.

20.     The Debtor contends that, because the Superseding Indictment alleges that certain
entities were part of his criminal enterprise, an inextricable link now exists between the criminal
case and the Trustee's efforts to demonstrate that these and certain other entities are the Debtor's
alter egos and/or that the Debtor is the equitable owner of such entities. This argument, however,
ignores that the Trustee is not seeking to impose criminal liability on the Debtor, but rather to
assert civil claims against other individuals and entities to recover assets for creditors. Indeed, the
Debtor is not even a party to the Trustee's adversary proceedings. It is therefore unsurprising that
the Debtor cannot explain how he would actually be prejudiced by the Trustee's continued pursuit
of his adversary proceedings, which is the critical showing the Debtor must make to obtain his
requested stay. *See Louis Vuitton*, 676 F.3d at 99.

21.     Even if the Debtor's concerns regarding allegedly overlapping issues had merit
(which they do not), they will soon be rendered moot. The Debtor has long complained in
particular about prejudice allegedly created by the Trustee's litigation to obtain ownership of the
Debtor's mansion in Mahwah, New Jersey.[5]  Based on the current posture of such litigation,
however, and the fact that the criminal trial is set to begin shortly, the Trustee has decided it would
be most efficient to stay the remainder of the Mahwah mansion litigation until the criminal trial
has concluded. He has already conferred with opposing counsel concerning such a stay and intends
to move the Bankruptcy Court in the coming days. The Trustee also intends to ask the Bankruptcy
Court to immediately stay the additional alter ego actions, as well as an anticipated civil RICO
complaint, that he anticipates filing no later than the February 15, 2024 statute of limitations

---

[5]     *See generally Despins v. Taurus Fund LLC, et al.,* Adv. Proc. No. 23-5017 (Bankr. D. Conn.) (the "Mahwah
Mansion Litigation").

deadline.  Because these litigations will not be moving forward after their filing, the Debtor's complaints about their overlap with this case no longer exist.

### III.     <u>Privilege Waiver Motion Provides No Basis for Reconsideration</u>

22.     The Debtor also repeats the argument this Court already rejected that a stay is necessary to prevent the Trustee from waiving the attorney-client privilege formerly held by the Debtor over certain documents and communications.  The Debtor argues that circumstances have changed because, since entry of the Stay Denial Order, the Trustee has filed a motion asking the Bankruptcy Court to order such a privilege waiver.  This argument, however, severely mischaracterizes the limited nature of the relief the Trustee seeks and fails to explain that the Trustee's motion may never even be considered by the Bankruptcy Court.

23.     The motion at issue relates to an adversary proceeding the Trustee commenced against the Debtor's daughter, which involves a shell company nominally owned by her that held title to the Debtor's Bombardier private jet.[6]  During discovery, the Trustee properly obtained access to certain arguably privileged documents in the files of the Debtor's former counsel, which the Trustee believes are relevant to his claims.  When the Debtor refused to consent to the Trustee's use of the documents in the adversary proceeding, the Trustee filed a motion asking the Bankruptcy Court to either (i) authorize the use of the documents ***under seal, without effecting a privilege waiver***, or, alternatively (ii) permit the Trustee to effect a limited waiver of the privilege only with respect to matters related to the private jet (and its subsequent sale proceeds).  In other words, the scope of the motion is extremely narrow and specifically asks that a waiver ***not*** occur.

24.     The Debtor knows well the details of the Trustee's motion because he appeared in the Bankruptcy Court through counsel to vigorously oppose it (no doubt for the purpose of

---

[6]     *See generally Despins v. Mei Guo,* Adv. Proc. No. 23-5008 (Bankr. D. Conn.).

9

assisting his daughter's defense in the litigation). Although the motion has not yet been ruled upon, the Debtor unquestionably received due process by appearing and contesting the motion in the one court that has jurisdiction to consider it: the Bankruptcy Court.

25. In any event, the Debtor's stated concern about the waiver sought by the motion is premature. On December 28, 2023, the Trustee filed a motion for summary judgment in the adversary proceeding at issue and, in doing so, specifically noted that he was ***not*** relying on any of the arguably privileged documents in support of such motion. Rather, the Trustee has informed the Court that he will only pursue his motion to use the documents if the Court denies summary judgment and the Trustee determines it is necessary to later use the documents for trial. Accordingly, the Debtor's argument regarding privilege waiver is—like his other arguments—a false alarm that in no way supports his extraordinary stay request.

