**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 22-50073 (JAM) |
| HO WAN KWOK, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors.[1] | ) | Re: ECF Nos. 1805, 1896. |
| | ) | |

## ORDER HOLDING HUDSON DIAMOND HOLDING LLC IN CONTEMPT

**I. INTRODUCTION**

Before the Court is the Motion for Entry of Order Holding Hudson Diamond Holding LLC and Hudson Diamond NY LLC in Civil Contempt for Failing to Respond to Rule 2004 Subpoenas (the "Contempt Motion"),[2] (ECF No. 1805), filed by Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy estate of Mr. Ho Wan Kwok. For the reasons stated below, the Court holds Hudson Diamond Holding LLC ("HD Holding") in contempt of court.

**II. BACKGROUND**

On May 18, 2023, the Trustee filed the Contempt Motion. (ECF No. 1805.) Attached to the Contempt Motion is the Declaration of Avram E. Luft (the "Luft Declaration"), which itself has attached exhibits. (*Id.*) A hearing was held on the Contempt Motion on June 6, 2023.

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] Various pleadings and orders discussed in this Order were omnibus in nature. For the sake of clarity, the titles of pleadings and orders are set forth herein only as they concern Hudson Diamond Holding LLC.

During the hearing, the Trustee and counsel for Hudson Diamond NY LLC ("HD NY") and HD Holding (collectively, the "HD Entities") read into the record a stipulation regarding the HD Entities' compliance with the Rule 2004 subpoenas served on them.  Following the hearing, on June 8, 2023, the Court entered the Consent Order Regarding Contempt Motion (the "Consent Order").  (ECF No. 1896.)  Pursuant to the Consent Order, the HD Entities were to comply with the Trustee's subpoenas on or before June 15, 2023.

In accordance with the Consent Order and subsequent scheduling orders, a continued hearing on the Contempt Motion was held on July 11, 2023.  During the continued hearing, the Trustee argued that HD Holding had not complied with the Consent Order and pressed his argument that HD Holding was in civil contempt of court for failure to comply with the Rule 2004 subpoena.  HD Holding argued that it had complied with the Consent Order, or at least diligently attempted to comply, referring the Court to the efforts detailed during the hearing and in the Declaration of Aaron A. Romney (the "Romney Declaration"), filed in connection with a related motion by counsel to, among others, the HD Entities.  (ECF No. 1988.)  Through counsel, HD Holding represented that it had produced the operating agreement and articles of organization for HD Holding and that, despite the efforts of Ms. Mei Guo ("Ms. Guo"), the sole member of HD Holding, and counsel, HD Holding had been unable to obtain and produce further documents that may be in the possession of Ms. Yvette Wang ("Ms. Wang"), also known as, among other names, Ms. Yanping Wang, and Mr. Max Krasner ("Mr. Krasner"), who had conducted the business of HD Holding.

During the July 11, 2023 hearing, the Trustee also pressed his argument that HD NY was in civil contempt of Court.  The Trustee argued that the documents already in his possession indicated that HD NY was the wholly owned subsidiary of HD Holding and that HD NY owned

luxury automobiles and had at least explored real estate transactions. Counsel to HD NY did not oppose the entry of an order holding HD NY in contempt because, subsequent to his appearance as counsel for HD NY and entry into the Consent Order on its behalf, he had come to be deeply confused and uncertain as to whether HD NY was a wholly owned subsidiary of HD Holding as he had erstwhile believed and, for that reason, had not produced any documents for HD NY.

After the July 11, 2023 hearing, the Court (i) issued an order for Ms. Guo to appear and testify as to why HD Holding should not be held in civil contempt of court (the "Show Cause Order") (ECF No. 2036); and (ii) held HD NY in civil contempt of court for failure to comply with the Consent Order and the Rule 2004 subpoena (the "HD NY Contempt Order") (ECF No. 2009). The Show Cause Order scheduled a continued hearing on the Contempt Motion for August 22, 2023 and required Ms. Guo to appear and testify because HD Holding's argument that it had either complied or diligently attempted to comply with the Consent Order and Rule 2004 subpoena, except as it involved discussion with Hodgson Russ LLP ("Hodgson Russ") regarding HD NY, involved actions taken by Ms. Guo outside the presence and without the assistance of counsel.

