LAZARE POTTER GIACOVAS & MOYLE LLP
Michael T. Conway, Esq.
747 Third Avenue, 16th Floor
New York, NY 10017
Telephone: (917) 242-1597
mconway@lpgmlaw.com

*Counsel for Taurus Fund LLC, Scott Barnett, as Trustee of*
*Taurus Fund and Taurus Management LLC, as Trustee of Taurus Fund LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtor. | (Jointly Administered) |

**OBJECTION TO THE CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER EXTENDING DEADLINE FOR TRUSTEE TO FILE AVOIDANCE ACTIONS UNDER BANKRUPTCY CODE SECTIONS 108, 546(a), AND 549**

Taurus Fund, LLC ("Taurus Fund"), Taurus Management, LLC ("Taurus Management"), and Scott Barnett (collectively, "Taurus") hereby file this Objection ("Objection") to the Chapter 11 Trustee's (the "Trustee") Motion for Entry of Order Extending Deadline for Trustee to File Avoidance Actions Under Bankruptcy Code Sections 108, 546(a), and 549 ("Tolling Motion"), and in support thereof respectfully state as follows:

**PRELIMINARY STATEMENT**

The Tolling Motion seeks relief on grounds that have recently been considered and squarely denied by this Court.  Specifically, the Trustee seeks to pre-emptively extend the statute of limitations for all future avoidance actions pursuant to either the doctrine of equitable tolling or

1

the time extension provisions of Bankruptcy Rule 9006[1]. However, in 2018, this Court specifically held that neither of those grounds permit a Court to extend the statutes of limitations in Section 546(a). In *In re: Walnut Hill, Inc.*, 2018 WL 2672242 (Bank. D. Conn 2018), the Honorable James J. Tancredi held that: (1) the doctrine of equitable tolling could not be used preemptively; and (2) Bankruptcy Rule 9006 could not be used to extend the time limits set forth by Congress in the Bankruptcy Code. *See e.g. In re: Walnut Hill, Inc.*, 2018 WL 2672242 at * 1-2. Nevertheless, the Trustee argues that the *Walnut Hill* holding can be disregarded merely by providing notice of the Tolling Motion to all prospective known and unknown defendants. However, such notice does not cure the core defect in the Trustee's request for equitable tolling. Per the applicable caselaw, the Trustee may only raise the doctrine of equitable tolling as a defense to a statute of limitations challenge in an adversary proceeding. Simply put, this Court currently lacks authority to grant the relief that the Trustee requests.

Moreover, even if this Court was inclined to disregard the holding of *Walnut Hill* and its progeny, the Trustee's Tolling Motion should still be denied as to Taurus. The Trustee has not alleged that Taurus has engaged in any conduct that has prevented the Trustee from bringing all of his claims in the already-pending adversary proceeding against Taurus. Statutes of limitation reflect the importance of finality and settled expectations in our civil justice system. As Congress noted, "the purpose of a statute of limitations [in Section 546] is to define the period of time that a party is at risk of suit." H.R. REP. 103-835, 49, 1994 U.S.C.C.A.N. 3340, 3358. Taurus is already a party to the Adversary Proceeding, and it would be manifestly unjust for this Court to further extend the statute of limitations for the Trustee to bring additional claims against Taurus when the Trustee could have done so within the prescribed statutes of limitation. As more fully

---

[1] As used herein, the term "Rule" refers to the Federal Rules of Bankruptcy Procedure.

discussed in this Opposition, Taurus respectfully requests that the Court deny the Trustee's Tolling Motion.

**RELEVANT BACKGROUND**

1.      On February 15, 2022, the debtor, Ho Wan Kwok (the "Debtor"), filed a voluntary petition for protection under Chapter 11 of Title 11 of the United States Bankruptcy Code in this Court, commencing the above-captioned bankruptcy proceedings.

2.      On July 11, 2023, the Chapter 11 Trustee, Luc A. Despins ("Trustee"), filed a complaint to commence an adversary proceeding (Adversary Proceeding No. 23-05017) (the "Adversary Proceeding") against Taurus seeking: (i) a declaratory judgment that Debtor is the equitable owner of certain real property, and for turnover of that real property to the Trustee; (ii) declaratory judgment that Debtor is the equitable owner of Taurus Fund, and for turnover of both Taurus Fund and Taurus Fund's assets to the Trustee; and (iii) declaratory judgment that Taurus Fund is Debtor's alter ego, and for turnover of both Taurus Fund and Taurus Fund's assets to the estate.

3.      On January 9, 2024, Trustee filed an Emergency Motion for Entry of Order, Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rules 2002 and 9014, (I) Approving Form and Manner of Notice of Trustee's Forthcoming Tolling Motion and (II) Scheduling Hearing (the "Notice Motion") [Dkt. No. 2494].  In the Notice Motion, the Trustee sought Court approval of the form and manner in which the Trustee would notice this Tolling Motion.

4.      On January 18, 2024, the Trustee filed this Tolling Motion.

5.      On January 19, 2024, the Court granted the Trustee's Notice Motion [Dkt. No. 2515], and approved the form notice of the Tolling Motion (the "Notice").

## ARGUMENT

6. The Court should deny the Tolling Motion because this Court does not have the power to grant the requested relief. As was recently held by this Court in *Walnut Hill*, it is premature to consider the equitable tolling doctrine at this juncture. Trustee's Notice does not cure this procedurally improper application of the doctrine. Moreover, as also held in *Walnut Hill*, Bankruptcy Rule 9006(b) cannot extend the deadlines enacted by Congress in a statute. In the alternative, even if this Court was to disregard the holdings of *Walnut Hill*, and rule that the Court does have the power to alter the statutes of limitation set forth in Section 546(a) of the Bankruptcy Code, the doctrine of equitable tolling should not be applied as to Taurus.

### A. Court Has no Power to Grant the Requested Relief

#### i. The Doctrine of Equitable Tolling Cannot Be Applied Prospectively

7. Taurus does not dispute that courts across the country have largely held that the doctrine of equitable tolling applies to the statues of limitations set forth in Section 546(a) of the Bankruptcy Code. *See e.g. Souden* v. *Citicorp (In re Souden)*, Docket Nos. 00-34501 (LMW), 08-3055 (LMW), 2009 Bankr. LEXIS 1019, at *9 (Bankr. D. Conn. Apr. 20, 2009) ("[T]he limitations period of Section 546(a)(1) is amenable to the doctrine of equitable tolling"). However, courts across the country have been inconsistent as to the proper timing of this doctrine's applicability. Courts in those states that have specifically considered the appropriate timing of the equitable tolling doctrine, such as in Connecticut, rule that equitable tolling <u>cannot</u> be applied prospectively. *See Walnut Hill*, 2018 WL 2672242 at *2. In *Walnut Hill,* this Court noted that "[p]rocedurally, the doctrine of equitable tolling is recognized as a **response to a statute of limitations defense** asserted in a **pending litigation**." *Id.*, *citing Long v. Abbott Mortg. Corp.* 459 F. Supp. 108, 113 (D. Conn. 1978) (emphasis added).

8. Specifically, when faced with a request to toll the statutes of limitation in Section 546(a) prior to expiration of these statues, the court in *Walnut Hill* found that:

> It is wholly premature and procedurally flawed to address equitable tolling outside the context of an evidentiary hearing on the facts and circumstances to be proven in the adversary proceeding against specific defendants, once a statute of limitations defense has been asserted.

*Id.* Since the decision in *Walnut Hill*, numerous courts have agreed with this holding. *See In re Cramer*, 636 B.R. 830, 832 (Bankr. C.D. Cal. 2022) ("The trustee remains free to raise equitable tolling at a later date after filing untimely complaints"); *In re Randolph Hosp., Inc.*, No. 20-10247, 2022 WL 19298765, at *1 (Bankr. M.D.N.C. Apr. 25, 2022) ("While the limitations periods of § 546 and § 108, like any statute of limitations, are subject to equitable tolling, the preemptive finding the Liquidation Trustee seeks is premature given there are no identified defendants and no pending adversary proceedings related to the overpayment claims").

9. While the Trustee does cite some out-of-circuit cases that have granted relief prospectively, none of these cases actually considered the proper timing of bringing an equitable tolling argument (and are not binding on this Court, in any event). In most of the Trustee's cited cases, the motions to extend time were granted unopposed (*In re Rockport Dev., Inc.*, Case No. 20-11339 and *In re Visiting Nurse Ass'n of Inland Counties,* Case No. 18-16908, both filed in the United States Bankruptcy Court for the Central District of California; and *In re Builders Holding Co.*, Case No. 16-06643 filed in the United States Bankruptcy Court of Puerto Rico), or were objected to on grounds other than equitable tolling (*In re Dwek*, Case No. 07-11757). The Courts in these cases never had an opportunity to consider the merits of the trustees' arguments on equitable tolling.

10. The two other allegedly prospective relief cases are also not helpful to the Trustee. In *In re Farwest Pump Company*, 2020 WL 257784 (Bankr. D. Ariz. 2020), the Court did not, in

5

fact, extend the deadlines to toll prospectively. There, the Committee of Unsecured Creditors filed its motion to toll <u>on</u> the deadline for the parties to file adversary actions to recover preference payments and/or fraudulent transfers. *In re Farwest Pump Company*, 2020 WL 257784 at *2. The court determined, "upon consideration of the totality of the circumstances," that the statutes of limitations had been equitably tolled because the court had yet to decide whether the Committee of Unsecured Creditors had standing to pursue fraudulent transfers and/or preference claims. *Id.* at 3-4 (emphasis added). This was not done prospectively, but rather, after the statute of limitations had expired. And, of course, in the case *sub judice*, there is no open question as to the Trustee's standing to pursue fraudulent transfers and/or preference claims.

11. Finally, in *Marsh v. Levy (In re Martin Levy of Berlin D.M.D., P.C.)*, 416 B.R.1, 8 (Bankr. D. Mass. 2009), there was never even an issue with respect to equitable tolling. There, the trustee's initial motion to extend the deadlines of Section 546(a), filed two days prior to the expiration period, did not actually cite to any law in support of an extension. Instead, the trustee's grounds were rooted in the facts of the case - there was still a pending a motion to compel against creditors for information that might result in one or more actions or proceedings. *Id.* at 3. No parties challenged this motion. Eventually, when the trustee filed the adversary proceeding, the defendants raised the statute of limitations defense. The court in *Marsh v. Levy* did not consider equitable tolling, but rather ruled on whether the defendants waived their statute of limitations defense when they did not object to trustee's initial motion. Again, an equitable tolling issue was never litigated.

12. Just like the *Walnut Hill* case, this matter has not yet reached the point where, procedurally, the doctrine of equitable tolling is relevant as to the prospective defendants. The statutory deadlines to file additional causes of actions have not yet passed. As to Taurus, there is

already a pending Adversary Proceeding in which statute of limitations has not been raised as an issue. The Trustee has not initiated any other adversary proceedings against Taurus. Thus, it is both wholly premature and procedurally improper to seek to extend a deadline by way of equitable tolling given the facts of this case.

### ii. The Notice is not Sufficient to Overcome *Walnut Hill*'s Holding.

13. The Trustee seeks to sidestep the holding of *Walnut Hill* and its progeny by providing the Notice of the Tolling Motion. The Trustee reasons that notice was the "primary concern" of the courts that have "declined to rely on equitable tolling to prospectively toll a statute of limitations." Tolling Motion at 13. None of the cases cited lend themselves to a reading that a simple notice could cure a premature equitable tolling defense.

14. In *Cramer*, the court did indeed express concern about the lack of notice to potentially affected parties because trustee's motion to equitably toll statutes of limitation to bring avoidance actions was brought *ex parte*. However, the holding was more fundamental: the court required the trustee to actually commence an adversary proceeding before the court could even consider the equitable tolling doctrine. *See In re Cramer*, 636 B.R. at 832 ("The trustee remains free to raise equitable tolling at a later date after filing untimely complaints.") Nothing from the reading of *Cramer* indicates that serving a notice of a motion to toll would cure the fact that it is premature to raise equitable tolling prior to initiating any avoidance actions. *Id.* at 833 ("[T]he trustee cannot win the argument of whether or not equitable tolling applies ***in advance*** and without notice and an opportunity for the defendant to resist application of the doctrine") (emphasis added); *see also Walnut Hill,* 2018 WL 2672242 at *2 ("[p]rocedurally, the doctrine of equitable tolling is recognized as a response to a statute of limitations defense asserted in a pending litigation") (emphasis added).

15. Similarly, and as quoted by the Trustee, the court in *In re Randolph Hospital, Inc.*, No. 20-10247, 2022 WL 19298765, *1 (Bankr. M.D.N.C. Apr. 25, 2022) denied, without prejudice, a motion to equitably toll the limitations period, to be renewed after the trustee "**initiates actions** against identifiable and properly noticed defendants." Tolling Motion at 13, *citing In re Randolph Hosp., Inc.*, 2022 WL 19298765 at *1 (emphasis added). Again, these cases indicate that serving a notice on prospective defendants is not enough for the Court to consider an equitable tolling doctrine to be properly raised.

16. Moreover, the common law doctrine of equitable tolling allows a court to "extend a statute of limitations on a <u>case-by-case</u> basis to prevent inequity." *In re Anderson*, 623 B.R. 199, 217 (Bankr. D. Conn. 2020) (emphasis added). Here, the Trustee is seeking a blanket extension of all statutes of limitation against all known and unknown potential defendants. At this point, none of the prospective defendants who received the Notice actually know what they could be potentially sued for, the grounds of such suit, or the amount in controversy. Without a properly filed and served complaint in an adversary proceeding, a potential defendant is unable to properly object, or to determine whether an objection would be appropriate, cost-effective, or worth the Court's time[2], to the Trustee's blanket application of the equitable tolling doctrine. Accordingly, the Court cannot make a proper determination as to whether equitable tolling is appropriate in every one of these situations on a case-by-case basis as required by law.

---

[2] Notably, here, the Trustee is asserting that equitable tolling should apply to hundreds of potential defendants. Currently, the *Walnut Hill* case gives those potential defendants significant comfort that Trustee's motion will be denied without their intervention. However, should the Court adopt Trustee's position and grant the motion, the next time such an issue arises, the Court would likely be flooded with hundreds of independent opposition briefs by potential defendants that need to protect against the *possibility* of a claim. The Court should never be faced with such a logistical nightmare; rather, by requiring the filing of adversary proceedings prior to the application of equitable tolling, it ensures that only actual defendants facing real claims will be litigating this issue in front of the Court.

### iii. Rule 9006(b) May Not Be Used to Extend Statutory Deadlines, Including Those In § 546

17. The Trustee's motion must also be denied because Rule 9006(b) does not provide the Court with authority to extend a statute of limitations that is set by Congress. As the Court held in *Walnut Hill*:

> Rule 9006(b) cannot apply to Section 546(a) without violating the separation of powers preserved in the Constitution. Where the legislature has spoken authoritatively, it is not within the province of the judiciary to modify its determination.

*In re Walnut Hill, Inc.*, 2018 WL 2672242, at *2

18. Pursuant to Rule 9006(b), the Court may only enlarge deadlines for "when an act is required or allowed to be done at or within a specified period ***by these rules or by a notice given thereunder or by order of the court***…." Fed. R. Bankr. P. 9006(b) (emphasis added). A plain reading of Rule 9006(b) confirms that the rule applies only to deadlines set by Court rules or Court order, not statutory deadlines.

19. Fundamentally, the plain language of Rule 9006(b) militates against using it to enlarge a Section 546(a) deadline, particularly in context of the language contained in other portions of the rule. Indeed, while Rule 9006(b) explicitly applies to "a specified period by these rules or by a notice given thereunder or by order of court," the section immediately above it, Rule 9006(a) applies to "computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order, *or in any statute* that does not specify a method of computing time." *See* Fed. R. Bankr. P. 9006(a) and (b) (emphasis added). Thus, the absence of language identical or similar to "or in any statute" in Rule 9006(b) while such language is present in Rule 9006(a) supports the conclusion that Rule 9006(b) is not intended to apply to deadlines articulated in the Bankruptcy Code, such as Section 546(a). *Walnut Hill* agreed with this reasoning. *See Walnut Hill*, 2018 WL 2672242 at *1 ("However, Rule 9006(b) is noticeably missing the same,

9

or similar, language involving its application to a statute [as Rule 9006(a) does]"). Simply put, Rule 9006(b) does not provide a mechanism by which the Court can enlarge the Section 546(a) deadlines.

### iv. Eleventh Circuit Opinion is Not Binding, and Adopts Faulty Argument

20. The Trustee argues that the Court in *Walnut Hill* got the decision wrong. *See* Tolling Motion at 15-16. Trustee urges this Court to adopt the analysis on this issue adopted by the Eleventh Circuit in *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689 (11th Cir. 2005). That case, which is not binding on this Court, involved very particular set of circumstances. Although the underlying Bankruptcy Court originally extended the deadline for the Committee to file avoidance actions under Rule 9006, the Committee had actually commenced an adversary proceeding by the time the defendant raised a statute of limitations defense and elevated the controversy to the Court of Appeals. As a result, the Eleventh Circuit analyzed this case not only under 9006(b), but also under the doctrine of equitable tolling in the context of a pending adversary proceeding. The Eleventh Circuit ultimately determined that the Committee satisfied its burden for equitable tolling in a pending adversary proceeding. In light of the Court's finding of equitable tolling, its discussion of Rule 9006 is effectively dicta.

21. To the extent the Court in *International Administrative Services, Inc.* actually addressed the operation of Rule 9006(b), the Court's analysis was unsound. The Court acknowledged that Rule 9006(b) did not explicitly apply to statutory deadlines, but concluded that because the Bankruptcy Rules generally discuss adversary proceedings, Rule 9006(b) can somehow be read to apply to statutory statutes of limitation. *In re Int'l Admin. Servs., Inc.*, 408 F.3d at 699. However, the adversary proceeding rules, Rules 7001, *et seq.*, do not discuss various statutes of limitations established by the Bankruptcy Code. Thus, Rule 9006(b) cannot be fairly read to apply to statutory deadlines to begin avoidance actions.

22. Moreover, Rule 9006(b) does not, in fact, apply to all the rules under its umbrella. As the Advisory Committee Notes to Rule 9006 state, "[i]n the interest of prompt administration of bankruptcy cases certain time periods may **not** be extended." Advisory Committee Notes to Fed. R. Bankr. P. 9006 (emphasis added). As evidence of this intent, Rule 9006(b), by its own language, says that it does not apply to all rules – it specifically carves out rules which the court may not enlarge – the filing of list of 20 largest unsecured creditors (Rule 1007(d), the meeting of creditors in general and the election of a Trustee under Chapter 7 (Rule 2003(a) and 2003(d)), time for filing a motion to alter or amend findings or for additional findings after entry of judgment (Rule 7052), time for filing a motion for a new trial or to alter or amend a judgment (Rule 9023), and time for filing a motion for relief from judgment or order (Rule 9024). Accordingly, the Court's reasoning in *International Administrative Services, Inc.* is faulty.

23. The Trustee cannot seriously ask the Court to disregard its own ruling in *Walnut Hill* to follow a non-binding Eleventh Circuit's ruling, especially when subsequent courts in the Eleventh Circuit have themselves narrowed the holding of *International Administrative Services, Inc.* For example, in a 2022 case, the United States Bankruptcy Court for the Southern District of Florida refused to preemptively extend the deadlines for Section 546(a) causes of action upon the same grounds as *International Administrative Services*, despite acknowledging that this case is the controlling case on 546(a) extensions in the Eleventh Circuit. *See In re Am. Purchasing Servs., LLC,* 2022 WL 17096649, at *3 (Bankr. S.D. Fla. Nov. 21, 2022) ("Although *International Administrative Services* is controlling law in this Circuit – bestowing this Court with authority to grant the requested relief – this Court reads *International Administrative Services* narrowly and based on a specific set of facts.") In *American Purchasing Services*, the Court concluded that the Eleventh Circuit's ruling merely "permits – but does not require – the Court to extend the section

11

546(a) deadline under appropriately egregious circumstances: like where the litigation targets themselves are stymying the trustee's discovery efforts." *Id.*

24.     In an interesting footnote, the Court in *American Purchasing Services* noted that

> *International Administrative Services* was decided in 2005 – about a decade before the Supreme Court held in *Law v. Siegel* that a bankruptcy court may not exercise Bankruptcy Code section 105(a) and its inherent powers in contravention of the Bankruptcy Code. 571 U.S. 415, 421 (2014) ("It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'") (quoting 2 COLLIER ON BANKRUPTCY ¶ 105.01[2], p. 105–6 (16th ed. 2013)). Although *International Administrative Services* does not specifically discuss section 105, the spirit of pre-*Law v. Siegel* section 105 jurisprudence certainly permeates the Eleventh Circuit's analysis.

*In re Am. Purchasing Servs., LLC*, 2022 WL 17096649, fn. 28.

25.     For all the foregoing reasons, this Court should not abandon the ruling of *Walnut Hill* in favor of a non-binding, criticized Eleventh Circuit opinion.

      **v.**      <u>**Section 105(a) of the Bankruptcy Code Is Not Applicable to Extend Statute of Limitations in Section 546(a).**</u>

26.     Section 105(a) of the Bankruptcy Code similarly cannot be used to extend the deadlines in Section 546(a). As a practical matter, if Section 105(a) could be used to extend the statutes of limitations in Section 546(a), litigants would rely on this Section when requesting extensions of time. The Trustee cites no direct cases on this point, and there are a dearth of cases on this issue as it relates to extensions of time to file avoidance actions.

27.     Section 105(a) of the Bankruptcy Code provides that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. 11 U.S.C.A. § 105. "Section 105(a) empowers the bankruptcy court to exercise its equitable powers—where 'necessary' or 'appropriate'—to facilitate the implementation of other Bankruptcy Code provisions. . .Although expansively phrased, section 105(a) affords bankruptcy courts <u>considerably less discretion than first meets the eye, and in no sense constitutes a roving</u>

commission to do equity." *In re Ludlow Hosp. Soc., Inc.*, 124 F.3d 22, 27 (1st Cir. 1997) (emphasis added). In 2014, the Supreme Court analyzed Section 105(a) and ruled that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Love. v. Siegel*, 571 U.S. 415, 421 (2014).

28. As stated, there are virtually no cases discussing the interplay between Section 546(a) and the extension of those deadlines pursuant to Section 105(a)[3]. However, courts have routinely refused to utilize Section 105(a) to extend other deadlines that are explicitly set forth in the Bankruptcy Code. In the most analogous cases, Courts have refused to utilize Section 105(a) to extend the time period to file adversary proceedings to dispute the dischargeability of certain debt. *See e.g. In re Hunter*, 552 B.R. 864, 870 (Bankr. D. Kan. 2016). As the court stated in *Hunter*, "[t]he Code and Bankruptcy Rules provide that untimely complaints are disallowed. Section 105(a) may not be employed in contradiction of the Code and Bankruptcy Rules to allow late-file complaints, even under the weight of equity." *Id.* at 871. Courts have also held that Section 105(a) could not be used to extend the statutory deadline that expressly limited the time period during which a plan could be filed. *See In re Randi's, Inc.*, 474 B.R. 783, 787 (Bankr. S.D. Ga. 2012). In *Randi's, Inc.*, the court looked at the general statutory interpretation principle that "a more general statute gives way to a more specific one when there exists friction between the two." *Id.* at 787-788. The court thus concluded that since one section of the Bankruptcy Code specifically set forth the deadlines by which the relevant plan needed to be filed, and "11 U.S.C. §

---

[3] While *American Purchasing Services* (discussed above) does reference Section 105(a) in passing, it does not discuss the application of Section 105(a) on requests to extend the time limits in Section 546(a). Instead, the court in *American Purchasing Services* delves into distinguishing the facts of the case before the court from those in *International Administrative Services*, a case that was decided prior to the Supreme Court limiting the reach of Section 105(a) in *Love v. Siegel*. Ultimately, the court reached its decision pursuant to the doctrine of equitable tolling, not Section 105(a).

105 is a general grant of equitable powers," the more specific statute with the deadlines governs. *Id.* at 788. Here, Section 546(a) has explicitly provided for statutes of limitations for filing avoidance actions. The Court may not utilize a more general statute, Section 105(a), to extend these deadlines.

29. The Trustee cites two cases for the proposition that "courts have specifically relied on section 105(a) to extend limitations periods set out in the Bankruptcy Code." Tolling Motion at 17, *citing Morgan v. United States (In re Morgan)*, 182 F.3d 775 (11th Cir. 1999) and *United States v. Richards (In re Richards)*, 994 F.2d 763 (10th Cir. 1993). Both of these cases deal with the provision of the Bankruptcy Code[4] dealing with statutorily-prescribed "priority status" periods for income tax claims. In *Morgan*, the Eleventh Circuit utilized the Bankruptcy Court's equitable powers under Section 105(a) to toll the three-year priority status afforded to tax liabilities. *Morgan v. United States (In re Morgan)*, 182 F.3d at 779. The Court held that "[d]ue to congressional intent, which favors allowing the government sufficient time to collect taxes, and the fear that taxpayers may abuse the bankruptcy process in order to avoid paying taxes, we hold that the equities will generally favor the government in cases such as this." *Id.* at 779-780. *Richards* was an earlier case, involving a similar issue with respect to the statutorily-prescribed priority status period of IRS' claims for unpaid income taxes. In *Richards*, the court suspended the Bankruptcy Code's 240-day assessment period for purposes of preserving the priority status of the IRS' claim for unpaid income taxes. *United States v. Richards (In re Richards)*, 994 F.2d at 765. Similar to *Morgan*, the court reasoned that tolling this period "preserves Congress's intent to afford the

---

[4] It appears that the Bankruptcy Code was revised in the interim between the decisions in *Richards* and *Morgan*. Accordingly, while it appears that the courts were considering different provisions of the Bankruptcy Code dealing with the priority status of income tax claims, these provisions are indeed the same for purposes of the present matter.

14

government certain time periods to pursue collection efforts, and at the same time prevents the debtor from avoiding priority by prolonging the initial bankruptcy proceeding." *Id.*

30. This matter is more akin to the cases dealing with the tolling of complaints to file nondischargeability actions, since Section 546(a) is a statute that dictates the time periods within which to bring avoidance actions. Accordingly, per the reasoning in *Hunter* and *Randi's, Inc.* as discussed above, Section 105(a) would not apply to extend the statute of limitations set forth in Section 546(a). As Congress noted, "the purpose of a statute of limitations [in Section 546(a)(1)] is to define the period of time that a party is at risk of suit." H.R. REP. 103-835, 49, 1994 U.S.C.C.A.N. 3340, 3358. It would go against Congressional intent to extend the period within which a party is at a risk of a lawsuit utilizing the equities power of Section 105(a).

### B. Trustee Is Not Entitled to Equitable Tolling.

31. Even if the Trustee could prove that this Court has the authority to extend the statute of limitations at this time, the Trustee is still not entitled to equitably toll the statutes of limitations for avoidance actions as to Taurus. "Equitable tolling is an **extraordinary remedy appropriate only in rare and exceptional circumstance**. . .in which a party is prevented in some extraordinary way from exercising his rights." *Anderson v. Lewis*, No. 3:20-CV-370 (VAB), 2023 WL 6378924, at *8 (D. Conn. Sept. 29, 2023) (emphasis added). "To obtain the benefit of the doctrine, the Trustee bears the burden of establishing that [he], '(1) has acted with reasonable diligence during the time period [he] seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *In re Anderson*, 623 B.R. at 217 (internal citations omitted).

32. While Trustee cites to cases where it is debtor's conduct that has led Courts to conclude that extraordinary circumstances exist to toll the statutes of limitation as to all parties, that is not a uniform understanding across all courts in this country. There is a considerable split

"in the case law regarding whether the **defendant** must have actively participated in the fraud or wrongful conduct that forms the basis for application of equitable tolling, or whether it is enough that the **debtor** fraudulently concealed the transfer." *In re Sasso*, 550 B.R. 550, 555–56 (Bankr. D.N.M. 2016), *citing In re Maxon Eng'g Services, Inc.*, 397 B.R. 228, 230 (Bankr. D.P.R. 2008) (emphasis added). The *Maxon* Court held that there must be a sufficient nexus between the fraudulent conduct and the **defendant** to apply equitable tolling to the limitations period set forth in Section 546(a). *In re Maxon Eng'g Services, Inc.*, 397 B.R. at 230.

33. This Court has not yet taken a stance on whether a Trustee must prove that the **debtor's** dilatory and/or fraudulent conduct is enough to apply equitable tolling to other parties. However, the Second Circuit Court of Appeals, and the one Court in this Circuit that has considered the issue – The United States Bankruptcy Court for the Southern District of New York, indicate that it is the **defendant's** conduct that must be considered in order to decide whether to apply the doctrine of equitable tolling. *See Bennett v. U.S. Lines, Inc.,* 64 F.3d 62, 66 (2d Cir. 1995) ("equitable tolling prevents the running of a statute of limitations against a plaintiff who is unaware that he has a cause of action because of **defendant's** fraudulent acts or concealment"); *see also In re Level 8 Apparel, LLC*, 2021 WL 1977161, *5 (Bankr. S.D.N.Y. May 17, 2021) (stating that equitable tolling is "available to a plaintiff who establishes that (1) the **defendant** concealed from plaintiff the existence of plaintiff's cause of action; (2) upon discovering the cause of action, plaintiff commenced an action within the time period prescribed by the applicable statute of limitations; and (3) plaintiff's ignorance of the cause of action was not the result of a lack of due diligence on his part").

34. Similarly, in *American Purchasing Services, LLC*[5], the Court reasoned that:

> . . .*International Administrative Services* does not give a trustee authority **to obtain a blanket extension of the section 546(a) deadline as to <u>all</u> potential litigation targets whenever a trustee is not yet ready – or professes to be unable – to bring his claims**. Rather, a trustee <u>must demonstrate sufficiently egregious actions by the litigation targets</u> or those in concert with them – similar to those detailed in *International Administrative Services* – to obtain such extraordinary relief.

35. *In re Am. Purchasing Servs., LLC*, 2022 WL 17096649, at *3 (emphasis added). But again, the Trustee must demonstrate the egregious actions by Taurus in order to obtain extension of the deadlines to file additional avoidance causes of action against Taurus. Mere allegations of wrongdoing by the Debtor are simply not enough to extend a blanket extension of the Section 546(a) deadlines as to all potential known and unknown defendants.[6]

36. Here, there are no allegations that Taurus's actions prevented the Trustee from bringing all of Trustee's avoidance claims against Taurus in a timely manner. The Trustee already initiated an adversary proceeding against Taurus in this bankruptcy proceeding almost seven months ago. Taurus has dutifully participated in discovery with the Trustee, until the matter was stayed at the Trustee's request a few days ago. It is manifestly prejudicial to Taurus to have the Court extend statute of limitations so that Trustee could bring additional causes of action against Taurus. Statutes of limitation exist for a reason – they reflect the importance of finality and settled

---

[5] The case in which the U.S. Bankruptcy Court for the Southern District of Florida narrowed the ruling of *International Administrative Services, Inc.*, as discussed in Section A(iv) above.

[6] In ¶ 51 of the Tolling Motion, the Trustee cites to *In re Fundamental Long Term Care, Inc.*, 501 B.R. 784, 791 (Bankr. M.D.Fla. Nov. 13, 2013) for the proposition that if one potential defendant engaged or participated in blocking the Trustee's discovery, then the deadline should be tolled as to all claims. Tolling Motion at 21. *Fundamental Long Term Care* was decided before *American Purchasing Services*, also a Florida case. There is a possibility that had *Fundamental Long Term Care* been decided after *American Purchasing Services*, it would not have made such a proclamation regarding tolling the statute of limitations as against all prospective defendants.

expectations in the civil justice system. As Congress noted, "the purpose of a statute of limitations [in Section 546] is to define the period of time that a party is at risk of suit." H.R. REP. 103-835, 49, 1994 U.S.C.C.A.N. 3340, 3358. And as the Supreme Court pointedly stated, "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992). The Trustee has failed to allege facts that would support the application of the equitable tolling doctrine as Taurus.

## CONCLUSION

For all the foregoing reasons, Taurus Fund and Taurus Management respectfully request that: (1) the Court deny the Tolling Motion; and (2) grant such and further relief that is necessary and just.

Dated: February 5, 2024
New York, New York

                                                                        LAZARE POTTER GIACOVAS & MOYLE LLP

                                                                        By: /s/ Michael T. Conway
                                                                        Michael T. Conway
                                                                        Lazare Potter Giacovas & Moyle LLP
                                                                        747 Third Avenue, 16th Floor
                                                                        New York, NY 10017
                                                                        Telephone: (917) 242-1597
                                                                        mconway@lpgmlaw.com

                                                                        *Counsel for Taurus Fund LLC, Scott Barnett, as Trustee of Taurus Fund and Taurus Management LLC, as Trustee of Taurus Fund LLC*

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on February 5, 2024, a copy of the foregoing Opposition was served on all parties of record via CM/ECF.

Dated: February 5, 2024                              /s/     Michael T. Conway
                                                                            Michael T. Conway