```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
                         BRIDGEPORT DIVISION

In Re                          *   Case No. 22-50073 (JAM)
                               *
HO WAN KWOK and GENEVER        *
 HOLDINGS CORPORATION,         *
                               *
               Debtors.        *


GENEVER HOLDINGS LLC,          *   Adv. Proc. No. 23-05007
                               *
               Plaintiff,      *
      v.                       *
                               *   Bridgeport, Connecticut
AIG PROPERTY CASUALTY          *   January 30, 2024
 COMPANY,                      *
                               *
               Defendant.      *
                               *
     *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

                       TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE JULIE A. MANNING
                   UNITED STATES BANKRUPTCY JUDGE

                   #51 MOTION FOR SUMMARY JUDGMENT

APPEARANCES:

For Genever Holdings LLC:        MICHAEL T. McCORMACK, ESQ.
                                 O'Sullivan McCormack Jensen &
                                  Bliss PC
                                 180 Glastonbury Blvd.
                                 Suite 206
                                 Glastonbury, CT  06033


Chapter 11 Trustee:              LUC A. DESPINS, ESQ.
                                 Paul Hastings LLP
                                 200 Park Avenue
                                 New York, NY  10166




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES: (Cont'd)

For AIG Property Casualty:          JOHN FREDERICK O'CONNOR, JR.,
                                     ESQ.
                                    Steptoe & Johnson  LLP
                                    1330 Connecticut Avenue, NW
                                    Washington, DC  20036

                                    MICHAEL P. THOMPSON, ESQ.
                                    Gordon & Rees LLP
                                    Gorden Rees Scully Mansukhani
                                    95 Glastonbury Blvd.
                                    Suite 206
                                    Glastonbury, CT  06033

1       (Proceedings commenced at 2:10 p.m.)

2          THE COURT:  On the calendar at 2:00 p.m., so I ask

3   the courtroom deputy to please call the calendar.

4          THE COURTROOM DEPUTY:  Case No. 23-5007, Genever

5   Holdings LLC versus AIG Property Casualty Company.

6          THE COURT:  Good afternoon.  If we could have

7   appearances for the record, please.

8          MR. McCORMACK:  Good afternoon, Your Honor.  On

9   behalf of the plaintiff Genever Holdings LLC, I am Michael

10  McCormack from O'Sullivan McCormack Jensen & Bliss.

11         THE COURT:  Good afternoon.

12         MR. McCORMACK:  And with me is Luc Despins.

13         MR. DESPINS:  Chapter 11 Trustee, Your Honor.

14  Thank you.

15         THE COURT:  Good afternoon.

16         MR. O'CONNOR:  Good afternoon, Your Honor.  John

17  O'Connor and Michael Thompson for AIG.

18         THE COURT:  Good afternoon.

19         MR. THOMPSON:  Good afternoon, Your Honor.

20         THE COURT:  So Mr. McCormack, this is your motion,

21  correct?

22         MR. McCORMACK:  Yes, it is, Your Honor.

23         THE COURT:  Please proceed.

24         MR. McCORMACK:  Thank you.  Does Your Honor prefer

25  if I argue from the table or the --

1           THE COURT:  You can -- you can argue wherever

2     you're comfortable.

3           MR. McCORMACK:  Thank you, Your Honor.

4           THE COURT:  It's fine with the Court.

5           MR. McCORMACK:  Your Honor, this is our motion for

6     summary judgment on count four of the adversary complaint,

7     in which we seek a declaratory judgment that AIG Property

8     and Casualty Company is obligated to provide coverage under

9     the property insurance coverage section of the insurance

10    policy that it issued to Genever Holdings for the period

11    March 6th, 2023 to March 6th, 2024.

12          We seek declaratory relief that Genever is

13    entitled to coverage for its fire losses that it sustained

14    in the form of property damage and contents losses as a

15    result of the fire.

16          And as we indicate in our brief, in a declaratory

17    judgment action involving insurance coverage there are two

18    issues.

19          One is is -- has the insured triggered coverage

20    under the insuring agreement?  And if it has, has the

21    insurance company met its burden of proving that an

22    exclusion clearly and unambiguously takes it out of

23    coverage.

24          And under the undisputed facts and the record

25    evidence, Genever has established coverage under the

1    insuring agreement of the property insurance policy.

2         First, this is an all-risk insurance policy for

3    purposes of property coverage.  And by it's clear terms, it

4    provides coverage to the named insured, Genever, against all

5    risks of direct physical loss or damages to your house,

6    contents. and other permanent structures.  And under the

7    clear terms of the policy, the definition of you or your is

8    the named insured, Genever Holdings.

9         And so for purposes of coverage for property loss

10   under an all risk insurance policy, the insured has to prove

11   three things.

12        Number one, that there is the -- there is an all

13   risk insurance policy.

14        Number two, that the insured has an insurable

15   interest in the subject of the insurance policy and the

16   insured contents.

17        And number three, there was a fortuitous loss of

18   covered property.

19        And as we set forth in our brief, based upon the

20   undisputed facts and the law, all three of those elements

21   are met here.

22        One, as I indicated, it's an all risk policy.

23   That's determined by the clear terms of the policy.  And

24   that is a question of law for the Court.

25        Two, there is no dispute that Genever Holdings LLC

1    was the owner of the 18th floor apartment at the Sherry-

2    Netherland that caught fire and for which coverage is

3    sought.

4              And third, there is no dispute and cannot be

5    dispute that this was a fortuitous loss to the named

6    insured.

7              As we indicate in our brief, a fortuitous loss --

8    a loss is fortuitous, it's a question of law.  A loss is

9    fortuitous unless the loss results from inherent defect,

10   ordinary wear and tear, or intentional misconduct of the

11   insured.

12             And there is no evidence to indicate that there

13   was any intentional conduct of Genever Holdings LLC.  And

14   there is no evidence that this was anything involving -- a

15   loss involving an inherent defect or ordinary wear and tear.

16             So as the evidence we put forth in the motion for

17   summary judgment we think is undisputed, we have triggered

18   an obligation of AIG to provide coverage under the all-risk

19   policy portion of the policy.

20             Now, to avoid coverage, AIG has to come forward

21   with evidence to show that an insuring exclusion clearly and

22   unambiguously applies.  And as we indicate in our brief,

23   that's a heavy burden for an insurance company.

24             In order to avoid coverage under an exclusion, an

25   insurer has to show that an exclusion is clear and

1    unmistakable in its language, it's subject to no other

2    interpretation, and it clearly applies to the particular

3    facts of the case.

4              And here, AIG has not put forth any evidence to

5    show that there's an exclusion that takes away coverage

6    after Genever has established that it sustained a loss under

7    the all-risk policy.

8              In its opposition and in its special defenses, AIG

9    cited three or four exclusions.  And they don't state that

10   the exclusions apply.  They simply state that Genever is not

11   entitled to coverage if or to the extent the exclusions

12   apply.  They've not met their heavy burden of proving that

13   any of the exclusions apply.

14             They have cited an intentional acts exclusion, a

15   dishonest acts exclusion, a business property exclusion, and

16   a -- I forget what the other one is, but it's in our brief,

17   I apologize, Your Honor -- but they don't rely upon -- they

18   don't cite the business property or they don't provide any

19   evidence to show that the business property exclusion or the

20   other exclusions apply.

21             What they argue here, and this is critical, is

22   they argue that there's a question of fact as to the cause

23   and origin of the fire and whether Mr. Kwok may have been

24   involved with the fire.  And those simply are not issues of

25   fact for purposes of the issue whether Genever is entitled

1      to declaratory relief.

2              And the reason for that is because, number one,

3      Genever under an all-risk policy does not have to establish

4      the precise cause of the loss.  It just has to establish

5      that it was a fortuitous loss, not involving intentional

6      conduct on the part of Genever.  That's been established

7      here.

8              And what AIG argues throughout their brief, and I

9      think they've argued throughout this case, is that somehow

10     Mr. Kwok is an insured under the policy, or they believe

11     that Mr. Kwok was insured under the policy, and if he were

12     insured under the policy, that they would be able to rely

13     upon the exclusions, the intentional act exclusions and the

14     dishonest act exclusions.

15             And all the Court needs to do to show -- to

16     conclude that AIG has not met its burden of proving that

17     they can avoid coverage for property loss under the

18     exclusions is look at the clear and unambiguous terms of the

19     exclusions.  And that's in the policy.  It's exclusion

20     number 21 and 22.

21             The intentional acts exclusion specifically says

22     we do not cover any loss caused by any act whose

23     consequences could have been foreseen by a reasonable person

24     committed by, by or at the direction of you, your spouse, or

25     a family member, and with the intent to cause loss or

1   damage.

2        That language is significant because it is limited

3   to conduct committed by you, your spouse, or a family

4   member.  And under the clear and unambiguous terms of the

5   policy, the definitions, the term you and your specifically

6   refers to Genever LLC.  It does not refer to an individual.

7        And so, therefore, AIG has not met its burden of

8   establishing that the intentional act exclusion allows them

9   to avoid coverage under the property coverage section of the

10   policy.

11        The dishonest acts exclusion is exclusion 22.  And

12   for the Court's reference, I'm referring to the policy at

13   page 21 of 45, document No. 66-5.

14        Again, a dishonest acts exclusion states we do not

15   cover any loss caused by any dishonest or criminal act by or

16   at the direction of you or any family member.  Again, that

17   definition of you is limited to Genever Holdings.

18        So, Your Honor, with respect to -- there's no

19   factual basis on which AIG could establish or has

20   established that these exclusions apply.

21        I want to address the argument they make with

22   respect to the fact that they -- or they argue that they

23   were led to believe that Mr. Kwok was the member of Genever

24   LLC, and they learned after the fire that that was not true,

25   that Genever (BVI) was the member of the LLC.

1    As we submit in our papers, and in particular our

2    reply brief, that issue does not create any material issue

3    of fact in this case because the clear terms of the policy

4    limit the property coverage of the policy to coverage for

5    the named insured, Genever.

6    And there's no dispute that Genever was the owner

7    of this apartment that caught fire at all times from 2018 up

8    until the date of the fire.

9    What AIG argues in their brief, and they argue

10   this incorrectly, is that had Mr. Kwok been the member of

11   Genever LLC, he would have been insured under the policy.

12   And they argue that they somehow could have argued that

13   if he was involved with the fire, or that there's -- if

14   there's a question of fact as to whether he was involved in

15   the fire, then that should defeat summary judgment because

16   then the insured would have -- there is a question as to

17   whether the insured would have been involved in the fire.

18   But as we submit in our reply brief, and this is

19   under again the clear terms of the policy, which is a

20   question of law to be interpreted by the Court, the AIG

21   relies upon what's called the additional insured

22   endorsement, or, I'm sorry, insured person endorsement, and

23   that's found in the policy, specifically page 44 of 45, and

24   page 45 of document No. 66-5.

25   And that's the document that AIG relies upon to

1    say that they understood that Mr. Kwok was the member of

2    Genever LLC and they believe that he would have been an

3    additional insured under the policy.

4            But that endorsement, by it's clear and

5    unambiguous terms, only applies to liability coverage under

6    the policy, a situation where somebody is suing Genever LLC

7    claiming Genever is liable for some type of loss.  That's

8    the liability coverage.

9            The fourth claim for relief seeks property damage

10   under the property coverage.  That's a completely separate

11   coverage element.

12           And all that this insured person endorsement says,

13   it says that with respect to the liability coverage,

14   liability only applies to an occurrence arising out of the

15   ownership of the residence listed above.

16           Additionally, the limited liability corporation

17   members and managers of the limited liability corporation

18   are an insured person with respect to ownership of the

19   house.

20           As I said, all that does is indicate that if

21   there's an individual member of the LLC, and there's a claim

22   for liability brought against that member, that member may

23   be an insured under the policy for purposes of liability

24   coverage only.

25           It does not change the terms of the property

1     coverage section of the policy which is section two of the

2     policy.

3           And that's the reason why AIG's argument that they

4     somehow were misled to believe that Mr. Kwok was the member

5     and they issued the policy based upon that makes no material

6     difference and does not create a question of fact.  Because

7     at all times, under this -- at all times, AIG wrote the

8     policy with Genever as the named insured.  No dispute.  No

9     dispute that Genever owned the apartment at all times.

10          And under the clear terms of the policy, the

11    property coverage only applies to the property owned by

12    Genever.  It does not provide coverage to people who are not

13    named insureds under the policy.

14          In opposition to the motion for summary judgment,

15    there's an argument made that the motion is premature and

16    that there has to be -- there is a need for discovery on a

17    variety of topics.

18          Again, as we point out in our reply brief, there

19    is no additional discovery that would create a material

20    issue of fact with respect to whether property coverage

21    exists under part two of the policy for Genever.  And the

22    reason for that is because it's an all risk policy.

23          The Court looks at the terms of the policy and

24    determines whether Genever has met its burden of proof of

25    triggering coverage and whether AIG has established its

1   heavy burden of showing that an exclusion applies and it has

2   not.

3          They argue that discovery may determine the cause

4   or origin of the fire.  As I indicated previously, the cause

5   and origin is not an element of proof for purposes of

6   establishing property coverage under this policy.

7          They also argue that they might -- they want

8   discovery with respect to the application process back in

9   2018.

10          Again, as I explained, that doesn't make a

11   difference whether Mr. Kwok was a member of the LLC or, as

12   the true facts are of the -- or the facts are that Genever

13   (BVI) was the sole member of Genever LLC, it can't change

14   the clear terms of the policy.

15          And I think what's important also for the Court is

16   there's no evidence of any misrepresentation by Genever LLC.

17          But importantly, if you accept this argument that

18   they want discovery to determine whether Mr. Kwok was or was

19   not the member of Genever LLC and what AIG thought, it

20   doesn't matter for purposes of the events in 2023.

21          Because as I explained earlier, if Mr. Kwok was

22   the member of Genever LLC, like AIG argues it believed, he

23   would have only been insured or could have only been insured

24   under limited circumstances for liability purposes.  It

25   wouldn't -- would not make a difference for purposes of the

1     property coverage.

2              And so, therefore, whatever they learned, it makes

3     no difference with respect to the risk that AIG insured the

4     apartment building.

5              Second, as the Court is aware, and as we put forth

6     in our brief, in August of 2022, Mr. Kwok was stripped of

7     any economic ownership or any rights that he had in any

8     property or in any corporations.

9              So even if this -- even if AIG believed that he

10    was the member of Genever LLC in 2018, as of August of 2022

11    and September of '22, he was stripped of any ownership

12    interests and Clair Ebrehart was entered as a -- or was

13    appointed as the Director of Genever (BVI) and, therefore,

14    the -- which was the member of Genever LLC.

15             And so when you fast forward to the March fire,

16    there's no issue with respect to any ownership interest or

17    membership interest that this -- Mr. Kwok as an individual

18    may have had as AIG, you know, claims it believed.

19             So the point is, Your Honor, is that whatever

20    happened in 2018 doesn't change the clear terms of the

21    policy language here and doesn't change the undisputed fact

22    that he would -- if he were a member of the LLC in 2018, he

23    would have been removed in this bankruptcy proceeding in

24    August of 2022.

25             And finally, you know, again this goes with

1    respect to the issue of whether or not Mr. Kwok was an

2    insured under the policy, AIG argues that Genever should be

3    estopped from arguing that he was not an insured under the

4    policy.

5            And as we put forth in our brief, the issue of

6    estoppel does not create a question of fact because the

7    issue of estoppel cannot be used by AIG to alter the clear

8    terms of the policy.

9            Accepting AIG's argument would be, in effect,

10   asking the Court to rewrite the clear and unambiguous terms

11   of the property coverage of the policy, section two.  And as

12   we state in our reply brief, the Court is not allowed to do

13   that.

14           And so in sum, Your Honor, I don't think there's

15   any dispute based upon the record evidence that Genever met

16   its burden of establishing a right to property coverage

17   under the policy.

18           And AIG has not come forward with evidence,

19   admissible evidence, to, one, show that an exclusion clearly

20   and unambiguously takes away coverage or that there's a

21   question of fact out there as to whether a particular

22   exclusion would apply.

23           And for those reasons, under the law, Genever is

24   entitled to a declaratory judgment establishing that there

25   is property coverage under the terms of the policy.

1          Thank you, Your Honor.

2          THE COURT:  I just have one question.

3          MR. McCORMACK:  Sure.

4          THE COURT:  I think I understand, but I want to

5     make sure I do.

6          When you were -- before I hear from Attorney

7     O'Connor, I want to -- you said, and I believe this is what

8     you were saying, so I just want to make sure I am accurate,

9     that the membership of Genever LLC changed in 2022.  And

10    you're talking about when the Trustee had proceedings in the

11    BVI that changed the membership structure?

12         MR. McCORMACK:  That's correct, Your Honor.

13         THE COURT:  All right.  That's what I wanted to

14    make sure.

15         MR. McCORMACK:  Yes.

16         THE COURT:  Okay.

17         MR. McCORMACK:  Yes.

18         THE COURT:  Thank you.

19         MR. McCORMACK:  And on that point too, just on the

20    issue of their claim that they need more discovery, I think

21    it's important to remember, as we point out in our brief,

22    that they have had since about May of last year to conduct

23    whatever discovery they wanted in terms of cause and origin

24    or anything and they -- they've done some discovery, they

25    just haven't pursued any additional discovery.

1          They did not pursue any discovery on the issues

2     raised in our summary judgment after the motion was filed.

3     And they've not pursued any discovery up to this point.

4          So the argument that, you know, they want

5     additional discovery before the Court rules on the summary

6     judgment should not be accepted.

7          The Court has everything it needs for purposes of

8     interpreting this policy and determining as a matter of law

9     whether or not Genever has triggered or has established a

10    right to coverage under the property coverage portion of the

11    policy.

12         Thank you.

13         THE COURT:  Thank you.

14         Attorney O'Connor.

15         MR. O'CONNOR:  Your Honor, I'll proceed from the

16    podium.

17         THE COURT:  Sure.  Whatever you're comfortable

18    with.

19         MR. O'CONNOR:  Thank you, Your Honor.

20         The posture we're at here today is a lot different

21    from the one that existed at the time of the preliminary

22    injunction motion.

23         At the PI hearing, the Court needed to make

24    factual calls, and that's expected, and that's understood,

25    and that's appropriate.  That is not the procedural posture

1      we're in right now.

2              Right now all disputed issues of material fact

3      must be resolved in favor of my client.  And we still have

4      four months of discovery left.

5              So the question isn't even really do all the

6      factual disputes that exist right now are there any that

7      would preclude summary judgment, but it's can we really say

8      that -- I can confidently say none would -- no additional

9      factual disputes will be developed in the four months that

10     we have left of discovery.

11             I mean, the Court set a discovery schedule in

12     November, provided for seven months of discovery.  We have

13     four months left of that period.  And I think AIG is

14     entitled.

15             I mean, I think the evidence we have right now is

16     sufficient to defeat summary judgment, but we're entitled to

17     continue to build on that and we have four months to do it.

18     And there was no requirement that you do this in month one

19     and this in month two.  We have seven months to do discovery

20     and that goes all the way until May 17th.

21             I want to talk about -- one of the things Mr.

22     McCormack talked about was the various defenses that AIG has

23     propounded in this case.

24             And three of them in particular I think are

25     important for purposes of this motion.  And those are

1    misrepresentation, estoppel, and subsumed within those there

2    are agency concepts.

3           And thing that all three of those have in common

4    is they're almost never properly resolved on summary

5    judgment.  And it's particularly when there's -- when

6    discovery has not even been completed, because those are

7    deeply imbedded -- they involve deeply imbedded questions of

8    fact.

9           I want to start with misrepresentation because I

10   think the way that Genever has framed that is incorrect.

11          Genever I think doesn't seriously argue that AIG

12   was told the correct facts about the ownership of Genever

13   either at the issuance of the first policies in 2018 or at

14   renewal in 2023.

15          AIG's understanding, provided by Wolfson, the

16   broker, was that Mr. Kwok was the sole member of this LLC.

17   Because as Jordan Gerber testified at the preliminary

18   injunction hearing, and his testimony is in the summary

19   judgment record, ordinarily the market that AIG sells

20   insurance to is individuals.

21          And sometimes those individuals will have an LLC

22   because they want to, you know, not have their name in the

23   property records or whatever, but they want an individual

24   standing behind that property.

25          And so the argument, they take misrepresentation

1    as if that's got to somehow go to one of the other defenses

2    in the case, but that's not true.

3            Under New York Law, which I think everyone agrees

4    applies here, if a misrepresentation is made to the insurer

5    such as the insurer would not have issued the policy if it

6    had known the true facts, the insurer is entitled to

7    disclaim coverage on that basis and rescind the policy.

8            And what do we have in the summary judgment

9    record?  Mr. Gerber's testimony at the preliminary

10   injunction hearing, and we also have his declaration, and

11   what does he say at paragraph 8, AIG's PCG, that's private

12   client group, would not have issued the policies based on

13   the information received if its underwriters had been

14   correctly informed that a holding company, and not Mr. Kwok,

15   owned Genever.  Would not have issued.  And the Court has to

16   credit that on summary judgment.

17           And so if that fact is established by the fact

18   finder at a trial of this case, then we would be entitled to

19   avoid coverage based on misrepresentation because we were

20   insuring a collection of people and entities that we didn't

21   understand.

22           AIG had an understanding that it was insuring

23   Genever Holdings, an LLC that just owns this apartment, and

24   a couple of other servants quarters and one guy, and instead

25   it was insuring a British Virgin Islands company.

1          And that became important, not because the British

2     Virgin Island company is out doing other business, but it

3     became important because then, when the Trustee came in late

4     in 2022 and changed the ownership of Genever (BVI), that all

5     occurred without AIG knowing that this change in ownership,

6     and the change in the circumstances of who was an insured

7     under the policy, had occurred because it got done above

8     Genever Holdings.  It got done at the British Virgin Islands

9     level.  So you have misrepresentation.

10         Now, one of the things that Genever has said is,

11    well, the misrepresentation was relayed to AIG by the

12    broker.  And the Court found at the -- at the preliminary

13    injunction stage, where it has to make factual calls, that

14    more likely than not the broker would be found, at a trial,

15    to be AIG's agent.

16         Now, with respect, we disagree with the Court's

17    finding there.  We acknowledge it had to make a finding and

18    it was appropriate to make a finding.

19         It's not appropriate to make a finding here at

20    this stage because now we're talking -- we're not talking

21    about injunctive relief, we're talking about the whole

22    enchilada.  We're talking about a judgment.  And we don't

23    make judgments on summary judgment based on the Court's

24    weighing of the evidence.

25         The evidence here, and Mr. Gerber was very clear

1    about that in paragraph 23 of his declaration where he said

2    at no time did Wolfson act as AIG's agent in connection with

3    the issuance of the insurance policies to Genever.  Wolfson

4    was acting on Genever's behalf with respect to issuance and

5    renewal of the AIG policies.

6          The decision whether to issue or to renew Genever

7    -- the Genever policies was made by AIG based on information

8    provided to it by Genever and its broker Wolfson.

9          So the summary judgment record has clear evidence

10   from Mr. Gerber that Wolfson was acting on behalf of the

11   policy holder, not on behalf of AIG, did not have any

12   authority with respect to issuance of the policies.  That

13   authority rested solely with AIG and that has to be accepted

14   at the summary judgment stage.

15         And turning to estoppel, as we've stated in our

16   brief and stated at the preliminary injunction hearing, one

17   of our points is Genever should be estoped from denying

18   that Mr. Kwok was the sole member of Genever Holdings LLC,

19   because AIG had been told that he was and AIG proceeded on

20   that basis in issuing and renewing the policies.

21         And that becomes significant when we have a fire.

22   And lord knows, I'm not suggesting that Mr. Despins had

23   something to do with the fire, but AIG's understanding was

24   that Mr. Kwok was the owner of Genever, not Mr. Despins,

25   which turned out to be the facts that had been undisclosed

1    to AIG.

2          And Genever does -- they misread read the LLC

3    endorsement at the back of the homeowner's policy.  There's

4    two sentences there.  One sentence says the member or

5    members of an LLC are additional insureds for purpose of

6    liability.  A separate sentence says they're an insured with

7    respect to ownership of the premises.

8          So they -- you know, to AIG's understanding at all

9    times, Mr. Kwok was an insured with respect to the property

10   coverage and the liability coverage that was issued under

11   those policies.

12         Now, we've cited a number of cases in our brief

13   that say estoppel almost never should be decided on summary

14   judgment because it's they're deeply imbedded questions of

15   fact about reliance, reasonable reliance, those are issues

16   that get sussed out at a trial.

17         They don't get sussed out generally on summary

18   judgment, and certainly not on summary judgment when we're

19   four months before the close of discovery and not all the

20   facts have been developed.

21         I want to add that there's no practical benefit to

22   doing summary judgment piecemeal partway through discovery,

23   and presumably they'll be summary judgment motions at the

24   end of discovery.

25         One, as for the reasons I've said here, if the

1    Court were to grant summary -- partial summary judgment when

2    we have clear facts in the record relating to

3    misrepresentation, estoppel, and agency, and we have four

4    months more of discovery that would be chopped off,

5    truncated, at least as it relates to coverage under the

6    property policy, in our view, that would be injecting error

7    into this process and we'd have to do it all again at some

8    point when summary judgment's going to get done again in

9    four months or five month, whenever the summary judgment

10   deadline is.

11        But as a practical matter, it doesn't even move

12   this claim along because partial summary judgment doesn't

13   advance final resolution of the claim because you can't

14   execute on a grant of partial summary judgment.

15        It also doesn't really narrow the discovery in any

16   meaningful way because, as Genever points out, we need to

17   take discovery on all of the other claims in this case,

18   which include the third-party liability claims that Genever

19   has made, the bad faith claim that Genever added when it

20   amended its complaint in December.

21        So there's not a practical benefit to taking a

22   pause half way through discovery, or not even half way

23   through discovery, and saying I'm going to rule on this now

24   when the record is replete with evidence.

25        One, I'm refuting the positions that Genever is

1     taking with respect to misrepresentation, estoppel, and

2     agency.

3            Two, there's still discovery to be taken with

4     respect to the cause of the fire, which is likely to inform

5     multiple of the defenses in this case.

6            And three, when there's just no practical benefit

7     to it.

8            If the Court has questions, I'm happy to take

9     them, but we just think this is premature to do this in the

10    middle of discovery.

11           And I think Mr. Gerber's declaration clearly sets

12    forth disputed facts on misrepresentation, agency and

13    estoppel.

14           THE COURT:  The only question I have at the

15    moment, and I just don't have the page cite in front of me

16    of the policy, you were saying that there was a provision in

17    the policy that said -- that supports your argument that if

18    Mr. Kwok was the member of the LLC that he would be an

19    additional insured -- and I don't know if that's the exact

20    term you used, so I apologize, I may be using the wrong term

21    -- but you were arguing, when you were talking about the

22    broker and whether the broker was really an agent of AIG,

23    you were talking about misrepresentations and you were

24    saying that -- you were pointing me to a provision that I

25    don't know that I looked at before.

1              MR. O'CONNOR:  I can point Your Honor to it.

2              THE COURT:  Okay.

3              MR. O'CONNOR:  And just to clarify the argument,

4      misrepresentation doesn't really have much to do with the

5      LLC endorsement, because all that really matters for

6      misrepresentation is AIG was told a set of facts, those

7      facts were false or incorrect, even innocently incorrect,

8      and if AIG had known the truth, it actually would not have

9      issued the policy that it issued.  So those don't even get

10     to that.

11             But the endorsement does bear on issues relating

12     to estoppel.

13             THE COURT:  Okay.

14             MR. O'CONNOR:  And the page is -- it's ECF 66-5,

15     and at the PDF, 44-45.  It's the second to last page of the

16     exhibit.

17             THE COURT:  Okay.  I just want to make sure I had

18     the -- I'm looking at what you're asking me to, well, what

19     you were discussing during your argument and I want to make

20     sure I had the right cite.

21             MR. O'CONNOR:  Yes, Your Honor.

22             And one thing I should have said on estoppel that

23     I didn't is really what Genever says about estoppel is you

24     can't rewrite policy.  I agree with that, 100 percent agree

25     with that, but that's not what estoppel does here.

1        What estoppel does here is it estops Genever from

2    asserting a set of facts that are inconsistent with what it

3    told AIG at the time that AIG issued the policies and

4    renewed them.  We're not trying to change what the policy

5    says.  We're trying to prohibit Genever from changing

6    courses from what it initially told AIG.

7        Thank you.

8        THE COURT:  Okay.  Thank you.

9        Mr. McCormack, would you like to respond?

10        MR. McCORMACK:  Your Honor, with the Court's

11    permission, may I just have a few moments to confer with my

12    client?

13        THE COURT:  Certainly.  Certainly.

14        MR. McCORMACK:  Thank you.

15    (Pause.)

16        MR. McCORMACK:  May I just step out, Your Honor?

17        THE COURT:  Certainly.

18        MR. McCORMACK:  Thank you.

19    (Pause.)

20        MR. McCORMACK:  Thank you, Your Honor.

21        I want to direct the Court back to the insured

22    person endorsement that Attorney O'Connor -- or which

23    Attorney O'Connor was just referring to.  And as I mentioned

24    in my opening portion, that is document No. 66-5.  It's

25    pages 44 and 45 of document 66-5.  That endorsement does not

1    say what Attorney O'Connor indicated it says.

2              It specifically starts out with respect to

3    coverage provided by this endorsement, all provisions and

4    conditions of the policy apply unless they are changed by

5    this endorsement.  And then there are three sections.

6              A refers to part three, liability.  Part three

7    liability is part three for liability coverage of the

8    policy.  Our request for declaratory relief is under part

9    two, property of the policy.  So that first paragraph

10   doesn't apply to this property coverage claim.

11             And then it has paragraph B.  It simply identifies

12   the address of Genever Holdings LLC as 71 Fifth Avenue, 18th

13   Floor, New York.  That's the location of the apartment that

14   is owned by Genever.

15             And then on the page that we were discussing

16   earlier, and Attorney O'Connor referenced, that refers to,

17   quote, "Part 3-Liability."  And again, that's part three,

18   liability coverage of the policy.  It's not part two, the

19   property coverage of policy, which is what our summary

20   judgment is focused on.

21             And that part three liability section states that

22   part three liability only applies to an occurrence arising

23   out of the ownership of the residence listed above.

24   Additionally, the limited liability corporation members and

25   manager of the limited liability corporation, trust, or

1    trustees, are also an insured person with respect to the

2    ownership of the residence.

3          Under the clear terms of this endorsement, that's

4    only applicable to the liability coverage of the policy.

5    And the reason why they have that in there is on the first

6    page of the endorsement it changes the insuring agreement of

7    the liability coverage section of the policy.

8          And it says we will pay damages and insured person

9    becomes legally obligated to pay because of personal injury

10   or property damage caused by an occurrence.  As I indicated

11   earlier, that's if there was a claim of liability asserted

12   against somebody.

13         This endorsement identifies who the insured

14   persons are for purposes of that liability claim.  And the

15   language that we're focused on indicates that an individual,

16   the member of the LLC, might be an insured person for

17   purposes of liability coverage if it relates to ownership of

18   the house.

19         We're not talking about that on the motion for

20   summary judgment.  Genever seeks declaratory relief that

21   it's entitled to property coverage under part two of the

22   policy.

23         With respect to the misrepresentation issue, it's

24   clear under the law that AIG would have to establish that

25   there was a material misrepresentation.

1   And there's no issue, as I -- as I indicated

2   earlier, there's no -- there's no materiality here based

3   upon their belief that Mr. Kwok was the sole member of the

4   LLC because it doesn't change the terms of the property

5   coverage of the policy.

6   And also, as I indicated earlier, when Attorney --

7   when Mr. Despins was appointed Trustee and given control of

8   the LLC, through the corporate governance order in August of

9   '22, and then a new director of Genever (BVI) was appointed,

10   AIG was informed in December of '22 of the bankruptcy of

11   Genever LLC and Genever (BVI), and they were aware of the

12   change in control that took place in August of '22.

13   Three months later, they renewed the policy on

14   March 6th, 2023, which is the policy that applies for

15   purposes of the fire loss that occurred on March 15, 2023.

16   So there was a change in control and Genever,

17   excuse me, AIG doesn't address that issue in their

18   opposition.

19   And we point out in our reply brief there's

20   nothing in the insurance policy that limits coverage or

21   takes away coverage if there's a change in control of a

22   corporation, change of control of Genever LLC.  There's

23   nothing in the policy that restricts that.

24   In fact, I think it was in our reply brief that

25   this bankruptcy proceeding, under the clear terms of the

1    policy, has no affect on coverage under the policy.  There's

2    a provision in the policy that says bankruptcy proceedings

3    do not affect AIG's obligation to provide coverage under the

4    clear terms of the policy.

5         With respect to this, again, what AIG understood

6    when it issued the first policy in March of 2018 is not

7    material to what occurred when the policy -- when a new

8    policy was issued in March of 2023.

9         But with respect to AIG's argument, there is no

10   dispute that there's nothing in the application for

11   insurance that AIG identifies as any misrepresentation.

12        And we can conclude that by looking at what is

13   called the request to issue coverage.  And it's document No.

14   66-20 in the court record, pages 5 and 6, and pages 7 and 8.

15        And when -- if the Court looks at that document,

16   it will see that there's no representation in that request

17   to bind coverage, in the application, that the insured was

18   anything other than Genever Holdings LLC for purposes of

19   this apartment.  There's no reference to an individual being

20   a member.  There's no reference to any request for

21   information as to the members of Genever LLC.

22        And Attorney O'Connor pointed to paragraph 8 of

23   Mr. Jordan's declaration, that does not, excuse me, Mr.

24   Gordon's declaration, that does not have any admissible

25   evidence that creates a material issue of fact.

1       Because what Mr. Gerber said in that paragraph --

2    in that paragraph was that AIG relied upon statements that

3    the broker made in telephone conversations and emails with

4    Mr. Gerber.

5       And as we point out in a footnote in our reply

6    brief, there's no evidence of any telephone conversations or

7    emails between the broker and Mr. Gerber, excuse me, where

8    there was any representation made to that effect.

9       Mr. Gerber admits, in paragraph 8, that he does

10   not know what the broker and Wolfson were told.  And what he

11   says is that they would not issue a policy under which

12   Genever (BVI) would be insured.  Again, it's not -- this

13   case is not about Genever (BVI) being insured.

14      It's about who owned the apartment and who is

15   entitled to property coverage under section two, the

16   property portion of the policy.

17      And there can be no dispute that that coverage is

18   limited to the named insured, which is Genever Holdings LLC.

19   And there is no dispute, and can be no dispute, that at all

20   times AIG knew and it did issue a policy under which Genever

21   was the named insured.

22      And it knew, and there's no dispute, that Genever

23   owned that apartment under which property coverage, excuse

24   me, owned the apartment -- owned the apartment that is

25   insured under part two, property coverage, of the policy.

1    So there's nothing here that can be -- for which

2    any additional discovery is needed.

3    AIG had the opportunity to conduct whatever

4    discovery it needed to address the issue of property

5    coverage and it has not put forth any evidence to properly

6    refute the limited motion for summary judgment seeking

7    declaratory relief on that issue, and we respectfully

8    request that the motion be granted.

9    Thank you, Your Honor.

10    THE COURT:  Thank you.

11    Attorney O'Connor, would you like to respond?

12    MR. O'CONNOR:  Very, very briefly, Your Honor.

13    THE COURT:  Sure.

14    MR. O'CONNOR:  Genever, with respect to

15    misrepresentation, keeps wanting to go back to the LLC

16    endorsement.

17    But as I said at the end of my presentation,

18    that's not -- that's not part of the path of this

19    misrepresentation defense.

20    The question is was AIG told things that weren't

21    true?  Would AIG have issued this policy if it had known the

22    true facts?  And Mr. Gerber's declaration couldn't be

23    clearer on the answer to those, and at minimum it creates a

24    factual dispute.

25    And Mr. McCormack said, well, there's no evidence

1    of Kwok being mentioned or his name, well, paragraphs 2

2    through 8 of Mr. Gerber's declaration lay out we got a call

3    from Wolfson, said they had a high net worth individual.  A

4    Ms. Skivicki (ph) said it was Ho Wan Kwok.  They asked who

5    lives there?  They're told Ho Wan Kwok lives there.

6          Then the LLC endorsement comes in and said I left

7    the individual's name off the form for privacy purposes

8    because he's -- well, I can think of a lot of reasons he

9    might have wanted to remain private -- but the declaration

10   makes very clear, it lays out in detail, emails, telephone

11   conversations, so the idea that there's no record evidence

12   that AIG was told that Ho Wan Kwok was the guy that owned

13   Genever Holdings, just doesn't, that's not consistent with

14   the record.

15         And the last thing I want to say is this whole

16   debate about what was told to Mr. Gerber, what Mr. Gerber

17   did, and what he would have done, sounds awfully facty to

18   me, and that's -- and that's not a mistake, it's because

19   this is a fact-bound question.

20         You know, you could go to a trial and the finder

21   of fact could just believe Mr. Gerber.  They could think

22   he's a perjurer.  But that's not the role for this

23   proceeding right here.

24         Mr. Gerber has made very clear we would not -- AIG

25   would not have issued this policy had it known the true

1     facts and that should be accepted on summary judgment.  And

2     that's frankly enough to deny partial summary judgment at

3     this point in the case.

4            Thank you.

5            THE COURT:  Thank you.

6            All right.  Well, I thank you both for your

7     arguments today.  I need to go back obviously and look at

8     some of the documents that you've referred to that I have

9     looked at, but I haven't looked at recently, so I need to go

10    -- and I haven't looked at them necessarily in the context

11    of summary judgment.

12           So I need to go and review them as well as the

13    cases that you've cited in your briefs.

14           And I will take the matter under advisement and

15    rule when we can.

16           I will tell you that I can't guarantee it will be

17    in the next two weeks or so.  It might be a little longer

18    depending upon other matters that are pressing in other

19    cases in addition to this case.

20           But I understand the issues.  You've answered my

21    questions, the questions that I had, and I appreciate that.

22           And I think that I know there's still the issue

23    out there that you both asked me to talk -- decide some time

24    ago that I haven't decided yet, again, unfortunately,

25    because that has -- the priorities just didn't elevate that,

1    but believe me I know it's out there.  I know you want me to

2    answer that question.

3            And I'm going to try to do both of those things at

4    or around the same time, so that you know where things

5    stand, and then we'll go from there.

6            In the meantime, there is a pretrial order in

7    place.  You do whatever you think is appropriate in

8    accordance with the terms and conditions of the pretrial

9    order.

10           I do know, I believe, there was an order issued on

11   consent in this adversary proceeding in the last day or so

12   seeking some discovery.

13           Attorney O'Connor, you were seeking some discovery

14   from the fire department I think, is that right?

15           MR. O'CONNOR:  That's right, Your Honor.

16           THE COURT:  And that order entered I think, didn't

17   it?

18           MR. O'CONNOR:  It did.

19           THE COURT:  Okay.

20           MR. O'CONNOR:  It entered yesterday.

21           THE COURT:  Okay.  So we will -- we will see where

22   things go.

23           But I appreciate the presentations of counsel and

24   I will take it under advisement.

25           MR. O'CONNOR:  Thank you, Your Honor.

1        MR. McCORMACK:  Thank you, Your Honor.

2        THE COURT:  Okay.

3        MR. O'CONNOR:  Your Honor, could I raise one

4    housekeeping matter?

5        THE COURT:  Certainly.

6        MR. O'CONNOR:  It deals with the preliminary

7    injunction decision which the Court ruled.

8        We all agree with respect to the homeowner's

9    policy.  The liability -- the excess policy is a different

10   question.

11       THE COURT:  Right.

12       MR. O'CONNOR:  The Court directed AIG to withdraw

13   the notices of cancellation, which we did.

14       THE COURT:  Right.

15       MR. O'CONNOR:  Those policies are expiring the

16   month after -- in March.

17       THE COURT:  Oh, that's true, isn't it?  Yes.

18       MR. O'CONNOR:  And so the question is, it wasn't

19   entirely clear to me whether the Court's injunction was

20   intended to require AIG to keep some coverage in place for

21   Genever.  And if that's the Court's intention, then they'll

22   renew the policies.

23       If it's not the Court's -- if the Court's

24   intention was you have these policies, you've got to -- you

25   can't cancel them.  And then we'll -- you know, everything

1    else falls where it may, then that's a different question.

2              And I think, at least talking to Mr. McCormack, I

3    think their view is that the Court would have intended that

4    AIG keep coverage in place.  I just need an answer.

5              THE COURT:  Yeah.  You know, I haven't looked back

6    at the preliminary injunction decision for some time as I'm

7    sure you can understand.

8              MR. O'CONNOR:  I do.

9              THE COURT:  And I will do that.

10             But I believe that, yes, it was the intention that

11   AIG continue to provide insurance as long as the estate pays

12   the premium.  Right?  I mean, that's -- you know, obviously

13   if the estate didn't pay the premium, that's a different

14   issue.

15             MR. O'CONNOR:  Sure.

16             THE COURT:  Okay.  But that is -- that was the --

17   I'm virtually certain that was the intent of the -- without

18   having the preliminary injunction decision in front of me.

19   And if for some reason I think otherwise, I will let you

20   know.

21             What time -- what kind of cancellation?  Do you

22   have to give them 30 days or something?

23             MR. O'CONNOR:  45, which has --

24             THE COURT:  Oh.

25             MR. O'CONNOR:  -- technically passed.

1          THE COURT:  Yeah.

2          MR. O'CONNOR:  So we're looking for clarification.

3          THE COURT:  Well, again, I don't have it in front

4     of me, so I'm a little bit at a disadvantage, but my

5     recollection of the proceedings and the testimony of

6     different people, including some of the testimony you've

7     talked about, both of you have talked about today, and what

8     I found in connection with the preliminary injunction, which

9     obviously is a preliminary injunction, and I understand all

10    your rights and remedies with regard to that, is that, yes,

11    AIG was going to continue to provide insurance --

12         MR. O'CONNOR:  Okay.

13         THE COURT:  -- to Genever as long as there was

14    payment of premium.

15         MR. O'CONNOR:  Sure.  Understood, Your Honor.

16         THE COURT:  Okay.

17         MR. O'CONNOR:  We'll proceed on that basis, unless

18    the Court tells us otherwise.

19         THE COURT:  And I'll tell you why else I believe

20    that's accurate, even though I don't have the preliminary

21    injunction in front of me, but I have recollections, you

22    know, which you can correct if you think I'm wrong, but

23    there was a whole section of that hearing about the

24    inability to obtain other insurance, right?

25         MR. O'CONNOR:  There was.  There was.

1    THE COURT:  And the -- and in a Chapter 11 -- in a

2    Chapter 7 case, it doesn't even have to be a Chapter 11, an

3    asset can't be uninsured.  It just can't.  And so -- I mean,

4    it can, but that's a problem, that's a much bigger problem.

5    Right?

6    And my, again, recollection is that I think I made

7    it clear to Trustee Despins that the estate has to pay.

8    You've got pay the premium.  Okay?

9    MR. O'CONNOR:  The Court made that clear.

10   THE COURT:  But if the premium is paid, then, yes,

11   the coverage should continue.

12   MR. O'CONNOR:  Okay.

13   THE COURT:  Okay?

14   MR. O'CONNOR:   We will -- thank you, Your Honor.

15   We'll proceed down the path of renewal unless the Court at

16   some point tells us otherwise.

17   THE COURT:  Yeah.  And I would tell you that I

18   don't -- I believe I will not tell you anything other than

19   that, but I will certainly go back and look at it based upon

20   your request today.

21   MR. O'CONNOR:  Thank you, Your Honor.

22   THE COURT:  Okay.  Thank you.

23   MR. McCORMACK:  Thank you, Your Honor.

24   THE COURT:  Okay.  Thank you, all.

25   Does that conclude anything we need to do in the

1    Kwok cases today, Trustee Despins?

2              MR. DESPINS:  Yes, Your Honor.

3              THE COURT:  Okay.  All right.  Thank you, all.

4         (Proceedings concluded at 3:08 p.m.)

5              I, CHRISTINE FIORE, court-approved

6    transcriber and certified electronic reporter and

7    transcriber, certify that the foregoing is a correct

8    transcript from the official electronic sound recording of

9    the proceedings in the above-entitled matter.

10

11    *Christine Fiore*

12    _____          February 7, 2024

13         Christine Fiore, CERT

14

15

16

17

18

19

20

21

22

23

24

25