```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
                        BRIDGEPORT DIVISION

In Re                           *   Case No. 22-50073 (JAM)
                                *
HO WAN KWOK and GENEVER         *
 HOLDINGS CORPORATION,          *
                                *
              Debtors.          *


LUC A. DESPINS, CHAPTER 11      *   Adv. Proc. No. 23-05008
 TRUSTEE,                       *
                                *
              Plaintiff,        *
      v.                        *
                                *   Bridgeport, Connecticut
MEI GUO,                        *   February 5, 2024
                                *
              Defendant.        *
                                *
    *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

                       TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JULIE A. MANNING
                 UNITED STATES BANKRUPTCY JUDGE

    #2532  MOTION FOR ORDER APPROVING PROCEDURES APPLICABLE TO
           AVOIDANCE CLAIM ADVERSARY PROCEEDINGS
      #88  MOTION FOR SUMMARY JUDGMENT

APPEARANCES:

For the Chapter 11 Trustee:   AVRAM EMMANUEL LUFT, ESQ.
                              Paul Hastings LLP
                              200 Park Avenue
                              New York, NY  10166

                              PATRICK R. LINSEY, ESQ.
                              Neubert Pepe and Monteith
                              195 Church Street,13th Floor
                              New Haven, CT  06510


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**Shelton, CT 06484 (203)732-6461**

2

APPEARANCES: (Cont'd)

| | |
|---|---|
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| For the U.S. Trustee: | HOLLEY L. CLAIBORN, ESQ.<br>Office of the United States<br> Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 |
| For the Creditors Committee: | KRISTIN B. MAYHEW, ESQ.<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT  06601 |
| For the Creditor, Pacific<br> Alliance Asia Opportunity<br> Fund L.P.: | STUART M. SARNOFF, ESQ.<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036 |
| | TREVOR L. BRADLEY, ESQ.<br>Robinson & Cole LLP<br>1055 Washington Blvd.<br>Stamford, CT  06901 |
| For the Defendant, Mei Guo: | MELISSA F. WERNICK, ESQ.<br>Chiesa Shahinian &<br> Giantomasi, PC<br>105 Eisenhauer Pkwy<br>Roseland, NJ  07068 |
| | JAMES M. MORIARTY, ESQ.<br>Zeisler & Zeisler, P.C.<br>10 Middle Street, 15th FL<br>Bridgeport, CT  06604 |

1          (Proceedings commenced at 1:09 p.m.)

2              THE COURT:  We're now proceeding on the calendar

3     at 1:00 p.m., so I ask the courtroom deputy to please call

4     the calendar.

5              THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

6     Kwok, and Adversary No. 23-5008, Despins versus Guo.

7              THE COURT:  Good afternoon.

8              If we could have appearances for the record

9     starting with the Chapter 11 Trustee, please.

10             MR. DESPINS:  Good afternoon, Your Honor.  Luc

11    Despins, Chapter 11 Trustee.

12             THE COURT:  Good afternoon.

13             MR. LINSEY:  Good afternoon, Your Honor.  Patrick

14    Linsey for the Trustee.

15             THE COURT:  Good afternoon.

16             MR. LUFT:  Good afternoon, Your Honor.  Avi Luft

17    on behalf of the Chapter 11 Trustee.

18             THE COURT:  Good afternoon.

19             MS. CLAIBORN:  Good afternoon.  Holley Claiborn

20    for the U.S. Trustee.

21             THE COURT:  Good afternoon.

22             MS. WERNICK:  Good afternoon, Your Honor.  Melissa

23    Wernick for Defendant Mei Guo in the adversary proceeding

24    23-5008.

25             THE COURT:  Good afternoon.

1    MR. MORIARTY:  Good afternoon, Your Honor.  James

2    Moriarty, from Zeisler & Zeisler, also for Ms. Guo in the

3    adversary proceeding.

4              THE COURT:  Good afternoon.

5              MS. MAYHEW:  Good afternoon, Your Honor.  Kristin

6    Mayhew, Pullman & Comley, on behalf of the Official

7    Committee of Unsecured Creditors, appearing in the main

8    case.

9              THE COURT:  Good afternoon.

10             MR. SARNOFF:  Good afternoon, Your Honor.  Stuart

11   Sarnoff, O'Melveny & Myers, on behalf of Creditor PAX, in

12   the main case.

13             THE COURT:  Good afternoon.

14             MR. BRADLEY:  Good afternoon, Your Honor.  Trevor

15   Bradley, of Robinson & Cole, also for PAX.

16             THE COURT:  We couldn't hear you, Mr. Bradley.

17   Could you just --

18             MR. BRADLEY:  I apologize.

19             THE COURT:  That's okay.

20             MR. BRADLEY:  Trevor Bradley of Robinson & Cole

21   for PAX.

22             THE COURT:  Okay.  Thank you.

23             All right.  On the calendar then in the main case

24   is a motion filed by the Trustee in connection with

25   administrative issues related to the filing of upcoming

1     adversary proceedings.

2              And then in the adversary proceeding is the motion

3     for summary judgment.

4              So I would assume we're starting with the main

5     case motion, Trustee Despins?

6              MR. DESPINS:  Yes, Your Honor.

7              THE COURT:  Okay.  And, Mr. Linsey, I saw you

8     stand.  Are you going to be arguing that?

9              MR. LINSEY:  I will, Your Honor.

10             THE COURT:  Okay.  Go right ahead.

11             MR. LINSEY:  Thank you.  May I approach?

12             THE COURT:  Yes, you may.  Thank you.

13             MR. LINSEY:  Thank you, Your Honor.

14             The Chapter 11 Trustee has filed a motion

15    requesting that the Court approve of procedures that would

16    govern the imminent avoidance actions which are expected to

17    be filed.

18             At this point, the Trustee expects to file in

19    excess of 100 of these avoidance actions by February 15th.

20             We have noted that in other cases courts in this

21    circuit have approved litigation procedures that are meant

22    to affect an orderly administration and procedural flow of

23    these cases.

24             We have tried to, you know, only include what we

25    need I think in order for thing to move forward in an

1    orderly fashion, so I will just briefly outline what those

2    procedures are.

3            First, the avoidance procedures deal with the

4    confidentiality provisions of the protective order, and with

5    respect to the FDIC, the protective order addendum.

6            Under the protective order and the protective

7    order addendum, producing parties have marked certain

8    documents confidential and highly confidential.

9            That includes many of the bank records from which

10   the transfers in the avoidance procedures were discovered,

11   such that arguably these complaints and schedules attached

12   to the complaints contain confidential and highly

13   confidential information.

14           So what the avoidance procedures do is they

15   provide that notwithstanding anything in the protective

16   order and the protective order addendum, provided that a

17   defendant and the defendant's counsel sign the agreements

18   that are attached to the addendum and the protective order

19   becoming bound by them, the Trustee is permitted to provide

20   those complaints to the defendant and the defendant's

21   counsel.

22           And I note that as to the defendant as well,

23   because under the highly confidential provisions of the

24   protective order, typically those would be attorney's eyes

25   only.

1          In light of the limited information in these, in

2     these complaints, which is generally transfers that went to

3     the defendant in the complaint, we believe it's appropriate

4     that the defendant should be able to see those.

5          And in the interest of, you know, maximum notice,

6     in addition to the notice procedures that were provided

7     under the order expediting the hearing, the Trustee did send

8     a copy of the motion by last Tuesday to anyone who produced

9     discovery to the Trustee under the Rule 2004 order so that

10    -- so that they had notice of these.

11         So basically, anybody who had marked something

12    confidential or highly-confidential has notice of what this

13    -- what this sort of tweak is in that regard.

14         Earlier today the Trustee filed a revised,

15    proposed order on granting the motion that adds a provision,

16    at the request of the FDIC, where -- which, in light of some

17    of the statutory obligations it has governing privacy,

18    wanted to see some additional language.

19         And the reason that we had that conversation with

20    the -- with the FDIC is the FDIC is one of those parties

21    that we sent the -- we sent the motion to.

22         What the -- what the confidentiality provisions

23    will also do is they will relieve us and the Court of the

24    obligation of having to file separate motions to seal in

25    each and every one of these adversary proceedings, which

1    would be a burden to the Trustee and to the Court

2    essentially to hear the same motion in excess of 100 times

3    to decide the same thing.

4              Does Your Honor have a question?

5              THE COURT:  That motion to seal, that issue,

6    you're only talking about the complaint though?

7              MR. LINSEY:  Correct, Your Honor.  This is limited

8    to the complaint --

9              THE COURT:  Okay.

10             MR. LINSEY:  -- and we will --

11             THE COURT:  That's what I read.  That's my

12   understanding.

13             That if there was some other motions or something

14   that needed to be filed that had seal issues, that might

15   need to be sealed, you'd be filing a motion then with that?

16             MR. LINSEY:  Absolutely, Your Honor.

17             And it may be that there are issues that emerge

18   that are common to many of these avoidance proceedings.  In

19   that case, there is a procedure under the avoidance

20   procedures for the Trustee to file a supplemental motion

21   that would affect all of the avoidance procedures on notice

22   to all of the avoidance defendants.

23             But right here, what we're really limited to is,

24   as far as the confidentiality and sealing goes, is the

25   initial complaint.

1          Beyond that, the avoidance procedures provide

2     additional time for the defendant to respond to the

3     complaint, 60 days from the completion of service, and

4     provide the Trustee 60 days to respond to any motion filed

5     under 12(b) seeking to dismiss a complaint.  Again, those

6     provisions are largely in light of the volume of complaints

7     that are expected to be filed.

8          Further, the avoidance procedures provide that the

9     clerk and the Court will not automatically schedule initial

10    case conferences for each and every one of these avoidance

11    proceedings.

12         We didn't think it would be productive to have in

13    excess of 100 pretrial conferences that, in light of the

14    timing of the filing of these cases, would probably be

15    bunched up a couple of months from now.

16         Rather, we have a procedure whereby triggering

17    from the response deadline for the defendant to respond to

18    the complaint, the Trustee and the defendant will conference

19    regarding the appropriate scheduling order, submit it to the

20    Court for the Court's consideration, or if the parties

21    cannot agree on a scheduling order, we'll request a pretrial

22    conference.  The defendant, of course, or the Trustee, any

23    party, is free to request a pretrial conference at any time.

24         And, you know, something else I'll point out is,

25    any defendant that upon the filing of an adversary

1    proceeding feels that the avoidance procedures are not

2    appropriate to that defendant, has the right to seek

3    amendment of the procedures as to that amendment -- as to

4    that defendant after the filing.  So no one's locked into

5    this.

6           But, you know, at the same time, the procedures

7    that I've outlined, we don't view them as burdensome to the

8    defendants.  If any of the defendants coming in disagree,

9    they can -- they can bring that issue to the Court's

10   attention at the appropriate time.

11          So with that, I believe that's all I have unless

12   Your Honor has any questions.

13          THE COURT:  I do have a few questions, but not

14   very many.

15          MR. LINSEY:  Sure.

16          THE COURT:  The FDIC is only involved on behalf of

17   one bank is my recollection in that protective -- that

18   amendment to the protective order.  It's not the FDIC as a

19   whole, right?  They've only filed an appearance.  And that

20   stipulated addendum is only with regard to a bank that

21   begins with an S.

22          MR. LINSEY:  Signature Bank, Your Honor.

23          THE COURT:  Okay.  Right?  Is that correct?

24          MR. LINSEY:  That's correct.

25          However, there were a number of accounts at

1    Signature Bank.  And I would call them particularly fertile

2    accounts as far as avoidable transfers go.  So I think that

3    --

4              THE COURT:  So you're saying there'll be more than

5    one adversary proceeding in which a bank account at

6    Signature Bank will be the subject of a proceeding or --

7              MR. LINSEY:  Off the top of my head, I would

8    estimate dozens.

9              THE COURT:  Okay.  All right.  I just want to make

10   sure.  They didn't file any other appearance that I'm aware

11   of or filing other documents other than on behalf of

12   Signature Bank?

13             MR. LINSEY:  Correct, Your Honor.

14             I did speak with them several times after they got

15   a copy of the motion last week and we were able to work out

16   agreed upon language prior to the objection deadline.

17             THE COURT:  Okay.  Thank you.  Now I understand.

18             I saw that you had a redline version of the order

19   and that the 1974 Privacy Act language was at the request of

20   the FDIC on -- as the receiver of bank?

21             MR. LINSEY:  That's correct, Your Honor.

22             THE COURT:  Okay.

23             MR. LINSEY:  That applies to obligations that they

24   have with respect to privacy that are -- that can be

25   modified, but require an order from the Court with this

1    language, so that's why we've consented to put that language

2    in.

3              THE COURT:  That's fine.  Okay.

4              With regard to the avoidance action procedures

5    notice that you're going to file in every adversary

6    proceeding --

7              MR. LINSEY:  Yes, Your Honor.

8              THE COURT:  -- it says that it will be served --

9    that notice will be served like a summons and complaint with

10   -- it doesn't refer to 7004, but you don't need to.  And

11   that's fine.

12             I think the anticipation is, but it doesn't say it

13   clearly, I don't -- and I don't think you need to change it,

14   I'm just asking you this question, that the notice that

15   you're going to file in each adversary proceeding, if this

16   motion is granted, would be served along with the summons

17   and complaint.  Is that your anticipation?  Because, to me,

18   that seems to make the most sense.

19             MR. LINSEY:  That's correct, Your Honor.

20             THE COURT:  Okay.  All right.  Then I read --

21             MR. LINSEY:  And I'll say it was a little vague on

22   that and that was because we did not have the -- we did not

23   know the timing of when the Court would consider this.

24             THE COURT:  Sure.

25             MR. LINSEY:  So just in case we were to have filed

1    and served previously --

2              THE COURT:  Well, you might need to --

3              MR. LINSEY:  -- but that is --

4              THE COURT:  -- change this order a little bit

5    anyways --

6              MR. LINSEY:  Sure.

7              THE COURT:  -- so if you want to add to that

8    paragraph B the Trustee shall serve a copy of the avoidance

9    notice with the summons and complaint, you can do that too.

10             So I -- when you filed this motion, or when the

11   motion was filed, I talked with the clerk of the court

12   obviously because the clerk of the court is going to need to

13   address all these issues.  Right?

14             MR. LINSEY:  Sure.

15             THE COURT:  And the -- I don't think we can do

16   what you're asking in C, but I think there's a way to

17   accomplish the same thing.  Okay?

18             MR. LINSEY:  Okay.

19             THE COURT:  Because the problem will be if you

20   file a -- I understand that it's only motions that, or at

21   least I believe I understand, that it's only motions -- you

22   would only file motions in the main case that have common

23   issues in a number of adversary proceedings.  Correct?

24   That's the thought behind this paragraph C?

25             MR. LINSEY:  Correct, Your Honor.

1          THE COURT:  So the problem with that is, from the

2     clerk's office perspective, and I understand it, is that

3     it'll provide -- it can provide problems if there are any

4     appeals because the document won't be in the adversary

5     proceeding.

6          So I suggested, and the clerk of the court thought

7     it would work, and I think it will, I don't -- if you had --

8     this is -- this was the example I came up with.

9          It doesn't mean that this is an example of what

10    you would actually file, but that you're two or three months

11    down the road.  You've got, I don't know, 40 adversary

12    proceedings in which you're agreeing to further extend the

13    response date to the defendants, right, in those 40 out of

14    100 the way that it could be accomplished so you only have

15    one document, even though it's going to have -- because

16    you're still going to be filing a notice in each of the

17    adversary proceedings, so you still were going to be filing

18    a main document, at least this is the way I read it, a

19    document in the main case and then notices of that document

20    in each adversary proceeding?

21          MR. LINSEY:  I don't -- I don't believe that was

22    the thought.

23          The thought was that the -- by email, any counsel

24    would be served or any defendant would be served, under

25    7004, if they weren't -- if they weren't appearing, a

1    certificate of service would be filed in the main case.

2            The thought behind this, and obviously we're

3    absolutely flexible about how to do that, how to do this,

4    was, one, the burden to the Trustee of filing north of 100

5    kind of the same motion over and over again.  And then the

6    burden to the Court --

7            THE COURT:  Yeah.  I don't want you to have to do

8    that --

9            MR. LINSEY:  -- of having --

10            THE COURT:  -- except you're going to --

11            MR. LINSEY:  Yeah.

12            THE COURT:  -- have to do it in a certain way I

13    think --

14            MR. LINSEY:  Sure.

15            THE COURT:  -- a different way --

16            MR. LINSEY:  Okay.

17            THE COURT:  -- than the main case.

18            I think what you could do, and the clerk of the

19    court believes that there's no problem with this --

20            MR. LINSEY:  Okay.

21            THE COURT:  -- from CM/ECF perspective, okay, that

22    you would just -- if it's a motion on consent to extend the

23    time to reply, further extend the time to reply, you create

24    one motion with all the captions in it of the cases and you

25    just -- you're going to have to file it in all 40 of them,

1   but it's one document.

2          MR. LINSEY:  Okay.

3          THE COURT:  It's not -- it's not 40 documents.

4   Okay?  I think you're still going to have to file it in

5   every one of them though.  Because if there is an appeal,

6   it's not -- it has to be -- that docket has to be correct

7   and accurate, right?

8          MR. LINSEY:  Understood, Your Honor.

9          THE COURT:  And the district court, I'm not going

10  to have the district court saying, well, wait a minute,

11  you've got some notice.  Or you don't even have it in the

12  adversary, it's in the main case.  You know.  That's not how

13  it works, right?

14         So it might be a little burdensome insofar as it

15  would have to be filed on numerous cases, however, it's the

16  same document.  You don't have to create 40 documents.

17         MR. LINSEY:  Understood, Your Honor.

18         THE COURT:  Okay?  So I think we can figure out a

19  way.  And if you -- and I -- the clerk in the court and I

20  have, we talked about it today.  Okay?

21         So I mean, it's not -- if there's any issue after

22  this hearing with regard to that, then the clerk of the

23  court will reach out to you.

24         But I think what the -- C would have to be

25  modified to say that you can absolutely file a motion that's

1     common to more than one adversary proceeding, such as my

2     example that I gave you, Attorney Linsey.  I don't know that

3     that's, you know -- but that it's that you're going to have

4     to file it in the -- you can put all the captions in one

5     document, right?

6             Or maybe, maybe the way we can do it is this too.

7     You list all of them in the motion and it just gets filed.

8             MR. LINSEY:  Yeah.

9             THE COURT:  But the problem is what caption do you

10    use if you do that?  That's part of the problem, right?

11            MR. LINSEY:  I would suggest something in the

12    form.  Obviously they're not going to be consolidated, but

13    something consolidated, a caption that looks consolidated-

14    ish for this particular purpose in light of the fact that --

15    otherwise there are --

16            THE COURT:  Well, maybe you say --

17            MR. LINSEY:  -- going to be 20 pages of caption.

18    Yeah.

19            THE COURT:  I understand that too.

20            So, you know, maybe what we have to figure out is

21    -- you know, the problem is you're not going to be listing

22    the plaintiff and the defendant in -- if you don't have a

23    caption that says plaintiff and defendant, right?

24            So maybe you have to say plaintiff, and then

25    defendants in avoidance actions, and then you list the

1    defendants in the pleading.

2            However you're going to do it --

3            MR. LINSEY:  Sure.

4            THE COURT:  -- we'll talk to the clerk of the

5    court again to make sure we're all on the same page, but it

6    can't be filed in the main case, unfortunately.  It just

7    can't.  It's just not going to work.

8            MR. LINSEY:  So it won't be filed in the main

9    case.  That was what I wanted to clarify.

10           THE COURT:  Yeah.

11           MR. LINSEY:  Okay.  Understood.

12           THE COURT:  It cannot be filed in the main case.

13   It's got to be filed in an -- in the adversary proceedings.

14           MR. LINSEY:  Okay.

15           THE COURT:  It won't work.  The transfer of

16   documents from the clerk's office to the clerk's office

17   presents a number -- if it was on appeal, presents a number

18   of logistical issues anyway.  And that would add to problems

19   that we don't want to have.  Okay?

20           MR. LINSEY:  Understood, Your Honor.

21           THE COURT:  So we'll figure out how to do that,

22   whether it's you put all the captions in or you -- we agree

23   that -- I mean, I could agree in this order, subject to

24   talking to the clerk of the court again, Attorney Linsey, so

25   just to let you know, that you had some kind of generic

1    caption, but you've got to -- it's got to be listed in the

2    pleading, every adversary number at least, otherwise it's

3    not going to make any sense.

4                   MR. LINSEY:  Sure.

5                   THE COURT:  All right.  So we'll have to figure

6    that out.

7                   All right.  With regard to D, does there need to

8    be, and maybe there doesn't, okay, but I'm going to ask the

9    question, does there need to be any reference to the

10   privileges order?

11                  We've got the protective order and the addendum

12   for the sealing.

13                  MR. LINSEY:  They're just not, Your Honor.

14   There's not any privileged information.

15                  THE COURT:  Okay.  Okay.  Good.  I just am asking

16   the question.

17                  Then I think you need to change the language in D

18   to be similar to the language that the FDIC asked for, which

19   just says this order is acting as an order granting the

20   motion to seal all the complaints when necessary.  Right?

21   Because otherwise there isn't going to be an order that says

22   you -- you have the right to seal.  Right?

23                  MR. LINSEY:  Okay.

24                  THE COURT:  You're not going to file a motion

25   because you already filed the motion.  This is the

1   procedure.

2          What the FDIC language said -- something about

3   this order constitutes an order of the Court, you know, and

4   so I think you'd have to say this order constitutes an order

5   of the Court allowing for the avoidance complaint to be

6   filed under seal when it's -- it contains information -- it

7   or its exhibits contains information that has been

8   designated highly-confidential or confidential under the

9   terms of the protective order and the protective order

10  addendum.  Okay?

11         MR. LINSEY:  Yes, Your Honor.

12         And just to set the Court's expectations, this is

13  really only going to apply to the schedules that are

14  attached that itemize specific transfers.  We're not --

15  we're not expecting the contents of the complaint.

16         THE COURT:  Okay.

17         MR. LINSEY:  It's part of the complaint in that

18  they're schedules --

19         THE COURT:  Okay.

20         MR. LINSEY:  -- that are included in the

21  complaint.

22         THE COURT:  That's fine.

23         MR. LINSEY:  But the provisions of the complaint

24  will be out there.  And those will be filed.  So basically

25  what we'll be doing with sealed ones is filing, filing

1   complaints with redacted schedules, and then -- and then

2   filing the unredacted schedules with the complaints under

3   seal.

4            THE COURT:  Okay.  And then it says service of a

5   redacted avoidance complaint shall constitute sufficient

6   service of a complaint as required.  You mean after service

7   has been made, right?  I mean, you're not saying that this

8   order, just because you file a redacted avoidance complaint,

9   is service?

10           MR. LINSEY:  Correct, Your Honor.

11           The issue here is we don't want an argument later

12   that, well, because you didn't initially send us the

13   unredacted, because we can't give them the unredacted

14   complaint until they sign the exhibit.

15           THE COURT:  Fine.  That's fine.

16           MR. LINSEY:  Yeah.

17           THE COURT:  Okay.  That's fine.  Thank you.  I

18   just wanted to make sure that I understood that.

19           MR. LINSEY:  Yes, Your Honor.

20           THE COURT:  Then the only other question I had,

21   you've already -- you did address.  I didn't realize it

22   until after I read it more.

23           The periods, you know, the Trustee should have 60

24   days to respond to a motion to dismiss, but you have below

25   that any party can seek to change those time periods.  So

1     that's -- that's in there.  So that's fine.

2            At some point, I don't know when that will be, but

3     H talks about -- I completely agree, no pretrial conferences

4     will be scheduled.  The summons won't have a pretrial date.

5     There's no problem with that.

6            At some point, I guess, you'll have to -- we can

7     talk about it in hearings if they come up, you know, we'll

8     have to know somewhere where things are headed I suppose in

9     these adversaries at some point.  I don't know, there could

10    be several groupings of adversaries depending upon what's

11    going on, right?

12           MR. LINSEY:  I expect there will be organizational

13    and administrative issues to address with the Court after

14    these are filed, and I think that the specifics of those

15    will come into more -- into greater relief, again, after

16    they're filed.

17           THE COURT:  All right.  So that's the only

18    questions or concerns that I see.  And the major one being

19    the filing in the main case at C.

20           MR. LINSEY:  Understood, Your Honor.

21           THE COURT:  And so, I will talk to the -- I'll

22    talk to the clerk of the court again, but -- and you can

23    think about it if you want in the meantime, but I think -- I

24    don't know how it's going to be, whether it's the caption

25    issue or the listing, but we have to figure that out.

1              MR. LINSEY:  Your Honor, that's absolutely

2      acceptable to the Trustee.  Would Your Honor like us to file

3      a revised order or --

4              THE COURT:  Well, what's acceptable, because I

5      said two different things?  So I just want to make sure I

6      understand.

7              MR. LINSEY:  The combined caption and the filing

8      in the individual cases.

9              THE COURT:  So you're going to put all of the

10     adversary captions in the -- in the thing -- in the motion,

11     or are you just going to put one that says -- I don't know

12     what it's going to say.  See --

13             MR. LINSEY:  A combined caption that says the

14     Trustee against the defendants in the -- in the avoidance

15     actions and refers to all of the adversary proceeding

16     numbers.

17             THE COURT:  That is applicable to that motion.

18     And then you're still going to have to file it in every one

19     of those, unfortunately.

20             MR. LINSEY:  Understood, Your Honor.

21             THE COURT:  Okay.  All right.  That's fine.  I

22     think that's fine, subject to what the clerk of the court

23     says.  He could tell me I'm wrong.  So if there's any

24     problems, someone will reach out to you.  Okay?

25             MR. LINSEY:  So then will the -- will the Court

1    amend the order or would you like us to file an amended

2    order?

3            THE COURT:  Well, I would like you to not do

4    anything yet until we talk to the clerk of the court and

5    then he'll communicate with you, okay --

6            MR. LINSEY:  Thank you, Your Honor.

7            THE COURT:  -- as to what's the best thing to do.

8            Because I wanted to hear what your thoughts were

9    on it first, right?  I don't know.  I could have been

10   reading it wrong.

11           I just wanted to make sure I understood what you

12   were trying -- I completely understand what you're trying to

13   accomplish.  I just want to make sure the order does that

14   properly and the process is acceptable to the clerk of the

15   court.  Okay?

16           MR. LINSEY:  That's fine, Your Honor.  Thank you.

17           THE COURT:  You're welcome.

18           Attorney Claiborn just stood up.  So I would

19   assume you would like to be heard?

20           MS. CLAIBORN:  I just had a brief comment to make,

21   Your Honor.

22           THE COURT:  Sure.

23           MS. CLAIBORN:  In two parts.

24           One, is to say that the U.S. Trustee does not

25   oppose any of the relief that's being requested in the

1    Trustee's motion.

2              And the second part is to assert that the U.S.

3    Trustee does have statutory rights under Section 107.  And

4    to the extent that the U.S. Trustee seeks access to the

5    sealed documents, that will be the way it goes.  I just want

6    to make sure that no one here understood this to be a waiver

7    of any of those rights.

8              MR. LINSEY:  We do not.

9              THE COURT:  Okay.  I would assume that that was

10   correct, but that's good to make --

11             MS. CLAIBORN:  Better to have said it out loud so

12   everyone's on the same page.

13             THE COURT:  That is correct.  It's better to make

14   it known on the record.

15             All right.  Does anyone else wish to be heard in

16   connection with the Trustee's motion for procedures

17   applicable to avoidance claim adversary proceedings?

18        (No response.)

19             THE COURT:  All right.  Hearing no response, the

20   -- I have as I said, reviewed your motion, reviewed the

21   proposed order.  I understand why you're seeking to do this.

22   I think it's appropriate under the circumstances that you've

23   described in the motion and during this hearing, so the

24   motion is going to be granted, going to be granted.

25             The only issue is that issue about paragraph C.

1     So someone will reach out to you and let you know

2   whether or not you need to submit a revised propose order on

3   that issue or if it will just be taken care of.  I don't

4   know the answer to that yet.  Okay?

5           MR. LINSEY:  Thank you, Your Honor.

6           THE COURT:  All right.  Thank you.  So that motion

7   is granted.

8           All right.  Then the second matter on the calendar

9   is the motion for summary judgment filed on behalf of the

10  Trustee in adversary 23-5008.

11          MR. LINSEY:  Thank you, Your Honor.  Again,

12  Patrick Linsey for the Trustee.

13          This adversary proceeding involves a familiar fact

14  pattern in this case, but also an interesting kind of

15  philosophical question, which is what does it really mean to

16  own an asset?

17          In this case, we have a debtor who funded the

18  purchase of a valuable asset, a Bombardier private jet,

19  originally purchase by the debtor for $37 million.

20          The debtor caused the asset to be transferred to

21  shell companies owned by his subordinates and family

22  members.  In this case, first, the debtor's family chef,

23  Hung Chung Wong, and then Mei Guo, the debtor's daughter.

24          After the debtor transferred the asset to insider-

25  held shell companies, the debtor continued to fund the asset

1   and the debtor continued to use the asset.  The debtor also

2   spent at least $5 million to maintain and operate the asset.

3          And finally, the debtor's insider, who purportedly

4   owns the shell company who last owned the asset, has no

5   plausible explanation for how she came to own it.

6   Obviously, those are -- that's a fact pattern that we've

7   seen time and again in this case, particularly with respect

8   to this defendant as regards the Lady May.

9          But worse, in this case, we have the debtor

10   orchestrating the sale of the asset during the bankruptcy

11   without notice to the Court, without notice to the estate,

12   that was accomplished through the debtor's alter ego, Golden

13   Spring.  Your Honor will recall that Golden Spring

14   participated in this case at the outset as the proposed DIP

15   lender.  And then once the Trustee was appointed,

16   disappeared.

17          Following the sale, the debtor, again through

18   Golden Spring, first tried to send the sale proceeds to the

19   debtor's son in Kazakhstan and then the proceeds were sent

20   overseas to London.  All of this is shown by evidence that

21   is wholly undisputed.

22          The defendant's burden, under those circumstances,

23   are to come forward with evidence to show genuine issues of

24   material fact and the defendant has failed to do so.

25   Rather, in this adversary proceeding, the defendant has

1      consistently invoked the Fifth Amendment.

2              Now, that is the defendant's right.  As I'll

3      discuss later, the Trustee is not seeking a negative

4      inference on that basis, but the defendant's decision does

5      have consequences.

6              And one of those consequences is that the

7      defendant may not -- may not avoid having to testify at a

8      deposition, may not avoid producing evidence in discovery,

9      and then come forward with what is effectively testimony and

10     evidence in seeking to oppose the merits in the action.

11             Now, I'll briefly outline the facts here.

12             And I'm going to be a little bit vague because

13     some of the -- some of the exhibits at issue were designated

14     highly-confidential.  And while I believe everyone in this

15     courtroom --

16             MR. DESPINS:  No.

17             MR. LINSEY:  Actually, PAX and the -- PAX and the

18     committee have signed the Exhibit A to the protective order.

19     I don't know that everybody in the courtroom has signed

20     Exhibit A to the protective order.

21             MR. DESPINS:  No.

22             MR. LINSEY:  So it's up to Your Honor whether Your

23     Honor wants to close the courtroom to people who have signed

24     Exhibit A of the protective order and agreed to be bound by

25     it.  I can try to be a little bit vague, but some of the --

1          THE COURT:  Why don't you try being vague first

2     and then we'll see how it goes.

3          MR. LINSEY:  Okay.  The debtor purchased the

4     aircraft in September of 2009 for just over $37 million

5     through Headwind Group for his private use.

6          In 2012, the debtor refinanced the Bombardier.  He

7     represented himself in the course of that refinancing to be

8     the beneficial owner of the aircraft and he executed loan

9     documents, including a personal guarantee of the financing

10    operations.

11         Between 2012 and 2005, the debtor repeatedly

12    declared to the lender that the Headwind Group was a single

13    person -- single-purpose entity --

14         Yes, Your Honor.

15         THE COURT:  Can you tell me the years again.  I'm

16    sorry.  I didn't hear what you said.  You said I think

17    between 2005, did you just say?

18         MR. LINSEY:  I'm sorry.  I said 2012 and 2015.

19         THE COURT:  I'm sorry.

20         MR. LINSEY:  Did I say 2000 --

21         THE COURT:  That was my fault.

22         MR. LINSEY:  I think I misspoke, Your Honor.

23         THE COURT:  Okay.  Okay.

24         MR. LINSEY:  Between 2012 and 2015, the debtor

25    repeatedly declared to the lender that Headwind was a

1    single-purpose entity that didn't produce financial

2    statements, and it's only -- it's only purpose was to hold

3    the aircraft.

4            In July of 2015, the debtor caused Headwind Group

5    to engage ACASS Canada, which is a company that operates and

6    maintains aircraft.  The debtor executed an aircraft

7    managing agreement for Headwind with ACASS.  ACASS is going

8    to be a name that comes up a lot in this story.

9            Now, in that initial aircraft management agreement

10   and in many other documents, the notice address that was

11   listed was that for Golden Spring, which is the debtor's

12   alter ego.

13           Between March and July of 2016, Headwind

14   transferred the aircraft to Anton Development, and there's

15   no evidence of any consideration being paid for that

16   transfer.

17           At the time of the transfer, Anton Development was

18   -- was nominally owned by the -- by Hung Chung Wong, who the

19   debtor's wife has testified was the debtor's family chef.

20           During the same time frame, in May of 2016, the

21   debtor directed transfers in order to repay loan

22   obligations.  So not only was Anton Development getting the

23   aircraft transferred, they were -- the loan obligations were

24   also being paid off.

25           The following month, if that weren't a sweet

1    enough deal, the debtor caused to be transferred $1.16

2    million to Anton Development from a Headwind account.

3          Thereafter, in June of 2017, Mr. Hung, that's Hung

4    Chung Wong, surrendered his equity in Anton Development to

5    the defendant for no consideration.  That fact is admitted

6    in the 56(a)(2) statement at No. 13.

7          That was on the same date that the defendant

8    received nominal ownership of Eastern Profit Corporation

9    Limited from Mr. Hung, and that is a -- that's an entity

10   that Judge Liman, in his decision, found to be the debtor's

11   alter ego.

12         When the Trustee asked the debtor about the

13   Bombardier at the debtor's Rule 2004 obligation, or rather

14   examination deposition, the debtor invoked the Fifth

15   Amendment.

16         Following the petition date, the debtor caused the

17   Bombardier to be sold, without notice to the Court or to the

18   estate, and that sale was orchestrated through the debtor's

19   alter ego Golden Spring.  The Trustee has deposed Jetlaw,

20   which was counsel for the seller in this transaction.

21         Kent Jackson of Jetlaw testified that it was clear

22   to him that Max Krasner, Director of Operations for Golden

23   Spring, was the -- was the contact for, quote/unquote, "the

24   principal."  The principal is known to be one of the

25   debtor's aliases.  In fact, reference to the flight -- the

1    ACASS flight logs shows that the debtor was described as the

2    principal.

3          And if that weren't already clear, the

4    supplemental declaration that ACASS provided reflects that

5    any user other than -- other than the debtor was redacted

6    from those flight logs.  So again, it's clear that the

7    debtor was the one being referred to as the principal.

8          ACASS sent a letter of intent to purchase the

9    Bombardier to Whitecroft.  That letter of intent was

10   directed to the attention of Golden Spring, listed Max

11   Krasner and Yvette Wang, using Golden Spring email

12   addresses.

13         Around the time that the -- that the aircraft was

14   sold, this is in August of 2022, ACASS wired $135,000 to

15   Golden Spring, which transaction was booked as a,

16   quote/unquote, "refund" to Whitecroft.

17         The Bombardier was sold for $13.5 million pursuant

18   to an aircraft purchase agreement.  The counterparty to that

19   agreement was ACASS USA, which is an affiliate of ACASS

20   Canada.

21         And correspondence reflects that Max Krasner

22   emailed with ACASS about where to send the sale proceeds.

23   Originally Mr. Krasner asked the sale proceeds be wired for

24   the benefit of the debtor's son, Kwong Guo, at a bank in

25   Kazakhstan.

1          When that didn't work, the sale proceeds were then

2    directed overseas to JNFX, a financial institution that

3    deals in foreign exchange.  Your Honor is aware of the ins

4    and outs of those events from the preliminary injunction

5    motion that Your Honor already heard.

6          I know the Court is at this point well familiar

7    with the legal standards applicable to summary judgment, so

8    I'll just very quickly go through that summary judgment is

9    appropriate when there's no genuine issue of material facts.

10          When the moving party's evidence demonstrates the

11    absence of any genuine issue of material fact, the burden

12    shifts to the defendant to go beyond the pleadings and

13    designate specific facts to show that there's a genuine

14    issue for trial, and here that's not been done.

15          One thing that's been an issue throughout this

16    case and, in fact, even throughout this proceeding and, in

17    fact, even before this adversary proceeding was filed, is

18    the inability of the Trustee to get any evidence whatsoever

19    from the defendant regarding -- regarding Whitecroft and the

20    aircraft.

21          Well prior to this adversary proceeding being

22    filed in August of 2022, the Trustee served a Rule 2004

23    subpoena on the defendant.  That subpoena included

24    Whitecroft under the subject matter, requested documents

25    related to any transactions that Whitecroft was engaged in.

1          Your Honor recalls the proceedings that occurred,

2     the compliance and contempt proceedings, regarding that

3     subpoena, and yet the defendant never provided responsive

4     documents that would have shown the existence of the

5     aircraft, indeed, before the sale had closed.

6          After the Trustee filed this adversary proceeding,

7     the defendant invoked the Fifth Amendment and has invoked

8     the Fifth Amendment throughout this adversary proceeding.

9          The Trustee did seek documents from Whitecroft and

10    Anton Development, and ultimately Whitecroft and Anton

11    Development were compelled to comply with the Trustee's

12    subpoenas.  However, even then, the Trustee believes that

13    the Trustee has not received all documents.  The documents

14    came late.

15         And at the 30(b)(6) deposition of Whitecroft, the

16    defendant appeared as Whitecroft's corporate representative

17    and then invoked the Fifth Amendment in response to

18    practically every substantive question that was posed.

19         Corporations do not have a Fifth Amendment

20    privilege.  The defendant has argued in papers, including

21    her summary judgment opposition, that the defendant has the

22    individual right under the Fifth Amendment.  That misses the

23    point.

24         The law under the -- in the Second Circuit appears

25    in numerous cases that corporations are obligated to produce

1    a corporate representative who will not invoke the Fifth

2    Amendment.

3          And those cases are cited in the Trustee's reply

4    to the 56(a)(2) statement at -- there's *SEC v. CKB168*

5    *Holdings*, which is 2014 U.S. District, Lexus 2004, 204380.

6    That cites numerous other cases that are also cited in the

7    56(a)(2) reply.

8          Here, we don't have a corporation who designated a

9    representative who showed up and then perhaps unexpectedly

10   invoked the Fifth Amendment.

11         We have a corporate representative who showed up

12   at the deposition for the purpose of invoking the Fifth

13   Amendment with respect to practically every substantive

14   question that was asked.

15         Again, contrary to the debtor's opposition, the

16   Trustee is not requesting at the summary judgment stage that

17   the Court draw an adverse inference.

18         However, the Trustee may point out that the

19   defendant's actions in this adversary proceeding and

20   invocation of the Fifth Amendment do have consequences which

21   include that the defendant may not testify as to -- as to

22   her theory of the case after refusing to do so in discovery.

23         Likewise, citing evidence after the defendant

24   provided a blanket refusal to provide any written discovery

25   in this 2004 -- rather, in this adversary proceeding.

1           The legal standards of the Trustee's substantive

2    claims are not under -- are not in dispute to the Trustee's

3    knowledge.  I'm happy to answer any questions about them.

4           Broadly stated, we have two legal claims that

5    involve a lot of overlapping facts.

6           One is under New York Law for beneficial

7    ownership.  This is the same legal standard that governed

8    Justice Ostrager's decision regarding the Lady May.

9           The other is a claim for beneficial ownership

10   under British Virgin Islands law, that is, that the

11   defendant was a nominee owner, that her interests was purely

12   nominal, and that she was, the term of art that is used

13   there is, a bare trustee for the beneficial owner who is the

14   defendant.

15          So the same facts reflect both that the debtor

16   beneficially own the Bombardier under New York Beneficial

17   Ownership Law and that the defendant was a bare trustee

18   under BVI law.

19          And if we look at this case through the factors

20   that are considered under New York Beneficial Ownership Law,

21   I think -- I think it becomes quickly obvious how compelling

22   the Trustee's case is.

23          First of all, New York Beneficial Ownership Law

24   will consider who funded the asset.

25          In this case, the debtor financed the purchase of

1    the asset through Headwind Group.  The debtor signed loan

2    obligations with respect to that financing.  The debtor

3    personally guaranteed those obligations.  Then the debtor

4    paid off the financing when the -- when the aircraft was

5    transferred to Anton Development.

6            Those transfers from -- of the Bombardier to Anton

7    and then to Whitecroft, the surrendering of the equity in

8    Anton Development from Mr. Hung to the defendant, there's no

9    evidence of any -- of any consideration.

10           The defendant has admitted that she did not pay

11   consideration to receive the equity in Anton Development, an

12   entity that at the time owned a very valuable private jet.

13           Number two, who nominally owned the shell company

14   and what was their connection to the debtor?

15           Here, the nominal owners of the shell company is

16   at issue, Anton Development and Whitecroft, or the debtor's

17   family chef, a personal employee of the debtor, and the

18   debtor's daughter, an insider and close family member.

19           Number three, who used and controlled the asset?

20           If we look at the ACASS flight logs, we see that

21   it was the debtor who continued to use and control the asset

22   even after the Bombardier was transferred to Anton

23   Development and then Whitecroft.  In fact, the debtor flew

24   on the Bombardier 57 times during that period.

25           In her opposition papers, the defendant argues

1   that she used the aircraft too.  But if we follow the

2   citation that's listed for that premise, what we see is a

3   reference to the defendant's 2004 testimony that she flew on

4   the aircraft as a child with her family.  That does not

5   prove the defendant had any real or beneficial interest in

6   the aircraft, rather, that supports the Trustee's case.

7          We also see that the debtor bragged about his

8   ownership of the aircraft, including in videos posted to

9   social media.  In fact, in these videos, he even joked about

10  being -- about claiming to be destitute while being able to

11  enjoy the use of a luxurious private aircraft.

12         We also see who orchestrated the sale of the

13  aircraft, and that was Whitecroft -- that was rather Golden

14  Spring, which by this court's judgment is the debtor's alter

15  ego.

16         Number four, who funded the maintenance and

17  operation of the aircraft?  Essentially, who took care of

18  that?

19         Again, the evidence here is undisputed, it was the

20  debtor who funded the aircraft through Golden Spring, the

21  debtor's alter ego.

22         And then lastly, what explanation does the

23  purported shareholder of the shell company have that she, in

24  fact, was the beneficial owner, was the legitimate owner of

25  the aircraft, of the asset?

1          And here we have no explanation whatsoever.

2          These undisputed facts reflect that it was the

3    debtor who enjoyed all of the benefits of ownership of the

4    Bombardier.

5          They also demonstrate that any role that the

6    defendant had with respect to Whitecroft was purely nominal

7    and that the defendant served as nothing more than a bare

8    trustee subject to the debtor's rights as the beneficial

9    owner.

10          And one of the key features that we see under BVI

11    law is that the bare trustee is obligated to the beneficial

12    owner to surrender the asset upon the beneficial owner's

13    demand.  That right, that right to obtain the asset, is now

14    property of the estate subject to turnover to the Trustee

15    under Section 542(a).

16          So for that reason, under count one, the Court

17    should order that the Bombardier proceeds in the amount of

18    $13.5 million be turned over to the Trustee for the benefit

19    of the estate.  And to the extent that the defendant turns

20    over any amounts less than $13.5 million, a judgment should

21    enter with respect to the deficiency.

22          As to count four, which is the BVI claim, I'm

23    speaking specifically with respect to Whitecroft here, the

24    Court should enter that all equity interest in Whitecroft

25    shall be turned over to the Trustee, including all rights of

1    corporate control of Whitecroft.

2              I'll briefly discuss the facts applicable to the

3    other BVI shell companies.

4              The evidence is likewise undisputed that the

5    debtor, not the defendant, owns the BVI -- the other BVI

6    shell companies as defined in the complaint.

7              The defendant testified in her Rule 2004

8    deposition, this was prior to the adversary proceeding being

9    filed, since which time she's invoked the Fifth Amendment,

10   that she transferred companies in 2017 by, quote, "people

11   managing her family fund."

12             At least two of the BVI shell companies were

13   previously nominally owned by the debtor's family chef,

14   that's Whitecroft, as I discussed earlier, and also Rosiaque

15   (ph) Ventures Limited.

16             Corporate registration forms and other documents

17   associated with the BVI shell companies link these shell

18   companies to the debtor.  These forms required that the

19   owner of the BVI shell companies provide contact

20   information.  They list the debtor's phone number.

21             How do we know that it was the debtor's phone

22   number?  Because it's the same number that the debtor wrote

23   down on his application to purchase property at the Sherry-

24   Netherland.

25             The verification forms also list 22 South Bay Road

1    as the address.  We know that that is an address associated

2    with the debtor in Hong Kong because that property was

3    insured through Leading Shine Limited, which was listed as a

4    related foreign company to the -- on Golden Spring's tax

5    return.

6            We also see an address similar to that address

7    that likewise appears on the application to purchase

8    property at the Sherry-Netherland.

9            Moreover, the -- providing these entities to the

10   defendant as a bare trustee is utterly consistent with the

11   debtor's modus operandi handling his financial affairs and

12   having, you know, shell companies that hold his assets being

13   nominally held by insiders, family members, or people

14   subject to his control.

15           In response to the Trustee's undisputed evidence,

16   the defendant has offered no evidence that she paid any

17   consideration to assume ownership of these entities, nor has

18   she provided any plausible explanation of how she came to

19   nominally own these entities.

20           And again, the explanation here, as with

21   Whitecroft, as with Bombardier, is the obvious one, which is

22   that the debtor -- the defendant was serving as a nominal

23   owner so that the -- so that the debtor could have assets,

24   at the same time have them be insulated from the reach of

25   his creditors.

1        In the absence of any facts to oppose summary

2    judgment, the opposition rests largely on evidentiary

3    objections, and all of those objections fail.

4        I'll address them briefly, but I'm happy to answer

5    any specific questions that Your Honor has.

6        I'll also note that as an attachment to the

7    56(a)(2) reply that the Trustee filed, there is a chart that

8    specifically treats each exhibit to which there was an

9    evidentiary objection and lists the Trustee's responses.

10        First, there are the authentication objections.

11    There were more than 20 authentication objections.

12        From the outset, it bears noting that the standard

13    for authentication of evidence under 901 of the Federal

14    Rules of Evidence is not particularly high.  The standard is

15    just that the -- where there is sufficient proof introduced

16    so that a reasonable juror could find in favor of

17    authenticity for identification.

18        And it's notable here, with respect to all of

19    these authenticity objections, the defendant does not claim

20    that any of the exhibits at issue are inauthentic.  The

21    defendant simply says that the Trustee failed to adequately

22    authenticate them.

23        So in light of this, and this is a procedure that

24    I suppose is now familiar from Greenwich Land, the defendant

25    went to the producing parties, who produced the evidence at

1    issue, obtained authentication declarations that

2    authenticate these exhibits.

3            Those authentication declarations were filed as

4    exhibits with the Trustee's reply papers.  So in light of

5    those declarations, you know, the authentication objections,

6    to the extent that they ever had weight, are now muted --

7    are now mooted.

8            I'll briefly discuss the hearsay objections for

9    the documents at issue.  Most of the -- there were, again,

10   in excess of 20 hearsay objections.

11           Most of these objections are resolved by the

12   business records exception to the hearsay rule because the

13   documents were made by a person with knowledge at or near

14   the time of the events in question, were maintained as part

15   of a regular practice of the business, and were kept in the

16   course of regularly conducted activity.

17           Again, those -- those standards are met by the

18   authentication objections, rather, by the authentication

19   declarations that were filed by the Trustee with the

20   Trustee's reply papers.  And there are specific citations to

21   those authentication declarations, which also reflect the

22   business records exception applying in the Trustee's

23   56(a)(2) reply.

24           There are other exceptions to the hearsay rule

25   that apply as well.

1        One example is the debtor's monologs about the

2    experience of flying on the private jet.  Those are subject

3    to the present sense exception to the, rather, present sense

4    impression exception to the hearsay prohibition.

5        If you read the content of the debtor's -- the

6    debtor's monologs, he's quite literally describing his

7    experiences as they occur, including the sounds he is

8    hearing, the upholstery he is touching, sometimes the food

9    that he is tasting.

10       The debtor's lengthy monolog in which he talks

11   about buying a -- buying the Bombardier, and jokes about

12   pretending to be penniless, also falls against the statement

13   -- falls under the statement against interest exception to

14   the hearsay rule.

15       First of all, the debtor invoking the Fifth

16   Amendment makes it clear that the debtor is an unavailable

17   witness.  And these statements the debtor made are contrary

18   to the declarant's proprietary or pecuniary interest.

19       And I think that's clear from the fact that the

20   debtor's pecuniary interests, as manifested by his conduct

21   throughout this Chapter 11 case, are to have his assets

22   nominally held by family members in order to protect them

23   from his creditors.

24       Finally, I just want to briefly address the

25   defendant's frivolous estoppel argument.

1          The defendant claims that the Court, in granting a

2     motion to compel filed by the Trustee, apparently secretly

3     determined the merits of this adversary proceeding in favor

4     of the defendant.

5          This was the motion to compel Whitecroft and Anton

6     Development to comply with the Trustee's subpoenas, the

7     motion to compel, and the Court's order granting it,

8     provided that the defendant must act in her capacity with

9     respect to the entities in order to ensure compliance.

10          The defendant contends that by seeking discovery

11     from these shell companies through their nominal owner, who

12     held herself out as controlling the companies, the Trustee

13     is now precluded from making the very argument that he

14     sought the discovery to support.

15          And the defendant, in making this argument, quite

16     brazenly omits to disclose that at least five times in the

17     motion to compel the Trustee referred to the defendant's

18     interest in the companies at nominal.  In fact, the Court's

19     order refers to the defendant's interest in the companies as

20     nominal.

21          Moreover, the defendant's argument in the context

22     of the debtor's shell game is simply a non sequitur.  The

23     defendant's role as a nominal director and shareholder of

24     Anton Development and Whitecroft is in no way inconsistent

25     with the Trustee's claims.

1          This is at the core of the debtor's shell game, is

2     to have insiders and close family members as nominal

3     shareholders, nominal officers or directors, of entities

4     with the debtor as the beneficial owner.

5          So for the foregoing reasons, under the first

6     count, the Court should determine that the Bombardier

7     proceeds are property of the estate, order that they be

8     turned over within five business days.

9          And to the extent that the proceeds turned over to

10    the Trustee are less than the amount of the Bombardier

11    proceeds, and again that's $13.5 million, the Court should

12    enter a money judgment against the defendant.

13         On count four, the Court should determine that

14    Whitecroft and the other BVI shell companies are property of

15    the estate, and the Court should order that all equity

16    interests in these companies and rights of corporate control

17    be turned over to the Trustee.

18         And with that, I'm happy to answer any questions

19    the Court may have.

20         THE COURT:  I do not have any questions at the

21    moment.

22         MR. LINSEY:  Two corrections, Your Honor.

23         First of all, I mixed up my former Soviet

24    Republics.  It's Kurdistan, not Kazakhstan.  I think there

25    was a West Wing episode where someone messed those up.

1          Second, I referred to the defendant as having

2     gotten declarations, it was the Trustee that went and got

3     the declarations after the defendant raised those

4     evidentiary objections.

5          I apologize for misspeaking.  And again, I'm happy

6     to answer any questions.

7          THE COURT:  When you're talking about the

8     declarations, you mean the -- what were attached to your

9     reply with the authentication of the documents?  Is that

10    what you're talking about?

11         MR. LINSEY:  Correct, Your Honor.

12         THE COURT:  Okay.  I don't have any questions at

13    the moment.  Thank you.

14         MR. LINSEY:  Thank you.

15         Attorney Wernick, are you going to argue or

16    Attorney Moriarty?

17         MS. WERNICK:  I will be, Your Honor.

18         THE COURT:  Okay.  Thank you.

19         MS. WERNICK:  Thank you.  Thank you, Your Honor.

20    And good afternoon.

21         THE COURT:  Good afternoon.

22         MS. WERNICK:  I want to start with why we're here

23    this afternoon.

24         And as Attorney Linsey presented, the Trustee

25    filed a motion for summary judgment on the first and fourth

1    counterclaims as to the beneficial ownership of the

2    Bombardier and the Bombardier proceeds, together with the

3    entity Whitecroft Shore Limited, as well as a handful of

4    other BVI companies that the Trustee refers to as BVI shell

5    entities in their papers.

6            And when Attorney Linsey came up here, he started

7    with what he presented as a philosophical question as what

8    does it mean to own an asset?

9            And I would respectfully submit to Your Honor that

10   summary judgment is not the appropriate forum to be

11   addressing such philosophical questions.

12           The standard for summary judgment is well known,

13   but I think the most important part of the Court's

14   consideration this afternoon.

15           Summary judgment may only be granted where there

16   is no genuine issue of material fact, and the fact as to

17   which there are no such issues warrant judgment for the

18   moving party as a matter of law.

19           In determining whether a genuine issue of material

20   fact exists, the Court must examine the evidence in the

21   light most favorable to and draw all inferences in favor of

22   the non-movant.

23           And summary judgment is improper if there's any

24   evidence in the record that could reasonably support a

25   verdict for the nonmoving party.

1    And if there is evidence in the record from any

2    source from which a reasonable inference in the nonmoving

3    party's favor may be drawn, the moving party has not

4    obtained summary judgment.

5    The Court must draw all reasonable inferences in

6    favor of the nonmoving party and it may not make credibility

7    determinations or waive evidence.  Credibility

8    determinations and the weighing of evidence are not

9    appropriate at the summary judgment stage.

10    In this case, and in this posture, all ambiguities

11    must be resolved in favor of the defendant, Ms. Guo, and all

12    inferences must be drawn in favor of Ms. Guo at this stage

13    of the proceeding.

14    And this is critically important because the

15    Trustee makes much of Ms. Guo's purported failure to present

16    affirmative evidence in this case.

17    But courts within this district have denied even

18    unopposed motions for summary judgment where the moving

19    party has failed to its burden.

20    It's the Trustee's burden to present evidence that

21    would prove his claim.  But looking at the evidence relied

22    upon by the Trustee, the defendant respectfully submits that

23    he failed to do so here where every reasonable inference

24    must be given the defendant.

25    I want to start where Attorney Linsey ended with

1    respect to the BVI companies.

2            The Trustee asserts that the debtor is a

3    beneficial owner of the BVI companies, including Whitecroft,

4    despite acknowledging that each of the BVI companies

5    identify Ms. Guo as their sole owner.

6            And in order to ask the Court to make this leap,

7    the Trustee relies on a smattering of evidence that don't

8    add up to the inference that the Trustee's asking Your Honor

9    to draw.

10           By merely referring to an address on a

11   verification page that undisputably indicates that Ms. Guo

12   is the owner of these entities, the Trustee asks the Court,

13   because that same or similar address appeared on other

14   papers relating to other entities, concludes that these

15   companies must be associated with the debtor.

16           That is not a reasonable inference to draw under

17   this circumstance and do not -- and does not allow the Court

18   to draw the conclusion that the BVI companies referred to in

19   the pleading are beneficially owned by the debtor.

20           The same is true with respect to Whitecroft, where

21   the evidence is even stronger, as it's undisputed that Ms.

22   Guo is and always was the sole member and shareholder of

23   Whitecroft, signed agreements relating to the entity, and

24   has been identified by numerous law firms as the owner of

25   Whitecroft.

1        With respect to the Bombardier itself, the Trustee

2    relies upon affidavits that were not submitted in connection

3    with his initial moving papers on summary judgment, and only

4    provided on reply in connection with a statement, or apply

5    to a local Rule 56(a)(2) statement, which I understand not

6    to be called for under the local rules and to not be

7    considered by the Court.

8        With respect to the Bombardier itself, the Trustee

9    also asks the Court to make improper leaps and inferences

10   based on facts such as that Mr. Krasner was somehow

11   associated with the sale of the plane and, therefore, could

12   have only been working for Golden Spring as opposed to

13   Whitecroft.

14       It's undisputed that Whitecroft was the record

15   title owner of the plane dating back to 2018.  And in this

16   case, drawing all reasonable -- all reasonable inferences in

17   favor of Ms. Guo, summary judgment cannot be entered.

18       And with that, I'll rely on papers

19   (indiscernible).

20           THE COURT:  Okay.  Thank you.  I don't have any

21   questions at the moment.  Thank you.

22           MS. WERNICK:  All right.  Thank you, Your Honor.

23           MR. LINSEY:  Can we have a few seconds, Your

24   Honor?

25           THE COURT:  Yes, you may.

1          MR. LINSEY:  Thank you.

2          (Pause.)

3          MR. LINSEY:  Just a couple of points, Your Honor.

4          First of all, the law is clear that we're -- the

5     Trustee has made his case.

6          On the basis of facts under summary judgment,

7     under *Celotex*, and other case law, it is the defendant's

8     obligation to affirmatively come forward with facts.  The

9     defendant has failed to do so.  Therefore, the cases cited

10    by the defendant with respect to unopposed motions for

11    summary judgment do not apply.

12         Briefly, as to Mr. Krasner, we know that Mr.

13    Krasner was working for Golden Spring because Mr. Krasner

14    identified himself as the Director of Operations for Golden

15    Spring.

16         Mr. Jackson of Jetlaw specifically testified to

17    that.  It's also seen in documentary evidence that we

18    obtained from Jetlaw.

19         I'll also just refer to something that the

20    defendant's -- defense counsel said in passing.

21         Defense counsel referred to letters from law

22    firms.  I believe what she's referring to there is two of

23    the exhibits that the -- were attached to the declaration of

24    Mr. Vartan together with the defendant's opposition papers.

25    Those exhibits are discussed in the Trustee's 56(a)(2)

1    reply.  And the Trustee has, as pointed out in that reply,

2    that those exhibits are improper.

3         And the reason that they're improper is that the

4    Trustee sought to ask questions of the defendant as the

5    corporate representative for Whitecroft at the Whitecroft

6    deposition and the defendant invoked the Fifth Amendment as

7    to those specific documents.

8         They may be opinion letters by counsel in the BVI.

9    We don't know exactly what they are.  And the reason we

10   don't know exactly what they are is because of exchanges

11   like this.

12        I asked the question we're going to move on to

13   Exhibit 11, please take a look at this document and let me

14   know when you've familiarized yourself.  The defendant

15   finished reviewing.

16        Have you seen this document before?  Answer, I

17   don't remember.  What is this document?  Answer, Fifth

18   Amendment.  What is Vistra?  That was -- Vistra was the

19   signer of one of the letters.  Fifth Amendment.  What is

20   Vistra Legal BVI Limited?  Fifth Amendment.  Who signed this

21   document for Vistra Legal BVI Limited?  Fifth Amendment.

22   Why was this document created?  Fifth Amendment.

23        I will represent to you that Whitecroft produced

24   this document to the Trustee, the plaintiff, in response to

25   the plaintiff's subpoena.  From where did Whitecroft obtain

1   this document to produce it to the Trustee?  Fifth

2   Amendment.

3           That's cited on page 45, that exchange is cited on

4   page 45 of the defendant's, rather, the Trustee's 56(a)(2)

5   reply.  Also cited as a similar exchange with respect to the

6   other exhibit.  Again, discussed glancingly by defendant's

7   counsel.

8           It is, therefore, wholly improper for the

9   defendant to seek to use that evidence in order to oppose

10  summary judgment.

11          Finally, I'll just point out in closing, the same

12  thing I said in starting, which is that this is -- this is

13  really starting to become -- these cases are almost starting

14  to become echoes of one another.  The similarities between

15  this case and the Lady May case are so -- are so close,

16  sometimes they almost look like carbon copies of one

17  another.

18          We have valuable assets that were transferred,

19  funded by the debtor, transferred from the debtor through

20  one of the debtor's subordinates to be nominally held

21  through a shell company by the debtor's family member.

22          We have, notwithstanding the nominal ownership by

23  the shell company ostensibly held by the family member, the

24  debtor continues to use and enjoy the asset.  The debtor

25  continues to fund and control the asset rather than the

1    defendant.

2              In light of the case law described, the compelling

3    facts that have been set forth in the Trustee's motion for

4    summary judgment, none of which have been disputed, the

5    Court should enter judgment as requested.

6              Thank you.

7              THE COURT:  Thank you.

8              MS. WERNICK:  Your Honor, just an extremely brief

9    reply?

10             THE COURT:  Certainly.  Go right ahead.

11             MS. WERNICK:  Thank you.

12             So I want to start with Attorney Linsey's

13   harkening back to the Lady May action.

14             And I think, again, what's most important here is

15   that we're here in connection with a separate proceeding and

16   the Trustee must satisfy his burden with respect to summary

17   judgment in this proceeding.

18             I wanted to point Your Honor's attention to the

19   case *Jones vs. Sampson*, which is from the District of

20   Connecticut, where in footnote one the Court made clear that

21   there are no replies to Rule 56(a)(2) statements and

22   declined to consider such a statement in that case.  And I

23   have a Westlaw cite if Your Honor would like.

24             THE COURT:  Yes.  Did you cite that in your brief?

25             MS. WERNICK:  It was -- it was only in response to

1    the reply submission --

2              THE COURT:  Okay.  All right.

3              MS. WERNICK:  -- so we would not have briefing.

4              THE COURT:  So, go ahead.  Say that again.

5              MS. WERNICK:  It's *Jones vs. Sampson*.

6              THE COURT:  *Jones*.  Right.

7              MS. WERNICK:  2023 Westlaw 1069487.

8              THE COURT:  Okay.  Thank you.

9              MS. WERNICK:  And so with that, we respectfully

10   disagree with Attorney Linsey and the Trustee's position

11   that the Trustee has satisfied its burden with respect to

12   the facts presented here, and the application of the facts

13   to the law do not warrant the entry of summary judgment in

14   this case.

15             THE COURT:  Okay.  Thank you.

16             All right.  All right.  Does anyone else wish to

17   be heard in connection with the motion for summary judgment?

18        (No response.)

19             THE COURT:  All right.  I have -- I did look at

20   the motions prior to today, but I obviously have to go back

21   and look at them again given the presentations made by

22   counsel this afternoon, so I will take the matter, the

23   motion for summary judgment in adversary 23-5008 under

24   advisement.

25             Are there any other matters we need to address

1    this afternoon?

2              MR. DESPINS:  Not at this time, Your Honor.

3              THE COURT:  Okay.  Then those are the only matters

4    that -- those are the remaining matters on today's calendar.

5              So thank you all.

6              Court is adjourned.

7         (Proceedings concluded at 2:21 p.m.)

8              I, CHRISTINE FIORE, court-approved transcriber and

9    certified electronic reporter and transcriber, certify that

10   the foregoing is a correct transcript from the official

11   electronic sound recording of the proceedings in the above-

12   entitled matter.

13

14   *Christine Fiore*

15   _____          February 7, 2024

16      Christine Fiore, CERT

17

18

19

20

21

22

23

24