B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|
| | |

**PARTY** (Check One Box Only)
☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)
☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**ADVERSARY PROCEEDING COVER SHEET**

**<u>DEFENDANTS CONTINUATION PAGE</u>**

1.  Curiosity Corp. LLC

2.  Dark Shadows LLC

3.  Flying Colours Corp.

4.  River Valley Operations LLC

5.  Supreme SG PTE Ltd

6.  Top California Beach Corp.

7.  Tut Co. Limited

8.  Wang's Realty Management Service Inc.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------- :

In re:                                                : Chapter 11

HO WAN KWOK, *et al.*,[1]                             : Case No. 22-50073 (JAM)

                          Debtors.                   : (Jointly Administered)

-------------------------------------------------------- :

LUC A. DESPINS, CHAPTER 11                            :
TRUSTEE,                                              :
                                                     : Adv. Proceeding No. [_____]
                          Plaintiff,                 :
v.                                                    :
                                                     : February 15, 2024
CURIOSITY CORP., *et al.*,                            :
                                                     :
                                                     :
                          Defendants.                :

-------------------------------------------------------

**COMPLAINT OF CHAPTER 11 TRUSTEE SEEKING AVOIDANCE**
**AND RECOVERY OF FRAUDULENT TRANSFERS,**
**AND POSTPETITION TRANSFERS AND RELATED RELIEF**
**PURSUANT TO BANKRUPTCY CODE SECTIONS 544, 548, 549, AND 550**
**AND NEW YORK DEBTOR & CREDITOR LAW SECTIONS 273, 274, AND 276**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor" or "Kwok"), files this

adversary complaint (the "Complaint") against defendants, Curiosity Corp. LLC ("Curiosity"),

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Dark Shadows LLC ("Dark Shadows"), Flying Colours Corp. ("Flying Colours"), River Valley Operations LLC ("River Valley"), Supreme SG PTE Ltd ("Supreme"), Top California Beach Corp. ("Top California"), Tut Co. Limited ("Tut"), Wang's Realty Management Service Inc. ("Wang's Realty"), (collectively, the "Defendants"), stating as follows:

**NATURE OF ACTION**

1.      The Trustee commences this adversary proceeding to avoid and recover: (a) transfers of the Debtor's property prior to the commencement of this Chapter 11 Case; and (b) transfers of property of the Debtor's chapter 11 estate after the commencement of this Chapter 11 Case and not authorized by the Bankruptcy Court or under Title 11 of the United States Code (the "Bankruptcy Code").

2.      The Debtor, through his alter-ego shell companies, transferred funds in the following amounts prior to the Petition Date (as defined herein) to the Defendants, as initial transferees, as set forth below (and as more fully set forth on the Schedules attached hereto and made a part hereof):

   a.  $180,900.00 to Curiosity;

   b.  $500,000.00 to Dark Shadows;

   c.  $703,147.15 to Flying Colours;

   d.  $45,000.00 to River Valley;

   e.  $105,000.00 to Supreme;

   f.  $60,000.00 to Top California; and

   g.  $646,500.00 to Tut.

3.      These transfers were actually fraudulent, because the Debtor effectuated them as part of his "shell game," and they were made with the intent to hinder, delay, and/or defraud the

Debtor's creditors.  Alternatively, these transfers were constructively fraudulent, because they were made when the Debtor was insolvent, and the Debtor did not receive reasonably equivalent value in consideration thereof.

4.     Following the Petition Date, the Debtor, through his alter-ego shell companies, transferred funds to the Defendants as initial transferee, as follows:

      a.  $405,271.64 to River Valley;

      b.  $45,000.00 to Supreme;

      c.  $130,000.00 to Top California;

      d.  $689,970.83 to Tut; and

      e.  $1,000,000.00 to Wang's Realty.

5.     Because these postpetition transfers of estate property were not authorized by the Court or under the Bankruptcy Code, they are subject to avoidance and recovery under sections 549 and 550 of the Bankruptcy Code.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

7.     This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. § 157(a).

8.     The statutory predicates for the relief sought herein include sections 544, 548, 549, and 550 of the Bankruptcy Code and New York Debtor & Creditor Law sections 273, 274, and 276 [2] or any other applicable state law equivalents.

---

[2]     All statutory references to New York Debtor and Creditor Law will hereinafter be referred to as "N.Y. Debt. & Cred. Law". The New York Uniform Voidable Transactions Act ("NYUVT") replaced the New York Uniform Fraudulent Conveyance Act ("NYUFC") and became effective on April 4, 2020 and applies to transfers made or

**THE PARTIES**

9.      The Trustee is the chapter 11 trustee in the Chapter 11 Case pursuant to the Bankruptcy Court's order entered on July 8, 2022 [Case No. 22-50073 (the "<u>Main Case</u>") Docket No. 523].

10.     Curiosity is a California limited liability company.

11.     Dark Shadows is a California limited liability company.

12.     Flying Colours is a Canadian business corporation.

13.     River Valley is an Indiana limited liability company.

14.     Supreme is a Singapore company.

15.     Top California is a California corporation.

16.     Tut is a Japan limited company.

17.     Wang's Realty is a Massachusetts corporation.

**FACTS**

**A.    <u>Chapter 11 Case</u>**

18.     The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 15, 2022 (the "<u>Petition Date</u>") in the United States Bankruptcy Court for the District of Connecticut (the "<u>Bankruptcy Court</u>"), thus commencing the Chapter 11 Case.

19.     On March 21, 2022, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in this Chapter 11 Case.  No examiner has been appointed.

20.     The Debtor's bankruptcy schedules, filed in March 2022 with the Bankruptcy Court, claimed that he owned $3,850 in assets and had incurred hundreds of millions of dollars of

---

obligations incurred on or after April 4, 2020.  With respect to transfers prior to April 4, 2020, the Trustee seeks relief in this action under the NYUFC and N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278.

liabilities.[3]  While the Debtor was, indeed, deeply indebted, his schedules failed to disclose the Debtor's property as held and/or transferred through his many alter-ego shell companies.

21.    On June 15, 2022, the Bankruptcy Court entered a memorandum of decision and order [Main Case Docket No. 465] directing the United States Trustee to appoint a chapter 11 trustee in the Chapter 11 Case.  Pursuant to this order, the United States Trustee selected Luc A. Despins as the Trustee.  On July 8, 2022, the Bankruptcy Court entered an order granting the appointment of Luc A. Despins as the Trustee in the Chapter 11 Case [Main Case Docket No. 523].

**B.    Debtor's Use of Shell Companies and Trustee's Adversary Proceedings**

22.    The Debtor used numerous alter-ego shell companies to hinder, delay, and/or defraud his creditors.[4]  For years, the Debtor has orchestrated a "shell game," employing a

---

[3]    Schedule of Assets and Liabilities, at 1 [Main Case Docket No. 78].

[4]    There is a pending motion for summary judgment to determine that Greenwich Land LLC ("Greenwich Land") is the alter ego of the Debtor in the adversary proceeding *Despins v. Greenwich Land, LLC* (Adv. Proc. No. 23-5005 (the "Greenwich Land A.P."), Docket No. 78).  The Trustee incorporates by reference herein, the Trustee's Complaint filed in the Greenwich Land A.P. (Adv. Proc. No. 23-5005, Docket No. 1).

The Court has entered judgment to the effect that Golden Spring (New York) Ltd ("Golden Spring") was the Debtor's alter ego.  *See Despins v. Golden Spring (New York) Limited* (Adv. Proc. No. 23-5018 (the "Golden Spring A.P."), Docket No. 35).  The Trustee incorporates by reference herein, the Trustee's Complaint filed in the Golden Spring A.P. (Adv. Proc. No. 23-5018, Docket No. 1).

Default has entered against HCHK Property Management Inc ("HCHK Property"); HCHK Technologies Inc ("HCHK Technologies"); and Lexington Property and Staffing Inc. ("Lexington") in the adversary proceeding *Despins v. HCHK Technologies, Inc., et. al.* (Adv. Proc. No. 23-5013 (the "HCHK Entities A.P."), Docket No. 139), which adversary proceeding seeks, among other things, a declaratory judgment that HCHK Technologies, HCHK Property and Lexington were the alter egos of the Debtor.  The Trustee incorporates by reference herein, the Trustee's Complaint filed in the HCHK Entities A.P. (Adv. Proc. No. 23-5013, Docket No. 1).

The Trustee has commenced an adversary proceeding against Lamp Capital LLC ("Lamp Capital"), Hudson Diamond NY LLC ("Hudson Diamond"), Leading Shine NY Ltd ("Leading Shine"), which adversary proceeding seeks, among other things, a declaratory judgment that Hudson Diamond and Leading Shine were the alter egos of the Debtor.  *See Despins v. Lamp Capital LLC, et al.* (Adv. Proc. No. 23-5023 (the "Lamp Capital A.P.")).  The Court has entered judgment to the effect that Lamp Capital was the Debtor's alter ego [Adv. Proc. No. 23-5023, Docket No. 66] and default has entered against Leading Shine [Adv. Proc. No. 23-5023, Docket No. 13].  The Trustee incorporates by reference herein, the Trustee's Complaint filed in the Lamp Capital A.P. (Adv. Proc. No. 23-5023, Docket No. 1).

convoluted web of shell companies, nominally owned by family members, lieutenants, and/or subordinates, but in reality, controlled by the Debtor.  This shell game enabled the Debtor to use and spend and/or transfer millions of dollars of cash and other assets—while concealing his property from creditors.

23.     Since his appointment, the Trustee has commenced a number of adversary proceedings in the Chapter 11 Case to, among other things, establish that the Debtor's shell companies were his alter-egos and/or that such companies and their assets were equitably owned by the Debtor and in several such adversary proceedings the Bankruptcy Court has already granted such relief.[5]

24.     The fact patterns in these litigations consistently involve: (i) Debtor-controlled shell companies held by close family members and/or subordinates, (ii) assets purchased with cash from other Debtor-controlled entities and/or transferred to and among shell entities for no consideration, and (iii) the Debtor benefiting from and having control and dominion over such assets.

## C.    <u>Debtor's Conduct to Hinder, Delay, and/or Defraud Creditors</u>

25.     In addition to the matters addressed in the Trustee's adversary proceedings, the Bankruptcy Court has found that the Debtor was the beneficial owner of Ace Decade Limited (and

---

The Trustee has or will imminently commence an adversary proceeding against, G Club International Limited, G Club Operations LLC, G Fashion, G Fashion International Limited, G Fashion Media Group Inc, Rule of Law Foundation III Inc., Rule of Law Society IV Inc., GFNY Inc., and Anton Development Limited, which adversary proceeding seeks, among other things, a declaratory judgment that these entities were the alter egos of the Debtor and/or that they and any property they nominally held was equitably owned by the Debtor.  The Trustee incorporates by reference herein, the Trustee's Complaint filed in such adversary proceeding.

[5]     These include the following adversary proceedings: (i) Luc A. Despins, Chapter 11 Trustee v. HK International Funds Investments (USA) Limited, LLC, et al. [Adv. Proc. No. 22-05003];  (ii) Luc A. Despins, Chapter 11 Trustee v. Greenwich Land LLC, et al. [Adv. Proc. No. 23-05005]; (iii) Luc A. Despins, Chapter 11 Trustee v. Mei Guo [Adv. Proc. No. 23-05008]; (iv) Luc A. Despins, Chapter 11 Trustee v. HCHK Technologies, Inc., et al. [Adv. Proc. No. 23-05013]; (v) Luc A. Despins, Chapter 11 Trustee v. Taurus Fund LLC, et al. [Adv. Proc. No. 23-05017]; (vi)  Luc A. Despins, Chapter 11 Trustee v. Golden Spring (New York) Limited [Adv. Proc. 23-05018]; and (vii) Luc A. Despins, Chapter 11 Trustee v. Lamp Capital LLC, et al. [Adv. Proc. 23-05023].

through it, Dawn State Limited) and that the Debtor controlled and employed Ace Decade Limited's nominee shareholder, Yvette Wang.[6]

26.     The Bankruptcy Court has also found that the "G Entities" (Gettr, G Fashion, G Music, GClubs, GNews and GEdu), the New Federal State of China and the Rule of Law Foundation, as well as other purportedly independent entities and organizations, were controlled by the Debtor[7], led by the Debtor[8] and/or served "the purposes of… and as business vehicles of" the Debtor.[9]

27.     Prior to the Petition Date, Judge Liman of the United States District Court for the Southern District of New York found that Eastern Profit Corporation Limited, an entity originally owned by one of the Debtor's chefs before its transfer to Debtor's daughter, was "in essence, a shell corporation" for the Debtor.[10]

28.     The Debtor has gone to great lengths to hinder and delay the collection efforts of one of his largest creditors, i.e., Pacific Alliance Asia Opportunity Fund, L.P. ("PAX").  In 2017, PAX sued the Debtor in the Supreme Court of the State of New York (the "New York Court"), Index No. 652077/2017 (the "PAX Case"), seeking judgment for monies owed.  On February 3, 2021, PAX obtained a judgment from the New York Court against the Debtor in the sum of $116,402,019.57 (the "PAX Judgment").  PAX sought to enforce the PAX Judgment by levying

---

[6]   Order Granting Motion to Hold Debtor in Contempt of Corporate Governance Order, ¶¶ 1, 4 (Jan. 24, 2023, Docket No. 1372 ("Corp. Governance Contempt Order").

[7]   *Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction*, ¶ 3 (Adv. Proc. No. 22-05032, January 13, 2023 ("The Debtor also controls Saraca Media Group and a related entity 'GTV'").

[8]   *Id*. at ¶ 7 ("The Debtor is the leader of The Whistleblower Movement, NFSC, ROLF and Himalaya.").

[9]   *Id*. ("The Whistleblower Movement, NFSC, ROLF, GSeries, and Himalaya serve the purposes of the Debtor, serve as business vehicles for the Debtor, and their members are personally loyal to the Debtor.").

[10]  *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL) 2021 WL 2554631, at *1 (S.D.N.Y. June 22, 2021).

the Debtor's assets—including the Lady May, which the Debtor falsely claimed was owned by his daughter, and the Debtor's luxury apartment in Manhattan, which the Debtor falsely claimed was held in trust for the Debtor's son.  The Debtor's defiance of New York Court orders in post-judgment proceedings eventually resulted in the Debtor incurring contempt penalties of $134 million.

29.     The Debtor also used his alter egos as personal piggy-banks, funding the lavish lifestyle to which he and his family had become accustomed, while concealing assets in these alter egos from his creditors and hindering and delaying creditors from recoveries on their claims.  The transfers that the Debtor effectuated through these alter egos perpetuated the Debtor's fraudulent scheme.

30.     The Debtor has testified before the Bankruptcy Court that he has insufficient assets to pay his liabilities and that his luxurious lifestyle is funded by his family through businesses nominally held by family members.[11]  The Debtor scheduled only $3,850 in assets.[12]

31.     In March 2023, the Debtor was arrested and remains confined pending his trial on federal criminal charges of, among other things, wire fraud, securities fraud, and money laundering.

32.     In its criminal indictment of the Debtor, the United States Government asserts that the Debtor and his co-defendants "utilized more than approximately 500 accounts held in the

---

[11]    Hearing on Debtor's Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief (Main Case, April 27, 2022).

[12]    *See* n.3

names of **at least 80 different entities or individuals** to launder more than $1 billion in fraud proceeds."[13]

33.     The property of the Debtor's alter egos was at all times prior to the Petition Date property of the Debtor.

34.     At all times relevant herein, the Debtor conducted business in New York, New York, including direction of the prepetition transfers at issue in this Complaint.

**D.     Debtor's Shell Game and Fraud Continues Postpetition**

35.     As of the Petition Date, all of the Debtor's property held through his alter egos became property of the chapter 11 estate.  *See* 11 U.S.C. § 541(a)(1).

36.     Following the Petition Date, the Debtor, with blatant disregard for the Bankruptcy Court and his obligations under the Bankruptcy Code, continued to effectuate transfers through numerous alter-ego shell companies.

37.     None of these postpetition transfers were authorized by the Bankruptcy Court nor were such transfers authorized under the Bankruptcy Code.

**E.     Transfers Made with Intent to Hinder, Delay, or Defraud Creditors**

38.     The Transfers (as defined herein) at issue in this Complaint were made with the intent to hinder, delay, and/or defraud the Debtor's creditors inasmuch as they were all made through the Debtor's alter-ego shell companies operated as a part of the Debtor's shell game.

39.     The Debtor intentionally orchestrated his financial affairs in this manner in order to conceal and dissipate millions of dollars in assets while falsely pleading poverty to his many

---

[13]     *See* Memorandum of Law of the United States of America in Opposition to Defendant Yanping Wang's Motion for Pretrial Release at 29, attached as Exhibit B in the Reply of Chapter 11 Trustee to G Club Operations LLC's Supplemental Objection to Trustee's Motion to Compel and Request for Related Relief (June 23, 2023, Main Case Docket No. 1934).

creditors. The Debtor claimed to be destitute while simultaneously spending heavily to maintain a billionaire lifestyle for himself and for his family members and close associates.

40. The assets concealed and dissipated by the Debtor included funds that he obtained from the victims of his cryptocurrency, securities, and other fraud schemes. As a result of this conduct, the Debtor faces multiple felony fraud, money laundering, and racketeering charges in a criminal case pending in the U.S. District Court for the Southern District of New York. *See United States v. Ho Wan Kwok*, case no. 1:23-cr-00118-AT [ECF No. 215] (Jan. 3, 2024 S.D.N.Y.).

41. The Debtor knew and intended that by concealing and dissipating his assets in this manner there would not be sufficient assets remaining to repay his creditors—including the many victims of his frauds. These transfers were thus necessarily made with the intent to hinder, delay, and/or defraud the Debtor's creditors.

**F.   Transfers to the Defendants**

42. Prior to the Petition Date, the Debtor, using his alter-ego shell companies, *see* n.4 *supra* and appended schedules, or otherwise, transferred the Debtor's property to the Defendants (collectively, the "Prepetition Transfers"), as follows:

> a.   The Prepetition Transfers identified on **Schedule 1** attached hereto and incorporated herein (the "Curiosity Prepetition Transfers") were made by the Debtor through his alter egos to Curiosity.

> b.   The Prepetition Transfers identified on **Schedule 2** attached hereto and incorporated herein (the "Dark Shadows Prepetition Transfers") were made by the Debtor through his alter egos to Dark Shadows.

c.    The Prepetition Transfers identified on **Schedule 3** attached hereto and incorporated herein (the "Flying Colours Prepetition Transfers") were made by the Debtor through his alter egos to Flying Colours.

d.    The Prepetition Transfers identified on **Schedule 4A** attached hereto and incorporated herein (the "River Valley Prepetition Transfers") were made by the Debtor through his alter egos to River Valley.

e.    The Prepetition Transfers identified on **Schedule 5A** attached hereto and incorporated herein (the "Supreme Prepetition Transfers") were made by the Debtor through his alter egos to Supreme.

f.    The Prepetition Transfers identified on **Schedule 6A** attached hereto and incorporated herein (the "Top California Prepetition Transfers") were made by the Debtor through his alter egos to Top California.

g.    The Prepetition Transfers identified on **Schedule 7A** attached hereto and incorporated herein (the "Tut Prepetition Transfers") were made by the Debtor through his alter egos to Tut.

43.    Subsequent to the Petition Date, the Debtor, through his alter-ego shell companies, *see* n.4 *supra* and appended schedules, or otherwise, transferred property of the estate to the Defendants (collectively, the "Postpetition Transfers"), as follows:

a.    The Postpetition Transfers identified on **Schedule 4B** attached hereto and incorporated herein (the "River Valley Postpetition Transfers") were made to River Valley by the Debtor through his alter-ego shell companies.

11

b.    The Postpetition Transfers identified on **Schedule 5B** attached hereto and incorporated herein (the "Supreme Postpetition Transfers") were made to Supreme by the Debtor through his alter-ego shell companies.

c.    The Postpetition Transfers identified on **Schedule 6B** attached hereto and incorporated herein (the "Top California Postpetition Transfers") were made to Top California by the Debtor through his alter-ego shell companies.

d.    The Postpetition Transfers identified on **Schedule 7B** attached hereto and incorporated herein (the "Tut Postpetition Transfers") were made to Tut by the Debtor through his alter-ego shell companies.

e.    The Postpetition Transfers identified on **Schedule 13** attached hereto and incorporated herein (the "Wang's Realty Postpetition Transfer") were made to Wang's Realty by the Debtor through his alter-ego shell companies.

44.    At the time of the Prepetition Transfers and the Postpetition Transfers (collectively, the "Transfers"), the Debtor had outstanding obligations to creditors of the Debtor's estate.

45.    The Defendants were the initial transferees of the Transfers they received (as set forth herein).

## FIRST CLAIM

**(As to Curiosity)**
**(Claim to Avoid and Recover Actual Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(A) and 550(a))**

46.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

47.    The Curiosity Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

12

48.     The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Curiosity Prepetition Transfers is shown by, among other things:

a.      The Curiosity Prepetition Transfers were effectuated using an alter-ego shell company;

b.      The Curiosity Prepetition Transfers were concealed from the Debtor's creditors;

c.      The Curiosity Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.      The Curiosity Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.      The Curiosity Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.      At the time of the Curiosity Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.      At the time of the Curiosity Prepetition Transfers, the Debtor was insolvent or undercapitalized.

49.     The Curiosity Prepetition Transfers are avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## SECOND CLAIM

### (As to Curiosity)
### (Claim to Avoid and Recover Actual Fraudulent Transfers pursuant to N.Y. Debt. & Cred. Law sections 273, 274, and 276, and Bankruptcy Code sections 544(b) and 550(a))

50.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

51.    The Curiosity Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

52.    The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Curiosity Prepetition Transfers is shown by, among other things:

    a.    The Curiosity Prepetition Transfers were effectuated using an alter-ego shell company;

    b.    The Curiosity Prepetition Transfers were concealed from the Debtor's creditors;

    c.    The Curiosity Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

    d.    The Curiosity Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

    e.    The Curiosity Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.      At the time of the Curiosity Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.      At the time of the Curiosity Prepetition Transfers, the Debtor was insolvent or undercapitalized.

53.     The Curiosity Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(1), 274, and 276, and section 544(b) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code.

### THIRD CLAIM

**(As to Curiosity)**
**(Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(B) and 550(a))**

54.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

55.     The Debtor received less than a reasonably equivalent value in exchange for the Curiosity Prepetition Transfers.

56.     At the time of the Curiosity Prepetition Transfers, the Debtor was insolvent or became insolvent as a result of the Curiosity Prepetition Transfers.

57.     At the time of the Curiosity Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small amount of capital.

58.     At the time of the Curiosity Prepetition Transfers, the Debtor intended to incur or believed he would incur, debts that would be beyond his ability to pay as such debts matured.

59.     The Curiosity Prepetition Transfers constitute fraudulent transfers and are avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## FOURTH CLAIM

**(As to Curiosity)**
**(Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and Bankruptcy Code sections 544(b) and 550(a))**

60.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

61.     The Debtor did not receive reasonably equivalent value in exchange for the Curiosity Prepetition Transfers.

62.     At the time of the Curiosity Prepetition Transfers, the Debtor was insolvent or the Debtor became insolvent as a result of the Curiosity Prepetition Transfers.

63.     At the time of the Curiosity Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction which any property remaining with the Debtor was an unreasonably small amount of capital.

64.     At the time of the Curiosity Prepetition Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts that would be beyond his ability to pay as such debt matured.

65.     The Curiosity Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and section 544(b) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## FIFTH CLAIM

**(As to Dark Shadows)**
**Claim to Avoid and Recover Actual Fraudulent Transfers Pursuant to**
**Bankruptcy Code sections 548(a)(1)(A) and 550(a))**

66.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

67.     The Dark Shadows Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

68.     The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Dark Shadows Prepetition Transfers is shown by, among other things:

a.     The Dark Shadows Prepetition Transfers were effectuated using an alter-ego shell company;

b.     The Dark Shadows Prepetition Transfers were concealed from the Debtor's creditors;

c.     The Dark Shadows Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.     The Dark Shadows Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.     The Dark Shadows Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

17

f.      At the time of the Dark Shadows Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.      At the time of the Dark Shadows Prepetition Transfers, the Debtor was insolvent or undercapitalized.

69.     The Dark Shadows Prepetition Transfers are avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## SIXTH CLAIM

**(As to Dark Shadows)**
**(Claim to Avoid and Recover Actual Fraudulent Transfers pursuant to N.Y. Debt. & Cred. Law sections 273, 274, and 276, and Bankruptcy Code sections 544(b) and 550(a))**

70.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

71.     The Dark Shadows Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

72.     The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Dark Shadows Prepetition Transfers is shown by, among other things:

a.      The Dark Shadows Prepetition Transfers were effectuated using an alter-ego shell company;

b.      The Dark Shadows Prepetition Transfers were concealed from the Debtor's creditors;

c.      The Dark Shadows Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.      The Dark Shadows Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.      The Dark Shadows Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.      At the time of the Dark Shadows Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.      At the time of the Dark Shadows Prepetition Transfers, the Debtor was insolvent or undercapitalized.

73.     The Dark Shadows Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(1), 274, and 276, and section 544(b) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code.

## SEVENTH CLAIM

### (As to Dark Shadows)
### (Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(B) and 550(a))

74.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

75.     The Debtor received less than a reasonably equivalent value in exchange for the Dark Shadows Prepetition Transfers.

76.     At the time of the Dark Shadows Prepetition Transfers, the Debtor was insolvent or became insolvent as a result of the Dark Shadows Prepetition Transfers.

77.    At the time of the Dark Shadows Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small amount of capital.

78.    At the time of the Dark Shadows Prepetition Transfers, the Debtor intended to incur or believed he would incur, debts that would be beyond his ability to pay as such debts matured.

79.    The Dark Shadows Prepetition Transfers constitute fraudulent transfers and are avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## EIGHTH CLAIM

### (As to Dark Shadows)
### (Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and Bankruptcy Code sections 544(b) and 550(a))

80.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

81.    The Debtor did not receive reasonably equivalent value in exchange for the Dark Shadows Prepetition Transfers.

82.    At the time of the Dark Shadows Prepetition Transfers, the Debtor was insolvent or the Debtor became insolvent as a result of the Dark Shadows Prepetition Transfers.

83.    At the time of the Dark Shadows Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction which any property remaining with the Debtor was an unreasonably small amount of capital.

84.    At the time of the Dark Shadows Prepetition Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts that would be beyond his ability to pay as such debt matured.

85.     The Dark Shadows Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and section 544(b) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## NINTH CLAIM FOR RELIEF

**(As to Flying Colours)**
**(Claim to Avoid and Recover Actual Fraudulent Transfers Pursuant to**
**Bankruptcy Code sections 548(a)(1)(A) and 550(a))**

86.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

87.     The Flying Colours Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

88.     The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Flying Colours Prepetition Transfers is shown by, among other things:

a.     The Flying Colours Prepetition Transfers were effectuated using an alter-ego shell company;

b.     The Flying Colours Prepetition Transfers were concealed from the Debtor's creditors;

c.     The Flying Colours Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.     The Flying Colours Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

21

e.      The Flying Colours Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.      At the time of the Flying Colours Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.      At the time of the Flying Colours Prepetition Transfers, the Debtor was insolvent or undercapitalized.

89.      The Flying Colours Prepetition Transfers are avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## **TENTH CLAIM**

### **(As to Flying Colours)**
**(Claim to Avoid and Recover Actual Fraudulent Transfers pursuant to N.Y. Debt. & Cred. Law sections 273, 274, and 276, and Bankruptcy Code sections 544(b) and 550(a))**

90.      The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

91.      The Flying Colours Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

92.      The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Flying Colours Prepetition Transfers is shown by, among other things:

a.      The Flying Colours Prepetition Transfers were effectuated using an alter-ego shell company;

b.      The Flying Colours Prepetition Transfers were concealed from the Debtor's creditors;

c.      The Flying Colours Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.      The Flying Colours Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.      The Flying Colours Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.      At the time of the Flying Colours Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.      At the time of the Flying Colours Prepetition Transfers, the Debtor was insolvent or undercapitalized.

93.     The Flying Colours Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(1), 274, and 276, and section 544(b) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code.

### ELEVENTH CLAIM

**(As to Flying Colours)**
**(Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(B) and 550(a))**

94.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

95.     The Debtor received less than a reasonably equivalent value in exchange for the Flying Colours Prepetition Transfers.

23

96.     At the time of the Flying Colours Prepetition Transfers, the Debtor was insolvent or became insolvent as a result of the Flying Colours Prepetition Transfers.

97.     At the time of the Flying Colours Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small amount of capital.

98.     At the time of the Flying Colours Prepetition Transfers, the Debtor intended to incur or believed he would incur, debts that would be beyond his ability to pay as such debts matured.

99.     The Flying Colours Prepetition Transfers constitute fraudulent transfers and are avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## TWELFTH CLAIM

### (As to Flying Colours)
### (Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and Bankruptcy Code sections 544(b) and 550(a))

100.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

101.    The Debtor did not receive reasonably equivalent value in exchange for the Flying Colours Prepetition Transfers.

102.    At the time of the Flying Colours Prepetition Transfers, the Debtor was insolvent or the Debtor became insolvent as a result of the Flying Colours Prepetition Transfers.

103.    At the time of the Flying Colours Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction which any property remaining with the Debtor was an unreasonably small amount of capital.

104.    At the time of the Flying Colours Prepetition Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts that would be beyond his ability to pay as such debt matured.

105.    The Flying Colours Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and section 544(b) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## THIRTEENTH CLAIM

### (As to River Valley)
### (Claim to Avoid and Recover Actual Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(A) and 550(a))

106.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

107.    The River Valley Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

108.    The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the River Valley Prepetition Transfers is shown by, among other things:

    a.    The River Valley Prepetition Transfers were effectuated using an alter-ego shell company;

    b.    The River Valley Prepetition Transfers were concealed from the Debtor's creditors;

    c.    The River Valley Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.      The River Valley Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.      The River Valley Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.      At the time of the River Valley Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.      At the time of the River Valley Prepetition Transfers, the Debtor was insolvent or undercapitalized.

109.    The River Valley Prepetition Transfers are avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

**<u>FOURTEENTH CLAIM</u>**

**(As to River Valley)**
**(Claim to Avoid and Recover Actual Fraudulent Transfers pursuant to N.Y. Debt. & Cred. Law sections 273, 274, and 276, and Bankruptcy Code sections 544(b) and 550(a))**

110.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

111.    The River Valley Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

112.    The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the River Valley Prepetition Transfers is shown by, among other things:

a.      The River Valley Prepetition Transfers were effectuated using an alter-ego shell company;

b.      The River Valley Prepetition Transfers were concealed from the Debtor's creditors;

c.      The River Valley Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.      The River Valley Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.      The River Valley Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.      At the time of the River Valley Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.      At the time of the River Valley Prepetition Transfers, the Debtor was insolvent or undercapitalized.

113.    The River Valley Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(1), 274, and 276, and section 544(b) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code.

### FIFTEENTH CLAIM

**(As to River Valley)**
**(Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(B) and 550(a))**

114.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

115.    The Debtor received less than a reasonably equivalent value in exchange for the River Valley Prepetition Transfers.

116.    At the time of the River Valley Prepetition Transfers, the Debtor was insolvent or became insolvent as a result of the River Valley Prepetition Transfers.

117.    At the time of the River Valley Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small amount of capital.

118.    At the time of the River Valley Prepetition Transfers, the Debtor intended to incur or believed he would incur, debts that would be beyond his ability to pay as such debts matured.

119.    The River Valley Prepetition Transfers constitute fraudulent transfers and are avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## SIXTEENTH CLAIM

**(As to River Valley)**
**(Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and Bankruptcy Code sections 544(b) and 550(a))**

120.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

121.    The Debtor did not receive reasonably equivalent value in exchange for the River Valley Prepetition Transfers.

122.    At the time of the River Valley Prepetition Transfers, the Debtor was insolvent or the Debtor became insolvent as a result of the River Valley Prepetition Transfers.

28

123.    At the time of the River Valley Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction which any property remaining with the Debtor was an unreasonably small amount of capital.

124.    At the time of the River Valley Prepetition Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts that would be beyond his ability to pay as such debt matured.

125.    The River Valley Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and section 544(b) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## SEVENTEENTH CLAIM

### (As to River Valley)
### (Claim to Avoid and Recover Unauthorized Postpetition Transfers pursuant to Bankruptcy Code sections 549 and 550(a))

126.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

127.    The River Valley Postpetition Transfers were made to River Valley by the Debtor through his alter-ego shell companies.

128.    The River Valley Postpetition Transfers occurred after the Petition Date.

129.    The River Valley Postpetition Transfers were not authorized by the Bankruptcy Court or by the Bankruptcy Code.

130.    The River Valley Postpetition Transfers constituted the unauthorized transfer of property of the Debtor's chapter 11 estate.

131.    The River Valley Postpetition Transfers are avoidable pursuant to section 549(a) of the Bankruptcy Code.

132.     Pursuant to section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover the River Valley Postpetition Transfers, or the value thereof, from the River Valley plus interest thereon to the date of payment and the costs of this action.

**EIGHTEENTH CLAIM**

**(As to Supreme)**
**(Claim to Avoid and Recover Actual Fraudulent Transfers Pursuant to**
**Bankruptcy Code sections 548(a)(1)(A) and 550(a))**

133.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

134.     The Supreme Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

135.     The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Supreme Prepetition Transfers is shown by, among other things:

      a.     The Supreme Prepetition Transfers were effectuated using an alter-ego shell company;

      b.     The Supreme Prepetition Transfers were concealed from the Debtor's creditors;

      c.     The Supreme Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

      d.     The Supreme Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.     The Supreme Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.     At the time of the Supreme Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.     At the time of the Supreme Prepetition Transfers, the Debtor was insolvent or undercapitalized.

136.     The Supreme Prepetition Transfers are avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## NINETEENTH CLAIM

**(As to Supreme)**
**(Claim to Avoid and Recover Actual Fraudulent Transfers pursuant to N.Y. Debt. & Cred. Law sections 273, 274, and 276, and Bankruptcy Code sections 544(b) and 550(a))**

137.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

138.     The Supreme Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

139.     The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Supreme Prepetition Transfers is shown by, among other things:

a.     The Supreme Prepetition Transfers were effectuated using an alter-ego shell company;

b.     The Supreme Prepetition Transfers were concealed from the Debtor's creditors;

c.      The Supreme Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.      The Supreme Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.      The Supreme Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.      At the time of the Supreme Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.      At the time of the Supreme Prepetition Transfers, the Debtor was insolvent or undercapitalized.

140.    The Supreme Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(1), 274, and 276, and section 544(b) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code.

### TWENTIETH CLAIM

**(As to Supreme)**
**(Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(B) and 550(a))**

141.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

142.    The Debtor received less than a reasonably equivalent value in exchange for the Supreme Prepetition Transfers.

143.     At the time of the Supreme Prepetition Transfers, the Debtor was insolvent or became insolvent as a result of the Supreme Prepetition Transfers.

144.     At the time of the Supreme Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small amount of capital.

145.     At the time of the Supreme Prepetition Transfers, the Debtor intended to incur or believed he would incur, debts that would be beyond his ability to pay as such debts matured.

146.     The Supreme Prepetition Transfers constitute fraudulent transfers and are avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## TWENTY-FIRST CLAIM

**(As to Supreme)**
**(Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and Bankruptcy Code sections 544(b) and 550(a))**

147.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

148.     The Debtor did not receive reasonably equivalent value in exchange for the Supreme Prepetition Transfers.

149.     At the time of the Supreme Prepetition Transfers, the Debtor was insolvent or the Debtor became insolvent as a result of the Supreme Prepetition Transfers.

150.     At the time of the Supreme Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction which any property remaining with the Debtor was an unreasonably small amount of capital.

151.     At the time of the Supreme Prepetition Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts that would be beyond his ability to pay as such debt matured.

152.     The Supreme Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and section 544(b) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## TWENTY-SECOND CLAIM

**(As to Supreme)**
**(Claim to Avoid and Recover Unauthorized Postpetition Transfers pursuant to**
**Bankruptcy Code sections 549 and 550(a))**

153.      The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

154.     The Supreme Postpetition Transfers were made to Supreme by the Debtor through his alter-ego shell companies.

155.     The Supreme Postpetition Transfers occurred after the Petition Date.

156.     The Supreme Postpetition Transfers were not authorized by the Bankruptcy Court or by the Bankruptcy Code.

157.     The Supreme Postpetition Transfers constituted the unauthorized transfer of property of the Debtor's chapter 11 estate.

158.     The Supreme Postpetition Transfers are avoidable pursuant to section 549(a) of the Bankruptcy Code.

159.     Pursuant to section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover the Supreme Postpetition Transfers, or the value thereof, from Supreme plus interest thereon to the date of payment and the costs of this action.

**TWENTY-THIRD CLAIM**

**(As to Top California)**
**(Claim to Avoid and Recover Actual Fraudulent Transfers Pursuant to**
**Bankruptcy Code sections 548(a)(1)(A) and 550(a))**

160.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

161.    The Top California Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

162.    The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Top California Prepetition Transfers is shown by, among other things:

      a.    The Top California Prepetition Transfers were effectuated using an alter-ego shell company;

      b.    The Top California Prepetition Transfers were concealed from the Debtor's creditors;

      c.    The Top California Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

      d.    The Top California Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

      e.    The Top California Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

35

f.    At the time of the Top California Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.    At the time of the Top California Prepetition Transfers, the Debtor was insolvent or undercapitalized.

163.    The Top California Prepetition Transfers are avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

### TWENTY-FOURTH CLAIM

**(As to Top California)**
**(Claim to Avoid and Recover Actual Fraudulent Transfers pursuant to N.Y. Debt. & Cred. Law sections 273, 274, and 276, and Bankruptcy Code sections 544(b) and 550(a))**

164.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

165.    The Top California Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

166.    The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Top California Prepetition Transfers is shown by, among other things:

a.    The Top California Prepetition Transfers were effectuated using an alter-ego shell company;

b.    The Top California Prepetition Transfers were concealed from the Debtor's creditors;

c.    The Top California Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.      The Top California Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.      The Top California Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.      At the time of the Top California Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.      At the time of the Top California Prepetition Transfers, the Debtor was insolvent or undercapitalized.

167.    The Top California Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(1), 274, and 276, and section 544(b) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code.

## TWENTY-FIFTH CLAIM

### (As to Top California)
### (Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(B) and 550(a))

168.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

169.    The Debtor received less than a reasonably equivalent value in exchange for the Top California Prepetition Transfers.

170.    At the time of the Top California Prepetition Transfers, the Debtor was insolvent or became insolvent as a result of the Top California Prepetition Transfers.

37

171.    At the time of the Top California Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small amount of capital.

172.    At the time of the Top California Prepetition Transfers, the Debtor intended to incur or believed he would incur, debts that would be beyond his ability to pay as such debts matured.

173.    The Top California Prepetition Transfers constitute fraudulent transfers and are avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## TWENTY-SIXTH CLAIM

### (As to Top California)
### (Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and Bankruptcy Code sections 544(b) and 550(a))

174.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

175.    The Debtor did not receive reasonably equivalent value in exchange for the Top California Prepetition Transfers.

176.    At the time of the Top California Prepetition Transfers, the Debtor was insolvent or the Debtor became insolvent as a result of the Top California Prepetition Transfers.

177.    At the time of the Top California Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction which any property remaining with the Debtor was an unreasonably small amount of capital.

178.    At the time of the Top California Prepetition Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts that would be beyond his ability to pay as such debt matured.

38

179.    The Top California Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and section 544(b) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

### TWENTY-SEVENTH CLAIM

**(As to Top California)**
**(Claim to Avoid and Recover Unauthorized Postpetition Transfers pursuant to Bankruptcy Code sections 549 and 550(a))**

180.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

181.    The Top California Postpetition Transfers were made to Top California by the Debtor through his alter-ego shell companies.

182.    The Top California Postpetition Transfers occurred after the Petition Date.

183.    The Top California Postpetition Transfers were not authorized by the Bankruptcy Court or by the Bankruptcy Code.

184.    The Top California Postpetition Transfers constituted the unauthorized transfer of property of the Debtor's chapter 11 estate.

185.    The Top California Postpetition Transfers are avoidable pursuant to section 549(a) of the Bankruptcy Code.

186.    Pursuant to section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover the Top California Postpetition Transfers, or the value thereof, from Top California plus interest thereon to the date of payment and the costs of this action.

### TWENTY-EIGHTH CLAIM

**(As to Tut)**
**(Claim to Avoid and Recover Actual Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(A) and 550(a))**

39

187.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

188.     The Tut Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

189.     The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Tut Prepetition Transfers is shown by, among other things:

a.     The Tut Prepetition Transfers were effectuated using an alter-ego shell company;

b.     The Tut Prepetition Transfers were concealed from the Debtor's creditors;

c.     The Tut Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.     The Tut Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.     The Tut Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.     At the time of the Tut Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.     At the time of the Tut Prepetition Transfers, the Debtor was insolvent or undercapitalized.

190.    The Tut Prepetition Transfers are avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

## TWENTY-NINTH CLAIM

### (As to Tut)
**(Claim to Avoid and Recover Actual Fraudulent Transfers pursuant to N.Y. Debt. & Cred. Law sections 273, 274, and 276, and Bankruptcy Code sections 544(b) and 550(a))**

191.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

192.    The Tut Prepetition Transfers were made by the Debtor, through his alter egos, with the actual intent to hinder, delay and/or defraud his creditors.

193.    The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Tut Prepetition Transfers is shown by, among other things:

a.    The Tut Prepetition Transfers were effectuated using an alter-ego shell company;

b.    The Tut Prepetition Transfers were concealed from the Debtor's creditors;

c.    The Tut Prepetition Transfers were effectuated as part of the Debtor's "shell game" with the aid of the Debtor's family members and other lieutenants and subordinates that he controlled in an effort to conceal and shield assets;

d.    The Tut Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

e.     The Tut Prepetition Transfers furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors;

f.     At the time of the Tut Prepetition Transfers, the Debtor was being sued, including by PAX in the PAX Case; and

g.     At the time of the Tut Prepetition Transfers, the Debtor was insolvent or undercapitalized.

194.     The Tut Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(1), 274, and 276, and section 544(b) of the Bankruptcy Code and recoverable pursuant to section 550(a) of the Bankruptcy Code.

## THIRTIETH CLAIM

### (As Tut)
### (Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(B) and 550(a))

195.     The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

196.     The Debtor received less than a reasonably equivalent value in exchange for the Tut Prepetition Transfers.

197.     At the time of the Tut Prepetition Transfers, the Debtor was insolvent or became insolvent as a result of the Tut Prepetition Transfers.

198.     At the time of the Tut Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small amount of capital.

199.    At the time of the Tut Prepetition Transfers, the Debtor intended to incur or believed he would incur, debts that would be beyond his ability to pay as such debts matured.

200.    The Tut Prepetition Transfers constitute fraudulent transfers and are avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

### THIRTY-FIRST CLAIM

**(As to Tut)**
**(Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and Bankruptcy Code sections 544(b) and 550(a))**

201.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

202.    The Debtor did not receive reasonably equivalent value in exchange for the Tut Prepetition Transfers.

203.    At the time of the Tut Prepetition Transfers, the Debtor was insolvent or the Debtor became insolvent as a result of the Tut Prepetition Transfers.

204.    At the time of the Tut Prepetition Transfers, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction which any property remaining with the Debtor was an unreasonably small amount of capital.

205.    At the time of the Tut Prepetition Transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts that would be beyond his ability to pay as such debt matured.

206.    The Tut Prepetition Transfers are avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and section 544(b) of the Bankruptcy Code and are recoverable pursuant to section 550(a) of the Bankruptcy Code.

43

### THIRTY-SECOND CLAIM

**(As to Tut)**
**(Claim to Avoid and Recover Unauthorized Postpetition Transfers pursuant to Bankruptcy Code sections 549 and 550(a))**

207.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

208.    The Tut Postpetition Transfers were made to Tut by the Debtor through his alter-ego shell companies.

209.    The Tut Postpetition Transfers occurred after the Petition Date.

210.    The Tut Postpetition Transfers were not authorized by the Bankruptcy Court or by the Bankruptcy Code.

211.    The Tut Postpetition Transfers constituted the unauthorized transfer of property of the Debtor's chapter 11 estate.

212.    The Tut Postpetition Transfers are avoidable pursuant to section 549(a) of the Bankruptcy Code.

213.    Pursuant to section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover the Tut Postpetition Transfers, or the value thereof, from Tut plus interest thereon to the date of payment and the costs of this action.

### THIRTY-THIRD CLAIM

**(As to Wang's Realty)**
**(Claim to Avoid and Recover Unauthorized Postpetition Transfers pursuant to Bankruptcy Code sections 549 and 550(a))**

214.    The Trustee repeats and realleges the allegations contained in paragraphs 1-45 as if fully set forth herein.

215.    The Wang's Realty Postpetition Transfer was made to Wang's Realty by the Debtor through his alter-ego shell companies.

216.    The Wang's Realty Postpetition Transfer occurred after the Petition Date.

217.    The Wang's Realty Postpetition Transfer was not authorized by the Bankruptcy Court or by the Bankruptcy Code.

218.    The Wang's Realty Postpetition Transfer constituted the unauthorized transfer of property of the Debtor's chapter 11 estate.

219.    The Wang's Realty Postpetition Transfer is avoidable pursuant to section 549(a) of the Bankruptcy Code.

220.    Pursuant to section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover the Wang's Realty Postpetition Transfers, or the value thereof, from Wang's Realty plus interest thereon to the date of payment and the costs of this action.

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK.]*

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that judgment be entered as follows:

1.     On the First Claim, (a) an order declaring that the Curiosity Prepetition Transfers in an amount not less than $180,900.00 are avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code; (b) an order directing that the Curiosity Prepetition Transfers be set aside; and (c) recovery of the Curiosity Prepetition Transfers, or the value thereof at the Trustee's option, from Curiosity for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

2.     On the Second Claim, (a) an order declaring that the Curiosity Prepetition Transfers in an amount not less than $180,900.00 are avoided pursuant to section 544(b) of the Bankruptcy Code and N.Y. Debt & Cred. Law sections 273(a)(1), 274, and 276, and with respect to transfers prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Prepetition Transfers be set aside; and (c) recovery of the Curiosity Prepetition Transfers, or the value thereof at the Trustee's option, from Curiosity for the benefit of the Debtor's estate pursuant to N.Y. Debt. & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

3.     On the Third Claim, (a) an order declaring that the Curiosity Prepetition Transfers in an amount not less than $180,900.00 are avoided pursuant to section 548(a)(1)(B) of the Bankruptcy Code; (b) an order directing that the Curiosity Prepetition Transfers be set aside; and (c) recovery of the Curiosity Prepetition Transfers, or the value thereof at the Trustee's option, from Curiosity for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

4.    On the Fourth Claim, (a) an order declaring that (a) the Curiosity Prepetition Transfers in an amount not less than $180,900.00 are avoided pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276, and with respect to claims prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Curiosity Prepetition Transfers be set aside; and (c) recovery of the Curiosity Prepetition Transfers, or the value thereof at the Trustee's option, from Curiosity for the benefit of the Debtor's estate pursuant to N.Y. Debt & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

5.    On the Fifth Claim, (a) an order declaring that the Dark Shadows Prepetition Transfers in an amount not less than $500,000.00 are avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code; (b) an order directing that the Dark Shadows Prepetition Transfers be set aside; and (c) recovery of the Dark Shadows Prepetition Transfers, or the value thereof at the Trustee's option, from Dark Shadows for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

6.    On the Sixth Claim, (a) an order declaring that the Dark Shadows Prepetition Transfers in an amount not less than $500,000.00 are avoided pursuant to section 544(b) of the Bankruptcy Code and N.Y. Debt & Cred. Law sections 273(a)(1), 274, and 276, and with respect to transfers prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Dark Shadows Prepetition Transfers be set aside; and (c) recovery of the Dark Shadows Prepetition Transfers, or the value thereof at the Trustee's option, from Dark Shadows for the benefit of the Debtor's estate pursuant to N.Y. Debt. & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

7.    On the Seventh Claim, (a) an order declaring that the Dark Shadows Prepetition Transfers in an amount not less than $500,000.00 are avoided pursuant to section 548(a)(1)(B) of

47

the Bankruptcy Code; (b) an order directing that the Dark Shadows Prepetition Transfers be set aside; and (c) recovery of the Dark Shadows Prepetition Transfers, or the value thereof at the Trustee's option, from Dark Shadows for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

8.      On the Eighth Claim, (a) an order declaring that the Dark Shadows Prepetition Transfers in an amount not less than $500,000.00 are avoided pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276, and with respect to claims prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Dark Shadows Prepetition Transfers be set aside; and (c) recovery of the Dark Shadows Prepetition Transfers, or the value thereof at the Trustee's option, from Dark Shadows for the benefit of the Debtor's estate pursuant to N.Y. Debt & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

9.      On the Ninth Claim, (a) an order declaring that the Flying Colours Prepetition Transfers in an amount not less than $703,147.15 are avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code; (b) an order directing that the Flying Colours Prepetition Transfers be set aside; and (c) recovery of the Flying Colours Prepetition Transfers, or the value thereof at the Trustee's option, from Flying Colours for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

10.     On the Tenth Claim, (a) an order declaring that the Flying Colours Prepetition Transfers in an amount not less than $703,147.15 are avoided pursuant to section 544(b) of the Bankruptcy Code and N.Y. Debt & Cred. Law sections 273(a)(1), 274, and 276, and with respect to transfers prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Flying Colours Prepetition Transfers be set aside; and (c) recovery of the Flying Colours Prepetition Transfers, or the value thereof at the Trustee's option, from

Flying Colours for the benefit of the Debtor's estate pursuant to N.Y. Debt. & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

11.    On the Eleventh Claim, (a) an order declaring that the Flying Colours Prepetition Transfers in an amount not less than $703,147.15 are avoided pursuant to section 548(a)(1)(B) of the Bankruptcy Code; (b) an order directing that the Flying Colours Prepetition Transfers be set aside; and (c) recovery of the Flying Colours, or the value thereof at the Trustee's option, from Flying Colours for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

12.    On the Twelfth Claim, (a) an order declaring that the Flying Colours Prepetition Transfers in an amount not less than $703,147.15 are avoided pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276, and with respect to claims prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Flying Colours Prepetition Transfers be set aside; and (c) recovery of the Flying Colours Prepetition Transfers, or the value thereof at the Trustee's option, from Flying Colours for the benefit of the Debtor's estate pursuant to N.Y. Debt & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

13.    On the Thirteenth Claim, (a) an order declaring that the River Valley  Prepetition Transfers in an amount not less than $45,000.00 are avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code; (b) an order directing that the River Valley  Prepetition Transfers be set aside; and (c) recovery of the River Valley  Prepetition Transfers, or the value thereof at the Trustee's option, from River Valley for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

14.    On the Fourteenth Claim, (a) an order declaring that the River Valley Prepetition Transfers in an amount not less than $45,000.00 are avoided pursuant to section 544(b) of the

49

Bankruptcy Code and N.Y. Debt & Cred. Law sections 273(a)(1), 274, and 276, and with respect to transfers prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the River Valley Prepetition Transfers be set aside; and (c) recovery of the River Valley Prepetition Transfers, or the value thereof at the Trustee's option, from River Valley for the benefit of the Debtor's estate pursuant to N.Y. Debt. & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

15.     On the Fifteenth Claim, (a) an order declaring that the River Valley  Prepetition Transfers in an amount not less than $45,000.00 are avoided pursuant to section 548(a)(1)(B) of the Bankruptcy Code; (b) an order directing that the River Valley  Prepetition Transfers be set aside; and (c) recovery of the River Valley  Prepetition Transfers, or the value thereof at the Trustee's option, from River Valley for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

16.     On the Sixteenth Claim, (a) an order declaring that the River Valley Prepetition Transfers in an amount not less than $45,000.00 are avoided pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276, and with respect to claims prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the River Valley Prepetition Transfers be set aside; and (c) recovery of the River Valley Prepetition Transfers, or the value thereof at the Trustee's option, from River Valley for the benefit of the Debtor's estate pursuant to N.Y. Debt & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

17.     On the Seventeenth Claim, (a) an order declaring that the River Valley  Postpetition Transfers in an amount not less than $405,271.64 are avoided pursuant to section 549 of the Bankruptcy Code; and (b) an order directing that the River Valley Postpetition Transfers be set aside; and (c) recovery of the River Valley Postpetition Transfers, or the value thereof at the

50

Trustee's option, from River Valley for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

18.    On the Eighteenth Claim, (a) an order declaring that the Supreme Prepetition Transfers in an amount not less than $105,000.00 are avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code; (b) an order directing that the Supreme Prepetition Transfers be set aside; and (c) recovery of the Supreme Prepetition Transfers, or the value thereof at the Trustee's option, from Supreme for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

19.    On the Nineteenth Claim, (a) an order declaring that the Supreme Prepetition Transfers in an amount not less than $105,000.00 are avoided pursuant to section 544(b) of the Bankruptcy Code and N.Y. Debt & Cred. Law sections 273(a)(1), 274, and 276, and with respect to transfers prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Supreme Prepetition Transfers be set aside; and (c) recovery of the Supreme Prepetition Transfers, or the value thereof at the Trustee's option, from Supreme for the benefit of the Debtor's estate pursuant to N.Y. Debt. & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

20.    On the Twentieth Claim, (a) an order declaring that the Supreme Prepetition Transfers in an amount not less than $105,000.00 are avoided pursuant to section 548(a)(1)(B) of the Bankruptcy Code; (b) an order directing that the Supreme Prepetition Transfers be set aside; and (c) recovery of the Supreme Prepetition Transfers, or the value thereof at the Trustee's option, from Supreme for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

21.     On the Twenty-First Claim, (a) an order declaring that the Supreme Prepetition Transfers in an amount not less than $105,000.00 are avoided pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276, and with respect to claims prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Supreme Prepetition Transfers be set aside; and (c) recovery of the Supreme Prepetition Transfers, or the value thereof at the Trustee's option, from Supreme for the benefit of the Debtor's estate pursuant to N.Y. Debt & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

22.     On the Twenty-Second Claim, (a) an order declaring that the Supreme Postpetition Transfers in an amount not less than $45,000.00 are avoided pursuant to section 549 of the Bankruptcy Code; and (b) an order directing that the Supreme Postpetition Transfers be set aside; and (c) recovery of the Supreme Postpetition Transfers, or the value thereof at the Trustee's option, from Supreme for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

23.     On the Twenty-Third Claim, (a) an order declaring that the Top California Prepetition Transfers in an amount not less than $60,000.00 are avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code; (b) an order directing that the Top California Prepetition Transfers be set aside; and (c) recovery of the Top California Prepetition Transfers, or the value thereof at the Trustee's option, from Top California  for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

24.     On the Twenty-Fourth Claim, (a) an order declaring that the Top California Prepetition Transfers in an amount not less than $60,000.00 are avoided pursuant to section 544(b) of the Bankruptcy Code and N.Y. Debt & Cred. Law sections 273(a)(1), 274, and 276, and with respect to transfers prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276

and 278; (b) an order directing that the Top California Prepetition Transfers be set aside; and (c) recovery of the Top California Prepetition Transfers, or the value thereof at the Trustee's option, from Top California for the benefit of the Debtor's estate pursuant to N.Y. Debt. & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

25.     On the Twenty-Fifth Claim, (a) an order declaring that the Top California Prepetition Transfers in an amount not less than $60,000.00 are avoided pursuant to section 548(a)(1)(B) of the Bankruptcy Code; (b) an order directing that the Top California Prepetition Transfers be set aside; and (c) recovery of the Top California Prepetition Transfers, or the value thereof at the Trustee's option, from Top California  for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

26.     On the Twenty-Sixth Claim, (a) an order declaring that the Top California Prepetition Transfers in an amount not less than $60,000.00 are avoided pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276, and with respect to claims prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Top California Prepetition Transfers be set aside; and (c) recovery of the Top California Prepetition Transfers, or the value thereof at the Trustee's option, from Top California for the benefit of the Debtor's estate pursuant to N.Y. Debt & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

27.     On the Twenty-Seventh Claim, (a) an order declaring that the Top California Postpetition Transfers in an amount not less than $130,000.00 are avoided pursuant to section 549 of the Bankruptcy Code; and (b) an order directing that the Top California Postpetition Transfers be set aside; and (c) recovery of the Top California Postpetition Transfers, or the value thereof at

the Trustee's option, from Top California for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

28.    On the Twenty-Eighth Claim, (a) an order declaring that the Tut Prepetition Transfers in an amount not less than $646,500.00 are avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code; (b) an order directing that the Tut  Prepetition Transfers be set aside; and (c) recovery of the Tut Prepetition Transfers, or the value thereof at the Trustee's option, from Tut for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

29.    On the Twenty-Ninth Claim, (a) an order declaring that the Tut Prepetition Transfers in an amount not less than $646,500.00 are avoided pursuant to section 544(b) of the Bankruptcy Code and N.Y. Debt & Cred. Law sections 273(a)(1), 274, and 276, and with respect to transfers prior to April 4, 2020, N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278; (b) an order directing that the Tut Prepetition Transfers be set aside; and (c) recovery of the Tut Prepetition Transfers, or the value thereof at the Trustee's option, from Tut for the benefit of the Debtor's estate pursuant to N.Y. Debt. & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

30.    On the Thirtieth Claim, (a) an order declaring that the Tut Prepetition Transfers in an amount not less than $646,500.00 are avoided pursuant to section 548(a)(1)(B) of the Bankruptcy Code; (b) an order directing that the Tut Prepetition Transfers be set aside; and (c) recovery of the Tut Prepetition Transfers, or the value thereof at the Trustee's option, from Tut for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

31.    On the Thirty-First Claim, (a) an order declaring that the Tut Prepetition Transfers in an amount not less than $646,500.00 are avoided pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276, and with respect to claims prior to April 4, 2020, N.Y. Debt. & Cred. Law

sections 273, 273a, 275, 276 and 278; (b) an order directing that the Tut Prepetition Transfers be set aside; and (c) recovery of the Tut Prepetition Transfers, or the value thereof at the Trustee's option, from Tut for the benefit of the Debtor's estate pursuant to N.Y. Debt & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

32.    On the Thirty-Second Claim, (a) an order declaring that the Tut Postpetition Transfers in an amount not less than $689,970.83 are avoided pursuant to section 549 of the Bankruptcy Code; and (b) an order directing that the Tut Postpetition Transfers be set aside; and (c) recovery of the Tut Postpetition Transfers, or the value thereof at the Trustee's option, from Tut for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

33.    On the Thirty-Third Claim, (a) an order declaring that the Wang's Realty Postpetition Transfers in an amount not less than $1,000,000.00 are avoided pursuant to section 549 of the Bankruptcy Code; and (b) an order directing that the Wang's Realty Postpetition Transfers be set aside; and (c) recovery of the Wang's Realty Postpetition Transfers, or the value thereof at the Trustee's option, from Wang's Realty for the benefit of the Debtor's estate pursuant to section 550(a)(1) of the Bankruptcy Code;

34.    Awarding the Trustee pre-judgment interest at the maximum legal rate from the date of the filing of this Complaint to the date of judgment herein; and

35.    Such other and further relief as the Court may deem just, proper, or equitable under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

Dated:  February 15, 2024          LUC A. DESPINS
        New Haven, CT           CHAPTER 11 TRUSTEE

                            By: /s/   Douglas Skalka
                              Douglas S. Skalka (ct00616)
                              Patrick R. Linsey (ct29437)
                              NEUBERT, PEPE & MONTEITH, P.C.
                              195 Church Street, 13th Floor
                              New Haven, Connecticut 06510
                              (203) 781-2847
                              dskalka@npmlaw.com
                              plinsey@npmlaw.com
                              *Counsel for the Chapter 11 Trustee*

## SCHEDULE 1

**FILED UNDER SEAL**

## SCHEDULE 2

**FILED UNDER SEAL**

## **SCHEDULE 3**

**FILED UNDER SEAL**

## <u>SCHEDULE 4A</u>

**FILED UNDER SEAL**

## <u>SCHEDULE 4B</u>

**FILED UNDER SEAL**

## SCHEDULE 5A

**FILED UNDER SEAL**

## SCHEDULE 5B

**FILED UNDER SEAL**

## SCHEDULE 6A

**FILED UNDER SEAL**

## **SCHEDULE 6B**

**FILED UNDER SEAL**

## **SCHEDULE 7A**

**FILED UNDER SEAL**

## **SCHEDULE 7B**

**FILED UNDER SEAL**

## **SCHEDULE 13**

**FILED UNDER SEAL**