B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Luc A. Despins, Chapter 11 Trustee | DEFENDANTS<br>See Schedule 1 |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Paul Hastings LLP, 200 Park Avenue<br>New York, NY 10166, 212-318-6000 | ATTORNEYS (If Known)<br>See Schedule 2 |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☑ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☑ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Declaratory Judgment pursuant to Bankruptcy Code sections 541, 542, and 544 that certain Defendants are the Debtor's alter ego and ordering turnover of their assets to Trustee; Declaratory Judgment pursuant to Bankruptcy Code sections 541, 542, and 544 that Debtor is equitable owner of certain Defendants and/or their assets and ordering turnover of ownership of those entities and their assets to Trustee.

---

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☑ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☑ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☑ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought
Declaratory relief regarding alter ego and equitable ownership

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Ho Wan Kwok, et al. | BANKRUPTCY CASE NO.<br>22-50073 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Connecticut | DIVISION OFFICE<br>Bridgeport | NAME OF JUDGE<br>Julie A. Manning |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Douglass E. Barron | | |
| DATE<br>February 15, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Douglass E. Barron | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## SCHEDULE 1

ACA Capital Group Ltd.,

Alfa Global Ventures Limited,

Alfonso Global Ventures Limited,

Anton Development Limited,

Bravo Luck Limited,

Celestial Tide Limited,

China Golden Spring Group (Hong Kong) Ltd.,

Eastern Profit Corporation Limited,

Freedom Media Ventures Limited,

G Club International Limited,

G Club Operations LLC,

G Fashion (CA),

G Fashion Hold Co A Limited,

G Fashion Hold Co B Limited,

G Fashion International Limited,

GFashion Media Group Inc.,

G Music LLC,

GF IP, LLC,

GF Italy, LLC,

GFNY, Inc.,

Hamilton Capital Holding Limited,

Hamilton Investment Management Limited,

Hamilton Opportunity Fund SPC,

Haoran He,

Himalaya Currency Clearing Pty Ltd.,

Himalaya International Clearing Limited,

Himalaya International Financial Group Limited,

Himalaya International Payments Limited,

Himalaya International Reserves Limited,

Jovial Century International Limited,

K Legacy Ltd., Karin Maistrello,

Leading Shine Limited,

Major Lead International Limited,

Mei Guo,

Next Tycoon Investments Limited,

Qiang Guo,

Rule of Law Foundation III, Inc.,

Rule of Law Society IV, Inc.,

Saraca Media Group, Inc.,

Seven Mission Group LLC,

William Je,

Wise Creation International Limited

SCHEDULE 2

**Bravo Luck Limited**

**Joanna J. Cline**
Troutman Pepper Hamilton Sanders LLP
Hercules Plaza
1313 N. Market Street
Suite 5100
Wilmington, DE 19899
302-777-6500
215-981-4750 (fax)
joanna.cline@troutman.com

**Francis J. Lawall**
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square
18th & Arch Street
Philidelphia, PA 19103-2799
(215) 981-4000
(215) 981-4750 (fax)
francis.lawall@troutman.com

**David M.S. Shaiken**
Shipman, Shaiken & Schwefel, LLC
433 South Main Street
Suite 319
West Hartford, CT 06110
860-606-1703
866-431-3248 (fax)
david@shipmanlawct.com

**G Club Operations, LLC**

**Carolina A Fornos**
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019
212-858-1000
212-858-1500 (fax)
carolina.fornos@pillsburylaw.com

**Jeffrey M. Sklarz**
Green & Sklarz LLC
One Audubon Street
3rd Floor
New Haven, CT 06511
203-285-8545
203-823-4546 (fax)
jsklarz@gs-lawfirm.com

**GFNY, Inc. and G Music LLC**

**Howard J. Steinberg**
Greenberg Traurig LLP
1840 Century Park East
Suite 1900
Los Angeles, CA  90067
310-586-7702
steinbergh@gtlaw.com

**Nathan A. Haynes**
Greenberg Traurig LLP
One Vanderbilt Avenue
New York, NY  10017
212-801-2137
haynesn@gtlaw.com

**Himalaya International Financial Group Limited**

**Marc Da Costa**
Berkeley Rowe Limited
64 North Row
Mayfair
London, W1k 7DA United Kingdom

**Mei Guo and Anton Development Limited**

**Daniel D. Barnes**
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, NJ 07052
9733251500
dbarnes@csglaw.com

**Patricia B. Bergamasco**
Chiesa Shahinian & Giantomasi PC
105 Eisenhower Parkway
Roseland, NJ 07068
973-325-1500
973-530-2316 (fax)
Pbergamasco@csglaw.com

**Sam Della Fera, Jr**
Chiesa Shahinian & Giantomasi PC
105 Eisenhower Parkway
Roseland, NJ 07068
973-530-2076
sdellafera@csglaw.com

**Melissa I Falk Wernick**
Chiesa Shahinian & Giantomasi PC
105 Eisenhower Parkway
Roseland, NJ 07068
973-530-2157
973-530-2357 (fax)
mwernick@csglaw.com

**Lee Vartan**
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, NJ 07052
973-530-2107
973-530-2307 (fax)
lvartan@csglaw.com

**Stephen M. Kindseth**
Zeisler & Zeisler
10 Middle Street
15th Floor
Bridgeport, CT 06604
(203) 368-4234
203-367-9678 (fax)
skindseth@zeislaw.com

**James M. Moriarty**
Zeisler & Zeisler, P.C.
10 Middle Street
Bridgeport, CT 06604
203-368-4234

203-549-0907 (fax)
jmoriarty@zeislaw.com

**John L. Cesaroni**
Zeisler & Zeisler PC
10 Middle Street
15th Floor
Bridgeport, CT 06604
203-368-4234
203-367-9678 (fax)
jcesaroni@zeislaw.com

**Aaron Romney**
Zeisler & Zeisler PC
10 Middle Street
15th Floor
Bridgeport, CT 06604
203-368-4234
203-367-9678 (fax)
aromney@zeislaw.com

**Rule of Law Foundation III, Inc. & Rule of Law Society IV, Inc.**

**Douglas M. Evans**
Shapiro, Dorry, & Masterson LLC
71 Raymond Road
West Hartford, CT 06107
860-590-7578
860-540-1265 (fax)
devans@sdmlawgroup.com

**Richard Signorelli**
richardsignorelli@gmail.com

**Bryan Ha**
bhanyc@gmail.com

**William Je**

**James Ramsden KC**
Astraea Group Ltd.
7 Down Street
London, W1J 7AJ United Kingdom
0208-092-8411

james.ramsdenkc@astraea-group.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------------------------ x
                                                :
In re:                                      :  Chapter 11
                                                :
HO WAN KWOK, *et al.*,[1]                        :  Case No. 22-50073 (JAM)
                                                :
                      Debtors.         :  (Jointly Administered)
                                                :
------------------------------------------------------------------------ :
                                                :
LUC A. DESPINS, CHAPTER 11         :
TRUSTEE,                                 :
                                              :  Adv. Proceeding No. [_____]
                      Plaintiff,       :
v.                                        :
                                              :
ACA CAPITAL GROUP LTD.,            :
ALFA GLOBAL VENTURES LIMITED,     :
ALFONSO GLOBAL VENTURES LIMITED,  :
ANTON DEVELOPMENT LIMITED,      :
BRAVO LUCK LIMITED, CELESTIAL TIDE LIMITED,  :
CHINA GOLDEN SPRING GROUP (HONG KONG) LTD.,:
EASTERN PROFIT CORPORATION LIMITED,  :
FREEDOM MEDIA VENTURES LIMITED,    :
G CLUB INTERNATIONAL LIMITED,      :
G CLUB OPERATIONS LLC, G FASHION (CA),  :
G FASHION HOLD CO A LIMITED,      :
G FASHION HOLD CO B LIMITED, G FASHION  :
INTERNATIONAL LIMITED,          :
GFASHION MEDIA GROUP INC., G MUSIC LLC,  :
GF IP, LLC, GF ITALY, LLC, GFNY, INC.,    :
HAMILTON CAPITAL HOLDING LIMITED,   :
HAMILTON INVESTMENT MANAGEMENT LIMITED,  :
HAMILTON OPPORTUNITY FUND SPC, HAORAN HE, :
HIMALAYA CURRENCY CLEARING PTY LTD.,  :
HIMALAYA INTERNATIONAL CLEARING LIMITED,  :

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

HIMALAYA INTERNATIONAL FINANCIAL GROUP    :
LIMITED, HIMALAYA INTERNATIONAL PAYMENTS    :
LIMITED, HIMALAYA INTERNATIONAL RESERVES    :
LIMITED,    :
JOVIAL CENTURY INTERNATIONAL LIMITED,    :
K LEGACY LTD., KARIN MAISTRELLO,    :
LEADING SHINE LIMITED, MAJOR LEAD    :
INTERNATIONAL LIMITED, MEI GUO,    :
NEXT TYCOON INVESTMENTS LIMITED,    :
QIANG GUO, RULE OF LAW FOUNDATION III, INC.,    :
RULE OF LAW SOCIETY IV, INC., SARACA MEDIA    :
GROUP, INC., SEVEN MISSION GROUP LLC,    :
WILLIAM JE, WISE CREATION INTERNATIONAL    :
LIMITED,    :
                                                                                  :
                            Defendants.    :
------------------------------------------------------------------------ x

**COMPLAINT OF CHAPTER 11 TRUSTEE FOR ESTATE OF HO WAN KWOK,
PURSUANT TO BANKRUPTCY CODE SECTIONS 541, 542, AND 544, SEEKING
(I) DECLARATORY JUDGMENT THAT CERTAIN ENTITIES ARE ALTER EGOS OF
DEBTOR AND (II) RELATED RELIEF**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor" or "Kwok"), files this

adversary complaint (the "Complaint") against defendants: ACA Capital Group Ltd., Alfa

Global Ventures Limited, Alfonso Global Ventures Limited, Anton Development Limited, Bravo

Luck Limited, Celestial Tide Limited, China Golden Spring Group (Hong Kong) Ltd., Eastern

Profit Corporation Limited, Freedom Media Ventures Limited, G Club International Limited, G

Club Operations LLC, G Fashion (CA), G Fashion Hold Co A Limited, G Fashion Hold Co B

Limited, G Fashion International Limited, GFashion Media Group Inc., G Music LLC, GF IP,

LLC, GF Italy, LLC, GFNY, Inc., Hamilton Capital Holding Limited, Hamilton Investment

Management Limited, Hamilton Opportunity Fund SPC, Haoran He, Himalaya Currency

Clearing Pty Ltd., Himalaya International Clearing Limited, Himalaya International Financial

Group Limited, Himalaya International Payments Limited, Himalaya International Reserves

2

Limited, Jovial Century International Limited, K Legacy Ltd., Karin Maistrello, Leading Shine Limited, Major Lead International Limited, Mei Guo, Next Tycoon Investments Limited, Qiang Guo, Rule of Law Foundation III, Inc., Rule of Law Society IV, Inc., Saraca Media Group, Inc., Seven Mission Group LLC, Kin Ming Je (a/k/a William Je, a/k/a Yu Jianming a/k/a W. Je) ("William Je"), and Wise Creation International Limited (collectively, the "Defendants").  In support of this Complaint, the Trustee states as follows:

## NATURE OF ACTION

1.      This complaint, like those that have proceeded it, sets forth further details of the Debtor's scheme of using shell companies, nominally owned by family members or business subordinates, but that in reality are his alter egos and equitably or beneficially owned by him, to launder money, conceal his business dealings, and hide his valuable assets from creditors.

2.      The Trustee has already commenced litigation that remains pending or in which the Trustee has prevailed asserting alter ego and equitable ownership claims (or similar claims under applicable law) against certain of the Debtor's shell companies, including claims against: (i) HK International Funds Investments (USA) Limited ("HK USA"); (ii) Greenwich Land LLC ("Greenwich Land"); (iii) Whitecroft Shore Limited ("Whitecroft"); (iv) HCHK Technologies, Inc. ("HCHK Technologies"), HCHK Property Management, Inc. ("HCHK Property"), and Lexington Property and Staffing, Inc. ("Lexington Property" and together with HCHK Technologies and HCHK Property, the "HCHK Entities"); (v) Taurus Fund, LLC ("Taurus Fund"); (vi) Golden Spring (New York) Ltd. ("Golden Spring"); (vii) Lamp Capital LLC ("Lamp Capital"); (viii) Hudson Diamond NY LLC ("Hudson Diamond NY"); and (ix) Leading Shine NY Ltd. ("Leading Shine NY").  The facts and machinations demonstrated in those actions are in many ways doppelgangers for the allegations set forth herein.

3

3.      As explained in those actions, the Debtor uses his network of shell companies to hide the assets the Debtor uses to fund his lavish lifestyle.  These assets largely come from the Debtor's fraudulent enterprise, as will be set forth in detail in the Trustee's forthcoming complaint seeking damages for violations of the Racketeering Influenced Corrupt Organizations Act and conspiracy to violate the Racketeering Influenced Corrupt Organizations Act (the "RICO Complaint").[2]

4.      The Debtor operates his network of shell companies through loyal subordinates comprised of family members and friends, counsel, employees, or New Federal State of China/Himalaya Global Alliance leaders.  The Debtor's son and daughter, his money manager William Je, and his assistant Yvette Wang, play key reoccurring roles, as does the team of employees that worked for the Debtor in New York at 162 E. 64th Street and 3 Columbus Circle (the "New York Team") under the supervision of Yvette Wang.  Members of the New York Team have included, among others, Debtor employees such as Max Krasner, Anthony DiBattista, and Alex Hadjicharalambous.  These individuals served as nominal officers, directors, bank account signatories, and key employees of numerous of the Debtor's shell companies, ensuring that these shell companies acted at the Debtor's will.

5.      The entities with respect to which this Complaint seeks alter ego and equitable ownership rulings (or similar relief under applicable law) (the "Debtor Entities") are:

 a.  **G Entities,** comprising Saraca, the G Club Entities, the G Fashion Entities, G Music, Freedom Media Ventures, Wise Creation, and the Himalaya Exchange Entities, each as defined below (collectively, the "**G Entities**").  The G Entities are all linked to the Debtor's public-facing alleged businesses that he promoted to his online audience and that he used to solicit funds.

  i.  **Saraca Media Group, Inc.** ("**Saraca**"), a purported media company and parent company of GTV Media Group, Inc. ("GTV") organized in

---

[2]    The allegations set forth in the RICO Complaint are incorporated by reference herein.

Delaware, through which, among other things, the Debtor orchestrated the
solicitation of a purported private placement of GTV shares during April-
June of 2020.  The nominal ultimate owner of Saraca is the Debtor's son,
Qiang Guo.

ii.    **G Club International Limited ("G Club International")**, an entity
organized in the BVI, and **G Club Operations LLC ("G Club
Operations")**, an entity organized in Puerto Rico (collectively, the "**G Club
Entities**"), that the Debtor used to operate "G Club," his purported
membership organization, from which he directed funds to be used for
lavish personal purchases.

iii.    **G Fashion International Limited, G Fashion Hold Co A Limited**, **and G
Fashion Hold Co B Limited,** entities organized in the BVI, **G Fashion
(CA),** an entity organized in California, and **GF IP, LLC, GF Italy, LLC,
GFashion Media Group Inc.,** and **GFNY, Inc.**, entities organized in
Delaware (collectively, the "**G Fashion Entities**"), that the Debtor used to
operate his "GFashion" clothing brand.

iv.    **G Music LLC ("G Music")**, an entity organized in Delaware and used by
the Debtor to, among other things, operate his music business.

v.    **Freedom Media Ventures Limited ("Freedom Media Ventures")**, an
entity organized in the BVI used by the Debtor to, among other things,
███████████████████████████      ████████████████████████

vi.    **Wise Creation International Limited ("Wise Creation")**, an entity
organized in the BVI the Debtor uses ███████████
████████████████████████████      ██████████████

vii.    **Himalaya International Financial Group Limited, Himalaya
International Reserves Limited, Himalaya International Clearing
Limited**, and **Himalaya International Payments Limited**, entities
organized in the BVI, and **Himalaya Currency Clearing Pty Ltd.,** an
entity organized in Australia (collectively, the "**Himalaya Exchange
Entities**"), that the Debtor used to operate his purported cryptocurrency
business, the "Himalaya Exchange," which the Debtor used to, among other
things, fund the $37 million placed into escrow in connection with the return
of the Lady May to the United States.

b.    **Purported Non-Profits,** comprising Rule of Law Foundation III, Inc. ("Rule of
Law Foundation"), and Rule of Law Society IV, Inc. ("Rule of Law Society" and,
together with Rule of Law Foundation, the "**Rule of Law Entities**"), entities
organized in Delaware, nominally ultimately owned by Yvette Wang, the
Debtor's assistant, through her holding company Seven Mission Group LLC, and

used by the Debtor to obtain funding from his followers, to make payments to his own shell companies, and to fund protest activities on behalf of the Debtor.

c. **Funding Entities**, comprising ACA Capital Group and the Hamilton Entities, each as defined below (together, the "**Funding Entities**"). The Funding Entities are used by the Debtor to hold his funds, and deploy such funds at the Debtor's direction.

  i. **ACA Capital Group Ltd. ("ACA Capital Group**"), an entity organized in Hong Kong, that the Debtor used to, among other things, provide funding to his other shell entities, including Greenwich Land, Lamp Capital, Golden Spring, Saraca, Hudson Diamond NY, and Leading Shine NY, among others, as well as to fund legal and other expenses, including $9 million provided to Golden Spring in connection with the DIP financing proposed by the Debtor in March 2022.

  ii. **Hamilton Capital Holding Limited**, an entity organized in the United Kingdom, **Hamilton Investment Management Limited**, an entity organized in the BVI, and **Hamilton Opportunity Fund SPC** (including its segregated portfolios, "**Hamilton Opportunity Fund**"), an entity organized in the Cayman Islands, (collectively, the "**Hamilton Entities**"). ███████████
  ██████████████████████████████████████████████████
  ██████████████████████████████████████████████████
  ████████████████████████████████████████████

d. **Other Debtor Entities**, comprising K Legacy, Bravo Luck, China Golden Spring, Leading Shine BVI, Anton Development, Eastern Profit, Alfa Global, and Alfonso Global, each as defined below (together, the "**Other Debtor Entities**"). The Other Debtor Entities have been used by the Debtor to hold assets or move funds for the purpose of acquiring assets such as the Lady May, the Sherry Netherland Apartment, and the London Apartment (as defined below).

  i. **K Legacy Ltd. ("K Legacy**"), an entity organized in the BVI through which the Debtor holds Apartment 6 and Apartment G3 at 5 Princes Gate, London, United Kingdom SW7 1QJ (collectively, the "London Apartment"), which he purchased in 2016 for approximately £33 million. The nominal owner of K Legacy is the Debtor's son, Qiang Guo.

  ii. **Bravo Luck Limited ("Bravo Luck**"), an entity organized in the BVI that the Debtor used to, among other things, transfer funds for the Debtor to purchase his yacht, the Lady May, and his apartment at the Sherry Netherland Hotel (the "Sherry Netherland Apartment"), ████████████
  ██████████████████████████████████████████████████
  The purported nominal owner of Bravo Luck is the Debtor's son, Qiang Guo.

6

iii.    **China Golden Spring Group (Hong Kong) Ltd. ("China Golden Spring")**, an entity organized in Hong Kong and nominal parent company of Golden Spring. The nominal owner of China Golden Spring is the Debtor's son, Qiang Guo.

iv.    **Leading Shine Limited ("Leading Shine BVI")**, an entity organized in the BVI the Debtor used to hold title to his residence located on South Bay Road in Hong Kong, purchased, upon information and belief, in 2011 for HK$ 880 million. According to documents in the possession of the Trustee, the nominal owner of Leading Shine BVI is the Debtor's son, Qiang Guo.

v.    **Anton Development Limited ("Anton Development")**, an entity organized in Hong Kong and formerly used by the Debtor to, among other things, hold title to his private jet that is the subject of the Bombardier Adversary Proceeding (as defined below). Prior to Mei Guo's nominal ownership of Anton Development, Anton Development was nominally owned by Natasha Qu, the Debtor's assistant, and subsequently by Han Chunguang, the Debtor's household employee. The nominal owner of Anton Development is the Debtor's daughter, Mei Guo.

vi.    **Eastern Profit Corporation Limited ("Eastern Profit")**, an entity organized in Hong Kong and formerly used by the Debtor to, among other things, ████████████████████████████████████ ████████████████████████████████ The nominal owner of Eastern Profit is the Debtor's daughter, Mei Guo.

vii.    **Alfa Global Ventures Limited ("Alfa Global")**, a BVI entity, nominally owned by the Debtor's niece, Guo Lijie, and, subsequently, by the Debtor's translator, Karin Maistrello. ████████████████████████

viii.    **Alfonso Global Ventures Limited ("Alfonso Global")**, a BVI entity, nominally owned by an individual named Zhang Wei, the husband another of the Debtor's nieces, and, subsequently, by a Debtor-controlled BVI entity. ████████████████████████████

6.    Based on the facts set forth below, the Trustee seeks rulings pursuant to sections 541, 542, and 544 of the Bankruptcy Code declaring that each Debtor Entity is an alter ego of and equitably owned by the Debtor (or similar relief under applicable law).[3]

---

[3]    An organizational chart showing the Debtor Entities along with other Debtor-controlled entities that have been the subjects of other adversary proceedings is attached hereto as **Exhibit 1.**

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this adversary proceeding pursuant

to 28 U.S.C. §1334(b).

8.      This adversary proceeding has been referred to this Court pursuant to 28 U.S.C.

§157(a).  Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

9.      The Trustee is the chapter 11 trustee in the Chapter 11 Case pursuant to the

Court's order entered on July 8, 2022 [Main Case Docket No. 523]

10.     ACA Capital Group is a Hong Kong entity.

11.     Alfa Global is a BVI entity.

12.     Alfonso Global is a BVI entity.

13.     Anton Development is a Hong Kong entity.

14.     Bravo Luck is a BVI entity.

15.     Celestial Tide Limited is a BVI entity that is the nominal owner of ACA Capital

Group.

16.     China Golden Spring is a Hong Kong entity.

17.     Eastern Profit is a Hong Kong entity.

18.     Freedom Media Ventures is a BVI entity.

19.     G Club International is a BVI entity that is the sole nominal owner of G Club

Operations, a Puerto Rico entity.

20.     G Fashion (CA) is a California entity.

21.     G Fashion International Limited is a BVI entity that is the sole nominal owner of

GF IP LLC and GFNY, Inc.

8

22.    G Club Operations is a Puerto Rico entity.

23.    G Music is a Delaware entity.

24.    GF IP, LLC is a Delaware entity.

25.    GF Italy, LLC is a Delaware entity.

26.    GFashion Media Group Inc. is a Delaware entity.

27.    GFNY, Inc. is a Delaware entity that is the sole nominal owner of GF Italy LLC.

28.    Hamilton Capital Holding Limited is a United Kingdom entity.

29.    Hamilton Investment Management Limited is a BVI entity.

30.    Hamilton Opportunity Fund is a Cayman Islands entity.

31.    Haoran He is the nominal sole owner of Wise Creation and Freedom Media
Ventures.

32.    Himalaya Currency Clearing Pty Ltd is an Australian entity.

33.    Himalaya International Clearing Limited is a BVI entity.

34.    Himalaya International Financial Group Limited is a BVI entity.

35.    Himalaya International Payments Limited is a BVI entity.

36.    Himalaya International Reserves Limited is a BVI entity.

37.    Jovial Century International Limited is a BVI entity that is the nominal sole
owner of G Fashion International Limited, G Club International, G Music, G Fashion (CA), G
Fashion Hold Co A Limited, and G Fashion Hold Co. B Limited.

38.    K Legacy is a BVI entity that is the nominal owner of the Debtor's London
Apartment.

39.    Karin Maistrello formerly served as the Debtor's translator and is the nominal
sole owner of Alfa Global.

9

40.    Leading Shine BVI is a BVI entity.

41.    Major Lead International Limited is a BVI entity that is nominal owner of Himalaya International Financial Group Limited, Himalaya International Reserves Limited, Himalaya International Clearing Limited, Himalaya International Payments Limited, and Himalaya Currency Clearing Pty Ltd.

42.    Mei Guo is the Debtor's daughter and is the nominal owner of Anton Development and Eastern Profit.

43.    Next Tycoon Investments Limited is a BVI entity that is the nominal owner of Alfonso Global.

44.    Qiang Guo is the Debtor's son and is the nominal owner of K Legacy, Bravo Luck, China Golden Spring, and Leading Shine BVI.

45.    Rule of Law Foundation is a Delaware entity.

46.    Rule of Law Society is a Delaware entity.

47.    Saraca is a Delaware entity that is the nominal owner of GFashion Media Group, Inc.

48.    Seven Mission Group LLC is a Delaware entity that the nominal owner of Rule of Law Foundation, and Rule of Law Society.

49.    William Je is the nominal owner of Hamilton Capital Holding Limited, Hamilton Investment Management Limited, and Hamilton Opportunity Fund.

50.    Wise Creation is a BVI entity.

## **FACTS**

**I.      Background: Debtor's Prolific Use of Shell Companies**

51.      The Debtor is a prolific user of shell companies, nominally owned by family members or business subordinates, to shield his assets and activities from creditors.  The Debtor's "shell game" has allowed him to continue to deny ownership of assets, refuse to pay debts, and—until his arrest by the FBI—live a life of luxury.

52.      The Trustee has been steadily unraveling the Debtor's shell game, and the Trustee has already sought alter ego and equitable ownership rulings from this Court regarding multiple of the Debtor's shell companies.  The actions commenced by the Trustee in this regard either (i) remain pending or (ii) have resulted in rulings in the Trustee's favor.

### **A.      Court's Alter Ego and Ownership Rulings**

53.      This Court has already found that HK USA, Golden Spring, Lamp Capital, and Ace Decade Limited ("Ace Decade") are alter egos of, and/or equitably or beneficially owned by, the Debtor.

54.      These entities exhibit many of the same recurring fact patterns observable in the Debtor Entities subject to this Complaint: (a) nominal ownership of an entity by someone with a close relationship to the Debtor, such as a family member or assistant; (b) the lack of observance of corporate formalities including through the siphoning of assets for personal use; (c) the entity holding title to an asset beneficially owned by the Debtor; (d) the entity being formed at the direction of the Debtor; (e) the entity providing funding for the Debtor's expenses; (f) the entity being staffed by employees of the Debtor; (g) the entity sharing an office address with the Debtor and other entities associated with the Debtor; and (h) the entity having no independent business purpose (other than to own assets of the Debtor) or source of funds (other than the Debtor).

11

### i.    HK USA

55.    In March 2023, this Court found that HK USA,[4] nominally owned by the

Debtor's daughter, Mei Guo, held title to the Lady May yacht, which was beneficially owned by

the Debtor.[5]  Then, in May 2023, the Court held that HK USA was the Debtor's alter ego.[6]  The

Court based its alter ego ruling on, among other things: HK USA's lack of income or liquid

assets; HK USA's lack of observance of corporate formalities; HK USA's status as an

instrumentality of the Debtor whose only business purpose was the nominal ownership,

operation, and maintenance of assets the Debtor beneficially owned and controlled; and the

indicia of "injustice wrought by the corporate form" where a closely held corporation was

nominally owned by a family member of the person who beneficially owned and controlled the

corporation's assets.[7]

### ii.    Golden Spring

56.    In the Golden Spring Adversary Proceeding, the Trustee obtained alter ego and

equitable ownership rulings in his favor pursuant to the default judgment entered by the Court on

December 4, 2023.[8]  In his complaint in that action,[9] the Trustee alleged that Golden Spring,

---

[4]    HK USA was the subject of adversary proceeding number 22-05003 (the "HK USA Adversary Proceeding").
The Trustee's counterclaims filed in the HK USA Adversary Proceeding are incorporated by reference herein.

[5]    *Supplemental Memorandum of Decision in Support of Oral Ruling Granting Motion for Partial Summary
Judgment*, at 31 (Adv. Proc. No. 22-05003, Mar. 30, 2023) [Docket No. 177] ("[T]he issue of the Individual
Debtor's beneficial ownership and control of the Lady May is decisive as to the First Counterclaim and the
identical issue was necessarily decided by Justice Ostrager in the Final Contempt Decision, which found by
clear and convincing evidence that the Individual Debtor beneficially owned and controlled the Lady May").

[6]    *Memorandum of Decision and Order Granting Motion for Partial Summary Judgment on Second Counterclaim*,
at 35 (Adv. Proc. No. 22-05003, May 18, 2023) [Docket No. 221] ("HK USA is the alter ego of the Individual
Debtor.").

[7]    *Id*. at 23.

[8]    *Order Granting Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok For Entry of Default Judgment
Against Golden Spring (New York) Ltd And China Golden Spring Group (Hong Kong) Limited*, ¶¶ 3-4 (Adv.
Proc. No. 22-05018, Dec. 4, 2023) [Docket No. 35] ("At all times Golden Spring was an alter ego of the Debtor.
. .  The ownership interests in Golden Spring are property of the Debtor's chapter 11 estate and shall be turned
over and/or surrendered to the Trustee.").

[9]    The Trustee's complaint filed in the Golden Spring Adversary Proceeding is incorporated by reference herein.

nominally owned by the Debtor's son through China Golden Spring, was, among other things,

formed at the Debtor's direction, funded by the Debtor, controlled by the Debtor through his

advisors and employees, used by the Debtor to hold his assets and pay his expenses, and

managed and staffed by the Debtor's employees.  The Court's default judgment order ruled that

the well-pleaded allegations in the Trustee's complaint met the elements of the alter ego and

equitable ownership causes of action asserted by the Trustee.

### iii.    Lamp Capital

57.       In the Lamp Capital Adversary Proceeding, the Trustee obtained alter ego and

equitable ownership rulings in his favor pursuant to the default judgment entered by the Court on

February 1, 2024.[10]  In his complaint,[11] the Trustee alleged that Lamp Capital, nominally owned

by the Debtor's son through Infinity Treasury Management Inc., was, among other things,

formed by the Debtor through his counsel, managed by the Debtor through his agents, funded by

the Debtor, used by the Debtor to pay his expenses, and had the same address as the Debtor.  In

its memorandum of decision (the "Lamp Capital Decision"), the Court explained, among other

things, that:

> A reasonable factfinder could find on the basis of the allegations that the Individual
> Debtor dominated and controlled Lamp Capital, as evidenced by, e.g., the alleged facts
> that Lamp (a) was formed by the Individual Debtor; (b) provides funding for the
> Individual Debtor's expenses, including related to the filing of the Petition and to assets
> such the Lady May and the Apartment; (c) is staffed by employees of the Individual
> Debtor, including his employee Ms. Wang; (d) shares an office address with other entities
> associated with the Individual Debtor, including his alter egos Golden Spring and HK
> USA; and (e) has no independent business purpose or source of funds.

---

[10]    *See Default Judgment in Favor of Chapter 11 Trustee for Estate of Ho Wan Kwok on First and Second Claims
of his Complaint Against Lamp Capital LLC And Infinity Treasury Management Inc.* ¶¶ 2-3 (Adv. Proc. No. 23-
05023, Feb. 1, 2024) [Docket No. 66] ("[A]t all times Lamp Capital was an alter ego of the Debtor. . .  the
ownership interests in Lamp Capital are property of the Debtor's chapter 11 estate and shall be turned over
and/or surrendered to the Trustee.") (the "Lamp Capital Adversary Proceeding").

[11]    The Trustee's complaint filed in the Lamp Capital Adversary Proceeding is incorporated by reference herein.

13

A reasonable fact finder could also find on the basis of the allegations that Lamp Capital's corporate form caused fraud or similar injustice, as evidenced by, *e.g.*, the alleged facts that (f) Lamp Capital had no business purpose or existence other than pooling the Individual Debtor's liquid assets, which were siphoned to pay his expenses without consideration; and (g) its indirect, record owner was Mr. Guo, the Individual Debtor's son.

Therefore, a reasonable factfinder could determine both elements in favor of granting the Trustee his requested relief.

A reasonable factfinder could also conclude from the alleged facts that the Individual Debtor is the equitable owner of Lamp Capital and its assets. In this adversary proceeding, (1) the alleged indirect nominal owner of Lamp Capital is Mr. Guo, the Individual Debtor's son, (2) Lamp Capital is alleged to have received funds for no consideration, (3) the purpose of Lamp Capital is alleged to be the avoidance of the Individual Debtor's creditors, and (4) the Individual Debtor is alleged to dominate and control Lamp Capital, as discussed above. [12]

58.    The Court also explained that even if an entity like Lamp Capital had corporate officers and created corporate documents, the observance of corporate formalities could not in and of itself be dispositive in connection with an alter ego ruling because such a ruling requires examining non-dispositive factors that require a holistic analysis.[13] Further, the Court observed that siphoning funds from an entity for personal use *per se* disregards corporate formalities.[14]

#### iv.    Ace Decade

59.    The Court also ruled in November 2022 that Ace Decade was beneficially owned by the Debtor despite that entity's nominal owner at the time being Yvette Wang.[15] In January 2023, the Court ruled that Yvette Wang was only the nominee owner of Ace Decade and that the Debtor controlled and employed Yvette Wang.[16]

---

[12] *Memorandum of Decision and Order Granting Motion for Default Judgment and Denying Cross-Motion to set Aside Default*, at 31-32 (Adv. Proc. No. 23-05023, Feb. 1, 2024) [Docket No. 63] (internal citations omitted).
[13] *Id*. at 25.
[14] *Id*.
[15] *Order Regarding Partial Resolution of Trustee's Contempt Motion* ¶ 1 [Main Case Docket No. 1110].
[16] *See Order Granting Motion to Hold Debtor in Contempt of Corporate Governance Order* ("Corp. Governance Contempt Order"), ¶¶ 3-4 [Main Case Docket No. 1372]. The Trustee has since learned that Yvette Wang, while the Ace Decade proceedings were ongoing (but after the Court's November 2022 ruling that the Debtor exclusively beneficially owned and controlled Ace Decade), transferred the stock of Ace Decade that she

B.       **Pending Actions With Respect to Shell Companies**

60.      The Trustee has also commenced adversary proceedings seeking alter ego/equitable ownership rulings with respect to a number of other Debtor shell companies which remain pending.  The Trustee has made allegations regarding these shell companies, supported by voluminous evidence, that fit the same fact pattern underlying the Court's rulings described above and arising from the Debtor's pattern and practice of establishing shell companies nominally held by others to hide his assets from creditors.  Among other things these entities were all nominally owned by family members or employees of the Debtor, staffed by the Debtor's agents, funded by the Debtor, used by the Debtor to pay his expenses, shared an address with the Debtor, and held title to the Debtor's assets.

61.      The Trustee alleged that Greenwich Land,[17] though nominally owned by the Debtor's wife, was managed by the Debtor's employees, used the same address as other Debtor shell companies, had its transactions orchestrated and controlled by the Debtor, was funded by other Debtor shell companies, had its property used as the Debtor's residence, and paid the Debtor's expenses.  In the Greenwich Land Adversary Proceeding, the Trustee has sought alter ego and equitable ownership rulings against Greenwich Land, in connection with which the Court entered a prejudgment remedy and temporary restraining order against Greenwich Land and the Debtor's wife.[18]

---

nominally owned to an individual located in Switzerland name Rui Hao.  As alleged in the Trustee's complaint (the "Ace Decade Complaint") filed in Adv. Proc. No. 23-05028 (the "Ace Decade Adversary Proceeding"), incorporated by reference herein, Defendant Hao is the brother of Tian Hao, who is an officer of multiple entities controlled by the Debtor, including chief financial officer and director of G Fashion (CA) and chief executive officer of G Music.

[17]   Greenwich Land is the subject of Adversary Proceeding No. 23-05005 (the "Greenwich Land Adversary Proceeding").  The Trustee's complaint filed in the Greenwich Land Adversary Proceeding is incorporated by reference herein.

[18]   The Trustee has sought an alter ego judgment against Greenwich Land in the Greenwich Land Adversary Proceeding, in connection with which the Court entered a prejudgment remedy and temporary restraining order against Greenwich Land and the Debtor's wife.  *See Order Granting in Part Ex Parte Motion for Temporary*

62.     The Trustee alleged that Whitecroft,[19] though nominally owned by Mei Guo, used

an address used by the Debtor and other Debtor-affiliated individuals and entities, never had any

business other than holding title to the Debtor's Bombardier jet, and never had any material

assets other than the Bombardier jet, which was transferred to Whitecroft by its prior owner,

Anton Development (itself nominally owned by Mei Guo), for no consideration.  In the

Bombardier Adversary Proceeding the Trustee seeks, among other things, a ruling that

Whitecroft and nine other BVI entities[20] nominally owned by Mei Guo are in fact equitably

owned by the Debtor.

63.     Leading Shine NY was named as a defendant in the Lamp Capital Adversary

Proceeding.[21]  The Trustee alleged that Leading Shine NY, nominally owned by the Debtor's

daughter, was, among other things, managed by the Debtor through his agents, funded by the

Debtor, used by the Debtor to transfer money to other Debtor-controlled shell companies, used

by the Debtor to pay his expenses, and operated out of the same address used by other Debtor

shell companies.

64.     Hudson Diamond NY was named as a defendant in the Lamp Capital Adversary

Proceeding. The Trustee alleged that Hudson Diamond NY, nominally owned by the Debtor's

daughter through Hudson Diamond Holding LLC was, among other things, formed by the

---

*Restraining Order and Preliminary Injunction* (Adv. Proc. No. 23-05005, Mar. 28, 2023) [Docket No. 14];
*Order Granting Chapter 11 Trustee's Amended Application for Ex Parte Prejudgment Remedy* (Adv. Proc. No.
23-05005, Mar. 28, 2023) [Docket No. 15].  The Court heard summary judgment arguments in the Greenwich
Land Adversary Proceeding on January 9, 2024.

[19]   Whitecroft is the subject of Adversary Proceeding No. 23-05008 (the "Bombardier Adversary Proceeding").
The Trustee's complaint filed in the Bombardier Adversary Proceeding is incorporated by reference herein.
Summary judgment arguments in the Bombardier Adversary Proceeding took placed on February 5, 2024.

[20]   These entities are: Allied Capital Global Limited, Creative Apex Investments Limited, Crystal Breeze
Investments Limited, Elite Well Global Limited, Globalist International Limited, Infinite Increase Limited,
Infinitum Developments Limited, Noble Fame Global Limited, and Rosy Acme Ventures Limited.

[21]   In the Lamp Capital Adversary Proceeding, a default was entered with respect to Leading Shine NY on
December 14, 2023, and the parties have completed briefing in connection with Leading Shine NY's motion to
set aside the default.

Debtor through his counsel, managed by the Debtor through his agents, funded by the Debtor, used by the Debtor for his real estate transactions, used by the Debtor to transfer money to other Debtor-controlled shell companies and family members, and operated out of the same address used by other Debtor shell companies.[22]

65.    The Trustee alleged that the HCHK Entities[23] were staffed and nominally owned by the Debtor's employees,[24] were affiliates of Gettr USA, Inc., GTV, G Club, G Fashion, and G Music (which the Court had already found to be controlled by or to serve as business vehicles for the Debtor), paid the Debtor's expenses, and were funded by the Debtor.  In the HCHK Adversary Proceeding, the Trustee has sought alter ego and equitable ownership rulings with respect to the HCHK Entities, in connection with which the Court entered a temporary restraining order in June of 2023.[25]  An entry of default was issued on September 29, 2023, and on January 9, 2024, arguments were heard with respect to certain of the defendants' motion to set aside the default.

66.    The Trustee alleged that Taurus Fund[26] was managed by the Debtor's driver and bodyguard, had not followed corporate formalities, and held title to the Mahwah Mansion, which was purchased with money controlled by the Debtor and used by the Debtor as his residence.  In

---

22    The parties have completed briefing in connection with Hudson Diamond NY's motion to dismiss, and a hearing on the motion is scheduled to be held in March 2024.

23    The HCHK Entities are the subject of Adversary Proceeding No. 23-05013 (the "HCHK Adversary Proceeding"). The Trustee's complaint filed in the HCHK Adversary Proceeding is incorporated by reference herein.

24    Each of the HCHK Entities is nominally owned (a) 99.9999% by a British Virgin Islands ("BVI") entity nominally owned by the Debtor's personal assistant, Yvette Wang and (b) 0.0001% by the Debtor's employee Anthony DiBattista

25    *See Order Granting in Part Emergency Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction Order* (Adv. Proc. No. 23-05013, June 12, 2023) [Docket No. 18].

26    Taurus Fund, purportedly managed by the Debtor's bodyguard and driver, Scott Barnett, was used by the Debtor to hold title to the Mahwah Mansion, and is the subject of adversary proceeding 23-05017 (the "Mahwah Mansion Adversary Proceeding").  The Trustee's complaint filed in the Mahwah Mansion Adversary Proceeding is incorporated by reference herein.

the Mahwah Mansion Adversary Proceeding, the Trustee has sought alter ego and equitable

ownership rulings with respect to Taurus Fund, in connection with which the Court entered a

preliminary injunction order on August 24, 2023.[27]

### C. Scope of Debtor's Shell Game

67.    The Debtor has spent the last ten years creating shell companies to hide and move

his assets.  The Debtor moved those funds around the world by transferring them through

Defendants like Alfa Global, Alfonso Global, Eastern Profit, Anton Development, and Bravo

Luck, spending hundreds of millions of dollars on personal assets such as the Lady May, the

Sherry Netherland Apartment, and the London Apartment.

68.    The Trustee, in the forthcoming RICO Complaint, will allege with particularity

the Debtor's creation and management of a complex criminal enterprise to conspire and act with

(among others) the Debtor Entities and their nominal owners to intentionally (i) use these entities

as a means of engaging in criminal activity to enrich the Debtor and (ii) do so in a way as to hide

the Debtor's misbegotten assets from his creditors.  The Debtor's use of these shell companies to

be able to enact his scheme while concealing the badges of ownership and control of the entities

holding and managing his assets is a bedrock pillar of the Debtor's enterprise. The Debtor

Entities that are the subject of this complaint were established by the Debtor as part of a scheme

to avoid his obligations to creditors.

69.    According to the U.S. Government's indictment in connection with the Debtor's

arrest by the FBI on March 15, 2023, in the period between 2020 and 2023, the Debtor and his

co-defendants William Je and Yvette Wang "utilized more than approximately 500 accounts held

---

[27] *See Memorandum of Decision and Order Granting in Part Motion for Preliminary Injunction* (Adv. Proc. No. 23-05017, Aug. 24, 2023) [Docket No. 47].

in the names of *at least 80 different entities or individuals*" to launder fraud proceeds.[28]  The

U.S. Government's latest superseding indictment, dated January 3, 2024 (the "Superseding

Indictment") adds that "[h]undreds of millions of dollars of the fraudulent scheme's proceeds

were transferred, either directly or indirectly, to bank accounts in the United States, the Bahamas,

Switzerland, and the United Arab Emirates ("UAE"), among other places."[29]

70.    Like the RICO Complaint, the Superseding Indictment alleges, among other

things, that the Debtor and his co-defendants created and maintained a number of "interrelated

and overlapping entities" that formed the "Kwok Enterprise," which "obtained fraud proceeds,

laundered those proceeds, spent fraud proceeds on expensive and luxury items, vehicles, and

property for the benefit of KWOK and his family, used fraud proceeds to promote the Kwok

Enterprise, and used fraud proceeds to operate and manage the Kwok Enterprise."[30]  According

to the Superseding Indictment, the entities making up the Kwok Enterprise include, among

others, entities with respect to which the Trustee has previously sought (and in some cases

obtained) alter ego and equitable ownership rulings[31] as well as many of the Debtor Entities that

are the subject of this Complaint, as discussed further below.

71.    The Superseding Indictment also discusses the particular fraudulent schemes the

Debtor and his co-conspirators engaged in, and in which certain of the Debtor Entities that are

the subject of this Complaint were heavily involved.  These schemes included (i) the GTV

Private Placement (as defined below) undertaken between April and June of 2020; (ii) the Farm

---

[28]    *See Memorandum of Law of the United States of America in Opposition to Defendant Yanping Wang's Motion for Pretrial Release* (the "USAO Memorandum"), at 29, attached as Exhibit B in the *Reply of Chapter 11 Trustee to G Club Operations LLC's Supplemental Objection to Trustee's Motion to Compel and Request for Related Relief* (June 23, 2023) [Main Case Docket No. 1934].

[29]    Ex. 2, Superseding Indictment ¶ 4.

[30]    Ex. 2 ¶ 3.

[31]    *See id.* ¶ 3.a (listing Golden Spring, Greenwich Land, HCHK Property Management, Inc., HCHK Technologies, Inc., Hudson Diamond NY, Infinity Treasury Management, Lamp Capital, Leading Shine NY, Lexington Property and Staffing Inc., and Taurus Fund).

Loan Program (as defined in the Superseding Indictment), involving the solicitation of additional

funds in the form of purported loans provided by the Debtor's followers, supposedly in exchange

for GTV stock, to entities established by the leaders of organizations of the Debtor's supporters

known as "Himalaya Farms"; (iii) the sale of memberships in the Debtor's purported

membership club, G Club, again based on representations that the purchase of a G Club

membership would entitle the purchaser to stock in the Debtor's GTV or G Fashion Entities, and

(iv) the sale of purported Himalaya Coin and Himalaya Dollar cryptocurrency by the Himalaya

Exchange.

72.     In connection with each of these schemes, and as further discussed below, the

Debtor used his massive online platform and following to generate hundreds of millions of

dollars in funds from his followers.  The Debtor directed these funds to the Debtor Entities, and

the Debtor then spent these funds on numerous lavish personal expenses.

     **D.**    **Key Individuals**

73.     The Debtor operated his shell companies through a collection of family members,

employees, and loyal lieutenants who took instruction from the Debtor and acted as the Debtor's

agents on his behalf.  With regard to the Debtor Entities, these individuals acted at the direction

and behest of the Debtor, recognizing him as the head of the family, the "boss", the "principal,"

or as the head of the NFSC/Himalaya Global Alliance (members of which this Court found to be

personally loyal to the Debtor).  These individuals serve on the Debtor's behalf as, among other

things, nominal owners, authorized signatories, directors, officers, and key employees of his

various shell companies, and are discussed below in several categories.

       a.  **The Debtor's Children.**  The Debtor has a long running practice of putting shell
           companies under the names of his children.

    i.    **Mei Guo** is the Debtor's daughter.  Mei Guo has served the Debtor as nominal ultimate owner of numerous of his shell companies, as alleged herein and in prior complaints filed by the Trustee.  One of the entities nominally owned by Mei Guo was HK USA, which this Court found to be the Debtor's alter ego.  Upon information and belief, Mei Guo has never held gainful employment outside of the Debtor's shell companies and has no source of wealth other than the Debtor.  At the Debtor's deposition in March 2023, when asked whether all assets held in the name of Mei Guo were really assets of his estate, the Debtor asserted the Fifth Amendment.[32]

    ii.    **Qiang ("Mileson") Guo** is the Debtor's son.  During the time period relevant to this Complaint, Qiang Guo has resided in both the United Kingdom and the United States.  Qiang Guo has served the Debtor as nominal ultimate owner of numerous of his shell companies, as alleged herein and in prior complaints filed by the Trustee.  Upon information and belief, Qiang Guo has never held gainful employment outside of the Debtor's shell companies and has no source of wealth other than the Debtor. At the Debtor's deposition in March 2023, when asked whether all assets held in the name of Qiang Guo were really assets of his estate, the Debtor asserted the Fifth Amendment.[33]

b.  **Inner Circle**.  A small number of highly placed individuals are the Debtor's key agents in operating his shell companies.

    i.    **William Je** is the Debtor's agent, in particular with regards to the Debtor's funds, and is a co-defendant of the Debtor in his criminal case.  During the time period relevant to this Complaint, William Je resided primarily in the United Kingdom (though, upon information and belief, he travelled to the United States regularly), and he is now believed to be located in the UAE.  According to the U.S. Government, William Je is a "key money launderer" for the Debtor's enterprise.[34]  In addition:

- William Je has a long history of acting on the Debtor's behalf going back at least to the period prior to the Debtor's arrival in the United States. Upon information and belief, William Je acted as the Debtor's agent in connection with the Debtor's financial transactions at least as far back as 2014, when William Je held a position at Macquarie Capital Securities Limited in Hong Kong, if not earlier.  Mei Guo refers to William Je as "uncle William" and testified that he was a close family friend.[35]

---

[32]  *See* Ho Wan Kwok Dep. Tr., at 47:14-18, March 2, 2023 (the "Debtor's March Depo."), attached as Exhibit 13 to the adversary complaint in the Lamp Capital Adversary Proceeding.

[33]  *Id.* at 47:10-13.

[34]  *See* Ex. 2 ¶ 10.  *See generally* RICO Complaint.

[35]  Mei Guo Dep. Tr., at 188:8-19, Jan. 20, 2023, attached as Exhibit 8 to the adversary complaint in the Bombardier Adversary Proceeding.

- William Je has used the Debtor's addresses at 162 E. 64th Street and 20 South Bay Road, in Hong Kong, as his own address. Upon information and belief, William Je also shared offices with the Debtor and Natasha Qu at 49/F, Bank of China Tower, No. 2 Garden Road, in Hong Kong.

- William Je assisted the Debtor in 2018 in connection with looking for real estate in the United States to purchase for the Debtor's family.

- Counsel working for the Debtor that observed the relationship between the Debtor and William Je, understood that William Je worked for the Debtor.

- At the Debtor's deposition in March 2023, the Debtor was asked, among other things, whether: (i) William Je was the Debtor's agent in connection with his business dealings; (ii) any actions taken by William Je in connection with business dealings were taken at the Debtor's direction; (iii) with regard to any business dealings involving the Debtor and William Je, William Je was under the Debtor's control; (iv) any assets purportedly under the control of William Je were actually assets under the Debtor's control; and (v) any entities purportedly under the control of William Je were actually entities under the Debtor's control.[36] In response to each question, the Debtor asserted the Fifth Amendment. In May 2023, the Debtor again asserted the Fifth Amendment when asked in writing to state that he had control over William Je.[37]

- William Je assisted the Debtor in the transfer of $37 million to be placed in escrow in connection with the return of the Lady May to the United States, signing the purported loan agreement with HK USA on behalf of the purported lender, Himalaya International Financial Group Limited.

- In prior litigation in the Southern District of New York in front of Judge Liman related to the Debtor's Eastern Profit shell company, trial testimony was elicited in 2021 that the Debtor had described Mr. Je as "my money man."[38] At this trial, the Debtor also asserted the Fifth

---

[36] Debtor's March Depo. at 40-41.
[37] *Debtor's Sworn Declaration Regarding Responses to Particular Questions*, ¶ 50, dated May 11, 2023 (the "Responses to Certain Questions"), attached as Exhibit 1 to the adversary complaint in the HCHK Adversary Proceeding.
[38] *See* Trial Tr. at 774:24-775:1, *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL) (S.D.N.Y Apr. 22, 2021), ECF No. 368 ("Was he formally introduced to you? A. Yes. Mr. Guo introduced him to me that -- jokingly, that "He's my money man. Anything ask him about money."), attached as Exhibit 27 to the *Chapter 11 Trustee's Answer and Counterclaims* [Adv. Proc. No. 22-05003, Docket No. 36] (the "HK USA Counterclaims").

Amendment multiple times when questioned regarding William Je.[39] In his decision on the merits of the dispute, Judge Liman found, among other things, that a purported loan agreement between Eastern Profit and ACA Capital Group signed by William Je on behalf of ACA Capital Group, was, in fact, a gift.[40]

ii.   **Yvette Wang** is the Debtor's assistant and agent.  This Court has already ruled that "[t]he Debtor has control over Ms. Wang" and that he "has employed Yvette Wang for several years, and has directed her to take actions on his behalf . . . ."[41]  Ms. Wang has served the Debtor in numerous roles, including as an officer and authorized signatory of Golden Spring, Hudson Diamond Holding LLC, Hudson Diamond NY, Leading Shine NY, Saraca, GTV Media Group, Inc., Genever Holdings LLC, and G Club Operations.  Ms. Wang is a co-defendant of the Debtor in his criminal case. According to the U.S. Government, Ms. Wang played an "instrumental role" in the Debtor's fraud scheme as his "trusted chief of staff who is tasked with managing operations at even those entities with which she has no formal affiliation."[42]  When asked at his deposition whether Ms. Wang was his employee, the Debtor asserted his Fifth Amendment right against self-incrimination.[43]  In May 2023, the Debtor again asserted the Fifth Amendment when asked in writing to state that he had control over Yvette Wang.[44]

iii.   **Haoran He** is believed to be a purported real estate developer residing in the United Kingdom who serves the Debtor as nominal owner for numerous of the G Entities, as discussed herein.  Upon information and belief, Haoran He is a strawman of the Debtor who was selected by the Debtor to be the nominal owner of these entities precisely so as to avoid the regulatory and other scrutiny that would arise if the entities were placed in the name of the Debtor or one of his family members.  Upon information and belief, Haoran He acts at the direction of the Debtor, who communicates with Haoran He either directly or through his son and Yvette Wang.  Among other things:

---

[39]   *See id.* at 691:24-25 ("Q. Who is William Je? A. The Fifth Amendment."); *id.* at 692:24-693:1 (Q: "And [Mr. Je] sends money to places when you ask him to do so, doesn't he? A: The Fifth Amendment. I'm invoking the Fifth Amendment."); *id.* at 695:5-7 ("And you introduced William Je to close associates as your money man, haven't you? A. The Fifth Amendment.").

[40]   *See Eastern Profit Corp. Ltd. v. Strategic Vision US LLC,* No. 18-CV-2185 (LJL), 2021 WL 2554631, at *41 (S.D.N.Y. June 22, 2021) ("The source of the funds sent by ACA is unknown to the Court and was not the subject of testimony. But regardless of whether those funds are ultimately traceable to Guo as Strategic suggested or are independent from him, the Court finds that they were a gift on behalf of Eastern (and Guo) and not provided out of any obligation.").

[41]   Corp. Governance Contempt Order ¶ 4.

[42]   Letter, at 18, *United States v. Kwok,* No. 1:23-cr-00118-AT (S.D.N.Y. Mar. 29, 2023) [Docket No. 10] (the "Kwok Criminal Case Letter") attached as Exhibit 3 to the adversary complaint in the HCHK Adversary Proceeding.

[43]   Debtor's March Depo. at 33:11-13.

[44]   Responses to Certain Questions ¶ 46.

23

- Upon information and belief, Mr. He is a real estate developer with no history of involvement with the types of purported businesses engaged in by the G Entities of which he is the nominal owner—luxury membership clubs (the G Club Entities), fashion (the G Fashion Entities), or music (G Music).

- Upon information and belief, the Debtor, through his son, has supported Mr. He and his family financially on multiple occasions, including by paying the tuition for one or more of Mr. He's family members to study at a boarding school in Switzerland.



c. **Debtor's Assistants and Other Relatives.** This group includes the Debtor's household employee Han Chunguang, along with former assistants (individuals who once occupied a role similar to that of Yvette Wang), and certain of the Debtor's other relatives.

i. **Han ("Hank") Chunguang** is the Debtor's household employee and chef, as confirmed by recent testimony of the Debtor's wife. The Debtor has placed Han Chunguang in numerous positions within the Debtor's network of shell companies, including as the former nominal owner of Eastern Profit, Anton Development, and Rosy Acme Ventures Limited.[45] Among other roles, Han Chunguang has also served the Debtor as corporate officer and account signatory of Saraca and various BVI-registered entities that are the subjects of the Bombardier Adversary Proceeding. In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over Han Chunguang.[46]

ii. **Natasha Qu (Qu Guojiao)** was, through September 2017, an assistant of the Debtor identified by Hong Kong police as his "financial manageress."[47] ████████████████████████████████████ In May 2023, the Debtor again asserted

---

[45] Rosy Acme Ventures Limited is one of the BVI entities that is the subject of the Bombardier Adversary Proceeding.

[46] Responses to Certain Questions ¶ 22.

[47] *See* First Affirmation of Senior Inspector Chan Sze Wing (the "Wing Affirmation") ¶¶ 5, 10, 157, attached as Exhibit 1 to the adversary complaint in the Golden Spring Adversary Proceeding.

the Fifth Amendment when asked in writing to state that he had control over Natasha Qu.[48]

    iii.   **Guo Lijie** is the Debtor's niece, and served the Debtor as the nominal owner of Alfa Global, in which capacity she was, according to Hong Kong police, merely a "stooge[] for opening bank accounts and signing documents for [Alfa Global] at the request of [the Debtor]."[49]  In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over Guo Lijie.[50]

    iv.   **Zhang Wei** is the husband of another of the Debtor's nieces (Guo Lihong, not Guo Lijie discussed above).  Zhang Wei served the Debtor as the nominal owner of Alfonso Global, in which capacity he was, according to Hong Kong police, merely a "stooge[] for opening bank accounts and signing documents for [Alfonso Global] at the request of [the Debtor]."[51]  In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over Zhang Wei.[52]

  d.  **Debtor's General Counsel.**  These are a collection of attorneys who have played an outsized role in facilitating the Debtor's "shell game."  Most of them have represented the Debtor personally and have served as directors, officers, employees, and signatories of his various shell companies.

    i.   **Aaron Mitchell** is the Debtor's personal attorney and has represented (individually and through his law firm, Lawall & Mitchell LLC) numerous of the Debtor's shell companies, essentially acting as the in house general counsel for the Debtor's combined enterprise.  Mr. Mitchell has served the Debtor as a member of the board of directors of GTV prior to his resignation in April 2023.  Mr. Mitchell has been intimately involved in numerous of the Debtor's major activities and transactions, ██████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████. n addition, Mr. Mitchell has used the address of the Debtor and numerous of his shell companies at 162 E. 64th Street in New York as his law firm address.

    ii.   **Daniel Podhaskie** was formerly the Debtor's personal attorney, as well as general counsel to Golden Spring and corporate representative of Genever Holdings LLC and Genever Holdings Corporation.  In addition, Mr.

---

[48] Responses to Certain Questions ¶ 24.
[49] Wing Affirmation ¶ 49.
[50] Responses to Certain Questions ¶ 26.
[51] Wing Affirmation ¶ 49.
[52] Responses to Certain Questions ¶ 28.

Podhaskie served the Debtor in numerous other roles, including as officer and authorized signatory for Greenwich Land, Lamp Capital, Infinity Treasury Management Inc., Hudson Diamond Holdings LLC, and Hudson Diamond NY.  When the Debtor was asked at his deposition whether Mr. Podhaskie was his employee and agent, and whether all actions taken by Mr. Podhaskie relating to Golden Spring, Leading Shine NY, Saraca, Greenwich Land, and Rule of Law Society were taken at the Debtor's direction, the Debtor asserted the Fifth Amendment.

iii.    **Victor Cerda** was employed by the Debtor as his personal counsel and also advised the Debtor in connection with █████████████████████████ ████████████████████████████████████████████████████████████

iv.    **Yongbing Zhang** was employed by the Debtor as his personal counsel and also served the Debtor, as, among other things, a Director of Rule of Law Foundation.  Mr. Zhang was also offered employment as a senior attorney at G Club Operations.  Among other things, Mr. Zhang took a leading role in the protests against the Trustee that resulted in the Court issuing a preliminary injunction against the Debtor, including by personally protesting in front of the Trustee's home.  Mr. Zhang also was involved in filing complaints against the Trustee, Pacific Alliance Asia Opportunities Fund ("PAX"), and PAX's counsel in the District Court for the Southern District of New York that accused the Trustee, PAX, and PAX's counsel of being agents of the Chinese Communist Party, in connection with which Mr. Zhang was sanctioned under Rule 11 multiple times.  The Court has become particularly familiar with Mr. Zhang based on his role in the HCHK Adversary Proceeding, in which context the Court found, among other things, that Mr. Zhang was the "leader of the purported HCHK Creditors' Committee"[53] and that Mr. Zhang "is involved in filing frivolous lawsuits to harass the Trustee's involvement in this case for the perceived benefit of the Individual Debtor."[54]  In addition, upon information and belief, the Debtor arranged for Mr. Zhang to "win" a Lamborghini vehicle as part of a sweepstakes event designed to promote his businesses.

v.    **Manuel Martinez Anzaldua** served the Debtor as, among other things, General Counsel of HCHK Technologies, in which capacity he assisted the Debtor with respect to, among other things, the use of the G Entities█ ██████████████████████████████████████████████████████████ █████████████████████████████████████████████████ and retention of outside counsel to represent entities controlled by the Debtor. In addition, upon information and belief, Mr. Martinez held positions at

---

[53]    *See Memorandum of Decision and Order Denying Motion to Intervene and Motion to Clarify Temporary Restraining Order* ¶ 34, HCHK Adversary Proceeding [Docket No. 239].

[54]    *Id.* at 35.

other Debtor shell companies including Golden Spring, and served as
counsel to G Club International.

vi. **Fiona Yu**, an attorney based in Hong Kong, worked as the Debtor's
personal advisor, ███████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████ Ms. Yu also
submitted, as an "appointed person" of the Debtor, an affirmation in support
of his motion to dismiss the PAX litigation that was filed in the New York
State Court in 2017, and in which she submitted various "true and correct"
documents signed by the Debtor. Ms. Yu also assisted the Debtor with
matters related to the registration of his entities in the BVI, including by
certifying Mei Guo's identity cards in connection with due diligence forms
Mei Guo submitted related to BVI entities that are the subject of the
Bombardier Adversary Proceeding. Ms. Yu has also served the Debtor as,
among other things, corporate secretary and in house counsel of ACA
Capital Group. In May 2023, the Debtor asserted the Fifth Amendment
when asked in writing to state that he had control over Fiona Yu.[55]

e. **Debtor's New York Team**: These are individuals the Debtor employed in
multiple capacities at the Debtor's shell companies based in New York at 162 E.
64th Street and 3 Columbus Circle, where the Debtor kept his offices.

i. **Max Krasner** was employed by the Debtor at Golden Spring and the
HCHK Entities, and also served the Debtor in numerous other roles,
including as employee, officer and/or authorized signatory of Hudson
Diamond Holding LLC, Hudson Diamond NY, Infinity Treasury
Management Inc., and Rule of Law Foundation. Mr. Krasner has assisted
the Debtor, at the Debtor's behalf and at the Debtor's direction, with, among
other things, the purchase of the houses in Connecticut titled to Greenwich
Land, arrangements for the movement and maintenance of the Lady May,
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████ When asked at his deposition whether Max Krasner was his
employee and acted as his agent, the Debtor asserted the Fifth Amendment.
In May 2023, the Debtor asserted the Fifth Amendment when asked in
writing to state that he had control over Max Krasner.[56]

ii. **Anthony DiBattista** has, like Mr. Krasner, served in a variety of roles at
different Debtor-controlled entities. Mr. DiBattista has served the Debtor as

---

[55] Responses to Certain Questions ¶ 48.
[56] Responses to Certain Questions ¶ 36.

an employee of Golden Spring, minority owner and corporate officer of the HCHK Entities, and corporate officer, authorized signatory, and/or high level employee of GTV, GFashion Media Group Inc., and G Fashion (CA). When the Debtor was asked at his deposition whether Mr. DiBattista was his employee and agent, including his agent in connection with G Club, G Fashion, G Music, and Saraca, the Debtor asserted his Fifth Amendment right against self-incrimination.[57] ████████████████████████ ████████████████████████████████████████████ ██████████████████████████████

    iii.    **Alex Hadjicharalambous** served the Debtor as, among other things, Financial Controller of G Club Operations, as well as holding positions at HCHK and Golden Spring. ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████

    iv.    **Ross Heinemeyer** served the Debtor as, among other things, Director of Operations and Finance of each of the Rule of Law Entities, as well as in a finance position at G Club Operations. ████████████████████ ██████████████████████████    In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over Ross Heinemeyer.[58]

    v.    **Jessica Mastrogiovanni** served the Debtor in multiple roles including as general counsel of GTV and as corporate officer and authorized signatory of GTV and Saraca. She also served in an in house legal role with respect to G Club Operations and G Club International.

    vi.    **Melissa Mendez** served the Debtor in multiple roles including as Director of Operations of Golden Spring and as a Director of Rule of Law Foundation.

    vii.    **Karin Maistrello**, the Debtor's translator, served the Debtor in multiple roles, including as a director of ACA Capital Group and Rule of Law Society and director and nominal owner of Alfa Global. In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over Karin Maistrello.[59]

---

[57]  Debtor's March Depo. at 87:6-8 ("Q. Mr. Kwok, Anthony [DiBattista] is also an employee of yours, correct? A. The Fifth.").

[58]  Responses to Certain Questions ¶ 34.

[59]  Responses to Certain Questions ¶ 8.

viii.   **Jennifer Mercurio** served the Debtor in multiple roles, including as general counsel of Saraca and secretary, general counsel, and director of Rule of Law Society.  In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over Jennifer Mercurio.[60]

f.   **Other Agents of the Debtor Involved in Managing Debtor Entities:**

i.   **Leanne Li** served the Debtor as, among other things, ███████████████████████████████████ as well as president of GF Italy, LLC.  Leanne Li also assisted the Debtor in purchasing antiques for the Mahwah Mansion at the Debtor's direction.

ii.   **Tian Hao** served the Debtor as, among other things, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Rui Hao is a defendant in the complaint filed by the Trustee in Adversary Proceeding No. 23-05028 with respect to the unlawful transfer by Yvette Wang of her purported ownership interest in Ace Decade to Rui Hao on January 3, 2023.[61]

iii.   **Sarah Wei Lafrenz, Qidong Xia, Xuebing Wang, and Shuai Guo** have been at various times among the most prominent lieutenants of the Debtor in his New Federal State of China and Himalaya Global Alliance organizations as well as leaders of Himalaya Farm chapters through which, upon information and belief, they raised funds from the Debtor's supporters in connection with the GTV Private Placement, the Farm Loan Program, and the sale of G Club memberships and Himalaya Exchange purported cryptocurrencies.  These individuals have also played a prominent role in protests and litigation against the Trustee.

## II.   **Debtor Entities Are Alter Egos of and Equitably or Beneficially Owned by Debtor**

74.   As discussed further herein, each of the Debtor Entities are alter egos of and equitably or beneficially owned by the Debtor based on the Debtor's control and domination over these entities and their assets.  The Debtor Entities that are the subject of this Complaint exhibit many of the same characteristics that the Trustee has alleged with respect to the entities this Court has already ruled are alter egos of the Debtor (such as HK USA, Golden Spring, and

---

[60]   Responses to Certain Questions ¶ 18.
[61]   *See* Ace Decade Complaint in the Ace Decade Adversary Proceeding.

Lamp Capital) or those entities with respect to which the Trustee's allegations remain pending (such as Greenwich Land, the HCHK Entities, Leading Shine NY, and Hudson Diamond NY, among others).  For example, numerous of these entities are entities that, at all relevant times, the Debtor controlled through his agents, that the Debtor was responsible for funding, that paid the Debtor's personal expenses, and that were operated out of the Debtor's offices.

### A.    **G Entities**

75.    The G Entities, consisting of Saraca, the G Club Entities, G Fashion Entities, G Music, Freedom Media Ventures, Wise Creation, and the Himalaya Exchange Entities, are all linked to the Debtor's public facing businesses engaged in the task of exploiting the Debtor's platform and influence among his supporters to obtain funds for the Debtor to spend on an ultra-luxurious lifestyle for himself and his family members.

76.    Notably, the G Entities form a large part of the Debtor's "G-Series" family of entities and brands that the Debtor promoted to his followers.  As the Court previously found:

> a.    "The GSeries includes the following entities: Himalaya Exchange, Gettr, GFashion, GMusic, GClubs, GNews, and GEdu."[62]

> b.    "The G in GSeries stands for Guo. The Debtor founded and controls GNews. GNews is connected to Saraca []. The Debtor created GFashion. GFashion is connected to GNews, Gettr, and GCoin. The Debtor also controls Saraca and a related entity 'GTV,' which is commonly referred to collectively as GTV."[63]

> c.    "The Whistleblower Movement, NFSC, ROLF, GSeries, and Himalaya serve the purposes of the Debtor, serve as business vehicles for the Debtor, and their members are personally loyal to the Debtor."[64]

> d.    "NFSC, Himalaya, ROLF, GSeries entities, including GTV and GNews, as well as any persons or entities acting at their direction or on their behalf, are the Debtor's officers, agents, servants, employees, attorneys, and other persons who

---

[62]    *Corrected Mem. of Decision Granting in Part Mot. for Prelim. Inj.* (the "PI Decision") ¶ 2, (Adv. Proc. No. 22-05032, Jan. 13, 2023) [Docket No. 133].

[63]    *Id.* ¶ 3 (internal citations omitted).

[64]    *Id.* ¶ 7.

are in active concert or participation with the Debtor, his officers, his agents, his servants, his employees, and his attorneys."[65]

77.    The Superseding Indictment filed by the United States Department of Justice makes numerous relevant allegations regarding the Debtor's control of the G Entities, listing, among others, Freedom Media Ventures, G Club International, G Club Operations, G Fashion International Limited, GF Italy, LLC, GFNY, Inc., G Music, Himalaya International Reserves Limited, Himalaya International Clearing Limited, Himalaya International Financial Group, and Himalaya Currency Clearing Pty Ltd. as among the "interrelated and overlapping entities that form the Kwok Enterprise,"[66] which "obtained fraud proceeds, laundered those proceeds, spent fraud proceeds on expensive and luxury items, vehicles, and property for the benefit of [the Debtor] and his family, used fraud proceeds to promote the Kwok Enterprise, and used fraud proceeds to operate and manage the Kwok Enterprise."[67]

### i.    Saraca

78.    Saraca is a Delaware entity nominally owned by the Debtor's son Qiang Guo through a BVI holding company called Hudson Diamond Holding, Inc.  Saraca is the parent company of GTV.

79.    In its January 2023 preliminary injunction decision, this Court found that the Debtor controlled Saraca and GTV.[68]

80.    Saraca used the same address, 162 E. 64th Street, in New York, as the Debtor and numerous other Debtor-controlled entities, including Golden Spring, Greenwich Land, HK USA, and Wise Creation, among others.

---

[65]    *Id.* at 60-61.
[66]    Ex. 2 ¶ 3.a.
[67]    *Id.* ¶ 3.
[68]    PI Decision ¶ 3.

31

81.     The Debtor used his counsel at Hodgson Russ LLP to assist him in establishing Saraca.  Saraca was formed at the direction of the Debtor and controlled by the Debtor.

82.     The Debtor controlled Saraca through his agents.  The Debtor's instruction to Hodgson Russ LLP to create Saraca was transmitted by his agent William Je.  The Debtor's agents with roles at Saraca at various times included, among others, Han Chunguang as Director and President, Yvette Wang as Vice President, Daniel Podhaskie as Director, President, Secretary, and Treasurer, and Jessica Mastrogiovanni as Vice President.

83.     The Debtor was responsible for funding Saraca.  The Debtor solicited and raised hundreds of millions of dollars for Saraca pursuant to the private placement of shares of Saraca's subsidiary, GTV (the "GTV Private Placement").  This private placement resulted in the issuance by the Securities and Exchange Commission (SEC) of a cease and desist order ordering Saraca and GTV to cease violations of the securities laws that raised approximately $487 million from more than 5,000 individuals.  The GTV Private Placement also played a major role in the U.S. Government's indictment of the Debtor and his related arrest on March 15, 2023, as well as the filing on March 15, 2023 of a related civil lawsuit against the Debtor by the SEC for violations of the Securities Laws.  According to the U.S. Government's indictment, and consistent with documents in the possession of the Trustee, the "vast majority of the proceeds derived from investors in the GTV Private Placement were . . . deposited directly into bank accounts held in the name of Saraca, GTV's parent company."[69]

84.     The Debtor used Saraca to fund his expenses either directly or through payments made to other of his shell companies.

---

[69]   Ex. 2 ¶ 16.f.

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████    In addition, Saraca is the registered

owner with the United States Patent and Trademarks Office of the marks "Miles Kwok," "Miles

Guo," and "Guo Wengui,"[70] and Saraca registered "Himalaya Coin" and "Himalaya Dollar" as

its assumed names in the State of New York, using filings signed by Yvette Wang.

85.    At the Debtor's deposition in March 2023, when asked whether Saraca was an

entity in fact owned and controlled by him, the Debtor asserted the Fifth Amendment.  At the

same March 2023 deposition, the Debtor also asserted the Fifth Amendment when asked if he

had exclusive control and exclusive beneficial ownership of Saraca.  In May 2023, the Debtor

asserted the Fifth Amendment when asked in writing to state that he had control over Saraca.[71]

86.    In the Superseding Indictment, the U.S. Government alleged that Saraca was

among the "interrelated and overlapping entities that form the Kwok Enterprise."[72]

ii.    **G Club Entities and G Fashion Entities**

87.    The Debtor controlled the G Club Entities and G Fashion Entities through his

agents.  Haoran He was the nominal ultimate owner of these entities.  ████████████████

████████████████████████████████████████████

---

[70]    United States Patent and Trademark Office Registry Pages for Miles Guo, Miles Kwok, Guo Wengui, and Guo Media, attached as Exhibit 23 to the HK USA Counterclaims.

[71]    Responses to Certain Questions ¶ 182.

[72]    Ex. 2 ¶ 3.a.



88.

89.

and the Debtor's

personal counsel Yongbing Zhang was offered employment as a Senior Attorney at G Club Operations.

90.    The Debtor's control over the G Club Entities and G Fashion Entities through his New York based employees was facilitated by arrangements whereby purported "back office" services often comprising the bulk, if not entirety, of the entities' day to day operations (including but not limited to the administration of an entity's financial and legal affairs) for numerous of his entities, including the G Club Entities and G Fashion Entities, were delegated to the Debtor's New York offices and employees.  Initially, G Club Operations' financial and legal affairs were delegated to GTV, operating out of the Debtor's office at 162 E. 64th Street. Subsequently, the G Club Entities' and G Fashion Entities' financial and legal affairs were delegated to HCHK Technologies, operating out of the Debtor's office at 3 Columbus Circle. Thus, the G Club Entities and G Fashion Entities were controlled by the Debtor through his agents and operated from the same addresses as the Debtor and his other entities, with whom they were inextricably intertwined.

91.    The experience of Alex Hadjicharalambous, financial controller at G Club Operations and a key individual who assisted the Debtor in controlling the G Club Entities, is illustrative in this regard. ██████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████████

35



92.

93.

94.     Upon information and belief, the Debtor was responsible for generating or otherwise providing substantially all of the funding for the G Club Entities and G Fashion Entities.  The Debtor generated funding for the G Club Entities by using his online broadcasts to

solicit his followers to purchase G Club membership cards, available at different "tiers" between $10,000 and $50,000 per membership,[74] further encouraging his followers to buy G Club memberships by promising them that, along with their membership cards, they would receive shares in GTV.  The sale of G Club memberships generated hundreds of millions dollars for G Club Operations and, through G Club Operations, for G Club International.  In addition, upon information and belief, the Debtor generated funds for the G Fashion Entities by encouraging his followers to purchase G Fashion clothing.

95.    

96.    Upon information and belief, G Fashion Hold Co A and G Fashion Hold Co B had no bank accounts.  Upon information and belief, G Fashion Hold Co A had no assets or operations. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[74] As alleged by the Department of Justice: "a Tier 5 Membership cost $50,000; a Tier 4 Membership cost $40,000; a Tier 3 Membership cost $30,000; a Tier 2 Membership cost $20,000; and a Tier 1 Membership cost $10,000."  Ex. 2 ¶ 18.c.

[75] This typically occurred through purported "master services agreements" between such entities and HCHK Technologies.  G Entities believed to have entered into master services agreements with HCHK Technologies include G Club Operations, GFNY, Inc., Wise Creation, Jovial Century International Limited, G Fashion International, G Fashion Hold CO A Limited, G Fashion Hold Co B Limited, G Club Hold Co I, LLC, GF Italy, LLC, GF IP, LLC, Freedom Media Ventures, Ltd, G Fashion (CA), and G Music, LLC.



97.     The Debtor used the G Club Entities to facilitate the funding of his and his family members' personal expenses.  Among other things:





iv. ███████████████████████████████████████████████

v. ███████████████████████████████████████████████

98. ████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████

99. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████

100. ████████████████████████████████████
█████████████████████████████████ Upon information
and belief, these accounts were established in order to place funds transferred from G Club

39

Operation to G Club International out of the reach of authorities and creditors in the United States.

101.    The U.S. Government has alleged that G Club Operations "was functionally owned and controlled by" [76] the Debtor and was used by the Debtor and his co-conspirators to fraudulently obtain "more than approximately $250 million in victim funds," [77] including the funds used to purchase the Mahwah Mansion and luxury vehicles described above.  The U.S. Government has further made public certain of Yvette Wang's notes showing how purported cryptocurrencies traded on the Himalaya Exchange "were used to launder G Clubs membership fees."  Further, the U.S. Government has stated that it "has recordings in which Wang, unbeknownst to her, was recorded making financial decisions and directing others regarding how to process money from G Clubs members, including by proposing that the money be routed through various [Himalaya] Farms' bank accounts." [78]  The U.S. Government also alleged that "between in or about January and March 2023, at least two individuals affiliated with the Kwok-controlled entity HCHK Technologies, Inc. spent more than approximately six weeks in the UAE to assist in moving the operations and money of G Club Operations there." [79]

102.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████

---

[76]    Ex. 2 ¶ 14.
[77]    *Id.* ¶ 18.
[78]    *See* USAO Memorandum, at 21, 24.
[79]    *Id.* at 4.

103.    In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to
state that he had control over G Club Operations.[80]

### iii.    G Music

104.    The Debtor controlled G Music through his agents.  G Music's nominal ultimate
owner was Haoran He.  At various times G Music's personnel and/or representatives included

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

105.    As with other entities, G Music was effectively managed by the Debtor's
employees from the Debtor's offices at 3 Columbus circle pursuant to one or more service
agreements with HCHK Technologies, which administered G Music's financial and legal affairs.

106.    ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

### iv.    Freedom Media Ventures

107.    The Debtor controlled Freedom Media Ventures through his agents.  Freedom
Media Ventures was nominally ultimately owned by Haoran He.  At various times ████████
████████████████████████████████████ and Alex Hadjicharalambous and Tian Hao
served as the entity's authorized representatives.

---

[80]    Responses to Certain Questions ¶ 108.

41

108.    Upon information and belief, Freedom Media Ventures only acted at the direction of the Debtor, with such direction communicated either directly by the Debtor or through his agents.

109.    As with other entities, Freedom Media Ventures was effectively managed by the Debtor's employees from the Debtor's offices at 3 Columbus Circle pursuant to service agreements with HCHK Technologies, which administered Freedom Media Ventures' financial and legal affairs.

110.    ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████    Gettr USA, Inc has been widely reported to be controlled by the Debtor[81] through Yvette Wang and is one of the "GSeries" entities that this Court found to serve as business vehicles for the Debtor in the Court's January 2023 preliminary injunction decision.[82]

█████████████████████████████████████████████

█████████████

---

[81]    *See* Will Sommer, Adam Rawnsley, A. Suebsaeng, *Trumpworld App Is Bankrolled by Fugitive Chinese Billionaire*, THE DAILY BEAST, https://www.thedailybeast.com/trumpworld-app-is-bankrolled-by-fugitive-chinese-billionaire?ref=home (July 5, 2021, 12:19 PM) (last visited July 20, 2022) (reporting that "sites associated with the billionaire have suggested that Gettr is [Debtor's] brainchild," and attributing to a host on GTV, "a media outlet that serves as a mouthpiece for [Debtor]," the observation that Gettr was "'the concentration of [Debtor]'s whole lifework'," and adding that "[Debtor] had come up with the idea for Gettr's logo, a torch."); *see also* The New York Times: Sway, Best Of: Jason Miller, at 30:15-30:35 (July 18, 2022) (downloaded using Apple Podcasts) (When asked who was funding Gettr, Gettr CEO Jason Miller responded, "We have multiple international investment funds that are putting into this . . . . The family foundation of Miles Kwok is one of the initial funders, one of the initial sponsors of this. There's been over $50 million that's [been] put in the platform so far. [We] have somewhere [near] $25-$30 million range that we currently have in the bank.").

[82]    PI Decision ¶ 7.

### v.    Wise Creation

111.    The Debtor controlled Wise Creation through his agents.  Wise Creation was nominally owned directly by Haoran He.  Manuel Martinez Anzaldua served as the entity's authorized representative.

112.    Upon information and belief, Wise Creation only acted at the direction of the Debtor, with such direction communicated either directly by the Debtor or through his agents.

113.    As with other entities, Wise Creation was effectively managed by the Debtor's employees from the Debtor's offices at 3 Columbus Circle pursuant to service agreements with HCHK Technologies, which administered Freedom Media Ventures' financial and legal affairs.

██████████████████████████████████████████████████████

█████████████████████████████

114.    The Debtor's counsel in connection with the PAX Litigation, Baker Hostetler LLP, also advised Wise Creation.

115.    ███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████

###### vi.    Himalaya Exchange Entities

116.    The Himalaya Exchange Entities consist of Himalaya International Financial Group Limited, Himalaya International Reserves Limited, Himalayan International Payments Limited, and Himalaya International Clearing Limited, each of which is organized in the BVI, as well as Himalaya Currency Clearing Pty Ltd., which is organized in Australia.  Each of the Himalaya Exchange entities is nominally ultimately owned by William Je through a series of shell companies.

117.    The Debtor controlled the Himalaya Exchange Entities through their nominal owner, the Debtor's financial agent, William Je, who in turn operated the Himalaya Exchange Entities using the assistance of individuals based in the United Kingdom and also employed by the Hamilton Entities (another set of entities nominally owned by William Je, but in reality beneficially owned by the Debtor).  Upon information and belief, these individuals were subordinates of William Je who took direction from William Je (and, through William Je, the Debtor), and they served as officers and directors of the Himalaya Entities and Hamilton Entities. Such individuals included David Fallon, an individual that counsel for Taurus Fund claimed, during a hearing in the Mahwah Mansion Adversary Proceeding, had given him instructions in connection with representing Taurus Fund.   Upon information and belief, the Himalaya Exchange Entities and Hamilton Entities operated as one business.

118.    The Himalaya Exchange Entities operate the Himalaya Exchange, the Debtor's purported cryptocurrency "ecosystem," through which the Debtor solicited his followers to purchase purported cryptocurrencies—H Dollar and H Coin.  Commencing at least in or about April 2021, the Debtor actively promoted these purported cryptocurrencies, including in his well-known "H Coin to the Moon" music video and in broadcasts where, among other things, he told

44

his followers that he would personally compensate anyone who lost money in connection with investing in H Coin. According to the U.S. Government, the Debtor claimed to have designed the Himalaya Exchange purported cryptocurrencies, and the origin of these purported cryptocurrencies with the Debtor is demonstrated by the fact that Saraca registered "Himalaya Coin" and "Himalaya Dollar" as its assumed names in the State of New York, using filings signed by Yvette Wang and submitted to the State of New York Department of State in May 2020 (prior to the launch of the Himalaya Exchange) with the assistance of the Debtor's counsel at Hodgson Russ LLP.

119. The Debtor was responsible for the funding of the Himalaya Exchange Entities through his solicitation of purchases of Himalaya Exchange purported cryptocurrencies by his followers. The U.S. Government has alleged, among other things, that the Debtor and his co-defendants fraudulently obtained more than $262 million in victim funds through the Himalaya Exchange. In connection with their investigation of the Debtor, the U.S. Government seized millions of dollars held in bank accounts under the names of Himalaya International Reserves Limited, Himalaya International Clearing Limited, Himalaya International Financial Group Limited, and Himalaya Currency Clearing Pty Ltd.

120. The Debtor has also used the Himalaya Exchange Entities for his own personal benefit. Most notably, on behalf of and at the direction of the Debtor, William Je arranged for Himalaya International Financial Group Limited to transfer $37 million (sourced from Himalaya International Clearing Limited) to HK USA's counsel, Zeisler & Zeisler, which funds were then placed into escrow in connection with the stipulation regarding the return of the Lady May to the United States. The transfer of these funds took place pursuant to a purported loan agreement between Himalaya International Financial Group Limited and HK USA, signed by William Je,

45

but was in fact a gratuitous transfer from one Debtor-controlled entity to another.  As the Court found in its decision ruling that HK USA was the Debtor's alter ego, provision of these funds was arranged within the space of a 62-minute recess following the Court's suggestion that HK USA post a bond to secure the Lady May's return to the United States.[83]  The Debtor also used funds of Himalaya International Clearing Limited to purchase a multimillion-dollar luxury vehicle for his son.



     As the Court will recall, a Berkeley Rowe attorney even attempted to provide testimony in support of HK USA at the March 15, 2023 hearing in the HK USA Adversary Proceeding, which request the Court denied.[84]  Berkeley Rowe also assisted the Debtor's son, Qiang Guo, in connection with the submission of his proof of claim in the Genever Holdings LLC chapter 11 case, given that Qiang Guo used Berkeley Rowe as his personal address on his proof of claim form.[85]

---

[83]   *Memorandum of Decision and Order Granting Motion for Partial Summary Judgment on Second Counterclaim*, ¶¶ 19-20 (Adv. Proc. No. 22-05003, May 18, 2023) [Docket No. 221].

[84]   *See Order Granting in Part and Denying in Part Motion for Leave to Supplement HK International Funds Investments (USA) Limited, and Mei Guo's Witness and Exhibit List* (Adv. Proc. No. 22-05003, Mar. 14, 2023) [Docket No. 136].

[85]   *See* Proof of Claim 3-1, *In re Genever Holdings LLC*, Case No. 22-50592.

███████████████████████████████████████████████████████

████████████████████████████[86]

123.     When asked at his deposition whether, among other things, he controlled Himalaya International Financial Group Limited, whether he was the beneficial owner of Himalaya International Financial Group Limited, and whether all assets of Himalaya International Financial Group Limited were under his control, the Debtor asserted the Fifth Amendment.[87]

### B.     Rule of Law Entities

124.     The Rule of Law Entities are purported non-profit entities organized in Delaware, each nominally owned by Seven Mission Group LLC, a Delaware LLC that is itself nominally owned by Yvette Wang.

125.     In its January 2023 preliminary injunction decision, the Court found that the Rule of Law Foundation was involved in the protests against the Trustee and PAX, and that the Debtor was the leader of the Rule of Law Foundation, which the Court found to be one of a series of entities and organizations that "serve the purposes of the Debtor, serve as business vehicles for the Debtor, and [whose] members are personally loyal to the Debtor."[88]  The Court also found that the Rule of Law Foundation was among the entities that were the Debtor's "officers, agents, servants, employees, attorneys, and other persons who are in active concert or

---

[86] ████████████████████████████████████████████████████████

██████████████████████████████████████

[87]     Debtor's March Depo. at 42:6-18.
[88]     PI Decision ¶ 7. *See also id.*, at 60 (finding Rule of Law Foundation to be "under the leadership of the Debtor").

participation with the Debtor, his officers, his agents, his servants, his employees, and his attorneys."[89]

126.    The Rule of Law Entities were operated out of the same address, 162 E. 64th Street, in New York, as the Debtor numerous other entities of the Debtor, including Golden Spring, Greenwich Land, HK USA, and Saraca, among others.

127.    The Debtor used his counsel at Hodgson Russ LLP to assist him in establishing the Rule of Law Entities.  An attorney at Hodgson Russ testified at her deposition that the Rule of Law Entities were created on behalf of the Debtor.

128.    The Debtor managed the Rule of Law Entities through his agents.  At various times at Rule of Law Society, for example, Yvette Wang served as Director; Daniel Podhaskie served as Managing Director; Karin Maistrello served as President, Secretary, Treasurer, and Director; Jennifer Mercurio served as Secretary, General Counsel, and Director; Ross Heinemeyer served as Director of Finance & Operations; Sarah Wei Lafrenz served as Director, Qidong Xia served as Chairman of the Board of Directors, and Shuai Guo served as Director. Similarly, at various times at Rule of Law Foundation, for example, Yvette Wang served as Director; Daniel Podhaskie served as Managing Director; Max Krasner served as President, Secretary, Treasurer, and Director; Jennifer Mercurio served as General Counsel; Ross Heinemeyer served as Director of Finance & Operations; Melissa Mendez served as Director, Xuebing Wang served as President and Director, and Yongbing Zhang served as Director.

129.    The Debtor was responsible for funding the Rule of Law Entities, either by directing funding to the Rule of Law Entities from his other shell companies or by soliciting donations for the Rule of Law Entities from his followers.  Upon information and belief, the

---

[89]    PI Decision, at 60-61.

Debtor encouraged his followers to donate to the Rule of Law Entities by telling them that they had to make donations to the Rule of Law Entities in order to participate in other Debtor-controlled investment schemes.

130.



Relatedly this Court has found that in a November 21, 2022 internet broadcast, the Debtor told his followers that if they were "stupid" and received subpoenas issued under Rule 2004, the Himalaya Global Alliance and the Rule of Law Foundation would hire attorneys to help them contest the subpoenas.[92]   This Court has also found that the Debtor told his followers that the Rule of Law Foundation supported his legal efforts and protests.[93]

---

[90]   This Court found that Beile Li was among the individuals, who were involved in the protests, PI Decision ¶ 15, were friends, employees, servants, associates, followers, and colleagues of the Debtor.  *Id.* ¶ 14.

[91]   This Court found that Jiao Bing Shang, who testified for the Debtor at the hearing in connection with the PI Decision, was the president of Himalaya New World Inc. and that "Himalaya New World, Inc., also helps people to buy G-Club." PI Decision, ¶ 5.

[92]   *Id.* ¶ 44.

[93]   *Id.* ¶ 49.

███████████████████████████████████

████████████████████████████████

██████████████████████████████████

████████████████████████████████

████████████████

131.    In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over the Rule of Law Entities.[94]

132.    In the Superseding Indictment, the U.S. Government alleged that the Rule of Law Entities were among the "interrelated and overlapping entities that form the Kwok Enterprise."[95]

## C.    **Funding Entities**

### i.    **ACA Capital Group**

133.    ACA Capital Group is a Hong Kong entity whose ultimate nominal owner is William Je through a BVI holding entity called Celestial Tide Limited.

134.    The Debtor controlled ACA Capital Group through his agents, in particular his financial agent William Je, who has served as nominal owner of ACA Capital Group.  In addition, at various times the Debtor's translator Karin Maistrello served as director of ACA Capital Group and the Debtor's counsel Fiona Yu served as company secretary and in house counsel to ACA Capital Group.

135.    ACA Capital Group has used the same Hong Kong address, at 49/F, Bank of China Tower, No. 2 Garden Road, as was used by Leading Shine BVI, Anton Development, China Golden Spring, Eastern Profit, Bravo Luck, and Whitecroft.  Upon information and belief,

---

[94]    Responses to Certain Questions ¶¶ 170, 172.
[95]    Ex. 2 ¶ 3.a.

this address was where the Debtor's Hong Kong office was located and where he kept the documents of numerous entities that he controlled. Upon information and belief, William Je and Natasha Qu worked with the Debtor out of this same office space.

136.    The Debtor used ACA Capital Group as a piggy bank to fund his expenses through other shell companies or, in some cases, directly.  In addition, and as alleged in the counterclaims filed by the Trustee in the HK USA Adversary Proceeding, ACA Capital Group was designated to fund the $37 million that was placed into escrow in April 2022 (in connection with the stipulation under which the Debtor returned the Lady May to the United States), but was replaced in this role by Himalaya International Financial Group Limited. ACA Capital Group was also the source of the funds that the Debtor sought to loan to himself, through Golden Spring, pursuant to the DIP loan he proposed in a motion filed with this Court in March 2022, which motion he subsequently withdrew in May 2022 upon deciding to instead consent to the proposed dismissal of his chapter 11 case. The Debtor arranged for these DIP funds to be transferred from ACA Capital Group to an escrow account of Golden Spring's counsel and subsequently returned to ACA Capital Group in connection with the withdrawal of the DIP motion.

137.    The Debtor has also been responsible for funding ACA Capital Group by, among other things, instructing the leaders of his Himalaya Farm organizations to transfer millions of dollars collected from the Debtor's followers to ACA Capital Group.  These funds were subsequently dissipated under the Debtor's direction and for the benefit of the Debtor, his family members, and business associates. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

138.    At the Debtor's deposition in March 2023, when asked whether he had exclusive control over ACA Capital Group and its assets and was the exclusive beneficial owner of ACA Capital Group, the Debtor asserted the Fifth Amendment.  The Debtor also asserted the Fifth Amendment when asked if he had installed Fiona Yu as company secretary of ACA Capital Group.  In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over ACA Capital Group and ACA Investment Management Limited.[96]

139.    In the Superseding Indictment, the U.S. Government alleged that ACA Capital Group and ACA Investment Management Limited were among the "interrelated and overlapping entities that form the Kwok Enterprise."[97]

---

[96]    Responses to Certain Questions ¶¶ 60, 62.
[97]    Ex. 2 ¶ 3.a.

###### ii.    Hamilton Entities

140.    The Hamilton Entities, consisting of Hamilton Capital Holding Ltd., Hamilton

Investment Management Ltd., and Hamilton Opportunity Fund, are a series of purported

investment funds nominally owned by William Je.

141.    The Debtor controlled the Hamilton Entities through their nominal owner, the

Debtor's financial agent, William Je, who in turn operated the Hamilton Entities using the

assistance of individuals who also assisted in the management of the Himalaya Exchange

Entities.  ██████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████  One such individual, David

Fallon, is the individual that counsel for Taurus Fund claimed, during a hearing in the Mahwah

Mansion Adversary Proceeding, had given him instructions in connection with representing

Taurus Fund.  Upon information and belief, the Himalaya Exchange Entities and Hamilton

Entities operated as one business.

142.    The Debtor was responsible for funding the Hamilton Entities by directing that

funds raised by him in connection with his various schemes, such as the sales of G Club

memberships, be sent to the Hamilton Entities and that those funds be recycled for the Debtor's

personal use.  As such, he used the Hamilton Entities to launder the money he raised from his

followers through his solicitation of their investments in the Farm Loan Program, Himalaya

Exchange, and G Club memberships.  ████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████    In connection with its investigation of the

Debtor, the U.S. Government also seized a number of other bank accounts held in the name of

Hamilton Opportunity Fund, as well as bank accounts held in the name of Hamilton Investment

Management Ltd., and Hamilton Capital Holding Ltd.

143.    Upon Information and belief, the Debtor was responsible for funding Hamilton

Capital Holding Ltd. ██████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████

144.    ████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████

145.    The U.S. Government has alleged that Hamilton Investment Management Ltd., Hamilton Capital Holding Ltd., and Hamilton Opportunity Fund are among the "interrelated and overlapping entities that form the Kwok Enterprise."[98]

### D.    Other Debtor Entities

#### i.    China Golden Spring

146.    China Golden Spring is an entity organized in Hong Kong that is nominally owned by Qiang Guo.

147.    Upon information and belief, Natasha Qu managed China Golden Spring on the Debtor's behalf during the period in which she worked for the Debtor.  Other Debtor employees staffing China Golden Spring have included Yu Yong,[99] Han Chunguang, and Yvette Wang.

148.    China Golden Spring has used the same Hong Kong address, at 49/F, Bank of China Tower, No. 2 Garden Road, as was used by Bravo Luck, Eastern Profit, Anton Development, Leading Shine BVI, ACA Capital Group, and Whitecroft.  Upon information and belief, this address was where the Debtor's Hong Kong office was located and where he kept the documents of numerous entities that he controlled.  Upon information and belief, William Je and Natasha Qu worked with the Debtor out of this same office space.

149.    A court order issued in Hong Kong on October 18, 2018 (the "Hong Kong Restraint Order") identified China Golden Spring's bank account as "subject to the effective control" of the Debtor.

---

[98]    Ex. 2 ¶ 3.a.

[99]    Yu Yong was another of the Debtor's assistants whom the Debtor used as a nominal owner of entities under his control.  Among other things, prior to 2017, Yu Yong served the Debtor as the nominal owner of Ace Decade Limited for the purpose of disguising the Debtor's ownership of that entity from regulators, after which the Debtor arranged for nominal ownership of Ace Decade to be transferred to Yvette Wang.  In a ruling issued in November 2022, this Court found that Ace Decade was beneficially owned by the Debtor.

150.     As discussed in the Golden Spring Complaint, China Golden Spring is the parent company of Golden Spring, which this Court found to be the Debtor's alter ego in a default judgment issued on December 4, 2023.  Upon information and belief, following the establishment of Golden Spring as the Debtor's "family office" entity in 2015, China Golden Spring had no other role than to serve as parent company of Golden Spring and to assist the Debtor to transfer funds to other Debtor shell companies.

151.     In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over China Golden Spring.[100]

### ii.     K Legacy and London Apartment

152.     K Legacy is an entity organized in the BVI and nominally owned by the Debtor's Son, Qiang Guo.

153.     On or about July 4, 2016, K Legacy became the nominal owner of the London Apartment, purchased for the price of approximately £33 million.

154.     Upon information and belief, the London Apartment is K Legacy's only asset and K Legacy's only business purpose is to hold title to the London Apartment.

155.     The Debtor funded the purchase of the London Apartment ████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████

156.     The Debtor exercised control and dominion over the London Apartment.  The London Apartment was the Debtor's home in London and belonged to the Debtor, not his son or any other member of his family.  The Debtor referred to the London Apartment as his London

---

[100]   Responses to Certain Questions ¶ 92.

residence and had control over the apartment.  For example, when in London, the Debtor occupied the master bedroom of the London Apartment and stated on multiple occasions that it was his, describing the London Apartment as "my apartment" and stating that he was "the boss" at the London Apartment.  Among other things, the Debtor kept all documents related to the London Apartment (including the London Apartment purchase contract), reviewed the bills of the London Apartment and chose when and how to pay for the bills, told the staff and security what to do, and entered and left the London Apartment whenever he wished without permission from his son or anyone else.  Security staff at the London Apartment obeyed directives from the Debtor and not from his son.

157.    In a television interview that aired on November 15, 2017, the Debtor publicly boasted regarding the London Apartment, saying: "I have the most luxurious apartment in London."[101]

158.    The Debtor has used his alter ego shell companies to fund expenses associated with the London Apartment, for example, ███████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████

159.    At the Debtor's deposition in March 2023, when asked whether K Legacy was in fact an entity owned and controlled by him, the Debtor asserted the Fifth Amendment.[102]

### iii.    Bravo Luck

160.    Bravo Luck is an entity organized in the BVI that is purportedly nominally owned by Qiang Guo, the Debtor's son.  Prior to January 2015, Qiang Guo was the sole nominal owner

---

[101]  *See* VICE News, *Exiled Chinese Billionaire Uses YouTube to Wage a War on Corruption*, YouTube, at 6:50 (original air date on HBO, Nov. 15, 2017), https://www.youtube.com/watch?v=LkOsgh5kcgQ.
[102]  Debtor's March Depo., at 54:4-13.

of Bravo Luck.  In January 2015, the Debtor became the holder of 50% of the membership

interests in Bravo Luck, with his son continuing as nominal holder of the remaining 50%.  The

Debtor has asserted that this 50% share was returned to his son's nominal ownership in May

2015.

161.    Bravo Luck's only purpose was to serve the Debtor as a vehicle for funneling

money from his other alter ego entities, in particular to fund the purchase of the Lady May and

Sherry Netherland Apartment. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ This Court has issued rulings finding that both of these assets

were property of the Debtor.[103]

162.    As discussed in more detail in the Bravo Luck complaint, the Debtor represented

(correctly) that Bravo Luck's assets were his assets in connection with submitting his application

---

[103] *See Order Granting Motion Of Chapter 11 Trustee For Estate Of Ho Wan Kwok For Partial Summary Judgment*, ¶ 2 (Adv. Proc. No. 22-05003, Mar. 27, 2023) [Docket No. 172] ("The Debtor is the beneficial owner of, and controls, the yacht the Lady May"); *Order Granting, Pursuant to Bankruptcy Rule 9019, Motion of Chapter 11 Trustee, Genever Holdings LLC, and Genever Holdings Corporation Regarding Settlement with Bravo Luck Limited and Mileson Guo (a/k/a Qiang Guo and/or Guo Qiang*) (Adv. Proc. No. 22-05027, Aug. 30, 2023) [Docket No. 118-1].

to the Sherry Netherland board of directors, including that he had complete and independent

access to Bravo Luck's UBS account.

163.    The Debtor also used Bravo Luck as an instrument of his legal strategy to retain

control of the Sherry Netherland Apartment.  As further discussed in the complaints filed by the

Trustee in his consolidated adversary proceedings against Bravo Luck (the "Bravo Luck

Adversary Proceedings"), Bravo Luck, represented by an attorney who is, upon information and

belief, the father-in-law of Aaron Mitchell, filed claims in these chapter 11 cases based on the

theory that Genever Holdings LLC held the Sherry Netherland apartment in trust for Bravo

Luck's benefit pursuant to a purported trust agreement.  The Trustee asserted claims in the Bravo

Luck Adversary Proceedings that, among other things, this purported trust agreement was a

forgery.  Subsequently, a settlement agreement between the Trustee and Bravo Luck approved

by this Court's order dated August 30, 2023 established, among other things, that the Trustee

owned the Sherry Netherland Apartment as representative of Genever Holdings LLC and

Genever Holdings Inc. and that to the extent Bravo Luck or Qiang Guo had any right, title, or

interest in the Sherry Netherland Apartment, they relinquished such right, title, or interest and

agreed to withdraw all claims related thereto.[104]

164.    Bravo Luck has used the same Hong Kong address, at 49/F, Bank of China

Tower, No. 2 Garden Road, as was used by Leading Shine BVI, Anton Development, China

Golden Spring, Eastern Profit, ACA Capital Group, and Whitecroft.  Upon information and

belief, this address was where the Debtor's Hong Kong office was located and where he kept the

---

[104]    *See Order Granting, Pursuant to Bankruptcy Rule 9019, Motion of Chapter 11 Trustee, Genever Holdings LLC,
and Genever Holdings Corporation Regarding Settlement with Bravo Luck Limited and Mileson Guo (a/k/a
Qiang Guo and/or Guo Qiang)*, ¶ 2(a)(iii) (Adv. Proc. No. 22-05027, Aug. 30, 2023) [Docket No. 118-1].

documents of numerous entities that he controlled.  Upon information and belief, William Je and Natasha Qu worked with the Debtor out of this same office space.

165.    In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over Bravo Luck.[105]

### iv.    Leading Shine BVI

166.    Leading Shine BVI is an entity organized in the BVI and, according to documents in the possession of the Trustee, is nominally owned by the Debtor's Son, Qiang Guo.

167.    Leading Shine BVI has used the same Hong Kong address, at 49/F, Bank of China Tower, No. 2 Garden Road, as was used by Bravo Luck, Anton Development, China Golden Spring, Eastern Profit, ACA Capital Group, and Whitecroft.  Upon information and belief, this address was where the Debtor's Hong Kong office was located and where he kept the documents of numerous entities that he controlled.  Upon information and belief, William Je and Natasha Qu worked with the Debtor out of this same office space.

168.    The Debtor uses Leading Shine BVI to hold title to his residence located at 20-22 South Bay Road in Hong Kong (the "South Bay Property").

169.    The Debtor used Leading Shine BVI to purchase the South Bay Property in early 2011 for approximately HK$ 880,000,000, and with an estimated value in July 2018 of HK $2,224,000,000.

170.    The Hong Kong Restraint Order identified the South Bay Property as "subject to the effective control" of the Debtor.[106]

---

[105]  Responses to Certain Questions ¶ 88.
[106]  Hong Kong Restraint Order ¶ 3, Respondent 24, attached as Exhibit 2 to the adversary complaint in the HCHK Adversary Proceeding.

171.    The Debtor has on numerous occasions represented that the South Bay Property was his residence, including on the application he submitted to purchase the Sherry Netherland Apartment in 2015, and on the member registries of the Debtor's BVI entities at which he served in formal roles as an equity owner or director.  The address was also used by Mei Guo on due diligence forms submitted in connection with BVI entities that were beneficially owned by the Debtor, as alleged in the Bombardier Complaint.

172.    In a television interview that aired on November 15, 2017, the Debtor publicly boasted regarding the South Bay Property, saying: "I have the biggest house in Hong Kong, thousands of square meters."[107]

173.    The Debtor continues to own the South Bay Property through Leading Shine BVI, even subsequent to the issuance of the Hong Kong Restraint Order in 2018. ███████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████

174.    In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over Leading Shine BVI.[108]

### v.    Anton Development

175.    Anton Development is an entity organized in Hong Kong that is nominally owned by Mei Guo.

176.    Previously, Anton Development was nominally owned by Han Chunguang, who transferred nominal ownership of Eastern Profit to Mei Guo for no apparent consideration in

---

[107]    *See* VICE News, *Exiled Chinese Billionaire Uses YouTube to Wage a War on Corruption,* YouTube, at 6:48 (original air date on HBO, Nov. 15, 2017), https://www.youtube.com/watch?v=LkOsgh5kcgQ.
[108]    Responses to Certain Questions ¶ 156.

2017.  Nominal Ownership of Anton Development was transferred to Mei Guo on the same date, June 27, 2017, that the nominal ownership of Eastern Profit and HK USA were transferred to Mei Guo.

177.    Anton Development has used the same Hong Kong address, at 49/F, Bank of China Tower, No. 2 Garden Road, as was used by Bravo Luck, Eastern Profit, China Golden Spring, Leading Shine BVI, ACA Capital Group, and Whitecroft.  Upon information and belief, this address was where the Debtor's Hong Kong office was located and where he kept the documents of numerous entities that he controlled.  Upon information and belief, William Je and Natasha Qu worked with the Debtor out of this same office space.

178.    As discussed in greater detail in the adversary complaint in the Bombardier Adversary Proceeding, the Debtor previously used Anton Development to hold title to his Bombardier Jet.  Head Win Group Limited ("Head Win Group"), a BVI entity owned by the Debtor, transferred title to the Bombardier jet to Anton Development in 2016 for no apparent consideration.  Subsequently, in 2018, title to the Bombardier jet was transferred, again for no apparent consideration, to Whitecroft, an entity nominally owned by Mei Guo.

179.    The Hong Kong Restraint Order identified Anton Development's bank account as "subject to the effective control" of the Debtor.[109]  Upon information and belief, the sources from which Anton Development obtained these funds were other Debtor-controlled entities, namely Alfonso Global and Alfa Global.

180.    The Debtor █████████████████████████████ ███████████████████████████████████████████████

---

[109]   Hong Kong Restraint Order ¶ 3, Respondent 20.

██████████████████████████████████████████████████

███████████████████████████

181.    In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over Anton Development.[110]

### vi.    Eastern Profit Corporation Limited

182.    Eastern Profit is an entity organized in Hong Kong that is nominally owned by Mei Guo.

183.    Previously, Eastern Profit was nominally owned by Han Chunguang, who transferred nominal ownership of Eastern Profit to Mei Guo for no apparent consideration in 2017.  Eastern Profit was transferred to Mei Guo on the same date, June 27, 2017, that HK USA and Anton Development were transferred to Mei Guo.

184.    Eastern Profit has used the same Hong Kong address, at 49/F, Bank of China Tower, No. 2 Garden Road, as was used by Bravo Luck, China Golden Spring, Anton Development, Leading Shine BVI, ACA Capital Group, and Whitecroft.  Upon information and belief, this address was where the Debtor's Hong Kong office was located and where he kept the documents of numerous entities that he controlled.  Upon information and belief, William Je and Natasha Qu worked with the Debtor out of this same office space.

185.    ███████████████████████████████████████████

████████    The Hong Kong Restraint Order identified Eastern Profit's bank account as "subject to the effective control" of the Debtor.[111]    ████████████████████████████

██████████████████████████████████████████████████

---

[110]    Responses to Certain Questions ¶ 74.
[111]    Hong Kong Restraint Order ¶ 3, Respondent 16.

███████████████████████████ Upon information and belief, the sources from which Eastern Profit obtained these funds were other Debtor-controlled entities, namely Alfonso Global and Alfa Global. ████████████████████████████████

████████████████████████████████████████████

██████████████████████

186.     More recently, in 2018, the Debtor used Eastern Profit to enter into a contract with an entity called Strategic Vision US LLC ("Strategic Vision") related to the Debtor's purported anti-CCP political activities.  The contract required that Eastern Profit pay Strategic Vision $1 million, which amount was supplied by ACA Capital Group.  In litigation arising from a dispute related to this contract, Eastern Profit was found by Judge Liman of the U.S. District Court of the Southern District of New York, in his 2021 decision in the case of *Eastern Profit Corp. v. Strategic Vision US LLC* (the "Liman Decision"), to be, "in essence, a shell corporation" for the Debtor.[112]

187.     In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to state that he had control over Eastern Profit.[113]

### vii.    Alfa Global

188.     Alfa Global is an entity registered in the BVI.   The Debtor's niece, Guo Lijie, served as the nominal owner and sole director of Alfa Global through December 13, 2018, when she was replaced in both of these roles by the Debtor's translator, Karin Maistrello.

189.     The Hong Kong Restraint Order identified Alfa Global's bank accounts as "subject to the effective control" of the Debtor.[114] ████████████████████████████████

---

[112]    *Eastern Profit Corp.*, 2021 WL 2554631 at *1.
[113]    Responses to Certain Questions ¶ 102.
[114]    Hong Kong Restraint Order ¶ 3, Respondent 17.

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

190.    In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to
state that he had control over Alfa Global.[115]

**viii.    Alfonso Global**

191.    Alfonso Global is an entity registered in the BVI nominally owned prior to 2016,
by Zhang Wei, the husband of the Debtor's niece, and, subsequently, by another Debtor-
controlled BVI entity called Next Tycoon Investments Limited.  Zhang Wei also served as the
sole director of Alfonso Global until December 13, 2018, when he was replaced in this role by
the Debtor's employee Max Krasner.

192.    The Hong Kong Restraint Order identified Alfonso Global's bank accounts as
"subject to the effective control" of the Debtor.[116] ██████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████

---

[115]    Responses to Certain Questions ¶ 66.
[116]    Hong Kong Restraint Order ¶ 3, Respondent 7.

193.     In May 2023, the Debtor asserted the Fifth Amendment when asked in writing to
state that he had control over Alfonso Global.[117]

## FIRST CLAIM

**(Declaratory Judgment that Saraca is the Debtor's Alter Ego and Ordering Turnover of
Saraca's Assets to Trustee)**

194.     The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

195.     Delaware law applies to this alter ego claim because Saraca is a Delaware entity.

196.     Saraca is an alter ego of the Debtor, because, among other reasons:

     i.    Saraca was formed by the Debtor through his counsel.

     ii.    Saraca was managed by the Debtor through his agents.

     iii.    The Debtor was responsible for funding Saraca.

     iv.    Saraca used the same address as the Debtor and other Debtor shell
companies.

     v.    The Debtor used Saraca to pay his expenses.

     vi.    The Debtor asserted the Fifth Amendment regarding his control over
Saraca.

197.     At all relevant times, the Debtor was indebted to one or more creditors.  Such
creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors'
rights.

198.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of
the Bankruptcy Code, (1) declaring that: (a) at all times Saraca was an alter ego of the Debtor;
(b) any and all of the assets held by Saraca at any time prior to the Debtor's petition date of
February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Saraca at
any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present,

---

[117]   Responses to Certain Questions ¶ 68.

66

constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Saraca to the Trustee.

## SECOND CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of Saraca and Its Assets and Ordering Turnover of Ownership of Saraca and Its Assets to Trustee)**

199.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

200.    The same facts, discussed above, establishing that Saraca is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of Saraca and its assets.

201.    At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

202.    Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Saraca, and the assets of Saraca, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Saraca, and the assets of Saraca to the Trustee.

## THIRD CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of G Club International and its assets and Ordering Turnover of Ownership of G Club International and its assets to Trustee**

203.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

204.    The facts set forth herein demonstrate that the Debtor is the beneficial owner of G Club International and its assets.

205.     Among other things:

     i.    G Club International was controlled by the Debtor through his employees.

    ii.    █████████████████████████████████████

   iii.    The Debtor was responsible for generating funding for G Club International.

   iv.    ██████████████████████████████████████

    v.    ██████████████████████████████████████

206.    Under BVI law, these facts and circumstances warrant the conclusion that (a) Jovial Century International Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in G Club International only for the benefit of the Debtor; and that (b) G Club International has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

207.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

208.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that G Club International and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in G Club International, and all related rights of corporate control, to the Trustee.

## FOURTH CLAIM

**(Declaratory Judgment that G Club Operations is the Debtor's Alter Ego and Ordering Turnover of G Club Operations' Assets to Trustee)**

209.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

210.    Puerto Rico law applies to this alter ego claim because G Club Operations is a Puerto Rico entity.

211.    G Club Operations is an alter ego of the Debtor, because, among other reasons:

    i.    G Club Operations was managed by the Debtor through his agents.

    ii.    ████████████████████████████████

    iii.    G Club Operations used the same address as the Debtor and other Debtor shell companies.

    iv.    The Debtor was responsible for funding G Club Operations.

    v.    The Debtor used G Club Operations to fund personal expenses, including as a source of funding for the purchase and renovation of the Mahwah Mansion.

    vi.    The Debtor asserted the Fifth Amendment regarding his control over G Club Operations.

212.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

213.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times G Club Operations was an alter ego of the Debtor; (b) any and all of the assets held by G Club Operations at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and

all assets held by G Club Operations at any time from the date of the Debtor's February 15, 2022

chapter 11 petition to the present, constituted and constitute, as applicable, property of the

Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of G Club

Operations to the Trustee.

### FIFTH CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of G Club Operations and Its
Assets and Ordering Turnover of Ownership of G Club Operations and Its Assets to
Trustee)**

214.    The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

215.    The same facts, discussed above, establishing that G Club Operations is an

alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of G

Club Operations and its assets.

216.    At all relevant times, the Debtor was indebted to one or more creditors.

Such creditors could have pursued the relief sought herein by the Trustee in exercise of such

creditors' rights.

217.    Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and

544 of the Bankruptcy Code, (1) declaring that the ownership interests in G Club Operations and

the assets of G Club Operations, are and were at all relevant times property of the Debtor or

Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests

and related rights of corporate control in G Club Operations, and the assets of G Club Operations

to the Trustee.

## SIXTH CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of G Fashion International Limited and Its Assets and Ordering Turnover of Ownership and Its Assets of G Fashion International Limited to Trustee**

218.     The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

219.     The facts set forth herein demonstrate that the Debtor was at all relevant

times the beneficial owner of G Fashion International Limited and its assets under BVI law.

220.      Among other things:

i.    G Fashion International Limited was controlled by the Debtor through his employees.

ii.    █████████████████████████████████████████████████

iii.    The Debtor was responsible for generating funding for G Fashion International Limited.

iv.    ████████████████████████████████████████████████████████████████████████████████

221.     Under BVI law, these facts and circumstances warrant the conclusion that

(a) Jovial Century International Limited has been at all relevant times a mere nominee or "bare

trustee," considered to hold legal title to ownership interests in G Fashion International Limited

only for the benefit of the Debtor; and that (b) G Fashion International Limited has been at all

relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership

interests in assets held under its name only for the benefit of the Debtor.

222.     At all relevant times, the Debtor was indebted to one or more creditors.

Such creditors could have pursued the relief sought herein by the Trustee in exercise of such

creditors' rights.

71

223.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that the ownership interests G Fashion International Limited and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in G Fashion International Limited, and all related rights of corporate control, to the Trustee.

## SEVENTH CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of G Fashion Hold Co A Limited and Its Assets and Ordering Turnover of Ownership and Assets of G Fashion Hold Co A Limited to Trustee**

224.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

225.    The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of G Fashion Hold Co A Limited.

226.     Among other things:

    i.    G Fashion Hold Co A Limited was controlled by the Debtor through his employees.

    ii.    ███████████████████████████████████

    iii.    G Fashion Hold Co A had no bank accounts or other assets.

227.    Under BVI law, these facts and circumstances warrant the conclusion that (a) Jovial Century International Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in G Fashion Hold Co A only for the benefit of the Debtor; and that (b) G Fashion Hold Co A has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

72

228.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

229.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that G Fashion Hold Co A Limited and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in G Fashion Hold Co A Limited, and all related rights of corporate control, to the Trustee.

## EIGHTH CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of G Fashion Hold Co B Limited and Its Assets and Ordering Turnover of Ownership and Assets of G Fashion Hold Co B Limited to Trustee**

230.     The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

231.     The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of G Fashion Hold Co B Limited.

232.      Among other things:

    i.   G Fashion Hold Co B Limited was controlled by the Debtor through his employees.

    ii.   █████████████████████████████████████

    iii.   ████████████████████████████████████████
██████████████████████████████████████████

233.     Under BVI law, these facts and circumstances warrant the conclusion that (a) Jovial Century International Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in G Fashion Hold Co B only for the

73

benefit of the Debtor; and that (b) G Fashion Hold Co B has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

234.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

235.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that G Fashion Hold Co B Limited and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in G Fashion Hold Co B Limited, and all related rights of corporate control, to the Trustee.

## NINTH CLAIM

**(Declaratory Judgment that G Fashion (CA) is the Debtor's Alter Ego and Ordering Turnover of G Fashion (CA)'s Assets to Trustee)**

236.     The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

237.     California law applies to this alter ego claim because G Fashion (CA) is a California entity.

238.     G Fashion (CA) is an alter ego of the Debtor, because, among other reasons:

    i.     G Fashion (CA) was managed by the Debtor through his agents.

    ii.     The Debtor was responsible for funding G Fashion (CA).

    iii.     █████████████████████████████████████████████

74

239.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

240.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times G Fashion (CA) was an alter ego of the Debtor; (b) any and all of the assets held by G Fashion (CA) at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by G Fashion (CA) at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of G Fashion (CA) to the Trustee.

## TENTH CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of G Fashion (CA) and Its Assets and Ordering Turnover of Ownership of G Fashion (CA) and Its Assets to Trustee)**

241.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

242.    The same facts, discussed above, establishing that G Fashion (CA) is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of G Fashion (CA) and its assets.

243.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

244.    Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in G Fashion (CA), and

75

the assets of G Fashion (CA), are and were at all relevant times property of the Debtor or

Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests

and related rights of corporate control in G Fashion (CA), and the assets of G Fashion (CA) to

the Trustee.

## ELEVENTH CLAIM

**(Declaratory Judgment that GF IP, LLC is the Debtor's Alter Ego and Ordering Turnover
of GF IP, LLC's Assets to Trustee)**

245.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

246.    Delaware law applies to this alter ego claim because GF IP, LLC is a Delaware
entity.

247.    GF IP, LLC is an alter ego of the Debtor, because, among other reasons:

  i.    GF IP, LLC was managed by the Debtor through his agents.

  ii.    GF IP, LLC used the same address as the Debtor and other Debtor shell
companies.

  iii.    

  iv.

248.    At all relevant times, the Debtor was indebted to one or more creditors.

Such creditors could have pursued the relief sought herein by the Trustee in exercise of such

creditors' rights.

249.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and

544 of the Bankruptcy Code, (1) declaring that: (a) at all times GF IP, LLC was an alter ego of

the Debtor; (b) any and all of the assets held by GF IP, LLC at any time prior to the Debtor's

petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets

held by GF IP, LLC at any time from the date of the Debtor's February 15, 2022 chapter 11

petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter

11 estate; and (2) ordering the turnover of any and all of the assets of GF IP, LLC to the Trustee.

## TWELFTH CLAIM

### (Declaratory Judgment that Debtor Is Equitable Owner of GF IP, LLC and Its Assets and Ordering Turnover of Ownership of GF IP, LLC and Its Assets to Trustee)

250.     The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

251.     The same facts, discussed above, establishing that GF IP, LLC is an alter

ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of GF IP,

LLC and its assets.

252.     At all relevant times, the Debtor was indebted to one or more creditors.

Such creditors could have pursued the relief sought herein by the Trustee in exercise of such

creditors' rights.

253.     Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and

544 of the Bankruptcy Code, (1) declaring that the ownership interests in GF IP, LLC, and the

assets of GF IP, LLC, are and were at all relevant times property of the Debtor or Debtor's

chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related

rights of corporate control in GF IP, LLC, and the assets of GF IP, LLC to the Trustee.

## THIRTEENTH CLAIM

### (Declaratory Judgment that GF Italy, LLC is the Debtor's Alter Ego and Ordering Turnover of GF Italy, LLC's Assets to Trustee)

254.     The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

77

255.     Delaware law applies to this alter ego claim because GF Italy, LLC is a Delaware entity.

256.     GF Italy, LLC is an alter ego of the Debtor, because, among other reasons:

    i.     GF Italy, LLC was managed by the Debtor through his agents.

    ii.    GF Italy, LLC used the same address as the Debtor and other Debtor shell companies.

    iii.   The Debtor was responsible for funding GF Italy, LLC.

257.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

258.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times GF Italy, LLC was an alter ego of the Debtor; (b) any and all of the assets held by GF Italy, LLC at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by GF Italy, LLC at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of GF Italy, LLC to the Trustee.

## FOURTEENTH CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of GF Italy, LLC and Its Assets and Ordering Turnover of Ownership of GF Italy, LLC and Its Assets to Trustee)**

259.     The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

260.     The same facts, discussed above, establishing that GF Italy, LLC is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of GF IP, LLC and its assets.

261.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

262.     Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in GF Italy, LLC, and the assets of GF Italy, LLC are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in GF Italy, LLC, and the assets of GF Italy, LLC to the Trustee.

## FIFTEENTH CLAIM

**(Declaratory Judgment that GFashion Media Group, Inc. is the Debtor's Alter Ego and Ordering Turnover of GFashion Media Group, Inc.'s Assets to Trustee)**

263.     The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

264.     Delaware law applies to this alter ego claim because GFashion Media Group, Inc. is a Delaware entity.

265.     GFashion Media Group Inc. is an alter ego of the Debtor, because, among other reasons:

   i.     GFashion Media Group Inc. was managed by the Debtor through his agents.

   ii.    GFashion Media Group Inc. used the same address as the Debtor and other Debtor shell companies.

   iii.   The Debtor was responsible for funding GFashion Media Group Inc.

266.        At all relevant times, the Debtor was indebted to one or more creditors.

Such creditors could have pursued the relief sought herein by the Trustee in exercise of such

creditors' rights.

267.        Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and

544 of the Bankruptcy Code, (1) declaring that: (a) at all times GFashion Media Group Inc.  was

an alter ego of the Debtor; (b) any and all of the assets held by GFashion Media Group Inc.  at

any time prior to the Debtor's petition date of February 15, 2022 constituted property of the

Debtor; and (c) any and all assets held by GFashion Media Group Inc. at any time from the date

of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute,

as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and

all of the assets of GFashion Media Group Inc.to the Trustee.

## SIXTEENTH CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of GFashion Media Group Inc.
and Its Assets and Ordering Turnover of Ownership of GFashion Media Group Inc. and
Its Assets to Trustee)**

268.        The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

269.        The same facts, discussed above, establishing that GFashion Media Group

Inc. is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable

owner of GFashion Media Group Inc. and its assets.

270.        At all relevant times, the Debtor was indebted to one or more creditors.

Such creditors could have pursued the relief sought herein by the Trustee in exercise of such

creditors' rights.

80

271.     Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in GFashion Media Group Inc., and the assets of GFashion Media Group Inc. are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in GFashion Media Group Inc., and the assets of GFashion Media Group Inc. to the Trustee.

## SEVENTEENTH CLAIM

**(Declaratory Judgment that GFNY, Inc. is the Debtor's Alter Ego and Ordering Turnover of GFNY, Inc. Assets to Trustee)**

272.     The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

273.     Delaware law applies to this alter ego claim because GFNY, Inc. is a Delaware entity.

274.     GFNY, Inc. is an alter ego of the Debtor, because, among other reasons:

    i.    GFNY, Inc. was managed by the Debtor through his agents.

    ii.    GFNY, Inc. used the same address as the Debtor and other Debtor shell companies.

    iii.    The Debtor was responsible for funding GFNY Inc.

    iv.    

275.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

276.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times GFNY, Inc. was an alter ego of

the Debtor; (b) any and all of the assets held by GFNY, Inc. at any time prior to the Debtor's

petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets

held by GFNY, Inc. at any time from the date of the Debtor's February 15, 2022 chapter 11

petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter

11 estate; and (2) ordering the turnover of any and all of the assets of GFNY, Inc. to the Trustee.

## EIGHTEENTH CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of GFNY, Inc. and Its Assets and Ordering Turnover of Ownership of GFNY, Inc. and Its Assets to Trustee)**

277.    The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

278.    The same facts, discussed above, establishing that GFNY, Inc. is an alter

ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of GFNY,

Inc.  and its assets.

279.    At all relevant times, the Debtor was indebted to one or more creditors.

Such creditors could have pursued the relief sought herein by the Trustee in exercise of such

creditors' rights.

280.    Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and

544 of the Bankruptcy Code, (1) declaring that the ownership interests in GFNY, Inc., and the

assets of GFNY, Inc. are and were at all relevant times property of the Debtor or Debtor's

chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related

rights of corporate control in GFNY, Inc. and the assets of GFNY, Inc. to the Trustee.

## NINETEENTH CLAIM

**(Declaratory Judgment that G Music is the Debtor's Alter Ego and Ordering Turnover of
G Music Assets to Trustee)**

281.     The Trustee repeats and realleges the allegations contained in paragraphs
1-193.

282.     Delaware law applies to this alter ego claim because G Music is a
Delaware entity.

283.     G Music is an alter ego of the Debtor, because, among other reasons:

  i.     G Music was managed by the Debtor through his agents.

  ii.    G Music used the same address as the Debtor and other Debtor shell
         companies.

  iii.   G Music was advised by the Debtor's counsel.

  iv.    The Debtor was responsible for funding G Music.

  v.     ██████████████████████████████████████

284.     At all relevant times, the Debtor was indebted to one or more creditors.
Such creditors could have pursued the relief sought herein by the Trustee in exercise of such
creditors' rights.

285.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and
544 of the Bankruptcy Code, (1) declaring that: (a) at all times G Music was an alter ego of the
Debtor; (b) any and all of the assets held by G Music at any time prior to the Debtor's petition
date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by G
Music at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the
present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and
(2) ordering the turnover of any and all of the assets of G Music to the Trustee.

## TWENTIETH CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of G Music and Its Assets and Ordering Turnover of Ownership of G Music and Its Assets to Trustee)**

286.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

287.    The same facts, discussed above, establishing that G Music is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of G Music and its assets.

288.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

289.    Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in G Music and the assets of G Music are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in G Music and the assets of G Music to the Trustee.

## TWENTY-FIRST CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Freedom Media Ventures and Its Assets and Ordering Turnover of Ownership and Assets of Freedom Media Ventures to Trustee**

290.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

291.    The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of Freedom Media Ventures.

292.     Among other things:

84

     i.    Freedom Media Ventures was controlled by the Debtor through his employees/agents.

     ii.    The Debtor's counsel served as director of Freedom Media Ventures.

     iii.    Freedom Media Ventures had no business purpose other than to ████████ ██████████████████████████████████████████████████

293.    Under BVI law, these facts and circumstances warrant the conclusion that (a) Jovial Century International Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests Freedom Media Ventures  only for the benefit of the Debtor; and that (b) Freedom Media Ventures has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

294.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

295.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Freedom Media Ventures and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Freedom Media Ventures, and all related rights of corporate control, to the Trustee.

## **TWENTY-SECOND CLAIM**

### **Declaratory Judgment that Debtor Is True Beneficial Owner of Wise Creation and Its Assets and Ordering Turnover of Ownership and Assets of Wise Creation to Trustee**

296.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

297.    The facts set forth herein demonstrate that the Debtor at all relevant times
remained in control of Wise Creation.

298.    Among other things:

i.    Wise Creation was controlled by the Debtor through his employees/agents.

ii.    Wise Creation used the same addresses as the Debtor as the Debtor and
other Debtor shell companies.

iii.    Wise Creation was advised by the Debtor's counsel.

iv.    Wise Creation had no business purpose other than to ███████████████
████████████████████████████████████████████

v.    ████████████████████████████████████████████████

299.    Under BVI law, these facts and circumstances warrant the conclusion that
(a) Haoran He has been at all relevant times a mere nominee or "bare trustee," considered to hold
legal title to ownership interests in Wise Creation only for the benefit of the Debtor; and that
(b) Wise Creation has been at all relevant times a mere nominee or "bare trustee," considered to
hold legal title to ownership interests in assets held under its name only for the benefit of the
Debtor.

300.    At all relevant times, the Debtor was indebted to one or more creditors.
Such creditors could have pursued the relief sought herein by the Trustee in exercise of such
creditors' rights.

301.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and
544 of the Bankruptcy Code (1) declaring that Wise Creation and its assets are and were at all
relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2)
ordering the surrender of such assets, ownership interests in Wise Creation, and all related rights
of corporate control, to the Trustee.

86

## TWENTY-THIRD CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Himalaya International Financial Group Limited and Its Assets and Ordering Turnover of Ownership and Assets of Himalaya International Financial Group Limited to Trustee**

302.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

303.    The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of Himalaya International Financial Group Limited.

304.    Among other things:

    i.    Himalaya International Financial Group Limited was controlled by the Debtor through his agent, William Je, the nominal ultimate owner of Himalaya International Financial Group Limited.

    ii.    The Debtor asserted the Fifth Amendment regarding, among other things, whether any entities purportedly under the control of William Je were actually entities under the Debtor's control.

    iii.    The Debtor was responsible for funding Himalaya International Financial Group Limited.

    iv.    The Debtor used Himalaya International Financial Group Limited to fund other entities he controlled, including through the transfer of $37 million to HK USA's counsel, Zeisler & Zeisler, which funds were then placed into escrow in connection with the stipulation regarding the return of the Lady May to the United States.

    v.    The Debtor asserted the Fifth Amendment regarding, among other things, whether he controlled Himalaya International Financial Group Limited, whether he was the beneficial owner of Himalaya International Financial Group Limited, and whether all assets of Himalaya International Financial Group were under his control.

305.    Under BVI law, these facts and circumstances warrant the conclusion that (a) Major Lead International Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests Himalaya International Financial Group Limited only for the benefit of the Debtor; and that (b) Himalaya International Financial

87

Group Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

306.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

307.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Himalaya International Financial Group Limited and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Himalaya International Financial Group Limited, and all related rights of corporate control, to the Trustee.

## TWENTY-FOURTH CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Himalaya International Reserves Limited and its Assets and Ordering Turnover of Ownership and Assets of Himalaya International Reserves Limited to Trustee**

308.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

309.    The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of Himalaya International Reserves Limited.

310.    Among other things:

    i.    Himalaya International Reserves Limited was controlled by the Debtor through his agent, William Je, the nominal ultimate owner of Himalaya International Reserves Limited.

88

  ii.  The Debtor asserted the Fifth Amendment regarding, among other things, whether any entities purportedly under the control of William Je were actually entities under the Debtor's control.

  iii.  The Debtor was responsible for funding Himalaya International Reserves Limited.

311.  Under BVI law, these facts and circumstances warrant the conclusion that (a) Major Lead International Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests Himalaya International Reserves Limited only for the benefit of the Debtor; and that (b) Himalaya International Reserves Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

312.  At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

313.  Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Himalaya International Reserves Limited and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Himalaya International Reserves Limited, and all related rights of corporate control, to the Trustee.

### <u>TWENTY-FIFTH CLAIM</u>

**Declaratory Judgment that Debtor Is True Beneficial Owner of Himalaya International Clearing Limited and its Assets and Ordering Turnover of Ownership and Assets of Himalaya International Clearing Limited to Trustee**

314.  The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

315.     The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of Himalaya International Clearing Limited.

316.      Among other things:

    i.    Himalaya International Clearing Limited was controlled by the Debtor through his agent, William Je, the nominal ultimate owner of Himalaya International Clearing Limited.

    ii.    The Debtor asserted the Fifth Amendment regarding, among other things, whether any entities purportedly under the control of William Je were actually entities under the Debtor's control.

    iii.    The Debtor was responsible for funding Himalaya International Clearing Limited.

    iv.    ████████████████████████████████████████████████

317.     Under BVI law, these facts and circumstances warrant the conclusion that (a) Major Lead International Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests Himalaya International Clearing Limited only for the benefit of the Debtor; and that (b) Himalaya International Clearing Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

318.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

319.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Himalaya International Clearing Limited and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Himalaya International Clearing Limited, and all related rights of corporate control, to the Trustee.

## TWENTY-SIXTH CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Himalaya International Payments Limited and its Assets and Ordering Turnover of Ownership and Assets of Himalaya International Payments Limited to Trustee**

320.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

321.    The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of Himalaya International Payments Limited.

322.    Among other things:

    i.    Himalaya International Payments Limited was controlled by the Debtor through his agent, William Je, the nominal ultimate owner of Himalaya International Payments Limited.

    ii.    The Debtor asserted the Fifth Amendment regarding, among other things, whether any entities purportedly under the control of William Je were actually entities under the Debtor's control.

    iii.    The Debtor was responsible for funding Himalaya International Payments Limited.

323.    Under BVI law, these facts and circumstances warrant the conclusion that (a) Major Lead International Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests Himalaya International Payments Limited only for the benefit of the Debtor; and that (b) Himalaya International Payments Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

324.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

325.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and

544 of the Bankruptcy Code (1) declaring that Himalaya International Payments Limited and its

assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as

applicable, and (2) ordering the surrender of such assets, ownership interests in Himalaya

International Payments Limited, and all related rights of corporate control, to the Trustee.

## TWENTY-SEVENTH CLAIM

### Declaratory Judgment that Debtor Is True Beneficial Owner of Himalaya Currency Clearing Pty Ltd and its Assets and Ordering Turnover of Ownership and Himalaya Currency Clearing Pty Ltd to Trustee

326.    The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

327.    The facts set forth herein demonstrate that the Debtor at all relevant times

remained in control of Himalaya Currency Clearing Pty Ltd.

328.     Among other things:

i.    Himalaya Currency Clearing Pty Ltd was controlled by the Debtor through his agent, William Je, the nominal ultimate owner of Himalaya Currency Clearing Pty Ltd.

ii.    The Debtor asserted the Fifth Amendment regarding, among other things, whether any entities purportedly under the control of William Je were actually entities under the Debtor's control.

iii.    The Debtor was responsible for funding Himalaya Currency Clearing Pty Ltd.

329.    Under Australian law, these facts and circumstances warrant the

conclusion that (a) Major Lead International Limited has been at all relevant times a mere

nominee or "bare trustee," considered to hold legal title to ownership interests Himalaya

Currency Clearing Pty Ltd. only for the benefit of the Debtor; and that (b) Himalaya Currency

Clearing Pty Ltd. has been at all relevant times a mere nominee or "bare trustee," considered to

92

hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

330.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

331.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Himalaya Currency Clearing Pty Ltd. and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Himalaya Currency Clearing Pty Ltd., and all related rights of corporate control, to the Trustee.

## TWENTY-EIGHTH CLAIM

**(Declaratory Judgment that Rule of Law Foundation III, Inc is the Debtor's Alter Ego and Ordering Turnover of Rule of Law Foundation's Assets to Trustee)**

332.     The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

333.     Delaware law applies to this alter ego claim because Rule of Law Foundation is a Delaware entity.

334.     Rule of Law Foundation is an alter ego of the Debtor, because, among other reasons:

     i.    Rule of Law Foundation was managed by the Debtor through his agents.

     ii.    Rule of Law Foundation was formed by the Debtor through his counsel.

     iii.    Rule of Law Foundation used the same address as the Debtor and other Debtor shell companies.

     iv.    The Debtor was responsible for funding Rule of Law Foundation

93

v. ███████████████████████████████████

335.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

336.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Rule of Law Foundation was an alter ego of the Debtor; (b) any and all of the assets held by Rule of Law Foundation at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Rule of Law Foundation at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Rule of Law Foundation to the Trustee.

## TWENTY-NINTH CLAIM

**(Declaratory Judgment that Debtor Is Equitable Owner of Rule of Law Foundation and Its Assets and Ordering Turnover of Ownership of Rule of Law Foundation and Its Assets to Trustee)**

337.     The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

338.     The same facts, discussed above, establishing that Rule of Law Foundation is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of Rule of Law Foundation and its assets.

339.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

94

340.    Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and

544 of the Bankruptcy Code, (1) declaring that the ownership interests in Rule of Law

Foundation and the assets of Rule of Law Foundation are and were at all relevant times property

of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of

ownership interests and related rights of corporate control in Rule of Law Foundation and the

assets of Rule of Law Foundation to the Trustee.

## **THIRTIETH CLAIM**

**(Declaratory Judgment that Rule of Law Society is the Debtor's Alter Ego and Ordering
Turnover of Rule of Law Society's Assets to Trustee)**

341.    The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

342.    Delaware law applies to this alter ego claim because Rule of Law Society

is a Delaware entity.

343.    Rule of Law Society is an alter ego of the Debtor, because, among other

reasons:

    i.    Rule of Law Society was managed by the Debtor through his agents.

    ii.    Rule of Law Society was formed by the Debtor through his counsel.

    iii.    Rule of Law Society used the same address as the Debtor and other Debtor
shell companies.

    iv.    The Debtor was responsible for funding Rule of Law Society.

    v.    ██████████████████████████████████████

344.    At all relevant times, the Debtor was indebted to one or more creditors.

Such creditors could have pursued the relief sought herein by the Trustee in exercise of such

creditors' rights.

345.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Rule of Law Society was an alter ego of the Debtor; (b) any and all of the assets held by Rule of Law Society at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Rule of Law Society at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Rule of Law Society to the Trustee.

## THIRTY-FIRST CLAIM

### (Declaratory Judgment that Debtor Is Equitable Owner of Rule of Law Society and Its Assets and Ordering Turnover of Ownership of Rule of Law Society and Its Assets to Trustee)

346.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

347.    The same facts, discussed above, establishing that Rule of Law Society is an alter ego of the Debtor, also support the conclusion that the Debtor is the equitable owner of Rule of Law Society and its assets.

348.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

349.    Accordingly, the Trustee seeks a ruling, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Rule of Law Society and the assets of Rule of Law Society are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests

96

and related rights of corporate control in Rule of Law Society and the assets of Rule of Law

Society to the Trustee.

## **THIRTY-SECOND CLAIM**

**Declaratory Judgment that Debtor Is True Beneficial Owner of ACA Capital Group and
Its Assets and Ordering Turnover of Ownership and Assets of ACA Capital Group to
Trustee**

350.     The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

351.     The facts set forth herein demonstrate that the Debtor at all relevant times

remained in control of ACA Capital Group.

352.      Among other things:

    i.     ACA Capital Group was controlled by the Debtor through his agents,
including William Je, nominal ultimate owner of ACA Capital Group.

    ii.     ACA Capital Group has used the same address as the Debtor and other
Debtor shell companies.

    iii.     The Debtor asserted the Fifth Amendment regarding, among other things,
whether any entities purportedly under the control of William Je were
actually entities under the Debtor's control.

    iv.     The Debtor has been responsible for funding ACA Capital Group.

    v.     ██████████████████████████████████████

    vi.     The Debtor asserted the Fifth Amendment regarding, among other things,
whether he controlled ACA Capital Group and its assets.

353.     Under Hong Kong law, these facts and circumstances warrant the

conclusion that (a) Celestial Tide Limited has been at all relevant times a mere nominee or "bare

trustee," considered to hold legal title to ownership interests in ACA Capital Group only for the

benefit of the Debtor; and that (b) ACA Capital Group has been at all relevant times a mere

nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

354.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

355.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that ACA Capital Group and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in ACA Capital Group, and all related rights of corporate control, to the Trustee.

## THIRTY-THIRD CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Hamilton Capital Holding Limited and Its Assets and Ordering Turnover of Ownership and Assets of Hamilton Capital Holding Limited to Trustee**

356.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

357.    The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of Hamilton Capital Holding Limited.

358.     Among other things:

i.    Hamilton Capital Holding Limited was controlled by the Debtor through his agents, including William Je, nominal ultimate owner of Hamilton Capital Holding Limited.

ii.    The Debtor asserted the Fifth Amendment regarding, among other things, whether any entities purportedly under the control of William Je were actually entities under the Debtor's control.

iii.    ███████████████████████████████████████████████

98



iv.

359.      Under United Kingdom law, these facts and circumstances warrant the conclusion that (a) William Je has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in Hamilton Capital Holding Limited only for the benefit of the Debtor; and that (b) Hamilton Capital Holding Limited has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

360.      At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

361.      Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Hamilton Capital Holding Limited and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Hamilton Capital Holding Limited, and all related rights of corporate control, to the Trustee.

## THIRTY-FOURTH CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Hamilton Investment Management Ltd. and Its Assets and Ordering Turnover of Ownership and Assets of Hamilton Investment Management Ltd. to Trustee**

362.      The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

363.     The facts set forth herein demonstrate that the Debtor at all relevant times

remained in control of Hamilton Investment Management Ltd.

364.      Among other things:

    i.   Hamilton Investment Management Ltd. was controlled by the Debtor
through his agents, including William Je, nominal ultimate owner of
Hamilton Capital Holding Limited.

    ii.   The Debtor asserted the Fifth Amendment regarding, among other things,
whether any entities purportedly under the control of William Je were
actually entities under the Debtor's control.

    iii.



    iv.

365.     Under BVI law, these facts and circumstances warrant the conclusion that

(a) William Je has been at all relevant times a mere nominee or "bare trustee," considered to hold

legal title to ownership interests in Hamilton Investment Management Ltd. only for the benefit of

the Debtor; and that (b) Hamilton Investment Management Ltd. has been at all relevant times a

mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets

held under its name only for the benefit of the Debtor.

366.     At all relevant times, the Debtor was indebted to one or more creditors.

Such creditors could have pursued the relief sought herein by the Trustee in exercise of such

creditors' rights.

367.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and

544 of the Bankruptcy Code (1) declaring that Hamilton Investment Management Ltd. and its

assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as

applicable, and (2) ordering the surrender of such assets, ownership interests in Hamilton

Investment Management Ltd., and all related rights of corporate control, to the Trustee.

## THIRTY-FIFTH CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Hamilton Opportunity Fund and Its Assets and Ordering Turnover of Ownership and Assets of Hamilton Opportunity Fund to Trustee**

368.    The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

369.    The facts set forth herein demonstrate that the Debtor at all relevant times

remained in control of Hamilton Opportunity Fund.

370.     Among other things:

   i.   Hamilton Opportunity Fund was controlled by the Debtor through his agents, including William Je, nominal ultimate owner of Hamilton Capital Holding Limited.

   ii.  The Debtor asserted the Fifth Amendment regarding, among other things, whether any entities purportedly under the control of William Je were actually entities under the Debtor's control.



371.    Under Cayman Islands law, these facts and circumstances warrant the

conclusion that (a) William Je has been at all relevant times a mere nominee or "bare trustee,"

considered to hold legal title to ownership interests in Hamilton Opportunity Fund only for the

benefit of the Debtor; and that (b) Hamilton Opportunity Fund has been at all relevant times a

mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets

held under its name only for the benefit of the Debtor.

101

372.      At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

373.      Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Hamilton Opportunity Fund and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Hamilton Opportunity Fund and all related rights of corporate control, to the Trustee.

## THIRTY-SIXTH CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of China Golden Spring and Its Assets and Ordering Turnover of Ownership and Assets of China Golden Spring to Trustee**

374.      The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

375.      The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of China Golden Spring.

376.       Among other things:

    i.    China Golden Spring was controlled by the Debtor through his agents.

    ii.    The nominal owner of China Golden Spring is the Debtor's son, Qiang Guo.  The Debtor asserted the Fifth Amendment regarding whether all assets held in the name of Qiang Guo were really assets of his estate.

    iii.    China Golden Spring has used the same address as the Debtor and other Debtor shell companies.

    iv.    The Hong Kong Restraint Order identified China Golden Spring's bank accounts as controlled by the Debtor.

    v.    China Golden Spring is the parent company of Golden Spring, which this Court found to be the Debtor's alter ego.

102

vi.    The Debtor asserted the Fifth Amendment regarding whether he had
control over China Golden Spring.

377.    Under Hong Kong law, these facts and circumstances warrant the

conclusion that (a) Qiang Guo has been at all relevant times a mere nominee or "bare trustee,"

considered to hold legal title to ownership interests in China Golden Spring only for the benefit

of the Debtor; and that (b) China Golden Spring has been at all relevant times a mere nominee or

"bare trustee," considered to hold legal title to ownership interests in assets held under its name

only for the benefit of the Debtor.

378.    At all relevant times, the Debtor was indebted to one or more creditors.

Such creditors could have pursued the relief sought herein by the Trustee in exercise of such

creditors' rights.

379.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and

544 of the Bankruptcy Code (1) declaring that China Golden Spring and its assets are and were

at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2)

ordering the surrender of such assets, ownership interests in China Golden Spring and all related

rights of corporate control, to the Trustee.

## THIRTY-SEVENTH CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of K Legacy and Its Assets
(Including the London Apartment) and Ordering Turnover of Ownership and Assets
(Including the London Apartment) of K Legacy to Trustee**

380.    The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

381.    The facts set forth herein demonstrate that the Debtor at all relevant times

remained in control of K Legacy.

382.     Among other things:

103

    i.    K Legacy was controlled by the Debtor through his son, Qiang Guo.

    ii.    The nominal owner of K Legacy is the Debtor's son, Qiang Guo.  The Debtor asserted the Fifth Amendment regarding whether all assets held in the name of Qiang Guo were really assets of his estate.

    iii.    The Debtor's London Apartment is K Legacy's only asset and K Legacy's only business purpose is to hold title to the Debtor's London Apartment. The Debtor exercised control and dominion over the London Apartment.

    iv.    The Debtor funded the purchase of the London Apartment.

    v.



    vi.    The Debtor asserted the Fifth Amendment regarding whether K Legacy was in fact an entity owned and controlled by him.

383.    Under BVI law, these facts and circumstances warrant the conclusion that (a) Qiang Guo has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in K Legacy only for the benefit of the Debtor; and that (b) K Legacy has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name (including the London Apartment) only for the benefit of the Debtor.

384.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

385.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that K Legacy and its assets (including the London Apartment) are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets (including the London

Apartment), ownership interests in K Legacy and all related rights of corporate control, to the

Trustee.

## **THIRTY-EIGHTH CLAIM**

### **Declaratory Judgment that Debtor Is True Beneficial Owner of Bravo Luck and Its Assets and Ordering Turnover of Ownership and Assets of Bravo Luck to Trustee**

386.    The Trustee repeats and realleges the allegations contained in paragraphs

1-193.

387.    The facts set forth herein demonstrate that the Debtor at all relevant times

remained in control of Bravo Luck and its assets.

388.    Among other things:

i.    Bravo Luck was controlled by the Debtor through his son, Qiang Guo.

ii.    The nominal owner of Bravo Luck is the Debtor's son, Qiang Guo.  The Debtor asserted the Fifth Amendment regarding whether all assets held in the name of Qiang Guo were really assets of his estate.

iii.    Bravo Luck has used the same address as the Debtor and other Debtor shell companies.

iv.    Bravo Luck served the Debtor as a vehicle for funneling money from his other alter ego entities to be used for funding purchases of assets such as the Lady May and Sherry Netherland Apartment.

v.    The Debtor has represented that Bravo Luck's assets were his assets.

vi.    The Debtor asserted the Fifth Amendment regarding whether he controlled Bravo Luck.

389.    Under BVI law, these facts and circumstances warrant the conclusion that

(a) Qiang Guo has been at all relevant times a mere nominee or "bare trustee," considered to hold

legal title to ownership interests in Bravo Luck only for the benefit of the Debtor; and that (b)

Bravo Luck has been at all relevant times a mere nominee or "bare trustee," considered to hold

legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

105

390.      At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

391.      Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Bravo Luck and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Bravo Luck and all related rights of corporate control, to the Trustee.

## **THIRTY-NINTH CLAIM**

**Declaratory Judgment that Debtor Is True Beneficial Owner of Leading Shine BVI and Its Assets and Ordering Turnover of Ownership and Assets of Leading Shine BVI to Trustee**

392.      The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

393.      The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of Leading Shine BVI.

394.       Among other things:

    i.      Leading Shine BVI was controlled by the Debtor through his son, Qiang Guo.

    ii.      The nominal owner of Leading Shine BVI is the Debtor's son, Qiang Guo. The Debtor asserted the Fifth Amendment regarding whether all assets held in the name of Qiang Guo were really assets of his estate.

    iii.      Leading Shine BVI has used the same address as the Debtor and other Debtor shell companies.

    iv.      Leading Shine BVI has served the Debtor as a vehicle for holding title to the Debtor's residence: the South Bay Property.

    v.      The Hong Kong Restraint Order identified the South Bay Property as controlled by the Debtor.

vi. ███████████████████████████████████████

vii. The Debtor asserted the Fifth Amendment regarding whether he controlled Leading Shine BVI.

395. Under BVI law, these facts and circumstances warrant the conclusion that (a) Qiang Guo has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in Leading Shine BVI only for the benefit of the Debtor; and that (b) Leading Shine BVI has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

396. At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

397. Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Leading Shine BVI and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Leading Shine BVI and all related rights of corporate control, to the Trustee.

## **FORTIETH CLAIM**

**Declaratory Judgment that Debtor Is True Beneficial Owner of Anton Development and Its Assets and Ordering Turnover of Ownership and Assets of Anton Development to Trustee**

398. The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

399.     The facts set forth herein demonstrate that the Debtor at all relevant times

remained in control of Anton Development.

400.     Among other things:

i.     Prior to 2017, Anton Development was controlled by the Debtor through his employee/chef, Han Chunguang, who was nominal owner of Anton Development prior to transferring nominal ownership of Anton Development to the Debtor's daughter, Mei Guo for no consideration in 2017.  Since 2017, the Debtor has controlled Anton Development through Mei Guo.

ii.     The Debtor asserted the Fifth Amendment regarding whether he controlled Han Chunguang.  The Debtor asserted the Fifth Amendment regarding whether all assets held in the name of Mei Guo were really assets of his estate.

iii.     Anton Development has used the same address as the Debtor and other Debtor shell companies.

iv.     The Debtor used Anton Development to hold title to his Bombardier Jet, which it obtained in 2016 for no consideration from Head Win Group, an entity owned by the Debtor. In 2018, Anton Development transferred title to the jet to Whitecroft, an entity nominally owed by Mei Guo, for no consideration.

v.     The Hong Kong Restraint Order identified Anton Development's bank account as controlled by the Debtor.

vi.     The Debtor used Anton Development ███████████████████████ ███████████████████████████████████████████████████ ███████████

vii.     The Debtor asserted the Fifth Amendment regarding whether he controlled Anton Development.

401.     Under Hong Kong law, these facts and circumstances warrant the

conclusion that (a) Mei Guo has been at all relevant times a mere nominee or "bare trustee,"

considered to hold legal title to ownership interests in Anton Development only for the benefit of

the Debtor; and that (b) Anton Development has been at all relevant times a mere nominee or

"bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

402.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

403.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Anton Development and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Anton Development and all related rights of corporate control, to the Trustee.

## FORTY-FIRST CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Eastern Profit and Its Assets and Ordering Turnover of Ownership and Assets of Eastern Profit to Trustee**

404.    The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

405.    The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of Eastern Profit.

406.    Among other things:

i.    Prior to 2017, Eastern Profit was controlled by the Debtor through his employee/chef, Han Chunguang, who was nominal owner of Eastern Profit prior to transferring nominal ownership of Eastern Profit to the Debtor's daughter, Mei Guo for no consideration in 2017.  Since 2017, the Debtor has controlled Eastern Profit through Mei Guo.

ii.    The Debtor asserted the Fifth Amendment regarding whether he controlled Han Chunguang.  The Debtor asserted the Fifth Amendment regarding whether all assets held in the name of Mei Guo were really assets of his estate.

109

      iii.    Eastern Profit has used the same address as the Debtor and other Debtor shell companies.

      iv.    The Hong Kong Restraint Order identified Eastern Profit's bank account as controlled by the Debtor.

      v.    The Debtor used Eastern Profit to, among other things, ███████████ ████████████████████ and enter into a contract with Strategic Vision, in connection with which Judge Liman found Eastern Profit to be a shell company of the Debtor.

      vi.    The Debtor asserted the Fifth Amendment regarding whether he controlled Eastern Profit.

407.     Under Hong Kong law, these facts and circumstances warrant the conclusion that (a) Mei Guo has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in Eastern Profit only for the benefit of the Debtor; and that (b) Eastern Profit has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

408.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

409.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Eastern Profit and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Eastern Profit and all related rights of corporate control, to the Trustee.

## FORTY-SECOND CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Alfa Global and Its Assets and Ordering Turnover of Ownership and Assets of Alfa Global to Trustee**

410.     The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

411.     The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of Alfa Global.

412.      Among other things:

i.     Prior to 2018, Alfa Global was controlled by the Debtor through his relative Guo Lije who was nominal owner of Alfa Global prior to transferring nominal ownership of Alfa Global to the Debtor's translator, Karin Maistrello, for no apparent consideration in 2018.  Since 2018, the Debtor has controlled Alfa Global through Karin Maistrello.

ii.     ██████████████████████

iii.     The Hong Kong Restraint Order identified Alfa Global's bank accounts as controlled by the Debtor.

iv.     The Debtor asserted the Fifth Amendment regarding whether he controlled Alfa Global.

413.     Under BVI law, these facts and circumstances warrant the conclusion that (a) Karin Maistrello has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in Alfa Global only for the benefit of the Debtor; and that (b) Alfa Global has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

414.     At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

111

415.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Alfa Global and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Alfa Global and all related rights of corporate control, to the Trustee.

## FORTY-THIRD CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Alfonso Global and Its Assets and Ordering Turnover of Ownership and Assets of Alfonso Global to Trustee**

416.     The Trustee repeats and realleges the allegations contained in paragraphs 1-193.

417.     The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of Alfonso Global.

418.      Among other things:

    i.     Prior to 2016, Alfonso Global was controlled by the Debtor through his relative, Zhang Wei, who was nominal owner of Alfonso Global prior to transferring nominal ownership of Alfonso Global to Next Tycoon Investments Limited an entity that is controlled by the Debtor, for no apparent consideration in 2016.  Since 2016, the Debtor has controlled Alfonso Global through Next Tycoon Investments Limited, and the Debtor's employee Max Krasner has served as sole director of Alfonso Global since 2018.

    ii.     ███████████████████████████████

    iii.     The Hong Kong Restraint Order identified Alfonso Global's bank accounts as controlled by the Debtor.

    iv.     The Debtor asserted the Fifth Amendment regarding whether he controlled Alfonso Global.

419.     Under BVI law, these facts and circumstances warrant the conclusion that (a) Next Tycoon Investments Limited has been at all relevant times a mere nominee or "bare

112

trustee," considered to hold legal title to ownership interests in Alfonso Global only for the benefit of the Debtor; and that (b) Alfonso Global has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

420.    At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

421.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that Alfonso Global and its assets are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable, and (2) ordering the surrender of such assets, ownership interests in Alfonso Global and all related rights of corporate control, to the Trustee.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that judgment be entered as follows:

1.    On the First Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times Saraca was an alter ego of the Debtor; (b) any and all of the assets held by Saraca any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Saraca at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Saraca to the Trustee;

2.    On the Second Claim, an order, pursuant to sections 541, 542, and 544 of the

113

Bankruptcy Code, (1) declaring that the ownership interests in Saraca, and the assets of Saraca, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Saraca, and the assets of Saraca, to the Trustee;

3.      On the Third Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in G Club International purportedly held by Jovial Century International Limited, and the assets of G Club International, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in G Club International, and the assets of G Club International, to the Trustee;

4.      On the Fourth Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times G Club Operations was an alter ego of the Debtor; (b) any and all of the assets held by G Club Operations any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by G Club Operations at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of G Club Operations to the Trustee;

5.      On the Fifth Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in G Club Operations, and the assets of G Club Operations, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in G Club Operations, and the assets of G Club Operations, to the

114

Trustee;

6.      On the Sixth Claim, an order, pursuant to sections 541, 542, and 544 of the
Bankruptcy Code, (1) declaring that the ownership interests in G Fashion International Limited
purportedly held by Jovial Century International Limited, and the assets of G Fashion
International Limited, are and were at all relevant times property of the Debtor or Debtor's
chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related
rights of corporate control in G Fashion International Limited, and the assets of G Fashion
International Limited, to the Trustee;

7.      On the Seventh Claim, an order, pursuant to sections 541, 542, and 544 of the
Bankruptcy Code, (1) declaring that the ownership interests in G Fashion Hold Co A Limited
purportedly held by Jovial Century International Limited, and the assets of G Fashion Hold Co A
Limited, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate,
as applicable; and (2) ordering the surrender of ownership interests and related rights of
corporate control in G Fashion Hold Co A Limited , and the assets of G Fashion Hold Co A
Limited, to the Trustee;

8.      On the Eighth Claim, an order, pursuant to sections 541, 542, and 544 of the
Bankruptcy Code, (1) declaring that the ownership interests in G Fashion Hold Co B Limited
purportedly held by Jovial Century International Limited, and the assets of G Fashion Hold Co B
Limited, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate,
as applicable; and (2) ordering the surrender of ownership interests and related rights of
corporate control in G Fashion Hold Co B Limited , and the assets of G Fashion Hold Co B
Limited, to the Trustee;

9.      On the Ninth Claim, an order, pursuant to sections 541, 542, and 544 of the

115

Bankruptcy Code, (1) declaring that: (a) at all times G Fashion (CA) was an alter ego of the

Debtor; (b) any and all of the assets held by G Fashion (CA) any time prior to the Debtor's

petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets

held by G Fashion (CA) at any time from the date of the Debtor's February 15, 2022 chapter 11

petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter

11 estate; and (2) ordering the turnover of any and all of the assets of G Fashion (CA) to the

Trustee;

   10. On the Tenth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that the ownership interests in G Fashion (CA), and the assets of

G Fashion (CA), are and were at all relevant times property of the Debtor or Debtor's chapter 11

estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of

corporate control in G Fashion (CA), and the assets of G Fashion (CA), to the Trustee;

   11. On the Eleventh Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that: (a) at all times GF IP, LLC was an alter ego of the Debtor;

(b) any and all of the assets held by GF IP, LLC any time prior to the Debtor's petition date of

February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by GF IP,

LLC at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the

present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and

(2) ordering the turnover of any and all of the assets of GF IP, LLC to the Trustee;

   12. On the Twelfth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that the ownership interests in GF IP, LLC, and the assets of GF

IP, LLC, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate,

as applicable; and (2) ordering the surrender of ownership interests and related rights of

corporate control in GF IP, LLC, and the assets of GF IP, LLC, to the Trustee;

13.    On the Thirteenth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that: (a) at all times GF Italy, LLC was an alter ego of the

Debtor; (b) any and all of the assets held by GF Italy, LLC any time prior to the Debtor's petition

date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by

GF Italy, LLC at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to

the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate;

and (2) ordering the turnover of any and all of the assets of GF Italy, LLC to the Trustee;

14.    On the Fourteenth  Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that the ownership interests in GF Italy, LLC, and the assets of

GF Italy, LLC, are and were at all relevant times property of the Debtor or Debtor's chapter 11

estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of

corporate control in GF Italy, LLC, and the assets of GF Italy, LLC, to the Trustee;

15.    On the Fifteenth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that: (a) at all times GFashion Media Group Inc. was an alter ego

of the Debtor; (b) any and all of the assets held by GFashion Media Group Inc. any time prior to

the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any

and all assets held by GFashion Media Group Inc. at any time from the date of the Debtor's

February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable,

property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the

assets of GFashion Media Group Inc. to the Trustee;

16.    On the Sixteenth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that the ownership interests in GFashion Media Group Inc., and

117

the assets of GFashion Media Group Inc., are and were at all relevant times property of the

Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership

interests and related rights of corporate control in GFashion Media Group Inc., and the assets of

GFashion Media Group Inc., to the Trustee;

17.     On the Seventeenth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that: (a) at all times GFNY, Inc. was an alter ego of the Debtor;

(b) any and all of the assets held by GFNY, Inc. any time prior to the Debtor's petition date of

February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by GFNY,

Inc. at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the

present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and

(2) ordering the turnover of any and all of the assets of GFNY, Inc. to the Trustee;

18.     On the Eighteenth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that the ownership interests in GFNY, Inc., and the assets of

GFNY, Inc., are and were at all relevant times property of the Debtor or Debtor's chapter 11

estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of

corporate control in GFNY, Inc., and the assets of GFNY, Inc., to the Trustee;

19.     On the Nineteenth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that: (a) at all times G Music was an alter ego of the Debtor;

(b) any and all of the assets held by G Music any time prior to the Debtor's petition date of

February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by G Music

at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present,

constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and

(2) ordering the turnover of any and all of the assets of G Music to the Trustee;

118

20.     On the Twentieth Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in G Music, and the assets of G Music, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in G Music, and the assets of G Music, to the Trustee;

21.     On the Twenty-First Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Freedom Media Ventures purportedly held by Jovial Century International Limited, and the assets of Freedom Media Ventures, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Freedom Media Ventures, and the assets of Freedom Media Ventures, to the Trustee;

22.     On the Twenty-Second Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Wise Creation purportedly held by Haoran He, and the assets of Wise Creation, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Wise Creation, and the assets of Wise Creation, to the Trustee;

23.     On the Twenty-Third Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Himalaya International Financial Group Limited purportedly held by Major Lead International Limited, and the assets of Himalaya International Financial Group Limited, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of

119

ownership interests and related rights of corporate control in Himalaya International Financial

Group Limited, and the assets of Himalaya International Financial Group Limited, to the

Trustee;

24.    On the Twenty-Fourth Claim, an order, pursuant to sections 541, 542, and 544 of

the Bankruptcy Code, (1) declaring that the ownership interests in Himalaya International

Reserves Limited purportedly held by Major Lead International Limited, and the assets of

Himalaya International Reserves Limited, are and were at all relevant times property of the

Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership

interests and related rights of corporate control in Himalaya International Reserves Limited, and

the assets of Himalaya International Reserves Limited, to the Trustee;

25.    On the Twenty-Fifth Claim, an order, pursuant to sections 541, 542, and 544 of

the Bankruptcy Code, (1) declaring that the ownership interests in Himalaya International

Clearing Limited purportedly held by Major Lead International Limited, and the assets of

Himalaya International Clearing Limited, are and were at all relevant times property of the

Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership

interests and related rights of corporate control in Himalaya International Clearing Limited, and

the assets of Himalaya International Clearing Limited, to the Trustee;

26.    On the Twenty-Sixth Claim, an order, pursuant to sections 541, 542, and 544 of

the Bankruptcy Code, (1) declaring that the ownership interests in Himalaya International

Payments Limited purportedly held by Major Lead International Limited, and the assets of

Himalaya International Payments Limited, are and were at all relevant times property of the

Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership

interests and related rights of corporate control in Himalaya International Payments Limited, and

120

the assets of Himalaya International Payments Limited, to the Trustee;

27.     On the Twenty-Seventh Claim, an order, pursuant to sections 541, 542, and 544
of the Bankruptcy Code, (1) declaring that the ownership interests in Himalaya Currency
Clearing Pty Ltd. purportedly held by Major Lead International Limited, and the assets of
Himalaya Currency Clearing Pty Ltd., are and were at all relevant times property of the Debtor
or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests
and related rights of corporate control in Himalaya Currency Clearing Pty Ltd., and the assets of
Himalaya Currency Clearing Pty Ltd., to the Trustee;

28.     On the Twenty-Eighth Claim, an order, pursuant to sections 541, 542, and 544 of
the Bankruptcy Code, (1) declaring that: (a) at all times Rule of Law Foundation was an alter ego
of the Debtor; (b) any and all of the assets held by Rule of Law Foundation any time prior to the
Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and
all assets held by Rule of Law Foundation at any time from the date of the Debtor's February 15,
2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the
Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Rule of
Law Foundation to the Trustee;

29.     On the Twenty-Ninth Claim, an order, pursuant to sections 541, 542, and 544 of
the Bankruptcy Code, (1) declaring that the ownership interests in Rule of Law Foundation, and
the assets of Rule of Law Foundation, are and were at all relevant times property of the Debtor or
Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests
and related rights of corporate control in Rule of Law Foundation, and the assets of Rule of Law
Foundation, to the Trustee;

30.     On the Thirtieth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that: (a) at all times Rule of Law Society was an alter ego of the Debtor; (b) any and all of the assets held by Rule of Law Society any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by Rule of Law Society at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; and (2) ordering the turnover of any and all of the assets of Rule of Law Society to the Trustee;

31.    On the Thirty-First Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Rule of Law Society, and the assets of Rule of Law Society, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Rule of Law Society, and the assets of Rule of Law Society, to the Trustee;

32.    On the Thirty-Second Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in ACA Capital Group purportedly held by Celestial Tide Limited, and the assets of ACA Capital Group, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in ACA Capital Group, and the assets of ACA Capital Group, to the Trustee;

33.    On the Thirty-Third Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Hamilton Capital Holding Limited purportedly held by William Je, and the assets of Hamilton Capital Holding Limited, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable;

122

and (2) ordering the surrender of ownership interests and related rights of corporate control in

Hamilton Capital Holding Limited, and the assets of Hamilton Capital Holding Limited, to the

Trustee;

34.    On the Thirty-Fourth Claim, an order, pursuant to sections 541, 542, and 544 of

the Bankruptcy Code, (1) declaring that the ownership interests in Hamilton Investment

Management Ltd. purportedly held by William Je, and the assets of Hamilton Investment

Management Ltd., are and were at all relevant times property of the Debtor or Debtor's chapter

11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights

of corporate control in Hamilton Investment Management Ltd., and the assets of Hamilton

Investment Management Ltd., to the Trustee;

35.    On the Thirty-Fifth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that the ownership interests in Hamilton Opportunity Fund

purportedly held by William Je, and the assets of Hamilton Opportunity Fund, are and were at all

relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and

(2) ordering the surrender of ownership interests and related rights of corporate control in

Hamilton Opportunity Fund, and the assets of Hamilton Opportunity Fund, to the Trustee;

36.    On the Thirty-Sixth Claim, an order, pursuant to sections 541, 542, and 544 of the

Bankruptcy Code, (1) declaring that the ownership interests in China Golden Spring purportedly

held by Qiang Guo, and the assets of China Golden Spring, are and were at all relevant times

property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender

of ownership interests and related rights of corporate control in China Golden Spring, and the

assets of China Golden Spring, to the Trustee;

37.    On the Thirty-Seventh Claim, an order, pursuant to sections 541, 542, and 544 of

the Bankruptcy Code, (1) declaring that the ownership interests in K Legacy purportedly held by Qiang Guo, and the assets of K Legacy (including the London Apartment), are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and all related rights of corporate control in K Legacy, and the assets of K Legacy (including the London Apartment), to the Trustee;

38.    On the Thirty-Eighth Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Bravo Luck purportedly held by Qiang Guo, and the assets of Bravo Luck, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Bravo Luck, and the assets of Bravo Luck, to the Trustee;

39.    On the Thirty-Ninth Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Leading Shine BVI purportedly held by Qiang Guo, and the assets of Leading Shine BVI, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Leading Shine BVI, and the assets of Leading Shine BVI, to the Trustee;

40.    On the Fortieth Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Anton Development purportedly held by Mei Guo, and the assets of Anton Development, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Anton Development, and the assets of Anton Development, to the Trustee;

41.     On the Forty-First Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Eastern Profit purportedly held by Mei Guo, and the assets of Eastern Profit, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Eastern Profit, and the assets of Eastern Profit, to the Trustee;

42.     On the Forty-Second Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Alfa Global purportedly held by Karin Maistrello, and the assets of Alfa Global, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Alfa Global, and the assets of Alfa Global, to the Trustee;

43.     On the Forty-Third Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Alfonso Global purportedly held by Next Tycoon Investments Limited, and the assets of Alfonso Global, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Alfonso Global, and the assets of Alfonso Global, to the Trustee;

44.     Reasonable attorneys' fees, costs, and expenses incurred in this action; and

45.     Such other and further relief as the Court may deem just, proper, or equitable under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

125

Dated:   February 15, 2024      LUC A. DESPINS,
           New Haven, Connecticut    CHAPTER 11 TRUSTEE

By: */s/ Douglass Barron*
    Avram E. Luft *(pro hac vice* pending)
    Douglass Barron (*pro hac vice* pending)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    aviluft@paulhastings.com
    douglassbarron@paulhastings.com

    *and*

    Nicholas A. Bassett *(pro hac vice* pending)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

    *and*

    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    plinsey@npmlaw.com

    *Counsel for the Chapter 11 Trustee*

126