```
                    UNITED STATES BANKRUPTCY COURT
                      DISTRICT OF CONNECTICUT
                         BRIDGEPORT DIVISION

In Re                           *   Case No. 22-50073 (JAM)
                                *
HO WAN KWOK and GENEVER         *   Bridgeport, Connecticut
 HOLDINGS CORPORATION,          *   February 27, 2024
                                *
              Debtors.          *
                                *
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

                    TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE JULIE A. MANNING
                UNITED STATES BANKRUPTCY JUDGE

#2941  ORDER GRANTING REQUEST FOR STATUS CONFERENCE

APPEARANCES:

| | |
|---|---|
| For the Chapter 11 Trustee: | NICHOLAS A. BASSETT, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| | PATRICK R. LINSEY, ESQ.<br>Neubert Pepe and Monteith<br>195 Church Street,13th Floor<br>New Haven, CT  06510 |
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| For the U.S. Trustee: | HOLLEY L. CLAIBORN, ESQ.<br>Office of the United States<br> Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**Shelton, CT 06484 (203)732-6461**

APPEARANCES:  (Cont'd.)

For the Creditors Committee:   JONATHAN KAPLAN, ESQ.
Pullman & Comley
850 Main Street
Bridgeport, CT  06601

For the Creditor, Pacific   STUART M. SARNOFF, ESQ.
 Alliance Asia Opportunity   O'Melveny & Myers LLP
 Fund L.P.:   Times Square Tower
7 Times Square
New York, NY  10036

ANNECCA H. SMITH, ESQ.
Robinson & Cole
28 Trumbull Street
Hartford, CT  06103

For Mei Guo:   SAM DELLA FERA, JR., ESQ.
Chiesa Shahinian &
 Giantomasi, PC
105 Eisenhauer Pkwy
Roseland, NJ  07068

STEPHEN M. KINDSETH, ESQ.
Zeisler & Zeisler, P.C.
10 Middle Street, 15th FL
Bridgeport, CT  06604

For Taurus Fund, LLC:   MICHAEL T. CONWAY, ESQ.
Lazare Potter Giacovas &
Moyle, LLP
747 Third Avenue
New York, NY  10017

For G Club Operations, LLC:   JEFFREY M. SKLARZ, ESQ.
Green & Sklarz, LLC
One Audubon Street
New Haven, CT  06511

For Chris Lee:   ERIC T. SCHMITT, ESQ.
The Quinlan Law Firm, LLC
233 S. Wacker Drive
Suite 6142
Chicago, IL  60606

For Greenwich Land, LLC   AUSTIN D. KIM, ESQ.
 and Hing Chi Hgok:   Meister Seelig & Fein LLP
125 Park Avenue
New York, NY  10017

```
APPEARANCES:  (Cont'd.)


For Bravo Luck Limited:        FRANCIS J. LAWALL, ESQ.
                               Troutman Pepper Hamilton
                                Sanders, LLP
                               3000 Two Logan Square
                               18th and Arch Streets
                               Philadelphia, PA  19103
```

1    (Proceedings commenced at 1:11 p.m.)

2        THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3    Kwok.

4        THE COURT:  Okay.  Good afternoon.  If we could

5    have appearances for the record please starting with the

6    Chapter 11 Trustee.

7        MR. DESPINS:  Good afternoon, Your Honor.  Luc

8    Despins, Chapter 11 Trustee.

9        MR. BASSETT:  Good afternoon, Your Honor.  Nick

10    Bassett from Paul Hastings on behalf of the Chapter 11

11    Trustee.

12        MR. LINSEY:  Good afternoon, Your Honor.  Patrick

13    Linsey of Neubert, Pepe & Monteith for the Chapter 11

14    Trustee.

15        MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

16    Claiborn for the U.S. Trustee.

17        MR. SARNOFF:  Good afternoon, Your Honor.  Stuart

18    Sarnoff of O'Melveny & Myers on behalf of Creditor PAX.

19        MS. SMITH:  Good afternoon, Your Honor.  Annecca

20    Smith of Robinson & Cole, Connecticut counsel for Creditor

21    PAX.

22        MR. KAPLAN:  Good afternoon, Your Honor.  Jonathan

23    Kaplan of Pullman & Comley on behalf of the Committee.

24        MR. KINDSETH:  Good afternoon, Your Honor.

25    Stephen Kindseth on behalf of Mei Guo.

1          MR. DELLA FERA:  Good afternoon, Your Honor.  Sam

2     Della Fera also on behalf of Mei Guo.

3          MR. SKLARZ:  Good afternoon, Your Honor.  Jeffrey

4     Sklarz for G Club.

5          MR. SCHMITT:  Good afternoon, Your Honor.  Eric

6     Schmitt on behalf of Chris Lee.

7          MR. CONWAY:  Good afternoon, Your Honor.  Michael

8     Conway on behalf of Taurus Funds.

9          MR. LAWALL:  Good afternoon, Your Honor.  Fran

10    Lawall on behalf of Troutman.

11         MR. KIM:  Good afternoon, Your Honor.  Austin Kim

12    for the Greenwich Land, LLC and for Hing Chi Hgok.

13         THE COURT:  Is anyone else making their appearance

14    this afternoon?

15         (No response)

16         THE COURT:  All right.  The people that are not

17    making an appearance and are not going to speak, I would ask

18    that you turn off your cameras and mute your microphones,

19    please.  Thank you.

20         All right.  Trustee Despins, this is your request

21    for a status conference, so please proceed?

22         MR. DESPINS:  Thank you, Your Honor.

23         And we filed on the docket, Mr. Linsey filed on

24    the docket, probably a hour or so ago the presentation that

25    Mr. Bassett, my colleague, would probably post some of the

1   relevant pages.  If he can get control of the screen from

2   your courtroom deputy, Mr. Bassett will be showing some of

3   the pages during the presentation.  I don't know if we --

4   how we do that practically, but we've done that in the past.

5           THE COURT:  I'm sure we can figure out a way.  So

6   give us a moment.  The courtroom deputy is looking at the

7   issue now.

8           So something was filed in the last hour?

9           MR. DESPINS:  Yes.  And it was also sent to the

10  courtroom deputy address.  It's a PowerPoint presentation.

11          But Mr. Bassett has the document.  He just needs

12  to be allowed to take control of the screen to post some of

13  the relevant pages while I give the narrative behind those

14  slides.

15          I thought we can start, Your Honor, in any event,

16  because some of the first slides are not -- we don't need to

17  post them necessarily.  So let me -- if that's okay with,

18  Your Honor, would you start the --

19          THE COURT:  Let me just ask the courtroom deputy

20  one thing Trustee Despins.

21          MR. DESPINS:  Okay.

22          THE COURT:  Can you hear Trustee Despins okay?

23          THE COURTROOM DEPUTY:  Yes.

24          THE COURT:  All right.  Yeah.  If you could just

25  speak a little bit closer I think to your microphone.  It's

1    a little garbled.

2             MR. DESPINS:  I will.  I will, Your Honor.

3             THE COURT:  Thank you.

4             MR. DESPINS:  Okay.  So I don't know, will Mr.

5    Bassett be able to post the documents?

6             THE COURT:  I'm getting a yes.

7             MR. DESPINS:  Okay.

8             THE COURT:  All right.  So how -- do you want that

9    displayed right now, Trustee Despins?  Is that what you're

10   asking?

11            MR. DESPINS:  Mr. Bassett will present the pages

12   as I give the narrative behind them.

13            Here we go.  Okay.  So we can skip the first

14   opening page.  And you also should have that, Your Honor.

15            So the second page, basically it's to mention that

16   we had our last status conference on January 10th where we

17   covered the tolling of the two-year statute of limitations.

18            And we believe that given that we passed this

19   important milestone of the two-year anniversary, that today

20   would be a good time to both cover some of the points that

21   -- or some of the litigation that's been pending, but also

22   look forward to a game plan to handle some of those.

23            So turning to page 2, the -- there's a list there.

24   And Your Honor knows, probably patently aware, of all of

25   these litigations that are pending, except the status on

1    appeal, you may not know that.

2            So this chart was prepared, and the next page as

3    well, prepared to -- for the benefit of parties in interest

4    mostly because Your Honor already knows most of this, but

5    these are the adversary proceedings that we filed before the

6    huge wave of adversary proceedings that were filed in the

7    ten-day period or so before February 15th.  So you have the

8    Lady May, Sherry-Netherland, Greenwich Land, the Bombardier

9    Jet, the escrowed funds.

10           Turning to the next page, page 3, the HCHK

11   Technologies, the Taurus Fund litigation, the Golden Spring,

12   the Lamp Capital, and Ace Decade, and the (indiscernible)

13   which is the motorcycles and cars.

14           So this gets you, Your Honor, but also the parties

15   in interest, the status of where these various proceedings

16   sit right now including the status on the appeal of some of

17   them.

18           I would just draw Your Honor's attention to, on

19   page 3, the Ace Decade matter, because you'll see at the end

20   of the blurb that describes the adversary proceedings

21   status, it says a six-month stay of new case proceeding

22   likely to be granted, that's a stay application that was

23   filed before the U.K. Court in the UBS proceeding.

24           There was some -- there were some skirmishes there

25   with people who were allegedly representing Ace Decade and

1   Dawn State, so we opposed that.  But we believe based on the

2   status today that the Court is likely to grant that six-

3   month stay.

4           The purpose of the stay is for us to establish

5   that, in fact, Mr. Kwok, or because I'm the successor, I own

6   or control the shares of Ace Decade which is an issue that

7   is being debated by the people who pretend to represent Ace

8   Decade in the U.K. litigation at this time.

9           And so you know, we commenced that litigation

10  against Yvette Wang, and also a Swiss resident, and Ace

11  Decade itself.

12          There's a motion to dismiss that was filed by

13  Yvette Wang.

14          We responded to that last week.  And obviously we

15  have an interest in making sure that that proceeding moves

16  quickly because of that six-month clock running in the U.K.

17          Then on page 4, we describe other proceedings.

18  Again, you're obviously painfully familiar with some of

19  them.

20          The PAX litigation regarding the demonstrations

21  and harassments, and the status on appeal is described on

22  page 4.

23          And the *Genever US vs. AIG*, that's the insurance

24  coverage case that you heard summary judgment on a week or

25  so, maybe ten days ago.

1          Now, moving on to page 5, pending main case

2     appeals, I want to make sure that Your Honor is aware of

3     this, but to make sure you know that there are -- and

4     parties in interest also know that there are two matters on

5     appeal right now other than the ones that are already listed

6     on pages 3 and 4.

7          One is relating to the corporate governance order,

8     which is the issue of sending a letter to U.K. counsel.

9     That has been stayed contentually because we are hopeful

10    that the litigation before Your Honor will finally resolve

11    the ownership of Ace Decade and at the same time any

12    privilege that would be associated with Ace Decade and its

13    subsidiary Dawn State.

14         So the district court inquired about the status of

15    that and the parties had agreed to stay that issue for a

16    period of 90 days.  The next report on that is due March

17    12th.

18         And at the bottom of that page, page 5, there's

19    the Guo matter.

20         This is the -- your orders compelling production

21    of documents and the order to seize for violation of Your

22    Honor's order.  And that has been solely briefed since

23    September 8th and we're awaiting the district court's

24    opinion of that issue.

25         Moving on to page 6, other Connecticut District

1    Court matters.

2           There's the *Guo vs. Manning*.  This is the writ of

3    mandamus that was filed.  The Court has not asked for

4    support.  The district court has not asked for a briefing of

5    that matter and has indicated that it would take the matter

6    in due course.  So that's all we know about that.

7           Next is the *Greenwich Land vs. Despins*.  That's

8    the motion to withdraw the reference.  That has been fully

9    briefed but the Court has not scheduled a hearing or issued

10   a decision.  Again, the district court has not scheduled a

11   hearing or issued a decision on that.

12          The last one on that page is also a motion to

13   withdraw the reference by Mei Guo.  And that's in the

14   Bombardier adversary proceeding.  That motion has been fully

15   briefed since November 11th in the district court.  No oral

16   argument has been scheduled by the district judge.

17          So this is all stuff that you are quite familiar

18   with, but not necessarily all parties in interest.  We

19   thought it was important to cover it quickly.

20          Now, we're getting into what has been filed

21   recently, which is the meat of this presentation.

22          So as Your Honor knows, in the ten days or so

23   leading up to February 15th, we filed 278 avoidance actions,

24   and we describe them as they're recent avoidance actions

25   defined as such.

1     Your Honor, we were duty bound to bring those

2   because we have all the evidence necessary to bring those

3   claims.  And I would, you know, I would hope that people

4   would understand that that process, and that was led by Mr.

5   Linsey and his firm, was quite hectic.

6     And we've already received one call from a party

7   saying I can't believe you sued us.  We are victims of Kwok,

8   not people on his side.  And I would say to these folks that

9   we will absolutely listen and talk to them and talk to

10  others that may have similar grievances, if there are any.

11     As you can imagine, Your Honor, when we filed 278

12  complaints in a very short period of time, it's, you know,

13  it's quite a task to accomplish.  And it is possible, I

14  doubt that, but it's possible that we've asserted a claim

15  against people that were victims of Kwok, but I -- that

16  remains to be seen.

17     I just -- the message there is that we will look

18  at that.  And we're happy to talk to anyone who believes

19  that they were sued improperly.

20     I would say at the next bullet that given that

21  Kwok states or Mr. Kwok's position has been that he has no

22  assets, virtually all of these adversary proceedings are

23  based on transfers by the debtor's alter egos.  And these

24  types of claims are actual intent fraudulent transfer

25  claims, and also post-petition transfer claims, Section 549

1   claims.

2              There's approximately, and we're rounding the

3   numbers here, in excess of $610 million that are being

4   sought in these 278 complaints.

5              In terms of the alter egos, Your Honor, some of

6   these complaints relate to alter egos where you've already

7   entered an order saying that they are the alter ego.  That

8   would be Golden Spring and Lamp Capital for example.

9              There are other alter egos where Your Honor has

10   that complaint under advisement, meaning there was a full

11   briefing, and Your Honor is considering whether to grant

12   summary judgment or not.

13              And then the third category are alter egos that --

14   where we sought a ruling on alter ego on February 15th.  And

15   I'll get to that on the next page.

16              So these are the three categories of avoidance

17   actions that arise from three types of alter egos.

18              I would want -- I wanted to point out that one of

19   the recent avoidance actions seeks to avoid transfers among

20   the debtor's alter egos.  That's adversary proceeding 24-

21   05275.  And, you know, I want to pause on that because it

22   may appear to be inconsistent.  And it is.  It's alternative

23   relief.

24              We made it very clear in that complaint that we

25   don't intend to pursue that complaint unless we were to fail

1    to obtain alter ego rulings from the entities that made

2    these transfers.

3           So typically we call this pocket A to pocket B, a

4    transfer from an entity like Golden Spring to HCHK for

5    example.  It doesn't really move the dial because those two

6    entities, in our world, we believe are controlled and owned

7    and are the alter ego of Kwok.  So in theory, there's no

8    avoidance action there because we're suing the ultimate

9    recipients of these funds.

10          But it is possible that we're not successful in

11   obtaining alter ego rulings regarding these entities and,

12   therefore, we did not want to be in the position that we

13   would be time barred from asserting such claims if Your

14   Honor or, on appeal, if a court rules that the alter ego

15   finding was not appropriate.

16          So that action, I want to be clear, is pled in the

17   alternative only if the other complaint, that I will

18   describe in a second, is not granted, or only if some of

19   these complaints seeking alter ego are undone on appeal or

20   otherwise.

21          At the bottom here we say, given that our

22   investigation is ongoing, it is likely that certain of the

23   complaints filed in the recent avoidance actions will be

24   amended to increase the amounts of the avoidable transfer

25   alleged.

1          As I said when I testified the other day in court,

2     that we're getting new information every day and we know

3     that some of the complaints will need to be amended to add

4     dollars to the counts, the avoidance counts.

5          Turning to page 8, Your Honor, in addition to the

6     278 adversary proceedings, we also (indiscernible) two

7     separate adversary proceedings that are -- that should be

8     discussed.

9          The first one is an omnibus alter ego action.

10    Basically, it's all the other entities that are in the Kwok

11    world that we believe that are alter egos of Mr. Kwok.  Such

12    as, and we list them, some of them there, Bravo Luck, G

13    Club, Saraca Media, Himalaya, et cetera, Rule of Law

14    Foundation, but we had not done that until February 15th.

15    So there's 33 entities governed by that alter ego complaint.

16         In addition to that, we filed a civil RICO

17    complaint against 57 defendants asserting cause of actions

18    for substantive RICO violations and conspiracy to violate

19    RICO, with some of the predicate acts being bankruptcy

20    fraud, wire fraud, bank fraud, violation of the National

21    Stolen Property Act, money laundering, obstruction of

22    justice, et cetera.  That's at the bottom of page 8.

23         Turning to page 9, we say that we're actively

24    attempting to serve each of the complaints, that's the 278

25    plus the RICO and the alter ego complaints, and we may

1  eventually need the Court's assistance with service issues.

2  We hoped not to bother you with this, but we already know

3  that we're -- that there's going to be some reluctant

4  participants.

5          The next point is very important, Your Honor,

6  which is that notable issue, between on the one hand the

7  omnibus alter ego action in the civil RICO and on the other

8  matter, the criminal indictment of the debtor, there is an

9  overlap here.  There's an overlap in terms of the names of

10  the entities that are described in the criminal indictment

11  as part of the Kwok enterprise.  And there are other

12  overlaps as well given that we intend to seek a stay, which

13  would commence after the answer deadlines of the omnibus

14  alter ego and the civil RICO actions pending the completion

15  of the criminal trial.

16          We have not filed this yet, but I wanted to give

17  the Court a heads-up that we intended to do that.

18          The next point is that there would be a safety

19  valve feature to the stay of these actions because, this is

20  for the omnibus alter ego action, it's to protect the estate

21  against the eminence of potential dissipation and/or

22  transfer of assets by defendants.

23          So we know that there are some assets that we're

24  going after, real estate mostly, and we don't want to be in

25  a position where there's a pending transaction to sell the

1    real estate to a third party and we would be stayed from

2    doing anything.

3             So that's a -- it will be a carve out in the stay

4    motion that we intend to file.

5             Also I wanted to point out, the next bullet, is

6    that we may need to file new adversary proceedings during

7    the proposed stay period to react to newly identified

8    assets.  We believe there is at least one of these in the

9    pipeline.

10            As to the recent avoidance actions, to the extent

11   the Court is supportive of the mediation process that we

12   describe on the next page, page 10, then the mediation order

13   would govern the stay.

14            And as to proceedings that are not stayed through

15   the mediation, the recent avoidance action states on alter

16   ego rulings already issued by the Court would go forward.

17   So we're talking basically Golden Spring, Lamp Capital.  I

18   believe there may be another one, but at least those two.

19            We also point out that the stay would not apply to

20   matters that the Court currently has under advisement.

21            And the most important part, Your Honor, is on

22   page 10, point 8, is the management of the adversary

23   proceedings process.

24            We're fully aware, Your Honor, that this is a lot

25   of litigation potentially and there are case management

1    implications here.  And we have judicial and monetary

2    resource issues.  And we're very focused on not paralyzing

3    these cases with such issues, and by that I mean the 278

4    complaints.

5             Our proposal to deal with that, and I -- I want to

6    say this was under the rubric of, you know, if you don't

7    ask, you don't get, and I know that it may be perceived as

8    presumptuous a little bit, but we would like the Court to

9    consider approving a global mediation process for the 278

10   avoidance actions because we believe that such a process

11   could be very productive.

12            In fact, it's been used in many other cases.  I

13   remember it well in *Enron*.  Judge Roper, who was not the

14   *Enron* judge, but his colleague, handled all the category of

15   avoidance actions involving derivatives, and I think he

16   settled all of them.  And there were numerous such actions.

17            And in other cases, like the (indiscernible)

18   technique has been used as well.

19            And this is where again I say this may be a bit

20   presumptuous, but the Court has already appointed in the

21   past, Judge Tancredi, to be a mediator in our case.

22            And in our view, subject to obviously his

23   availability -- I know that, like you, he has a very busy

24   docket -- and willingness to participate, you know, it would

25   be ideal if he could serve as the lead mediator on this

1    project.

2              And the purpose of the mediation is to stay all

3    actions before Your Honor.

4              And the focus that we stated in the second bullet

5    there, which is that we would like to prioritize mediation

6    efforts with respect to defendants that at first blush, and

7    I have focused on that first blush, may not have any

8    connections with the debtor's various deeds.

9              And by that, I'll give examples.  I hope I don't

10   regret that.  But, you know, Federal Express or Apple or

11   Amazon.  It doesn't mean that there's no claim against these

12   entities, but it's a much different claim than other claims

13   that are being asserted.

14             And the hope here is that we have an aggressive

15   mediation program where we could get rid of a number of

16   these claims for the benefit of the estate, but also for the

17   benefit of defendants, because that would avoid litigation

18   before Your Honor.

19             So again, we have not contacted Justice Tancredi.

20   That's why I said this may be presumptuous on our part.

21             And you're just seeing this as I'm reading it, so

22   you may not have any immediate reaction, but I wanted to put

23   that potential program on the table because I believe that

24   that would be an efficient way for everyone to try to deal

25   with these claims.

1    At the bottom of page 10, we mention that the

2  Trustee has entered into 24 tolling agreements, which Your

3  Honor has assigned stipulations.

4    The Trustee's goal is to deal with these claims

5  during the tolling period with the defendants and the

6  commencement of adversary proceedings.  Again, such tolled

7  parties to be another exception to the stay discussed

8  earlier.

9    Turning, Your Honor, to page 11, there are other

10  issues that I thought should be mentioned.

11    The first one is the sealing of confidential

12  documents.  You've already alluded to that recently in your

13  (indiscernible).

14    This confidentiality structuring we have is

15  costing us a fortune, and it's time-consuming, and it's

16  really in 95 percent, 98 percent of the cases not necessary.

17  There's no secrets here.  There's no secret recipe.  What

18  Mr. Kwok or his affiliates paid for an airplane or for a

19  Ferrari or for other luxury items is not a confidential

20  issue.

21    I would point out that the banks that are

22  producing information to us, and they've been very helpful,

23  but they are designating everything as confidential.  Why?

24  Because they're afraid of getting sued by Mr. Kwok and

25  others.

1          And we understand why they're doing that, but we

2     need to break this logjam.  Because I can tell you, Your

3     Honor, that there are hours spent redacting these various

4     complaints and all that just to make sure we're not --

5     nobody can cry foul that we released, unintentionally,

6     confidential information.

7          So that is to be continued.

8          We are soliciting the consent of the various

9     parties to try to break this confidential logjam.  We hope

10    that they will consent and we're able to release more of the

11    complaint or at least maybe entire complaints so that

12    everyone can see them.

13         And if not, if it's not consensual, we intend to

14    file a motion with Your Honor to have a better system than

15    the system we have now, because I -- you know, this is not

16    an operating business that has all sorts of confidential

17    issues.  Frankly, there's nothing, you know, practically

18    nothing, should be confidential and, therefore, we believe

19    that we need to resolve that issue.

20         The second point I want to mention is that we're

21    going to continue the Rule 2004 investigation.  I would say

22    not at the same pace that it took place in the fall of 2023,

23    but there are still some issues that need to be pursued

24    there.

25         The last point on this is the bar date.  A lot of

1      people have asked me about the bar date.

2              And I want to tell you our view at this point is

3      that it does not make sense to amend or to open, reopen the

4      bar date at this time.

5              As you may recall, the bar date was February 17th,

6      2023.  That was a while before the debtor's arrest on March

7      15th, 2023.  So a number of transaction parties that have

8      transactions with the debtors were not aware of the bar date

9      or were not sensitized to it.  Now they are.

10              So you might say, well, why don't we reopen the

11      bar date for those people only just know?  In theory that

12      might make sense except that what I see here I think is

13      likely is that there will be other events.  I'll give you an

14      example.

15              Like the Mahwah Mansion.  You know, again, that's

16      an example that was given before about maybe amending the

17      bar date to allow people to file claims arising out of the

18      Mahwah Mansion because they did not know about it.  That's

19      one example.  But there may be other Mahwah Mansions.  And,

20      therefore, we would be wasteful in my opinion to amend the

21      bar date today until we see the dust settle on a number of

22      issues.  Because what may happen is we may have to reopen it

23      later and which would be really not cost-effective and could

24      be wasteful.

25              I wanted to mention, Your Honor, that's not on the

1    PowerPoint, that we filed a motion recently regarding the

2    contents of storage units that we have inventoried and that

3    we believe are owned by either Mr. Kwok or by Golden Spring,

4    that is -- that was filed last week I believe.

5              And obviously we want to proceed with that because

6    the owner of the storage unit is saying, okay -- will be

7    saying I'm going to sell this stuff.  And I told him you

8    cannot do that.  Automatic stay, et cetera.

9              But, you know, there is a point where these people

10   need to be taken care of.  And we need to sell the artwork

11   and everything that's in there as soon as possible to

12   generate cash for the estate.

13             So, Your Honor, that is in sum what I wanted to

14   cover.

15             But I would ask Mr. Bassett, if he can, to put up

16   another chart or a one-page, yes, that's one page of a

17   chart, Your Honor, that we intend to file with the Court

18   soon that gives you and all parties in interest a complete

19   list of -- push up the first page up a little -- one out of

20   eight of all the defendants, and what types of claims, and

21   for what amounts are pending against these defendants.

22             So there are basically two types of claims.

23   They're pre-petition transfers and post-petition transfers.

24   And you can see in there a number of the defendants.

25             And that chart, again, I think would be helpful

1    for Your Honor to have this all in one place, and also for

2    parties in interest to have that as well.

3           So we intend to file that with the Court promptly,

4    but I wanted you to see the format so that you could have a

5    sense of why we're filing it.  And I think it's just it's

6    self-explanatory.  And it's listed by order of the adversary

7    proceeding numbers starting with 05 all the way down to 280

8    something.

9           So, Your Honor, that sort of completes our

10   presentation.  I've been going pretty fast, but I'm

11   obviously happy to entertain any questions you may have or

12   issues that parties in interest want to raise with the

13   Court.

14          THE COURT:  I do not have any questions at this

15   time.  Thank you, Trustee Despins.

16          Did you want Attorney Bassett to report on

17   something as well?  Or, I wasn't sure if you had anything

18   else you wanted to add?

19          MR. DESPINS:  No.  I would --

20          So my only question, and, again, I apologize for

21   being so forward, but would it be acceptable if we at this

22   point contacted Judge Tancredi to -- just to determine

23   whether he has any interest in the mediation program or --

24          THE COURT:  No.  I'll have to do that.

25          MR. DESPINS:  -- is that something that's going to

1    be --

2            THE COURT:  The way that we do that in --

3            MR. DESPINS:  Okay.

4            THE COURT:  -- in Connecticut is the judges have

5    that discussion, because there's a lot of issues that have

6    to be reviewed.  So I'll talk -- I'll speak with Judge

7    Tancredi when he's available.  He may not be available this

8    week, but I will -- I know I will see -- I will talk to him

9    as soon as he is available.

10           MR. DESPINS:  Thank you, Your Honor, for

11   clarifying that.

12           So, no, I don't.  I think, unless Mr. Bassett has

13   something else to add, I think that covers what we wanted to

14   cover today.

15           THE COURT:  Well, actually, now you -- that you

16   have raised that issue, I do have a question, which is fine,

17   which is I'm glad you raised that issue.

18           As you said, I haven't seen what you just

19   displayed so I haven't had an opportunity to really look at

20   it.  I've heard what you've said.  You want -- you're

21   looking for Judge Tancredi to be the lead mediator.

22           Does that -- that to me infers that you think

23   there will be more than one mediator?  Is that what you're

24   talking the process is?

25           MR. DESPINS:  I'm implying that, Your Honor,

1    obviously because of the number.  But I want to be clear

2    about the 278.  That might be misleading because I know that

3    there's a bunch of these that would not be sent to

4    mediation.

5           For example, all the ones involving the Kwok

6    family and associates.  There's no point in sending that to

7    mediation. Unfortunately, we need to bring that to duke it

8    out for a better -- for lack of a better term in court.

9           So therefore, it's not 278.  It's less than that.

10   But it's still a huge number and, therefore, I didn't think

11   it was palatable to go to Judge Tancredi and say, hey, we do

12   you have time to handle almost 200 complaints.  I think that

13   would be a bit much.

14          And, therefore, if he's interested in being the

15   lead, then I guess he could suggest other mediators that

16   would report to him, that would be under his jurisdiction,

17   or whatever, but I think that I would leave that to him.

18   But I think that if he had any interest in being the lead

19   mediator, that would be a great contribution to the case.

20          THE COURT:  Well, one of the things that I recall

21   from the motion to establish the avoidance action procedures

22   is no party, I think, if my memory is correct, no defendant

23   who is served with a complaint has to file an answer for at

24   least 60 days, correct?

25          MR. DESPINS:  That's correct, Your Honor.

1          THE COURT:  So what are you going to be doing in

2     those 60 days, assuming that -- let's assume mediation isn't

3     up and running in those 60 days, what are you going to be

4     doing and your team to try to resolve or whittle down these

5     adversary proceedings so as -- because we know sometimes

6     people want -- you've already gotten a call you said, right?

7          MR. DESPINS:  Yes.

8          THE COURT:  Sometimes people may want to resolve

9     these right away without the need for those matters to go to

10     mediation, so what is your plan with regard to attempting to

11     identify those types of actions and see whether or not

12     there's an expeditious resolution short of mediation?

13          MR. DESPINS:  Yes.  I'm glad you raised that.

14          My team made me promise I wouldn't use the term,

15     but I will use it, but I think that we're going to try to

16     have like an early-bird discount like they have in

17     restaurants in Florida.

18          So we're going to try to settle ourselves a bunch

19     of these because some of them have called us and say I can't

20     believe you sued us, et cetera, et cetera, but, but, you

21     know, dot, dot, dot, you know, they want to talk.  So we

22     obviously will entertain all of those.  And because the goal

23     is to settle these without any litigation before Your Honor

24     and as fast as possible.

25          And I think that once people see that there's

1    momentum to do that, others will join as well, because

2    there's always the fear they're the first one "that we're

3    willing to pay," quote/unquote.  You know, I don't mean

4    they're actually going to pay.  But to offer discounts for

5    sought -- from the sought-for amounts in the -- for people

6    that are willing to settle claims.  So obviously that's open

7    to everyone.

8               THE COURT:  Okay.  Well, I think that at some

9    point, even if Judge Tancredi -- sorry, they're doing

10   construction outside the door here, so I'm having a little

11   difficulty hearing at the moment -- but the -- even if Judge

12   Tancredi is available, I don't know that he's going to be

13   able to get things up and running immediately.  You know.  I

14   mean, I think there's going to be some time frame.

15              So that's why I asked the question about what your

16   plan is, because my at least view of the first 60 days was

17   that that would be a period of time to have some

18   discussions.

19              My recollection is also that that 60-day period

20   can be extended by agreement of the parties.  And so that --

21              MR. DESPINS:  Yes.

22              THE COURT:  -- obviously would be helpful to

23   everyone, including whoever -- if this -- if the mediation

24   process goes into effect, you know, it would be helpful to

25   the mediator as well.  Okay?

1          MR. DESPINS:  Yes, Your Honor.  I heard you loud

2    and clear.  And there's no magic to the 60 days.

3          I mean, obviously we don't want to end up in

4    never-ending stays, but the goal here is to resolve as many

5    of these without litigation before Your Honor and that's the

6    message I want to convey.

7          And if it doesn't work with Judge Tancredi, we'll

8    use another approach.  But that's certainly the goal.

9          As you know, we had no choice but to file these by

10   the 15th and we did that.  And it doesn't mean that we want

11   to have trials on 250 or 270 complaints.  Far from it.

12         THE COURT:  I understand.  But if you have to, you

13   have to.  I mean, that's -- it's fine.  It will work out

14   either way.

15         I just am asking the question on the timing

16   because, even if Judge Tancredi is available and he has no

17   conflicts and can handle this, I don't think it's going to

18   happen overnight.

19         MR. DESPINS:  Understood.

20         THE COURT:  I think it's going to take some time

21   to get things up and running.

22         MR. DESPINS:  Understood, Your Honor.

23         THE COURT:  Okay.  Does anyone else wish to be

24   heard this afternoon?

25         (No response)

1        THE COURT:  Well, that might be the first time

2    that we've ever had a hearing that only Trustee Despins has

3    spoken in, so maybe we should just conclude and --

4        MR. DESPINS:  I'm done.

5        THE COURT:  -- see if that will happen again

6    sometime.

7        All right.  Well, hearing nothing from anyone else

8    who has -- who is participating in this status conference,

9    then I think that there's nothing the Court can do today

10   other than take into consideration your request, Trustee

11   Despins, look at the presentation that you've made, because,

12   as you've said, I didn't have a chance to see it, it was

13   just filed in the last hour, and we were in court, and go

14   from there.

15       Now, are you -- are you seeking at this time

16   another -- to set a date for another status conference or

17   should we just wait and see how things develop and you can

18   do that when you think that's appropriate?

19       MR. DESPINS:  May we get back to Your Honor on

20   that?

21       THE COURT:  You certainly can.

22       MR. DESPINS:  I need to talk to the team about it.

23       THE COURT:  Okay.  All right.

24       MR. DESPINS:  Thank you, Your Honor.

25       THE COURT:  Thank you, all.

1          ALL COUNSEL:  Thank you, Your Honor.

2          THE COURT:  All right.  That concludes today's

3     status conference.  And that is our last matter on today's

4     calendar, so court is adjourned.

5          (Proceedings concluded at 1:53 p.m.)

6     I, CHRISTINE FIORE, Certified Electronic Court Reporter and

7     Transcriber, certify that the foregoing is a correct

8     transcript from the official electronic sound recording of

9     the proceedings in the above-entitled matter.

10

11          *Christine Fiore*

12

13     _____          March 7, 2024

14        Christine Fiore, CERT

15           Transcriber

16

17

18

19

20

21

22

23

24