```
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF CONNECTICUT
 2                         BRIDGEPORT DIVISION

 3
       IN RE:                         .  Chapter 11
 4                                     .  Case No. 22-50073 (JAM)
       HO WAN KWOK, et al.,            .
 5                                     .  (Jointly Administered)
                                       .
 6                                     .  Courtroom 123
                                       .  Brien McMahon Federal Building
 7             Debtors.                .  915 Lafayette Boulevard
                                       .  Bridgeport, Connecticut 06604
 8                                     .
                                       .  Tuesday, March 5, 2024
 9     . . . . . . . . . . . . . . .  2:03 p.m.

10
                         TRANSCRIPT OF HEARING
11            BEFORE THE HONORABLE JULIE A. MANNING
                   UNITED STATES BANKRUPTCY JUDGE
12

13     APPEARANCES:

14     For the Chapter 11
       Trustee:                   Patrick R. Linsey, Esquire
15                                 NEUBERT PEPE & MONTEITH, P.C.
                                   195 Church Street
16                                 13th Floor
                                   New Haven, Connecticut 06510
17

18

19

20     Audio Operator:           Electronically recorded

21     Transcription Company:   Reliable
                                 The Nemours Building
22                               1007 N. Orange Street, Suite 110
                                 Wilmington, Delaware 19801
23                               Telephone: (302)654-8080
                                 Email:  gmatthews@reliable-co.com
24
       Proceedings recorded by electronic sound recording,
25     transcript produced by transcription service.
```

INDEX

MOTIONS:                                                      PAGE

Matter
No. 1:    Motion to Compel Banco Popular de Puerto Rico      4
          to Comply with Rule 2004 Subpoena Filed by
          Patrick R. Linsey on behalf of Luc A. Despins,
          Chapter 11 Trustee.

          Court's Ruling:                                    7

Transcriptionist's Certificate                               34

```
 1           (Proceedings commenced at 1:08 p.m.)

 2           THE DEPUTY:  The Bankruptcy Court for the District

 3  of Connecticut is now in session after recess.  The Honorable

 4  Julie Manning is presiding.

 5           THE COURT:  Good afternoon.  Please be seated.

 6           All right.  We have one matter on the calendar

 7  at 1:00 p.m., so I ask the courtroom deputy to please call

 8  the calendar.

 9           THE DEPUTY:  Case Number 22-50073, Ho Wan Kwok.

10           THE COURT:  Good afternoon.

11           If we could have appearances for the record,

12  please.

13           MR. LINSEY:  Good afternoon, Your Honor.  Patrick

14  Linsey for the Chapter 11 trustee.

15           THE COURT:  Good afternoon.

16           All right.  On the calendar today is a motion to

17  compel, Attorney Linsey, and you're the only one in the

18  courtroom, so how are we proceeding on this motion that

19  afternoon?

20           MR. LINSEY:  I told several people it expected it

21  would be uninteresting, so I hope I'm correct.  But this is

22  a -- I would propose to proceed with the motion.

23           THE COURT:  Go right ahead.

24           MR. LINSEY:  Thank you.

25           This is a motion to compel concerning a Rule 2004
```

1   subpoena that was served on Banco Popular in Puerto Rico on

2   December 4th, pursuant to the eighth Rule 2004 motion.

3   Following service of the subpoena, we had email and telephone

4   communications with a representative of Banco Popular, the

5   same person who signed the objection that is an exhibit to

6   the motion to compel.  And what we were told is that Banco

7   Popular was unwilling to produce documents without either a

8   court order or account holder consent.

9        In light of the fact that most of the parties that

10  are individuals and entities that are identified as of

11  interest in these subpoenas are associated with the debtor,

12  that consent is not something that has been available

13  throughout discovery proceedings and Banco Popular said that

14  they understood that, that that was their policy, and that

15  they required a court order.

16       We filed the motion, pursuant to the hearing

17  notice.  Notice has been given to Banco Popular both, by mail

18  and by email to the individual that I had spoken with there.

19  She acknowledged receipt of the motion, but there's not been

20  any other response.

21       There are sort of finer-point objections in the

22  substance of her objection dealing with scope and things of

23  that nature regarding the subpoena.  I'm confident that, as

24  we have been able to with the vast majority of financial

25  institutions, once there's an order requiring the document

1  production be made, we will be able to resolve those issues

2  with the financial institution, here, as well.

3        So, with that having been said, unless the Court

4  has any questions, I would ask that the proposed order filed

5  with the motion entered.

6        THE COURT:  And Banco Popular has not filed any

7  appearance in the case at this time, have they?

8        MR. LINSEY:  They've not, Your Honor.

9        THE COURT:  Okay.  All right.  I have reviewed the

10  motion and it does appear that service of the motion and the

11  notice of hearing was properly made.

12        Attorney Linsey has stated for the record that

13  he's actually spoken to someone at Banco Popular who

14  acknowledged receipt of the motion and you've had other

15  discussions about it in which they've said they need a court

16  order which, you know, over time, is not unusual to hear a

17  banking institution request an order compelling the

18  production of documents in connection with a subpoena;

19  although, sometimes they just produce when the subpoena is

20  issued.

21        I'm not sure quite why that didn't happen in this

22  case, but I -- with the unusual circumstances of this case, I

23  understand why the trustee seeks an order compelling Banco

24  Popular to comply with the subpoena.

25        Now, it says, "in awarding sanctions," but you're

1  not seeking any sanctions at this time, are you?

2          MR. LINSEY:  No, Your Honor.  I apologize.

3          That can be stricken.

4          THE COURT:  Okay.  I mean, you might seek

5  sanctions if they don't do something after this order, but in

6  any event --

7          MR. LINSEY:  We're not seeking sanctions at this

8  time and I would not describe it as an unfriendly posture.

9          THE COURT:  Okay.  So, then I would turn to the

10  courtroom deputy.

11          There's a proposed order?

12          THE DEPUTY:  Uh-huh, yes.

13          THE COURT:  If you could change the title of the

14  order to just say -- to just delete the words "and awarding

15  sanctions."

16          THE DEPUTY:  Okay.

17          THE COURT:  And in the first paragraph of the

18  order before the "It is hereby ordered" language --

19          THE DEPUTY:  I'm sorry, one second, Judge.

20          THE COURT:  Yeah, take your time.

21          THE DEPUTY:  I opened the wrong order.

22          THE COURT:  Take your time.

23          THE DEPUTY:  Let me go back somewhere else.

24      (Pause)

25          THE DEPUTY:  Okay.

1          THE COURT:  So right before the semicolon, you

2   know, where it says, "as conditioned hereafter," the very

3   last line -- words before "it is hereby."

4          Are we looking at the same order?

5          THE DEPUTY:  I think we're not.  Let me see.

6          THE COURT:  Mine's titled "Order compelling Banco

7   Popular to --"

8          THE DEPUTY:  Yes.  Okay.  That's it.

9          THE COURT:  All right.  Do you see where I am now?

10         THE DEPUTY:  Yes, I do.

11         THE COURT:  So after the words "as conditioned

12  hereafter," and then I would say, "and after a hearing held

13  on May 5th, 2024 [sic]."

14         THE DEPUTY:  Yes.

15         THE COURT:  And then I'm fine with the proposed

16  order the way it is from that point forward, okay.

17         So, Attorney Linsey, for the reasons stated on the

18  record and upon review of the motion, the proposed order, the

19  motion is granted and the proposed order will enter with the

20  minor changes noted on the record.

21         MR. LINSEY:  Thank you, Your Honor.

22         THE COURT:  Okay.  Thank you.

23         Now, I have a few questions, to which I don't know

24  if you would know the answer.  You may very well, but given

25  how things evolve in this case, I had a few questions.

 1              MR. LINSEY:  Sure.

 2              THE COURT:  Oh, I said on the record today's date

 3   was May 5th --

 4              THE DEPUTY:  Oh, I'm sorry.

 5              THE COURT:  -- but I meant March, so thank you for

 6   the correction.  I don't know why I said that, but I'm sure I

 7   did.

 8              So it is "after a hearing held on March 5th."

 9              THE DEPUTY:  Okay.

10              THE COURT:  So that was my mistake, I'm sorry.

11   Thank you.

12              Then, a couple of things.  So, we saw today --

13   we've been in court, but we saw there were motions to stay

14   filed in the main case, in two of the adversary proceedings,

15   and, what, the non-avoidance adversary proceedings.  And it

16   doesn't -- I'm not certain if you're moving on an expedited

17   basis or just a regular basis or an *ex parte* basis, with

18   regard to those motions.  Because either they're going to get

19   set for hearing or not, and I would gather that they would be

20   set for a hearing in case someone opposes the relief, but I'm

21   not sure how -- what was the intention.  What were your

22   intentions, you or the trustee and others that you're working

23   with, with regard to the motions to stay?

24              I know there was one filed in the main case, as I

25   said, and one in each of the applicable adversary

1  proceedings.

2          MR. LINSEY:  Yes, Your Honor.

3          It's a fair question.  Given that we're not in

4  touch with all the parties in the various proceedings, I

5  think that the expectation was that Your Honor would set a

6  hearing.

7          On a sort of related note, the trustee had -- you

8  had asked the last time we were here on a status conference,

9  whether there -- the trustee would be available for a follow

10 up status conference, and the trustee, who is coincidentally

11 on trial in Puerto Rico, but not involving Banco Popular, had

12 asked me to convey that if the Court would entertain a Zoom

13 status conference, that he could be available on Wednesday,

14 March 13th.  I don't know if that would work for the Court.

15         Does that not work for the Court?

16         THE COURT:  It does not.

17         MR. LINSEY:  Okay.  Does the Court have other

18 availability next week that I could convey?

19         THE COURT:  The 14th.

20         MR. LINSEY:  The 14th, okay.

21         THE COURT:  But the 13th does not.

22         MR. LINSEY:  Understood.

23         Let me speak with the trustee about that.  And I

24 think the primary issue that was anticipated to discuss there

25 was anything that the trustee could do to move forward a

1  process to move some of these avoidance proceedings where it

2  may be appropriate, to mediation to the extent the defendants

3  are interested --

4          THE COURT:  Well, we don't even have a motion for

5  mediation yet or a process by which -- and we're going to

6  talk about that in a minute, okay.

7          MR. LINSEY:  Sure, yeah.

8          THE COURT:  So, let's go back to the stay motions.

9          MR. LINSEY:  But what I was going to say is we

10 could also -- I think we could discuss in further detail how

11 that --

12         THE COURT:  All right.  So I'm not going to

13 schedule any hearings on the stay motions until we have

14 another status conference.

15         Is that what you're --

16         MR. LINSEY:  That was what I would suggest, Your

17 Honor.

18         THE COURT:  Yeah.  And because one of the

19 adversaries to which the stay motions apply, at least my

20 quick review, is that it was all BVI entities in which

21 there's been service issues anyway in the past.  I don't know

22 if there are.  So, in any event, that was number one.

23         But also, there was -- in the proposed order,

24 again, I looked at it for less than two minutes, okay,

25 between hearings today -- it looked like there was a carve-

1  out of the stay with regard to some entity named K Legacy and

2  I don't really -- you don't have to tell me now, but I need

3  to understand that at some point, okay.

4        Because I don't know why -- I think it says it

5  wouldn't apply to K Legacy.

6        MR. LINSEY:  K Legacy is involved with an

7  apartment that's located in the United Kingdom that we

8  understand there may be efforts to transfer, and so there's

9  particular exigency with respect to that entity, but the

10  trustee can speak to that in greater detail.

11        THE COURT:  Okay.  Now, turning to the mediation,

12  when we were here and we talked about the mediation in your

13  presentation, the trustee's presentation, which, you know,

14  obviously no one knew that that's what the trustee was going

15  to ask specifically until the conference, and that's fine,

16  but there was a -- there were a couple of comments made

17  during that status conference, including that Mr. Bassett had

18  a list of adversaries and it sounds as if, though -- but I

19  don't know if this is accurate -- that there might be, on the

20  part of the trustee, some already -- some efforts already to

21  group certain adversary proceedings together.  I don't know

22  if that's true, but I want to tell you what my thoughts are

23  about mediation at the moment.

24        MR. LINSEY:  Sure.

25        THE COURT:  So, you have to have a motion with

1  proposed procedures, okay.  We don't have that.  So unless

2  and until there's a motion with proposed procedures that's

3  served on everybody, we -- you know, I can't really do much,

4  right.

5          And we're not just going to -- there has to be --

6  if -- every single case needs a process, but this case really

7  needs a process, right, because I'm not going to start down a

8  mediation road and have people say, Well, she just turned all

9  these things over.  There's no process procedure.  We didn't

10  know.  Are we being forced into mediation?  Is this an opt-in

11  or opt-out mediation?

12          I mean, you know, people -- there are all kinds of

13  decisions across the country that say -- and we don't have a

14  Local Rule that mandates mediation --

15          MR. LINSEY:  Uh-huh.

16          THE COURT:  -- in adversary proceedings.  So a

17  defendant in an adversary proceeding could say, possibly, I

18  don't want this to be mediated, okay.

19          So, you need to think about that, as far as -- in

20  my opinion -- as far as the procedures are concerned.  We do

21  not have a mandatory, automatic mediation procedure.  And I

22  think the way things were discussed would have been that

23  people were -- defendants were going to be required to

24  mediate.

25          I think if you can get their consent, you've got

1   no problem, obviously.  But I don't know if we can force them

2   to mediate; although, we might be able to, but they still may

3   have -- they still have to have the ability to understand

4   that, I think, before there's some kind of order that enters.

5            And I think, you know, when you file this motion,

6   the mediation parties, like, who are going to be the

7   mediation parties; is it just the trustee on the plaintiff's

8   side and then the defendants?  And I think that's probably

9   the answer, but I don't know that because there isn't a

10  motion yet.

11           Again, I told you about Mr. Bassett mentioned

12  something or someone mentioned -- maybe Mr. Bassett didn't;

13  maybe the trustee mentioned, I can't recall -- but somebody

14  mentioned something about Mr. Bassett having a list and

15  indicated, I think, that something was going to be filed with

16  that list.

17           MR. LINSEY:  We do have a list of all of the

18  avoidance proceedings.

19           And then one thing that we've been working on

20  doing is sort of slicing and dicing in various ways.  There

21  are various ways to group them.  One way is by the amount of

22  the claim.  Another way is by the -- obvious, the vast

23  majority of these claims are cases where the money went

24  through the what the trustee believes is an alter-ego entity,

25  so we've also done some analysis grouping by which alter-ego

1  entities are relevant; although, it's not just one alter-ego

2  to each of the claims.  They kind of overlap, so that's a

3  little bit tricky.

4          What we're in the process of doing is coming up

5  with a database that allows for sort of slicing and dicing

6  with a minimum of kind of a fee generation in order to do

7  that analysis.  So that's what's been happening in the

8  background.

9          But right now, we have a list of just

10  alphabetically and by adversary proceeding numbers, all of

11  the avoidance proceedings that we would be happy to file if

12  it would be helpful to the Court.

13          THE COURT:  Well, I don't know if we need a list

14  of all the names -- and I can do that --

15          MR. LINSEY:  Sure.

16          THE COURT:  -- I mean, I don't think that's

17  necessary.  I think it would be much more helpful to the

18  Court and to the mediator to understand any groupings that

19  the trustee may have come up with and understanding that

20  you're not going to turn over 270 matters to mediation all in

21  one fell swoop.  It doesn't make any sense to me.  I mean, I

22  think there has to be some kind of rollout or groupings that

23  get handled at one time; maybe the most controversial issue

24  adversaries -- I have no idea.  I don't know who's going to

25  challenge what.  But I think you need to think about that and

1  I think there needs to be a way to put parties on notice

2  about how the trustee thinks the process should work.

3        MR. LINSEY:  Another thought, Your Honor, had been

4  certain -- obviously, these are premised on determinations by

5  the Court that the alter-egos at issue are, in fact, alter-

6  egos.  So there are certain alter-egos where the Court has

7  already entered judgment --

8        THE COURT:  Right.

9        MR. LINSEY:  -- and there are others where the

10 Court has not.  So that's been something that the trustee has

11 been considering as well, in terms of how things should move.

12       THE COURT:  Okay.  And, again, I think you need to

13 think about, you know, can a defendant opt out -- defendant

14 or defendants opt out?

15       Also, can you beginning this process after the

16 answer deadline or before the answer deadline?  Because right

17 now, the answer deadline is at least 60 days from the service

18 of the summons.

19       So the trustee is saying he wants things to be

20 turned over to mediation before people even have to answer?

21 I'm not sure if -- I mean, if you have a consent of the

22 defendants on that, I think that makes it a lot easier; if

23 you don't, I don't know if that works, okay.

24       One of the things that I think -- I don't know if

25 the trustee used the term.  Someone, I thought, used the term

1  somewhere, that there were buckets of adversary proceedings,

2  so that fall in -- that's what I mean talking about,

3  groupings or buckets, right.  I think that that's an

4  important issue to focus on.  I think that it's going to help

5  with the mediation.

6         I also think you need to think about, what are the

7  mediator's powers?  I mean, you know, you say or Trustee

8  Despins said, The mediator can make up all the rules.

9         Well, I don't know that the mediator can make up

10  all the rules without notice to everybody.  And what does

11  that mean?  The mediator is going to file things?  That

12  doesn't make sense.  The mediator isn't going to file

13  anything.

14         So there -- it has to be a process that's already

15  in place that the mediator already follows.  So, for example,

16  what happens if a mediator mediate mediates a case to a point

17  where the parties get close, but they have some issue that

18  needs to have a determination that they won't agree to in

19  mediation; can the mediator tell the judge that so that the

20  judge can try that issue?

21         That should be in these procedures.  If you want

22  to give the mediator some flexibility to narrow the issues,

23  then I think you need to -- it needs to be part of the

24  process.

25         Also, what about if the mediator says -- and

1  you've got these buckets.  Let's say you've got these buckets

2  or groupings and the mediator -- and you give the mediator 50

3  adversary proceedings that are all preference actions that

4  have some issue that 40 of the defendants, 40 of the

5  adversaries, but 10 don't.  What is the mediator supposed to

6  do?

7         Well, the mediator -- if there's flexibility in

8  the process and it's set forth in the procedures, maybe can

9  mediator can tell the judge, These 10 adversaries need to be

10  tried for these issues, or there are common issues, like, or

11  do you take one of those adversary proceedings --

12         MR. LINSEY:  Uh-huh.

13         THE COURT:  -- one of those 10 and try that and

14  then that ruling is applicable or binding on the other nine

15  that haven't resolved.  I don't know.  I'm just coming up

16  with -- Attorney Linsey, I'm coming up with thoughts and

17  issues, because I think the more the process is transparent

18  and understood from the start, the less issues will arise

19  either in this court or in some appellate court, right.

20         Judge Tancredi is generally available, okay.  But

21  we're not going to get anything to Judge Tancredi until and

22  unless we figure out this whole process.  I want the

23  mediation order to be very specific about what he can and

24  cannot do, including those things that I just mentioned --

25  you know, you could come up with other things, by the way --

1   but the things I just mentioned about, what if he gets to an

2   impasse; can he report to the Court that there's an impasse

3   and this issue needs to be tried or resolved.  Or he's in a

4   bucket of 10 -- of 50 and 40 settle and 10 don't, well, how

5   does that get handled?  What can he do?  What powers does he

6   have?

7           Now, he's going to have to run conflicts checks,

8   Attorney Linsey, so if we get to the point of mediation,

9   there's still a possibility, you know, he could have a

10  conflict in an adversary proceeding, so just understand that.

11  I mean, none of us can take on a mediation if we have a

12  conflict, obviously --

13          MR. LINSEY:  Understood, Your Honor.

14          THE COURT:  -- but he is generally available:

15          And we didn't talk, you know, extensively, but he

16  does support the idea that there has to be an idea in place

17  that he follows.  Of course he can do things as a mediator,

18  but I think if you want him to -- I don't think it's going to

19  be helpful for you all to have a mediation where he either

20  reports:  It's settled or not, because that doesn't really

21  help, I don't think.  It doesn't make sense to me, right.

22          You want to advance the ball and limit the issues

23  as much as you can.

24          MR. LINSEY:  Uh-huh.

25          THE COURT:  And giving the mediator the

1   flexibility to do as much as the mediator can, but then in

2   some way, shape, or form, report that to the Court as to what

3   needs to be done to finish or resolve that adversary

4   proceeding without any, you know, prejudice to the parties to

5   come back here and then say, Oh, wait a minute, we think we

6   can finalize it and go back.

7           I'm not -- but, you know, he's got to have some

8   road -- he's got to have some guideposts and he's got to have

9   some lanes he can go in, right, and not go out of.  I mean,

10  he needs to -- but I think he should have some flexibility

11  that, you know, that's what you need to think about in my

12  opinion.  And he would agree with that, by the way.

13          MR. LINSEY:  Understood.

14          THE COURT:  So what about beginning -- I need to

15  know.  You're going to tell me, I guess.  This is what I

16  presume will happen before the status conference, if we have

17  it on the 14th, right, that there'll be some kind of motion

18  or something filed, and I'd like it to be filed before

19  the 13th, if possible --

20          MR. LINSEY:  Uh-huh.

21          THE COURT:  -- so we actually have time to read

22  it.

23          What are you proposing?  And, you know, if you're

24  seeking this approval of mediation, who do you have to serve

25  and how much time do they have to oppose it or whatever?  I

1   don't know, but that's -- while I completely understand and

2   appreciate, you know, saying, We want these mediated, it

3   is -- I will not go down that path without and order and a

4   motion that's been served on people that have some ability to

5   say something, okay.

6          MR. LINSEY:  Understood, Your Honor.

7          THE COURT:  And if Judge Tancredi has a conflict

8   with one of these matters, what do you propose to do with

9   regard to another mediator?  Do you want me to ask Judge

10  Nevins or what do you want me to do?

11         MR. LINSEY:  One of the things that have been

12  discussed on the trustee's end was the notion of Tancredi --

13  of Judge Tancredi, excuse me, mediating, you know, being

14  involved and directing a mediation process and certainly

15  being more involved with some of the more significant

16  disputes, but perhaps there'd be other mediators who report

17  to Judge Tancredi.

18         THE COURT:  Who, and who's going to pay them?

19         MR. LINSEY:  That would be an issue that would

20  need to be addressed --

21         THE COURT:  Well, that's my point, right.

22         MR. LINSEY:  -- in the motion, first.

23         And, certainly, there had been a motion

24  anticipated, but one of the reasons -- and I apologize if we

25  did it in a way that was not what Your Honor would like,

1  but --

2         THE COURT:  No, I'm not -- you don't need to

3  apologize.

4         MR. LINSEY:  Yeah.

5         THE COURT:  All I'm saying is, It's going to be

6  fine, but we've got to follow the process.  That's all.

7  There has to be a process.

8         Look, you know -- everyone knows that's involved

9  in this case, how many appeals there are out of anything that

10 happens in this case.  And I don't want to then to have a new

11 process come in that isn't -- hasn't -- that someone could

12 argue they didn't have due process.  You know, the due

13 process rights weren't met.  That they didn't understand what

14 was happening.  That they were forced to do something that --

15 you know, I don't know want to have any of that, right.

16        I want to do our best to have a process that has

17 been transparent --

18        MR. LINSEY:  Sure.

19        THE COURT:  -- out there.  Have parties to have an

20 ability to oppose it if they want to, and to have the process

21 of the mediation be clear.

22        Do you think that that includes flexibility on

23 Judge -- if it is Judge Tancredi -- directing some process?

24 Of course it does, but you still have to have some process in

25 place.  You can't just say, Okay, Judge Tancredi -- and I'm

1  not saying you're saying this --

2              MR. LINSEY:  Uh-huh.

3              THE COURT:  -- I am explaining the concerning I

4  have is, you can't just say, Okay.  Judge Tancredi,

5  here's 270 adversary proceedings.  Go at it.

6              That's not going to happen because it's not fair

7  to him either.

8              MR. LINSEY:  Of course not.

9              THE COURT:  Even though he would absolutely do it,

10 it's still not fair because he doesn't want to get in that

11 position, either, right.  He's got a whole bunch of things

12 he's going to have to worry about.

13             So all I'm saying to you is, I think it's going to

14 be fine --

15             MR. LINSEY:  Uh-huh.

16             THE COURT:  -- I just think we need to go through

17 a process and make sure the process meets the requirements of

18 notice and a hearing and not just an opportunity for a

19 hearing, but notice and a hearing that will produce some form

20 of an order that, not only, assuming Judge Tancredi will

21 become the mediator, but what happens if there's a conflict

22 and if there's another mediator?

23             What do we go -- what if you say, Yes, would you

24 ask Judge Nevins, then?  And what if she has a conflict, then

25 what do you do?  Then you've got to pay somebody, right,

1   because right now you can do this without -- and that's --

2   and we're fully supportive of that; no one has a problem with

3   that.  But at some point, there's only the three of us,

4   right.  So you have to figure out how is that going to work?

5          MR. LINSEY:  So the preliminary thinking on the

6   trustee's side had been that there might be a small panel of

7   mediators who would report to Judge Tancredi where --

8          THE COURT:  Chosen by whom?

9          MR. LINSEY:  Chosen in -- the thinking was in

10  consultation with Judge Tancredi to make sure that he --

11         THE COURT:  Well, who's consulting?

12         MR. LINSEY:  The trustee, which is why the

13  trustee --

14         THE COURT:  Yeah, see, I don't think that's going

15  to work.

16         MR. LINSEY:  Understood, Your Honor.

17         THE COURT:  I mean, I don't know, maybe it will,

18  but -- and how are those people going to get paid; they're

19  going to do it for free?

20         MR. LINSEY:  I don't anticipate that, and that

21  would be treated by the motion.

22         And there are names that have been discussed on

23  the trustee's end and we can propose them.  But the -- and I

24  doubt that there are names that Judge Tancredi would have any

25  issue with and they're likely to --

1            THE COURT:  It's not an issue whether Judge

2   Tancredi would have an issue with them.  That's not going to

3   happen.

4            MR. LINSEY:  -- or Your Honor would.

5            Obviously, yeah.  Of course.

6            THE COURT:  It's not an issue.  That's not an

7   issue.

8            The issue is, is the process transparent and

9   understood and people have an opportunity to agree to it or

10  not agree to it or whatever you're proposing?

11           To me it sounds like -- and this is fine if that's

12  what you're proposing -- we'll see what happens, ultimately,

13  but it sounds like the trustee is saying, This is mandatory

14  mediation and that's what's going to happen.

15           Well, we -- our district does not have that, so

16  there isn't any expectation or requirement that a defendant

17  submit itself to mediation.

18           Now, I think a lot of these people will agree; I

19  don't think that's going to be a problem.  But you're going

20  to have to work on that.  You're going to have to -- you

21  know, in a perfect world in this next -- I don't know how

22  many days -- 50 days or less it is at this point -- more

23  like 40 days -- maybe you'll come in with a whole bunch of

24  "I've got a consent to mediation."

25           You know, a consent to mediation can be one

1 │ paragraph filed on the docket of the adversary proceeding.

2 │ It makes it a lose easier, doesn't it?  Then you've got no --

3 │ then you have a consent to mediation, right?

4 │          But I think that there are some -- I know there

5 │ are issues that just need to be put forth in a motion and

6 │ clear process and procedures submitted.  I don't think you

7 │ can say, Well, we thought maybe Judge Tancredi could pick

8 │ another panel of mediators, blah, blah, blah.

9 │          If that's the case, then put it in a motion,

10 │ right, because -- that's why I asked the question of Trustee

11 │ Despins last week when that said he'd be the lead mediator, I

12 │ think was the term, and I was like, Well, what does that

13 │ mean?  I don't know what that means.  I mean, I think I know

14 │ what it means, but I think it needs to be in a motion.

15 │          MR. LINSEY:  Understood, Your Honor.

16 │          And I appreciate that the procedure needs to be

17 │ spelled out and there needs to be transparency.

18 │          THE COURT:  All right.  So you'll think about

19 │ that.

20 │          As far as this status conference, I think you --

21 │ are you going to file -- well, I guess that's not -- you

22 │ don't have to file anything.  We have said in the past when

23 │ the trustee has requested a status conference, that they can

24 │ be -- new dates can be requested.

25 │          And you're now requesting a date of next week and

1   I'm telling you that the 14th is the first date you've got

2   and it's probably the only date you've got next week, okay.

3            MR. LINSEY:  I'll speak with the trustee.

4            And he is on trial, so I don't know the specifics

5   of his schedule, but I know that we have a date on the 19th;

6   there are matters schedules in this case.

7            THE COURT:  Yep.

8            MR. LINSEY:  So if it doesn't work for the 14th,

9   perhaps the 19th would work.

10           THE COURT:  Okay.  Let's look at the 19th for a

11  minute.  Yes, there's the afternoon of the 19th; there's

12  several fee applications on that afternoon and a motion to

13  dismiss, so there's one -- starting at 1:30 and then      at

14  2 o'clock.  So, I mean, that could work if you can't do

15  the 14th, but you'll have to let us know about that, about

16  the 14th.

17           MR. LINSEY:  We will, Your Honor.

18           THE COURT:  Because I'd still have to issue some

19  kind of order or notice scheduling the status conference for

20  the 14th or the 19th, whatever day it is.

21           MR. LINSEY:  And if the status conference is on

22  the 14th, Your Honor would like the motion to be filed no

23  later than the 12th; is that my understanding?

24           THE COURT:  Yes.

25           MR. LINSEY:  And so if the status conference is on

1  the 19th, then Your Honor would like the motions scheduled,

2  or filed by the 15th?

3              THE COURT:  By the 15th, yes --

4              MR. LINSEY:  Okay.

5              THE COURT:  -- please.

6              And then there's one other issue besides -- and

7  believe me, you and I could sit here for probably another

8  hour thinking about mediation issues, right -- but I think

9  this common trial, common issue consideration has to be woven

10 in there somehow, right, to give -- because normally a

11 mediator doesn't necessarily get to report back to the judge

12 on where things are, right?

13             MR. LINSEY:  Yes, Your Honor.

14             THE COURT:  This is a little bit different, so

15 you'd have to think about how you'd want that to work.

16             And then, obviously, you're going to have -- you

17 know, there's going to have to be confidentiality agreements

18 and whatever.  You can deal with that.

19             One other thing.  The Clerk's Office -- oh, I

20 shouldn't say the Clerk's Office -- well, it is the Clerk's

21 Office, but the courtroom deputy email box, the Bridgeport

22 courtroom deputy email box, last week I believe it was,

23 received two emails, two separate emails from two separate

24 defendants in two separate adversary proceedings that say a

25 lot of things in them like they don't understand -- not that

1  they don't necessarily understand why they're a defendant,

2  but they're -- they are concerned about what has occurred.

3        And we haven't docketed those because I have no

4  idea whether or not there's any confidential issues regarding

5  those defendants.  So with regard -- and you don't have to

6  answer this now -- but with regard to all of the defendants

7  in the adversary proceedings -- in the avoidance adversary

8  proceedings, not the RICO and alter-ego adversary proceeding,

9  but the -- things have been sealed, but are any of the

10 defendants' names sealed?

11        MR. LINSEY:  No, Your Honor.

12        The only things that are sealed in avoidance

13 proceedings are the schedules that are attached to the

14 complaints which list specific dates and transactions

15 reflecting transfers.  And the only reason that those are

16 sealed is because they were based on documents that were

17 produced by financial institutions and designated

18 "confidential" or --

19        THE COURT:  Okay.

20        MR. LINSEY:  -- or "highly confidential."

21        THE COURT:  Okay.  Well, what we will do in the

22 meantime between now and the status conference, I didn't

23 look, other than to see that these emails had been sent,

24 right.  I didn't really look at the adversaries to see

25 whether or not there'd be any information that is sealed,

1  which there probably is, because every adversary has at least

2  the sealed document of the schedule of the transfers.

3            Is that what you're saying?  I think that's

4  probably true, right?

5            MR. LINSEY:  Some are -- we tried to not overseal.

6  So where there were -- there were some where the underlying

7  records from financial institutions had not been designated

8  "confidential" or "highly confidential," and in those cases,

9  we did not file anything under seal.

10           THE COURT:  Okay.  So what we're -- what we will

11  do in the meantime is go back and analyze those and then

12  figure out how to handle those, because normally, our -- the

13  normal process of the Clerk's Office would be to docket those

14  communications on the applicable adversary proceedings,

15  because you could say there are somewhat akin to a pleading,

16  although, I'm not really sure they are.

17           But we haven't done that yet because I don't know

18  whether or not that's appropriate.  So we will have to take a

19  look at that, okay?

20           MR. LINSEY:  Understood, Your Honor.

21           THE COURT:  Okay.

22           MR. LINSEY:  And we've heard from some defendants,

23  as well, what I call "self-represented defendants" --

24           THE COURT:  Oh.

25           MR. LINSEY:  -- or people who say that they're

1   self-represented defendants.

2           THE COURT:  Yeah, these people do, too.

3           MR. LINSEY:  And sometimes the email addresses

4   that we receive communications from are unconventional or

5   overseas, such that they wind up in spam folders.

6           So, like, it would be in the trustee's interests,

7   as well, to see these communications.

8           THE COURT:  Understood.

9           MR. LINSEY:  We can be in touch with these people

10  if that's appropriate.

11          THE COURT:  Understood.

12          The issue's, I think, going to be, do they get

13  docketed?  And if they get docketed, do they get docketed

14  under seal?

15          MR. LINSEY:  Understood, Your Honor.

16          THE COURT:  I think that's the issue that we have

17  to figure out, because, again, they came to the courtroom

18  deputy email -- the Bridgeport courtroom deputy email box,

19  which is, you know, that's what we use when people submit

20  proposed orders and things like that, but they must've looked

21  at our website and thought that was a way to communicate with

22  the Court, okay.

23          MR. LINSEY:  Sure.

24          THE COURT:  So, I think those are the only

25  questions I have this afternoon, but I really encourage you

1  to think about the mediation issues and how we can make it a

2  process that is transparent, yet has some flexibility, and

3  that flexibility is clear.  Because I think if you want to

4  get to a point in adversaries where -- I gave two examples.

5  One is the parties can't resolve one part of it but the

6  mediator's resolved the majority of it, but the mediator

7  wants to tell the Court instead of, I couldn't resolve

8  this -- well, I resolved these things, but I didn't resolve

9  that.  You try it.

10         Or the other example is the 50 and 40 resolve

11 and 10 don't, how do you handle that?  And is there a common

12 issue or a bellwether adversary that gets tried that, then,

13 becomes applicable to the other adversaries?

14         I have no idea how you want to handle that, but I

15 think you need to tell everybody what your thought -- when I

16 say, "your," you know I mean the Chapter 11 Trustee's

17 thoughts are on this issue?

18         MR. LINSEY:  Yes, Your Honor.

19         THE COURT:  Okay.  Do you have any questions?

20         MR. LINSEY:  I do not.

21         If it's acceptable to Your Honor, we'll report by

22 tomorrow morning regarding --

23         THE COURT:  Oh, yeah, that's fine.

24         I mean, if you could tomorrow, that would be fine,

25 just sometime tomorrow.  Is tomorrow -- tomorrow's Wednesday,

 1  right?

 2          MR. LINSEY:  Correct, Your Honor.

 3          THE COURT:  Yes, okay.  That would be helpful,

 4  yeah.

 5          But the first day and probably the only day of

 6  really solid availability next week is the 14th.

 7          MR. LINSEY:  And did Your Honor say what time on

 8  the 14th?

 9          THE COURT:  I didn't, but I would probably want to

10  do it noon or 1 o'clock or 2 o'clock.

11          And if it's the 19th, we can just add it to the

12  calendar --

13          MR. LINSEY:  Yes, Your Honor.

14          THE COURT:  -- to the afternoon calendar, okay.

15          MR. LINSEY:  I mean, some of the issues that I

16  know that the trustee had wanted to discuss with Your Honor

17  are issues that Your Honor just discussed with me and I can

18  provide some of that information to the trustee.  So that

19  will be very helpful.

20          But we'll -- but he'll want to speak with you

21  directly, so we'll reach out about dates.

22          THE COURT:  That's great.

23          All right.  Thank you, very much.

24          All right.  That is our last matter on today's

25  calendar, so court is adjourned.

1          MR. LINSEY:  Thank you.

2          THE COURT:  Thank you.

3          THE DEPUTY:  All rise.

4          The Court is adjourned.

5      (Proceedings concluded at 1:50 p.m.)

1          <u>CERTIFICATION</u>

2          I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    <u>/s/ William J. Garling</u>                    <u>March 7, 2024</u>

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25