<pre>
 1                  UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
 2                       BRIDGEPORT DIVISION

 3
      IN RE:                        .  Chapter 11
 4                                  .  Case No. 22-50073 (JAM)
      HO WAN KWOK, et al.,          .
 5                                  .
              Debtors.              .
 6                                  .
      . . . . . . . . . . . . . . . .
 7                                  .
      LUC. A DESPINS, CHAPTER 11    .  Adversary Proceeding
 8    TRUSTEE,                      .  No. 23-05023
                                    .
 9            Plaintiff,            .
                                    .
10    v.                            .
                                    .
11    LAMP CAPITAL LLC, INFINITY    .
      TREASURY MANAGEMENT, INC.,    .
12    HUDSON DIAMOND NY LLC,        .
      HUDSON DIAMOND HOLDING LLC,   .
13    LEADING SHINE NY LTD., MEI    .  Courtroom 123
      GUO, and YANPING, A/K/A       .  Brien McMahon Federal Building
14    "YVETTE," WANG,               .  915 Lafayette Boulevard
                                    .  Bridgeport, Connecticut 06604
15            Defendants            .
                                    .  Tuesday, March 19, 2024
16    . . . . . . . . . . . . . . . .  1:39 p.m.

17
                        TRANSCRIPT OF HEARING
18            BEFORE THE HONORABLE JULIE A. MANNING
                 UNITED STATES BANKRUPTCY JUDGE
19

20    Audio Operator:        Electronically recorded

21    Transcription Company:  Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
      Proceedings recorded by electronic sound recording,
25    transcript produced by transcription service.
</pre>

1  APPEARANCES:

2  For the Chapter 11
   Trustee:                    Douglas S. Skalka, Esquire
3                              NEUBERT PEPE & MONTEITH, P.C.
                               195 Church Street
4                              13th Floor
                               New Haven, Connecticut 06510
5
                               -and-
6
                               Luc A. Despins, Esquire
7                              PAUL HASTINGS, LLP
                               200 Park Avenue
8                              New York, New York 10166

9                              Nicholas A. Bassett, Esquire
                               2050 M Street, NW
10                             Washington, DC 20036

11 For the U.S. Trustee:       Holley L. Claiborn, Esquire
                               UNITED STATES DEPARTMENT OF JUSTICE
12                             OFFICE OF THE UNITED STATES TRUSTEE
                               The Giaimo Federal Building
13                             150 Court Street, Room 302
                               New Haven, Connecticut 06510
14
   For the Official
15 Committee of
   Unsecured Creditors:        Kristin B. Mayhew, Esquire
16                             PULLMAN & COMLEY, LLC
                               850 Main Street
17                             8th Floor
                               Bridgeport, Connecticut 06601
18
   For Pacific Alliance
19 Asia Opportunity Fund:      Stuart M. Sarnoff, Esquire
                               O'MELVENY & MYERS, LLP
20                             Times Square Tower
                               7 Times Square
21                             New York, New York 10036

22 For Mei Guo:                Stephen M. Kindseth, Esquire
                               ZEISLER & ZEISLER
23                             10 Middle Street
                               15th Floor
24                             Bridgeport, Connecticut 06604

25

```
 1  ALSO APPEARING:

 2  For Mei Guo:            Sam Della Fera Jr., Esquire
                            CHIESA SHAHINIAN & GIANTOMASI, P.C.
 3                          105 Eisenhower Parkway
                            Roseland, New Jersey 07068
 4

 5  For G Club Operations:  Jeffrey M. Sklarz, Esquire
                            GREEN & SKLARZ, LLC
 6                          One Audubon Street
                            3rd Floor
 7                          New Haven, Connecticut 06511

 8  For Mercantile Bank
    International Corp.
 9  and Yieldesta, LP:      Frederick Hyman, Esquire
                            CROWELL & MORING, LLP
10                          Two Manhattan West
                            375 9th Avenue
11                          New York, New York 10001

12  For Clayman Rosenberg
    Kirshner & Linder, LLP: Frank A. Oswald, Esquire
13                          Minta J. Nester, Esquire
                            TOGUT, SEGAL & SEGAL, LLP
14                          One Penn Plaza
                            Suite 3335
15                          New York, New York 10119

16  For Fox News Network
    and Marcum LLP:         Henry P. Baer, Esquire
17                          FINN DIXON & HERLING, LLP
                            177 Broad Street
18                          15th Floor
                            Stamford, Connecticut 06901
19
                            -and-
20
                            Andrew R. Gottesman, Esquire
21                          MINTZ & GOLD
                            600 3rd Avenue
22                          New York, New York 10016

23

24

25
```

1                                        INDEX

2     MOTIONS:                                                      PAGE

3     Matter
      No. 1:      Status Conference Held (RE:[2981] Order              9
4                 Scheduling Status Conference)

5                 Court's Ruling:                                     --

6     Matter
      No. 2:      (RE:2931 Application to Employ Praeger              80
7                 Dreifuss AG filed by Chapter 11 Trustee Luc A.
                  Despins)
8
                  Court's Ruling:                                    86
9
      Matter
10    No. 3:      (RE:2928 First Interim Application for             86
                  Compensation of O'Sullivan McCormack Jensen &
11                Bliss PC)

12                Court's Ruling:                                    87

13    Matter
      No. 4:      (RE:2929 First Interim Application for             88
14                Compensation of Kroll, LLC)

15                Court's Ruling:                                    89

16    Matter
      No. 5:      (RE:2933 Second Interim Application for            90
17                Compensation for Harney Westwood & Riegels LP)

18                Court's Ruling:                                    91

19    Matter
      No. 6:      (RE:2930 Third Interim Application for             91
20                Compensation of Epiq Corporate Restructuring,
                  LLC filed by Claims/Noticing Agent Epiq
21                Corporate Restructuring, LLC)

22                Court's Ruling:                                    93

23

24

25

1                                    INDEX

2      MOTIONS:                                                    PAGE

3      Matter
       No. 7:      (RE:2935 Fourth Interim Application for          94
4                  Compensation for Paul Hastings LLP filed by
                   Debtor's Attorney Paul Hastings LLP)
5
                   Court's Ruling:                                  95
6
       Matter
7      No. 8:      (RE: 2872 Third Interim Application for          96
                   Compensation of Pullman & Comley, LLC filed by
8                  Creditor Pullman & Comley, LLC)

9                  Court's Ruling:                                  97

10     Matter
       No. 9:      (RE:2936 Fourth Interim Application for          98
11                 Compensation for Neubert, Pepe & Monteith,
                   P.C. filed by Trustee's Attorney Neubert, Pepe
12                 & Monteith, P.C.)

13                 Court's Ruling:                                  99

14     Matter
       No. 10:     Motion to Dismiss Adversary Proceeding to       100
15                 Dismiss the Fifth and Sixth Claims contained
                   in the Complaint Against Leading Shine NY Ltd.
16
                   Court's Ruling:                                  110
17
       Matter
18     No. 11:     Motion to dismiss Counts 3 and 4 against        100
                   Hudson Diamond New York, Hudson Diamond
19                 Holding, Mei Guo

20                 Court's Ruling:                                  110

21     Transcriptionist's Certificate                              112

22

23

24

25

 1          (Proceedings commenced at 1:39 p.m.)

 2              THE CLERK:  Case Number 22-50073, Ho Wan Kwok and

 3   Adversary 23-05023, Despins v Lamp Capital, et al.

 4              THE COURT:  Okay.  Good afternoon.

 5              If we could have appearances for the record,

 6   starting with the Chapter 11 trustee, please.

 7              MR. DESPINS:  Good afternoon, Your Honor.  Luc

 8   Despins, Chapter 11 trustee.

 9              MR. BASSETT:  Good afternoon, Your Honor, Nick

10   Bassett from Paul Hastings, on behalf of the Chapter 11

11   trustee.

12              MR. SKALKA:  Good afternoon, Your Honor.  Douglas

13   Skalka on behalf -- or excuse me -- from Neubert Pepe &

14   Monteith, on behalf of the Chapter 11 trustee.

15              MS. CLAIBORN:  Good afternoon.  Holley Claiborn

16   for the U.S. Trustee.

17              MS. MAYHEW:  Good afternoon, Your Honor.  Kristin

18   Mayhew, Pullman & Comley, on behalf of the Creditors

19   Committee.

20              MR. SARNOFF:  Good afternoon, Your Honor.  Stuart

21   Sarnoff, O'Melveny & Myers, on behalf of creditor PAX.

22              MR. KINDSETH:  Good afternoon, Your Honor.

23   Stephen Kindseth, Zeisler & Zeisler, for Mei Guo.

24              MR. DELLA FERA:  Good afternoon, Your Honor.  Sam

25   Della Fera, Chiesa, Shahinian & Giantomasi, is also for Mei

1  Guo.

2          THE COURT:  May I stop both of you for a second?

3  Sorry.

4          Mr. Kindseth, I think someone said to me that you

5  filed an appearance in the last hour, I think, in addition to

6  Mei Guo?

7          MR. KINDSETH:  Correct.  I believe that's at the 2

8  o'clock matter.

9          THE COURT:  Okay.

10          MR. KINDSETH:  Will we be doing appearances at the

11  2 o'clock matter as well?

12          THE COURT:  Okay.  That's fine.  I'm just asking

13  the question, because --

14          MR. KINDSETH:  Yes, I will be appearing on behalf

15  of the Defendants at the 2 o'clock matter.

16          THE COURT:  Okay.  Sorry.

17          MR. DELLA FERA:  As will I, Your Honor.  Thank

18  you.

19          THE COURT:  Okay.  Thank you, both.

20          MR. SKLARZ:  Jeffrey Sklarz, G Club.

21          THE COURT:  Good afternoon.

22          MR. SKLARZ:  Good afternoon, Your Honor.

23          MR. HYMAN:  Good morning, Your Honor.  Frederick

24  Hyman on behalf of Mercantile Bank International and

25  Yieldesta LP.  I filed a motion for pro hac and

 1  (indiscernible) yesterday.  I don't think the order has been

 2  entered yet.

 3          THE COURT:  We probably -- it's in the process, I

 4  think.  There were certain -- there were a number of motions

 5  pro hac.  I think they are being processed, but I believe

 6  orders have not entered yet.

 7          MR. HYMAN:  Understood, Your Honor.

 8          THE COURT:  Okay.  Thank you.

 9          Anyone else in the courtroom wish to note their

10  appearance?

11          (No verbal response)

12          THE COURT:  Anyone on the phone wish to note their

13  appearance?

14          MR. OSWALD:  Good afternoon, Your Honor.  Frank

15  Oswald, Togut, Segal & Segal, along with my colleague Minta

16  Nester.

17          Your Honor, we were recently engaged by defendant

18  Clayman Rosenberg Kirshner & Linder, LLP.  We appreciate the

19  Court's accommodation in allowing us to appear remotely, as

20  I'm away this week with the family and Ms. Nester is

21  recovering from some surgery, so thank you for that

22  accommodation.

23          THE COURT:  You're welcome.

24          And I think, Attorney Oswald, I think you may be

25  involved in the status conference, right.  There are other

1  matters that you see at 1:30, applications, fee applications.

2  You're not appearing on behalf of any of those matters are

3  you?

4          MR. OSWALD:  No, I'm not, Your Honor.

5          THE COURT:  Okay.  Thank you.

6          All right.  Then, Trustee Despins, there are

7  several fee applications and an application to employ counsel

8  that I think are on at 1:30, in addition to the status

9  conference, so how do you propose to proceed?

10          MR. DESPINS:  If this is acceptable to Your Honor,

11  it probably would make sense, given the number of people

12  involved with respect to the status conference, to cover that

13  first.

14          THE COURT:  That's fine.

15          MR. DESPINS:  So let me -- this is the status

16  conference (indiscernible) the proposed mediation.

17          THE COURT:  And I think you also asked for a

18  status conference about the motion to stay?

19          MR. DESPINS:  Correct, Your Honor.

20          THE COURT:  Okay.

21          MR. DESPINS:  So for the record, Luc Despins,

22  Chapter 11 Trustee.  And with Your Honor's permission, I will

23  ask that some of this be covered by Mr. Bassett, but I wanted

24  to just open up with general concepts and then I'll turn it

25  over to Mr. Bassett to handle more precise issues.

1    I know there was a hearing at which I could not

2   attend, where Mr. Linsey attended and he gave us a full

3   report and I actually looked at the transcript, so we

4   understand what's on your Court's -- on the Court's mind in

5   terms of issues, and we did file the motion, as requested by

6   the Court and we view that, Your Honor, as an opening for a

7   discussion, really.  Informal, when we file a motion, we want

8   the motion to be granted as set forth in the motion, but

9   here, we understand that, especially, we could not get all

10  the Court's views.  We certainly don't have Judge Tancredi's

11  views, so we understand that this is an iterative process,

12  but I wanted to address some of the big points.

13    The first one is we're not going to dump 170

14  adversary proceedings on Judge Tancredi's lap.  That would be

15  a recipe for disaster, and we have a game plan.  Of course,

16  we have not talked to Judge Tancredi, so I don't know how he

17  wants to handle this, or how Your Honor wants to handle this,

18  but the idea here would be that conceptually, we would come

19  up with a list of five or six maximum buckets of different

20  types of claims.

21    So I'll give -- I always give easy examples.  So

22  you have, for example, Federal Express or UPS.  They receive

23  a post-petition transfer.  There are issues that apply to

24  these types of Defendants that, frankly, I'll stipulate just

25  for now that they probably did not know anything about what

1  was going on with the debtor.  So there are a set of issues

2  there that are common to these types of Defendants.

3           There are other Defendants that are at the other

4  end of the spectrum where, you know, it's very clear that

5  people knew or should have known what was going on and

6  sometimes that issue is irrelevant and sometimes it's not.

7  In a post-petition context, it may not be relevant.  What's

8  relevant is, was there a court order?  There was none.  The

9  second is, is this ordinary course of business, especially,

10  Your Honor forks transfers that were made after the

11  appointment of the trustee.  I don't know how people are

12  going to argue that it was ordinary course of business to get

13  paid by a debtor or by an entity controlled by the debtor

14  after the trustee's appointment.

15           But I'm not here to argue the merits.  I'm just

16  trying to tell Your Honor that there will be five or six

17  buckets that will cover 90 percent of these Defendants.  And

18  our concept is that this will only work if we agree to do

19  this on a global basis, meaning that, again, this is subject

20  to Your Honor's views and subject to Judge Tancredi's views,

21  but they would be sessions involving multiple Defendants.  So

22  maybe Federal Express got a transfer of -- I'm sorry to

23  always mention them, but I've been talking to them -- you

24  know, a transfer for $100,000, $120,000.  Maybe UPS got a

25  transfer for $110,000.  It doesn't matter what the amounts

1  are.  These are similar -- almost identically situated

2  entities and there should be a bucket where there's -- there

3  could be a meeting with Judge Tancredi where the debtor will

4  make a presentation.  This is our case against these types of

5  Defendants and they would make or the people who are there or

6  represented by counsel could make their own presentation and

7  then we would withdraw from that meeting and Judge Tancredi

8  might give them some general advice on his views of whether

9  these claims should be settled or not and at what level.

10       But we don't -- and we think that's the best use

11  of the mediation process, because otherwise, if we are going

12  to attempt to have a case-by-case mediation, it would

13  overwhelm Judge Tancredi, the fees would be through the roof,

14  and in addition to that, I don't think it would be productive

15  and, therefore, we are -- our proposal, our structure is to

16  have this global approach and to, for now, defer the issue of

17  whether there would be other mediators appointed.  Of course

18  these mediators would be appointed by a court order entered

19  by Your Honor, but after a discussion between the trustee and

20  Judge Tancredi.

21       But we want to resist the temptation to do that

22  right out of the box because we believe that the most

23  efficient way is not to have one-on-one mediation, but to

24  have group mediations.  And people are free to say, I don't

25  belong in this group; I have a special situation.  And we can

 1  deal with that, but there are so many people that clearly,

 2  you know, fall within some of these buckets that remain to be

 3  precisely defined that that's our approach and we believe

 4  strongly that the mediation will be productive if we adopt

 5  this approach.

 6        If it fails because the Defendants don't want to

 7  participate like that, we understand that.  Even from their

 8  point of view, they would benefit.  The lawyer from Federal

 9  Express may benefit from hearing what the lawyer for UPS has

10  to say, et cetera, et cetera.  So the point is that this

11  could be beneficial to all involved.

12        But if it fails, then we may very well have to

13  revert back to the appointment of individual mediators and

14  that's built into the order.  That possibility is there,

15  subject to Your Honor actually approving the specific

16  appointment of mediator one, two, three, four, and five.

17        So I wanted to give this broad outline, because

18  this is counterintuitive in the sense that, generally,

19  mediation is one-on-one.  There are issues that are specific

20  to some Defendants here.  Sure, there will be some of that,

21  but, generally, there are a lot of people that are Defendants

22  that fall within very defined buckets, prepetition, post-

23  petition, post-petition after the appointment of the trustee,

24  et cetera, et cetera.  So, I wanted to say this at the outset

25  and then I would ask Mr. Bassett to come and address other

1   more precise issues, for example, where we're proposing to

2   change our approach.

3          You had raised the question very accurately when

4   Mr. Linsey was here, which is, what do you have to do to be

5   in mediation; meaning, do you have to file an answer or a

6   motion to dismiss?  We had, in the proposal -- the motion we

7   filed, we had required that people file, you know, either an

8   answer or a dispositive motion.  After a lot of internal

9   discussions about that, I think we're going to change tack on

10  that because the thinking is, on balance, although,

11  personally, I would rather see answers than motions to

12  dismiss because it focuses the discussion.

13         It may defeat mediation for a lot of people

14  because they'll say, If I have to file a lawyer to file a

15  motion to dismiss or an answer and incur all these costs,

16  this may not be very interesting for me to participate in.

17  So I think we're proposing to change our position on that in

18  the motion that said, you have for file an answer or a motion

19  to dismiss and I think Mr. Bassett will address this, but I

20  think we're proposing to change that approach.  But there are

21  other technical aspects that I would ask Mr. Bassett to

22  addresses with the Court's permission.

23         And I'm happy to answer the global questions you

24  may have, as well.

25         THE COURT:  I just have one or two, I think, given

1  what you've said.  I've reviewed the mediation motion and you

2  have a list of 90 pairs.  It's exhibit -- I don't remember

3  the --

4          MR. DESPINS:  The excluded.

5          THE COURT:  -- Exhibit 3 or something to the

6  motion.  There's 90 that you are proposing to exclude.

7          Are you thinking that at any point in time that if

8  one of those parties wanted to be part of the mediation that

9  you would entertain that?  What I'm trying to determine is,

10 obviously, the mediation motion hasn't been served on anyone,

11 right?

12         MR. DESPINS:  Well, Mr. Bassett will address that.

13 I think there's been some service, but let me let him address

14 that.

15         THE COURT:  Well, what I'm saying is what I saw

16 was this list of 90 --

17         MR. DESPINS:  Oh.

18         THE COURT:  -- that, apparently, at least at this

19 point, from your perspective, would not be subject to these

20 mediation procedures; is that correct?

21         MR. DESPINS:  Correct.  That's correct, Your

22 Honor.

23         THE COURT:  So what -- there's two ways I suppose

24 this could work, I think, and maybe you could come up with a

25 third.  But either the motion gets served on the Defendants

1   in the other adversary -- in all but those 90 adversary

2   proceedings and there's an objection deadline, or are you

3   asking for the Court -- and I'm not suggesting you have to

4   answer this right now, but this is my question:  Are you

5   asking the Court to enter this without service on the

6   Defendants, but give the Defendants an opportunity to say

7   they don't want to go to mediation?

8            I think it has to be one or the other.

9            MR. DESPINS:  Yes.  Well, Mr. Bassett was going to

10   address that, but --

11            THE COURT:  Okay.  All right.  That's fine.

12            MR. DESPINS:  -- so we have this concept of

13   initially mandatory mediation --

14            THE COURT:  Right.

15            MR. DESPINS:  -- for everyone, other than the 90.

16   But if you don't want to be in, you file a motion with the

17   Court to be excluded.  So there's a safety valve.

18            So, it is, at the outset, mandatory, but they have

19   the ability to come to court to say, No, I don't want to be

20   in mediation.  Because at the end of the day if people don't

21   want to mediate, it's not going to be very productive to

22   include them, but there's a default mechanism at the outset

23   that everyone is in, unless they file a motion to be

24   excluded.

25            As to the 90, I think I'm indifferent as to

1  whether we serve them or not.  We're not trying to exclude

2  them for life in the sense that if they want to file a motion

3  with the Court saying there's a compelling case why they

4  should be included, fine.  Our view is -- and I don't know

5  if --

6         (An alarm plays in the courtroom)

7         THE COURT:  That might mean the air is not good in

8  the courtroom right now.  There might be too many of us, but

9  we'll see.

10         Is that a little monitor with numbers?

11         MS. CLAIBORN:  Yes.

12         THE COURT:  Okay.

13         MR. DESPINS:  Too much hot air.

14      (Laughter)

15         THE COURT:  Most likely.

16         MS. CLAIBORN:  It says, "poor."

17         THE COURT:  Okay.  It says, "poor."

18         I don't know how to turn that off, though.  That

19  would -- is there an ability to unplug it?

20         MS. CLAIBORN:  Let's see if that works.

21         THE COURT:  Okay.  Thank you, Attorney Claiborn.

22         MS. CLAIBORN:  Go for it.

23      (Laughter)

24         MR. DESPINS:  So my point, Your Honor, is as to

25  the 90, the judgment call there was, we don't think it would

1   be productive to have them in mediation because -- and that's

2   going to sound like a broad, overt generalization, but it's

3   intended -- those are Kwok-related entities.  We've already

4   been in mediation with Mr. Kwok and his family.  We think

5   it's a waste of time to do mediation with them because it's

6   just going to incur costs for no reason.  I don't think they

7   have any intention of settling anything.  So that's my

8   assessment.

9         So, therefore, to put them in the mediation would

10  be -- that's, again, I may exaggerate that in the accepts of,

11  are they all Kwok-controlled entities?  Not sure, but I would

12  say the intent was to cover those and maybe others that are

13  related to those entities.  So, but they're free to file a

14  motion to say, Oh, the trustee should be compelled to mediate

15  with us and we did oppose that.

16        THE COURT:  Well, I'm not suggesting that needs to

17  happen at the moment.  What I was talking about Attorney

18  Linsey about, and you've addressed it, is I would think there

19  have to be these buckets --

20        MR. DESPINS:  Yes.

21        THE COURT:  -- right.  With 170 or 80 adversary

22  proceedings, I agree that we can't just dump them all on

23  Judge Tancredi, although, I'm sure he would try to figure it

24  out.

25        But we also have to worry about -- and at this

1  point, he doesn't see any problem with acting as the

2  mediator, but, you know, a defendant might, so you'd have to

3  deal with that if and when that happens.  I do think that

4  Judge Tancredi would be supportive of having more

5  identification of what these buckets are and, like you said,

6  either have a group mediation and/or, you know, a test case

7  of the groups that you determine are the buckets that you

8  think they fit into, I think that would be fine.

9        MR. DESPINS:  And we've added that.  We've added

10  the point that the judge has the ability, Judge Tancredi has

11  the ability to issue a report saying in his opinion, it would

12  be beneficial to the advancement of mediation for the Court

13  to rule on issue X, a general issue.

14        THE COURT:  Right.

15        MR. DESPINS:  And so we've added that and we

16  welcome that.  I think that would be beneficial.

17        THE COURT:  I also think that there -- and this

18  can possibly work with discussions with Judge Tancredi, but I

19  think it would be helpful for him to have some kind of idea

20  of a timeline of what you're thinking of, right.  I mean, I

21  heard what you said about abandoning the issue of a Defendant

22  having to file a responsive pleading or an answer.  I think

23  that probably makes sense in the sense that there's still the

24  period of time running in all of these complaints, correct,

25  the 60-day period which you can unilaterally extend without a

1  court order.

2         MR. DESPINS:  Yeah, but for people who are on

3  mediation, they would pick up an extension if there --

4         THE COURT:  No, that's what I'm -- I'm agreeing

5  with you.

6         MR. DESPINS:  Okay.

7         THE COURT:  I think what my point is, is I think,

8  though, what would be helpful to Judge Tancredi is to

9  identify those buckets and try to have at least some form of

10 a proposed timeline or even just a range of when you think

11 some bucket is going to be given to him --

12        MR. DESPINS:  Yes.

13        THE COURT:  -- right, so he can focus on those

14 issues and go from there.

15        MR. DESPINS:  And, Your Honor, we didn't put that

16 precisely in the order, but the intent would be, the minute

17 the order is entered is to try to have a meeting with the

18 judge to go over the proposed buckets because you might say,

19 No, interested party don't buy that or maybe you should have

20 another bucket, and to have him participate in the sequencing

21 of these buckets.  Because I don't feel comfortable

22 telegraphing to him right now what the sequencing should

23 be --

24        THE COURT:  Okay.  That's fair.

25        MR. DESPINS:  -- because he might say, You're

1  wrong.

2          THE COURT:  Okay.  That's fair.

3          I think that what I read in the papers, I would

4  not have the procedures say that Judge Tancredi will create a

5  mediation panel, because he will or he won't; that's up to

6  him to make that determination.  He may feel that that's not

7  necessary and/or efficient, you know.  I think he needs to

8  figure that out himself.

9          MR. DESPINS:  I think we put that as an -- not an

10 automatic, but an alternative mechanism.

11         THE COURT:  I just don't -- I don't think it

12 should be automatic --

13         MR. DESPINS:  Okay.

14         THE COURT:  -- and I don't think he would like it

15 to be automatic.

16         MR. DESPINS:  Okay.

17         THE COURT:  I'm not saying he might not do that,

18 ultimately, Trustee Despins, but I don't think he wants that

19 to be -- he's got to get his arms around all of this, right?

20         MR. DESPINS:  Understood.

21         THE COURT:  Okay.  So then, I think you've

22 answered the question that I've had with regard to what

23 you've said and I guess I will hear from Attorney Bassett

24 then.

25         MR. DESPINS:  Thank you, Your Honor.

 1          THE COURT:  All right.  Thank you.

 2          MR. BASSETT:  Your Honor, I might just address the

 3   Court from here if that's okay?

 4          THE COURT:  Sure.

 5          MR. BASSETT:  Thank you.

 6          Again, for the record, Nick Bassett from Paul

 7   Hastings, on behalf of the Chapter 11 Trustee.  Your Honor,

 8   as is sometimes the case, Trustee Despins said I was address

 9   certain things but then he went ahead and addressed them, so

10   I'm not sure how much more I do have to add.  I will respond

11   to a couple of questions the Court asked and maybe provide a

12   little bit more detail as to how some of the procedures will

13   work.

14          But first, the Court had asked about service.  So

15   as I understand it, all of the approximately 270 avoidance

16   actions for those -- and I don't have a list breaking this

17   down -- but for those involving Defendants who are located in

18   the United States, I understand we have completed service on

19   those Defendants.

20          THE COURT:  Of the what?  Of the mediation motion

21   or the summons and complaint?

22          MR. BASSETT:  Of the summons and complaint, Your

23   Honor.  The mediation motion, I think we just filed toward

24   the end of last week, so we have not yet done that, but I'm

25   just speaking in terms of the summons and complaint.  I

1    understand we've served that on the domestic Defendants.

2    Obviously, those located abroad is a longer, more involved

3    process that we are working through, but I think the way that

4    works with the mediation procedures is that we will go ahead

5    and serve the mediation procedures motion on those Defendants

6    located in the United States.  We will ultimately make sure

7    that those located abroad have it as well.

8              But, regardless, the way the procedures work is

9    that the referral to mediation would occur on the date of the

10   answer deadline automatically, subject to an opt-out right

11   within 14 days thereafter, as the trustee described, where a

12   Defendant could say that they would like to not participate

13   in the mediation and ask to be accepted.  So each -- before

14   that clock starts ticking, each Defendant will have been

15   properly served with the summons and complaint.  They will

16   then have that answer.  They will have an answer deadline,

17   but the way we are going to modify that, based on what

18   Trustee Despins said, is rather than have it be a deadline to

19   file either an answer or a motion to dismiss, instead, by

20   that date, an appearing Defendant can simply file a notice of

21   appearance.  The Defendant has to do something to enter an

22   appearance in the case to avoid default, but in order to, you

23   know, help facilitate fruitful mediation discussions to save

24   Defendants money that could potentially be used as part of

25   the settlement, et cetera, we think it makes stones have that

1  be a notice of appearance, instead of, necessarily, a motion

2  to dismiss or an answer.

3            But again, everybody is going to get served with

4  the complaint according to applicable law and then their time

5  to opt in to the mediation procedures or opt out, rather,

6  would start ticking thereafter.  So in terms of due

7  process --

8            THE COURT:  But how are they going to know that if

9  they don't get served -- you're saying you're going to serve

10 them with an order that modifies the avoidance action

11 procedures that addresses mediation and not the motion?

12           MR. BASSETT:  Well, we would serve them with both.

13 I mean, we'll serve the domestic Defendants with the motion.

14 To the extent the Court enters --

15           THE COURT:  Well, I just want to understand.

16           Are you giving them an opportunity to object or

17 are you saying, This is the order that says this is -- you're

18 in mediation and if you want to opt out, you have to file

19 something.

20           MR. BASSETT:  It's the latter --

21           THE COURT:  Okay.

22           MR. BASSETT:  -- and I think, practically, that's

23 the only way it can really work, especially given all of the

24 Defendants who are located abroad.  You know, it could take a

25 significant amount of time to serve them with a summons and

1  complaint and all of that, so I think that that has to

2  happen.  Then the mediation procedures order, which is, in

3  effect, will take over at that point according to its terms.

4         THE COURT:  All right.  Well, then, it sounds as

5  though you're going to be modifying the mediation procedures,

6  according to what Trustee Despins just said, so there isn't

7  going to be an order for the Court to sign until that's done,

8  correct?

9         MR. BASSETT:  That's correct, Your Honor.

10         And we had treated today -- we had always

11  understood that today's hearing was, of course, just a status

12  conference --

13         THE COURT:  Understood.

14         MR. BASSETT:  -- anyway, so -- and we had

15  anticipated that, based on discussions that we might have be

16  parties that there would be some modifications to the

17  mediation procedures.  So we'll work that out and, obviously,

18  get the Court a revised proposed order as soon as we can.

19         THE COURT:  It seems at least, and I could be

20  wrong, that the mediation motion was filed in the main case

21  and in all of the adversary proceedings, I think, yesterday,

22  right.  So, then, you're going to then file an amended

23  mediation motion or what are you going to do?

24         MR. BASSETT:  I would can contemplate, simply, a

25  notice of revised proposed order that would filed --

1           THE COURT:  Okay.

2           MR. BASSETT:  -- as opposed to an entirely amended

3    motion.

4           THE COURT:  Okay.  And then -- but that revised

5    proposed order has to provide how much of time to opt out?

6           MR. BASSETT:  The procedures state that it's 14

7    days from the date of the answer deadline.  So, in other

8    words, if they -- I think the current procedures say 60 days,

9    right, which is already --

10          THE COURT:  So 60 days from service?

11          MR. BASSETT:  Right.  Which is already giving

12   parties an extension.

13          So they'll have 60 days from the date of service

14   to simply file a notice of appearance and then they have 14

15   days thereafter to decide whether they want to opt out and,

16   obviously, that 14 days is really 74 days because, you know,

17   or from whenever they find out about the mediation

18   procedures, they'll have a significant amount of time to --

19          THE COURT:  Well, what if they file a notice of

20   appearance before the answer date is due?  I think some

21   people have.

22          MR. BASSETT:  That's the way -- well, then,

23   according to the way we have the procedures, it would be 14

24   days from then.  I would see no reason to change that, but,

25   obviously, if the Court has a different view, we could --

1          THE COURT:  Well, I don't know.  We'll see if

2    anybody wants to be heard on that issue.  But I'm just trying

3    to understand the process so that it's clear that parties

4    have a right to say I don't want to be a part of mediation.

5    I think we need to make sure we understand how that's going

6    to work.

7          So, what you're saying, so that I'm clear, is that

8    all Defendants in the U.S. have been served with a summons

9    and complaint so that the 60 days that are part of the

10   avoidance actions procedures order has already started to --

11   will have started to run upon service of the summons and

12   complaint?

13         MR. BASSETT:  That's what I'm told by my team,

14   Your Honor.  If there's one or two or something where there's

15   a lingering issue, that could be --

16         THE COURT:  Right.  But that's the process, that's

17   how it works?

18         MR. BASSETT:  Yeah.

19         THE COURT:  And then you're saying on the sixtieth

20   day after service, all the Defendants in those adversary

21   proceedings have to do is file a notice of appearance and if

22   they do, then they will be included in the mediation process,

23   unless 14 days thereafter, they move to opt out of the

24   mediation process?

25         MR. BASSETT:  That's correct, Your Honor.

1      And I believe we've modeled this off of -- I don't

2  know if the dates and deadlines are precise, but this concept

3  is one that we've seen elsewhere.

4      THE COURT:  Right.  I agree, but in a little bit

5  different context.  But I think it's fine, but I think you do

6  need to address -- and there are people here who have filed

7  appearances in some of these adversary proceedings, so I

8  don't know if they feel they should be bound by a 14-day

9  period from the date they filed their notice of -- because we

10  don't even have the mediation procedures order in place.

11      MR. BASSETT:  That's fair, Your Honor.  I don't

12  see how it could possibly be before the order has been

13  entered.  So, to the extent that parties have filed a notice

14  of appearance and need more time, I'm happy to, you know,

15  consider some -- maybe for people who have filed a notice of

16  appearance, it's going to be X days from the date that the

17  order is entered, whether it's two weeks or something else,

18  but I think that would make sense.

19      THE COURT:  I heard what you said.

20      MR. BASSETT:  I think -- otherwise, I think, you

21  know, most of what I was going to mention has been covered.

22  Obviously, if you have any other questions I'm happy to try

23  to answer those.

24      THE COURT:  I don't have any at the moment, but

25  that doesn't mean I might not as the afternoon progresses,

1  okay.  But thank you.

2          MR. BASSETT:  Thank you.

3          THE COURT:  Does anyone else wish to be heard in

4  connection with the trustee's motion to modify the avoidance

5  action procedures in connection with mediation?  I should say

6  anyone, because no one else has spoken yet, so does anyone

7  wish to be heard?

8          MR. SKLARZ:  Good afternoon, Your Honor.  Jeffrey

9  Sklarz for G Club.

10          I suppose this doesn't necessarily apply, as I've

11  heard today, to G Club, but I'll be filing appearances on --

12  in the future on behalf of parties that it will apply to.

13          THE COURT:  Is G Club on the list of 90, right?

14          MR. SKLARZ:  G Club is on the list of 90, but I'll

15  say my peace for the record --

16          THE COURT:  Go right ahead.

17          MR. SKLARZ:  -- as I will have clients that are

18  not on the list of 90.

19          This is a very complicated motion and what I want

20  to mostly make clear is that all Defendants should be given

21  sufficient time to analyze the motion and respond to it,

22  attempt to collaborate with the trustee to provide whatever

23  constructive criticism and proposed changes to the mediation

24  procedures should be -- that would be appropriate.  So it

25  would seem that if there is -- there should be an objection

1 bar date set, but it should be set well out ahead, six or

2 eight weeks, something like that, before a hearing to allow

3 everybody to communicate with the trustee, understand the

4 narrow issues, and provide sufficient time for a response and

5 allow the Court to assimilate all the information that it'll

6 likely get back and craft an order.

7       Certainly, clients that I currently represent, but

8 haven't filed an appearance on behalf of and will represent,

9 will want to test the viability of claims, whether they're in

10 a mediation setting or not.  And, particularly, if they're in

11 a mediation setting, the trustee should be filing a response

12 to motions to dismiss, as the alter-ego concept that the

13 trustee has put forth is novel.  So it'll be important as

14 parties go to mediation that we understand the basis for the

15 trustee's claims to make any mediation productive and to

16 understand why we're wrong in our posture for dismissal.

17       Similarly, the mediators will have to understand

18 the trustee's concepts.  Unless we understand why we should

19 lose, it's hard for the mediation to work.  So just letting

20 the trustee not respond to motions to dismiss in a mediation

21 context, I think is not necessarily productive in terms of

22 moving a mediation forward.

23       We have a number of basic questions.  There's a

24 good faith requirement in paragraph V where --

25       THE COURT:  Tell me where you are, Attorney

 1  Sklarz.

 2          MR. SKLARZ:  On page 7 -- I'm sorry, ECF 3003,

 3  page 19 of 31, paragraph V.

 4          THE COURT:  All right.  Give me a second, please,

 5  just so I can make sure I'm following you.  Paragraph B?

 6          MR. SKLARZ:  V, as in Victor.

 7          THE COURT:  Yeah, go ahead.

 8          MR. SKLARZ:  And starting one, two, three, four,

 9  five, six, seven, eight lines down, where a mediator's report

10  indicates noncompliance.  If somebody is required to go for

11  mediation and says we think we have a good case, we have no

12  interest in settling, is that noncompliance?  Am I going to

13  be sanctioned and my client defaulted because we want our day

14  in court?

15          I think this, in particular, is difficult to

16  understand and it is not consistent with mass mediation

17  procedures I've seen.

18          Similarly, in paragraph M --

19          THE COURT:  So let me just ask you, again, so

20  you're saying you're concerned because if your client says, I

21  don't want to go to mediation; is that what you're saying?

22          MR. SKLARZ:  No, we say we will go to mediation --

23          THE COURT:  Okay.

24          MR. SKLARZ:  -- we hear the pitch of the trustee

25  and the mediator and we say, We think we have a good case and

1   we want our day in court.  Constitutional --

2            THE COURT:  Well, that's not going to mediation,

3   right?

4            MR. SKLARZ:  Well, no.

5            THE COURT:  I mean, that you're saying that you

6   don't want to mediate.

7            MR. SKLARZ:  Well, we say we've gotten to

8   mediation.  We don't think we should pay anything and we

9   would like to terminate the mediation.

10           THE COURT:  Okay.

11           MR. SKLARZ:  There's no requirement to settle if

12  you go for mediation.

13           THE COURT:  I understand there's no requirement to

14  settle if you go to mediation, but mediation is meaningless

15  if you go there and think that there's no reason to try to

16  resolve the matter, right?

17           MR. SKLARZ:  I'm not saying that.  I'm not saying

18  that at all.

19           What I'm saying is everybody goes there and at the

20  end of the mediation, there's a business decision made by a

21  client, we do not want to accept whatever is on the table and

22  we would prefer to go to trial.  I'm fearful that not

23  agreeing to settle will have sanctions leveled on me and my

24  client for (indiscernible) noncompliance.

25           THE COURT:  Well, I don't see how that can happen

1  necessarily, but I guess we'd have to cross that bridge when

2  we come to it.  But remember, if your client doesn't want to

3  go to mediation, they can opt out, number one.  I understand

4  what you said, but let me just follow my thought through,

5  okay.

6          MR. SKLARZ:  Sure.

7          THE COURT:  Number two, if your client goes to

8  mediation, your client has to act in good faith, too, right?

9          MR. SKLARZ:  For sure.

10          THE COURT:  So your client -- and if you have any

11  concern that your client has -- doesn't want to do this and

12  can't act in good faith, then you don't -- then opt out.

13          MR. SKLARZ:  And that brings me to my second

14  point.  In paragraph M on page 16 of 31 --

15          THE COURT:  Okay.  Give me one second, okay.  I

16  just want to make sure I'm following you exactly.

17          MR. SKLARZ:  -- this is the opt-out.

18          THE COURT:  Page 16, you said?

19          MR. SKLARZ:  16 of 31 --

20          THE COURT:  Paragraph M, as in Mary?

21          MR. SKLARZ:  -- ECF -- M, as in Mary -- or I

22  suppose we should M, as in Manning -- ECF 3003, third line,

23  or that whole sentence.

24          You can't just opt out; it's you have to show good

25  cause to opt out.  So I think what Your Honor indicated about

1  paragraph V, it gives even greater concern because what is

2  good cause to opt out of the mediation?

3          THE COURT:  I'm looking at M and I haven't found

4  what you're reading yet, but just -- oh, there it is.  I see

5  it.  I got it.  It took me a minute.

6          MR. SKLARZ:  So, again, I think these are just

7  discussion points.  I have no doubt that lawyers can work

8  together to craft language.  You know, Delaware and the

9  Southern District of New York and other jurisdictions have

10  language that they use in mass mediations.

11          THE COURT:  Well, they have mandatory mediation

12  procedures --

13          MR. SKLARZ:  Yes.

14          THE COURT:  -- we do not.

15          MR. SKLARZ:  Yes, but we can borrow from some of

16  those to, perhaps, provide language that would work for

17  everybody.  And, again, I'm just pointing out, these are

18  things I think that need discussion, and so if the Court were

19  to set an objection bar date of two weeks from today, it

20  would make it very difficult to have these discussions.  I

21  think there needs to be a lengthy period for everybody to,

22  number one, get served.

23          None of my clients -- I haven't filed appearances

24  in a number of adversaries yet because my clients haven't

25  been served, for the most part, so we need to get everybody

1  served.  Get everybody served with this motion and give

2  everybody an opportunity to be heard.  I think that's only

3  fair.

4          So, essentially, at this point, we think a lot of

5  these ideas are good ideas and these procedures are good

6  procedures, but there's ones that we have difficulty with.  I

7  pointed out a couple here.  There's others.  I don't want to

8  belabor this, because I think there needs to be a discussion

9  among counsel, but I would just urge Your Honor to ensure

10 that the nearly 300 Defendants in these cases are given

11 sufficient time to not only protect their rights and

12 understand their rights, but respond meaningfully to the

13 trustee's motion and then assuming we get past all that or we

14 will get past all of that when it's dispositive motion time,

15 that when we're going to mediation, we understand what the

16 trustee's arguments are in favor of their claims.

17          THE COURT:  In favor of what?

18          MR. SKLARZ:  In favor of their claims.

19          THE COURT:  Okay.

20          MR. SKLARZ:  So, you know, my client files a

21 motion to dismiss, we would want to see a response to that

22 motion to dismiss so that we understand the basis of the

23 claims.

24          Again, I understand what the trustee is saying.

25 The 549 claims run from the petition date based on this

1  alter-ego concept, but we have to understand the alter-ego

2  concept is being used in a way that's substantively different

3  than I've ever seen alter-ego used before --

4          THE COURT:  But you're not talking about just the

5  alter-ego, number one.  Number two, there's a pending motion

6  to stay the alter-ego case and the RICO case.

7          So let's presume, let's just for the sake of your

8  points, let's presume that those cases are stayed.  We're

9  talking about avoidance actions.

10          MR. SKLARZ:  But the avoidance actions are, for

11  the most part, premised on an alter-ego finding.  So let's

12  take the --

13          THE COURT:  I don't know that that's exactly true.

14          MR. SKLARZ:  Let's take -- well, I've looked --

15          THE COURT:  Not all of them.

16          MR. SKLARZ:  Not all of them, but a lot of them.

17          THE COURT:  I mean 90 of them are carved out,

18  right --

19          MR. SKLARZ:  Well, but --

20          THE COURT:  -- and those 90, I think you might be

21  right about.

22          MR. SKLARZ:  Well, but --

23          THE COURT:  But I don't know about others that --

24          MR. SKLARZ:  All the 549 claims -- virtually, all

25  the 549 claims are.  They say so and so company was an alter-

1   ego of Kwok and, therefore they're bringing 549 claims.

2          THE COURT:  Well, are any of those companies

3   already been found to be the alter-ego of Kwok, because that

4   might be a reason why it says that?

5          MR. SKLARZ:  Well, I mean, I can tell you, not all

6   of the companies have.

7          THE COURT:  Okay.

8          MR. DESPINS:  Your Honor, if I may?  I think I

9   could clarify this, if I may?

10          THE COURT:  Sure.

11          MR. DESPINS:  So, as I mentioned to the Court when

12   we had the status conference over the filing of these 280

13   actions, I mentioned that we had filed omnibus alter-ego when

14   you're just mentioned that and that's a complaint where we're

15   saying we own or -- we -- Kwok owned or controlled these

16   entities.  That includes G Club.  So that's in the alter-ego

17   complaint.  That's not a fraudulent transfer action.  That's

18   an omnibus alter-ego action where we say -- the same way we

19   said that Lamp Capital or Golden Spring was owned and we

20   obtained judgments on that, we are seeking the same relief in

21   that omnibus alter-ego complaint against G Club and others,

22   many others.

23          Now, because the statute of limitation was

24   expiring, we also filed, as a safety valve, a fraudulent

25   transfer claim against G Club for transfers made by entities

1  that we believe are alter-egos in the event that we lose the

2  main alter-ego action.  So we go to trial or summary judgment

3  on the issue of we own or we control G Club, the Court rules

4  against us.  At that point, the estate and everything that's

5  in the estate's jurisdiction, if you will, the other alter-

6  egos, made millions of transfers to G Club.  That is when the

7  fraudulent transfer action that counsel was talking about

8  would become ripe.

9         But there's no point in litigating that action

10 because if we win on the alter-ego or against G Club, it

11 would be us suing ourselves because G Club would be part of

12 Kwok.  So Kwok cannot sue himself.  And we made that very

13 clear in the action where there's a fraudulent transfer

14 claims against G Club that that is going to be prosecuted

15 only in the event that we lose the principal alter-ego,

16 omnibus alter-ego complaint that was filed on February 15th.

17        And as you mentioned, that action needs to be

18 stayed because of the criminal trial.

19        THE COURT:  Well, let me ask you a question about

20 that, then.  If those actions, those two actions that are not

21 avoidance actions are stayed, are you saying, then, the

22 fraudulent transfer action against those entities would also

23 be stayed?

24        MR. DESPINS:  Against those entities that are --

25 you mean like G Club?

1                    THE COURT:  Yes.

2                    MR. DESPINS:  Yes, they are.  They should be

3   stayed, as well, because we said that we would not prosecute

4   those.  I am pretty sure we said that, that's what I

5   remember, that we would not prosecute those unless and until

6   we lost the omnibus alter-ego.

7                    THE COURT:  Right.  So, then, there really needs

8   to be more matters stayed, essentially, than just the omnibus

9   alter-ego and the RICO action?

10                   MR. DESPINS:  That's a fair -- we -- because we

11  didn't intend to prosecute it, we didn't seek a stay, but,

12  yeah, I guess, technically, they should be stayed, as well.

13                   THE COURT:  Maybe.  I mean, I'm just --

14                   MR. DESPINS:  No, no, no.  That's a very fair

15  point.

16                   THE COURT:  -- talking because, then, if that

17  happens, doesn't that --

18                   MR. DESPINS:  It moots the issue.

19                   THE COURT:  -- put aside -- yes, Attorney Sklarz's

20  issue?

21                   MR. DESPINS:  Correct, Your Honor.

22                   So I wanted to clarify that, because I know it's

23  not clear.  I tried to make that clear in the PowerPoint

24  presentation that we filed I guess two weeks or so after

25  February 15th and we had the status conference.  But that

1  type of action, the fraudulent transfer against G Club is

2  only going to be prosecuted if we lose the alter-ego that G

3  Club is part of the estate.

4        THE COURT:  Right.  I mean that's my recollection.

5  That doesn't mean I'm correct.  That's my recollection.

6        So, Attorney Sklarz, I think what -- there are two

7  things that I think when you said file a response to your

8  motion to dismiss, for example, what I heard today, which is

9  different than what's in the motion, is that you won't have

10 to file anything; you just have to file a notice of

11 appearance, number one.  I don't know what your position is

12 on that, but I have an idea, but in any event, it doesn't --

13 that's just number one.  But number two, if you're -- when

14 you're speaking specifically about G Club, anyway, at least

15 you are at this point, I don't know why those matters would

16 go to mediation when the alter-ego claims are being stayed.

17        MR. SKLARZ:  All I'm doing is reading what I had.

18        THE COURT:  No, no, I understand that.

19        MR. SKLARZ:  Yeah.

20        THE COURT:  I'm just -- like you said, we're just

21 having a discussion, right?

22        MR. SKLARZ:  Yeah, totally.  I totally agree.

23        And that's the most important thing I'm trying to

24 convey here is that this is complicated and I appreciate what

25 the trustee is trying to do here, but I think we just need to

1  not rush through it and be thoughtful and reflective and

2  whatever procedure is determined and the trustee should

3  collect input from everybody in the courtroom and everybody

4  who's not in the courtroom who wants to be heard so that the

5  procedures that are proposed to Your Honor comport with

6  everything from the constitutional right to trial in a civil

7  matter to (indiscernible) some of the nitty-gritty

8  particulars that we've gone through today.  That is what I'm

9  trying to say.  We just need to slow down a bit and make sure

10  we do this right.

11          THE COURT:  Well, there isn't, as Attorney Bassett

12  correctly noted, there's no motion on the calendar.  This is

13  a status conference, right?

14          MR. SKLARZ:  And that's why I'm saying what I

15  said.

16          THE COURT:  And we need to -- no, and I agree,

17  that's one of the reasons I raised the issue at the last

18  status conference of how this was going to work and that

19  there needed to be a motion, right?  That's what I said.

20          MR. SKLARZ:  Yes.

21          THE COURT:  Because we need to understand how the

22  process is going to work.  And I asked questions of Attorney

23  Bassett and Trustee Despins already and now I'm asking -- I

24  asked you and you've told me what your thoughts are.  And I'm

25  going to ask you -- I think I understand your position -- is

 1  there anything else you want the Court or Trustee Despins to

 2  consider in connection with these mediation proposal and

 3  procedures?

 4          MR. SKLARZ:  Well, there's many things that we

 5  will want him to consider, but we got this on Friday -- it's

 6  Tuesday -- and I think we should have time to reflect and

 7  send him our thoughts so that --

 8          THE COURT:  That's not -- I understand that.

 9          MR. SKLARZ:  Yeah.

10          THE COURT:  I'm saying as you stand here right

11  now?

12          MR. SKLARZ:  No, Your Honor.

13          THE COURT:  Okay.  All right.  Thank you.

14          Does anyone else wish to be heard?

15          MR. HYMAN:  Good morning, Your Honor.  Frederick

16  Hyman on behalf of NBI and Yieldesta.

17          THE COURT:  Yes.

18          MR. HYMAN:  I won't take much of the Court's time,

19  but I did want to put a little bit of color on the comments

20  that were made by counsel that just spoke.

21          I represent two Defendants in adversary

22  proceedings that are the recipients of transfers from alleged

23  alter-egos.  There were no other transferors, so I wanted to

24  understand how the procedures would affect my client because,

25  as has been acknowledged, the trustee has sought a motion to

 1  stay the alter-ego action.  So it would seem a little bit

 2  inconsistent to go to mediation before the trustee has

 3  gotten, ultimately, a judgment that the transferors were

 4  alter-egos.

 5          MR. DESPINS:  And I can address that, Your Honor.

 6          I think in his case, the transferor is HCHK and I

 7  think we already -- HCHK is not being stayed, meaning we

 8  cannot -- it's not covered by the omnibus alter-ego because

 9  we've already sought a ruling from the Court.  We already

10  obtained various default judgments.  And I know the ultimate

11  ruling is pending before Your Honor, but that is not being

12  stayed.  So, to be clear, and maybe I'm presumptuous, but we

13  assume there'll be a ruling from the Court on HCHK eventually

14  on our summary judgment or, sorry, on the default judgment.

15          And that case, that action is -- it would be going

16  forward, because the transferor or the entity that

17  transferred is HCHK, which will be, we hope, determined by

18  the Court to be an alter-ego.  So that's --

19          MR. HYMAN:  I don't think that's correct on the

20  transferors, but I --

21          THE COURT:  I can't hear you, Attorney Hyman.

22          MR. HYMAN:  Sorry, Your Honor.

23          THE COURT:  That's all right.

24          MR. HYMAN:  I think we need better clarification

25  on the ultimate transferor for the payments to my clients.  I

1  do not believe that it was solely HCHK, but we're happy to

2  have those conversations.

3           MR. DESPINS:  I'm happy to do that, Your Honor.

4           THE COURT:  All right.  So I understand your

5  point, Attorney Hyman, and just so you know, Attorney Hyman,

6  and you probably do, there have been some determinations made

7  by this Court about alter-egos and so, but it may be in your

8  case that it hasn't.

9           MR. HYMAN:  I'm well aware of that.

10          THE COURT:  Okay.  All right.  Thank you.

11          Does anyone else wish to be heard?

12          MR. OSWALD:  Your Honor, Frank Oswald with Togut

13  Segal, if nobody else is (indiscernible), I'll just very

14  briefly.  I echo many of the comments of prior counsel for

15  the defendant, recognizing and empathizing with the trustee

16  and also Judge Tancredi to the extent that he does mediation.

17          I'm a big fan of mediation and we have been in the

18  trustee's shoes prosecuting literally thousands in certain

19  cases, like Enron and whatnot.  So it's a good thing to do.

20  I had the ability to catch up quickly yesterday with one of

21  the attorneys for the trustee on the matter.

22          Again, we would like an opportunity to look more

23  closely at the procedures, work with the other counsel.  I

24  think we're going to have a lot of commonality of the issues.

25  I certainly think that everybody should have the same amount

1  of time to respond, whether they want to opt in or opt out.

2  I mean, quite frankly, my discussions with counsel, only

3  because it seems to work very well in our prior cases, is

4  sort of a precursor for the mediation, than a mediation

5  statement, is (indiscernible) provide counsel with a position

6  statement once the requisite factual and legal diligence is

7  done.  Get some feedback on that, have a dialogue, and more

8  often than not, you know, you're able to avoid mediation if

9  folks are reasonable.

10        That being said, if not, again, I'm a big fan of

11  mediation, but I do think we need a little bit more time.  I

12  think my client, a law firm in Connecticut, would be subject,

13  at least to whatever ruling was made.  I haven't had a chance

14  to digest it, but in terms of the Lamp Capital, I heard that

15  reference, but on the other hand, our client represented the

16  debtor, as well as another entity.

17        So, I, likewise, notwithstanding the thousands of

18  actions that I've been a party to on avoidance actions,

19  haven't seen the alter-ego theory applied in this way, but as

20  it relates specifically to mediation, I think it's a good

21  idea.  I think we'd all like to see the revised procedures

22  and have an opportunity to confer with clients and other

23  Defendants, get back to the trustee's counsel, and perhaps

24  submit something that's, you know, completely consensual.

25        THE COURT:  So, Attorney Oswald, I asked Attorney

1  Sklarz and he told me that he would like the motion to be
2  served on his Defendants and he'd like an opportunity to
3  respond six to eight weeks out and see what can be done in
4  the meantime.

5        What's your proposal, as far as timing and
6  response?  I'd like to understand that.

7        MR. OSWALD:  Yeah, well I only have one client, we
8  think, today, I think, because we filed a notice of
9  appearance, gotten the backup to the complaint.  Those were
10 filed under seal.

11       I certainly don't think it's going to require
12 eight weeks to come to terms on a mediation procedure and,
13 certainly, if there are issues in dispute, we presumably
14 would ask for another conference so Your Honor could make a
15 ruling on it.  But, on the other hand, as I said, we are sort
16 of getting up to speed.  We didn't have the benefit of prior
17 status conferences and we're just getting the diligence off
18 and running on our front with our one defendant.

19       THE COURT:  Well, why I asked the question is, I
20 think the -- well, I know the reason the trustee would like
21 to proceed this way is so that he doesn't have 170 different
22 ways to proceed in 170 different adversary proceedings,
23 right.  And I think there is utility to procedures that
24 involve avoidance actions and I think there's utility in
25 mediation; however, I heard some concerns.  Well, just you

1  and Attorney Sklarz at this point, saying -- and I'm sorry,

2  and Attorney Hyman, also, saying that they'd like some time

3  to review the process and figure out what, if anything, they

4  would like to see be part of that process.

5          And my next question is, you know, the Defendants

6  can make those suggestions, but what if they're not agreed

7  to, then what are we doing?  Am I deciding?  I would think I

8  am.  I don't think you can just Judge Tancredi, if he's the

9  mediator, making decisions about what the procedures are

10 piecemeal.  That doesn't seem to make sense to me, otherwise,

11 it defeats the whole purpose of mediation.

12         MR. OSWALD:  Yes, in my experience -- and we've

13 done it many times -- is that to the extent there was a

14 dispute, you as the sitting judge, would resolve that and

15 we'd send it to mediation.  And, also, as the trustee

16 indicated, I've had to stagger -- again, you can imagine 1200

17 actions filed at one time -- and we worked and staggered

18 those with the mediator.  You know, some of them are not as

19 complicated as others, Your Honor.

20         THE COURT:  Right.

21         MR. OSWALD:  And some have, you know, not a lot of

22 diligence to be done and the trustee takes measure of that

23 and -- listen, it's in everybody's best interests, starting

24 with the Defendants, who have to come out-of-pocket, like our

25 client, to do this as expeditiously and as efficiently as

1  possible.  And I certainly pledge to the Court and the

2  trustee to do that and help as I can.

3           So, again, I don't think coming to agreement on

4  mediation terms, you know, the one point, if I read it

5  correctly, there was going to be a mediation statement --

6  I'll call it a mediation statement -- from the defense side,

7  but then it was -- it didn't seem clear as to whether or not

8  we were going to get the benefit of the trustee's side.  And,

9  at least in my experience, these things work best.  There

10 shouldn't be any hide-the-ball and we should put forth our

11 statements and facts and where we stand on the law, have a

12 good faith discussion, and I think a lot of this will get

13 narrowed down.

14          Now, listen, I think the alter-ego issue may well

15 be a novel one.  As I said, I've been involved in literally

16 thousands of these actions -- not thousands of alter-ego

17 ones -- but I just can't bring my own specific expertise to

18 it because I've not had the alter-ego issue raised in this

19 fashion.

20          But you may well, Your Honor, see somewhere, you

21 know, the defense is going to be able to show value and the

22 value seems to me, if what the trustee is saying, that the

23 debtor and the third-party nondebtor entities should be

24 treated one in the same, well, if you can establish value to

25 the debtor, then you're not going to have a fraudulent

1   conveyance action.  But I'm not -- I don't want to get into

2   the substance and I don't think that's the point of this

3   conference.

4           Your Honor wants to have these things move along

5   efficiently.  The trustee wants that.  The defense should

6   want that.  And if there's going to be a motion -- am I

7   right, did I understand it correctly -- I apologize if I

8   didn't -- that there's going to be a formal motion to approve

9   the procedures and then you'll set a deadline for responses

10  and then we'll get into it?

11          THE COURT:  Well, the motion was filed yesterday

12  in all of the adversary proceedings.  It is not -- it does

13  not, at this point in time, have a process for objection --

14  an objection deadline.  In our Local Rules, motions can be

15  set for hearing -- in adversary proceedings, can be set for a

16  hearing at the direction of the judge.  There's not

17  necessarily an objection deadline; however, you know, parties

18  can insist that there should be an objection deadline and

19  then you can proceed accordingly.

20          MR. OSWALD:  Yeah.

21          THE COURT:  We don't have, as do other

22  jurisdictions, mandatory mediation in adversary proceedings,

23  so when these things occur, they usually occur on a smaller

24  scale and we're able to address them that way.

25          Now, this is a bigger scale and the issue is how

 1   do we address them appropriately?  And one of the reasons for

 2   having a status conference was to discuss these issues.

 3           The motion for the -- to modify the avoidance

 4   procedures to include the mediation procedures was just filed

 5   yesterday, as I said.

 6           MR. OSWALD:  Okay.  Thank you and I was in

 7   transit, so I didn't see it.

 8           But I get it and I think that -- again, I guess

 9   the suggested procedures were Friday night.  Listen, my

10   suggestion is set an objection deadline and the parties will

11   have an opportunity now that the motion is filed and, you

12   know, we'll discuss, as I said, among ourselves.  I've

13   already taken the liberty to reach out to some counsel that I

14   know.  I'm a little bit handicapped traveling, but I tend to

15   do that, and I think folks should cull their formal

16   suggestions, formal edits to the procedures, share them with

17   the trustee, set an objection deadline, and then we'll come

18   back.  I mean, I think that's the way you get it down on a

19   timeline.  Everybody work off the same clock and calendar.

20           THE COURT:  Okay.  Thank you, Attorney Oswald.

21           Is there anything else you'd like to note for the

22   record?

23           MR. OSWALD:  No, Your Honor.  Thanks, again, for

24   allowing me to appear remotely.

25           THE COURT:  You're welcome.  And your specific

1  circumstances were taken into consideration, so I appreciate

2  that.

3            Anyone else wish to be heard?

4            MR. BAER:  Thank you, Your Honor.  Hank Baer, on

5  behalf of several Defendants in the adversary proceeding.  I

6  apologize for not appearing earlier; we didn't intend to

7  speak up.  With me in court is Mr. Gottesman from New York

8  City.  We're working co-counsel on behalf of the Defendants.

9            We filed a pro hac for Mr. Gottesman recently.  I

10  don't believe it's been granted yet.

11            THE COURT:  It probably hasn't been acted upon

12  yet, because we've been in other hearings.

13            In any event, counsel, would you just state your

14  name and spell your name for the record, for the courtroom

15  deputy, please.

16            MR. GOTTESMAN:  Oh, certainly, Your Honor.  Thank

17  you and good afternoon.  My name is Andrew Gottesman, G-o-t-

18  t-e-s-m-a-n.  I'm with Mintz & Gold.  We represent Fox News

19  and Markham LLP, two adversary defendants.

20            As Mr. Baer said, we weren't planning on

21  addressing the Court this afternoon, but what we'd like to do

22  is lend our voice to the chorus on behalf of all of the

23  Defendants to suggest that an objection deadline and a

24  hearing date be set for everybody to have an opportunity to

25  have input.  We have some concerns with the procedures, but

1    we understand that, generally, mediation is a good idea.  We

2    think it'll be functional here, so we're onboard with the

3    idea, but we'd like to have the opportunity before an order

4    gets entered, to bring those up with the trustee, have

5    discussions, and then have the Court have a date set in case

6    we're not able to, or Mr. Oswald or anybody else is not able

7    to agree with the trustee, to have the Court rule on the

8    mediation procedures before an order is entered.  And so

9    we're just basically lending our voice to the other parties

10    that have arisen to ask for that same, basically that same

11    type of procedure, which is an objection deadline and then a

12    hearing date.

13         My sense is that hearing enough people at the same

14    time, and I'm sure the trustee would be reasonable, and

15    everybody can reach a reasonable accommodation on a good

16    timeline so these things don't drag, and that's not in

17    anybody's best interests, but we would like the opportunity

18    to both, discuss our comments to the procedures with the

19    trustee and then if we're not able to reach an accommodation

20    with the trustee or agreement, to have Your Honor rule on the

21    Court believes the proper procedures should be.

22         THE COURT:  Okay.  Thank you.

23         When you say -- and I didn't ask prior counsel

24    this, so it's a little unfair but -- it's not really

25    unfair -- discuss your -- discuss the issues that you see

1   with the trustee.  I mean, you know, wouldn't a way to do

2   that would just have you mark up what the trustee's already

3   proposed and say what your problems are with it, if any, or

4   what you agree to?

5            I mean, if we all start having discussions -- and

6   I think -- I'm not suggesting that you're not going to.  I'm

7   listening to what everyone's saying -- you know, we're not

8   going to have discussions for three months.  You know, it's

9   going to be -- there's -- the card is on the table, right.

10  You now need to figure out whether you want to pick it up and

11  how you want to pick it up, right.  So you need to -- I think

12  when we talk about these discussions, if they are going to

13  happen, you know, the Court is not -- if the Court agrees

14  that there should be some form of period for an objection

15  deadline and discussions, it's not going to be a substantial

16  amount of time, and so it's going to be incumbent on the

17  Defendants to do what they need to do in that time frame or

18  maybe they lose any rights to complain or argue about what

19  the process is.

20           MR. GOTTESMAN:  I couldn't agree more, Your Honor.

21           THE COURT:  Okay.

22           MR. GOTTESMAN:  I absolutely agree 100 percent.  I

23  don't think this should drag on infinitely.

24           And, frankly, I think if there isn't a hard

25  deadline, that's exactly what's going to happen and then

1 │ Mr. Despins and his counsel are going to have to kind of do

2 │ this piecemeal.

3 │         I think if there's an objection deadline, then

4 │ parties will have the opportunity to both, reach out to the

5 │ trustee with a markup of the procedures saying, These are our

6 │ issues.  Maybe there will be a discussion.  I would imagine

7 │ that there would be.  But at the end of the day if those

8 │ discussions aren't fruitful, an objection has to be filed,

9 │ there's a set date, and then there's a hearing date.  And

10 │ that way, these things don't drag on infinitum and, also, it

11 │ doesn't burden the Trustee's Office any more than they are

12 │ with this number of adversary proceedings and, frankly, the

13 │ number of comments I anticipate them having to shuffle

14 │ through and be able to have some kind of dialogue with

15 │ everybody who gives those comments.

16 │         THE COURT:  And when I said the word "complain," I

17 │ don't mean complain in a negative way.  I mean, you have the

18 │ right to raise an issue, right?

19 │         MR. GOTTESMAN:  Understood, Your Honor.

20 │         THE COURT:  So I didn't mean that in what could be

21 │ thought to be that you don't have a basis.  You have a basis.

22 │ If you have a basis, you have a basis.  It's not a complaint

23 │ in a negative way, just to be clear on that.

24 │         So, you're suggesting that there be a discussion

25 │ period at which point that discussion period cuts off and

 1  then you have a few days to file an objection and then

 2  there's a hearing; is that what you're suggesting?

 3          MR. GOTTESMAN:  I'm suggesting you just set an

 4  objection deadline.

 5          THE COURT:  All right.

 6          MR. GOTTESMAN:  I think the natural course of

 7  things is for people to discuss.

 8          THE COURT:  Well, you can't start talking to the

 9  trustee on the objection deadline.  That's not going to work

10  either, though.  I want to make that very clear if I go down

11  that path, any defendant that comes to me and says they start

12  talk -- if I do that, if I do what people are considering and

13  suggesting, if I hear that they talked to the trustee on the

14  objection deadline, that's not going to be very persuasive to

15  me.  I just want to be clear about that, if that is where the

16  Court ends up.  You know, there's -- I think that's clear.  I

17  think what I've said is clear.

18          MR. GOTTESMAN:  I agree, Your Honor.

19          And I think setting an objection deadline is the

20  natural way to have what would be considered a discussion

21  period.  In my experience, that is what happens.

22          THE COURT:  Well, I would hope so.

23          MR. GOTTESMAN:  Yeah, exactly.

24          And then parties have an opportunity to object if

25  that doesn't get resolved, then Your Honor has an opportunity

 1  to rule.

 2           THE COURT:  Okay.  Thank you.

 3           MR. OSWALD:  Your Honor, Frank Oswald.

 4           May I swing back for a second?

 5           THE COURT:  Sure, go ahead.  Attorney Oswald, go

 6  ahead.

 7           MR. OSWALD:  Thank you, Your Honor.  Frank Oswald,

 8  again, for the record, for the Clayman Defendant.

 9           I agree with the Court's comment.  I took it as a

10  given, but perhaps if you were leaning towards going this

11  way, there's a date by which folks will submit their

12  comments, redline or otherwise, to trustee's counsel, and

13  then a subsequent date for the formal objection.  I don't see

14  why anybody would have a problem with that approach.

15           MR. GOTTESMAN:  We have no problem with that

16  approach, Your Honor; in fact, I think it would help clarify

17  things for the trustee and the Trustee's Office.  And that, I

18  imagine, many of those comments are going to be similar.

19           MR. DESPINS:  Neither do we, Your Honor.

20           THE COURT:  Okay.  All right.

21           Well, you know, that's one of the points of having

22  the conference today, right, is to discuss these issues.  And

23  one of the reasons why I stated that we needed to have a

24  motion to work off of.  And Trustee Despins started off, I

25  think I'm correct, Trustee Despins, in saying that when you

1    started talking today, you said that this is a dialogue,

2    right?  So this is a dialogue.

3                MR. DESPINS:  Yes.

4                THE COURT:  And so, Attorney Bassett and Trustee

5    Despins, are you saying that you would be in agreement to

6    some form of process that's been discussed, meaning, that

7    there would be a date by which -- well, everybody now -- the

8    problem -- the only different -- the only difficulty that I

9    see right now, and maybe I'm wrong, on the U.S. Defendants,

10   the Defendants that can be served in the U.S., is they've got

11   to be served with the motion.  I mean these people have them,

12   but not everybody has it, right.  People that are here today,

13   obviously, they couldn't be here if they didn't know that

14   there was a motion.  They know there's something.  They're

15   here.  They have filed appearances.

16                But you have many other adversaries which no one

17   has filed an appearance yet, and there's no need to file an

18   appearance yet because of the avoidance procedures.  So I

19   think if we're going to do this, you've got to serve them

20   with the motion for -- or this amended motion for the

21   mediation procedures.  And I know that's burdensome in some

22   respects.  I'm not suggesting it's not.  But if you want to

23   go through this process and not have people challenge it,

24   ultimately, that might be the better way to proceed.

25                MR. BASSETT:  So, Your Honor, that's a fair

1  comment.  And I think -- a couple of thoughts in response.

2  First, as I understand it, again, from talking to my team,

3  who's been primarily dealing with the service issues, we have

4  been able to serve the summons and complaint on all of the

5  Defendants who are located in the United States, and I don't

6  expect that it would be a huge problem.  It may obviously be

7  some cost to the estate, but I think we could feasibly go

8  ahead and serve the motion, which under the Rules, can

9  primarily be done by mail --

10          THE COURT:  Right.

11          MR. BASSETT:  -- on all the Defendants, as well.

12          The one other thought I have in response, which

13  relates to another issue, is that I -- while we're happy to

14  do this as an accommodation, I think it could be a very

15  useful exercise both, to eliminate objections, and some of

16  the Defendants, frankly, may have good suggestions that make

17  the mediation procedures better, so I think that's great, but

18  I don't think it is necessarily a requirement before the

19  Court enters an order like this, that all parties have notice

20  and an opportunity -- I mean, the Court already -- and we've

21  cited precedent to this when we did it previously -- but the

22  Court entered the avoidance actions procedures order prior to

23  the complaints even being filed.  And those --

24          THE COURT:  That was a little different, though,

25  and what it did was it gave 60 days, an additional 60 days,

1  which I envisioned as a time for you and all the trustee's --

2  and the people on the trustee's team to have discussions with

3  the Defendants' counsel, even before there might be

4  mediation, right, because if these buckets are created and

5  there's a bucket of what -- I'm going to use the trustee's

6  example, a business, like a FedEx, then you might be able to

7  have a discussion and a resolution with FedEx before anybody

8  files a notice of appearance or an answer, right.  That's the

9  way I envisioned the avoidance procedures were to benefit

10 that, to be beneficial to, gee, we might be able to

11 actually -- instead of starting to incur a lot of fees and

12 costs, and you're going to have to -- I'm not suggesting that

13 fees and costs are not going to be incurred -- but that you

14 would be able to say, Okay, here's 40 of them -- and maybe

15 that's not the right number -- that we can settle right now,

16 so let's just do that.

17         MR. BASSETT:  And, Your Honor, I understand that

18 and I think there is a distinction, certainly, between that

19 motion and the current mediation procedures motion.  I do

20 think that the current mediation procedures motion is also

21 beneficial to the Defendants in that they no longer have an

22 answer deadline, right.  They have an appearance deadline,

23 not a substantive response deadline.

24         THE COURT:  Well, the current motion doesn't say

25 that.  The amended motion --

1          MR. BASSETT:  The amended motion will.

2          THE COURT:  -- that you're going to file is going

3     to say that.

4          MR. BASSETT:  That's correct, Your Honor.  That's

5     the intent.

6          But the real reason I raise this, too, is that it

7     does create a bigger issue for the Defendants, who are

8     located abroad, because there's just no practical way any of

9     those Defendants, let alone all of them -- and by the way,

10    Your Honor, I don't have --

11         THE COURT:  Well, that may be why you have to put

12    things in certain buckets, right.  I mean, there's got to be

13    some adversary -- well, maybe I'm wrong.  I mean, I didn't

14    look at them.  I'm not going to look at them unless and until

15    it's necessary for the Court to look at them, right.  But I

16    would think, but maybe I'm wrong, that there are adversary

17    proceedings in which all of the Defendants are in the United

18    States.

19         MR. BASSETT:  That's true, Your Honor.  I don't

20    think it'll make -- there would necessarily be a substantive

21    distinction in those claims, subject to maybe some personal

22    jurisdiction arguments, I suppose.

23         But the point I was trying to make was just that

24    it would be the trustee's preference that whatever mediation

25    procedures are entered are uniform and apply to all the

1  Defendants.

2          THE COURT:  I understand.

3          MR. BASSETT:  And part of the issue, obviously, is

4  if you get to have a second set for foreign Defendants or

5  (indiscernible), even those aren't going to be answered on

6  the same timeline.

7          THE COURT:  Well, then you need to think about how

8  you want to deal with that.

9          MR. BASSETT:  And my suggestion was that this

10  order would apply across the board, even as to those foreign

11  Defendants.

12          THE COURT:  But I don't know that you -- you know,

13  how are you going to do that?  How are you going to bind

14  foreign Defendants who haven't been served, but you can bind

15  U.S. Defendants who have been served who didn't give you any

16  comments?

17          MR. BASSETT:  And, again, Your Honor, it's the

18  same logic that underlied the avoidance action procedures.  I

19  understand the distinction the Court is drawing.

20          THE COURT:  Well, I don't think it's the same.

21          MR. BASSETT:  I understand that.

22          THE COURT:  Because it was really with regard to,

23  we were very specific in the avoidance procedures about what

24  the time frame was to serve U.S. Defendants and Defendants

25  outside of the United States.  And the time frames that then

1   were triggered from that service were in that order.  And

2   what the rules require, with regard to Defendants outside of

3   the United States, is to give additional time for service

4   and/or that out-of-United States Defendant to figure out what

5   they're going to do, whether they're going to retain counsel

6   or not, right.  That's what the Rules say.

7           MR. BASSETT:  Right.  Understood.

8           But, Your Honor, that's not changing, though,

9   right, because --

10          THE COURT:  No, that's not changing at all.

11          MR. BASSETT:  Right.

12          THE COURT:  And so, I'm not suggesting that should

13  change, but I'm saying I don't know if you can bind the

14  Defendants outside of the United States in the same if you

15  just served the Defendants in the United States with the

16  motion for -- the amended motion for an order providing for

17  mediation procedures as part of the avoidance actions.

18          You know, maybe you can, but I'm sitting here and

19  the issue I have -- it's not an issue -- a concern is you

20  want this to work.  That's the whole point.  You want this to

21  work.  You want this to be a process that goes forward and

22  hopefully -- but, you know, we all know it may not happen --

23  but hopefully resolves a great portion of these adversary

24  proceedings without the need for trial, because in most of

25  these adversary proceedings, and you can all tell me that --

1  I'm using most as more than 50 percent -- I don't know what

2  the percentage is -- but in most of these adversary

3  proceedings, we're not dealing with novel issues of law;

4  we're dealing with preferences and fraudulent transfers and

5  fraudulent conveyances.  That's what we're dealing with,

6  right.  And the whole (indiscernible) reason to do this is to

7  try to see if these can be resolved for both sides of the

8  equation, not just the trustee's side, but the Defendants'

9  side, without having to incur a lot of time and costs and

10 energy.  But I think you need to think about the foreign

11 Defendants.

12       And I don't think -- you know, I will say one

13 thing to the Defendants, if you're not a foreign Defendant,

14 I'm not going to listen to whatever argument you make about a

15 foreign Defendant.  It doesn't matter.  You can make whatever

16 argument you want to make about your Defendant in the United

17 States.  I don't want to hear that I want to make this

18 argument for all the Defendants.

19       All the Defendants, they want to make their

20 argument, they can make their argument.  You're here for your

21 arguments; that's who you're here for.  But that requires

22 that there be service on the Defendants so they can determine

23 whether they want to make an argument or raise issues.

24       It isn't -- the motion is not on the calendar yet.

25 It hasn't been addressed yet, other than in the context of

1  this status conference.  So, there's a couple of things we

2  can do.  We can do nothing today.  You can think about it and

3  we can come back for a further status conference.  You can

4  say, I want you to figure out, Judge, whether or not you're

5  going to set an objection deadline or set a deadline by which

6  all the comments have to be given to the trustee, then have

7  an objection deadline, then have a hearing deadline, a

8  hearing date.  I can do that, too, or I can just set the

9  matter for hearing because I think it should be set for

10 hearing and then we can go from there.  I think those are the

11 three options.  I'm not sure what other option, but you can

12 all take -- if you want me to take a recess and y'all want to

13 talk about it, that's fine, too.  This is a status

14 conference, so it's not as if anyone has been completely --

15 has their roadmap completely in line, in my opinion, at this

16 point.

17          MR. BASSETT:  Your Honor, I think I may be helpful

18 to take a five-minute recess.

19          THE COURT:  Yeah, I think we should take a recess

20 and then you can all talk about it, okay.

21          Why don't we take a little bit more than a five-

22 minute recess.  It's a few minutes before 3:00.  Why don't I

23 come back at 3:15, okay.

24          The Court is in recess.

25      (Recess taken at 2:58 p.m.)

1          (Proceedings resumed at 3:16 p.m.)

2              THE CLERK:  All rise.  The United States

3    Bankruptcy Court for the District of Connecticut is now

4    (indiscernible) after recess.  The Honorable Julie Manning

5    presiding.

6              THE COURT:  Please be seated.

7              So we're going to keep the windows -- the doors

8    open so the alarm won't go off again.

9              UNIDENTIFIED FEMALE SPEAKER:  I think she's

10   unplugged --

11             MS. CLAIBORN:  I unplugged it.

12             THE COURT:  Oh, you did?  Okay.

13             MR. BASSETT:  You never know how bad the air

14   quality is.

15             THE COURT:  It didn't say dead; it just said poor,

16   so I think there was --

17        (Laughter)

18             THE COURT:  I think that the air quality isn't

19   that great.

20             Did you -- there was -- that door was open for a

21   reason.  Would somebody mind --

22             MR. DESPINS:  There was a stopper.

23             THE COURT:  There was a stopper there so we can

24   all breathe.

25        (Laughter)

1          THE COURT:  Thank you, Attorney Baer.  I

2  appreciate that.

3          So we are back on the record after the recess.

4  And I don't know, Trustee Despins, is there anything you want

5  to report or trustee -- or Attorney Bassett, excuse me?

6          MR. BASSETT:  Yes, Your Honor.

7          Again, for the record, Nick Bassett from Paul

8  Hastings on behalf of the trustee.

9          So we used the time, I think, fairly efficiently.

10  We had a conversation with defense counsel.  Obviously,

11  anyone who feels necessary can correct me if I get it wrong

12  or if they object to the procedures that I outline, but what

13  we talked about was that we would -- that the trustee would

14  make the revisions to the order that we've already discussed

15  and any others that we are prepared to make right now, so we

16  are then presenting a revised, proposed order with our

17  motion.

18          We will then file a certificate of service

19  indicating that we have served the motion and that revised

20  proposed order on the Defendants by this Friday.  Thereafter,

21  the parties, the Defendants would have 21 days to object.  We

22  initially had wanted something closer to 10 or 14.  Some of

23  the Defendants said that it would be helpful to have

24  additional time to submit comments, work through those, and

25  then do an objection, if necessary, so we ultimately -- we're

 1  willing to say 21 days and we would --

 2            THE COURT:  Twenty-one days from March 22nd?

 3            MR. BASSETT:  Twenty-one days from this Friday,

 4  which would be --

 5            THE COURT:  Which is March 22nd.

 6            Okay.  Go ahead.  I just want to make sure I

 7  understand the dates.

 8            MR. BASSETT:  And then the idea, sort of

 9  consistent with the discussions that occurred earlier, would

10  be that parties would have an opportunity to, obviously,

11  discuss any changes they have or want to suggest.  You know,

12  we'll try to accommodate as many of those as we can.  To the

13  extent that objections are filed, those will be filed, and,

14  thereafter, you know, we'll file a reply on a week after that

15  or whatever the Court thinks would work and then have a

16  hearing.

17            And then whatever order the Court might enter

18  following that hearing would be an order that is binding on

19  the parties who were served and had an opportunity to object

20  to the motion.  As to anyone who has not been served, whether

21  that's a foreign Defendant or others, we will have to deal

22  with those in due course.  But, generally, the trustee is

23  comfortable with the process that I've outlined and we think

24  it should work.

25            THE COURT:  Okay.  So let's step back so I make

1   sure I understand.  I understand, but I want to get dates.

2           So by this Friday, the 22nd of March, the trustee

3   is going to file and serve an amended order or motion?  I'm

4   sorry.  Are you doing both?

5           MR. BASSETT:  I would anticipate that it would

6   just be the motion that we filed with a revised proposed

7   order.

8           THE COURT:  Okay.

9           MR. BASSETT:  But as we evaluate that, if we need

10  to file an additional cover motion with it, we may do that.

11          THE COURT:  Okay.  That's fine.

12          And then you're going to file and you're going to

13  serve by the 22nd; is that right?

14          MR. BASSETT:  That's correct.

15          THE COURT:  Okay.  So then everybody will have

16  until April 12th to file a written objection?  That's the

17  objection deadline?  That's 21 days.

18          MR. BASSETT:  Don't have any calendar open, Your

19  Honor, but if it's 21 days, then that's correct.

20          THE COURT:  That's 21 days.

21          And then what happens after that?  We have a

22  hearing when?

23          MR. BASSETT:  Subject to the Court's availability,

24  obviously, the trustee would like the opportunity to submit a

25  reply, if necessary, in response to any objections that might

```
 1  be filed.  Like, if we had, you know, 5 to 7 days to do that,

 2  that would be sufficient and then we could have a hearing.

 3              THE COURT:  All right.  Let me take a look at the

 4  calendar, please.

 5              Now, April 12th is a Friday and that's the

 6  objection deadline and you want an opportunity to file a

 7  response, which I understand.

 8              MR. BASSETT:  And, Your Honor, we don't need that

 9  much time.  By the middle of that next week should be fine.

10              MR. DESPINS:  The 17th.

11              MR. BASSETT:  The 17th, is that Wednesday?

12              MR. DESPINS:  Yeah.

13              MR. BASSETT:  The 17th would be okay, Your Honor.

14              THE COURT:  Well, we can either do the hearing on

15  Monday the 22nd or Tuesday the 23rd in the afternoon.

16              MR. BASSETT:  Either of those works for the

17  trustee, Your Honor.

18              THE COURT:  Okay.  Then why don't we say Tuesday

19  the 23rd at 1:00 p.m.?  I think you need an order saying --

20  having these dates in or you'll have to create a notice with

21  these dates, Attorney Bassett.  Whichever way you prefer, I

22  don't really -- I mean, I guess you would -- I would like you

23  to create a notice, right, that you -- I don't know.  If

24  you'd rather have an order, that's fine.  It could just say

25  order -- you know, scheduling order in connection with
```

1  amended motion to modify avoidance procedures with mediation

2  procedures or something.

3          MR. BASSETT:  We're happy to submit a proposed

4  order later today or tomorrow.

5          THE COURT:  That would be fine, thank you.

6          All right.  So, then, as far as the status

7  conference is concerned on the mediation issues, that seems

8  to resolve the mediation issues; is that correct?

9          MR. BASSETT:  I believe so, Your Honor.

10          THE COURT:  Okay.  Then, with regard to the

11  pending motions to stay, the two adversary proceedings, the

12  omnibus alter-ego and the --

13          MR. BASSETT:  Civil RICO, Your Honor.

14          THE COURT:  -- civil RICO, summonses haven't even

15  been issued in those cases, have they?

16          MR. BASSETT:  I believe they have finally been

17  issued, Your Honor, and I think we have actually served those

18  complaints on the Defendants located in the United States, as

19  well.

20          THE COURT:  But you'd like an order staying those

21  right now?

22          MR. BASSETT:  That's correct, Your Honor.

23          THE COURT:  And in my recollection, even if the

24  order doesn't say it, what it will say -- what it can say in

25  it is that if someone believes the stay should be lifted,

1  they can file a motion seeking to lift the stay.

2          MR. BASSETT:  I believe that is in the order, Your

3  Honor.

4          THE COURT:  Even if it isn't, we'll put it in.

5          MR. BASSETT:  It's a necessary right that anyone

6  would have, in my view.

7          THE COURT:  But I think it needs to be stated in

8  the order, okay.  So those are -- under our Local Rules in

9  the District of Connecticut Bankruptcy Court, when a motion

10  is filed in an adversary proceeding, and I know it was filed

11  in the main case, too, but it's seeking relief in the

12  adversary proceeding, those two adversary proceedings, the

13  Court may or may not schedule a hearing.  It's within the

14  Court's discretion and I see no reason to schedule a hearing

15  on those two motions to stay, those two specific adversary

16  proceedings and, therefore, the order will enter, subject to

17  if it doesn't say what I just said it said, I'm going to --

18  will add that, you know, the parties can seek relief from

19  that order.

20          Attorney Kindseth?

21          MR. KINDSETH:  May I be heard, Your Honor?

22          THE COURT:  Yes, you may.

23          MR. KINDSETH:  Thank you, Your Honor.

24          Stephen Kindseth for the Defendant Mei Guo.

25          THE COURT:  In what adversary proceeding?

1          MR. KINDSETH:  And this is in the RICO action,

2    Your Honor.

3          THE COURT:  Okay.

4          MR. KINDSETH:  We did have some comments, which we

5    shared with Attorney Bassett yesterday and I believe --

6          THE COURT:  As to the proposed order?

7          MR. KINDSETH:  Concerning the proposed order.

8          THE COURT:  Okay.

9          MR. KINDSETH:  We are in agreement with the

10   substance of the stay.  We did ask for some clarifications

11   and I believe the trustee is receptive to those; in

12   particular, we just wanted to make clear, and we understand

13   the policy behind the motion, which is in summary, that

14   discovery should not be pursued while there's a separate

15   criminal proceeding in which the government would perceive a

16   possible prejudice or the parties to the criminal proceeding

17   perceive some prejudice in discovery being obtained or

18   witnesses that are anticipated to be testifying in the

19   criminal proceeding may be deposed.

20          And so in terms of the purpose of the stay, we're

21   supportive of that stay entering; however, we wanted to make

22   clear, as we have filed a motion to withdraw the reference,

23   we wanted to make sure that there's some clarity in the order

24   that the stay is not staying the District Court or the

25   District Court's consideration to the motion --

1          THE COURT:  Well, why would you want the District

2   Court to consider a motion to withdraw the reference when the

3   adversary proceeding is stayed?  Isn't that a waste of

4   judicial resources?

5          MR. KINDSETH:  Your Honor, the purpose behind the

6   stay, as I understand it, is to ensure that the parties to

7   the criminal proceeding are not prejudiced through discovery,

8   including documents or witness depositions.  Having the legal

9   merits of the withdrawal of the reference heard, which, in

10  part, raises the legal issues of the validity of claims in no

11  way prejudices the parties to the criminal proceeding.

12          And as the allegation --

13          THE COURT:  Well, it may not prejudice the

14  parties, but it may prejudice the District Court.  Why would

15  we put the District Court in that position --

16          MR. KINDSETH:  Because we --

17          THE COURT:  -- where they don't need to determine

18  a withdrawal of the reference if the adversary proceeding is

19  stayed?

20          MR. KINDSETH:  We believe that the allegations

21  against our client are completely without merit --

22          THE COURT:  I understand that.  That has nothing

23  to do with what I just said.

24          MR. KINDSETH:  There's no reason --

25          THE COURT:  So, why would you put the District

1  Court in that position?

2          MR. KINDSETH:  Because we would like the case in

3  that regard to proceed.

4          THE COURT:  What if they deny your motion?

5          MR. KINDSETH:  Then the stay would be in effect in

6  all other regards.

7          We believe the District Court should hear it.  We

8  have an interest in having the adjudication of legal issues.

9  There are some very serious allegations that are being made

10  against my client, which we believe are completely

11  unfounded --

12          THE COURT:  Do you really think the District Court

13  is rule on the motion to withdraw the reference when the

14  adversary proceeding is stayed?

15          MR. KINDSETH:  I think --

16          THE COURT:  Do you really think that?

17          MR. KINDSETH:  I think it should be clear that the

18  Bankruptcy Court should not stay the District Court.

19          THE COURT:  But the Bankruptcy Court isn't staying

20  the District Court, Attorney Kindseth.  That wasn't my

21  question.

22          MR. KINDSETH:  And so we would like to have it

23  clearly provide that this Court is not staying -- and you're

24  right, Your Honor, the District Court will take up in its due

25  course, the withdrawal of the reference and we're simply

1  seeking clarity in the order, which I believe the trustee did

2  not oppose in the order, that the proceeding concerning the

3  motion to withdraw the reference is not being stayed.

4           THE COURT:  Okay.  That's fine.

5           MR. KINDSETH:  Thank you very much, Your Honor.

6           THE COURT:  Just understand that, you know, the

7  District Court has many other matters to deal with, besides

8  motions to withdraw the reference.  So, you can do whatever

9  you want, but I don't think that you should have an

10  expectation that they're going to act on it when the

11  underlying adversary proceeding is stayed.

12           MR. KINDSETH:  I appreciate that, Your Honor.

13           MR. BASSETT:  Your Honor, just briefly in response

14  to Attorney Kindseth's comments.  So, he's correct, we did

15  briefly discussions this issue.  The trustee does not have a

16  problem with making the obviously clear, to the extent that

17  that's necessary, which is that Your Honor is not going to be

18  telling the District Court what to do.

19           That said, we agree entirely that I can't imagine

20  any world there would be in which the District Court would

21  want to spend the time and effort considering this motion in

22  an adversary proceeding that's stayed.  So I imagine we will

23  file a notice of some kind with the District Court to make

24  the District Court aware of the stay once it enters, but

25  that's not the same thing as this Court instructing the

 1  District Court what to do.  And if that's what Attorney

 2  Kindseth is concerned about, we have no issue.

 3          THE COURT:  This Court has no authority to

 4  instruct the District Court what to do.

 5          MR. BASSETT:  Understood, Your Honor.

 6          THE COURT:  That's very clear.

 7          Okay.  So you don't have an agreed-upon order; is

 8  that what you're telling me?

 9          MR. BASSETT:  We'll work it out.

10          THE COURT:  Okay.  So, will you -- when -- when do

11  you think that order will be submitted, those orders, because

12  it's too -- well, yours is only in one, so I don't know.  You

13  only represent Mei Guo in the RICO action, not in the alter-

14  ego action, correct?

15          MR. KINDSETH:  I -- we haven't filed an

16  appearance, yet, but we will be representing her in that.

17          THE COURT:  Okay.  Well get --

18          MR. KINDSETH:  But I'm speaking on her behalf in

19  that regard, as well.

20          THE COURT:  Get that appearance on file, please.

21          MR. KINDSETH:  Thank you.

22          THE COURT:  So how much time do you both need?

23  Are you think you're going to do it by the end of this?  I

24  don't have a problem with whatever time frame you want, I

25  just need to know.

1          MR. BASSETT:  I would say by tomorrow.

2          MR. KINDSETH:  We'll do it in -- if you would set

3  a seven-day deadline, just to make sure, but we'll do it in

4  days.

5          THE COURT:  I'm going to do it by this Friday,

6  the 22nd.

7          MR. KINDSETH:  Thank you, Your Honor.

8          THE COURT:  All right.  So that addresses the stay

9  motion -- stay motions, I should say.

10          MR. DESPINS:  Your Honor, I just want to -- this

11  is Luc Despins for the record -- I want to be clear, the stay

12  of the alter-ego, omnibus complaint for alter-ego does not

13  stay any actions that are already pending; that means

14  Greenwich Land, whatever remains of HCHK --

15          THE COURT:  That were pending before the avoidance

16  actions began --

17          MR. DESPINS:  Sure.  Correct.

18          THE COURT:  -- that's correct.

19          MR. DESPINS:  Pending before the motion -- the

20  complaint for alter-ego was -- exactly, Your Honor.

21          THE COURT:  Yes.

22          MR. DESPINS:  And, also, there's a carve-out for

23  an entity called K Legacy.

24          THE COURT:  I saw that.  I did see that.  And I

25  see that they're named Defendants.

1          All right.  So the stay orders will be submitted

2    on or before March 22nd.

3          So, what else do we need to discuss at the status

4    conference?

5          MR. BASSETT:  Think that's all, Your Honor.

6          THE COURT:  Okay.  The only thing I would note for

7    the parties is that -- or for the trustee, not for the

8    parties -- certain people have sent emails to the Clerk's

9    Office about, I suppose they're Defendants in adversary

10   proceedings, I'm not really sure.  I'm not looking at them.

11   We don't look at letters in that vein.  We're not going to

12   docket them.  I think what will happen is the Clerk of the

13   Court will send a letter to those parties who sent emails to

14   the courtroom deputy email box and say, you either need to

15   file a pleading or you need to get in touch with Trustee

16   Despins.  That's what we're going to do.  I just want you --

17   there's two, only two, is what my understanding is.  But I

18   don't even know if they are a Defendant.  I'm not going to

19   put it on the docket because I don't think it's appropriate

20   under the circumstances of this case in the adversary

21   proceedings, with regard to confidentiality and protective

22   orders.  I have no idea whether these people should be part

23   of the action.  I am not going to worry about that.

24         The Clerk of the Court will send correspondence to

25   say, you can't file anything in email to the courtroom

1  deputy.  If you would like to file something, you must file

2  them in the adversary proceeding to which you have an

3  interest and/or you should contact Trustee Despins, okay.

4  That's what we're going to do with regard to these two emails

5  that the Courtroom Deputy email box received, and I suppose

6  if any other kind of correspondence like that is received,

7  because it just -- with the confidentiality issues, I'm not

8  going to have to worry about whether or not something should

9  be docketed if it's received that way, okay?

10            MR. BASSETT:  Understood, Your Honor.

11            THE COURT:  All right.  Anything else?

12            MR. BASSETT:  I don't think so.

13            THE COURT:  All right.  Well, I think that

14  concludes the status conference.  And then anybody that was

15  only here to the status conference is obviously, as you

16  could, regardless -- I don't have to tell you -- but you're

17  obviously allowed to leave if you'd like to.

18            COUNSEL:  Thank you, Your Honor.

19            THE COURT:  Okay.  All right.  Thank you.

20            COUNSEL:  Thanks again.

21            THE COURT:  Thank you.

22            All right.  Then, let's turn to, I think we're now

23  on the fee applications and/or the application to employ

24  counsel; is that right?

25            MR. DESPINS:  That's correct, Your Honor.

```
 1              THE COURT:  All right.  Go right ahead, please.
 2              MR. DESPINS:  So, perhaps, I'll start with the
 3    application to retain counsel, and this is Swiss counsel.
 4    The name of the law firm is Praeger.  As we mentioned in the
 5    motion that was filed with the Court and there was a revised
 6    order at Docket 3004, we need to retain Swiss counsel because
 7    we've discovered through our investigation that there is
 8    activity in Switzerland, transfers made, you know, large
 9    transfers made.  There may be assets there.
10              And Swiss law does not recognize the trustee, even
11    though our system asserts that the Court has jurisdiction
12    over all assets of the debtor, wherever located.  The in
13    Switzerland, the trustee in this case does not exist, unless
14    there is a recognition sought and obtained, and that's what
15    we need to do.
16              THE COURT:  Right.
17              MR. DESPINS:  So we filed a motion to retain the
18    Praeger firm.  Their fees, Your Honor, are stated in the
19    application.  They're in the five hundred to $900 range.
20              And we've had discussions with the U.S. Trustee
21    regarding their retention.  We resolved a number of issues,
22    but we're unable to resolve two issues which deal with,
23    first, they, the Praeger firm have a -- it's a very small
24    firm -- they don't have an administrative, you know, system
25    that allows them to track expenses, other than large expenses
```

1   like travel, et cetera -- and, by the way, there's not going

2   to be those expenses here -- but expenses such as copying,

3   phone charges, et cetera.  They're not equipped to deal -- to

4   capture that, and so what they have, as a standard provision,

5   is that they charge typically 3 percent of their fees -- the

6   equivalent of 3 percent of their fees as spare expense

7   charge.

8          And, obviously, the U.S. Trustee is concerned, and

9   I understand it, is that that's not the way our system works,

10  where you're supposed to have fees and expenses separately

11  and the expenses are supposed to be documented.  And we fully

12  understand that.  We've explained that to Praeger and

13  basically, they said that they're just not equipped to do

14  that because they're a small firm.  And we have agreed to

15  reduce that deemed expense to 2 percent of their fees, so now

16  we're talking about, frankly, not a lot of dollars.

17         I understand the principal objection by the U.S.

18  Trustee on this, but in this case, Your Honor, under these

19  very special circumstances, we would ask the Court to allow

20  them to -- essentially, we could do it the other way, which

21  is to increase their rates by 2 percent and they would have

22  no expenses, but they want it to be clear that the way to do

23  it is the charge of 3 percent of fees for expenses and in

24  this case, they've agreed to reduce it to 2 percent and we

25  would ask the Court to allow this.

1          Even though we fully understand the principle of

2     the fact that they're supposed to be documented expenses,

3     here, we believe the amount involved couldn't be more than

4     about 3 percent or 2 percent, because they've agreed to it,

5     could not be material at all.  It would be like a few

6     thousand dollars at most.  I can't believe it will be more

7     than that, practically.

8          So the other issue is the limitation on liability

9     and I know that's a hot button for Your Honor, and we've had

10    discussions with them about this.  Their typical engagement

11    letter contains an exclusion for liability for negligence,

12    simple negligence, which is very different than the way we

13    have, subject to a cap that they negotiated.  And in this

14    case, they've agreed to increase the cap to $5 million, so

15    that if there is a malpractice, we would have a claim limited

16    to $5 million.

17         Again, given their role, I just can't believe

18    that -- well, first of all, I assume that there will be no

19    malpractice -- but even if there were, that the damages could

20    be more than $5 million.  There is a carve-out for gross

21    negligence or intentional, you know, an intentional act, so,

22    therefore, there's no liability, no cap on that.  But for

23    simple negligence or malpractice, there's a cap of $5

24    million.

25         I had several discussions with the partner there

1   about the fact that in the U.S. we don't do that.  It's hard

2   to conceive that there's any cap for simple negligence.

3   But -- and I said, look, I'm going to make representations to

4   the Court.  You better be sure they're true and he said that

5   their engagements also contain such a cap.  He said that

6   normally it's $2 million for simple negligence and he agreed

7   to increase it after talking to their insurance carrier.

8           So, Your Honor, these are really the issues and we

9   circulated a revised order at Docket 3004, which -- and if

10  you look at pages 13 of 14 of Document 3004 and also 14 of

11  14, you see these changes reflected, and other changes that

12  the U.S. Trustee, in that case, had agreed to.

13          So, essentially, these are the issues:  the 2

14  percent of deemed expenses and the issue of cap on

15  liabilities.  So I'll pass the podium to the U.S. Trustee on

16  that.

17          THE COURT:  And I have the order in front of me,

18  so I know what you're talking about, and I have reviewed it.

19          MR. DESPINS:  Thank you, Your Honor.

20          THE COURT:  Attorney Claiborn?

21          MS. CLAIBORN:  Thank you, Your Honor.  Holley

22  Claiborn for the U.S. Trustee.

23          The U.S. Trustee, as Trustee Despins noted, filed

24  a limited objection, and that's at ECF 2997 on the docket and

25  the two issues are as discussed by Trustee Despins.

1            I'd like to talk about the limitation of liability

2    first.  So, the U.S. Trustee is opposed to any limitation of

3    liability for any professionals engaged to represent and act

4    as a fiduciary on behalf of the estates and that's exactly

5    what this application seeks to approve.  There isn't a basis

6    for such a waiver.  It's not in the best interests of the

7    estate and it exposes the estate to unnecessary risk should

8    there be an event that no one would like to talk about, but

9    might actually happen.  So the U.S. Trustee remains firm on

10   the idea that there should be no limitation on liability for

11   any professional, such as an attorney, who's representing the

12   estate.

13           With respect to the issue of the expense

14   reimbursement, that also is a nonstarter.  I searched and

15   wasn't able to find any case anywhere that's been reported

16   where there's been an employment agreement based on the

17   reimbursement expenses based on a percentage approach.  I

18   don't discredit the position that Praeger Dreifuss is

19   articulating that they don't have a system in place.  I think

20   that that is, by whatever reason it is, it's by choice, but

21   that doesn't make it appropriate for the estate.

22           There isn't any methodology for anyone to be able

23   to determine whether or not that makes any sense and the Code

24   is very clear, as are the Rules and the U.S. Trustee Fee

25   Guidelines that there's a methodology for getting your

1  expenses reimbursed and it requires itemization.  It requires

2  documentation.  It also requires them to be actual and

3  necessary.  None of that is met by the proposed percentage

4  approach that's being requested here.

5            And so the U.S. Trustee would ask the Court to

6  enforce the Bankruptcy Code and the Rules and the U.S.

7  Trustee Fee Guidelines, as currently structured.

8            THE COURT:  All right.  Thank you.

9            MS. CLAIBORN:  Thank you.

10           THE COURT:  Any response, Trustee Despins?

11           MR. DESPINS:  No, I knew the issues, Your Honor.

12 I understand them.  This is the second or third firm that

13 I've tried to retain in Switzerland and I would say that

14 there's a prejudice to us if we cannot retain them.

15           I do understand the issues, Your Honor.  I've

16 explained to them that that's not the way we operate and they

17 said that, you know, that is what they were prepared to agree

18 to.  So, I apologize for putting you in this position, but

19 that's the best I was able to accomplish and under the

20 exceptional circumstances of this case, because we believe

21 that there are -- again, I don't want to say there are, but

22 there could be material assets in Switzerland that this

23 minor, very minor deviation from the Rules should be

24 authorized.  Thank you, Your Honor.

25           THE COURT:  Thank you.

1         Anything further, Attorney Claiborn?

2         MS. CLAIBORN:  No, Your Honor.

3         THE COURT:  All right.  I'm going to take a look

4  at that after we're done today, so I'll take it under

5  advisement, but I will rule in the next day or two.  It's not

6  going to be something that I'm going to sit on.  I just want

7  to go back and look at a few things.

8         MR. DESPINS:  Thank you, Your Honor.

9         THE COURT:  Thank you.

10        MR. DESPINS:  So, then, we can move to the fee

11 applications, and I believe that the first one was the

12 O'Sullivan McCormack firm.  And you're familiar with them,

13 they are counsel to Genever in the action against AIG and the

14 application can be found at Docket 2928.

15        And the relief sought in the application was

16 compensation in the amount of $191,730 for professional

17 services from July 27th, '23, through December 31st, 2023,

18 and a reimbursement of $5,240.

19        No objections were filed, Your Honor, and the U.S.

20 Trustee filed a statement of no objection at Docket 2989.

21 And a copy of the proposed order granting the O'Sullivan

22 McCormack fee application was filed with the application at

23 Docket 2928.

24        I'm happy to answer any questions you may have,

25 Your Honor.

THE COURT: I do not have any questions. Thank you.

MS. CLAIBORN: And I have nothing to add, Your Honor.

THE COURT: Thank you.

Does anyone wish to be heard on the first interim fee application of O'Sullivan McCormack Jensen & Bliss?

(No verbal response)

THE COURT: All right. Hearing nothing, I will say, Trustee Despins, that I have reviewed the application, the fees and expenses sought here to be reasonable and necessary under the specific circumstances of this case. I agree that there are no filed objections to the application and the Office of the United States Trustee has filed a statement of no objection.

I've looked at the proposed order, which is on pages 10 -- I'm sorry -- 19 and 20, I'm sorry, of ECF Number 2928 and it is fine, other than -- I'm turning to the courtroom deputy -- we just need to add today's hearing date to, it looks like the fifth line on the first page of the order, please. And other than that, everything looks fine and the application is granted and the order will enter.

MR. DESPINS: Thank you, Your Honor.

THE COURT: Thank you.

MR. DESPINS: The next application is the

1    application for Kroll, LLC.  It is their first interim fee

2    application.  As you know, they are the forensic experts that

3    the trustee retained.  That was filed, Your Honor, on

4    February 16, 2024, at Docket 2929.  The relief sought was

5    compensation in the amount of $1,019,095.55 for professional

6    services from August 2nd, 2023, through December 31st, 2023,

7    and a reimbursement of $93,702.91 in expenses.

8          No objections were filed, Your Honor, and the U.S.

9    Trustee filed a statement of no objection at Docket 2991.

10          I would mention, Your Honor, that, you know,

11   Kroll's role was critical during this period because we had

12   the February 15 deadline that was coming up during that

13   period.  They did all the accounting and the tracing of funds

14   that was the basis for the filing of these avoidance actions

15   that's sought in the aggregate in excess of $600 million,

16   and, therefore, we believe that these fees should be

17   approved, Your Honor.  But I'm happy to answer any questions

18   you may have.

19          THE COURT:  I do not have any questions, thank

20   you.

21          Attorney Claiborn?

22          MS. CLAIBORN:  Your Honor, I would just like to

23   make one comment, which is that there was a prior reduction

24   agreed to by Kroll that's already incorporated into this fee

25   application and I just wanted to make the Court aware of

1   that.

2          THE COURT:  Okay.  That's good to know.  Thank

3   you.  I'm not sure if I did know that, or if I did, I may

4   have forgotten, so I appreciate that.

5          So the then, the proposed order, is what you're

6   saying, Attorney Claiborn, that's part of the application

7   already includes those reduced fees?

8          MS. CLAIBORN:  Correct.

9          THE COURT:  Okay.  Thank you.

10         All right.  I have reviewed the first interim

11  application of Kroll LLC for compensation and reimbursement

12  of expenses from August 2nd, 2023, through December 31st,

13  2023.  I have been reminded that there was a reduction in the

14  fees sought in the application already and then was actually

15  incurred, I should say -- incurred, excuse me, by Kroll.

16         The review of the fees and expenses indicate to me

17  that the fees and expenses were necessary and appropriate

18  under the very specific circumstances of this case.  No one

19  has filed any written objection to the application.  There is

20  no one objecting to the application that is in court today

21  and the United States Trustee's Office has filed a statement

22  of no objection.

23         And I would just say to the courtroom deputy,

24  again, on page 1 of the proposed order, which appears at 19

25  and 20 of ECF 2929, we just need to add today's hearing date,

1  again, as well, and then the order will be fine and can

2  enter.  And for all those reasons, the first interim at the

3  application of Kroll is granted.

4          MR. DESPINS:  Thank you, Your Honor.

5          THE COURT:  Thank you.

6          MR. DESPINS:  Moving on to the application of

7  Harney Westwood & Reigels.  These are our BVI counsel,

8  British Virgin Islands counsel, Your Honor.

9          This is their second fee application filed on

10  February 29th, Docket 2933.  The relief sought was

11  compensation sought in the amount of $101,597 for

12  professional services from the period of August 1st through

13  December 31st and the reimbursement of $1,825 in expenses

14  during that same period.

15          I know there was conversation between Harney and

16  the U.S. Trustee, but I'm not familiar with the details.  But

17  I know that no objections were filed and that the U.S.

18  Trustee filed a statement of no objection at Docket 2990,

19  Your Honor.

20          I'm happy to answer any questions you may have.

21          MS. CLAIBORN:  I have nothing to add, Your Honor.

22          THE COURT:  Thank you.

23          I have no questions, thank you.

24          MR. DESPINS:  And so the proposed order is

25  attached to the application at 2933.

1         THE COURT:  Yes, the proposed order is at pages 16

2    and 17 of 2933.  And I have reviewed the second interim fee

3    application of counsel.  The fees and expenses sought are

4    reasonable and necessary under the circumstances of this case

5    and all of the related proceedings.

6         No one has filed any written objection to the

7    second interim fee application and there is no one

8    participating in this hearing today that is objecting to the

9    second interim fee application.

10        The United States Trustee's Office has filed a

11   statement of no objection.  I'm looking at the proposed

12   order, submitted with the second interim fee application,

13   which is on page 16 and 17 of 2933, and it appears to be in

14   order, other than adding today's hearing date on page 1.

15        So for all those reasons, the second interim fee

16   application is granted and the proposed order will enter.

17        MR. DESPINS:  Thank you, Your Honor.

18        THE COURT:  Thank you.

19        MR. DESPINS:  The next application is the

20   application of Epiq Corporate Restructuring.  This is the

21   third interim fee application filed on February 16, 2024, at

22   Docket 2930 for the period between September 1st and

23   December 31st of last year.  They're seeking -- they were

24   seeking compensation of $10,417 and a reimbursement of

25   expenses of $1,606.43.

 1          There was extensive discussions between the U.S.

 2   Trustee and Epiq and there was a reduction of fees that was

 3   agreed to.  So the fees reduced from $10,417 to $7,000 --

 4   from $10,417 to $7,862, so a reduction of $2500 or so.  And a

 5   reimbursement of expenses -- no, I think there was no change

 6   to the expenses, only to the fees, and the U.S. Trustee filed

 7   a statement at Docket 2992, a statement of no objection.

 8          THE COURT:  So, what proposed order am I looking

 9   at, then?

10          MS. CLAIBORN:  I don't think I've seen a revised

11   proposed order.

12          THE COURT:  I don't think I have either.  That's

13   the point.

14          MR. DESPINS:  We need to submit that to Your

15   Honor.

16          THE COURT:  Okay.  That's fine.

17          Go ahead, Attorney Claiborn.  I'm sorry.

18          MS. CLAIBORN:  Your Honor, I was just going to say

19   that the statement that I filed at ECF 2992 contains the

20   amount of the correct figure that should be the approved fees

21   and the approved expenses.

22          THE COURT:  Okay.

23          MR. DESPINS:  Which is $7,862.

24          MS. CLAIBORN:  Correct.

25          MR. DESPINS:  Okay.  Thank you.

1          MS. CLAIBORN:  And there's no change to the

2    expenses.

3          MR. DESPINS:  So, we would --

4          THE COURT:  Well, I did look at the fees and

5    expenses and I understood prior to the hearing that there was

6    a reduction, I just didn't see the revised proposed order and

7    that's fine.  With those reduced fees and the expenses

8    remaining the same, I do think that the fees are necessary

9    and appropriate under the circumstances of the case.

10          Again, the only issue was with regard to the fees

11    and that was resolved after the U.S. Trustee filed their

12    statement of reduced fees for all those -- and no one has

13    filed any other written objection.  There's no one

14    participating in this hearing today that's objecting to the

15    reduced fees and the expenses of Epiq.

16          So for all those reasons, the interim application,

17    which is their third interim application of Epiq is granted.

18    And I'll need the trustee to submit a proposed order.

19          MR. DESPINS:  Will do, Your Honor.

20          THE COURT:  Okay.

21          MR. DESPINS:  Thank you.

22          THE COURT:  I'm going to say by Friday, if that's

23    okay?

24          MR. DESPINS:  Absolutely.

25          THE COURT:  Okay.  So that's granted.  The Epiq

1  third interim fee application is granted.  Proposed order to

2  be submitted on or before and after March 22nd.

3           MR. DESPINS:  Thank you, Your Honor.

4           And the next application is the application of

5  Paul Hastings, the fourth interim fee application, also filed

6  on February 19th, 2024, Docket 2935.  And the relief sought

7  in the application was compensation in the amount of

8  $6,911,034.50 for professional services between September 1st

9  and December 31st and a reimbursement of expenses

10  of $718,236.31.

11           We've had extensive discussions with the U.S.

12  Trustee which led to a fee reduction of $192,930, so almost

13  $200,000, which would bring the fees allowed down to

14  $6,718,104.50.  In addition, we had agreed to reduce our

15  expenses by $3,518.70.  That's an error that we had caught on

16  our own, so we had agreed to reduce our expenses by that

17  amount.

18           The U.S. Trustee filed its statement at

19  Docket 2998, Your Honor.

20           THE COURT:  I think, again, this may be a

21  situation where we need a revised proposed order.

22           MR. DESPINS:  Yes, Your Honor.

23           THE COURT:  But, Attorney Claiborn, the statement

24  that you filed, the amounts set forth in that statement are

25  the amounts that the Office of the United States Trustee

1  asserts and has no objection to being awarded?

2          MS. CLAIBORN:  Correct.

3          THE COURT:  Okay.  Thank you.

4          MR. DESPINS:  And to be clear, Your Honor, they

5  would be awarded, but not paid in full because there's a 20

6  percent holdback.  The actual amount after reduction for the

7  20 percent holdback that would be paid would be

8  $5,374,483.60.

9          THE COURT:  And I saw in the other orders there

10 were provisions about what was actually going to be paid

11 versus what was awarded, so I understood that to part of the

12 process of the applications, as submitted, and then this is

13 the approval of those that have been submitted and some have

14 been paid.  So thank you, I understand that.

15         So I've looked at the fees and expenses and I

16 appreciate that the firm corrected a mistake with regard to

17 the expenses.  That's always helpful.  I think the fees -- I

18 find the fees are reasonable and necessary under the

19 circumstances, the very specific circumstances of this case

20 and the related proceedings, the numerous related

21 proceedings.

22         No one has filed any written objection to the fee

23 application, the fourth interim fee application -- am I

24 right, it's the fourth, right?

25         MR. DESPINS:  Yep.

1          THE COURT:  Okay.

2          MR. DESPINS:  Yes, Your Honor.

3          THE COURT:  And that the U.S. Trustee's Office and

4  Paul Hastings had several discussions regarding the amounts

5  sought and there is an agreement on reduction, which the

6  Court appreciates.  And under those circumstances, with the

7  fourth interim application for compensation for Paul Hastings

8  is granted and I would ask that a revised proposed order be

9  submitted by Friday, March 22nd.

10          MR. DESPINS:  Will do, Your Honor.  Thank you.

11          THE COURT:  Thank you.

12          MR. DESPINS:  And I believe there are two fee

13  applications remaining:  Pullman & Comley, counsel to the

14  CEO, and also Mr. Skalka's firm, so I'll let them address

15  those.

16          Thank you, Your Honor.

17          THE COURT:  Thank you.

18          MS. MAYHEW:  I appreciate it.

19          Good afternoon, Your Honor, Kristin Mayhew,

20  Pullman & Comley, on behalf of the Creditors Committee.

21          Before the Court is Pullman & Comley's third

22  interim application for allowance of compensation and

23  reimbursement of expenses.  Pursuant to the application,

24  Pullman & Comley is seeking fees in the amount of $89,835.50

25  and reimbursement of expenses in the amount of $392.14.

1          Proper service of the fee application has been

2   made and a cert of service was filed on February 20th the

3   ECF 2937.

4          Your Honor, no objections have been received and

5   the United States Trustee has filed a statement of no

6   objection at ECF 2988.

7          And we would ask that Your Honor enter the

8   proposed form of order that's attached to the application at

9   ECF 2872-3.

10          THE COURT:  Thank you.

11          Attorney Claiborn?

12          MS. CLAIBORN:  I have nothing to add, Your Honor.

13          THE COURT:  Okay.  Thank you.

14          I have reviewed the third interim fee application

15   of Pullman & Comley, as counsel to the Official Committee of

16   Unsecured Creditors and I find that the fees and expenses are

17   reasonable and necessary under the circumstances of the case.

18   I do note that the Committee has been very conscientious

19   about its fees and expenses since the -- I think I've noted

20   this before -- but since the appointment of the trustee, but

21   I would also agree that there are things and tasks that the

22   Committee does still need to perform and I think the fees and

23   expenses are reasonable under those circumstances.

24          No one has filed a written objection to the third

25   interim fee application.

1          The United States Trustee's Office has filed a

2    statement of no objection.  There's no one participating in

3    this hearing today that is objecting to the third interim fee

4    application.

5          I would ask the Courtroom Deputy, just at the very

6    bottom of the first page, if we could just add today's date.

7    It just says that after the hearing on the application, if we

8    could just say "Held on May 19th [sic]" so then when someone

9    needs to know when it was held, they'll know.

10          But other than that, I have no changes to the

11    proposed order.  So for all those reasons, the third interim

12    fee application of Pullman & Comley is granted and the

13    proposed order will enter.

14          MS. MAYHEW:  Thank you, Your Honor.

15          THE COURT:  Thank you.

16          MR. SKALKA:  Good afternoon, Your Honor.  Douglas

17    Skalka on behalf of Neubert Pepe & Monteith or from Neubert

18    Pepe & Monteith, on behalf of Neubert Pepe & Monteith's

19    fourth interim application for compensation, which was filed

20    on February 19th at Docket 2936.

21          The fees sought by Neubert Pepe & Monteith cover

22    the period of September 21st, 2023, through December 31st,

23    2023.  The fees sought total $1,038,670 and also expenses of

24    $34,929.96.  The fees include a voluntary reduction of

25    $5,945.  A certificate of service reflecting the service of

1 the application was filed on February 27th, 2024.

2          We have received no objections to the application

3 and the Office of the United States Trustee has filed a

4 statement of no objection.

5          Subject to the 20 percent holdback, which Neubert

6 Pepe & Monteith has agreed to, we have filed a revised

7 proposed order that does reflect that the 20 percent holdback

8 will be in place.

9          Attorney Claiborn asked that I revise that order,

10 again, to make the specific reference to the amount of that

11 holdback, which I will do, and file a revised order within --

12 by Friday, Your Honor.

13          THE COURT:  Okay.  So I'm looking at a revised

14 order, but you're saying it needs to be further revised?

15          MR. SKALKA:  Yes, Your Honor.

16          The revised order makes reference to a defined

17 term as the application period holdback.  And I'm Attorney

18 Claiborn has asked that I specify the amount of the holdback,

19 which is in the next paragraph, but I will revise this

20 slightly and put in that $203,734 figure.

21          THE COURT:  Okay.  All right.

22          Well, I have looked at the fees and expenses of

23 Neubert Pepe & Monteith in connection with the fourth interim

24 allowance of compensation and reimbursement of expenses and I

25 find that the fees and expenses are reasonable and necessary

1  under the circumstances of this case and the many related

2  proceedings.

3          No one has filed any written objection to the

4  fourth interim application.  There is no one participating in

5  this hearing today that is objecting to the further interim

6  application.  I understand that you have worked with the

7  United States Trustee on a revised proposed order granting

8  the application and that it will be further revised.

9          So for all those reasons, the fourth interim

10  application of Neubert Pepe & Monteith is granted and the

11  revised proposed order will be submitted on or before March

12  22nd.

13          MR. SKALKA:  Absolutely, Your Honor.

14          THE COURT:  Okay.  Thank you.

15          MR. SKALKA:  Thank you.

16          THE COURT:  All right.  So if I'm correct, Trustee

17  Despins, then I think we've taken care of everything at

18  the 1:30 mark, even though we're at 4:00 p.m.; is that right?

19          MR. DESPINS:  Yes, Your Honor.

20          THE COURT:  Okay.  So, then we have the two

21  motions to dismiss that are on the calendar at 2:00 p.m.  So

22  I see counsel is approaching on their motions.

23          I see counsel, Attorney Kindseth and Attorney Dell

24  Fera that both of these motions -- I don't know.  Obviously,

25  you're both allowed to make an argument.  I did see a

1   joinder, I think in part, so how do you plan to proceed this

2   afternoon?

3           I know that the two -- I understand that Counts 3

4   and 4 apply to one defendant and Counts 5 and 6 apply to the

5   other, but I also see that the arguments are very similar.

6   So however you want to proceed is fine.

7           MR. DELLA FERA:  So, Your Honor, is correct.  The

8   arguments are similar.  Frankly, we thought it would be more

9   efficient to have the arguments by -- appeared you'll have to

10  forgive me, Your Honor --

11          THE COURT:  Take your time.

12          MR. DELLA FERA:  -- the more recently joined

13  Defendant Leading Shine New York.

14          THE COURT:  Leading Shine.

15          MR. DELLA FERA:  Sorry, Your Honor.

16          Rather than file a separate motion with a separate

17  hearing date for Leading Shine, we requested and Your Honor

18  was considerate enough to allow us to argue the motion to

19  dismiss on behalf of Leading Shine today.

20          And as Your Honor points out, the counts that

21  apply to each of those Defendants are separate and distinct.

22  There's the third and fourth, with respect to Hudson Diamond

23  New York and fifth and sixth, with respect to Leading Shine.

24  The arguments are similar as we point out in our papers, Your

25  Honor, given the jurisdictions of incorporation or formation

1  of these Defendants, different state law, specifically, New

2  York and Delaware, would apply.

3         In addition to Hudson Diamond New York and Leading

4  Shine, the motion is filed on behalf of Defendants Hudson

5  Diamond Holding, LLC and Ms. Mei Guo.  The arguments are

6  somewhat different, with respect to those Defendants, Your

7  Honor; namely, that there are no claims or causes of action

8  asserted against those particular Defendants.  There are

9  allegations included in the complaint with respect to the

10  ownership interests or membership interests of Ms. Guo and/or

11  Hudson Diamond Holding in Defendants that the trustee seeks

12  relief from, but if Your Honor were to examine Counts 3, 4,

13  5, 6, and even Claims 1 and 2, Your Honor, no prayer for

14  relief is made against Ms. Guo or Hudson Diamond Holding.

15         We would submit that as a result, the trustee has

16  failed to state a cause of action against those two

17  Defendants under Federal Rule 12(b)(6) and Federal Bankruptcy

18  Rule 7012.

19         With respect to the other Defendants, against whom

20  there are claims for relief, we would submit -- again, not to

21  belabor the point -- it's in the papers, Your Honor, that the

22  Court lacks jurisdiction under the Wagoner rule and the *in*

23  *pari delicto* doctrine, with respect to claims that the

24  trustee seeks to bring against those Defendants, given the

25  debtors' alleged and/or established at this point, Your Honor

1    made reference earlier today to certain findings that this

2    Court has made with respect to beneficial ownership and

3    alter-ego.

4            But nonetheless, with respect to Hudson Diamond

5    New York and Leading Shine, those Defendants would submit

6    that pursuant to the *in pari delicto* doctrine and the Wagoner

7    rule, that the trustee's claims do not appropriately sound

8    against them given that the trustee stands in the shoes of

9    Mr. Kwok, the debtor.

10            Similarly, the Leading Shine makes the same

11    arguments and, again, based upon the arguments set forth in

12    the briefing, Your Honor, those Defendants all six of

13    those -- I'm sorry, all four of those Defendants submit that

14    the complaint fails to state a claim.  And, again, in

15    particular, with respect to Ms. Guo and Hudson Diamond

16    Holding, the absence of any prayer for relief, any claim or

17    cause of action, we submit, should result in this Court

18    dismissing the complaint, with respect to those two

19    Defendants and for other reasons, with respect to all of

20    them.

21            Thank you, Your Honor.

22            THE COURT:  Okay.  Thank you.

23            Attorney Bassett?

24            MR. BASSETT:  Thank you, Your Honor.

25            Actually, may I approach the podium?

1          THE COURT:  Sure.

2          MR. BASSETT:  Again, for the record, it's Nick

3   Bassett from Paul Hastings on behalf of the Chapter 11

4   Trustee.

5          Your Honor, I think the Court is likely aware at

6   this point from our papers and the history of this case that,

7   you know, all of the arguments that have been raised in the

8   motions to dismiss that we are discussing today have already

9   been made and ruled upon by this Court.  The Court has

10  already decided that allegations exactly like those contained

11  in the complaint against these Defendants are sufficient to

12  state a claim for alter-ego and/or beneficial ownership and

13  the Court has already considered and rejected the

14  applicability of the Wagoner rule and the *in pari delicto*

15  defense on claims nearly identical to these.

16          In fact, certain of the Defendants are

17  collaterally *estopped* and/or barred by *res judicata* because

18  they, themselves, were the subject to prior rulings from the

19  Court on these issues; in particular, in this very adversary

20  proceeding, the Court already decided Defendant Leading

21  Shine's motion under Rule 55(c) to vacate the default.  And

22  while the Court did end up granting that motion, in the

23  course of its analysis, as the Court is very much aware, I'm

24  sure, ruled that Leading Shine had failed to set forth a

25  meritorious defense.  And the grounds for its meritorious

1   defense are the same grounds that it now raises in its motion

2   to dismiss.  So those arguments have already been presented

3   to the Court in this very adversary proceeding and have been

4   rejected.

5          As to the remaining Defendants, I will take the

6   Wagoner and *in pari delicto* defense argument first.  The

7   Court has decided that issue not only against Lamp Capital,

8   but -- or sorry -- against Leading Shine, but I think in

9   doing that, the Court referred back to the decision also in

10  this adversary proceeding against Lamp Capital when the Court

11  denied Lamp Capital's Rule 55(c) motion to vacate the

12  default, and also the Court's prior ruling in the HK USA

13  adversary proceeding, where the Court denied the Defendants,

14  including Mei Guo, who's a Defendant here, their motion to

15  dismiss and then ultimately granted summary judgment in the

16  trustee's favor in that adversary proceeding.

17         In both of those rulings, in the case of Lamp

18  Capital and in the case of HK USA, the Court appropriately

19  recognized that the trustee was, in those cases, and is doing

20  the same here, is bringing his claims under Section 544 of

21  the Bankruptcy Code on the behalf of creditors.  And there's

22  very clear precedent, including the PepsiCo case from the

23  Second Circuit, which indicates that the *in pari delicto* and

24  with the Wagoner rule issue does not apply when the trustee

25  is bringing claims on behalf of creditors, as opposed to

1  claims that may be brought standing in the shoes of the

2  debtor, under Section 541 of the Bankruptcy Code.  That is

3  not the case here.

4      That is also what distinguishes the <u>Flanagan</u> case,

5  which Defendants are relied upon repeatedly from the District

6  of Connecticut.  The District Court in that case expressly

7  noted that the successor to the trustee there had failed to

8  bring his claims and, in fact, was time-barred from bringing

9  his claims under Section 544 of the Bankruptcy Code,

10  therefore, the analysis of the Wagoner rule and *in pari*

11  *delicto* in that case is irrelevant here.  It was a 541 case,

12  not a 544 case.

13      The Court also recognized, as it relates to Mei

14  Guo, specifically, in the HK USA order, that Mei Guo falls

15  within the insider exception to the *in pari delicto* doctrine.

16  The Court clearly held that in the context of the HK USA case

17  on the grounds that she is the debtor's daughter and she has

18  been placed as the nominee owner of the alleged alter-ego and

19  held that, therefore, the insider exception would apply even

20  if the Section 544 issue were not dispositive.

21      The same goes for Defendant Hudson Diamond New

22  York, which is alleged to be the true, or is alleged to be

23  the nominal owner of the entity and, therefore, under the

24  control of the debtor.  Also, the Court held in the HK USA

25  adversary proceeding that for those same reasons, HK USA was

1  an insider that fell within the insider exception.

2          So I think for all those -- the analysis that I

3  went through and briefed, which the Court went through in

4  much more detail in its prior rulings, are dispositive of the

5  Wagoner and *in pari delicto* arguments that have been raised

6  here.

7          As it relates to the other two Defendants that

8  counsel bucketed separately, that would be Hudson Diamond

9  Holding and Mei Guo, this argument has also been decided by

10  the Court and rejected previously.  Essentially, the argument

11  that counsel was making is that the complaint contains no or

12  very few substantive allegations as to Hudson Diamond Holding

13  and Mei Guo, therefore, it fails to state a claim.

14          But what that argument fails to appreciate is that

15  the entire reason both of those Defendants are named

16  Defendants here is that they are the ones who claimed to hold

17  ownership interests in the alleged alter-ego entities,

18  specifically, Hudson Diamond Holding is the purported sole

19  member of Hudson Diamond New York and Mei Guo has asserted

20  that she is the owner of Defendant Leading Shine.  So the

21  whole reason they are named Defendants is because if we

22  prevail on our alter-ego and/or beneficial ownership claims,

23  such that all assets and/or ownership interests in these

24  entities are turned over to the estate, they are the ones who

25  must be compelled to effectuate that turnover.

1          The fact that we don't have many or few

2    allegations against them should not be surprising at all,

3    because that's the whole point:  the debtor, not these

4    Defendants, were the ones who controlled these entities, made

5    decisions on their behalf, et cetera.  They were mere nominee

6    stand-ins.  That's why they're not mentioned much in the

7    complaint, but we need relief against them.

8          And as I mentioned at the outset of this portion

9    of the argument, the Court already decided this, too.  In the

10   Lamp Capital, in the decision denying Lamp Capital's

11   Rule 55(c) order, the Court at page 23 of that order, reached

12   the exact same conclusion.  I won't read the entire quote,

13   but the punchline from the Court's order was that the

14   complaint was necessarily filed against Infinity Treasury.

15   The Lamp entity's objection, to the contrary, lacks any

16   merit.

17         The argument there had been that Infinity Treasury

18   should be dismissed because there weren't really many

19   allegations against it.  It was merely the nominee owner of

20   Lamp Capital.  The Court rejected that argument

21   appropriately.  I should reject it again here.

22         Your Honor, I think that is all I had.  I won't

23   belabor the point, given that these issues have been

24   discussed a number of times, but, obviously, if the Court has

25   questions, I'm happy to address those.

 1          THE COURT:  I do not have any questions at this

 2  time.  Thank you.

 3          MR. BASSETT:  Thank you, Your Honor.

 4          THE COURT:  Mr. Della Fera, is there anything else

 5  you would like to add?

 6          MR. DELLA FERA:  Nothing further, Your Honor.

 7          THE COURT:  Okay.  Thank you.

 8          All right.  With regard to the -- I'm sorry, I

 9  just lost my place.  Just give me a second.  I'm sorry.

10       (Pause)

11          THE COURT:  With regard to the motion to dismiss

12  Counts 3 and 4 against Hudson Diamond New York, Hudson

13  Diamond Holding, Mei Guo, and Leading Shine -- well, Leading

14  Shine is in the other motion.  I'm sorry.  I'm going to take

15  that under advisement, although, I think there'll be a ruling

16  very soon.

17          I am familiar with the arguments of the parties

18  and the arguments made in this adversary proceeding, so I

19  think that will enable there to be a ruling in short order,

20  okay.  Thank you.

21          With regard to the other motion, Attorney

22  Kindseth, are you going to be arguing that motion?

23          MR. DELLA FERA:  I --

24          THE COURT:  Or whomever.  It's fine.

25          MR. DELLA FERA:  No, I think the motion has been

1  effectively argued.

2          THE COURT:  All right.  As long as you're fine

3  with that --

4          MR. DELLA FERA:  Yes.

5          THE COURT:  -- that you're -- that it applies to

6  both motions?

7          UNIDENTIFIED SPEAKER:  I think that's right.

8          THE COURT:  Okay.  That's fine.

9          MR. BASSETT:  But I intended to address both in my

10  response.

11          THE COURT:  Okay.  I just wanted to be clear for

12  the record, that's why I asked the question at first.  I

13  wasn't actually sure if you were addressing both motions.

14          MR. DELLA FERA:  Sure.  And I appreciate it, Your

15  Honor.

16          THE COURT:  And I apologize if I didn't understand

17  that.  So, then, with regard to both motions, my statements

18  are applicable, which are that I understand the arguments.  I

19  don't have any questions about the arguments.  I'm going to

20  take the matters under advisement and rule accordingly.  But

21  as I said, I have familiarity with the arguments, so I will

22  have to go back and look and then rule accordingly, but I

23  believe it will be in short order, okay.  Thank you.

24          Is there anything else we need to address this

25  afternoon in any of the matters?

1            MR. DESPINS:  I don't believe so, Your Honor.

2            THE COURT:  Anything from your perspective,

3    Attorney?

4            MR. DELLA FERA:  No, Your Honor.

5            THE COURT:  Okay.  All right.

6            Well, those matters, if I am correct, and we all

7    made it through the ability to breathe, which is helpful, in

8    the courtroom, then the only thing I would say is in the next

9    month or two, we may be having court upstairs because of

10   construction down here, but you'll know if that happens.  I

11   mean, it's going to happen, I just don't know when, okay.

12           So if you come into the building someday and the

13   marshals tell you, you have to go upstairs, that's why, okay.

14           All right.  So that concludes all of our hearings

15   today, therefore, Court is adjourned.  Thank you, all.

16           COUNSEL:  Thank you, Your Honor.

17           THE CLERK:  All rise.

18           The Court is adjourned.

19       (Proceedings concluded at 4:23 p.m.)

20

21

22

23

24

25

1                    <u>CERTIFICATION</u>

2         I certify that the foregoing is a correct

3 transcript from the electronic sound recording of the

4 proceedings in the above-entitled matter to the best of my

5 knowledge and ability.

6

7 <u>/s/ William J. Garling</u>                   <u>March 22, 2024</u>

8 William J. Garling, CET-543

9 Certified Court Transcriptionist

10 For Reliable