**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

------------------------------------------------------x
                                           :

In re:                             :    Chapter 11
                                           :

HO WAN KWOK, *et al.*,[1]        :    Case No. 22-50073 (JAM)
                                           :

        Debtors.             :    (Jointly Administered)
                                         :
------------------------------------------------------x

**NOTICE OF CHAPTER 11 TRUSTEE REGARDING UPDATE WITH RESPECT TO
DEBTOR'S CRIMINAL PROCEEDINGS PENDING IN UNITED STATES DISTRICT
COURT FOR SOUTHERN DISTRICT OF NEW YORK**

Luc A. Despins, as chapter 11 trustee (the "Trustee") for Ho Wan Kwok (the "Debtor"),

hereby provides notice that, on March 31, 2024, the United States filed a letter response (the

"Response") in the criminal case [Case No. 1:23-cr-00118-AT] (the "Criminal Case") pending in

the United States District Court for the Southern District of New York (the "SDNY Court") in

response to defendant Yanping Wang's letter motion regarding Rule 16 discovery.[2]  A copy of

the Response is attached hereto as **Exhibit A**.

In particular, the Trustee wishes to highlight two sections on page 11 of the Response

related to obstructive conduct of defendant Wang (as well as Mei Guo, the Debtor's daughter,

and yet another individual the United States describes as a "co-conspirator").  The Trustee has

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    In her letter motion, defendant Wang requested that the SDNY Court (1) set a deadline of April 10, 2024 for the United States to complete Rule 16 discovery, (2) issue orders regarding delivery of discovery to the Metropolitan Detention Center, and (3) order that victim-provided communications with the defendants and victim provided photographs not be designated Attorneys' Eyes Only.

highlighted in yellow these two sections on **Exhibit A** hereto; however, to be clear, these

sections were not so highlighted in the version of the Response filed by the United States with

the SDNY Court.

Dated: April 1, 2024                          LUC A. DESPINS, CHAPTER 11 TRUSTEE

By: */s/ G. Alexander Bongartz*

G. Alexander Bongartz (admitted *pro hac vice*)
Avram E. Luft (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
aviluft@paulhastings.com
alexbongartz@paulhastings.com

    *and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

    *and*

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------x
:
In re:                                          :      Chapter 11
:
HO WAN KWOK, *et al.*,[1]                        :      Case No. 22-50073 (JAM)
:
                          Debtors.              :      (Jointly Administered)
:
------------------------------------------------------x

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 1, 2024, the foregoing Notice was

electronically filed.  Notice of this filing was sent by e-mail to all parties to the above-captioned

chapter 11 case by operation of the Court's electronic filing ("<u>CM/ECF</u>") system or by mail to

anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties

may access this filing through the Court's CM/ECF system.

Dated: April 1, 2024                        By: <u>*/s/ G. Alexander Bongartz*</u>

G. Alexander Bongartz (admitted *pro hac vice*)
Avram E. Luft (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6000
aviluft@paulhastings.com

*Counsel for the Chapter 11 Trustee*

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

**<u>Exhibit A</u>**

**Response**



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 31, 2024

<u>**VIA ECF AND EMAIL**</u>
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    ***United States v. Kwok, et al.*, S2 23 Cr. 118 (AT)**

Dear Judge Torres:

      The Government respectfully writes in response to defendant Yanping Wang's letter motion regarding Rule 16 discovery (*see* Dkt. 253) and to request that the Court set a mutual pretrial disclosure schedule in advance of the trial beginning May 20, 2024. In her motion, Wang requests that the Court (1) set a deadline of April 10, 2024 for the Government to complete Rule 16 discovery, (2) issue orders regarding delivery of discovery to the Metropolitan Detention Center ("MDC"), and (3) order that victim-provided communications with the defendants and victim-provided photographs not be designated Attorneys' Eyes Only ("AEO").

      This letter addresses Wang's requests and the broader issues they raise, which are as follows: *First*, the Court should order a comprehensive and *mutual* pretrial disclosure schedule, including for Rule 16 discovery. *Second*, the Court should permit the use of tailored AEO procedures to protect victim witnesses in this matter, prevent the obstruction of justice, and preserve the integrity of this criminal trial. *Third*, there is no need for the Court to order the Government to provide hard drives to the MDC, as the Government has already been doing so upon the defendants' request.

**I.     Pretrial Disclosure Schedule**

      The Court should set a comprehensive and *mutual* pretrial disclosure schedule in advance of the May 20 trial. In particular, and for the reasons explained below, the Court should set the following schedule[1]:

---

[1] The Court has already set the following pretrial dates. Motions *in limine* and joint requests to charge, proposed voir dire, and a proposed verdict form are due April 9, 2024. Oppositions to *in limine* motions are due April 16, 2024. In addition, the Court has scheduled a suppression hearing for April 9, 2024, and a final pretrial conference for May 14, 2024.

- By April 1, both parties provide expert disclosures (excluding Mandarin language experts, to allow the parties an opportunity to attempt to reach stipulations on translations).[2]

- By April 10, the Government completes production of Rule 16 discovery in its possession, with materials that would identify victim-witnesses designated AEO, as described in Section II, *infra*.

- By April 20, the defendants provide notice of any advice-of-counsel, reliance on counsel, or presence of counsel defense, if any.

- By April 22, the defendants complete production of Rule 16 discovery in their possession.

- By April 30, the Government discloses exhibits, with a limited set of exhibits that would identify victim-witnesses designated AEO, as described in Section II, *infra*.

- By May 6, the Government provides 3500 material and its witness list, with victim-witness identities remaining AEO (as described in Section II, *infra*).[3]

- By May 10, the defendants disclose defense exhibits and defense witness lists.

- By May 13, the defendants provide Rule 26.2 materials for their witnesses.

A proposed order with the foregoing dates is attached as Exhibit A.

As background, the Government has been attempting to reach agreement on a mutual pretrial disclosure schedule with the defendants. To the Government's understanding, the parties have agreed on at least certain matters. First, the parties agreed, with respect to the joint requests to charge, voir dire, and verdict form, that the Government would provide its proposed filings by March 27, 2024 (which the Government has done), and the defendants would provide their responses to the Government by April 3, 2024, so the parties can file a joint submission by the April 9, 2024 deadline. The parties also agreed to a mutual disclosure of expert witnesses by April 1, 2024 (except Mandarin language translators). However, the parties have been unable to reach agreement on the remaining deadlines, and thus the Government respectfully requests that the Court enter an order setting the above deadlines. The defendants, in particular, have resisted setting deadlines for (a) production of the defendants' Rule 16 discovery, despite the defendants'

---

[2] During meet-and-confers concerning the pretrial disclosure schedule, the parties agreed to an April 1 expert disclosure date and the exemption of language translators from that notice so that the parties can attempt to reach agreement concerning language translations. On March 27, 2024 the Government requested written confirmation of that agreement, which the defendants have not yet provided.

[3] The Government remains amenable to discussing earlier § 3500 disclosure with defense counsel. *See* Dkt. 243 at 8 ("[t]he Government is under no obligation . . . to produce prior statements of its witnesses until after each has testified on direct examination." (citation omitted)).

having issued numerous subpoenas; and (b) providing notice of any advice-of-counsel defense, and attendant waiver of attorney-client privilege, which could prompt substantial pretrial discovery and litigation.  The Government addresses those two deadlines below.

### A.  Rule 16 Deadlines

#### 1.  The Government

The Government generally has no objection to a deadline of April 10 to produce any Rule 16 discovery currently in its possession.

For context, the Government has produced substantial discovery in this matter to date. Specifically, the Government has produced approximately 49 terabytes of data.  In addition, at Kwok's request and as a courtesy, the Government has provided several terabytes of extracted data—which the Government is not seeking to use in its case-in-chief—derived from dozens of devices seized from Kwok's premises in the 2019 investigation handled by the Office's Terrorism and International Narcotics unit.  The Government has substantially completed production of Rule 16 material in its possession.[4]  It is the process of re-reviewing its case file to confirm that there is no other Rule 16 material outstanding.  That review will be completed this week.

Additionally, the Government's discovery obligations are ongoing, and to the extent it acquires additional Rule 16 material while preparing for trial—as is commonplace—it will promptly produce those materials to the defendants on a rolling basis.

Separately, since the Court's February 21, 2024 order directing "production under Rule 16" of "materials within the prosecution's possession showing that [Kwok], his family, his co-defendants, or the corporate entities relevant to the indictment have been targeted by the CCP," Dkt. 243 at 6-7, the Government has been diligently producing responsive material to the defendants.  The Government has made six productions in response to the order, starting on March 7, 2024.  The Government has provided substantial Rule 16 discovery from ███████████  ██████████████████████████████  The Government has, to date, produced over 10,000 files and over 670 gigabytes of data from that investigation.  The Government will continue to provide materials responsive to the Court's February 21 order until its productions are complete.

#### 2.  The Defendants

The defendants have not provided the Government with any discovery, at all.  The Government respectfully requests that the Court order the defendants to comply with their

---

[4] Wang complains that the Government's productions include bank records "the government appears to have obtained in early and mid 2023."  (Dkt. 253 at 2).  While it is not entirely clear about which materials Wang complains, the Government produced materials to the defendants in or about March 2024 that the Securities and Exchange Commission ("SEC") had acquired during its parallel investigation and provided to the Government in or about January 2024, which materials included certain bank records.

reciprocal discovery obligations pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure no later than April 20.

Rule 16 entitles the Government to reciprocal discovery. Rule 16(b) provides, in relevant part, that if a criminal defendant requests disclosure from the Government under Rule 16(a)(1), the defendant must also permit the Government to inspect any document or record that the defendant "intends to use . . . in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A).

At the time of the Government's first discovery production on May 5, 2023, which was the day after the protective order was entered, the Government requested, in writing, reciprocal disclosures from the defendants pursuant to Rule 16(b). The Government has not received even a single file of reciprocal Rule 16 materials from the defendants—despite the fact that the defendants have stated their intention to put on a defense case lasting up two weeks, and despite the fact that the defendants have apparently issued numerous subpoenas of their own to third parties. While the Government has learned from some third parties that the defendants have issued subpoenas, the scope of the materials produced in response to the defendants' subpoenas—and, more broadly, the scope of the potential Rule 16 material in the possession of the defendants in general—is unknown to the Government  It may be that the defendants are in possession of a considerable volume of material that they are withholding, despite the Government having repeatedly requested such materials over the past eleven months.

When a defendant "avail[s] himself of the strategy to obtain discovery of the government, he must comply with the requirement for reciprocal discovery." *United States v. Ryan*, 448 F. Supp. 810, 810-11 (S.D.N.Y. 1978), *aff'd*, 594 F.2d 853, 811 (2d Cir.); *see* Fed. R. Crim. P. 16 Advisory Committee Note—1974 Amend. ("The majority of the Advisory Committee is of the view that . . . the giving a broader right of discovery to the defense is dependent upon giving also a broader right of discovery to the prosecution.").

Courts in this District and elsewhere routinely require defendants to produce Rule 16(b) materials before defendants have made decisions about the scope of any defense case, let alone whether a particular piece of evidence will be offered at trial. Although "[a] defendant would always like more information about the government's case before revealing anything about his or her own," Rule 16 "conditions a defendant's disclosure obligations on the government's having made certain specified disclosures, not on the government's laying open its entire case or the defendant's satisfaction." *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2011 WL 723530, at *5 (S.D.N.Y. Feb. 25, 2011). Indeed, in ordering pre-trial disclosure of defense Rule 16 materials, this Court has previously made clear that, while defendants may "delay the decision as to whether or not to testify until the end of the presentation of the Government's case, 'the trial strategy determination is not so protected.'" *United States v. Shea*, No. 20 Cr. 412 (AT), Doc. 206, at 1 (quoting *United States v. Ryan*, 448 F. Supp. 810, 811 (S.D.N.Y. 1978), *aff'd*, 594 F.2d 853, 811 (2d Cir. 1978)); *see also, e.g.*, *United States v. Ortega*, No. 22 Cr. 91 (RA), Doc. 93, at 2 ("Should Defendant fail to produce material subject to his disclosure obligations under Rule 16, he will be precluded from using such evidence during his case-in-chief."); *United States v. Avenatti*, No. 19 Cr. 374 (JMF), Dkt. No. 213 (S.D.N.Y. Jan. 7, 2022) (requiring defense production under Rule 16 to begin approximately two weeks before trial, over the defendant's objection); *United States v. Maxwell*, No. 20 Cr. 330 (AJN), Dkt. No. 297 (S.D.N.Y. June 2, 2021) (setting a defense Rule 16 deadline of three weeks before trial, over the defendant's objection);

*United States v. Jasper*, No. 00 Cr. 825 (PKL), 2003 WL 223212, at *4 (S.D.N.Y. Jan. 21, 2003) (explaining that "[a]llowing [the] defendant to defer the provision of such discovery until a final determination regarding whether or not [to] put an expert witness on the stand would seem to frustrate" the goal of allowing the government a fair opportunity to prepare); *see generally United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991) (affirming preclusion of evidence defendant had failed to produce and explaining that permitting defendant to use documents the prosecution had not timely seen "would have given the defense an unfair advantage").[5]

Accordingly, in light of well-settled law, the defendants' collection of Rule 16 material through the use of their own subpoenas, and the defendants' stated intention to put on a lengthy defense case, the Court should order the defendants to produce Rule 16(b) material approximately four weeks in advance of trial, *i.e.*, by April 22.

---

[5] This reciprocal obligation applies to defense exhibits as well. Consistent with Rule 16(b), courts in this District regularly require disclosure of defense exhibits in advance of trial, including over a defendant's objection. *See, e.g.*, *Ortega*, No. 22 Cr. 91 (RA), Doc. 93 (S.D.N.Y. Jan. 10, 2023) (approximately one week before trial); *United States v. Shah*, No. 19 Cr. 833 (SHS), Doc. 583, at 7-8 (S.D.N.Y. July 5, 2022) (11 days before trial over objection); *United States v. Melzer*, No. 20 Cr. 314 (GHW), Doc. 131 (S.D.N.Y. Jun. 16, 2022) (11 days before trial over objection); *United States v. Liu*, No. 19 Cr. 804 (VEC), Doc. 177 (S.D.N.Y. Feb. 28, 2022) (12 days before trial over objection); *United States v. Gillier*, No. 11 Cr. 409 (PAE), Doc. 75 (S.D.N.Y. Feb. 1, 2022) (approximately three weeks before trial); *United States v. Avenatti*, No. 19 Cr. 374 (JMF), Doc. 213 (S.D.N.Y. Jan. 7, 2022) (approximately two weeks before trial over objection); *United States v. Maxwell*, No. 20 Cr. 330 (AJN), Doc. 297 (S.D.N.Y. June 2, 2021) (three weeks before trial over objection); *United States v. Shea*, No. 20 Cr. 412 (AT), Doc. 206 (S.D.N.Y. May 4, 2022) (14 days before trial over objection); *United States v. Brennerman*, No. 17 Cr. 337 (RJS), Doc. 24 (S.D.N.Y. Aug. 3, 2017) (18 days before trial); *United States v. Percoco*, No. 16 Cr. 776 (VEC), Doc. 396 (S.D.N.Y. Dec. 15, 2017) (more than a month before trial over objection); *United States v. Grant*, No. 16 Cr. 468 (GHW), Doc. 283 (S.D.N.Y. May 21, 2018) (three weeks before trial); *United States v. Calk*, No. 19 Cr. 366 (LGS), Doc. 180 (S.D.N.Y. Mar. 25, 2021) (six weeks before trial); *id.* Doc. 262, at 341 (S.D.N.Y. Jun. 29, 2021) (mid-trial order to defense to produce any unmarked exhibits for cross-examination at least one business day in advance of testimony); *United States v. Madonna*, No. 17 Cr. 89 (CS), Doc. 655 (S.D.N.Y. Mar. 1, 2019) (approximately one month before trial); *United States v. Stewart*, No. 15 Cr. 287 (LTS), Minute Entry (S.D.N.Y. Jan. 29, 2016) (18 days before trial); *United States v. Ulbricht*, No. 14 Cr. 68 (KBF), Doc. 93 (S.D.N.Y. Oct. 17, 2014) (approximately one month before trial). The disclosure deadline should apply to any exhibits the defense intends to introduce at trial—including on cross examination for non-impeachment purposes. "The term 'case-in-chief' has been interpreted to encompass 'all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a defendant.'" *Melzer*, No. 20 Cr. 314 (GHW), Doc. 150, at 13 (quoting *United States v. Napout*, No. 15 Cr. 252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017)). "Nearly every court to consider the issue has concluded the same." *United States v. Crowder*, 325 F. Supp. 3d 131, 136 (D.D.C. 2018) (collecting cases).

### B. Notice of Advice-of-Counsel Defense

The Government respectfully requests that the Court order the defendants to provide notice of any advice-of-counsel defense they may seek to offer at trial. In December 2023, the Government sent a letter to the defense requesting that the defendants provide such notice. Despite meeting and conferring, and attempting to reach a comprise on this issue, the defendants have thus far declined to provide any notice, or even to provide a date by which they will do so. The Government therefore requests that the Court order disclosure by April 20, which is one month before trial. The Court's order should require the defendants to provide (a) written notice of the contours—including identifying specific attorneys involved, the advice those attorneys provided, and any discovery concerning the foregoing that the defendants will rely upon at trial—of any advice-of-counsel defense or good faith defense based on the involvement of attorneys that Kwok and/or Wang will raise at trial, and (b) all documents (including attorney-client and attorney work product documents) that support or might impeach or undermine any such defense.

1. Applicable Law

"In a fraud case . . . the advice-of-counsel defense is not an affirmative defense that defeats liability even if the jury accepts the government's allegations as true," but rather "is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an 'unlawful intent.'" *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017). "That said, defendants are entitled to an advice-of-counsel instruction only if there are sufficient facts in the record to support the defense." *Scully*, 877 F.3d at 476 (citing *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997)). Specifically, "[t]here must be evidence such that a reasonable juror could find that the defendant 'honestly and in good faith sought the advice of counsel,' 'fully and honestly laid all the facts before his counsel,' and 'in good faith and honestly followed counsel's advice.'" *Id*. (quoting *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012)).

Thus, where a defendant seeks to admit evidence of the involvement of attorneys, whether as a formal advice of counsel defense, or to show good faith, he must provide the Government with sufficient notice and disclosures ahead of trial. *See, e.g.*, *United States v. Schulte*, No. 17 Cr. 548 (PAC), 2020 WL 133620, at *6 (S.D.N.Y. Jan. 13, 2020) (requiring advanced advice of counsel disclosure); *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018) (defendant should have made pertinent disclosures in advance of trial); *United States v. Rubin/Chambers, Dunhill*, 828 F. Supp. 2d 698, 711 (S.D.N.Y. 2011) (requiring notification to the Government of advice-of-counsel defense sufficiently before pre-trial conference to permit litigation over disputes).

Such notice and discovery are necessary because by invoking an advice of counsel and/or good faith defense that relies upon the involvement of counsel, the defendant typically impliedly waives associated attorney-client and/or work product privileges. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Pretrial notice is therefore necessary to conduct discovery into potentially privileged areas, obviating the need for considerable delay during trial. A defendant's "conversations with counsel regarding the legality of his schemes" are "directly relevant in determining the extent of his knowledge and, as a result, his intent." *Id*. Because conversations with counsel can reveal an absence of good faith or advice of counsel, "the attorney-client privilege cannot at once be used as a shield and a sword." *Id*. In other words, to assess whether a defendant

truly acted in good faith, it becomes necessary to understand his communications with his attorney: did he fully and honestly lay out all the facts; did the attorney provide him information that would leave him to believe he was not acting lawfully; did he in good faith and honestly follow counsels' advice? For that reason, once a defendant raises a good faith or advice of counsel defense, "any communications or evidence defendants intend to use to establish the defense are subject to disclosure" as is "otherwise-privileged communications that defendants do not intend to use at trial, but that are relevant to proving or undermining the advice-of-counsel defense." *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018). Further complicating and necessitating early resolution, where the attorney-client privilege is likely controlled by a corporation, the Court may need to resolve whether the defendant can rely on evidence that is protected by a company's privilege. *See United States v. Milton*, 626 F. Supp. 3d 694, 702-03 (S.D.N.Y. 2022) (denying the defendant's constitutional claim that "privileged communications become discoverable simply because a defendant wishes to use those communications in his defense").

2. <u>Discussion</u>

The Court should order the defendants to provide adequate advice-of-counsel notice in advance of trial to ensure an efficient trial free from delays, avoid unfair prejudice to the Government, to allow appropriate pretrial discovery of relevant attorneys, and to permit the Court to resolve any attendant disputes between the parties. *See, e.g.*, *Schulte*, 2020 WL 133620, at *6 (requiring disclosure concerning advice of counsel 19 days before trial); *Scali*, 2018 WL 461441, at *8 (ordering notice and related discovery two weeks ahead of trial where defendant had already notice his intention to rely on the defense); *Rubin/Chambers, Dunhill*, 828 F. Supp. 2d 698, 711 (S.D.N.Y. 2011) (ordering notice three weeks ahead of trial). Sufficiently advanced notice is particularly important in this case, where Kwok has claimed to be represented by, or to have had privileged communications with, at least *39* different law firms (some with numerous individual attorneys) or individuals (including Kwok's co-defendant Yanping Wang, in her capacity as a translator), and Wang has claimed to have been represented by, or to have had privileged communications with, at least *26* different law firms (some likewise with multiple individual attorneys). *See* Ex. B (list of Kwok's attorneys provided on April 27, 2023, by his counsel for the purpose of privilege screens on seized electronic devices), Ex. C (list of Wang's attorneys provided on May 31, 2023, by her former counsel for the same purpose). The simple fact that the defendants may seek to rely on the advice of dozens of attorneys, from dozens of different law firms, makes this case unusual, and one that is susceptible to inefficiencies and delay absent reasonable notice. Indeed, the parties may have legal disputes about discovery connected to any legal advice, and the extent to which the defendants waived privilege, among other things. It may take time for the Court to resolve those issues. Sufficient advance notice of any defense that depends upon legal advice or the presence of lawyers is therefore required, lest the trial be prolonged beyond its current six-to-eight-week estimate—inconveniencing jurors and wasting judicial resources. Accordingly, the Court should order the defendants to provide notice of any advice-of-counsel defense and to produce any accompanying documents, and to do so no later than April 20 (*i.e.*, one month before trial), to account for the large number of attorneys and law firms at issue.

## II. Procedures to Protect Victim Witnesses

Like the Court, the Government owes duties to victims of crimes. *See* 18 U.S.C. § 3771(a)(1), (a)(8) & (b)(1) (providing, under the Crime Victims' Rights Act, that the court "shall ensure that [] crime victim[s] [are] afforded" their rights, including the right "to be treated with

fairness and with respect for the victim's dignity and privacy."). Chief among the Government's responsibilities is ensuring the safety of victims who seek redress from federal authorities and provide evidence and testimony regarding how they were harmed. And the Government, like the Court, also must ensure that criminal defendants are prevented from obstructing justice by intimidating or threatening potential witnesses, particularly witnesses who are crime victims and have already been victimized by defendants. *Cf. United States v. Blackshear*, 313 F. App'x 338, 343 (2d Cir. 2008) (summary order) (affirming decision to empanel anonymous jury where defendant had "consistently attempted to obstruct justice," including by "intimidating witnesses," even where "none of [defendant's] prior incidents involved jurors").

In this case, the obligation to prevent schemes to obstruct justice by threatening, harassing, and intimidating potential victim witnesses—to scare them from testifying—is particularly acute in light of the defendants' past obstructive conduct and their continuation of criminal conduct even while detained, as explained below. Accordingly, and for the reasons explained in further detail below, the Court should order the following procedures, which are incorporated into the proposed order attached as Exhibit A, to protect potential victim-witnesses:

- <u>Rule 16</u>: Pursuant to the Protective Order the Government will continue to designate "Attorneys' Eyes Only," materials that would identify potential victims.

- <u>Exhibits</u>: The Government will provide its proposed trial exhibits to defendants on April 30, with only a limited set of exhibits that would *identify* victim-witnesses designated AEO. The AEO designation will be lifted four days prior to the introduction of any so-designated exhibit at trial.

- <u>3500</u>: The Government will provide such material by May 6, with victim-witness identities and associated 3500 materials designated AEO. The AEO designation will be lifted four days prior to the testimony of any victim-witness.[6]

## A. The Defendants' Obstructive Conduct

### 1. Kwok

This Court has already found by clear and convincing evidence that Kwok "will not abide by court orders." Dkt. 51 at 12. That finding aligns with those of other courts that likewise "have previously found that [Kwok] engaged in obstructive behavior . . . and fail[ed] to obey court orders." Dkt. 51 at 8, 12. Along with defying court orders, Kwok has a history of harassment, threats, and violence directed at his critics and victims that is of paramount concern in considering the protection of victims who will testify at trial. Even before he was detained, Kwok had a practice of relying on his agents—including his followers and individuals who work at entities he controls—to subject those critics and victims to harassment. This Court has previously recounted

---

[6] While the Government has no obligation to produce § 3500 material in advance of trial, as is common, it will do so here sufficiently in advance of trial to ensure an efficient trial. *See United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) (The "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements.").

many instances in which Kwok engaged in such obstructive behavior. *See* Dkt. 51 at 9. By way of example:

- In November 2020, an anti-CCP activist ("Activist-1") filed suit against Kwok, alleging that Kwok has led a campaign of harassment and threats against him. Kwok called for actual violence and encouraged hundreds of thousands of followers to protest outside Activist-1's home, offering tens of thousands of dollars in cash and securities for anyone who succeeded in "getting rid of" Activist-1. On November 25, 2020, two of the protesters physically assaulted one of Activist-1's friends by repeatedly kicking the friend in the head and neck as he lay on the pavement outside Activist-1's home. As has been publicly reported, the friend suffered a facial fracture and swollen-shut eyes, and lost a tooth.[7]

- One particular individual who worked with Kwok in connection with the GTV Private Placement (before cutting ties with Kwok) expressed on social media that Kwok misled and defrauded his followers. Kwok responded by publicly branding that person as a "Demon" and a CCP spy. A Kwok-controlled Farm subsequently sued that person, who now lives in fear and in hiding as a result of Kwok's public threats. In particular, and as Kwok well knew, branding that person as a CCP spy has had the effect of turning Kwok's thousands of followers against that person subjecting them to harassment, lawsuits, and threats of violence.

- Kwok has also threatened victims who have sought reimbursements or complained about his fraud. Several victims have informed the Government that, after complaining to Kwok about their investments in his offerings, he branded them CCP spies, sometimes in social media or video posts, placing them directly in the crosshairs of Kwok's followers.

- Many victims that the Government has interviewed remain deeply afraid of Kwok. They are reasonably scared that if Kwok learns they are communicating with the Government, he will brand them CCP spies and mobilize his army of followers against them. One victim who spoke with the Government preemptively moved residences due to such fears.

In addition to threatening his critics and his victims, Kwok has a long and well-documented history of obstructing justice in other ways, as this Court has already recognized. *See* Dkt. 216 at 9 ("Witness tampering is but one flavor of obstruction, and the Government presents unrebutted evidence that Kwok has engaged in many others."); *id.* at 8 ("[Kwok's] promises to 'not undertake such actions again,' standing alone, do not assuage the Court's concerns that Kwok is likely to continue his pattern of obstruction if released"). By way of example:

- The bankruptcy court appointed a trustee (the "Trustee") to manage Kwok's financial affairs and to obtain assets for disbursement to Kwok's creditors. Displeased with the Trustee's actions, Kwok mobilized his supporters to harass the Trustee. For example,

---

[7] *See* https://bc.ctvnews.ca/video-shows-activist-beaten-kicked-amid-unusual-protest-outside-b-c-journalist-s-home-1.5206591.

as described below, Kwok fomented protests and anger directed toward the bankruptcy trustee, which obstructed the bankruptcy process. On November 23, 2022, to thwart the harassment, the Trustee sought—and was granted—a temporary restraining order. But that did not deter Kwok from further obstructive actions.

- "On November 20, 2022, the @NFSCSpeaks account posted a statement identifying the Chapter 11 Trustee's daughters and stating their father is aiding and abetting the CCP. The post also contained photographs of the Chapter 11 Trustee and his daughters and identified where they work. The @Miles account reposted this @NFSCSpeaks post on its Gettr page." (*In re: Ho Wan Kwok, et al.,* Chapter 11 Case No. 22-50073 (JAM) (Bankr. D. Conn. Jan. 11, 2023)*. at 22 (citations omitted).)

- "On November 20, 2022, protests occurred directly in front of the Chapter 11 Trustee's home. The protesters held signs that were, for the most part, targeted directly at the Chapter 11 Trustee." *Id.* at 23.

- In a video posted on social media, while protesting outside Paul Hastings, an individual associated with Kwok's entities stated "[t]o everyone at Paul Hastings . . . Millions of People that have been persecuted by the CCP with curse you, will curse your family, curse every single person in your life because there is blood on your hands" and "the people of the New Federal State of China, 500 million of us . . . we stand against Paul Hastings, and we stand against O'Melveny.[8] There is no going back, there is no recourse. You have committed a crime, and now you're going to suffer the consequences of your actions." *Id.* at 24-25.

- "On November 25, 2022, the Chapter 11 Trustee received a series of emails at his work email from [an] unknown ProtonMail [an encrypted email service] email address with consecutive subject lines, 'I wish' and 'i kill.' The 'I wish' email had the body text 'hhhhhhhhhahahahaha.' The 'i kill' email had no body text." *Id.* at 25.

- On November 26, 2022, an unknown caller left a voicemail for the Trustee stating "you are CCP's running dog. You need to go to Hell. You just did something so ridiculous and your end is so close. F-U-C-K." *Id.* at 27.

- Two days after a preliminary injunction was issued that ordered Kwok to stop further interference with the bankruptcy proceedings, on January 11, 2023, on his Gettr page, Kwok encouraged his followers to flood the bankruptcy docket with claims (regardless of their merit). By so doing, Kwok sought to force the Trustee to incur unnecessary

---

[8] O'Melveny represents an entity that has sued Kwok, which entity is also one of Kwok's creditors.

costs and expense as well as obstruct the proceedings.[9]  On January 23, 2023, Kwok posted a video on Gettr in which he encouraged more of the same, and revealed that the purpose of the filings was to obstruct the bankruptcy court and cause unnecessary expenses for the Trustee.  Kwok stated, "All of you go to the bankruptcy court . . . Let the attorney's fees of trustee accumulate to 1 trillion if possible. . . . Think about it, $1,860 an hour as the attorney's fees. How much attorney fees is it after you all registered? How good is that!"

In short, Kwok used *his followers* and the entities he controls (through his followers, among others) to harass and obstruct the bankruptcy proceedings.

Kwok's harassment of others has extended to this case as well.  Kwok-controlled social media accounts, including his Gettr account, branded two of the undersigned AUSAs in this case as CCP-aligned operatives.[10]

    2.  Wang

While perhaps less prolific and well-documented, Wang has engaged in obstructive conduct in connection with court proceedings.  For example, the Government has recovered chats from Wang's devices relating to the suborning of perjury.  In particular, in a series of Signal voice messages sent to Kwok's daughter, Wang coached Kwok's daughter on how to claim to attorneys, falsely, that Kwok's yacht belonged to her—a perjurious claim that Kwok's daughter later repeated under oath in court proceedings.  *See* Exs. D-G (translations of Signal messages between Wang and Kwok's daughter that were recovered from one of Wang's devices).  Equally disturbing, as evidenced in recorded conversations with individuals within the Kwok Enterprise, Wang—while in custody, following her arrest in this case—used her prior counsel to ferry her request to retrieve bank checks consisting of millions of dollars of G|CLUBS funds, *i.e.*, fraud proceeds, that were in a postal box in New York City.  On top of misusing attorneys, this conduct reflects how Wang and Kwok use others to accomplish improper ends and to continue to operate their racketeering enterprise, even while inside the MDC.

Finally, the Government expects the evidence at trial will show that, while detained and while their calls are recorded by the MDC, the defendants have been having attorney meetings with a co-conspirator who is a licensed attorney—not any criminal counsel of record—and using that attorney to ferry messages between the defendants and the Kwok Enterprise.[11]

---

[9] *See* https://gettr.com/post/p24ybdca10b (last accessed March 14, 2023) ("Greetings, esteemed comrades. Paul Hastings Law Firm is launching a campaign to register creditors! If there are comrades who are not strong-willed, feeling their own investments and past investments, have no sense of security and need to be a debtor, and if you think it is a better choice, you must contact Paul Hastings Law Firm to register in the Bankruptcy Court of Connecticut as soon as possible, and maybe you can become a billionaire.")

[10] *See* https://gettr.com/post/p2cy7sycdbf.

[11] Notably, this same attorney's associate emailed the Government directly and requested a copy of all its discovery.

### B. Continued and Tailored AEO Protections Are Appropriate

As one measure to ensure the safety and availability of its witnesses and preserve the integrity of this criminal trial, while balancing these interests with the defense's right to prepare a defense, the Government has generally designated the significant volume of victim-provided Rule 16 discovery in this case as AEO. The Protective Order in this case, which was entered without any objection, provides:

> Certain of the Government's disclosure material, referred to herein as "Attorneys' Eyes Only Material," contains highly confidential and highly sensitive material that affects the privacy, confidentiality, and/or safety interests of individuals or entities, such that its disclosure could cause substantial harm and/or pose safety concerns to individuals or entities, including but not limited to: information related to victims subject to harassment . . . .

Dkt. 63 ¶ 4. Given the defendants' obstructive conduct, and their continuation of the scheme from prison, the Government's AEO designations are appropriate. Nonetheless, in view of the fact that the defendants defrauded and manipulated *thousands* of different individuals for a period of several years, the Government recognizes that victim-provided materials are not insignificant. Accordingly, the Government is willing to make accommodations to the defense and designate a substantial volume of such materials "Highly Confidential," so long as those accommodations will not jeopardize the integrity of these proceedings, victim safety, or the ability of victim witnesses to testify without harassment, intimidation, or threats.

By that measure, Wang's request that all "communications (whether written or recorded) involving the defendants" and all photographs of the defendants be deemed "Highly Confidential" falls short. Dkt. 253 at 3. Wang misunderstands the sensitivity of the victim-provided materials: it is not their content that is highly sensitive, but their potential to *identify* the individuals who have provided the materials to the Government. Communications and photographs may do exactly that. Granting Wang's blanket request would identify certain victim-witnesses to the defendants nearly two months before trial and lead to an extended campaign of harassment, intimidation, and threats against those victim-witnesses. These are not idle concerns. Just as this Court is familiar with the defendants' egregious track record of obstructive conduct, so too are the defendants' victims. Nearly every victim the Government has spoken with has expressed his or her genuine fears of the defendants' harassment and retaliation. *Cf. United States v. Kandic*, No. 17 Cr. 449 (NGG), 2021 WL 5505832, at *4 (E.D.N.Y. Nov. 24, 2021) ("Reasonable jurors, when assessing the allegations that Defendant used social media to promote ISIS, could fear that their identities could be disclosed online, exposing them to threats from individuals who are not directly associated with Defendant."). Accordingly, Wang's requests must be denied in order to protect victims and preserve the integrity of the forthcoming trial.

Further, because these same concerns are presented by disclosure to the defendants of victim-identifying Government exhibits and 3500 material, it is appropriate for the Government to designate AEO the exhibits and 3500 material that would identify victim witnesses until four days prior to that victim-witness's testimony. These types of procedures have been employed in criminal cases in this District to protect witnesses and prevent obstruction. *See, e.g.*, *United States v. Jones*, 21 Cr. 505 (ER), Dkt. 50 (3500 protective order including AEO designation, which was used for cooperating witnesses and civilian witnesses until a date closer to trial); *United States v.*

*Bilal*, 19 Cr. 565 (JPO), Dkt. 52 (same); *United States v. Garcia*, 21 Cr. 412 (JSR), Dkt. 101 (certain 3500 material AEO until one week prior to trial). While this case does not involve drug trafficking, it is a racketeering case involving defendants who have gone to great lengths to intimidate, harass, and threaten—and at times physically harm—those who speak out against them. And the defendants maintain many devoted followers who have attempted to obstruct justice in past proceedings and will likely seek to do so again in this case, where their leader faces the potential of conviction and a lengthy jail sentence. That is, the defendants and their associates have obstructed justice and threatened others when they faced merely *civil* consequences. Here, the defendants face *criminal* consequences, and these higher stakes manifestly increase the likelihood of obstructive conduct as the trial date approaches.

## III.   MDC Discovery

Finally, Wang requests that the Court "order the government to hand-deliver all recent productions and any subsequent productions to the appropriate officials at MDC Brooklyn for prompt delivery to the defendants." (Dkt. 253 at 2). No such order is necessary. The Government has been accommodating the defense's requests to delivery discovery to the MDC, as the record in this case makes clear, and will continue to do so in the lead up to trial.

Wang was arrested on March 15, 2023 and ordered detained pending trial. Several rounds of motions for reconsideration followed; this Court affirmed Wang's pretrial detention on April 21, 2023, finding that Wang poses a serious risk of flight and that no conditions can reasonably assure her attendance at future court proceedings. Dkt. 56. This Court also ordered co-defendant Ho Wan Kwok detained pending trial, in light of his dangerousness to the community, risk of flight, and risk of obstruction, on April 20, 2023. Dkt. 51. During a pretrial conference on June 9, 2023, the Court orally granted defendants' motion requesting access to laptops at the Brooklyn Metropolitan Detention Center to facilitate their review of discovery and other case materials. That same day, the Government contacted legal staff at Brooklyn MDC to advise them of the Court's order and to determine how to make arrangements to deliver laptops to the defendants. The Court entered the parties' joint proposed laptop order on June 13, 2023. Dkt. 86.

On or about July 14, 2023, Wang's then-counsel sent a laptop (the "Wang Laptop") to the Government to be loaded with discovery materials designated as Confidential pursuant to the Protective Order (*i.e.*, materials Wang was authorized to maintain at Brooklyn MDC). On July 22, 2023, Emil Bove filed a notice of appearance on behalf of Wang in this matter, indicating that he intended to substitute in as Wang's counsel; the next day, the Government informed the Court that it intended to move to disqualify Bove, and subsequently filed a motion for disqualification. On August 11, 2023, while that disqualification motion was pending, Bove contacted the Government regarding the status of the Wang Laptop and confirmed that Bove and his firm would not access discovery or discuss discovery with Wang pending resolution of the disqualification motion. Later that day, the Government informed Bove that it was loading the Wang Laptop with discovery materials and would deliver the Wang Laptop to Brooklyn MDC.

On August 20, 2023, the Government confirmed that the Wang Laptop (which had been loaded with certain Confidential discovery materials) had been delivered to Wang at Brooklyn MDC. The Government advised Bove that it required a 10 TB hard drive for additional Confidential materials that were too large to be loaded onto the Wang Laptop, and gave Bove the specifications for an MDC-compatible hard drive on September 7, 2023. Bove provided a hard

drive to the Government, which the Government loaded with the additional Confidential discovery materials and delivered to the MDC in October 2023. Bove withdrew as Wang's counsel on October 27, 2023. Brendan Quigley, Wang's current counsel, filed a notice of appearance on November 6, 2023.

During a call on February 20, 2024, Quigley asked the Government to send Wang the Confidential discovery that the Government had produced since in or about October 2023.[12] On February 23, 2024, the Government provided counsel with Brooklyn MDC's specifications for inmate hard drives. The Government received a hard drive from Quigley on February 27, 2024 and, in the ensuing days, loaded that drive with the requested discovery materials. On March 10, 2024, the Government advised Quigley that the drive would be delivered to Wang at the Brooklyn MDC the next day. On March 11, 2024, the Government arranged for hand-delivery of the drive to Brooklyn MDC and received a receipt confirming delivery, which was signed by a Brooklyn MDC staff member and dated March 11, 2024.

On Saturday, March 23, 2024, Quigley emailed the Government (copying in MDC Legal) to advise that the drive apparently had not yet been delivered to Wang. This was the first time the Government had learned that the drive delivered to Brooklyn MDC on March 11, 2024 had not been received by Wang. The Government responded to Quigley in just over an hour and the same day emailed MDC Legal staff to inquire into the status of the drive. On March 25, 2024, MDC Legal advised that they had no record of having received the drive. The Government provided a copy of the delivery receipt (which, as set forth above, reflected that a Brooklyn MDC staff member had signed to confirm receipt of the drive on March 11, 2024). Later, on March 25, 2024, MDC Legal staff advised the Government that it was unable to locate the drive, and requested that the Government send a replacement drive. The next day, on March 26, 2024, the Government downloaded the discovery to a new drive (aside from cellphone extractions, which were too large to copy to the drive) and arranged for hand-delivery of the new drive to Brooklyn MDC on March 27, 2024. MDC Legal staff confirmed that the new drive arrived at Brooklyn MDC on March 27, 2024 (*i.e.*, the day *before* Wang filed her motion), and provided a letter that Wang signed on March 28, 2024, confirming receipt of the drive, and further confirming that she was able to access the contents of the new drive. In summary, every time defense counsel asked the undersigned to assist in delivering discovery to the defendants, the Government has promptly responded and assisted.

Accordingly, there is no need for the Court to order the Government to provide discovery to the MDC, as it has already been doing so and will continue to do so, and Wang's motion should be denied.

---

[12] The Government made approximately five discovery productions to Wang's and Kwok's counsel between December 2023 and February 2024.

## IV.    Conclusion

For the reasons set forth above, the Court should order the mutual pretrial disclosure schedule, attached as Exhibit A; and permit the use of tailored procedures to protect victim witnesses in this matter.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:/s/ _____
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **[Proposed] Pretrial Scheduling Order** |
| v. | S2 23 Cr. 118 (AT) |
| HO WAN KWOK,<br>   a/k/a "Miles Guo,"<br>   a/k/a "Miles Kwok,"<br>   a/k/a "Guo Wengui,"<br>   a/k/a "Brother Seven,"<br>   a/k/a "The Principal,"<br>   a/k/a "Boss," and<br><br>YANPING WANG,<br>   a/k/a "Yvette,"<br>   a/k/a "Y,"<br><br>                    Defendants. | |

WHEREAS trial in this matter is set to begin on May 20, 2024;

The Court ORDERS as follows:

1. **Expert Notice:**  The parties shall exchange expert notices, except for translation and experts that rebut the opposing party's previously notified expert, on or before **April 1, 2024**.[1]

2. **Notice of Certain Defenses**:  The defendants shall notify the Government of their intention, if any, to rely on an advice-of-counsel, reliance on counsel, presence of counsel, or other involvement of counsel as a defense to the charges, if any, by **April 20, 2024**.  Such notice shall identify the attorney(s) relied upon, the specific advice provided, and any discovery supporting such a defense that the defendants intend to rely on at trial.

_____

[1] The parties shall work in good faith to reach an agreement regarding language translations.

3. **Rule 16 Discovery Materials**: The Government shall complete production of Rule 16 discovery in its possession by **April 10, 2024**. The defendants shall complete production of Rule 16 discovery in their possession by **April 22, 2024**. Rule 16 materials acquired after those dates shall be produced on a rolling basis.

4. **Government Trial Exhibits:** The Government shall provide defendants' counsel exhibits that the Government reasonably expects to seek to introduce during its case-in-chief by **April 30, 2024**. These exhibits will be subject to good-faith revisions as the Government continues to prepare its case for trial, including in response to the defendants' list of intended exhibits and witnesses.

5. **Government § 3500 Material and Witness List**: The Government shall provide the defendants' counsel § 3500 material, and its witness list by **May 6, 2024**. Section 3500 material generated after that date shall be provided to defendants' counsel on a rolling basis. The witness list will be subject to good-faith revisions including in response to the defendants' list of intended exhibits and witnesses.

6. **Defendants' Trial Exhibits**: The defendants shall provide the Government the exhibits that the defendants reasonably expect to seek to introduce during their case-in-chief by **May 10, 2024**. These exhibits will be subject to limited good-faith revisions as the defense continues to prepare its case for trial.

7. **Defense Witness List:** The defendants shall provide their lists of witnesses whom the defendants reasonably expect to call in their case-in-chief by **May 10, 2024**. The witness list will be subject to limited good-faith revisions.

2

8. **Defense 26.2 Material:**  The defendants shall provide Rule 26.2 materials for their witnesses by **May 13, 2024**.  Rule 26.2 material generated after that date shall be provided to the Government on a rolling basis.

9. **Protection of Victims from Harassment**:  The Government may produce § 3500 material and exhibits that would reveal the identity of any victims as "Attorney's Eyes Only" pursuant to the Protective Order (Dkt. 51).  No later than four days before a victim whose § 3500 material is marked "Attorney's Eyes Only" testifies, the Government shall designate such material "Highly Confidential."  No later than four days before an exhibit that is marked "Attorney's Eyes Only" is offered for admission at trial, the Government shall designate such an exhibit as "Highly Confidential."

SO ORDERED:

Dated:  New York, New York
　　　　April __, 2024

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　THE HON. ANALISA TORRES
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

# EXHIBIT B

| Law Firm | Address | Lawyers | Domain | Persons/Entities Represented and Time Periods for Each Representation. |
|---|---|---|---|---|
| Brown Rudnick LLP | 7 Times Square New York, NY 10036 | William Baldiga<br>Stephen Cook<br>Stephen Best<br>Sunni Beville<br>Tiffany Lietz<br>Tristan Axelrod<br>Kenneth Aulet<br>Andrew Carty<br>Jeffrey Jonas<br>Bennett Silverberg<br>Robert Stark<br>Honieh Udenka<br>Natasha Ertzbishoff<br>William Franzese<br>Alessandra Maldonado<br>E. Patrick Gilman<br>Ashley Smith<br>Eileen Citron | @brownrudnick.com | Client: Miles Kwok<br><br>Approx.: 2/22-7/22,<br>3/23 - present |
| Lawall & Mitchell, LLC | 55 Madison Avenue Morristown, NJ 07960 | Aaron Mitchel | @lmesq.com | Miles Kwok, Yanping Wang, Hing Chi Ngok, Mei Guo, Guo Qiang, GTV Media Group. Inc., Saraca Media Group, Inc., GSNY, Hamilton Investment, G-Clubs<br><br>Approx. 2018 - present |
| The Casper Firm, LLC | 400 E. Pratt Street Suite 903 Baltimore, MD 21202 | Ari Casper | @casperfirm.com | Client: Miles Kwok<br>Approx: 2019 - present |
| Harcus Parker Ltd. | 7th Floor, Melbourne House 44-46 Aldwych London, WC2B 4LL | Damon Parker | @harcusparker.co.uk | Client: Miles Kwok, Ace Decade, Dawn State |

| Law Firm | Address | Lawyers | Domain | Persons/Entities Represented and Time Periods for Each Representation. |
|---|---|---|---|---|
| | | | | Approx. 2019 - present |
| Petrillo Klein & Boxer LLP | 655 Third Avenue 22nd Floor New York, NY 10017 | Guy Petrillo Joshua Klein | @pkbllp.com | Client: Miles Kwok Approx: 2018 - present |
| Clayman Rosenberg Kirshner & Linder LLP | 305 Madison Avenue Suite 650 New York, New York 10165 | Isabelle Kirshner | @clayro.com | Client: Miles Kwok Approx: 2020 - present |
| Schulman Bhattacharya, LLC | 6116 Executive Boulevard Suite 425 Bethesda, MD 20852 | Jeffrey Gavenman | @schulmanbh.com | Client: Miles Kwok Approx: 2020 - present |
| Baker Hostetler LLP | 45 Rockefeller Plaza New York, NY 10111-0100 | John Siegal | @bakerlaw.com | Client: Miles Kwok Approx: 2020 - present |
| Ganfer Shore Leeds & Zauderer LLP | 360 Lexington Avenue New York, NY 10017 | Mark Zauderer | @ganfershore.com | Client: Miles Kwok Approx: 2021 - present |
| Matthew Hoyle | One Essex Court Temple, London, EC4Y 9AR DX 430 | Matthew Hoyle | mhoyle@oeclaw.co.uk | Client: Miles Kwok, Ace Decade, Dawn State Approx. 2020 - present |
| The Francis Firm PLLC | 33 W 60th Street Floor 2 New York, NY 10069 | Melissa Francis | melissaf@gsnyus.com | Client : Miles Kwok, Approx.: 2020 - present |
| Forbes Hare | Qwomar Building PO Box 4649, Road Town Tortola VG1110 British Virgin Islands | Robert Nader | @forbeshare.com | Client: Miles Kwok Approx: 2019 - present |

| Law Firm | Address | Lawyers | Domain | Persons/Entities Represented and Time Periods for Each Representation. |
|---|---|---|---|---|
| Sa'ad Hossain Q.C. | One Essex Court Temple, London, EC4Y 9AR DX 430 | Sa'ad Hossain Q.C. | shossain@oeclaw.co.uk | Client: Miles Kwok, Ace Decade, Dawn State<br><br>Approx. 2020 - present |
| Lalive SA | Rue de Law Mairie 35 1207 Geneva Switzerland | Sandrine Giroud | @lalive.law.com | Client: Miles Kwok, Ace Decade, Dawn State<br><br>Approx. 2020 - present |
| Sebastian Isaac | One Essex Court Temple, London, EC4Y 9AR. DX 430 | Sebastian Isaac | sisaac@oeclaw.co.uk | Client: Miles Kwok, Ace Decade, Dawn State<br><br>Approx. 2020 - present |
| VX Cerda & Associates | 601 Brickell Key Drive Suite 700 Miami, FL 33131 | Victor Cerda | @vcerdalaw.com | Client: Miles Kwok, Yanping Wang, Hing Chi Ngok, Mei Guo, Guo Qiang<br><br>Approx.: 2018 - present |
| Law Offices of Yongbing Zhang | 223 West Jackson Boulevard Suite 1012 Chicago, IL 60606 | Yongbing Zhang | @ybzlaw.com | Client: Miles Kwok and Yanping Wang<br><br>3/23 - present |
| Zeisler & Zeisler, P.C. | 10 Middle Street Bridgeport, CT 06604 | Stephen Kindseth<br>Aaron Romney<br>Eric Henzy<br>James Moriarty | @zeislaw.com | Client: Miles Kwok, HKI, Mei Guo<br><br>Approx.: 2021 - present |
| Troutman Pepper | 3000 Two Logan Square Eighteenth and Arch Streets Philadelphia, PA 19103 | Francis Lawall | @troutman.com | Client: Bravo Luck<br>Approx.: 2019 - present |
| Chiesa Shahinian & Giantomasi | 105 Eisenhower Parkway Roseland, NJ 07068 | Lee Vartan<br>Melissa Wernick | @csglaw.com | Client: HKI, Mei Guo<br>Approx.: 2020 - present |
| Lipman Law PLLC | 45 West 29th Street Suite 303 New York, NY 10001 | Alex Lipman | @lipmanllc.com | Client: Yanping Wang<br>Approx.: 2020 - present |
| Chaudhry Law PLLC | 147 West 25th Street, 12th Fl New York, NY 10001 | Priya Chaudhry | @chaudhrylaw.com | Client: Yanping Wang<br>Approx.: 3/23 - present |
| Phillips Nizer LLP | 485 Lexington Avenue New York, NY | Matthew Levine | @phillipsnizer.com | Client: Lamp Capital<br>Approx.: 2021 - present |

| Law Firm | Address | Lawyers | Domain | Persons/Entities Represented and Time Periods for Each Representation. |
|---|---|---|---|---|
| | 10017 | | | |
| Wachen LLC | 11605 Montague Court Potomac, MD 20854 | David Wachen | @wachenlaw.com | Client: Miles Kwok Approx.: 11/22 - present |
| Law Offices of Jeffrey Hellman, LLC | 195 Church Street, 10th Fl. New Haven, CT 06510 | Jeffrey Hellman | @jeffhellmanlaw.com | Client: Miles Kwok Approx.: 11/22 - present |
| Arethusa Forsyth | | | arethusaf@protonmail.com | Client: GSNY Approx.: 2022 |
| HodgsonRuss LLP | 605 Third Avenue Suite 2300 New York City, NY 10158 | Mark A. Harmon Jillian Searles | @hodgsonruss.com | Client: Miles Kwok Approx.: 2018 - present |
| Boies Schiller Flexner | 55 Hudson Yards 20th Floor New York, NY 10001 | David Boies Josh Schiller | @bsfllp.com | Client: Miles Kwok, Ace Decade, Dawn State Approx.: 2015 - 2018 |
| Williams & Connolly LLP | 680 Maine Avenue SW Washington, DC 20024 | | @wc.com | Clients; Miles Kwok, Guo Qiang, Approx. 2015 - 2017 |
| Paul Weiss | 1285 Avenue of the Americas New York, NY 10019-6064 | | @paulweiss.com | Clients; Miles Kwok, Guo Qiang Approx. 2015 - 2017 |
| Clark Hill | 830 Third Avenue Suite 200 New York, NY 10022 | | @clarkhill.com | Client: Miles Kwok Approx. 2017 |
| Montbrial advocates | Thibault de Montbrial | | Unknown | Client: Miles Kwok Approx.: 2019 - present |
| Daniel Podhaskie | | Daniel Podhaskie | danielp@gsnyus.com | Client: Miles Kwok, GSNY Approx.: 2019 - 2021 |

| Law Firm | Address | Lawyers | Domain | Persons/Entities Represented and Time Periods for Each Representation. |
|---|---|---|---|---|
| Paul Hastings | 200 Park Avenue New York, NY 10166 | Brad Bondi | @paulhastings.com | Clients: GTV Media Group, Inc., Miles Kwok<br><br>Approx.: 2020 - 2021 |
| Spears & Imes LLP | 767 Third Avenue New York, NY 10017 | David Spears | @spearsimes.com | Clients: GTV Media Group, Inc.<br><br>Approx. 2020 |
| Morvillo Abramowitz Grand Iason & Anello, P.C. | 565 Fifth Avenue New York, NY 10017 | Jeremy Temkin | jtemkin@maglaw.com | Clients: Saraca Media Group Inc., GTV Media Group, Inc.<br><br>Approx. 2020 - 2022 |
| Una Wilkinson | 68-18 Juno Street Forest Hills, New York 11375 | Interpreter | unamanyee@gmail.com | Translator: Miles Kwok, Mei Guo<br><br>Approx.: 2019 - present |
| Yanping Wang | | Interpreter | Officework2020@protonmail.com | Translator: Miles Kwok, Mei Guo, Hing Chi Ngok<br><br>Approx. 2015 – present (U.S.) |
| Hei Lok (Gladys) Chow | | Interpreter | gladyschowus@gmail.com | Translator: Miles Kwok, Hing Chi Ngok<br><br>Approx.: 2019 - present |

65009234 v1-WorkSiteUS-039463/0001

# EXHIBIT C

**List of attorneys who may have had privileged communications with Ms. Wang**

*United States v. Yanping Wang,* 23-CR-118 (AT)

| Law Firm | Address | Lawyers | Domain |
|----------|---------|---------|--------|
| Brown Rudnick LLP | 7 Times Square<br>New York, NY 10036 | William R. Baldiga<br>508-922-8272<br><br>Stephen R. Cook<br>(no communication w/<br>Yvette via cell phone)<br><br>Stephen A. Best<br>(no communication w/<br>Yvette via cell phone)<br><br>Sunni P. Beville<br>(no communication w/<br>Yvette via cell phone)<br><br>Tiffany B. Lietz<br>(no communication w/<br>Yvette via cell phone)<br><br>Tristan Axelrod<br>(no communication w/<br>Yvette via cell phone)<br><br>Kenneth Aulet<br>(no communication w/<br>Yvette via cell phone)<br><br>Andrew M. Carty<br>(no communication w/<br>Yvette via cell phone)<br><br>Jeffrey L. Jonas<br>617-593-5033<br><br>Bennett S. Silverberg<br>917-538-2798<br><br>Robert J. Stark<br>(no communication w/<br>Yvette via cell phone)<br><br>Honieh Udenka<br>(no communication w/<br>Yvette via cell phone) | @brownrudnick.com |

| Law Firm | Address | Lawyers | Domain |
|---|---|---|---|
| | | Natasha M. Ertzbischoff (no communication w/ Yvette via cell phone)<br><br>William Franzese III (no communication w/ Yvette via cell phone)<br><br>Alessandra Maldonado (no communication w/ Yvette via cell phone)<br><br>E. Patrick Gilman (no communication w/ Yvette via cell phone)<br><br>Ashley E. Smith (no communication w/ Yvette via cell phone)<br><br>Eileen Hren Citron (no communication w/ Yvette via cell phone) | |
| Chaudhry Law PLLC | 147 West 25th Street, 12th Fl New York, NY 10001 | Priya Chaudhry 917-952-8266<br><br>Seth Zuckerman 516-286-9018<br><br>Robert Glenn (no communication w/ Yvette via cell phone) | @chaudhrylaw.com |
| Harcus Parker Ltd. | 7th Floor, Melbourne House 44-46 Aldwych London, WC2B 4LL | Damon Parker +44 (0)7919 605191<br><br>Jenny Morrissey +44 (0)7919 138666<br><br>Edward Argles +44 (0)7577 063492 | @harcusparker.co.uk |
| LALIVE SA | Rue de Law Mairie 35 1207 Geneva Switzerland | Sandrine Giroud (no communication w/ Yvette via cell phone)<br><br>Matthias Scherer (no communication w/ Yvette via cell phone)<br><br>Dominik Elmiger | @lalive.law |

| Law Firm | Address | Lawyers | Domain |
|---|---|---|---|
| | | (no communication w/ Yvette via cell phone) | |
| Law Offices of Yongbing Zhang | 223 West Jackson Boulevard Suite 1012 Chicago, IL 60606 | Yongbing Zhang 312-493-7158 708-553-9734 312-860-0268 | @ybzlaw.com |
| Lawall & Mitchell, LLC | 55 Madison Avenue Morristown, NJ 07960 | Aaron A. Mitchell 914-760-8963 917-689-8505 | @lmesq.com |
| Lipman Law PLLC | 147 West 25th Street, 12th Fl New York, NY 10001 | Alex Lipman 917-757-9850 | @lipmanpllc.com |
| One Essex Court | One Essex Court Temple, London, EC4Y 9AR DX 430 | Sa'ad Hossain Q.C. (no communication w/ Yvette via cell phone) Matthew Hoyle (no communication w/ Yvette via cell phone) Sebastian Isaac (no communication w/ Yvette via cell phone) | @oeclaw.co.uk |
| Petrillo Klein & Boxer LLP | 655 Third Avenue 22nd Floor New York, NY 10017 | Guy Petrillo 646-385-1479 Joshua Klein 646-596-4589 | @pkbllp.com |
| Phillips Nizer LLP | 485 Lexington Avenue New York, NY 10017 | Matthew L. Levine (no communication w/ Yvette via cell phone) | @phillipsnizer.com @ekljlaw.com |
| Schulman Bhattacharya, LLC | 6116 Executive Boulevard Suite 425 Bethesda, MD 20852 | Jeffrey S. Gavenman 703-314-8799 | @schulmanbh.com |
| The Francis Firm PLLC | 33 W 60th Street Floor 2 New York, NY 10069 | Melissa Francis 917-207-1285 917-244-8807 917-209-9230 917-239-8333 646-799-4832 301-785-9100 | @gsnyus.com |
| The Warren Law Group | 519 8th Avenue, 25th Floor, New York, NY 10018 | Daniel Podhaskie 917-941-9698 | @warren.law |

| Law Firm | Address | Lawyers | Domain |
|----------|---------|---------|--------|
| VX Cerda & Associates | 601 Brickell Key Drive Suite 700 Miami, FL 33131 | Victor Cerda 202-747-4950 | @vcerdalaw.com @fronteralawfirm.com |
| Wedlake Bell LLP | 71 Queen Victoria Street London EC4V 4AY | James Latham +44 (0)7884 311084 Kate Herbert Gemma Williams +44 (0)2073 953052 | @wedlakebell.com |
| Wilberforce Chambers | 8 New Square, Lincoln's Inn, London, WC2A 3QP | Daniel Lewis (no communication w/ Yvette via cell phone) | @wilberforce.co.uk |
| Yankwitt, LLP | 140 Grand Street, Suite 705 White Plains, NY 10601 | Daniel S. Alter (212) 580-6355 | @yankwittlaw.com |
| Zeisler & Zeisler, P.C. | 10 Middle Street Bridgeport, CT 06604 | All attorneys (no communication w/ Yvette via cell phone) | @zeislaw.com |
| Gold Leaf Consulting Ltd. | P.O. Box 3140 Road Town, Tortola British Virgin Islands | Julia Shamini Chase 758-725-5055 284-346-5056 332-260-9742<br><br>Gizelle Macaraeg (no communication w/ Yvette via cell phone)<br><br>Nailah Frett (no communication w/ Yvette via cell phone)<br><br>Cherise Archibald 284-541-8644<br><br>Nadia Harrigan 284-541-9894 | @goldleafbvi.com<br><br>@tetonoffices.com<br><br>@tetonbvi.com |
| Slaughter Law Group | 4881 Topanga Canyon Blvd., Suite 238 Woodland Hills, CA 91364 | Lesa Slaughter 347-291-7534 (Regular text and phone) 718-909-3816 (Regular text, phone and WhatsApp) 646-352-3725 (Regular text and phone) | @slaughterlawgroup.com |
| Wildes & Weinberg, P.C. | 515 Madison Avenue, 6th Floor New York, NY 10022 | Michael Wildes 347-203-6355 Tudor Neagu | @wildeslaw.com |
| Hodgson Russ LLP | 605 3rd Avenue New York, NY 10158 | Valerie E. Stevens 716-408-7692 | @hodgsonruss.com |

| Law Firm | Address | Lawyers | Domain |
|---|---|---|---|
| Collas Crill | 125 Main Street<br>P.O. Box 144<br>Road Town, Tortola<br>British Virgin Islands | David Harby<br>T: +1 284 852 6327<br>M: +1 284 541 7011<br><br>Dave Marshall<br>T: +1 284 852 6317<br>M: +1 284 541 2456<br><br>Fay O'Halloran<br>T: +1 284 852 6302<br>M: +1 284 542 8373<br><br>Anneka Williams<br>(no mobile communications)<br><br>Margaret Sweeney (no mobile communications) | @collascrill.com |
| Swiss Independent Practitioners | | Ignacio Guaia<br>+41 79 437 1516<br>+41 79 853 6575<br><br>Brandon Sean<br>+41 79 234 4939 | @teton.ch<br><br>@gmx.ch |
| FP Legal | | Alexander Fitzner<br>+41 77 458 2478 | @teton.ch<br><br>@fplegal.services |
| Savio Law | 3 Dale Court<br>Hazlet, NJ 07730 | Nick Savio<br>732-673-9011 | @saviolaw.com |

# EXHIBIT D

| | |
|---|---|
| CASE NAME: | <u>United States v Kwok</u> |
| EXHIBIT NUMBER: | Voice_Message_1_20_22_8_41_PM_1 |
| DATE: | 1/20/2022 |
| TIME: | 8:41 PM |
| DURATION: | 00:00:17 |
| ANGUAGE(S): | Chinese, English |
| PARTICIPANTS: | YW:   Yvette Wang |

| | |
|---|---|
| ABBREVIATIONS: | [U/I] – Unintelligible |
| | [PH] – Phonetic Spelling |
| | [Brackets] – Transcriber Notes |
| | [UKN] – Unknown Speaker |
| |  // – Voices Overlap |
| | *Italics* – Spoken in English |

| NAME | ENGLISH TRANSLATION | ORIGINAL LANGUAGE |
|---|---|---|
| | [Start of Recording] | [Start of Recording] |
| YW | To talk to these attorneys, even if to your own attorney, is still very *tricky*. Hahaha. He/she insists on hearing some words directly from the mouth of a party. In fact, he/she already knew it and he/she has even worked in this direction already, but he/she still insists on hearing it directly from your mouth. Therefore, to talk to these attorneys, even if to your own attorneys, is still rather *tricky*. Um. | 就跟这帮律师去对话，即使自己的律师也是很 *tricky* 的，哈哈哈。他/她有些话非要从当事人嘴里直接听到。其实他/她早就都知道，他/她甚至已经在这个方向上去工作了，但他/她非要从你嘴里直接听到这才行。所以说跟这帮律师，即使自己的律师对话也是比较 *tricky* 的。嗯。 |
| | [End of Recording] | [End of Recording] |

2

# EXHIBIT E

CASE NAME:              United States v Kwok

EXHIBIT NUMBER:         Voice_Message_1_20_22_8_41_PM

DATE:                   1/20/2022

TIME:                   8:41 PM

DURATION:               00:00:29

ANGUAGE(S):             Chinese, English

PARTICIPANTS:           YW:   Yvette Wang

ABBREVIATIONS:          [U/I] – Unintelligible
                        [PH] – Phonetic Spelling
                        [Brackets] – Transcriber Notes
                        [UKN] – Unknown Speaker
                         // – Voices Overlap
                        *Italics* – Spoken in English

| **NAME** | **ENGLISH TRANSLATION** | **ORIGINAL LANGUAGE** |
|---|---|---|
| | [Start of Recording] | [Start of Recording] |
| YW | You tell him/her whether you're willing to… you tell him/her… he/she asks if you're willing to *testify*, your tone should be that this is your boat, right? This is your boat. What you have heard now is, hey, this is your boat. What is going on? How come now the boat belongs to my Dad? And now my Dad is going to jail because of it, it's said that he's going to jail. What is going on? You should start from this tone, this is your belonging. You start from this perspective and tell him/her why you are going to *testify*, isn't that Right? And then, you… you… you're not saying that you could help, but saying that this is your property and you must claim your rights, your tone should start from the perspective of the owner. Um. | 你告诉他/她你愿不愿意去…你告诉他/她…他/她问你愿不愿意去 *testify*, 你的语气就是这就是你的船, 对吧？这就是你的船。你现在听到的就是说，哎，这就是你的船。这是怎么回事儿呀？这船怎么就弄成这是我爸的了？现在我爸还因为这就要坐牢，据说是要坐牢。这是怎么回事儿？你就从这个语气出发，这就是你的东西。你从这个角度出发告诉他/她为什么要 *testify*, 对不对？然后你…你…你不是说是能够帮到忙，而是说这是你的资产，你就要主张这个权利，语气要从这个主人的角度出发。嗯。 |
| | [End of Recording] | [End of Recording] |

# EXHIBIT F

CASE NAME:              <u>United States v Kwok</u>

EXHIBIT NUMBER:        Voice_Message_1_20_22,_8_46_PM

DATE:                  01/20/2022

TIME:                  8:46 PM

DURATION:              00:01:11

ANGUAGE(S):            Chinese, English

PARTICIPANTS:          YW:   Yvette Wang

ABBREVIATIONS:         [U/I] – Unintelligible
                       [PH] – Phonetic Spelling
                       [Brackets] – Transcriber Notes
                       [UKN] – Unknown Speaker
                        // – Voices Overlap
                       *Italics* – Spoken in English

| NAME | ENGLISH TRANSLATION | ORIGINAL LANGUAGE |
|------|---------------------|-------------------|
| | [Start of Recording] | [Start of Recording] |
| YW | Fine, fine, you can come to me at any time, you can come to me at any time. Overall, even with your own lawyer, our own lawyer afterward, our dialogue is just pretending that this homework in the background has not been done, as the tone always means that, well, you are one of the managers and representatives of the entire family's assets, eh, and then, the management and representation of family assets in the entire China and Europe, ah, and Asia are different from those in the West. It's equivalent to you being one of the family representatives, the assets you hold are your assets, they are the assets that the family has authorized you to hold. This is your boat, right? And then after that, that is, regarding to your ship, um, that means that you are not saying you are insisting，but saying if you can show up to help, and saying that this is your asset, you have to be responsible for the family, you have to be responsible for your own assets and go out to claim this right. You heard that someone distorted and said that this boat belonged to your father, and since your father got into trouble because of this matter, this matter is completely intolerable to you, this is why you have to come forward to testify. This is the basic keynote and tone behind it, yes. Regarding this boat, it was your brother who paid for the boat, so, this is between you and your brother, it was your brother who went to pay for the boat. Both you and your brother are, eh, representatives | 好的，好的，你随时找我，你随时找我。整个总体以后即使是跟你自己的律师，咱们自己的律师，我们的对话也是，就是假装这些背后的功课都没有做过，就是语气始终就是说，呃，你就是家族的整个，就是资产的管理人和代表人之一，呃，然后的话，整个中国和欧洲的这个，啊，和亚洲的这个家族资产的管理和代表这是和，这是和他们西方是不同的。相当于就是你是家族代表之一，你持有资产的就是你的资产，就是家族授权你持有的这个资产。这是你的船，对吧？然后完了的话，就是啊，你的船的话，嗯那就是说，你现在不是说你是非要，就说是，看出来能不能帮忙，而是说这是你的资产，你要对家族负责，你要对你自己的资产负责出来去主张这个权利。你听说有人把这个船歪曲成说是你爸爸的，并因为你爸爸因为这事还因为，就是说，陷入麻烦啦，这事完全不能，你不能容忍，这是为什么你要出来作证，这个就是背后的基调和语调，对。这个船，当时买这个船付钱的是你哥哥嘛，所以说这个话是你和你哥哥之间，你哥哥去，去那个付钱买这个船的，你和你哥哥两个都是家族资产的，呃，代表嘛。就是这么一个情况。 |

| NAME | ENGLISH TRANSLATION | ORIGINAL LANGUAGE |
|------|---------------------|-------------------|
|      | of the family assets. That's the situation. |  |
|      | [End of Recording] | [End of Recording] |

# EXHIBIT G

CASE NAME: <u>United States v Kwok</u>

EXHIBIT NUMBER: Voice_Message_1_20_22,_8_48_PM

DATE: 1/20/2022

TIME: 8:48 PM

DURATION: 00:01:01

ANGUAGE(S): Chinese, English

PARTICIPANTS: YW:   Yvette Wang

ABBREVIATIONS: [U/I] – Unintelligible
[PH] – Phonetic Spelling
[Brackets] – Transcriber Notes
[UKN] – Unknown Speaker
 // – Voices Overlap
Italics – Spoken in English

| NAME | ENGLISH TRANSLATION | ORIGINAL LANGUAGE |
|---|---|---|
| | [Start of Recording] | [Start of Recording] |
| YW | That is why Victor wants to talk to you, because he wants to go over the whole years of '18 and '17 with you. Our entire conversations are just about when we made that application, about your story, just making sure that this can be matched, don't have Qiang to have difference. At the same time, he also wants to remind you, that is, to emphasize about the period of time being persecuted, then emphasize to you about, about the safety's this… and then the hidden dangers of this safety being threatened. Yes, must emphasize these, yes, *I am fucking being threatened and in jail so what*, right, similar to this kind, and then there must be this huge potential safety hazard. In view of this, therefore you asked not to appear before, and now even if appearing, the face cannot be shown, those are the two points, let's emphasize them first. Yes, the attorney insists that it must be mentioned from your mouth, that's why. In fact, we have prepped with them many times for these stories behind, and they all know how to deal with it. It is just because due to their so-called bullshit professional ethics, he must hear it from the client's mouth, that is the reason. That is why the so-called bullshit is that Aaron can't participate in the *prep* of your *deposition* either, only your lawyer Li can. Anyway, that's how it works. Yes, you should rest first, feel free to contact me anytime tomorrow, feel free to contact me anytime. | 这就是为啥Victor要找你对话，因为他想跟你过一下，整个就是18，17年，咱们整个就是说那个做那个申请的时候，就是你关于你的故事，就是确保这个是能对上的，不要有强[PH]有出入，同时以后他也想提醒你，就是强调关于被迫害的这一段，然后强调你关于于安全的这个被…被那个被安全的这个威胁的这个隐患，对，一定要强调这些，对，就是*I am fucking being threatened and in jail so what* 对吧，类似于这种的，然后的话就是肯定就是有巨大的这个安全的隐患，鉴于如此，所以说你才会要求就是之前不出现，然后现在的话就是即使出现也不能露脸，就是这两个点呢，先去给它强调住。对，律师他一定要从你嘴里提到，就是为啥。其实背后这些故事其实我们都跟他们*Prep*好多次，他们也都知道他们该怎么去处理。只是。迫于他们所谓的这些狗屁的职业道德，他一定要从当事人嘴里听到，就是这个原因。就是为什么所谓的狗屁的是Aron也不能参加你的*deposition*的*Prep*，只有你的律师Li才行。总之就是这一套吧。对，你先休息啊，明天随时找我，随时找我。 |
| | [End of Recording] | [End of Recording] |

2