1

```
 1                   UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
 2                       BRIDGEPORT DIVISION

 3
       IN RE:                       .  Chapter 11
 4                                   .  Case No. 22-50073 (JAM)
       HO WAN KWOK, et al.,          .
 5                                   .
               Debtors.             .
 6                                   .
       . . . . . . . . . . . . . . . .
 7                                   .
       LUC. A DESPINS, CHAPTER 11    .
 8     TRUSTEE,                      .
                                     .
 9             Plaintiff,           .
                                     .  Adversary Proceeding
10     v.                           .  No. 23-05013
                                     .
11     HCHK TECHNOLOGIES, INC.;      ,
       HCHK PROPERTY MANAGEMENT,     .
12     INC.; LEXINGTON PROPERTY AND .
       STAFFING, INC.; HOLY CITY     .
13     HONG KONG VENTURES, LTD.;     .
       ANTHONY DIBATTISTA; YVETTE    .
14     WANG; AND BRIAN HOFMEISTER,   .  Courtroom 123
       AS ASSIGNEE OF THE HCHK       .  Brien McMahon Federal Building
15     ENTITIES,                     .  915 Lafayette Boulevard
                                     .  Bridgeport, Connecticut 06604
16             Defendants.          .
                                     .  Tuesday, April 23, 2024
17     . . . . . . . . . . . . . . . .  1:00 p.m.

18                      TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE JULIE A. MANNING
19                 UNITED STATES BANKRUPTCY JUDGE

20     Audio Operator:         Electronically recorded

21     Transcription Company:  Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
       Proceedings recorded by electronic sound recording,
25     transcript produced by transcription service.
```

 1  APPEARANCES:

 2  For the Chapter 11
    Trustee:                Luc A. Despins, Esquire
 3                          PAUL HASTINGS, LLP
                            200 Park Avenue
 4                          New York, New York 10166

 5                          Nicholas A. Bassett, Esquire
                            2050 M Street, NW
 6                          Washington, DC 20036

 7                          Patrick R. Linsey, Esquire
                            NEUBERT PEPE & MONTEITH, P.C.
 8                          195 Church Street
                            13th Floor
 9                          New Haven, Connecticut 06510

10  For the U.S. Trustee:   Holley L. Claiborn, Esquire
                            UNITED STATES DEPARTMENT OF JUSTICE
11                          OFFICE OF THE UNITED STATES TRUSTEE
                            The Giaimo Federal Building
12                          150 Court Street, Room 302
                            New Haven, Connecticut 06510
13
    For the Official
14  Committee of
    Unsecured Creditors:    Kristin B. Mayhew, Esquire
15                          PULLMAN & COMLEY, LLC
                            850 Main Street
16                          8th Floor
                            Bridgeport, Connecticut 06601
17
    For Pacific Alliance
18  Asia Opportunity Fund:  Stuart M. Sarnoff, Esquire
                            O'MELVENY & MYERS, LLP
19                          Times Square Tower
                            7 Times Square
20                          New York, New York 10036

21                          Annecca H. Smith, Esquire
                            ROBINSON & COLE, LLP
22                          280 Trumbull Street
                            Hartford, Connecticut 06103
23

24

25

```
 1   ALSO APPEARING:

 2   For G Club Operations:    Jeffrey M. Sklarz, Esquire
                               GREEN & SKLARZ, LLC
 3                             One Audubon Street
                               3rd Floor
 4                             New Haven, Connecticut 06511

 5   For Fox News Network
     and Marcum LLP:          Henry P. Baer, Esquire
 6                            FINN DIXON & HERLING, LLP
                              177 Broad Street
 7                            15th Floor
                              Stamford, Connecticut 06901
 8
                              -and-
 9
                              Andrew R. Gottesman, Esquire
10                            MINTZ & GOLD
                              600 3rd Avenue
11                            New York, New York 10016

12   For HCHK Property
     Management, Inc.:        John T. Shaban, Esquire
13                            LEVINE & LEVINE, PLLC
                              2 Jefferson Plaza I
14                            New York, Suite 100
                              Poughkeepsie, New York 12601
15
     For Taurus Fund LLC:     Michael T. Conway, Esquire
16                            LAZARE POTTER GIACOVAS & MOYLE LLP
                              747 Third Avenue, 16th Floor
17                            Fifth Floor
                              New York, New York 10017
18
     For Weddle Law PLLC:     Richard J. Corbi, Esquire
19                            THE LAW OFFICES OF RICHARD J.
                                CORBI PLLC
20                            1501 Broadway, 12th Floor
                              New York, New York 10036
21
     For Blueberry
22   Builders, LLC:           Heather Spaide, Esquire
                              MARINO, ZABEL & SCHELLENBERG, PLLC
23                            657 Orange Center Road
                              Orange, Connecticut 06477
24

25
```

```
 1   ALSO APPEARING:

 2   For 3 Columbus
     Circle LLC:                Matthew Pesce, Esquire
 3                              MURTHA CULLINA
                                107 Elm Street, 11th Floor
 4                              Stamford, Connecticut 06902

 5   For Anthem Health
     Plans, Inc.:               Jessica Signor, Esquire
 6                              SHIPMAN & GOODWIN LLP
                                300 Atlantic Street, Third Floor
 7                              Stamford, Connecticut 06901

 8   For Mei Guo:               Stephen M. Kindseth, Esquire
                                ZEISLER & ZEISLER
 9                              10 Middle Street
                                15th Floor
10                              Bridgeport, Connecticut 06604

11   For Marie Petrantoni:      Holly G. Rogers, Esquire
                                MELICK & PORTER, LLP
12                              900 Main Street South
                                Suite 102
13                              Southbury, Connecticut 06488

14   For Defendant:             Ivan J. Ladd-Smith, Esquire
                                SPEARS MANNING & MARTINI LLC
15                              2425 Post Road
                                Suite 203
16                              Southport, Connecticut 06824

17

18

19

20

21

22

23

24

25
```

INDEX

MOTIONS:                                                            PAGE

Matter
#3003:    Motion for Order Modifying Avoidance Action          6
          Procedures to Include Procedures for
          Mediation of Avoidance Actions Filed by
          Patrick R. Linsey on Behalf of Luc A.
          Despins, Chapter 11 Trustee

Matter
#268:     Motion for Default Judgment by Court
          Pursuant to Fed. R. Civ. P. 55(b)(2) and
          Fed. R. Bank. P. 7055 against HCHK
          Technologies, Inc.; HCHK Property
          Management, Inc.; Lexington Property and
          Staffing, Inc.; Holy City Hong Kong
          Ventures, Ltd.; Anthony DiBattista; Yvette
          Wang; and Brian Hofmeister, as Assignee of
          the HCHK Entities. Filed by Patrick R.
          Linsey on Behalf of Luc A. Despins,
          Plaintiff

1            (Proceedings commenced at 1:04 p.m.)

2            THE CLERK:  Case No. 22-50073, Ho Wan Kwok.  And

3   Adversary No. 23-5013, Despins versus HCHK Technologies, et

4   al.

5            THE COURT:  Okay.  Good afternoon.  I'm going to

6   take appearances for the record first for all parties

7   appearing in the main Chapter 11 jointly administered cases

8   and then for the parties appearing in Adversary 23-05013.

9            Trustee Despins, would you like to start?

10           MR. DESPINS:  Good afternoon, Your Honor.  Luc

11  Despins, Chapter 11 Trustee.

12           THE COURT:  Good afternoon.

13           MR. BASSETT:  Good afternoon, Your Honor.  Nick

14  Bassett from Paul Hastings, counsel for the Chapter 11

15  Trustee.

16           THE COURT:  Good afternoon.

17           MR. LINSEY:  Good afternoon, Your Honor.  Patrick

18  Linsey of Neubert, Pepe & Monteith, Connecticut counsel for

19  the Trustee.

20           THE COURT:  Good afternoon.

21           Good afternoon, Your Honor.

22           THE COURT:  You have to come forward.  I'm sorry.

23  You know, because everything is on audio, we have to make

24  sure that the microphone can pick up your voice.

25           MR. SHABAN:  Good afternoon, Your Honor.  John

1   Shaban for the HCHK entities.

2          THE COURT:  Good afternoon, Attorney Shaban.

3          MR. SKLARZ:  Good afternoon, Your Honor.  Jeffrey

4   Sklarz, Green & Sklarz, for G Club and also for Weddle Law

5   Firm, who is also represented by Richard Corbi, who's over to

6   my left, and he will file pro hac vice papers for Attorney

7   Corbi, ask that he handle the matters related to

8   (indiscernible).

9          THE COURT:  All right.  Give me just a moment.

10  Okay?  So when you are appearing -- and it's absolutely fine.

11  I just want to know there are specific adversary proceedings

12  you're involved in in connection with the mediation

13  procedures.  Correct?

14          MR. SKLARZ:  Correct.

15          THE COURT:  So I think I may have a list, but I'd

16  rather you tell me what you think you're involved in first,

17  and then I can see if I'm right.

18          MR. SKLARZ:  I will admit Your Honor that I am not

19  sure of what the adversary proceedings are.

20          THE COURT:  But I have them, I think.  I have --

21          MR. SKLARZ:  I have a list too.

22          THE COURT:  Okay.

23          MR. SKLARZ:  But I -- if I may have a moment.

24          THE COURT:  I have -- I believe you have an

25  appearance, and you're asking for a visiting attorney to be

1   appearing in 24-05275 and in 24-05188.

2            MR. SKLARZ:  Yes.  5188, I do know is the Weddle

3   adversary.  I think the other adversary that you're referring

4   to is Pillsbury Winthrop.

5            THE COURT:  I believe so.  Yes.

6            MR. SKLARZ:  Yes.  But the Pillsbury Winthrop is

7   not filed or actually, they have filed in this one.  So, yes,

8   we would be here for Pillsbury --

9            THE COURT:  Well, you filed an objection to the

10  mediation procedures and that relates to both of those

11  adversary proceedings.  Okay?

12           MR. SKLARZ:  Yep.  Yep.

13           THE COURT:  I just want to make the record as

14  clear as we possibly can so that it -- this recording will be

15  recorded as it has been in all of the hearings since this

16  case, the main Chapter 11 case of Mr. Kwok was filed in

17  February of 2022.

18           The recording will be available for transcript

19  purposes in the main case.  And it will cite to various

20  adversary proceedings.  And obviously, we're going to have a

21  hearing in an adversary proceeding that's in the main case --

22  related to these main cases as part of today's calendar.

23           The reason I'm trying to be specific is, at some

24  point, some counsel may only want a portion of the

25  transcript.  I don't know.  That's up to them.  But it's all

1  -- with any kind of transcript request would have to be made

2  through the main case.  And I just wanted to be clear about

3  that and then clear what you're here on.

4           You're here -- the procedures related to the

5  mediation was filed in the main case, but you represent

6  parties in those two specific adversary proceedings.

7           MR. SKLARZ:  Yes.

8           THE COURT:  As well.  Okay.

9           MR. SKLARZ:  G Club, Pillsbury, and Weddle.

10          THE COURT:  Okay.  Thank you.

11          MR. SKLARZ:  Thank you.

12          THE COURT:  Good afternoon.

13          MR. CONWAY:  Michael Conway, Lazare Potter

14  Giacovas & Moyle, represent First Funding, (indiscernible).

15          THE COURT:  Okay.  Thank you.

16          MR. GOTTESMAN:  Good morning, Your Honor.  I'm

17  sorry, good afternoon, Your Honor.

18          THE COURT:  That's okay.

19          MR. GOTTESMAN:  Andrew Gottesman of Mintz & Gold.

20  I represent Fox News in adversary proceeding 24-0515 and

21  Markham LLP in adversary proceeding 24-05229.

22          THE COURT:  Thank you.  Good afternoon.  I see

23  Attorney Baer is with you on both of those matters.  Is that

24  right, Attorney Baer?

25          MR. BAER:  Good afternoon, Your Honor.  Yes.

1    That's correct.

2            THE COURT:  And then you have any other matters as

3    well?

4            MR. BAER:  Yes, Your Honor.  I'm also appearing on

5    behalf of Nardello (phonetic) & Company, which is adversarial

6    proceeding 24-05162.  Teris-Phoenix LLC, which is 24-05044.

7    Post Oak Motors, 24-05017, and then Hanon Hong Kong

8    Opportunities Offshore and Onshore Funds, which is 24-05272.

9            THE COURT:  Did you file an objection on behalf of

10   the last defendant?

11           MR. BAER:  We did not, Your Honor.

12   (indiscernible).

13           THE COURT:  Okay.  That's fine.  I just wanted --

14   I didn't have a record of that, so I wanted to make sure that

15   what I had was accurate.

16           MR. BAER:  That's correct.  Thank you.

17           THE COURT:  All right.  Thank you.

18           MS. SPAIDE:  Good afternoon, Your Honor.  Heather

19   Spaide from Marino, Zabel & Schellenberg, here representing

20   Blueberry Builders, LLC.  And I have --

21           THE CLERK:  I'm sorry.  I did not get your name.

22           THE COURT:  You just have to speak more into the

23   microphone.  I'm sorry.

24           MS. SPAIDE:  Heather Spaide from Marino, Zabel &

25   Schellenberg

1          THE CLERK:  I'm sorry, could you say it again?

2          MS. SPAIDE:  Heather Spaide.

3          THE COURT:  It's S-P-A-I-D-E, is that right?  Yes,

4    I saw your notice of appearance.

5          MS. SPAIDE:  Yes, thank you.  And we -- Blueberry

6    Builders LLC is an adversary proceeding 24-05007, and it also

7    filed a limited objection to the motion on the calendar

8    today.  We also moved the pro hac vice admission of Attorney

9    Amy Oden, who is here with me today.

10          THE COURT:  Good afternoon.  It may have been

11   moved along for entry.  I believe it is going to be entered

12   if it hasn't already.  So that's fine.  You can absolutely

13   appear.  The only thing I would note, Attorney Spaide, is for

14   your office to note.  The clerk's office, noted that Attorney

15   Marino filed notices of appearance on behalf of Attorney

16   Zabel with his CM/ECF, but we can't do that.

17          So I'm just telling you that the clerk's office

18   has to maintain that record from the person that actually

19   files it.  So it's fine.  You don't have -- just if you would

20   talk to them about that and make sure that works out in the

21   future, I'd appreciate that.

22          MS. SPAIDE:  I'll talk to our paralegal, yes.

23   Thank you.

24          THE COURT:  I appreciate that.  Thank you.

25          MS. ROGERS:  Good afternoon, Your Honor.  Holly

1  Rogers, Melick & Porter, on behalf of Marini Pietrantoni, and

2  Muniz (phonetic), which is a defendant in adversary

3  proceeding 24-05205.  And we have not filed any response to

4  the Trustee's motion regarding the avoidance procedure.

5            THE COURT:  Okay.  Thank you.

6            MR. PESCE:  Good afternoon, Your Honor.  Matthew

7  Pesce, Murtha Cullina, on behalf of avoidance action

8  defendant 3 Columbus Circle.  We filed a limited objection in

9  the main case on behalf of 3 Columbus Circle, but we also

10 represent two other of avoidance action defendants, but we

11 did not file objections in those matters for those clients.

12           THE COURT:  Okay.  Thank you.  Good afternoon.

13           MS. SIGNOR:  Good afternoon, Your Honor.  Jessica,

14 Signor, Shipman Goodwin.  I'm here on behalf of three

15 separate avoidance defendants.  The first is Art Wolf Inc.

16 That avoidance defendant can be found at adversary proceeding

17 24-05033.

18           I'm also here on behalf of Anthem Healthcare

19 Choice Assurance Inc, which was formerly known as Empire

20 Health Choice Assurance Inc, and does business as Empire Blue

21 Cross Blue Shield, and that is at adversary proceeding 24-

22 05112.

23           And finally, I'm here on behalf of Anthem Health

24 Plans Inc.  That's at adversary 24-05058.  We have filed

25 limited objections.  We filed those in the main docket of the

1  case, and we also filed them in the adversary.

2              THE COURT:  Okay.  Thank you.

3              MS. SIGNOR:  Thank you.

4              THE COURT:  Trustee Despins, Attorney Signor, just

5  wait for one second, please.  Attorney Signor worked with me

6  as a law clerk years ago.  So I just want you to know that.

7  And if there's any conflict and anyone has any issues, I'd

8  like them to raise it, sooner as opposed to later.  I don't -

9  - I haven't seen Attorney Signor.  I do know her personally.

10 I know her family, but I haven't had any discussions with her

11 in quite some time, quite frankly.

12             But in any event, we do get together with the law

13 clerks every once in a while.  So I just want you to know

14 that and make sure that there's no conflict from your

15 standpoint.

16             MR. DESPINS:  No issues, Your Honor.

17             THE COURT:  Okay.  Thank you.

18             MS. SIGNOR:  Thank you.

19             THE COURT:  Thank you.

20             MR. SARNOFF:  Good afternoon, Your Honor.  Stewart

21 Sarnoff O'Melveny and Myers on behalf of Creditor PAX in the

22 main case.

23             THE COURT:  Good afternoon.

24             MS. SMITH:  Good afternoon, Your Honor.  Annecca

25 Smith, Robinson & Cole, lead counsel for creditor PAX in the

 1 | main case.

 2 |          THE COURT:  Good afternoon.  I feel like we need

 3 | to have the microphone up or something so we don't have to

 4 | all bend down, but sorry.

 5 |          MS. MAYHEW:  Good afternoon, Your Honor.  Kristen

 6 | Mayhew, Pullman & Comley on behalf of the Official Committee

 7 | of Unsecured Creditors.

 8 |          THE COURT:  Good afternoon.

 9 |          MR. KINDSETH:  Good afternoon, Your Honor.

10 | Stephen Kindseth (indiscernible).  I apologize that we don't

11 | have the adversary proceedings in which I sued on her behalf.

12 |          THE COURT:  Okay.

13 |          MR. KINDSETH:  And we did not file any objection

14 | immediately adversary proceedings of the main case that I

15 | don't anticipate participating in.  Just here observing, Your

16 | Honor.

17 |          THE COURT:  Okay.  Thank you.

18 |          MR. KINDSETH:  Thank you, Your Honor.

19 |          MR. LADD-SMITH:  Good afternoon, Your Honor, Ivan

20 | Ladd-Smith with Spears, Manning & Martini for adversary

21 | defendant Beile Li.  We did not object and do not intend to

22 | object to the proposed mediation procedures.

23 |          THE COURT:  Good afternoon.  And just to be clear

24 | for the record, the Manning in that name is a relative of

25 | mine, my brother, but he is not involved in the case.  I

 1  don't know anything about it other than I saw an appearance

 2  they filed.  So, Trustee Despins, I don't know if you have

 3  any concerns about that, but I --

 4          MR. DESPINS:  No issues.

 5          THE COURT:  -- note that for the record.  Okay.

 6  Thank you.

 7          MR. LADD-SMITH:  Thank you, Your Honor.

 8          THE CLERK:  May I just have that name again?

 9          MR. LADD-SMITH:  Yes.  Ivan, I-V-A-N, last name is

10  hyphenated.  It's Ladd-Smith.  L-A-D-D hyphen S-M-I-T-H.

11          THE CLERK:  Okay.  Thank you.

12          MR. LADD-SMITH:  Thank you.

13          THE COURT:  Thank you.  All right.  Before we talk

14  about the mediation procedures, I thought it might make sense

15  to address the motion for default judgment since there are

16  more people on the Courtroom on the mediation procedures than

17  on the motion for default judgment.

18          So as we turn to adversary in 23-05013, Despins

19  versus HCHK Technologies, I think it makes more sense to

20  proceed that way.  Attorney Bassett, are you going to be

21  proceeding with the motion?

22          MR. BASSETT:  Yes, Your Honor.

23          THE COURT:  Okay.  Please proceed.

24          MR. BASSETT:  Thank you.  May I approach?

25          THE COURT:  Certainly.  Thank you.

16

1          MR. BASSETT:  Thank you.  Again, for the record,

2   Nick Bassett from Paul Hastings on behalf of the Chapter 11

3   Trustee.  Your Honor, I'll try to keep my remarks brief this

4   afternoon because we are once again revisiting an issue that

5   the Court has had occasion to consider multiple times in this

6   case.  In fact, essentially in this very same adversary

7   proceeding with this very same defendant or set of

8   defendants.

9          As the Court is by now well aware, the defendant

10  at issue, the main defendants at issue who are here objecting

11  are the entities known as the HCHK parties.  That includes

12  HCHK Technologies, HCHK Property Management, Lexington

13  Property and Staffing, and then their parent company, Holy

14  City Hong Kong Ventures.  I'll describe that relationship in

15  a bit more detail, although the Court is familiar with it.

16          These parties, Your Honor, have already had

17  numerous opportunities before this Court to state their case

18  as to why they deserve to be heard and as to why they believe

19  that they hold meritorious defenses to the Trustee's claims.

20  They failed at every turn.

21          They were served with complaints in June 2023.

22  They had answered deadlines in July of 2023 for three of the

23  defendants, and then in August of 2023 for the last

24  defendant, Holy City, which is a foreign defendant, the

25  answer deadline was set by order of the Court.

1          All four entities missed those answer deadlines

2    without excuse.  On August 28th, after the last of the answer

3    deadlines, they collectively moved for an extension of their

4    deadline to respond to the complaint.  The Court

5    approximately one month later, after briefing and a hearing,

6    rightfully denied that motion and granted the Trustee's cross

7    motion for entry of default against the defendants.

8          In November, the HCHK parties took a second bite

9    of the apple, moving to set aside the default after already

10   having failed to demonstrate that they were entitled to an

11   extension of time to answer, after extensive briefing and

12   again another hearing.

13         On February 28th of this year, the Court denied

14   the motion to set aside, finding, among other things in the

15   process, that defendants have been properly served with the

16   complaint, that they willfully defaulted thereafter, and that

17   they had failed to present a meritorious defense to the

18   Trustee's claims.

19         The Trustee now is here moving for default

20   judgment against the HCHK parties.  That judgment, Your

21   Honor, should be granted because the Trustee readily

22   satisfies the requirements for default judgment under Second

23   Circuit law.  These requirements are twofold.

24         One, that the defendants have been validly served

25   with the complaint and two, that the allegations of the

1  complaint, taken as true with all inferences drawn in the

2  plaintiff's favor set forth a claim thoroughly under

3  applicable law.

4          And I will not spend too much time addressing the

5  -- in fact, I won't spend any time addressing the service

6  process issue because I think the record before the Court is

7  clear.  I don't think the defendants are even contesting that

8  they were served with process.  So unless counsel would raise

9  that, I will not spend any of the Court's time addressing

10  service.

11          I will instead focus on why the Trustee has

12  demonstrated through the allegations in the complaint that he

13  is entitled to a default judgment as a matter of law on his

14  claims that the HCHK entities, namely the three subsidiary

15  entities, are the debtor's alter ego and/or are beneficially

16  owned by him.

17          And as I said, Your Honor, in undertaking this

18  analysis, it is very important to remember that Second

19  Circuit law is crystal clear, that upon a default, the

20  defendant has waived its ability to contest the truthfulness

21  or the accuracy of any allegations in the complaint.  The

22  only question before the Court is whether the allegations

23  taken as true, and importantly, all interferences drawn in

24  plaintiff's favor set forth a plausible claim for relief.

25          The Trustee's complaint easily clears that bar,

1  Your Honor, and therefore judgment is appropriate.

2        So the main thrust of the HCHK parties' objection

3  and why they think the complaint is insufficient is they

4  characterize these entities that issue as operating entities

5  that are far different from HKUSA, which is another entity

6  that this Court has already held with the debtor's alter ego.

7  HKUSA, of course, was the shell company that the debtor used

8  to hold title to his yacht to Lady May, and he had placed

9  HKUSA under the nominal ownership of his daughter.

10        Your Honor, I will be the first to admit that the

11  HCHK entities are in fact different for HKUSA.  The HCHK

12  entities are not shell companies that the debtor used for the

13  specific purpose of holding title to a single asset.  They

14  are instead entities that the debtor used to fund his

15  personal expenses to shield his other assets from creditors.

16  But the fact that they are different from HKUSA in no way

17  means they're any less alter ego.

18        In fact, as I will describe, I think these facts

19  at issue that are relevant to the alter ego analysis as to

20  these entities are in some ways far more egregious than the

21  facts that were at issue for HKUSA.

22        When conducting the alter ego analysis under

23  Delaware law, Your Honor, the Court first looks to see

24  whether there had been -- there's factors that Court supply,

25  of course, but the sum and substance of those factors as

1   whether or not the complaint was alleged that the debtor or

2   the person at issue has exercised dominion and control over

3   the entities in question, such that there's a showing that

4   they are all collectively under the debtor's control in a

5   single economic unit.

6          Here, there are numerous facts in the complaint

7   that support that conclusion and any suggestion -- and there

8   are many of these suggestions -- in the objection to the

9   motion are highly disingenuous.  And I'll get to that in a

10  minute.

11         Your Honor, he allegations start at the top with

12  individuals with whom this Court is very similar.  Yvette

13  Wang, the debtor's criminal coconspirator, with whom he is

14  presently in jail, is the sole owner of Defendant Holy City.

15         The Court has already found that Yvette Wang is a

16  person who was employed by the debtor and under his control.

17  Holy City owns 99.9999 percent of each of the HCHK entities.

18  So the HCHK property, HCHK Technologies, and Lexington, above

19  that the 99.999 percent owner is Holy City, and the sole

20  owner above that is Yvette Wang.

21         The other individual who owns 0.0001 percent of

22  the ownership of each of the operating level entities is Mr.

23  Anthony Di Bautista, another individual whose name has come

24  up constantly in these cases, someone who is also employed by

25  the debtor and has been subject to his control.

1          Yet another individual who has been employed as

2    alleged in the complaints by all of the HCHK entities is Mr.

3    Max Krasner.  Mr. Max Krasner's name also has appeared nearly

4    everywhere in this Chapter 11 case as an individual who has

5    been employed by the debtor, who has carried out its business

6    dealings in the debtor's direction, et cetera.

7          In addition to the ownership and persons in

8    control of these entities who are clearly people who are

9    controlled by the debtor as alleged in the complaint, the

10   HCHK entities were all located at 3 Columbus Circle in New

11   York City.

12         That address is significant because that is the

13   same address at which the debtor and people acting at his

14   direction filmed videos that were the subject of the protests

15   and the harassment campaign this Court already enjoined after

16   finding that those protests and harassment campaign were

17   being directed by the debtor and his associates and were

18   designed to interfere with this Chapter 11 case.

19         In addition to both allegations, Your Honor, the

20   complaint alleges that the HCHK entities served as the

21   debtor's -- essentially his piggy bank, both receiving

22   funding from other entities controlled by the debtor and then

23   by paying expenses for the debtor and his associates.

24         For example, the complaint alleges that HCHK

25   Technologies made payments for the debtor's -- the Cirrus jet

1    that the debtor allegedly owns.  HCHK Technologies also helps

2    fund the maintenance and operation of the Lady May, which the

3    Court has already found is property of the estate.  HCHK

4    Technologies also helped fund the same types of maintenance

5    and operation expenses for the debtor's Bombardier jet, which

6    is the subject of another adversary proceeding before this

7    report.

8            The complaint alleges that Lexington Property and

9    Staffing made payments to the debtor's personal legal counsel

10   and the counsel for other debtor controlled entities such as

11   Lamp Capital, which this Court has already found is an alter

12   ego of the debtor.

13           The complaint further alleges that Lexington made

14   payments to known debtor associates and employees including

15   Yvette Wang, Max Krasner, Brock Barnett, another individual

16   within the Court is familiar which the Trustee has alleged to

17   be the debtor's driver and bodyguard, and Aaron Mitchell, who

18   is an attorney representing the debtor who this Court is

19   familiar with and has appeared before this Court.

20           The objectors go to great lengths to point out

21   that there are less allegations concerning funding with

22   respect to HCHK property.  But Your Honor, the complaint

23   plainly alleges in paragraph 27 and elsewhere that HCHK

24   property was part of the same single enterprise along with

25   HCHK Technologies, Lexington Property and Staffing, and many

1   of the debtor's other shell companies.

2           It also operated out of the same location, had the

3   same employees and owners that had Yvette Wang, Anthony Di

4   Bautista, Max Krasner, and control.  Your Honor, there are

5   more than enough allegations as to each of the entities to at

6   least demonstrate that there is a plausible claim set forth

7   in the complaint with all inferences drawn in the Trustee's

8   favor that each of the entities is the debtor's alter ego.

9           To kind of drive this point home, Your Honor, I

10  think the accounting firm that was retained for all of the

11  HCHK entities (indiscernible).  Again, this is alleged in the

12  complaint.  An email correspondence, the accountants at

13  Markham LLP, hired to perform accounting work for the HCHK

14  entities, stated in an email, quote, that they were

15  representing entities indirectly owned by Miles Kwok, owner

16  of GTV Media.  Couldn't have said it better myself, Your

17  Honor, because that's exactly the economic reality of who the

18  HCHK entities were.

19          Before I move on to talk about why the facts in

20  the complaint demonstrate that the HCHK entities were very

21  clearly used by the debtor to commit a fraud and injustice,

22  which I think is maybe the most compelling -- one of the more

23  compelling facts we have here, I do want to just take a

24  moment to respond to a couple of the allegations in the

25  objection.

1        I think it's paragraph 26 of the objection and

2   elsewhere where the HCHK parties go so far as to say that the

3   complaint affirmatively supports the opposite conclusion,

4   that somehow the complaint paints a picture of these entities

5   being independently operating businesses with their own bank

6   accounts, assets, business objectives, et cetera.

7        Your Honor, I don't know how anyone could possibly

8   read our complaint and come across with that impression with

9   a straight face.  There is nothing whatsoever in our

10  complaint that includes such allegations.

11       In fact, the only way the objection attempts to

12  paint that picture is by citing to submissions in the New

13  York assignment proceedings, which I'll talk more about in a

14  second, in which the assignment papers, which as I will talk

15  about in a second, we allege were part of the attempt to

16  effectively defraud this Court and the estate, where they

17  characterized the HCHK parties' businesses as being

18  independent and having certain business objectives, et

19  cetera.  In our complaint, we expressly -- if you look at

20  paragraph 27 of our complaint -- we expressly say that those

21  statements are inaccurate.

22       And that is not what these HCHK parties, in fact,

23  were, that they were, in fact, shell companies for the

24  debtor.  So for them to say that we have alleged that the

25  HCHK entities are separate and distinct operating entities

1  that are not the debtor's alter egos is -- it's completely

2  disingenuous and inaccurate.

3       Your Honor, the second component of the alter ego

4  test under Delaware law is for the plaintiffs to show that

5  the -- here the debtor used the alter ego relationship with

6  the entities in question here, the HCHK entities, to commit a

7  fraud or injustice.

8       Now, here as with HKUSA, we have alleged that the

9  debtor used these entities to help hide his assets from

10 creditors and to pay his personal expenses through entities

11 purportedly not controlled by him.  In that way, the

12 allegation is similar to HKUSA, where the debtor used a shell

13 company to hide his assets.

14      But here it goes so much further beyond that

15 because well after the commencement of this Chapter 11 case,

16 the debtor not only had in the past, you know, used these

17 entities to hide his assets and help funnel his funds to

18 other shell companies, he used them, as alleged in the

19 complaint, as part of a scheme to keep assets from the

20 administration of this Chapter 11 case outside the oversight

21 of this Court.  They did that through the commencement of the

22 assignment proceedings in New York State Court in April of

23 2023.

24      Now, as the Court -- the Court is well familiar

25 with the assignment proceedings, so I won't discuss them in

1    too much detail, and I won't belabor the point.  But

2    obviously, the commencement of an assignment proceeding may

3    seem somewhat innocuous until you understand who the

4    creditors in that assignment proceeding, who was the benefit

5    (indiscernible) were.

6            And as the Court knows, and as it's been

7    established in the separate litigation in its adversary

8    proceeding related to the intervention motion, those

9    creditors were people associated with the debtor and under

10   the control of and acting at the direction of the oft-

11   sanctioned personal counsel of the debtor, Mr. Yongbing

12   Zhang, whom this Court found was both, A, representing their

13   interests as members of a "creditors representative and a

14   creditors committee" in that intervention litigation and also

15   the same individual who, as the Court is aware from prior

16   litigation in connection with the motion to vacate entry of

17   the default judgment, the same individual who was directing

18   counsel for the HCHK entities here.

19           And had the Court not granted the release to

20   prevent those assignment proceedings from going forward, they

21   may have well succeeded, in which case all of the assets,

22   which are rightfully property of the estate, would have been

23   distributed to all of these creditors who, in fact, are

24   people acting at the debtor's direction.  All of that, Your

25   Honor, is alleged in the complaint.

1          The -- I guess the other point I would make as to

2     bad faith in the equities, Your Honor, is we also can't

3     forget the history of how we got here through the motion to

4     vacate and the motion for extension of time, as the Court

5     will recall, for misrepresentations of these defendants as to

6     when they were retained, the engagement letter, which showed

7     that they became aware of and were actually contacted by

8     their client well before the answer deadline was initially

9     not disclosed to the Court.

10          When it was finally disclosed, Mr. Yongbing

11    Zhang's name was redacted for no justifiable reason.  Your

12    Honor, from the very beginning, these defendants have been

13    playing games.  And I think that also weighs strongly on the

14    overall equities of the situation and therefore the second

15    prong for the alter ego analysis.

16          So the last thing I will do, Your Honor, is just

17    very quickly address some of the other arguments that the

18    HCHK parties make.  I actually won't spend any time on them

19    at all unless the Court would like me to, but just to note

20    them for the record.

21          The HCHK parties assert that the Trustee's claim

22    for reverse veil piercing is not a cognizable claim under

23    Delaware law.  The Court has already rejected that argument

24    on multiple occasions, I think most recently in the Lamp

25    Capital default judgment decision.

1          They also argue that the Trustee's claims are

2     barred by the in pari delicto and Wagner rule.  The Court has

3     addressed that on multiple occasions including HKUSA and in

4     Lamp Capital.  Obviously, that document does not apply here

5     as the Court has held because the Trustee's bringing some

6     claims under Section 544 of the Bankruptcy Code on behalf of

7     creditors.

8          So Your Honor, in summary, the Trustee has

9     properly served the defendant, has more than plausibly

10    demonstrated that his claims for alter ego and their

11    beneficial ownership are valid under Delaware law.  And none

12    of the other arguments that have been raised in opposition to

13    the complaint have merit.  So for those reasons, we think

14    default judgment is appropriate, and we respectfully request

15    that our motion be granted.

16              THE COURT:  Thank you.

17              MR. SHABAN:  May I approach?

18              THE COURT:  Certainly.  Thank you.

19              MR. SHABAN:  Thank you.  Good afternoon, Your

20    Honor.

21              THE COURT:  Good afternoon.

22              MR. SHABAN:  I'll try and be as brief as I can.  I

23    think the issue has been fairly well briefed.  And some

24    general comments and then some specific comments.

25              I think it's ironic that we actually -- I actually

1 find myself here arguing essentially a 12(b)(6) motion

2 because from the beginning of this case, all we've tried to

3 do is plead.  All we've tried to do is answer the complaint.

4 　　　　　We actually did file a proposed answer, opted not

5 to challenge the settlement agreement.  We did -- we're not

6 going to challenge the complaint.  Let's get to the meat of

7 the issue.  That, unfortunately, has not been permitted for

8 the reasons the Court's aware of.  So here we are.

9 　　　　　Here now we actually have to face this complaint.

10 It's not a third bite at the apple.  This is a new issue.

11 The first -- the first couple of times we were here and say,

12 sorry we were late.  We've reconstituted.  We've gotten

13 organized.  Please let us plead because we think what they're

14 saying is not right.  We don't think they have viable -- you

15 know, we don't think their alter ego claims are correct.

16 　　　　　What's happened with this bite, so to speak, or

17 the only bite, is we're challenging the complaint because

18 that's where we're at.  In order to get a default judgment

19 under Second Circuit law, they have to plead viable claims

20 under Delaware law that these four entities are the alter ego

21 or equitability owned by this debt.  And they haven't done

22 that.

23 　　　　　And, you know, I mean, I think the reasoning is

24 pretty obvious because, understandably, they were sort of

25 rushed.  The Trustee was rushed because, look, oh my

1  goodness, there's this agency action going on.  We got to

2  stop this.  So they put together a complaint with allegations

3  and associations and affiliates and vague, you know, guilt by

4  vague association in order to throw enough facts up on the

5  wall to seek a preliminary injunction motion.

6          That's how you do that.  So this -- if all this

7  stuff is true, it could be a claim here so let's pause.

8  That's fine to get a preliminary injunction motion.  But

9  we're here with them now, they're at the default judgment

10  stage, and it backends with a 12(b)(6) motion.  This

11  complaint is insufficient to plead all three of their claims

12  or veil piercing against these entities.

13          And I mean, the best place, I think, to start is

14  sort of to -- and we'll do this in a second -- to juxtapose

15  the other cases where the Court has (indiscernible).  If you

16  look at this complaint, there are no allegations, no

17  allegations that this debtor had day to day control of these

18  entities.  None.  There are no allegations that this debtor

19  had direct control of finances of any of these entities.

20  None.

21          There are no allegations.  None.  And Trustee had

22  to -- had to admit this -- that somehow this debtor sourced

23  his funds, and to these entities had high access.

24  Drastically different from the other cases, HKUSA and Lamp

25  Capital.  So he had to admit that.

1          And that's -- so you examine this complaint and

2    you examine these parties, they're drastically different than

3    the other shell companies that the debtor may or may not have

4    used.  We're looking at this complaint, they don't state a

5    viable cause of action.

6          I mean, let's look at the huge differences between

7    this complaint and the HKUSA complaint, where we attach an

8    exhibit to our opposition.  And I think it's relevant to that

9    pretty quickly or pretty clearly.  All kinds of allegations

10   regarding control, you know, with HKUSA, none regarding the

11   HTHK direct control.  That's the bootstrap argument that

12   we'll talk about in a moment.  Direct control.  You know, and

13   the HKUSA, didn't file -- they alleged -- they alleged they

14   didn't a file corporate formalities.  None of that's alleged

15   here.

16         In fact, they actually plead that they're Delaware

17   corporations and this is how their owned, and the exhibits

18   they attach to their complaint, which for this court to be

19   considered talk about their business purpose and list all of

20   the creditors, all of the books, all of the finance of these

21   viably operating entities.  That wasn't the case in HKUSA or

22   even Lamp Capital.  You know, in the HKUSA case, they allege,

23   specifically, that this is a shell corporation of the debtor

24   used to hide assets.

25         I think that was the one where the -- where the

1    yacht got pocketed.  That's not here.  That's not what we

2    have here.  The, you know, the same -- I mean, the same with

3    Lamp Capital.

4              You know, they argue that the Lamp Capital was

5    formed by the debtor.  That's not alleged in this case.  They

6    allege that the Lamp Capital was created to hide the --

7    excuse me, the yacht and apartment.  That's not alleged in

8    this case.  They allege that there was shared ownership with

9    the debtor.

10             That's not alleged in this case.  They allege

11   there was no independent purpose of the Lamp Capital

12   entities.

13             THE COURT:  Well, what's your -- I'm sorry.  When

14   you said they alleged that there was shared what?

15             MR. SHABAN:  I believe it'd be Lamp Capital

16   complaint.  It was alleged that we -- they shared space with

17   the debtor (indiscernible).  And I'm -- if I'm wrong on that,

18   so that's -- I haven't read that complaint a long time ago.

19   My understanding is that complaint says, they share office

20   space with (indiscernible).

21             Here, what they say, they share office space with

22   each other and certain associates are affiliates of debtor,

23   but not the debtor itself.  So, again, it's this entire

24   bootstrap argument that just keeps coming back.  It's to form

25   the basis of this very complaint.  Lamp Capital.  There were

1    no corporate formalities.  That was alleged.  They don't

2    allege that here because they can't.

3          The only thread -- the only thread between those

4    cases and this case was the involvement of Ms. Wang, who this

5    Court has held was an employee.  Okay.  Fine.

6          Yes.  She was an employee.  There were -- there

7    were some common employees.  But the huge difference between

8    their alleged theory and the -- and the cases that we talked

9    about and these cases or this complaint is that there, the

10   debtor used his -- these shell entities to hide assets, hide

11   his assets, hide his property, hide his money, and used his

12   son or daughter to do it.  Here, we don't have that, but

13   that's not what's happening.

14         This complaint appropriately alleges that some of

15   the assets and a lot -- a lot of the assets here are from

16   either affiliates, alleged affiliates, whatever that means,

17   of this debtor and Chinese dissidents, which -- who are part

18   of the movement.  And this has been a common theme of what's

19   going on in this case.  Is, yeah, there's going to be

20   crossover between parties.  There's going to be crossover

21   between employees.  There's going to be crossover between

22   some creditors because, undeniably, all of these parties are

23   part of a broad, global, political movement.

24         It's not some big confidence scheme.  It's part of

25   a broad, political, global movement.  And just because some

Case 22-50073    Doc 3150    Filed 04/30/24    Entered 04/30/24 08:17:20    Page 34 of
186

1   of these HCHK entities operate a business to support that

2   movement doesn't ipso facto bootstrap from those entities,

3   which are viable Delaware entities, through Ms. Wang, who

4   there is no allegation that somehow she was controlled by

5   debtor or that she was hurt with his employee.  I don't think

6   that's enough under Delaware law.

7            And then back to a debtor who there's been no

8   allegations that he hid money, controlled them, you know,

9   collapsed them, and used them -- used them as part of a shell

10  game.  These entities were viable running entities.  They

11  have $29,800,000 to $30,000,000 worth of assets.  They had

12  creditors.  Yep.

13           Some of them correspond to others.  Well, it's

14  astonishing to me that this Trustee seems to think that just

15  because there's a commonality, business purpose, political

16  purpose, and some financial purpose, then that makes

17  everybody -- everybody's connected to the debtor.  The

18  Court's heard me use the metaphor before in my brief.  Just

19  because the band leader gets arrested, doesn't put the rest

20  of the band in jail.  It doesn't make the rest of the band

21  liable for the band leader's actions.  And that's what this

22  complaint is trying to do.  It doesn't allege the specificity

23  that has to be alleged under Delaware law.

24           Now in terms of, you know, the actual specificity,

25  I'll try and be quicker, Your Honor.  Again, no allegations

1  or single unit.  No allegations with joint funding.  No

2  allegations of inadequate capitalized.  But zero allegations

3  regarding HKUSA was all over.  No allegations that the funds

4  came from the debtor.  None.  Zero.  There's no allegations

5  that this debtor would fund these entities to hide them from

6  creditors.  The only allegations are this debtor was

7  associated with these affiliates, and that these affiliates

8  were Ms. Wang, and there were some donors that were part of

9  the movement, put some money in these entities.  That's a far

10  cry from what happened on HKUSA and what happened in Lamp

11  Capital.

12         They admit they had a corporate purpose through

13  their attachments.  That's our assertion.  They understand,

14  the Trustee says, well, we try to carve out.  They're kind of

15  cherry picking, it's fun, right?  They essentially, the ABC

16  action petitions, and they use what they want as evidence,

17  but then they cherry pick out what they don't want as

18  evidence.  I'm not quite sure that's appropriate, but the

19  Court to make that that determination.

20         They allege separate tax returns.  Like, they --

21  Markham LLP.  I think someone's here from there.  Yeah.  They

22  filed tax returns.  In fact, a couple of weeks ago, I had to

23  call Trustee's office in order to get tax information for

24  some of the employees of these HK entities (indiscernible) so

25  they could file their taxes.

1          These are operating businesses with employees,

2    with contracts, with leases, with property under management,

3    with assets, cameras, videos, all this stuff.  And yes, it

4    was part of the movement, but that is not an illegal purpose.

5    That was part of the movement.

6          They alleged creditors/donors from these Chinese

7    business.  That's huge.  My humble opinion.  That shows

8    exactly what we've been saying.  (indiscernible) debtor

9    hiding assets.  A lot of these funds came in from Chinese

10   business.  And, again, there's no allegations regarding

11   sources.

12         And so for the four entities, HKA (phonetic)

13   (indiscernible) BVI.  No -- actually, it's no allegations at

14   all.  In the reply, they try -- they try and say, well, we

15   just want to turn over -- turnover of assets, but they don't

16   file a legal authority.  Why would this BVI entity be

17   required to turn over assets when they haven't -- when

18   there's been no claims made against them?  They're thrown in

19   the mix.  I mean, they make this big dirty snowball.  G

20   Series, Holy City, Lamp Capital.  And then they try to pull

21   out snowflakes and say, aha, they can't do that.  This Holy -

22   - with the BVI entity, there's no allegations.

23         Their corporate existence is valid.  Their

24   corporate existence has actually been provided to the Court

25   in affidavits.  Their corporate existence can't be pierced

1    because they've made no allegations for piercing the parent

2    company.  They are the owners of the equity of the

3    subsidiaries.  So I don't know -- I don't know how they jump

4    over that hurdle.

5            But assuming that you even could jump over the

6    fact that this parent has not been -- it's essentially not

7    been sued, and it's been named in here.  But the parent

8    company has not been sued.  There's been no allegations to

9    pierce that corporate veil.

10           With respect to HCHK properties, again, no

11   allegations controlled by debtor, no allegations

12   (indiscernible) -- no allegations about the formalities

13   (indiscernible), no allegations regarding sourcing.  No

14   allegations regarding that the debtor had some of his

15   expenses paid.

16           In fact, they cite -- they say they cite that and

17   give you in a brief, but what they actually cite to,

18   Lexington, Lexington Properties.  So this is part of this

19   more part of this dirty snowball bundle complaint.  They pick

20   a bunch of random facts and some names and associations,

21   stick it all in a big pile, and say, aha, everybody's painted

22   with the same brush.  That's not Delaware law.

23           All four entities have viable corporate existence,

24   and there's a presumption of validity under Delaware law.

25   And this complaint does not vitiate or penetrate that

1   corporate existence.  And we can't do it by picking a fact

2   from this entity and a fact from this G Shares guy, and

3   somebody said something in another case.

4         Jam it in and say, well, you know, pox on all your

5   (indiscernible).  That's just not Delaware law.  It's not

6   Connecticut law.  Again, no sourcing property. No sourcing

7   from the debtor.  HCHK Tech.  Same thing.  No allegations

8   about debtor control.  No allegations about it being

9   undercapitalized.  No allegations about lack of formality.

10  No allegations regarding it being a facade.  No allegations

11  regarding debtor's money being placed there.  What they do

12  allege is debtor's associates place money there.

13        What does that do?  Associates.  I mean, it's -- I

14  think I used an example a couple of months ago when Jim and

15  Tammy Faye Baker fell from grace 15 years ago, not everyone

16  in the church was on the hook for their transgressions.  Not

17  everyone in the church was held liable for debts they

18  incurred.  Not everyone in the church was dragged before a

19  court and said, aha you got to get painted with the same

20  brush as these two.

21        That's what this Trustee is trying to do here.

22  Again, again, no allegations regarding sourcing.  HCHK Tech,

23  same thing.  No allegations regarding control,

24  undercapitalization, no allegations regarding bad

25  formalities, none.  Absolutely, practically the opposite.

1          Delaware corporation, just another owner.  The

2    only allegations regarding money being placed there is for

3    debtor's associates.  Well, one is -- one is the affiliates,

4    but one could use associates.  But, again, that's not the

5    standard.  That's not what happened at Lamp Capital.  That's

6    not what happened at HKUSA.

7          In those cases, the debtor took money, took a

8    boat, took an airplane, created a paper entity and tried to

9    hide it.  What you have here are viable entities that were

10   performing and performing operations in the name of the

11   movement, undeniable, and that they have employees,

12   contracts, real estate, equipment, and purpose.  And this

13   complaint does nothing to vitiate that.  It's the same

14   bootstrapping.

15         Well, the debtor employed Wang.  And Wang was part

16   of these entities, so ergo, you can jump over Wang and pierce

17   the corporate veil, you know, from the entities, you get back

18   to the debtor, without any allegations regarding Wang, other

19   than the fact that she was his employee.  There's no --

20   there's no alter ego allegations regarding Ms. Wang.  There's

21   no -- yes.  You say this was debtor's employee.  That's the

22   control argument.  But in terms of corporate formalities and

23   an actual business contract, there's nothing in there because

24   (indiscernible) it's not true.

25         It's interesting to see if and when all these

1  documents actually come to light that the Trustee mostly has

2  control.  You know, the Court's seen some of them.  We have a

3  lot of them hidden for or concealed for now.

4          They were contracts and entities and viable

5  businesses.  Common names.  Absolutely.  Common movement.

6  Absolutely.  And does that make everybody on the hook for the

7  debtor's stuff?  No.  It doesn't.  Lastly, HCHK, Lexington.

8  They're saying no allegations regarding control,

9  capitalization, formalities, (indiscernible), nothing there.

10  No allegations that the debtor sourced his money there to

11  hide it.  Plead that -- we do plead that there were, you

12  know, there were some assets there.  They had multiple bank

13  accounts, and then perhaps there was some bills paid.

14          And it's interesting.  And this -- and I'll try

15  and sum up here.  I mean, this is probably the most

16  disingenuous argument that they're making is, on the one

17  hand, HKUSA and/or Lamp Capital, debtor was using it to hide

18  his assets.  Debtor was using it to hide money and to hide it

19  from creditors.

20          Here, they're alleging bootstrapping that either

21  through Ms. Wang or through affiliates, these entities got

22  funds, not from the debtor, but from somewhere, creditors,

23  other businesses, contracts, and that it -- that somehow, at

24  least in the case of one of these entities -- I think it was

25  Lexington -- perhaps the debtor did have some of his expenses

1  paid.  I think it was paragraph 38 or 39 at the point lists a

2  whole bunch of expenses that were paid.

3          It was a driver, like, five law firm bills, all

4  this other stuff.  So the difference between hiding assets

5  and poaching money is drastic, drastic.  And here you have

6  HCHK entities that are operating viable businesses for the

7  purposes of the movement, among other things.  There was a

8  property management, everything else, but there was some

9  (indiscernible) for the purpose of the movement.

10          And here, you have the debtor hiding assets,

11  hiding planes, hiding boats.  This is an easy case.  This is

12  a hard case, and they haven't pled it sufficiently.  So, you

13  know, again, it's the complaint that controls here.  Not

14  innuendo, not -- I mean, they keep bringing up the engagement

15  letter.  Just --

16          THE COURT:  What about the allegations in the

17  complaint that the HCHK Tech made payments for the Lady May

18  and the jet?  How is that not an allegation that's

19  sufficient.  When you just talked about -- you just said that

20  the HKUSA and Lamp Capital and all they made claims.  They

21  used that.  Your words were they had -- they -- those

22  entities were created or controlled assets of the debtor to

23  hide them.  Isn't that what you just said?

24          MR. SHABAN:  Correct.  (indiscernible).

25          THE COURT:  So then -- so then the HCHK Technology

1  allegations in the complaint that say that payments were made

2  from the funds of HCHK Technology to pay the expenses of the

3  Lady May and the jet, how is that not related?  I don't

4  understand how you, with regard to that issue, how you can

5  say that that's not a plausible cause of action.

6          MR. SHABAN:  Well, I think --

7          THE COURT:  Considering that all the allegations

8  are deemed through at this point because the default

9  presented.

10          MR. SHABAN:  But the -- all pled -- pleaded

11  allegations are deemed true.  There are some allegations, but

12  I can't remember --

13          THE COURT:  Well, I didn't find that any of them

14  weren't well pled in the default.  Right?  I mean, no one's

15  asked me to make any findings that there was an allegation

16  that wasn't well pled.

17          MR. SHABAN:  That's right.  And that's -- and

18  that's (indiscernible).  That's the purpose of this.  That's

19  what -- why we are where we are.

20          THE COURT:  Well, it's not exactly the purpose.

21  The difference is you're saying it fails to save claim upon

22  which one can be granted.

23          MR. SHABAN:  Right.

24          THE COURT:  That's not saying it's not well pled.

25  There's a difference.  Right?  You're saying legally it

 1   doesn't plead a cause of action.  There's a difference in

 2   those two standards.

 3          MR. SHABAN:  I understand.

 4          THE COURT:  And so what I'm saying to you is when

 5   I'm looking at your argument, I'm looking at the allegations

 6   in the complaint.  Right?

 7          MR. SHABAN:  Correct.

 8          THE COURT:  That's what I need to look at, and I

 9   need to look at your response to those allegations.  And some

10   of your responses, you talk about exhibits versus the actual

11   language in the paragraphs of the complaint.

12          And while I completely understand that I can look

13   at the exhibits, I'm looking at the allegations in the

14   complaint.  Do they state a claim, a plausible claim upon

15   which relief can be granted?

16          And so I'm not going to ask you very many other

17   questions, but with regard to your statements about the Lady

18   May and the jet, and those two entities being created to hide

19   assets of the debtor, your words, then how is it not a

20   plausible claim that HCHK Tech is either an alter ego or

21   beneficial owner of assets of the debtor when the funds of

22   that entity were used to pay expenses of the Lady May and the

23   bombardier jet?

24          MR. SHABAN:  Well, with specifics -- I understand

25   the Court's question and comment regarding well pled versus

 1  viable cause of action.  And yes, there is a distinction, but
 2  -- and I understand that.
 3         With respect to HCHK Technologies, the Trustee
 4  pleads that the funds came from Chinese dissidents.  So it's
 5  paragraph 34.  The Trustee pleads it that the funds for this
 6  entity and their creditors were from Chinese dissidents as
 7  part of the movement.  That's in the -- that's in the
 8  allegation.
 9         So whether I -- and I think some of the some of
10  those might have been --
11         THE COURT:  It says in paragraph 33 through 38
12  that the HCHK entities were financed by the debtor.  That's
13  the allegation in those paragraphs.
14         MR. SHABAN:  Well, that's the argument.
15         THE COURT:  No.  That's all the allegations in the
16  complaint.  I mean, I can read them.  We can pull it up and
17  look at them.
18         MR. SHABAN:  Right.  But on the face of this
19  complaint, I don't think it's sufficient, and that's our
20  argument.
21         THE COURT:  That's fine.  That's fine.  I'm just
22  asking the question based upon -- with your statements.  I
23  understand that you don't agree, and that's absolutely fine.
24  I -- the question is based upon the statement you made about
25  HKUSA, and Lamp Capital.

1          MR. SHABAN:  Well, and it's sort of an indirect

2    way of answering the Court's question in a different way.  If

3    you look at the reply, the reply goes -- jump those

4    somersaults trying to repair the failed allegations of the

5    complaint.  You look at page 4 and page 6.  It makes all

6    these allegations regarding facade and a lack of corporate

7    purpose and the daily control.

8          All the stuff they were supposed to allege in the

9    complaint and didn't, they alleged it in the reply, cite

10   motion papers, and never cite the complaint.  And the reason

11   is, they didn't plead it in the complaint.  They did it in

12   this vague, blunderbuss way, mostly because they're trying to

13   get a preliminary injunction.  I get it.  Now it's the

14   (indiscernible).

15         If we have to do a complaint, if we got to -- this

16   complaint doesn't plead viable causes of action.  Delaware

17   law is very strict and very protective of their companies.

18   And the other -- the other cases, Lamp Capital, HKUSA, it was

19   it was simple.  Way more simple.  Here, you got employees,

20   contracts, property, leases, donors from over from China.

21   It's part of the movement.  All the stuff that we've been

22   saying, and not a single allegation, not a single allegation

23   that this debtor put his money in these entities.  Not one.

24         THE COURT:  I disagree with that statement.  What

25   you just -- that last statement that you just made.  At least

1   my reading of the paragraph in the complaint that says that

2   the HCHK -- it alleges that the HCHK entities are financed by

3   the debtor.

4           MR. SHABAN:  Through affiliates and associates.

5           THE COURT:  Says they're financed by the debtor.

6           MR. SHABAN:  Respectfully, I think the allegations

7   all the --

8           THE COURT:  The word "the debtor's" in there.  And

9   it --

10          MR. SHABAN:  Oh, it's in there.

11          THE COURT:  -- and it -- financed by the debtor.

12          MR. SHABAN:  Truthfully, I'm not sure there's a

13  single straight allegation.  I'll look.  But the body of the

14  complaint is if the debtor's affiliates, the debtor's

15  associates, the debtor's -- bootstrapped.

16          THE COURT:  The debtor's -- the debtor's -- acting

17  under the direction of the debtor.

18          MR. SHABAN:  Arguably, if -- that's their

19  argument.  But that's not their allegation.

20          THE COURT:  That's their allegation.  That's their

21  allegation.

22          MR. SHABAN:  Well, I -- respectfully, we think

23  that this is too far -- it's bootstrapped.  They can replead

24  this complaint and probably -- and probably meet the Delaware

25  standard.  I'm sure they could, given enough time, and I

1  think they should be required to because these allegations

2  don't jump a hurdle that appears in the corporate balance.

3            And lastly, I know we talked, the counsel, quick

4  trip to the in pari delicto Wagner issue.  And the Court has

5  ruled on it.

6            This case is different, we think, because of

7  bootstrapping.  I don't think that debtor's creditors, based

8  on these facts, working through either Wang or Chinese

9  dissidents or non-named affiliates, could go after HCHK, much

10  the same way as I don't think this debtor -- the debtor only

11  has -- I mean, the Trustee only has what the debtor had, or

12  the Trustee only has what the -- what the unnamed or the

13  general creditors have.  And based on these allegations, the

14  bootstrapping, it has -- it all goes through Wang.  It all

15  goes through unnamed affiliates.  It all goes through unnamed

16  associates.  Those are our legal terms.  Those are his words

17  in order to get to HCHK.

18            I think -- I think in pari delicto here is

19  applicable because if everything this Trustee is saying, if

20  we say -- if this -- if this debtor and everybody in HCHK is

21  trying to perpetrate a fraud, well, then it -- then we're

22  out.  That's what the document says.  That's exactly what the

23  document says.  Right?  So it does apply here for the reason

24  that we've said.  So, I've gone a lot longer than I expected

25  to.  I apologize.  If there's anything else, I'm here for the

1  Court.

2         THE COURT:  No, I'm sure I'm going to give Mr.

3  Bassett an opportunity to respond and then I'll give you a

4  final opportunity to respond.

5         MR. SHABAN:  Thank you, Your Honor.

6         THE COURT:  Okay.  Thank you.

7         MR. BASSETT:  Again, good afternoon.  Nick Bassett

8  from Paul Hastings on behalf of the Chapter 11 Trustee.  Your

9  Honor, counsel for the HCHK parties can say as loudly and as

10  many times as he wants that there are no allegations in the

11  complaint regarding control, funding by the debtor, et

12  cetera, but that does not make it true.  The complaint is

13  what controls.  The allegations of the complaint,

14  specifically, are what control.  The only issue before the

15  Court today is whether the allegations, taken as true, with

16  every inference drawn in the Trustee's favor, state a

17  plausible claim for relief under Delaware law.  And they

18  absolutely do.  It's not even a close call as to whether that

19  hurdle has been cleared.

20         Your Honor, counsel is very passionately asserting

21  his argument that this complaint is sufficient.  I get that.

22  But I think to understand how strongly his clients really

23  feel about that argument, you can look back at their motion

24  to vacate the entry of default under Rule 55(c).  A critical

25  component of that standard, which they bore the burden to

1  prove, was that they had meritorious defenses to the

2  complaint.

3       Other parties have been in that same situation.

4  Lamp Capital.  Lamp Capital tried to make that showing by

5  raising all of the 12(b)(6) arguments they could think of.

6  In pari delicto, Wagner, allegations of the complaint were

7  insufficient.  What did the HCHK parties do?  They didn't

8  even pretend to want to file a motion to dismiss.  The only

9  thing they said was, Your Honor, and counsel's repeated that

10  again here today.

11       Your Honor, these are viable entities.  And just

12  because they're part of the movement doesn't make them an

13  alter ego of the debtor.  Your Honor, that was what -- that

14  was what they elected to go with, a blanket denial of the

15  alter ego allegations supported by no evidence.  It can't be

16  considered here today.

17       But what it is telling about is that this 12(b)(6)

18  argument was nowhere to be found when they had to raise the

19  meritorious defense.  They raise it now as a last ditch

20  effort to try to avoid the entry of default judgment against

21  them after having time and time again, opportunity after

22  opportunity, to come to the Court, demonstrate why they

23  should be allowed to be heard notwithstanding their

24  extraordinarily and inexcusably dilatory behavior.  And they

25  haven't done it.

1            Your Honor, they've had the opportunity and they

2    failed.  Now all of the things that counsel has said that are

3    not in the complaint are in the complaint.  He says there are

4    no allegations of control.  That is categorically untrue on

5    the face of the complaint.

6            The complaint alleges all over the place that

7    Yvette Wang, the nominal owner of these entities, is the

8    debtor's lieutenant, his employee, the person who carries out

9    his bidding.  This is the same person who has been criminally

10   indicted alongside the debtor in the Southern District of New

11   York, alleged to be his lieutenant, his partner in crime, the

12   person who carried out his every wish, defrauding people of

13   over $1,000,000,000.  That's the Yvette Wang that we're

14   talking about.  The idea that that's not allegations of the

15   debtor's control is nonsensical.  Of course, it is.

16           That is concrete, strong evidence of the debtor's

17   control over these entities.  And it doesn't stop with Yvette

18   Wang.  We have Max Krasner, another individual whom the

19   debtor controls as alleged in the complaint and as discussed

20   and found by the Court in prior rulings in this case.  He was

21   also an employee of these entities.  Anthony Di Bautista,

22   same thing.  Your Honor, the complaint alleges that the

23   debtor himself exercised control through the people that he

24   directs.

25           Of course, he's not directing every alter ego

1   entity in his enterprise personally.  That wouldn't make any

2   sense.  He's doing it through people under his direction.

3   That's exactly what is alleged in the complaint.  Counsel

4   also said that there is no allegations of hiding assets.

5          Wrong.  And I didn't admit that there wasn't.  Of

6   course, there is.  That's exactly what he's using these

7   entities for.  All the cash that they hold, all the assets

8   that they have, those are entities that rightfully belong to

9   the debtor and rightfully belong to this estate.

10          He is using these entities to hide them.  That is

11  alleged in the complaint.  Counsel also said that there is no

12  allegation that these entities' sources of cash come from the

13  debtor.  Again, false.  Court walked through this.

14          The complaint directly alleges that the debtor

15  funded these entities through other sources of cash that he

16  controls.  The fact that he -- there's not allegations that

17  he himself wrote a check from his checkbook is irrelevant.

18  Of course, he didn't operate that way.  He operated through

19  layers of shell companies, and that's exactly what's alleged

20  in the complaint.

21          More specifically, as to Lexington, there are some

22  names of companies that this Court is very familiar with,

23  specifically alleged in the complaint, some of the entities

24  that funded Lexington, Golden Spring.  Court has already

25  found that Golden Spring is debtor's alter ego.

1          Saraca (phonetic), already found in the protest

2    litigation that Saraca is controlled by the debtor.

3    Leidenschein, there's an alter ego complaint pending against

4    Leidenschein.  ACA Capital, same thing, alter ego complaint

5    pending against ACA Capital.

6          As to the other two entities, there are also clear

7    and specific allegations in the complaint which are

8    buttressed by the other findings that this Court has already

9    made in the intervention litigation that they are funded by

10   the debtor.  Those allegations, that's all of the individuals

11   listed as the creditors of these entities, i.e., the people

12   that funded it, they are not, as counsel said, and this is

13   not alleged in the complaint, that they are funded by

14   unrelated dissidents.  That is absolutely not what is

15   alleged.

16         What is alleged is that the two HCHK entities were

17   funded by persons acting at the debtor's direction and under

18   his control.  These are the individuals who were represented

19   by, who are members of the "creditors committee", represented

20   by the creditors' representatives.  Court already found this

21   in the intervention litigation.

22         Those individuals are taking their direction from

23   the debtor's personal counsel, Mr. Yongbing Zhang, who has

24   filed multiple frivolous lawsuits for which he has been

25   sanctioned against both the Trustee, my law firm, against Mr.

1  Sarnoff and his firm and his clients.  That same counsel is

2  the one that counsel for the HCHK parties elected to redact

3  from the engagement letter that he filed with the Court so

4  the Court would not see that connection.

5        Your Honor, the allegations in the complaint of

6  the control of these entities by the debtor and their funding

7  is all over the place.  It's not even a close call.

8        Lastly, Your Honor, I just wanted -- counsel made

9  an argument regarding Holy City saying there's really nothing

10  in there about Holy City.  Your Honor, you've seen this

11  argument before.  Holy City is named in the complaint because

12  it is the entity that allegedly nominally owns the companies

13  in question, who are alleged to be the debtor's alter ego.

14  The Court has already dismissed that argument and should

15  dismiss it here.

16        Your Honor, unless you have any other questions, I

17  think that's all I have at the moment.

18        THE COURT:  I have nothing at the moment.  Thank

19  you.

20        MR. BASSETT:  Thank you.

21        MR. SHABAN:  May I be brief?

22        THE COURT:  Yes.

23        MR. SHABAN:  Thank you, Your Honor.  May I

24  approach?

25        THE COURT:  Please.

1          MR. SHABAN:  Keeps raising meritorious defenses.

2     That's not where we're at.  We're here under the controlling

3     authority of the Second Circuit, that in a motion for a

4     default judgment, you got to look at the complaint and see if

5     it's pled viable causes of action under applicable law.

6          It hasn't done it.  That's the argument.  And so

7     but bringing up old, essentially, irrelevant arguments about

8     Mr. Zhang or, you know, what happened on previous motions.

9     That's not what's before the Court.  It's this complaint,

10    these allegations.

11         And the reason this complaint or my supposition

12    that this complaint fails is, again, they were trying to --

13    they were trying to -- they were trying to just run the same

14    game plan that they did with HKUSA and Lamp Capital and some

15    of the other entities because that's what they had at their

16    disposal.  They had very little time to do it because they

17    had to stop the assignment.  They want to stop the assignment

18    actions.  Okay.

19         So they tried to -- they tried to jam the square

20    peg to a round hole, didn't have the allegations to fill the

21    hole, but they had an -- they had enough allegations to get a

22    preliminary injunction.  Now that we're looking at the

23    complaint, the gaps in their complaint are everywhere.  Just

24    because you say someone's affiliated, doesn't mean anything.

25    Just because you say someone's under the direction of someone

1  doesn't meet the standard under Delaware law.  Again, it's

2  bootstrapping.

3            It's the HCHK entities, which no one is denied

4  were viable entities operating for purposes mostly for

5  (indiscernible) and then supporting each other.  Then there's

6  Wang, and then there's allegedly debtor.  Well, she's on the

7  -- the bootstrapping through Wang and trying to get these

8  entities, which no other creditor or debtor himself could

9  have done.  And now they're trying to do it.  They're trying

10 to do it in the name of the Trustee.

11           It's different with -- with the other

12 (indiscernible).  One, two, three. Corporate, corporate,

13 corporate here.  There's -- there are people in between,

14 whether it be affiliates, whether it be investors, whether it

15 be Wang.

16           Look through the complaint, Your Honor.

17 Obviously, I regret the Court's going to have to reread this,

18 but there's a -- there's a lot of -- there's a lot of smoke.

19 But when it comes to the elements in the Delaware law,

20 there's not a lot of fire.  There's vague references, they're

21 not specific to meet the burden between viable causes of

22 action.

23           So, respectfully, we think they should replead.  I

24 mean, the Court has two options, strike the complaint, which

25 the Court is not going to do, or make them replead.  And

```
 1   respectively, we think that's what we're at.

 2              THE COURT:  Okay.  Thank you, Counsel.  All right.

 3   I will take the matter, the motion for default judgment under

 4   advisement, review your arguments made today.  And again, the

 5   pleadings submitted and the complaint and will rule

 6   accordingly.  So thank you.  That concludes the hearing on

 7   the motion for default judgment.

 8              I'm not sure, counsel, if you have to stay here

 9   for any of the mediation, but if you don't, you certainly are

10   not required to.

11              MR. SHABAN:  Thank you, Your Honor.  I may hang

12   out for a little bit, but sneak out at the perfect time.

13              THE COURT:  That's fine.  Thank you.  Then the

14   other matter on today's calendar is the motion for the order

15   modifying the avoidance action procedures.  And I will say I

16   have seen objections filed.  There were 11 objections.  One

17   was withdrawn today.  As a matter of fact, it's my

18   understanding earlier today.

19              And I would assume, Trustee Despins, you were

20   turning back with (indiscernible) you want to address where

21   things stand with regards to the mediation procedures and the

22   objections?  And then I will hear from any parties who have

23   filed an objection that wish to be heard.

24              MR. DESPINS:  Yes, Your Honor.  Mr. Bassett will

25   handle this one.  I think we filed an amended proposed order
```

1    Friday or Saturday?

2              MR. BASSETT:  Yes, Your Honor --

3              THE COURT:  A second amended proposed order, is

4    that what you're referring to?

5              MR. BASSETT:  That's right, Your Honor.

6              THE COURT:  Okay.

7              MR. BASSETT:  And if I may, I may address the

8    Court from counsel table?

9              THE COURT:  Certainly.

10             MR. BASSETT:  Thank you.  And I may very likely

11   have Attorney Linsey jump in when appropriate because he had

12   a lot of discussions with other parties leading up to the

13   submission of the proposed order, et cetera.

14             But just to walk the Court through kind of the

15   history very briefly.  So following the filing of the motion,

16   we had a status conference.  Following that status conference

17   on, I believe it was March 22nd, the Trustee filed an initial

18   revised proposed order of the mediation procedures.  The

19   Trustee then served that order in accordance with the

20   direction of the Court on all of the parties to the avoidance

21   action.

22             I can represent that that included every domestic

23   relocated defendant in I believe over 100 actions, does not

24   include the foreign located defendants who are still in the

25   process of being served.  But all told, when it comes to the

1 domestic defendants, I think we ended up serving the

2 mediation procedures on -- I think it's approximately 200, if

3 not more, defendants.

4        Of those parties who were served with the

5 mediation procedures, there were 12 objections, I believe,

6 filed by the deadline.  And in addition to those 12, there

7 were a few other parties who reached out informally to myself

8 or to Attorney Linsey to discuss some issues that they have

9 with the procedures.

10       We, thereafter, talked to both the objecting

11 parties and the other parties who reached out, both on the

12 phone and via email to see if some of their issues could be

13 resolved.  We did, in fact, end up addressing, I believe, at

14 least some of every objecting party or every other party who

15 came to their issues, not all of them.  As a result of those

16 efforts, we were able to, I believe, resolve at least one

17 objection in its entirety.  I believe that Lester Hill is the

18 party who I believe the objection was resolved.

19       And then, some of the other parties who have told

20 us that they may object ended up not objecting as a result of

21 us being able to accommodate some of their changes.

22       And so, Your Honor, at this time I won't walk you

23 through all of the issues that we changed in the revised

24 proposed order.  And by the way, this, for the record, was

25 submitted last Friday, the most recent revised proposed order

1    on April 19th.  And it's available on the main docket at ECF

2    3105.  We have the revised proposed order at Exhibit A and

3    then Exhibit B, I believe, is a red line showing changes to

4    the initial proposed order.  And I think Exhibit C is changes

5    to the revised proposed order, the prior revised proposed

6    order.

7           Some of the changes, just by way of example, that

8    we made Your Honor, and this came up in the last hearing, but

9    one of the issues that has been raised was that mediation

10   should only be mandatory for those parties that have actually

11   been served.

12          And for example, to the extent that defendants

13   located abroad have not been served, they would not be

14   subject to mandatory mediation in the first instance,

15   although procedures could be adopted for those adversary

16   proceedings after the parties have been served.  That is now

17   addressed specifically in the order.

18          There were some comments raised around what

19   happens in the event of conflict that the mediator -- that

20   mediators and the panel might have.  We would address those

21   comments by revising and sort of strengthening, if you will,

22   that language and they had said if a mediator identified a

23   potential conflict of interest that mediator may recuse him

24   or herself.  That language is now shall.

25          We have extended certain deadlines, including

1 │ deadlines to reply to any motion -- to reply in support of

2 │ any motion to dismiss that is filed.  Parties asked for a

3 │ little more time, we granted that.

4 │        Some parties have raised an issue that came up

5 │ with last hearing concerning the consequences of failing to

6 │ participate in the mediation process in good faith.  There's

7 │ paragraph in the mediation procedures that talks about what

8 │ remedies and sanctions may be available to the Court.

9 │        Some parties were concerned about running afoul of

10 │ that provision if they simply, despite their best efforts,

11 │ were not able to reach a settlement.  We tried to give them

12 │ comfort that, of course, we're not seeking to do that.  So we

13 │ added some language to the order that basically says, failure

14 │ to reach a settlement in and of itself will, of course, not

15 │ be grounds for any sanctions.

16 │        Another comment that some parties raised were with

17 │ regard to the provision of the mediation procedures that

18 │ addresses the ability of Judge Tancredi to provide

19 │ recommendations to this Court as to how certain adversary

20 │ hearings might be stayed while some of them should go forward

21 │ etcetera to try to help facilitate the orderly litigation of

22 │ these matters that they have to be litigated.

23 │        Some parties wanted to be heard on that.  So we

24 │ built in a period in which after Judge Tancredi makes such a

25 │ recommendation, they could respond.

1          So those are the -- those are the main types of in

2    the summary of some of the main types of issues that we

3    resolved.  I'm not sure exactly how many issues are

4    outstanding.  I think it's maybe close to 10, maybe a dozen.

5          But rather than try to anticipate all of those, I

6    think it may make sense for the Court to hear from the

7    objecting parties, and then I can respond accordingly.

8          THE COURT:  Yes.  I have a few questions first,

9    but I think that's fine.  I'm looking at the document that

10   you talked about that you just mentioned on the record.  TCF

11   3105.  And I had a few questions about it.

12         When we get to Page 3, I'm looking at a red line

13   version that starts on Page 37 of the document.  I thought

14   that was the one that I should look at when I looked at the

15   entire document, but I don't know if that's correct.  It

16   seemed to me to be the one that had the changes that you just

17   referred to on the record.

18         MR. BASSETT:  That is correct.  I believe this

19   would be the red line that shows -- this would be the red

20   line that shows all changes to the original version of the

21   order that we filed with our motion.

22         THE COURT:  Okay.  So then I -- so the second red

23   line it captures everything that you've talked about with the

24   objecting party?

25         MR. BASSETT:  That's correct.  Both versions

1  capture all of the changes, but the second red line being at

2  page 67 of 96 would show and track changes only the changes

3  that have been made to the order that we served on the

4  parties after talking to them.

5          THE COURT:  So which of those two orders are you

6  thinking that the Court would enter?  Am I looking at --

7          MR. BASSETT:  Oh, no.  There's a -- I apologize,

8  Your Honor.  Just to be very clear, they're the same order,

9  what we did for the benefit of the parties and the Court is

10 provide two different versions of the red line.  So if you

11 want to look at just the clean version of the order that

12 we're asking the Court to enter, that would actually be the

13 one that's at Exhibit A, because that's just the clean

14 version showing no changes of the revised proposed order.

15 The next two showed different comparisons of the current

16 order to past orders.

17         THE COURT:  Okay.

18         MR. BASSETT:  And that's at page 7 of 96.  I'm

19 happy to look at anything.

20         THE COURT:  Page 7?

21         MR. BASSETT:  Yes, Your Honor.  Yes, Your Honor.

22         THE COURT:  Okay.

23         MR. BASSETT:  But the content (indiscernible).

24         THE COURT:  All right.  Give me a moment then, if

25 you would please.

1          So I'm looking at what I believe you just

2    indicated, Attorney Bassett, is a clean version of the second

3    revised proposed amended order approving procedures

4    applicable to avoidance claim adversary proceedings, which

5    starts on page 6 of 96.

6          MR. BASSETT:  That's correct, Your Honor.  I

7    misspoke.  6 of 96.

8          THE COURT:  That's okay.  I want to make sure I'm

9    at the right place in this order.  So give me a moment,

10   please.  Okay.  So when we start with paragraph E on Page 8

11   of 96, talking about any avoidance defendants time to respond

12   to a complaint shall be 60 days from the date of service

13   provided, however, without further order of the Court, the

14   Trustee and any avoidance defendant may stipulate to further

15   extend the defendant's response up to 90 additional days.

16         So I think I've seen in the last week some of

17   those stipulations be filed.  When I say some of those to be

18   better accurate for the record, meaning the Trustee's already

19   agreed to further extend response dates in certain adversary

20   proceedings.  Correct?

21         MR. BASSETT:  That's correct.

22         THE COURT:  For at least 90 days.  Okay.  So what

23   I'm trying to figure out, and maybe you've already done this,

24   I see a date of May 14th or 15th in this order, which would -

25   - could be a trigger for matters to go into mediation.  But

1   it wouldn't be with regard to those matters that you've

2   already agreed -- or would it be with regard to the matters

3   you've already agreed to extend the time out to answer or

4   otherwise respond to the complaint?

5           MR. BASSETT:  So Attorney Linsey can maybe help me

6   if I get something wrong, the correct paragraph reference,

7   but I believe the way that it works that's put on the

8   procedures, Your Honor, is that the submission mediation,

9   that that process is triggered by whatever date it is that

10  the particular defendant's answer or response is to.

11          THE COURT:  Right.  So what I'm saying to you is,

12  I believe that in the last week or two, I've seen several

13  adversaries proceed -- I don't know how many.  I can't tell

14  you.  I didn't count.

15          But I would say 20, let's just pick a number,

16  where the Trustee has stipulated to extend the defendant's

17  response date for an additional 90 days.  They don't need a

18  Court order and that's fine.  That's completely fine.  What

19  I'm asking is, let's presume those 20 are -- I'm speaking of

20  20 adversary proceedings out of 275 or whatever -- that the

21  90-day period won't -- will not have run by May 14th or 15th,

22  whichever the date is.  And I apologize.  I'll find it in a

23  second.

24          For those being put aside for now, the attorney's

25  asked -- why I'm asking the question and I'm probably not

1   asking it very well.  The last hearing we talked about timing

2   and how many adversary proceedings were going to go to Judge

3   Tancredi at what point in time and were they're going to be

4   what essentially is a rolling amount of adversary proceedings

5   over a period of time.

6           And so I viewed that 90 days in stipulations that

7   have been filed in certain adversary proceedings as basically

8   those wouldn't be in the first bucket of adversary

9   proceedings turned over to Judge Tancredi.  I could be wrong

10  about that.  That's why I'm asking the question.

11          MR. BASSETT:  Well, I believe this is paragraph 2

12  J, of the procedures that the way it would work in that

13  situation is that they would not go to Judge Tancredi until

14  after the answer deadline.  So it would be sequenced in that

15  way.

16          THE COURT:  And that's what I'm trying to come --

17          (Background conversation)

18          THE COURT:  You're triggering them off the

19  appearance date or the response date?

20          (Background conversation)

21          MR. BASSETT:  Your Honor, let us confer on that.

22          THE COURT:  I think you might be triggering it off

23  from the appearance date versus the response date.  And I

24  think that may have occurred because of discussions during

25  the last hearing where someone said, well, what about if I

1  already filed a response?  Something along those lines.

2          MR. BASSETT:  Understood.  I guess what I was

3  envisioning, Your Honor, is a scenario where the Trustee has

4  informed the Court of an extension of an answer deadline, but

5  the defendant to that adversary proceeding has not yet

6  appeared.  And then would not

7          THE COURT:  Okay.  That's different.  That's a

8  different category.  Right?

9          MR. BASSETT:  In that case, it's triggered by the

10  appearance.  That's correct, Your Honor.

11          THE COURT:  Okay.

12          MR. BASSETT:  And in response to your question, I

13  was envisioning a scenario where the appearance would not be

14  until the 90-day deadline.

15          THE COURT:  Right.  So I'm saying there's several

16  categories.  That's my point.  Right?  And so I'm trying

17  again to figure out if to the extent possible -- and I mean,

18  of course, it's possible.  I just don't know how specific we

19  can be -- you can be with this procedure, how many of these

20  cases are going to Judge Tancredi initially?  I'm just trying

21  to figure that out.

22          I don't think that -- it doesn't have to be etched

23  in stone, but I think Judge Tancredi needs to have some kind

24  of idea.  Right?  Are we talking that on May 15th or 14th --

25  I think it's the 15th.  I keep saying 14th.  I don't know

1   what they are.  I'll find it in the order.  Are we -- are we

2   saying to Judge Tancredi here, here's 200 adversary

3   proceedings?

4           Or are we saying it's May 15th according to the

5   order?  Or are we saying, here, Judge Tancredi, here's 40?  I

6   don't know.  I don't know what we're saying.  And that's what

7   I want to understand.  I don't -- I'm not anticipating that

8   either will necessarily present a problem, but I think we

9   need to know.  That's all I'm saying.

10          MR. BASSETT:  Understood, Your Honor.  And the one

11  point I would make or a thought that occurs to me is that, as

12  we have discussed in the past, what we envision happening

13  with these mediation procedures, given the sheer number of

14  defendants and the commonality of issues across all these

15  adversary proceedings and some are like legal issues the

16  parties will be raising will be virtually identical.  Right?

17          So as we've discussed in the past, subject to

18  discussing with Judge Tancredi, we think it would make a lot

19  of sense to try to, you know, bucket and mediate groups of

20  issues or groups of adversary proceedings together, which

21  also will save costs for the estate and for all the

22  defendants involved.

23          And to that end, you know, I think the process and

24  division was something would all go to mediation at roughly

25  the same time to enable that kind of grouping or bucketing to

1  occur.

2          However, we are open to in our -- as the Court is

3  aware from the stipulations being filed, you know, giving

4  people additional time to answer, and it may not be that

5  everything is on the same track.

6          THE COURT:  So are you expecting Judge Tancredi to

7  determine that with -- and is that what you're asking?

8          MR. BASSETT:  That's exactly correct, Your Honor.

9          THE COURT:  Okay.  All right.  That's number one.

10  Number two, in page -- on page 8, that paragraph E again,

11  then you have sub paragraphs 1, 2.  You're talking about

12  stayed avoidance claims and partially stayed avoidance claims

13  and stayed designation notices.

14          That -- the notice issue is fine.  I mean, that's

15  just filing something in an adversary that's going to stay

16  whether or not it's fully stayed or partially stayed.  And as

17  to whom, if it's partially stayed.  Okay?

18          But what my question was is -- the way I read it,

19  and again, I could be wrong, is that the fully stayed claims

20  and the partially stayed claims are somewhat impacted by an

21  order that already stays certain adversary proceedings

22  because it relates to the debtor, and it's the debtor's

23  entities or employees and what you will assert are related to

24  the debtor.

25          And so my point of that question is, does that --

```
1   and you're not going to be able to answer this, I don't
2   think, at the moment, but I'm going to ask you to think about
3   it.  Does that order, the order that already stayed some of
4   these adversary proceedings, pending the disposition of the
5   criminal proceeding.
6              MR. BASSETT:  Right.
7              THE COURT:  They -- you know, made part of this
8   order.
9              MR. BASSETT:  So I don't think it does, Your
10  Honor, because that order -- and I apologize I don't have the
11  ETF reference handy.
12             THE COURT:  3038.
13             MR. BASSETT:  Okay.  That order, Your Honor,
14  relates to and stays the two adversary proceedings.  The
15  omnibus alter ego adversary proceeding as we referred to,
16  which is the adversary proceeding in which is the debtor is
17  seeking of declaration that a number of different entities
18  are the debtor's alter ego.
19             And then it also stays the civil RICO litigation
20  in which the --
21             THE COURT:  But it has the carve out too.
22  Remember that carve out.
23             MR. BASSETT:  (indiscernible) legacy.  That's
24  correct, Your Honor.  The avoidance action adversary
25  proceedings, which are the center for this procedures order,
```

1  are not themselves directly part of that stay order.

2          What 3-A -- and I'll describe the categories here.

3  Exhibit 3-A and 3-B and there's also an Exhibit 4, but

4  Exhibit 3-A, which consists of the stayed avoidance claims

5  under this procedures order, is comprised of all of those

6  avoidance actions in which the Trustee is alleging a transfer

7  by one of the defendants in the omnibus alter ego complaint.

8  In other words, the allegation in that avoidance action would

9  be that one of the alleged alter egos of the debtor was the

10 party that nominally made the transfer to the defendant.

11         And an issue that was raised before and which we

12 have addressed through Exhibit 3-A is that those adversary

13 proceedings should not really proceed from litigation until

14 just out of good order and efficiency until the omnibus alter

15 ego adversary proceeding as against the alter ego entity at

16 issue in that complaint has been completed.

17         THE COURT:  So it is related.

18         (Overlapping voices)

19         MR. BASSETT:  Exactly, Your Honor.

20         THE COURT:  It is related to the prior stay order.

21         MR. BASSETT:  Exactly.  It is -- it is -- it is

22 very much related, Your Honor, because it, again, it involved

23 -- those avoidance actions involved entities that are

24 defendants in the omnibus author ego action which are stayed

25 by the other order.  But without this language and this

1  order, these avoidance actions would not themselves be

2  stayed.

3           THE COURT:  Right.  So all I'm saying is maybe you

4  need to make a reference in that paragraph about the prior

5  order, right, and the connection between the two.  Because I

6  didn't add them up.  I did not do the math, but it looks to

7  me like you could be talking about 70 adversary proceedings

8  out of the 270.  Right?  I mean, there's three or four pages

9  on Exhibit 3-A.

10          MR. BASSETT:  Understood.

11          THE COURT:  Right?  I don't know how many there

12  are.  I didn't add them up, but there's a lot.

13          MR. BASSETT:  You can certainly reference the

14  other --

15          THE COURT:  I also understand actually, though,

16  because I had to look at it.  I didn't pick up on it at

17  first.  I think that there are some instances, at least I

18  thought there were, yes, where the adversary proceeding is

19  listed, the number is listed more than once because you make

20  sure it applies to each defendant.  Was that the purpose of

21  that?  For example, there's an adversary proceeding 24-05248,

22  and that appears seven times, but each line item has a

23  different defendant's name.

24          MR. BASSETT:  That's correct, Your Honor.  And

25  another reason for that is that the stay that we are

1  proposing is claim-specific rather than adversary proceeding-
2  specific.

3          THE COURT:  Okay.

4          MR. BASSETT:  And that's where -- that's where
5  Exhibit 3-B comes in because some of these employment
6  complaints involve claims by -- sorry, involve allegations by
7  the Trustee that entities the debtor has already been
8  established as owning and controlling are the ones that
9  nominally made the transfer to the defendant.  So for
10  example, Golden Spring is an entity that's already been
11  adjudged to be the debtor's alter ego.

12          To the extent that the debtor is alleging that --
13  or sorry the Trustee is alleging that Golden Spring made a
14  transfer to a particular avoidance action defendant, the same
15  logic of staying that claim does not apply as it does to the
16  other ones that involve entities at issue in the omnibus
17  alter ego complaint, because there already has been the
18  predicate alter ego finding as to the transferee entity or
19  the transferor entity rather.  So those would not be stayed.

20          THE COURT:  Although, they may be partially
21  stayed.

22          MR. BASSETT:  Those claims would not be stayed.
23  Meaning that an adversary proceeding that contains
24  allegations of transfers from other omnibus alter ego
25  entities, those adversary proceedings can only be partially

1    stated.

2              THE COURT:  And those partially stayed claims in

3    those adversary proceedings, the other claims will proceed to

4    mediation?

5              MR. BASSETT:  Unless they are listed on Exhibit 4,

6    Your Honor.

7              THE COURT:  Okay.  Again, I didn't make an

8    analysis of a cross reference or anything.  That's what I

9    think you need to do.  Right?  I mean, so Exhibit 4 is --

10             MR. BASSETT:  Exhibit 4 is a list of those

11   entities or those defendants, rather, which will not be

12   subject to automatic mediation unless there is an order,

13   agreement, or order in the Court.

14             THE COURT:  They're just defendants.

15             MR. BASSETT:  They're just defendants.

16             THE COURT:  They're not -- it doesn't mean the

17   whole adversary proceeding is stayed.  And the whole

18   adversary proceeding isn't subject to maybe -- excuse me.

19   That's not accurate.

20             It can mean that there could be an adversary

21   proceeding in which one of these parties on Exhibit 4 is a

22   defendant, but that that other defendants, that adversary

23   proceeding could proceed forward and could be subject to

24   mediation?

25             MR. BASSETT:  That's correct, Your Honor.  And

1    some of the individuals listed on Exhibit 4 may be involved

2    in adversary proceedings that are entirely stayed.

3              THE COURT:  Right.

4              MR. BASSETT:  Because of their involvement on the

5    alter ego.  But then some of the entities on Exhibit 4 may be

6    in an adversary proceeding that's not stayed at all because

7    none of it involves the omnibus alter ego or another party

8    that's subject to mediation.

9              THE COURT:  Right.  But we see why I'm asking the

10   questions.  I just want to make sure I understand.  So if

11   Judge Tancredi says to me, which he's not going to say

12   anything to me about substance.  But if he said something,

13   asked me a question about a procedure, I want to be able to

14   say, well, this is what I believe was said.

15             You're going to order a transcript anyway and give

16   it to him hopefully, right?  Because I just wanted him to

17   understand what your process is.  Okay?  And I think I

18   understand it.  I've gone through it, but there is the

19   different -- there's an overlap in certain places and then

20   there isn't an overlap in certain places.

21             So it needs to be clear.  And I mean, I think it

22   is, but that's why I asked you the question.  Okay?  And I do

23   think that the Exhibit 3-A list is conditioned upon or is

24   related to the prior stay order of the RICO and the omnibus

25   alter ego adversary proceeding.  Those are already fixed.

1           MR. BASSETT:  That's right.  And we're happy to

2    add an appropriate reference to that provision.

3           THE COURT:  Okay.

4           MR. BASSETT:  (indiscernible).

5           THE COURT:  All right.  Well, let me see.  I had a

6    few other questions.  That was the biggest question was I

7    wanted to understand that process.  Okay?  Then, there are a

8    few other things that I think the objecting parties, certain

9    objecting parties have raised, and I'll hear from the parties

10   about them, but I want to point them out to you first.

11          So my understanding of the mediation panel,

12   Attorney Bassett, and I could be wrong again, is there may

13   not be one.  But there may be one if that's what Judge

14   Tancredi thinks is appropriate.  Okay?  That's what -- is

15   that what you're asserting or that's what your procedures

16   provide.  Correct?

17          MR. BASSETT:  That's correct, Your Honor.  There

18   will not necessarily be a mediation panel.

19          THE COURT:  Okay.  Now, with regard to the issue

20   of the mediation panel, I think there is -- I will hear from

21   the objecting party.  I mean, I think -- I'm not sure if

22   either Judge Tancredi determines that panel or the parties

23   determine that panel.  I don't think the Trustee can

24   determine that panel in consultation with Judge Tancredi.  At

25   least --

1           MR. BASSETT:  So I think the way we meant to draft

2    it in paragraph 2-K of the order --

3           THE COURT:  That's what I'm looking at.

4           MR. BASSETT:  -- is to say that the Trustee would

5    consult with Judge Tancredi concerning the potential use of

6    the mediation panel.  But ultimately, the appointment of any

7    other mediators to that mediation panel would be subject to

8    the approval of the Court.  That would not happen until Your

9    Honor --

10          THE COURT:  Right.  But what happens if the

11   defendant objects?  Because that's what I'm trying to

12   determine, what's the process?

13          MR. BASSETT:  So any defendant would have the

14   opportunity to respond to any proposed mediation panel.  And

15   to the extent that they have objections, they would be heard

16   by the Court (indiscernible).

17          THE COURT:  It doesn't quite say that, but that's

18   what I think is required.

19          MR. BASSETT:  Okay.  Sure.  We will make that

20   clear, Your Honor.

21          THE COURT:  Okay.  The next paragraph, I would

22   like you to say within 14 days of any mediation referral or

23   other date that is subject to the availability of Judge

24   Tancredi.  Right?  Because I don't know what his schedule is.

25   I don't know if he's going to be ready within 14 days of a

1   mediation referral.

2        I mean, it very well maybe, but I don't want an

3   order boxing him in to that.  Okay?  You see where I am in L?

4        MR. BASSETT:  I do, I do, Your Honor.  I think

5   what we intended with that provision was just to say that

6   within 14 days of the referral.

7        THE COURT:  I understand.

8        MR. BASSETT:  A letter --

9        THE COURT:  Submit a letter.  I understand.  But

10  other days start clicking after that letter gets submitted.

11  All I'm suggesting is --

12        MR. BASSETT:  Oh understood, Your Honor.

13  Understood.

14        THE COURT:  Okay.  I just want there to be an

15  acknowledgment that 14 days shouldn't necessarily start the

16  clock if Judge Tancredi is not ready.

17        MR. BASSETT:  Understood, Your Honor.

18        THE COURT:  Okay.  The letter that you want to

19  send to the courtroom deputy, we have you know how, Attorney

20  Bassett, we have the generic courtroom deputy email box?

21  That's the same thing you're going to use in Hartford.

22  You're going to use that that email box.  Okay?

23        MR. BASSETT:  Okay.

24        THE COURT:  And then, obviously, it doesn't need

25  to say this.  I'm not asking you to change the order.  But

1    when that letter is submitted by you or anyone on behalf of

2    the Trustee, then it has to be cc'd to the defendant in that

3    adversary proceeding.  So there's no allegations of any ex

4    parte communications or anything, even though Judge Tancredi

5    will be acting as a mediator.  I want to make sure that

6    everybody understands that ground rule as well, Okay?

7            MR. BASSETT:  Understood.  And we're talking about

8    the --

9            THE COURT:  The letter.

10           MR. BASSETT:  -- the submission of the letter.

11           THE COURT:  Right.  Just the -- I just -- I just

12   want to, you know, we just want to make sure that the record

13   is clear and that everyone is on notice upon submission of

14   that letter.

15           MR. BASSETT:  Understood.

16           THE COURT:  Okay?  So let's turn, if you would, to

17   M, please.  This is when an avoidance defendant believes that

18   the claims against it should not be subject to mediation.  So

19   the only question I have on that is not with regard to the

20   defendants that haven't been served yet, Attorney Bassett,

21   because I understand what you're saying about that.

22           You know, we'll deal with that when they're

23   served, but within 14 days of the mediation referral.  So,

24   again, the mediation referral is that letter.  Correct?

25           MR. BASSETT:  Correct, Your Honor.

1           THE COURT:  Okay.  And that letter is -- you're

2    going to be -- well, let me ask you this question, actually.

3    It's not necessarily clear.  So what happens if the defendant

4    doesn't have a lawyer, but they've been communicating with

5    you, which I assume some have, right?  So how are they going

6    to be served with that mediation referral?

7           I just want -- I don't want to have somebody come

8    in and say, we didn't have 14 days.  We didn't get served.

9    You know?  So if I file my motion on the 21st day after you

10   referred to mediation, I don't want to -- I don't want to

11   have an argument about whether or not it was timely or not.

12   Okay?  That's the point that I'm raising.

13          MR. BASSETT:  Okay.

14          THE COURT:  Meaning, if you have a lawyer, then

15   they -- and you -- and they're agreeing, obviously, to the

16   submission of the letter and they can be served, that's one

17   thing.  But you've got to think about parties who don't have

18   a lawyer.  If they consent and agree to accept whatever

19   you're giving them as service through an email address,

20   that's fine.

21          But I think you need to get that.  I'm not saying

22   it needs to be in this order, Attorney Bassett.  I'm just

23   telling you, I don't want to -- I hope to not have any

24   hearings on whether or not that motion is timely filed if

25   somebody believes that they shouldn't be subject to

1   mediation.  Okay?

2             MR. BASSETT:  Understood, Your Honor.  Thank you.

3             THE COURT:  And as the next paragraph, the only

4   thing -- you said before and I -- the word that they would --

5   the mediator, if there was a conflict, would -- maybe you

6   already changed the language.  No.  The third line of them, I

7   wouldn't say shall abstain, I would just say shall refuse or

8   not act.  I -- just abstain has a meaning that I don't really

9   want to get into either.  Okay.  Just change that word,

10  please.  Thank you.

11            MR. BASSETT:  Got it.  Thank you.

12            THE COURT:  We're going to have to address the

13  fees and costs of the mediator when we talk about objecting

14  parties, but U, paragraph U, talked about the fees and costs

15  of the mediator.  So you'll have to -- it appears that issue

16  has not been resolved.  So that's something we'll have to

17  address.

18            MR. BASSETT:  That's correct, Your Honor.

19            THE COURT:  X, again, the only issue with X in my

20  opinion is if the defendant doesn't have a lawyer, how does

21  that 30 days begin to run for them?  You know, how do you --

22  how do you serve them?  Right?  If there's a report that's

23  filed that says it wasn't a full settlement and then they

24  only have 30 days to respond to the complaint, just figure

25  out a mechanism so that we don't have to address that as

1   well, please?

2          MR. BASSETT:  Understood.

3          THE COURT:  Okay.  I think that was -- those were

4   my major concerns other than I'm going to hear from the

5   objecting parties, and we'll address those issues.  But do

6   you have any questions about my questions?

7          MR. BASSETT:  I don't think so, Your Honor.

8          THE COURT:  Okay.

9          MR. BASSETT:  Thank you very much.

10         THE COURT:  All right.  Thank you.  So we have

11  objections filed by several parties.  And if we just take

12  them in order of when they were filed, but I think the first

13  two are the objections of Art Wolf, Inc.  And Anthem Health

14  Choice Assurance, Inc.  By Attorney Signor, please proceed.

15         MS. SIGNOR:  Thank you, Your Honor.  Again,

16  Jessica Signor from Shipman & Goodwin, for Art Wolf, Inc.

17  And then the Empire Blue Cross Blue Shield, which is the DBA

18  of one of the defendants.  I will spare Your Honor all of the

19  formerly known as and currently known as names, and then

20  Anthem Health Plans Inc.  Thank you, Your Honor, for hearing

21  us.

22         Our objections were largely the same for the three

23  defendants.  So I'll address them en masse, if that's okay

24  with the Court.

25         THE COURT:  That's fine.  Go right ahead.

1            MS. SIGNOR:  Your Honor, similar to other

2    avoidance defendants, our clients have been subjected to

3    litigation, receiving transfers, in the ordinary course from

4    entities that the Trustee says are alter egos.

5            Putting aside those issues for the moment and the

6    fact that our clients do not object to mediation and

7    proceeding with a mediation, our limited objections for each

8    of the avoidance defendants are largely the same and focus on

9    three points.

10            The first is that the mediator fee is to be split

11    equally between the Trustee and each of the avoidance

12    defendants.  The second point is that there is required in-

13    person attendance by an avoidance defendant representative

14    and counsel.  And the third is the note regarding resolutions

15    of mediation in and of itself (indiscernible), Your Honor.

16            The third point, the Trustee's counsel indicated

17    they have included language that I believe resolved that,

18    less of an objection and more of a point that we wanted made.

19    But we think that that's been resolved in the second amended

20    order.

21            THE COURT:  Are you -- I think you're referring

22    to, and I'll ask Attorney Bassett.  I should have asked you

23    when you said that Attorney Bassett, previously, but I think

24    the one that you're referring to is in V?

25            MR. BASSETT:  That's correct.

1          THE COURT:  Failure to achieve settlement alone

2    cannot constitute grounds for finding of bad faith or the

3    imposition of sanctions?

4          MR. BASSETT:  That's correct.  Last sentence of V,

5    as in Victor.

6          THE COURT:  Okay.  So then that takes care of one

7    of the grounds for objecting, Attorney Signor, on behalf of

8    your clients.  Is that correct?

9          MS. SIGNOR:  Yes.  That is correct, Your Honor.

10          THE COURT:  Okay.  Great.  Go right ahead then,

11    please.

12          MS. SIGNOR:  With regard to point 2, that's the

13    in-person requirement for attendance of an avoidance

14    defendant representative.  This requirement, Your Honor,

15    requires clients who in the case, just by way of example, of

16    Art Wolf requires cross country plane fare, lodging, the time

17    cost of money that these individuals will be out.

18          And Your Honor, it's easily resolved in today's

19    day and age to have these avoidance defendant's

20    representatives appear telephonically or remotely or through

21    video conferencing.  Our clients have no objections to

22    counsel being required to be present, and that is completely

23    doable.  It's with regard to the avoidance defendant's

24    representative, to try and avoid those costs, that we think

25    should be a part of the mediation procedure order.

1          Your Honor, turning to our first point, which is
2    in regard to cost splitting of the mediator fee.  The way
3    it's currently set up in the motion is that it would be split
4    equally between the Trustee and each avoidance defendant.
5    That being said, the motion does not have any sort of a fee
6    cap.  There's no sense of a mediator's hourly rate.  If they
7    were to, we did have a mediator.

8          And that although there is a provision in the
9    mediation order that an avoidance defendant can make a
10   hardship showing, the very act of having to make that
11   hardship showing and make that motion with the Court will
12   only incur additional fees for these avoidant defendants.

13         Our objection has cited to four cases throughout
14   the country where there have been these omnibus avoidance
15   action, where the Court requires the plaintiff bringing those
16   actions to bear the full cost of the mediation.  I understand
17   that the Trustee's motion cited to six different cases.  Five
18   of those, I think, are fairly easily distinguished.

19         For those cases, if you look at the Court's
20   orders, they require caution on a fixed predictable schedule.
21   That's not what we have here.  There's just a straight split
22   between both parties.  One of the other cases was cited had
23   the Trustee (indiscernible) the mediator's fees for all
24   adversaries proceedings weather it's seeking $20,000,000 or
25   less.

1          And anything over $20 million would be by "order".

2    Again, there's sort of a predictable nature to what those

3    fees would be.  And I believe that the Trustee cited one case

4    that just required sort of a straight split, which seems to

5    be what they're suggesting here.

6          At base, Your Honor, suing the party to receive

7    these transfers in the ordinary course, speaking to them,

8    stay a litigation against them to compel mediation and then

9    forcing a 50/50 split on those parties, it's at its base,

10   unfair and inequitable.

11         And we would just request that there -- there be

12   some sort of cost splitting or something clarified in the

13   order that brings some predictability to what those costs may

14   be instead of this open ended nature.

15         Your Honor, that addresses all of the points in

16   our objections.  And we just call the Court's attention to

17   one item we were unable to address in the red line version of

18   what was filed on Friday afternoon in ECF number 3105.  I

19   happen to look.  I just think there might be some language

20   that creates an unintended ambiguity for the -- for the

21   avoidance defendants and the Trustee.

22         And we're happy to work that out, but since we're

23   on the record, we just thought to close it out.  In ECF 3105

24   at page 39, there seems to be, I guess, maybe the best way to

25   explain this is by way of example.

1          The mediation referral seems to be triggered upon

2   the notice of appearance with no actual mediation referral

3   being made until May 15th.  We have some clients where now we

4   have stipulation with the responsive meeting deadline before

5   May 15th, when we might have this gap period.  We just don't

6   want to see a situation where the mediation referral date --

7   there could be any question of any sort of default.

8          So I guess maybe there might be -- there might

9   need to be some clarifying language.  And, of course, we're

10  happy to work with Trustee's counsel to get that language.  I

11  just would point it out to the Court.

12          THE COURT:  Thank you.

13          MS. SIGNOR:  And I'm happy to take any of the

14  Court's questions with regard to our objections if that would

15  be helpful.

16          THE COURT:  I do not have any questions.  Thank

17  you.  Attorney Bassett, do you want to respond to these

18  issues?  First of all, obviously, one of the issues is no

19  longer an issue, but the issue about remote attendance of

20  client representatives.

21          MR. BASSETT:  Yes, Your Honor.  I think it does

22  probably make sense for me to address these issues now

23  because my comments and proposals that I have may end up

24  resolving some of the same objections other parties would

25  have.

1        As to in-person attendance, I believe it's Section

2   2-L of the mediation procedures, which that's the mediator

3   with the authority to decide whether the mediation will be

4   held by video or whether it will be in person.  And then, the

5   mediator, I believe, in paragraph 2-O, will also decide the

6   location.

7        So to the extent that individual defendants have

8   concerns about their ability to travel across the country if

9   somebody is located in Washington or California, they don't -

10  - a major hardship for them to travel here, we are obviously

11  going to be flexible with that.  And I assume that Judge

12  Tancredi or any other mediator will be flexible in that as

13  well.

14       What we didn't want to do was, at the outset,

15  allow everyone to participate by video because in our

16  experience, particularly from maybe dealing with some people

17  who don't necessarily have the strongest appetite to engage,

18  it may not be productive.  And our experience is a lot more

19  productive when you get people in the same room, both as the

20  two parties and the mediator.  So that's the reason for

21  setting it up that way.

22       But in practice, I can't imagine it will be a real

23  concern because, like I said, we're certainly going to be

24  sensitive to any major hardship travel issues that is imposed

25  on people.  And the judge will ultimately decide that as

1    well.   Judge Tancredi will.

2         THE COURT:   Well, I'm looking at L and it says

3    that the mediation referral letter, the letter I was talking

4    about with you, describes the claims at issue and advises --

5    and advising regarding their ability to participate in

6    mediation the following 60 days as well as whether the

7    mediation session should take place in person or via video

8    conference.

9         So I suppose the mediation letter could request

10   that the individuals participate via the -- that the client

11   representatives participate via video conference.   Right?

12   Isn't that what that -- I mean, that language seems to

13   provide the ability to make that request.

14        MR. BASSETT:   That's exactly right, Your Honor.

15   The parties join the request form, they can make that request

16   and the following (indiscernible) describes how, after

17   receiving a letter, Judge Tancredi will direct that the

18   mediation be conducted in person or via video conference.

19        THE COURT:   Well, maybe what you need to add to

20   that paragraph is that, you know, it's counsel for a

21   defendant is an appearing counsel.   They'll need to expect to

22   appear in person unless otherwise directed by the mediator.

23   And that the client representative may be allowed to

24   participate via video conference upon request, but it must be

25   a client representative with authority to settle.   I mean, I

1  don't think I saw that anywhere in here, did I?  I mean, you

2  you've got to have somebody who's got authority to settle.

3          Otherwise, you're wasting your time.  And I think

4  that's an issue where someone appears and they do not have

5  authority to settle, then the Trustee would have an issue to

6  bring to the Court.

7          MR. BASSETT:  Understood, Your Honor.  I don't

8  have the reference at my fingertips, but I believe we did

9  have that concept.

10          THE COURT:  But maybe you need to put it there,

11  too, is what I'm saying, right?  I think more than one

12  defendant has raised this issue about being in person.  I

13  think the lawyers should expect, and I think Judge Tancredi

14  would require the lawyers to be there.

15          And at certain points, it's possible that they

16  could -- he could require the client representatives to be

17  there.  But I think a client representative could make a

18  request from the start not to be there as long as that client

19  representative clearly states that they have the authority to

20  settle the matter.

21          MR. BASSETT:  That's fine with us, Your Honor.

22          THE COURT:  I mean, I think you need to --

23  especially if it's -- again, I don't know what buckets are

24  always are going to be put into.  But if there is a defendant

25  that is then described as an ordinary course defendant,

1 right, that might be a completely different type of mediation

2 than some of the other avoidance concerns.  So in any event,

3 I think if you add that language -- and Attorney Signor, does

4 that address your concern?

5          MS. SIGNOR:  Yes, Your Honor.  I believe that that

6 would address our concern.

7          THE COURT:  And I do think you can request that in

8 your letter initially, even with the language that's in this

9 order right now, and I think that would be the time to do it

10 because Judge Tancredi would be reading that letter and

11 making a determination of how he would be handling the

12 mediation.

13          MS. SIGNOR:  Yes, Your Honor.

14          THE COURT:  So I think that's fair.  I don't think

15 that's unreasonable, Attorney Bassett, and you don't seem to

16 think it's unreasonable.  Or I should say in the affirmative

17 that you seem to agree that it is not unreasonable.

18          MR. BASSETT:  That's correct, Your Honor.

19          THE COURT:  Okay, good.  All right.  So that takes

20 care of the remote attendance issue.  But with regards to the

21 cost, what is your response at this point, Attorney Bassett,

22 with regard to the (indiscernible) there and the cost of

23 mediation.

24          MR. BASSETT:  So my response, Your Honor, is that

25 the Trustee hears the issue that's being raised.  But we also

1  think it is one that does not need to be decided today

2  because, frankly, it's not presently an issue.  One of the

3  things that we discussed earlier was that the mediation panel

4  may or may or may not be created.

5          Initially, all mediation is going to be under the

6  supervision of Judge Tancredi, and there will be no fees

7  involved in his oversight of the process.  If and when

8  there's a mediation panel, that will be subject to the

9  approval of the Court.

10          And as stated and as the revised order indicates,

11  any defendant at that time can raise an objection, including,

12  if they want to raise the objection at that time to both the

13  cost or fee arrangements involved with the proposed mediators

14  for the panel and the requirement that they share in those

15  costs.  We're happy to put in a reservation of rights.

16          THE COURT:  I think that would resolve the issue,

17  a reservation of rights for now.  And because that's why I

18  asked about the mediation panel originally, Attorney Bassett,

19  which was there might not be a panel.  And if there isn't a

20  panel and Judge Tancredi handles these matters, then there is

21  no cost to handle them.

22          But I also understand the concern about if there

23  is a mediation panel, those people that get appointed will

24  want to be paid.  So I think if you put in language reserving

25  rights, I think that's an acceptable resolution that turns

1  more of your -- your other basis for objections.

2           MS. SIGNOR:  Yes, Your Honor.  I think that we can

3  put that over for another time should it become an issue in

4  the future.

5           THE COURT:  Okay.  Great.  Then I think with

6  regard to the objections of Art Wolf in ECF 3083 and Anthem

7  Healthcare Assurance Inc. in 3084, that those objections are

8  resolved as noted on our record.

9           MS. SIGNOR:  Thank you, Your Honor.

10          THE COURT:  Okay.  Thank you.

11          MR. DESPINS:  Your Honor, if I may, just want to

12  make sort of a global statement in this.  It is not my

13  intention to have a panel.  It makes no sense for every such

14  -- for example, I always use Federal Express as an example

15  because they are actual defendants.

16          It makes no sense to have a separate mediation for

17  Federal Express and UPS.  All these potentially

18  (indiscernible) to be determined whether they're in the

19  course or not should be bucketized in the same especially if

20  they're post-petition transferees or pre-petition

21  transferees.  The idea is to create buckets.  And that way,

22  Judge Tancredi could work with them as a group.

23          But if we have 290 individual mediation, this

24  process will not have been working well.  So I really want to

25  make sure the Court knows directionally.  Of course, Judge

1  Tancredi will determine that, but directionally, we're not in

2  favor of having individual mediation.  That would be time

3  consuming, costly, and not necessary in most of the cases.

4          THE COURT:  Okay.  Thank you.  And I mean, I think

5  from our prior hearings, I don't think anyone thought we were

6  going to have 275 separate mediations.  Okay.  But we need to

7  make sure that the procedures are clear enough that they can

8  be while still providing some flexibility and control to

9  Judge Tancredi as the mediator.

10          Okay?  All right.  So the next matter, the next

11  objecting party is Markham LLP, which is ECF number 3088.

12          MR. GOTTESMAN:  Good afternoon, Your Honor.

13          THE COURT:  Good afternoon.

14          MR. GOTTESMAN:  Again, Andrew Gottesman from

15  Mintz and Gold representing Markham, LLC.  We had just filed

16  a substantially similar objection, if not almost the same

17  objection for Fox News Network.  I think they were filed on

18  the same day.  So like they're just done together if

19  possible.

20          THE COURT:  Yes.  You're right.  The Fox News

21  objection is 3089.  So go right ahead.  You can certainly

22  address them both together.

23          MR. GOTTESMAN:  Thank you, Your Honor.  Your

24  Honor, as we said before at the last status conference, we

25  have no problem with mediating (indiscernible) mediation.

1  It's a good thing in a situation like that.

2       However, the procedures that had been promulgated

3  by the Trustee leave out some important -- some important

4  procedural protections for all of the avoidance defendants.

5  Specifically, we believe and we put in our objection and we

6  also provided a markup of the procedures with our objection,

7  we believe that any recommendation made by Judge Tancredi or

8  the mediators with respect to the process should be subject

9  to notice and an objection period.

10      And the reason for that is twofold, Your Honor.

11 Number one, there could be substantive issues that could

12 (indiscernible) recommendation that could impact the rights

13 of our clients, but all of the dependents, all of the

14 avoidance defendants.  For example, buckets are fine.  There

15 might be an objection to being in one bucket as opposed to

16 another bucket, especially when it comes to claimants.  There

17 may be information that gets disclosed in a mediation that

18 certain clients and certain defendants don't want disclosed

19 in a group setting.  There might be a business ramification

20 for doing so.

21      So all that we're asking is that before any kind

22 of recommendation gets approved that we -- and when I say we,

23 I don't just mean my side -- I mean all of the defendants

24 have an opportunity to come to the Court and object to

25 whatever it is in those recommendations that they believe

1  prejudice them from a business perspective or from a legal

2  perspective.

3              I also think, and this is also in our case, but I

4  believe that that kind of procedure would make it infinitely

5  easier for this Court to make determinations with respect to

6  that procedure.  The way it is currently -- the way the

7  procedures are currently drafted, if an individual avoidance

8  defendant has an issue with something in the recommendation

9  from Judge Tancredi or one of the other mediators, the burden

10 is then on the defendant to make an affirmative motion to the

11 Court in order to address that.

12             I mean, I think it is pretty obvious where that

13 could go, which is 270 defendants, 270 various motions about

14 different issues, all on different calendars.  If there was a

15 mechanism where there was a recommendation made by a mediator

16 and that recommendation was subject to an objection period,

17 you know, it could all get knocked out at once.  Very clean,

18 at one hearing, and then everything will move on without

19 significant delay of multiple motions in front of the Court

20 on different days and different issues.

21             So we think both from a procedural perspective and

22 from a technical perspective, all of the avoidant defendants

23 should be allowed to have a notice of the recommendation,

24 which they do in the -- in the procedures.

25             But then, the opportunity, some level, some amount

1   of time, and it doesn't have to be a very long amount of

2   time, but some amount of time for them objection to specific

3   things in those procedures to bring those before the Court.

4   If the parties can't work it out, then there's going to be

5   (indiscernible) before Your Honor, and Your Honor can decide

6   what you believe is the right thing to do.

7           And we think that that is an infinitely better

8   procedure when requiring the defendants to come to the order

9   with an affirmative motion for things that they object to in

10  the recommendation made by one of the mediators.  So that is

11  that is really what our first point and I think --

12          THE COURT:  Well, let me ask you a question about

13  the first point.

14          MR. GOTTESMAN:  Certainly.

15          THE COURT:  I think I understand your point, but

16  I'm not sure if it really should apply to people who haven't

17  already objected to the mediation procedures.  That's just

18  the point of putting this -- making this procedure and these

19  orders be served out and have another hearing on it.  Right?

20  I mean, I think you could make that argument.  You've

21  objected.  Right?

22          And I -- and I understand your objection.  But

23  when you say on behalf of all the other defendants, I'm not

24  sure that that's accurate, given the process that we've gone

25  through at this point.

1          If someone had your concern, the argument, I

2     think, would be they should have filed an objection from the

3     timeframe that was set forth in the order that this Court

4     entered some time ago to get to where we are today.  So I'm

5     not saying I disagree with your point fully in any way, but

6     I'm saying I don't think you can make it on behalf of other

7     people.

8          You may disagree with me on that, but that was the

9     whole point of having another hearing.  I mean, the point was

10    to, just like we do in many situations in a bankruptcy case,

11    flesh out who has a problem with the situation.  And you have

12    rightfully filed your objection.  So I have no problem with

13    that, your objection for your two parties.

14         But I think your argument with regard to you, your

15    clients, I understand, but I think it could be more chaotic

16    if you then say -- you apply it to everybody who didn't file

17    an objection.

18         MR. GOTTESMAN:  (indiscernible) I mean, I am here

19    to argue for my two clients, and I agree with your

20    assessment.  We will obviously because it's here, we will

21    still object to something that the Trustee put forward.  I

22    just think that kind of if you put it into the procedures, it

23    will have a broader application.  And I think the deal today

24    is mostly about procedures where I think the recommendation

25    frankly would be about more about substance.  Right?

1          So if the mediator says, as an example, we want to

2     litigate all these kinds of claims together.  That's going to

3     affect a list of people.  But those people might have

4     specific reasons why they object to that from a substantive

5     perspective.

6          Now, if Your Honor wants to say they should be

7     there now, I don't know that I disagree with that.  But I

8     just think it's the only -- I think that there is a

9     potentially broader application, and I was trying not to be

10    overly provincial in my concerns.

11         THE COURT:  Well, I think the problem is having a

12    process for someone who hasn't already objected then being

13    able to object to the -- it'll go on forever.  And that's not

14    what the mediation is supposed to do.  It's a mediation.

15    Right?  It's not binding.  It's not what it says.  It's not

16    binding.

17         MR. GOTTESMAN:  Absolutely not, Your Honor.

18         THE COURT:  So, I think -- I'm not sure I'm

19    persuaded with regard to any one other -- obviously, with

20    regard to your argument, with regard to any other parties

21    than the clients you represent.  But go ahead.  I just wanted

22    to make that point.  Okay.  Go ahead.

23         MR. GOTTESMAN:  Fair enough, Your Honor.  If it

24    only applies to my clients if you think (indiscernible) I can

25    completely live with that.

1              THE COURT:  Okay.  Go ahead.

2              MR. GOTTESMAN:  Another point that we raised in

3    our objection is that the procedures currently link the

4    reason to object to a particular mediator being assigned to a

5    particular case to a conflict of interest.  Typically, in

6    mediation, the parties get together and, obviously, this is a

7    different scenario.  But as the Court well knows, in a

8    typical mediation, the parties get together.  And usually,

9    there is a list of three or four mediators that is discussing

10   (indiscernible) authorities and they have to consent to who's

11   actually going to do the job.  And there's a number of

12   reasons why someone might be acceptable and someone might not

13   be acceptable other than the conflict of interest.

14              Here, all the defendants are allowed to object to,

15   under the procedures, is whether a particular mediator has a

16   conflict of interest.  We think that should be broader, and

17   we should be allowed to object to the mediator mediating our

18   particular case on any grounds.  For any reason,

19              THE COURT:  Well, what other grounds would there

20   be?

21              MR. GOTTESMAN:  Typically, I have seen, you know,

22   situations where, let's say, there is a particular mediator

23   that's written an article, and particularly, let's say, I

24   don't want to call it --

25              THE COURT:  On avoidance actions?

1          MR. GOTTESMAN:  Sure.  Who knows?  There's lots of

2   law reviews all across the country.

3          THE COURT:  That's true.  That's true.

4          MR. GOTTESMAN:  And so if a particular mediator is

5   someone who has taken a position that is particularly hostile

6   to one of my client's positions, I would at least like the

7   opportunity to say I would prefer to have somebody else

8   mediating this so we make sure we have -- we get a fair shake

9   and have the best chance to have a successful mediation.  We

10  don't want to do this, butt our head up against the wall, and

11  I'm sure that's not what the Trustee wants to do.  We would

12  like to have the mediation (indiscernible) our clients.

13  Also, (indiscernible) everybody's goal is to have a

14  defensible mediation.

15         So if there is a panel of mediators, we would like

16  to be able to choose.  So if it's Judge Tancredi is the only

17  mediator, then that is actually not a concern that would end

18  up mattering because Judge Tancredi is the guy, then he is.

19  But if there's a panel of mediators, we would like the

20  opportunity to say, we would like this particular one as

21  opposed to that particular one or another one other than a

22  particular one.

23         And at least raise the concern so Your Honor can

24  have it before the Court and make the decision as to whether

25  our concerns are valid, are not valid, are well grounded or

1  whether you're going to overrule our concerns.  But that is

2  the other point.

3          The last point that we note in our objection is

4  also about attendance by our clients, but not on -- not

5  solely in person.  The way I get the feeling, and I can be

6  wrong, but the way I feel about this, this is especially if

7  you're going to lump claims together, these mediations are

8  going to be a process, not one shot mediation.

9          And in order for our clients, some of the numbers

10  we're talking about and some of the issues we're talking

11  about could sit through days of mediation.  And, you know, a

12  lot of them have pretty big jobs and have a lot of other

13  things to do.  We believe that that ultimately is a burden

14  they shouldn't need to bear.

15          Now, I do agree that somebody needs to have

16  authority to settle, but that can be the lawyer.  It's not

17  that uncommon.  And there can be something in the -- in the

18  procedures to say as we see in every courtroom, I'm sure in

19  front of Your Honor (indiscernible) waiting to call back on

20  to get additional authorization to make changes.

21          That shouldn't slow things down sufficiently.

22  Whereas the other way around, the burden is all on the

23  process.

24          THE COURT:  Well, I don't think the -- I think

25  you've already heard me say that I don't think that the

1    clients necessarily have to physically be there and can make

2    the request, number one.  But we all -- I've also been

3    involved in mediations where the lawyer says I need to go

4    call my client to get additional authority, and I hear

5    something eight hours later.  That's not how it's going to

6    work.  There has to be someone available with authority.

7    Otherwise, it's -- you know.

8              I understand people don't like mediation

9    sometimes, and they don't like to make that determination.

10   But you started off by saying that your clients are not

11   adverse to mediation, then that's part of mediation.  They

12   have to be available, and they have to be ready.  And I don't

13   want to have somebody waiting a day or two or three or four

14   for whether they have authority to resolve the issue.  That's

15   not how it's going to work.

16             So, otherwise, there's no point.  There's just no

17   point.  We'll just start setting pre-trial conferences.  It's

18   not a problem.  We can do that.  And we can just proceed in a

19   normal course of a civil litigation.

20             So while I think that your issue -- I think your

21   client doesn't need to be available and appear.  It may be

22   two different people with two different days.  I don't know.

23   But as long as they have authority from someone in authority

24   and they combined your clients to a -- as far as if there's a

25   resolution, then I think that's part of mediation.

1          Otherwise, we're just not going to get very far.

2    So while I understand your argument about remote appearances,

3    I don't think your clients should be excused from mediation.

4    I think that if you start off by saying clients are excused,

5    then why bother?  There's no point.  And Judge Tancredi can

6    take things into consideration as a mediation progresses.

7          That's what he can do.  Part of what we're trying

8    to do here is not have every single step be determined

9    because he's the mediator.  Right?  He's got to have

10   flexibility.  He has to control it in the way that he thinks

11   is appropriate.

12          So but I don't agree that a client should be

13   automatically excluded.  And if that's a position that's

14   being taken, then I -- then, you know, maybe you could opt

15   out, because it doesn't make sense to me.  A client has to

16   understand what's going on.  They have big jobs, and they

17   have -- I understand that.  So does Judge Tancredi, but he's

18   making himself available to do this or to hopefully help the

19   process along so your clients don't have to spend the money

20   that they might have to spend defending this litigation.  And

21   maybe they will have to spend money.

22          I'm not suggesting that it's a given, but that's

23   the point.  Right?  The point is to try to provide an ability

24   to resolve these matters without having a trial two or three

25   years from now.  And it wouldn't be that long anyway.

1          But I'm just saying, you know, if you took the

2    worst case scenario.  Right?  So I think with regard to what

3    I've already said about the remote appearance of clients, I

4    think the time to make that request is in that mediation

5    letter that goes to Judge Tancredi.  And -- but I don't -- I

6    would be surprised.  I've never seen a mediator say from the

7    start of a mediation that a client is excused.  Never seen

8    that.  Maybe I'm -- maybe I'm just, you know, that's the kind

9    of mediations I've been involved in, but I've never seen

10   that.  And to me, that just doesn't support the process.

11         Now it might get to a point where you could make

12   that request from Judge Tancredi.  My client's been here for

13   nine days.  Nothing's happened.  You know?  He needs to be

14   here or there.  I don't know.  Maybe there's a way to do

15   that.

16         But I don't -- I don't think that's a way to

17   start.  So I'm not in support of that -- of that position.  I

18   am in support of a defendant being able to ask the mediator

19   if the client representative who has authority to settle may

20   be able to be remotely available.  But, again, that means

21   available.  That doesn't mean I'm in a meeting for five

22   hours, and I can't respond to you.

23         That means that person is obligated to be

24   available.  So that's my -- I guess I'm ruling on that one

25   for you.  I've given you half of what you want, but not the

1   other half.  Okay?

2            MR. GOTTESMAN:  Fair enough, Your Honor.

3            THE COURT:  All right.  And I apologize.  Are

4   there any other grounds that you'd like to assert before I

5   hear from Attorney Bassett?

6            MR. GOTTESMAN:  Those are the three of our

7   objections.  I will stick with those, Your Honor.

8            THE COURT:  Thank you.

9            MR. GOTTESMAN:  Thank you, Your Honor.

10            THE COURT:  Attorney Bassett?

11            MR. BASSETT:  Yes, Your Honor.  So, I guess, on my

12   account, there are two issues remaining.  The first issue,

13   that counsel has related to and I don't know --

14            THE COURT:  There's a conflict issue.  Right?

15   Like, he wants to be able to say, I don't want that mediator,

16   not just because there's a conflict of interest, but because

17   there's some other issues that he feels is prejudicial for

18   his client.

19            MR. BASSETT:  That's correct.

20            THE COURT:  (indiscernible) mediation panel.

21            MR. BASSETT:  Right.  And as to that issue, I

22   think the way that this is designed is, again, they can

23   object.  There may not be a mediation panel.  If there is a

24   mediation panel, that panel will be presented to the Court

25   for approval.  And then at that time, if there's a proposed

1  member of the panel that particular party thinks is not a

2  good mediator because that person is biased in terms of the

3  past views or articles they've been written, et cetera that's

4  the time in which they can raise objections.

5          THE COURT:  But the order doesn't say that.  Right

6  now it only says conflict of interest.  So maybe you need to

7  just expand that to address this concern so you don't have to

8  worry about it.  While at the same time, I agree that that

9  issue would be raised if and when there's a mediation panel.

10         MR. BASSETT:  So that -- we're happy to make that

11 change, Your Honor.

12         THE COURT:  Okay.

13         MR. BASSETT:  The other issue that I wanted to

14 address was -- and I apologize, it was not entirely perfectly

15 clear to me as to the extent of the issue counsel is raising,

16 but what I heard him say was that, anytime the -- anytime

17 Judge Tancredi would make a recommendation as to the way the

18 mediation should proceed in terms of bucketing or other

19 mechanics within the mediation process.

20         Now there should be a motion filed with the Court,

21 and everybody, including the client, should have the

22 opportunity to object.  That, we don't think is workable at

23 all for reasons I will talk about in just a second.

24         THE COURT:  Well, I don't think that's workable

25 either.  I think I've already said that.

1          MR. BASSETT:  Understood, Your Honor.  To the

2   extent, however, what counsel is saying is that to the extent

3   Judge Tancredi makes a recommendation to this Court as to how

4   adversary proceedings should be litigated as some being

5   stayed, et cetera, and we've already went through this.  We

6   have added a change that specifically does allow parties to

7   be heard on that because those types of recommendations that

8   affect the path forward for litigation are ones that have to

9   be proposed to the Court for the defendants having the

10  opportunity to respond.

11         I won't go further addressing the other issues,

12  the Court I think agrees with me on, but that is this is

13  designed to be a framework, right?  A framework that the

14  Trustee, the defendants, Judge Tancredi can work together on

15  to try to, as efficiently as possible and hopefully as

16  productive as possible, mediate these plans.

17         And there has to be some flexibility both into the

18  procedures or by the mediator can decide how that process is

19  going to be run.  And if you had to come back to Your Honor

20  every time there's a proposal for how particular, you know,

21  mediation processes may be structured, and then give

22  everybody an opportunity to object, that would just not be

23  workable.  We would back here actually be having this kind of

24  hearing constantly.

25         So I don't think that change is acceptable to the

1   Trustee.  But, again, I think the other one, as it relates to

2   litigation going forward, there's Court approval there.  I'll

3   make the change as to mediators and the ability to object.

4   And I think that would resolve all the remaining issues.

5           THE COURT:  Do counsel agree that that resolves

6   your issues?

7           MR. GOTTESMAN:  Except for the first one, Your

8   Honor.

9           THE COURT:  Except for the issue about Judge

10  Tancredi's recommendation.

11          MR. GOTTESMAN:  Right.  Those are specific

12  recommendations to Your Honor as to how mediations should go

13  forward.  In other words, it wouldn't be recommendations.

14  There would be an order of Judge Tancredi or order of this

15  Court.  So I think in that instance -- and maybe it is and

16  it's not for everybody, but it's anybody that's in this here.

17  We don't believe Judge Tancredi or the Trustee should have to

18  file a motion every time they want to do something.

19          But if there is a recommendation that says, all of

20  these particular adversaries, here are all the numbers,

21  they're all going to proceed this way, we should at least get

22  notice before that becomes -- and an opportunity to be heard

23  -- before that becomes the law of the case in the -- in our

24  adversary proceedings.  So what about everybody else's

25  adversaries?  At least in our adversary proceedings, we would

1  like and we believe that it's right to have at least the

2  opportunity to move Your Honor to say too bad, so sad.  Well,

3  I hear your objection.  I don't agree with you.  And I'm

4  going to accept Judge Tancredi's recommendation.  Go with

5  that.

6          That's obviously -- that's what you do.  Right?

7  You do it every day.  So what we're saying is we want the

8  opportunity to at least be heard, especially on things that

9  could have a substantive impact on our client, like

10  bucketing, like, typical claims billing, claim-based

11  bucketing and having joint mediations with 2, 3, 4, 5, 10, 50

12  different defendants.

13          All these kinds of things are things that at least

14  we should be heard on and not be dictated to and allow Your

15  Honor to make the ultimate decision.

16          THE COURT:  Attorney Bassett.

17          MR. BASSETT:  Your Honor, again, this is designed

18  to be a framework.  To the extent that Judge Tancredi wants

19  to recommend how particular mediations will proceed, whether

20  that's bucketing or otherwise, it's contemplated that he

21  needs the flexibility to do that.  It is not contemplated

22  that he would come back to the Court every single time he

23  wants to propose a --

24          THE COURT:  I don't think that's what counsel is

25  saying.  I think what counsel is saying is that if a

1  recommendation is made, that impacts -- because it's only

2  going to be with regard to your clients -- impacts the

3  adversary proceedings in which he represents his client.  He

4  gets to see what that recommend -- he gets to determine

5  whether he can object to that recommendation.

6        Meaning, I'm going to --- but I have to be -- have

7  to be careful about that because it has to be a

8  recommendation about process.  Right?  I mean, he's not going

9  to make a recommendation about substance, he's going to make

10  a recommendation about process.

11        He's going to say -- Judge Tancredi's going to

12  say, if we take the example, these 20 adversary proceedings

13  all have the same -- I'm just making an example.  Okay?  The

14  same issue of law, and I'm going to clear them all in the

15  next three weeks during these mediation sessions.  What

16  counsel is saying is he wants to know that and he wants to be

17  able to object to that.  That's what he's saying.

18        MR. DESPINS:  Your Honor --

19        THE COURT:  Is that what you're saying?

20        MR. GOTTESMAN:  That's absolutely correct, Your

21  Honor.

22        MR. DESPINS:  There's a difference between Judge

23  Tancredi making a recommendation to Your Honor about -- I

24  think you would advance the case if you decided whether

25  defendants who didn't know who Mr. Kwok was can be held

1    liable.  Okay?  I'm making that as an example.  That should

2    be heard on all day long.

3              But if Judge Tancredi says, I just -- I think that

4    the way I should handle my mediation is to create these

5    buckets and all that, you shouldn't have to come to Court to

6    seek approval of that.  That's his mediation.

7              THE COURT:  Well, but he's not going to seek

8    approval of that.

9              MR. DESPINS:  Okay.

10              THE COURT:  No way that I'm going to ask Judge

11    Tancredi to seek approval of that.

12              MR. DESPINS:  Exactly.  So that's why --

13              THE COURT:  The only thing I'm hearing from

14    counsel is he wants an opportunity to say, I don't agree with

15    what Judge Tancredi's doing.  And I may agree or disagree

16    with him.  I don't know.  I'm not even sure if I'm there yet.

17    But I -- just to be clear, I'm not going to approve or

18    disapprove whatever Judge Tancredi decides is the way to

19    proceed with mediation.  That's not going to happen.

20              Okay?  He'd have to have a valid reason if I'm

21    going to go there, which I haven't -- we're talking about

22    this right now.  Right?  I have -- I'd have to have a valid

23    reason why you think you shouldn't be in that process.  And

24    as I said, when you talk about other things, maybe you just

25    opt-out.

1          I don't know.  But the point is I'm not going to

2     get into a lot of hearings about whether or not you have a

3     basis to say I don't want to be included in that bucket.  And

4     it's a hard -- it's hard for me to come up with a thought as

5     to why you wouldn't -- what would be your reason to not be

6     included in that bucket other than the issue you've already

7     raised about a mediator, in particular, which I understand.

8     Okay?  And I think that's been resolved by we're going to

9     change the language in the order, and it's not just going to

10    be based on a conflict of interest.

11         It could be based on other issues.  What would be

12    the reason?  Can you come up with an example?

13         MR. GOTTESMAN:  Well, as I said in my papers, Your

14    Honor, there is a -- in a group setting, especially when you

15    --

16         THE COURT:  But that's a protective order issue.

17    That's you don't want to disclose something about what your

18    client does.  Right?  Is that your -- isn't that what you're

19    talking about?  You don't want to -- you don't want to have

20    any of their business dealings or processes or policies and

21    procedures become of the party -- become part of a mediation

22    of a group mediation.

23         I think Judge Tancredi can handle that.  He can

24    handle that.  He can say, you know, counsel, I hear you.  We

25    don't want Markham's internal policy and procedures talked

1   about in front of this whole group.  I'm going to have a

2   separate session just with you.

3              MR. GOTTESMAN:  I agree, Your Honor.  I think

4   although --

5              THE COURT:  And that's what he's going to do.  So

6   you tell him that.  You don't need to tell the Court that.

7   You can tell him that.  You can say, Judge Tancredi, I

8   understand that this is how you want to proceed, but I can't

9   get into specifics about my client's business practices in

10  this mediation because we think that information is protected

11  and privileged, whatever else you want to call it, from our

12  business operations.  And we don't think that that should

13  have to be shared with the group.  I honestly -- I can't

14  imagine Judge Tancredi would disagree with you.

15             MR. GOTTESMAN:  Your Honor, I'm --

16             THE COURT:  He'd have the conversation with you.

17  Right?  I think that -- this session -- just because there

18  could be group sessions doesn't mean there isn't going to be

19  a time when he takes you into a room and says, I'm going to

20  talk only to this person.  That's -- it happens all the time.

21             MR. GOTTESMAN:  I agree.  And I -- and I think I'm

22  and we are obviously hopeful that Judge Tancredi will do

23  exactly that and expect that that (indiscernible).

24             THE COURT:  He's a seasoned mediator.

25             MR. GOTTESMAN:  Absolutely.

```
 1              THE COURT:  He will -- he will be able to --

 2              MR. GOTTESMAN:  (indiscernible) --

 3              THE COURT:  It won't be his first complex

 4   mediation.

 5              MR. GOTTESMAN:  That is absolutely undoubtedly

 6   true.  All I'm saying is that the way the procedures are

 7   currently written, there is no way to address something that

 8   Judge Tancredi does not agree with us on, and we would want

 9   to take it to the --

10              THE COURT:  Then I'll let you do whatever you

11   think is appropriate.  I don't think we need to put it into

12   this motion.  If you want -- or order.  If you want to come

13   before me and say he's doing something inappropriate, you

14   know, it'll get -- probably get heard.  I don't know.  But we

15   can't -- we can't doom the process from the start, which is

16   the -- I understand and I think your concern is a valid

17   concern from a lawyer's perspective with regard to your

18   client's business operations.

19              I'm not -- I don't have any -- I don't think that

20   that is an unfounded concern, but I don't think there should

21   be a process set up because that might occur.  It might not

22   occur.  Right?

23              MR. GOTTESMAN:  I would hope that we don't ever

24   have to get there.  We can have a conversation with Judge

25   Tancredi.  I'm sure we can.
```

```
1              THE COURT:  I'm sure you can.

2              MR. GOTTESMAN:  And able to resolve that, but

3   there is a scenario where that doesn't happen.  And all I'm

4   saying --

5              THE COURT:  And you'll have to assert whatever you

6   have to assert at that point.

7              MR. GOTTESMAN:  And what I'm trying -- what I'm

8   saying is that while we would then have an affirmative burden

9   to come before Your Honor as well with any other --

10             THE COURT:  You're going to have an affirmative

11  burden to come before me anyway.

12             MR. GOTTESMAN:  But if there was this -- if there

13  was an objection period, if there was a seven-day objection

14  period, you could knock them all out of once.

15             THE COURT:  I'll tell you what.  I'll tell you

16  what.  The Trustee and his lawyers have, at least in my

17  experience in this case, when people have brought issues

18  before them and the lawyers who have brought issues before

19  them have been very reasonable and have worked out the

20  overwhelming majority of issues, even in very, very, very

21  contested situations.  This is a mediation.  I think you can

22  work it out.

23             I don't think it needs to be part of this order.

24  If you -- I just don't.  And if -- but if you feel that

25  you're not being treated properly, then file the motion.  You
```

1  know, what's Trustee Despins going to do if you don't show up

2  at mediation because you feel that he didn't take into

3  consideration your concern about your client's business

4  policies?  He's not going to -- I mean, what can he do?  He's

5  got nothing.  It's a -- it's a nonbinding mediation.  What do

6  -- you can't be sanctioned.  We've already gone through that.

7  Right?

8          You can't be sanctioned.  You can't be found to

9  have acted in bad faith.  You can't -- I think it's an issue

10 that I expect lawyers should be able to address without the

11 need for Court intervention.

12          MR. GOTTESMAN:  Your Honor, I completely agree, I

13 just want to point out two things.  Number one, before we

14 filed an objection, we did send comments to the Trustee and

15 never did heard back.  So while I think that the Trustee's

16 counsel is usually reasonable, I don't think I can rely on

17 it.

18          THE COURT:  Well, I think that's a strong

19 statement, so just hold on there.  Okay?  I think that's a

20 strong statement.  There's -- I don't want to get into -- I

21 don't want to -- if we're starting there, you should carve

22 yourself out right now.

23          Okay?  Because that is not how you start a

24 mediation.  There are 275 adversary proceedings, like it or

25 not.  I understand you don't care.  You only care about your

1   two.  And that's a fair point too.  That's a fair point.  But

2   I have to look at the whole.  Right?  And I don't think it's

3   fair to say you can't rely on them.

4         That's a strong statement.  I think what you could

5   say is, you know, we made comments.  We didn't hear back.  So

6   I feel like I have no choice but to tell you, Judge, that

7   that's where we stand.

8         Okay.  You told me.  I'm telling you that lawyers

9   should be able to work it out.  You have a -- and if you

10  can't, then do whatever you think is appropriate.  And the

11  Court will act in any way the Court thinks it's appropriate

12  under the process.  But I think it's an issue that is not an

13  issue.

14        It's not an issue from this Court.  And I can't

15  imagine it's going to be an issue from Judge Tancredi's

16  standpoint.  I just can't imagine that.  And maybe I'm wrong.

17  So you know what?

18        Wouldn't be the first time, won't be the last

19  time, but this is a mediation.  This is not a litigation.

20  This is not I'm going in, and I'm going to make an argument

21  to Judge Tancredi about why I shouldn't have to pay a dime

22  and why they're wrong on everything they said.  If that's the

23  position, then carve yourself out because that's not what a

24  mediation is.  That is not what a mediation is.

25        This is mediation is designed to come to a result.

1  We're not going to make arguments about, you know -- well,

2  you know what I'm saying, counsel.  I don't mean to go on

3  that.  But I think -- I think your issue can be and should be

4  resolved by Judge Tancredi as the mediator.  If there's a

5  mediation panel and you have any of those other concerns, I

6  think that's valid, and we can address that if and when that

7  happens.

8          But otherwise, I think you have the right to opt

9  out.  I mean, you have the right to say, I don't want to be

10 part of it.  But if you're going to be part of it, you have

11 to be part of what it is (indiscernible) mediation.  Okay?

12 That's my ruling on that issue.

13         I'm not going to set up a process where Judge

14 Tancredi makes some recommendation and then it has to be a

15 notice to everybody and then you get to -- first of all, it

16 wouldn't be on notice to everybody.  It would just be on

17 notice to be objecting party.  I've already made that ruling.

18         But with regard to what you would -- what you can

19 and cannot do, every party in an adversary proceeding or a

20 main case has a right under the Bankruptcy Code to request a

21 conference of the Bankruptcy Court.  Now the Court may not

22 agree, may not grant you the conference, but you've got that

23 right.

24         So I think your rights are preserved with regard

25 to those issues.  So I'm not going to change the order along

1  those lines.  Okay?  I just -- I don't see it being something

2  -- and then you can prove me wrong.  You can come in and show

3  me why whatever everything I just decided was wrong.  And if

4  you do that, then I will reconsider.  But I'm not going to

5  reconsider until you're able to do that.  Okay?

6          MR. GOTTESMAN:  Fair enough, Your Honor.  I hope

7  it never happens.

8          THE COURT:  I hope -- I hope not too.  I really

9  think Judge Tancredi can handle that.  I really do.  You can

10 handle it by telling Judge Tancredi you need that issue to be

11 handled.  Right?  So I think it will be fine.

12         MR. BASSETT:  Your Honor, wanted to just correct

13 the record at one point.

14         THE COURT:  Okay.  Go ahead.

15         MR. LINSEY:  We have engaged in well more than a

16 dozen telephone conferences with the avoidance defendants

17 regarding their objections.  We received from Mr. Gottesman

18 written objections sent in the red line.  There was no phone

19 conference requested.  I responded to Mr. Gottesman on April

20 10, 2024, saying here is a further revised proposed order

21 that is acceptable to the Trustee, which considers your

22 client's feedback.  That further version of the order

23 specifically excepted many of the revisions that were in the

24 red line that Mr. Gottesman sent to me and then invited him

25 that if he wished to further discuss the matter with us, he

1  could do so or should not avail --

2              (Overlapping voices)

3              MR. LINSEY:  So certainly, we have --

4              THE COURT:  I understand.  I understand.  I do

5  understand, and I don't want to spend any more time on it.

6  Okay?  I think we need to get to the meat of the issues.  But

7  I understand.

8              MR. LINSEY:  (indiscernible).

9              THE COURT:  I understand.  All right.  So with

10  regard to Markham and Fox News Network's objections, the

11  objection regarding of time to be provided with notice and

12  object to recommendations of Judge Tancredi, I'm overruling

13  that objection right now, with the understanding that if you

14  truly believe during the mediation process that that occurs,

15  then you have a right to seek relief from this Court.

16  Whether the Court will agree with you or not depends upon the

17  relief that you seek.  Okay?

18              With regard to the issue about the conflict of

19  interest, Attorney Bassett agreed to change that order.

20  Attorney Bassett -- that it's not if there is a panel of

21  mediators, the only -- the ability for a defendant to object

22  to a mediator is not solely limited to a conflict of

23  interest.

24              If they're showed -- if they're able to show some

25  bias or some other, you know, they're in competition with Fox

1  News or Markham or something, I don't know, then that could

2  be -- form a basis as well.  So you'll change that language,

3  Attorney Bassett?

4          MR. BASSETT:  Correct, Your Honor.

5          THE COURT:  Okay.  And then with regards to the

6  clients being able to attend remotely and/or be excused, I've

7  already ruled the clients are not excused unless and until

8  they are by the mediator.  And that in that meet -- that

9  letter that's sent to Judge Tancredi, the referral letter,

10 that is the time for your client to request to be available

11 remotely and not have to necessarily attend the mediation

12 session in person.

13         Okay?  So I think that addresses all of your

14 concerns.  Is that correct?

15         MR. GOTTESMAN:  It does.  Thank you, Your Honor.

16         THE COURT:  All right.  Thank you very much.  The

17 next is Blueberry Builders, which is ECF number 3091.  Good

18 afternoon.  Will you just state your name again for the

19 record, please?

20         MS. ODEN:  Yes.  Amy Oden, O-D-E-N.

21         THE COURT:  Thank you.

22         MS. ODEN:  Pashman and Stein on behalf of

23 Blueberry Builders LLC.

24         THE COURT:  Thank you.

25         MS. ODEN:  We filed our limited objection for the

1 procedure's motion at Docket No. 3091.  And we had

2 discussions with the Trustee last week, and we were able to

3 resolve almost all of our objections with the clarifying

4 language and the revised the proposed order.

5        The only issue that remains, which is not for

6 today, but we just want to reserve our rights regarding the

7 sealed complaint.  We reserve the right to -- we don't think

8 we should be required to sign on for this extensive

9 protective order just to find out what we'll (indiscernible)

10 for which in our client's case is really just a schedule of

11 transfers.  But we understand that's an issue for the parties

12 to the protective order.

13        And it's again, it doesn't prevent, you know, any,

14 procedures from being approved today.  But just want to

15 reserve our rights on that.

16        THE COURT:  Understood.  Thank you.

17        MS. ODEN:  Thank you.

18        THE COURT:  Attorney Bassett, do you have any

19 response?

20        MR. BASSETT:  Yes.  No issue, Your Honor.  In

21 fact, we are preparing a motion to modify certain aspects of

22 the protective order, which we'll present to your Court in

23 due course.  But I think we can work out any issues that the

24 parties may have regarding confidentiality.  But certainly,

25 there needs to be some form of protective order that remains

1   in place for the mediation.

2          THE COURT:  So I just had one question about that.

3   I think that's fine.  So have you not seen the schedule of

4   payments?  Is that what you're saying?

5          MS. ODEN:  Correct.

6          THE COURT:  Okay.  So you'll need to address that

7   Attorney Bassett.

8          MR. BASSETT:  That's correct, Your Honor.  And I

9   guess the only issue is it can't be to the extent of what

10  counsel is suggesting.  It can't be that they can just

11  receive matter -- or materials that have already been

12  produced and designated confidential pursuant to the existing

13  protective order without themselves agreeing -- without

14  either themselves agreeing to be bound by it or this Court

15  modifying the existing protective order to remove the

16  designation.

17         And we are planning to address, in particular, in

18  our forthcoming motion, which I mentioned, the issue of many

19  banks and other parties, designating highly confidential bank

20  statements, which we don't think should be designated highly

21  confidential because obviously the principals or clients on

22  the other side need to see those transactions.  We do intend

23  to address that, but there obviously has to be a protective

24  order in place.  The current one is in place until it's

25  modified by the Court.

1              THE COURT:  Understood.  So counsel, that

2     addresses your issues for now.  And obviously, depending upon

3     what's filed, you'll be able to reply or respond to that.

4     But I understand your point.

5              MS. ODEN:  Yes.

6              THE COURT:  Okay?  And that's why I asked the

7     question.  Have you seen your schedule?  You haven't seen it.

8     So that has to be fixed somehow, and I'll let the lawyers fix

9     that.

10              Is there anything else that you'd like to be heard

11     on with regard to your objection?

12              MS. ODEN:  No, Your Honor.

13              THE COURT:  Okay.  All right.  Then that's --

14     again, the objections that I've talked about already have

15     either been overruled and/or resolved through what will be

16     further changes to the order regarding the mediation

17     procedures and/or the protective order that's in place in the

18     main case.

19              MS. ODEN:  Thank you, Your Honor.

20              THE COURT:  Thank you.  The next matter, Lester

21     Hill Informatics has been withdrawn by the objecting party.

22     It was withdrawn today.  There -- that objection was 3093,

23     and it was withdrawn at 3116.  The next matter is Nardello

24     and Company LLC, which is ECF number 3095.  And Attorney

25     Baer, that appears to be -- oh, do you have another one as

1 | well?

2 |         MR. BAER:  Yes, Your Honor.  Actually, two others

3 | as well.  We filed on behalf of Nardello and Company,

4 | (indiscernible) Phoenix, and then Post Oak Motors and there

5 | substantially identical.  So I believe the Court can handle

6 | all of them.

7 |         THE COURT:  So we'll handle ECF numbers objections

8 | 3095, 3096, and 3097 altogether.  So go ahead, Attorney Baer.

9 |         MR. BAER:  Thank you, Your Honor.  And a lot of

10 | the issues that we raised have been addressed by the Court

11 | and by counsel already.  There are just a few additional

12 | issues.  Some of which might be actually (indiscernible)

13 | raised.  I think perhaps it makes the most sense to talk

14 | about just, I think, which is a housekeeping matter first.

15 |         One of the issues raised by this Court at the

16 | beginning of this hearing, which deals with exactly which

17 | matters are being referred to mediation.  The way that I read

18 | the order, and I think it's simply a drafting issue, is that

19 | there's 3-A and 3-B, 3-A being the matters that are I think

20 | it's called state avoidance claims.  And there's 3-B, which

21 | are partially stated avoidance claims.  And Exhibit 4 are the

22 | matters that are not being referred to mediation at all.  But

23 | I think as I understand it, the intent is that 3-A and 3-B

24 | are also not being referred to mediation.

25 |         Right?  They're being stayed independently but not

1    actually done mediation.  The 3-D portions are not being

2    stayed are but the stayed portions of 3-D and all of 3-A are

3    not going to mediation.  Correct?

4         MR. BASSETT:  That's correct.  So all of 3-A would

5    not go to mediation, but I think parties could obviously

6    elect into it if they wanted to -- would be to the extent

7    that there is a part of that adversary proceeding and claim

8    that adversary proceeding is not stayed that will go to

9    mediation unless it is also on Exhibit 4.

10        MR. BAER:  Okay.  And to be clear, I think the way

11   it's drafted right now, and I'm sure it's unintentional.  But

12   the clean version, I'm looking at the bottom of Page 4 and

13   paragraph J, it says upon appearance of any avoidance

14   defendant in the avoidance action, it would be automatically

15   referred to mediation.  I think that does not apply to 3-A

16   and 3-B.

17        Later in that paragraph, it excepts out Exhibit 4.

18   I think it can be resolved by just saying anything on 3-A

19   (indiscernible) 3-B and 4 are not referred to mediation.

20        MR. BASSETT:  We can look at that drafting issue,

21   Your Honor.

22        THE COURT:  I see where Attorney Baer -- what the

23   language he's looking at on J that starts not within

24   notwithstanding anything to the contrary.  That's what you're

25   talking about.  Right?

1        MR. BAER:  Yes, Your Honor.

2        THE COURT:  No claims, but a Trustee against

3   avoidance set forth on attached Exhibit 4 shall be subject to

4   referral.  But I -- you know?  Yeah.  You look at it.

5        MR. BASSETT:  Yeah.  We -- I'm sure that we can

6   resolve this.

7           (Overlapping voices)

8        THE COURT:  That's one of the reasons I did ask

9   the question at the beginning of the hearing.  So go ahead.

10  So actually, you go ahead, Attorney Baer.  So that seems,

11  you'll work out that issue.  Go ahead.

12       MR. BAER:  Thank you, Your Honor.  Our other

13  objections, the remaining objection probably fall within one

14  of two different buckets, one of which is going to be a

15  simple objection to the -- to the extent that the mediation

16  procedures are not even or not necessarily the same as well

17  as to the plaintiff and to the defendant.

18          To the extent that the mediation procedure is put

19  in place and pretty much every single -- I shouldn't say

20  pretty much -- in every single other mediation I have ever

21  been involved in, the rules of them, people aren't

22  (indiscernible) both parties the same.

23          There are several cases in the mediation

24  procedures in which the rules were applicable to the Trustee

25  are different than the rules applicable with the defendants.

1  I don't think that that's appropriate, and I also don't think

2  it's entirely necessary at all in this case.

3          For example, and it's probably important to point

4  out with respect to some of the procedures we've already

5  talked about.  I understand that the idea that there will not

6  be fact be a mediation panel, but that there will only be a

7  panel to the extent necessary.  But the way the procedure is

8  currently drafted, it says that the Trustee would then

9  appoint a mediation panel to the extent necessary.

10          THE COURT:  I don't think that -- well, if it

11  does, I miss that because I thought it was Judge Tancredi did

12  that.  But I could be wrong.

13          MR. BAER:  So looking at paragraph K, why that's

14  the definition of mediation panel, it's the Trustee

15  determined in consultation with the Trustee that

16  (indiscernible) to create.  The members of the mediation

17  panel shall be selected by the Trustee in consultation with

18  Judge Tancredi.  And as well, there are two objections to

19  that.  First of all, entirely inappropriate to have one of

20  the parties to mediation picking the panel.  I think Judge

21  Tancredi is more than able to pick any panel members

22  necessary.

23          I think second of all, I don't think it's

24  appropriate to have ex parte communications between one of

25  the parties and Judge Tancredi to the extent (indiscernible).

1       MR. DESPINS:  Mediation is all about ex parte.

2   We're talking to different judges all the time in mediation,

3   and you should too.

4       MR. BAER:  Right.  And to the extent that both

5   parties are --

6       THE COURT:  I think what he's saying is -- I think

7   what Attorney Baer is saying is you just can't tell the

8   Trustee who is he going to pick and they're going to pick the

9   panel.  That's the point.  Right?

10      MR. BAER:  Exactly.  Yeah.  And I don't think --

11  and to the extent that it says that the Trustee in

12  consultation with even the -- if Judge Tancredi is picking

13  the panel, which I think it sounds like we're all in

14  agreement would happen, it shouldn't just be in consultation

15  with the Trustees, it should be in consultation with the

16  other parties or it could simply be that Judge Tancredi does

17  it.  And that type of consultation (indiscernible).

18      MR. BASSETT:  The issue -- we understand the

19  point.  But again, we're dealing with the practicalities of

20  the situation.  So, ultimately, Judge Tancredi is going to be

21  the one who presents a panel, if there is a panel necessary

22  for this Court for approval.  The procedures contemplate that

23  the Trustee will consult with Judge Tancredi regarding that.

24      I have no problem of concept with other defendants

25  also being able to consult.  The issue is, I don't know how

1  that is practically workable with 270 plus parties.  It can't

2  be that there has to be a process in place where --

3          THE COURT:  There wouldn't be.

4          MR. BASSETT:  -- feedback is solicited from --

5          THE COURT:  It would only be with regards to

6  objecting parties.  I'm not going to -- because that's not

7  going to happen.  So that -- you don't have to even go down

8  that road.  All right?  But I think the point is that there's

9  -- there can be a process for objecting parties if there's

10 going to be a panel to suggest people to be on the panel.

11 Okay?  That's what you're asking for, isn't it?

12         MR. BAER:  Yes, Your Honor.  To the extent --

13         THE COURT:  And I think that Judge Tancredi has to

14 determine the panel, not the Trustee and Judge Tancredi.

15         MR. BAER:  Yes, Your Honor.  And I would suggest

16 to the extent that any party is proposing the mediator for

17 the panel that it should be done on notice of the other

18 parties.  I think in this case, as I said, directing will be

19 the Trustee and the other objecting parties, which I think is

20 fine.  Just so that everybody has an opportunity to see

21 what's being proposed and give input potentially as a

22 panelist.  I don't think it has to be on all parties.  I

23 don't think we need any procedure for it.

24         THE COURT:  We're not going to do that.

25         MR. BASSETT:  I don't agree.  The Trustee does not

1   agree to that aspect of the request, Your Honor.  There's

2   going to lots of ex parte communications.  There has to be a

3   communication between the Trustee and Judge Tancredi or

4   between the defendants and Judge Tancredi about, hey, here's

5   the suggested mediator.  If that person's proposed, then you

6   have an opportunity to object.

7          MR. BAER:  That's actually my point, Your Honor.

8   And I'm fine with that if the person's proposed, we have an

9   opportunity to object, that no issues at all.

10         THE COURT:  Okay.  So you might be saying the same

11  thing.

12         MR. BAER:  Yes.  I believe that's fine, Your

13  Honor.

14         MR. BASSETT:  Good to hear.

15         MR. BAER:  The other issues in the procedures that

16  are unnecessarily one-sided include allowing the location of

17  the mediation to be in the office of the Trustee.  Again,

18  it's appropriate to have it be in one party's office.

19         THE COURT:  I didn't see that.

20         MR. BAER:  Yeah.  That's included in paragraph 2-

21  O.  That's an automatic allowed location to the extent the

22  parties can't agree, able to agree that it can be in the

23  Trustee's office in one of the possible locations.

24         MR. BASSETT:  Your Honor, we're trying to be

25  accommodating by offering a location among other potential

1    locations.  It's not a mandatory requirement that mediation

2    occur in our offices.  We're just trying to be helpful in

3    offering space.  Judge Tancredi --

4              (Overlapping voices)

5              THE COURT:  I think Judge Tancredi is going to

6    decide where the mediation is going to be.  So I think we

7    don't have to worry about that.  And if he can -- if there's

8    a need to delete that language or just modify it, I think

9    let's do that so we can move on

10             MR. BAER:  Okay.  That's fine, Your Honor.  In

11   paragraph 2-F and I'm not sure if this is intentional --

12             THE COURT:  2-F?

13             MR. BAER:  2-F.  Yes, Your Honor.  I'm not sure if

14   this is intentional or not, but there have already been some

15   discussion with the Court about the attendance of parties at

16   the mediation, and I very much heard the Court's point that

17   clients are mandatory to be there.  The only issue would be

18   that the way that it's drafted, the Trustee does not have to

19   have a representative there, but the defendant does.  And

20   again, that's an unnecessary inequality.

21             I think that the Trustee, obviously, Mr. Despins

22   is not going to show up at every single mediation.  We expect

23   that counsel, the settlement authority is acceptable for the

24   Trustee, should be counsel the settlement authority is

25   acceptable to the defendant.

1           THE COURT:  I disagree.  I'm sorry.  I disagree

2   with you on that point.  The Trustee is in a different

3   position than the defendants are in this case.  The Trustee

4   has statutory duties to resolve -- to try to resolve issues.

5           And the Trustee is not going to be at every

6   adversary proceeding, but one of his representatives as

7   lawyer is going to be there.  He has to be available just

8   like any of your clients who aren't going to be at the maybe

9   physically at the mediation have to be available.  So I don't

10  agree that that's an issue.  And so I don't -- I don't think

11  we need to discuss it.  The Trustee is not going to be at

12  every -- at every mediation session.

13          MR. BAER:  Your Honor --

14          THE COURT:  To be clear.  Neither are your

15  clients.

16          MR. BAER:  Yeah.  And I'm sorry, Your Honor, I

17  didn't mean to interrupt you.  I apologize.  But just to make

18  that -- I'm not suggesting that the Trustee should be there.

19  I'm aware that that's just practically not possible.  What

20  I'm suggesting is whatever the rules are, should be the rules

21  for both of them.

22          To the extent that it can be a representative,

23  that's fine.  To the extent that it's counsel, the settlement

24  authority, that's fine.  To the extent that it's simply

25  available --

1      THE COURT:  I disagree with your client.  The

2  defendants are going to be there.  Even if they're remote,

3  they're going to be -- what I said at the beginning of the

4  hearing was that the defendants have to be available.

5  They're not going to be excused from mediation.  And when I

6  say available, I'm not saying that they necessarily have to

7  be on a video screen.

8      It's up to Judge Tancredi how he's going to handle

9  that, but they have to be available.  It's not -- I'm not

10  going to have a situation, and I've already described it, I

11  think, three times in the record, where a lawyer says, yes.

12  I have a settlement authority, but now I have to go call Mr.

13  Smith because I need more settlement authority, and Mr. Smith

14  isn't available until tomorrow.  That's unacceptable.

15      MR. BAER:  I agree.  I agree completely, Your

16  Honor, but I believe that that applies equally to the

17  Trustee.  To the extent that the Trustee is not available to

18  --

19      THE COURT:  The Trustee is going to be available.

20  I'm so --

21      MR. BAER:  That's all I'm asking.  That the

22  Trustee is available the same way that if the Trustee or his

23  representative is --

24      THE COURT:  There is no question that the party --

25  the plaintiff is going to be on the same level playing field

1   as the defendant, which is the plaintiff has to be available

2   with authority, not -- I'm not going to hear that Attorney

3   Lindsey had authority up to this amount, and then he had

4   needed to get involved with the Trustee, and he couldn't get

5   him for three days.  If I hear that, I'm not going to be

6   happy.

7            MR. BAER:  Your Honor, that resolves my issue.  I

8   think there's probably language that could make it better,

9   but I think that resolves my issue, Your Honor. I think that

10  makes sense.

11           My other issues, Your Honor, are with the

12  consolidation and categorization, and I think that is in a

13  couple of different ways.  As a starting point, just to be

14  clear, I think as a conceptual matter it makes a lot of sense

15  for all the reasons that have been addressed by the parties.

16  I think that there is going to be a lot of similarities

17  conceptually that make sense to deal with if not at or around

18  the same time, possibly, even if it's from the same mediator,

19  whether that's Judge Tancredi or somebody else.  So, I

20  understand the concept of it and I agree with it.  I think

21  that I have a couple of issues with it.

22           First of all, is that it says in the procedures

23  only that, as I said before about the *ex parte*, it says that

24  the trustee cannot run up negotiations with the trust, with

25  the Judge Tancredi about those categorizations.  And I think

 1  that is necessarily substantive, but, again, it should not

 2  necessarily be an *ex parte* communication substantively about

 3  those procedures unless everybody is going to be a legal

 4  basis for them.

 5        But My larger concern about the categorization --

 6  again, again, I should also say upfront the procedures talk

 7  about categorization in a couple of places and it talks about

 8  consolidation in, at least, one place.  I am not sure if that

 9  is supposed to be the same claim or if it's a different

10  claim.  I would address them just the same just for ease of

11  reference.

12        My concerns about the categorization, and I guess

13  I should also say, I think, the procedures talked about

14  categorization in a couple of places and it talks about

15  consolidation in at least one place.  I'm not sure if that's

16  supposed to be the same thing or if they're different things.

17  I'll address them as if they're the same, just for ease of

18  reference.  Buy my concerns about the categorization is all

19  it says is that that might happen and it doesn't actually say

20  what the impact of that is.  And I think that means that they

21  are one of two different things.  One is they have a

22  substantive impact and I think we have talked about ways that

23  it might be. In other words, if they are 10 defendants that

24  are all -- I think the terminology they've used before were

25  ordinary course defendants and all 10 of them are going to be

1  together, I am not entirely sure what that means.  Does that

2  mean that I only get one-tenth, then, of the pagination?

3  Does it mean I only get one-tenth of the time to make the

4  argument?  Does that mean that I have to sit in the

5  conference room and listen to nine other -- nine hours of

6  other arguments until I get to my one?

7         The point is I think I have all the faith in the

8  world that Judge Tancredi will be able to create procedures

9  that make sense for everybody and that "categorize" adversary

10  proceedings that are similar, but I don't think that

11  necessarily has to be in this order.  That can simply be done

12  as a process of scheduling.  That can be which is already

13  embedded in there.  But to the extent that Judge Tancredi

14  believes, and it can be on consultation with the trustee as

15  long as it's in the open and parties have an opportunity to

16  say, hold on, I don't want to be a part of that bucket or I

17  don't want to be a part of the consolidated proceedings for

18  those reasons, as long as that is the case, and Judge

19  Tancredi wants to propose a procedure that he thinks makes

20  the most sense, I have all the faith in the world that the

21  procedure will make sense and that that will be

22  (indiscernible).

23         But I think including it in this order, especially

24  to the extent that it says the trustee can have *ex parte*

25  communications about that categorization, it just brings on

1  the danger of an order that we don't know that it means,

2  because we don't know the implication is.  We don't know that

3  it's going to have substantively.  We don't know what the

4  impact is going to be.  If Judge Tancredi wants to

5  categorize, he has that authority.  We don't need to include

6  that in this order.

7           What I would suggest is if there's something very

8  specific that we need from this Court to authorize Judge

9  Tancredi to do, we need to be specific as to what that is.

10 If it's something -- nothing more than scheduling, talking

11 views of logic and tactical purpose, Judge Tancredi does not

12 need that to be in this order.

13          THE COURT:  What paragraph is the language that

14 you are speaking about?  Do you recall, because I --

15          MR. BAER:  I think the most obvious one -- it's in

16 a couple of different places -- but I think it's the last

17 paragraph, Your Honor, (indiscernible) is paragraph (y):

18          "To facilitate the mediation process and minimize

19 any burden of Judge Tancredi, the trustee shall endeavor,"

20 not Judge Tancredi, but, "the trustee shall endeavor in

21 consultation to divide categories of avoidance actions."

22          That should be done by Judge Tancredi and if the

23 authority of Judge Tancredi doesn't meet -- this is a -- if

24 it's purely a scheduling issue for logic and for practicality

25 that doesn't need to be in there.  We already have Judge

1 Tancredi has the ability to make scheduling decisions and

2 then to schedule them as necessary.  To the extent there's

3 any substantive point to that, we need to know what that is.

4         MR. DESPINS:  Your Honor, it's very substantive.

5 There's a (indiscernible) of different claims.  There are

6 post-petition claims, prepetition claims.  There are some

7 that I clearly know who they're dealing with.  Others may

8 not.  So, that is the whole point about buckets.

9         But we can change the language to say that we are

10 free to propose that to Judge Tancredi and he's free to

11 reject them, but that's --

12         MR. BAER:  To the extent they're going to propose

13 it to Judge Tancredi, you know, I would suggest that it

14 should be proposed with notice to the parties that will be in

15 the bucket.

16         MR. DESPINS:  No, we're not going to do that for

17 the mediation.  The fact that he's a sitting judge -- it's

18 not very productive unless we can have direct *ex parte*

19 communications with him about the merits of the claims.

20 We're going to tell him, We think these claims are stronger

21 than those claims or not, and I'm not going to share that

22 with the defendants.

23         MR. BAER:  Oh, well, that's understandable, Your

24 Honor; they're not going to share all of the discussions

25 about that.  But again, that's exactly what I am talking

1  about, it's a substantive conversation with Judge Tancredi

2  that will have an impact over the  --

3         THE COURT:  But he's not acting as a judge; he's

4  acting as a mediator.

5         MR. BAER:  Pardon?

6         THE COURT:  He's not acting as a judge; he's

7  acting as a mediator.  You always have substantive

8  conversations with a mediator depending upon who you -- what

9  side of the fence you are on.  I mean that's what you do,

10 right?

11        MR. BAER:  Which means it doesn't need to be in

12 the order because they already have that authority.  You

13 know, Judge Tancredi already has the authority to bucket, as

14 necessary, because the trustee already has the authority to

15 have --

16        THE COURT:  Then what about Trustee Despins'

17 language that they can propose and he can reject?  That does

18 not address your issue?

19        MR. BAER:  That addresses my issue as long as to

20 the extent that they propose, and Judge Tancredi were to

21 consider it, we would be on notice and have an opportunity

22 to --

23        THE COURT:  But you wouldn't be on notice if you

24 propose -- you're not going to provide him with any notice of

25 what you suggested to Judge Tancredi.

1          MR. BAER:  I am not suggesting that we have to be

2    on notice or propose it, but this goes back to an earlier

3    conversation I believe that the Court had with one of the

4    other objectors around what would happen to the extent that

5    they make a proposal and Judge Tancredi approves it?  We

6    shouldn't have to go back at that point and file a motion to

7    be heard by this Court and an objection.

8          There should be some process to the extent -- and

9    Judge -- and Trustee Despins made clear that he believes it's

10   very substantive, which (indiscernible).  I believe, Your

11   Honor, it's very substantive.  That should not be done

12   without the participation of the defendants.

13         MR. BASSETT:  But no.  Your Honor, I think they

14   are spinning our wheels because, as counsel just said, we

15   absolutely addressed this exact same issue with counsel for

16   Fox News and Marcum and the way it was resolved was to say if

17   somebody gets to the point where there's been something

18   proposed throughout the mediation process that they don't

19   agree with, and they think they need to file a motion with

20   this Court to be heard to have something changed, it is up to

21   them to decide whether to do that.  I don't think we need to

22   keep revisiting the same issue, Your Honor, respectfully.

23         MR. BAER:  Your Honor, I actually came up with it

24   in the middle of it, but I thought it might make sense to be

25   heard on it.  But I wasn't heard on the issue

1  (indiscernible); although, I don't need to continue spinning

2  wheels on it.  I understand the Court's position.  I

3  understand the Trustee's position.  I do think it would be

4  inappropriate to suggest that something substantive can be

5  done without the defendants knowing and then put them, to the

6  point that they have no choice but to file a motion in front

7  of this Court to undo what has been done.

8          More importantly, again, I would think we can take

9  out the paragraph entirely, to the extent that they say that

10  they had this authority.

11          THE COURT:  Well, I think that Trustee Despins'

12  language solved the problem, okay.  They can propose and

13  Judge Tancredi can reject, and then you can do whatever you

14  think is appropriate.  We have to remember, and I know you

15  all are remembering, but I am going to say it again anyway,

16  he is not acting as a judge; he's acting as a mediator.

17  That's what he's doing.  This isn't an *ex parte* communication

18  because he is not acting as the Court.  It's a mediation.

19  That's what happens all the time.  Everybody is going to come

20  in and tell the mediator their side of the story and expect

21  that the mediator is not going to share the whole thing with

22  the other side.  That's not how it works.

23          And Judge Tancredi is going to want an order that

24  basically, you know, holds him harmless from all -- what

25  you're talking about because he's not going to do it

 1  otherwise.  Why would he?  As we already talked about, he's

 2  got a big job all day and he's expecting to spend a lot of

 3  time trying to help this process forward.

 4        So, I do understand your point, but I am not going

 5  to strike the -- I am not going to strike the paragraph (y),

 6  but I am going to ask Attorney Bassett for you to put in

 7  Trustee Despins' language about you have the right to -- you

 8  can propose, but Judge Tancredi can reject, okay.  Just like

 9  you could propose something and Judge Tancredi could

10  object -- I mean -- excuse me -- reject.

11        So, I understand your point, but I am not going

12  to -- I don't agree with the argument that either the

13  language should be stricken or that there be some kind of

14  notice provided to the objecting parties that then has some

15  series of hearings.  That's just going to derail the process

16  in my opinion with the understanding that if you truly

17  believe there's a problem, you have a right to come to the

18  Court and seek relief.

19        MR. BAER:  Thank you, Your Honor.  Perhaps just a

20  last issue, and I don't know if this is a substantive one.  I

21  think it is, but just to be clear, the Court -- we've talked

22  before -- I've heard the Court say that to the extent that

23  some objected and didn't like the way these things were

24  coming along, they had an opportunity to opt out.  Just to be

25  clear, the way that the language works right now, they don't

1   actually have an opportunity opt out.

2           THE COURT:  Well, they have to file a motion.

3           MR. BAER:  But it has to be a motion on good

4   cause.

5           THE COURT:  Well, everything has to be a motion on

6   good cause, doesn't it?

7           MR. BAER:  I think that's the legal standard, Your

8   Honor.  I think it has to be --

9           THE COURT:  It is the legal standard, but you

10  can't just move and say, I don't want to be part of it,

11  because I don't want to be part of it.

12          MR. BAER:  I believe that -- I would actually, to

13  the extent (indiscernible) that doesn't have names to our

14  mediation should be able to opt out, if you simply decide in

15  your own best interests that it doesn't make sense to put

16  this to mediation.

17          I also think it should be if you file a motion,

18  good cause is different that cause.

19          THE COURT:  I -- you know, you can make that

20  argument.  I understand.  I sometimes -- I understand the

21  difference between cause and good cause, and sometimes the

22  statute says cause and sometimes the statute says good cause.

23          MR. BAER:  I will also propose that you should

24  simply be able to file a notice saying you're opting out of

25  the mediation procedures.  I don't think it should be

1  mandatory.

2          THE COURT:  Well, has anyone actually raised --

3  did you -- I apologize if you did, I just don't recall -- did

4  you actually raise that as an objection in your -- oh, you

5  did, that you should be able to opt out by notice, rather

6  than motion.  So, that was in the objection.

7          So, what is your response to that, Attorney

8  Bassett?

9          MR. BASSETT:  My response, Your Honor, is that we

10  think it is very important for parties to be bound to

11  participate in the mediation process, subject to the ability

12  that they can demonstrate, again, a good reason why they

13  should not participate, should be part of the process.  We

14  think that's the only way this is going to work.  There are a

15  number -- I mean, numerous examples of --

16          THE COURT:  Well, let me just say something about

17  that.  If I were to allow that, to opt out, it would only be

18  with regard to parties who have objected; I'm not going to

19  open the flood gates.  So that's not going to happen.  I just

20  want you to understand that.

21          That was the whole point of making you, the

22  Trustee, serve this order on everyone and set up this hearing

23  and establish an objection date, was to have parties object.

24          MR. BASSETT:  That's fine, Your Honor.  If he

25  wants a carve-out saying that this one particular, or two

1  particular clients that he's representing here today, that

2  they could have the right to opt out, sure.

3          THE COURT:  So, you will work that out.

4          MR. BASSETT:  But not to any other parties that --

5          THE COURT:  No.  I mean, if no one has raised that

6  as an objection, they don't get it; that was the point.  The

7  point was you have a right to object to these procedures, you

8  need to make your objections in writing, and the Court will

9  consider them.

10          And Attorney Baer's objection do have an objection

11  that they should be allowed to opt out via notice, rather

12  than motion, so I forgot -- there's a lot of them, okay --

13  but it does say that.  So, if you could put in the order that

14  those two objections, those parties, or actually, there's

15  probably three, there's three of them.  There's Nardello &

16  Co., Teris-Phoenix, and Post Oak Motors; those are the three

17  that have talked about, at least up to this point, that have

18  put in their written objections that they would like to opt

19  out by notice rather than motion.  I think that, actually,

20  the last objection may have the same thing, but we haven't

21  gotten to those yet.

22          Okay.  I am not agreeing that this means anyone

23  can do that.  That was the whole point; otherwise, what's the

24  point of today and the whole process?  The point was do what

25  we've done.  So it sounds like that issue will be resolved,

1   Attorney Baer, where your clients, your three clients, with

2   regard to those three objections will be carved out and have

3   a right to file a notice to opt out versus the motion, okay.

4              MR. BAER:  Thank you, Your Honor.

5              THE COURT:  Okay.  Thank you.

6              So, I think that addresses all of your objections;

7   is that correct?

8              MR. BAER:  I believe so, yes.  Thank you, Your

9   Honor.

10             THE COURT:  Okay.  All right.  Thank you.

11             Then final objections, I think, are Attorney

12  Sklarz, are your objections:  G Club Operations and Weddle

13  Law, 3098 and 3100 are the two objections that I -- are the

14  remaining -- that's the last I have, anyway.

15             MR. SKLARZ:  Yes, Your Honor.  I'll handle G Club

16  and --

17             THE COURT:  Oh, I'm sorry, someone else is

18  standing up.  Did you have another -- no, I apologize, right

19  behind you, behind the bench.

20             Did you have an objection, too, counsel?

21             MR. PESCE:  I have 3087.

22             THE COURT:  Which one?

23             MR. PESCE:  3087.

24             THE COURT:  For some reason I don't have 3087.

25  So, can you just hold on and then -- I appreciate that.

1          MR. PESCE:  No problem.

2          THE COURT:  Okay.  I'm sorry.  Thank you.

3          MR. SKLARZ:  Yes, thank you, Your Honor.  I will

4   handle G Club and (indiscernible) and Attorney Corbi, who are

5   local counsel for us, will handle Weddle.

6          THE COURT:  That's fine.  Good afternoon.

7          MR. SKLARZ:  And I'll let him go first because

8   he'll probably take all the wind out of my sail and then you

9   won't have to hear from me.

10         THE COURT:  Okay.  That's fine.  Thank you.

11         All right.  Counsel, would you just state your

12  name for the record please?

13         MR. CORBI:  Yes, Your Honor.  Richard Corbi on

14  behalf of Weddle Law PLLC.  My pro hac was drafted last week.

15  Also, we filed our objection to the mediation procedures and

16  we also filed our motion to dismiss the adversary proceeding

17  yesterday.  (Indiscernible) deadline, working off a different

18  order that was entered several weeks ago.

19         Given that I'm one of the last few people to speak

20  today, I think a lot of this has been addressed, but I think

21  to my objection, to the extent necessary, on stuff that has

22  not been resolved, the first point in the mediation

23  (indiscernible) -- and I'll just go through my objection,

24  I'm looking at page 4, Paragraph 13 -- the fist point of the

25  objection, there's a provision in Paragraph 2(d) that

1  provides for the service of the redacted avoidance complaint

2  as being good service of process; that's inappropriate in the

3  mediation.  Your Honor, we actually got to the point -- we

4  actually briefed our motion to dismiss we filed yesterday, so

5  to the extent the Court wants to make any decision about

6  whether that's deemed -- it can't be deemed a waiver of any

7  defendants by any avoidance action (indiscernible), Your

8  Honor.

9          THE COURT:  Okay.  Did you -- not any defendants.

10  Your defendant.

11          MR. CORBI:  Yes, my defendant.  I actually don't

12  care about everyone else, I just care about my client.

13          THE COURT:  I would assume that's the case.

14          So, I didn't look at your motion to dismiss.  You

15  raised an insufficiency of service to process in your motion

16  to dismiss?

17          MR. CORBI:  Yes.

18          THE COURT:  Okay.  I didn't know that you filed a

19  motion to dismiss, but that's fine.

20          MR. CORBI:  Well, what --

21          THE COURT:  S, you are saying you want, at least

22  with regard to your defendant, that's subparagraph -- that

23  paragraph 2, you're carved out because you don't agree with

24  it and you've already filed a motion to dismiss that raises

25  an insufficiency of service of process defense.

```
 1              MR. CORBI:  Yes.

 2              THE COURT:  Okay.

 3              MR. CORBI:  Inappropriate for a mediation

 4   procedures order.

 5              THE COURT:  Well, I don't know if I even need to

 6   get there, right.  If you have already raised it as a defense

 7   in your motion to dismiss, then you're protected, as far as

 8   raising it, correct?

 9              MR. CORBI:  Yes.

10              THE COURT:  And you can't be found to have waived

11   it if you've raised it as a defense.

12              MR. CORBI:  Yes, that's correct.  Yes, Your Honor.

13              THE COURT:  All right.  Go ahead.

14              MR. CORBI:  The next one was Paragraph ii(e),

15   little two, that was the partial stay (indiscernible).  We

16   spoke about that earlier, about an hour ago.

17              THE COURT:  Are you -- do you believe the way that

18   we've discussed Exhibits 3-A, 3-B and 4 address your

19   concerns?

20              MR. CORBI:  I think it does.  It's written

21   clearer, but I don't want to --

22              THE COURT:  I think that there is -- there was a

23   suggestion -- and maybe it was by Attorney Baer, I don't

24   remember now -- that that paragraph (l) maybe, that only

25   refers to Exhibit 4, should also include Exhibit 3-A and 3-B?
```

```
 1              MR. CORBI:  Yes.

 2              MR. BASSETT:  J, Your Honor.

 3              THE COURT:  J.  Exhibit J.

 4              I think, Mr. Bassett, you said that you were

 5    amenable to that.

 6              MR. BASSETT:  That's correct; we'll make a change

 7    to (indiscernible).

 8              THE COURT:  Okay.  So, that takes care of that.

 9              MR. CORBI:  That should deal with that.

10              THE COURT:  All right, go ahead.

11              MR. CORBI:  The next -- and I know you're going to

12    hate this, too -- but it's talking about the mediation panel.

13    I raised it, because you've seen in our objection, paragraph

14    2(k) -- yeah, paragraph 2(k) -- I understand where the

15    Trustee's counsel is coming from, (indiscernible), but if you

16    have 270 defendants, it is actually more manageable if

17    everybody who actually objected gets a say because

18    (indiscernible).  We want a law proposed that was actually

19    similar to what we've done in the Diocese of Buffalo case

20    where if there's a mediation panel, we suggest it be Judge

21    Tancredi and that's it because --

22              THE COURT:  Who determines the panel, you mean?

23              MR. CORBI:  Who determines the panel.  It should

24    just be Judge Tancredi to avoid unnecessary motion practice,

25    costs for my client, and costs to the Trustee by having
```

1  another hearing like this on whether person A or person B is

2  appropriate for the panel.  It should really just be Judge

3  Tancredi making that decision as it was done in the Diocese

4  of Buffalo case.

5           THE COURT:  Okay.

6           MR. BASSETT:  I thought we resolved that, Your

7  Honor.

8           THE COURT:  I thought we did too, but I could be

9  wrong because there's a lot of things we've been talking

10  about --

11           MR. CORBI:  I just want to be fair and --

12           THE COURT:  -- which is that you can propose, but

13  he can reject.

14           MR. DESPINS:  Your Honor, he's picking.

15           THE COURT:  Yes, he's picking the panel

16           MR. CORBI:  Your Honor, it just wasn't clear in

17  the draft that was filed.

18           THE COURT:  That's true, but they've agreed to

19  modify and amend the language.

20           MR. CORBI:  Yeah.

21           THE COURT:  Okay.

22           MR. CORBI:  The next issue we have is Paragraph

23  2(r).  This has been addressed a couple of times, but I just

24  wanted to say it for my own client's benefit, again, this

25  dovetails into the mediation panel and *ex parte*

1   communications.  If it's just --

2          THE COURT:  It's not an *ex parte* communication.

3   You are not talking to a Judge.  It's a Judge, but he's

4   acting as a mediator.

5          MR. CORBI:  I understand, but it should work both

6   ways that not only the Trustee, but also the defendants

7   should be able to speak to Judge Tancredi in his capacity as

8   a mediator.

9          THE COURT:  They are going to be able to.  Judge

10  Tancredi is going to run the mediation like he would any

11  mediation.  I'm sure there are -- I mean there's going to be

12  times when he is going to speak just to you, right?

13         MR. CORBI:  Agreed, yes.

14         THE COURT:  So then you can have whatever

15  communication you want to have with him when he speaks just

16  to you.  That is not an *ex parte* communication.  That is your

17  statement or representation of how you believe the case

18  should be held, the adversary proceeding should progress, or

19  what the mediation is, right.  That is going to happen.

20         So, I guess my point is on the *ex parte,* it isn't

21  *ex parte*, number one, because he's not a judge for these

22  purposes; he's a mediator, number one.  Number two, as I

23  said, he's going to want everybody to hold him harmless

24  anyway or he's not going to do it.  Number three, you are

25  going to have that opportunity.

1          MR. CORBI:  The next part was actually just raised

2     with the opt-out.  We had actually made that point in our

3     objection that it should be an opt-out without having to file

4     a motion.  Considering that we've already filed our motion to

5     dismiss yesterday and my clients received payments from the

6     non-debtor that is not in bankruptcy, my client's already

7     spent over $100,000 in legal fees in this case; he shouldn't

8     have to spend more.

9          THE COURT:  In this adversary proceeding?

10         MR. CORBI:  Well, and the mediation procedures

11    and --

12         THE COURT:  A $100,000 in the last month?

13         MR. CORBI:  Yes.

14         THE COURT:  Wow, okay.

15         MR. CORBI:  That is also our motion to dismiss

16    that we filed yesterday, but they've spent over $100,000 in

17    fees, you know, objecting to mediation and (indiscernible) as

18    a matter of law.

19         The next point I have is in paragraph 2(q).  This

20    may be -- I do recall having a conversation with United

21    States Attorney (indiscernible), Your Honor, regarding the

22    documents produced at mediation are not subject to discovery.

23         It should be -- we're not looking for testimony

24    from any mediator or settlement offers that were made

25    (indiscernible), documents that were produced (indiscernible)

1  as bank statements, if we could get that through the normal

2  avenues of discovery we should be able to get that and it

3  should be --

4           THE COURT:  Why?  It's mediation.

5           MR. CORBI:  If somebody produced bank statements

6  that go to the core of the issue and we don't settle and we

7  have to go to trial, I need to see those bank statements and

8  if somebody hides behind the shield that they're covered by

9  the mediation privilege, that's not what we're supposed to

10 do.

11          THE COURT:  Why?

12          MR. CORBI:  Because the -- mediation doesn't --

13 mediation rules aren't meant to cover documents --

14          THE COURT:  Right, but you can get them in

15 discovery in your adversary proceeding.

16          MR. CORBI:  Okay.  I just wanted that --  I

17 wanted --

18          THE COURT:  You can ask, right.  I mean that's the

19 whole point.  If you don't resolve this and you go through

20 your trial, your case, you have a right to discovery.

21          MR. CORBI:  That's true, and I was trying --

22          THE COURT:  So what's your point?  You want to not

23 have to make the discovery request?

24          MR. CORBI:  No, we will make the discovery

25 requests.  We just don't want to stonewalled because there

1  was a bank statement was produced in mediation; therefore,

2  the other side, the Trustee doesn't have to give it to me.

3           MR. BASSETT:  Your Honor, the documents that

4  already exist that happens to be shared with the mediator, if

5  that document was already discoverable prior to being shared,

6  it doesn't all of a sudden become cloaked in a mediation

7  privilege because we have mediation; we agree on that.  But

8  he can't use the mediation process to short circuit the

9  discovery process.

10          THE COURT:  I don't think that is what he is

11  saying.  That's why I asked him that question.  He is saying

12  he would still make a discovery request.

13          MR. BASSETT:  Sure.

14          THE COURT:  All he's saying is you can't say I

15  don't have to give it to you because you saw it in the

16  mediation.

17          Isn't that what you are saying?

18          MR. CORBI:  Yes, exactly.

19          MR. BASSETT:  But to be clear, the discovery

20  requests can't be, Give me those documents that you showed in

21  mediation.  Just request them the way you would request

22  them.

23          THE COURT:  He will.

24          MR. CORBI:  Yes, and that's what --

25          THE COURT:  That's what you all get paid for.

```
 1              MR. BASSETT:  But, Your Honor, the other point --
 2    I'm a little confused because he made a very clear point
 3    about saying his client is ligating, not mediating, and if
 4    he's opting out, which we'll give him that right, as we did
 5    the last party, I don't know why he has an issue.
 6              THE COURT:  You don't know why what?
 7              MR. BASSETT:  I don't know why we are looking to
 8    these other issues.
 9              THE COURT:  Well, because he had to raise them.
10    He had to raise them.  It's fine.  Don't worry, it's all
11    fine.  It'll all work out one way or another.
12              MR. CORBI:  I thought the Court directed that if I
13    wanted to be heard, I had to file an objection.
14              THE COURT:  Right.
15              MR. CORBI:  But if I didn't resolve something --
16              THE COURT:  No, I agree.  I agree.
17              MR. CORBI:  Thank you, Your Honor.
18              THE COURT:  That's fine. Go ahead.
19              MR. CORBI:  The final point, this is the
20    reservation of rights on the legal fees.  It's inappropriate
21    for the Trustee to seek equal sharing of the legal fees.  I
22    know you'd reserve that --
23              THE COURT:  You mean not legal fees, but the costs
24    of the mediation?
25              MR. CORBI:  Costs of the mediation, yes.
```

1          THE COURT:  Yes.  That issue has been reserved --

2          MR. CORBI:  Yes, so --

3          THE COURT:  -- because it may not be an issue.

4          MR. CORBI:  I wanted to have it for the record.

5          THE COURT:  Understood.

6          MR. CORBI:  The last point that is really

7   troubling and I don't know if its intentional by the Trustee,

8   but Paragraph 2(v), it's these bespoke sanctions procedures

9   that are put in place, via the order.

10         Now, I understand a non-mediation order is if you

11  act in bad faith or if you send someone who doesn't have

12  settlement authority or whatever to mediations, it should be

13  subject to automatic sanctions.  I think 2(v) should be

14  just --

15         THE COURT:  Well, it doesn't say, "automatic."

16  Where do you say -- it doesn't say, "automatic."  It says:

17         Where a mediator's report or an interim report

18  indicates non-compliance with mediation procedures the Court

19  may, without the filing of a motion by any party, schedule a

20  hearing to consider the appropriateness of sanctions against

21  a non-compliant party.

22         And it says that even -- and then it goes even

23  further:

24         Additionally, in cases of willful persistence or

25  egregious non-compliance, the Court may enter a default

1   judgment.

2            So, I don't think there's any -- maybe I am

3   missing something, but I don't see anything that is automatic

4   here.

5            MR. CORBI:  The way it reads is without having to

6   file a motion by any party, if they're going to --

7            THE COURT:  No, that says, "the Court."  It says,

8   "the Court may"; it doesn't say a party may.

9            It presumes that I read some report, right, a

10  mediator's report or an interim report that says somebody

11  failed to comply with the mediation procedures.  And then I

12  could say, you know, what, I think I am going to schedule a

13  hearing on that.  That's what it says.

14           MR. CORBI:  Okay.

15           THE COURT:  That's how I read it.

16           MR. CORBI:  The way I read it, it was self-

17  effectuating.

18           THE COURT:  Am I wrong?  Was that your intention?

19           MR. BASSETT:  It requires a hearing, Your Honor.

20           THE COURT:  No, but what I'm saying is you're not

21  telling -- you're not filing a motion.  This section is based

22  upon the Court determining that I could make that

23  determination myself; no one has to file a motion for

24  sanctions.

25           MR. BASSETT:  Based on the mediator's report, Your

 1  Honor could determine there's grounds to hold a hearing --

 2            THE COURT:  Right.

 3            MR. BASSETT:  -- and then make a determination

 4  based on the hearing.

 5            THE COURT:  Right.  There'd be no sanctions before

 6  a hearing.

 7            MR. BASSETT:  Or parties could file a motion,

 8  which --

 9            THE COURT:  Sure, the parties could file a motion,

10  but there'd be no sanctions before a hearing.

11            MR. CORBI:  It should be clearer in the order,

12  then.  It shouldn't be -- the way I read it is --

13            THE COURT:  Well, it says schedule a hearing to

14  consider the appropriateness.  It doesn't say impose

15  sanctions.  It says consider a hearing -- schedule a hearing.

16            So, I don't think -- I think I'm fine with that --

17            MR. CORBI:  Okay.

18            THE COURT:  -- the way it's worded.  I don't -- I

19  mean, I hear what you're saying, but I'm not persuaded that

20  that needs to be changed.  Okay?

21            MR. CORBI:  Okay.

22            MR. CORBI:  And those are all my points, Your

23  Honor.

24            THE COURT:  Okay.  Thank you.

25            Then I think what -- with regard to Weddle Law,

1  ECF 3100, you want to be carved out like -- and I apologize,

2  but Attorney Baer's three clients, I don't remember all their

3  names -- to file a notice to opt out, as opposed to a motion?

4         MR. CORBI:  Yes.

5         THE COURT:  And so, Attorney Bassett is going to

6  do that because he's going to do that with regard to Attorney

7  Baer's three clients.  And you put it in your objection, so

8  that will happen.

9         With regard to the insufficiency of service of

10  process, that's been addressed by the fact that

11  Paragraph 2(v) won't apply to this defendant, Attorney

12  Bassett, because they've already raised insufficiency of

13  service of property.

14         I didn't read the motion to dismiss, but that's

15  what counsel is telling me.

16         MR. LINSEY:  So, Your Honor, I just want to be

17  clear, Paragraph 2(v) was already in effect as part of the

18  avoidance action procedures that this Court previously

19  ordered, and governs the way that the Trustee served all

20  avoidance defendants.

21         THE COURT:  But it didn't say that it was a waiver

22  of raising an insufficiency of service of process; that

23  couldn't be.

24         MR. LINSEY:  No, the only -- my understanding is

25  the only version that counsel is taking issue with is that

1    the Trustee served the redacted complaints rather than --

2              THE COURT:  No --

3              MR. LINSEY:  -- the sealed complaints.

4              THE COURT:  -- no, no.  His issue is this -- at

5    least this is my understanding of it.

6              MR. LINSEY:  Right.

7              THE COURT:  I haven't read his motion to

8    dismiss -- he just told me he filed a motion to dismiss

9    yesterday -- and one of the grounds for seeking dismissal was

10   insufficiency of service of process.  And he's saying, if

11   2(v) stays in place, then you can argue that he's waived that

12   right to claim -- to assert an affirmative defense of

13   insufficiency of service of process in his motion to dismiss.

14             Isn't that what you're saying, Counsel?

15             MR. BASSETT:  Well, I think what Attorney Linsey

16   was saying, Your Honor, is that this exact language was

17   already --

18             THE COURT:  It may be, but he raised in his motion

19   to dismiss insufficiency of -- I don't believe that we had an

20   order in place that said no one can ever raise an --

21             MR. BASSETT:  No, of course not --

22             THE COURT:  -- insufficiency of service of

23   process.

24             MR. BASSETT:  -- of course not, Your Honor.  All

25   the provision clarifies is that because we have this

1  challenge of this protective order being in place, which

2  required us -- we had no choice -- but to serve our

3  complaints with certain of these -- just the exhibit that

4  lists the (indiscernible) is redacted -- all the prior order

5  that was in effect says is that it is -- it is sufficient to

6  serve that redacted version of the complaint --

7          THE COURT:  Right.

8          MR. BASSETT:  -- in accordance with the rules.

9  So, to the extent that -- and I honestly have not reviewed

10  his motion to dismiss, but to the extent that the argument in

11  the motion to dismiss is that service is insufficient because

12  of the redactions, then I think that has already been --

13          THE COURT:  Well --

14          MR. CORBI:  Then I would move to reconsider

15  under 60(b).

16          THE COURT:  Well, hold on, wait a minute.  So

17  you're moving for insufficiency of service of process because

18  the exhibit was under seal, not because they didn't serve you

19  properly?

20          MR. CORBI:  Yes.  You have to know it and --

21          MR. BASSETT:  (Indiscernible) -

22          MR. CORBI:  -- well, there are many things on why

23  we're looking to dismiss a complaint -- a 549 complaint

24  against a non-debtor.

25          MR. BASSETT:  I figured we might be talking past

1  each other.

2          MR. CORBI:  But that's one of the points, you have

3  to put some on notice.  You have to see the schedule that

4  they're being subject to.

5          THE COURT:  That's not insufficiency of service of

6  process, that's -- you're saying -- that's a 12(b)(6) motion,

7  you failed to state a claim upon which relief can be granted

8  because you don't even know what the relief is.  That's a

9  different motion than insufficiency of -- that's different

10 grounds under 12 -- Rule 12 --

11         MR. CORBI:  Well, we have a lot of

12 (indiscernible) --

13         THE COURT:  -- that's insufficiency of service of

14 process.  Insufficiency of service of process means you

15 didn't get served.

16         You did get served.

17         MR. CORBI:  You have to get served the whole

18 complaint, you have to --

19         THE COURT:  You did get served with a whole

20 complaint, but it was redacted because of a prior order.

21         You have a ground under 12(b) to argue that that

22 still doesn't state a claim, but that doesn't state a claim

23 because you can't grant relief on something -- you can't

24 respond, you can't respond to the complaint because you don't

25 even know what it is that they're alleging your client got.

1  That's a different -- that's not insufficiency of service of

2  process, I don't think.  I mean, that could be -- that's new,

3  if it is, I'll have to see, but, you know, maybe it is.

4        MR. BASSETT:  Your Honor, and the other point I

5  would just make is that any time a defendant -- and we've had

6  this conversation with a number -- I mean, hundreds, maybe,

7  of defendants -- if they've had a redacted exhibit, they got

8  served with a complaint, the first thing they did is they

9  reached out to us and said, hey, how do I get a copy of that

10 unredacted exhibit?

11       I'd say, Hey, no problem.  Here's your copy of the

12 protective order.  Sign that and we'll send it to you.  We've

13 done that, and now they're evaluating it and they'll respond

14 accordingly.

15       His tactic apparently was to make the service --

16       THE COURT:  Well, I don't -- I don't -- it's not a

17 tactic, don't -- I don't want to go there, it's not

18 necessary, okay?

19       But I don't think you're going to win on that, if

20 it's insufficiency of service of process because -- well,

21 maybe you have a case that says that, I don't know.

22       MR. CORBI:  Well, there's a myriad of issues as to

23 why this complaint needs to be dismissed --

24       THE COURT:  Yeah, but that's a different -- the

25 insufficiency of service of process issue, what was in 2(v)

1  is what Attorney Linsey and Attorney Bassett are saying you

2  can't come before the Court and say because you've got a

3  complaint with a redacted exhibit, you didn't get service.

4  That's a different -- that's a different argument than what

5  you're making, which is you've got a complaint to which you

6  can't respond because you don't even know what the allegation

7  is.

8          MR. CORBI:  I'd just like to give one comment on

9  the protective order.  When we asked for a protective

10  order -- again, I think another objector said it was

11  overreaching  -- we had to do several rounds of revisions for

12  our markups like this order in order to eventually -- to

13  eventually (indiscernible) a protective order.

14          THE COURT:  And you know why?  Because there's 275

15  adversary proceedings and there's been a protective order in

16  place for a year and a half or more.  Okay?

17          MR. CORBI:  I understand.

18          THE COURT:  And I hear you, I understand your

19  point.  Okay?  But there's a way we can all figure it out.

20  Okay?

21          But I think you have to -- Attorney Bassett, with

22  regard to 2(v), I think we just need to acknowledge on the

23  record at some point that 2(v) was meant to address an issue

24  that, if someone claimed that they weren't served properly

25  because the exhibit was redacted, that's not an argument

1    that's going to win in this court.  Okay?

2              What would win, an insufficiency of service of

3    process, is if Weddle Law was served at the Smith Law Group.

4    Okay?  And then they never got service.  That would win,

5    right?  That's not what -- we're talking about two different

6    things.

7              So I think 2(v) is different, Counsel, than what

8    you're arguing.  I think you have -- you know, a court can

9    take a Rule 12 motion and decide it how it thinks

10   appropriate.  If you are saying the case should be dismissed

11   because you can't even respond, there's other parts -- it's

12   not just 12(b), there's other parts of Rule 12 you could rely

13   on --

14             MR. CORBI:  We've argued many grounds to dismiss

15   the complaint.  I just didn't want to have any waiver

16   arguments thrown in my face.  That's really the point.

17             THE COURT:  Well, I think the waiver argument

18   is -- your way that you're talking about two different things

19   being waived.  He's -- Attorney Bassett is saying you can't

20   come in and say to me -- you can't say to the Judge you

21   should dismiss my cause of action because you attached a

22   redacted exhibit; that's what he's saying.  You're saying,

23   yeah, I shouldn't be bound by that because I don't even know

24   what I'm being sued for.  Those are two different things.

25   Insufficiency of service of process means you weren't

1  properly served; it doesn't mean that you can't respond to

2  the complaint.

3           MR. CORBI:  And we've made several

4  (indiscernible) --

5           THE COURT:  Okay.

6           MR. CORBI:  As to the 549, I'm not getting a

7  payout from the non-debtor.

8           THE COURT:  So I'm just letting you know, okay,

9  with regard to 2(v) --

10           MR. CORBI:  Okay.

11           THE COURT:  -- the purpose of that provision was

12  that it would not be a successful ground to defeat the

13  complaint in a motion to dismiss to say that what you were

14  served with included a redacted exhibit.  If that's your

15  basis, you lose.  Okay?

16           MR. CORBI:  Okay.

17           THE COURT:  But you seem to have other bases,

18  you're telling me.  So --

19           MR. CORBI:  We have a lot --

20           THE COURT:  -- we'll address those in the ordinary

21  course.  Okay?

22           MR. CORBI:  That's a little hard hearing it.

23           THE COURT:  All right.  Then I think everything

24  else has been addressed with regard to your objection.  We --

25  do you think there's anything else that needs to be --

1    MR. CORBI:  No.  I have the reservation of rights

2  on the fees; we've already discussed that.

3    THE COURT:  So the costs of --

4    MR. CORBI:  Yeah, and the costs --

5    THE COURT:  -- and that's going to be addressed

6  with prior -- with new language --

7    MR. CORBI:  Yes.

8    THE COURT:  -- okay?

9    All right.  Attorney Bassett, do you have anything

10  further with regard to Weddle Law?  I think we've addressed

11  all of the bases of objections set forth in Counsel's

12  objection.

13    MR. BASSETT:  No, Your Honor.  I did have a

14  question before Attorney Sklarz starts, but nothing further

15  with --

16    THE COURT:  Go ahead.

17    MR. BASSETT:  So I believe -- and Attorney Sklarz

18  can correct me if I'm wrong -- but I believe he said he was

19  here representing G Club and Pillsbury, and, given the hour

20  of the day, I just wanted to make two observations.  The

21  first is, both G Club and Pillsbury are on Exhibit 4, which

22  means they are excluded from mediation.  So I'm not,

23  therefore -- unless he's going to say he wants back in, I'm

24  not sure why we would -- and we don't want them back in.  The

25  Trustee has affirmatively put them on Exhibit 4 because we

1  don't intend to mediate with them, so there's not going to be

2  an agreement on mediation, so I don't know why we would --

3  you know, why these clients would have issues with the

4  procedures, number one.

5           Number two, I don't believe Pillsbury -- I could

6  be wrong -- but I don't believe Pillsbury filed an objection.

7  I think the objection was only filed on behalf of G Club,

8  which again, is part of Exhibit 4.

9           THE COURT:  I didn't see an objection filed by

10 Pillsbury either.  I could have missed it, so Attorney -- I

11 think that you're all set right now on Weddle Law.  You can

12 stay at counsel table, you don't have to move, but I think

13 we're going to talk about these other --

14          MR. BASSETT:  I didn't want to be rude while these

15 guys were talking --

16          THE COURT:  Thank you, I appreciate that.

17          MR. SKLARZ:  We've had so many -- we've had so

18 many filings and, honestly, Your Honor, I've been on trial

19 for a bit, so I'm not a hundred percent sure of everything

20 that's involved, but I take Attorney Bassett's statement that

21 there hasn't been a Pillsbury motion filed.  Again, we filed

22 objections because we were ordered to file objections, and I

23 commend counsel, we spent a lot of time negotiating through

24 this, and I think there's been a lot of changes, but one of

25 the items in here that if the parties want to mediate, these

1  are the orders that will apply to a mediation.

2          Everything we've raised in our objection has

3  been -- has been raised, so I'm not going to go over

4  everything again.  All I wanted to point out is that in

5  paragraph D -- 2(v), which is the sanctions provision that

6  Attorney Corbi pointed out, it does -- it is very different

7  than any of the mandatory mediation orders or any of the

8  mediation orders I've seen, particularly out of Delaware,

9  Southern District -- I've seen a lot of these mediations --

10 and on -- I'm looking specifically at page 76.

11         And this language has been in there since the

12 beginning, it's the second-to-last sentence -- or, I'm sorry,

13 the second- and third-to-last sentence before the redline.

14 It just makes me -- again, it makes me queasy that if a party

15 wants -- in mediation and reaches a point where they don't

16 want to settle for any reason other than they want to

17 litigate, that there seems to be ability to go to court and

18 say, We didn't resolve the mediation and now we're having a

19 fight over the meaning of good faith.

20         THE COURT:  Now we have to fight over what?

21         MR. SKLARZ:  The meaning of whether -- whether the

22 negotiation itself was in good faith.

23         I don't have an issue with -- if Judge Tancredi

24 issues a report saying the party didn't act in good faith,

25 yeah, Your Honor should have a show-cause hearing, but to

1 have an adversarial type between the two parties saying, You

2 didn't negotiate in good faith.

3          Yes, I did.

4          How do we ever resolve that?  It's just -- again,

5 these issues don't come up frequently.  I don't want to -- I

6 don't think it needs too much --

7          THE COURT:  But what are you looking at?  I don't

8 know what language you're looking at (indiscernible) --

9          MR. SKLARZ:  It says, "Additionally, if any party

10 to the mediation proceeding is not attempting to schedule or

11 resolve the mediation in good faith."

12          Okay, if there's a mediation order and you're

13 refusing to schedule it; yeah, you should be sanctioned.  But

14 I don't know what "resolved in good faith" means.  Does that

15 mean I say I know you're suing me for $100 million, but I

16 will offer you a thousand dollars because that's -- because I

17 want to go to trial here?  I don't think that would be bad

18 faith, but I don't know.  That's -- that's the concern.

19          THE COURT:  Attorney Bassett, do you have any

20 response to that; other than, I know what you're going -- I

21 understand your point that they're not going to be subject to

22 mediation, so --

23          MR. BASSETT:  So, yes, Your Honor, they're not

24 going to be subject to mediation, but taking the argument at

25 face value, I think it's addressed by the last sentence,

1  which, frankly, is one of the other comments I believe that

2  Attorney Sklarz had raised, is just to make clear that

3  failure to reach a settlement in and of itself cannot be

4  grounds for sanctions.  If there is a lack of good faith that

5  has been exhibited by a party in mediation, then, yes, the --

6  another party can move the Court for sanctions.

7          And as Attorney Linsey just pointed out to me,

8  this identical language was just entered by the Southern

9  District of New York Bankruptcy Court in the Revlon case just

10 law month.  So this --

11         THE COURT:  The "failure to achieve settlement";

12 is that what you're talking about, or the "Additionally, if

13 any party" language?

14         MR. LINSEY:  No, it's the mediator shall

15 (indiscernible) party in the mediation is not attempting to

16 schedule or resolve in good faith (indiscernible) --

17         MR. BASSETT:  Right, the language that he read

18 saying that if there's an issue with a party not attempting

19 to schedule or resolve in good faith; that language was

20 entered in that order, correct?

21         MR. LINSEY:  Correct.

22         MR. BASSETT:  And I guess I don't understand --

23         THE COURT:  Well, you know what I think about that

24 actually, honestly -- I understand your point, okay, and I

25 understand what your point is, Attorney Bassett, but the

174

1  Court will address it in and when -- if and when it comes
2  forward to the Court, right?  And you'll be able to raise any
3  issues you think are appropriate, assuming you're even part
4  of this, which you're not at this point.
5        MR. SKLARZ:  Yeah, and I'm just trying to make the
6  Court aware of this --
7        THE COURT:  Understood --
8        MR. SKLARZ:  -- issue, Judge, --
9        THE COURT:  -- understood.
10       MR. SKLARZ:  -- and that's all I have.
11       THE COURT:  Okay, all right, that's fair.
12       So with regard to -- now, we just have one more
13  objection that I didn't have for some reason and I'm not sure
14  why, but I just probably missed it because there were so
15  many.  It was 3087, Counsel, did you say?
16       MR. PESCE:  3087, Your Honor.
17       THE COURT:  By Attorney Pesce, yes.
18       All right.  Let me just take a look at it -- I
19  apologize -- because I don't have it at the moment, so you'll
20  have to give me a moment, if you don't mind.  And I'll just
21  have you note your name for the record and whom you represent
22  for the courtroom deputy, please.
23       MR. PESCE:  Yes, Your Honor, Matthew Pesce, 3
24  Columbus Circle.
25       (Pause)

```
 1              THE COURT:  Is 3 Columbus Circle one of the
 2    parties that is on 3(a) or 4?  No?  I don't know.  I have no
 3    idea, I'm just --
 4              MR. PESCE:  It is not.
 5              THE COURT:  Okay.  So are you just the landlord;
 6    is that what you're telling me?
 7              MR. PESCE:  Yes --
 8              THE COURT:  I don't mean "just the landlord,"
 9    but  --
10              MR. PESCE:  -- the tenant.
11              THE COURT:  I haven't read this until now, so I
12    apologize.
13         (Pause)
14              So one of your issues is the costs borne by the
15    estate, and that issue, I think, Counsel, has been addressed
16    today insofar as everyone is going to have a reservation --
17    all objecting parties are going to have a reservation of
18    rights with regard to cost of mediation and there may -- it
19    may not become an issue if Judge Tancredi is able to mediate
20    all of the matters without any other mediators being
21    involved.
22              MR. PESCE:  Yes, Your Honor, that would be the
23    ideal scenario.  The only thing I would want to flag for the
24    Court and for the Trustee's consideration with respect to
25    2(u), which I believe is the relevant provision that deals
```

1  with the mediation fee, is that the current paragraph deals

2  with a process for objecting to the initial mediation fee,

3  which I believe kind of pertains to the reservation of

4  rights, but it does not contain a procedure for objecting to

5  any subsequent fee associated with the mediation, which could

6  become relevant in the scenario where there's bucketing, and

7  say a defendant who's dragged along into a bucket where the

8  mediation pertained to that specific defendant, may be much

9  shorter and discrete, but because of its placement within a

10 larger group, could result in a longer period of mediation

11 regarding those issues that are pertinent to the group, in

12 which case we'd hope that the Trustee might (indiscernible)

13 come up with a procedure that could deal with the allocation

14 issue in that scenario, but, again, understanding that it's

15 entirely dependent on their being --

16           THE COURT:  Okay, I understand your point.  So I

17 think it's noted for the record and I think the Trustee will

18 consider that if and when we get to that point, but I

19 understand your point, I do.

20           MR. PESCE:  With respect to their first point

21 regarding the Trustee's designation and whether or not the

22 action against 3 Columbus Circle should be stayed, that has

23 been resolved and after a conference with the Trustee.  So we

24 will withdraw that on the record today.

25           THE COURT:  Okay.  Thank you, Counsel, I

1  appreciate that.

2          MR. PESCE:  The only --

3          THE COURT:  Anything else that you raised in your

4  objection?

5          MR. PESCE:  Nothing raised in the objection, but

6  this issue has come up in various ways throughout the day

7  today regarding 2(m), the opt-out provision, and the

8  corresponding kind of other side of the coin regarding

9  sanctions.  We're hoping just to get clarification that 2(m),

10  which I just will (indiscernible) the opt-out provision, it

11  doesn't seek to act as some kind of waiver of rights in the

12  event that a party elects not to try to -- or elects not to

13  terminate the mediation procedures, essentially reserving all

14  rights to challenge the validity of the action and whether it

15  should have been brought in the first place if the mediation

16  is ultimately unsuccessful.

17          THE COURT:  Well, I don't -- I don't read

18  paragraph M as -- and I'll ask Attorney Bassett -- as

19  limiting any rights that a defendant would have to raise in

20  accordance with a responsive pleading to a complaint.

21          Can you, Attorney Bassett?

22          MR. BASSETT:  Certainly not, Your Honor, and if

23  the mediation process terminates, I think it's very clearly

24  contemplated that a party may move to dismiss and raise any

25  and all arguments for dismissal that it deems appropriate.

1          THE COURT:  I think that's -- so that's

2    clarification, I hope.

3          MR. PESCE:  Yes, that is, Your Honor.  Thank you.

4          THE COURT:  And then is there any other matter

5    that you would like to have clarified?

6          MR. PESCE:  Those are the only ones.

7          THE COURT:  All right, then I appreciate that.

8    Thank you.

9          So with regard to all of the objections we've

10   heard today, I've tried to be very careful on the record

11   about what was either overruled or going to be resolved by

12   the parties, or that is not essentially ripe yet, until the

13   mediation procedures are in place and Judge Tancredi starts

14   the mediation process.

15         It does seem to me, Attorney Bassett, that you're

16   going to have to make some changes to this second revised

17   order.

18         How much time would you like to do that?

19         MR. BASSETT:  Well, I think, unless somebody else

20   at my table corrects me, we've tried as fast as possible to

21   capture everything, but if we could get the transcript first,

22   that might be helpful.  I think, after we've seen the

23   transcript, we could very quickly turn the comments.  It

24   wouldn't take a long --

25         THE COURT:  The reason I asked the question is not

1  so much that I need to know a time, per se, it's does it

2  change the May 15 deadline in your order, which I think was

3  in paragraph -- I forget what paragraph it was in now -- if

4  you give me a second -- when you would start making mediation

5  referrals, I believe.

6          I guess it doesn't because it's -- it's keyed off

7  of appearances, I think.

8          MR. BASSETT:  I don't think it would, Your Honor,

9  but we may need to think about that on our side.

10         THE COURT:  I'm just trying to find it and see if

11 I think it does, but --

12     (Pause)

13         THE COURT:  It probably doesn't, but if you need

14 to change that date, I would assume you'd be only changing it

15 by a few days or a week.

16         MR. BASSETT:  I think that's right, Your Honor.

17 My initial reaction is that it wouldn't need to change given

18 that we have plenty of time, but we'll consider that further.

19         THE COURT:  All right.  Well, today is Tuesday.

20         Do you think you will have the revised order in

21 before the end of this week or next week?  Again, I'm not --

22 whatever works, I'm just asking the question.

23         MR. BASSETT:  So my understanding for the

24 transcript, it usually takes 48 hours, so I think it would be

25 helpful for us to just have that in hand when we're making

 1  other revisions to make sure we don't miss anything.

 2           THE COURT:  So, well, how about a week from today,

 3  if not sooner?  You can always get it in sooner.

 4           MR. BASSETT:  Yeah, that would be --

 5           THE COURT:  Okay?

 6           MR. BASSETT:  -- that would work, Your Honor.

 7           THE COURT:  All right.  There's nothing stopping

 8  that from happening, and sometimes it actually does happen,

 9  so then I -- then what I would note for the record is that

10  with regard to the Trustee's motion for an order to modify

11  avoidance action procedures, to include procedures for

12  mediation of avoidance actions, which is ECF Number 3003, and

13  then the order that the Court entered setting today's hearing

14  on the mediation procedures and setting the dates by which

15  objections were filed, all of the objectors that were timely

16  filed were heard, the Court made rulings in accordance with

17  the objections that needed to be ruled on, many of which --

18  some of which were resolved by the parties and will be set

19  forth in the revised proposed order that will be submitted on

20  or before May 7, then the Court believes all the objections

21  have been either overruled, resolved by agreement, or are not

22  ripe at this time and will be addressed when and if they

23  become ripe.  And, for all those reasons, the motion for an

24  order modifying procedures is granted.  Then the revised

25  proposed order will be submitted on or before May 7th.

1          Is there anything else we need to address this

2   afternoon?

3          MR. DESPINS:  Your Honor, if I may, just a two-

4   minute update.  And may I approach?

5          THE COURT:  Certainly.

6          MR. DESPINS:  So, Your Honor, I just wanted to

7   tell the Court that there should be a motion coming in -- if

8   not tomorrow, the day after tomorrow -- regarding the Sherry

9   Netherland.  This never ends, but, as you know, there's an

10  affected area where the fire was.  The work is ongoing there

11  to clean that up and to deal with all that, but it was

12  discovered that even though there was a major cleanup of the

13  rest of the apartments probably seven months, eight months

14  ago, which was paid by AIG, consensually, it's apparent that

15  there is soot or ash in between the ceiling and the cement, I

16  guess, part of the ceiling, and where the wires are or the

17  pipes are, and we need to bring down the ceilings and clean

18  all of that up.

19          And so, therefore --

20          THE COURT:  The co-op is not responsible for that?

21          MR. DESPINS:  Pardon me?

22          THE COURT:  The co-op is not responsible for that?

23          MR. DESPINS:  Well, the co-op -- this is just

24  really technical, but we're responsible for the ceiling and

25  everything above the ceiling until we reach the concrete.

1          THE COURT:  Oh, okay.

2          MR. DESPINS:  They're responsible for the concrete

3   and they're going to pay something like $250,000 for their

4   part of that job, but we have to -- we're trying to reduce

5   the costs.  We have to pay a substantial amount of money to

6   get that work done; otherwise, we'll always be in a cycle

7   where it keeps being re-circulated in the apartment.

8          In addition to that, we need to move all the

9   furniture out of the apartment and to get rid of bedding,

10  sheets, and all the soft goods because there's still soot in

11  there.  Because there's no point in cleaning up if this stuff

12  is still there.  We need to really clean house.

13         So, therefore, we're going to file a motion and

14  we're going to ask for expedited consideration of that, Your

15  Honor, because the idea is that that process should take

16  place at the same time that the other work is being

17  undertaken, so that we're able to actually come to a point

18  where we can sell this apartment and as soon as possible.  It

19  still will take a few months, several months.  So that's the

20  report on -- it's a complicated process.

21         THE COURT:  Obviously, the parties that have --

22  claim an interest in the apartment will have to have notice

23  and an opportunity to be heard.

24         MR. DESPINS:  Yes.  So we're obviously --

25         THE COURT:  You're talking about furniture and

1   anything --

2            MR. DESPINS:  Yes, so -- but we're not --

3            THE COURT:  You're going to store it somewhere?

4            MR. DESPINS:  Yeah, we're going to store it.

5        So the furniture itself -- the bedding, I think

6   it's just going to be -- and the sheets are going to be

7   thrown out, but -- and the mattress is going to be thrown

8   out, but the furniture is going to be moved to a warehouse

9   that we're already occupying with the HCHK equipment and

10  other furniture that was in the New York City place.  And

11  we're going to segregate the two so that we know that this

12  came from the Sherry Netherland, this HCHK, so there will be

13  like a -- not a real wall, but there will be like a partition

14  there to make sure that we keep track of that, but that

15  furniture will be moved to that area.

16           The reports we're getting is that the furniture is

17  not -- this is not real antiques; it is like --

18           THE COURT:  Well, isn't it damaged by the fire?

19           MR. DESPINS:  Well, no.  Some of it was completely

20  destroyed by the fire, but the rest is not damaged, but the

21  value of that would not be more, let's say, than a hundred

22  thousand, $200,000.  It's not real antiques; it's like

23  antiques that you can buy, you know, regular people can buy.

24           So, but we're going to move the furniture, but,

25  obviously, we're giving notice to AIG.  They already know

1    because we're going to seek -- we're going to tell them that

2    we want them to pay for that because we're -- I'm talking now

3    about the clean-up process because it's, you know, caused by

4    the fire, and, you know, to be continued on that.

5            THE COURT:  Okay.  Thank you.

6            MR. DESPINS:  Thank you, Your Honor.

7            THE COURT:  All right, I believe, unless someone

8    feels otherwise, that concludes the hearing today in the Kwok

9    matter and in the adversary proceeding 23-05013.

10           Anyone disagree with that?

11        (No verbal response)

12           THE COURT:  Okay, thank you all.  Then Court is

13   adjourned.

14           COUNSEL:  Thank you, Your Honor.

15        (Proceedings concluded at 5:02 p.m.)

<pre>
 1                          CERTIFICATION
 2          We certify that the foregoing is a correct
 3   transcript from the electronic sound recording of the
 4   proceedings in the above-entitled matter to the best of our
 5   knowledge and ability.
 6
 7   /s/ Mary Zajaczkowski                 April 29, 2024
 8   Mary Zajaczkowski, CET-531
 9   Certified Court Transcriptionist
10   For Reliable
11
12   /s/ Tracey J. Williams               April 25, 2024
13   Tracey J. Williams, CET-914
14   Certified Court Transcriptionist
15   For Reliable
16
17   /s/ Coleen Rand                      April 25, 2024
18   Coleen Rand, CET-341
19   Certified Court Transcriptionist
20   For Reliable
21
22
23
24   1
25
</pre>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25