```
 1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF CONNECTICUT
 2                        BRIDGEPORT DIVISION

 3
       IN RE:                        .  Chapter 11
 4                                   .  Case No. 22-50073 (JAM)
       HO WAN KWOK, et al.,          .
 5                                   .  (Jointly Administered)
                                     .
 6                                   .  Courtroom 123
                                     .  Brien McMahon Federal Building
 7            Debtors.               .  915 Lafayette Boulevard
                                     .  Bridgeport, Connecticut 06604
 8                                   .
                                     .  Monday, June 10, 2024
 9     . . . . . . . . . . . . . . . .  1:06 p.m.

10                        TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE JULIE A. MANNING
11                  UNITED STATES BANKRUPTCY JUDGE

12     APPEARANCES:

13     For the Chapter 11
       Trustee:                      James C. Graham, Esquire
14                                   NEUBERT PEPE & MONTEITH, P.C.
                                     195 Church Street
15                                   13th Floor
                                     New Haven, Connecticut 06510
16
                                     -and-
17
                                     Luc A. Despins, Esquire
18                                   PAUL HASTINGS, LLP
                                     200 Park Avenue
19                                   New York, New York 10166

20     Audio Operator:              Electronically recorded

21     Transcription Company:       Reliable
                                     The Nemours Building
22                                   1007 N. Orange Street, Suite 110
                                     Wilmington, Delaware 19801
23                                   Telephone: (302)654-8080
                                     Email:  gmatthews@reliable-co.com
24
       Proceedings recorded by electronic sound recording,
25     transcript produced by transcription service.
```

APPEARANCES (CONTINUED):

For the U.S. Trustee:        Holley L. Claiborn, Esquire
                             OFFICE OF THE UNITED STATES TRUSTEE
                             The Giaimo Federal Building
                             150 Court Street, Room 302
                             New Haven, Connecticut 06510

For Pacific Alliance
Asia Opportunity Fund:       Annecca H. Smith, Esquire
                             ROBINSON & COLE, LLP
                             270 Trumbull Street
                             Hartford, Connecticut 06103

                             -and-

                             Stuart M. Sarnoff, Esquire
                             O'MELVENY & MYERS, LLP
                             1301 Avenue of the Americas
                             Suite 1730
                             New York, New York 10019

For Lamp Capital, LLC:       Robert J. Grand, Esquire
                             LAX & NEVILLE, LLP
                             350 Fifth Avenue
                             Suite 4640
                             New York, New York 10118

For Merrill Lynch:           Shawn R. Fox, Esquire
                             MCGUIRE WOODS, LLP
                             1251 Avenue of the Americas
                             20th Floor
                             New York, New York 10020

For the Official
Committee of
Unsecured Creditors:         Jonathan A. Kaplan, Esquire
                             PULLMAN & COMLEY, LLC
                             90 State House Square
                             Hartford, Connecticut 06103

3

1                                    INDEX

2  MOTIONS:                                              PAGE

3  Matter
   No. 3203   Motion for Order Approving Liquidation of VCTR    5
4             Shares, Distribution of Proceeds, and Related
              Relief Filed By Patrick R. Linsey on behalf of
5             Luc A. Despins, Chapter 11 Trustee

6             Court's Ruling:                              32

7  Transcriptionist's Certificate                          33

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 1:06 p.m.)

2               THE CLERK:  22-50073, Ho Wan Kwok.

3               THE COURT:  Good afternoon.

4               If we could have appearances for the record,

5    please, starting with the Chapter 11 Trustee.

6               MR. DESPINS:  Good afternoon, Your Honor.  Luc

7    Despins, Chapter 11 Trustee.

8               THE COURT:  Good afternoon.

9               MR. GRAHAM:  Good afternoon, Your Honor.  James

10   Graham from Neubert Pepe & Monteith, on behalf of the

11   trustee.

12               THE COURT:  Good afternoon.

13               MS. CLAIBORN:  Good afternoon.  Holley Claiborn

14   for the U.S. Trustee.

15               MR. SARNOFF:  Good afternoon, Your Honor.  Stuart

16   Aronoff from O'Melveny & Myers, on behalf of creditor, PAX.

17               MS. SMITH:  Good afternoon, Your Honor.  Annecca

18   Smith, Robinson & Cole, Connecticut counsel for creditor PAX.

19               THE COURT:  Good afternoon.

20               MR. KAPLAN:  Good afternoon, Your Honor --

21               MR. GRAND:  Good afternoon, Your Honor.  Robert

22   Grand from Lax & Neville, on behalf of Lamp Capital.

23               THE COURT:  Good afternoon.

24               MR. KAPLAN:  Good afternoon.  Jonathan Kaplan, of

25   Pullman & Comley, on behalf of the Committee.

1              THE COURT:  Good afternoon.

2              MR. FOX:  Good afternoon, Your Honor.  Shaun Fox

3    from McGuire Woods, LLP, on behalf of Merrill Lynch.

4              THE COURT:  Good afternoon.

5              I think, Attorney Fox, you do not have an

6    appearance, but my understanding is you would like to observe

7    the hearing, since the matter at hand may involve some action

8    on behalf of Merrill Lynch; is that correct?

9              MR. FOX:  That is correct, Your Honor.  We're the

10   custodian of the securities at issue.

11             THE COURT:  Okay.  Thank you.

12             All right.  Trustee Despins, this is your motion,

13   so go right ahead.

14             MR. DESPINS:  Yes, Your Honor.  Thank you.

15             Your Honor, on May 21st, we filed a motion to

16   approve various things relating to an LP interest that Lamp

17   Capital had in the fund called "Reverence Fund."  That's at

18   Docket 3203.

19             And, basically, we learned of this position that

20   Lamp Capital had in the Reverence Fund after litigation was

21   commenced on February 15th or so, against Reverence Capital,

22   the manager of the fund, for the receipt of funds from some

23   of the debtors' alter-egos.  But to make a long story short,

24   they told us, Hey, the Lamp Capital is a limited partner in

25   the fund and has various rights that you should know about.

1          And through their collaboration, we have

2    essentially, or Lamp Capital has two types of rights *vis-a-*

3    *vis*, the Reverence Fund.  One, it has these shares, and

4    that's the principal part of the motion, the VCTR shares,

5    which are publicly traded; actually, a number of shares,

6    with 55,383.  Plus, it has cash around $700,000 -- $715,000,

7    I should say.

8          And in addition to that, Lamp Capital has a

9    limited partner interest that's kind of a less-liquid

10   ownership right, which gives it, Lamp Capital, the right to

11   receive distributions as the fund gets wound down and assets

12   of the funds are being disposed of.

13         And, obviously, we wanted to deal with this, both

14   aspects of this, the shares, the cash, and on the other hand,

15   the continuing limited partnership interest in the fund, so

16   we filed this motion, essentially, to get authorization to

17   sell the shares.  And there's a mechanism that's reflected in

18   the order where Reverence Capital, as the manager, would give

19   the notice to Merrill Lynch to sell the shares, but,

20   basically, the trigger would be the entry of this order.  I

21   will come back to that provision, because we may want to make

22   slight technical modifications about that, but let's park

23   that issue aside for now.

24         But, essentially, we're seeking authorization to

25   sell the shares or to have the shares sold by Merrill Lynch,

1   at the direction of Reverence Capital, pursuant to this

2   order, and the proceeds transferred to the trustee, and the

3   same thing for the $715,000.  In addition to that, we're

4   seeking an order from the Court approving the trustee's

5   decision to keep the limited partnership interest in place

6   and I'll explain why we're doing this.

7           We actually investigated, because cash is king, we

8   would like to get as much cash as we can, but we have

9   investigated various possibilities of selling and disposing

10  of the limited partnership interests, which would require

11  some legal work, heavy lifting, which would be costly, and we

12  would ask to dispose of this, likely, at a discount, because

13  this really gives you the right to receive future

14  distributions, as no immediate distributions are due.

15          And on behalf, my decision was that we're better

16  off holding that part of the limited partnership interests

17  for the future because the fund is likely to wind-down in the

18  next two years or so.  There's no set date, but our

19  estimation is it's going to wind-down in the next two or

20  three years or so and, therefore, it's better to hold on to

21  the limited partnership interests, and we're seeking the

22  Court's blessing of that decision.

23          So that's to set the stage.  By the way, the VCTR

24  shares, as I said, are publicly traded.  In the motion, we

25  said they were trading at $52 a share.  Right now, they're

1  traded at $49 a share, or so, so they're going -- and they

2  were up to, I want to say $54, perhaps $56 a share after we

3  filed the motion.  So this is a stock that, you know,

4  fluctuates a lot and, obviously, that's one of the reasons to

5  sell it on the public market, but also, we should not be in

6  the business of speculating as to future price of public

7  stocks.  So, that's the background.

8       We obviously served the motion on all parties, as

9  directed by the Court, and we received a limited objection

10  from Lamp Capital.  And, basically, essentially, what they're

11  saying is, We'd like to get the same deal that people

12  involved with The Lady May had.  And, you know, obviously,

13  we're not agreeable to that, so let me set the stage for that

14  discussion, as well.

15       Right now, there's an order from this Court

16  finding that all assets of Lamp are assets of the estate.  So

17  there's no debate under that order that the VCTR shares, the

18  cash, and the limited partnership interests are assets of the

19  estate.

20       Lamp Capital has appealed that order.  By the way,

21  that order was dated February 1st.  They appealed that order.

22  Never sought a stay pending appeal to this date, and so,

23  therefore, from our point of view, the legal *status quo* is

24  the trustee has, absolutely, the right to get those shares,

25  to sell them, and then to use the proceeds without any

1  limitations.

2          And what Lamp Capital wants to do is basically

3  say, Well, we would like the Court to put some strings on

4  that and basically provide what will happen if Lamp Capital

5  prevails on appeal.

6          And our point is, they have whatever rights they

7  have.  We're not trying to cut off those rights.  If those

8  rights include what they're seeking, they will get this, but

9  short of a stay pending appeal, their only rights are to

10  appeal.  And to whatever rights they have, if they prevail on

11  appeal, and this Court should not issue an advisory opinion

12  saying, Well, if you prevail on appeal, this will happen or

13  that will happen.

14          The Lady May order was heavily negotiated.  It was

15  the first order that the Court entered, with respect to an

16  alter-ego finding.  It was a totally different context and we

17  did this consensually.  That order is not a (indiscernible)

18  of any kind, because, again, it was consensual.  And our view

19  is that whatever rights they have -- and we're happy to put a

20  "reservation of rights" language in the order that's saying,

21  This order shall not affect whatever rights Lamp Capital has

22  if it prevails on appeal.  But to the go to the next step is

23  to say, what that means is X, Y, Z.  We're not prepared to do

24  that and we don't believe the Court needs to do that.

25          The last point I would mention, Your Honor, is

1    that there is a potential change -- and to be candid with

2    Your Honor, that came a little bit late in the process, like

3    this morning.  I'll take the blame for that -- where, in

4    terms of what should be the trigger for the Reverence Fund to

5    direct Merrill Lynch to sell the shares, instead of being

6    entry of the order, we'd prefer to have a direction from the

7    trustee.  The reason for that is -- I'm making this up -- if

8    the stock falls to $2 a share tomorrow, I'm not sure I want

9    to sell tomorrow.  And to be candid, I'm not going to play

10   the market, but on the other hand, I don't want to be in a

11   position where we're locked into we're selling without any

12   discretion as to the timing of that discretion.

13          So we've asked Reverence and Merrill Lynch to

14   agree to modify that language to provide that it's the

15   trustee's direction that would trigger that sale process if

16   the Court enters the order.  If the Court doesn't enter the

17   order, we're not going to sell the shares.  But if the Court

18   enters the order, we would want the Court to allow us to

19   modify the second and third decretal paragraphs of the order

20   to allow us to basically -- to have the trigger being the

21   notice and the trustee, rather than the mere entry of a court

22   order.

23          To be fair, because this came up late, I'm not

24   sure if we have sign-off from Reverence on that.  I mean, I

25   think we were allowed to say their counsel did not think that

1    there would be an issue with this, but they have not gotten

2    authorization from their client to do that, so I don't want

3    to oversell that.  So, what we would propose, again, if Your

4    Honor is inclined to enter the order, is to resolve these

5    issues after the hearing.  I don't think they'll be

6    contentious or they will not require further order from the

7    Court, and we would submit an order after, you know, sometime

8    later today after Reverence has had a chance to -- so counsel

9    for Reverence has had a chance to consult with their client.

10           I believe that counsel for Merrill Lynch was okay

11   with that change, but, again, I will let them speak for

12   themselves.  I saw some emails that went back and forth, but

13   I think that's the case.

14           So, Your Honor, that's our opening presentation on

15   that motion.  I'm happy to answer any questions that you may

16   have.

17           THE COURT:  The only question I have at the moment

18   is about the trigger that you just mentioned.  That you would

19   set, I would assume, some written direction to Merrill Lynch;

20   is that what you're saying?

21           MR. DESPINS:  Yes.

22           THE COURT:  And --

23           MR. DESPINS:  Well, to -- first, if I may, Your

24   Honor, the second decretal paragraph says:

25           "Within two business days of entry of the order,

1  the Reverence Fund shall direct Merrill Lynch to liquidate

2  the VCTR shares."

3         It would change that to say that, "Within two

4  business days, with written direction by the trustee, the

5  Reverence Fund shall direct Merrill Lynch to sell," and there

6  would be a matching change or a conforming change to the

7  third decretal paragraph to govern Merrill Lynch's obligation

8  to liquidate the shares.

9         So, obviously, none of this applies without the

10 order being entered --

11        THE COURT:  Understood.

12        MR. DESPINS:  -- but after that, there would have

13 to be a supplemental action; it would be a written notice by

14 the trustee to Reverence, copying Merrill Lynch, essentially,

15 and, that would be the trigger.

16        THE COURT:  Okay, thank you.  That was my

17 question.

18        Attorney Graham, did you wish to be heard?

19        MR. GRAHAM:  Yes, Your Honor.  Thank you.

20        Robert Graham from Lax & Neville on behalf of Lamp

21 Capital.

22        So, as Mr. Despins mentioned, the objection that

23 Lamp filed is very limited; it's actually, there's no

24 objection to the relief sought by the trustee here.  It's

25 really just with respect to the language of the proposed

1   order that the trustee submitted.

2          As Mr. Despins mentioned, there's an appeal that's

3   now fully briefed and pending by the District Court.  And the

4   concern from Lamp's perspective is that in the event that the

5   appeal is successful, the trustee will be in a position where

6   it will either be permitted to keep or have already disposed

7   of assets or money collected from liquidation of the shares

8   based on a default judgment that will have been vacated.

9          And so all Lamp is asking is just a reflection in

10  the proposed order to sort of maintain the *status quo*

11  (indiscernible), in the event that the appeal is successful.

12  If the appeal is not successful, there's no harm, and so if

13  the appeal is successful, Lamp is suggesting that the *status*

14  *quo* of what was the situation prior to the entry of the

15  judgment be reflected.  And based on the language of the

16  proposed order, that's not the case.

17         So, recognizing that, we had sent some proposed

18  language prior to today's hearing.  I had discussions with

19  counsel for the trustee last week, and as Mr. Despins

20  mentioned, the trustee declined to make any changes to the

21  proposed language.

22         Again, there's no strings or restrictions that are

23  being sought here by Lamp Capital; they're not asking for

24  anything like that.  In the case of The Lady May, if I

25  recall, the objection was to actually selling the yacht.  And

1  counsel for the entity involved, I believe, argued vigorously

2  that they did not want the trustee to actually go forward

3  with the sale.

4        We're not asking that.  We're not seeking to stand

5  in the trustee's way in any respect, only to reflect that in

6  the event that the appeal is granted, that the *status quo* be

7  maintained; otherwise, Lamp would be in a position of

8  having -- you know, if the appeal is successful and the

9  default judgment is vacated and the litigation underneath has

10  been active, Lamp Capital will be in the position of having,

11  you know, nearly $3 million of its property already

12  transferred to the trustee and potentially disposed of,

13  despite there being, you know, orders of alter-ego judgment

14  in effect at that time.

15        So it's very limited relief that we're seeking,

16  and given the precedent that has already been, you know,

17  established in this case, with respect to similar relief, but

18  not quite the same, in the context of The Lady May, arguably,

19  I would say that, you know, this is much more narrow.  We're

20  just asking to be heard and to have the order modified on

21  those grounds.

22        THE COURT:  Okay.  Thank you.

23        Does anyone else wish to be heard with regard to

24  the trustee's motion?

25        MR. DESPINS:  I'd like to be -- to respond, but

1 | after other parties.

2 |       THE COURT:  Sure.

3 |       MR. DESPINS:  Thank you, Your Honor.

4 |       THE COURT:  I just want to make sure that no one

5 | else wishes to be heard, the U.S. Trustee or the Creditors

6 | Committee, or PAX?

7 |       MS. CLAIBORN:  No, Your Honor, nothing to say.

8 |       MR. SARNOFF:  No, Your Honor.  PAX does not have

9 | anything to add.

10 |       THE COURT:  Okay.  Trustee Despins, you wanted to

11 | respond to Attorney Grand's statements?

12 |       MR. DESPINS:  Very briefly, Your Honor.

13 |       The *status quo* is there's an order allowing us to

14 | use to liquidate all assets of Lamp; that's the *status quo*

15 | today and without any restrictions.  And, obviously, we're

16 | not going to do that, because that's not the way we run

17 | cases.

18 |       But the legal *status quo* is there's an order

19 | saying that all these assets are assets of the debtor and the

20 | trustee can dispose of them, you know, subject to the various

21 | provisions of the Bankruptcy Code.  That's the *status quo*.

22 |       This language that they want to add, there's no

23 | precedent to The Lady May order.  That's not a precedent;

24 | that's something that we agreed to.  As I said, in that

25 | context, it was the first such order that involved a very

1    large asset and we agreed to that order.

2            But we have to realize, Your Honor, and you know

3    this, there are going to be deadlines of these people that

4    have alter-ego issues and if we're going to start

5    establishing restrictions for each of them, without them

6    having to go through the burden of obtaining a stay pending

7    appeal, that's going to be chaos, Your Honor.  And that's

8    why, as a matter of principle, we're objecting to this.

9            And I know the argument sounds appealing.  Why

10   not, you know, basically, set this money aside?  Practically,

11   that's -- the order doesn't say that, but, practically, that

12   would be the effect of that, because if you start doing this

13   across the board, HCHK, Lamp, Golden Spring, all the others

14   who want their own little protection, it's going to be chaos,

15   Your Honor.

16           So the point is if they want to effect the rights

17   of the trustee under the order that is -- that Your Honor

18   entered on February 1st, which is really clear, they need to

19   obtain a stay pending appeal.  They haven't bothered doing

20   that -- that's okay -- but they cannot, now, through the

21   backdoor, say, Give me some of that without me having to go

22   through the burden of seeking a stay pending appeal, putting

23   up a bond, et cetera, et cetera.  So that's why, Your Honor,

24   that's why we're not agreeable to those changes.

25           Thank you very much.

1          THE COURT:  Thank you.

2          MR. GRAND:  May I respond briefly, Your Honor?

3          THE COURT:  Yes, you may.

4          MR. GRAND:  Thank you.

5          We're not seeking a stay pending appeal because

6   we're not objecting to the *status quo* today.  There's no

7   dispute as to what the *status quo* today is, as to what the

8   trustee is permitted to do under the order that was entered

9   by the Court, with respect to the entry of a default

10  judgment.

11          The issue is in the event that default judgment is

12  vacated, that changes the *status quo*.  That returns the

13  *status quo* to the position that the parties were in before

14  the Court entered the order on February 1, granting default

15  judgment in favor of the trustee.

16          And the relief that the trustee is seeking today

17  in the proposed order, in the event that that -- is based

18  entirely, 100 percent, on the entry of that default judgment.

19  If that default judgment is vacated, then the trustee will

20  have been granted relief based on a vacated judgment.

21          And so all -- we're not seeking -- we're not

22  asking for any restrictions to be put in place.  We're not

23  asking -- we don't need it -- we're not seeking a stay to

24  prevent the trustee from proceeding with the liquidation of

25  the shares or the receipt of the proceeds of it; all we're

1  trying to do is just recognize that if the appeal is

2  successful, then there should be some mechanism that reflects

3  that that *status quo* is no longer the *status quo* upon the

4  situation upon which the trustee is seeking relief by this

5  order.

6        And so it's not a string.  It's not a restriction.

7  It's not -- we're not seeking to stand in the way of the

8  trustee's ability to proceed today in any respect; only, that

9  in the event that the appeal is granted, that the *status quo*,

10  at that point, reflect that eventuality.

11        MR. DESPINS:  Your Honor, perhaps an advisory

12  opinion is what they're seeking.  Whatever rights they have,

13  they have.

14        I've got at least 10 counsel or professionals

15  retained by the trustee in the U.K., in Switzerland, in the

16  BVI, and all that.  If we're going to adopt their language

17  that says that all these people are subject to disgorgement,

18  you know, they're going to say, what am I signing up for?

19  It's going to be administratively chaos and that's why we

20  cannot agree to this.

21        We agreed to this the context of The Lady May.  It

22  was very limited.  It was a very special circumstance, given

23  the state at which we were in the case.  But at this point,

24  they're not asking for the *status quo*.  They're asking for

25  you to declare that in the event that they prevail, the

1  following things will happen.  The following things that will

2  happen is that there'll be disgorgement across the board, et

3  cetera, et cetera.

4          That may very well be.  If those are their rights,

5  those are their rights.  But this is not the order for Your

6  Honor to opine on what happens if you get reversed.  What I

7  ever their rights are, and we're happy to say that entry of

8  this order shall not affect whatever rights they have in the

9  event the appeal is granted.

10          But to have this at this stage, it's an advisory

11  opinion.  It's not appropriate and it renders the

12  administration of the case really difficult, Your Honor.

13          MR. GRAND:  Your Honor, we're not asking for an

14  advisory opinion.  We're -- this is precisely what happened

15  with the situation with The Lady May.  The recognition was

16  that in --

17          THE COURT:  It's not -- Attorney Grand, I just

18  want to stop you for one second -- it's not precisely what

19  happened with The Lady May, number one.  But number two, I

20  don't know what it means when you say, "In the event the

21  order enters, vacating the Lamp judgment," because say you're

22  right and the District Court vacates the judgment.  Well,

23  what if the trustee appeals that to the Second Circuit, what

24  happens then?

25          You're going to say, Well, he has to get a stay

1  pending appeal.  And you didn't get --

2          MR. GRAND:  No, I --

3          THE COURT:  No, no, hold on.

4          MR. GRAND:  I'm sorry.

5          THE COURT:  You're going to say, He has to get a

6  stay pending appeal, then, in order for him not to have to

7  disgorge.

8          But you didn't get a stay pending appeal of the

9  judgment that was entered by this Court.  And so I don't

10 understand why the language that added that the entry of this

11 order shall not affect whatever rights you have as of the

12 date of the entry of this order.

13         The disgorgement and all the reversion of

14 interests, none of that is going to happen unless there's a

15 final, non-appealable order that vacates, fully, by the

16 way -- fully -- the default judgment.  So -- and that may

17 happen.  I'm not suggesting that that couldn't happen.

18         I'm saying, I don't know what the reviewing court

19 is going to rule and I don't know what conditions, if any,

20 they're going to place.  It could be vacated in part.  It

21 could be not vacated in part.  I don't know what they're

22 going to do and I'm not going to presume to know what they're

23 going to do.  That's their job and they will handle it

24 appropriately.

25         But I think that you can add language to this

1  order that says that you're reserving all your rights if

2  there's a final, non-appealable order vacating the default

3  judgment.  I don't see any problem with that, but beyond

4  that, I do see a problem.  And I'm not even sure that I agree

5  with Trustee Despins that it's an advisory opinion; it's just

6  that I don't know what the reviewing court is going to do and

7  I'm not going to make any presumptions about that.

8         You can reserve your rights and whatever they may

9  be as of the date of the entry of the order and that, I

10 think, is fair.  I think that's fair.

11        But to go beyond that, I don't think that's fair

12 to the Court.  I don't think that's fair to this Court,

13 because I have no idea what the District Court is going to do

14 upon review and I'm not going to create some kind of right

15 that may or may not exist, depending upon what the District

16 Court is going to do.

17        And I think The Lady May situation is completely

18 different.  I know, Attorney Grand, you weren't involved and

19 you may be looking at an order and think it's the same.  But

20 there was -- The Lady May issue was at issue for a long time,

21 including well before this Chapter 11 case was filed, as

22 PAX's counsel can tell you, if they haven't already.

23        And so I -- while I understand the argument, I'm

24 not persuaded by the addition of the language about reverting

25 an ownership interest in disgorgement and things of that

1  nature under the very specific circumstances and the facts of

2  this case.  The Lady May is not factually analogous to this.

3          And you may disagree, and you have every right to,

4  but I'm not going to add that language to this order.  I'm

5  happy to add language to the order or have both of you work

6  on language, which I'm going to instruct you to do, about

7  reservation of rights.  But it won't -- I will not enter an

8  order that goes beyond that.

9          You say you're not objecting to the relief, okay,

10  and I appreciate that.  Then the interests in these shares

11  will be sold and the money -- apparently, there's cash, as

12  well -- will become part of this estate.

13          If, somehow, in the future, which it very well may

14  happen, that the default judgment is fully vacated and

15  there's a final, non-appealable order on that, then you may

16  have rights that exist as of today that won't change.  The

17  only issue that -- otherwise, you are, then, objecting to the

18  relief sought, because, then, you're saying, Well, we don't

19  have the shares and we don't have the money.  Well, that's

20  what happens; it gets sold.  That's the point.

21          So, I do understand your argument, but I'm not

22  persuaded by it, with regard to this motion and this order,

23  because I believe whatever rights Lamp Capital has, as of the

24  entry of this order, will not be affected by the entry of

25  this order if there is a final, non-appealable order fully

1   vacating the default judgment.

2        So, do you have any questions?

3        MR. GRAND:  I have one, which is, I mean, the

4   concern is I'm not sure -- I'm trying to understand why the

5   entry of a final, non-appealable order is the trigger.

6        THE COURT:  Because what if you win on appeal and

7   the Circuit overrules the District Court?

8        MR. GRAND:  Right.  And so -- well, okay.

9        But let's just take it one step at a time.  If the

10  District Court reverses the default judgment and it's

11  vacated, on what basis, then, does the trustee have to be

12  able to maintain ownership or dispose of nearly $3 million of

13  Lamp's property, which was based on a vacated judgment at

14  that point in time?

15       THE COURT:  Well, he already --

16       MR. GRAND:  Why should the trustee --

17       THE COURT:  -- he would have already -- so, then,

18  you are objecting to the relief, because he would have

19  already --

20       MR. GRAND:  No, only in that instance.

21       THE COURT:  He would have already liquidated it.

22       MR. GRAND:  That's okay.  We're not -- the shares

23  are not the concern.  It's the value of the assets.  It's

24  the -- whether it's the $2.9 million --

25       THE COURT:  Then you need to seek a stay pending

1    appeal and post a bond.

2            See, this is the point.  The point is --

3            MR. GRAND:  I'm not seeking to stop anything.

4    We're not seeking to stop anything.

5            THE COURT:  Yeah, but you are, because you're

6    not --

7            MR. GRAND:  We're not.  We're not --

8            THE COURT:  All right.  Attorney Grand, let me

9    finish, please.

10            MR. GRAND:  Sure.

11            THE COURT:  You are.  That is what you are doing,

12    because you're saying that I'm going to make some ruling in

13    this order that if the District -- and you just stated it --

14    if the District Court vacates the judgment, regardless of the

15    trustee's rights to appeal to the Second Circuit, you want

16    there to be an immediate revesting and disgorgement of those

17    assets.  So, then, you are objecting to the relief, because

18    that's not going to happen.

19            If you're really not objecting to the relief, then

20    the assets are going to be sold, and the trustee has

21    obligations as a trustee, to maintain those assets in the

22    estate and those assets will be distributed, in accordance

23    with further Court order.

24            So, either you -- you can't have it both ways.

25    You can't say, And the minute the District Court vacates

1  that, I want it all back.  I want the value of it back.

2          And then Trustee Despins would say, No, I'm going

3  to appeal to the Second Circuit.

4          And you'd say, Well, you can't -- so what if

5  you're going to appeal to the Second Circuit?

6          You'd have to get a stay pending appeal in order

7  for you not to have to return that to Lamp Capital.  That

8  would be the only recourse you'd have, Attorney Grand.

9  That's what you'd have to argue.  And then the Circuit would

10  have to determine whether or not there should be a stay

11  pending appeal.

12          That's flipping the burden of the default judgment

13  that's already entered onto the trustee, who was successful,

14  and away from your client, who was not, that could have

15  sought a stay pending appeal of the entry of the -- the

16  impact of the entry of the default judgment.  So that's --

17  that is how it will work in this court, and I believe other

18  appellate courts would agree that you're -- that, otherwise,

19  you are either objecting to the relief sought or you're

20  flipping the burden to the trustee to have a stay pending

21  appeal, which I don't think is appropriate.

22          MR. GRAND:  Respectfully, I disagree.  I don't

23  think that Lamp Capital is asking for either of those things

24  or arguing for either of those things.

25          I mean, I -- all we're trying to accomplish is to

1  have the ownership of that asset reflect the *status quo* at

2  the time, in accordance with the procedure of this case.  So,

3  as of now, there's an order in place.  The trustee has every

4  right, based on the default judgment, to liquidate that asset

5  and receive the proceeds.

6         If the default judgment is vacated, then what

7  right does the trustee have to still hold, at that point,

8  $3 million of Lamp's property?  If the trustee, at that

9  point, seeks a stay -- seeks an appeal to the Circuit Court,

10  then -- and ultimately is successful -- then the funds would

11  be transferred back.  That's -- it needs to reflect that.

12         All we're trying to do is just have the ownership

13  of that asset reflect the *status quo* and to reflect the

14  proper procedure of this case along the way.  And that's --

15  but we're not -- you know, we're not asking for anything more

16  than that.

17         MR. DESPINS:  And, Your Honor --

18         MR. GRAND:  Absent that, Lamp is in the position

19  if -- in the event that the appeal is successful, Lamp is in

20  the position of having the trustee being able to permit --

21  being permitted to keep money based on a default judgment

22  that has been vacated --

23         THE COURT:  You could file a motion --

24         MR. GRAND:  -- that it's not entitled to.

25         THE COURT:  You could file a motion, Attorney

1  Grand, requiring the trustee to return all the property to

2  you.

3        MR. GRAND:  Well, that's my point.  This is very

4  simple language that avoids that, and that --

5        THE COURT:  It doesn't avoid it; it does more than

6  that.

7        MR. GRAND:  -- respectfully, it --

8        THE COURT:  It does more -- because you might not

9  be successful on your motion.  You might not be successful.

10  We don't know what's going to happen.  You are putting -- you

11  are making presumptions and I'm not going to enter an order

12  on presumptions.

13        MR. GRAND:  Well, I'm not asking for a

14  presumption.

15        I'm asking -- this language doesn't speak of

16  presumptions; it speaks of an actual occurrence.

17        THE COURT:  No, it doesn't.  It says an order

18  enters vacating the Lamp judgment.

19        I don't even know what that means, number one, as

20  I've already stated.  Number two, the District Court could

21  enter eight different kinds of orders regarding the Lamp

22  judgment.  It could vacate, in part.  It could reverse, in

23  part.  It could remand, in part.  It has -- it is within its

24  determination at this point in time, not this Court's

25  determination.

1          So either you're objecting --

2          MR. GRAND:  We're happy to --

3          THE COURT:  -- to the underlying relief by the

4   trustee or you are flipping the burden to the trustee to

5   obtain a stay pending appeal.

6          And I think, as I think I've been very clear, that

7   is not -- I'm not going to allow that.  So I'm ordering you

8   to work with the trustee on your "reservation of rights"

9   language and we'll see where we stand.  But I am not going to

10  enter an order with the language about "in the event that an

11  order enters vacating the Lamp judgment."  That's not going

12  to happen.

13         We don't know what's going to happen and I'm not

14  going to enter an order with any of that language in it under

15  the facts and circumstances, as they exist, with regard to

16  Lamp Capital at this point in time, and the prior order that

17  said, all the property of Lamp Capital is property of the

18  estate and can be liquidated, and that's what the trustee is

19  doing.

20         So, Trustee Despins and Attorney Grand, how much

21  time do you think you're going to need to review this order

22  and submit to the Court the revised order, which also will

23  include, according to Trustee Despins, some additional

24  language, with regard to the trigger date and things of that

25  nature?  How much time do you need?

1              I will give you a few days, but I won't give
2  you --
3              MR. DESPINS:  No, I --
4              THE COURT:  -- beyond Thursday.  And if there's
5  still a disagreement, then you both will submit your own
6  orders and I'll enter each and every order I think is
7  appropriate.
8              MR. DESPINS:  Your Honor, we want to resolve this
9  quickly, because, again, that stock fluctuates in value, so
10 I'm not comfortable being at the mercy of the market on this.
11 So, we will submit a revised order by noon tomorrow.
12             THE COURT:  Attorney Grand, are you available to
13 do that with Trustee Despins?
14             MR. GRAND:  That's fine.  I'm happy to work with
15 the trustee on finding some, hopefully, some mutually
16 agreeable language by the middle of the day tomorrow, or even
17 the end of the day tomorrow.  You know, we'll work as quickly
18 as we can, too.
19             THE COURT:  All right.  Well, I'll give you --
20 tomorrow is Tuesday -- I'll give you both -- I'll give the
21 parties until 5:00 p.m. tomorrow to either submit an order
22 that you both agree to the language in or submit competing
23 orders and the Court will enter whatever order it deems
24 appropriate under the circumstances.
25             MR. DESPINS:  Thank you, Your Honor.

1           MR. GRAND:  Thank you, Your Honor.

2           THE COURT:  Okay.  Attorney Fox, since you're

3   here --

4           MR. FOX:  Yes, Your Honor?

5           THE COURT:  -- it does appear that regardless of

6   the different opinions on the language about what would

7   happen if the default judgment is overturned on appeal, that

8   there will be some liquidation of the shares that Merrill

9   Lynch, I believe, is holding -- well, not holding, but that

10  you would liquidate.  Merrill Lynch would be in the position

11  to liquidate those shares.

12          So, do you have any questions while you're here?

13          MR. FOX:  No, Your Honor.  We worked with the

14  trustee and his counsel earlier to ensure that things will be

15  smooth, also with Reverence.  So, once the order is entered,

16  depending on how the language gets worked out, we're ready to

17  move.

18          THE COURT:  And the only thing I would say, and I

19  have no -- you both figure -- you can all figure out what

20  works, but, you know, if this issue of fluctuation is an

21  issue, then I think there's -- you might want to take a look

22  at the time frame between the date of the direction, the

23  written direction from the trustee and when Merrill Lynch

24  will actually liquidate it.  Because right now, it looks like

25  there could be seven business days between those events or

1   including those two events, but I don't know if I'm correct

2   in that reading of the order, so I --

3          MR. FOX:  Your Honor -- sorry.

4          THE COURT:  Go ahead.

5          MR. FOX:  Your Honor, the trade should happen

6   within the day.  The main issue is that until actually last

7   week or two weeks ago, when we were initially agreeing to

8   this order, once the trade set -- occurs, there's three days

9   for it to settle in the market, then we have to get the

10  proceeds to turn them over.

11         So, really, the trade will be almost

12  instantaneous; the issue is more of settlement of that trade

13  through the various systems, but there should not be much of

14  a delay.  I can't imagine that it would be less than a day --

15  I mean, more than a day.

16         THE COURT:  Okay.  I'm just -- whatever -- however

17  it works, you will figure that out, but I was just pointing

18  out what I read in a proposed order and I didn't know if that

19  was a concern to the parties.

20         MR. FOX:  Not -- no, Your Honor.

21         THE COURT:  But it sounds like you can liquidate

22  on the same day or the very next day, but the issue of the

23  actual turnover of the proceeds may take some time, business

24  days, is what your point is, Attorney Fox?

25         MR. FOX:  Yes, Your Honor.

1          THE COURT:  Okay.  Thank you.

2          MR. DESPINS:  Your Honor, that's perfectly

3  acceptable.  We know that Merrill Lynch is good for the

4  money.  If it takes them three or four days to turn it over,

5  no problem.  It's just, you're right that the execution

6  should be almost immediate, but, okay.

7          Thank you very much.

8          THE COURT:  Does anyone else wish to be heard this

9  afternoon?

10      (No verbal response)

11          THE COURT:  Are there any other matters that the

12  Court needs to address or that the trustee needs to inform

13  the Court about while we're here.

14          MR. DESPINS:  No, Your Honor.

15          THE COURT:  Okay.  All right.

16          Well, thank you, all.  I'll look to see, either

17  the joint order or competing orders on the motion.  The

18  motion will be granted, subject to the review of either a

19  joint order or competing orders, and then the Court will

20  enter the appropriate order.

21          So, thank you, all.  That being --

22          MR. DESPINS:  Thank you, Your Honor.

23          THE COURT:  -- the only matter on the calendar

24  this afternoon, Court is adjourned.

25      (Proceedings concluded at 1:48 p.m.)

1  <u>CERTIFICATION</u>

2       I certify that the foregoing is a correct

3  transcript from the electronic sound recording of the

4  proceedings in the above-entitled matter to the best of my

5  knowledge and ability.

6

7  <u>/s/ William J. Garling</u>                    <u>June 13, 2024</u>

8  William J. Garling, CET-543

9  Certified Court Transcriptionist

10  For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25