**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

-------------------------------------------------------x
:
In re:                             :    Chapter 11
:
HO WAN KWOK, *et al.*,[1]         :    Case No. 22-50073 (JAM)
:
Debtors.             :    (Jointly Administered)
:
-------------------------------------------------------x

**JOINT MOTION OF CHAPTER 11 TRUSTEE AND DEBTORS GENEVER US AND
GENEVER BVI FOR ENTRY OF FINAL ORDER, PURSUANT TO BANKRUPTCY
CODE SECTIONS 363 AND 364, AUTHORIZING AMENDMENT TO INTERDEBTOR
<u>POSTPETITION FINANCING AGREEMENT</u>**

Genever Holdings LLC ("<u>Genever US</u>"), Genever Holdings Corporation ("<u>Genever

BVI</u>"), and Luc A. Despins, in his capacity as the chapter 11 trustee (the "<u>Trustee</u>") of Ho Wan

Kwok (the "<u>Individual Debtor</u>"), debtors in these above-captioned jointly administered cases (the

"<u>Chapter 11 Cases</u>"), hereby file this motion (the "<u>Motion</u>") for entry of an order, substantially in

the form attached as **<u>Exhibit A</u>** hereto (the "<u>DIP Amendment Order</u>"), pursuant to sections

105(a), 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code (the "<u>Bankruptcy

Code</u>"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), and Rule 4001-3 of the Local Rules of the United States Bankruptcy Court

for the District of Connecticut (the "<u>Local Rules</u>"), authorizing Genever US and Genever BVI

(together, the "<u>Genever Debtors</u>" or the "<u>DIP Borrowers</u>") and the estate of the Individual

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Debtor, through its representative (*i.e.*, the Trustee), to enter into the DIP Amendment (as defined below) to increase the maximum borrowing available under the DIP Facility (as defined below) from $2 million to $3 million.  In support of the Motion, Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1.     By order dated September 9, 2023 [Docket No. 2193] (the "Original DIP Order"), the Court authorized the DIP Borrowers to obtain financing from the Individual Debtor's chapter 11 estate (the "DIP Lender") under a non-priming secured debtor-in-possession credit facility (the "DIP Facility") in an aggregate principal amount of up to $2 million pursuant to the terms of the DIP financing credit agreement, dated as of August 23, 2024 (the "DIP Credit Agreement").[2] As detailed in the related motion [Docket No. 2110] (the "DIP Motion"), the DIP Borrowers required access to liquidity to undertake necessary remediation at the 18th floor at the Sherry Netherland (the "Apartment") following the March 15, 2023 fire,[3] pay professional fees (including the cost of pursuing the AIG Litigation (as defined below)), and pay statutory amounts to the U.S. Trustee.

2.     Unfortunately, recent developments have made clear that the $2 million of borrowing available under the DIP Facility is not sufficient for Genever US to fund the entire cost of such remediation and professional fees.  In particular, as the Court is aware, Genever US recently determined, following discussions with the Sherry Netherland, to engage contractors

---

[2]   Capitalized terms used but not defined herein have the meanings set forth in the DIP Credit Agreement or the Original DIP Order.

[3]   Genever US is the owner of the shares allocable to the Apartment (the "Shares") and the lessee under the related proprietary leases (collectively, the "Proprietary Lease") appurtenant thereto between the Sherry Netherland Inc. (the "Sherry Netherland"), as lessor, and Genever US, as lessee, entered into on March 6, 2015 and amended as of January 1, 2023.  The Shares and Genever US's interest in the Proprietary Lease are collectively referred to herein as the "Coop Interest".

and service providers to also remediate soot, char, and other combustion by-products (collectively, "CBPs") in the area of the Apartment not directly affected by the March 15, 2023 fire—in addition to the ongoing remediation in the source area of the March 15, 2023 fire. Accordingly, Genever US sought (and obtained) this Court's authorization to undertake the CBP cleaning project. As detailed in Genever US's motion [Docket No. 3128] (the "Cleaning Motion"), the total cost of the CBP cleaning project is expected to be approximately $700,000.

3.      To be clear, it is Genever US' position[4] that AIG Property Casualty Company ("AIG") must provide insurance coverage for Genever US' property damage from the March 15, 2023 fire under its all-risk property insurance policy which provide coverage for fire damage to the Apartment—all in accordance with Genever US' pending motion for summary judgment for declaratory relief in the adversary proceeding Genever US filed against AIG [Adv. Proc. No. 23-05007] (the "AIG Litigation"). However, at this time, no ruling has been issued in that litigation, nor has AIG advanced any funds to cover the remediation and clean-up cost (other to pay for an initial surface cleaning that AIG arranged).[5] Accordingly, Genever US must continue to fund, out of its own pocket, the cost of the remediation and cleaning projects as well as the cost of prosecuting the AIG Litigation. As a result, to date, Genever US has had to borrow more than $1.3 million under the DIP Credit Agreement—leaving only approximately $700,000 in additional borrowing available as of the filing of this Motion. That remaining borrowing capacity will not be sufficient to fund the remaining payments anticipated in connection with the

---

[4]    All references and descriptions in this Motion related to matters involving AIG and insurance coverage with respect to the Apartment have been provided by O'Sullivan McCormack Jensen & Bliss PC ("OMJB"), Genever US' special insurance coverage counsel. For the avoidance of doubt, Movants will also serve a copy of this Motion on counsel for AIG.

[5]    As explained in the Cleaning Motion, that initial cleaning did not adequately address the CBPs in the Apartment.

3

remediation and cleaning projects, which payments Genever US estimates will be approximately $1.1 million in the aggregate.

4.       Without access to additional liquidity, Genever US will run the risk of not being able to complete the post-fire remediation at the Apartment (or such remediation will not be completed unless and until Genever US prevails in the AIG Litigation and recovers proceeds under its insurance policy), which would jeopardize Genever US's ability to find a value-maximizing transaction to monetize the Apartment for the benefit of its estate.  To address the anticipated liquidity shortage, the DIP Borrowers and the Trustee have agreed to enter into an amendment to the DIP Credit Agreement (the "<u>DIP Amendment</u>" and the DIP Credit Agreement, as so amended, the "<u>Amended DIP Credit Agreement</u>")[6] to increase the total borrowing available under the DIP Facility by $1 million, *i.e.*, from $2 million to $3 million (such facility, as so amended, the "<u>Amended DIP Facility</u>").

5.       Movants submit that, under these circumstances, entry into the DIP Amendment is in the best interests of the DIP Borrowers' estates and stakeholders.  Moreover, because the DIP Lender (*i.e.*, the Individual Debtor's chapter 11 estate) is one of those stakeholders, it is in the best interests of the DIP Lender's estate—acting through its representative, the Trustee—to enter into the DIP Amendment.

6.       For the avoidance of doubt, through the DIP Amendment, the DIP Borrowers and the Trustee are only increasing the maximum borrowing available under the DIP Credit Agreement; all other terms of the DIP Credit Agreement and the Original DIP Order will remain unchanged and will continue to apply to any borrowings under the Amended DIP Facility.  For example, the DIP Lender will hold allowed superpriority administrative expense claim pursuant

---

[6]     A copy of the DIP Amendment is attached to the proposed DIP Amendment Order as Exhibit 1.

to section 364(c)(1) of the Bankruptcy Code for all obligations under the Amended DIP Facility and will have valid, fully perfected and enforceable non-priming security interests and liens pursuant to section 364(c)(2) of the Bankruptcy Code on the DIP Collateral to secure the obligations under the Amended DIP Facility—all to the same extent as under the Original DIP Order, including that the DIP Liens will be junior to the Sherry Netherland Senior Liens (as defined in the DIP Amendment Order).  Moreover, as under the original DIP Credit Agreement, advances under the Amended DIP Facility will be at the discretion of the DIP Lender, and will only be available to pay for necessary expenses, such as the remediation and cleaning projects, U.S. Trustee fees, and current professional fees.

7.      For all these reasons, and as further detailed below, the Trustee and Genever Debtor submit that the DIP Amendment is necessary for the DIP Borrowers to fund their chapter 11 cases while they pursue a chapter 11 process—including pursuing the AIG Litigation and a value-maximizing transaction for the Apartment.  Accordingly, Movants respectfully request that the Court enter the DIP Amendment Order authorizing Movants' entry into the DIP Amendment.[7]

## JURISDICTION, VENUE, AND STATUTORY BASES

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

9.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[7]      Prior to filing, Movants shared a draft of the Motion with the Committee (as defined below).  Counsel for the Committee advised Movants that the Committee has not yet formulated a position as to the relief sought in the Motion.

10.     The statutory bases for the relief requested in this Motion are sections 105(a), 362, 363, 364, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Rule 4001-3 of the Local Rules.

## BACKGROUND

### I.     Procedural Background

11.     On October 12, 2020, Genever US filed its voluntary chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

12.     On February 15, 2022 (the "Petition Date"), the Individual Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

13.     On March 21, 2022, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").[8]  No examiner has been appointed in the Chapter 11 Cases.

14.     On June 15, 2022, the Court entered a memorandum of decision and order [Docket No. 465] (the "Trustee Order") directing the United States Trustee to appoint a chapter 11 trustee in the Chapter 11 Case.  Pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins as the Trustee, and on July 8, 2022, the Court entered an order granting the appointment of Luc A. Despins as the Trustee [Docket No. 523].

15.     On October 11, 2022, Genever BVI filed its voluntary chapter 11 petition in this Court.  Shortly thereafter, by order dated November 3, 2022 (the "Venue Transfer Date"), the New York Bankruptcy Court granted the Trustee and Genever US's joint motion to transfer venue of Genever US's chapter 11 case to this Court.

---

[8]     The Committee is appointed in the Individual Debtor's case only.

16.     By order dated November 21, 2022, the Court approved the joint administration of the chapter 11 cases of Genever US, Genever BVI, and the Individual Debtor.  [Docket No. 1141].

## II.     Remediation and Cleaning Projects at the Apartment

17.     On March 15, 2023, a fire broke out at the Apartment, causing significant loss. Following the March 15 Fire, AIG agreed to pay, and paid, approximately $220,000 for minimal clean-up and removal of debris in the Apartment, subject to a reservation of rights.

18.     On August 23, 2023, Genever US filed its motion [Docket No. 2113] (the "Remediation Motion") seeking authorization to remediate the area of the Apartment affected by March 15, 2023 fire (the "Source Area"), including entry into an architect consulting agreement as well as selecting and hiring contractors, engineers, consultants, and other third-party service providers in the ordinary course of remediating the Source Area, including "white-boxing"[9] that area (the "Remediation Project").  On September 19, 2023, the Bankruptcy Court entered an order [Docket No. 2213] (the "Remediation Order") granting the Remediation Motion.  At this time, Genever US anticipates that the Remediation Project will be completed by mid-August 2024.

19.     To date, Genever US has paid approximately $480,000 to contractors and service providers in connection with the Remediation Project, including approximately $245,000 to Genever US' architect (*i.e.*, Acheson Doyle Partners Architects, PC), approximately $86,000 to Genever US' general contractor (*i.e.*, Sciame Homes NY LLC), and approximately $60,000[10] to the windows installation company (*i.e.*, Skyline Windows, LLC).  Genever US anticipates that

---

[9]    A "white box", as that term is used in the construction industry, refers to a shell building space that has a finished ceiling and painted walls (usually white), but doesn't have finished flooring or other features.

[10]    Approximately $45,000.00 of these asbestos-related expenses were reimbursed by the Sherry Netherland.

the remaining payments to contractors and vendors in connection with the Remediation Project will total approximately $540,000.  That estimate includes approximately $370,000 remaining to be paid to the general contractor, approximately $70,000 remaining to be paid to install new windows, and approximately $50,000 anticipated to be paid for new HVAC units and related installation costs.

20.     On April 24, 2024, Genever US filed the Cleaning Motion, which sought authorization to obtain the services necessary to remediate CBPs in the remaining area of the Apartment (the "Remaining Area") as a result of a fire on March 15, 2023, including related ancillary services, such as abating asbestos and moving furniture into storage (the "Cleaning Project").  As detailed in the Cleaning Motion, Genever US determined to proceed with the Cleaning Project, in light of the results of a CBP testing report with respect to the Remaining Area, and following discussions with the Sherry Netherland (which requested that Genever US address the smoke damage in the Remaining Area at this time because, in the view of the Sherry Netherland, the Proprietary Lease requires Genever US to do so and Genever US must comply with such requirements).  On May 6, 2024, the Bankruptcy Court entered an order [Docket No. 3168] granting the Cleaning Motion.  At this time, Genever US anticipates that the Cleaning Project will be completed by mid-August 2024.

21.     To date, Genever has paid approximately $210,000 to contractors and service providers in connection with the Cleaning Project, including approximately $185,000 to the soot cleaning company (*i.e.*, Dryfast DKI).  Genever US anticipates that the remaining payments to contractors and vendors in connection with the Cleaning Project will total approximately $530,000.  This estimate includes approximately $370,000 remaining to be paid to the soot cleaning company and approximately $87,000 anticipated to be paid to the asbestos cleaning

company and related air monitoring (*i.e.*, ABF Environmental, Inc. and Gallagher Bassett Services, Inc.).

22.    In the aggregate, the remaining payments in connection with the Remediation Project and the Cleaning Project are expected to total approximately $1.1 million.

## III.    **AIG Litigation**

23.    Genever US holds certain insurance policies, purchased from AIG, providing Genever US insurance coverage for property loss in excess of $28 million to protect the Apartment and the valuable property therein, covering "all risk" of property loss subject to certain carve outs, and providing Genever US liability coverage up to $11 million for liability claims arising out of its ownership of the Apartment, including damage to adjacent properties (such policies, together, the "AIG Policies").

24.    On April 25, 2023, AIG issued a notice of cancellation of the AIG Policies, alleging "discovery of willful or reckless acts by the insured increasing the hazard insured against" and "physical changes in the property insured, after issuance of renewal, which resulted in the property becoming uninsurable in accordance with [AIG]'s underwriting standards." *See* [Docket No. 1 in Adv. Proc. No. 23-05007].

25.    On May 12, 2023, Genever US filed its *Complaint Under Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 7001 of Genever Holdings LLC Against AIG Property Casualty Company Under Various Insurance Policies for Breach of Contract and Declaratory Judgment* [Docket No. 1 in Adv. Proc. No. 23-05007] (the "AIG Complaint"), initiating litigation with respect to breach of contract claims (including denial of coverage) in connection with the AIG Policies (the "AIG Litigation").

26.     On July 13, 2023, the Bankruptcy Court issued a preliminary injunction enjoining AIG from cancelling the AIG Policies and directing AIG to rescind its prior notice of cancellation.  [Docket No. 32 in Adv. Proc. No. 23-05007].

27.     On October 6, 2023, Genever US filed its motion for partial summary judgment in the AIG Litigation [Docket No. 51 in Adv. Proc. No. 23-05007] (the "Summary Judgment Motion"), seeking, among other things, a declaration that AIG must provide property coverage to Genever US under the all-risk property portion of its policy for first-party losses resulting from the March 15, 2023 fire, including payment of the reconstruction cost of the Apartment, under the property coverage terms of the policy.  On November 10, 2023, AIG filed its opposition to the Summary Judgment Motion [Docket No. 63 in Adv. Proc. No. 23-05007].  Oral argument on the Summary Judgement Motion was held on January 23, 2024, after which hearing the Court took the motion under advisement.  As of the filing of this Motion, no ruling has been issued on the Summary Judgment Motion.

## IV.    **DIP Facility**

28.     On August 23, 2024, the Trustee and the Genever Debtors filed the DIP Motion seeking authorization to enter into the DIP Credit Agreement, pursuant to which the DIP Lender may provide the DIP Borrowers with up to $2,000,000 in postpetition financing from the Individual Debtor's chapter 11 estate under the DIP Facility.  As detailed in the DIP Motion, the DIP Borrowers required access to liquidity to undertake necessary remediation at the Apartment, pay professional fees, and pay statutory amounts to the U.S. Trustee.

29.     On September 9, 2023 [Docket No. 2193], the Court entered the Original DIP Order granting the DIP Motion.

30.     To date, Genever US and Genever BVI have borrowed an aggregate amount of $1,300,410.70, of which amount (a) $1,251,251.12 has been borrowed by Genever US—including approximately $690,000 to pay for costs in connection with the Remediation Project and the Cleaning Project and approximately $460,000 in legal fees related to the AIG Litigation—and (b) $49,159.58 has been borrowed by Genever BVI.[11]  As a result of the borrowings to date, $699,589.30 currently remain available under the DIP Facility.

**RELIEF REQUESTED**

31.     By this Motion, Movants seek entry of the DIP Amendment Order authorizing the Trustee and the Genever Debtors to enter into the DIP Amendment to increase the total borrowing available under the DIP Facility to $3,000,000, to be advanced in the DIP Lender's discretion.[12]  Other than such increase in available borrowings, the terms of the Amended DIP Facility will remain unchanged from the original DIP Facility, including, for the avoidance of doubt, that (a) the DIP Lender shall have an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code for all obligations under the Amended DIP Facility and (b) the DIP Lender shall have valid, fully perfected and enforceable non-priming security interests and liens pursuant to section 364(c)(2) of the Bankruptcy Code on the DIP Collateral to secure the obligations under the Amended DIP Facility, in each case to the same extent as provided under the Original DIP Order.

32.     Given that the terms of the DIP Credit Agreement and the Original DIP Order (other than the total amount of borrowing available) remain unchanged, Movants also request (to the extent necessary) a waiver of the requirements of Bankruptcy Rule 4001(b)(1)(B) and Local

---

[11]   A summary of the DIP borrowings to date is provided on **Exhibit B** hereto.

[12]   For the avoidance of doubt, each DIP Borrower will continue to be solely and severally liable for its respective obligations under the DIP Credit Agreement (as amended) and under the other Loan Documents.

Rule 4001-3(a) to the extent that such rules would require Movants to submit again the same concise statement of the material terms of the DIP Credit Agreement and the Original DIP Order that had already been provided in the DIP Motion.[13]

33.    Finally, Movants note that, under the Proprietary Lease, Genever US agreed not to permit the creation of a security interest or lien in the Shares or Proprietary Lease without the prior consent of the Sherry Netherland.[14]  The Original DIP Order previously granted the DIP Lender security interests and liens in the Coop Interest, to which grant the Sherry Netherland did not object.[15]  Movants request that the additional borrowing under the DIP Amendment also be secured by the Coop Interest (to same extent as under the Original DIP Order).  Movants are informed by counsel to the Sherry Netherland that the Sherry Netherland does not object to the relief sought in this Motion.

## BASIS FOR RELIEF

### I.    Entry Into DIP Amendment Is Sound Exercise of Trustee's Business Judgment on Behalf of DIP Lender

34.    Section 363(b)(1) of the Bankruptcy Code permits a trustee to use estate property "other than in the ordinary course of business" after notice and a hearing.  Although section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize non-ordinary course uses of a debtor's assets so long as they can articulate a sound business justification for doing so.  In fact, "[t]he business judgment of the estate representative is entitled to great deference."  *See*

---

[13]    Notwithstanding the foregoing, the *Checklist for Motions and Orders for Use of Cash Collateral and Post-Petition Financing* required by Local Rule 4001-3 is attached as **Exhibit C** hereto.

[14]    Genever US reserves all rights as to the enforceability of this provision in bankruptcy.

[15]    Indeed, the Original DIP Order explicitly provided that the Sherry Netherland shall not raise any argument that Genever US defaulted under the Proprietary Lease by granting the security interests and liens described in such order.

*In re Celsius Network LLC*, No. 22-10964 (MG), 2022 WL 14193879, at *6 (Bankr. S.D.N.Y. Oct. 24, 2022) (internal citations omitted).

35.    The Individual Debtor is the sole shareholder of Genever BVI, which is the sole owner of Genever US.  As such, the Individual Debtor —and now, his bankruptcy estate—is the ultimate beneficiary of ownership of the Apartment.  It is, therefore, in the best interests of the Individual Debtor's chapter 11 estate, and its creditors and stakeholders, to maximize the value of the two Genever estates.  And, as demonstrated below, the DIP Amendment is critical: without it, Genever US would not be able to make all forthcoming payments in connection with the Remediation Project and the Cleaning Project, putting at risk the completion of such work (or such remediation will not be completed unless and until Genever US prevails in the AIG Litigation and recovers proceeds under its insurance policy).  This could eventually force Genever US to convert its case to a chapter 7 liquidation, guaranteeing that the Individual Debtor's estate would not see any recovery from the Genever Debtors' cases.

36.    At the same time, the proposed DIP Amendment protects the Individual Debtor's estate and stakeholders.  The up to $1,000,000 in additional borrowing (as all other borrowings under the Amended DIP Facility) are limited to necessary expenses, determined in the Trustee's sole discretion.  The Amended DIP Facility also protects the Individual Debtor's estate by granting the DIP Lender an allowed superpriority administrative expense claim for all borrowings under the Amended DIP Facility and valid, fully perfected and enforceable security interests and liens securing such obligations (to the same extent as under the DIP Credit Agreement and the Original DIP Order).  Entry into the DIP Amendment is, therefore, a sound exercise of the Trustee's business judgment on behalf of the DIP Lender and its estate.

## II.    Entry Into DIP Amendment Is Sound Exercise of DIP Borrowers' Business Judgment

37.    Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances discussed in detail below.  Courts grant a debtor-in-possession considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code.  Indeed, "courts will almost always defer to the business judgment of a debtor in the selection of the lender." *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011); *see also In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

38.    To determine whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code").  Furthermore, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender.  This includes the recognition that a debtor may have to enter into "hard bargains" to acquire funds for its reorganization.  *In re Elingsen McLean Oil*

14

*Co., Inc.*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986).  A court should interfere with the Debtor's management decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duties to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code.  *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3rd Cir. 2003).

39.     Here, the Court has already found, as part of the Original DIP Order, that the DIP Borrowers require access to liquidity to ensure that they are able to preserve the value of their estates and maximize their assets for the benefit of all parties in interest and other stakeholders. Unfortunately, the original $2,000,000 in borrowing available under the Original DIP Facility will not be sufficient to fund the remaining costs of the Remediation Project and the Cleaning Project as well as the continuing legal fees of Genever US' insurance counsel in the AIG Litigation.

40.     Absent additional funding, Genever US will not be in a position to make all remaining payments to its contractors and vendors, putting at risk the completion of the Remediation Project and the Cleaning Project.  In that situation, Genever US may be forced to accept an offer for the Apartment that does not reflect its true value.

41.     The DIP Borrowers, and the Trustee as holder of the proxy, have determined, in their business judgment, that there are no better available alternatives and that the Amended DIP Facility represents the best financing available under the totality of the circumstances.  Thus, the Amended DIP Facility is in the best interests of the DIP Borrowers' creditors and all other stakeholders and, therefore, the DIP Amendment should be approved by the Court.

## III.    DIP Facility Satisfies Entire Fairness Standard

42.    To the extent the DIP Lender is an insider of the DIP Borrowers as defined by the Bankruptcy Code, the DIP Amendment may be subject to the heightened "entire fairness" standard.  But even if the Court were to apply that standard, the DIP Amendment satisfies this standard and should be approved.

43.    "[U]nder the entire fairness doctrine, a self-dealing transaction must be justified under both elements of a two-pronged inquiry into the fair process and the fair price of the transaction."  *In re Perry H. Koplik & Sons, Inc.*, 476 B.R. 746, 803 (Bankr. S.D.N.Y. 2012) (subsequent history omitted).  "Fair [process] involves analyzing how the transaction was structured, the timing, disclosures, and approvals.  Fair price relates to the economic and financial considerations of the transaction."  *In re Signature Apparel Grp. LLC*, 577 B.R. 54, 101 (Bankr. S.D.N.Y. 2017).

44.    Fair Process.  The DIP Borrowers' and the DIP Lender's conduct, and the overall process of preparing and entering into the DIP Amendment, was fair and reasonable.  While the Trustee has acted for both the DIP Lender and the DIP Borrowers, he has been fully transparent in his dual roles.  Moreover, the Trustee acts for the DIP Borrowers only pursuant to the authority given to him by the independent director for Genever BVI (*i.e.*, Claire Abrehart),[16] which authority is revocable at any time.

45.    Fair Price.  As noted, the DIP Amendment does not change the terms of borrowing under the DIP Facility, which the Court previously approved in the Original DIP

---

[16]    By shareholder's resolution dated September 14, 2022, Ms. Abrehart was appointed as the Independent Director, effective as of September 14, 2022, replacing its former director, Mr. Ho Wan Kwok.  *See Declaration of Claire Abrehart, Director of Genever Holdings Corporation, in Support of Debtor's Chapter 11 Petition* [Case 22-50542, Docket No. 8].

Order.  Moreover, as detailed in the Original DIP Motion, the terms of the DIP Facility are more favorable than the DIP Borrowers could have obtained from any other lender (assuming any financing was available at all, on any terms).  At the same time, however, the DIP Facility, as amended by the DIP Amendment, continues to benefit the DIP Lender while also including important provisions (such as the DIP Claim, the DIP Liens, and that advances are at the DIP Lender's discretion) that protect the DIP Lender's estate.

**IV.**    **DIP Borrowers Should Be Authorized to Grant Liens and Superpriority Claims**

46.    The DIP Borrowers propose to obtain financing under the Amended DIP Facility by granting the DIP Lender (i) a superpriority administrative expense claim and (ii) junior non-priming liens on the DIP Collateral, as was the case with the original DIP Credit Agreement.

47.    Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the Court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien.

48.    The statutory requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of [the Bankruptcy Code]."  11 U.S.C. § 364(c).  *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).  A debtor need only demonstrate that it made reasonable efforts to seek other sources of funding before granting the credit enhancements afforded to potential

lenders by sections 364(c) of the Bankruptcy Code. *See In re Ames Dep't Stores*, 115 B.R. at 37–39.

49.     Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts consider whether (i) the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, *i.e.*, by allowing a lender only an administrative claim, (ii) the credit transaction is necessary to preserve the assets of the estate, and (iii) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders. *See In re Ames*, 115 B.R. at 37-40.

50.     As detailed in the Original DIP Motion, the DIP Borrowers do not believe that alternative sources of funding are available. The DIP Borrowers do not operate an ongoing business and generate no revenue. Their only significant assets are the Apartment and the AIG Litigation, and it remains uncertain whether (and when) the DIP Borrowers will be able to see any value from those assets. Under these circumstances, "shopping around" for an alternative lender that would be willing to extend credit to the DIP Borrowers on an unsecured basis would be a waste of time and money—and this is especially true here where the Court previously authorized the DIP Lender to extend credit to the DIP Borrowers under the DIP Facility. It is also highly unlikely that any lender would offer the DIP Borrowers terms that are as favorable as those under the Amended DIP Credit Agreement, including, without limitation, non-priming liens, a low interest rate, no default interest, no minimum draw, no 13-week budget, and no DIP fees.

51.     Therefore, the DIP Borrowers submit that they have satisfied the standards required to obtain postpetition financing under section 364(c) of the Bankruptcy Code.

## V.     Automatic Stay Should Be Modified on a Limited Basis

52.     The DIP Amendment Order provides, as did the Original DIP Order, that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to allow the DIP Lender to file any financing statements, security agreements, notices of liens, and other similar instruments and documents in order to validate and perfect the liens and security interests granted under the DIP Amendment Order.  Moreover, as did the Original DIP Order, the DIP Amendment Order further modifies the automatic stay as necessary to permit the DIP Borrowers to grant the DIP Liens to the DIP Lenders and to incur all liabilities and obligations set forth in the DIP Order.  Finally, the DIP Amendment Order provides, as did the Original DIP Order, that, following a default, the automatic stay shall be vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies in accordance with the DIP Credit Agreement (as amended) and related documents and subject to the limitation on enforcement actions with respect to the Coop Interest and the Cash Deposit unless and until the SN Senior Debt, to the extent allowed, has been paid in full.

53.     Stay modifications of this kind are ordinary and standard features of debtor-in-possession financing arrangements and, in the DIP Borrowers' business judgment, are reasonable and fair under the circumstances.  Indeed, as noted, this Court approved the same stay modifications as part of the Original DIP Order.

## VI.     DIP Amendment Order Should Be Approved on a Final Basis

54.     Pursuant to Bankruptcy Rule 4001(c)(2), a bankruptcy court can approve postpetition financing "no earlier than 14 days after service of the motion" seeking such financing.  If a debtor requests, a court may approve interim financing "before such 14-day period expires," upon the required showing.

55.     The instant Motion does not request funding on an interim basis prior to the expiration of the full 14-day notice period.  Thus, the Movants seek approval of the DIP Facility on a final basis.

## VII.    DIP Lender Should Be Deemed a Good-Faith Lender Under Bankruptcy Code Section 364(e)

56.     Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal.

57.     As explained herein, the terms of the Amended DIP Facility are the result of (i) the DIP Borrowers' reasonable and informed determination that the DIP Lender offered the most favorable terms on which to obtain critical postpetition financing and (ii) good-faith considerations by the DIP Borrowers and the DIP Lender (acting through its representative, the Trustee).  The terms and conditions of the Amended DIP Facility are reasonable and appropriate under the circumstances, and the DIP Borrowers will use the proceeds of the Amended DIP Facility only as permitted by the Bankruptcy Code and the Amended DIP Credit Agreement. Further, no consideration is being provided to any party to the Amended DIP Facility other than as described herein.  Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and is entitled to all of the protections of that section.

## WAIVER OF BANKRUPTCY RULES 4001(a)(3) AND 6004(h)

58.     Bankruptcy Rule 4001(a)(3) provides that an "order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule

20

6004(h) provides that "an order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

59.     As explained herein, access to the DIP Facility is essential to prevent irreparable damage to the DIP Borrowers' estates.

60.     Accordingly, ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rule 4001(a)(3) and 6004(h), and the DIP Borrowers request of waiver of the stay, to the extent such stay applies.

## **NOTICE**

61.     Notice of this Motion will be served upon (i) the Office of the United States Trustee for the District of Connecticut, (ii) counsel for the Individual Debtor, (iii) the Committee, (iv) AIG, (v) all parties required by Bankruptcy Rule 4001(c), (vi) all parties who have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, and (vii) all parties required by any other Court order.[17]

*[Remainder of page intentionally left blank.]*

---

[17]   Concurrently herewith, the Trustee has filed a motion to limit service of the instant Motion to avoid the expense and undue burden of serving the Motion on approximately 1,400 creditors.  If granted, the Trustee would serve the instant Motion on the Notice Parties (as defined therein).

WHEREFORE, for the foregoing reasons, Movants respectfully request that the Court enter the proposed DIP Amendment Order granting the relief requested herein.

Dated: June 18, 2024
　　　　　New York, New York

By: */s/ Luc A. Despins*　　　　　　　
Luc A. Despins (admitted *pro hac vice*)
G. Alexander Bongartz (admitted *pro hac vice*)
Douglass Barron (admitted *pro hac vice*) PAUL
HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
lucdespins@paulhastings.com
alexbongartz@paulhastings.com
douglassbarron@paulhastings.com

　　　*and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

　　　*and*

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for Movants*

　　　*and*

Michael T. McCormack (ct13799)
Timothy P. Jensen (ct18888)

22

Amy E. Markim (ct27974)
O'Sullivan McCormack Jensen & Bliss PC
180 Glastonbury Boulevard, Suite 210
Glastonbury, CT 06033
Tel: 860-258-1993
Fax: 860-258-1991
mmccormack@omjblaw.com
tjensen@omjblaw.com
amarkim@omjblaw.com

*Special Insurance Coverage Counsel for
Genever Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
HO WAN KWOK, *et al*.,[1]                              :    Case No. 22-50073 (JAM)
                                                       :
                    Debtors.                           :    (Jointly Administered)
                                                       :
-------------------------------------------------------x

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on June 18, 2024, the foregoing Motion was

electronically filed.  Notice of this filing was sent by e-mail to all parties to the above-captioned

chapter 11 case by operation of the Court's electronic filing ("<u>CM/ECF</u>") system or by mail to

anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing as well

as counsel for AIG.  Parties may access this filing through the Court's CM/ECF system.

Dated:   June 18, 2024                    By: */s/ G. Alexander Bongartz*
         New York, New York               G. Alexander Bongartz (admitted *pro hac vice*)
                                          PAUL HASTINGS LLP
                                          200 Park Avenue
                                          New York, New York 10166
                                          (212) 318-6079
                                          alexbongartz@paulhastings.com

                                          *Counsel for Movants*

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
       Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
       Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The
       mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul
       Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho
       Wan Kwok (solely for purposes of notices and communications).

**EXHIBIT A**

**Proposed DIP Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

--------------------------------------------------------x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
HO WAN KWOK, *et al.*,[1]                               :    Case No. 22-50073 (JAM)
                                                        :
                         Debtors.                       :    (Jointly Administered)
                                                        :
--------------------------------------------------------x

**ORDER (I) AUTHORIZING CHAPTER 11 TRUSTEE, GENEVER US, AND GENEVER BVI TO ENTER INTO AMENDMENT TO DIP CREDIT AGREEMENT**

Upon the motion (the "Motion"[2]) of Genever Holdings LLC ("Genever US"), Genever Holdings Corporation ("Genever BVI") and Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") of Ho Wan Kwok (the "Individual Debtor"), debtors in these above-captioned jointly administered cases (the "Chapter 11 Cases"), seeking a final order (the "DIP Order") pursuant to sections 105(a), 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code, (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-3 of the Local Rules of the United States Bankruptcy Court for the District of Connecticut (the "Local Rules"), authorizing Genever US and Genever BVI (together, the "Genever Debtors" or the "DIP Borrowers") and the estate of the Individual Debtor, through its representative (*i.e.*, the Trustee), to enter into the

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion or the Original DIP Order, as applicable.

DIP Amendment to increase the maximum borrowing available under the DIP Facility from $2 million to $3 million.

The Court having reviewed the Motion and arguments made at the hearing held on [_____], 2024 (the "Hearing") to consider entry of this Order, and due and sufficient notice of the Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, 6004, and 9014, and all applicable Local Rules; and the Hearing having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and that such relief is fair and reasonable and in the best interests of Movants, their estates, their creditors and all parties in interest, and is essential for the preservation of the value of the DIP Borrowers' estates; and it appearing that Movants' entry into the DIP Amendment is a sound and prudent exercise of the DIP Borrowers' and the Trustee's business judgment; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    *Jurisdiction and Venue*.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

bases for the relief requested in this Motion are sections 105(a), 362, 363, 364, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-3.

B.   *Notice*.  The DIP Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Proper, timely, adequate, and sufficient notice of the Motion and the DIP Hearing has been provided in accordance with Local Rule 4001-3(g)(7), and no other or further notice of the Motion or the entry of this DIP Order shall be required.

C.   *Findings Regarding the DIP Amendment.*

(a)   <u>Cause Exists</u>.  Good and sufficient cause has been shown for the entry of this Order and for authorization of the DIP Borrowers to enter into and borrow under the Amended DIP Credit Agreement.

(b)   <u>Need for DIP Financing</u>.  The DIP Borrowers have an immediate and critical need to incur the financing under the Amended DIP Agreement in order to permit, among other things, the funding of expenses of administering their chapter 11 cases and other necessary expenses, such as essential remediation repairs to the Apartment, U.S. Trustee Fees, and professional fees.  The DIP Borrowers' access to sufficient liquidity through the incurrence of indebtedness under the Amended DIP Facility is necessary and vital for the preservation and maximization of the value of the DIP Borrowers' chapter 11 estates.

(c)   <u>No Credit Available on More Favorable Terms</u>.  The Amended DIP Facility is the best source of debtor-in-possession financing reasonably available to the DIP Borrowers at this time.  The DIP Borrowers have determined that the DIP Borrowers are unable to obtain adequate credit on more favorable terms than those provided under the DIP Facility.

(d)   <u>Business Judgment and Entire Fairness</u>.  Based on the record established in the Motion and at the Hearing, the terms of the Amended DIP Agreement and the Amended

3

DIP Facility (i) are in each case fair and reasonable, reflect the DIP Borrowers' and the Trustee's exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represent the best financing available and (ii) to the extent applicable, satisfy the entire fairness standard.

(e)     <u>Good-Faith Lender</u>.  The DIP Amendment is the result of (i) the DIP Borrowers' reasonable and informed determination that the DIP Lender offered the most favorable terms on which to obtain critical postpetition financing and (ii) good-faith considerations by the DIP Borrowers and the Trustee acting as the representative of the Individual Debtor's estate.  The terms and conditions of the Amended DIP Facility are reasonable and appropriate under the circumstances.  Further, no consideration is being provided to any party to the Amended DIP Facility other than as described in the Motion.  The DIP Loans and any obligations of the DIP Borrowers owing to the DIP Lender, in accordance with the terms of the Amended DIP Credit Agreement, have been extended by the DIP Lender in good faith, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Lender (and any successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     <u>Use of Proceeds of the Amended DIP Facility</u>.  The DIP Borrowers will use the proceeds of the Amended DIP Facility consistent with this Order and as provided in the Amended DIP Credit Agreement and only for purposes that are permissible under the Bankruptcy Code.

(g)     <u>Section 506(c) of the Bankruptcy Code</u>.  The DIP Lender is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code as provided herein.

4

(h)    <u>Corporate Authority</u>.  The DIP Borrowers and the Trustee (acting as the representative of the DIP Lender) each have all requisite power and authority to execute and deliver the DIP Amendment to which it is a party and to perform its obligations thereunder, including without limitation, the incurrence of the DIP Loans and the pledge of applicable DIP Collateral.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Disposition.*  The relief requested in the Motion is granted on a final basis as set forth herein.  Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled are hereby denied and overruled on the merits.  This Order shall become effective immediately upon its entry.

2.    *Authorization of the Amended DIP Financing and the DIP Amendment.*

(a)    The Amended DIP Facility is hereby approved on a final basis as set forth herein.  The Movants, by this Order, are authorized to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Amendment and such other acts as may be necessary, appropriate or desirable in connection therewith.  The DIP Borrowers are hereby authorized to borrow money pursuant to the Amended DIP Credit Agreement, subject to any limitations therein, which shall be used for all purposes permitted by this Order and under the Amended DIP Credit Agreement and subject to the terms and conditions set forth herein and therein.  The DIP Lender (acting through the Trustee) is authorized to make the advances described in the Amended DIP Credit Agreement directly to a payee or obligee of the DIP

Borrowers, and any such advances will be considered advances under the Amended DIP Credit Agreement.

(b)    In furtherance of the foregoing and without further approval of this Court, the DIP Borrowers and the Trustee, acting as representative of the DIP Lender, are each authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds, and documents, and to pay the principal, interest, and other amounts described in the Amended DIP Credit Agreement as such amounts become due and payable in accordance with the terms and conditions of the Amended DIP Credit Agreement, and to take any other related actions that may be necessary, desirable or appropriate, all to the extent provided in this Order or the Amended DIP Credit Agreement.

3.    *Carve-Out.* The Carve-Out shall have the meaning set forth the Original DIP Order.

4.    *DIP Claim.* Pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Lender shall be granted an allowed senior secured superpriority administrative expense claim against each of the DIP Borrowers, on a sole and several basis, with priority over any and all other claims against the DIP Borrowers, now existing or hereafter arising, of any kind whatsoever, other than the Allowed SN Senior Debt Claim and other SN Senior Debt to the extent allowed, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed senior secured superpriority administrative expense claim (the "DIP Claim") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative

6

expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Claim shall be payable from and have first recourse to (i) the DIP Collateral and all proceeds thereof, subject only to payment of the Carve-Out and the Allowed SN Senior Debt Claim and other SN Senior Debt to the extent allowed and (ii) any other asset of the DIP Borrowers; *provided, however*, that the DIP Claim will not have first recourse to proceeds of any actions under sections 502(d), 544, 545, 547, 548, 551, 553(b), 732(2) or 742(2) of the Bankruptcy Code.  For the avoidance of doubt, except for the Carve-Out and the Allowed SN Senior Debt Claim and other SN Senior Debt to the extent allowed, the DIP Claim shall not be made subject to or *pari passu* with any claim heretofore granted or hereinafter granted or created in the chapter 11 cases or any successor case or cases under the Bankruptcy Code (including, without limitation, any case under chapter 7 of the Bankruptcy Code), and such DIP Claim shall maintain its priority as provided herein until all obligations hereunder and under the Amended DIP Credit Agreement have been paid in full.  The DIP Claim shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

5.      *DIP Collateral*.  DIP Collateral shall have the meanings set forth in, and shall include the property (and proceeds thereof) as set forth in, the Original DIP Order.

6.      *DIP Liens*.  As security for the DIP Loans, and subject only to the Carve-Out, effective and automatically and properly perfected upon the date of the entry of this Order, and without the necessity of the execution, recordation, perfection, filings by the DIP Lender, or the possession or control by the DIP Lender of, or over, any DIP Collateral, the following valid,

binding, continuing, enforceable and non-avoidable security interests and liens are hereby granted to the DIP Lender (all such liens and security interests the "<u>DIP Liens</u>").

      (a)    <u>Senior Liens</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, enforceable, fully-perfected first priority security interest in and lien upon the DIP Collateral that, on or as of the Petition Date, is not otherwise subject to a lien.  For the avoidance of doubt:

1. The Sherry Netherland First Lien and the Sherry Netherland's security interest in and first lien on the Cash Deposit (the "<u>Sherry Netherland Cash Deposit Lien</u>" and, together with the Sherry Netherland First Lien, the "<u>Sherry Netherland Senior Liens</u>") are valid and duly perfected and are senior to and have priority in all respects, including payment, to the security interests and liens granted to the DIP Lender with respect to DIP Collateral and the proceeds thereof.

2. Subject to the Carve-Out, the DIP Lender shall have a first priority security interest in all DIP Collateral (other than the Coop Interest and the Cash Deposit) including, without limitation, the Borrowers' Litigation Claims (including the AIG Litigation) and Genever BVI's ownership interest in Genever US. Notwithstanding the foregoing, the Sherry Netherland shall have the right to assert solely an equitable lien in and over any proceeds of the AIG Litigation (but not any other Borrowers' Litigation Claim).  If such equitable lien is asserted, the validity,

enforceability, and priority of such asserted equitable lien will be determined by a court of competent jurisdiction (with the Movants believing that the Bankruptcy Court would have sole and exclusive jurisdiction and the Sherry Netherland reserving all rights) under applicable bankruptcy and non-bankruptcy law, and all parties' rights with respect thereto are preserved.

(b)      <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, enforceable, fully-perfected junior security interest in and lien upon the DIP Collateral that (i) on or as of the Petition Date is subject to valid, perfected and unavoidable senior liens in existence immediately prior to the Petition Date or (ii) becomes subject to perfected liens as permitted by section 546(b) of the Bankruptcy Code.  For the avoidance of doubt, the DIP Liens shall be junior to the Sherry Netherland Senior Liens.

(c)      <u>No Cross-Collateralization</u>.  The DIP Liens granted in the property of each DIP Borrower will secure only the obligations of that borrower.

(d)      <u>No Default Under Proprietary Lease</u>.  The Sherry Netherland shall not raise any argument, in connection with the Motion or otherwise, that Genever US defaulted under the Proprietary Lease by granting the security interests and liens described herein.

7.      The DIP Liens shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that any of the DIP Orders or any provision thereof is vacated, reversed or modified, on appeal or otherwise.

8.      *Protection of Rights under the Amended DIP Facility.*  The automatic stay is hereby modified to the extent necessary to permit the DIP Borrowers and the Trustee, as representative of the DIP Lender, as applicable, to take any or all of the following actions, at the

9

same or different time, in each case without further order or application of the Court: (i) file any

financing statements, security agreements, notices of liens, and other similar instruments and

documents in order to validate and perfect the liens and security interests granted herein; (ii)

grant the DIP Liens and incur all liabilities and obligations set forth herein; and (iii) following a

default, exercise all rights and remedies of the DIP Lender in accordance with the Amended DIP

Credit Agreement.  For the avoidance of doubt and as set forth in the Amended DIP Credit

Agreement, the DIP Lender will not take any enforcement action whether by demand foreclosure

or other enforcement action, to collect on any obligations arising under the Amended DIP Credit

Agreement by realizing upon the whole or part of the Coop Interest or Cash Deposit unless and

until there is full payment of the Allowed SN Senior Debt Claim and other SN Senior Debt to the

extent allowed.

9.     *Preservation of Rights Granted Under the DIP Amendment Order.*

(a)     Other than the Carve-Out and as permitted in the Amended DIP Credit

Agreement, no claim or lien having a priority superior to or *pari passu* with the DIP Claim or the

DIP Lien shall be permitted while any of the DIP Loans remain outstanding and, except as

otherwise expressly provided in this Order, the DIP Liens shall not be: (i) subject or junior to any

lien or security interest that is avoided and preserved for the benefit of the DIP Borrowers'

estates under section 551 of the Bankruptcy Code; or (ii) subordinated to or made *pari passu*

with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or

otherwise.

(b)     As used in this Order, the term "Event of Default" shall mean the

existence of (i) any Event of Default (as defined in the Amended DIP Credit Agreement) or (ii)

any material breach of any of the terms of this Order by the DIP Borrowers.  Notwithstanding

any order entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise: (i) the DIP Claims and the DIP Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities until all DIP Loans shall have been paid in full (and that such DIP Claim and DIP Liens, shall, notwithstanding such dismissal, remain binding); (ii) the other rights granted by the DIP Order, including with respect to the Carve-Out, shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Order.

(c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, the DIP Order, and the DIP Credit Agreement with respect to the DIP Loans.

(d)     Except as expressly provided in this Order or in the Amended DIP Credit Agreement, the DIP Liens and the DIP Claim and all other rights and remedies of the DIP Lender granted by the provisions of Amended DIP Credit Agreement shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of the Chapter 11 Cases or by any other act or omission; (ii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the DIP Borrowers waive any discharge as to any remaining DIP Loans.  The terms and provisions of the DIP Credit Agreement shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the

11

Bankruptcy Code, and the DIP Liens and the DIP Claim and all other rights and remedies of the

DIP Lender, granted by the provisions of the DIP Credit Agreement shall continue in full force

and effect until the DIP Loans are paid in full, as set forth herein and in the DIP Credit

Agreement.

10.    *Loss or Damage to DIP Collateral*.  Nothing in this Order, the Amended DIP

Credit Agreement, or any other documents related to these transactions shall in any way be

construed or interpreted to impose or allow the imposition upon the Trustee of any liability for

any claims arising from the prepetition or postpetition activities of the DIP Lender or the DIP

Borrowers in connection with their restructuring efforts.

11.    *Authority to Pay Certain Post-Petition Fees*.  Genever US is authorized to agree

to pay, and the DIP Lender, acting through and at the discretion of the Trustee is authorized to

advance funds for the payment of, (i) reasonable post-petition fees of the Sherry Netherland's

counsel and (ii) Genever US's professionals that have provided, or continue to provide, services

to Genever US after the Venue Transfer Date.  Prior to making payments under this paragraph,

Genever US shall file a notice with the Court attaching the applicable invoices. Parties in interest

will then have fourteen (14) days to object to such invoices.  If no timely objections are filed

with the Court, Genever US is authorized to pay such invoices without further Court order.  If

any timely objections are filed, (i) Genever US and the affected professional(s) may file a

response to such objection(s) within seven (7) days thereafter and (ii) Genever US shall pay the

portion of the fees and expenses that are not subject to such objection(s). To the extent that an

objection cannot be consensually resolved among the parties, the Court will rule on the matter.

12.    *Postpetition Claims Under Proprietary Lease*.  Nothing herein or in the Motion

constitutes, or shall be construed as, a finding or waiver regarding the allowance or priority of

any asserted postpetition amounts that have arisen, or may arise, under the Proprietary Lease and other corporate documents, including, without limitation, claims as a result of the fire in the Apartment, and all parties' rights with respect to such postpetition claims are fully preserved.

13.     *DIP Amendment Order Governs*.  In the event of any inconsistency between the provisions of this Order, on the one hand, and the Amended DIP Credit Agreement or any other order entered by this Court, the provisions of this Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to and any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Order and the Amended DIP Credit Agreement.

14.     *Binding Effect; Successors and Assigns*.  The Amended DIP Credit Agreement and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Borrowers, the Trustee, the DIP Lender, the Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and their respective successors and assigns.

15.     *No Waiver.*  No delay or failure of the DIP Lender in the exercise of its rights and remedies under the Amended DIP Credit Agreement or this Order, as applicable, shall constitute a waiver, in whole or in part, of any of the DIP Lender's rights hereunder or otherwise.

16.     *Effectiveness*.  This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

17.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

18.     *Bankruptcy Rules and Local Rules*.  The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.  To the extent necessary, the requirements of Bankruptcy Rule 4001(b)(1)(B) and Local Rule 4001-3(a), as it relates to the requirement that the Motion contain a concise statement of the material terms of the Amended DIP Credit Agreement is hereby waived.

19.     *No Third Party Rights*.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, or any direct, indirect or incidental beneficiary.

20.     *Necessary Action*.  The DIP Borrowers, the Trustee, and the DIP Lender are authorized to take all actions as are necessary or appropriate to implement the terms of this Order.

21.     *Notice.* Within three (3) business days after entry of this Order, the DIP Borrowers shall serve copies of this Order on the parties having been given notice of the Hearing, to any party that has filed a request for notices with this Court, and to counsel for the Committee.

## Exhibit 1

### DIP Amendment

## FIRST AMENDMENT TO MULTI-DRAW SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION CREDIT AND SECURITY AGREEMENT

This First Amendment, dated as of June 17, 2024 (this "Amendment"), to the MULTI-DRAW SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION CREDIT AND SECURITY AGREEMENT, dated as of August 23, 2023 (as amended, amended and restated, supplemented or otherwise modified prior to the date hereof, the "Credit Agreement" and, as further amended by this Amendment, the "Amended Credit Agreement"), is entered into by and among (i) Genever Holdings LLC, a New York limited liability company and a debtor and debtor-in-possession in the Chapter 11 Cases ("Genever US"), (ii) Genever Holdings Corporation, a corporation registered under the laws of the British Virgin Islands and a debtor and debtor-in-possession in the Chapter 11 Cases ("Genever BVI" and together with Genever US, the "Borrowers"), and (iii) the chapter 11 estate of Ho Wan Kwok (the "Individual Debtor"), acting through its representative, Luc A. Despins in his capacity as the chapter 11 trustee (the "Chapter 11 Trustee") of the Individual Debtor (such chapter 11 estate being the "Lender"; together with the Borrowers party hereto, the "Parties"). Capitalized terms used and not otherwise defined herein shall have the meaning assigned to such terms in the Credit Agreement.

WHEREAS, pursuant to the Credit Agreement and the DIP Order, the Lender agreed to provide the Borrowers with a senior secured super-priority debtor-in-possession credit facility (the "DIP Facility"), consisting of $2,000,000 in revolving Loans to be made available to the Borrowers pursuant to the terms of, and subject to the conditions set forth in, the Credit Agreement and the DIP Order; and

WHEREAS the Parties hereby agree to amend the Credit Agreement pursuant to Section 6.5 thereof to increase the amount of revolving Loans to be made available under the Credit Agreement to $3,000,000.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby covenant and agree as follows:

**SECTION 1. AMENDMENT.** Annex A attached to Credit Agreement is hereby replaced with Annex A attached to this Amendment.

**SECTION 2. DEFINITIONS.**

(a)     The "DIP Amendment Order" means an order of the Bankruptcy Court in the Chapter 11 Cases, which order shall (a) be in form and substance, and on terms and conditions, satisfactory to the Lender, (b) subject to the foregoing, authorize and approve, on a final basis, among other things, this Amendment to the Credit Agreement and all other matters set forth in, and transactions contemplated by, the motion seeking approval of this Amendment, (c) be in full force and effect, and (d) not have been reversed, vacated, stayed or amended, supplemented or otherwise modified (unless the Lender shall have previously consented thereto in writing).

**SECTION 3. EFFECTIVENESS.** Subject to entry of the DIP Amendment Order, this Amendment shall become effective when it shall have been executed by each of the Borrowers party hereto and the Lender party hereto and such executed counterparts have been delivered to

the Lender pursuant to the terms of this Amendment. Thereafter, it shall be binding upon and inure to the benefit of, but only to the benefit of each Borrower hereto and the Lender and, in each case, their respective successors and permitted assigns.

**SECTION 4. DIP AMENDMENT ORDER CONTROLS.** The Borrowers and the Lender hereby expressly agree that, in the event of any conflict or inconsistency between this Amendment (or any other Loan Document), on the one hand, and the DIP Amendment Order, on the other hand, the DIP Amendment Order shall control. Notwithstanding anything to the contrary herein, the provisions of this Amendment are subject to the terms, covenants, conditions and provisions of, the DIP Amendment Order, as applicable. This Amendment is subject in all respects (including with respect to all obligations and agreements of the Borrowers provided for hereunder) to the terms of the DIP Amendment Order and, notwithstanding anything in the foregoing, the Borrowers shall not be required to undertake any obligation, make any agreement or take any action that is prohibited by the terms of the DIP Amendment Order.

**SECTION 5. COUNTERPARTS.** This Amendment may be executed in several counterparts, and by each Party on separate counterparts, each of which and any photocopies, facsimile copies and other electronic methods of transmission thereof shall be deemed an original, but all of which together shall constitute one and the same agreement.

**SECTION 6. GOVERNING LAW.** All questions concerning the construction, validity, enforcement and interpretation of this Amendment and, unless otherwise expressly stated therein, the other Loan Documents shall be governed by and construed and enforced in accordance with the laws of the State of New York applicable to contracts made and to be performed in such State. Each Party hereby irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court and, solely to the extent that the Bankruptcy Court does not have (or abstains from exercising) jurisdiction over any matter, the state and federal courts sitting in the City of New York, borough of Manhattan for the adjudication of any dispute hereunder or under the other Loan Documents or in connection herewith or with the other Loan Documents or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, or that such suit, action or proceeding is improper or is an inconvenient venue for such proceeding; provided that nothing in this Amendment or in any other Loan Document shall limit the right of the Lender to commence any suit, action or proceeding in federal, state or other court of any other jurisdiction to the extent the Lender determines that such suit, action or proceeding is necessary or appropriate to exercise its rights or remedies under this Amendment or any of the other Loan Documents. Each Party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such Party at the address in effect for notices to it under this Amendment and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by law. THE PARTIES HERETO, TO THE EXTENT PERMITTED BY LAW, WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING ARISING OUT OF, IN CONNECTION WITH OR RELATING TO, THIS AMENDMENT, THE OTHER LOAN DOCUMENTS AND ANY OTHER TRANSACTION CONTEMPLATED HEREBY AND THEREBY. THIS WAIVER APPLIES TO ANY ACTION, SUIT OR PROCEEDING WHETHER SOUNDING IN

TORT, CONTRACT OR OTHERWISE. EACH PARTY HERETO (A) CERTIFIES THAT NO OTHER PARTY AND NO AGENT, REPRESENTATIVE OR OTHER PERSON AFFILIATED WITH OR RELATED TO ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THE LOAN DOCUMENTS, AS APPLICABLE, BY THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

**SECTION 7.  SEVERABILITY.**  If any provision of this Amendment or any of the other Loan Documents shall be invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions hereof or thereof shall not in any way be affected or impaired thereby.  The Parties shall endeavor in good faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provision.

**SECTION 8.  NO THIRD PARTIES BENEFITED.**  This Amendment is made and entered into for the sole protection and legal benefit of the Borrowers and the Lender, and their successors and permitted assigns, and no other Person shall be a direct or indirect legal beneficiary of, or have any direct or indirect cause of action or claim in connection with, this Amendment or any of the other Loan Documents.  The Lender shall not have any obligation to any Person not a party to this Amendment or the other Loan Documents.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the Parties have caused this Amendment to be duly executed as of the first day written above.

**BORROWERS:**

**GENEVER HOLDINGS LLC**, a New York limited liability company

By: */s/ Luc A. Despins*

Name:  Luc A. Despins

Title:  Proxy Holder of Genever Holdings LLC

**GENEVER HOLDINGS CORPORATION**, a corporation organized under the laws of the British Virgin Islands

By: */s/ Luc A. Despins*

Name:  Luc A. Despins

Title: Proxy Holder of Genever Holdings Corporation

**LENDER:**

**LUC A. DESPINS**, in his capacity as Trustee for the Chapter 11 Estate of Ho Wan Kwok

By: */s/ Luc A. Despins*

Name:  Luc A. Despins

Title:  Chapter 11 Trustee

## ANNEX A

**Commitments**

| Lender | Commitment |
|---|---|
| Luc A. Despins, in his capacity as Trustee for the Chapter 11 Estate of Ho Wan Kwok | $3,000,000.00 |
| **TOTAL** | **$3,000,000.00** |

**EXHIBIT B**

## Summary of DIP Borrowings to Date

| Borrowing Date | DIP Borrower | Recipient of DIP Borrowing | Description | Amount |
|---|---|---|---|---|
| 9/9/2023 | Genever US | AIG | Deemed borrowing for Kwok estate having paid insurance premiums to AIG | $ 8,731.00 |
| 9/9/2023 | Genever US | Gallagher Bassett Services, Inc. | Deemed borrowing for Kwok estate having paid asbestos survey and reporting | $ 3,871.56 |
| 9/29/2023 | Genever US | Saxe Doernberger & Vita PC | Expense reimbursement per fee statement [Docket No. 2236] | $ 236,452.00 |
| 10/2/2023 | Genever BVI | Harneys Corporate Services | Gevever BVI corporate fees (including director services) | $ 24,784.58 |
| 10/4/2023 | Genever US | Gallagher Bassett Services, Inc. | ATRU and variance drawings and final inspection | $ 7,349.06 |
| 10/13/2023 | Genever US | ABF Environmental, Inc. | Asbestos abatement and insulation work | $ 48,900.00 |
| 10/19/2023 | Genever US | Gustav Restoration LLC | Clearing out North East Terrace | $ 6,813.12 |
| 10/31/2023 | Genever US | Acheson Doyle Partners Architects, PC | Architect fees | $ 3,380.86 |
| 11/10/2023 | Genever US | Gustav Restoration LLC | Fireplace removal (50% deposit) | $ 1,226.12 |
| 11/20/2023 | Genever US | O'Sullivan McCormack Jensen & Bliss PC | Compensation and expense reimbursement per fee statements [Docket Nos. 2271 and 2272] | $ 107,899.32 |
| 12/1/2023 | Genever US | Acheson Doyle Partners Architects, PC | Architect fees | $ 63,720.78 |
| 12/1/2023 | Genever US | Catalpa Special Inspections | Retainer for remediation project at The Sherry Netherland | $ 2,875.00 |
| 12/12/2023 | Genever US | Gustav Restoration LLC | Fireplace removal (remaining 50%) | $ 1,226.13 |
| 12/20/2023 | Genever US | O'Sullivan McCormack Jensen & Bliss PC | Compensation and expense reimbursement per fee statement [Docket No. 2355] | $ 20,063.45 |
| 12/20/2023 | Genever US | Acheson Doyle Partners Architects, PC | Architect fees | $ 74,011.84 |
| 1/16/2024 | Genever US | O'Sullivan McCormack Jensen & Bliss PC | Compensation and expense reimbursement per fee statement [Docket No. 2459] | $ 25,322.41 |
| 1/16/2024 | Genever US | Acheson Doyle Partners Architects, PC | Architect fees | $ 27,760.65 |
| 2/2/2024 | Genever US | Acheson Doyle Partners Architects, PC | Architect fees | $ 29,003.70 |
| 2/2/2024 | Genever US | Skyline Windows LLC | Window replacement at the Sherry Netherland (deposit) | $ 60,258.50 |
| 2/14/2024 | Genever BVI | Harneys Corporate Services Limited | Genever Holdings Corporation annual invoice | $ 23,875.00 |
| 2/14/2024 | Genever US | O'Sullivan McCormack Jensen & Bliss PC | Compensation and expense reimbursement per fee statement [Docket No. 2511] | $ 5,338.84 |
| 2/14/2024 | Genever US | Arista Air Conditioning Corp | Removal of AC units | $ 2,515.01 |
| 2/23/2024 | Genever BVI | United States Trustee | Quarterly fee payment | $ 250.60 |
| 2/23/2024 | Genever US | United States Trustee | Quarterly fee payment | $ 770.00 |
| 3/15/2024 | Genever US | United States Trustee | Quarterly fee payment | $ 267.22 |
| 3/20/2024 | Genever US | Acheson Doyle Partners Architects, PC | Architect fees | $ 13,048.86 |
| 3/21/2024 | Genever US | Burnham Nationwide, Inc. | Expeditor fees | $ 9,398.66 |
| 3/25/2024 | Genever US | O'Sullivan McCormack Jensen & Bliss PC | Compensation and expense reimbursement per fee statement [Docket No. 3017] | $ 38,346.00 |
| 3/27/2024 | Genever US | Sciame Homes NY LLC | Invoice #01 for general contract work at the Sherry Netherland | $ 86,068.25 |
| 3/27/2024 | Genever US | The Sherry Netherland | Security deposit | $ 50,000.00 |
| 4/8/2024 | Genever US | AIG | Insurance premium | $ 25,156.75 |
| 4/12/2024 | Genever US | Hillmann Consulting LLC | CBP Testing | $ 16,625.21 |
| 4/16/2024 | Genever US | Acheson Doyle Partners Architects, PC | Architect fees | $ 5,286.60 |
| 4/18/2024 | Genever BVI | United States Trustee | Quarterly fee payment | $ 249.40 |
| 4/18/2024 | Genever US | United States Trustee | Quarterly fee payment | $ 970.78 |
| 4/24/2024 | Genever US | O'Sullivan McCormack Jensen & Bliss PC | Compensation and expense reimbursement fee statement [Docket No. 3023] | $ 9,693.85 |
| 4/30/2024 | Genever US | O'Sullivan McCormack Jensen & Bliss PC | Compensation and expense reimbursement per fee statement [Docket No. 2938] | $ 9,740.41 |
| 5/2/2024 | Genever US | United States Trustee | Quarterly fee payment | $ 54.00 |
| 5/9/2024 | Genever US | ARD Facilities Management Group LLC dba Paramount | Payment for May 2024 storage invoice #20455 | $ 3,450.00 |
| 5/9/2024 | Genever US | Cleaning Contractors Corp. | Payment for furniture cleaning | $ 2,068.63 |
| 5/10/2024 | Genever US | The Light Touch | Payment for light fixture removals | $ 1,750.00 |
| 5/15/2024 | Genever US | Burnham Nationwide, Inc. | Expeditor fees | $ 7,457.42 |
| 5/15/2024 | Genever US | Acheson Doyle Partners Architects, PC | Architect fees | $ 8,883.70 |
| 5/14/2024 | Genever US | O'Sullivan McCormack Jensen & Bliss PC | Compensation and expense reimbursement per fee statement [Docket No. 3106] | $ 3,789.20 |
| 5/14/2024 | Genever US | Skyline Windows LLC | Survey fee for windows | $ 190.53 |
| 5/14/2024 | Genever US | Montvale Moving Services LLC | Packing and moving furniture to storage | $ 12,450.00 |
| 5/21/2024 | Genever US | J and A Construction Consultants DBA Dryfast Property Restoration | Payment for restoration work (CBP cleaning) | $ 184,756.59 |
| 6/4/2024 | Genever US | Acheson Doyle Partners Architects, PC | Architect fees | $ 22,381.91 |
| 6/18/2024 | Genever US | O'Sullivan McCormack Jensen & Bliss PC | Compensation and expense reimbursement per fee statement [Docket No. 3207] | $ 1,927.20 |
| **Total Borrowings to Date** | | | | **$ 1,300,410.70** |
| **Remaining DIP Availability** | | | | **$ 699,589.30** |

# EXHIBIT C

**Checklist**

Connecticut Local Form Checklist for Motions and Orders for Use of Cash Collateral and Post-Petition Financing (09/04/2018)

Case 22-50073    Doc 3259    Filed 06/18/24    Entered 06/18/24 17:59:32    Page 48 of 51

# CHECKLIST FOR MOTIONS AND ORDERS FOR USE OF
# CASH COLLATERAL AND POST- PETITION FINANCING

This is to certify that the following checklist information reflects the substantive content of the motion and proposed order for use of cash collateral or for post-petition financing pursuant to 11 U.S.C. §§ 363 and/or 364 as indicated below:

## 1. Identification of Proceeding:

| | | |
|---|---|---|
| a. | Preliminary motion/order | ○ Yes ● No ○ N/A |
| b. | Final motion/order | ● Yes ○ No ○ N/A |
| c. | Continuing use of cash collateral(§ 363) | ○ Yes ○ No ● N/A |
| d. | New financing(§ 364) | ● Yes ○ No ○ N/A |
| e. | Combination of§§ 363 and 364 financing | ○ Yes ● No ○ N/A |
| f. | Emergency hearing (immediate and irreparable harm) | ○ Yes ● No ○ N/A |

## 2. Representations:

| | | |
|---|---|---|
| a. | Brief history of Debtor's businesses and status of Debtor's prior relationships with lender | ● Yes ○ No ○ N/A |
| b. | Brief statement of purpose and necessity of financing | ● Yes ○ No ○ N/A |
| c. | Brief statement oftype offinancing (i.e.) accounts receivable, inventory) | ○ Yes ○ No ● N/A |
| d. | Are lender's pre-petition security interest(s) and liens deemed valid, fully perfected and non-avoidable? | ○ Yes ○ No ● N/A |
| | (i) Are there provisions to allow for objections to above? | ○ Yes ○ No ● N/A |
| e. | Is there a post-petition financing agreement between lender and Debtor? | ● Yes ○ No ○ N/A |
| f. | If there is an agreement, are lender's post-petition security interests and liens deemed valid, fully perfected and non-avoidable? | ● Yes ○ No ○ N/A |
| g. | Has lender's non-cash collateral been appraised? | ○ Yes ○ No ● N/A |
| h. | Insert date of latest appraisal. | |
| i. | Is Debtor's proposed budget attached? | ○ Yes ○ No ● N/A |
| j. | Are all pre-petition loan documents identified? | ○ Yes ○ No ● N/A |
| k. | Are pre-petition liens? | ● Yes ○ No ○ N/A |
| l. | Are there pre-petition guaranties of debt? | ○ Yes ○ No ● N/A |

## 3. Grant of Liens:

a. Do post-petition liens secure pre-petition debts?    ○ Yes  ● No  ○ N/A

b. Is there cross-collateralization?    ○ Yes  ● No  ○ N/A

c. Is the priority of post-petition liens equal to or higher than existing liens?    ○ Yes  ● No  ○ N/A

d. Do post-petition liens have retroactive effect?    ○ Yes  ● No  ○ N/A

e. Are there restrictions on granting further liens or liens of equal or higher priority?    ● Yes  ○ No  ○ N/A

f. Is lender given liens on claims under§§ 506(c), 544-50 and§§ 522?    ○ Yes  ● No  ○ N/A

(i) Are lender's attorney's fees to be paid?    ○ Yes  ○ No  ● N/A

(ii) Are Debtor's attorney's fees excepted from § 506(c)?    ○ Yes  ○ No  ● N/A

g. Is lender given liens upon proceeds of causes of action under§§ 544, 547, and 548?    ○ Yes  ● No  ○ N/A

## 4. Administrative Priority Claims:    ● Yes  ○ No  ○ N/A

a. Is lender given an administrative priority?    ● Yes  ○ No  ○ N/A

b. Is administrative priority higher than § 507(a)?

c. Is there a conversion of pre-petition secured claim to post-petition administrative claim by virtue of use of existing collateral?    ○ Yes  ● No  ○ N/A

## 5. Adequate Protection(§ 361):

a. Is there post-petition debt service?    ○ Yes  ○ No  ● N/A

b. Is there a replacement/additional § 361 (1) lien?    ○ Yes  ○ No  ● N/A

c. Is the lender's claim given super-priority?    ○ Yes  ○ No  ● N/A

d. Are there guaranties?    ○ Yes  ○ No  ● N/A

e. Is there adequate insurance coverage?    ○ Yes  ○ No  ● N/A

## 6. Waiver/Release Claims v. Lender:

a. Debtor waives or releases claims against lender, including, but not limited to, claims under§§ 506(c), 544-550, 552, and 553 ofthe Code?    ● Yes  ○ No  ○ N/A

b. Does the Debtor waive defenses to claim or liens of lender?    ○ Yes  ○ No  ● N/A

c. Is the proposed lender also the pre-petition lender?    ○ Yes  ● No  ○ N/A

d. New post-petition lender?    ● Yes  ○ No  ○ N/A

e. Is the lender an insider?    ● Yes  ○ No  ○ N/A

**7. Modification of Stay:**

a.  Is any modified lift of stay allowed? ● Yes ○ No ○ N/A

b.  Will the automatic stay be lifted to permit lender to exercise self-help upon default without further order? ● Yes ○ No ○ N/A

c.  Are there any other remedies exercisable without further order of court? ● Yes ○ No ○ N/A

d.  Is there a provision that any future modification of order shall not affect status of Debtor's post-petition obligations to lender? ● Yes ○ No ○ N/A

**8. Creditors' Committee**

a.  Has creditors' committee been appointed? ● Yes ○ No ○ N/A

b.  Does creditors' committee consent? ○ Yes ○ No ○ N/A

**9. Restrictions on Parties in Interest:**

a.  Is a plan proponent restricted in any manner, concerning modification of lender's rights, liens and/or causes?

b.  Is the Debtor prohibited from seeking to enjoin the lender in pursuit of rights? ○ Yes ○ No ● N/A

c.  Is any party in interest prohibited from seeking to modify this order? ● Yes ○ No ○ N/A

d.  Is the entry of any order conditioned upon payment of debt to lender? ○ Yes ● No ○ N/A

e.  Is the order binding on subsequent trustee on conversion? ○ Yes ● No ○ N/A

● Yes ○ No ○ N/A

**10. *Nunc Pro Tunc:***

a.  Does any provision have retroactive effect? ○ Yes ● No ○ N/A

| | | |
|---|---|---|
| a. | Is shortened notice requested? | ○ Yes ● No ○ N/A |
| b. | Is service requested to shortened list? | ● Yes ○ No ○ N/A |
| c. | Is time to respond to be shortened? | ○ Yes ● No ○ N/A |
| d. | If final order sought, have 15 days elapsed since service of motion pursuant to FRBP 4001(b)(2)? | ● Yes ○ No ○ N/A |
| e. | If preliminary order sought, is cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing? | ○ Yes ○ No ● N/A |
| f. | Is a Certificate of Conference included? | ○ Yes ○ No ● N/A |
| g. | Is a Certificate of Service included? | ● Yes ○ No ○ N/A |
| h. | Is there verification of transmittal to U.S. Trustee included pursuant to FRBP 9034? | ● Yes ○ No ○ N/A |
| i. | Has an agreement been reached subsequent to filing motion? | ○ Yes ● No ○ N/A |
| |    i. If so, has notice of the agreement been served pursuant to FRBP 4001 (d)(l)? | ○ Yes ○ No ● N/A |
| |    ii. Is the agreement in settlement of motion pursuant to FRBP 4001 (d)(4)? | ○ Yes ○ No ● N/A |
| |    iii. Does the motion afford reasonable notice of material provisions of the agreement pursuant to FRBP 4001(d)(4)? | ○ Yes ○ No ● N/A |
| |    iv. Does the motion provide for opportunity for hearing pursuant to FRBP 9014? | ○ Yes ○ No ● N/A |

**Signed on** June 18, 2024 _____

By: G. Alexander Bongartz _____