```
 1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF CONNECTICUT
 2                         BRIDGEPORT DIVISION

 3   IN RE:                        .  Chapter 11
                                   .  Case No. 22-50073 (JAM)
 4   HO WAN KWOK, et al.,          .
                                   .  (Jointly Administered)
 5           Debtors.              .
     . . . . . . . . . . . . . . . .
 6                                 .
     LUC A. DESPINS, et al.,       .  Adversary Proceeding
 7                                 .  No. 23-05028 (JAM)
             Plaintiffs,           .
 8                                 .
         v.                        .
 9                                 .
     ACE DECADE HOLDINGS           .
10   LIMITED, et al.,              .
                                   .
11           Defendants.           .
                                   .
12   . . . . . . . . . . . . . . . .
                                   .
13   LUC A. DESPINS, CHAPTER 11    .  Adversary Proceeding
     TRUSTEE,                      .  No. 23-05005 (JAM)
14                                 .
             Plaintiff,            .
15                                 .
         v.                        .  Courtroom 123
16                                 .  Brien McMahon Federal Building
     GREENWICH LAND, LLC and       .  915 Lafayette Boulevard
17   HING CHI NGOK,                .  Bridgeport, Connecticut 06604
                                   .
18           Defendant             .  Tuesday, July 16, 2024
     . . . . . . . . . . . . . . . .
19
                          TRANSCRIPT OF HEARING
20              BEFORE THE HONORABLE JULIE A. MANNING
                     UNITED STATES BANKRUPTCY JUDGE
21
     APPEARANCES:
22
     For the Chapter 11
23   Trustee:                 James C. Graham, Esquire
                              NEUBERT PEPE & MONTEITH, P.C.
24                            195 Church Street
                              13th Floor
25                            New Haven, Connecticut 06510
```

```
 1                             -and-

 2                             Luc A. Despins, Esquire
                               PAUL HASTINGS, LLP
 3                             200 Park Avenue
                               New York, New York 10166
 4

 5   Audio Operator:          Electronically recorded

 6   Transcription Company:   Reliable
                               The Nemours Building
 7                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
 8                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
 9
     Proceedings recorded by electronic sound recording,
10   transcript produced by transcription service.

11
     APPEARANCES (CONTINUED):
12
     For the U.S. Trustee:    Holley L. Claiborn, Esquire
13                             UNITED STATES DEPARTMENT OF JUSTICE
                               OFFICE OF THE UNITED STATES TRUSTEE
14                             The Giaimo Federal Building
                               150 Court Street, Room 302
15                             New Haven, Connecticut 06510

16
     For Greenwich
17   Land, LLC:               Christopher J. Major, Esquire
                               MEISTER SEELIG & FEIN, LLP
18                             125 Park Avenue
                               7th Floor
19                             New York, New York 10017

20
     For the Joint
21   Liquidators of
     Ace Decade:              David R. Roth, Esquire
22                             WIGGIN AND DANA
                               One Century Tower
23                             265 Church Street
                               17th Floor
24                             New Haven, Connecticut 06510

25
```

```
 1   APPEARANCES (CONTINUED):

 2
                                 -and-
 3
                                 David Litterine-Kaufman, Esquire
 4                               ORRICK, HERRINGTON & SUTCLIFFE, LLP
                                 51 West 52nd Street
 5                               New York, New York 10019

 6   For The Sherry-
     Netherland, Inc.:           Sherry Millman, Esquire
 7                               HOGAN LOVELLS US LLP
                                 390 Madison Avenue
 8                               New York, New York 10017

 9

10   For the Official
     Committee of
11   Unsecured Creditors:        Kristin B. Mayhew, Esquire
                                 PULLMAN & COMLEY, LLC
12                               850 Main Street
                                 8th Floor
13                               Bridgeport, Connecticut 06601

14

15

16

17

18

19

20

21

22

23

24

25
```

<pre>
 1                               INDEX

 2   MOTIONS:                                                PAGE

 3   Matter     Luc A. Despins v Greenwich Land, LLC et al
     No. 1:     Adversary Case no. 24-05005
 4
                Status Conference                             6
 5

 6              Court's Ruling:                              43

 7
     Matter     HO WAN KWOK, et al.
 8   No. 2:     Case No. 22-50073

 9              #3259; Motion for Order / Joint Motion of
                Chapter 11 Trustee and Debtors Genever US and
10              Genever BVI for Entry of Final Order,
                Pursuant to Bankruptcy Code Sections 363 and
11              364, Authorizing Amendment to Interdebtor
                Postpetition Financing Agreement Filed by Luc
12              A. Despins on behalf of Luc A. Despins,
                Genever Holdings Corporation, Genever
13              Holdings LLC, Chapter 11 Trustee, Debtors
                Trustee's Motion for Appointment of Special
14              Process Server for Service Abroad            43

15              Court's Ruling:                              49
     Matter
16   No. 3:     #3301; Motion to Limit Service of Motion to
                Extend August 15, 2024 Deadline for Trustee
17              to File Avoidance Actions Filed by Douglass
                E. Barron on behalf of Luc A. Despins,
18              Chapter 11 Trustee                           51

19              Court's Ruling:                              53

20
     Matter     Luc A. Despins, Chapter 11 Trustee v Ace
21   No. 4:     Decade Holdings Limited, et al.
                Adversary Case no. 23-05028
22
                #40; Motion for Default Judgment pursuant to  54
23              Fed. R. Civ. P. 55 (b)(2) and Fed. R. Bankr.
                P. 7055 against Ace Decade Holdings Limited
24              and Yanping 'Yvette' Wang . Filed by Patrick
                R. Linsey on behalf of Luc A. Despins,
25              Chapter 11 Trustee, Plaintiff
</pre>

1    (Proceedings commenced at 1:04 p.m.)

2              THE CLERK:  Adversary Number 23-05005.  Luc A.

3    Despins, Chapter 11 Trustee, versus Greenwich Land, LLC, *et*

4    *al.*, 22-50073, Ho Wan Kwok, and 23-05028, Despins, *et al.*

5    versus Ace Decade Holding, Limited, *et al.*

6              THE COURT:  Good afternoon.  If we could have

7    appearances for the record, please.

8              MR. DESPINS:  Good afternoon, Your Honor.  Luc

9    Despins, Chapter 11 Trustee.

10              THE COURT:  Good afternoon.

11              MR. LINSEY:  Good afternoon, Your Honor.  Patrick

12    Lindsay of Neubert Pepe & Monteith for the trustee.

13              THE COURT:  Good afternoon.

14              MR. MAJOR:  Good afternoon, Your Honor.  Chris

15    Major, Meister Seelig & Fein.  We represent the defendants,

16    Greenwich Land, LLC and Hing Shih Nak, who we refer to as Ms.

17    Guo.

18              THE COURT:  Good afternoon.

19              MR. MAJOR:  Thank you, Your Honor.

20              THE COURT:  So this is the matter with regard to

21    Greenwich Land is the first matter on today's calendar, so I

22    assume we are handling that matter first?

23              MR. DESPINS:  Yes, Your Honor.

24              THE COURT:  Okay.  Please proceed.

25              MR. DESPINS:  May I approach Your Honor?

1        THE COURT:  Yes, you may.  Thank you.

2        MR. DESPINS:  For the record, Luc Despins, Chapter

3  11 Trustee.  We requested the status conference, Your Honor,

4  based on the order you entered on July 2nd.  That order not

5  only granted the summary judgment but had some very specific

6  language regarding the Greenwich parties must transfer

7  control -- or I don't have the precise language, but the

8  order speaks for itself -- as of July 22nd of this year.

9        We reached out to counsel for the Greenwich parties

10  right away on -- actually on July 4th, saying that there are

11  a lot of logistical issues that need to be addressed to

12  implement that order.  You know, basic things like, you know,

13  I know I have not been to the house, but I've seen it from

14  the outside.  There are two sets of electronic -- of gates.

15        I'm sure there are elaborate alarm systems, all

16  sorts of systems in the house like this that's worth between

17  $6 and 7 million or so.  And so I can't -- it's not a case of

18  just giving us the keys and, you know, good luck with it.  We

19  need to have an organized transfer of possession of that

20  asset.

21        And I've been trying to push that agenda with

22  counsel for the Greenwich parties but without success.  They

23  are -- they filed a request for a stay, and I'm sure Your

24  Honor is aware of that, although they have not filed a motion

25  to shorten time to have that heard before July 22nd.

1          And I would say, footnote, I'm a little concerned

2   that they will run to District Court saying, hey, we filed a

3   motion for a stay.  Judge Manning has not ruled, and

4   therefore, you need to grant us a stay.  But that's a

5   different issue.

6          But I think that there should be a stay hearing

7   because there are complex issues here of potential damage to

8   the estate to the extent we don't get the property now, in

9   terms of, you know, the timing of selling this house, the

10  risks to the house and the property generally, that would

11  need to be addressed in a stay context, which is not the

12  hearing today.

13         I understand that, but I just want to point Your

14  Honor to the fact that their stay request basically says,

15  we'll wane on the merits, forget about a bond, we don't need

16  that, everything's fine.

17         But one of the Greenwich parties, the debtor's

18  wife, you know, has been living there, frankly, rent free for

19  months and months.  And a house like this rents for about

20  30-, 35,000 a month, Your Honor.  So there's value there that

21  the estate is not -- would not be capturing.

22         So again, I don't want to argue the stay, but the

23  point is the stay needs to be dealt with.  But in the

24  meantime, we have these -- we've asked for the status

25  conference to deal with these logistical issues.

1         Today, counsel filed a request -- counsel for the

2    Greenwich parties filed a request to extend the time of July

3    22nd by 90 days, saying that, well, there's all sorts of

4    furniture in that house, we don't know who owns it.

5    Therefore, we need to have time to resolve that issue.  And I

6    want to cut right through that.

7         One, she barely knew that she owned the house,

8    okay?  So meaning she didn't know which house she -- was

9    which.  This one she thought she owned it through this

10   company, but barely.  The concept that somehow she would have

11   evidence that she owns furniture in that house is, you know,

12   I'd like to see that, the evidence of any items other than

13   her personal property or clothes and all that.

14        And we're not proposing to change that in any way.

15   The furniture should stay in the house, and we can sort out

16   the ownership issue of the furniture, and the artwork, and

17   electronics, and all that later without any prejudice to her.

18        Again, I don't believe for a second that she owns

19   anything in that house, but just to address the issue of we

20   need -- she needs to stay 90 days, and they're rent free

21   again, while the issue of sorting out who's the owner does,

22   you know, that doesn't need to happen.

23        We need to put the house up for sale.  We need to

24   sell it as quickly as possible.  Again, I talked to the

25   broker.  The broker I'm hiring is the same broker that sold

1  the house, Julie Burke from -- I forget which company.

2  Anyway, she sold the house to the Kwoks three years, four

3  years ago or so.

4      So she knows the house inside out, and she was very

5  forceful about the fact that the market is now to sell this

6  house, not in November, because then you're talking about

7  selling it in the spring of next year.  And this house costs

8  a lot of money.

9      For example, there are taxes that are due on July

10  31st of $27,000 and change.  Who's paying that?  And by the

11  way, out of -- where is that money coming from that is being

12  paid?  I'd like to understand that, as well.  But the point,

13  Your Honor, is that this issue of we don't know who owns the

14  furniture is a delaying tactic.

15      Their rights will not be prejudiced because we're

16  not going to sell the furniture.  We're not going to dispose

17  of it.  And we believe the Court should enter an order, and

18  we have filed at Docket Number 143 a proposed order.  And I -

19  - look, Your Honor, I apologize.  It was filed late, at 11:40

20  this morning.

21      But the order basically says it's the same issues

22  that I've raised with counsel for the Greenwich parties on

23  July 4th, which is, we need access to the control of the

24  house, that means the remotes, the electronic system, the

25  passwords, knowing who's providing services, who's taking

1  care of the pool, who's taking care of the landscaping, et

2  cetera, et cetera.

3        It's not onerous to provide that.  I'm sure there's

4  a person that takes care of that, meaning that pays these

5  people, so that person could certainly provide that list to

6  us very easily.  And that's what this order says.

7        And the order also says they shall not take

8  anything out of the house other than their personal effects

9  and, you know, family pictures and the like.  And the trustee

10  shall not sell or dispose of anything in the house without a

11  further court order, again, to protect their alleged right

12  that they own -- they being, you know, Ms. Guo -- own some of

13  the furniture or anything along those lines.

14        We, you know, the statement that was filed by

15  counsel for the Greenwich party said that I will con -- I

16  want to conduct a fire sale.  No.  I want to sell it at the

17  best price possible, which is now.  Also, broker told me that

18  if you want to rent this, you need to rent it before the

19  school season starts.  And therefore, there's a very limited

20  window to do that.

21        So it may be that we are going to try to rent it,

22  but that's -- that would be 30-, 35,000 a month in income for

23  the estate.  And therefore, you know, if we're going to

24  capture that value, we need to do it now.

25        There is a paragraph in there that says -- that

1  order -- that failure to comply with this order may lead the

2  Court -- may lead the Court --

3          THE COURT:  This is the order that you talked --

4  that you -- that was filed at 11:14?

5          MR. DESPINS:  Yes.  I --

6          THE COURT:  Okay.  I just want to make sure I

7  understand what you're reading from.

8          MR. DESPINS:  Yes.  That's --

9          THE COURT:  Okay.  Go ahead.

10          MR. DESPINS:  I have an -- may I --

11          THE COURT:  Oh, go ahead.  It's fine.  I can find

12  it.

13          MR. DESPINS:  Okay.  I think it's Document Number

14  143.  So basically it says, ordered that failure to comply

15  with this order may lead the Court to direct the United

16  States Marshal Service to assist the trustee.  I know you're

17  not big on that from prior events.

18          And basically it says may; it doesn't say shall,

19  but the point is that we need to get control of this property

20  on July 22nd.  This has been taking a long time to get here,

21  and there's value to be realized by the estate, and that

22  should happen now.

23          I would point out as well, Your Honor, that Mr.

24  Guo's wife is a defendant in $800,000 plus adversary, you

25  know, adverse proceedings that I filed against her where

1   we're seeking 800,000 plus from her now.

2           We're not implying that somehow you should assume

3   that we're going to prevail on that.  But the point is,

4   there's a lot of issues here with her conduct.  And in fact,

5   in the opinion you entered, Your Honor, that you were very

6   specific about the fact that they subverted these bankruptcy

7   proceedings by doing all sorts of things that are

8   inappropriate.

9           So when counsel for the Greenwich parties comes to

10  court to say, hey, we need more time, we need to sort out who

11  owns what, we just can't, you know, we can't rely on them to

12  operate in a way in which they should have operated and which

13  complies with the bankruptcy code, because they have not.

14          It's been established, and it could be very

15  detrimental to the estate to leave a person that has no stake

16  in the house, in control of that house.  I don't even know if

17  there's insurance on that house.  You remember that Mahwah,

18  there was no insurance at all.

19          And there's been no attempt by counsel for the

20  Greenwich party to say, okay, I understand we lost, but we're

21  willing to put up X amount of money to protect the estate, a

22  bond or something like that, or we're willing to pay rental

23  for this property while we're appealing.  There's no effort

24  of that.  It's just give us a free ride and hope for the

25  best.

1      And, Your Honor, we cannot support that.  Thank

2  you, Your Honor.

3          THE COURT:  Thank you.  Attorney Major?

4          MR. MAJOR:  May I go to the podium, Your Honor?

5          THE COURT:  Certainly.  Thank you.

6          MR. MAJOR:  Good afternoon, Your Honor, for the

7  record, Chris Major, Meister, Seelig & Fein.  We represent

8  the two defendants in this adversary proceeding.

9          So Your Honor, I think there are a couple of very

10  important procedural issues that I think have to be addressed

11  here, and we do address them in our motion for a stay, which

12  we filed on Friday.  And we filed it in this court in

13  accordance with Rule 8007.

14          You know, I do think, frankly, that we have a good

15  argument that it's not practical to come, first to the

16  Bankruptcy Court given the exigencies here, and the fact that

17  the Bankruptcy Court, in your order, Your Honor, you said

18  that there would be no stay.

19          I realize that's under 7062, so in an abundance of

20  caution we filed the motion in the Bankruptcy Court.  I knew

21  when we filed it on Friday afternoon that we had this status

22  conference.

23          I think one of the things to address at the status

24  conference is whether and when the Bankruptcy Court can

25  address that motion because we do have a tight clock here

1  with Monday.  I mean, the trustee has just outlined,

2  including in the proposed order they filed a few minutes

3  before court started, what his intentions are.

4         And I think, you know, the basis for our stay

5  motion is multifaceted.  But most importantly, we've had a

6  motion for withdrawal of the reference pending for more than

7  a year now that has not been decided by the District Court.

8         And if things proceed the way the trustee just

9  outlined, that motion wouldn't be decided until after Ms.

10  Guo's home is sold, and she's evicted, and she's never gotten

11  a ruling on her motion to withdraw the reference.

12         The Bankruptcy Court made a statement in the

13  summary judgment memorandum of decision along the lines of if

14  a court later adjudicates that the Bankruptcy Court didn't

15  have jurisdiction to enter a final judgment, that this should

16  be treated as proposed findings of fact and conclusions of

17  law.

18         But if Ms. Guo has already been evict[ed, if Ms.

19  Guo's home has already been sold at a time when the District

20  Court decides that it has to enter the final order, well, the

21  final order's already been entered and executed upon because

22  the home is gone, and Ms. Guo has been evicted.

23         So that is, you know, I think an issue that has to

24  be addressed by the District Court before we can execute on

25  the Bankruptcy Court's judgment, because if we get into a

1  situation where the Bankruptcy Court's judgment has already

2  been executed upon by the trustee, then that takes away our

3  client's right to what we think should be a determination by

4  the District Court of this case.

5        But more importantly, we don't even get to the

6  stage where the District Court tells us whether or not the

7  Bankruptcy Court has jurisdiction.  So that's one of the main

8  thrusts of our motion for stay, and I'm sure the other

9  wouldn't surprise the Bankruptcy Court, but this is Ms. Guo's

10 home.

11        I understand that, you know, there's been a lot of

12 allegations and things that have happened in this greater

13 bankruptcy case.  But the facts of the matter are that Ms.

14 Guo came here in 2017 and applied for asylum.  She doesn't

15 speak English.  There's a jury deliberating in Manhattan

16 right now about her husband's criminal trial.

17        She has a bad back. I can tell you I've sat with

18 her, and when I say I sat with her, I was sitting, she's

19 standing because she can't sit for a period of time, and

20 she's in a foreign country.  She's been here for a while, but

21 she doesn't speak English.  The culture's obviously very

22 different, and you know, say what you want about whatever Mr.

23 Kwok did in connection with this bankruptcy or anything else

24 he's alleged to do, the fact of the matter is our client is

25 in a really difficult position.

1    And so having her have to move out of her home,

2  where she's been for four years in three weeks -- and there's

3  never been litigation, let alone a determination, about who

4  owns what in the house.  I mean, the trustee says he has all

5  these rulings.  My understanding is several of them are on

6  default judgments, but he has all these rulings in other

7  cases about other entities.

8    And that may be, but that doesn't mean that there's

9  been any determination that X item in the house is owned by

10  those other entities.  So she's being told, you have to get

11  out.  I, the trustee, am going to take possession of

12  everything.  And then, from what the trustee has said to us,

13  we would then have the burden of proof of proving that the

14  materials inside the house are not his.

15    But that's not the way it works.  He's still on the

16  plaintiff's side of the V here, and he chose to litigate this

17  case in a way that didn't address the items that are in the

18  house and who owns them.

19    That's a process that I think we don't need to go

20  to, in my view, have a court, whether it be this court or the

21  District Court, go item by item with us.  I mean, that's not

22  -- I don't think that's a good use of the Court's resources.

23    But there has to be some period of time where we

24  can go through this process because, I mean, I can tell you,

25  from my client's perspective, she's being told in one sense,

1   you have to be out on the 22nd.  And in the other sense, I

2   was told by the trustee that we should assume the house is

3   being surveilled, and if they bring anything out of the house

4   that the trustee is going to run into the Bankruptcy Court.

5            So what's she supposed to do?  Is she supposed to

6   move or not move?  And it's -- the fact of the matter is, she

7   should be entitled to a stay because this involves her home.

8   An eviction from your primary residence, the sale of your

9   primary residence, is by definition irreparable harm.  And I

10  think that that's the most important factor.

11           We argue this in our brief, and I don't want to go

12  too deep into it.  But I do think that the stay motion,

13  whether it be the motion that's on file, or the one we file

14  in the District Court, that that needs to get addressed.

15  I've had to --

16           THE COURT:  So what motion in the District Court?

17  You mean the withdrawal to reference?  Or you filed a motion

18  for stay in the District Court as well?

19           MR. MAJOR:  We haven't filed a motion for stay in

20  the District Court, but --

21           THE COURT:  Okay.

22           MR. MAJOR:  -- and I'm just being completely frank,

23  Your Honor, I acknowledge -- I'll say it this way.  There's

24  at least a risk that Your Honor is going to deny our stay

25  motion given what's happened with prior stay motions, what

 1  happened with the automatic stay in the Bankruptcy Court's,

 2  you know, current order.

 3          But more important than any of that, given the

 4  amount of time that we have --

 5          THE COURT:  Just so I'm clear for the record, just

 6  so other people are clear for the record, when you say the

 7  automatic stay, you mean the stay imposed by the rules with

 8  regard to the order granting the motion for summary judgment.

 9          MR. MAJOR:  Yes.  I don't --

10          THE COURT:  Yes.

11          MR. MAJOR:  -- I'm not talking about a 362 --

12          THE COURT:  I just want to be clear on that so

13  people understand the distinction.  That's all.

14          MR. MAJOR:  Yeah.  I appreciate that, Your Honor.

15  And I should have been --

16          THE COURT:  No, that's fine.

17          MR. MAJOR:  -- more detailed.

18          THE COURT:  That's absolutely fine.  I just want to

19  make that note for the record.

20          MR. MAJOR:  But more important than anything, I

21  mean, just given the timing of things, we have to be prepared

22  for the contingency of going to the District Court, and so,

23  you know, I think that the -- and that sort of precipitated

24  filing the motion for extension, including discussions we've

25  had with the trustee, which is --

1          THE COURT:  So the motion for extension, was that

2    filed -- that wasn't filed on Friday.  The motion for stay

3    pending appeal was filed on Friday.

4          MR. MAJOR:  Correct.  And --

5          THE COURT:  So what was -- when was the extension

6    motion filed?

7          MR. MAJOR:  Sometime, I believe, between 9:30 and

8    10 o'clock this morning.

9          THE COURT:  Okay.  So your motion for extension is

10   seeking an extension of the date in the summary judgment

11   motion?  Is that what you're saying?

12         MR. MAJOR:  Yes, Your Honor.

13         THE COURT:  I mean, summary judgment ruling, I

14   apologize.

15         MR. MAJOR:  Yes.

16         THE COURT:  Okay.  And oh, it's what Trustee

17   Despins said.  Now I'm getting that.  The 90 days.  That's

18   what you're asking for in your motion for extension of time.

19   You're asking that the enforceability of the order granting

20   summary judgment, that the date in that order be extended for

21   90 days.

22         MR. MAJOR:  Yes, Your Honor.  That's what we seek

23   in the motion.  And I think what the motion for extension

24   would assist with is, one, it would allow time for the stay

25   motion or motions to be dealt with.  It would allow time for

1   a process to determine the items in the house and whether or

2   not they are -- who owns them, whether it's the trustee or is

3   it Ms. Guo and so forth.

4        But I recognize what the trustee is going to -- I

5   think, has told the Court today, and will tell the Court when

6   he gets back up, is we're going to put the things in storage,

7   we're not going to get rid of it, so your rights are

8   preserved.

9        But really, at the end of the day, the extension of

10  time is -- my client needs more time to move out of her home,

11  if she -- if, in fact, she's going to have to move out.  If

12  we lose our stay motions and there are marshals knocking on

13  the door, she's got to leave, but she has to have somewhere

14  to go.

15       And I think that it's not too much to ask for the

16  trustee, you know, to wait some period of time so these

17  things can shake out.

18       Because as I started off at the top, I mean, the

19  withdrawal of the reference motion, if that never gets

20  decided before the trustee sells the home, well, our client's

21  rights under the constitution have -- are gone at that point,

22  because she would not have had the opportunity to have the

23  District Court decide whether or not, you know, Greenwich

24  Land is an alter ego of the debtor, Mr. Kwok.

25       And if the home is sold, then there's not going to

1  be a determination that would have much meaning because she's

2  already lost her home and been evicted and so forth.

3       And so the extension of time, if I could just sort

4  of lay bare my request here, is we're just hoping that she

5  can get a little more time.  And I understand that our client

6  doesn't paint a sympathetic picture for the trustee, but, you

7  know, her husband is -- there's a jury deliberating.

8       She's not in good health, and she's being asked to

9  leave her home on extremely short notice at a time when I

10 would have to tell her, I still don't have a ruling on your

11 motion to withdraw the reference.  I may or may not --

12      THE COURT:  As you know, this court cannot control

13 it.

14      MR. MAJOR:  Yes, of course, I understand that

15 completely.  And I don't know that I will have rulings on the

16 stay motions.  If you --

17      THE COURT:  Well, let me ask you a few questions --

18      MR. MAJOR:  Sure.

19      THE COURT:  -- based upon what both Trustee Despins

20 said and what you have just said.  And this is a status

21 conference.  And that's what the trustee asked for last week

22 because of the -- I believe because of the date of July 22nd

23 in the summary judgment order.  Do you know whether there is

24 insurance, property insurance, on the house?

25      MR. MAJOR:  I don't, Your Honor.

1          THE COURT:  Okay.  I think I'm going to need to

2   know the answer to that question, all right?  I think that's

3   a legitimate question where we are.  So I would like to know

4   the answer to that question, whatever it is.  Yes or no.  I'd

5   like to know.

6          With regard to the taxes, do you know, other than

7   what Trustee Despins has said about the July payment, which I

8   don't know if you live in Connecticut, but that is when it's

9   due.  I mean, it's due this month, either the 1st or the

10  31st, depending -- I don't know how Greenwich works, but I

11  would assume that you have until the 31st of July to pay

12  your, you know, one part of your annual taxes, okay?

13         So do you know -- I'm not even asking about the

14  July 31st payment.  I'm just trying to understand, and you

15  probably don't know the answer, but I'd like to get an

16  answer, of whether all the taxes prior to the taxes that are

17  due and owing this month of July have been paid.  I want to

18  know, is it bleeding, essentially, okay?

19         Is the -- have the taxes been paid on this

20  property?  I have no idea.  I don't know if you do, but I

21  need to take all these facts into consideration, right?  And

22  so I would need to know the answer to those two.

23         With regard to the July payment, again, obviously

24  it hasn't -- well, I shouldn't say obviously.  According to

25  what the trustee has stated, it hasn't been paid yet.  But I

1   don't think that there's a negative ramification from that.

2   I think you have until July 31st to pay your taxes.

3            So I'd like to know if there's -- I mean Ms. Ngok

4   is the managing member of Greenwich Land, according to the

5   facts that we've found and what we've seen, right?  So she

6   should know if the taxes are going to be paid.  I'd like to

7   know that question as well.

8            Because when -- and I heard you both say, and

9   trustee Despins, I'm obviously going to give you an

10  opportunity to respond, but I heard you both say the stay

11  motion needs to be addressed, okay?  The stay motion was

12  filed on Friday.  It hasn't been addressed yet, obviously.

13  It hasn't been.

14           If the Court is going to address that, and I am

15  going to address that, but, I mean, if we're going to address

16  that in connection with the concern that you raised about the

17  22nd, then I need to figure out whether or not the date in

18  the summary judgment motion, excuse me, order should change

19  or if I can have a hearing on the stay between now and

20  Monday.

21           I think the likelihood of that happening is not

22  high, of having a hearing between now and Monday.  But I can

23  change the summary judgment order to a different date, given

24  what the status of the proceedings are right now.  Whether I

25  change them to 90 days, I don't know.  I haven't even read

1    your motion, of course, right?

2            You and Trustee Despins have both told me you filed

3    things within the last few hours.  We had hearings this

4    morning.  I obviously haven't read the motion, okay?  I

5    understand your concerns.  I understand the trustee's

6    concerns.  I think you both have concerns that have to be

7    weighed by the Court.  There's no question about that, okay?

8            So a few things that I'd like you both to think

9    about.  I heard what the trustee said, and I don't know that

10   you have a response to it.  Although, I guess not a response

11   is a response.  There's no payment of rent.  There's no

12   nothing.

13           If you get to the -- if I get to the point where --

14   and I'm going to determine the stay motion, right, one of the

15   things I have to determine is whether a bond is appropriate.

16   And as you know, I would have to determine an amount of the

17   bond based upon what would be attributable to the harm to the

18   trustee in not being able to exercise the judgment that was

19   part -- that was set forth in the order granting summary

20   judgment.

21           So there has to be some, at least in my opinion,

22   some discussion about that issue.  I would be surprised if

23   you two came to an agreement on that, even just

24   theoretically.  But -- and that's not a problem.  I'm not

25   saying that's a problem.

1        But I have to weigh that in consideration of all

2   the -- whether -- if a stay is going to be granted, I have to

3   weigh whether or not a bond should need to be posted.  And,

4   you know, I will tell you that I think most judges would say

5   that when a stay is granted, a bond does need to be posted.

6   It's rare.  It's more the exception than the rule that a bond

7   is not required.

8        And I understand everything you've said.  And as I

9   said to you, I think your points are -- need to be addressed

10  by this Court, just as Trustee Despins's points need to be

11  addressed.  But there does come a point where I have to do

12  something, right?  I have to do something.

13       You've now filed a motion for extension time.  I

14  haven't read it yet.  You filed a motion for stay pending

15  appeal.  I haven't -- I know it's filed.  I know the

16  arguments about irreparable harm when it comes to a

17  residence.

18       So I assume those are the arguments that you've

19  made.  I don't know.  I mean, I know I -- you've told me that

20  they are.  I mean, I haven't looked at the cases or anything

21  that you've cited.  I haven't done any of that yet.

22       So all those things would have to be taken into

23  consideration, both the trustee's position that he's been

24  successful and your position that you need a stay of that

25  order for many reasons, including the fact that she, your

1  client, is living in that house and that there's other issues

2  going on.

3           And the issue about the withdrawal of reference, as

4  we've already said, this Court can't control that.  But the

5  one thing that I would like to note for the record, and I

6  understand why you've raised it, when -- in the summary

7  judgment order, the language about proposed findings backed

8  in conclusions of law all go to the United States Supreme

9  Court case of Stern, and the fact that your client has not

10 agreed that this Court can enter a final order, right?

11          And so under the Wellness decision, you're not

12 consenting to that.  So I have to stay -- the decision has to

13 say that, so that the District Court, if the withdrawal of

14 the reference is granted, can do with it what it feels is

15 appropriate, right?

16          So I just want you to understand that it wouldn't

17 matter whether it was this case or some other case where some

18 party said that they don't consent to the entry of a final

19 order by this -- or judgment by this Court, that that

20 language would be there as well because it -- the Federal

21 Rules of Bankruptcy Procedure require it, an acknowledgement

22 of proposed findings of fact and conclusions of law, as do

23 the Supreme Court cases in Stern and Wellness.

24          So there was nothing particular to this case by

25 having that language in that summary judgment order.  I just

1  want you to understand that.  I'm not saying you were making

2  an argument that it was, but I just want that to be clear.

3         If any fact pattern that was brought before the

4  court in any case where the -- where a party does not consent

5  to the entry of a final judgment, you have to -- the

6  Bankruptcy Court should be adding that language to the

7  decision so that the District Court understands.

8         MR. MAJOR:  And I was not making that argument.

9  And I've seen Your Honor put that language in other orders in

10  this case, in other cases, and so forth, so I wasn't making

11  that argument.  The only point I was making is if Ms. Guo is

12  evicted and the home is sold, it will be little solace to her

13  for me to tell her, well, it's not a final judgment.

14         THE COURT:  I understand.

15         MR. MAJOR:  That was my only point.

16         THE COURT:  That's fine.  That's more than fair.  I

17  understand.  So as far as this, I'm going to let Trustee

18  Despins respond to you, and then you respond to Trustee

19  Despins, and then we'll see where things stand.  But I think

20  I understand both of your arguments -- oh, I believe I do

21  understand both of your arguments to the best of my ability

22  as I sit here right now, having not read what was filed

23  today.

24         MR. MAJOR:  Thank you, Your Honor.

25         THE COURT:  Okay.  Thank you.

1          MR. DESPINS:  Briefly, Your Honor, I would point

2    out, Your Honor ruled on July 2nd.  They didn't file a motion

3    for stay till July 12th.  And so to say that there are

4    exigencies, I mean, they're self-created in the sense that,

5    you know, 20 days, they had 20 days' notice, and they sat on

6    it for 10 days or so.

7          Then, this argument that she's being evicted.

8    She's not being evicted.  They chose the corporate form, they

9    chose to have this house owned by a company.  That company

10   has certain rights, and the Court has determined what those

11   rights are.  There's no -- she's not a tenant.  She's not --

12   she has no contractual right to be there.

13         The issue, you know, about, you know, she has a bad

14   back and, you know, et cetera, et cetera, and, you know, I'm

15   not disputing that.  The point is here, look at the amount of

16   spending that went on with other people's money.  Hundreds of

17   thousands of dollars spent by her or for her.

18         So the idea that somehow she's kind of an

19   impoverished person that's going to have a hard time finding

20   a place, there are millions of dollars behind that group.

21   And I hope I'll find all those millions of dollars, but I'm

22   not sure I will.

23         But, you know, there's the son hiding in the United

24   Arab Emirates or in Switzerland.  There's millions of dollars

25   that were transferred there.  So there's money.  There are

1  ways for them to find money to take care of the mom.

2          I never argued that it's his burden to show what is

3  owned.  I'm saying I'm diffusing the issue by leaving -- by

4  agreeing that I'm not going to touch the furniture and the

5  artwork.  I mean, I'm not going to sell it.  So that diffuses

6  the emergency of dealing with that completely.

7          Now, Your Honor, as to insurance, taxes, and all

8  these things, the first thing on insurance, Your Honor, I'm a

9  bit concerned about this argument.  But the point is, there's

10  already been an incident involving insurance, and Your Honor

11  knows about that because you have a motion for summary

12  judgment pending before you on that.

13          Can you imagine if there's another incident

14  involving that house -- this house now, do you think that

15  insurance company would voluntarily pay for that?  I

16  guarantee you there would be litigation, so that's Number 1,

17  even if they have insurance.

18          Two, taxes.  It's the same thing as insurance and

19  all that.  Who's paying for this?  Is this me paying for

20  their stay?  In a sense, if they're going into pockets that

21  you've already found that I own, for them to use that money

22  to provide adequate -- not adequate protection in the sense

23  of 363 or 362 adequate protection, but to provide adequate

24  protection to our position while they're appealing --

25          Then it's illusory because there's no protection

1 because it's the -- it's our -- not personally, but it's the

2 money of the trustee that's being used to provide the

3 protection to the trustee.  So that's another thing we need

4 to look at, which is if they say, yes, we'll pay the

5 insurance.  Where's that money coming from?

6      If it's coming from this entity, then, again, I'm

7 providing the protection to myself from my own funds.  That

8 makes no sense.  Oh, of course, that needs to be addressed in

9 the context of a stay pending appeal, but that's really

10 critically important.

11      And Your Honor, we'll get to that eventually, but,

12 as I said, the rental value of this property is about 35,000

13 a month.  And the value of this house is between $6 and $7

14 million, in that range.  And that's a huge risk to the

15 estate, to leave that in the hands of people that have not

16 hesitated in violating court orders.

17      She transferred money out of Greenwich Land after

18 she consented to a preliminary injunction.  You found that in

19 your opinion.  So the equities here are just, you know, I

20 don't want to exaggerate, but it's so clear that they have no

21 leg to stand on because they violate a court order, they

22 violate the bankruptcy code, and then some.

23      And therefore, any leeway that may be given, look,

24 if we can't have a hearing before the 22nd, maybe we'll have

25 it the 23rd, 24th.  Fine.  But to -- the concept that somehow

1  they will get a free ride for a while, while these issues

2  shake out, is not appropriate unless there's real protection.

3  And they have the ability to do that.

4       If they want to give us real protection, look at

5  the yacht.  At one point, you remember that somebody was

6  moving to lift the stay to go back to Judge Ostrager.  It

7  could be the risk of imprisonment for the debtor in front of

8  Ostrager.  All of a sudden, $37 million appeared in this

9  courtroom.  How did that happen?  Maybe it can happen again.

10       I'm all for that, if, again, it doesn't come from

11  my own pocket.  And the point is they have means to deal with

12  that, and they need to be no different than any other

13  defendant here.  There's been a finding made, and if they

14  want to appeal, they can appeal all they want, but they need

15  to protect the estate.  Thank you, Your Honor.

16       THE COURT:  Thank you.  Attorney Major?

17       MR. MAJOR:  Chris Major, for the defendants, Your

18  Honor.  So I just want to pick up on a procedural point that

19  I was about to raise, but then when you said I'd get another

20  chance I deferred it to now, which is, the trustee mentioned

21  that we had not filed a motion to shorten notice in

22  connection with our stay motion.

23       As I said in my first time up here, we had this

24  status conference coming.  I understand we did not file our

25  motion for stay, you know, on the 2nd after getting the

1  Court's decision, but it was a 61-page decision.  I think,

2  filing on July 12th, notwithstanding the fact that there was

3  a long holiday period in between there, which, of course, I

4  worked over the holiday on the stay motion.

5       But that, I don't see how someone could question

6  our diligence in filing a stay motion on July 10th after

7  getting a decision on the afternoon of July the 2nd.  We

8  didn't take the arguments lightly.  We did a, in my view, we

9  did a very strong job on our research and our analysis of the

10 decision.

11      But more importantly, I can't see any court saying

12 that ten days is too long to seek the stay.  We filed the

13 motion.  As to the motion's short notice, we knew we had the

14 status conference, and I thought we could address that here.

15 So I just want to make sure I get the Court's either guidance

16 or just, you know, I can file a motion to shorten notice

17 today if that's what we need to do to satisfy, of course,

18 most importantly, the Court or the trustee.

19      But I wanted to address that with the Court, so

20 that, if we end up in the District Court, I don't want to,

21 you know, have the trustee say that we were not availing

22 ourselves of the Bankruptcy Court, even though I do think we

23 had a good argument under 8007 to go straight to the District

24 Court.

25      But I wanted to make sure, you know, that we had it

1  on file with the with the Bankruptcy Court, so that if we

2  have to go to the District Court when we do, we can say we've

3  followed 8007 to a T.  So that's one point I definitely

4  wanted to address with the Court.

5          THE COURT:  8007 doesn't require a party to seek an

6  emergency hearing, as far as I know.  I mean, I'll take a

7  look at it.  But to answer your question, you don't need to

8  file a motion to shorten time and limit notice on the

9  hearing.  I will address it in the context of this being a

10  status conference related to the enforcement of the order

11  granting the motion for summary judgment.  So you don't need

12  to do that, okay?

13          MR. MAJOR:  Thank you, Your Honor.

14          THE COURT:  With regard to -- I was going to ask

15  you a question, then I forgot.  With regard to -- as you

16  probably are aware, there were, you know, hundreds of

17  adversary proceedings filed.  And I, of course, may have seen

18  the names and things, but I haven't looked at them unless and

19  until it's necessary at the point.  And not many of them have

20  been necessary at this point yet.

21          But Trustee Despins spoke about an adversary

22  proceeding that was commenced against your client, Ms. Ngok,

23  individually, apparently, to recover monies.  Do you

24  represent her in that adversary proceeding?

25          MR. MAJOR:  So, yeah, Your Honor, I have entered an

1    appearance on behalf of Ms. Guo and Greenwich Land.  Forgive

2    me, there was a deluge of adversary proceedings and several

3    against our clients -- so if my numbers are a little bit off.

4    I believe there are seven adversary proceedings that may --

5    other than the one we're in right now.

6              THE COURT:  Yes.

7              MR. MAJOR:  I believe there's seven that name Ms.

8    Guo and/or Greenwich Land, two of which are stayed.  I'm sure

9    the Court's familiar.  There's one adversary proceeding that

10   is denoted as a RICO action.

11             THE COURT:  Yes.

12             MR. MAJOR:  That is stayed in favor of the criminal

13   case.  And then, there is, I guess --

14             THE COURT:  The omnibus.  Is that the other one?

15             MR. MAJOR:  There's two omnibuses.

16             THE COURT:  Yes.

17             MR. MAJOR:  So I don't want to confuse the record.

18   There's --

19             THE COURT:  There's the RICO, and then, there's the

20   alter ego omnibus issue, I think.  And so is that another

21   matter which Greenwich Landing and Ms. Ngok listed as

22   defendants?

23             MR. MAJOR:  I'm not sure about --

24             THE COURT:  Well, it doesn't --

25             MR. MAJOR:  -- I don't remember --

1          THE COURT:  -- all I wanted to understand, and

2    you've answered the question, is she is being represented by

3    counsel, and it's you in those adversary proceedings?

4          MR. MAJOR:  Yes, Your Honor.  And the one, the

5    omnibus, there's a footnote where the trustee basically says,

6    and I'm paraphrasing here and probably being a little bit too

7    colloquial, if he wins this case, he's going to drop that

8    case, because he filed it under compulsion of the statute of

9    limitations.

10          And then, there are some fraudulent transfer, post-

11    petition transfer cases which are not stayed.

12          THE COURT:  Okay.  Well, that was my question.  I

13    just didn't recall whether you had actually filed appearances

14    on behalf of Greenwich Land and/or Ms. Ngok in those

15    adversary proceedings.  And your belief is that you have.  So

16    that's -- I just was curious.

17          Again, I don't know everything that's going on in

18    every --

19          MR. MAJOR:  Sure.  Of course.

20          THE COURT:  -- adversary proceeding.  But in any

21    event, so you don't need to file a motion to shorten time or

22    limit notice on the motion for stay pending appeal.  What I'm

23    going to do is -- I've heard -- I think -- is there anything

24    else?  I don't want to cut you off, if there's anything else

25    you'd like to say for the record.

 1          MR. MAJOR:  No, Your Honor.  I think that covers

 2   it.

 3          THE COURT:  All right.  Well, thank you.

 4          MR. MAJOR:  Thank you, Your Honor.

 5          THE COURT:  Then, as Trustee Despins had requested

 6   last week, we have held a status conference in this adversary

 7   proceeding today.  And since that request was made last

 8   Tuesday and granted, it was -- I think it was even granted on

 9   the record, but it --

10          Things have happened since last Tuesday, including

11   the defendants filing a motion for stay pending appeal, and,

12   apparently, the most -- the defendants filing today a motion

13   for extension of time of the enforceability date of the

14   judgment in the order granting summary judgment.

15          I understand the trustee's concerns about timing,

16   and I also understand the defendant's concerns about timing.

17   What I'm going to do is within the next day or -- I'm going

18   to change the July 22nd date in the summary judgment order.

19   That's clear.  I'm not going to be able to -- you haven't

20   even filed a response yet, Trustee Despins.

21          And I'm not saying you should have, but to the stay

22   pending appeal, you haven't done that yet.  And I know you're

23   going to respond, and I was going to order you to respond, so

24   that's going to happen, okay?  And then, you'll have an

25   opportunity, Attorney Major, for a reply to the trustee's

1  response.

2         And then, we'll have it -- whatever order I issue,

3  we'll have all the dates and times in them.  I'm not going to

4  -- I don't know what the timing is as I sit here right now,

5  but I'm not going to grant a motion for 90 days of extension

6  of time.  I don't see that as being productive at this point

7  in time, but you can reserve your right to ask for additional

8  time depending upon whatever I do.

9         But I don't see that just granting an extension of

10 time for 90 days right now is the appropriate thing to do.

11 So I have to go back and review certain things.

12        And my belief is that -- today's Tuesday, so my

13 belief is before Thursday, if not sooner, some form of order

14 will issue with regard to this adversary proceeding that will

15 set up a schedule of time for the trustee to respond to the

16 motion for stay pending appeal, the defendants to reply to

17 that response, and setting a hearing, and also extending or

18 modifying, I suppose, the date of July 22nd in the order

19 granting summary -- motion for summary judgment.

20        So have I forgotten anything?  Or is there anything

21 else that you either of you would like to state for the

22 record before we move on to the next matter?

23        MR. DESPINS:  No, Your Honor.  The only concern is

24 whether things are getting paid for the house and -- but --

25        THE COURT:  Well, that'll be all part of the order.

1          MR. DESPINS:  Okay.

2          THE COURT:  Okay?  I will -- and I already told

3    Attorney Major on the record that I want him to be able to

4    answer those questions.  So that's going to be whether the

5    question is yes or no -- whether the answer is yes or no, I

6    don't know.  But I need him to answer those questions.

7          He's asking for a stay pending appeal, which he's

8    absolutely entitled to do.  I need to know some facts that I

9    need to consider in connection with that motion for stay

10    pending appeal.  So that'll be all part of that order.

11          I think that what we'll do is, as I said, I think

12    we'll enter an order in the next few days, maybe sooner.  I'm

13    forgetting something, apparently, which is good that

14    somebody's reminding me.  Yeah.

15          Again, I think -- I talked about this issue already

16    a little bit, but you all -- you have to think about whether

17    or not a bond -- I know you've argued that a bond, or I don't

18    know, but I believe you've argued that you shouldn't have to

19    post a bond.  Is that correct?

20          MR. MAJOR:  Yes, Your Honor.

21          THE COURT:  All right.  So and I told you, I think,

22    during this hearing that I think that's a rare occasion, that

23    if a party is successful in obtaining a stay pending appeal,

24    that there isn't a bond required.  And I know -- I don't

25    know, but I believe I'm accurate, that the trustee is going

1  to say you have to post a bond.

2        So there's going to be an argument about the bond,

3  right?  We've already talked about if there -- if we get to

4  this stay, if the Court grants a stay, we've already talked

5  about the harm to the trustee for not being able to execute

6  on the judgment.  And he's offered up some initial ideas

7  about the harm, including the taxes, the rental.

8        But you all both have to think about what is it --

9  what would be an appropriate bond and what would it be based

10  on because it's not as if the Court is going to just make a

11  determination of an amount of a bond.  This isn't a money

12  judgment, right?  We don't have a money judgment that I can

13  just say -- not that I, you know, that I could at least have

14  a basis to formulate the amount of the bond.

15        So, you know, the value of the property and losing

16  the property from the trustee's perspective is probably what

17  he's going to focus on as an amount of bond.  I don't know

18  what you're going to focus on.  You can continue to make the

19  argument that you're not entitled -- I mean, you're not

20  required, excuse me, to file a bond.  But I think I've made

21  it clear that I think that's unusual under these

22  circumstances.

23        You do whatever you think.  But I'm explaining to

24  both of you that that has to be part of what's in your

25  papers.  And if there's something that you're relying on that

1   is factual, that relates to a dollar amount of a bond, then,

2   I need to see that because I need to be able to consider that

3   in connection with the possible need to post a bond of a stay

4   pending appeal.

5           We're not going to do it in segments, right?  We're

6   going to do it all in one.  I don't know if I'm going to

7   grant, I have no idea.  I have to look at your papers.  I

8   have to look at the response.  I have to look at the reply.

9   And then I have to figure out if the stay is warranted, what

10  -- is there a bond?  And if there is, what is it?

11          So we have to plan for all eventual possibilities.

12  And so you have to think about that.  And I -- and it's not

13  going to be that we're going to raise a new issue about how

14  we're going to get to the bond.

15          You're going to have to tell me in your papers.  I

16  think a bond should be -- like the trustee, I think the bond

17  should be X because I can -- I got -- I have an affidavit of

18  a real estate broker who says, which, by the way, doesn't

19  mean that that's evidence, but it is an opinion that the

20  value of the property is X, or the rental value is Y, or the

21  taxes are due and owing is Z.

22          And if you add all those up, those are the harm

23  that comes to me, Trustee, if you don't let me sell this

24  property right now because you grant a stay pending appeal,

25  right?  And the same thing, you're going to have to tell me

1   why you think you don't have to, or if you do, why -- what

2   the amount should be.

3          And I understand -- I mean, I can anticipate

4   somewhat of the arguments, right?  It isn't anything we

5   haven't talked about before in general.  But I want it to be

6   specific is the point.

7          Does anybody have any questions about that?

8          MR. MAJOR:  No, Your Honor.

9          THE COURT:  Okay.  I just -- I mean, you know, I'm

10  not going to go through another round of briefing on what it

11  is the information that you're both relying on as far as how

12  does the Court set the amount of the bond.  I have to

13  consider that at this point, if there's going to be a stay

14  pending appeal.

15         We've just got to get everything done in one

16  briefing schedule because failure to address that issue may

17  result in a denial.  And I don't want it to be -- I would

18  prefer not to deny a motion because you didn't address an

19  issue.  I would like the address -- the issue should be

20  addressed.  I mean, the statute says, right?  I mean, it's

21  not a statute.  The rule says that the bond -- I mean, it

22  anticipates the bond.

23         And as we all know, under general, you know,

24  principles of litigation, the party against -- the party who

25  is not able to execute on the judgment, arguably, is being

1  harmed.  And that's the point of the bond.

2  So anyway, I think that's -- I hope I've made

3  myself clear.  If I haven't, please, you know, ask me a

4  question right now.  I'm happy to try to make it more

5  definitive.  I'm not suggesting you have to have a specific

6  piece of evidence.  But you may want one, and you may need

7  some.  And I think you probably do.

8  MR. DESPINS:  Your Honor, my only question is

9  regarding timing.  And I -- it's a kind of a personal issue,

10  I'm gone from the 30th for a little while.  And please don't

11  take that as the trustee saying, oh, let's schedule this

12  later in August.  That's not what I'm suggesting.

13  We're willing to squeeze ourselves on terms of

14  filing a response to what they filed in order to get this

15  heard before or on the 30th.

16  THE COURT:  Yeah, I don't know if that can happen.

17  MR. DESPINS:  Okay.

18  THE COURT:  I have to say, I'm not sure that can

19  happen.  I understand your request, and I will take it into

20  consideration.

21  MR. DESPINS:  Thank you, Your Honor.

22  MR. MAJOR:  Your Honor, I would just like to -- I,

23  of course, understood everything the Court said about the

24  bond completely.  I just want to note for the record, I

25  didn't want to just be silent and have it look otherwise.  I

1  mean, we do argue that the bond, under these circumstances,

2  are unnecessary.  It's not a money judgment, and there's an

3  unencumbered piece of real estate sitting there, subject to

4  an injunction and things like that.

5         I understand everything you said.  I just didn't

6  want my silence to be construed as us not continuing to make

7  that argument.  But we certainly understood everything that

8  the Court has said.

9         THE COURT:  Okay.

10        MR. MAJOR:  And, you know, we'll take that under,

11 obviously, heavy consideration.

12        THE COURT:  Okay.  Thank you.

13        MR. DESPINS:  Thank you, Your Honor.

14        THE COURT:  All right, so with regard to the status

15 conference in adversary 23-05005, we've conducted the status

16 conference.  We've discussed the issues that are relevant to

17 the order granting the summary judgment, including the motion

18 for stay pending appeal, and a motion for extension of time,

19 and the trustee's request for immediate enforcement of the

20 summary judgment order on July 22nd.

21        And as I've stated, I'm going to extend that date

22 of July 22nd, I don't know for how long, in accordance with a

23 scheduling order that will be issued by the Court, and that

24 should memorialize the issues we've discussed on the record

25 today.  And I hope to have that order issued by Thursday.

1   Anything further?

2           MR. DESPINS:  Thank you, Your Honor.

3           MR. MAJOR:  Thank you very much, Your Honor.

4           THE COURT:  Okay.  Thank you both.  And you don't

5   have to stay, Attorney Major, if that was your question.

6           MR. MAJOR:  Yes.

7           THE COURT:  Okay.

8           MR. MAJOR:  Thank you very much, Your Honor.

9           THE COURT:  Thank you.  All right.  The next matter

10  on the calendar is with regard to Genever and the DIP motion.

11  Is that correct?

12          MR. DESPINS:  That's correct, Your Honor.

13          THE COURT:  Okay.  Please proceed.

14          MR. DESPINS:  So Your Honor, this is relating to a

15  motion filed at Docket 3259, it's a continuation of the

16  inter-debtor DIP financing.  It's to authorize an amendment

17  of that financing, the financing by Kwok's estate of Genever

18  US, and Genever BVI.

19          And basically to make a long story short, you

20  recall that you had authorized up to $2 million of such

21  inter-debtor borrowing.  We have not fully used the $2

22  million, but we know that the 2 million will not be

23  sufficient to complete the work that has been done.

24          So to date, we've used 1.3.  And by the way,

25  attached to the motion is a schedule of the types of usage

1  that have been made of the -- that's Exhibit B.  It's the

2  summary of borrowings to date.  And we know that the 2

3  million will not be enough because we believe there's going

4  to be an additional 1.1 million of repairs or, you know,

5  renovation.

6          You're familiar with all -- you've approved all

7  this work before, but it's being done right now.  It should

8  be completed, you know, God willing, by mid-August so we can

9  put the property on the market to sell it, but we know we're

10 going to run short on the 2 million, so we're asking for a

11 million more, not -- the intent is not to use the full

12 million, it's just that we don't want to come back to Your

13 Honor, to the extent we need to do this.

14         Normally, AIG, that's our view, should pay for

15 that, but they're refusing to pay it until they're ordered to

16 do so.  So that's why we need to advance the funds right now

17 from the Kwok estate to the Genever Estate on a super

18 priority basis.

19         Basically it's the same loan as before.  It's just

20 we're adding $1 million incremental borrowing capacity.  We

21 filed a motion, no objections were filed.  The Sherry-

22 Netherland has consented to this financing, so unless Your

23 Honor has questions, we -- that's what --

24         THE COURT:  I don't have any questions, but I -- it

25 might be that other people wish to be heard.  Is there anyone

1  else wish to be heard?  I see counsel for, I think, the

2  Sherry-Netherland in the courtroom.  Do you wish to be heard?

3           MS. MILLMAN:  Yes, Your Honor.

4           THE COURT:  Yes?

5           MS. MILLMAN:  If possible, yes.

6           THE COURT:  Yes, please.

7           MS. MILLMAN:  Good afternoon, Your Honor.  Sherry

8  Millman with Hogan Lovells US on behalf of Sherry-Netherland.

9  As Mr. Despins indicated, we do consent to the funding

10 because we believe the work previewed for the Court in the

11 last hearing is necessary under the proprietary lease and the

12 related agreements.

13           We give our consent reluctantly, unfortunately,

14 because we really do believe there's another source, being

15 the insurance proceeds, and we recognize that every

16 additional ounce of funding, particularly which is secured by

17 the apartment, although junior to our position, raises the

18 bar on the price that Mr. Despins will be seeking when he

19 tries to sell this because he's just going to have to cover

20 more.

21           So we are where we are, and we do give that

22 consent.  But we wanted to provide that context to the Court.

23 Really, we're hoping AIG would step up to the plate or be

24 compelled to do so.  Thank you, Your Honor.

25           THE COURT:  Thank you.  I don't -- I might not have

1  heard Trustee Despins say this, so apologize.  He may have

2  already said it and I'd missed it.  But do you know when this

3  is going to be completed?  I mean, what, you know, the work

4  so that you can start to try to sell this property?

5           MS. MILLMAN:  He did indicate, and we have Sherry-

6  Netherland has been working closely with Mr. Despins --

7           THE COURT:  That's why I figured you'd know.

8           MS. MILLMAN:  -- his contractors and it --

9           THE COURT:  Yeah.

10           MS. MILLMAN:  -- and, hopefully, it'll be completed

11  in mid-August as he indicated.

12           THE COURT:  Mid-August, okay.  All right.  Well, I

13  thank you for being present and making that -- your -- known

14  on the record that your client consents to the entry of this

15  order.

16           MS. MILLMAN:  Thank you.

17           THE COURT:  Thank you.  Is there anyone else that

18  wishes to be heard?

19           MS. MAYHEW:  Your Honor, Christine Mayhew, Pullman

20  & Comley, on behalf of the committee.  I just wanted to

21  express the committee's support for the motion, as well, to

22  allow the borrowing so that these -- the remediation can be

23  completed.

24           THE COURT:  Thank you.

25           MS. CLAIBORN:  Good afternoon.  Holley Claiborn for

1   the US Trustee.  We have no objection to the motion.

2            THE COURT:  Thank you.

3            MR. DESPINS:  So Your Honor, just one

4   clarification.  Counsel for the Sherry-Netherland, you know,

5   mentioned that they support this because it's necessary under

6   the lease.  I don't want to have a polemic over that, but

7   whether that's necessary under the lease or not, or we're

8   obligated legally to do it, I don't want to park that issue

9   to decide.

10           We're asking for the financing.  We're doing the

11  repairs, but I didn't want my silence to that to be, you

12  know, looked at acquiescence that that's a viable legal

13  theory.  Again, we don't need to debate that, I just want to

14  make sure my silence was not acquiescent to that point.

15  Thank you, Your Honor.

16           THE COURT:  Understood.  So I don't know how I

17  missed you saying the middle of August, but obviously, I did,

18  so I apologize.  I wasn't sure when this would be completed.

19  The findings of fact in the order that you've submitted, I

20  didn't have an opportunity to completely compare, but I think

21  they are the same findings that were made in the prior order.

22  Is that correct?

23           MR. DESPINS:  That's correct, Your Honor.

24           THE COURT:  So give me one moment, please.  So I'm

25  just wondering if we shouldn't be referring, and maybe we

1   are, and again, I might not be seeing it because I'm looking

2   at the proposed order, but referring to the order that

3   already entered, right?  Because this is just an amendment to

4   the credit agreement.

5          So the order that already entered has some effect,

6   doesn't it?  Or are you saying it doesn't because this is

7   just with regard to an amendment to the credit facility?

8          MR. DESPINS:  We can make reference more clear --

9   we can make clearer, Your Honor, if --

10          THE COURT:  I think it would be helpful --

11          MR. DESPINS:  Okay.

12          THE COURT:  -- to make that a little more clear,

13   and to refer to the prior order.

14          MR. DESPINS:  Yeah.  And basically saying that

15   we're not modifying it.  It's just additional --

16          THE COURT:  Additional funding, right?  That's the

17   whole point.

18          MR. DESPINS:  That's the intent, Your Honor.  I

19   apologize if we didn't --

20          THE COURT:  No, that's fine.  And I understand the

21   reason why you are seeking the amendment to the credit

22   agreement.  And under the code sections that you've cited in

23   your proposed order, those sections authorize or supplement

24   the authorization of entering into an amendment to the DIP

25   credit agreement.

1        I agree with your proposed order that no one has

2   filed any written objections to the motion.  There is no one

3   participating in this hearing that is objecting to the

4   motion.  The Sherry-Netherland has consented to the motion.

5   The Committee and the U.S. Trustee -- well, the Committee

6   supports the motion.  The U.S. Trustee had no opposition to

7   the motion.

8        And for all those reasons, the motion is granted.

9   And I would just ask for a revised proposed order.

10        MR. DESPINS:  Yes, Your Honor.

11        THE COURT:  And, you know, we will address that as

12   soon as it is submitted to the courtroom deputy email box,

13   okay?  I would just ask that you cc counsel for the Sherry-

14   Netherland and the Committee and the U.S. Trustee when you

15   submit that order, please.

16        MR. DESPINS:  Yes, Your Honor.

17        THE COURT:  Okay.  So that motion is granted.  And

18   the revised proposed order, will you be able to submit that

19   by Thursday?

20        MR. DESPINS:  We can do that tomorrow, Your Honor.

21        THE COURT:  Okay.  Thank you.  All right.  Then

22   that takes care of the issues with regard to Genever, I

23   believe; is that correct?

24        MR. DESPINS:  That's correct, Your Honor.

25        THE COURT:  All right.  So then, as the last matter

1    with regard to Ace Decade?  No, we have one other matter.

2             MR. DESPINS:  There's a motion to limit notice.

3             THE COURT:  Oh, right.  I apologize.  I'm sorry.

4    Go right ahead.

5             MR. DESPINS:  So Your Honor, this is Docket No.

6    3301.  It's a motion to limit the service of the motion that

7    has not been filed, but that will be filed soon, to extend

8    the August 15 deadline to bring avoidance actions.

9             And basically, very simply, we -- last time we did

10   this we spent a lot of money with Federal Express and

11   publication notice and all that, and a number of people

12   objected.  And what we're proposing this time is to serve all

13   the people who objected, obviously, everyone that's on the

14   2002 service list and the Committee, the U.S. Trustee,

15   etcetera.

16            The only issue that we bracketed for your

17   consideration is whether you also want us to provide service

18   on the defendants and the adversary proceedings where -- and

19   an email address has been provided by them because they've

20   appeared.  We're happy to do that because email service is

21   cheap, doesn't take a lot of time.

22            That's the only question mark because I -- we put

23   that as a footnote to the motion on Page 6 Footnote 4 and in

24   the order, Paragraph 2, there's a bracket under Roman Numeral

25   V where we say all defendants that have appeared in pending

 1   adversarial proceeding.

 2            THE COURT:  Oh, okay, I see that.

 3            MR. DESPINS:  So it's up to you whether, frankly, I

 4   think these people would be covered under some other theory,

 5   but we're happy to do it so it's really up to Your Honor as

 6   to whether we --

 7            THE COURT:  Well, I think since it's not

 8   burdensome, I would ask you to do it.

 9            MR. DESPINS:  Okay, we will.  So therefore, just

10   these brackets would need to be taken out of the order, if

11   Your Honor's otherwise okay with the order.

12            THE COURT:  I have a couple of my -- first of all,

13   I'd like to make sure no one else wishes to be heard on the

14   motion, excuse me, the motion to limit.

15            MR. DESPINS:  The objection deadline was Friday,

16   but we didn't receive any objections.

17            THE COURT:  Exactly.  I looked at that.  So does

18   any -- I'm hearing no one else wishes to be heard.  So I

19   would ask a few minor changes to the proposed order.  I would

20   like -- and it may seem overkill, but I think it's helpful in

21   the future for other people that aren't in the room and

22   haven't paid attention, possibly, because they didn't need to

23   for whatever reason, and that's absolutely fine.

24            I would like the proposed order to indicate that

25   there was a motion to expedite hearing filed.  That was

1   granted.  The hearing was scheduled for today.  No one filed

2   any objection by the objection deadline of July 12th.  Just

3   be a little bit more specific on that.

4            MR. DESPINS:  Yes, Your Honor.

5            THE COURT:  And that's really all I -- that's the

6   only issues that I see with the proposed order, okay?

7            MR. DESPINS:  Will do.

8            THE COURT:  The Paragraph 2, Number 5, I agree that

9   I would like you to serve all the defendants that have

10  appeared in the pending adversary proceedings because I think

11  that will be fairly straightforward and not too burdensome to

12  the estate.

13           MR. DESPINS:  Will do.

14           THE COURT:  Otherwise, the motion is granted, and

15  the order will enter upon submission of the revised proposed

16  order.  So again, would you be able to get the revised

17  proposed order to the Court by Thursday?

18           MR. DESPINS:  Yes, Your Honor.  No problem.

19           THE COURT:  Okay.

20           MR. DESPINS:  Actually, probably by tomorrow.

21           THE COURT:  Okay.  Well, I'll give you to Thursday

22  just because it's easier for the clerk's office to track that

23  way.  So I'll just ask that -- I will note that the motion to

24  limit notice, ECF 3301 is granted, and the revised proposed

25  order will be submitted on or before 18th.

1          MR. DESPINS:  Thank you, Your Honor.

2          THE COURT:  Okay?  All right.  Thank you.

3          The final matter on today's calendar is a continued

4    hearing on the motion for default judgment in adversary 23-

5    05028.  We've already taken Trustee Despins's appearance and

6    Attorney Linsey's appearance.  So if the defendants would

7    note their appearances for the record, please?

8          MR. LITTERINE-KAUFMAN:  Yes, Your Honor.  David

9    Litterine-Kaufman from Orrick for the joint liquidators.

10         THE COURT:  Good afternoon.

11         MR. LITTERINE-KAUFMAN:  Good afternoon.

12         MR. ROTH:  David Roth of Wiggin and Dana for the

13   joint liquidators.

14         THE COURT:  Good afternoon.  And so when we were

15   here last -- and then, I'm going to let you both argue -- I

16   just want to make sure that we have no issue on this issue of

17   the defendants.

18         Trustee Despins, you seem to say there's no issue.

19   And if that's fine with you, that's fine.  You're just going

20   to be bound by that.  I'm not --

21         MR. DESPINS:  Yeah.

22         THE COURT:  -- again, I've made clear what my

23   concerns were about it, and I didn't see any change to the

24   appearances.  They're still listed as an appearance on behalf

25   of the liquidators.

1          MR. DESPINS:  Yes, I believe my opposing counsel

2   will address that, but I wanted to be clear.  My point was I

3   view this as a, like, standing issue.  Often Your Honor will

4   rule that someone doesn't have the standing, but nevertheless

5   reach the merits to make sure the record is covered.  And

6   that was only my point.  It's not that I -- not that I

7   supported the fact that they didn't need to do certain

8   things, but --

9          THE COURT:  I didn't take it as a supporting issue.

10   I took it as you decided that -- or not decide.  I don't know

11   if that's fair.  You determined that it's a fight not worth

12   fighting about because they've filed their motion.  And I've

13   already heard it, essentially.

14          MR. DESPINS:  That's correct, Your Honor.

15          THE COURT:  Okay.  All right.  Well, so when we

16   were here last, I asked, well, I instructed there be another

17   meet-and-confer, and that there be some kind of report made

18   to the Court about what's happened with discovery and what

19   the parties' positions are in connection with the default

20   judgment at this continued hearing.

21          MR. DESPINS:  So if I may, Your Honor, I'll offer

22   up my version of where we are.  So Your Honor, first on the

23   discovery, there were a few meet-and-confers, and they have

24   provided us with some documentation.  I would say that in

25   terms of what's relevant to today, they produced documents

1  that showed that they, the JPLs, were contacted by counsel

2  for Ace Decade in February.

3           So for us that -- but no filing actually occurred

4  until June of this year, but they were initially contacted in

5  February.  And for us, that bolsters the argument that Ace

6  Decade, you know, you know, basically sat on their rights,

7  and therefore, that's why default should be entered.

8           But I don't think --

9           THE COURT:  Default judgment.  The default's

10 already been entered.

11          MR. DESPINS:  Sorry --

12          THE COURT:  Right.

13          MR. DESPINS:  -- the default judgment.  So but

14 other than that, I would say more importantly, there were

15 several discussions between myself and the JPLs, the joint

16 provisional liquidators, or one of them, and I would say that

17 I think we've made some progress.

18          I'm saying this cautiously, and that's going to

19 lead to a kind of bifurcated approach, meaning progress in

20 the sense that there may be a way working with them, them

21 being the JPLs, to have me appointed in the BVI as the

22 registered shareholder.  That's not a done deal.  That's a

23 potential resolution, and it would be potentially a first

24 step of a resolution.

25          And as a result of that, I've agreed to -- you may

 1   remember that we filed an amended revised proposed order last

 2   Friday, Docket Number 59.

 3            THE COURT:  I don't remember.  You mean after our

 4   hearing last week?

 5            MR. DESPINS:  Yes.

 6            THE COURT:  Okay.

 7            MR. DESPINS:  It was filed Friday of last week and

 8   you --

 9            THE COURT:  I may have -- I may have looked at it;

10   I may not.  I don't recall.

11            MR. DESPINS:  We had added some language --

12            THE COURT:  Okay.

13            MR. DESPINS:  -- asking you to enter some

14   paragraphs in the order that would say that you're seeking

15   the assistance from the BVI court.  We had mentioned that we

16   were going to do that, but we actually did that.

17            THE COURT:  Okay.

18            MR. DESPINS:  The liquidators were not happy with

19   that.  They actually filed something this morning that said

20   that, and attached a letter saying, basically only BVI can

21   deal with these issues.

22            Bottom line on that is that I -- because there's a

23   potential path to resolve our issues, I've agreed to, if Your

24   Honor is inclined to grant the default judgment, I've agreed

25   to take out of that order the request by you of the BVI court

1   to do certain things.

2          I want to be very clear.  It's not an

3   acknowledgment that they were right on that.  It's more an

4   acknowledgment that there's maybe a path forward that would

5   not involve heavy litigation over there, and we want to see

6   if that's going to play out.  If it doesn't play out, we will

7   be back in front of Your Honor asking you to enter the same

8   type of language that would say, please assist this Court,

9   please, BVI court, assist this Court on providing all the

10  relief to the trustee, including a declaration that the

11  appointment of the JPLs was a nullity.

12          But for now, we would take this out of the order.

13  So the order would remain the same on that score as the order

14  that you saw initially, the default judgment order.  So

15  that's what's happening.

16          But you might say, okay, so does that resolve the

17  issue today?  Unfortunately, not.  In a sense that we still

18  want the Court to enter a default judgment order against

19  Yvette Wang and Ace Decade, and we're ready to argue the

20  merits of that or whatever remaining merits of that there may

21  be.

22          And I believe the counsel for the JPLs is also

23  ready to argue whatever remaining merits there may be to that

24  argument.  And in connection with that I wanted to let you

25  know, because they're challenging Your Honor having personal

1  jurisdiction over Ace Decade, Mr. Bassett last week mentioned

2  that Ace Decade had filed a complaint in the U.S. in 2016

3  yeah, 2016, at which -- in which Ace Decade said that its

4  principal place of business was New York City, where Mr. Kwok

5  was located.

6        And we filed today a copy of that complaint, so

7  it's in the record now, so you have it.  It's in the -- the

8  paragraph in question is Paragraph 10 of that complaint.

9        In addition to that, you already had in the docket,

10  in this case, in the general case, the declaration of Mr.

11  Kwok that was filed in support of that Southern District of

12  New York action against Ace Decade.

13        And I believe that's -- actually, I'll come back

14  with the actual number of that -- the actual docket number

15  for that declaration.  But that declaration, basically, Your

16  Honor, I think you've seen many times before, he basically

17  says, I moved to the U.S. in 2015, and I'm Ace Decade, and we

18  were running meetings out of my apartment with my colleagues.

19        We were doing all the negotiations regarding Ace

20  Decade and the investment with UBS out of New York, et

21  cetera, et cetera.  And so that's relevant obviously to the

22  personal jurisdiction point.

23        I also wanted to point out, Your Honor, to bring to

24  your attention two decisions because the argument was made,

25  wait a minute, there's no reference to personal jurisdiction

1  over Ace Decade in the complaint.  And I wanted Your Honor to

2  have the two following cases which basically stand for the

3  proposition that when personal jurisdiction is challenged,

4  the Court may look outside of the four corners of the

5  complaint.

6         And the first case is, Xie, that's X-I-E versus

7  Sklover, S-K-L-O-V-E-R, 260 F. Supp. 3d, Page 30, jump cite

8  3037, District Court of District of Columbia 2017, "In

9  resolving the motion to dismiss for lack of personal

10  jurisdiction, the Court is not limited to the four corner of

11  the operative complaint, but rather may receive and weigh

12  affidavits and other relevant documents, et cetera."

13         The next case is Dicks v. Cooks Junction, Number

14  22-CV-6495.  That's 2023 Westlaw, 2775830 at Page 2.

15         THE COURT:  You have to say that again.

16         MR. DESPINS:  Yeah.

17         THE COURT:  I'm sorry.

18         MR. DESPINS:  So the cite is 2023 Westlaw, 2775830

19  at Page 2, and it's a Southern District of New York April

20  4th, 2023, decision.  And basically the Court is, in

21  reviewing whether plaintiff has met this burden to establish

22  personal jurisdiction, the Court "can consider materials

23  outside the pleadings, including affidavits and other written

24  materials".

25         And therefore, it's perfectly appropriate for Your

1   Honor to look at the statements made by Ace Decade saying,

2   our headquarter is in New York.  And the key here is that

3   there's no evidence from the joint provisional liquidators or

4   anyone else that, in fact, that changed somehow.  Even if you

5   believe the theory of -- I'm putting myself in Yvette Wang's

6   shoes now -- that she is the proper shareholder of Ace

7   Decade, she was in New York at all times, as well.  So was

8   Kwok.

9         And I would say, so am I, in the sense that if we

10  are focusing on the time where this complaint was started and

11  I was the person that should have been in charge of Ace

12  Decade, I'm the only -- I'm located in New York, so is Mr.

13  Kwok, so is Yvette Wang.

14        So there's no argument that, oh, you know, there is

15  a -- that there's -- that Ace Decade is being run out of the

16  BVI, other than the fact that it's a BVI corporation.

17  There's no argument that somehow management is located in BVI

18  or operating a business in BVI.  Not at all.  None of that.

19        And therefore, that is sufficient for Your Honor to

20  find that there's personal jurisdiction over Ace Decade in

21  your court because of nationwide service of process, and the

22  fact that they were properly served, as well, in the BVI.

23        There is a one last point I want to mention, Your

24  Honor, which is the other defendant, the person located in

25  Switzerland, who obtained the shares from Ms. Wang and then

1   authorized the JPL, the liquidation filing in the -- not

2   filing, but the commencement of liquidation case in the BVI.

3           We have filed -- this is Docket Number 61 in this

4   case, in this adversary proceeding.  We filed a notice of

5   request of Chapter 11 Trustee for entry of default against

6   Defendant Rui (phonetic) Hao.  That's spelled H-A-O.  We

7   filed this on Friday, Your Honor.

8           And basically, what we said there is that we

9   received confirmation from Swiss counsel, who confirmed

10  themselves with the Swiss authorities that are in charge of

11  ensuring service under the Hague Convention, that this

12  defendant was properly served at the latest on May 17, 2024.

13  And 60 days after that date is July 16, 2024.  That's today.

14          And in this filing that we made, Your Honor, on the

15  Docket Number 61 in this adversary proceeding, we told -- we

16  said to Your Honor that we would ask for entry of default,

17  not default judgment, but entry of default at the conclusion

18  of this hearing against him.

19          And ideally, again, if Your Honor is inclined to

20  grant the default judgment against Ace Decade and Ms. Wang,

21  we would -- we believe it would be beneficial to have a

22  statement in there that default has been entered against Rui

23  Hao.  And you might say, well, today is 16th.  He might still

24  file something by the end of the day, and that's true.

25          So what do we propose to do, Your Honor, is to file

1  a supplemental notice tomorrow morning, again, if Your Honor

2  is inclined to enter the default judgment against Wang and

3  Ace Decade, that would state that no response of any kind was

4  filed by him.  And based on that, we're asking that default

5  be granted as to him and the order that you would enter would

6  make a reference to that.

7          And you might say, well, I know the difference

8  between default and default judgment, but from an

9  international, you know, execution point of view, I think

10  it's beneficial to have the order you would enter, again, if

11  you're inclined to enter it, contain such a reference or

12  finding.

13          So therefore, we would complete this item by filing

14  tomorrow a statement confirming that by midnight tonight,

15  nothing was filed by this gentleman.

16          So that's the status, Your Honor, and by the way,

17  that was also my argument, why the default judgment should be

18  granted, but that's the current state of play.  So that's why

19  I said this is kind of an imperfect, not complete solution.

20          You know, we believe that some progress has been

21  made, but we're not, you know, it's like going from Point A

22  to Point B.  We're not at Point B yet, and therefore, out of

23  abundance of caution and more than abundance of caution, we

24  think it's important for Your Honor to enter the default

25  judgment today, which I understand will be opposed by the

1   JPLs.  But I'll be happy to an answer any questions you may

2   have.

3            THE COURT:  I do not have any questions.

4            MR. DESPINS:  Okay.  Thank you, Your Honor.

5            MR. LITTERINE-KAUFMAN:  Good afternoon, Your Honor.

6   Just a couple brief points.  First, as Your Honor observed

7   and as the trustee noted, we did not change our notices of

8   appearance.  I should clarify the statements I made on the

9   record last week.

10            My clients are the JPLs, and only these JPLs, as

11   the individuals charged with management of the company's

12   affairs under BVI law, at least for the time being.  They

13   instructed me to come here and make certain arguments on

14   behalf of the company, but the company is not itself my

15   client, and I don't represent the company here.

16            It's my understanding that the trustee,

17   nonetheless, does not object to mine and the JPLs'

18   participation in this motion.

19            As the trustee mentioned, we made a filing, I

20   believe it was first thing this morning.  I just wanted to

21   explain briefly the context and reason for that filing.  It's

22   a response to the trustee's amended proposed order.  We filed

23   it for two reasons.

24            The first is to explain the issues from a BVI law

25   perspective of the new language that the trustee had added to

1  the amended proposed order, which I understand the trustee is

2  now willing to remove for the time being, so I won't belabor

3  that point.

4          The other was Your Honor had expressed interest at

5  the last hearing in hearing more about what the proceedings

6  in the BVI might be to rectify the registry of members for

7  Ace Decade.  And there is some discussion in that letter of

8  what that process looks like.  And we, in our cover filing,

9  we cite to where in the letter Your Honor can find that

10  discussion.  So that was the reason for filing that response.

11          Finally, on the default judgment motion, I don't

12  have much to add to what I said last week.  I'll just briefly

13  reiterate the JPLs do continue to object to personal

14  jurisdiction with regard to when they were contacted.  It is

15  true, my understanding is that they were contacted in

16  February or perhaps January of this year.

17          But I just will note for the record that they were

18  not formally appointed until I believe it was June 24th.  And

19  so they themselves could not act on behalf of the company

20  until that appointment became effective, which was, I

21  believe, two days before the opposition deadline.

22          THE COURT:  Who contacted them?

23          MR. LITTERINE-KAUFMAN:  I believe they were

24  contacted by counsel.  I don't -- by BVI counsel.

25          THE COURT:  And who's that?

1          MR. LITTERINE-KAUFMAN:  It is the firm, Walkers.  I

2  don't know which individual at Walkers.

3          THE COURT:  And who was Walkers representing?

4          MR. LITTERINE-KAUFMAN:  I believe Walkers was

5  representing the shareholder listed on the registry.  I

6  believe Mr. Hao.

7          THE COURT:  So Mr. Hao?  Rui Hao?

8          MR. LITTERINE-KAUFMAN:  I believe so, yes, Your

9  Honor.

10          THE COURT:  But you're not sure?

11          MR. LITTERINE-KAUFMAN:  That's my understanding,

12  Your Honor.

13          THE COURT:  Okay.  And when they contacted them in

14  February or possibly January.  Let me step back.  Walkers

15  contacted your clients, the liquidators, the two gentlemen

16  who serve as liquidators, in January or February on behalf of

17  Mr. Hao or Ho.  I'm sorry.  I may be mispronouncing it.  For

18  what reason?

19          MR. LITTERINE-KAUFMAN:  I believe to inquire

20  whether or not they could serve as joint liquidators.

21  There's a conflict checking process similar to what attorneys

22  do here that they have to go through.  So I believe the

23  outreach was to ask if they could clear conflicts on --

24          THE COURT:  When did your clients tell Walkers that

25  they cleared conflicts?

1            MR. LITTERINE-KAUFMAN:  I do not know, Your Honor.

2            MR. DESPINS:  In February.

3            MR. LITTERINE-KAUFMAN:  Was it in February?

4            THE COURT:  So your clients were just asked to wait

5    until -- is that what you're telling me?  That Walkers, who

6    represented Mr. Rui Hao, who was the alleged holder of the

7    share of stock, was contacted in February by Walkers, by the

8    firm that represents Mr. Hao, and that then your clients were

9    told not to do anything until then they -- in June, just a

10   few days after the extension, the time to respond in the

11   adversary, and then start the liquidation proceedings?  Is

12   that what you're representing to the Court?

13           MR. LITTERINE-KAUFMAN:  Your Honor, the trustee has

14   all of the communications between the liquidators and

15   Walkers.  I do not --

16           THE COURT:  Well, don't you have them?

17           MR. LITTERINE-KAUFMAN:  I do, as well.  I have not

18   personally read them, Your Honor.  So I do not know the

19   answer to this.

20           THE COURT:  Well, why don't you read them, and then

21   we'll take a break, and you can answer those questions for

22   me.  You're their counsel.  You just stood here and told me

23   that you don't represent Ace Decade.  You represent the

24   liquidators, the gentlemen whose names I don't have in front

25   of me, but I read them into the record at the last hearing.

1        And you came here asking for an extension of a

2   deadline, saying that you needed to protect Ace Decade.

3   You're now telling me you don't represent Ace Decade.  So why

4   do you need to protect Ace Decade if you don't represent

5   them?  And now you're saying that you're agreeing that your

6   clients were contacted in February, but you're asking this

7   Court to not enter a default judgment because you acted as

8   soon as you were appointed?  That's the argument?

9        MR. LITTERINE-KAUFMAN:  Your Honor, I'm actually

10  not even arguing on the good faith point.  I was saying that

11  merely to clarify the record.  My argument is solely on

12  jurisdiction.  So I'm happy to move on to that, or I'm also

13  happy to take a break and review the emails, if Your Honor

14  would like.  But I'm actually not

15        THE COURT:  Yeah.  I'd like to take a break.  I'd

16  like you to review those emails.  You're their lawyer.  You

17  should be able to answer those questions.  So we'll be --

18  court will be in recess until 2:30.

19        THE CLERK:  All rise.  The Court's in recess till

20  2:30.

21        (Off the record at 2:11 p.m.)

22        (On the record at 2:36 p.m.)

23        THE COURT:  Okay.  We're back on the record at

24  2:35.  And when we took a recess, counsel, you were going to

25  go and read the emails that we were talking about with regard

1 | to your clients being contacted by Walkers, who represents

2 | the defendant in this adversarial proceeding, one of the

3 | defendants, Rui Hao.  And go right ahead and explain to me

4 | what you were reading during the recess.

5 |         MR. LITTERINE-KAUFMAN:  Yes, Your Honor.  I

6 | reviewed the emails that have been produced to the trustee,

7 | and it appears that there was just a long gap in

8 | communication after conflicts were cleared, and then, Mr.

9 | Hao's counsel provided the shareholder resolution appointing

10 | my clients on June 22nd.  So there was, as I understand it,

11 | just a long gap waiting for that shareholder resolution.

12 |         THE COURT:  Well, when you say waiting for that

13 | shareholder resolution, do you mean that there was an email

14 | in February 2024 or earlier that indicated that there would

15 | be a shareholder resolution that would suggest and -- not

16 | suggest -- that would resolve that the liquidators be

17 | appointed?

18 |         MR. LITTERINE-KAUFMAN:  There was nothing quite so

19 | formal, Your Honor.  There was a communication that the

20 | liquidators had cleared conflicts.  There was some back and

21 | forth about scheduling a telephone call.  This is all in late

22 | February, and then nothing after that until June 22nd when

23 | the email was sent with the shareholder resolution.

24 |         THE COURT:  When the email was sent by Walkers, Mr.

25 | Mr. Hao's lawyer, to your clients?

 1          MR. LITTERINE-KAUFMAN:  That is my recollection of

 2  the email.

 3          THE COURT:  On January -- June 22nd, did you say?

 4  I thought --

 5          MR. LITTERINE-KAUFMAN:  I --

 6          THE COURT:  -- for some reason, I thought it was

 7  the 21st.

 8          MR. LITTERINE-KAUFMAN:  I believe -- I can look

 9  back at it, Your Honor.  My recollection from looking at it a

10  few minutes ago was that it was 22nd, but it --

11          THE COURT:  That's fine.  It's either one of those

12  dates --

13          MR. LITTERINE-KAUFMAN:  Yes.

14          THE COURT:  -- you're saying they're -- and that

15  email from Walkers to your clients individually, is that who

16  received it?  Your clients individually?

17          MR. LITTERINE-KAUFMAN:  And likely others at their

18  firm, Alvarez and Marsal, yes.

19          THE COURT:  Okay.  So others at the firm in which

20  they're employed as -- and where they act as these

21  liquidators, correct?

22          MR. LITTERINE-KAUFMAN:  Yes.  That's my

23  recollection.

24          THE COURT:  So there was an email sent on June 21st

25  or 22nd that had only -- that only said here's the

 1  resolution?

 2          MR. LITTERINE-KAUFMAN:  That's my recollection of

 3  the substance (inaudible) --

 4          THE COURT:  Well, why don't you grab that and let

 5  me see it, please?

 6          MR. LITTERINE-KAUFMAN:  I only have it digitally,

 7  Your Honor.

 8          THE COURT:  Oh, okay.  Well, you know what I'll do?

 9  I'll have you produce all those emails as part of this

10  hearing.  So I will call that liquidator's exhibits.  You're

11  going to tell me they can't be produced?

12          MR. LITTERINE-KAUFMAN:  No, no.

13          THE COURT:  Okay.

14          MR. LITTERINE-KAUFMAN:  I believe that that

15  document, the Rui Hao appointment, is attached to your

16  objection or the request to adjourn --

17          THE COURT:  The appointment is, but there's no

18  email.  There's --

19          MR. LITTERINE-KAUFMAN:  No, no.

20          THE COURT:  -- no email communication that --

21          MR. LITTERINE-KAUFMAN:  I'm sorry.

22          THE COURT:  -- me --

23          MR. LITTERINE-KAUFMAN:  Yes, I'm sorry.

24          THE COURT:  -- that established -- I've seen the

25  two documents.  We read them into the record during the last

1  hearing.  And there's -- and I have no idea when Mr. Hao

2  signed them because they're not dated.  And I have no record

3  of a resolution of Ace Decade instructing or resolving that

4  Mr. Hao could take that action, which normal corporate books

5  and records would have.

6          And I have -- and you're telling me that you've now

7  looked at emails that you didn't look at before that say that

8  there was this contact in January and February of 2024 from

9  Walkers, a BVI law firm, who represented Mr. Hao as the

10  alleged sole shareholder, and said to your clients, whom you

11  represent in this adversary proceeding, who are not named

12  defendants, that we'd like you to clear contact conflicts and

13  act as liquidators.

14          And then, there was no communication between

15  sometime in February of 2024 until the date when the

16  resolution was sent.  And that's what you're telling me,

17  correct?

18          MR. LITTERINE-KAUFMAN:  Yes.  That is what's

19  reflected in these emails.

20          THE COURT:  Okay.  So I'd like all those emails to

21  be filed on the docket of this adversary proceeding.  And

22  they can be filed under the Liquidator's 1, Liquidator's 2,

23  Liquidator's 3, Liquidator's 4 in PDF format.  And if you

24  have any issues about how to do that, you can contact the

25  Clerk's office.  They can walk you through that.  I'm not

1   saying you will have any, but if you do, they can help you

2   with that.

3           And I'd like those on the record by the close of

4   business tomorrow.  Actually, I'd like them on the record by

5   1:00 p.m. tomorrow.

6           So there was a gap from February to June.  And what

7   you've told me is that your review just now in court was that

8   the June, either 20 -- you believe it was the 22nd, doesn't

9   matter, when you file it, it'll tell me whether it was the

10  21st or 22nd email-- solely had attached to it these two

11  documents, and that's it?  It said Act.  Is that what it

12  said?

13          MR. LITTERINE-KAUFMAN:  Your Honor, I have the

14  email in front of me right now.  I can read it to Your Honor

15  if you would like.  It's not very long.

16          THE COURT:  What's the date?

17          MR. LITTERINE-KAUFMAN:  It is the 22nd.  It refers

18  to the resolution which was passed on the 21st.  So that --

19  or it says the resolution was passed on the 21st.

20          THE COURT:  Okay.  Go ahead.  Okay.

21          MR. LITTERINE-KAUFMAN:  It reads, Dear Wes and

22  Barry, please find attached the qualifying member's

23  resolution passed by Mr. Rui Hao on 21 June 2024, approving

24  your appointment as liquidator of Ace Decade.  We trust you

25  will now, without delay, take the necessary steps to register

1   your appointment.

2              If you need anything further from us or our client,

3   please do not hesitate to contact us.  No doubt you will have

4   various queries for our client in relation to the company and

5   the ongoing litigation.

6              Please do let us know what information you require,

7   and we will endeavor to respond as quickly as practicable.

8   Kind regards, Andrew.

9              THE COURT:  What litigation are they referring to?

10             MR. LITTERINE-KAUFMAN:  I interpret that as

11   referring to the litigation in the UK against UBS.

12             THE COURT:  All right.  As I said, by 1:00 -- did I

13   say 1:00 p.m.?  Is that what I said?

14             MR. LITTERINE-KAUFMAN:  Yes.

15             THE COURT:  By 1:00 p.m. tomorrow, I'd like all of

16   the emails that have been produced to the trustee docketed on

17   this adversary proceeding docket in PDF format with the

18   notate -- with the, you know, we don't use stickers anymore,

19   but it would say, the Liquidator's 1, Liquidator's 2,

20   Liquidator's 3, whatever.

21             I'd like them all with the attachments that were

22   attached to each of those emails, to each and every one of

23   those emails, even if the attachments are duplicative.  I

24   want the email to be -- I want the email filed to be the

25   email that was sent and received.

1          MR. LITTERINE-KAUFMAN:  Understood, Your Honor.

2   And Your Honor had asked whether -- how many documents there

3   were attached to that email.  There were two.  One is the

4   resolution, and one is a certificate of appointment.  I

5   believe those are the two documents that were filed with our

6   motion to extend the deadline to oppose.

7          THE COURT:  Okay.  That may be and we'll see when

8   you file them.

9          MR. LITTERINE-KAUFMAN:  Okay.

10         THE COURT:  Okay?

11         MR. LITTERINE-KAUFMAN:  I have nothing else to add

12  on personal jurisdiction, Your Honor, and I will just flag

13  very briefly on subject matter jurisdiction.

14         We argued in our motion to extend the deadline, and

15  I described briefly at the last hearing our position that, as

16  to Ace, there's no additional controversy, given the

17  trustee's position that he controls Ace, and therefore stands

18  on both sides of the V.  And unless Your Honor has questions,

19  that's it for me.

20         THE COURT:  Have you reviewed the documents that

21  the trust -- not the documents.  Excuse me.  I misspoke.  The

22  law that the trustee cited in his argument about the ability

23  of the Court to look beyond the complaint to determine

24  personal jurisdiction?

25         MR. LITTERINE-KAUFMAN:  I am not familiar with

1   those cases, no, Your Honor.

2          THE COURT:  Okay.  Okay.  Anything further, Trustee

3   Despins?

4          MR. DESPINS:  Just one point, Your Honor, on the

5   issue of subject matter jurisdiction.  Ace Decade needs to be

6   a party because people are usurping my right to control it,

7   and Ace Decade is involuntarily being used by people who have

8   no right to use it, such as, for example, the JPL filing.

9          That is why it is a proper party that needs to be

10  bound by the injunction, so that when I go to the UK, I can

11  say there's an injunction against Ace Decade, that Ace Decade

12  is bound by the finding that the trustee owns the shares and

13  controls the company.  Thank you, Your Honor.

14         THE COURT:  Okay.  Anything further, counsel?

15         MR. LITTERINE-KAUFMAN:  Just to reiterate my

16  argument from last week that that is not a stand-in for

17  subject matter jurisdiction.  And I'm not aware of any cases

18  so holding at least.

19         THE COURT:  All right.  I just need to take a look

20  at something for a moment.  So Trustee Despins, I do have a

21  question, given what you've stated on the record this

22  afternoon.  You would like the Court, I think, and I want to

23  make sure that I've heard you correctly, that if the Court

24  enters a default judgment to indicate that an entry of

25  default has also entered against the defendant, Rui Hao, that

1   obviously can't happen until tomorrow at this point, correct?

2           MR. DESPINS:  That's correct, Your Honor.

3           THE COURT:  All right.

4           MR. DESPINS:  And also the Clerk would have to --

5   because sometimes there's a delay so that through your good

6   offices, if there's no -- nothing filed, you know, the Clerk

7   would need to enter it, and then, you could acknowledge that

8   in your order.

9           THE COURT:  What do you mean if -- oh, if Mr. Hao

10  doesn't file anything?

11          MR. DESPINS:  Doesn't --

12          THE COURT:  I'm sorry.  When you say --

13          MR. DESPINS:  Yeah, because we're going to --

14          THE COURT:  Yes, I understand.  I just was trying

15  to follow your thought process.

16          MR. DESPINS:  We're going to file an update

17  tomorrow morning --

18          THE COURT:  Right.

19          MR. DESPINS:  -- confirming or not confirming what

20  has happened.

21          THE COURT:  Okay.  So I'm just looking at what you

22  both said and what I haven't looked at -- I guess, there was

23  a letter filed today.  I don't really know what the letter

24  says.  Is that correct, counsel?  You said the first -- it

25  first explains things from a BVI perspective, but you're not

1  concerned about that at the moment because the trustee is

2  willing to not have, in the default judgment, this language

3  about cooperation of the BVI courts, correct?

4           MR. LITTERINE-KAUFMAN:  That's correct, Your Honor.

5           THE COURT:  All right.  Now what's your second --

6  what's the second point of the letter?

7           MR. LITTERINE-KAUFMAN:  Your Honor, when I was here

8  last week, you had asked about what the BVI proceedings would

9  look like to rectify the registry of members for Ace Decade.

10 And so there is a discussion of that process in the letter,

11 as well.

12          THE COURT:  I'm not sure I asked that question.  I

13 think I asked whether you were going to cooperate and make

14 the trustee be the shareholder.  First, I asked whether

15 you're going to turn over the share, and the answer was no.

16 And then you kept talking about cooperation.

17          And I said, well, how are you going to cooperate?

18 Are you going to make him the share -- the registered holder

19 of the share in the registry.  And I don't think you ever

20 answered that question.  So I don't know.  I haven't looked

21 at your letter.

22          I assume your letter still doesn't offer

23 cooperation to have the trustee become the registered owner,

24 although I guess you are having discussions about that

25 possibly happening?

1          MR. LITTERINE-KAUFMAN:  That's correct, Your Honor.

2   So there have been discussions between the trustee and my

3   clients.  There is a process in the BVIs to amend the

4   registry of members, and the joint liquidators have to then

5   settle the registry.  The current shareholder has an

6   opportunity to object if the trustees amend it to list the --

7   excuse me, if the --

8          THE COURT:  Well, there is no current shareholder.

9          MR. LITTERINE-KAUFMAN:  The --

10         THE COURT:  Don't you -- doesn't your client have

11  the rights of the shareholder now?

12         MR. LITTERINE-KAUFMAN:  They don't own the equity

13  itself, though, Your Honor.  They are not themselves

14  shareholders.  They're court-appointed liquidators.

15         THE COURT:  But what does the resolution say?

16  Doesn't the resolution -- see, that was what my question was

17  last week.

18         MR. LITTERINE-KAUFMAN:  Yeah.

19         THE COURT:  What are their powers?  You're not -- I

20  don't know what their powers are, okay?  There's nothing in

21  the documents that you've filed on their behalf as non-

22  appearing defendants and not-named defendants.  There's

23  nothing to answer any of these questions.

24         So you filed an emergency motion, I think it was,

25  wasn't it?

1          MR. LITTERINE-KAUFMAN:  To the extent --

2          THE COURT:  An emergency motion --

3          MR. LITTERINE-KAUFMAN:  Yes, Your Honor.

4          THE COURT:  -- to stop the default judgment from

5    entering.

6          MR. LITTERINE-KAUFMAN:  I believe it was to extend

7    the deadline for the judgment.

8          THE COURT:  Well, but there wasn't a deadline.  The

9    deadline had already expired.  So that's what it was.  It was

10   a motion to stop the default judgment from entering.  You

11   can't extend a deadline that has expired.

12         I think we had that conversation last week, okay?

13   So let's look back at your document.  You filed a motion to -

14   -an emergency motion to extend time to respond to default

15   judgment, which was late.  So the time had already expired,

16   so there's nothing to extend.

17         And you've now admitted today that your clients

18   knew this proceeding was going to happen at some point, and

19   that they knew on June 22nd.  And you -- and that's the day

20   they were -- I think you just read, act accordingly.  And

21   then, they didn't file this motion till July 1st.  Isn't that

22   accurate?

23         MR. LITTERINE-KAUFMAN:  That is an accurate

24   chronology, yes, Your Honor.

25         THE COURT:  Okay.  So what's the purpose of the

 1  liquidation, counsel?  Tell me what the purpose is.  If

 2  you're saying -- first of all, you don't represent Rui Hao.

 3  You've made that clear today.  You only represent the joint

 4  liquidators.

 5          MR. LITTERINE-KAUFMAN:  That's correct, Your Honor.

 6          THE COURT:  So what's the purpose of the

 7  liquidation?

 8          MR. LITTERINE-KAUFMAN:  My understanding of the

 9  purpose of the liquidation is it's similar to liquidation

10  proceedings in the United States.  The joint liquidators are

11  charged with selling, and -- well, monetizing the company's

12  assets, and then, you know, settling the company's

13  liabilities, and then paying out what remains to creditors

14  and equity holders.

15          THE COURT:  So what information do your clients

16  have about the assets and liabilities of the company?

17          MR. LITTERINE-KAUFMAN:  The primary asset, as I

18  understand it, is this litigation.

19          THE COURT:  That wasn't my question.  My question

20  is, what information do your clients have about the assets

21  and liabilities of the company?  What was given to them?

22  Something had to have been provided to them.  They're not

23  just going to act as liquidators, or maybe they are, without

24  any information.  But that I'd like to know.

25          Because if it's a liquidation proceeding and

1   there's no equity in the company, then Mr. Rui Hao's share

2   has no value.  So what information were your clients provided

3   about the assets and liabilities of this company?  And who

4   provided it to them?

5           MR. LITTERINE-KAUFMAN:  I believe that

6   investigation is still underway, Your Honor.  I am not aware

7   of -- I don't believe they get, like, a packet of materials

8   that is the assets and liabilities.

9           THE COURT:  But you don't know that.  You can't

10  answer that question.

11          MR. LITTERINE-KAUFMAN:  That's correct, Your Honor.

12          THE COURT:  Okay.

13          MR. DESPINS:  Your Honor, if I may --

14          THE COURT:  Yes.

15          MR. DESPINS:  -- I know a little bit about this.

16  There are two types of liquidation proceedings in the BVI,

17  and this one that was started -- can be started by a

18  shareholder without alleging or demonstrating insolvency.

19  It's just -- they just sign -- as a shareholder, they sign

20  the appointment and off they go.  It's not a court

21  proceeding.

22          THE COURT:  I understand that.  I'm asking the

23  question, though.  What information, if any, have these

24  liquidators been provided?

25          MR. DESPINS:  Yep.

1          THE COURT:  They came here -- I'm looking at this

2  motion that's dated July 1st.  I'm listening to the argument

3  that this default judgment shouldn't enter because there's no

4  subject matter.  Wait.  They've abandoned the good faith.

5  They've already basically admitted they're acting in bad

6  faith.

7          And they've said that you can't do anything, Judge,

8  because you don't have subject matter jurisdiction.  But they

9  can't explain why.  They can't explain.  There's no

10  explanation as to why.  It's just because that's how things

11  work in the BVI.

12          You've just admitted that your clients knew about

13  this since February.  You've also admitted that your clients

14  received the documents on June 22nd, which, by the way, was

15  before the deadline to respond.  And then you didn't file

16  because the deadline to respond was June 25th.  And then, you

17  didn't file anything to July 1st.  And you're not a

18  defendant.

19          But you want this Court to not enter a default

20  judgment because you're claiming this Court doesn't have

21  subject matter jurisdiction/personal jurisdiction.

22          MR. LITTERINE-KAUFMAN:  Your Honor, just for the

23  clarity of the record, we're making no argument and taking no

24  position on good faith one way or the other, but it's not our

25  position that they were acting in bad faith.  We were

1    limiting our arguments to jurisdictional arguments.

2            THE COURT:  Well, that's not what your motion does.

3    Your motion says, second, the Ace liquidators have acted in

4    good faith.  The Ace liquidators identified and engaged U.S.

5    counsel within six business days of their appointment and are

6    filing this request on the same day they completed the

7    engagement.

8            That's what your motion says.  So are you

9    abandoning Paragraph 7 in your motion?

10           MR. LITTERINE-KAUFMAN:  As to the joint

11   liquidators, no, Your Honor.  Your Honor was asking about Mr.

12   Hao and about the company.  The joint liquidators only had

13   the ability to act following their appointment.

14           THE COURT:  But they knew about this since

15   February.  So somebody had to tell them that don't act until

16   we give you this, right?

17           MR. LITTERINE-KAUFMAN:  Well, they have no legal

18   authority to act.

19           THE COURT:  I understand that.  I understand that,

20   counsel.

21           MR. LITTERINE-KAUFMAN:  Yeah.

22           THE COURT:  But somebody -- you've admitted already

23   that these conversations happened maybe even in January of

24   this year, and yet nothing happened in this Court until after

25   the response date for default judgment -- to the default

1   judgment was -- has passed.

2          MR. LITTERINE-KAUFMAN:  That's correct, Your Honor.

3          THE COURT:  Okay.  And you're acting in good faith?

4   Your clients are acting in good faith?

5          MR. LITTERINE-KAUFMAN:  Yes.

6          THE COURT:  Okay.  Well, you say you filed the --

7   you say in your motion, for the avoidance of doubt, the Ace

8   Liquidators are filing this request solely to preserve Ace's

9   rights to respond to the motion.  Okay.  You've responded,

10  even though it was late, and I didn't grant you an extension

11  of time nor should I have because your clients have not shown

12  that they have acted in good faith.

13         This is -- you know, you came here.  You weren't

14  sure who you represented last week.  Now, you're coming here

15  today.  You say you solely represent the liquidating agents

16  or whatever their title is, the liquidators, who are not

17  defendants in this adversary proceeding.

18         But you want me to consider your argument, that I

19  have no subject matter jurisdiction or personal jurisdiction

20  over Ace Decade, who is not your client, correct?

21         MR. LITTERINE-KAUFMAN:  Ace Decade is not my

22  client.

23         THE COURT:  But isn't that what you're asking me?

24         MR. LITTERINE-KAUFMAN:  Your Honor, the joint

25  liquidators wanted to participate in these proceedings to

1  that extent solely because if the trustee comes down to the

2  BVI with a default judgment order that the BVI court

3  determines was jurisdictionally defective, then, it's not

4  going to be very useful.

5         So the trustees came here out of respect to this

6  Court, to the trustee, and the process to try to flag this

7  issue and figure out a way to address it.  And my

8  understanding is the trustee is now speaking to the joint

9  liquidators to set out -- down a process in the BVI to do

10 precisely that.  So that that was the goal of the joint

11 liquidators in coming here.

12        THE COURT:  Well, that's not true.  You asked me to

13 stay this adversary proceeding.  So that's not accurate.

14        MR. LITTERINE-KAUFMAN:  For precisely that reason,

15 Your Honor, to allow this process that the trustee and the

16 joint liquidators are now moving down --

17        THE COURT:  You don't need a stay to have that

18 process move forward.  You asked for a stay.  That's a

19 completely different argument, counsel.  I think you need to

20 be careful about that.  You asked -- you affirmatively asked

21 for a stay of these proceedings.  You asked for this to be

22 heard on an emergency basis.

23        Your client could have done all these things

24 already with the trustee without having the Court involved.

25        MR. LITTERINE-KAUFMAN:  It was merely to raise

1  these issues with a default judgment, if it gets entered, so

2  that they could be fixed at the front end.  It really was an

3  attempt to, in good faith, have the two jurisdictions

4  coordinating together.

5        THE COURT:  Well, if that's the case then, why are

6  you arguing that I should deny the motion for default

7  judgment based on subject matter jurisdiction or personal

8  jurisdiction, lack thereof?

9        MR. LITTERINE-KAUFMAN:  Because a jurisdictionally

10  defective default judgment isn't going to accomplish much in

11  the BVIs.

12        THE COURT:  You don't know that though, counsel.

13  That's only what you've been told.

14        MR. LITTERINE-KAUFMAN:  That is correct, Your

15  Honor.

16        THE COURT:  All right.  Anything further on this

17  motion for default judgment?

18        MR. LITTERINE-KAUFMAN:  Not for me, Your Honor.

19        MR. DESPINS:  No, Your Honor.  Thank you.

20        THE COURT:  All right.  I will review the pleading

21  that the trustee will file tomorrow morning, and I will enter

22  an order on the motion for default judgment following my

23  review of the information submitted by the Chapter 11 Trustee

24  plaintiff in this adversary proceeding.

25        So the matter is essentially -- the matter will be

 1  ruled on after the filing by the trustee regarding the

 2  defendant, Rui Hao, and the request for entry of default.

 3          All right.  That concludes all of the matters on

 4  today's calendar.  Is there anything else we are need to

 5  address this afternoon?

 6          MR. DESPINS:  No, Your Honor.

 7          THE COURT:  Anything, counsel?

 8          MR. LITTERINE-KAUFMAN:  No, Your Honor.

 9          THE COURT:  Okay.  All right.  Thank you all.

10  Court is adjourned.

11          THE CLERK:  All rise.  Court's adjourned.

12          (End of Proceedings.)

13

14                    CERTIFICATION

15          I certify that the foregoing is a correct

16  transcript from the electronic sound recording of the

17  proceedings in the above-entitled matter to the best of our

18  knowledge and ability.

19

20  /s/ Wendy Sawyer                    July 18, 2024

21  Wendy Sawyer, CDLT

22  Certified Court Transcriptionist

23  For Reliable

24

25