| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Luc A. Despins, Chapter 11 Trustee | Bouillor Holdings Limited, Qiang Guo, Mei Guo, New Dynamic Development Limited |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Neubert, Pepe & Monteith, P.C. (c/o Patrick R. Linsey), 195 Church Street, 13th Floor, New Haven, Connecticut 06510, (203) 781-2847, plinsey@npmlaw.com | For Mei Guo: Chiesa Shahinian & Giantomasi PC (c/o Lee Vartan), 105 Eisenhower Parkway, Roseland, NJ 07068, (973)530-2107, lvartan@csglaw.com. For Qiang Guo: Arethusa Forsyth, arethusaf@proton.me |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☒ Trustee | ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

First Claim, an order declaring that Debtor is the true beneficial owner of Bouillor and its assets (including Cyprus Apartment) and ordering turnover of ownership and assets of Bouillor to Trustee; Second Claim, an order declaring that Debtor is the true beneficial owner of New Dynamic and its assets; Third Claim, in alternative to First Claim, the Funding Transfer is avoidable by Trustee as to the entirety of the Funding Transfer from Defendant Qiang Guo, and as to $3.9 million of the Funding Transfer from Defendant Bouillor.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

Declaratory relief pursuant to sections 541, 542, and 544 of the Bankruptcy Code

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Ho Wan Kwok | BANKRUPTCY CASE NO.<br>22-50573 (JAM) | |
| DISTRICT IN WHICH CASE IS PENDING<br>Connecticut | DIVISION OFFICE<br>Bridgeport | NAME OF JUDGE<br>Manning, J. |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Douglass Barron | | |
| DATE<br>Aug. 15, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Patrick R. Linsey | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------------x
                                        :

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| HO WAN KWOK, *et al.*,[1] | : Case No. 22-50073 (JAM) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

-------------------------------------------------------------------:
                                          :

| | |
|---|---|
| LUC A. DESPINS, CHAPTER 11 TRUSTEE, | : |
| | : |
| | : Adv. Proceeding No. [_____] |
| Plaintiff, | : |
| v. | : |
| | : |
| BOUILLOR HOLDINGS LIMITED, QIANG GUO, MEI GUO, NEW DYNAMIC DEVELOPMENT LIMITED | : |
| | : |
| Defendants. | : |

-------------------------------------------------------------------x

**COMPLAINT OF CHAPTER 11 TRUSTEE FOR ESTATE OF HO WAN KWOK, PURSUANT TO BANKRUPTCY CODE SECTIONS 541, 542, AND 544, SEEKING (I) DECLARATORY JUDGMENT THAT BOUILLOR HOLDINGS LIMITED AND CYPRUS APARTMENT ARE PROPERTY OF ESTATE AND (II) OTHER RELIEF**

      Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor" or "Kwok"), files this

adversary complaint (the "Complaint") against defendants Bouillor Holdings Limited, Qiang

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Guo, Mei Guo, and New Dynamic Development Limited (together the "Defendants").  In support of this Complaint, the Trustee states as follows:

<u>**NATURE OF ACTION**</u>

1.      By this Complaint, the Trustee seeks to, among other things, recover the Debtor's luxurious high-rise apartment at number 23-03 in the "One Limassol" building in Limassol, Cyprus (the "Cyprus Apartment"), held in the name of Bouillor Holdings Limited ("Bouillor"), a Cyprus entity nominally owned by Qiang Guo, the Debtor's son.  Images of the One Limassol building, the tallest building in Cyprus, are set forth below:





2.     Like other shell companies and assets the Debtor has hidden from his creditors by placing them under the nominal ownership of family members and close associates, Bouillor and the Cyprus Apartment, despite being nominally owned by the Debtor's son, are, in reality, beneficially owned by the Debtor and constitute property of the estate that should be turned over to the Trustee for the benefit of the Debtor's creditors (the "Bouillor Ownership Claim").

3.     Moreover, as detailed further below, the Debtor funded the purchase of the Cyprus Apartment using other shell companies, in particular New Dynamic Development Limited ("New Dynamic"), a Hong Kong entity nominally owned at the time by the Debtor's employee, Natasha Qu.  This Court has already found that New Dynamic funded the maintenance of the Debtor's Bombardier jet and █████████████████████ ████████████████████████████████████████████████.[2]  Further, as the Court will recall, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████.  In 2017, nominal ownership of New Dynamic was transferred from Natasha Qu to the Debtor's daughter, Mei Guo, and New Dynamic was subsequently dissolved in 2021.  Notably, the 2017 transfer of New Dynamic to Mei Guo occurred on the same date, June 27, 2017, as the transfer to Mei Guo of other shell companies the Court is familiar with, such as Hong Kong International Funds Investments Limited ("HK International") (which held title to the *Lady May* prior to the yacht being transferred to HK International Funds Investments (USA) Limited ("HK USA")), Anton Development Limited (which held title to the Debtor's Bombardier private jet prior to the aircraft being transferred to Whitecroft Shore Limited

---

[2]     *Memorandum of Decision and Order Granting in Part Motion for Summary Judgment,* ¶¶ 14-15 [Adv. Proc. No. 23-05008, Docket No. 126].

("Whitecroft")), and Eastern Profit Corporation (which Judge Liman of the District Court of the Southern District of New York found to be a shell company of the Debtor). Given these and other facts related to New Dynamic, the Trustee seeks a ruling that New Dynamic and its assets were beneficially owned by the Debtor.

4.     In the alternative to the Bouillor Ownership Claim, the Trustee asserts an alternative claim that the transfer of funds by New Dynamic and Golden Spring (New York) Ltd. ("Golden Spring") to Qiang Guo to purchase the Cyprus Apartment, which resulted in Bouillor acquiring title to the Cyprus Apartment, was an actual fraudulent transfer by the Debtor that is avoidable and recoverable by the Trustee pursuant to the New York Debtor Creditor Law and section 544(b) of Title 11 of the United States Code (the "Bankruptcy Code") and recoverable pursuant to section 550(b) of the Bankruptcy Code.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b).

6.     This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. §157(a). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

7.     The Trustee is the chapter 11 trustee in the Chapter 11 Case pursuant to the Court's order entered on July 8, 2022 [Main Case Docket No. 523]

8.     Bouillor is a Cyprus entity nominally owned by Qiang Guo.

9.     Qiang Guo is the Debtor's son.

10.     New Dynamic is Hong Kong entity nominally owned by Mei Guo.

11.     Mei Guo is the Debtor's daughter.

4

# FACTS

## I.     Debtor's Use of Shell Companies

12.     As the Court is well aware, the Trustee has filed numerous pleadings detailing the Debtor's scheme of using shell companies, nominally owned by family members or business subordinates, that in reality are his alter egos and equitably or beneficially owned by him, to launder money, conceal his business dealings, and hide his valuable assets from creditors.

13.     The Trustee has already brought litigation, that remains pending or in which the Trustee has prevailed, asserting alter ego and equitable ownership claims (or similar claims under applicable law, which shall be defined herein, together with alter ego and equitable ownership claims, as "Alter Ego Claims") with respect to numerous of the Debtor's shell companies and/or their purported assets (the "Alter Ego Complaints").[3]  Thus far, the Trustee has prevailed on Alter Ego Claims with respect to a number of entities, including HK USA, which held title to the Debtor's *Lady May* yacht; Whitecroft, which held title to the Debtor's Bombardier private jet; Golden Spring and Lamp Capital LLC ("Lamp Capital"), which the Debtor used as funding vehicles; Greenwich Land LLC, which the Debtor used to hold title to real property in Connecticut; and HCHK Technologies, Inc., HCHK Property Management, Inc., and Lexington Property and Staffing, Inc.  The Trustee has also prevailed on his claims that the *Lady May* yacht and the Bombardier private jet were, in fact, owned by the Debtor and thus property of the estate.

---

[3]     The Alter Ego Complaints are comprised of the Trustee's complaints filed *Despins v. Greenwich Land LLC et al.* [Adv. Proc. No. 23-05005], *Despins v. Mei Guo* [Adv. Proc. No. 23-05008], *Despins v. HCHK Technologies, Inc., et al.* [Adv. Proc. No. 23-05013], *Despins v. Taurus Fund LLC, et al.* [Adv. Proc. No. 23-05017], *Despins v. Golden Spring (New York) Ltd. et al.* [Adv. Proc. No. 23-05018], *Despins v. Lamp Capital LLC et al.* [Adv. Proc. No. 23-05023], and *Despins v. ACA Capital Group Ltd., et al.* [Adv. Proc. No. 24-05249], as well as the Trustee's counterclaims filed in *HK International Funds Investments (USA) Limited, LLC v. Despins* [Adv. Proc. No. 22-05003].

14.     With respect to Qiang Guo, one of the Alter Ego Complaints[4] asserts Alter Ego

Claims with respect to, among other entities, K Legacy Ltd. ("K Legacy"), a British Virgin

Islands ("BVI") entity nominally owned by Qiang Guo that holds title to the Debtor's luxury

apartment in London, as well as with respect to Leading Shine Limited ("Leading Shine BVI"), a

BVI entity nominally owned by Qiang Guo that holds title to the Debtor's mansion in Hong

Kong.  In addition, the Trustee has filed a complaint against Qiang Guo and 56 other defendants

seeking damages for violations of the Racketeering Influenced Corrupt Organizations Act and

conspiracy to violate the Racketeering Influenced Corrupt Organizations Act (the "RICO

Complaint").[5]  Rather than repeat the allegations set forth in the Alter Ego Complaints and RICO

Complaint here, the Trustee incorporates by reference the allegations set forth therein.

15.     In addition, the Trustee has commenced over 270 adversary proceedings seeking

the avoidance of fraudulent and post-petition transfers made by the Debtor through his shell

companies (the "Avoidance Litigation").  The Avoidance Litigation includes adversary

proceedings against Qiang Guo seeking the avoidance and recovery of over $90 million in

transfers to Qiang Guo and/or transfers to other parties for his benefit.

## II.     Debtor's Criminal Case

16.     On March 15, 2023, United States federal authorities arrested the Debtor and his

assistant Yvette Wang on fraud and money-laundering charges.  Also on March 15, 2023, United

Kingdom law enforcement in London, working in partnership with U.S. authorities, attempted to

arrest the Debtor's financial advisor, William Je, in connection with the same criminal charges.

---

[4]     *Despins v. ACA Capital Group Ltd. et al.* [Adv. Proc. No. 24-05249] (the "First Omnibus Alter Ego Complaint").

[5]     The RICO Complaint was filed in connection with *Despins v. Ngok, et al.* [Adv. Proc. No. 24-05273].

17.     The U.S. Government alleged that, in the period between 2018 and 2023, the Debtor lead, with the assistance of his co-defendants William Je and Yvette Wang, a massive billion-dollar fraud and money-laundering scheme as part of which the Debtor and his co-defendants systematically raised money from the Debtor's online followers for a series of purported investment schemes, laundered the funds through a vast network of shell companies and bank accounts, and then used such funds for their own personal benefit and to perpetuate their fraudulent schemes.  Among other things, the U.S. Government alleged that the Debtor and his co-defendants "utilized more than approximately 500 accounts held in the names of at least 80 different entities or individuals" to launder fraud proceeds[6] and that "[h]undreds of millions of dollars of the fraudulent scheme's proceeds were transferred, either directly or indirectly, to bank accounts in the United States, the Bahamas, Switzerland, and the United Arab Emirates ("UAE"), among other places."[7]

18.     In addition to fraud and money-laundering charges, the U.S. Government's operative indictment accuses the Debtor and his co-defendants of a criminal racketeering conspiracy in violation of the Racketeering Influenced Corrupt Organizations Act (the "Criminal RICO Charge").  The Criminal RICO Charge asserted that the Debtor is the leader of a criminal enterprise (the "Kwok Enterprise") "operated through a series of complex fraudulent and fictitious businesses and investment opportunities that connected dozens of interrelated entities, which allowed the defendants and their co-conspirators to solicit, launder, and misappropriate

---

[6]     *See Memorandum of Law of the United States of America in Opposition to Defendant Yanping Wang's Motion for Pretrial Release* (the "USAO Memorandum"), at 29, attached as Exhibit B in the *Reply of Chapter 11 Trustee to G Club Operations LLC's Supplemental Objection to Trustee's Motion to Compel and Request for Related Relief* (June 23, 2023) [Main Case Docket No. 1934].

[7]     Superseding Indictment, *United States v. Kwok et al.*, 1:23-cr-00118 (the "Criminal Case"), Doc No. 307, filed April 24, 2024, ¶ 4 (the "Superseding Indictment").

victim funds."[8]  The U.S. Government has named dozens of entities as allegedly part of the Kwok Enterprise,[9] many of which the Bankruptcy Court has already ruled to be alter egos of the Debtor (such as Golden Spring and Lamp Capital), while others remain subject to the Trustee's pending Alter Ego Claims.  In connection with its investigation of the Debtor, the U.S. Government seized bank accounts held in the name of various entities forming part of the Kwok Enterprise and holding over $630 million.

19.    The Debtor's criminal trial commenced on May 22, 2024, and resulted in the Debtor being found guilty on multiple counts, including the Criminal RICO Charge, money laundering, and wire fraud, per the jury's verdict reached on July 16, 2024.

**III.    Debtor's Use of His Son, Qiang Guo, to Hold His Entities and Assets**

20.    The Debtor has frequently used his son, Defendant Qiang Guo, nominal owner of Defendant Bouillor, as a straw man nominal owner of the Debtor's companies and assets.

21.    This Court has already ruled that two entities nominally owned by the Debtor's son, Golden Spring and Lamp Capital, are actually the Debtor's alter egos and equitably owned by the Debtor.  The First Omnibus Alter Ego Complaint asserts Alter Ego Claims with respect to a number of other entities nominally owned by the Debtor's son, including K Legacy, Saraca Media Group, Inc. ("Saraca"), China Golden Spring Group, Leading Shine Limited ("Leading Shine BVI"), and Bravo Luck Limited ("Bravo Luck").

22.    The Trustee's claims concerning K Legacy, Leading Shine BVI, and Bravo Luck demonstrate the Debtor's pattern of using companies nominally owned by his son to effectuate his control over real estate in multiple jurisdictions.

---

[8]    Superseding Indictment, ¶ 1.
[9]    *Id.*, ¶ 3a.

23.     K Legacy, as discussed more fully in the First Omnibus Alter Ego Complaint, holds title to the Debtor's luxurious London apartment (the "London Apartment"), purchased by the Debtor in 2016 for £33 million using funds derived from another of the Debtor's shell companies, Anton Development Limited.  Based on reports that the London Apartment was being shown for sale, the Trustee sought and obtained, on March 28, 2024, an injunction from the Eastern Caribbean Supreme Court, High Court of Justice, Virgin Islands, Commercial Division (the "BVI Court") requiring that the Trustee and his counsel be given advanced notice of any attempts to transfer either the London Apartment or the shares of K Legacy (the "BVI Preliminary Injunction").  Subsequently, on April 18, 2024, the BVI Court entered an order continuing the BVI Injunction (the "BVI Injunction Continuance Order") until further order of the BVI Court.[10]

24.     Leading Shine BVI, as discussed more fully in the First Omnibus Alter Ego Action, holds title to the Debtor's residence located at South Bay Road in Hong Kong, which was purchased in 2011 for approximately HK $880 million, or US $112.9 million.

25.     Bravo Luck, as discussed more fully in the First Omnibus Alter Ego Complaint, was an instrument of the Debtor's legal strategy with respect to the Sherry Netherland apartment. As the Court will recall, Bravo Luck and Qiang Guo argued that Genever Holdings LLC held the Sherry Netherland apartment in trust for Bravo Luck's benefit pursuant to a purported trust agreement, and the Trustee asserted claims that, among other things, this purported trust agreement was a forgery.  Subsequently, the Court approved a settlement agreement between the

---

[10]     The BVI Preliminary Injunction and BVI Injunction Continuance Order are attached as exhibits to the *Notice of Chapter 11 Trustee Providing Update with Respect to British Virgin Islands Proceedings, as Related to K Legacy Ltd. and London Apartment* [Main Case Docket No. 3161].

Trustee and Bravo Luck and Qiang Guo under which Bravo Luck and Qiang Guo abandoned their rights and claims related to the Sherry Netherland apartment.

26.     Upon information and belief, Qiang Guo has never held gainful employment outside of the Debtor's shell companies and has no source of wealth other than the Debtor.  At the Debtor's deposition in March 2023, when asked whether all assets held in the name of Qiang Guo were really assets of his estate, the Debtor asserted the Fifth Amendment.[11]

## IV.     Qiang Guo's Receipt of Transfers

27.     In addition to serving the Debtor as a straw man holder of foreign properties, Qiang Guo has also received voluminous transfers of funds or other assets from the Debtor.

28.     The Avoidance Litigation includes an adversary proceeding against Qiang Guo seeking the avoidance and recovery of over $90 million in transfers to Qiang Guo as an initial transferee.[12]  Other adversary proceedings in the Avoidance Litigation seek the avoidance of transfers made to other parties (including the vendors of private aircraft and luxury vehicles) for Qiang Guo's benefit.  Notably, one of the transfers that is the subject of such adversary proceedings was the purchase by the Debtor, through a shell company, of a Cirrus propeller aircraft that was then nominally owned by Qiang Guo, and which was subsequently sold in early March 2024, a clear example of the dissipation of potential estate property.   Relatedly, in its April 3, 2024 summary judgment decision holding that the Bombardier jet as well as Whitecroft were beneficially owned by the Debtor, this Court found that Whitecroft attempted to have over

---

[11]     *See* Ho Wan Kwok Dep. Tr., at 47:10-13, March 2, 2023 (the "Debtor's March Depo."), attached as Exhibit 13 to the adversary complaint in the Lamp Capital Adversary Proceeding.

[12]     The Avoidance Litigation complaint filed against Qiang Guo [Docket No. 1 in Adv. Proc. No. 24-05238] is incorporated by reference herein.

$12 million in proceeds of the October 2022 sale of the Bombardier jet wired to Qiang Guo at an account at Kyrgyz-Swiss Bank.[13]

29.     Further, the U.S. Government in its criminal case filings has referred to the Debtor's son as "Relative-1" and alleged that the Debtor's son is the recipient of millions of dollars of fraudulently obtained funds.[14]  The U.S. Government has also alleged, among other things, that the Debtor's son (also known as "Mileson") was a co-conspirator and agent of his father, the Debtor.[15]  Notably, the court overseeing the Debtor's criminal trial found that "the Government has met its burden to show by a preponderance of the evidence that Mileson was a member of several of the charged conspiracies," thus allowing into evidence Qiang Guo's statements as an exception to the hearsay rule for co-conspirator statements, observing that "Mileson's role within the alleged conspiracies was multifaceted."[16]

**V.     Formation of Bouillor**

30.     Between 2015 and 2023, the Debtor and Qiang Guo were represented by the Cyprus law firm of Christodoulos G. Vassiliades & Co. LLC, ("CGV").  The Debtor and Qiang Guo were introduced to CGV by the United Kingdom law firm of Mishcon de Reya LLP ("Mishcon"), the same law firm that, among other things, assisted the Debtor in the purchase of the London Apartment.

31.     Bouillor was formed on October 16, 2015 with the assistance of CGV.  On the same date, Mediterranean Nominees Limited entered into a Declaration of Trust to hold 1,000 ordinary shares in Bouillor as nominee of and trustee for Qiang Guo, who was identified in

---

[13]    *Memorandum of Decision and Order Granting in Part Motion for Summary Judgment,* ¶ 42 [Adv. Proc. No. 23-05008, Docket No. 126].

[14]    Superseding Indictment, ¶¶ 5, 17(f)(i).

[15]    The Government's Motion *in Limine*, Criminal Case Doc No. 273, at 7-8.

[16]    *See* Order, Criminal Case Doc No. 388, at 7.

corporate documents as the purported ultimate beneficial owner of Bouillor. More recently, the shares in Bouillor held by Mediterranean Nominees Limited were transferred to Peritas Directors Limited, which was appointed as director of Bouillor on November 21, 2023, and, subsequently, on March 13, 2024, Peritas Directors Limited transferred the shares in Bouillor to Qiang Guo, who, on the same date, became the sole director and secretary of Bouillor. As such, as of March 13, 2024, Qiang Guo is the sole direct shareholder of Bouillor and Bouillor's director and secretary. Moreover, as of March 13, 2024, the registered address for Bouillor is the same address as the Cyprus Apartment.

32.     Despite Qiang Guo being named as the beneficial owner and/or shareholder of Bouillor, the entity was at all relevant times controlled and dominated by the Debtor, who was its true beneficial owner.

33.     Bouillor was formed for the purpose of holding title to the Cyprus Apartment.

34.     Upon information and belief, the Cyprus Apartment has been at all relevant times Bouillor's only material asset.

## VI.   Purchase of Cyprus Apartment

35.     On November 13, 2015, a month after its formation, Bouillor entered into an agreement with Pafilia Property Developers Ltd (the "Seller") to purchase the Cyprus Apartment, a three-bedroom apartment on the 27th floor (23rd residential floor) at apartment number 23-03 in the One Limassol building located at Neapolis Quarter, Limassol, Cyprus.[17]  On the same day, CGV transferred €3.57 million to the Seller as consideration under the agreement.

---

[17]   At the time the agreement was entered into, One Limassol, the Cyprus Apartment building, had not yet been constructed; however, the agreement provided that the Cyprus Apartment would be turned over to Bouillor once construction was completed, which subsequently occurred in 2021 according to the One Limassol website. *See* https://www.pafilia.com/one-limassol/.

36.     The immediate source of the funds paid by CGV to the Seller in connection with the purchase of the Cyprus Apartment was a savings account ending 2627 at JPMorgan Chase in New York (together with the linked checking account ending 3657, the "NY Chase Account") under the name of Qiang Guo, from which account $3,899,747.13 was transferred to a CGV client account on November 11, 2015 (the "Cyprus Transfer").

37.     The NY Chase Account, although under the name of Qiang Guo, was controlled by the Debtor, and the funds therein were the Debtor's funds.  Indeed, the NYC Chase Account was used to pay for numerous expenses of the Debtor, such as the fees of his counsel at Williams & Connolly LLP, Paul Weiss Rifkin Wharton & Garrison, LLP, and Wasserman Mancini & Chang PC.

38.     Upon information and belief, all the funds held in the NY Chase Account at the time of the $3.9 million Cyprus Transfer can be sourced to the accounts of other shell companies controlled by the Debtor, from whence such funds were transferred into the NY Chase Account.

39.     Indeed, using a "last in, first out" tracing analysis, the entirety of the $3.9 million Cyprus Transfer can be traced to two transfers totaling approximately $6 million into the NY Chase Account from Debtor-controlled companies:

    i.     On October 14, 2015, shortly prior to the Cyprus Transfer, the NY Chase Account received a foreign remittance credit of 27 million Hong Kong Dollars (or approximately $3.5 million). ███████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████.

    ii.     On May 19, 2015, the NY Chase Account received a $2.5 million transfer from Golden Spring, which this Court has already ruled to be the Debtor's alter ego.

**VII.    Debtor's Ownership of New Dynamic and Its Assets**

40.    New Dynamic, the source, upon information and belief, of most of the funds used to purchase the Cyprus Apartment, was at all relevant times controlled by the Debtor.  Moreover, all assets of New Dynamic, including all bank accounts of New Dynamic, were at all relevant times controlled by the Debtor and were the Debtor's property.

41.    Numerous facts demonstrate that New Dynamic was controlled by the Debtor.

42.    This Court has already found that New Dynamic funded the maintenance of the Debtor's Bombardier jet and that it was identified by the Debtor's accountants as an offshore company held by the Debtor.[18]

43.    New Dynamic's corporate documents establish that the sole shareholder of New Dynamic between May 2008 and April 2015 was Shiny Times Holdings Limited, an entity of which the Debtor was the sole director and shareholder.  From April 2015 to June 2017, the sole shareholder of New Dynamic was Natasha Qu, the Debtor's employee.[19]  On June 27, 2017, Mei Guo, the Debtor's daughter, became the sole shareholder of New Dynamic, and she would remain sole shareholder until New Dynamic was dissolved in 2021.[20]  In addition, the Debtor was also the sole director of New Dynamic between May 2008 and April 2015, at which point Natasha Qu, the Debtor's employee, became the company's sole director before being replaced in that role by Mei Guo on June 27, 2017.

---

[18]    *Memorandum of Decision and Order Granting in Part Motion for Summary Judgment,* ¶¶ 14-15 [Adv. Proc. No. 23-05008, Docket No. 126]

[19]    ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

[20]    As established in other Alter Ego Complaints, June 27, 2017 was also the date on which Mei Guo became the sole shareholder of a number of other Debtor shell companies such as HK International, Anton Development Limited, and Eastern Profit Corporation.

44. The Debtor funded New Dynamic using transfers from his other shell companies, including ████████████████████████████████████████████. As discussed more fully in the First Omnibus Alter Ego Complaint, the Debtor used Bravo Luck Limited to fund a number of high value purchases in 2015, including the *Lady May* and the Sherry Netherland apartment. ████████████████████████████████████████████

████████████████████████████████████████. In addition, ██████████

█████████████████████████████████████████████████████████

██████████), the company used by the Debtor to hold title to his Bombardier private jet prior to the Bombardier being transferred to Anton Development Limited in 2016.[21]

45. The Debtor also used New Dynamic to transfer funds to the Debtor and his family members on numerous occasions.  For example:

i. ████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████.

ii. ████████████████████████████████████████████
████████████████████

iii. New Dynamic transferred approximately $2 million to the Debtor's personal bank account in 2015.

iv. ████████████████████████████████████████████
███████████████ The Trustee has alleged that Rosy Acme is beneficially owned by the Debtor.[22]

v. ████████████████████████████████████████████
████████████ Global Jet was at that time the company that operated and managed the Debtor's Bombardier jet.

---

[21]   *See Memorandum of Decision and Order Granting in Part Motion for Summary Judgment,* ¶ 5 [Adv. Proc. No. 23-05008, Docket No. 126].  Head Win was, among other things, represented by the Debtor to be a "Single Purpose Company with the only purpose of holding the aircraft." *Id.* at 13, ¶ 7.

[22]   *See Complaint of Chapter 11 Trustee for Estate of Ho Wan Kwok for (I) Declaratory Judgment, Pursuant to Sections 541, 542, and 544 of the Bankruptcy Code and Bankruptcy Rule 7001, that Property Held by Mei Guo Is Property of Estate and (II) Related Relief* [Adv. Proc. No. 23-05008, Docket No. 1].



vi.    This Court found that New Dynamic paid no less than $318,000.00 to ACASS Canada for invoices issued to Head Win for operating and managing the Debtor's Bombardier jet in 2016.[23]

vii.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮

viii.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This Court has ruled that Ace Decade is beneficially owned by the Debtor.[24]

ix.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮.  In the First Omnibus Alter Ego Complaint, the Trustee has alleged that China Golden Spring, parent of the Debtor's alter ego Golden Spring, is beneficially owned by the Debtor.

x.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

46.    The Debtor represented ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮  The Court has found that accountants employed by the Debtor identified New Dynamic as an offshore company held by the Debtor.[25]

47.    New Dynamic used the same address at 49/F Bank of China Tower in Hong Kong as was used by the Debtor and numerous of his other shell companies, as discussed more fully in the First Omnibus Alter Ego Complaint.  Correspondence to New Dynamic was addressed to the Debtor at that address.

## VIII.    In Alternative, New Dynamic Transfer Was Actual Fraudulent Transfer

48.    In this Complaint, the Trustee has asserted in the first instance that all the money that funded the purchase of the Cyprus Property was controlled by and property of the Debtor,

---

[23]    *See Memorandum of Decision and Order Granting in Part Motion for Summary Judgment,* ¶ 15 [Adv. Proc. No. 23-05008, Docket No. 126].

[24]    *Order Regarding Partial Resolution of Trustee's Contempt Motion*, ¶ 1 [Case No. 22-50073, Docket No. 1110].

[25]    *See Memorandum of Decision and Order Granting in Part Motion for Summary Judgment,* ¶ 16 [Adv. Proc. No. 23-05008, Docket No. 126].

regardless of whether the accounts holding such funds were under the name of Qiang Guo, New Dynamic, Golden Spring, or another of the Debtor's shell companies.

49.    Further, even if one were to assume that Bouillor and Qiang Guo were independent of the Debtor and that neither Bouillor nor the Cyprus Apartment is the Debtor's property, the purchase of the Cyprus Apartment involved the transfer of the Debtor's property to or for the benefit of an insider for which the Debtor received no consideration in return.  Bouillor and Qiang Guo also benefited from transfers of funds that were transferred to and from the NY Chase Account in the United States.

50.    A diagram showing the transfers described herein is set forth below—"Step 1" is the funding of Qiang Guo's NY Chase Account, "Step 2" is the Cyprus Transfer, i.e., the transfer of $3.9 million to the Debtor's Cyprus law firm, CGV, and "Step 3" is the payment to the Seller.



51.    Assuming that Qiang Guo and his NY Chase Account were independent of the Debtor, Step 1—the transfers of approximately $6 million from ▮▮▮▮▮▮▮ and Golden Spring to Qiang Guo's NY Chase Account (together, the "Funding Transfer") represents a transfer from the Debtor to Qiang Guo for no consideration.  Moreover, $3.9 million of the $6

million represents a transfer to Qiang Guo for the benefit of Bouillor (since the $3.9 million is the amount of the Cyprus Transfer used to purchase the Cyprus Apartment for Bouillor).

52.    The Funding Transfer was made with the intent to hinder, delay, and/or defraud the Debtor's creditors inasmuch as it was made through the Debtor's shell companies operated as a part of the Debtor's shell game.

## IX.    Tolling Order

53.    On February 15, 2024, the Court entered its *Memorandum of Decision and Order Granting in Part Motion to Extend Deadlines* [Main Case Docket No. 2921] (the "Tolling Order"), in which the Court, pursuant to Bankruptcy Rule 9006(b), extended the time limitations set forth in sections 108, 546, and 549 of the Bankruptcy Code for the Trustee to commence avoidance actions through and including August 15, 2024.

54.    In the Tolling Order, the Court found that since the Petition Date, the Debtor has, among other things, filed incomplete or inaccurate schedules and statements of financial affairs, failed to provide books and records to the Trustee, and otherwise failed to cooperate with the Trustee, all in flagrant disregard for his obligations as a debtor under the Bankruptcy Code.[26]

55.    The Debtor's family members and other individuals and entities associated with him have likewise obstructed the Trustee's investigation, as evidenced by the Court's entry of "at least eight orders holding the … Debtor, his daughter, [Mei] Guo, and entities allegedly controlled by the … Debtor in contempt for failure to turn over assets and discovery abuse."[27] The Court found the "noncompliance with this Court's orders in these jointly administered

---

[26]    Tolling Order, at 14.
[27]    *Id.* at 15.

18

chapter 11 cases, is extraordinary,"[28]  and that, in the face of such obstruction, the Trustee's

investigation has been "more than reasonably diligent."[29]

56.    On August 14, 2024, the Court entered its *Order Granting Second Motion for*

*Extension of Deadline for Trustee to File Avoidance Actions* [Main Case Docket No. 3417] (the

"<u>Second Tolling Order</u>"), further extending the time limitations set forth in Sections 108, 546,

and 549 of the Bankruptcy Code for the Trustee to commence avoidance actions through

February 15, 2025, and noting the continued obstacles to the Trustee's investigation and the

Trustee's diligence in conducting same.[30]

57.    The Trustee has acted diligently in investigating and pursuing the claims asserted

in this Complaint.

58.    In light of, among other things, the extraordinary obstruction that the Trustee has

faced in conducting his diligent investigation, the balance of the equities strongly favors

equitable tolling of any statutes of limitations applicable to the claims asserted herein.

## FIRST CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of Bouillor and Its Assets
(Including Cyprus Apartment) and Ordering Turnover of Ownership and Assets
(Including Cyprus Apartment) of Bouillor to Trustee**

59.    The Trustee repeats and realleges the allegations contained in paragraphs 1-58.

60.    The facts set forth herein demonstrate that the Debtor at all relevant times

remained in control of Bouillor.  Among other things, the Debtor's Cyprus counsel assisted in

the formation of Bouillor, Bouillor was nominally owned by the Debtor's son (who the Debtor

---

[28]    Tolling Order, at 15.
[29]    *Id.* at 17.
[30]    Second Tolling Order, at 2-3.

used as a strawman to hold numerous of his assets), and Bouillor's only material asset was purchased for Bouillor with the Debtor's funds.

61.    Under Cyprus law, these facts and circumstances warrant the conclusion that (a) Qiang Guo has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in Bouillor only for the benefit of the Debtor; and (b) Bouillor has been at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name (including the Cyprus Apartment) only for the benefit of the Debtor.

62.    At all relevant times, the Debtor was indebted to one or more creditors, including Pacific Alliance Asia Opportunities Fund ("PAX").  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.  The United States Internal Revenue Service is a creditor of the Debtor.

63.    Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that the ownership interests in Bouillor purportedly held by Qiang Guo, and the assets of Bouillor, including the Cyprus Apartment, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2) ordering the surrender of ownership interests and related rights of corporate control in Bouillor, and the assets of Bouillor, including the Cyprus Apartment, to the Trustee.

## SECOND CLAIM

**Declaratory Judgment that Debtor Is True Beneficial Owner of New Dynamic and Its Assets**

64.    The Trustee repeats and realleges the allegations contained in paragraphs 1-58.

65.    The facts set forth herein demonstrate that the Debtor at all relevant times remained in control of New Dynamic.  Among other things, the Debtor placed his employee

Natasha Qu and his daughter, Mei Guo, as New Dynamic's nominal owners and directors, New Dynamic was funded by other Debtor shell companies, New Dynamic transferred funds to the Debtor, his son, and other of his shell entities, and New Dynamic used the same address as the Debtor.

66.     Under Hong Kong law, these facts and circumstances warrant the conclusion that (a) Natasha Qu and Mei Guo were at all relevant times mere nominees or "bare trustees," considered to hold legal title to ownership interests in New Dynamic only for the benefit of the Debtor; and (b) New Dynamic was at all relevant times a mere nominee or "bare trustee," considered to hold legal title to ownership interests in assets held under its name only for the benefit of the Debtor.

67.     At all relevant times, the Debtor was indebted to one or more creditors, including Pacific Alliance Asia Opportunities Fund ("PAX").  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

68.     Accordingly, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code declaring that the ownership interests in New Dynamic purportedly held by Mei Guo and the assets of New Dynamic were at all relevant times property of the Debtor.

## THIRD CLAIM

**(Avoidance of Actual Fraudulent Transfer)**
**(Asserted in Alternative to First Claim)**

69.     The Trustee repeats and realleges the allegations contained in paragraphs 1-58.

70.     The Funding Transfer was made by the Debtor, using the Debtor's funds nominally held by his shell companies, with the actual intent to hinder, delay and/or defraud his creditors.

21

71.     The Debtor's intent to hinder, delay, and/or defraud his creditors in effectuating the Prepetition Transfers is shown by, among other things:

     i.    The Funding Transfer was effectuated using one or more shell companies;

     ii.    The Funding Transfer was concealed from the Debtor's creditors;

     iii.    The Funding Transfer was effectuated as part of the Debtor's "shell game" in an effort to conceal and shield assets;

     iv.    The Funding Transfer furthered the Debtor's fraudulent conduct by enabling the Debtor to benefit from his fraud without subjecting his property to the reach of his creditors;

     v.    The Debtor received no consideration in exchange for the Funding Transfer;

     vi.    The Funding Transfer furthered the Debtor's fraudulent conduct by enabling the Debtor to profit from his fraud without subjecting his property to the reach of his creditors; and

     vii.    At the time of the Funding Transfer, the Debtor was indebted, including to PAX.

72.     The Funding Transfer is avoidable by the Trustee pursuant to N.Y. Debt. & Cred. Law sections 273(a)(1), 274, and 276, and section 544(b) of the Bankruptcy Code and recoverable (a) as to the entirety of the Funding Transfer, from Defendant Qiang Guo; and (b) as to $3.9 million of the Funding Transfer, from Defendant Bouillor pursuant to section 550(a) of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that judgment be entered as follows:

1.     On the First Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in Bouillor purportedly held by Qiang Guo, and the assets of Bouillor, including the Cyprus Apartment, are and were at all relevant times property of the Debtor or Debtor's chapter 11 estate, as applicable; and (2)

ordering the surrender of ownership interests and related rights of corporate control in Bouillor, and the assets of Bouillor, including the Cyprus Apartment, to the Trustee;

2.      On the Second Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, declaring that the ownership interests in New Dynamic purportedly held by Mei Guo, and the assets of New Dynamic, were at all relevant times property of the Debtor.

3.      On the Third Claim, an order declaring that the Funding Transfer in an amount of not less than $6 million is avoided pursuant to N.Y. Debt. & Cred. Law sections 273, 273a, 275, 276 and 278[31]; (b) recovery of (i) the entirety of the Funding Transfer or the value thereof at the Trustee's option, from Defendant Qiang Guo; and (ii) $3.9 million of the Funding Transfer or the value thereof from Defendant Bouillor for the benefit of the Debtor's estate pursuant to N.Y. Debt. & Cred. Law section 276 and section 550(a)(1) of the Bankruptcy Code;

4.      Reasonable attorneys' fees, costs, and expenses incurred in this action; and

5.      Such other and further relief as the Court may deem just, proper, or equitable under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

---

[31]    This was the governing New York statute on the date of the New Dynamic Transfer.

Dated:    August 15, 2024          LUC A. DESPINS,
           New Haven, Connecticut     CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    dskalka@npmlaw.com
    plinsey@npmlaw.com

       *and*

    Nicholas A. Bassett (*pro hac vice* pending)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

       *and*

    Douglass Barron (*pro hac vice* pending)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    douglassbarron@paulhastings.com

    *Counsel for the Chapter 11 Trustee*