**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
HO WAN KWOK *et al.*,                                  :    Case No. 22-50073 (JAM)
                                                       :
                    Debtors.[1]                        :    Jointly Administered
                                                       :
-------------------------------------------------------x

**MOTION OF TRUSTEE, PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 328, AND 363(b), BANKRUPTCY RULES 2014(a) AND 2016, AND LOCAL RULE 2014-1, FOR ENTRY OF ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF REAL PROPERTY BROKER, EFFECTIVE AS OF AUGUST 23, 2024, FOR SALE OF GREENWICH PROPERTY, (II) AUTHORIZING TRUSTEE TO FUND EXPENSES RELATED TO GREENWICH PROPERTY AND (III) FOR RELATED RELIEF**

Luc A. Despins, in his capacity as chapter 11 trustee (the "Trustee") for the estate of

debtor Ho Wan Kwok (the "Debtor") hereby moves the Court (the "Motion") pursuant to

sections 327(a), 328 and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"),

Rule 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and Rule 2014-1 of the Local Bankruptcy Rules for the District of Connecticut (the "Local

Rules") for entry of an order (the "Order") substantially in the form of **Exhibit A** hereto

authorizing the Trustee (i) to employ and retain Compass, Inc. (the "Broker") as broker in

accordance with the terms and conditions set forth in that certain Engagement and Addendum,

dated as of August 23, 2024 (collectively, the "Agreement"), attached hereto as **Exhibit B**, with

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

respect to the sale of the property located at 373 Taconic Road, Greenwich, Connecticut (the "Greenwich Property"), and (ii) to pay the reasonable and necessary expenses related to the Greenwich Property in order to maximize the value of this asset for the benefit of the Debtor's chapter 11 estate (the "Estate"). In support of the relief sought in the Motion, the Trustee submits the declaration ("Burke Declaration") of Julie Grace Burke ("Ms. Burke"), attached hereto as **Exhibit C** and incorporated herein by reference. In further support of this Motion, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      In accordance with his statutory duties to maximize value for the Estate, the Trustee intends to sell the Greenwich Property as promptly as possible. Given the substantial value of the Greenwich Property, it is necessary to engage a qualified and seasoned broker and listing agent that have intimate knowledge of the Greenwich real estate market to sell the Greenwich Property. To that end, the Trustee intends to retain the Broker, which shall market the Greenwich Property through its agent, Ms. Burke. Ms. Burke previously served as the listing agent in connection with the sale the Greenwich Property to the Debtor and as such is already knowledgeable with respect to the Property and strategies to successfully market it.

2.      The services to be provided by the Broker will include (a) preparing for the marketing of the Greenwich Property; (b) promoting the Greenwich Property including executing and managing all aspects of marketing, including advertising and public relations to digital campaigns; and (c) managing the sale process for the Greenwich Property.

3.      The Trustee submits that approving the retention of the Broker as the broker for the sale of the Greenwich Property is in the best interest of the Estate and that, accordingly, the Broker's retention, on the terms set forth in the Agreement, should be approved by the Court.

2

4.      Additionally, in order to preserve the value of the Greenwich Property for creditors, as well as to ensure the Greenwich Property is able to be marketed and sold as efficiently and expeditiously as possible, the Trustee must ensure all expenses relating to the Greenwich Property are paid, including expenses incurred in connection with preparing the Greenwich Property for sale.  Accordingly, the Trustee requests that the Court approve the Trustee's payment of expenses related to the maintenance and sale of Greenwich Property.

## JURISDICTION, VENUE, AND STATUTORY BASES

5.      The United States Bankruptcy Court for the District of Connecticut (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut.

6.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

7.      Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The relief sought in this Motion is predicated upon sections 327, 328 and 363 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1.

## RELEVANT BACKGROUND

9.      On March 27, 2023, the Trustee initiated an adversary proceeding by filing a Complaint [Docket No. 1, in Adv. Proc. No. 23-5005] (the "Greenwich Land A.P.") against Greenwich Land, LLC ("Greenwich Land") and Hing Chi Ngok ("Ms. Ngok" and, together with Greenwich Land, collectively, the "Defendants"), seeking, among other things, (i) a ruling pursuant to 11 U.S.C. §§ 541, 542 and 544 declaring that Greenwich Land is an alter ego of the Debtor and ordering turnover of its assets, including the Greenwich Property, to the Trustee, and (ii) a ruling pursuant to 11 U.S.C. §§ 541, 542 and 544 declaring that the membership interest in

Greenwich Land is property of the Estate and ordering the surrender of such membership interest to the Trustee.

10.    On July 2, 2024, for the reasons stated on the record and further set forth in the Court's *Memorandum of Decision and Order Granting Motion for Summary Judgment* [Docket No. 133 in Adv. Proc. No. 23-5005], the Court granted summary judgment in favor of the Trustee in the Greenwich Land A.P. [Docket No. 134 in Adv. Proc. No. 23-5005] (the "SJ Order"), finding, among other things, that the Greenwich Property is property of the Estate to be administered by the Trustee, and ordering the Turnover of it to the Trustee.

11.    On July 10, 2024, the Defendants filed a notice of their appeal (the "Appeal") with respect to the SJ Order [Docket No. 138 in Adv. Proc. No. 23-5005].  On July 12, 2024, the Defendants filed a motion for stay pending the Appeal [Docket No. 139 in Adv. Proc. No. 23-5005] (the "Stay Motion") in the Greenwich Land A.P.

12.    On August 16, 2024, upon the consent of the Trustee and the Defendants, the Court entered the *Consent Order Resolving Motion for Stay Pending Appeal and Enforcing Summary Judgment* [Docket No. 166 in Adv. Proc. No. 23-5005] ("Consent Order"), pursuant to which, among other things, on August 20, 2024, (a) the Trustee assumed possession of the Greenwich Property for the benefit of the Estate; and (b) the Defendants withdrew the Stay Motion with prejudice.

13.    As of August 20, 2024, the Trustee, in his capacity as chapter 11 trustee for the Debtor, is the owner of record with respect to the Greenwich Property.

14.    The Trustee must now maintain the Greenwich Property, and ready it for sale, and requires services of a broker to assist the Trustee the marketing and sale process.

## QUALIFICATIONS

15.     The Trustee seeks to retain the Broker because of its extensive experience and knowledge with respect to the marketing and sales of properties in Greenwich, Connecticut.  For the last three years, the Broker has been the nation's largest residential brokerage by sales volume.   (Burke Declaration at ¶ 5.)  In the second quarter of 2024 alone, the Broker's agents closed approximately 60,000 transactions.  (*Id.*)  It currently has approximately twenty active listings in Greenwich, Connecticut.  (*Id.*)

16.     Ms. Burke will serve as listing agent with respect to the sale of the Greenwich Property.  (*See* Agreement (at Addendum).)  She has been a real estate agent in Greenwich for over eighteen years and has been associated with the Broker for the past three years.  (Burke Declaration at ¶ 2.)  She specializes in marketing luxury single-family homes, having sold dozens of multimillion dollar properties and closed more than $350 million in residential sales. (*Id.*)

17.     For these reasons, the Trustee submits that the Broker is well qualified and able to efficiently provide the requested brokerage services with respect to the Greenwich Property.

## SERVICES TO BE PROVIDED

18.     The Trustee has retained the Broker as broker to sell the Greenwich Property pursuant to the Agreement.  The services the Broker will provide include the following:

  a.     Preparing (i) a marketing plan and (ii) a comprehensive inventory listing all items in the Greenwich Property and house that are included in the sale and the items excluded from the sale.

  b.     Promoting the Greenwich Property by various means, including via a virtual staging of the property.

  c.     Managing the sale process for the Greenwich Property by, among other things, (i) fielding all offers until negotiations lead to an agreed price and terms, upon which an offer to purchase document will be prepared for the

buyer to sign and whose deposit will be held in escrow subject to closing, and (ii) managing the administration and closing process.

19.      In addition, the Broker will provide the Trustee, on a confidential basis, with a periodic log identifying the interested parties with whom the Broker communicates.  This log will allow the Trustee to track the progress made in the marketing and sale process.

20.      The Trustee intends to work closely with the Broker to ensure that there is no unnecessary duplication of services performed or charged to the Estate in this case.

## COMPENSATION

21.      As set forth more fully in the Agreement and subject thereto, the Broker will be compensated with a fee of 4.5% of the sale price of the Greenwich Property (it being understood that the Broker will share half of this fee with the buyer's broker). In addition, the Trustee has agreed to assume the payment of $11,000 directly to the staging company for the virtual staging[2] of the Greenwich Property.

22.      All marketing efforts and strategies shall be agreed between the Broker and the Trustee and shall, except as described above, be at the expense of the Broker unless otherwise agreed in writing by the Trustee.

## RELIEF REQUESTED

23.      By this Motion, the Trustee seeks entry of an Order, substantially in the form attached hereto as Exhibit A, pursuant to sections 327(a), 328 and 363(b) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1, authorizing him (i) to employ and retain the Broker as broker in connection with the sale of the Greenwich Property in this Chapter 11

---

[2]      A virtual staging is a process by which a service provider uses pictures of the rooms in a property to create highly realistic photos of such rooms with virtual furniture and virtual decor which can be posted online by the listing agent.  With regard to the Greenwich Property, a virtual staging would cost thousands of dollars less than a physical staging (i.e., renting furniture) would.

Case, as set forth in the Agreement, and (ii) fund the reasonable and necessary expenses related to the Greenwich Property, including, without limitation, payment of utilities, insurance, any real estate taxes owing with respect to the property, and any cleaning, staging, or other expenses necessary to prepare the property to be sold, up to the maximum amount of three hundred and fifty thousand dollars until further order of the Court ($350,000) (the "Expenses Cap").

24.     The Trustee respectfully submits that, because the Broker's compensation would be paid only upon a sale of the Greenwich Property and correlates to benefit received by the Estate from such a sale, requiring the Broker to file detailed time records and periodic fee applications should not be necessary under the circumstances.[3]

**BASIS FOR RELIEF**

**I.     Retention of the Broker**

25.     The Trustee seeks to retain the Broker as broker for the sale of the Greenwich Property pursuant to section 327(a) of the Bankruptcy Code, which provides that a chapter 11 trustee may, subject to court approval:

> employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [trustee] in carrying out the [trustee]'s duties under this title.

11 U.S.C. § 327(a).

26.     Further, section 328(a) of the Bankruptcy Code allows a trustee, "with the court's approval, . . . [to] employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an

---

[3]     The Trustee has been advised by the Broker that it is not their practice to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis.

hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C.

§ 328(a).

27.    Under Bankruptcy Rule 2014(a), an application for retention must include:

> [S]pecific facts showing the necessity for the employment, the
> name of the [firm] to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all
> of the [firm's] connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the
> United States trustee, or any person employed in the office of the
> United States trustee.

Fed. R. Bankr. P. 2014(a).

28.    Based on the facts and for the reasons stated herein and in the Burke Declaration,

retention and employment of the Broker as broker for the Trustee to include the marketing and

sale of the Greenwich Property pursuant to this Motion is reasonable, necessary and appropriate,

and satisfies the requirements of sections 327 and 328 of the Bankruptcy Code and Bankruptcy

Rule 2014(a).

**II.    <u>Funding of Expenses Related to the Greenwich Property</u>**

29.    The Trustee requests that the Court authorize and approve the Motion pursuant to

section 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides in

pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in

the ordinary course of business, property of the estate."  Under section 363(b) of the Bankruptcy

Code, courts require only that the trustee "show a sound business purpose justifies such actions."

*See, e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063,

1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application

expressly find from the evidence presented before him at the hearing a good business reason to

grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re*

*Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

30.     In addition, a chapter 11 trustee has a "statutory duty to protect and preserve property of the estate for the purpose of maximizing a distribution to creditors." *In re Ngan Gung*., 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) (citing 11 U.S.C. § 1106(a)). As the Greenwich Property is now property of the Estate, the Trustee is obligated to preserve its value for the benefit of creditors, and to maximize that value. To that end, the Trustee has determined, in his business judgment, to prepare the Greenwich Property for sale, and to fund the expenses related to the property while the sales process is ongoing, in order to ensure it not lose any value during the sales process, and that its sale value be maximized.

31.     The Trustee submits that the relief sought in this Motion will facilitate the Trustee's restructuring efforts through the efficient sale of the Greenwich Property, is in the best interests of the Debtor's estate and stakeholders, and it should be approved by the Court.

### DISINTERESTEDNESS

32.     To the best of the Trustee's knowledge, the Broker (i) does not hold any interest materially adverse to the Debtor's estate; (ii) has no connection with the Debtor, the Debtor's immediate family, or any alter egos of the Debtor, except as disclosed in the Burke Declaration; and (iii) is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, except as set forth in the Burke Declaration. Out of an abundance of caution, the Broker discloses that Ms. Burke, while associated with another firm, represented the seller of the Greenwich Property to the Debtor, and that the purchaser's agent who represented the Debtor as purchaser in that transaction is now associated with Compass. (*See* Burke

Declaration at ¶ 9.)  The Broker is conducting a further review of its records in respect to its disinterestedness (*see id.* at ¶ 8) and the Trustee may supplement this disclosure based on this search prior to a hearing on this Motion.

## NOTICE

33.    Notice of this Motion has been given to the United States Trustee, the Debtor, the Official Committee of Unsecured Creditors, and to all parties that have appeared and requested notice in the above-captioned chapter 11 case by electronic filing utilizing the Court's electronic filing system or, to parties ineligible to receive electronic notice, by U.S. mail.

## NO PRIOR REQUEST

34.    No prior request for the relief sought in the Motion has been made to this Court or any other court.

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK.]*

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests that the

Court (a) enter the Order substantially in the form attached hereto as **Exhibit A** and (b) grant

such other and further relief as is just and proper.

Dated: August 23, 2024               LUC A. DESPINS, CHAPTER 11 TRUSTEE
       New Haven, Connecticut

By: */s/ Patrick R. Linsey*
      Douglas S. Skalka (ct00616)
      Patrick R. Linsey (ct29437)
      NEUBERT, PEPE & MONTEITH, P.C.
      195 Church Street, 13th Floor
      New Haven, Connecticut 06510
      (203) 781-2847
      dskalka@npmlaw.com
      plinsey@npmlaw.com

         *and*

      G. Alexander Bongartz (admitted *pro hac vice*)
      PAUL HASTINGS LLP
      200 Park Avenue
      New York, New York 10166
      (212) 318-6079
      alexbongartz@paulhastings.com

         *and*

      Nicholas A. Bassett (admitted *pro hac vice*)
      PAUL HASTINGS LLP
      2050 M Street NW
      Washington, D.C., 20036
      (202) 551-1902
      nicholasbassett@paulhastings.com

      *Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
--------------------------------------------------------x
                                              :
In re:                                        :    Chapter 11
                                              :
HO WAN KWOK et al.,                           :    Case No. 22-50073 (JAM)
                                              :
                Debtors.⁴                     :    Jointly Administered
                                              :
--------------------------------------------------------x
```

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on August 23, 2024, the foregoing Motion, and all declarations, exhibits and attachments thereto, was electronically filed.  Notice of this filing was sent by e-mail to all parties to the above-captioned chapter 11 case by operation of the Court's electronic filing ("CM/ECF") system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

Dated: August 23, 2024          LUC A. DESPINS, CHAPTER 11 TRUSTEE
       New Haven, Connecticut

                                By: /s/ Patrick R. Linsey
                                    Patrick R. Linsey (ct29437)
                                    NEUBERT, PEPE & MONTEITH, P.C.
                                    195 Church Street, 13th Floor
                                    New Haven, Connecticut 06510
                                    (203) 781-2847
                                    plinsey@npmlaw.com

---

⁴    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

<u>**Exhibit A**</u>

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                       :

In re:                    :     Chapter 11
                       :

HO WAN KWOK *et al.*,     :     Case No. 22-50073 (JAM)
                       :

        Debtors.[1]       :     Jointly Administered
                       :

-------------------------------------------------------x

**ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 328, AND 363(b), BANKRUPTCY RULES 2014(a) AND 2016, AND LOCAL RULE 2014-1, FOR ENTRY OF ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF REAL PROPERTY BROKER, EFFECTIVE AS OF AUGUST 23, 2024, FOR SALE OF GREENWICH PROPERTY, (II) AUTHORIZING TRUSTEE TO FUND EXPENSES RELATED TO GREENWICH PROPERTY AND (III) FOR RELATED RELIEF**

      Upon the motion (the "Motion"),[2] filed Luc Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), pursuant to sections 327(a), 328(a) and 363(b) of title 11 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1, for entry of an order (the "Order") authorizing the Trustee (i) to employ and retain Compass, Inc. (the "Broker") as broker to market and sell the property, in accordance with the terms and conditions set forth in the Agreement, and (ii) to fund the reasonable and necessary expenses related to the real property at 373 Taconic Road, Greenwich, Connecticut (inclusive of all improvements and personal property thereon, the

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

"Greenwich Property"), including, without limitation, payment of the utilities, insurance, any real estate taxes owing with respect to the property, and any cleaning, staging or other expenses necessary to prepare the property to be sold (collectively, the "Greenwich Expenses"), up to the maximum amount of three hundred and fifty thousand dollars ($350,000) (the "Expenses Cap"), all as further detailed in the Motion; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference from the United States District Court for the District of Connecticut; and it appearing that venue of this chapter 11 case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) on which the Court may enter a final order consistent with Article III of the United States Constitution; and this Court being satisfied based on the representations made in the Motion and in the Burke Declaration that, as more fully disclosed in the Burke Declaration, (a) the Broker does not hold or represent an interest adverse to the Debtors' estates and (b) the Broker is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code, and as required by section 327(a) of the Bankruptcy Code; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and this Court having reviewed the Motion and having heard statements in support of the Motion at a hearing held before this Court; and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is approved as set forth herein.  All objections to the relief requested in the Motion, whether filed or not, are hereby overruled.

2.      The Trustee is authorized to retain and employ the Broker as broker in connection with the sale of the Greenwich Property, on the terms set forth in the Agreement, subject to the terms of this Order.

3.      The Broker's fee of 4.5% of the sale price of the Greenwich Property is hereby approved.  The payment by the Trustee of $11,000 directly to the staging company for the virtual staging of the Greenwich Property (the "Staging Fee") is also approved.

4.      The Trustee and the Broker shall not be required to file monthly, interim, or final fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  However, the Trustee shall seek authority to make payment to the Broker of its fees calculated in accordance with the Agreement as part of the Trustee's motion to approve any sale of the Greenwich Property, provided however, the Trustee may pay the Staging Fee immediately upon entry of this Order. The Broker shall be compensated for its services solely in accordance with the procedures set forth in this Order and any such other procedures as may be fixed by order of this Court.

5.      The Trustee may use property of the Estate to fund the Greenwich Expenses up to the amount of the Expenses Cap.

6.      The Expenses Cap shall be subject to increase upon a motion filed by the Trustee with notice to (a) Hing Chi Ngok, (b) Greenwich Land, LLC, (c) the Debtor, (d) the Official Committee of Unsecured Creditors, (e) the United States Trustee, and (f) all parties appearing in the Chapter 11 Case eligible to receive electronic notice, which motion shall be heard upon seven days' notice subject to the schedule of the Court.

7. To the extent the Motion or the Agreement is inconsistent with this Order, the terms of this Order shall govern.

8. The Trustee and the Broker are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

9. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit B**

**Engagement Agreement**



**EXCLUSIVE RIGHT TO SELL AGREEMENT**





The undersigned Seller(s) _____ *Luc Despins as Chapter 11 Trustee* _____ herein grants to

_____ *Compass* _____ (Broker) the EXCLUSIVE right to sell real property located

at _____ *373 Taconic Road, Greenwich, CT 06831* _____, Connecticut (Property address).  The

Seller and Broker agree to list the real property for $_____ *7,100,000.00* _____ (hereinafter the "List Price").  The term of

this Agreement shall commence on _____ *08/27/2024* _____ (start date) and will remain in effect through 11:59 p.m. EST

on _____ *02/28/2025* _____ (expiration date).

1. **Fees:**

    **NOTICE: THE AMOUNT OR RATE OF REAL ESTATE BROKER COMPENSATION IS NOT FIXED BY LAW. IT IS SET BY EACH BROKER INDIVIDUALLY AND MAY BE NEGOTIABLE BETWEEN YOU AND THE BROKER. There is no customary or industry standard real estate broker fee or compensation.**

    **Compensation to Broker:** Seller(s) agrees to pay Broker a service fee of _____ *4.5* _____ percent of the sales price or __*N/A*_____ (a) if Broker or its agent(s) produces a Buyer who is ready, willing and able to purchase the Property listed above, hereinafter referred to as "the Property," at the List Price and on the terms stated, or at such other price or such other terms as may be acceptable to Seller(s); or (b) if a sale or exchange of said Property is made by Seller(s) to any other buyer during the term of this Exclusive Right to Sell Agreement or any Protection Period set forth below.
    - Seller(s) DOES NOT retain the right to sell the Property themselves without obligation to Broker.
    - Seller(s) is obligated to pay the service fee to Broker regardless of how Buyer was introduced to the Property.
    - If a fee is to be computed with reference to the sale or purchase price, the sale or purchase price shall be the greater of the amount shown as purchase or sale price on the Purchase and Sale Contract between Seller(s) and Buyer without reference to any credits or pro-rations, or the amount on which the conveyance tax due the Commissioner of Revenue Services is calculated, whichever is greater.

    **Listing Broker Compensation to Buyer Brokers**: Listing Broker compensation to Buyer Brokers refers to the portion of the Listing Broker's commission paid by the Listing Broker to the Buyer Broker. Seller(s) understands that Buyer Brokers owe undivided fiduciary duties to the buyer, NOT to the Seller(s).

    - Seller(s) ☒ does ☐ does not authorize Listing Broker to offer compensation to Buyer Brokers.
    - If Seller(s) does authorize Listing Broker to offer compensation to Buyer Brokers, the Listing Broker shall offer Buyer Brokers from the above service fee an amount equal to __*2.25*__ percent of the sales price or __*N/A*_____ .

    Additional Compensation Provisions: _____
    _____
    _____

2. **Protection Period:** Seller(s) agrees to pay the above stated service fee to Broker should a sale be made directly or indirectly to any party Broker has submitted the Property to during the term of this Exclusive Right to Sell Agreement or within __*60*__ days following the term. This paragraph shall not apply if Seller(s) subsequently executes a valid exclusive listing with any other real estate broker.

3. **Marketing:** Broker agrees to market the Property for sale and to make a diligent effort to sell at the List Price and on the Terms stated herein until there is an enforceable contract for the sale of the Property or this Exclusive Right to Sell Agreement expires, whichever occurs first.

4. **Signs and Keys:** ~~Seller(s) gives Broker the right to place a "For Sale" sign on the Property and to remove all other "For Sale" signs during the term of this Exclusive Right to Sell Agreement.~~ Seller(s) agrees to furnish Broker with a key to the Property ~~and to permit the Broker to place a key box or lockbox on the door.~~ *LD, Chpt 11 Trustee*

5. **Entry and Control:** Broker or any of its agent(s) may enter the Property at reasonable times for the purpose of showing it to prospective buyers in accordance with any Special Showing Instructions as noted herein. Seller(s) acknowledges that Broker has a duty under State Regulations and the Code of Ethics to cooperate with other brokers to show the Property. Seller(s) and Broker agree that Seller(s) shall at all times have control over the Property, its maintenance and preparation for showing to prospective buyers. Seller(s) agrees to indemnify and hold Broker, its

agent(s), successors, and assigns, harmless from all suits, claims, demands or damages related to or arising from the physical condition of the Property.

Special Showing Instructions: _____

_____

6. **Seller(s) Agrees:**

   a. To complete and keep updated a Connecticut Residential Property Condition Disclosure Report. Seller(s) must provide this to prospective buyers prior to executing a written offer to purchase the property. Otherwise, Seller(s) must credit the buyer $500.00 at closing. Conn. Gen. Stat. §§ 20-327b and 20-327c

   b. To provide the lead-based paint disclosure (if applicable) and authorizes Broker to disclose the information contained therein.

   c. Seller(s) is either Owner(s) of the Property or has full authority to enter into this Agreement.

   d. Seller(s) has no other listings or agreements in effect concerning this Property, including but not limited to Open Listings.

   e. Seller(s) understands that names of attorneys, contractors, and other professionals are furnished as a convenience to Seller(s) and are not an endorsement, or guaranty of those professionals or their work product, and that Seller(s) is not required to utilize the services of any of these companies or individuals.

   f. To pay reasonable attorney's fees that Broker may incur to collect any monies due under this Agreement.

   g. Broker reserves the right to terminate this Agreement unilaterally by written notice to Seller(s) if Broker has reasonable cause to believe Seller(s) may be unable to consummate a sale of the Property for the List Price set forth above by reason of liens, encumbrances, title disputes or other matters affecting title to the Property, or legal authority to convey the Property.

   h. To refer to Broker all requests for information about showings or offers for the Property, and to advise Broker of any contacts made by any prospective buyer, tenant, or other broker.

   i. Broker may represent a Buyer interested in the Property which may give rise to the potential for a dual agency relationship. Dual agency requires the signed consent of both parties. In dual agency, the Broker acts in a fiduciary capacity for both parties. While the Broker does not represent either party exclusively, the Broker may not disclose confidential information without the consent of the party and may not use information shared by a party to gain an advantage for the other party.

   j. Seller(s) represents the existence of (check as applicable) ☒ audio and/or ☒ video surveillance or other recording devices/ equipment present anywhere in, around, at or on the Property, inside or outside.

7. **Property Information:** Seller(s) has reviewed the information contained in this Exclusive Right to Sell Agreement, the property data sheet, and any other disclosure of information forms where Seller(s) supplies information. To the best of Seller's knowledge and belief, Seller(s) represents that any material defects regarding the Property have been disclosed to Broker and the information contained in such information forms are complete and accurate. Seller(s) agrees to indemnify and hold Broker or its agent(s) harmless from any claim, action, damage or cost, including attorney fees, that Broker or its agent(s) may incur resulting from an incorrect or inaccurate representation, a misrepresentation or lack of representation of any of the information contained in such forms. Any representations made by Seller(s) are not warranties of any kind and may not be a substitute for an inspection or warranties that a prospective buyer may obtain. Seller(s) authorizes Broker as Seller's agent to disclose any information that Seller(s) provides Broker concerning the Property.

Seller(s) understands potential serious health risks can occur due to the presence of environmentally hazardous conditions (such as lead, asbestos, and radon); and, therefore, Seller(s) and Broker must disclose any known evidence of knowledge. Further information can be obtained at ct.gov/dcp, ct.gov/dph and epa.gov.

Seller(s) hereby represents Seller(s) has complete, valid legal authority to sell, exchange or otherwise convey the Property and further agrees Seller(s) shall hold Broker and its agent(s) harmless against any and all liability arising from this representation.

8. **Multiple Listing Service and Internet Display:** Seller(s) acknowledges and agrees that all images, graphics, video recordings, virtual tours, written descriptions, remarks, narratives, pricing information, disclosures, and other elements relating to the Property provided by Seller(s) to Broker or Broker's agent(s) (the "Seller Listing Content"), or otherwise obtained or produced by Broker or Broker's agent(s) in connection with this Agreement (the "Broker Listing Content"), and any changes to such Content may be included in compilations of listings, and otherwise distributed, displayed and reproduced to any applicable Multiple Listing Service ("MLS") for publication to and use by its participants. Broker may display the Property on its website(s). Seller(s) agrees to permit other Brokers to display Seller Listing Content on their website(s) as part of an internet listing display, similar program offered by the MLS or otherwise, or with other media, at Broker's option. Seller(s) agrees that neither the provider of the MLS nor Broker are responsible for errors or omissions appearing in the MLS. Seller(s) authorizes Broker to provide timely notice of status changes of this Exclusive Right to Sell Agreement and to provide sales information including selling price upon sale of the Property to any agreed upon MLS(s).

**2 of 3**

Seller(s) hereby grants to Broker for the term of this listing, as may be extended from time-to-time, a non-exclusive, irrevocable, worldwide, royalty free license to use, sublicense through multiple tiers, publish, display, compile with other content and reproduce the Seller Listing Content, to prepare derivative works of the Seller Listing Content, and to distribute the Seller Listing Content or any derivative works of it. Seller(s) acknowledges and agrees that as between Seller(s) and Broker, all Broker Listing Content is owned exclusively by Broker, and Seller(s) has no right, title, or interest in or to any Broker Listing Content.

9.  **Other Terms, Conditions, or Special Instructions:** _____

_____

10. **Statements Required by Law:**

   a.  This Agreement is subject to the Connecticut General Statutes prohibiting discrimination in commercial and residential real estate transactions (Connecticut General Statutes Title 46a, Chapter 814c).**It is unlawful under federal and/or state law to discriminate on the basis of race, creed, color, national origin, ancestry, sex, gender identity or expression, sexual orientation or civil union status, marital status, age, lawful source of income, familiar status, learning disability, physical or mental disability, status as a veteran, status as a victim of domestic violence, or erased criminal history record information.** Seller(s) have read and understand this section and agree to comply with the Fair Housing laws.  Seller(s) Initials: *LD, Chpt 11 eee*

   b.  The real estate broker may be entitled to certain lien rights pursuant to section (d) of section 20-325a of the Connecticut General Statutes.

   c.  Federal law requires the Seller(s) of "target property," which is generally property built prior to 1978, to disclose the presence of lead-based paint or lead-based paint hazards and to furnish any records, reports, inspections, or other documents in the Seller's possession concerning these items.

   d.  While Broker shall generally act as the agent for Seller(s), it may be necessary or appropriate for Broker to act as agent of both Seller(s) and Buyer(s), exchange party, or one or more additional parties. Broker shall provide agency disclosure(s) as required by law. Seller(s) understands that Broker may have or obtain listings on other properties and that potential buyers may consider, make offers on, or purchase other property through use of Broker's services.

   e.  Broker has disclosed to all affected parties whether Broker or its agents have a present or contemplated interest in the Property.

11. **Electronic Signatures:** Broker and Seller(s) may use electronic signatures to execute and change agreements.

12. **Heirs, Successors and Assigns:** Both Seller(s) and Broker agree that this Agreement will continue to bind heirs, successors and assigns of both. In the event the Broker ceases the practice of real estate brokerage, whether through sale or otherwise, Broker or Broker's heirs, successors or assigns may assign this Agreement to another brokerage unless Seller(s) submits a written request to terminate this Agreement within ten (10) calendar days of the date of written notice of such assignment.

13. Seller(s) and Broker acknowledge, agree, and understand that although this form has been made available by the Connecticut Association of REALTORS®, Inc., the Association assumes no responsibility for its content and is not a party to this Agreement.

14. **This Contract is binding and legal.**  Seller acknowledges receipt of a copy of this Agreement.

*Luc Despins as Chapter 11 Trustee*    08/23/2024            *Compass*
SELLER                              DATE            BROKER/AGENCY NAME

_____                 _____
SELLER                              DATE            STREET

*200 Park Ave*                                   _____
ADDRESS                                         CITY/STATE/ZIP

*New York*          *NY*        *10166*          *David Haffenreffer*      08/23/2024
CITY/STATE/ZIP                                  AUTHORIZED AGENT              DATE

*lucdespins@paulhastings.com*                    *jgb@compass.com*
E-MAIL ADDRESS                                  E-MAIL ADDRESS

© 2002-2024. All rights reserved. Connecticut Association of REALTORS®, Inc.                    Rev. 07/24

## ADDENDUM TO EXCLUSIVE RIGHT TO SELL AGREEMENT

This addendum ("Addendum") to Exclusive Right to Sell Agreement ("Agreement") amends and forms a part of the agreement by and Luc A. Despins, as Chapter 11 Trustee for Ho Wan Kwok ("Seller") and Compass ("Broker"), dated August 23, 2024, for the listing and marketing for sale of the property known as 373 Taconic Road, Greenwich, CT 06831 ("Property").

In addition to the terms and conditions of the Agreement, the parties agree as follows:

1. Paragraph 1., Additional Compensation Provisions:   Seller agrees to pay $11,000.00 for the virtual staging of the Property.

2. Paragraph 9., Other Terms, Conditions, or Special Instructions: Notwithstanding anything in the Agreement to the contrary, the Agreement, Broker compensation, and Seller's authority to sell the Property are all subject to Bankruptcy Court approval.  To the extent that the Agreement limits the liability, holds harmless, and/or provides for the indemnification of the Broker and/or its agents, such provisions shall not apply in the event of gross negligence and/or intentional misconduct of Broker or its agents.

3. LISTING AGENT. Julie Grace Burke shall be the listing agent with respect to the Property.

4. ADDENDUM CONTROLLING.  In the event the terms of this Addendum are inconsistent with the main body of the Agreement, the terms of this Addendum shall control.

5. COURT ORDER CONTROLLING. In the case of conflicts between a Bankruptcy Court order and the Agreement and/or this Addendum, the Bankruptcy Court order controls.

6. COUNTERPARTS. This addendum may be executed in counterparts which, taken together, shall constitute a fully executed agreement.

*Signature page follows*

*Signature page, addendum*

SELLER:

/s/ Luc A. Despins, as Chapter 11 Trustee

8/23/2024

Luc A. Despins, as Chapter 11 Trustee
of the Ho Kwok Wong Estate

DATE

BROKER:

Compass

By: David Haffenreffer

8/23/2024

DATE

## **Exhibit C**

**Burke Declaration**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

------------------------------------------------------x
                                    :

In re:                             :     Chapter 11
                                      :

HO WAN KWOK *et al.*,         :     Case No. 22-50073 (JAM)
                                      :

          Debtors.[1]       :     Jointly Administered
                                      :
------------------------------------------------------x

**DECLARATION OF JULIE GRACE BURKE IN SUPPORT OF MOTION OF
TRUSTEE, PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 328, AND 363(b),
BANKRUPTCY RULES 2014(a) AND 2016, AND LOCAL RULE 2014-1, FOR ENTRY
OF ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF REAL
PROPERTY BROKER, EFFECTIVE AS OF AUGUST 23, 2024, FOR SALE OF
GREENWICH PROPERTY, (II) AUTHORIZING TRUSTEE TO FUND EXPENSES
RELATED TO GREENWICH PROPERTY AND (III) FOR RELATED RELIEF**

       I, Julie Grace Burke being duly sworn, state the following under penalty of perjury:

       1.       I am a real estate broker of Compass, Inc. ("Compass"), maintaining offices at

200 Greenwich Ave, 3rd Floor, Greenwich, Connecticut 06830.

       1.       I am duly authorized to make this declaration (this "Declaration") on behalf of

Compass and submit this Declaration in support of the *Motion of Trustee, Pursuant to*

*Bankruptcy Code Sections 327(a), 328, and 363(b), Bankruptcy Rules 2014(a) and 2016, and*

*Local Rule 2014-1, for Entry of Order (I) Authorizing Employment and Retention of Real*

*Property Broker, Effective as of August 23, 2024, for Sale of Greenwich Property,*

*(II) Authorizing Trustee to Fund Expenses Related to Greenwich Property and (III) for Related*

*Relief* (the "Motion")[2] in the chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Motion.

"Debtor"), seeking an order approving, among other things, the retention of Compass as broker pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.

2.      I am a real estate agent based in Greenwich, Connecticut.  I am currently (and have been for the last 3 years) employed by Compass as a real estate agent.  I have approximately 18 years of experience in the real estate brokerage industry, in which time I have served as an agent in connection with the sales of dozens of multimillion dollar homes, closing more than $350 million in residential sales.

3.      Compass was retained by Mr. Luc A. Despins, in his capacity as the Chapter 11 Trustee (the "Trustee") appointed in the Chapter 11 Case of the Debtor, to market and sell 373 Taconic Road, Greenwich, Connecticut (the ' Greenwich Property").  Unless otherwise indicated below, I have personal knowledge of the matters set forth below, and if called as a witness, I could and would testify competently thereto.

4.      As broker of the Greenwich Property, Compass will, among other things (i) prepare the Greenwich Property for marketing, (ii) promote the Greenwich Property by executing and managing all aspects of marketing, including advertising and public relations to digital campaigns, and (iii) manage the sale process for the Greenwich Property.  I will serve as listing agent with respect to the foregoing.

5.      Compass is a real estate brokerage specializing in the sale of single-family residential homes.  It currently is the broker for nearly twenty properties in Greenwich, as well as thousands of other homes in other markets, and is the largest residential brokerage by sales volume in the nation for the past three years.  Compass's agents closed approximately 60,000 transactions in just the second quarter of 2024.

2

6.      The services that Compass provides to the Trustee have assisted and will assist his efforts to maximize the value of the Debtor's estate by enabling the Trustee to derive value from the Greenwich Property.  To my knowledge, the services will not duplicate the services of any other professional that the Trustee has retained.  In addition, if retained, Compass will use reasonable efforts to coordinate its services with the Trustee and the Trustee's other professionals to avoid the unnecessary duplication of services.

7.      Compensation will be payable to Compass on the terms set forth in the Agreement.  Compass believes that the requested compensation and payment arrangement is customary and reasonable for the work to be performed.

8.      As of the signing this Declaration, other than as disclosed below, I am not personally aware of representations by myself or Compass of any of the Debtor, his immediate family members, and his alter egos, as listed in **Schedule 1** attached hereto (collectively, the "Debtor Affiliated Parties").  Compass is in the process of searching its records to determine connections or potential conflicts with respect to the Debtor Affiliated Parties and will provide the results of that search to counsel for the Trustee who has advised me that it will update the disclosure as necessary.

9.      To the best of my personal knowledge and belief, Compass has no relationship or connection with the Debtor Affiliated Parties except as follows:

      a.      I, while at another brokerage firm, represented the prior owner of the Greenwich Property in connection with the sale of the Greenwich Property to the Debtor; and

3

b.      the broker who, while at another firm, represented the Debtor in connection with the Debtor's purchase of the Greenwich Property joined Compass as a broker since the time of that purchase.

10.    Based on the foregoing, insofar as I have been able to ascertain based on my personal knowledge: (a) neither I nor Compass has a connection with the Debtor, or any of the Debtor Affiliated Parties; and (b) (i) neither I nor Compass are a creditor, equity security holder, or insider of the Debtor or his affiliates, (ii) neither I nor Compass have been, within two years before the petition date of the Chapter 11 Case, a director, officer, or employee of the Debtor or his affiliates, and (iii) neither I nor Compass have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason. Therefore, I understand from my discussions with Paul Hastings LLP that this means Compass is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b).

11.    No promises have been received by Compass nor by any employee thereof as to compensation in connection with this chapter 11 case other than in accordance with the provisions of the Bankruptcy Code. Compass has no agreement with any other entity to share with such entity any compensation received by Compass in connection with this Chapter 11 Case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 22, 2024

Julie Grace Burke

4

Listing Agent
Compass, Inc.

## Schedule 1

**Debtor Affiliated Parties**

**<u>Debtor Affiliated Parties</u>**

- Ho Wan Kwok (A/K/A Miles Kwok, Miles Guo and Wengui Guo)

- Hing Ch Ngok/Yue Qingzhi

- Qiang Guo/Mileson Guo

- Mei Guo/Mei Gui

- Greenwich Land, LLC

- HCHK Technologies, Inc.

- HCHK Property Management, Inc.

- Lexington Property and Staffing, Inc.

- Golden Spring (New York) Ltd.

- Lamp Capital LLC

- HK International Funds Investments (USA) Limited, LLC