```
 1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF CONNECTICUT
 2                        BRIDGEPORT DIVISION

 3    IN RE:                     .   Chapter 11
                                 .   Case No. 22-50073 (JAM)
 4    HO WAN KWOK, et al.,       .
                                 .   (Jointly Administered)
 5                               .
                                 .
 6          Debtors.            .   Courtroom 123
                                 .   Brien McMahon Federal Building
 7                               .   915 Lafayette Boulevard
                                 .   Bridgeport, Connecticut 06604
 8                               .
                                 .   Tuesday, September 24, 2024
 9    . . . . . . . . . . . . . . .  1:29 p.m.

10                        TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE JULIE A. MANNING
11                  UNITED STATES BANKRUPTCY JUDGE

12    APPEARANCES:

13    For the Chapter 11
      Trustee:               Patrick Linsey, Esquire
14                           NEUBERT PEPE & MONTEITH, P.C.
                             195 Church Street
15                           13th Floor
                             New Haven, Connecticut 06510
16
                             -and-
17
                             Luc A. Despins, Esquire
18                           PAUL HASTINGS, LLP
                             200 Park Avenue
19                           New York, New York 10166

20
      Audio Operator:        Electronically recorded
21
      Transcription Company: Reliable
22                           The Nemours Building
                             1007 N. Orange Street, Suite 110
23                           Wilmington, Delaware 19801
                             Telephone: (302)654-8080
24                           Email: gmatthews@reliable-co.com

25    Proceedings recorded by electronic sound recording,
      transcript produced by transcription service.
```

```
 1   APPEARANCES:

 2   For Anthem Health Choice
     Assurance, Anthem Health
 3   Plans, Inc., Sedgwick
     Realty Corp., Direct
 4   Persuasion, and Federal
     Express Corp.:              Eric S. Goldstein, Esquire
 5                               SHIPMAN & GOODWIN, LLP
                                 One Constitution Plaza
 6                               Hartford, Connecticut 06103

 7   For Federal Express
     Corporation:                Michael A. Siedband, Esquire
 8                               FEDERAL EXPRESS CORPORATION
                                 3620 Hacks Cross Road
 9                               Building 2, 3rd Floor
                                 Memphis, Tennessee 38125
10
     For Amazon Web
11   Services, Inc., and
     Amazon.com, Inc.:           Brian T. Peterson, Esquire
12                               K&L GATES, LLP
                                 925 Fourth Avenue
13                               Suite 2900
                                 Seattle, Washington 98104
14
     For G Club
15   Operations, LLC and G
     Club International, LLC: Jeffrey M. Sklarz, Esquire
16                               GREEN & SKLARZ, LLC
                                 One Audubon Street
17                               3rd Floor
                                 New Haven, Connecticut 06511
18
     For American Express
19   Company, Inc.:              Darryl S. Laddin, Esquire
                                 ARNALL GOLDEN GREGORY, LLP
20                               171 17th Street, NW
                                 Suite 2100
21                               Atlanta, Georgia 30363

22   For ARI Americas, Inc.:  Michael T. Conway, Esquire
                                 LAZARE POTTER GIACOVAS & MOYLE, LLP
23                               747 3rd Avenue
                                 16th Floor
24                               New York, New York 10017

25
```

APPEARANCES (CONTINUED):

For 3 Columbus Circle,
Baron Yachts, and
ModSquad, Inc.:           Matthew A. Pesce, Esquire
                          MURTHA CULLINA, LLP
                          107 Elm Street
                          11th Floor
                          Stamford, Connecticut 06902

For Avoidance Action
Defendants:               Anthony J. Proscia, Esquire
                          KAUFMAN DOLOWICH, LLP
                          40 Exchange Place
                          20th Floor
                          New York, New York 10005

For Mark Gunderson:       David J. Kozlowski, Esquire
                          MORRISON COHEN, LLP
                          909 Third Avenue
                          New York, New York 10022

For Mei Guo, Hudson
Diamond Holding, Hudson
Diamond New York,
Leading Shine NY, Gypsy
Mei Food Services, LLC,
and Zeisler & Zeisler:    Stephen M. Kindseth, Esquire
                          ZEISLER & ZEISLER, P.C.
                          10 Middle Street
                          15th Floor
                          Bridgeport, Connecticut 06604

For Cirrus Design
Corporation:              Richard J. Bernard, Esquire
                          FAEGRE DRINKER BIDDLE & REATH, LLP
                          1177 Avenue of the Americas
                          41st Floor
                          New York, New York 10036

For Ohtzar Shlomo
Solomon Treasure:         Jeffrey Hellman, Esquire
                          LAW OFFICES OF JEFFREY HELLMAN, LLC
                          195 Church Street
                          10th Floor
                          New Haven, Connecticut 06510

```
1  APPEARANCES (CONTINUED):

2  For Jamestown Associates
   and Target Enterprises:   Kara Anne Zarchin, Esquire
3                            CUMMINGS & LOCKWOOD, LLC
                             6 Landmark Square
4                            Stamford, Connecticut 06901

5  For 270 West 39th
   Street, LLC:              Robert N. Sensale, Esquire
6                            BERSHTEIN, VOLPE & MCKEON, P.C.
                             900 Chapel Street
7                            11th Floor
                             New Haven, Connecticut 06510
8
   For Clayman Rosenberg
9  Kirshner & Linder, LLP:   Matthew D. Valauri, Esquire
                             WILSON ELSER MOSKOWITZ EDELMAN
10                              & DICKER, LLP
                             1010 Washington Boulevard
11                           Stamford, Connecticut 06901

12 For Agora Lab, Inc.:      Benjamin O. Gilbert, Esquire
                             SHEPPARD, MULLIN, RICHTER
13                              & HAMPTON, LLP
                             30 Rockefeller Plaza
14                           New York, New York 10112

15 For Morvillo Abramowitz
   Grand Iason
16 & Anello, P.C.:           Rowena A. Moffett, Esquire
                             BRENNER, SALTZMAN & WALLMAN, LLP
17                           271 Whitney Avenue
                             New Haven, Connecticut 06511
18
   For Greenwich Land, LLC
19 and Hing Chi Ngok:        Christopher J. Major, Esquire
                             MEISTER SEELIG & FEIN, LLP
20                           125 Park Avenue
                             7th Floor
21                           New York, New York 10017

22

23

24

25
```

1    APPEARANCES (CONTINUED):

2    For B&H Foto &
     Electronics, Corp.:        Tracy Ellis Williams
3                               SHIPMAN & GOODWIN, LLP
                                300 Atlantic Street
4                               3rd Floor
                                Stamford, Connecticut 06901
5
                                -and-
6
                                Scott M. Kessler, Esquire
7                               AKERMAN, LLP
                                1251 Avenue of the Americas
8                               37th Floor
                                New York, New York 10020
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                 <u>INDEX</u>

2    <u>MOTIONS</u>:                                                    <u>PAGE</u>

3    Matter
     No. 3532  Order Granting Request for Status Conference        7

4

5            Court's Ruling:                                       --

6

7    Transcriptionist's Certificate                               63

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 1:29 p.m.)

2                THE CLERK:  22-50073, Ho Wan Kwok.

3                THE COURT:  Good afternoon.  If we could have

4     appearances for the record, are starting with the Chapter 11

5     Trustee, these.

6                MR. DESPINS:  Good afternoon, Your Honor.  Luc

7     Despins, Chapter 11 Trustee.

8                MR. LINSEY:  Good afternoon, Your Honor.  Patrick

9     Linsey of Neubert Pepe & Monteith, counsel for the trustee.

10               MR. GOLDSTEIN:  Good afternoon, Your Honor.  Eric

11    Goldstein, on behalf of Anthem Health Choice Assurance,

12    Anthem Health Plans, Inc., Sedgwick Realty Corporation,

13    Federal Express Corporation, and Direct Persuasion, LLC.  To

14    my right is Michael Siedband, who is in-house counsel for

15    FedEx Corporation.

16               MR. SIEDBAND:  Good morning, Your Honor.

17               THE COURT:  Good afternoon.

18               MR. PETERSON:  Good morning, Your Honor.  Brian

19    Peterson of K&L Gates, on behalf of Amazon Web Services,

20    Inc., and Amazon.com, Inc.

21               THE COURT:  Good afternoon.

22               MR. SKLARZ:  Good afternoon, Your Honor.  Jeffrey

23    Sklarz.  I represent approximately 21 individual clients.

24               Do you want me to state -- identify them all or --

25    it's identified on the docket.

1            THE COURT:  I think for right now we're fine and

2   then we'll go from there.  How's that?

3            MR. SKLARZ:  Thank you, Your Honor.

4            THE COURT:  Okay.  Thank you.

5            MR. LADDIN:  Good afternoon, Your Honor.  Darryl

6   Laddin of Arnall Golden Gregory on behalf of American Express

7   Company.  Mr. Ron Chorches, our Connecticut counsel, couldn't

8   be here today.  I appreciate the Court admitting me *pro hac*

9   *vice*.

10           THE COURT:  Good afternoon.  Welcome.

11           MR. CONWAY:  Good afternoon, Your Honor.  Michael

12  Conway, Lazare Potter Giacovas & Moyle, here today for Ari

13  America's, Inc.  I think that's the only one that's going to

14  be involved on this dance card.

15           THE COURT:  Good afternoon.

16           MR. PESCE:  Good afternoon, Your Honor.  Matthew

17  Pesce, Murtha Cullina, on behalf of 3 Columbus Circle, Baron

18  Yachts, and ModSquad, Inc.

19           THE COURT:  Good afternoon.

20           MR. PROSCIA:  Good afternoon, Your Honor.  Anthony

21  Proscia from Kaufman Dolowich, LLP, on behalf of four of the

22  avoidance action Defendants.

23           THE COURT:  Good afternoon.

24           May I stop you for a moment?  Attorney Sklarz and

25  Attorney that you just noted your appearance, I think what

1  I'd have you do at the end, not during the hearing, but if

2  you would reach out to the Clerk's Office appeared just

3  provide them a list --

4           You have a list already?

5           THE CLERK:  We have a list, Your Honor.

6           THE COURT:  -- of whom -- because, for the record,

7  and if anybody -- if any party wants a transcript, we have to

8  list all the people.  So, you don't have to do it right now;

9  we can do it later.  But anybody that is here that's

10 representing more than one Defendant that doesn't note that

11 for the record, I think we should proceed that way so that

12 the record is accurate.

13           THE CLERK:  Understood, Your Honor.

14           THE COURT:  Thank you.

15           Go ahead, Counsel.  Sorry.

16           MR. KOZLOWSKI:  Good afternoon, Your Honor.  David

17 Kozlowski with Morrison Cohen, representing Mark Gunderson, a

18 Defendant in an adversary proceeding.

19           THE COURT:  Good afternoon.

20           MR. KINDSETH:  Good afternoon, Your Honor.

21 Stephen Kindseth, Zeisler & Zeisler, for Mei Guo, Hudson

22 Diamond Holding, Hudson Diamond New York, Leading Shine New

23 York, Gypsy Mei Food Services, and Zeisler & Zeisler.

24           THE COURT:  Good afternoon.

25           MR. BERNARD:  Good afternoon, Your Honor.  Richard

1  Bernard, Faegre Drinker, on behalf of Cirrus Design

2  Corporation.

3              THE COURT:  Good afternoon.

4              MR. HELLMAN:  Good afternoon, Your Honor.  Jeffrey

5  Hellman, on behalf of Ohtzar Shlomo Solomon Treasure.

6              THE COURT:  Good afternoon.

7              MS. ZARCHIN:  Good afternoon, Your Honor.  Kara

8  Zarchin from Cummings & Lockwood, on behalf of Jamestown

9  Associates and Target Enterprises.

10             THE COURT:  Good afternoon.

11             MR. SENSALE:  Good afternoon, Your Honor.  Robert

12  Sensale for 270 West 39th Street LLC.

13             THE COURT:  Good afternoon.

14             MR. VALAURI:  Good afternoon, Your Honor.  Matthew

15  Valauri with Wilson Elser for Clayman Rosenberg Kirshner &

16  Linder, a Defendant in an adversary proceeding.

17             THE CLERK:  I'm sorry, I didn't get your last

18  name.

19             MR. VALAURI:  Oh, sorry.

20             THE COURT:  Could you just spell it for the

21  record.

22             MR. VALAURI:  Sure.  V, as in Victor, a-l-a-u-r-i.

23             THE COURT:  Thank you.

24             MR. GILBERT:  Good afternoon.  Benjamin Gilbert of

25  Sheppard, Mullin, Richter & Hampton, LLP, on behalf of Agor

1  Lab, Inc.

2          THE COURT:  Good afternoon.

3          MS. MOFFETT:  Good afternoon, Your Honor.  Rowena

4  Moffett from Brenner Saltzman & Wallman.  My client is

5  Morvillo Abramowitz Grand Iason & Anello P.C.

6          THE COURT:  Thank you and welcome.

7          MS. MOFFETT:  Thank you.

8          THE COURT:  Thank you.

9          MS. WILLIAMS:  Good morning or good afternoon.

10  Tracy Williams of Shipman & Goodwin.  I'm appearing today for

11  B&H Foto & Electronics.  I'm here today with Scott Kessler of

12  Akerman, LLP, who also has a *pro hac vice* application

13  pending.

14          THE COURT:  And when was that -- are you Attorney

15  Akerman.

16          MR. KESSLER:  Yes.

17          THE COURT:  When was that filed?

18          MS. WILLIAMS:  It was filed September, I think it

19  was the 19th.

20          THE COURT:  That was Friday, right?  I'm sorry, we

21  probably haven't gotten to it yet, but we'll try to get to

22  that today or tomorrow, probably, okay.  Thank you.

23          But you're welcome to be here, obviously.

24          MS. WILLIAMS:  Thank you, Your Honor.

25          MR. KESSLER:  Thank you, Your Honor.

```
 1              THE COURT:  Thank you.

 2              MR. MAJOR:  Good afternoon, Your Honor.  Chris

 3  Major, Meister Seelig & Fein, representing Hing Chi Ngok and

 4  potentially Greenwich Land, depending on how things shake

 5  out.

 6              THE COURT:  Good afternoon.

 7              All right.  We -- has everyone noted their

 8  appearance who wishes to do so?  Apparently, that is the

 9  case.

10              This is a status conference that was set upon

11  request of a joint motion of several parties who are

12  Defendants in mediation, in adversary proceedings that have

13  been referred to mediation.  The hearing was, for the status

14  conference, was scheduled to begin at 1:00 p.m., but I

15  understand the parties wanted some time to talk.

16              So, is there anything that the parties want to

17  report on?

18              MR. DESPINS:  Yes, Your Honor.  If I may approach

19  for two seconds before I turn over the podium to Mr.

20  Goldstein?

21              THE COURT:  Yes.

22              MR. DESPINS:  For the record, Your Honor, Luc

23  Despins, Chapter 11 Trustee.

24              I will turn over the podium to Mr. Goldstein in

25  two minutes, but just to mention that, obviously, we had a
```

1   deadline on February 15th to file all these actions and we

2   did file them.  And right away, we understood that they could

3   be, these actions could be a tremendous burden on the Court

4   and we wanted to try to manage that and minimize that, to the

5   extent possible.  That's why we proposed a mediation process,

6   which is ongoing.

7           However, we don't have, I would say, global,

8   positive results in the mediation.  We are presenting, from

9   time to time, settlements for the Court.  There are some

10  settlements, but it would be misleading to tell the Court

11  that we have an acceptance by a huge number of Defendants.

12          And in that context, the Defendants requested the

13  status conference to explore the issue of briefing on a

14  common basis, coordinated basis, efficient basis, some key

15  issues that they believe are key to the case, to these cases,

16  the adversary proceedings.  And I'm happy to report that

17  after, I wouldn't say too much back-and-forth, but after some

18  back-and-forth between the parties, that there's, there

19  appears to be a consensus on how to present this to the

20  Court.

21          And, obviously, it's Your Honor's prerogative to

22  agree or not agree with this, but I'm happy to report that

23  there's been a lot of progress made.  And on that note,

24  unless you have questions, I will turn over the podium to Mr.

25  Goldstein, who will describe the terms of this proposed

1  agreement.

2          THE COURT:  The only question I would have, at

3  this point, of you, which I may be more, is whatever this

4  consensus is, which I'm happy to hear about, and assuming

5  that it's acceptable, is that going to be somehow -- that

6  will have to be somehow put together in some form of order,

7  because it would be managed the existing mediation

8  procedures, I presume?

9          MR. DESPINS:  Yes, Your Honor.

10          So the idea is that because we came to terms just

11  a few minutes ago, the final terms, we hope a proposed

12  stipulation will be submitted to the Court tomorrow, but the

13  idea is that Mr. Goldstein will describe in a lot of details,

14  the terms of that stipulation today.

15          THE COURT:  Okay.  Thank you.

16          MR. DESPINS:  Thank you, Your Honor.

17          Attorney Goldstein?

18          MR. GOLDSTEIN:  Thank you, Your Honor.

19          I'm going to use this podium, because trying to

20  see my computer from down there is going to be a challenge.

21          So, as Your Honor noted, this was brought by

22  about 24 Defendants in a number of the adversary proceedings

23  that are engaged in the mediation.  One of the challenges

24  that we had with it, there were very similar claims pending

25  before this Court which were coming up for hearings on

1  dispositive motion practice, some as soon as October 1.  So,

2  the purpose of the request for a status conference was a way

3  for us to, in a group way, to put forward a consolidated

4  briefing process to allow our clients to be heard,

5  contemporaneous with these others, and in an efficient manner

6  to have some discrete legal issues decided, which would help

7  the cases.

8           And so, as I mentioned, there were 24 Defendants

9  that signed on to the request for the status conference.

10  Since then, there are four other adversary Defendants that

11  are going to participate in this process, which includes

12  both, American Express, the two Amazon entities, and then

13  another Defendant, Flat Rate Movers.  So, we're up to a total

14  of 28.

15           THE COURT:  The last four that you mentioned, and

16  I have no idea sitting here, obviously, are those people in

17  this courtroom?

18           MR. GOLDSTEIN:  Yes.

19           THE COURT:  Okay.  And they announced their

20  appearances?

21           MR. GOLDSTEIN:  Yes, with the exception of the

22  Flat Rate Movers; they're represented by the law firm, Norris

23  McLaughlin.  They happened to call me yesterday and said

24  they'd like to participate, but were unable to be here today.

25           So I said, I will let the Court know that you

1   would like to participate, but that you could not be here

2   today --

3            THE COURT:  Okay.  Thank you.

4            MR. GOLDSTEIN:  -- and I've done that.

5            So, Your Honor, let me explain what we've

6   discussed with the trustee and the trustee's counsel.  We

7   discussed that the joint Defendants, in this procedure, would

8   file one memorandum and it would be addressed to a motion to

9   dismiss or a motion for judgment on the pleadings for a

10  handful of them that have already answered.  But it will be

11  one brief that will cover, by all of us, which would cover a

12  discrete set of legal issues, which I will go through in a

13  second.

14           In addition, each joint Defendant, to the extent

15  they want to put forward any additional legal argument on

16  those same five discrete legal issues, can have a

17  supplemental brief of up to 7 pages.  Frankly, I don't know

18  how many of the joint Defendants would take advantage of

19  that, but it could be that a number of them do.

20           THE COURT:  If they're allowed to.

21           MR. GOLDSTEIN:  If they're allowed to.

22           All the other bases for any kind of motion to

23  dismiss or motion for a judgment on the pleadings, would be

24  reserved for another day, with the idea, here in discussions

25  with the trustee, was to just get to the common legal issues

 1  that cut across all of these adversary proceedings.

 2              And we also discussed with trustee's counsel that

 3  the briefing would not involve a number of partially stayed

 4  matters, which I think largely relate to entities formed in

 5  BVI and I think Puerto Rico.  They'll correct me if I have

 6  any of that wrong, but --

 7              THE COURT:  So the Defendants on Exhibit 3-B?

 8              MR. GOLDSTEIN:  Yes, I believe that is the right

 9  exhibit.

10              THE COURT:  That is the right exhibit, I'm almost

11  sure.

12              MR. GOLDSTEIN:  Okay.  Just those that are

13  partially stayed, those claims will remain stayed and so

14  those will kind of sit to the side.  And so, the briefing

15  will have to do with anything other than that.

16              I think what makes the most sense is to, and to

17  help Your Honor kind of consider this, we just talk a little

18  bit about the common legal issues that we talked about

19  amongst ourselves.

20              THE COURT:  And I'm happy to hear that.  I want to

21  start by saying you're saying there's five; is that correct?

22              MR. GOLDSTEIN:  Correct.

23              THE COURT:  And this is the position of the joint

24  Defendants, that there are five legal issues?

25              MR. GOLDSTEIN:  Correct.

1        THE COURT:  And then the trustee is saying, okay,

2  go ahead and brief those five issues --

3        MR. GOLDSTEIN:  Correct.

4        THE COURT:  -- and then the trustee is going to

5  respond?

6        MR. GOLDSTEIN:  Correct.

7        THE COURT:  Okay.  And so, I am not inclined to

8  allow anyone to raise anything, other than these five legal

9  issues, if I even go down this path, because the papers, as

10  submitted, talk about issues that, these are motions to

11  dismiss.  The standard on a motion to dismiss is that I have

12  to accept the allegations, as well-pled.  I'm not going to be

13  spending a lot of time having people argue about factual

14  issues.  If they're not truly legal issues, then I'm not

15  going to entertain them, okay, and I just want to be very

16  clear about that from the start.

17        I understand people have concerns and want those

18  issues to be addressed, but these are adversary proceedings

19  in which people are Defendants and you have rights and

20  processes under the Federal Rules of Civil Procedure.  So I

21  would like to hear what these five legal issues are and then

22  I'll hear what else the trustee may have to say or someone

23  else may have to say.

24        But the argument that someone else can then submit

25  a supplemental brief on some other discrete issue, I don't

1   think that's going to work, if this process is going to go

2   forward.  So I just wanted you to know that at this point.

3           MR. GOLDSTEIN:  Thank you, Your Honor.

4           And I think -- let me clarify one thing.  The

5   supplemental brief is not to raise a new issue.  It would

6   only be to -- there may be a different spin that somebody

7   wants to put on --

8           THE COURT:  Well, a different spin would probably

9   be factual and that's not a legal issue for the Court to

10  decide.  So I'm not going to let someone put a different

11  spin.

12          If we're all going to do this jointly, it's going

13  to be joint, and there'll be five, maybe, issues that the

14  Court will entertain.  So I just want to be clear from the

15  start, that is not how this is going to work.

16          The Court has to worry about -- by the way, and

17  everyone who's been here before, and who hasn't been here

18  before, knows these issues have been teed up in certain ways

19  before today, with regard to hearings on the motion to extend

20  time for the statute of limitations and on the motions for

21  avoidance procedures.  We've been through hearings on these.

22  These are not issues that necessarily could not have been

23  raised already by the parties.

24          So while you have a consensus on how to proceed,

25  and I appreciate that, that doesn't necessarily mean that I'm

1    going to agree with how you've decided that you all think you

2    can proceed, because the Court has to worry about the

3    management of these actions as a whole.

4              So I'd like to get to the five legal issues that

5    are going to be, that you believe are common legal issues

6    that the Court could decide.

7              MR. GOLDSTEIN:  Sure.  So the five legal issues

8    that we talked about, and I'm going to frame this -- we

9    discussed this with the trustee -- this is the Defendants'

10   language.  They don't necessarily agree with that any of this

11   is a concession or anything on their part.  So with that

12   framing, the first issue would be, can the trustee avoid an

13   initial transfer by a nondebtor entity?

14             THE COURT:  That's a legal issue?

15             MR. GOLDSTEIN:  Yes.

16             THE COURT:  Can the trustee avoid an initial

17   transfer by a nondebtor?

18             MR. GOLDSTEIN:  Yes.

19             THE COURT:  That's a legal issue?  Okay.

20             Can the trustee avoid an initial transfer by a

21   nondebtor, okay.

22             MR. GOLDSTEIN:  And the second one is, does

23   applicable law allow for reverse veil-piercing or alter-ego

24   determination?

25             THE COURT:  Okay.  Hold on.  Hold one second on

1   that.

2          MR. GOLDSTEIN:  Yeah.

3          THE COURT:  Does applicable law do what?

4          MR. GOLDSTEIN:  Allow for reverse veil-piercing or

5   alter-ego determination?

6          THE COURT:  Well, I've already made alter-ego

7   determinations, so how could that possibly be a determination

8   of law?  I've already made them in this court, some of which

9   are final and haven't been appealed.

10          So with regard to, does applicable law allow

11   reverse veil-piercing, I've already found that it -- I've

12   already talked about it.  And all the law that talks about

13   reverse veil-piercing depends upon the facts that underlie

14   the transaction that might be subject of the reverse veil-

15   piercing.

16          So I understand your point, but, first of all, I

17   don't understand the second part, does applicable law allow

18   alter-ego claims; is that what you were saying?

19          MR. GOLDSTEIN:  Yes.

20          THE COURT:  Okay.  That is not an issue that -- I

21   don't understand how that's an issue of law.

22          What state do we know of that doesn't allow veil-

23   piercing claims?  And don't we all agree that Delaware law

24   applies?  So what's in dispute with regard to that?  That, I

25   don't even understand remotely.

1        MR. GOLDSTEIN:  Yeah, I think the issue would be

2   that this would be the instance where creditors have had

3   their first -- where folks who are creditors or transferors

4   of these alter-ego entities have not had an opportunity to

5   discuss what would be the, you know, what's the impact on

6   them.

7        THE COURT:  What difference does that make,

8   ultimately?  If you get to your point of your responsive

9   pleading, you can argue in your responsive pleading that the

10  Court misapplied the law or whatever you -- but to issue, to

11  have me have briefs submitted and have me rule on whether

12  applicable law allows for veil-piercing, that, to me, is a

13  waste of time.

14       I've already found that in many -- in one of the

15  decisions in the Golden Spring case, it hasn't been appealed.

16  So it's the law of the case that alter-ego law applies.

17       And I understand that there's a desire to try to

18  move together in a certain manner, but I'm not going to allow

19  parties to move together in a certain manner on an issue on

20  which there is no dispute.  There is no dispute that alter-

21  ego law applies.

22       Whether or not you agree with that is a different

23  issue; that's not a legal issue.  Show me anywhere where any

24  law says where you can find a case that says that alter-ego

25  doesn't apply.  You know why it would say that?  On the facts

1   of the case, so it's not a legal issue.

2           MR. GOLDSTEIN:  The -- okay.  Well, if you turn to

3   the next one, which I think is, what is the effect under

4   applicable law of reverse veil-piercing on an alter-ego

5   determination?

6           THE COURT:  And isn't that a factual issue?

7           MR. GOLDSTEIN:  That, Your Honor, is a legal

8   issue.

9           THE COURT:  How is it a legal issue?  If you look

10  at all the cases that have acknowledged reverse veil-

11  piercing, by the way, and they're in the Delaware Chancery

12  Court, the Southern District of New York Bankruptcy Court,

13  the Fourth Circuit, the Connecticut District Court, Judge

14  Meyer found that Delaware would apply reverse veil-piercing

15  law.

16          And what did they do to make that determination?

17  They went through facts and they said, These are the facts

18  that the Court would have to find in order for there to be

19  reverse veil-piercing.  That's what the cases cite, and they

20  say, on a motion to dismiss, those claims would stand a

21  motion to dismiss.

22          Now, at the trial, the trustee may not be able to

23  prove all of those things, but to argue that somehow that is

24  a legal issue, what the effect is, the effect is whatever the

25  effect if reverse veil-piercing is found, right?  So that's a

1  factual issue; it's not a legal issue.  And I'm not going to

2  allow the parties to try to take factual issues and allege

3  that they're legal issues, because they're not.

4        MR. GOLDSTEIN:  May I articulate it a little

5  differently and see if I -- the law in different

6  jurisdictions, based on my review, is a little different,

7  depending on if you make a determination that the corporate

8  veil is going to be pierced, right, or if we're going to

9  ignore it.  In some jurisdictions, there's a view that it

10  just creates vicarious liability.

11        THE COURT:  Right.

12        MR. GOLDSTEIN:  In other jurisdictions, there's, I

13  think they call it the "identity theory," where you

14  essentially mush everything together, including assets.

15        And I think the legal question that we would

16  raise, and what I meant by this was, what is the legal effect

17  in Delaware, for example?

18        THE COURT:  The legal effect in Delaware depends

19  upon the facts of the case.  And if you look at the most

20  recent Delaware Chancery Court case about reverse veil-

21  piercing from outsider, it endorses only outsider veil-

22  piercing, and it's when the trustee is -- this is -- the

23  trustee is a judgment creditor; he's already gotten judgments

24  which are final that are no longer appealable.  He's a

25  judgment creditor, so under 544(a), he's a judgment creditor.

1   It's not insider reverse veil-piercing; it's outsider reverse

2   veil-piercing.

3          And the Delaware Chancery Court has said that they

4   have to look at the facts to make that determination, to

5   determine whether or not that there are, that this -- that

6   the doctrine should be applied to, as a deterrent so that the

7   parties can't shuffle their assets among their controlled

8   entities with the express purpose of avoiding a judgment.

9          MR. GOLDSTEIN:  Uh-huh.

10          THE COURT:  And every cause of action that the

11   trustee has brought on the avoidance claims, he brings as a

12   judgment creditor.  It's not even as a hypothetical judgment

13   creditor; it's as a judgment creditor.

14          So, I don't -- I'm still struggling with, where's

15   the legal issue?

16          MR. GOLDSTEIN:  Well, yeah.  And it would be based

17   on the allegations, which would be taken as true, which are

18   generally very consistent between the complaints that are

19   made against all the joint Defendants.  If those are taken as

20   true, under the applicable law, most of the -- almost all

21   cases here will be Delaware, would those facts, if true,

22   result in a conglomeration of the assets as into one or

23   vicarious liability under applicable law.

24          THE COURT:  Well, doesn't that have to happen once

25   we get to that point; meaning, that the trustee would have to

1  prove it?

2          MR. GOLDSTEIN:  If Your Honor were to say, You

3  know what?  If I take all of these allegations as true and,

4  okay, and I look at what Delaware law says, well, then, it's

5  really just -- it's vicarious liability, as opposed to the

6  identity theory.  And then, in that instance, well, then that

7  could be dispositive of the, for example, a 549 claim,

8  because, then, it couldn't possibly be property of the estate

9  that was transferred.

10          So that's -- I mean, maybe I'm doing a poor job of

11  articulating, but that was the legal --

12          THE COURT:  I don't think you're doing a poor job,

13  I just don't know that I agree.

14          MR. GOLDSTEIN:  Okay.

15          THE COURT:  Okay.  I mean, I think what -- if we

16  go back to what was number two --

17          MR. GOLDSTEIN:  Yeah.

18          THE COURT:  -- I think you said, so please correct

19  me if I'm wrong, that the second legal issue is, does

20  applicable law allow reverse veil-piercing?  And I've just

21  cited to you a bunch of cases, a number of cases, including a

22  Delaware Chancery Court case from 2021, which does, and then

23  the second part of yours was, whether applicable law allows

24  for alter-ego claims.

25          And I've already found in this case that the

1 | trustee has succeeded on an alter-ego claim, at least with
2 | regard to the Golden Spring entity, and that is a final, non-
3 | appealable order at this point.  Nobody appealed that.

4 | So I'm struggling with understanding what it is
5 | that you would expect the Court to rule on when I've already
6 | ruled.

7 | MR. GOLDSTEIN:  Well, one, I think our position
8 | would be -- and you're not going to be surprised at --
9 | because we -- these Defendants were not parties to any of
10 | those cases that that's now law of the case.  You may
11 | ultimately get to the same place anyway, but, again --

12 | THE COURT:  Most of the time in bankruptcy cases
13 | when rulings are made, the Defendants in avoidance actions
14 | were never parties to those cases.  I'd like to see a time
15 | when it was.

16 | This is an avoidance action under the trustee's
17 | powers that Congress provided -- not the Court -- Congress
18 | provided.  This is not an unusual circumstance and I guess
19 | I'm struggling with trying to understand why parties think it
20 | is.

21 | MR. GOLDSTEIN:  Well, I would say an avoidance
22 | claim being brought against the recipient of a transfer of a
23 | nondebtor that happens --

24 | THE COURT:  Well, the nondebtor has been found to
25 | be the alter-ego.  So it's not a nondebtor; it's a debtor.

1  If it's the alter -- what would happen under Connecticut law

2  if you sued a corporation and then you had -- you pierced the

3  corporate veil to get to its individual owners.  If the

4  individual owner made the transfer, you, as the lawyer for

5  that corporation, you would go after that individual and

6  you'd say, Give me back that money.  You made that transfer.

7  You just used the corporate structure as a shield to defraud

8  everyone and avoid and be judgment-proof.

9            That's what you would say, right; wouldn't you

10  argue that?

11            MR. GOLDSTEIN:  It would depend, you know, if the

12  transfer was made before or after.  It would depend if the

13  transfer was made --

14            THE COURT:  It would depend, wouldn't it?  That's

15  a fact.  Isn't it a fact?

16            MR. GOLDSTEIN:  Well, again, if you take all the

17  facts as true in the complaint and then make a determination

18  whether or not the law allows for what's being proposed,

19  right.  That's the point of a Rule 12(b)(6) motion or a

20  motion for judgment on the pleadings.

21            And an additional legal issue, which you may or

22  may not agree with, is the ability to do so *nunc pro tunc*,

23  which is another major issue.

24            THE COURT:  I don't understand that argument at

25  all.

1          MR. GOLDSTEIN:  Well --

2          THE COURT:  If you breached a contract on

3    January 1st, 2015, and Trustee Despins sued you on

4    January 1st, 2016, and the Court, on January 1st, found,

5    2017, that you breached the contract in 2015, that's not *nunc*

6    *pro tunc*; that's the Court found that that happened.

7          And what I've found in these cases is that the

8    debtor, that the entity is the alter-ego of the debtor.

9          MR. GOLDSTEIN:  Okay.  Well, that is nunc --

10   here's the hypothetical.  If I'm a trade creditor of Acme

11   Corporation, right, which is unrelated to a debtor, I'm a

12   trade creditor, I'm just doing business with Acme

13   Corporation.  I have no clue Acme Corporation may have some

14   interrelationship or have some involvement with the debtor

15   and I'm doing business with them.  I'm providing my goods and

16   services and they're paying me for it.

17         Now, all of a sudden, two years go by and you're

18   getting sued because Acme Corporation wasn't Acme

19   Corporation.  Acme Corporation was Mr. Kwok, right?

20         THE COURT:  Yeah.

21         MR. GOLDSTEIN:  That's a different set of facts.

22         If, for example, Acme Corporation --

23         THE COURT:  It may not be if a Court has found

24   that Acme Corporation and Mr. Kwok were one in the same.

25         MR. GOLDSTEIN:  But that --

1          THE COURT:  It happens all the time.  This is

2   not -- to say it's *nunc pro tunc*, every creditor, no matter

3   whether there's -- every creditor takes a risk at some point

4   that they might be sued on a preference or fraudulent

5   conveyance claim.  Every creditor's lawyer knows that.  Every

6   creditor's lawyer counsels their clients about that.

7          This isn't -- the stretch of saying that it's *nunc*

8   *pro tunc* because the Court found during a proceeding

9   involving the debtor, individual debtor, that its corporate

10  entities are the same as the debtor, show me a case on that

11  because I don't -- I just don't see it at all.  And I think

12  it's a stretch and I think it could be not a good use of

13  Court time.

14         MR. GOLDSTEIN:  The difference is, is that we're

15  years later, disregarding the corporate form of an entity,

16  unbeknownst to third parties who had no notice --

17         THE COURT:  But that always happens.

18         Even if Mr. Kwok was the one who gave you the

19  money, you had no idea when he gave you the money that he was

20  going to be found guilty of whatever, you have no idea, so

21  how is it any different?

22         MR. GOLDSTEIN:  And not only the corporate forms

23  being disregarded, but they would now be under the auspices

24  of Title 11 as a debtor.  So if I --

25         THE COURT:  Well, that's the only way these

1  actions are brought.

2         MR. GOLDSTEIN:  In a trade creditor knew those

3  things, they could come to -- they could make a determination

4  and say, Is this a 363 ordinary course transaction?  If they

5  had concerns, they go to the bankruptcy judge and get a

6  comfort order or the judge says, No, this isn't ordinary

7  course.  And then the trade creditor has the opportunity to

8  stop doing business with them and not expose them.

9         This is changing the set of facts that existed

10 when they were dealing with the corporation to what's now

11 happening two years later.  That is changing the facts of the

12 world.

13        THE COURT:  Yeah, and that's what happens every

14 time someone gets sued for a preference or a fraudulent

15 transfer, because it changes the course of fact.  No creditor

16 ever thought that they were going to be sued for a preference

17 or a fraudulent transfer.

18        MR. GOLDSTEIN:  Which is why Congress has

19 defenses, like the ordinary course defense, the subsequent

20 new value defense, the contemporaneous exchange for value.

21        THE COURT:  And you can still raise all these

22 defenses.

23        MR. GOLDSTEIN:  Not in a 549 case.  That's a

24 different animal.  In a 547 and a 540 --

25        THE COURT:  Well, that's because it's a post-

1  petition transaction.

2          MR. GOLDSTEIN:  Exactly.

3          THE COURT:  Right.

4          MR. GOLDSTEIN:  Exactly.  That's my --

5          THE COURT:  But when you say that, though --

6          MR. GOLDSTEIN:  Uh-huh.

7          THE COURT:  -- under the facts of this case when

8  you say that, if any creditor was paying attention to what

9  was going on, who -- it's, again, no matter whether it's a

10 post-petition or a prepetition, it's still a risk that every

11 creditor takes.  At any time a creditor deals with any

12 entity, it takes a risk, whether there's a bankruptcy

13 proceeding or not.

14         MR. GOLDSTEIN:  Sure.  I think there's, I think,

15 to me, I'm getting a little far afield because my clients are

16 mostly 549 Defendants, but --

17         THE COURT:  Okay.

18         MR. GOLDSTEIN:  -- 547 has -- Congress has

19 defenses for people who deal with it and somebody who may

20 wind up in the next 90 days to become a debtor.

21         548 has defenses that help creditors deal with

22 somebody who may become a debtor in the next two years in

23 state law, for four years, good faith and value defenses.

24         THE COURT:  And all of the cases involving, I

25 think, all these clients, but I could be wrong, so you can

1  correct me, but I think every single one of these was filed

2  before the statute of limitations, so there's no issue that

3  there isn't a statute -- that there's a problem with the

4  statute of limitations.  These are all avoidance actions.

5          MR. GOLDSTEIN:  No, and I didn't raise anything

6  with regard to statute of limitations.  I was just explaining

7  that there are defenses for 548 claims, 547 claims that kind

8  of protect the ordinary course of business relationship of

9  vendors and folks who may wind up being debtors in the next

10  few days, months, or years.

11          549 is a different animal, right; 549 is, hey,

12  you're in bankruptcy and because you're in bankruptcy, you

13  can do things in the ordinary course of business or you have

14  to have a judge approve everything you do in the ordinary

15  course of business.  That's a completely different world than

16  when you're dealing with Acme Corporation, who you are

17  providing a service to or selling goods to.  It's just

18  different.

19          And our view is that saying that they're alter-ego

20  years later or it's essentially substantive consolidation,

21  right, I mean, you're taking their assets and their

22  liabilities and smooshing it together with the debtor years

23  later.  So I know Your Honor may not agree, but, I mean,

24  that's our viewpoint, I think, for most of the joint

25  Defendants.

1           THE COURT:  On *nunc pro tunc*?

2           MR. GOLDSTEIN:  Yes, on *nunc pro tunc*.

3           THE COURT:  Okay.

4           MR. GOLDSTEIN:  And then the last issue is one

5 that doesn't apply to my clients.  It's not something that we

6 would be raising, because it's inapplicable.

7           THE COURT:  I'm up to four.  Are you up to five?

8           MR. GOLDSTEIN:  I'm up to -- the *nunc pro tunc* was

9 number four.

10          THE COURT:  All right.  So, then, you -- did you

11 break number two, veil-piercing and alter-ego into two

12 different or was it one?  That's the way -- I may have

13 misheard you, so...

14          MR. GOLDSTEIN:  Yeah, let me just recap, because

15 we've had a long colloquy.  So, we (indiscernible) where we

16 are.

17          So, one was, can the trustee avoid an initial

18 transfer by a nondebtor entity?  Two was, does applicable law

19 allow for reverse veil-piercing or alter-ego?  Three was,

20 what's the effect of --

21          THE COURT:  Oh, you're right.  I forgot to put

22 that down.

23          MR. GOLDSTEIN:  -- of applicable law?  And then

24 four is can you do it *nunc pro tunc* or retroactively?

25          THE COURT:  So let's just do three again.  What is

1    the effect of if there is a finding of reverse veil-piercing?

2           MR. GOLDSTEIN:  Yeah, exactly, Your Honor.

3    Exactly.  Exactly.  Is it vicarious liability or is it that

4    identity or unit theory -- I forget what it's called -- where

5    you mush the assets together.

6           Then the last issue, which, a caveat is not one

7    that applies to my clients, but there are certain Defendants

8    who have not signed a protective order and so they don't know

9    the dates or specifics about the transfers and they want to

10   allege --

11          THE COURT:  Well, I think that was all dealt with

12   in the mediation procedures order, wasn't it?

13          MR. GOLDSTEIN:  I take no position on it issue.

14          THE COURT:  I understand, but that's my

15   recollection.

16          MR. GOLDSTEIN:  I take no position on the issue.

17   I'm merely the messenger on that one.

18          So, Your Honor, those were the five common issues

19   that we discussed with the trustee and the idea would be, to

20   the extent it's acceptable to the Court, would be one common

21   brief, which we'd have a common brief of 50 pages for the 28

22   or so of us.

23          Oh, I'm sorry.  One other thing.  We think that

24   there may be a few more similarly situated Defendants who

25   would maybe want to participate jointly in this one brief and

1  so we would, if this process was amenable to the Court, we

2  would, in the order, say you've got seven days to file

3  something to say, I want to participating in this.  And then,

4  if so, they would be part of this common brief.

5        THE COURT:  And you're going to serve that order

6  if that happens, you, or someone on behalf of the joint

7  Defendants, because that's what would have to happen?

8        MR. GOLDSTEIN:  Yeah.

9        THE COURT:  Because everyone's been on notice of

10  all of these things, by the way --

11        MR. GOLDSTEIN:  We --

12        THE COURT:  -- for some time.  And I'm not going

13  to start protecting people that don't protect themselves.

14        MR. GOLDSTEIN:  A hundred percent.

15        Yeah, the Defendants can -- we can -- you know,

16  most of the people should be seeing this stuff anyway, but we

17  can certainly email it around to anybody who's represented a

18  Defendant in these cases.  But I do certainly know for some

19  folks who have come out since we filed the request for status

20  conference that they did want to participate.  For example,

21  American Express is here today.  Amazon is here today and

22  Flat Rate Movers.  I suspect there might be one or two more.

23        So what we would do --

24        THE COURT:  Fifty pages seems like a lot for those

25  issues, especially the last one.

1          MR. GOLDSTEIN:  The --

2          THE COURT:  Defendants who have not signed a

3    confidentiality order?  I mean, that's what the Federal Rules

4    of Civil Procedure are about, right?  The lawyers are

5    supposed to work that out and it shouldn't be the Court's

6    issue.

7          MR. GOLDSTEIN:  The --

8          THE COURT:  So I think 50 pages is a lot on those

9    issues.

10          MR. GOLDSTEIN:  Yeah, the thinking for the

11   additional, more than your typical pages, is just because we

12   are dealing with a good number of Defendants.  I didn't know

13   if we would have to go beyond Delaware law, but where maybe

14   one other jurisdiction's law that we would have to touch on.

15   Yeah, I think maybe one other jurisdiction's law.

16          And we probably don't maybe need all the 50 pages,

17   but it was rather than come and bother you, again, for more

18   pages if we needed to, just ask for more.  Certainly, if you

19   want to trim us back, so be it.

20          And, essentially, what we would have is a

21   mirroring page limit for the trustee.  So, you know, if we

22   have 50 pages for the common brief, 7 pages, (indiscernible)

23   was going to do the supplemental, which we talked about

24   before, which Your Honor may not authorize, and then the

25   trustee would have 50 pages, plus 7 pages for any

1  supplemental, like, if it even got submitted.  So we would

2  just mirror each other.  And then on the, the reply would be

3  for the joint Defendants would be 25 pages and then 5 pages

4  for any supplemental, but Your Honor may not authorize that.

5          And then the mechanics that we talked about, we

6  didn't -- what we could do is just file the relevant motion

7  in each of our individual adversaries and then file the

8  common brief in each of the individual adversaries so we

9  could have it.

10         THE COURT:  Well, I don't think that if we do

11  that, that that makes sense either.  This is, you'd be

12  amending an order entered in the main case, with regard to

13  mediation procedures.  So, we have, you know, 3500 docket

14  entries in the main case and then we have 270 adversary

15  proceedings with (indiscernible).  So, no, I mean, the point

16  is to, if we're doing this, is it make it easier and more

17  streamlined.

18         MR. GOLDSTEIN:  Yeah.  The other option, you

19  caught me on, was first off, what we would do if Your Honor

20  accepts, this would be -- we would put together an order that

21  would just go on the main case docket.  Done.

22         The other option, a way we could do this is, we

23  could just file, just put it on the main case docket, you

24  know, the common brief.  We just didn't know how best, you

25  know, the Court wanted to track this.  If the Court didn't

 1  want this filing in 28 different adversaries, we could put it

 2  in the main case.

 3          Another idea we had was some of the lawyers on the

 4  joint defense group had an experience where a miscellaneous

 5  docket just gets created just to put --

 6          THE COURT:  We don't need a create a miscellaneous

 7  docket.  It can be an amended order with another exhibit

 8  attached to it, that all these parties are joint Defendants

 9  and these are the adversary proceeding numbers to which they

10  apply.

11          MR. GOLDSTEIN:  And then the motion to dismiss,

12  the motion for judgment of pleadings, where would Your Honor

13  want that filed?

14          THE COURT:  Well, what -- you're going to file a

15  joint motion, right?

16          MR. GOLDSTEIN:  Some folks would do a motion for

17  judgment on the pleadings, again, if they filed an answer.

18  Most of them will do motions to dismiss, yes.

19          THE COURT:  Well, I'm not going to do 28 motions

20  to dismiss.  If we're going to do that, then there's no point

21  in this.

22          MR. GOLDSTEIN:  No, no, no.  We would have a

23  brief, like, we would have a two-page motion and then a

24  memorandum of law, which would be the common brief.  We

25  just -- I didn't know how Your Honor wanted to track that.

1          We could do it through, like, or we could just

2   submit the common brief and just refer to the Court's order.

3   We could slice that a bunch of different ways.

4          THE COURT:  Yeah, I don't know, sitting here, yet,

5   but I would most likely just have one motion filed in the

6   main case that applies to all the Defendants who are asking

7   for this relief and that's how it would be handled.

8          MR. GOLDSTEIN:  Perfect.

9          THE COURT:  Because, otherwise, there'd be 28

10  motions, which, if we're going down that path, then that

11  doesn't make any sense.

12         MR. GOLDSTEIN:  The idea here is simplicity.

13  Wherever we can make simplicity, that's a good thing.  So

14  that's -- we can make that work.

15         And then the last part of our discussion with the

16  trustee was just to, again, in the sense of consolidating and

17  simplicity was to have just one, like, oral argument on these

18  common issues, along with the oral arguments on the -- there

19  are a couple of cases that are pending where these similar

20  issues are already afoot, we could have those all kind of

21  heard together, just in one fell swoop on one particular day

22  and then just be done with them.

23         And so those cases, those motions to dismiss that

24  are pending, would just be held until one oral argument would

25  be held across all of them, along with this joint defense

1   group.

2           THE COURT:  All right.

3           MR. GOLDSTEIN:  And I think that's it for me.  I'd

4   invite others --

5           THE COURT:  Assume I agree with you, when are you

6   going to file your common brief that's going to be 50 pages

7   or less?

8           MR. GOLDSTEIN:  Oh, I'm sorry, if I missed that.

9   I'm sorry if I missed that.

10          We agreed to within 42 days.  So, we would have --

11          THE COURT:  Well, it's not going to be 42 days.

12  I'm not going to do that, okay.  These cases are proceeding

13  forward.  We're not -- you don't get 42 days to do a motion

14  to dismiss, so you're not getting 42 days to do a brief on

15  common issues that you've been talking about for some time.

16  That's not going to happen, so I just want to be very clear

17  about that.  It's not going to be 42 days.

18          So, if I agree to do this, it's much more likely

19  going to be 21 days, like the normal Federal Rules of Civil

20  Procedure.  And then we can -- but anyway, go ahead --

21          MR. GOLDSTEIN:  No, no, that's fine.

22          THE COURT:  -- you asked for 42 days.

23          MR. GOLDSTEIN:  Let me just describe the process.

24  The order would enter.  Folks would have another seven days

25  to say, Hey, we want to participate or not, and then the

1    brief would be 42.  If Your Honor wants it in 21, we'll do it

2    in 21.

3              THE COURT:  The other parties, whether they want

4    to participate or not, it shouldn't impact the time for a

5    brief.

6              MR. GOLDSTEIN:  That's fine.

7              And then we had agreed with the trustee that, you

8    know, they could file it within 42, but --

9              THE COURT:  That won't happen here.

10             MR. GOLDSTEIN:  -- whatever Your Honor wants to do

11   there.  And then with regard to the reply, we had 21 days for

12   our reply, but if Your Honor wants to shorten that up

13   to 14 --

14             THE COURT:  I think if we go down this path, it

15   will -- all of this -- if we go with the time frame that

16   you've suggested, we're going into January.

17             MR. GOLDSTEIN:  That's correct.

18             THE COURT:  And that's not going to happen.

19             MR. GOLDSTEIN:  Okay.

20             THE COURT:  This case has been pending since

21   February of 2022.  We're not -- that's not happening.

22             MR. GOLDSTEIN:  All right.  So I think, then, now,

23   let me just check, but I think we've covered everything in my

24   notes, so I will yield at this point, unless Your Honor had

25   questions for me.

1          THE COURT:  If we go down this process, which I
2   have to consider, by the way.
3          MR. GOLDSTEIN:  Uh-huh.
4          THE COURT:  Obviously, I had no idea what you were
5   going to say, so I have to think about it.
6          When you say you have one oral argument in one
7   fell swoop, I'm not allowing 28 lawyers to make an argument
8   that's going to be the same argument.
9          MR. GOLDSTEIN:  Correct.
10         THE COURT:  That's not going to happen either; if
11  we go down that path, I'm being very clear about this.  And I
12  don't even know if I would allow oral argument.  It's legal
13  issues.  Would could oral argument add?  What could be added
14  by oral argument on a legal issue?  It either is or it isn't.
15  So I'm not sure about that either.
16         What I do need to know, Trustee Despins, is I know
17  you've said there's a consensus on how this is subject to the
18  Court approval, but what happens to the hearings that are
19  coming up on October 1st and October 8th, and I think there's
20  another one after that, too, on the pending motions to
21  dismiss in adversary proceedings that are not in mediation
22  and are excluded from mediation?
23         MR. DESPINS:  Yes, Your Honor.  I was going to
24  come up here to raise that.
25         The goal of this, I know, initially, you don't see

1  this as progress, but from my perspective, any Defendant can

2  file any brief and argue any theory in the world they want.

3  If we can consolidate them in one brief, that's progress.

4          All the arguments you made, Your Honor, we've made

5  them, so at the end of the day, they're entitled to file a

6  brief.  If we can consolidate them, that's good, because it

7  saves you time, it saves us time, and it's more efficient.

8          Now, on your issue, the idea is that nobody is

9  going to go forward on these global issues, on motions to

10 dismiss based on the points that Mr. Goldstein raised.  The

11 order we would submit to you would provide that all --

12 everyone is now at the same pace, meaning that if you've

13 already filed a brief, there's no oral argument on

14 October 1st.  It will be at the time that the global oral

15 argument is -- takes place.  And if you have --

16          THE COURT:  If there is a global oral argument.

17          MR. DESPINS:  If there is one, yes.

18          So the idea would be everyone gets stayed to match

19 this new schedule.  I'm happy to answer any other questions

20 you may have, Your Honor.

21          THE COURT:  I don't know that I have any

22 questions.

23          We had a process in place.  It was amended.

24          MR. DESPINS:  Yeah.

25          THE COURT:  It's not seeking to be further

1   amended, where parties who are in mediation are now centrally

2   staying matters that aren't in mediation and then these

3   issues that you want to raise, if they're truly legal issues,

4   then I don't see that there's a need for oral argument.  What

5   would the -- there's no need for it and that would not be a

6   good use of the Court's time, as well.

7           As you know, and I've stated already, we're up to

8   almost 4,000 docket entries in this case.  The Court has an

9   obligation to manage the docket appropriately of this case

10  and all the other adversary proceedings.  This isn't going to

11  be here 10 years from now.  It needs to be appropriately

12  managed, and so I need to reflect upon what you've both said

13  and determine what, if anything, I'll allow.

14          MR. DESPINS:  I guess the way to look at this,

15  Your Honor, is let's look at the alternative.  First of all,

16  the people who have oral argument scheduled for October 1st,

17  they're Defendants.  I don't think they're -- I actually

18  can't speak for them -- but they're not anxious to get to a

19  finish line where they might lose, so I think they will take

20  any additional time they may get.

21          But in terms of the issue we have here about this

22  briefing, as I said, I think that every Defendant is allowed

23  to file a brief on whatever legal theory they want to

24  advance, including that the earth is flat or something like

25  that, because I can't stop that.  So we're always better off

1  trying to consolidate, if we can.  That's the thinking, Your

2  Honor.

3          THE COURT:  I understand.

4          MR. DESPINS:  Thank you, Your Honor.

5          THE COURT:  I understand.

6          MR. DESPINS:  Sorry.  Thank you.

7          THE COURT:  Attorney Goldstein, is there anything

8  else you would like to add?

9          MR. GOLDSTEIN:  No, Your Honor.

10          The only other thing I was thinking about when I

11  sat down was whether or not if it's helpful to you, we have a

12  little write-up that we had done between us, if that was

13  helpful while you were thinking about this, if it was helpful

14  for us to -- we could submit it to the Court.

15          THE COURT:  Well, we're not going to do anything

16  yet.

17          MR. GOLDSTEIN:  Right.  I was thinking until Your

18  Honor has made the threshold determination of whether we're

19  going to go down this road, then we would -- if Your Honor

20  said, Yes, we're going to go down the road, of course, we

21  would prepare a proposed order.  I was thinking more of an

22  interim step.

23          To the extent you wanted to see the Word document

24  that we have been going back and forth on, if that would be

25  helpful to you as you reflect on this, I'm happy to provide

1    that.  That was all.

2              THE COURT:  Okay.  Thank you.

3              MR. BERNARD:  Your Honor?

4              THE COURT:  I'm not going to hear from 28 lawyers.

5    I just want you to know that, okay.  So... --

6              MR. BERNARD:  If I could just get one minute, Your

7    Honor?

8              THE COURT:  Well, then, you need to -- you'll have

9    one minute and I will time you.

10             MR. BERNARD:  Thank you, Your Honor.  Richard

11   Bernard of Faegre Drinker on behalf of Cirrus.

12             Your Honor, the mediation, which is indefinite

13   interim for a lot of the Defendants is really at an impasse.

14   The bid and ask are too far apart.

15             THE COURT:  I don't need to hear about the

16   mediation.  That's not appropriate for me to hear.  That's

17   why it's in mediation, Counsel.

18             MR. BERNARD:  Correct, Your Honor.

19             THE COURT:  Then you shouldn't be telling me

20   anything about it.

21             MR. BERNARD:  The point of the motion is to try

22   and get the -- the point of this request is to have legal

23   issues teed up to Your Honor to create gray area that,

24   potentially, the parties could find some way to settle.

25             THE COURT:  I don't understand what you just said.

1  You said to create gray area?

2        MR. BERNARD:  The trustee and the Defendants are

3  way over here.

4        THE COURT:  If it's legal issues, then, what's the

5  gray area?

6        MR. BERNARD:  Because, Your Honor, they are legal

7  issues.  If they determine one way or the other, it

8  determines a shift in negotiating leverage and, therefore --

9        THE COURT:  I understand that, Counsel.

10        MR. BERNARD:  -- can overlap --

11        THE COURT:  I understand that, Counsel.

12        MR. BERNARD:  -- to get us to --

13        THE COURT:  But I want -- if they're really legal

14  issues, they should be legal issues, okay.

15        To have me decide whether or not alter-ego law

16  applies, you think that's a legal issue?

17        MR. BERNARD:  Your Honor, the way -- yes, it will

18  be framed up as a legal issue.

19        THE COURT:  How could it be framed as a legal

20  issue?

21        MR. BERNARD:  Your Honor, that's a very broad

22  characterization of the details of that particular element.

23        THE COURT:  Okay.  Your minute is up.

24        MR. BERNARD:  So, I know my minute is up and I

25  didn't want to get into that.

1          THE COURT:  Yes, thank you.

2          You've got a minute, Attorney Sklarz.

3          MR. SKLARZ:  Your Honor, I'm not with them.

4          My point --

5          THE COURT:  Then why are you here?

6      (Laughter)

7          MR. SKLARZ:  To state on the record that I'm not

8  with them.

9          THE COURT:  Okay.

10          MR. SKLARZ:  Because my client --

11          THE COURT:  Because you're on Exhibit 4?

12          MR. SKLARZ:  Well, I have clients in -- all over

13  the place.  As I indicated, I represent a number of clients,

14  and if I can approach the clerk, I can hand up my list.

15          THE COURT:  Yeah, you can do that later.

16          I'm just trying to understand.

17          MR. SKLARZ:  No, no, no.  And I'm not trying to

18  be --

19          THE COURT:  Go ahead.  No, go ahead.

20          MR. SKLARZ:  -- glib.  My clients, some of whom

21  are in the various mediation buckets, many of which are law

22  firms that were retained prepetition, post-petition, various

23  individuals.  I represent a very broad spectrum of

24  individuals and entities.  They span from New York law to

25  Delaware law, Puerto Rico law, Connecticut law, English law,

1  all different scopes.

2         We do not want to be part of any group briefing.

3  My office, as Your Honor knows, has been filing a lot of

4  papers, including motions to dismiss in every case we're

5  retained in that hasn't been stayed.  And even some of those

6  that have been stayed, we filed motions to dismiss.  My

7  clients wish to pursue their individual rights.

8         Now, do we have an objection to an adjournment of

9  a hearing on October 1st or October 8th to November,

10  December, January?  No.

11         These are big --

12         THE COURT:  But you're not involved in those

13  hearings.

14         MR. SKLARZ:  Yeah, I am.

15         THE COURT:  On next week's hearing?

16         MR. SKLARZ:  Next week's, I'm up first.

17         THE COURT:  Oh, okay.  You're up first.

18         MR. SKLARZ:  For better or worse.

19         THE COURT:  Okay.  Sorry.  I didn't recall that

20  you were up first; I thought you were the following week.

21  Sorry.

22         MR. SKLARZ:  I might be the following week, as

23  well --

24         THE COURT:  As well, yeah.

25         MR. SKLARZ:  -- but we're taking it one day at a

1  time here.

2        THE COURT:  Okay.  Go ahead.

3        MR. SKLARZ:  One of the things I did want to

4  express, having just gotten back from the NCBJ conferences,

5  these are big, important issues in a big, important, national

6  and international case.  We've -- the folks at my firm, the

7  folks another the trustee's firm, everyone here, the Court's

8  staff, Your Honor, everyone is thinking very long and hard

9  about everything that we're doing.

10        And so whether we have an argument next week, the

11  week after, or two months from now, whatever time we all

12  spend preparing to make the -- to write the briefs, to make

13  the argument, makes all of the jurisprudence that follows

14  this case better.  So, yes, I agree with the trustee, which

15  is maybe the first time in this case I've agreed with the

16  trustee, so I'm agreeing with the trustee that the argument

17  doesn't need to go forward next week.  But I also agree with

18  Your Honor, it shouldn't go to March 2027.

19        My clients are anxious to resolve these issues.

20  We believe strongly in the arguments we've made and we want

21  to pursue them, but we also feel strongly that we have due

22  process rights to proceed individually in the cases as

23  they've been brought and wish to preserve that right, our

24  individual briefing rights, and our individual argument

25  rights, should Your Honor grant argument.  And I just wanted

1  to make that clear for the record.

2           THE COURT:  So let me just ask you about what you

3  just said.  What due process rights do your clients have that

4  haven't been met?

5           MR. SKLARZ:  We have briefed that extensively,

6  Your Honor.

7           THE COURT:  Right.  But you've briefed it and

8  you're going to be heard.

9           MR. SKLARZ:  Correct.

10          THE COURT:  Right.  So what due process rights do

11 you have that haven't been met?

12          MR. SKLARZ:  As of today, none.

13          THE COURT:  Okay.

14          MR. SKLARZ:  If we're not permitted to submit

15 briefs or get lumped in --

16          THE COURT:  So you're thinking that because of

17 whatever happens in this -- if this process is allowed, at

18 some point, it's somehow going to negative impact you?

19          MR. SKLARZ:  As long as we are not pushed into

20 this process --

21          THE COURT:  Well, I'm not going to -- why would I

22 push you into that process?

23          MR. SKLARZ:  I just want to --

24          THE COURT:  You're already, at least part of your

25 clients are already exempt from mediation --

```
 1              MR. SKLARZ:  Right.

 2              THE COURT:  -- so you're not pushed into any

 3  process.  And I don't recall, sitting here, but maybe you

 4  represent people who have already asked to be excluded from

 5  the mediation process, too.  I can't recall.

 6              MR. SKLARZ:  We haven't.

 7              THE COURT:  There are so many Defendants that it's

 8  difficult.

 9              But I just want to understand what your point is.

10  Is your point, you don't want to be part of this joint

11  Defendants?  I didn't think you did, so I don't think there's

12  any confusion on that part.

13              MR. SKLARZ:  Excellent.  I have nothing further to

14  say on that point.

15              THE COURT:  Okay.  So is that the point that you

16  wanted to make?

17              MR. SKLARZ:  That is the point that I wanted to

18  make.

19              THE COURT:  Okay.  All right.

20              MR. SKLARZ:  And then, just the ancillary point

21  is, what I do agree with is, the argument doesn't have to

22  happen tomorrow.  If Your Honor wants to hold one argument at

23  some point, fine.  If Your Honor wants to hold multiple

24  arguments, fine.  However the Court wants to do it --

25              THE COURT:  Or maybe not any.
```

```
1              MR. SKLARZ:  We think --

2              THE COURT:  You've got papers.  You've espoused

3    your position through papers, correct?

4              MR. SKLARZ:  Correct.  I think --

5              THE COURT:  There's no rule requiring oral

6    argument.  I'm not saying it's not going to get granted --

7              MR. SKLARZ:  There is no rule --

8              THE COURT:  -- I'm just saying, there is no rule

9    that says you have to -- there's no -- your due process

10   rights aren't violated if you don't have --

11             MR. SKLARZ:  Of course.

12             THE COURT:  -- an oral argument on a motion that

13   you've fully briefed.

14             MR. SKLARZ:  Of course not, Your Honor; I'm not

15   suggesting that.

16             THE COURT:  Okay.

17             MR. SKLARZ:  I think given the enormity of the

18   issues, the concepts that have been argued both, by the

19   trustee and by various Defendants and the trajectory of this

20   case, that argument would be helpful to the Court, but if it

21   isn't, Your Honor won't want it.

22             But however -- whatever happens, whether there's

23   argument on everything, argument on nothing, we're just

24   reserving our rights.  And all I'm saying is should Your

25   Honor wish to have oral argument, it doesn't need to happen
```

1  on October 1st.  It could happen on December 1st.  It could

2  happen on January 1st.  It should happen sooner, rather than

3  later, but given -- again, I know I sound philosophical

4  here -- but given this case and all of the concepts raised,

5  measuring twice or three times for all of us, the lawyers, in

6  particular, and then proceeding, I think, there is value in

7  that.

8            THE COURT:  Okay.  Thank you.

9            MR. SKLARZ:  And I'll hand up the list.  Thank

10  you, Your Honor.

11            THE COURT:  Yes, thank you.

12            Counsel, I gave Attorney Sklarz more than a

13  minute, which I suppose wasn't fair to prior counsel, so go

14  right ahead.

15            MR. LADDIN:  Your Honor, I will be less than a

16  minute.  Darryl Laddin, again, on behalf of the American

17  Express.

18            I just wanted to be clear for the record, if

19  American Express was not a party to the request that was

20  filed by the joint defense group, we have not decided yet

21  whether American Express will join the briefing with that

22  group or not.  We will make that determination within

23  whatever time is required by the Court.  I simply wanted to

24  state that for the record.

25            THE COURT:  Okay.  Thank you.

1      MR. LADDIN:  Thank you.

2      THE COURT:  So, Attorney Goldstein, you said that

3  you and Trustee Despins and his counsel were working on a

4  Word document.

5      MR. GOLDSTEIN:  Yes, Your Honor.

6      THE COURT:  Do you have that with you?

7      MR. GOLDSTEIN:  I have an electronic, yeah.

8      THE COURT:  Okay.  Well, why don't you email that

9  to the courtroom deputy email box, if you would, please.

10      Do you have that email address?

11      MR. GOLDSTEIN:  I'll look it up.

12      THE COURT:  Okay.  And then, you know, I'll have

13  to review it.  So the issue is this, does everybody want to

14  sit around and wait for me to review it or what do you want

15  to do?

16      I mean, I need -- as I'm sure you can all

17  appreciate, had no idea what anybody was going to say today,

18  right, so I have to consider what you've said and I have to

19  look at, I'd like to look at that document, with the

20  understanding that why you would be giving it to me was to

21  show where you and the trustee were headed, as far as this is

22  concerned, and then I can see what requests that you've made

23  would be either granted or denied.

24      I mean, Trustee Despins, do you have an issue with

25  that?

1      MR. DESPINS:  Not at all, but I think you should

2  take some time to review it, because there's a lot of

3  stuff --

4      THE COURT:  Well, I'm going to have to take some

5  time.

6      MR. DESPINS:  No, I mean, like, in terms of today,

7  I don't -- it's up to you, but it would take me a few hours

8  to actually digest this cold, but maybe you're a faster

9  study.

10      THE COURT:  I doubt that, but in any event...

11      MR. GOLDSTEIN:  Your Honor, I'm happy to email it

12  before we walk out of here this afternoon and then, you know,

13  Your Honor, whenever you've made a determination of that,

14  we'll react.  If you say, Okay, I want to do this, but here's

15  the things that need to change or what the trustee --

16      THE COURT:  Well, this is what I -- given what

17  you've both just said to me, it's going to take some time to

18  review it, then I'm not going to take a recess and have

19  everyone sit here and wait.  That doesn't really make sense

20  for all of you, as well.

21      But what I would do, then, is I'll do whatever I

22  decide, once I read document and look at the document and go

23  back and think about what your requests were.  And the

24  courtroom deputy will reach out to you, Attorney Goldstein,

25  as the representative of the joint Defendants and Trustee

1    Despins and his counsel, with whatever I decide to do, okay?

2              MR. GOLDSTEIN:  All right.  Thank you.

3              THE COURT:  All right.

4              MR. GOLDSTEIN:  Thank you very much.

5              MR. KINDSETH:  May I have less than a minute, Your

6    Honor?

7              THE COURT:  Yes.

8              MR. KINDSETH:  Again, just the same --

9              THE COURT:  Yeah, we can't hear you, so you're

10   going to have to -- and state your name for the record,

11   please.

12             MR. KINDSETH:  Stephen Kindseth, Zeisler &

13   Zeisler.

14             Just for the record, we were not a party to these

15   discussions.  We should not be a party to this order.  We're

16   here just observing.

17             And I just want to make sure it's clear that this

18   proposed order, apparently, applies just to those parties who

19   are agreeing to it.  But regardless, my clients are not

20   agreeing to it; although, apparently, if there's a 7-day opt-

21   in period, we may opt in, but as of right now, we haven't

22   seen it, so we're not a party to it.

23             Thank you, Judge.

24             THE COURT:  No one's seen it, Attorney Kindseth.

25             MR. DESPINS:  To be clear, the idea would be that

1  it would affect your clients.  I'm not saying you agree to

2  that, but the goal here is to have everyone on the same

3  schedule if the Court is inclined to do it.  Maybe you're not

4  wanting to do it, but if you're going to do it, we think it

5  makes sense to have everyone on the same timeline.

6          I've (indiscernible) brief, not briefed, because,

7  for example, Zeisler & Zeisler, there's a motion or the

8  motion for judgment on the pleadings.  That's -- it'll be

9  fully briefed soon.  It raises the same issues.

10          We believe that that should all be heard at the

11  same time if Your Honor is going that direction.

12          MR. KINDSETH:  See, this is the issue.  The due

13  process issue that Attorney Sklarz alluded to.  If it's

14  affecting any other party, there should be a motion --

15          THE COURT:  It's not a due process issue, Attorney

16  Kindseth.  We've been through this.

17          MR. KINDSETH:  There --

18          THE COURT:  Okay.  Stop.

19          We've had hearing after hearing after hearing.

20  Your client gets -- your clients get every single pleading in

21  this case.  All of this has been filed in the main case.

22  It's not a due process issue and if you keep raising that

23  issue, I'm not going to be happy about it.

24          You have whatever your rights are.  You're a

25  learned lawyer.  You can handle that.

1      But to continue to try to characterize this as a

2  due process issue is unfair to the Court and all parties that

3  have been involved in this case since this case has started.

4  So you do whatever you feel you need to do, but if I hear one

5  more time about a due process issue, I'm going to be very

6  upset.  This Court has bent over backwards for your clients

7  and for everyone else involved in this case and I'm not going

8  to hear that someone's due process rights have been violated.

9      So, is there anything else you'd like to add for

10  the record?

11      MR. KINDSETH:  The discrete point that I was

12  pointing out -- and I'm not saying that Your Honor would do

13  such a thing -- but if the order is submitted and enters and

14  affects my client without ever having seen it or having had

15  an opportunity to object --

16      THE COURT:  You have an opportunity.  You're here.

17      MR. KINDSETH:  But we haven't seen the order.  It

18  hasn't been presented.  There's not even a motion filed.

19      THE COURT:  I haven't seen the order either.

20      MR. KINDSETH:  So there should be a motion.

21      THE COURT:  Everything doesn't have to happen by

22  motion, Counsel.  You're wrong about that.

23      MR. KINDSETH:  Okay.

24      THE COURT:  And you have done that plenty of times

25  without a motion, by the way.  You have come in and asked for

1  proposed orders to be entered in this case since the

2  beginning of this case when there's been no motion, so whose

3  due process rights were violated then?

4           MR. KINDSETH:  I do not recall such instances.

5           THE COURT:  I can tell you when you did.  Would

6  you like me to point it out to you?

7           MR. KINDSETH:  Actually --

8           THE COURT:  I can go back to the docket and find

9  it for you, when you came in about The Lady Mei and asking to

10  stop a hearing on relief from stay and, instead, enter a

11  stipulation that no one had seen, Counsel.

12           MR. KINDSETH:  But only those parts --

13           THE COURT:  So let me just -- so don't go down

14  that road, because that's not a road that's a favorable road

15  for you to go down.

16           Now, I'm not going to hear from anyone else this

17  afternoon.

18           Attorney Goldstein, you're going to email that

19  document that you're talking about.  The Court will review it

20  and the Court will take whatever action it seems necessary

21  and appropriate under its acknowledged right to manage its

22  case law and to manage its caseload that the Supreme Court of

23  the United States has consistently upheld and that is what we

24  will do this afternoon.

25           So there's nothing further to address this

1  afternoon.  Court is in recess.

2          MR. DESPINS:  Your Honor --

3          THE CLERK:  All rise.  Court is adjourned.

4       (Proceedings concluded at 2:36 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      CERTIFICATION

2            I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    /s/ William J. Garling                    September 27, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable