## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

-------------------------------------------------------x
:
In re: : Chapter 11
:
HO WAN KWOK *et al.*, : Case No. 22-50073 (JAM)
:
Debtors.1 : Jointly Administered
:
-------------------------------------------------------x

**TRUSTEE'S MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND
363, BANKRUPTCY RULES 2002, 6004(c), AND 9014, AND LOCAL RULES 6004-1 AND
6004-2, SEEKING ENTRY OF ORDER: (I) AUTHORIZING AND APPROVING SALE
OF GREENWICH PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS,
AND ENCUMBRANCES, (II) AUTHORIZING AND APPROVING PURCHASE AND
SALE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case of Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel, hereby

files this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto

as **Exhibit A** (the "Proposed Sale Order"), pursuant to sections 105, 363(b), and 363(f) of Title 11

of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004(c), and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 6004-2 of the

Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of

Connecticut (the "Local Rules"), (i) authorizing and approving the Trustee's sale (the "Sale") of

real property located at 373 Taconic Road, Greenwich, Connecticut (the "Greenwich Property")

free and clear of all liens, claims, interests, and encumbrances to the buyer pursuant to that certain

---

1    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
     Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings
     LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address
     for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park
     Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes
     of notices and communications).

purchase and sale agreement, dated September 26, 2024 (the "Buyer"), by and among the Buyer

and the Trustee, attached hereto as **Exhibit B** (together with the related addendum, the "PSA"),

(ii) authorizing and approving the PSA, and (iii) granting related relief.   In support of the Motion,

the Trustee respectfully states as follows:

**BACKGROUND**

1.      On March 27, 2023, the Trustee initiated an adversary proceeding by filing a

Complaint [Docket No. 1, in Adv. Proc. No. 23-5005 (the "Greenwich Land A.P.")] against

Greenwich Land, LLC ("Greenwich Land" and Hing Chi Ngok ("Ms. Ngok" and, together with

Greenwich Land, collectively, the "Defendants"), seeking, among other things, (i) a ruling

pursuant to sections 541, 542 and 544 of the Bankruptcy Code declaring that Greenwich Land is

an alter ego of the Debtor and ordering turnover of its assets, including the Greenwich Property,

to the Trustee, and (ii) a ruling pursuant to sections 541, 542 and 544 of the Bankruptcy Code

declaring that the membership interest in Greenwich Land is property of the Estate and ordering

the surrender of such membership interest to the Trustee.

2.      On July 2, 2024, for the reasons  set forth in the Court's *Memorandum of Decision

and Order Granting Motion for Summary Judgment* [Docket No. 133 in Adv. Proc. No. 23-5005],

the Court granted summary judgment in favor of the Trustee in the Greenwich Land A.P. [Docket

No. 134 in Adv. Proc. No. 23-5005] (the "SJ Order"), finding, among other things, that the

Greenwich Property is property of the Estate to be administered by the Trustee, ordering the

turnover of the Greenwich Property to the Trustee and authorizing the Trustee to take all actions

necessary or appropriate to effectuate the Judgment.

3.      On July 10, 2024, the Defendants filed a notice of their appeal (the "Appeal") with

respect to the SJ Order [Docket No. 138 in Adv. Proc. No. 23-5005].   On July 12, 2024, the

Defendants filed a motion for stay pending the Appeal [Docket No. 139 in Adv. Proc. No. 23-5005] (the "Stay Motion") in the Greenwich Land A.P.

4.       On August 16, 2024, upon the consent of the Trustee and the Defendants, the Court entered the *Consent Order Resolving Motion for Stay Pending Appeal and Enforcing Summary Judgment* [Docket No. 166 in Adv. Proc. No. 23-5005] ("Consent Order"), pursuant to which, among other things, on August 20, 2024, (a) the Trustee assumed possession of the Greenwich Property for the benefit of the Estate; and (b) the Defendants withdrew the Stay Motion with prejudice.  On August 20, 2024, a copy of the SJ Order was recorded in the Greenwich Land Records at Volume 8354, Page 220 thereof and the Stamford Land Records at Volume 13378, Page 324 thereof.

5.       Pursuant to the terms of the SJ Order, Greenwich Land, acting by the Trustee, transferred title to Luc A. Despins, as Chapter 11 Trustee of the Estate of Ho Wan Kwok by Quit Claim Deed dated and recorded on August 20, 2024 at Volume 8354, page 223 of the Greenwich Land Records and Volume 13378, page 327 of the Stamford Land Records (the "Quit Claim Deed").  The Trustee, in his capacity as chapter 11 trustee for the Debtor's estate, is the owner of record with respect to the Greenwich Property.

6.       On September 4, 2024, by Order Granting Motion (I) for Authority to Employ and Retain Real Property Broker, Effective as of August 23, 2024, for Sale of Greenwich Property, (II) authority to fund expenses related to Greenwich Property and (III) for Related Relief [ECF No. 3504] (the "Retention Order"), the Court approved the retention of Compass, Inc., ("Compass") as real estate broker to market the Greenwich Property for sale.

7.       Based upon its experience and expertise with Fairfield County, Connecticut real estate pricing, Compass marketed the Greenwich Property at a listing price of $7,100,000.00.

3

Since its retention, Compass has diligently marketed the Greenwich Property for sale. Its listing on the Greenwich Multiple Listing Service was posted with virtual staging on September 4, 2024 (the "Listing"). A broker open house was held on September 12, 2024. A full-page advertising article with photographs was published in the *Greenwich Times* Real Estate insert on September 13, 2024. As of September 27, 2024, the Listing has had thousands of online views. In addition, Compass has had more than twenty private showings of the Greenwich Property to potential buyers.

8.     As a result of the extensive marketing efforts and following a vigorous bidding process(during which several bids were received and the Buyer increased its initial offer of $6,200,000.00 to $6,900,000.00), the Trustee agreed to sell the Greenwich Property for $6,900,000.00 and the parties negotiated and executed the PSA.

### SUMMARY OF MATERIAL TERMS OF PSA

9.     The chart below sets forth the material terms of the PSA[2] between the Trustee and the Buyer.

| Provision | Summary Description |
|---|---|
| **Parties** | Seller: Luc A. Despins, solely in his capacity as chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity<br><br>Buyer: Ann Richardson Knox |
| **Purchase Price** | $6,900,000.00 |
| **Property to Be Sold** (PSA §1) | 373 Taconic Road, Greenwich, Connecticut (partially located in Greenwich and partially in Stamford, Connecticut) |

---

[2]     The terms of the PSA are summarized herein for the convenience of the Court and parties in interest. To the extent that there are any discrepancies, the terms of the PSA shall govern. Capitalized terms used in this summary that are not defined herein shall have the meanings ascribed to them in the PSA.

4

| Provision | Summary Description |
|---|---|
| **Deposit**<br>(PSA §2) | On September 25 and 26, 2024, the Buyer paid the deposit of $1,035,000.00 (15% of the Purchase Price) to the Trustee's counsel, as a deposit toward the Purchase Price to be held in escrow subject to the terms of the PSA. |
| **Closing**<br>(PSA §9) | The transfer of title to Greenwich Property (the "<u>Closing</u>") will occur on the fifteenth (15th) day after Bankruptcy Court approval of the Sale but not sooner than forty-five days from the date of the PSA unless agreed by the Buyer (the "<u>Closing Date</u>"). The Closing will occur at the offices of Trustee's counsel.<br><br>At Closing, the Buyer will pay the balance of the Purchase Price (*i.e.*, $5,865,000.00), subject to customary adjustments, to the Trustee and the Deposit will be released to the Trustee. |
| **Sellers Representations/ Requirements for Closing**<br>(PSA §10, Schedule A) | The Trustee represents and warrants that he will transfer to the Buyer good and marketable title to the Greenwich Property, subject to certain items set forth in Schedule A and paragraph 10(e) of the PSA. |
| **Risk of Loss**<br>(PSA §14) | The Trustee will bear the risk of loss of or damage to the Greenwich Property prior to Closing. |
| **Default**<br>(PSA §21, 20) | If Closing is not consummated due to the Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit will be retained by the Trustee, together with any carrying costs incurred for extending the closing date, as liquidated and agreed damages in full settlement of all claims between the parties; and (ii) the parties will be relieved of all obligations under the PSA.<br><br>If the Closing is not consummated due to the Trustee's non-performance (which, for the avoidance of doubt, shall not include this Court declining to approve the PSA), the Deposit, and any other money paid or deposited by the Buyer pursuant to the PSA, will be returned to Buyer upon demand. If the Buyer terminates the PSA due to Trustee's refusal to timely close pursuant to the terms of the PSA, the Deposit shall be returned to Buyer and the buyer shall receive from the Trustee any nonrefundable expenses actually incurred by the Buyer in the aggregate not to exceed the costs of an ALTA Homeowner's policy based upon the Purchase Price. |

| Provision | Summary Description |
|---|---|
| **Conveyance Taxes** (PSA §7) | The Trustee shall pay all real estate conveyance taxes at Closing. |
| **Representations and Warranties** (PSA §7, 27) | Upon Closing, the Buyer will be deemed to have accepted the Greenwich Property in its "as is" condition. The Trustee and the Brokers have given no warranty, either express or implied, and make no representation as to the condition of the Greenwich Property. |
| **Financing** (PSA §5) | The Buyer's obligations are not contingent upon Buyer's obtaining financing. |
| **Costs of Enforcement** (PSA §30) | In the event any dispute between the parties hereto arising out of the subject matter of the PSA, the prevailing party will be reimbursed for their reasonable costs and attorney's fees. |
| **Bankruptcy Court Approval** (PSA §§10(e)(viii); 39) | The PSA and all terms in the PSA are subject to approval of this Court. |
| **Exclusive Bankruptcy Court Jurisdiction** (PSA §39B.) | Notwithstanding anything in the PSA to the contrary, this Court will have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties irrevocably submit to the exclusive jurisdiction of this Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in this Court, and, further, not to bring any claim relating to the PSA in any other court. |

## COMPLIANCE WITH LOCAL RULE 6004-2(c)

10.     In accordance with Local Rule 6004-2(c), the Trustee further states:

| Local Rule 6004-2 Disclosure | Terms of Sale |
|---|---|
| **Sale to Insider** (Local Rule 6004-2(c)(1)) | The Buyer is not an insider within the meaning of section 101(31) of the Bankruptcy Code. Indeed, the Buyer has represented and warranted that she is not affiliated with or related to the Debtor and/or is not acting on behalf of or at the behest of the Debtor. (PSA §38) |

| Local Rule 6004-2 Disclosure | Terms of Sale |
|---|---|
| **Agreements with Management** (Local Rule 6004-2(c)(2)) | Not applicable. |
| **Releases** (Local Rule 6004-2(c)(3)) | The PSA contains no releases. |
| **Private Sale/No Competitive Bidding** (Local Rule 6004-2(c)(4)) | While the Trustee is not contemplating conducting an auction, the PSA reflects the result of a vigorous marketing process by a real estate brokerage firm retained by the Trustee (as detailed in this Motion). The Trustee has not agreed to refrain from soliciting or considering competing offers for the Greenwich Property. Indeed, the Trustee will consider any offers made at any time prior to or at the hearing on the Sale Motion.  Moreover, in accordance with Local Rule 6004-2(g), the Trustee will serve a copy of this Motion on all parties that have expressed an interest in the Greenwich Property during the marketing process. |
| **Closing and Other Deadlines** (Local Rule 6004-2(c)(5)) | The closing of the Sale will take place on or before the forty-fifth (45th) day following the Contract Date. |
| **Good Faith Deposit** (Local Rule 6004-2(c)(6)) | The Buyer has made a good faith deposit of 15% of the Purchase Price, which deposit is being held by the Trustee's counsel in escrow subject to the terms of the PSA. |
| **Interim Arrangements with Proposed Buyer** (Local Rule 6004-2(c)(7)) | There are no interim arrangements with the Buyer. |
| **Use of Proceeds** (Local Rule 6004-2(c)(8)) | The proceeds from the Sale will be deposited into the Trustee's account and will be used and/or distributed by the Trustee in accordance with the Bankruptcy Code. To the extent there are any liens on the Greenwich Property, such liens will attach to the proceeds.[3] |

---

[3]    The Trustee obtained a title search for the Greenwich Property which indicated that no liens existed other than the Trustee's attachment Order in the amount of $8,314,200 dated March 30, 2023 entered in the Greenwich Land A.P.  ( the "Attachment Order").

| Local Rule 6004-2 Disclosure | Terms of Sale |
|---|---|
| **Tax Exemption** (Local Rule 6004-2(c)(9)) | The Trustee is not seeking to have the sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code. |
| **Record Retention** (Local Rule 6004-2(c)(10)) | Not applicable. |
| **Sale of Avoidance Actions** (Local Rule 6004-2(c)(11)) | The Trustee is not seeking to sell any avoidance actions. |
| **Requested Findings and Order as to Successor Liability** (Local Rule 6004-2(c)(12)) | The Trustee is not requesting any findings as to successor liability claims. |
| **Sale Free and Clear of Unexpired Leases** (Local Rule 6004-2(c)(13)) | There are no unexpired leases affecting the Greenwich Property. |
| **Credit Bid** (Local Rule 6004-2(c)(14)) | Not applicable. |
| **Relief from Bankruptcy Rule 6004(h)** (Local Rule 6004-2(c)(15)) | The Trustee seeks relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to permit the Sale to close as soon possible upon approval by this Court. |
| **Carve-Outs and/or "Gifts"** (Local Rule 6004-2(c)(16)) | Not applicable. |
| **Residual Assets** (Local Rule 6004-2(c)(17)) | The Sale is not a sale of substantially all of the assets of the estate. Additional assets will exist following the Sale Closing. |

## **RELIEF REQUESTED**

11.     By this Motion, the Trustee seeks entry of the Proposed Order, pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, Rules 2002, 6004, and 9014 of the Bankruptcy Rules and Local Rules 6004-1 and 6004-2 (i) approving and authorizing the Sale of the Greenwich Property, (ii) authorizing and approving the PSA, and (iii) granting related relief.

8

**BASIS FOR RELIEF**

**A.   Sale Should be Approved Pursuant to Section 363(b) of the Bankruptcy Code**

12.      Section 363(b) of the Bankruptcy Code authorizes a trustee to sell assets other than in the ordinary course of its business after notice and hearing.  *See* 11 U.S.C. § 363(b). Additionally, Bankruptcy Rule 6004(f) authorizes a trustee to sell estate property outside of the ordinary course of business by private sale or public auction. Fed. R. Bankr. P. 6004(f).

13.      The decision to sell assets outside of the ordinary course of business is based upon the sound business judgment of the trustee.  *See e.g. In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *Comm. of Equity Security Holders v. Lionel Corp (In re Lionel Corp.)*, 772 F.2d 1063, 1071 (2d Cir 1983).  The trustee has broad discretion to determine the manner in which its assets are sold and private sales outside the ordinary course of business are permissible pursuant to section 363(b) of the Bankruptcy Code. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting trustee has authority to conduct a sale of estate property through private sale); *see, e.g., Palermo v. Pritam Realty, Inc. (In re Pritam Reality, Inc.)*, 233 B.R. 619 (D. P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re MF Glob. Inc.*, 535 B.R. 596 608 (Bankr. S.D.N.Y. 2015) (approving a private sale of a chapter 11 debtor's assets where the standards of section 363(b) were met). Courts have approved private sales where the benefit of such outweighs the delay and expense of conducting a public sale. *See In re Dewey & Leboeuf LLP*, 2012 Bankr. LEXIS 5116 at *17-18 (Bankr. S.D.N.Y. Nov. 1, 2012) (finding good business justification to sell property through a private sale where public sale would be more costly).

14.      The Trustee respectfully submits that good cause exists to waive the requirement of a public sale under Local Rule 6004-1 in light of the particular facts and circumstances set forth herein.  The Greenwich Property has been marketed through Compass' extensive efforts, the Sale

is subject to higher and better offers and the Trustee has not agreed to refrain from soliciting or negotiating any such offers.

15.     Once a court is satisfied that there is a sound business justification for a proposed sale, the court must then determine whether (i) the trustee has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. *See In re Betty Owens Sch., Inc.*, No. 1997 WL 188127, at *4 (S.D.N.Y. 1997).

16.     As detailed in this Motion, there is a strong business justification for the Sale of the Greenwich Property to the Buyer.  The Trustee submits that, in light of the marketing process in keeping with the marketing of luxury properties in the Fairfield County, Connecticut area, and the negotiated purchase price, without financing, inspection or other contingencies common in the sale of residential real property, the proposed Sale to the Buyer is in the best interests of the Debtor's estate and should be approved.

17.     In addition, the Buyer is ready, willing and able to close on the Sale shortly after Court approval of the Sale.  The Debtor's estate incurs substantial costs, which typically range between $15,000.00 and $20,000.00 per month (comprised of real estate taxes, insurance, utilities, security costs, property maintenance, and grounds maintenance), to maintain the Greenwich Property.  To be clear, the Trustee is not suggesting that these costs justify selling the Greenwich Property without sufficient marketing; however, the substantial cost of carrying the Greenwich Property should be considered as part of the overall cost/benefit analysis of proceeding with the Sale to the Buyer compared to establishing bidding procedures and pursuing a public auction.

18.     Moreover, as detailed above, the Sale is the result of a public marketing process, which process resulted in a Purchase Price that the Trustee submits is fair and reasonable for the

Greenwich Property.  As part of that process, the Trustee retained an experienced real estate broker (*i.e.*, Compass) with knowledge of and experience with the particularities of the high-end Greenwich residential real estate market.  In any event, in accordance with Local Rule 6004-2(g), the Trustee is serving copies of this Motion on the parties that have toured the Greenwich Property or expressed to Compass an interest in purchasing the Greenwich Property.  Any party may submit a competing bid for the purchase of the Greenwich Property, with any such bid to be in the form of the PSA, marked to show any proposed changes, provide for  a cash closing, with evidence of financial source(s) supporting the bid, be submitted to the Trustee on or before the  Competing Bid Deadline4 as set by the Court and accompanied by a deposit equal to fifteen percent (15%)  of the proposed cash bid..

19.    For the reasons stated above, the Trustee submits that the Sale of the Greenwich Property to the Buyer is in the best interest of the estate and should be approved under section 363(b) of the Bankruptcy Code.

**B.  Sale of the Greenwich Property Free and Clear of Liens, Claims, Interests, and Encumbrances Should Be Authorized Pursuant to Section 363(f) of the Bankruptcy Code**

20.    Section 363(f) of the Bankruptcy Code authorizes a trustee to sell assets free and clear of liens, claims, interests, and encumbrances if:

 a.  applicable non-bankruptcy law permits sale of such property free and clear of such interests;
 b.  such entity consents;
 c.  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
 d.  such interest is in bona fide dispute; or

---

4 The Trustee, in his *Motion to Limit Notice, Schedule Expedited Hearing and Provide Procedure for Submitting Competing Bids Regarding Chapter 11 Trustee's Motion for Order (i) Authorizing and Approving Sale of Greenwich Property Free and Clear of Liens, Claims, Interest and Encumbrances (II) Authorizing and Approving Purchase and Sale Agreement and (III) Granting Related Relief* filed concurrently with this Motion,  has requested that the Court set the Competing Bid Deadline for 10:00 am the day prior to the hearing on this Sale Motion.

> e. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of the five requirements will suffice to permit the sale of the Greenwich Property "free and clear" of liens and interests.  *See In re Dundee Equity Corp.*, 1992 WL 53743 at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) ("[S]ection 363(f) is in the disjunctive, such that the sale of the interest concerned may occur if any one of the conditions of Section 363(f) have been met").

21.     The Trustee's title search has not revealed any liens or other encumbrances with respect to the Greenwich Property other than the Attachment Order and the items identified on **Schedule A** to the PSA, which the Buyer will take title subject to.  However, to the extent there are any liens, claims, interests, or encumbrances against the Greenwich Property, the Trustee submits that the Sale should be approved free and clear of any such liens, claims, interests, and encumbrances, because it will be adequately protected by having its lien, claim, interest or encumbrance attach to the proceeds of the Sale, subject to any claims and defenses that the Trustee may have with respect thereto.  *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.").

22.     For all these reasons, the Trustee requests that the Court authorize the Trustee to sell the Greenwich Property free and clear of any liens, claims, interests, and encumbrances.

**C. Sale of the Greenwich Property Should Be Subject to Protections of Section 363(m) of the Bankruptcy Code**

23.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the estate notwithstanding that the sale conducted under section 363(b)

12

of the Bankruptcy Code is later reversed or modified on appeal.  Specifically, section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

24.    Although "good faith" is not defined in the Bankruptcy Code, the Second Circuit has stated that:

> Good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings . . . A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal quotations omitted).  Section 363(m) of the Bankruptcy Code "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130 *9 (S.D.N.Y. 1993) (quoting *In re Abbots Dairies of Penn., Inc.*, 788 F.2d 143, 147); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990).

25.    The Buyer was selected by the Trustee as having submitted the highest and best offer following an extensive marketing effort by Compass and an arm's-length negotiation to reach agreement on the PSA terms following the Buyer's offer.  The Trustee has no reason to believe that the Buyer colluded with other interested parties or otherwise attempted to obtain an unfair advantage over other parties in the process.  Moreover, the Buyer has no affiliation with the Debtor nor is the Buyer acting on behalf of or at the behest of the Debtor, all as reflected in the Buyer's

representations and warranties in the PSA.  All payments to be made by the Buyer, and other agreements or arrangements entered into by the Buyer in connection with the Sale set forth in the PSA, have been disclosed.  Accordingly, the Trustee submits that the Buyer is a good faith purchaser entitled to the protections pursuant to section 363(m) of the Bankruptcy Code.

**D.  Trustee Should Be Authorized to Pay Commission to Compass**

26.    Pursuant to the Retention Order, the Court previously approved the compensation structure for Compass, including a fixed fee of 4.5% of the purchase price (to be shared 50/50 with the broker for the Buyer) unless Compass brought the purchaser or the purchaser is not represented by a broker, in which case, the fee is to be reduced to 3% of the purchase price.   As set forth in the PSA, the Buyer was represented by Sotheby's International Realty in the purchase of the Greenwich Property.   The brokers' fee to be paid from the proceeds of the Sale is, thus, 4.5% ($310,500.00) to be split between Compass and Sotheby's International Realty ($155,250.00 each).

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

27.    The Trustee requests that the Court waive any applicable stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).

28.    As noted, it is a condition to the proposed Sale to the Buyer is that the Closing occur on or before fifteen (15) days after entry of the Proposed Sale Order.   In order to allow for an earlier closing in the event it is desired by the parties, the Trustee respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

29.     Notice of this Motion will be served upon (i) the Office of the United States Trustee for the District of Connecticut, (ii) the Buyer, (iii) counsel for the Debtor, (iv) counsel for the Official Committee of Unsecured Creditors, (v) all entities and individuals known to have expressed to Compass an interest in purchasing the Greenwich Property, (vi) all parties who have requested notice in the Debtor's case pursuant to Bankruptcy Rule 2002, and (vii) the Defendants in the Greenwich Land A.P (collectively, the "Notice Parties").  The Notice Parties will receive a full copy of the Motion.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Bankruptcy Court enter the Proposed Sale Order granting the relief requested herein.


Dated: September 30, 2024                LUC A. DESPINS, TRUSTEE

                                          By:  /s/ *Douglas S. Skalka*
                                               Douglas S. Skalka (ct00616)
                                               Patrick R. Linsey (ct29437)
                                               NEUBERT, PEPE & MONTEITH, P.C.
                                               195 Church Street, 13th Floor
                                               New Haven, Connecticut 06510
                                               (203) 781-2847
                                               dskalka@npmlaw.com
                                               plinsey@npmlaw.com

                                                  *and*

                                               G. Alexander Bongartz (admitted *pro hac vice*)
                                               Douglass Barron (admitted *pro hac vice*)
                                               PAUL HASTINGS LLP
                                               200 Park Avenue
                                               New York, New York 10166
                                               (212) 318-6079
                                               alexbongartz@paulhastings.com
                                               douglassbarron@paulhastings.com

                                                  *and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

*Counsel for the Chapter 11 Trustee*

## EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                            :

In re:                       :      Chapter 11
                            :

HO WAN KWOK, *et al.*,[1]    :      Case No. 22-50073 (JAM)
                            :

        Debtors.        :      (Jointly Administered)
                            :

-------------------------------------------------------x

**ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363, BANKRUPTCY RULES 2002 AND 6004(c), AND LOCAL RULES 6004-1 AND 6004-2, (I) AUTHORIZING AND APPROVING SALE OF THE GREENWICH PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), pursuant to pursuant to sections 105, 363(b), and 363(f) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 6004-2 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut (the "Local Rules"), seeking entry of an order (i) authorizing and approving the Trustee's sale (the "Sale") of

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but not defined herein shall having the meanings set forth in the Motion or the PSA, as applicable; provided, however, no capitalized terms used herein shall in any way be modified, amended, or supplemented in the PSA after this Order becomes final.

the Greenwich Property free and clear of all liens, claims, interests and encumbrances pursuant to that certain purchase and sale agreement, dated September 26, 2024, by and among the buyer as set forth in the PSA (the "Buyer") and the Trustee (the "PSA"), (ii) authorizing and approving the PSA, and (iii) granting related relief, all as further detailed in the Motion; and a hearing on the Motion having been held (the "Hearing"); and this Court having reviewed and considered the Motion, and all objections thereto, and the arguments made by counsel and evidence adduced at the Hearing; and it appearing the terms of the PSA are in the best interests of the Debtor, the estate, creditors and other parties in interest; and after due deliberation thereon, and good cause appearing therefor:

**THE COURT HEREBY FINDS THAT**:[3]

**Jurisdiction and Final Order**

A.    This Court has jurisdiction to hear and determine the approval of the Sale and the PSA under 28 U.S.C. §§ 1334 and 157, and the *Standing Order of Reference* from the United States District Court for the District of Connecticut.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason to delay the implementation of this Order, and expressly directs entry of judgment as set forth herein.  The Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the sale contemplated by

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

the PSA at any time after the entry of this Order and shall not be subject to the stay provided by Bankruptcy Rules 6004(h).

## Notice of Sale

C.      Actual written notice of the Motion, the Hearing, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested persons or entities.

D.      As evidenced by the certificates of service previously filed with this Court: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Hearing, the entry of this Order, the Sale, and the relevant objection deadlines have been provided to all Notice Parties; (ii) such notice was, and is, good, sufficient and appropriate under the circumstances of this chapter 11 case, provided a fair and reasonable opportunity for parties-in-interest to object, and to be heard, with respect thereto, and was provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the applicable Local Rules, and the orders of this Court; and (iii) no other or further notice of such matters is necessary or shall be required.

## Business Judgment

E.      The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and such action is an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtor, his estate, and their creditors.  Such business reasons include, but are not limited to, the facts that: (i) the Purchase Price and the other terms set forth in the PSA constitute the highest or otherwise highest and best offer received for the Greenwich Property; (ii) the Sale on the terms set forth in the PSA presents the best opportunity to maximize the value of the Greenwich Property; and (iii)

unless the Sale is concluded expeditiously as provided for in this Order and pursuant to the PSA, potential creditor recoveries may be diminished.

## **Marketing Process**

F.      As demonstrated by the Motion, the testimony and other evidence proffered or adduced at the Hearing, and the representations of the Trustee and his counsel made on the record at the Hearing: (i) the Trustee and his broker, Compass, Inc. ("Compass"), engaged in an extensive marketing process; (ii) the sale process was non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any individual or entity to make an offer to purchase the Greenwich Property; and (iii) the process conducted by the Trustee obtained the highest and best value for the Greenwich Property for the Trustee and the Debtor's estate.

## **Fair Consideration; Highest or Best Value**

G.      The consideration to be provided by the Buyer under the PSA is fair and reasonable consideration for the Greenwich Property and constitutes (i) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.  Such consideration constitutes the highest and best bid for the Greenwich Property.  No other person or entity or group of persons or entities has offered to purchase the Greenwich Property for an amount that would give equal or greater value to the Debtor's estate than the value provided by the Buyer pursuant to the PSA.

**Good Faith**

H.    The PSA and the Sale were negotiated, proposed, and entered into, and are being undertaken by the Trustee and the Buyer in good faith, without collusion, and from arm's-length bargaining positions.  Likewise, the value that the Debtor's estate will receive on consummation of the Sale is the product of arm's-length negotiations between the Trustee, the Buyer, and their respective representatives and advisors.

I.    The Buyer is purchasing the Greenwich Property in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full rights, benefits, privileges, and protections of that provision and any other applicable or similar bankruptcy and non-bankruptcy law.

J.    Neither the Buyer nor the Trustee have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the PSA or to the consummation of the Sale.

K.    The Buyer proceeded in good faith in all respects in connection with the Sale and this proceeding in that, among other things: (a) the Buyer's offer was the result of an open marketing process; (b) all payments to be made by the Buyer, and other agreements or arrangements entered into by the Buyer in connection with the Sale set forth in the PSA, have been disclosed; and (c) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction.

L.    The Buyer is not an insider or an affiliate (as that term is defined in sections 101(2) and 101(31) of the Bankruptcy Code) of the Debtor.

## Section 363(f) of the Bankruptcy Code Is Satisfied

M.      The Trustee is authorized to sell the Greenwich Property free and clear of liens, claims, interests, and encumbrances against the Debtor or his estate, because one of more of the standards set forth in section 464(f)(1)-(5) of the Bankruptcy Code has been satisfied.

N.      Those holders of liens, claims, interests, or encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Sale or the Motion have either consented to or are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  In addition, one or more of the other subsections of section 363(f) of the Bankruptcy Code apply and, therefore, holders of liens, claims, interests, or encumbrances in the Greenwich Property are adequately protected by having their liens, claims, interests, or encumbrances in the Greenwich Property attach solely to the proceeds of the Sale in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to the Sale.

O.      The Buyer would not have entered into the Sale and will not consummate the transactions contemplated thereby, thus adversely affecting the Debtor's estate and his creditors, (i) if the sale of the Greenwich Property was not free and clear of all liens, claims, interests, and encumbrances except as set forth in the PSA or (ii) if the Buyer would, or in the future could, be liable for any such liens, claims, interests, and encumbrances.  The total consideration to be provided under the PSA reflects the Buyer's reliance on this Order to provide her with title to and possession of the Greenwich Property free and clear of all liens, claims, interests, and encumbrances pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.

## Validity of Transfer of Title

P.      By Quit Claim Deed dated and recorded on August 20, 2024 at Volume 8354, Page 223 of the Greenwich Land Records and Volume 13378, Page 327 of the Stamford Land Records,

Greenwich Land, LLC, acting by the Trustee, transferred all its right, title and interest in and to the Greenwich Property to the Trustee (the "Quit Claim Transfer"), which Quit Claim Transfer was a legal, valid and effective transfer of title, duly authorized by prior orders of this Court. The transfer of title in and to the Greenwich Property by the Trustee to the Buyer will be a legal, valid, and effective transfer of title, and will vest the Buyer with any legal, equitable and beneficial right, title, and interest in and to the Greenwich Property free and clear of all liens, claims, interests, and encumbrances, except as set forth in the PSA. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale. Subsequent to the Closing, the Debtor's estate will be relieved of all liability or other obligation of any kind with respect to claims arising from or related to the Buyer's post-Closing ownership of the Greenwich Property.

### Waiver of Bankruptcy Rules 6004(h)

Q.     The sale of the Greenwich Property must be approved and consummated promptly. The Trustee and the Buyer intend to expeditiously close the Sale upon entry of this order. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the PSA. Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rule 6004(h) with regard to the transactions contemplated by this Order.

**THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES:**

1.     The Motion is GRANTED and approved in all respects, and any objections thereto that have not been otherwise withdrawn, waived, or settled are overruled.

2.      The PSA is hereby approved as set forth herein.

3.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Sale of the Greenwich Property to the Buyer pursuant to the PSA free and clear of all liens, claims, encumbrances, and other interests is approved in all respects.

4.      Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code, the Trustee is authorized to transfer the Greenwich Property in accordance with the terms of the PSA and this Order.  The transfer of title in and to the Greenwich Property by the Trustee to the Buyer in accordance with the PSA shall: (a) be valid, legal, binding, and effective; (b) vest the Buyer with all right, title and interest in and to the Greenwich Property; and (c) be free and clear of all liens, claims, interests, and encumbrances against the Greenwich Property, in accordance with section 363(f) of the Bankruptcy Code.

5.      Pursuant to section 363 of the Bankruptcy Code, this Order shall and does, as of the Closing, divest the Debtor and his estate of all right, title, and interest in and to the Greenwich Property.

6.      The consideration provided by the Buyer for the Greenwich Property under the PSA is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided or rejected, or costs or damages imposed or awarded against the Buyer, under section 363(n) or any other provision of the Bankruptcy Code.

7.      The Trustee is authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale concerning the transfer of the Greenwich Property to the Buyer at a closing in accordance with the Motion, the PSA and this Order, including, without limitation, payment of usual and customary closing costs (b) perform, consummate, implement,

24

and close the transaction pursuant to the PSA together with all additional instruments and documents that may be reasonably necessary or desirable to implement this Order, and the PSA, and (c) perform the obligations contemplated by this Order, and the PSA, including all actions reasonably requested by the Buyer in regard thereto.

8.     Except as set forth on Schedule A to  the PSA (the "Permitted Encumbrances"), all liens, claims, interests, and/or encumbrances in, on, or against the Greenwich Property shall automatically attach solely to the proceeds of the Sale with the same validity, priority, force, and effect that they now have as against the Greenwich Property, subject to any claims and defenses the Trustee or the Debtor's estate may possess with respect thereto.  This Order shall be effective as a determination that, except for the Permitted Encumbrances, on and as of the Closing, all liens, claims, interests, and/or encumbrances of any kind or nature whatsoever in, on, or against the Greenwich Property have been unconditionally released, discharged, and terminated.   The provisions of this Order authorizing and approving the transfer of the Greenwich Property free and clear of liens, claims, encumbrances, and other interests shall be self-executing, and neither the Trustee nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order and the PSA.

9.     Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Trustee to sell and transfer the Greenwich Property to the Buyer, (b) with the ability of the Buyer to acquire, take possession of, use and operate the Greenwich Property in accordance with the terms of the PSA and this Order, and (c) with the ability of the Trustee and the Buyer to perform their respective obligations

thereunder; provided, however, that the foregoing restriction shall not impair the right of any party in interest with the requisite standing to appeal this Order in accordance with applicable law or opposing any appeal of this Order.

10.    The Purchaser is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.  The Sale contemplated by the PSA and this Order are undertaken by the Buyer in good faith, as that term is used in section 363(b) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization is duly stayed pending such appeal prior to the Closing.  For the avoidance of doubt, the pendency of an appeal of this Order, absent a stay of this Order pending appeal, shall not constitute a basis not to consummate the Sale.

11.    The failure specifically to include any particular provisions of the PSA in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the PSA and each and every provision, term, and condition thereof (including, for the avoidance of doubt, the addendum thereto) be, and therefore is, authorized and approved in its entirety; provided, however that the PSA may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, without further notice to or order of this Court, provided that any such modification, amendment, or supplementation does not have a material adverse effect on the Debtor's estate, unless approved by order of this Court.

12.    The provisions of this Order, the PSA, and any actions taken pursuant hereto or thereto, shall survive entry of any order which may be entered confirming or consummating any chapter 11 plan, or which may be entered converting this chapter 11 case from chapter 11 to chapter 7 of the Bankruptcy Code or dismissing this chapter 11 case, and the terms and provisions of the PSA, as well as the rights and interests granted pursuant to this Order, the PSA, shall continue in

this chapter 11 case or any superseding cases and shall be specifically performable and enforceable against and binding upon the Trustee, the Debtor, his estate, all creditors, all holders of claim(s) (whether known or unknown) against the Debtor, all holders of liens, claims, interests, and/or encumbrances (whether known or unknown) against, in, or on all or any portion of the Greenwich Property, the Buyer and its respective successors and permitted assigns, and any other trustee or other fiduciary hereafter appointed or elected as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, including without limitation plan fiduciaries, plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in this chapter 11 case.

13.     This Order is and shall be binding upon and govern the acts of all persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Greenwich Property.  Each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the liens, claims, interests, and encumbrances against the Greenwich Property or to otherwise consummate the Sale contemplated by this Order, and the PSA.

14.     The terms and provisions of the PSA and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Trustee, the Debtor's estate and its creditors, the Buyer and its affiliates, successors, and assigns, and any affected third parties, including all persons

asserting liens, claims, interests, or encumbrances in, on, or against the Greenwich Property, notwithstanding any subsequent appointment of any other trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtor, his estates, his creditors or any such trustee, examiner, or receiver.

15.     Upon the Closing, the Trustee is authorized to pay from the proceeds of the Sale, the broker's commission (as defined in the Retention Order) equal to 4.5% of the Purchase Price, *i.e.*, $310,500 to be equally divided between Compass and Sotheby's International Realty.

16.     For the avoidance of doubt, no estate causes of action are being sold as part of the Sale.

17.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) is hereby expressly waived and shall not apply. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

18.     Nothing in this Order shall modify or waive any closing conditions or termination rights in the PSA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

19.     As of the Closing, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the Sale, including, without limitation, the transfer of the Greenwich Property to the Buyer and the occurrence of the Closing.

20.     To the extent that there is a conflict between the provisions of this Order and the PSA, this Order shall prevail.

21.     This Court shall retain jurisdiction to, among other things, (a) interpret, enforce, and implement the terms and provisions of this Order and the PSA (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith) and (b) adjudicate disputes related to this Order and the PSA (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith).

<u>Exhibit B</u>

THE FAIRFIELD COUNTY BAR ASSOCIATION
# RESIDENTIAL REAL ESTATE SALES AGREEMENT
(Revised July 14, 2015)
_____

**This Agreement** made as of the <u>**26th**</u> day of **September, 2024 between LUC A. DESPINS, AS CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATE OF HO WAN KWOK, c/o Paul Hastings LLP, 200 Park Avenue, New York, New York 10166** (hereinafter referred to as the SELLER, whether one or more), and **ANN RICHARDSON KNOX, of 30 Brookside Drive, Greenwich, CT 06830** (hereinafter referred to as the BUYER or PURCHASER whether one or more).

## W I T N E S S E T H:

1.  **PROPERTY**.  The SELLER, in consideration of the purchase price hereinafter specified, hereby agrees to sell and convey, and the BUYER hereby agrees to purchase the real property commonly known as **373 Taconic Road, Greenwich, CT 06831** and specifically described in Schedule A attached hereto, **being located partially in Greenwich and partially in Stamford, Connecticut** (the "Premises") subject only to the encumbrances and exceptions to title set forth or referred to in Paragraph 10(e) and Schedule A (legal description and exceptions, if any) attached hereto.

2.  **CONSIDERATION**.  The purchase price is **SIX MILLION NINE HUNDRED THOUSAND & 00/100 DOLLARS ($6,900,000.00) DOLLARS** which the BUYER agrees to pay as follows:

    (a)  As a part of the Deposit heretofore paid, receipt of which is acknowledged, subject to collection. If a Deposit or any portion thereof is paid to a broker or other party, Buyer directs that the Deposit shall be sent immediately to Seller's attorney (the "Escrow Agent") for handling per Paragraph 3, below;  $<u>**0.00**</u>

    (b)  Upon the signing of this Agreement, payable to the SELLER'S attorney as Trustee or Escrow Agent as provided herein, receipt of which is acknowledged, subject to collection ("the Deposit");  $<u>**1,035,000.00**</u>

    ~~(c)~~  Upon delivery of the deed by wire **transfer** ~~or by official cashier's or bank check drawn by and upon a federally-regulated or Connecticut state-chartered bank, or a bank that is a member of the New York Clearing House~~, the proceeds of which are immediately available.  $<u>**5,865,000.00**</u>

       **TOTAL**  $<u>6,900,000.00</u>

3.      **ESCROW**. SELLER'S attorney (the "Escrow Agent") shall hold the Deposit in Paragraph 2(a), **and/or 2(b)** above, in escrow in an IOLTA account until closing of title or sooner termination of this Agreement in accordance with its terms, and shall pay over or apply the Deposit in accordance with the terms of this paragraph.  The Escrow Agent shall hold the Deposit in an attorney's IOLTA account for the benefit of the parties.  At the closing of title as contemplated hereunder, the Deposit shall be paid by the Escrow Agent to or as directed by the SELLER.  If for any reason the closing does not occur and either party gives Notice to the Escrow Agent pursuant to Paragraph 32 demanding payment of the Deposit, then the Escrow Agent shall give prompt Notice of such demand to the other party. If the Escrow Agent does not receive from such other party Notice of an objection to the proposed payment within seven (7) business days after giving such Notice, the Escrow Agent is hereby authorized and directed to make such payment in accordance with the Notice.  If the Escrow Agent receives such Notice of objection within said seven (7) business day period, or if for any other reason the Escrow Agent in good faith shall elect not to make such payment, then the Escrow Agent may continue to hold such amount until otherwise directed by Notice from the parties to this Agreement or a final, non-appealable judgment, order or decree of ~~a Court of competent jurisdiction~~ **the Bankruptcy Court (as hereinafter defined)**.  However, the Escrow Agent shall have the right at any time to deposit the Deposit and the interest thereon, if any, with a court of competent jurisdiction where the Premises is located and shall give Notice of such deposit to SELLER and BUYER.  Upon such deposit or other disbursement in accordance with the terms of this Paragraph 3, the Escrow Agent shall be relieved and discharged of all further obligations and responsibilities hereunder.

The parties acknowledge that the Escrow Agent is acting solely as a stakeholder at their request and for their convenience and that the Escrow Agent shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith, on account of gross negligence, or in willful disregard of this Agreement on the part of the Escrow Agent.  SELLER and BUYER agree, jointly and severally (with right of contribution) to defend (by counsel selected by the Escrow Agent), indemnify and hold the Escrow Agent harmless from and against all costs, claims and expenses (including reasonable attorney's fees) incurred in connection with the performance of the Escrow Agent's duties hereunder, except with respect to acts or omissions taken or suffered by the Escrow Agent in bad faith, on account of gross negligence,  or in willful disregard of this Agreement on the part of the Escrow Agent.  In the event the Deposit is deposited with a ~~court of competent~~ **jurisdiction the Bankruptcy Court** pursuant to the terms herein, the parties to this Agreement hereby authorize the Escrow Agent to deduct the reasonable costs and attorney's fees associated with an action of interpleader.

The Escrow Agent may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from acting upon the advice of such counsel.

The Escrow Agent acknowledges receipt of the Deposit by check or wire, subject to collection and the Escrow Agent's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this Agreement.

Escrow Agent or any member of its firm shall be permitted to act as counsel for SELLER in any dispute as to the disbursement of the Deposit or any other dispute between the parties whether or not the Escrow Agent is in possession of the Deposit and/or continues to act as the Escrow Agent. The parties waive claim to a conflict regarding this paragraph.

Escrow Agent shall have no liability for any loss of the Deposit occurring on account of FDIC limits for sums insured on deposit.

It is specifically understood and agreed that at closing, BUYER shall tender to SELLER official, cashier's or bank checks drawn on a federally-regulated or Connecticut state-chartered bank, or a bank that is a member of the New York Clearing House, the proceeds of which are immediately available, or wired funds. All checks shall be made payable to SELLER'S attorney as trustee for SELLER, unless otherwise directed in writing by SELLER or SELLER'S counsel for the balance of the purchase price due at closing as set forth in this Agreement less the amounts of all mortgage payoffs.  Additionally, BUYER'S attorney shall tender separate bank or treasurer's check(s) to SELLER for payoff of SELLER'S mortgage obligations.

On or before ten calendar days (10) before closing, SELLER shall provide BUYER's attorney with written directions for each mortgage payoff stating the name of payee and the total amount of payoff together with a copy of the associated payoff statement(s).  SELLER shall calculate the total payoff amount (including applicable per diems, late charges, etc.) that shall be in an amount sufficient to pay the mortgage in full.  SELLER shall be responsible for preparing the mortgage payoff package(s) and transmittal(s).  Immediately after closing, SELLER'S attorney shall wire or hand deliver or send via overnight carrier the payoff funds and package to the SELLER'S lender(s).

**4. FIXTURES**.  (a)  Included in this sale, for the aforesaid purchase price, are the following items, all of which items the SELLER represents are owned by SELLER, not leased, and free from security interests, liens, and other encumbrances,  insofar as any of them were located on the Premises at the time of BUYER'S inspection: heating, cooling, electrical and plumbing systems and fixtures, electric light fixtures, installed wall to wall carpeting, security system, stove, storm windows and doors, screens and screen doors, window shades, venetian blinds, curtain rods, awnings, any affixed satellite dish(es), weathervanes, mail box(es), all pool equipment, garage door openers with remotes, and existing plants and shrubbery, together with: **OUTDOOR FURNITURE, GYM EQUIPMENT, ~~POOL TABLE~~, HOME THEATER FURNITURE AND EQUIPMENT, ALL TELEVISIONS AND OTHER A/V EQUIPMENT, WINDOW TREATMENTS, DRAPES, ALL APPLIANCES AS PER LISTING**

(b)     Specifically **excluded** from the sale are:  **POOL TABLE**

(c)     Except as otherwise set forth herein, if any fixtures are leased, SELLER shall provide the name and contact information of the lessor as soon as possible, but not later the two (2) business days before the closing of title.  The following fixtures are leased: **<u>NONE</u>**

5.    **MORTGAGE CONTINGENCY**. This Agreement is **NOT** contingent upon BUYER obtaining a written ~~commitment for a loan without any condition(s) beyond BUYER'S reasonable ability to satisfy, to be secured by a first mortgage on the Premises, in such an amount for which BUYER shall apply which shall not be in excess of  $_____ from a lending institution or licensed mortgage broker, which loan shall be for a term of _____years and shall bear interest at a rate not to exceed _____ or prevailing rate, at a fixed/variable rate at the institution where application is made.  BUYER agrees to make prompt application for such a loan and to pursue said application with diligence.  If having done so, BUYER is unable to obtain a written commitment for such a loan on or before _____, 201_____, and if BUYER so notifies SELLER or SELLER's attorney, as provided in Paragraph 32, at or before 6:00 p.m., on said date, then SELLER shall have the option to extend the mortgage contingency date or terminate this Agreement, which shall then be null and void, and the BUYER shall be entitled to the immediate return by SELLER of all sums paid by the BUYER on account of this Agreement except for the sum of Four Hundred Fifty ($450.00) Dollars towards the cost of preparation of this Agreement.~~

~~If BUYER exercises this mortgage contingency, Buyer must provide a letter from Buyer's lender that demonstrates that Buyer could not obtain a written loan commitment without conditions that are beyond Buyer's reasonable ability to satisfy. If SELLER or SELLER's attorney do not receive such notice as provided in Paragraph 32 at or before 6:00 p.m. on said date, this Agreement shall remain in full force and effect.~~

~~The foregoing notwithstanding, a denial of BUYER's mortgage application based solely upon the BUYER's inability to sell other real estate or another home, or a written commitment conditioned solely on the sale of other real estate or another home, shall NOT be deemed a denial of such mortgage application under this paragraph.  In either of such events the BUYER shall not be entitled to terminate this Agreement nor be entitled to the return of any sums paid by the BUYER on account of this Agreement.  Should the BUYER fail to comply with the foregoing requirements, this Agreement shall continue in full force and effect, and the rights and obligations of the parties shall be as if this Paragraph 5 did not appear in this Agreement.~~

6.    **MUNICIPAL CONTINGENCY and TITLE CONTINGENCY**

A.  BUYER's obligations are contingent upon a BUYER obtaining "reasonably satisfactory title" and "reasonably satisfactory municipal searches" to be completed no later than 6 pm on **OCTOBER 3, 2024** ("Title and Municipal Date").  In the event one or both such searches are not reasonably satisfactory to the BUYER, BUYER shall have the right to terminate this Agreement by giving written Notice as provided in Paragraph 32 of such termination on or prior to the Title and Municipal Date. Upon receipt of such Notice, SELLER shall return all Deposit monies as soon as practicable as paid hereunder except for the sum of Four Hundred Fifty ($450.00) Dollars towards the cost of preparation of this Agreement and, upon delivery of such funds, this Agreement shall terminate.

B.  For the purposes of this Paragraph 6, "reasonably satisfactory title" shall mean: (i) title which conforms to Schedule A and (ii) does not contain any restrictions on the use of the property which would significantly impair BUYER's stated intended use and enjoyment of the Property.  Utility easements, so long as the same are limited to bringing service to the Property, shall not be deemed to impair the use and enjoyment of the Property.

C.  For the purposes of this Paragraph 6, a "reasonably satisfactory municipal search", if any,

shall mean a search showing matters of public record which: (i) materially conform to the listing provided to BUYER by SELLER'S agent, (ii) conform to such facts that a physical inspection of the property shall reveal, (iii) do not reveal any unpermitted work or open permits requiring final municipal approval that are not likely to be cured by SELLER prior to closing and (iv) are internally consistent (for example, the assessor's records are consistent with health department records as to number of bedrooms in the home).

D. Nothing in this Paragraph 6 shall limit the parties' remedies as otherwise provided in this Agreement.

**7.     CONDITION OF PREMISES [THIS AGREEMENT IS NOT SUBJECT TO ANY INSPECTION CONTINGENCIES]**.  The BUYER agrees that she has inspected said Premises, is satisfied with the physical condition thereof and agrees to accept at closing the Premises in the condition that the Premises ~~were disclosed to be or~~ were in as of the date of BUYER's initial home inspection or, if no inspection, on the date of this Agreement, in an "as is" and "where is" condition, reasonable wear and tear excepted.  Neither SELLER nor SELLER's agents have made any representations or warranties as to the Premises on which BUYER has relied other than as expressly set forth in this Agreement. **BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS NEVER OCCUPIED THE PREMISES AND HAS NO KNOWLEDGE OF THE CONDITION OF THE PREMISES. SELLER AGREES TO HAVE THE HVAC SYSTEM SERVICED PRIOR TO CLOSING UTILIZING THE SERVICES OF A LICENSED HVAC COMPANY TOGETHER WITH PAID RECEIPT**.

8.  **DEED**.  The SELLER, on receiving the total purchase price, shall, at the SELLER's cost and expense, execute, acknowledge, and deliver to the BUYER, or BUYER's permitted assigns, the usual Connecticut ~~full covenant Warranty Deed (or~~ **appropriate Fiduciary's Deed and/or Bankruptcy Court Order**~~)~~ in proper form, to convey to the BUYER, or BUYER's permitted assigns, the fee simple of the Premises, free of all encumbrances except as hereinafter provided. The SELLER shall thereupon pay all real estate conveyance taxes and shall complete and deliver to the BUYER the conveyance tax forms.

9.  **CLOSING**.  The deed shall be delivered at the offices of **Neubert Pepe & Monteith, P.C., 72 Ruane Street, Fairfield, CT 06824** or at such place in Fairfield County, Connecticut, as may be designated by BUYER's lending institution on **the 15th day after Bankruptcy Court approval** (**as defined in Paragraph 10(e) (vii)**) at 10:00 A.M./P.M. or sooner by mutual agreement of the parties hereto ("the Closing Date").  **Closing may take place via overnight delivery of sale documents and wire transfer of closing funds. IN NO EVENT SHALL THE CLOSING BE HELD EARLIER THAN 45 DAYS FROM CONTRACT SIGNING UNLESS BUYER AGREES TO SAME.**

10.  **TITLE**.  (a)  If, upon the date for the delivery of the deed, the SELLER shall be unable to deliver or cause to be delivered a deed or deeds conveying marketable title to the Premises as

hereinafter provided, subject only to the items set forth in Schedule A and Paragraph 10(e) hereof, then the SELLER shall be allowed a reasonable postponement of closing not to exceed thirty (30) calendar days, within which to perfect title.  If at the end of said time the SELLER is still unable to deliver or cause to be delivered a deed or deeds conveying a marketable title to said Premises, subject as aforesaid, the BUYER (i) may elect to accept such title as the SELLER can convey, without modification of the purchase price, or (ii) may reject such title.  Upon such rejection, all sums paid on account hereof, together with any nonrefundable expenses actually incurred by the BUYER in the aggregate not to exceed the cost of an A.L.T.A. Homeowner's Policy (or the equivalent thereof) based on the amount of the contract purchase price shall be paid to the BUYER without interest thereon.  Upon receipt of such payment, this Agreement shall terminate and the parties hereto shall be released and discharged from all further claims and obligations hereunder.  SELLER shall be entitled to require BUYER to provide reasonable proof of payment of said expenses.

(b)  The title herein required to be furnished by the SELLER shall be marketable, subject only to the items set forth in Schedule A and Paragraph 10(e) hereof, and the marketability thereof shall be determined in accordance with the Connecticut General Statutes and the Connecticut Standards of Title of the Connecticut Bar Association from time to time in effect.  Any and all defects, in or encumbrances against, the title which are not deemed to impair marketability under the Connecticut General Statutes and the Connecticut Standards of Title of the Connecticut Bar Association shall not constitute valid objections on the part of the BUYER, provided the SELLER furnishes any affidavits or other instruments which may be required by the applicable Statutes or Connecticut Standards of Title. The title must be insured at standard premiums by Buyer's title insurance company.

(c)  The SELLER represents that **TO SELLER'S ACTUAL KNOWLEDGE, WITH NO DUTY OF INQUIRY,** the Premises and the present use thereof are not in violation of any governmental rules, codes, permits, regulations or limitations, unless same have become legally nonconforming, and there are no violations of any enforceable restrictive covenant, agreement or condition subject to which title to the Premises is to be conveyed in accordance with the terms hereof.  Between the date of this Agreement and the Closing Date as set forth in Paragraph 9, the SELLER will not do anything or allow anything to be done on or about the Premises which will result in any such violation.  The SELLER represents that SELLER has not received any notice of zoning or building violations and that there has been no attempt to enforce same against the SELLER during the time in which the SELLER has owned the Premises.  SELLER represents that SELLER has no knowledge of any special assessments levied or to be levied against the Premises which are not yet a lien on the Premises and has no knowledge of any existing improvements or work done on the Premises which may result in special taxes or assessments to be paid thereon.

(d)  Notwithstanding anything to the contrary contained in this Agreement , in the event the SELLER after due diligence cannot obtain a release for any existing mortgage on the Premises at the time of the closing of title from the holder of said mortgage, or any assignee thereof, either because said holder will not release the mortgage without first receiving payment or because the holder has delayed in sending the attorney for the SELLER the release of mortgage, then BUYER and SELLER agree to close title notwithstanding the absence of the release of

mortgage, provided the attorney for the SELLER furnishes the attorney for the BUYER, at the closing, with (a) a written payoff statement and a copy of the payoff check or wire form evidencing that payment of the unreleased mortgage is to be made in full at the time of the closing and (b) a fully-executed  undertaking and indemnity to make said payment in the form annexed hereto, and further provided that a title insurance company reasonably satisfactory to the BUYER will issue a fee policy at no additional premium which takes no exception for said mortgage or mortgages or which provides affirmative coverage against loss or damage by reason of said unreleased mortgage or mortgages.

SELLER shall exercise due diligence to obtain any such release or releases and will upon receipt thereof immediately record the same and forward a copy or copies thereof to BUYER's attorney with recording information.  If SELLER has not obtained such release within sixty (60) calendar days after closing, Seller  shall give to BUYER's attorney an affidavit provided for in Connecticut General Statutes Section 49-8(a), as amended, together with the necessary recording fee.  This provision shall survive the closing.

   (e)  The Premises will be conveyed to and accepted by the BUYER subject to:

       (i)  Any and all zoning and/or building restrictions, limitations, regulations, ordinances, and/or laws; any and all building lines; and all other restrictions, limitations, regulations, ordinances and/or laws imposed by any governmental authority and any and all other provisions of any governmental restrictions, limitations, regulations, ordinances and/or laws, provided the Premises are not in violation of same at the time of closing.

       (ii)  Real Property Taxes on the Current Grand List and any and all existing tax payments, municipal liens and assessments, coming due on or after the Closing Date; the BUYER shall by acceptance of the deed assume and agree to pay, any and all such tax payments, liens and assessments which may on or after the date hereof be assessed, levied against or become a lien on the Premises,.

       (iii)  Any state of facts which a survey and/or physical inspection of the Premises might reveal, provided same do not render title unmarketable as determined under Paragraph 10(b) hereof (such exception is for purposes of this Agreement only and shall not be included in the deed, unless it was in the deed which SELLER received upon purchasing the property).

       (iv)  Common law, riparian or littoral rights of others and/or other rights, if any, in and to any natural watercourse or body of water flowing through or adjoining the Premises, and all statutory and other rights of others in and to any such watercourse or body of water.

       (v)  Unless otherwise specifically agreed between the parties in writing, any municipal assessment other than taxes (such as for sewers and the like) shall be paid on a current basis by the SELLER and the balance assumed by the BUYER at closing.

       (vi)  Such encumbrances as shown on Schedule A, if any.

**(vii) The entry of a Bankruptcy Court Order approving this Agreement and the conveyance by SELLER to BUYER by the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court")in the pending chapter 11 proceedings of Ho Wan Kwok, case no 22-50073.**

11.  **LIEN**.  ~~All sums paid on account of this Agreement and the reasonable expenses as set forth in Paragraph 10, Paragraph 14 and Paragraph 20 hereof are hereby made liens on the Premises. The parties shall execute a Notice of Contract, if requested by one of the parties to this Agreement, pursuant to CGS 49-92a.~~ **BUYER AGREES BUYER SHALL NOT LIEN THE PREMISES OR RECORD A NOTICE OF CONTRACT**.

12.  **BROKER(S)**.  The parties hereto agree **COMPASS INC. and SOTHEBY'S INTERNATIONAL REALTY** are the broker(s) who negotiated the sale of the Premises, and the **SUBJECT TO THE OCCURRENCE OF THE CLOSING**, SELLER agrees to pay ~~the~~ **a** commission **OF 2.25% OF THE PURCHASE PRICE TO EACH BROKER** for such services ~~pursuant to separate agreement~~.  This Agreement is consummated by the SELLER in reliance on the representation of the BUYER that no other broker or agent brought the Premises to the BUYER's attention or was, in any way, a procuring cause of this sale and purchase.  The SELLER represents to the BUYER that no other broker or agent has any exclusive sale or exclusive agency listing on the Premises.  The parties hereto (jointly and severally, if more than one) hereby agree to indemnify and hold each other harmless against any liability by reason of the claim of any other broker or agent for a commission on account of this sale, provided that it is adjudged by ~~a court of competent jurisdiction~~ **THE BANKRUPTCY COURT** that a commission is due by reason of such other broker or agent being the procuring cause of this sale on behalf of the BUYER, said indemnity to include all costs of defending any such claim, including reasonable attorney's fees.  In the event of any such claim, the party having notice of such claim shall promptly notify the party without notice of same who shall have the right, but not the obligation, to assume the defense of such claim.  The provisions of this paragraph shall survive the closing.

13.  **APPORTIONMENT**. Unless otherwise agreed to in a Consumer Finance Protection Bureau ("CFPB") addendum, real estate taxes, fire district taxes, sewer taxes, sewer assessments and sewer use charges or other municipal assessments, water charges, rents, service contracts, dues and ordinary assessments of private associations, and common charges, if any, together with interest thereon, if any, shall be apportioned over the fiscal period for which levied. BUYER shall reimburse SELLER at closing for any fuel remaining on the Premises at then market rates.  All adjustments shall be apportioned based upon a 365 day year and the actual number of days in the month in which the closing occurs.  Condominium special assessments due and payable prior to closing shall be SELLER's responsibility.  Any errors or omissions in computing apportionment or other adjustments at closing shall be corrected within a reasonable time following the closing, not to exceed six (6) months.  Apportionment agreed to as a result of CFPB disclosures shall not constitute an "omission" or "error" for the purpose of this Paragraph 13. The provisions of this Paragraph shall survive the closing.

14. **RISK OF LOSS**.  The risk of loss or damage by fire or other casualty to the buildings on the Premises until the time of the delivery of the deed is assumed by the SELLER.  ~~Throughout the period between the date of this Agreement and the delivery of the deed, SELLER shall continue to carry his existing fire and extended coverage insurance on the buildings on the Premises~~.  In the event that such loss or damage does occur prior to the delivery of the deed, the SELLER shall be allowed a reasonable time thereafter, not to exceed thirty (30) calendar days from such loss or damage, within which to repair or replace such loss or damage to BUYER's reasonable satisfaction.  In the event the SELLER does not repair or replace such loss or damage to BUYER's reasonable satisfaction within said time, the BUYER shall have the option:

(a)  of terminating this Agreement, in which event all sums paid on account hereof, together with any nonrefundable expenses actually incurred by the BUYER in the aggregate not to exceed the cost of an A.L.T.A. Homeowner's Policy (or the equivalent thereof) based on the amount of the purchase price shall be paid to the BUYER without interest thereon.  Upon receipt of such payment, this Agreement shall terminate and the parties hereto shall be released and discharged from all further claims and obligations hereunder.  SELLER shall be entitled to require BUYER to provide reasonable proof of payment of said expenses; or

(b)  of accepting a deed conveying the Premises in accordance with all the other provisions of this Agreement upon payment of the aforesaid purchase price and of receiving an assignment of all**, if any,** insurance moneys recovered or to be recovered on account of such loss or damage, to the extent they are attributable to loss or damage to any property included in this sale together with the amount of the deductible withheld from payment, less the amount of any moneys actually expended by the SELLER on any repairs to said property.

The SELLER shall not be responsible for loss or damage to trees or other plantings due to natural causes.

15. **AFFIDAVITS/1099 REPORTING:**

  A.  The SELLER agrees to execute, at the time of closing of title;

(1)  an affidavit, (i) verifying the non-existence of mechanics' and materialmen's lien rights, (ii) verifying the non-existence of any tenants' rights, other than as set forth herein, (iii) verifying the non-existence of any security interests in personal property and fixtures being sold with the Premises, and (iv) updating to the extent of SELLER's knowledge, any available survey, together with any other affidavit reasonably requested by the BUYER's lender or title company as to facts within SELLER's knowledge; and, if true,

(2)  affirming that SELLER is not a "foreign person" pursuant to Internal Revenue Code §1445 and, if SELLER is unable to provide an affidavit affirming same, the parties agree to comply with all applicable laws including all relevant provisions under Internal Revenue Code §1445, et. seq., as amended.

B.   Unless otherwise provided, the BUYER agrees to execute and file a Form 1099 Report in connection with the Purchase and Sale of Real Estate as may be applicable to the transaction contemplated herein, and the SELLER must provide information relevant thereto.

16. **STATUTORY NOTICES/WAIVER**:

The SELLER gives notice to the BUYER as follows:

A.   The Commissioner of Environmental Protection must provide the Town Clerk of the town in which the Premises are located with a list of all hazardous waste facilities located within such town and a notice of the list shall be maintained by the town clerk of such town and the town clerk shall post a notice of the list in the area where the land records are kept.  Pursuant to Conn. Gen. Stat. §20-327f, the SELLER hereby provides notice to the BUYER of the availability of this list.

B.   The SELLER further provides notice to the BUYER that a list of any local properties upon which hunting or shooting sports regularly take place may be available at the Town Clerk of the municipality where the Premises are located, and the SELLER has no knowledge of any error, omission, or inaccuracy in such list.

C.   LEAD-BASED PAINT.  By signing this Agreement, BUYER acknowledges that the lead paint contingency granted pursuant to §42 USC 4852d as set forth in the Lead Paint Disclosure report attached to this Agreement has been waived or has been satisfied, and that the BUYER has no further testing period for lead paint.

17.   **SMOKE DETECTOR/CARBON MONOXIDE AFFIDAVIT.   SMOKE DETECTOR/CARBON MONOXIDE AFFIDAVIT**. ~~At closing of title, SELLER shall leave the existing smoke alarms and carbon monoxide detectors in place.  Having no expertise with respect to the operation or placement of smoke alarms and carbon monoxide detectors and having made no inspection of same, SELLER represents that SELLER is not aware of any defects with respect to same.  Notwithstanding the foregoing, SELLER will either provide at closing the affidavit required by Conn. Gen. Stat. § 29-453, and as same may be amended, or, if no affidavit is provided, SELLER shall give BUYER a credit in the amount of $250.00~~ . **BUYER AND SELLER AGREE THAT SELLER IS EXEMPT FROM THE REQUIREMENTS OF CONN. GEN. STAT. SEC. 29-453.**

18.   **MAINTENANCE**.  The house, grounds and facilities shall be maintained by the SELLER between the date of BUYER's signing hereof and the closing of title, including the mowing of lawns, the raking of fallen leaves, the removal of fallen trees and large branches (except in uncultivated areas), and the removal of snow and ice from walks and driveways.  In the event there is a pool that has been opened prior to the closing, SELLER shall continue to perform normal maintenance of same.  **SELLER WILL CLOSE THE POOL.**

19.   **DELIVERY OF PREMISES**.  The SELLER agrees to deliver, simultaneously with the closing of title, exclusive possession of the Premises (except as may be otherwise provided herein), broom-clean, free of all debris, litter and furnishings and shall deliver all keys, garage

door openers (if any), and alarm codes (if applicable) in SELLER's possession to the BUYER. BUYER shall have the right to make a final inspection of the Premises prior to the closing of title.

20. **LIABILITY FOR DELAYED CLOSING**.  **EXCEPT AS PROVIDED HEREIN,** In the event of a delay in closing as set forth herein, other than as provided for under the provisions of this Agreement, through no fault of the SELLER, beyond five (5) business days, then the BUYER will reimburse the SELLER from the sixth (6th) business day to the actual date of closing for the SELLER's carrying costs of said property, including taxes, mortgage interest, utilities and per diem interest on SELLER's equity in the Premises, which amount shall be calculated at the rate of 1/30th of 1% of the purchase price for each day of delay from the sixth (6th) business day up to the actual date of closing. ~~Further, in the event of a delay in closing by more than five (5) business days, through no fault of the BUYER, SELLER shall reimburse BUYER for carrying costs for temporary housing, temporary storage of personal property, living expenses and other miscellaneous expenses at the same per diem rate of 1/30th of 1% of the purchase price for each day of delay from the sixth (6th) business day up to the actual date of closing. For example, the per diem cost of a $450,000 transaction would be $150 per day.~~

~~Notwithstanding anything else in this Agreement, provided BUYER's mortgage commitment and rate lock do not expire before five (5) business days after the Closing Date, any right of the SELLER to delay closing under this Agreement (including the cure provisions in Paragraphs 10 and 14) shall not extend beyond the expiration date of BUYER's mortgage commitment or rate lock, or such extended date which is available at no cost to BUYER.~~

If the BUYER terminates this Agreement due to SELLER's refusal to close within the timeframe provided above, then BUYER shall receive all sums paid on account hereof, together with any nonrefundable expenses actually incurred by the BUYER in the aggregate not to exceed the cost of an A.L.T.A. Homeowner's Policy (or the equivalent thereof) based on the amount of the purchase price, which shall be paid to the BUYER without interest thereon.

21. **DEFAULT**.  If  (a) BUYER is in material default hereunder, or, (b) on or before the Closing Date as set forth herein, BUYER indicates that BUYER is unable or unwilling to perform, and provided SELLER stands ready to perform SELLER's obligations, SELLER's sole and exclusive remedy shall be the right to terminate this Agreement by written Notice pursuant to Paragraph 32 to BUYER or BUYER's attorney and the Escrow Agent and SELLER shall retain the Deposit **AND BE ENTITLED TO RETAIN OR COLLECT ANY SUMS PAID OR DUE UNDER PARAGRAPH 20. TO THE DATE OF SUCH WRITTEN NOTICE OF TERMINATION** as reasonable liquidated damages for BUYER's inability or unwillingness to perform.  In the event  such written Notice of termination of this Agreement is given by SELLER, the Premises shall be free of any claims or interest of the BUYER therein by virtue of this Agreement, provided neither party objects to same within 5 business days of receipt of Notice of termination.

It is the intention of the parties hereto freely to make advance provision on the date of this Agreement for such event in order (a) to avoid controversy, delay and expense, and (b) to specify now a reasonable amount agreeable to both for compensation to the SELLER for losses which may not be readily ascertainable or quantifiable, such as any of the following which might be

necessary to place SELLER in the position SELLER would have been in had BUYER made timely performance:  costs of carrying, maintaining, insuring and protecting the property; loss of interest income on the proceeds; loss of optimum market time, value and conditions; the uncertainty, delay, expense and inconvenience of finding a substitute BUYER; additional commissions, fees, taxes and borrowing expenses to meet obligations entered into in anticipation of performance.

~~In the event closing has not taken place within thirty (30)~~ **NINETY (90)** ~~calendar days following the Closing Date as it may be extended pursuant to the provisions hereof, through no fault of the non-delaying party, the delaying party shall be deemed in default.~~ **EXCEPT AS OTHERWISE SET FORTH HEREIN,** if SELLER is in material default hereunder, BUYER shall have such remedies as BUYER shall be entitled to at law or in equity, including, but not limited to, specific performance, **PROVIDED THAT SUCH REMEDIES MUST BE PURSUED IN THE BANKRUPTCY COURT**.

22.  **PROPERTY CONDITION DISCLOSURE FORM**.  ~~Attached hereto as a Rider is the Property Condition Disclosure Form required by Conn. Gen. Stat. §20-327b.  In the event the SELLER has not furnished BUYER with the Property Disclosure Form, if required by §20-327b of the Connecticut General Statutes, with or prior to the BUYER's execution of this Agreement, the SELLER shall give and the BUYER shall receive at closing a credit against the purchase price in the amount of $500.00.~~ **BUYER AND SELLER AGREE THAT SELLER IS EXEMPT FROM THE REQUIREMENTS OF CONN. GEN. STAT. SEC. 20-327b.**

23.  **DELIVERY OF DOCUMENTS**.  The SELLER shall deliver to the BUYER prior to closing any documents, informational materials, building plans and any surveys in the SELLER's possession pertaining to the Premises, the appliances and the systems on or within the Premises.

24.  **RIGHT TO WITHDRAW**.  This Agreement shall not be considered or construed as an offer by the SELLER.  The SELLER reserves the right to withdraw this proposed Agreement at any time prior to the signature by both parties hereto and receipt by the SELLER's attorney as the escrow agent of the full payment of the Deposit set forth herein, and delivery of a fully executed Agreement to the BUYER's Attorney at the address provided in Paragraph 32.

25.  **ASSIGNMENT**.  This Agreement and BUYER'S rights hereunder may not be assigned by BUYER without the written consent of SELLER, and any purported assignment without such written consent shall be void and of no effect.  Consent of the SELLER to assignment shall not unreasonably be withheld, conditioned or delayed.  Upon any effective assignment of BUYER's rights hereunder, BUYER and BUYER's assignee shall be jointly and severally liable hereunder, unless otherwise agreed by SELLER.

26.  **ACCEPTANCE OF DEED**.  The delivery and acceptance of the deed herein described shall be deemed to constitute full compliance with all the terms, conditions, covenants and representations contained herein, or made in connection with this transaction, except as may herein be expressly provided and except for the warranties of title.

27.  **REPRESENTATIONS**. Unless otherwise specified herein, none of the representations made in this Agreement including all attachments shall survive delivery of the deed, and all representations by SELLER are made to the best of SELLER's knowledge and belief and without duty of inquiry.  SELLER shall have an affirmative obligation to notify BUYER if any of the representations in this Agreement or in all Attachments are no longer true.  Except in the event of an intentional misrepresentation, if BUYER discovers prior to the closing of title any material representation contained in this Agreement including all Attachments to be untrue, the remedy of the parties shall be those available to them in the event of a valid defect in or objection to title, as set forth in Paragraph 10, above.  In the event of an intentional misrepresentation, BUYER shall have available all rights in either law or equity.

28.     **SELLER'S REPRESENTATIONS REGARDING BANKRUPTCY**. ~~SELLER represents that they are not presently, nor have they been, debtors in a bankruptcy proceeding in which the Bankruptcy Court presently has continuing jurisdiction over their assets.  The SELLER further represents that the Premises is not in the hands of a receiver or other liquidating agent. These representations shall survive the closing of title~~. **BUYER ACKNOWLEDGES THAT SELLER IS THE CHAPTER 11 TRUSTEE OF THE HO WAN KWOK BANKRUPTCY ESTATE AND THE BANKRUPTCY COURT HAS JURISDICTION OVER THIS AGREEMENT AS FURTHER SET FORTH HEREIN**.

29.  **EFFECT**.  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, and permitted assigns of the respective parties.

30.  **COSTS OF ENFORCEMENT**.  Except as otherwise expressly provided herein, in the event of any litigation brought to enforce any material provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and court costs, including interest as may be provided by  law,  from the other party.

31.  **GENDER.**  In all references herein to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within Agreement may require.

32.  **COUNTERPARTS / FACSIMILE / ELECTRONIC MAIL/NOTICES.**  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, and all of which when taken together shall constitute one and the same Agreement.  The parties hereto agree that this Agreement may be transmitted between them or their respective attorneys by facsimile or electronic mail and, upon evidence of receipt of same, shall constitute delivery of this Agreement.  The parties intend that faxed or electronic signatures constitute original signatures and that an Agreement containing the signatures (original, facsimile or electronic) of all the parties is binding on the parties once sent via facsimile or via electronic mail or delivered to the other party's counsel.

All notices under this Agreement shall be in writing and shall be delivered or sent by email, facsimile transmission, certified mail, or by overnight courier, addressed to the attorney for the respective party.  Notice signed by the respective attorneys shall be deemed sufficient within the

meaning of this paragraph without the signature of the parties themselves. Electronic signatures of the parties and of the attorneys for the parties on this Agreement, notices, or amendments to this Agreement shall be deemed to have the full force and effect of an original signature.

Each party authorizes their attorney as attorney-in-fact to execute all documents as may be required to effectuate the terms and conditions of this Purchase and Sale Agreement, once executed by the parties, including documents that may be reasonably requested and related to BUYER's lender's requirements.

Notices to the SELLER shall be sent to:
William Sherman, Esq.
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Phone  203-781-2868
Fax     203-821-2008

Notices to the BUYER shall be sent to:
Robert B. Potash, Esq.
31 Brookside Drive
Greenwich, CT 06830
Phone: (203) 661-7580
Fax: (203) 661-7623
Email: RBP@Potashlaw.com

33.  **ENTIRE AGREEMENT.**  All prior understandings, agreements, representations and warranties, oral and written, between SELLER and BUYER are merged in this Agreement and specified riders or attachments hereto.  This Agreement and Addendum to Agreement of Sale completely expresses the agreement of the parties, and has been entered into by the parties after discussion with their respective attorneys and after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this Agreement and Addendum to Agreement of Sale.  Neither this Agreement nor any provision hereof may be waived, changed or canceled except by a written instrument signed by both parties.

34.  **CAPTIONS**.  The captions preceding the paragraphs in this Agreement are for ease of reference only and shall be deemed to have no effect whatsoever on the meaning or construction of the provisions of this Agreement.

35.  **SEVERABILITY**.  The invalidity or unenforceability of any one or more provisions of this Agreement shall not render any other provision invalid or unenforceable.  In lieu of any invalid or unenforceable provision, there shall be added automatically a valid and enforceable provision as similar in terms to such invalid or unenforceable provision as may be possible.

36.  **ALTERATION OF STANDARD FORM**.  The BUYER and SELLER acknowledge that this is the current Residential Real Estate Sales Agreement as shown on the Fairfield County Bar Association website (the "Standard Form") and agree all deviations and changes made by either

the SELLER's or BUYER's attorney must be clearly marked in bold, underline and/or large font typeface, handwritten or otherwise highlighted to indicate the change(s). Should a change be made without clear marking or delineation, such provision shall be deemed not to be a part of this Agreement for any purpose, and shall be replaced with the provision of the Standard Form that has been changed or eliminated. Any eliminated sections of the Standard Form also shall be deemed to be a part of this Agreement unless a reference to its deletion is clearly marked in accordance with this paragraph or described in a separate cover letter. Addenda, exhibits, attachments and riders to this Agreement are not subject to the requirements of this paragraph.

**37.    BUYER agrees that Luc A. Despins is party to this Agreement solely in his capacity as Chapter 11 Trustee for the Bankruptcy Estate of Ho Wan Kwok and not his personal capacity. Accordingly, no claim whatsoever may be asserted by BUYER against Luc A. Despins in his personal capacity.**

**38.    BUYER represents and warrants that BUYER is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok**

**39.    Notwithstanding anything herein to the contrary:**
**A. BUYER and SELLER agree that this Agreement and all terms hereof are subject to the approval of the Bankruptcy Court.**
**B. BUYER and SELLER agree that the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of this Agreement, including delivery of the deed by the SELLER, and the parties irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to this Agreement will be decided in the Bankruptcy Court, and, further, not to bring any claim relating to this Agreement in any other court. For the avoidance of doubt, SELLER shall not be liable to BUYER for a delayed closing or be in default hereunder if the Bankruptcy Court shall not approve of this Agreement. In the event that this Agreement is not approved by the Bankruptcy Court, the BUYER shall be returned the Deposit(s) paid hereunder, then this Agreement shall terminate and the parties hereto shall be released and discharged from all further claims and obligations hereunder.**
**C. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Premises to BUYER shall provide that the Premises are being sold free and clear of any encumbrances except as set forth herein.**

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the parties to these presents have hereunto set their hands and seals, as of the day first above written.

_____
Luc A. Despins, as Chapter 11 Trustee of the Estate of Ho Wan Kwok, SELLER

_____
**ANN RICHARDSON KNOX**, BUYER

Title to said Premises is to be taken in the name or names of:

**as** _____

**ACCEPTANCE OF ESCROW**          **DATED:** _____

**I HEREBY ACCEPT RECEIPT OF THE DEPOSIT AS SPECIFIED IN PARAGRAPH 2, SUBJECT TO COLLECTION, AND THE UNDERSIGNED AGREES TO ACT IN ACCORDANCE WITH THE PROVISIONS OF PARAGRAPH 3 OF THIS AGREEMENT.**

_____
**THE ESCROW AGENT: NEUBERT PEPE & MONTEITH, P.C.**

Attachments: (For Reference Only)
Legal Description ("Schedule A")
Residential Condition Property Disclosure Report

This is the July 14, 2015 version of the Fairfield County Bar Association Residential Real Estate Sales Agreement approved and adopted by the Fairfield County Bar Association.

IN WITNESS WHEREOF, the parties to these presents have hereunto set their hands and seals, as of the day first above written.

_Luc A. Despins, as Chapter 11 Trustee_

Luc A. Despins, as Chapter 11 Trustee of the
Estate of Ho Wan Kwok, SELLER

_____

**ANN RICHARDSON KNOX**, BUYER

Title to said Premises is to be taken in the name or names of:

**as** _____

**ACCEPTANCE OF ESCROW**          **DATED:**_____

**I HEREBY ACCEPT RECEIPT OF THE DEPOSIT AS SPECIFIED IN PARAGRAPH 2, SUBJECT TO COLLECTION, AND THE UNDERSIGNED AGREES TO ACT IN ACCORDANCE WITH THE PROVISIONS OF PARAGRAPH 3 OF THIS AGREEMENT.**

_____

**THE ESCROW AGENT:  NEUBERT PEPE & MONTEITH, P.C.**

Attachments:  (For Reference Only)
Legal Description ("Schedule A")
Residential Condition Property Disclosure Report

**This is the July 14, 2015 version of the Fairfield County Bar Association Residential Real Estate Sales Agreement approved and adopted by the Fairfield County Bar Association.**

IN WITNESS WHEREOF, the parties to these presents have hereunto set their hands and seals, as of the day first above written.

_____
Luc A. Despins, as Chapter 11 Trustee of the
Estate of Ho Wan Kwok, SELLER

_____
**ANN RICHARDSON KNOX**, BUYER

Title to said Premises is to be taken in the name or names of:

**as** _____

**ACCEPTANCE OF ESCROW**          **DATED:** 9/26/2024

**I HEREBY ACCEPT RECEIPT OF THE DEPOSIT AS SPECIFIED IN PARAGRAPH 2, SUBJECT TO COLLECTION, AND THE UNDERSIGNED AGREES TO ACT IN ACCORDANCE WITH THE PROVISIONS OF PARAGRAPH 3 OF THIS AGREEMENT.**

**THE ESCROW AGENT:  NEUBERT PEPE & MONTEITH, P.C.**

Attachments:  (For Reference Only)
Legal Description ("Schedule A")
Residential Condition Property Disclosure Report

**This is the July 14, 2015 version of the Fairfield County Bar Association Residential Real Estate Sales Agreement approved and adopted by the Fairfield County Bar Association.**

# SCHEDULE A

ALL THAT CERTAIN piece, parcel or tract of land, together with the buildings thereon, situated partly in the Town of Greenwich and partly in the City of Stamford, both of the County of Fairfield and State of Connecticut, designated as Lot 26 on a certain map entitled, "Property of Northwich Development Company Greenwich and Stamford, Conn.", certified Substantially Correct by Allan S. Devaul for S.E. Minor & Co., Inc., Civil Engineers, Greenwich, Conn. Sept.26, 1962 and Revised Oct. 8, 1962, Dec. 11, 1962, on file in the Office of the Greenwich Town Clerk as the Map No. 4359, and shown and designated as Lot 26 on a certain map entitled, "Property of Northwich Development Company Greenwich and Stamford, Conn.", Certified Substantially Correct by Allan S. Devaul for S.E. Minor & Co., Inc., Civil Engineers, Greenwich, Conn. Apr. 3, 1963, on file in the Office of the Greenwich Town Clerk as Map No. 7604, reference thereto being had. Said premises are bounded:

| | |
|---|---|
| NORTHERLY: | 623.14 feet by land now or formerly or Parkchester Beach Club Corporation; |
| EASTERLY: | 272.78 feet by Taconic Road, so-called; |
| SOUTHERLY: | 620 feet by land now or formerly of Elizabeth Sprague Stout, being Lot 25, as shown on said maps; and |
| WESTERLY: | 330.53 feet by land now or formerly of Stanwich Club, Inc. |

Said premises are subject to:

1. Building lines, if established, building and zoning ordinances, and any and all municipal and state and federal regulations including inland wetlands regulations and provisions of any public or private law affecting said premises.

2. Real estate taxes to the Town of Greenwich on the Grand List of October 1, 2023, and real estate taxes due thereafter.

3. Real estate taxes to the City of Stamford on the Grand List of October 1, 2023, and real estate taxes due thereafter.

4. Declaration of Restrictions dated December 12, 1962 and recorded in Volume 679 at Page 513, as assigned by a deed dated December 8, 1963 and recorded in Volume 697 at Page 158, both of the Greenwich Land Records

5. Declaration of Inland Wetlands and Watercourses recorded in Volume 4218 at Page 181 of the Greenwich Land Records.

6. Zoning Appeals Board Certificate granted by the City of Stamford, Zoning Appeals Board dated April 28, 1963 and recorded in Volume 980 at Page 51 of the Stamford Land Records.

7.  Zoning Appeals Board Certificate granted by the City of Stamford, Zoning Appeals Board dated June 5, 1963 and recorded in Volume 980 at Page 494 of the Stamford Land Records.

8.  Permit granted by the City of Stamford, Environmental Protection Board recorded in Volume 6714 at Page 21, as amended by a Notice dated December 6, 2005 and recorded in Volume 8355 at Page 219, both of the Stamford Land Records.

9.  Landscape Maintenance Agreement dated May 15, 2003 and recorded in Volume 6897 at Page 32 of the Stamford Land Records