**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
HO WAN KWOK, *et al.*,[1]                              :    Case No. 22-50073 (JAM)
                                                       :
                       Debtors.                        :    (Jointly Administered)
                                                       :
-------------------------------------------------------x

**NOTICE OF FILING OF SUPPLEMENT TO
APPLICATION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER, PURSUANT
TO BANKRUPTCY CODE SECTIONS 327, 328, AND 330, BANKRUPTCY RULES 2014
AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1, AUTHORIZING
AND APPROVING RETENTION AND EMPLOYMENT OF ENSAFRICA
(MAURITIUS) AS ATTORNEYS IN REPUBLIC OF MAURITIUS**

**PLEASE TAKE NOTICE** that, on October 2, 2024, Luc A. Despins, in his capacity as

the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok, filed

the *Application of Chapter 11 Trustee for Entry of Order, Pursuant to Bankruptcy Code Sections*

*327, 328, and 330, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and*

*2016-1, Authorizing and Approving Retention and Employment of ENSafrica (Mauritius) as*

*Attorneys in Republic of Mauritius* [Docket No. 3625] (the "Application").[2]  The hearing on the

Application is scheduled for October 22, 2024 at 1:00 p.m. (ET).

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 1** are the

standard terms and conditions related to the Engagement Letter (a copy of which was attached to

the Application as Exhibit B).

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
       Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
       Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The
       mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings
       LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok
       (solely for purposes of notices and communications).

[2]    Capitalized terms used but not otherwise defined herein have the meanings set forth in the Application.

Dated:   October 9, 2024
         New York, New York

By: */s/ G. Alexander Bongartz*

G. Alexander Bongartz (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
alexbongartz@paulhastings.com

   *and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

   *and*

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                                       :
In re:                                                 :      Chapter 11
                                                       :
HO WAN KWOK, et al.,[1]                                :      Case No. 22-50073 (JAM)
                                                       :
              Debtor.                                  :      (Jointly Administered)
-------------------------------------------------------x
                                                       :
LUC A. DESPINS, Chapter 11 Trustee,                    :      Adv. Proceeding 23-5028
                                                       :
              Plaintiff,                               :
                                                       :
v.                                                     :
                                                       :
ACE DECADE HOLDINGS LIMITED,                           :
YANPING "YVETTE" WANG, AND                             :
RUI HAO                                                :
                                                       :
              Defendants.                              :
-------------------------------------------------------x
```

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date hereof, the foregoing Notice was

electronically filed.  Notice of this filing was sent by e-mail to all parties to the above-captioned

adversary proceeding by operation of the Court's electronic filing ("CM/ECF") system.  Parties

may access this filing through the Court's CM/ECF system.

Dated:      October 9, 2024
            New York, New York

                                        By: */s/ G. Alexander Bongartz*

---

[1]  The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202), and Genever Holdings Corporation. The mailing address for the Trustee and Genever Debtor is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

G. Alexander Bongartz (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
alexbongartz@paulhastings.com

*Counsel for the Chapter 11 Trustee*

## Exhibit 1

**Standard Terms and Conditions**



**ENSafrica**
18 Edith Cavell Street
Port Louis Mauritius
tel +230 212 2215
infoMRU@ENSafrica.com

## terms of engagement

1. **UMBRELLA TERMS OF ENGAGEMENT OF ENSAFRICA (MAURITIUS), ("ENS")**

1.1. This document sets out the terms and conditions upon which ENS agrees to act on your behalf.

1.2. ENS is a member of the ENS Group, which comprises of ENS and/or Edward Nathan Sonnenbergs Inc. ("ENS(sa)") and/or any of its subsidiaries (save Fiduciary Ltd) and/or any other legal entity, joint venture and/or partnership, wherever situated or operating (and irrespective of structure and/or legal nature/regime) that renders services or otherwise conducts business under a name which includes ENS and/or Edward Nathan or any variation thereof (including their subsidiaries, parties that are related or inter-related to them and/or their affiliated companies, to the extent applicable) and/or any trust founded by ENS(sa) for its own operations and/or any entities that are related and/or inter-related to those trusts, as the case may be, and all such entities' successors-in-title and/or practice, (collectively "ENS Group").

1.3. These terms will apply to all instructions given by you in respect of each of your particular matters.

1.4. If you do not accept or understand these terms for any reason you should notify ENS immediately in writing.

1.5. Save to the extent that you have notified ENS in writing beforehand to the contrary, any conduct by you or your agents relating to any of your particular matter/s, that could be construed by ENS as an instruction to ENS to commence, or to continue to act for you, will constitute an acceptance of these terms without the necessity for you expressly to agree to them (whether orally or in writing).

1.6. ENS may propose a variation or addition to these terms (which will apply not only to you but to other clients bound by similar terms) at any time, on notice to you in writing. Save to the extent that you have notified ENS in writing beforehand to the contrary, any conduct by you or your agents relating to any of your particular matter/s that could be construed by ENS as an instruction to ENS to continue to act for you after receipt of the proposal, will constitute an acceptance of such variation or addition without the necessity for you expressly to agree to same (whether orally or in writing). In addition to the above, these terms may be varied or added to by mutual agreement in writing at any time, for which purpose one executive from ENS and the office head of ENS ("Office Head") must sign such amendment or variation in order for it to be binding on ENS.

1.7. In these terms the words "other", "otherwise", "including", "in particular", or any other similar general term or expression must not be construed as being of the same kind, class or nature with any preceding words, nor do they limit the generality of any preceding word/s, if a wider construction is possible.

2. **PROCESSING OF PERSONAL DATA**

2.1. Personal data[1] which you provide ENS will be processed[2] by the ENS Group in accordance with the ENS Group privacy policy which can be found at https://www.ensafrica.com/privacy-policy. By providing your instructions in relation to any of your particular matter/s to ENS or by submitting any of your, your holding company, your respective subsidiaries', affiliates or their respective employees' details and any other personal information/data in any form to any member of the ENS Group, you freely, specifically and unconditionally consent to the ENS Group processing such personal data in accordance with and for any of the purposes set out in the ENS Group privacy policy.

2.2. If you provide personal data to us about someone else (such as one of your directors or employees, a member of your organisation, or family, or any person with whom you have business dealings), you must ensure that you have obtained their explicit consent to share their personal data with us and that, without taking any further action, we may collect, use and disclose those personal data. In particular, you confirm that you have procured the consent of your holding company and its subsidiary/ies whose personal data is provided to ENS for the processing of such information by the ENS Group in accordance with paragraph 2.1 and you warrant that you are lawfully entitled to share such information with the ENS Group. You indemnify the ENS Group against any loss, liability, damage or expense (including interest and penalties) suffered or incurred by any member of the ENS Group due to your failure to obtain the necessary consent.

2.3. Should you believe that ENS has utilised your personal data contrary to legislation in Mauritius as read with this paragraph 2, you also have the right to complain to the Data Protection Commissioner under the Data Protection Act, 2017. We would, however, appreciate the chance to deal with your concerns first and you accordingly undertake to first attempt to resolve any concerns with ENS by addressing a complaint in writing to the Information Officer of the ENS Group via email at info@ENSafrica.com and to the Office Head of ENS. If you are not satisfied with the outcome of such process, you have the right to lodge a complaint with the Data Protection Commissioner under the Data Protection Act, 2017.

3. **AUTHORITY**

ENS is given the usual authority given to professionals to act on your behalf as necessary or incidental to your particular matter/s which includes the authority to incur all expenses which it considers necessary or desirable for the proper conduct of any of your particular matter/s.

4. **PROFESSIONAL DUTIES**

4.1. In order to discharge its professional duty, ENS will throughout the handling of your particular matter/s rely on you to supply all necessary instructions and information promptly, and immediately advise it of any relevant change in circumstances.

4.2. The advice provided by ENS relates to your specific instructions and relies on the circumstances and information which you provide to ENS. You must not rely on the advice provided by ENS in different circumstances. Unless specifically instructed otherwise by you, ENS will not update the advice provided to you. The advice is given to you alone and no other person may rely on it. If you have instructed ENS to provide you with a legal opinion, prepare a report or otherwise give detailed advice, you should not rely on any oral or draft advice or report unless you have asked ENS to confirm that advice or report in writing and ENS has done so.

4.3. ENS is free to act for any other person, subject to any legal requirements to which it is obliged to adhere and subject to the provisions of these terms.

4.4. The relevant ENS professional (hereafter referred to as a "**professional**") dealing with your particular matter will advise you if he/she becomes aware of any new instruction which is received by ENS and which could result in a conflict. Whilst ENS has put provisions in place to conduct conflict checks when considering accepting an instruction, it is possible that the relevant professional dealing with your particular matter may not be aware of ENS representing another client in circumstances in which there could be a

---

[1] personal data is dealt with in the Data Protection Act, 2017
[2] "processing" includes but is not limited to processing as it is currently defined in the Data Protection Act, 2017 namely, an operation or set of operations performed on personal data or sets of personal data, whether or not by automated means, such as collection, recording, organisation, structuring, storage, adaptation or alteration, retrieval, consultation, use, disclosure by transmission, dissemination or otherwise making available, alignment or combination, restriction, erasure or destruction

**Africa's largest law firm**

ENSafrica (Mauritius)
Business registration number C13119274  VAT number 27244385
a joint law firm registered under The Law Practitioners Act 1984

ENSafrica.com

2

conflict regarding your particular matter ("**conflicting matter**"). If the relevant professional dealing with your particular matter becomes aware of a conflicting matter, he/she will bring that to your attention and :

4.4.1.    if this occurs at or shortly after the commencement of your particular matter, after discussion with you, ENS, reserves, at its election, the right to withdraw from your particular matter or to put in place Corporate Walls or other reasonable arrangements of a similar kind, such that all professionals at ENS who are dealing with your matter and the conflicting matter do not have access to confidential information of any ENS client in respect of which the conflict applies, other than their own client. In addition, no professional or other staff member of ENS working on your particular matter will be involved in the conflicting matter. In such circumstances it is agreed that ENS may continue to represent you and such other client/s and that in such circumstances all professionals at ENS who are dealing with your matter and the conflicting matter will no longer owe fiduciary duties to any ENS client in respect of which the conflict applies, other than to their own client/s;

4.4.2.    if this occurs at a progressed stage of your particular matter, in order to be fair to you and to other client/s of ENS, he/she will let you know and ENS will put in place Corporate Walls or other reasonable arrangements of a similar kind in accordance with paragraph 4.4.1. In such circumstances it is agreed that ENS may continue to represent you and such other client/s (or their holding company or their respective subsidiaries). If such Corporate Walls or other reasonable arrangements cannot be put in place, ENS reserves the right to withdraw from your particular matter and/or the conflicting matter/s. Of course you may terminate your mandate to ENS at any time if you so wish. If ENS withdraws, it will provide you with all reasonable assistance required for the purposes of handing over your particular matter to your newly appointed law practitioner. You shall remain liable for ENS' fees and disbursements (see paragraph 5) incurred up until the date on which you instruct ENS to hand your particular matter over or the date upon which ENS withdraws from that matter.

4.5.    ENS' acceptance of an instruction from you shall not preclude ENS from :

4.5.1.    continuing on behalf of any client with any instruction adverse to your interests (including in litigious matters against you) which were given before you instructed ENS in the potentially conflicting matter;

4.5.2.    taking on new instructions adverse to your interests, which flow from or are related to any instruction contemplated in paragraph 4.5.1, even after you have been a client for some time;

4.5.3.    accepting any future instruction/s against you (including in litigious matters), and this shall not create an obligation upon ENS to terminate its mandate or to withdraw from your particular matter/s.

4.6.    ENS will not disclose, other than to :

4.6.1.    any member of the ENS Group and any person who is employed by ENS or any member of the ENS Group, subject to paragraph 4.4.1 and provided that it is ENS' policy where its clients are in competition with each other or otherwise are likely to have continuous opposing interests not to staff their matters with overlapping professionals;

4.6.2.    any other persons expressly permitted in these terms;

4.6.3.    its auditors, insurers and/or insurance intermediaries;

4.6.4.    any person otherwise entitled at law to demand same,

any of your confidential information which it obtains as a result of acting for you, other than as necessary to carry out its mandate. Similarly, it will not disclose to you any confidential information which it has obtained as a result of acting for any other client.

4.7.    ENS does not provide commercial advice. The commercial implications of any of your particular matter/s remain for you to assess and no advice

provided by ENS should be construed as ENS making a recommendation as to whether or not you should proceed with your proposed transaction.

4.8.    If you cease to be a client of ENS, you acknowledge that ENS ceases to have any fiduciary obligations to you and only has the obligation not to disclose your confidential information. Accordingly ENS will be entitled to act for any of its clients against you and your interests, even in litigation against you, unless ENS is in possession of information confidential to you which would be relevant to the particular matter of the ENS client in question.

5.    FEES AND DISBURSEMENTS

5.1.    ENS charges a fee with careful regard, in each instance, to the facts of the matter and the parties and professionals involved, regulatory requirements, the volume, urgency, complexity, difficulty, novelty, financial implications and importance of the work done, the skill, labour, expertise, seniority, experience, special knowledge and responsibility on the part of the professionals involved, the time expended, the place where and circumstances in which work was done, the quality of the work done and the value added to you. In certain instances the fee will be determined with reference to the time expended and the charge-out rate of the professional concerned. In certain instances ENS may agree to provide you with an all-inclusive fee in respect of a particular matter, in which case the agreed fee will be charged without reference to the time expended and the charge out rate of the professional concerned and time sheets will not be maintained in such an instance. Should you require greater clarity in this regard, please discuss your concerns with the relevant professional at the outset of the particular matter.

5.2.    It is ENS' policy to call for payment in advance to cover the agreed fees, or if the fee is based on an hourly basis, then for a deposit to cover the fees from time to time.

5.3.    Disbursements incurred by ENS on your behalf may be billed separately and it is ENS' policy that you will be required to pay a sufficient deposit to cover such disbursements before ENS incurs same.

5.4.    Unless a fixed fee is specifically agreed upfront, any estimates of fees and expenses are given for guidance only on the basis of information then known by ENS and should not be regarded as quotations.

5.5.    Invoices will reflect fees and disbursement exclusive of VAT. VAT will be charged at the rate applicable from time to time.

5.6.    Interim accounts will be submitted when reasonable or, as otherwise may be agreed with you.

5.7.    You have the right to give ENS written notice to set a limit on the fees which you may wish to incur to ENS in relation to a particular matter. If that limit is reached, the professional dealing with your particular matter in respect of which a limit has been set will notify you thereof and await your further instructions as to whether or not you wish to proceed. You should understand that, particularly in relation to litigation matters, it is not possible to limit your liability in relation to the other party's/ies' costs.

6.    LIABILITY FOR OR CONTRIBUTION TOWARDS YOUR COSTS

If you have arranged for a third party to be liable for or to contribute towards your legal costs, ENS shall, where reasonably possible, accommodate you by billing the third party concerned. Notwithstanding any such arrangement, you shall remain liable for ENS' bills as its client and it shall look to you for payment in the event of default by the third party. Please note that in agreements where provision is made for any part of ENS' bills to be borne by any party to that agreement, that provision will not in any way relieve you from your liability to pay ENS' bills in full.

7.    PAYMENT

7.1.    ENS' invoices are due and payable against presentation. In addition to and without prejudice to the remedies set out in paragraph 12, ENS may at its election exercise all or any of the following remedies :

7.1.1.    suspend its services;

7.1.2.    retain any document until such time as payment is made; and/or

3

7.1.3.     charge interest on any amounts that remain outstanding 60 (sixty) days after presentation of the invoice from that date until the date of actual payment. Interest shall be charged at the prevailing legal rate in Mauritius.

7.2.     In the absence of specific written instructions to the contrary, ENS shall have the right to set off from any amounts held by it in trust from time to time, such amounts as may be necessary to defray disbursements incurred on your behalf or to pay interim and/or final fee.

7.3.     Payment of ENS invoices shall be made without set-off and you shall not be entitled for any reason whatsoever to withhold payment of any fees or disbursements incurred by or owing to ENS whether it incurred any such disbursements in your name or in the name of ENS.

7.4.     You warrant that all sums paid to any member of the ENS Group have been derived from a legitimate source and do not constitute proceeds of criminal or otherwise illegal activity and do not breach any anti-money laundering laws of Mauritius and/or any international standards for the combating of money laundering and/or the financing of terrorism and proliferation of weapons of mass destruction, to which Mauritius is a signatory.

8.     LITIGATION MATTERS (IF APPLICABLE)

8.1.     The basis of ENS' charges in relation to litigation matters, as between ENS and yourself, is the same as that set out in paragraph 5 and is not related to any tariff of fees laid down by any competent body in relation to litigation in any court or tribunal.

8.2.     If you are successful, you may be entitled to an order for the payment of your costs by another party. It should be noted in relation to any such costs order that :

8.2.1.     such an award is at the discretion of the Court;

8.2.2.     quasi-judicial bodies and other tribunals do usually not make cost orders;

8.2.3.     you will be personally liable to ENS for the costs and charges due by you in terms of paragraph 5, regardless of any order made against your opponent;

8.2.4.     even if you are successful in your litigation you will be liable to pay all of ENS' fees and disbursements without being able to recover the full amount from your opponent. Also, ENS' account will be payable upon presentation whereas the amount that you are able to recover from your opponent, will in all likelihood, take some time to be finalised and collected;

8.2.5.     if your opponent is funded by legal aid, you are unlikely to recover any costs even if you are successful;

8.2.6.     your opponent may be unwilling or unable to pay either the sum for which you have been given judgment or the costs he/she/it has been ordered to pay. In that event you will still be obliged to pay all ENS' fees and disbursements.

8.3.     If you are unsuccessful, you may be ordered to pay your opponent's costs as well as the costs and charges due by you to ENS.

9.     FORENSIC SERVICES

9.1.     Should you instruct ENS to provide you with forensics services, you understand that ENS does not provide such services and accordingly you consent to ENS subcontracting such services to ENS Forensics (Pty) Ltd ("ENSforensics"), which is a member of the ENS Group, on the basis that ENSforensics will charge its usual charges for matters of this nature, which you will be liable for. In such circumstances any reference herein to ENS will also include a reference to ENSforensics. You may of course also instruct ENSforensics directly, in which case, if you do not already have terms and conditions in place upon which ENSforensics agrees to act on your behalf, these terms will apply *mutatis mutandis* to that instruction until those terms and conditions with ENSforensics are in place. This constitutes a *stipulatio alteri* in favour of ENSforensics, which may be accepted by it at any time.

9.2.     You agree that in both such circumstances ENS may disclose to ENSforensics your confidential and/or privileged information.

10.     INVESTMENTS

10.1.     If you instruct ENS to invest funds on your behalf and if ENS accepts any such instruction, you will be required to sign the standard ENS investment letter.

10.2.     It is not ENS' area of expertise to give any investment advice and no discussion relating to the investment of your funds should be construed as such.

11.     FILE STORAGE

At the end of a matter, ENS will only have the obligation to store that information in relation to your file which it is obliged to store as a matter of law, after which ENS has the right to destroy that information. ENS shall decide, in its discretion (subject to the requirements of any law) on the format in which any information is to be stored. If ENS stores any information or documentation in relation to your file without charge, it shall do so at your sole risk. Consequently, the ENS Group will not be liable under any circumstances for any loss or damage to any such information or documentation.

12.     TERMINATION OF MANDATE

12.1.     Without prejudice to its other rights and remedies, ENS will have the right to cease work and/or withdraw from any of your particular matter/s and/or terminate its mandate by giving you written notice at your last known address, *inter alia*, in the event that :

12.1.1.     you fail promptly to supply any information or instructions needed by ENS to act on your behalf or to advise ENS immediately of any relevant change in circumstances;

12.1.2.     any account remains unpaid for more than 30 (thirty) days after presentation;

12.1.3.     ENS determines, in its sole discretion, that it is not in a position to properly perform an instruction given by you to it;

12.1.4.     ENS considers, in its sole discretion, that any part of the conduct required to be undertaken by ENS on your behalf is inappropriate;

12.1.5.     ENS becomes aware that you are or have become a Sanctioned Person;

12.1.6.     ENS takes a decision to withdraw from any particular matter under its mandate in the circumstances set out in paragraph 4.

12.2.     If a mandate in respect of any of your particular matter/s is terminated by either party, for any reason whatsoever, ENS will be entitled to payment of its fees and disbursements incurred up to and including the date of such termination.

13.     CLIENT CARE

13.1.     At ENS client care is important to us and we endeavour to add value to the development of a positive and productive relationship.

13.2.     It ENS' policy to investigate complaints and expressions of dissatisfaction fully and promptly. If you have a complaint relating to the work being carried out for you, you should raise this in the first instance with the professional dealing with the matter. If you are still dissatisfied, you should lodge a formal complaint (preferably in writing) to the Chief Executive of the ENS Group ("CE") giving full details of your complaint. The CE or another executive nominated by him/her will investigate the matter and will respond to you.

14.     LIMITATION OF LIABILITY AND WAIVER

14.1.     **You waive any claim of whatsoever nature (including damages, loss, interest, costs, expenses or otherwise), howsoever arising whether in contract or in "faute" or otherwise which you may have against any member of the ENS Group beyond the amount actually recovered by ENS under its professional indemnity insurance policy in respect of your claim. Whilst ENS will make every effort to ensure that professional indemnity insurance is in place, it gives no undertaking that there will be professional indemnity insurance in place to cover**

4

such claim or that if there is such professional indemnity insurance in place that it will be sufficient to cover your claim/s. On request ENS will send you its existing professional indemnity insurance certificate.

14.2.  You agree that the professionals, directors, past directors, employees or past employees or *préposés* of any member of the ENS Group shall not be liable in their personal capacity for any claims arising from or in connection with your matter (including damages, loss, interest, costs, expenses or otherwise), howsoever arising (whether in contract or "faute" under the Mauritius Civil Code or under the Companies Act, 2001 (as amended or substituted) or otherwise) You further agree that any claims brought in accordance with paragraph 14.1 shall be enforceable only against ENS and you accordingly waive any such claim which you may have against any of the professionals, directors, past directors, employees or past employees or *préposés* of ENS and any other member of the ENS Group (in whose favour this constitutes a benefit capable of acceptance at any time).

15.  **THIRD PARTY LIABILITY**

The advice provided by ENS may not be used or relied upon by any person other than you. No member of the ENS Group has any duty, responsibility or liability to any person other than yourself arising from or in connection with any advice and/or services rendered to you by ENS. You indemnify the ENS Group, its directors, past directors, employees and past employees and *préposés* (in whose favour, where applicable, this constitutes a *stipulatio alteri* capable of acceptance at any time) against any claim of whatsoever nature (including damages, loss, interest, costs, expenses or otherwise) made by any third party in connection with any advice or services rendered by ENS to you, howsoever arising whether in contract or "faute" under the Mauritius Civil Code or under the Companies Act, 2001 (as amended or substituted), or otherwise.

16.  **GOVERNING LAW**

Our relationship shall be governed by Mauritius law and if the prescription laws of Mauritius are not considered to be substantive laws thereof, by its prescription laws as well but excluding its conflict of law principles.

17.  **DISPUTE RESOLUTION**

17.1.  Save in respect of those provisions which provide for their own remedies other than arbitration and other than where an interdict is sought or urgent relief may be obtained from a court of competent jurisdiction, where any dispute arises between the parties, any party to the dispute shall formally notify the other party to the dispute, in writing and in reasonable detail, of the nature of the dispute and the relief sought, and request that the dispute be resolved in the manner envisaged in this paragraph 17. As soon as reasonably possible after the delivery of the written notification of the dispute, representatives of the parties to the dispute shall meet without unreasonable delay and attempt to resolve the dispute amicably.

17.2.  If the representatives of the parties to the dispute fail to resolve the dispute amicably within 30 (thirty) days following the delivery of such written notice, or within a longer period agreed in writing, the dispute, controversy or claim arising out of these terms or the breach, termination or invalidity thereof shall be referred to and settled exclusively by the Arbitration and Mediation Center of the Mauritius Chamber of Commerce and Industry ("**MARC**") under the MARC Arbitration Rules in force when the request for arbitration is submitted and according to international arbitration under the International Arbitration Act, 2008 (referred to as the "**Act**" for the purpose of this paragraph 17).

17.3.  The juridical seat of arbitration shall be Mauritius and the geographic location of the arbitration hearings will be Mauritius.

17.4.  The language to be used in the arbitral proceedings shall be the English language.

17.5.  The arbitrator will be an impartial practising law practitioner of at least 15 (fifteen) years' standing agreed upon between you and ENS or, failing such agreement, nominated and appointed by the Secretariat of MARC.

17.6.  The arbitration shall be held with only the parties to the arbitration and their representatives present thereat. The evidence in the arbitration proceedings and any order made by the arbitrator will be kept confidential.

17.7.  Should any issue be referred to the Supreme Court of Mauritius under the Act, all proceedings shall not be held in public but shall be held in private.

17.8.  Any award by the arbitrator shall be final and binding on the parties and not appealable.

17.9.  The validity of this paragraph shall not be affected by the termination of these terms and it shall also be severable from the rest of these terms and remain in effect notwithstanding that the remainder of these terms may be void/able.

17.10.  The parties will endeavour to ensure that the arbitration is completed as soon as reasonably possible.

18.  CONSENT TO JURISDICTION

18.1.  By accepting these terms you irrevocably submit and consent to the jurisdiction of the Supreme Court of Mauritius (or any successor to that court) in any proceedings which might be instituted against you arising out of your mandate to ENS for purposes of any :

18.1.1.  interim, injunctive or other urgent action or proceedings in regard to any of your particular matter/s and/or your mandate to ENS;

18.1.2.  court proceedings for the collection of any sums due to ENS,

which ENS might institute.

18.2.  You furthermore waive any objection you may now or hereafter have that such action or proceeding has been brought in an inconvenient forum.

18.3.  Such consent to jurisdiction shall not (and shall not be construed so as to) prejudice the right of ENS from bringing proceedings against you in any other jurisdiction which ENS considers appropriate.

19.  ADDRESS FOR SERVICE

Your address for all purposes under these terms, whether in respect of service of court process, notices or other documents or communications of whatsoever nature will be the last physical address which you furnished to ENS.

20.  WHOLE AGREEMENT, NO AMENDMENT

20.1.  When you brief ENS on any particular matter, the professional working on your matter may send you a mandate letter which sets out the scope of work and/or the fees in respect of that particular matter. That mandate letter will be subject to these terms and these terms will prevail in the case of any conflicts.

20.2.  These terms constitute the whole agreement between you and ENS relating to the subject matter hereof and supersedes any other discussions, agreements and/or understandings regarding the subject matter hereof.

20.3.  No extension of time or waiver or relaxation of any of the provisions of these terms shall operate as an estoppel against either party in respect of its rights under these terms, nor shall it operate so as to preclude such party (save as to any extension, waiver or relaxation actually given) thereafter from exercising its rights strictly in accordance with these terms.

20.4.  To the extent permissible by law neither you nor ENS shall be bound by any express or implied or tacit term, representation, warranty, promise or the like not recorded herein, whether it induced these terms and/or whether it was negligent or not.

21.  NOTICES

Save as set out in these terms to the contrary, where you are entitled/required to give notice to ENS you must provide such notice in writing marked for the attention of the Office Head with a copy sent to the CE.

A-(01055ENG) v2 (10.2021)