**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
:
In re: : Chapter 11
:
HO WAN KWOK, *et al.*,[1] : Case No. 22-50073 (JAM)
:
Debtors. : (Jointly Administered)
:
-------------------------------------------------------x

**NOTICE OF: (A) TRUSTEE'S RECEIPT AND ACCEPTANCE, SUBJECT TO COURT APPROVAL, OF HIGHER AND BETTER OFFER TO PURCHASE GREENWICH PROPERTY; (B) SALE CONTRACT WITH NEW BUYER; AND (C) REVISED ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363, BANKRUPTCY RULES 2002, 6004(c), AND 6004(f), AND LOCAL RULES 6004-1 AND 6004-2, (I) AUTHORIZING AND APPROVING SALE OF THE GREENWICH PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT, AND (III) <u>GRANTING RELATED RELIEF</u>**

Luc A. Despins, in his capacity as Chapter 11 Trustee (the "<u>Trustee</u>") in the chapter 11 case (the "<u>Chapter 11 Case</u>") of Ho Wan Kwok (the "<u>Debtor</u>"), with respect to the Trustee's *Motion for Order (I) Authorizing and Approving Sale of Greenwich Property Free and Clear of Liens, Claims, Interest, and Encumbrances, (II) Authorizing and Approving Purchase and Sale Agreement and (III) Granting Related Relief* [ECF No. 3592] (the "<u>Sale Motion</u>"), hereby respectfully files his notice (this "<u>Notice</u>") of: (a) the Trustee's receipt and acceptance, subject to Court approval, of a higher and better offer to purchase the Greenwich Property[2] by a new buyer, (b) the Residential Real Estate Sales Agreement dated October 11, 2024 (the "<u>New PSA</u>") entered

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] All capitalized terms not expressly defined here shall adopt the definitions ascribed to them in the Sale Motion.

between the Trustee and the new buyer (as described in the New PSA, the "New Buyer") subject to Court approval; and (c) the *Revised [Proposed] Order, Pursuant to Bankruptcy Code Sections 105 and 363, Bankruptcy Rules 2002, 6004(c), and 6004(f), and Local Rules 6004-1 and 6004-2, (I) Authorizing and Approving Sale of the Greenwich Property Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing and Approving Purchase and Sale agreement, and (III) Granting Related Relief* (the "Revised Proposed Sale Order").  Further to this Notice, the Trustee states the following:

**TRUSTEE'S RECEIPT AND ACCEPTANCE, SUBJECT TO COURT APPROVAL, OF HIGHER AND BETTER OFFER TO PURCHASE GREENWICH PROPERTY**

1.      On September 30, 2024, the Trustee filed the Sale Motion, and, pursuant to the Trustee's motion requesting expedited consideration of same, the Court entered its *Order Limiting Notice, Scheduling Expedited Hearing and Setting Procedure for Submitting Competing Bids Regarding Chapter 11 Trustee's Sale Motion* [ECF No. 3599] (the "Sale Hearing Order").

2.      The Sale Hearing Order directed the Trustee to serve the Sale Motion and the Sale Hearing Order on the Notice Parties (as defined in the Sale Hearing Order), which Notice Parties include all entities and individuals known to have expressed to Compass (*i.e.*, the Trustee's broker) an interest in purchasing the Greenwich Property ("Interested Parties").  The Trustee timely served the Sale Motion and the Sale Hearing Order on the Notice Parties, including the Interested Parties [ECF No. 3607].

3.      The Sale Hearing Order set October 14, 2024 at 10 a.m. (the "Competing Bid Deadline") as the deadline for submission of competing bids ("Competing Bids") to purchase the Greenwich Property.  Prior to the Competing Bid Deadline, the New Buyer submitted a Competing Bid, the terms of which are set forth in the New PSA.

4.      The Trustee believes that the New Buyer's Competing Bid represents a higher and

better offer to purchase the Greenwich Property. Most materially, the New Buyer has offered to purchase the Greenwich Property for $7,250,000, which is $350,000 greater than the $6,900,000 purchase price offered by the buyer originally proposed in the Sale Motion (the "Original Buyer"). The New Buyer has also offered to close within three business days unless an objection to the sale has been filed and not withdrawn at the time of the entry of the order approving the sale.[3] Pursuant to the New PSA, the New Buyer has paid a deposit of $1,065,000.00 to be held in escrow by the Trustee's counsel.

5.     The Trustee notified the Original Buyer of the expected economic terms of the New Buyer's Competing Bid and offered her the opportunity to submit a further Competing Bid, which she declined. Accordingly, the Trustee executed the New PSA with the New Buyer, subject to Court approval, and respectfully requests that the Court grant the Sale Motion by approving the Revised Proposed Sale Order, which provides for the sale of the Greenwich Property to the New Buyer on the terms set forth in the New PSA.[4]

### NEW PSA AND REVISED PROPOSED SALE ORDER

6.     The New PSA is attached hereto as **Exhibit 1-A** as executed by the Trustee and the New Buyer and as **Exhibit 1-B** in a redline form marked to show changes as between the New PSA and the original PSA attached to the Sale Motion as Exhibit B.[5]

7.     The Revised Proposed Sale Order is attached hereto as **Exhibit 2-A** and as **Exhibit 2-B** in a redline form marked to show changes as between the Revised Proposed Sale Order and

---

[3]    If an objection is filed to the sale and not withdrawn prior to entry of the order approving the sale, the New Buyer may wait to proceed with the closing until the 14-day appeal period has elapsed. In that case, the New Buyer has agreed to close on the next business day after the expiration of the appeal period if the order approving the sale or denying the objection is still in effect even if an appeal has been filed as long as no stay of the Court's order(s) has been issued by any court of competent jurisdiction.

[4]    Following Court approval of the Sale Motion by entering the Revised Proposed Sale Order approving a sale to the New Buyer under the New PSA, the Trustee will return the deposit paid by the Original Buyer.

[5]    The Trustee has redacted the New Buyer's name from the PSA. The Trustee will advise the Court as to the identity of the New Buyer at the hearing on the Sale Motion.

the Proposed Sale Order attached to the Sale Motion as Exhibit A.

8.    A summary of material terms of the New PSA and disclosures regarding the New PSA and New Buyer in compliance with Local Rule 6004-2(c) (the "New PSA Summary and Disclosures") (in the same form that the Trustee provided such summary and disclosures with respect to the original PSA and the Original Buyer in ¶¶ 9 and 10 of the Sale Motion (the "Original PSA Summary and Disclosures")) is attached hereto as **Exhibit 3-A**.  It is further attached in a redline form marked to show changes as between the New PSA Summary and Disclosures and the Original PSA Summary and Disclosures as **Exhibit 3-B**.

*[REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK.]*

Dated: October 14, 2024                    LUC A. DESPINS, TRUSTEE

By: _/s/ *Patrick R. Linsey*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    dskalka@npmlaw.com
    plinsey@npmlaw.com

       *and*

    G. Alexander Bongartz (admitted *pro hac vice*)
    Douglass Barron (admitted *pro hac vice*)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    alexbongartz@paulhastings.com
    douglassbarron@paulhastings.com

       *and*

    Nicholas A. Bassett (admitted *pro hac vice*)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

    *Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                        :
In re:                                  :   Chapter 11
                                        :
HO WAN KWOK, et al.,¹                   :   Case No. 22-50073 (JAM)
                                        :
                 Debtors.               :   (Jointly Administered)
                                        :
-------------------------------------------------------x
```

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date hereof the foregoing and all attachments thereto (the "Served Documents") were sent by e-mail to all parties to the above-captioned chapter 11 case by operation of the Court's electronic filing ("CM/ECF") system and/or by Federal Express delivery to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  The Served Documents were also sent by email to the Interested Parties and to counsel for the Original Buyer and the New Buyer.

Dated: October 14, 2024

By:  /s/ Patrick R. Linsey
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    dskalka@npmlaw.com
    plinsey@npmlaw.com

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## EXHIBIT 1-A

**NEW PSA**

THE FAIRFIELD COUNTY BAR ASSOCIATION
# RESIDENTIAL REAL ESTATE SALES AGREEMENT
(Revised July 14, 2015)
_____

**This Agreement** made as of the **11th** day of  October, 2024 between LUC A. **DESPINS, AS CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATE OF HO WAN KWOK, c/o Paul Hastings LLP, 200 Park Avenue, New York, New York 10166** (hereinafter referred to as the SELLER, whether one or more), and ▮▮▮▮▮▮▮▮▮▮▮▮▮
_____ Greenwich, CT 06830 (hereinafter referred to as the BUYER or PURCHASER whether one or more).

## W I T N E S S E T H :

1.  **PROPERTY**.  The SELLER, in consideration of the purchase price hereinafter specified, hereby agrees to sell and convey, and the BUYER hereby agrees to purchase the real property commonly known as **373 Taconic Road, Greenwich, CT 06831** and specifically described in Schedule A attached hereto, **being located partially in Greenwich and partially in Stamford, Connecticut** (the "Premises") subject only to the encumbrances and exceptions to title set forth or referred to in Paragraph 10(e) and Schedule A (legal description and exceptions, if any) attached hereto.

2.  **CONSIDERATION**.  The purchase price is **SEVEN MILLION TWO HUNDRED FIFTY THOUSAND & 00/100 DOLLARS ($7,250,000.00) DOLLARS** which the BUYER agrees to pay as follows:

    (a)   As a part of the Deposit heretofore paid, receipt of which is acknowledged, subject to collection. If a Deposit or any portion thereof is paid to a broker or other party, Buyer directs that the Deposit shall be sent immediately to Seller's attorney (the "Escrow Agent") for handling per Paragraph 3, below;    **$0.00**

    (b) Upon the signing of this Agreement, payable to the SELLER'S attorney as Trustee or Escrow Agent as provided herein, receipt of which is acknowledged, subject to collection ("the Deposit");    $**1,065,000.00**

    ~~(c)~~ Upon delivery of the deed by wire **transfer** ~~or by official cashier's or bank check drawn by and upon a federally-regulated or Connecticut state-chartered bank, or a bank that is a member of the New York Clearing House~~, the proceeds of which are immediately available.    $**6,185,000.00**

        **TOTAL**    **$7,250,000.00**

3.    **ESCROW**. SELLER'S attorney (the "Escrow Agent") shall hold the Deposit in Paragraph 2(a), **and/or 2(b)** above, in escrow in an IOLTA account until closing of title or sooner termination of this Agreement in accordance with its terms, and shall pay over or apply the Deposit in accordance with the terms of this paragraph.  The Escrow Agent shall hold the Deposit in an attorney's IOLTA account for the benefit of the parties.  At the closing of title as contemplated hereunder, the Deposit shall be paid by the Escrow Agent to or as directed by the SELLER.  If for any reason the closing does not occur and either party gives Notice to the Escrow Agent pursuant to Paragraph 32 demanding payment of the Deposit, then the Escrow Agent shall give prompt Notice of such demand to the other party. If the Escrow Agent does not receive from such other party Notice of an objection to the proposed payment within seven (7) business days after giving such Notice, the Escrow Agent is hereby authorized and directed to make such payment in accordance with the Notice.  If the Escrow Agent receives such Notice of objection within said seven (7) business day period, or if for any other reason the Escrow Agent in good faith shall elect not to make such payment, then the Escrow Agent may continue to hold such amount until otherwise directed by Notice from the parties to this Agreement or a final, non-appealable judgment, order or decree of ~~a Court of competent jurisdiction~~ **the Bankruptcy Court (as hereinafter defined)**.  However, the Escrow Agent shall have the right at any time to deposit the Deposit and the interest thereon, if any, with a court of competent jurisdiction where the Premises is located and shall give Notice of such deposit to SELLER and BUYER.  Upon such deposit or other disbursement in accordance with the terms of this Paragraph 3, the Escrow Agent shall be relieved and discharged of all further obligations and responsibilities hereunder.

The parties acknowledge that the Escrow Agent is acting solely as a stakeholder at their request and for their convenience and that the Escrow Agent shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith, on account of gross negligence, or in willful disregard of this Agreement on the part of the Escrow Agent.  SELLER and BUYER agree, jointly and severally (with right of contribution) to defend (by counsel selected by the Escrow Agent), indemnify and hold the Escrow Agent harmless from and against all costs, claims and expenses (including reasonable attorney's fees) incurred in connection with the performance of the Escrow Agent's duties hereunder, except with respect to acts or omissions taken or suffered by the Escrow Agent in bad faith, on account of gross negligence,  or in willful disregard of this Agreement on the part of the Escrow Agent.  In the event the Deposit is deposited with a ~~court of competent~~ **jurisdiction the Bankruptcy Court** pursuant to the terms herein, the parties to this Agreement hereby authorize the Escrow Agent to deduct the reasonable costs and attorney's fees associated with an action of interpleader.

The Escrow Agent may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from acting upon the advice of such counsel.

The Escrow Agent acknowledges receipt of the Deposit by check or wire, subject to collection and the Escrow Agent's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this Agreement.

Escrow Agent or any member of its firm shall be permitted to act as counsel for SELLER in any dispute as to the disbursement of the Deposit or any other dispute between the parties whether or not the Escrow Agent is in possession of the Deposit and/or continues to act as the Escrow Agent. The parties waive claim to a conflict regarding this paragraph.

Escrow Agent shall have no liability for any loss of the Deposit occurring on account of FDIC limits for sums insured on deposit.

It is specifically understood and agreed that at closing, BUYER shall tender to SELLER official, cashier's or bank checks drawn on a federally-regulated or Connecticut state-chartered bank, or a bank that is a member of the New York Clearing House, the proceeds of which are immediately available, or wired funds. All checks shall be made payable to SELLER'S attorney as trustee for SELLER, unless otherwise directed in writing by SELLER or SELLER'S counsel for the balance of the purchase price due at closing as set forth in this Agreement less the amounts of all mortgage payoffs.  Additionally, BUYER'S attorney shall tender separate bank or treasurer's check(s) to SELLER for payoff of SELLER'S mortgage obligations.

On or before ten calendar days (10) before closing, SELLER shall provide BUYER's attorney with written directions for each mortgage payoff stating the name of payee and the total amount of payoff together with a copy of the associated payoff statement(s).  SELLER shall calculate the total payoff amount (including applicable per diems, late charges, etc.) that shall be in an amount sufficient to pay the mortgage in full.  SELLER shall be responsible for preparing the mortgage payoff package(s) and transmittal(s).  Immediately after closing, SELLER'S attorney shall wire or hand deliver or send via overnight carrier the payoff funds and package to the SELLER'S lender(s).

**4. FIXTURES**.  (a)  Included in this sale, for the aforesaid purchase price, are the following items, all of which items the SELLER represents are owned by SELLER, not leased, and free from security interests, liens, and other encumbrances,  insofar as any of them were located on the Premises at the time of BUYER'S inspection: heating, cooling, electrical and plumbing systems and fixtures, electric light fixtures, installed wall to wall carpeting, security system, stove, storm windows and doors, screens and screen doors, window shades, venetian blinds, curtain rods, awnings, any affixed satellite dish(es), weathervanes, mail box(es), all pool equipment, garage door openers with remotes, and existing plants and shrubbery, together with: **OUTDOOR FURNITURE, GYM EQUIPMENT, ~~POOL TABLE~~, HOME THEATER FURNITURE AND EQUIPMENT, ALL TELEVISIONS AND OTHER A/V EQUIPMENT, WINDOW TREATMENTS, DRAPES, ALL APPLIANCES AS PER LISTING**

(b)      Specifically **excluded** from the sale are:  **POOL TABLE**

(c)      Except as otherwise set forth herein, if any fixtures are leased, SELLER shall provide the name and contact information of the lessor as soon as possible, but not later the two (2) business days before the closing of title.  The following fixtures are leased: **NONE**

**SELLER MAY STORE FURNITURE IN A DESIGNATED ROOM AND LEAVE ONE VEHICLE ON THE PREMISES FOR UP TO FORTY-FIVE CALENDAR DAYS AFTER**

**THE DATE OF CLOSING, PROVIDED SELLER EXECUTES A HOLD HARMLESS AGREEMENT IN FAVOR OF BUYER.**

**5.      MORTGAGE CONTINGENCY**. This Agreement is **NOT** contingent upon BUYER obtaining a written  commitment for a loan ~~without any condition(s) beyond BUYER'S reasonable ability to satisfy, to be secured by a first mortgage on the Premises, in such an amount for which BUYER shall apply which shall not be in excess of  $_____ from a lending institution or licensed mortgage broker, which loan shall be for a term of _____years and shall bear interest at a rate not to exceed _____ or prevailing rate, at a fixed/variable rate at the institution where application is made.  BUYER agrees to make prompt application for such a loan and to pursue said application with diligence.  If having done so, BUYER is unable to obtain a written commitment for such a loan on or before _____; 201____, and if BUYER so notifies SELLER or SELLER's attorney, as provided in Paragraph 32, at or before 6:00 p.m., on said date, then SELLER shall have the option to extend the mortgage contingency date or terminate this Agreement, which shall then be null and void, and the BUYER shall be entitled to the immediate return by SELLER of all sums paid by the BUYER on account of this Agreement except for the sum of Four Hundred Fifty ($450.00) Dollars towards the cost of preparation of this Agreement.~~

~~If BUYER exercises this mortgage contingency, Buyer must provide a letter from Buyer's lender that demonstrates that Buyer could not obtain a written loan commitment without conditions that are beyond Buyer's reasonable ability to satisfy. If SELLER or SELLER's attorney do not receive such notice as provided in Paragraph 32 at or before 6:00 p.m. on said date, this Agreement shall remain in full force and effect.~~

~~The foregoing notwithstanding, a denial of BUYER's mortgage application based solely upon the BUYER's inability to sell other real estate or another home, or a written commitment conditioned solely on the sale of other real estate or another home, shall NOT be deemed a denial of such mortgage application under this paragraph.  In either of such events the BUYER shall not be entitled to terminate this Agreement nor be entitled to the return of any sums paid by the BUYER on account of this Agreement.  Should the BUYER fail to comply with the foregoing requirements, this Agreement shall continue in full force and effect, and the rights and obligations of the parties shall be as if this Paragraph 5 did not appear in this Agreement.~~

6.    **INTENTIONALLY OMITTED**

**7.      CONDITION OF PREMISES [THIS AGREEMENT IS NOT SUBJECT TO ANY INSPECTION CONTINGENCIES]**.  The BUYER agrees that she has inspected said Premises, is satisfied with the physical condition thereof and agrees to accept at closing the Premises in the condition that the Premises ~~were disclosed to be or~~ were in as of the date of BUYER's initial home inspection or, if no inspection, on the date of this Agreement, in an "as is" and "where is" condition, reasonable wear and tear excepted.  Neither SELLER nor SELLER's agents have made any representations or warranties as to the Premises on which BUYER has relied other than as expressly set forth in this Agreement. **BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS NEVER OCCUPIED THE PREMISES AND HAS NO KNOWLEDGE OF THE CONDITION OF THE PREMISES.**  .

8. **DEED**.  The SELLER, on receiving the total purchase price, shall, at the SELLER's cost and expense, execute, acknowledge, and deliver to the BUYER, or BUYER's permitted assigns, the usual Connecticut ~~full covenant Warranty Deed (or~~ **appropriate Fiduciary's Deed and/or Bankruptcy Court Order**~~)~~ in proper form, to convey to the BUYER, or BUYER's permitted assigns, the fee simple of the Premises, free of all encumbrances except as hereinafter provided. The SELLER shall thereupon pay all real estate conveyance taxes and shall complete and deliver to the BUYER the conveyance tax forms.

9. **CLOSING**.  The deed shall be delivered at the offices of **Neubert Pepe & Monteith, P.C., 72 Ruane Street, Fairfield, CT 06824 within three (3) business days following the entry of the Bankruptcy Court's Order** (as defined in Paragraph 10(e) (vii)) **approving the sale to Buyer unless an objection to the sale has been filed and not withdrawn at the time of the entry of the order approving the sale (the "Sale Approval Order"). If such an objection is filed (and not withdrawn), the Buyer may wait to proceed with the closing until the 14 day period to appeal (from entry of such order(s)) the Sale Approval Order or the order denying the objection (the "Denial Order") (whichever is the later of the two orders if they are issued separately) has passed (the "Appeal Period"). Once the Appeal Period has passed, the Buyer will be obligated to close on the next business day after the expiration of the Appeal Period if the Sale Approval Order and the Denial Order are still in effect,  even if there has been an appeal of the Denial Order or Sale Order, as long as no stay of the Sale Order or Denial Order (if such Denial Order is not contained in the Sale Order) has been issued by any court of competent jurisdiction.**

10. **TITLE**.  (a)  If, upon the date for the delivery of the deed, the SELLER shall be unable to deliver or cause to be delivered a deed or deeds conveying marketable title to the Premises as hereinafter provided, subject only to the items set forth in Schedule A and Paragraph 10(e) hereof, then the SELLER shall be allowed a reasonable postponement of closing not to exceed thirty (30) calendar days, within which to perfect title.  If at the end of said time the SELLER is still unable to deliver or cause to be delivered a deed or deeds conveying a marketable title to said Premises, subject as aforesaid, the BUYER (i) may elect to accept such title as the SELLER can convey, without modification of the purchase price, or (ii) may reject such title.  Upon such rejection, all sums paid on account hereof, together with any nonrefundable expenses actually incurred by the BUYER in the aggregate not to exceed the cost of an A.L.T.A. Homeowner's Policy (or the equivalent thereof) based on the amount of the contract purchase price shall be paid to the BUYER without interest thereon.  Upon receipt of such payment, this Agreement shall terminate and the parties hereto shall be released and discharged from all further claims and obligations hereunder.  SELLER shall be entitled to require BUYER to provide reasonable proof of payment of said expenses.

   (b)  The title herein required to be furnished by the SELLER shall be marketable, subject only to the items set forth in Schedule A and Paragraph 10(e) hereof, and the marketability

thereof shall be determined in accordance with the Connecticut General Statutes and the Connecticut Standards of Title of the Connecticut Bar Association from time to time in effect. Any and all defects, in or encumbrances against, the title which are not deemed to impair marketability under the Connecticut General Statutes and the Connecticut Standards of Title of the Connecticut Bar Association shall not constitute valid objections on the part of the BUYER, provided the SELLER furnishes any affidavits or other instruments which may be required by the applicable Statutes or Connecticut Standards of Title. The title must be insured at standard premiums by Buyer's title insurance company.

(c)  The SELLER represents that **TO SELLER'S ACTUAL KNOWLEDGE, WITH NO DUTY OF INQUIRY,** the Premises and the present use thereof are not in violation of any governmental rules, codes, permits, regulations or limitations, unless same have become legally nonconforming, and there are no violations of any enforceable restrictive covenant, agreement or condition subject to which title to the Premises is to be conveyed in accordance with the terms hereof.  Between the date of this Agreement and the Closing Date as set forth in Paragraph 9, the SELLER will not do anything or allow anything to be done on or about the Premises which will result in any such violation.  The SELLER represents that SELLER has not received any notice of zoning or building violations and that there has been no attempt to enforce same against the SELLER during the time in which the SELLER has owned the Premises.  SELLER represents that SELLER has no knowledge of any special assessments levied or to be levied against the Premises which are not yet a lien on the Premises and has no knowledge of any existing improvements or work done on the Premises which may result in special taxes or assessments to be paid thereon.

(d)  Notwithstanding anything to the contrary contained in this Agreement , in the event the SELLER after due diligence cannot obtain a release for any existing mortgage on the Premises at the time of the closing of title from the holder of said mortgage, or any assignee thereof, either because said holder will not release the mortgage without first receiving payment or because the holder has delayed in sending the attorney for the SELLER the release of mortgage, then BUYER and SELLER agree to close title notwithstanding the absence of the release of mortgage, provided the attorney for the SELLER furnishes the attorney for the BUYER, at the closing, with (a) a written payoff statement and a copy of the payoff check or wire form evidencing that payment of the unreleased mortgage is to be made in full at the time of the closing and (b) a fully-executed  undertaking and indemnity to make said payment in the form annexed hereto, and further provided that a title insurance company reasonably satisfactory to the BUYER will issue a fee policy at no additional premium which takes no exception for said mortgage or mortgages or which provides affirmative coverage against loss or damage by reason of said unreleased mortgage or mortgages.

SELLER shall exercise due diligence to obtain any such release or releases and will upon receipt thereof immediately record the same and forward a copy or copies thereof to BUYER's attorney with recording information.  If SELLER has not obtained such release within sixty (60) calendar days after closing, Seller shall give to BUYER's attorney an affidavit provided for in Connecticut General Statutes Section 49-8(a), as amended, together with the necessary recording fee.  This provision shall survive the closing.

(e)  The Premises will be conveyed to and accepted by the BUYER subject to:

(i)  Any and all zoning and/or building restrictions, limitations, regulations, ordinances, and/or laws; any and all building lines; and all other restrictions, limitations, regulations, ordinances and/or laws imposed by any governmental authority and any and all other provisions of any governmental restrictions, limitations, regulations, ordinances and/or laws, provided the Premises are not in violation of same at the time of closing.

(ii)  Real Property Taxes on the Current Grand List and any and all existing tax payments, municipal liens and assessments, coming due on or after the Closing Date; the BUYER shall by acceptance of the deed assume and agree to pay, any and all such tax payments, liens and assessments which may on or after the date hereof be assessed, levied against or become a lien on the Premises,.

(iii)  Any state of facts which a survey and/or physical inspection of the Premises might reveal, provided same do not render title unmarketable as determined under Paragraph 10(b) hereof (such exception is for purposes of this Agreement only and shall not be included in the deed, unless it was in the deed which SELLER received upon purchasing the property).

(iv)  Common law, riparian or littoral rights of others and/or other rights, if any, in and to any natural watercourse or body of water flowing through or adjoining the Premises, and all statutory and other rights of others in and to any such watercourse or body of water.

(v)  Unless otherwise specifically agreed between the parties in writing, any municipal assessment other than taxes (such as for sewers and the like) shall be paid on a current basis by the SELLER and the balance assumed by the BUYER at closing.

(vi)  Such encumbrances as shown on Schedule A, if any.

**(vii)  The entry of a Bankruptcy Court Order approving this Agreement and the conveyance by SELLER to BUYER by the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court")in the pending chapter 11 proceedings of Ho Wan Kwok, case no 22-50073.**

11.  **LIEN**.  ~~All sums paid on account of this Agreement and the reasonable expenses as set forth in Paragraph 10, Paragraph 14 and Paragraph 20 hereof are hereby made liens on the Premises. The parties shall execute a Notice of Contract, if requested by one of the parties to this Agreement, pursuant to CGS 49-92a.~~ **BUYER AGREES BUYER SHALL NOT LIEN THE PREMISES OR RECORD A NOTICE OF CONTRACT**.

12.  **BROKER(S)**.  The parties hereto agree **COMPASS INC. and BROWN HARRIS** are the broker(s) who negotiated the sale of the Premises, and the **SUBJECT TO THE OCCURRENCE OF THE CLOSING**, SELLER agrees to pay ~~the~~ **a** commission **OF 2.25% OF THE PURCHASE PRICE TO EACH BROKER** for such services ~~pursuant to separate agreement~~.  This Agreement is consummated by the SELLER in reliance on

the representation of the BUYER that no other broker or agent brought the Premises to the BUYER's attention or was, in any way, a procuring cause of this sale and purchase. The SELLER represents to the BUYER that no other broker or agent has any exclusive sale or exclusive agency listing on the Premises. The parties hereto (jointly and severally, if more than one) hereby agree to indemnify and hold each other harmless against any liability by reason of the claim of any other broker or agent for a commission on account of this sale, provided that it is adjudged by ~~a court of competent jurisdiction~~ **THE BANKRUPTCY COURT** that a commission is due by reason of such other broker or agent being the procuring cause of this sale on behalf of the BUYER, said indemnity to include all costs of defending any such claim, including reasonable attorney's fees. In the event of any such claim, the party having notice of such claim shall promptly notify the party without notice of same who shall have the right, but not the obligation, to assume the defense of such claim. The provisions of this paragraph shall survive the closing.

13. **APPORTIONMENT**. **R**eal estate taxes, sewer taxes, sewer assessments and sewer use charges or other municipal assessments, water charges, dues and ordinary assessments of private associations, and common charges, if any, together with interest thereon, if any, shall be apportioned over the fiscal period for which levied. BUYER shall reimburse SELLER at closing for any fuel remaining on the Premises at then market rates. All adjustments shall be apportioned based upon a 365 day year and the actual number of days in the month in which the closing occurs. Condominium special assessments due and payable prior to closing shall be SELLER's responsibility. Any errors or omissions in computing apportionment or other adjustments at closing shall be corrected within a reasonable time following the closing, not to exceed six (6) months. The provisions of this Paragraph shall survive the closing.

14. **RISK OF LOSS**. The risk of loss or damage by fire or other casualty to the buildings on the Premises until the time of the delivery of the deed is assumed by the SELLER. ~~Throughout the period between the date of this Agreement and the delivery of the deed, SELLER shall continue to carry his existing fire and extended coverage insurance on the buildings on the Premises~~. In the event that such loss or damage does occur prior to the delivery of the deed, the SELLER shall be allowed a reasonable time thereafter, not to exceed thirty (30) calendar days from such loss or damage, within which to repair or replace such loss or damage to BUYER's reasonable satisfaction. In the event the SELLER does not repair or replace such loss or damage to BUYER's reasonable satisfaction within said time, the BUYER shall have the option:

(a) of terminating this Agreement, in which event all sums paid on account hereof, together with any nonrefundable expenses actually incurred by the BUYER in the aggregate not to exceed the cost of an A.L.T.A. Homeowner's Policy (or the equivalent thereof) based on the amount of the purchase price shall be paid to the BUYER without interest thereon. Upon receipt of such payment, this Agreement shall terminate and the parties hereto shall be released and discharged from all further claims and obligations hereunder. SELLER shall be entitled to require BUYER to provide reasonable proof of payment of said expenses; or

(b) of accepting a deed conveying the Premises in accordance with all the other provisions of this Agreement upon payment of the aforesaid purchase price and of receiving an assignment of all**, if any,** insurance moneys recovered or to be recovered on account of such

loss or damage, to the extent they are attributable to loss or damage to any property included in this sale together with the amount of the deductible withheld from payment, less the amount of any moneys actually expended by the SELLER on any repairs to said property.

The SELLER shall not be responsible for loss or damage to trees or other plantings due to natural causes.

## 15. **AFFIDAVITS/1099 REPORTING:**

  A.  The SELLER agrees to execute, at the time of closing of title;

         (1)  an affidavit, (i) verifying the non-existence of mechanics' and materialmen's lien rights, (ii) verifying the non-existence of any tenants' rights, other than as set forth herein, (iii) verifying the non-existence of any security interests in personal property and fixtures being sold with the Premises, and (iv) updating to the extent of SELLER's knowledge, any available survey, together with any other affidavit reasonably requested by the BUYER's lender or title company as to facts within SELLER's knowledge; and, if true,

         (2) affirming that SELLER is not a "foreign person" pursuant to Internal Revenue Code §1445 and, if SELLER is unable to provide an affidavit affirming same, the parties agree to comply with all applicable laws including all relevant provisions under Internal Revenue Code §1445, et. seq., as amended.

B.   Unless otherwise provided, the BUYER agrees to execute and file a Form 1099 Report in connection with the Purchase and Sale of Real Estate as may be applicable to the transaction contemplated herein, and the SELLER must provide information relevant thereto.

## 16. **STATUTORY NOTICES/WAIVER**:

The SELLER gives notice to the BUYER as follows:

  **A.**  The Commissioner of Environmental Protection must provide the Town Clerk of the town in which the Premises are located with a list of all hazardous waste facilities located within such town and a notice of the list shall be maintained by the town clerk of such town and the town clerk shall post a notice of the list in the area where the land records are kept.  Pursuant to Conn. Gen. Stat. §20-327f, the SELLER hereby provides notice to the BUYER of the availability of this list.

  **B.**  The SELLER further provides notice to the BUYER that a list of any local properties upon which hunting or shooting sports regularly take place may be available at the Town Clerk of the municipality where the Premises are located, and the SELLER has no knowledge of any error, omission, or inaccuracy in such list.

  **C.**  LEAD-BASED PAINT.  By signing this Agreement, BUYER acknowledges that the lead paint contingency granted pursuant to §42 USC 4852d as set forth in the Lead Paint

Disclosure report attached to this Agreement has been waived or has been satisfied, and that the BUYER has no further testing period for lead paint.

17.    **SMOKE DETECTOR/CARBON MONOXIDE AFFIDAVIT**.    **SMOKE DETECTOR/CARBON MONOXIDE AFFIDAVIT**. ~~At closing of title, SELLER shall leave the existing smoke alarms and carbon monoxide detectors in place.  Having no expertise with respect to the operation or placement of smoke alarms and carbon monoxide detectors and having made no inspection of same, SELLER represents that SELLER is not aware of any defects with respect to same.  Notwithstanding the foregoing, SELLER will either provide at closing the affidavit required by Conn. Gen. Stat. § 29-453, and as same may be amended, or, if no affidavit is provided, SELLER shall give BUYER a credit in the amount of $250.00~~ . **BUYER AND SELLER AGREE THAT SELLER IS EXEMPT FROM THE REQUIREMENTS OF CONN. GEN. STAT. SEC. 29-453.**

18.  **MAINTENANCE**.  The house, grounds and facilities shall be maintained by the SELLER between the date of BUYER's signing hereof and the closing of title, including the mowing of lawns, the raking of fallen leaves, the removal of fallen trees and large branches (except in uncultivated areas), and the removal of snow and ice from walks and driveways.  In the event there is a pool that has been opened prior to the closing, SELLER shall continue to perform normal maintenance of same.  **SELLER AGREES TO LEAVE THE POOL OPENED.**

19.  **DELIVERY OF PREMISES**.  The SELLER agrees to deliver, simultaneously with the closing of title, exclusive possession of the Premises, broom-clean, free of all debris, litter and furnishings and shall deliver all keys, garage door openers (if any), and alarm codes (if applicable) in SELLER's possession to the BUYER.  BUYER shall have the right to make a final inspection of the Premises prior to the closing of title.

20.  **LIABILITY FOR DELAYED CLOSING**.  **EXCEPT AS PROVIDED HEREIN,** In the event of a delay in closing as set forth herein, other than as provided for under the provisions of this Agreement, through no fault of the SELLER, beyond five (5) business days, then the BUYER will reimburse the SELLER from the sixth (6th) business day to the actual date of closing for the SELLER's carrying costs of said property, including taxes, mortgage interest, utilities and per diem interest on SELLER's equity in the Premises, which amount shall be calculated at the rate of 1/30th of 1% of the purchase price for each day of delay from the sixth (6th) business day up to the actual date of closing.  ~~Further, in the event of a delay in closing by more than five (5) business days, through no fault of the BUYER, SELLER shall reimburse BUYER for carrying costs for temporary housing, temporary storage of personal property, living expenses and other miscellaneous expenses at the same per diem rate of 1/30th of 1% of the purchase price for each day of delay from the sixth (6th) business day up to the actual date of closing. For example, the per diem cost of a $450,000 transaction would be $150 per day.~~

~~Notwithstanding anything else in this Agreement, provided BUYER's mortgage commitment and rate lock do not expire before five (5) business days after the Closing Date, any right of the SELLER to delay closing under this Agreement (including the cure provisions in Paragraphs 10 and 14) shall not extend beyond the expiration date of BUYER's mortgage commitment or rate lock, or such extended date which is available at no cost to BUYER.~~

If the BUYER terminates this Agreement due to SELLER's refusal to close within the timeframe provided above, then BUYER shall receive all sums paid on account hereof, together with any nonrefundable expenses actually incurred by the BUYER in the aggregate not to exceed the cost of an A.L.T.A. Homeowner's Policy (or the equivalent thereof) based on the amount of the purchase price, which shall be paid to the BUYER without interest thereon.

21.  **DEFAULT**.  If  (a) BUYER is in material default hereunder, or, (b) on or before the Closing Date as set forth herein, BUYER indicates that BUYER is unable or unwilling to perform, and provided SELLER stands ready to perform SELLER's obligations, SELLER's sole and exclusive remedy shall be the right to terminate this Agreement by written Notice pursuant to Paragraph 32 to BUYER or BUYER's attorney and the Escrow Agent and SELLER shall retain the Deposit **AND BE ENTITLED TO RETAIN OR COLLECT ANY SUMS PAID OR DUE UNDER PARAGRAPH 20. TO THE DATE OF SUCH WRITTEN NOTICE OF TERMINATION** as reasonable liquidated damages for BUYER's inability or unwillingness to perform.  In the event  such written Notice of termination of this Agreement is given by SELLER, the Premises shall be free of any claims or interest of the BUYER therein by virtue of this Agreement, provided neither party objects to same within 5 business days of receipt of Notice of termination.

It is the intention of the parties hereto freely to make advance provision on the date of this Agreement for such event in order (a) to avoid controversy, delay and expense, and (b) to specify now a reasonable amount agreeable to both for compensation to the SELLER for losses which may not be readily ascertainable or quantifiable, such as any of the following which might be necessary to place SELLER in the position SELLER would have been in had BUYER made timely performance:  costs of carrying, maintaining, insuring and protecting the property; loss of interest income on the proceeds; loss of optimum market time, value and conditions; the uncertainty, delay, expense and inconvenience of finding a substitute BUYER; additional commissions, fees, taxes and borrowing expenses to meet obligations entered into in anticipation of performance.

In the event closing has not taken place within thirty (30) calendar days following the Closing Date as it may be extended pursuant to the provisions hereof, through no fault of the non-delaying party, the delaying party shall be deemed in default.  **EXCEPT AS OTHERWISE SET FORTH HEREIN,** if SELLER is in material default hereunder, BUYER shall have such remedies as BUYER shall be entitled to at law or in equity, including, but not limited to, specific performance, **PROVIDED THAT SUCH REMEDIES MUST BE PURSUED IN THE BANKRUPTCY COURT**.

22.  **PROPERTY CONDITION DISCLOSURE FORM**.  ~~Attached hereto as a Rider is the Property Condition Disclosure Form required by Conn. Gen. Stat. §20-327b.  In the event the SELLER has not furnished BUYER with the Property Disclosure Form, if required by §20-327b of the Connecticut General Statutes, with or prior to the BUYER's execution of this Agreement, the SELLER shall give and the BUYER shall receive at closing a credit against the purchase price in the amount of $500.00.~~ **BUYER AND SELLER AGREE THAT SELLER IS EXEMPT FROM THE REQUIREMENTS OF CONN. GEN. STAT. SEC. 20-327b.**

23. **DELIVERY OF DOCUMENTS**.  The SELLER shall deliver to the BUYER prior to closing any documents, informational materials, building plans and any surveys in the SELLER's possession pertaining to the Premises, the appliances and the systems on or within the Premises.

24. **RIGHT TO WITHDRAW**.  This Agreement shall not be considered or construed as an offer by the SELLER.  The SELLER reserves the right to withdraw this proposed Agreement at any time prior to the signature by both parties hereto and receipt by the SELLER's attorney as the escrow agent of the full payment of the Deposit set forth herein, and delivery of a fully executed Agreement to the BUYER's Attorney at the address provided in Paragraph 32.

25. **ASSIGNMENT**.  This Agreement and BUYER'S rights hereunder may not be assigned by BUYER without the written consent of SELLER, and any purported assignment without such written consent shall be void and of no effect.  Consent of the SELLER to assignment shall not unreasonably be withheld, conditioned or delayed.  Upon any effective assignment of BUYER's rights hereunder, BUYER and BUYER's assignee shall be jointly and severally liable hereunder, unless otherwise agreed by SELLER. **NOTWITHSTANDING THE FOREGOING, BUYER MAY ASSIGN THIS AGREEMENT TO A LIMITED LIABILITY COMPANY OF WHICH BUYER OR BUYER'S SPOUSE ARE A MEMBER. WITHOUT REQUIRING THE CONSENT OF THE SELLER. IN THE EVENT OF AN ASSIGNMENT, THE BUYER SHALL REMAIN PRIMARILY LIABLE FOR ALL OBLIGATIONS OF BUYER HEREIN.**

26. **ACCEPTANCE OF DEED**.  The delivery and acceptance of the deed herein described shall be deemed to constitute full compliance with all the terms, conditions, covenants and representations contained herein, or made in connection with this transaction, except as may herein be expressly provided and except for the warranties of title.

27. **REPRESENTATIONS**. Unless otherwise specified herein, none of the representations made in this Agreement including all attachments shall survive delivery of the deed, and all representations by SELLER are made to the best of SELLER's knowledge and belief and without duty of inquiry.  SELLER shall have an affirmative obligation to notify BUYER if any of the representations in this Agreement or in all Attachments are no longer true.  Except in the event of an intentional misrepresentation, if BUYER discovers prior to the closing of title any material representation contained in this Agreement including all Attachments to be untrue, the remedy of the parties shall be those available to them in the event of a valid defect in or objection to title, as set forth in Paragraph 10, above.  In the event of an intentional misrepresentation, BUYER shall have available all rights in either law or equity.

28. **SELLER'S REPRESENTATIONS REGARDING BANKRUPTCY**. ~~SELLER represents that they are not presently, nor have they been, debtors in a bankruptcy proceeding in which the Bankruptcy Court presently has continuing jurisdiction over their assets.  The SELLER further represents that the Premises is not in the hands of a receiver or other liquidating agent. These representations shall survive the closing of title.~~ **BUYER ACKNOWLEDGES THAT SELLER IS THE CHAPTER 11 TRUSTEE OF THE HO WAN KWOK BANKRUPTCY ESTATE AND THE BANKRUPTCY COURT HAS JURISDICTION OVER THIS AGREEMENT AS FURTHER SET FORTH**

**HEREIN**.

29.  **EFFECT**.  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, and permitted assigns of the respective parties.

30.  **COSTS OF ENFORCEMENT**.  Except as otherwise expressly provided herein, in the event of any litigation brought to enforce any material provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and court costs, including interest as may be provided by  law,  from the other party.

31.  **GENDER.**  In all references herein to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within Agreement may require.

32.  **COUNTERPARTS / FACSIMILE / ELECTRONIC MAIL/NOTICES.**  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, and all of which when taken together shall constitute one and the same Agreement.  The parties hereto agree that this Agreement may be transmitted between them or their respective attorneys by facsimile or electronic mail and, upon evidence of receipt of same, shall constitute delivery of this Agreement.  The parties intend that faxed or electronic signatures constitute original signatures and that an Agreement containing the signatures (original, facsimile or electronic) of all the parties is binding on the parties once sent via facsimile or via electronic mail or delivered to the other party's counsel.

All notices under this Agreement shall be in writing and shall be delivered or sent by email, facsimile transmission, certified mail, or by overnight courier, addressed to the attorney for the respective party.  Notice signed by the respective attorneys shall be deemed sufficient within the meaning of this paragraph without the signature of the parties themselves. Electronic signatures of the parties and of the attorneys for the parties on this Agreement, notices, or amendments to this Agreement shall be deemed to have the full force and effect of an original signature.

Each party authorizes their attorney as attorney-in-fact to execute all documents as may be required to effectuate the terms and conditions of this Purchase and Sale Agreement, once executed by the parties, including documents that may be reasonably requested and related to BUYER's lender's requirements.

Notices to the SELLER shall be sent to:
William Sherman, Esq.
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Phone  203-781-2868
Fax     203-821-2008

Notices to the BUYER shall be sent to:
 Robert E. Murray, Jr., Esq.

Diserio Martin
1010 Washington Boulevard
Stamford, CT 06091
Phone: (203) 569-1122
Fax: (203) 348-2321
Email:  rmurray@dmoc.com

33.  **ENTIRE AGREEMENT.**  All prior understandings, agreements, representations and warranties, oral and written, between SELLER and BUYER are merged in this Agreement and specified riders or attachments hereto.  This Agreement completely expresses the agreement of the parties, and has been entered into by the parties after discussion with their respective attorneys and after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this Agreement.  Neither this Agreement nor any provision hereof may be waived, changed or canceled except by a written instrument signed by both parties.

34.  **CAPTIONS**.  The captions preceding the paragraphs in this Agreement are for ease of reference only and shall be deemed to have no effect whatsoever on the meaning or construction of the provisions of this Agreement.

35.  **SEVERABILITY**.  The invalidity or unenforceability of any one or more provisions of this Agreement shall not render any other provision invalid or unenforceable.  In lieu of any invalid or unenforceable provision, there shall be added automatically a valid and enforceable provision as similar in terms to such invalid or unenforceable provision as may be possible.

36.  **ALTERATION OF STANDARD FORM**.  The BUYER and SELLER acknowledge that this is the current Residential Real Estate Sales Agreement as shown on the Fairfield County Bar Association website (the "Standard Form") and agree all deviations and changes made by either the SELLER's or BUYER's attorney must be clearly marked in bold, underline and/or large font typeface, handwritten or otherwise highlighted to indicate the change(s).  Should a change be made without clear marking or delineation, such provision shall be deemed not to be a part of this Agreement for any purpose, and shall be replaced with the provision of the Standard Form that has been changed or eliminated.  Any eliminated sections of the Standard Form also shall be deemed to be a part of this Agreement unless a reference to its deletion is clearly marked in accordance with this paragraph or described in a separate cover letter.  Addenda, exhibits, attachments and riders to this Agreement are not subject to the requirements of this paragraph.

37.     **BUYER agrees that Luc A. Despins is party to this Agreement solely in his capacity as Chapter 11 Trustee for the Bankruptcy Estate of Ho Wan Kwok and not his personal capacity.  Accordingly, no claim whatsoever may be asserted by BUYER against Luc A. Despins in his personal capacity.**

38.     **BUYER represents and warrants that BUYER is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok**

39.    **Notwithstanding anything herein to the contrary:**
**A. BUYER and SELLER agree that this Agreement and all terms hereof are subject to the approval of the Bankruptcy Court.**

**B.    BUYER and SELLER agree that the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of this Agreement, including delivery of the deed by the SELLER, and the parties irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to this Agreement will be decided in the Bankruptcy Court, and, further, not to bring any claim relating to this Agreement in any other court.  For the avoidance of doubt, SELLER shall not be liable to BUYER for a delayed closing or be in default hereunder if the Bankruptcy Court shall not approve of this Agreement. In the event that this Agreement is not approved by the Bankruptcy Court, the BUYER shall be returned the Deposit(s) paid hereunder, then this Agreement shall terminate and the parties hereto shall be released and discharged from all further claims and obligations hereunder.**

**C. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Premises to BUYER shall provide that the Premises are being sold free and clear of any encumbrances except as set forth herein.**

**D.    SELLER shall provide BUYER at closing with (1) a certified copy of the Bankruptcy Court Order authorizing and approving the sale contemplated herein and (2) an original release (in recordable form) of the Attachment in favor of Luc Despins, as Chapter 11 Trustee against Greenwich Land LLC in the amount of $8,314,200.00 dated March 30, 2023 and recorded in Volume 8027 at Page 202 of the Greenwich Land Records.**

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the parties to these presents have hereunto set their hands and seals, as of the day first above written.

Luc A. Despins, as Chapter 11 Trustee of the Estate of Ho Wan Kwok, SELLER

BUYER

Title to said Premises is to be taken in the name or names of:

**as** _____

**ACCEPTANCE OF ESCROW**            **DATED:_____**

**I HEREBY ACCEPT RECEIPT OF THE DEPOSIT AS SPECIFIED IN PARAGRAPH 2, SUBJECT TO COLLECTION, AND THE UNDERSIGNED AGREES TO ACT IN ACCORDANCE WITH THE PROVISIONS OF PARAGRAPH 3 OF THIS AGREEMENT.**

**THE ESCROW AGENT: NEUBERT PEPE & MONTEITH, P.C.**

Attachments: (For Reference Only)
Legal Description ("Schedule A")
Residential Condition Property Disclosure Report

This is the July 14, 2015 version of the Fairfield County Bar Association Residential Real Estate Sales Agreement approved and adopted by the Fairfield County Bar Association.

IN WITNESS WHEREOF, the parties to these presents have hereunto set their hands and seals, as of the day first above written.

_____

Luc A. Despins, as Chapter 11 Trustee of the Estate of Ho Wan Kwok, SELLER

BUYER

Title to said Premises is to be taken in the name or names of:

as _____

**ACCEPTANCE OF ESCROW**          DATED: _/0/11/24_

**I HEREBY ACCEPT RECEIPT OF THE DEPOSIT AS SPECIFIED IN PARAGRAPH 2, SUBJECT TO COLLECTION, AND THE UNDERSIGNED AGREES TO ACT IN ACCORDANCE WITH THE PROVISIONS OF PARAGRAPH 3 OF THIS AGREEMENT.**

**THE ESCROW AGENT: NEUBERT PEPE & MONTEITH, P.C.**

Attachments:  (For Reference Only)
Legal Description ("Schedule A")
Residential Condition Property Disclosure Report

This is the July 14, 2015 version of the Fairfield County Bar Association Residential Real Estate Sales Agreement approved and adopted by the Fairfield County Bar Association.

# SCHEDULE A

ALL THAT CERTAIN piece, parcel or tract of land, together with the buildings thereon, situated partly in the Town of Greenwich and partly in the City of Stamford, both of the County of Fairfield and State of Connecticut, designated as Lot 26 on a certain map entitled, "Property of Northwich Development Company Greenwich and Stamford, Conn.", certified Substantially Correct by Allan S. Devaul for S.E. Minor & Co., Inc., Civil Engineers, Greenwich, Conn. Sept.26, 1962 and Revised Oct. 8, 1962, Dec. 11, 1962, on file in the Office of the Greenwich Town Clerk as the Map No. 4359, and shown and designated as Lot 26 on a certain map entitled, "Property of Northwich Development Company Greenwich and Stamford, Conn.", Certified Substantially Correct by Allan S. Devaul for S.E. Minor & Co., Inc., Civil Engineers, Greenwich, Conn. Apr. 3, 1963, on file in the Office of the Greenwich Town Clerk as Map No. 7604, reference thereto being had. Said premises are bounded:

NORTHERLY:      623.14 feet by land now or formerly or Parkchester Beach Club
                Corporation;
EASTERLY:       272.78 feet by Taconic Road, so-called;
SOUTHERLY:      620 feet by land now or formerly of Elizabeth Sprague Stout, being Lot 25,
                as shown on said maps; and
WESTERLY:  330.53 feet by land now or formerly of Stanwich Club, Inc.

Said premises are subject to:

1.  Building lines, if established, building and zoning ordinances, and any and all municipal
    and state and federal regulations including inland wetlands regulations and provisions of
    any public or private law affecting said premises.

2.  Real estate taxes to the Town of Greenwich on the Grand List of October 1, 2023, and real
    estate taxes due thereafter.

3.  Real estate taxes to the City of Stamford on the Grand List of October 1, 2023, and real
    estate taxes due thereafter.

4.  Declaration of Restrictions dated December 12, 1962 and recorded in Volume 679 at Page
    513, as assigned by a deed dated December 8, 1963 and recorded in Volume 697 at Page
    158, both of the Greenwich Land Records

5.  Declaration of Inland Wetlands and Watercourses recorded in Volume 4218 at Page 181
    of the Greenwich Land Records.

6.  Zoning Appeals Board Certificate granted by the City of Stamford, Zoning Appeals Board
    dated April 28, 1963 and recorded in Volume 980 at Page 51 of the Stamford Land
    Records.

7.  Zoning Appeals Board Certificate granted by the City of Stamford, Zoning Appeals Board dated June 5, 1963 and recorded in Volume 980 at Page 494 of the Stamford Land Records.

8.  Permit granted by the City of Stamford, Environmental Protection Board recorded in Volume 6714 at Page 21, as amended by a Notice dated December 6, 2005 and recorded in Volume 8355 at Page 219, both of the Stamford Land Records.

9.  Landscape Maintenance Agreement dated May 15, 2003 and recorded in Volume 6897 at Page 32 of the Stamford Land Records

## **EXHIBIT 1-B**

**NEW PSA (REDLINE V. ORIGINAL PSA)**

THE FAIRFIELD COUNTY BAR ASSOCIATION
## RESIDENTIAL REAL ESTATE SALES AGREEMENT
(Revised July 14, 2015)

———————————————————————

**This Agreement** made as of the **26th11th** day of ~~September~~ **October**, 2024 between **LUC A. DESPINS, AS CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATE OF HO WAN KWOK, c/o Paul Hastings LLP, 200 Park Avenue, New York, New York 10166** (hereinafter referred to as the SELLER, whether one or more), and ███████████████ ████████████████ ████████████ **Greenwich, CT 06830** (hereinafter referred to as the BUYER or PURCHASER whether one or more).

### W I T N E S S E T H:

1.  **PROPERTY**.  The SELLER, in consideration of the purchase price hereinafter specified, hereby agrees to sell and convey, and the BUYER hereby agrees to purchase the real property commonly known as **373 Taconic Road, Greenwich, CT 06831** and specifically described in Schedule A attached hereto, **being located partially in Greenwich and partially in Stamford, Connecticut** (the "Premises") subject only to the encumbrances and exceptions to title set forth or referred to in Paragraph 10(e) and Schedule A (legal description and exceptions, if any) attached hereto.

2.  **CONSIDERATION**.  The purchase price is ~~SIX~~**SEVEN** MILLION ~~NINE~~**TWO** HUNDRED **FIFTY** THOUSAND & 00/100 DOLLARS ($~~6,900~~**7,250**,000.00) DOLLARS  which the BUYER agrees to pay as follows:

    (a)  As a part of the Deposit heretofore paid, receipt of which is acknowledged, subject to collection. If a Deposit or any portion thereof is paid to a broker or other party, Buyer directs that the Deposit shall be sent immediately to Seller's attorney (the "Escrow Agent") for handling per Paragraph 3, below;                $**0.00**

    (b)  Upon the signing of this Agreement, payable to the SELLER'S attorney as Trustee or Escrow Agent as provided herein, receipt of which is acknowledged, subject to collection ("the Deposit");                $1,~~0350~~**65**,000.00

    ~~(c)~~  Upon delivery of the deed by wire **transfer** ~~or by official cashier's or bank check drawn by and upon a federally regulated or Connecticut state-chartered bank, or a bank that is a member of the New York Clearing House~~, the proceeds of which are immediately available.             $~~5,865~~**6,185**,000.00

        **TOTAL**                        $~~6,900~~**7,250**,000.00

3.      **ESCROW**. SELLER'S attorney (the "Escrow Agent") shall hold the Deposit in Paragraph 2(a), **and/or 2(b)** above, in escrow in an IOLTA account until closing of title or sooner termination of this Agreement in accordance with its terms, and shall pay over or apply the Deposit in accordance with the terms of this paragraph.  The Escrow Agent shall hold the Deposit in an attorney's IOLTA account for the benefit of the parties.  At the closing of title as contemplated hereunder, the Deposit shall be paid by the Escrow Agent to or as directed by the SELLER.  If for any reason the closing does not occur and either party gives Notice to the Escrow Agent pursuant to Paragraph 32 demanding payment of the Deposit, then the Escrow Agent shall give prompt Notice of such demand to the other party. If the Escrow Agent does not receive from such other party Notice of an objection to the proposed payment within seven (7) business days after giving such Notice, the Escrow Agent is hereby authorized and directed to make such payment in accordance with the Notice.  If the Escrow Agent receives such Notice of objection within said seven (7) business day period, or if for any other reason the Escrow Agent in good faith shall elect not to make such payment, then the Escrow Agent may continue to hold such amount until otherwise directed by Notice from the parties to this Agreement or a final, non-appealable judgment, order or decree of ~~a Court of competent jurisdiction~~ **the Bankruptcy Court (as hereinafter defined)**.  However, the Escrow Agent shall have the right at any time to deposit the Deposit and the interest thereon, if any, with a court of competent jurisdiction where the Premises is located and shall give Notice of such deposit to SELLER and BUYER.  Upon such deposit or other disbursement in accordance with the terms of this Paragraph 3, the Escrow Agent shall be relieved and discharged of all further obligations and responsibilities hereunder.

The parties acknowledge that the Escrow Agent is acting solely as a stakeholder at their request and for their convenience and that the Escrow Agent shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith, on account of gross negligence, or in willful disregard of this Agreement on the part of the Escrow Agent.  SELLER and BUYER agree, jointly and severally (with right of contribution) to defend (by counsel selected by the Escrow Agent), indemnify and hold the Escrow Agent harmless from and against all costs, claims and expenses (including reasonable attorney's fees) incurred in connection with the performance of the Escrow Agent's duties hereunder, except with respect to acts or omissions taken or suffered by the Escrow Agent in bad faith, on account of gross negligence,  or in willful disregard of this Agreement on the part of the Escrow Agent.  In the event the Deposit is deposited with a ~~court of competent~~ **jurisdiction the Bankruptcy Court** pursuant to the terms herein, the parties to this Agreement hereby authorize the Escrow Agent to deduct the reasonable costs and attorney's fees associated with an action of interpleader.

The Escrow Agent may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from acting upon the advice of such counsel.

The Escrow Agent acknowledges receipt of the Deposit by check or wire, subject to collection and the Escrow Agent's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this Agreement.

Escrow Agent or any member of its firm shall be permitted to act as counsel for SELLER in any dispute as to the disbursement of the Deposit or any other dispute between the parties whether or not the Escrow Agent is in possession of the Deposit and/or continues to act as the Escrow Agent. The parties waive claim to a conflict regarding this paragraph.

Escrow Agent shall have no liability for any loss of the Deposit occurring on account of FDIC limits for sums insured on deposit.

It is specifically understood and agreed that at closing, BUYER shall tender to SELLER official, cashier's or bank checks drawn on a federally-regulated or Connecticut state-chartered bank, or a bank that is a member of the New York Clearing House, the proceeds of which are immediately available, or wired funds. All checks shall be made payable to SELLER'S attorney as trustee for SELLER, unless otherwise directed in writing by SELLER or SELLER'S counsel for the balance of the purchase price due at closing as set forth in this Agreement less the amounts of all mortgage payoffs.  Additionally, BUYER'S attorney shall tender separate bank or treasurer's check(s) to SELLER for payoff of SELLER'S mortgage obligations.

On or before ten calendar days (10) before closing, SELLER shall provide BUYER's attorney with written directions for each mortgage payoff stating the name of payee and the total amount of payoff together with a copy of the associated payoff statement(s).  SELLER shall calculate the total payoff amount (including applicable per diems, late charges, etc.) that shall be in an amount sufficient to pay the mortgage in full.  SELLER shall be responsible for preparing the mortgage payoff package(s) and transmittal(s).  Immediately after closing, SELLER'S attorney shall wire or hand deliver or send via overnight carrier the payoff funds and package to the SELLER'S lender(s).

**4. FIXTURES**.  (a)  Included in this sale, for the aforesaid purchase price, are the following items, all of which items the SELLER represents are owned by SELLER, not leased, and free from security interests, liens, and other encumbrances,  insofar as any of them were located on the Premises at the time of BUYER'S inspection: heating, cooling, electrical and plumbing systems and fixtures, electric light fixtures, installed wall to wall carpeting, security system, stove, storm windows and doors, screens and screen doors, window shades, venetian blinds, curtain rods, awnings, any affixed satellite dish(es), weathervanes, mail box(es), all pool equipment, garage door openers with remotes, and existing plants and shrubbery, together with: **OUTDOOR FURNITURE, GYM EQUIPMENT, ~~POOL TABLE~~, HOME THEATER FURNITURE AND EQUIPMENT, ALL TELEVISIONS AND OTHER A/V EQUIPMENT, WINDOW TREATMENTS, DRAPES, ALL APPLIANCES AS PER LISTING**

(b)       Specifically **excluded** from the sale are:  **POOL TABLE**

(c)       Except as otherwise set forth herein, if any fixtures are leased, SELLER shall provide the name and contact information of the lessor as soon as possible, but not later than the two (2) business days before the closing of title.  The following fixtures are leased: **NONE**

**SELLER MAY STORE FURNITURE IN A DESIGNATED ROOM AND LEAVE ONE VEHICLE ON THE PREMISES FOR UP TO FORTY-FIVE CALENDAR DAYS AFTER THE DATE OF CLOSING, PROVIDED SELLER EXECUTES A HOLD HARMLESS AGREEMENT IN FAVOR OF BUYER.**

**5.** **MORTGAGE CONTINGENCY.** This Agreement is <u>**NOT**</u> contingent upon BUYER obtaining a written ~~commitment for a loan without any condition(s) beyond BUYER'S reasonable ability to satisfy, to be secured by a first mortgage on the Premises, in such an amount for which BUYER shall apply which shall not be in excess of $_____ from a lending institution or licensed mortgage broker, which loan shall be for a term of _____ years and shall bear interest at a rate not to exceed _____ or prevailing rate, at a fixed/variable rate at the institution where application is made. BUYER agrees to make prompt application for such a loan and to pursue said application with diligence. If having done so, BUYER is unable to obtain a written commitment for such a loan on or before _____, 201___, and if BUYER so notifies SELLER or SELLER's attorney, as provided in Paragraph 32, at or before 6:00 p.m., on said date, then SELLER shall have the option to extend the mortgage contingency date or terminate this Agreement, which shall then be null and void, and the BUYER shall be entitled to the immediate return by SELLER of all sums paid by the BUYER on account of this Agreement except for the sum of Four Hundred Fifty ($450.00) Dollars towards the cost of preparation of this Agreement.~~

~~If BUYER exercises this mortgage contingency, Buyer must provide a letter from Buyer's lender that demonstrates that Buyer could not obtain a written loan commitment with conditions that are beyond Buyer's reasonable ability to satisfy. If SELLER or SELLER's attorney do not receive such notice as provided in Paragraph 32 at or before 6:00 p.m. on said date, this Agreement shall remain in full force and effect.~~

~~The foregoing notwithstanding, a denial of BUYER's mortgage application based solely upon the BUYER's inability to sell other real estate or another home, or a written commitment conditioned solely on the sale of other real estate or another home, shall NOT be deemed a denial of such mortgage application under this paragraph. In either of such events the BUYER shall not be entitled to terminate this Agreement nor be entitled to the return of any sums paid by the BUYER on account of this Agreement. Should the BUYER fail to comply with the foregoing requirements, this Agreement shall continue in full force and effect, and the rights and obligations of the parties shall be as if this Paragraph 5 did not appear in this Agreement.~~

~~6.     MUNICIPAL CONTINGENCY and TITLE CONTINGENCY~~

~~A.  BUYER's obligations are contingent upon a BUYER obtaining "reasonably satisfactory title" and "reasonably satisfactory municipal searches" to be completed no later than 6 pm on **OCTOBER 3, 2024** ("Title and Municipal Date"). In the event one or both such searches are not reasonably satisfactory to the BUYER, BUYER shall have the right to terminate this Agreement by giving written Notice as provided in Paragraph 32 of such termination on or prior to the Title and Municipal Date. Upon receipt of such Notice, SELLER shall return all Deposit monies as soon as practicable as paid hereunder except for the sum of Four Hundred Fifty ($450.00) Dollars towards the cost of preparation of this Agreement and, upon delivery of such funds, this Agreement shall terminate.~~

~~A.  For the purposes of this Paragraph 6, "reasonably satisfactory title" shall mean: (i) title~~

~~which conforms to Schedule A and (ii) does not contain any restrictions on the use of the property which would significantly impair BUYER's stated intended use and enjoyment of the Property. Utility easements, so long as the same are limited to bringing service to the Property, shall not be deemed to impair the use and enjoyment of the Property.~~
~~B. For the purposes of this Paragraph 6, a "reasonably satisfactory municipal search", if any, shall mean a search showing matters of public record which: (i) materially conform to the listing provided to BUYER by SELLER'S agent, (ii) conform to such facts that a physical inspection of the property shall reveal, (iii) do not reveal any unpermitted work or open permits requiring final municipal approval that are not likely to be cured by SELLER prior to closing and (iv) are internally consistent (for example, the assessor's records are consistent with health department records as to number of bedrooms in the home).~~
~~Nothing in this Paragraph 6 shall limit the parties' remedies as otherwise provided in this Agreement.~~6. **INTENTIONALLY OMITTED**

**7.**    **CONDITION OF PREMISES [THIS AGREEMENT IS NOT SUBJECT TO ANY INSPECTION CONTINGENCIES]**. The BUYER agrees that she has inspected said Premises, is satisfied with the physical condition thereof and agrees to accept at closing the Premises in the condition that the Premises ~~were disclosed to be or~~ were in as of the date of BUYER's initial home inspection or, if no inspection, on the date of this Agreement, in an "as is" and "where is" condition, reasonable wear and tear excepted. Neither SELLER nor SELLER's agents have made any representations or warranties as to the Premises on which BUYER has relied other than as expressly set forth in this Agreement. **BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS NEVER OCCUPIED THE PREMISES AND HAS NO KNOWLEDGE OF THE CONDITION OF THE PREMISES.** ~~SELLER AGREES TO HAVE THE HVAC SYSTEM SERVICED PRIOR TO CLOSING UTILIZING THE SERVICES OF A LICENSED HVAC COMPANY TOGETHER WITH PAID RECEIPT~~.

8. **DEED**. The SELLER, on receiving the total purchase price, shall, at the SELLER's cost and expense, execute, acknowledge, and deliver to the BUYER, or BUYER's permitted assigns, the usual Connecticut ~~full covenant Warranty Deed (or~~ **appropriate Fiduciary's Deed and/or Bankruptcy Court Order)** in proper form, to convey to the BUYER, or BUYER's permitted assigns, the fee simple of the Premises, free of all encumbrances except as hereinafter provided. The SELLER shall thereupon pay all real estate conveyance taxes and shall complete and deliver to the BUYER the conveyance tax forms.

9. **CLOSING**. The deed shall be delivered at the offices of **Neubert Pepe & Monteith, P.C., 72 Ruane Street, Fairfield, CT 06824** ~~or at such place in Fairfield County, Connecticut, as may be designated by BUYER's lending institution on~~ **the 15**~~th~~ **day after within three (3) business days following the entry of the** **Bankruptcy** ~~Court approval~~**Court's Order (as defined in Paragraph 10(e) (vii))** ~~at 10:00 A.M./P.M. or sooner by mutual agreement of the parties hereto ("~~**approving** **the** ~~Closing Date"). Closing may take place via overnight delivery of~~ **sale** ~~documents~~**to Buyer unless an objection**

**to the sale has been filed and ~~wire transfer~~not withdrawn at the time of the entry of the order approving the sale (the "Sale Approval Order"). If such an objection is filed (and not withdrawn), the Buyer may wait to proceed with the closing ~~funds. IN NO EVENT SHALL THE CLOSING BE HELD EARLIER THAN 45 DAYS FROM CONTRACT SIGNING UNLESS BUYER AGREES TO SAME~~until the 14 day period to appeal (from entry of such order(s)) the Sale Approval Order or the order denying the objection (the "Denial Order") (whichever is the later of the two orders if they are issued separately) has passed (the "Appeal Period"). Once the Appeal Period has passed, the Buyer will be obligated to close on the next business day after the expiration of the Appeal Period if the Sale Approval Order and the Denial Order are still in effect, even if there has been an appeal of the Denial Order or Sale Order, as long as no stay of the Sale Order or Denial Order (if such Denial Order is not contained in the Sale Order) has been issued by any court of competent jurisdiction.**

10.  **TITLE**.  (a)  If, upon the date for the delivery of the deed, the SELLER shall be unable to deliver or cause to be delivered a deed or deeds conveying marketable title to the Premises as hereinafter provided, subject only to the items set forth in Schedule A and Paragraph 10(e) hereof, then the SELLER shall be allowed a reasonable postponement of closing not to exceed thirty (30) calendar days, within which to perfect title.  If at the end of said time the SELLER is still unable to deliver or cause to be delivered a deed or deeds conveying a marketable title to said Premises, subject as aforesaid, the BUYER (i) may elect to accept such title as the SELLER can convey, without modification of the purchase price, or (ii) may reject such title.  Upon such rejection, all sums paid on account hereof, together with any nonrefundable expenses actually incurred by the BUYER in the aggregate not to exceed the cost of an A.L.T.A. Homeowner's Policy (or the equivalent thereof) based on the amount of the contract purchase price shall be paid to the BUYER without interest thereon.  Upon receipt of such payment, this Agreement shall terminate and the parties hereto shall be released and discharged from all further claims and obligations hereunder.  SELLER shall be entitled to require BUYER to provide reasonable proof of payment of said expenses.

    (b)  The title herein required to be furnished by the SELLER shall be marketable, subject only to the items set forth in Schedule A and Paragraph 10(e) hereof, and the marketability thereof shall be determined in accordance with the Connecticut General Statutes and the Connecticut Standards of Title of the Connecticut Bar Association from time to time in effect. Any and all defects, in or encumbrances against, the title which are not deemed to impair marketability under the Connecticut General Statutes and the Connecticut Standards of Title of the Connecticut Bar Association shall not constitute valid objections on the part of the BUYER, provided the SELLER furnishes any affidavits or other instruments which may be required by the applicable Statutes or Connecticut Standards of Title. The title must be insured at standard premiums by Buyer's title insurance company.

(c)  The SELLER represents that **TO SELLER'S ACTUAL KNOWLEDGE, WITH NO DUTY OF INQUIRY,** the Premises and the present use thereof are not in violation of any governmental rules, codes, permits, regulations or limitations, unless same have become legally nonconforming, and there are no violations of any enforceable restrictive covenant, agreement or condition subject to which title to the Premises is to be conveyed in accordance with the terms hereof.  Between the date of this Agreement and the Closing Date as set forth in Paragraph 9, the SELLER will not do anything or allow anything to be done on or about the Premises which will result in any such violation.  The SELLER represents that SELLER has not received any notice of zoning or building violations and that there has been no attempt to enforce same against the SELLER during the time in which the SELLER has owned the Premises.  SELLER represents that SELLER has no knowledge of any special assessments levied or to be levied against the Premises which are not yet a lien on the Premises and has no knowledge of any existing improvements or work done on the Premises which may result in special taxes or assessments to be paid thereon.

(d)  Notwithstanding anything to the contrary contained in this Agreement , in the event the SELLER after due diligence cannot obtain a release for any existing mortgage on the Premises at the time of the closing of title from the holder of said mortgage, or any assignee thereof, either because said holder will not release the mortgage without first receiving payment or because the holder has delayed in sending the attorney for the SELLER the release of mortgage, then BUYER and SELLER agree to close title notwithstanding the absence of the release of mortgage, provided the attorney for the SELLER furnishes the attorney for the BUYER, at the closing, with (a) a written payoff statement and a copy of the payoff check or wire form evidencing that payment of the unreleased mortgage is to be made in full at the time of the closing and (b) a fully-executed  undertaking and indemnity to make said payment in the form annexed hereto, and further provided that a title insurance company reasonably satisfactory to the BUYER will issue a fee policy at no additional premium which takes no exception for said mortgage or mortgages or which provides affirmative coverage against loss or damage by reason of said unreleased mortgage or mortgages.

SELLER shall exercise due diligence to obtain any such release or releases and will upon receipt thereof immediately record the same and forward a copy or copies thereof to BUYER's attorney with recording information.  If SELLER has not obtained such release within sixty (60) calendar days after closing, Seller- shall give to BUYER's attorney an affidavit provided for in Connecticut General Statutes Section 49-8(a), as amended, together with the necessary recording fee.  This provision shall survive the closing.

(e)  The Premises will be conveyed to and accepted by the BUYER subject to:

(i)  Any and all zoning and/or building restrictions, limitations, regulations, ordinances, and/or laws; any and all building lines; and all other restrictions, limitations, regulations, ordinances and/or laws imposed by any governmental authority and any and all other provisions of any governmental restrictions, limitations, regulations, ordinances and/or laws, provided the Premises are not in violation of same at the time of closing.

FCBA Residential Real Estate Contract – 07/14/2015       Page 7

(ii)  Real Property Taxes on the Current Grand List and any and all existing tax payments, municipal liens and assessments, coming due on or after the Closing Date; the BUYER shall by acceptance of the deed assume and agree to pay, any and all such tax payments, liens and assessments which may on or after the date hereof be assessed, levied against or become a lien on the Premises,.

(iii)  Any state of facts which a survey and/or physical inspection of the Premises might reveal, provided same do not render title unmarketable as determined under Paragraph 10(b) hereof (such exception is for purposes of this Agreement only and shall not be included in the deed, unless it was in the deed which SELLER received upon purchasing the property).

(iv)  Common law, riparian or littoral rights of others and/or other rights, if any, in and to any natural watercourse or body of water flowing through or adjoining the Premises, and all statutory and other rights of others in and to any such watercourse or body of water.

(v)  Unless otherwise specifically agreed between the parties in writing, any municipal assessment other than taxes (such as for sewers and the like) shall be paid on a current basis by the SELLER and the balance assumed by the BUYER at closing.

(vi)  Such encumbrances as shown on Schedule A, if any.

**(vii) The entry of a Bankruptcy Court Order approving this Agreement and the conveyance by SELLER to BUYER by the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court")in the pending chapter 11 proceedings of Ho Wan Kwok, case no 22-50073.**

11.  **LIEN**.  ~~All sums paid on account of this Agreement and the reasonable expenses as set forth in Paragraph 10, Paragraph 14 and Paragraph 20 hereof are hereby made liens on the Premises. The parties shall execute a Notice of Contract, if requested by one of the parties to this Agreement, pursuant to CGS 49-92a.~~ **BUYER AGREES BUYER SHALL NOT LIEN THE PREMISES OR RECORD A NOTICE OF CONTRACT**.

12.  **BROKER(S)**.  The parties hereto agree **COMPASS INC.** ~~**and SOTHEBY'S INTERNATIONAL REALTY**~~**and BROWN HARRIS** are the broker(s) who negotiated the sale of the Premises, and the **SUBJECT TO THE OCCURRENCE OF THE CLOSING**, SELLER agrees to pay ~~the~~ **a** commission **OF 2.25% OF THE PURCHASE PRICE TO EACH BROKER** for such services ~~pursuant to separate agreement~~.  This Agreement is consummated by the SELLER in reliance on the representation of the BUYER that no other broker or agent brought the Premises to the BUYER's attention or was, in any way, a procuring cause of this sale and purchase.  The SELLER represents to the BUYER that no other broker or agent has any exclusive sale or exclusive agency listing on the Premises. The parties hereto (jointly and severally, if more than one) hereby agree to indemnify and hold each other harmless against any liability by reason of the claim of any other broker or agent for a commission on account of this sale, provided that it is adjudged by ~~a court of competent jurisdiction~~ **THE BANKRUPTCY COURT** that a commission is due by reason of such other

broker or agent being the procuring cause of this sale on behalf of the BUYER, said indemnity to include all costs of defending any such claim, including reasonable attorney's fees. In the event of any such claim, the party having notice of such claim shall promptly notify the party without notice of same who shall have the right, but not the obligation, to assume the defense of such claim. The provisions of this paragraph shall survive the closing.

13. **APPORTIONMENT**. ~~Unless otherwise agreed to in a Consumer Finance Protection Bureau ("CFPB") addendum, real estate taxes, fire district~~**R**eal estate taxes, sewer taxes, sewer assessments and sewer use charges or other municipal assessments, water charges, ~~rents, service contracts,~~ dues and ordinary assessments of private associations, and common charges, if any, together with interest thereon, if any, shall be apportioned over the fiscal period for which levied. BUYER shall reimburse SELLER at closing for any fuel remaining on the Premises at then market rates. All adjustments shall be apportioned based upon a 365 day year and the actual number of days in the month in which the closing occurs. Condominium special assessments due and payable prior to closing shall be SELLER's responsibility. Any errors or omissions in computing apportionment or other adjustments at closing shall be corrected within a reasonable time following the closing, not to exceed six (6) months. ~~Apportionment agreed to as a result of CFPB disclosures shall not constitute an "omission" or "error" for the purpose of this Paragraph 13.~~ The provisions of this Paragraph shall survive the closing.

14. **RISK OF LOSS**. The risk of loss or damage by fire or other casualty to the buildings on the Premises until the time of the delivery of the deed is assumed by the SELLER. ~~Throughout the period between the date of this Agreement and the delivery of the deed, SELLER shall continue to carry his existing fire and extended coverage insurance on the buildings on the Premises.~~ In the event that such loss or damage does occur prior to the delivery of the deed, the SELLER shall be allowed a reasonable time thereafter, not to exceed thirty (30) calendar days from such loss or damage, within which to repair or replace such loss or damage to BUYER's reasonable satisfaction. In the event the SELLER does not repair or replace such loss or damage to BUYER's reasonable satisfaction within said time, the BUYER shall have the option:

       (a) of terminating this Agreement, in which event all sums paid on account hereof, together with any nonrefundable expenses actually incurred by the BUYER in the aggregate not to exceed the cost of an A.L.T.A. Homeowner's Policy (or the equivalent thereof) based on the amount of the purchase price shall be paid to the BUYER without interest thereon. Upon receipt of such payment, this Agreement shall terminate and the parties hereto shall be released and discharged from all further claims and obligations hereunder. SELLER shall be entitled to require BUYER to provide reasonable proof of payment of said expenses; or

       (b) of accepting a deed conveying the Premises in accordance with all the other provisions of this Agreement upon payment of the aforesaid purchase price and of receiving an assignment of all, **if any,** insurance moneys recovered or to be recovered on account of such loss or damage, to the extent they are attributable to loss or damage to any property included in this sale together with the amount of the deductible withheld from payment, less the amount of any moneys actually expended by the SELLER on any repairs to said property.

---

The SELLER shall not be responsible for loss or damage to trees or other plantings due to natural causes.

15.  **AFFIDAVITS/1099 REPORTING:**

  A.  The SELLER agrees to execute, at the time of closing of title;

        (1)  an affidavit, (i) verifying the non-existence of mechanics' and materialmen's lien rights, (ii) verifying the non-existence of any tenants' rights, other than as set forth herein, (iii) verifying the non-existence of any security interests in personal property and fixtures being sold with the Premises, and (iv) updating to the extent of SELLER's knowledge, any available survey, together with any other affidavit reasonably requested by the BUYER's lender or title company as to facts within SELLER's knowledge; and, if true,

        (2) affirming that SELLER is not a "foreign person" pursuant to Internal Revenue Code §1445 and, if SELLER is unable to provide an affidavit affirming same, the parties agree to comply with all applicable laws including all relevant provisions under Internal Revenue Code §1445, et. seq., as amended.

B.    Unless otherwise provided, the BUYER agrees to execute and file a Form 1099 Report in connection with the Purchase and Sale of Real Estate as may be applicable to the transaction contemplated herein, and the SELLER must provide information relevant thereto.

16. **STATUTORY NOTICES/WAIVER**:

The SELLER gives notice to the BUYER as follows:

  **A.**  The Commissioner of Environmental Protection must provide the Town Clerk of the town in which the Premises are located with a list of all hazardous waste facilities located within such town and a notice of the list shall be maintained by the town clerk of such town and the town clerk shall post a notice of the list in the area where the land records are kept.  Pursuant to Conn. Gen. Stat. §20-327f, the SELLER hereby provides notice to the BUYER of the availability of this list.

  **B.**  The SELLER further provides notice to the BUYER that a list of any local properties upon which hunting or shooting sports regularly take place may be available at the Town Clerk of the municipality where the Premises are located, and the SELLER has no knowledge of any error, omission, or inaccuracy in such list.

  **C.**  LEAD-BASED PAINT.  By signing this Agreement, BUYER acknowledges that the lead paint contingency granted pursuant to §42 USC 4852d as set forth in the Lead Paint Disclosure report attached to this Agreement has been waived or has been satisfied, and that the BUYER has no further testing period for lead paint.

17.    **SMOKE DETECTOR/CARBON MONOXIDE AFFIDAVIT**.  **SMOKE DETECTOR/CARBON MONOXIDE AFFIDAVIT**. ~~At closing of title, SELLER shall leave the existing smoke alarms and carbon monoxide detectors in place.  Having no expertise with respect to the operation or placement of smoke alarms and carbon monoxide detectors and having made no inspection of same, SELLER represents that SELLER is not aware of any defects with respect to same.  Notwithstanding the foregoing, SELLER will either provide at closing the affidavit required by Conn. Gen. Stat. § 29-453, and as same may be amended, or, if no affidavit is provided, SELLER shall give BUYER a credit in the amount of $250.00~~ . **BUYER AND SELLER AGREE THAT SELLER IS EXEMPT FROM THE REQUIREMENTS OF CONN. GEN. STAT. SEC. 29-453.**

18.  **MAINTENANCE**.  The house, grounds and facilities shall be maintained by the SELLER between the date of BUYER's signing hereof and the closing of title, including the mowing of lawns, the raking of fallen leaves, the removal of fallen trees and large branches (except in uncultivated areas), and the removal of snow and ice from walks and driveways.  In the event there is a pool that has been opened prior to the closing, SELLER shall continue to perform normal maintenance of same.  **SELLER ~~WILL CLOSE~~AGREES TO LEAVE THE POOL OPENED.**

19.  **DELIVERY OF PREMISES**.  The SELLER agrees to deliver, simultaneously with the closing of title, exclusive possession of the Premises ~~(except as may be otherwise provided herein),~~, broom-clean, free of all debris, litter and furnishings and shall deliver all keys, garage door openers (if any), and alarm codes (if applicable) in SELLER's possession to the BUYER. BUYER shall have the right to make a final inspection of the Premises prior to the closing of title.

20.  **LIABILITY FOR DELAYED CLOSING**.  **EXCEPT AS PROVIDED HEREIN,** In the event of a delay in closing as set forth herein, other than as provided for under the provisions of this Agreement, through no fault of the SELLER, beyond five (5) business days, then the BUYER will reimburse the SELLER from the sixth (6th) business day to the actual date of closing for the SELLER's carrying costs of said property, including taxes, mortgage interest, utilities and per diem interest on SELLER's equity in the Premises, which amount shall be calculated at the rate of 1/30th of 1% of the purchase price for each day of delay from the sixth (6th) business day up to the actual date of closing. ~~Further, in the event of a delay in closing by more than five (5) business days, through no fault of the BUYER, SELLER shall reimburse BUYER for carrying costs for temporary housing, temporary storage of personal property, living expenses and other miscellaneous expenses at the same per diem rate of 1/30th of 1% of the purchase price for each day of delay from the sixth (6th) business day up to the actual date of closing. For example, the per diem cost of a $450,000 transaction would be $150 per day.~~

~~Notwithstanding anything else in this Agreement, provided BUYER's mortgage commitment and rate lock do not expire before five (5) business days after the Closing Date, any right of the SELLER to delay closing under this Agreement (including the cure provisions in Paragraphs 10 and 14) shall not extend beyond the expiration date of BUYER's mortgage commitment or rate lock, or such extended date which is available at no cost to BUYER.~~

If the BUYER terminates this Agreement due to SELLER's refusal to close within the timeframe provided above, then BUYER shall receive all sums paid on account hereof, together with any nonrefundable expenses actually incurred by the BUYER in the aggregate not to exceed the cost of an A.L.T.A. Homeowner's Policy (or the equivalent thereof) based on the amount of the purchase price, which shall be paid to the BUYER without interest thereon.

21. **DEFAULT**.  If  (a) BUYER is in material default hereunder, or, (b) on or before the Closing Date as set forth herein, BUYER indicates that BUYER is unable or unwilling to perform, and provided SELLER stands ready to perform SELLER's obligations, SELLER's sole and exclusive remedy shall be the right to terminate this Agreement by written Notice pursuant to Paragraph 32 to BUYER or BUYER's attorney and the Escrow Agent and SELLER shall retain the Deposit **AND BE ENTITLED TO RETAIN OR COLLECT ANY SUMS PAID OR DUE UNDER PARAGRAPH 20. TO THE DATE OF SUCH WRITTEN NOTICE OF TERMINATION** as reasonable liquidated damages for BUYER's inability or unwillingness to perform.  In the event  such written Notice of termination of this Agreement is given by SELLER, the Premises shall be free of any claims or interest of the BUYER therein by virtue of this Agreement, provided neither party objects to same within 5 business days of receipt of Notice of termination.

It is the intention of the parties hereto freely to make advance provision on the date of this Agreement for such event in order (a) to avoid controversy, delay and expense, and (b) to specify now a reasonable amount agreeable to both for compensation to the SELLER for losses which may not be readily ascertainable or quantifiable, such as any of the following which might be necessary to place SELLER in the position SELLER would have been in had BUYER made timely performance:  costs of carrying, maintaining, insuring and protecting the property; loss of interest income on the proceeds; loss of optimum market time, value and conditions; the uncertainty, delay, expense and inconvenience of finding a substitute BUYER; additional commissions, fees, taxes and borrowing expenses to meet obligations entered into in anticipation of performance.

In the event closing has not taken place within thirty (30)~~ NINETY (90)~~ calendar days following the Closing Date as it may be extended pursuant to the provisions hereof, through no fault of the non-delaying party, the delaying party shall be deemed in default.  **EXCEPT AS OTHERWISE SET FORTH HEREIN,** if SELLER is in material default hereunder, BUYER shall have such remedies as BUYER shall be entitled to at law or in equity, including, but not limited to, specific performance, **PROVIDED THAT SUCH REMEDIES MUST BE PURSUED IN THE BANKRUPTCY COURT**.

22.  **PROPERTY CONDITION DISCLOSURE FORM**.  ~~Attached hereto as a Rider is the Property Condition Disclosure Form required by Conn. Gen. Stat. §20-327b.  In the event the SELLER has not furnished BUYER with the Property Disclosure Form, if required by §20-327b of the Connecticut General Statutes, with or prior to the BUYER's execution of this Agreement, the SELLER shall give and the BUYER shall receive at closing a credit against the purchase price in the amount of $500.00.~~ **BUYER AND SELLER AGREE THAT SELLER IS EXEMPT FROM THE REQUIREMENTS OF CONN. GEN. STAT. SEC. 20-327b.**

23.  **DELIVERY OF DOCUMENTS**.  The SELLER shall deliver to the BUYER prior to closing any documents, informational materials, building plans and any surveys in the SELLER's possession pertaining to the Premises, the appliances and the systems on or within the Premises.

24.  **RIGHT TO WITHDRAW**.  This Agreement shall not be considered or construed as an offer by the SELLER.  The SELLER reserves the right to withdraw this proposed Agreement at any time prior to the signature by both parties hereto and receipt by the SELLER's attorney as the escrow agent of the full payment of the Deposit set forth herein, and delivery of a fully executed Agreement to the BUYER's Attorney at the address provided in Paragraph 32.

25.  **ASSIGNMENT**.  This Agreement and BUYER'S rights hereunder may not be assigned by BUYER without the written consent of SELLER, and any purported assignment without such written consent shall be void and of no effect.  Consent of the SELLER to assignment shall not unreasonably be withheld, conditioned or delayed.  Upon any effective assignment of BUYER's rights hereunder, BUYER and BUYER's assignee shall be jointly and severally liable hereunder, unless otherwise agreed by SELLER.  <ins>NOTWITHSTANDING THE FOREGOING, BUYER MAY ASSIGN THIS AGREEMENT TO A LIMITED LIABILITY COMPANY OF WHICH BUYER OR BUYER'S SPOUSE ARE A MEMBER. WITHOUT REQUIRING THE CONSENT OF THE SELLER. IN THE EVENT OF AN ASSIGNMENT, THE BUYER SHALL REMAIN PRIMARILY LIABLE FOR ALL OBLIGATIONS OF BUYER HEREIN.</ins>

26.  **ACCEPTANCE OF DEED**.  The delivery and acceptance of the deed herein described shall be deemed to constitute full compliance with all the terms, conditions, covenants and representations contained herein, or made in connection with this transaction, except as may herein be expressly provided and except for the warranties of title.

27.  **REPRESENTATIONS**. Unless otherwise specified herein, none of the representations made in this Agreement including all attachments shall survive delivery of the deed, and all representations by SELLER are made to the best of SELLER's knowledge and belief and without duty of inquiry.  SELLER shall have an affirmative obligation to notify BUYER if any of the representations in this Agreement or in all Attachments are no longer true.  Except in the event of an intentional misrepresentation, if BUYER discovers prior to the closing of title any material representation contained in this Agreement including all Attachments to be untrue, the remedy of the parties shall be those available to them in the event of a valid defect in or objection to title, as set forth in Paragraph 10, above.  In the event of an intentional misrepresentation, BUYER shall have available all rights in either law or equity.

28.   **SELLER'S REPRESENTATIONS REGARDING BANKRUPTCY**.  ~~SELLER represents that they are not presently, nor have they been, debtors in a bankruptcy proceeding in which the Bankruptcy Court presently has continuing jurisdiction over their assets.  The SELLER further represents that the Premises is not in the hands of a receiver or other liquidating agent. These representations shall survive the closing of title.~~ **BUYER ACKNOWLEDGES THAT SELLER IS THE CHAPTER 11 TRUSTEE OF THE HO WAN KWOK BANKRUPTCY ESTATE AND THE BANKRUPTCY COURT HAS JURISDICTION OVER THIS AGREEMENT AS FURTHER SET FORTH**

**HEREIN**.

29.  **EFFECT**.  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, and permitted assigns of the respective parties.

30.  **COSTS OF ENFORCEMENT**.  Except as otherwise expressly provided herein, in the event of any litigation brought to enforce any material provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and court costs, including interest as may be provided by  law,  from the other party.

31.  **GENDER.**  In all references herein to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within Agreement may require.

32.  **COUNTERPARTS / FACSIMILE / ELECTRONIC MAIL/NOTICES.**  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, and all of which when taken together shall constitute one and the same Agreement.  The parties hereto agree that this Agreement may be transmitted between them or their respective attorneys by facsimile or electronic mail and, upon evidence of receipt of same, shall constitute delivery of this Agreement.  The parties intend that faxed or electronic signatures constitute original signatures and that an Agreement containing the signatures (original, facsimile or electronic) of all the parties is binding on the parties once sent via facsimile or via electronic mail or delivered to the other party's counsel.

All notices under this Agreement shall be in writing and shall be delivered or sent by email, facsimile transmission, certified mail, or by overnight courier, addressed to the attorney for the respective party.  Notice signed by the respective attorneys shall be deemed sufficient within the meaning of this paragraph without the signature of the parties themselves. Electronic signatures of the parties and of the attorneys for the parties on this Agreement, notices, or amendments to this Agreement shall be deemed to have the full force and effect of an original signature.

Each party authorizes their attorney as attorney-in-fact to execute all documents as may be required to effectuate the terms and conditions of this Purchase and Sale Agreement, once executed by the parties, including documents that may be reasonably requested and related to BUYER's lender's requirements.

Notices to the SELLER shall be sent to:
William Sherman, Esq.
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Phone  203-781-2868
Fax     203-821-2008

Notices to the BUYER shall be sent to:
 Robert B. Potash,E. Murray, Jr., Esq.

~~31 Brookside Drive~~
~~Greenwich~~ Diserio Martin
1010 Washington Boulevard
Stamford, CT ~~0683006091~~
Phone: (203) ~~661-7580~~569-1122
Fax: (203) ~~661-7623~~348-2321
Email: ~~RBP@Potashlaw~~ rmurray@dmoc.com

33.  **ENTIRE AGREEMENT.**  All prior understandings, agreements, representations and warranties, oral and written, between SELLER and BUYER are merged in this Agreement and specified riders or attachments hereto.  This Agreement ~~and Addendum to Agreement of Sale~~ completely expresses the agreement of the parties, and has been entered into by the parties after discussion with their respective attorneys and after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this Agreement ~~and Addendum to Agreement of Sale.~~.  Neither this Agreement nor any provision hereof may be waived, changed or canceled except by a written instrument signed by both parties.

34.  **CAPTIONS**.  The captions preceding the paragraphs in this Agreement are for ease of reference only and shall be deemed to have no effect whatsoever on the meaning or construction of the provisions of this Agreement.

35.  **SEVERABILITY**.  The invalidity or unenforceability of any one or more provisions of this Agreement shall not render any other provision invalid or unenforceable.  In lieu of any invalid or unenforceable provision, there shall be added automatically a valid and enforceable provision as similar in terms to such invalid or unenforceable provision as may be possible.

36.  **ALTERATION OF STANDARD FORM**.  The BUYER and SELLER acknowledge that this is the current Residential Real Estate Sales Agreement as shown on the Fairfield County Bar Association website (the "Standard Form") and agree all deviations and changes made by either the SELLER's or BUYER's attorney must be clearly marked in bold, underline and/or large font typeface, handwritten or otherwise highlighted to indicate the change(s).  Should a change be made without clear marking or delineation, such provision shall be deemed not to be a part of this Agreement for any purpose, and shall be replaced with the provision of the Standard Form that has been changed or eliminated.  Any eliminated sections of the Standard Form also shall be deemed to be a part of this Agreement unless a reference to its deletion is clearly marked in accordance with this paragraph or described in a separate cover letter.  Addenda, exhibits, attachments and riders to this Agreement are not subject to the requirements of this paragraph.

37.     **BUYER agrees that Luc A. Despins is party to this Agreement solely in his capacity as Chapter 11 Trustee for the Bankruptcy Estate of Ho Wan Kwok and not his personal capacity.  Accordingly, no claim whatsoever may be asserted by BUYER against Luc A. Despins in his personal capacity.**

38.     **BUYER represents and warrants that BUYER is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok**

**39.**    **Notwithstanding anything herein to the contrary:**

**A. BUYER and SELLER agree that this Agreement and all terms hereof are subject to the approval of the Bankruptcy Court.**

~~**B.**~~

**B.**    **BUYER and SELLER agree that the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of this Agreement, including delivery of the deed by the SELLER, and the parties irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to this Agreement will be decided in the Bankruptcy Court, and, further, not to bring any claim relating to this Agreement in any other court.  For the avoidance of doubt, SELLER shall not be liable to BUYER for a delayed closing or be in default hereunder if the Bankruptcy Court shall not approve of this Agreement. In the event that this Agreement is not approved by the Bankruptcy Court, the BUYER shall be returned the Deposit(s) paid hereunder, then this Agreement shall terminate and the parties hereto shall be released and discharged from all further claims and obligations hereunder.**

**C. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Premises to BUYER shall provide that the Premises are being sold free and clear of any encumbrances except as set forth herein.**

**D.**    **SELLER shall provide BUYER at closing with (1) a certified copy of the Bankruptcy Court Order authorizing and approving the sale contemplated herein and (2) an original release (in recordable form) of the Attachment in favor of Luc Despins, as Chapter 11 Trustee against Greenwich Land LLC in the amount of $8,314,200.00 dated March 30, 2023 and recorded in Volume 8027 at Page 202 of the Greenwich Land Records.**

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the parties to these presents have hereunto set their hands and seals, as of the day first above written.

_____
Luc A. Despins, as Chapter 11 Trustee of the
Estate of Ho Wan Kwok, SELLER


▆▆▆▆▆, BUYER          ▆▆▆▆▆▆▆▆▆▆▆▆▆▆


Title to said Premises is to be taken in the name or names of:

**as** _____


**ACCEPTANCE OF ESCROW**          **DATED:_____**

**I HEREBY ACCEPT RECEIPT OF THE DEPOSIT AS SPECIFIED IN PARAGRAPH 2, SUBJECT TO COLLECTION, AND THE UNDERSIGNED AGREES TO ACT IN ACCORDANCE WITH THE PROVISIONS OF PARAGRAPH 3 OF THIS AGREEMENT.**

_____
**THE ESCROW AGENT:  NEUBERT PEPE & MONTEITH, P.C.**

Attachments:  (For Reference Only)
Legal Description ("Schedule A")
Residential Condition Property Disclosure Report

**This is the July 14, 2015 version of the Fairfield County Bar Association Residential Real Estate Sales Agreement approved and adopted by the Fairfield County Bar Association.**

## SCHEDULE A

ALL THAT CERTAIN piece, parcel or tract of land, together with the buildings thereon, situated partly in the Town of Greenwich and partly in the City of Stamford, both of the County of Fairfield and State of Connecticut, designated as Lot 26 on a certain map entitled, "Property of Northwich Development Company Greenwich and Stamford, Conn.", certified Substantially Correct by Allan S. Devaul for S.E. Minor & Co., Inc., Civil Engineers, Greenwich, Conn. Sept.26, 1962 and Revised Oct. 8, 1962, Dec. 11, 1962, on file in the Office of the Greenwich Town Clerk as the Map No. 4359, and shown and designated as Lot 26 on a certain map entitled, "Property of Northwich Development Company Greenwich and Stamford, Conn.", Certified Substantially Correct by Allan S. Devaul for S.E. Minor & Co., Inc., Civil Engineers, Greenwich, Conn. Apr. 3, 1963, on file in the Office of the Greenwich Town Clerk as Map No. 7604, reference thereto being had. Said premises are bounded:

| | |
|---|---|
| NORTHERLY: | 623.14 feet by land now or formerly or Parkchester Beach Club Corporation; |
| EASTERLY: | 272.78 feet by Taconic Road, so-called; |
| SOUTHERLY: | 620 feet by land now or formerly of Elizabeth Sprague Stout, being Lot 25, as shown on said maps; and |
| WESTERLY: | 330.53 feet by land now or formerly of Stanwich Club, Inc. |

Said premises are subject to:

1. Building lines, if established, building and zoning ordinances, and any and all municipal and state and federal regulations including inland wetlands regulations and provisions of any public or private law affecting said premises.

2. Real estate taxes to the Town of Greenwich on the Grand List of October 1, 2023, and real estate taxes due thereafter.

3. Real estate taxes to the City of Stamford on the Grand List of October 1, 2023, and real estate taxes due thereafter.

4. Declaration of Restrictions dated December 12, 1962 and recorded in Volume 679 at Page 513, as assigned by a deed dated December 8, 1963 and recorded in Volume 697 at Page 158, both of the Greenwich Land Records

5. Declaration of Inland Wetlands and Watercourses recorded in Volume 4218 at Page 181 of the Greenwich Land Records.

6. Zoning Appeals Board Certificate granted by the City of Stamford, Zoning Appeals Board dated April 28, 1963 and recorded in Volume 980 at Page 51 of the Stamford Land Records.

7.  Zoning Appeals Board Certificate granted by the City of Stamford, Zoning Appeals Board dated June 5, 1963 and recorded in Volume 980 at Page 494 of the Stamford Land Records.

8.  Permit granted by the City of Stamford, Environmental Protection Board recorded in Volume 6714 at Page 21, as amended by a Notice dated December 6, 2005 and recorded in Volume 8355 at Page 219, both of the Stamford Land Records.

9.  Landscape Maintenance Agreement dated May 15, 2003 and recorded in Volume 6897 at Page 32 of the Stamford Land Records

**EXHIBIT 2-A**

**REVISED PROPOSED SALE ORDER**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                        :

In re:                       :     Chapter 11
                                      :

HO WAN KWOK, *et al.*,[1]     :     Case No. 22-50073 (JAM)
                                      :

          Debtors.        :     (Jointly Administered)
                                      :
-------------------------------------------------------x

**REVISED [PROPOSED] ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363, BANKRUPTCY RULES 2002, 6004(c), AND 6004(f), AND LOCAL RULES 6004-1 AND 6004-2, (I) AUTHORIZING AND APPROVING SALE OF THE GREENWICH PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

Upon the motion [ECF No. 3592] (the "Motion")[2] of Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), pursuant to pursuant to sections 105, 363(b), and 363(f) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004(c) 6004(f), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 6004-2 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut (the "Local Rules"), seeking entry of an order (i) authorizing and approving the Trustee's sale of the Greenwich Property free and clear of all liens, claims, interests and encumbrances pursuant to

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but not defined herein shall having the meanings set forth in the Motion or the PSA, as applicable; provided, however, no capitalized terms used herein shall in any way be modified, amended, or supplemented in the PSA after this Order becomes final.

that certain purchase and sale agreement, dated September 26, 2024, by and among the buyer as set forth in the PSA (the "Original Buyer") and the Trustee (the "Original PSA"), (ii) authorizing and approving the PSA, and (iii) granting related relief, all as further detailed in the Motion; and a hearing on the Motion having been held on October 15, 2024 (the "Hearing"); and the Trustee having notified the Court that he received a competing bid by a new buyer, which the Trustee believes represents a higher and better offer to purchase the Greenwich Property, as set forth in the Residential Real Estate Sales Agreement dated October 11, 2024 (the "New PSA") between the Trustee and the alternative buyer (as described in the New PSA, the "New Buyer"); and the Trustee thus having requested that the Court approve the Motion and authorize a sale (the "Sale") to the New Buyer upon the terms set forth herein and in the New PSA; and this Court having reviewed and considered the Motion, and all objections thereto, and the arguments made by counsel and any evidence adduced at the Hearing; and it appearing the terms of the New PSA are in the best interests of the Debtor, the estate, creditors and other parties in interest; and after due deliberation thereon, and good cause appearing therefor:

**THE COURT HEREBY FINDS THAT**:[3]

### Jurisdiction and Final Order

A.      This Court has jurisdiction to hear and determine the approval of the Sale and the New PSA under 28 U.S.C. §§ 1334 and 157, and the *Standing Order of Reference* from the United States District Court for the District of Connecticut.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason to delay the implementation of this Order, and expressly directs entry of judgment as set forth herein.  The New Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Sale contemplated by the New PSA at any time after the entry of this Order and shall not be subject to the stay provided by Bankruptcy Rules 6004(h).

### Notice of Sale

C.      Actual written notice of the Motion, the Hearing, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested persons or entities.

D.      As evidenced by the certificates of service previously filed with this Court: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Hearing, the entry of this Order, the Sale, and the relevant objection deadlines have been provided to all Notice Parties; (ii) such notice was, and is, good, sufficient and appropriate under the circumstances of this chapter 11 case, provided a fair and reasonable opportunity for parties-in-interest to object, and to be heard, with respect thereto, and was provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the applicable Local Rules, and the orders of this Court; and (iii) no other or further notice of such matters is necessary or shall be required.

### Business Judgment

E.      The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and such action

is an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtor, his estate, and their creditors.  Such business reasons include, but are not limited to, the facts that: (i) the Purchase Price and the other terms set forth in the New PSA constitute the highest or otherwise highest and best offer received for the Greenwich Property; (ii) the Sale on the terms set forth in the New PSA presents the best opportunity to maximize the value of the Greenwich Property; and (iii) unless the Sale is concluded expeditiously as provided for in this Order and pursuant to the New PSA, potential creditor recoveries may be diminished.

## Marketing Process

F.      As demonstrated by the Motion, the Trustee's Notice of the New Buyer and the New PSA, the any testimony and any other evidence proffered or adduced at the Hearing, and the representations of the Trustee and his counsel made on the record at the Hearing: (i) the Trustee and his broker, Compass, Inc. ("Compass"), engaged in an extensive marketing process; (ii) the sale process was non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any individual or entity to make an offer to purchase the Greenwich Property; and (iii) the process conducted by the Trustee obtained the highest and best value for the Greenwich Property for the Trustee and the Debtor's estate.

## Fair Consideration; Highest or Best Value

G.      The consideration to be provided by the New Buyer under the New PSA is fair and reasonable consideration for the Greenwich Property and constitutes (i) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.  Such consideration

4

constitutes the highest and best bid for the Greenwich Property.  No other person or entity or group of persons or entities has offered to purchase the Greenwich Property for an amount that would give equal or greater value to the Debtor's estate than the value provided by the New Buyer pursuant to the New PSA.

## Good Faith

H.     The New PSA and the Sale were negotiated, proposed, and entered into, and are being undertaken by the Trustee and the New Buyer in good faith, without collusion, and from arm's-length bargaining positions.  Likewise, the value that the Debtor's estate will receive on consummation of the Sale is the product of arm's-length negotiations between the Trustee, the New Buyer, and their respective representatives and advisors.

I.     The New Buyer is purchasing the Greenwich Property in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full rights, benefits, privileges, and protections of that provision and any other applicable or similar bankruptcy and non-bankruptcy law.

J.     Neither the New Buyer nor the Trustee have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the New PSA or to the consummation of the Sale.

K.     The New Buyer proceeded in good faith in all respects in connection with the Sale and this proceeding in that, among other things: (a) the New Buyer's offer was the result of an open marketing process; (b) all payments to be made by the New Buyer, and other agreements or arrangements entered into by the New Buyer in connection with the Sale set forth in the New PSA, have been disclosed; and (c) the New Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction.

L.      The New Buyer is not an insider or an affiliate (as that term is defined in sections 101(2) and 101(31) of the Bankruptcy Code) of the Debtor.

**Section 363(f) of the Bankruptcy Code Is Satisfied**

M.      The Trustee is authorized to sell the Greenwich Property free and clear of liens, claims, interests, and encumbrances against the Debtor or his estate, because one of more of the standards set forth in section 464(f)(1)-(5) of the Bankruptcy Code has been satisfied.

N.      Those holders of liens, claims, interests, or encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Sale or the Motion have either consented to or are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  In addition, one or more of the other subsections of section 363(f) of the Bankruptcy Code apply and, therefore, holders of liens, claims, interests, or encumbrances in the Greenwich Property are adequately protected by having their liens, claims, interests, or encumbrances in the Greenwich Property attach solely to the proceeds of the Sale in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to the Sale.

O.      The New Buyer would not have entered into the Sale and will not consummate the transactions contemplated thereby, thus adversely affecting the Debtor's estate and his creditors, (i) if the sale of the Greenwich Property was not free and clear of all liens, claims, interests, and encumbrances except as set forth in the New PSA or (ii) if the New Buyer would, or in the future could, be liable for any such liens, claims, interests, and encumbrances.  The total consideration to be provided under the New PSA reflects the New Buyer's reliance on this Order to provide him with title to and possession of the Greenwich Property free and clear of all liens, claims, interests, and encumbrances pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.

**Validity of Transfer of Title**

6

P.     By Quit Claim Deed dated and recorded on August 20, 2024 at Volume 8354, Page 223 of the Greenwich Land Records and Volume 13378, Page 327 of the Stamford Land Records, Greenwich Land, LLC, acting by the Trustee, transferred all its right, title and interest in and to the Greenwich Property to the Trustee (the "Quit Claim Transfer"), which Quit Claim Transfer was a legal, valid and effective transfer of title, duly authorized by prior orders of this Court.  The transfer of title in and to the Greenwich Property by the Trustee to the New Buyer will be a legal, valid, and effective transfer of title, and will vest the New Buyer with any legal, equitable and beneficial right, title, and interest in and to the Greenwich Property free and clear of all liens, claims, interests, and encumbrances, except as set forth in the New PSA.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.  Subsequent to the Closing, the Debtor's estate will be relieved of all liability or other obligation of any kind with respect to claims arising from or related to the New Buyer's post-Closing ownership of the Greenwich Property.

### Waiver of Bankruptcy Rules 6004(h)

Q.     The sale of the Greenwich Property must be approved and consummated promptly. The Trustee and the New Buyer intend to expeditiously close the Sale upon entry of this order. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the New PSA.  Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rule 6004(h) with regard to the transactions contemplated by this Order.

**THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES:**

1.      The Motion is GRANTED and approved in all respects, and any objections thereto that have not been otherwise withdrawn, waived, or settled are overruled.

2.      The New PSA is hereby approved as set forth herein.

3.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Sale of the Greenwich Property to the New Buyer pursuant to the New PSA free and clear of all liens, claims, encumbrances, and other interests is approved in all respects.

4.      Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code, the Trustee is authorized to transfer the Greenwich Property in accordance with the terms of the New PSA and this Order.  The transfer of title in and to the Greenwich Property by the Trustee to the New Buyer in accordance with the New PSA shall: (a) be valid, legal, binding, and effective; (b) vest the New Buyer with all right, title and interest in and to the Greenwich Property; and (c) be free and clear of all liens, claims, interests, and encumbrances against the Greenwich Property, in accordance with section 363(f) of the Bankruptcy Code.

5.      Pursuant to section 363 of the Bankruptcy Code, this Order shall and does, as of the Closing, divest the Debtor and his estate of all right, title, and interest in and to the Greenwich Property.

6.      The consideration provided by the New Buyer for the Greenwich Property under the New PSA is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided or rejected, or costs or damages imposed or awarded against the New Buyer, under section 363(n) or any other provision of the Bankruptcy Code.

7.     The Trustee is authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale concerning the transfer of the Greenwich Property to the New Buyer at a closing in accordance with the Motion, the New PSA and this Order, including, without limitation, payment of usual and customary closing costs (b) perform, consummate, implement, and close the transaction pursuant to the New PSA together with all additional instruments and documents that may be reasonably necessary or desirable to implement this Order, and the New PSA, and (c) perform the obligations contemplated by this Order, and the New PSA, including all actions reasonably requested by the New Buyer in regard thereto.

8.     Except as set forth on Schedule A to the New PSA (the "Permitted Encumbrances"), all liens, claims, interests, and/or encumbrances in, on, or against the Greenwich Property shall automatically attach solely to the proceeds of the Sale with the same validity, priority, force, and effect that they now have as against the Greenwich Property, subject to any claims and defenses the Trustee or the Debtor's estate may possess with respect thereto.  This Order shall be effective as a determination that, except for the Permitted Encumbrances, on and as of the Closing, all liens, claims, interests, and/or encumbrances of any kind or nature whatsoever in, on, or against the Greenwich Property have been unconditionally released, discharged, and terminated.  The provisions of this Order authorizing and approving the transfer of the Greenwich Property free and clear of liens, claims, encumbrances, and other interests shall be self-executing, and neither the Trustee nor the New Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order and the New PSA.

9.     Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect

or interfere, or that would be inconsistent (a) with the ability of the Trustee to sell and transfer the Greenwich Property to the New Buyer, (b) with the ability of the New Buyer to acquire, take possession of, use and operate the Greenwich Property in accordance with the terms of the New PSA and this Order, and (c) with the ability of the Trustee and the New Buyer to perform their respective obligations thereunder; provided, however, that the foregoing restriction shall not impair the right of any party in interest with the requisite standing to appeal this Order in accordance with applicable law or opposing any appeal of this Order.

10.     The Purchaser is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.  The Sale contemplated by the New PSA and this Order are undertaken by the New Buyer in good faith, as that term is used in section 363(b) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization is duly stayed pending such appeal prior to the Closing.  For the avoidance of doubt, the pendency of an appeal of this Order, absent a stay of this Order pending appeal, shall not constitute a basis not to consummate the Sale.

11.     The failure specifically to include any particular provisions of the New PSA in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the New PSA and each and every provision, term, and condition thereof be, and therefore is, authorized and approved in its entirety; provided, however that the New PSA may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, without further notice to or order of this Court, provided that any such modification, amendment, or supplementation does not have a material adverse effect on the Debtor's estate, unless approved by order of this Court.

12.     The provisions of this Order, the New PSA, and any actions taken pursuant hereto or thereto, shall survive entry of any order which may be entered confirming or consummating any chapter 11 plan, or which may be entered converting this chapter 11 case from chapter 11 to chapter 7 of the Bankruptcy Code or dismissing this chapter 11 case, and the terms and provisions of the New PSA, as well as the rights and interests granted pursuant to this Order, the New PSA, shall continue in this chapter 11 case or any superseding cases and shall be specifically performable and enforceable against and binding upon the Trustee, the Debtor, his estate, all creditors, all holders of claim(s) (whether known or unknown) against the Debtor, all holders of liens, claims, interests, and/or encumbrances (whether known or unknown) against, in, or on all or any portion of the Greenwich Property, the New Buyer and its respective successors and permitted assigns, and any other trustee or other fiduciary hereafter appointed or elected as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, including without limitation plan fiduciaries, plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in this chapter 11 case.

13.     This Order is and shall be binding upon and govern the acts of all persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Greenwich Property.  Each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the liens, claims, interests, and

encumbrances against the Greenwich Property or to otherwise consummate the Sale contemplated by this Order, and the New PSA.

14.     The terms and provisions of the New PSA and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Trustee, the Debtor's estate and its creditors, the New Buyer and its affiliates, successors, and assigns, and any affected third parties, including all persons asserting liens, claims, interests, or encumbrances in, on, or against the Greenwich Property, notwithstanding any subsequent appointment of any other trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtor, his estates, his creditors or any such trustee, examiner, or receiver.

15.     Upon the Closing, the Trustee is authorized to pay from the proceeds of the Sale, the broker's commission (as defined in the Retention Order) equal to 4.5% of the Purchase Price, *i.e.*, $326,250 to be equally divided between Compass and Brown Harris Stevens.

16.     The Sale of the Greenwich Property as authorized by this Order shall include, in addition to the real property, to the extent that the following are not leased and are located at the Greenwich Property, any: heating, cooling, electrical and plumbing systems and fixtures; electric light fixtures; installed wall-to-wall carpeting; security system; stove; storm windows and doors; screens and screen doors; window shades; venetian blinds; curtain rods; awnings; affixed satellite dish(es); weathervanes; mail box(es); swimming pool equipment; garage door openers with remotes; existing plants and shrubbery; outdoor furniture; gym equipment; home theater furniture and equipment; televisions and other audio/visual equipment; window treatments; drapes; and appliances as per the sale listing.

17.     For the avoidance of doubt, no estate causes of action are being sold as part of the Sale.

18.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) is hereby expressly waived and shall not apply.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing or risk its appeal will be foreclosed as moot.

19.     Nothing in this Order shall modify or waive any closing conditions or termination rights in the New PSA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

20.     As of the Closing, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the Sale, including, without limitation, the transfer of the Greenwich Property to the New Buyer and the occurrence of the Closing.

21.     Upon Closing, and in accordance with the provisions of Bankruptcy Rule 6004(f), the Trustee shall file with the Court, a Report of Sale, together with a copy of the HUD closing statement, within five (5) business days of the Closing.

22.     To the extent that there is a conflict between the provisions of this Order and the New PSA, this Order shall prevail.

23.     For the avoidance of doubt, (a) the Court is not approving the Original PSA; (b) the Trustee shall return the Original Buyer's deposit within two business days of the entry of this Order; and (c) because the "Closing," as that term is defined in the Original PSA with the Original

Buyer, has not occurred and will not occur, none of the sums described in paragraph 12 of the Original PSA shall be due and payable.

24.     [For the reasons stated at the Hearing, the Trustee is hereby authorized to reimburse the Original Buyer for up to $20,000 of reasonable, documented out-of-pocket expenses (such as inspection fees, appraisal fees, and/or counsel fees) incurred by Original Buyer in furtherance of the potential acquisition of the Greenwich Property.]

25.     This Court shall retain jurisdiction to, among other things, (a) interpret, enforce, and implement the terms and provisions of this Order and the New PSA (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith) and (b) adjudicate disputes related to this Order and the New PSA (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith).

**EXHIBIT 2-B**

**REVISED PROPOSED SALE ORDER**
**(REDLINE V. ORIGINAL PROPOSED SALE ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
: 
In re: : Chapter 11
: 
HO WAN KWOK, *et al.*,[1] : Case No. 22-50073 (JAM)
: 
Debtors. : (Jointly Administered)
: 
-------------------------------------------------------x

**REVISED [PROPOSED] ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363, BANKRUPTCY RULES 2002 AND, 6004(c), AND 6004(f), AND LOCAL RULES 6004-1 AND 6004-2, (I) AUTHORIZING AND APPROVING SALE OF THE GREENWICH PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

Upon the motion [ECF No. 3592] (the "Motion")[2] of Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), pursuant to pursuant to sections 105, 363(b), and 363(f) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004(c) 6004(f), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 6004-2 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut (the "Local Rules"), seeking entry of an order (i) authorizing and approving the Trustee's sale (the

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] Capitalized terms used but not defined herein shall having the meanings set forth in the Motion or the PSA, as applicable; provided, however, no capitalized terms used herein shall in any way be modified, amended, or supplemented in the PSA after this Order becomes final.

"Sale") of the Greenwich Property free and clear of all liens, claims, interests and encumbrances pursuant to that certain purchase and sale agreement, dated September 26, 2024, by and among the buyer as set forth in the PSA (the "Original Buyer") and the Trustee (the "Original PSA"), (ii) authorizing and approving the PSA, and (iii) granting related relief, all as further detailed in the Motion; and a hearing on the Motion having been held (the "Hearing") on October 15, 2024 (the "Hearing"); and the Trustee having notified the Court that he received a competing bid by a new buyer, which the Trustee believes represents a higher and better offer to purchase the Greenwich Property, as set forth in the Residential Real Estate Sales Agreement dated October 11, 2024 (the "New PSA") between the Trustee and the alternative buyer (as described in the New PSA, the "New Buyer"); and the Trustee thus having requested that the Court approve the Motion and authorize a sale (the "Sale") to the New Buyer upon the terms set forth herein and in the New PSA; and this Court having reviewed and considered the Motion, and all objections thereto, and the arguments made by counsel and any evidence adduced at the Hearing; and it appearing the terms of the New PSA are in the best interests of the Debtor, the estate, creditors and other parties in interest; and after due deliberation thereon, and good cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**[3]

<u>**Jurisdiction and Final Order**</u>

A.      This Court has jurisdiction to hear and determine the approval of the Sale and the New PSA under 28 U.S.C. §§ 1334 and 157, and the *Standing Order of Reference* from the United States District Court for the District of Connecticut.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**Formatted:** Underline

B.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason to delay the implementation of this Order, and expressly directs entry of judgment as set forth herein.  The New Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the ~~sale~~Sale contemplated by the New PSA at any time after the entry of this Order and shall not be subject to the stay provided by Bankruptcy Rules 6004(h).

<u>Notice of Sale</u>

C.     Actual written notice of the Motion, the Hearing, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested persons or entities.

D.     As evidenced by the certificates of service previously filed with this Court: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Hearing, the entry of this Order, the Sale, and the relevant objection deadlines have been provided to all Notice Parties; (ii) such notice was, and is, good, sufficient and appropriate under the circumstances of this chapter 11 case, provided a fair and reasonable opportunity for parties-in-interest to object, and to be heard, with respect thereto, and was provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the applicable Local Rules, and the orders of this Court; and (iii) no other or further notice of such matters is necessary or shall be required.

<u>Business Judgment</u>

E.     The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and such action

3

is an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtor, his estate, and their creditors.  Such business reasons include, but are not limited to, the facts that: (i) the Purchase Price and the other terms set forth in the New PSA constitute the highest or otherwise highest and best offer received for the Greenwich Property; (ii) the Sale on the terms set forth in the New PSA presents the best opportunity to maximize the value of the Greenwich Property; and (iii) unless the Sale is concluded expeditiously as provided for in this Order and pursuant to the New PSA, potential creditor recoveries may be diminished.

**Marketing Process**

F.      As demonstrated by the Motion, the Trustee's Notice of the New Buyer and the New PSA, the any testimony and any other evidence proffered or adduced at the Hearing, and the representations of the Trustee and his counsel made on the record at the Hearing: (i) the Trustee and his broker, Compass, Inc. ("Compass"), engaged in an extensive marketing process; (ii) the sale process was non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any individual or entity to make an offer to purchase the Greenwich Property; and (iii) the process conducted by the Trustee obtained the highest and best value for the Greenwich Property for the Trustee and the Debtor's estate.

**Fair Consideration; Highest or Best Value**

G.      The consideration to be provided by the New Buyer under the New PSA is fair and reasonable consideration for the Greenwich Property and constitutes (i) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.  Such consideration

4

constitutes the highest and best bid for the Greenwich Property.  No other person or entity or group of persons or entities has offered to purchase the Greenwich Property for an amount that would give equal or greater value to the Debtor's estate than the value provided by the New Buyer pursuant to the New PSA.

5

**Good Faith**

H.      The New PSA and the Sale were negotiated, proposed, and entered into, and are being undertaken by the Trustee and the New Buyer in good faith, without collusion, and from arm's-length bargaining positions.  Likewise, the value that the Debtor's estate will receive on consummation of the Sale is the product of arm's-length negotiations between the Trustee, the New Buyer, and their respective representatives and advisors.

I.      The New Buyer is purchasing the Greenwich Property in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full rights, benefits, privileges, and protections of that provision and any other applicable or similar bankruptcy and non-bankruptcy law.

J.      Neither the New Buyer nor the Trustee have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the New PSA or to the consummation of the Sale.

K.      The New Buyer proceeded in good faith in all respects in connection with the Sale and this proceeding in that, among other things: (a) the New Buyer's offer was the result of an open marketing process; (b) all payments to be made by the New Buyer, and other agreements or arrangements entered into by the New Buyer in connection with the Sale set forth in the New PSA, have been disclosed; and (c) the New Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction.

L.      The New Buyer is not an insider or an affiliate (as that term is defined in sections 101(2) and 101(31) of the Bankruptcy Code) of the Debtor.

6

**Section 363(f) of the Bankruptcy Code Is Satisfied**

M.    The Trustee is authorized to sell the Greenwich Property free and clear of liens, claims, interests, and encumbrances against the Debtor or his estate, because one of more of the standards set forth in section 464(f)(1)-(5) of the Bankruptcy Code has been satisfied.

N.    Those holders of liens, claims, interests, or encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Sale or the Motion have either consented to or are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  In addition, one or more of the other subsections of section 363(f) of the Bankruptcy Code apply and, therefore, holders of liens, claims, interests, or encumbrances in the Greenwich Property are adequately protected by having their liens, claims, interests, or encumbrances in the Greenwich Property attach solely to the proceeds of the Sale in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to the Sale.

O.    The New Buyer would not have entered into the Sale and will not consummate the transactions contemplated thereby, thus adversely affecting the Debtor's estate and his creditors, (i) if the sale of the Greenwich Property was not free and clear of all liens, claims, interests, and encumbrances except as set forth in the New PSA or (ii) if the New Buyer would, or in the future could, be liable for any such liens, claims, interests, and encumbrances.  The total consideration to be provided under the New PSA reflects the New Buyer's reliance on this Order to provide ~~her~~him with title to and possession of the Greenwich Property free and clear of all liens, claims, interests, and encumbrances pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.

**Validity of Transfer of Title**

P.    By Quit Claim Deed dated and recorded on August 20, 2024 at Volume 8354, Page 223 of the Greenwich Land Records and Volume 13378, Page 327 of the Stamford Land Records,

Greenwich Land, LLC, acting by the Trustee, transferred all its right, title and interest in and to the Greenwich Property to the Trustee (the "Quit Claim Transfer"), which Quit Claim Transfer was a legal, valid and effective transfer of title, duly authorized by prior orders of this Court.  The transfer of title in and to the Greenwich Property by the Trustee to the New Buyer will be a legal, valid, and effective transfer of title, and will vest the New Buyer with any legal, equitable and beneficial right, title, and interest in and to the Greenwich Property free and clear of all liens, claims, interests, and encumbrances, except as set forth in the New PSA.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.  Subsequent to the Closing, the Debtor's estate will be relieved of all liability or other obligation of any kind with respect to claims arising from or related to the New Buyer's post-Closing ownership of the Greenwich Property.

**Waiver of Bankruptcy Rules 6004(h)**

Q.    The sale of the Greenwich Property must be approved and consummated promptly. The Trustee and the New Buyer intend to expeditiously close the Sale upon entry of this order. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the New PSA.  Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rule 6004(h) with regard to the transactions contemplated by this Order.

**THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES:**

1.    The Motion is GRANTED and approved in all respects, and any objections thereto that have not been otherwise withdrawn, waived, or settled are overruled.

8

2.      The New PSA is hereby approved as set forth herein.

3.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Sale of the Greenwich Property to the New Buyer pursuant to the New PSA free and clear of all liens, claims, encumbrances, and other interests is approved in all respects.

4.      Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code, the Trustee is authorized to transfer the Greenwich Property in accordance with the terms of the New PSA and this Order.  The transfer of title in and to the Greenwich Property by the Trustee to the New Buyer in accordance with the New PSA shall: (a) be valid, legal, binding, and effective; (b) vest the New Buyer with all right, title and interest in and to the Greenwich Property; and (c) be free and clear of all liens, claims, interests, and encumbrances against the Greenwich Property, in accordance with section 363(f) of the Bankruptcy Code.

5.      Pursuant to section 363 of the Bankruptcy Code, this Order shall and does, as of the Closing, divest the Debtor and his estate of all right, title, and interest in and to the Greenwich Property.

6.      The consideration provided by the New Buyer for the Greenwich Property under the New PSA is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided or rejected, or costs or damages imposed or awarded against the New Buyer, under section 363(n) or any other provision of the Bankruptcy Code.

7.      The Trustee is authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale concerning the transfer of the Greenwich Property to the New Buyer at a closing in accordance with the Motion, the New PSA and this Order, including,

9

without limitation, payment of usual and customary closing costs (b) perform, consummate, implement, and close the transaction pursuant to the New PSA together with all additional instruments and documents that may be reasonably necessary or desirable to implement this Order, and the New PSA, and (c) perform the obligations contemplated by this Order, and the New PSA, including all actions reasonably requested by the New Buyer in regard thereto.

8.     Except as set forth on Schedule A to the New PSA (the "Permitted Encumbrances"), all liens, claims, interests, and/or encumbrances in, on, or against the Greenwich Property shall automatically attach solely to the proceeds of the Sale with the same validity, priority, force, and effect that they now have as against the Greenwich Property, subject to any claims and defenses the Trustee or the Debtor's estate may possess with respect thereto.  This Order shall be effective as a determination that, except for the Permitted Encumbrances, on and as of the Closing, all liens, claims, interests, and/or encumbrances of any kind or nature whatsoever in, on, or against the Greenwich Property have been unconditionally released, discharged, and terminated.  The provisions of this Order authorizing and approving the transfer of the Greenwich Property free and clear of liens, claims, encumbrances, and other interests shall be self-executing, and neither the Trustee nor the New Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order and the New PSA.

9.     Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Trustee to sell and transfer the Greenwich Property to the New Buyer, (b) with the ability of the New Buyer to acquire, take possession of, use and operate the Greenwich Property in accordance with the terms of the New

10

PSA and this Order, and (c) with the ability of the Trustee and the New Buyer to perform their respective obligations thereunder; provided, however, that the foregoing restriction shall not impair the right of any party in interest with the requisite standing to appeal this Order in accordance with applicable law or opposing any appeal of this Order.

10.     The Purchaser is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.  The Sale contemplated by the New PSA and this Order are undertaken by the New Buyer in good faith, as that term is used in section 363(b) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization is duly stayed pending such appeal prior to the Closing.  For the avoidance of doubt, the pendency of an appeal of this Order, absent a stay of this Order pending appeal, shall not constitute a basis not to consummate the Sale.

11.     The failure specifically to include any particular provisions of the New PSA in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the New PSA and each and every provision, term, and condition thereof (including, for the avoidance of doubt, the addendum thereto) be, and therefore is, authorized and approved in its entirety; provided, however that the New PSA may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, without further notice to or order of this Court, provided that any such modification, amendment, or supplementation does not have a material adverse effect on the Debtor's estate, unless approved by order of this Court.

12.     The provisions of this Order, the New PSA, and any actions taken pursuant hereto or thereto, shall survive entry of any order which may be entered confirming or consummating any chapter 11 plan, or which may be entered converting this chapter 11 case from chapter 11 to chapter

11

7 of the Bankruptcy Code or dismissing this chapter 11 case, and the terms and provisions of the New PSA, as well as the rights and interests granted pursuant to this Order, the New PSA, shall continue in this chapter 11 case or any superseding cases and shall be specifically performable and enforceable against and binding upon the Trustee, the Debtor, his estate, all creditors, all holders of claim(s) (whether known or unknown) against the Debtor, all holders of liens, claims, interests, and/or encumbrances (whether known or unknown) against, in, or on all or any portion of the Greenwich Property, the New Buyer and its respective successors and permitted assigns, and any other trustee or other fiduciary hereafter appointed or elected as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, including without limitation plan fiduciaries, plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in this chapter 11 case.

13.     This Order is and shall be binding upon and govern the acts of all persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Greenwich Property.  Each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the liens, claims, interests, and encumbrances against the Greenwich Property or to otherwise consummate the Sale contemplated by this Order, and the New PSA.

12

14.     The terms and provisions of the New PSA and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Trustee, the Debtor's estate and its creditors, the New Buyer and its affiliates, successors, and assigns, and any affected third parties, including all persons asserting liens, claims, interests, or encumbrances in, on, or against the Greenwich Property, notwithstanding any subsequent appointment of any other trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtor, his estates, his creditors or any such trustee, examiner, or receiver.

15.     Upon the Closing, the Trustee is authorized to pay from the proceeds of the Sale, the broker's commission (as defined in the Retention Order) equal to 4.5% of the Purchase Price, *i.e.*, $~~310,500~~326,250 to be equally divided between Compass and ~~Sotheby's International Realty~~Brown Harris Stevens.

~~15.~~16.  The Sale of the Greenwich Property as authorized by this Order shall include, in addition to the real property, to the extent that the following are not leased and are located at the Greenwich Property, any: heating, cooling, electrical and plumbing systems and fixtures; electric light fixtures; installed wall-to-wall carpeting; security system; stove; storm windows and doors; screens and screen doors; window shades; venetian blinds; curtain rods; awnings; affixed satellite dish(es); weathervanes; mail box(es); swimming pool equipment; garage door openers with remotes; existing plants and shrubbery; outdoor furniture; gym equipment; home theater furniture and equipment; televisions and other audio/visual equipment; window treatments; drapes; and appliances as per the sale listing.

~~16.~~17.  For the avoidance of doubt, no estate causes of action are being sold as part of the Sale.

13

17.18.  Notwithstanding the provisions of Bankruptcy Rules 6004(h) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) is hereby expressly waived and shall not apply. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

**Formatted:** Font: 12 pt

18.19.  Nothing in this Order shall modify or waive any closing conditions or termination rights in the New PSA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

19.20.  As of the Closing, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the Sale, including, without limitation, the transfer of the Greenwich Property to the New Buyer and the occurrence of the Closing.

21.     Upon Closing, and in accordance with the provisions of Bankruptcy Rule 6004(f), the Trustee shall file with the Court, a Report of Sale, together with a copy of the HUD closing statement, within five (5) business days of the Closing.

22.     To the extent that there is a conflict between the provisions of this Order and the New PSA, this Order shall prevail.

23.     For the avoidance of doubt, (a) the Court is not approving the Original PSA; (b) the Trustee shall return the Original Buyer's deposit within two business days of the entry of this Order; and (c) because the "Closing," as that term is defined in the Original PSA with the Original Buyer, has not occurred and will not occur, none of the sums described in paragraph 12 of the Original PSA shall be due and payable.

14

20.24.  [For the reasons stated at the Hearing, the Trustee is hereby authorized to reimburse the Original Buyer for up to $20,000 of reasonable, documented out-of-pocket expenses (such as inspection fees, appraisal fees, and/or counsel fees) incurred by Original Buyer in furtherance of the potential acquisition of the Greenwich Property.]

21.25.  This Court shall retain jurisdiction to, among other things, (a) interpret, enforce, and implement the terms and provisions of this Order and the New PSA (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith) and (b) adjudicate disputes related to this Order and the New PSA (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith).

**Formatted:** Left

## **EXHIBIT 3-A**

**NEW PSA SUMMARY AND DISCLOSURES**

## <u>SUMMARY OF MATERIAL TERMS OF NEW PSA</u>

1.    The chart below sets forth the material terms of the New PSA[1] between the

Trustee and the Buyer.

| Provision | Summary Description |
|---|---|
| **Parties** | <u>Seller</u>: Luc A. Despins, solely in his capacity as chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity<br><br><u>Buyer</u>: New Buyer as set forth in New PSA |
| **Purchase Price** | $7,250,000.00 |
| **Property to Be Sold** (New PSA §1) | 373 Taconic Road, Greenwich, Connecticut (partially located in Greenwich and partially in Stamford, Connecticut) |
| **Deposit** (New PSA §2) | On October 11, 2024, the Buyer paid the deposit of $1,065,000.00 (approximately 14.69% of the Purchase Price) to the Trustee's counsel, as a deposit toward the Purchase Price to be held in escrow subject to the terms of the New PSA. |

---

[1]    The terms of the New PSA are summarized herein for the convenience of the Court and parties in interest. To the extent that there are any discrepancies, the terms of the New PSA shall govern. Capitalized terms used in this summary that are not defined herein shall have the meanings ascribed to them in the New PSA.

| Provision | Summary Description |
|---|---|
| **Closing**<br>(New PSA §9) | The transfer of title to Greenwich Property (the "<u>Closing</u>") will occur as follows (the "<u>Closing Date</u>"): within three business days of the entry of the Revised Proposed Order unless an objection to the Sale has been filed and not withdrawn at the time of the entry of the Revised Proposed Sale Order. If an objection is filed to the Sale and not withdrawn prior to entry of the Revised Proposed Sale Order, the New Buyer may wait to proceed with the closing until the 14-day appeal period has elapsed. In that case, the New Buyer has agreed to close on the next business day after the expiration of the appeal period if the Revised Proposed Sale Order or the order denying the objection is still in effect even if an appeal has been filed as long as no stay of the Court's order(s) has been issued by any court of competent jurisdiction. (the "<u>Closing Date</u>"). The Closing will occur at the offices of Trustee's counsel.<br><br>At Closing, the Buyer will pay the balance of the Purchase Price (*i.e.*, $6,185,000.00), subject to customary adjustments, to the Trustee and the Deposit will be released to the Trustee. |
| **Sellers Representations/ Requirements for Closing**<br>(New PSA §10, Schedule A) | The Trustee represents and warrants that he will transfer to the Buyer good and marketable title to the Greenwich Property, subject to certain items set forth in Schedule A and paragraph 10(e) of the PSA. |
| **Risk of Loss**<br>(New PSA §14) | The Trustee will bear the risk of loss of or damage to the Greenwich Property prior to Closing. |

| Provision | Summary Description |
|---|---|
| **Default** (New PSA §21, 20) | If Closing is not consummated due to the Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit will be retained by the Trustee, together with any carrying costs incurred for extending the closing date, as liquidated and agreed damages in full settlement of all claims between the parties; and (ii) the parties will be relieved of all obligations under the PSA.<br><br>If the Closing is not consummated due to the Trustee's non-performance (which, for the avoidance of doubt, shall not include this Court declining to approve the PSA), the Deposit, and any other money paid or deposited by the Buyer pursuant to the PSA, will be returned to Buyer upon demand.  If the Buyer terminates the PSA due to Trustee's refusal to timely close pursuant to the terms of the PSA, the Deposit shall be returned to Buyer and the buyer shall receive from the Trustee any nonrefundable expenses actually incurred by the Buyer in the aggregate not to exceed the costs of an ALTA Homeowner's policy based upon the Purchase Price. |
| **Conveyance Taxes** (New PSA §7) | The Trustee shall pay all real estate conveyance taxes at Closing. |
| **Representations and Warranties** (New PSA §7, 27) | Upon Closing, the Buyer will be deemed to have accepted the Greenwich Property in its "as is" condition.  The Trustee and the Brokers have given no warranty, either express or implied, and make no representation as to the condition of the Greenwich Property. |
| **Financing** (New PSA §5) | The Buyer's obligations are not contingent upon Buyer's obtaining financing. |
| **Costs of Enforcement** (New PSA §30) | In the event any dispute between the parties hereto arising out of the subject matter of the PSA, the prevailing party will be reimbursed for their reasonable costs and attorney's fees. |
| **Bankruptcy Court Approval** (New PSA §§10(e)(vii); 39) | The PSA and all terms in the PSA are subject to approval of this Court. |

| Provision | Summary Description |
|---|---|
| **Exclusive Bankruptcy Court Jurisdiction** (New PSA §39B) | Notwithstanding anything in the PSA to the contrary, this Court will have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties irrevocably submit to the exclusive jurisdiction of this Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in this Court, and, further, not to bring any claim relating to the PSA in any other court. |

## **COMPLIANCE WITH LOCAL RULE 6004-2(c)**

2.    In accordance with Local Rule 6004-2(c), the Trustee further states:

| Local Rule 6004-2 Disclosure | Terms of Sale |
|---|---|
| **Sale to Insider** (Local Rule 6004-2(c)(1)) | The New Buyer is not an insider within the meaning of section 101(31) of the Bankruptcy Code.  Indeed, the New Buyer has represented and warranted that he is not affiliated with or related to the Debtor and/or is not acting on behalf of or at the behest of the Debtor.  (New PSA §38) |
| **Agreements with Management** (Local Rule 6004-2(c)(2)) | Not applicable. |
| **Releases** (Local Rule 6004-2(c)(3)) | The New PSA contains no releases apart from a provision (in § 39(D) of the New PSA) providing that the Trustee shall release the Trustee's attachment Order in the amount of $8,314,200 dated March 30, 2023 entered in the Greenwich Land A.P.  (the "Attachment Order") recorded on the Greenwich Land Records with respect to the Greenwich Property. |

| Local Rule 6004-2 Disclosure | Terms of Sale |
|---|---|
| **Private Sale/No Competitive Bidding** (Local Rule 6004-2(c)(4)) | While the Trustee is not contemplating conducting an auction, the New PSA reflects the result of a vigorous marketing process by a real estate brokerage firm retained by the Trustee (as detailed in the Sale Motion) and competitive bidding following the filing of the Sale Motion.<br><br>The Trustee has not agreed to refrain from soliciting or considering competing offers for the Greenwich Property. Indeed, the Trustee will consider any offers made at any time prior to or at the hearing on the Sale Motion. Moreover, in accordance with Local Rule 6004-2(g), the Trustee served a copy of the Sale Motion on all parties that have expressed an interest in the Greenwich Property during the marketing process. |
| **Closing and Other Deadlines** (Local Rule 6004-2(c)(5)) | The closing of the Sale shall occur within three business days unless an objection to the Sale has been filed and not withdrawn at the time of the entry of the Revised Proposed Sale Order. If an objection is filed to the Sale and not withdrawn prior to entry of the Revised Proposed Sale Order, the New Buyer may wait to proceed with the closing until the 14-day appeal period has elapsed. In that case, the New Buyer has agreed to close on the next business day after the expiration of the appeal period if the Revised Proposed Sale Order or the order denying the objection is still in effect even if an appeal has been filed as long as no stay of the Court's order(s) has been issued by any court of competent jurisdiction. |
| **Good Faith Deposit** (Local Rule 6004-2(c)(6)) | The Buyer has made a good faith deposit of approximately 14.69% of the Purchase Price, which deposit is being held by the Trustee's counsel in escrow subject to the terms of the New PSA. |
| **Interim Arrangements with Proposed Buyer** (Local Rule 6004-2(c)(7)) | There are no interim arrangements with the Buyer. |
| **Use of Proceeds** (Local Rule 6004-2(c)(8)) | The proceeds from the Sale will be deposited into the Trustee's account and will be used and/or distributed by the Trustee in accordance with the Bankruptcy Code.<br><br>To the extent there are any liens on the Greenwich Property, such liens will attach to the proceeds.[2] |

---

[2]    The Trustee obtained a title search for the Greenwich Property which indicated that no liens existed other than

| Local Rule 6004-2 Disclosure | Terms of Sale |
|---|---|
| **Tax Exemption** (Local Rule 6004-2(c)(9)) | The Trustee is not seeking to have the sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code. |
| **Record Retention** (Local Rule 6004-2(c)(10)) | Not applicable. |
| **Sale of Avoidance Actions** (Local Rule 6004-2(c)(11)) | The Trustee is not seeking to sell any avoidance actions. |
| **Requested Findings and Order as to Successor Liability** (Local Rule 6004-2(c)(12)) | The Trustee is not requesting any findings as to successor liability claims. |
| **Sale Free and Clear of Unexpired Leases** (Local Rule 6004-2(c)(13)) | There are no unexpired leases affecting the Greenwich Property. |
| **Credit Bid** (Local Rule 6004-2(c)(14)) | Not applicable. |
| **Relief from Bankruptcy Rule 6004(h)** (Local Rule 6004-2(c)(15)) | The Trustee seeks relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to permit the Sale to close within three business days of Court approval of the sale. |
| **Carve-Outs and/or "Gifts"** (Local Rule 6004-2(c)(16)) | Not applicable. |
| **Residual Assets** (Local Rule 6004-2(c)(17)) | The Sale is not a sale of substantially all of the assets of the estate. Additional assets will exist following the Sale Closing. |

the Attachment Order.

**EXHIBIT 3-B**

**NEW PSA SUMMARY AND DISCLOSURES**
**(REDLINE V. ORIGINAL PSA SUMMARY AND DISCLOSURES)**

**SUMMARY OF MATERIAL TERMS OF NEW PSA**

1.      The chart below sets forth the material terms of the New PSA[1] between the

Trustee and the Buyer.

| Provision | Summary Description |
|---|---|
| **Parties** | Seller: Luc A. Despins, solely in his capacity as chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity<br><br>Buyer: Ann Richardson KnoxNew Buyer as set forth in New PSA |
| **Purchase Price** | $6,900,000.007,250,000.00 |
| **Property to Be Sold** (New PSA §1) | 373 Taconic Road, Greenwich, Connecticut (partially located in Greenwich and partially in Stamford, Connecticut) |
| **Deposit** (New PSA §2) | On September October 1125 and 26, 2024, the Buyer paid the deposit of $1,035065,000.00 (approximately 14.695% of the Purchase Price) to the Trustee's counsel, as a deposit toward the Purchase Price to be held in escrow subject to the terms of the New PSA. |

---

[1]    The terms of the New PSA are summarized herein for the convenience of the Court and parties in interest.  To the extent that there are any discrepancies, the terms of the New PSA shall govern.  Capitalized terms used in this summary that are not defined herein shall have the meanings ascribed to them in the New PSA.

| Provision | Summary Description |
|---|---|
| **Closing**<br>(New PSA §9) | The transfer of title to Greenwich Property (the "Closing") will occur as follows (the "Closing Date"): within three business days of the entry of the Revised Proposed Order unless an objection to the Sale has been filed and not withdrawn at the time of the entry of the Revised Proposed Sale Order. If an objection is filed to the Sale and not withdrawn prior to entry of the Revised Proposed Sale Order, the New Buyer may wait to proceed with the closing until the 14-day appeal period has elapsed. In that case, the New Buyer has agreed to close on the next business day after the expiration of the appeal period if the Revised Proposed Sale Order or the order denying the objection is still in effect even if an appeal has been filed as long as no stay of the Court's order(s) has been issued by any court of competent jurisdiction. on the fifteenth (15th) day after Bankruptcy Court approval of the Sale but not sooner than forty-five days from the date of the PSA unless agreed by the Buyer (the "Closing Date"). The Closing will occur at the offices of Trustee's counsel.<br><br>At Closing, the Buyer will pay the balance of the Purchase Price (*i.e.*, $6,185,000.005,865,000.00), subject to customary adjustments, to the Trustee and the Deposit will be released to the Trustee. |
| **Sellers Representations/ Requirements for Closing** (New PSA §10, Schedule A) | The Trustee represents and warrants that he will transfer to the Buyer good and marketable title to the Greenwich Property, subject to certain items set forth in Schedule A and paragraph 10(e) of the PSA. |
| **Risk of Loss**<br>(New PSA §14) | The Trustee will bear the risk of loss of or damage to the Greenwich Property prior to Closing. |

2

| Provision | Summary Description |
|---|---|
| **Default**<br>(New PSA §21, 20) | If Closing is not consummated due to the Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit will be retained by the Trustee, together with any carrying costs incurred for extending the closing date, as liquidated and agreed damages in full settlement of all claims between the parties; and (ii) the parties will be relieved of all obligations under the PSA.<br><br>If the Closing is not consummated due to the Trustee's non-performance (which, for the avoidance of doubt, shall not include this Court declining to approve the PSA), the Deposit, and any other money paid or deposited by the Buyer pursuant to the PSA, will be returned to Buyer upon demand.  If the Buyer terminates the PSA due to Trustee's refusal to timely close pursuant to the terms of the PSA, the Deposit shall be returned to Buyer and the buyer shall receive from the Trustee any nonrefundable expenses actually incurred by the Buyer in the aggregate not to exceed the costs of an ALTA Homeowner's policy based upon the Purchase Price. |
| **Conveyance Taxes**<br>(New PSA §7) | The Trustee shall pay all real estate conveyance taxes at Closing. |
| **Representations and Warranties**<br>(New PSA §7, 27) | Upon Closing, the Buyer will be deemed to have accepted the Greenwich Property in its "as is" condition.  The Trustee and the Brokers have given no warranty, either express or implied, and make no representation as to the condition of the Greenwich Property. |
| **Financing**<br>(New PSA §5) | The Buyer's obligations are not contingent upon Buyer's obtaining financing. |
| **Costs of Enforcement**<br>(New PSA §30) | In the event any dispute between the parties hereto arising out of the subject matter of the PSA, the prevailing party will be reimbursed for their reasonable costs and attorney's fees. |
| **Bankruptcy Court Approval**<br>(New PSA §§10(e)(viii); 39) | The PSA and all terms in the PSA are subject to approval of this Court. |

3

| Provision | Summary Description |
|---|---|
| **Exclusive Bankruptcy Court Jurisdiction** (New PSA §39B.) | Notwithstanding anything in the PSA to the contrary, this Court will have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties irrevocably submit to the exclusive jurisdiction of this Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in this Court, and, further, not to bring any claim relating to the PSA in any other court. |

### COMPLIANCE WITH LOCAL RULE 6004-2(c)

2.    In accordance with Local Rule 6004-2(c), the Trustee further states:

| Local Rule 6004-2 Disclosure | Terms of Sale |
|---|---|
| **Sale to Insider** (Local Rule 6004-2(c)(1)) | The New Buyer is not an insider within the meaning of section 101(31) of the Bankruptcy Code.  Indeed, the New Buyer has represented and warranted that she is not affiliated with or related to the Debtor and/or is not acting on behalf of or at the behest of the Debtor.  (New PSA §38) |
| **Agreements with Management** (Local Rule 6004-2(c)(2)) | Not applicable. |
| **Releases** (Local Rule 6004-2(c)(3)) | The New PSA contains no releases apart from a provision (in § 39(D) of the New PSA) providing that the Trustee shall release the Trustee's attachment Order in the amount of $8,314,200 dated March 30, 2023 entered in the Greenwich Land A.P.  (the "Attachment Order") recorded on the Greenwich Land Records with respect to the Greenwich Property. |

| Local Rule 6004-2 Disclosure | Terms of Sale |
|---|---|
| **Private Sale/No Competitive Bidding** (Local Rule 6004-2(c)(4)) | While the Trustee is not contemplating conducting an auction, the New PSA reflects the result of a vigorous marketing process by a real estate brokerage firm retained by the Trustee (as detailed in this the Sale Motion) and competitive bidding following the filing of the Sale Motion. The Trustee has not agreed to refrain from soliciting or considering competing offers for the Greenwich Property. Indeed, the Trustee will consider any offers made at any time prior to or at the hearing on the Sale Motion. Moreover, in accordance with Local Rule 6004-2(g), the Trustee will served a copy of theis Sale Motion on all parties that have expressed an interest in the Greenwich Property during the marketing process. |
| **Closing and Other Deadlines** (Local Rule 6004-2(c)(5)) | The closing of the Sale shall occur within three business days unless an objection to the Sale has been filed and not withdrawn at the time of the entry of the Revised Proposed Sale Order. If an objection is filed to the Sale and not withdrawn prior to entry of the Revised Proposed Sale Order, the New Buyer may wait to proceed with the closing until the 14-day appeal period has elapsed. In that case, the New Buyer has agreed to close on the next business day after the expiration of the appeal period if the Revised Proposed Sale Order or the order denying the objection is still in effect even if an appeal has been filed as long as no stay of the Court's order(s) has been issued by any court of competent jurisdiction. will take place on or before the forty-fifth (45th) day following the Contract Date. |
| **Good Faith Deposit** (Local Rule 6004-2(c)(6)) | The Buyer has made a good faith deposit of approximately 1514.69% of the Purchase Price, which deposit is being held by the Trustee's counsel in escrow subject to the terms of the New PSA. |
| **Interim Arrangements with Proposed Buyer** (Local Rule 6004-2(c)(7)) | There are no interim arrangements with the Buyer. |

5

| Local Rule 6004-2 Disclosure | Terms of Sale |
|---|---|
| **Use of Proceeds** (Local Rule 6004-2(c)(8)) | The proceeds from the Sale will be deposited into the Trustee's account and will be used and/or distributed by the Trustee in accordance with the Bankruptcy Code.<br><br>To the extent there are any liens on the Greenwich Property, such liens will attach to the proceeds.[2] |
| **Tax Exemption** (Local Rule 6004-2(c)(9)) | The Trustee is not seeking to have the sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code. |
| **Record Retention** (Local Rule 6004-2(c)(10)) | Not applicable. |
| **Sale of Avoidance Actions** (Local Rule 6004-2(c)(11)) | The Trustee is not seeking to sell any avoidance actions. |
| **Requested Findings and Order as to Successor Liability** (Local Rule 6004-2(c)(12)) | The Trustee is not requesting any findings as to successor liability claims. |
| **Sale Free and Clear of Unexpired Leases** (Local Rule 6004-2(c)(13)) | There are no unexpired leases affecting the Greenwich Property. |
| **Credit Bid** (Local Rule 6004-2(c)(14)) | Not applicable. |
| **Relief from Bankruptcy Rule 6004(h)** (Local Rule 6004-2(c)(15)) | The Trustee seeks relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to permit the Sale to close ~~as soon possible upon approval by this Court~~ within three business days of Court approval of the sale. |
| **Carve-Outs and/or "Gifts"** (Local Rule 6004-2(c)(16)) | Not applicable. |
| **Residual Assets** (Local Rule 6004-2(c)(17)) | The Sale is not a sale of substantially all of the assets of the estate. Additional assets will exist following the Sale Closing. |

---

[2]    The Trustee obtained a title search for the Greenwich Property which indicated that no liens existed other than the Attachment Order ~~Trustee's attachment Order in the amount of $8,314,200 dated March 30, 2023 entered in the Greenwich Land A.P.  ( the "~~Attachment Order~~")~~.