**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HO WAN KWOK, *et al.*,[1] | ) | Case No. 22-50073 (JAM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**JOINT DEFENDANTS' OMNIBUS MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS**

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................ 4

LEGAL ARGUMENT ......................................................................................... 7

A.    Trustee's Avoidance Claims Fail as a Matter of Delaware Law, Because Reverse
       Veil-Piercing Is Not Permitted If It Will Result in Significant Prejudice to
       Unknowing Third-Party Creditors of the Purported Alter Ego Entity. ................................ 7

B.    The Trustee's Avoidance Claims under 11 U.S.C. §§ 544, 548, and 549 Also Fail as a
       Matter of Law Because Delaware Law Only Recognizes the Vicarious Liability
       Theory of Reverse Veil-Piercing. .......................................................................... 11

       1.    None of the Cases Cited by the Trustee Constitute the Adoption of the
              Identity Theory of Alter Ego Doctrine under Delaware Law. ............................... 14

       2.    This Court's Prior Alter Ego Rulings Fail to Cite Delaware Law for Identity
              Theory. ................................................................................................ 16

       3.    The Trustee Seeks Substantive Consolidation Without Alleging Substantive
              Consolidation. ....................................................................................... 18

C.    The Trustee's Section 549 Claims Fail as a Matter of Law Because the Trustee
       Cannot Use the Alter Ego Doctrine on a *Nunc Pro Tunc* Basis. ...................................... 20

       1.    To Establish a Claim under 11 U.S.C. § 549, the Trustee Must Allege
              and Prove That Property of the Bankruptcy Estate Was Transferred Afte
              the Commencement of the Debtors' Bankruptcy Cases. ..................................... 20

       2.    Applying the Alter Ego Doctrine Retroactively Is *Nunc Pro Tunc* Relief. ........... 21

       3.    The Supreme Court's Decision in *Acevedo* Precludes *Nunc Pro Tunc* Alter
              Ego Relief in these Adversary Proceedings. ................................................. 25

       4.    State Law Does Not Recognize the *Nunc Pro Tunc* Use of the Alter Ego
              Doctrine in This Manner. ......................................................................... 28

D.    The Trustee's Sections 544 and 548 Claims Fail as a Matter of Law Because the
       Transfers, When Made, Were Not from the Debtor's Property. ........................................ 29

E.    This Court's Prior Decisions Are Not Binding on the Joint Defendants Because
       They Do Not Constitute Law of the Case or Collateral Estoppel. ..................................... 30

       1.    Collateral Estoppel (or Issue Preclusion) Does Not Apply. ................................ 30

       2.    The Law of the Case Doctrine Does Not Apply. ............................................. 33

i

CONCLUSION...................................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*Ackerman v. Schultz (In re Schultz)*,
    250 B.R. 22 (Bankr. E.D.N.Y. 2000) ..............................................................................33, 34

*Adams v. Bostick (In re Bostick)*,
    400 B.R. 348 (Bankr. D. Conn. 2009) ................................................................................18

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders
    Ass'n., Inc.*,
    No. 10 Civ. 3314, 2014 U.S. Dist. LEXIS 199601 (S.D.N.Y. Mar. 14, 2014) .......................35

*Arizona v. California*,
    530 U.S. 392 (2000) ..........................................................................................................31

*ASARCO LLC v. America's Mining Corp.*,
    382 B.R. 49 (S.D. Tex. 2007) ............................................................................................15

*In re Augie/Restivo Baking Co., Ltd.*,
    860 F.2d 515 (2d Cir. 1988) ........................................................................................19, 22

*In re Auto-Train Corp., Inc.*,
    810 F.2d 270 (D.C. Cir. 1987) .....................................................................................22, 23

*Bauer v. General Elec. Capital Corp. (In re Oncology Assocs. of Ocean Cnty.,
    LLC)*, 510 B.R. 463 (Bankr. D.N.J. 2014) ......................................................................23, 24

*In re Bauman*,
    535 B.R. 289 (Bankr. C.D. Ill. 2015) ................................................................................20

*BFI Waste Sys. of N. Am., LLC v. Shaw Env't & Infrastructure, Inc.*,
    No. 4:09CV1379 HEA, 2010 WL 5647118 (E.D. Mo. July 30, 2010),
    *amended on reconsideration*, No. 409CV1379HEA, 2010 WL 4622519 (E.D.
    Mo. Nov. 5, 2010) ...........................................................................................................12

*Boscarino v. Vachhani (In re Vachhani)*,
    No. 18-02009, 2019 WL 303078 (Bankr. D. Conn. Jan. 22, 2019) .......................................21

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
    38 Del. Ch. 490, 154 A.2d 684 (1959) ...............................................................................16

*Butner v. U.S.*,
    440 U.S. 48 (1979) ...........................................................................................................17

*C.F. Trust, Inc. v. First Flight L.P.*,
    580 S.E.2d 806 (Va. 2003) ..................................................................................................8

*Cerrato v. BAC Home Loans Servicing (In re Cerrato)*,
    504 B.R. 23 (Bankr. E.D.N.Y. 2014) ..................................................................17

*Connolly v. Englewood Post No. 322 Veterans of Foreign Wars of the United States, Inc. (In re Phillips)*,
    139 P.3d 639 (Colo. 2006) ...............................................................................8

*Corrado v. N.Y. Unified Court Sys.*,
    163 F. Supp. 3d 1 (E.D.N.Y. 2016) ..................................................................35

*Covey v. Casey's General Stores, Inc. (In re Duckworth)*,
    No. 11-8104, 2012 WL 4434681 (Bankr. C.D. Ill. Sept. 24, 2012) .................28, 29

*Deckelbaum v. Cooter, Mangold, Tompert & Chapman, PLLC*,
    275 B.R. 737 (Bankr. D. Md. 2001) .................................................................14

*In re Donghia, Inc.*,
    No. 20-30487 (JJT), 2020 WL 2465503 (Bankr. D. Conn. May 12, 2020) ..........26

*Elmaliach v. Bank of China Ltd.*,
    No. 09 CIV. 2130 (PGG), 2010 WL 1172829 (S.D.N.Y. Mar. 26, 2010) .............34

*Equitable Trust Co. v. Gallagher*,
    34 Del. Ch. 76, 99 A.2d 490 (1951) .................................................................16

*Evangelista v. Silver (In re Silver)*,
    647 B.R. 897 (Bankr. E.D. Mich. 2022) ........................................................11, 14

*Fed. Aviation Admin. v. Gull Air, Inc. (In re Gull Air, Inc.)*,
    890 F.2d 1255 (1st Cir. 1989) .........................................................................17

*Geltzer v. Soshkin (In re Brizinova)*,
    588 B.R. 311 (Bankr. E.D.N.Y. 2018) ..........................................................34, 35

*Giuliano v. Shorenstein Co., LLC (In re Sunset Aviation, Inc.)*,
    468 B.R. 641 (Bankr. D. Del. 2011) .................................................................24

*Grimmett v. McCloskey (In re Wardle)*,
    No. S-03-01467, 2006 WL 6811026 (9th Cir. B.A.P. Jan. 31, 2006) ..................14

*Harrison v. Soroof Int'l, Inc.*,
    320 F. Supp. 3d 602 (D. Del. 2018) .................................................................11

*Jennings v. City of N.Y.*,
    No. 22 Civ. 1885, 2023 WL 8462739 (S.D.N.Y. Nov. 22, 2023) .......................35

*Lawler v. RepublicBank Dallas (In re Lawler)*,
    53 B.R. 166 (N.D. Tex. 1985) .....................................................................28, 29

iv

*Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*,
716 F.3d 736 (3d Cir. 2013) ..................................................... 17

*Manichaean Capital, LLC v. Exela Techs., Inc.*,
251 A.3d 694 (Del. Ch. 2021) ...........................................3, 8, 9, 10, 11, 13

*Martin v. D. B. Martin Co.*,
10 Del. Ch. 211, 88 A. 612, 102 A. 373 (1913) ........................................ 16

*Multnomah Cty. v. Rudolph (In re Rudolph)*,
166 B.R. 440 (D. Or. 1994) ..................................................... 17

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
537 F.3d 168 (2d Cir. 2008) ..................................................... 12

*In re NETtel Corp., Inc.*,
No. 02–10122, 2007 WL 2119029 (Bankr. D.D.C. Jul. 20, 2007) ........................... 35

*Matter of New Ctr. Hosp.*,
187 B.R. 560 (E.D. Mich. 1995) ................................................. 22

*Novak v. Univ. of Miami (In re Demitrus)*,
586 B.R. 88 (Bankr. D. Conn. 2018) ............................................. 30

*Orshan v. Anker*,
550 F. Supp. 538 (E.D.N.Y. 1982) ............................................... 34

*Otto Candies, LLC v. KPMG, LLP*,
2020 WL 4917596 (Del. Ch. Aug. 21, 2020) ........................................ 12

*In re Owens Corning*,
419 F.3d 195 (3d Cir. 2005) ................................................. 19, 21

*Parker v. Titan Mining (US) Corp. (In re Star Mountain Res., Inc.)*,
No. 2:18-BK-01594-DPC, 2020 WL 6821721 (Bankr. D. Ariz. Sept. 30, 2020) ................................................................... 14

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979) ....................................................... 31

*Pauley Petroleum Inc. v. Cont'l Oil Co.*,
43 Del. Ch. 516 (1968) ................................................12, 15, 16

*Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contracting of N.Y., LLC*,
536 B.R. 48 (Bankr. E.D.N.Y. 2015) ............................................. 11

*In re PCH Assocs.*,
  949 F.2d 585 (2d Cir. 1991) ..................................................................................34

*In re Pearlman*,
  462 B.R. 849 (Bankr. M.D. Fla. 2012) ..................................................................27

*People v. Bilsky*,
  95 N.Y.2d 172 (2000) ...........................................................................................34

*Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*,
  589 U.S. 57 (2020) ...................................................................................25, 26, 27

*RS Air, LLC v. NetJets Aviation, Inc. (In re RS Air, LLC)*,
  651 B.R. 538 (B.A.P. 9th Cir. 2023) ....................................................................12

*Schwab v. Shelly Enters. (In re Clearview Builders, Inc.)*,
  405 B.R. 144 (Bankr. M.D. Pa. 2009) ..................................................................19

*Searcy v. Knight (In re American Int'l Refinery)*,
  402 B.R. 728 (Bankr. W.D. La. 2008) ..............................................................14, 15

*Smith v. Richels (In re Richels)*,
  163 B.R. 760 (Bankr. E.D. Va. 1994) ...................................................................14

*Speeney v. Rutgers*,
  369 F. App'x 357 (3d Cir. 2010) ...........................................................................34

*Spradlin v. Beads and Steeds Inns, LLC (In re Howland)*,
  674 F. App'x 482 (6th Cir. 2017) ...........................................................11, 12, 13, 19

*Spring Real Estate, LLC v. Echo/RT Holdings, LLC*,
  No. 7994–VCN, 2016 WL 769586 (Del. Ch. Feb. 18, 2016) ................................15

*Stevenson v. William Noble Rare Jewels, L.P. (In re DuMouchelle)*,
  No. 19-54531, 2023 WL 8100234 (Bankr. E.D. Mich. Nov. 21, 2023) ............11, 14

*Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC (In re Stillwater Asset Backed Offshore Fund Ltd.)*,
  559 BR 563 (Bankr. S.D.N.Y. 2016) ...................................................12, 19, 20, 30

*In re Telles*,
  No. 8-20-70325-REG, 2020 WL 2121254 (Bankr. E.D.N.Y. Apr. 30, 2020) ........26

*The City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011) ..................................................................................18

*In re Torres*,
  No. 21-20483 (JJT), 2021 WL 2189515 (Bankr. D. Conn. May 28, 2021) ...........26

*United States v. Dexter*,
 165 F.3d 1120 (7th Cir. 1999) ...........................................................35

*United States v. Pulliam*,
 No. 3:21-CR-00156 (KAD), 2024 WL 1142004 (D. Conn. Mar. 15, 2024) ..........................34

*Washington v. N.Y.C. Dep't of Educ.*,
 740 F. App'x 730 (2d Cir. 2018) ........................................................31

*Westerbeke Corp. v. Daihatsu Motor Co.*,
 304 F.3d 200 (2d Cir. 2002).............................................................34

*Wilson v. Thorn Energy, LLC*,
 787 F. Supp. 2d 286 (S.D.N.Y. 2011)....................................................12

*In re Zvoch*,
 618 B.R. 734 (Bankr. W.D. Pa. 2020) ...................................................26

**Statutes, Rules & Regulations**

11 U.S.C. § 105................................................................................27

11 U.S.C. § 108................................................................................30

11 U.S.C. § 303................................................................................27

11 U.S.C. § 363............................................................................23, 27

11 U.S.C. § 523................................................................................34

11 U.S.C. § 541............................................................................17, 21

11 U.S.C. § 542................................................................................17

11 U.S.C. § 544....................................................................2, 13, 20, 30

11 U.S.C. § 548......................................................................2, 5, 29, 30

11 U.S.C. § 549..................................2, 5, 20, 21, 23, 24, 25, 27, 28, 29

11 U.S.C. § 550............................................................................28, 29

11 U.S.C. § 727................................................................................34

Fed. R. Bankr. P. 7012.........................................................................1

Fed. R. Civ. P. 12.............................................................................1

**Other Authorities**

5 COLLIER ON BANKRUPTCY ¶ 541.01 (16th ed. 2024) ...................................................17

5 COLLIER ON BANKRUPTCY ¶ 541.02 (16th ed. 2024) ...................................................21

5 COLLIER ON BANKRUPTCY § 1100.06 (L. King ed. 15th ed. 1988)..............................22

1 *Fletcher, Cyclopedia Corporations* (Perm.Ed.), § 41..................................................16

Restatement (Second) of Judgments ............................................................................31

The thirty-eight (38) adversary proceeding defendants identified on the attached <u>Exhibit A</u> (the "<u>Joint Defendants</u>") submit this memorandum in support of each of the individual motions to dismiss or motions for judgment on the pleadings (collectively, the "<u>Motion</u>")[2] filed in their respective, non-stayed adversary proceedings (the "<u>Joint Defendant Adversaries</u>") and claims brought therein by plaintiff Luc A. Despins, as chapter 11 trustee (the "<u>Trustee</u>") for the estate of Debtor Ho Won Kwok (the "<u>Debtor</u>").

<strong><u>PRELIMINARY STATEMENT</u></strong>

Earlier this year, the Trustee commenced a massive litigation campaign against the Joint Defendants and more than 200 others, most of which were unsuspecting third-party providers of goods and services having only arms-length business dealings with a collection of non-debtor entities (the "<u>Non-Debtor Transferors</u>")[3] without notice of the Debtor's bankruptcy. The Trustee attempts to selectively exercise avoidance action powers on behalf of the Non-Debtor Transferors as if they were debtors but without administering their estates or complying with all aspects of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") or applicable state law, resulting in extreme injustice to the Joint Defendants. The Court has previously granted the Trustee's requests for alter ego determinations, but it did not determine the ***legal effect*** of the alter ego determinations on third-party recipients of transfers. Moreover, because the Joint Defendants were not parties to the

---

[2] On September 6, 2024, a subset of the Joint Defendants filed a joint request for a status conference, which occurred on September 24, 2024. On September 25, 2024, this Court entered its *Order Further Amending Avoidance Action Procedures Order and Scheduling Joint Briefing of Motions to Dismiss and Motions for Judgment on the Pleadings* (Dkt. No. 3577), authorizing the Joint Defendants to file this omnibus memorandum of law. In that order, the Court excused the parties from briefing the standard for a motion to dismiss or motion for judgment on the pleadings. In accordance with the Court's order, the Joint Defendants submit this brief in support of their motions to dismiss under Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(1) and./or 12(b)(6) for those that did not answer the complaints and in support of motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) for those that did. In accordance with the Court's order, the Joint Defendants reserve all other arguments and defenses not raised herein.

[3] The specific Non-Debtor Transferors are identified in Exhibit A hereto and consist of the following entities: Lamp Capital LLC, Golden Spring (New York) Ltd., HCHK Technologies, Inc., HCHK Property Management, Inc., Greenwich Land LLC, and Lexington Property & Staffing, Inc.

1

Alter Ego Adversaries (as defined below) the Court did not have the opportunity to consider fully the extreme prejudice that could befall innocent creditors that had arm's length business dealings with the purported alter egos.

For the first time, the legal effect of the alter ego rulings—*i.e.*, whether they give the Trustee standing to sue the Joint Defendants for transfers made by the Non-Debtor Transferors—is now squarely before the Court. In suing the Joint Defendants, the Trustee has far exceeded the scope of his authorized avoidance action powers. The Trustee improperly claims the ability to avoid transfers made by ***non-debtor alter ego entities*** on the erroneous theory that an alter ego determination by this Court transforms the property of such Non-Debtor Transferors into property of this bankruptcy estate, and on a retroactive basis not supported by any applicable legal authority. The Trustee's overreaching position, which has mired this Court and numerous innocent parties in costly litigation, is contrary to the Bankruptcy Code, Delaware law and other reported decisions, and it is fundamentally unfair to the Joint Defendants.

By way of illustration (and without limitation), the extreme nature of the Trustee's position is demonstrated by the fact that the Joint Defendants' research has not found ***a single reported decision holding that a trustee may, absent substantive consolidation, avoid a post-petition transfer made by a non-debtor, alter ego entity under 11 U.S.C. § 549***. Yet, the Trustee has used his unsupported legal theory to sue the Joint Defendants for millions of dollars, claiming that they are strictly liable for transfers occurring before this Court made any alter ego determinations concerning the Non-Debtor Transferors.

The Court should grant the Motion because the Trustee lacks standing to avoid initial transfers made by non-debtors such as the Non-Debtor Transferors. Sections 544, 548, and 549 of the Bankruptcy Code and related applicable fraudulent transfer law permit the avoidance of initial

transfers made by debtors only. Delaware law provides that an alter ego determination imposes vicarious liability on the alter egos of the Debtor; it does not make the Non-Debtor Transferors and the Debtor **one and the same**. To the extent that the Court has previously relied on *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694 (Del. Ch. 2021) to reach the opposite conclusion, it is respectfully submitted that the Court read the *Manichaean* decision too broadly. In *Manichaean*, the court considered whether the plaintiffs could use reverse veil-piercing to **enforce their judgment** against the judgment debtor's wholly owned subsidiaries. Importantly, the court did not conclude the entities were one and the same for all purposes. Even in *Manichaean*, the Delaware court mentions numerous times that reverse veil-piercing should be permitted only if it does not result in prejudice to innocent and unknowing third-party creditors of the alter ego entity, and favorably cites cases from other jurisdictions in accord. The Trustee violates this principle by attempting to use the equitable remedy of reverse veil-piercing to reach into the pockets of hundreds of counterparties who had arms-length business dealings with the purported alter ego entities.

Even if the Trustee were correct as to the meaning of the alter ego determination and the application of *Manichaean*, the Trustee cannot, as a matter of law, retroactively apply such determination so as to time travel and pretend that all transfers ever made by the Non-Debtor Transferors were transfers made by the Debtor and (for post-petition transfers) subject to Bankruptcy Court approval. Indeed, modern Supreme Court precedent rejects this form of substantive retroactive or *nunc pro tunc* relief, and there is no state decisional law to support such extreme relief. The handful of courts to consider whether state law alter ego doctrine can be used retroactively in conjunction with the unique powers provided to a debtor under the Bankruptcy Code to attack transfers to third parties have rejected its use as inequitable.

While the Trustee will claim that this Court's previous decisions are preclusive on all issues as to the Joint Defendants, he is mistaken. Because the Joint Defendants and the precise issues at play here were not squarely before the Court in the Alter Ego Adversaries, this brief is the first opportunity to actually litigate the issue of whether the alter ego rulings confer standing on the Trustee to sue the Joint Defendants. In any event, the discretionary doctrines of collateral estoppel and law of the case are plainly not applicable. Those doctrines do not apply to default judgments, nor can they apply to the Joint Defendants, who received no notice of and were not parties to the Alter Ego Adversaries.

For the reasons set forth below, the Court should grant the Motion and dismiss the Joint Defendant Adversaries with prejudice.

## **BACKGROUND**

1.        On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Dkt. No. 1.)[4] There are only three debtors in these jointly administered chapter 11 cases: the Debtor, Genever Holdings LLC, and Genever Holdings Corporation (collectively, the "Debtors"). With one exception,[5] the Joint Defendants were not identified in the Debtors' schedules or included on the creditor mailing matrices in this case. (*See, e.g.*, Debtors' Schedules, Dkt. Nos. 1157, 78, 4; Amended List of Creditors for Ho Won Kwok, Dkt. No. 1043; and Amended List of Creditors for Genever Holdings Corporation, Dkt. No. 1163.)

2.        On June 15, 2022, this Court entered its *Memorandum of Decision and Order Denying Motion to Dismiss Without Prejudice and Granting Joinder to Motion for Appointment of*

---

[4] Unless otherwise indicated, references to Dkt. Nos. are references to the main bankruptcy case docket.

[5] Clayman Rosenberg Kirshner & Linder LLP appears in Schedule F at Dkt. No. 78 and Exhibit A at Dkt. No. 1043.

*Chapter 11 Trustee.* (Dkt. No. 465.) On July 8, 2022, the Court entered an order appointing Luc A. Despins as the Trustee. (*See* Dkt. No. 523.)

3.       On January 20, 2023, the claims agent filed an Affidavit of Service with respect to the Bar Date Notice and Publication Notice. (*See* Dkt. No. 1360.) The Joint Defendants are not on the service list. [6] (*See id.*) On January 17, 2023, the Trustee filed an affidavit of publication of the notice of the bar date for filing proofs of claim. (*See* Dkt. No. 1336.) The notice only references the Debtors to these proceedings. It does not reference any of the Non-Debtor Transferors.

4.       Earlier this year, the Trustee commenced a far-reaching litigation campaign of more than 270 adversary proceedings, seeking to avoid allegedly fraudulent transfers under 11 U.S.C. §§ 544 and 548, and applicable state fraudulent transfer law, as well as post-petition transfers under 11 U.S.C. § 549 made by the Non-Debtor Transferors. The Trustee's litigation targets include entities that had business relationships and provided goods or services to the Non-Debtor Transferors. The Joint Defendants include numerous legitimate third-party providers of goods and services, including landscapers, landlords, movers, IT providers, and retailers, as well as well-known companies, such as Amazon Web Services, Inc., Amazon.com, Inc., Apple, Inc., American Express Company,[7] Anthem Health Plans Inc., Cloudflare, Inc., Federal Express Corporation, Fox News Network, LLC, Hilton Management, LLC, and Meta Platforms Inc.

5.       The Trustee alleges, in many of the Joint Defendant Adversaries, that the alleged transfers by the Non-Debtor Transferors were made in furtherance of a self-concealing shell game orchestrated by the Debtor to hinder, delay, or defraud creditors. In many instances, however, the complaints do not allege with any factual specificity the relationship between the Non-Debtor

---

[6] The exception is Clayman Rosenberg Kirshner & Linder LLP.

[7] American Express Company is a holding company, and itself is not an issuer of credit cards.

Transferor and the Debtor, or how the transfers furthered the Debtor's shell game.[8]

6.    The Alter Ego Adversaries were commenced in 2022 and 2023, before the Joint Defendant Adversaries were commenced.   In those adversaries, the Trustee has obtained determinations that the Non-Debtor Transferors are and always were alter egos of the Debtor.  With respect to all but two, the Trustee obtained default judgments against the Non-Debtor Transferors. A summary of the actions in which the Trustee has obtained an alter ego determination is set forth below (collectively, the "Alter Ego Adversaries").

| Case Caption | Alleged Alter Ego Entity | Current Status |
|---|---|---|
| *Despins v. HK International Funds Investments (USA) Limited, LLC, et al.,* No. 22-05003 ("HK USA") | • HK International Funds Investments (USA) Limited, LLC | • Summary judgment in favor of the Trustee (Dkt. No. 221)<br>• Affirmed on appeal (Dkt. No. 260)<br>• Appeal to Second Circuit Court of Appeals pending (Dkt. No. 264) |
| *Despins v. Golden Spring (New York) Ltd. et al.,* No. 23-05018 ("Golden Spring") | • Golden Spring (New York) Ltd.<br>• China Golden Spring Group (Hong Kong) Limited | • Default judgment (Dkt. No. 35) |
| *Despins v. Lamp Capital LLC, et al.,* No. 23- 05023 ("Lamp Capital") | • Lamp Capital LLC<br>• Infinity Treasury Management Inc.<br>• Hudson Diamond NY LLC<br>• Leading Shine NY Ltd. | • Default judgment (Dkt. No. 66) against Lamp Capital LLC and Infinity Treasury Management with appeal pending (Dkt. No. 68).<br>• Summary judgment pending with respect to Hudson Diamond NY LLC and Leading Shine NY Ltd. (Dkt. No. 97). |

---

[8] Complaints against numerous Joint Defendants rely on boilerplate, non-specific assertions such as: "The Transfers at issue in this Complaint were made with the intent to hinder, delay, and/or defraud the Debtor's creditors inasmuch as they were all made through the Debtor's alter-ego shell companies operated as part of the Debtor's shell game." (*See, e.g., Despins v. Amazon Web Services, Inc.*, Adv. Pro. No. 24-05006, Dkt. No. 4 ¶ 31).

| | | |
|---|---|---|
| *Despins v. HCHK Techs, Inc., et al.*, No. 23-05013 ("<u>HCHK</u>") | • HCHK Technologies, Inc.<br>• HCHK Property Management, Inc.<br>• Lexington Property and Staffing, Inc. | • Default judgment (Dkt. No. 290)<br>• Appeal pending (Dkt. No. 298) |
| *Despins v. Greenwich Land, LLC, et al.*, No. 23-05005 ("<u>Greenwich</u>") | • Greenwich Land, LLC | • Summary judgment in favor of the Trustee (Dkt. No. 133)<br>• Appeal pending (Dkt. No. 137). |

7. The Non-Debtor Transferors are Delaware entities.[9]

8. This Court's rulings allowing reverse veil-piercing against the Non-Debtor Transferors did not consider the effect of the alter ego determinations on the Joint Defendants. The defendants in the Alter Ego Adversaries were limited to the above-referenced Non-Debtor Transferors. Accordingly, the Court's rulings did not consider whether the Trustee could use the alter ego determinations to then harness the avoidance powers provided under Chapter 5 of the Bankruptcy Code against non-parties to those proceedings.

## **LEGAL ARGUMENT**

**A.    Trustee's Avoidance Claims Fail as a Matter of Delaware Law, Because Reverse Veil-Piercing Is Not Permitted If It Will Result in Significant Prejudice to Unknowing Third-Party Creditors of the Purported Alter Ego Entity.**

Reverse veil-piercing permits a downstream alter ego affiliate to be held liable for the debts of its upstream parent. On the threshold issue of whether such reverse veil-piercing is permitted under controlling Delaware law, the initial question is whether the Court's prior reverse veil-piercing rulings can be applied against the Joint Defendants, if such application would result in

---

[9] According to the Trustee's own allegations the Non-Debtor Transferors are Delaware entities. *See* Complaint ¶ 8, Dkt. No. 1, Adv. Pro. No. 23-5018 (Golden Spring (New York) Ltd.); Complaint ¶ 8, Dkt. No. 1, Adv. Pro. No. 23-05005 (Greenwich Land LLC); Complaint ¶¶ 9–11, Dkt. No. 1, Adv. Pro. No. 23-5013 (HCHK Technologies, Inc., HCHK Property Management, Inc., and Lexington Property & Staffing, Inc.); Complaint ¶ 8, Dkt. No. 1, Adv. Pro. No. 23-5023 (Lamp Capital LLC).

significant prejudice to unknowing third parties, such as the Joint Defendants, who were simply conducting arms-length business with the purported alter ego entities. *See Manichaean,* 251 A.3d at 710. As noted in Part E below, this specific question has not yet been before the Court, and the Court's prior rulings cannot be preclusive on this issue. The Trustee's allegations fail to meet the stringent test for reverse veil-piercing under Delaware law because the relief sought prejudices innocent third-party creditors.

The court in *Manichaean* discussed at length, and stressed repeatedly in its opinion, that reverse veil-piercing—even on a going-forward basis only—should only be permitted in "limited circumstances" and with "circumscribed execution." *Id.* at 710. The court also favorably cited cases from other jurisdictions on this issue, *id.* at 711–13, adopted the reasoning of those decisions, mentioned several times that reverse veil-piercing should be permitted only if it does not prejudice innocent and unknowing third-party creditors of the alter ego entity, and concluded as follows:

> Only in cases alleging egregious facts, ***coupled with the lack of real and substantial prejudice to third parties***, should the court ***even consider*** utilizing the reverse veil-piercing doctrine.
> . . .
> Applying this framework, Delaware courts will be well-equipped to handle the varying concerns courts and commentators have rightfully expressed regarding reverse veil-piercing. The expectations of third-party creditors and investors will be well-protected.

*Id.* at 714–15 (emphasis added); *see also, id.* at 711 ("Courts declining to allow reverse veil-piercing have relied primarily, and understandably, on a desire to protect innocent parties."); *C.F. Trust, Inc. v. First Flight L.P.*, 580 S.E.2d 806, 811 (Va. 2003) (plaintiff seeking reverse veil-piercing must also demonstrate that reverse veil-piercing will not cause harm to "innocent secured and unsecured creditors"); *Connolly v. Englewood Post No. 322 Veterans of Foreign Wars of the United States, Inc. (In re Phillips)*, 139 P.3d 639, 646 (Colo. 2006) (holding that before authorizing reverse veil-piercing, court must consider whether innocent creditors would be prejudiced as result

of such piercing).   In the process of making its ruling, the court in *Manichaean* specifically considered whether reverse veil-piercing would cause prejudice to innocent third-party creditors, and determined on the issues and facts before the court that it would not.   *Manichaean,* 251 A.3d at 718 ("There is no basis in the Complaint to infer that reverse veil-piercing will cause harm to innocent third-party creditors.").

This Court's prior orders allowing reverse veil-piercing in the Alter Ego Adversaries mentioned in passing that prejudice to innocent third-party creditors is a factor to be considered (*see, e.g.*, Adv. Pro. No. 22-05003, Dkt. No. 221, pp. 18–19), but never specifically discussed the effect of such a ruling on innocent third-party creditors, largely because the Trustee did not present that specific issue to the Court.   In the Alter Ego Adversaries, the named defendants were the purported alter ego entities themselves and certain insiders, not third-party creditors of those entities.   For example, in the Court's order in Adv. Pro. No. 22-05003 (Dkt. No. 221) finding HK International Funds Investments (USA) Limited LLC to be the alter ego of the individual Debtor, the target entity's only assets were two yachts, and the order referenced nothing in the record suggesting that vendors providing maintenance services on the yachts had not been paid, nor that the Trustee would seek to use the order to claw such payments back from those vendors.   (*See id.*, p. 28 ["[R]everse veil-piercing will also not harm the legitimate expectations of HK USA's creditors. The Court has already allowed payment of the operation, maintenance, and management expenses of the Lady May."].)

Similarly, in the Court's rulings holding the HCHK Entities to be alter egos of the Debtor (Adv. Pro. No. 23-05013, Dkt. Nos. 290, 297), the Court stated that "[i]n considering whether to reverse pierce the corporate veil, courts consider 'the traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim . . . as well as additional factors reflecting the

9

concern that creditors and other stakeholders of the entity might have their legitimate expectations thwarted.'" (Dkt. No. 290, p. 12).  But those orders did not discuss resulting prejudice to third-party creditors, or even the "additional factors," beyond the standard alter ego analysis required under *Manichaean* to be considered to justify a reverse veil-piercing ruling.  This likely is because the Trustee's complaint in that case affirmatively alleged that, to the best of his understanding at the time, "HCHK Technologies' financial creditors consist **exclusively** of multiple unnamed individuals," understood to be investors who are Chinese dissidents "whose names are being withheld for confidentiality purposes."  (Adv. Pro. No. 23-05013, Dkt. No. 1 ¶ 34 (emphasis added)); *see also*, same allegation as to HCHK Property, *id.* ¶ 37.)

In sum, this Court has never actually ruled on the issue of reverse veil-piercing in the context of prejudice to third-party creditors, like the Joint Defendants.  The Court's prior reverse veil-piercing rulings impacted only the alter ego entities themselves by imposing vicarious liability on those entities for the Debtor's debts, which is one thing.  But a ruling that substantially prejudices unknowing third parties by requiring them to disgorge large sums of money that were paid to them in exchange for the provision of goods and services to the alter ego entities—**a question that is before the Court in these cases for the very first time**—is something else altogether and, under the express holding of the court in *Manichaean*, **is expressly not permitted under Delaware law**.

Given that under *Manichaean* the absence of any significant prejudice to innocent third-party creditors is a **mandatory** requirement before the application of reverse veil-piercing, it follows that the Trustee's causes of action in these cases fail to state viable claims as a matter of Delaware law.  To be sure, the Trustee has not even purported to explain how prejudice to the Joint Defendants can be avoided when the entire purpose of his adversaries is to claw millions of dollars

of payments back from them.  Based on *Manichaean* and other authorities, the Trustee's use of the alter ego determination plainly is not permissible as a matter of law

**B.    The Trustee's Avoidance Claims under 11 U.S.C. §§ 544, 548, and 549 Also Fail as a Matter of Law Because Delaware Law Only Recognizes the Vicarious Liability Theory of Reverse Veil-Piercing.**

Even if the Trustee's complaints can be viewed as stating a claim for reverse veil-piercing under Delaware law, the piercing of the Non-Debtor Transferors' corporate form does not consolidate their assets into the Debtor.  The Court has ruled that the Non-Debtor Transferors are alter egos[10] of the Debtor, but this only renders their current assets available for recovery of claims against the Debtor.  Because Delaware law applies the "vicarious liability" theory of alter ego, property of an alter ego of the Debtor does not automatically become property of the estate.  *See Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contracting of N.Y., LLC*, 536 B.R. 48, 51 (Bankr. E.D.N.Y. 2015) ("Just because two entities are *alter egos* does not make them both debtors under the Bankruptcy Code.  It simply means they are liable for each other's debts.").

The consequences of an alter ego finding vary depending on whether the state in question recognizes the "identity theory" or the "vicarious liability theory."  *See Spradlin v. Beads and Steeds Inns, LLC (In re Howland)*, 674 F. App'x 482, 486 (6th Cir. 2017) (describing "identity" theory and "vicarious liability" theory); *accord Stevenson v. William Noble Rare Jewels, L.P. (In re DuMouchelle)*, No. 19-54531, 2023 WL 8100234, at *7 (Bankr. E.D. Mich. Nov. 21, 2023), *report and recommendation adopted*, No. 2:21-CV-12087, 2024 WL 3948772 (E.D. Mich. May 21, 2024); *Evangelista v. Silver (In re Silver)*, 647 B.R. 897, 909–10 (Bankr. E.D. Mich. 2022). Under the identity theory, "piercing the corporate veil expands the debtor's estate to include the

---

[10] "Delaware courts use the terms 'piercing the corporate veil' and 'alter ego' theory interchangeably."  *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 609 n. 4 (D. Del. 2018).

property of its alter ego by deeming a corporation and its alter ego to be a single entity." *Howland*, 674 F. App'x at 486 (internal quotations omitted). Under the vicarious liability theory, however, alter ego doctrine simply "shift[s] liability from the debtor to its alter ego" and "does not create assets for or in the corporation." *Id.* (internal quotations omitted).

Delaware law, which is applicable here, falls squarely within the vicarious liability theory of the alter ego doctrine. *Otto Candies, LLC v. KPMG, LLP*, 2020 WL 4917596, at \*9 (Del. Ch. Aug. 21, 2020) (stating that the veil-piercing or alter ego doctrine is a path to vicarious liability in Delaware). An alter ego finding under Delaware law results in the alter ego being responsible for the debts of another, ***not*** a consolidation of assets. *See, e.g.*, *RS Air, LLC v. NetJets Aviation, Inc. (In re RS Air, LLC)*, 651 B.R. 538, 545 (B.A.P. 9th Cir. 2023) (holding under Delaware law that "[a]lthough the alter ego doctrine requires a showing that the two entities 'operated as a single economic entity,' . . . the result is not to deem the entities the same, but to hold one liable for the other's debts . . ." [internal citations omitted]); *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (recognizing that, under Delaware law, "the distinction between the entity and its owner 'may be disregarded' to require an owner to answer for the entity's debts") (citing *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 43 Del. Ch. 516, 521 (1968)); *Wilson v. Thorn Energy, LLC*, 787 F. Supp. 2d 286 (S.D.N.Y. 2011) (same); *BFI Waste Sys. of N. Am., LLC v. Shaw Env't & Infrastructure, Inc.,* No. 4:09CV1379 HEA, 2010 WL 5647118, at \*5 (E.D. Mo. July 30, 2010), *amended on reconsideration*, No. 409CV1379HEA, 2010 WL 4622519 (E.D. Mo. Nov. 5, 2010) (observing that under Delaware law in certain circumstances, "the alter ego doctrine allows for piercing the corporate veil so that ***liability*** can be placed on a parent corporation" (emphasis added)); *see also Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC (In re Stillwater Asset Backed Offshore Fund Ltd.)*, 559 BR 563, 586-87 (Bankr. S.D.N.Y. 2016) (rejecting alter

12

ego theory to selectively pool assets of Delaware entity with debtor entity for purposes of creating causes of action under 11 U.S.C. § 544 and stating that court "knows of no support for the idea that alter ego theories can be used in this selective and self-serving way").

As the court explained in *Manichaean*, "[a]t its most basic level, reverse veil-piercing involves the imposition of liability on a business organization for the liabilities of its owners." 251 A.3d at 710.  Even "outsider" reverse veil-piercing, which is how the Trustee describes his alter ego claims against the Non-Debtor Transferors, means that "an outside third party, frequently a creditor, urges a court to render a company liable on a judgment against its member." *Id.* (internal quotations and citations omitted).  In other words, Delaware applies alter ego liability as a form of vicarious liability, not a merger of identities or substantive consolidation.

Here, even if the Non-Debtor Transferors are deemed vicariously liable for the Debtor's obligations, they are not the Debtor and their assets are not property of the Debtor's estate.  This is fatal to the Trustee's avoidance claims and mandates dismissal.  The Sixth Circuit Court of Appeals decision in *Howland* is directly on point.  In that case, the trustee sought to avoid a pre-petition transfer of real estate by the debtors' limited liability company, Meadow Lake Horse Park, LLC ("Meadow Lake"), to a third-party buyer.  674 Fed. App'x. at 483–84.  The trustee asserted that the property at issue was property of the debtors on the basis of reverse veil-piercing the corporate form of Meadow Lake to its owners, the debtors.  *Id.* at 484.  Meadow Lake was a Kentucky limited liability company, and, accordingly, the court applied Kentucky law to determine whether piercing Meadow Lake's corporate form would make Meadow Lake's property the debtors' property.  *Id.* at 485–86.  Because Kentucky, like Delaware, follows the vicarious liability theory, this "dooms the trustee's fraudulent transfer claims against [the buyer] under a veil piercing theory."  *Id.* at 487.  The court reasoned that under the "vicarious liability approach, . . . veil

piercing does not give the pierced entity (*i.e.*, the debtor) an interest in the alter ego's assets . . . ." *Id*. Accordingly, the court dismissed the trustee's avoidance claim. *Id*.

Similarly, in *In re Wardle*, the Ninth Circuit BAP determined that the trustee did not have standing to pursue chapter 5 avoidance action claims of a non-debtor entity, stating that an "alter ego determination will not somehow transmogrify [the alleged alter ego's] funds into property of debtors' estate" and that "[u]nless and until [the entity] is a debtor, either by a filed bankruptcy petition or by substantive consolidation, there is no corporate bankruptcy estate and, thus, the trustee cannot pursue § 547 and § 548 actions in its name." *Grimmett v. McCloskey (In re Wardle)*, No. S-03-01467, 2006 WL 6811026 (9th Cir. B.A.P. Jan. 31, 2006) (applying Nevada reverse veil-piercing law); *accord Silver*, 647 B.R. at 909–10 (rejecting fraudulent transfer claims based on transfers from debtor's alter ego company formed under Michigan law, which applies vicarious liability approach); *DuMouchelle*, 2023 WL 8100234, at *7 (same).

Under Delaware law, the Court's determination that the Non-Debtor Transferors were alter egos of the Debtor means only that the Non-Debtor Transferors are vicariously liable for the Debtor's obligations to his creditors. It does not mean that the Non-Debtor Transferors' assets are or were the Debtor's assets and thus subject to avoidance under Chapter 5 of the Bankruptcy Code.

### 1. None of the Cases Cited by the Trustee Constitute the Adoption of the Identity Theory of Alter Ego Doctrine under Delaware Law.

In pending proceedings before this Court, the Trustee has cited the following cases to support his erroneous position that Delaware follows the identity theory: *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, PLLC,* 275 B.R. 737, 742 (Bankr. D. Md. 2001); *Smith v. Richels (In re Richels)*, 163 B.R. 760, 763 (Bankr. E.D. Va. 1994); *Searcy v. Knight (In re American Int'l Refinery)*, 402 B.R. 728, 748 (Bankr. W.D. La. 2008); *Parker v. Titan Mining (US) Corp. (In re Star Mountain Res., Inc.)*, No. 2:18-BK-01594-DPC, 2020 WL 6821721, at *5 (Bankr. D. Ariz.

Sept. 30, 2020).  Although these cases do apply the identity theory of alter ego, none of them rely upon Delaware law in doing so.

The Trustee also may attempt to rely on *Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, No. 7994–VCN, 2016 WL 769586, *3 (Del. Ch. Feb. 18, 2016). The *Spring Real Estate* court, discussing alter ego as the exception to insulated liability, states, *in dicta*, "where the subsidiary is a mere alter ego of the parent to the extent that the Court may engage in 'reverse veil-piercing,' the Court may treat the assets of the subsidiary as those of the parent for purposes of a trustee's standing to void allegedly fraudulent transfers of such assets." *Id.* (citing *In re American Int'l Refinery*, 402 B.R. at 742–46).  The authority for the proposition cited to in *American Int'l Refinery*, however, is **not Delaware law**.  *American Int'l Refinery* was decided by the U.S. Bankruptcy Court for the Western District of Louisiana and explicitly applied Nevada law, which follows the identity theory.  402 B.R. at 742–46. In any event, the *Spring Real Estate* court dismissed the avoidance claim asserted by the trustee of a parent company with respect to transfers made by its subsidiary company, which reduced the value of the parent's equity interests in the subsidiary. *Spring Real Estate*, 2016 WL 769586, *3.

Other cases that may appear to justify the use of the identity theory also fail to represent Delaware law as to the impact of an alter ego determination. The court in *ASARCO LLC v. America's Mining Corp.*, 382 B.R. 49, 66 (S.D. Tex. 2007), purports to apply Delaware law in determining that a complaint contained sufficient allegations to plead a claim for alter ego. Specifically, the *ASARCO* court miscited *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. Ch. 1968), as Delaware law for the proposition of identity theory.

In *Pauley Petroleum*, however, a Delaware company sued another Delaware company to compel it to exercise control over its wholly owned Mexican subsidiary and stop the Mexican

subsidiary from prosecuting litigation in Mexico.  The case did not involve an attempt to collapse entities for purposes of defining property of a bankruptcy estate.  In fact, the *Pauley* court's comment did not relate to any matter that was at issue in the lawsuit, and the apparent identity theory language does not derive from the law cited in *Pauley*.  Specifically, *Pauley* relied on the following authorities for this point, none of which supports the adoption of the identity theory: 1 *Fletcher, Cyclopedia Corporations* (Perm.Ed.), § 41 (discussing various elements to alter ego and extension of "liability" to alter ego entity); *Martin v. D. B. Martin Co.*, 10 Del. Ch. 211, 88 A. 612, 102 A. 373 (1913) (holding that, in discovery dispute, holding company could be compelled to produce books and records of its subsidiary companies); *Equitable Trust Co. v. Gallagher*, 34 Del. Ch. 76, 99 A.2d 490, 493–94 (1951) (holding that enforceable contract to assign shares of stock to decedent in exchange for her relinquishment of rights to shares held in trust when defendant repeatedly admitted that he was  trustee of the corporation); *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 38 Del. Ch. 490, 154 A.2d 684, 687 (1959) (holding that "creditor of the parent corporation may not, in the absence of fraud, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent").

In short, Delaware has not subscribed to the identity theory of alter ego, and any cases indicating that it may do so fail to cite any Delaware law as controlling authority.

### 2.    This Court's Prior Alter Ego Rulings Fail to Cite Delaware Law for Identity Theory.

This Court has made certain rulings concerning the purported identity effect of alter ego; however, the Court has not cited any applicable Delaware law in support thereof.  In related proceedings, the Court relied on a combination of Delaware cases applying vicarious liability theory of alter ego and summarily citing sections 541 and 542 of the Bankruptcy Code to hold that

the Non-Debtor Transferors' property becomes property of the estate.  Yet, the cases the Court cites do not adopt the identity theory.  And nothing in sections 541 or 542 of the Bankruptcy Code expands property of the estate to non-debtors through application of vicarious liability.

Section 541(a) of the Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  The Bankruptcy Code does not, however, define a debtor's legal or equitable interests.  Rather, "a debtor's property interests are created and defined by state law." *Cerrato v. BAC Home Loans Servicing (In re Cerrato)*, 504 B.R. 23, 29 (Bankr. E.D.N.Y. 2014) (*citing Butner v. U.S.*, 440 U.S. 48 (1979)).  A bankruptcy filing does not create new property interests or enhance those existing state law property interests.  *See Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 751 (3d Cir. 2013) ("'However, '[f]iling for bankruptcy does not create new property rights or value where there previously were none.'"); *Fed. Aviation Admin. v. Gull Air, Inc. (In re Gull Air, Inc.)*, 890 F.2d 1255, 1261–62 (1st Cir. 1989); *Multnomah Cty. v. Rudolph (In re Rudolph)*, 166 B.R. 440, 443–44 (D. Or. 1994); 5 COLLIER ON BANKRUPTCY ¶ 541.01 (16th ed. 2024) ("[T]he estate can only succeed to the same property interest that the debtor possesses, not a greater interest.").  Section 542 of the Bankruptcy Code simply provides for the turnover of property of the estate to the trustee.  Section 542 does not expand the definition of property of the estate under section 541.

As an example, in a decision related to HK USA[11] the Court held as follows:

> Alter ego and/or piercing the corporate veil as sought by the Second Counterclaim renders one entity liable for the debts of another individual or entity. *Tronox*, 549 B.R. at 44 ("Under Delaware law, veil piercing is a doctrine of equity. . . . Veil piercing is thus not a purely independent cause of action. Instead, piercing the corporate veil effectively amounts to the imposition of joint and several liability

---

[11] *Despins v. HK Int'l Funds Invs. (USA) Limited, LLC, et al.*, Adv. Pro. No. 22-05003 (JAM) (the "HK USA Adversary"), Dkt. No. 222, *Memorandum of Decision and Order Granting Motion for Partial Summary Judgment on Second Counterclaim*, p. 25, May 18, 2023.

between a direct actor and its corporate affiliate for some underlying wrong committed by the direct actor.") In conjunction with sections 541 and 542, alter ego thus accomplishes the transfer of assets into the bankruptcy estate.

The Court cited Delaware law correctly for alter ego veil-piercing, making HK USA liable for the obligations of the Debtor, but did not discuss how this claim of vicarious liability mutates "in conjunction with 541 and 542" to become assets of the Debtor.  However, Delaware law stops at the imposition of vicarious liability of HK USA.

As a further example, in the HCHK Adversary,[12] the Court parsed the facts pled in the Trustee's complaint in consideration of a default judgment against the HCHK Entities (as defined in the HCHK Adversary) and granted a default judgment in favor of the Trustee as follows:

> Therefore, with respect to the First Claim, the Trustee is entitled to default judgment that the HCHK Entities are the alter egos of the Individual Debtor. *Micaklis Pawn*, 645 F.3d at 137; *Bostick*, 400 B.R. at 354–55. On this basis, the Trustee is entitled to default judgment that the property of the HCHK Entities is property of the Estate and that the property of the HCHK Entities be turned over to the Estate via delivery to the Trustee. 11 U.S.C. §§ 541, 542; *Micaklis Pawn*, 645 F.3d at 137; *Bostick*, 400 B.R. at 354–55.

However, both *The City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) and *Adams v. Bostick (In re Bostick)*, 400 B.R. 348 (Bankr. D. Conn. 2009) deal with the standard for a default judgment, and neither discusses alter ego.  The inclusion of references to sections 541 and 542 does not create rights in property of the estate.  Again, the cited authority to impose identity theory alter ego does not reference any supporting Delaware legal authority.

### 3.     The Trustee Seeks Substantive Consolidation Without Alleging Substantive Consolidation.

In truth, although he has not sought this relief, the Trustee's alter ego theory is a circumventive attempt to substantively consolidate the Non-Debtor Transferors and their assets

---

[12] *Despins v. HCHK Techs., Inc., HCHK Prop. Mgmt., Inc., et. al.*, Adv. Pro. No. 23-05013 (JAM) (the "HCHK Adversary"), Dkt. No. 290, *Memorandum of Decision and Order Granting Motion for Default Judgment*, p. 19, June 14, 2024.

with the Debtor's estate.  But an alter ego finding is not equivalent to substantive consolidation.  *See Howland*, 674 Fed. App'x at 487–88 ("Although similar in some ways to veil piercing, substantive consolidation is a distinct concept unique to bankruptcy law.").  Unlike an alter ego finding under the vicarious liability theory, substantive consolidation "treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets ***and liabilities*** . . . .  The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor."  *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) (quotation omitted) (emphasis added).

Substantive consolidation of the Non-Debtor Transferors with the Debtor's estate, to the extent it is even allowed in this Circuit,[13] requires the Trustee to provide parties in interest with notice and an opportunity to be heard to ensure that creditors receive due process.  *See Schwab v. Shelly Enters. (In re Clearview Builders, Inc.)*, 405 B.R. 144, 148 (Bankr. M.D. Pa. 2009) ("Substantive consolidation is such an extreme remedy impacting both party and creditor alike that it can only be preceded by such specificity and notice as to guarantee the due process right to be heard of all parties in interest.").  It would be absurd to allow the Trustee to back into such extreme relief without providing the requisite due process for interested parties and meeting the stringent test for substantive consolidation given the havoc that it can wreak on innocent creditors.  *See In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988) (requiring that "creditors dealt with the entities as a single economic unit" or that "the affairs of the debtors are so entangled that consolidation will benefit all creditors").  Indeed, the Trustee does not allege a claim for substantive consolidation, nor has he sought this relief, because he cannot meet the requirements of this test.

---

[13] *Stillwater*, 559 B.R. at 586 (noting split among courts on whether non-debtor can be substantively consolidated with debtor and calling such relief "unusual").

Even the extreme remedy of substantive consolidation cannot be used offensively to disadvantage a group of interested parties. *In re Bauman*, 535 B.R. 289, 300 (Bankr. C.D. Ill. 2015). Thus, the Trustee's alter ego end-run in the Joint Defendant Adversaries cannot achieve that same end under a less stringent standard. *Cf. Stillwater*, 559 B.R. at 586–88 (rejecting use of alter ego as run around for substantive consolidation to create § 544 standing).

### C.    The Trustee's Section 549 Claims Fail as a Matter of Law Because the Trustee Cannot Use the Alter Ego Doctrine on a *Nunc Pro Tunc* Basis.

Even assuming, *arguendo*, that Delaware employed the identity theory of veil-piercing, the Trustee's section 549 claims still fail as a matter of law because such substantive relief cannot be provided on a retroactive or *nunc pro tunc* basis. Putting aside that there are no reported decisions in Delaware employing alter ego relief on a retroactive or *nunc pro tunc* basis, the handful of courts to consider the use of the alter ego doctrine in this retroactive manner reject it outright, and the U.S. Supreme Court recently shut the door on such retroactive relief.

### 1.    To Establish a Claim under 11 U.S.C. § 549, the Trustee Must Allege and Prove That Property of the Bankruptcy Estate Was Transferred After the Commencement of the Debtors' Bankruptcy Cases.

To avoid a post-petition transfer under section 549, the Trustee must, *inter alia*, allege that (i) the property transferred post-petition by the Non-Debtor Transferors to the Joint Defendants was property of the Debtor's bankruptcy estate and (ii) the property was transferred after the commencement of the case. *See* 11 U.S.C. § 549(a). With regard to these two prongs, the Trustee's allegations appear to be that the Non-Debtor Transferors' property was property of the Debtor's estate on the Petition Date because the Non-Debtor Transferors are alter egos of the Debtor and, thus, any transfers after the Petition Date by the Non-Debtor Transferors were transfers of the

Debtor after the commencement of the case.[14]   However, "[u]nder [11 U.S.C. §] 541(a), and with a few enumerated exceptions, the bankruptcy estate consists of all of the ***debtor's*** legal and equitable property interest that existed ***as of the commencement of the case***, that is, as of the time that the bankruptcy petition, voluntary or involuntary, is filed." 5 COLLIER ON BANKRUPTCY, *supra*, ¶ 541.02, p. 541–12 (emphasis in original).   If the transferred property was not property of the estate, it is not subject to a § 549 claim.  *See, e.g.*, *Boscarino v. Vachhani (In re Vachhani)*, No. 18-02009, 2019 WL 303078, at *5 (Bankr. D. Conn. Jan. 22, 2019).

Here, as of the Petition Date, there was no order or judgment disregarding the corporate form of the Non-Debtor Transferors.   Thus, the Trustee's theory of avoidance under section 549 hinges on rewriting the factual circumstances that existed on the Petition Date by disregarding the corporate form of the Non-Debtor Transferors retroactively to the Petition Date and consolidating their assets with the Debtor.  Both state and federal law disallow this theory.

## 2.    Applying the Alter Ego Doctrine Retroactively Is *Nunc Pro Tunc* Relief.

As noted above, the nature of the alter ego relief sought by the Trustee is akin to the equitable remedy of substantive consolidation.[15]   The Second Circuit described substantive consolidation as an extreme remedy that "usually results in, *inter alia*, pooling of assets of, and

---

[14] *See, e.g.,* Complaint ¶ 16, Dkt. No.1, Adv. Pro. No. 24-05112, *Despins v. Empire Blue Cross Blue Shield*.

[15] The Third Circuit Court of Appeals has contrasted these types of remedies as follows:

> "Piercing the corporate veil makes shareholders liable for corporate wrongs. Equitable subordination places bad-acting creditors behind other creditors when distributions are made. Turnover and fraudulent transfer bring back to the transferor debtor assets improperly transferred to another (often an affiliate). Substantive consolidation goes in a direction different (and in most cases further) than any of these remedies; it is not limited to shareholders, it affects distribution to innocent creditors, and it mandates more than the return of specific assets to the predecessor owner. It brings all the assets of a group of entities into a single survivor. Indeed, it merges liabilities as well. "The result," to repeat, "is that claims of creditors against separate debtors morph to claims against the consolidated survivor."

*In re Owens Corning*, 419 F.3d at 206.  Like the substantive consolidation described in *Owens Corning*, the Trustee's alter ego theory here seeks to bring all the assets of a group of entities (the Non-Debtor Transferors) into a single survivor (the Debtor).

claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans." *Augie/Restivo*, 860 F.2d at 518 (citing 5 COLLIER ON BANKRUPTCY § 1100.06, at 1100–32 n.1 (L. King ed. 15th ed. 1988)).  It is "to 'be used sparingly.'"  *Id*.

Historically, bankruptcy courts have, on occasion, ordered substantive consolidation *nunc pro tunc*.  Because substantive consolidation is an extreme remedy that should be used sparingly, an even more searching inquiry is required when it is sought on a *nunc pro tunc* basis.  *See, e.g.*, *In re Auto-Train Corp., Inc.*, 810 F.2d 270, 276 (D.C. Cir. 1987) (observing that "additional and slightly different balancing process" must be invoked "before using its equitable *nunc pro tunc* powers to give a consolidation order retroactive effect"); *Matter of New Ctr. Hosp.*, 187 B.R. 560, 572 (E.D. Mich. 1995) (reversing substantive consolidation *nunc pro tunc* when more searching analysis of impact on creditors was not performed).

In *Auto-Train*, 810 F.2d at 276, the court observed that such closer scrutiny was required due to the impact of creditor exposure in avoidance actions.  In particular, the court held that *nunc pro tunc* consolidation could wreak havoc on creditors' expectations for preference exposure by altering the 90-day lookback period solely "on the basis of a bankruptcy filing by their debtor's apparently distinct affiliate."  *Id*.  The court explained the potentially disastrous impact of altering the facts by issuing such *nunc pro tunc* relief as follows:

> Were bankruptcy courts permitted to consolidate entities *nunc pro tunc* without regard to transferees' reliance on an entity's apparent separateness, a sign of weakness in any member of a family of corporations would lead creditors to descend on each member, strong or weak, to claim their pound of flesh. Such a rule would also sharpen people's natural reluctance to extend credit to any affiliate of a financially troubled corporation. This in turn would imperil the ability of financially sound affiliates to continue operations and help the more troubled ones out of their predicament.

*Id*. at 277.

The *Auto-Train* court's concerns are even more grave for section 549 claims. While preference claims are subject to defenses to protect trade creditors under section 547(c), similar defenses are not available under section 549, which compels debtors and their counterparties to obtain court approval when entering into certain transactions. If substantive consolidation is applied retroactively to the petition date, any transfers made by the non-debtor after its affiliate's petition date would be subject to avoidance as though the non-debtor was in bankruptcy. This re-characterization of the historical facts and circumstances creates an unknowing risk for creditors that deal with the non-debtor after the petition date. Moreover, it robs them of the opportunity to have obtained court orders clarifying whether the transactions that they were being asked to engage in were approved by the bankruptcy court or within the ordinary course of business under 11 U.S.C. § 363(b). Indeed, the absurdity of the Trustee's position is made even more clear by the fact that Congress carved out from avoidance post-involuntary petition "gap period" transfers that were made in exchange for value, ***notwithstanding any notice or knowledge of the case that the transferee has***. *See* 11 U.S.C. § 549(b). Under the Trustee's view of the Bankruptcy Code, counterparties who deal with an entity subject to an involuntary bankruptcy petition have more protection than the Joint Defendants here, who were dealing with non-debtors that were not subject to any bankruptcy proceeding whatsoever.

These concerns were on display in *Bauer v. General Elec. Capital Corp. (In re Oncology Assocs. of Ocean Cnty., LLC)*, 510 B.R. 463 (Bankr. D.N.J. 2014). In that case, the debtor, Oncology Associates of Ocean County, LLC ("OAOC"), filed a voluntary petition under Chapter 11 and a trustee was appointed about ten months later. *Id*. at 465. Arising out of a concern of assets being diverted to affiliates, the trustee obtained an order to substantively consolidate the estates of two affiliated companies, including Modern Radiation and Oncology of Ocean County,

LLC ("Modern"), which had not filed for bankruptcy until about a year after OAOC. *Id*. at 465 n.1. The trustee commenced avoidance litigation against two defendants, in which he sought to avoid transfers from Modern to the defendants that were made after OAOC's petition date, but before Modern's petition date, under 11 U.S.C. § 549. *Id*. at 466–68.

The court dismissed the trustee's section 549 claims because the transfers were made prior to Modern's petition date and the court rejected the trustee's attempt to use the earlier petition date of OAOC for purposes of applying section 549. *Id*. at 468. The court held that the transferor was not in bankruptcy at the time of the transfers, and, thus, the transferred property was not property of the estate. *Id*. The court rightfully observed: "Quite simply, on the date the transfers occurred, Modern was not in bankruptcy and its assets were not property of the bankruptcy estate. One wonders how any attorney could have counseled the transferees as to risks associated with post-petition transfers where the transferor was **not** in bankruptcy." *Id*. (emphasis in original).

Similarly, in *Giuliano v. Shorenstein Co., LLC (In re Sunset Aviation, Inc.)*, 468 B.R. 641 (Bankr. D. Del. 2011), the court held that substantive consolidation, which was not entered *nunc pro tunc*, did not automatically apply retroactively to alter the petition dates of three debtor-affiliates to the earliest possible date for purposes of prosecuting avoidance claims under, *inter alia*, section 549. *Id.* at 643, 645–49. Thus, the court dismissed the trustee's section 549 claim because the transfers were made prior to the transferor's bankruptcy filing. *Id.* at 645–51.

Here, as noted above, the Trustee does not assert a substantive consolidation claim; yet, his alter ego theory necessitates consolidating all the Non-Debtor Transferors' assets into the Debtor, almost identical to the relief afforded in substantive consolidation. The substantive consolidation case law instructs that whether or not that relief is granted *nunc pro tunc* will determine the viability of section 549 claims, as well as other avoidance claims. Thus, the only way for the Trustee to

assert a viable claim under section 549 is for the alter ego determination to be *nunc pro tunc* to the

Petition Date. As described below, whether viewed under state or federal law there is no support

for the retroactive application of the alter ego doctrine in these circumstances.

>   **3.     The Supreme Court's Decision in *Acevedo* Precludes *Nunc Pro Tunc* Alter Ego Relief in these Adversary Proceedings.**

The Supreme Court's decision in *Roman Cath. Archdiocese of San Juan, Puerto Rico v.*

*Acevedo Feliciano*, 589 U.S. 57 (2020), precludes this type of retroactive relief because it

substantively alters the rights of non-debtors by creating new facts that did not exist before or on

the petition date.   In *Acevedo*, a case was removed from a Puerto Rican court to federal district

court based on the bankruptcy filing of a party.  589 U.S. at 63.  After the dismissal of the party's

bankruptcy case, the federal district court remanded the litigation to the Puerto Rican court on a

*nunc pro tunc* basis back to the date of the bankruptcy's dismissal; however, the Puerto Rican court

had entered various orders after the dismissal of the bankruptcy and before the remand order was

entered.  *Id.* The Supreme Court held that the Puerto Rican court lacked jurisdiction to enter any

orders once the case had been removed to federal court and emphasized that any post-removal

actions taken by the court were void.  *Id.* at 63–64.  Most importantly, the Supreme Court held that

remanding the case *nunc pro tunc* to the date of the bankruptcy dismissal was improper.  *Id.* at 65.

In clarifying the appropriate use of *nunc pro tunc* orders, the Supreme Court held that "[n]unc pro

tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never

occurred in fact" resulting in a substantive alteration of the legal landscape—but rather are limited

to correcting inadvertent procedural errors.  *Id.* (alteration in original) ("Such a decree presupposes

a decree allowed, or ordered, but not entered, through inadvertence of the court.").  Simply put,

the Supreme Court held that a court cannot use *nunc pro tunc* orders to "make the record what it

is not."  *Id.*

Since *Acevedo*, courts are careful not to use *nunc pro tunc* orders as a tool for rewriting history or substantively altering the legal landscape, reserving their use for correcting the record to match what happened or should have happened procedurally. For example, in *In re Torres*, No. 21-20483 (JJT), 2021 WL 2189515, at *3 (Bankr. D. Conn. May 28, 2021), the Court held that *Acevedo* barred the debtors' request to retroactively amend their petition to make the requisite certification under section 362(l)(1) to prevent the applicability of section 362(b)(22) to continue the stay of eviction proceedings. Similarly, in *In re Donghia, Inc.*, No. 20-30487 (JJT), 2020 WL 2465503, at *3 (Bankr. D. Conn. May 12, 2020), the Court, applying *Acevedo,* denied the trustee's request to reject a lease retroactively to the petition date, which would relieve the estate of significant post-petition rent obligations, because the trustee failed to demonstrate exceptional circumstances warranting such relief. Other courts outside of this District hold similarly. *See, e.g.*, *In re Telles*, No. 8-20-70325-REG, 2020 WL 2121254, at *5 (Bankr. E.D.N.Y. Apr. 30, 2020) (denying, under *Acevedo*, *nunc pro tunc* stay relief to validate a foreclosure sale that occurred in violation of automatic stay); *In re Zvoch*, 618 B.R. 734, 740 (Bankr. W.D. Pa. 2020) (doubting that court could approve post-petition lending in Chapter 13 case *nunc pro tunc* in light of *Acevedo*).

After *Acevedo*, courts must be vigilant to not use this equitable power to create "'facts' that never occurred in fact" resulting in a substantive alteration of the legal landscape. *Acevedo*, 589 U.S. at 65. Here, the relief sought by the Trustee in his complaint fundamentally seeks to create facts that never occurred, the result of which is to alter substantially the legal landscape. When the challenged transfers allegedly occurred, the property transferred belonged to the Non-Debtor Transferors, and on each of those dates, the Non-Debtor Transferors were not debtors in bankruptcy. The Trustee seeks to alter these two key facts. By changing those two key facts, the legal landscape is fundamentally altered prejudicially for the Joint Defendants for the reasons

described herein.  This is impermissible under *Acevedo*.  The unavailability of such retroactive relief is fatal to the Trustee's section 549 claims.

Finally, even if *Acevedo* is read narrowly as solely barring *nunc pro tunc* relief to retroactively create jurisdiction, the Trustee's section 549 claims still fail as a matter of law.  By seeking to consolidate a non-debtor's assets into the Debtor's estate retroactive to the Petition Date, the Court is in essence being asked to extend its *in rem* jurisdiction over assets for a period of time when they belonged to non-debtors.  Just as the *Acevedo* court held that a state court's jurisdiction could not be created by virtue of *nunc pro tunc* relief from a federal court, it stands to reason that a bankruptcy court cannot retroactively give itself jurisdiction over assets that were not within its jurisdictional purview on the petition date.  Indeed, *nunc pro tunc* relief would be drawn from a bankruptcy court's equitable power under 11 U.S.C. § 105(a), but even before *Acevedo*, courts held that this equitable power does not give the court "unfettered power" to "drag unwilling non-debtors that never chose to file bankruptcy into a bankruptcy forum" because it "circumvents the stringent procedures and protections relating to involuntary bankruptcy cases imposed by § 303 of the Bankruptcy Code."  *In re Pearlman*, 462 B.R. 849, 854 (Bankr. M.D. Fla. 2012).

Here, using alter ego liability to consolidate the assets of the Non-Debtor Transferors into the Debtor retroactive to the Petition Date would be an extreme form of revisionist history.  It would take assets that were not part of the Debtor's bankruptcy estate on the Petition Date and, more than two years later, recategorize them as part of the bankruptcy estate.  Given the restrictions placed on the use of property of the estate under 11 U.S.C. §§ 363 and 549, this is far more than fixing a clerical or procedural error.  Accordingly, even read in its narrowest interpretation, *Acevedo* precludes this Court from using the alter ego doctrine retroactively to consolidate the assets of the Non-Debtor Transferors with the Debtor's estate as of the Petition Date.

### 4.      State Law Does Not Recognize the *Nunc Pro Tunc* Use of the Alter Ego Doctrine in This Manner.

The Joint Defendants have not identified a single reported decision under Delaware law to support the retroactive application of the alter ego doctrine.  On the other hand, the handful of courts to address the propriety of using state law to give alter ego retroactive effect to create substantive rights under the Bankruptcy Code have rejected such use in no uncertain terms.

For example, in *Covey v. Casey's General Stores, Inc. (In re Duckworth)*, No. 11-8104, 2012 WL 4434681 (Bankr. C.D. Ill. Sept. 24, 2012), the trustee brought a section 549 claim against a retailer, Casey's, which received payments from non-debtor Power Trading, the individual debtor's Indiana limited liability company, after the debtor's petition date.  *Id*. at *1–2.  The trustee's section 549 claim was premised on Power Trading being the debtor's alter ego, and, thus, the transferred funds being property of the estate retroactive to the petition date.  *Id*. at *3, 5.  The court observed that the trustee could have pursued Casey's as a mediate transferee of fraudulent transfers from the debtor to Power Trading, but did not do so, ostensibly to prevent Casey's from having access to the good faith and value defense under 11 U.S.C. § 550(b)(1).  *Id*. at *5.  Ultimately, the court rejected the trustee's "creative attempt" to use the alter ego doctrine retroactively to avoid payments made to Casey's.  *Id*. at *8–9. The court pointed out that the trustee asserted "that the alter ego doctrine may be used to recreate a different set of facts, to rewrite history so to speak, for a purpose cognizable only under bankruptcy law, with no state law corollary: to [bring a section 549 claim while depriving] a defendant of the statutory good faith transferee defense provided by section 550(b)(1)."  *Id*. at *8.  The court rejected this use of retroactive alter ego as "a gross overextension of the alter ego doctrine far beyond its identifiable state law parameters and purposes." *Id*.

Similarly, in *Lawler v. RepublicBank Dallas (In re Lawler)*, 53 B.R. 166, 168–70 (N.D.

Tex. 1985), the court rejected the debtor's retroactive use of the alter ego doctrine to avoid a foreclosure sale of property titled in the name of the debtor's alter ego after the debtor's bankruptcy filing.  In *Lawler*, the debtor had an involuntary petition filed against him in 1976; a few months later the mortgage lender on property co-owned by a trust created by the debtor conducted a foreclosure sale.  In 1979, the bankruptcy court found that the trust was the alter ego of the debtor retroactive to its inception. *Id*. at 168 n.2. The district court, however, rejected the use of the alter ego doctrine to avoid the foreclosure sale on the basis of a "decree entered three years after the facts at issue here" because it "would be a travesty" that would work an injustice on the foreclosing mortgagee.  *Id*. at 169–70.

In short, the Trustee's use of the alter ego doctrine years after the fact to create section 549 liability finds no support in any reported decision in Delaware and has been rejected by the few courts to address the issue.  This Court should similarly reject the Trustee's attempt to use an equitable doctrine to play "gotcha" with the Joint Defendants.[16]

### D.    The Trustee's Sections 544 and 548 Claims Fail as a Matter of Law Because the Transfers, When Made, Were Not from the Debtor's Property.

Even if Delaware followed the identity theory, which it does not, the Trustee's fraudulent transfer claims fail as a matter of law because the alter ego doctrine cannot be applied *nunc pro tunc* for the reasons set forth in Part C above.  That is, at the time the challenged pre-petition transfers were made, they were made by the Non-Debtor Transferors and not from any interest of the Debtor in *his* property.

Section 548(a)(1) provides for the avoidance of fraudulent transfers of "interests of the

---

[16] This does not leave the Trustee without a remedy.  He could, of course, seek to recover any alleged transfers from the Debtor to the Non-Debtor Transferees against the Joint Defendants as immediate transferees.  *See* 11 U.S.C. § 550(a)(2); *see also In re Duckworth*, 2012 WL 4434681, at *5.  Indeed, this would comport with Congress's carefully selected balance to protect unsuspecting creditors by providing a good faith and value defense. 11 U.S.C. § 550(b).

debtor in property" made "within 2 years before the date of the filing of the petition . . . ."  Similarly, 11 U.S.C. § 544(b)(1) authorizes a trustee to "avoid any transfer of an interest of the debtor in property" to the extent it is voidable under applicable law.  Any viable state law avoidance claim needs to be in existence on the petition date for it to be enforced by a trustee.  *See* 11 U.S.C. § 108(a).  To the extent that the underlying property being transferred was not property of the debtor, it is not subject to avoidance under 11 U.S.C. §§ 544(b)(1) or 548(a)(1).  *See Novak v. Univ. of Miami (In re Demitrus)*, 586 B.R. 88, 94 (Bankr. D. Conn. 2018) (dismissing trustee's sections 544 and 548 fraudulent transfer claims where alleged transfers did not constitute property of the debtor); *cf. Stillwater*, 559 B.R. at 586 (dismissing fraudulent transfer claims because transfers from alleged alter ego were not transfers from debtor's property).

Here, as discussed above in Part C, an alter ego determination cannot be given retroactive effect to create avoidance claims under state or federal law.  Accordingly, at the time the challenged pre-petition transfers were made by the Non-Debtor Transferors, the property being transferred was that of the Non-Debtor Transferors—not that of the Debtor.  Thus, each of these transfers are not avoidable as fraudulent transfers under section 544(b)(1) or section 548(a)(1) and the Trustee's claim must be dismissed.

### E.    This Court's Prior Decisions Are Not Binding on the Joint Defendants Because They Do Not Constitute Law of the Case or Collateral Estoppel.

### 1.    Collateral Estoppel (or Issue Preclusion) Does Not Apply.

The judgments entered in the Alter Ego Adversaries have no preclusive effect on the Joint Defendants because (i) all but two of the judgments were entered on default, (ii) the identical issues were not litigated, and (iii) in all circumstances the Joint Defendants did not have a full and fair opportunity to litigate the relevant issues.  As the Supreme Court has found, "[i]t is the general rule that issue preclusion attaches only 'when an issue of fact or law is actually litigated and

determined by a valid and final judgment, and the determination is essential to the judgment.'"
*Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement (Second) of Judgments §
27, p.250 (1982)). "In the case of a judgment entered by . . . default, none of the issues is actually
litigated." *Id.*

Here, because the Court entered a finding of alter ego liability by default, (*see, e.g.*, Adv.
Proc. No. 23-5013, Dkt. No. 297) in all but two of the Alter Ego Adversaries, none of the
underlying factual or legal issues for alter-ego was ever litigated.[17] In addition, the Joint
Defendants are not parties to any of the Alter Ego Adversaries.  Accordingly, even if the specific
issues outlined in this brief were determined in the Alter Ego Adversaries (which they were not,
*supra*), those judgments do not have preclusive effect in the Joint Defendant Adversaries.

The doctrine of collateral estoppel bars re-litigation of a legal or factual issue that a court
previously decided in strictly limited situations[18] where:

(1) the issues in both proceedings are ***identical***,
(2) the issue in the prior proceeding was ***actually litigated*** and actually decided,
(3) there was [a] ***full and fair opportunity to litigate*** in the prior proceeding, and
(4) the ***issue previously litigated was necessary*** to support a valid and final judgment on
the merits.

*Washington v. N.Y.C. Dep't of Educ.*, 740 F. App'x 730, 732 (2d Cir. 2018) (emphasis added).
The doctrine is inapplicable here for the following independent reasons.

First, as set forth above, the judgments entered on default in the Alter Ego Adversaries were
not actually litigated according to binding Supreme Court precedent, and, thus, are not issue

---

[17] One exception to this is Adv. Proc. No. 23-5005 (*Greenwich Land*), in which the Court granted the Trustee's Motion
for Summary Judgment. *See* Adv. Proc. No. 23-5005, Dkt. No. 133. This brief addresses *Greenwich Land's* findings.

[18] Even in these limited situations, the doctrine is discretionary. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 324
(1979). "[W]here the application of offensive estoppel would be unfair to a defendant, a trial judge in the exercise of
his discretion should not allow the use of offensive collateral estoppel." *Id*. Here, the Joint Defendants are third parties.
The Trustee does not allege that they had any special relationship with the Non-Debtor Transferors, and the Trustee's
own allegations show that the Joint Defendants dealt with the Non-Debtor Transferors well before the Trustee even
commenced the Alter Ego Adversary Proceedings.

preclusive.

Second, the legal issues in the Joint Defendants Adversaries are not identical to those determined in the Alter Ego Adversaries.  The Motion herein seeks a determination on whether the Trustee can exercise avoidance powers under Chapter 5 of the Bankruptcy Code, which was clearly not at issue in the Alter Ego Adversaries.  In addition, for the reasons described in Part A above, which are incorporated herein, Delaware law requires an assessment of the prejudicial effect of reverse veil-piercing on third party creditors, like the Joint Defendants, which did not occur.

Third, even assuming, *arguendo*, that the issues in the Alter Ego Adversaries were identical to the issues raised in these proceedings, and the parties actually litigated such issues, the Joint Defendants did not have a full and fair opportunity to litigate them—until now, of course. The Trustee does not, nor could he, allege that the Joint Defendants were parties to the Alter Ego Adversaries, had notice of them at the time he filed his complaints commencing those proceedings, or had any reason to believe that he would use judgments in those proceedings to assert avoidance action powers over the purported alter egos.

There are also no allegations in the complaints in the Joint Defendant Adversaries that the Joint Defendants even had notice of the Debtor's chapter 11 case or the alleged relationship between the Debtor and the Non-Debtor Transferors. Indeed, the record in these cases would not support such allegations. For example, the Joint Defendants have not been included on any creditor matrix filed in this case.  (*See* Dkt. Nos. 5, 1043, 1163.)[19]  Nor were the Joint Defendants served with any dispositive motions in the Alter Ego Adversaries. *See, e.g.*, Adv. Pro. No. 23-5013, Dkt.

---

[19] As discussed *supra*, the lone exception relates to Clayman Rosenberg Kirshner & Linder LLP.  Notice of Genever Holdings Corp.'s chapter 11 case (22-50542), filed on October 12, 2022, was not served on any of the Joint Defendants (*see* Case No. 22-50542, Dkt. No. 7) and it appears that no creditor's matrix was ever filed in that case.  While the U.S. Trustee served the notice of § 341 meeting for Genever Holdings Corp. on creditors, none of the Joint Defendants were listed.  (Dkt. No. 1066.)  The creditor's matrix in Genever Holdings LLC's chapter 11 case (22-50592), filed on October 12, 2022, does not list any of the Joint Defendants (Case No. 22-50592, Dkt. No. 1).

No. 110, *Trustee's Cross Motion for Default* (ECF notice only); Dkt. No. 273, *Trustee's Certificate of Service of Motion for Entry of Default Judgment*.  In sum, the Joint Defendants were not parties to the Alter Ego Adversaries and did not have any opportunity to even seek to participate in those proceedings.

In *Greenwich Land*, the defendants argued that the Court could not grant summary judgment on the issues in dispute because (among other arguments) the Trustee had failed to join necessary parties to the adversary proceeding. In response, the Court found that it "can 'accord complete relief among ***existing parties***' and none of the persons and entities named by the Greenwich Parties 'claims an interest relating to the subject of the action and is so situated that ***disposing of the action in the person's absence may . . . impair or impede that person's ability to protect the interest***; or . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.'" Adv. Proc. No. 23-5005, Dkt. No. 133, p. 6 (emphasis added). If the Court were to find that the issues addressed in this brief were already determined in *Greenwich Land*, it would contradict its own determination in *Greenwich Land* that uninvolved parties would not have their rights prejudiced by the ruling in that case.

Accordingly, collateral estoppel does not apply to the issues raised herein.

### 2.    The Law of the Case Doctrine Does Not Apply.

The discretionary law of the case doctrine provides "that a decision at one stage of a litigation can, in the Court's discretion, be determined to be binding precedent in following stages of the same litigation or to different lawsuits ***between the parties***." *Ackerman v. Schultz (In re Schultz)*, 250 B.R. 22, 35 (Bankr. E.D.N.Y. 2000) (emphasis added). Both the Second Circuit Court of Appeals and numerous district courts within this circuit have repeatedly held that, while in some

instances the law of the case doctrine can be applied in different lawsuits, it may only be applied between the same parties. *See*, *e.g.*, *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991) ("While the doctrine is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits between *the same parties*" [emphasis added]); *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 219 (2d Cir. 2002) (applying doctrine only when "the parties had a full and fair opportunity to litigate the initial determination") (quoting *People v. Bilsky*, 95 N.Y.2d 172, 17 (2000)); *United States v. Pulliam*, No. 3:21-CR-00156 (KAD), 2024 WL 1142004, at *1 (D. Conn. Mar. 15, 2024) (same); *accord Elmaliach v. Bank of China Ltd*., No. 09 CIV. 2130 (PGG), 2010 WL 1172829, at *4 (S.D.N.Y. Mar. 26, 2010); *Orshan v. Anker*, 550 F. Supp. 538, 540 (E.D.N.Y. 1982).

The case of *In re Schultz* illustrates the limitations of the law of the case doctrine.  In *Schulz*, the trustee brought, *inter alia*, a fraudulent conveyance claims against the debtor and his wife.  *Id.* at 26.  The defendants asserted that the court's rulings in another creditor's prior actions against the debtor under 11 U.S.C. §§ 727 and 523 barred the trustee's avoidance claim based on the law of the case.  *Id.* at 33–34.  The court rejected application of the doctrine, however, because "[t]his is not the same litigation or a different litigation between the same parties."  *Id.* at 35.

Likewise, in *Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311, 322 (Bankr. E.D.N.Y. 2018), the trustee opposed a defendant's motion to dismiss based in part on the law of the case doctrine, arguing that defendant made claims substantially similar to that of the debtors in a previous adversary proceeding.  The court rejected the trustee's argument, in part because the defendant was not the same party as the debtors, and applying the law of the case to the later proceeding "would deprive [defendant] of the most fundamental component of due process, the opportunity to be heard."  *Id.* at 324; *accord Speeney v. Rutgers*, 369 F. App'x 357, 360–61 (3d

Cir. 2010) (doctrine did not bar parties that lacked opportunity to litigate merits of claims in previous matter); *United States v. Dexter*, 165 F.3d 1120, 1124 (7th Cir. 1999) (doctrine cannot be used to "preclude[] a party from raising an argument that it had no prior opportunity to raise."); *Jennings v. City of N.Y.*, No. 22 Civ. 1885, 2023 WL 8462739, at *3–5 (S.D.N.Y. Nov. 22, 2023); *Corrado v. N.Y. Unified Court Sys.*, 163 F. Supp. 3d 1, 17–18 (E.D.N.Y. 2016) ("[A] party joined in an action after a ruling has been made should be free to reargue the matter without the constraints of law-of-the-case analysis."); *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n., Inc.,* No. 10 Civ. 3314, 2014 U.S. Dist. LEXIS 199601, at *11–12 (S.D.N.Y. Mar. 14, 2014); *In re NETtel Corp., Inc.*, No. 02–10122, 2007 WL 2119029, at *1 (Bankr. D.D.C. Jul. 20, 2007) (law of the case doctrine did not apply to adversary proceeding because such proceeding involved different parties as previous adversary proceeding).

As in the above cited cases, the Joint Defendants here were not parties to the Alter Ego Adversaries.  This Court should not allow the Trustee to use the law of the case doctrine to bar the Joint Defendants from defending themselves in the Joint Defendant Adversaries, thereby depriving them "of the most fundamental component of due process, the opportunity to be heard." *Brizinova*, 588 B.R. at 324.

## CONCLUSION

For the foregoing reasons, the Court should grant the Joint Defendants' Motions to dismiss or enter judgment on the pleadings in favor of the Joint Defendants, as applicable, in each of the Joint Defendant Adversaries with prejudice, and grant such other relief as justice requires.

Dated: October 18, 2024

<u>THE JOINT DEFENDANTS</u>

| | |
|---|---|
| By:  /s/ *Jeffrey Hellman*<br>Jeffrey Hellman (ct04102)<br>**LAW OFFICES OF JEFFREY HELLMAN, LLC**<br>195 Church Street, 10th Floor<br>Tel: 203-691-8762<br>New Haven, CT 06510<br>Email: jeff@jeffhellmanlaw.com<br><br>*Counsel for Ohtzar Shlomo Solomon*<br>*Treasure LLC and Jason Miller* | By:  /s/ *Eric S. Goldstein*<br>Eric S. Goldstein (ct27195)<br>**SHIPMAN & GOODWIN LLP**<br>One Constitution Plaza<br>Hartford, CT 06103<br>Tel: (860) 251-5059<br>Email: egoldstein@goodwin.com<br><br>*Counsel for Anthem HealthChoice Assurance,*<br>*Inc. dba Empire Blue Cross Blue Shield;*<br>*Anthem Health Plans, Inc.; Sedgwick Realty*<br>*Corp.; and Direct Persuasion LLC* |
| By:  /s/ *Scott M. Charmoy*<br>Scott M. Charmoy (ct15889)<br>**CHARMOY & CHARMOY, LLC**<br>1465 Post Road, Suite 100<br>Westport, CT 06680<br>Tel: (203) 255-8100<br>Email: scottcharmoy@charmoy.com<br><br>*Counsel for Putnam's Landscaping LLC* | By:  /s/ *Eric S. Goldstein*<br>Eric S. Goldstein (ct27195)<br>Nicole M. Lapenta (ct31639)<br>**SHIPMAN & GOODWIN LLP**<br>One Constitution Plaza<br>Hartford, CT 06103<br>Tel: (860) 251-5059<br>Email: egoldstein@goodwin.com<br>        nlapenta@goodwin.com<br><br>-and-<br><br>By:  /s/ *Michael A. Siedband*<br>Michael A. Siedband (*pro hac vice*)<br>**FEDERAL EXPRESS CORPORATION**<br>3620 Hacks Cross Road, Bldg. B<br>Memphis, TN 38104<br>Tel: (901) 355-2075<br>Email: michael.siedband@fedex.com<br><br>*Counsel for Federal Express Corporation* |

| | |
|---|---|
| By: /s/ Rowena A. Moffett<br>Rowena A. Moffett (ct19811)<br>**BRENNER, SALTZMAN & WALLMAN LLP**<br>271 Whitney Avenue<br>New Haven, CT 06511<br>Tel: (203) 772-2600<br>Email: rmoffett@bswlaw.com<br><br>*Counsel for Morvillo Abramowitz Grand Iason & Anello PC* | By: /s/ Michael T. Conway<br>Michael T. Conway (ct26750)<br>**LAZARE POTTER GIACOVAS & MOYLE LLP**<br>747 Third Avenue, 16th Floor<br>New York, NY 10017<br>Tel: (917) 242-1597<br>Email: mconway@lpgmlaw.com<br><br>*Counsel for Arri Americas Inc.* |
| By: /s/ Louis J. Martocchio III<br>Louis J. Martocchio III (ct31149)<br>**MARTOCCHIO & OLIVEIRA LLC**<br>191 Main Street<br>Southington, CT 06489<br>Tel: (860) 621-9700<br>Email: lou@mo-lawfirm.com<br><br>-and-<br><br>Bret L. Strong (*pro hac vice*)<br>Zachary W. Doninger (*pro hac vice*)<br>**THE STRONG FIRM, P.C.**<br>Two Hughes Landing<br>1790 Hughes Landing, Suite 200<br>The Woodlands, TX 77380<br>Tel: (281) 367-1222<br>Email: bstrong@thestrongfirm.com<br>     zdoninger@thestrongfirm.com<br><br>*Counsel for DJD Creative, LLC* | By: /s/ Ross G. Fingold<br>Ross G. Fingold (ct05452)<br>**STOKESBURY & FINGOLD, LLC**<br>10 Waterside Drive, Suite 204<br>Farmington, CT 06032<br>Tel: (860) 606-1709<br>Email: rfingold@lawssf.com<br><br>-and-<br><br>Sabrina L. Streusand (*pro hac vice*)<br>**STREUSAND, LANDON, OZBURN & LEMMON, LLP**<br>1801 S MoPac Expressway, Suite 320<br>Austin, TX 787046<br>Tel: (512) 236-9901<br>Email: streusand@slollp.com<br><br>*Counsel for Cloudflare, Inc.* |
| By: /s/ Richard J. Bernard<br>Richard J. Bernard (ct413177)<br>**FAEGRE DRINKER BIDDLE & REATH LLP**<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Tel: (212) 248-3140<br>Email: richard.bernard@faegredrinker.com | By: /s/ Benjamin D. Feder<br>Benjamin D. Feder (ct443211)<br>Eric R. Wilson (ct443553)<br>**KELLEY DRYE & WARREN LLP**<br>Canterbury Green<br>201 Broad Street<br>Stamford, CT 06901 |

-and-

Josh Peterson
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, MN 55402
Tel: (612) 766-7000
Email: josh.peterson@faegredrinker.com

-and-

Jaclyn C. Marasco
**FAEGRE DRINKER BIDDLE & REATH LLP**
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
Tel: (302) 467-4200
Email: jaclyn.marasco@faegredrinker.com

*Counsel to Cirrus Design Corporation*

Tel: (203) 324-1400
Email: ewilson@kelleydrye.com
        bfeder@kelleydrye.com

-and-

Richard J. Reding (*pro hac vice*)
**ASK LLP**
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Tel: (651) 406-9665
Email: rreding@askllp.com

-and-

Edward E. Neiger (*pro hac vice*)
**ASK LLP**
60 East 42nd Street, 46th Floor
New York, NY 10165
Tel: (212) 267-7342
Email: eneiger@askllp.com

*Counsel to Indium Software, Inc.*

---

By:  /s/ *John F. Carberry*
     /s/ *Kara A. Zarchin*
John F. Carberry (ct02881)
Kara A. Zarchin (ct30783)
**CUMMINGS & LOCKWOOD LLC**
Six Landmark Square
Stamford, CT 06901
Tel: (203) 351-4280
Email: jcarberry@cl-law.com
        kzarchin@cl-law.com

*Counsel for Target Enterprises, LLC
and Jamestown Associates, LLC*

By:  /s/ *David J. Kozlowski*
David J. Kozlowski (ct28240)
**MORRISON COHEN LLP**
909 Third Avenue
New York, NY 10022
Tel: (212) 735-8825
Email: dkozlowski@morrisoncohen.com

-and-

Jeffrey Rhodes (*pro hac vice*)
**TAYMAN LANE CHAVERRI LLP**
2001 L Street NW, Suite 500
Washington, DC 20036
Tel: (202) 921-4080
Email: jrhodes@tlclawfirm.com

|  | *Counsel to Mark Gundersen* |
|---|---|
| By: */s/ Eric Seltzer*<br>Eric Seltzer (ct01224)<br>**GILBRIDE, TUSA, LAST & SPELLANE LLC**<br>31 Brookside Drive<br>Greenwich, CT 06830<br>Tel: (203) 622-9360<br>Email: ehs@gtlslaw.com<br><br>*Counsel for Miller Motorcars Inc.* | By: */s/ Robert E. Kaelin*<br>Robert E. Kaelin (ct11631)<br>**MURTHA CULLINA LLP**<br>280 Trumbull Street, 12th Floor<br>Hartford, CT 06103<br>Tel: (860) 240-6000<br>Email: rkaelin@murthalaw.com<br><br>-and-<br><br>By: */s/ Matthew A. Pesce*<br>Matthew A. Pesce (ct31208)<br>**MURTHA CULLINA LLP**<br>107 Elm Street<br>Four Stamford Plaza, 11th Floor<br>Stamford, CT 06902<br>Tel: (203) 653-5400<br>Email: mpesce@murthalaw.com<br><br>*Counsel for 3 Columbus Circle, LLC, Phillips Nizer LLP, and ModSquad, Inc.* |
| By: */s/ Robert N. Sensale*<br>Robert N. Sensale (ct10556)<br>**BERSHTEIN, VOLPE & MCKEON P.C.**<br>900 Chapel Street, 11th Floor<br>New Haven, CT 06510<br>Telephone: (203) 777-5800<br>Email: rns@bvmlaw.com<br><br>*Counsel for 270 W. 39th St. Co., LLC* | By: */s/ Lindsay C. Stone*<br>Lindsay C. Stone (ct31140)<br>Benjamin Gilbert (*pro hac vice*)<br>**SHEPPARD MULLIN RICHTER & HAMPTON LLP**<br>30 Rockefeller Plaza, 39th Floor<br>New York, NY 10112<br>Tel: (212) 653-8700<br>Email: lstone@sheppardmullin.com<br>     bogilbert@sheppardmullin.com<br><br>-and-<br><br>By: */s/ Alan H. Martin*<br>Alan H. Martin (*pro hac vice*)<br>**SHEPPARD MULLIN RICHTER & HAMPTON** |

| | |
|---|---|
| | **LLP**<br>650 Town Center Drive, 10th Floor<br>Costa Mesa, CA 92626<br>Tel: (714) 513-5100<br>Email: amartin@sheppardmullin.com<br><br>*Counsel to Agora Lab, Inc.* |
| By: */s/ Matthew D. Valauri*<br>Matthew D. Valauri (ct30193)<br>**WILSON ELSER MOSKOWITZ EDELMAN &**<br>**DICKER LLP**<br>1010 Washington Boulevard<br>Stamford, CT 06901<br>Tel: (203) 388-2433<br>Email: matthew.valauri@wilsonelser.com<br><br>*Counsel for Clayman Rosenberg Kirschner*<br>*& Linder LLP* | By: */s/ Bonnie C. Mangan*<br>Bonnie C. Mangan (ct03759)<br>**LAW OFFICE OF BONNIE C. MANGAN, P.C.**<br>Westview Office Park<br>1050 Sullivan Avenue, A3<br>South Windsor, CT 06074<br>Tel: (860) 644-4204<br>Email: bonnie.mangan@manganlaw.com<br><br>-and-<br><br>Sari B. Placona (*pro hac vice*)<br>**MCMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Second Floor<br>Roseland, NJ 07068<br>Tel: (973) 721-5030<br>Email: splacona@msbnj.com<br><br>*Counsel for McManimon, Scotland &*<br>*Baumann, LLC* |
| By: */s/ Tracy Ellis Williams*<br>Tracy Ellis Williams (ct25137)<br>**SHIPMAN & GOODWIN LLP**<br>300 Atlantic Street, 3rd Floor<br>Stamford, CT 06901<br>Tel: (203) 324-8136<br>Email: tewilliams@goodwin.com<br><br>-and-<br><br>Scott M. Kessler (*pro hac vice*)<br>**AKERMAN LLP** | By: */s/ Eric S. Goldstein*<br>Eric S. Goldstein (ct27195)<br>**SHIPMAN & GOODWIN LLP**<br>One Constitution Plaza<br>Hartford, CT 06103<br>Tel: (860) 251-5059<br>Email: egoldstein@goodwin.com<br><br>-and-<br><br>Justin S. Baumgartner (*pro hac vice*)<br>**BECKER LLC** |

| | |
|---|---|
| 1251 Avenue of the Americas, 37th Floor<br>New York, NY 10020<br>Tel: (212) 880-3800<br>Email: scott.kessler@akerman.com<br><br>*Counsel for B&H Foto & Electronics Corp.* | 354 Eisenhower Parkway<br>Plaza Two, Suite 1500<br>Livingston, NJ 07039<br>Tel: (973) 422-1100<br>Email: jbaumgartner@becker.legal<br><br>*Counsel for On the Spot Home Improvement, Inc.* |
| By: */s/ Nicholas P. Vegliante*<br>Nicholas P. Vegliante (ct28449)<br>**COHN BIRNBAUM & SHEA P.C.**<br>CityPlace II, 15th Floor<br>185 Asylum Street<br>Hartford, CT 06103<br>Tel: (860) 493-2200<br>Email: nvegliante@cbshealaw.com<br><br>*Counsel for GroCyber, LLC* | By: */s/ Henry P. Baer, Jr.*<br>Henry P. Baer, Jr. (ct27781)<br>Eilis Meagher (ct31160)<br>**FINN DIXON & HERLING, LLP**<br>Six Landmark Square<br>Stamford, CT 06901<br>Tel. (203) 325-5000<br>Email: hbaer@fdh.com<br>        emeagher@fdh.com<br><br>*Counsel for Nardello & Co., LLC* |
| By: */s/ Henry P. Baer, Jr.*<br>Henry P. Baer, Jr. (ct27781)<br>**FINN DIXON & HERLING, LLP**<br>Six Landmark Square<br>Stamford, CT 06901<br>Tel. (203) 325-5000<br>Email: hbaer@fdh.com<br><br>-and-<br><br>Steven G. Mintz (*pro hac vice*)<br>Barry M. Kazan (*pro hac vice*)<br>**MINTZ & GOLD LLP**<br>600 Third Avenue, 25th Floor<br>New York, NY 10016<br>Tel. (212) 696-4848<br>Email: mintz@mintzandgold.com<br>        kazan@mintzandgold.com | By: */s/ Henry P. Baer, Jr.*<br>Henry P. Baer, Jr. (ct27781)<br>Eilis Meagher (ct31160)<br>**FINN DIXON & HERLING, LLP**<br>Six Landmark Square<br>Stamford, CT 06901<br>Tel. (203) 325-5000<br>Email: hbaer@fdh.com<br>        emeagher@fdh.com<br><br>-and-<br><br>Andrea M. Chase (*pro hac vice*)<br>**SPENCER FANE LLP**<br>1000 Walnut, Suite 1400<br>Kansas City, MO 64106<br>Tel. (816) 292-8279<br>Email: achase@spencerfane.com<br><br>*Counsel for Teris-Phoenix, LLC* |

| | |
|---|---|
| *Counsel for Marcum LLP and Fox News Network, LLC* | |
| By:  */s/ Ilan Markus*<br>Ilan Markus (ct26345)<br>**BARCLAY DAMON LLP**<br>545 Long Wharf Drive, 9th Floor<br>New Haven, CT 06511<br>Tel: (203) 672-2661<br>Email: imarkus@barclaydamon.com<br><br>*Counsel for Conservative Campaign Technology LLC* | By:  */s/ John J. Clarke*<br>John J. Clarke, Jr. (ct31251)<br>**DLA PIPER LLP**<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Tel: (212) 335-4500<br>Email: john.clarke@us.dlapiper.com<br><br>-and-<br><br>C. Kevin Kobbe (*pro hac vice*)<br>**DLA PIPER LLP**<br>650 South Exeter Street, Suite 1100<br>Baltimore, MD 21202<br>Tel: (410) 580-4189<br>Email: kevin.kobbe@us.dlapiper.com<br><br>*Counsel for Zeta Global Corp.* |
| By:  */s/ James J. Costello, Jr.*<br>James J. Costello, Jr. (ct309468)<br>**NORRIS MCLAUGHLIN, P.A.**<br>400 Crossing Boulevard, 8th Floor<br>Bridgewater, NJ 08807-5933<br>Tel: (908) 252-4315<br>Email: jjcostellojr@norris-law.com<br><br>*Counsel for Flat Rate Movers, Ltd.* | By:  */s/ Ronald I. Chorches*<br>Ronald I. Chorches (ct08720)<br>**LAW OFFICES OF RONALD I. CHORCHES, LLC**<br>82 Wolcott Hill Road, Suite 203<br>Wethersfield, CT 06109<br>Tel: (860) 563-3955<br>Email: ronchorcheslaw@sbcglobal.net<br><br>-and-<br><br>By:  */s/ Darryl S. Laddin*<br>Darryl S. Laddin (*pro hac vice*)<br>Frank N. White (*pro hac vice*)<br>**ARNALL GOLDEN GREGORY LLP**<br>171 17th Street, N.W. Suite 1200<br>Atlanta, GA 30363-1031<br>Tel: (404) 873-8500<br>Email: darryl.laddin@agg.com<br>       frank.white@agg.com |

|  | *Counsel for American Express* |
|---|---|
| By: _/s/ Lindsay Sampson Bishop_<br>Lindsay Sampson Bishop (ct29990)<br>**K&L GATES LLP**<br>1 Congress Street<br>Boston, MA 02114<br>Tel: (617) 261-3100<br>Email: lindsay.bishop@klgates.com<br><br>-and-<br><br>By:  _/s/ Brian T. Peterson_<br>Brian T. Peterson (*pro hac vice*)<br>Ruby A. Nagamine (*pro hac vice*)<br>**K&L GATES LLP**<br>925 Fourth Avenue, Suite 2900<br>Seattle, WA 98104<br>Tel: (206) 623-7580<br>Email: brian.peterson@klgates.com<br>        ruby.nagamine@klgates.com<br><br>*Counsel for Amazon Web Services, Inc. and Amazon.com, Inc.* | *[intentionally left blank]* |

# EXHIBIT A

| No. | Defendant | Adv. No. | Lamp Capital LLC (Del.) 544/548 | 549 | Golden Spring (New York) Ltd. (Del.) 544/548 | 549 | HCHK Technologies, Inc. (Del.) 544/548 | 549 | HCHK Property Management, Inc. (Del.) 544/548 | 549 | Greenwich Land LLC (Del.) 544/548 | 549 | Lexington Property & Staffing, Inc. (Del.) 544/548 | 549 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Ohtzar Shlomo Solomon Treasure LLC | 24-05082 | | | | | | | | x | | | | |
| 2 | Anthem HealthChoice Assurance, Inc. dba Empire Blue Cross Blue Shield | 24-05112 | | x | | x | | x | | | | | | |
| 3 | Anthem Health Plans, Inc. | 24-05058 | | | | | | | | x | | | | |
| 4 | Sedgwick Realty Corp. | 24-05222 | | x | | | | | | | | | | |
| 5 | Federal Express Corporation | 24-05059 | | | | | | | | | | | | x |
| 6 | Putnam's Landscaping, LLC | 24-05211 | x | x | | | | | | x | x | x | | |
| 7 | Morvillo Abramowitz Grand Iason & Anello PC | 24-05196 | | | | | | | | x | | | | x |
| 8 | Arri Americas Inc. | 23-05031 | | | | | | | | x | | | | |
| 9 | Direct Persuasion LLC | 24-05010 | | | | | x | | | | | | | |

| # | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | DJD Creative LLC | 24-05063 | | | | | x | | | | | | | |
| 11 | Cloudflare, Inc. | 24-05115 | | | x | | x | | | | | | x | x |
| 12 | Cirrus Design Corporation | 24-05225 | x | | | | x | | | | | | | |
| 13 | Indium Software, Inc. | 24-05122 | | | | | x | x | | | | | x | |
| 14 | Target Enterprises, LLC | 24-05138 | | | | | x | | | | | | | |
| 15 | Jamestown Associates, LLC | 24-05147 | | | | | x | | | | | | | |
| 16 | Mark Gundersen | 24-05048 | | | | | x | | | | | | | |
| 17 | 3 Columbus Circle, LLC | 24-05120 | | | | | | | | x | | | | |
| 18 | ModSquad, Inc. | 24-05114 | | | | | x | | | | | | | |
| 19 | Miller Motorcars Inc. | 24-05128 | x | | | | | | | | | | | |
| 20 | 270 W. 39th St. Co., LLC | 24-05055 | | | | | | | | | | | | x |
| 21 | Agora Lab, Inc. | 24-05005 | | | x | | x | | | | | | x | x |
| 22 | Clayman Rosenberg Kirschner & Linder LLP | 24-05202 | | | | | | x | | | | | | |
| 23 | McManimon, Scotland & Baumann, LLC | 24-05194 | | | | | | x | | | | | | |
| 24 | American Express | 24-05077 | | | | | | x | | x | | | | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25 | Amazon Web Services, Inc. | 24-05006 | | | | | x | x | | | | | x | x |
| 26 | Amazon.com, Inc. | 24-05057 | | | x | x | x | | | | x | x | | |
| 27 | Flat Rate Movers, Ltd. | 24-05141 | | | | x | | | | | | | | |
| 28 | Jason Miller | 24-05219 | | | | | x | | | | | | x | |
| 29 | On the Spot Home Improvement, Inc. | 24-05130 | | | | | | | | x | | | | |
| 30 | Teris-Phoenix, LLC | 24-05044 | | | | | | | | | | | | x |
| 31 | Nardello & Co., LLC | 24-05162 | x | | | | | | | | | | x | |
| 32 | Marcum LLP | 24-05229 | | | | | x | x | | | | | x | x |
| 33 | Fox News Network, LLC | 24-05015 | | | | | x | | | | | | | |
| 34 | Phillips Nizer LLP | 24-05047 | x | x | | | | | | | | | | x |
| 35 | Zeta Global Corp. | 24-05092 | | | | | x | | | | | | | |
| 36 | GroCyber, LLC | 24-05100 | | | | | x | | | | | | | |
| 37 | Conservative Campaign Technology LLC | 24-05108 | | | | | x | | | | | | | |
| 38 | B&H Foto and Electronics, Corp. | 24-05069 | | | x | x | x | x | | | x | x | x | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2024, a copy of the foregoing was filed electronically and served by first class mail, postage prepaid and/or via email on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by First Class mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Eric S. Goldstein
Eric S. Goldstein