```
 1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF CONNECTICUT
 2                        BRIDGEPORT DIVISION

 3   IN RE:                      .   Chapter 11
                                 .   Case No. 22-50073 (JAM)
 4   HO WAN KWOK, et al.,        .
                                 .   (Jointly Administered)
 5           Debtors.            .
                                 .
 6   . . . . . . . . . . . . . . .
                                 .
 7   GENEVER HOLDINGS, LLC,      .   Adversary Proceeding
                                 .   No. 23-05007 (JAM)
 8           Plaintiff,          .
                                 .
 9      v.                       .
                                 .   Courtroom 123
10   AIG PROPERTY CASUALTY       .   Brien McMahon Federal Building
     COMPANY,                    .   915 Lafayette Boulevard
11                               .   Bridgeport, Connecticut 06604
             Defendant           .
12                               .   Tuesday, October 8, 2024
     . . . . . . . . . . . . . . .   1:10 p.m.
13

14

15                      TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE JULIE A. MANNING
16                UNITED STATES BANKRUPTCY JUDGE

17

18

19   (APPEARANCES CONTINUED)

20   Audio Operator:         Electronically recorded

21   Transcription Company:  Reliable
                             The Nemours Building
22                           1007 N. Orange Street, Suite 110
                             Wilmington, Delaware 19801
23                           Telephone: (302)654-8080
                             Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

```
 1   APPEARANCES:

 2   For the Chapter 11
     Trustee:                    Patrick Linsey, Esquire
 3                               NEUBERT PEPE & MONTEITH, P.C.
                                 195 Church Street
 4                               13th Floor
                                 New Haven, Connecticut 06510
 5
                                 -and-
 6
                                 Luc A. Despins, Esquire
 7                               PAUL HASTINGS, LLP
                                 200 Park Avenue
 8                               New York, New York 10166

 9   For Genever Holdings:       Michael T. McCormack, Esquire
                                 O'SULLIVAN MCCORMACK JENSEN
10                                  & BLISS, P.C.
                                 180 Glastonbury Boulevard
11                               Suite 210
                                 Glastonbury, Connecticut 06033
12

13   For AIG Property
     Casualty Company:           Michael P. Thompson, Esquire
14                               GORDON & REES SCULLY MANSUKHANI
                                 95 Glastonbury Boulevard
15                               Suite 206
                                 Glastonbury, Connecticut 06033
16
                                 -and-
17
                                 John O'Connor, Esquire
18                               STEPTOE, LLP
                                 1330 Connecticut Avenue, NW
19                               Washington, DC 20036

20

21   For the U.S. Trustee:       Holley L. Claiborn, Esquire
                                 OFFICE OF THE UNITED STATES TRUSTEE
22                               The Giaimo Federal Building
                                 150 Court Street
23                               Room 302
                                 New Haven, Connecticut 06510
24

25
```

```
 1   APPEARANCES (CONTINUED):

 2   For Pacific Alliance
     Asia Opportunity Fund:   Annecca H. Smith, Esquire
 3                            ROBINSON & COLE, LLP
                              280 Trumbull Street
 4                            Hartford, Connecticut 06103

 5                            -and-

 6                            Stuart M. Sarnoff, Esquire
                              O'MELVENY & MYERS, LLP
 7                            Times Square Tower
                              7 Times Square
 8                            New York, New York 10036

 9
     For the Official
10   Committee of
     Unsecured Creditors:     Kristin B. Mayhew, Esquire
11                            PULLMAN & COMLEY, LLC
                              850 Main Street
12                            8th Floor
                              Bridgeport, Connecticut 06601
13

14   For G Club Operations:   Jeffrey M. Sklarz, Esquire
                              GREEN & SKLARZ, LLC
15                            One Audubon Street
                              3rd Floor
16                            New Haven, Connecticut 06511

17

18

19

20

21

22

23

24

25
```

1                              INDEX

2    MOTIONS:                                                    PAGE

3            In re:  Ho Wan Kwok, *et al., Debtors.*
                    Case no. 22-50073 (JAM)

4    Matter
     No. 3534   (ZG) #3534; Application to Employ Winne,           8
5               Banta, Basralian & Kahn, P.C., as New Jersey
                Real Estate Counsel to Chapter 11 Trustee
6               Filed by Patrick R. Linsey on behalf of Luc A.
                Despins, Chapter 11 Trustee
7
                Court's Ruling:                                   12
8
     Matter
9    No. 3551   (ZG) #3551; Motion of Genever Holdings LLC for    13
                Entry of Order Amending Order Authorizing
10              Genever Holdings LLC Retention of Sotheby's
                International Realty as its Real Estate Broker
11              and Sales Agent Filed by Georg Alexander
                Bongartz on behalf of Genever Holdings LLC,
12              Debtor

13              Court's Ruling:                                   15

14   Matter
     No. 3565   (ZG) #3565; Motion to Limit Notice of Motions     21
15              Pursuant to Bankruptcy Rule 9019 Regarding
                Mediated/Avoidance Claim Settlements Filed by
16              Patrick R. Linsey on behalf of Luc A. Despins,
                Chapter 11 Trustee
17
                Court's Ruling:                                   39
18
     Matter
19   No. 3569   (ZG) #3569; Application to Employ Chryssafinis    16
                & Polyviou LLC as Cypriot Law Counsel to
20              Chapter 11 Trustee Filed by Luc A. Despins on
                behalf of Luc A. Despins, Chapter 11 Trustee
21
                Court's Ruling:                                   20
22

23

24

25

| | | |
|---|---|---|
| 1 | INDEX | |

| 2 | MOTIONS: | PAGE |

| 3 | **In re:  Genever Holdings, LLC v. AIG Property** | |
| | **Casualty Company** | |
| 4 | **Case no. 23-05007 (JAM)** | |

Matter
No. 115   (ZG) #115; Motion to Amend Pre-Trial Order to     43
Extend Damages Expert Discovery Filed by
Timothy P. Jensen on behalf of Genever
Holdings LLC, Plaintiff

Court's Ruling:                                             58

Matter
No. 116   (ZG) #116; Order Setting Status Conference       --

Court's Ruling:                                            --

Matter
No. 121   (ZG) #121; Motion for Leave to Depose            53
Incarcerated HO WAN KWOK Filed by Michael P.
Thompson on behalf of AIG Property Casualty
Company, Defendant

Court's Ruling:                                            58

Transcriptionist's Certificate                             66

1      (Proceedings commenced at 1:10 p.m.)

2            THE COURT:  So I ask the courtroom deputy to

3  please call the calendar.

4            THE COURTROOM DEPUTY:  Case Number 22-50073, Ho

5  Wan Kwok and Adversary Number 22- -- I'm sorry -- Adversary

6  Number 23-05007, Genever Holdings, LLC v AIG Property

7  Casualty Company.

8            THE COURT:  Thank you.

9            Good afternoon, if we could have appearances for

10  the record, please, starting with the Chapter 11 Trustee.

11            MR. DESPINS:  Good afternoon, Your Honor.  Luc

12  Despins, Chapter 11 Trustee.

13            MR. LINSEY:  Good afternoon, Your Honor.  Patrick

14  Linsey of Neubert Pepe & Monteith, for the Chapter 11

15  Trustee.

16            MR. MCCORMACK:  Good afternoon, Your Honor.

17  Michael McCormack for the Plaintiff, Genever Holdings LLC, in

18  the adversary proceeding against AIG Property Casualty

19  Company.

20            MR. O'CONNOR:  Good afternoon, Your Honor.  John

21  O'Connor for AIG, joined by Michael Thompson.

22            MR. THOMPSON:  Good afternoon, Your Honor.

23            THE COURT:  Good afternoon.

24            MR. SKLARZ:  Good afternoon, Your Honor.  Jeffrey

25  Sklarz for G Club Operations LLC.

1          THE COURT:  Good afternoon.

2          MS. MAYHEW:  Good afternoon, Your Honor.  Kristen

3   Mayhew, Pullman & Comley, on behalf of the Creditors

4   Committee.

5          MR. SARNOFF:  Good afternoon, Your Honor.  Stuart

6   Sarnoff, on behalf of PAG.

7          MS. SMITH:  Good afternoon, Your Honor.  Annecca

8   Smith of Robinson & Cole, Connecticut counsel for Creditor

9   PAG.

10         MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

11  Claiborn for the U.S. Trustee.

12         THE COURT:  Good afternoon to everyone.  I think

13  that is everyone that I see on this remote hearing, so I

14  think everyone has noted their appearances.

15         So, we will start, I think Trustee Despins, with

16  the matters in the main Chapter 11, jointly consolidated

17  cases.  Is that the applications to employ, is that where

18  you'd like to start?

19         MR. DESPINS:  Sure, Your Honor, and I will try to

20  cover that quickly.

21         So, I don't know if the New Jersey counsel, local

22  counsel was on first or whether the Sotheby's or Cyprus'

23  counsel was on.

24         THE COURT:  I'll tell you what I see and we can go

25  from there.  I think the Cyprus counsel is on first, which is

1   3534, the application to employ Winne, Banta Basralian &

2   Kahn, I guess, counsel.

3          MR. DESPINS:  Yeah, that's the New Jersey counsel,

4   Your Honor.

5          THE COURT:  Yes, so go right ahead.

6          MR. DESPINS:  Mr. Linsey is handling that.

7          THE COURT:  Okay.  Mr. Linsey?

8          MR. LINSEY:  Thank you, Your Honor.

9          By this application, the trustee seeks to retain,

10  I've been saying Winne, Banta, Basralian & Kahn.  Your Honor

11  may actually be right.  I'll just say, "Winne Banta," so I

12  don't get tripped up.

13         Winne Banta will provide legal services related to

14  the Mahwah Mansion, including the anticipated sale of the

15  property, to the extent the Court authorizes the sale or the

16  trustee prevails in the adversary proceeding.  The trustee is

17  seeking to have New Jersey real estate counsel ready to go at

18  the earliest opportunity in light of the expense of

19  maintaining the Mahwah Mansion.

20         As the Court may have noted in the application and

21  in other motions recently filed by the trustee, the costs of

22  maintaining the Mahwah Mansion presently exceed $282,000 per

23  quarter.  The trustee proposes to engage Winne Banta as

24  special counsel for New Jersey real estate issues, pursuant

25  to Section 327(e) of the Code.

1    Winne Banta is experienced real estate counsel

2 with offices in Bergen County, New Jersey, which is the

3 county where Mahwah is located.

4    Following the filing of the application, the

5 United States Trustee reached out to Chapter 11 Trustee's

6 counsel and requested that Winne Banta provide a supplemental

7 disclosure.  That supplemental disclosure was provided and

8 filed at ECF 3636.  The United States Trustee also requested

9 the Chapter 11 Trustee and Winne Banta add provisions to the

10 retention order that are in line with the provisions of other

11 trustee counsel retention orders; specifically, one providing

12 for notice of any rate increases to be filed on the docket in

13 advance, and the other providing allowable compensation shall

14 not include the performance of trustee duties.

15    The trustee has added those provisions, which are

16 in the revised order filed by the trustee at ECF 3630.  After

17 the trustee filed the supplemental declaration and the

18 revised order, the United States Trustee filed a statement of

19 no objection, which is at ECF 3640.

20    The trustee, the Chapter 11 Trustee is happy to

21 answer any questions the Court may have and, otherwise,

22 requests that the Court approve the application and enter the

23 revised form of order at ECF 3630.

24    MR. DESPINS:  And, Your Honor, if I may, just two

25 seconds?

1    I don't want this application to be perceived as

2 presumptuous because, you know, we actually would use them if

3 there was a sale, but we needed them in August because of

4 the -- we have to pay the taxes.  They were, you know, late,

5 and we needed representation on the issue of whether we could

6 get to pay just the full amount without interest and all

7 that.  So he provided advice on that issue.  That's why we

8 retained them at that time.

9    It's true that our goal, as you noted, too, is to

10 own and sell the property, but we got them involved early

11 because of the tax issue with the Mahwah Mansion.  Thank you,

12 Your Honor.

13    THE COURT:  Okay.  Thank you.

14    Attorney Claiborn, do you wish to be heard?

15    MS. CLAIBORN:  Your Honor, I have nothing

16 substantive to add.  Attorney Linsey covered all of the

17 actions of the U.S. Trustee that are reflected on the docket.

18    THE COURT:  In the new order, the revised order

19 3630?

20    MS. CLAIBORN:  Yes, that is satisfactory to the

21 U.S. Trustee.

22    THE COURT:  Thank you.

23    Does anyone else wish to be heard on the

24 application to retain special counsel?

25    (No verbal response)

1    THE COURT:  Okay.  Hearing nothing, I'm looking at

2    the proposed, revised order, ECF 3630.  I understand why the

3    trustee is seeking to employ New Jersey real estate counsel

4    in connection with the jointly administered Chapter 11 cases

5    and I do understand that the counsel was retained to address

6    issues, other than a potential sale, including payment of the

7    taxes, with regard to the property in Mahwah, New Jersey.

8    Plus, I did review the supplemental declaration

9    and it appears to be in order.  The only thing that I would

10   ask the courtroom deputy to do is note in the record before

11   the first ordered paragraph, "And after a hearing held on

12   October 8th, 2024."

13   THE COURTROOM DEPUTY:  Okay.

14   THE COURT:  I'm just looking to make sure I don't

15   have any other changes to the proposed order.

16   (Pause)

17   THE COURT:  The only thing it doesn't, the order

18   doesn't say, but I'm not sure that it needs to say it as

19   specifically as some other orders have, is that counsel will

20   seek reimbursement of compensation and expenses by submitting

21   applications to the Court.  It just says, "the allowance of

22   compensation shall be determined, in accordance with the

23   procedures set forth in," but it doesn't -- oh, it says,

24   "Local Bankruptcy Rule 2016," I suppose, that says -- I'm

25   just seeing in different orders that you've been more

1  specific about the need for them to file an application, but

2  I don't think that that's critical.  I will just let you know

3  that they will have to file an application for compensation

4  if the order doesn't say it that clearly.

5        MR. LINSEY:  Understood, Your Honor.

6        And that's the intention on our end, if not --

7        THE COURT:  Well, it --

8        MR. LINSEY:  -- phrased super explicitly.

9        THE COURT:  -- it's not only the intention; it's

10  the requirement of the Code.  Right?

11        MR. LINSEY:  Sure.

12        THE COURT:  So that's what's required.

13        In any event, I have no other changes to the

14  proposed order.  So for all those reasons, the application is

15  granted and the proposed order can enter with the minor

16  changes noted on the record.

17        MR. LINSEY:  Thank you, Your Honor.

18        THE COURT:  You're welcome.

19        So which matter do you want to take next?

20        MR. DESPINS:  Luc -- I apologize, I said either

21  the Sotheby's retention or the Cyprus counsel, Your Honor.

22  I'm happy to do either.

23        THE COURT:  All right.  Let me just look back at

24  the calendar.  Sotheby's is next on the calendar --

25        MR. DESPINS:  Okay.

1          THE COURT:  -- 3551, the motion --

2          MR. DESPINS:  Yes, Your Honor.

3          THE COURT:  Go right ahead.

4          MR. DESPINS:  So, thank you, Your Honor.

5          So, yeah, the Docket 3551, and to give you the

6   history there, this is the broker that was retained by

7   Genever to sell The Sherry-Netherland apartment.  Because of

8   changes in the law that you made, you know, that you recall,

9   you have to go through this with Greenwich counsel --

10  Greenwich broker.  As well, regarding the allocation of

11  commissions between seller/broker and buyer/broker, we have

12  filed this amendment.

13          And in addition to that, the -- we had to increase

14  the percentage to the buyer/broker, because in New York in

15  the, you know, competing buildings and also in our own

16  building, in The Sherry-Netherland, the buyer is getting a --

17  the buyer/broker is getting a commission of 3 percent, as

18  opposed to 2 percent, which we used to have.  So we,

19  therefore, modified the -- we sought modification of that

20  retention agreement to allow for us to pay 3 percent to a

21  buyer/broker.

22          Still Sotheby's as the seller's broker remains at

23  2 percent.  If there's no broker for a buyer, and that

24  happens more and more now, then Sotheby's percentage or

25  commission would be 3 percent.

1         And we also covered the point that the particular

2  broker here, Serena Boardman, could not act for another

3  buyer, even if he or she wanted to retain Ms. Boardman, and

4  that's been covered, except that Sotheby's -- other agents

5  from Sotheby's are allowed to represent the -- a buyer, while

6  Boardman represents us, or Genever, as the seller.

7         So, no objections were filed and I believe the

8  U.S. Trustee filed a statement of no objection at Docket

9  3614.  And a copy of the proposed order was attached to

10  Docket 3551.

11         So that's all we have on that issue, ma'am.

12         THE COURT:  Okay.  Thank you.

13         Attorney Claiborn, did you wish to be heard?

14         MS. CLAIBORN:  Just to state, Your Honor, for the

15  record, that the U.S. Trustee remains concerned about using

16  dual-agency provisions.  I recognize that that's been a prior

17  feature of -- the pre-feature retention of its broker done

18  earlier and then in connection with other sales in this

19  Court.  That said, the U.S. Trustee has no objection to the

20  motion and I reflected that in Statement 3614.

21         THE COURT:  Okay.  Thank you.

22         Does anyone else wish to be heard on a motion to

23  amend the order authorizing the retention of Sotheby's as the

24  real estate broker and sales agent?

25    (No verbal response)

1      THE COURT:  Okay.  Hearing nothing, then I have

2   reviewed the motion for an order amending the prior order

3   authorizing the retention of Sotheby's.  Again, the only

4   change I would make, and I'm turning to the courtroom deputy,

5   is to add, "And after a hearing held on October 8th, 2024" --

6      THE COURTROOM DEPUTY:  Okay.

7      THE COURT:  -- "it is hereby ordered that..."

8      The only other thing I would note for the

9   courtroom deputy is the amended engagement agreement should

10  be attached to the order as Exhibit 1 --

11     THE COURTROOM DEPUTY:  Okay.

12     THE COURT:  -- okay?

13     THE COURTROOM DEPUTY:  Yes.

14     THE COURT:  So -- because that's what the proposed

15  order provides.  And I would like that to be attached to the

16  order so that if someone views it, they will have that

17  amended engagement agreement attached as Exhibit 1.

18     THE COURTROOM DEPUTY:  Okay.

19     THE COURT:  But for all the reasons that have been

20  stated on the record, including, and in the motion and the

21  U.S. Trustee's statement of no objection, and in accordance

22  with the applicable provisions of the Bankruptcy Code,

23  including Sections 327(a), 328(a), and 336(b) -- 363(b) -- I

24  don't know why I said, "336"; I apologize -- the motion is

25  granted and the proposed order will enter with the minor

1   change noted on the record.

2          MR. DESPINS:  Your Honor, if I may?

3          May I ask the Court to hold entry of the order

4   for -- until tomorrow at noon?  I just want to verify a

5   technical point in the order, which I don't have in front of

6   me.  I think it's a non-issue, but I just want to do a last

7   check before you enter the order --

8          THE COURT:  Certainly.

9          MR. DESPINS:  -- if possible.

10          THE COURT:  That's fine.  I will not enter that.

11          MR. DESPINS:  And I will be in communication with

12   the courtroom deputy before noon tomorrow.

13          THE COURT:  That's fine.  Thank you.

14          MR. DESPINS:  Thank you, Your Honor.

15          Your Honor, I would move on to the retention of

16   Cyprus counsel.  So the name of the firm, it's hard to

17   pronounce, but I think it's Chryssafinis & Polyviou.  So

18   they're our proposed Cyprus counsel.

19          As we stated, we need them to represent us in

20   Cyprus, with respect to the apartment that's located in

21   Cyprus that is owned by -- and I put owned in quotes -- by a

22   company called Bouillor Holdings, which entity is nominally,

23   again, owned, in quotes, by the debtors' son.  And, Your

24   Honor, we have filed an adversary proceeding regarding that

25   matter that's pending before Your Honor, but at the same

1   time, Cyprus counsel filed a -- they call them a "motion"

2   before the Cyprus Court -- to enjoin the sale and disposition

3   of that apartment, pending a ruling on our action before Your

4   Honor, so that's why we needed the Cyprus counsel.

5           And I believe that we've received no objections.

6   The U.S. Trustee filed a statement of no objection at Docket

7   3612.  That's all.

8           I'm happy to answer any questions you may have,

9   Your Honor.

10          THE COURT:  So my only question is, so what has

11  happened in the court there?  Has your proposed counsel

12  responded to this --

13          MR. DESPINS:  Yes, they --

14          THE COURT:  Okay.  Go ahead.

15          MR. DESPINS:  They filed a -- I don't want to use

16  the word "complaint" or "motion," but I don't know the

17  technical term over there -- but it's, essentially, a request

18  for the Cyprus Court to issue an injunction to prevent the

19  sale of the apartment.  And that injunction was issued.  It

20  was issued *ex parte* and now it's on notice to Bouillor and to

21  the debtors' son.  And there's a hearing later in October --

22  I forget which day -- it may be the 21st, but don't hold me

23  to that precisely -- but it's later in October where the

24  Court will revisit the issuance of that free order.

25          THE COURT:  Okay.  The only other question I had,

1  which is -- and thank you for that explanation -- paragraph 7

2  of the order says that the payment in euro will be converted

3  from U.S. dollars to euro at the exchange rate prevailing on

4  the date of payment, as opposed to the date of award.

5          How you -- I mean, I could understand the reason

6  for either one of those, but I don't know, you're going to

7  determine what the date of payment so going to be?

8          MR. DESPINS:  Well, we'll know when the one making

9  the payment, what the rate would be, but we're happy to make

10  it as of the date of approval, if Your Honor would prefer.

11          THE COURT:  Well, I just --

12          MR. DESPINS:  But I don't think there's going to

13  be such a swing between the --

14          THE COURT:  -- don't know if I prefer anything --

15  one or the other -- it's just that I think there's more

16  certainty to the date of the entry of the order awarding the

17  fees, as there is to the date of payment, that's all.

18          MR. DESPINS:  So, we're happy to make that change,

19  Your Honor.  You're right, it's more precise, as the entry of

20  the order cannot be debated exactly as to when that was.

21          THE COURT:  I think it's probably -- you know,

22  it's more precise.

23          MR. DESPINS:  Would you like us to make that

24  change or would --

25          THE COURT:  We can make that change.  That's fine.

```
 1              MR. DESPINS:  Okay.  Thank you, Your Honor.

 2              THE COURT:  Just say on the date of -- on the

 3   date, such fees and expenses are awarded.

 4              How about that?

 5              MR. DESPINS:  That works, Your Honor.  Thank you.

 6              THE COURT:  Does anyone else wish to be heard?

 7         (No verbal response)

 8              THE COURT:  I don't have any other questions,

 9   Trustee Despins.  If you had anything else you want to tell

10   me, I'm happy to hear from you.

11              MR. DESPINS:  Not at this time, Your Honor.  Thank

12   you.

13              THE COURT:  Okay.  Does anyone else wish to be

14   heard with regard to the trustee's retention of counsel in

15   Cyprus?

16              MS. CLAIBORN:  Your Honor, the U.S. Trustee has no

17   objection and the suggestion that the Court is making about

18   changing the exchange process is fine.

19              I had, since I originally asked, that there be a

20   mechanism to know when the exchange rate would be calculated,

21   so the Court's suggestion works perfectly fine.

22              THE COURT:  Okay.  Thank you.  Okay.  I think it

23   makes more sense just like a record date in a transaction,

24   right.  That's the way I look at it anyway.

25              But in any event, anyone else wish to be heard?
```

1           (No verbal response)

2               THE COURT:  All right.  Hearing nothing, then, I

3     understand why the trustee is seeking to employ counsel in

4     Cyprus.  I am familiar with the facts surrounding the

5     trustee's desired retention of counsel and I do think it's in

6     the best interests of the debtors' estate and its creditors.

7     And the trustee has set forth the basis under the Bankruptcy

8     Code under Section 327(a), in particular, to retain counsel.

9     The order contemplates that counsel will only be paid after

10    compliance with the Bankruptcy Code sections regarding

11    payment of compensation and the local bank -- and Federal

12    Rule of Bankruptcy Procedure 2016 and Local Rule 2016 and the

13    interim compensation order.

14              The only other change I would have to the proposed

15    order, again, speaking with the courtroom deputy, is to note

16    that there was a hearing held on October 8th, 2024, and we

17    can make that change, and I can show you later if you'd like,

18    to the end of paragraph 7, as well.

19              THE COURTROOM DEPUTY:  Okay.

20              THE COURT:  Okay.  And then Trustee Despins,

21    there's no issue from your perspective with that -- this

22    order issuing -- I'm sorry -- entering with those changes?

23              MR. DESPINS:  No issues at all, Your Honor.  Thank

24    you.

25              THE COURT:  Okay.  Then the application is granted

1  and the proposed order with the changes noted on the record,

2  will enter.

3          MR. DESPINS:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          MR. DESPINS:  I think that covers the case

6  matters, as opposed to the adversary proceeding.

7          THE COURT:  No, there's one other matter.

8          MR. DESPINS:  Oh.

9          THE COURT:  There's the motion to limit notice in

10 the main case; isn't that in the main case, as well --

11         MR. LINSEY:  Yes, Your Honor.

12         THE COURT:  -- on the avoidance procedures?

13         MR. LINSEY:  I will handle that.

14         THE COURT:  Yeah, go ahead.

15         MR. LINSEY:  Thank you, Your Honor.

16         The motion to limit notice requests that the Court

17 approve that notice of mediation and avoidance 9019 motions

18 be limited to what we'll call the "noticed parties."  This

19 motion was filed at the same time that the trustee filed a

20 motion requesting authority to settle claims against one

21 particular avoidance defendant; that's Wildes & Weinberg;

22 however, to be clear, it would apply globally to the

23 mediation and avoidance 9019 motions, that is, motions

24 requesting approval of settlements reached through the

25 mediation proceedings under the processes approved by the

1    Court, or otherwise requesting settlement or approval of

2    settlement of avoidance claims.

3          The noticed parties proposed by the trustee are,

4    specifically, the United States Trustee, the debtor, the

5    Committee, the counterparty to any settlement addressed by

6    the relevant motion, and all appearing parties that received

7    notice via the ECF system, and any appearing parties that

8    have requested notice in the Chapter 11 case, but don't

9    receive the ECF notice.

10         The vast majority of those parties, the noticed

11   parties, would receive notice of mediation and avoidance 9019

12   motions by ECF.  I guess the only mailing that would need to

13   be done would be with the manual-notice party, as there are

14   less than 20 of those at this point.

15         Without the limitation on notice requested by the

16   trustee's motion, every time the trustee files a motion

17   requesting approval of a mediated settlement, the trustee

18   would be required to undertake a mailing of all creditors,

19   which would require a large-scale mailing to individuals and

20   entities all over the world.  To date, there have been more

21   than 1400 proofs of claim that have been filed in the

22   debtors' Chapter 11 case and that would incur substantial

23   expense.

24         The proposed notice parameters are appropriate,

25   particularly in light of the fact that the Committee will

1  receive notice, as well as any creditors that have appeared

2  in the Chapter 11 case, and the United States Trustee.

3       No one has objected to this relief.  The trustee

4  notes that G Club Operations filed an objection, which states

5  that it is directed to both, the motion to limit notice and

6  the Wildes & Weinberg 9019 motion.  Suffice it to say that

7  the trustee does not agree with what G Club says in its

8  objection and will respond at the appropriate time, but given

9  that the objection does not address the relief requested by

10  the trustee and the motion to limit notice, the trustee does

11  not believe that this is the appropriate forum to address

12  that.

13       G Club's counsel has advised the trustee that it

14  directed its objection, in part, to the motion to limit

15  notice because if G Club is correct, the trustee will be

16  required to re-serve the Wildes & Weinberg 9019 motion.

17       The trustee has already served the Wildes &

18  Weinberg 9019 motion on the noticed parties in the form filed

19  on the public docket.  The trustee doesn't believe that the

20  Court ultimately will require the trustee to serve a

21  different forum in the future, however, if the trustee is

22  incorrect in that view, then given the noticed parties will

23  receive notice almost entirely by ECF, any additional costs

24  to serve this in the future would be minimal.

25       With that, I'm happy to answer any questions that

1  the Court may have.

2          THE COURT:  I have two questions -- well, it's

3  actually the same question, just two different parties.  On

4  page 2 of the proposed order, the noticed parties,

5  paragraph 2, it says, "the debtor and the committee."  I

6  think you mean the debtors' counsel and the Committee's

7  counsel, don't you?  Otherwise, you're going to have to serve

8  the debtor and I believe he's in prison.

9          And we're also talking about -- well, the other

10 debtors, so I think it should be the debtors' counsels.  You

11 know, I mean, this is a jointly administered case, right,

12 so -- and then the Committee's counsel, are you actually

13 going to serve each Committee member?  I would assume you

14 mean counsel on both of those, but I'm asking that question.

15         MR. LINSEY:  No, we do mean counsel, Your Honor,

16 and we can make that change indicating that service will be

17 to their counsel.

18         THE COURT:  Well, if there aren't any other

19 changes, and we'll see, then we can make that change, because

20 we're also going to make the -- the courtroom deputy knows I

21 will ask her to add, "And after a hearing held on..." in the

22 order, as well.

23         So, at this point, I do not have any other

24 questions at the moment, but I can see that Attorney Sklarz

25 wants to speak and be heard, so he will be in a second,

1   Attorney Sklarz, okay?

2            I just want to make sure that the U.S. Trustee

3   had -- I do -- let me step back.

4            I did not see that the U.S. Trustee filed any

5   opposition to this motion, where I did see the U.S. Trustee

6   had filed opposition to the settlement, the specific

7   settlement 9019 motion that Attorney Sklarz referenced in his

8   objection to the motion to limit notice.  So I want to make

9   sure, Attorney Claiborn, that that is accurate, that the

10  Office of the United States Trustee does not have any

11  objection to this motion to limit notice of all settlement

12  motions in the avoidance actions cases -- adversaries, I

13  should say -- from this point forward.

14           MS. CLAIBORN:  That's correct, Your Honor.

15           The U.S. Trustee has no objection to the motion to

16  limit notice.

17           THE COURT:  Okay.  Thank you.

18           All right.  Attorney Sklarz, I'm happy to hear

19  from you.  Go right ahead.

20           MR. SKLARZ:  Your Honor, we filed our objection to

21  the motion to limit out of an abundance of caution because,

22  number one, of the service issue addressed by Attorney

23  Linsey, so I won't belabor that, and as the substance

24  implicates the process, but if the Court prefers to defer

25  that issue, as Attorney Linsey indicated, to a final hearing

1    on the 9019 motion itself, I don't have an issue to

2    proceeding in the manner suggested with the redacted, sealed

3    motion served out.  If the Court rules in favor of the

4    trustee, obviously, the service will be proper.  If the Court

5    rules against the trustee, I think they have to re-serve.

6           But we have no objection to limiting notice, as

7    the trustee proposes, as long as the legally operative

8    documents are filed on the public record in the manner the

9    Court so-orders, whether that be redacted or unredacted.  But

10   the substance of our objection is to the redactions and

11   sealing.

12          THE COURT:  Okay.  I just heard -- I'm thinking

13   about what you just said, Attorney Sklarz.  So you're saying,

14   I believe, that if I grant the motion today limiting notice,

15   then your -- and this is -- I just want to make sure I

16   understand your position -- then when and if there's a

17   hearing on -- and there will be, because it's a 9019

18   motion -- on the settlement with the firm -- and I apologize,

19   I don't have -- I know it's W & W; I can't say anything more

20   than that at the moment -- that you would like to be heard on

21   that motion because you feel that it's inappropriately been

22   served because it is sealed, correct?

23          MR. SKLARZ:  Yes, our object -- the basis of our

24   substantive objection is that under prevailing law, plus

25   statutory rules and cases, which I won't get into now, a

1  trustee cannot file a sealed 9019 motion or a redacted 9019

2  motion in the way that's been done here, certainly, without

3  submitting a lot more evidence.

4          Whether the trustee ultimately prevails on its

5  evidentiary burden under the rules and the law, would be for

6  an ultimate hearing.

7          THE COURT:  Well, what evidentiary burden are you

8  talking about, on a 9019 motion or -- I mean, because the --

9          MR. SKLARZ:  No.

10          THE COURT:  -- evidentiary burden on a 9019 motion

11  isn't very high.

12          MR. SKLARZ:  No, no, I'm talking under 11 U.S.C.

13  107, for sealing or obscuring documents from a public record,

14  and under our local rule, for sealing or redacting documents

15  from the court record.  These are judicial documents that the

16  Court is going to use to make decisions and those are --

17  both, the Bankruptcy Code, our Local Rules, and Second

18  Circuit precedent says that there's only very narrow ways to

19  seal judicial documents from the public record.  This is what

20  our brief is about.

21          But my point here is if the Court were to rule in

22  our favor, ultimately, in G Club's favor, ultimately, the

23  service of a redacted or sealed 9019 motion at this point

24  would be improper and, therefore, we'd be back to stage one.

25          Now, I don't -- it sounds like it may not matter

1   because there's very few parties that need mail service or

2   special service and that as long as the trustee files the

3   unredacted versions on the record and emails it to the 20-

4   odd-noticed parties that would get a mailing, they can

5   probably come back and get their 9019 motion heard.

6           I just wanted to make sure that we didn't miss a

7   deadline or that the Court, or that we've waived anything, or

8   that the Court -- and I just wanted to make sure the Court

9   understood the issue here, because it really goes to First

10  Amendment issues, as well as fundamental, public, open courts

11  and public dockets issues that are delineated in the

12  Bankruptcy Code, itself, Section 107, and in our Local Rules,

13  which are very specific on sealing and redacting.

14          THE COURT:  Okay.  I understand.  Thank you.

15          My question, Attorney Linsey, now, is if I'm

16  looking at paragraph 3 of the proposed order on page 2, and

17  it says:

18          "For the avoidance of doubt, in a

19  mediation/avoidance 9019 motion is filed under seal, notice

20  shall be served on the noticed parties of the redacted

21  version of the motion."

22          Shouldn't that just say, "The redacted version of

23  the motion will be served," as opposed to "notice"?  I mean,

24  if you're proposing to have -- right now, the issue is this.

25  I have no issue with limiting notice, right, to any of the

1  parties that you've asked for, the United States Trustee, the

2  debtors' counsels, including counsel for Genever, I suppose,

3  the Genever entities, the Committee's counsel, the

4  counterparty to any settlement, by electronic filing to all

5  parties, and any parties requested notice, but that is unable

6  to accept.

7          I don't know what that is, by the way.  Could you

8  enlighten me on that, Number 5?

9          MR. LINSEY:  Yes, Your Honor.

10         Parties, basically, that have filed an appearance,

11 but are not able to receive ECF notice.

12         THE COURT:  There is no such thing as a party that

13 can file a notice that isn't able to seek and receive ECF

14 notice.  There's no such thing in our court.  So I don't know

15 who that is, unless you can --

16         MR. LINSEY:  I can only --

17         THE COURT:  -- point me to an example, I can't --

18 there is no such thing.  You either -- there's -- we issued

19 ruling and the procedure years ago that said that filing a

20 demand for service is not acceptable under the rules and if

21 you want to get service electronically, you either have to

22 get service by mail or you have to consent to electronic

23 service if you don't have counsel who is an electronic filer

24 and who obtains service.

25         So, I'm not sure who five is, (2)(v) --

1          MR. LINSEY:  Sure.

2          THE COURT:  -- or, actually, it's (vi), I'm sorry.

3          MR. LINSEY:  No, it's (v), Your Honor.

4          So when documents are filed by ECF -- and I'm glad

5   we're talking about this -- the -- there is an ECF notice

6   that issues that sends notice to counsel who are able to

7   receive electronically.  And then on that, and I'm speaking

8   to the automatically generated email --

9          THE COURT:  Yep.

10          MR. LINSEY:  -- that gets circulated --

11          THE COURT:  Yes.

12          MR. LINSEY:  -- there is a supplemental message

13   that says notice will not be electronically mailed to, and

14   then lists a number of parties by address.

15          THE COURT:  But those are just parties that are

16   listed on a creditor list or something.  Those aren't -- or

17   on proofs of claim.  Those aren't people who necessarily have

18   filed a notice of appearance.

19          MR. LINSEY:  So those are -- I don't know that

20   they're all creditors who filed proofs of claim; at least,

21   the numbers wouldn't make sense.

22          And it is a little bit of a head-scratcher,

23   because to a certain extent, some of these parties who appear

24   on the list are parties who actually also have, like, ECF --

25          THE COURT:  I don't understand that, either.

1          MR. LINSEY:  -- are receiving by ECF.

2          THE COURT:  I don't understand that, either.  I've

3   had that question for 11 years now.  I don't understand it

4   either.

5          MR. LINSEY:  I have, too, Your Honor.

6          But out of an abundance of caution, what we have

7   been doing is stripping out anyone who does get an ECF.  So,

8   for example, Mr. Sarnoff, for some reason, his address is on

9   there.  So is Steven Mackey's address is on there.  The

10  trustee understands that Mr. Sarnoff and the U.S. Trustee are

11  receiving ECF notice, so we don't send mailings to them.

12         But anyone who's on that list who is not receiving

13  ECF notice, that is -- those are the manual-notice parties

14  that we do typically send paper mailings to.  I don't know if

15  anyone reads them, but out of an abundance of caution from a

16  notice perspective, that's what we've been doing --

17         THE COURT:  Well, it's really not --

18         MR. LINSEY:  -- that is what we've been doing.

19         THE COURT:  It's really not notice, obviously;

20  it's service.  It's service, right?  I mean, everybody calls

21  it "notice," but it's service, because, otherwise, you know,

22  whatever.

23         But the point is, I don't -- in any event, I don't

24  understand 6, "any who's requested notice but is unable."

25  Now, that would apply to a party who has filed a proof of

1  claim, because they can check the box and say, Send all

2  notices to this box, but they haven't filed a notice of

3  appearance.

4          But we might need to work on that in the future; I

5  mean, remember, there's a new rule that went into effect, I

6  don't know, 2017, '18, '19, something, that says under

7  2002(k) or some subsection -- I don't remember if that's the

8  right subsection -- you can ask for a specific list in a

9  case.

10          I've never understood why we can't do that.  I

11  think we can.  But I don't want to waste everybody's time

12  this afternoon talking about that.  I'm just raising this as

13  an issue, because I'm not sure what 6 means, because it's

14  not -- as -- as unable -- I understand that the notice of

15  electronic filing is different, Attorney Linsey, than what

16  the Bankruptcy Noticing Center sends out.  But you're saying

17  on the notice of electronic filing, for example -- Attorney

18  Sarnoff, I'm going to use you as an example -- you're saying,

19  Attorney Linsey, he gets electronic filing; obviously, he has

20  notice of appearance.  But you're also saying he's listed as

21  somebody who gets it mailed to him, as well?

22          MR. LINSEY:  He is listed in the manual-noticed

23  parties, correct --

24          THE COURT:  That doesn't make any sense.

25          MR. LINSEY:  -- where it says, notice will not be

1  electronically mailed to him.

2          THE COURT:  Okay.  All right.

3          Well, we'll take a look at that, then.  Then we'll

4  just leave it in for now and we'll go from there, but that

5  doesn't make any sense to me.  But, you know, in any event...

6          MR. LINSEY:  And, Your Honor, we had it in as an

7  abundance of caution, so we would be happy to not have this

8  subsection.

9          THE COURT:  No, I think we have to keep it for --

10  I think we should keep it in for right now until I can review

11  what you've just said, which is Attorney Sarnoff is a perfect

12  example of someone who shouldn't be, being mailed something.

13  He has a notice of appearance in the case and I think has

14  since the beginning, so I don't know why anybody would be

15  required to or spend time and money serving Attorney Sarnoff;

16  he's already consented to electronic service of all documents

17  by being a filer.

18          So, in any event, again, I don't want to waste any

19  time.  Let's -- we'll move on from that.

20          But with regard to paragraph 3, Attorney Sklarz,

21  are you reading -- do you see paragraph 3?

22          MR. SKLARZ:  I do, Your Honor.

23          THE COURT:  All right.  So are you objecting to

24  paragraph 3?

25          MR. SKLARZ:  I mean, I object to the concept of

1  filing a 9019 motion under seal or in a redacted format.  And

2  that's why I raised this as an objection to the motion to

3  limit.

4          If it gets served out that way and Your Honor

5  ultimately rules in my favor and in the U.S. Trustee's favor,

6  then it has to be reserved.  But for purposes of this

7  discussion today, Attorney Linsey has said what he said -- I

8  won't say it again -- and if we -- and if the trustee -- I

9  apologize -- if the trustee ultimately prevails, no harm, no

10 foul.  If the trustee doesn't prevail --

11         THE COURT:  Okay.

12         MR. SKLARZ:  -- they may have to re-serve.

13         THE COURT:  I understand.  All right.

14         MR. SKLARZ:  I just didn't want to waive the

15 argument.  I didn't want the Court to say, why didn't you

16 bring it to my attention before?  I wanted to make sure it

17 was squared up, because I think it is a service issue nested

18 within what I think is a fundamental problem with how they're

19 noticing it.

20         THE COURT:  I understand.  Okay.

21         So, looking at paragraph 3 in the context of this

22 motion to limit notice, which, in fact, it's to limit

23 service -- I know that's what everyone says, but it's really

24 service; that's what it's all about, right -- the notice

25 provisions of Rule 2002 are what the Clerk's Office or

1  someone else that the Court directs, has to provide a time

2  frame of notice of.  But the underlying motion or whatever it

3  is for relief has to be served, so it's really -- it's -- if

4  it's filed under seal, service of the redacted version shall

5  be served on the noticed parties, right.

6          Isn't that what it should say, Attorney Linsey, I

7  think, anyway.

8          MR. LINSEY:  Yes, Your Honor.

9          THE COURT:  Well, you can push back if you

10 disagree, I'm just --

11         MR. LINSEY:  No, I mean, I wouldn't -- I wouldn't

12 disagree.

13         THE COURT:  -- saying I think that's what it

14 should say.

15         MR. LINSEY:  Your Honor has known me long enough,

16 I wouldn't agree just to be agreeable.

17         We agree, Your Honor.

18         THE COURT:  No, I just -- I think that if you can

19 clean that up, please, and then clean up paragraph 2 with the

20 debtors' counsel and counsel for the Genever parties.  I

21 mean, they're going to get it.  They're electronically --

22 these are all people that are going to get it; they're all

23 electronic receivers.

24         So, I think you should keep 6 the same for now,

25 but I do want to look into the issue.  I will, with the

1  Clerk's Office, about an example like Attorney Sarnoff

2  getting something in the mail when he's already gotten it

3  electronically; I don't understand that for one minute.

4         But, in any event, so Attorney Sklarz, I

5  understand your point.  Your objection is reserved to the

6  hearing on the motion on the 9019 motion that hasn't even

7  been set for a hearing yet, okay.  And it hasn't been set for

8  a hearing because I haven't even looked at it, number one,

9  but number two, when I got this -- when we got this motion to

10 limit the notice, but it should be the notice and service --

11 call it notice and service, I think, Attorney Linsey, of

12 motions --

13         MR. LINSEY:  Yes, Your Honor.

14         THE COURT:  -- then -- and it applies in all

15 avoidance actions, I thought we better address that first,

16 okay.

17         So I think that I understand your point, Attorney

18 Sklarz.  You've made your -- and we will address it when that

19 matter gets set for a hearing, okay?

20         MR. SKLARZ:  Thank you, Your Honor.

21         THE COURT:  All right.  In the meantime --

22         MR. DESPINS:  Your Honor?

23         THE COURT:  Yes?

24         MR. DESPINS:  Your Honor, if I may?

25         There's -- under the rule (indiscernible), what

1  doesn't make sense here -- I need to raise this from a case

2  management point of view -- Attorney Sklarz is appearing on

3  behalf of G Club.  G Club is an entity that we're seeking an

4  alter-ego ruling about, and that was filed in February,

5  February 15th or 14th of this year.

6          So, you might say, Well, you don't have the ruling

7  yet, but that entity, there's extensive testimony at the

8  criminal trial that it was run by Kwok and Wang and that

9  there's -- that company doesn't exist; it's in liquidation.

10  So the question is, who's instructing Mr. Sklarz to spend our

11  money on these issues?

12          Because the money that is a G Club is going to be

13  the estate's money.  That's presumptuous to say that, but

14  it's very likely to be, in light of the testimony at the

15  criminal trial.  So I'm really concerned about somebody

16  appearing on behalf of a liquidating company.

17          Who's running the company today?  Who's giving

18  instructions to Mr. Sklarz?  It's a fundamental issue in the

19  case and I just --

20          THE COURT:  I understand.

21          MR. DESPINS:  -- it just needed to be put on the

22  table.

23          THE COURT:  And I think that's what you'll have to

24  raise all those issues when we come to the next hurdle after

25  this motion, right, after this motion to limit notice and

1   service of --

2           MR. DESPINS:  Yes, Your Honor.

3           THE COURT:  -- compromised motions.  Because I

4   don't have any of that in front of me.  I understand what

5   you've said, but I don't know what was -- you know, I don't

6   know what the testimony or the evidence was at the criminal

7   trial, with regard to -- I just understand that there was a

8   guilty verdict and the jury returned guilty verdict on

9   several counts.  And that Mr. Kwok, I believe, is going --

10  was going to be sends in November and is now not going to be

11  sentenced until December; that's all I know.  I don't know

12  anything more than that.

13          So, I'm not saying you're wrong; I'm saying, I

14  don't have anything in the record before me.

15          MR. DESPINS:  I understand.

16          THE COURT:  Okay.

17          MR. DESPINS:  It's just that this company doesn't

18  exist.  It doesn't operate.  It's --

19          THE COURT:  Well, you all let me know about

20  that --

21          MR. DESPINS:  -- it was always a name.

22          THE COURT:  -- okay?

23          MR. DESPINS:  Okay.  Yes, Your Honor.

24          THE COURT:  All right.

25          MR. SKLARZ:  Your Honor, obviously, we disagree.

1      THE COURT:  I'm sure you do, so --

2      MR. SKLARZ:  -- but that's not necessary.

3      THE COURT:  And we'll see where we end up on that

4  issue, okay?

5      MR. DESPINS:  Yes, Your Honor.

6      THE COURT:  But in the meantime, I do find that

7  the G Club objection to the motion to limit notice, and I

8  will call it, "and service" is not, in my opinion, applicable

9  to this motion, this specific motion that's going to apply to

10 all compromises that may be filed in the avoidance actions

11 and that G Club reserves their right to raise that objection.

12 And I'm going to allow them, subject to whatever anybody else

13 has to say, including what the trustee just said, Attorney

14 Sklarz.

15      If there's something in front of me to show me

16 something that I need to consider, I will consider it,

17 obviously.  We have not set that hearing yet and we will

18 after we enter this order.

19      Now, Attorney Linsey, so I'd like you to revise

20 the proposed order, please.  And just revise it to say that

21 it's, you know, an order granting the motion to limit notice

22 and service of motions, pursuant to 9019 in the mediation

23 avoidance claim settlements.  And then make the changes --

24 I'm sorry -- before the first ordered paragraph, you know,

25 add the language, "and after a hearing held on October 8th,"

1  and then change paragraph two to add the debtors' counsel,

2  and Genever's counsel, and then the Committee's counsel.

3          And then I think you change the third paragraph to

4  say that the motion, the mediation avoidance 9019 motion

5  shall be served on the noticed parties, with the version --

6  the redacted version filed on the public docket, okay.

7          Does that make sense, Attorney Linsey?

8          MR. LINSEY:  So, to be clear on the change to

9  paragraph (f)(3), Your Honor, I just want to look at that for

10 a moment.

11     (Pause)

12         MR. LINSEY:  Okay.

13         THE COURT:  I don't want you to serve a notice.  I

14 want you to serve whatever --

15         MR. LINSEY:  Understood.  So, it will say -- yeah,

16 it will say a copy of the motion will be served --

17         THE COURT:  Right.

18         MR. LINSEY:  -- rather than a notice shall be

19 served.

20         THE COURT:  Right.

21         MR. LINSEY:  That change so completely fine, Your

22 Honor.

23         THE COURT:  Okay.

24         MR. LINSEY:  Understood.

25         THE COURT:  All right.  So I will give you until

1  this Friday, which you may or may not need, unless you tell

2  me you need longer than that, and that's fine.  But I was

3  thinking to give you until this Friday to submit the revised

4  proposed order.

5          MR. LINSEY:  That's plenty of time, Your Honor.

6  I'll have it in by tomorrow.

7          THE COURT:  Okay.  Great.  Thank you.

8          All right.  Now --

9          MS. CLAIBORN:  Your Honor, now, I can -- I

10  apologize, Your Honor.

11          THE COURT:  Go ahead, Attorney Claiborn.

12          MS. CLAIBORN:  Your Honor, when the Court

13  considers what date to use to schedule the hearing on a

14  motion to compromise with W & W and the (indiscernible) to

15  seal issue, could I just ask that that hearing not be

16  scheduled the week of November 18th?  I'm anticipating Your

17  Honor would schedule it for earlier than that, but I just

18  wanted to ask in the event that (indiscernible).

19          THE COURT:  Yeah, I'm not sure when it's going to

20  be scheduled.  We have some scheduling conflicts already in

21  existence, but I understand you're asking not the week of

22  November 18th, which the week before Thanksgiving.

23  Thanksgiving is the following week.

24          MS. CLAIBORN:  Correct.

25          THE COURT:  Okay.  Thank you.  We will note that

 1  request.

 2          MS. CLAIBORN:  Thank you.

 3          THE COURT:  Thank you.

 4          All right.  Now, we can turn, since we've dealt

 5  with all the merits in the --

 6          MR. SKLARZ:  One more thing, Your Honor?

 7          THE COURT:  Oh, Attorney Sklarz, yeah, go ahead.

 8          MR. SKLARZ:  May I be excused?

 9          THE COURT:  Yes.

10          MR. SKLARZ:  I don't have anything to do with the

11  rest --

12          THE COURT:  Yes, you may.  Thank you.

13          MR. SKLARZ:  Thank you, Your Honor.

14          Have a good afternoon.

15          THE COURT:  Okay.  You, too.  Thank you.

16          MR. LINSEY:  Your Honor -- I apologize -- may I

17  mention one thing prior to Your Honor turning to IG, which

18  we're not involved in?

19          THE COURT:  Yes.

20          MR. LINSEY:  Thank you.

21          I just wanted to note that the trustee filed, this

22  morning, a motion to increase the funding cap, with respect

23  to the Mahwah Mansion, which is at 3650.  The funding order

24  for the Mahwah Mansion provided that, subject to the Court's

25  schedule, that a motion that's limited to that relief, just

1  increasing the funding cap, may be heard on seven days'

2  notice.  So, if possible, we'd ask that that be heard at the

3  hearing a week from today; if not, then a hearing a week

4  after that.  I just wanted to mention that notice provision

5  of the funding order and that's all I have, Your Honor.

6  Thank you.

7          THE COURT:  Okay.  We'll take a look at that,

8  hopefully, later today, okay?

9          MR. LINSEY:  Thank you so much, Your Honor.

10          THE COURT:  All right.  Thank you.

11          All right.  Now, we'll turn to the Genever/AIG

12  Adversary 23-05007.  And the three matters that are on the

13  calendar in that adversary are the motion to amend the

14  primarily order to extend damage, expert discovery; the order

15  setting the status conference, we -- you know, I think we did

16  that; for many reasons, we obviously don't need to set

17  another status conference at this time unless someone tells

18  me that we should -- and then the motion for leave to depose

19  the individual debtor.

20          So, to me, the 115 and 121 are interrelated.  I'm

21  not sure if everybody else agrees with that, but I'm happy to

22  hear from the Plaintiff first and then the Defendant.

23          MR. MCCORMACK:  Thank you, Your Honor.

24          Again, Michael McCormack, on behalf of Genever.

25  As the Court is aware, we filed a motion to modify the

1    pretrial order to stay deposition and further discovery of

2    expert witnesses, pending a decision by the Court on

3    Genever's motion for summary judgment, as to Count 4, which

4    is a count for declaratory relief, as to coverage under the

5    AIG policy for the loss, and AIG has opposed that motion.

6         The motion was filed because AIG seeks to take six

7    depositions of experts that we previously testified as

8    damages experts, who will testify about repairs and costs and

9    replacement costs to repair and replace the damaged apartment

10   arising from the buyer.  And given the fact that these

11   depositions do not have anything to do with whether or not

12   AIG is obligated to provide coverage under the policy, as we

13   argued in our motion for summary judgment, we think good

14   cause exists to stay those depositions until after a ruling

15   to avoid what we consider to be unnecessary use of bankruptcy

16   estate resources to do those depositions.

17        You know, the Court obviously has the discretion

18   and given the fact that they wish to take six depositions of

19   nothing that relates to liability under the policy and they

20   have not indicated that it relates to liability, as we set

21   forth in our motion and our reply brief, we think it makes

22   judicial and economic sense to stay these depositions and

23   further expert discovery until the Court rules on the summary

24   judgment motion.

25        THE COURT:  Okay.  Thank you.

1           Attorney O'Connor?

2           MR. O'CONNOR:  Good afternoon, Your Honor.

3           We're in violent agreement with Genever on

4   something Mr. McCormack just said twice, and that is these

5   depositions have nothing to do with the issues raised in the

6   summary judgment motion.  And that's our point, our point is

7   no matter how that motion is decided, these depositions are

8   going to have to take place because the Court could grant the

9   motion -- we don't think it should, but it could -- and if it

10  does, then there's still going to be a damages case and we're

11  still going to have to take deposition testimony.

12          If the Court denies the motion, which we think it

13  should, we're still going to have to take deposition

14  testimony of their experts on damages.

15          Now, I'm as happy to prevent expenditure of legal

16  costs that don't need to be expended, but there's no

17  connection between the summary judgment motion and these

18  depositions.  If they want to not do the damages discovery,

19  staying it for a motion that's completely unrelated doesn't

20  make any sense.

21          What we would do, if they want to see if they can

22  avoid those costs, we can stay them and go to mediation and

23  see if we can work it out.  If that happened, we wouldn't

24  need any damages discovery.  But if the case isn't going to

25  resolve, then whether their motion is granted or denied,

1   doesn't have any effect on damages.

2          If the Defendant moves for summary judgment, then

3   I kind of understand because, well, geez, the Court might

4   grant that, then, you know, they win the case.  There's no

5   damages.  Why are we going to waste everybody's time?

6          But that's just not the case here.  So we don't

7   see that there's a reason to not do the damages discovery

8   that we're going to have to do anyway.

9          THE COURT:  Okay.  I'm not sure --

10          MR. MCCORMACK:  Your Honor, if I may respond?

11          THE COURT:  Yeah, go right ahead.

12          MR. MCCORMACK:  As we pointed out in our reply

13   brief, a ruling on the motion for summary judgment, as to the

14   issue of whether this is a covered loss under the property

15   coverage section of the policy, could affect these

16   depositions and we're thinking of counsel.  And one thing

17   that I think is important to note is that, as we point out in

18   our reply brief, the insurance policy contains what's called

19   an "appraisal provision," which allows the parties to proceed

20   with appraisal whenever there's a dispute over the amount of

21   the loss.  Appraisal cannot be used for purposes of

22   determining questions of law, such as coverage in this case.

23          So it is -- look, we recognize that if the case

24   goes to trial, eventually, that the expert depositions may be

25   necessary, but it's also possible that if coverage is found

1  to exist here, the case becomes, in one aspect, an issue of

2  damages.  And if the parties dispute the amount of the loss,

3  either side, I believe, can invoke the appraisal clause,

4  which is an alternative form of resolution under the policies

5  for purposes of monetary disputes.

6         So it's not necessarily absolutely true to say

7  that if the Court grants a summary judgment motion and finds

8  that this is a covered loss, that these damages experts and

9  the depositions will need to go forward.  As we point out in

10  our reply brief, AIG opposed the motion for summary judgment

11  claiming that it needed to do additional discovery to respond

12  to the motion for summary judgment.  They acknowledge that

13  these depositions have nothing to do with liability under

14  summary judgment and for 10 months before the initial stay

15  entered, AIG did nothing other than serve written discovery

16  last summer as to discovery with respect to any liability if

17  coverage.  And up until just a few weeks ago, they did not

18  make any attempt to conduct any depositions that relate to

19  liability in the policy; all they sought to do was to take

20  the depositions of these six experts.

21         MR. O'CONNOR:  That's not quite right, Your Honor.

22  We subpoenaed the FDNY for records relating to the cause and

23  origin of the fire.  The response we got is that it remains

24  under investigation and that we will get the report and any

25  other relevant materials once the investigation is complete,

1  but it's not correct that we didn't do anything.  We've been

2  trying.  We're limited because there's an ongoing

3  investigation as to the cause and origin of the fire.

4         THE COURT:  When did you get that response,

5  Attorney O'Connor, from the FDNY?

6         MR. O'CONNOR:  I would say it was in the spring,

7  Your Honor.  I believe we served the subpoena in February.

8  I'm going off memory, but that's about right.

9         We got a response and we've been checking in every

10 few weeks just to make sure that we didn't fall through the

11 cracks and the investigation is over, and we've been told the

12 investigation is not over, so there's no final report to

13 issue or materials to materials to provide.

14        THE COURT:  All right.  Let me ask you a few other

15 questions.  That's helpful for me to know, thank you.  But

16 let me ask you a few other questions.

17        MR. O'CONNOR:  Yes, Your Honor.

18        THE COURT:  Right now, if I am correct, and I

19 believe I am, fact discovery is completing by November 8th.

20 That's the date in the order that was agreed upon and

21 extended by the parties.  And I have listened or I tried to

22 listen very carefully to everyone's arguments in the case,

23 including Attorney O'Connor, your arguments that you needed

24 additional discovery in order to respond to the summary

25 judgment motion.

1    And so, I have allowed that to happen, as far as
2   time has gone by, I should say.  I'm not saying I know
3   exactly what you did, but I have allowed the time to be
4   extended and then, obviously, stayed, subjects to the
5   criminal proceeding in New York.  And so, my question is,
6   what -- aside from the request that you made to have the
7   Court issue an order to allow you to depose the individual
8   debtor, what other discovery, fact discovery do you need to
9   complete between now and November 8th?

10    MR. O'CONNOR:  We have been trying to subpoena the
11   builder for a deposition, who was involved in the issuance of
12   these policies, Captain Skabeki (phonetic).

13    THE COURT:  Yeah, you haven't been able to
14   subpoena her?

15    MR. O'CONNOR:  We've tried twice and been
16   unsuccessful, so we're changing tack and we're going to issue
17   a 30(b)(6) subpoena to the company.  What we've been told is
18   she works from home and so they would not accept a subpoena
19   for her as Wolfson, her employer.  I don't know her home
20   address, so we're going to issue, this week, a subpoena for
21   Wolfson, a 30(b)(6), that I would assume that will intending
22   to provide Ms. Skabeki.

23    Then we have Kwok.  We have the ongoing FDNY
24   subpoena that we're waiting for the resolution of their
25   report so that we can get discovery there the FDNY on cause

1  and origin of the fire.  Those are the things that we have --

2  things in the fire right now.

3          THE COURT:  But, okay, the summary judgment issue

4  is whether or not there's coverage, not what the extent of

5  the liability is, correct?

6          MR. O'CONNOR:  I certainly agree with that, Your

7  Honor.  The summary judgment motion does not address damages;

8  it addressed coverage and also, as a component of that,

9  whether we're entitled to rescind, based on misrepresentation

10  or concealment.

11          THE COURT:  My recollection of the facts -- again,

12  it's a recollection, so -- but at the time that the fire

13  occurred, which was, I believe, March 15, 2023, wasn't the

14  policy in place the policy that was negotiated with the

15  Chapter 11 Trustee?

16          MR. O'CONNOR:  The policy was not negotiated with

17  the Chapter 11 Trustee.  The policy was renewed and issued to

18  Genever.  At the time that the policy was issued to Genever,

19  the trustee, unbeknownst to AIG, had become the owner of the

20  British Virgin Islands Genever, which my client didn't even

21  know the BVI company was an owner of the domestic Genever

22  that it insured.  It did receive a request to add the trustee

23  as a notice recipient under the policy.

24          Yeah, we understood that Kwok wasn't insured, and

25  so that was not -- you know, we knew that, but we did not

1   know anything about the trustee's ownership posture and we

2   were not negotiating with the trustee or anything like that

3   concerning a renewal of the policy.

4           THE COURT:  Okay.  Well, the reason I say I think

5   these two issues are related, meaning the request by the

6   trustee to stay the discovery of the experts and the request

7   to issue an order to allow AIG to seek to depose Mr. Kwok, is

8   because the fact discovery is running out.  And as I've said

9   already, you made a request some time ago, Mr. O'Connor, to

10  allow you -- your client to conduct discovery, which this

11  Court has allowed, and over the objection of the trustee, by

12  the way, and the trustee's counsel.

13          They argued that that wasn't necessary, but I did

14  allow it.  But at this point, when I look at the request to

15  stay the expert discovery because I could rule against the

16  trustee, right, on summary judgment.  If there's no coverage,

17  if I find there's no genuine issue of material fact or if

18  there is a genuine issue of material fact, then the whole

19  issue of coverage would have to be determined by trial before

20  you'd even get to the damages aspect of it, isn't that right?

21          MR. O'CONNOR:  Well, ordinarily, Your Honor, we

22  take liability and damages discovery at once.  And you're

23  right, if the Court were to deny Genever's motion, then the

24  case would proceed to trial, but that trial would involve

25  liability and damages.

1    THE COURT:  Well, but the Court can also control

2 how that works.  I mean, the Court can bifurcate those claims

3 into one, of a trial on liability and then a subsequent trial

4 on damages.  As Attorney McCormack has stated, there's a

5 provision in the policy that says that there can be some kind

6 of appraisal process that is undertaken if there is a

7 determination of liability.  But there isn't a determination

8 of coverage yet; there isn't that determination.

9    And so, there's a lot of reasons why the time that

10 has passed during this adversary proceeding has not been

11 beneficial to the estates as a whole, which is what I have to

12 consider, Attorney O'Connor, which I know is different from

13 the considerations you have for your client.  But I have to

14 consider all of those issues and how they impact these

15 estates as a whole.

16    And the request to conduct the deposition of the

17 individual debtor, you know, you put forth seven bases upon

18 which that request should be granted.  And when I look at

19 them in your papers, the first four relate, in my opinion, to

20 whether or not there's liability on AIG's part to cover --

21 there's coverage under the policy for this fire.  The first

22 four impact that issue and then the last three impact the

23 damages issues, and those are two separate issues in this

24 case.  And I think that the liability issue has to be

25 determined and that's why I said, your fact discovery ends

1   November 8th.

2          So what I'm going to do is, I'm going to grant the

3   trustee's motion to stay the discovery of the experts until

4   further order of the Court, which means I can -- when I see

5   what goes on in this adversary proceeding or how this

6   proceeds so I can make a determination that maybe that

7   changes, but right now, it's stayed until further order of

8   the Court, the expert discovery.

9          And with regard to your motion to conduct the

10  deposition of Mr. Kwok, I have -- I don't want to let -- if

11  you want to make a statement for the record, I would like you

12  to do that, but I have read your documents, your motions.

13  And you're -- and I understand the rules.  I understand

14  26(b)(1), (b)(2), 26(c), which, of course, I believe we all

15  would be shocked if you didn't get met automatically with a

16  protective order or something, Attorney O'Connor, given that

17  Mr. Kwok is incarcerated and his, from what I understand,

18  sentencing isn't going to be held until December, so they're

19  not going to produce him for a deposition.  That's not going

20  to happen, even if you have an order.  I don't see it.  I

21  mean, maybe I'm wrong, but he's -- ever time he's been asked

22  a question about the corporate structure of Genever LLC and

23  Genever Holdings, he's asserted his right against self-

24  incrimination.  And in this court, with regard to very simple

25  questions, in the overall scheme of his bankruptcy case, he

1  asserted his right against self-incrimination.

2       If you're going to ask him about the pre-

3  condition -- the pre-fire conditions of the apartment and its

4  contents, all the damages issues, I don't see that he would

5  answer those questions, but, you know, you may need to make

6  that order at some point.  That's on the damages issue.

7       But on the liability issue, the ownership

8  structure of Genever Holdings LLC and Genever Holdings Corp.,

9  he's already asserted his Fifth Amendment right to not answer

10  those questions, those very specific questions, by the way.

11       The facts and circumstances surrounding the

12  procurement and the issuance of the AIG policies and the

13  renewal of such, again, he's asserted Fifth Amendment rights.

14       And I heard what you just said about the broker,

15  but we've all known about the broker since last June or July

16  when we had the preliminary injunction hearing, right.  So

17  you've got to get that information, if at all, from her, and

18  apparently you're trying to do that.  You've got 30 days, it

19  seems.

20       And then, with regard to Mr. Kwok and Genever's

21  relationship and communications with its broker, again, you

22  know, you can get that information through the broker.  Mr.

23  Kwok has asserted his Fifth Amendment right against not

24  answering those questions and under the refusal Rules of

25  Civil Procedure, it would be more convenient and less

1    burdensome for you to obtain that information from Wolfson as

2    opposed to trying to get it through an individual who's

3    awaiting sentencing, incarcerated, and we have no idea if

4    there's going to be an appeal of whatever the sentence is.

5    So I don't see how that's going to work.

6              With regard to the potential cause of the fire, I

7    understand what you said about the Fire Department and them

8    not releasing that information.  Again, the cause of the

9    fire, I mean, at only way that's relevant is if you somehow

10   can say under your policy that there isn't coverage because

11   you -- well, you know the standards under your policy better

12   than I, but we have a preliminary injunction in place that

13   already says that the Court thinks it's more likely than not

14   that there would be coverage under this circumstance, right.

15   And so --

16             MR. O'CONNOR:  We do, Your Honor --

17             THE COURT:  Yeah.

18             MR. O'CONNOR:  -- but that's preliminary.

19             THE COURT:  Yeah, it is preliminary, but it's

20   preliminary after an extensive evidentiary hearing on it.  It

21   wasn't an order that entered without the benefit of testimony

22   and evidence.

23             So my -- so, I'm sorry, Attorney O'Connor, is

24   there anything else you wanted to add before I rule?

25             MR. O'CONNOR:  No, Your Honor.  I think we made

1   our record.

2          THE COURT:  Okay.  Thank you.

3          MR. DESPINS:  Your Honor, if I may?

4          THE COURT:  Yes.

5          MR. DESPINS:  There's a factual point.  I'm not

6   going to argue the law, but Mr. O'Connor said that AIG did

7   not know -- you know, when he answered your question about

8   whether I negotiated the policy, I did not negotiate a

9   policy.  There's no issue about that, but AIG was on clear

10  notice that a trustee -- that Kwok was in bankruptcy -- this

11  is two months before the renewal, by the way -- when -- that

12  Kwok was in bankruptcy, that I was a trustee.  So they have

13  all the information -- and that Genever and the parent of

14  Genever were in bankruptcy, as well.

15         So they had all the information they needed to

16  determine, you know, who they're dealing with.  So the

17  argument that somehow they did not know I was on the scene,

18  that's not right.  They had written notice of the appointment

19  and of the fact that it was part of a case involving Genever

20  and Genever Holdings.  So I think that's important to correct

21  that statement.

22         MR. O'CONNOR:  Your Honor, I don't think it's a

23  correction; I think I said exactly that.  The trustee was

24  added as a notice recipient.  Not as an issuer, but as a

25  notice recipient on the policy.  We acknowledge that.

1          MR. DESPINS:  Yeah, but the argument that Kwok was

2   still on the scene makes no sense because the trustee was

3   there.

4          MR. O'CONNOR:  We had notice of that.

5          MR. MCCORMACK:  Yeah, I think the point on that,

6   Your Honor, we addressed this in the motion for summary

7   judgment briefing, Kwok had no interest in any of these

8   companies as of, I think it was August of 2022.  And then, as

9   Attorney Despins just pointed out, AIG was on notice that he

10  was the trustee as of December of 2022, nearly three months

11  before the fire.

12          And this whole issue of the cause of the fire was,

13  I believe, addressed extensively in the summary judgment

14  motion.  We submit it's not relevant to the issue of coverage

15  because this is an all-risk policy and the issue is whether

16  there was any conduct of the insured, Genever LLC, and AIG

17  presented no evidence and cannot present any evidence, in my

18  opinion, that they had knowing to do with this fire.

19          So we don't think that the cause is related to

20  coverage and the fact that the federal authorities have an

21  ongoing investigation, I think that means that the fire, at

22  this point in time, has to be determined, or the cause being

23  undetermined, meaning no cause.

24          THE COURT:  Okay.  Thank you.

25          Does anyone else wish to be heard?

1      (No verbal response)

2           THE COURT:  All right.  With regard to the motion

3  on behalf of Genever Holdings LLC, to amend the pretrial

4  order to extend damages expert discovery, that motion is

5  granted for the reasons stated on the record.

6           Attorney McCormack, I'll need your office to

7  submit a proposed order granting that motion, please.

8           MR. MCCORMACK:  Will do, Your Honor.

9           THE COURT:  How much time do you need to do that?

10  I can give you as much time as you need, but I usually like

11  to put a date on it for the Clerk's Office.

12           MR. MCCORMACK:  I think Friday of this week, if

13  that would be possible?

14           THE COURT:  Friday's fine.  Friday's fine.

15           So we will note -- and just give me one moment,

16  please.

17      (Pause)

18           THE COURT:  All right.  So the proposed order

19  granting the motion will be submitted on or before

20  October 10.  And if you would submit that to the courtroom

21  deputy email box, please, and, obviously, CC Attorney

22  O'Connor and Attorney Thompson so that they obviously know

23  that you have submitted the order to the Court for entry.

24           MR. MCCORMACK:  Yes, Your Honor.

25           THE COURT:  Thank you.

1          And then with regard to the motion of AIG to

2    conduct the deposition of the individual debtor, Mr. Kwok,

3    I'm going to grant that in part, but I'm going to stay its

4    enforcement, Attorney O'Connor.  Because until we -- I decide

5    the motion for summary judgment, I see no point in you having

6    an order to go obtain a two thousand -- excuse me -- a

7    deposition of Mr. Kwok.  And, certainly, it's not going to

8    change the discovery deadline of November 8th, with regard to

9    a fact discovery.

10         So there's two ways we can proceed.  I can grant

11   it, in part, but say that it does not change and it will, in

12   no way, alter or affect the motion for summary judgment,

13   which I'm going to give you some more -- I'm going to talk

14   about that in a minute -- or I can grant it, in part, and

15   then stay its enforcement until after the motion for summary

16   judgment is decided.

17         But I'm not going to allow -- and I'm not saying

18   you were suggesting this -- I'm just telling you, I am not

19   going to have an order with regard to Mr. Kwok's deposition,

20   stall, or in any way, change the November 8th deadline for

21   fact discovery and the Court's ruling on the motion for

22   summary judgment.  In the Court's opinion, whatever Mr. Kwok

23   has to say, if you are able to obtain his deposition, has

24   nothing to do with the motion for summary judgment that's

25   pending before the Court.

 1          So, what's your thought on how you want that to --

 2   well, you can present me with an order, Attorney O'Connor,

 3   because I'm going to make you.  I don't have an order.  But I

 4   want to be clear, if you want that relief, you're entitled to

 5   it, but you can't enforce it, or if you do enforce it, it

 6   cannot be used to extend out the fact discovery deadline of

 7   November 8th and it will have no impact whatsoever on the

 8   motion for summary judgment.

 9          How would you like to proceed?

10          MR. O'CONNOR:  I'm trying to understand, Your

11   Honor.

12          So if it's granted --

13          THE COURT:  This is what -- go ahead.

14          MR. O'CONNOR:  -- you're still not going to

15   consider anything on account of summary judgment?

16          THE COURT:  On the pending motion for summary

17   judgment on whether or not there's coverage.

18          MR. O'CONNOR:  Right.

19          THE COURT:  Right.  With regard to Count 4.

20          MR. O'CONNOR:  Well, if the Court's ruling that

21   it's not going -- nothing will be considered on summary

22   judgment, then I suppose it would make sense to grant it and

23   stay it.

24          THE COURT:  No, what I'm saying so the taking of

25   the deposition, if you're able to do so, will not impact the

1    fact -- there's going to be no extension of November 8th;

2    that's the end of fact discovery.  And whatever you obtain

3    from Mr. Kwok, if you obtain anything, is not -- will not be

4    allowed to be submitted in connection with summary judgment.

5           Here's the deal, right, you said to me, I need

6    time to conduct fact discovery.

7           And I said, Okay, and I didn't rule on the summary

8    judgment, even though the trustee wanted me to.

9           And then you all agreed, which the Court

10   appreciates, to extend the fact discovery out until November

11   8th.  And then, when we're getting close to the end of

12   discovery, you file a motion to take Mr. Kwok's deposition,

13   which you could have done a year and a half ago.

14          I am not going to have that be -- if you decide to

15   proceed with Mr. Kwok, that will not serve as any basis to

16   extend out the November 8th fact discovery deadline or you

17   will not be able to make a submission and further response to

18   the motion for summary judgment, with regard to whatever you

19   obtain from Mr. Kwok.

20          MR. O'CONNOR:  Okay.  That's why I wanted to make

21   sure I understood you, Your Honor.

22          If those are the ground rules, then, we might as

23   well grant it and stay it.

24          THE COURT:  Okay.  So will you prepare that

25   proposed order, then, please and submit it the same way.

1           MR. O'CONNOR:  We will prepare that, Your Honor.

2           THE COURT:  Yeah.  Do you think you could do it by

3    Friday?

4           MR. O'CONNOR:  I can do it by Friday.

5           I just want to put on the record, we're not

6    consenting, but we'll prepare the order that effect.

7           THE COURT:  I'm sure you're not, but that's how

8    we're going to proceed.

9           MR. O'CONNOR:  Okay.  I just want to make sure the

10   record is clear.  Understood.

11          THE COURT:  Now, I will say one other thing,

12   though, Attorney O'Connor.  I did allow the time to go by to

13   see -- to allow you to complete your fact discovery.  I

14   waived that issue and I thought you had some merit to your

15   argument on the fact discovery appeared that's why the time

16   has gone by, okay.

17          I will give you until November 26th to file

18   whatever supplemental document you want to file with regard

19   to the pending motion for summary judgment, based upon

20   whatever discovery, but it's got to be on something you

21   haven't already told me that has to do with some discovery

22   that you obtained since you filed your first response.  And

23   then I'm going to give you until November 26th to do that.

24          MR. DESPINS:  Understood, Your Honor.  Thank you.

25          THE COURT:  That takes into account you're closing

1   up discovery on -- both parties closing up fact discovery on

2   November 8th and then I'm going provide -- give the trustee

3   until December 10 to respond to whatever you file.

4           By the way, you don't have to file anything, but

5   if you want to, that's the date by which you have to file

6   something, Attorney O'Connor.

7           MR. O'CONNOR:  Understood, Your Honor.

8           THE COURT:  Okay.  And then the trustee, if you do

9   file something, the trustee will file whatever response the

10  trustee feels is appropriate, if any, on or before December

11  10th.

12          I'm not inclined to enter another order about

13  that -- make the oral ruling on that unless the both of you,

14  Mr. McCormack and Mr. O'Connor, want to enter into some kind

15  of order that solidifies those dates and/or joins both, the

16  motion to stay the discovery deadline -- excuse me -- the

17  expert discovery and the deposition of Mr. Kwok.  You figure

18  out how you all want to do that, but --

19          MR. O'CONNOR:  Your Honor, the Court set the

20  deadlines.  I don't know that we need an order to do

21  anything.  I mean, we've all taken notes.

22          THE COURT:  Whatever you decide to do, just

23  whatever you do, you're going to do it on or before

24  October 10th with the submission of one order, two orders, or

25  possibly three to the courtroom deputy, okay?

```
 1              MR. DESPINS:  Isn't it the 11th, Your Honor,

 2   the 11th?

 3              THE COURT:  What did I just say?

 4              THE COURTROOM DEPUTY:  You said the 10th.

 5              MR. DESPINS:  You said the 10th.

 6              THE COURT:  Oh, it is the 11th, I'm sorry.  I

 7   apologize, I was looking at the wrong date on the calendar.

 8   I'm so sorry.  Yes, this Friday, October 11.

 9              Is there anything else we need to address this

10   afternoon?

11              MR. O'CONNOR:  No, Your Honor.

12              MR. MCCORMACK:  Your Honor, maybe -- and perhaps

13   this won't be an issue and I can speak offline with Attorney

14   O'Connor -- but having heard the date that you entered today,

15   there are fact witnesses of AIG that relate to other counts

16   of the complaint.  I am -- do I understand correctly that you

17   expect that discovery to be done by the November deadline?

18              THE COURT:  Yes.

19              MR. MCCORMACK:  Okay.  It relates to the bad faith

20   claims, which may or may not be an issue, depending on how

21   the Court rules.  But I will work with Attorney O'Connor on

22   scheduling those.

23              THE COURT:  Thank you.

24              If you both come up with some other process, then

25   you can let the Court know, but that's where things stand and
```

1   that is in accordance with the pretrial order that is in

2   effect at this time.

3           MR. MCCORMACK:  Yes, Your Honor.

4           THE COURT:  Okay.  Is there anything else we

5   should discuss this afternoon?

6           MR. O'CONNOR:  No, Your Honor.

7           MR. MCCORMACK:  No, Your Honor.

8           THE COURT:  All right.  Well, that is the last

9   matter on today's calendar, so hearing nothing from anyone,

10   then Court is adjourned.  Thank you all.

11           COUNSEL:  Thank you, Your Honor.

12           THE COURTROOM DEPUTY:  Court is adjourned.

13       (Proceedings concluded at 2:40 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1
                              CERTIFICATION

2              I certify that the foregoing is a correct

3      transcript from the electronic sound recording of the

4      proceedings in the above-entitled matter to the best of my

5      knowledge and ability.

6

7      /s/ William J. Garling                    October 20, 2024

8      William J. Garling, CET-543

9      Certified Court Transcriptionist

10     For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25