1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF CONNECTICUT
2                          BRIDGEPORT DIVISION

3    IN RE:                         .   Chapter 11
                                     .   Case No. 22-50073 (JAM)
4    HO WAN KWOK, *et al.,*          .
                                     .   (Jointly Administered)
5            Debtors.               .
                                     .
6    . . . . . . . . . . . . . . .  .
                                     .
7    LUC A. DESPINS, CHAPTER 11     .   Adversary Proceeding
     TRUSTEE,                        .   No. 24-05249 (JAM)
8                                    .
             Plaintiff,             .
9                                    .
         v.                          .
10                                   .
     ACA CAPITAL GROUP, LTD.,        .
11   *et al.,*                       .
                                     .
12           Defendants.            .
                                     .
13   . . . . . . . . . . . . . . .  .
                                     .
14   LUC A. DESPINS, CHAPTER 11     .   Adversary Proceeding
     TRUSTEE,                        .   No. 24-05273 (JAM)
15                                   .
             Plaintiff,             .
16                                   .
         v.                          .
17                                   .   Courtroom 123
     NGOK, *et al.,*                 .   Brien McMahon Federal Building
18                                   .   915 Lafayette Boulevard
             Defendants.            .   Bridgeport, Connecticut 06604
19                                   .
                                     .   Tuesday, October 15, 2024
20   . . . . . . . . . . . . . . .  .   1:10 p.m.

21

22                     TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE JULIE A. MANNING
23                UNITED STATES BANKRUPTCY JUDGE

24

25

```
 1    APPEARANCES:

 2    For the Chapter 11
      Trustee:                    Douglas Skalka, Esquire
 3                                NEUBERT PEPE & MONTEITH, P.C.
                                  195 Church Street
 4                                13th Floor
                                  New Haven, Connecticut 06510
 5
                                  -and-
 6
                                  Luc A. Despins, Esquire
 7                                Nicholas Bassett, Esquire
                                  PAUL HASTINGS, LLP
 8                                200 Park Avenue
                                  New York, New York 10166
 9

10    For the U.S. Trustee:       Holley L. Claiborn, Esquire
                                  OFFICE OF THE UNITED STATES TRUSTEE
11                                The Giaimo Federal Building
                                  150 Court Street
12                                Room 302
                                  New Haven, Connecticut 06510
13
      For Mei Guo, Hudson
14    Diamond New York LLC,
      Hudson Diamond Holding,
15    LLC, Leading Shine New
      York, Ltd., and Gypsy
16    Mei Food Services, LLC:     James M. Moriarty, Esquire
                                  ZEISLER & ZEISLER, P.C.
17                                10 Middle Street
                                  Bridgeport, Connecticut 06604
18

19    (APPEARANCES CONTINUED)

20    Audio Operator:             Electronically recorded

21    Transcription Company:      Reliable
                                  The Nemours Building
22                                1007 N. Orange Street, Suite 110
                                  Wilmington, Delaware 19801
23                                Telephone: (302)654-8080
                                  Email:  gmatthews@reliable-co.com
24
      Proceedings recorded by electronic sound recording,
25    transcript produced by transcription service.
```

```
 1   APPEARANCES (CONTINUED):

 2   For G Club Operations,
     LLC, and G Club
 3   International, Ltd.:      Jeffrey M. Sklarz, Esquire
                               GREEN & SKLARZ, LLC
 4                             One Audubon Street
                               3rd Floor
 5                             New Haven, Connecticut 06511

 6   For Yongbing Zhang:       James E. Nealon, Esquire
                               NEALON LAW, LLC
 7                             1266 East Main Street
                               Suite 700r
 8                             Stamford, Connecticut 06902

 9   For Beile Li:             Ivan J. Ladd-Smith, Esquire
                               SPEARS MANNING & MARTINI, LLC
10                             2425 Post Road
                               Suite 203
11                             Southport, Connecticut 06824

12   For Victor Cerda:         Jason M. Swergold, Esquire
                               YANKWITT, LLP
13                             140 Grand Street
                               Suite 705
14                             White Plains, New York 10601

15   For Rule of Law
     Foundation III, Inc.
16   and Rule of Law
     Society IV, Inc.:         Bryan Ha, Esquire
17                             BRYAN HA, ATTORNEY AT LAW
                               455 Tarrytown Road
18                             Suite 1244
                               White Plains, New York 10607
19
     For Gladys Chow:          Emily McDaniels, Esquire
20                             SHER TREMONTE, LLP
                               90 Broad Street
21                             23rd Floor
                               New York, New York 10004
22

23

24

25
```

```
 1   APPEARANCES (CONTINUED):

 2   For Celestial Tide
     Limited; G Fashion (CA);
 3   G Fashion Hold Co A
     Limited; G Fashion Hold
 4   Co B Limited; G Fashion
     International Limited;
 5   G Fashion Media Group,
     Inc.; GF IP, LLC; GF
 6   Italy, LLC; GFNY, Inc.;
     Hamilton Capital Holding
 7   Limited; Hamilton
     Investment Management
 8   Limited; Hamilton
     Opportunity Fund SPC;
 9   Himalaya Currency
     Clearing Pty Ltd.;
10   Himalaya International
     Clearing Limited; Himalaya
11   International Financial
     Group Limited; Himalaya
12   International Payments
     Limited; Himalaya
13   International Reserves
     Limited; Major Lead
14   International Limited;
     William Je; ACA Capital
15   Group Ltd.; GETTR USA,
     Inc.; Hamilton Opportunity
16   Fund SPC; Hamilton PE Fund
     SP; Hamilton Digital
17   Assets Fund SP; Himalaya
     Currency Clearing Pty Ltd.;
18   Himalaya International
     Clearing Ltd.; Himalaya
19   International Financial
     Group Limited; Taurus
20   Fund LLC; Taurus
     Management LLC:          Michael T. Conway, Esquire
21                            LAZARE POTTER GIACOVAS & MOYLE, LLP
                              747 Third Avenue
22                            16th Floor
                              New York, New York 10017
23

24

25
```

```
1   APPEARANCES (CONTINUED):

2   For the Official
    Committee of
3   Unsecured Creditors:        Kristin B. Mayhew, Esquire
                                PULLMAN & COMLEY, LLC
4                               850 Main Street
                                8th Floor
5                               Bridgeport, Connecticut 06601

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                    INDEX

2    MOTIONS:                                                        PAGE

3                    **In re:  Ho Wan Kwok, *et al., Debtors.***
                            **Case no. 22-50073 (JAM)**
4    Matter
     No. 3592   #3592; Motion to Sell 373 Taconic Road,               11
5               Greenwich, Connecticut Free and Clear of Liens
                Claims, Interests and Encumbrances, (II)
6               Authorizing and Approving Purchase and Sale
                Agreement and (III) Granting Related Relief
7               Filed by Douglas S. Skalka on behalf of Luc A.
                Despins, Chapter 11 Trustee
8
                Court's Ruling:                                       51
9
     Matter
10   No. 3650   #3650; Motion for Order Increasing Cap on             53
                Funding of Expenses of Mahwah Mansion Filed by
11              Patrick R. Linsey on behalf of Luc A. Despins,
                Chapter 11 Trustee
12

13              Court's Ruling:                                       56

14                  **In re:  Luc A. Despins, Chapter 11 Trustee v**
                            **ACA Capital Group Ltd., *et al***
15                      **Adversary Proceeding no. 24-05249 (JAM)**
     Matter
16   No. 89     #89; Order Setting Status Conference                  12

17                  **In re:  Luc A. Despins, Chapter 11 Trustee v**
                                    **NGOK, *et al.***
18                      **Adversary Proceeding no. 24-05273 (JAM)**
     Matter
19   No. 94     #94; Order Setting Status Conference                  19

20
     Transcriptionists' Certificate                                   59
21

22

23

24

25

1        (Proceedings commenced at 1:10 p.m.)

2            THE COURT:  Be observing.  Have we got parties on

3   observing?

4            THE COURTROOM DEPUTY:  Yes, Your Honor.

5            THE COURT:  Okay.  Thank you.

6            THE COURTROOM DEPUTY:  You're welcome.

7            THE COURT:  All right.  Then, if the courtroom

8   deputy will call the calendar, please.

9            THE COURTROOM DEPUTY:  Case 22-50073, Ho Wan Kwok;

10  Adversary Number 24-05249, Despins v ACA Capital Group Ltd.,

11  et al.; Adversary 24-05273, Despins v NGOK, et al.

12            THE COURT:  Okay.  Good afternoon.

13            If I could have appearances for the record,

14  starting with the Chapter 11 Trustee, please.

15            MR. DESPINS:  Good afternoon, Your Honor.  Luc

16  Despins, Chapter 11 Trustee.

17            THE COURT:  Good afternoon.

18            MR. BASSETT:  Good afternoon, Your Honor.  Nick

19  Bassett from Paul Hastings, counsel for the Chapter 11

20  Trustee.

21            THE COURT:  Good afternoon.

22            MR. SKALKA:  Good afternoon u Your Honor.  Douglas

23  Skalka, Neubert, Pepe & Monteith, local counsel for the

24  Chapter 11 Trustee.

25            THE COURT:  Good afternoon.

1    MS. CLAIBORN:  Good afternoon, Holley Claiborn for

2  the U.S. Trustee, and I'm just sitting here because it's an

3  open table.

4    THE COURT:  Good afternoon.

5    MR. MORIARTY:  Good afternoon, Your Honor.  James

6  Moriarty from Zeisler & Zeisler.  With me today is Steven

7  Kindseth and we represent in Adversary 24-05273, Ms. Mei Guo,

8  Hudson Diamond New York LLC, Hudson Diamond Holding, LLC,

9  Leading Shine New York, Ltd., and Gypsy Mei Food Services,

10  LLC.  And if I may, in Adversary 24-05249, Attorney Kindseth

11  and I filed appearances today on behalf of Ms. Mei Guo.

12    THE COURT:  Okay.  Thank you.  Good afternoon.

13    MR. SKLARZ:  Good afternoon, Your Honor.  Jeffrey

14  Sklarz, Green & Sklarz, for the Defendants G Club Operations

15  LLC, and G Club International Ltd., in both adversaries.

16  Thank you.

17    THE COURT:  Good afternoon.

18    MR. NEALON:  Your Honor, James Nealon on behalf of

19  Yongbing Zhang in 05273.  Thank you.

20    THE COURTROOM DEPUTY:  I'm sorry, I didn't get

21  this gentleman's last name.

22    THE COURT:  Nealon.

23    MR. NEALON:  Nealon, N-e-a-l-o-n.

24    THE COURTROOM DEPUTY:  Okay.  Thank you.

25    MR. LADD-SMITH:  Good afternoon, Your Honor.  Ivan

1  Ladd-Smith from Spears Manning & Martini.  I represent Beile

2  Li in the 05273 matter.  Good afternoon.

3                    THE COURT:  Good afternoon.

4                    MR. SWERGOLD:  Good afternoon, Your Honor. Jason

5  Swergold from Yankwitt, LLP.  I represent the Defendant

6  Victor Cerda in Adversary Proceeding 05273.

7                    And with Your Honor's permission, Defendant Aaron

8  Mitchum (phonetic), who couldn't be here today, asked if I

9  would stand in for him, solely for purposes of discussing

10  scheduling in that adversary proceeding.  So I would

11  represent him for that purpose today, as well.

12                    THE COURT:  Okay.  Thank you.

13                    MR. SWERGOLD:  Thank you.

14                    MR. HA:  Good afternoon, Judge.  Bryan Ha.  I

15  represent Defendant Rule of Law Foundation III, Inc. and Rule

16  of Law Society IV, Inc. in both adversary proceedings.

17                    THE COURT:  Good afternoon.

18                    MS. MCDANIELS:  Good afternoon, Your Honor.  My

19  name is Emily McDaniels and I'm here with my colleague Noam

20  Biale from Sher Tremonte, LLP, and we represent Defendant

21  Gladys Chow in the 05273 matter.

22                    THE COURT:  Good afternoon.  Thank you.

23                    MS. MAYHEW:  Good afternoon, Your Honor.  Kristin

24  Mayhew, on behalf of the Creditors Committee.

25                    THE COURT:  Good afternoon.

1    MR. CONWAY:  Good afternoon, Your Honor.  Michael

2  Conway, Lazare Potter Giacovas & Moyle.  We represent in the

3  -- excuse me, Your Honor -- in the 24-05249 matter, ACA

4  Capital, LLC, Celestial Tide Limited; G Fashion (CA); G

5  Fashion Hold Co A Limited; G Fashion Hold Co B Limited; G

6  Fashion International Limited; G Fashion Media Group, Inc.;

7  GF IP, LLC; GF Italy, LLC; GFNY, Inc.; Hamilton Capital

8  Holding Limited; Hamilton Investment Management Limited;

9  Hamilton Opportunity Fund SPC; Himalaya financial -- I'm

10  sorry -- Himalaya Currency Clearing Pty Ltd.; Himalaya

11  International Clearing Limited; Himalaya International

12  Financial Group Limited; Himalaya International Payments

13  Limited; Himalaya International Reserves Limited; Major Lead

14  International Limited; and William Je.

15    In the 24-05237 matter, we represent ACA Capital

16  Group Ltd.; GETTR USA, Inc.; Hamilton Capital -- Hamilton

17  Opportunity Fund SPC; Hamilton PE Fund SP; Hamilton Digital

18  Assets Fund SP; Hamilton Currency Clearing Pty Ltd. [sic];

19  Himalaya International Clearing Ltd.; Himalaya International

20  Financial Group Limited; Taurus Fund LLC; Taurus Management

21  LLC; and William Je.

22    THE COURT:  Thank you.  Good afternoon.

23    MR. CONWAY:  Thank you, Your Honor.

24    THE COURT:  Does anyone else wish to note their

25  appearance for the record?

1          (No verbal response)

2               THE COURT:  All right.  Trustee Despins,

3    obviously, on the calendar today are two motions in the main

4    case and then these status conferences in these two adversary

5    proceedings in the alter-ego and civil RICO adversary

6    proceeding.  I would bet, but I could be wrong, that the

7    majority of people are here for the adversary proceedings, so

8    do you want to proceed with the adversary proceeding status

9    conferences first?

10               MR. DESPINS:  Yes, Your Honor.  I think it makes

11   sense to do that.

12               THE COURT:  Okay.  Go right ahead.

13               MR. DESPINS:  Mr. Bassett will be handling that.

14               THE COURT:  Okay.  Thank you.

15               All right.  So for whomever is here, in addition

16   for the trustee's counsel, the status conferences were set in

17   these two adversary proceedings because there are numerous

18   Defendants and there are numerous motions to dismiss filed in

19   both of the adversary proceedings and, in fact, I think, and

20   I -- Attorney Bassett, you can correct the record, please,

21   when you do speak, I think in one of these adversary

22   proceedings, some parties had until today to respond, as

23   well.  I'm not sure if everyone has responded, but in any

24   event, as you know and all the people here know, these

25   adversary proceedings have multiple Defendants and whether

1   parties have been defaulted or a request for default is

2   entered or a default judgment is entered or an answer has

3   been filed or a motion to dismiss has been filed, we have all

4   different kinds of statuses, with regard to the numerous

5   Defendants.

6          So if we look first at the alter-ego adversary,

7   which happens to have the first number numerically, 24-05249,

8   I see that there has been an answer filed, default judgments

9   have entered against a few Defendants.  Several Defendants

10  have been defaulted, but there's also several motions to

11  dismiss pending.  And the Court entered an order staying the

12  trustee's time to respond to those motions to dismiss until

13  after the status conference today.

14         So, obviously, I -- well, maybe it's not obvious,

15  but the order was entered so that all of the parties,

16  including any Defendants that wished to participate and then

17  have filed motions to dismiss, would think about how the

18  parties expect the Court is going to handle these matters.

19  So, Attorney Bassett, I'll turn to you, first.

20         MR. BASSETT:  Thank you, Your Honor.

21         So I'll also start with the obvious alter-ego

22  complaint and then we can talk about civil RICO, as well.

23  So, just to recap the status, your observation was correct.

24  There have been some answers filed.  There's been some

25  default judgments entered.  There's been some entries of

1  default and several motions to dismiss.  I think altogether,

2  by my count, in the alter-ego litigation, there are, I

3  believe, 43 total Defendants.  Of those 43, I believe there

4  were 3 answers filed.  I believe 18 Defendants have moved to

5  dismiss, some of those who were represented by common counsel

6  were part of one consolidated motion, but 18 total Defendants

7  have filed motions to dismiss.  There are two Defendants

8  against whom the Court has actually already entered default

9  judgments; that is K Legacy and Chang Guo, pursuant ECF 76.

10 In addition to those two default judgments, the Court has

11 entered 16 entries of default, so the trustee is in the

12 process of preparing a motion for default judgment, but that

13 has not yet occurred for those 16.  And then there are

14 another four Defendants who have not yet answered and there's

15 not yet an entry of default.

16         So, Your Honor, I think the answer to the question

17 of how we proceed from here is going to be, in some ways

18 simplified by the fact that our intention, in response to the

19 motions to dismiss that were filed, is to amend the complaint

20 as a matter of right.  We would do that to, obviously, add

21 additional allegations, based on the trustee's ongoing

22 investigation.  There may be other parties that are added to

23 the litigation, as well.  Our view is that while the trustee

24 is amending the complaint, it does not make sense for the

25 trustee to have to respond to pending motions to dismiss or

1   for the Court to spend its time and resources addressing

2   those motions to dismiss.  Obviously, any parties who have

3   filed motions to dismiss in response to the original

4   complaint would have their right to file a motion to dismiss

5   in response to the amended complaint, including raising the

6   same arguments that they think that those grounds for

7   dismissal still exist.

8           We would propose filing that amended complaint

9   within 14 days from today if that's acceptable to the Court.

10  Parties could, thereafter, answer, and then, if they filed

11  motions to dismiss, obviously, the trustee would respond to

12  those in due course.  But hopefully this time, if there's

13  been an amended complaint, there would be more consolidation

14  in terms of uniform answer deadlines and, therefore, we could

15  move forward on a briefing schedule that's common to all the

16  parties.

17          A couple other notes, Your Honor.  One primary

18  other note or consideration, as I said, there are two default

19  judgments have been entered and then 16 entries of default.

20  It is important to the trustee to not have either the default

21  judgments or the entries of default disturbed by an amended

22  complaint, so what we would propose to do as part of the

23  Court's scheduling order in this matter is to have those

24  Defendants against whom either defaults have entered or

25  against whom the Court has entered a default judgment severed

1   from the complaint under Federal Rule of Civil Procedure 21,

2   which the Court can do in its discretion and we think that's

3   warranted here, because the trustee, you know, has no need to

4   pursue an amended complaint as to those parties who already

5   have the defaults and then would intend to take advantage of

6   those defaults and move for a default judgment when that has

7   not yet been done.

8          So, Your Honor, that's where things stand from the

9   trustee's perspective on the omnibus alter-ego litigation.

10  And while these motions to dismiss the amended complaint are

11  pending, we would confer with the Defendants regarding

12  discovery and, you know, try to present something uniform to

13  the Court.  Obviously, we haven't done that yet, but from a

14  sort of broad level, that's how we envision proceeding.

15          THE COURT:  Okay.  With regard to what you've

16  stated, you're saying that the trustee is going to prepare an

17  amended complaint that will be filed two weeks from today --

18          MR. BASSETT:  That's what we're proposing, Your

19  Honor.

20          THE COURT:  -- the 29th?

21          MR. BASSETT:  Correct.

22          THE COURT:  And what's the responsive -- what's

23  the response to that for the Defendants who aren't defaulted

24  or against whom a default judgment has entered?  You said a

25  date and I didn't hear you.

1        MR. BASSETT:  Oh, I did not actually give a

2   response deadline.  I would propose 21 days for Defendants to

3   respond to the amended complaint and then the trustee could

4   file an opposition to the motions to dismiss within 14 days

5   after that.

6        THE COURT:  Okay.  So, I haven't looked at Rule 21

7   recently.  You have to file a motion to sever?

8        MR. BASSETT:  I believe that's what the rule

9   contemplates, Your Honor.  I would propose to do it orally

10  under the circumstances, given that we are severing

11  Defendants who have defaulted.  Obviously, if the Court would

12  like us to file a written motion, we could do that.

13       THE COURT:  I don't know.  I have to look at it.

14  I haven't looked at it for some time, so I'd have to look at

15  it.

16       MR. BASSETT:  Sure.

17       THE COURT:  All right.  So I understand, I

18  believe, what your thoughts are, as far as the management of

19  this adversary proceeding would take place.  I'm just looking

20  to make sure I don't have any other questions at the moment

21  before I hear from the Defendants who are here.

22       MR. BASSETT:  And, Your Honor, we could take each

23  one in turn or I'm happy to do civil RICO now, as well,

24  whichever you think is most efficient.

25       THE COURT:  Well, I would assume that your plan

1  isn't very different.  Is it different?

2         MR. BASSETT:  It is actually different.

3         THE COURT:  Oh, so I made the improper assumption.

4         MR. BASSETT:  So, Your Honor, if I may?

5         THE COURT:  Well, yeah, hold on a second.

6         MR. BASSETT:  Sure.

7         THE COURT:  I want to -- for the Defendants that

8  are in the courtroom and that have filed motions to dismiss,

9  does anyone wish to be heard, with regard to the trustee's

10 proposal of how to proceed in the alter-ego proceeding?

11        MR. SKLARZ:  Good afternoon, Your Honor.  Jeffrey

12 Sklarz for G Club.  I would just ask that --

13        THE COURT:  I'm sorry, I can't hear you.

14        MR. SKLARZ:  Oh, I'm sorry, Your Honor.

15        THE COURT:  That's all right.

16        MR. SKLARZ:  I would just ask that the trustee

17 will make sure to file a redline version of the amended

18 complaint, as required by the Local Rules, to make it easier

19 for us to respond to the amended complaint.

20        THE COURT:  I'm sure that wouldn't be a problem.

21        MR. BASSETT:  Of course, Your Honor.

22        THE COURT:  So, Attorney Sklarz, just before you

23 walk away, so you don't have any objection to the plan as

24 outlined by Attorney Bassett?  So -- because what that would

25 do, if that is the plan that gets carried forward, then all

1  the motions to dismiss are moot because you have to, then,

2  look at an amended complaint and discern whether you're going

3  to file another amended -- not another, but a Ms. Convoy's to

4  the amended complaint.  So you have no opposition to that?

5          MR. SKLARZ:  If they're going to file an amended

6  complaint, I see no reason why we need to adjudicate what

7  would be an ultimately moot motion.  So I have no -- as long

8  as the amended complaint is actually filed, I have no problem

9  proceeding that way and I have no reason to believe that

10  Attorney Bassett isn't going to file his amended complaint.

11          THE COURT:  And the 21-day response period that's

12  been proposed by Attorney Bassett, I think that -- well,

13  that's what the Local Rule -- that's what the District Court

14  Rules are.

15          MR. SKLARZ:  I don't have any issue with that.

16  The following week is Thanksgiving.  The following week on

17  that, I start a trial, so there's no good time for me, so the

18  19th sounds great.

19          THE COURT:  Okay.  Thank you.

20          MR. SKLARZ:  Thank you.

21          THE COURT:  Does anyone else wish to be heard?

22     (No verbal response)

23          THE COURT:  Okay.  Then, Attorney Bassett, we can

24  go to the RICO action, then and your proposal about it.

25          MR. BASSETT:  Thank --

1          THE COURT:  Okay.  Go ahead.

2          MR. BASSETT:  Yeah, sorry.  Thank you, Your Honor.

3          So, I'll do the same for civil RICO, at the

4  outset, just give a brief recap of the number of Defendants

5  and sort of where things stand.  So, in that litigation,

6  there are, by my count 54 total Defendants.  On August 16th,

7  the Court entered an order extending many answer deadlines

8  and there was some one-off additional extensions.

9  Ultimately, parties either responded or not last month.

10 Twenty-six of the Defendants have moved to dismiss the

11 complaint; again, many of those are in combined motions where

12 Defendants are represented by common counsel.  Twenty-eight

13 Defendants, Your Honor, have not answered or otherwise

14 responded to the complaint.

15         At present, I don't believe there are entries of

16 default or default judgments just yet, but the trustee

17 intends to pursue those.

18         So, Your Honor, our proposal, with respect to this

19 complaint is different because there's sort of a -- and some

20 of this is pointed out in the motions to dismiss -- but

21 there's an overlap between the complaints in that the relief

22 that the trustee is seeking in the civil row coalition as to

23 many Defendants is in the alternative to the relief that he

24 is seeking in the omnibus alter-ego litigation, the reason

25 being that many of the entities at issue in the omnibus

1  alter-ego litigation, which the trustee believes are alter-
2  egos of the debtor and which the trustee seeks an order from
3  the Court, providing that all of their assets are property of
4  the estate, many of those same entities are also Defendants
5  in the civil RICO litigation where the trustee is seeking an
6  award of damages.

7       Obviously, if the trustee were to prevail on his
8  argument that these entities are alter-egos of the debtor,
9  such that all of their assets are property at the estate, the
10  trustee, at that point, would have no reason to, and would
11  not intend to continue to pursue damages claims against those
12  entities in the civil RICO litigation because that would be a
13  claim by the trustee against himself, essentially.

14       And so, if you look at, of the civil RICO
15  Defendants who have actually responded to the complaint, I
16  think I said there were 26 or 28 who have filed motions to
17  dismiss, nearly half of those, Your Honor, are entities that
18  are also subject to the omnibus alter-ego litigation.  And
19  because of that and because the trustee does not have any
20  reason to move forward with civil RICO claims against those
21  entities at this time until the alter-ego litigation is
22  adjudicated, it's our view that it would be in the best
23  interests of the estate and the Court and all parties
24  concerned for the Court to actually impose a stay on the
25  civil RICO litigation for the time being while the omnibus

1  alter-ego litigation continues.

2         I think the result of that, Your Honor, is while

3  the alter-ego litigation sorts itself out, the civil RICO

4  case, in the meantime, could be drastically simplified.

5  Obviously, again, if the Court were to enter orders finding

6  that some or all of the entities in the alter-ego litigation

7  are, in fact, property of the estate, those entities would be

8  removed from the list of Defendants in the civil RICO

9  litigation.  In addition to that, we have not been sitting on

10  our hands for the past several months while these litigations

11  have been on file.  We have, in fact, been having discussions

12  with Defendants, where we were able to do so, including the

13  civil RICO Defendants, in particular.  I anticipate having a

14  settlement with least one of the individual Defendants in the

15  civil RICO litigation, if not more, so I think over time we'd

16  likely be able to simplify that litigation by reducing the

17  number of Defendants in that way, as well.

18         So, that's how we would propose, Your Honor,

19  dealing with the civil RICO litigation; again, we just think

20  that makes logical sense in light of the overlap between the

21  two adversary proceedings.  The other thing that we would do,

22  and we can do this, again, by written motion, is for those

23  who have had the opportunity to respond to the complaint and

24  have not timely done so, again, our view is that we would

25  move to sever those particular parties from the complaint so

1  that the trustee could proceed to file suits against them

2  while the remainder of the litigation is stayed.

3          THE COURT:  Just on the parties that haven't

4  timely responded?

5          MR. BASSETT:  That's correct, Your Honor.

6          THE COURT:  Okay.  I think I understand what

7  you're saying.

8          All right.  So, then, I guess I need to hear from

9  the Defendants in the civil RICO action who are in the

10 courtroom and have filed motions to dismiss, if they have any

11 opposition.  What is the position of one or any of the

12 Defendants with regard to the proposal how to proceed with

13 the civil RICO action that Attorney Bassett just made on the

14 record?

15         MR. BASSETT:  Your Honor, the last thing I would

16 note, if I may, is that if and when we do proceed with the

17 civil RICO litigation, our intention, as in the omnibus

18 alter-ego litigation, would be to file an amended complaint,

19 which we have not yet done and, therefore, have the ability

20 to do as of right, and therefore, I think the pending motions

21 to dismiss should be mooted in any way, in any event when we

22 get to that point.  But, again, I don't think it makes sense

23 for these --

24         THE COURT:  But you're saying that's only if the

25 matter isn't stayed or when the stay is lifted?

1           MR. BASSETT:  Exactly, Your Honor.

2           Our view, in the interests of saving estate

3    resources, significantly curtailing the costs that we would

4    otherwise incur, it makes sense to not spend the time and

5    effort completing an amended complaint at this time when,

6    again, you know, a lot of what we would add may end up coming

7    out based on intervening events.

8           THE COURT:  Understood, thank you.

9           Do any of the Defendants wish to be heard, with

10   regard to the trustee's proposal of how to proceed in the

11   civil RICO action?

12          MR. SWERGOLD:  Thank you, Your Honor.  Again,

13   Jason Swergold on behalf of Defendant Victor Cerda.

14          Obviously, my intention here is not to litigate

15   our pending motion to dismiss, but I think a little bit of

16   background is important for the argument that I'm going to

17   make, which would be to oppose the stay, at least with

18   respect to my client.  Mr. Cerda is a private attorney.  He

19   has had this civil RICO action pending over his head now for

20   civil E. several months because it was stayed pending the

21   criminal case against the debtor.  In the 18-month

22   investigation of the trustee to date, prior to the filing of

23   the civil RICO action, there were a total of two allegations

24   against him, one, that he was listening on a phone call and

25   one that his law firm was paid for legal work.  He obviously

1  has an interest in being done with this civil RICO claim

2  against him, which we feel is meritless and which the trustee

3  is not going to be able to amend their complaint in a way to

4  even be able to stay the claim.

5       Courts in this circuit have observed the dangers

6  and the damages to Defendants just by being named as

7  Defendants in civil RICO matters, which is why courts give

8  such exacting scrutiny to civil RICO claims.  And so, you

9  know, I emailed with Mr. Bassett last week about this case

10  and I was told that they were going to amend the complaint as

11  of right.

12       Now, I hear for the first time that they are

13  seeking to just stay the civil RICO matter, which means that

14  my client now will have to sit here sort of in purgatory

15  waiting and waiting while these claims against him, again, a

16  private attorney at his own law firm with a distinguished

17  career in both, public and private practice, has to wait with

18  these claims pending against him.  So I would object to the

19  stay because he has a real interest in litigating the civil

20  RICO claim against him.

21       THE COURT:  Okay.  Thank you.

22       MR. SWERGOLD:  Thank you.

23       THE COURT:  Any of the other Defendants?

24       MS. MCDANIELS:  Yes, Your Honor, thank you.  Emily

25  McDaniels and Noam Biale, on behalf of Gladys Chow.

1        We would join in Attorney --

2        THE COURT:  Would you just spell your Defendant's

3   last name for me, please.

4        MS. MCDANIELS:  Chow, C-h-o-w.

5        THE COURT:  Right.  Okay.  Thank you.

6   MS. MCDANIELS:  So, we would join in Attorney Swergold's

7   objection to the stay.  Our client is similarly situated.

8   She is only alleged to have engaged in two different -- She's

9   only mentioned twice in the entire complaint; she is not

10  mentioned with respect to any of the predicate acts.

11       She has an interest in moving on with her life.

12  She no longer works with any of the defendants' companies.

13  And we think that, you know, our motion to dismiss deserves

14  to be handled promptly and not after a stay or after a

15  further amendment.  Thank you.

16       THE COURT:  Okay.  Thank you.

17       Anyone else wish to be heard?

18     (Participants confer)

19       MR. MORIARITY:  Good afternoon, Your Honor.  James

20  Moriarity for Mei Guo, Hudson Diamond New York, LLC, Hudson

21  Diamond Holding, LLC, Leading Shine New York Limited, and

22  Gypsy Mei Food Services, LLC.

23       I'm not taking a position, Your Honor, on the

24  trustee's request for a stay.  I just want to clarify.  My

25  five clients have not responded to the complaint --

1          THE COURT:  Hold on just a second, Attorney

2    Moriarity.

3          (Pause in proceedings)

4          MR. MORIARITY:  I won't take that as a hint that

5    my time is up.

6          THE COURT:  No, it's not a time thing, it's an

7    issue of air in the courtroom.

8          MR. MORIARITY:  I see.

9          THE COURT:  You can go right ahead.

10         MR. MORIARITY:  All right.  Thank you, Your Honor.

11         My clients have not responded to the complaint as

12   of today by agreement with the trustee, who, through his

13   counsel, has worked with us on extensions, as we worked to

14   figure out the direction that his case is going.

15         My clients' response is due today.  And I would

16   ask that, to the extent the case is going to be stayed or

17   it's going to be dismissed without prejudice to refile,

18   whatever is going to happen procedurally, that my clients be

19   included on the side of those who have responded.  I don't

20   want to be back in front of the Court arguing a motion for

21   default because my clients have not responded to the

22   complaint or don't respond to it as of today.  So I would ask

23   that the Court, whatever order is entered, that the case be

24   stayed as to my five clients.  Thank you.

25         THE COURT:  Okay.  Thank you.

1          MR. LADD-SMITH:  Good afternoon, Your Honor.  Ivan

2    Ladd-Smith on behalf of Beile Li.

3          I have a question of the Court, which is, if the

4    Court knows:  Does Your Honor know whether you plan to decide

5    whether to issue a stay today?

6          THE COURT:  I have no idea.  I just heard the

7    request a few minutes ago, just like you did, so --

8          MR. LADD-SMITH:  Right.  And that's why I ask

9    because I guess I would respectfully request that defendants

10   be given some time to consult with clients and to think about

11   whether or not they object --

12         THE COURT:  About the stay --

13         MR. LADD-SMITH:  About the --

14         THE COURT:  -- in particular?

15         MR. LADD-SMITH:  Correct, correct.  And you know,

16   not a lot of time, a few days.

17         THE COURT:  Well, I think -- you know, I -- well,

18   okay.  I understand your request.  That's a fair request, and

19   I'll -- but I'll want to hear back from the trustee, too.

20         Do you have any other issues that you want to

21   raise other than asking for some time to consult with your

22   clients about the request for a stay from the trustee?

23         MR. LADD-SMITH:  Well, I had one other thought,

24   Your Honor.  And again, you know, just hearing this for the

25   first time today.  And it seems as though it may take a long

1  time for the alter ego matter to resolve itself, such that a

2  stay will last a significant amount of time.

3          And if the trustee, it seems has already decided

4  to amend the RICO claim, I just wonder if it might make sense

5  to have that amendment occur prior to a stay being put in

6  place.  You know, otherwise, defendants are sort of in the

7  dark during the course of the stay as to what the new

8  complaint is going to say; whereas, you know, if,

9  essentially, the substance of the amendment is known to the

10 trustee at this time, it would seem as though a similar

11 twenty-one-day period would be sufficient for the trustee to

12 make those amendments.

13         And to the extent is that the point is that some

14 of the alter ego defendants would be dismissed from the case,

15 you know, that could still happen at the conclusion of the

16 stay of the alter ego matters.

17         So I'm not -- it's just a thought --

18         THE COURT:  I understand.

19         MR. LADD-SMITH:  -- for the Court's consideration.

20         THE COURT:  Okay.  Thank you.

21         MR. LADD-SMITH:  Thank you.

22         MR. HA:  Judge, on behalf of the Rule of Law

23 Foundation and Rule of Law Society, I would join in the

24 request for some additional time to consult with my clients

25 and respond to the trustee's request for a stay.

 1           THE COURT:  And is the issue that you would like

 2   time on the same, just with regard to the stay, nothing else?

 3           MR. HA:  Just with the stay of the civil RICO

 4   action, correct.

 5           THE COURT:  Okay.  Thank you.

 6           MR. HA:  Thank you.

 7           THE COURT:  Does anyone else wish to be heard?

 8        (No verbal response)

 9           THE COURT:  Attorney Bassett, do you have any

10   response to the issues raised by the defendants' counsel who

11   spoke?

12           MR. BASSETT:  Just briefly, Your Honor.  Again,

13   Nick Bassett from Paul Hastings for the record.

14           So, in response to the request for time to confer

15   among clients, the trustee has no objection to that.  From

16   our point of view, people can take as much time as they need.

17   If they want to consult with us in the meantime, that's fine,

18   too.  So no objection to that request.

19           Also no objection to Attorney Moriarity's request

20   concerning his clients.  We're not trying to force anybody

21   else to file an answer or otherwise respond to the complaint

22   at this time, if we're -- since we are requesting a stay.

23           As to the request -- or the opposition, rather, to

24   the stay that was raised by counsel for two of the parties,

25   Your Honor, we, as I said, intend to amend the complaint in

1   response to motions to dismiss that have been filed.  I don't

2   really understand the prejudice argument.  I mean, to the

3   extent that the -- some of the defendants in the complaint

4   are the subject of fewer allegations than others, that's

5   exactly what we intend to address in our amendment.

6          As the Court may recall, we filed this complaint

7   in February of 2024.  The -- since then, a lot has happened.

8   Not only has our investigation continued, but the debtor's

9   entire criminal trial played out.  We've gotten access to

10  thousands of pages of exhibits, hundreds, if not thousands of

11  pages of transcript from that trial of testimony.  So suffice

12  it to say we will be amending the complaint substantially

13  when we do that to add additional allegations, et cetera.

14  And I don't know how that's going to serve any of these

15  defendants in a way that they would expect.

16         So I think it's in everybody's best interests,

17  including especially conserving estate resources, to not

18  require us to move forward with litigation at this time, not

19  require us to spend time and effort preparing an amended

20  complaint because, again, there is substanatial overlap with

21  what is happening in the omnibus alter ego litigation.  And

22  depending upon how that's resolved, depending on other

23  resolutions that we may be able to work out in the

24  background, a lot of the work we would do will just become

25  unnecessary.

1    So that's our position, Your Honor, but certainly

2  no opposition to giving people time to think about this.

3    THE COURT:  So how do you want to handle that?  If

4  you're going to give them time to think about it, what is it

5  that you would like the Court to do?

6    MR. BASSETT:  I think ...

7    (Participants confer)

8    MR. BASSETT:  Yeah, I think the logical conclusion

9  would be to have a, at a minimum, temporary adjournment of

10  all deadlines or a temporary stay of the litigation, pending,

11  you know, whatever period of time people think they need to

12  confer.  At the end of that period of time, we could either

13  have another status conference or submit something to Your

14  Honor with a -- you know, our respective proposals.  And at

15  that point, you know, we would expect the Court to issue a

16  ruling on a scheduling order moving forward.

17    THE COURT:  So you are -- you will be prepared to

18  submit some kind of order to the Court that will set forth

19  your proposal and then provide parties with time to object to

20  it or do you -- are you having these conversations with the

21  parties in the courtroom and then you're going to report back

22  to the Court?

23    MR. BASSETT:  I mean, I think our proposal is

24  really a lot more detailed than what I have stated, so I

25  think it probably makes sense -- I think it would be

1 sufficient to confer with the parties for whatever period of

2 time they think they need.  And then, at the end of that, to

3 the extent that there's agreement, we could submit a proposed

4 order, you know, with the agreement of the parties; to the

5 extent that there's not, then we could submit competing

6 orders.  And if people still oppose it, we could be back

7 before Your Honor to have those disputes resolved.

8           THE COURT:  All right.  Let me take a look for a

9 moment; if you would, please, just give me a moment.

10      (Pause in proceedings)

11           THE COURT:  So, with regard to the alter ego

12 proposal that you made, no one has objected.  And I think

13 that the proposal that you made is that you'll file -- the

14 trustee will file an amended complaint on October 29th.  All

15 defendants would have 21 days to respond to that complaint,

16 which I think Attorney Sklarz said was November 19th or

17 something, sounds about right.  And then the -- and then the

18 trustee would have 14 days to respond to the defendants'

19 response.

20           And that you then would propose a briefing

21 schedule with regard to that or how are you going -- I just

22 want to -- I think the -- obviously, to me, at least, the

23 alter ego proposal is not controversial and no one opposes

24 it.  So I understand the dates and I'm -- that's fine.  What

25 happens when you then respond, the trustee?

1          MR. BASSETT:  I think the movants, whoever files a

2    motion to dismiss, would naturally have the opportunity to

3    file a reply.

4          THE COURT:  Yeah.  No, I'm including all of that.

5          MR. BASSETT:  Okay.

6          THE COURT:  You file your amended complaint on the

7    29th.

8          MR. BASSETT:  Right.

9          THE COURT:  The defendants file their motions to

10   dismiss  21 days later, which --

11         MR. BASSETT:  We will then file opposition briefs

12   to those motions.

13         THE COURT:  Fourteen days later.  And then what

14   happens?  Are you expecting me to have a hearing on every

15   motion to dismiss?  I mean, part of why we were doing this

16   was so that we could figure out how we can not have, I don't

17   know, twenty motions to dismiss to decide, right??

18         MR. BASSETT:  So I -- very fair point, Your Honor.

19         So I think, to contrast this a little bit with the

20   avoidance action status conference we had several weeks ago

21   and the large number of adversary proceedings pending there,

22   I think the path forward here is a little bit more

23   streamlined and that, while there are, say, 20 motions to

24   dismiss, a lot of those -- I would say -- off the top of my

25   head, I think there are maybe 5 or 6, potentially 7 or 8,

1  actual motions to dismiss.  But they are consolidated, in

2  that many of them are on behalf of multiple parties, Attorney

3  Conway, for example.

4          THE COURT:  Well, I was going to ask Attorney

5  Conway --

6          MR. BASSETT:  Yeah.

7          THE COURT:  -- if he can file one motion to

8  dismiss, as opposed to several, right?

9          MR. BASSETT:  I think that's -- I think that's

10  what he has done, generally.  And I think Attorney Sklarz did

11  that, as well, although maybe he did file a couple of

12  separate ones.

13          But in any event, from our point of view, the

14  issues are very similar across all of the motions to dismiss.

15  And the number of motions is not so unmanageable, that we

16  don't think, if the Court wanted to have a hearing, that

17  couldn't happen all at the same time.  I wouldn't think it

18  would be necessary to have a separate hearing each of the

19  motions to dismiss.  We could, I think, figure out a way to

20  do that all in one --

21          THE COURT:  Well Attorney --

22          MR. BASSETT:  -- all in --

23          THE COURT:  -- Conway has --

24          MR. BASSETT:  -- one shot.

25          THE COURT:  -- just for example, has at least four

1   motions to dismiss on behalf of his parties.  So that's what

2   my question is.  Why -- do we need to have four motions to

3   dismiss?

4         Are they raising -- I mean, Attorney Conway, maybe

5   you can -- I'm sorry I'm using you as an example, but I have

6   to.  You're here and I see ECF 84, 85, 86, 87, and 89 -- oh,

7   no, I guess those four.  So are those -- can that be

8   consolidated into one motion?  And if not, please explain to

9   me why.  I'm not saying that you don't have a valid

10  explanation, I'm trying to understand.

11        MR. CONWAY:  Several of the issues were common in

12  those motions, as you can imagine, Your Honor, and the way

13  they were categorized was by jurisdiction, where there was

14  some different law that related to different jurisdictions.

15        Whether I need to make a motion to increase the

16  briefing size, just so I can put them into one motion or not,

17  I'm open to whatever suggestions.  I think we -- they could

18  easily be in one motion.  And the only issue would be that I

19  think it would take a few extra pages to do that.

20        MR. BASSETT:  And that's fine with us, Your Honor.

21        THE COURT:  Well, why don't you both talk about

22  that?  I think it's fine -- I think it would be easier for

23  the Court, right?  If it's all, if it's really the same

24  issues because I'm not going to -- at some point, I assume,

25  unless these issues are resolved, which I don't anticipate

1  they will be, I'll have to write something, right?

2            MR. CONWAY:  Yes, Your Honor, and --

3            THE COURT:  So I'd rather not write 20 things,

4  maybe just 2 or 1.

5            MR. CONWAY:  And Your Honor, it was difficult for

6  us, as well, trying to split them up that way, so we would

7  welcome the idea of putting them in one motion.

8            And to be honest with you, you may have seen that

9  there is a motion relating to default on Sunday that was

10  filed by Mr. Bassett.  The -- we've talked about that and

11  he's graciously agreed -- because we managed to leave off

12  some of the parties on these multiple motions because they

13  had to be stuck in different buckets.

14            So putting them all into one motion would be

15  welcome and easier for us.  And I'll talk to Mr. Bassett

16  about what I think the pages that we would need to do that

17  are.  I can't imagine that -- since some of the issues

18  overlap, that it would be that many more pages, but --

19            THE COURT:  If there's an agreement, I will have

20  no problem with that, exceeding what -- the local rule page

21  limit.  Okay?  If everyone agrees, that's fine with me.

22            MR. CONWAY:  Okay.  And obviously, we would be

23  welcome to whatever Mr. Bassett suggests for a response,

24  increasing pages for the response.

25            The other issue I wanted to raise, Your Honor,

1   while I'm up here, is Mr. Bassett noted that there was this

2   conference a few weeks ago with the avoidance action parties,

3   where a lot of the communal motion issues were going to be

4   made in the hopes that Your Honor could resolve these issues,

5   to make it easier to mediate.  I have now one of those

6   clients, as well.

7            Several of these issues are common with those

8   issues.  And I just wanted to throw out there that whatever

9   briefing schedule we end up with here -- and I know we've got

10  a briefing schedule for those motions -- for those issues, as

11  well; they don't have to correspond, necessarily.  But I

12  would just suggest the Court that maybe the hearing could be

13  on the same date, given the fact that the issues are so

14  similar, and Your Honor won't have to listen to parties argue

15  all these motions -- all these issues on different days, when

16  they are so similar.  I don't think we have to have

17  corresponding briefing schedules for that, but I just wanted

18  it pointed out that there are similar issues.

19           THE COURT:  Okay.  Thank you.

20           MR. CONWAY:  Uh-huh.

21           THE COURT:  So, Attorney Bassett, what do you

22  propose to do today or tomorrow with regard to the alter ego

23  action, submit a scheduling order?

24           MR. BASSETT:  Yes, Your Honor.

25           THE COURT:  Okay.

1          MR. BASSETT:  We would submit a scheduling order

2     along the lines that we discussed.  I'm happy to do that say,

3     like Your Honor was suggesting, I think tomorrow.  In the

4     meantime, I could confer with Attorney Conway about the

5     consolidation of his motions to dismiss and a page limit

6     extension, and then hopefully submit something that is

7     acceptable to everybody.

8          THE COURT:  All right.  And in that, I think you

9     should propose, also, that the claims against the defendants

10    who have -- default judgments have entered against and

11    defaults have entered will be severed, subject to court

12    approval, because I have to look at it.  I haven't looked at

13    it.  I have to look at it, right?  So I would do that, as

14    well.

15         I think that makes sense, unless someone else

16    wishes to be heard on the alter ego status conference.  And I

17    think we've done what we can do today with regard to the

18    alter ego complaint and the pending motions, correct,

19    Attorney Bassett?

20         MR. BASSETT:  I believe so, Your Honor.

21         THE COURT:  Okay.  All right.  So then I'll let

22    you submit something -- I'll give you until Thursday.

23    Obviously, I know you may get it in tomorrow.  And I will

24    just say, if you get it in late tomorrow -- and Thursday, we

25    have hearings -- but it will be done by early afternoon.  So

1  that's the only thing I would say, as far as if you're

2  looking for the entry of some order, it may not be in until

3  then, after those hearings.  Okay?

4          MR. BASSETT:  Understood.  Thank you.

5          THE COURT:  Okay.  All right.  So then let's go

6  back to the RICO action.  So the -- you have no prob -- you

7  have no opposition, the trustee has no opposition to giving

8  the parties to -- when I say the "parties," the defendants

9  that are in the courtroom -- time to determine whether they

10  have any problem with the stay that you've proposed; and

11  that, with regard to Attorney Moriarty's clients, their

12  responsive pleading deadline is today.  That's going to be

13  extended for however long.  They're not going to be thrown

14  into the default bucket because of where we are today.

15          MR. BASSETT:  That's correct, Your Honor.

16          THE COURT:  With regard to the Defendants Mr.

17  Cerda and the Defendant Chow, they would like -- they object

18  to the stay, and they'd like to have their motions to dismiss

19  heard.  So your point -- your response to that is you don't

20  see that that's necessary and they're not being prejudiced.

21          So what I have to ask is -- I think you're going

22  to have to talk to them, right?  To both of those defendants

23  because they didn't know -- nobody knew until -- and that's

24  why we're having a status conference -- that you were going

25  to ask for a stay, so I think you need to talk to them.

1          And then what about the issue that was raised

2     about filing the amended complaint now?  You're saying you

3     don't want to do that right now because it would be -- it

4     would be a use of resources that you'd rather use in another

5     way at this time in this estate.

6          MR. BASSETT:  That's correct, Your Honor.  That's

7     true for a number of reasons.  There -- and our investigation

8     has been going on and is still ongoing, you know, up to this

9     moment.  So, you know, even though we've had access to

10    information, for example, from the criminal trial for awhile,

11    we have a lot more work to do to continue supplementing an

12    amended complaint with all of the additional information that

13    we would want to include.

14          There are also additional amendments we would make

15    in light of or in response to arguments that have been raised

16    motions to dismiss, which, of course, we are entitled to do.

17          And then, finally, Your Honor, a lot of the

18    allegations that we would add and a lot of the substance that

19    would go into our amendment would relate to defendants that

20    are either omnibus alter ego parties or, potentially,

21    defendants who may come out as a result of other negotiated

22    resolutions of our claims.

23          So the result would be spending a ton of time and

24    effort, a lot of estate resources, a lot of costs putting

25    together an amended complaint that, you know, may ultimately

1  not be necessary.  So, for that reason, yes, Your Honor, we

2  do not think, if we are going to stay the litigation, an

3  amended complaint has to be filed first.

4         THE COURT:  Okay.  I think I heard you also say

5  that you -- it might make sense then to adjourn or continue

6  this status conference for some time in the alter ego -- I'm

7  sorry -- in the civil RICO action, in order for you to have

8  discussions with parties who appeared and discussed these

9  issues today.  Is that correct?

10         MR. BASSETT:  That's correct, Your Honor.  And

11  I'll defer to defense counsel as to how long they might need,

12  but they can have as much time as they would like.

13         THE COURT:  Well, I'm looking at the calendar.

14  For now, we have hearings in this case and in adversary

15  proceedings on November 5th, that's three weeks from today.

16  That seems, to me, to be a reasonable amount of time for the

17  parties to -- but if people want to go longer, apparently --

18  you know, that's fine, too.  I'm just looking at the calendar

19  to see when other -- there's also a hearing on the 19th of

20  November, which is the week before Thanksgiving.  And there's

21  also a hearing on the -- November 26th, which is the week of

22  Thanksgiving.  I don't see anything scheduled into December

23  yet.

24         So I don't know how you'd like to proceed.  If

25  you'd like to take a recess, talk to people, if you'd like to

1  suggest a date of those dates I just suggested, Attorney

2  Bassett, and we'll see whatever others think, or however

3  you'd like to proceed.

4          MR. BASSETT:  Just choosing a date, Your Honor,

5  November 19th would be fine with us.  If other defense

6  counsel want to be heard on that, they certainly may.

7          Does anyone have any objection to continuing these

8  -- this status conference in the civil RICO action, Adversary

9  24-05273, to November 19th, at 1 p.m.?  If you do, you need

10 to raise it now, please.

11         (No verbal response)

12         THE COURT:  Okay.  Hearing nothing, then I'm going

13 to continue the status conference until October 19th, with

14 the understanding, Attorney Bassett, that the trustee's

15 counsel is going to be speaking to the counsel who spoke

16 today about their issues and see whether or not there's some

17 kind of agreed-upon order that can be submitted with regard

18 to the continued prosecution of the civil RICO action.

19         MR. BASSETT:  Yes, Your Honor.

20         THE COURT:  Okay?

21         MR. BASSETT:  Thank you very much.

22         THE COURT:  All right.  So we'll continue the

23 civil RICO action status conference to October -- I'm sorry -

24 - November 19th, at 1 p.m.

25         All right.  That takes care of the status

1  conferences in the adversaries.  We have matters in the main

2  case.  People are welcome to stay, obviously, but they're

3  also welcome to go if they don't have any interest in the

4  main case.  So thank you, all.

5       (Pause in proceedings)

6            MR. DESPINS:  May I approach, Your Honor?

7            THE COURT:  Yes, go right ahead.

8            MR. DESPINS:  For the record, Luc Despins, Chapter

9  11 Trustee.

10           And we were -- we would turn now for the motion to

11  sell the Taconic property.  I would -- you know, the

12  highlight, Your Honor, is that -- very good news for the

13  estate, we were able to increase the purchase price

14  substantially, and I'll get to that in a second.

15           But we filed, at Docket Number 3682, yesterday, a

16  notice of the receipt and acceptance, subject to Bankruptcy

17  Court approval, of a higher and better offer.  And we also

18  attached a revised contract and a revised proposed order.

19           I'll say at the outset that the buyer intended to

20  use an LLC for confidentiality reasons and -- but for the

21  purpose of this hearing, I need to disclose the name of the

22  new buyer.  His name is Ross Jackman, R-o-s-s, Jackman, of

23  New York City.  He has represented he has no connection or --

24  at all with Mr. Kwok or affiliates of Mr. Kwok.  And he will

25  own the property through and LLC that is called B-E-C-T,

1  LLC.

2       So, to make a long story short, Your Honor, there

3  -- you'll recall that there was a bid accepted for six

4  million nine.  And after the bid was accepted, we received a

5  higher and better offer from this bidder that was

6  substantially increased after that as a result of competitive

7  bidding between the act -- the existing bidder and the new

8  bidder.  And we got to a purchase price of 7,250,000.  You'll

9  recall that the asking price was seven million one.  So this

10  represents an increase over the existing contract of

11  $350,000, an increase of three fifty, which is, you know,

12  very good, considering the circumstances here.

13       The revised order, there's a version that's marked

14  to show changes that reflects all the changes we've made.

15  It's really to substitute the new buyer for the old buyer and

16  to implement other changes that were made.  So it's not only

17  the purchase price that was increased, Your Honor, but there

18  were other terms that were -- that are now much more

19  favorable to us; so that, for example, if Your Honor were to

20  -- you're inclined to grant the relief we're seeking and to

21  enter an order today, I believe the new buyer would have to

22  close by Friday.  For us, that's very beneficial for all

23  sorts of reasons.

24            THE COURT:  Does the new buyer have counsel?

25            MR. DESPINS:  Yes, and counsel -- and I should say

1   counsel, Mr. Murray, is in --

2            THE COURT:  Okay.

3            MR. DESPINS:  -- the courtroom here --

4            THE COURT:  Thank you.

5            MR. DESPINS:  -- today.

6            THE COURT:  Okay.  Just want to make sure the

7   buyer is ready, willing, and able to close.

8            MR. DESPINS:  That --

9            THE COURT:  There's no contingencies, there's no

10  issues?

11           MR. DESPINS:  No, there's no financing --

12           THE COURT:  All --

13           MR. DESPINS:  -- contingency --

14           THE COURT:  All cash.

15           MR. DESPINS:  -- because no objections were filed.

16  You know, I think the obligation under the contract is to

17  close by Friday of this week, subject to the entry of the

18  order by Your Honor today.

19           Also, I want to address one issue.  You may have

20  seen that there was a bracketed paragraph that was added at -

21  - you know, at the end, new Paragraph 24, that said as

22  follows:

23           "For the reasons stated at the hearing, the

24  trustee is hereby authorized to reimburse the original buyer

25  for up to 20,000 of reasonable, documented out-of-pocket

1  expense, such as inspection fees, appraisal fees, and counsel

2  fees incurred by the original buyer in furtherance of the

3  potential acquisition of the Greenwich property."

4          We're not going to proceed with that relief, so

5  we're taking that paragraph out of the proposed order at this

6  time.  We've had discussions with the U.S. Trustee about

7  this.  And it is possible that we'll come back to Your Honor

8  and ask for that relief in summary fashion, but we're not

9  pursuing that relief today.

10          So I'm happy to answer any questions you my have,

11  but at this point, it's fairly straightforward.  From our

12  point of view, this is 350,000 more value for the estate

13  with, I would say, certainty of closing in the short term,

14  which will allow us to stop spending money on this property.

15          THE COURT:  I -- my only questions are -- and I

16  agree that, you know, the process, it has produced a higher

17  and better offer, so I think that's obviously beneficial to

18  the estate.

19          My question is -- and I see counsel is here for

20  the buyer.  I know that Attorney Major cooperated with regard

21  to essentially giving up possession of the property to the

22  trustee, and I have no idea and I don't -- maybe no one --

23  maybe that's something you've all worked out.  But you know,

24  I have no idea what, if anything, is in the home and what has

25  to be done.

1        MR. DESPINS:  Yes.  So there is some -- so

2   Attorney Major has been -- we've been in touch with him as of

3   last Friday, we were in communications.  There are some --

4   I'd say some furniture, although "furniture" is a big word,

5   sports equipment is in the gym, I think there's outside

6   furniture, as well, that the buyer is buying for the

7   7,250,000.

8        The rest -- and that was another concession that

9   was very favorable to us, is we're allowed to keep our

10  furniture that's not sold to the buyer in that house for, I

11  think it's 30 or 45 days --

12       THE COURT:  Okay.

13       MR. DESPINS:  -- whatever the contract --

14       THE COURT:  So then --

15       MR. DESPINS:  -- provides.

16       THE COURT:  -- we'll figure it out from --

17       MR. DESPINS:  Yes.  So it's -- it will -- but Mr.

18  Major has made no claim to that -- to those assets.  So our

19  intent is probably to move this, consolidate that with the

20  other furniture that we have from various other locations, so

21  that we can have an auction at one point to sell all of this.

22       THE COURT:  Okay.

23       MR. DESPINS:  So, in addition to that -- and I

24  don't know if I ever told you this -- but they left a car at

25  the property, and we figured out who was the owner.  We

 1  contacted the "owner," and I say in quote, who said no, I

 2  don't own this case, you can have it.  So now we have title

 3  in my name, so we can --

 4           THE COURT:  You have title?

 5           MR. DESPINS:  -- so we can sell --

 6           THE COURT:  Okay.

 7           MR. DESPINS:  -- that car.  And -- but they've

 8  agreed that we can keep the car there for -- I forget if it's

 9  30 or 45 days.

10           UNIDENTIFIED:  Forty-five days.

11           MR. DESPINS:  Twenty --

12           UNIDENTIFIED:  Forty-five days.

13           MR. DESPINS:  But we intend to sell it earlier

14  than the 45 days.  So all of that is all good, from our point

15  of view.

16           THE COURT:  Okay.  Those were my only questions.

17           And obviously -- I think your name is Mr. Murray,

18  did I hear?

19           MR. DESPINS:  Yeah, Robert Murray.

20           MR. MURRAY:  Yes, Your Honor.

21           THE COURT:  Okay.  So your client, the buyer, is

22  ready, willing, and able to close by this Friday?

23           MR. MURRAY:  Yes.

24           THE COURT:  Okay.  And obviously, the questions I

25  had about what's at the premises has been answered and

1   there's some agreement.  I haven't studied it, obviously,

2   because this was all filed yesterday, that the property that

3   the estate claims an interest in will be able to remain at

4   the property for some period of time, 45 days or less, and

5   the trustee will take whatever actions he needs to take with

6   regard to that, and the buyer is fine with that.

7            MR. MURRAY:  Yes, Your Honor.

8            THE COURT:  Okay.  I just want to make sure,

9   obviously.  I mean, sometimes, we've had issues come up in

10  sales where things have been left behind and that's caused a

11  problem, and I don't want to have any -- we, obviously, want

12  to do whatever we can to avoid any problems.

13           Is there anything else that you would like to tell

14  me about -- and you don't have to, I'm just asking if -- is

15  there anything else you'd like to say about the sale or

16  anything you think the Court needs to be aware of?

17           MR. MURRAY:  No, Your Honor.  I think the process

18  went very smoothly, and I appreciate Attorney Despins efforts

19  in that regard.

20           THE COURT:  Okay.  Thank you very much.

21           MR. MURRAY:  Thank you, Your Honor.

22           THE COURT:  All right.  So then I haven't looked

23  at the order, other than to see it.  I mean, I've looked at

24  it.  I know it was filed yesterday and we were closed

25  yesterday --

1        MR. DESPINS:  Yes, Your Honor.

2        THE COURT:  -- for the holiday.

3        So I -- what I have looked at, I've skimmed, and

4  it looks fine.  You've redlined it.  I did see the original

5  order.  I don't see anything in the order itself that is of

6  concern to me, but I still want to read it --

7        MR. DESPINS:  Of course, Your Honor.

8        THE COURT:  -- and I haven't read it fully.

9        But I have to ask if anybody else wishes to be

10 heard.  Attorney Claiborn, does the U.S. Trustee have any

11 position on -- with regard to the sale?

12       MS. CLAIBORN:  Your Honor, the U.S. Trustee has no

13 objection to the sale.  Trustee Despins added a paragraph

14 that I requested, and that was Paragraph Number 21.  It has

15 to do with filing a report of sale after the closing.

16       THE COURT:  Yes, that's required under our local

17 rule.  Well, maybe it's not as clear as it should be,

18 actually, under the local rules, but I would have wanted that

19 anyway, just to know, so that the record is clear.

20       MS. CLAIBORN:  And I have nothing further to add,

21 Your Honor.

22       THE COURT:  Thank you.

23       Does anyone else wish to be heard?

24    (No verbal response)

25       THE COURT:  Even though you're deleting Paragraph

1   24, 23 says that the trustee shall return the original

2   buyer's deposit within two business days --

3             MR. DESPINS:  Yes.

4             THE COURT:  -- of the --

5             MR. DESPINS:  That's --

6             THE COURT:  Okay.

7             MR. DESPINS:  We're doing that today, Your Honor.

8             THE COURT:  Okay.

9             MR. DESPINS:  Yes, that remains.  They're entitled

10  to their deposit back.

11            THE COURT:  Of course.

12            MR. DESPINS:  Yeah.

13            THE COURT:  I'm just saying --

14            MR. DESPINS:  Yeah.

15            THE COURT:  I was looking at 24, when you said

16  that you were deleting it, but 23 is somewhat related, not

17  exactly.

18            MR. DESPINS:  Yeah.

19            THE COURT:  Okay.  Well, I -- under the

20  circumstances and the familiarity with this case and this

21  asset and Attorney Major's representation of the corporate

22  entity and the individuals who were residing in the house,

23  the documents that have been filed in connection with

24  Greenwich Land, including -- although I don't have it in

25  front of me, I recall very vividly Mr. Major's agreement to

1  turn possession over to the estate on behalf of his clients

2  that had the interests in the property.

3          I understand why the trustee wants to sell the

4  property free and clear of liens and that the new buyer has

5  come in and is ready, willing, and able to close the

6  transaction for a purchase price of $7,250,000?

7          MR. DESPINS:  Correct, Your Honor.

8          THE COURT:  That's right.

9          Then, for all those reasons, the -- and there are

10  a lot of reasons that I'm not reiterating for the record at

11  the moment because there has been a lot of hearings and

12  motions and litigation about Greenwich Land and this asset.

13  But I'm obviously going to grant the motion to sell and

14  authorize and approve the sale of the property free and clear

15  of liens, claims, and interests, and authorizing the trustee

16  and approving the trustee to enter into and approving the

17  sale agreement.

18          So all I need to do, at this point, is just review

19  this order, which I should be able to do this afternoon, and

20  try to get that in for you all because I'm sure you're going

21  to want -- well, I would assume you're going to want it for

22  the closing.

23          MR. DESPINS:  Well, the entry of the order is what

24  triggers the obligation to close by Friday, so --

25          THE COURT:  Right.  So we'll get it done this

1   afternoon.

2            MR. DESPINS:  Okay.  But -- so we need to -- Mr.

3   Skalka will send, through the courtroom deputy's email

4   address the clean order without that paragraph that I

5   mentioned.

6            THE COURT:  Okay.

7            MR. DESPINS:  Okay.

8            THE COURT:  That would be very helpful, yes.

9            MR. SKALKA:  I will do that, Your Honor.  Thank

10  you.

11           THE COURT:  Okay.  Just do it in Word format,

12  please.

13           MR. SKALKA:  Will do, Your Honor.

14           THE COURT:  Okay.  Thank you.

15           All right.  So we will get that entered this

16  afternoon.

17           MR. DESPINS:  Thank you, Your Honor.

18           THE COURT:  Okay?  So -- and thank you, and thank

19  you, Counsel, for your client's interest and working with the

20  trustee to get this sold.  So that concludes the motion to

21  sell, and --

22           MR. DESPINS:  So I think we're moving on, Your

23  Honor, to the motion to increase the expense cap for --

24           THE COURT:  All right.

25           MR. DESPINS:  -- the Mahwah mention.  And perhaps

1   Mr. Murray's client is interested in buying that mansion, as

2   well.

3          (Laughter)

4              MR. MURRAY:  He's done enough.

5              MR. DESPINS:  He's done enough for the estate,

6   yes.

7              So, Your Honor, this is pretty straightforward.

8   The expenses for the Mahwah mansion are -- I use the term

9   "insane" too much, but in this case, they are insane.

10             So we had a cap in the initial order that you

11  approved of $300,000.  We are exceeding that cap by a lot.

12  We need to increase the cap to a $1,000,000 total because,

13  you know, the security -- it's not only the security, but

14  electricity, 17,000 a month or something like that.  It's

15  just a -- there are numbers that are just -- and by the way,

16  we didn't just take that.  We sent someone there to check all

17  the thermostats, tried to reduce them to make sure that

18  there's not -- there's no waste.

19             But this is an incredibly expensive property to

20  maintain; and, therefore, we have no choice but to ask the

21  Court to increase the cap to a million dollars, which we're

22  not happy about, but we have to do it.

23             THE COURT:  I understand.

24             MR. DESPINS:  And that's Docket Number 3650, Your

25  Honor.

1            THE COURT:  Attorney Claiborn, does the U.S.

2    Trustee's Office have any position with regard to this

3    motion?

4            MS. CLAIBORN:  The U.S. Trustee has no objection

5    to the motion.  I'd just ask for an edit to the order to

6    clarify something, so a revised order, I think, should be

7    submitted to Your Honor.

8            THE COURT:  What's the edit?

9            MS. CLAIBORN:  Let me --

10            THE COURT:  If you remember, I --

11            MS. CLAIBORN:  If you just give me a second, I can

12    pull up the order and I can tell you.

13        (Pause in proceedings)

14            MS. CLAIBORN:  I apologize.  I'm confusing this

15    with another motion.  There are many, and my brain obviously

16    got muddled.  I apologize, Your Honor.

17            THE COURT:  That's all right.

18            MS. CLAIBORN:  I have no changes on this one.

19            THE COURT:  Three are 3,600 --

20            MS. CLAIBORN:  I apologize.

21            THE COURT:  -- and some-odd docket entries in the

22    case, so I think confusion does happen from time to time.

23            But -- so you're fine with the proposed order?

24            MS. CLAIBORN:  I am.

25            THE COURT:  Okay.

1          MS. CLAIBORN:  Thank you, Your Honor.  I

2     apologize.

3          THE COURT:  As filed.

4          MS. CLAIBORN:  Yes.

5          THE COURT:  The one that was filed on the 8th of

6     October, correct?

7          MR. DESPINS:  Yes.  Yes.

8          THE COURT:  Okay.  All right.  I've looked at the

9     proposed order, it looks fine to me, I don't have any

10    changes.

11         The only -- except the one thing I would change,

12    just one minor thing that we can change, you do not need to

13    change, is to say -- as the courtroom deputy knows I like to

14    do, "and after a hearing held on."  Okay?

15         MR. DESPINS:  Right.

16         THE COURT:  "And after a hearing held on October

17    15, 2024," right before the "it is hereby ordered" language,

18    please.  And otherwise, I'm fine.

19         I understand the reason, I understand that you

20    don't -- aren't happy about it.  But I think, unfortunately,

21    under the circumstances, the increased cap on the funding of

22    expenses is warranted.

23         All the notice parties were served with your

24    motion.  No one has filed any written objections to the

25    motion.  There is no one -- none -- there is no one

1  participating in this hearing today that is objecting to the

2  motion.  And as I said, I think it's warranted under Section

3  363 of the Code.

4          For all of those reasons, the motion is granted

5  and the proposed order that was attached to the motion can

6  enter.

7          MR. DESPINS:  Your Honor, I think that completes

8  the matters for today.

9          THE COURT:  Yes.

10          MR. DESPINS:  But if I may, just going to back to

11  the sale order, although it's not part of the sale order, but

12  that paragraph that we took out.  I want to make sure Your

13  Honor knew the intent there.  And I'm not going to ask for an

14  advisory opinion, but I want to make sure you understand the

15  context here, which is that the buyer that signed the 6.9-

16  million-dollar offer obviously is ending the process --

17  ending the process with nothing, and they have expended real

18  money.  And the estate has benefitted for that -- from that

19  because, for example, the new buyer relied, without seeing

20  it, on the inspection that was done by the first buyer.  So

21  that's why I was considering this.

22          And by the way, we're -- I'm not asking for that

23  relief today, but I want to make sure you understand that

24  where we're coming from is that, you know, from their point

25  of view, they end up with nothing, which is -- you know,

1  that's not my problem.  On the other hand, they did add a lot

2  of value because they validated the value of the property and

3  the fact that the property was worthy of buying without the

4  new buyer conducting its own investigation.

5           So that would be the reason for this.  We're not

6  asking for this today, but I may come back, Your Honor,

7  asking for that relief.  But I wanted you -- while it was

8  still fresh in your mind, explaining the situation of why we

9  were considering this.  I know there are two ways of looking

10 at this, which is hey, they took their chances, it's a

11 Bankruptcy Court sale, and you may end up with nothing.  I

12 understand that.  But in this case, I think there was value

13 added.  But I just wanted to make sure that it was clear to

14 Your Honor.

15          THE COURT:  I understand.  Thank you.

16          All right.  Is there anything further we need to

17 address this afternoon?

18          MR. DESPINS:  Not from our point of view, Your

19 Honor.  Thank you.

20          THE COURT:  Okay.  Then thank you all.  All the

21 matters on today's calendar have been addressed, so court is

22 adjourned.

23          THE COURT OFFICER:  All rise.  Court is adjourned.

24      (Proceedings concluded at 2:23 p.m.)

25

1                              CERTIFICATION

2              We certify that the foregoing is a correct

3     transcript from the electronic sound recording of the

4     proceedings in the above-entitled matter to the best of our

5     knowledge and ability.

6

7     /s/ William J. Garling                    October 21, 2024

8     William J. Garling, CET-543

9     Certified Court Transcriptionist

10    For Reliable

11

12    /s/ Coleen Rand                           October 21, 2024

13    Coleen Rand, CET-341

14    Certified Court Transcriptionist

15    For Reliable

16

17

18

19

20

21

22

23

24

25