**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------x
                              :

In re:                    :     Chapter 11
                              :

HO WAN KWOK, *et al.*,[1]    :     Case No. 22-50073 (JAM)
                              :

              Debtors.     :     (Jointly Administered)
                              :

---------------------------------------------------------x

**OBJECTION OF CHAPTER 11 TRUSTEE**
**TO MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor"), hereby objects (the "Objection") to the *Motion to Quash Subpoenas and for Protective Order* [ECF No. 3541] (the "Motion to Quash") filed by Yumei Hao ("Ms. Hao"), River Valley Operations, LLC ("River Valley"), and Golden Eagle Ventures, LLC ("Golden Eagle," and together with Ms. Hao and River Valley, collectively, the "Movants"), seeking to quash or for issuance of a protective order with respect to the subpoena (the "ONB Subpoena") to Old National Bank issued by the Trustee pursuant to the Court's *Order Granting Sixteenth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Relevant Banks and Related Persons* [ECF No. 3454] (the "Rule 2004

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Order").[2]  Further to his Objection, the Trustee respectfully states the following:

## PRELIMINARY STATEMENT

1.      The Trustee has broad authority under Bankruptcy Rule 2004 to investigate matters—including those involving nonparty individuals and entities—relevant to the Chapter 11 Case and potential Estate assets.[3]  Courts have approvingly described this authority as allowing precisely the type of "fishing expedition" about which the Movants complain.

2.      In this Chapter 11 Case, the Trustee has made good use of his authority to investigate under Bankruptcy Rule 2004 by obtaining documents and information from hundreds of third parties, including banks and financial institutions; many of which, knowingly or not, played some role in the Debtor's long-running shell game.  Often, the Trustee has obtained valuable information and documents from or relating to entities and individuals that superficially appeared to have little or no connection to the Debtor or his interests, which has aided the Trustee in carrying out his duties locating and asserting claims with respect to Estate assets.

3.      The Movants are precisely the types of parties that the Trustee has authority to investigate under Bankruptcy Rule 2004, because the Trustee knows that they are connected to the Debtor and his financial affairs.  As discussed herein, Movant Ms. Hao is a close lieutenant to the Debtor on financial matters and is a member of the Debtor's inner circle of followers known as the "Iron Blood Group."  She was also a member of the purported "HCHK Creditors' Committee," with which this Court became familiar in the HCHK Adversary Proceeding.

4.      Ms. Hao is associated with Movants River Valley and Golden Eagle, "Farm Entities" that have engaged in financial transactions with other Debtor-associated shell companies

---

[2]    The Motion to Quash refers to subpoenas issued to the Movants; however, as discussed herein, the Trustee has not issued subpoenas to the Movants but rather has served subpoenas on certain financial institutions as authorized by the Rule 2004 Order, including the ONB Subpoena.

[3]    Capitalized terms used and not defined in this Preliminary Statement adopt the definitions ascribed to them herein.

and individuals.  River Valley has obtained millions of dollars from other Debtor shell companies, including nearly $8 million from ACA Capital Group Ltd. and at least half a million dollars from Golden Eagle.  Golden Eagle was also a subject of the Government's criminal investigation of the Debtor.  Given their ties to the Debtor and his shell companies and financial affairs, the Trustee clearly has authority to request the Movants' records from banking and financial institutions where the Trustee understands Debtor-associated individuals and entities conducted business.

5.      Indeed, this information is well within the broad scope of Bankruptcy Rule 2004 and is vital to the Trustee's investigation to further unravel the Debtor's tangled financial affairs and locate additional Estate assets.  Accordingly, the Motion to Quash should be denied.

## **BACKGROUND**

6.      On August 13, 2024, the Trustee filed the *Sixteenth Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Relevant Banks and Related Persons* [ECF No. 3398] (the "Rule 2004 Motion"), requesting authority to obtain discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") from 13 banks and financial institutions (the "Examinees"), including Old National Bank, at which the Trustee understands that individuals and entities associated with the Debtor have banked or otherwise done business.[4]

7.      On August 26, 2024, the Court entered the Rule 2004 Order granting the Rule 2004 Motion.  On September 3, 2024, the Trustee served the ONB Subpoena on Old National Bank.

8.      The Movants are not Examinees under the Rule 2004 Motion and, contrary to the Motion to Quash, the Trustee has not issued subpoenas to the Movants.  Rather, the Movants are simply listed among the topics of inquiry in document requests appended to subpoenas issued to

---

[4]     The Trustee identified these banks and financial institutions from reviewing exhibits and testimony from the Debtor's criminal trial as well as other discovery documents obtained by the Trustee.  (Rule 2004 Motion at ¶ 9.)

the Examinees pursuant to the Rule 2004 Order, including the ONB Subpoena.  (*See* ONB Subpoena, a true and accurate copy of which is attached hereto as **Exhibit 1**, at appended *Req. for Prod. of Docs.*, Definitions, ¶ 7 (within definition of "2004 Discovery Targets").)[5]

9.      On September 17, 2024, the Movants filed the Motion to Quash.

10.     Upon review of the Motion to Quash, and in compliance with the Court's *Order Requiring Movants and Trustee to Meet and Confer* [ECF No. 3567], the Trustee met and conferred with the Movants through counsel on multiple occasions by telephone and email in a good-faith effort to resolve the dispute presented by the Motion to Quash.  The Trustee has provided the Movants with a copy of the ONB Subpoena and has informed them as to the basis for the Trustee's investigation.  The Trustee is advised that the Movants continue to maintain that the ONB Subpoena should be quashed.  The Trustee objects.

11.     The Movants are connected to the Debtor and his financial affairs in multiple respects.  For this reason, they are properly among the topics of inquiry in the Trustee's Bankruptcy Rule 2004 examinations of the Examinees.

12.     Ms. Hao is one of the Debtor's principal lieutenants on financial matters and is a member of the so-called "Iron Blood Group," an inner circle that the Debtor hand-picked of his closest subordinates.[6]

---

[5]   As more fully discussed in the document requests, the Trustee requested that Old National Bank produce documents related to accounts, assets, business dealings, wire transfers, communications, and know-your-customer/anti-money laundering compliance records with respect to the Movants and the other "2004 Discovery Targets."  (*Id.*, Documents to Be Produced, ¶¶ 1-8.)  These areas of inquiry were also included in the document requests appended to the form subpoenas attached to the Rule 2004 Motion at Exhibits C-1 through C-13, which the Court authorized the Trustee to serve by entering the Rule 2004 Order.

[6]   *See* Transcript of testimony of Ya Li from Debtor's criminal trial, June 7, 2024, at p. 1771, attached hereto as **Exhibit 2**, describing Ms. Hao (by her alias, Ru Shui), as "one of the Iron Blood Group member[s] and the one farm leader;" *see also Memorandum of Decision and Order Denying Motion to Intervene and Motion to Clarify Temporary Restraining Order* [Adv. Proc. No. 23-05013 ECF No. 239] at ¶ 43 (finding Ms. Hao's alias was Ru Shui).  "The Iron Blood group consisted of the 'core,' 'highest level' leaders of the Himalaya Alliance … Group members managed the Alliance, were selected by Guo, and followed his directives." *Order*, at note 4, No. 23-cr-118 (AT), [ECF No. 388] (S.D.N.Y. July 1, 2024) (internal citation omitted).

13.    Ms. Hao is known to the Court as a member of the purported "HCHK Creditors'
Committee" behind litigation by the proposed intervenors in the adversary proceeding styled
*Despins v. HCHK Technologies, Inc.*, et al. (Adv. Proc. No. 23-05013 (the "HCHK Adversary
Proceeding" or "HCHK A.P.").)  (*See Memorandum of Decision and Order Denying Motion to
Intervene and Motion to Clarify Temporary Restraining Order* [HCHK A.P. ECF No. 239] (the
"HCHK Intervenors Decision") at ¶¶ 27, 32.)[7]  The Court found that Yongbing Zhang (*i.e.*, the
Debtor's personal attorney) led this committee and described its other members (including Ms.
Hao) as "close associates" of the Debtor.  (*Id.* at ¶¶ 35, 45.)

14.    The Court found that "Ms. Hao is the woman shown" below (*see id.* at ¶ 43):



This photograph reflects Ms. Hao promoting investment opportunities for the Debtor in "G series"

---

The proposed intervenors unsuccessfully moved to intervene in the HCHK Adversary Proceeding, which motion
the Court denied after a hearing during which, among other things, one intervenor refused to answer questions
when directed by the Court and another admitted to having used forged evidence in support of the motion.  (*See
generally* HCHK Intervenors Decision.)

and wearing a hat promoting the "New Federal State of China" (*i.e.*, the "NFSC").[8]

15.    The Court has determined that the "NFSC [and] G Series … serve the purposes of the Debtor, serve as business vehicles for the Debtor, and their members are personally loyal to the Debtor." (*Memorandum of Decision Granting in Part Motion for Preliminary Injunction* [Adv. Proc. No. 22-05032 ECF No. 134] at ¶ 3.)

16.    Ms. Hao has described herself as a beneficial owner of the other two Movants, *i.e.*, River Valley and Golden Eagle.[9]  (*See* Certifications of Beneficial Owners of Legal Entities for River Valley and Golden Eagle, attached hereto as **Exhibit 3**.)[10]  River Valley and Golden Eagle are among the Debtor's "Farm Entities," *i.e.*, shell companies the Debtor employed to, among other things, collect, conceal, and launder funds raised through his various fraud schemes.

17.    Among other things, River Valley has received at least $7,999,935 from ACA Capital Group Ltd., one of the Debtor-associated shell companies that is a subject of the Trustee's alter ego claims in the adversary proceeding styled as *Despins v. ACA Capital Group Ltd.*, et al. (Adv. Proc. No. 24-5249).  (*See* River Valley July 2022 Statement attached hereto as **Exhibit 4**.)

18.    Golden Eagle has appeared on a list of "Farm Entities" as to which the United States Government processed bank documents for its criminal investigation of the Debtor.  (*See* Government Exhibit GXZ-27 from Debtor's criminal trial, attached hereto as **Exhibit 5** at p. 4.) Golden Eagle has also transferred at least $500,000 to River Valley.  (*See* River Valley Deposit Slip and Golden Eagle Withdrawal Slip attached hereto as **Exhibit 6**.)

---

[8]    A video of Ms. Hao dining and toasting with the Debtor at the Sherry Netherland Hotel may be viewed here: https://www.youtube.com/watch?v=LWbEMPdlbl4

[9]    The fact that they filed the Motion to Quash together and share the same counsel also evidences Ms. Hao's involvement with the corporate Movants.

[10]    Exhibits 3, 4, and 6 are redacted copies of records obtained from Lake City Bank, another of the Examinees under the Rule 2004 Order.

## ARGUMENT

19.     As discussed in the Rule 2004 Motion, the scope of discovery under Bankruptcy Rule 2004 is exceedingly broad.  *See also In re Parikh*, 397 B.R. 518, 525-526 ("A Rule 2004 examination has been likened to a 'fishing expedition,' the scope of which is broad.  The primary purpose of allowing broad discovery in Rule 2004 examinations is to expedite the locating of assets of the estate." (internal citation omitted)).  "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Transmar Commodity Group Ltd.*, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018) (internal quotation and citation omitted).  This includes revealing the nature and extent of the estate and in discovering assets of the debtor that may have been intentionally or unintentionally concealed.  *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 27-28 (Bankr. N.D.N.Y. 1996); s*ee also In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." (internal quotation and citation omitted)).

20.     Considering Ms. Hao's close ties to the Debtor and his financial affairs, including, among other things, her role in organizing litigation against the Trustee in the HCHK Adversary Proceeding, her place in the Debtor's inner circle of lieutenants, and her involvement with Debtor-controlled businesses (including by promoting "G Series" investments), Ms. Hao's activity at banks utilized in the Debtor's financial affairs is properly within the Trustee's Bankruptcy Rule 2004 investigation.  So, too, are the banking activity of River Valley and Golden Eagle, which as "Farm Entities" are also involved in the Debtor's financial affairs.  The links between the Movants (*e.g.*, Ms. Hao's involvement with these entities and the transfer of funds between the entities)

underscore the relevance of the Trustee's inquiry. These facts, particularly when considered against the backdrop of the Debtor's Chapter 11 Case, show that the records sought by the Trustee are well within the bounds of a Bankruptcy Rule 2004 subpoena and may well reveal information relevant to claims or other assets of the Debtor's chapter 11 estate (the "Estate").

21. The Movants contend that the ONB Subpoena should be quashed, because it purportedly represents a "fishing expedition," an argument they premise on their inaccurate claim that the "Movants have not, up to this date, been part of this bankruptcy proceeding."[11] (Motion to Quash Memo. of Law at p. 1.) The Movants ignore the "exceptionally broad" scope of Bankruptcy Rule 2004 discovery, which, indeed, many courts have expressly likened to a "fishing expedition." *See Despins v. Lamp Cap. LLC (In re Ho Wan Kwok)*, 2024 Bankr. LEXIS 2095, *11 (Bankr. D. Conn. March 6, 2024) ("Rule 2004 discovery is exceptionally broad to serve this purpose; it is broader than discovery permitted in adversary proceedings."); *In re Rafsky*, 300 B.R. 152, 153 (Bankr. D. Conn. 2003) ("Examinations under Rule 2004 are allowed for the 'purpose of discovering assets and unearthing frauds' and have been compared to a 'fishing expedition.'").

22. The Movants also cite to Conn. Gen. Stat. § 36a-43 to (incorrectly) argue that the Trustee was required to serve the ONB Subpoena on the Movants prior to obtaining discovery from Old National Bank. This ignores that Conn. Gen. Stat. "section 36a-44 contains a carveout that provides, in pertinent part, '[n]o provision of sections 36a-41 to 36a-45, inclusive, shall be construed to prohibit: . . . (13) any other disclosure required under applicable state or federal law or authorized to be made to any regulatory or law enforcement agency under applicable state or federal law.'" *See Universitas Educ., LLC v. Nova Group, Inc.*, 2012 U.S. Dist. LEXIS 166554, *5 (S.D.N.Y. Nov. 21, 2012) (citing Conn. Gen. Stat. § 36a-44(13)) (ruling that as to subpoena

---

[11] While she may not have appeared directly in the Debtor's Chapter 11 Case, Ms. Hao surely chose to participate in the case by joining the "Creditors' Committee" that organized interference in the HCHK Adversary Proceeding.

issued by judgment creditor in federal proceeding pursuant to Fed. R. Civ. P. 45(a) and 69(a)(2),

"disclosure pursuant to the subpoenas is required by federal law and the limitations of Section 36a-43 are inapplicable."). Because the Court authorized the Trustee's service of the ONB Subpoena under Bankruptcy Rule 2004 and Federal Rule of Civil Procedure 45 (*i.e.*, federal law), Conn. Gen. Stat. § 36a-43 does not apply and may not prevent enforcement of the ONB Subpoena.[12]

23.     The Trustee is plainly justified in seeking discovery relating to the Movants due to their connections with the Debtor, the Debtor's associates, and the Debtor's financial affairs.

24.     The Court should thus deny the Motion to Quash.

25.     ***If the Court schedules a hearing to consider the Motion to Quash, the Trustee respectfully requests that the Court direct Ms. Hao to appear in person so that she may answer questions relating to her involvement with the Debtor, his financial affairs, and this Chapter 11 Case under oath.***

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK.]*

---

[12]   The Movants also claim, without citation to any authority, that Indiana (where Old National Bank is located) follows the "Right to Financial Privacy Act," which the Movants contend requires they receive notice of the ONB Subpoena. Neither the Court nor the Trustee should be required to engage with an argument as for which the Movants have failed to offer any authority. In any event, to the extent that the Movants refer to the "Right to Financial Privacy Act" as codified at 12 U.S.C. §§ 3401, *et seq.*, this statute governs access to financial records by a "government authority," defined to mean "any agency or department of the United States, or any officer or employee, or agent thereof." 12 U.S.C. §§ 3401(3), 3402. The Trustee is not a "government authority," and this statute is not applicable to "private parties" like the Trustee. *See United States v. Zimmerman*, 957 F. Supp. 94, 96 (N.D. W. Va. 1997) ("The Right to Financial Privacy Act does not apply to … private parties …"). Moreover, inasmuch as Old National Bank has yet to produce the Movants' records to the Trustee, even if the Movants were entitled to notice (and they are not), they have now received it, and, considering the permissible scope of the Trustee's Bankruptcy Rule 2004 investigation, the Court should deny the Motion to Quash.

WHEREFORE, the Court should deny the Motion to Quash and grant such other and

further relief as the Court deems just and proper.

Dated: October 23, 2024
      New Haven, Connecticut

                LUC A. DESPINS, CHAPTER 11 TRUSTEE

            By: */s/ Patrick R. Linsey*
                Douglas S. Skalka (ct00616)
                Patrick R. Linsey (ct29437)
                NEUBERT, PEPE & MONTEITH, P.C.
                195 Church Street, 13th Floor
                New Haven, Connecticut 06510
                (203) 781-2847
                dskalka@npmlaw.com
                plinsey@npmlaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------x
:
In re:                                        :    Chapter 11
:
HO WAN KWOK *et al.*,                          :    Case No. 22-50073 (JAM)
:
Debtors.[1]                       :    Jointly Administered
:
------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 23, 2024, the foregoing was electronically

filed.  Notice of this filing was sent by e-mail to all parties to the above-captioned chapter 11 case

able to receive electronic notice by operation of the Court's electronic filing ("CM/ECF") system,

or (within one business day) by U.S. Mail to any parties unable to receive electronic notice.  Parties

may access this filing through the Court's CM/ECF system.

Dated: October 23, 2024                Luc A. Despins, as Chapter 11 Trustee
       New Haven, Connecticut

By: */s/ Patrick R. Linsey*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    dskalka@npmlaw.com
    plinsey@npmlaw.com

    *Counsel for the Chapter 11 Trustee*

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

**<u>EXHIBIT 1</u>**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination (12/15)

UNITED STATES BANKRUPTCY COURT
**District of Connecticut**

In re   HO WAN KWOK, *et al.*,[1]

Debtor

Case No.   22-50073 (JAM)

Chapter   11

(Jointly Administered)

## SUBPOENA FOR RULE 2004 EXAMINATION

To:   **Old National Bank**

*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|-------|---------------|
| N/A   | N/A           |

The examination will be recorded by this method:   N/A

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**See Requests for Production of Documents, attached hereto. Production due within fourteen (14) days of service.**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   **August 29, 2024**

CLERK OF COURT

OR

_____          _____
Signature of Clerk or Deputy Clerk                          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing Luc A. Despins, Chapter 11 Trustee, who issues or requests this subpoena, are:
**Kari A. Mitchell, Esq.; Neubert, Pepe & Monteith, P.C.; 195 Church Street, 13th Floor, New Haven, Connecticut 06510 kmitchell@npmlaw.com; (203) 781-2884**

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

---

1 The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.   The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for (*name of individual and title, if any*): _____
on (*date*) _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true and correct.

Date: _____          _____
                                                          *Server's signature*

                                                          _____
                                                          *Printed name and title*

                                                          _____
                                                          *Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed.R.Civ.P.45(a) Committee Note (2013)

## Request for Production of Documents

### I.    INSTRUCTIONS

1.    Unless otherwise indicated, the requests for documents set forth below, (the "Requests," and each, a "Request"), must be responded to separately and specifically.  Each Request shall be answered fully unless it is in good faith objected to, in which event the reason for Your objection shall be stated in detail, as set forth below.  If an objection pertains only to a portion of a Request, or a word, phrase or clause contained within it, You are required to state Your objection to that portion only and to respond to the remainder of the Requests.

2.    Electronically stored information must be produced in accordance with the following instructions:

    a.    Images.  Black and white images must be 300 DPI Group IV single-page TIFF files. Color images must be produced in JPEG format.  File names cannot contain embedded spaces or special characters (including the comma). Folder names cannot contain embedded spaces or special characters (including the comma). All TIFF image files must have a unique file name, i.e. Bates number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image. The number of TIFF files per folder should not exceed 1000 files. Excel spreadsheets should have a placeholder image named by the Bates number of the file.

    b.    Image Load File

        a.    Concordance® Data File. The data file (.DAT) contains all of the fielded information that will be loaded into the Concordance® database. The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance® default delimiters: Comma ASCII character (020) Quote þ ASCII character (254). Date fields should be provided in the format: mm/dd/yyyy.  Date and time fields must be two separate fields. If documents includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file. For Documents with native files, a LINK field must be included to provide the file path and

1

name of the native file. The native file must be named after the FIRSTBATES.

b. Concordance Image® OR Opticon Cross-Reference File. The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,Box Break,PageCoun.

c. <u>Document Text.</u> Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. It is recommended document level ANSI text files, named per the FIRSTBATES/Image Key. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). Text files must be provided on a document level.

d. <u>Native Production for Certain File Types</u>. File types that reasonably require viewing in their native format for a full understanding of their content and meaning must be produced in native format. These include, but are not limited to, spreadsheets, spreadsheet-like files (Microsoft Excel, comma separated values, tab separated values, etc.), Microsoft PowerPoint or other special presentation files, database files, and audio/visual files. Provide an image of a Bates numbered slip sheet indicating the presence of a native file, and include the path to the native as a field in the .dat file. Name the produced native file with the Bates number corresponding to the slip sheet for the file. Group native files within incrementally named "NATIVE" directories, separate from images directories.

e. <u>De-duplication</u>. Produce a single copy of each electronic document for which exact duplicates exist. For email messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For email attachments and standalone electronic files, consolidate duplicates based on MD5 hash of the entire file.

f. <u>Metadata.</u> Produce extracted metadata for each document in the form of a Concordance compliant load file (.dat). The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance default delimiters: Comma , ASCII character (020) Quote þ ASCII character (254)
Date fields should be provided in the format: mm/dd/yyyy. Date and time fields must be two separate fields. Required metadata listed below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent Native: (empty) |
| TIME_SENT/ TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |

| TIME_CREATED | 10:25 AM | Email: (empty) Native: Time the document was created **This data must be a separate field and cannot be combined with the DATE_CREATED field |
|---|---|---|
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty) Native: Time the document was last modified **This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty) Native: Time the document was last accessed **This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$ cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0 698aff95c 2fcab58712467eab4004583e b8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

3.      Each Request operates and should be construed independently and, unless otherwise indicated, no Request limits the scope of any other Request.

4.      All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in these Requests.

5.      Each Request contained herein extends to all Documents:  (a) in Your possession, custody, or control; or (b) in the possession, custody, or control of anyone acting on Your behalf,

4

including Your counsel or other representatives and advisors. Each Document shall be produced in its entirety.

6.      If You are requested to produce a Document that is no longer in Your possession, custody, or control, then Your response must (a) describe in detail the nature of the document and its contents; (b) identify the person(s) who prepared or authored the Document (and, if applicable, the Person(s) to whom the Document was sent); (c) identify the date on which the document was prepared or created; (d) state whether such Document (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) was otherwise disposed of; (e) state the reason for, and the facts and circumstances surrounding, such disposition; (f) identify the Persons who authorized such disposition; (g) identify the date or approximate date of such disposition; (h) state when the Document was most recently in Your possession, custody or control; and (i) identify the Person, if any, presently in possession, custody, or control of such Document.

7.      If You are requested to produce a Document that has been destroyed, then Your response must state, in addition to the information required by the preceding Instruction:  (a) the reason for the Document's destruction; (b) the identity of the Person who destroyed the Document; and (c) the identity of the Person who directed that the Document be destroyed.

8.      If You claim that a requested Document is privileged or attorney work-product, then Your response must: (a) state (i) a description of the Document adequate to support Your contention that the Document is privileged, (ii) the title of the Document, (iii) the date of the Document, (iv) the author of the Document, (v) the addressee of the Document, (vi) the identity of each Person who received or saw the original or any draft, copy, or reproduction of the Document, (vii) whether the Document itself, or any information contained or referred to in the Document is in the possession, custody, or control of any other Persons, and if so, the identity of

such Persons, as well as a statement addressing how the information came into their possession, (viii) the claim of privilege under which the Document is withheld, and (ix) all of the circumstances upon which You will rely to support such claim of privilege; and (b) produce a privilege log containing all of the information requested in Part (a) of this Instruction for each Document withheld on the basis of a claim of privilege in accordance with D. Conn. L. Civ. R. 26(e). For any part of a Document Request as to which a claim of privilege or work product is not made, responsive documents should be provided in full.

9.      If a portion of an otherwise responsive Document contains information subject to a claim of privilege, only that portion of the Document subject to the claim of privilege shall be deleted or redacted from the Document following the instructions above, and the rest shall be produced.

10.      The Requests are continuing in nature. You are hereby instructed to (a) supplement or correct any responses later learned to be incomplete or incorrect immediately upon learning that a prior response was incomplete or incorrect; and (b) produce any additional Documents that are called for under the subpoena.

11.      If a Document is in a language other than English, You should provide that Document.  If a Document is in a language other than English, and an English translation exists, You should provide both Documents.

12.      All references to Entities includes all affiliates thereof.

13.      All references to individual names include all alternative names, aliased, or nicknames.

14.     Unless otherwise expressly indicated, the period of time covered by the Document Requests is the period from February 5, 2012 to the date responses to the Document Requests are due.

## II.    RULES OF CONSTRUCTION

15.     The use of (a) any singular noun shall be construed to include the plural, and vice versa, and (b) a verb in any tense shall be construed as the use of the verb in all other tenses.

16.     The terms (a) "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of any request all responses that might otherwise be construed to be outside of its scope, and (b) "each" and "any" shall be deemed to include and encompass the words "every" and "all."

## III.    DEFINITIONS

The definitions supplied by D. Conn. L. Civ. R. 26(c) and the rules of construction supplied by D. Conn. L. Civ. R. 26(d), as incorporated by D. Conn. Bankr. L.R. 2004-1(a), shall apply to the Document Requests. In addition, the following terms used in these Document Requests shall have the following meanings:

1.     "You" or "Your" or "Yourself" means and refers, to Old National Bank, together with all of its affiliates, divisions, agencies, instrumentalities, departments, offices, partners, officers, directors, agents, attorneys, representatives, employees, and/or anyone acting on its behalf.

2.       "<u>Debtor</u>" means Ho Wan Kwok (a/k/a Miles Kwok, Miles Guo, Guo Wengui, Guo Haoyun, 郭文贵, or any other alias), together with his employees, agents, counsel, advisors, or anyone acting on his behalf.

3.       "<u>Debtor's Son</u>" means Qiang Guo (a/k/a Mileson Kwok, 郭强, or any other alias), together with his employees, agents, counsel, advisors, or anyone acting on his behalf.

4.       "<u>Debtor's Daughter</u>" means Mei Guo (a/k/a Mei Gui, 郭美, or any other alias), together with her employees, agents, counsel, advisors, or anyone acting on her behalf.

5.       "<u>Debtor's Purported Wife</u>" means Hing Chi Ngok (a/k/a Hing Chi Ng, Yue Qingzhi, 岳庆芝, or any other alias), together with her employees, agents, counsel, advisors, or anyone acting on her behalf.

6.        "<u>Debtor's Family</u>" means, individually and collectively, the Debtor, the Debtor's Son, the Debtor's Daughter, and the Debtor's Purported Wife, and any other familial relation to the Debtor.

7.       "<u>2004 Discovery Targets</u>" means, individually and collectively, the Debtor, the Debtor's Family, 17 Miles, LLC, 5780 Saguaro LLC, Aaron Mitchell, ACA Capital Group Limited, Ace Decade Holdings Limited, AI Group Holdings Inc., Alfa Global Ventures Limited, Alphonso Global Ventures Limited, Ana C. Izquiedo-Henn, Andrew Childe, Anthony DiBattista, Anton Development Limited, Booming Sail New York LLC, Beile Li,  Bingshang Jiao, Bravo Luck Limited, Brent Petro Inc., Celestial Tide Limited, Chris Lee (a/k/a Nan Li, Mei Guo Xiao Li), China Golden Spring Group (Hong Kong) Ltd., Crane Advisory Group, Daniel Thomas Podhaskie, Defeng Cao (a/k/a Wayne Cao, Max Cao), Ding "Ivan" Lin, Doaa Dashoush, Eastern Profit Corporation Limited, Genever Holdings Corporation, Genever Holdings LLC, Gettr USA, Inc., Gnews Media Group Inc., G Fashion (CA), G Fashion, G Fashion Hold Co. A. Limited, G

Fashion Hold Co. B. Limited, G Fashion Media Group Inc., G Fashion International Limited, G Fashion LLC, Gmusic LLC, Gnews LLC, Geducation, GFNY, Inc., G Club Finance, G Club HoldCo I LLC, G Club International Limited, G Club Investments Limited, G Club Operations LLC, G Club US Operations Inc., G Club US Operations LLC, G Club, G Club One, G Club Two, G Club Three, G Live, LLC, Gbroadcast, LLC, GF Italy, GM 27 LLC, Gladys Chow, Golden Spring (New York) Ltd., Gposts LLC, GTV Media Group, Inc., Gypsy Mei Food Service LLC, Gypsy Mei Productions LLC, Gypsy Mei 27 Vestry, Inc., Dawn State Limited, Greenwich Land  LLC, Hao (Gavin) Li (a/k/a Huo Lai), Haitham Khaled, Hamilton Capital Holdings Inc., Hamilton Digital Assets Funds SP, Hamilton Investment Management Limited, Hamilton Opportunity Fund SPC, Hamilton PE Funds SP, Holy City Hong Kong Ventures Ltd., GS Security Solutions Inc., Alex Hadjcharalambous, Han Chunguang, Haoran He, HCHK Property Management, Inc., HCHK Technologies, Inc., HK International Funds Investments (USA) Limited LLC, Freedom Media Ventures Ltd., FungWan Trading Inc., Himalaya Currency Clearing Pty. Ltd., Himalaya New World Inc., Himalaya International Financial Group Ltd., Himalaya International Clearing Ltd., Himalaya International Payments Ltd., Himalaya International Reserves Ltd., Himalaya Ventures LLC, Himalaya Investment LLC, Hudson Diamond Holding, Inc., Hudson Diamond Holding LLC, Hudson Diamond NY LLC, Huk Trading Inc., Infinity Treasury Management Inc., Jesse Brown, Jessica Mastrogiovanni, Jiaming Liu, Jie Zhang, Jovial Century International Limited,  Joyord Sportswear Limited, K Legacy Ltd., Kamel Debeche, Karin Maistrello, Kin Ming Je, Lamp Capital LLC, Lawall & Mitchell, LLC, Leading Shine NY Ltd., Lexington Property and Staffing, Inc., Lexington Property and Staffing LLC, Linwan "Irene" Feng, Limarie Reyes, Lihong "Sara" Wei Lafrenz, The Lost Draft LLC, Macaron Limited, Major Lead International Limited, Mary Jiang, MOS Himalaya LLC, Maywind Trading LLC, New York

MOS Himalaya LLC, Next Tycoon Investments Limited, Nicholas Savio, Nodal Partners, LLC, Qidong Xia, Oasis Tech Limited, Omicron Neutraceutical LLC, O.S.C. Orbit Service Company, LLC, Pixshow Film Inc., Qu Guo Jiao, Roscalitar 2, Ridwan Mamode Saib, Ross Heinemeyer, Rule of Law Society IV Inc., Rule of Law Foundation III, Inc., Rule of Law Fund, Saraca Media Group Inc., Savio Law LLC, Scott Barnett, Seven Mission Group LLC, Shih Hsin Yu, Sirius Networking Inc., Taurus Fund LLC, Taurus Management LLC, US Himalaya Capital Inc., V.X. Cerda & Associates P.A., Victor Cerda, Voice of Guo Media, Inc., Wen Xiao, Wencong Wang, William Je, Kin Ming Je a/k/a Je Kin Ming, Wise Creation International Limited, Xuebing Wang, Yan Chun Liu, Yinying (Aila) Wang (a/k/a Xiao Fei Xiang), Yongbing Zhang, Yongping Yan (Shan Mu) Yue Zhou, Yumei Hao (a/k/a Ru Shui), Yvette Wang (a/k/a Yanping Wang, a/k/a Yan Ping Wang), Zhixuan Li, Zhouer "Joe" Wang, NewPeople LLC, Ziba Limited, New Mulberry PTE Ltd, TD Primrose Limited, Shin Hee-Seup a/k/a Hee Seup Shin, River Valley Operations LLC, Fiesta Investment Ltd., Fiesta Property Developments Ltd., Medical Supply System International LLC, New Smoke LLC, Mountains of Spices, LLC, Rainbow Gifts Inc., Santel LLC, Davy & Tony International Limited, Love Miles for Zisun Inc., Himalaya Boston Mayflower LLC, Top California Beach Corporation, and Golden Eagle Ventures, LLC.

8.      "Including" or any variant thereof means "including without limitation."

9.      "And" and "or" mean "and/or," and shall be construed both conjunctively as well as disjunctively in order to maximize their scope.

10.      "Any" and "all" and "each" mean "each and every."

11.      "Each" and "every" mean "each and every."

12.      "Third Party" means a Person or Entity other than Yourself.

10

13.    "<u>Transfer</u>" shall have the meaning given to it by section 101(54) of the Bankruptcy Code.

14.    "<u>Document</u>" means any information or thing within the scope of Fed. R. Civ. P. 34, and includes, without limitation, each and every written, recorded, or graphic matter of any kind, type, nature, or description that is or has been in Your Possession, Custody or Control, including all printed and electronic copies of electronic mail, computer files maintained in electronic form, correspondence, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, charts, blueprints, drawings, sketches, graphs, plans, articles, specifications, diaries, letters, telegrams, photographs, minutes, contracts, agreements, surveys, computer printouts, data compilations of any kind, telexes, facsimiles, emails, text messages, instant messages, voice messages, invoices, order forms, checks, drafts, statements, credit memos, reports, position reports, summaries, indices, books, ledgers, notebooks, schedules, transparencies, recordings, catalogs, advertisements, promotional materials, films, video tapes, audio tapes, CDs, computer disks, brochures, pamphlets, punch-cards, time-slips, Tweets, social media posts, or any written or recorded materials of any other kind, and all meta-data thereof, however stored (whether in tangible or electronic form), recorded, produced, or reproduced, and also including but not limited to, drafts or copies of any of the foregoing that contain any notes, comments, or markings of any kind not found on the original documents or that are otherwise not identical to the original documents.

15.    "<u>Person(s)</u>" means an individual, corporation, proprietorship, partnership, association, or any other Entity. "Person" also includes any agent, representatives, or expert, including but not limiting to, attorneys or financial advisors.

11

16.    "Entity" means any natural Person, corporation, partnership, subsidiary, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic Person, as well as any affiliate, agent, parent including but not limited to counsel, financial advisors, or any other representative.

17.    "Regarding" means concerning, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

18.    "Relating to," "relate(s) to" or "related to," when referring to any given subject matter, means, without limitation, any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

19.    "Communication(s)" means, in the broadest possible sense, and without limitation, any transmittal of information or knowledge (in the form of facts, ideas, inquiries, or otherwise). Communication(s) further refers to all conversations, agreements, inquiries, or replies, whether in person, by telephone, in writing, or by means of electronic transmittal devices, and includes, but is not limited to, all correspondence, emails, recordings, transmittal slips, memoranda, telephone communications, voice messages, telegrams, telefaxes, telecopies, telexes, instant messages, chats, text messages, postings to a message board or group chat, social media posts, tweets, videos uploaded to any video platform, telephonic notes, or notes transmitted internally or with third parties.

20.    "Asset(s)" means any item of economic value that is subject to Possession, Custody, or Control. Asset includes all real and personal property, including but limited to, real estate, land, houses, apartments, condominiums, automobiles, yachts, boats, planes, jets, helicopters, cash, bank accounts, cryptocurrencies, securities, accounts receivables, inventory, and other tangible and intangible property.

## IV.    DOCUMENTS TO BE PRODUCED

1.    All Documents related to any account held by, controlled by, on behalf of, or otherwise related to any of the 2004 Discovery Targets, including any and all account statements, authorizations, power of attorney, trusts, instructions or forms, copies of cancelled checks, correspondence, and wire transfers and related correspondence and instructions.

2.    All Documents related to any funds, securities, property, or assets belonging to, held by, controlled by, on behalf of, or otherwise related to any of the 2004 Discovery Targets, including any and all account statements, authorizations, powers of attorney, trusts, instructions or forms, copies of cancelled checks, correspondence, and wire transfers and related correspondence and instructions.

3.    All Documents related to any business, commerce or financial transactions, including but not limited to any loan, line of credit, bailment, deposit, swap, securities transactions, mortgage, or ISDA, with any of the 2004 Discovery Targets, including any and all account statements, authorizations, powers of attorney, trusts, instructions or forms, copies of cancelled checks, correspondence, and wire transfers and related correspondence and instructions.

4.    All Documents relating to any wire transfer activity relating to the 2004 Discovery Targets, regardless of the existence of any accounts, including but not limited to all wire transfer

receipts, account numbers, balances, authorizations, identification information related to the parties to the transfer, correspondence, instructions, or other records.

5.      All Documents related to any correspondence and communications between you and the 2004 Discovery Targets.

6.      All Documents related to any account with any 2004 Discovery Target relating to opening of the account, authorized users of the account and maintenance of the account.

7.      All Documents related to any anti-money laundering, know-your-customer, or other compliance activity relating to any of the 2004 Discovery Targets, including but not limited to any information provided by any of the 2004 Discovery Targets, or learned by You.

8.      All Documents relating to any communications with any regulator from any country, including but not limited to the Bank of England, the United States Federal Reserve, the S.E.C., the CFTC,  FINRA, China Securities Regulatory Commission, People's Bank of China, Hong Kong Securities and Futures Commission, and the Hong Kong Monetary Authority relating to any of the 2004 Discovery Targets.

**EXHIBIT 2**

O67BGUO1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

        v.                      23 Cr. 118 (AT)

MILES GUO,

               Defendant.       Trial
------------------------------x

                                  New York, N.Y.
                                  June 7, 2024
                                  8:45 a.m.

Before:

                  HON. ANALISA TORRES,

                                 District Judge
                                 -and a Jury-

                     APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  MICAH F. FERGENSON
     RYAN B. FINKEL
     JUSTIN HORTON
     JULIANA N. MURRAY
     Assistant United States Attorneys

SABRINA P. SHROFF
     Attorney for Defendant

PRYOR CASHMAN LLP
     Attorneys for Defendant
BY:  SIDHARDHA KAMARAJU
     JOHN M. KILGARD
     CLARE P. TILTON

ALSTON & BIRD LLP
     Attorneys for Defendant
BY:  E. SCOTT SCHIRICK

O67BGUO1

ALSO PRESENT:
Isabel Loftus, Paralegal Specialist, USAO
Ruben Montilla, Defense Paralegal
Tuo Huang, Interpreter (Mandarin)
Shi Feng, Interpreter (Mandarin)
Yu Mark Tang, Interpreter (Mandarin)

O67BGUO1

```
 1              (Trial resumed; jury not present)
 2              THE COURT:  Note your appearances, please.
 3              MR. FINKEL:  Good morning, your Honor.  Ryan Finkel,
 4    Justin Horton, Juliana Murray and Micah Fergenson who will be
 5    joining us shortly for the government.  We're joined at counsel
 6    table by Special Agent Robert this morning.
 7              MR. SCHIRICK:  Good morning, your Honor.
 8              Scott Schirick for the defendant, and I will be joined
 9    shortly by Mr. Kamaraju, Ms. Shroff and Mr. Barkan, and we're
10    at counsel's table with Mr. Guo.
11              THE COURT:  Please be seated.  Is there anything
12    before we start today?
13              MR. FINKEL:  Not from the government.
14              MS. SHROFF:  No, your Honor, not from us.
15              THE COURT:  So if you'll have the witness ready to
16    take the stand by 8:59.
17              MR. FINKEL:  We'll do that, your Honor.
18              THE COURT:  Thank you.
19              (Recess)
20
21
22
23
24
25
```

1           THE COURT:  Please get the jury.

2           (Jury present)

3           THE COURT:  Please be seated.  Good morning, jurors.

4    Thank you again for coming back exactly on time.  We're going

5    to continue with the cross examination of the witness.

6           Ms. Li, remember that you're still under oath.

7           MS. SHROFF:  May I proceed, your Honor?

8           THE COURT:  You may.

9    YA LI,

10   CROSS-EXAMINATION CONTINUED

11   BY MS. SHROFF:

12   Q.  Ms. Li, let me direct your attention to Defense Exhibit

13   60497.  Could you publish it, please.

14          This is Lei Ann Li, correct?

15   A.  Yes.

16   Q.  And she goes by the name of Cornfield sister, correct?

17   A.  Yes.

18   Q.  You did not approve of her work product, correct?

19   A.  Sorry.

20   Q.  Who did she work for?

21   A.  I work for Miles Guo.

22   Q.  Who did she work for?

23   A.  She work for Miles Guo.

24   Q.  Which company did she work for?

25   A.  G Fashion.

1                  MR. FERGENSON:  Objection.

2                  THE COURT:  I'll allow her to answer that question.

3    A.  No.

4                  THE COURT:  Next question.

5    Q.  Could I show her, let's call it DX-7000.  Do you recognize

6    it, ma'am?

7    A.  Yes.

8    Q.  What is it?

9    A.  It's Miles Guo's broadcast.

10   Q.  And you've seen it before, right?

11   A.  Yes.

12                 MS. SHROFF:  I move Defense Exhibit 7000 into

13   evidence.

14                 MR. FERGENSON:  No objection.

15                 THE COURT:  It is admitted.

16                 (Defendant's Exhibit 7000 received in evidence)

17                 MS. SHROFF:  May I publish it to the jury, your Honor?

18                 THE COURT:  Yes.

19   Q.  Tell us please, starting on the left hand corner, who's the

20   first man over there.?

21   A.  Left, Lao Ban Zhang.

22   Q.  Who's that?

23   A.  Lao Ban Zhang use to be the Iron Blood Group member and the

24   New Zealand farm leader.

25   Q.  Who's below him?

771

O67BGUO3                          Ya Li - Cross

1    A.  Ru Shui.

2    Q.  Who is Ru Shui?

3    A.  Ru Shui also one of the Iron Blood Group member and the one

4    farm leader.

5    Q.  But let's stay with you Ru Shui now.

6            Below that, tell the jury who those two are?

7    A.  Hao Tian and Dao Haidong.

8    Q.  Let's start with the male.  Who's he?

9            In the photo on the left, there are two people in

10   there, right?

11   A.  Hao Haidong and Hao Tian.

12   Q.  He is the soccer player, correct?

13   A.  Yes.

14   Q.  That's his wife, correct?

15   A.  Yes.

16   Q.  Olympic Badminton player, correct?

17   A.  Yes.

18   Q.  For China, correct?

19   A.  Yes.

20   Q.  And you know sitting here today that both of them now live

21   in Spain, correct?

22   A.  Yes.

23   Q.  And in the middle are two individuals, correct?

24   A.  Yes.

25   Q.  I certainly don't need you to identify Miles Guo, but tell

## **EXHIBIT 3**

# Certification of Beneficial Owners of Legal Entities

**The information contained in this Certification is sought pursuant to Section 1010.230 of Title 31 of the United States Code of Federal Regulations (31 CFR 1010.230).**

| **Financial Institution Name:** Lake City Bank | | **Financial Institution Location:** 9640 N Michigan Rd Carmel, IN 46032 |
|---|---|---|
| **Financial Institution Contact Person:** Kyle Means | **Contact Phone Number:** | **Customer Portfolio/Identifier:** ███6361 |

## I. General Instructions

### What is this form?

To help the government fight financial crime, Federal regulation requires certain financial institutions to obtain, verify, and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud, and other financial crimes. Requiring the disclosure of key individuals who own or control a legal entity (i.e., the beneficial owners) helps law enforcement investigate and prosecute these crimes.

### Who has to complete this form?

This form must be completed by the person opening a new account on behalf of a legal entity with any of the following U.S. financial institutions: (i) a bank or credit union; (ii) a broker or dealer in securities; (iii) a mutual fund; (iv) a futures commission merchant; or (v) an introducing broker in commodities.

For the purposes of this form, a **legal entity** includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed in the United States or a foreign country. **Legal entity** does not include sole proprietorships, unincorporated associations, or natural persons opening accounts on their own behalf.

### What information do I have to provide?

This form requires you to provide the name, address, date of birth and Social Security number (or passport number or other similar information, in the case of Non-U.S. persons) for the following individuals (i.e., the **beneficial owners**):

> (i) Each individual, if any, who owns, directly or indirectly, 25 percent or more of the equity interests of the legal entity customer (e.g., each natural person that owns 25 percent or more of the shares of a corporation); **and**

> (ii) An individual with significant responsibility for managing the legal entity customer (e.g., a Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, or Treasurer).

The number of individuals that satisfy this definition of "beneficial owner" may vary. Under section (i), depending on the factual circumstances, up to four individuals (but as few as zero) may need to be identified. Regardless of the number of individuals identified under section (i), you must provide the identifying information of one individual under section (ii). It is possible that in some circumstances the same individual might be identified under both sections (e.g., the President of Acme, Inc. who also holds a 30% equity interest). Thus, a completed form will contain the identifying information of at least one individual (under section (ii)), and up to five individuals (i.e., one individual under section (ii) and four 25 percent equity holders under section (i)). The financial institution may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.

Certification of Beneficial Owners with Verification
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

CERT-BEN-V 3/1/2020
(2003).00
Page 1 of 4

## II. Certification of Beneficial Owner(s)

Persons opening an account on behalf of a legal entity must provide the following information:

| Full Name of Natural Person Opening Account:<br>Yumei Hao | Title of Natural Person Opening Account:<br>Owner |
|---|---|
| Type of Legal Entity for Which the Account is Being Opened:<br>Limited Liability Company | Legal Entity Identifier (Optional): |
| Name of Legal Entity for Which the Account is Being Opened:<br>River Valley Operations LLC | |
| Physical Address of Legal Entity for Which the Account is Being Opened:<br>3715 Kendall Wood Dr    Carmel, IN  46032-9272 | |
| Account Type (Optional): | Account Number (Optional): |

Provide the following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:

| Full Name (Beneficial Owner) | | Date of Birth<br><br>Percent of Ownership (Optional) | Address (Residential or Business Street Address) | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Social Security Number, Passport Number and country of issuance, or other similar identification number[1] |
|---|---|---|---|---|---|
| First<br>Yumei | M.I. | | Street ██████ | ██████ | Number |
| Last<br>Hao | Suffix | 100% | City ███<br>State & Zip ████ | | Country of Issuance |
| First | M.I. | | Street | | Number |
| Last | Suffix | % | City<br>State & Zip | | Country of Issuance |
| First | M.I. | | Street | | Number |
| Last | Suffix | % | City<br>State & Zip | | Country of Issuance |
| First | M.I. | | Street | | Number |
| Last | Suffix | % | City<br>State & Zip | | Country of Issuance |

☐  **If checked, Beneficial Owner listing requirement is Not Applicable**

Certification of Beneficial Owners with Verification<br>© 2019 Wolters Kluwer Financial Services, Inc.<br>All rights reserved.

## II. Certification of Beneficial Owner(s), Continued

Provide the following information for one individual with significant responsibility for managing the legal entity listed above, such as:

◆ An executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or
◆ Any other individual who regularly performs similar functions.

(If appropriate, an individual listed under the ownership section above may also be listed in the section below).

| Full Name/Title (of Person with Control) | Date of Birth | Address (Residential or Business Street Address) | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Social Security Number, Passport Number and country of issuance, or other similar identification number[1] |
|---|---|---|---|---|
| First　　　M.I.<br>Yumei<br><br>Last　　　Suffix<br>Hao<br><br>Title<br>owner | ███ | Street ████████<br><br>City ███<br><br>State & Zip ████ | ██████ | Number<br><br>Country of Issuance |

[1] In lieu of a passport number, Non-U.S. Persons may also provide a Social Security Number, an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

I, Yumei Hao　　　　　　　　　　　　　　　　(name of natural person opening account), hereby certify, to the best of my knowledge, that the information provided above is complete and correct. Also, the Legal Entity named above agrees to notify the Financial Institution of any change in the beneficial ownership information on this Certification.

Signature: ████████　　　　　Date: 6/16/2022

## For Institution Use Only:

| Name of Beneficial Owner | Type of Document | Document ID Number | Place of Issuance | Date of Issuance | Expiration Date |
|---|---|---|---|---|---|
| Yumei<br><br>Hao | Driver's License<br><br>☐ | █████ | IN | 01/05/2021 | 10/24/2027 |
|  | ☐ |  |  |  |  |
|  | ☐ |  |  |  |  |
|  | ☐ |  |  |  |  |
| Yumei<br>Hao | Driver's License<br><br>☐ | ██████ | IN | 01/05/2021 | 10/24/2027 |

Certification of Beneficial Owners with Verification
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

CERT-BEN-V 3/1/2020
(2003).00
Page 3 of 4

## II. Certification of Beneficial Owner(s), Continued

**Additional Information:**

Certification of Beneficial Owners with Verification
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

# Certification of Beneficial Owners of Legal Entities

**The information contained in this Certification is sought pursuant to Section 1010.230 of Title 31 of the United States Code of Federal Regulations (31 CFR 1010.230).**

| Financial Institution Name:<br>Lake City Bank | | Financial Institution Location:<br>9640 N Michigan Rd<br>Carmel, IN 46032 |
|---|---|---|
| Financial Institution Contact Person:<br>Kyle Means | Contact Phone Number: | Customer Portfolio/Identifier:<br>█████ 7150 |

## I. General Instructions

### What is this form?

To help the government fight financial crime, Federal regulation requires certain financial institutions to obtain, verify, and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud, and other financial crimes. Requiring the disclosure of key individuals who own or control a legal entity (i.e., the beneficial owners) helps law enforcement investigate and prosecute these crimes.

### Who has to complete this form?

This form must be completed by the person opening a new account on behalf of a legal entity with any of the following U.S. financial institutions: (i) a bank or credit union; (ii) a broker or dealer in securities; (iii) a mutual fund; (iv) a futures commission merchant; or (v) an introducing broker in commodities.

For the purposes of this form, a **legal entity** includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed in the United States or a foreign country. **Legal entity** does not include sole proprietorships, unincorporated associations, or natural persons opening accounts on their own behalf.

### What information do I have to provide?

This form requires you to provide the name, address, date of birth and Social Security number (or passport number or other similar information, in the case of Non-U.S. persons) for the following individuals (i.e., the **beneficial owners**):

> (i) Each individual, if any, who owns, directly or indirectly, 25 percent or more of the equity interests of the legal entity customer (e.g., each natural person that owns 25 percent or more of the shares of a corporation); **and**

> (ii) An individual with significant responsibility for managing the legal entity customer (e.g., a Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, or Treasurer).

The number of individuals that satisfy this definition of "beneficial owner" may vary. Under section (i), depending on the factual circumstances, up to four individuals (but as few as zero) may need to be identified. Regardless of the number of individuals identified under section (i), you must provide the identifying information of one individual under section (ii). It is possible that in some circumstances the same individual might be identified under both sections (e.g., the President of Acme, Inc. who also holds a 30% equity interest). Thus, a completed form will contain the identifying information of at least one individual (under section (ii)), and up to five individuals (i.e., one individual under section (ii) and four 25 percent equity holders under section (i)). The financial institution may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.

Certification of Beneficial Owners with Verification<br>© 2019 Wolters Kluwer Financial Services, Inc.<br>All rights reserved.

## II. Certification of Beneficial Owner(s)

Persons opening an account on behalf of a legal entity must provide the following information:

| | |
|---|---|
| **Full Name** of Natural Person Opening Account: ▮▮▮ | **Title** of Natural Person Opening Account: COSULTANT |
| **Type of Legal Entity for Which the Account is Being Opened:** Limited Liability Company | **Legal Entity Identifier (Optional):** |
| **Name of Legal Entity for Which the Account is Being Opened:** Golden Eagle Ventures LLC | |
| **Physical Address of Legal Entity for Which the Account is Being Opened:** 3715 Kendall Wood Dr   Carmel, IN  46032-9272 | |
| **Account Type (Optional):** | **Account Number (Optional):** |

Provide the following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:

| Full Name (Beneficial Owner) | | Date of Birth / Percent of Ownership (Optional) | Address (Residential or Business Street Address) | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Social Security Number, Passport Number and country of issuance, or other similar identification number[1] |
|---|---|---|---|---|---|
| First Yumei | M.I. | | Street ▮▮▮ | ▮▮▮ | Number |
| Last Hao | Suffix | 100.00% | City ▮▮▮  State & Zip ▮▮▮ | | Country of Issuance |
| First | M.I. | | Street | | Number |
| Last | Suffix | % | City  State & Zip | | Country of Issuance |
| First | M.I. | | Street | | Number |
| Last | Suffix | % | City  State & Zip | | Country of Issuance |
| First | M.I. | | Street | | Number |
| Last | Suffix | % | City  State & Zip | | Country of Issuance |

☐ **If checked, Beneficial Owner listing requirement is Not Applicable**

Certification of Beneficial Owners with Verification
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

## II. Certification of Beneficial Owner(s), Continued

Provide the following information for one individual with significant responsibility for managing the legal entity listed above, such as:

◆ An executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or

◆ Any other individual who regularly performs similar functions.

(If appropriate, an individual listed under the ownership section above may also be listed in the section below).

| Full Name/Title (of Person with Control) | | Date of Birth | Address (Residential or Business Street Address) | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Social Security Number, Passport Number and country of issuance, or other similar identification number[1] |
|---|---|---|---|---|---|
| First Yumei | M.I. | ███████ | Street ███████████ | ███████ | Number |
| Last Hao | Suffix | | City | | Country of Issuance |
| Title OWNER | | | State & Zip ████████ | | |

[1] In lieu of a passport number, Non-U.S. Persons may also provide a Social Security Number, an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

I, ███████ (name of natural person opening account), hereby certify, to the best of my knowledge, that the information provided above is complete and correct. Also, the Legal Entity named above agrees to notify the Financial Institution of any change in the beneficial ownership information on this Certification.

Signature: ████████████      Date: 6/16/2022

### For Institution Use Only:

| Name of Beneficial Owner | Type of Document | Document ID Number | Place of Issuance | Date of Issuance | Expiration Date |
|---|---|---|---|---|---|
| Yumei Hao | Driver's License ☐ | ███████ | IN | 01/05/2021 | 10/24/2027 |
| | ☐ | | | | |
| | ☐ | | | | |
| | ☐ | | | | |
| Yumei Hao | Driver's License ☐ | ███████ | IN | 01/05/2021 | 10/24/2027 |

Certification of Beneficial Owners with Verification
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

## II. Certification of Beneficial Owner(s), Continued

**Additional Information:**

Certification of Beneficial Owners with Verification
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

**EXHIBIT 4**

# Lake City Bank
Member FDIC

Last statement: July 31, 2022
This statement: August 31, 2022
Total days in statement period: 31

Page 1 of 2
XXXXXX2940
(1)   0

RIVER VALLEY OPERATIONS LLC
3715 KENDALL WOOD DR
CARMEL IN 46032-9272

Direct inquiries to:
One Call Center, 888-522-2265#2

Lake City Bank
PO Box 1387
Warsaw IN 46581-1387

## Business Interest Checking

| | | | |
|---|---|---|---|
| Account number | XXXXXX2940 | Beginning balance | |
| Enclosures | 1 | Total debits | |
| Low balance | | Total credits |  |
| Average balance |  | Ending balance | |
| Avg collected balance | | | |
| Interest paid year to date | | | |

## ELECTRONIC (EFT) AND OTHER DEBITS

| Date | Description | Subtractions |
|---|---|---|
| 08-09 | | |
| 08-17 | | |
| 08-17 | | |
| 08-17 | | |
| 08-18 | | |
| 08-19 | | |
| 08-19 | | |



RIVER VALLEY OPERATIONS LLC

August 31, 2022

Page 2 of 2

XXXXXX2940

| Date | Description | Subtractions |
|------|-------------|--------------|
| 08-19 | | |
| 08-25 | | |
| 08-29 | | |



| | | | |
|--|--|--|--|
| Total Number of Debits | 10 | Total Amount of Debits | |

## ELECTRONIC (EFT) AND OTHER CREDITS

| Date | Description | Additions |
|------|-------------|-----------|
| 08-10 | ' Wire Transfer-IN | 7,999,935.00 |
| | 202208100001937 ACA CAPITAL GROUP HONG KONG HK | |
| | /RFB/REPAYMENT BY | |
| 08-31 | ' Interest Credit | |
| Total Number of Credits | | Total Amount of Credits | |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 07-31 | | 08-17 | | 08-25 | |
| 08-09 | | 08-18 | | 08-29 | |
| 08-10 | | 08-19 | | 08-31 | |

## INTEREST INFORMATION

Annual percentage yield earned
Interest-bearing days
Average balance for APY
Interest earned



*Thank you for banking with Lake City Bank*

**EXHIBIT 5**

## Summary Chart of Provided Bank Documents

|  | Processed Accounts | Other Accounts | Total Identified Accounts |
|---|---|---|---|
| **Number of transactions** | 216,057 |  |  |
| **Number of files** | 2,173 | 639 | **2,812** |
| **Number of entities** | 119 | 20 | **139** |
| **Number of accounts** | 450 | 231 | **681** |
| **Number of banks** | 33 | 39 | **72** |

*Source: Unique (dedupe) pdf, csv, and other excel files received from SDNY.*

**GOVERNMENT EXHIBIT**

**Z-27**

23 Cr. 118 (AT)



## Number of Identified Accounts: By Category

## Family Office Entities

**Number of Processed Accounts**

| Entity | Count |
|---|---|
| Lamp Capital LLC | 25 |
| Golden Spring (New York) LTD | 9 |
| Hudson Diamond Holding, Inc. | 8 |
| Lexington Property and Staffing LLC | 7 |
| Greenwich Land LLC | 3 |
| **Total** | **52** |

## Farm Entities
**Number of Processed Accounts**

| Entity | Count |
|---|---|
| Himalaya New World Inc. | 7 |
| Medical Supply System International | 5 |
| New Smoke LLC | 5 |
| Maywind Trading LLC | 5 |
| New People LLC | 4 |
| G Club One | 3 |
| G Club Three | 3 |
| G Club Two | 3 |
| Mountains of Spices LLC | 3 |
| Rainbow Gifts Inc. | 3 |
| Santel LLC | 3 |
| Davy & Tony International Limited | 2 |
| Love Miles for Zisun Inc | 2 |
| US Himalaya Capital Inc. | 2 |
| Fungwan Trading Inc. | 1 |
| Himalaya Boston Mayflower LLC | 1 |
| Himalaya Ventures LLC | 1 |
| Top California Beach Corporation | 1 |
| Golden Eagle Ventures, LLC | 1 |
| **Total** | **55** |

## EXHIBIT 6



07/11/2022                    $500,000.00





07/11/2022                    $500,000.00

