**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                              :
In re:                                        :   Chapter 11
                                              :
HO WAN KWOK, et al.,¹                         :   Case No. 22-50073 (JAM)
                                              :
            Debtors.                          :   (Jointly Administered)
                                              :
-------------------------------------------------------x
```

**MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER UNDER**
**BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1 AUTHORIZING**
**EXAMINATION OF SCHULMAN BHATTACHARYA, LLC**

Luc A. Despins, in his capacity as the Chapter 11 Trustee (the "Trustee") appointed in the above-captioned chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 2004(a) (the "Bankruptcy Rules") and Local Bankruptcy Rule 2004-1 (the "Local Rules"), hereby applies (the "Application" or "Motion") to conduct the examination of Schulman Bhattacharya, LLC ("Schulman" or the "Examinee"). **Please take notice that the deadline to object to this Application is** **November 5, 2024, and in the absence of a timely filed objection, the proposed order filed herewith as Exhibit A (the "Proposed Order") may enter without further notice and hearing**. In support, the Trustee respectfully states as follows:

---

¹ The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## PRELIMINARY STATEMENT

1.      The Trustee's investigation in this case has focused in significant part on identifying potential estate assets hidden behind the Debtor's various alter ego shell companies, as well as understanding the motivations, decision-making, and funding of such entities. The Trustee has discovered with respect to many of these entities that things were not as they seemed on the surface. For example, the Court will recall the evidence the Trustee uncovered that members of a so-called "Creditors Committee" and other individuals were secretly directing the actions of the "HCHK" entities, including their litigation in this Court. The Trustee has also learned that law firms representing the Debtor's relatives and associates have routinely received payment from the Debtor's alter egos—*i.e.*, from assets the Trustee believes are property of the estate.

2.      The Trustee's proposed investigation of Schulman is important for these same reasons noted above. The Trustee has long known (based on the Debtor's schedules and other information) that Schulman served as prepetition counsel to the Debtor and certain of his shell companies in various civil litigation matters. With limited exceptions, the Trustee believed that Schulman no longer performed work for the Debtor or his associated entities on a postpetition basis, and certainly not presently. The Trustee recently learned, however, that Schulman **_appears to be assisting other litigants in this Court in opposing the Trustee behind the scenes_**, without having entered a notice of appearance and without notice to the Trustee.

3.      Specifically, the Trustee located metadata in PDF filings submitted to the Court in support of motions to dismiss filed by Lazare Potter Giacovas & Moyle LLP (the "Lazare Firm") in (a) the Mahwah Adversary Proceeding (Adv. Proc. No. 23-05017) (on behalf of Taurus Fund LLC, Scott Barnett, as Trustee of Taurus Fund LLC and Taurus Management LLC, as Trustee of Taurus Fund LLC) and (b) the Omnibus Alter Ego Adversary Proceeding (Adv. Proc. No. 24-

05249) (on behalf of sixteen other entities and individuals connected to the Debtor and his crimes, including William Je and various "G Series" entities). This metadata indicates that ***Schulman attorneys***—not attorneys from the Lazare Firm—are the "authors" of such PDFs.  While this does not necessarily mean that Schulman attorneys drafted the substance of these filings, it does show that they were involved in their preparation in some manner.

4.    In addition, the Trustee has learned that Schulman is apparently assisting another alleged alter ego, Himalaya International Financial Group Ltd. ("<u>HIFG</u>"), in actions by HIFG and its affiliates to undermine the Trustee's asset recovery efforts.  The Court will recall that HIFG is the entity nominally owned by the Debtor's criminal co-conspirator, William Je (or "Uncle William"), that purportedly "loaned" HK International Funds Investments (USA) Limited, LLC ("<u>HK USA</u>") $37 million to secure the return of the *Lady May* yacht.  An affiliate of HIFG and another alleged alter ego, Hamilton Capital Holding Ltd. ("<u>Hamilton Capital</u>") recently commenced an administration proceeding in the United Kingdom, which the Trustee believes is designed to keep Hamilton Capital's assets from the chapter 11 estate.  Based on filings in that proceeding, the Trustee has learned that Schulman is apparently advising HIFG with respect to $8.5 million it holds in a reserve account, and is also helping HIFG prepare "applications" to file in the "court in the US" (presumably this Court) to seek to recover the $37 million.

5.    Repeatedly in this Chapter 11 Case and its related adversary proceedings, the Trustee has been required to contend with counsel and parties that were surreptitiously taking direction from or acting on behalf of other counsel and parties.  As U.S. District Judge Kari Dooley recently noted, this has become "a pattern and practice arising out of" the Debtor's Chapter 11 Case, which amounts to "***a mess by design***."[2]  Judge Dooley addressed this at a hearing on a motion

---

[2]    *See* Transcript of October 2, 2024 hearing in U.S. District Court, attached hereto as <u>**Exhibit B**</u>, at p. 5 (emphasis added).  The HCHK Entities are HCHK Technologies, Inc., HCHK Property Management, Inc., and Lexington

to withdraw filed by former counsel to the HCHK Entities, who claimed his clients had "evaporated" while also admitting to the involvement of a non-appearing "common coordinating counsel" (*i.e.*, Yongbing Zhang, another of the Debtor's personal attorneys) and to coordinating litigation efforts with counsel for proposed intervenors for the HCHK Entities.[3] Judge Dooley remarked that it was "***appalling***" that entities appearing before the court had received no guidance from their purported controlling persons, which resulted in everyone "wasting time and money."[4]

6.      Based on the foregoing, it is critical for the Trustee to understand the precise role Schulman is continuing to play in this Chapter 11 Case, including whose interests the firm purports to represent, what connection, if any, the firm has to the G Series entities and the defendants in the Mahwah Adversary Proceeding, and how the firm is being compensated for its services. Schulman's undisclosed work adverse to the Trustee in this case is particularly troubling given that Schulman is the Debtor's long-time personal counsel, thus raising the prospect that it may still be advancing his interests.

7.      By this Motion, the Trustee seeks an order requiring Schulman to comply with a limited Rule 2004 examination by providing information concerning (i) all payments received by Schulman since the petition date in connection with any work performed on behalf of the Debtor, any party in interest, and/or any adversary proceeding defendant in the above-captioned jointly administered chapter 11 case (the "Chapter 11 Cases"), including the source of such payments; (ii) communications with the Lazare Firm, and (iii) communications with the Debtor, his representatives, or other shell companies or their counsel.   This relief is well-within the scope of Rule 2004, and the Motion should be granted.

---

Property and Staffing, Inc., which the Bankruptcy Court found to be the Debtor's *alter egos*. *See Amended Default Judgment and Permanent Injunction* [Adv. Proc. No. 23-05013, ECF No. 297].

[3]   *See* Ex. B, at pp. 2-5.

[4]   *See* Ex. B, at pp. 6-7.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction to entertain this application under 28 U.S.C. §§ 157 and 1334.  Venue to hear this Application is proper in accordance with 28 U.S.C. §§ 1408 and 1409.

9.      This Application is a core proceeding pursuant to, *inter alia*, 28 U.S.C. § 157(b)(2) (A), (E), and (F).

## THE EXAMINEE

10.     The Trustee has reason to believe that Schulman has, and continues to have, access to, and knowledge concerning, information relating to the Debtor's assets, financial affairs, and potential financial interests in various corporate entities related to the Debtor, his family, or his associates, including through Schulman's ongoing (undisclosed) assistance and knowing representation of interests adverse to the Trustee in this case.

11.     Schulman's work on behalf of the Debtor is well documented.  The Debtor included Schulman in his Statement of Financial Affairs, listing it as a creditor who received payments within 90 days of the Petition Date.  (ECF No. 77 at 21).  The Debtor listed Schulman on his Schedule F, as a nonpriority unsecured creditor that had provided professional services to the Debtor, and Schedule G, with respect to his engagement letter with Schulman (among other professional services firms on the Debtor's Schedule G whom the Trustee has sought, and this Court has granted, Rule 2004 examinations of).  (ECF No. 78 at 20, 22).  Before the Petition Date, Schulman had for years represented the Debtor, among others (including fugitive from justice William Je), in litigation across the country—including securities class actions, defamation suits, and other civil actions, both as plaintiff's and defense counsel to the Debtor.

12.     The lack of transparency surrounding Schulman's role in the Chapter 11 Cases is concerning.  Although Schulman has not entered an appearance in the Chapter 11 Cases on behalf

of any alleged *alter egos* of the Debtor, including in the Mahwah Adversary Proceeding (Adv. Proc. No. 23-5017) or the Omnibus Alter Ego Adversary Proceeding (Adv. Proc. No. 24-5249), it appears to have involved itself, in some manner, in the submission of documents in multiple adversary proceedings.

13.    For example, the metadata of the *Memorandum of Law in Opposition to Motion for Summary Judgment,* (Adv. Proc. No. 23-5017, ECF No. 137) (filed October 16, 2024) (the "Mahwah Memorandum"), submitted in the Mahwah Adversary Proceeding on behalf of Taurus Fund LLC, Scott Barnett, as Trustee of Taurus Fund LLC and Taurus Management LLC, as Trustee of Taurus Fund LLC, reflects that the memorandum's "Author" is "Jake Schaller."  No attorney with that name is listed on the website of the Lazare Firm, the firm that submitted the Mahwah Memorandum.  There is, however, a Jake Schaller at Schulman.[5]

14.    In addition, the metadata of the motions to dismiss and supporting memoranda filed by the Lazare Firm in the Omnibus Alter Ego Adversary Proceeding, (ECF Nos. 84-1, 85-1, 86-1, and 87-1) (the "Alter Ego Motions to Dismiss"), on behalf of sixteen other entities and individuals connected to the Debtor, including William Je and various "G Series" entities, reflects that the "Author" for each such PDF filing is "Anna Kornilova."  Again, no attorney with that name is identified on the Lazare Firm website, nor has a Ms. Kornilova appeared on behalf of those filing defendants.  Ms. Kornilova instead appears to be a litigation attorney at Schulman.[6]

15.    Schulman's apparently active yet undisclosed involvement in this Chapter 11 Cases has also been unveiled in filings relating to Hamilton Capital's pending United Kingdom administration proceeding (the "Hamilton UK Proceeding").  Hamilton Capital—nominally owned by the Debtor's criminal co-conspirator, William Je—is an alleged *alter ego* of the Debtor

---

[5]    *See* https://schulmanbh.com/our-team/jake-schaller/ (last visited Oct. 25, 2024).
[6]    *See* https://www.linkedin.com/in/anna-kornilova-34b42314/ (last visited Oct. 25, 2024).

in the Omnibus Alter Ego Proceeding, and the Trustee believes that the Hamilton UK Proceeding is merely another orchestrated attempt to keep assets from the chapter 11 estate, similar to the HCHK assignment for the benefit of creditors proceeding.  According to filings in the Hamilton UK Proceeding, Schulman is apparently representing HIFG—another alleged *alter ego*—in U.S. legal matters, including in connection with this Chapter 11 Cases.  As the Court may recall, HIFG is the entity nominally owned by William Je (or "Uncle William"), that purportedly "loaned" HK USA $37 million to secure the return of the Debtor's *Lady May* yacht.[7]  Based on filings in the Hamilton UK Proceeding, Schulman is apparently advising HIFG with respect to $8.5 million it holds in a reserve account and also helping HIFG prepare "applications" to file in the "court in the US" (presumably this Court) to seek to recover the $37 million, allegedly to pay off amounts owed by the Himalaya Exchange Companies to Hamilton Capital.[8]

16.    Based on the foregoing, the Trustee has a reasonable basis to believe that Schulman is currently providing services on behalf of entities seeking to undermine the Trustee's work in the Chapter 11 Cases and that it may be receiving compensation for such work from *alter egos* of the Debtor.  At a minimum, the foregoing raises serious questions regarding Schulman's past and present engagements with the Debtor and/or other entities and individuals that participated and assisted in administering the Debtor's financial affairs, and Schulman should be required to comply with a limited Rule 2004 examination concerning (i) all payments received by Schulman since the petition date in connection with any work performed on behalf of the Debtor, any actual

---

[7]    The Court has found that HK USA is and was at all relevant times the alter ego of the Debtor and all property of HK USA at all relevant times, including among other things the *Lady May* yacht and the $37 million loan proceeds, is property of the chapter 11 estate.  *See Memorandum of Decision and Order Granting Motion for Partial Summary Judgment on Second Counterclaim* [Adv. Proc. No. 22-05003, ECF No. 221], at 36.

[8]    The Himalaya Exchange entities, according to filings in the Hamilton UK Proceeding, include HIFG, Himalaya International Clearing Ltd., Himalaya International Reserves Ltd., and Himalaya International Payments Ltd., all of which are alleged *alter egos* of the Debtor in the Omnibus Alter Ego Adversary Proceeding.

or alleged alter ego,[9] and/or any other party in interest, including any adversary proceeding defendant in the Chapter 11 Cases, including the source of such payments; (ii) communications with the Lazare Firm, and (iii) communications with the Debtor, his representatives, or other shell companies (including any actual or alleged alter ego) or their counsel.

## **RELIEF REQUESTED**

17.     The Trustee seeks entry of an order, in substantially the form of the Proposed Order, pursuant to Bankruptcy Rule 2004(a) and Local Rule 2004-1, authorizing the Trustee to conduct the examination of Schulman.

## **BASIS FOR RELIEF REQUESTED**

18.     Pursuant to Rule 2004(a), on application of a party in interest, the Court may order the examination of any person or entity.  The scope of an examination authorized under Rule 2004 is exceedingly broad and may relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."  Fed. R. Bankr. P. 2004(b).

19.     "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Transmar Commodity Group*

---

[9]    The Debtor's actual and alleged *alter egos* and/or entities beneficially owned by the Debtor include HK USA, Golden Spring (New York) Ltd., Lamp Capital LLC, Greenwich Land LLC, Ace Decade Holdings Limited, the HCHK Entities, Whitecroft Shore Limited, K Legacy Ltd., Hudson Diamond NY LLC, Leading Shine NY Ltd., Taurus Fund LLC, ACA Capital Group Limited, G Club International Limited, G Club Operations LLC, G Fashion (CA), G Fashion Hold Co A Limited, G Fashion Hold Co B Limited, G Fashion International Limited, GFashion Media Group Inc., G Music LLC, GF IP, LLC, GF Italy, LLC, GFNY, Inc., Hamilton Capital Holding Limited, Hamilton Investment Management Limited, Hamilton Opportunity Fund SPC, Himalaya Currency Clearing Pty Ltd., Himalaya International Clearing Limited, Himalaya International Financial Group Limited, Himalaya International Payments Limited, Himalaya International Reserves Limited, Rule of Law Foundation III, Inc., Rule of Law Society IV, Inc., G Music LLC, Alfa Global Ventures Limited, Alfonso Global Limited, Anton Development Limited, Bravo Luck Limited, China Golden Spring Group (Hong Kong) Ltd., Eastern Profit Corporation Limited, Freedom Media Ventures Limited, Leading Shine Limited, Saraca Media Group Inc., Wise Creation International Limited, New Dynamic Development Limited, and Bouillor Holdings Limited.

*Ltd.*, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018) (internal quotation and citation omitted). This includes revealing the nature and extent of the estate and in discovering assets of the debtor that may have been intentionally or unintentionally concealed. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 27-28 (Bankr. N.D.N.Y. 1996). *See also In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." (internal quotation and citation omitted)).

20.     In the declaration he submitted on March 20, 2022 in support of the filing of this case, the Debtor represented that among the purposes for filing his chapter 11 case were "to … (b) afford stakeholders an efficient opportunity to investigate [his] assets, liabilities, and financial affairs, given what [he] perceive[d] to be misunderstandings in that regard; [and] (c) establish what assets are estate property and, in turn, available for distribution to holders of allowed claims . . . ." (Debtor's Declaration, ¶3).  The investigation the Trustee seeks to perform is directly relevant to these stated purposes in that it will help the Trustee identify the Debtor's assets and liabilities in order to make distributions to creditors.

21.     The areas for inquiry herein are part of the Trustee's ongoing investigative efforts. As the investigation evolves, new avenues of inquiry become apparent and the need for additional discovery of persons, entities and areas of inquiry arises. Based on all the facts and evidence discussed above and as contained in the 2004 Motions, the Trustee seeks the investigative tools afforded by Rule 2004 to further establish the true ownership of assets and to explore other potential assets about which the Trustee does not yet have knowledge.

22.     The Trustee requests that, in furtherance of his examinations, the Court direct Schulman to provide documentation to the Trustee's counsel, as requested in the form annexed

hereto as **<u>Exhibit C</u>**[10] and made a part hereof (the "<u>Proposed Subpoena</u>"), within fourteen (14) days of the service of a subpoena, substantially similar in form and substance to the Proposed Subpoena, or such other time as agreed upon by the Trustee.  These requests seek documents and communications consisting of, among other things: (i) all payments received by Schulman since the petition date in connection with any work performed on behalf of the Debtor, any actual or alleged alter ego, and/or any other party in interest, including any adversary proceeding defendant in the Chapter 11 Cases, including the source of such payments; (ii) communications with the Lazare Firm, and (iii) communications with the Debtor, his representatives, or other shell companies (including any actual or alleged alter ego) or their counsel.

23.    The type of discovery that the Trustee will obtain from Schulman is well within the scope of Bankruptcy Rule 2004.  Bankruptcy courts routinely provide for Rule 2004 discovery against professional firms when the discovery may identify and aid the recovery of assets for the benefit of the estate and creditors.  *See, e.g., In re Bame*, 251 B.R. 367 (Bankr. D. Minn. 2000); *In re Horvath*, No. 13-34137, 2015 WL 2195060 (Bankr. N.D. Ohio May 7, 2015) (approving discovery related to claims on schedule of assets permissible from individual debtor where obtaining such discovery might increase the value of the debtor's estate).

24.    The Trustee submits that the facts set forth above constitute sufficient cause for the Court to order the production of documents pursuant to Rule 2004 from Schulman.  The Trustee has the right to know who is directing the litigants appearing before this Court, especially where those litigants are alleged *alter egos* of the Debtor.  In addition, information in the possession of Schulman could lead to the discovery of estate assets by revealing the sources of its compensation.

---

[10]    Included in Exhibit C is a Proposed Subpoena that would be served on Schulman if this Motion is granted.

Accordingly, this Application is critical for the Trustee to fulfill the duties contemplated in the Trustee Order effectively, including specifically his mandate to "locate the Debtor's assets for the benefit of creditors and the estate" and "investigate the Debtor's assets, liabilities, and financial affairs." (*See* Trustee Order at 15-16, 18).

25.     No party in interest, including the Debtor, shall suffer undue prejudice upon the granting of the relief sought in this Application.

## NO PRIOR REQUEST

26.     No prior application for the relief requested herein has been made.  The Trustee filed the prior 2004 Motions; however, those prior motions did not request to take discovery from Schulman.

## OBJECTION DEADLINE

27.     The deadline to object to this Application is **November 5, 2024**, and in the absence of a timely filed objection, the Proposed Order may enter without further notice and hearing.

*[Remainder of Page Intentionally Left Blank.]*

WHEREFORE, the Trustee respectfully requests that the Court grant this Application and enter the Proposed Order, pursuant to Fed. R. Bankr. P. 2004(a), directing the examination of Schulman, and directing the production of certain documents and communications as set forth in the Requests for Production of Documents attached to the Proposed Subpoena, and for such other and further relief as the Court may deem just and proper.

| | | |
|---|---|---|
| Dated: | October 29, 2024<br>New Haven, Connecticut | LUC A. DESPINS,<br>CHAPTER 11 TRUSTEE |

By: */s/ Patrick R. Linsey*
Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                :

In re:                        :    Chapter 11
                                                :

HO WAN KWOK, *et al.*,[1]     :    Case No. 22-50073 (JAM)
                                                :

               Debtors.      :    (Jointly Administered)
                                                :
-------------------------------------------------------x

## <u>NOTICE OF OBJECTION DEADLINE</u>

Luc Despins, as the appointed Chapter 11 Trustee to the Debtor's Estate (the "<u>Applicant</u>"),

has filed an Application for Rule 2004 Examination of Schulman Bhattacharya, LLC (the "<u>Rule</u>

<u>2004 Examination</u>") with the U.S. Bankruptcy Court for the District of Connecticut.  Notice is

hereby given that any objection or response to the Rule 2004 Examination must be filed with the

Court no later than November 5, 2024, in accordance with Fed. R. Bankr. P. 2002(a) and 9014

and Local Bankr. R. 2004-1(c).  In the absence of a timely filed objection, the proposed order

regarding the Rule 2004 Examination may enter without further notice and hearing, see 11

U.S.C. § 102(1).

*[Remainder of Page Intentionally Left Blank.]*

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Dated:    October 29, 2024        LUC A. DESPINS,
              New Haven, Connecticut    CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    dskalka@npmlaw.com
    plinsey@npmlaw.com

    *Counsel for the Chapter 11 Trustee*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                         :

In re:                           :    Chapter 11
                                           :

HO WAN KWOK, *et al.*,[1]     :    Case No. 22-50073 (JAM)
                                           :

          Debtors.          :    (Jointly Administered)
                                           :
-------------------------------------------------------x

### [PROPOSED] ORDER GRANTING
### MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER UNDER BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1 AUTHORIZING EXAMINATION OF SCHULMAN BHATTACHARYA, LLC

      Upon consideration of the Application seeking an order authorizing a Federal Rule of Bankruptcy Procedure 2004 examination of Schulman Bhattacharya, LLC (the "Application", ECF No. _____), filed by Luc Despins, as the appointed Chapter 11 Trustee to the Debtor's estate (the "Applicant"), after notice and a hearing, <u>see</u> 11 U.S.C. § 102(1), it appearing that cause exists to grant the requested relief as conditioned hereafter; it is hereby

      **ORDERED**: The Rule 2004 Motion is granted as set forth below.

      **ORDERED**: Neubert, Pepe & Monteith, P.C. and/or Paul Hastings LLP, as counsel for the Trustee, is hereby authorized to sign a Subpoena in a form substantially similar to the Subpoena attached to the Rule 2004 Motion as Exhibit C and to serve the Subpoena, along with a copy of this Order, in accordance with Bankruptcy Rule 2004 requiring examination and the production of documents and communications by Schulman Bhattacharya, LLC.

      **ORDERED**: Subject to any rights under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and applicable Local Rules, and unless otherwise ordered by the Court, Schulman Bhattacharya, LLC is hereby directed to produce all documents within 14 days of the service of the Subpoena, or such other time as agreed upon by the Trustee. To the extent Schulman Bhattacharya, LLC does not produce any documents requested in the Subpoena on the basis of some privilege, it is hereby directed to produce to the Trustee a privilege log that comports

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

with Fed. R. Civ. P. 45(e)(2), made applicable by Fed. R. Bankr. P. 9016, and D. Conn. L. Civ. R. 26(e), within 14 days of service of the Subpoena, or such other time as agreed upon by the Trustee.

**ORDERED**: Schulman Bhattacharya, LLC is hereby directed to ensure that all documents and other information, including without limitation in any electronic format, requested in the Subpoena or otherwise relevant to the Debtor, his business, assets, liabilities, financial condition, or this Chapter 11 case, are properly maintained, are available for production, inspection and copying, and are not destroyed.

**ORDERED**: Neubert, Pepe & Monteith, P.C. and/or Paul Hastings LLP, as counsel for the Trustee, is hereby authorized, without further order of this Court, to take the testimony of one or more representatives of Schulman Bhattacharya, LLC by examination under Bankruptcy Rule 2004 either at the offices of Neubert, Pepe & Monteith, 195 Church Street, 13th Floor, New Haven, CT 06510, at the offices of Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, or at such other place that is mutually acceptable to the parties, on a date acceptable to the Trustee, which, at the election of the Trustee, shall be not less than 14 calendar days after the production of documents by Schulman Bhattacharya, LLC in compliance with the Subpoena and this Order pursuant to Bankruptcy Rule 2004, and such examination shall continue from day to day until completed.

Dated: _____, 2024

_____
Julie A. Manning,
United States Bankruptcy Judge

2

## **Exhibit B**

**Transcript of October 2, 2024 Hearing**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                              )
                              ) No: 3:24-cv-00335-KAD
IN RE:  HO WAN KWOK, ET AL.    ) October 2, 2024
                              ) 9:14 a.m.
_____)
                              Brien McMahon Federal Building
                              915 Lafayette Boulevard
                              Bridgeport, CT 06604


MOTION HEARING
(Motion to Withdraw)

B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.


A P P E A R A N C E S:
For HCHK Entities:
     JOHN T. SHABAN, ESQ.
     LEVINE & LEVINE, PLLC
     2 Jefferson Plaza I
     Suite 100
     Poughkeepsie, NY 12601
     203-856-3885
     Email: john@levinelevinelaw.com

For Luc A. Despins, *Chapter 11 Trustee for the Estate of Ho Wan Kwok*:
     LUC DESPINS, ESQ.
     Paul Hastings, LLP
     200 Park Avenue
     New York, NY 10166
     212-318-6001
     Email: lucdespins@paulhastings.com

     PATRICK ROBERTS LINSEY, ESQ.
     Neubert Pepe & Monteith, P.C.
     195 Church Street, 13th Floor
     New Haven, CT 06510
     203-821-2000
     Email: plinsey@npmlaw.com


Courtroom Deputy:                 Official Court Reporter:
Kristen Gould, Esq.               Tracy L. Gow, RPR

1          (Call to Order, 9:14 a.m.)

2          THE COURT:  All right.  Good morning, everybody.  I

3     apologize for the late start.

4          We are here in the matter of *HCHK Technologies,*

5     *Inc., et al. v. Luc Despins, Chapter 11 Trustee for the*

6     *Estate of Ho Wan Kwok*.

7          Counsel, please identify yourselves for the record.

8          MR. SHABAN:  Good morning, Your Honor.  John Shaban,

9     for the HCHK entities.

10         THE COURT:  All right.  Good morning.

11         MR. DESPINS:  Good morning, Your Honor.  Luc

12    Despins, Chapter 11 Trustee.

13         THE COURT:  Good morning.

14         MR. LINSEY:  Good morning, Your Honor.  Patrick

15    Linsey, of Neubert Pepe and Monteith, for the Trustee.

16         THE COURT:  All right.  I scheduled this --

17    candidly, Attorney Shaban, I wasn't quite sure what to make

18    of this motion.  I've never encountered a situation where a

19    lawyer was essentially "ghosted" by his client.

20         Let me ask you -- I will note for the record that

21    nobody is here from any of these entities.  What

22    communications, if any, have you attempted or had since this

23    hearing was scheduled?

24         MR. SHABAN:  Well, since this hearing was scheduled,

25    I actually provided -- multiple times -- notice of same, and

1    then I also copied the required notice in the Court's Order

2    about -- you know, that three- or four-point.  But I have a

3    copy of it if the Court would like to see it.

4            And the previous communications, even before the

5    hearing was scheduled, you know, go back to July, saying,

6    Hey, you know, what are we doing fellas?  And, basically, the

7    client has evaporated.  The clients have evaporated, so the

8    only --

9            THE COURT:  Who was your point of contact?  I assume

10   you had a single point of contact for all of the entities?

11           MR. SHABAN:  Typically, yes.  It was a gentleman

12   named Frank.  Frank Wenfeng.  He got reappointed as the

13   head corporate management at the beginning of my

14   representation right about that -- almost exactly at the same

15   time, and was the -- basically, managing the entities.

16           The entities existed on paper.  Their operations

17   had, essentially, been shut down for complicated reasons,

18   but, you know, we needed -- you know, they reconstructed the

19   management through him.  He -- I found out in August, that he

20   had resigned.  Or September I found out that he had resigned.

21           They had -- those entities and other entities had a

22   common coordinating counsel here in the United States, who

23   eventually informed me -- he's like, Listen, game is over,

24   you know, there's nobody left, so...

25           THE COURT:  Is that Mr. Pastore?

1      MR. SHABAN:  No, that's actually Mr. Yongbing

2  (phonetic).

3      THE COURT:  He's an attorney out of Chicago.

4      THE COURT:  And have you had any communications with

5  Attorney Pastore, who I believe represented related --

6  perhaps these or related entities in another bankruptcy

7  appeal that was recently the subject of a joint stipulation?

8      MR. SHABAN:  Right, right.  I have had conversations

9  with his office -- Mr. Pastore and his office.  Not for some

10 time now, now that my work is essentially, you know,

11 evaporated, like I said.  We were working in a, sort of, more

12 or less, a joint defense arrangement, because a lot of these

13 entities had common interests that were being -- you know,

14 had a common theme to their positions.  But that has

15 essentially stopped several months ago.

16     THE COURT:  So, when this point of contact, central

17 attorney out of Chicago, said, It's over, we're rolling up

18 the tents, why didn't that include a directive that the

19 appeal be withdrawn?

20     MR. SHABAN:  Well, I didn't get that directive.  So,

21 I contacted him again and I contacted Frank, said, Am I

22 withdrawing the appeal, am I withdraw my appearance, what's

23 the best way to go here?  Because withdrawing the -- it kind

24 of left me, sort of, in a quandary, too.  It's like, well, if

25 I withdraw the appeal, I'm still representing entities that

1    don't exist, so -- and if I'm withdrawing an appeal on behalf

2    of entities that I don't really have directions from, because

3    there is no -- there appears to be no more client.

4         So, it kind of left me in a Catch-22.  So I thought

5    the best way to go is -- I said, let me just withdraw as --

6    there's a judgment against these entities, as the Court

7    likely knows, so that'll progress in its own fashion.

8         I was kind of caught between, like, you know, if I

9    withdraw the appeal, I'm still representing entities.  But

10   that's not quite accurate to the Court and to counsel

11   because, as best I can tell, I don't have a client any

12   longer.  So, I thought withdrawing my appearance on behalf of

13   these entities, in this appeal, because that's really just

14   what's left, made the most sense.

15        THE COURT:  And it might make the most sense.  But

16   this appears, also, to be a continuation of a pattern and

17   practice arising out of the Ho Wan Kwok bankruptcy that I,

18   frankly, have inherited.

19        MR. SHABAN:  Yeah, it's a mess, to say the least.

20        THE COURT:  It's a mess by design, Counsel.

21        Mr. Linsey, Mr. Despins, I don't know if you have a

22   horse in this race, but any light you can shed on this

23   situation?  Because you did settle with the other HCHK five

24   entities; did you not?

25        MR. DESPINS:  Yes.  But I'll just address the -- and

1 Mr. Linsey may address that part.  But for the record, Luc

2 Despins, Chapter 11 Trustee.  The experience that Mr. Shaban

3 is having is consistent with the rest of the case, in the

4 sense that -- you know, the -- for example, the Mahwah

5 mansion, which you may or may not know about, they've

6 basically abandoned it and we have to pick it up.

7 And it all happened after the criminal conviction of

8 Mr. Kwok, so I think that everybody understands that that's

9 the end of the -- we think it's the end of it, but I -- so

10 that's the experience we're having on other fronts, as well,

11 where they're just pulling out.  Without really doing it in a

12 responsible way, they're just, for example, the Mahwah

13 mansion, the Court had ordered that they pay security and all

14 that, they just --

15 THE COURT:  Disappeared.

16 MR. DESPINS:  -- walked away.  Yeah.

17 THE COURT:  Well, I think Attorney Shaban -- well,

18 let me ask:  Did Attorney Linsey wish to be heard?

19 MR. LINSEY:  No, Your Honor.

20 THE COURT:  All right.  I think the record before me

21 would support a Rule 41 dismissal, frankly, but that is not

22 the reason we're here.

23 And, Attorney Shaban, I will agree that you are in a

24 untenable situation.

25 I find it -- and you can share this with him -- kind

1   of appalling, that some lawyer in Chicago can't respect the

2   process and provide some guidance, either to you or to the

3   court, because now everybody's just wasting time and money.

4            I'm going to grant the motion to withdraw.  I'm

5   going to issue an order on the docket -- that I will ask you

6   to forward to whoever you think might be the appropriate

7   recipient, even if such person may not exist -- that says if

8   we don't have successor counsel in two weeks, the case will

9   be dismissed for failure to prosecute.

10           MR. SHABAN:  Very well.

11           THE COURT:  Okay.  Anything further we can do this

12   morning on this matter?

13           MR. SHABAN:  I don't believe so, Your Honor.

14           MR. LINSEY:  No, Your Honor.

15           THE COURT:  Okay.  All right.  We'll get that

16   docketed today.  Thank you.

17           MR. SHABAN:  Thank you, Your Honor.

18           (Proceedings conclude, 9:22 a.m.)

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2            In re:  Ho Wan Kwok, et al.
              Civil No. 3:24-cr-00335-KAD
 3

 4                  Motion Hearing
                 (Motion to Withdraw)
 5                 October 2, 2024

 6

 7      I, Tracy L. Gow, RPR, Official Court Reporter for the

 8   United States District Court, District of Connecticut, do

 9   hereby certify that the foregoing pages, 1 through 7, are a

10   true and accurate transcription of my shorthand notes taken

11   in the aforementioned matter, to the best of my skill and

12   ability.

13

14                     /s/  TRACY L. GOW
                       Official Court Reporter
15                     U.S. District Court
                       915 Lafayette Boulevard, Room 216
16                     Bridgeport, Connecticut 06604
                       (203) 910-0323
17

18

19

20

21

22

23

24

25
```

## Exhibit C

**Form of Subpoena**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

UNITED STATES BANKRUPTCY COURT
**District of Connecticut**

In re   HO WAN KWOK, *et al.*,[1]      Case No.   22-50073 (JAM)
_____      Chapter   11
Debtor                  _____
                    (Jointly Administered)

# SUBPOENA FOR RULE 2004 EXAMINATION

To:   Schulman Bhattacharya, LLC
_____
(*Name of person to whom the subpoena is directed*)

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| N/A | N/A |

The examination will be recorded by this method:   Court Reporter

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**See Requests for Production of Documents, attached hereto.   Production due within fourteen (14) days of service.**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

               CLERK OF COURT

                     OR

_____          _____
*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing Luc A. Despins, Chapter 11 Trustee, who issues or requests this subpoena, are:
 **Patrick R. Linsey, Esq.; Neubert, Pepe & Monteith, P.C.; 195 Church Street, 13th Floor, New Haven, Connecticut 06510; plinsey@npmlaw.com; (203) 781-2847**

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.   The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15) (Page 2)

**PROOF OF SERVICE**
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for (*name of individual and title, if any*): _____
on (*date*) _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15) (Page  3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed.R.Civ.P.45(a) Committee Note (2013)

## **Request for Production of Documents**

### I.   **INSTRUCTIONS**

1.   Unless otherwise indicated, the requests for documents set forth below, (the "Requests," and each, a "Request"), must be responded to separately and specifically.   Each Request shall be answered fully unless it is in good faith objected to, in which event the reason for Your objection shall be stated in detail, as set forth below.   If an objection pertains only to a portion of a Request, or a word, phrase or clause contained within it, You are required to state Your objection to that portion only and to respond to the remainder of the Requests.

2.   Electronically stored information must be produced in accordance with the following instructions:

 a.   Images. Black and white images must be 300 DPI Group IV single-page TIFF files. Color images must be produced in JPEG format.   File names cannot contain embedded spaces or special characters (including the comma). Folder names cannot contain embedded spaces or special characters (including the comma). All TIFF image files must have a unique file name, i.e. Bates number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image. The number of TIFF files per folder should not exceed 1000 files. Excel spreadsheets should have a placeholder image named by the Bates number of the file.

 b.   Image Load File

  a.   Concordance® Data File. The data file (.DAT) contains all of the fielded information that will be loaded into the Concordance® database. The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance® default delimiters: Comma ASCII character (020) Quote þ ASCII character (254). Date fields should be provided in the format: mm/dd/yyyy.   Date and time fields must be two separate fields. If documents includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES.   Do not include the text in the .DAT file. For Documents with native files, a LINK field must be included to provide the file path and

1

name of the native file. The native file must be named after the FIRSTBATES.

b. Concordance Image® OR Opticon Cross-Reference File. The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,Box Break,PageCoun.

c. <u>Document Text.</u> Text must be produced as separate text files, not as fields within the .DAT file.  The full path to the text file (OCRPATH) should be included in the .DAT file. It is recommended document level ANSI text files, named per the FIRSTBATES/Image Key.  Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). Text files must be provided on a document level.

d. <u>Native Production for Certain File Types.</u>  File types that reasonably require viewing in their native format for a full understanding of their content and meaning must be produced in native format.  These include, but are not limited to, spreadsheets, spreadsheet-like files (Microsoft Excel, comma separated values, tab separated values, etc.), Microsoft PowerPoint or other special presentation files, database files, and audio/visual files.  Provide an image of a Bates numbered slip sheet indicating the presence of a native file, and include the path to the native as a field in the .dat file.  Name the produced native file with the Bates number corresponding to the slip sheet for the file.  Group native files within incrementally named "NATIVE" directories, separate from images directories.

e. <u>De-duplication</u>. Produce a single copy of each electronic document for which exact duplicates exist. For email messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For email attachments and standalone electronic files, consolidate duplicates based on MD5 hash of the entire file.

f. <u>Metadata.</u> Produce extracted metadata for each document in the form of a Concordance compliant load file (.dat). The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance default delimiters: Comma , ASCII character (020) Quote þ ASCII character (254)
Date fields should be provided in the format: mm/dd/yyyy.  Date and time fields must be two separate fields. Required metadata listed below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent Native: (empty) |
| TIME_SENT/ TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |

| TIME_CREATED | 10:25 AM | Email: (empty) Native: Time the document was created **This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty) Native: Time the document was last modified **This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty) Native: Time the document was last accessed **This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$ cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0 698aff95c 2fcab58712467eab4004583e b8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

3.    Each Request operates and should be construed independently and, unless otherwise indicated, no Request limits the scope of any other Request.

4.    All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in these Requests.

5.    Each Request contained herein extends to all Documents:  (a) in Your possession, custody, or control; or (b) in the possession, custody, or control of anyone acting on Your behalf,

including Your counsel or other representatives and advisors.  Each Document shall be produced in its entirety.

6.      If You are requested to produce a Document that is no longer in Your possession, custody, or control, then Your response must (a) describe in detail the nature of the document and its contents; (b) identify the person(s) who prepared or authored the Document (and, if applicable, the Person(s) to whom the Document was sent); (c) identify the date on which the document was prepared or created; (d) state whether such Document (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) was otherwise disposed of; (e) state the reason for, and the facts and circumstances surrounding, such disposition; (f) identify the Persons who authorized such disposition; (g) identify the date or approximate date of such disposition; (h) state when the Document was most recently in Your possession, custody or control; and (i) identify the Person, if any, presently in possession, custody, or control of such Document.

7.      If You are requested to produce a Document that has been destroyed, then Your response must state, in addition to the information required by the preceding Instruction:  (a) the reason for the Document's destruction; (b) the identity of the Person who destroyed the Document; and (c) the identity of the Person who directed that the Document be destroyed.

8.      If You claim that a requested Document is privileged or attorney work-product, then Your response must: (a) state (i) a description of the Document adequate to support Your contention that the Document is privileged, (ii) the title of the Document, (iii) the date of the Document, (iv) the author of the Document, (v) the addressee of the Document, (vi) the identity of each Person who received or saw the original or any draft, copy, or reproduction of the Document, (vii) whether the Document itself, or any information contained or referred to in the Document is in the possession, custody, or control of any other Persons, and if so, the identity of

such Persons, as well as a statement addressing how the information came into their possession, (viii) the claim of privilege under which the Document is withheld, and (ix) all of the circumstances upon which You will rely to support such claim of privilege; and (b) produce a privilege log containing all of the information requested in Part (a) of this Instruction for each Document withheld on the basis of a claim of privilege in accordance with D. Conn. L. Civ. R. 26(e). For any part of a Document Request as to which a claim of privilege or work product is not made, responsive documents should be provided in full.

9.      If a portion of an otherwise responsive Document contains information subject to a claim of privilege, only that portion of the Document subject to the claim of privilege shall be deleted or redacted from the Document following the instructions above, and the rest shall be produced.

10.      The Requests are continuing in nature. You are hereby instructed to (a) supplement or correct any responses later learned to be incomplete or incorrect immediately upon learning that a prior response was incomplete or incorrect; and (b) produce any additional Documents that are called for under the subpoena.

11.      If a Document is in a language other than English, You should provide that Document.  If a Document is in a language other than English, and an English translation exists, You should provide both Documents.

12.      All references to Entities includes all affiliates thereof.

13.      All references to individual names include all alternative names, aliased, or nicknames.

6

14.     Unless otherwise expressly indicated, the period of time covered by the Document Requests is the period from February 5, 2012 to the date responses to the Document Requests are due.

## II.    RULES OF CONSTRUCTION

15.     The use of (a) any singular noun shall be construed to include the plural, and vice versa, and (b) a verb in any tense shall be construed as the use of the verb in all other tenses.

16.     The terms (a) "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of any request all responses that might otherwise be construed to be outside of its scope, and (b) "each" and "any" shall be deemed to include and encompass the words "every" and "all."

## III.    DEFINITIONS

The definitions supplied by D. Conn. L. Civ. R. 26(c) and the rules of construction supplied by D. Conn. L. Civ. R. 26(d), as incorporated by D. Conn. Bankr. L.R. 2004-1(a), shall apply to the Document Requests. In addition, the following terms used in these Document Requests shall have the following meanings:

1.     "You" or "Your" or "Yourself" means and refers, to Schulman Bhattacharya, LLC, together with all of its affiliates, divisions, agencies, instrumentalities, departments, offices, partners, officers, directors, agents, attorneys, representatives, employees, and/or anyone acting on its behalf.

2.     "Chapter 11 Cases" means *In re Ho Wan Kwok, et al.,* No. 22-50073 (JAM) pending before the United States Bankruptcy Court for the District of Connecticut.

3.    "Debtor" means Ho Wan Kwok (a/k/a Miles Kwok, Miles Guo, Guo Wengui, Guo Haoyun, 郭文贵, or any other alias), together with his employees, agents, counsel, advisors, or anyone acting on his behalf.

4.    "Debtor's Son" means Qiang Guo (a/k/a Mileson Kwok, 郭强, or any other alias), together with his employees, agents, counsel, advisors, or anyone acting on his behalf.

5.    "Debtor's Daughter" means Mei Guo (a/k/a Mei Gui, 郭美, or any other alias), together with her employees, agents, counsel, advisors, or anyone acting on her behalf.

6.    "Debtor's Purported Wife" means Hing Chi Ngok (a/k/a Hing Chi Ng, Yue Qingzhi, 岳庆芝, or any other alias), together with her employees, agents, counsel, advisors, or anyone acting on her behalf.

7.    "Debtor's Family" means, individually and collectively, the Debtor, the Debtor's Son, the Debtor's Daughter, and the Debtor's Purported Wife, and any other familial relation to the Debtor.

8.    "2004 Discovery Targets" means, individually and collectively, the Debtor, the Debtor's Family, 17 Miles, LLC, 5780 Saguaro LLC, Aaron Mitchell, ACA Capital Group Limited, Ace Decade Holdings Limited, AI Group Holdings Inc., Alfa Global Ventures Limited, Alphonso Global Ventures Limited, Ana C. Izquiedo-Henn, Andrew Childe, Anthony DiBattista, Anton Development Limited, Booming Sail New York LLC, Beile Li,  Bingshang Jiao, Bravo Luck Limited, Brent Petro Inc., Celestial Tide Limited, Chris Lee (a/k/a Nan Li, Mei Guo Xiao Li), China Golden Spring Group (Hong Kong) Ltd., Crane Advisory Group, Daniel Thomas Podhaskie, Defeng Cao (a/k/a Wayne Cao, Max Cao), Ding "Ivan" Lin, Doaa Dashoush, Eastern Profit Corporation Limited, Genever Holdings Corporation, Genever Holdings LLC, Gettr USA, Inc., Gnews Media Group Inc., G Fashion (CA), G Fashion, G Fashion Hold Co. A. Limited, G

Fashion Hold Co. B. Limited, G Fashion Media Group Inc., G Fashion International Limited, G Fashion LLC, Gmusic LLC, Gnews LLC, Geducation, GFNY, Inc., G Club Finance, G Club HoldCo I LLC, G Club International Limited, G Club Investments Limited, G Club Operations LLC, G Club US Operations Inc., G Club US Operations LLC, G Club, G Club One, G Club Two, G Club Three, G Live, LLC, Gbroadcast, LLC, GF Italy, GM 27 LLC, Gladys Chow, Golden Spring (New York) Ltd., Gposts LLC, GTV Media Group, Inc., Gypsy Mei Food Service LLC, Gypsy Mei Productions LLC, Gypsy Mei 27 Vestry, Inc., Dawn State Limited, Greenwich Land  LLC, Hao (Gavin) Li (a/k/a Huo Lai), Haitham Khaled, Hamilton Capital Holdings Inc., Hamilton Digital Assets Funds SP, Hamilton Investment Management Limited, Hamilton Opportunity Fund SPC, Hamilton PE Funds SP, Holy City Hong Kong Ventures Ltd., GS Security Solutions Inc., Alex Hadjcharalambous, Han Chunguang, Haoran He, HCHK Property Management, Inc., HCHK Technologies, Inc., HK International Funds Investments (USA) Limited LLC, Freedom Media Ventures Ltd., FungWan Trading Inc., Himalaya Currency Clearing Pty. Ltd., Himalaya New World Inc., Himalaya International Financial Group Ltd., Himalaya International Clearing Ltd., Himalaya International Payments Ltd., Himalaya International Reserves Ltd., Himalaya Ventures LLC, Himalaya Investment LLC, Hudson Diamond Holding, Inc., Hudson Diamond Holding LLC, Hudson Diamond NY LLC, Huk Trading Inc., Infinity Treasury Management Inc., Jesse Brown, Jessica Mastrogiovanni, Jiaming Liu, Jie Zhang, Jovial Century International Limited,  Joyord Sportswear Limited, K Legacy Ltd., Kamel Debeche, Karin Maistrello, Kin Ming Je, Lamp Capital LLC, Lawall & Mitchell, LLC, Leading Shine NY Ltd., Lexington Property and Staffing, Inc., Lexington Property and Staffing LLC, Linwan "Irene" Feng, Limarie Reyes, Lihong "Sara" Wei Lafrenz, The Lost Draft LLC, Macaron Limited, Major Lead International Limited, Mary Jiang, MOS Himalaya LLC, Maywind Trading LLC, New York

MOS Himalaya LLC, Next Tycoon Investments Limited, Nicholas Savio, Nodal Partners, LLC, Qidong Xia, Oasis Tech Limited, Omicron Neutraceutical LLC, O.S.C. Orbit Service Company, LLC, Pixshow Film Inc., Qu Guo Jiao, Roscalitar 2, Ridwan Mamode Saib, Ross Heinemeyer, Rule of Law Society IV Inc., Rule of Law Foundation III, Inc., Rule of Law Fund, Saraca Media Group Inc., Savio Law LLC, Scott Barnett, Seven Mission Group LLC, Shih Hsin Yu, Sirius Networking Inc., Taurus Fund LLC, Taurus Management LLC, US Himalaya Capital Inc., V.X. Cerda & Associates P.A., Victor Cerda, Voice of Guo Media, Inc., Wen Xiao, Wencong Wang, William Je, Kin Ming Je a/k/a Je Kin Ming, Wise Creation International Limited, Xuebing Wang, Yan Chun Liu, Yinying (Aila) Wang (a/k/a Xiao Fei Xiang), Yongbing Zhang, Yongping Yan (Shan Mu) Yue Zhou, Yumei Hao (a/k/a Ru Shui), Yvette Wang (a/k/a Yanping Wang, a/k/a Yan Ping Wang), Zhixuan Li, Zhouer "Joe" Wang, NewPeople LLC, Ziba Limited, New Mulberry PTE Ltd, TD Primrose Limited, Shin Hee-Seup a/k/a Hee Seup Shin, River Valley Operations LLC, Fiesta Investment Ltd., Fiesta Property Developments Ltd., Medical Supply System International LLC, New Smoke LLC, Mountains of Spices, LLC, Rainbow Gifts Inc., Santel LLC, Davy & Tony International Limited, Love Miles for Zisun Inc., Himalaya Boston Mayflower LLC, Top California Beach Corporation, Golden Eagle Ventures, LLC, Whole Alpha Trading LLC, and Art Operation LLC,.

9.      "Including" or any variant thereof means "including without limitation."

10.      "And" and "or" mean "and/or," and shall be construed both conjunctively as well as disjunctively in order to maximize their scope.

11.      "Any" and "all" and "each" mean "each and every."

12.      "Each" and "every" mean "each and every."

13.      "Third Party" means a Person or Entity other than Yourself.

10

14.    "Transfer" shall have the meaning given to it by section 101(54) of the Bankruptcy Code.

15.    "Lazare Firm" means and refers to Lazare Potter Giacovas & Moyle LLP, together with all of its affiliates, divisions, agencies, instrumentalities, departments, offices, partners, officers, directors, agents, attorneys, representatives, employees, and/or anyone acting on its behalf.

16.    "Lazare Firm Clients" means and refers to Taurus Fund LLC, Taurus Management LLC, Scott Barnett, William Je (a/k/a Kin Ming Je, Jianming Yu, or William Yu), ACA Capital Group Limited, Hamilton Opportunity Fund SPC, Hamilton Capital Holding Limited, Hamilton Investment Management Limited, Himalaya Currency Clearing Pty Ltd., Himalaya International Clearing Limited, Himalaya International Financial Group Limited, Himalaya International Payments Limited, Himalaya International Reserves Limited,  G Fashion (CA), GF IP, LLC, GF Italy, LLC, GFashion Media Group Inc., GFNY, Inc., Major Lead International Limited, Celestial Tide Limited, G Fashion Hold Co A Limited, G Fashion Hold Co B Limited, and G Fashion International Limited.

17.    "Document" means any information or thing within the scope of Fed. R. Civ. P. 34, and includes, without limitation, each and every written, recorded, or graphic matter of any kind, type, nature, or description that is or has been in Your Possession, Custody or Control, including all printed and electronic copies of electronic mail, computer files maintained in electronic form, correspondence, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, charts, blueprints, drawings, sketches, graphs, plans, articles, specifications, diaries, letters, telegrams, photographs, minutes, contracts, agreements, surveys, computer printouts, data compilations of any kind, telexes, facsimiles, emails, text messages, instant messages, voice

11

messages, invoices, order forms, checks, drafts, statements, credit memos, reports, position reports, summaries, indices, books, ledgers, notebooks, schedules, transparencies, recordings, catalogs, advertisements, promotional materials, films, video tapes, audio tapes, CDs, computer disks, brochures, pamphlets, punch-cards, time-slips, Tweets, social media posts, or any written or recorded materials of any other kind, and all meta-data thereof, however stored (whether in tangible or electronic form), recorded, produced, or reproduced, and also including but not limited to, drafts or copies of any of the foregoing that contain any notes, comments, or markings of any kind not found on the original documents or that are otherwise not identical to the original documents.

18.     "Person(s)" means an individual, corporation, proprietorship, partnership, association, or any other Entity. "Person" also includes any agent, representatives, or expert, including but not limiting to, attorneys or financial advisors.

19.     "Petition Date" means February 15, 2022.

20.     "Entity" means any natural Person, corporation, partnership, subsidiary, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic Person, as well as any affiliate, agent, parent including but not limited to counsel, financial advisors, or any other representative.

21.     "Regarding" means concerning, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

22.     "Relating to," "relate(s) to" or "related to," when referring to any given subject matter, means, without limitation, any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

23.     "Communication(s)" means, in the broadest possible sense, and without limitation, any transmittal of information or knowledge (in the form of facts, ideas, inquiries, or otherwise). Communication(s) further refers to all conversations, agreements, inquiries, or replies, whether in person, by telephone, in writing, or by means of electronic transmittal devices, and includes, but is not limited to, all correspondence, emails, recordings, transmittal slips, memoranda, telephone communications, voice messages, telegrams, telefaxes, telecopies, telexes, instant messages, chats, text messages, postings to a message board or group chat, social media posts, tweets, videos uploaded to any video platform, telephonic notes, or notes transmitted internally or with third parties.

24.     "Asset(s)" means any item of economic value that is subject to Possession, Custody, or Control. Asset includes all real and personal property, including but limited to, real estate, land, houses, apartments, condominiums, automobiles, yachts, boats, planes, jets, helicopters, cash, bank accounts, cryptocurrencies, securities, accounts receivables, inventory, and other tangible and intangible property.

## IV.    **DOCUMENTS TO BE PRODUCED**

1.     Documents sufficient to show all payments received by You since the Petition Date in connection with any work performed by You on behalf of the Debtor, any party in interest in the Chapter 11 Cases, any 2004 Discovery Target, and/or any adversary proceeding defendant in the Chapter 11 Cases, including the source of such payments.

13

2.      All Communications with the Lazare Firm or any other representatives of the Lazare Firm Clients since the Petition Date.

3.      All Communications since the Petition Date with the Debtor or his representatives, any party in interest in the Chapter 11 Cases or its representatives, any 2004 Discovery Target or its representatives, and/or any adversary proceeding defendant in the Chapter 11 Cases or its representatives.