**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

---------------------------------------------------------x
                                                         :
In re:                                                   :    Chapter 11
                                                         :
HO WAN KWOK, *et al.*,[1]                                :    Case No. 22-50073 (JAM)
                                                         :
                                      Debtors.           :    (Jointly Administered)
                                                         :
---------------------------------------------------------x

**CHAPTER 11 TRUSTEE'S OPPOSITION TO
G CLUB OPERATIONS LLC'S MOTION TO QUASH**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

above-captioned chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor"), hereby

submits this opposition (the "Opposition") to *G Club Operations LLC's Motion to Quash and*

*Objections to the Trustee's Rule 2004 Examination Subpoena* [ECF No. 3752] (the "Motion to

Quash"). Further to his Opposition, the Trustee respectfully states the following:

1.       The Trustee has broad authority under Bankruptcy Rule 2004 to investigate matters

relevant to the administration of this Chapter 11 Case and assets of the Debtor's chapter 11 estate

(the "Estate"). On December 2, 2022, this Court entered an order [ECF No. 1184] (the "Rule 2004

Order") granting the Trustee's motion to conduct a Rule 2004 examination of G Club Operations

LLC ("G Club"), which, as the Court knows, is one of the entities central to the Debtor's fraudulent

schemes, including his shell game to hide assets from creditors. Pursuant to the Rule 2004 Order,

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
       Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings
       LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address
       for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park
       Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes
       of notices and communications).

the Trustee has issued a subpoena to G Club (the "Subpoena")[2] to produce a corporate representative for examination to explore issues squarely implicating administration of the Estate and the location of potential Estate assets—issues which are different from those the Trustee will explore in his pending adversary proceeding to establish that G Club and other entities are the Debtor's alter egos (Adv. Proc. No. 24-5249, the "Omnibus Alter Ego Adversary Proceeding").

2. As is clear from the designation of deposition topics appended to the Subpoena pursuant to Rule 30(b)(6) Federal Rules of Civil Procedure (the "Civil Rules"), the examination of G Club will explore: its current business purpose (if any), who is making decisions on its behalf, and how and by whom its litigation efforts in this case are being funded. Each of these topics is well within the scope of Bankruptcy Rule 2004 and important to the Trustee's administration of the Chapter 11 Case and investigation of Estate assets.

3. It is particularly important that the Trustee investigate these issues considering recent developments in this Chapter 11 Case. As the Court is aware, the Debtor's conviction in his criminal case was an inflection point for many of the shell companies and other litigants before this Court, as such parties have either ceased litigating, stopped complying with Court orders, or otherwise modified their tactics, thus raising questions about who is now controlling their affairs and funding their ongoing litigation efforts. As just a few examples:

---

[2]     The Subpoena is attached to the Motion to Quash as Exhibit A.

- Taurus Fund LLC ("Taurus Fund"), which is a defendant in the Trustee's pending adversary proceeding to recover the Debtor's New Jersey mansion, stopped funding the mansion's expenses, in violation of the Court's preliminary injunction.[3]

- The Trustee discovered that the Debtor's personal counsel, Schulman Bhattacharya, LLC, has apparently been assisting Taurus Fund in litigation behind the scenes, without notice to the Trustee or the Court.[4]

- Counsel to the entities known as the "HCHK Entities" recently withdrew his appearance on their behalf in their pending appeal of the Court's default judgment decision pertaining to such entities, with counsel explaining that his clients had "evaporated" and stopped communicating with him.

- The "Proposed Intervenors" in the HCHK adversary proceeding elected to discontinue their appeal of the Court's decision denying intervention.

4.      The trend established by these and other recent events has not gone unnoticed. At the recent hearing on the HCHK Entities' counsel's motion to withdraw his appearance, U.S. District Judge Kari Dooley observed that this "pattern and practice" of entities either not having authority to act or not being transparent about their authority is a "mess by design." Judge Dooley further remarked that it was "***appalling***" that HCHK Entities appearing before the court had received no guidance from their purported controlling persons, which resulted in everyone "wasting time and money." *See* Transcript of October 2, 2024 hearing in U.S. District Court, attached hereto as Exhibit 1, at p. 5 (emphasis added).

5.      The Trustee recognizes that appropriate investigation of certain entities participating in this Chapter 11 Case is called for to protect the integrity of proceedings. Both to that end and for the purpose of locating Estate assets, the Trustee's limited deposition of G Club is fully justified. The Trustee (and, indeed, the Court) is entitled to know, for example, (a) whether

---

[3]     *See generally Amended Emergency Motion of Chapter 11 Trustee, Pursuant To Bankruptcy Code Section 363(b), for Entry of Order Authorizing Trustee to Continue to Fund Expenses of Mahwah Mansion and Related Relief* [ECF No. 3381].

[4]     *See generally Motion of Chapter 11 Trustee for Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Examination of Schulman Bhattacharya, LLC* [ECF No. 3758] (the "Schulman Rule 2004 Motion").

the person(s) directing G Club have changed since the Debtor's arrest and subsequent conviction;
(b) whether G Club has any continuing operations aside from litigation; and (c) how G Club's
ongoing litigation efforts are being funded.  Based on the Trustee's experience, this information is
highly likely to lead to the discovery of potential Estate assets.  And the answers to these questions
will also permit the Trustee and the Court to consider for whose interests G Club speaks when it
seeks to participate in proceedings in this Chapter 11 Case.

6.      In the Motion to Quash, G Club contends that the Subpoena is invalid because the
Trustee must seek discovery from G Club in pending adversary proceedings, that the Subpoena is
overbroad, and that the Trustee has not technically complied with the requirements of Civil Rule
45 and Rule 2004.  Each of these arguments should be rejected.

**I.      Pending Proceeding Rule Does Not Foreclose Deposition**

7.      G Club argues that the so-called "pending proceeding rule" prevents the Trustee
from deposing G Club under Rule 2004 because the Trustee has commenced adversary
proceedings against G Club, including the Omnibus Alter Ego Adversary Proceeding seeking a
declaratory judgment that G Club and other entities are the Debtor's alter egos.  The pending
proceeding rule is not contained in Bankruptcy Rule 2004; rather, it is a court-made doctrine to
prevent parties from "circumvent[ing] the safeguards and protections of the Federal Rules of Civil
Procedure" that govern adversary proceeding discovery.  *See In re Wash. Mut., Inc.*, 408 B.R. 45,
51 (Bankr. Del. 2009); *see also In re Int'l Fibercom*, 283 B.R. 290, 292 (Bankr. D. Ariz. 2002)
(holding "when the Rule 2004 examination relates not to the pending adversary litigation, but to
another matter, the 'pending proceeding' rule does not apply").  The pending proceeding rule is
inapplicable to the Trustee's Subpoena because the topics on which the Trustee seeks to depose G
Club are different from those at issue in the adversary proceedings.

8.      In the Omnibus Alter Ego Adversary Proceeding, the Trustee will primarily explore

the historical relationship between the Debtor and G Club, including the Debtor's control over G Club's operations and finances, and the persons who nominally managed the entity, such as the Debtor's criminal co-conspirator Yvette Wang.   At present, however, and particularly in light of the Debtor's criminal conviction, these individuals are now gone, and, to the Trustee's best understanding, G Club is no longer "operating" its fraudulent "membership" scheme.[5]   Thus, the discovery the Trustee seeks into G Club's *current* operational and governance structure and its *current* funding sources is plainly different from the key facts at issue in the adversary proceeding.

9.      The purpose of this deposition pursuant to the Rule 2004 Order and the Subpoena also fundamentally differs from adversary proceeding discovery, because the Trustee does not seek evidence to use against G Club in a lawsuit—rather, the Trustee seeks information about *other* entities, individuals, and funding sources that could lead to the discovery of additional Estate assets and shed light of interference in the administration of the Chapter 11 Case by *other* entities and individuals.  For example, if the Trustee learns that a particular individual is giving instructions to G Club, the Trustee will investigate that individual to determine whether that person is affiliated with other entities that may be shell companies.  The same goes for any funding sources the Trustee may learn about in a deposition, as the Trustee believes any such funding sources are very likely to be assets of the Estate, which the Trustee could take action to recover.

10.      For these same reasons, it would be prejudicial to force the Trustee to wait to explore his discovery in the pending adversary proceedings, which have not yet progressed into the discovery stage.  *See In re Jasper Pellets, LLC*, 647 B.R. 151, 156 (Bankr. D.S.C. 2022) (noting "aggressive application of the 'pending proceeding rule' may prevent legitimate Rule 2004

---

[5]    To this point, G Club itself noted—in seeking to delay document production due to the Trustee under the same Rule 2004 Order and a prior document subpoena—that, following the Debtor's indictment, G Club's "Chief Executive Officer, the General Counsel, and the Associate General Counsel of G Club resigned …"

examinations on matters wholly unrelated to the pending proceeding, thereby interfering with the trustee's … fiduciary duty to maximize estate assets" (internal citations and quotation marks omitted)).  To the extent a deposition of G Club could lead to the discovery of Estate assets, time is of the essence in obtaining that information so the Trustee can take appropriate action to preserve such assets before it becomes too late to do so.

## II.    Scope of Subpoena is Otherwise Proper

11.    G Club also argues that the subject matter for which the Subpoena requires it to produce a corporate representative is overbroad.  Bankruptcy Rule 2004, however, authorizes very broad discovery, akin to a fishing expedition.  *See Despins v. Lamp Cap. LLC (In re Ho Wan Kwok)*, 2024 Bankr. LEXIS 2095, *11 (Bankr. D. Conn. March 6, 2024) ("Rule 2004 discovery is exceptionally broad to serve this purpose; it is broader than discovery permitted in adversary proceedings."); *In re Rafsky*, 300 B.R. 152, 153 (Bankr. D. Conn. 2003) ("Examinations under Rule 2004 are allowed for the 'purpose of discovering assets and unearthing frauds' and have been compared to a 'fishing expedition.'").  Considered in the context of the broad scope of Bankruptcy Rule 2004 discovery, the scope of the topics appended to the Subpoena is remarkably narrow.  The Trustee will depose G Club's representative on five narrow topics related to G Club's governance, operations, and funding sources, all of which are highly relevant to the Trustee's investigation for the reasons discussed above and therefore plainly fall well within the scope of the rule.

12.    In any event, in an effort to address certain of G Club's objections and to reduce the risk of any overlap with discovery the Trustee may seek in his pending adversary proceedings, the Trustee has agreed to narrow his topics even further.  Specifically, the Trustee has agreed to limit the topics to information related to G Club and its direct or indirect parent companies (specifically, G Club International Limited, Jovial Century International Limited, and Stichting Duurzame).  This would thus address G Club's objection to the Trustee seeking testimony

regarding all other G Club affiliates (though, of course, the Trustee reserves the right to inquire about affiliated entities, such as other "G Series" entities, to the extent such entities have a role in G Club's corporate governance, decision-making, or funding). The Trustee has also agreed to limit the time period for his topics from the petition date to the present, which should alleviate G Club's over-breadth objection and prevent overlap with the historical relationship between the Debtor and G Club at issue in the Omnibus Alter Ego Adversary Proceeding.

### III. Deposition Will Not Violate Civil Rule 45 or Local Rule 2004-1

13. G Club's additional procedural arguments are readily addressed. While G Club complains that the Trustee improperly seeks to depose a resident of Puerto Rico in New York, the Trustee has already offered to travel to Puerto Rico for the deposition or potentially take the deposition remotely. Thus, this is a non-issue.[6] The Trustee can issue a new subpoena, if necessary, once the parties have determined where (or how) the deposition will occur.

14. Finally, the Trustee has not failed to comply with Local Rule 2004-1. As noted above, the Court already issued the Rule 2004 Order, which expressly provides that the Trustee's counsel is authorized:

> *without further order of this Court*, to take the testimony of one or more representatives of … [G Club] by examination under Bankruptcy Rule 2004 either at the offices of [Trustee's counsel], or at such other place that is mutually acceptable to the parties, on a date acceptable to the Trustee, which, at the election of the Trustee, shall be not less than 14 calendar days after the production of documents by the proposed examinee in compliance with the subpoena and this

---

[6] On October 9, 2024, at or around the same time that the Trustee caused the Subpoena to be served on G Club, the Trustee's counsel also sent a courtesy copy of the Subpoena to G Club's counsel by email, in which the Trustee's counsel stated, among other things, that while "the place of the deposition has been set at Paul Hastings' office in New York City (and the Trustee's counsel is prepared to conduct the deposition there), the Trustee is also prepared to take the deposition at an alternative location, whether by agreement or, depending on where G Club is located/conducting business, one the Trustee may select in light of Fed. R. Civ. P. 45(c)." This plainly complied both with the procedure for selecting the location of depositions ordered by the Court, *see* ¶ 14 *infra*, and with Civil Rule 45(c). G Club's argument that the Trustee "elected to issue a facially defective Subpoena" (Memo. of Law in Support of Mot. to Quash at p. 5) is inaccurate.

Order pursuant to Bankruptcy Rule 2004, and such examination shall continue from
day to day until completed.

Rule 2004 Order (emphasis added).

15.    The Trustee has obtained document production from G Club pursuant to the Rule

2004 Order and a document subpoena—albeit only after months of litigation and obstruction by G

Club.  *See, e.g., Order Granting Motion to Compel G-Club to Comply with Rule 2004 Subpoena*

p. 3 (describing G Club's document production as "several months overdue" and its request for 60

days of additional delay as "not reasonable").  The Trustee remains entitled to depose G Club's

corporate representative under the Rule 2004 Order.  The Motion to Quash should be denied.

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK.]*

WHEREFORE, based on the foregoing, the Trustee asks the Court to overrule the Motion

to Quash and to grant such other and further relief as is just and proper.

Dated: November 1, 2024
       New Haven, Connecticut

LUC A. DESPINS, CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
     Douglas S. Skalka (ct00616)
     Patrick R. Linsey (ct29437)
     NEUBERT, PEPE & MONTEITH, P.C.
     195 Church Street, 13th Floor
     New Haven, Connecticut 06510
     (203) 781-2847
     dskalka@npmlaw.com
     plinsey@npmlaw.com

       *and*

     G. Alexander Bongartz (admitted *pro hac vice*)
     Douglass Barron (admitted *pro hac vice*)
     PAUL HASTINGS LLP
     200 Park Avenue
     New York, New York 10166
     (212) 318-6079
     alexbongartz@paulhastings.com
     douglassbarron@paulhastings.com

       *and*

     Nicholas A. Bassett (admitted *pro hac vice*)
     PAUL HASTINGS LLP
     2050 M Street NW
     Washington, D.C., 20036
     (202) 551-1902

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

----------------------------------------------------------x
                                                  :
In re:                                            :   Chapter 11
                                                  :
HO WAN KWOK *et al.*,                             :   Case No. 22-50073 (JAM)
                                                  :
                          Debtors.[1]             :   Jointly Administered
                                                  :
----------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date hereof the foregoing was electronically

filed.  Notice of this filing was sent by e-mail to all parties to the above-captioned chapter 11 case

able to receive electronic notice by operation of the Court's electronic filing ("CM/ECF") system,

or (within one business day) by U.S. Mail to any parties unable to receive electronic notice.  Parties

may access this filing through the Court's CM/ECF system.

Dated: November 1, 2024                  Luc A. Despins, as Chapter 11 Trustee
       New Haven, Connecticut

                                         By: */s/ Patrick R. Linsey*
                                             Douglas S. Skalka (ct00616)
                                             Patrick R. Linsey (ct29437)
                                             NEUBERT, PEPE & MONTEITH, P.C.
                                             195 Church Street, 13th Floor
                                             New Haven, Connecticut 06510
                                             (203) 781-2847
                                             dskalka@npmlaw.com
                                             plinsey@npmlaw.com

                                             *Counsel for the Chapter 11 Trustee*

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
      Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings
      LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address
      for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park
      Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes
      of notices and communications).

**EXHIBIT 1**

**(Transcript of October 2, 2024 Hearing)**

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT


_____
                               )
                               ) No: 3:24-cv-00335-KAD
IN RE:  HO WAN KWOK, ET AL.    ) October 2, 2024
                               ) 9:14 a.m.
_____)
                                Brien McMahon Federal Building
                                915 Lafayette Boulevard
                                Bridgeport, CT 06604



                         MOTION HEARING
                      (Motion to Withdraw)

B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.



A P P E A R A N C E S:
For HCHK Entities:
     JOHN T. SHABAN, ESQ.
     LEVINE & LEVINE, PLLC
     2 Jefferson Plaza I
     Suite 100
     Poughkeepsie, NY 12601
     203-856-3885
     Email: john@levinelevinelaw.com

For Luc A. Despins, *Chapter 11 Trustee for the Estate of
Ho Wan Kwok*:
     LUC DESPINS, ESQ.
     Paul Hastings, LLP
     200 Park Avenue
     New York, NY 10166
     212-318-6001
     Email: lucdespins@paulhastings.com

     PATRICK ROBERTS LINSEY, ESQ.
     Neubert Pepe & Monteith, P.C.
     195 Church Street, 13th Floor
     New Haven, CT 06510
     203-821-2000
     Email: plinsey@npmlaw.com



Courtroom Deputy:                    Official Court Reporter:
Kristen Gould, Esq.                  Tracy L. Gow, RPR
```

2

```
 1              (Call to Order, 9:14 a.m.)

 2              THE COURT:  All right.  Good morning, everybody.  I

 3     apologize for the late start.

 4              We are here in the matter of *HCHK Technologies,*

 5     *Inc., et al. v. Luc Despins, Chapter 11 Trustee for the*

 6     *Estate of Ho Wan Kwok.*

 7              Counsel, please identify yourselves for the record.

 8              MR. SHABAN:  Good morning, Your Honor.  John Shaban,

 9     for the HCHK entities.

10              THE COURT:  All right.  Good morning.

11              MR. DESPINS:  Good morning, Your Honor.  Luc

12     Despins, Chapter 11 Trustee.

13              THE COURT:  Good morning.

14              MR. LINSEY:  Good morning, Your Honor.  Patrick

15     Linsey, of Neubert Pepe and Monteith, for the Trustee.

16              THE COURT:  All right.  I scheduled this --

17     candidly, Attorney Shaban, I wasn't quite sure what to make

18     of this motion.  I've never encountered a situation where a

19     lawyer was essentially "ghosted" by his client.

20              Let me ask you -- I will note for the record that

21     nobody is here from any of these entities.  What

22     communications, if any, have you attempted or had since this

23     hearing was scheduled?

24              MR. SHABAN:  Well, since this hearing was scheduled,

25     I actually provided -- multiple times -- notice of same, and
```

3

1   then I also copied the required notice in the Court's Order

2   about -- you know, that three- or four-point.  But I have a

3   copy of it if the Court would like to see it.

4           And the previous communications, even before the

5   hearing was scheduled, you know, go back to July, saying,

6   Hey, you know, what are we doing fellas?  And, basically, the

7   client has evaporated.  The clients have evaporated, so the

8   only --

9           THE COURT:  Who was your point of contact?  I assume

10  you had a single point of contact for all of the entities?

11          MR. SHABAN:  Typically, yes.  It was a gentleman

12  named Frank.  Frank Wenfeng.  He got reappointed as the

13  head corporate management at the beginning of my

14  representation right about that -- almost exactly at the same

15  time, and was the -- basically, managing the entities.

16          The entities existed on paper.  Their operations

17  had, essentially, been shut down for complicated reasons,

18  but, you know, we needed -- you know, they reconstructed the

19  management through him.  He -- I found out in August, that he

20  had resigned.  Or September I found out that he had resigned.

21          They had -- those entities and other entities had a

22  common coordinating counsel here in the United States, who

23  eventually informed me -- he's like, Listen, game is over,

24  you know, there's nobody left, so...

25          THE COURT:  Is that Mr. Pastore?

4

1      MR. SHABAN:  No, that's actually Mr. Yongbing

2  (phonetic).

3      THE COURT:  He's an attorney out of Chicago.

4      THE COURT:  And have you had any communications with

5  Attorney Pastore, who I believe represented related --

6  perhaps these or related entities in another bankruptcy

7  appeal that was recently the subject of a joint stipulation?

8      MR. SHABAN:  Right, right.  I have had conversations

9  with his office -- Mr. Pastore and his office.  Not for some

10  time now, now that my work is essentially, you know,

11  evaporated, like I said.  We were working in a, sort of, more

12  or less, a joint defense arrangement, because a lot of these

13  entities had common interests that were being -- you know,

14  had a common theme to their positions.  But that has

15  essentially stopped several months ago.

16      THE COURT:  So, when this point of contact, central

17  attorney out of Chicago, said, It's over, we're rolling up

18  the tents, why didn't that include a directive that the

19  appeal be withdrawn?

20      MR. SHABAN:  Well, I didn't get that directive.  So,

21  I contacted him again and I contacted Frank, said, Am I

22  withdrawing the appeal, am I withdraw my appearance, what's

23  the best way to go here?  Because withdrawing the -- it kind

24  of left me, sort of, in a quandary, too.  It's like, well, if

25  I withdraw the appeal, I'm still representing entities that

1    don't exist, so -- and if I'm withdrawing an appeal on behalf

2    of entities that I don't really have directions from, because

3    there is no -- there appears to be no more client.

4            So, it kind of left me in a Catch-22.  So I thought

5    the best way to go is -- I said, let me just withdraw as --

6    there's a judgment against these entities, as the Court

7    likely knows, so that'll progress in its own fashion.

8            I was kind of caught between, like, you know, if I

9    withdraw the appeal, I'm still representing entities.  But

10   that's not quite accurate to the Court and to counsel

11   because, as best I can tell, I don't have a client any

12   longer.  So, I thought withdrawing my appearance on behalf of

13   these entities, in this appeal, because that's really just

14   what's left, made the most sense.

15           THE COURT:  And it might make the most sense.  But

16   this appears, also, to be a continuation of a pattern and

17   practice arising out of the Ho Wan Kwok bankruptcy that I,

18   frankly, have inherited.

19           MR. SHABAN:  Yeah, it's a mess, to say the least.

20           THE COURT:  It's a mess by design, Counsel.

21           Mr. Linsey, Mr. Despins, I don't know if you have a

22   horse in this race, but any light you can shed on this

23   situation?  Because you did settle with the other HCHK five

24   entities; did you not?

25           MR. DESPINS:  Yes.  But I'll just address the -- and

1   Mr. Linsey may address that part.  But for the record, Luc

2   Despins, Chapter 11 Trustee.  The experience that Mr. Shaban

3   is having is consistent with the rest of the case, in the

4   sense that -- you know, the -- for example, the Mahwah

5   mansion, which you may or may not know about, they've

6   basically abandoned it and we have to pick it up.

7        And it all happened after the criminal conviction of

8   Mr. Kwok, so I think that everybody understands that that's

9   the end of the -- we think it's the end of it, but I -- so

10  that's the experience we're having on other fronts, as well,

11  where they're just pulling out.  Without really doing it in a

12  responsible way, they're just, for example, the Mahwah

13  mansion, the Court had ordered that they pay security and all

14  that, they just --

15        THE COURT:  Disappeared.

16        MR. DESPINS:  -- walked away.  Yeah.

17        THE COURT:  Well, I think Attorney Shaban -- well,

18  let me ask:  Did Attorney Linsey wish to be heard?

19        MR. LINSEY:  No, Your Honor.

20        THE COURT:  All right.  I think the record before me

21  would support a Rule 41 dismissal, frankly, but that is not

22  the reason we're here.

23        And, Attorney Shaban, I will agree that you are in a

24  untenable situation.

25        I find it -- and you can share this with him -- kind

```
 1    of appalling, that some lawyer in Chicago can't respect the

 2    process and provide some guidance, either to you or to the

 3    court, because now everybody's just wasting time and money.

 4              I'm going to grant the motion to withdraw.  I'm

 5    going to issue an order on the docket -- that I will ask you

 6    to forward to whoever you think might be the appropriate

 7    recipient, even if such person may not exist -- that says if

 8    we don't have successor counsel in two weeks, the case will

 9    be dismissed for failure to prosecute.

10              MR. SHABAN:  Very well.

11              THE COURT:  Okay.  Anything further we can do this

12    morning on this matter?

13              MR. SHABAN:  I don't believe so, Your Honor.

14              MR. LINSEY:  No, Your Honor.

15              THE COURT:  Okay.  All right.  We'll get that

16    docketed today.  Thank you.

17              MR. SHABAN:  Thank you, Your Honor.

18              (Proceedings conclude, 9:22 a.m.)

19

20

21

22

23

24

25
```

8

```
1                    C E R T I F I C A T E

2               In re:  Ho Wan Kwok, et al.
                Civil No. 3:24-cr-00335-KAD
3

4                     Motion Hearing
                   (Motion to Withdraw)
5                    October 2, 2024

6

7        I, Tracy L. Gow, RPR, Official Court Reporter for the

8   United States District Court, District of Connecticut, do

9   hereby certify that the foregoing pages, 1 through 7, are a

10  true and accurate transcription of my shorthand notes taken

11  in the aforementioned matter, to the best of my skill and

12  ability.

13

14                         /s/   TRACY L. GOW
                           Official Court Reporter
15                         U.S. District Court
                           915 Lafayette Boulevard, Room 216
16                         Bridgeport, Connecticut 06604
                           (203) 910-0323
17

18

19

20

21

22

23

24

25
```