**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                  :

In re:                       :     Chapter 11
                                  :

HO WAN KWOK, *et al.*,[1]    :     Case No. 22-50073 (JAM)
                                  :

          Debtors.      :     (Jointly Administered)
                                  :
-------------------------------------------------------x

**CHAPTER 11 TRUSTEE'S OBJECTION TO JOINT DEFENDANTS'
OMNIBUS MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
<u>OR FOR JUDGMENT ON THE PLEADINGS</u>**

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## Table of Contents

PRELIMINARY STATEMENT ................................................................................. 1

OBJECTION.......................................................................................................... 4

I.    Law of the Case Defeats the Joint Motion............................................................. 4

II.   Joint Defendants' Alleged "Innocence" Does Not Preclude Reverse Veil-Piercing.............. 6

a.    Joint Defendants' Alleged "Innocence" and Purported Potential Harm Are Premature Issues of Fact.................................................................................................... 7

b.    Reverse Veil-Piercing Implicates a Balancing Test Aimed to Prevent Fraud........................ 8

III.  Assets of Alter Ego Entities Are Estate Property................................................ 10

a.    Property of Estate Is Matter of Federal Bankruptcy Law, Not State Law........................... 11

b.    Delaware Does Not Follow Vicarious Liability Theory of Alter Ego Law ........................... 19

c.    Court Has Already Rejected Joint Defendants' Illusory Distinction .................................... 22

IV.   Trustee Is Not Seeking, And Does Not Need, *Nunc Pro Tunc* Relief, As Debtor Always Owned Assets of Alter Ego Entities .................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 477 W. 142nd St. Hous., Dev. Fund Corp.*,
No. 15-12178 (SHL), 2020 WL 3067733 (Bankr. S.D.N.Y. June 8, 2020) ............................5

*In re 10th Ave. Rec. Distributors, Inc.*,
97 B.R. 163 (S.D.N.Y. 1989)................................................................................................15

*In re Adler*,
494 B.R. 43 (Bankr. E.D.N.Y. 2013)................................................17, 18, 27, 28

*In re Am. Int'l Refinery*,
402 B.R. 728 (Bankr. W.D. La. 2008)...............................................20, 21, 22, 25

*In re Am. Way Serv. Corp.*,
229 B.R. 496 (Bankr. S.D. Fla. 1999) ..................................................................29

*Aramony v. United Way of Am.*,
254 F.3d 403 (2d Cir. 2001)...................................................................................5

*In re Autobacs Strauss, Inc.*,
473 B.R. 525 (Bankr. D. Del. 2012) ......................................................................28

*In re Blatstein*,
192 F.3d 88 (3d Cir. 1999).............................................................................15, 18

*In re Burgess*,
234 B.R. 793 (D. Nev. 1999) .................................................................................13

*Butner v. U.S.*,
440 U.S. 48 (1979)..........................................................................................12, 13

*In re Chardon, LLC*,
519 B.R. 211 (Bankr. N.D. Ill. 2014) ...................................................................12

*In re Commodore Business Machines, Inc.*,
180 B.R. 72 (Bankr. S.D.N.Y. 1995).....................................................................13

*In re Concepcion*,
No. 13-09126, 2017 WL 1076325 (Bankr. D.P.R. Mar. 21, 2017) .........................16

*In re Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.*,
275 B.R. 737 (D. Md. 2001) .......................................................................16, 18, 26

*In re Duckworth*,
　No. 10-83603, 2012 WL 4434681 (Bankr. C.D. Ill. Sept. 24, 2012) ...............................26, 27

*In re Fisher*,
　296 Fed. App'x 494 (6th Cir. 2008) .................................................................................25, 26

*In re Harman*,
　512 B.R. 321 (Bankr. N.D. Ga. 2014) ....................................................................................24

*In re Harry C. Partridge Jr. & Sons, Inc.*,
　112 B.R. 593 (Bankr. S.D.N.Y. 1990).....................................................................................16

*In re Howland*,
　674 F. App'x 482 (6th Cir. 2017) ............................................................................................19

*Krakowski v. Am. Airlines, Inc.*,
　610 B.R. 714 (S.D.N.Y. 2019)..................................................................................................5

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
　251 A.3d 694 (Del. Ch. 2021)......................................................................................... *passim*

*In re Mass*,
　178 B.R. 626 (M.D. Pa. 1995) ........................................................................................8, 9, 10

*In re Moise*,
　575 B.R. 191 (Bankr. E.D.N.Y. 2017).....................................................................................6

*In re Motors Liquidation Co.*,
　590 B.R. 39 (S.D.N.Y. 2018)................................................................................................5, 6

*In re N.S. Garrott & Sons*,
　772 F.2d 462 (8th Cir. 1985) ..................................................................................................13

*In re Nejberger*,
　934 F.2d 1300 (3d Cir. 1991)..................................................................................................13

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
　102 F.3d 660 (2d Cir. 1996)......................................................................................................7

*Nicole Gas Prod., Ltd.,*
　916 F.3d 566, 573 (6th Cir. 2019) ..........................................................................................13

*In re Nordlicht*,
　115 F.4th 90 (2d Cir. 2024) ....................................................................................................15

*In re Palmieri*,
　651 B.R. 349 (Bankr. N.D. Ill. 2023) ............................................................................. *passim*

*Pauley Petroleum, Inc. v. Cont'l Oil Co.*,
  239 A.2d 629 (Del. Ch. 1968) ................................................................21

*Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contracting of N.Y., LLC*,
  536 B.R. 48 (Bankr. E.D.N.Y. 2015) ..............................................17, 19

*In re Pearlman*,
  462 B.R. 849 (Bankr. M.D. Fla. 2012) ...................................................16

*Pescatore v. Pan Am. World Airways, Inc.*,
  97 F.3d 1 (2d Cir. 1996) ...........................................................................5

*In re Petters Co., Inc.*,
  561 B.R. 738 (Bankr. D. Minn. 2016) ...............................................9, 10

*In re Player's Poker Club, Inc.*,
  636 B.R. 811 (Bankr. C.D. Cal. 2022) ....................................................27

*Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*,
  589 U.S. 57 (2020) ..................................................................................27

*In re RS Air, LLC*,
  651 B.R. 538 .....................................................................................19, 23

*In re Schultz*,
  250 B.R. 22 (Bankr. E.D.N.Y. 2000) ........................................................6

*In re Schuster*,
  132 B.R. 604 (Bankr. D. Minn. 1991) ...............................................10, 28

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  603 B.R. 682 (Bankr. S.D.N.Y. 2019) ......................................................6

*In re Silver*,
  647 B.R. 897 (Bankr. E.D. Mich. 2022) ..................................................19

*Sky Cable, LLC v. DIRECTV, Inc.*,
  886 F.3d 375 (4th Cir. 2018) ....................................................................9

*Spring Real Est., LLC v. Echo/RT Holdings, LLC*,
  No. CV 7994-VCN, 2016 WL 769586 (Del. Ch. Feb. 18, 2016) .....................20, 21

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,
  884 F.2d 688 (2d Cir. 1989) ....................................................................15

*In re Star Mountain Res., Inc.*,
  No. 2:18-BK-01594-DPC, 2022 WL 2294175 (Bankr. D. Ariz. June 22, 2022) ..14, 15, 18, 29

*Stern v. Marshall,*
    564 U.S. 462, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011) ......................................................18

*In re Terwilliger's Catering Plus, Inc.,*
    911 F.2d 1168 (6th Cir. 1990) ..............................................................................................13

*In re The Ground Round, Inc.,*
    482 F.3d 15 (1st Cir. 2007)...................................................................................................12

*In re Wardle,*
    No. ADV.S-03-01467, 2006 WL 6811026 (B.A.P. 9th Cir. Jan. 31, 2006)............................19

*Wellness Int'l Network, Ltd. v. Sharif,*
    575 U.S. 665, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015) ....................................................18

*In re Yerushalmi,*
    487 B.R. 98 (Bankr. E.D.N.Y. 2012).......................................................................14, 15, 18

## Statutes

11 U.S.C. § 502(h) ......................................................................................................................8

11 U.S.C. § 541 ................................................................................................................. *passim*

11 U.S.C. § 542................................................................................................................11, 16, 19

11 U.S.C. § 544 ...........................................................................................................................1

11 U.S.C. § 548.....................................................................................................................1, 21

11 U.S.C. § 549................................................................................................................1, 24, 25, 26

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel, hereby files this objection (the "Objection") to the *Joint Defendants' Omnibus Memorandum in Support of Motion to Dismiss or For Judgment on the Pleadings* [Docket No. 3713] (the "Joint Motion").[2]  In support of this Objection, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      This Court has already ruled that the Alter Ego Entities[3] are alter egos of the Debtor and that their assets are, and always were, property of the Debtor—which makes those assets property of the estate.  In addition, it is black-letter law that the Trustee's avoidance actions under sections 544, 548, and 549 of the Bankruptcy Code allow the Trustee to avoid and recover transfers of property of the estate.  The Joint Defendants dispute none of this.

2.      Instead, the Joint Defendants assemble a variety of procedural and legal theories to attack the rulings the Court has already made.  Procedurally, they claim that the Court's prior rulings do not preclude them from re-litigating the issues the Court decided in those rulings because they occurred in adversary proceedings to which the Joint Defendants were not named parties.  But courts, including this one, have repeatedly affirmed that the law of the case doctrine applies across adversary proceedings brought under the umbrella of the same bankruptcy case— especially where the precluded parties had notice that the legal questions at issue would be litigated.  Here, the Joint Defendants were on notice that the Trustee was asserting alter ego status for the Alter Ego Entities and chose not to seek intervention in those proceedings.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Joint Motion.

[3]     For the purposes of the Joint Motion and this Objection, the "Alter Ego Entities" are, collectively, (i) Lamp Capital LLC, (ii) Golden Spring (New York) Ltd., (iii) HCHK Technologies, Inc., (iv) HCHK Property Management, Inc., (v) Lexington Property & Staffing, Inc., and (vi) Greenwich Land LLC.

1

3.      Even if the Court were to address the merits of the Joint Defendants' arguments, those arguments should be rejected.  The Joint Defendants rely on three primary legal theories, each of which is fatally flawed.

4.      First, they assert that the Court's earlier rulings were mistaken because Delaware law precludes reverse veil piercing that could harm potentially innocent third-party creditors. This argument fails on multiple levels.  For one, the Joint Defendants' purported "innocence" is a question of fact that does not appear on the face of the Trustee's complaints and therefore cannot be decided on a motion to dismiss or a motion for judgment on the pleadings.  In any event, Delaware law does not provide that the potential harm to third parties is a dispositive factor on a reverse veil-piercing claim.  Instead, it is just one of the factors courts consider, and it carries less weight in a bankruptcy context, where the entire creditor body must be treated equally and the Joint Defendants are able to assert claims against the estate.  The most important factor in the veil-piercing analysis is not the potential harm to innocent third parties, but rather the abuse of the corporate form.  Here, that abuse is extreme, as the Debtor has used countless shell companies to harm literally thousands of creditors and victims and to hide unfathomable wealth.  The Joint Defendants would have this Court rule that it is without recourse to address this simply because those shell companies did business with potentially innocent third parties. Delaware law does not countenance, let alone require, such a result.

5.      Second, the Joint Defendants attack the Court's prior rulings based on their argument that even if Delaware law does permit reverse veil-piercing of the Alter Ego Entities, it would only impose "vicarious liability" on those entities and would not make their assets property of the estate.  This, they say, would defeat the Trustee's avoidance actions because transfers at issue would not have involved "property of the estate."  This argument is flawed at

2

the outset because Delaware's underlying theory of alter ego law does not control what is, and is not, property of the estate under section 541 of the Bankruptcy Code.  In determining what constitutes property of the estate, a bankruptcy court will look to the characteristics of an asset as determined by state law but will not be bound by the state law's characterization of the asset; whether the asset's **characteristics** ultimately result in a ruling that the asset is "property of the estate" is a matter of federal law.  Stated simply, state law determines whether the Alter Ego Entities are alter egos of the Debtor.  But, once that determination has been made, bankruptcy law determines whether the assets of the Alter Ego Entities are property of the estate.[4]

6.      In any event, the Joint Defendants are wrong in asserting that Delaware adopts the so-called "vicarious liability" theory of alter ego law.  As shown below, Delaware courts, including the Delaware Supreme Court, have repeatedly endorsed what the Joint Defendants call the "identity theory" of alter ego law, which does merge the assets (and, indeed, the very entities) when one entity is the alter ego of another.  For this reason, courts applying Delaware law have consistently upheld fraudulent transfer claims based on alter ego status.

7.      <u>Third</u>, the Joint Defendants assert that even if the Court was correct that reverse veil piercing is available, and even if the Court was correct that the consequence of the Court's earlier alter ego rulings is that the Alter Ego Entities' assets are property of the estate, that consequence can only apply prospectively, from the date of those alter ego rulings.  Any other outcome, they argue, would be impermissible *nunc pro tunc* relief.  But the Court's prior rulings did not rely on *nunc pro tunc* relief, and neither do the Trustee's avoidance actions.  *Nunc pro tunc* is a legal fiction that, in essence, rewrites history and, therefore, is appropriate only in

---

[4]    Also flawed is the Joint Defendants' argument that the relief the Trustee seeks can only be obtained in bankruptcy via substantive consolidation.  The Trustee is not seeking substantive consolidation at this time because the relief he seeks is available through a reverse veil-piercing claim.

limited circumstances.  An alter ego ruling, however, does the exact opposite.  As courts have repeatedly explained, an alter ego ruling enforces the ***legal truth*** that the pierced entity is, ***and always was***, indistinguishable from the dominant entity or person.  The alter ego doctrine does not ***create*** a legal fiction; it ***undoes*** a legal fiction.

8.      For all these reasons, and those discussed below, the Court should reaffirm its prior holdings, reject the Joint Defendants' arguments, and deny their Motion.

## **OBJECTION**

9.      The Joint Defendants argue that (i) neither collateral estoppel nor law of the case applies to the Court's prior rulings regarding the Alter Ego Entities; (ii) Delaware law precludes reverse veil piercing as applied to the Alter Ego Entities; (iii) the Trustee's avoidance actions fail because, under Delaware law, the assets of an alter ego (here, the Alter Ego Entities) are not treated as the assets of the dominant entity or person (here, the Debtor), and the Trustee is not seeking substantive consolidation; and (iv) even if the Alter Ego Entities' are treated as the Debtor's assets, such treatment applies only a prospective basis.  These arguments are either wrong or irrelevant, or both.

### I.   **Law of the Case Defeats the Joint Motion**

10.     The Court has already ruled that (i) Delaware law allows reverse veil piercing of the Alter Ego Entities and (ii) the assets of the Alter Ego Entities are, and always were, property of the estate.  The law of the case doctrine now precludes their arguments to the contrary.[5]

11.     Law of the case is a discretionary rule providing that, when a court issues a decision, "that decision should continue to govern the same issues in subsequent stages in the

---

[5]  The Joint Defendants also spend almost four pages arguing that they are not collaterally estopped from asserting their various arguments.  *See* Joint Mot. at 30-33.  This discussion is irrelevant, as the Trustee has not asserted collateral estoppel or issue preclusion.

same case." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7 (2d Cir. 1996) (quoting *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir.1992)). The doctrine "developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *In re 477 W. 142nd St. Hous., Dev. Fund Corp.*, No. 15-12178 (SHL), 2020 WL 3067733, at *12 (Bankr. S.D.N.Y. June 8, 2020) (quoting *In re PCH Assoc.*, 949 F.2d 585, 592 (2d Cir. 1991)). Courts apply law of the case when their prior decisions either expressly resolved an issue or necessarily resolved it by implication. *See Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001).

12.      The Joint Defendants focus on the fact that they were not parties to the Alter Ego Adversaries. But courts in the Second Circuit have repeatedly held that, in bankruptcy, the law of the-case doctrine applies to different adversary proceedings filed within the same main case. Indeed, this Court has already ruled that "it is not essential to law of the case that the parties before the court were involved in the previous litigation."[6] *See also In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) ("[C]ourts have held that the law-of-the-case doctrine applies to different adversary proceedings filed within the same main bankruptcy case.") (quotation marks omitted); *Krakowski v. Am. Airlines, Inc.*, 610 B.R. 714, 724 (S.D.N.Y. 2019), *aff'd sub nom. In re AMR Corp.*, 834 F. App'x 660 (2d Cir. 2021) ("Although *Krakowski I* is, of course, a different adversary proceeding than the one now before the court, '[c]ourts have held that the law-of-the-case doctrine applies to different adversary proceedings filed within the same main bankruptcy case."); *In re Moise*, 575 B.R. 191, 205 (Bankr. E.D.N.Y. 2017) (same); *Sec.*

---

[6]    *Memorandum of Decision and Order Granting Motion for Summary Judgment*, at 20 (Adv. Proc. No. 23-5005, July 2, 2024) [Docket No. 133].

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682 (Bankr. S.D.N.Y. 2019) (applying law of the case from prior rulings against new parties making same arguments).

13.     *Motors Liquidation* is particularly instructive because, in that case, the court specifically held that one of the defendants—the only one who plausibly had not been involved in the broader bankruptcy case—was still bound by law of the case because, even though she did not participate in the prior proceeding, she had notice that the issue she wished to litigate would be litigated in the prior proceeding. *Motors Liquidation*, 590 B.R. at 66-67.  The Joint Defendants here were similarly on notice that the alter ego rulings they now wish to challenge were being litigated in the Alter Ego Adversaries, which were identified in the respective complaints served on the Joint Defendants, yet they chose not to seek to intervene in those proceedings.[7]  The Joint Defendants are, therefore, bound by the Court's prior rulings.[8]

## II.    Joint Defendants' Alleged "Innocence" Does Not Preclude Reverse Veil-Piercing

14.     The Joint Defendants argue that Delaware law imposes an absolute limitation on reverse veil piercing, prohibiting application of the doctrine if doing so would harm "innocent third-party creditors."[9]  This argument is premature and, in any event, wrong on the law.

---

[7]    There are six Alter Ego Entities.  The Court entered its alter ego ruling regarding HCHK Technologies, Inc., HCHK Property Management, Inc., Lexington Property & Staffing, Inc., on June 24, 2024, *see Amended Default Judgment and Permanent Injunction* (Adv. Proc. No. 23-05013, June 24, 2024) [Docket No. 297], and entered its ruling regarding Greenwich Land LLC on July 2, 2024, *see Summary Judgment* (Adv. Proc. No. 23-05005, July 2, 2024) [Docket No. 134].  The complaints naming the Joint Defendants were all filed between February 9-14, 2024, months before these alter ego rulings, and they each referenced, and made clear that the Trustee's avoidance actions were predicated on, ownership of the assets of the Alter Ego Entities as sought in the relevant underlying Alter Ego Adversary.  Furthermore, any Joint Defendant that reviewed the dockets in those adversary proceedings would have understood that the Trustee was asserting that the relevant entity's assets were, and always were, property of the Debtor.  Moreover, the Joint Defendants' own exhibit demonstrates that **35 of the 38** of the Joint Defendants received transfers from at least one of HCHK Technologies, Inc., HCHK Property Management, Inc., Lexington Property & Staffing, Inc., or Greenwich Land LLC.

[8]    The *Motors Liquidation* court specifically addressed, and rejected, the defendant's reliance on *In re Schultz*, 250 B.R. 22 (Bankr. E.D.N.Y. 2000), which the Joint Defendants also cite.  *See* Joint Mot. at 33-34.

[9]    Joint Mot. at 10.

6

**a. Joint Defendants' Alleged "Innocence" and Purported Potential Harm Are Premature Issues of Fact**

15.    In deciding a motion to dismiss or a motion for judgment on the pleadings, a court's review is limited to the allegations contained on the face of the pleadings. *See Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir. 1996) (reversing grant of motion to dismiss where "district court improperly relied upon information outside of the four corners of N & S's complaint"). The court's decision in *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 710 (Del. Ch. 2021), is instructive. There, the defendants, which included an entity above the dominating entity and the alleged alter ego entities, argued that the alleged alter ego entities—the indirect subsidiaries of the dominating parent entity—were the "primary obligors on certain debt" above the level of the dominating parent entity, and "those debt holders [of the entity above the dominating parent entity] will be prejudiced if [the dominant entity's] judgment creditors can hold those subsidiaries liable." *Manichaean*, 251 A.3d at 718. The court rejected this argument, holding there was "no basis in the Complaint to infer that reverse veil-piercing will cause harm to innocent third-party creditors," and that, at the motion to dismiss stage, the court's "analysis is confined to the 'four corners' of that pleading" (*i.e.*, the complaint). *Id*. Here, any assertion that the Joint Defendants are "innocent" is an issue of fact residing outside the four corners of the complaints, and, thus, it is irrelevant at this stage.[10]

16.    Also not subject to consideration at this time is the extent to which the Joint Defendants will be harmed, if at all, by the Trustee's claims, even assuming the Joint Defendants are "innocent." While the Trustee seeks to recover funds from the Joint Defendants (specifically, the payments they received from the Debtor's alter egos), they will not necessarily suffer harm in

---

[10]    To be clear, the Trustee does not concede that the Joint Defendants were "innocent" in receiving the transfers at issue in the complaints, and the Trustee reserves all rights in response to such arguments.

the amount of such recovery, because the Joint Defendants would have the opportunity following a successful avoidance action to assert claims against the Debtor's estate under section 502(h) of the Bankruptcy Code.  *See* 11 U.S.C. § 502(h) ("A claim rising from the recovery of property under section . . . 550 . . . of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition").[11]

17.     By seeking to dismiss the Trustee's claims now, and thereby avoid the need to ever potentially assert section 502(h) claims, the Joint Defendants seek to elevate themselves above all other creditors just because they (allegedly) had no notice they were dealing with a sham entity.  But courts have rejected this very argument, especially in bankruptcy.  In *In re Mass*, 178 B.R. 626 (M.D. Pa. 1995), the defendant argued that "piercing the corporate veil in this case is inappropriate because it is an 'innocent' third party harmed by transferring the accounts funds to the debtors' estate."  *Id*. at 630.  Affirming the bankruptcy court, the district court rejected this argument, explaining that the bankruptcy court's order aided "all creditors of the bankruptcy estate" and the defendant "should not enjoy a preferential treatment as the only business creditor to have contracted with a sham corporation."  *Id*. at 630-31.

### b.  Reverse Veil-Piercing Implicates a Balancing Test Aimed to Prevent Fraud

18.     Even assuming that the Joint Defendants are "innocent" parties who will be harmed by reverse veil-piercing, and that it would be appropriate for the Court to consider such an argument at this stage, the Trustee's claims remain valid.  When reviewing a reverse veil-

---

[11]  To be clear, long before the Joint Defendants raised their purported fairness concerns, the Trustee advised the Court, at the February 27, 2024, status conference, that the bar date would need to be re-opened at a later date to give additional parties (including creditors of alter ego entities) the ability to assert claims against the estate. *See* Feb. 27, 2024 Hr'g Tr. at 22:7-22.  A copy of the relevant excerpts of the February 27, 2024 Hearing Transcript is attached hereto as **Exhibit 1**.

piercing claim, a court applying Delaware law will consider several factors to determine whether the corporate form is being used "to perpetuate fraud or an injustice." *Manichaean*, 251 A.3d at 714-15. The "extent to which the reverse pierce will harm innocent third-party creditors of the entity the plaintiff seeks to reach" is only one of those factors. *Id.* at 715. It is not, as the Joint Defendants allege, a dispositive factor that overrides all other considerations.

19.     The Court of Chancery's decision in *Manichaean* is explicit on this point, explaining that "[t]he risks that reverse veil-piercing may be used as a blunt instrument to harm innocent parties, and to disrupt the expectations of arms-length bargaining, while real, do not, in [the court's] view, justify the rejection of reverse veil-piercing outright." *Id.* at 712. Reverse veil piercing under Delaware law, therefore, views the impact on third parties as one factor in a balancing test. *See In re Petters Co., Inc.*, 561 B.R. 738, 754 (Bankr. D. Minn. 2016) (analyzing Delaware and Minnesota law and concluding "impact on creditors which would result from piercing the corporate veil … does not on its face outweigh the other equitable considerations implicated by the alleged facts"). In fact, the single most important factor is whether the corporate form is being used improperly. *See Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 387 (4th Cir. 2018) ("[I]n Delaware, disregarding the corporate fiction *can always be done* if necessary to prevent fraud or chicanery") (quotation marks omitted); *see also Petters*, 561 B.R. at 752 ("Delaware is a chartering jurisdiction, and therefore has strong policy reasons to prevent Delaware corporations from being used as vehicles for fraud.").

20.     If reverse veil-piercing were not available whenever a third party might suffer harm from its application, the doctrine would become ineffective against the very wrongs it is designed to remedy. As noted above , in *In re Mass*, the district court focused on this very concern, holding that piercing the veil aided "all creditors of the bankruptcy estate," and noting

9

the defendant "should not enjoy a preferential treatment as the only business creditor to have contracted with a sham corporation." *Mass*, 178 B.R. at 630-31.  As another court explained, failure to employ reverse veil piercing would "seriously upset" the "balance of remedies between Debtor and his creditors" and allow the debtor "to shelter a past transfer of personal resources into an artificial entity," which would "allow a legal fiction—the facade of the family corporation—to triumph over substance." *In re Schuster*, 132 B.R. 604, 612 (Bankr. D. Minn. 1991).

21.     ***The Joint Defendants here seek this same inequitable result by asking the Court to effectively bless the Debtor's worldwide fraudulent scheme that harmed hundreds (if not thousands) of creditors and victims, allowing the Debtor and his family to live a truly extravagant lifestyle.***  The Joint Defendants do not deny, nor can they, that the Debtor perpetuated his scheme through rampant abuse of the corporate form—indeed the Debtor's well-established maze of hundreds of shell companies, including Delaware entities, was a focal point of the criminal trial that led to his conviction on federal fraud charges.  Instead, the Joint Defendants ask the Court to believe that Delaware law is without any recourse for such an extreme abuse of the corporate form and would sanction a global fraud of this nature merely because some potentially innocent third parties did business with the Alter Ego Entities.  This is simply not the law, as "Delaware will not countenance the use of the corporate form as a means to facilitate fraud or injustice." *Manichaean*, 251 A.3d at 713.  Accordingly, the Joint Defendants' argument must be rejected.

## III.     Assets of Alter Ego Entities Are Estate Property

22.     The Joint Defendants' argument that a chapter 11 trustee cannot avoid transfers made by a debtor's alter ego rests on their jurisprudential theory dividing alter ego law into two

10

schools of thought: the "vicarious liability" theory and the "identity" theory.  In this dichotomy, according to the Joint Defendants, assets of an alter ego are treated as the assets of the dominant entity or person only in those states that subscribe to the identity theory.  In states that adopt the vicarious liability theory, they say, an alter ego ruling only imposes vicarious liability on the dominant entity or person and has no impact on ownership of the pierced entity's assets.  According to the Joint Defendants, Delaware follows the vicarious liability approach.

23.     This argument fails for two reasons.  <u>First</u>, the rigid distinction the Joint Defendants rely on is both illusory and inconsequential, especially in bankruptcy court, where the assets of an alter ego are treated as property of the estate ***as a matter of bankruptcy law***.  <u>Second</u>, even if the distinction existed and was important, Delaware law follows the identity theory, not the vicarious liability theory.

### a.   <u>Property of Estate Is Matter of Federal Bankruptcy Law, Not State Law</u>

24.     As the Joint Defendants acknowledge, this Court has already explained that once there is an alter ego or veil piercing ruling, "[i]n conjunction with sections 541 and 542, alter ego thus accomplishes the transfer of assets into the bankruptcy estate."[12]  The Joint Defendants challenge this ruling, asserting that the Court failed to "discuss how this claim of vicarious liability mutates 'in conjunction with 541 and 542' to become assets of the Debtor."[13] Attempting to bolster their challenge, they cite a series of cases, including *Butner v. U.S.*, 440 U.S. 48 (1979), for the proposition that property interests are created and defined by state law.

---

[12]   Joint Mot. at 18 (quoting *Memorandum of Decision and Order Granting Motion for Partial Summary Judgment on Second Counterclaim*, at 25 (Adv. Pro. No. 22-05003, May 18, 2023) [Docket No. 222]).

[13]   *Id*.  As explained above, this ruling is law of the case, and the Joint Defendants cannot now challenge that ruling simply because they believe the Court did not sufficiently explain its prior ruling.

They further argue that, therefore, the consequence of a bankruptcy court's alter ego ruling is also governed by state law.

25.     The Joint Defendants fundamentally misunderstand *Butner* and fail to understand that what constitutes property of the estate "is a matter of federal law," and bankruptcy courts applying federal law are not bound by the "label that state law affixes to a particular interest." *In re The Ground Round, Inc.*, 482 F.3d 15, 17 (1st Cir. 2007) (as modified) (liquor license was property of the estate notwithstanding state law characterization as privilege, not property); *see also In re Chardon, LLC,* 519 B.R. 211, 217 (Bankr. N.D. Ill. 2014) (what constitutes property of the debtor "is a matter of federal bankruptcy law regardless of how the state characterizes the actual legal ownership of the property") (quoting *Matter of Pentell*, 777 F.2d 1281, 1284 n.2 (7th Cir. 1985)).

26.     This is entirely consistent with *Butner*, in which the Supreme Court famously declared that "[p]roperty interests are created and defined by state law." *Butner*, 440 U.S. at 55. As the Sixth Circuit has explained, and as *Butner* instructs, the "nature and extent of property rights in bankruptcy are determined by the underlying substantive law." *Nicole Gas Prod., Ltd.*, 916 F.3d 566, 573 (6th Cir. 2019) (cleaned up).  But "once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate for purposes of § 541." *Id.* (cleaned up).  *See also In re Nejberger*, 934 F.2d 1300, 1302 (3d Cir. 1991) ("while state law creates legal interests and defines their incidents, the ultimate question whether an interest thus created and defined falls within a category stated by a Federal statute, requires an interpretation of that statute, which is a Federal question") (as modified).

27.     Accordingly, a bankruptcy court looks to the ***characteristics*** of an asset as determined by state law but is not bound by how state law ***characterizes*** that asset; whether its

12

state law *characteristics* ultimately result in *characterization* as "property of the estate" is a matter of federal law.  Applied here, Delaware law determines whether the Alter Ego Entities are alter egos of the Debtor.  But, once that determination has been made, bankruptcy law determines whether the assets of the Alter Ego Entities are property of the estate.  *See In re Commodore Business Machines, Inc.*, 180 B.R. 72, 78 n.8 (Bankr. S.D.N.Y. 1995) ("Once the nature and extent of debtor's interest in the property is determined, federal bankruptcy law dictates the extent to which the property is property of the estate.").  Other courts have held similarly.  *See, e.g.*, *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1172 (6th Cir. 1990) ("While the nature and extent of the debtor's interest are determined by state law once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate.") (internal quotations omitted); *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir. 1985) ("The nature and extent of the debtor's interest in property are determined by state law. [] Property rights under section 541 are defined by state law.  *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).  However, once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate."); *In re Burgess*, 234 B.R. 793, 797 (D. Nev. 1999) ("[W]hile state law creates the right, federal law determines whether it is 'property' for purposes of the federal bankruptcy laws, tax laws, etc.").

28.     *In re Yerushalmi*, 487 B.R. 98 (Bankr. E.D.N.Y. 2012) is on point.  In that case, the trustee asserted that a specific trust (the "QPRT") was the debtor's alter ego.  Pointing to state law, the defendants argued that the alter ego claim was barred by New York's statute of limitations.  *Id.* at 107.  The court explained that addressing the limitations defense required it to "examine the nature of the Trustee's claim under section 541."  *Id.* at 107-08.  The trustee was not suing to "hold the QPRT liable for the obligations of the Debtor," *id.*, but instead sought "a

declaratory judgment that the QPRT is the alter ego of the Debtor.  The consequence of such a determination would be that the Trustee is entitled to demand turnover of the assets held by the QPRT because those assets are property of the estate under section 541." *Id.* at 108.  Because the "Trustee's action [was] equitable in nature" and brought under section 541 of the Bankruptcy Code, state law limitations periods did not apply:  "The facts of this case—that is, a bankruptcy trustee seeking to recover estate assets on an alter ego theory—are distinguishable from non-bankruptcy alter ego cases pursued by and for the benefit of individual creditors seeking to hold an alter ego liable for the obligations of another." *Id.*

29.    *In re Star Mountain Res., Inc.*, No. 2:18-BK-01594-DPC, 2022 WL 2294175 (Bankr. D. Ariz. June 22, 2022) (subsequent history omitted), also distinguishes between alter ego claims outside of bankruptcy and those brought by brought by a bankruptcy trustee.  "An alter ego claim has a different effect in the bankruptcy context than in the traditional civil trial setting, where a specific creditor brings a judgment against the alleged alter ego.  An alter ego finding in bankruptcy is more similar to substantive consolidation, bringing the assets of the alter ego into the debtor's estate to be shared collectively with the debtor's creditors." *Id.* at *7, n.86.[14] *Star Mountain* and *In re Yerushalmi*, therefore, expressly reject the Joint Defendants' invocation of state law as governing the consequences of an alter ego ruling.

---

[14]    This does not mean, as the Joint Defendants argue, that the "nature of the alter ego relief sought by the Trustee is akin to the equitable remedy of substantive consolidation" and that the body of law governing substantive consolidation, therefore, governs the Trustee's avoidance actions against the Joint Defendants.  Joint Mot. at 21. To the contrary, the *Star Mountain* court also explained that "substantive consolidation is distinguishable from state law alter ego claims" and "the analysis for substantive consolidation is more involved than the analysis for an alter ego finding."  2022 WL 2294175, at *7.  In other words (i) an alter ego claim brought by a bankruptcy trustee has an effect similar to substantive consolidation, but (ii) it is not governed by the same legal standards. In any event, the Trustee believes that he could meet the substantive consolidation standard if he ever sought such relief.

30.     Other courts have also held—as this Court did—that the consequence of an alter ego determination is that the assets of the alter ego are considered property of the estate.  For example, in *In re Blatstein* certain creditors (joined by the trustee) had commenced an adversary proceeding asking "the bankruptcy court to reverse pierce the veils of [certain] corporations so as to bring their assets into the bankruptcy estates."  *In re Blatstein*, 192 F.3d 88, 92 (3d Cir. 1999).  On appeal, the Third Circuit held that it had jurisdiction because "[f]irst and foremost, this appeal concerns identifying assets of Blatstein's estate."  *Id.* at 95.  The court explained that a determination that "the Blatsteins' corporations are his alter ego, ***would result in the inclusion in his bankruptcy estate of substantial assets***."  *Id.* (emphasis added).  In *In re 10th Ave. Rec. Distributors, Inc.*, 97 B.R. 163 (S.D.N.Y. 1989), the trustee sought a declaratory judgment that the "alleged separate corporate existence of Bate and 10th Avenue should be disregarded, and their assets and liabilities are to be considered assets and liabilities of the estate of 10th Avenue."  *Id.* at 164.  The court held that the trustee had standing to assert this claim, as the "trustee's alter ego cause of action here is ***without doubt an attempt to collect property of the estate***."  *Id.* at 166 (emphasis added).[15]  Even the Joint Defendants' own cases agree, explaining that "by piercing the corporate veil, the party proves that the two entities legally are the same, not two different entities. Therefore, they are not really debtor and non-debtor, but one."  *In re Pearlman*, 462 B.R. 849, 855 (Bankr. M.D. Fla. 2012).  *See also In re Harry C. Partridge Jr. & Sons, Inc.*, 112 B.R. 593, 594 (Bankr. S.D.N.Y. 1990) (denying motion to dismiss where trustee alleged

---

[15]  *In re 10th Avenue* was recently cited approvingly by the Second Circuit in *In re Nordlicht*, 115 F.4th 90, 109 (2d Cir. 2024), which affirmed that alter ego claims can be brought by a bankruptcy trustee.  *Nordlicht* also cited the Second Circuit's earlier ruling in *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)—which ruling also demonstrates that an alter ego's assets are property of the estate.  *See St. Paul*, 884 F.2d at 695 (noting that "should the bankruptcy plaintiffs prevail on their alter ego claim, this property ***would become property of the estate***, insofar as Banner would be liable for CL's obligations" (emphasis added)) and at 701 (alter ego claims "are claims regarding the transfer of property ***to*** the estate" and "proceedings ***having the effect of bringing property into the estate*** of the debtor are core proceedings" (emphasis added)).

15

"defendant corporation is the alter ego of the debtor corporations, with the result that the Broome Street property should be regarded as property of the debtors' estates for turnover purpose"); *In re Concepcion*, No. 13-09126, 2017 WL 1076325, at *6 (Bankr. D.P.R. Mar. 21, 2017) (granting summary judgment on alter ego and ordering that "assets of the trust revert to the Bankruptcy Estate pursuant to 11 U.S.C. § 541 and § 542").

31.     *In re Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.*, 275 B.R. 737, 742 (D. Md. 2001), also points specifically to section 541 of the Bankruptcy Code.  There, the court noted that three courts had already held that various entities were alter egos of the debtor, and, "[u]nder the broad definition of estate property set forth in 11 U.S.C. § 541, the property of Dunhill, as Debtor's alter ego, should be treated as if it were in fact the property of Debtor's estate." *Id*.  The court concluded that, therefore, transfers made by the alter ego were transfers of property of the estate.  *Id*.

32.     In *In re Palmieri*, 651 B.R. 349 (Bankr. N.D. Ill. 2023), the trustee brought a fraudulent transfer claim asserting that a certain property was fraudulently transferred by the debtor.  The defendants filed a motion to dismiss, arguing that the transfer was actually made by a non-debtor entity.  *Id*. at 357.  The court rejected this argument, noting that the defendants "seem to ignore the crux of the complaint." *Id*.  This was because the trustee alleged that the non-debtor entity that made the transfer was the debtor's alter ego "and that, as such, the [property] never left the bankruptcy estate." *Id*.  The court ultimately denied the motion to dismiss, holding the alleged facts were sufficient to state a claim.  The court concluded by explaining that "[i]f the Court ultimately finds in favor of the Trustee on his claim, the inescapable conclusion will be that the Debtor owned the [Property] when it was transferred to

16

[the alleged alter ego] and that, as such, the property was a part of the bankruptcy estate at that time." *Id.* at 358.

33.    *In re Adler*, 494 B.R. 43 (Bankr. E.D.N.Y. 2013) also addressed the consequences of an alter ego ruling.  In that case, the bankruptcy court issued a "Decision after Trial" to determine "the consequences of the Court's earlier determination that the Corporations are, and in fact always were, the Debtor's alter egos." *Id.* at 53.  The court identified two consequences. First, because "the Debtor and the alter ego Corporations were at all relevant times one and the same entity," the automatic stay applied. *Id*.  Second, the court addressed the application of the debtor's disclosure requirements under the Bankruptcy Code in light of the alter ego ruling:

> [A]s a result of the alter ego finding, the Debtor's failure to disclose information regarding the assets and transactions of the Corporations was simultaneously a failure to disclose the assets and transactions of the Debtor.  By definition, an alter ego corporation possesses no independent volition.  Consequently, since the Debtor's Corporations were found to have been such prepetition alter egos, the Debtor always remained inseparable from those five corporate fictions.  ***The actions and property of the Corporations were thus the actions and property of the Debtor***, and it was incumbent upon the Debtor to disclose details regarding the Corporations' conduct, assets, and records in his individual bankruptcy case.  ***When he failed to do this and instead concealed the Corporations' assets, the Debtor improperly "concealed" his own assets***….

*In re Adler*, 494 B.R. at 53 (emphasis added).[16]

34.    Notably, none of these cases (*Adler, Palmieri, Deckelbaum, Blatstein, 10th Avenue, Star Mountain*, and *Yerushalmi*) makes any reference to any potential distinction between the identity and vicarious liability theories of alter ego law under the relevant state law applied by those courts.  Instead, the consequence of an alter ego determination is to bring the

---

[16]    The Joint Defendants cite to *Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contracting of N.Y., LLC*, 536 B.R. 48, 51 (Bankr. E.D.N.Y. 2015), which disagreed with *Adler* and held that the automatic stay did not apply to an alter ego because the alter ego did not become a debtor.  But *Pavers* does not cite section 541 or 542 of the Bankruptcy Code, does not cite any authority for its ruling, and does not address the significant body of case law to the contrary.

assets of the alter ego into the estate as a matter of bankruptcy law, regardless of the label attached to the property by state law.

35.    This absence of any such discussion is particularly pronounced in the rulings related to the Supreme Court's opinion in *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668, 135 S. Ct. 1932, 1938, 191 L. Ed. 2d 911 (2015). In that case, the debtor, Sharif, was liable to Wellness for a large, prepetition, judgment. When Sharif filed for bankruptcy, Wellness commenced an adversary proceeding, count V of which "sought a declaratory judgment that [a certain trust] was Sharif's alter ego and that its assets should therefore be treated as part of Sharif's bankruptcy estate." *Wellness*, 575 U.S. at 672. The bankruptcy court "declared, as requested by count V of Wellness' complaint, that the assets supposedly held by the Trust were in fact property of Sharif's bankruptcy estate." *Id*.[17]

36.    In sum, courts have treated the consequence of an alter ego ruling as one made under bankruptcy law, for which they routinely invoke sections 541 and 542 of the Bankruptcy Code. Persuasive Supreme Court authority supports this view. To the extent that the Joint Defendants have identified non-binding, out of circuit, authority holding otherwise,[18] the Trustee respectfully submits that the Court should decline to follow those rulings.

---

[17]    The defendant in *Wellness* appealed the issue of the bankruptcy court's jurisdiction to issue a final judgment in the adversary proceeding, and that appeal eventually went to the Supreme Court. Although the majority in *Wellness* declined to address the bankruptcy court's jurisdiction to resolve alter ego claims, Chief Justice Roberts (who had authored the majority opinion in *Stern v. Marshall*, 564 U.S. 462, 499, 131 S. Ct. 2594, 2618, 180 L. Ed. 2d 475 (2011), authored a dissent that directly addressed that question. According to the Chief Justice, "[d]efining what constitutes the estate is the necessary starting point of every bankruptcy; a court cannot divide up the estate without first knowing what's in it." *Id*. at 691-92. "Identifying the property of the estate," he wrote, "is therefore inescapably central to the restructuring of the debtor-creditor relationship." *Id*. at 692. In other words, what qualifies as property of the estate under section 541 is not simply a bankruptcy issue. It is the core issue of every bankruptcy case and stems directly from the bankruptcy itself. Certainly, then, the question of whether an alter ego determination results in assets becoming property of the estate is a federal question.

[18]    The Joint Defendants rely heavily on the Sixth Circuit's unpublished decision in *In re Howland*, 674 F. App'x 482 (6th Cir. 2017) and subsequent cases from within that circuit (*In re DuMouchelle*, 2023 8100234 and *In re Silver*, 647 B.R. 897 (Bankr. E.D. Mich. 2022), as well as two cases from the Bankruptcy Appellate Panel for

18

**b.  Delaware Does Not Follow Vicarious Liability Theory of Alter Ego Law**

37.     Even if state law, not bankruptcy law, controls the question of whether the Alter

Ego Entities' assets are property of the estate, the Joint Defendants are wrong that Delaware law

rigidly follows the vicarious liability approach.  Case law proves otherwise.

38.     For example, in *In re Palmieri*, discussed above, the trustee sought to avoid a

transfer made by an entity that was, nominally, a non-debtor.  The court denied the defendants'

motion to dismiss, holding that if the trustee could successfully prove reverse veil piercing, the

"inescapable conclusion [would] be" that the debtor owned the assets of the non-debtor.

*Palmieri*, 651 B.R. at 358.  Critically, the court specified that because the nominal non-debtor

entity was a Delaware entity, "Delaware law govern[ed] whether reverse veil-piercing is

appropriate." *Id.* at 357.  The court's ruling is consistent with the Trustee's position that once a

bankruptcy court determines that the two entities at issue have the characteristics of alter ego

under state law, the question of "property of the estate" is a bankruptcy law issue.  Alternatively,

it is also consistent with the Trustee's position that, even if state law controls, Delaware law does

not strictly follow the vicarious liability theory of alter ego law.

39.     Moreover, contrary to the Joint Defendants' arguments, *Spring Real Est., LLC v.*

*Echo/RT Holdings, LLC*, No. CV 7994-VCN, 2016 WL 769586, at *2 (Del. Ch. Feb. 18, 2016),

also applies Delaware law.  In that case, the trustee sought to avoid a transfer made by one of the

debtor's wholly owned subsidiaries; the trustee brought two claims: one under Delaware's

fraudulent transfer statute, the second under Illinois' fraudulent transfer statute. *Id.* at *2.  The

---

the Ninth Circuit, *In re RS Air, LLC*, 651 B.R. 538 and *In re Wardle*, No. ADV.S-03-01467, 2006 WL 6811026 (B.A.P. 9th Cir. Jan. 31, 2006).  As noted above, the Joint Defendants also cite to *Pavers & Rd. Builders*, 536 B.R. 48, which, while in the Second Circuit, is not binding on this Court.  To the extent these cases adopt the rigid distinction proposed by the Joint Defendants and hold that this state law issue overrides the federal question of "what is property of the estate under section 541 of the Bankruptcy Code," the Trustee respectfully submits that they are wrongly decided.

court held that, under principles of corporate separateness, the debtor owned the subsidiary but did not own its assets, precluding the fraudulent transfer claims. *Id.* at *3.  The court explained that there is "[o]ne exception" to this rule: "where the subsidiary is a mere alter ego of the parent to the extent that the Court may engage in 'reverse veil-veil piercing,' the Court may treat the assets of the subsidiary as those of the parent for purposes of a trustee's standing to void allegedly fraudulent transfers of such assets." *Id*.

40.     To support this proposition, the court cited *In re Am. Int'l Refinery*, 402 B.R. 728, 741 (Bankr. W.D. La. 2008) ("*American International Refinery*").  The Joint Defendants assert that because *American International Refinery* applied Nevada law, *Spring Real Estate* is not authority for Delaware law.[19]  This borders on the absurd.  As noted, *Spring Real Estate* decided claims brought under Delaware and Illinois law; Nevada law had no relevance.[20]  Furthermore, the *Spring Real Estate* court denied the trustee's claims because the trustee did not allege that the subsidiary was the debtor's alter ego and, thus, failed to even invoke the "one exception" to corporate separateness that could have rescued its claims.  In support of this conclusion, the court specifically cited "***Delaware*** public policy," which "does not lightly disregard the separate legal existence of corporations."  *Id.* at *3, n.35 (emphasis added).  Accordingly, even a cursory reading of the opinion demonstrates that the court cited *American International Refinery* to support a proposition that the court believe existed under Delaware and Illinois law—***not*** because the decision involved principles of Nevada law.

41.     To be sure, *American International Refinery* also supports the Trustee's position.  The Joint Defendants correctly note that *American International Refinery* (i) applied Nevada law

---

[19]   *See* Joint Mot. at 15.

[20]   Indeed, the word "Nevada" does not even appear in the opinion.

and (ii) expanded the estate to include assets owned by an alter ego.  But the court also explained

that its "result is consistent with a recent decision in the ASARCO bankruptcy case."  *Am. Int'l*

*Refinery*, 402 B.R. at 746.  *ASARCO*, explained *the American Internal Refinery* court, held that

"if SPH was ASARCO's alter ego, then, ***under Delaware law***, SPH's holding of SPCC stock

was 'an interest of ASARCO in property under state law,' and ASARCO could challenge the

transfer under section 548."  *Id.* at 746 (emphasis added).  If, as the Joint Defendants contend,

(i) state law controls, (ii) Delaware law strictly follows the vicarious liability theory, and

(iii) Nevada law strictly follows the identity theory, then the court's citation to *ASARCO* makes

no sense, as it would shed no light on Nevada law, which (according to the Joint Defendants)

controlled the outcome in *American International Refinery*.[21]  Clearly, then, *American*

*International Refinery* holds that Delaware law and Nevada law both follow the identity theory

of alter ego law.[22]

42.     Lastly, the Joint Defendants cite *Manichaean* for the proposition that, "[a]t its

most basic level, reverse veil-piercing involves the imposition of liability on a business

organization for the liabilities of its owners."[23]  This, they claim, supports their contention that

---

[21]   The Joint Defendants concede that *ASARCO* supports Delaware's adoption of the identity theory but seem to
suggest that *ASARCO* was wrongly decided, as was the Delaware Supreme Court authority on which it relied.
*ASARCO* relied on *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629 (Del. Ch. 1968), in which the
Delaware Supreme Court held there is "of course, no doubt that upon a proper showing corporate entities as
between parent and subsidiary may be disregarded and the ultimate party in interest, the parent, be regarded in
law and fact ***as the sole party*** in a particular transaction."  *Id.* at 633 (emphasis added); *see also id.* (holding that
there was "no showing" in the record to "disregard corporate entities and ***treat the two separate corporations as***
***one***") (emphasis added).  Nonetheless, the Joint Defendants argue that this "identity theory language does not
derive from the law cited in *Pauley*."  Joint Mot. at 16.  In other words, the Joint Defendants ask this Court to
disagree not only with *ASARCO*, but also with the Delaware Supreme Court.  The Court should decline this
invitation.

[22]   *American International Refinery* is also consistent with the Trustee's position that whether an alter ego's assets
are property of the estate is a question of federal law, regardless of the theory adopted by state law underlying
the alter ego determination.

[23]   Joint Mot. at 13.

21

Delaware law applies the vicarious liability theory of alter ego law. But the Joint Defendants conveniently leave out the crucial context provided by the very next sentence. In full, the *Manichaean* court said:

> At its most basic level, reverse veil-piercing involves the imposition of liability on a business organization for the liabilities of its owners. ***In the parent/subsidiary context, where the subsidiary is a mere alter ego of the parent the Court will <u>treat the assets of the subsidiary as those of the parent</u>.***

*Manichaean*, 251 A.3d at 710 (emphasis added) (as modified) (internal quotation marks and references omitted). It is clear, therefore, that under Delaware law reverse veil piercing imposes liability on the alter ego's owners—and does so by merging their assets into one.[24]

43.    In sum, the Joint Defendants argue that state alter ego law is rigidly divided between those states that adopt the identity theory of alter ego law and that those subscribe to the vicarious liability theory, and that Delaware is in the vicarious liability camp. But the case law demonstrates that, if anything,[25] Delaware adopts the identity theory.

### c.  <u>Court Has Already Rejected Joint Defendants' Illusory Distinction</u>

44.    Finally, the distinction the Joint Defendants propose has already been rejected by this Court. In the US Bank interpleader action, litigated between the Trustee and HK USA, with respect to funds placed by HK USA in escrow with US Bank, HK USA argued that the Court's alter ego ruling did not give the Trustee control over HK USA, but rather only "made HK USA's

---

[24]    *Manichean*'s statement that "the Court will treat the assets of the subsidiary as those of the parent," is a quote from *Spring Real Estate*, discussed at length above. *See* 251 A.3d at 710, n.85. The *Manichaean* court also explained that it was addressing "whether and to what extent courts of Delaware should allow so-called reverse veil-piercing" and that Delaware courts, including *Spring Real Estate*, had "yet to accept or deny the claim." 251 A.3d at 710, n.83. *Manichaean*, therefore, further demonstrates that (contrary to the Joint Defendants' arguments) *Spring Real Estate* was concerned with Delaware law.

[25]    Even if Delaware does not specifically follow the identity theory, it, at the very least, utilizes that theory in addition to the vicarious liability approach. And while some courts in other jurisdictions may focus on this distinction, the Joint Defendants cite no Delaware case that does so. In other words, Delaware either (i) follows the identity theory or (ii) does not recognize this distinction at all, and an alter ego determination under Delaware law can result in either merging of the entities' assets, imposition of liability, or both.

assets available to satisfy claims of [the Debtor's] creditors." In support of this argument, HK USA cited *RS Air, LLC v. NetJets Aviation, Inc. (In re RS Air, LLC)*, 651 B.R. 538, 545 (B.A.P. 9th Cir. 2023)–which is also cited by the Joint Defendants.[26]

45. The Court, though, rejected this argument, specifically explaining that (contrary to HK USA's argument), the Court's ruling that HK USA was the Debtor's alter ego specifically held that "all property of HK USA at all relevant times to the present …constituted and constitute, as applicable, property of the [] Debtor's Chapter 11 estate."[27]

46. The Joint Defendants' argument, relying on the same theory and the same caselaw, should be rejected here as well.

## IV. Trustee Is Not Seeking, And Does Not Need, *Nunc Pro Tunc* Relief, As Debtor Always Owned Assets of Alter Ego Entities

47. The Joint Defendants argue that even if "Delaware employed the identity theory of veil-piercing, the Trustee's section 549 claims still fail as a matter of law because such substantive relief cannot be provided on a retroactive or *nunc pro tunc* basis."[28] They further argue that an alter ego ruling can be given effect only after the court's "order or judgment disregarding the corporate form of" the debtor's alter ego.[29] The law is to the contrary. As numerous courts have held, an alter ego ruling gives effect to the existing legal reality that the entity in question is, ***and has always been***, indistinguishable from another person or entity, notwithstanding its nominal separateness. Utilizing this principle, courts have permitted

---

[26] *See HK International Funds Investments (USA) Limited, LLC's Memorandum in Opposition to Chapter 11 Trustee's Motion for Summary Judgment*, ¶ 18 (Adv. Proc. No. 23-05012, July 6, 2023) [Docket No. 47].

[27] *See Memorandum of Decision and Order Granting Motion for Summary Judgment*, ¶¶ 16-17 (Adv. Proc. No. 23-05012, Sept. 7, 2023) [Docket No. 57].

[28] Joint Mot. at 20. The Joint Defendants make the same argument with respect to the Trustee's fraudulent transfer claims. *See id.* at 29-30.

[29] *Id.* at 21.

fraudulent and post-petition transfer claims to proceed following an alter ego ruling, without first finding that the ruling applied on a *nunc pro tunc* basis.

48.     For example, in *In re Harman*, 512 B.R. 321 (Bankr. N.D. Ga. 2014), the trustee sought to recover postpetition transfers made by a non-debtor trust.  The court observed that, because the trustee adequately alleged "that the Trust assets are, in fact, Debtor's assets, [the] Trustee has properly alleged that assets of the Trust on the petition date became property of the estate."  *Id.* at 342-43.  Combined with the fact that "[n]o postpetition transfers of property [had] been authorized, whether from the Trust or otherwise," the court held that the trustee had adequately "pleaded that any post-petition transfers of property from the Trust are avoidable under §549(a)."  *Id.* at 343.  The court did not need to issue its ruling *nunc pro tunc*.

49.     *American International Refinery* is also directly on point, and applies to both section 549 claims and fraudulent transfer claims.  There, the court held that assets of an alter ego are treated as property of the debtor.  The Joint Defendants acknowledge as much, but argue that *American International Refinery* "explicitly applied Nevada law, which follows the identity theory."[30]  As discussed above, *American International Refinery* supports the Trustee, not the Joint Defendants.  Regardless, the Joint Defendants must also concede that *American International Refinery* held that, as a matter of law, the trustee's alter ego claims (if successful) would also support his avoidance actions.  *See In re Am. Int'l Refinery*, 402 B.R. at 752 (alter ego claim was "threshold requirement for [plaintiffs'] claims under sections 547-549").

50.     Similarly, *In re Palmieri*, discussed above, allowed the trustee to move forward with his fraudulent transfer claims based on alter ego allegations brought under Delaware law.  In that case, the debtor had transferred the subject property to the alleged alter ego in September

---

[30]    Joint Mot. at 15.

24

2005; the property was then transferred again in July 2014.  When, years later, the debtor filed for bankruptcy in 2021 and the trustee sought to recover the property, the defendants argued that the 2014 transfer was not a transfer of property of the estate.  Nonetheless, the court concluded that the trustee had sufficiently alleged that the non-debtor transferring entity that received the property in 2005 was, in fact, the debtor's alter ego.  Therefore, the debtor owned the property between 2005 and 2014 and, "as such, the property was a part of the bankruptcy estate *at that time*." *In re Palmieri*, 651 B.R. at 358 (emphasis added).

51.     *In re Fisher*, 296 Fed. App'x 494 (6th Cir. 2008), also involved the avoidance of transfers made by a non-debtor later adjudged to be an alter ego.  There, the individual debtor filed his petition in April of 2003, and the trustee sought to avoid the January 2003 transfer of certain inventory from the debtor's alleged alter ego.  The "bankruptcy court found that because Fisher and FDP were the same entity, FDP's inventory belonged to Fisher such that the transfer to Brennan was a transfer of an interest in property of the debtor." *Id.* at 506.[31]  *See also Deckelbaum*, 275 B.R at 742 (transfers made prior to alter ego ruling were avoidable).

52.     The Joint Defendants do not cite a single case (and the Trustee is not aware of any) in which the court found that an alter ego's assets belonged to the debtor but, nevertheless, precluded the trustee from avoiding prior transfers of such assets.

53.     The Joint Defendants rely heavily on *In re Duckworth*, No. 10-83603, 2012 WL 4434681 (Bankr. C.D. Ill. Sept. 24, 2012),[32] which denied the trustee's "creative attempt to use the alter ego doctrine to entirely reconfigure the factual landscape." *Id.* at *5.  But that case does not support the Joint Defendants.  The *Duckworth* court rejected the trustee's alter ego argument

---

[31]   *Fisher* also supports the Trustee's position that an alter ego determination results in a merger of the two entities and their assets.

[32]   *See* Joint Mot. at 28.

because the entities at issue "were all properly created under state law and validly existing as separate entities" and the trustee did "not contend otherwise" *id.* at *4; the trustee's theory, therefore, was not provable "in the context of the undisputed facts" present in *Duckworth*. *Id.* In other words, the court held that the trustee had failed to substantiate his alter ego allegations. The court did not, however, hold that an alter ego determination cannot, as a matter of law, support avoidance actions like those at issue here. Just the opposite, the court held that "***[i]f the existence of the three entities is recognized***, then the transfer of funds from the Debtor occurred prepetition—no postpetition transfer of property of the estate would be at issue and section 549 would be inapplicable." *Id.* (emphasis added). The contrapositive is obvious: if the three entities had truly all been one then there would have been postpetition transfers.

54.      The Joint Defendants' reliance on *Duckworth* is flawed for another, more fundamental, reason. The court emphasized that, at "the time of the transfers, a separate corporate entity existed and that is the entity that made" the challenged transfers, and the trustee was attempting to use the alter ego doctrine "to recreate a different set facts, to rewrite history so to speak." *Id.* at *8. This commentary makes sense in the context of that case where, as discussed, the "undisputed facts" did not support the trustee's alter ego allegations. But that is precisely why an alter ego determination would support the Trustee's claims here. As the court explained in *In re Adler*, an alter ego ruling means that the pierced entities "are, ***and in fact always were***, the Debtor's alter egos." *Adler*, 494 B.R. at 53 (emphasis added). While the trustee in *Duckworth* relied on "bare" alter ego allegations to try to rewrite history, a true alter ego determination does exactly the opposite: it looks behind the veil to ensure that the present is consistent with the truth as it always was. Indeed, this Court has aptly observed as much, noting

that if (for instance) a court determines in 2017 that a contract was breached in 2015 "that's not *nunc pro tunc*; that's the Court found that that [is what] happened."[33]

55.    This is also why the Joint Defendants are incorrect that retroactive application of an alter ego determination qualifies as *nunc pro tunc* relief.[34]  "All *nunc pro tunc* relief, by its nature, engages in a legal fiction."  *In re Player's Poker Club, Inc.*, 636 B.R. 811, 829 n.9 (Bankr. C.D. Cal. 2022).  But an alter ego determination is not a legal fiction.  Just the opposite, it is a doctrine designed to effectuate a legal truth: that the pierced entity is, **and always was**, indistinguishable from the dominant entity or person.  The alter ego doctrine does not **create** a legal fiction; it **undoes** a legal fiction.  *See In re Autobacs Strauss, Inc.*, 473 B.R. 525, 555 (Bankr. D. Del. 2012) ("A subsidiary is an alter ego or instrumentality of a parent entity when the separate corporate identities are a fiction and the subsidiary is, in fact, being operated as a department of the parent.") (internal quotation marks and references omitted) (as modified); *see also In re Adler*, 494 B.R. at 53 ("By definition, an alter ego corporation possesses no independent volition.  Consequently, since the Debtors' Corporations were found to have been such prepetition alter egos, the Debtor **always** remained inseparable from those five corporate fictions.") (emphasis added).  By contrast, implementing an alter ego determination only on a go-forward basis would undermine the nature and purpose of the doctrine by allowing a fiction to

---

[33]    Sept. 24, 2024 Hr'g Tr., at 29:6-7.  A copy of the relevant excerpts of the September 24, 2024 Hearing Transcript is attached hereto as **Exhibit 2**.

[34]    The Joint Defendants spend almost eight pages discussing the circumstances under which *nunc pro tunc* relief may, and may not, be utilized, including the Supreme Court's ruling in *Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. 57 (2020).  *See* Joint Mot. at 25-27.  This entire discussion is irrelevant, as the Trustee is not seeking *nunc pro tunc* relief.  The Trustee has, in the past, argued that he is entitled to *nunc pro tunc* relief if necessary.  For all the reasons discussed herein, however, the Trustee does not need *nunc pro tunc* relief to assert these avoidance actions because the Court's alter ego findings necessarily have retroactive effect.  In any event, even if it were necessary for the Court to issue *nunc pro tunc* relief, it is appropriate in this case because it would not create new facts; rather, the record would be corrected to reflect the events that actually existed, as discussed herein.  *See Acevedo Feliciano*, 589 U.S. at 65 ("Federal courts may issue *nunc pro tunc* orders, . . . to 'reflect the reality' of what has already occurred[.]").

remain.  *See In re Schuster*, 132 B.R. 604, 612 (Bankr. D. Minn. 1991) (failure to apply alter ego

doctrine where warranted would allow debtor "to shelter a past transfer of personal resources

into an artificial entity," which would "allow[] a legal fiction—the facade of the family

corporation—to triumph over substance").

56.      Likely because they cannot challenge this truth, the Joint Defendants resort to

subterfuge.  First, they argue that "the nature of the alter ego relief sought by the Trustee is akin

to the equitable remedy of substantive consolidation."[35]  They then point to cases addressing

whether a substantive consolidation ruling should be applied on a *nunc pro tunc* basis.  But this

is a bait and switch, designed to attack a strawman argument.  Alter ego and substantive

consolidation may be similar, but they are not the same nor are they governed by the same legal

standards, and the Trustee has not asserted substantive consolidation.[36]  *See Star Mountain Res.,*

*Inc.*, 2022 WL 2294175, at *7 ("While the factors underlying a claim for substantive

consolidation and a claim for alter ego often overlap, substantive consolidation is distinguishable

from state law alter ego claims.").  "Substantive consolidation is better thought of as an

economic remedy, the primary goal being the equitable treatment of all creditors.  Conversely, a

state law alter ego claim is an equitable remedy focused on preventing fraud or injustice."  *Id.*

(footnotes and internal quotation marks omitted).  Thus, although courts often discuss whether to

apply substantive consolidation on a *nunc pro tunc* basis, the same inquiry is not necessary for an

alter ego claim, which, as demonstrated above, necessarily has retroactive effect.

---

[35]   Joint Mot. at 21.

[36]   Nor, as discussed above, has the Trustee sought *nunc pro tunc* relief.  Separately, and for the avoidance of doubt, the Trustee does not concede that substantive consolidation (or relief "akin" to substantive consolidation) cannot be given *nunc pro tunc* effect.  *See, e.g.*, *In re Am. Way Serv. Corp.*, 229 B.R. 496, 526 (Bankr. S.D. Fla. 1999) ("A review of the consolidation orders convinces this judge that Judge Ray, in addition to consolidating the estates, intended that the consolidation would have *nunc pro tunc* effect.").  The Trustee reserves all rights in that regard.

57.     For all these reasons, the Trustee has readily alleged viable alter ego claims under applicable law, and the effect of a ruling in his favor on those claims is to permit the Trustee to avoid past transfers by the alter egos.  Accordingly, the Joint Motion must be denied.

[*Remainder of page intentionally left blank.*]

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court deny the Joint Motion and grant any other relief as the Court considers proper.

Dated:    November 8, 2024          LUC A. DESPINS,
          New York, New York        CHAPTER 11 TRUSTEE

                                    By: */s/ Douglass Barron*
                                        Douglass Barron (admitted *pro hac vice*)
                                        PAUL HASTINGS LLP
                                        200 Park Avenue
                                        New York, New York 10166
                                        (212) 318-6079
                                        douglassbarron@paulhastings.com

                                            *and*

                                        Nicholas A. Bassett (admitted *pro hac vice*)
                                        PAUL HASTINGS LLP
                                        2050 M Street NW
                                        Washington, D.C., 20036
                                        (202) 551-1902
                                        nicholasbassett@paulhastings.com

                                            *and*

                                        Patrick R. Linsey (ct29437)
                                        NEUBERT, PEPE & MONTEITH, P.C.
                                        195 Church Street, 13th Floor
                                        New Haven, Connecticut 06510
                                        (203) 781-2847
                                        plinsey@npmlaw.com

                                        *Counsel for the Chapter 11 Trustee*