```
 1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF CONNECTICUT
 2                         BRIDGEPORT DIVISION

 3   IN RE:                      .   Chapter 11
                                 .   Case No. 22-50073 (JAM)
 4   HO WAN KWOK, et al.,        .
                                 .   (Jointly Administered)
 5                               .
                                 .
 6         Debtors.             .   Courtroom 123
                                 .   Brien McMahon Federal Building
 7                               .   915 Lafayette Boulevard
                                 .   Bridgeport, Connecticut 06604
 8                               .
                                 .   Wednesday, November 6, 2024
 9   . . . . . . . . . . . . . . .   1:09 p.m.

10                        TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE JULIE A. MANNING
11                   UNITED STATES BANKRUPTCY JUDGE

12   APPEARANCES:

13   For the Chapter 11
     Trustee:                   Luc A. Despins, Esquire
14                              PAUL HASTINGS, LLP
                                200 Park Avenue
15                              New York, New York 10166

16                              - and -

17                              Nicholas A. Bassett, Esquire
                                PAUL HASTINGS, LLP
18                              2050 M Street, NW
                                Washington, DC 20036
19
     (APPEARANCES CONTINUED)
20
     Audio Operator:            Electronically recorded
21
     Transcription Company:     Reliable
22                              The Nemours Building
                                1007 N. Orange Street, Suite 110
23                              Wilmington, Delaware 19801
                                Telephone: (302)654-8080
24                              Email:  gmatthews@reliable-co.com

25   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
```

<u>APPEARANCES</u>:

For G Club
Operations, LLC and G
Club International, LLC: Jeffrey M. Sklarz, Esquire
                        GREEN & SKLARZ, LLC
                        One Audubon Street
                        3rd Floor
                        New Haven, Connecticut 06511

For Creditor Pax:       Annecca H. Smith, Esquire
                        ROBINSON&COLE LLP
                        One State Street
                        Hartford, Connecticut 06103

1                              INDEX

2   <u>MOTIONS</u>:                                        <u>PAGE</u>

3   Matter
    No. 3752   Motion to Quash Trustee's Rule 2004           4
4              Examination Subpoena Filed by Jeffrey M.
               Sklarz on behalf of G Club Operations,
5              LLC, Interested Party

6

7

8

9
    Transcriptionist's Certificate                          43
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings commenced at 1:09 p.m.)

2            THE COURT:  Good afternoon.  We have one matter on

3   the calendar at 1:00 p.m., so I ask the courtroom deputy to

4   please call the calendar.

5            THE CLERK:  Case Number 22-50073, Ho Wan Kwok.

6            THE COURT:  Okay, good afternoon.  If we could

7   have appearances for the record, starting with the Chapter 11

8   Trustee, please?

9            MR. DESPINS:  Good afternoon, Your Honor, Luc

10  Despins, Chapter 11 Trustee.

11           THE COURT:  Good afternoon.

12           MR. BASSETT:  And good -- sorry, Your Honor --

13  good afternoon, Your Honor, Nick Bassett from Paul Hastings

14  on behalf of the Chapter 11 Trustee.

15           THE COURT:  Good afternoon.

16           MR. SKLARZ:  And good afternoon, Your Honor,

17  Jeffrey Sklarz for G Club Operations, LLC.

18           THE COURT:  Good afternoon.

19           MS. SMITH:  Good afternoon, Your Honor, Annecca

20  Smith of Robinson&Cole on behalf of creditor PAX, just

21  anticipating (indiscernible) today.

22           THE COURT:  Thank you.  Good afternoon.

23           All right, on the calendar today then is the

24  motion to quash filed by G Club, Attorney Sklarz, and then

25  the opposition from the trustee.

1          I know there were some discussions, I don't know

2   if it was about the substance of the motion to quash, but do

3   the parties have anything to report on where things stand as

4   of today?

5          MR. SKLARZ:  Yes, Your Honor.  We have not

6   resolved this matter.  Attorney Bassett and myself, as well

7   as our colleagues, have had several phone conversations,

8   exchanged numerous emails, in an attempt to narrow the

9   dispute, I think we have narrowed the dispute considerably.

10  We've discussed logistics should I not prevail on the motion

11  to quash.

12         So I think we've done our best to streamline the

13  process and try and reach a resolution.  Unfortunately, I

14  don't think -- we made a proposal, which I'll go through,

15  which I still think is appropriate, to respond to certain

16  inquiries in a non-deposition fashion, but I believe the

17  trustee does believe they need a deposition and is entitled

18  to a deposition, and we respectfully disagree.

19         So we have had significant discussions and tried

20  to resolve this, and have narrowed the scope of the dispute.

21         THE COURT:  So how has it been narrowed if the

22  trustee would like to take a deposition and you don't believe

23  that a deposition should be taken?  I just don't know what

24  you're saying, so you need to enlighten me.

25         MR. SKLARZ:  I can clarify.  So I believe, and

1   Attorney Bassett can correct me if I'm wrong, that we've

2   talked about the topics.  G Club believes the topics are too

3   broad, the trustee, in discussions back and forth, has agreed

4   to truncate those topics.  We've proposed to respond to

5   certain of those topics in writing under oath and provide

6   documents, which we believe would be sufficient to give them

7   the information they need, which arguably could be 2004 exam

8   in nature.  The trustee believes they should be able to

9   obtain -- take a deposition to ask follow-up questions and

10  further inquiry, I believe -- and, again, I can go into this

11  more substantively -- that those discussions, that

12  questioning is more akin to a deposition in one of the myriad

13  adversary proceedings related to G Club.

14          So we think the pending -- we think we can get the

15  trustee the information that is focused on what they say they

16  need without going beyond the scope -- without the need for a

17  deposition.

18          MR. BASSETT:  Your Honor, we can --

19          THE COURT:  Attorney Bassett?

20          MR. BASSETT:  Yes, Your Honor, we can obviously

21  get into a discussion of the arguments, including Attorney

22  Sklarz's position and G Club's position as to whether or not

23  a 2004 deposition is appropriate in light of pending

24  adversary proceedings.  I'll put that to the side for the

25  moment and just try to address the Court's question about to

1  what extent has the dispute been narrowed.

2          From our perspective, based on the discussions

3  that have occurred, as the Court knows from Attorney Sklarz's

4  opposition and I believe the motion to expedite associated

5  with that, we have agreed at least on a deposition date, to

6  the extent it goes forward, of November 20th.  Attorney

7  Sklarz and I have also discussed logistics, as he mentioned,

8  which would resolve one of the issues that he's raised in his

9  objection, which is, you know, the location of the

10 deposition, where it would occur.  We had indicated that we

11 are prepared, if necessary, to go to the deponent, but I

12 think for the convenience of all the parties we would agree,

13 subject to ironing out all the appropriate logistics, to do

14 that deposition remotely.  So I think that's, you know, an

15 issue that's been taken off the table, at least in terms of

16 the objection.

17         And then, as Attorney Sklarz stated, it really

18 comes down to from there whether a deposition will occur and,

19 if so, on what topics.  We think a deposition is absolutely

20 necessary; we can get into all the reasons for that, whatever

21 the Court like.

22         In terms of narrowing the proposed topics, that's

23 set out in our response to the opposition.  Basically, there

24 are five topics, and we've agreed to further limit them -- we

25 think they're already narrow, but basically a couple of the

1   objections of G Club were, one, the topics could be read to

2   allow us to ask questions about any G Club affiliates, which

3   I think, in attorney Attorney Sklarz's view, could extend to,

4   you know, many, many different entities, and we clarified

5   that we're really looking to explore G Club and its direct

6   parent ownership structure, and then also to the extent that

7   we find out during questioning that there are other entities

8   that have some role or influence in directing the operations

9   of G Club, we would inquire about those entities, but we're

10  not trying to open up the deposition to all Kwok-related

11  entities generally.

12          And then we also agreed to be responsive to one of

13  the objections to limit our topics to issues, in terms of

14  timeline, from the petition date forward.  So we wouldn't be

15  exploring a lot of the prepetition relationship between G

16  Club and the debtor and others that is sort of more central

17  to the pending adversary proceedings.  We can get into all of

18  that in more detail, obviously, in the course of the hearing

19  today, but I just wanted to clarify for the Court from our

20  perspective what we see as the ways that the dispute has been

21  limited.  It's I think the logistics around where the

22  deposition will occur and when has been resolved and then

23  some narrowing of the topics, but we still have a dispute as

24  to whether a deposition will happen and whether the narrowed

25  topics are appropriate for a deposition.

1          THE COURT:  So what are you asking the Court to

2   do?

3          MR. BASSETT:  Well, Your Honor --

4          THE COURT:  Rule on whether or not the deposition

5   is going to go forward and what the topics are?

6          MR. BASSETT:  I'll leave that to Attorney Sklarz

7   because we're here on his motion to quash, but the trustee's

8   position certainly is that the motion to quash should be

9   denied, that the deposition should go forward remotely,

10  covering the topics as narrowed by the trustee in the way

11  that I just described.  That's the trustee's position and I

12  think, as long as G Club's motion to quash is out there, that

13  motion to quash would be denied -- or would need to be denied

14  because the relief that motion is seeking obviously is to

15  prevent the deposition from going forward all together.

16         THE COURT:  Okay.  Attorney Sklarz?

17         MR. SKLARZ:  That's correct, we're asking that the

18  Court grant our motion, preclude the deposition and, as we've

19  indicated, we will provide the information, which, again,

20  I'll go into more substantively, in writing, and if that

21  leads to further inquiry, perhaps that's appropriate.

22  However, again, our -- in our briefing, we explained our

23  positions, particularly under the pending action rule, that

24  this is really just an effort to obtain information relating

25  to those cases having to do with alter ego, fraudulent

1  transfer, and effectively understand the corporate governance

2  structure of G Club.

3       Again, there are three basic -- again, I don't

4  want to go too far into argument.  I want to make sure I'm

5  answering Your Honor's questions and I don't want to delve

6  too far, but -- so I'll pause there.

7       THE COURT:  So I'll start with the question I

8  asked at the beginning.  So how has this been narrowed?  The

9  only thing that's been narrowed is you've agreed to a date of

10  the deposition if the Court denies the motion to quash, and

11  you've agreed that what the topics will be, but you just

12  said, Attorney Sklarz, you want the motion to quash to be

13  granted.

14       So I still have to rule, is what you're telling me

15  and, unless I'm missing something, that's what I've just

16  heard.

17       MR. SKLARZ:  No, no, no, I think you're correct,

18  Your Honor, but we're proposing that we will provide in lieu

19  of the deposition this information.  So I suppose the motion

20  would be granted in part because we've made this offer --

21  Attorney Bassett has turned it down, but Your Honor may say,

22  hey, Jeff, you're being reasonable today and I'll limit it in

23  that manner, or you may say I'm --

24       THE COURT:  Well, I don't want to have another

25  hearing on a motion to quash, right?  So it's either you --

1   the motion is denied and the process -- the deposition date

2   goes forward with the topics and, in the interim, you supply

3   the information and then maybe you both agree that there's no

4   deposition, or the motion is granted and whatever happens.

5   But the problem is there have already been discovery issues

6   with G Club in this case, right?  We went through this before

7   with the counsel -- and I apologize, I can't remember her

8   name -- from New York who came in and argued for quite some

9   time about G Club and the issues related to the 2004 subpoena

10  -- is my recollection, by the way, so that doesn't mean I'm

11  correct.  So you can all correct me, but that's my

12  recollection.  And now we're at a point where the trustee is

13  asking, as part of a Rule 2004 examination and in connection

14  with documents that have already been produced --

15          MR. SKLARZ:  No --

16          THE COURT:  -- why do you say no?

17          MR. SKLARZ:  -- that's not -- because this is --

18  so, two things.  Number one, this is a deposition as part of

19  a 2004 exam on very limited -- on very specific -- on very

20  specific topics.  There is no topic related to anything that

21  G Club produced previously in discovery.  So that would be

22  number one.

23          Number two, I respectfully disagree that there

24  were problems with G Club and discovery.  We had discovery

25  disputes, we brought them before the Court, much of it

1  related to trying to get an independent fiduciary in the case

2  because of the nature -- because all of G Club's professional

3  staff resigned, and working that out.

4            THE COURT:  But didn't I --

5            MR. SKLARZ:  At no time --

6            THE COURT:  -- enter an order denying G Club's --

7  I mean, I remember -- you know, look, it doesn't really

8  matter.

9            MR. SKLARZ:  You ruled --

10            THE COURT:  My recollection is, though --

11            MR. SKLARZ:  -- in favor of the trustee, Your

12  Honor.

13            THE COURT:  -- there was an order entered that G

14  Club had to do something with regard to --

15            MR. SKLARZ:  Right.

16            THE COURT:  -- discovery that it was saying it

17  shouldn't need to do.

18            MR. SKLARZ:  And we complied with -- and we

19  complied with that order.

20            THE COURT:  Right, but after several hearings and

21  time going by and not reaching an agreement.  And, as you

22  know, this is a discovery dispute, so I don't need to issue

23  any kind of written opinion.  I could just say -- I could

24  just say granted or denied, it's a discovery dispute.

25            MR. SKLARZ:  I don't -- I'm not suggesting

1 | otherwise, Your Honor.

2 | The other thing that's changed significantly is

3 | the trustee has sued G Club at least three times and named

4 | them as a fraudulent transferor in a number of other

5 | lawsuits.  So this is not pre-litigation discovery anymore.

6 | We have to be --

7 | THE COURT:  Well, even if I agreed with you on

8 | that point, which I'm not saying I do or don't, but even if I

9 | agreed with you, so then they could depose you in that right

10 | now.  What would stop them from doing that and asking these

11 | questions?  Even if I agreed with you, which I'm not saying I

12 | do, but why couldn't they ask those questions in a notice of

13 | deposition and a subpoena in one of those adversary

14 | proceedings?

15 | MR. SKLARZ:  Well, most of those cases are stayed.

16 | THE COURT:  Well, that --

17 | MR. SKLARZ:  The only one --

18 | THE COURT:  -- well, that's the problem, right?

19 | So they're stayed.

20 | MR. SKLARZ:  Well, but --

21 | THE COURT:  So --

22 | MR. SKLARZ:  -- they're stayed, but --

23 | THE COURT:  -- but they're seeking discovery, to

24 | which the response is --

25 | MR. SKLARZ:  They're seeking --

1          THE COURT:  -- there's a prior --

2          MR. SKLARZ:  -- a 2004 examination --

3          THE COURT:  -- pending action, there's difficulty

4    and someone is -- someone is located in Puerto Rico.  My

5    reading is, the trustee said he'd go to Puerto Rico, so that

6    takes care of that.  The prior pending action issue, whether

7    or not I agree with it -- even if I agreed that there is one,

8    there's nothing that says he can't ask the same questions in

9    the deposition.  So we're not going to do the form-over-

10   substance issue, number two.  And number three is it's

11   discovery, it's broad, whether it's in a 2004 context or in

12   the context of the adversary proceeding.

13         You can't -- I think it's hard to argue that the

14   topics for which the information is sought, which my

15   understanding is who is in charge of G Club, where is it

16   located, who has the authority to make decisions on its

17   behalf -- isn't that what you're asking, Attorney Bassett?

18         MR. BASSETT:  That's, you know, in substance

19   correct, Your Honor.  And there's a lot of very important

20   context for the subpoena, which I know the Court is well

21   aware of, but one of the primary motivating reasons for it is

22   what I would call kind of the shift in the regime that we've

23   seen, you know, recently in light of the debtor's arrest,

24   conviction, and the fact that he is now incarcerated for the

25   foreseeable future.  We've seen all kinds of different

1   modifications in the way that entities associated with the

2   debtor are operating, we've seen some of them fold up the

3   tents; we've seen some of them apparently continue to take

4   directions from others.  There's the HCHK entities which all

5   of a sudden dropped their appeals and in the course of that,

6   in a hearing that occurred before Judge Dooley, there was an

7   indication that the person who had been directing the HCHK

8   entities was the former attorney of the debtor, Mr. Yan Bing

9   Zhang (ph), who's been sanctioned multiple times.  We have

10  the whole Taurus Fund (ph) fiasco with them suddenly refusing

11  to comply with court orders.  We've served another 2004

12  subpoena related to the fact that another one of the debtor's

13  former law firms appears to be directing Taurus Fund behind

14  the scenes, including working on its pleadings before this

15  Court.

16          We have all kinds of things that are happening not

17  transparently, not with notice to the trustee, and all of

18  that is incredibly important to our ongoing investigation.

19  We need to understand what is happening right now, who is in

20  control.  If the debtor is incarcerated and his number one

21  lieutenant Yvette Wang is incarcerated with him, who is

22  actually continuing to instruct entities who are litigating

23  before this Court?  Who are they talking to in this case?  To

24  the extent that this entity in the Cayman Islands is

25  nominally the person in charge of G Club, who appointed them?

1   What conversations took place around that appointment?  Who

2   was giving direction on a day-to-day basis?  What

3   conversation is the person at this organization having with

4   others?  How is G Club being funded?  How are the sources of

5   that funding related to G Club, how are they related to the

6   debtor?

7            All kinds of information exists that we need to

8   understand to figure out what other leads do we need to

9   pursue to find out where is this being -- where current

10  estate assets may be, so we can further pursue those leads to

11  find out what's happening.  Those are all the kinds of things

12  that we need to pursue.

13           So that's exactly -- I think what Your Honor

14  stated is exactly correct, but I just wanted to provide all

15  that context for why we served this subpoena at this time.

16  It's very, very important to us to get them.  We think it --

17  you know, the topics are narrow; they're just those that I

18  described.  We're not trying to re-litigate or to litigate in

19  this forum the entire relationship between the debtor and G

20  Club.  I acknowledge that a lot of that is going to be

21  litigated in the omnibus alter ego litigation, but the

22  information that we need right now is to figure out what

23  other estate assets might there be, what other connections to

24  the debtor do we need to explore, and that's time-sensitive

25  because, as we've seen in the past, information becomes stale

1  very quickly, things are moved around, and we need the

2  discovery for that reason, Your Honor.

3          MR. SKLARZ:  Your Honor, this is putting the cart

4  entirely before the horse and G Club has never acted in any

5  of those manners since certainly my firm and FFP have been

6  involved.

7          THE COURT:  And that may be true, Attorney Sklarz

8  --

9          MR. SKLARZ:  We think that's deeply --

10          THE COURT:  -- I'm not disagreeing with you --

11          MR. SKLARZ:  -- we think that's deeply, deeply

12  unfair.

13          THE COURT:  I'm sorry.  I'm not disagreeing with

14  you, but the one thing that -- I mean, there's a few things,

15  right?  I obviously don't know what is said in other

16  proceedings outside of this court unless someone brings them

17  to this Court, right?  And so apparently -- and it's

18  accurately described in a transcript in front of Judge Dooley

19  -- that Judge -- no, just hear me out, though, Attorney

20  Sklarz, I'm not saying this -- just hear me out, though,

21  okay?  That Attorney Shaban (ph) said -- well, I asked him

22  the same questions, by the way, Judge Dooley did, and he

23  never answered my questions, but he answered Judge Dooley's

24  questions about who he was taking direction from, and he

25  answered that he was taking direction from Yan Bing Zhang,

1  that's what he said to Judge Dooley.  When I asked him that

2  question, he wouldn't answer it.

3           But, in any event, he then said --

4           MR. SKLARZ:  I don't know who these people are.

5           THE COURT:  Well, yeah, we do, we all know who

6  they are.  So --

7           MR. SKLARZ:  No, no, no, I don't know who Young

8  Bang Zhang (ph) is other than --

9           THE COURT:  Well, you may not, but we do --

10          MR. SKLARZ:  -- what Attorney Bassett has said.

11          THE COURT:  -- you see?  And the trustee does, and

12  he's conducting his investigation.

13          And here's the other -- whether you know him or

14  not isn't relevant, it's your being -- your clients are

15  parties that have come before this Court, by the way, and in

16  the main case, aside from the adversaries, have asked for

17  relief.  And that's fine, you're entitled to do that, but the

18  trustee is --

19          MR. SKLARZ:  And we're asking for --

20          THE COURT:  -- also entitled to conduct discovery.

21          And the other thing that happened in front of

22  Judge Dooley that I find fascinating when I read this

23  transcript is that Attorney Shaban said that there was a

24  joint defense agreement with Attorney Pasteur and his

25  clients, and I asked those exact questions to those lawyers

1  in this courtroom and never was told those answers.  In fact

2  I was told, oh, we used to work together at a firm together,

3  but that's it.  That's what I was told.  Okay?

4          MR. SKLARZ:  I understand, Your Honor --

5          THE COURT:  And, look, I'm not -- you have to

6  understand something, Attorney Sklarz, I'm not saying you're

7  saying any of that.  I'm saying here's the job or role that I

8  have, right?  At least what I believe I've been told I'm

9  supposed to do in this position is rule on matters that come

10  before it and that impact the case as a whole, including the

11  trustee's investigation, and the reason that the trustee was

12  appointed in this case was to investigate the affairs of the

13  debtor.  G Club has been -- apparently, from what has been

14  put before this Court, been found to be part of a criminal

15  enterprise that the debtor has been found guilty of by a jury

16  of his peers.

17          MR. SKLARZ:  Your Honor, Your Honor, I understand

18  other things have occurred in this case.  In no proceeding

19  where my client has been a defendant have they been found

20  liable or guilty for anything --

21          THE COURT:  I didn't say that they did --

22          MR. SKLARZ:  -- period --

23          THE COURT:  -- they were, I didn't say that at

24  all.  I've never said that.  I was talking about the main

25  case, Attorney Sklarz.

1               MR. SKLARZ:  In the main -- in any, in any case,

2    the main case, in the adversary proceeding --

3               THE COURT:  No, I know that --

4               MR. SKLARZ:  -- the criminal proceeding --

5               THE COURT:  -- no, no, no --

6               MR. SKLARZ:  -- anything.

7               THE COURT:  -- don't get me wrong.  I never said

8    that your client was found guilty of anything.  I didn't say

9    your client was found guilty of anything, I said the debtor

10   was --

11              MR. SKLARZ:  They have been alleged --

12              THE COURT:  -- the debtor was --

13              MR. SKLARZ:  -- oh, I'm sorry, the debtor.

14              THE COURT:  -- well, no, it's more than

15   allegations in the criminal action because the criminal

16   action includes claims --

17              MR. SKLARZ:  Oh, the debtor was indicted in --

18   yes.

19              THE COURT:  So it's -- I'm not talking about --

20   the criminal jury verdict includes G Club as the process

21   through --

22              MR. SKLARZ:  It does not.

23              THE COURT:  Okay, all right.  Would you --

24              MR. SKLARZ:  It does not.  The criminal verdict --

25              THE COURT:  -- like me to read it to you?

1          MR. SKLARZ:  -- the criminal verdict --

2          THE COURT:  It says that --

3          MR. SKLARZ:  -- yes, the criminal verdict --

4          THE COURT:  -- it says that Kwok used G Club as a

5    way to defraud people and get money that was used to buy

6    different assets that weren't -- with their money that they

7    had no -- that's what it said, that's what the --

8          MR. SKLARZ:  But G Club is not -- they were not a

9    defendant to any criminal matter --

10          THE COURT:  I didn't say --

11          MR. SKLARZ:  -- there's not a preclusive effect --

12          THE COURT:  -- they were a defendant --

13          MR. SKLARZ:  -- on that --

14          THE COURT:  -- Mr. Sklarz, I've never said that.

15   I said that the jury found that Mr. Kwok used different

16   vehicles to commit crimes --

17          MR. SKLARZ:  Okay.

18          THE COURT:  -- and used different corporate

19   entities to commit crimes.  That's what the jury found.  I

20   didn't find it, the jury found it, right?

21          MR. SKLARZ:  And that -- and that certainly may be

22   predicate for Attorney Bassett and the trustee to sue G Club,

23   which they've done on several occasions.  What it doesn't

24   give them the ability to do is take this examination through

25   a 2004 process, which is entirely different than under Rule

```
 1   30.   If they want discovery in one of the various adversary

 2   proceedings, they should ask for it in the appropriate way.

 3              THE COURT:  Well, why don't we just do it this

 4   way?  Remember, I can cut form over substance.  I can deal --

 5   so we'll lift the stay in one of the adversary proceedings,

 6   and I will deem the Rule 2004 examination order and the

 7   subpoena to be a notice of deposition under the Federal Rules

 8   of Civil Procedure, and your client will make themselves

 9   available for a deposition on November 20, unless you produce

10   documents to Mr. Bassett that satisfies his questions prior

11   to that date.

12              MR. SKLARZ:  Obviously, we'll comply with Your

13   Honor's order, if that's the order.  So, just to be clear, if

14   Your Honor makes that order, we're proceeding under Rule 30

15   and Rule 26, not under Rule 24, and this --

16              THE COURT:  Well, I said I could do that because

17   what you're trying -- what you're saying --

18              MR. SKLARZ:  -- and this will be their one --

19              THE COURT:  -- I asked you initially what was the

20   agreement, and you both -- and you said we've made a lot of

21   progress, I don't see any progress other than agreement on a

22   date of a deposition and topics narrowed by the trustee's

23   counsel.  There's still -- you don't want me to -- you want

24   me to grant a motion to quash, the trustee wants me to deny

25   the motion, I don't see how that's progress.  There isn't an
```

1   agreement here, there's still a need for the Court to rule.

2   So if there's a need for the Court to rule, then I'll have to

3   rule and that's what I'll do.

4           MR. SKLARZ:  Understood, Your Honor.

5           THE COURT:  Attorney Bassett, in the -- you said

6   that you recite in the response the narrowing of the topics

7   that you would question the witness about?  Which, by the

8   way, who is --

9           MR. SKLARZ:  That's correct, Your Honor.

10           THE COURT:  -- the witness?

11           MR. SKLARZ:  The witness would be Andrew Childe,

12   who is an employee, an agent of FFP, which is the fiduciary

13   of G Club.

14           THE COURT:  And what's the authority --

15           MR. SKLARZ:  And to be clear, Your Honor --

16           THE COURT:  -- that Mr. Childe has as the

17   fiduciary of G Club?

18           MR. SKLARZ:  Consents and other corporate

19   documentation appointing FFP as the manager and director of G

20   Club, from using the proper corporate structure ultimately

21   executed by the ultimate beneficial owner of G Club.

22           THE COURT:  And he's going to disclose all that

23   information to the trustee?

24           MR. SKLARZ:  The trustee -- we have offered to

25   disclose that information to the trustee, all of that

1  documentation.

2          THE COURT:  All right.  Well, then I --

3          MR. SKLARZ:  And that's --

4          THE COURT:  -- this is what I'm going to do --

5          MR. SKLARZ:  -- and Mr. Childe is the only person

6  that I've ever taken instruction from, just to be clear.

7          THE COURT:  Mr. Childe, is that what you said?

8          MR. SKLARZ:  Mr. Childe, Mr. Childe, Andrew Childe

9  -- FFP is the director and manager, Mr. Childe is the

10  individual with whom I interface the most.  There's other

11  people at FFP who I do interface with, but that's -- FFP is

12  my client's representative.

13          THE COURT:  So who is FFP?  What does that stand

14  for?  I've never heard that before.

15          MR. SKLARZ:  FFP is the professional fiduciary,

16  like, you know, a restructuring adviser, like an

17  AlixPartners, they -- they're more offshore --

18          THE COURT:  So who appointed FFP to be that party?

19          MR. SKLARZ:  The ultimate beneficial owner of G

20  Club.

21          THE COURT:  And who is that?

22          MR. SKLARZ:  Horan He.

23          THE COURT:  Who?

24          MR. SKLARZ:  His name is Horan, H-o-r-a-n, He, H-

25  e.

 1                THE COURT:  Okay.  And where --

 2                MR. BASSETT:  And, Your Honor --

 3                THE COURT:  -- is Mr. He?

 4                MR. SKLARZ:  I have no idea.  I have no contact

 5  with him, he's not my client.  My client is G Club and FFP, I

 6  do not represent --

 7                THE COURT:  So does FFP --

 8                MR. SKLARZ:  -- Horan He.

 9                THE COURT:  -- have an agreement with Mr. He of

10  what its --

11                MR. SKLARZ:  Yes.

12                THE COURT:  -- authority is to act on behalf of G

13  Club?

14                MR. SKLARZ:  Yes, and that's what we've offered to

15  turn over to the trustee.

16                THE COURT:  And when was that entered into, when

17  was that agreement entered into?

18                MR. SKLARZ:  In June of 2023.

19                THE COURT:  But the trustee is looking from the

20  petition date forward.  So what happened before then?

21                MR. SKLARZ:  Before then, G Club had employees,

22  they all resigned.  That was the genesis of the problem we

23  had in 2023 before Your Honor.  Once Mr. Kwok was --

24                THE COURT:  Yeah, but isn't that a different

25  person -- I'm sorry, I cut you off, Attorney Sklarz.  My

1    recollection is the lawyer from New York, whose name I cannot

2    remember and I'm sorry --

3              MR. SKLARZ:  Attorney Forness, Carolina Forness.

4              THE COURT:  -- Yeah, Attorney Forness, didn't she

5    mention a different person than the person you just mentioned

6    as the head of -- that she was taking direction from?

7              MR. SKLARZ:  She was probably taking direction

8    from the general counsel of G Club before he resigned.  I

9    don't recall his name off the top of my head.  The general

10   counsel -- everybody at G Club resigned in -- and, again, I

11   don't have these dates committed to memory, but it was

12   approximately March of 2023, which is what caused the problem

13   in responding to discovery.  Until FFP was retained and

14   gotten in place on approximately June -- in June of 2023,

15   neither I nor Pillsbury had a client for all intents and

16   purposes --

17             THE COURT:  Okay, my -- again, I could --

18             MR. SKLARZ:  -- a client representative --

19             THE COURT:  -- be completely wrong on the

20   recollection, but I don't recall the name Mr. He before.  I

21   recall Attorney Forness speaking of another name, but I can't

22   tell you what it is, so I could be wrong.

23             MR. SKLARZ:  Mr. He is not an employee or

24   executive at G Club, he's the ultimate beneficial owner.

25             THE COURT:  Yeah, but he's the one who provided

1   the authority to your client, FFP, to act on --

2          MR. SKLARZ:  Correct.

3          THE COURT:  -- its behalf, right?

4          MR. SKLARZ:  Correct --

5          THE COURT:  Isn't that what you just said?

6          MR. SKLARZ:  -- but just -- it is, but just

7   because he provided the corporate authority doesn't mean he

8   was effectively acting as CEO of G Club at any time -- at any

9   time, let alone when it had professional management.

10         THE COURT:  Well, then --

11         MR. SKLARZ:  I don't --

12         THE COURT:  -- how did he have the authority to

13  give FFP the authority to act on its behalf?

14         MR. SKLARZ:  He's the ultimate beneficial owner.

15  It's like --

16         THE COURT:  Well, the shareholder doesn't get to

17  do that without the corporate authority.  Where is the

18  corporate authority?

19         MR. SKLARZ:  I'm --

20         THE COURT:  Isn't it a Puerto Rican --

21         MR. SKLARZ:  -- it's in the documentation --

22         THE COURT:  -- company?

23         MR. SKLARZ:  There's a Puerto Rican LLC that's

24  owned -- that's a sole owner is a BVI corporation, and then

25  there's additional companies above that.  That's all set

1  forth in the corporate disclosure statements we filed --

2         THE COURT:  Okay.

3         MR. SKLARZ:  -- and identified -- and there's --

4  Your Honor, I want to make clear because I feel like there's

5  a suggestion of hiding the ball here.  We're not hiding the

6  ball, we've been very clear.  I represent G Club; G Club is

7  managed by FFP.  FFP was appointed as the fiduciary of the

8  company because of everything that happened with Mr. Kwok.

9  So, regardless of what the trustee says about other

10 companies, G Club had customers, G Club had independent

11 assets, G Club provided goods and services to its customers,

12 and G Club had large operations, it had a bank account at

13 Banco Popular, it had other -- it had other relationships.

14        THE COURT:  So did HCHK, but they're gone, they've

15 evaporated, they've evaporated and they evaporated -- in

16 front of Judge Dooley they said that they evaporated.  I

17 thought that was fascinating, actually, when we spent a year

18 fighting about HCHK and the fact that they were supposedly

19 creditors entitled to -- this assignment for the benefit of

20 creditors in New York State Court.

21        I hear what you're saying, but -- you say you

22 represent G Club, but you don't have authority from G Club.

23 The only authority you have --

24        MR. SKLARZ:  Yes, I do.

25        THE COURT:  -- is from FFP.

1          MR. SKLARZ:  No, I have authority from G Club.  My

2  retainer agreement is signed by G Club, my -- the documents

3  are signed by G Club.  The -- Mr. He provided the corporate

4  consents.  I have all of that information.  We offered to

5  turn it over to the trustee.  I don't know -- this is a

6  business, I don't -- if this was Green & Sklarz, which was

7  owned by Green & Sklarz Holdings, which was owned by, you

8  know, the Trustee Number 2 and Trustee Number 1, it is not

9  unusual for companies to have layered ownership.  The

10  consents are all there.  If the trustee doesn't like that,

11  they can ask -- they can go take a deposition of whoever they

12  want, but this has nothing -- that has nothing to do with G

13  Club.  We've offered to provide that information.

14          So the deposition of who runs G Club, FFP runs G

15  Club, subject to --

16          THE COURT:  All right.  So this is --

17          MR. SKLARZ:  -- whatever it says --

18          THE COURT:  -- what I'm going to do --

19          MR. SKLARZ:  -- in those documents.

20          THE COURT:  -- I'm going to order you, Attorney

21  Sklarz, to turn over the documents you say you're going to

22  turn over, and I'm going to give Attorney Bassett some time

23  to review it.  And then we're going to have a further status

24  conference, at which point we'll discuss whether or not a

25  deposition is necessary.  But I'm not going to give you a lot

1  of time because we've already got an agreed-upon of a

2  deposition of November 20.

3        MR. SKLARZ:  And I don't want to -- I will -- I am

4  visiting -- the next day I leave to visit my daughter, who's

5  spending the semester studying in Rome, so I do want to hold

6  that date.  I would hope that the Court --

7        THE COURT:  All right, so then you --

8        MR. SKLARZ:  -- wouldn't make me cancel those

9  plans.

10        THE COURT:  -- should be able to get these

11  documents to -- today is Wednesday --

12        MR. SKLARZ:  I'll have them today, I'll have them

13  today; I'll send them right now.

14        THE COURT:  Okay.

15        MR. BASSETT:  And, Your Honor, just so I'm clear,

16  I think it was the Court's intention to say that Attorney

17  Sklarz would provide the documents, we would then have a

18  further status conference between now and --

19        THE COURT:  And November 20th --

20        MR. BASSETT:  -- a date --

21        THE COURT:  -- that's correct.

22        MR. BASSETT:  -- yeah --

23        THE COURT:  And then if your review --

24        MR. BASSETT:  -- to ensure that the deposition

25  could still --

1    THE COURT:  Yeah, if your review -- if you say I

2  still need to ask these questions, then I'll determine

3  whether or not you're entitled to ask those questions on

4  November 20.

5    MR. BASSETT:  Understood, Your Honor.  And I just

6  wanted to be clear from the trustee's perspective, obviously,

7  I don't want to prejudge anything, but I think it's highly

8  unlikely that documentation would be sufficient --

9    THE COURT:  Well, then -- but the document you can

10  enlighten me about, right?  I'm not enlightened about

11  anything at the moment.  So, when the documentation gets

12  turned over, you can enlighten the Court as to whether or not

13  it answers the questions and the topics that you agreed to

14  with Attorney Sklarz would be the subject of the deposition.

15    MR. SKLARZ:  Well, to be clear, Your Honor, I'm

16  supplying corporate documentation, that will not answer a

17  question like where is G Club getting its funding from.  That

18  documentation, as I've told Attorney Bassett, I'm willing --

19  I can pull together, we don't have an objection to pulling

20  that together, but I don't have all of that information at my

21  fingertips as I do the corporate documentation.

22    MR. BASSETT:  And the other comment I would make,

23  Your Honor, is that the corporate documentation, which I have

24  no reason to doubt what Attorney Sklarz is saying, I expect

25  that that corporate documentation will show that FFP was

1   actually appointed to serve as the nominal fiduciary at this

2   time for G Club.  But that is something we have seen time and

3   time again, and it is nothing, in our view, other than a way

4   for Mr. Kwok and those close to him to nominally disassociate

5   themselves (indiscernible) so what really matters to us is

6   who's behind the scenes.  Who at FFP is making decisions and

7   giving instructions to Mr. Sklarz, and from whom is that

8   person taking direction.  Is it Mr. He?  What kind of

9   conversations are they having with Mr. He?  Where is Mr. He?

10  From whom is Mr. He taking instructions?  How are they

11  getting their funding?  Are they engaged in any activities

12  other than litigation?  If so, what are those activities?

13  Who's making decisions in the litigation?

14          Because what we've seen with HCHK, what we've seen

15  time and time again is that fiduciary firms come in and they

16  act as assignees or they act as representatives in an

17  insolvency proceeding in the United Kingdom or in some island

18  in the Caribbean, and they're there to stand in and put a

19  layer of separation between the people who are actually

20  making the decisions and calling the shots and these people

21  who are nominally appointed.  And that -- so getting the

22  documentation showing this nominal appointment is certainly

23  not going to satisfy us, but I'm happy to do this in a step-

24  by-step process, to take a look at it and to come back to the

25  Court and have a further status conference.  That's obviously

1  acceptable to the trustee and we'll do whatever the Court

2  orders.

3          THE COURT:  Mr. Sklarz is going to turn over to

4  you -- now, wait a minute, Mr. Sklarz, I heard you say you

5  would gather other things, but you already have corporate

6  documents that you can get to them this afternoon?

7          MR. SKLARZ:  Yes.  I'll email -- as soon as this

8  hearing ends, I'll email them to Attorney Bassett.

9          THE COURT:  All right.  What other information are

10  you going to gather that you're going to turn over to

11  Attorney Bassett?

12          MR. SKLARZ:  Well, what we had proposed was

13  pulling together -- he had -- they had asked, there were

14  three -- there were basically three questions, and this is

15  from paragraph 5 of their opposition:  Whether the persons

16  directing G Club have changed since the debtor's arrest and

17  subsequent conviction, the answer is no, it remains FFP.

18  Whether G Club --

19          THE COURT:  And the documents --

20          MR. SKLARZ:  -- has any continuing --

21          THE COURT:  -- show that, Attorney Sklarz?  Do the

22  documents show that?

23          MR. SKLARZ:  They do.

24          THE COURT:  Okay.  Go ahead.

25          MR. SKLARZ:  Whether G Club has any continuing

1  operations aside from litigation, and the answer is yes.

2  One, preservation of corporate records; number two, whether

3  the trustee or Mr. Bassett or anyone believes this is the

4  case, FFP, as fiduciary for G Club, believes its

5  responsibility is to ensure that whatever proceeds, whatever

6  funds of G Club that have been seized by the Government,

7  which I think is about $200 million, is returned to those

8  customers who we call members and not dissipated in some

9  fashion.  That money was seized by the U.S. Government and

10  presumably will be forfeited through a civil forfeiture.  FFP

11  believes its fiduciary duty is to ensure that money goes back

12  to G Club's customers, again, who we call members, not LLC

13  members --

14          THE COURT:  Well, wouldn't you have to do that in

15  the criminal proceeding?

16          MR. SKLARZ:  Exactly, precisely.  And then, third,

17  how --

18          THE COURT:  Yeah, but that's not -- but that's not

19  the question, though.  The question is -- all right, so

20  anyway.

21          MR. SKLARZ:  Well, the question was what are our

22  operations?  Our operations are to wind down the company.  We

23  can't just pitch all the records into the ocean and say we're

24  done with it, although given as much fun as I have at these

25  -- in this case, perhaps that's what we should do.

1          THE COURT:  Well, I'm sure you don't really want

2    to do that.

3          MR. SKLARZ:  No, of course not.  We don't -- we

4    don't -- FFP -- I take my job seriously and FFP takes their

5    job seriously, and we believe preservation of records and

6    winding down the operations for the benefit of the customers

7    is important.  So those are the ongoing operations.

8          How G Club's ongoing litigation efforts are being

9    funded is the third question asked in paragraph 5.  I can

10   explain how -- I know what's happening, but I don't have all

11   of the documentation.  That's what I indicated to Attorney

12   Bassett would take a little bit more time to pull together, I

13   have conversations set up to do that.  So I can't turn that

14   over now, but --

15         THE COURT:  Can Mr. Childe produce an affidavit

16   about it?  He's the financial adviser or fiduciary on behalf

17   of the company.  Can't he produce --

18         MR. SKLARZ:  Correct --

19         THE COURT:  -- the data?

20         MR. SKLARZ:  -- that's what we would do.  Yes,

21   that's what we proposed.  We proposed Mr. Childe provide an

22   affidavit on these three questions.  And, if there's certain

23   other corollary questions that Mr. Bassett wants to know, we

24   would put those in an affidavit.  That's why we don't view it

25   as necessary to have a deposition.  His conversations with

1  Mr. He, his conver -- Mr. He's conversations with Mr. Jay, I

2  don't -- I don't know anything about that.  I don't represent

3  Mr. He.

4        THE COURT:  But you don't have to know anything

5  about that, your client might.

6        MR. SKLARZ:  He might, but they're irrelevant to

7  what the trustee says they're trying to do --

8        THE COURT:  I don't think it's irrelevant --

9        MR. SKLARZ:  -- which --

10        THE COURT:  -- at all, I don't think it's

11  irrelevant at all, Attorney Sklarz.  That's where I disagree

12  with you.  It's not irrelevant.  He is conducting an

13  investigation, whether you know anything about it is

14  irrelevant, whether your client knows anything about it is

15  irrelevant.  The trustee gets to ask the question under oath

16  and have an answer to that question under oath, he gets to do

17  that.

18        MR. SKLARZ:  And that's fine.  The questions

19  should be asked -- and if he wants to know what questions --

20  the conversations about Mr. He, if we're doing this in the

21  context of a deposition as opposed to Rule 2004, okay, then

22  Rule 26 and Rule 30 --

23        THE COURT:  I didn't say --

24        MR. SKLARZ:  -- should apply, that's fine.

25        THE COURT:  -- we were doing it in the context of

1  a deposition other than a 2004.  I said let's cut to the case

2  on your argument, couldn't he ask the same questions if I

3  lifted the stay and it was in a deposition.  So -- but I

4  didn't say --

5          MR. SKLARZ:  He could, but --

6          THE COURT:  -- I was doing that --

7          MR. SKLARZ:  -- we have more protection.

8          THE COURT:  -- and it's not teed up that way.

9  Okay?

10         MR. SKLARZ:  Fair enough.

11         THE COURT:  That was -- look, I'm not going to

12  take too much more time.

13         Here's what's going to happen.  You're going to

14  produce the corporate records of G Club that you have in your

15  -- you and/or your client has in their possession and control

16  to Attorney Bassett by 5 o'clock today.  Then you're going to

17  gather up additional information that you and Attorney

18  Bassett have discussed, and you're going to provide that to

19  him -- can you -- I'm going to -- today is Wednesday, do you

20  believe you can produce it by Friday?

21         MR. SKLARZ:  I cannot, Your Honor.  I --

22         THE COURT:  What about Monday?

23         MR. SKLARZ:  Monday close of business would

24  probably be the best I could do, but I --

25         THE COURT:  Just know that --

1           MR. SKLARZ:  -- if I need more --

2           THE COURT:  -- we're closed on Monday, it's

3   Veterans Day, but most -- I think law firms are not closed on

4   Monday.  The Court is closed on Monday.

5           MR. SKLARZ:  We're open and we'll endeavor to do

6   it.  My only issue is there -- I am beholden to third

7   parties.  If I need additional time --

8           THE COURT:  Well, third parties --

9           MR. SKLARZ:  -- I will ask Attorney Bassett --

10          THE COURT:  -- better understand that they're

11  subject to a subpoena right now, okay?

12          MR. SKLARZ:  Oh, yeah, no question.

13          THE COURT:  And the Court is telling them they

14  need to get this information together; otherwise, they may be

15  in violation of a subpoena.

16          MR. SKLARZ:  Again --

17          THE COURT:  I understand your point --

18          MR. SKLARZ:  -- I'm not saying we won't do it --

19          THE COURT:  -- I do, I do understand your point --

20          MR. SKLARZ:  -- I'm trying --

21          THE COURT:  -- I do understand your point --

22          MR. SKLARZ:  -- it's a timing issue.

23          THE COURT:  -- however, you need to make them

24  aware that this is -- this is not -- I will -- I'll just

25  enter an order then that they're in violation of the

1  subpoena, I can do that.  So I understand it may take some

2  time, but this motion and your motion has been pending since

3  -- well, I think your motion was filed back on October what

4  day?

5        MR. SKLARZ:  The 28th.

6        THE COURT:  Yeah, and the subpoena and everything

7  was issued well before that, I think October 18th or

8  something.

9        So the point is -- I understand your point, I

10  really do, but we are not going to -- it was actually issued

11  before that because the examination was supposed to be

12  October 18th.  It was issued on October 9th --

13        MR. BASSETT:  It was October 9th --

14        THE COURT:  -- and it's -- yeah --

15        MR. BASSETT:  -- yes, Your Honor.

16        THE COURT:  -- October 9th and it's November 6th.

17  So, 30 days, right?

18        So the issue is, I understand what you're saying,

19  but you have to make your clients aware that, if they don't

20  comply, they're subject to an order of the Court finding them

21  -- you know, that they're in violation of a court order.

22        MR. SKLARZ:  We will do our utmost to comply with

23  the court order and, if for whatever reason we need a little

24  more time, I will file a motion.

25        THE COURT:  Well, or if you and Attorney Bassett

1    agree on that, you don't need to file a motion.  Okay?

2              MR. SKLARZ:  Understood.

3              THE COURT:  But I know you both have been working

4    and trying to come up with a solution, I understand that and

5    I appreciate it, but there still isn't enough of a solution

6    at the moment.  So we'll take it in this step.  You're going

7    to produce by 5:00 p.m. today, Attorney Sklarz, the documents

8    you have in your possession and control, or your client has

9    in their possession and control, with regard to the corporate

10   records.  So Mr. Childs -- is that his name?  I apologize,

11   but I think that's what you said.

12             MR. SKLARZ:  Childe --

13             THE COURT:  Child, no S?

14             MR. SKLARZ:  -- C-h-i-l-d-e.  No S.

15             THE COURT:  Whatever he has he better have given

16   to you.

17             MR. SKLARZ:  I have them all.  As soon as this

18   hearing ends, I will email Attorney Bassett, that's not an

19   issue.

20             THE COURT:  Okay, all right.  Then with regard to

21   the other documents, you're going to work to provide

22   everything by November 11th.  If you can't because of third

23   parties, you and Attorney Bassett will talk and see if

24   Attorney Bassett will agree to a 24-hour extension, something

25   along those lines, and then we're going to continue this

1   hearing to November 18th at 1:00 p.m.  And we can continue it

2   to be -- have it remote, so nobody has to come to court, but

3   at that point, if there still isn't an agreement and the

4   trustee is asking the Court to allow the trustee to proceed

5   with the deposition that's scheduled on November 20th, that

6   request may be granted.  I don't know yet, but it could be.

7   So I want everybody to understand that, your clients in

8   particular, that it may in fact be that there's going to be a

9   deposition on November 20.  Okay?

10          MR. SKLARZ:  Understood, Your Honor.

11          THE COURT:  I'm not going to issue any kind of

12   written ruling with regard to what I said.  I am so ordering

13   all this on the record.

14          MR. SKLARZ:  Understood, Your Honor, we'll -- we

15   will comply.

16          THE COURT:  Okay.  Thank you.

17          MR. SKLARZ:  Thank you.

18          THE COURT:  Is there anything else that we can

19   accomplish this afternoon?

20          MR. SKLARZ:  Not from G Club's perspective, Your

21   Honor.

22          MR. DESPINS:  Not from the trustee's point of

23   view.  Thank you, Your Honor.

24          THE COURT:  Okay, all right.  So let's see how

25   things progress in the next few days, understanding that -- I

1  mean you'll do what you all need to do.  Just remember,

2  though, if you would, please, the court is closed on Monday,

3  November 1st, so there will be no court staff or anything

4  available.  If you needed something, you could still file it,

5  but it won't be reviewed until the 12th at the earliest.

6  Okay?

7            MR. SKLARZ:  Understood, Your Honor.

8            MR. BASSETT:  Thank you, Your Honor.

9            THE COURT:  All right.

10            MR. DESPINS:  Thank you, Your Honor.

11            THE COURT:  All right, that concludes today's

12  hearing.  And that is the last matter on today's calendar, so

13  court is adjourned.

14            Thank you all.

15        (Proceedings concluded at 1:57 p.m.)

16

17

18

19

20

21

22

23

24

25

1

## CERTIFICATION

2         I certify that the foregoing is a correct

3 transcript from the electronic sound recording of the

4 proceedings in the above-entitled matter to the best of my

5 knowledge and ability.

6

7 /s/ Tracey J. Williams                    November 11, 2024

8 Tracey J. Williams, CET-914

9 Certified Court Transcriptionist

10 For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25