**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------x
                :
In re:             :    Chapter 11
              :
HO WAN KWOK, *et al.*,[1]   :    Case No. 22-50073 (JAM)
            :
      Debtors.    :    (Jointly Administered)
---------------------------------------------- :
LUC A DESPINS, CHAPTER 11  :
TRUSTEE,        :
            :
        Plaintiff,  :    Adv. Proceeding No. 24-05187
v.            :
            :
WILDES & WEINBERG P.C.,  :
            :
      Defendant.  :
---------------------------------------------------------x

**CHAPTER 11 TRUSTEE'S REPLY IN SUPPORT OF SEALED MOTION OF
CHAPTER 11 TRUSTEE, PURSUANT TO BANKRUPTCY RULE 9019,
<u>REGARDING SETTLEMENT WITH WILDES & WEINBERG, P.C.</u>**

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## Table of Contents

I.   G-Club Lacks Standing to Object to Settlement Motion.................................................. 2

II.   Trustee Has Identified Valid and Important Basis to Seal Settlement Agreement ..... 4

a.   Harm to Estate Justifies Sealing Settlement Agreement .................................................. 4

b.   G-Club Cites Cases Declining to Seal to Protect *Non-Debtor* Defendants ...................... 8

c.   Court Has Discretion to Seal Settlement Agreement Even if not "Commercial Information"................................................................................................................. 11

III.   Court Has Sufficient Information to Approve Settlement Agreement ...................... 13

IV.   Court Should Approve Motion to Limit Notice ........................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Geltzer v. Andersen Worldwide, S.C.*,
   No. 05 CIV. 3339 (GEL), 2007 WL 273526 ............................................................8

*In re 50-Off Stores, Inc.*,
   213 B.R. 646 (Bankr. W.D. Tex. 1997) ...............................................................4, 5

*In re A C & S Inc.*,
   775 F. App'x 78 (3d Cir. 2019) ..............................................................................11

*In re Alterra Healthcare Corp.*,
   353 B.R. 66 (Bankr. D. Del. 2006) ......................................................................6, 8

*In re Anthracite Cap., Inc.*,
   492 B.R. 162 (Bankr. S.D.N.Y. 2013) ...................................................................10

*In re Bennett Funding Grp., Inc.*,
   226 B.R. 331 (Bankr. N.D.N.Y. 1998) ...................................................................11

*In re Bertsos*,
   No. 97-34158 (AMN), 2022 WL 4690333 ...............................................................2

*In re Ditech Holding Corp.*,
   No. 19-10412 (JLG), 2019 WL 3294684 ...............................................................8, 9

*In re EPIC Associates V*,
   54 B.R. 445 (Bankr. E.D. Va. 1985) .......................................................................11

*In re Farmland Industries, Inc.*,
   290 B.R. 364 (W.D. Mo. 2003) ..............................................................................4, 5

*In re Gibbs*,
   2017 WL 6506324 (Bankr. D. Hawaii 2017) .......................................................8, 9

*In re Global Crossing Ltd.*,
   295 B.R. 720 (Bankr. S.D.N.Y. 2003) ................................................................4, 11

*In re Hemple*,
   295 B.R. 200 (Bankr. D. Vt. 2003) ...........................................................12, 13, 14

*In re Micron Devices, LLC*,
   No. 20-23359-LMI, 2021 WL 2021468 ....................................................................3

*In re Motions Seeking Access to 2019 Statements*,
　585 B.R. 733 (D. Del. 2018), *aff'd sub nom.* .......................................................................11

*In re Oldco M. Corp.*,
　466 B.R. 234 (Bankr. S.D.N.Y. 2012) ...........................................................8, 9, 10

*In re Pursuit Holdings (NY), LLC*,
　No. 18-12738 (MG), 2019 WL 1220928 ...............................................................13

*In re Quigley Co., Inc.*,
　437 B.R. 102 (Bankr. S.D.N.Y. 2010) ...........................................................8, 9, 10

*In re Stone Barn Manhattan LLC*,
　405 B.R. 68 (Bankr. S.D.N.Y. 2009) ....................................................................13

*In re Teligent, Inc.*,
　640 F.3d 53 (2d Cir. 2011) ......................................................................................2

*In re Thomas*,
　583 B.R. 385 (Bankr. E.D. Ky. 2018) .........................................................8, 9, 10

*In re VoIP Guardian Partners I, LLC*,
　No. 2:19-BK-12607-BR, 2024 WL 3520151 ...........................................................2

*In re Wells Fargo Bank, N.A.*,
　No. MC 17-204-GLT, 2019 WL 642850 ...............................................................8, 9

**Statutes**

Bankr. Code Ch. 11 .................................................................1, 4, 5, 8, 9, 12

Bankr. Code § 107 ................................................................3, 4, 5, 11, 14

**Rules**

Fed. R. Bankr. P. 9018 ..............................................................................4

Fed. R. Bankr. P. 9019 ....................................................................1, 5, 13

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel, hereby files this reply (the "Reply") (i) in support of the *Sealed Motion of Chapter 11 Trustee, Pursuant to Bankruptcy Rule 9019, Regarding Settlement with Wildes & Weinberg, P.C.* [ECF No. 3559] (the "9019 Motion")[2] and (ii) in response to the limited objection filed by G Club Operations LLC ("G-Club").[3]  In support of this Reply, the Trustee respectfully states as follows:

## Reply

1.      The Settlement Agreement has been shared, in full, with the Official Committee of Unsecured Creditors and the United States Trustee (the "UST").  The redacted version of the 9019 Motion (which refers to, but does not include a copy of, the Settlement Agreement) was served on over two-hundred and fifty parties and has been publicly available since it was filed on the public docket almost three months ago on September 19, 2024.  In that time, the Trustee received only two responsive pleadings: the G-Club Objection and the UST's limited objection.[4]

2.      The UST (which reviewed the Settlement Agreement in full) filed its limited objection only to address whether the Settlement Agreement should be sealed, an issue of systemic importance to the UST.  After discussions with the Trustee leading to a revised Proposed Order granting the 9019 Motion, the UST has withdrawn its limited objection—leaving G-Club as the only objecting party, with its objection based on its argument that the terms of Settlement Agreement must be made public.[5]

---

[2]    The Settlement Motion was also filed at Docket No. 14 on the docket of the Adversary Proceeding.  Unless otherwise noted, all docket references are to the docket of the main case, Case No. 22-50073.  Capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the 9019 Motion.

[3]    *See* Docket No. 3633 (the "G-Club Objection").

[4]    *See* Docket No. 3641.

[5]    Concurrently herewith, the Trustee has filed his *Notice of Filing of Revised Proposed Order Approving, Pursuant to Bankruptcy Rule 9019, Sealed Motion of Chapter 11 Trustee Regarding Settlement with Wildes & Weinberg, P.C.* reflecting the terms of the agreement with the UST, which provides that the Trustee shall have

1

3.      G-Club's objection is meritless and should be dismissed on multiple grounds.

Initially, G-Club has no standing to object to the 9019 Motion because G-Club is merely a

defendant in litigation brought by the Trustee and has no legally protected interest in the 9019

Motion.  In any event, G-Club's objection fails on the merits because the Trustee validly seeks to

seal the Settlement Agreement to protect the estate—not to protect the settlement counterparty or

other non-debtors, as was the situation in the cases that G-Club cites.  This distinction is critical:

because, while the estate has no interest in protecting a non-debtor defendant in that defendant's

own, unrelated, litigation, the estate does have a strong interest in preserving the value of estate

claims against similarly-situated current and future avoidance action defendants (such as G-

Club), which will directly impact recoveries and distributions to creditors.

## I.    G-Club Lacks Standing to Object to Settlement Motion

4.      "A party has standing to object to a motion pursuant to [Bankruptcy Rule] 9019 if

they are directly and adversely affected pecuniarily by the challenged order of the bankruptcy

court." *In re Bertsos*, No. 97-34158 (AMN), 2022 WL 4690333, at *3 (Bankr. D. Conn. Sept.

30, 2022).  Creditors—who "have a claim against the bankruptcy estate or an expectation of a

distribution from its assets"—satisfy this rule. *Id.* at *6.  Would-be objectors who are not

creditors can only satisfy this standing requirement if they have a "legally protected interest that

an order approving the compromise might directly and adversely affect pecuniarily." *Id.*

(putative objectors who were "not creditors" did "not have standing to object to the Trustee's

motion to compromise"). *See also In re Teligent, Inc.*, 640 F.3d 53, 61 (2d Cir. 2011) (non-

creditor had no legally protected interest and "could not have appeared before the bankruptcy

court to challenge the settlement agreement"); *In re VoIP Guardian Partners I, LLC*, No. 2:19-

---

until 180 days from the date of entry of an order approving the 9019 Motion to publicize the terms of the
Settlement Agreement.

BK-12607-BR, 2024 WL 3520151, at *3 (B.A.P. 9th Cir. July 24, 2024) (affirming bankruptcy court's ruling that putative objectors lacked standing where, among other things, "Appellants are not creditors of the estate and will not be impacted by the receipt, or lack thereof, of funds into the estate"); *In re Micron Devices, LLC*, No. 20-23359-LMI, 2021 WL 2021468, at *15 (Bankr. S.D. Fla. May 20, 2021) ("Cobalt Capital, LLC is not a creditor of the estate, and has no standing to object to the 9019 Motion").

5.      G-Club has not filed a proof of claim against the Debtor and is not in line for a distribution from the estate.  G Club is, instead, an entity that played a central role in the massive fraudulent scheme for which the Debtor was criminally convicted, and an entity the Trustee has alleged is and always has been the Debtor's alter ego, meaning that every dollar it spends in opposing the Trustee's efforts in this chapter 11 case is a dollar less that the estate may potentially be able to distribute to creditors.  The Trustee has learned through recent discovery, including a Rule 2004 deposition, that although G-Club recently appointed a nominal third-party manager (FFP (BVI) Limited) to oversee its actions, the real party making all major decisions for G-Club is Haoran He, a close associate of the Debtor who played an integral role in the Debtor's fraudulent activities, such as by signing loan agreements for the benefit of the Debtor's shell companies and his son, including to facilitate the purchase of a Ferrari.[6]

6.      For these reasons, the Court should be highly skeptical of G Club's motivations in filing its objection to the Rule 9019 Motion, which objection is essentially being funded with estate assets to the extent G Club is the Debtor's alter ego.  At best, G Club is a defendant in

---

[6]     The Director Services Agreement for G-Club governing FFP (BVI) Limited's appointment provides that Mr. He must authorize, in writing, major decisions such as the commencement or settlement of litigation and the filing of "statements" in litigation.  Based on the Trustee's deposition of G-Club's representative, it is questionable whether Mr. He validly authorized the filing of the objection to the 9019 Motion.

3

similar litigation that seeks a leg up in its litigation with the Trustee.[7]  It has not identified any

legally protected pecuniary interest that might be adversely affected if the Court grants the 9019

Motion and enters the Proposed Order.  Because the Settlement Agreement has no impact on G-

Club's wallet, G-Club has no standing to object to the 9019 Motion.

## II.    Trustee Has Identified Valid and Important Basis to Seal Settlement Agreement

7.      The Trustee has explained that disclosing the settlement terms will harm the estate

by prejudicing the Trustee's position in hundreds of pending adversary proceedings asserting

similar claims against other defendants.  G-Club does not dispute the factual sufficiency of the

Trustee's representation to this Court that disclosure of the terms of the settlement is likely to

harm the estate.  Instead, G-Club argues that this harm is legally insufficient because settlement

terms are not protected information.  But there is ample support in the caselaw for the

proposition that a court could, and should, seal information where its release would harm the

estate and reduce distributions to creditors.  In this ***specific factual context***, the settlement terms

are "commercial information" protected by section 107(b) of the Bankruptcy Code.  The

authority G-Club marshals is not to the contrary, as those cases deal with very different facts.

### a.   Harm to Estate Justifies Sealing Settlement Agreement

8.      Multiple courts have sealed information where doing otherwise would undermine

the bankruptcy trustee's efforts to maximize the value of the estate and distributions to creditors.

In *In re Farmland Indus., Inc.*, 290 B.R. 364 (Bankr. W.D. Mo. 2003), the debtors asked the

court to seal certain documents, as well as the courtroom itself, in connection with their debtor in

possession financing.  The court held that publicizing the information in question would impair

the "paramount goal in the sale of assets in a bankruptcy proceeding," which is to "obtain the

---

[7]      G-Club's counsel notably represents numerous other avoidance action defendants, who, like G Club, would no doubt like to use knowledge of the Trustee's settlement with Wildes & Weinberg for tactical advantage.

best price possible for the ultimate benefit of the unsecured creditors of the bankruptcy estate."
*Id.* at 369. "[P]rohibiting these disclosures [wa]s necessary to protect the bankruptcy estate." *Id*.
As one court has explained, the "teaching of *Farmland Industries* is that the commercial
information that is entitled to protection under Code section 107(b) and Bankruptcy Rule 9018
***must be viewed from the practical perspective of damage to the estate or its creditors***." *In re
Global Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (emphasis added).

       9.     This estate-focused perspective also applies to a trustee's ability to maximize the
value of the estate's litigation claims. In *In re 50-Off Stores, Inc.*, 213 B.R. 646 (Bankr. W.D.
Tex. 1997), the debtor moved to retain litigation counsel, and two defendants in other pending
litigation asked the court to unseal the record of the hearing on that motion. The court noted that
the disclosure requirements of bankruptcy create a difficult choice for a debtor as, "absent
special protection on the part of the court, the record of such a hearing is public, available for
transcription by anyone, ***including the target defendants!***" *Id.* at 655 (emphasis in original).
Fortunately, explained the court, section 107(b) of the Bankruptcy Code "affords a bankruptcy
judge some authority to prevent just such an obvious injustice." *Id*. According to the court, the
work product a debtor must disclose to justify retaining litigation counsel is "certainly" the type
of confidential research or commercial information protected by section 107(b). *Id*. Protecting
this information allowed the court to "discharge its obligation" (*i.e.*, ensuring that the debtor's
judgement was sound) "without, in the process, causing substantial injury to the very asset (*i.e.*,
the lawsuit) that the debtor was trying to pursue." *Id.* at 656.

       10.    Here, as well, Rule 9019 obligates the Trustee to disclose the Settlement
Agreement to the Court and requires that the Court consider whether the Trustee's decision to
enter into the settlement was appropriate. As both *Farmland Industries* and *50-Off* recognize, it

would be an injustice, and contrary to the paramount goal of the Bankruptcy Code, if in doing so the Trustee was also required to prejudice the very asset (his hundreds of litigation claims) that he is pursuing on behalf of Kwok's creditors and victims.  Nor should the Court ignore the very practical reality that the only objecting party is not a creditor—but ***is a defendant*** in currently pending litigation with the Trustee.

11.    The impact (or lack thereof) on the estate and its creditors similarly underpins *In re Alterra Healthcare Corp.*, 353 B.R. 66 (Bankr. D. Del. 2006).  In that case, the reorganized debtor asked the court to seal settlements with various tort claimants.  The debtor argued that other tort claimants, who had not yet settled, would use these settlements as leverage to obtain higher settlements in their cases.  This, the debtor argued, would reduce the value of the estate, as it would reduce the amount available to non-tort general unsecured creditors.  *Id.* at 76.  The court was "unpersuaded" by this argument, as (i) the debtor's insurance company would cover much of any payment to tort claimants and (ii) the debtor had, under the plan, set aside a $32 million reserve for these unresolved tort claimants.  *Id.*  It was, therefore, factually "unclear if the release of this information will impact the other creditors of the Reorganized Debtor."  *Id.*

12.    The facts here are very different, undercutting G-Club's reliance on *Alterra*.  No insurance company is on the hook for Kwok's debts.  Nor is there a pot of cash segregated for the benefit Kwok's general unsecured creditors.  Accordingly, while the settlements in *Alterra* had no impact on other creditors, that is not the case here, as every dollar the Trustee does not collect directly reduces the recovery to all creditors—especially considering that this chapter 11 case is based on litigation, with no source of value or recovery other than what the Trustee recovers through his investigation and litigation efforts.[8]

---

[8]    This is another basis to distinguish *Alterra*.  In *Alterra*, the debtor argued that unsealing the settlement agreement would enable one group of creditors to obtain higher recoveries that, otherwise, would be distributed

13.     In short, there is ample authority to seal a settlement agreement where its publication would endanger recoveries to general unsecured creditors.  And, in fact, bankruptcy courts routinely seal settlement documents.[9]  Indeed, courts have even approved mediation and settlement procedures in which settlements are finalized without any court approval.  For example, in *GT Advanced Technologies*, the court approved procedures for the expedited resolution of secured, priority, and administrative expense claims.  Pursuant to these approved procedures, the court allowed the debtors and the claimants to pick a mediator without court approval and enter into a binding agreement without court approval.  The court did require that, after each mediation, the mediator file a report indicating whether a settlement was reached—but the court did not require that the terms of any settlement be filed.[10]

14.     Here, the Court has already approved a mediation program, supervised by Judge Tancredi, a sitting United States Bankruptcy Judge.  Those mediation procedures explicitly contemplate that settlement agreements could be filed under seal if the Trustee believes that public disclosure would harm the estate—as demonstrated above, this harm to the estate is sufficient basis for sealing.  Moreover, any settlement agreement that the Trustee believes should be sealed is still available, in full, to the UST, counsel for the Committee, and, of course, Judge Tancredi.

---

to another group.  Sealing the settlement, then, would have required the court to pick one group of creditors over another, but would not have benefitted the estate as a whole.  The court, properly, declined to pit one group of creditors against another.  Here, though, the Trustee seeks to protect his ability to maximize recoveries for ***all*** creditors.

[9]  *See, e.g.*, *In re Adelphia Commc'ns Corp., et al.*, Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Jan. 12, 2006) (ECF No. 9290); *In re Capmark Financial Group Inc., et al.*, Case No. 09-13684 (CSS) (Bankr. D. Del. Oct. 15, 2010) (ECF No. 1911); *In re Lyondell Chem. Co., et al.*, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Nov. 4, 2013) (ECF No. 7229).  Copies of these orders are attached as **Exhibit 1** hereto.

[10]  *See In re GT Advanced Techs., Inc.* ¶ 21, Case No. 14-11916 (Bankr. D. N.H. Dec. 17, 2015) (ECF 2777), attached as **Exhibit 2** hereto.

**b.  G-Club Cites Cases Declining to Seal to Protect _Non-Debtor_ Defendants**

15.      G-Club argues that prejudice to creditor recoveries is legally insufficient to justify sealing the Settlement Agreement, and that the Trustee's explanation that sealing is necessary to prevent prejudice to the Trustee's litigation strategy "has been rejected as insufficient as a matter of law."[11]  In support, G-Club points to several cases declining to seal settlement amounts.

16.      But the cases cited by G-Club (and others like them) have in common a specific set of circumstances, not present here.  In those case, the proffered justification for the proposed sealing was that the ***settling, non-debtor, defendant*** demanded it and/or sealing was requested to protect the litigation position of the ***settling, non-debtor, defendant***.  G-Club is correct that courts have rejected these justifications, as bankruptcy courts will not give in to "no seal/no deal" pressure imposed by a defendant, nor will they seal settlement terms to protect the litigation interests of ***non-debtors*** in their other litigation with ***other non-debtors***.

17.      This distinction between sealing a settlement (i) to protect a non-debtor defendant or (ii) to protect the estate (as the Trustee seeks to do here) is highlighted by the District Court's opinion in _Geltzer v. Andersen Worldwide, S.C._, No. 05 CIV. 3339 (GEL), 2007 WL 273526 (S.D.N.Y. Jan. 30, 2007), cited by G-Club.  In this influential and widely cited opinion,[12] the chapter 7 trustee settled with the accounting firm Arthur Andersen, which was already defunct and facing significant litigation at the time of the settlement.  Requesting that the court seal the terms of the agreement, the trustee argued that "public disclosure of the Settlement Amount would enable other claimants against Andersen to determine how much Andersen is currently willing, and able, to pay in respect of the Trustee's claim, thereby potentially undercutting

---

[11]    G-Club Obj. ¶ 25.

[12]    _Geltzer_ is cited by _Thomas_, _Ditech_, _Oldco_, _Quigley_, _Gibbs_, _Anthracite Capital_, and _Wells Fargo_, all discussed below, as well as _Alterra Healthcare_, discussed above.

Andersen's negotiating leverage with such claimants." 2007 WL 273526, at *4.

18.     The court rejected this argument, explaining that there "is no discernable public interest, *or interest of the bankruptcy estates*, in preserving Andersen's 'leverage' as against other parties who have sued it," and that the trustee had not offered "any authority to support its implicit proposition that protecting the bargaining position of the *defendant in other, unrelated cases*, is even a proper consideration of a court being asked to approve a settlement in a given case." *Id*. (emphasis added).

19.     G-Club also cites *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2019 WL 3294684 (Bankr. S.D.N.Y. July 19, 2019). The debtor there also impermissibly focused on the potential harm to the non-debtor defendant. As the court explained, "[i]n essence, the Debtors contend that [Bank of America] will be placed at competitive disadvantage if the Court unseals the redacted information because they will lose leverage in future negotiations with counterparties to other mortgage loans servicing agreements." *Id.* at *9. Rejecting this argument, the court noted that *Geltzer*'s "rationale applie[d] equally" to Bank of America, as there was "no discernable public interest or interests of the Debtors in preserving BANA's leverage in negotiations with other parties." 2019 WL 3294684, at * 9.

20.     This pattern repeated itself in *In re Gibbs*, No. 11-03070, 2017 WL 6506324 (Bankr. D. Haw. Dec. 19, 2017), in which Bank of America was again the settling party and the trustee and Bank of America asked the court to seal a settlement because Bank of America "worrie[d] that, if the settlement amount in this case is disclosed, other parties claiming that [the bank] engaged in wrongful foreclosure conduct will demand similar amounts." 2017 WL 6506324, at *2. The court denied the sealing request, as settlements should not be sealed to protect a defendant's "negotiating leverage in litigation with other parties." *Id*.

21.     Another bank, Wells Fargo, fared no better when it tried to maintain its litigation

leverage as a non-debtor defendant.  In *In re Wells Fargo Bank, N.A.*, No. MC 17-204-GLT,

2019 WL 642850 (Bankr. W.D. Pa. Feb. 14, 2019), Wells Fargo was facing similar claims in

seventy-seven adversary proceedings with different debtors; having settled with eighteen of

those debtors (who shared counsel), the bank, the settling debtors, and the chapter 13 trustee

sought to seal the terms of the agreement.  Declining to seal the agreement, the court explained

that the "sole articulated basis for sealing the Settlement Agreement [was] to avoid establishing a

threshold with respect to any amounts Wells Fargo may agree to pay in order to settle similar

litigation with other parties."  2019 WL 642850, at *1 (internal quotation marks omitted).

22.     Other cases cited by G-Club (*In re Quigley Co., Inc.*, 437 B.R. 102 (Bankr.

S.D.N.Y. 2010), *In Oldco M Corp.*, 466 B.R. 234 (Bankr. S.D.N.Y. 2012), and *In re Thomas*,

583 B.R. 385 (Bankr. E.D. Ky. 2018)) all fit this pattern as well.

23.     *Quigley* was an asbestos case, and a group of law firms had entered into pre-

petition agreements to settle the claims of approximately 175,000 claimants.  The law firms later

moved to seal these settlements, arguing that releasing this information "could prejudice Counsel

for Tort Claimants' ongoing litigation and settlement discussions with other defendants."  437

B.R. at 151-52.  In other words, a group of non-debtor law firms was concerned about the law

firms' other litigation on behalf of non-debtor claimants against non-debtor defendants; the court

held this was not a basis to seal the agreement.[13]  And in *In re Oldco M Corp.*, 466 B.R. 234

(Bankr. S.D.N.Y. 2012), the court declined to seal a settlement where the "only reason given for

sealing the settlement was that public disclosure would undercut the ***settling defendant's***

---

[13]   Also important to the court's consideration in *Quigley* was that the pre-petition settlements at issue were "part
of a strategy, conceived and executed in bad faith, to manipulate the vote."  *Quigley*, 437 B.R. at 154.  Those
considerations are not present here.

*leverage in negotiating with other claimants*.”  *Id.* at 238 (emphasis added).  Lastly, in *In re Thomas*, 583 B.R. 385 (Bankr. E.D. Ky. 2018), the court noted that the parties offered only “broad statements regarding their desire for confidentiality” and “essentially tell the Court there will be no settlement in the adversary proceeding if the terms of the settlement are not kept confidential.” *Id.* at 391-92.

24.     In sum, “providing **third parties** with a litigation advantage in **outside actions** does not justify sealing a court document.”  *In re Anthracite Cap., Inc.*, 492 B.R. 162, 173 (Bankr. S.D.N.Y. 2013) (emphasis added).  Here, however, the Trustee’s purpose is not to protect a settling counterparty.  Sealing is necessary to maintain the Trustee’s ability to negotiate and settle hundreds of pending adversary proceedings with other defendants, all to protect the **estate**.  And, as demonstrated above, the caselaw supports the rule that harm to the estate (as opposed to harm to a non-debtor defendant) is grounds for sealing.

### c.  Court Has Discretion to Seal Settlement Agreement Even if not “Commercial Information”

25.     When “viewed from the practical perspective of damage to the estate or its creditors,” as the caselaw requires, *Global Crossing*, 295 B.R. at 725, the Settlement Agreement is confidential research or commercial information under section 107(b) of the Bankruptcy Code. As such, protecting the information is mandatory.  But even if it was not, the Court still has the authority to seal the Settlement Agreement.  *See In re Bennett Funding Grp., Inc.*, 226 B.R. 331, 336 (Bankr. N.D.N.Y. 1998) (“If it is determined that the information sought to be disclosed fits into any of the specified categories, the Court has no discretion in denying access to it … If the information does not represent trade secrets or confidential research, development or commercial information, then whether to permit access to the information is a matter left to the Court's discretion.”); *see also In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 747 (D.

11

Del. 2018), *aff'd sub nom. In re A C & S Inc.*, 775 F. App'x 78 (3d Cir. 2019) (citing *Bennet*

*Funding* in support of holding that "Bankruptcy Court had authority" to enter sealing order on

"multiple bases," including "discretionary authority under § 107(b)"); *In re EPIC Associates V*,

54 B.R. 445, 450 (Bankr. E.D. Va. 1985) (customer list was commercial information under

section 107(b) and "[i]n addition and equally as important, this Court feels, under the

circumstances of this case, that it must exercise the inherent supervisory power that holds over its

own records and files").

26.    In exercising this discretion, the Court should be guided by the factors identified

in *In re Hemple*, 295 B.R. 200, 202 (Bankr. D. Vt. 2003), which lists ten factors a court should

consider in determining whether to seal a settlement agreement.[14]  Particularly relevant here,

those factors include (i) the necessity of the settlement to the viability of the bankruptcy case,

(ii) whether creditors have objected to the proposed settlement, (iii) whether creditors will

benefit from the settlement even without knowing the specific terms; (iv) whether the debtor will

be harmed if the agreement is not sealed, (v) whose interests are being protected by sealing the

agreement, and (vi) whether the document needs to be kept under seal permanently.

27.    G-Club—which is not a creditor but is a defendant in other pending litigation—is

the only party objecting to the 9019 Motion.  The Settlement Agreement will directly benefit

---

[14]    The ten factors, as identified in full by *Hemple*, are: (1) the necessity of the settlement to the viability of the
bankruptcy case; (2) whether the confidentiality provision is truly essential to the settlement, i.e., whether the
settlement would be withdrawn if the confidential provision were not honored; (3) whether the creditors have
been notified of the request for approval of the settlement without disclosure of the amount or terms of
settlement, and, if so, whether any objection was interposed; (4) if there has been an objection to the request to
file the agreement under seal, whether the objection demonstrates harm to the public's need to know; (5)
whether the creditors will clearly benefit from the settlement notwithstanding a lack of access to the specific
terms of that settlement; (6) whether the debtor will suffer irreparable harm if the settlement agreement is not
filed under seal; (7) whether the parties would be able to keep the terms of the settlement confidential in the
absence of a bankruptcy filing; (8) whose interests are being protected by allowing the filing of the settlement
agreement under seal and whether there is any negative impact either on the estate or in the treatment of other
interested parties in the case;(9) what is the likelihood of other parties actually obtaining the details of the
agreement if it is not filed under seal; and (10) whether the document needs to be kept under seal permanently
or some shorter time period could suffice.  *In re Hemple*, 295 B.R. at 202.

creditors even if they do not have access to the specific terms, and the parties that do have access

(including the Committee, a fiduciary to the estate) have not objected.  In fact, the Mediator's

Report, which is publicly available, states Judge Tancredi's belief that the economics and terms

of the Settlement Agreement are fair, reasonable, and in the best interest of the Debtor's chapter

11 estate—which also helps ensure that sealing the agreement does not harm the public's need to

know, another *Hemple* factor.

28.     Perhaps most importantly and as discussed above at length, the interests being

protected are those of the estate and its creditors, not the settlement counterparty, and disclosure

of the specific terms of the Settlement Agreement is likely to cause significant harm to the estate.

Further, while this specific Settlement Agreement is not vital to the overall bankruptcy case, the

Trustee's ability to maximize the estate's avoidance actions is absolutely critical, as this is a

litigation case, with no source of value or recovery other than what the Trustee recovers through

his investigation and litigation efforts.  Finally, *Hemple* directs consideration of the duration of

the seal and, as agreed with the UST, the Trustee will have until 180 days after entry of the

Proposed Order to publicize its terms.

**III.    Court Has Sufficient Information to Approve Settlement Agreement**

29.     As G-Club acknowledges, a court approving a settlement under Rule 9019 "need

not conduct a mini-trial" but, rather, "only need be apprised of the facts that are necessary to

enable it to evaluate the settlement and make a considered and independent judgment about the

settlement."[15]  Here, the Court has more than sufficient information to make this judgment.  The

Court, of course, has access to the full terms of the Settlement Agreement.  In exercising its

independent judgment, the Court is also permitted to "take into consideration the opinions" of

---

[15]    G-Club Obj. ¶ 21 (citations omitted).

other parties to the case. *In re Pursuit Holdings (NY), LLC*, No. 18-12738 (MG), 2019 WL 1220928, at *7 (Bankr. S.D.N.Y. Mar. 12, 2019). Here, multiple fiduciaries (the Committee and the Trustee) and the Court-appointed mediator, Judge Tancredi, all believe that the Settlement Agreement is in the best interests of the estate and is a valid exercise of the Trustee's business judgment. *See In re Stone Barn Manhattan LLC*, 405 B.R. 68, 75 (Bankr. S.D.N.Y. 2009) ("Although approval of a settlement rests in the Court's sound discretion …the debtor's business judgment should not be ignored.").

30.     Nonetheless, G-Club asserts that the Court's assessment of the 9019 Motion and the underlying Settlement Agreement "must occur in open court, like any other adjudication."[16] G-Club, relatedly, seeks to reserve its right to object to the 9019 Motion on the merits "once it is it unsealed/unredacted and G Club can evaluate the proposed settlement."[17] But to make this argument is to rebut it. The Trustee does not dispute that, just like any other adjudication, there is a presumption that the 9019 Motion will be heard in open court. But, also just like any other adjudication, there are exceptions to that presumption. If G-Club was correct, no Rule 9019 motion could ever be heard unless all parties have reviewed all terms of the proposed settlement. This would mean that section 107 of the Bankruptcy Code does not apply to settlement agreements, even though it plainly does. The law is clear that a court can approve a settlement agreement even if there is a party that has not been granted access to all terms.[18] And this is so even if the party denied access to the full terms of the agreement has standing and would have a defensible basis to object to a proposed settlement—neither of which can be said for G-Club.

---

[16]    G-Club Obj. ¶ 23.
[17]    G-Club Obj. ¶ 31.
[18]    As noted above, one the *Hemple* factors is "whether the creditors will clearly benefit from the settlement ***notwithstanding a lack of access to the specific terms of that settlement***." 295 B.R. at 202 (emphasis added).

31.     As explained above, G-Club has no standing.  Furthermore, G-Club is a defendant in pending litigation with the Trustee in which the Trustee has asserted claims like those asserted against Wildes & Weinberg; G-Club has taken the position that those claims are meritless—or, stated otherwise, worthless.  G-Club, therefore, would have no defensible basis to object to the settlement, as, even if G-Club were a creditor impacted by the Trustee's total recoveries, any amount recovered by the Trustee from Wildes & Weinberg is more than G-Club believes the Trustee would get in litigation—which means that, from G-Club's perspective, the settlement *must* be a good deal for the estate.  G-Club's review of the Settlement Agreement may inform its strategy in litigation with the Trustee, but would have no impact on the Court's assessment of the reasonableness of the Settlement Agreement.  G-Club's objection should be overruled.

## IV.    Court Should Approve Motion to Limit Notice

32.     G-Club also takes issue with the Trustee's motion to limit service of the 9019 Motion [ECF No. 3565].  As an initial matter, the Court has already granted that motion.[19]  But even if the Court were inclined to consider G-Club's objection, that motion is unrelated to the sealing issue discussed in G-Club's objection and herein.  G-Club does not object to the adequacy of the universe of proposed recipients, but rather to the contents of the proposed service (*i.e.*, G-Club asserts that that all service recipients should receive the full, unredacted, Settlement Agreement).

33.     As discussed at length, the Trustee disagrees.  Regardless, if the Court determines that the Settlement Agreement cannot be sealed at all, the Trustee will serve the unredacted version on all Notice Parties (as defined in the motion to limit service).

---

[19]    *See* Docket No. 3685.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court

grant the 9019 Motion and any other relief as the Court considers proper.

Dated:     December 5, 2024                    LUC A. DESPINS,
           New York, New York                 CHAPTER 11 TRUSTEE


                                              By: */s/ Douglass Barron*
                                                  Douglass Barron (admitted *pro hac vice*)
                                                  PAUL HASTINGS LLP
                                                  200 Park Avenue
                                                  New York, New York 10166
                                                  (212) 318-6079
                                                  douglassbarron@paulhastings.com

                                                      *and*

                                                  Nicholas A. Bassett (admitted *pro hac vice*)
                                                  PAUL HASTINGS LLP
                                                  2050 M Street NW
                                                  Washington, D.C., 20036
                                                  (202) 551-1902
                                                  nicholasbassett@paulhastings.com

                                                      *and*

                                                  Patrick R. Linsey (ct29437)
                                                  NEUBERT, PEPE & MONTEITH, P.C.
                                                  195 Church Street, 13th Floor
                                                  New Haven, Connecticut 06510
                                                  (203) 781-2847
                                                  plinsey@npmlaw.com

                                                  *Counsel for the Chapter 11 Trustee*

16

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

-----------------------------------------------------------------x
                                            :
In re:                                      :    Chapter 11
                                            :
HO WAN KWOK, *et al.*,[20]                  :    Case No. 22-50073 (JAM)
                                            :
                            Debtors.        :    (Jointly Administered)
                                            :
-----------------------------------------------------------------x
                                            :
LUC A. DESPINS, CHAPTER 11                  :
TRUSTEE,                                    :
                                            :    Adv. Proceeding No. 24-05187
                            Plaintiff,      :
v.                                          :
                                            :
                                            :
WILDES & WEINBERG, P.C.,                    :
                                            :
                            Defendant.      :
-----------------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 5, 2024, the foregoing Reply was

electronically filed.  Notice of this filing was sent to the United States Trustee, counsel for the

Debtor, counsel for the Committee, via email to Wildes & Weinberg, P.C. at

michael@wildeslaw.com, and by e-mail to all parties to the above-captioned chapter 11 case by

operation of the Court's electronic filing ("CM/ECF") system or by mail to anyone unable to

---

[20]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
        Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
        Holdings LLC (last four digits of tax identification number: 8202), and Genever Holdings Corporation. The
        mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul
        Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan
        Kwok (solely for purposes of notices and communications).

accept electronic filing as indicated on the Notice of Electronic Filing[21].  Parties may access this

filing through the Court's CM/ECF system.


Dated:     December 5, 2024
           New York, New York

                                    By: /s/ Douglass Barron
                                        Douglass Barron (admitted *pro hac vice*)
                                        PAUL HASTINGS LLP
                                        200 Park Avenue
                                        New York, New York 10166
                                        (212) 318-6079
                                        douglassbarron@paulhastings.com

                                        *Counsel for the Chapter 11 Trustee*

---

[21] If after business hours, on the next business day.

## Exhibit 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 Cases |
| | ) | |
| Adelphia Communications Corporation, et al., | ) | Case No. 02-41729 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER AUTHORIZING DEBTORS TO FILE UNDER SEAL DEBTORS'
MOTION FOR ORDER PURSUANT TO BANKRUPTCY RULE 9019
APPROVING SETTLEMENT WITH THE CITY OF LOS ANGELES**

Upon the motion dated January 12, 2006 (including exhibits thereto, the

"Motion") of the above captioned debtors and debtors in possession (collectively, the "Debtors"),

for entry of an order, pursuant to sections 105(a) and 107(b) of chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 9018 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") authorizing the Debtors to file, under seal, a motion

approving and authorizing a settlement agreement by and among Adelphia Communications

Corporation, Century-TCI California, L.P., Buenavision Telecommunications, Inc., and the City

of Los Angeles, California (the "Settlement Motion"); and it appearing that appropriate notice of

the Motion was provided; and it appearing that the relief requested in the Motion is in the best

interest of the Debtors, their creditors and all parties in interest; and after due deliberation and

due and sufficient cause appearing therefor, it is

ORDERED, that the Motion is granted; and it is further

ORDERED, that capitalized terms used but not defined herein have the meaning

given to them in the Motion; and it is further

ORDERED, that pursuant to section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018, the Debtors are authorized to file the Settlement Motion under seal; and it is further

ORDERED, that the Settlement Motion shall remain confidential and shall be served on and made available only to: (a) counsel to the City; (b) the Office of the United States Trustee for the Southern District of New York; (c) counsel to the Official Committee of Equity Security Holders; (d) counsel to the Official Committee of Unsecured Creditors; (e) counsel for the agents for the Debtors' prepetition and postpetition lenders; (f) counsel to the Purchasers; and (g) such other parties as may be agreed to by the Debtors, and shall not be made available to the general public; and it is further

ORDERED, that any pleadings filed in these cases that reference or disclose any of the information contained in the Settlement Motion shall be filed under seal and served only on those parties authorized to receive the Settlement Motion; and it is further

ORDERED, that this Court shall retain jurisdiction to hear and decide any dispute related to or arising from this Order.

Dated:    New York, New York
          January 12, 2006

                                   *s/: Robert E. Gerber*                    
                                   HONORABLE ROBERT E. GERBER
                                   UNITED STATES BANKRUPTCY JUDGE

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------x
                                          :
In re                                     :    Chapter 11
                                          :
CAPMARK FINANCIAL GROUP INC., et al.,     :    Case No. 09-13684 (CSS)
                                          :
        Debtors.¹                         :    Jointly Administered
                                          :
-----------------------------------------------------x    Re: Docket Nos. 1636 and 1638
```

### ORDER AUTHORIZING DEBTORS TO
### FILE SETTLEMENT AGREEMENT UNDER SEAL

Upon the motion, dated as of September 3, 2010 (the "Motion"),[2] of Capmark

Financial Group Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and

debtors in possession (collectively, the "Debtors"), pursuant to section 107(b) of title 11 of the

United States Code, Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Rule 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), Capmark Investments LP (7999), and Protech Holdings C, LLC (7929). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

RLF1 3618966v. 1

States Bankruptcy Court for the District of Delaware (the "Local Rules") for an order authorizing the Debtors to file the agreement detailing the terms of the settlement between the Debtors and Settling Lenders as holders of claims under the Secured Credit Facility (the "Settlement Agreement") under seal, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided and it appearing that no other or further notice need be provided; and the Court having determined the relief sought in the Motion is in the best interests of the Debtors, their creditors, and all parties in interest; and the Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, it is hereby:

ORDERED that the Motion is granted as may be modified herein; and it is further

ORDERED that the Debtors are authorized to file under seal the portions of the Settlement Agreement reflecting the holdings of each of the Settling Lenders in the Prepetition Secured Credit obligations by redacting such information from the Settlement Agreement; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

RLF1 3618966v. 1

ORDERED that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: October 14, 2010
        Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

In re:                                                          :
                                                                :        **Chapter 11**
**LYONDELL CHEMICAL COMPANY, et al.,**          :        **Case No. 09-10023 (REG)**
                                                                :
          **Reorganized Debtors.**          :        **Jointly Administered**

-------------------------------------------------------------------x

ORDER GRANTING REORGANIZED DEBTORS' MOTION FOR ENTRY OF AN ORDER
(A) AUTHORIZING THE REORGANIZED DEBTORS TO FILE UNDER SEAL
SETTLEMENT AGREEMENTS WITH FREDERICK ROYSTER AND SCOTT MILLER AND
(B) AUTHORIZING LIMITED SERVICE OF MOTION SEEKING APPROVAL OF
SETTLEMENT AGREEMENTS UNDER BANKRUPTCY RULE 9019

        Upon consideration of the motion of Lyondell Chemical Company and certain of

its affiliated entities, as the reorganized debtors in the above cases (collectively, the

"**Reorganized Debtors**") for entry of an order (a) pursuant to 11 U.S.C. § 107(b)(1) and rule

9018 of the Federal Rules of Bankruptcy Procedure, authorizing the Reorganized Debtors to file

under seal their settlement agreements with claimants Frederick Royster and Scott Miller in

connection with the Reorganized Debtors' motion seeking approval of the settlement agreements

under Rule 9019, and (b) pursuant to Rule 9007, authorizing limited service of the Reorganized

Debtors' motion seeking approval of the Royster and Miller settlement agreements under Rule

9019, all as described more fully in the motion; and this Court having jurisdiction to consider the

motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the

motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it

appearing that no other notice need be provided at this time; and the relief requested being in the

best interests of the Reorganized Debtors, the Debtors and their estates and creditors; and this

Court having reviewed the motion and having determined that the legal and factual bases set forth

in the motion establish just cause for the relief granted herein; and upon due deliberation and

sufficient cause appearing therefor; it is hereby

ORDERED that the motion is granted as set forth herein; and it is further

ORDERED that the settlement agreements may be filed under seal with this Court; and it is further

ORDERED that any motion filed by the Reorganized Debtors seeking approval of the settlement agreements may be redacted to remove any material quoted from and any dollar amounts contained in the settlement agreements; and it is further

ORDERED that the Reorganized Debtors are authorized pursuant to Rule 9007 to serve any motion filed by the Reorganized Debtors seeking approval of the settlement agreements on a limited service list consisting of (a) the claimants, (b) the Creditor Representative and (c) the U.S. Trustee; and it is further

ORDERED that this Order shall be effective and enforceable immediately upon entry; and it is further

ORDERED that this Order is without prejudice to the rights of any party in interest or the United States Trustee for the Southern District of New York to seek to declassify and make public any portion of the material filed under seal.

Dated: New York, New York
  *<u>November 4, 2013</u>*

        UNITED STATES BANKRUPTCY JUDGE
        *<u>s/ Robert E. Gerber</u>*

## Exhibit 2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

---------------------------------------------------------------x
            :  **Chapter 11**

*In re:*           :

            :  **Case No. 14-11916 (HJB)**

**GT ADVANCED TECHNOLOGIES INC.,** *et al.*, :

            :  **Jointly Administered**

     **Debtors.**[1]       :

            :
---------------------------------------------------------------x

**ORDER APPROVING PROCEDURES FOR THE EXPEDITED ADJUDICATION AND**
**RESOLUTION OF SECURED CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS, AND**
**OTHER PRIORITY CLAIMS, AND MEDIATION OF SUCH CLAIMS**

Upon the motion (the "Motion")[2] of GT Advanced Technologies Inc. ("GT") and its

affiliated debtors as debtors in possession (collectively, "GTAT" or the "Debtors") for entry of

an order (the "Order") approving procedures for adjudicating secured claims, administrative

expense claims, and other priority claims (each, a "Senior Claim") on an expedited basis (the

"Senior Claims Resolution Procedures") and procedures for the mediation of such Senior

Claims, and this Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157; and venue being proper

in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion

being adequate and appropriate under the particular circumstances; and the Court having

determined that the legal and factual bases set forth in the Motion establish just cause for the

---

[1]  The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126), and GT Advanced Technologies Limited (1721). The Debtors' corporate headquarters are located at 243 Daniel Webster Highway, Merrimack, NH 03054.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

relief granted herein; and upon all of the proceedings had before the Court; after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED that:

1.     The Motion is GRANTED as set forth herein.

2.     Any and all objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, resolved, or settled as set forth herein or set forth in a stipulation presented to the Bankruptcy Court, and all reservations of rights included therein, are hereby overruled in all respects and denied.

3.     The Senior Claims Resolution Procedures apply to all Senior Claims that are not already allowed by a final order of the Court, but only if the Debtors notify the Senior Creditor that its Senior Claim is subject to the Senior Claims Resolution Procedures as set forth herein. The Debtors may provide such notification either (a) at the time of filing an objection to a Senior Claim or (b) by filing a separate notice after an objection to a Senior Claim has been filed (including for objections to Senior Claims that have already been filed).  Any such notification shall include all legal and factual bases for the Debtors' objection to the Senior Claim;  all documents upon which the Debtors intend to rely in Court in opposition to the objected Senior Claim; and a copy of this Order.

4.     Senior Creditors are required to respond to each objection to a Senior Claim that is subject to the Senior Claims Resolution Procedures (a "Senior Claim Objection") no later than 21 calendar days after the filing and service of such Senior Claim Objection.

5.     Each response to a Senior Claim Objection must include: (a) all legal and factual bases for the Senior Claim subject to the Senior Claim Objection; and (b) all documentation upon which the Senior Creditor intends to rely in Court in support of its Senior Claim that is the subject of the Senior Claim Objection.

6.      With regard to any Senior Claim for which a Senior Claim Objection has been filed, a hearing will be conducted with no less than 30 calendar days' advance notice; provided, however, that the Debtors reserve their right to request any such hearing on a more expedited basis and any party in interest reserves its right to object to the hearing occurring on a more expedited basis.

7.      The Debtors and each Senior Creditor may require each other to respond to requests for production of documents, interrogatories, and requests for admission (collectively, "Discovery Requests") no later than 21 calendar days after service of such Discovery Request upon the party subject to the request.

8.      The Debtors and each Senior Creditor may require each other to participate in one deposition under Rule 30(b)(6) of the Federal Rules of Civil Procedure, if the party requesting the deposition schedules that deposition at least 21 calendar days after requesting the deposition.

9.      Nothing in this Order shall be construed as requiring the application of the Senior Claims Resolution Procedures to any objection to claims or proofs of claim that were previously filed with the Court, or that may be filed in the future, in accordance with the Bankruptcy Rules and other orders of the Court governing objections to claims.

10.     Subject to Paragraph 9 above, and except as set forth below, all Senior Claims are subject to mandatory, non-binding mediation ("Mediation") if the Debtors notify the Senior Creditor that its Senior Claim is subject to the Mediation process; provided, however, that any such Senior Creditor with a Senior Claim in an amount of $50,000 or less (or who elects to reduce its Senior Claim to $50,000) may opt out of the Mediation by filing a notice of such opt-out with the Bankruptcy Court no later than 21 calendar days after the Debtors notify the Senior Creditor that its Senior Claim is subject to the Mediation process.

11.     The Debtors may elect at any time to withdraw their notice that a Senior Claim is subject to the Mediation process.

12.     Unless the Senior Creditor opts out of Mediation in accordance with paragraph 10 above, for Senior Claims in amounts of $50,000 or less (or reduced to $50,000), the Mediation may occur telephonically, provided that the Senior Creditor may attend the Mediation in person if such Senior Creditor desires.  For Senior Claims in amounts of more than $50,000, the Mediation shall occur in person.  The Mediations held in person will occur in a designated space or courtroom at the United States Bankruptcy Court for the District of New Hampshire in Manchester, New Hampshire; the Central Division of the United States Bankruptcy Court for the District of Massachusetts in Worcester, Massachusetts; the Western Division of the United States Bankruptcy Court for the District of Massachusetts in Springfield, Massachusetts; or such other locations as may be agreed to between the Debtors, the Senior Creditor, and the mediator.[3]

13.     To initiate a Mediation of a Senior Claim, the Debtors shall provide notice to the Senior Creditor at least 30 calendar days before the Mediation, which notice (the "Mediation Notice") shall include: (a) information about the Claim and the Senior Creditor subject to the Mediation process; (b) a list of at least two proposed mediators, from which the Senior Creditor shall choose one; and (c) the date and time of the proposed Mediation.

14.     Any Senior Creditor who receives a Mediation Notice may, but is not required to, send to the Debtors at least 21 calendar days prior to the Mediation a good faith, binding offer to settle the Senior Claim that is the subject of the Mediation Notice at an amount less than the filed

---

[3] Reservations for space at the United States Bankruptcy Court for the District of New Hampshire should be made with Courtroom Deputy Maureen Shambo at (603) 222-2685.  Reservations for space at the United States Bankruptcy Court for the Central or Western Divisions of the District of Massachusetts should be made with Courtroom Deputy Stephen Reynolds at (413) 785-6909.

Senior Claim.  The Debtors are authorized to accept and be bound by the offer, provided counsel for the Official Unsecured Creditors Committee consents to such settlement.

15.     Any (i) former United States Bankruptcy Judge and/or (ii) disinterested person jointly selected by the Debtors and the Senior Creditor is hereby authorized and appointed to serve as a mediator without further order of this Court.  The Debtors shall schedule the Mediations at a time and date to be determined by the Debtors after consultation with the mediators and the subject Senior Creditors.

16.     Each Mediation must be attended by: (a) one attorney and/or a representative of the Debtors with decision-making authority; and (b) one attorney and/or a representative of the Senior Creditor with decision-making authority.  Representatives of the Exit Lenders and GTAT's DIP lenders may not attend the Mediation sessions; however, the Debtors and their representatives may consult with them separately during the Mediation sessions.  One attorney for the Official Unsecured Creditors Committee may also attend each Mediation session.

17.     Each of the Senior Creditors and GTAT may submit to the mediator a mediation statement of up to 5 pages (excluding exhibits) as well as copies of GTAT's Senior Claim Objection or the Senior Creditor's response thereto, and any historical documents supporting the Debtors' Senior Claim Objection or the Senior Creditor's response thereto. Mediation statements must be submitted no later than seven calendar days before the commencement of the Mediation.

18.     All aspects of the Mediation will be confidential and subject to Federal Rule of Evidence 408, and no written submission will be filed with the Court (except for the opt-out notice described in paragraph 10 above).

19.     If the Debtors, the Senior Creditor, and counsel for the Official Unsecured Creditors Committee each consent, an agreement arising from a successful Mediation shall be binding with respect to such Senior Creditor's Senior Claim without further order of the Court.

20.     GTAT is authorized to pay any costs or fees billed by the mediators in connection with their performance of the Mediations upon application to, and approval by, the Court, such applications to be submitted in a form substantially similar to the requirements set forth in New Hampshire Local Bankruptcy Rules 2016-1(e) and (f).  Notwithstanding the foregoing, a mediator shall not be required to submit a separate application for each Mediation.

21.     Following the Mediation, each mediator shall file a report with the Court indicating whether a settlement was reached as to each Senior Claim that was subject to the Mediation process.

22.     The stay provided for in Bankruptcy Rules 6004(h) is hereby waived, and this Order shall be effective immediately upon its entry.

23.     The time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a), unless otherwise provided herein. To the extent that the time periods set forth in this Order vary from those provided in Bankruptcy Rule 9006(a), they are modified, upon good cause shown, pursuant to Bankruptcy Rule 9006(c).

24.     The requirement set forth in Local Rule 7102(b)(2) that any motion filed shall have an accompanying memorandum of law is waived.

25.     The provisions of this Order shall not apply to any Senior Claims that may have been filed by Intego GmbH, MT Systems, Inc., or DCM Tech Corporation.

26.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated:  December 17, 2015
          Manchester, NH

/s/ Henry J. Boroff
_____
HONORABLE HENRY J. BOROFF
UNITED STATES BANKRUPTCY JUDGE