1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF CONNECTICUT
2                          BRIDGEPORT DIVISION

3   IN RE:                          .  Chapter 11
                                    .  Case No. 22-50073 (JAM)
4   HO WAN KWOK, *et al.*,          .
                                    .  (Jointly Administered)
5           Debtors.               .
                                    .
6   . . . . . . . . . . . . . . . . .
                                    .
7   LUC A. DESPINS, CHAPTER 11  .  Adversary Proceeding
    TRUSTEE,                     .  No. 24-05042 (JAM)
8
            Plaintiff,           .
9
        v.                       .
10
    RESTORATION HARDWARE, INC., .
11  *et al.*,                    .

12          Defendants.          .
                                 .
13  . . . . . . . . . . . . . . . .
                                 .
14  LUC A. DESPINS, CHAPTER 11  .  Adversary Proceeding
    TRUSTEE,                     .  No. 24-05182 (JAM)
15
            Plaintiff,           .
16
        v.                       .
17                               .  Courtroom 123
    MAX KRASNER,                 .  Brien McMahon Federal Building
18                               .  915 Lafayette Boulevard
            Defendant.           .  Bridgeport, Connecticut 06604
19                               .
                                 .  Tuesday, January 7, 2025
20  . . . . . . . . . . . . . . . .  1:08 p.m.

21

22                   TRANSCRIPT OF HEARING
             BEFORE THE HONORABLE JULIE A. MANNING
23              UNITED STATES BANKRUPTCY JUDGE

24

25

1    APPEARANCES:

2    For the Chapter 11
     Trustee:                        Patrick R. Linsey, Esquire
3                                    NEUBERT PEPE & MONTEITH, P.C.
                                     195 Church Street
4                                    13th Floor
                                     New Haven, Connecticut 06510
5
                                     -and-
6
                                     Luc A. Despins, Esquire
7                                    PAUL HASTINGS, LLP
                                     200 Park Avenue
8                                    New York, New York 10166

9    For Max Krasner:                Ronald I. Chorches, Esquire
                                     LAW OFFICES OF RONALD I. CHORCHES
10                                   82 Wolcott Hill Road
                                     2nd Floor, Suite 2
11                                   Wethersfield, Connecticut 06109

12   For the U.S. Trustee:           Holley L. Claiborn, Esquire
                                     OFFICE OF THE UNITED STATES TRUSTEE
13                                   The Giaimo Federal Building
                                     150 Court Street
14                                   Room 302
                                     New Haven, Connecticut 06510
15
     For Pacific Alliance
16   Asia Opportunity Fund:          Annecca H. Smith, Esquire
                                     ROBINSON & COLE, LLP
17                                   280 Trumbull Street
                                     Hartford, Connecticut 06103
18

19   (APPEARANCES CONTINUED)

20   Audio Operator:                 Electronically recorded

21   Transcription Company:          Reliable
                                     The Nemours Building
22                                   1007 N. Orange Street, Suite 110
                                     Wilmington, Delaware 19801
23                                   Telephone: (302)654-8080
                                     Email:  gmatthews@reliable-co.com
24

25   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.

1    <u>ALSO APPEARING</u>:

2                              Roland Jones, Esquire

1                                    INDEX

2    MOTIONS:                                                    PAGE

3              **In re:  Ho Wan Kwok, *et al.,* Debtors.**
                        **Case no. 22-50073 (JAM)**

4    Matter
     No. 3884  Motion to Amend Order Granting Retention and        12
5              Employment of Pallas Partners LLP as
               Solicitors in United Kingdom Filed by Georg
6              Alexander Bongartz on behalf of Luc A.
               Despins, Chapter 11 Trustee
7
               Court's Ruling:                                     13
8
     Matter
9    No. 3911  Application to Employ Kobre & Kim (GCC) LLP as       8
               Special Counsel in United Arab Emirates Filed
10             by Luc A. Despins on behalf of Luc A. Despins,
               Chapter 11 Trustee
11
               Court's Ruling:                                     12
12

13           **In re:  Luc A. Despins, Chapter 11 Trustee v**
                     **Restoration Hardware, Inc., *et al.***
14               **Adversary Proceeding no. 24-05042 (JAM)**
     Matter
15   No. 41    Motion to Withdraw Appearance Filed by Ronald       19
               Ian Chorches on behalf of Max Krasner,
16             Defendant
17             Court's Ruling:                                     28

18   Matter
     No. 45    Order Setting Status Conference                     19
19
               Court's Ruling:                                     28
20

21

22

23

24

25

1                                INDEX

2    MOTIONS:                                                    PAGE

3              **In re:   Luc A. Despins, Chapter 11 Trustee v**
                           **Max Krasner**
4              **Adversary Proceeding no. 24-05182 (JAM)**
     Matter
5    No. 20    Motion to Withdraw Appearance Filed by Ronald    19
               Ian Chorches on behalf of Max Krasner,
6              Defendant

7              Court's Ruling:                                  28

8    Matter
     No. 24    Order Setting Status Conference                  19
9
               Court's Ruling:                                  28
10

11   Transcriptionist's Certificate                             29

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1              (Proceedings commenced at 1:08 p.m.)

 2              THE COURT:  We have matters on the calendar at

 3 1:00 p.m., so I ask the courtroom deputy to please call the

 4 calendar.

 5              THE DEPUTY:  22-50073, Ho Wan Kwok; adversary --

 6              THE COURT:  Good afternoon -- oh, go ahead.  I'm

 7 sorry, you're right.  Please go ahead.  I apologize.

 8              THE DEPUTY:  Adversary 24-05042, Despins v

 9 Restoration Hardware, Inc., et al., and 24-05182, Despins v

10 Krasner.

11              THE COURT:  Okay.  Good afternoon.

12              If we could have appearances for the record,

13 starting with the Chapter 11 Trustee, please.

14              MR. DESPINS:  Good afternoon, Your Honor, and

15 happy new year.  Luc Despins, Chapter 11 Trustee.

16              THE COURT:  Good afternoon, and happy new year to

17 all of you.

18              MR. LINSEY:  Good afternoon, Your Honor.

19              Patrick Linsey, Neubert, Pepe & Monteith, counsel

20 for the Chapter 11 Trustee.

21              THE COURT:  Good afternoon.

22              MR. CHORCHES:  Good afternoon, Your Honor, and

23 happy new year.  I'm Ronald Chorches.  I represent the

24 Defendant in the adversary proceedings that are before the

25 Court today.  I represent Max Krasner, the Defendant.

1              THE COURT:  Good afternoon.

2              MR. JONES:  Good morning -- good afternoon, Your

3    Honor.  Roland Jones.  I also represent Max Krasner.

4              THE COURT:  Attorney Jones, do you have an

5    appearance on file?

6              MR. JONES:  No, Your Honor.  I just wanted to

7    state my name for the record, but I don't expect to be

8    talking or making argument.

9              THE COURT:  Well, you can't represent a party

10   unless you have an appearance on file, Attorney Jones.  So, I

11   mean, you can listen to this hearing, but our Local Rules and

12   the District Court Local Rules all, and the Federal Rules of

13   Civil Procedure, you need to file an appearance if you're

14   going to be representing any party.  So if you're not filing

15   an appearance, then you're not representing any party, okay?

16             MR. JONES:  I understand.  Very good, Your Honor.

17             THE COURT:  Thank you.

18             MS. CLAIBORN:  Good afternoon, and happy new year,

19   Your Honor.  Holley Claiborn for the U.S. Trustee.

20             THE COURT:  Good afternoon and happy new year to

21   you, as well.

22             MS. SMITH:  Good afternoon, Your Honor.

23             Annecca Smith, Connecticut counsel for creditor

24   PAX.  I just plan to observe today.  Thank you.

25             THE COURT:  Thank you and good afternoon.

1       All right.  So Trustee Despins, on the calendar in

2  the main Chapter 11 jointly administered cases are two

3  matters:  a motion to amend an order and an application to

4  employ.  How would you like to proceed?

5       MR. DESPINS:  As to those two matters, Your Honor,

6  to proceed, I would start with the Kobre & Kim retention,

7  which is Docket 3911.

8       THE COURT:  Go right ahead.

9       MR. DESPINS:  Thank you, Your Honor.

10       So, we filed an application to retain the law firm

11  of Kobre & Kim as special counsel, with respect to UAE,

12  United Arab Emirates matters.  As we explained on the

13  application, we're retaining the branch of Kobre & Kim --

14  although Kobre & Kim is an American-based firm, we're

15  retaining their UAE branch to advise us with respect to

16  potential recovery actions or other related actions in the

17  UAE.

18       As Your Honor may or may not know, it's public

19  record that William Che (phonetic) who was one of the co-

20  defendants in the criminal trial and was, you know, was not

21  tried, but was charged, but did not appear and was not

22  arrested, he is located in the UAE.  As well, we understand

23  that the debtor's son spent a substantial amount of time in

24  the UAE.  And there are other potentially-related companies

25  that are based or operating in the UAE and we don't have the

1  expertise to determine what type of claims or actions could

2  be prosecuted there and that's why we filed a motion to

3  retain Kobre & Kim.

4         No creditor has objected to the relief sought in

5  the application, Your Honor.  The U.S. Trustee filed a

6  statement raising three concerns.  We addressed two of those

7  through the filing at Docket 3936 of a revised order and

8  there's a mark to show a changed version at pages 11 --

9  starting at page 11 of 15 of that filing, Docket 3936, to

10  show the two changes that we made to address the U.S.

11  Trustee's concern and those related to the overhead expenses

12  and also to make clear that this Court has exclusive and sole

13  jurisdiction to deal with compensation disputes, if any, that

14  would ever arise with Kobre & Kim.  So I believe that those

15  two issues are resolved.

16         The third issue raised by the U.S. Trustee is the

17  issue of the liability cap, which is set in the engagement

18  letter at five million per instance or per originating cause.

19  And let me be very clear, if we were retaining Kobre & Kim in

20  the U.S., we would never have that.  You know, law firms in

21  the U.S. have not been successful at trying to cap their

22  liability, but in Europe and around the world, it is very

23  common and, actually, you dealt with this in the retention of

24  our Swiss counsel and they also have a liability cap of five

25  million.  That's at Docket 3034.  That cap, obviously, does

1    not apply to claims based on fraud, fraudulent

2    misrepresentation, personal injury, or things like that.

3             And, Your Honor, our view is based on the

4    circumstances, do we like the cap?  No.  But, practically, it

5    is a standard provision in Europe and around the world now.

6    We negotiated the $5 million cap based on what we were able

7    to obtain and approve by Your Honor in the Swiss law firm

8    case and, therefore, we would ask Your Honor to overrule the

9    trustee's objection on that point.

10            And I believe that that's -- I hope that the two

11   other points with the U.S. Trustee were resolved, but -- I

12   think that's the case, but counsel for the U.S. Trustee can

13   confirm that.  So that's all I have on Kobre & Kim, Your

14   Honor.

15            THE COURT:  Okay.  Thank you.

16            Attorney Claiborn?

17            MS. CLAIBORN:  Thank you, Your Honor.

18            Trustee Despins articulated correctly that the

19   revised order resolved two of the three issues raised by the

20   U.S. Trustee.  The remaining issue is the one that Trustee

21   Despins just covered, with respect to paragraph 13 of the

22   standard terms of engagement provisions that are attached to

23   the application and those limit the liability of Kobre & Kim

24   to $5 million.

25            The U.S. Trustee is opposed to any limit on

1  liability as not being appropriate for any professional who's

2  representing the trustee and the estate.  We've had this

3  argument, as the trustee noted, before, in connection with

4  other retention applications and the U.S. Trustee is

5  consistent with this position, it opposed it then and opposes

6  it now.

7         While it might be standard outside the United

8  States, it's certainly not standard inside the United States

9  and it puts the risk of problems on the estate, which is

10 inappropriate and the U.S. Trustee would ask the Court to

11 overrule that request and to strike that provision from the

12 agreement.

13        THE COURT:  Okay.  And the revised proposed order

14 doesn't address it specifically because it just says the

15 agreement is in place, but you're saying, Attorney Claiborn,

16 that you would like the Court to strike that provision from

17 the agreement, correct?

18        MS. CLAIBORN:  Yes, Your Honor.

19        THE COURT:  Okay.  Trustee Despins, do you have

20 any response?

21        MR. DESPINS:  Yes, very briefly.

22        If Kobre & Kim does not get retained, I'm going to

23 have to go to another firm and setting us back, because

24 they've already started working, and the same issues will

25 arise.  So, as I said, I prefer to not have a cap, but the

1  problem is that the precedence are against me in that.  In

2  Europe, the law firms have been successful imposing these

3  caps.  Most of the times, the caps were much lower than that

4  and that's why we ask the Court to overrule the U.S.

5  Trustee's objection.

6          It's not something that's within our control to

7  impose a no-cap agreement on them.  They will not do the work

8  without that cap and that's kind of the market in Europe.

9  So, that's, unfortunately, where we are.

10          THE COURT:  Okay.  Attorney Claiborn, anything

11  further?

12          MS. CLAIBORN:  No, Your Honor.

13          THE COURT:  All right.  I'm going to have to go

14  back and look at that because when I saw the notice of filing

15  of revised proposed order, I thought the issues were

16  resolved.  I, obviously, just need to go back and look at

17  that.  I'll take that under advisement, but I anticipate that

18  I will rule very shortly on that application, okay?

19          MR. DESPINS:  Thank you, Your Honor.

20          THE COURT:  Thank you.

21          MR. DESPINS:  So, we would move now to the

22  amendment, the motion to amend the retention of Pallas

23  Partners, our UK counsel, and the motion was filed

24  December 12th, at Docket 3884.

25          It's fairly simple.  They pointed out to us that

1    we retained them, with respect to the UBS matter because all

2    (indiscernible), that's true and we recently expanded their

3    retention to deal with the, I call it a "bankruptcy

4    proceeding," but it's called an "administration proceeding"

5    of the company called Hamilton Capital Holdings Ltd. in the

6    U.K.  And they said, Well, look, we need to get a court order

7    because we're not covered by the UBS retention for that and

8    they're absolutely right.  So it doesn't change the terms at

9    all, Your Honor, of their retention; it just makes clear that

10   they're also authorized to act on our behalf, with respect to

11   the Hamilton Capital Holdings insolvency matter pending in

12   the U.K.

13            I believe that U.S. Trustee had filed a statement

14   of no objection at 3933 and, therefore, would ask Your Honor

15   to approve the modifications to their retention.

16            THE COURT:  Thank you.

17            Attorney Claiborn?

18            MS. CLAIBORN:  I have nothing to contribute, Your

19   Honor.

20            THE COURT:  Okay.  Thank you.

21            I just wanted to -- again, I have it in front of

22   me -- I did review the proposed order, but I want to do that

23   again just to make sure that I had no changes other than the

24   courtroom deputy -- the proposed order amending -- the order

25   amending order granting application to approve and retain

1  Pallas Partners is at ECF 3884, page 8 of 14 is where it

2  starts.

3          And what we'll need to do is just at the

4  beginning -- at the bottom of the first page of the order,

5  we'll have to take out the word "proposed" and add today's

6  hearing date in the blank that there was.  And, otherwise, I

7  have no changes to that order and the order can enter, so

8  that motion is granted.

9          MR. DESPINS:  Thank you, Your Honor.

10          THE COURT:  Thank you.

11          MR. DESPINS:  And I have nothing further, except

12  to mention that we are preparing a proposed agenda for the

13  hearing tomorrow, which you'll be free to disregard if you so

14  choose, but to try to organize the hearing because there are

15  so many people who want to participate, so many things that

16  will be discussed tomorrow.  This is the hearing -- a status

17  conference, I should call it, with respect to the hearing

18  that's scheduled for January 15th.  So I just want to alert

19  Your Honor that we're in the process of finalizing a proposed

20  agenda that we will be filing with the Court.

21          THE COURT:  When you say, "so many people want to

22  talk," how many people are we talking about?

23          MR. DESPINS:  Well, there's the, what I call the

24  "joint Defendants" and they will -- now, we're talking about

25  the February 15th -- the January 15th hearing?

1          THE COURT:  Yep.

2          MR. DESPINS:  They've designated three speakers,

3    so that's not a problem, but --

4          THE COURT:  Well, it might be from the Court's

5    perspective, but we'll see about that.

6          MR. DESPINS:  Well, clearly, it is up to

7    (indiscernible) to try to (indiscernible) them, so that group

8    wants to have three speakers, but -- and that will all be

9    addressed tomorrow.  But, also, there's a number of other

10   parties that have, like, for example, the Zeisler firm and

11   others --

12         THE COURT:  No, I understand.  I understand.

13         MR. DESPINS:  -- that also are scheduled for that

14   day and those issues are not perfectly --

15         THE COURT:  I understand.

16         MR. DESPINS:  -- aligned.  Okay.  Fine.  So that's

17   what we need to address.

18         THE COURT:  But I would definitely appreciate the

19   agenda and that's definitely appreciated, but I will say that

20   those parties -- first of all, the joint brief parties

21   already have spoken through one person.  So whether or not

22   they're going to speak through three people, I'll determine.

23         And with regard to the Defendants in the other

24   adversary proceedings that are not mediation avoidance

25   procedure adversary proceedings, those motions to dismiss

1  that are on the calendar, there are several that are

2  represented by the same lawyer and then I think there's only

3  one or two where there's only one other lawyer.  Those

4  parties all argued that they wanted to be heard at the time

5  of the hearing on the joint brief.  And if their issues are

6  not in alignment, I will address those in the manner in which

7  I think is appropriate, given that I heard them listen and

8  say that they wanted to be heard and so, I will do what I

9  think is appropriate under the circumstances.

10           But I think the agenda would be very helpful, so

11 thank you.

12           MR. DESPINS:  Thank you, Your Honor.

13           And I may have misspoken, because I said they're

14 not alignment -- that's not what I meant -- what I meant is

15 that some of them raised different issues.  For example, they

16 have say the trustee didn't (indiscernible) actually fraud --

17           THE COURT:  And I will address that.

18           MR. DESPINS:  -- sufficiently.

19           THE COURT:  And I will address that --

20           MR. DESPINS:  So that has nothing to do with

21 (indiscernible) --

22           THE COURT:  And I will address all of those things

23 because the hearing is on --

24           MR. DESPINS:  Okay.

25           THE COURT:  -- a joint brief and the four issues

1   in the joint brief and that's what -- and all the parties

2   that wanted their motions to dismiss to be heard at the same

3   time, that's what they argued, that they also had those --

4   some, if not all of those issues raised in their motions to

5   dismiss and I will address those appropriately, as part of

6   the case management of this, of these adversary proceedings.

7           But, again, I appreciate what you're saying, I

8   just want to be very clear.  This is not -- we are not --

9           MR. DESPINS:  Thank you, Your Honor.

10          THE COURT:  -- going to spend hours and hours on

11  this.  The issues are what they are.  They've been briefed

12  and I will hear things from parties, number one.

13          Number two, one of the things that we'll talk

14  about tomorrow is that I'm not going to spend an hour taking

15  appearances, either, because all the parties that have signed

16  on to the joint brief have signed on to the joint brief.  All

17  the parties that have filed their motions to dismiss, those

18  are already in -- they've already filed their appearances and

19  it's already in the record.  The courtroom deputy will take

20  care of putting all that together because we're not going to

21  spend an enormous amount of time doing that on the record.

22  And we'll go from there.  It'll all be fine.

23          MR. DESPINS:  Thank you, Your Honor.

24          THE COURT:  But I just have one thing before we

25  turn -- I don't know what happened to Attorney Chorches and,

1   I think it was Attorney Jones who was on the call, but

2   they -- I don't know where they are because those are the

3   next matters.

4           There's Attorney Chorches.  Okay.  So, Attorney

5   Chorches, where's Attorney Jones?

6           MR. CHORCHES:  I believe he's still on the call.

7           THE COURT:  Okay.  All right.  Good.

8           Then we just need one more minute and then we're

9   going to turn to your issue in the adversaries.

10          MR. CHORCHES:  Okay.

11          THE COURT:  So, Trustee Despins, I have one

12  question for you, which you don't need to answer right now,

13  necessarily, but at some point you will.  There was a new

14  adversary proceeding filed right before the holidays that is

15  Despins v AA Global Venture Ltd. and it has several

16  Defendants, numerous Defendants, many of which are outside of

17  the United States.  And in the past, we issued a subpoena or

18  the Clerk's Office issued a subpoena that gave everyone, all

19  Defendants, 60 days to respond, regardless of whether they

20  were in the United States or not.

21          And you had raised -- someone had raised a

22  question about whether that was an appropriate subpoena.  I'm

23  prepared to do -- have the Clerk's Office do that, unless you

24  think there's some other -- there should be two time frames.

25  But we've done that in the past in other adversaries, so I'm

1  not -- I just want to avoid having one summons issue and then

2  having an issue be raised where some other kind of summons

3  should issue.

4          MR. DESPINS:  Understood, Your Honor.

5          And we will revert to the Court through the

6  courtroom deputy email address if we can on that.

7          THE COURT:  Okay.  Thank you.

8          MR. DESPINS:  Thank you, Your Honor.

9          THE COURT:  All right.  That's very helpful.

10         So, then, as far as today's calendar is concerned,

11  then we're turning to the two adversary proceedings:  24-

12  05042 and 24-05182.

13         And Attorney Chorches, your motion to withdraw the

14  appearance on behalf of the Defendant Krasner, and then the

15  Court setting a status conference on those two matters, in

16  which you filed an appearance, and which you filed the same

17  motion to withdraw the appearance.

18         The reason the Court is setting a status

19  conference is because it's not clear -- well, it is clear,

20  actually, from what you wrote in your motion to withdraw

21  appearance, that you have no contact with the client and that

22  the only contact you have, the client that you represent, and

23  the only contact you have is with Attorney Jones.  And you

24  said that you were going to move for your admission, the

25  admission of Attorney Jones *pro hac vice* and that hasn't

1  happened yet.

2  And then I asked Attorney Jones today whether he's

3  going to appear and he said no.  So, I'm not going to grant

4  your motion.  I know you've withdrawn it, but I don't

5  understand what's going on here.  How can you represent a

6  client that you don't have any direct contact with and then

7  Attorney Jones doesn't have any obligations to the Court by

8  filing an appearance?

9  MR. CHORCHES:  I understand the Court's concern,

10  Your Honor, and let me explain.  When I first became involved

11  in the case, though I didn't have client contact, I did

12  have -- I worked with Attorney Jones really up to the time

13  when (indiscernible) motion that Your Honor referenced was

14  filed.  I was very familiar with the case a lot more than

15  Attorney Jones because I already represented multiple

16  Defendants in different adversary proceedings had

17  participated.  I had calls with trustee's counsel.  I drafted

18  the answer Attorney Jones that would state that I made a

19  mistake at that time by including his signature on it because

20  I had not yet filed the motion for *pro hac vice*.

21  It's at a point in time where Attorney Jones

22  wanted out of the case due to billing concerns and I had

23  conversations with Mr. Krasner at that point after the --

24  after my motion was filed and with his counsel several times

25  about me continuing to represent Mr. Krasner in both these

1  adversary proceedings.

2          THE COURT:  All right.  Let me stop you right

3  there.

4          You just said you had conversations with Mr.

5  Krasner and his counsel.  Who's his counsel?

6          MR. CHORCHES:  I apologize.

7          He had, like, a general counsel who --

8          THE COURT:  Well, who is that?

9          MR. CHORCHES:  His first -- I don't have it in

10  front of me -- his first name is Louis.  I'd have to -- I

11  apologize, I don't have his last name, but I can find it and

12  provide it.  Louis Freeman.  His name is Louis Freeman and he

13  is out of New York and --

14          THE COURT:  And he's Mr. Krasner's general

15  counsel; that's what he represented to you?

16          MR. CHORCHES:  I believe he represents him in a --

17  well, counsel regarding a criminal matter.

18          THE COURT:  Okay.  Well, you need to know, right?

19  You have an obligation to this Court; you filed a notice of

20  appearance.  You need to know how you have authority to act

21  and through whom you are acting.

22          Apparently, when you filed the notice of

23  appearance, you had no authority from Mr. Krasner directly to

24  file a notice of appearance on his behalf; is that correct?

25          MR. CHORCHES:  There was the intent at that time

1  that I would be filing a motion *pro hac vice* for Attorney

2  Jones' office.

3          THE COURT:  Okay.  So why haven't you done that?

4          MR. CHORCHES:  The reason is, first of all, I

5  should have done that earlier and there were conversations in

6  an attempt to quickly resolve both adversary proceedings, to

7  settle them for dollar amounts that the trustee would, we

8  thought --

9          THE COURT:  I don't want to hear anything about

10  settlement, Attorney Chorches.  I asked you a very specific

11  question.

12          So, you had no direct communication with

13  Mr. Krasner when you filed the notice of appearance on his

14  behalf; is that correct?  That's the question I asked you.

15          MR. CHORCHES:  That is correct, but I did have the

16  intent at that point, for filing a motion for *pro hac vice*.

17          THE COURT:  So, how has your -- why is your intent

18  changed?  You just filed a motion to withdraw an appearance

19  on behalf of the Defendant that you admitted you had no

20  direct contact with until, I guess, recently.

21          I don't understand what's going on.  You either

22  represent the Defendant or you don't.  And if you already do

23  and you have an appearance, you have Rule 11 issues.  I mean,

24  we're not going to do this.

25          MR. CHORCHES:  Your Honor --

1    THE COURT:  This isn't going to be, in the

2  beginning, you file an appearance for somebody and then you

3  leave.  I mean, these are serious matters.  This person is a

4  Defendant.  You have filed a notice of appearance on his

5  behalf and you've stated in the record under Rule 11 that

6  you're going to file a motion for *pro hac vice* for Attorney

7  Jones and now Attorney Jones is here today and he's saying,

8  No, no, no, well, he represents Max Krasner, he's not going

9  to file a notice of appearance.

10    Well, that's not how it works.

11    MR. CHORCHES:  Your Honor, I don't know that I

12  finished, but Mr. Krasner wants me to continue representing

13  him in this proceeding.

14    THE COURT:  You had a direct communication with

15  him that authorized you to contact on his behalf?

16    MR. CHORCHES:  Yes, Your Honor.

17    THE COURT:  Have you met Mr. Krasner in person?

18    MR. CHORCHES:  I had a phone conversation --

19    THE COURT:  So you don't even know what he looks

20  like?

21    MR. CHORCHES:  I haven't met him, Your Honor.

22    THE COURT:  Do you know what he looks like,

23  Attorney Chorches?  Could you pick him out if he was standing

24  here in the courtroom?

25    MR. CHORCHES:  I could not pick him out, Your

1 Honor.

2    I did not have a Zoom conference with him, but I

3 can tell you that I am intimately familiar with this case.  I

4 have been since the beginning.  I don't think that it's -- I

5 believe that appearances are often filed or not always filed

6 before the *pro hac vice* motion is filed and I would not

7 have -- again, I was very, very familiar with the defenses,

8 came up with numerous defenses.

9    THE COURT:  You filed an answer to the complaint,

10 Attorney Chorches, you didn't just file an appearance.  You

11 filed an answer.

12    MR. CHORCHES:  That is correct, Your Honor.

13    THE COURT:  That is correct.

14    So you have Rule 11 issues.  You've now made

15 representations to the Court and to all the parties that you

16 signed on behalf of this Defendant.

17    I'm not suggesting you can't stay in, but you

18 can't come in and say -- first of all, you come in and you

19 say -- you file a notice of appearance.  You say you're going

20 to file a motion *pro hac*.  You never do it.  You file an

21 answer, an answer back in May of last year, and then you file

22 a motion to withdraw the appearance saying, Well, I can't

23 appear anymore because I was contacted by Attorney Jones and

24 attorney -- I've known Attorney Jones for many years, but you

25 don't even know the Defendant and you haven't gotten any

1  authority directly from the Defendant.  That's your motion

2  that was filed on December 10th, doesn't say anything about

3  having any communications with Mr. Krasner, none, other than

4  sending a notice to him.

5          MR. CHORCHES:  At that time, I did not -- it was

6  my intent to be local counsel.

7          THE COURT:  Attorney Chorches, you filed an answer

8  in May of 2024, an answer, and then you come in seven months

9  later and say, Oh, I want to withdraw because Mr. Jones --

10  you didn't even say anything about -- you say, subsequent to

11  the filing, you were contacted by Attorney Jones to serve as

12  local counsel.  The movant has known Attorney Jones for many

13  years, okay, and has a long history of serving as local

14  counsel.

15          So, then, what's the problem?  Where's the *pro hac*

16  *vice* motion?  Maybe there isn't going to be one.  That's

17  fine, you're Defendant's counsel, but now you've represented

18  on the record and to the Court and to all parties that you've

19  had direct communications where Mr. Krasner and you're taking

20  direction from him, even though you've never met him and you

21  couldn't pick him out if he was standing here in the

22  courtroom.

23          MR. CHORCHES:  I'm going to continue representing

24  him in this case, Your Honor, and I'll have direct

25  communication with Mr. Krasner throughout.  And I've also --

1  I've had -- if Your Honor (indiscernible) knew nothing about

2  this case, I probably knew more about the case than Attorney

3  Jones.

4          THE COURT:  That's not the -- Attorney Chorches,

5  you keep going back to knowing about the case.  That's not

6  the issue.

7          The issue is, you, as an officer of the Court,

8  have filed a notice of appearance and an answer.  You then,

9  move to withdraw that appearance saying that you needed to

10  withdraw the appearance.  This is what it says, that Attorney

11  Jones contacted the movant and notified him that the

12  attorney-client relationship between Mr. Jones has been

13  irretrievably broken down.

14          Well, Mr. Jones is here today and he just told me

15  that he represents Mr. Krasner.  Even though he's not going

16  to file a notice of appearance, he just told me he's going to

17  represent Mr. Krasner, or he does -- excuse me -- we can go

18  back and listen to the recording.

19          So, I don't know what you're doing here, but I'm

20  not going to see another motion to withdraw an appearance in

21  this case in these adversaries.  You're in and you're not

22  getting out.

23          MR. CHORCHES:  I understand that.  And through the

24  motion --

25          THE COURT:  And you filed an answer, and if

1  anything else goes on in this case that doesn't make sense,

2  then, you know, somebody is going to bring some cause of

3  action.  This is not a game.

4       MR. CHORCHES:  Your Honor, it's my -- I understand

5  that and it's my intent to represent Mr. Krasner zealously in

6  both of these adversary proceedings to the end.

7       THE COURT:  Okay.  Then that's fine.

8       But I don't know why Mr. Jones is here if he's not

9  representing Mr. Krasner, but he is, actually, so you're

10 going to be working with Mr. Jones, apparently?

11      MR. CHORCHES:  No, Your Honor.  No, Your Honor.

12      I'm going to be working directly with Mr. Krasner.

13      THE COURT:  Well, maybe you should meet him, so if

14 you have to -- you know, you don't want to meet your client

15 in the courtroom, right.  Maybe you should meet him and make

16 sure you have the direct authority to act, because at this

17 point, you haven't even met him.

18      MR. CHORCHES:  I will have to -- I'm forwarding

19 him retainer agreements and I will obviously have

20 communication with my client, as required, under the Rules of

21 Professional Responsibility.

22      THE COURT:  And the Federal Rules of Civil

23 Procedure, the Local District Court Rules, and the Local

24 Bankruptcy Court Rules.

25      MR. CHORCHES:  I understand that, Your Honor, and

1  that is the main reason why the motion was withdrawn.

2         THE COURT:  What was the main reason that the

3  motion was withdrawn?

4         MR. CHORCHES:  Well, because I want to continue to

5  represent him.

6         THE COURT:  Okay.  I'm not going to entertain any

7  other motions to withdraw.  I just want that to be very

8  clear.  That will not happen.  You can file them and they

9  will be denied.

10        You are in --

11        MR. CHORCHES:  I understand.

12        THE COURT:  -- you filed a notice of appearance

13  and you filed an answer, and that's how these adversaries are

14  going to proceed.

15        I have nothing further, with regard to this status

16  conference and these adversaries.  Does anyone else wish to

17  be heard?

18        MR. DESPINS:  Nothing from the trustee, Your

19  Honor.  Thank you.

20        THE COURT:  Okay.  Then, that concludes the status

21  conferences in these adversaries.  No further status

22  conferences will be scheduled at this time.

23        That concludes all the matters on today's

24  calendar.  So, thank you, all.  Court is adjourned.

25        (Proceedings concluded at 1:40 p.m.)

## CERTIFICATION

1

2          I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter to the best of my

5   knowledge and ability.

6

7   /s/ William J. Garling                    January 13, 2025

8   William J. Garling, CET-543

9   Certified Court Transcriptionist

10  For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25