**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------x
                              :

In re:                        :    Chapter 11
                            :

HO WAN KWOK, *et al.*,[1]    :    Case No. 22-50073 (JAM)
                            :

           Debtors.        :    (Jointly Administered)
                            :

---------------------------------------------------x

**SECOND SUPPLEMENTAL MOTION OF CHAPTER 11 TRUSTEE TO EXTEND**
**FEBRUARY 15, 2025 DEADLINE FOR TRUSTEE TO FILE AVOIDANCE ACTIONS**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "<u>Trustee</u>") appointed in the chapter 11 case (the "<u>Chapter 11 Case</u>") of Ho Wan Kwok (the "<u>Debtor</u>"), by and through his undersigned counsel, hereby files this motion (the "<u>Motion</u>"), pursuant to section 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for an order, substantially in the form of the proposed order attached as **Exhibit 1** hereto (the "<u>Proposed Order</u>"), further extending the Ordered Extension (as defined below) for the Trustee to commence avoidance actions.  In support of the Motion, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      In February 2024, the Court granted the Trustee's first motion to extend the limitations periods for the Trustee to file avoidance actions.  In August 2024 the Court granted the

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Trustee's second motion seeking such relief, extending the limitations period through and including February 15, 2025.  In its August ruling, the Court found that cause existed to extend the deadline due to, among other things, "the complexity and extent of Mr. Kwok's financial affairs; and . . . the Trustee's diligence in his investigation."[2]  As discussed herein, this Chapter 11 Case remains extraordinarily complex, and the Trustee has diligently continued his investigation into the Debtor's labyrinthine finances, in particular overseas.  Accordingly, by this Motion the Trustee requests that the Court further extend the limitations periods through and including **August 15, 2025**.  The Trustee expects that, absent unexpected developments, this will be the last such blanket extension he requires in this case and that he will instead address any necessary tolling requests on a case-by-case basis going forward or by addressing specific categories of claims.

2.      Since the Court last ruled in August, the Trustee has engaged in extensive and far-reaching discovery efforts in locations throughout the world.  New information learned through Bankruptcy Rule 2004 and other discovery tools, and evidence obtained from the Debtor's criminal proceedings, has led to yet more subjects and topics requiring investigation.  In keeping with the Debtor's complex web of deceit, following one thread often leads to another thread, and so on.  The Trustee has learned new information about, among other things, the Debtor's international activities, has filed additional omnibus Bankruptcy Rule 2004 motions and has served additional subpoenas.  In the last twelve months, the Trustee has also increasingly pursued his investigation and resulting litigation outside the United States, which is generally more complex and time-consuming than domestic investigations and enforcement.  The Trustee has also continued his forensic accounting analysis of the Debtor's vast shell game and his forensic accounting firm, Kroll, has identified more Debtor-associated bank accounts (bringing the total to

---

[2]    Second Extension Order, p.3

approximately 745 accounts and approximately 203,500 transactions in and out of these accounts). Kroll's investigation reveals that these transactions aggregate to more than $10 billion dollars.

3.    As more fully set forth in the Trustee's prior Extension Motions and herein, this Chapter 11 Case—which already presents the difficulties inherent in wading through the aftermath of a largescale, international fraud—was further complicated by the significant, and unending, stream of impediments placed in the Trustee's way by the Debtor and his associates.  As this Court well knows, those impediments include the Debtor's failure to provide the Trustee with any books and records and his (and his associates') failure to comply with multiple Court orders. Unfortunately, that course of conduct continues.

4.    Another factor outside of the Trustee's control was the Debtor's criminal trial, which required the Trustee to curtail certain aspects of his investigation and recovery efforts for months.  The Trustee has continued to learn additional information revealed in connection with the Debtor's criminal proceedings since the Debtor's conviction in July—including material portions of the criminal case record that were not available until September and October of 2024 and information that came to light later still in connection with Yvette Wang's sentencing on January 6, 2025.  The Trustee expects that further relevant information may be learned in connection with the Debtor's sentencing, which has yet to be held.  This information may lead to the discovery of additional estate assets and sources of recovery for the estate.

5.    Ultimately, while the Trustee has made substantial progress since August, more work remains.  The Trustee's investigation and recovery efforts continue to be hindered by factors outside of the Trustee's control, including the incredibly complex nature of this Chapter 11 Case, which complexity is exacerbated by the Debtor's barriers (in addition to the obstructive behavior of Debtor's family and associates).

3

6.      Equally true is that the relief requested herein remains vital.  Absent an extension, the Trustee will be forced to litigate the limitations period on a one-off basis in free-standing adversary proceedings with any avoidance defendants who raise the issue.  This would impose a massive burden on the Trustee and this Court, and the cost borne by the estate, both in time and in dollars, would be astronomical, and would directly harm creditors.

## **BACKGROUND**

7.      On February 15, 2022, the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8.      On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Debtor's Chapter 11 Case.

9.      On June 15, 2022, the Bankruptcy Court entered a memorandum of decision and order [Docket No. 465] directing the United States Trustee to appoint a chapter 11 trustee.  On July 8, 2022, the Bankruptcy Court entered an order [Docket No. 523] appointing the Trustee.

### a.  **Original Extension Motion and Original Extension Order**

10.      The Debtor's bankruptcy schedules, filed in March 2022, claimed only $3,850 in assets compared to hundreds of millions of dollars of liabilities.[3]  The Debtor asserted in the Bankruptcy Court that he was essentially penniless and that his luxurious homes, the Lady May yacht, and his other publicly flaunted trappings of wealth did not belong to him, but to companies purportedly owned by his family members.[4]  As several courts have now observed, the Debtor was able to maintain his opulent lifestyle while professing to own virtually no assets by constructing a

---

[3]      *See* Schedules of Assets & Liabilities, at 1 [Docket No. 78].

[4]      *See Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions* [Docket No. 107].

vast maze of shell companies in which he hid his wealth in the names of family members and close associates.

11.    Since his appointment, the Trustee has been working diligently to identify and recover for the benefit of the estate the assets the Debtor has hidden and/or transferred.  To that end, in accordance with the Court's directive, the Trustee has launched a complex and thorough investigation and litigation process, focusing on the Debtor's "shell game"—*i.e.*, his use of alter ego companies to hide his assets from creditors.  Broadly speaking, the process has included (a) discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (b) litigation to establish that certain entities are alter egos of the Debtor and/or recover specific property and assets.

12.    Locating and recovering the Debtor's assets has required the Trustee to retain attorneys in multiple jurisdictions, as well as other professionals, such as Kroll, LLC ("Kroll"), a forensic accounting firm with international reach.  Unraveling the Debtor's maze of shell companies and tens of thousands of transactions (on its own, a hugely complex task) was further complicated and delayed by the efforts of the Debtor, his family members, and his associates to obstruct the Trustee's efforts at every turn.  Accordingly, on January 18, 2024, the Trustee filed a motion to extend or toll certain statutes of limitations that would have expired on February 15, 2024 (the "Original Extension Motion").[5]  The  Original Extension Motion contained (and this Motion incorporates by reference) a detailed description of the Trustee's efforts and successes to that date, as well as the various obstruction efforts with which the Trustee had been forced to contend.

---

[5]    *See* Docket No. 2509, *Motion for Entry of Order Extending Deadline for Trustee to File Avoidance Actions Under Bankruptcy Code Sections 108, 546(a), and 549.*

13.     On February 15, 2024, the Court issued an opinion and order granting the Original Extension Motion [Docket No. 2921] under Bankruptcy Rule 9006(b) (the "Original Extension Order").  The Court extended the Trustee's time to commence avoidance actions through August 15, 2024, and provided that such date is subject to further extension.

**b.     Second Extension Motion and Second Extension Order**

14.     On July 19, 2024, the Trustee filed the *First Supplemental Motion to Extend August 15, 2024 Deadline for Trustee to File Avoidance Actions* [Docket No. 3329] (the "Second Extension Motion" and, jointly with the Original Extension Motion, the "Extension Motions"). The Second Extension Motion is incorporated herein by reference, including the Second Extension Motion's discussion of the Trustee's further efforts and developments in the Chapter 11 Case.

15.     Certain entities objected to the Second Extension Motion and the Court held an evidentiary hearing on August 13, 2024.  The Trustee testified and was subject to cross-examination at the evidentiary hearing.  Following the hearing, on August 14, 2024, the Court entered an order (the "Second Extension Order") [Docket No. 3417] further extending until February 15, 2025 (the "Ordered Extension") the time for the Trustee to commence avoidance actions and other actions on behalf of the estate and for amending pending complaints.

**c.     Developments Since Second Extension Order**

16.     Three days before the Trustee filed the Second Extension Motion and following a criminal trial that lasted nearly two months, the Debtor was convicted on nine counts of felony racketeering, fraud, and, money laundering.  Obtaining relevant portions of the record from the Debtor's criminal trial (including exhibits, most of which were not immediately publicly filed by the prosecution) has taken additional months, with the Trustee obtaining relevant documents in September and October of 2024.  The Trustee also learned further information relevant to his investigation in connection with the sentencing of Yvette Wang, which did not occur until January

6

6, 2025.  The Debtor's sentencing hearing is not scheduled at this time and the Trustee expects

that additional relevant information will be revealed in the Debtor's sentencing proceedings.

17.    Since filing the Second Extension Motion, the Trustee has filed four additional

Bankruptcy Rule 2004 motions (three of them omnibus motions) [Docket Nos. 3398, 3594, 3758,

3981]—the most recent one filed just last week—and has served approximately fifteen additional

Bankruptcy Rule 2004 subpoenas and approximately twenty amended subpoenas.  During this

time, the Trustee has obtained production of more than 30,000 pages of documents and has learned

of approximately 200 additional bank accounts relevant to the Debtor's fraudulent scheme.

18.    Since the Trustee filed his Second Extension Motion, the Trustee has commenced

at least twenty-five new avoidance actions seeking the avoidance of over $20 million of prepetition

and postpetition transfers and has filed fourteen amended complaints seeking additional recovery

of over $12.7 million in prepetition transfers and $1.6 million in postpetition transfers.  The Trustee

is currently preparing numerous additional new and amended avoidance complaints based on the

Trustee's further investigation and analysis.

19.    Additional progress in the Trustee's investigation also led to the filing, on

December 23, 2024, of the *Second Complaint of Chapter 11 Trustee for Estate of Ho Wan Kwok,*

*Pursuant to Bankruptcy Code Sections 541, 542 and 544, Seeking (i) Declaratory Judgment that*

*Certain Entities are Alter Egos of Debtor and (ii) Related Relief* [Adv. Proc. No. 24-05322, Docket

No. 1].  This complaint discusses the Trustee's investigation leading to the identification of more

than three dozen additional shell companies (the "Additional Alter Ego Entities") participating in

and/or integral to Debtor's enterprise, which the Trustee asserts are alter egos of and/or beneficially

owned by the Debtor.

7

20.    Upon identification of the Additional Alter Ego Entities, the Trustee's investigation turned to identification of these entities' assets, transactions, and personnel.  Again, each thread in the investigation often leads to yet another thread to be pulled.  The Trustee's investigation remains active and ongoing.  The Trustee anticipates filing numerous new and amended avoidance complaints to recover fraudulent prepetition and unauthorized postpetition transfers based on both the Trustee's identification of the Additional Alter Ego Entities and further progress in the Trustee's investigation and analysis of the Debtor's finances.

21.    The Trustee has also expanded his investigation overseas, including by engaging counsel in the United Arab Emirates, where the Trustee believes the Debtor's associates may be holding and continuing to engage in financial activity involving property of the bankruptcy estate. In addition, the Trustee is currently undertaking investigations and/or litigation in locations including the United Kingdom, the British Virgin Islands, Mauritius, Switzerland, and Cyprus. The Trustee believes that his ongoing investigation outside the United States may lead to the identification of additional avoidance claims.

### d.    Debtor's Continued Obstruction Efforts and Other Challenges

22.    Since entry of the Second Extension Order, the Debtor and his associates have continued to oppose and obstruct the Trustee's efforts.  For example, multiple associates of the Debtor filed objections and/or motions to quash in connection with Bankruptcy Rule 2004 discovery sought by the Trustee.[6]  G Club Operations LLC, which the Trustee has asserted is the Debtor's alter ego and which the Debtor's criminal trial demonstrated was a major component in

---

[6]    *See Notice of Bofang Investment LLC and Feibo Jiang's Opposition to "Seventeenth Supplemental Omnibus Motion" for Further Discoveyr and Cross-Motion to Quash Subpoena* [Docket No. 3648]; *Motion to Quash Subpoenas and for Protective Order* [Docket No. 3541] filed by Yumei Hao, River Valley Operations, LLC, and Golden Eagle Ventures, LLC.

the Debtor's criminal fraud, also sought to quash one of the Trustee's Bankruptcy Rule 2004 subpoenas.[7]  Through Court orders and stipulations these matters were all eventually resolved in the Trustee's favor.

23.    Meanwhile, the Debtor and his associates (including his family members) continue to fail to produce documents and information responsive to the Trustee's discovery requests.  For example, the defense that the Debtor attempted at his criminal trial (which involved essentially admitting his ownership of numerous assets that the Debtor told this Court that he did not own), strongly suggests that the Debtor (through his agents) has responsive documents and information, which the Debtor continues to withhold from the Trustee.  Meanwhile, the Debtor's family members (*e.g.*, his daughter and his alleged wife) have prosecuted meritless appeals, requiring the Trustee to devote resources to ensuring that this Court's judgments are respected and enforced.

24.    Multiple financial institutions with operations located both within and outside the United States have also resisted the Trustee's efforts to obtain discovery on purported grounds of jurisdiction and international comity, requiring the Trustee to negotiate parameters of discovery.  Through these negotiations, the Trustee has successfully obtained compliance from multiple international financial institutions since the Second Extension Order, and the Trustee expects to obtain additional relevant documents and information from abroad in the coming months.

## **RELIEF SOUGHT**

25.    The Trustee requests entry of the Proposed Order extending the Ordered Extension for additional six months, through and including August 15, 2025.

---

[7]    *See G Club Operations LLC's Motion to Quash and Objections to the Trustee's Rule 2004 Examination Subpoena* [Docket No. 3752].

**BASIS FOR RELIEF**

26.    In the Original Extension Order, the Court held that, as a matter of law, Bankruptcy Rule 9006(b) authorizes a bankruptcy court to extend the statutes of limitations found in sections 108(a), 546(a), and 549(d) of the Bankruptcy Code.  The question, therefore, "is whether there is 'cause,' on the facts and circumstances before the Court," to do so.[8]  The Court found cause in connection with the earlier extension motions filed by the Trustee, and the Trustee submits there is cause to grant the instant Motion.

**I.    Cause Exists Under Rule 9006(b) to Grant Trustee's Requested Extension**

27.    In the Second Extension Order, the Court found cause from, among other things, the combination of (i) the Debtor's ongoing contempt and his failure to perform statutory duties (ii) the complexity and extent of Debtor's financial affairs, and (iii) the Trustee's diligence in his investigation.  The Trustee submits that these factors remain applicable.

**a.    Trustee Has Acted Diligently**

28.    A bankruptcy trustee acts diligently if any delay is not self-inflicted.  *Schmidt v. Twosons Corp. (In re Black Elk Energy Offshore Operations, LLC)*, No. 15-34287, 2022 WL 1589190, at *11 (Bankr. S.D. Tex. May 19, 2022) (noting extraordinary circumstance that supports equitable tolling "derives from some external obstacle to timely filing beyond the plaintiff's control, not from self-inflicted delay") (as modified) (internal quotation marks and references omitted);[9] *see also In re Fundamental Long Term Care, Inc.*, 501 B.R. 784, 790-91 (Bankr. M.D. Fla. 2013) ("It is enough to say that the targets cannot credibly claim the Trustee's inability to

---

[8]    Original Extension Order at 12.

[9]    *Black Elk Energy* dealt with equitable tolling, not cause under Rule 9006(b).  However, the Court has already noted that there is overlap between the factual predicates that justify the application of the two doctrines.  *See* Extension Order at 13 (citing decisions regarding equitable tolling in context of determining whether cause exists under Rule 9006(b) to extend statutes of limitation).

complete her investigation is a result of any lack of diligence on her part."). Here, the Trustee's investigation and asset recovery have been delayed by events outside of his control and apart from the Debtor's obstruction (which, to be clear, also exists).

29.     Those outside factors are (i) the sheer volume of information the Trustee must obtain and analyze, combined with the total lack of any books and records from the Debtor, and (ii) the evidence uncovered solely through the Debtor's ongoing criminal proceedings.[10]

### i.  Volume of Information

30.     The Trustee's investigation and financial analysis remains ongoing and continues to reveal the nature and extent of the Debtor's financial affairs and to identify further property of the estate and sources of estate recovery. Evidence brought to light through the Debtor's criminal proceedings, Bankruptcy Rule 2004 motions, and painstaking forensic financial analysis by Kroll, has broadened the investigation to include more than three dozen Additional Alter Ego Entities, whose assets and business dealings must be analyzed by the Trustee's forensic accountants and attorneys so that the Trustee may take appropriate measures (including, where necessary, avoidance and turnover litigation) to recover estate assets and liquidate estate claims.

31.     As was the case with the prior Extension Motions, what the Trustee learns is very rarely, if ever, a standalone piece of information. Everything the Trustee learns is another thread in the Debtor's web of deceit, with each thread leading to another, revealing more assets hidden and/or transferred. *See In re ThermoView Indus., Inc.*, 381 B.R. at 227 (granting extension motion

---

[10]    These two factors were the basis of the trustee's motion in *In re Providence Fin. Invs., Inc.,* Case No.: 16-20516-AJC.  In that case, the trustee was investigation a "multi-jurisdictional Ponzi scheme," and due to the nature and scope of the fraud the trustee was unable to complete her forensic accounting analysis or "piece together all of the claims that the estate would have" in two years.  Another "major impediment" was that "key witnesses and perpetrators" were "embroiled in several regulatory and criminal matters" with the SEC, DOJ, and foreign counterparts.  The court granted the motion, as well as several further extensions.  *See In re Providence Fin. Invs., Inc.*, No. 16-20516 (AJC) (Bankr. S.D. Fla. May 31, 2018) [Docket No. 198], *Transcript of Hearing May 10, 2018* (Bankr. S.D. Fla. May 31, 2018), and Docket Nos. 284 and 292 (motion and order).  Relevant portions of the transcript, the motion, and the court's order, are attached as Exhibit 2 to the Second Extension Motion.

under Rule 9006(b) in "an exceedingly complex case in which the Trustee has pursued and filed nearly 400 adversary proceedings"); *see also In re Fundamental Long Term Care, Inc.*, 501 B.R. 784, 790 (Bankr. M.D. Fla. 2013) ("The Court notes—as it has done many times in the past—that this case is unique. That is true not only of the facts of this case, but the legal issues as well. And the stakes are unquestionably high. There is over $1 billion in claims in this case, and the Trustee may be seeking to recover that much from the targets.").

ii.  Debtor's Criminal Proceedings

32.     While a valuable resource, the Debtor's criminal proceedings also complicated the Trustee's investigation by revealing information that requires additional investigation, adding to the volume of information the Trustee must analyze, which the Trustee has been diligently pursuing these past months. The flow of information did not end with the Debtor's criminal verdict but has continued, as the Trustee gained access to portions of the record from the criminal case in September and October of 2024 and learned still further information in the context of Yvette Wang's sentencing. Additionally, the "Stay Order" in effect from March 22 through July 18, 2024 [Docket Nos. 3038, 3327] required the Trustee to curtail certain aspects of his investigation and recovery efforts during the pendency of the criminal trial. *See generally Collins v. Decker (In re Decker)*, No. 06-60886, 2011 WL 2174349, at *5 n. 5 (Bankr. N.D.N.Y. June 1, 2011) (citation omitted) ("pendency of other legal proceedings which prevent enforcement of the subject claim" justify extending limitations period); *In re Dwek,* No. 07- 11757 (Bankr. D.N.J. Feb. 2, 2009) ("[E]quitable tolling of the Statute of Limitations is appropriate here given the recent activities by the U.S. Attorney and the FBI in conducting their investigations. That has involved a lengthy delay of continued 2004 deposition of the Debtor, and that's beyond the control of the Trustee.").[11]

---

[11]   Hr'g Tr. at 9:10-17, *In re Dwek*, No. 07-11757 (KCF) (Bankr. D.N.J. Feb. 2, 2009) [Docket No. 3916], attached as Exhibit 3 to the Second Extension Motion.

Inasmuch as developments in the Trustee's investigation typically unfold sequentially (one discovery leading to another and so on), the Trustee's investigation is still burdened by the effects of this nearly four-month delay.

**b.  Debtor's Obstruction and Lack of Cooperation**

33.     Courts find cause to extend limitations periods when a trustee is unable to make progress on discovery, especially in light of the debtor's obstruction.  *See, e.g.*, *In re Int'l Admin. Servs. Inc.*, 408 F.3d 689, 702 (11th Cir. 2005) (tolling statute of limitations based, in part, on debtor and defendant's attempts to interfere with trustee's investigation into asset diversion plan by hiding their activities and violating discovery requests).[12]

34.     In a decision that entered since this Court's Original Extension Order, a district court in the Southern District of Florida affirmed a bankruptcy court ruling extending deadlines under sections 108, 546, and 549 of the Bankruptcy Code upon the request of a bankruptcy trustee in light of fraudulent conduct by the debtors' principal.    *See In re Teras Breakbulk Ocean Navigation Enters., LLC*, 658 B.R. 611, 621 (S.D. Fla. 2024) (endorsing *In re Fundamental Long Term Care, Inc.*, 501 B.R. at 792)).  In determining that the extension was a proper exercise of the bankruptcy court's authority under Bankruptcy Rule 9006, the district court noted facts similar to those present in this Chapter 11 Case, including that the debtors' principal had "engaged in fraudulent concealment, impacting the timing in which [avoidance] claims could be brought,"

---

[12]     *See also Bender v. Mann (In re Bender)*, No. 02-00773-RTB, 2010 WL 6467681, at *9-10 (B.A.P. 9th Cir. Nov. 15, 2010), *aff'd*, 480 F. App'x 445 (9th Cir. 2012) (affirming lower court decision for equitable tolling where the debtor's obstruction "stood in the way" of the trustee's filing of an avoidance action and noting the "case law is replete with examples where courts have allowed equitable tolling in response to obstructive behavior by a party"); *Freeland v. CPA Warehouse (In re Livemercial Aviation Holding, LLC)*, 508 B.R. 58, 71(Bankr. N.D. Ind. 2014) ("The Trustee's inability, despite due diligence, to obtain information/documentation highly material to the core of this case—for whatever reason caused Mathis' inability or failure to promptly produce or provide it—amply supports the application of the doctrine of equitable tolling to this case in order to extend the limitation period of 11 U.S.C. § 546(a)(1)(A)").

including by "setting up numerous entities all over the world so that they cannot be traced back to him" and engaging in transfers of assets. *Id.* at 621.

35.    On the most basic level, the Debtor has an obligation to fulfill certain duties imposed on him by the Bankruptcy Code, including to cooperate with the Trustee.  In the Second Extension Order, the Court noted the Debtor's "ongoing contempt of court and failure to perform his statutory duties" in addition to "other parties' ongoing contempt of court", none of which has been cured during the Ordered Extension.

36.    Despite the passage of time and entry of the criminal verdict, nothing has changed. Neither the Debtor nor his family members, associates, and affiliated entities have had a change of heart and are now cooperating with the Trustee.  As has been the case since his appointment, the Trustee has had to utilize discovery practice to obtain the information he needs to conduct his investigation.  Even without active obstruction, therefore, the Debtor's lack of cooperation has delayed the Trustee's investigation and constitutes cause under Rule 9006(b) to grant the instant Motion.[13]

37.    To be clear, however, the Debtor, through his allies, ***has*** continued to actively obstruct and delay the Trustee's efforts.  As noted above, the Trustee has been forced to address the continuing efforts of the Debtor's associates and associated entities to obstruct the Trustee from conducting discovery.

---

[13]    Other courts have similarly focused on a debtor's recalcitrance forcing a trustee to obtain third-party discovery. See *Ochs Charitable Remainder Trust v. Ochs (In re Ochs)*, 608 B.R. 252, 261–62 (Bankr. D. Colo. 2019) (pointing to, among others, the "[Defendant's] obstruction of legitimate discovery, requiring the Court to intervene twice in the bankruptcy discovery disputes and rule against the Defendant both times; . . . his failure to provide a complete document production, requiring the Plaintiffs to direct discovery to several third-party financial institutions to obtain documents in 2019; and . . . when finally deposed after multiple delays, his vague and indefinite answers to questions under oath.").

### c. **Complexity and Extent of Debtor's Financial Affairs**

38.    The Court is well aware of the complex and far-reaching nature of Debtor's fraudulent scheme.  The Debtor's complex web spread across the globe and involved hundreds of entities and associates and billions of dollars and real and personal property throughout the United States and, indeed, the world.

39.    In the Debtor's criminal proceedings, the U.S. Government provided evidence of a billion-dollar fraud and money laundering scheme, masterminded by the Debtor, which raised money from the Debtor's online followers through purported investment schemes, then laundered the funds through a vast network of shell companies and bank accounts, using the funds for his personal benefit and to continue the fraudulent scheme.  As the criminal indictment explained, the Debtor "transferred, and directed the transfer of, money into and through more than approximately 500 accounts held in the names of at least 80 different entities or individuals, including entities that are part of the Kwok Enterprise."[14]

40.    The Debtor created a global fraudulent network of associates and entities to perpetrate his scheme and investigating and analyzing that network is an enormous task—and a necessary task to ensure that estate property is administered and estate claims are prosecuted and liquidated.  The Trustee has made significant strides in his investigation, but the efforts are ongoing.

41.    Absent a substantial change in circumstances, the Trustee does not intend to seek further blanket orders extending the Trustee's deadlines to file avoidance claims.  If it is necessary to file avoidance claims after the duration of the extension requested herein and after the deadlines to file such claims would otherwise have expired, the Trustee will address the timeliness of such

---

[14]    *Superseding Indictment*, para. 4, *United States of America v. Ho Wan Kwok, et al.,* No. 1:23-cr-00118 (AT)(S.D.N.Y.)

filings on an individual bases within the relevant adversary proceedings (including, where appropriate, by invoking equitable tolling) or by seeking appropriate extensions applied to specific categories of claims.

**II.     Trustee Reserves Rights Under Equitable Tolling and Other Equitable Doctrines**

42.     The Trustee reserves all rights to raise equitable tolling or other equitable arguments in response to a defense that an adversary proceeding commenced by the Trustee is time-barred.

## CONCLUSION

43.     In *In re Fundamental Long Term Care*, the court explained that the "only reason not to enlarge" the limitations periods is if "the Trustee is already in a position to bring all [his] avoidance actions."  501 B.R. at 791.  And the Southern District of New York has explained that to "act diligently is to demonstrate to the Court that one has not slept on his rights."  *In re Ramsoomair*, No. 21-11215 (DSJ), 2022 WL 828307, at *6 (Bankr. S.D.N.Y. Mar. 18, 2022) (internal quotation marks and references omitted).  For all the reasons detailed above, there can be no dispute that the Trustee has acted diligently and has not slept on his rights—and, even so, is not yet in position to bring all his avoidance actions.  As such, the Motion should be granted.

[Remainder of Page Intentionally Left Blank.]

45.    WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the

Court enter the Proposed Order granting the relief requested herein and grant any other relief as

the Court considers proper.

Dated:    January 24, 2025          LUC A. DESPINS,
          New Haven, Connecticut     CHAPTER 11 TRUSTEE


                                 By: */s/ Patrick R. Linsey*
                                     Douglass Barron (admitted *pro hac vice*)
                                     PAUL HASTINGS LLP
                                     200 Park Avenue
                                     New York, New York 10166
                                     (212) 318-6000
                                     douglassbarron@paulhastings.com

                                         *and*

                                     Nicholas A. Bassett (admitted *pro hac vice*)
                                     PAUL HASTINGS LLP
                                     2050 M Street NW
                                     Washington, D.C., 20036
                                     (202) 551-1902
                                     nicholasbassett@paulhastings.com

                                         *and*

                                     Patrick R. Linsey (ct29437)
                                     NEUBERT, PEPE & MONTEITH, P.C.
                                     195 Church Street, 13th Floor
                                     New Haven, Connecticut 06510
                                     (203) 781-2847
                                     plinsey@npmlaw.com

                                     *Counsel for the Chapter 11 Trustee*

# **EXHIBIT 1**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                 :
In re:                           :    Chapter 11
                                 :
HO WAN KWOK, *et al.*,[1]     :    Case No. 22-50073 (JAM)
                                 :
           Debtors.        :    (Jointly Administered)
                                 :
-------------------------------------------------------x

**[PROPOSED] ORDER GRANTING SECOND SUPPLEMENTAL MOTION OF**
**CHAPTER 11 TRUSTEE TO EXTEND FEBRUARY 15, 2025 DEADLINE FOR**
**TRUSTEE TO FILE AVOIDANCE ACTIONS**

UPON CONSIDERATION OF the *Second Supplemental Motion of Chapter 11 Trustee to Extend February 15, 2025 Deadline for Trustee to File Avoidance Actions* (the "Motion"), and good cause having been shown, and the Court having considered any and all objections and other responses to the Motion, and the Court finding that (i) there is good cause for the relief requested, (ii) the Trustee has acted diligently, and (iii) the Motion has been served in accordance with the Court's prior Order granting the Notice Motion, and such notice is proper and sufficient under the circumstances and no other notice is required, and the relief provided herein being narrowly tailored to serve the foregoing purposes, it is by the Court, hereby

ORDERED, that the Motion is granted as set forth herein; and it is further

ORDERED, that the time limitations set forth in 11 U.S.C. 108, 546, and 549 for the Trustee to commence avoidance actions and other actions on behalf of the estate, as well as for

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

amending any pending complaints, are extended through and including August 15, 2025, which date may be further extended; and it is further

ORDERED, that any party that has received notice, whether actual or constructive, of the Motion and did not object to the Motion has waived its right to assert a limitations period defense if ultimately named in an action that is timely brought under the terms of this Order; and it is further

ORDERED, that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED, that the Trustee is authorized to take all actions necessary to effectuate the relief granted herein; and it is further

ORDERED, that the Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

2