```
 1                   UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
 2                       BRIDGEPORT DIVISION

 3    IN RE:                      .  Chapter 11
                                  .  Case No. 22-50073 (JAM)
 4    HO WAN KWOK, et al.         .
                                  .  (Jointly Administered)
 5            Debtors.            .
                                  .
 6    . . . . . . . . . . . . . . .
                                  .
 7                                .
      LUC A. DESPINS, CHAPTER 11  .  Adversary Proceeding
 8    TRUSTEE,                    .  No. 24-05249 (JAM)
                                  .
 9            Plaintiff,          .
                                  .
10        v.                      .
                                  .  Courtroom 123
11    ACA Capital Group           .  Brien McMahon Federal Building
      Ltd. et al                  .  915 Lafayette Boulevard
12                                .  Bridgeport, Connecticut 06604
                Defendant.        .
13    . . . . . . . . . . . . . . .  Tuesday, January 28, 2025
                                     1:03 p.m.
14

15

16                      TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE JULIE A. MANNING
17                 UNITED STATES BANKRUPTCY JUDGE

18

19    (APPEARANCES CONTINUED)

20    Audio Operator:        Electronically recorded

21    Transcription Company:  Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
      Proceedings recorded by electronic sound recording,
25    transcript produced by transcription service.
```

<pre>
 1  APPEARANCES:

 2  For the Chapter 11
    Trustee:                  Patrick R. Linsey, Esquire
 3                            NEUBERT PEPE & MONTEITH, P.C.
                              195 Church Street
 4                            13th Floor
                              New Haven, Connecticut 06510
 5
                              -and-
 6
                              Luc A. Despins, Esquire
 7                            PAUL HASTINGS, LLP
                              200 Park Avenue
 8                            New York, New York 10166

 9  For the U.S. Trustee:     Holley L. Claiborn, Esquire
                              OFFICE OF THE UNITED STATES TRUSTEE
10                            The Giaimo Federal Building
                              150 Court Street
11                            Room 302
                              New Haven, Connecticut 06510
12
    For Chapter 11 Trustee:   Nicholas A. Bassett
13                            PAUL HASTINGS, LLP
                              2050 M Street NW
14                            Washington, DC 20036

15                            -and-

16                            Douglass E. Barron
                              PAUL HASTINGS LLP
17                            200 Park Avenue
                              New York, NY 10166
18
    For G Fashion California  Michael T. Conway
19  Et al.:                   LAZARE POTTER GIACOVAS & MOYLE LLP
                              747 Third Ave. 16th Floor
20                            Fifth Floor
                              New York, NY 10017
21
    For G Club Operations     Jeffrey M. Sklarz
22  And G Club International   GREEN & SKLARZ LLC
                              One Audubon Street
23                            3rd Floor
                              New Haven, CT 06511
24

25
</pre>

```
 1   (APPEARANCES CONTINUED)

 2   For Defendant Mae Guo:    Stephen M. Kindseth
                               ZEISLER & ZEISLER
 3                             10 Middle Street
                               15th Floor
 4                             Bridgeport, CT 06604

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    INDEX

2    MOTIONS:                                                    PAGE

3

4    Matter
     No. 3930  First Interim Fee Application of Chryssafinis    8
5              & Polyviou LLC, as Cypriot Law
               Counsel, for Compensation and Reimbursement of
6              Expenses for Period from August 15,
               2024 Through December 31, 2024, Fee: EUR
7              57,975.00, Expenses: EUR 3,980.94. Filed
               by Georg Alexander Bongartz, Attorney
8
               Court's Ruling:                                   9
9
     Matter
10   No. 114    Motion to Dismiss Adversary Proceeding           11

11             Court's Ruling:                                   -

12

13

14   Matter
     No. 116    Motion to Dismiss Adversary Proceeding           11
15
               Court's Ruling:                                   -
16

17

     Transcriptionist's Certificate
18   85

19

20

21

22

23

24

25

```
 1              (Proceedings commenced at 1:03 p.m.)

 2              THE DEPUTY:  Case No. 22-50073, Ho Wan Kwok;

 3  Adversary No. 24-05249, Despins versus ACA Capital Group

 4  Limited, et al; and Adversary No. -- I'm sorry.  I thought

 5  there were two.  That was it.

 6              THE COURT:  Okay.  Thank you.

 7              THE DEPUTY:  Thank you.

 8              THE COURT:  All right.  Good afternoon.  If we

 9  could have appearances for the record starting with the

10  Chapter 11 Trustee, please.

11              MR. DESPINS:  Good afternoon, Your Honor.  And

12  thank you for letting me appear remotely.  Luc Despins,

13  Chapter 11 Trustee.  By the way, I thought there was also an

14  application for compensation of Cyprus Counsel.  Maybe that's

15  off the calendar now, but I thought it was on for this for

16  today.

17              THE COURT:  I don't know, but we'll take a look.

18  How's that?

19              MR. DESPINS:  Okay.  Thank you.

20              THE COURT:  Okay.

21              MR. DESPINS:  But that shouldn't delay anything

22  because the main event is the other matter for sure.

23              THE COURT:  Okay.  Thank you.  Attorney Bassett?

24              MR. BASSETT:  Good afternoon, Your Honor.  Nick

25  Bassett from Paul Hastings, counsel to the Chapter 11
```

1   Trustee.  I'm joined today by my colleague, Douglass Barron,

2   also from Paul Hastings.

3            THE COURT:  Good afternoon.

4            MR. LINSEY:  Good afternoon, Your Honor.  Patrick

5   Linsey of Neubert, Pepe & Monteith for the Chapter 11

6   Trustee.

7            THE COURT:  Good afternoon.

8            MS. CLAIBORN:  Good afternoon.  Holly Claiborn for

9   the U.S. Trustee.

10            THE COURT:  Good afternoon.  Did you think there

11   was an application for compensation?

12            MS. CLAIBORN:  Yes.  There is one.

13            THE COURT:  Oh, it's there.

14            MS. CLAIBORN:  Yes.

15            THE COURT:  It's there --

16            MS. CLAIBORN:  The main case.

17            THE COURT:  -- Trustee Despins, it's the first

18   matter on the calendar.  I see it now.  Sorry.

19            Attorney Conway?

20            MR. CONWAY:  Good afternoon, Your Honor.  Michael

21   Conway for moving parties, Defendants G Fashion California; G

22   Fashion Holdco A Limited; G Fashion Holdco B Limited; G

23   Fashion International Limited; G Fashion Media Group Inc.;

24   GFIP, LLC; GF Italy, LLC; GFNY, Inc.; ACA Capital Group, Ltd;

25   Celestial Tide Limited; Hamilton Capital Holding Limited;

1  Hamilton Investment Management Limited; Hamilton Opportunity

2  Fund, SBC; Himalaya Currency Clearing Party, LTD; Himalaya

3  International Clearing Limited; Himalaya International

4  Financial Group Limited; Himalaya International Payments

5  Limited; Himalaya International Reserves Limited; Major Leed

6  International Limited; and William Jay.

7       THE COURT:  Thank you.  Are those parties, do you

8  have their signatures all on the motion to dismiss, on the

9  motions to dismiss?

10       MR. CONWAY:  Yes.  They're all placed on the

11  motion to --

12       THE COURT:  I was just thinking for the courtroom

13  deputy to make sure that they have all the addresses, and I'm

14  sorry.  The names of the parties and your -- you appearing as

15  counsel for those parties.

16       MR. CONVWAY:  Yes.  We -- they all appear on the

17  first page of our motion papers and on my notice of

18  appearance.

19       THE COURT:  Okay.  Thank you.

20       MR. SKLARZ:  Good afternoon, Your Honor.  Jeffrey

21  Sklarz for G Club Operations LLC and G Club International

22  Limited.

23       THE COURT:  Good afternoon.

24       MR. KINDSETH:  Good afternoon, Your Honor.  Steven

25  Kindseth for the Defendant Mae Guo.

1              THE COURT:  Good afternoon.

2              All right.  The first matter on the calendar is

3    the fee application of the counsel in Cyprus.  So did you

4    want to take that up first, Attorney Bassett or Trustee

5    Despins?

6              MR. DESPINS:  Sure.  I can, Your Honor.  Briefly,

7    this was filed at Docket No. 3930, and they're seeking

8    compensation for a period of almost six months, five months.

9    And the total amount of the compensation is 57,975 Euros.

10   And again, as I said, that's for the period from August 15th

11   through December 31st.  And, also, there's a reimbursement

12   application for expenses of 3980 Euros.

13             There were no objection filed and U.S. Trustee

14   filed a statement of no objection at Docket No. 3998.  Out of

15   full disclosure, Your Honor, the U.S. Trustee requested that

16   the CP law firm file an updated invoice reflecting more

17   precise and additional time and expense, basically more

18   detail.  And that additional detail was filed on January 22nd

19   at Docket No. 3993.  And as a result of that, the U.S.

20   Trustee has no objection.

21             THE COURT:  Okay.  Thank you very much.  Attorney

22   Claiborn?

23             MS. CLAIBORN:  Yes, Your Honor.  That's correct.

24   The statement of no objection is Docket No. 3998.

25             THE COURT:  Thank you.  Does anyone else wish to

1   be heard on the first interim fee application of Cypress

2   Counsel?  All right.  Hearing nothing, then I or nothing

3   further.

4          I have reviewed the application and the amount

5   sought by counsel for the period of August 15, 2024, through

6   December 31st, 2024.  And it appears that the fees and

7   expenses sought are reasonable and necessary under the

8   circumstances of the case.  No one has filed any written

9   objection to the application for compensation, and no one is

10  participating in this hearing today that is objecting to the

11  compensation sought.

12         The Office of the United States Trustee has filed

13  a statement of no objection.  And Trustee Despins, I'm

14  looking at the order that was submitted with the application.

15  After the more specific filing by counsel, was there any need

16  to revise this order?  I don't see it, but I could have

17  missed something.  So --

18         MR. DESPINS:  I don't think so, unless Attorney

19  Claiborne feels it's important to do so, I don't think that's

20  necessary.

21         MS. CLAIBORN:  No, Your Honor.

22         THE COURT:  Okay.  Thank you.  Then the only thing

23  I'd ask the courtroom deputy to do is on the proposed order,

24  which appears at page 15 and 16 of ECF 3930, to add today's

25  hearing date of January 28, 2025, please.

1             THE DEPUTY:  Okay.

2             THE COURT:  And then and for all the reasons that

3   we've just stated on the record, the first interim

4   application for compensation is granted, and the proposed

5   order we'll enter.  All right.  That takes care of the

6   application for compensation.

7             Now we have the two motions to dismiss.  So give

8   me -- if you would, everyone just give me one moment, please.

9             So, Attorney Conway, your motion to dismiss

10  appears first.  You ready to proceed?

11            MR. CONWAY:  I am, Your Honor.

12            THE COURT:  Go right ahead,

13            MR. BASSETT:  Your Honor, just in terms of

14  process, the way that we handled the briefing was Attorney

15  Conway filed a motion to dismiss on behalf of his clients,

16  Attorney Sklarz on behalf of his, and then we responded with

17  one omnibus opposition.  And then there were two replies.  So

18  if it's amenable to the Court, I think it would be, it would

19  make sense to have opening argument on both motions, then I

20  can do one argument responding to both motions, and then they

21  could have an opportunity to do any reply.

22            THE COURT:  That's fine if Attorney Sklarz and

23  Attorney Conway have no opposition.

24            MR. CONWAY:  Fine, Your Honor.

25            MR. SKLARZ:  Makes sense to me, Your Honor.

1          THE COURT:  Okay.  Great.  Then go right ahead and

2   proceed, Attorney Conway.

3          MR. CONWAY:  Thank you, Your Honor.  And I'll try

4   to be brief because the more I talk, the more likely I am to

5   cough, and I don't want to do that.

6          THE COURT:  There are waters on the table for you

7   if you need one.  At least, there usually are.  But, yeah, I

8   think there are.  Thank you.

9          MR. CONWAY:  So, Your Honor, I'd like to start --

10  obviously, you've read the papers, and you've seen some of

11  these issues, most of these issues before.  I want to start

12  by just focusing on the big picture.  The big picture here is

13  that there's an allegation of alter ego claims.

14          We all know that alter ego claims were designed

15  for a completely different purpose.  They're designed to go

16  after situations where a Debtor puts their own assets into a

17  vehicle whereby they can defraud their creditors and still

18  reap the benefits of those assets, whether they be money or

19  otherwise.

20          Here, we don't have that.  Each time the Trustee

21  is asked, what are the allegations that he used his assets

22  for any of these things, the response is the same.  That's

23  not the way he did business.  But that doesn't get us any

24  closer.

25          From the day I got here, Mr. Bassett actually, the

1   first day I was in this case, gave me the indictment, the

2   criminal indictment against the Debtor and said, look at all

3   the reasons why he's a bad guy.  I've gone through now for

4   over, it seems like a couple years now, the criminal

5   complaints, indictments, and allegations.  And the one thing

6   I have not found in anything -- and they rely heavily on the

7   criminal indictments for their case.

8         I've not found anything in any criminal pleading

9   that shows that Mr. Kwok put his own assets into a vehicle.

10  What we see is that he's accused of taking other people's

11  assets, and that's not what we're supposed to be dealing with

12  here.  It goes straight to the heart of the standing issue,

13  which I'm not going to go into in a lot of detail, but Your

14  Honor understands the argument that a Trustee is not supposed

15  to go after individual claims of various here defrauded, so-

16  called creditors.

17        Rather, he can go after general claims that are

18  claims where in the first instance alter ego liability was

19  designed to go -- to protect, where a Debtor takes his assets

20  and puts them out of the reach of creditors, and every

21  creditor has a right to go after those assets.  And that's

22  where the Trustee has standing.

23        The Trustee never has standing when the assets

24  that are at issue might be recoverable by a limited group of

25  creditors, and they're as here, a whole slew of limited

1    groups of creditors.  They might have different claims if

2    they were defrauded, using that term for the purposes of this

3    argument, because they were induced to put money into

4    Hamilton, or they were defrauded by putting money into

5    Himalaya, or one of the many other entities that are at issue

6    here.  None of those creditors has the same claim as the

7    others, though.  And the Trustee cannot show standing because

8    they're not general claims.

9        Your Honor's familiar with the case law.  The

10   Second Circuit's made it clear that where they're general,

11   there's standing.  Where they're individual, there's no

12   standing.  Alter ego does not create a right on the part of a

13   Trustee unless he can show that all the creditors are

14   similarly situated.

15       Now, that said, Your Honor, we have here a

16   situation where, just big picture, as I said, alter ego

17   should never have been brought.  This is really just a

18   criminal conspiracy pled as an alter ego action.  That's not

19   what alter ego's for.

20       But getting to the nitty gritty here, we have to

21   prove or they have to prove that there's jurisdiction.

22   Jurisdiction requires showing that there's some sort of

23   contact with the United States for the foreign Defendants,

24   and they have not proved that.

25       What we heard was, well, there we've alleged

1   control.  And I think that, Mr. Bassett wants to show a

2   PowerPoint.  He sent one to me earlier today, which I thought

3   was remarkable.  Because what it does, it spends dozens and

4   dozens of pages showing how they put allegations in the

5   complaint about control.

6         What they don't do is say how there was control.

7   There are no factual allegations.  There are general

8   allegations that say, well, because somebody worked for Mr.

9   Jay, and that someone was somehow affiliated with the Debtor

10   at one in time, there must be control.

11         There's no allegation of how there's control, and

12   that's what you need to prove jurisdiction.  But in this

13   case, it has to go a little farther.  You have to show that

14   it would be fair, and the Second Circuit, you know, in its

15   most recent iteration of this, the Palladium case, which is

16   in our papers, has made it clear that even if you showed Mr.

17   Kwok was 100 percent owner of the stock in one of these

18   companies, and he somehow was involved on the board, that

19   would still not be sufficient, absent a showing that there's

20   some contact between these entities in the United States.

21         So we think that there's a fundamental, you know,

22   lack of jurisdictional arguments, standing arguments, and

23   then you get to the issue of whether there are sufficient

24   factual allegations to meet the Iqbal-Twombly standard.

25         Again, there are -- there are claims here that

1    have absolutely zero support.  There are claims here that

2    that say, well, because we know that Mr. Kwok derived a

3    benefit from Hamilton vehicle -- in this case, as you're

4    aware, I represent Taurus.  They may say, well, because he

5    got some benefit with respect to the Taurus vehicle, Hamilton

6    must be guilty of being an alter ego.  That's not sufficient

7    You have to show exactly what the allegations of ownership,

8    control, some sort of participation in the business

9    operations of Hamilton and not just the benefit accruing at

10   the end of the day.

11          We don't have the allegations we need to respond

12   to under Iqbal-Twombly.  I guess, again, I'm doing pretty

13   well here.  I haven't started coughing yet, so I'm not going

14   to push my luck.  But I got to say, there were some claims

15   here.  You got the claims against Celestial Tide, Major

16   League, and William Jay.

17          They aren't even claims, Your Honor.  We

18   articulated in the motion papers that while there are

19   allegations that referred to them, and they're in the

20   caption, they don't even have claims against them in the

21   complaint.  And we pointed out that the case law says that in

22   that situation, the claims have to be dismissed against those

23   entities.  The response was, well, no.  There's

24   participation.  Therefore, they shouldn't be dismissed.

25          Well, you still don't have any claims.  They have

1  not addressed the case law that says if you don't have

2  claims, you have to dismiss.  And so we've, you know, we've

3  pointed out the various legal bases in our papers.  We've

4  pointed out, I think, the lack of any sort of factual

5  underpinnings for jurisdiction or for, frankly, surviving

6  Iqbal-Twombly.

7          But I think that I want to bring you back to -- I

8  don't know how to characterize it, a plea.  You know, this is

9  not the way the bankruptcy law is supposed to be used.  The

10  alter ego theory is meant to be used in a situation where the

11  Debtor's money has been used to -- moved or his assets have

12  been moved in a way that harms creditors, generally, as the

13  entire estate.  We're not here to try and augment the estate.

14          The Trustee is not -- was not engaged to augment

15  the estate at the cost of others.  He has to follow the law,

16  and the law here would not -- would simply not support this

17  theory that all these purportedly defrauded folks out there

18  were convinced to put their money in a vehicle, a third party

19  entity now considered an alter ego vehicle.  They lost

20  control of that money, and now they're being told, well,

21  they're going to you're going to lose it again because we're

22  not going to let the DOJ forfeit that money and give it back

23  to you.  No.  It belongs to all of Mr. Kwok's creditors.

24  That's not what alter ego is for.  It's for going after Mr.

25  Kwok's assets, not these punitive victims' assets.

1            If you have any questions, Your Honor, I'm happy

2   to answer them, but I want to sit down before I start

3   coughing.

4            THE COURT:  Thank you.  I don't have any questions

5   at the moment.  Thank you.

6            MR. CONWAY:  Thank you.

7            MR. SKLARZ:  Good afternoon, Your Honor.  Jeffrey

8   Sklarz for G Club Operations and G Club International.  The

9   case should be dismissed for three primary reasons as we set

10  forth in our briefing.  First, the Trustee cannot use a

11  reverse veil piercing theory to obtain what amounts to

12  substantive consolidation of only the assets of G Club and G

13  Club International into the Debtor's estate.  Neither Puerto

14  Rico nor English law recognize the remedy and the claim the

15  Trustee seeks to pursue.  The Trustee has no standing to

16  pursue it.

17           And more importantly, as Attorney Conway alluded

18  to, the allegations invert the remedy here.  The allegations

19  of the complaint, as set forth in the 60-odd-page document

20  that was emailed to us this morning, say that Mr. Kwok stole

21  from G Club and G Club International, brought that into his

22  estate.  The Trustee has liquidated many of those assets,

23  such as the Mahwah Mansion, a bunch of cars, and tons of

24  cash.  And now the Trustee wants to go back to G Club and

25  say, give us more.

1          Mr. Kwok, according to the allegations, is a

2    converter and a thief and a fraudster, and he stole from G

3    Club.  That doesn't make him the owner of G Club.  The

4    Government in their -- in the indictment, on its website, the

5    Department of Justice has said the G Club customers were

6    defrauded.  The Trustee says, let's defraud them again.

7          That is not what the law permits.  Under the

8    Trustee's theory, the creditors of G Club will be left out in

9    the cold and have their money stolen twice.  This Court

10   should not allow that.

11         Second, the Trustee has filed a redacted and

12   sealed complaint.  As I've argued previously before Your

13   Honor, we have the First Amendment.  Congress passed

14   Bankruptcy Code Section 107, and our district has adopted

15   Section Rule 5(e), which sets forth a very specific method

16   requiring evidence, evidentiary hearings, offers of proof,

17   rights to be heard that have to be complied with to file

18   things under seal.  That was not complied with.  The

19   complaint is the epitome of a judicial document, and that was

20   not done.

21         And finally, as to G Club International, according

22   to their own affidavit of service, they weren't served.  So

23   there's no personal jurisdiction.  The case should be

24   dismissed.

25         Turning first to the issue of the reverse veil

1  piercing claims.  We spent a lot of time on the elements of

2  the cause of action and whatnot a couple of weeks ago.  I'll

3  speak specifically to Puerto Rican and English law.  So

4  Puerto Rico, there is not a lot of law on it, but what law

5  there is discusses the imposition of personal liability for a

6  debt, not the merger of estates.

7         There's no substantive consolidation methodology.

8  For example, in the Situ  case, which is 124 F.Supp.3d. 34 --

9  and these are all cited in our brief at page 36.  In certain

10 circumstances, the corporate veil may be pierced, and the

11 individual liability imposed upon the individuals for which

12 the corporate entity served merely as a corporate ego.  That

13 is vicarious liability.

14         D.A.Co., Supreme Court of Puerto Rico, in 132 DPR

15 905 at a page that is unclear from the ruling, but I believe

16 because they're all translated from Spanish, the page number

17 doesn't carry over properly.  But -- and I can provide the

18 Court with my Lexis version.

19         But it says according to the trial court, the

20 clause justifies personal liability ruling against Acosta

21 Lespier because he stated therein that the stock of the

22 resulting corporation was free from liens and encumbrances

23 even though he knew that the corporation -- I apologize.

24 Wrong quote.  Same case.

25         Consequently, absent additional evidence, it was

1   not proper to pierce the corporate veil and impose personal

2   liability on Acosta Lespier for D.A.Co.'s order against Luis

3   Acosta Construction.  Again, vicarious liability imposing

4   personal liability for a corporate debt.

5            Now, here, we're imposing corporate liability for

6   personal debt because it's reverse veil piercing, but the

7   concept is the same.

8            Similarly, in US v Jg-24, 331 F.Supp.2d. 14, at

9   page 116 -- I'm sorry, 115 -- a person who is the alter ego

10  of a corporation or the individual behind the corporate veil

11  when pierced is also personally liable for the corporation's

12  liabilities.

13           Again, this is not a situation where the Court is

14  saying merge the assets.  Ignore the liabilities.  Just merge

15  the assets.  To the contrary, it's saying vicarious

16  liability.  So the cause of action the Trustee pursues does

17  not exist here.

18           English common law is even, more stringent.  It

19  requires the pleading that the remedy, and it views it as a

20  remedy rather than a cause of action, deprives the controller

21  of the benefit in the Prest versus Petrodel Resources Limited

22  case, which is again cited in our brief, page 18, paragraph

23  35, 4 All ER 673, the Court may then pierce the corporate

24  veil for the purpose and only the purpose of depriving the

25  company or its controller of the advantage that they

 1   otherwise would -- that they otherwise have obtained by the

 2   company's separate legal personality.

 3          Here, the controller would be Kwok.  Depriving him

 4   would mean that the Kwok's estate has to repay all of the

 5   money he stole from G Club.  So give back the money for the

 6   Mahwah Mansion.  Give back all of the money that that was

 7   stolen.  We're good with that.

 8          Kwok was a converter.  Kwok was a thief, according

 9   to the Trustee's allegations.  Kwok stole money from G Club's

10   customers.  Kwok enriched himself according to the Trustee,

11   and therefore has augmented and increased his estate and

12   permitted the millions and millions of dollars that is

13   currently in the Kwok estate.  That is G Club's money.  They

14   should not get more.

15          The Trustee does not even address this element of

16   the English cause of action in his brief.  It is just

17   ignored.  But wait.  There's more.

18          In the UK Supreme Court in 02/2021 in a case

19   called, Hurst Properties Limited versus Rosendale, quoted --

20   there was a quotation basically doubting whether piercing the

21   corporate veil is even a thing under English law.  It hasn't

22   been decided on by the UK Supreme Court.  And, again, as

23   Attorney Conway pointed out, that is the situation here.

24          This is really the Trustee trying to pretend he is

25   the Department of Justice.  The Department of Justice has

1  forfeited over $200 million of G Club's assets.  For years

2  now, G Club has cooperated with the Government and provided

3  information and helped with the problem that was created

4  here.  The Government is the proper entity to ensure that the

5  alleged victims of Mr. Kwok, who are the G Club members, the

6  G Club customers, the G Club creditors, are compensated.

7  Nothing in the Trustee's complaint explains how they're going

8  to be addressed.  They don't exist.  They just lose, lose,

9  and lose again.

10       Now, how do they lose, lose, lose again?  First,

11  the complaint does not allege any particularized harm to Mr.

12  Kwok's creditors.  Who are they?  I've been now involved in

13  this case for two years.  I'm still not quite sure who Mr.

14  Kwok's actual creditors are other than Pax.

15       The complaint claims, by virtue of Kwok's actions,

16  he stole money from G Club and used -- which were used to

17  (inaudible) his complaint.  In paragraph 75(a) of the amended

18  complaint, the Debtor arranged for money solicited in the

19  name of G Club to be transited in ways to renovate his Mahwah

20  Mansion.  Kwok arranged to solicit money to be invested in

21  Hamilton -- in the various Hamilton entities in paragraph 77.

22       Also in paragraph 77(g), the Debtor just stole

23  money from G Club International.  In paragraph 79, the U.S.

24  Government alleged that G Club was used by the Debtor to

25  fraudulently obtain more than $250 million, which the

1  Government has since forfeited for the benefit of the

2  victims, not for the benefit of the Trustee.

3           The Debtor, according to the Trustee in paragraph

4  78, there were a number of offshore accounts set up and that

5  he arranged to have money moved offshore.  What does this

6  tell us?  The allegations are, as I said, Mr. Kwok is alleged

7  in the complaint to have stolen money for his own benefit,

8  and that helped his estate have more money.

9           Same allegations with respect to G Club

10  International, or similar.  Basically, money was transited

11  through G Club International for the benefit of Kwok.  He

12  stole it.  Paragraph 72 and 73 and 92 are all examples of

13  that.  Also in paragraph 75, G Club International, money was

14  used to buy a luxury car.  Paragraph 75(c), another luxury

15  car.  Paragraph 65 and 75(d) through (e), money was used to

16  repair a yacht.

17           None of this benefited G Club.  None of this

18  benefited G Club International, but the Trustee has all those

19  assets, benefited the Trustee, benefited Kwok.  And this

20  dovetails into one issue that I touched on during my argument

21  the other day or a couple weeks ago, which is a standing

22  argument.

23           Under Nordlicht, which I'm sure the Trustee will

24  speak much about and I'll speak about, as well, the Trustee

25  derives the ability to pursue an alter ego claim, as Attorney

1    Conway said, if it's a generalized claim under 541.  He

2    doesn't derive it under 544.  544 is strong-arm -- 544 is a

3    strong-arm power.  So that lets him avoid liens.  We're not

4    avoiding liens here.  We're pursuing a cause of action that

5    is that a property of the Debtor.

6           Wagoner (phonetic) teaches, as we all know, that

7    the Trustee stands in the shoes of the Debtor when it brings

8    Debtor-related claims, Debtor-derived claims.  According to

9    the complaint, Kwok is a thief, a fraudster, and really and

10   just a general -- generally committed all sorts of wrongs.

11   He's been convicted of certain wrongs.  So how can the

12   Trustee get around in pari delicto?  Nothing spoken to that.

13   Just ignored.

14          If the Trustee stands in the shoes of the thief,

15   he's the thief for purposes of the claim.  Kwok's creditors

16   have gotten the benefit of much of the money stolen, and the

17   Trustee should not be permitted to invert the law to use

18   alter ego to say, since I'm a big thief, I get more.  That's

19   essentially the argument.  I am a thief.  I am controlling

20   these entities, so I get all of it to the detriment of G

21   Club's actual creditors, who the government has recognized or

22   owed over $200 million, who the Trustee pleads are owed over

23   $200 million but makes no consideration for under their

24   pleading.

25          Again, going back to the standard, you have to

1  show harm to actual creditors of the estate.  You have to

2  show, under English law, how the deprivation of the

3  controller, Mr. Kwok, is going to help the people harmed,

4  which are G Club's creditors.

5          Turning to Nordlicht.  Convoluted case, but

6  really, in a sense, simple.  There, Mark Nordlicht, the

7  Debtor, was sued in state court, files bankruptcy.  After a

8  bunch of fighting, the Debtor's wife makes a proposal to

9  purchase the Trustee's claims for payment.  The Stadtmauers,

10  who were the plaintiffs in state court, object.

11          The district court describes an alter ego claim as

12  this: a claim to recover assets that were wrongfully taken

13  from the estate by a scheme that injures all prospective

14  creditors, 115 F. 4th at page 103.

15          There's no allegations regarding any harm to

16  creditors of the Kwok Estate.  Everything in the complaint

17  says we were helped.  Also, Nordlicht goes on to say at page

18  105, general claims are for the harm due to the -- done to

19  the estate.  What harm?

20          Again, an alter ego claim, if it is a general

21  claim, and we argue in our papers why it is not, but I won't

22  belabor that point here, has to be because, as Attorney

23  Conway said, the Debtor has placed assets that are truly his

24  beyond the reach of his direct creditors in some other

25  entity.

1   Here, G Club's assets have been used by Kwok and

2   taken into his estate and thus available for his creditors,

3   and the Trustee has liquidated many of those.

4   I'll also touch just very briefly on the issue of

5   law of the case.  Essentially, understanding that the law and

6   the facts don't match up in any way here, the Trustee tries

7   to get around that by saying that this court has already

8   held, entered judgment that various entities are alter egos

9   of Kwok.

10   I'm not aware of any such ruling, but if there

11   was, no summons was served on G Club.  They were never served

12   in.  So well, the case couldn't possibly apply.  We briefed

13   this primarily on page 15 and 16 of our brief.  In the PCH,

14   Associates case, which is a Second Circuit case, the law of

15   the case doctrine only applies to rulings on the merits "in

16   later stages of the same lawsuit" or in "different lawsuits

17   between the same parties".

18   G Club has never been a party to a lawsuit other

19   than this one.  I believe there's a couple of others that

20   it's a party to, but I'm appearing counsel in all of them.

21   There's been no case against G Club that I'm aware of that's

22   been served on G Club to which a judgment is entered.  So law

23   of the case couldn't apply.

24   Just turning briefly to Count 3, which is a claim

25   for equitable ownership.  That is not a standalone cause of

1   action.   In Highland Opportunity Master Fund versus Citibank

2   270 F. Supp. 3d. 716 to page 733 and 734, Court addresses

3   this.   Importantly, however, the theory is not an alternative

4   to veil piercing, but rather recognition that veil piercing

5   can apply to someone who's not a legal owner of a corporation

6   if he exercises sufficient control.

7           Court goes on as the Second Circuit made clear in

8   Freeman, and that refers to Freeman versus Complex Computing

9   Company 119 F. 3d. 1044.   The party seeking to apply the

10  theory must still show the "equitable owner" committed a

11  fraud or other wrong that resulted in unjust loss or injury.

12          So that's not a standalone cause of action.   They

13  may be trying to make an argument for a nominee or something

14  else, but whatever they're making, it's not a cause of

15  action.

16          Turning next to the issue of redaction and

17  sealing.   While I made this argument before, it's a little

18  different in this context because the Trustee retorts, why

19  don't you just sign a protective order letting you see the

20  rest of the complaint?   Simple answer, the First Amendment

21  says I don't have to.   The Bankruptcy Code says I don't have

22  to, and you didn't follow the procedures under our district.

23          There's no question a complaint is a judicial

24  document.   The Second Circuit held that in Bernstein versus

25  Bernstein, Litowitz, Berger and Grossmann, 814 F. 3d. 132 at

1    page 140.  "A complaint is obviously a judicial document that

2    is both relevant to the performance of the judicial function

3    and useful in the judicial process."  And that cites the

4    earlier Second Circuit case of Amodeo 44 F. 3d.  Pinpoint

5    cite is 145.

6            Court goes on to say, a complaint which initiates

7    judicial proceedings is the cornerstone of every case.  The

8    very architecture of the lawsuit and access to the complaint

9    is almost always necessary if the public is to understand the

10   Court's decision.  Again, this isn't about me.  This isn't

11   about them.

12           This is about the sanctity of the Court, the First

13   Amendment, Section 107, and adherence to the constitutional

14   doctrine of open courts.  There's no explanation given as to

15   why whatever information is withheld was withheld.  That

16   violates Local Rule 5(e).  There's no burden on my clients to

17   sign anything or give away any rights.  And no matter how

18   much it may inconvenience or upset the Trustee, can't -- it

19   can't do otherwise.

20           The complaint -- thus, the complaint has to be

21   dismissed because it relies on secret allegations, and

22   there's no constitutional or statutory authority to permit

23   that.

24           And finally, Your Honor, G Club International was

25   not properly served.  As we state in our papers, mainly in

1   our reply at page 2 and 3, nothing in the affidavit of

2   service, which is ECF 54-6 in this case, says that G Club was

3   served.  There's a statement by the agent saying, I served

4   the agent for service.  See Exhibit B for what I served.

5   There's nothing that relates to G Club International Exhibit

6   B.

7              It is the plaintiff's burden to prove service.

8   They've offered no evidence to prove service.  So the case

9   against G Club International must be dismissed for

10  ineffective service of process.  For these reasons, Your

11  Honor, the Court should dismiss the amended complaint as

12  against G Club and G Club International.  Thank you.

13             THE COURT:  Thank you.

14             Attorney Bassett?

15             MR. BASSETT:  Your Honor, may I approach?

16             THE COURT:  Yes.  Thank you.

17             MR. BASSETT:  Again, for the record, Nick Bassett

18  from Paul Hastings on behalf of the Chapter 11 Trustee.  Your

19  Honor, as Attorney Conway alluded to, this morning, my

20  colleague sent counsel copies of a chart, which I would like

21  to use potentially as a demonstrative today.  And I'll tell

22  the Court what it is.

23             Basically, you know, in the briefing and through

24  some of the discussion today, there's obviously been a lot of

25  argument by the parties, by the Defendants, as to the

1  sufficiency of the Trustee's allegations with respect to

2  particular defendants in the complaint.  We have put together

3  a chart that doesn't contain any new argument or any new

4  information.  Simply separates all the allegations of the

5  complaint as to each defendant into one, two, or three pages,

6  just listing out what is pled against each defendant, which,

7  A, we think is helpful for the Court, and, B, would

8  substantially cut down on my need to spend time going through

9  specific allegations in the complaint as to 19 different

10  defendants.

11          So with the Court's permission, I'd like --

12          THE COURT:  Is that on the docket?

13          MR. BASSETT:  It's not on the docket, but I have

14  hard copies to provide to the Court.  And we could email a

15  copy to them.

16          THE COURT:  Oh, do you have any opposition to us

17  looking at hard copies of the chart, Attorney Conway or

18  Attorney Sklarz?

19          MR. CONWAY:  Your Honor, I don't disagree that

20  anything that would be helpful is useful.  I just would say,

21  we're going to object to supplementing the record as long as

22  it's being used as demonstrative and not --

23          THE COURT:  Well, it would only be used as

24  demonstrative.  The only reason I asked if it was on the

25  docket was to project it if we had it, but I can look at the

1  hard copy.  It will only be used as for demonstrative

2  purposes.  I'm not admitting it into evidence.

3         MR. CONWAY:  And, Your Honor, I would agree with

4  Mr. Bassett, that anything that you can look at that

5  references paragraphs is going to be useful.  So if it's not

6  part of the record, we don't object.

7         THE COURT:  Thank you.  Attorney Sklarz?

8         MR. SKLARZ:  Subject to the same reservations, no.

9         THE COURT:  And do you both have a copy already?

10         MR. SKLARZ:  We do.

11         MR. CONWAY:  I don't have a --

12         THE COURT:  I'm the -- I do not.  But if we're

13  going to use it, I would like a copy.  Thank you.

14         MR. BASSETT:  May I approach, Your Honor?

15         THE COURT:  Yes.  Thank you.  Yeah.  Here.  Why

16  don't you guys take that?  Thank you.  All right.  Thank you.

17  All right.  I have what Attorney Bassett has handed to me and

18  Attorney Conway and Sklarz have, as well, which is a summary

19  chart of Defendants and allegations in the complaint.

20         Is that correct, Attorney Bassett?

21         MR. BASSETT:  That's correct, Your Honor.

22         THE COURT:  All right.  Go right ahead.

23         MR. BASSETT:  Thank you, Your Honor.  So I have a

24  fairly lengthy outline prepared to go through, you know, most

25  of the key arguments set forth in the Defendant's briefing.

1   I think the comments today by the defense counsel were

2   somewhat streamlined, so I'll try my best to streamline my

3   remarks as well.  I do want to start off by just responding

4   to some of the thematic points that both counsel just raised.

5         THE COURT:  May I stop you before you get started?

6         MR. BASSETT:  Yes, Your Honor.

7         THE COURT:  Just so Attorney Conway and Attorney

8   Sklarz, and you, as well, Attorney Bassett.  Obviously, I'm

9   going to look at allegations in the complaint at some point,

10  when we're talking about motions to dismiss.  So even though

11  there may be some discussion through a chart of different

12  allegations, I'm not going to be relying on the chart.  I'm

13  going to be looking at the complaint.  So I just wanted to

14  make that clear because I agree with you.

15        This is only for demonstration.  That's -- but

16  there are going to be points when, obviously, the Court has

17  to look at the allegations in the complaint.  So that's all I

18  wanted to say for the record.  Unless you either of you have

19  any questions.

20        MR. CONWAY:  No, Your Honor.  Okay.

21        MR. SKLARZ:  No, Your Honor.

22        THE COURT:  All right.  Thank you, both.  Sorry,

23  Attorney Bassett.  I just wanted to make that point.

24        MR. BASSETT:  Of course, Your Honor.  So I think

25  what I heard, at least, from counsel to the movants was

1  really an effort to ignore or turn a blind eye to what the

2  relevant law is on alter ego.  And in the case of the

3  entities in our complaint governed by English law, the bare

4  Trustee doctrine that we rely on, and also an attempt to,

5  frankly, completely mischaracterize or misunderstand the

6  relief that we are seeking in the complaint.

7        Attorney Conway said that alter ego relief is just

8  simply not available and not designed to deal with the

9  situation where the Debtor did not transfer assets to the

10 alleged alter ego entities.  Two quick responses to that,

11 Your Honor.

12       First, that's factually not true because that's

13 absolutely what he did and what we allege that he did.  Our

14 complaint is full of allegations of how the Debtor used his

15 other shell companies to pass money to the alter egos, and

16 then to use the alter egos, in turn, to pass money to other

17 shell companies.

18       Again, we went over this at the last hearing on

19 the omnibus motion to dismiss by the Avoidance Action

20 Defendants at length.  Mr. Kwok did not operate in a way

21 where he had all of these assets and bank accounts that he

22 then transferred to shell companies.  He conducted his

23 affairs completely through these shell companies, and he

24 funded them from one pocket to the other.  That's exactly

25 what he did.

1          Number two, Attorney Conway's argument is

2     irrelevant.  That's not the standard.  The standard under

3     alter ego law and the bare trustee doctrine under English law

4     is whether or not essentially the alleged owner of the entity

5     exercised dominion and control over the entity such that it

6     used it as an instrumentality of himself, and then used that

7     to commit some sort of fraud or other injustice.  We've

8     alleged all of that, and I'll go through particular

9     allegations at length in the complaint.  That's the standard

10    and we satisfied it at the motion to dismiss stage.

11         Now, Attorney Sklarz, I guess, made a similar

12    point that he referenced several times about how he doesn't

13    think an alter ego claim is available where there are

14    allegations in the criminal indictment, which are paired in

15    our complaint, as to how Mr. Kwok used the alter ego entities

16    to defraud people.  Your Honor, I have no idea how that is

17    possibly inconsistent with the alter ego theories that we are

18    asserting in our complaint.  If anything, it supports those

19    theories.

20         To give you an example if you look at entities

21    like Lamp Capital, which the Court is already adjudged to be

22    an alter ego, or Golden Spring, which the Court has also

23    adjudged to be an alter ego, according to Attorney Sklarz,

24    because the Debtor used those entities funds as a slush fund

25    to pay his personal expenses, for example, to buy luxury

1   homes or automobiles or whatever he did with those funds,

2   that somehow there cannot also be an alter ego claim

3   demonstrating that those entities were mere alter egos of Mr.

4   Kwok and that all their assets are therefore his.

5           That's not at all the way it works.  In fact, one

6   proves the other.  He used these entities as

7   instrumentalities to carry on business for his own personal

8   purposes, to fund his own personal expenses and those of his

9   family members.  And the fact that he defrauded people in the

10  process is not at all inconsistent with the theory that

11  ultimately these entities that he used to do that were

12  entities that he dominated and controlled and that were his

13  alter egos.

14          Going back to my outline, and I'll address all of

15  the arguments that, at least all the arguments that I think

16  need to be addressed that were raised by counsel.  I do want

17  to start again by talking a little further about the relevant

18  standard that applies for today's hearing.  And today's

19  hearing, to be very clear, is on a motion to dismiss under

20  Rule 12(b)(6).

21          I want to talk about the standard that applies,

22  and I want to talk about how we've satisfied that standard.

23  Now, in the papers, Your Honor, I think, the movants do two

24  things.  They try to turn the standard that applies on a

25  motion to dismiss on its head for several reasons, holding

1  the Trustee to a far higher burden than actually exists under

2  relevant law.

3          They also, Your Honor, fail to appreciate and

4  understand and take into account the context within which the

5  Trustee's claims arise.  And that context is the history of

6  this Chapter 11 case, the history of the other findings this

7  court has already made, and the demonstrated history of Mr.

8  Kwok using shell companies to hold his assets and conduct his

9  affairs.

10          As to the standard that applies, Your Honor, as

11  the Court, of course, knows, on a motion to dismiss, the

12  Court must take all the Trustee's factual allegations as

13  true.  And the Trustee with those allegations taken as true

14  need only plead plausible claims for relief.  A motion to

15  dismiss is absolutely not, as the Court has recognized on

16  multiple occasions, the time to decide disputed issues of

17  fact.

18          In fact, where you have claims, such as alter ego

19  claims, that are highly fact specific, it is almost never

20  appropriate to resolve those claims on a motion to dismiss.

21  I'll give the Court a case cite from the Southern District Of

22  New York that drives this point home perfectly.

23          Sphere Digital versus Armstrong.  The cite for

24  that case, Your Honor, is 2020 Westlaw 6064156.  That's SDNY,

25  October 2020.  Court is an alter ego case where the plaintiff

1   pled alter ego claims.  The Court said, "As should be

2   obvious, whether Armstrong and traffic space can be

3   considered the alter egos of office space presents questions

4   of fact that cannot be resolved on this motion, a motion to

5   dismiss.  Alter ego and veil piercing are not amenable to

6   resolution on a motion to dismiss because the nature and

7   extent of the dominion and control exercised by defendants

8   over their subsidiary is a question of fact, not subject to

9   resolution on a motion to dismiss.

10        The Court in that case denied a motion to dismiss,

11  where the plaintiff had only pled that the alter ego in

12  question had the same principal, shared office space, and

13  that it paid the debts of the alleged donor.  Those three

14  things, that was it.  The claim succeeded.

15        The Court further noted, that at the pleading

16  stage "a complaint need not, and often cannot, plead every

17  single factor that might play into an alter ego analysis.  As

18  long as there are some plausible allegations of dominion and

19  control, the claim can survive a motion to dismiss".

20        Your Honor, as I will highlight just a few of the

21  allegations in this lengthy chart, momentarily, we have blown

22  that standard out of the water.  It's not a close call.

23        Defendants do a few things to try to sidestep the

24  real standard that applies.  One, they contend that Rule 9(b)

25  applies; it does not.  The Court has already recognized that

1  the Trustee is not required to plead fraud in connection with

2  his alter ego claims, against fraud or any other injustice.

3  Courts are clear on that.  9(b) does not apply.

4        In addition, there are times where the Defendants

5  claim that the Trustee's allegations pled on information and

6  belief, which there are few, should somehow be disregarded.

7  Again, no support for that.  We cited a case in Footnote 53

8  of our brief, and there are many other cases to the effect of

9  especially in a situation where the relevant facts are not

10 within the control of the Plaintiff, but rather third parties

11 such as here, the Defendants, that it is appropriate to plead

12 on information and belief.

13        The other point, Your Honor, that I mentioned that

14 the Defendants, I think, ignore, and simply -- and at a

15 minimum, fail to account for in their briefing is, again, the

16 context that we are operating under here.  The Court knows

17 the background.

18        The Court knows the findings it's already made as

19 to other alter egos of Mr. Kwok.  There's a well-established

20 record in this Court and others about how Mr. Kwok operated

21 his affairs and how he held his assets.  The Court already

22 recognized the relevance of this type of pattern and practice

23 in its decision with respect to the alter ego finding for the

24 HCHK entities.  This is at, page 17 of the decision in that

25 adversary proceeding, which is adversary proceeding 23-05013.

1          I won't quote the Court's language back to Your

2    Honor, but the Court recognizes one of the, I think, six or

3    seven factors supporting the relief in that case, the well-

4    documented, demonstrated history of the Debtor using shell

5    companies to conduct his operations.

6          That, Your Honor, is highly informative as to the

7    allegations in the complaint.  These entities, the 19

8    entities that are subject to the motion to dismiss today are

9    but additional entities that Mr. Kwok used in his ever

10   evolving, and sprawling web of dozens, if not hundreds, of

11   companies throughout the world.  That's the way he operated.

12   We've shown that in the past, we're showing it again in this

13   complaint.  He did not hold assets himself, he kept them in

14   shell companies that he then used to serve his own purposes.

15         And to the extent that there are fewer relatively

16   allegations as to some of the entities in this complaint, the

17   reason for that, Your Honor, is because these entities were

18   often used interchangeably with others.  And not necessarily,

19   you know, had in -- it may may have been created for a moment

20   in time, and then used as part of a, you know, cog in a

21   broader machine.  I think that's a consequence of having as

22   many entities as Mr. Kwok did in his worldwide shell game,

23   Your Honor.

24         I want to talk now briefly about the applicable

25   law, and I'll try to address some of Attorney Sklarz's

1  comments in the process, and then after addressing the

2  applicable law highlight just a few of the relevant

3  allegations as to some of the entities at issue.

4          Starting with the applicable law, Your Honor, I

5  don't think there's really much of a dispute as to the law

6  that applies to what I will call the domestic entities.

7  That's the four G Fashion entities incorporated in Delaware,

8  a G fashion entity incorporated in California, and G Club

9  operations in Puerto Rico.

10          And I'll get to Attorney Sklarz's comments in a

11  minute, but I think it's generally understood by the parties

12  that, generally speaking, to plead an alter ego claim under

13  the laws of those jurisdictions one must, as I mentioned at

14  the outset, demonstrate that there was dominion and control

15  over the entity in question and that dominion and control has

16  been used to perpetrate a fraud or some other form of

17  injustice.  And courts in all these jurisdictions apply a

18  holistic analysis where there are factors, but it's not a

19  situation where every factor needs to be satisfied.

20          Now Attorney Sklarz spent some time talking about

21  an issue that we already have been over in detail,

22  specifically at the last hearing before Your Honor in the

23  avoidance actions on the omnibus motion to dismiss.

24          I'm not going to re-argue all of that and belabor

25  the point.  Attorney Sklarz was not, at least as I understand

1  it, arguing with the Trustee's ability to, or the Trustee

2  having sufficiently pled claims for alter ego relief under

3  Puerto Rico law.  He was taking issue with the remedy that

4  the Trustee is seeking, namely ownership of all the assets of

5  the entity.

6          As to that issue, as we discussed at the last

7  hearing, Your Honor, the Trustee's position, which is

8  supported by a number of cases that we discussed at length

9  last time, is that this is a federal law question.  There are

10  cases, and if memory serves, one of them was the, I think,

11  the Star Mountain case that we cited, talks about and

12  explicitly says that alter ego claims, Your Honor, in

13  bankruptcy take on a different character.

14          Whatever they may be outside of bankruptcy,

15  whether there may be some jurisdictions where there's the

16  vicarious theory of liability as opposed to the identity

17  theory in bankruptcy, the result is that when a trustee

18  brings an alter ego claim in conjunction with Section 541 of

19  the Bankruptcy Code to try to bring the assets of that alter

20  ego into the estate, that's exactly what happens.  There's

21  case law for that, Your Honor, that applies just the same to

22  Puerto Rico law, applies just the same to English law, and

23  therefore, we think that the relief that we're seeking is

24  fully supported.

25          The other point I would make, Your Honor, is that

1    as a general matter, and I don't have case cites for Your

2    Honor handy, but I know this from having worked a lot with

3    Puerto Rico law and other cases, Puerto Rico generally

4    follows Delaware law on corporate issues.  And to that end,

5    we cited a number of cases to Your Honor talking about how,

6    in any case, Delaware law follows the identity theory even

7    outside of bankruptcy.  So for both of those reasons, the

8    relief that we are seeking is appropriate.

9            As to as to English law, Your Honor, I do want to

10   spend a little time on this because I think it was the

11   subject of some discussion by Attorney Sklarz, and also a

12   good amount of discussion in the briefing.  And I want to be

13   clear about something, the claim that we are alleging as to

14   the entities governed by English law, and to avoid any doubt,

15   this is all of the non-domestic entities.  So it's ACA

16   Capital Group, which is incorporated in Hong Kong.  It's the

17   three Hamilton entities incorporated in the Cayman Islands,

18   the United Kingdom, and the BVI, respectively.

19           It is the five Himalaya entities, four of which

20   are incorporated in the BVI, but one of which is incorporated

21   in Australia.  It's G Club International, which is

22   incorporated in the BVI, and then there's three foreign G

23   Fashion entities, all incorporated in the BVI.  Your Honor,

24   it's either agreed in the case law or explained in the

25   Trustee's brief that all these jurisdictions -- Cayman

1    Islands, BVI, Hong Kong, and Australia -- either in the case

2    of all but Australia, actually follow English law, or in the

3    case of Australia, English law is persuasive.  So these

4    principles apply to all of his entities.

5           And the principle, Your Honor, that we plead in

6    the complaint, and the basis for our claim, is that these --

7    it's not an alter ego claim, Your Honor, as Attorney Sklarz

8    seems to think.  That's at least not how we pled it as to the

9    foreign entities.

10          The claim that we have pled in our complaint is a

11   claim that these entities are nominally holding up -- that

12   the owner of the owner of the entities that are alleged to be

13   the Debtor's alter egos are nominally holding those entities

14   and their assets for Mr. Kwok as bare trustee.  That's the

15   doctrine that is recognized in the Prest case that we cite

16   and discuss at length in our briefing and that other courts

17   in the United Kingdom have relied upon to basically achieve a

18   similar result to alter ego, and in particular, a result

19   where assets nominally owned by others are, in fact, for

20   equitable purposes, held to be owned by the person who

21   actually has control over those assets.

22          Now, Attorney Conway and I believe Attorney Sklarz

23   talk in their briefing -- they cite to a Skystream case, from

24   a UK court, where they say that the creation of this sort of

25   bare trust relationship requires three certainties.  And then

1  they say that what this requires is that the plaintiff has to

2  plead, with some sort of direct evidence, that the individual

3  allegedly controlling the entity expressly sought to have the

4  entity created, to hold his assets in trust.

5        And they said that we don't have that evidence.

6  We don't have an allegation that Mr. Kwok expressly said in

7  an email, or otherwise, that he wanted a particular entity to

8  be created to hold his assets in trust.

9        That, Your Honor, is not a correct interpretation

10  of the law.  And even the Skystream case that they cite makes

11  that clear.  What the Court observed in that case and it also

12  in the Prest case, which I will discuss, is that this

13  necessary intention to establish the existence of a bare

14  trust relationship can "be inferred from conduct".

15        And in that case, the Court, which was operating

16  in an appellate capacity, reviewed the evidence and said that

17  -- the facts in that case, where a bare trustee relationship

18  was found, was "a classic case in which there was a good deal

19  to be said on each side regarding the primary facts and what

20  inferences should be drawn from the primary facts and

21  circumstances".

22        The Court went on to then discuss how the trial

23  judge in that case appropriately weighed the evidence and

24  came to a determination that based on the evidence and the

25  inferences the Court drew from that evidence that there was,

1   in fact, a bare Trustee relationship created.

2   Your Honor, that's highly instructive here for a

3   couple of reasons.  One, again, as I said, it demonstrates

4   that just as with alter ego case law in the United States the

5   relevant dominion and control and the relevant intention to

6   create a bare trustee relationship can be inferred from the

7   facts and circumstances which we have pled an abundance of in

8   the complaint.

9   It also is important, Your Honor, because it

10  stresses, again, the posture that we are in.  Even English

11  courts, UK courts recognize, as do courts in the United

12  States, that these types of fact-intensive issues are best

13  resolved by a trial judge weighing the facts and

14  circumstances, not in this motion to dismiss setting.

15  I also want to focus the Court on the Prest case

16  that we spend a lot of time citing because I just want to

17  emphasize a couple of passages from that case and also how

18  the facts are similar and apply to the claims that the

19  Trustee has brought here.

20  First of all, in the Prest case, the Court, again,

21  similar to the Skystream case, noted that the bare trustee

22  claim is a highly fact-specific issue.  And then the Court

23  went on to say that as to that issue, it is not possible to

24  give general guidance going beyond the ordinary principles

25  and presumptions of equity.  Again, highly consistent with

1  how this court evaluates all the legal claims under U.S. law,

2  and how this court exercises its jurisdiction in bankruptcy

3  cases focusing on the equities.  And I will not belabor the

4  equities here, because we've done that many, many times.  And

5  I think the Court understands how we see the equities with

6  respect to Mr. Kwok's shell game.

7         Now, the facts in Prest, Your Honor.  I want to

8  spend a couple of times just highlighting some of the

9  findings that the Court made there to support the bare

10  trustee relationship that it ultimately found to exist.

11         This is a husband and wife case, as Attorney

12  Sklarz, I think, or, I think he mentioned, and the point

13  being that the wife in the relationship had alleged that the

14  husband had created some shell companies to hold his assets.

15  She wanted those assets brought into the marital estate.

16         The Court noted, among other things, that the --

17  the lead shell company that the husband created in an

18  offshore jurisdiction to hold property was an entity that he

19  "used to act as a channel for funding his personal

20  purchases".  The Court also observed that the husband had

21  exercised managerial control over the company, even though he

22  was not the nominal owner of the company.

23         In fact, in that case, Your Honor, nominal

24  ownership of the companies was not even established.  There

25  wasn't enough information available because the husband had

 1  been obstructing discovery efforts, which is an issue that,

 2  of course, we have seen a lot of in this case.  And the

 3  Court, instead, had to just cut through the complexities as a

 4  direct quote, and look at the practical reality of the

 5  circumstances.

 6          The Court also found that the husband "treated the

 7  company's cash balances and property as his own, and drew on

 8  them as he see as he saw fit".  Again, it's exactly what

 9  we've alleged here.

10          The Court in that case found that the husband used

11  the assets of the shell companies to "fund his family's

12  personal expenditures, including the substantial legal costs

13  incurred in these proceedings".  Again, thematic with what

14  we've seen in this case, with Mr. Kwok using shell companies

15  to fund his personal expenses including legal expenses.

16          Your Honor, finally and I think this is critical,

17  because it goes back to a point I made before.  The UK Court

18  in Prest observed, as part of its bare trustee finding, and

19  relied on the demonstrated history of the husband's conduct.

20  The Court noted "a consistent pattern can be discerned by

21  which the husband caused properties to be acquired with funds

22  provided by himself, by companies under his control,

23  nominally funded by PRLR, but in fact, funded by himself".

24          Your Honor, obviously, the facts of our case are

25  different, but the analysis undertaken by the Prest court,

1  the analysis that applies under English Law is directly

2  applicable here.  The same types of indicia of control that

3  indicate that the alter ego entities were, in fact, held in

4  bear trust for the Debtor are just as present here as they

5  were in the Prest case.

6        Your Honor, I want to move on to a couple of the

7  other legal arguments that I will -- actually, before I do

8  that, Your Honor, I do want to and I'll try to be -- I'll try

9  to be brief, but I did want to make use of the chart that we

10 provided to the Court.

11       Again, I promise I will not go through all 19

12 entities.  But I do think it is important, because if you

13 look at the briefing that was submitted to Your Honor, there

14 is an attempt to severely mischaracterize and minimize the

15 extent of the allegations that the Trustee has alleged with

16 respect to the entities at issue in the complaint.

17       If you look at, for example, Hamilton Opportunity

18 Fund, which is the first entity in the chart, and again,

19 these are -- and I hear Your Honor loud and clear, obviously

20 the complaint is controlling, not this chart.  But what we've

21 done here is we've cited to the complaint, and to use this as

22 a demonstrative just to kind of list out the allegations that

23 we have.

24       Then again, this is just by way of example.  Your

25 Honor, the nominal owner of Hamilton Opportunity Fund is

1  William G.  There are extensive allegations in the complaint

2  about how William G is the Debtor's agent.  There are also

3  allegations in the complaint about how William G used

4  Hamilton Opportunity Fund and the other Hamilton entities to

5  assist in managing the Himalaya exchange entities.  There's

6  extensive allegations in the complaint about how there were

7  other individuals under Mr. G's direction who helped the

8  Debtor exercise control over the Hamilton entities, including

9  Hamilton Opportunity Fund.

10          One of those individuals is David Fallon, whom as

11  this Court knows, is an individual whom counsel for Taurus

12  Fund, Mr. Conway, stated that he had taken directions from in

13  litigation in this case.

14          The Debtor used Hamilton Opportunity Fund to hold

15  a majority share of GETTR USA, which the complaint alleges is

16  controlled by the Debtor.  The Debtor used "Hamilton" to pay

17  his employees.  I put Hamilton in quotes because Jesse Brown,

18  who testified in the Debtor's criminal trial, said that he

19  was hired by Yvette Wang, initially to serve as an employee

20  of GTV Media Group, and was initially paid by GTV Media, or

21  by Guo Media and GTV, and then later, his salary was all of a

22  sudden paid by "the London entity Hamilton".  And he said

23  that while the name of the entity paying him changed, nothing

24  changed about his work for the Debtor.

25          Why is that significant, Your Honor?  Because it

1  shows the interchangeability of these entities, the fact that

2  Mr. Kwok decided to pay somebody through one entity and then

3  later changed that through another, even though there was no

4  substantive distinction between the work that they were

5  doing.

6         There are also allegations in the complaint about

7  how the U.S. Government alleged that Hamilton Opportunity

8  Fund is among the interrelated and overlapping entities that

9  form the G Enterprise.  The Debtor, this is sort of the Fifth

10  Amendment, when asked about his control, over the agents who

11  nominally exercise control over the Hamilton Opportunity

12  Fund.  There's all kinds of evidence in the chart here, Your

13  Honor, over the next page about how the Debtor used Hamilton

14  Opportunity Fund as a source of funding.

15         He directed that funds raised through G Club

16  memberships be sent to Hamilton Opportunity Fund.  He

17  insisted on emptying G Club's bank accounts to send funds to

18  the Foundation, which refers to Hamilton Opportunity Fund.

19  He arranged from funds to be transferred from his other

20  adjudged alter egos to Hamilton Opportunity Fund, that

21  includes millions of dollars from the HCHK entities to

22  Hamilton Opportunity Fund.

23         We allege that Hamilton Opportunity Fund has no

24  source of funding independent from the Debtor.  We also

25  allege how Hamilton Opportunity Fund was used to further the

1  Debtor's personal interests, including to fund his purchase

2  and renovation of the Mahwah Mansion.

3         He also transferred, as alleged in the complaint,

4  $30 million to a bank account in Switzerland.  Again, Your

5  Honor, I could go on and on.  This is one example.  I'm not

6  going to belabor by going through all of the entities in this

7  chart, but the entities of -- or the allegations that we have

8  pled concerning the Debtor's ownership and control of the

9  alleged alter egos is extensive.

10         And for all the reasons that I discussed at the

11  outset, it's fully consistent with what alter ego law is

12  designed to do.  And it's fully consistent with the elements

13  that the Trustee needs to plead in order to prevail at the

14  motion to dismiss stage of this litigation.

15         Your Honor, I want to spend the balance of my time

16  just briefly addressing some of the other arguments that

17  Attorney Sklarz has raised.  First, on the issue of standing.

18  This is another argument that we have discussed now numerous

19  times, so I'm not going to belabor it.  The Court has now

20  decided on, I think, six, maybe seven different occasions, I

21  think on three different occasions in the Lamp Capital

22  adversary proceeding alone.

23         And then in on three other occasions including

24  HCHK, HKUSA, and Greenwich Land, the Court has decided that

25  the Trustee has standing to pursue alter ego claims under

1  Section 544(a) of the Bankruptcy Code.  The Court reached

2  that conclusion after analyzing case law, including from

3  other judges in this Bankruptcy Court, and also from the

4  Second Circuit.

5        The Court recognized that Section 544(a), in fact,

6  allows a trustee to bring claims that assert generalized harm

7  on behalf of all creditors of a debtor.  It's exactly the

8  type of claim that the Trustee is asserting here.

9        As we have discussed in the past and I believe

10  Attorney Kindseth was part of this argument, the Nordlicht

11  case has since come out after the Court issued those prior

12  decisions.  The Nordlicht case, Your Honor, puts any end to

13  the question of whether or not the Trustee has standing to

14  bring these claims.  It also puts any end to the question of

15  whether or not the in pari delicto and alter ego doc -- or

16  and Wagoner doctrines apply, which they do not.

17        The Nordlicht case, Your Honor, is virtually on

18  all fours.  I read a quote from Footnote 14 of that decision

19  the last time we were discussing it, Your Honor.  I won't

20  recite it again, but it is eerie how similar the factual

21  allegations made, in the alter ego claim in that case are to

22  those at issue here.  All allegations about how a Debtor

23  pretended to be destitute, having tucked all of his assets

24  and conducted all of his affairs through shell companies.

25  Exactly what we have here.

1          And what the Court held was that under Section 541

2    of the Bankruptcy Code, the Trustee has the ability, and in

3    fact, the sole ability, to pursue claims that assert

4    generalized harm on behalf of creditors, including

5    specifically the alter ego claims in that case.  And that's

6    exactly the type of claims that we are asserting here.

7          I frankly don't quite follow or understand the

8    argument raised by Attorney Conway, and I think parroted by

9    Attorney Sklarz, that somehow the claims we are asserting are

10   particular to individual creditors.  This is not a situation

11   like the Picard (phonetic) case, where there was an attempt

12   to claw back funds through an alter ego claim that would then

13   be used to pay certain creditors.  That's not it at all.

14         All of Mr. Kwok's creditors were equally harmed by

15   the Debtor's use of the alter ego entities in question to

16   hide his assets.

17         But for the creation of all these shell companies

18   by the Debtor to hide his assets, those assets would instead

19   be property of the estate.  And it need not be the case, as

20   Attorney Conway suggested, that the Debtor had to have taken

21   assets that were in his name in his bank account and

22   transferred them to the shell companies the point is he

23   dominated and controlled the shell companies from their

24   inception to collect money, to conduct his affairs.  And

25   therefore all of their assets are really assets that the

1  Debtor, Mr. Kwok, should have had as part of his estate from

2  the beginning.

3         On the question of in pari delicto and Wagoner,

4  Your Honor, the Court has already dealt with this.  And I

5  want to find -- I want to find the reference because I think

6  it's important.

7         So Your Honor -- and Your Honor, as you may

8  recall, in your decision in the HKUSA adversary proceeding,

9  this was, again, before the Nordlicht case had been issued by

10 the Second Circuit, the Court noted in the course of it of

11 your analysis as to Section 544 that the law was a little

12 different in some other jurisdictions, namely the Third

13 Circuit.

14        And particularly, what the Court recognized in

15 referencing the In Re Amoro (phonetic) case in the Third

16 Circuit was that the Third Circuit had already issued

17 decisions that were similar to the forthcoming Nordlicht

18 decision by the Second Circuit.

19        And what Your Honor observed was that because of

20 that, because there was already this law in other circuits

21 where a trustee could assert claims under Section 541 that

22 are claims that assert the rights of creditors generally,

23 that that would be a different path to getting around in pari

24 delicto and Wagoner.  The Court said, quote, in the HKUSA

25 decision because of this law in the Third Circuit, in that

1  circuit there is a "different basis in the Third Circuit for

2  largely the same result as under PepsiCo in the Second

3  Circuit".

4        Court reached the same conclusion in the Hudson --

5  in the motion to dismiss decision in the Hudson Diamond and

6  Leading Shine adversary proceeding, after again summarizing

7  the Amoro case in the Third Circuit, the Court said,

8  "Therefore, in the Third Circuit, bankruptcy trustees can

9  bring alter ego and beneficial ownership claims under Section

10  541 as generalized claims of creditors, not as claims of the

11  Debtor, which would also avoid the Wagoner Doctrine."

12        Again, the Court has already decided this

13  correctly.  Because these are claims asserted on behalf of

14  creditors generally, they are inherently not subject to in

15  pari delicto or the Wagoner doctrine.  And we've cited a case

16  to Your Honor, which is in our briefing, and I've raised it

17  previously, that addresses this head on.  And this is the In

18  Re Harmon case from the Northern District of Georgia

19  Bankruptcy Court in 2015.

20        The Court concluded in that case that in pari

21  delicto is not applicable here.  As discussed above, binding

22  Eleventh Circuit precedent informs that the Trustee has

23  authority under Section 541 to bring alter ego claims, which

24  could be brought by the Debtor's creditors.  Therefore, the

25  defenses do not apply.

1          Your Honor, as to personal jurisdiction, briefly,

2   I don't think I, at least, haven't heard in the briefing or

3   today any real basis to disagree with the Second Circuit

4   authorities we have cited for the proposition that where a

5   plaintiff has pled alter ego claims against defendants, those

6   alter ego claims themselves, assuming they're well-pled,

7   which for all the reasons I have discussed in our complaint

8   they are, those alter ego claims are sufficient to provide a

9   basis for exercising jurisdiction over the alleged alter ego,

10  and that makes perfect sense.

11         If somebody like Mr. Kwok who is resident in the

12  United States is using an entity located elsewhere as a mere

13  instrumentality or extension of himself, then by definition

14  that mere instrumentality or extension is also located in the

15  United States and also subject to jurisdiction here.  Those

16  cases are -- they're legion, there are many of them, and I

17  don't think I've heard any basis for this court to disagree

18  with them.

19         As to William G, which is not discussed, Your

20  Honor, he's pled as a -- well, I do want to address Attorney

21  Conway's argument briefly as to William G, Celestial Tide and

22  Major Leed, which is his -- the comment he made was that

23  these entities don't belong in the complaint because the

24  Trustee has pled no claims against him.  Not true, Your

25  Honor.  And, again, this is also an issue that the Court has

1  addressed in the past on multiple occasions.

2          These entities like other entities that have come

3  up before the Court in motions to dismiss in this case are

4  named in the complaint because they are nominal owners of

5  alleged shell companies -- of alleged alter egos.  We have

6  named them because it would be nice to have a judgment

7  against those parties to the extent that we need to, for

8  example, use that judgment to compel the nominal owner to

9  transfer shares in a company to the estate, et cetera.

10          I frankly don't think that we need that judgment

11  in order to get the relief because we will have a judgment

12  against the alleged alter egos, but that's why these parties

13  have been named because they are nominal owners, and

14  therefore they are defendants to the counts where we seek a

15  declaratory judgment as to the Trustee's ownership of these

16  entities, and where we seek, you know, ultimately turnover of

17  their assets.  That's why they're named in the complaint.

18          And as to whether or not Mr. G is subject to

19  personal jurisdiction, I'll refer the Court to our papers, in

20  in particular to the complaint.  But to put it succinctly, we

21  believe we have specific jurisdiction over Mr. G.  There --

22  the complaint is replete with allegations as to Mr. Kwok's

23  relationship with Mr. G.  The fact that Mr. G, when acting as

24  the Debtor's agent and helping him to manage these shell

25  companies for Mr. Kwok's benefit, traveled to the United

1  States repeatedly.  He directed other agents of the Debtor in

2  the United States, including Jesse Brown, who testified at

3  the criminal trial.  He helped facilitate, as the Court well

4  knows, the security deposit for the Lady Mae yacht before

5  this court.

6        There are a number of different contacts that we

7  have pled that relate specifically to the allegations of

8  control and alter ego set forth in the complaint, which

9  therefore establishes specific personal jurisdiction over Mr.

10  G.

11        Last two arguments that I'll briefly address Your

12  Honor are, the issue of service of G Club International, and

13  the issue of whether the complaints were properly filed under

14  seal.  On the service question, Your Honor, I really don't,

15  frankly, believe this argument merits any discussion, but

16  since it has been asserted, I feel compelled to address it.

17        I'm frankly mystified by the assertion that

18  there's no evidence to support that G Club International is

19  properly served.  Your Honor, the parties agree that under

20  the Hague Convention and under BVI law, that a BVI entity can

21  be served by leaving process at the place of its registered

22  agent.  And we also agree that service is complete upon that

23  happening, regardless of whether or not the registered agent

24  signs to accept service.

25        Here, we have filed on the docket at Docket No.

1  54-5, a certificate of service from Attorney Lindsey,

2  attaching documentation from the process server at the

3  Trustee's counsel in the BVI who effected service on G Club

4  International.

5       This certificate of service, specifically, on page

6  2, certifies that counsel for the Trustee in the British

7  Virgin Islands, Harney, Westwood, and Riegels, caused the

8  Defendants, including G Club International, to be served with

9  the documents -- the served documents which is a defined term

10  including the complaints -- by personal service on their

11  registered agents listed below and as indicated in Exhibit A

12  attached hereto.

13       Listed below, you have G Club International

14  Limited, indicating that its registered agent was FH

15  Corporate Services Limited with an address below that.  If

16  you look at Exhibit A, Your Honor, on page 6 of the

17  documents, with respect to G Club International, there's a

18  statement that the documents were left at FH Corporate

19  Services Limited on Monday, May 10th, 2024.

20       However, FH Corporate Services Limited refused to

21  accept service on behalf of any of the companies.  In any

22  event, hard copies of the documents were left at the

23  company's registered agent address.  The email from FH

24  Corporate Services Limited is appended as Schedule B.

25       And then, that's plain as day, Your Honor.  The

1  certificate of service describes exactly what happened.  The

2  documents were left with the registered agent.  If you go to

3  Exhibit B, which contains the email, Attorney Sklar says that

4  there is no email on there, which is just not true.  If you

5  look at page -- page numbers are obscured on the copy that I

6  have, but it would be the fifth-to-last page of Exhibit B.

7          There's an email from an individual at Forbes

8  Hare, which is FH Corporate Services Limited, explaining to

9  the Trustee's counsel who served the complaint that they do

10 not have instructions to accept service.

11         So again, the facts are clearly laid out in the

12 certificate of service.  The documents were served at the

13 registered agent, in accordance with BVI law, they said,

14 We're not accepting service.  But as I just said, under BVI

15 law, that's irrelevant.  Service is complete upon mailing.

16 There's there should be zero dispute on this issue, it's a

17 manufactured issue that does not exist.

18         Another manufactured issue and the last issue I

19 will address with the Court, Your Honor, is the question of

20 whether or not the complaints should be dismissed because

21 they were, according to Attorney Sklarz, improperly filed

22 under seal.

23         To be very clear, the Trustee filed a motion to

24 have the complaint -- the amended complaint sealed in this

25 case.  That motion was granted by the Court in this adversary

1  proceeding without objection by Attorney Sklarz.  He has not

2  sought to overturn that.  He's not sought reconsideration.

3  That motion was based on the existing protective order that

4  the Court already entered in the larger Chapter 11 case.  The

5  point of that protective order, of course, is to allow

6  parties who are producing information to the Trustee to do so

7  on a confidential basis.

8         That protective order requires the Trustee to

9  maintain the confidentiality of the information that he

10  received.  It requires the Trustee to file that information

11  under seal to the extent he files it on the docket of this

12  case.  Attorney Sklarz has every right, as he acknowledges,

13  to simply sign the protective order to get access to that

14  information.  Every other defendant in this case has done so.

15  In fact, there's an awkward situation where one of Attorney

16  Sklarz's clients, Aaron Mitchell, has signed the protective

17  order.

18         So, Attorney Sklarz's client, in one case, can get

19  the information, but Attorney Sklarz cannot.  Your Honor,

20  he's not cited any other case dealing with circumstances like

21  this.  He's not suggested, much less cited, authority for the

22  fact that it's improper for a court to enter a protective

23  order like the one it issued here.

24         All of that, setting all that aside, I don't even

25  understand the point of the argument, Your Honor, because it

1   cannot be that the result, even if Attorney Sklarz is right,

2   is that the Trustee's claims against him have to be

3   dismissed.  And I assume he would say with prejudice.  That

4   makes zero sense.  Even if he's correct, the remedy would be

5   unsealing the complaint.  It wouldn't be dismissing the case.

6   And to be -- also, to be very clear, the Trustee has no

7   desire to maintain the confidentiality of information that

8   other parties have marked confidential.  He's simply doing

9   what he has been asked to do.

10          And if there ever comes to be a point where that

11  information should be unsealed and a motion needs to be filed

12  for that purpose, the Trustee would file the motion, and

13  parties would have the opportunity to come in and object and

14  say that they want it to remain confidential.  Maybe an issue

15  that we'd have to deal with some privileged information

16  potentially.  I'm not sure if that's indicated by the

17  complaint or not.  We would deal with that.  Bottom line,

18  Your Honor, is that in any world dismissal would not be the

19  remedy.

20          With that, Your Honor, I will conclude my remarks.

21  I apologize for the lengthy comments, but there were a lot of

22  issues raised in the briefing and a lot of issues raised

23  today.  In summary, we have more than met the standard that

24  applies at this stage of the case, particularly for highly

25  fact-specific claims.  And we think all of the arguments that

1   have been raised by the Defendants are ones that should be

2   rejected by the Court.  Thank you, Your Honor.

3            THE COURT:  Thank you.

4            Attorney Conway, would you like to respond?

5            MR. CONWAY:  Yes.  Thank you, Your Honor.  I want

6   to start with what seems like an issue that shouldn't have

7   been raised, but it was.  And it's just because the record is

8   now muddled again with facts that are not facts and in this

9   case, these things seem to snowball into later proceedings.

10           It has never been the case that, I have stated to

11   this court that Mr. Fallon has given me instructions in

12   connection with representing the Taurus Fund.  That, in fact,

13   is false.  I would not breach my obligation not to disclose

14   privileged conversations.

15           I did respond to Your Honor's question on Day 1 of

16   my representation in this case who signed my retention

17   agreement, and I said it was David Fallon.  I say that only

18   because tomorrow it'll be -- it'll be quoted in a newspaper

19   that Mr. Fallon's instructing Mr. Conway.  That's just not

20   true.

21           Now, we started with the issue of English law.  I

22   think that one of the things that we want to make clear is

23   that this bare trustee issue has a starting point.  The

24   starting point, even the cases cited by the Trustee and

25   certainly the cases cited by our clients, are that there is

1  an intent to set up a trust for a specific individual or

2  entity, and in this case we're talking about Mr. Kwok that

3  doesn't exist for any of these companies.  There has to be a

4  starting point where there's an intention, not something that

5  comes later, where Mr. Kwok decides he's going to take

6  advantage of something that's been set up.

7          And the easiest way to really illustrate this is

8  using counsel's chart.  If we go to page 5 -- I'm sorry, 4,

9  where he talks about the Hamilton Capital Holdings Defendant,

10 that's a UK entity and obviously would be controlled by UK

11 law.  Who was the trust set up for?  William Jay. according

12 to this.  According to the complaint, William Jay is the

13 nominal owner.  It was the Hamilton Capital Holdings set up

14 for him.

15         How is the Debtor in any way implicated by this?

16 Are there facts in the complaint that say that there was a

17 nominal trust, a bare trust set up for his benefit?  No.

18 It's all for the benefit, according to the complaint, of Mr.

19 Jay.  And Mr. Jay is, without support, the agent of Mr. Kwok.

20         While it is an allegation unsupported that he's a

21 financial adviser to Mr. Kwok, there's nothing in the

22 complaint that suggests that this bare trust situation, which

23 was according to the complaint, set up for someone other than

24 Mr. Kwok, is, in fact, something that was set up for Mr.

25 Kwok.  It's the opposite.  Their own allegations, rebut their

1   theory here.

2           And the same is true for all of these entities,

3   even the ones that are not foreign entities, the domestic

4   entities, as well, they're not set up for Mr. Kwok.  The

5   allegation, essentially, is that he's coming around later and

6   taking advantage of these entities.

7           Now, the point that counsel makes that Nordlicht

8   is eerily similar struck me as worthy of comment.  It's not

9   eerily similar.  It's exactly the opposite of what we have

10  here.  In Nordlicht, as we pointed out in the papers, we have

11  an asset or assets transferred from the Debtor to a trust.

12  The assets are being asked to be brought back to the Debtor

13  by the Trustee, the exact opposite of what we have here.

14  Here, we have assets that were set up or fraudulently

15  obtained from somebody else, and they want -- the Trustee

16  wants to bring them into the Debtor's estate.

17          Nordlicht is a case relating to general claims.

18  This is a case relating to individual claims.  And Mr.

19  Bassett has stated again today -- he stated this in the past,

20  too.  He says he doesn't understand this issue.

21          How can anybody say these are individual claims?

22  What does that even mean?  What it means is -- and this is

23  one of the problems with having a case with, you know, 30-

24  some odd defendants saying they're all the same facts.

25  You've got to take these one at a time.  And what's easiest

1  for me anyway to use, Mr. Sklarz's client because G Club, as

2  we all know from our years in this case, is made up of a

3  bunch of individual members.  And so it's easy to think about

4  who really got harmed with respect to G Club.  It was

5  certainly not the Debtor.

6         So what we have here is a claim, ultimately, at

7  the end of the day -- and the Trustee has, at various times,

8  said to Your Honor, we'll extend the claim bar date and let

9  them come in and make claims, and that'll resolve all

10  problems.  Here's why it doesn't work, Your Honor.  If we

11  focus just on G Club and say it's $200 million comes into the

12  estate because the Trustee wants to augment the estate with

13  that money, now you've got G Club's members making a claim

14  against those assets, but you've got every single creditor of

15  the Debtor claiming against those assets as well.

16         This is what Mr. Bassett doesn't claims he doesn't

17  understand.  How can these be individual claims?  That's how.

18  Those assets are not the property of every creditor of the

19  estate.  They're assets which would belong to the creditors

20  who were defrauded in the first place and put that money into

21  G Club and then into Hamilton or wherever.

22         But the fact is that if somebody got in an auto

23  accident with Mr. Kwok and can make a claim against those

24  assets, that's not what the -- that's not what the law is

25  supposed to address here.  The standing issue is clear.  If

1    it's general claims where the assets started in the hand of

2    Mr. Kwok, sure, the Trustee has standing to go after it.  If

3    it's individual claims where only those G Club members can go

4    after those assets, then it's not appropriate for the Trustee

5    to do it.  And it's not acceptable to just say I don't

6    understand that argument, and therefore it's not a good

7    argument.

8              Now, Mr. Bassett also said that it's not

9    appropriate to resolve facts on a motion to dismiss.  I

10   agree.  But we're not trying to resolve facts.  What we're

11   saying here, there are no facts.  There are conclusions to

12   say that, Mr. G is an agent of the Debtor.  Okay.  That's a

13   conclusion.  Why is he an agent?  Why is there control?  We

14   have no facts that support any of these conclusions.  And

15   that is appropriate to decide on a motion to dismiss.  It's

16   not too soon.

17             The idea that that there is no right to argue

18   jurisdiction in an alter ego case, well, that flies in the

19   face of the Second Circuit's Palladium opinion, which is an

20   alter ego case where the Court does address jurisdiction

21   issues and does also address other aspects of the same claim

22   -- same arguments we're making here, but they do focus on

23   jurisdiction.  It's not true to say that if it's an alter ego

24   case, you don't have a jurisdiction defense because you're a

25   foreign defendant.  There still has to be some showing that

1  there is a constitutional basis to bring these folks into the

2  United States, and we haven't seen that alleged here.

3          I think I got one more point I wanted to address

4  that was made.  Well, I guess it's just part and parcel of

5  one that I've already discussed.  And that is that Mr.

6  Bassett made it very clear what he wants to do in this case.

7          He does not want to recover monies and then give

8  it back to the creditors who were defrauded, whether it be G

9  Club or otherwise.  What he wants to do is he wants to bring

10  them in, augment the estate for the benefit of everybody, and

11  he claims that's what you're supposed to be able to do.

12  That's what makes it a general claim, but that's not the

13  case.  That's not what general claims or individual claims

14  refers to.

15          He's not -- it's not a matter of saying what he's

16  doing here I want to take all this money and give it to

17  somebody else.  We're not Robinhood.  We're supposed to give

18  the money back to the people who are defrauded and that, as

19  Mr. Sklarz said earlier, that's the job of the Department of

20  Justice in this case.  That's not our job.  Thank you, Your

21  Honor.

22          THE COURT:  thank you

23          MR. SKLARZ:  Thank you, Your Honor.  Jeffrey

24  Sklarz for G Club and G Club International.  I'll work from

25  the end to the beginning.  With respect to the ceiling

1   argument, whatever Attorney Bassett said has absolutely no

2   bearing on the existence of Local Rule 5(e).  That is the

3   rule that has to be complied with.

4         By way of background, as Your Honor may recall,

5   many years ago, Judge Mark Kravitz took a particular interest

6   in this district in open courtrooms and constitutional right

7   to observe proceedings and dockets.  Therefore, our district,

8   for better or worse, has a very lengthy process, highly

9   specific and detailed as to how documents -- judicial

10  documents are sealed and how courtrooms are sealed.  It's

11  embodied in a rule.  That rule is written down to be

12  followed, and it wasn't.

13        It is not on me to just do something because the

14  Trustee wants it done.  The Trustee does not have a roving

15  commission to do whatever he wants.  He is an officer of the

16  Court and needs to comply with the rules.

17        With respect to the service of process issue, I am

18  looking at exhibit or the document 54-5, and I'm not --

19        THE COURT:  In your adversary proceeding?

20        MR. SKLARZ:  In my adversary.  Yeah.  In the ACA.

21        THE COURT:  Yep.  I just want to make sure clear

22  for the record.  Yeah.

23        MR. SKLARZ:  There are a bunch of -- so the

24  reference --

25        THE COURT:  Tell me the ACF number again, please.

1          MR. SKLARZ:  I just want to -- I'm looking at 54-

2   5, but I just want to make sure I'm looking at the right one.

3   There's a lot of them.

4          MR. BASSETT:  You want my copy?

5          MR. SKLARZ:  That would be easier.  Thank you.  So

6   on 54-5, page 6 of that document, although it's hard to see,

7   that's where the statement from the process server is.  Then

8   further on, there are a number of letters from Harneys.  One

9   is to -- this is Schedule B.  One is to Conyers Trust.

10  Another is to Conyers Trust.  A third is to Conyers Trust.

11  I'm sorry.  Relates to Himalaya, Himalaya, Himalaya, Wise,

12  Himalaya.  Nothing related to G Club International.

13         So whatever -- so the email from the FH person

14  says, we're not authorized to accept service.  There's

15  nothing related to G Club in that document.  Your Honor will

16  review it, and you'll either agree with me or perhaps I

17  didn't read so well.  But that's set forth in our briefing.

18         Now, there was discussion today, and this mirrors

19  the discussion we had a couple weeks ago regarding the

20  differences between alter ego and substantive consolidation.

21  And, apparently, according to the Trustee, there's a special

22  -- the Erie doctrine just doesn't apply anymore, and state

23  law rights and remedies exercised under Section 541 of the

24  code are subsumed in some federal common law.

25         Well, Erie teaches us that federal common law

1    doesn't exist except to the extent of a federal statute.  Now

2    the Bankruptcy Code is a federal statute, but the remedy of

3    alter ego is not a bankruptcy remedy.  It's a state law,

4    common law remedy.

5            So to say that there's somehow this special remedy

6    that attaches when you bring an alter ego in the Bankruptcy

7    Code is just wrong.  Now, a couple of weeks ago, essentially,

8    what the Trustee said is, hey.  This really is the same

9    remedy as substantive consolidation, but we don't want to

10    follow auto style.  Your Honor should just not permit that.

11            Alter ego is a specific remedy designed under

12    state law, and under Puerto Rican law in particular, it is a

13    vicarious liability.  In other words, if there is liability,

14    the creditor can go after the assets of the alter ego.  It is

15    not substantive consolidation.  But again -- and I pointed

16    this out last time -- what he asked for isn't even

17    substantive consolidation.

18            It's give us the assets, ignore the liabilities.

19    And Attorney Conway stole my thunder, but I'll repeat it

20    anyway.  There's no explanation of how any of the direct Kwok

21    creditors, people who filed proofs of claim, people who

22    allege that they were somehow owed money by Kwok get G Club

23    assets.  Going to their chart on page 37, 2(d), the U.S.

24    Government alleged GCO, which stands for G Club Operations,

25    was used by the Debtor and his co-conspirators to

1  fraudulently obtain more than 250 million in victim funds.

2  The victims are the people who placed their money with G

3  Club.  They didn't place their money with Kwok.  They didn't

4  give their money to Kwok.

5          So the remedy is to take the money set aside by

6  the Government to go back to the victims of G Club and put it

7  in put it in the Bankruptcy Court for distribution to people

8  who aren't the victims of G Club, that cannot possibly be a

9  recognized remedy.  It is -- it would be stealing from the

10  feet the people who've already been stolen from.  It goes on,

11  including the funds used to purchase the Mahwah Mansion.

12          The Trustee, I believe, has either sold or is

13  selling the Mahwah Mansion for the benefit of the Kwok

14  creditors.  Should G Club now sue the estate for conversion?

15  Because that's what it sounds like.

16          Now, I am absolutely baffled by the Trustee's

17  discussion of Nordlicht.  The case says it's being decided

18  under 541(a), not under 544.  The case doesn't mention

19  anything about in pari delicto or cite Wagoner.  Under 541,

20  the Trustee is imbued with the attributes of the Debtor.

21  Nordlicht is a simple case.  Is whatever the Trustee is

22  trying to settle, settleable under 9019?  That's it.  It

23  doesn't discuss any of the Wagoner issues.  It doesn't

24  discuss any of the in pari delicto issues.

25          Now, turning to the British -- the English common

1  law, the English law issues, Prest and Skystream.  First of

2  all, and again, there was no discussion either in the

3  complaint by the Trustee or in those cases concerning the

4  capital structure of the entity that was claimed to be the

5  alter ego.  In Prest, it was this total shell entity.

6          G Club is not -- the Trustee doesn't argue G Club

7  was a mere shell.  It had members.  They reference in the

8  Government citation.  There's 8000 plus members of G Club.

9  It had its own capital structure.  It had a whole staff.  All

10 of that is discussed in the complaint.

11         To the contrary, we're not arguing a factual

12 dispute here.  This is a motion to dismiss.  Assume it's all

13 true.  We assume it's all true.  G Club was defrauded by Mr.

14 Kwok.  That's all the complaint alleges.  G Club's money was

15 stolen.

16         There was no -- and, again, and please, as you'll

17 recall, Your Honor, in my opening statement, I said there's

18 two -- there's an element that is different under English

19 law, whether you call it a bare trustee or alter ego,

20 whatever you want to call it, the claim must explain how the

21 controller is being deprived of the benefit.

22         Here, a -- there's none of that in the complaint,

23 number one, because the controller, Mr. Kwok, obtained the

24 benefit.  He's not -- he hasn't -- depriving him of the

25 benefit would require the return of all of this money and

1  property to G Club, and certainly, that's not what the

2  Trustee is looking for.

3         And then, finally, Your Honor, Puerto Rico

4  requires allegations of fraud, and that's the Alturas case,

5  132 DPR at 927, cited in our briefing.  So we do believe Rule

6  9 should apply.  Rule 9(b) should apply.

7         So taking the allegations is true, and again,

8  referring back to page 37 and I suppose page 40, which is G

9  Club International, who -- the inequitable purpose at all

10 relevant times, Debtor was indebted to one or more of the

11 creditors.  Who?

12        What creditors of G Club or G Club International

13 were they indebted to?  Again, the Trustee acts as if they

14 filed bankruptcy petitions for G Club or G Club

15 International.  They haven't.  G Club is a -- G Club, as

16 alleged by the Trustee, is a victim of the fraud.  This case

17 must be dismissed because a victim of the fraud should not be

18 defrauded again.  Thank you, Your Honor.

19        THE COURT:  Thank you.

20        MR. BASSETT:  Your Honor, may I have just a couple

21 of minutes to respond to --

22        THE COURT:  Just a couple of minutes.  Yes.  I do

23 have something else I have to do this afternoon.  So --

24        MR. BASSETT:  I'll be very brief, Your Honor.

25 I'll just respond to arguments that were made very quickly.

1  So, Attorney Conway took exception to the reference to him

2  having taken instructions from David Fallon.  Your Honor, all

3  I did was describe, basically, verbatim, what we've alleged

4  in paragraph 122 of our complaint.  At this stage,

5  allegations are taken as true.

6          If he wants to dispute that factually later, he

7  can.  The transcript says what it says, but all I was doing

8  was citing the complaint.  I was not misrepresenting

9  anything.

10          Now, Attorney Conway also said that, you know, I

11  can't just stand up here and say I don't understand his

12  arguments.  I understand his arguments, Your Honor.  The

13  point is that his arguments are meritless.  And the argument

14  that he's making that's meritless is this argument that that,

15  you know, the real victims here are victims of G Club and all

16  these other entities that were defrauded by the Debtor.

17          Your Honor, first of all, they don't represent

18  victims of Mr. Kwok's crime.  And I think the Court should be

19  very concerned about the fact that they're standing here

20  trying to get these assets back because, really, these are

21  going to go back to Mr. Kwok and others associated with him.

22  But setting that aside, there is no merit at all to the idea

23  that one could not use an alter ego to defraud people.

24          And then, if one is defrauded by an alter ego,

25  right, if there are victims of G Club who were defrauded by

1  Mr. Kwok, and defrauded by, say, G Club or any of these other

2  entities that Mr. Kwok used in this fraudulent scheme, they

3  would then have claims against the estate.  If they dealt

4  with an alter ego and were defrauded by an alter ego, that

5  alter ego, by definition, under law, is Mr. Kwok.  It's an

6  extension of Mr. Kwok.

7          So those victims, to the extent they are victims,

8  to the extent they have claims, would have claims against the

9  alter ego, which as a result of the alter ego ruling, has

10  become property of the estate.  There's zero inconsistency in

11  those theories.

12          And when they talk about who the victims are and

13  who was harmed, to go to Mr. -- to go to Attorney Sklarz's

14  comments at the end, who was harmed?  It's not -- he says we

15  haven't identified, you know, a particular victim of G Club

16  who was harmed by the alter ego relationship.  That is

17  completely misunderstanding the point.

18          The people who were harmed by Mr. Kwok's shell

19  game, where he takes all of his assets and hides them in

20  other entities, are Mr. Kwok's creditors.  There are over a

21  thousand proofs of claim in this case.  It is those people

22  who were harmed by the fact that Mr. Kwok took his assets and

23  never owned title to them himself.  Instead, kept them at

24  purported arm's length in shell companies.  Those are the

25  people who were harmed.

1          If they had it their way, Mr. Kwok could get away

2   with filing for bankruptcy, despite being a billionaire,

3   listing on his schedule zero assets, and all of his thousands

4   of creditors would have no recourse.  That's obviously not

5   the way the Bankruptcy Code should work.

6          Attorney Conway said we haven't put any

7   allegations as to the Debtor's control over William G in the

8   complaint.  Your Honor, we have three pages of allegations at

9   paragraph 55(b) of the complaint.

10          As to Nordlicht, Your Honor, I'm not going to go

11   back to it.  Nordlicht did not itself admittedly -- I'm not

12   going to go back to name detail.  It did not itself

13   admittedly talk about in pari delicto or Wagoner.  What it

14   did talk about was how, under Section 541(a) of the

15   Bankruptcy Code, the Trustee can assert claims that belong to

16   creditors.

17          An extension of that, as the Court recognized,

18   consistent with the same law in the Third Circuit, and as the

19   Harmon Court held, is that obviously, in pari delicto and

20   Wagoner don't apply because those are creditor claims.

21   They're not claims that became property of the estate because

22   they were claims that could have been asserted by the Debtor

23   himself.

24          Your Honor, the last point I wanted to make was

25   just by way of clarification.  As I said, the theory that the

1  Trustee is pursuing under English law as to the entities at

2  issue in the complaint is a bare trustee theory that I

3  described at some length.  I do want to be clear that the

4  same -- that an alter ego theory does exist under UK law --

5  under English law, rather.  And it's actually discussed in

6  the same Prest case that we cite.  The Court in that case

7  decided to go with the bare trustee theory and not the alter

8  ego theory.  But it has very similar allegations involved in

9  a very similar underlying principle of equity.

10        And the reason I mentioned that, Your Honor, is

11  because the Trustee need not have plead an alter ego theory

12  specifically against all of those English law governed

13  entities to use that as a basis for personal jurisdiction.

14        In the Second Circuit case that we cite, the

15  Platinum, I believe, case -- I don't have it in front of me -

16  - the Second Circuit's case that we cite, for the alter ego

17  theory of jurisdiction was exactly the same.  The plaintiff

18  in that case did not, in fact, even allege an alter ego claim

19  substantively against the defendants and alleged other

20  claims.  But the Court, nevertheless, recognized that the

21  theory of alter ego jurisdiction could exist and could be

22  used to exercise personal jurisdiction.  I just wanted to

23  make that clear, that that's still the basis that the Trustee

24  is seeking to assert jurisdiction over those entities.

25        With that, Your Honor, I'll conclude my remarks

1  unless the Court has any questions.

2         THE COURT:  I have no questions.  Thank you.

3         MR. CONWAY:  Your Honor, there was one point made

4  that was new in that I just -- if I get one sentence.

5         THE COURT:  What was it, Attorney Conway?

6         MR. CONWAY:  Mr. Bassett said -- I'll just leave

7  it here if it's okay.

8         THE COURT:  Yeah.  That's fine.

9         MR. CONWAY:  Mr. Bassett said that when they --

10  when Mr. Kwok defrauded folks and the assets came into his

11  so-called shell companies, title basically transferred to Mr.

12  Kwok and therefore became asset of the estate.  I just want

13  to point out that the law in this circuit is very clear that

14  title to assets of a crime or fraud do not transfer to the

15  person or entity that commits the crime.

16         MR. BASSETT:  Your Honor, that's not an issue

17  that's been briefed, and I disagree entirely with that

18  proposition.

19         THE COURT:  Okay.  Thank you.

20         Attorney Sklarz, you look like you're going to

21  stand up.  Briefly, I assume.

22         MR. SKLARZ:  Very.  Attorney Bassett, just picking

23  up on that, said Kwok kept his assets in the alter egos.  As

24  I've said and as they plead, let's just look at the chart,

25  page 37.  As to my clients, there is no allegation that the

1   money in G Club or G Club International came from Kwok

2   creditors.  The Government even says it came from the

3   customers we call members of G Club, owe hundreds of millions

4   of dollars.

5            The claim that that somehow belongs to Kwok by

6   virtue of him committing the fraud is absurd.  I mean, it

7   doesn't -- it doesn't transmutate into Kwok money because he

8   facilitated the fraud.  It is still the -- it is still owned

9   by the customers who gave it to G Club for a service.  So I

10  can't speak as to all defendants.  I can speak as to two.

11           And as to those two defendants, the allegations of

12  the complaint, which we have to take as true because this is

13  a motion to dismiss, do not say that Kwok put any money, any

14  assets, any of his stuff in G Club.  He took it out.  It

15  augmented the estate.  It didn't diminish it.  Thank you.

16           THE COURT:  Okay.  Thank you.  All right.  With

17  regard to the two motions to dismiss, obviously, I've heard a

18  lot of argument today.  There are a lot of different issues

19  that have been raised, and there are, there is a need to look

20  at the law again and to look at the complaints.

21           So I'm going to take both of those motions under

22  advisement.  Is there anything else that we I need to address

23  this afternoon?

24           MR. BASSETT:  Your Honor, we had one housekeeping

25  matter.  It should be quick.  Then I can let the Trustee jump

 1 | in as well as necessary.  But as I believe the Court is

 2 | aware, and I apologize, I don't have the docket reference

 3 | handy, but the Trustee filed recently another motion to

 4 | extend the statute of limitations deadline for avoidance

 5 | actions.  And the Court has scheduled a hearing on that

 6 | motion for February 11th, I believe.  And the Court noted in

 7 | that order scheduling a hearing that it would be a non-

 8 | evidentiary hearing.  I just wanted to find --

 9 | THE COURT:  Well, I don't know if the Court noted

10 | that.  I think the notice of hearing might have noticed that

11 | -- might have said that.

12 | MR. BASSETT:  Okay.

13 | THE COURT:  Because it's most likely our notice of

14 | hearing that we use as a form.  But you're -- you are

15 | suggesting -- not suggesting.  You're saying that that's what

16 | the notice of hearing said, and you would like there to be

17 | evidence?  Is that what you're saying or you believe there

18 | may be a need?

19 | MR. BASSETT:  Yes.  That's exactly right, Your

20 | Honor.  I apologize for, you know, mischaracterizing.

21 | THE COURT:  No.  No.  I'm sure that's what the

22 | notice says.  I'm sure it's the notice of hearing that we

23 | use.  And, you know, I don't always remember what every

24 | notice of hearing says.

25 | So you could be completely correct that it's --

1   and you probably are, that it says it's a non-evidentiary

2   hearing.  I think because -- I think it would say that

3   because it would -- was it titled motion for extension of

4   time?  What is it?  Is it -- it's another extension motion.

5   Right?

6            So it would probably be thought of to be a non-

7   evidentiary issue.  So I'll take a look at that.

8            MR. BASSETT:  Okay.  And, yeah, just to be clear,

9   Your Honor, I believe, at the prior hearings on the previous

10  iterations of that motion, we typically have supplemented the

11  record with some testimony from the Trustee as to the need

12  for the extension.  I think we would likely do that again

13  here, and we can, you know, file something formal with the

14  Court to review.

15           THE COURT:  That was filed in the main case.

16  Correct?  I mean, it's a main case pleading.

17           MR. BASSETT:  That's correct, Your Honor.

18           THE COURT:  So just if you give me a moment,

19  please.  Because if that's the issue, then we'll we need to

20  rectify it sooner as opposed to later.  Right?  Did you have

21  some kind of time frame on when you had to make service or on

22  that?  I don't recall.  Let me take a look.

23           Yeah.  Okay.  The notice of hearing was issued

24  yesterday, it looks like, on the second supplemental motion

25  to extend deadline to file avoidance actions.  That's what

1  you're speaking about, Attorney Bassett?

2          MR. BASSETT:  That's correct.  I believe it's ECF

3  4009.

4          THE COURT:  4009.  All right.  Let me look at what

5  it says.  Yeah.  This is our typical or what I would say

6  usual notice of hearing.  So let me see what it says.

7          All right.  There's no date by which service of

8  this notice of hearing had to be made because I'm it would

9  have been served on all parties via CMECF and on the

10  creditors' committee, and all the parties that have already

11  brought issues before the Court.  So I understand.

12          I see the language you're talking about.  So, it

13  does say unless otherwise ordered by the Court.  So let me

14  take a look at it, and we'll figure out whether we issue an

15  amended notice of hearing or some order saying that it may --

16  it may be an evidentiary hearing.

17          MR. BASSETT:  Understood, Your Honor.

18          THE COURT:  But the objections to the motion have

19  to be filed on or before February 7th.  So let me take a look

20  at that this afternoon.  We'll do something about it.

21          MR. BASSETT:  Thank you.

22          THE COURT:  I have to attend to something first,

23  and then I will look at that notice of hearing.  But that is

24  the form of a notice of hearing.  So if there are -- I would

25  suggest if you think of it in the future, if you or any other

1  party is asking for the Court to set some kind of a hearing

2  and you believe it should be evidentiary, you should say that

3  somehow.  I mean, I know that some people in state court,

4  there's a process for that, you know, on a form.  But you

5  could ask that.  Okay?  That would be helpful because the

6  clerk's office isn't going to always have the time to analyze

7  whether or not something should be an evidentiary hearing.

8          MR. BASSETT:  Understood, Your Honor.

9          THE COURT:  Okay?

10          MR. BASSETT:  Thank you very much.

11          THE COURT:  All right.  Thank you.  All right.  Is

12  there anything further we need to address this afternoon?

13          MR. DESPINS:  Not from my perspective, Your Honor.

14  Thank you.

15          THE COURT:  Okay.  Thank you.  All right.  Thank

16  you for your all for your papers and your arguments.  And as

17  I noted, I will go back and review everything.

18          We'll take those two motions under advisement, and

19  we'll rule accordingly.  And since that's the last matter on

20  today's calendar, court is adjourned.  Thank you.  Thank you.

21          (Proceedings concluded at 3:14 p.m.)

22

23

24

25

1                          CERTIFICATION

2            I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    /s/ Wendy K. Sawyer                    January 29, 2025

8    WENDY K. SAWYER, CDLT

9    Certified Court Transcriptionist

10   For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25