**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x

In re:                                                    Chapter 11

HO WAN KWOK, *et al.*,[1]                                 Case No. 22-50073 (JAM)

        Debtors.                                 (Jointly Administered)

-------------------------------------------------------x

## APPLICATION OF CHAPTER 11 TRUSTEE AND GENEVER HOLDINGS LLC TO EMPLOY AND APPOINT THE HAMILTON GROUP, LLC AS AUCTIONEER

        Luc A. Despins, in his capacity as chapter 11 trustee (the "Trustee") of Ho Wan Kwok (the "Individual Debtor"), and Genever Holdings LLC ("Genever US" and, together with the Trustee, the "Applicants") hereby file this application (the "Application") requesting entry of an order, substantially in the form attached as **Exhibit A** hereto (the "Proposed Order"), to employ and appoint The Hamilton Group, LLC ("Hamilton") as auctioneer to the estates of the Individual Debtor and Genever US (the "Estates"), in accordance with 11 U.S.C. §§ 327 and 328, to market and auction certain motor vehicles and other personal property (including furniture).  In support of this Application, the Applicants submit the declaration of Michael J. Knudsen, a member of Hamilton (the "Knudsen Declaration"), a copy of which is attached hereto as **Exhibit B** and incorporated herein by reference, and respectively state as follows:

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## PRELIMINARY STATEMENT[2]

1.      During the course of the Trustee's investigation of the financial affairs of the

Individual Debtor, the Trustee has identified certain personal property that belongs to the

Individual Debtor's Estate and Genever US's Estate, and which should be monetized for the

benefit of the respective Estate's creditors.  As it relates to the Individual Debtor's Estate, this

property includes:

    a.  four motorcycles (the "Four Motorcycles"), namely:

        i.   a 2021 Harley Davidson motorcycle with a VIN number of
             1HD1TBH1XMB957197,

        ii.  a 2021 Harley Davidson motorcycle with a VIN number of
             1HD1TEH1XMB956441,

        iii. a 2021 Harley Davidson motorcycle with a VIN number of
             1HD1FBC10MB661233, and

        iv.  a 2022 BMW motorcycle with a VIN number of WB10L4303N6F02046;

    b.  a 2021 Ducati Diavel motorcycle bearing VIN number
        ZDMGAHRW5MB005016 (the "Ducati");

    c.  a 2017 Lexus NX 200T (the "Lexus," and together with the Four Motorcycles, the
        Ducati, the "First Vehicle Group");

    d.  certain furniture and other personal property previously located at two storage
        units at Westy Storage (the "Golden Spring Property");[3]

---

[2]  Capitalized terms not defined in the Preliminary Statement shall have the meaning ascribed to them later in the
     Application.

[3]  For the avoidance of doubt, using defined terms such as the Golden Spring Property, HCHK Property,
     Greenwich Land, and Genever US Property in this Application solely serves the purpose of describing the
     furniture and property items.  The Trustee by no means implies or concedes that Golden Spring, the HCHK
     Entities, Greenwich Land, or Genever US own any of such furniture and personal property.  To be clear, all
     Golden Spring Property, HCHK Property, and the Greenwich Land Property are the Individual Debtor's
     property which are the property of the chapter 11 estate.  Moreover, as the Court may recall, the Trustee has
     already determined that the Individual Debtor had moved some items from one location associated with one of
     the Individual Debtor's alter egos to another location associated with another of the Individual Debtor's alter
     ego.

    e.   certain furniture and personal property previously located at the HCHK Office (the "HCHK Property");[4] and

    f.   certain furniture and personal property previously located at the Taconic Property (the "Greenwich Land Property").[5]

2.    In addition, Genever US's principal assets consist of the Sherry Netherland Apartment and certain furniture previously located at that apartment.  As the Court may recall, in order to conduct remediation work at the Sherry Netherland Apartment, all furniture and personal previously located at the Sherry Netherland Apartment (the "Genever US Property," and together with the Golden Spring Property, Greenwich Land Property, and HCHK Property, the "First Furniture Group") have also been moved into storage.[6]  The First Furniture Group is currently stored in warehouse facilities in New Jersey (the "New Jersey Storage Facility"), with each of the Golden Spring Property, the HCHK Property, the Greenwich Land Property, and the Genever US Property being stored and kept separate from one another.[7]

3.    In accordance with the Applicants' statutory duty to maximize value for the Estates' creditors, by this Application, the Applicants seek to employ and appoint Hamilton as auctioneer to market and auction (a) the First Vehicle Group, (b) additional vehicles that may be identified and recovered by the Applicants in the future (the "Additional Vehicles" and,

---

[4]    The HCHK Property defined herein does not include a Bösendorfer 185VC Porsche #49539 piano, which is subject to the U.S. Government's forfeiture allegation in connection with the Individual Debtor's ongoing criminal case pending in the District Court for the Southern District of New York.

[5]    The Trustee has learned that the Greenwich Land Property may contain furniture items that were originally moved from the Debtor's mansion in Mahwah, New Jersey (the "Mahwah Mansion").  The Trustee is currently in the process of investigating and identifying such furniture items.  Subject to his determination, the furniture items originally moved from the Mahwah Mansion will be removed from the Greenwich Land Property for purpose of the Furniture Auction.

[6]    The Genever US Property consists of furniture that was originally acquired by Genever US in connection with the purchase of the Sherry Netherland Apartment and additional furniture acquired by the Debtor thereafter. The Trustee and Genever US reserve all rights as to the allocation, as between their respective estates, of the proceeds of the Genever US Property.

[7]    Given that the property of two separate estates are at issue here, the proceeds from the Genever US Property will be kept separate from the proceeds of the other property to be sold.

collectively with the First Vehicles Group, the "Estate Vehicles"), (c) the First Furniture Group, and (d) additional furniture and/or personal property that may be identified and recovered by the Applicants in the future (the "Additional Furniture" and, collectively with the First Furniture Group, the "Estate Furniture").  For the avoidance of doubt, by this Application, the Applicants are not seeking authorization to sell the Estate Vehicles or the Estate Furniture.  Such relief will be requested by separate motions (as further detailed below).

4.      Hamilton is well-situated to conduct the sale and auction process here.  Hamilton employs a group of professional auctioneers, certified appraisers and marketing personnel with combined experience spanning 150 years.  With an office located in Clinton, Connecticut, Hamilton has significant experience in the appraisal, marketing, and auction of personal property, including without limitation, motor vehicles, furniture items, personal property, and high-end furniture and antique items.  Moreover, Hamilton is a disinterested person within the meaning of 11 U.S.C. § 101(14).

5.      The services to be provided by Hamilton with respect to the auction of the Estate Vehicles (the "Vehicle Auction") include: (a) preparing a written valuation report of all Estate Vehicles to be auctioned; (b) transporting the Estate Vehicles to Hamilton's secured and insured warehouse located in Clinton, Connecticut; (c) inspecting, cleaning, displaying, preparing and photographing the Estate Vehicles for internet auctions; (d) marketing the Vehicle Auction; and (e) coordinating, monitoring, and conducting internet auctions of the Estate Vehicles.

6.      The services to be provided by Hamilton with respect to the auction of the Estate Furniture (the "Furniture Auction") include: (a) inspecting, cleaning, preparing, photographing, and cataloging the Estate Furniture for internet auctions; (b) marketing the Furniture Auction, and (c) coordinating, monitoring, and conducting internet auctions of the Estate Furniture

(including the checkout process following the auctions).  A copy of the proposal from Hamilton with respect to the auction of the First Furniture Group is attached hereto as **Exhibit C**.

7.    The Applicants submit that approving the employment of Hamilton as the auctioneer for the marketing and auction of the Estate Vehicles and Estate Furniture is in the best interest of the Individual Debtor's Estate and Genever US's Estate and that, accordingly, Hamilton's retention, on the terms set forth herein, should be approved by the Court.

### JURISDICTION, VENUE, AND STATUTORY BASES

8.    The United States Bankruptcy Court for the District of Connecticut (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut.

9.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

10.    Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S. C. §§ 1408 and 1409.

11.    The relief sought in this Application is predicated upon sections 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 2014, and Local Rule of Bankruptcy Procedure 2014-1.

### BACKGROUND

I.    **Chapter 11 Cases**

12.    On October 12, 2020, Genever US filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "SDNY Bankruptcy Court"), thereby commencing case number 20-12411 (JLG) (the "SDNY Bankruptcy Case")

13.     On February 15, 2022 (the "Petition Date"), the Individual Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

14.     On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Individual Debtor's chapter 11 case.

15.     On June 15, 2022, the Court entered a memorandum of decision and order [Main case Docket No. 465] (the "Trustee Order") directing the United States Trustee to appoint a chapter 11 trustee in the Individual Debtor's chapter 11 case.  Pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins as the Chapter 11 Trustee [Main Case Docket No. 514].

16.     On July 8, 2022, the Court entered an order granting the appointment of Luc A. Despins as the Chapter 11 Trustee in the Individual Debtor's chapter 11 case [Main Case Docket No. 523].

17.     On August 10, 2022, the Court entered an order [Main Case Docket No. 717] finding that the Trustee holds all of the Individual Debtor's economic and governance rights with respect to Genever BVI, which, in turn wholly owns Genever US.

18.     On September 30, 2022, the Trustee and Genever US filed a joint motion [Docket No. 211 in Case No. 22-50592] seeking an order from the SDNY Bankruptcy Court transferring the SDNY Bankruptcy Case to the Court.  On November 3, 2022, the SDNY Bankruptcy Court entered an order [Docket No. 225 in Case No. 22-50592] granting the motion and the SDNY Bankruptcy Case was transferred to this Court.

19.     On October 11, 2022, Genever Holdings Corporation ("Genever BVI," and together with Genever US, the "Genever Debtors") filed its voluntary chapter 11 petition in this Court.

20.     On November 3, 2022, the SDNY Bankruptcy Court entered an order [Docket No. 225 in Case No. 22-50592] transferring the venue of the SDNY Bankruptcy Case to this Court, which assigned it Case Number 22-50592.

21.     By order dated November 21, 2022 [Main Case Docket No. 1141], the Court approved the joint administration of the chapter 11 cases of Genever US, Genever BVI, and the Individual Debtor.

## II.    Sherry Netherland Apartment and Genever US Property

22.     Genever US's principal assets consist of the 18th floor apartment and auxiliary units in the Sherry Netherland Hotel located at 781 Fifth Avenue, New York, New York 10022 (collectively, the "Sherry Netherland Apartment"), as well as certain furniture previously located at the apartment.  The Sherry Netherland Apartment was purchased by Genever US in 2015 as a fully furnished residence.  Since then, the Debtors has added additional furniture and other personal property to the Sherry Netherland Apartment.

23.     During the SDNY Bankruptcy Case, Bravo Luck Limited ("Bravo Luck"), an entity purportedly owned by the Individual Debtor's son, claimed beneficial ownership of the Sherry Netherland Apartment pursuant to a purported trust agreement signed by the Individual Debtor and his son.  Shortly after the transfer of the SDNY Bankruptcy Case to this Court, the Trustee commenced an adversary proceeding against Bravo Luck [Adv. Proc. No. 22-05027], alleging, among other things, that the purported trust agreement was a forgery and the Individual Debtor (and now the estate) is the true beneficial owner of the apartment.

24.     On August 30, 2023, the Bankruptcy Court entered an order [Adv. Proc. No. 22-05027, Docket No. 118] approving a settlement agreement by and between the Trustee, Genever US, Genever BVI, Bravo Luck, and the Individual Debtor's son, pursuant to which agreement

Bravo Luck and the Individual Debtor's son agreed, among other things, that (a) Genever US is the full and exclusive owner of the Sherry Netherland Apartment, free and clear of all liens and encumbrances, with the Sherry Netherland Apartment constituting property of the Genever US estate under section 541 of the Bankruptcy Code and (b) Bravo Luck and the Individual Debtor's son will never assert any rights or claims for or related to the Sherry Netherland Apartment or the Genever Debtors, or any other assets related to the foregoing the Trustee asserts are part of the Individual Debtor's or the Genever Debtors' estates.

25.     As the Court is aware, on March 15, 2023, a fire broke out in the Sherry Netherland Apartment and caused significant damages to certain portions of the apartment. Following the fire, Genever US undertook to remediate the fire damages and clean the Sherry Netherland Apartment in order to prepare the apartment for sale.  On or about May 1 and May 2, 2024, Genever US also caused the Genever US Property to be cleaned, packaged, and moved to the New Jersey Storage Facility.

**III.     Trustee's Investigations and Relevant Adversary Proceedings**

26.     Since his appointment, the Trustee has diligently conducted an extensive investigation into the Individual Debtor's complex financial history in order to identify, recover and liquidate assets for the benefit of the estate.  The investigation has included worldwide discovery, dozens of depositions, and the review of hundreds of thousands of financial and other documents.  As a result of this investigation, the Trustee has commenced hundreds of adversary proceedings (including the Golden Spring Adversary Proceeding, HCHK Adversary Proceeding, Greenwich Land Adversary Proceeding, and Cao Adversary Proceeding defined herein) and recovered assets of significant value for the Individual Debtor's estate.

27.     Among the assets the Trustee has recovered are motor vehicles used by the Individual Debtor, his family and close associates, as well as furniture items and other personal property of the Individual Debtor.

28.     The Trustee also anticipates that the ongoing investigation may result in the recovery of additional motor vehicles and furniture items as more information becomes available to the Trustee.  As a result, the Trustee seeks the retention of Hamilton to conduct auction sales of the Additional Vehicles and Additional Furniture as they are recovered during the course of this case, with the initial auctions covering the First Vehicle Group and the First Furniture Group.

### A.     Golden Spring Adversary Proceeding

29.     On July 25, 2023, the Trustee commenced an adversary proceeding by filing a Complaint against Golden Spring (New York) Ltd. ("Golden Spring") and China Golden Spring Group (Hong Kong) Limited [Adv. Proc. No. 23-05018, Docket No. 1] (the "Golden Spring Adversary Proceeding"), seeking, among other things, an order declaring that Golden Spring is an alter ego of the Individual Debtor and that Golden Spring and/or its assets are equitably owned by the Individual Debtor.

30.     On December 4, 2023, the Court issued its *Order Granting Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Entry of Default Judgment Against Golden Spring (New York) Ltd and China Golden Spring Group (Hong Kong) Limited* [Adv. Proc. No. 23-05018, Docket No. 35] (the "Golden Spring Order"), finding, among other things, that Golden Spring was an alter ego of the Individual Debtor at all times and the any and all of the assets held by Golden Spring are property of the Estates.

31.     On February 23, 2024, the Trustee filed his *Motion for Order Enforcing Judgment and Requiring Turnover of Storage Unit Contents to Chapter 11 Estate* [Adv. Proc. No. 23-05018, Docket No. 40] (the "Motion to Enforce").  As discussed in detail in the Trustee's Motion to Enforce, the Trustee learned from his investigation of the existence of four leased storage units located in New Jersey, near the Individual Debtor's mansion in Mahwah, New Jersey.  The Trustee's team conducted an initial inspection and four subsequent visits to the storage units to inspect and inventory the various items stored therein.  The Trustee learned from those visits that a significant number of the contents in the storage units bear indication that they belong to Golden Spring and/or the Individual Debtor directly.

32.     On March 26, 2024, the Court entered an order granting the Trustee's Motion to Enforce [Adv. Proc. No. 23-05018, Docket No. 46], whereby the Court found that contents located in two of the four storage units (which constitute the Golden Spring Property defined in this Application) are property of the Estates and ordered the turnover of the Golden Spring Property to the Trustee.

33.     On or around April 5, 2024, the Trustee caused the Golden Spring Property to be moved from the storage units at Westy Storage to the New Jersey Storage Facility.

**B.      HCHK Adversary Proceeding**

34.     On June 8, 2023, the Trustee commenced an adversary proceeding by filing a Complaint [Adv Proc. No. 23-05013, Docket No.1] (the "HCHK Adversary Proceeding") seeking, among other things, an order declaring that the HCHK Entities[8] are alter egos of the Individual Debtor and/or equitably owned by him.

---

[8]     The HCHK Entities refer to HCHK Technologies, Inc., HCHK Property Management, Inc., and Lexington Property and Staffing Inc.

35.     On July 28, 2023, the Court entered an *Order Approving, Pursuant to Bankruptcy Rule 9019, Chapter 11 Trustee's Settlement with Assignee of HCHK Entities under New York Court Assignment Proceedings* [Adv. Proc. No. 23-05013, Docket No. 70] (the "HCHK Settlement Order"), pursuant to which, Brian Hofmeister, in his capacity as the assignee of the HCHK Entities, was authorized, among other things, to secure leased premises of the HCHK Entities at 3 Columbus Circle, New York, New York (the "HCHK Office") as well as assets of the HCHK Entities located therein, and to arrange for storage of the assets at HCHK Office, subject to prior approval of the Trustee.  As indicated in the Trustee's expense report filed on April 18, 2024 [Adv. Proc. No. 23-05013, Docket No. 284], on or about March 20, 2024, the Trustee paid expenses in connection with the moving and storage of the HCHK Property, which are currently and separately stored at the New Jersey Storage Facility.

36.     On March 8, 2024, the Trustee filed a Motion for Default Judgment [Adv. Proc. No, 23-05013, Docket No. 268], which motion was briefed and heard before the Court on April 23, 2024.

37.     On June 14, 2024, the Court issued a *Memorandum of Decision and Order Granting Motion for Default Judgment* [Adv. Proc. No. 23-05013, Docket No. 290] and on June 24, 2024, issued its *Amended Default Judgment and Permanent Injunction* [Adv. Proc. No. 23-05013, Docket No. 297] (the "HCHK Order"), whereby the Court found, among other things, that at all times the HCHK Entities were alter egos of the Debtor and any and all assets of the HCHK Entities are property of the Estates.

### C.     Greenwich Land Adversary Proceeding

38.     On  March 27, 2023, the Trustee initiated an adversary proceeding by filing a Complaint [Adv. Proc. No. 23-5005, Docket No. 1] (the "Greenwich Land Adversary

Proceeding.") against Greenwich Land, LLC ("Greenwich Land" and Hing Chi Ngok ("Ms. Ngok" and, together with Greenwich Land, collectively, the "Greenwich Defendants"), seeking, among other things, declaratory judgment that (i) Greenwich Land is an alter ego of the Debtor and ordering turnover of its assets, including the real and personal property located at 373 Taconic Road, Greenwich, Connecticut  (the "Taconic Property"), to the Trustee, and (ii) a ruling declaring that the membership interest in Greenwich Land is property of the Estate and ordering the surrender of such membership interest to the Trustee.

39.     On July 2, 2024, for the reasons stated on the record and further set forth in the Court's *Memorandum of Decision and Order Granting Motion for Summary Judgment* [Adv. Proc. No. 23-5005, Docket No. 133], the Court granted summary judgment in favor of the Trustee [Adv. Proc. No. 23-5005, Docket No. 134] (the "Greenwich Land Order"), finding, among other things, that all property of Greenwich Land, including the Taconic Property, are property of the Estate to be administered by the Trustee, and ordering the turnover of the Taconic property to the Trustee.

40.     On July 10, 2024, the Greenwich Defendants filed a notice of their appeal (the "Appeal") with respect to the Greenwich Land Order [Adv. Proc. No. 23-5005, Docket No. 138]. On July 12, 2024, the Greenwich Defendants filed a motion for stay pending the Appeal [Adv. Proc. No. 23-5005, Docket No. 139] (the "Stay Motion") in the Greenwich Land Adversary Proceeding.

41.     On August 16, 2024, the Court entered its *Consent Order Resolving Motion for Stay Pending Appeal and Enforcing Summary Judgment* [Adv. Proc. No. 23-5005, Docket No. 166] ("Consent Order"), pursuant to which, on August 20, 2024, (a) the Trustee assumed possession of the Taconic Property and its contents for the benefit of the Estate; and (b) the

Defendants withdrew the Stay Motion with prejudice.  The items of personal property at the Taconic Property turned over to the Trustee pursuant to the Consent Order include the Lexus and the Greenwich Land Property.

42.    As of August 20, 2024, the Trustee, in his capacity as chapter 11 trustee for the Debtor, became the owner of record with respect to the Lexus and began the process of transferring the title to the Lexus.  In January 2025, the title transfer process for the Lexus to the Trustee was completed.

43.    In addition, in or around October 2024, the Trustee caused the Greenwich Land Property to be packaged and moved from the Taconic Property to the New Jersey Storage Facility where the Genever US Property, HCHK Property, and the Golden Spring Property are currently and separately stored.

**D.    Cao Adversary Proceeding**

44.    On February 6, 2024, the Trustee commenced an adversary proceeding against Defeng Cao—long-time boyfriend of the Debtor's daughter, Mei Guo —by filing a Complaint [Adv Proc. No. 24-05001, Docket No.1] (the "Cao Adversary Proceeding") seeking, among other things, an order declaring that the Debtor is the equitable owner of the Four Motorcycles nominally held in Mr. Cao's name, (ii) declaring that the Four Motorcycles are property of the Debtor's chapter 11 estate, to be administered by the Trustee, and (iii) ordering Mr. Cao to turn over the Four Motorcycles to the Trustee.

45.    On April 12, 2024, the Trustee filed a motion for judgment on the pleadings [Adv. Proc. No, 24-05001, Docket No. 19] in connection with his claims regarding the Four Motorcycles in the Cao Adversary Proceeding, which motion was briefed and argued before the Court on May 24, 2024.

46.     On September 9, 2024, the Court granted the Trustee's motion [Adv. Proc. No. 24-05001, Docket No. 33], finding that the Debtor was the beneficial owner of the Four Motorcycles, and ordering the turnover of the Four Motorcycles and transfer of their titles to the Trustee (the "Motorcycle Order").  Soon after the entry of the Motorcycle Order, the Trustee obtained possession of the Four Motorcycles and commenced the process of transferring the titles of the Motorcycles.

47.     In January 2025, the title transfer process for the Four Motorcycles to the Trustee has been completed.

### E.     Ducati Motorcycle

48.     By a motion dated May 10, 2024, filed with the consent of the then-registered owner of the Ducati, Scott Barnett [Main Case Docket No. 3177], the Trustee sought entry of a consent order declaring the Ducati to be the property of the Estate and transferring ownership of the Ducati from Scott Barnett to the Individual Debtor's Chapter 11 estate.

49.     On May 28, 2024, the Court entered the *Consent Order Regarding Transfer of Ownership of Ducati Motorcycle to Estate* [Main Docket No. 3220] (the "Ducati Order"), finding that the Ducati is exclusively property of the Debtor's estate to be administered by the Trustee and ordering the turnover of the Ducati to the Trustee, free and clear of all liens, claims, interests and encumbrances.  Shortly after entry of the Ducati Order, the Trustee obtained possession of the Ducati and began the process of transferring the title of the Ducati.

50.     In October 2024, the title transfer process for the Ducati to the Trustee was completed.

## SERVICES TO BE PROVIDED

### I.       Vehicle Auction

51.      The Trustee desires to sell the Estate Vehicles recovered by the Trustee via auction for the benefit of the Individual Debtor's Estate and has determined, after consulting with Hamilton, that the auction sales be conducted via an internet auction through a mechanism maintained by bidspotter.com ("Bidspotter"), a leading online auction mechanism company.

52.      The Trustee seeks to appoint Hamilton as auctioneer to take possession of, market and auction the Estate Vehicles upon the terms and conditions as described herein.  Hamilton has significant experience conducting auctions in person and on the internet and has been retained to provide auction services for chapter 7 trustees in other bankruptcy estates in this district.  The Knudsen Declaration describes Hamilton's qualifications and disinterestedness.

53.      The services Hamilton is expected to render for the Estates include the following:

   a.   conduct a comparative market valuation of the Estate Vehicles being sold;

   b.   provide detailed reports of the valuations of the Estate Vehicles to the Trustee;

   c.   remove and secure the Estate Vehicles to Hamilton's secured and insured warehouse in Clinton, Connecticut, where the Estate Vehicles will be inspected, cleaned, stored, displayed, and photographed for the internet auction; and

   d.   arrange, monitor, market and complete an internet auction for the Estates for the Estate Vehicles.

Hamilton will also consult with the Trustee regarding the marketing and sale of each of the Estate Vehicles.  The Trustee also reserves the right to set a reserve price with respect to the Estate Vehicles, as he deems appropriate.

54.      There are no known liens or encumbrances on the titles to the First Vehicle Group.

55.     Hamilton has purchased surety bonds in an amount that meets the requirement under Local Bankruptcy Rule 6005-1.  The Trustee will attach a copy of the surety bonds Hamilton obtains in connection with his forthcoming motion to sell the First Vehicle Group, and the original bonds will be provided to the Office of the United States Trustee.

56.     The Trustee seeks to have Hamilton conduct the auction sale of the First Vehicle Group as soon as practicable after obtaining an order approving Hamilton's retention and an order approving the sale of these First Vehicle Group.  The Trustee will submit a completed Appendix O form with auction date(s) and details in connection with his forthcoming motion to authorize the sale the First Vehicle Group.

57.     If Hamilton's retention is approved by this Court and the Trustee subsequently recovers Additional Vehicles which he seeks to sell through Hamilton, the Trustee will file additional motion(s), on notice to parties in interest, requesting authorization to sell such Additional Vehicles, which shall include (i) a completed Appendix O form setting forth the date and method of the proposed auction sale, (ii) a description and estimated value of the Additional Vehicle(s) to be included in the proposed auction sale, (iii) a schedule of the estimated costs and expenses for the proposed auction sale, and (iv) a copy of the bond obtained by Hamilton for the Additional Vehicle(s) that will be auctioned.

58.     Further, the Trustee shall provide the original bond(s) to the United States Trustee within two (2) business days of Hamilton taking possession of Additional Vehicles. Such bond(s) shall cover 125% of the value of the Additional Vehicles in Hamilton's possession.

## II.    **Furniture Auction**

59.     The Trustee and Genever US desire to sell the Estate Furniture by auction for the benefit of the Estates and have determined, after consultation with Hamilton, that the auctions

should be conducted via the internet and supported by a mechanism maintained by Auction Ninja, a leading online auction mechanism company.

60.    The Trustee and Genever US seek to appoint Hamilton as auctioneer to take possession of, market and auction the Estate Furniture upon the terms and conditions as described herein.  As discussed above and set out in the Knudsen Declaration, Hamilton has significant experience conducting auctions in person and on the internet including those involving high-end furnishings, office equipment, and other personal property.

61.    The services Hamilton is expected to render for the Furniture Auctions include the following:

      a.    inspect, clean, prepare, photograph, and catalogue the Estate Furniture for the internet auctions; and

      b.    arrange, monitor, market and complete online public auctions of the Estate Furniture.

Hamilton will also consult with the Trustee and Genever US regarding the marketing and sale of the Estate Furniture.  While the Estate Furniture will generally be sold without any reserve price, the Trustee reserves the right to set a reserve price, as he deems appropriate.

62.    With respect to the First Furniture Group, Hamilton has conducted an initial inspection and for purpose of obtaining the surety bond, has estimated that the value of the furniture items to be at $150,000.[9]

63.    There are no known liens or encumbrances on the titles to the First Furniture Group.

---

[9]    To be clear, many of the furniture items from the First Furniture Group at the New Jersey Storage Facility remain professionally wrapped and packed in boxes and/or crates.  The value estimate provided by Hamilton represents the best estimate it could make of for the purpose of obtaining the surety bond.

64.     Hamilton will purchase a surety bond that meets the requirement under Local Bankruptcy Rule 6005-1.  A copy of the bond will be attached to the Trustee's forthcoming motion to sell the First Furniture Group and the original bond will be provided to the Office of the United States Trustee.

65.     The Trustee seeks to have Hamilton conduct the auction sale of the First Furniture Group as soon as practicable after obtaining an order approving Hamilton's retention and order approving the sale of the First Furniture Group.  The Trustee will submit a completed Appendix O form with auction date(s) and details in connection with his forthcoming motion to sell the First Furniture Group.

66.     If Hamilton's retention is approved by this Court and the Trustee subsequently recovers Additional Furniture which he seeks to sell through Hamilton, the Trustee will file additional motion(s), on notice to parties in interest, requesting authorization to sell such Additional Furniture, which shall include (i) a completed Appendix O form setting forth the date and method of the proposed auction sale, (ii) a description and estimated value of the Additional Furniture to be included in the proposed auction sale, (iii) a schedule of the estimated costs and expenses for the proposed auction sale, and (iv) a copy of the bond obtained by Hamilton for the Additional Furniture that will be auctioned.

67.     Further, with respect to the Additional Furniture, the Trustee will provide the original bond(s) to the United States Trustee in connection with any additional motion(s) by the Trustee requesting authorization to sell such furniture.  Such bond(s) shall cover 125% of the value of the Additional Furniture in Hamilton's possession.

## COMPENSATION

**I.** **Vehicle Auction**

68.     Hamilton will be compensated for services in connection with the sale of Estate

Vehicles as follows:

a.  15% buyer's premium to be paid by buyer at auction (the buyer shall pay this buyer's premium directly to Hamilton), for the avoidance of doubt, the Estates shall not pay any premium to Hamilton; and

b.  Reimbursement of costs and expenses of the auction sale, including:

i.      a Bidspotter listing fee of $350 per auction,

ii.     a 3% commission to Bidspotter based upon the gross sales price and payable from the proceeds of the sale,

iii.    any towing costs (estimated at $518.80 for the First Vehicle Group),

iv.    cleaning and detailing costs (estimated at $200 for the First Vehicle Group),

v.     advertising costs (estimated at $800 for the First Vehicle Group), and

vi.    costs of the bond (which is $850 for the First Vehicle Group).

69.     Hamilton shall seek court approval of its compensation for its auction sale

services after each auction sale of Estate Vehicles by filing a fee application.

**II.** **Furniture Auction**

70.     Hamilton will be compensated for services in connection with the sale of First

Furniture Group in three to four public online auctions as follows:

a.  15% commission from the Trustee and Genever US;

b.  15% buyer's premium to be paid by buyer at auction (the buyer shall pay this buyer's premium directly to Hamilton), for the avoidance of doubt, the Estates shall not pay any premium to Hamilton; and

c.  Reimbursement of costs and expenses of the auction sale, including:

i.      labor for preparation of auctions (estimated at $4,500.00),

ii.     labor for checkout following the auctions (estimated at $6,480.00),

iii.    advertising costs (estimated at $3,850.00),

iv.    final value fee by Auction Ninja (at 2.35%), and

       v.    costs of the bond (estimated at $1,200.00).

71.    Hamilton will be compensated for services in connection with the sale of the Other Furniture with a substantively similar compensation structure as noted above.

72.    Hamilton shall seek court approval of its compensation for its auction sale services after the Furniture Auction by filing a fee application.

## BASIS FOR RELIEF

73.    The Applicants seek to retain Hamilton as auctioneer for the Estate Vehicles and Estate Furniture pursuant to Section 327(a) of the Bankruptcy Code, which provides that a chapter 11 trustee and/or a debtor in possession may, subject to court approval:

> employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [trustee] in carrying out the [trustee]'s duties under this title.

74.    Further, Section 328(a) of the Bankruptcy Code allows a trustee and/or a debtor in possession, "with the court's approval, . . . [to] employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

75.    Under Bankruptcy Rule 2014(a), an application for retention must include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the United States trustee's office.

76.     Under Local Bankruptcy Rule 6005-1(b), an application for employment of an auctioneer submitted to the Court must set forth, as applicable here:

> (1) the need of an auctioneer's services, (2) a description of property to be sold, its estimated value, and the location thereof, (3) how the auctioneer is to be paid, and if payment is to be made from assets of the estate, whether the estate will have adequate funds with which to pay the auctioneer's fee, (4) if the items to be auctioned constitute collateral, entirely or in part, whether or not the party claiming a security interest in such collateral has agreed to pay any or all of the auctioneer's expenses, (5) to the extent additional compensation or reimbursement of assistants is sought, how many assistants will be required to help the auctioneer and why such assistance is required, a statement by the trustee in support of the number required and the expense to be incurred for each assistant, based upon an hourly fee, and (6) a bond obtained for the purpose of the auction in an amount such as will exceed the estimated value of the property to be sold by at least twenty-five percent (25%), a copy of which shall be attached to the application to employ.

77.     Based on the facts and for the reasons stated herein and in the Knudsen Declaration, the retention and employment of Hamilton as auctioneer for the Applicants on the terms set forth in this Application of (a) the Estate Vehicles for the Trustee, including the marketing and auction of the First Vehicle Group and (b) the Estate Furniture, including the marketing and auction of the First Furniture Group, is reasonable, necessary and appropriate, and satisfies the requirements of Sections 327 and 328 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## DISINTERESTEDNESS

78.     To the best of the Trustee's and Genever US's knowledge, and except as set forth in the Knudsen Declaration, Hamilton (i) does not hold any interest adverse to the Individual Debtor's and Genever US's estate; (ii) has no connection with Genever US, the Individual Debtor, the Individual Debtor's immediate family, or any alter egos of the Individual Debtor, the Individual Debtor's creditors or any parties in interest, or their respective attorneys and

accountants; (iii) has no connection to the United States Trustee or any person employed by the United States Trustee; and (iv) is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code and as required by Section 327(a) of the Bankruptcy Code.

## NOTICE

79.     Notice of this Application has been given to the United States Trustee, the Debtor, the Official Committee of Unsecured Creditors, and to all parties that have appeared and requested notice in the above-captioned chapter 11 case by electronic filing utilizing the Court's electronic filing system or, to parties ineligible to receive electronic notice, by U.S. mail.

## NO PRIOR REQUEST

80.     No prior request for the relief sought in this Application has been made to this Court or any other court.


*[Remainder of page intentionally left blank.]*

WHEREFORE, the Application move this Court for an order authorizing the employment and appointment of Hamilton as auctioneer to market and auction the Estate Vehicles and the Estate Furniture at public auctions, as set forth in this Application.

Dated:  January 31, 2025
       New Haven, Connecticut

LUC A. DESPINS, CHAPTER 11 TRUSTEE, and GENEVER HOLDINGS LLC

By: /s/ *Douglas S. Skalka*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    dskalka@npmlaw.com
    plinsey@npmlaw.com

    *and*

    Nicholas A. Bassett (admitted pro hac vice)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

    *and*

    G. Alexander Bongartz (admitted pro hac vice)
    Douglass Barron (admitted pro hac vice)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6000
    alexbongartz@paulhastings.com
    douglassbarron@paulhastings.com

    *Counsel for Chapter 11 Trustee and Genever Holdings LLC*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x

In re:                                            Chapter 11

HO WAN KWOK, *et al.*,[1]                          Case No. 22-50073 (JAM)

        Debtors.                          (Jointly Administered)

-------------------------------------------------------x

**[PROPOSED] ORDER GRANTING APPLICATION OF CHAPTER 11 TRUSTEE AND**
**GENEVER HOLDINGS LLC TO EMPLOY AND APPOINT THE HAMILTON**
**GROUP, LLC AS AUCTIONEER**

UPON CONSIDERATION OF the application (the "Application")[2] of Luc A. Despins

(the "Trustee"), in his capacity as Chapter 11 Trustee for Ho Wan Kwok (the "Individual

Debtor"), and Genever Holdings LLC ("Genever US") to employ and appoint The Hamilton

Group, LLC ("Hamilton") as auctioneer; pursuant to 11 U.S.C. §§ 327 and 328 and Local Rule

of Bankruptcy Procedure 6005-1 and as more fully set forth in the Application; and upon

consideration of the Declaration; and it appearing that said professional is qualified to provide

such professional service and does not represent any interest adverse to the Estates; and good

cause having been shown; and after a hearing having been held on _____, it is by

the Court hereby:

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
        Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings
        LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address
        for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park
        Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes
        of notices and communications).

[2]     Capitalized terms used but not otherwise defined herein have the meanings set forth in the Application.

**ORDERED**, that the Applicants are hereby authorized to employ The Hamilton Group, LLC (the "Auctioneer") pursuant to 11 U.S.C. §§ 327 and 328 and Local Rule of Bankruptcy Procedure 6005-1 as auctioneer to sell at auction the Estate Vehicles and the Estate Furniture, upon the terms and conditions as set forth in the Application; and it is further

**ORDERED**, that, for the avoidance of doubt, the sale(s) of Estate Vehicles and Estate Furniture is subject to entry of separate order(s) of this Court authorizing such sale(s), upon separate motion by the Applicants and notice upon parties in interest.

**ORDERED**, that the Auctioneer shall, after filing its application for compensation and request for reimbursement and after notice and a hearing, be awarded compensation plus reimbursement of reasonable expenses to be determined as set forth in the Local Rules and subject to review and final determination by the Court pursuant to 11 U.S.C. §§ 330 and 331; and it is further

**ORDERED**, that the Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

## **EXHIBIT B**

**Declaration of Auctioneer**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

------------------------------------------------------x

In re:                                           :       Chapter 11
                                                 :
HO WAN KWOK, *et al.*,[1]                        :       Case No. 22-50073 (JAM)
                                                 :
            Debtors.                             :       (Jointly Administered)
                                                 :

------------------------------------------------------x

## DECLARATION OF AUCTIONEER

I, Michael J. Knudsen, being duly sworn, depose and say:

1.      I am a member of The Hamilton Group, LLC, and its business address is 36

Killingworth Turnpike, Clinton, Connecticut 06413.

2.      I am making this Declaration in connection with the Application to Appoint and

Employ The Hamilton Group, LLC as Auctioneer which Genever Holdings LLC ("Genever

US") and Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") for the estate

of Ho Wan Kwok (the "Individual Debtor") are filing in connection with the above-captioned

case.

3.      The Hamilton Group, LLC has been engaged in the auctioning business for a

considerable number of years, and I am an experienced auctioneer. Hamilton has been retained

by Chapter 7 trustees in this district and has conducted over 20 auctions on behalf of bankruptcy

estates in this district.

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings
LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address
for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park
Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes
of notices and communications).

4.      Except as disclosed herein, The Hamilton Group, LLC and its members (collectively "Hamilton") have no connection with Genever US, the Individual Debtor, the Individual Debtor's immediate family or any alter egos of the Individual Debtor, the United States Trustee or any person employed by the Office of the United States Trustee, the Individual Debtor's creditors, Genever US's creditors, or any party in interest, or their respective attorneys or accountants, and we represent no interest adverse to the Trustee, the Individual Debtor's estate, Genever US, or Genever US's estate in connection with this matter.  In the paragraphs below, Hamilton sets forth its connections with attorneys and parties in interest in this case:

  a) Hamilton has a professional relationship with the Law Offices of Ronald I. Chorches, LLC and more specifically with Ronald I. Chorches, Esq., in his capacity as a Chapter 7 trustee, in connection with Chapter 7 bankruptcy case.

  b) Hamilton has a professional relationship with Comerica Incorporated d/b/a Comerica Bank, Hamilton has prepared appraisals and conducted auctions for Comerica Incorporated d/b/a Comerica Bank.

  c) Hamilton maintains business bank accounts with Citizens Bank.

  d) Hamilton maintains a professional relationship with Bonnie C. Mangan, in her capacity as a bankruptcy trustee and in connection with her role as an attorney in several pending real estate transactions.

  e) Hamilton uses Apple phone and computer products for both professional and personal use.

  f) Hamilton uses Amazon services and Amazon accounts for both professional and personal use.

  g) Hamilton uses Facebook account, a meta business, for both professional and personal use.

5.      I understand and agree that Hamilton's compensation and reimbursement of expenses for its services in this matter is subject to final approval by the Court in accordance with the requirements set forth in Local Rule of Bankruptcy Procedure 6005-1(d) after notice and hearing.

2

Dated at Chandler, Arizona    on this 16th day of January 2025.

_____

Michael J Knudson

Subscribed and sworn to before me, on this 16th day of January 2025.

_____

Notary Public

ALEXA RODRIGUEZ
Notary Public - Arizona
Maricopa County
Commission # 668183
My Commission Expires April 05, 2028

3

## EXHIBIT C

# Auction Proposal
# of the Furnishing and Personal
# Property in Storage

### From

### ▪The Sherry Netherland Apartment, NY & Greenwich, CT Home Assets

### ▪Office Furniture & Electronics

Ho Wan Kwok, et al.,
Bankruptcy Case No. 22-50073 (JAM)

For:
Luc A. Despins, as Chapter 11 Trustee for the Estate of Ho Wan Kwok, and
Genever Holdings, LLC (c/o Luc A. Despins, as Chapter 11 Trustee for the Estate of Ho Wan Kwok)
Paul Hastings, LLP
200 Park Avenue
New York, NY 10166

PRESENTED BY:
Michael J. Knudsen
Robert H Glass
The Hamilton Group
36 Killingworth Turnpike (Route 81)
Clinton, CT 06413

**Presented to:**

                Luc A. Despins, as Chapter 11 Trustee
                Paul Hastings LLP
                200 Park Avenue
                New York, NY 10166

**Date**:               January 12th, 2025

**Presented by**:    Michael Knudsen & Robert Glass



**36 Killingworth Turnpike (Route 81)**
**Clinton, CT 06413**
**Telephone:  203-433-8052**
**Fax: 203-643-2285**
**Mike@hamilton-grp.com**

**www.hamilton-grp.com**

## INTRODUCTION

We feel that The Hamilton Group is a most innovative company driven to serve its clients by handling and controlling the complete asset conversion process while maximizing a timely financial return by way of an online only public auction. A "well run" auction is the fairest way to achieve the highest and best price for all assets.

The assets include the furnishings and personal property from the apartment at the Sherry Netherland building in NY and the Greenwich Connecticut home as well as the office furniture & equipment.

The following asset conversion proposal directly addresses all of the objectives and concerns as we have discussed. We are prepared to work closely with you to have a successful sale.

Based upon the assets and several considerations we suggest conducting an online public auctions based out of the rental warehouse that the moving and storage facility has procured. We feel this will give you the maximum exposure of the assets and allow more participation from bidders locally and those around the tri-state area.

We propose conducting three to four separate online public auctions of the assets including furnishings, personal property and office equipment from the rental warehouse in New Jersey. The final number of auctions will depend on the amount of assets and logistics at the warehouse. Items would be consolidated in the New Jersey warehouse in order to unwrap the moving protective coverings and padding, photograph them and write up a detailed catalog for the sale. Once we begin cataloging a group of assets the auction date would be approximately 2-3 weeks following. We expect that there would be a gap of about two weeks between each sale. Checkout for each auction would start approximately 48 hours after the closing of the sale and run for two to three days with set times for buyers to pickup their winning bids

## MARKETING

### Custom Asset Recovery Program

We feel that conducting an online only public auction will maximize the value of the furnishings, personal property and office equipment as well as vehicle and motorcycles that you need to sell.  The auctions with be conducted as a timed online sale via Auction Ninja for the home furnishings and office furniture and equipment.

Prior to beginning our marketing campaign we will write a full inventory with detailed specifications plus photographs of the assets.  Our marketing staff will use these specifications to prepare the auction flyer, website promotion information, advertisements, and emails, in addition they will be contacting buyers letting them know about the sale and the nature of the items to be sold.

Advertisement geared to the interior decorators, antique collectors, homeowners, and dealers plus other potential end users would be placed on Facebook, Auctionzip.com, Craigslist as well as other online auction calendars.  A postcard would be produced and sent out to a select mail list.   In addition, an email blasts to a list of approximately 15,000 people will be sent out.

Auctions:
- Creates urgency to buy and encourages competition among buyers.
- Auction prices typically exceed the price of a negotiated sale.
- Requires potential buyers to register with a credit card to verify identity.
- Ensures an aggressive marketing program that increases interest and visibility.
- Our marketing team will use market-direct mail, email and online ads.
- Assets are sold "as is, where is".

# AUCTION INFORMATION

Our plan is based on the agreement that the moving and storage company has procured additional warehouse space that will allow items currently stored on racks to be spread out.  The facility will also move all the assets to be sold to this facility and will be directly billing the estate for the moving, trucking, and warehouse fees.

It is also assumed that the new warehouse space will have sufficient space to consolidate the assets with room to layout auction lots in such a way that items can easily be unwrapped, photographed and setup to expedite checkout for winning bidders.

Our plan is to line up the personal property from the New York apartment and Greenwich house in the first two sales. The third and fourth sales would be of the office furniture and electronics and supplies.  Each sale will require unwrapping items, as they have been professionally wrapped, some items will require being re-assembled, which are labor intensive.  Photographs and catalogs for each sale will then be built.  Our goal is to have an auction catalog online for a minimum of 14 days where people can preview lots, ask questions and bid.  Most bidding however usually happen on the final day of the auction.

The Auction Ninja platform features an extended bidding (a.k.a. "soft closing"). The bidding platform system will automatically extend the closing time of a lot (auction item) whenever a bid is placed within the last five minutes of its scheduled closing. This may occur multiple times on any given lot depending on the bidder interest. Once all interest and bidding in a lot ceases the clock will run out and the lot will close.

This is the fairest way to prevent "bid sniping" (someone submitting a high bid in the last seconds of any given lot's closing in order to win said lot) and to give all bidders an opportunity to increase their bids if they wish. It is also the closest way to mimic a live, in-person auction, when the auctioneer gives bidders opportunities to increase their bids if someone jumps into the bidding at the last moment before hammering the winning bid.

Our auctions have a nominal starting bid is used to attract more bidders by creating a sense of potential value and excitement, encouraging more people to participate in the auction, which can ultimately lead to a higher final selling price as bidders compete to win the item; essentially, it lowers the barrier to entry for potential buyers, making them more likely to place a bid.

Items are generally listed with nominal starting bids to attract the most bidders to sign up to participate.  All items are generally sold with no reserve except that with respect to certain unique pieces of art or furniture, the Trustee may set a reserve price as he deems appropriate. The reserve price may be disclosed to bidders or set as the starting bid for those lots.

## COMMISION & EXPENSES TERMS

Commission Program

A commission auction addresses the need to sell assets in a short timeframe. The advantages of this plan include intense and expansive exposure of the assets in the targeted markets to expand buyer interest and minimize auction expenses.

The Hamilton Group would retain a commission of 15% from the seller.
The Hamilton Group would retain the 15% buyer's premium.

An estimated budget for the project is detailed below.

**Estimated Expenses**

Labor for Auction Prep / Setup & Photographing, $45 Per Hour Per Person
(2) People @ 10 Hours Per Day (Est. 100 Hours x $45) = $4,500.00

Based on 3 Auction From The Warehouse w/ 2 Days Of Checkout Per Auction
(3) People 6 Days @ 8 Hours Per Day (144 Hours x $45) = $6,480.00

| | |
|---|---|
| Facebook Targeted Marketing: | $2,000.00 |
| Auction Zip Ads | $350.00 |
| General Advertising | $1,500. 00 |
| Auction Ninja 2.35% Final Value Fee | TBD |
| Bond For $150,000.00 | $1,200.00 |

## ACCOUNTING FOR SALE PROCEEDS&  EXPENSES

With a sale such as this where there are numerous assets from different entities, locations or groupings within the estate that need to be accounted for.

In order to do this our auction system creates a consignor number for each group.   For instance, the assets from the Sherry Netherland would be assigned a separate consignor number.  We would then be able to track the sale of these assets sperate from any other group or piece in the sales.

We would also try and keep the various auctions group with only items for the bucket or entity that they belong to without mixing assets.

All funds collected will be deposited in our auction escrow account held at either Citizens Bank, NA or Wells Fargo.

Funds from each auction less the buyer's premium will be turned over to the trustee within 15 days of the closing of the auction with a detailed sales report.   Expenses & receipts will be submitted to the trustee within 30 days of the closing of each sale if not sooner.

At any time during the process, we can provide the trustee with an accounting of expenses and proceeds with a twenty four hour notice.

## HISTORY & APPROACH

### Corporate Structure

The Hamilton Group is an Appraisal, Auction & Liquidation team of professionals. The Hamilton Group's team and affiliates combine world-class talent and decades of auction and valuation experience. We offer our clients a wide industrial coverage through our expertise, coordination skills, and the use of cutting edge technology. Our management team has more than 75 years of industry experience. We offer fully integrated services to assure success for our clients' projects.

### Our Approach

Since every project or situation is different and presents its own set of unique challenges, we are always ready to evaluate the specifics of a project and provide our clients with several turnkey solutions that are tailored to fit their individual requirements. We approach each assignment whether conducting an appraisal or a disposal of capital equipment with the goal of doing the best job possible for our clients. We adhere to the highest standards of our industry, pride ourselves on our integrity, hard work, and personal commitment to a successful project.

### Company History

The Hamilton Group is an asset recovery firm combining over 75 years of experience buying, selling and appraising estates, industrial machinery and equipment as well as real estate. The Hamilton Group provides the highest degree of professionalism, integrity, experience, and knowledge.   Our team and members have conducted 100's of estate sales of quality antiques, personal property and machinery & equipment throughout the country.

The Hamilton Group and our management team have conducted hundreds of auctions that include Antiques, Fine Furnishings, Art Work, Primitives, Folk Art and  Industrial assets.   We conducted what we believe to be the largest sale of antiques and collectibles in a bankruptcy case over the last decade for Chapter 7 Bankruptcy Trustee Kara Recia. The sale which encompassed over 3 auctions over several years included fine art, folk art pieces, early American antiques, collection of weathervanes, collectibles and vintage items.   These auctions attracted nationwide and international bidding.   We regularly conduct sales of estates, household items, art, antiques and business assets for trustees, lending institutions, and families.  Recently we conducted several online auctions across multiple platforms for the Estate of Donald Brown a renowned clock and antique collector.

In 1973 at the age of 12, Mr. Robert Glass who would be the auction manager for this sale process attended The World Wide College of Auctioneering in Mason City, Iowa following in his father's footsteps.  He graduated with a Bachelor in Science and business

administration from Indiana State University and has completed the National Auctioneers Association's program for Certified Auctioneers Institute program.  In nearly 40 years, Mr. Glass worked over 1,000 auctions.  He has been actively engaged in the world of auctions and appraisals of art, antiques and collectibles for over 36 years.   Mr. Glass has made his living as a self-employed auctioneer and appraiser; he has worked for himself but also hired by other firms; he has worked all over the world including The United States, Canada, Mexico and Europe.   Likewise, appraising and selling contents of residential estates including household furnishings, antiques, collectibles, silverware, fine art, automobiles, commercial and construction equipment.  Plus, Mr. Glass has held real estate licenses in six states for the purpose of auctioning real estate.

Additionally, Mr. Glass has been preparing appraisals for probate court and for inheritance tax purposes for attorneys, administrators, executors, and trust departments of various banks in New England.  He has worked with numerous attorneys, bankers, and trustees who request his knowledge within the world of appraising and selling assets for decades.

Since the inception of The Hamilton Group in 2002, Mr. Glass has been an integral part of strengthening the quality of work produced within all appraisals, auctions and liquidation projects.









**ONLINE ONLY PUBLIC AUCTION**
**FOR MAJOR NEW YORK ELECTRIC BIKE &**
**CONTAINERIZED CARGO DELIVERY SYSTEM COMPANY**

**URBAN ELECTRIC**
**100'S OF NEW & USED E-BIKES, BIKE TRAILERS & CARTS**












**BIDDING STARTS TO CLOSE: Tuesday June 18th @ 10:00 AM**
INSPECTION: Monday, June 17th from 9-3 • 36-13 36th Ave., Astoria (Queens), NY 11106




ESTATE OF DONALD BROWN, CLOCKS & ANTI...

The Hamilton Group, LLC

Dec 16, 2023 1:17 PM EST

🇺🇸 North Kingstown, RI, US                Auction Ended



Bankruptcy Sale Of Art & Asian Antiques

The Hamilton Group, LLC

Jul 12, 2015 2:48 PM EDT

CLINTON, CT, US                    Auction Ended