## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re:<br><br>    HO WAN KWOK, *et al.*,<br><br>    Debtors. | Chapter 11<br>Case No. 22-50073 (JAM)<br>(Jointly Administered)<br><br>Re: ECF No. 3559 |
| LUC A. DESPINS, IN HIS CAPACITY AS<br>CHAPTER 11 TRUSTEE FOR THE ESTATE OF<br>HO WAN KWOK,<br><br>    Plaintiff,<br><br>v.<br><br>WILDES & WEINBERG, P.C.,<br><br>    Defendant. | Adv. P. No. 24-05187 (JAM)<br><br>Re: ECF No. 14 |

### <u>APPEARANCES</u>

Douglass Barron
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

    and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

Patrick R. Linsey
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

*Counsel for Movant Mr. Luc A. Despins, Chapter 11 Trustee for the Estate of Mr. Ho Wan Kwok, Plaintiff*

Jeffrey M. Sklarz (argued)
Kellianne Baranowsky
Michelle Amanda Antao
Green & Sklarz LLC
One Audubon Street, Third Floor

New Haven, CT 06511

*Counsel for Respondent G Club Operations LLC, Party in Interest*

Holley L. Claiborn (argued)
Office of The United States Trustee
The Giaimo Federal Building
150 Canal Street, Room 302
New Haven, CT 06510

*Counsel for Respondent Mr. William K. Harrington, United States Trustee for Region 2*

## MEMORANDUM OF DECISION AND
## ORDER GRANTING MOTION TO COMPROMISE

### I.    INTRODUCTION

Before the Court is the motion to compromise (the "Motion to Compromise") filed by

Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy

estate of Mr. Ho Wan Kwok (the "Individual Debtor"), in these jointly administered Chapter 11

cases and in this adversary proceeding where the Trustee is the plaintiff.  (ECF No. 3559; Adv.

ECF No. 14.)[1]  The Trustee seeks authority under Fed. R. Bankr. P. 9019 to enter into a

settlement agreement with defendant Wildes & Weinberg, P.C. ("W&W") to resolve the

adversary proceeding.  The Trustee further requests authority to file the terms of the settlement

agreement under seal for a period of 180 days after the entry of an order granting the Motion to

Compromise.  G Club Operations, LLC ("G Club") objects to sealing of the settlement

agreement.  For the reasons set forth below, the Motion to Compromise is **GRANTED**.

---

[1]  References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be
styled "ECF No. __."  References to the docket in the adversary proceeding, *Despins v. Wildes &
Weinberg, P.C. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 24-05187, will be styled
"Adv. ECF No. __."

2

## II.    BACKGROUND

The Individual Debtor filed a voluntary Chapter 11 petition in this Court on February 15, 2022.  (ECF No. 1.)  For the reasons set forth therein, on June 15, 2022, the Court entered a memorandum of decision and order appointing a Chapter 11 trustee to administer the Individual Debtor's bankruptcy estate.  (ECF No. 465.)  *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022).  On July 8, 2022, Mr. Despins was appointed as the Trustee.  (ECF No. 523.)  After the appointment of the Trustee, orders entered authorizing joint administration of the Individual Debtor's Chapter 11 case with two affiliated corporate Chapter 11 cases.  (ECF Nos. 970, 1141.)

On February 12, 2024, the Trustee filed a complaint with a single claim (the "Avoidance Claim") against W&W seeking avoidance and recovery of unauthorized post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550.  (Adv. ECF No. 1.)  On May 2, 2024, the Court entered the Order Directing Parties to Mediation, Appointing the Honorable James J. Tancredi as Mediator, and Amended Order Approving Procedures Applicable to Avoidance Claim Adversary Proceedings (as amended, the "Avoidance Action Procedures Order").  (ECF No. 3163; *see* ECF No. 3465.)  Pursuant to the Avoidance Action Procedures Order, the Trustee and W&W engaged in mediation to resolve the Avoidance Claim.  On August 13, 2024, Judge Tancredi submitted the Mediator's Report and Recommendation (the "Mediator's Report").  (Adv. ECF No. 13.)  In the Mediator's Report, Judge Tancredi concluded:

> In examining the claims and potential defenses and other facts and circumstances relating to the subject transfers, along with the highly complex and contested nature of this bankruptcy case, I believe that the economics and terms of the settlement agreement are fair, reasonable, and in the best interests of the Chapter 11 estate as measured by the standards of *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007).

(*Id.*)

On September 19, 2024, the Trustee filed the Motion to Compromise (ECF No. 3559; Adv. ECF No. 14) and a motion to limit notice and service of the Motion to Compromise (the "Motion to Limit Notice", ECF No. 3565).  The Trustee filed the settlement agreement between the estate and W&W under seal.  (ECF No. 3561 (sealed).)  On October 3, 2024, G Club filed an objection to the Motion to Compromise and the Motion to Limit Notice.  (ECF No. 3633.)  On October 7, 2024, the Office of the United States Trustee (the "U.S. Trustee") filed an objection to the Motion to Compromise.  (ECF No. 3641.)  On October 8, 2024, a hearing was held on the Motion to Limit Notice.  During the hearing, G Club and the U.S. Trustee made clear that they did not object to limiting notice and service, but did object to the sealing of the settlement agreement.  On October 15, 2024, the Court granted the Motion to Limit Notice (ECF No. 3685) and a Notice of Hearing was issued scheduling a hearing on the Motion to Compromise (ECF No. 3688).

The scheduled hearing was continued while the parties attempted to reach a resolution. On December 5, 2024, the Trustee filed a reply in support of the Motion to Compromise and a revised proposed order granting it.  (ECF Nos. 3864, 3865.)  The revised proposed order resolved the U.S. Trustee's objection which would: (i) allow the Trustee to file the settlement agreement under seal for a period of 180 days after the entry of an order granting the Motion to Compromise; and (ii) require the Trustee to file the settlement agreement publicly after the expiration of the 180-day period.

On December 10, 2024, a hearing was held on the Motion to Compromise.  During the hearing, the U.S. Trustee stated it remained opposed to a permanent sealing of settlement agreements, but believed sealing settlement agreements for a period of 180 days would balance the realities of these jointly administered Chapter 11 cases and the public's right to access

judicial documents.  (Hr'g Tr. at *22:4–14, ECF No. 3906; Adv. ECF No. 29.)  The U.S. Trustee further stated the resolution it reached with the Trustee would be incorporated into future motions to compromise filed in the Chapter 11 cases and related adversary proceedings.  (*Id.* at *22:15–25.)  Although the U.S. Trustee's objection had been resolved, G Club continued to press its objection.

At the conclusion of the hearing, the Court took the Motion to Compromise under advisement.  This matter is ripe for decision.

### III.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984.  The instant proceedings are statutorily core proceedings.  28 U.S.C. §§ 157(b)(2)(A), (E), (O).  The Court concludes its exercise of jurisdiction is not precluded by Constitutional concerns.  *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### IV.    DISCUSSION

Before turning to the merits of the Motion to Compromise, the Court addresses the Trustee's request to seal the terms of the settlement agreement and G Club's objection to that request.  No parties have objected to the merits of the Motion to Compromise.

A.    **Trustee's Request to Seal Settlement Agreement**

1.  **Legal Standard**

"In this country, courts have recognized a strong presumption of public access to court records.  This preference for public access is rooted in the public's first amendment right to know about the administration of justice.  It helps safeguard 'the integrity, quality, and respect in our judicial system' and permits the public to 'keep a watchful eye on the workings of public agencies'."  *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994) (citing *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597–98 (1978) and *In re Analytical Sys.*, 83 B.R. 833, 835 (Bankr. N.D. Ga. 1987)) (internal citations omitted); *see* 11 U.S.C. § 107(a); Fed. R. Bankr. P. 5001(b).  Nevertheless, "the right is not absolute".  *Orion Pictures*, 21 F.3d at 27 (citing *Nixon*, 435 U.S. at 597); *see* 11 U.S.C. §§ 107(b), (c); Fed. R. Bankr. P. 9018.

The Bankruptcy Code contains statutory provisions structuring a court's analysis as to whether court records may be sealed.  11 U.S.C. § 107; Fed. R. Bankr. P. 9018.  Relevant to the Motion to Compromise, section 107(b)(1) provides: "on request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information".  11 U.S.C. § 107(b)(1).

The Trustee requests to seal the settlement agreement on behalf of the estate.  The estate is an "entity", which may request protection of its confidential commercial information.  11 U.S.C. § 101(15) ("The term 'entity' includes person, estate, trust, governmental unit, and United States trustee.").  The Trustee argues the settlement agreement is confidential commercial information.  Because the Trustee – a party in interest – is requesting the settlement agreement be sealed, the Court *must* seal it if it contains confidential commercial information.  11 U.S.C. §

6

107(b)(1) (courts shall protect the confidential commercial information of any entity upon

motion); *Orion Pictures*, 21 F.3d at 27.  Confidential commercial information is "information

which would cause 'an unfair advantage to competitors by providing them information as to the

commercial operations of the debtor.'"  *Orion Pictures*, 21 F.3d at 27.

Therefore, the issues before the Court are whether the settlement agreement is

commercial information and if so, whether it is confidential commercial information.

### 2.  Standing

The Trustee first argues G Club has no standing to object to the Motion to Compromise

because it has no pecuniary interest in the Individual Debtor's estate, has not filed a Proof of

Claim in the Individual Debtor's case, and will not, as things presently stand, receive a

distribution.  G Club asserts it does not matter whether it has standing to object to the merits of

the Motion to Compromise – any party can object to the sealing of the settlement agreement.

The Court agrees with G Club.  Regardless of whether G Club has standing to object to

the merits of the Motion to Compromise, which issue the Court does not reach, G Club has

standing to oppose the sealing of the terms of the settlement agreement.  As recognized by the

United States Supreme Court, there is "a general right to inspect and copy public records and

documents, including judicial records and documents."  *Nixon*, 435 U.S. at 597–99 (discussing

cases where third parties to ligation moved to inspect and copy public records and documents).

G Club shares in this general right.  *See In re Alterra Healthcare Corp.*, 353 B.R. 66, 70 (Bankr.

D. Del. 2006).

### 3.  The arguments for and against sealing the settlement agreement

The Trustee argues authority exists to seal the settlement agreement because its terms are

confidential commercial information that would benefit defendants, including G Glub, and harm

the estate.  The Trustee asserts the estate will be funded almost exclusively through litigation –

and much of that litigation is nearly identical to the present adversary proceeding.  The Trustee

believes many other avoidance proceedings will be settled during the 180-day period before the

settlement agreement would be publicly filed and that these future settlements would be more

favorable to the estate if the instant settlement agreement is temporarily sealed.

Additionally, the Trustee argues no parties in interest – and particularly, no creditors –

have objected to the merits of the Motion to Compromise or opposed sealing the settlement

agreement.  Moreover, the Trustee asserts the Motion to Compromise and settlement agreement

has been reviewed in unredacted form by the Official Committee of Unsecured Creditors (the

"Committee") and the U.S. Trustee and neither the Committee nor the U.S. Trustee has objected

to the Motion to Compromise.  Finally, the Trustee argues the Court, which has also been

provided an unredacted copy of the settlement agreement, has enough information to determine

the merits of the Motion to Compromise.

G Club objects and asserts the settlement agreement cannot be sealed under existing law

because it does not qualify as confidential commercial information.  G Club cites many

bankruptcy cases where courts declined to seal – or decided to unseal – settlement agreements:

*In re Ditech Holding Corp.*, Case No. 19-10412 (JLG), 2019 WL 3294684, at *9–10 (Bankr.

S.D.N.Y. July 19, 2019); *Wells Fargo Bank, N.A. v. Selected Debtors (In re Selected Cases)*,

Misc. No. 17-204-GLT, 2019 WL 642850, at *2 (Bankr. W.D. Penn. Feb. 14, 2019); *In re*

*Thomas*, 583 B.R. 385, 391–95 (Bankr. E.D. Ky. 2018); *In re Gibbs*, Case No. 11-03070, 2017

WL 6506324, at *1–2 (Bankr. D. Haw. Dec. 19, 2017); *Togut v. Deutsche Bank AG (In re*

*Anthracite Cap. Inc.)*, 492 B.R. 162, 177–79 (Bankr. S.D.N.Y. 2013); *In re Oldco M Corp.*, 466

B.R. 234, 237–39 (Bankr. S.D.N.Y. 2012); *In re Quigley Co., Inc.*, 437 B.R. 102, 151–54 (Bankr.

S.D.N.Y. 2010); *Geltzer v. Andersen Worldwide, S.C.*, No. 05 Civ. 3339 (GEL), 2007 WL

273526, at *3–4 (S.D.N.Y. Jan. 30, 2007); *Alterra Healthcare*, 353 B.R. at 75–77; and *In re*

*Hemple*, 295 B.R. 200, 201–03 (Bankr. D. Vt. 2003).

On reply, the Trustee seeks to distinguish these cases from the present case and also cites

to several orders, albeit without given rationales, where courts approved the sealing of a

settlement agreement.  (*See* Reply at Ex. 1, ECF No. 3864.)  Finally, the Trustee cites *In re*

*Farmland Industries*, *Inc.*, 290 B.R. 364 (Bankr. W.D. Mo. 2003), and *In re Global Crossing*

*Ltd.*, 295 B.R. 720, 722–23 (Bankr. S.D.N.Y. 2003), in support of sealing the settlement

agreement.

### 4.  Analysis

Section 1106 requires the Trustee to investigate the financial affairs and conditions of the

Individual Debtor with respect to determining, as soon as practicable, whether creditors and the

estate are best served by filing a Chapter 11 plan, converting the case to another chapter, or

dismissing the case.  11 U.S.C. § 1106(a)(3), (5).  To this end, it is undisputed that the Trustee is

the representative of the estate and has capacity to sue and be sued on behalf of the estate,

including by bringing the Avoidance Claim and similar litigation.  11 U.S.C. §§ 323, 544, 547,

548, 549.  In fulfilling his statutory duties, the Trustee: (i) is accountable for all property received

by the estate; (ii) shall, if a purpose would be served, examine proofs of claims and object to the

allowance of any claim against the estate that is improper; and (iii) shall furnish information

concerning the estate and its administration as requested by a party in interest.  11 U.S.C. §

704(a)(2), (5), (7), *made applicable by* 11 U.S.C. § 1106(a)(1).

This case is not a case where the Trustee has been able to administer the Individual

Debtor's assets and business operations with information provided by and cooperation from the

Individual Debtor.  The Individual Debtor claimed only $3,850.00 in assets on his bankruptcy schedules, but claimed his lifestyle was funded by his family and associates while he provided his services to many media enterprises without compensation.  (ECF Nos. 78, 107.)  Since the Trustee's appointment, the Individual Debtor, his family members, his associates, and associated entities have not cooperated with the Trustee's investigation, turned over assets of the estate as required by the Bankruptcy Code, or complied with their obligations as parties before the Court. 11 U.S.C. § 521.  (*See, e.g.*, ECF Nos. 913, 1046, 1303, 1345, 1362, 1397, 1453, 1521, 1537, 1546, 1709, 1805, 1892, 1896, 2009, 2035, 2036, 2080, 2093, 2342, 2396; *Pac. All. Asia Opportunity Fund L.P. v. Kwok (In re Kwok)*, No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr. D. Conn. Jan. 13, 2023), ECF No. 133; *Despins v. HCHK Techs., Inc. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05013 (JAM) (Bankr. D. Conn. Nov. 4, 2024), ECF Nos. 239, 263, 290, 318.)  Indeed, the Court has repeatedly cited the Individual Debtor and others for contempt of court for failure to comply with orders compelling compliance with the Bankruptcy Code and discovery obligations.  (ECF Nos. 1372, 1537, 1709, 1892, 1896, 2009, 2035, 2093.) None of this contempt has been purged.

Under the circumstances of this case, the Trustee has been forced to ceaselessly litigate, and arguably re-litigate, turnover of estate assets and avoidance of transfers.  As it presently stands, any distribution on the $18,896,778,040.83[2] asserted in proofs of claim filed against the Individual Debtor's estate will largely be funded by the Trustee's ongoing litigation.  Hence, the commercial operation of the Individual Debtor's bankruptcy estate is the investigation of the

---

[2]  The Individual Debtor instructed his followers to file frivolous proofs of claim in his Chapter 11 case.  (*See* ECF Nos. 1399, 1440.)  Nevertheless, none of the claims asserted is presently disallowed in part or in its entirety.

Individual Debtor's assets and business affairs, and the litigation of Chapter 5 claims and related claims under state, federal, and foreign law for the benefit of the estate.

In carrying out his duties in the case, including pursuing and settling the Avoidance Claim through the terms of the settlement agreement, the Trustee is in possession of commercial information. The remaining issue is whether the settlement agreement is *confidential* commercial information. Filing the terms of the settlement agreement publicly would allow hundreds of similarly situated defendants to use those terms as leverage in negotiations with the Trustee. G Club does not contest the Trustee's assertion that this is exactly why it wants the settlement agreement unsealed. *See Glob. Crossing*, 295 B.R. at 722–23 (discussing how a movant opposed a sealing motion, which the Court granted, because it wished to disrupt a deal between debtors-in-possession and a potential buyer of their assets). Because of the large number of similar avoidance claims, the Court is persuaded public disclosure of the settlement agreement at this time would have a significant impact on the recovery to all unsecured creditors.

The Court concludes the 180-day sealing period agreed to by the Trustee and the U.S. Trustee strikes a reasonable balance between avoiding the harm the Trustee alleges and providing public access to judicial records. On the one hand, the Court credits the Trustee's representation that he believes within 180 days from the entry of an order granting the Motion to Compromise he will have settled numerous additional avoidance claims without suffering the harm the Motion to Compromise seeks to prevent. At that point, the estate's interest in the confidentiality of the settlement agreement will diminish. On the other hand, the time-limited nature of the sealing will provide public access in due course.

The cases cited by G Club do not compel a different result because they involved different entities, with different commercial operations, and different litigation postures. For

11

example, in *Andersen Worldwide*, a Chapter 7 trustee settled professional malpractice claims

against Andersen Worldwide, S.C. and its affiliate (collectively, "Andersen") and moved the

United States District Court for the Southern District of New York to approve the compromise.

2007 WL 273526, at *1.  The court denied the motion to compromise because it did not include

the settlement amount.  *Id.* at *5.  The Chapter 7 trustee offered to present the settlement amount

for *in camera* review because Andersen did not wish to disclose the settlement amount to parties

in other, unrelated litigation against it.  *Id.* at *2.  The court concluded the settlement amount was

not confidential commercial information, *id.* at *3–4, and protection of Andersen "is a wan

excuse for impinging on the public's right of access to judicial documents.  There is no

discernable public interest, or interest of the bankruptcy estates, in preserving Andersen's

'leverage' as against other parties that have sued it", *id.* at *4.

      The *Andersen Worldwide* court expressed doubt that litigation could be the commercial

operations of an entity, stating

> But the terms of the instant settlement have to do only with the instant litigation, and
> have nothing to do with the competitive business operations of the debtor or of Andersen,
> in any normal sense of the words.  If the Trustee's definition were accepted, then not only
> would any paper filed by Andersen in the course of litigation likely constitute secret
> "commercial information," but secrecy under this exception would also extend to any of
> countless cases involving a business entity actively defending civil suits for damages.

2007 WL 273526, at *3.  Nevertheless, the court also considered the specific facts and

circumstances surrounding the litigation at issue.  *Id.* at *4 (discussing the lack of any argument

as to how the settlement information could be used by other litigants and Andersen's lack of

similar concerns in other similar litigation).  Upon consideration of the specific facts and

circumstances surrounding the Avoidance Claim, the Court is not persuaded that *Andersen*

*Worldwide* governs the result in this case.  The Trustee is seeking to protect the estate, which

estate's business includes litigation because of the particular circumstances of these jointly

administered Chapter 11 cases and related adversary proceedings, and the Avoidance Claim is similar to hundreds of claims the Trustee has brought.

*Andersen Worldwide* is the progenitor of a line of cases.  This line of cases includes *Quigley*, *Oldco*, *Anthracite Capital, Gibbs*, *Thomas*, *Selected Cases*, and *Ditech*, *i.e.*, all the cases cited by G Club with the exception of *Alterra Healthcare* and *Hemple*.  As in *Andersen Worldwide*, the decisions in *Quigley*, *Oldco*, *Anthracite Capital*, *Gibbs*, *Thomas*, *Selected Cases*, and *Ditech* all involved a bankruptcy trustee seeking to seal the terms of settlement agreements because a counterparty requested sealing to preserve leverage in outside litigation.  *Ditech*, 2019 WL 3294684, at *9–10; *Selected Cases*, 2019 WL 642850, at *2; *Thomas*, 583 B.R. at 391–95; *Gibbs*, 2017 WL 6506324, at *1–2; *Anthracite Cap.*, 492 B.R. at 177–79; *Oldco*, 466 B.R. at 237–39; *Quigley*, 437 B.R. at 151–54.  The courts in these cases, each relying on *Anderson Worldwide*, determined on facts dissimilar to those before the Court that the terms of the settlement agreements at issue were not confidential commercial information.

*Hemple*, much like *Andersen Worldwide* and its progeny, also involved a motion to seal for the benefit of a third party, rather than a debtor or bankruptcy estate.  295 B.R. at 202.  The court denied the motion because it did not articulate a basis for sealing under section 107(b).  *Id.* at 202–03.  Here, however, the Trustee argues the settlement agreement is confidential commercial information that should be sealed for the benefit of the estate.

*Alterra Healthcare* also presents similar facts to *Andersen Worldwide*.  In that case, a reorganized debtor, which had settled certain personal injury claims, had been granted authority to file the terms of the settlement agreements under seal.  353 B.R. at 69.  Subsequently, a newspaper moved to unseal the settlement agreements.  *Id.*  The United States Bankruptcy Court for the District of Delaware concluded, in pertinent part, that the terms of the settlement

agreement were not confidential commercial information because they did not relate to the reorganized debtor's commercial operations – running long-term care facilities – and disclosure of the terms would not unfairly advantage the reorganized debtor's competitors to the detriment of the reorganized debtor or the estate. *Id.* at 76–77.  Regarding harm to the estate, the court concluded similarly situated claimants would recover from a segregated fund and insurance proceeds rather than from the same monies the reorganized debtor's other unsecured creditors would receive any recovery. *Id.* at 76.  Hence, any increased settlement leverage would not impact the estate as a whole but would instead potentially harm insurers. *Id.*  Here, unlike in *Alterra Healthcare*, litigation is core to the estate's commercial existence and its impact on all the estate's unsecured creditors is certain, not speculative.

The Court finds *Farmland Industries*, cited by the Trustee, more persuasive on the facts and circumstances before it.  In *Farmland Industries*, the United States Bankruptcy Court for the Western District of Missouri held that the terms of a debtor-in-possession financing agreement were confidential commercial information.  290 B.R. at 368–69.  The financing agreement at issue required the debtor-in-possession, as a concession to the financier for continued financing, to complete a section 363 sale of certain assets by certain dates. *Id.* at 366.  The debtor-in-possession argued these terms constituted confidential commercial information and must be redacted. *Id.*  The court concluded the redacted terms of the financing agreement represented commercial information because "[t]he operation of a business—particularly one as far-reaching as the $11 billion businesses of the Debtors—clearly involves the buying and selling of various aspects of the business on a regular (albeit perhaps infrequent) basis.  The sale of certain assets and the retention of other assets is obviously a part of a conglomerate's business operations." *Id.* at 368.  The court concluded the information was confidential commercial information because

"[i]f a potential buyer has knowledge of a deadline, in effect, by which the Debtors must sell a certain asset, that knowledge gives the potential buyer great leverage over the Debtors and places the Debtors at a distinct disadvantage in the sales bargaining and negotiating process." *Id.* at 369.

As in *Farmland Industries*, the terms of the settlement agreement relate directly to the estate's commercial operations. Moreover, just as the results of the section 363 sale would greatly impact the estate in *Farmland*, the resolution of the avoidance actions in this case will greatly impact the estate. Finally, disclosure of the terms of the settlement agreement would give defendants additional leverage to the detriment of the estate, like in *Farmland Industries* where the court held disclosure of the terms of the financing agreement would give potential buyers additional leverage to the detriment of the estate.

On the specific facts and circumstances of these jointly administered Chapter 11 cases and related adversary proceedings, the Court concludes the facts in *Andersen Worldwide*, its progeny, *Hemple*, and *Alterra Healthcare* are distinguishable from the case at bar. *Farmland Industries* is more persuasive because the facts in that case are more closely aligned with those presently before the Court. The terms of the settlement agreement are confidential commercial information that must be sealed upon the Trustee's request. 11 U.S.C. § 107(b); *Orion Pictures*, 21 F.3d at 27. Accordingly, G Club's objection is overruled.

### B.    The Motion to Compromise

The Trustee argues the settlement agreement is a positive outcome for the estate and its creditors, is fair and reasonable to the estate and its creditors, and should be approved. The Mediator's Report recommends approval of the settlement agreement. No party has objected on the merits of the Motion to Compromise. While the terms of the settlement agreement have been

filed under seal, the U.S. Trustee and the Committee have both been provided with unredacted copies of the settlement agreement.  G Club objects to the sealing of the settlement agreement, but does not seek access to the settlement terms in order to object to the merits of the Motion to Compromise.

Based on the pre-Code decision of the Supreme Court in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), the United States Court of Appeals for the Second Circuit has set forth the following "interrelated factors" to determine whether a settlement is "fair and equitable":

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (citing *In re Worldcom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)). The Second Circuit has also stated "the task of the bankruptcy judge was not to determine whether the settlement was the best that could have been obtained, something that neither he nor we can ever know, but whether it 'fall[s] below the lowest point in the range of reasonableness'". *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 613 (2d Cir. 1983) (alterations in original).

The Court has reviewed the terms of the settlement agreement.  The Court finds that (i) the settlement amount reflects the amount sought, the litigation's possibility of success, and the likely costs and expenses of litigation; (ii) while creditors have not generally reviewed the terms

of the settlement agreement, neither have they objected to the Motion to Compromise requesting such review; (iii) moreover, the Committee, a fiduciary for the unsecured creditors, has reviewed the unredacted terms of the settlement agreement and has not objected; (iv) the releases are narrow and solely related to the claims brought in the adversary proceeding; and (v) the settlement agreement is the product of arm's length negotiations.  The Court concludes the settlement agreement does not fall below the lowest point in the range of reasonableness and is fair and equitable to the estate and its creditors.  *See Iridium*, 478 F.3d at 462; *W.T. Grant*, 699 F.2d at 613.  Therefore, the Court grants the Motion to Compromise and approves the settlement agreement.

## V.        CONCLUSION AND ORDER

For the reasons stated above, it is hereby **ORDERED:**

1.  Pursuant to Fed. R. Bankr. P. 9019, the Motion to Compromise is **GRANTED** as set forth herein.

2.  G Club's objection to the Motion to Compromise is **OVERRULED**.  The U.S. Trustee's objection is deemed **WITHDRAWN** due to the resolution reached between the Trustee and the U.S. Trustee.

3.  Pursuant to Fed. R. Bankr. P. 9019, the settlement agreement is **APPROVED**.

4.  As contemplated by the Avoidance Action Procedures Order, the redacted portions of the Motion to Compromise and the settlement agreement were filed under seal and, except as provided by this Order, shall, pursuant to 11 U.S.C. § 107(b)(1) and Fed. R. Bankr. R. 9018, remain under seal.

5.  The Trustee shall have until 180 days after the entry of this Order, except, if that date falls on a weekend or holiday, the Trustee shall have until the next business day thereafter, (the

"Six Month Anniversary Date"), to file a notice (the "Settlement Notice") on the docket of the jointly administered Chapter 11 cases and this adversary proceeding, which Settlement Notice shall (i) refer to the docket numbers and dates of the original Motion to Compromise and this Order, (ii) attach an unredacted copy of the settlement agreement, and (iii) contain the following information regarding the settlement agreement: (a) the settling parties; (b) the settlement amount; (c) the date the settlement funds were received by the Trustee; and (d) the docket number(s) of the monthly operating report(s) showing the receipt of the funds by the Trustee, which monthly operating reports, if filed before the Six Month Anniversary Date, may redact the identity of the payor.  Upon the filing of the Settlement Notice, the Clerk of Court is directed to unseal the unredacted Motion to Compromise and settlement agreement in the jointly administered Chapter 11 cases and in the adversary proceeding.

6.  Pursuant to 11 U.S.C. § 107(c)(3), the U.S. Trustee has a statutory right of full access to any information and/or documents filed on the docket or submitted to the Court in this case. The U.S. Trustee shall comply with the obligations of 11 U.S.C. § 107(c)(3)(B).

7.  The Trustee is authorized, pursuant to Fed. R. Bankr. P. 9019, to execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the settlement reflected in the settlement agreement and to perform any and all obligations contemplated therein immediately upon entry of this Order.

8.  This Order shall, pursuant to Fed. R. Bankr. P. 6004(h), be effective and enforceable immediately upon entry.

9.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order and to the settlement agreement.

Dated at Bridgeport, Connecticut this 3rd day of February, 2025.

Julie A. Manning
United States Bankruptcy Judge
District of Connecticut