<pre>
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF CONNECTICUT
 2                         BRIDGEPORT DIVISION

 3

 4   IN RE:                      .  Chapter 11
                                 .  Case No. 22-50073 (JAM)
 5   HO WAN KWOK, et al.,        .
                                 .  (Jointly Administered)
 6                               .
               Debtors.         .  Courtroom 123
 7                               .  Brien McMahon Federal Building
                                 .  915 Lafayette Boulevard
 8                               .  Bridgeport, Connecticut 06604
                                 .
 9                               .  Tuesday, February 11, 2025
     . . . . . . . . . . . . . .  1:02 p.m.
10
                         TRANSCRIPT OF HEARING
11             BEFORE THE HONORABLE JULIE A. MANNING
                   UNITED STATES BANKRUPTCY JUDGE
12

13   APPEARANCES:

14   For the Chapter 11
     Trustee:                    Luc A. Despins, Esquire
15                               PAUL HASTINGS, LLP
                                 200 Park Avenue
16                               New York, New York 10166

17                               Nicholas A. Bassett, Esquire
                                 2050 M Street, NW
18                               Washington, DC 20036

19   (APPEARANCES CONTINUED)

20   Audio Operator:            Electronically recorded

21   Transcription Company:     Reliable
                                The Nemours Building
22                              1007 N. Orange Street, Suite 110
                                Wilmington, Delaware 19801
23                              Telephone: (302)654-8080
                                Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
</pre>

```
 1   APPEARANCES (CONTINUED):

 2   For the Chapter 11
     Trustee:                      Patrick R. Linsey, Esquire
 3                                 NEUBERT PEPE & MONTEITH, P.C.
                                   195 Church Street
 4                                 13th Floor
                                   New Haven, Connecticut 06510
 5
     For Weddle Law PLLC;
 6   FFP (BVI) Limited; G
     Club Operations, LLC;
 7   and Ogier:                    Jeffrey M. Sklarz, Esquire
                                   GREEN & SKLARZ, LLC
 8                                 One Audubon Street
                                   3rd Floor
 9                                 New Haven, Connecticut 06511

10   For Apple, Inc. and
     Meta Platforms, Inc.:         Jin Yan, Esquire
11                                 ARENTFOX SCHIFF, LLP
                                   1717 K Street, NW
12                                 Washington, DC 20006

13   For American Express
     Company:                      Darryl S. Laddin, Esquire
14                                 ARNALL GOLDEN GREGORY, LLP
                                   171 17th Street, NW
15                                 Suite 2100
                                   Atlanta, Georgia 30363
16

17

18

19

20

21

22

23

24

25
```

1  APPEARANCES (CONTINUED):

2  For Wang's Realty
   Management, Inc.; River
3  Valley Operations, LLC;
   ACA Capital Group, Ltd.;
4  GETTR USA, Inc.;
   Hamilton Opportunity Fund
5  SPC; Hamilton PE Fund SP;
   Hamilton Digital Assets
6  Fund SP; Himalaya
   Currency Clearing Pty
7  Ltd.; Himalaya
   International Clearing
8  Ltd.; Himalaya
   International Financial
9  Group Limited; Taurus
   Fund LLC; Taurus
10 Management LLC; and
   William Je:              Michael T. Conway, Esquire
11                          LAZARE POTTER GIACOVAS & MOYLE, LLP
                            747 Third Avenue
12                          16th Floor
                            New York, New York 10017

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                    INDEX

2    MOTIONS:                                                    PAGE

3    Matter
     No. 3981   Eighteenth Motion for Examination of                8
4               Additional Relevant Banks, Additional Entities
                and Individuals Associated with Debtor, and
5               Payroll Processing Entity Filed by Kari A.
                Mitchell on behalf of Luc A. Despins,
6               Chapter 11 Trustee

7               Court's Ruling:                                     18

8    Matter
     No. 4004   Second Supplemental Motion to Extend Time to       18
9               Assert Claims Subject to Time Limitations
                Under Sections 108, 546, and 549 of Bankruptcy
10              Code to 8/15/2025 Filed by Patrick R. Linsey
                on behalf of Luc A. Despins, Chapter 11
11              Trustee

12              Court's Ruling:                                     81

13

14                                  *  *  *

15

     WITNESSES CALLED
16   BY THE TRUSTEE:                                              PAGE

17        LUC A. DESPINS

18        Direct examination by Mr. Bassett                         20

19        Cross-examination by Mr. Sklarz                           33

20        Cross-examination by Mr. Laddin                           43

21        Redirect examination by Mr. Bassett                       47

22

23   Transcriptionist's Certificate                                82

24

25

1          (Proceedings commenced at 1:02 p.m.)

2               THE COURT:  So I ask the courtroom deputy to

3    please call the calendar.

4               THE DEPUTY:  Okay.  Case Number 22-50073, Ho Wan

5    Kwok.

6               THE COURT:  Good afternoon.

7               If we could have appearances for the record,

8    starting with the Chapter 11 Trustee, please.

9               MR. DESPINS:  Good afternoon, Your Honor.

10              Luc Despins, Chapter 11 Trustee.

11              THE COURT:  Good afternoon.

12              MR. BASSETT:  Good afternoon, Your Honor.

13              Nick Bassett from Paul Hastings on behalf of the

14   Chapter 11 Trustee.

15              THE COURT:  Good afternoon.

16              MR. LINSEY:  Good afternoon, Your Honor.

17              Patrick Linsey of Neubert Pepe & Monteith for the

18   Chapter 11 Trustee.

19              THE COURT:  Good afternoon.

20              MR. SKLARZ:  Good afternoon, Your Honor.

21              Jeffrey Sklarz for G Club Operations, LLC; and

22   then also, Ogier; FFP BVI, Ltd.; and Weddle Law, PLLC.  Thank

23   you.

24              THE COURT:  Would you just -- Ogier -- O-g --

25              MR. SKLARZ:  Yeah, O --

 1              THE COURT:  -- i-e-r.

 2              MR. SKLARZ:  Correct.

 3              MR. DESPINS:  Ogier.

 4              THE COURT:  Okay.

 5              MR. SKLARZ:  O-g-i-e-r, you got it right.

 6              THE COURT:  Okay.  I think Mr. Despins had a

 7  different pronunciation.

 8              What is it there?  I'm sure I pronounced it

 9  incorrectly.

10              MR. SKLARZ:  It's Ogier.

11              THE COURT:  Okay.

12              MR. DESPINS:  Ogier.

13              THE COURT:  Ogier is what we're being told.

14              MR. DESPINS:  Monsieur Despins.

15        (Laughter)

16              THE COURT:  Okay.  But in any event --

17              MR. SKLARZ:  Well, I've just heard --

18              THE COURT:  -- we've now spelled it for the

19  record, which was important, so thank you.

20              MR. SKLARZ:  I don't care how we pronounce it.

21        (Laughter)

22              MR. YAN:  Good afternoon, Your Honor.

23              Jin Yan on behalf of Apple, Inc. and Meta

24  Platforms, Inc.

25              THE COURT:  Good afternoon.

1       MR. LADDIN:  Good afternoon, Your Honor.

2       Darryl Laddin of Arnall Golden Gregory, on behalf

3  of American Express Company.

4       THE COURT:  Good afternoon.

5       MR. CONWAY:  Good afternoon, Your Honor.

6       Michael Conway, Lazare Potter Giacovas & Moyle.

7       On the first matter, I'm here on behalf of Wang's

8  Realty Management, Inc., and River Valley Operations.  On the

9  second matter, I'm here for ACA Capital Group Ltd.; GETTR

10 USA, Inc.; Hamilton Opportunity Fund SPC; Hamilton PE Fund

11 SP; Hamilton digital assets fund SP; Himalaya Currency

12 Clearing Pty. Ltd.; Himalaya International Clearing Ltd.;

13 Himalaya International Financial Group Limited; Taurus Fund

14 LLC; Taurus Management LLC; and William Je.

15      THE COURT:  Good afternoon.

16      All right.  On the calendar in the case today are

17 the two matters.  As Attorney Conway noted, there's, the

18 first is the Rule 2004 examination motion, which is the

19 eighteenth omnibus motion, and then the second motion on the

20 calendar is the motion to extend time to assert claims,

21 subject to time limitations.

22      Trustee Despins, these are both of your matters,

23 so how would you like to proceed?

24      MR. DESPINS:  Mr. Linsey will handle the 2004

25 matter first, Your Honor.

1          THE COURT:  Thank you.

2          MR. LINSEY:  May I approach, Your Honor?

3          THE COURT:  Yes, thank you.

4          MR. LINSEY:  Thank you, Your Honor.

5          Patrick Linsey for the Chapter 11 Trustee.  I'll

6   try to go quickly, realizing there's another matter.

7          The eighteenth Rule 2004 motion requests authority

8   to examine seven individuals and entities.  These are three

9   banks and financial institutions, one payroll and human

10  resources firm, and two entities and an individual who are

11  associated with the debtor.

12         An objection has been filed by River Valley

13  Operations LLC and Wang's Realty Management Service, Inc.,

14  both citing the pending proceeding doctrine, because they are

15  Defendants in an action to avoid certain transfers.

16         Speaking to River Valley first, River Valley is

17  not even an examinee in the 2004 motion; this entity is

18  simply mentioned in the document requests that are appended

19  to the forms of subpoena that are attached to the motion.

20  Since the outset of the Chapter 11 case, the trustee's

21  document requests have included requests that discuss the

22  debtor and the debtor's associated individuals and entities.

23  This is in recognition of the fact that the way the debtor's

24  shell game was conducted was through shell companies that

25  were nominally owned by associated entities.

1              Some brief background on River Valley Operations.

2    River Valley is an entity that the trustee understands the

3    debtors used to transfer funds to and from other debtor-

4    controlled entities and individuals.  Just a few examples.

5    The debtor used River Valley to fund operations in the United

6    Arab Emirates, including $8 million that River Valley

7    received from ACA Capital, which is what the trustee

8    believes, and has asserted in his first omnibus alter-egos

9    action, is one of the debtor's alter-egos.  River Valley used

10   that $8 million by transferring 4.5 million to an entity

11   called "H Reserve" that funded debtor operations in the

12   United Arab Emirates.  River Valley also, itself, paid

13   millions of dollars of expenses for the debtor's operations

14   in the United Arab Emirates, including luxury hotels,

15   resources, and BMW vehicles purchased there.  River Valley

16   has also wired funds to the debtor's daughter, which she has

17   used to pay her legal fees.

18              Now, realizing River Valley is not even an

19   examinee under the 2004 motion, the Court has resolved

20   numerous prior objections of this nature.  I would direct the

21   Court, respectfully, to its orders granting the second,

22   fifth, sixth, and eighth omnibus Rule 2004 motions, all of

23   which overruled similar objections.

24              The Court has been clear that to the extent that

25   the pending proceeding doctrine applies at all, it is

1    implicated where the trustee seeks discovery from the party

2    that is party to a pending proceeding, not from third

3    parties.  And, certainly, there is no blanket carve-out of

4    litigation parties from the scope of Rule 2004 discovery.

5    This has been clearly since at least June of 2023, when

6    Greenwich Land said we shouldn't be able to take discovery

7    from Bento, the financial transactions company, because of

8    the Greenwich Land adversary proceeding.  Your Honor

9    overruled that objection.  The discovery that we got from

10   Bento was crucial in putting together a number of the

11   avoidance complaints that we put together that had nothing to

12   do with Greenwich Land.

13          As to Wang's Realty, the eighteenth Rule 2004

14   motion is clear that the trustee seeks this investigation,

15   not because of transfers made to Wang's Realty, but because

16   Wang's Realty, itself, has made millions of dollars of

17   transfers to the debtor's alter-ego shell companies.  There

18   is a chart on the fourth page of the trustee's reply that

19   summarizes approximately two dozen transfers totaling

20   nearly $10 million that were made by Wang's Realty; by

21   contrast, the claim in the avoidance action, as to which

22   Wang's Realty is a party, is a single transfer to Wang's

23   Realty.

24          The pending proceeding doctrine is appropriately

25   applied when a trustee attempts to use Rule 2004 discovery as

1  a substitute for Rule 45 discovery in an adversary

2  proceeding.  Plainly, that's not what the trustee is doing

3  here.

4         As the Court is aware, there are more than 300

5  parties, Defendants to avoidance actions.  The trustee is not

6  filing Rule 2004 motions to take discovery from these

7  parties.  As discussed in the motion, the reason that Wang's

8  Realty is an examinee in this Rule 2004 motion is not because

9  of transfers to Wang's Realty, but because of the transfers

10 that Wang's Realty is making.

11        To make that even clearer, the trustee has

12 appended to his reply, a revised order that includes an

13 express carve-out of the transfer to Wang's Realty that is

14 implicated in the avoidance action from the scope of

15 Rule 2004 discovery.

16        So, unless Your Honor has any questions, the

17 trustee would ask that the eighteenth Rule 2004 motion be

18 granted.

19        THE COURT:  Thank you.  I do not have any

20 questions at this time.

21        Does anyone else wish to be heard?

22        MR. CONWAY:  Yes, may I, Your Honor?

23        THE COURT:  Yes, thank you.

24        MR. CONWAY:  Good afternoon, Michael Conway,

25 again, on behalf of Wang's Realty and River Valley

1   Operations.

2           I think that what we just heard sort of makes it

3   clear that with respect to River Valley, this is exactly the

4   concern that the courts have about doing this through a 2004

5   process, as opposed to Rule 45.  The Civil Rules provide

6   protections that don't exist when it comes to a 2004 exam.

7           The trustee is not being told, if you deny the

8   motion, they can't take discovery; he's just being told he

9   has to do it the right way, which is through the civil, the

10  Rules of Civil Procedure and, thereby, give River Valley its

11  appropriate protections.

12          With respect to Wang's Realty, you know, I'm not

13  sure what we heard makes sense.  If the trustee is saying

14  that, well, we know that you gave money to the debtor,

15  therefore, we want to depose you, there's no purpose of it;

16  they already know the money came to the debtor, they know

17  exactly where the money went.  There's no need to have that

18  deposition.

19          We know what really is going on here, Your Honor.

20  They want to ask Wang's Realty about other issues that can be

21  used in the adversary proceeding relating to Wang's Realty or

22  River Valley or probably one of many others that have already

23  been filed.  But the bottom line is, Your Honor, the same

24  issue applies:  we should be doing this pursuant to the Rules

25  of Civil Procedure, not pursuant to the Bankruptcy Rules,

1  because that provides, as you know, unfettered rights that

2  are unfair to the deponents.

3         And I don't want to belabor the point.  It sounds

4  like Your Honor has gone through this analysis before.  Like

5  in most situations, though, I haven't had the benefit of any

6  of those hearings, so I don't know when Counsel refers to

7  those hearings, what hearings he's referring to.  But if Your

8  Honor has already made up your mind, then so be it.  But it

9  really is inappropriate and we stand by our objection.

10         THE COURT:  Just give me a second there, Attorney

11  Conway, I just want to -- when you say -- just so I'm clear

12  on the record -- that you haven't had the benefit of those

13  hearings, I believe you have a notice of appearance in the

14  main case on behalf of many entities, including the entities

15  you're representing today.  So, you would have gotten notice

16  of those hearings and you would have been served with the

17  prior motions for Rule 2004 examinations, at least at some

18  point, because you have appear -- according to the docket

19  anyway.  I'm not going to go through the 4,400 entries at the

20  moment, but I just wanted to note that.

21         At least from what I see, you do have appearances

22  in the main case.

23         MR. CONWAY:  As of the date of the next hearing

24  that's set for today, I did file -- I didn't file notices of

25  appearances, but I appeared on behalf of entities in those

1  cases.  And in -- I'm sorry -- in that proceeding, I noticed

2  that when I did that --

3          THE COURT:  What proceeding?

4          MR. CONWAY:  The one that's following this one,

5  relating to the --

6          THE COURT:  Well, that's in the main case --

7          MR. CONWAY:  -- request for an extension of time.

8          THE COURT:  -- as well.  These are document --

9  these are motions.  This is relief sought by the trustee in

10 the Chapter 11 case, not in specific adversary proceedings.

11         MR. CONWAY:  Which is exactly what I just said,

12 Your Honor.  I said when I filed my objection in the next

13 matter to be heard in the main case, I noticed that I wasn't

14 on record as representing anybody in the main case.  I am

15 now.

16         THE COURT:  Well, I've got you -- I've got notices

17 of appearance that you've filed on behalf of Hamilton PE

18 Fund, Hamilton Opportunity Fund, GETTR USA, ACA Capital.

19         Are you saying those have just been filed in the

20 main case?

21         MR. CONWAY:  Those were never filed in the main

22 case; those were filed in the adversary.

23         THE COURT:  Well, they are filed in the main case

24 because they're -- according to the docket they are, anyway.

25         MR. CONWAY:  They're filed in the adversary, but

1 │ they were just filed in the main case Friday.  I was not -- I

2 │ checked the box:  You're not listed as an attorney for this

3 │ particular party in this case.

4 │          I --

5 │          THE COURT:  Sometimes the CM ECF issues are --

6 │ anyway, I understand what you're saying.  I'll have to go

7 │ back and look.

8 │          My -- what's in front of me, which I'm not

9 │ studying, so I could be completely wrong, okay, appears to

10 │ show that you have notices of appearance that have been here,

11 │ but you may be right that it's all just recent in the main

12 │ case.

13 │          MR. CONWAY:  And, Your Honor, it's not as if I

14 │ didn't have a curiosity interest in the main case, but that

15 │ does not mean that when the trustee filed the second motion

16 │ for 2004 exams, I even knew what this case was.

17 │          THE COURT:  I understand what you're saying.

18 │          MR. CONWAY:  So, yeah, just --

19 │          THE COURT:  That's why I'm asking the question,

20 │ okay.

21 │          MR. CONWAY:  After 4,000 filings by the trustee, I

22 │ don't think I've paid attention to all of them.

23 │          THE COURT:  Well, they're not all by the trustee.

24 │          MR. CONWAY:  Yeah.

25 │          THE COURT:  There were quite a few before the

1   trustee was appointed, as well, by the debtor-in-possession.

2            MR. CONWAY:  I was saying that tongue-in-cheek,

3   Your Honor, and I think, you know, you probably were as well,

4   and I see the smile on your face.

5            THE COURT:  I just want to make sure the record is

6   clear, okay?

7            MR. CONWAY:  The record should reflect that I

8   didn't participate in any of those hearings.  And the only

9   point of my comment was to point out that, you know, it's

10  somewhat unfair to say, As you know from prior hearings,

11  we've talked about this or we've talked about that.  You

12  know --

13           THE COURT:  Well, I don't think that's what they

14  said.  I think he -- I think what I heard Attorney Linsey say

15  was, you already addressed these in four different orders;

16  that's what I think he had said.

17           I don't -- you may or may not have been involved

18  in the case at that time.  All I can -- I can see things back

19  in late 2023 and early '24 when you represented, at least --

20           MR. CONWAY:  Taurus.

21           THE COURT:  -- Taurus Fund, right, in the main

22  case, not just in the adversary.

23           So, it's fine.  I was just asking you the question

24  and you've answered it.  And I will look at the docket and

25  understand.

1    But I understand your argument and I will consider

2  your argument, obviously, that you weren't involved at a

3  point where you could have made an argument with regard to

4  the prior orders that Attorney Linsey referred to when he was

5  making his argument.

6    MR. CONWAY:  Yes.

7    And I can assure you that, in any event, I didn't

8  see it.

9    THE COURT:  Okay.  Thank you.

10    MR. CONWAY:  Thank you, Your Honor.

11    THE COURT:  Does anyone else wish to be heard?

12    MR. LINSEY:  Very briefly, Your Honor.

13    I think just speaks to why there is a meet-and-

14  confer obligation, so that these issues can be discussed,

15  prior to discovery disputes being adjudicated before Your

16  Honor.

17    I would also note that prior to Mr. Conway

18  appearing for River Valley, River Valley filed a motion to

19  quash, with respect to Rule 2004 discovery that was directed

20  to third parties through another counsel.  This was back in

21  September and --

22    THE COURT:  Of '24?

23    MR. LINSEY:  Of 2024.

24    THE COURT:  Okay.

25    MR. LINSEY:  The trustee was required to file an

1  opposition that ultimately led to a stipulation that

2  permitted the trustee to obtain discovery.  In that

3  opposition, the trustee noted that River Valley had not

4  complied with the meet-and-confer obligations when filing its

5  motion to quash.  It, similarly, did not do so here.

6          This has been a trend with debtor-associated

7  entities of not picking up the phone prior to adjudicating

8  discovery disputes or seeking to adjudicate discovery

9  disputes.

10          THE COURT:  Anything further, Attorney Conway?

11          MR. CONWAY:  No, Your Honor; that's fine.

12          THE COURT:  Okay.  Anyone else -- thank you --

13  anyone else wish to be heard?

14      (No verbal response)

15          THE COURT:  I'm just looking at the docket for one

16  second.

17      (Pause)

18          THE COURT:  All right.  I will -- I will review

19  the arguments of counsel and take the matter under advisement

20  and will rule accordingly.  Thank you.

21          MR. CONWAY:  Thank you, Your Honor.

22          THE COURT:  Trustee Despins, would you like to

23  proceed with the motion to extend time now?

24          MR. DESPINS:  Yes, Your Honor.

25          Mr. Bassett is going to handle that matter.

1          THE COURT:  Okay.  Thank you.

2          MR. BASSETT:  Good afternoon, Your Honor.

3          Nick Bassett from Paul Hastings for the record, on

4   behalf of the Chapter 11 Trustee.

5          Your Honor, we are here today on what is the

6   trustee's third request to extend the period for filing

7   avoidance actions.  The Court has already granted two such

8   motions; specifically, on February 15th of 2024, the Court

9   granted the trustee's first motion to extend the deadline to

10  file avoidance actions from February 15th, 2024, through

11  August 15th, 2024.  That order is at ECF 2921 in the main

12  case.

13         And then after that, Your Honor, on August 14th

14  of 2024, the Court granted the trustee a further extension of

15  that deadline from August 15th, 2024, through February 15th,

16  2025; that order being at ECF 3417 in the main case.

17         As we did at the last two hearings that preceded

18  those two prior orders of the Court, I would propose today to

19  start with a brief presentation of evidence in support of the

20  trustee's motion and then proceed to argument thereafter.

21  And, Your Honor, in terms of evidence, we had filed a witness

22  and exhibit list on the docket, which asked the Court to take

23  judicial notice of the record in this case; again, as

24  consistent with how we proceeded at the last two hearings

25  before this Court on the two prior motions.  And then we have

1  also identified the trustee as the one witness that we intend

2  to have offer some brief testimony in support of the motion

3  and then, of course, the trustee would be subject to cross-

4  examination.

5           So, with that, Your Honor, I would propose to

6  proceed with the examination of the trustee at this time.  As

7  I said, he will, of course, be subject to cross-examination

8  and then we would proceed to argument on the motion

9  thereafter, if that's acceptable to the Court?

10          THE COURT:  That's fine with me.

11          MR. BASSETT:  So, with that, Your Honor, we would

12  call the trustee to the stand.

13          THE DEPUTY:  Trustee Despins, if you could stand,

14  please?

15          LUC A. DESPINS, TRUSTEE'S WITNESS, SWORN

16          THE WITNESS:  I do.

17          THE DEPUTY:  Thank you.

18          State your name and address for the record,

19  please.

20          THE WITNESS:  Luc Despins.  Business address is

21  200 Park Avenue, New York, New York.

22                    DIRECT EXAMINATION

23  BY MR. BASSETT:

24  Q    Mr. Despins, good afternoon.

25          Do you recall testifying on February 13th, 2024, in

1  this court in support of the first motion to extend the

2  limitations period?

3  A     Generally, yes.

4  Q     And then you also recall that you testified, again, I

5  believe it was on October 13th of 2024 in support of your

6  second motion?

7  A     Yes.

8  Q     Okay.  So, with that in mind and you having testified

9  twice already, I'm going to endeavor to not repeat testimony

10 you've already given and, instead, try to focus my questions

11 on, for the most part unless I say otherwise, the period that

12 has occurred since August of 2024 to the present.

13       Is that okay?

14 A     Sure.

15 Q     Now, could you please just take a moment and describe

16 to the Court in general terms what you and your team have

17 been doing in terms of your investigation since August

18 of 2024?

19 A     Well, we continued to review all the documents that had

20 been produced by that time; that's step number one.  That

21 involves Kroll and also, generally, you know, the two firms,

22 you know, Mr. Linsey's firm and Paul Hastings.

23       We also filed additional Rule 2004 document requests

24 and we prosecuted or we commenced prosecution of certain

25 actions for seeking recovery of funds.  And, also, we

1   embarked, I would say more fully, on a foreign, on foreign

2   processes in various countries to seek information, but also

3   to recover assets.

4   Q    Among the items that you just mentioned was the filing

5   of additional Rule 2004 motions.

6        Do you recall approximately how many new motions you

7   filed since August of last year?

8   A    Four.

9   Q    And within those four motions or across those four

10  motions, do you have a ballpark of the number of additional

11  discovery targets?

12  A    I think it's approximately 27 targets.

13  Q    And then of those 27 targets, are you seeking documents

14  from all 27?

15  A    Yes.

16  Q    And approximately how many documents, if you know, or

17  pages of documents, if you can explain to the Court, have you

18  received on account of those Rule 2004 motions since August?

19  A    From those targets, approximately 30,000 pages of

20  documents.

21  Q    And just -- I think you've been over this a bit

22  before -- but can you describe to the Court, generally,

23  what's your process of what happens when you receive those

24  documents?

25  A    Well, obviously, they're downloaded on the software

1  practice that allows us -- and by "us," I mean, not only the

2  lawyers, but also Kroll -- to access this and to do word

3  searches.  So that's the process that goes on when we receive

4  these documents.  Often, they would refer to bank accounts,

5  so Kroll would get involved and start preparing an inventory

6  of bank accounts that we don't have that are new, et cetera,

7  et cetera.

8  Q    And how long -- you don't have to be specific with days

9  or weeks -- but how long does that process take, generally

10  speaking?

11  A    It takes quite a while because -- especially with the

12  bank account process.  But we have to remember we have no

13  books and records, so the only books and records that we

14  really have that we rely on are the bank accounts because

15  they're coming from third parties and we have to presume

16  they're authentic.

17       So we -- Kroll goes through these bank accounts and

18  I've already described, you know this -- I use this analogy

19  of the Russian dolls, right.  So you start with an account,

20  you open it, and then in there, there's money coming in and

21  money going out; coming in from accounts, either we know

22  about or we don't know about, and money coming out to

23  accounts that we know or don't know about.

24       And based on that, that generates a whole series of

25  additional inquiries so that Kroll would say to Mr. Linsey,

1  because his firm is really mostly handling bank discovery, We

2  have the following 10 new bank accounts -- that's just an

3  example; it's much more than that -- but 10 bank accounts.

4      You already have obtained orders with respect to these

5  banks, but they have never produced those bank accounts; go

6  and seek those.  So, he would go and seek production from

7  those already-existing banks or if they -- what I mean by

8  "existing," subject to a Rule 2004 order -- or, if not, then

9  we add that to our list of targets.

10  Q    So, I'll ask you a couple of questions about those bank

11  accounts and the work that you've been doing in analyzing

12  those in a minute.  Before that, I just want to go back to, I

13  think you said there were 27 additional parties as to which

14  you filed 2004 motions since August; is that right?

15  A    Correct.

16  Q    Is there any reason why you hadn't targeted those

17  particular 27 parties with Rule 2004 requests prior to August

18  or at any point earlier in the case?

19  A    Sure.  We typically add targets as soon as we learn of

20  them.  There's no incentive not to do that.

21      I would say, to be candid, is that we try to not file a

22  motion every week, so we try to have a certain number of

23  targets before we file the 2004; otherwise, we'd be filing

24  a 2004 every week, every two weeks and that would burden the

25  Court for no reason.  But other than that, we seek 2004

1  relief -- I wouldn't say the minute -- but soon after we

2  learn of new entities.

3       So these entities were discovered through what I would

4  refer to as the, again, the Russian doll analogy, that you

5  open the bank account and, oh, there's a transfer to

6  Company X.  I've never heard of Company X before.  Then, we

7  go with that lead and so on and so forth.

8  Q    So, I'd like to go back to what you were saying about

9  the bank accounts and I was hoping maybe you could put some

10 figures around it, if possible, to try to give the Court a

11 sense of the scope of that investigation.

12      Starting with the number of, you said you identified, I

13 believe, additional accounts, can you say, ballpark, how many

14 additional accounts you and your team have identified since

15 August?

16 A    It's more than 200.

17 Q    And then within those accounts, any ballpark sense of

18 how many additional transactions you've identified and had

19 your team analyze?

20 A    Yeah, it's over 55,000 transactions.

21 Q    And what -- are those transactions that are money

22 coming in, coming out?

23 A    Both.

24      So, for these 55,000 transactions, there's an inflow

25 of 800 -- again, these are rough numbers -- 800 million, an

1 outflow of 1.4 billion.

2 Q    And I think you touched on this before, but with all

3 that information, what are you and your team, with the

4 assistance of Kroll, doing with all of that?

5 A    Well, we're look -- trying to figure out what these

6 entities were doing, what role they were playing in the Kwok

7 environment and, you know, through the document production we

8 have or other sources, we're able to piece it together and

9 say, Okay, now, we know this entity was an alter-ego of Kwok

10 for the following reasons.  Then, we add that entity to an

11 alter-ego or an amended complaint or a new complaint for an

12 alter-ego or we know this was a third party that was getting

13 paid by the Kwok enterprise and we will assert or have

14 asserted an avoidance action against that entity.

15 Q    I believe when I asked you generally what you and your

16 team have been doing over the past, approximately, six

17 months, you also mentioned undertaking some efforts overseas.

18 I'm not sure if I'm characterizing that correctly.

19     Assuming that's correct, can you expand on that for the

20 Court?

21 A    Yes.  We knew there was overseas activity, but by

22 didn't have the level of detail required to really determine

23 whether it made sense to invest estate money to go after

24 certain, to go after certain activities in certain

25 jurisdictions.  But through the criminal trial and other

1  sources, we're able to piece together, eventually, I would

2  say, August, September, October, starting to have a picture

3  of the countries where there was the most activity.  So,

4  these include, you know, Switzerland, UAE, U.K., British

5  Virgin Islands, and Mauritius.

6      And so that's -- so what we did in these jurisdictions,

7  either we were resisting an activity by a Kwok alter-ego, as

8  we perceived it, to dispose of funds or to do certain

9  transactions, or we were seeking, ourselves, to be recognized

10  as a foreign representative in these jurisdictions to assert

11  claims in those jurisdictions against recipients of funds

12  from Kwok enterprise entities.

13  Q    And can you give the Court a sense of, like, what stage

14  these, if you recall this, I guess your foreign-investigation

15  efforts, what stage those are in now?

16  A    It varies from country to country, but I would say

17  compared to this proceeding, we're at a fairly -- generally,

18  fairly preliminary stage in the sense that it's much slower.

19  There's much more resistance in these countries; not by the

20  countries' judicial body itself, but rather, by Kwok proxies

21  and therefore, it's really slow-going, compared to the level

22  of activity and the success we've had here.

23  Q    When you say resistance by Kwok proxies, can you give

24  some examples of that?

25  A    Yes, I mean, an example is Ace Decade, which, you know,

1  this Court is very familiar with.  Ace Decade is a BVI entity

2  and what it did is -- what the purported shareholder of that

3  entity, a Swiss resident, did, is he commenced an insolvency

4  proceeding for Ace Decade and for non-estate subsidiary in

5  the BVI.

6      So, we've been fighting that and the level of

7  resistance is just mind-boggling in the sense that, you know,

8  just recently, you know, people are taking positions that

9  Mr. Kwok was not the owner of these entities, that there's

10 somebody else was the owner, but we can't say who that is

11 because that would put that person at risk.  So, it's just,

12 like, delaying tactics that are just never-ending and are

13 time-consuming and costly.  That's one example.

14     But in the U.K., a Hamilton entity commenced an

15 insolvency proceeding, basically saying to the Court over

16 there, We're an operating business.  Of course, we showed the

17 FBI screenshots that say this site is closed, that's been

18 foreclosed on by the FBI.  So, they told the Court that it's

19 an ongoing business but there's a few issues that need to be

20 sorted out and we need to send the money to the UAE where

21 we're going to continue the operations of this business.

22     So, of course, we need to appear and tell the Court,

23 Wait a minute, this is not what's going on.  The people in

24 the UAE, that's William Je, he's a fugitive from justice, et

25 cetera, et cetera.

1       So that's an example of these actions that are

2  conducted by what we refer to as "Kwok proxies" to try to

3  evade this Court's jurisdiction and to cleanse the money to

4  distribute to Kwok people.  So it's the equivalent of the

5  assignment for the benefit of the creditor that was attempted

6  in New York to try to say, Oh, well, we just need to clean

7  this up, et cetera, et cetera.  But it became very clear that

8  this was designed to, that where the creditors of that entity

9  were Kwok entities and, therefore, they're trying to recycle

10 the funds to give them to Kwok entities.  It's the equivalent

11 of that, but it's happening in the U.K.; that's pending.

12 It's happening in -- well, to a certain extent, in Mauritius,

13 and that's what we have to contend with, basically.

14 Q    And how, if at all, are these issues that you're

15 encountering that are making your, you know, causing

16 difficulties with your foreign investigation, how, if at all,

17 has that impacted your ability to identify and pursue

18 additional avoidance claims that you would, otherwise, want

19 to pursue before February 15th?

20 A    Well, it's the same team in the sense that, yes, we

21 have foreign counsel, but -- and this is not a knock on

22 them -- but they know nothing about the case, so at the end

23 of the day, we have to spoon-feed them what has happened

24 here, the various rulings by the Court, et cetera, et cetera.

25       So that means that the team that would normally be

1   focusing on the types of claims that we're talking about has

2   to be sidelined to address these various proceedings that are

3   popping up around the world, to stop them or to, you know,

4   basically, to try to stop them.

5   Q      Just a couple more questions.

6          So, as we noted at the outset, you testified previously

7   in support of the two prior motions for an extension that you

8   filed before the Court, and do you recall testifying at those

9   two prior occasions on some of the delay and obstruction at

10  the hands of the debtor, an associate that you faced earlier

11  on in this case?

12  A      Yes.

13  Q      So, my question for you is, how, if at all, has that

14  observers obstruction that you faced earlier on in the case

15  continued to affect your investigation going forward,

16  including in the past six months?

17  A      Well, basically, as I said, because we don't have books

18  and records -- you know, this is not a hardware store we're

19  trying to recreate their books and records; this is a multi-

20  billion-dollar enterprise.  So, to recreate that from scratch

21  is a huge task and that's why the failure to cooperate and to

22  basically give us the roadmap of why these documents exist,

23  what's the -- how do they work and you combine that with the

24  fact that there are all these secret documents, for example,

25  these trust agreements that pop up from time to time that

1  say, The real owner of this company is not so and so; it's

2  Mr. X, or another one that says, The apartment is really

3  owned by Mr. Y.

4       But, by the time we resolve all of this, months go by.

5  Hundreds, if not millions, of dollars go to -- you know, the

6  perfect example is The Sherry-Netherland where the son showed

7  up in court here to say, Oh, I have a trust agreement that

8  says I'm the owner and not my father.  We had to spend a lot

9  of time and a lot of money on that; of course, that all

10 occurred before August, but the point is that's money --

11 that's time that could have been spent on looking at other

12 matters that had to be spent dealing with these various

13 strategies to slow us down and, basically, impede the

14 process.

15 Q    Now, Mr. Despins, certain of the objecting parties here

16 today have taken the position in their papers, at least, that

17 they don't think you should be able to seek, be able to

18 obtain in perpetuity, indefinite extensions of time to pursue

19 avoidance actions in a blanket manner against any party in

20 the future.

21      How do you respond to that?

22 A    That's a fair point, in the sense that in the motion,

23 we said that this, our intention was that, subject to

24 unforeseen events, this would be the last blanket objection

25 and that if we came back to Court for another extension, it

1   would be, we would try to seek extensions for categories of

2   claims or targets.  And I can't define what those are now,

3   but the idea is that there has to be an end to this process.

4   I agree with that concept, absolutely.

5        And we're not there yet, but I would hope that this

6   would be the last blanket -- that's the way we described them

7   in the motion -- the last blanket objection.  There may need

8   to be further extensions, but that would have to be dealt

9   with in terms of categories of targets or types of, for

10  example, international transfers and the like, as an example.

11  Q    And my last question for you is just whether there's

12  anything else that you think, that you haven't testified to

13  already, that, in your view as the trustee in this Chapter 11

14  case, justifies your request for an additional six months to

15  file avoidance actions?

16  A    No, I mean, other than to say that it would be kind of

17  perverse for people to get away with, you know, bad conduct,

18  based on a technical issue like this.  As I said, I don't

19  think we should have 10 years to do this, and we're not

20  seeking that, but, you know, it would be really unfortunate

21  and inappropriate for guilty parties to get away with this,

22  with what has occurred here based on some technical issue.

23  Q    Thank you.

24            MR. BASSETT:  Your Honor, we pass the witness.

25            THE COURT:  Okay.  Thank you.

```
1              Cross-examination, Attorney Sklarz?
2                      CROSS-EXAMINATION
3   BY MR. SKLARZ:
4   Q     Good afternoon, Trustee Despins.
5   A     Good afternoon.
6   Q     What additional claims do you have against G Club?
7   A     Well, I don't know precisely, but there's things
8   relating to that two-million-dollar check that, I guess, was
9   being withheld.  So that's something that we're looking into.
10  Q     The two-million-dollar check that's with the
11  government, is that what you're referring to?
12  A     Yes, but that G Club was holding for a year-plus.
13  Q     And you've been aware of that check since,
14  approximately, November or December of last year, correct?
15  A     Something around that time, sure.
16  Q     And since that time, you haven't asked G Club for any
17  more information regarding that check, have you?
18  A     Not that I know, no.
19  Q     What other information would you like to know about
20  that check?
21  A     Well, I'm not sure I need more information from G Club
22  about that check, but we're analyzing, you know, the
23  situation with respect to the check; that's one of them.
24  Q     So funds that have been turned over to the Government,
25  have you talked to the Government about the check?
```

1   A       Not -- no, I don't think so.

2   Q       So you don't know if you have any other claims against

3   G Club; is that fair to say?

4   A       In contrast to the people managing or representing G

5   Club, that's correct.

6   Q       G Club itself?

7   A       Well, we already have filed an alter-ego action, so...

8   Q       Are there any other claims that you would like to bring

9   against G Club?

10   A       I -- I mean, I -- none come to mind at this time.

11   Q       Okay.  And you've had since the beginning of the case

12   to investigate G Club, correct?

13   A       Well, we've had from the beginning of the case to

14   investigate everything, but that's -- G Club is one of the

15   thousands of issues.

16   Q       And G Club has turned over hundreds of thousands of

17   pages of documents, sat for a 2004 exam, been sued several

18   times, correct?

19   A       Well, if you want the full picture, is that they

20   withheld documents --

21   Q       I just -- they did -- they withheld documents?

22   A       Sure.

23   Q       Name a time when Her Honor has ruled on a document

24   issue that the documents haven't been turned over.

25           You can't name one, correct?

1  A      No, there was a whole proceeding where we had to compel

2  and there was a whole production --

3  Q      Correct.

4         And Judge Manning ruled and the documents were turned

5  over, correct.

6         That's a true statement I just made; yes, sir?

7  A      Well, they were withheld; that's a true statement.

8         And then we had to compel, the Court had to order you

9  to produce (inaudible) --

10 Q      And do you believe that adhering to court order is

11 somehow improper?

12 A      No, but this was all (inaudible) --

13 Q      Thank you, you've answered the question.

14        So, G Club turned over documents in November and

15 December of last year, correct?

16        THE COURT:  Just so the record is clear, you mean

17 of 2024, right?

18        MR. SKLARZ:  Of 2024, yes.

19        THE COURT:  I just want to make sure.

20        MR. SKLARZ:  I just want to make sure, Trustee

21 Despins is standing here and counsel for the trustee has said

22 several times that my client has not turned over documents.

23 We have interposed objections, as Your Honor knows, which you

24 have dually ruled on and we have turned over documents.

25        I find it offensive --

 1              THE COURT:  Where did --

 2              MR. SKLARZ:  -- to the judicial process --

 3              THE COURT:  Are you talking about what Mr. Bassett

 4   said today during argument that G Club hasn't turned over

 5   documents?

 6              MR. SKLARZ:  No.

 7              THE COURT:  You're talking -- you asked --

 8              MR. SKLARZ:  Trustee Despins.

 9              THE COURT:  Yeah.  And he answered the question,

10   so I'll give it whatever weight and credibility I think is

11   appropriate.

12              MR. SKLARZ:  Fair enough, Your Honor.

13              THE COURT:  Okay.

14   BY MR. SKLARZ:

15   Q    So in November and December of 2024, G Club turned over

16   documents, correct?

17   A    They turned over certain documents, yes.

18   Q    The documents you asked for, correct?

19   A    Well, I don't know, because you're to produce them.

20        So, we asked for documents.  I don't know if you

21   produced all the documents.

22   Q    Have you asked for more documents since November or

23   December of 2024 from G Club?

24   A    I don't know.

25   Q    You don't know.

1       So, you would agree, regardless of your

2  characterization, that G Club has turned over hundreds of

3  thousands of pages of documents, correct?

4       That's a yes-or-no question.

5  A    I don't know if it's hundreds of thousands.  I know

6  they produced documents.  Hundreds of thousands, I don't

7  know.

8  Q    And G Club produced a 30(b)(6) witness for a deposition

9  that was taken by Attorney Bassett, correct?

10 A    That's correct.

11 Q    And as you sit here today, you're not aware of any

12 claim that you, additional claim that you could bring against

13 G Club, correct?

14 A    I don't think I said that; I said we're looking into an

15 additional claim.  We haven't made the decision on that.

16 Q    What claim are you aware of, as you sit here today,

17 that you believe that you can bring against G Club?

18 A    I -- we're looking into that, so I (inaudible) --

19 Q    I understand that you're looking, but please listen to

20 my question, sir.

21      As you sit here today, what claim can you bring against

22 G Club, do you know of any?

23 A    Well, I told you we're looking at the issue of the two-

24 million-dollar check that was withheld for a year.

25 Q    But a two-million-dollar check is not a claim; a two-

1  million-dollar check is a check.

2       Please listen to my question:  What claims are you

3  aware of, as you sit here today, that you could bring against

4  G Club?

5  A    I don't understand your point about the two-million-

6  dollar check is a check; that's an asset of the alter-ego,

7  which G Club is, so --

8            MR. SKLARZ:  Your Honor, I've asked the question

9  several times.  I'd ask that he just answer it, as opposed to

10 giving a speech.

11           THE COURT:  (Inaudible.)

12           MR. SKLARZ:  I'll pose the question again.

13 BY MR. SKLARZ:

14 Q    As you sit here today, Trustee Despins, what claims are

15 you aware of that you could bring against G Club, if any?

16 A    I said we're looking at bringing a claim with respect

17 to the two-million-dollar check.

18 Q    So you don't know of any?

19 A    No, I'm not saying that.  I've answered the question.

20 Q    What claims regarding the two-million-dollar check do

21 you think you can bring against G Club?

22 A    To recover the $2 million.

23 Q    The $2 million that was turned over to the United

24 States Government?

25 A    You've given the check to the Government; I'm not sure

1  that it's been cashed, so, unless you tell me it's been

2  cashed, but ...

3  Q     And you haven't talked to the Government about this?

4  A     No.

5  Q     What --

6            THE COURT:  So the record is clear, too, on the

7  two-million-dollar check turned over to the Government; I

8  don't know what you're -- I mean, I have an idea, probably,

9  of what you're talking about, but I don't believe there's

10 anything in this record of this case, yet, unless I -- I'm

11 missing something.

12           MR. SKLARZ:  You aren't, Your Honor.

13           THE COURT:  Okay.

14           MR. SKLARZ:  I'll --

15           THE COURT:  So, when you say, "turned over to the

16 Government," do you mean in connection with the criminal

17 action?

18           MR. SKLARZ:  Yes, Your Honor.

19           THE COURT:  Okay.  That's all I need to know.

20 That's all -- I'm just asking, because I didn't know.

21 There's nothing -- I don't recall seeing anything in the

22 papers or anything about a two-million-dollar check, and then

23 you say, "the Government," so I'm just asking.  That's all.

24 BY MR. SKLARZ:

25 Q     And you're aware that the Government's issued a

1   subpoena to G Club to turn over that check?

2   A      Yeah, I saw the subpoena.

3   Q      Thank you.

4          Should G Club have ignored that subpoena, in your view?

5   A      I don't represent G Club, so that's not for me to

6   decide.  But I assume that means that G Club thinks that it

7   was part of a criminal action, right, because it was turning

8   over proceeds of what, a crime?

9   Q      Is -- are you asking me a question?

10  A      I --

11         MR. SKLARZ:  Your Honor, I'd ask that that

12  statement be stricken.

13         THE COURT:  That's fine.  We'll just continue.

14         THE DEPUTY:  Excuse me, if Attorney -- if Trustee

15  Despins could just pull the mic a little closer.  We're

16  picking him up, but he's a little low.

17         THE WITNESS:  Sorry.  Will do.

18         THE DEPUTY:  Thank you.

19  BY MR. SKLARZ:

20  Q      What other claims does, do you believe you have against

21  Ogier, or I apologize if I'm mispronouncing it?

22  A      You might be pronouncing it correctly that I saw, but

23  we will assert additional claims against Ogier.

24  Q      What claims?

25  A      Fraudulent transfer.

1  Q      When did you become aware of those claims?

2  A      In recent months.

3  Q      So, even though you're aware of these claims, you

4  haven't asserted them yet?

5  A      As I said, we cannot file a claim every day when we

6  find out about it.  We try to get organized to file a series

7  of claims at the same time and this is one of the ones that

8  will be filed, like, soon and, you know, before

9  February 15th; let's put it that way.

10  Q      Are you aware of any additional claims against FFP?

11  A      That one, I don't recall.

12         Ogier, I remember, because of the name.  But this one,

13  I couldn't say either way.

14  Q      You know FFP is the independent manager of G Club and G

15  Club International, correct?

16  A      Yeah, now when you mention that, you're correct.

17  Q      Having state -- having refreshed your recollection,

18  does that refresh your recollection as to whether you have

19  any additional claims against FFP?

20  A      No, because I -- you know, there's more than 280

21  Defendants and we are adding probably 20, 25, so I can't

22  recall whether that entity is on that list or not.

23  Q      With respect to Weddle Law, are you aware of any claims

24  you would bring against Weddle Law?

25  A      I don't recall.

1  Q     Now, one of the arguments you've made in your briefing,

2  as well as in testimony today, is that Mr. Kwok has continued

3  to obstruct your investigation; is that fair to say?

4  A     Mr. Kwok or his proxies.

5  Q     Okay.  Well, let's separate Mr. Kwok and his proxies.

6        How has Mr. Kwok, since August of this year, when you

7  obtained your second extension, obstructed these proceedings?

8  A     Because he has not turned over books and records of the

9  various entities he controls.

10 Q     He's been sitting in solitary confinement for

11 approximately two years; is that correct?

12 A     I don't know where he's been sitting in prison, but he

13 had an obligation, as debtor, to produce books and records.

14 He never did, so that's a continuing failure.

15 Q     So -- and that was a basis for the first and the second

16 extension, correct?

17 A     And it's a basis, again, today, as I explained or as I

18 testified to, is that there's a knock-on effect to that, that

19 continues we continue to suffer today.

20 Q     Do you believe Mr. Kwok is ever going to cooperate with

21 your investigation?

22 A     I doubt it.

23        MR. SKLARZ:  I don't have any additional

24 questions, Your Honor.

25        THE COURT:  Thank you.

1          Any other counsel, cross-examination?

2          I know you've already noticed your appearance, but

3   would you note it again, just for the record, please,

4   Counsel.

5          MR. LADDIN:  Yes, Your Honor.

6          Darryl Laddin of Arnall Golden Gregory, on behalf

7   of American Express Company.

8          THE COURT:  Thank you.

9                    CROSS-EXAMINATION

10  BY MR. LADDIN:

11  Q     Good afternoon, Mr. Despins.

12  A     Good afternoon.

13  Q     I will be brief.

14        You are aware that you've already sued American Express

15  Company, correct?

16  A     Correct.

17  Q     And that's in Adversary Number 24-05077, for the

18  record?

19  A     I don't remember the number, but I don't doubt it.

20  Q     Have you identified any additional claims, other than

21  the ones that are in your current lawsuit against American

22  Express Company?

23  A     Yes, we have.

24  Q     And what are those?

25  A     It's several hundred thousand dollars, you know, two

1  hundred-plus, but I couldn't give you the precise number.  As

2  I said, there's 20, 25 entities that have already been sued

3  that we'll, where we'll amend the complaint to add additional

4  claims.  And I know AMEX is one of them.

5  Q    Do you believe it's two-hundred-and-some-odd-thousand

6  dollars?

7  A    More than 200,000, but it's less than 500, so I

8  don't -- I don't know precisely what the number is, but it's

9  more than 200 and less than 500.

10 Q    And what are the basis of those claims?

11 A    Same as before.

12 Q    So, 549 claims?

13 A    Some, but, yeah, 549, correct.

14 Q    Okay.  And who are the alleged alter-egos?

15 A    I don't -- I couldn't tell you offhand, I'm sorry.

16 Q    And when did you identify those claims?

17 A    In the last few months.

18 Q    September or August of '24?  Earlier than that?

19      Can you give me a range, at least?

20 A    I think it's post-August, but I -- to give you the

21 precise month, I couldn't do that.

22 Q    And do you know how those claims were identified?

23 A    Yeah, as I said, this is going back to the Russian-doll

24 thing.  When you go to a bank account, all of a sudden you

25 see an entry that says, "payment to American Express," oh, we

1  didn't know about these payments, so that's how we discover

2  these things, through the bank accounts.

3  Q    Well, I understand that's a general answer --

4  A    Yes.

5  Q    -- but do you know, specifically, with respect to

6  American Express Company, how these specific claims were

7  identified?

8  A    Not precisely, no.

9  Q    And when do you intend to amend the lawsuit?

10  A    Soon, before February 15th.

11  Q    And you're not aware of any other claims, other than

12  those you're planning to add by February 15th; is that

13  correct?

14  A    That's correct.

15  Q    And would you agree that the Court could, in that

16  lawsuit, adjudicate any claim that you have as to equitable

17  tolling, looking at the specific facts and circumstances?

18        MR. BASSETT:  Objection; it's legal argument.  It

19  calls for a legal conclusion, Your Honor.

20        THE COURT:  Well, I think it goes beyond direct

21  examination, actually, Counsel, so I'm going to sustain the

22  objection.

23  BY MR. LADDIN:

24  Q    Mr. Despins, you can raise facts relating to those

25  specific claims in the lawsuit itself, correct?

1    MR. BASSETT:  Same objection -- not the same
2  objection, but I object on the basis as to which the Court
3  just --
4    THE COURT:  No, I think that question's okay.
5    THE WITNESS:  Can you restate the question, sir,
6  please?
7  BY MR. LADDIN:
8  Q    You can allege facts relating to these specific claims
9  and any reasons for delay in the lawsuit, in your amended
10  complaint, correct?
11  A    Could we?  Sure, we could.
12  Q    Focusing on the, any claims, other than the ones that
13  you're planning on amending by the 15th, okay, you have no
14  idea sitting here today what these specific facts and
15  circumstances would be regarding any such other claims; is
16  that correct?
17  A    Claims that I don't know anything about?
18  Q    Correct.
19  A    By definition, that would be correct, if I don't know
20  anything about them.
21    MR. LADDIN:  I have nothing further.  Thank you.
22    THE COURT:  Thank you.
23    Anyone else wish to cross-examine Trustee Despins?
24    UNIDENTIFIED SPEAKER:  No.
25    THE COURT:  No, Counsel?

1          Okay.  Redirect, Attorney Bassett?

2          MR. BASSETT:  Very briefly, Your Honor.

3                    REDIRECT EXAMINATION

4    BY MR. BASSETT:

5    Q    Trustee Despins, I just had one clarifying question.

6    You were asked by both counsel on cross-examination about

7    claims that you are aware of that you might be asserting

8    against their clients in the future.

9          My question for you is, is it your intention to assert,

10   by February 15th, all claims that you are presently aware of?

11   A    That we're presently aware of, yes.

12          MR. BASSETT:  Nothing further, Your Honor.

13          THE COURT:  Any recross?

14          MR. SKLARZ:  Nothing further, Your Honor.

15          THE COURT:  Thank you.

16          MR. LADDIN:  Nothing further, Your Honor.

17          THE COURT:  Okay.  Thank you.

18          Okay.  Trustee Despins, you can step down.

19       (Witness excused)

20          THE COURT:  Attorney Bassett, you had indicated

21   during your opening comments that you will ask the Court to

22   take judicial notice of the docket of the case, which I can

23   obviously take judicial notice that there's a docket that

24   has 4,000 -- I'm not sure what number we're up to now, but I

25   can find out pretty quickly -- more than 4,000 docket

1   entries.

2           But if there are specific documents you would like

3   me to review in connection with this, I know, you know, there

4   are -- you could recite many, but I do think, for the record,

5   it would be important to note you're asking the Court not

6   just to take judicial notice of a docket, but documents on

7   that docket and their contents; is that correct?

8           MR. BASSETT:  That's correct, Your Honor.

9           And to the extent there are particular documents

10  that I think, they're particular or deserve particular focus

11  by the Court in ruling upon this motion, I would point them

12  out.  I think the purpose of asking the Court to take

13  judicial notice of the docket, generally, is not so much for

14  any particular filing, but rather, the overall complexity of

15  the case from beginning to end.

16          The sheer number of Rule 2004 motions that have

17  been filed, the objections and motions for contempt, and all

18  of the related proceedings that are already part of the

19  record from the prior hearings on the two prior motions, I

20  don't have all of those docket references handy, but they are

21  in the record from the prior proceedings before this Court.

22          I would also refer to the Court to -- I don't have

23  the citations handy -- but the trustee testified about four

24  Rule 2004 motions, for example, that he's filed since August

25  of 2024.  I could certainly find those ECF references, but

1   I'd imagine that they are easy enough to identify.

2           And then, beyond that, Your Honor, I think the

3   record, in terms of the activity and litigation that the

4   trustee has been pursuing in various adversary proceedings,

5   all of that factors into the record that we think is relevant

6   for the Court to consider on this motion.  I'm happy to talk

7   more about that during argument.

8           THE COURT:  Okay.  Thank you.

9           Do any of the counsel opposing the motion have any

10  requests of the Court with regard to judicial notice of any

11  documents in the docket of this main case, or any other

12  requests, for that matter?

13          MR. SKLARZ:  None from me, Your Honor.

14          THE COURT:  Okay.  Thank you.

15          MR. YAN:  None for Apple and Meta, Your Honor.

16          THE COURT:  Thank you.

17          MR. LADDIN:  No, Your Honor.

18          MR. CONWAY:  No, Your Honor.

19          THE COURT:  Okay.  Thank you.

20          All right.  So, Attorney Bassett, then, would you

21  like to continue with your argument?

22          MR. BASSETT:  Yes, Your Honor; I'll approach with

23  that, if that's okay?

24          THE COURT:  Go right ahead.

25          MR. BASSETT:  Thank you.

1          (Pause)

2          MR. BASSETT:  So, Your Honor, given that we are

3    here for the third time own a motion seeking substantially

4    similar relief as that which the trustee has requested and

5    the Court has granted on two prior occasions, I will try to

6    be brief and I will try not to repeat ground that has already

7    been covered.  But just very, very briefly, by way of

8    background, in Your Honor's last two extension orders, the

9    Court concluded over the objection of parties, including some

10   of those present today, that Federal Rule of Bankruptcy

11   Procedure 9006(b) provides a basis to extend the deadlines

12   set forth in Sections 108(a), 546(a), and 549(d) of the

13   Bankruptcy Code for cause shown.

14          And accordingly, thereafter, based on a finding

15   that the trustee had demonstrated cause, granted two

16   successive, six-month extensions, excuse me, for of the

17   period to commence avoidance claims.  The Court further

18   denied, without prejudice, in its both of its prior orders,

19   the trustee's request for equitable tolling, which the Court

20   noted it would consider if and when appropriate; in

21   particular, adversary proceedings commenced by the trustee.

22          Your Honor, the trustee believes that the Court

23   should reach the same result today that it reached on two

24   prior occasions because the trustee has, again, I would

25   submit, an established good cause for a further, six-month

1    extension of the deadline until August of 2025.  And, Your

2    Honor, the objecting parties, in our view, have provided no

3    basis for the Court to revisit its prior decisions.

4           Your Honor, on a question of good cause, as the

5    Court is well aware, again, I'm referring to the record that

6    was presented by the Court at the last two hearings, the

7    record presented today, and the overall docket in this case,

8    there's a years-long record, spanning more than 4,000 docket

9    entries, which provides ample good cause for demonstrating

10   why an extension is necessary, given the extremely unique

11   circumstances of these case.  Those extremely unique

12   circumstances involve a debtor who has failed to cooperate

13   from the inception of his Chapter 11 case, including at every

14   step of the way, since the trustee's appointment.  There have

15   been no books and records produced to the trustee.  The

16   trustee has faced an uphill battle from the very beginning,

17   as the record demonstrates, from obtaining discovery there

18   parties associated with the debtor, including his family

19   members and all of that, as the trustee testified today, has

20   continued to affect his investigation today.

21          Where we are today, Your Honor, is not -- cannot

22   be divorced from where we were and how we got here.  The

23   progress, or lack thereof in some cases, that the trustee has

24   been able to make, is a direct result of the challenges he

25   has faced from the inception of this very, very unique, and I

1  would submit, unprecedented Chapter 11 case.

2         In terms of the arguments raised by the

3  Defendants, I'll try to tick through them and obviously

4  reserve the right to respond after counsel makes their

5  presentations.  Certain of the Defendants take the

6  opportunity in response to the trustee's motion to really

7  just re-argue the same issues that the Court had already

8  considered and rejected on two prior occasions.  More

9  specifically, they argue to the Court that Rule 9006(b)

10  cannot be used to extend the limitations periods set forth

11  in 108 and 546 of the Bankruptcy Code.

12         Your Honor grappled with this in detail in

13  granting the first extension motion and then incorporated

14  that same analysis into Your Honor's second extension motion

15  order.  The Court, more specifically, carefully reviewed the

16  text of Rule 9006(b) and concluded, consistent with the

17  Eleventh Circuit's decision in the IBT International case,

18  that the rule can, in fact, be used to extend the limitations

19  periods.

20         In reaching that decision, the Court acknowledged

21  some decisions going in the other direction, including from

22  judges in this district, but ultimately agreed with the

23  Eleventh Circuit.  And in coming out the way Your Honor did,

24  as you will recall, you discussed, and in our view,

25  appropriately recognized that the deadlines in Sections 108

1 and 546 are not statutes of repose, but rather, are statutes

2 of limitation, and as statutes of limitation, they can be

3 tolled or extended for equitable reasons.

4          On that basis, the Court found that the argument

5 raised by certain Defendants concerning the Rules Enabling

6 Act was not a valid basis to provide or to deny the trustee's

7 motion because what the Rules Enabling Act says is that rules

8 of procedure may not enlarge a substantive right.  And, of

9 course, if the limitations period set forth in the Bankruptcy

10 Code are not substantive, they are not statutes of repose,

11 but rather, are statutes of limitation, then it is

12 appropriate within the equitable jurisdiction of the Court to

13 extend those deadlines under appropriate circumstances.

14          Now, despite that thorough analysis, I won't re-

15 hash all of the various considerations that the Court raised

16 in its extensive analysis of the issue in the two prior

17 decisions, but despite that, the Defendants really take a

18 second bite at the apple and they, for the most part, cite to

19 case law that they cited before and make the same arguments.

20 They cite to the In re Cramer case from the Central District

21 of California to support their position that Rule 9006(b), in

22 their view, should not be allowed to extend the limitations

23 period.  But as the Court appropriately recognized in its

24 prior decisions, that case is distinguishable, because as the

25 Court recognized there, it was primarily dealing with a

1  situation where it was concerned about the lack of notice to

2  potential Defendants.

3         Here, the Court recognized that that was not the

4  case because the trustee has provided extensive notice to all

5  parties.  The trustee has done, again, what he has done

6  before.  He's provided notice to all parties via ECF.  To the

7  list of parties who are not available via ECF -- who are note

8  on ECF, by mailing, and to all Defendants in the various

9  adversary proceedings that the trustee has already commenced.

10         Certain of the Defendants, Your Honor, cite to a

11  decision that I don't believe they cited before; it's the In

12  re American Purchasing Services case from the Southern

13  District of Florida Bankruptcy Court in November of 2022.

14  And the way they characterize that decision, Your Honor, is

15  they say that in that case, which, of course, sits in the

16  Eleventh Circuit, they say that the Bankruptcy Court there

17  refused -- and this is a quote from their papers, "Refused to

18  apply otherwise binding Eleventh Circuit precedent --"

19  that's the IBT International case that the Court relied on --

20  "because of its flaws."  That's what they said.  The

21  Bankruptcy Court there declined to apply that case because of

22  its flaws.

23         Your Honor, that's not remotely what that decision

24  says.  The Bankruptcy Court in that case expressly

25  acknowledged that the IBT International is, of course,

1   binding authority in the Eleventh Circuit, but also

2   recognized, as we agree, that it does not provide a, that the

3   Court's analysis in that case of Rule 9006(b) does not mean

4   that it's appropriate in all circumstances to extend the

5   limitations periods under the Bankruptcy Code, but rather,

6   granting that relief should be limited to appropriate

7   circumstances where it is justified under the facts and

8   circumstances of the case.  And the Defendants then go on to

9   say, Well, that case involved circumstances that are, I think

10  they say, "nearly identical" to the circumstances at issue in

11  our case.

12           Your Honor, I've read that case a couple of times.

13  I'm not sure which decision they are reading.  It must be a

14  different one than I'm reading, because it is hard to imagine

15  a case that is more different from the facts that we have

16  here.  In that case, Your Honor, the Court expressly observed

17  in distinguishing the IBT Services [sic] case from the

18  Eleventh Circuit or IBT International case, rather, Your

19  Honor, from the Eleventh Circuit, in that case, in the

20  bankruptcy case, there were, as the Court said, nothing --

21  this is a quote from the Court:

22           "There is nothing that presents facts similar or

23  even remotely close to the facts of the Eleventh Circuit's

24  decision."  The Court went on to say that there was nothing

25  in the record that shows that anyone has been stymying

1    discovery efforts of the trustee, no motions to compel on the

2    docket, no orders to show cause or contempt orders against

3    any of the litigation targets or against anyone else that may

4    be involved in or the subject of the trustee's

5    investigations.

6            In fact, the only reason in the <u>American</u>

7    <u>Purchasing Services</u> case that the Defendants rely on that the

8    trustee gave for its requested extension, was that the

9    trustee was trying to negotiate funding for litigation with

10   its secured creditor in that case and had not been able to

11   finish negotiating that funding and, therefore, asked for

12   more time.  Completely different circumstances from the facts

13   in this case.

14           Our case involves a robust, extensive record of

15   obstruction, of other difficulties and challenges that the

16   trustee has faced at every turn in his investigation, and

17   truly extraordinary circumstances that have led him to not be

18   able to finish unwinding the tangled web of the various

19   entities and individuals associated with the debtor by this

20   point in the case.

21           There was absolutely none of that in the case

22   cited by the Defendants and for that reason, it, frankly,

23   deserved a different outcome.

24           Your Honor, just to tick through a couple of the

25   other arguments that the -- but before moving on, I just want

1  to, I want to point out there is one new decision that is

2  also, incidentally, from the Southern District of Florida

3  that the trustee cited in his papers.  This is the <u>Teras</u>

4  <u>Breakbulk Ocean Navigation Enterprises</u> case at 658 B.R. 611,

5  where that Court granted an extension of the limitations

6  period under Rule 9006, and in doing so, it was confronted

7  with a record that is, in fact, very similar to the record

8  before the Court.

9         In particular, the basis for the extension there

10  included that the debtor's principal had engaged in

11  fraudulent concealment, which impacted the time that the

12  avoidance actions could be brought in and the debtor's

13  principal had also set up numerous entities all over the

14  world which, you know, allowed for his transfers of assets.

15  So, Your Honor, similar circumstances to those that we're

16  confronted with here, which again, support the relief that

17  the trustee is requesting.

18         Your Honor, to briefly touch on a couple of the

19  other arguments raised by the Defendants, and this sort of

20  permeated some of the questioning that you saw on cross-

21  examination, but G Club and the other clients of Attorney

22  Sklarz seemed to be making the argument to the Court that,

23  well, it's not appropriate to continue extending the

24  limitations period as against those specific entities or

25  Defendants because they, themselves, have not done anything

1   in the last six months to hinder or obstruct the trustee's

2   investigation.

3          I take issue with whether that's a true statement,

4   but it's also beside the point, Your Honor.  The Court has

5   already recognized, and this is at page 13 of the first

6   extension order at ECF 2921, that the focus is not on whether

7   or not particular Defendants have necessarily engaged in

8   conduct that has prevented the trustee from bringing, in a

9   timely manner, the claims against those parties; the analysis

10  focuses on, in a case like this especially, whether the

11  debtor and other parties associated with the debtor or other

12  sources of information within the Chapter 11 case have

13  delayed or obstructed the trustee's investigation and whether

14  there are other factors beyond the trustee's control that

15  have rendered him unable to bring avoidance claims as soon as

16  he would otherwise like to.  So I think the Court has already

17  dispensed with that particular argument.

18         The last point I would make, Your Honor, certain

19  of the Defendants claim that if this third extension is

20  granted by the Court, when is it ever going to end?  And they

21  appear to be making the point that this is going to set a

22  dangerous precedent, I guess, in their view.  I have two

23  responses to that.  First of all, the trustee addressed that

24  when he was testifying; we've addressed it in our papers.

25  The trustee is hopeful, we are very hopeful as a team

1  supporting the trustee, that we will not, in six months from

2  now, need to seek another blanket extension of the deadline

3  to commence avoidance actions.

4          On a case-by-case basis, there may be additional

5  actions that we need time to pursue.  There may be categories

6  of Defendants, depending upon where we are, but in terms of a

7  blanket extension like the one that we have requested the

8  last two times, we are very hopeful and currently anticipate

9  we will not need to seek that relief again.

10          The other point, Your Honor, is that, and I think

11  this bears emphasizing so often in this case, this really is

12  an extraordinary Chapter 11 case that, and I think I said

13  this at the last hearing, is unprecedented in that I don't

14  know if there's ever been another case quite like this one,

15  involving a debtor who professed to be a billionaire, filed

16  for bankruptcy claiming to own nothing, and has never

17  provided any schedules of his financial affairs.

18          And those circumstances, it has been an uphill

19  battle, to say the least, for the trustee to complete his

20  investigation and to bring the types of claims that he's

21  entitled to bring under the Bankruptcy Code.  And so any

22  decision that the Court has entered, including the last two

23  that it has already entered in agreeing to extend the

24  limitations period, I think are necessarily going to be

25  limited to the very, very unique circumstances of this case.

1  We think there is cause to grant the further extension that

2  the trustee has sought and we would respectfully ask that the

3  motion be granted, Your Honor.  Thank you.

4            THE COURT:  Thank you.

5            Attorney Sklarz, would you like to respond?

6            MR. SKLARZ:  Thank you, Your Honor.

7            Your Honor, in our papers, we focused --

8  obviously, we acknowledge and we've appealed twice from the

9  prior extension rulings -- we acknowledge the state of the

10  law and we focused our papers on that.

11            In Your Honor's prior rulings, you've indicated

12  that the Court is reviewing the very specific and

13  extraordinary facts of this case.  What are the very specific

14  facts and -- specific and extraordinary facts that have

15  occurred over the last six months?  We have heard no new

16  ones.  It's that Mr. Kwok is not assisting with the trustee's

17  investigation.  He's never assisted with the investigation

18  and he never will.

19            He's sitting in jail.  He's been convicted of a

20  crime and he's never going to help.  So I suppose in the

21  trustee's view that will, when they're here six months from

22  now with a blanket extension or a slightly frayed blanket

23  extension or whatever they're talking about, that will be a

24  refrain again.

25            Trustee Despins said something interesting in his

1   direct examination that it would be perverse for people to

2   get away with conduct because of a technicality.  Well, the

3   technicality is called a "statute of limitations" and it was

4   imposed by Congress.  There should be some value in that

5   view, particularly for my clients who've already been sued.

6          This isn't -- whether there are claims against

7   other parties out there or not, my clients have all been sued

8   already.  The trustee has recourse under existing doctrines

9   on relation back rules and other doctrines.  There's no

10  reason to extend the statute of limitations against parties

11  who've already been sued, particularly when the trustee just

12  said on examination, he intends to bring all additional

13  claims against all new parties forthwith before

14  February 15th.  What are the very specific and extraordinary

15  facts that require a further extension of time, as to my

16  clients?

17         The other arguments raised relate to the "Russian

18  nesting doll" argument analogy made by Trustee Despins or

19  what they refer to in their papers as "pulling the thread."

20  It is a truism of life that we will all know tomorrow more

21  than we know today; that is always the case.  But that cannot

22  be a basis to perpetually extend the statute of limitations.

23         We will always know more.  There's always more to

24  investigate.  In every case every lawyer in this courtroom

25  has ever litigated, we wish we did something else; we wish we

1  knew more yesterday than we knew today.

2  Under Your Honor's ruling, it can't be cause that

3  there's a lot of work to do.  We've done a lot of work, but

4  there's a lot more work to do.  That is always the case in

5  any significant piece of litigation.

6  The cases relied upon by the trustee and relied

7  upon by Your Honor in the prior rulings do not discuss

8  blanket rulings -- blanket extensions of time in succession.

9  I haven't found a case where there's multiple, where there's

10  three or more extensions of time.  The Fundamental Long Term

11  Care Court, in fact, gave the trustee 30 days from the close

12  of discovery in a pending adversary proceeding, not the one-

13  year extension they ask for.  And the other cases were short

14  extensions.

15  The trustee has had a year and is asking for

16  another six months.  The entire statute of limitations

17  under 546 is two years from the petition date.  Where does it

18  end?

19  The trustee points to good cause as a years-long

20  record and 4,000 document entries and extremely unique case.

21  These are, again, the same thing that have been said before

22  and will be able to be said by the trustee until the case

23  closes.  It cannot be that a condition that always exists is

24  extraordinary.

25  What are the specific facts?  Your Honor heard the

1    evidence; there are no specific facts that meet the standards

2    Your Honor set forth:  very specific in extraordinary facts.

3    There are general and non-extraordinary facts that have been

4    proffered.

5          While whatever Mr. Kwok did was certainly

6    complicated, while Mr. Kwok may not have cooperated, he

7    hasn't cooperated for years at this point; moreover, there's

8    no assurance that the trustee won't be back here again.

9          Your Honor analogized the reason why the extension

10   motion was granted initially to, essentially, equitable

11   tolling; this is on page 15 -- I'm sorry -- page 13 of your

12   initial ruling:

13         "The equities to consider in determining whether

14   to extend or toll a statute of limitations in bankruptcy

15   proceedings often involve whether the debtor failed to

16   cooperate with the bankruptcy trustee or, indeed, sought to

17   impede the trustee's investigation and liquidation of the

18   assets for the benefit of creditors."

19         That is a ruling that Your Honor made

20   approximately one year ago.  That was the case -- that will

21   always be the case, according to trustee.

22         There have to be guardrails.  There have to be

23   limiting events.  It can't just be that the situation is the

24   same because then it is not extraordinary.  We've heard no

25   facts today that justify a further extension of the statute

1    of limitations under Your Honor's initial ruling.  Thank you.

2              THE COURT:  Thank you.

3              Attorney Laddin, do you wish to be heard or make a

4    closing argument?

5              MR. YAN:  May I be heard, Your Honor?

6              THE COURT:  Sure.

7              MR. YAN:  Thank you.

8              May I approach?

9              THE COURT:  Yes, please.

10             MR. YAN:  Thank you.

11        (Pause)

12             MR. YAN:  Good afternoon.

13             Again, for the record, Jin Yan on behalf of Apple

14   and Meta.  Just a couple points.

15             THE COURT:  You didn't make any opening

16   statements, so you're just making your closing arguments

17   here, correct?

18             MR. YAN:  That's correct, Your Honor.

19             THE COURT:  Go right ahead.

20             MR. YAN:  Sure.

21             So we talked about 9006, but the trustee's motion

22   also asks for relief under 105, so I just want to address

23   that briefly.  Under Law v Siegel, which is a United States

24   Supreme Court decision from 2014, 105(a) can't be used to do

25   something that the Code prohibits.  The test of the statute

1   says it's supposed to carry out the purposes of the Code and

2   the provisions of the Code.  And so, here, to use 105(a) to

3   extend the statute of limitations is not enforcing those, but

4   rather, abrogating those, so we don't think 105(a) applies at

5   all.

6          With respect to Rule 9006 and the analysis that

7   Your Honor conducted, as trustee's counsel talked about,

8   American Purchasing Services, which is a bankruptcy decision

9   from the Southern District of Florida in 2022, has two core

10  reasonings that, I think, apply here.  The first is that it

11  limited the Eleventh Circuit's IBT decision to circumstances

12  where the target of the avoidance action or whatever

13  litigation that the trustee seeks to bring, is the one that's

14  responsible for the delays and the trustee's inability to

15  timely commence those actions.

16         The second point that American Purchasing Services

17  makes is that entities that transact with the debtor have a

18  commercial and a legal expectation that they're exposure will

19  end two years later and that trumps whatever the trustee's

20  proffered rationale is for getting an extension.  And, in

21  fact, Your Honor, the Teras Breakbulk case that came out of

22  the District Court in 2024 is entirely consistent with that.

23  Because in that case, the target was the principal of the

24  debtor, who was accused of fraudulently concealing assets.

25  So, there, as well, you have an instance with the target of

1    litigation was the one who prevented a litigation from being

2    filed in a timely manner and, as a matter of equity, it does

3    make sense to extend statutes under the Eleventh Circuit's

4    reasoning, so that they're not rewarded, those targets and

5    those bad actors are not rewarded for their actions.

6              Here, we have a situation where no one is

7    accusing, at least not Apple and Meta, of having delayed the

8    trustee in any way in his discovery.  If punishing entities

9    that are affiliated with Mr. Kwok is akin to punishing the

10   son for the since of the father, I guess the analogy here

11   would be punishing the grocer for something that a customer

12   did.  We have no connection to the acts of Mr. Kwok and his

13   affiliated entities.

14             The final point I want to make is that with

15   respect to two -- 546 -- sorry -- 546 and 539, those statutes

16   of limitations, but 108 is not.  As we said in our brief,

17   courts have recognized that 108 is a tolling statute and it

18   doesn't make sense to do what the trustee is asking, which is

19   to toll a tolling statute.

20             And for all those reasons, we would respectfully

21   ask the Court, deny the trustee's extension, if not on a

22   blanket basis, at least with respect to our clients, Apple

23   and Meta.  Thank you.

24             THE COURT:  Thank you.

25             Attorney Laddin?

1           MR. LADDIN:  Thank you, Your Honor.

2           Again, for the record, Darryl Laddin of Arnall

3    Golden Gregory, on behalf of American Express Company.

4           Your Honor, the amount at issue already, as to

5    American Express Company, is a large sum.  They are alleged

6    to have received $5.79 million in transfers voiding under 549

7    in Adversary 24-05077.  We are part of the omnibus defense

8    group and, obviously, the Court has the issues raised in that

9    motion under consideration.

10          I recognize that the Court has obviously taken up

11   prior versions of this motion and that there, obviously, you

12   know, have been other objecting parties, so I will try to be

13   brief.  I do want to point out at the outset, though, that

14   the order that is sought here is slightly different from the

15   two prior orders entered by the Court and that was not

16   mentioned in closing by Mr. Bassett.

17          So, in the third motion, the trustee inserted into

18   the proposed order, a new paragraph and it states that any

19   party that has received notice, whether actual or

20   constructive, of the motion and did not object to the motion,

21   has waived its right to assert a limitations-period defense

22   if ultimately named in an action that is timely brought under

23   the terms of this order.  And, obviously, on behalf of

24   American Express Company, we timely filed our objection.

25          Again, in the interests of efficiency, I'm just

1  going to cover a limited number of issues.  We do join in the

2  other objections that have been made and the comments to the

3  Court.

4       We're certainly aware that the trustee primarily

5  relies on, and this Court has cited the Eleventh Circuit's

6  decision in IBT International where the Eleventh Circuit did

7  find that the Bankruptcy Court had discretion to extend the

8  statute of limitations by motion; however, the Eleventh

9  Circuit cited no statutory authority permitting the Court to

10  extend the statute of limitations because that authority

11  doesn't exist.  Most of the opinion was focused on equitable

12  tolling.

13       And there's been some discussion of the American

14  Purchasing Services case by both, Mr. Bassett and by the

15  objectors.  That case is interesting in that it does have

16  relevance to this case for other reasons than have already

17  been mentioned, as well.  So, there's a footnote in that case

18  that points out specifically that the Eleventh Circuit's

19  decision has been criticized in Colliers as, quote,

20  "involving some convoluted reasoning."

21       And that is a comment that really is also picked

22  up on in an earlier decision that was cited by the trustee,

23  Fundamental Long Term Care.  That was another Florida

24  decision following the IBT case where the Court, there, also

25  seemed to find that decision confusing.  And in Fundamental

1  Long Term Care, it is worth pointing out that there were a

2  limited number of targets.  They were specifically identified

3  and they were already Defendants in pending adversary

4  proceedings.  And the Court relied in that case, which is

5  cited by the trustee on equitable tolling grounds, and

6  pointed out that the trustee's efforts had been delayed due

7  to the targets' active opposition.

8          And, of course, Counsel just pointed out, there's

9  been a focus in these cases on whether the targets obstructed

10 discovery.  And there's no evidence here, obviously, just as

11 there was no evidence for Apple or Meta, there's no evidence

12 that American Express Company has somehow constructed --

13 obstructed the investigation.

14         The Court, there, in the American Purchasing case

15 also did point out, as mentioned, that the Eleventh Circuit

16 decision was pre Law v Siegel, in that that pre Law v Siegel

17 jurisprudence permeates that decision.

18         Your Honor is already aware there are numerous

19 courts that conclude that 9006 cannot be used, 9006(b) cannot

20 be used to grant the relief that's been requested.  Counsel

21 referred to the Cramer case; respectfully, while the Court

22 may disagree with Cramer, the legal conclusion, I think, is

23 not distinguishable in that case.  As explained in Cramer and

24 other decisions similar to it, the appropriate relief for the

25 trustee under these circumstances is to seek equitable

1 tolling of the statute if and when the trustee identifies

2 future Defendants.

3        And I think that's something that Mr. Despins

4 acknowledged, that if the facts give rise to a claim for

5 equitable tolling, he can go ahead and bring that.  We can

6 argue about that later.

7        The Court in Cramer, I will just highlight for

8 this Court -- again, I know Your Honor has read the decision

9 multiple times, I'm sure -- observed that the Bankruptcy

10 Court decision in, In re Walnut Hill was well-reasoned and

11 directly on point.  And, obviously, Judge Tancredi's decision

12 is not binding authority; Your Honor's considered that.  I

13 just want to simply note that we believe that Judge Tancredi

14 was correct, you know, when he said that, quote:

15        "The plain language of Rule 9006(b) prohibits this

16 Court from enlarging the Section 546(a) statute of

17 limitations."

18        And, again, looking at the statute, because I

19 didn't hear much about the statute and, obviously, again, I

20 know that there have been prior motions, but 9006(a) does

21 refer to statutes and as Judge Tancredi recognized, 9006(b)

22 is plainly missing the language that would apply it to

23 statutes.  So I don't think even if one wanted to rely

24 on 9006, you can't rely on 9006(b) because it doesn't include

25 the word "statute."  And there have been a number of other

1   decisions, which I will not go through here, that are cited

2   in the papers on that precise issue.

3           It is also notable that there is another provision

4   in 9006(b)(3) that does expressly permit a time period

5   prescribed by a section of the Code to be enlarged under the

6   Rule and it refers to Section 1116(3) of the Code, which

7   specifically -- this Code section specifically contemplates

8   an extension of time to file schedules.  So the authorization

9   there to alter the time limit is built into the statute and

10  the Rule does not trump the statute.  That demonstrates,

11  obviously, that drafters of the Rule knew how to draft in

12  exemptions to prohibitions and that Congress also knew how to

13  authorize the Judiciary to make modifications to time

14  limitations.

15          Your Honor, we echoed Judge Tancredi's recognition

16  that it's Congress that passed the limitations period in the

17  Code and when Congress has spoken, Congress has spoken; it's

18  made the determination.

19          Of course, Section 546 may be subject to an

20  equitable tolling argument, but that's an argument that needs

21  to be made in the right context.  So if Your Honor denies the

22  motion, that does not mean the trustee cannot ever bring

23  these causes of action; it means he needs to deal with them

24  in the context of the specific facts relating to these

25  specific Defendants.

1           And as to existing Defendants, such as American

2    Express Company, that's also consistent with the appropriate

3    procedure or amendment of the complaint, which is file a

4    motion for leave under Rule 15 and establish that the cause

5    of action relates back or that equitable tolling applies.

6           So, for those reasons, Your Honor, we respectfully

7    request that the Court either deny the motion or except

8    American Express from the order's effect.  Thank you.

9           THE COURT:  Thank you.

10          MR. LADDIN:  Thank you, Your Honor.

11          THE COURT:  Thank you.

12          Attorney Conway?

13          MR. CONWAY:  Thank you, Your Honor.

14          Michael Conway for various, previously identified

15   parties.

16          We join, obviously, in what's been stated so far

17   and the various other pleadings that are on the record in

18   terms of objecting to the motion.  I don't want to get into

19   the legal basis now.  I think Your Honor has made it clear,

20   as far back as the first time you extended the time to bring

21   adversary proceedings, that you believed that there was this

22   exception that applied here.  As a matter of law, I don't

23   think it does.

24          However, let's just focus for a moment on the IBT

25   Holdings [sic] cause.  There's some possibility that we can

1   ignore the law and focus on whether there's a specific cause

2   in this particular case for extending.  And what we heard

3   today was really -- and the same thing we've heard in the

4   past -- we didn't get everything done we needed to get done.

5   We don't believe we should be able to do this forever,

6   because that wouldn't be appropriate, but just give us one

7   more chance.

8          And there was the discussion about, well, we won't

9   come back and ask for a blanket exception next time; we'll

10  make it specific to the claims or categories of Defendants,

11  which is just another way of saying in this situation that

12  we'll ask for a specific order next time that gives us the

13  same exact rights in terms of an extension.  We also know,

14  based on that, we will be here again, Your Honor.

15         The fact is we need it to end.  And we didn't hear

16  from the trustee that there was any real cause that you would

17  expect in a normal bankruptcy case.  Now, obviously,

18  Mr. Bassett says this is not a normal case.  It's fairly

19  consistent with almost every sort of case where you're

20  dealing with an individual accused of committing fraud on the

21  general public, whether it be Ponzi scheme or otherwise.

22         But let's just say for a moment that it's

23  different, like Mr. Bassett suggested.  Well, that, in and of

24  itself, doesn't justify the extension of time; in fact, it's

25  that difference we want to focus on right now.  What the

1  extension of time would normally give is an extension of time

2  to find transactions relating to a debtor's assets.

3       And Your Honor knows me from other matters in this

4  case, and I've said this before and I'll say it again here,

5  that's not what we're doing.  We're not looking to find

6  Mr. Kwok's assets and bring them back in the estate.

7       What the trustee is suggesting to Your Honor is

8  that he needs more time to go out and find inappropriate

9  transactions that occurred between some third party that

10  assisted him in committing fraud on a third party, who then

11  took that third party's money and transferred it to another

12  third party.  And the trustee wants to go out and find those

13  transactions and then bring that asset back into the estate,

14  even though it was never this debtor's asset to begin with.

15       So, what we have is not just a request for an

16  extension to have time; we have an request for an extension

17  of time to do something that's fundamentally inappropriate:

18  to go out and do the Department of Justice's job.  And, you

19  know, while the Eleventh Circuit may have said that there are

20  circumstances whereby the debtor con seals his own assets or

21  her own assets or its own assets, the Eleventh Circuit never

22  said that a trustee in bankruptcy is supposed to be deputized

23  to go out and rectify issues relating to non-debtor parties,

24  as amongst non-debtor parties.

25       That's not -- let me step back -- I don't think

1  it's ever appropriate to do what's being asked her today;

2  it's just fundamentally, you know, not supported by the law.

3  I say that with all due respect, Your Honor, because you've

4  said the opposite in your previous rulings; however, when you

5  apply it to circumstances like this when we're not even

6  dealing with the debtor's assets, it becomes even more

7  fundamentally wrong.

8             Thank you, Your Honor.

9             THE COURT:  Thank you.

10            Anything further, Mr. Bassett?

11            MR. BASSETT:  Very briefly, Your Honor.

12       (Pause)

13            MR. BASSETT:  Your Honor, again, for the record,

14  Nick Bassett from Paul Hastings on behalf of the Chapter 11

15  Trustee.

16            Your Honor, there was obviously a lot of

17  discussion by counsel of the case law of Rule 9006(b) of

18  Judge Tancredi's decision and of all the other issues that

19  this Court has already grappled with in entering its two

20  prior orders.  I'm not going to revisit those discussions,

21  other than to say that the law has not changed.  There have

22  been no new decisions that any party has pointed the Court to

23  that should compel a different conclusion than that which the

24  Court has already reached.

25            I do want to briefly address one of the points

1    that Attorney Sklarz was making and just, in particular, his

2    focus on, you know, what have we seen that has happened since

3    August of 2024 that justifies the extension.

4         Two responses to that.  Your Honor, first, as I

5    said, as the trustee said, and as I will say again, you

6    cannot look at the state of the trustee's investigation in a

7    vacuum that is limited to August 2024 forward.  The state of

8    the trustee's investigation and the progress that we've been

9    able to make to date is a direct result of everything that

10   has occurred in this case since the trustee's appointment.

11        In addition to that, Your Honor, even if you were

12   to focus on the things that have happened since August

13   of 2024, there's multiple evidence in the record to support

14   good cause for further extending a limitations period.  Just

15   to very briefly recap some of the things that the trustee

16   said, this is not a situation, to be very clear, Your Honor,

17   where additional evidence has continued to trickle in and

18   then, according to Attorney Sklarz, you know, that could

19   always happen indefinitely.

20        This is a situation where we're talking about 27

21   new parties that the trustee has identified in the last six

22   months and subpoenaed; tens of thousands of pages of

23   documents that and his team have received and undertaken the

24   process to review; over 55,000 new bank accounts that the

25   trustee has to look through and try to figure out 55,000 --

1  not bank accounts -- 55,000 transactions in over 200 accounts

2  that the trustee and his team has needed to sit through and

3  figure out how they fit together and whether any potential

4  claims can be brought based upon those transactions; and then

5  the trustee described, in detail, the extensive investigation

6  he's now conducting overseas in places like the UAE and

7  Switzerland and the United Kingdom.

8          Your Honor, there's ample evidence in the record

9  to demonstrate good cause for a further extension.  I submit

10 that's the only issue before the Court because all the legal

11 issues that have been presented to the Court today are ones

12 that Your Honor has correctly already decided and decided in

13 the trustee's favor.

14         So, with that, Your Honor, we respectfully request

15 that the motion be granted.  And that's all I have, unless

16 the Court has any questions?

17         THE COURT:  I do not have any questions, thank

18 you.

19         MR. BASSETT:  Thank you, Your Honor.

20         THE COURT:  Attorney Sklarz, do you have any -- or

21 anyone, on behalf of the objecting parties, have any further

22 comments?

23         MR. SKLARZ:  Nothing further, Your Honor.

24         THE COURT:  Okay.

25         MR. YAN:  Your Honor, I just have one point I just

1  wanted to point out for the Court.

2          May I approach?

3          THE COURT:  Sure.

4      (Pause)

5          MR. YAN:  Your Honor, I just have one comment,

6  which is that the Teras Breakbulk case that the trustee cited

7  from --

8          THE COURT:  Would you just say it again so I know

9  exactly -- I think I know what you're talking about, but it

10  will be helpful for the record, too, please.

11          MR. YAN:  Sure.

12          This is the Teras Breakbulk case --

13          THE COURT:  Okay.

14          MR. YAN:  -- from the Southern District of

15  Florida, the District Court.

16          THE COURT:  After the IBT case, the one that

17  you've all been talking about --

18          MR. YAN:  Correct, Your Honor.

19          THE COURT:  -- that was issued in 2022?

20          MR. YAN:  No, the one we were talking about is

21  American Purchasing Services; that one was a 2022 case.

22          THE COURT:  Okay.  So tell me this other case, I

23  apologize.

24          MR. YAN:  Sure.

25          This one is Teras Breakbulk --

1          THE COURT:  Okay.

2          MR. YAN:  -- from the Southern District of

3  Florida, the District Court in 2024.

4          THE COURT:  Okay.

5          MR. YAN:  I just wanted to note that that case is

6  on appeal to the Eleventh Circuit.

7          THE COURT:  Okay.  That's helpful to know, thank

8  you.

9          MR. YAN:  Thank you.

10          THE COURT:  Anyone else have any comments?

11      (No verbal response)

12          THE COURT:  I just note for the record -- I don't

13  know if I'm correct, so you'll all correct me if I'm wrong --

14  but no one appeared today on behalf of Amazon or Miller

15  Motorcars, did they?  I think they also objected to this --

16  to the trustee's request.

17          MR. LADDIN:  Your Honor, I think that's correct.

18          At least as to Amazon, do I recall that their

19  pleading indicated that they were going to rely on the

20  argument of myself and anyone else.

21          THE COURT:  Okay.  Thank you.

22          I just wanted to note for the record that although

23  they did file an objection, Amazon, Inc. and Amazon Web

24  Services filed an objection to the trustee's request at, in

25  the main case at ECF 4041, but that's helpful.

1        Attorney Laddin, I'm sure I saw that at one point,

2   but I don't recall that they said that, but I'm sure that

3   they did say that they would rest on their papers.

4        And Miller Motorcars filed an objection in the

5   main case at 40, ECF 4044, and I don't see anybody or heard

6   anybody from Miller Motorcars here today; is that correct?

7        (No verbal response)

8            THE COURT:  Anybody?

9        (No verbal response)

10           THE COURT:  Okay.  I just wanted to note that for

11  the record; otherwise, you all, that have been representing

12  the other objecting parties and I think I have all the

13  objections that were filed, then, based upon the people that

14  are here in court today and the filings that were made by

15  Amazon and Miller Motorcars.  Okay.  Thank you.

16       Obviously, I need to take a look at what you've

17  all said and I, as you all have acknowledged, I've obviously

18  entered two orders already granting this relief, but I do

19  need to go back to what everyone has said.  I've heard the

20  testimony of the trustee today.  I've heard arguments from

21  the trustee's counsel and from some of the objecting parties'

22  counsel.  You've talked about some case law that I definitely

23  know about.  Some, I know, exists, but haven't really had an

24  opportunity to read, so I need to read that and then I will

25  rule accordingly.

1          So, I will take the matter under advisement.

2  Today is February 11th.  You know, I hope to rule as soon as

3  possible.  I can't tell you when that'll be as I sit here

4  right now.

5          So, does anyone have any questions?

6      (No verbal response)

7          THE COURT:  Okay.  Seeing none, then the motion

8  for extension of time is -- to extend the time limitations, I

9  should say, is under advisement.

10         That is the last matter on today's calendar in the

11  case.  Is there anything else anyone needs to address before

12  we adjourn court?

13         MR. DESPINS:  No, Your Honor, not from our point

14  of view.

15         THE COURT:  Anyone?

16      (No verbal response)

17         THE COURT:  Okay.  Well, thank you, all.

18         Court is adjourned.

19         MR. BASSETT:  Thank you, Your Honor.

20         THE DEPUTY:  All rise.

21         Court is adjourned.

22      (Proceedings concluded at 2:53 p.m.)

23

24

25

1                        CERTIFICATION

2          I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter to the best of my

5   knowledge and ability.

6

7   /s/ William J. Garling                    February 24, 2025

8   William J. Garling, CET-543

9   Certified Court Transcriptionist

10  For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25