**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-50073 (JAM)<br><br>(Jointly Administered)<br><br>April 11, 2025 |

**MOTION OF THE SHERRY-NETHERLAND, INC. FOR AN ORDER DIRECTING DEBTOR GENEVER HOLDINGS LLC TO IDENTIFY A SOURCE OF FUNDING TO PAY MONTHLY POST-PETITION MAINTENANCE CHARGES**

The Sherry-Netherland, Inc. (the "Sherry-Netherland"), secured creditor of Genever Holdings LLC ("Genever (US)"), one of the debtors in these above-captioned jointly administered cases, hereby files this motion (the "Motion") for entry of an order, substantially in the form of the proposed order attached as **Exhibit 1** hereto (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), directing Genever (US) to identify a source of funding to pay ongoing monthly post-petition maintenance charges assessed by the Sherry-Netherland as the charges come due, in view of the nearly-depleted security deposit being used thus far to pay such charges. In support of the Motion, the Sherry-Netherland respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

**PRELIMINARY STATEMENT[2]**

1.      The Sherry-Netherland is a secured creditor of Genever (US). For more than four years, the Sherry-Netherland has supported Genever (US)'s efforts at rehabilitation through chapter 11. Genever (US)'s only remaining assets are its interest in the Apartment at the Sherry-Netherland and its right to recover against AIG for alleged breach of contract claims. For more than three years, Genever (US) has been attempting to sell its interest in the Apartment as its only realistic path to emerge from chapter 11. Although Genever (US)'s sale efforts were obviously hindered by the fire that broke out at the Building in early 2023, the remediation efforts are complete now and Genever (US) appears no closer to obtaining an executable offer for its interest in the Apartment.

2.      Meanwhile, the Sherry-Netherland has continued to perform all of the obligations it owes to Genever (US). And, to date, Genever (US) has likewise satisfied most (but not all) of its post-petition obligations to the Sherry-Netherland. As relevant to the Motion, and as previously authorized by the Court, the Sherry-Netherland has been able to draw down, on a monthly basis, on Genever (US)'s Security Deposit to cover post-petition maintenance fees assessed against Genever (US)'s interest in the Apartment. But the Security Deposit is a finite source of funds. And, because Genever (US)'s chapter 11 case has dragged on for more than four years, that source will be depleted entirely in June 2025.

3.      Through this Motion, the Sherry-Netherland seeks limited relief; specifically, an order directing Genever (US) to identify a source of funding to pay its ongoing monthly post-petition maintenance charges. The Sherry-Netherland has tried to get confirmation from Genever (US) that it will continue to stay current on its post-petition obligations even after the Security

---

[2] Undefined capitalized terms used in the Preliminary Statement are defined below.

2

Deposit runs out, but, to date, Genever (US) has not provided a satisfactory response. This is concerning. Genever (US) has already admitted that its failure to honor its obligations to the Sherry-Netherland will cause the estate irreparable harm and could lead to it losing its interest in the Apartment, its only remaining asset. And, other than the Security Deposit – which is nearly depleted – and the financing available to it under the DIP Order, Genever (US) has *no other access to cash*. Once the Security Deposit is fully depleted, Genever (US) should use the financing available to it under the DIP Order to continue paying its post-petition maintenance obligations and should, if necessary, seek to increase that financing. If Genever (US) is refusing to identify a source of funding to pay its post-petition obligations because it has no present ability to fund them and does not want (or cannot obtain) additional financing, that would raise serious questions about whether this case should be converted to chapter 7 or dismissed outright, again, a possibility Genever (US) has already acknowledged.

4.      The Sherry-Netherland does not want any of those outcomes to come to bear. But it must receive assurance from Genever (US) that there is a source of funding available from which it will be able to continue to pay its post-petition maintenance charges as they come due. If Genever (US) is unwilling to identify such a source voluntarily, the Court should order it to do so.

### JURISDICTION, VENUE, AND STATUTORY BASIS

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

6.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory basis for the relief requested in this Motion is section 105(a) of the Bankruptcy Code.

**BACKGROUND**

**I.    Genever (US)'s obligation to pay all rents, maintenance charges, and additional rents associated with its interest in the Apartment.**

8.      The Sherry-Netherland is a cooperative housing corporation and the owner of the land and the building in New York City known as "The Sherry-Netherland" and by the street address 781 Fifth Avenue, New York, NY 10022 (the "Building"). The Sherry-Netherland leases the apartments in the Building to the several owners of its capital shares by instruments known as proprietary leases.

9.      Genever (US) owns the shares of the Sherry-Netherland that have been allocated to the entire 18th floor of the Building, Apartment MR 2219, and Apartment MR 719 (collectively, the "Apartment").

10.     Genever (US)'s interest in the Apartment is governed by, among other documents, (a) the Proprietary Lease, dated March 6, 2015, from The Sherry-Netherland, Inc., Lessor, to Genever Holdings LLC, Lessee (the "Proprietary Lease"); (b) the Agreement and Consent with Respect to Shares and Proprietary Lease, dated as of the 6th day of March, 2015, by and between The Sherry-Netherland, Inc., Genever Holdings LLC, and Mr. Kwok Ho Wan a/k/a Miles Kwok a/k/a Miles Guo (the "Agreement"); and (c) the Security Deposit Agreement, dated March 6, 2015, executed by Genever Holdings LLC (the "Security Deposit Agreement").[3]

11.     Under the Proprietary Lease, Genever (US) is required to satisfy certain cash requirements, including the payment of monthly rent, maintenance charges, and additional rent based on its proportionate ownership of capital shares of the Sherry-Netherland. *See, e.g.*, Ex. 2 §§ 1.1, 1.2, 3.1. If Genever (US) defaults in its obligations to pay any due and owing rent,

---

[3] True and correct copies of the Proprietary Lease (**Exhibit 2**), the Agreement (**Exhibit 3**) and the Security Deposit Agreement (**Exhibit 4**) are annexed hereto.

4

maintenance charges, or additional rent, and then fails to cure such default, the Sherry-Netherland has the right to terminate the Proprietary Lease. *Id.* § 4.1. Upon termination, Genever (US)'s interest in the Apartment would be forfeited back to the Sherry-Netherland. *Id.* § 4.4.

12. Similarly, in the Agreement, Genever (US) reiterated its obligations to perform "all the covenants, terms, conditions, and other restrictions or duties specified in the [Proprietary] Lease." Ex. 3 § 2. And Genever (US) also "expressly covenant[ed] and agree[d], without limitation, to comply with the obligation to pay all installments of rent (as defined in the [Proprietary] Lease), additional rent, maintenance charges, assessments, and any and all other charges or sums due to [the Sherry-Netherland] payable under the [Proprietary] Lease." *Id.* § 3. If Genever (US) defaults on these obligations in the Agreement, the Sherry-Netherland has, among other remedies, "the right to terminate the [Proprietary] Lease." *Id.* § 11.

13. And finally, the Security Deposit Agreement requires Genever (US) to keep on deposit with the Sherry-Netherland an amount that "shall always equal sixty (60) times the then current monthly proprietary rent" allocated to Genever (US)'s interest in the Apartment. Ex. 4 at 1. Genever (US)'s failure to replenish its deposit with the Sherry-Netherland after receiving notice "shall be deemed a default under the [Proprietary] Lease." *Id.* at 2.

14. All of the Sherry-Netherland's shareholders are required to pay monthly maintenance charges based on their proportionate ownership of the Sherry-Netherland's capital shares. The Sherry-Netherland relies on the monthly maintenance payments it receives from its shareholders to pay for critical expenses of the Building, including property taxes, insurance, and mortgage payments. If any of the Sherry-Netherland's shareholders fail to pay their proportionate share of the maintenance charges as those charges come due, then the other shareholders are forced to cover the shortfall. Genever (US)'s non-payment of monthly charges would therefore cause

5

current Sherry-Netherland's shareholders to sustain a disproportionate burden of their own ongoing maintenance obligations.

II.  **Genever (US) will soon be unable to satisfy its post-petition maintenance obligations from the Security Deposit and thus risks forfeiting its interest in the Apartment.**

15.  Nearly four-and-a-half years ago, on October 12, 2020, Genever (US) filed a Voluntary Petition for Bankruptcy under chapter 11 of the Bankruptcy Code. Case No. 22-50592, Dkt. No. 1. Genever (US)'s only significant scheduled assets were its interest in the Apartment and the amounts then on deposit with the Sherry-Netherland (the "Security Deposit"). Case No. 22-50592, Dkt. No. 4, Part 12.

16.  The Sherry-Netherland has an allowed pre-petition secured claim in the amount of $1,096,186.54. Case No. 22-50073, Dkt. No. 2193 ¶ 11. That amount remains outstanding [and does not include interest owed to the Sherry-Netherland]. In addition, the Sherry-Netherland is also owed post-petition attorneys' fees under the Proprietary Lease and the Agreement, which likewise remain unpaid.

17.  The Sherry-Netherland has a valid and duly perfected security interest in and first lien (the "Sherry-Netherland First Lien") on the Apartment and Genever (US)'s interest in the Proprietary Lease to secure all obligations of Genever (US) to the Sherry-Netherland arising under the Proprietary Lease or otherwise, to the extent such obligations are incident to Genever (US)'s ownership interest in the Apartment and/or Genever (US)'s interest in the Proprietary Lease. *See, e.g.*, Case No. 22-50073, Dkt. No. 2110 ¶ 19; Case No. 22-50073, Dkt. No. 2193 ¶ 6(a).

18.  The Sherry-Netherland First Lien extends to all post-petition obligations Genever (US) owes to the Sherry-Netherland, including, but not limited to, Genever (US)'s obligations to pay all post-petition rent, maintenance charges, and additional rent due to the Sherry-Netherland.

19. The Court previously authorized the Sherry-Netherland to use the Security Deposit to satisfy the then-accrued and future monthly post-petition maintenance charges. Case No. 22-50592, Dkt. No. 107. But that was almost four years ago. And now, the security deposit is almost entirely depleted.

20. As of the filing of this Motion, only $157,390.12 remains of the Security Deposit, and the Security Deposit will be completely exhausted by June 2025.

21. Prior to filing this Motion, the Sherry-Netherland asked Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Individual Debtor"), how the Trustee intended to satisfy Genever (US)'s post-petition obligation to pay maintenance charges once the Security Deposit ran out. The Trustee is the assignee of the Individual Debtor's interests. As the assignee of the Individual Debtor's interests, the Trustee owns and controls debtor Genever Holdings Corporation ("Genever (BVI)"). Genever (BVI) wholly owns Genever (US). Accordingly, the Trustee is the proxy holder of Genever (US) and Genever (BVI) and authorized and required to act on their behalf. *See generally* Case No. 22-50073, Dkt. No. 2110 ¶¶ 20-24.

22. To date, the Trustee has not given the Sherry-Netherland a satisfactory answer as to how he intends to satisfy Genever (US)'s post-petition obligation to pay maintenance charges once the Security Deposit runs out.

23. If and when, as expected, Genever (US) fails to pay its proportionate share of the monthly maintenance charges imposed on all shareholders of the Sherry-Netherland for June 2025 (or at any time thereafter), Genever (US) will be in default of the Proprietary Lease and the Agreement. *See* Ex. 2 § 4.1; Ex. 3 §§ 2, 3. And, once Genever (US) is in default, the Sherry-Netherland's has the right to terminate the Proprietary Lease and cause Genever (US) to forfeit its

interest in the Apartment, Genever (US)'s only significant asset other than its pending litigation claims against AIG Property Casualty Company ("AIG"). *See* Ex. 2 § 4.4; Ex. 3 § 11.

24.     There is no dispute that this chain of events will cause Genever (US) to suffer direct and irreparable harm. Genever (US) made this very point to the Court when faced with the prospect of defaulting on other obligations it owed to the Sherry-Netherland. In the spring of 2023, Genever (US) sued AIG to prevent it from canceling five insurance policies issued to Genever (US), cancellations that, if allowed to go effective, would have resulted in Genever (US) defaulting on certain obligations under the Proprietary Lease. Case No. 23-05007, Dkt. No. 2 ¶¶ 20-23. Genever (US) filed a motion for a preliminary injunction to prevent AIG from canceling the policies. In its preliminary injunction motion, Genever (US) admitted that a default under the Proprietary Lease would cause irreparable harm. In Genever (US)'s own words: "AIG's purported cancellation of purchased insurance coverage will cause Genever (US) to suffer direct and irreparable harm because the cancellation of insurance creates a default under the Proprietary Lease, and the ultimate consequence of that default could be a loss of ownership of the Apartment by Genever (US)." *Id.* ¶ 44.

**III.    Genever (US) has the ability to access sufficient funds to allow it to continue paying the ongoing maintenance charges it owes to the Sherry-Netherland.**

25.     Although it reserves all its rights, the Sherry-Netherland does not wish to pursue the forfeiture of Genever (US)'s interest in the Apartment. Nor should it have to. Genever (US) has access to sufficient funds to allow it to continue paying the ongoing maintenance charges it owes the Sherry-Netherland even after the Security Deposit is depleted.

26.     On September 12, 2023, this Court entered an *Order (I) Authorizing Chapter 11 Trustee to Extend Financing Pursuant to Bankruptcy Code Section 363, (II) Authorizing Genever US and Genever BVI to Obtain Post-Petition Financing Pursuant to Bankruptcy Code Section*

8

*364, (III) Granting Non-Priming Liens and Providing Superpriority Administrative Expense Claim, (IV) Modifying Automatic Stay, and (V) Granting Related Relief* (the "DIP Order"). Case No. 22-50073, Dkt. No. 2193.

27. In the DIP Order, the Court authorized the Individual Debtor's estate to extend financing to Genever (US) for Genever (US)'s "necessary expenses." *Id.*, DIP Credit Agreement (annexed as Exhibit 1 to the DIP Order) § 2.1; *see also id.* § E(f) ("The DIP Borrowers will use the proceeds of the DIP Facility consistent with this Order and as provided in the DIP Credit Agreement and only for purposes that are permissible under the Bankruptcy Code."). The credit facility authorized by the DIP Order was originally $2 million and was later increased to $3 million. *See id.* at 2; Case No. 22-50073, Dkt. No. 3325.

28. The Individual Debtor's estate extended financing to Genever (US) because, as the ultimate equity owner of Genever (US), the estate and its creditors would be the beneficiaries of a successful chapter 11 reorganization of Genever (US). Thus, the Trustee conceded as part of the motion seeking approval of the DIP Order that it was "in the best interests of the Individual Debtor's chapter 11 estate and its stakeholders" to extend financing to pay the necessary expenses of Genever (US) "because [doing so] preserve[d] optionality for a potential value-maximizing transaction at Genever US." Case No. 22-50073, Dkt. No. 2110 ¶ 5; *see also* Case No. 22-50073, Dkt. No. 3259 ¶ 35 (admitting that it is "in the best interests of the Individual Debtor's chapter 11 estate, and its creditors and stakeholders, to maximize the value of the two Genever estates" and that conversion of Genever (US)'s case to a chapter 7 liquidation would "guarantee[] that the Individual Debtor's estate would not see any recovery from the Genever Debtors' cases").

29. As of February 28, 2025, Genever (US) has used more than $2.4 million of the financing authorized by the DIP Order. *See* Case No. 22-50073, Dkt. No. 4244 at 16. Accordingly,

between $500,000 and 600,000 remain available to Genever (US) to fund its necessary expenses. Examples of the expenses Genever (US) has paid pursuant to the DIP Order include:

| | |
|---|---|
| Payment pursuant to DIP Order with respect to financing Genever US counsel fees (Saxe Doernberger & Vita PC). | $236,452.00 |
| Payment pursuant to DIP Order with respect to financing Genever US counsel fees (O'Sullivan McCormack Jensen & Bliss PC) | $266,602.17 |
| Payment pursuant to DIP Order with respect to financing Genever BVI corporate fees (Harneys Corporate Services) | $98,089.58 |

*Id.* at 16.

30. The Sherry Netherland Senior Liens "have priority in all respects, including payment, to the security interests and liens granted" to the Individual Debtor's estate by the DIP Order. Case No. 22-50073, Dkt. No. 2193 ¶ 6(a)(1).

31. Genever (US) has access to sufficient cash to continue paying the monthly post-petition maintenance charges assessed by the Sherry-Netherland as the charges come due. There are still substantial funds available to Genever (US) under the credit facility authorized by the DIP Order. Moreover, if necessary, the Individual Debtor's estate has more than sufficient access to cash to again increase the amount of facility if Genever (US) needs more time to obtain a value maximizing sale of its assets under chapter 11. *See* Case No. 22-50073, Dkt. No. 4244 at 2 (cash balance at the end of February 2025 exceeded $70 million). And finally, Genever (US) also still has the possibility of a successful result in its litigation against AIG, which could likewise result in an infusion of cash into the estate and serve as another source of potential funds to cover post-petition maintenance. *See, e.g.*, Case No. 22-50073, Dkt. No. 3259 ¶¶ 23-27 (discussing status of litigation against AIG).

32. Genever (US) is marketing the 18th floor of the Building for sale. *See* Listing annexed hereto as **Exhibit 5**. The Sherry-Netherland is continuing to be called on by Genever (US) to provide services to the estate attendant to Genever (US)'s ownership of the shares, including in connection with Genever (US)'s efforts to sell the 18th floor of the Building. And Genever (US)'s real estate agent is relying on those services to attract potential buyers: "Services and amenities offered by The Sherry Netherland include full concierge services, 24-hour doormen and elevator attendants, daily housekeeping, evening turndown services, valet parking, room service provided by the renowned Harry Cipriani, a fitness center, barber shop, and beauty salon." *See* Screengrab from Listing annexed hereto as **Exhibit 6**.

33. Genever (US) cannot expect the Sherry-Netherland to provide services to and for the benefit of the estate without Genever (US) also committing to honor its own obligations to the Sherry-Netherland. Moreover, if Genever (US) refuses to honor its obligation to pay its post-petition monthly maintenance charges, those costs will ultimately be borne by the Sherry-Netherland's other shareholders, an inequitable and avoidable outcome.

34. Genever (US) is enjoying the benefits attendant to its ownership interest in the Apartment. It should also satisfy its obligations to ensure it has sufficient resources to cover the ongoing costs of such benefits.

## RELIEF SOUGHT

35. The Sherry-Netherland requests entry of the Proposed Order directing Genever (US) to identify a source of funding to pay the monthly post-petition maintenance charges assessed by the Sherry-Netherland as the charges come due.

## BASIS FOR RELIEF

36. Genever (US), as a debtor-in-possession, "has a fiduciary duty to maximize the value of the estate for the benefit of its stakeholders." *In re Breitburn Energy Partners LP*, 582

11

B.R. 321, 355 (Bankr. S.D.N.Y. 2018); *see also In re Smart World Techs., LLC*, 423 F.3d 166, 175 (2d Cir. 2005) (debtor-in-possession "is held 'accountable for all property [of the estate] received'" and requires the debtor-in-possession to "maximiz[e] the estate's value"). The Bankruptcy Code also "makes plain that 'continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation' are grounds to conclude that a debtor-in-possession has failed in its stewardship." *In re Taub*, 427 B.R. 208, 224 (Bankr. E.D.N.Y. 2010).

37. Indeed, "if there are insufficient assets to cover all administration expenses in a chapter 11 case, typically expenses should not be incurred in the ordinary course of operating the business, but rather the case should be converted to a liquidation proceeding under chapter 7." *Id.* For this reason, courts expect that, "in the usual case," a debtor-in-possession will comply with its obligations "to conduct the estate's business in a manner that avoids continuing loss to or diminution of the estate." *Id.* at 224-25. And "[t]he bankruptcy code presumes … that a debtor-in-possession will generally satisfy its current obligations." *In re Sheehan Memorial Hosp.*, 301 B.R. 777, 780 (Bankr. W.D.N.Y. 2003). But, in the *unusual* case where a debtor-in-possession refuses to meet its obligations, "this Court has the authority and the discretion to issue an order directing such compliance where 'necessary or appropriate to carry out the provisions' of the Bankruptcy Code." *Taub*, 427 B.R. at 225 (quoting 11 U.S.C. § 105(a)).

38. This case presents the type of unusual circumstance recognized in *Taub*. The Court previously granted the Sherry-Netherland relief from the automatic stay to ensure that Genever (US)'s post-petition maintenance obligations would be satisfied on an ongoing basis. *See* Case No. 22-50592, Dkt. No. 107. Roughly four years have passed and the then-available source of funds identified in the Court's Order is nearly depleted. Absent further action, post-petition administrative expense claims will continue to accrue with no end in sight. Genever (US) has no

plan to deal with this reality. It refused to identify a source of funds from which it intends to meet its obligations to the Sherry-Netherland. To make matters worse, Genever (US) is continuing to call on the Sherry-Netherland to provide services to the estate attendant to Genever (US)'s ownership interest in the Apartment. No doubt, these calls will continue indefinitely in the future while Genever (US) continues its efforts to sell the 18th floor of the Building. Accordingly, the Court should exercise its authority and discretion under the Bankruptcy Code by ordering Genever (US) to identify a source of funding to pay the monthly post-petition maintenance charges assessed by the Sherry-Netherland as the charges come due.

39.  Such an order is particularly appropriate under these circumstances because Genever (US) has the ability – at least in the immediate term – to continue paying post-petition maintenance charges as they come due even after the Security Deposit runs out. Genever (US) still has between $400,000 and $600,000 available to it under the credit facility authorized by the DIP Order. The Trustee should not hesitate to use the available financing for this purpose. He already conceded it is in the best interests of the Individual Debtor's chapter 11 estate and its stakeholders to ensure that Genever (US) does not act in such a way that would threaten its interest in the Apartment or its ability to continue with its chapter 11 case. Allowing Genever (US) to become delinquent on its post-petition maintenance obligations – with no end in sight – would, as the Trustee has recognized, jeopardize the Individual Debtor's estate's ability to realize any value from its equity interest in Genever (US). For similar reasons, if Genever (US) requires *additional* financing in the future to allow it to satisfy its post-petition obligations as they come due, the same considerations that caused the Trustee to extend financing to Genever (US) in the past for other post-petition expenses should likewise compel the Trustee to do so again to remain current on its

13

post-petition maintenance charges. Simply put, there is no justification for allowing Genever (US) to default on its obligations under the Proprietary Lease or the Agreement.

40. Moreover, it is undisputed that, except for the financing available to Genever (US) under the DIP Order, Genever (US) has "no cash and no source of income." Case No. 22-50073, Dkt. No. 2110 ¶ 2. If Genever (US) is refusing to identify a source of funding to pay its ongoing maintenance obligations because it has no funds available to it for this purpose, that would raise serious questions about the continuation of this bankruptcy case under chapter 11. If Genever (US) is unable or unwilling to identify sufficient funds to pay its ongoing obligations, then, as Genever (US) already conceded, it "will eventually be forced to convert to a chapter 7 liquidation." *Id.*

41. The Sherry-Netherland does not wish to see this case dismissed or converted to a chapter 7 liquidation, nor does the Sherry-Netherland want to take other actions detrimental to Genever (US)'s estate, such as moving to foreclose on or terminate Genever (US)'s interest in the Apartment. For nearly four-and-a-half years, the Sherry-Netherland has supported Genever (US)'s efforts at rehabilitation under chapter 11. The Sherry-Netherland supported Genever (US)'s efforts to market the 18th floor for sale or rent for more than one year *before* the first damaged the floor and required significant remediation. The Sherry-Netherland supported Genever (US)'s efforts to obtain the financing authorized by the DIP Order. And, even though the DIP Order expressly authorizes payment of the Sherry-Netherland's "reasonable post-petition [attorneys'] fees," Case No. 22-50073, Dkt. No. 2193 ¶ 12, the Sherry-Netherland has not yet pressed for payment of those fees because it has not wanted to deplete the funds available to Genever (US). But the remediation efforts are now complete, and Genever (US) does not appear to be close to finalizing a value maximizing sale of its interest in the Apartment under chapter 11.

42. Now, Genever (US) seemingly appears ready to impose yet another burden on the Sherry-Netherland and its other shareholders. Genever (US) wants the Sherry-Netherland to continue to honor the obligations it owes to Genever (US) as a shareholder. And Genever (US) wants the Sherry-Netherland's *other* shareholders to absorb Genever (US)'s proportionate share of the Sherry-Netherland's property taxes, insurance, mortgage payments, and other expenses covered by the maintenance charges to make up for Genever (US)'s refusal or inability to honor its own obligations.[4]

43. Genever (US)'s refusal or inability to identify a source of funds to pay its ongoing maintenance charges should not be permitted. Genever (US) owes the Sherry-Netherland a duty to act as a responsible steward of Genever (US)'s assets, and that includes acting to ensure that it does not jeopardize its ownership interest in the Apartment. Genever (US)'s failure to pay monthly maintenance fees as they come due is the opposite of responsible stewardship.

44. At the very least, unless and until Genever (US) identifies a source of funds that it will use to pay its post-petition maintenance obligations, the Court should prohibit Genever (US) and Genever (BVI) from using the funds available to it under the DIP Order or otherwise to pay interim compensation to their respective professionals. *See In re Codesco, Inc.*, 15 B.R. 354, 356 (Bankr. S.D.N.Y. 1981) (refusing to approve interim compensation using encumbered funds where "[t]here are insufficient funds in [the] estate"); *see also Pa. DOL & Indus. v. Cunningham, P.C. (In re Pannebaker Custom Cabinet Corp.)*, 198 B.R. 453, 463 n.6 (Bankr. M.D. Pa. 1996) (in determining whether to award interim compensation, "the court must consider whether the estate

---

[4] Some of these shareholders also incurred significant property damage to their own apartments caused by the fire that likewise damaged the 18th floor of the Building.

contains sufficient funds such that the award to the professional will not jeopardize claims of equal priority held by others").

## RESERVATION OF RIGHTS

45.     The Sherry-Netherland hereby reserves all of its rights, including, but not limited to, (a) its rights under the Proprietary Lease, the Agreement, the Security Deposit Agreement, and/or the DIP Order; (b) its right to seek conversion or dismissal of Genever (US)'s chapter 11 case; (c) its rights to interest on unpaid amounts owed to it; (d) its rights to attorneys' fees; and (e) all other rights afforded to the Sherry-Netherland as a secured creditor of Genever (US).

## CONCLUSION

46.     For all of the foregoing reasons, the Sherry-Netherland respectfully requests that the Motion should be granted and that Genever (US) should be directed to identify a source of funding to pay the monthly post-petition maintenance charges assessed by the Sherry-Netherland as the charges come due.

| | |
|---|---|
| Dated: April 10, 2025 | Taruna Garg (ct28652)<br>HARRIS BEACH MURTHA CULLINA PLLC<br>107 Elm Street<br>Stamford, CT 06902<br>Telephone:   (203) 653-5400<br>Facsimile:    (203) 653-5444<br>Email:            tgarg@harrisbeachmurtha.com<br><br>                    -and-<br><br>Patrick N. Petrocelli*<br>HOGAN LOVELLS US LLP<br>390 Madison Avenue<br>New York, NY 10017<br>Telephone:   (212) 918-3000<br>Facsimile:    (212) 918-3134<br>Email:            patrick.petrocelli@hoganlovells.com<br><br>*Counsel for The Sherry Netherland, Inc.*<br><br>*Admitted pro hac vice* |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2025, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                        */s/ Taruna Garg*
                        Taruna Garg