# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

```
------------------------------------------------------- x
                                            :
In re:                                      : Chapter 11
                                            :
HO WAN KWOK, et al.,¹                       : Case No. 22-50073 (JAM)
                                            :
                         Debtors.           : (Jointly Administered)
                                            :
------------------------------------------------------- x
```

## MOTION FOR ENTRY OF ORDER REGARDING SERVICE PROCEDURES

Luc A. Despins (hereinafter, the "<u>Trustee</u>"), in his capacity as Chapter 11 Trustee of Ho Wan Kwok (the "<u>Debtor</u>"), by and through his undersigned counsel, respectfully files this motion (the "<u>Motion</u>") seeking entry of the proposed order attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>") authorizing the Trustee to utilize particular service procedures with respect to Defendant Qiang Guo ("<u>Mileson</u>" or the "<u>Defendant</u>"), pursuant to Rules 4 and 5 of the Federal Rules of Civil Procedure (the "<u>Rules</u>") and Rules 7004, 7005, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").² In support of the entry of the Proposed Order, the Trustee states as follows:

### PRELIMINARY STATEMENT

1.  The Trustee files this Motion in order to address the recent assertion by the Debtor's son, Mileson, in a February 20, 2025 witness statement (the "<u>Cyprus Affidavit</u>") filed

---

¹ The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

² The Trustee has filed this motion in the above captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") and in each of the Adversary Proceedings (as defined below).

in the Trustee's litigation against Mileson in Cyprus (the "Cyprus Litigation"), that Mileson is a resident of Switzerland and has not resided at his address in London since 2021. Mileson has claimed in the Cyprus Affidavit, among other things, that given his alleged residence in Switzerland, he was not properly served with documents related to the Cyprus Litigation that the Trustee served on Mileson at his address in London in October of 2024. The Cyprus Affidavit followed a January 13, 2025 filing (the "BVI Defense") by Mileson and K Legacy Ltd. ("K Legacy") in the British Virgin Islands ("BVI") which stated that the address in London "was a residence of Mileson's between 2016 and 2022."[3]

2.      Mileson's assertion of a Swiss address[4] in the Cyprus Litigation raises service issues relevant to the Trustee's litigation efforts generally, because the Trustee understands that Swiss law (a) strictly prohibits (including through criminal sanctions) the mailing of foreign court documents to parties in Switzerland and (b) requires that all legal documents (including those initiating adversary proceedings as well as subsequent documents) be served through Switzerland's centralized service agency pursuant to the Hague Convention on Service of Process (the "Hague Convention"), a time-consuming process that can delay the service of documents by several months. Given Mileson's track record, the Trustee suspects that Mileson is asserting his Swiss residency strategically to delay the Trustee's litigation.

3.      As discussed in greater detail below, the Trustee requests relief in the Proposed Order that would address these service issues by (a) confirming the effectiveness of prior service on Mileson at Mileson's address in London at 5 Princes Gate, Flat 6, London, SW7 IQJ, United Kingdom (the "London Apartment"); and (b) establishing service procedures (the "Service

---

[3]      BVI Defense ¶ 11.2, attached hereto as **Exhibit 1**.
[4]      The Trustee understands that this address is Rigistrasse 201, 6353 Weggis, Switzerland (the "Swiss Address").

Procedures") under which any future service of documents on Mileson shall be sufficient[5] upon (i) the mailing of such documents to the London Apartment; (ii) the emailing of such documents to the email addresses for Mileson of which the Trustee is aware (the "Mileson Email Addresses"[6]); (iii) the emailing of such documents to Mileson's counsel, including Arethusa Forsyth and those counsel currently representing Mileson in proceedings against the Trustee in the British Virgin Islands ("BVI") and Cyprus; and (iv) the publication of such documents on a publicly available "Mileson Page" on the case website maintained by Epiq at https://dm.epiq11.com/case/kwoktrustee/info.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference from the United States District Court for the District of Connecticut.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

5.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## MOTION

**I.      Background**

**A.      Trustee's Litigation Against Mileson**

6.      As the Court is aware, the Trustee has commenced a number of adversary proceedings in which Mileson is a defendant, including, adversary proceeding numbers 24-05238 (seeking recovery of approximately $90 million of avoidable transfers (the "First Mileson Avoidance Action")); 25-05048 (related to transfers made to Mileson that are not addressed in

---

[5]     The Proposed Order provides that service pursuant to the Service Procedures shall constitute proper and effective service on Mileson pursuant to Rules 4 and 5, Bankruptcy Rules 7004, 7005 and Bankruptcy Rules 9013 and 9014, as applicable (including in connection with service of documents filed in the Chapter 11 Cases and in adversary proceedings not yet commenced as of the date of the entry of the Proposed Order).

[6]     The Mileson Email Addresses are as follows: ukistruehome@gmail.com; jeffyuef2@icloud.com; ipadforfly@icloud.com; cybermail2018@protonmail.com; raps.sinless0h@icloud.com.

the First Mileson Avoidance Action (the "Second Mileson Avoidance Action")), 24-05225 (related to transfers to an aircraft manufacturer to purchase aircraft for Mileson (the "Cirrus Avoidance Action")); 24-05245 (related to transfers to an auction house to purchase one or more vehicles for Mileson (the "RM Auctions Action")); 24-05311 (related to the Debtor's apartment in Cyprus nominally owned by Mileson through Bouillor Holdings Limited (the "Bouillor Action")); 24-05249 (the Trustee's first omnibus alter ego adversary proceeding (the "First Omnibus Alter Ego Action")); 24-05318 (the severed action for defaulting defendants to the First Omnibus Alter Ego action (the "Severed Alter Ego Action")); 24-05322 (the Trustee's second omnibus alter ego adversary proceeding (the "Second Omnibus Alter Ego Action); 24-05273 (the Trustee's civil RICO action); 23-05002 (related to the use of the Sherry Netherland apartment (the "Sherry Netherland Action")); and 22-05027 (related to the purported trust agreement under which the Sherry Netherland apartment was allegedly held in trust for the benefit of Bravo Luck Limited ("Bravo Luck"), a company nominally owned by Mileson (the "Bravo Luck Action," and, together with the other adversary proceedings listed in this paragraph, the "Adversary Proceedings")).  Documents in numerous of the Adversary Proceedings have been served on Mileson at the London Apartment.

7.      Mileson has been assiduous in refusing to appear personally before this Court in connection with the Adversary Proceedings or any other matters, preferring instead to default on his obligation to respond by the Court's deadlines.  Mileson has only appeared personally in the Trustee's litigation against him in the BVI (the "BVI Proceedings") and the Cyprus Litigation, where Mileson is in both cases represented by counsel.  Moreover, the Trustee anticipates that Mileson will actively oppose, with the assistance of counsel, the Trustee's actions against Mileson in Switzerland, where the Trustee initiated proceedings (the "Swiss Attachment

Proceedings") in February 2025 that resulted in Mileson's Swiss property being attached (the "Swiss Attachment").

8.      Further, though Mileson has refused to appear personally before this Court in matters related to his father's chapter 11 case, he did file a proof of claim in the procedurally consolidated Genever Holdings LLC chapter 11 case,[7] and he has participated in litigation and other matters related to his father's chapter 11 case through companies nominally owned by him. Bravo Luck, for example, actively opposed the Trustee in the Bravo Luck Adversary Proceeding prior to capitulating and agreeing to a settlement, signed by Mileson and approved by the Court, in which Mileson and Bravo Luck gave up, in exchange for no material consideration, all the rights and interests they had asserted with respect to the Sherry Netherland apartment.[8] Lamp Capital LLC ("Lamp Capital"), nominally owned by Mileson through Infinity Treasury Management LLC ("Infinity Treasury"), has been involved in the Debtor's chapter 11 case since its commencement, when Lamp Capital was listed as one of the twenty largest unsecured creditors on the Debtor's voluntary chapter 11 petition in connection with financing a $1 million retainer paid to the Debtor's prior counsel.[9] Lamp Capital was subsequently held in contempt by the Court in April 2023 for failure to comply with Rule 2004 discovery obligations.[10] Lamp Capital and Infinity Treasury then unsuccessfully opposed the Trustee's default judgment motion in the Trustee's adversary proceeding number 23-05028 seeking an alter ego ruling with respect to Lamp Capital (the "Lamp Capital Adversary Proceeding"). The Court in its default judgment decision held that Lamp Capital and Infinity Treasury (the "Lamp Entities") deliberately

---

[7]   *See* Claim 3-1, *In re Genever Holdings LLC,* No. 20-12411-jlg (Bankr. S.D.N.Y.) (filed March 5, 2021).
[8]   *See Order Granting, Pursuant to Bankruptcy Rule 9019, Motion of Chapter 11 Trustee, Genever Holdings LLC, and Genever Holdings Corporation Regarding Settlement with Bravo Luck Limited and Mileson Guo (a/k/a Qiang Guo and/or Guo Qiang)* (Adv. Proc. No. 22-05027, Aug. 30, 2023) [Adv. Proc. ECF No. 118].
[9]   *See Voluntary Petition for Individuals Filing for Bankruptcy*, at 13 [Main Case Docket No. 1].
[10]  *See Order Holding Golden Spring and Lamp Capital in Contempt of Court*, at 4 [Main Case Docket No. 1709].

defaulted on their obligation to respond to the Trustee's complaint, agreeing with the Trustee that "Mr. Guo and the Lamp Entities have been aware of these proceedings since before the Petition was filed, have selectively chosen to engage or avoid them, and the Default was a continuation of that choice."[11]

**B.     Service at London Apartment in Adversary Proceedings**

9.     In the Adversary Proceedings, the Trustee has served Mileson at the London Apartment by mail or courier service with complaints, summons, and related documents (the "Complaint Documents"), on the following dates (the "Complaint Service Dates")[12]:

| Complaint Service Dates | Complaint Documents | Adversary Proceeding |
|---|---|---|
| January 31, 2023 | Complaint and Summons [Adv. Proc. 22-05027, ECF Nos. 1, 2][13] | Bravo Luck Action |
| February 17, 2023 | Complaint and Summons [Adv. Proc. 23-05002, ECF Nos. 1, 9] | Sherry Netherland Action |
| March 21, 2024 | Complaint and Summons [Adv. Proc. 24-05249, ECF Nos. 1, 5][14] | First Omnibus Alter Ego Action |

---

[11]   Adv. Proc. ECF No. 63, at 11.  The Court's decision was recently affirmed by the District Court in March 2025, which "agrees with the Bankruptcy Court that the Lamp Entities' failure to timely respond to the Complaint is better-viewed as a continuation of Lamp Capital's contemptuous disregard for the broader bankruptcy proceedings, which itself is evidence of the Lamp Entities' willful and deliberate default." [24-217, ECF 22, at 11.].  Among other things, the District Court upheld this Court's rejection of the Lamp Entities' notice arguments: "Regarding the Lamp Entities awareness of the Adversary Proceeding, they offered that counsel was hired by someone *believed to be* the Debtor's son, and that counsel had general knowledge of the Chapter 11 case and related adversary proceedings 'through the grapevine.' Again, a dubious assertion, and one supported only by the representations of counsel, which are not evidence." *Id.* at 10 (emphasis in original).

[12]   *See Certificate of Service*, Bravo Luck Action [Adv. Proc. ECF No. 27] ("Bravo Luck COS"); *Certificate of Service*, Sherry Netherland Action [Adv. Proc. ECF No. 16] ("Sherry Netherland COS"); *Certificate of Service Regarding Summons and Complaint*, First Omnibus Alter Ego Action [Adv. Proc. ECF No. 23] ("First Omnibus Alter Ego COS"); *Certificate of Service Regarding Summons, Complaint, and Notice of Applicability of Avoidance Action Procedures*, First Mileson Avoidance Action [Adv. Proc. ECF No. 10] ("First Mileson Avoidance Action COS"); *Certificate of Service Regarding Summons, Complaint, and Notice of Applicability of Avoidance Action Procedures*, RM Auction Action [Adv. Proc. ECF No. 22] ("RM Auction COS"); *Certificate of Service Regarding Summons, Complaint, and Notice of Applicability of Avoidance Action Procedures*, Cirrus Avoidance Action [Adv. Proc. ECF No. 16] ("Cirrus Avoidance COS"); *Certificate of Service*, RICO Action [Adv. Proc. ECF No. 52] ("RICO COS"); *Certificate of Service Regarding Summons and Complaint*, Bouillor Action [Adv. Proc. ECF No. 13] ("Bouillor COS").

[13]   In addition, on January 31, 2023, these documents were hand delivered by an English solicitor to the Princes' Gate concierge.  *See* Bravo Luck COS.

[14]   In addition, on April 17, 2024, these documents were emailed to Mileson's counsel, Arethusa Forsyth.  *See* First Omnibus Alter Ego COS.

| March 21, 2024 | Complaint, Summons, Notice of Applicability of Avoidance Action Procedures [Adv. Proc. 24-05238, ECF Nos. 1, 3, 4][15] | First Mileson Avoidance Action |
|---|---|---|
| March 27, 2024 | Complaint, Summons, Notice of Applicability of Avoidance Action Procedures [Adv. Proc. 24-05245, ECF Nos. 1, 2, 4][16] | RM Auctions Action |
| March 27, 2024 | Complaint, Summons, Notice of Applicability of Avoidance Action Procedures [Adv. Proc. 24-05225, ECF Nos. 1, 3, 4][17] | Cirrus Avoidance Action |
| May 10, 2024 | Complaint and Summons [Adv. Proc. 24-05273, ECF Nos. 1, 5][18] | RICO Action |
| August 26, 2024 | Complaint and Summons [Adv. Proc. 24-05311, ECF Nos. 1, 9][19] | Bouillor Action |

10.     Further, in the Adversary Proceedings the Trustee has served Mileson at the London Apartment by mail or courier service with other documents (the "Other Documents" and, together with the Complaint Documents, the "Served Documents") on the following dates (the "Other Service Dates" and, together with the Complaint Service Dates, the "Service Dates"):

| Other Service Dates | Other Documents | Adversary Proceeding |
|---|---|---|
| February 17, 2023 | Motion for Summary Judgment, Memorandum of Law in Support of the Motion for Summary Judgment, Local Rule 56(a)(1) Statement, Declaration of the Chapter 11 Trustee in Support of the Motion for Summary Judgment, Motion to | Sherry Netherland Action |

---

[15]  These documents were signed for by an "N. Noelle" at Princes Gate on March 27, 2024.  In addition, on April 17, 2024, these documents were emailed to Mileson's counsel, Arethusa Forsyth. *See* First Mileson Avoidance Action COS.

[16]  In addition, on April 17, 2024, these documents were emailed to Mileson's counsel, Arethusa Forsyth.  *See* RM Auctions COS.

[17]  In addition, on April 17, 2024, these documents were emailed to Mileson's counsel, Arethusa Forsyth.  *See* Cirrus COS.

[18]  In addition, on April 17, 2024, these documents were emailed to Mileson's counsel, Arethusa Forsyth.  *See* RICO COS.

[19]  In addition, on August 26, 2024, these documents were emailed to Mileson's counsel, Arethusa Forsyth, and mailed to the address of Mileson's office in Brentford, United Kingdom.  *See* Bouillor COS.

|  | Schedule Hearing on the Motion for Summary Judgment, Motion to Expedite, and Notice to Qiang Guo [Adv. Proc. 23-05002, ECF Nos. 2, 4, 5, 6, 7 and 8] |  |
|---|---|---|
| March 6, 2023 | Amended Complaint [Adv. Proc. 22-05027, ECF No. 40] | Bravo Luck Action |
| June 5, 2023 | Notice of Filing Revised Proposed Order Granting Motion for Default Judgment [Adv. Proc. 22-05027, ECF No. 95] | Bravo Luck Action |
| August 7, 2023 | Rule 9019 Settlement Motion, Motion to Limit Service of Settlement Motion and Notice of Hearing [Adv. Proc. 22-05027, ECF Nos. 112, 115 and 116] | Bravo Luck Action |
| June 4, 2024 | Request for Entry of Default Against Qiang Guo [Adv. Proc. 24-05249, ECF No. 27] | First Omnibus Alter Ego Action |
| July 1, 2024 | Motion for Default Judgment [Adv. Proc. 24-05249, ECF No. 36] | First Omnibus Alter Ego Action |
| September 17, 2024 | Request for Entry of Default against Qiang Guo [Adv. Proc. 24-05225, ECF No. 17] | Cirrus Avoidance Action |
| October 16, 2024 | Motion for Default Judgment [Adv. Proc. 24-05238, ECF No. 17] | First Mileson Avoidance Action |
| November 13, 2024 | Motion for Entry of Consented to Stipulated Judgment [Adv. Proc. 24-05318, ECF No. 104] | Severed Alter Ego Action |
| February 19, 2025 | Motion to Lift Stay as to Remaining Claims [Adv. Proc. 24-05238, ECF No. 28] | First Mileson Avoidance Action |
| February 28, 2025 | Order Lifting Stay as to Remaining Claims [Adv. Proc. 24-05238, ECF No. 29] (the "Lift Stay Order") | First Mileson Avoidance Action |
| March 4, 2025 | Motion for Entry of Stipulated Judgment [Adv. Proc. 24-05322, ECF No. 8] | Second Omnibus Alter Ego Action |
| March 7, 2025 | Sealed Emergency Ex Parte TRO Motion, Sealed TRO Order, Ex Parte Motion to Amend Sealed TRO Order, and Sealed Order Granting Ex Parte Motion to Amend Sealed TRO Order [Adv. Proc. 24-05225, ECF Nos. 49, 52, 53 and 54] | Cirrus Avoidance Action |

| March 26, 2025 | Notice of Continued Hearing on Motion for Entry of Stipulated Judgment [Adv. Proc. 24-05322, ECF No. 13] | Second Omnibus Alter Ego Action |
|---|---|---|

### C.  Trustee's Knowledge Regarding Mileson's Addresses

11.     During the entire time period relevant to this Motion through to the present, the Trustee has been conducting an investigation into the financial affairs of the Debtor that has resulted in the Trustee becoming aware of a number of pieces of evidence related to the multiple addresses and residences used by Mileson.  This evidence includes, among other things, documents produced in discovery, as well as numerous documents used by the United States Government (the "Government") as trial exhibits (the "Government Exhibits") in its criminal prosecution of the Debtor and made available to the Trustee in July of 2024.  While the Trustee's knowledge regarding Mileson's addresses has evolved over time, the evidence has in each instance supported the Trustee's decision to serve Mileson at the London Apartment on each of the Service Dates, as explained further below.

### i.  Trustee's Knowledge Through July 1, 2024

12.     Prior to the Trustee obtaining access to the Government Exhibits in mid-July 2024, the Trustee was aware of numerous documents and other evidence that caused the Trustee to understand that Mileson used the London Apartment as his address.  Among other things:

    a.  Documents obtained in the Trustee's investigation identified the London Apartment as Mileson's address and Mileson as the nominal owner of the entity holding title to the London Apartment, K Legacy.

    b.  The Debtor, in his declaration filed with this Court on March 20, 2022 and in his April 6, 2022 Bankruptcy Rule 341 meeting of creditors, stated that his son lived in London.[20]

---

[20]    *See* Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions ¶ 6 [Docket No. 107]; Tr. of Telephonic 341 Meeting of Creditors, dated April 6, 2022 at 24:13-14.

c. Mei Guo, the Debtor's daughter, stated in her deposition taken on January 20, 2023, that her brother lived in London.[21]

d. On January 31, 2023, an individual at the London Apartment building ("<u>Princes Gate</u>") confirmed to the Trustee's English solicitor that Mileson lived at Princes Gate.[22]

e. On February 28, 2023, a letter from the Trustee was delivered to Princes Gate and accepted with the executed signature "GUO."[23]

f. Documents obtained in the Trustee's investigation showed that Mileson was sent emails to his "ukistruehome@gmail.com" email address as late as March 2024.[24] For the avoidance of doubt, this spells out "UK is **true** home" (emphasis added).

13.    By contrast, until mid-July 2024 the Trustee was not aware of the Swiss Address and had not seen documentary or other evidence pointing to the Swiss Address as an address for Mileson.

14.    In sum, on each of the Service Dates through July 1, 2024 (the only Service Date during that month), the Trustee understood that Mileson used the London Apartment as his address and that the Trustee had no knowledge of the Swiss Address.  Based on this understanding, the Trustee decided to serve the Served Documents on Mileson at the London Apartment.

**ii.  Trustee's Knowledge After July 2024 Through January 13, 2025**

15.    As noted above, in July 2024, the Government provided the Trustee with numerous of the Government Exhibits.  Based on his review of these documents, as well as

---

21    *See* Mei Guo Depo. Tr., Jan. 20, 2023, at 51:3-4.

22    *See Memorandum of Law in Support of Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok For Entry Of Default Judgment Against Qiang Guo*, ¶ 34 (Adv. Proc. No. 22-05027, June 2, 2023) [Adv. Proc. ECF No. 93-1].

23    *See Declaration of Patrick R. Linsey in Support of Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Entry of Default Judgment Against Qiang Guo*, ¶ 11 (Adv. Proc. No. 22-05027, June 2, 2023) [Adv. Proc. ECF No. 93-2].

24    *See* Email from Sydney Montgomery to ukistruehome@gmail.com, dated March 5, 2024 (discussing closing an escrow account in connection with aircraft of the Debtor), attached hereto as **<u>Exhibit 2</u>**.

additional documents obtained in the Trustee's ongoing investigation, the Trustee understood

that Mileson continued to use the London Apartment as his address.  For example:

> a. Mileson sent an email on January 7, 2023 inviting friends to visit him in London (while also mentioning that he was "now officially [a] Swiss resident").[25]

> b. Mileson's attorney represented in a short biography of Mileson dated to January 2023 that his address was at the London Apartment and that he resided in London.[26]

> c. The London Apartment was used as Mileson's address on an accountant's invoice dated January 2023 and emailed to Mileson in April 2023.[27]

> d. Mileson used the London Apartment as his address in a Cyprus corporate registry filing dated to March 12, 2024.[28]

> e. In September 2024 Mileson's counsel Arethusa Forsyth was communicating with representatives of Princes Gate regarding the payment of delinquent maintenance charges (and litigating seeking to allow such charges) in connection with the London Apartment.

16.    The Trustee's understanding, further supported by these documents, that Mileson

used the London Apartment as his address, was reinforced on January 6, 2025, when the

Securities and Exchange Commission (the "SEC") filed a letter (the "SEC Letter")[29] in the

United States District Court for the Southern District of New York in connection with its

securities fraud action against the Debtor, in which Mileson is a relief defendant.  In the SEC

Letter, the SEC reported that it had served Mileson in the United Kingdom pursuant to Rule

4(f)(2)(A), which permits service by a means that is reasonably calculated to give notice as

prescribed by the foreign country's law for service in that country in an action in its courts of

---

[25]   *See* Email from Mileson to Janice Bateman, dated January 7, 2023 (asking Bateman to "meet in London") [GXUK386], attached hereto as **Exhibit 3**.

[26]   *See* Email from Arethusa Forsyth to Neil Singh, dated January 26, 2023 ("Mr Guo resides in London") [GXUK390], attached hereto as **Exhibit 4**.

[27]   *See* Email from Simone Boesch to Mileson, dated April 3, 2023 (listing Q Guo's address as the London Apartment) [GXUK407], attached hereto as **Exhibit 5**.

[28]   *See* Transfer of Shares of a Private Company Form, dated March 13, 2024 (showing London Apartment as address), attached hereto (original and certified English translation) as **Exhibit 6**.

[29]   The SEC Letter, together with the Stephenson Harwood Letter is attached hereto as **Exhibit 7**.

general jurisdiction.  The SEC Letter attached a letter from the SEC's English counsel,

Stephenson Harwood LLP (the "Stephenson Harwood Letter") setting forth why the London

Apartment qualified as Mileson's "last known" address pursuant to Rule 6.9 of the Civil

Procedures Rules of England and Wales (the "CPR"), which allows for service of English

proceedings at an individual's "usual or last known residence."[30]  According to the Stephenson

Harwood Letter, the London Apartment was used as Mileson's address on, among other things, a

November 5, 2024 mobile phone contract, a November 1, 2024 credit card application, and

vehicle insurance records dating to at least June 2024.[31]

17.    While substantial evidence continued to point to the London Apartment as

Mileson's address, Government Exhibits and other documents obtained by the Trustee during

and after July 2024 made the Trustee aware for the first time of the existence of the Swiss

Address and suggested that Mileson also used this as his address.  For example:

    a.   Documentary evidence showing that Mileson purchased real property at the Swiss
        Address in December 2022.

    b.   Mileson sent an email on January 7, 2023 mentioning that he was "now officially
        [a] Swiss resident" (while also inviting friends to visit him in London, suggesting
        he still lived in London).[32]

    c.   The Swiss Canton of Luzerne identified the Swiss address as Mileson's address in
        correspondence dated to March 2023.[33]

    d.   Utility bills were being sent to Mileson at the Swiss Address as of January 2024.[34]

---

[30]  CPR 6.9.  A copy of CPR 6.9 is attached hereto at **Exhibit 8**.
[31]  The Stephenson Harwood Letter also describes certain inconsistent information from Princes Gate personnel. *Compare* Stephenson Hardwood Letter, at 3 ¶ 8 ("On or about December 29, 2023, the building concierge at the Princes Gate Address told an investigator retained by our firm that Qiang Guo was a resident of the building") *to id.* at 3, n. 1 ("We note that, on February 18, 2024, a building concierge at the Princes Gate Address told an investigator retained by our firm that Qiang Guo was not a resident and refused to provide any additional information.").
[32]  *See* Ex. 3 [GXUK386].
[33]  *See* Email from Mileson to Jan Loser, dated March 20, 2023, at 3 [GXUK405], attached hereto as **Exhibit 9**.
[34]  *See* Affidavit of Ownership, dated April 9, 2024, at 4 (EWS Utility Bill, dated January 9, 2024), attached hereto as **Exhibit 10**.

     e.   Mileson used the Swiss Address in a BVI corporate filing related to K Legacy dated April 9, 2024.[35]

18.     In sum, on each of the Service Dates after July 2024 and prior to January 13, 2025, the Trustee understood that Mileson continued to use the London Apartment as his address and, further, that Mileson was also using the Swiss Address, though Mileson had not yet claimed in court filings that he no longer resided at the London Apartment.

19.     Based on this understanding, the Trustee decided to serve the Served Documents on Mileson at the London Address during this period, but did not conduct service on the Swiss Address. This was for several reasons. For one thing, it was far from clear whether Mileson had actually established his residence at the Swiss Address given that he was continuing to use the London Apartment as his address during the time period after the Swiss Property was purchased in late 2022, as set forth above in paragraph 17, and had continued to claim as his address a residence where he very clearly did not live, the mansion at 20 South Bay Road in Hong Kong, nominally owned by the BVI company Leading Shine Limited, which Mileson identified as his address on documents dated as recently as June 3, 2024.[36] In addition, the Trustee understood that Swiss law requires that all service, whether or not such service is of the complaint commencing an action or subsequently filed documents, be undertaken through a months-long Hague Convention process, and that mailing Court documents to a party in Switzerland is a criminal violation of Swiss law. Further, a person may have multiple addresses or last known addresses, and in Mileson's case the London Apartment was one of these addresses.

---

[35]    *See id.*, at 1-2 (Biography).

[36]    *See* Annual Return, Canadian Agri-Product Monetary Investments Limited, dated June 3, 2024, at Schedule 1 (PDF Page 10) (listing Majestic View Manor in Hong Kong as Mileson's address), attached hereto as **Exhibit 13.**

### iii.  Trustee's Knowledge After January 13, 2025

20.     On January 13, 2025, Mileson filed the BVI Defense brief, which claimed that the London Apartment was "a residence of Mileson's between 2016 and 2022."[37]  On February 20, 2025, Mileson filed the Cyprus Affidavit, in which he claimed that he had not resided in London since 2021 and that he was residing in Switzerland as of the date in October 2024 when the Trustee attempted to serve him at the London Apartment with documents filed in the Cyprus Proceeding.[38]  The Trustee notes that he doubts Mileson's credibility generally and that there are numerous contradictions between the Cyprus Affidavit's position that Mileson left London in 2021 and other documentary evidence, including the BVI Defense where Mileson claimed to use the London Apartment as "a residence" between 2016 and **2022**.[39]  Moreover, documents obtained by the Trustee in late February 2025 show that Mileson continued to receive correspondence at the London Apartment through January 2025.

21.     On February 27, 2025, the Court held a hearing (the "February 27 Hearing") at which the Trustee discussed the Cyprus Affidavit, the March 4, 2025 service deadline under the Lift Stay Order, and related issues, stating as follows:

> [L]ast Friday, for the first time, we saw a pleading or an affidavit from the debtor's son in another proceeding where he clearly disavowed the residence in, his residence in London, saying that the London apartment has not been his residence since 2021. To be clear, we knew, and in 2024, we knew that he had a house in, he had acquired a house in Switzerland and we knew that he had made a corporate

---

[37]     BVI Defense ¶ 11.2.

[38]     In the Cyprus Affidavit, Mileson accused the Trustee of representing to the BVI court in September 2024, in the Trustee's litigation against Mileson and K Legacy disputing the ownership of the K Legacy and the London Apartment, that the Swiss Address was Mileson's last known address, and concealing from the Cyprus court in filings made in October 2024 that the Trustee (purportedly) knew Mileson resided in Switzerland and not the UK.  The Trustee has filed an additional affidavit with the BVI court to clarify the positions he previously took.  *See Fifth Affidavit of Luc A. Despins*, dated April 3, 2025, attached hereto as **Exhibit 11**. The affidavit has been attached without the exhibits thereto, and the exhibits can be provided, subject to BVI confidentiality rules, upon request.

[39]     Also questionable are Mileson's claims in the Cyprus Affidavit that he had limited information regarding the Trustee's proceedings against his father, and had not participated such proceedings, despite, as discussed herein, Mileson's intense involvement through his nominally owned companies such as Lamp Capital and Bravo Luck.

filing in the BVI, listing the house in Switzerland as his address. But at the same time, we knew that he filed similar filings, for example, in Cyprus, listing London as his address, and a corporate filing in Hong Kong, listing a Hong Kong house as his address, as well. But now, in this affidavit, he basically says, I've always lived only Switzerland since 2021. [40]

We disagree with that, obviously, for all sorts of reasons, but we wanted to bring this to the Court's attention, because there's no doubt that we can accomplish service at the London apartment, but to be clear, he still owns the London apartment. There's no issue about him having sold it or anything like that; he still owns the apartment, so we can accomplish service there -- there's no issue – by March 4th.

But if we determine that we have to serve in Switzerland, we could not complete service by March 4th. And I said, "if," Your Honor, because this action against him was commenced in February -- February 15th or 14th, 2024 – long before these indicia of Switzerland ownership appeared, and therefore, we believe that this was an issue of not initial service, but rather, supplemental service and we need to figure out this thing. [41]

22.     Following the February 27 Hearing, the Trustee was informed that Mileson was present at the Swiss Address when he was visited by Swiss police in connection with the Swiss Attachment.  The Trustee also obtained evidence suggesting that Mileson has established yet another residence in the United Arab Emirates ("UAE").  The Trustee's investigation has recently revealed that Mileson spent over 200 days in the UAE during calendar-year 2024 and that he applied for a UAE "investor residence visa" on February 27, 2025.  The timing of this visa application is revealing—it appears to be a reaction by Mileson to the Swiss Attachment.

23.     In sum, on each of the Service Dates after January 13, 2025, the Trustee understood that Mileson was claiming to no longer be using the London Apartment as his residence and, as confirmed by the Cyprus Affidavit, was claiming to reside in Switzerland, or at least to have resided at the Swiss Address as of October 2024.  However, the Trustee doubted Mileson's credibility, and other evidence discussed above continued to suggest that Mileson used

---

[40]   Feb. 27, 2025 Hr'g Tr., at 26-28, attached hereto as **Exhibit 12**.
[41]   *Id.*

the London Apartment as his address and, further, that he may have established yet another residence.  The Trustee also continued to understand that Swiss law requires that all service, whether or not such service is of the complaint commencing an action or subsequently filed documents, be undertaken through a months-long Hague Convention process, and that mailing Court documents to a party in Switzerland is a criminal violation of Swiss law.  Further, a person may have multiple addresses or last known addresses, and in Mileson's case evidence continued to indicate that the London Apartment was one of these addresses.  The Trustee does not concede either that the London Apartment is no longer Mileson's last known address or that the Swiss Address is Mileson's last known address.  There is a visible pattern of Mileson using the Swiss address for legally tactical reasons as he feels convenient—for example, Mileson has not raised the Swiss Address as an issue in the ongoing BVI Proceedings even though documents in those proceedings were not served on Mileson in Switzerland, and, as discussed above, Mileson used the Swiss address in corporate filings in the BVI in April 2024 while using the London Apartment address in corporate filings in Cyprus in March 2024 and a third Hong Kong address in corporate filings in Hong Kong in June 2024.

## II.    Service of Complaint Documents Was Proper Under Rule 4

24.    The Complaint Documents were properly served on Mileson at the London Apartment pursuant to Rule 4(f)(2)(A), which permits service by means that are reasonably calculated to give notice as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction.  Here, the foreign country is the United Kingdom, where CPR 6.9(2) allows for service of English proceedings at an individual's "usual or last known residence."[42]

---

[42]    *See* Ex. 8, CPR 6.9.

25.     The legal standard under English law for determining the "last known residence" under CPR 6.9 was discussed by the High Court of England and Wales in the case of *Boetthcher v XIO (UK) LLP (In Liquidation) & Ors* [2023] EWHC 801,[43] which listed a number of "observations [that] may be made about the concept of the defendant's last known residence in order to test the validity of service at that address," consisting of the following:

(1)     The claimant must establish that there is a good arguable case that the address at which service was effected was the defendant's last known residence. This means that, on the evidence available, the claimant has the better of the argument on this issue than the defendant.

(2)     The defendant's last known residence need not be the defendant's usual residence.

**(3)     The defendant may have more than one last known residence.**

(4)     The defendant's last known residence may be a residence at which the defendant is residing or no longer resides (having once resided there) at the time of the purported service of process. It cannot be an address at which the defendant never resided.

(5)     Knowledge of the defendant's residence in this context refers to the claimant's actual knowledge or constructive knowledge, i.e. knowledge which the claimant could have acquired exercising reasonable diligence. An honest or even reasonable belief is not sufficient if the defendant never resided at the relevant address.

(5)     The claimant's state of knowledge is to be assessed as at the date on which the proceedings were served at the address in question.

*Boettcher*, ¶ 49 (emphasis added).

26.     Moreover, under CPR 6.9 (3), "where a claimant has reason to believe that the [usual or last known] residence of the defendant . . . is an address at which the defendant no longer resides . . . , the claimant must take reasonable steps to ascertain the address of the defendant's current residence . . . ."  Should the claimant by taking reasonable steps then determine the defendant's current residence . . . , the defendant should be served at such location.

---

[43]     A copy of *Boettcher* is attached hereto as **Exhibit 14.**

CPR 6.9 (4)(a).  If the claimant cannot by taking reasonable steps determine the defendant's current residence . . . , the claimant must "consider whether there is – (i) an alternative place where; or (ii) an alternative method by which service might be effected." CPR 6.9 (4)(b).  If the claimant cannot determine either the defendant's current residence or an alternative place or method of service, the claimant may serve the defendant's "usual or last known address." CPR 6.9 (6).

27.     Here, the London Apartment qualifies as Mileson's "last known residence" for purposes of CPR 6.9.  As stated in *Boettcher*, the Trustee's state of knowledge "is to be assessed as at the date on which the proceedings were served at the address in question," in this case, the Complaint Service Dates, which range from January 31, 2023 to August 26, 2024.  *Boettcher* ¶ 49(5).

28.     First, as of the Complaint Service Dates that occurred prior to July 2024 (the "Pre-July 2024 Complaint Service Dates")[44] the Trustee had no information regarding Mileson's alleged change of residence to the Swiss Address, the existence of which the Trustee was not then aware.  And, as of the Pre-July 2024 Complaint Service Dates, numerous pieces of evidence discussed in paragraph 12 herein pointed to the London Apartment as Mileson's address, including documents obtained in the Trustee's investigation, information supplied by individuals at Princes Gate, and mail signed for on behalf of "GUO."  As such, the Trustee had no reason to believe that the London Apartment was a location where Mileson "no longer resides," which would have triggered the obligation in CPR 6.9 (3) for the Trustee to "take reasonable steps to

---

[44]   These consist of all the Complaint Service Dates with the exception of the August 26, 2024 service date in the Bouillor Action, including: the January 31, 2023 service in the Bravo Luck Action; the February 17, 2023 service in the Sherry Netherlands Action; the March 21, 2024 service in the First Omnibus Alter Ego Action; the March 21, 2024 service in the First Mileson Avoidance Action; the March 27, 2024 service in the RM Auctions Action; the March 27, 2024 service in the Cirrus Avoidance Action; and the May 10, 2024 service in the RICO Action.

ascertain the address of the defendant's current residence or place of business," CPR 6.9 (3), and

consider an alternative address, CPR 6.9 (4), at that time unknown.

29.     Second, with respect to the August 26, 2024 date of the service of the Complaint

Documents in the Bouillor Action (after the Trustee had become aware of the Swiss Address, but

before Mileson claimed in court filings to have left the UK for Switzerland), *Boettcher* is right

on point and demonstrates that the London Apartment was the Debtor's "last known residence"

under CPR 6.9.  In *Boettcher*, the Court ruled that the evidence established "a good arguable

case" that the defendant's last known residence was at an address in London (referred to as

"33SR") "as far as [the Plaintiff] was aware or ought to have been aware by the exercise of

reasonably diligence," based on:

> a.  the defendant previously residing at the London address, *id.* ¶ 55;
>
> b.  the plaintiff's investigation revealing that "the defendant still had a residence at
> 33SR, even if that was not accurate, and also had a residence in Germany and/or
> Switzerland"—the court explained that "the fact that Mr Geyer had multiple
> residences is not a reason why 33SR could not be a last known, or even a usual,"
> *id.* ¶ 56, and that inquiries revealing multiple addresses "did not give him reason
> to believe that [the plaintiff] no longer resided at 33SR," *id.* ¶ 57;
>
> c.  a conversation between an employee of plaintiff's counsel and the porter at 33SR
> reinforcing the conclusion that the defendant lived there (despite subsequent
> contradictory statements from the porter) *id.* ¶ 58; and
>
> d.  evidence suggesting the defendant received letters of claim identifying 33SR as
> the defendant's address, including one email asking him to identify his preferred
> address of service, but that the defendant took not steps to inform the plaintiff or
> his solicitors that he no longer resided at 33SR—per the court: "[The plaintiff] is
> entitled to rely on [the defendant's] failure to correct any impression that [the
> plaintiff] had that 33SR was [the defendant's] last known residence."  *Id.* ¶ 59.

30.     Here, the same circumstances as of August 26, 2024 demonstrate proper service

under CPR 6.9.  As in *Boettcher*, (a) Mileson previously resided at the London Apartment; (b)

the Trustee's investigation and analysis of the Government Exhibits revealed the Swiss Address

but did not give any reason to believe that Mileson no longer resided at the London Apartment; (c) statements from an individual at Princes Gate confirmed Mileson was a resident; and (d) despite having received papers from the Trustee addressed to him at the London Apartment, Mileson took no steps to inform the Trustee that he no longer resided at the London Apartment. As such, as in *Boettcher*, "the evidence establishes a good arguable case that [the London Apartment] was [Mileson's] last known residence, as far as [the Trustee] was aware or ought to have been aware by the exercise of reasonable diligence." *Id.* ¶ 54.

31.    In sum, service of the Complaint on Mileson at the London Apartment satisfied the service requirements of CPR 6.9 and, therefore, was proper under Rule 4(f)(2)(A).

**III.    <u>Service of Other Documents Was Proper Under Rule 5</u>**

32.    Service of the Other Documents was in each instance carried out consistent with Rule 5(b)(2)(C), which allows for mailing a document to a person's "last known address—in which event service is complete upon mailing."

33.    The Trustee's service of the Other Documents on Mileson on the Other Document Service Dates through July 2024 occurred prior to the Trustee being made aware of the Swiss Address, and therefore the London Apartment clearly qualified as the last known address for Mileson for purposes of Rule 5.

34.    The Trustee's service of Other Documents on Mileson after July 2024 occurred after the Trustee had become aware of the existence of the Swiss Address.  However, plenty of evidence, as discussed above, continued to point to the London Apartment as Mileson's address, and Mileson had not stated that he no longer lived in London or that he resided in Switzerland. Moreover, the Trustee could not mail documents to the Swiss Address without violating Swiss law—he could only serve such documents in Switzerland through a months-long Hague

Convention process.  Therefore, the Trustee appropriately served these Other Documents at the London Apartment.

35.     Moreover, the Trustee's service of certain Other Documents in early 2025 at the London Apartment was appropriate even though this service occurred after the BVI Defense and Cyprus Affidavit were filed on January 13 and February 20, 2025, respectively.  Significant evidence continued to point to the London Apartment as Mileson's address, and as on prior occasions, the Trustee could not mail documents to the Swiss Address without violating Swiss law—he could only serve such documents in Switzerland through a months-long Hague convention process, which would also result in the Trustee missing any near-term service deadlines (as alluded to by the Trustee at the February 27 Hearing).

## IV.     Trustee's Request For Order Approving Service Procedures

36.     In light of the situation described herein, the Trustee requests that the Court enter the Proposed Order, which would (a) confirm that the Complaint Documents were properly served on Mileson at the London Apartment pursuant to Rule 4; (b) confirm that the Other Documents were properly served on Mileson at the London Apartment pursuant to Rule 5, and (c) approve Service Procedures with respect to the Adversary Proceedings, Chapter 11 Cases, and adversary proceedings that have not yet been commenced, as applicable, under which documents would be considered properly served on Mileson based on (i) the mailing of such documents (by U.S. Postal Service, Federal Express, or other postal or courier service) to the London Apartment, (ii) the emailing of such documents to the Mileson Email Addresses; (iii) the emailing of such documents to counsel known to represent Mileson: Arethusa Forsyth (Mileson's representative in, among other things, negotiations with Princes Gate), Nicos Avraamides of L. Papaphilippou & Co. LLC (Mileson's counsel in Cyprus), and David Lim of

Ogier (Mileson's counsel in the BVI); and (iv) the publication of such documents on a publicly available "Mileson Page" on the case website maintained by Epiq at https://dm.epiq11.com/case/kwoktrustee/info.

37.    The entry of the Proposed Order will provide guidance and certainty in connection with service on Mileson so as to reduce the risk of any future disputes (and concomitant delays and costs) related to procedural service issues.  Moreover, to ensure that there is no prejudice involved in the approval of the Proposed Order, the Trustee intends to serve Mileson with this Motion at the Swiss Address pursuant to the Hague Convention and any other requirements of Swiss Law.

38.    In requesting this relief, the Trustee does not concede either that the London Apartment is no longer Mileson's last known address or that the Swiss Address is Mileson's last known address.

## V.    **Conclusion**

39.    Given the above, the Trustee requests that the Court enter the Proposed Order approving prior service on Mileson in this Adversary Proceeding and establishing procedures to govern service in the future.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Trustee requests that the Court enter the Proposed Order and grant

such other relief as is just and proper.


Dated:     April 22, 2025
           New York, New York

                               By: */s/ Patrick R. Linsey*
                               Douglas S. Skalka (ct00616)
                               Patrick R. Linsey (ct29437)
                               NEUBERT, PEPE & MONTEITH, P.C.
                               195 Church Street, 13th Floor
                               New Haven, Connecticut 06510
                               (203) 781-2847
                               dskalka@npmlaw.com
                               plinsey@npmlaw.com

                                     *and*

                               Nicholas A. Bassett (admitted *pro hac vice*)
                               PAUL HASTINGS LLP
                               2050 M Street NW
                               Washington, D.C., 20036
                               (202) 551-1902
                               nicholasbassett@paulhastings.com

                                     *and*

                               Douglass Barron (admitted *pro hac vice*)
                               PAUL HASTINGS LLP
                               200 Park Avenue
                               New York, New York 10166
                               (212) 318-6690
                               douglassbarron@paulhastings.com


                               *Counsel for the Chapter 11 Trustee*

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------- x
                                 :
In re:                              : Chapter 11
                                 :
HO WAN KWOK, *et al.*,[1]         : Case No. 22-50073 (JAM)
                                 :
               Debtors.      : (Jointly Administered)
                                 :
------------------------------------------------------- x

### [PROPOSED] ORDER REGARDING SERVICE PROCEDURES

Upon the motion (the "Motion")[2] of Luc A. Despins, as chapter 11 trustee (the "Trustee")

for the estate of Ho Wan Kwok (the "Debtor"), for entry of an order regarding service

procedures with respect to Defendant Qiang Guo ("Mileson" or the "Defendant") in connection

with the above-captioned chapter 11 cases (the "Chapter 11 Cases"), the Adversary Proceedings

(as defined in the Motion), and future adversary proceedings, as applicable; and the Court having

considered the Motion and all exhibits and documents attached to the Motion; and the Court

having held a hearing on the Motion on _____, 2025 (the "Hearing"); and the Court having

considered the reasons set forth on the record at the Hearing; and the Court having found that: (a)

the Court has jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334; (b) consideration of the Motion is a core proceeding pursuant to

28 U.S.C. § 157(b); (c) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (d)

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

due and sufficient notice of the Motion has been given under the particular circumstances and it appearing that no other or further notice need be given; (e) service of the Motion was proper under Rules 4 and 5, as made applicable by Bankruptcy Rules 7004 and 7005, and under Bankruptcy 9013 and 9014, each as applicable; (f) the Motion and its supporting materials establish just cause for the relief granted herein and the Motion has satisfied all applicable legal and factual burdens; and after due deliberation, considering the foregoing, and for the reasons that the Court stated on the record at the Hearing, it is hereby ORDERED THAT:

1.       The Motion is granted as set forth herein.

2.       Service of each of the Complaint Documents (as defined in the Motion) on the Defendant at 5 Princes Gate, Flat 6, London, SW7 IQJ, United Kingdom (the "<u>London Apartment</u>"), was proper and effective pursuant to Rule 4 and Bankruptcy Rule 7004.

3.       Service of the each of the Other Documents (as defined in the Motion) filed in this Adversary Proceeding, was proper and effective pursuant to Rule 5 and Bankruptcy Rule 7005.

4.       Upon the entry of this Order, all documents (each, a "<u>Document</u>") required to be served on the Defendant (including this Order) shall be served on the Defendant according to the following methods and procedures (the "<u>Service Procedures</u>").

      a.  Each Document shall be sent by U.S. Postal Service, Federal Express, or other postal or courier service, to the London Apartment, and service of such Document shall be effective upon mailing; and

      b.  Each Document shall be sent via email to the following email addresses: (i) ukistruehome@gmail.com; (ii) jeffyuef2@icloud.com;

(iii) ipadforfly@icloud.com; (iv) cybermail2018@protonmail.com; and (v) raps.sinless0h@icloud.com.

c.  Each Document shall be sent via email to the Defendant's counsels (i) Arethusa Forsyth, at email address arethusaf@proton.me; (ii) Nicos Avraamides, of L Papaphilippou & Co. LLC, at email address na@papaphilippou.eu; and (iii) David Lim, of Ogier, at email address david.lim@ogier.com, and service of such document by email to each of these counsel shall be effective notwithstanding such counsel purporting to not be authorized to accept service thereof.

d.  Each Document shall be made publicly available on a "Mileson Page" maintained by Epiq and available through the case website at https://dm.epiq11.com/case/kwoktrustee/info.

5.      Service of any Document pursuant to the above Service Procedures shall constitute proper and effective service on the Defendant pursuant to Rules 4 and 5, Bankruptcy Rules 7004 and 7005, and Bankruptcy Rules 9013 and 9014, as applicable (including in connection with Documents filed in the above-captioned adversary proceeding, matters in the Chapter 11 Cases, and in adversary proceedings not yet commenced as of the date of this Order, as applicable).

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed this ___ day of _____, 2025

_____
Hon. Julie A. Manning
United States Bankruptcy Judge

3