**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

------------------------------------------------------x
                                :

In re:                          :     Chapter 11
                                  :

HO WAN KWOK, *et al.*,[1]      :     Case No. 22-50073 (JAM)
                                  :

          Debtors.            :     (Jointly Administered)
                                  :
------------------------------------------------------x

**NOTICE OF FILING CHAPTER 11 TRUSTEE'S PRESENTATION
FOR STATUS CONFERENCE ON APRIL 22, 2025**

Luc A. Despins, in his capacity as Chapter 11 Trustee in the chapter 11 case of Ho Wan

Kwok, hereby files his *Presentation* for the status conference scheduled for April 22, 2025, at 1

p.m., attached hereto as **Exhibit A**.


Dated: April 22, 2025           LUC A. DESPINS, CHAPTER 11

                               By: */s/ Patrick R. Linsey*
                                  Patrick R. Linsey (ct29437)
                                  NEUBERT, PEPE & MONTEITH, P.C.
                                  195 Church Street, 13th Floor
                                  New Haven, Connecticut 06510
                                  (203) 781-2847
                                  plinsey@npmlaw.com

                                  *Counsel for the Chapter 11 Trustee*

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------x
:
In re:                                                              :        Chapter 11
:
HO WAN KWOK, *et al.*,[1]                              :        Case No. 22-50073 (JAM)
:
            Debtors.                   :        (Jointly Administered)
:
------------------------------------------------------x

## CERTIFICATE OF SERVICE

The foregoing, and the attachment thereto, was filed electronically on the date hereof in

the above-captioned chapter 11 case (the "Chapter 11 Case").  Notice was sent upon filing to all

appearing parties eligible to receive electronic notice in the Chapter 11 Case automatically via

email by operation of the Court's case management/electronic case files system.


Dated: April 22, 2025

                      By: */s/ Patrick R. Linsey*
                        Patrick R. Linsey (ct29437)
                        NEUBERT, PEPE & MONTEITH, P.C.
                        195 Church Street, 13th Floor
                        New Haven, Connecticut 06510
                        (203) 781-2847
                        plinsey@npmlaw.com

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## EXHIBIT A

**(Mediation Presentation)**

# *In re Ho Wan Kwok,* Chapter 11 Case No. 22-50073 (JAM)

## APRIL 22, 2025 TRUSTEE'S CASE STATUS CONFERENCE



# A.  INTRODUCTION

## Case Status Update

- The Kwok case (in contrast to Genever) has been pending for 38 months, and, as of July, the Trustee will have been in place for 36 months.
- Case Highlights:
  - More than $130 million has been recovered to date.
  - More than 4300 docket entries on the main docket.
  - Hundreds of orders entered on the main docket.
  - As of March 28, 2025, more than 1,600 claims have been filed, asserting $32 billion in claims.
  - Thus far, in total, 83 appeals have been filed, with all issued appellate decisions affirming this Court's rulings.  Further, several appeals have been dismissed as interlocutory.  There have also been nine motions to withdraw the reference filed, one of which has been ruled on and denied.
- Although the Court is intimately familiar with the issues pending before it, there is a lot of activity on the international front, and it is important to have an update regarding such matters and how they affect the management of the overall case.



# B.  FOREIGN PROCEEDINGS

## 1. Introduction

- The orders entered by the Bankruptcy Court regarding foreign defendants are often not subject to "simple" enforcement/execution in foreign courts for reasons that vary from jurisdiction to jurisdiction.
    - This raises the obvious question of why the Trustee is seeking entry of Bankruptcy Court orders in instances when defendants are located abroad.
- There are a number of reasons why it makes sense for the Trustee to seek and for the Court to enter such orders, even in default scenarios:
    - First, some foreign defendants do appear in the Bankruptcy Court. There is no way to know, before the filing of the complaints, whether a particular defendants will appear to defend the claims asserted.
    - Second, in some foreign jurisdictions, the Trustee is able to assert the U.S. law claims in a foreign court and therefore the roadmap that the Bankruptcy Court's default order provides, although not binding, is critical.
    - Third, in some foreign jurisdictions, the Trustee should be able to get recognition of a Bankruptcy Court order against a foreign defendant.
    - Fourth, the foreign defendants may have, now or in the future, assets subject to the jurisdiction of U.S. courts, and the judgment may be executed through attachment of such assets.



# B. FOREIGN PROCEEDINGS

## 1. Introduction

- **Risks/Rewards of Foreign Proceedings**
  - Foreign proceedings are, by their nature, uncertain in terms of outcome and costs.
  - The uncertainty often relates to the fact that the foreign courts do not have the same in-depth knowledge of the case and the facts surrounding the various schemes used by the Debtor and his affiliates
  - Foreign proceedings are also generally more expensive to conduct because foreign courts can sometimes require substantial court fees to be paid or deposits to be made with the court to protect a defendant from the costs of defense if the foreign court eventually determines that the claims asserted by the Trustee were not meritorious.
  - Some foreign defendants have structured their activities to render any collection actions by the Trustee very difficult and/or very expensive.
  - There is an implicit duplication of work when commencing a foreign proceeding because foreign counsel need guidance and supervision from the Trustee's U.S. team.



# B. FOREIGN PROCEEDINGS

## 2. BVI – Ace Decade

- **Ownership of Ace Decade and Dawn State**
  - For more than two-and-a-half years, the Trustee has been attempting to obtain control over Ace Decade Holdings Limited ("Ace Decade") and its wholly-owned subsidiary Dawn State Limited ("Dawn State").
    - Absent control over Ace Decade and Dawn State, the Trustee is not able to take full take control over the litigation commenced by the Debtor—together with Ace Decade and Dawn State as co-plaintiffs—against UBS in English court. In that litigation, the Debtor, Ace Decade and Dawn State have asserted damages of nearly $500 million.
    - To date, English counsel to Ace Decade and Dawn State (Harcus Parker) has refused to accept instructions from the Trustee with respect to the litigation against UBS.
  - As the Court will recall, in October 2022, the Trustee sought to hold the Debtor in contempt for failure to transfer his share in Ace Decade—notwithstanding numerous statements by the Debtor, including under oath, that he was the owner of Ace Decade, and, by extension, its wholly-owned subsidiary Dawn State.
    - In an order, dated November 17, 2022, this Court found that (i) the Debtor exclusively beneficially owned and controlled Ace Decade and (ii) Yvette Wang is not and has never been a beneficial owner of the shares in Ace Decade. The Debtor did not contest these findings and agreed not to appeal that order.



# B. FOREIGN PROCEEDINGS

## 2. BVI – Ace Decade

- Moreover, by order dated January 24, 2023, this Court held the Debtor in contempt, including because he failed to cooperate with the Trustee regarding the Trustee's control of Ace Decade and failed to surrender the Ace Decade share to the Trustee. The Court also held that the Yvette Wang was the nominee owner of Ace Decade for the benefit of the Debtor.

- **Transfer of Ace Decade Share By Yvette Wang to Rui Hao**

  - Notwithstanding the Court's rulings, in January 2023, Ms. Wang purported to transfer the Ace Decade share to Mr. Hao (an individual with various connections to the Debtor). Thereafter, in December 2023, the Trustee commenced an adversary proceeding against Ms. Wang, Mr. Hao, and Ace Decade seeking declarations that, among other things, the transfer of Ace Decade's share by Ms. Wang to Mr. Hao in January 2023 was in violation of the automatic stay and, therefore, void ab initio, and the Ace Decade share is and remains property of the Debtor's estate.

    - Ms. Wang initially appeared in the adversary proceeding to seek to dismiss the claims against her, but after the Court denied her motion to dismiss, Ms. Wang failed to answer the complaint.

    - Mr. Hao was served in Switzerland in accordance with the Hague Convention, but did not respond to the complaint. He now claims that this service was not effective.



# B.  FOREIGN PROCEEDINGS

## 2. BVI – Ace Decade

- On July 22, 2024, the Court entered a default judgment against Ms. Wang and Ace Decade as to liability (but not damages), and on September 12, 2024, the Court entered a default judgment against Mr. Hao as to liability (but not damages).
    - On February 4, 2025, the Court granted the Trustee's motion for pre-judgment remedies against Yvette Wang, authorizing the Trustee to attach property of Ms. Wang, including an apartment and accounts in the amount of up to $1.29 million.
    - On April 14, 2025, the Trustee filed his motion requesting entry of a money judgment against Yvette Wang in the amount of $1.39 million, resulting from Mr. Wang's willful and malicious conduct.
- **BVI Liquidation Proceedings Regarding Ace Decade and Dawn State**
- In June 2024, Mr. Hao commenced liquidation proceedings with respect to Ace Decade and Dawn State in the British Virgin Islands ("BVI").
    - Apparently, following the transfer of the Ace Decade share in January 2023, Mr. Hao also instructed Ace Decade to transfer the Dawn State share to himself in June 2023—such that Mr. Hao now purports to be the sole owner of both the Ace Decade share and the Dawn State share.
- Since the commencement of the BVI liquidations, the Trustee has been in discussions with the joint liquidators regarding a resolution of the ownership dispute.  The joint liquidators appear supportive of rectifying the share register to reflect the estate as the owner of Ace Decade, but they would leave it to the parties in interest to present their respective evidence for or against rectification to the BVI court.


PAUL HASTINGS

# B. FOREIGN PROCEEDINGS

## 2. BVI – Ace Decade

- However, at the direction of the BVI court, the joint liquidators did file an application in the BVI court to "rectify" the ownership of the Ace Decade and Dawn State shares, in which proceedings the respective parties in interest, i.e., the Trustee and Mr. Hao, would be able to present evidence as to their ownership claims.

- In February 2025, the Trustee and Mr. Hao submitted declarations in support of their respective positions. Notably, Mr. Hao's declaration offered no substantive evidence, but instead Mr. Hao claimed that an individual located in China (whose identity he could not reveal due to purported security concerns) was the beneficial owner of Ace Decade.

    - Also, in February 2025, in order to ensure that all ownership issues were properly joined before the BVI court, the Trustee also filed his own application to determine the ownership of the Ace Decade and Dawn State shares.

- Since then, Mr. Hao has continued to try to slow down the BVI proceedings by raising procedural objections to the Trustee's application (including that it is supposedly a nullity) and insisting that the Trustee commence new proceedings, separate from the pending applications in the BVI liquidation proceedings.

    - While the Trustee disputes that his application was a nullity, to avoid further delay, the Trustee did file new proceedings on April 15, 2025.  A directions hearing before the BVI court as to next steps is expected in the near future.



# B.  FOREIGN PROCEEDINGS

## 3. BVI – K Legacy

- **K Legacy and London Apartment**
  - K Legacy Ltd. ("K Legacy") a BVI company nominally owned by the Debtor's son, Qiang Guo ("Mileson"), is the registered owner of a luxurious apartment in London purchased in 2016 for £33 million (the "London Apartment").  The Trustee asserted in his first omnibus Alter Ego Action that K Legacy and its assets, including the London Apartment were beneficially owned by the Debtor
  - On September 12, 2024, the Court entered a default judgment [Adv. Proc. No. 24-02459, ECF No. 76] against Mileson and K Legacy with respect to the Trustee's claims that the Debtor was the true beneficial owner of K Legacy its assets, including the London Apartment.



# B. FOREIGN PROCEEDINGS

## 3. BVI – K Legacy

- **Trustee Obtains Injunctions From BVI Court Related to London Apartment.**
  - On March 22, 2024, the Trustee requested from the BVI court the entry of an ex parte injunction to prevent the transfer of the London Apartment or shares in K Legacy absent prior notification to the Trustee.
  - On March 27, 2024, the BVI court granted the Trustee's injunction request and entered an interim injunction, which, per an April 18, 2024 continuation order, was then extended until further order of the BVI court.
  - Further injunctive relief was granted by the BVI court against K Legacy and Mileson by interim order dated October 1, 2024, continued by order dated 24 October 2024 restraining, among other things, any transfer of the London Apartment or the shares in K Legacy.
  - The BVI court's injunctions have been registered in the London Apartment's property records and thus should provide a meaningful deterrent to any party interested in purchasing the London Apartment.



# B. FOREIGN PROCEEDINGS

## 3. BVI – K Legacy

- **Trustee's Litigation Against K Legacy and Mileson in BVI**
  - The Trustee has determined, as a first step, to commence litigation asserting his claims as to K Legacy and the London Apartment in the BVI, because K Legacy is a BVI company.
  - On September 30, 2024, the Trustee filed his application and points of claim in the BVI court seeking, among other things, rulings that the shares of K Legacy and the London Apartment were held in trust for and beneficially owned by the Debtor.
    - On January 13, 2025, Mileson and K Legacy filed their response (or "defence"), in which they disputed the Trustee's allegations, and the Trustee filed his reply on February 24, 2025.
    - The BVI court has currently scheduled trial dates in this matter for the 25-27 of November and 1-2 of December of 2025.



PAUL
HASTINGS

# B. FOREIGN PROCEEDINGS

## 3. BVI – K Legacy

- **Privilege Waiver Issues**
  - Due to an upcoming May 16, 2025 deadline for the parties to disclose documents relevant to their claims, the Trustee is faced with an issue arising from the fact that certain documents that the Trustee would rely on in this BVI litigation have been produced to the Trustee by certain of the Debtor's counsels pursuant to the Court's September 14, 2022 order regarding the control of privileges related to documents produced in Rule 2004 discovery [ECF 856] (the "<u>Privileges Order</u>").
    - As the Court may recall, the Privileges Order allows the Trustee to waive such privileges if authorized by the Bankruptcy Court.
  - The Trustee understands that BVI law governs the disclosure of privileged documents in BVI court matters and, further, that under BVI law a trustee does not have the right to waive the Debtor's privilege.
    - As such, in order to disclose privileged documents as part of the discovery process in the K Legacy litigation, the Trustee would not only need this Court's permission under the Privileges Order, but the documents in question would need to be made publicly available, for example by publishing them on the case website, such that they could no longer be considered privileged under BVI law.
  - The Trustee is working on identifying the documents that must be disclosed in the BVI proceeding, which may be numerous, and plans to then file a motion seeking permission to waive the privilege as to such documents and to publish them on the case website as necessary.



# B. FOREIGN PROCEEDINGS

## 4. Switzerland

- **Update on Swiss Investigation**
  - During his investigation, the Trustee has learned that the Debtor (through his alter ego entities) and his son, Mileson, hold significant assets in Switzerland, including bank accounts with a number of Swiss banks.
  - On May 21, 2024, the Trustee filed an application in Swiss court seeking to recognize this chapter 11 case in Switzerland as a foreign proceeding, without the need to commence separate ancillary proceedings in Switzerland.  The application was granted on July 24, 2024 (as to recognition) and September 19, 2024 (as to lack of ancillary proceedings).
    - In addition, the Trustee has learned that Mileson purportedly purchased a multi-million dollar residence in Weggis, Switzerland (the "<u>Weggis Property</u>") in December 2022.  The Trustee believes that the purchase of the Weggis Property and related personal property (for approximately 31 million Swiss francs, or $33 million, in the aggregate) was funded by the Debtor (through his alter ego entities).
    - Since then, the Trustee has expanded his investigation into the Debtor's and Mileson's assets in Switzerland, including by sending information requests to numerous financial institution.



# B.  FOREIGN PROCEEDINGS

## 4. Switzerland

- **Update on Swiss Investigation**
    - While not all parties have cooperated with the Trustee's requests, the Trustee was able to obtain important additional information regarding Mileson's bank accounts in Switzerland, including as to transfers made by the Debtor's alter ego entities to Mileson.  The Trustee's investigation remains ongoing.



# B.  FOREIGN PROCEEDINGS

## 4. Switzerland

- **Swiss Attachment Proceeding Regarding Assets Controlled by Mileson**
  - As this Court is aware, the Trustee is pursuing multiple adversary proceedings in this Court against the Debtors' son, Qiang Guo (aka Mileson), asserting more than $100 million in fraudulent transfer claims against Mileson.
    - To date, the Trustee has obtained default judgments against Mileson in two such adversary proceedings, namely (a) approximately $20 million in fraudulent transfers made by one of the Debtor's alter egos (Lamp Capital) and (b) approximately $4 million in fraudulent transfers made by the Debtor's alter egos (Lamp Capital, HCHK Technologies, and Leading Shine NY) related to the purchase of the Cirrus aircraft for the benefit of Mileson.
  - On February 12, 2025, the Trustee commenced proceedings in Switzerland to attach the Weggis Property and various other assets of Mileson (including luxury vehicles and bank accounts), so as to secure payment of the fraudulent transfer claims asserted against Mileson (including the default judgments).
    - The Weggis Property, a Ferrari, and Mileson's accounts at Gonet Bank and Lucerne Cantonal Bank have all been attached pursuant to court order.
    - The Trustee is in the process of seeking to attach additional assets in Switzerland.



# B.  FOREIGN PROCEEDINGS

## 4. Switzerland

- **Next Steps**
  - The Trustee anticipates that Mileson will oppose the attachment of Swiss assets, which would then require the Trustee to commence formal litigation in Swiss court seeking (a) recognition of this Court's default judgments against Mileson, or (b) in the alternative, merits rulings from the Swiss court that the challenged transfers are avoidable under U.S. and/or Swiss law.
  - During his investigation, the Trustee learned that the Weggis Property may be allegedly encumbered by millions of dollars of "bearer mortgage notes" (which are unregistered notes payable to whoever holds such notes).  The Trustee is informed that these notes are held by an entity in Liechtenstein.
    - To further investigate these matters and seek relief in regard to the bearer mortgage notes, the Trustee intends to retain Liechtenstein counsel.  (The retention application will be filed in the coming days.)



# B. FOREIGN PROCEEDINGS

## 5. Cyprus

- Bouillor Holdings Limited ("<u>Bouillor</u>") is a Cyprus entity nominally owned by Mileson that holds title to a luxury apartment in Limassol, Cyprus (the "<u>Cyprus Apartment</u>"), purchased for approximately $3.9 million in 2015.

- On August 15, 2024, the Trustee commenced an adversary proceeding (the "<u>Bouillor Action</u>") seeking, among other things, rulings that Bouillor and the Cyprus apartment are nominally owned by the Debtor, or, in the alternative, the avoidance of the transfer of the funds used to purchase the Cyprus Apartment.





PAUL HASTINGS

# B.  FOREIGN PROCEEDINGS

## 5.  Cyprus

- On September 20, 2024, the Trustee commenced litigation in Cyprus (the "<u>Cyprus Litigation</u>") seeking the imposition of an injunction to block the transfer of the Cyprus Apartment or Bouillor pending the Trustee obtaining judgment in the Bouillor Action from this Court and seeking to enforce such judgment in Cyprus.
  - The Trustee obtained the imposition of this injunction on a temporary *ex parte* basis per an order issued on September 27, 2024, which was then extended (made absolute), per an order dated October 21, 2024, after notice and a hearing at which Bouillor and Mileson failed to appear.
  - On 21 February 2025, Bouillor and Mileson filed an application in the Cyprus court seeking to overturn the injunction based largely on procedural arguments, such as that Mileson was not properly served and is outside the Cyprus court's jurisdiction because he resides in Switzerland and challenging the enforceability of a judgment in the Bouillor Action in Cyprus.  They also assert that the injunction is unnecessary because they have no intention selling the Cyprus Apartment.
    - The Trustee's response is due May 15, 2025.  Following further submissions, a hearing is scheduled to be held after November 10, 2025.

PAUL HASTINGS

# B. FOREIGN PROCEEDINGS

## 6. United Kingdom

- **Hamilton Capital**
  - Hamilton Capital Holding Limited ("<u>Hamilton Capital</u>") is a company registered in the UK and nominally owned by the Debtor's co-defendant, the fugitive William Je, that helped operate the Debtor's "Himalaya Exchange" scheme.
    - The Trustee has alleged in his first omnibus Alter Ego Action that Hamilton Capital and its assets are beneficially owned by the Debtor.  In this action, Hamilton Capital is represented by Mr. Conway and its motion to dismiss was argued on January 28, 2025.
    - The Trustee has also sought, in the alternative, the avoidance of tens of millions of dollars of transfers made by the Debtor to Hamilton Capital.
- **Hamilton Capital Commences Administration Proceeding**
  - On July 19, 2024, Hamilton Capital appointed insolvency administrators (the "<u>Administrators</u>"), thus initiating an administration process under UK law.  Notice of the appointment of the Administrators was publicly filed on July 30, 2024.
    - Notice of the administration was not provided to the Trustee until August 16, 2024, when Mr. Conway mentioned it in an email to the Trustee related to another issue.


PAUL
HASTINGS

# B. FOREIGN PROCEEDINGS

## 6. United Kingdom

- **Trustee's Concerns Regarding Administration Proceeding**
  - The Administrators filed a "Statement of Affairs" (similar to Schedules of Assets and Liabilities) on August 13, 2024, signed by Hamilton Capital's director, stating that the company held approximately £6 million of assets (including $3 million in US accounts seized by the U.S. government) and over £40 million in liabilities.
  - The Hamilton Capital administration raised numerous "red flags." Among other things, the Administrators initially appeared to take the position that the Himalaya Exchange was a viable business that could be resuscitated despite the Himalaya Exchange's website being taken down by the FBI following the Debtor's criminal conviction, and the Administrators were initially represented by Berkeley Rowe, a law firm with a long history of involvement in the affairs of the Debtor.
  - Perhaps most troubling, however, was the presence of entities that the Trustee has alleged are beneficially owned by the Debtor, such as ACA Capital Group Limited, listed in the Statement of Affairs as creditors of Hamilton Capital, suggesting that the Debtor and William Je were use this administration as a way to "cleanse" Hamilton Capital's funds by having them distributed in a UK court process.
    - This appeared to the Trustee to be the same type of "cleansing" strategy that was attempted by the HCHK entities in April 2023 when they commenced a New York law assignment proceeding which the Trustee successfully had enjoined by this Court in connection with his action to have the HCHK entities declared alter egos of the Debtor. The assignee had similarly listed as creditors of HCHK various individuals and entities linked to the Debtor.



# B. FOREIGN PROCEEDINGS

## 6. United Kingdom

- **Trustee's Involvement in Administration Proceeding**
  - After becoming aware of the administration proceeding, the Trustee, first informally and then through his UK solicitors at Pallas Partners engaged in correspondence with the Administrators regarding his concerns.
    - In sum, the Trustee sought a commitment from the Administrators that Hamilton Capital's assets (to which the Trustee claimed ownership in his Alter Ego Action) would not be distributed and that the Administrators, prior to the resolution of the Alter Ego Action, would obtain permission from the UK court before paying fees and expenses from such assets.
    - The Administrators in their responses to the Trustee's correspondence were generally unresponsive the Trustee's concerns (though they did eventually abandon the proposition that the Himalaya Exchange was a viable business that could be continued).
  - On August 23, 2024, the Trustee was informed of an application (the "<u>Gold Application</u>") made by the Administrators seeking the UK Court's permission to sell 26 kilograms of gold bullion held by Hamilton Capital and valued in the Statement of affairs at approximately £ 1.5 million. The gold had been subject to a worldwide injunction against William Je entered in another UK litigation where a victim of the Himalaya Exchange accused William Je of fraud.
  - On October 25, 2024, the Trustee filed papers (the "<u>Trustee's Application</u>") with the UK court opposing the distribution of assets to which he claimed ownership, including any proceeds from the sale of gold sought by the Administrators.



# B. FOREIGN PROCEEDINGS

## 6. United Kingdom

- **Trustee's Agreement with Administrators**
  - A hearing before the UK court in connection with the Gold Application and the Trustee's Application was held on April 1, 2025, at which the UK court appeared to be broadly supportive of the Trustee's position.
  - During a recess in the hearing, counsel to the Administrators conferred with counsel to the Trustee and agreed to resolve their dispute through an agreed upon stipulated order. The UK court granted the Gold Application and stayed the Trustee's Application subject to the terms of such stipulated order, under which, among other things:
    - The Administrators made an undertaking that they will not distribute any proceeds of assets of Hamilton Capital to its purported creditors nor to use the same to discharge the costs and expenses of the administration (save as might be agreed by the Trustee) prior to the dismissal of the related Alter Ego Action.



# B. FOREIGN PROCEEDINGS

## 7. Mauritius

- Himalaya International Clearing Limited ("Himalaya International Clearing"), is a BVI company, nominally owned by William Je, that helped operate the Debtor's "Himalaya Exchange" scheme. The Trustee asserts in his first omnibus Alter Ego Action that Himalaya International Clearing and its assets are property of the Debtor.

- In August 2024, the Trustee learned that in January 2024 Himalaya International Clearing had initiated litigation in Mauritius to compel Silver Bank, a Mauritius bank in conservatorship proceedings, to allow Himalaya International Clearing to transfer $15 million it had deposited with Silver Bank to an account at another bank in Malaysia. Silver Bank had opposed this request, and the litigation remained pending on the e-filing system of the Commercial Division of the Supreme Court.

- To prevent the potential dissipation of assets to Malaysia, in October 2024 the Trustee requested and obtained recognition in Mauritius as foreign representative of the Debtor's estate and the Trustee further filed an application to intervene in Himalaya International Clearing's litigation against Silver Bank. Himalaya International Clearing has filed papers in opposition, though the litigation and the Trustee's application are currently pending on the e-filing system of the Commercial Division of the Supreme Court as no further filings have been made by parties.

- The Trustee has concerns regarding the outcome of the Silver Bank conservatorship and may seek to scale back his activities there depending on the progress of such conservatorship.



# B. FOREIGN PROCEEDINGS

## 8. United Arab Emirates

- The Trustee's investigation has revealed that the Debtor and his associates (including Mileson) have been active in the United Arab Emirates (the "<u>UAE</u>").

  - Among other things, it appears that the Debtor directed the flow of tens of millions of dollars to UAE bank accounts, and that the UAE became a base of operations for the Debtor's G Club and Himalaya Exchange schemes, and it is believed that William Je fled to the UAE from the United Kingdom around the time of the Debtor's arrest and, further, that Mileson is attempting to obtain a residency status there.

  - The Trustee has engaged Kobre & Kim as UAE counsel to pursue his investigation in the UAE and intends to seek recognition in the UAW under the model insolvency law in order to facilitate his investigation.



# C. MILESON SERVICE ISSUES

## 1. Mileson Service Procedures

- **Mileson's Involvement in Chapter 11 Case**
  - As the Court may recall, the Debtor's son, Mileson, has assiduously avoided personally involving himself in his father's chapter 11 case or related adversary proceedings, preferring to default rather than participate.
    - That being said, Mileson has been heavily involved in these matters through companies he nominally owns, such as Lamp Capital and Bravo Luck, and he did file a proof of claim in the bankruptcy case of Genever Holdings LLC.
- **Prior Service on Mileson In London**
  - Mileson has been a defendant in a number of the adversary proceedings commenced by the Trustee, and the Trustee has served Mileson with documents in these matters at the address of the apartment in London nominally owned by Mileson through the BVI company K Legacy (the "<u>London Apartment</u>"), discussed in more detail below.
    - In his investigation, the Trustee obtained numerous pieces of evidence pointing to the London Apartment as Mileson's address.



# C.  MILESON SERVICE ISSUES

## 1. Mileson Service Procedures

- **Mileson's Assertion of Swiss Address**
  - In recent months, Mileson has asserted in foreign proceedings, in particular in the Trustee's litigation against him in Cyprus, that he has not resided in London for several years and that he lives in Switzerland.
  - Mileson's assertion of a Swiss address (which, however, the Trustee does not concede) raises service issues because the Trustee understands that Swiss law:
    - strictly prohibits (including through criminal sanctions) the mailing of foreign court documents to parties in Switzerland and
    - requires that all legal documents (including those initiating adversary proceedings as well as subsequent documents) be served through Switzerland's centralized service agency pursuant to the Hague Convention, a time-consuming process that can delay the service of documents by several months.
  - Further, the Trustee suspects that Mileson is asserting his Swiss residency strategically to delay the Trustee's litigation.


PAUL
HASTINGS

# C. MILESON SERVICE ISSUES

## 1. Mileson Service Procedures

- **Trustee's Motion for Service Procedures**
  - To address these service issues, the Trustee recently filed a motion in the main case and in the adversary proceedings in which Mileson is a defendant to confirm the effectiveness of prior service and allow for alternative service procedures with respect to Mileson in adversary proceedings in which he is a defendant, main case matters, and any future adversary proceedings against him.
    - The proposed order presented by the Trustee would (1) confirm the effectiveness of prior service on Mileson in London and (2) allow for any future service of documents on Mileson to be sufficient upon the mailing of such documents to Mileson's London address, the emailing of such documents to Mileson and his foreign counsel, and the publication of such documents on the case website.
    - The Trustee intends to serve this motion on Mileson in Switzerland through the Hague Convention methods to thereby avoid any disputes or assertions that Mileson has somehow been prejudiced.
    - Given the extended time frame of Hague Convention service, the Trustee proposes that the hearing and response deadline related to the Mileson service motion not be scheduled until such service has been effectuated.



# D.  FORFEITURE ISSUES

## 1. Background

- The superseding indictment filed in connection with the Debtor's criminal trial has a list, several pages long, of the assets the government believes are subject to forfeiture. The vast majority of those assets are (i) personal and real property, such as luxury cars and $60,000 mattresses, and (ii) hundreds of millions of dollars held in approximately 25 accounts.  None of these assets are held directly in the Debtor's name. The government has seized, and is holding, approximately $642 million (plus interest).

- Yvette Wang, one of the Debtor's co-defendant's, has pleaded guilty.  In connection with her guilty plea, and her sentencing, the government (as it did with the Debtor) has published a list of assets that it believes are subject to forfeiture.  Those assets overlap significantly with the assets listed in the Debtor's indictment.

- The District Court has entered a preliminary order of forfeiture as against Wang.  No such order has been entered as against the Debtor.

- The Trustee believes that many, if not all, of these assets are properly property of the estate that should be administered in the Debtor's chapter 11 bankruptcy case.



# D. FORFEITURE ISSUES

## 2. Discussions with Government

- The existence of parallel bankruptcy and criminal cases raises important and complex legal and factual issues. However, the Debtor is not the first person subject to parallel criminal and bankruptcy cases.

- In most of these cases these issues, and the potential for a conflict between the government and the bankruptcy trustee, have been resolved consensually, usually by a so-called "coordination agreement."

  - For example, such an agreement was reached in connection with the Goldberg case handled in the Connecticut district and bankruptcy court; the government and the estate representatives also reached consensual agreements in the *Dreier* and *FTX* bankruptcies.

  - The Trustee has had extensive discussions with the government about the possibility of such an agreement in this case, which would (i) result in hundreds of millions of dollars coming back to the estate and (ii) avoid the expense of litigating these complex and novel issues

- Notwithstanding these extensive discussions, those efforts have, so far, been unsuccessful.  It is the Trustee's understanding that, as of now, the government is prepared to litigate instead of settling.

- Briefly stated, the Trustee's principal contention is that (i) the government's rights in forfeited assets are entirely derivative of the criminal defendant's and (ii) hundreds of millions of dollars deposited, by third parties, into accounts held by the Debtor's alter egos after the petition date belong to the estate—and *never* belonged to the Debtor.



# D.  FORFEITURE ISSUES

## 3. Potential Litigation

- As noted, none of the assets the government has identified as subject to forfeiture are held in the Debtor's name directly.  This includes over **$700 million** of assets held by entities subject to alter ego rulings and/or alter ego complaints.  For example:

  - The Lady May is identified as subject to forfeiture, but this court and the district court have already held that it is property of the estate.

  - The cash seized by the government was held in accounts nominally held by entities subject to the pending omnibus alter ego complaints.

- In addition to the Trustee's alter ego litigation, the intersection of forfeiture and bankruptcy law raises complicated issues, such as the relation back doctrine, the difference between "substitute assets" and "criminal proceeds," the estate's ownership of post-petition assets, and the legal and factual complexity of tracing.

- The Trustee believes that application of the relevant law to the unique facts here – which include the sui generis issue of post-petition criminal conduct – is such that the estate has strong legal claims to hundreds of millions of dollars currently being held by the government.

- Because settlement discussions have so far not been fruitful, the Trustee is preparing to litigate those issues.



# D. FORFEITURE ISSUES

## 4. Current Status and Timing of Litigation

- As noted, the District Court has entered a preliminary order of forfeiture in connection with Yvette Wang. The entry of such an order usually triggers a process through which other parties can assert that items identified for forfeiture cannot be forfeited to the government because such other parties have a superior interest. The Trustee, on behalf of the estate, would be such a party.

- However, on April 15, 2024, the District Court entered an order staying all proceedings related to the Yvette Wang forfeiture until a preliminary order of forfeiture is entered as against the Debtor. This order, which granted a motion filed by the government following discussions with the Trustee, recognizes the extensive overlap between the forfeiture process for Wang and the process for the Debtor.

- As of now, the Debtor's sentencing is currently scheduled for September 8, 2025, and the timing of the Debtor's accompanying forfeiture process remains uncertain. However, entry of this order allows the estate to avoid the significant time and expense of litigating in connection with the Wang forfeiture and then repeating that litigation in connection with the Debtor's forfeiture process.

- As things stand, the Trustee has no choice but to join issue with the government on the legal and factual issues raised by the intersection of forfeiture and bankruptcy law and will do so in accordance with the schedule set by the District Court. Of course, the Trustee remains open to a consensual resolution.



# E.  SHERRY NETHERLAND APARTMENT

## 1. Remediation of Sherry Netherland Apartment

- As previously reported to the Court, the remediation of the Sherry Netherland apartment following the March 2023 fire were substantially completed in August 2024.

  - Formal sign-off on the remediation was provided by the NYC building department in February 2025.

  - The total cost of remediating and cleaning the apartment (including the fees of the architect) was approximately $1.7 million.  See Docket No. 4208.

  - Genever Holdings LLC ("Genever US") funded the remediation cost by borrowing from the Kwok estate under a $3 million interdebtor DIP facility.  After taking into account other borrowings, including to pay Genever US's legal counsel in the AIG adversary proceeding, the remaining borrowing available under the DIP facility is approximately $500,000.





PAUL
HASTINGS

# E. SHERRY NETHERLAND APARTMENT

## 2. Continuing Efforts to Sell Sherry Netherland Apartment

- Shortly after completion of the remediation, starting in September 2024, the apartment was re-listed for sale by Sotheby's International Realty, i.e., the real estate broker of Genever US.

  - Immediately prior to the March 2023 fire, the apartment had been listed at $32.5 million.

  - Starting September 2024, the apartment was listed at $24 million, which listing price was subsequently lowered to $19.5 million (in November 2024) and then $16 million (in February 2025).

  - Genever US intends to further reduce the listing price to $12 million.

- Genever US also requested, and the court granted, the continued retention of Sotheby's International Realty as its real estate broker.  See Docket No. 3660.

- To date, Genever US has not received any actionable purchase offer.

  - The sale process remains challenging because of (a) substantial monthly maintenance charges in the amount of $90,000, (b) substantial cost that a future buyer will likely have to expend to renovate and modernize the apartment, and (c) the current uncertain economic climate.


PAUL
HASTINGS

# E. SHERRY NETHERLAND APARTMENT

## 3. AIG Insurance Litigation

- In addition to undertaking the remediation project, Genever US has also commenced an adversary proceeding against its insurer, AIG, seeking a declaration that AIG must provide coverage for its property loss under its insurance policy.

    - Genever US filed its motion for summary judgment on October 6, 2023, and the hearing on the motion was held on January 30, 2024. The motion remains sub judice.

    - Since the hearing on the summary judgment motion, the parties have engaged in fact and expert discovery. Fact discovery concluded in December 2024.

    - In December 2024, AIG submitted additional materials in connection with the summary judgment motion, and Genever US filed its response.



# E. SHERRY NETHERLAND APARTMENT

## 4. Other Recent Developments

- Recently, the Sherry Netherland filed a motion seeking to compel Genever US to identify a source of funding to pay $90,000 a month in maintenance fees.
  - To date, the monthly maintenance fees have been applied against the security deposit (as permitted under the settlement agreement, dated September 24, 2021). However, the security deposit is expected to be depleted in June 2025.
- The deadline to object to the Sherry Netherland's motion is April 24, 2025, and the Trustee and Genever US intend to file a response. The hearing on the motion is scheduled for April 29, 2025.



# F.  OTHER MATTERS

## 1. Sale of Mahwah Mansion

- The Trustee has moved for summary judgment in his action against Taurus Fund LLC to establish that the castle-style mansion in Mahwah, New Jersey is property of the estate.  That motion was argued and is fully briefed, including supplemental briefing permitted by the Court earlier this year.

- The Trustee is also marketing the Mahwah mansion for sale. The Court approved the marketing process after the Debtor's associates terminated their funding of the expenses for the property, which are considerable and are now borne by the estate.

- The Trustee has engaged Compass to market the property.  The property was initially listed for $33 million, and earlier this month the Trustee lowered the listing price to $26.9 million to stimulate further interest.

- The costs of maintaining the mansion are excessively high and the mansion continues to be uninsured.



PAUL
HASTINGS

# F.  OTHER MATTERS

## 2. Auction of Personal Property

- On January 31, 2025, an application [ECF 4021] was filed to retain an auctioneer to sell personal property.  An Order was entered on February 27, 2025 [ECF 4180], granting the retention application in part (with respect to the sale of motor vehicles).   Because the retention application did not include a catalog of the furniture to be sold, the balance of the retention application was adjourned at the request of the US Trustee's Office until a catalog could be filed in connection with an application to sell personal property.

- On April 8, a sale application was filed with respect to the motor vehicles [ECF 4301], which was scheduled for hearing on May 13 at 1 pm. We have requested that the balance of the retention application also be heard at that time.

  - The sale application seeks approval of an online auction of 4 motor vehicles (3 motorcycles and a Lexus) and the Sherry Netherland furniture (which has now been catalogued).  To date, no objections have been filed to the sale application or the retention application.

  - Harley Davidson motorcycles held by the auctioneer are not included in the Sale Application because the keys are missing, which have been ordered from Harley Davidson, though no delivery date has been provided.

- In addition to the Sherry Netherland furniture, there are two other groups of personal property being held in the New Jersey storage facility--office furniture that had been in the HCHK offices and furniture from the Greenwich Land mansion.  The Trustee will determine the approach for the sale of these assets following the results of the auction of the Sherry Netherland furniture.

PAUL
HASTINGS

# F.  OTHER MATTERS

### 3. Sale of Cirrus Jet

- *Despins v. Cirrus Design Corporation, et al.* (Adv. Proc. No. 24-5225) involves fraudulent transfers that funded the purchase of aircraft for the Debtor's son, Qiang Guo (aka Mileson).  The Trustee has asserted claims against Cirrus as the initial transferee and a claim against Mileson as the recipient of the benefit of the transfers.

- On November 20, 2024, the Trustee obtained a default judgment against Mileson in the amount of $3,915,140.00.  The Trustee's claims against Cirrus remain pending.

- In February of 2025, the Court granted the Trustee's motion to enforce his judgment against Qiang Guo by requiring that title to a Cirrus "personal jet" aircraft be turned over to the Trustee.  A U.S. company that had held title to the Cirrus jet for Qiang Guo's benefit complied with the Court's order and transferred title to the Trustee.

- The Trustee has obtained control of the Cirrus jet.  The Trustee will file a motion requesting authority to sell the jet and apply the proceeds to the Trustee's judgment against Mileson as soon as the Cirrus jet is in a position where it can be sold.



PAUL
HASTINGS

# F.  OTHER MATTERS

## 4. Maybach in New Jersey Parking Lot

- The Trustee has identified a Maybach luxury sedan titled to Golden Spring (New York) Ltd that is in the possession of a towing company in northern New Jersey.

- The towing company has threatened to auction the vehicle.  The Trustee has advised the towing company of the automatic stay and the Court's judgment in the Golden Spring adversary proceeding.  The Trustee will seek Court intervention, if necessary.





# F.  OTHER MATTERS

## 5. Claims Reconciliation and Objections

- As previously mentioned to the Court, the Trustee will seek to open up the claims bar date with respect to claims against adjudged Debtor alter egos. However, it would be premature to do so at this time because there remain a number of pending Alter Ego Actions.

- The Trustee has been reviewing filed claims and plans to prepare an omnibus claims procedures motion that would allow the Trustee to object on an omnibus basis to proofs of claim that are facially invalid (such as where the proof of claim form has been submitted with not documentary support attached).


PAUL
HASTINGS

# G.  ADVERSARY PROCEEDINGS

## 1. Avoidance Actions Update

- **Pending Avoidance Actions**
    - There are 349 pending avoidance actions against third parties collectively seeking to avoid and recover transfers greater than $949 million.
        - Of these, 207 are fully stayed, 45 are partially stayed, and 50 are in formal mediation proceedings.
        - The Trustee has reached agreements to settle avoidance claims with 16 transferees.
        - As to the 50 avoidance defendants in formal mediation, the Trustee will be discussing with Judge Tancredi how many of these defendants should remain in mediation and how many should be moved to a litigation track.
            - This discussion will also cover the topic of next steps with regarding the defendants in mediation who participated in the joint briefing of certain issues resolved by the Court in its joint briefing decision issued on March 4, 2025 (the "Joint Briefing Defendants").



# G. ADVERSARY PROCEEDINGS

## 1. Avoidance Actions Update

- **Motions to Dismiss in Avoidance Actions**
    - In avoidance actions that are not stayed, and excluding the Joint Briefing Defendants, 17 defendants have filed individual motions to dismiss.
        - The Court has denied 10 of these in full (those filed by Harcus Parker, G4S Security Systems, V.X. Cerda & Associates, ACASS Canada, Aaron Mitchell,  Lawall & Mitchell, Weddle Law, Boies Schiller Flexner, and Liberty Jet Management).
        - As to ACASS USA, the Court has denied the defendant's motion to dismiss except as to one issue (related to the Cape Town Convention), on which the Court has scheduled argument on May 20.
        - As to Apple and Meta Platforms, these are scheduled for argument on April 29.
        - As to Berkeley Rowe, the Francis Firm, and FFP, these were denied in part pursuant to the joint briefing decision but otherwise not decided.
        - Norris McLaughlin more recently filed a motion to dismiss that is not yet fully briefed.
    - The Trustee intends to soon file a discovery procedures motion with respect to all the avoidance actions.
    - "Law of the Case" argument.



# G. ADVERSARY PROCEEDINGS

## 1. Avoidance Actions Update

- **Motion for Judgment on the Pleadings Against Zeisler & Zeisler**
  - This motion is fully briefed, and certain issues were resolved in the Court's March 4 joint briefing decision.
  - The parties filed their joint statement of the issues on March 28. As discussed therein, the parties agree on what the remaining issues are, but the Trustee opposes the request made by Zeisler & Zeisler to submit additional briefing on the law of the case issue.



# G. ADVERSARY PROCEEDINGS

## 2. Alter Ego Actions Update

- **Alter Ego Rulings in Favor of Trustee**
  - As the Court is aware the Trustee has commenced adversary proceedings seeking rulings that numerous entities nominally owned by third parties were in fact alter egos of and/or beneficially owned by the Debtor (the "Alter Ego Actions").
  - The Trustee has obtained rulings in his favor in the Alter Ego Actions as related to a number entities including:
    - HK USA
    - Greenwich Land
    - Golden Spring
    - Lamp Capital
    - Whitecroft Shore Limited
    - The HCHK entities
    - K Legacy



# G. ADVERSARY PROCEEDINGS

## 2. Alter Ego Actions Update

- **Pending Alter Ego Actions Regarding Various Entities, Including**:
  - Taurus Fund LLC (Mahwah Mansion) [Adv. Proc. No. 23-05017]: Trustee's motion for summary judgment is fully briefed, including post-hearing briefing, and was argued on November 19, 2024.
  - Hudson Diamond NY and Leading Shine NY ) [Adv. Proc. No. 23-05023]: Trustee's motion for summary judgment is fully briefed and was argued on December 10, 2024.
  - Numerous entities that are the subject of the Trustee's "first omnibus" Alter Ego Action commenced in February 2024 [Adv. Proc. No. 24-05249]: Motions to dismiss filed by certain defendants, including those associated with the G Club, Himalaya Exchange, and Hamilton schemes, are fully briefed and were argued on January 28, 2025.
    - Defaulting defendants were placed in the "severed Alter Ego Action" [Adv. Proc. No. 24-05138].
  - Bouillor, the Cyprus entity nominally owned by the Debtor's son that holds a luxury apartment in Limassol, Cyprus [Adv. Proc. No. 24-05311]: The defendants have defaulted; the Trustee's next step is to file a motion to resolve certain service issues that have arisen related to the Debtor's son.
  - Numerous entities that are the subject of the Trustee's "second omnibus" Alter Ego Action, filed in December 2024 [Adv. Proc. No. 05322], with respect to a number of which the Trustee will soon seek entries of default.


PAUL HASTINGS

# G. ADVERSARY PROCEEDINGS

## 3. Certain Other Pending Matters

- **Trustee's Motion Seeking Enforcement of Injunction Against Mei Guo**:
  - In its action again Mei Guo related to the Bombardier jet [Adv. Proc. No. 23-05008], the Trustee filed a motion seeking sanctions and enforcement of the Court's injunction prohibiting the dissipation of assets held by Mei Guo.
    - The motion was fully briefed, with an evidentiary hearing held on March 25 and legal argument on March 26, 2025.
- **Trustee's RICO Action**
  - The Trustee's RICO adversary proceeding [Adv. Proc. No. 24-05273] is current stayed pursuant to the Court's stay order entered on December 9, 2024, pending the entry of final non-appealable judgment as to all defendants in the Trustee's first omnibus Alter Ego Action or further order of the Court.
  - Although the action is stayed, the Trustee is having discussions with defendants which could lead to the partial resolution of claims asserted in the RICO adversary proceeding.

