**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-----------------------------------------------------------------x
                                                                 :
In re:                                                           :    Chapter 11
                                                                 :
HO WAN KWOK,                                                     :    Case No. 22-50073 (JAM)
                                                                 :
              Debtor.                                            :
                                                                 :
-----------------------------------------------------------------x

**NOTICE OF**
**AMENDED SETTLEMENT AGREEMENT AND [REVISED PROPOSED] ORDER**
**GRANTING MOTION OF CHAPTER 11 TRUSTEE, PURSUANT TO BANKRUPTCY**
**RULE 9019, REGARDING SETTLEMENT WITH BROWN RUDNICK LLP**

Luc A. Despins, in his capacity as the Chapter 11 Trustee (the "Trustee") appointed in the

Chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor"), hereby submits the

*Amended Settlement Agreement* ("Amended Agreement") between the Trustee and Brown

Rudnick LLP ("Brown Rudnick"), and a *[Revised Proposed] Order Granting Motion of Chapter*

*11 Trustee, Pursuant to Bankruptcy Rule 9019, Regarding Settlement with Brown Rudnick LLP*

(the "Revised Proposed Order").  The Trustee respectfully requests that the Revised Proposed

Order, which is revised solely to provide for approval of the Amended Agreement, enter in lieu of

the original proposed order (the "Original Proposed Order") filed as part of the Trustee's *Motion,*

*Pursuant to Bankruptcy Rule 9019, Regarding Settlement with Brown Rudnick LLP* [Main Case

Docket No. 4298] (the "9019 Motion").[1]

The Trustee and Brown Rudnick executed the Amended Agreement, which amends and

supersedes the parties' original *Settlement Agreement* (the "Original Agreement")[2], following the

---
[1]    The Original Proposed Order is attached to the 9019 Motion as Ex. A.

[2]    The Original Agreement is attached to the 9019 Motion as Ex. B.

Trustee's consultation with counsel for the United States Trustee regarding the 9019 Motion.  The Amended Agreement is attached hereto both as executed and marked to show changes compared to the Original Agreement, respectively, as **Exhibits 1-A and 1-B**.  The Revised Proposed Order is attached hereto in a clean form and marked to show changes as compared to the Original Proposed Order, respectively, as **Exhibits 2-A and 2-B**.

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK.]*

Dated:    April 24, 2025        LUC A. DESPINS,
          New Haven, Connecticut    CHAPTER 11 TRUSTEE


By: */s/ Patrick R. Linsey*
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    plinsey@npmlaw.com

    *Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------------x
                                          :
In re:                                    :    Chapter 11
                                          :
HO WAN KWOK,                              :    Case No. 22-50073 (JAM)
                                          :
              Debtor.                     :
                                          :
-------------------------------------------------------------x
```

## CERTIFICATE OF SERVICE

The foregoing, inclusive of all exhibits thereto, was filed using the Court's case management/electronic case files ("CM/ECF") system in the above-captioned chapter 11 case of Ho Wan Kwok (the "Chapter 11 Case"). Notice of this filing will be sent automatically via email by operation of the CM/ECF system to all parties appearing in the Chapter 11 Case that are eligible to receive electronic notice.

Dated this 24th day of April 2025 at New Haven, Connecticut

<div style="margin-left:40%">

*/s/ Patrick R. Linsey*
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
plinsey@npmlaw.com

</div>

## **EXHIBIT 1-A**

**Amended Settlement Agreement (Executed)**

## AMENDED SETTLEMENT AGREEMENT

This Amended Settlement Agreement (the "Agreement"), is entered into as of this 24th day of April, 2025, by and between: (a) LUC A. DESPINS in his capacity as chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor" or "Kwok"); and (b) BROWN RUDNICK LLP ("BRL," and together with the Trustee, the "Parties"). The Parties hereby agree as follows:

## RECITALS

WHEREAS, on February 15, 2022 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the District of Connecticut (the "Court") a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case is administered under Case No. 22-50073 (the "Bankruptcy Case");

WHEREAS, the filing of the Bankruptcy Case created an estate pursuant to section 541 of the Bankruptcy Code (the "Bankruptcy Estate" or "Estate");

WHEREAS, on June 15, 2022, the Court entered a memorandum of decision and order (the "Trustee Order") directing the United States Trustee to appoint a chapter 11 trustee in the Debtor's chapter 11 case;

WHEREAS, pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins as the Trustee, and on July 8, 2022, the Court entered an order granting the appointment of Luc A. Despins as the Trustee in the Bankruptcy Case and charging the Trustee with the duties and obligations described therein;

WHEREAS, both before and after the Petition Date, BRL represented Kwok in matters related to the Bankruptcy Case, which representation BRL represents commenced on or about February 11, 2022, ended on or about August 1, 2022, and shall be referred to as the "Bankruptcy Representation," which term expressly excludes the Criminal Defense Representation (as defined herein);

WHEREAS, following the Bankruptcy Representation, BRL was engaged to advise and provide legal services in connection with the United States Government's criminal investigation and prosecution of the Debtor, which engagement BRL represents commenced on or about March 16, 2023, and ended on or about July 12, 2023 (the "Criminal Defense Representation"), and which the Parties have expressly excluded from the settlement and releases provided herein;

WHEREAS, the Trustee has asserted that the Bankruptcy Estate holds certain claims against BRL arising out of the Bankruptcy Representation and BRL unequivocally denies such claims;

WHEREAS, the Parties have entered into tolling agreements concerning any claims the Bankruptcy Estate holds against BRL and vice-versa;

1

WHEREAS, in order to avoid the expense, burden and inconvenience of litigation, the Trustee and BRL reached a settlement that resolves the Released Claims (defined below), subject to the terms and conditions set forth in this Agreement; and

WHEREAS, the Parties desire and intend to effect a final settlement and resolution of the Released Claims pursuant to the terms herein.

WHEREAS, on April 4, 2025, the Parties entered into a prior version of this settlement agreement (the "Original Settlement Agreement").

WHEREAS, by this Agreement, the Parties now wish to amend and supersede the Original Settlement Agreement.

## TERMS OF AGREEMENT

NOW THEREFORE, in consideration of the foregoing recitals, which along with the Exhibit attached hereto are incorporated into this Agreement, and of the mutual agreements, covenants and releases set forth herein, and for other good and valuable consideration, the adequacy and receipt of which the Parties hereby acknowledge, the Parties agree as follows:

**1.**     **Settlement Amount.**  In consideration of the releases contained herein and other valuable consideration provided by this Agreement, and in complete satisfaction of the BRL Released Claims, BRL agrees to pay to the Trustee the sum of $7,000,000, plus the $948,000 that BRL currently holds in trust as the remainder of the retainer it received to represent Kwok in the Bankruptcy Case, for a total of $7,948,000 (the "Settlement Amount").  As part of this Agreement to resolve the Released Claims against BRL, BRL waives and further agrees not to file an application for any fees for services rendered or for any reimbursement of expenses incurred by BRL in connection with the Bankruptcy Representation.

**2.**     **Effectiveness of this Agreement.**  This Agreement is subject to approval by the Court in the Bankruptcy Case.  This Agreement shall be effective (the "Effective Date") when an order that is consistent with Paragraph 3 hereof (the "Order") is entered by the Court in the Bankruptcy Case and becomes final.  For the avoidance of doubt, the Effective Date shall be no earlier than the later of the occurrence of (i) entry of the Order and the passage of thirty-five days from entry of the Order during which time no appeal of the Order has been filed and no motion within Rule 8002(b) is filed or other event (e.g., the grant of a stay by a court of competent jurisdiction) that extends the time to appeal, and (ii) if any appeal has been filed or motion within Rule 8002(b) is filed or other event occurs (e.g., the grant of a stay by a court of competent jurisdiction) that extends the time to file an appeal, any such appeal is finally and fully resolved or no such appeal is filed by the applicable deadline to file.  The Trustee shall request approval of this Agreement pursuant to the Trustee's pending motion for approval of the Original Settlement Agreement [Case No. 22-50073 Docket No. 4298] (the "9019 Motion").

**3.**     **Form of Order.**  The Order granting the 9019 Motion shall (a) approve all of the provisions of this Agreement without limitation or addition, (b) contain a finding that the Trustee

2

holds, and has the right to settle and release, the BRL Released Claims, and (c) not be subject to any stay including, without limitation, the stay of Bankruptcy Rule 6004(h).

**4.      Time to Pay the Settlement Amount.** Within five (5) business days following the Effective Date, BRL shall cause to be paid to the Trustee the Settlement Amount in immediately available funds.  BRL shall cause the Settlement Amount to be paid by initiating a wire transfer (or wire transfers)  The entire Settlement Amount will be paid to the Trustee.  Any such transfer(s) shall be made to an account designated by the Trustee pursuant to wire instructions that counsel for the Trustee has provided to counsel for BRL, receipt of which instructions BRL confirms.

The Trustee acknowledges and agrees that BRL and its insurer(s) will have absolutely no role in or responsibility for allocating or disbursing any portion of the Settlement Amount after the wire transfer(s) constituting the full Settlement Amount has been transferred to the Trustee or in ensuring that the Trustee disburses any sum of money to any person, account, or entity.  It is expressly understood by the Parties that BRL's payment obligation shall be completely satisfied immediately upon the transfer of the Settlement Amount pursuant to the wire instructions which the Trustee has provided BRL by email through the Parties' counsel, resulting in full payment of the Settlement Amount (the "Settlement Payment"), and BRL is not and will not be responsible in any way for any taxes, offsets or any other deductions or otherwise.

**5.      Failure to Timely Pay Settlement Amount**.  If BRL fails to pay the Settlement Amount to the Trustee pursuant to Paragraph 4 of this Agreement, then BRL agrees and authorizes the Trustee, in its sole discretion, to terminate this Agreement effective immediately by written notice to BRL of termination of the Agreement.  Upon any termination of this Settlement Agreement, the Trustee may elect and pursue any remedy available to it, including without limitation: (i) commencing an adversary proceeding to pursue the BRL Released Claims; and (ii) enforcing this Agreement to the fullest extent of the law.

**6.      Mutual Releases**.

**a.**    "BRL Released Claims" means any and all manner of claims, counterclaims, complaints, disputes, demands, rights, actions, potential actions, causes of action, proofs of claim, liabilities, duties, obligations, damages, losses, diminutions in value, obligations, judgments, decrees, requests for attorneys' fees or costs, matters, issues, suits, proceedings, and controversies of any kind or nature whatsoever, whether known or unknown, in law, at equity or otherwise, asserted or unasserted, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, claimed or unclaimed, apparent or not apparent, foreseen or unforeseen, matured or not matured, secured or unsecured, which now exist, or heretofore or previously existed, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise (collectively, "Claims"), that are owned, held, or capable of being asserted by or on behalf of the Bankruptcy Estate, or any other person or entity asserting currently or in the future by, under, through, or on behalf of the Bankruptcy Estate, and each of

3

their respective successors or assigns, against the BRL Releasees (defined below), whether or not any such Claims were asserted on or before the Effective Date, including, but not limited to, any Claims arising under federal, state or foreign law, common law, bankruptcy law, statute, equity, rule or regulation, or agreement, whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, or of any other type or in any other capacity, and including actions that arise out of or are based on tort, breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Bankruptcy Estate, any other Claims under the Bankruptcy Code, and actions that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, *provided, however*, the BRL Released Claims shall not include any Criminal Defense Carve-Out Claims (defined below).  Subject to the Criminal Defense Carve-Out (defined below), BRL Released Claims shall include any Claims against the BRL Releasees (defined below)that existed as of the Effective Date and that may be exclusively asserted by or on behalf of the Bankruptcy Estate (including by the Trustee) under applicable law.  For the avoidance of doubt, to the extent the Trustee or Estate now owns or holds an interest or control of Claims that were previously held and/or controlled by any other person or entity against the BRL Releasees (defined below), such as, for example only, Claims previously held by investors and/or creditors of Kwok or the Estate, any such Claims are included in this definition of BRL Released Claims unless subject to the Criminal Defense Carve-Out (defined below).

b.  "Estate and Trustee Released Claims" means any and all Claims against the Estate and Trustee Releasees (defined below), whether or not any such Claims were asserted on or before the Effective Date, including, but not limited to, any Claims arising under federal, state or foreign law, common law, bankruptcy law, statute, equity, rule or regulation, or agreement, whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, or of any other type or in any other capacity, and including any requests for compensation and/or reimbursement of expenses, and/or any other Claims under the Bankruptcy Code, *provided, however*, the Estate and Trustee Released Claims shall not include any Criminal Defense Carve-Out Claims (defined below).

c.  "Criminal Defense Carve-Out Claims" means any and all Claims against the BRL Releasees (defined below), or the Estate and Trustee Releasees (defined below), relating to the Criminal Defense Representation, including, without limitation, any avoidance or recovery actions arising from transfers relating to the Criminal Defense Representation; and "Criminal Defense Carve-Out" means the exclusion of Criminal Defense Carve-Out Claims from the BRL Released Claims and the Estate and Trustee Released Claims (collectively, the "Released Claims").  Notwithstanding any other provisions in this Agreement, BRL and the Trustee and Estate retain all defenses to Criminal Defense Carve-

4

Out Claims, and BRL will retain all rights to assert a claim against the Estate to the extent of any recovery by the Estate under 11 U.S.C. § 550 in connection with the Criminal Defense Carve-Out Claims.

d. "Estate and Trustee Releasees" means, (i) the Bankruptcy Estate; (ii) the Trustee; and (iii) in their respective capacities as such, any and all of the Trustee's attorneys, accountants, advisors, representatives or agents.

e. "BRL Releasees" means, (i) BRL; and (ii) in their respective capacities as such, any and all of BRL's current and former partners, associates, employees, attorneys (including, but not limited to, Gibson, Dunn & Crutcher LLP and its current and former partners, associates, and employees), insurers, co-insurers, reinsurers, accountants, advisors, representatives or agents.

f. **Estate and Trustee Releases**.  Upon the Effective Date and subject to the Trustee's receipt of the payment of the Settlement Payment, for and in consideration of the agreements herein, and other consideration, the Trustee, for himself, and on behalf of the Bankruptcy Estate, does hereby unconditionally, absolutely and irrevocably release and discharge the BRL Releasees of all BRL Released Claims, it being the intention of the Trustee to reserve nothing whatsoever of the BRL Released Claims hereunder and to assure the BRL Releasees peace and freedom from each and every of the BRL Released Claims of whatever character and description; *provided, however*, that nothing in this paragraph shall be deemed or construed to be a release, waiver or discharge of the terms and conditions of this Agreement or of any Criminal Defense Carve-Out Claims.

g. **BRL Releases**.  Upon the Effective Date, for and in consideration of the agreements herein, and other consideration, BRL does hereby unconditionally, absolutely, and irrevocably release and discharge the Estate and Trustee Releasees of all Estate and Trustee Released Claims, it being BRL's intention to reserve nothing whatsoever of the Estate and Trustee Released Claims and to assure the Estate and Trustee Releasees peace and freedom from each and every of the Estate and Trustee Released Claims of whatever character and description; *provided, however*, that nothing in this paragraph shall be deemed or construed to be a release, waiver or discharge of the terms and conditions of this Agreement or of any Criminal Defense Carve-Out Claims.

h. **No Third-Party Releases**.  For the avoidance of doubt, nothing in this Agreement or in the Order shall, or shall be construed to, effectuate a third-party release of any claim exclusively held or owned by a non-Party to this Agreement.  To the extent such non-Parties may have such claims against the Trustee, the Bankruptcy Estate, the Estate Releasees, BRL, the BRL Releasees, or Kwok, and standing to bring such claims, such claims and such standing are not impacted in any way by this Agreement or the Order.

5

**7.** **Covenant Not to Sue/Scope of Releases/Confidentiality of Released Claims**. The Parties covenant and agree that they will not make, assert, or maintain any claim, demand, action, or cause of action against each other that is released herein other than to enforce the provisions of this Agreement. In any proceedings commenced in connection with Criminal Defense Carve-Out Claims, the Parties shall not refer to or describe BRL's conduct allegedly giving rise to the Released Claims (the "Released Matters") other than to refer to the fact of the Bankruptcy Representation during these dates, or the filing by BRL of a document on the public docket, and nothing else.

**8.** **Fees and Costs of Litigation**. Each Party will bear its own attorneys' fees, costs, and expenses, including those incurred in connection with: (a) investigating, litigating, prosecuting, or defending all claims and defenses that were or could have been raised in connection with the Released Claims; and (b) the negotiation and execution of this Agreement. However, in the event of a breach of this Agreement, the prevailing Party or Parties in an action to enforce this Agreement shall be entitled to recover, in addition to any other relief awarded, reasonable and necessary costs and attorneys' fees incurred in the successful prosecution or defense of that action.

**9.** **No Admission of Parties**. This Agreement does not constitute an admission by the Parties of any wrongful action or violation of any federal or state statutory or common law rights, or any other possible or claimed violation of law or rights. The Parties have entered into this Agreement solely for the purpose of compromise and amicable settlement, and the settlement should not be construed as an admission of liability by anyone. Each Party vehemently denies any and all claims by the other Party.

**10.** **Understanding of Parties**. The Parties represent and warrant that they have read and understand the terms of this Agreement with the assistance of counsel.

**11.** **Representations and Warranties**.

    **a.** BRL represents and warrants that:
        i. It has the exclusive right to prosecute, compromise, and release the Estate and Trustee Released Claims;
        ii. The Bankruptcy Representation commenced on or about February 11, 2022, and ended on or about August 1, 2022;
        iii. The Criminal Defense Representation commenced on or about March 16, 2023 and ended on or about July 12, 2023; and
        iv. At no point did BRL advise Kwok with respect to hiding or secreting assets from the Trustee, the Estate, or creditors of Kwok or the Estate.

    **b.** The Trustee represents and warrants that to the best of the Trustee's knowledge no Claim or Claims against the BRL Releasees that are or would otherwise be BRL Released Claims have been sold, transferred, assigned, conferred or

6

otherwise conveyed to any third party.

**c.** The Parties hereto represent and warrant that:

    i. each Party is authorized to make the representations and agreements herein set forth by or on behalf of each such Party;

    ii. each individual signing on behalf of a Party or Parties has the full power, authority, and capacity to sign and enter into this Agreement on behalf of the Party on whose behalf he or she has signed;

    iii. none of the Released Claims has been, or will be prior to the Effective Date, sold, assigned, consigned, conveyed, or otherwise transferred or subrogated;

    iv. each Party has not previously assigned, sold, transferred, conveyed, hypothecated, pledged, or otherwise disposed of any rights, claims, or remedies, or any portion thereof or any interest therein that is being released by this Agreement; and

    v. each Party will not assign, sell, convey, transfer, hypothecate, pledge or otherwise dispose of any rights, claims, or remedies or any portion thereof or any interest therein that are being released by this Agreement. Any assignment, sale, transfer, conveyance, hypothecation, pledge or other disposition in violation of this provision shall be void ab initio and of no force and effect.

**d.** The representations and warranties set forth in this Agreement shall survive and shall continue following the execution and delivery hereof.

**12.** **Binding on Successors**.  The obligations and terms of this Agreement are binding upon each of the Parties and their respective successors-in-interest, assigns, legal representatives, insurers and all other persons or entities who may take any interest through the Parties in the matters herein released (including but not limited to the Estate and Trustee Releasees and the BRL Releasees).  The foregoing persons and entities, including but not limited to the Estate and Trustee Releasees and the BRL Releasees, are third-party beneficiaries of this Agreement and are bound by and may enforce the Agreement.

**13.** **Use of This Agreement**.  This Agreement may be pleaded as a full and complete defense to any action, suit, or other proceeding that may be instituted, prosecuted, or attempted for, upon, or in respect of any of the Released Claims. The Parties agree that any such proceeding would cause irreparable injury to the Party against whom it is brought and that any court of competent jurisdiction may enter an injunction restraining prosecution thereof.  The Parties further agree that this Agreement may be pleaded as necessary for purposes of enforcing this Agreement. Nothing in this paragraph is intended to negate or impair the Parties' right to enforce this

7

Agreement, including but not limited to enforcing the Settlement Payment.

**14.    Cooperation/Facilitation**: It is expressly agreed that, as an integral component of, and as material consideration for, this Agreement, the Trustee shall not oppose a subsequent motion or request consistent with this Agreement for, and/or a court's entry of, any order (a) enforcing the releases in this Agreement and/or (b) barring claims or matters against BRL to the extent released by this Agreement.

**15.    Consent to Jurisdiction**. The Parties hereby irrevocably consent to the limited jurisdiction of the Court with respect to any action to enforce the terms and provisions of this Agreement and expressly waive any right to commence any such action in any other forum. The Parties agree that nothing in this Agreement, including but not limited to this Paragraph, shall constitute or be construed as a waiver of any kind whatsoever of any potential objection by BRL to the jurisdiction of the Bankruptcy Court over any potential adversary proceeding or any other matter except as expressly set forth in this paragraph.

**16.    Entire Agreement**. This Agreement reflects the entire agreement and understanding between the Parties with respect to the subject matter of this Agreement. All prior agreements, promises, and understandings, whether written or oral, express or implied, are expressly superseded hereby and are of no further force or effect with respect to the subject matter of this Agreement. This is a fully integrated agreement. Notwithstanding the foregoing, the Tolling Agreement shall remain in full force and effect pursuant to its terms.

**17.    Modifications to Agreement**. It is expressly understood and agreed that this Agreement may not be altered, amended, modified, or otherwise changed in any respect except by a writing executed by all Parties.

**18.    Waiver Concerning Agreement**. The failure of the Parties to insist, in any one or more instances, upon the strict performance of any of the provisions of this Agreement, or to exercise any option contained in this Agreement, shall not be construed as a waiver, or a relinquishment for the future of such provision or option, but the same shall continue and remain in full force and effect.

**19.    Settlement Discussions and Confidentiality**. This Agreement is part of a mediated settlement of matters that would otherwise be the subject of litigation among the Parties. Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence or mediation privilege, and any other applicable law, foreign or domestic, all negotiations relating to this Agreement shall not be discoverable or admissible into evidence in any proceeding other than a proceeding to enforce its terms.

**20.    Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of laws procedures.

**21.** **Counterparts**.  This Agreement may be executed in a number of identical counterparts, and each of such counterparts is to be deemed an original for all purposes, but all counterparts shall collectively constitute one agreement.  Signatures by electronic means shall be deemed original signatures for all purposes.

**22.** **Notices**.  All notices or information required by this Agreement shall be in writing and shall be deemed given when delivered by a nationally recognized overnight courier service to the Parties at the following addresses (or at such other address for a Party as shall be specified by like notice, provided that a notice of change of address(es) shall be effective only from the date of its receipt by the other Party).  The Parties agree that they will contemporaneously e-mail to counsel for the opposing Party (at the respective address set forth below), a courtesy copy of any notices or communications sent concerning this Agreement:

| | |
|---|---|
| **If to the Trustee:** | Patrick R. Linsey |
| | **NEUBERT, PEPE & MONTEITH, P.C.** |
| | 195 Church Street, 13th Floor |
| | New Haven, Connecticut 06510 |
| | (203) 781-2847 |
| | plinsey@npmlaw.com |
| | |
| | Luc A. Despins |
| | **PAUL HASTINGS LLP** |
| | 200 Park Avenue |
| | New York, New York 10166 |
| | (212) 318-6000 |
| | lucdespins@paulhastings.com |
| | |
| **If to BRL:** | Joel S. Miliband |
| | BROWN RUDNICK LLP |
| | 2211 Michelson Drive, 7th Floor |
| | Irvine, CA  92612 |
| | jmiliband@brownrudnick.com |
| | |
| | With a copy to: |
| | Kevin S. Rosen |
| | Michael Dore |
| | GIBSON, DUNN & CRUTCHER, LLP |
| | 333 South Grand Avenue |
| | Los Angeles, CA 90071 |
| | krosen@gibsondunn.com |
| | mdore@gibsondunn.com |

**23.** **Interpretation; Rules of Construction; Representation by Counsel**.  The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding, or rule of

construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document. In this Agreement, except to the extent otherwise provided or that the context otherwise requires: (a) whenever the words "include," "includes," or "including" are used, they are deemed to be followed by the words "without limitation"; (b) the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms; (c) the use of "or" or "nor" is not intended to be exclusive or limited unless expressly indicated otherwise; and (d) words importing the singular include the plural and vice versa and words importing gender include all genders.

**24.** **Good Faith of Parties, No Duress or Undue Influence**. The Parties expressly represent and warrant that this Agreement is given in good faith. Each of the Parties acknowledges and represents that it enters into this Agreement without any duress—economic or otherwise—or undue influence or pressure imposed upon them by any other of the Parties or any other person and that each of the Parties enters into this Agreement as its own free act and deed after having had the opportunity to consult with legal counsel and any other persons with whom it might choose to consult. Each of the Parties further represents that it has done its own due diligence as a basis for deciding to enter into this Agreement, and it is not relying on statements, inducements, actions, or omissions of any other Party, except as expressly set forth in this Agreement.

**25.** **No Third-Party Beneficiaries Unless Expressly Stated in Agreement**. Unless expressly stated in this Agreement (such as, for example only, Paragraph 12), this Agreement shall be solely for the benefit of the Parties and no other person or entity shall be a third-party beneficiary. For the avoidance of doubt, all persons and entities released pursuant to the terms of this Agreement are third-party beneficiaries of such release.

**26.** **Severability**. The Parties agree not to challenge this Agreement, nor any provision thereof, as illegal, invalid, or unenforceable. With the exception of releases contained herein, if any portion, provision, or part of this Agreement is held, determined or adjudicated to be invalid, unenforceable, or void for any reason whatsoever, each such portion, provision, or part shall be severed from the remaining portions, provisions, or parts of this Agreement and shall not affect the validity or enforceability of such remaining portions, provisions, or parts of this Agreement. The Parties expressly agree that the terms of this Agreement shall be construed in a manner designed to make it valid and enforceable to the fullest extent possible.

**27.** **Effect of Headings**. The headings of the paragraphs of this Agreement are inserted for convenience of reference only and shall not control or affect the meaning, intention, construction or effect of this Agreement or any such paragraph.

**[REMAINDER OF PAGE IS INTENTIONALLY LEFT BLANK; SIGNATURE PAGE(S) TO FOLLOW]**

**LUC A. DESPINS**, in his capacity as chapter 11 trustee appointed in the chapter 11 case of Ho Wan Kwok

By:  */s/ Luc A. Despins*
Name:    Luc A. Despins
Title:    Chapter 11 Trustee

**BROWN RUDNICK LLP**

By:
Name:    Joel S. Miliband
Title:    Partner and General Counsel

## **EXHIBIT 1-B**

### **Amended Settlement Agreement (Redline)**

## AMENDED SETTLEMENT AGREEMENT

This Amended Settlement Agreement (the "Agreement"), is entered into as of this 4th 24th day of April, 2025, by and between: (a) LUC A. DESPINS in his capacity as chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor" or "Kwok"); and (b) BROWN RUDNICK LLP ("BRL," and together with the Trustee, the "Parties"). The Parties hereby agree as follows:

### RECITALS

WHEREAS, on February 15, 2022 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the District of Connecticut (the "Court") a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case is administered under Case No. 22-50073 (the "Bankruptcy Case");

WHEREAS, the filing of the Bankruptcy Case created an estate pursuant to section 541 of the Bankruptcy Code (the "Bankruptcy Estate" or "Estate");

WHEREAS, on June 15, 2022, the Court entered a memorandum of decision and order (the "Trustee Order") directing the United States Trustee to appoint a chapter 11 trustee in the Debtor's chapter 11 case;

WHEREAS, pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins as the Trustee, and on July 8, 2022, the Court entered an order granting the appointment of Luc A. Despins as the Trustee in the Bankruptcy Case and charging the Trustee with the duties and obligations described therein;

WHEREAS, both before and after the Petition Date, BRL represented Kwok in matters related to the Bankruptcy Case, which representation BRL represents commenced on or about February 11, 2022, ended on or about August 1, 2022, and shall be referred to as the "Bankruptcy Representation," which term expressly excludes the Criminal Defense Representation (as defined herein);

WHEREAS, following the Bankruptcy Representation, BRL was engaged to advise and provide legal services in connection with the United States Government's criminal investigation and prosecution of the Debtor, which engagement BRL represents commenced on or about March 16, 2023, and ended on or about July 12, 2023 (the "Criminal Defense Representation"), and which the Parties have expressly excluded from the settlement and releases provided herein;

WHEREAS, the Trustee has asserted that the Bankruptcy Estate holds certain claims against BRL arising out of the Bankruptcy Representation and BRL unequivocally denies such claims;

WHEREAS, the Parties have entered into tolling agreements concerning any claims the Bankruptcy Estate holds against BRL and vice-versa;

1

WHEREAS, in order to avoid the expense, burden and inconvenience of litigation, the Trustee and BRL reached a settlement that resolves the Released Claims (defined below), subject to the terms and conditions set forth in this Agreement; and

WHEREAS, the Parties desire and intend to effect a final settlement and resolution of the Released Claims pursuant to the terms herein.

WHEREAS, on April 4, 2025, the Parties entered into a prior version of this settlement agreement (the "Original Settlement Agreement").

WHEREAS, by this Agreement, the Parties now wish to amend and supersede the Original Settlement Agreement.

## TERMS OF AGREEMENT

NOW THEREFORE, in consideration of the foregoing recitals, which along with the Exhibit attached hereto are incorporated into this Agreement, and of the mutual agreements, covenants and releases set forth herein, and for other good and valuable consideration, the adequacy and receipt of which the Parties hereby acknowledge, the Parties agree as follows:

**1.** **Settlement Amount.** In consideration of the releases contained herein and other valuable consideration provided by this Agreement, and in complete satisfaction of the BRL Released Claims, BRL agrees to pay to the Trustee the sum of $7,000,000, plus the $948,000 that BRL currently holds in trust as the remainder of the retainer it received to represent Kwok in the Bankruptcy Case, for a total of $7,948,000 (the "Settlement Amount"). As part of this Agreement to resolve the Released Claims against BRL, BRL waives and further agrees not to file an application for any fees for services rendered or for any reimbursement of expenses incurred by BRL in connection with the Bankruptcy Representation.

**2.** **Effectiveness of this Agreement.** This Agreement is subject to approval by the Court in the Bankruptcy Case. This Agreement shall be effective (the "Effective Date") when an order that is consistent with Paragraph 3 hereof (the "Order") is entered by the Court in the Bankruptcy Case and becomes final. For the avoidance of doubt, the Effective Date shall be no earlier than the later of the occurrence of (i) entry of the Order and the passage of thirty-five days from entry of the Order during which time no appeal of the Order has been filed and no motion within Rule 8002(b) is filed or other event (e.g., the grant of a stay by a court of competent jurisdiction) that extends the time to appeal, and (ii) if any appeal has been filed or motion within Rule 8002(b) is filed or other event occurs (e.g., the grant of a stay by a court of competent jurisdiction) that extends the time to file an appeal, any such appeal is finally and fully resolved or no such appeal is filed by the applicable deadline to file. The Trustee shall request approval of this Agreement pursuant to the Trustee's pending motion for approval of the Original Settlement Agreement [Case No. 22-50073 Docket No. 4298] (the "9019 Motion"). This Agreement shall be submitted to the Honorable James J. Tancredi, as Mediator (the "Mediator") under the Pre-

2

~~Litigation Mediation Order[‡], together with the Parties' joint request that the Mediator issue a Pre-Litigation Settlement Report recommending that the Court approve the terms of this Agreement.~~

~~**3.**      a.      Pursuant to paragraph 2.v. of the Pre-Litigation Mediation Order, and except as provided in Paragraph 2.b. below, within thirty (30) days of the issuance of a Pre-Litigation Settlement Report (as defined in the Pre-Litigation Mediation Order), the Trustee shall file a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking the Court's approval of this Agreement and attaching the Pre-Litigation/Pre-Appearance Settlement Report as an exhibit (such motion, together with its exhibits, the "9019 Motion"), which motion may be filed by the Trustee as part of an omnibus motion seeking approval of additional settlement agreements.~~

**4.**~~2.~~      ~~b.      The Pre-Litigation/Pre-Appearance Settlement Report shall be emailed to BRL's counsel by the Trustee on the same day as it is received by the Trustee, and the Parties agree that the 9019 Motion shall be filed by the Trustee no earlier than ten (10) business days after delivery to BRL's counsel of the Pre-Litigation/Pre-Appearance Settlement Report (unless earlier authorized by BRL) in the form attached to this Agreement as **Exhibit A** (except that the Trustee may add or change the date of the document prior to filing it to conform to the filing date and may otherwise change the document in any manner agreed by the Parties in writing, which may be memorialized by an email between the Parties' counsel).~~

**5.**~~3.~~      **Form of Order.**  The Order granting the 9019 Motion shall (a) approve all of the provisions of this Agreement without limitation or addition, (b) contain a finding that the Trustee holds, and has the right to settle and release, the BRL Released Claims, and (c) not be subject to any stay including, without limitation, the stay of Bankruptcy Rule 6004(h).

**6.**~~4.~~      **Time to Pay the Settlement Amount.**  Within five (5) business days following the Effective Date, BRL shall cause to be paid to the Trustee the Settlement Amount in immediately available funds.  BRL shall cause the Settlement Amount to be paid by initiating a wire transfer (or wire transfers)  The entire Settlement Amount will be paid to the Trustee.  Any such transfer(s) shall be made to an account designated by the Trustee pursuant to wire instructions that counsel for the Trustee has provided to counsel for BRL, receipt of which instructions BRL confirms.

The Trustee acknowledges and agrees that BRL and its insurer(s) will have absolutely no role in or responsibility for allocating or disbursing any portion of the Settlement Amount after the wire transfer(s) constituting the full Settlement Amount has been transferred to the Trustee or in ensuring that the Trustee disburses any sum of money to any person, account, or entity.  It is expressly understood by the Parties that BRL's payment obligation shall be completely satisfied immediately upon the transfer of the Settlement Amount pursuant to the wire instructions which the Trustee has provided BRL by email through the Parties' counsel, resulting in full payment of the Settlement Amount (the "Settlement Payment"), and BRL is not and will not be responsible in any way for any taxes, offsets or any other deductions or otherwise.

---

[‡]   ~~The "Pre-Litigation Mediation Order" is the *Order Amending Order Directing Parties to Mediation, Appointing the Honorable James H. Tancredi as Mediator, and Amending Order Approving Procedures Applicable to Avoidance Claim Adversary Proceedings to Facilitate Consensual Pre-Litigation Mediation and Pre-Appearance Mediation* (Case No. 22-50073, Docket No. 3465).~~

**7.5.    Failure to Timely Pay Settlement Amount**.  If BRL fails to pay the Settlement Amount to the Trustee pursuant to Paragraph 4 of this Agreement, then BRL agrees and authorizes the Trustee, in its sole discretion, to terminate this Agreement effective immediately by written notice to BRL of termination of the Agreement.  Upon any termination of this Settlement Agreement, the Trustee may elect and pursue any remedy available to it, including without limitation: (i) commencing an adversary proceeding to pursue the BRL Released Claims; and (ii) enforcing this Agreement to the fullest extent of the law.

**8.6.    Mutual Releases**.

a.  "BRL Released Claims" means any and all manner of claims, counterclaims, complaints, disputes, demands, rights, actions, potential actions, causes of action, proofs of claim, liabilities, duties, obligations, damages, losses, diminutions in value, obligations, judgments, decrees, requests for attorneys' fees or costs, matters, issues, suits, proceedings, and controversies of any kind or nature whatsoever, ~~that are owned, held, or capable of being asserted by or on behalf of the Bankruptcy Estate, or any other person or entity asserting currently or in the future by, under, through, or on behalf of the Bankruptcy Estate, and each of their respective successors or assigns,~~ whether known or unknown, in law, at equity or otherwise, asserted or unasserted, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, claimed or unclaimed, apparent or not apparent, foreseen or unforeseen, matured or not matured, secured or unsecured, which now exist, or heretofore or previously existed, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise (collectively, "Claims"), that are owned, held, or capable of being asserted by or on behalf of the Bankruptcy Estate, or any other person or entity asserting currently or in the future by, under, through, or on behalf of the Bankruptcy Estate, and each of their respective successors or assigns, against the BRL Releasees (defined below), whether or not any such Claims were asserted on or before the Effective Date, including, but not limited to, any Claims arising under federal, state or foreign law, common law, bankruptcy law, statute, equity, rule or regulation, or agreement, whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, ~~regulatory, governmental~~ or of any other type or in any other capacity, and including actions that arise out of or are based on tort, breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Bankruptcy Estate, any other Claims under the Bankruptcy Code, and actions that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, *provided, however*, the BRL Released Claims shall not include any Criminal Defense Carve-Out Claims (defined below).  Subject to the Criminal Defense Carve-Out (defined below), BRL Released Claims shall

include any Claims against the BRL Releasees (defined below)that existed as of the Effective Date and that may be exclusively asserted by or on behalf of the Bankruptcy Estate (including by the Trustee and/or any governmental entity) under applicable law.  For the avoidance of doubt, to the extent the Trustee or Estate now owns or holds an interest or control of Claims that were previously held and/or controlled by any other person or entity against the BRL Releasees (defined below), such as, for example only, Claims previously held by investors and/or creditors of Kwok or the Estate, any such Claims are included in this definition of BRL Released Claims unless subject to the Criminal Defense Carve-Out (defined below).

b.  "Estate and Trustee Released Claims" means any and all Claims against the Estate and Trustee Releasees (defined below), whether or not any such Claims were asserted on or before the Effective Date, including, but not limited to, any Claims arising under federal, state or foreign law, common law, bankruptcy law, statute, equity, rule or regulation, or agreement, whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, regulatory, governmental or of any other type or in any other capacity, and including any requests for compensation and/or reimbursement of expenses, and/or any other Claims under the Bankruptcy Code, *provided, however*, the Estate and Trustee Released Claims shall not include any Criminal Defense Carve-Out Claims (defined below).

c.  "Criminal Defense Carve-Out Claims" means any and all Claims against the BRL Releasees (defined below), or the Estate and Trustee Releasees (defined below), relating to the Criminal Defense Representation, including, without limitation, any avoidance or recovery actions arising from transfers relating to the Criminal Defense Representation; and "Criminal Defense Carve-Out" means the exclusion of Criminal Defense Carve-Out Claims from the BRL Released Claims and the Estate and Trustee Released Claims (collectively, the "Released Claims").  Notwithstanding any other provisions in this Agreement, BRL and the Trustee and Estate retain all defenses to Criminal Defense Carve-Out Claims, and BRL will retain all rights to assert a claim against the Estate to the extent of any recovery by the Estate under 11 U.S.C. § 550 in connection with the Criminal Defense Carve-Out Claims.

d.  "Estate and Trustee Releasees" means, (i) the Bankruptcy Estate; (ii) the Trustee; and (iii) in their respective capacities as such, any and all of the Trustee's attorneys, accountants, advisors, representatives or agents.

e.  "BRL Releasees" means, (i) BRL; and (ii) in their respective capacities as such, any and all of BRL's current and former partners, associates, employees, attorneys (including, but not limited to, Gibson, Dunn & Crutcher LLP and its current and former partners, associates, and employees), insurers, co-insurers, reinsurers, accountants, advisors, representatives or agents.

5

**f.   Estate and Trustee Releases**.   Upon the Effective Date and subject to the Trustee's receipt of the payment of the Settlement Payment, for and in consideration of the agreements herein, and other consideration, the Trustee, for himself, and on behalf of the Bankruptcy Estate, does hereby unconditionally, absolutely and irrevocably release and discharge the BRL Releasees of all BRL Released Claims, it being the intention of the Trustee to reserve nothing whatsoever of the BRL Released Claims hereunder and to assure the BRL Releasees peace and freedom from each and every of the BRL Released Claims of whatever character and description; *provided, however*, that nothing in this paragraph shall be deemed or construed to be a release, waiver or discharge of the terms and conditions of this Agreement or of any Criminal Defense Carve-Out Claims.

**g.   BRL Releases**.   Upon the Effective Date, for and in consideration of the agreements herein, and other consideration, BRL does hereby unconditionally, absolutely, and irrevocably release and discharge the Estate and Trustee Releasees of all Estate and Trustee Released Claims, it being BRL's intention to reserve nothing whatsoever of the Estate and Trustee Released Claims and to assure the Estate and Trustee Releasees peace and freedom from each and every of the Estate and Trustee Released Claims of whatever character and description; *provided, however*, that nothing in this paragraph shall be deemed or construed to be a release, waiver or discharge of the terms and conditions of this Agreement or of any Criminal Defense Carve-Out Claims.

**h.   No Third-Party Releases**.   For the avoidance of doubt, nothing in this Agreement or in the Order shall, or shall be construed to, effectuate a third-party release of any claim exclusively held or owned by a non-Party to this Agreement.   To the extent such non-Parties may have such claims against the Trustee, the Bankruptcy Estate, the Estate Releasees, BRL, the BRL Releasees, or Kwok, and standing to bring such claims, such claims and such standing are not impacted in any way by this Agreement or the Order.

**9.7.   Covenant Not to Sue/Scope of Releases/Confidentiality of Released Claims**. The Parties covenant and agree that they will not make, assert, or maintain any claim, demand, action, or cause of action against each other that is released herein other than to enforce the provisions of this Agreement.   In any proceedings commenced in connection with Criminal Defense Carve-Out Claims, the Parties shall not refer to or describe BRL's conduct allegedly giving rise to the Released Claims (the "Released Matters") other than to refer to the fact of the Bankruptcy Representation during these dates, or the filing by BRL of a document on the public docket, and nothing else.

**10.8.   Fees and Costs of Litigation**.   Each Party will bear its own attorneys' fees, costs, and expenses, including those incurred in connection with: (a) investigating, litigating, prosecuting, or defending all claims and defenses that were or could have been raised in connection

with the Released Claims; and (b) the negotiation and execution of this Agreement. However, in the event of a breach of this Agreement, the prevailing Party or Parties in an action to enforce this Agreement shall be entitled to recover, in addition to any other relief awarded, reasonable and necessary costs and attorneys' fees incurred in the successful prosecution or defense of that action.

~~11.~~9.    **No Admission of Parties**. This Agreement does not constitute an admission by the Parties of any wrongful action or violation of any federal or state statutory or common law rights, or any other possible or claimed violation of law or rights. The Parties have entered into this Agreement solely for the purpose of compromise and amicable settlement, and the settlement should not be construed as an admission of liability by anyone. Each Party vehemently denies any and all claims by the other Party.

~~12.~~10.    **Understanding of Parties**. The Parties represent and warrant that they have read and understand the terms of this Agreement with the assistance of counsel.

~~13.~~11.    **Representations and Warranties**.

    **a.**  BRL represents and warrants that:
- i.  It has the exclusive right to prosecute, compromise, and release the Estate and Trustee Released Claims;
- ii.  The Bankruptcy Representation commenced on or about February 11, 2022, and ended on or about August 1, 2022;
- iii.  The Criminal Defense Representation commenced on or about March 16, 2023 and ended on or about July 12, 2023; and
- iv.  At no point did BRL advise Kwok with respect to hiding or secreting assets from the Trustee, the Estate, or creditors of Kwok or the Estate.

    **b.**  The Trustee represents and warrants that to the best of the Trustee's knowledge no Claim or Claims against the BRL Releasees that are or would otherwise be BRL Released Claims have been sold, transferred, assigned, conferred or otherwise conveyed to any third party.

    **c.**  The Parties hereto represent and warrant that:

- i.  each Party is authorized to make the representations and agreements herein set forth by or on behalf of each such Party;

- ii.  each individual signing on behalf of a Party or Parties has the full power, authority, and capacity to sign and enter into this Agreement on behalf of the Party on whose behalf he or she has signed;

- iii.  none of the Released Claims has been, or will be prior to the Effective Date, sold, assigned, consigned, conveyed, or otherwise transferred or subrogated;

iv.  each Party has not previously assigned, sold, transferred, conveyed, hypothecated, pledged, or otherwise disposed of any rights, claims, or remedies, or any portion thereof or any interest therein that is being released by this Agreement; and

v.  each Party will not assign, sell, convey, transfer, hypothecate, pledge or otherwise dispose of any rights, claims, or remedies or any portion thereof or any interest therein that are being released by this Agreement. Any assignment, sale, transfer, conveyance, hypothecation, pledge or other disposition in violation of this provision shall be void ab initio and of no force and effect.

**d.** The representations and warranties set forth in this Agreement shall survive and shall continue following the execution and delivery hereof.

~~14.~~12. **Binding on Successors**. The obligations and terms of this Agreement are binding upon each of the Parties and their respective successors-in-interest, assigns, legal representatives, insurers and all other persons or entities who may take any interest through the Parties in the matters herein released (including but not limited to the Estate and Trustee Releasees and the BRL Releasees). The foregoing persons and entities, including but not limited to the Estate and Trustee Releasees and the BRL Releasees, are third-party beneficiaries of this Agreement and are bound by and may enforce the Agreement.

~~15.~~13. **Use of This Agreement**. This Agreement may be pleaded as a full and complete defense to any action, suit, or other proceeding that may be instituted, prosecuted, or attempted for, upon, or in respect of any of the Released Claims. The Parties agree that any such proceeding would cause irreparable injury to the Party against whom it is brought and that any court of competent jurisdiction may enter an injunction restraining prosecution thereof. The Parties further agree that this Agreement may be pleaded as necessary for purposes of enforcing this Agreement. Nothing in this paragraph is intended to negate or impair the Parties' right to enforce this Agreement, including but not limited to enforcing the Settlement Payment.

~~16.~~14. **Cooperation/Facilitation**: It is expressly agreed that, as an integral component of, and as material consideration for, this Agreement, the Trustee shall not oppose a subsequent motion or request consistent with this Agreement for, and/or a court's entry of, any order (a) enforcing the releases in this Agreement and/or (b) barring claims or matters against BRL to the extent released by this Agreement.

~~17.~~15. **Consent to Jurisdiction**. The Parties hereby irrevocably consent to the limited jurisdiction of the Court with respect to any action to enforce the terms and provisions of this Agreement and expressly waive any right to commence any such action in any other forum. The Parties agree that nothing in this Agreement, including but not limited to this Paragraph, shall constitute or be construed as a waiver of any kind whatsoever of any potential objection by BRL to the jurisdiction of the Bankruptcy Court over any potential adversary proceeding or any other matter except as expressly set forth in this paragraph.

8

~~18.~~16.  **Entire Agreement**.    This Agreement reflects the entire agreement and understanding between the Parties with respect to the subject matter of this Agreement.  All prior agreements, promises, and understandings, whether written or oral, express or implied, are expressly superseded hereby and are of no further force or effect with respect to the subject matter of this Agreement.  This is a fully integrated agreement.  Notwithstanding the foregoing, the Tolling Agreement shall remain in full force and effect pursuant to its terms.

~~19.~~17.  **Modifications to Agreement**.  It is expressly understood and agreed that this Agreement may not be altered, amended, modified, or otherwise changed in any respect except by a writing executed by all Parties.

~~20.~~18.  **Waiver Concerning Agreement**.  The failure of the Parties to insist, in any one or more instances, upon the strict performance of any of the provisions of this Agreement, or to exercise any option contained in this Agreement, shall not be construed as a waiver, or a relinquishment for the future of such provision or option, but the same shall continue and remain in full force and effect.

~~21.~~19.  **Settlement Discussions and Confidentiality**.    This Agreement is part of a mediated settlement of matters that would otherwise be the subject of litigation among the Parties. Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence or mediation privilege, and any other applicable law, foreign or domestic, all negotiations relating to this Agreement shall not be discoverable or admissible into evidence in any proceeding other than a proceeding to enforce its terms.

~~22.~~20.  **Governing Law**.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of laws procedures.

~~23.~~21.  **Counterparts**.    This Agreement may be executed in a number of identical counterparts, and each of such counterparts is to be deemed an original for all purposes, but all counterparts shall collectively constitute one agreement.  Signatures by electronic means shall be deemed original signatures for all purposes.

~~24.~~22.  **Notices**.  All notices or information required by this Agreement shall be in writing and shall be deemed given when delivered by a nationally recognized overnight courier service to the Parties at the following addresses (or at such other address for a Party as shall be specified by like notice, provided that a notice of change of address(es) shall be effective only from the date of its receipt by the other Party).  The Parties agree that they will contemporaneously e-mail to counsel for the opposing Party (at the respective address set forth below), a courtesy copy of any notices or communications sent concerning this Agreement:

**If to the Trustee:**                    Patrick R. Linsey
                                          **NEUBERT, PEPE & MONTEITH, P.C.**

9

195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
plinsey@npmlaw.com

Luc A. Despins
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
(212) 318-6000
lucdespins@paulhastings.com

**If to BRL:**                                   Joel S. Miliband
BROWN RUDNICK LLP
2211 Michelson Drive, 7th Floor
Irvine, CA  92612
jmiliband@brownrudnick.com

With a copy to:
Kevin S. Rosen
Michael Dore
GIBSON, DUNN & CRUTCHER, LLP
333 South Grand Avenue
Los Angeles, CA 90071
krosen@gibsondunn.com
mdore@gibsondunn.com

**25.23.  Interpretation; Rules of Construction; Representation by Counsel**. The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.  In this Agreement, except to the extent otherwise provided or that the context otherwise requires: (a) whenever the words "include," "includes," or "including" are used, they are deemed to be followed by the words "without limitation"; (b) the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms; (c) the use of "or" or "nor" is not intended to be exclusive or limited unless expressly indicated otherwise; and (d) words importing the singular include the plural and vice versa and words importing gender include all genders.

**26.24.  Good Faith of Parties, No Duress or Undue Influence**. The Parties expressly represent and warrant that this Agreement is given in good faith.  Each of the Parties acknowledges and represents that it enters into this Agreement without any duress—economic or otherwise—or undue influence or pressure imposed upon them by any other of the Parties or any other person and that each of the Parties enters into this Agreement as its own free act and deed after having had the opportunity to consult with legal counsel and any other persons with whom it might choose

to consult. Each of the Parties further represents that it has done its own due diligence as a basis for deciding to enter into this Agreement, and it is not relying on statements, inducements, actions, or omissions of any other Party, except as expressly set forth in this Agreement.

27.25.  **No Third-Party Beneficiaries Unless Expressly Stated in Agreement**.  Unless expressly stated in this Agreement (such as, for example only, Paragraph 12), this Agreement shall be solely for the benefit of the Parties and no other person or entity shall be a third-party beneficiary.  For the avoidance of doubt, all persons and entities released pursuant to the terms of this Agreement are third-party beneficiaries of such release.

28.26.  **Severability**.  The Parties agree not to challenge this Agreement, nor any provision thereof, as illegal, invalid, or unenforceable.  With the exception of releases contained herein, if any portion, provision, or part of this Agreement is held, determined or adjudicated to be invalid, unenforceable, or void for any reason whatsoever, each such portion, provision, or part shall be severed from the remaining portions, provisions, or parts of this Agreement and shall not affect the validity or enforceability of such remaining portions, provisions, or parts of this Agreement. The Parties expressly agree that the terms of this Agreement shall be construed in a manner designed to make it valid and enforceable to the fullest extent possible.

29.27.  **Effect of Headings**.  The headings of the paragraphs of this Agreement are inserted for convenience of reference only and shall not control or affect the meaning, intention, construction or effect of this Agreement or any such paragraph.

**[REMAINDER OF PAGE IS INTENTIONALLY LEFT BLANK;
SIGNATURE PAGE(S) TO FOLLOW]**

11

**LUC A. DESPINS**, in his capacity as chapter 11 trustee appointed in the chapter 11 case of Ho Wan Kwok

By: _____

Name:     Luc A. Despins

Title:     Chapter 11 Trustee

**BROWN RUDNICK LLP**

By:     _____

Name:     Joel S. Miliband

Title:     Partner and General Counsel

**EXHIBIT A**

## EXHIBIT 2-A

**[Revised Proposed] Order (Clean)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-----------------------------------------------------------x
                  :
In re:                       :     Chapter 11
                  :
HO WAN KWOK,          :     Case No. 22-50073 (JAM)
                  :
          Debtor.        :
                  :
-----------------------------------------------------------x

**[REVISED PROPOSED] ORDER APPROVING**
**MOTION OF CHAPTER 11 TRUSTEE, PURSUANT TO BANKRUPTCY**
**RULE 9019, REGARDING SETTLEMENT WITH BROWN RUDNICK LLP**

Upon the Motion,[1] of Luc A. Despins, in his capacity as the Chapter 11 Trustee (the

"Trustee") appointed in the above-captioned chapter 11 case (the "Chapter 11 Case") of Ho Wan

Kwok (the "Debtor"), for entry of an order approving a settlement agreement between the Trustee

and Brown Rudnick LLP ("Brown Rudnick" and, together with the Trustee, the "Parties"), as more

fully described in the Motion and the amended settlement agreement filed April 24, 2025 (the

"Settlement Agreement"); and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and this matter constituting a

core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and due and sufficient notice having

been given under the particular circumstances and it appears that no other or further notice need

be provided; and the relief requested being a reasonable exercise of the Trustee's sound business

judgment consistent with his duties and in the best interests of the Trustee and the Estate and its

creditors; and the Parties having participated in Mediation Proceedings pursuant to which Judge

Tancredi has issued the Mediator's Report stating his belief that the economics of the Original

---

[1]       Capitalized terms used but not defined in this Order have the meanings set forth in the Motion.

Settlement Agreement (as defined in the Settlement Agreement) are fair, reasonable, and in the best interests of the Chapter 11 estate as measured by the standards of *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) and otherwise deferring to this Court's evaluation of the Original Settlement Agreement, and the Court having determined that the terms of the Settlement Agreement are fair, reasonable, and in the best interests of the Estate; and after due deliberation and sufficient cause appearing therefor, it is **ORDERED THAT**:

1. The Motion is GRANTED.

2. All objections to the Motion, if any, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled.

3. The Settlement Agreement is approved pursuant to Bankruptcy Rule 9019.

4. The Trustee is authorized, pursuant to Bankruptcy Rule 9019, to execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the settlement reflected in the Settlement Agreement and to perform any and all obligations contemplated therein immediately upon entry of this Order.

5. The Court finds that the Trustee holds, and has the right to settle and release, all potential claims on behalf of the Estate to the extent provided by the Settlement Agreement, including potential claims owned by the Debtor against Brown Rudnick.

6. This Order shall be effective and enforceable immediately upon entry pursuant to Bankruptcy Rule 6004(h).

7. This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order and to the Settlement Agreement.

## **EXHIBIT 2-B**

**[Revised Proposed] Order (Redline)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------------x
                                        :
In re:                                  :    Chapter 11
                                        :
HO WAN KWOK,                            :    Case No. 22-50073 (JAM)
                                        :
              Debtor.                   :
                                        :
-------------------------------------------------------------x
```

**[REVISED PROPOSED] ORDER APPROVING**
**MOTION OF CHAPTER 11 TRUSTEE, PURSUANT TO BANKRUPTCY**
**RULE 9019, REGARDING SETTLEMENT WITH BROWN RUDNICK LLP**

Upon the Motion,[1] of Luc A. Despins, in his capacity as the Chapter 11 Trustee (the "Trustee") appointed in the above-captioned chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor"), for entry of an order approving a settlement agreement between the Trustee and Brown Rudnick LLP ("Brown Rudnick" and, together with the Trustee, the "Parties"), as more fully described in the Motion and the amended settlement agreement attached to the Motion as Exhibit B filed April 24, 2025 (the "Settlement Agreement"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and this matter constituting a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and due and sufficient notice having been given under the particular circumstances and it appears that no other or further notice need be provided; and the relief requested being a reasonable exercise of the Trustee's sound business judgment consistent with his duties and in the best interests of the Trustee and the Estate and its creditors; and the Parties having participated in Mediation Proceedings pursuant to which Judge Tancredi has issued the Mediator's Report stating

---

[1]        Capitalized terms used but not defined in this Order have the meanings set forth in the Motion.

his belief that the economics of the Original Settlement Agreement (as defined in the Settlement Agreement) are fair, reasonable, and in the best interests of the Chapter 11 estate as measured by the standards of *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) and otherwise deferring to this Court's evaluation of the Original Settlement Agreement, and the Court having determined that the terms of the Settlement Agreement are fair, reasonable, and in the best interests of the Estate; and after due deliberation and sufficient cause appearing therefor, it is **ORDERED THAT**:

1.      The Motion is GRANTED.

2.      All objections to the Motion, if any, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled.

3.      The Settlement Agreement is approved pursuant to Bankruptcy Rule 9019.

4.      The Trustee is authorized, pursuant to Bankruptcy Rule 9019, to execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the settlement reflected in the Settlement Agreement and to perform any and all obligations contemplated therein immediately upon entry of this Order.

5.      The Court finds that the Trustee holds, and has the right to settle and release, all potential claims on behalf of the Estate to the extent provided by the Settlement Agreement, including potential claims owned by the Debtor against Brown Rudnick.

6.      This Order shall be effective and enforceable immediately upon entry pursuant to Bankruptcy Rule 6004(h).

7.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order and to the Settlement Agreement.

2

8.7.