### IV.    Trustee Would Suffer Immense Prejudice If Stay Granted

26. As discussed in the Trustee's First Stay Motion Response, a global stay of the Chapter 11 Case would be extraordinarily prejudicial to the chapter 11 estate and to the creditors of the Debtor who have already been waiting years to obtain recoveries on their claims.

27. As noted above, the Trustee has decided for his own reasons to voluntarily stay certain litigation until the conclusion of the criminal trial. The Chapter 11 Case in general, however, must continue unabated. Among other things, it is critical for the automatic stay to remain in place to protect the Debtor's assets throughout the world and for the Trustee to be able to take actions necessary to safeguard those assets, including by enforcing existing orders of the Bankruptcy Court. The Trustee must also be allowed to continue to make progress in other litigations he is not staying at this time, such as the aforementioned litigation related to the recovery of the sale proceeds of the Bombardier jet.

10

28.     Most importantly, the Trustee **must be permitted to commence additional litigations by February 15, 2024**, which is the deadline established by sections 108(a) and 546(a) of the Bankruptcy Code for the Trustee to commence avoidance actions and certain other types of claims against third parties to recover assets for the estate.  The Trustee is presently in the process of preparing dozens of avoidance actions, as well as an omnibus alter ego/equitable ownership action and a civil RICO complaint, each involving numerous Debtor associates and shell companies, to file by the February 15 deadline.[7]  For efficiency purposes, the Trustee intends to seek a stay of the alter ego/equitable ownership and civil RICO actions immediately upon their filing until at least the conclusion of the criminal trial, and thus such actions will not overlap with the criminal case in any way.

29.     Were the Trustee to miss the February 15 deadline, the result for the chapter 11 estate would be devastating, as the estate would risk losing the opportunity to ever pursue and recover significant additional value—potentially in the hundreds of millions of dollars—for the benefit of the Debtor's creditors.  This manifestly unjust outcome is exactly what the Debtor wants because it would protect the "shell game" he has been playing for years and allow him to protect his family members and associates and keep his massive wealth forever hidden from his creditors. It should not be permitted.

## CONCLUSION

30.     For all of the foregoing reasons, the Trustee respectfully requests that the Second Stay Motion be denied because the Debtor has fallen far short of meeting his heavy burden to justify the extraordinary relief he seeks.  Indeed, the Debtor has demonstrated virtually no

---

[7]     The Trustee has filed a motion asking the Bankruptcy Court to toll the two-year limitations period; however, there is no guarantee that such motion will be granted or that any order granting the motion will not be challenged by future defendants.  The only way for the Trustee to preserve his causes of action with absolute certainty is to commence litigation on or before the two-year deadline.

prejudice at all from the continuation of the Chapter 11 Case, while the chapter 11 estate, by contrast, stands to be harmed significantly by the requested stay.[8]

*[Remainder of Page Intentionally Left Blank.]*

---

[8]      Finally, the stay request is even weaker as it pertains to the two Genever Debtors, whose chapter 11 cases are not overseen by the Trustee.  These Debtors were holding companies for the Debtor's palatial apartment at the Sherry Netherland hotel, which the Trustee now owns and controls pursuant to a judgment of the Bankruptcy Court.  The Debtor does not even mention the Genever Debtors in his Second Stay Motion.

Dated: January 19, 2024
     Washington, D.C.

                              By: */s/ Nicholas A. Bassett*
                                   Nicholas A. Bassett
                                   PAUL HASTINGS LLP
                                   2050 M Street NW
                                   Washington, D.C., 20036
                                   (202) 551-1902
                                   nicholasbassett@paulhastings.com

                                        *and*

                                   Luc A. Despins
                                   Adam J. Fee
                                   G. Alexander Bongartz
                                   PAUL HASTINGS LLP
                                   200 Park Avenue
                                   New York, New York 10166
                                   (212) 318-6000
                                   lucdespins@paulhastings.com
                                   adamfee@paulhastings.com
                                   alexbongartz@paulhastings.com

                                   *Counsel for Luc A. Despins, as Chapter 11*
                                   *Trustee, Genever Holdings Corporation, and*
                                   *Genever Holdings LLC*