On August 17, 2023, HD Holding filed the Declaration of Mei Guo (the "Guo Declaration"). (ECF No. 2092.) On August 22, 2023, a continued hearing was held on the Contempt Motion. During the hearing, the Guo Declaration was admitted as Ms. Guo's direct testimony, Ms. Guo was cross-examined by the Trustee, and HD Holding asked a few questions on redirect. Additionally, the Trustee moved for the admission of eight exhibits (each an "Trustee Exhibit," and, collectively, the "Trustee Exhibits") into evidence. All were admitted in full. These Trustee Exhibits were subsequently filed on the docket. (ECF Nos. 2123, 2124.)

The Contempt Motion is ripe for decision.

## III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. The instant proceedings are statutorily core proceedings. 28 U.S.C. § 157(b)(2)(A). The Court concludes its exercise of jurisdiction is not precluded by Constitutional concerns. *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. DISCUSSION[3]

### A. Contempt

This Court has the power to hold parties in contempt of court under 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9020. *Taggart v. Lorenzen ex rel. Brown*, 139 S. Ct. 1795, 1801 (2019); *PHH Mortg. Corp. v. Sensenich ex rel. Gravel (In re Gravel)*, 6 F.4th 503, 512 (2d Cir. 2021); *Mar. Asbestosis Legal Clinic v. LTV Steel Co. (In re Chauteaugay Corp.)*, 920 F.2d 183, 187 (2d. Cir. 1990). Contempt may be sought to "coerce the defendant into compliance" with a court order or to "compensate the complainant for losses" resulting from noncompliance with a court order. *Taggart*, 139 S. Ct. at 1801 (citing *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947)). A finding of civil contempt requires that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v.*

---

[3] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014(c).

*Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). Contempt also requires that (4) the contemnor has notice of the relevant order. *Gravel*, 6 F.4th at 512.

Federal Rules of Civil Procedure 37(b)(1) and 37(b)(2)(A)(vii), made applicable by D. Conn. L. Civ. R. 37 and D. Conn. Bankr. L.R. 1001-1(a)(1) and 2004-1(a), provide further authority to hold parties in contempt of an order compelling production of discovery materials, such as the Consent Order.

### 1. Consent Order Is Clear and Unambiguous

An order is clear and unambiguous where "there is [no] *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Taggart*, 139 S. Ct. at 1801 (citing *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609 (1885)). As noted in the Show Cause Order, HD Holding raises no argument that there is a fair ground of doubt as to the meaning of the Consent Order, which states that HD Holding "shall have until June 15, 2023 to complete [its] production to the Trustee." (ECF No. 1896.) HD Holding could only withhold responsive discovery materials on privilege grounds. (*Id.*) The Court concludes that there is no fair ground of doubt as to the meaning of the Consent Order and, accordingly, the Consent Order is clear and unambiguous. *See King*, 65 F.3d at 1058.

### 2. HD Holding Did Not Comply

The Trustee must make a clear and convincing showing that HD Holding did not comply with the Consent Order. *King*, 65 F.3d at 1058. The Trustee argues that in turning over two (2) documents, HD Holding did not comply with the Consent Order. In particular, the Trustee focuses on HD Holding's failure to produce the documents of HD NY – which, the Trustee argues, is its wholly owned subsidiary – as required by the Rule 2004 subpoena and that, therefore, HD Holding did not comply with the Consent Order. The Trustee also argues that HD

Holding's documents in the control of Ms. Wang and Mr. Krasner must be turned over and that Ms. Guo's account of her review of her own records is not credible. HD Holding argues that those two (2) documents – the operating agreement and articles of organization for HD Holding – represent all documents in the possession, custody, and/or control of HD Holding and that HD Holding was not required to produce the documents of HD NY, especially where, as here, counsel for HD Holding has expressed confusion as to whether HD Holding truly is the sole member of HD NY.[4]

The Court agrees with the Trustee. The Rule 2004 subpoena served on HD Holding, admitted into evidence as Trustee Exhibit 1, states that "'You' or 'Your' or 'Yourself' means and refers to Hudson Diamond Holding LLC, together with all of its affiliates, divisions, agencies, instrumentalities, departments, offices, partners, officers, directors, agents, attorneys, representatives, employees, and/or anyone acting on its behalf." (Tr. Ex. 1, at *7.) To comply with the Rule 2004 subpoena – as compelled by the Consent Order – HD Holding must turn over documents related to all these parties that fit within several categories documents. (Tr. Ex. 1, at *10 (defining document), 12–15 (document requests).)

The Guo Declaration, submitted as Ms. Guo's direct testimony during the evidentiary hearing, states that "Yvette Wang and Max Krasner handled the business and affairs of Holding." (ECF No. 2092 ¶ 5.) Ms. Wang and Mr. Krasner are, therefore, at least persons "acting on [HD Holding's] behalf", from whom HD Holding was compelled by the Consent Order – and indeed, *agreed* – to produce documents and records. (Tr. Ex. 1, at *7 (defining you, your, and yourself),

---

[4] After this matter was taken under advisement, counsel for HD Holding has admitted that HD Holding is the sole member of HD NY. (Mot. to Set Aside Default at 3 n. 1, *Despins v. Lamp Capital (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05023 (JAM) (Bankr. D. Conn. Jan. 2, 2024), ECF No. 30.)

6

Case 22-50073    Doc 2545    Filed 02/01/24    Entered 02/01/24 17:40:07    Page 7 of 14

10 (defining document), 12–15 (document requests).)  No document from Ms. Wang or Mr. Krasner was produced.

The Court has already concluded, on the basis of documents then in the record, including the documents now marked Trustee Exhibits 3 and 5, that HD Holding is the sole member of HD NY.  (ECF No. 2220.)  Pursuant to Fed. R. Civ. P. 54, made applicable to this contested matter by Fed. R. Bankr. P. 9014(c), it is within the Court's discretion whether this conclusion is law of the case.  *Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021).  The Court concludes it is law of the case and incorporates its rationale in the prior order by reference.

Moreover, Trustee Exhibits 2, 3, 5, 6, 7, and 8 further support the conclusion that HD Holding is the sole member of HD NY.  Trustee Exhibit 3, which was previously filed on the docket as exhibit T to the Luft Declaration, is a corporate document of HD NY dated December 4, 2020 and Executed January 4, 2021 and entitled "Consent of Sole Member without a Meeting."  (Tr. Ex. 3.)  Trustee Exhibit 3 bears the signature of Ms. Guo, signing as sole member of HD Holding, the sole member of HD NY.  (Tr. Ex. 3; Hr'g Tr., ECF No. 2168, at 138:14–23; *see* Guo Decl. ¶¶ 4, 5; Romney Decl. ¶ 13.)  Trustee Exhibit 5 – the Romney Declaration – has attached to it as exhibit A an email chain between attorneys for the HD Entities and Hodgson Russ, wherein Hodgson Russ does not dispute that Ms. Guo came to control HD NY through HD Holding at some point.  (Romney Decl. Ex. A, at *1.)  Trustee Exhibits 6 and 8 show account summaries for a bank account of HD NY.  (Tr. Exs. 6, 8.)  Trustee Exhibit 7 shows that, as of May 14, 2021, a "Yangping Wang" and "Mei Guo" were the signatories for this bank account of HD NY.  (Tr. Ex. 7.)  While Ms. Guo invoked[5] her Fifth Amendment right against self-

---

[5]  The Court grants the Motion by Ms. Guo's criminal counsel to strike the answer she made before being advised to invoke the Fifth Amendment, without prejudice to the Trustee's objection to the propriety of her invocation.

incrimination in response to questioning about whether Trustee Exhibit 7 bears her signature, as the Trustee requests, the Court draws an adverse inference against her based on the evidence before the Court. *See Mirlis v. Greer*, 952 F.3d 36, 47 (2d Cir. 2020) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a civil cause.") (emphasis in original)); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ("[A]n adverse inference can be drawn when independent evidence exists of the fact to which the party refuses to answer.")). (Hr'g Tr., ECF No. 2229, at 7:21–8:23.) Finally, in context of this body of evidence it is proper to draw an adverse inference against HD Holding based on Ms. Guo's invocation of her Fifth Amendment right against self-incrimination regarding HD Holding's sole membership in HD NY. *See Mirlis*, 952 F.3d at 47; *Glanzer*, 232 F.3d at 1264. (Hr'g Tr., ECF No. 2168, at 27:2–8.)

For all these reasons,[6] in addition to the matter being law of the case, the Court concludes that HD NY is an "affiliate" of HD Holding as defined in the Rule 2004 subpoena and HD Holding was compelled to produce its documents responsive to the Rule 2004 subpoena. (Tr. Ex. 1, at *7 (defining you, your, and yourself), 10 (defining document), 12–15 (document requests).) As is true of Ms. Wang and Mr. Krasnser, no document from HD NY was produced. Indeed, the Court has already held HD NY in contempt of court for failing to comply with a Rule 2004 subpoena seeking substantially identical categories of discovery materials as the Rule 2004 subpoena served on HD Holding. (ECF No. 2009.) The Court, within its discretion, concludes that this is also law of the case. *See Cangemi*, 13 F.4th at 140.

---

[6] In addition to these reasons, counsel has subsequently admitted that HD Holding is the member of HD NY. *See* note 4, *supra*.

Finally, the Court concludes that Ms. Guo was not a persuasive witness as to the issues before it. The Guo Declaration does not show cause as to why HD Holding should not be held in contempt in light of the concerns raised by the Show Cause Order and the evidentiary record before the Court. In this connection, the lack of testimony from Ms. Guo going beyond the Guo Declaration is problematic for HD Holding. When questioned about the content of the Guo Declaration, Ms. Guo almost uniformly invoked her Fifth Amendment right against self-incrimination, including on issues about which HD Holding's counsel (who are also her personal counsel in these Chapter 11 cases and related adversary proceedings) had made prior statements and indeed *sworn* statements to the Court. (*See, e.g.*, Hr'g Tr., ECF No. 2168, at 23:24–24:12, 27:2–8, 41:12–42:10, 50:24–52:23, 57:18–67:10, 72:15–73:2, 76:20–78:23, 79:22–82:14, 84:7–24, 85:7–93:7, 93:24–94:24, 101:4–103:7, 118:11–123:22.) Moreover, Ms. Guo has made contradictory statements under oath about her access to Mr. Krasner's phone number. (Hr'g Tr., ECF No. 2168, at 85:7–87:22.) The Court concludes there is no credible evidence that HD Holding performed a complete review of its documents and records and produced its responsive documents.

Therefore, for all of the reasons above, the Court concludes that the Trustee has established by clear and convincing evidence that HD Holding did not comply with the Consent Order and failed to produce documents responsive to the Rule 2004 subpoena.

### 3. HD Holding Did Not Diligently Attempt to Comply in a Reasonable Manner

For HD Holding to be held in contempt, the Court must conclude that HD Holding has not diligently attempted to comply in a reasonable manner. *King*, 65 F.3d at 1058. The Trustee argues that (i) Ms. Guo's account of her efforts on behalf of HD Holding are not credible; and (ii) HD Holding's efforts to produce documents of HD NY were insufficiently diligent. HD

9

Holding argues that (1) Ms. Guo tried, but failed, to contact Mr. Krasner; (2) HD Holding did not have to attempt to contact Ms. Wang because she is presently detained pending trial in the District Court for the Southern District of New York; and (3) Attorneys Romney and Vartan were stonewalled by Hodgson Russ in their attempt to obtain documents related to HD NY.

The Court agrees with the Trustee. The Romney Declaration states that Ms. Guo attempted to access the HD NY account at Capital One but was refused access because "her name was not on the account." (Romney Decl. ¶ 9.) This is contradicted by Trustee Exhibits 6, 7, and 8 discussed above. (Tr. Exs. 6, 7, 8.) HD Holding provides no explanation for this contradiction, such as testimony about how, why, and when Ms. Guo's name was removed from the account – if it indeed was. The Guo Declaration only reiterates that HD Holding had no account at Capital One and does not discuss attempts to access the HD NY account. (Guo Decl. ¶¶ 6, 13.) In the presence of counsel, Ms. Guo only asked Capital One about HD Holding – *not* HD NY. (*Id.* ¶ 13.)

The Romney Declaration mentions no attempt to contact Ms. Wang. (Romney Decl. ¶ 8.) Similarly, the Guo Declaration mentions no attempt to contact Ms. Wang. (Guo Decl. ¶ 5.) This is despite Ms. Wang handling the business affairs of HD Holding in conjunction with Mr. Krasner. (*Id.*) The rationale behind declining to contact Ms. Wang appears to be that she is presently detained pending trial in the Southern District of New York. (*Id.*) This rationale, however, offers no support for failing to make any attempt to contact Ms. Wang. Ms. Wang has obligations to the HD Entities and Ms. Guo, in her capacity as HD Holding's sole member. HD Holding can reach out to Ms. Wang through her criminal counsel. There is no justifiable reason this has not occurred. Perhaps Ms. Wang will invoke her Fifth Amendment right against self-

incrimination regarding requests for documents regarding the HD Entities.  If so, the Trustee is entitled to that record.

The Romney Declaration mentions attempts to contact Mr. Krasner – outside the presence of counsel, but alleges such attempts were unsuccessful.  (Romney Decl. ¶ 8.)  The Guo Declaration, submitted as Ms. Guo's direct testimony, affirms this statement and states further attempts were made to contact Mr. Krasner in the presence of counsel.  (Guo Decl. ¶¶ 5, 12.)  As noted above, Ms. Guo's testimony regarding her attempts to contact Mr. Krasner is not persuasive – at different points she has made contradictory statements under oath about her ability to reach Mr. Krasner.  (Hr'g Tr., ECF No. 2168, at 85:7–87:22.)  It is concerning that HD Holding is apparently indifferent towards one of its officers not responding to its sole member about its documents and records.  This is particularly concerning because HD Holding (a) is a subpoena target; (b) has *consented* to an order compelling production; and (c) has been ordered to *show cause why it should not be held in contempt*.  There is no indication that there were repeated attempts to contact Mr. Krasner outside of two isolated attempts.  (Guo Decl. ¶¶ 5, 12.)  There is no indication HD Holding subpoenaed Mr. Krasner or initiated any legal process against him.

The Romney Declaration, which Ms. Guo testifies is "true and accurate" (Guo Decl. ¶¶ 3, 4), discusses a series of communications with Hodgson Russ regarding HD NY and HD Holding's interest in HD NY.  (Romney Decl. ¶¶ 10–25.)  As discussed above, the Court concludes on the basis of the record before it that HD Holding is the sole member of HD NY.  Nevertheless, the Court observes that the confusion of Attorney Romney centered on whether Ms. Guo or her brother, Mr. Qiang Guo ("Mr. Guo"), also known as Mr. Mileson Guo,

11

controlled the sole member of HD NY. (*Id.*)[7] Despite this, HD Holding apparently made no attempt to reach out to Mr. Guo about this issue to clarify the membership of HD NY.

Ms. Guo's testimony and the Romney Declaration do not satisfactorily explain the failure to comply with the Consent Order. As noted above, the Court finds that Ms. Guo was not a credible witness when questioned about these issues. Therefore, the Court concludes that no diligent attempt to comply with the Consent Order occurred. Indeed, the record before the Court indicates that HD Holding has affirmatively chosen not to comply.

### 4. HD Holding Has Notice

The parties do not contest that HD Holding has notice of and was properly served with the Consent Order, the Rule 2004 subpoena, and other relevant pleadings and orders. Nevertheless, the Court sets out how HD Holding was served and received notice below.

HD Holding was properly served with and has notice of the Rule 2004 subpoena. On December 2, 2022, the Court entered the Second Supplemental Rule 2004 Order authorizing in pertinent part the Rule 2004 subpoena directed to HD Holding. (ECF No. 1184.) On December 7, 2022, HD Holding was served with the Rule 2004 subpoena at Hudson Diamond Holding LLC, c/o Corporate Creations Network Inc., 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, DE via personal service upon an agent authorized by appointment to receive service at that address. (Luft Decl. Ex. C-7.) In the Consent Order, HD Holding stipulates that service of the Rule 2004 subpoena was proper. (ECF No. 1896.)

HD Holding was also properly served with and has notice of the Contempt Motion. On May 23, 2023, HD Holding was served with the Notice of Hearing regarding the Hearing on the

---

[7] *See* note 4, *supra*.

Contempt Motion at Hudson Diamond Holding LLC, c/o Corporate Creations Network Inc., 3411 Silverside Road, Tatnall Building #104, Wilmington, DE 19810. (ECF No. 1826.)

On June 1, 2023, Attorney Romney filed an appearance for HD Holding in these jointly administered Chapter 11 cases. (ECF No. 1848.) Thereafter, HD Holding has received service of all relevant pleadings through Notices of Electronic Filing electronically served on its counsel, including the Consent Order (to which HD Holding is, moreover, a party), the orders scheduling the July 11, 2023 continued hearing, and the Show Cause Order. Hence, HD Holding had notice of these pleadings and orders. Moreover, the Guo Declaration acknowledges HD Holding's receipt of the Show Cause Order. (ECF No. 2092 ¶ 1.)

Accordingly, HD Holding had notice of the Consent Order and related hearings, pleadings, orders, and the underlying Rule 2004 subpoena. *Gravel*, 6 F.4th at 512.

### 5. HD Holding Is in Contempt of Court

All four elements of contempt having been established, the Court holds HD Holding in civil contempt of Court for failure to comply with the Consent Order. *See King*, 65 F.3d at 1058; *Gravel*, 6 F.4th at 512.

### V. CONCLUSION AND ORDER

Accordingly pursuant to the Court's inherent contempt powers and Fed. R. Civ. P. 37(b)(1) and 37(b)(2)(A)(vii), made applicable by D. Conn. L. Civ. R. 37 and D. Conn. Bankr. L.R. 1001-1(a)(1) and 2004-1(a), it is hereby

**ORDERED:** The Hudson Diamond Holding LLC ("HD Holding") are in civil contempt of court for failure to comply with the Consent Order Regarding Motion of Chapter 11 Trustee for Entry of an Order Holding Hudson Diamond NY LLC and Hudson Diamond Holding LLC in Civil Contempt for Failing to Respond to Rule 2004 Subpoenas (the "Consent Order") (ECF No.

1896), which Consent Order compelled production responsive to the Rule 2004 subpoena served on HD Holding by Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy estate of Mr. Ho Wan Kwok. Should HD Holding fail to purge itself of contempt on or before March 1, 2024, the Trustee may seek appropriate sanctions.

Dated at Bridgeport, Connecticut this 1st day of February, 2024.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut